# No. 24-5538
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**NEO4J, INC., et al.,**

*Plaintiff and Appellee,*

v.

**Suhy, et al.,**

*Defendant-Appellant.*

Appeal From a Judgment of the United States District Court
For the Northern District of California
Hon. Edward J. Davila
United States District Judge
N. D. Cal. No. 5:18-cv-07182 EJD

# APPELLANT'S OPENING BRIEF

John Mark Suhy Jr (Pro Se)
8814 Danewood Dr
Alexandria, VA 22308
**jmsuhy@gmail.com**
Tel.: (703) 862-7780

# Table of Contents

*TABLE OF AUTHORITIES* ........................................................................ **4**
    **CASES** ............................................................................................... 4
    **STATUTES** ......................................................................................... 5
    **RULES** ............................................................................................... 5

*INTRODUCTION* ..................................................................................... **6**

*JURISDICTIONAL STATEMENT* .............................................................. **7**

*ISSUES PRESENTED* ................................................................................ **9**

*STATEMENT OF THE CASE* .................................................................... **10**
    A.   **Initial Pleadings and 2021 Proceedings** ...................................... 10
    B.   **Subsequent Litigation and Final Judgment** ................................ 12
    C.   **Present Appeal** .......................................................................... 13

*SUMMARY OF THE ARGUMENT* ............................................................. **14**

*STANDARD OF REVIEW* .......................................................................... **16**

*ARGUMENT* ............................................................................................ **19**

  **I.**   **The District Court Erred in Awarding Speculative and Unsupported Damages Without Evidence of Causation** ............................................. **19**
    A.   **Lack of Causation** ..................................................................... 19
        1.   Independent Decision-Making by MPO ................................... 20
    B.   **Speculative Nature of Damages : The damages award was based on speculative projections rather than concrete evidence of harm. Neo4j relied on hypothetical scenarios to calculate lost revenue, ignoring the fact that the software in question was distributed for free under the AGPL.** .................................... 27
        1.   The District Court's Damages Award Was Not Based on Substantial Evidence ......... 27
        2.   The District Court Failed to Address the MPO's Cost-Driven Decision-Making ......... 29
        3.   The District Court's Multi-Year Renewal Assumption is Unsupported ..................... 30
        4.   The District Court Ignored Substantial Alternative Explanations .............................. 32
        5.   Conclusion: Damages Must Be Reversed as Speculative ........................................ 33

  **II.**   **The District Court Improperly Resolved Genuine Disputes of Material Fact in Ruling on Foundational Claims for Damages** ............................... **34**
    A.   **Striking of Affirmative Defense** .................................................. 34
        1.   **The District Court Violated FRCP 8(c) by Improperly Striking Appellant's Affirmative Defense** ............................................................................. 35

Under Federal Rule of Civil Procedure 8(c), a party has the right to affirmatively state defenses such as fraud, license, or similar grounds for avoidance. Appellant properly asserted the affirmative defense of invalid trademark based on Neo4j's misrepresentations in its trademark application. Specifically, Appellant alleged that Neo4j's trademark registration

was procured through false statements regarding ownership and first use of the mark (ER-14-2931). ................................................................................................................35

By striking this affirmative defense, the District Court improperly curtailed Appellant's procedural right to present evidence and argument on a legally recognized defense. Whether Neo4j's trademark application contained misrepresentations is a genuine dispute of material fact that should have been resolved through trial, not summarily dismissed at the pleading stage. ................................................................................................................35

This procedural error further prejudiced Appellant and compounded the harm caused by the court's reliance on unpublished opinions. The combined effect was to deprive Appellant of a fair opportunity to defend against Neo4j's claims...............................................................35

**2.    The District Court Misapplied the Rule 12(c) Standard** ........................................36

**3.    Binding Precedent Exists and Should Have Been Applied**.....................................37

**4.    Prejudice Resulting from Procedural Errors** ..........................................................38

**B.    False Advertising : The district court erred in granting summary judgment on Neo4j's false advertising claims by misinterpreting the terms "free and open source" and "drop-in replacement." Genuine disputes existed regarding the meaning of these terms in industry and government contexts.**.......................................................................39

**C.    Neo4j USA is Not the Owner of the Neo4j Trademark, and Registration Alone Does Not Establish Ownership** ......................................................................................49

**D.    The District Court Improperly Granted Summary Judgment on the DMCA Claim** 53

**III.    The District Court Erred in Its Interpretation and Application of the AGPL and Commons Clause**...............................................................................................**61**

**A.    The Free Software Foundation (FSF) as the Primary Steward of the AGPL** ..............61

**B.    Exclusion of Critical Expert Testimony by Mr. Kuhn Prejudiced the Defense** ...........63

**C.    The District Court Misapplied the Law Governing the AGPL and the Commons Clause** .........65

**D.    Exclusion of the FSF Cease-and-Desist Letter Prejudiced Appellant** ....................66

**E.    Remedy and Standard of Review** ............................................................................67

**IV.    The District Court Improperly Granted Summary Judgment on the PureThink Exclusivity Agreement**.........................................................................................**69**

**A.    The District Court Overlooked Extrinsic Evidence Demonstrating the Exclusivity Agreement** .................................................................................................69

**B.    Materiality of Disputed Facts** ................................................................................72

**C.    The Exclusivity Agreement and Breach by Neo4j**.................................................73

***CONCLUSION*** ...............................................................................................**76**

***STATEMENT OF RELATED CASES***..............................................................**76**

***CERTIFICATE OF COMPLIANCE*** ..............................................................**78**

***CERTIFICATE OF SERVICE*** ......................................................................**80**

# TABLE OF AUTHORITIES

**CASES**

*Allard Enterprises v. Advanced Programming Resources, Inc.,* 146 F.3d 350 (6th Cir. 1998)

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)

*Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251 (1946)

*Castrol, Inc. v. Quaker State Corp.,* 977 F.2d 57 (2d Cir. 1992)

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)

*Chavez v. United States,* 683 F.3d 1102 (9th Cir. 2012)

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.,* 772 F.2d 505 (9th Cir. 1985)

*Harris v. Amgen, Inc.,* 573 F.3d 728 (9th Cir. 2009)

*Herrington v. Cty. of Sonoma,* 12 F.3d 901 (9th Cir. 1993)

*Hokto Kinoko Co. v. Concord Farms, Inc.,* 810 F. Supp. 2d 1013 (C.D. Cal. 2011)

*Intel Corp. v. Terabyte Int'l, Inc.,* 6 F.3d 614 (9th Cir. 1993)

*Interstellar Starship Servs, Ltd. v. Epix Inc.,* 184 F.3d 1107 (9th Cir. 1999)

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118 (2014)

*Lindy Pen Co. v. Bic Pen Corp.,* 982 F.2d 1400 (9th Cir. 1993)

*MAI Systems Corp. v. Peak Computing, Inc.,* 991 F.2d 511 (9th Cir. 1993)

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986)

*McGlinchy v. Shell Chem. Co.,* 845 F.2d 802 (9th Cir. 1988)

*Miller v. Glenn Miller Prods., Inc.,* 454 F.3d 975 (9th Cir. 2006)

*National Licensing Ass'n, LLC v. Inland Joseph Fruit Co.,* 361 F. Supp. 2d 1244 (E.D. Wash. 2004)

*Noble House Home Furnishings, LLC v. Floorco Enters., LLC,* 2016 TTAB LEXIS 100

*Pom Wonderful LLC v. Hubbard,* 775 F.3d 1118 (9th Cir. 2014)

*Quabaug Rubber Co. v. Fashion Shoe Co.,* 567 F.2d 154 (1st Cir. 1977)

*Rearden LLC v. Rearden Commerce, Inc.,* 683 F.3d 1190 (9th Cir. 2012)

*Skydive Arizona, Inc. v. Quattrocchi,* 673 F.3d 1105 (9th Cir. 2012)

*Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134 (9th Cir. 1997)
*Stevens v. Corelogic, Inc.,* 899 F.3d 666 (9th Cir. 2018)
*Sun Microsystems, Inc. v. Microsoft Corp.,* 999 F. Supp. 1301 (N.D. Cal. 1998)
*Taylor v. Sapritch*, 38 Cal. App. 2d 478 (Cal. Ct. App. 1940)


**STATUTES**

15 U.S.C. § 1114
15 U.S.C. § 1125(a)
17 U.S.C. § 1202(b)
28 U.S.C. § 1291
28 U.S.C. § 1331
28 U.S.C. § 1367
Cal. Civ. Proc. Code § 1856


**RULES**

Fed. R. App. P. 4(a)(1)(A)
Fed. R. Civ. P. 8(c)
Fed. R. Civ. P. 12(b)(6)
Fed. R. Civ. P. 12(c)

# INTRODUCTION

Appellant, proceeding pro se, respectfully submits this Opening Brief in a format more typically employed by counseled parties. Although a more informal template is permissible for pro se litigants, Appellant has opted for a structured, "hybrid" approach to address the complex legal and factual issues in this appeal, and to ensure clarity and thorough organization for the Court's benefit.

Central to this appeal is the District Court's speculative and unsupported damages award. Each of Appellant's arguments—addressing causation, trademark and false advertising issues, DMCA claims, and the interpretation of key licensing and exclusivity agreements—has direct bearing on whether the damages can stand. Accordingly, if this Court reverses any of the District Court's foundational rulings, the damages must be revisited. Appellant respectfully requests that this Court reverse the judgment and remand for further proceedings consistent with the arguments herein.

Also, as a preliminary matter, PureThink LLC, one of the original defendants in this litigation, has assigned all its rights and claims related to this appeal, including the exclusivity agreement claims, to Appellant (DktEntry: 7.1). This assignment, filed on November 12, 2024, confirms Appellant's standing to pursue these claims on PureThink's behalf. This relates to Issue IV.

# JURISDICTIONAL STATEMENT

This action was brought under the Lanham Act, federal copyright statutes, and the Digital Millennium Copyright Act (DMCA). The district court had federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

This appeal is taken from the district court's final judgment, which resolved all claims raised by the parties. Jurisdiction lies in this Court under 28 U.S.C. § 1291, as the appeal is from a final order. The district court entered its judgment on August 15, 2024, and Appellant filed a

timely notice of appeal on September 11, 2024, pursuant to Federal

Rule of Appellate Procedure 4(a)(1)(A).

# ISSUES PRESENTED

1. Whether the district court erred in awarding speculative and unsupported damages without evidence of causation linking Appellant's actions to Neo4j's alleged harm.

2. Whether the district court improperly resolved genuine disputes of material fact in ruling on foundational claims, including trademark ownership, false advertising, and DMCA applicability.

3. Whether the district court erred in its interpretation and application of the AGPL and Commons Clause, particularly in light of the Free Software Foundation's cease-and-desist letter and the exclusion of critical exhibits.

4. Whether the district court improperly granted summary judgment on the PureThink exclusivity agreement despite the existence of disputed facts regarding Neo4j's behavior beyond the written agreement.

# STATEMENT OF THE CASE

A. **Initial Pleadings and 2021 Proceedings**

Neo4j USA commenced this action in November 2018, alleging, among other things, trademark infringement and false advertising under the Lanham Act. Neo4j Sweden subsequently joined in asserting copyright claims, including one under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(b). (2-ER-71–84.) The Third Amended Complaint ("TAC"), filed in September 2020, is the operative pleading for much of the litigation. The TAC states claims for:

1. Trademark infringement (15 U.S.C. § 1114);

2. False designation of origin and false advertising (15 U.S.C. § 1125(a));

3. Unfair competition under California law;

4. Defamation and invasion of privacy; and

5. DMCA violations (17 U.S.C. § 1202(b)).

(2-ER-71–84.) Notably, Neo4j USA proceeded solely on its trademark-related claims, while Neo4j Sweden joined solely on the DMCA and other copyright-related claims. (2-ER-71–89.)

Defendants—who included Appellant and various associated entities, such as PureThink LLC—raised affirmative defenses challenging Neo4j USA's trademark ownership. They asserted that the trademark registration had been fraudulently obtained and was abandoned through naked licensing. The District Court granted Neo4j's motions for judgment on the pleadings on these defenses and, later, struck the defenses again when they were reasserted in response to the TAC. (1-ER-11.)

By stipulation, the parties agreed to divide summary judgment into phases. **Phase One** addressed trademark-related issues and certain affirmative defenses (including abandonment, cancellation, and fair use). The District Court granted summary judgment to Neo4j in May 2021 and issued a preliminary injunction that, among other things, barred Appellant from advertising ONgDB ("Open Native graph DataBase") as a "free and open-source drop-in replacement of Neo4j

Enterprise Edition," and from representing that Neo4j Sweden's addition of the Commons Clause to the AGPL violated its terms. Appellant filed a notice of appeal from that preliminary injunction, resulting in prior Ninth Circuit proceedings.

## B. **Subsequent Litigation and Final Judgment**

Following the initial appeal, various claims and defenses remained pending for **Phase Two**, including claims for copyright infringement, false advertising, breach of an alleged exclusivity agreement, and additional defenses such as unclean hands. Neo4j ultimately moved for, and was granted, summary judgment on these remaining issues. The District Court held, inter alia:

1. That Appellant's removal of the Commons Clause from Neo4j Sweden's source code license violated the DMCA (17 U.S.C. § 1202(b)).

2. That the trademark claims, consolidated across Phases One and Two, conclusively established Neo4j USA's standing despite Appellant's continued challenge to actual ownership by Neo4j Sweden.

3. That ONgDB marketing materials were misleading under the Lanham Act, warranting damages.

4. That the purported exclusivity agreement with PureThink did not bar Neo4j's conduct, leading to dismissal of PureThink's breach-of-contract claims.

In final rulings culminating on August 15, 2024, the District Court entered judgment in favor of Neo4j, including an award of damages. Appellant contends that the damages award is speculative and unsupported because the underlying rulings on liability and causation were erroneous. Appellant timely filed a notice of appeal on September 11, 2024, pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A).

C. **Present Appeal**

This appeal challenges the District Court's final judgment. Appellant argues that if any of the District Court's predicate determinations—such as the conclusions about false advertising, trademark ownership, DMCA liability, or breach of contract—are reversed, the foundation for the damages award necessarily

collapses. Appellant also contends that exclusion of crucial evidence (including certain expert testimony and communications from the Free Software Foundation) further undermined the District Court's rulings. As Appellant explains in the Argument section, these evidentiary and legal rulings, taken together, affected the central issue of damages in a manner warranting reversal or remand.

# SUMMARY OF THE ARGUMENT

The district court's judgment must be reversed because it rests on multiple errors of law and fact that underpin both liability and the speculative damages award. First, the court improperly awarded damages without establishing a causal link between Appellant's conduct and Neo4j's alleged harm. The record indicates that the government agency's decision to use ONgDB was driven by cost and technical considerations, not Appellant's statements, rendering the damages calculation impermissibly speculative.

Second, the court resolved pivotal factual disputes in Neo4j's favor—both at the pleading and summary judgment stages—most notably by striking Appellant's affirmative defense of invalid trademark and granting summary judgment on the false advertising claims. Genuine factual controversies remain regarding the meanings of "free and open source" and "drop-in replacement," the ownership of the Neo4j trademark, and the AGPL–Commons Clause licensing framework. By preemptively disposing of these issues, the district court deprived Appellant of a jury's determination on contested facts.

Third, the district court erred in its interpretation and application of the AGPL. By disregarding the Free Software Foundation's cease-and-desist letter, it overlooked a persuasive authority recognizing that the Commons Clause is incompatible with the AGPL's terms. The court also excluded critical expert testimony and supporting exhibits, preventing a full assessment of whether Appellant's actions were consistent with established open-source practices.

Additionally, the district court improperly granted summary judgment on the PureThink exclusivity agreement—an issue independent of the damages calculation—by failing to consider substantial evidence that PureThink (whose rights have been assigned to Appellant) was designated as the exclusive Neo4j reseller for certain federal agencies. This contractual dispute stands on its own and should not have been dismissed given the material factual questions concerning the parties' intent, verbal assurances, and course of performance.

Because these errors collectively undermine the basis for liability, they also vitiate the damages award. If any of the district court's core rulings on liability or causation are reversed, the foundation for the damages collapses. Appellant therefore respectfully requests that this Court reverse the judgment and remand for a proper trial on all disputed issues.

## STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo. We must determine, viewing the evidence in the light most favorable to the

> nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. …
> The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial.

*MAI Systems Corp. v. Peak Computing, Inc.*, 991 F.2d 511, 516 (9th Cir. 1993).

"Because of the intensely factual nature of trademark disputes, summary judgment

is generally disfavored in the trademark arena." *Interstellar Starship Servs, Ltd. v.*

*Epix Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999).

This Court usually reviews a preliminary injunction under an abuse of discretion standard, which means that it reviews questions of law *de novo* and

determinations of fact under the clearly erroneous standard. *E.g., Pom Wonderful*

*LLC v. Hubbard*, 775 F.3d 1118, 1123 (9th Cir. 2014). In this instance, however,

the court's preliminary injunction is "inextricably bound up" with its legal

resolution of the summary judgment; this Court therefore exercises

plenary review.

*MAI Systems*, 991 F.2d at 516.

# ARGUMENT

## I. The District Court Erred in Awarding Speculative and Unsupported Damages Without Evidence of Causation

### A. Lack of Causation

The district court awarded damages without establishing a causal link between Appellants' actions and Neo4j's alleged harm. Under Ninth Circuit precedent, damages must be based on evidence demonstrating a direct causal connection between the defendant's conduct and the plaintiff's harm. In Frank Music Corp. v. Metro-Goldwyn-Mayer Inc., 772 F.2d 505, 512 (9th Cir. 1985), the Ninth Circuit emphasized that damages must be proved with "at least reasonable certainty," requiring a direct causal link. Similarly, in Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 133 (2014), the Supreme Court clarified that a plaintiff must show materiality and that economic harm flowed directly from the alleged misrepresentation. Ninth Circuit authority consistently upholds

these principles. See, e.g., Skydive Arizona, Inc. v. Quattrocchi, 673 F.3d 1105, 1112-14 (9th Cir. 2012); Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1146 (9th Cir. 1997).

Here, Neo4j failed to meet this standard. The record lacks evidence showing that Appellants' representations materially influenced the Maryland Procurement Office's (MPO) decision to use ONgDB. Instead, the evidence demonstrates that the MPO's decision was driven by cost and technical considerations, independent of licensing assertions or advertising claims. This absence of a causal connection necessitates reversal of the damages award.

1. Independent Decision-Making by MPO

The Maryland Procurement Office (MPO), via its contractor Next Century, decided to use ONgDB based on budgetary and technical considerations, not on Appellants' alleged representations. The court's findings and evidence from the record confirm this:

- **Appellants' Neutral Statements**: Appellants explicitly informed Next Century, "If you are using ONgDB and have any concerns, or don't see it keeping up with enterprise

features, you can always switch to a commercial Neo4j Enterprise package through any partner on the Neo4j.com website." [ER-14-2888]. This demonstrates that Appellants did not discourage the purchase of Neo4j Enterprise and instead presented it as a viable option.

- **Independent Legal Review**: Next Century consulted legal counsel regarding Neo4j's licensing terms, demonstrating that its decision-making process was independent of any statements by Appellants. ER-14-2883

- **Findings on Cost-Driven Decisions**: The court itself acknowledged that MPO continued using ONgDB over Neo4j Enterprise due to cost considerations, not reliance on alleged misrepresentations. For example, the court noted: "The reason for the MPO continuing to use ONgDB over Neo4j EE was price". ER-14-2901  Additionally, "Next Century confirmed that it shared Neo4j USA's proposal with the MPO and was instructed by the MPO to continue using ONgDB" [Trial Ex. 119, ECF No. 241-43]. This decision aligns with repeated findings that the MPO's selection of

ONgDB was driven by cost considerations rather than licensing nuances or advertising claims.

- **Technical Sufficiency of ONgDB**: The MPO determined that ONgDB provided the necessary functionality without requiring features exclusive to Neo4j Enterprise. For instance, the NSA used ONgDB, suggesting they did not need features from the commercial enterprise version. On April 29, 2019, Next Century informed Neo4j USA that open-source builds from the Neo4j source code provided the clustering and security requirements needed in their environment. This was supported by the court's finding: "On April 29, 2019, Next Century confirmed that it shared Neo4j USA's proposal with the MPO and was instructed by the MPO to continue using ONgDB". ER-14-2900 The reason for the MPO continuing to use ONgDB over Neo4j EE was price." ER-14-2901

2. Misunderstanding of the Commons Clause

The district court's conclusion that Appellants' advertising of ONgDB as "open source" and a "drop-in replacement" influenced the MPO's decision rests on a fundamental misunderstanding of the Commons Clause:

- **Irrelevance to Government Use**: The Commons Clause restricts resale and consulting—activities irrelevant to government agencies like the MPO, which do not engage in these activities. 12-ER-2642.
- **ONgDB Was Free Regardless**: ONgDB remained free to use with or without the Commons Clause. The AGPL license permits free use, and the MPO's choice was unaffected by licensing nuances.

3. **Role of the Graph Foundation (GFI)**

If the court finds that the MPO relied on representations about ONgDB being "free and open source" or a "drop-in replacement," the evidence shows that GFI, not Appellants, made these key representations:

- **GFI's Licensing Representations**: Nussbaum, representing GFI, assured Next Century that ONgDB was "fully open source"

and governed by the AGPLv3 without the Commons Clause. 4-ER-887

- **Next Century's Reliance on GFI**: Next Century directly engaged GFI for licensing clarifications while consulting independent legal advice. For instance, they questioned discrepancies between Neo4j's terms and GFI's representations. 4-ER-886:897

- Appellant Suhy introduced GFI to Next Century and then stepped back from substantive communications, allowing GFI to take over. "THEY TALKED TO LAWYERS ABOUT THIS SUBJECT, AND IT WAS BETTER FOR THEM TO TALK TO THEM INSTEAD OF ME BEING THE MIDDLE PERSON." 13-ER-2780

- After the introduction, Nussbaum, representing GFI, handled all substantive discussions about ONgDB's licensing and governance with Next Century. 4-ER-887

- GFI Was the Source of Licensing Representations: Nussbaum, on behalf of GFI, made detailed representations about ONgDB's licensing status, including:

Claims that ONgDB was "fully open source" and governed by AGPLv3 without the Commons Clause. 4-ER-887.

- Assurances that ONgDB "restores the Neo4j Enterprise source code" that had been removed by Neo4j. 4-ER-887.

- Nussbaum's role as the authoritative voice on ONgDB's licensing underscores that MPO would naturally rely on GFI for licensing clarifications and assurances, not Appellants.

- Next Century's Reliance on GFI and Legal Counsel: Following GFI's communications, Next Century directly engaged Nussbaum for clarifications, including questions about licensing validity and legal authorities. For example, Nagiel asked, "Have any independent or government legal authorities weighed in on this to your knowledge?" 4-ER-891.

- Next Century also explicitly stated that they were consulting with legal counsel regarding ONgDB's licensing terms. 14-ER-2883

- As the owner and maintainer of ONgDB, GFI had exclusive control over its development and licensing. Nussbaum directed Next Century to GFI's GitHub repository and website, further

reinforcing GFI's role as the authoritative source on ONgDB's governance. 4-ER-887

- This demonstrates that Next Century, and by extension MPO, looked to GFI—not Appellants—for critical licensing assurances while consulting independent legal advice to finalize their decisions.

- Despite GFI making identical or substantially similar representations, Neo4j settled separately with GFI without pursuing monetary damages. Specifically, "A Judgment of a permanent injunction was issued against GFI (Dkt 110 in GFI case 5:19-cv-6226). GFI paid no money to plaintiffs in the GFI case" Dkt 110 in GFI case 5:19-cv-6226, Dkt 234, 11:14-18, ¶72.

4. **Conclusion**

Neo4j failed to establish a direct and material causal link between Appellants' actions and its alleged harm. The MPO's decision was driven by cost considerations and independent decision-making, consistent with Ninth Circuit precedent in *Frank Music* and

*Lexmark.* The district court's speculative damages award rests on a misapprehension of causation and should be reversed.

**B. Speculative Nature of Damages : The damages award was based on speculative projections rather than concrete evidence of harm. Neo4j relied on hypothetical scenarios to calculate lost revenue, ignoring the fact that the software in question was distributed for free under the AGPL.**

1. The District Court's Damages Award Was Not Based on Substantial Evidence

The district court awarded $597,000 in damages based on an unfinalized quote and unsupported assumptions regarding the MPO's willingness to purchase a Neo4j Enterprise Edition (EE) license. However, the damages award lacked substantial evidence and relied on speculation, contrary to binding precedent from the Ninth Circuit and Supreme Court. 14-ER-2912

In Skydive Arizona, Inc. v. Quattrocchi, the Ninth Circuit emphasized that "the fact of damages" must be established with reasonable certainty, even if "the exact amount of actual damages"

requires a lower standard of proof (673 F.3d 1105, 1112 (9th Cir. 2012)). The court held that while crude measures may suffice, damages cannot be based on "fanciful" or "inexorable" inferences but must be grounded in substantial evidence. Specifically, the court stated: "In reviewing a jury's award of actual damages for intentional infringement, we accept 'crude' measures of damages based upon reasonable inferences so long as those inferences are neither 'inexorable ... [nor] fanciful.'" (Id., quoting Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 621 (9th Cir. 1993)).

Similarly, in Lindy Pen Co. v. Bic Pen Corp., the court reaffirmed that "damages which result from a tort must be established with reasonable certainty." The court stressed that while "damages are not rendered uncertain because they cannot be calculated with absolute exactness," they require a "reasonable basis for computation" (982 F.2d 1400, 1407 (9th Cir. 1993)).

Here, the evidence presented at trial shows:

- The MPO had no approved budget for a Neo4j EE license—a critical factor overlooked by the district court. 14-ER-2900, ER-14-2901

- The April 2019 Offer by Neo4j was not final; Neo4j itself admitted it was prepared to offer a "much lower price" following negotiations. 14-ER-2900

- The court assumed a 3-year renewal of the license, without any evidence that the MPO intended to make such a long-term commitment. 14-ER-2910.

- The KMS Project terminated in September 2019, with no evidence showing any obligation or likelihood of multi-year renewals. 14-ER-2900

Awarding damages based on an unfinalized quote, coupled with an unsupported renewal assumption, constitutes speculation and violates Ninth Circuit precedent that damages must be proven with reasonable certainty and cannot rely on conjecture or unfounded assumptions.

## 2. The District Court Failed to Address the MPO's Cost-Driven Decision-Making

The court's assumption that the MPO would have accepted Neo4j's proposed commercial license ignores uncontroverted evidence

demonstrating that cost—not the alleged misconduct—drove the MPO's decision. The district court itself found:

- "The reason for the MPO continuing to use ONgDB over Neo4j EE was price". ER-14-2900

- Neo4j's quoted price of $199,000/year far exceeded the MPO's prior expenditures on similar technology, which ranged between $9,300 and $248,310. ER-14-2909

- The MPO explicitly stated that "open-sourced (non-commercial) builds from the Neo4j source code provide the clustering and security requirements needed". ER-14-2899

As established in Bigelow v. RKO Radio Pictures, Inc., damages must not be based on guesswork or conjecture but require proof of economic harm with reasonable certainty (327 U.S. 251, 264 (1946)). Here, the MPO's demonstrated cost constraints and historical preference for free or lower-cost solutions further underscore the speculative nature of the damages award.

*3.* The District Court's Multi-Year Renewal Assumption is Unsupported

The district court assumed the MPO would have renewed the
Neo4j EE license for three years, compounding the damages to
$597,000. However, this assumption is unsupported by the record:

- The KMS Project, which served as the basis for damages,
  ended in September 2019, undermining any presumption of
  multi-year renewals. ER-14-2900

- There is no evidence that subsequent projects, such as
  "Route 66," required Neo4j EE or that the MPO would have
  allocated funding for a commercial license. ER-14-2911

- The continuation of projects like Route 66 using ONgDB
  does not establish any likelihood that the MPO would have
  purchased a paid license instead of continuing with free
  alternatives. ER-14-2911

In McGlinchy v. Shell Chem. Co., the Ninth Circuit held that
damages projections based on speculative renewals or
hypothetical extensions of agreements lack sufficient reliability
and cannot support an award (845 F.2d 802, 808 (9th Cir. 1988)).
The district court's reliance on an unsupported multi-year renewal
assumption improperly inflated the damages and cannot stand.

*4.* The District Court Ignored Substantial Alternative Explanations

The record demonstrates that the Graph Foundation Inc. (GFI), not Appellants, provided key licensing assurances regarding ONgDB. This alternative explanation for the MPO's decision to use ONgDB was improperly ignored:

- GFI independently verified that the Commons Clause could be removed, and ONgDB could be used under AGPLv3 without restrictions. 'We have been advised by The Free Software Foundation in a non-legal capacity and have verified with our legal counsel independently that the Commons Clause is a "further restriction" to AGPLv3 and may be removed according to this clause of AGPLv3.' ER-14-2883

- The MPO relied on its own legal counsel to evaluate licensing terms and independently concluded that ONgDB could be used without requiring a Neo4j license. 14-ER-2883

As held in Lexmark Int'l, Inc. v. Static Control Components, Inc., damages must flow directly from the defendant's alleged conduct, excluding speculative or remote causes (572 U.S. 118, 133 (2014)). The Court emphasized that "proximate causation bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct, such as when the harm is purely derivative of misfortunes visited upon a third person by the defendant's acts." (Id. at 133). Here, the district court failed to account for alternative explanations, such as GFI's licensing assurances and the MPO's reliance on its own legal counsel, which undermine any direct causal connection between Neo4j's actions and the MPO's choice of ONgDB.

*5.* Conclusion: Damages Must Be Reversed as Speculative

The damages awarded to Neo4j were based on unsubstantiated assumptions regarding:

- The MPO's willingness to accept Neo4j's commercial license offer.

- The likelihood of multi-year renewals.

- The irrelevance of cost as a driving factor in the MPO's decision-making process.

- The MPO's reliance on independent legal advice and GFI's assurances.

These assumptions lack substantial evidence and conflict with established precedent requiring damages to be proven with reasonable certainty. Under Lindy Pen and Skydive Arizona, the district court's damages award cannot stand and must be vacated as speculative.

## II.  The District Court Improperly Resolved Genuine Disputes of Material Fact in Ruling on Foundational Claims for Damages

### A. Striking of Affirmative Defense

### 1. The District Court Violated FRCP 8(c) by Improperly Striking Appellant's Affirmative Defense

Under Federal Rule of Civil Procedure 8(c), a party has the right to affirmatively state defenses such as fraud, license, or similar grounds for avoidance. Appellant properly asserted the affirmative defense of invalid trademark based on Neo4j's misrepresentations in its trademark application. Specifically, Appellant alleged that Neo4j's trademark registration was procured through false statements regarding ownership and first use of the mark (ER-14-2931).

By striking this affirmative defense, the District Court improperly curtailed Appellant's procedural right to present evidence and argument on a legally recognized defense. Whether Neo4j's trademark application contained misrepresentations is a genuine dispute of material fact that should have been resolved through trial, not summarily dismissed at the pleading stage.

This procedural error further prejudiced Appellant and compounded the harm caused by the court's reliance on

unpublished opinions. The combined effect was to deprive

Appellant of a fair opportunity to defend against Neo4j's claims.

## 2. The District Court Misapplied the Rule 12(c) Standard

Under Rule 12(c), a motion for judgment on the pleadings is governed

by the same standard as a Rule 12(b)(6) motion. The court must

accept all factual allegations as true and may not resolve genuine

disputes of material fact. As articulated in Chavez v. United States,

683 F.3d 1102, 1108 (9th Cir. 2012), judgment is only appropriate

when it is clear that no facts could support the non-moving party's

claim or defense.

By striking Appellant's affirmative defense of trademark invalidity,

the District Court improperly resolved factual disputes regarding

Neo4j's ownership claims and alleged misrepresentations in its

trademark application. These issues—including the date of first use

and the validity of Neo4j's trademark—constitute genuine disputes of

material fact that should have been resolved through trial, not on the

pleadings.

### 3. Binding Precedent Exists and Should Have Been Applied

The district court failed to fully adhere to binding Ninth Circuit precedent in its analysis of the Rule 12(c) motion and its striking of Appellant's affirmative defenses and counterclaims.

- Standard for Rule 12(c) Motions: The court's procedural analysis should have cited Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012), which clearly articulates the standard for granting judgment on the pleadings. Chavez states that a Rule 12(c) motion is governed by the same standard as Rule 12(b)(6), requiring dismissal only when it is clear that no facts could support the claim.

- Discretion to Grant Leave to Amend: The court's discretion to grant leave to amend is well-established in Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009), which provides that

> leave should be granted unless amendment would be futile,
> cause undue delay, or prejudice the opposing party.

While the court cited procedural rules, its application failed to adequately consider material disputes, particularly regarding Appellant's affirmative defense of trademark invalidity and related counterclaims. Proper application of these precedents would have preserved Appellant's opportunity to amend and more fully defend against Neo4j's allegations.

### 4. Prejudice Resulting from Procedural Errors

The district court's procedural missteps caused direct prejudice to Appellant's ability to defend against Neo4j's claims. By striking Appellant's affirmative defense of trademark invalidity and dismissing related counterclaims, the court circumvented proper resolution of material factual disputes, including:

- Neo4j's misrepresentations in its trademark application (2-ER-189, 11-ER-2414).

- Disputes over the first use date and ownership of the Neo4j trademark (ER-14-2931).

These disputes are central to Appellant's affirmative defense and counterclaims. Proper consideration of these issues under established Ninth Circuit standards would have preserved Appellant's ability to challenge Neo4j's claims on substantive grounds.

## B. False Advertising : The district court erred in granting summary judgment on Neo4j's false advertising claims by misinterpreting the terms "free and open source" and "drop-in replacement." Genuine disputes existed regarding the meaning of these terms in industry and government contexts.

The Ninth Circuit reviews grants of summary judgment de novo, applying the standard outlined in Fed. R. Civ. P. 56(a). Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable inferences must be drawn in favor of the nonmoving party, and courts may not resolve factual disputes or

make credibility determinations. Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## 1. The Burden of the Moving Party

It is a well-established principle that the party moving for

summary judgment bears the initial burden of demonstrating the

absence of a genuine dispute of material fact. Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986). Neo4j, as the moving party, was

required to provide evidence sufficient to show that no reasonable

jury could find in favor of the nonmoving party. Only after Neo4j

carried this burden would the defendants have been required to

produce evidence demonstrating a genuine issue for trial. Neo4j

failed to meet this burden.

Neo4j relied heavily on conclusory statements and interpretations

unsupported by empirical evidence. For example, Neo4j's Vice

President of Products admitted that no empirical testing had been

conducted to confirm whether ONgDB was compatible with Neo4j

EE (6-ER-1375). Such a lack of evidence underscores Neo4j's

failure to eliminate genuine factual disputes, particularly when

defendants presented contrary evidence through testimony, technical explanations, and industry-specific interpretations.

## 2. The Meaning of "Free and Open Source" Presented a Genuine Dispute of Material Fact

The AGPL's preamble is widely recognized as a definitive statement of what constitutes "open source." By leaving the AGPL preamble intact while adding the Commons Clause, Neo4j effectively retained a representation that the software was "open source." The preamble explicitly reflects the Free Software Foundation's principles, which are foundational to the understanding of open-source software in the industry. This is akin to leaving a statement that the software remains "free and open source."

This inconsistency—leaving the preamble while adding restrictions—creates a factual question as to whether ONgDB was accurately characterized as "free and open source." A jury should evaluate whether the AGPL's preamble and its widely known definition of "open source" conflict with Neo4j's arguments. The district court's failure to recognize this widely accepted

understanding underscores why this issue is not suitable for resolution at summary judgment.

The district court erroneously concluded that ONgDB's characterization as "free and open source" was false based on Neo4j Sweden's addition of the Commons Clause (8-ER-2043:2044). However, Section 7 of the AGPL explicitly allows licensees to remove added restrictions. Evidence in the record, including testimony from John Mark Suhy, supports this interpretation: "If the Program as [the licensee] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [the licensee] may remove that term." (10-ER-2298).

Neo4j's argument that the AGPL's terms were violated rests on an incorrect interpretation of the license (8-ER-2043:2044). The district court's failure to consider the plain language of Section 7 and testimony regarding its industry-accepted meaning creates a factual dispute requiring resolution by a jury.

## 3. The Meaning of "Drop-In Replacement" Presented a Genuine Dispute of Material Fact

The district court misinterpreted the term "drop-in replacement" to mean feature parity, concluding that ONgDB's marketing claims were misleading. Testimony from Suhy and Brad Nussbaum clarified that "drop-in replacement" is a technical term widely understood in the software industry to mean compatibility for data and queries, not feature-for-feature equivalence. Nussbaum explained: "Drop-in replacement refers more to compatibility of features . . . we were able to take a Neo4j [Enterprise Edition] 3.5.4 version, create a database, and just show that it worked with ONgDB at that same version." (Nussbaum Depo., 160:9-14).

Additionally, John Mark Suhy testified: "That has nothing to do with drop-in replacement; it's all about the core and the ability to change over. You know, so implement Cypher, it has the same version number so you have the same Cypher version. That's what I'm talking about when you do a drop-in replacement." (10-ER-2298:2299).

This understanding is reinforced by industry analogies. For example, a "drop-in replacement" engine may fit into the same

chassis and function equivalently, even if it lacks optional features like added Wi-Fi or specialized mufflers. This analogy demonstrates that ONgDB's compatibility with Neo4j EE versions suffices to meet the description of a "drop-in replacement" without requiring feature parity.

## 4. Additional Disputed Facts

Fact 77: Neo4j alleged that ONgDB distributions were falsely advertised as "free and open" drop-in replacements for Neo4j EE. However, Defendants argued that all such statements were true, citing that ONgDB distributions were "licensed under AGPLv3 as a free and open drop-in replacement of Neo4j Enterprise commercial licensed distributions with the same version number." (8-ER-2024). Defendants also presented evidence that ONgDB was derived from Neo4j Community Edition and modules licensed under AGPLv3. These disputes require resolution by a jury.

Fact 101: Neo4j claimed that GFI admitted ONgDB could not "reliably guarantee" drop-in replacement compatibility after version 3.5.4. Defendants countered that while versions post-3.5.4 were unverified, no users reported incompatibility with Neo4j

software, and tests were conducted to ensure compatibility for earlier versions. (8-ER-2033:2034).

Fact 102: Neo4j alleged that consumers were misled into believing they were downloading an exact copy of Neo4j EE. Defendants disputed this, explaining that ONgDB users were informed about the differences and that ONgDB operated as a drop-in replacement for core functionality without requiring feature parity. (8-ER-2034:2035).

Fact 104: Neo4j accused Defendants of intentionally misleading consumers by describing ONgDB as a "free and open" drop-in replacement under the AGPL. Defendants presented testimony clarifying that their use of "drop-in replacement" referred to compatibility and that such statements were accurate. (8-ER-2036).

## 5. Materiality of Disputed Facts to False Advertising Claims

These factual disputes are central to Neo4j's false advertising claims under the Lanham Act. Whether ONgDB was accurately described as "free and open source" and a "drop-in replacement"

affects the elements of falsity, materiality, and deception. Neo4j alleges that these statements diverted sales and caused consumer confusion (8-ER-2033:2034). However, the meaning of these terms is highly contextual and industry-specific, necessitating jury evaluation.

Moreover, Neo4j failed to present affirmative evidence demonstrating that ONgDB's claims were false. In Castrol, Inc. v. Quaker State Corp., 977 F.2d 57, 62-63 (2d Cir. 1992), courts held that falsity must be proven with empirical evidence, not conjecture. Neo4j's reliance on untested assumptions fails to meet this burden.

## 6. Precedent Emphasizes the Jury's Role in Resolving Factual Disputes

The Supreme Court has consistently held that summary judgment is inappropriate where factual disputes exist. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255. The Ninth Circuit has similarly emphasized that trademark and false advertising claims

are "intensely factual," making them unsuitable for summary judgment. Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1202 (9th Cir. 2012).

The district court's reliance on Philip Rathle's declaration to assert incompatibility between ONgDB and Neo4j EE highlights this point. Rathle's declaration, which was not based on testing, constitutes opinion rather than empirical evidence. Neo4j's inability to present empirical data contrasts sharply with cases like Sun Microsystems, Inc. v. Microsoft Corp., 999 F. Supp. 1301 (N.D. Cal. 1998), where plaintiffs conducted testing to support claims of false advertising.

## 7. The District Court Failed to Draw Reasonable Inferences in Favor of Defendants

The district court improperly resolved ambiguities against the defendants:

- The court adopted Neo4j's interpretation of "drop-in replacement" without addressing testimony and evidence

demonstrating its industry-specific meaning as compatibility-focused (10-ER-2298:2299).

- The court disregarded Section 7 of the AGPL and defendants' evidence supporting their removal of the Commons Clause (8-ER-2039).

- Neo4j's lack of empirical testing, a critical omission, was ignored despite its relevance to the claim of incompatibility (6-ER-1375).

## 8. Reversal and Remand for Trial Are the Proper Remedies

Material factual disputes preclude summary judgment. Courts have repeatedly reversed summary judgments in false advertising cases where genuine issues of fact existed. See Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997). The district court's failure to consider key evidence and resolve ambiguities in favor of the nonmovant warrants reversal.

## 9. Conclusion

The district court erred in granting summary judgment on Neo4j's false advertising claims by improperly resolving material factual disputes, including the interpretation of "free and open source"

and "drop-in replacement." These issues are central to the claims and should be resolved by a jury. This Court should reverse the summary judgment and remand for trial.

## C. Neo4j USA is Not the Owner of the Neo4j Trademark, and Registration Alone Does Not Establish Ownership

The district court improperly concluded that Neo4j USA owns the Neo4j trademark, despite clear evidence to the contrary (11-ER-2414). Trademark registration does not create ownership of a trademark; rather, it serves as a procedural mechanism that may provide jurisdiction but does not confer substantive ownership rights. In this case, Neo4j Sweden, not Neo4j USA, owns the Neo4j mark. As only the owner of the mark can assert a claim for trademark infringement, Neo4j USA failed to satisfy the foundational element of its trademark claims. Consequently, summary judgment in favor of Neo4j USA was improper (1-ER-3).

Neo4j USA's claim of ownership relies heavily on the "related companies doctrine" under 15 U.S.C. § 1055, which allows use by a

related entity to inure to the benefit of the trademark registrant. However, for this doctrine to apply, the mark's owner must control the nature and quality of goods or services offered by the related entity. In this case, Neo4j Sweden—the true owner of the mark— did not control Neo4j USA's use of the mark. Instead, Neo4j Sweden licensed the Neo4j trademark to Neo4j USA on a non-exclusive basis (11-ER-2414). A non-exclusive licensee lacks standing to bring an infringement action. See Quabaug Rubber Co. v. Fashion Shoe Co., 567 F.2d 154, 159–60 (1st Cir. 1977); National Licensing Association, LLC v. Inland Joseph Fruit Co., 361 F. Supp. 2d 1244, 1254 (E.D. Wash. 2004).

The license agreement between Neo4j Sweden and Neo4j USA explicitly establishes Neo4j Sweden's ownership and reserves all rights to the mark. It further confirms that the license is non-exclusive and subject to royalty payments (11-ER-2414:2420+). Key provisions in the license agreement, including Recital 1, Sections 1.6(b), 1.7, 2.1, and Article 3, underscore that Neo4j Sweden retains full ownership and merely grants Neo4j USA a limited right to use the mark (11-ER-2414). Neo4j USA's payment

of royalties to Neo4j Sweden further supports Sweden's retained ownership and contradicts any assertion of an exclusive property interest in the mark.

The court below also quoted 15 U.S.C. § 1127, which defines a "related company" as "any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used" (1-ER-17–18). However, the court failed to consider how these definitions applied in this case. Neo4j Sweden's lack of control over Neo4j USA's use of the mark precludes the application of the related companies doctrine, as control is a prerequisite to invoking this principle.

Ownership of the Neo4j mark remains with Neo4j Sweden, as evidenced by its worldwide trademark applications (7-ER-1687-1688, 7-ER-1692-1693, 7-ER-1696, 7-ER-1698,7-ER-1700, 7-ER-1702, 7-ER-1704, 7-ER), consistent use of the mark, and Neo4j USA's royalty payments under the licensing agreement (11-ER-2414:2420+). Courts have long held that registration does not confer ownership. See Allard Enterprises v. Advanced

Programming Resources, Inc., 146 F.3d 350, 356 (6th Cir. 1998). The related companies doctrine also does not transfer ownership but merely clarifies the benefit of related entities' prior use for registration purposes. See Noble House Home Furnishings, LLC v. Floorco Enterprises, LLC, 2016 TTAB LEXIS 100.

Neo4j USA's reliance on the presumption of ownership afforded by registration under the Lanham Act is unavailing. While registration creates a rebuttable presumption of validity, it "evaporates as soon as evidence of invalidity is presented." Hokto Kinoko Co. v. Concord Farms, Inc., 810 F. Supp. 2d 1013, 1022 (C.D. Cal. 2011). Here, overwhelming evidence of Neo4j Sweden's ownership—including its direct licensing relationship with Neo4j USA and the reservation of all trademark rights—renders Neo4j USA's registration insufficient to establish a protectable interest in the mark (11-ER-2414).

Finally, the district court erred in dismissing the critical issue of ownership on summary judgment. As ownership of the mark is a genuine issue of material fact, it was improper for the district court to resolve this question as a matter of law. The license

agreement, royalty payments, and Neo4j Sweden's consistent assertion of ownership create triable disputes requiring a jury's determination. This error undermines the foundation of Neo4j USA's claims and warrants reversal of the court's decision.

## D. The District Court Improperly Granted Summary Judgment on the DMCA Claim

Defendants-Appellants PureThink, iGov, and John Mark Suhy (collectively, "Defendants") respectfully submit that the District Court erred in granting summary judgment in favor of Plaintiffs-Appellees Neo4j, Inc. and Neo4j Sweden AB (collectively, "Plaintiffs") on their Digital Millennium Copyright Act (DMCA) claim. This appeal presents critical issues of material fact that were improperly resolved at summary judgment, including whether Plaintiffs were authorized to invoke the DMCA for changes to a license file they did not author, and whether Defendants' actions violated the DMCA under the circumstances.

## 1. Material Factual Disputes Preclude Summary Judgment

The District Court's ruling overlooked substantial factual disputes central to the DMCA claim. Plaintiffs allege that Defendants violated 17 U.S.C. § 1202(b) by removing copyright management information (CMI) from the Neo4j Sweden Software License file, specifically by replacing it with a generic version of the GNU Affero General Public License (AGPL). However, Defendants presented significant evidence that:

1.    **The Copyright in the AGPL File Belongs to the Free Software Foundation (FSF)**. The AGPL license file—as distributed—contains a copyright notice belonging to the FSF, not Neo4j Sweden (9-ER-2134). Neo4j Sweden does not have ownership of the underlying copyright for the license terms themselves. (Opposition Brief, Dkt. 188, p. 5). This raises a material question as to whether Neo4j Sweden can invoke the DMCA to challenge changes to an FSF copyright file. Additionally, a November 13, 2023, cease-and-desist letter from the FSF explicitly stated that Neo4j's addition of the Commons Clause created an impermissible derivative work of the AGPL and

directed Neo4j to cease its unauthorized use of the FSF's license and trademarks (14-ER-2945:2948).

Further, the AGPL itself, as modified by Neo4j, retained the original FSF copyright and the preamble, which states: "Copyright (C) 2007 Free Software Foundation, Inc. http://fsf.org/. Everyone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed" (9-ER-2134). Neo4j did not replace the FSF copyright with its own, further demonstrating its lack of ownership over the license file.

2.    **Removal of the Commons Clause Was Proper Under the AGPL's Terms**. The AGPL expressly permits licensees to remove "further restrictions" under Section 7 of the license (9-ER-2141:2142). Defendants' actions—removing the improperly added Commons Clause and reverting the license to the original AGPL— fall squarely within these terms. The FSF's letter reinforces this interpretation, confirming that the Commons Clause constitutes an impermissible "further restriction" under the AGPL.

Mr. Suhy's reasoning for reverting the AGPL license to its verbatim state is documented in a git commit message: "Updated

the LICENSE.txt file to be pure AGPL as to not violate the FSF copyright and to be in line with the AGPL license" (3-ER-478). This demonstrates that Defendants acted to comply with the AGPL and avoid copyright violations, rather than to induce infringement.

3.  **Neo4j Sweden's Licensing Practices Contradict the AGPL**. Neo4j Sweden's addition of the Commons Clause violated the FSF's AGPL copyright by introducing terms explicitly prohibited under the license (9-ER-2141:2142). The FSF's cease-and-desist letter emphasized that such modifications were not authorized and caused significant confusion among licensees. Defendants acted to prevent further violations of the FSF's copyright, a factual dispute central to their defense. Moreover, Neo4j's modified license included contradictory language, referring to itself as the "GNU Affero General Public License Version 3" while adding the Commons Clause, which is explicitly forbidden under the AGPL (9-ER-2134).

## 2. Neo4j's Lack of Copyright Ownership Undermines the DMCA Claim

A claim under 17 U.S.C. § 1202(b) requires that the plaintiff demonstrate ownership of the CMI allegedly removed or altered. The AGPL files in question clearly identifies the FSF as the copyright holder. 9-ER-2134

Neo4j Sweden's addition of the Commons Clause, which altered the original AGPL, was unauthorized under the terms of the license. By removing the unauthorized clause, Defendants were complying with the AGPL's intent and terms. The FSF's cease-and-desist letter further clarified that Neo4j's actions constituted an impermissible derivative use of the AGPL and that all licensees had the right to remove such restrictions (14-ER-2945:2948). The District Court erred in treating Neo4j Sweden's copyright claims as settled when significant disputes remained over whether Neo4j Sweden owned the rights it claimed under the DMCA.

## 3. The District Court Misapplied the "Law of the Case" Doctrine

The District Court improperly relied on earlier rulings and the "law of the case" doctrine to foreclose Defendants' arguments

about the legality of their actions under the AGPL (15-ER-3092:3093). While the Ninth Circuit previously addressed false advertising claims under the Lanham Act, it did not resolve the factual issues material to the DMCA claim—such as the ownership of the AGPL copyright or whether the removal of the Commons Clause complied with Section 7 of the AGPL. The FSF's cease-and-desist letter highlights ongoing disputes over the interpretation and application of the AGPL, underscoring why the "law of the case" doctrine does not apply. Herrington v. Cty. of Sonoma, 12 F.3d 901, 904 (9th Cir. 1993).

## 4. The Exclusion of Expert Testimony Prejudiced Defendants

The District Court excluded the expert report of Bradley Kuhn, a renowned authority on free software licensing, which supported Defendants' interpretation of the AGPL (16-ER-3196:3375). Kuhn's testimony explained that removing the Commons Clause was customary and permissible within the free software community and consistent with the FSF's licensing terms. Similarly, the District Court excluded the FSF's cease-and-desist letter, which directly supported Defendants' interpretation of the

AGPL and contradicted Neo4j Sweden's claims. The exclusion of this critical evidence deprived the Court of necessary context and underscores why summary judgment was inappropriate.

## 5. Material Disputes Exist Regarding Defendants' Intent

The DMCA requires proof that Defendants acted with knowledge, or reasonable grounds to know, that their actions would enable copyright infringement. Mr. Suhy's actions, however, demonstrate an intent to comply with copyright law rather than infringe. As documented in a git commit message, Mr. Suhy explicitly stated, "Updated the LICENSE.txt file to be pure AGPL as to not violate the FSF copyright and to be in line with the AGPL license" (3-ER-478). This shows that Mr. Suhy acted to ensure ONgDB adhered to the AGPL's terms and respected the FSF's copyright, undermining claims that his actions were knowingly infringing. Stevens v. Corelogic, Inc., 899 F.3d 666, 674 (9th Cir. 2018). Defendants presented evidence that they removed the Commons Clause to comply with the AGPL, not to induce infringement. 3-ER-478

The FSF's cease-and-desist letter corroborates Defendants' understanding that removing the clause was permissible and aligned with the AGPL's terms. This intent-based issue is quintessentially a jury question and not suitable for resolution at summary judgment.

## 6. Conclusion

For the foregoing reasons, the grant of summary judgment on the DMCA claim was improper. Genuine disputes of material fact—including Neo4j Sweden's copyright ownership, the permissibility of removing the Commons Clause under the AGPL, and Defendants' intent—preclude summary judgment. Defendants respectfully request that this Court reverse the District Court's order and remand for trial on the DMCA claim.

# III.   The District Court Erred in Its Interpretation and Application of the AGPL and Commons Clause

## A. The Free Software Foundation (FSF) as the Primary Steward of the AGPL

The Free Software Foundation (FSF) is the nonprofit organization responsible for drafting and stewarding the AGPL. Although the district court is the ultimate authority on interpreting legal documents, the FSF's position is highly persuasive in clarifying the AGPL's terms. Here, the district court erred by disregarding the FSF's cease-and-desist letter, which stated that Neo4j's implementation of the Commons Clause violated the AGPL's terms (14-ER-2946).

### 1. Probative Value of the FSF's Cease-and-Desist Letter

The district court excluded the FSF letter on the theory that it did not reflect Appellant's state of mind at the time he made the contested decisions. However, the letter remains probative on at least two grounds. First, it demonstrates that the FSF, in its capacity as the AGPL's steward, deems the Commons Clause incompatible with the AGPL. Second, it reinforces

Appellant's longstanding interpretation of the license: at the time Appellant removed the Commons Clause, he reasonably believed (and continues to believe) that such a restriction was impermissible under the AGPL. The subsequent issuance of the FSF letter (14-ER-2946) aligns with Appellant's contemporaneous understanding and supports a finding of good faith.

## 2. Appellant's Good-Faith Reliance

Appellant's actions were guided by his reasonable reading of the AGPL, which bars the imposition of additional restrictive terms. By confirming that belief, the FSF letter shows that Appellant's removal of the Commons Clause was consistent with recognized open-source licensing practice and industry standards.

Accordingly, the district court should have allowed the FSF's letter into evidence for its probative value—at minimum, to show Appellant's good faith and the letter's impact on interpreting the AGPL's terms.

**B. Exclusion of Critical Expert Testimony by Mr. Kuhn Prejudiced the Defense**

The district court further erred by excluding Mr. Kuhn's expert report, which provided a detailed analysis of the AGPL and the Commons Clause (16-ER-2196). This testimony was essential in demonstrating that Neo4j's modifications to the AGPL were legally suspect and unsupported by valid copyright ownership.

    1. **Relevance of the Kuhn Report**

- Ownership and Contributor Agreements: The Kuhn report explained how Neo4j Sweden's failure to secure contributor assignment agreements meant it lacked complete copyright ownership of the codebase. Without these assignment agreements, Neo4j Sweden could not unilaterally append the Commons Clause to AGPL-licensed software.

- AGPL's Core Requirements: Mr. Kuhn's report also documented how the AGPL, in Section 4, requires derivative works to remain under the AGPL. By

attempting to impose the Commons Clause, Neo4j ran afoul of the AGPL's "copyleft" requirement.

- License Misuse: The report showed that Neo4j Sweden misused the AGPL by failing to properly modify the license or secure the necessary copyrights, thereby rendering the Commons Clause unenforceable (14-ER-3196).

## 2. Impact on the Case

Excluding Mr. Kuhn's testimony prevented Appellant from rebutting Neo4j's claims of full copyright ownership and enforceability of the modified AGPL. The Kuhn report was the key to showing that Neo4j's licensing practices violated established open-source norms, and that removal of the Commons Clause was a standard and acceptable remedy within the FOSS community (15-ER-3000).

## 3. Procedural Grounds for Reconsideration

Although the district court found the report "irrelevant to Phase 1 issues," its substance went directly to Appellant's

affirmative defenses and the validity of Neo4j's modification. Denying admission of the Kuhn report was prejudicial: it deprived the court of essential testimony clarifying how the AGPL operates and how contributor agreements are indispensable to effective license modification.

### C. The District Court Misapplied the Law Governing the AGPL and the Commons Clause

By disregarding the FSF's well-substantiated position and excluding both the Kuhn report and critical exhibits, the district court failed to apply the AGPL's language as understood by its primary steward. The AGPL, as crafted and maintained by the FSF, prohibits the addition of extra restrictions like the Commons Clause. Attempting to enforce the altered license undermines the open-source principles embedded in the AGPL.

Additionally, the district court conflated Neo4j Sweden and Neo4j USA, failing to address the fact that Neo4j Sweden (the entity imposing the Commons Clause) never assigned the requisite rights to Neo4j USA (the entity seeking enforcement). This gap in

copyright ownership further disrupts any claim that the Commons Clause modification was valid (11-ER-2414).

## D. Exclusion of the FSF Cease-and-Desist Letter Prejudiced Appellant

### 1. Critical Evidence Supporting Good-Faith Reliance

Although the FSF letter arose after Appellant's initial decisions, it directly refuted Neo4j's assertion that the Commons Clause could coexist with the AGPL (14-ER-2946). It showed that the FSF— long recognized as the AGPL's steward—expressly considers the Commons Clause to be an impermissible "further restriction."

### 2. Impact on Summary Judgment

- DMCA Liability: The letter bolsters Appellant's defense by confirming that removing the Commons Clause was aligned with the AGPL's requirements, undermining any finding of DMCA violations.

- Causation and Damages: The FSF letter clarifies that "free and open-source" status did not depend solely on removing

the Commons Clause. This undercuts Neo4j's damages theory that removal alone caused any alleged harm.

- Procedural Fairness: The exclusion precluded the court from considering evidence crucial to Appellant's state of mind and compliance with recognized licensing standards.

### 3. **Admissibility Under the Federal Rules of Evidence**

The FSF letter was improperly barred under hearsay objections. It falls within, or at least is supported by, well-recognized exceptions:

- State of Mind (FRE 803(3)): The letter goes to Appellant's good faith, reinforcing that he relied on the FSF's consistent stance.
- Public or Regularly Conducted Activity (FRE 803(6), 803(8)): As the entity responsible for the AGPL, the FSF routinely issues guidance on license compliance.

## E. Remedy and Standard of Review
### 1. **De Novo Review of Summary Judgment**

Because summary judgment is reviewed de novo, this Court must independently assess whether genuine issues of material fact remain. The legality of the Commons Clause under the AGPL and Appellant's reliance on FSF guidance are contested issues that should have precluded summary judgment (1-ER-3).

2.    **Abuse of Discretion in Excluding Critical Evidence**

The district court's refusal to consider the FSF letter and the Kuhn report directly impacted its conclusions. Excluding critical, highly probative evidence was an abuse of discretion that materially affected the outcome. This Court should recognize the broader implications of excluding evidence relevant to open-source licensing and the AGPL's enforceability.

## Conclusion

For these reasons, the district court's interpretation of the AGPL, refusal to consider the FSF's cease-and-desist letter, and exclusion of the Kuhn expert report collectively constitute reversible error. Appellant respectfully requests that this Court reverse the judgment

below and remand with instructions to consider these materials and the proper interpretation of the AGPL.

## IV. The District Court Improperly Granted Summary Judgment on the PureThink Exclusivity Agreement

*As noted in the appellant's Notice of Assignment of Claims (DktEntry: 7.1), PureThink LLC has assigned all its rights and claims related to the exclusivity agreement to John Mark Suhy. This ensures Mr. Suhy's standing to pursue this appeal on behalf of the exclusivity claims.*

### A. The District Court Overlooked Extrinsic Evidence Demonstrating the Exclusivity Agreement

1. **Evidence of Verbal and Supplemental Agreements** The April 11, 2015 letter from Neo4j's COO, Lars Nordwall, explicitly designated PureThink as the "only Neo4j Government Edition reseller certified to resell and support" Neo4j software for the U.S. Federal Government, Department of Defense, and

Intelligence Agencies (15-ER-3143). This designation was

necessary to comply with the Federal Acquisition Regulations

(FAR), which required exclusivity to justify sole-source

contracts (15-ER-3145).

PureThink's actions—investing $650,000 to develop a

Government Edition and marketing it to federal agencies—

constitute substantial performance consistent with the

existence of an exclusivity agreement (15-ER-3180). The

reliance on this designation and Neo4j's repeated verbal

assurances further demonstrate the parties' mutual intent to

create a binding agreement (15-ER-3186). See Miller v. Glenn

Miller Prods., Inc., 454 F.3d 975, 989 (9th Cir. 2006) (allowing

extrinsic evidence to determine the parties' intent in ambiguous

contracts).

2. **Course of Performance Evidence** The parties' conduct

reinforces the existence of the exclusivity agreement (15-ER-

3185). PureThink's development of the Government Edition

was performed with Neo4j's knowledge and approval (15-ER-

3191). Neo4j's subsequent interference—such as directly

engaging with the IRS and undermining PureThink's ability to fulfill its role—further evidences a dispute over the agreement's terms and scope (15-ER-3192). These facts were improperly resolved at summary judgment (15-ER-3193).

## Detailed Disputed Facts Supporting Materiality

- Fact 66 and Fact 69: Neo4j's claim of unfettered termination rights is directly contradicted by evidence that the exclusivity agreement included an implicit or verbal "exit agreement" requiring mutual consent for termination or reassignment (15-ER-2996).

- Fact 70 and Fact 71: Neo4j proposed language granting itself unilateral termination rights in internal drafts, but this language was rejected and never executed (15-ER-2997). The final agreement omitted such language, underscoring the material dispute over termination terms (15-ER-2997).

- Fact 75 and Fact 77: Neo4j's characterization of its actions as termination of the exclusivity agreement

is disputed by evidence suggesting the Government
Edition was discontinued rather than terminated,
leaving PureThink unable to fulfill its obligations
(15-ER-2997:2998).

- Fact 86 and Fact 87: PureThink invested
  substantial resources into developing the
  Government Edition. Disputes over whether
  PureThink reinvested funds and incurred expenses
  to perform under the agreement are critical to
  assessing damages (15-ER-2999).

## B. Materiality of Disputed Facts

The disputed facts are material because they directly affect the
claims of breach of contract and damages. If a jury finds that Neo4j's
verbal assurances and PureThink's substantial performance created
a binding exclusivity agreement, Neo4j's actions would constitute a
breach. Additionally, the extent of PureThink's reliance and
resulting damages—including the $1.3 million loss from the IRS
contract—cannot be resolved without weighing evidence and

credibility determinations, tasks reserved for the jury. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## C. The Exclusivity Agreement and Breach by Neo4j

1. **The Exclusivity Agreement Was Clear and Binding** The April 11, 2015 Exclusivity Agreement explicitly designated PureThink as the "only Neo4j Government Edition reseller" for the U.S. Federal Government (15-ER-2979). This agreement—signed by Lars Nordwall on behalf of Neo4j—provided the framework for compliance with Federal Acquisition Regulations (FAR) (15-ER-3097). Neo4j's attempt to contradict this agreement with internal drafts or communications is impermissible under California's parol evidence rule, which bars extrinsic evidence that contradicts an integrated written agreement. See Cal. Civ. Proc. Code § 1856.

2. **Neo4j's Breach of the Exclusivity Agreement Neo4j's decision to retire the Government Edition effectively ended the exclusivity agreement, constituting a breach** (15-ER-3023). The exclusivity agreement explicitly designated PureThink as the

"only Neo4j Government Edition reseller" for U.S. government agencies, as evidenced by the signed April 11, 2015 letter (15-ER-3023). Neo4j unilaterally retired the Government Edition without providing any protections for PureThink's investment in its development and marketing, despite the long-term recovery anticipated in the agreement's nature and circumstances (15-ER-3024).

Neo4j's internal communications cannot contradict the clear language of the agreement, as California's parol evidence rule bars extrinsic evidence that undermines an integrated written contract (15-ER-3025). Neo4j's actions also included incorporating features developed by PureThink into its own offerings, further breaching the exclusivity agreement by undermining PureThink's ability to fulfill its obligations and recoup its investment. Under California law, such actions excuse any alleged nonperformance by PureThink. See Taylor v. Sapritch, 38 Cal. App. 2d 478, 481 (Cal. Ct. App. 1940).

3. Disputed Facts Regarding Neo4j's Termination and Interference

- Termination Rights: Disputed evidence, including internal drafts proposing unilateral termination rights, contrasts with

the final signed agreement, which omitted such provisions and required mutual consent for termination or reassignment.

- Government Edition Discontinuation: Neo4j's characterization of its actions as "termination" conflicts with evidence that the Government Edition was "discontinued," leaving PureThink unable to fulfill its obligations.

- Damages from Neo4j's Breach: PureThink suffered damages exceeding $1.3 million, including lost revenue and unrecouped investments in developing the Government Edition.

These disputes underscore the materiality of the facts and the need for a jury to resolve these issues. Remedy: Reversal and Remand for Trial Because genuine disputes of material fact remain regarding the existence and scope of the exclusivity agreement, summary judgment was improper. The appropriate remedy is to reverse the district court's order and remand for trial, allowing a jury to resolve these factual disputes. Ninth Circuit precedent consistently holds that summary judgment must be denied where, as here, the record reveals contested issues central to the claims. See Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 989 (9th Cir. 2006).

# CONCLUSION

Appellant respectfully submits that the damages issue in this case is
paramount. Because the District Court's damages award depends on
multiple foundational rulings—such as causation, liability under the
DMCA, and the interpretation of licenses—reversal on any of these
issues necessitates revisiting the damages award. In other words, if this
Court reverses any of the District Court's determinations that underpin
liability or causation, the resulting damages must also be set aside.
Given the importance of accurately assessing damages, Appellant urges
this Court to vacate the damages award if it finds error in any of the
challenged rulings and to remand for further proceedings consistent
with the corrected determinations.

# STATEMENT OF RELATED CASES

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:*

*http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)**

_____

The undersigned attorney or self-represented party states the following:

[X] **I am unaware of any related cases currently pending in this court.**

[ ] I am unaware of any related cases currently pending in this court other than the

case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The

case number and name of each related case and its relationship to this case are:

**Signature**  /s/ John Mark Suhy Jr                **Date 12/23/2024**

# CERTIFICATE OF COMPLIANCE

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:*

*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**

I am the attorney or self-represented party.

**This brief contains 11406 words,** including 0

manually counted in any visual images, and including the items exempted

by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

<u>X **complies with the word limit of Cir. R. 32-1.**</u>

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-

1.

☐ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5),

Cir. R.

29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated .

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature Date  12/23/2024**

**/s/ John Mark Suhy Jr**

**Form 8** *Rev. 12/01/22*

# CERTIFICATE OF SERVICE

I, John Mark Suhy Jr, hereby certify that on this December 23, 2024, I electronically filed the foregoing **Opening Brief** with the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ John Mark Suhy Jr
John Mark Suhy Jr
8814 Danewood Dr
Alexandria, VA 22308
jmsuhy@gmail.com
703-862-7780