No. 24-5538

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

*NEO4J, INC., et al.,*

*Plaintiff and Appellee,*

*v.*

*Suhy, et al.; Defendant and*

*Appellant.*

---

Appeal From a Judgment of the United States District Court
For the Northern District of California
Hon. Edward J. Davila
United States District Judge
N. D. Cal. No. 5:18-cv-07182 EJD

---

**APPELLANTS' EXCERPT OF RECORD**

**VOL. 2 OF 16**

**pp. 39-337**

---

John Mark Suhy Jr (Pro Se)
8814 Danewood Dr
Alexandria, VA 22308
jmsuhy@gmail.com
Tel.: (703) 862-7780

**9-28-2020 - THIRD AMENDED COMPLAINT.pdf**

Filed 9-28-2020

THIRD AMENDED COMPLAINT FOR: (1) TRADEMARK INFRINGEMENT; (2) FALSE
DESIGNATION OF ORIGIN; (3) FALSE ADVERTISING; (4) DEFAMATION; (5)
FEDERAL AND STATE UNFAIR COMPETITION; (6) BREACH OF CONTRACT;(7)
INVASION OF PRIVACY; AND (8) VIOLATIONS OF THE DMCA

(Pacer Doc #90)

1  John V. Picone III (State Bar No. 187226)
   jpicone@hopkinscarley.com
2  Jeffrey M. Ratinoff (State Bar No. 197241)
   jratinoff@hopkinscarley.com
3  HOPKINS & CARLEY
   A Law Corporation
4  The Letitia Building
   70 South First Street
5  San Jose, CA  95113-2406

6  *mailing address:*
   P.O. Box 1469
7  San Jose, CA 95109-1469
   Telephone:     (408) 286-9800
8  Facsimile:     (408) 998-4790

9  Attorneys for Plaintiffs
   NEO4J, INC. and NEO4J SWEDEN AB
10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13  NEO4J, INC., a Delaware corporation, and       CASE NO.  5:18-cv-07182-EJD
    NEO4J SWEDEN AB, a Swedish
14  corporation,                                   **THIRD AMENDED COMPLAINT FOR:**
                                                   **(1) TRADEMARK INFRINGEMENT;**
15                  Plaintiffs,                    **(2) FALSE DESIGNATION OF ORIGIN;**
                                                   **(3) FALSE ADVERTISING; (4)**
16  v.                                             **DEFAMATION; (5) FEDERAL AND**
                                                   **STATE UNFAIR COMPETITION;**
17  PURETHINK LLC, a Delaware limited              **(6) BREACH OF CONTRACT;**
    liability company, IGOV INC., a Virginia       **(7) INVASION OF PRIVACY; AND**
18  corporation, and JOHN MARK SUHY, an            **(8) VIOLATIONS OF THE DMCA**
    individual,
19                                                 **DEMAND FOR JURY TRIAL**
                    Defendants.
20

21        Plaintiffs Neo4j, Inc. ("Neo4j USA") and Neo4j Sweden AB ("Neo4j Sweden") hereby

22  bring the present action against Defendants PureThink LLC, iGov Inc., and John Mark Suhy

23  (collectively "Defendants") and alleges as follows:

24                        **NATURE OF ACTION**

25        1.      This is an action for damages and injunctive relief arising out of Defendants'

26  infringement of Neo4j USA's registered trademarks, acts amounting to unfair competition,

27  breaches of contract, invasion of privacy and defamation, as well as Defendants' violations of the

28  Digital Millennium Copyright Act.

Hopkins & Carley
Attorneys At Law
San Jose

842\3571755.6

THIRD AMENDED COMPLAINT                              CASE NO.  5:18-CV-07182-EJD

**THE PARTIES**

2.      Neo4j USA is a corporation organized under the laws of the State of Delaware with its principal place of business in San Mateo, California.  Neo4j USA originally incorporated as Neo Technology, Inc. and then changed its name to Neo4j, Inc. in or about July 2017.  Neo4j USA is the company behind the number one graph platform for connected data, marketed and sold under the trademark Neo4j®.  The Neo4j® graph database platform helps organizations make sense of their data by revealing how people, processes and digital systems are interrelated. This connections-first approach powers intelligent applications tackling challenges such as artificial intelligence, fraud detection, real-time recommendations and master data.

3.      Neo4j USA boasts the world's largest dedicated investment in native graph technology.  It has more than 300 commercial customers, including global enterprises like Comcast, Cisco, eBay, and UBS use the Neo4j® graph database platform to create a competitive advantage from connections in their data.  Neo4j USA also does substantial business with government agencies, including a number of agencies within the United States Government.

4.      Neo4j Sweden is a Swedish corporation, having its principal place of business at Nordenskiöldsgatan 24, 6th Floor, 211 19 Malmö, Sweden, and is a wholly owned subsidiary of Neo4j USA. Neo4j Sweden is the owner of all copyrights related to the Neo4j® graph database platform, including the source code, and has licensed said copyrights to Neo4j USA in connection with the making, use, creation of derivative works, sale, offer to sell, importation, performance, display, reproduction and distribution of the copyrighted material, and the sublicensing of such rights in the United States.

5.      Defendant PureThink LLC ("PureThink") is a limited liability company organized under the laws of the State of Delaware with a principal place of business in Reston, Virginia. PureThink purports to be a software development company and was previously an authorized Neo4j® Solution Partner.  PureThink is no longer an authorized Neo4j® Solution Partner and Plaintiffs are informed and believe that PureThink is currently a shell entity maintained by the other defendants and is not currently conducting or engaged in any meaningful business activities.

Hopkins & Carley
Attorneys At Law
San Jose

842\3571755.6                                    - 2 -

THIRD AMENDED COMPLAINT                          CASE NO.  5:18-CV-07182-EJD

Page 42

6.      Plaintiffs are informed and believe, and based thereon allege, that Defendant iGov Inc. ("iGov") is a corporation organized under the laws of the Commonwealth of Virginia with a principal place of business in Reston, Virginia.  Plaintiffs are informed and believe, and based thereon allege, that iGov is a software development and consulting company that focuses on large-scale graph and AI solutions, which competes with Neo4j® and its authorized Solution Partners. Plaintiffs are further informed and believe that iGov is the assignee and successor-in-interest to PureThink, or otherwise acquired substantially all of PureThink's assets sometime in mid-2017.

7.      Plaintiffs are informed and believe, and based thereon allege, that iGov also does business as GraphStack, which also competes with Neo4j® and its authorized Solution Partners.

8.      Plaintiffs are informed and believe, and based thereon allege, that Defendant John Mark Suhy ("Suhy") is an individual residing in Reston, Virginia.  Plaintiffs are further informed and believe that Suhy is the sole member and manager of PureThink.  Plaintiffs are also informed and believe that Suhy is the sole shareholder of iGov, as well as an officer and director of iGov.

## ALTER EGO ALLEGATIONS

9.      Plaintiffs are informed and believe, and based thereon allege, that at all times herein mentioned there existed a unity of interest and ownership between iGov and PureThink. Any individuality and separateness between iGov and PureThink ceased and/or never existed, and iGov is the alter ego of PureThink, in that, among other reasons, and that iGov was conceived, intended, and used by Suhy and PureThink as a device to avoid liability and that PureThink is so inadequately capitalized that, compared with the business done by iGov and the risk of loss attendant thereon, such capitalization was illusory and/or trifling.

10.      Plaintiffs are informed and believe, and based thereon allege, that at all times herein mentioned that PureThink is a mere shell instrumentality maintained to protect iGov.  It now carries on its business in the company name exactly as PureThink and Suhy had conducted it previous to formation of iGov and/or previous to them acquiring a controlling interest in iGov and/or previous to becoming promoters thereof, exercised complete control and dominance of the business done by PureThink and now iGov to such an extent that any individuality or

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6                                    - 3 -

THIRD AMENDED COMPLAINT                          CASE NO.  5:18-CV-07182-EJD

**Page 43**

1    separateness of PureThink and iGov at all times herein mentioned did not and do not exist.

2          11.     For example, PureThink and iGov originally shared the same principal place of

3    business at 1902 Campus Commons Drive, Suite 101, Reston, VA 20191.  Likewise, PureThink

4    and iGov still share the same customer support number, 1-855-979-7771.

5          12.     PureThink and iGov's websites are also virtually identical and contain much of

6    the same verbiage, such as their core philosophies and results:

7
8
> To help you succeed, we believe in working closely and cooperatively with our clients. Our goal is to ensure everyone on the same page regarding project status, methods and tasks. Our approach is to develop software according to an Agile methodology which means we emphasize people and interaction rather than complicated processes and endless documentation.

9
10                          * * *

11
12
13
14
> Our mission is to bring the greatest value to our clients by leveraging our considerable depth of resources and experience. We align our approach to the specific business drivers of each business we work with whom we tailor solutions to best suit different cultural environments, industries, and market conditions. We focus on business strategy implementation, not business strategy development.

15    *Compare* https://purethink.com/about.html *and* https://igovsol.com/about.html.

16          13.     Plaintiffs are informed and believe, and based thereon allege, that other

17    components from PureThink's website were ported over to iGov's website.

18          14.     Plaintiffs are informed and believe, and based thereon allege, that adherence to

19    the fiction of the separate existence of iGov as an entity distinct from PureThink would permit an

20    abuse of the privilege of formation and would sanction fraud and/or promote injustice, and that

21    among other circumstances, Suhy and PureThink caused monetary and other assets to be

22    withdrawn and/or transferred from PureThink without any consideration, or with insufficient

23    consideration, to iGov, all for the purposes of avoiding liability and preventing attachment and

24    execution by creditors, including Plaintiffs, thereby rendering PureThink insolvent and unable to

25    fully perform its obligations; and at all times herein mentioned, was not so capitalized, solvent

26    and unable to fully perform any obligations undertaken by as set further herein.

27    / / /

28    / / /

Hopkins & Carley
Attorneys At Law
San Jose

842\3571755.6                                    - 4 -

THIRD AMENDED COMPLAINT                          CASE NO.  5:18-CV-07182-EJD

**JURISDICTION AND VENUE**

15.    The jurisdiction of this Court over the subject matter of this action is predicated, pursuant to 28 U.S.C. § 1331, on the fact that Plaintiffs present a civil action arising under the Federal Trademark Act (the "Lanham Act"), 15 U.S.C. § 1051 et seq., and the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 1201 et seq.  The remainder of Plaintiffs' claims are subject to the jurisdiction of this Court, pursuant to 28 U.S.C. §§ 1338(b) and 1367, because the claims are joined with one or more substantial and related claims under the Lanham Act.

16.    This action arises out of wrongful acts committed by Defendants in California and this District, which acts subject Defendants to the personal jurisdiction of this Court. Plaintiffs are informed and believe, and based thereon allege that Defendants specifically target consumers and derive substantial revenue within California and this District, and expect their actions to have consequences within California and this District.  For all of these reasons, personal jurisdiction over Defendants exists.

17.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 as Defendants engage in infringing activities, defamation and acts of unfair competition in this District.  In addition, Defendants have on a continual basis committed the wrongful acts alleged below within this District, in business interactions purposefully elicited by Defendants with or directed to residents of the District, all of which has harmed and continues to harm Plaintiffs within this District.

18.    At least one defendant, PureThink, entered into a Solution Partner Agreement with Neo4j USA ("the Partner Agreement"), which is subject to the claims asserted herein and contains a provision wherein it effectively agreed and consented to jurisdiction within California and specifically a court within the Northern District of California.

**INTRADISTRICT ASSIGNMENT**

19.    Pursuant to Northern District Local Rule 3-2(c) and Northern District General Order 44, venue in this action is proper in any Courthouse in this District because this case is brought under the Lanham Act and involves intellectual property rights.

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6

- 5 -

THIRD AMENDED COMPLAINT

CASE NO.  5:18-CV-07182-EJD

## THE NEO4J® BRAND

20.     Plaintiffs' business was formed after its founders encountered performance problems with relational database management systems (RDMS).  Plaintiffs then developed a graph database management system developed under the Neo4j® brand and quickly became the industry leader in graph database solutions and software.

21.     In conjunction with Plaintiffs' business, Neo4j USA filed for and obtained several federally registered trademarks.  Specifically, Neo4j USA is the owner of U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the following goods and services (the "NEO4J® Mark"):

- (IC 009) Computer programs for managing, storing, and accessing data from a database, analyzing data in computer databases for business purposes, processing in the nature of updating data in computer databases, and visualizing in the nature of creating graphs from data stored in databases; computer programs for storing, managing, and querying data from databases on computers, computer networks, and global computer networks.

- (IC 035) Consulting services and advice in the field of updating and maintenance of data in computer databases.

- (IC 041) Educational services, namely, conducting training classes, certification training, workshops, tutorial sessions, and online classes in the fields of designing computer databases and updating and maintenance of data in computer databases, and distributing course materials in connection therewith; providing training services in the fields of designing computer databases and updating and maintenance of data in computer databases, and distributing course materials in connection therewith.

- (IC 042) Providing a web site featuring technology that enables end users to store, manage, and query data from databases on computers, computer networks, and global computer networks; cloud computing featuring software for use in managing, storing, and accessing data from a database, analyzing

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6                                          - 6 -

THIRD AMENDED COMPLAINT                    CASE NO.  5:18-CV-07182-EJD

Page 46

1       data in computer databases for business purposes, processing in the nature of

2       updating data in computer databases, and visualizing in the nature of creating

3       graphs from data stored in databases; Technical support services, namely,

4       installation, administration, and troubleshooting of database applications;

5       Computer services, namely, providing consultation services and advice in the

6       fields of designing computer databases.

7       • (IC 045) Consulting services and advice in the field of maintaining the

8       security and integrity of databases.

9       22.     Plaintiffs first used the NEO4J® Mark in June 2006 and first used that mark in

10  commerce in May 2007, and have continually used the NEO4J® Mark for the above goods and

11  services at least as early as the filing date of the NEO4J® Mark.  A true and correct copy of the

12  NEO4J® Mark, as seen in U.S. Trademark Registration No. 4,784,280, is attached hereto as

13  **Exhibit 1**.

14      23.     Neo4j USA owns valid and subsisting federal statutory and common law rights in

15  the NEO4J® Mark, and as a result of its considerable efforts and investment in the brand to

16  identify its goods and services and Plaintiffs as their source, the NEO4J® Mark has become

17  widely known and is closely identified with Plaintiffs and represents its substantial, valuable

18  goodwill.

19      **THE EVOLUTION OF PLAINTIFFS' LICENSING MODEL FOR NEO4J® GRAPH**

20            **DATABASE PLATFORM SOFTWARE**

21      24.     Prior to November 2018, Plaintiffs' business model was to offer a free open

22  source version of the Neo4j® graph database platform, its primary software offering, NEO4J®

23  Community Edition ("Community Edition"), under the GNU General Public License version 3

24  ("GPLv3") license.  This edition is limited in its feature set and offers no support.  Users

25  requiring additional features for more advanced commercial operation, together with support,

26  licensed use of the Neo4j® graph database platform through NEO4J® Enterprise Edition

27  ("NEO4J® EE") under commercial terms.  NEO4J® EE is a full superset of Community Edition

28  / / /

of the Neo4j® graph database platform, containing significant additional functionality intended for commercial use.

25.     Plaintiffs originally offered NEO4J® EE under both a paid-for commercial license and the free GNU Affero General Public License, version 3 ("AGPLv3").   A commercial license to NEO4J® EE entitled the purchaser to use it in a proprietary setting with industry standard terms, receive support or professional services from Neo4j USA, and the right to receive software updates, which included feature updates, bug fixes and assistance.  Purchasing a commercial license at a fair price supported the continued development and improvement of NEO4J® EE and the Neo4j® graph database platform, including the Community Edition software.

26.     In May 2018, Plaintiffs released NEO4J® EE version 3.4, which they continued to offer under a proprietary commercial license.  However, Neo4j Sweden replaced the AGPLv3 with a stricter license, which included the terms of the AGPLv3 with additional restrictions provided by the Commons Clause ("Neo4j Sweden Software License").  This new license, while allowing code to be publicly viewable and used within a certain limited scope of usage, is generally recognized in the software industry not to qualify as open source, as it prohibits all third-party resale and services activity.  Neo4j Sweden licensed NEO4J® EE version 3.4 under the Neo4j Sweden Software License to prevent third parties, such as Defendants, from monetizing such software while not contributing back to the companies who are producers of the software.

27.     In November 2018, Plaintiffs officially released version 3.5 of NEO4J® EE solely under a commercial license, while they continued to offer the Community Edition under an open source license.  This meant that Plaintiffs were no longer publishing source code for NEO4J® EE under an open source license.  This was done to simplify its licensing model, as well as prevent bad actors from willfully misrepresenting the Neo4j Sweden Software License and profiting by providing commercial support services in closed, proprietary projects.

28.     All versions of Neo4j® graph platform software are subject to Neo4j USA's Trademark Policy found on its website, which states in relevant part:

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6

- 8 -

THIRD AMENDED COMPLAINT                      CASE NO.  5:18-CV-07182-EJD

Although some Neo4j projects may be available under free and open licenses, those licenses cover copyright only and do not include any express or implied right to use our trademarks. Neo4j does not allow third parties to use its trademarks without a written agreement or express permission. Thus, Neo4j projects that are available under open source licenses may be copied, modified, or sold by third parties, but they cannot be branded or marketed with Neo4j trademarks in the absence of a trademark license.

While open-source licenses allow modification of copyrighted software and distribution in original or modified form, such distribution could be misleading if distributed under the same name. This could cause confusion among consumers of the software as to source. They may mistakenly believe they are receiving software that is produced or supported by Neo4j. This Policy describes the circumstances under which you may use our trademarks, regardless of the type of license you may have from Neo4j.

* * *

Any use of the Marks must be licensed and comply with these guidelines. Whenever you use one of the Marks, you must always do so in a way that does not mislead anyone, either directly or by omission, about exactly what they are getting and from whom. For example, you cannot say you are distributing the Neo4j® software when you're distributing a modified version of it, because people would be confused when they are not getting the same features and functionality they would get if they downloaded the software directly from us. You also cannot distribute Neo4j® software using the Marks if you do not have a license from us, because that would imply that your distribution comes from or is supported by Neo4j. You cannot use our Marks on your website in a way that suggests that your website is an official website or that we endorse your website, unless permitted in a written agreement with us.

A true and correct copy of Neo4j USA's Trademark Guidelines (https://neo4j.com/trademark-policy) is attached hereto as **Exhibit 2**.

## NEO4J'S AGREEMENT WITH PURETHINK

29.     On or about September 30, 2014, Neo4j USA and PureThink entered into the Partner Agreement.  Under the Partner Agreement, PureThink agreed to provide first and second line support to end-users of NEO4J® EE software in exchange for annual partner program fees and shared revenue as specified in the Partner Agreement.

30.     Under Section 4.1 of the Partner Agreement, Neo4j USA provided PureThink with a non-exclusive, non-transferable limited license during the term of that agreement to, inter alia, "use [Neo4j USA's] trademarks solely to market and promote the Products in accordance with the terms of [the Partner Agreement]."   Section 4.1 also incorporated Neo4j's trademark

Hopkins & Carley
Attorneys At Law
San Jose

842\3571755.6                                                   - 9 -

THIRD AMENDED COMPLAINT                          CASE NO.  5:18-CV-07182-EJD

Page 49

1    policies as additional limitations on Defendants' use of the NEO4J® mark and making

2    representations about NEO4J® EE and NEO4J® Community Edition software products, which at

3    the time provided in relevant part that:

4            Neo Technology software, which is created and/or distributed by
             Neo Technology and thus properly bears the Trademarks, is the
5            software in the exact binary form that it is distributed by Neo
             Technology, without modification of any kind. To the extent any
6            authorized modifications are made to the software, such modified
             software should no longer bear the Trademarks. The public has a
7            right to know when it is receiving a genuine Neo Technology
             product that is quality assured by Neo Technology.
8
             You must not use any Trademark in a web page title, titletag,
9            metatag, or other manner with the intent or the likely effect of
             influencing search engine rankings or results listings.
10

11           31.     In or about March 2017, Plaintiffs learned that Defendants had encouraged at

12   least one government agency to use "free open source NEO4J® EE under the AGPL" and pay

13   PureThink for consulting and support instead of obtaining a commercial license.  Plaintiffs also

14   learned that Defendants used a server that belonged to another company to compile that open

15   source software in an attempt to avoid the restrictions imposed by the Partner Agreement on

16   PureThink.   Defendants even admitted that they intended to form a new company that would

17   market and offer consulting services for users of NEO4J® open source products.

18           32.     Defendants' words and actions constituted a material breach of the express terms

19   of the Partner Agreement that precluded PureThink from modifying open source Neo4j software

20   and providing related support services.   The fact that PureThink led this government agency to

21   believe that it was getting an authentic version of NEO4J® EE was also a breach of the express

22   terms of Section 4.1.  When PureThink recompiled NEO4J® EE, it was actually creating software

23   that is not of the same quality as if were compiled by Neo4j, which uses tens of thousands of

24   integrated test scripts. Defendants' introduced their own modifications in recompiling the

25   software, thereby misleading that government agency and potentially damaging the NEO4J®

26   Mark and associated goodwill.

27           33.     As a result, on or about May 30, 2017, Neo4j USA provided PureThink with a

28   formal notification of PureThink's material breaches of the Partner Agreement and a demand to

Hopkins & Carley
Attorneys At Law
San Jose

842\3571755.6                          - 10 -

THIRD AMENDED COMPLAINT                      CASE NO.  5:18-CV-07182-EJD

Page 50

1   cure such breaches pursuant to Section 7.2 thereof.  PureThink's material breaches included

2   compiling, using and distributing NEO4J® open source products, and performing services on, as

3   well as continuing to perform services on, NEO4J® open source products in violation of Section

4   4.3 of the Partner Agreement.  A true and correct copy of this May 30, 2017 notice is attached

5   hereto as **Exhibit 3**.

6        34.     On or about June 30, 2017, Neo4j USA provided PureThink with 90-days written

7   notice pursuant to Sections 7.1 and 7.2 of its election to terminate the Partner Agreement and not

8   to renew the Partner Agreement for a renewal term that would commence on September 30, 2017.

9        35.     On or about July 11, 2017, Neo4j USA provided PureThink with written notice

10   that the Partner Agreement was terminated pursuant to Section 7.2 thereof due to PureThink's

11   failure to timely cure the material breaches set forth in the May 30, 2017 letter ("Breach Notice").

12   A true and correct copy of this letter is attached hereto as **Exhibit 4**.

13        36.     Neo4j USA also reminded PureThink that several provisions in the Partner

14   Agreement survived termination pursuant to Section 7.4 thereof.  This includes, Section 7.3,

15   which provides that upon such termination

16        all rights and licenses of Partner hereunder will terminate and
     Partner shall cease all communications with End Users regarding
17        the Products; and (b) each party … will cease using any trademarks,
     service marks and other designations of the other party….
18

19        37.     Section 10 also survived termination and provides that "either party may assign

20   this Agreement without the other party's consent to a parent or subsidiary of such party or in the

21   case of a merger or sale of all or substantially all of its assets or stock."

22        38.     In light of these continuing obligations, Neo4j USA provided notice that it was

23   terminating PureThink's rights and licenses under the Partner Agreement.  Neo4j USA demanded

24   that PureThink "cease using [Neo4j USA's] trademarks, service marks, and other designations…

25   and remove from PureThink's website(s) and marketing materials, [Neo4j USA's] trademarks

26   and tradenames, including, without limitation, Neo4j."  Neo4j USA further advised that

27   PureThink had "no rights to use [Neo4j USA's] trademarks or tradenames and continued use of

28   such trademarks and/or tradenames will constitute trademark infringement."  *See* Exhibit 4.

Hopkins & Carley
Attorneys At Law
San Jose

842\3571755.6                                        - 11 -

THIRD AMENDED COMPLAINT                              CASE NO.  5:18-CV-07182-EJD

**Page 51**

**DEFENDANTS' MISINFORMATION CAMPAIGN REGARDING NEO4J'S**

**SOFTWARE AND INFRINGEMENT OF THE NEO4J® MARK**

39.     Since Neo4j USA terminated the Partner Agreement, Defendants have engaged in acts that amount to the breach thereof and constitute violations of the Lanham Act.  These acts include using the NEO4J® Mark in an improper manner that falsely suggests the Neo4j USA's authorization and/or sponsorship of Defendants' products and services.

40.     Plaintiffs are informed and believed, and based thereon allege that Suhy incorporated iGov on or about June 23, 2017 in response to the May 30th notice of breach, and in anticipation of Neo4j USA's termination of the Partner Agreement, and to avoid the aforementioned continuing, agreed-upon restrictions placed on PureThink thereunder and the potential liability for breaching such restrictions.

41.     As of November 2017, iGov's website admitted this was Defendants' intent:

> PureThink, the company who created, managed and sold Neo4j Government Edition to all US Federal agencies has ceased their partnership with Neo Technology and Neo4j Government Edition has been retired.

> The principle behind PureThink and the Government Package has created a new corporate entity called iGov Inc, which is not a Neo4j Solution Partner. Because iGov Inc is not a solution partner, it can offer packages at great cost savings to US Government Agencies as it has no restrictions on working with Neo4j Enterprise open source licenses!

> iGov Inc and the new Government Package for Neo4j allows agencies to spend their money on developing innovative solutions around Neo4j, not paying for unnecessary production support before they even have a solution built that could be in production.

A true and correct copy of this archived webpage is attached hereto as **Exhibit 5**.

42.     However, Plaintiffs are informed and believed, and based thereon alleges that PureThink assigned the Partner Agreement as part of the transfer and/or sale of substantially all of its assets to iGov in conjunction with Suhy's incorporation of iGov.  Alternatively, iGov assumed PureThink's obligations under the Partner Agreement as its alter ego.  As a result, iGov became subject to the aforementioned contractual restrictions relating to the use of the NEO4J® Mark and any resulting liability for the breach of such provisions in the Partner Agreement.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6                    - 12 -

THIRD AMENDED COMPLAINT                    CASE NO.  5:18-CV-07182-EJD

43.     Defendants deceive prospective customers about the source of legitimate NEO4J® products by marketing software modified by Defendants as genuine a NEO4J® EE product via iGov's website.  In particular, iGov's website claims that end-users did not need to purchase a commercial license for NEO4J® EE and obtain support from Neo4j or its Solution Partners.  Rather, consumers can download iGov's unauthorized recompiled and modified version of NEO4J® EE (confusingly called "Neo4j Enterprise" by iGov) because in Defendants' unqualified legal opinion:

> Neo4j Enterprise can be used for free under the [AGPL]. [] There are no hidden or limiting terms beyond the standard [AGPL]. With Neo4j Enterprise under its free open source [AGPL] license, you simply don't get production email and phone support from Neo4j Inc. You can get a much cheaper support contract through iGov Inc for a fraction of the cost to support your production.

A true and correct copy of the aforementioned portions of iGov's website as they appeared on October 2, 2019 and July 27, 2020 are attached hereto as **Exhibit 6** and **Exhibit 7**.

44.     Via iGov's website, Defendants published step-by-step instructions on how to circumvent the commercial license requirement for NEO4J® EE version 3.3, and the security features released as closed-source along with it.  A true and correct copy of a blog published by Defendants containing these instructions is attached hereto as **Exhibit 8.**

45.     When Neo4j released NEO4J® EE version 3.4 under the Neo4j Sweden Software License, Defendants continued to take advantage of the fact that most of this source code was available on GitHub (an open source software hosting site).  This allowed them to copy the code while ignoring the restrictions imposed by the Neo4j Sweden Software License.  Defendants also stripped out valid legal notices and license terms in NEO4J® source code files.

46.     Defendants even went as far as to giving unsolicited answers to public posts on open community websites, such as www.stackoverflow.com, to spread further misinformation concerning the nature of Plaintiffs' licensing model and promote Defendants' own unauthorized hybrid offerings as identical to those originating from Neo4j.  True and correct copies of examples of Defendants' posts on www.stackoverflow.com are attached hereto as **Exhibits 9-10**.

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6

- 13 -

THIRD AMENDED COMPLAINT                    CASE NO.  5:18-CV-07182-EJD

47.     Defendants also mislead consumers by claiming iGov's haphazard "Neo4j Enterprise" builds were equivalent to corresponding versions of NEO4J® EE, which Defendants knew were not.  They also ignored that Section 4.1 of the Partner Agreement incorporated Neo4j USA's trademark policies and expressly prohibited Defendants from using the NEO4J® Mark in conjunction with recompiled and modified versions of NEO4J® EE.

48.     Defendants further breached Section 4.1 of the Partner Agreement and violated the Lanham Act by including the link titled "Graph Packages" on the home page of iGov's website directs to the domain "https://igovsol.com/**neo4j**.html" (emphasis added).  A true and correct copy of a screenshot iGov's homepage and a print out of this home page is attached hereto as **Exhibit 11** and **Exhibit 12**, respectively as they appeared in October 2019.  The linked webpage at https://igovsol.com/**neo4j**.html as of October 2, 2019 is attached hereto as **Exhibit 13**.

49.     Even after this was identified as infringing conduct in the first and second amended complaints filed in this Action, Defendants have steadfastly refused to abate such clear infringement of the NEO4J® Mark.  A true and correct copy of a printout of iGov's homepage as of July 27, 2020 is attached hereto **Exhibit 14** and true and correct copies print outs of the linked webpage at https://igovsol.com/**neo4j**.html as of July 27, 2020 are attached hereto as **Exhibit 14 and Exhibit 15**.

50.     Use of NEO4J® in the domain is unnecessary in this instance as any number of generic terms could have been used in place of NEO4J®.  The use of NEO4J® as a part of a domain is for a purpose other than to reference Neo4j USA or its NEO4J®-branded products and services, and is in fact misleading to confuse the source or origin of its own offerings to those of Neo4j USA.

51.     The top of iGov website at https://igovsol.com/neo4j.html prominently displays "Request Procurement Document Package" link that has "mailto:neo4j@igovsol.com" embedded in the html and creates an email addressed to "neo4j@igovsol.com" upon activation.  *See* Exhibits 15-16.  This link is a clear attempt by Defendants to mislead and confuse consumers that it is somehow an authorized source of NEO4J® software and/or support packages for that software.

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6

- 14 -

THIRD AMENDED COMPLAINT                CASE NO.  5:18-CV-07182-EJD

**Page 54**

1    The "Downloads" page on iGov's website (https://igovsol.com/downloads.html) also provides the

2    same contact email address, neo4j@igovsol.com.  *See* Exhibits 6-7.

3         52.      The usage of "neo4j" as an email alias constitutes an unauthorized use of the

4    NEO4J® Mark, especially since more common descriptive or non-infringing terms such as

5    "support@igovsol.com" and "sales@igovsol.com" should be readily available.  In fact, iGov uses

6    info@igovsol.com elsewhere on its website as an email address for potential customers to inquire

7    about iGov's services and products.

8         53.      iGov's website at https://igovsol.com/neo4j.html also contains false and

9    misleading statements concerning the source of at least one NEO4J® software product: "Our

10   team is the same team that created Neo4j Enterprise Government Edition.  Further, we are the

11   same team that sold and supported every US Federal Government procurement of Neo4j

12   Enterprise Government Edition up until its retirement in July 2017."  *See* Exhibits 13, 15-16.

13   This statement is untrue because neither PureThink nor Suhy created an authorized NEO4J®

14   software product entitled "Neo4j Enterprise Government Edition."  Instead, Defendants are

15   improperly rebranding Plaintiff's Neo4j Enterprise Edition without the authorization of Plaintiff

16        54.      In a further attempt to mislead potential purchasers of Neo4j® software and

17   services, iGov claims to have commercial pricing information for Neo4j® software and services

18   on its website. *See* Exhibits 11-12, 14.  iGov's maintenance of this pricing information and

19   Suhy's repeated public references thereto is misleading to potential purchasers of Neo4j®-

20   branded software because it is outdated and was obtained from a United States General Services

21   Administration (GSA) pricing schedule from 2018 for NEO4J® EE and was subject to specific

22   GSA terms and conditions.  As a result, it does not accurately reflect Neo4j USA's current pricing

23   structure for NEO4J® EE 4.0.x commercial licenses.

24   **DEFENDANTS ENGAGE IN UNFAIR COMPETITION BY FALSELY PROMOTING**

25   **THIRD PARTY SOFTWARE AS BEING IDENTICAL TO NEO4J® EE**

26        55.      Defendants remained undeterred in their efforts tarnish the NEO4J® brand and

27   mislead consumers.  In or about September 2018, Defendants began to promote a third-party

28   / / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6                                                    - 15 -

THIRD AMENDED COMPLAINT                          CASE NO.  5:18-CV-07182-EJD

**Page 55**

1   graph database software, Open Native Graph DB (ONgDB), which they describe on iGov's

2   website as "a non-restrictive fork of Neo4j, the world's leading Graph Database."

3       56.     Defendants deceptively market ONgDB via iGov's website as the equivalent of

4   Neo4j's current version of NEO4J® EE which is only available via a commercial license:

5           ONgDB (AKA ONgDB Enterprise) 3.5.5 is Neo4j 3.5.5 Core + the
            enterprise features Neo4j Inc removed from the code base as of
6           v3.5.  All ONgDB and Neo4j Enterprise AGPL distributions can be
            used in production, in closed source projects, and with no
7           limitations on # of cores or causal cluster instances. ONgDB is a
            drop in replacement for the Neo4j Community and Enterprise
8           branded distributions.

9   *See* Exhibits 11-12; *see also* Exhibits 6-7, 14.  Defendants further misleadingly state on iGov's

10  website that "ONgDB Enterprise is free and open source. You have all the feature parity of Neo4j

11  Enterprise commercial licenses, but without limits on usage, cluster instances, cores, etc." *See*

12  Exhibit 13, 15-16.    These and similar statements made by Defendants are misleading because

13  ONgDB is not entirely based on open source version of the Neo4j® graph database platform as it

14  continues to claim.  Plaintiffs are informed and believe that Defendants knew full well that this

15  was untrue since ONgDB contained additional closed-source components that required a

16  commercial license from Neo4j Sweden AB or one of its affiliates.

17      57.     iGov's website also contains a "Neo4j Enterprise Open Source Frequently Asked

18  Questions" section, which deceives consumers into downloading "Neo4j Enterprise from our the

19  Neo4j Inc. [sic] distribution site, or from our Amazon Gov Cloud mirror. **Download Neo4j**

20  **Enterprise**" rather than download an official trial version of NEO4J® EE from Plaintiffs.  *See*

21  Exhibits 6-7.  This link misleadingly redirects consumers to the top of iGov's download page

22  with links to download ONgDB rather than to Neo4j USA's distribution site.  *See id.*  Thus, the

23  use of "Neo4j Enterprise" and corresponding bold texted link is a clear attempt to mislead and

24  confuse consumers regarding ONgDB being the purported equivalent of NEO4J® EE.

25      58.     Plaintiffs are informed and believe, and based thereon allege that ONgDB is

26  compiled from a patchwork of source code from older versions of official Neo4j® graph database

27  platform software, and includes "glue" source code authored by Graph Foundation Inc. ("GFI")

28  / / /

Hopkins & Carley
Attorneys At Law
San Jose

842\3571755.6

- 16 -

THIRD AMENDED COMPLAINT                          CASE NO.  5:18-CV-07182-EJD

1   and Suhy, while mischaracterized by Defendants as identical to Plaintiffs' commercial-only

2   releases of NEO4J® EE.

3        59.     Defendants are thus promoting software that is not of the same quality as if were

4   compiled by Plaintiffs.  This is because ONgDB software was not entirely created using

5   Plaintiffs' build infrastructure, which carries out tens of thousands of functional, performance,

6   load, stress, and other tests to ensure quality and consistency.  ONgDB also does not include

7   critical fixes or other ongoing improvements made by Plaintiffs to NEO4J® EE. Further, because

8   Graph Foundation and Suhy introduced their own modifications in recompiling ONgDB from

9   various older iterations of NEO4J® software, this increases the potential for instability and

10  compatibility issues with ONgDB.  As a result, Defendants are misleading consumers into

11  believing they are downloading an exact copy of Plaintiffs' current commercial-only releases of

12  NEO4J® EE, which in actuality is an inferior product that is not a true "drop in" replacement.

13       60.     Defendants promoted the misleadingly matched version numbers of ONgDB to

14  the equivalent genuine NEO4J® EE version, while falsely maintaining ONgDB is identical to

15  Neo4j USA's official offerings except offered under an open source license.   The few statements

16  by Defendants that disclaim a relationship or affiliation with Neo4j USA are undermined by their

17  misinformation campaign to confuse customers as to the nature of its "forked" version of

18  ONgDB, and failure to properly display and use proper trademark notices after the NEO4J®

19  Mark, which they often display as "Neo4j," "Neo4j Enterprise," "neo4j project" and "Neo4j open

20  source," furthering their attempts to detract the distinctiveness and significance of the NEO4J®

21  Mark.  Defendants' prominent display of the NEO4J® Mark in a repetitive, albeit inconsistent

22  manner and without proper trademark usage and notices, the historical use of various iterations of

23  "Neo4j" and interchangeable use of "Neo4j Enterprise" with "ONgDB Enterprise" on their

24  website, without proper trademark notices, is a clear attempt to confuse customers as to the

25  source, origin or affiliate of the parties' respective offerings.

26       61.     The foregoing improper use of the NEO4J® Mark in conjunction with

27  Defendants' promotion of unauthorized software violates Neo4j USA's Trademark Guidelines

28  and Section 4.1 of the Partner Agreement.  For example, these guidelines prohibit Defendants

Hopkins & Carley
Attorneys At Law
San Jose

842\3571755.6

- 17 -

THIRD AMENDED COMPLAINT

CASE NO.  5:18-CV-07182-EJD

Page 57

1   from using the NEO4J® Mark in conjunction with modified open source software based on the

2   Neo4j® graph database platform, including forks thereof, and suggesting endorsement by Neo4J

3   USA.  As a result, Defendants create consumer confusion that they and GFI are offering a current

4   authorized version of NEO4J® EE or that ONgDB is otherwise endorsed by Neo4j USA.

5           62.     Defendants do not provide their own release notes in relation to their promotion

6   of ONgDB.  Instead, Defendants use html links on iGov's website to redirect consumers to Neo4j

7   USA's official release notes (https://neo4j.com/release-notes/neo4j-3-5-5/) and "What's New"

8   page (https://neo4j.com/whats-new-in-neo4j/):

9

10   ONGDB ENTERPRISE 3.5.5

11   Drop in replacement for Neo4j Core and Enterprise 3.5.5. AGPLv3 Open Source License, no limitations on causal cluster instances,
     cores, or production usage.

12   May 2019  Neo4j's Release Notes | Neo4j's Whats New Page

13   *See* Exhibits 6-7.  Thus, further promoting the false equivalency between ONgDB and the latest

14   version of NEO4J® EE.

15           63.     Defendants have used a second website, www.graphstack.io, to further promote

16   the false equivalency between ONgDB and the latest version of NEO4J® EE.  Defendants openly

17   admitted that "iGov Inc is the company behind GraphStack" and that "iGov Inc offers production

18   support packages for Neo4j / ONgDB Enterprise open source distributions for US government

19   agencies."  Defendants' GraphStack website contains misleading statements concerning ONgDB

20   similar to those on iGov's website, including that ONgDB "is a non-restrictive fork of Neo4j" and

21   "a drop in replacement for any Neo4j Enterprise (or community) distribution of the same version

22   number." A true and correct copy of the homepage for GraphStack's website as it existed on

23   October 2, 2019 is attached hereto as **Exhibit 13**.

24           64.     GraphStack website improperly used html links to redirect consumers to Neo4j

25   USA's official release notes (https://neo4j.com/release-notes/neo4j-3-5-5/) and "What's New"

26   page (https://neo4j.com/whats-new-in-neo4j/) in conjunction with encouraging consumers to

27   download ONgDB as an alleged "[d]rop in replacement for Neo4j Core and Enterprise 3.5.3."

28   *See* Exhibit 17.  As indicated on Neo4j USA's website (https://neo4j.com/docs/license/), the

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6                              - 18 -

THIRD AMENDED COMPLAINT                              CASE NO.  5:18-CV-07182-EJD

Page 58

1    foregoing and other documentation provided by Neo4j USA is copyrighted and subject to the

2    Creative Commons Attribution-NonCommercial-ShareAlike 4.0 International Public License,

3    which expressly prohibits the use of such documents for commercial purposes, requires

4    attribution to the copyright holder and notice of modifications.

5         65.    The latest iteration of Defendants' GraphStack website is now touting that

6    "ONgDB Enterprise 4.0.x (Neo4j Core 4.0.x + Enterprise Code) is coming soon" and that

7    "ONgDB 4.0 adds in the enterprise features removed from Neo4j core - including multi-database,

8    clustering, security, and more."  Plaintiffs are informed and believe, and based thereon allege that

9    Defendants are adding features to ONgDB found in NEO4J® EE 4.0 that are based on Plaintiffs'

10   source code that has never been released under the AGPL or any other open source license, and as

11   a result would render this statement false and misleading.  A true and correct copy of the

12   homepage for GraphStack's website as of July 15, 2020 is attached hereto as **Exhibit 18**.

13        66.    Defendants impermissibly use the NEO4J® Mark as a hashtag ("#Neo4j") to

14   represent ONgDB software and mislead consumers by retweeting posts on Twitter made by GFI.

15   Use of the NEO4J® Mark as a hashtag ("#Neo4j") in this manner falsely implies sponsorship or

16   endorsement by Neo4j USA as there are other descriptive or generic words that Defendants and

17   GFI may use to describe ONgDB graph software without reference to the NEO4J® mark in this

18   manner. Defendants and GFI use the NEO4J® Mark to refer to their own ONgDB software,

19   rather than Plaintiffs' software, and use more of the NEO4J® Mark than is reasonably necessary

20   to identify its product further exacerbating the confusion.   A true and correct copy of examples

21   of Defendants' republication of GFI's tweets improperly using "#Neo4j" is attached hereto as

22   **Exhibit 19**.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6                              - 19 -

THIRD AMENDED COMPLAINT                    CASE NO.  5:18-CV-07182-EJD

**Page 59**

67. Defendants also use Twitter to spread misinformation concerning NEO4J® EE and unfairly complete with Plaintiffs. For example, Suhy has falsely suggested to potential customers that ONgDB contains the same source code as commercial-only licensed NEO4J® EE:

**John Mark Suhy**
@jmsuhy
Replying to @chpanto @akchux @neo4j

If you ever want to use causal clustering while staying 100% open source, you can do so with #ONgDB
(Neo4j core + enterprise features they removed when they closed Neo4j Enterprise edition at 3.5).
Just ensure you use the same version number as your current Neo4j version.

9:39 AM - 23 Feb 2019

1 Like

**John Mark Suhy**
@jmsuhy
Replying to @prathle @gwenshap

You can use the GraphFoundation's fork called Open Native Graph Database (ONgDB). It adds the enterprise code Neo removed back on top of Neo4j core. 3.5.11 is ready to go, it should be out in the next few days. Carefully read the terms for the 'free' offerings Neo4j mentions!

12:39 AM - 25 Sep 2019

1 Like

A true and correct copy of these Tweets are attached hereto as **Exhibit 20** and **Exhibit 21**.

68. Defendants continue to mislead consumers by claiming that ONgDB is properly licensed under AGPLv3 as a free and open source equivalent of official NEO4J® EE that is now only available via a commercial license from Plaintiffs. Such statements made by Defendants are false and misleading because Defendants and GFI never created or developed a true open source

1    fork based on an open source version of the Neo4j® graph database platform.  Rather, Defendants

2    knowingly copied source code from the Neo4j® graph database platform that is subject to Neo4j

3    Sweden Software License.  Suhy has been a major contributor to the development of ONgDB,

4    and as detailed below, Suhy intentionally stripped out valid legal notices and license terms

5    governing that source code under an erroneous view of the AGPLv3 and Neo4j Sweden's right as

6    the copyright holder to grant a license to its software as it sees fit.

7    **DEFENDANTS' MISCONDUCT IS LIKELY TO CAUSE CONSUMER CONFUSION**

8    **AND HAS RESULTED IN ACTUAL CONSUMER CONFUSION**

9         69.    Defendants' actions described above constitute unauthorized use of the NEO4J®

10   Mark in commerce in connection with the distribution, offering, or promotion of its "Neo4j

11   Enterprise" and ONgDB software is likely to cause consumer confusion.  Such actions were made

12   with an intent to deceive consumers, which interferes with Neo4j's ability to differentiate its

13   NEO4J® offerings from those of these unauthorized, third-party compiled offerings.

14        70.    Plaintiffs are informed and believe, and based thereon allege that Defendants

15   actions described above have caused actual consumer confusion.  For example, users have

16   expressed uncertainty and confusion over license obligations, as well as encountered

17   compatibility issues resulting from downloading ONgDB:

18              Do the terms of use for "neo4j Desktop" apply to the ONGDB
19              server which I downloaded under AGPLv3 license? I read the
                Desktop terms carefully and they refer everywhere to "neo4j
                Desktop software". Has anybody encountered this issue? I am
20              feeling really stupid for not thinking this through before
                downloading the Desktop Software, especially as database
21              authentication keeps failing. Before I spend any more time
                troubleshooting, could someone indicate any features of Desktop
22              that are really worth it (other than UI)? I am planning production,
                so the license is important to me.
23

24   A true and correct copy of the foregoing post on the Neo4j Online Community is attached hereto

25   as **Exhibit 22**.

26        71.    Plaintiffs are informed and believe, and based thereon allege that consumers that

27   have downloaded ONgDB rather than officially licensed Neo4j® graph database platform

28   software have experienced issues that Plaintiffs would have been able to address for licensed

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6                          - 21 -

THIRD AMENDED COMPLAINT                        CASE NO.  5:18-CV-07182-EJD

1    users with authorized support services and/or may not have occurred at all had such users

2    downloaded officially licensed Neo4j® graph database platform software rather than ONgDB.

3    True and correct copies of printouts from third party websites www.stackoverflow.com

4    illustrating these issues are attached hereto as **Exhibits 23-26**.

5        72.    Consumers that have downloaded ONgDB have expressed uncertainty over

6    Defendants' unauthorized modification to the proprietary Neo4j Sweden Software License.  *See,*

7    *e.g.*, Exhibit 22.   Defendants continue to extenuate such issues and cause consumer confusion by

8    falsely equating ONgDB with commercially licensed NEO4J® EE.  *See, e.g.,* Exhibits 11-16.

9        73.    Defendants take full advantage of their deceptive marketing of ONgDB as being

10   the equivalent of the same numbered version of NEO4J® EE that was only available via a

11   commercial license by inducing potential customers to use the money they would normally pay

12   Plaintiffs for a commercial license for NEO4J® EE and instead download from GFI a purportedly

13   equivalent version of ONgDB for free and use those funds to obtain support and development

14   services from ARI and GraphGrid in closed, proprietary projects.  Thus, Defendants are illicitly

15   profiting from their misrepresentations about the validity of the Neo4j Sweden Software License

16   and their wrongful removal of the restrictions imposed by that license.

17       74.    Plaintiffs are informed and believe, and based thereon allege that Defendants

18   continues to extenuate such issues and causes consumer confusion by engaging in the above-

19   described unauthorized use of the NEO4J® Mark and making the foregoing false and misleading

20   statements in connection with the distribution, offering, and promotion of its "Neo4j Enterprise"

21   and ONgDB software.

22       75.    Plaintiffs are informed and believe, and based thereon allege that Suhy was the

23   moving, active conscious force behind the foregoing acts of infringement and false advertising by

24   iGov and PureThink.  Suhy either personally took part in the foregoing infringing activities or

25   specifically directed, controlled, ratified PureThink and iGov's employees to engage in such

26   infringing activities.

27       **DEFENDANT SUHY'S VIOLATIONS OF THE DMCA**

28       76.    Plaintiffs include copyright management information within the electronic source

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6

- 22 -

THIRD AMENDED COMPLAINT          CASE NO.  5:18-CV-07182-EJD

1    code files for NEO4J® EE, including information identifying the copyright owner as Neo4j

2    Sweden, the title of the work, licensing information, terms and conditions for use of the

3    copyrighted work, and other conspicuous displays identifying the owner or title of these

4    copyrighted works, including such use of "Neo4j" in the source code and NOTICE headers with

5    terms and conditions.

6          77.      Plaintiffs are informed and believe, and based thereon that with Graph

7    Foundation's approval and encouragement, Suhy replicated the NEO4j® EE source code files

8    and removed and/or altered (a) the existing Neo4j Sweden Software License; (b) copyright owner

9    information; and (c) other terms and conditions for the use of the copyrighted work from at least

10   28 separate files from NEO4J® EE.  Suhy replaced the Neo4j Sweden Software License with a

11   generic version of the APGLv3 thereby removing the additional license imposed by the Neo4j

12   Sweden Software License to prevent commercial abuse and other copyright management

13   information, and republished these source code files on Graph Foundation's Github repository for

14   ONgDB.  The following is an example of the changes (deletions in red, additions in green) Suhy

15   made within the NEO4J® EE code entitled "enterprise/neo4j-enterprise/License.txt":



28   Suhy made virtually identical changes to the other 27 files.  A true and correct print out of the

Hopkins & Carley
Attorneys At Law
San Jose

842\3571755.6                          - 23 -

THIRD AMENDED COMPLAINT                          CASE NO.  5:18-CV-07182-EJD

Page 63

1    listing of these source code files on Graph Foundation's Github repository for ONgDB is attached

2    hereto as **Exhibit 27.**

3         78.      Plaintiffs are informed and believe, and based thereon allege that Suhy was acting

4    and continues to act in concert with GFI and for their collective benefit in improperly modifying

5    Plaintiffs' source code to be used in ONgDB.  A true and correct copy of a tweet from GFI's co-

6    founder and CEO, Bradley Nussbaum, is attached hereto as **Exhibit 28**.

7                          **DEFENDANTS' OTHER MISCONDUCT**

8         79.      Between 2015 and 2018, employees of Neo4j USA engaged in numerous

9    telephone, cellular and VOIP communications with Suhy, via Skype and/or GoToMeeting via his

10   accounts at jmsuhy@purethink.com.  These calls related to the Parties' business activities.

11        80.      In the fall of 2016, Suhy informed Neo4j USA's Director of Global Alliances

12   (who resides in California) that Suhy had recorded prior telephone conversations with him and

13   other employees of Neo4j USA.  He then demanded that Suhy immediately cease recording the

14   conversation and confirmed that Suhy and PureThink did not have permission to record that

15   conversation or any other conversation with Neo4j USA's employees.

16        81.      In or about February 7, 2018, Suhy admitted in an email exchange with Neo4j

17   USA's Vice President of Products that he recorded multiple calls with Neo4j USA's Director of

18   Global Alliances and Neo4j USA's federal sales representative.

19        82.      On or about May 25, 2018, approximately mid-way through a 28-minute cellular

20   phone call, Suhy informed Neo4j USA's Vice President of Products that he was recording that

21   call, as well as had recorded <u>all</u> of Suhy's prior conversations with him "as a matter of course."

22   Neither Neo4j USA's Vice President of Products nor any other employee of Neo4j USA

23   consented to the recording of the aforementioned communications

24                  **DEFENDANTS CAMPAIGN TO DEFAME PLAINTIFFS**

25        83.      Defendants have repeatedly made public false and defamatory statements about

26   Plaintiffs on social media, including Twitter, in order to damage Plaintiffs' reputations.  Between

27   January 2020 and May 2020, Suhy repeated made posts on Twitter that contained unsubstantiated

28   false accusations of fraud and criminal conduct about Plaintiffs.  Examples include:

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6                              - 24 -

THIRD AMENDED COMPLAINT                    CASE NO.  5:18-CV-07182-EJD



True and correct copies of Suhy's tweets are attached hereto as **Exhibit 29** and **Exhibit 30**.

84.    During this same time period, Defendants also have harassed Plaintiffs' employees on Twitter with their false and defamatory statements in an effort to intimidate them. In January 2020, Suhy targeted Neo4j USA's Chief Marketing officer, Lance Walter, with the following unsolicited tweets falsely accusing Plaintiffs of engaging criminal and fraudulent acts:

Hopkins & Carley
Attorneys At Law
San Jose

842\3571755.6

- 25 -

THIRD AMENDED COMPLAINT                    CASE NO.  5:18-CV-07182-EJD

Page 65



True and correct copies of the foregoing tweets is attached hereto as **Exhibit 31** and **Exhibit 32**.

85.    In March and April 2020, Suhy targeted Peter Neubauer, former Vice President of Neo4j Community, falsely claiming that Neo4j USA defrauded its investors, as well as would face criminal charges and class action lawsuits:

Hopkins & Carley
Attorneys At Law
San Jose

THIRD AMENDED COMPLAINT                    CASE NO.  5:18-CV-07182-EJD

**Page 66**

1     True and correct copies of the foregoing tweets is attached hereto as **Exhibit 33**.

2         86.      On or about May 27, 2020, Plaintiffs sent Defendants a letter requesting that they

3 immediately take down the foregoing false and defamatory statements from Twitter.  Plaintiffs

4 also demanded that Defendants not engage in any further attempts to damage Plaintiffs'

5 reputation in the marketplace with unsubstantiated false accusations of fraud and criminal

6 conduct, as well as improperly litigate the parties' dispute outside of court and taint the jury pool.

7 A true and correct copy of the foregoing letter is attached hereto as **Exhibit 34**.

8         87.      Defendants never responded to Plaintiffs' May 27, 2020 letter nor removed the

9 foregoing false and defamatory statements from Twitter as requested.  Instead, Defendants

10 continued to engage in their campaign to unfairly complete with and defame Plaintiffs by

11 specifically targeting Plaintiffs' actual and potential investors.

12         88.      On July 3, 2020, Suhy posted a tweet falsely accusing Neo4j USA's Chief

13 Operations Officer, Lars Nordwall, of defrauding Plaintiffs' investors among other false and

14 defamatory statements about Plaintiffs:

15

16

17

18

19 

20

21

22

23

24

25

26

27

28

Hopkins & Carley
Attorneys At Law
San Jose

842\3571755.6

- 27 -

THIRD AMENDED COMPLAINT             CASE NO.  5:18-CV-07182-EJD

**Page 67**

1    A true and correct copy of the foregoing tweet is attached hereto as **Exhibit 35**.

2        89.        Minutes later, Suhy posted a tweet responding to a November 1, 2018 tweet by

3    Mr. Nordwall, which he directed at two of Plaintiffs' investors, One Peak Partners and Morgan

4    Stanley Expansion Capital, again falsely accusing Plaintiffs of attempting to criminally defraud

5    their investors:



23   A true and correct copy of the foregoing tweet is attached hereto as **Exhibit 36**.

24       90.        There was no legitimate reason for Suhy to dig up a tweets from November 2018

25   and making false statements that they engaging in criminal fraud directed at Neo4j's investors,

26   other than to maliciously harm Plaintiffs' reputation and ability to receive future funding.

27       91.        On July 6, 2020, Plaintiffs sent an email again warning Defendants that they were

28   not entitled to make false and defamatory statements regarding Neo4j and engage in defamation

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6                                      - 28 -

THIRD AMENDED COMPLAINT                            CASE NO.  5:18-CV-07182-EJD

**Page 68**

1   as a means of self-help in both the lawsuit and the marketplace.  A true and correct copy of the

2   foregoing email is attached hereto as **Exhibit 37**.

3       92.     Defendants have not limited such misconduct to Twitter.  Plaintiffs are informed

4   and believe, and based thereon allege that Defendants have made similar false and defamatory

5   statements directly to Plaintiffs' actual and potential customers.  For example, on February 22,

6   2020, Mr. Suhy sent an email to a Neo4j employee and copied several employees of a Neo4j USA

7   customer wherein he stated:

8           you may not be aware of this yet but there is an upcoming court case in the
            US, which is going to expose Neo4j's deception on this topic, and it is
9           starting to look like it may lead to possible criminal fraud charges and class
            action lawsuits against Neo4j Inc.
10

11  Despite being relevant and responsive to discovery propounded by Plaintiffs in this lawsuit,

12  Defendants did not produce this email.  As result, there is reason to believe that Defendants have

13  made similar false accusations of criminal fraud to other actual and potential customers of

14  Plaintiffs as part of their broader scheme to harm Plaintiffs' reputation and business.

15      93.     Under the Partner Agreement, PureThink agreed to maintain the confidentiality of

16  Neo4j USA's confidential and proprietary information.  In particular, Section 3 of the Partner

17  Agreement restricted the use and disclosure of confidential information obtained under the terms

18  thereof for a period of five (5) years from receipt, and the confidentiality obligations survived the

19  termination per Section 7 of this agreement.  By definition, this included the confidential pricing

20  for various licenses to Neo4j® software and services, as well as the compensation structure for

21  Solution Partners such as PureThink that is set forth in the Partner Agreement.  Hence, it states

22  "NEO TECHNOLOGY INC. CONFIDENTIAL" at the bottom of each page of the Partner

23  Agreement.

24      94.     When Neo4j USA initiated this lawsuit, it did not attach the Partner Agreement to

25  the original complaint or any subsequent iterations due to the fact that it contained the

26  compensation structure for PureThink among other things.

27      95.     In complete disregard of their obligations under the confidentiality provisions,

28  iGov and PureThink attached the Partner Agreement to their original counterclaim (Dkt. No. 22)

Hopkins & Carley
Attorneys At Law
San Jose

842\3571755.6

- 29 -

THIRD AMENDED COMPLAINT                    CASE NO.  5:18-CV-07182-EJD

1  and did not file it under seal.  Plaintiffs are informed and believe that Defendants publicly filed

2  the Partner Agreement in the lawsuit in an effort to tarnish Plaintiffs' goodwill.  Suhy has since

3  posted entry on iGov's blog that includes two links to the entire Partner Agreement and has also

4  redirected users on Twitter to this blog entry in conjunction with making the aforementioned false

5  and defamatory statements regarding Plaintiffs:

6
7
8
9
10
11
12
13
14
15



16

17  A true and correct copy of this April 2, 2020 tweet by Suhy is attached hereto as **Exhibit 38**.

18          96.      On July 18, 2020, Suhy sent another tweet further suggested he would breach by

19  the confidentiality provisions of the Partner Agreement:

20
21
22
23
24
25
26
27

28  A true and correct copy of this July 18, 2020 tweet by Suhy is attached hereto as **Exhibit 39**.

Hopkins & Carley
Attorneys At Law
San Jose

842\3571755.6                                    - 30 -

THIRD AMENDED COMPLAINT                          CASE NO.  5:18-CV-07182-EJD

Page 70

1    Suhy posted a similar tweet on July 29, 2020, a true and correct copy of which is attached hereto

2    as **Exhibit 40**.

3          97.     In addition, Suhy's repeated references to confidential information in his tweets

4    suggests that he may be improperly using confidential materials that were provided to him by

5    Plaintiffs subject to the confidentially provision in the Neo4j Solution Partner Agreement.  Suhy's

6    tweets further suggest that Defendants are abusing the access they were granted under the

7    Protective Order and using materials designated as "CONFIDENTIAL" thereunder for improper

8    purposes outside the scope of this litigation

9          98.     On August 26, 2020, Suhy posted two additional tweets on his Twitter feed that

10   are false and defamatory:



22   A true and correct copy of these tweets are attached hereto as **Exhibit 41**.

23   <u>**FIRST CAUSE OF ACTION**</u>

24   **TRADEMARK INFRINGEMENT – 15 U.S.C. § 1114**

25   **(By Neo4j USA Against All Defendants)**

26         99.     Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1

27   through 97 of this Complaint as though fully set forth herein.

28         100.    Plaintiffs have been actively using the NEO4J® Mark in interstate commerce

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6
     - 31 -

THIRD AMENDED COMPLAINT           CASE NO.  5:18-CV-07182-EJD

1    since at least as early as 2007.  Plaintiffs' graph database solutions and software and related

2    supported services offered under the NEO4J® Mark has enjoyed and continues to enjoy extensive

3    recognition among customers, reviewers and industry professionals in the marketplace.

4           101.    Neo4j USA currently offers, and Plaintiffs have a long and established history of

5    offering graph database solutions and software and related services, both directly and through

6    authorized Neo4j® Solution Partners under the distinctive NEO4J® Mark.  Through favorable

7    acceptance and recognition by customers, reviewers and industry professionals, the NEO4J®

8    Mark has come to be associated in the public with Neo4j USA, have become an asset of

9    substantial value to Neo4j USA, and a symbol of its high quality, industry leading graph database

10   solutions and software and related services, as garnered substantial goodwill.

11          102.    Plaintiffs' graph database solutions and software and related services offered

12   under the NEO4J® Mark are advertised via print publications, over the Internet through Neo4j

13   USA's website and through third-party websites and blogs, paid advertising on LinkedIn, Twitter,

14   Facebook, and elsewhere, as well as via mobile applications and publications, physical billboards,

15   and signage at both company-branded and third-party events.

16          103.    Neo4j USA has expended considerable time, money and effort in advertising and

17   promoting its graph database solutions and software and related support services under the

18   NEO4J® Mark among consumers and authorized Neo4j® Solution Partners.  Consequently,

19   Neo4j USA has developed substantial and exclusive goodwill and reputation in connection with

20   the NEO4J® Mark for its graph database solutions and software and related support services.

21          104.    As a result of these expenditures, combined with substantial sales of Plaintiffs'

22   graph database solutions and software and related support services under the NEO4J® Mark, the

23   relevant consuming public and likely customers have come to recognize the NEO4J® Mark as

24   favorably distinguishing Neo4j USA's graph database solutions and software and related support

25   services from those of its competitors.

26          105.    Due to this widespread public use and recognition, the NEO4J® Mark has

27   become an asset of significant value and goodwill, and a successful indicator of the source of

28   Neo4j USA's graph database solutions and software and related support services.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6                                                  - 32 -

THIRD AMENDED COMPLAINT                          CASE NO.  5:18-CV-07182-EJD

106.     Defendants' software and related support services directly compete with Neo4j USA's graph database solutions and software and related support services offered and sold under Neo4j USA's NEO4J® Mark.  The customers and users, and potential users and consumers of Neo4j USA's graph database solutions and software and related support services offered and sold under Neo4j USA's NEO4J® Mark are identical to the user and customers and potential users and customers of the graph database solutions and software and related support services offered by Defendants.

107.     Defendants have had and have actual knowledge of Neo4j USA's rights in the NEO4J® Mark and are willfully infringing and intentionally adopted and used this mark in commerce without Neo4j USA's consent in connection with the sale, offering for sale, distribution and advertising of competing graph database solutions and software and related support services.  The software and related support services promoted by Defendants have been disseminated and distributed through various means including, without limitation, sales and solicitations through PureThink, iGov and GraphStack's Internet interactive websites and other third party websites, including within this District.

108.     Defendants' willful, intentional and unauthorized use of the NEO4J® Mark in conjunction with the sale and advertising of Defendants and third parties' unauthorized database solutions and software and related support services is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of Neo4j USA's graph database solutions and software and related support services.

109.     Defendants' activities constitute willful trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

110.     The injuries and damages sustained by Neo4j USA have been directly and proximately caused by Defendants' wrongful sale, offering for sale, distribution, or advertising of Defendants and third parties' software products and services in conjunction with their unauthorized use of the NEO4J® Mark.  Specifically, Neo4j USA has been damaged in an amount according to proof at trial, but in no event less than approximately $3.1 million, plus interest thereon under applicable law.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6

- 33 -

THIRD AMENDED COMPLAINT                    CASE NO.  5:18-CV-07182-EJD

111.     As iGov and Suhy's acts are likely to continue, the award of money damages alone will not adequately compensate Neo4j USA.  By their unauthorized use of the NEO4J® Mark and refusal to cease such use, Defendants have caused, and will continue to cause irreparable harm, damages and injury to Neo4j USA.  Neo4j USA's injuries will continue unless restrained by order of this Court.  Accordingly, Neo4j USA is entitled to preliminary and permanent injunctive relief.

## SECOND CAUSE OF ACTION

### FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING – 15 U.S.C. § 1125(a)

### (By Neo4j USA Against All Defendants)

112.     Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 110 of this Complaint as though fully set forth herein.

113.     Defendants' actions constitute a false designation of origin and false advertising under 15 U.S.C. § 1125(a), which is likely to cause confusion, mistake or to deceive and has confused and deceived consumers into believing that Defendants' goods and services are affiliated with, sponsored by, or somehow connected with Neo4j USA and/or Neo4j USA's NEO4J® Mark, and, as a consequence, are likely to divert customers away from Neo4j USA and/or its authorized NEO4J® Solution Partners.

114.     Defendants' unlawful activities reflect adversely on Neo4j USA because it has no control over the nature and quality of the services and products advertised and sold by iGov, and as the believed source of origin, Neo4j USA's efforts to continue to protect its reputation for high quality graph database solutions and software and related support services sold under the NEO4J® Mark will be hampered, resulting in the loss of goodwill and sales, to the irreparable harm of Neo4j USA.

115.     Further, any failure, neglect, or default by Defendants in using the NEO4J® Mark in offering its and third parties' unauthorized software products will continue to reflect adversely on Neo4j USA as the believed source of origin thereof, hampering efforts by Neo4j USA to continue to protect its outstanding reputation for high quality graph database solutions and software and software-related services, resulting in loss of customers and partners, as well as the

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6                                          - 34 -

THIRD AMENDED COMPLAINT                              CASE NO.  5:18-CV-07182-EJD

Page 74

1   loss of goodwill and sales, all to the irreparable harm of Neo4j USA.

2      116.   The actions of Defendants as alleged herein constitute intentional, willful,

3   knowing and deliberate false designation of origin and false advertising pursuant to 15 U.S.C. §

4   1125(a).

5      117.   Defendants' willful, intentional and unauthorized use of the NEO4J® Mark is

6   likely to cause and is causing confusion, mistake, and deception as to the origin and quality of

7   Defendants' software products and software-related services.

8      118.   The injuries and damages sustained by Neo4j USA have been directly and

9   proximately caused by Defendants' wrongful and misleading sale, offering for sale, distribution,

10   or advertising of Defendants and third parties' unauthorized software products and software-

11   related services.  Specifically, Neo4j USA has been damaged in an amount according to proof at

12   trial, but in no event less than the approximate amount of approximately $3.1 million, plus

13   interest thereon under applicable law.

14      119.   As Defendants' acts are likely to continue, the award of money damages alone

15   will not adequately compensate Neo4j USA.  By their false designation of origin and false

16   advertising, and refusal to cease the use of the NEO4J® Mark, Defendants have caused, and will

17   continue to cause irreparable harm, damages and injury to Neo4j USA.  Neo4j USA's injuries

18   will continue unless restrained by order of this Court.  Accordingly, Neo4j USA is entitled to

19   preliminary and permanent injunctive relief.

20                        **THIRD CAUSE OF ACTION**

21              **UNFAIR COMPETITION – 15 U.S.C. § 1125(a)**

22                   **(By Neo4j USA Against All Defendants)**

23      120.   Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1

24   through 118 of this Complaint as though fully set forth herein.

25      121.   Defendants' conduct described and alleged in this complaint constitutes unfair

26   competition and fraudulent business practices in violation of 15 U.S.C. § 1125.  Defendants are

27   deliberately, intentionally and unlawfully exploiting the NEO4J® Mark and consumer goodwill

28   for their benefit.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6                          - 35 -

THIRD AMENDED COMPLAINT                    CASE NO.  5:18-CV-07182-EJD

122.    Defendants' use of the NEO4J® Mark in conjunction with their business constitutes the use of a word, term, name, or any combination thereof, that is likely to cause confusion, mistake, or deception as to the affiliation, connection, origin, sponsorship, approval and/or association of Defendants and their software products and software-related services with Neo4j USA, within the meaning of 15 U.S.C. § 1125(a)(1).

123.    In addition, Defendants' use of the NEO4J® Mark constitutes a commercial use that causes actual and/or likely dilution of the distinctive quality of the NEO4J® Mark by lessening the capacity of the NEO4J® Mark to identify Neo4j USA and distinguish its software products and software-related services.  Defendants knowingly traded on Neo4j USA's reputation after the NEO4J® Mark had become well known.

124.    As a direct and proximate result of Defendants' acts and misconduct, Plaintiffs are informed and believe, and thereon allege, that customers and prospective customers have been confused and misled, deceived and mistaken as to the source or sponsorship of Defendants and third parties' unauthorized software products and software-related services, and have been deterred from purchasing Neo4j USA's graph database solutions and software and related support services, in disruption of Neo4j USA's business activities.

125.    Neo4j USA has therefore been damaged and is likely to suffer further damage in an amount to be proven at trial, but in excess of the minimum jurisdiction of this Court.  In particular, Neo4j USA is entitled to, without limitation, damages for its loss of sales and goodwill, as well as recovery of any and all profit derived by Defendants through their wrongful acts in an amount according to proof at trial, but in no event less than the approximate amount of $3.1 million, plus interest thereon under applicable law.

126.    As Defendants' wrongful acts are likely to continue, the award of money damages alone will not adequately compensate Neo4j USA.  By their use of the NEO4J® Mark, Defendants have caused, and will continue to cause irreparable harm, damages and injury to Neo4j USA.  Neo4j USA's injuries will continue unless restrained by order of this Court. Accordingly, Neo4j USA is entitled to preliminary and permanent injunctive relief.

/ / /

Hopkins & Carley
Attorneys At Law
San Jose

842\3571755.6

- 36 -

THIRD AMENDED COMPLAINT                    CASE NO.  5:18-CV-07182-EJD

Page 76

**FOURTH CAUSE OF ACTION**

**UNFAIR COMPETITION – Cal. Bus. Prof. Code §§ 17200 et seq.**

**(By Neo4j USA Against All Defendants')**

127.    Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 125 of this Complaint as though fully set forth herein.

128.    Plaintiffs are informed and believe, and thereon allege, that Defendants' conduct business within California, including, without limitation, the advertising and distribution of Defendants and third parties' unauthorized software products and services through its headquarters and over iGov's interactive internet website.

129.    Defendants' and third parties' unauthorized software products conduct described and alleged in this Complaint constitutes unfair, unlawful, and fraudulent business practices in violation of California Business & Professions Code §§ 17200 et seq.

130.    Defendants' knew or reasonably should have known that use of NEO4J® Mark deceives and/or confuses customers into believing that Defendants and third parties' unauthorized software products and software related services are produced, endorsed, affiliated and/or associated with Neo4j USA.

131.    Plaintiffs are informed and believe, and thereon allege, that Defendants' misuse of the NEO4J® Mark was an intentional and deliberate attempt to trade on the Neo4j USA's goodwill.

132.    As a direct and proximate result of Defendants' wrongful acts, Plaintiffs are informed and believe, and thereon allege, that customers and prospective customers have been confused and misled, deceived and mistaken as to the source or sponsorship of Defendants and third parties' unauthorized software products and services, and have been deterred from purchasing and/or using Neo4j USA's NEO4J® software and services, in disruption of Neo4j USA's business activities.

/ / /

/ / /

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6

- 37 -

THIRD AMENDED COMPLAINT                          CASE NO.  5:18-CV-07182-EJD

133.     Neo4j USA has therefore been damaged and is likely to suffer further damage in an amount to be proven at trial, and is entitled to the remedies available under Business and Professions Code § 17200 et seq., including but not limited to injunctive relief and restoration of money or property acquired by means of Defendants' wrongful acts.

**FIFTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(By Neo4j USA Against Defendant PureThink LLC and iGov Inc.)**

134.     Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 132 of this complaint as though fully set forth herein.

135.     The Partner Agreement constitutes a valid and enforceable contract between Neo4j USA and PureThink.

136.     Under Section 4.1 of the Partner Agreement, Neo4j USA provided PureThink with a non-exclusive, non-transferable limited license during the term of the Partner Agreement to, *inter alia*, use the NEO4J® Mark solely to market and promote Neo4j USAs' products.

137.     Section 7.3 of the Partner Agreement further provided that all rights and licenses to Neo4j USA's software products and the NEO4J® Mark would terminate upon the expiration or termination of the Partner Agreement, and upon such an event, PureThink agreed to "cease all communications with End Users regarding the Products" and "cease using any trademarks, service marks and other designations of Neo4j USAs" including the NEO4J® Mark.

138.     Under Section 4.3.2 of the Partner Agreement, PureThink further agreed and understood that during the term of the Partner Agreement, it would not "develop, market, distribute or offer any services related to any [NEO4J®] Community Edition Products, derivative works of such products, or any [PureThink] software code made to work with [NEO4J®] Community Edition Products (including, without limitation, hosting services, training, technical support, configuration and customization services, etc.)."  It was PureThink's acts and omissions in breach of this section occurring prior to July 11, 2017, among other things, that led to Neo4j's termination of the Partner Agreement on that date.

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6                                    - 38 -

THIRD AMENDED COMPLAINT                          CASE NO.  5:18-CV-07182-EJD

**Page 78**

139.  Under Section 3 of the Partner Agreement, PureThink agreed "that it acquires only the right to use [Neo4j USA's] Confidential Information under the terms and conditions of this Agreement and does not acquire any rights of ownership or title in [Neo4j USA's] Confidential Information."  PureThink further agreed that it would "hold in confidence any Confidential Information received by it from [Neo4j USA] and will protect the confidentiality of such with the same degree of care that it exercises with respect to its own information of like import, but in no event less than reasonable care, for a period of five (5) years from receipt."

140.  The foregoing provisions were intended and necessary to protect Neo4j USA's legitimate business interests in its goodwill and intellectual property and survived termination pursuant to Section 7.4 of the Partner Agreement.

141.  Neo4j USA is informed and believed, and based thereon alleges that iGov is bound by the aforementioned restrictions and liable for breaches thereof as PureThink's successor-in-interest, assign, acquirer of substantially all of PureThink's assets as contemplated by Section 10 of the Partner Agreement and/or as PureThink's alter ego.

142.  Neo4j USA has performed every promise and condition required to be performed by it pursuant to the Partner Agreement except any which were or would be excused or prevented by the breaches of PureThink and iGov as set forth herein.

143.  PureThink and iGov have willfully and with conscious disregard for the contractual obligations owed to Neo4j USA have breached and continue to breach Sections 3.1, 4.1 and 7.3 of the Partner Agreement by (a) their unauthorized use of the NEO4J® Mark in conjunction with the sale and advertising of graph database solutions and software and related support services; (b) deceptively offering support and development services related to NEO4J® Community Edition Products and unauthorized derivative works of such products; (c) deceptively developing, marketing, and distributing software purporting to be the equivalent of NEO4J® products; and (d) using Neo4j USA's confidential information to harm NEO4J's goodwill.  Their breaches of the Partner Agreement also include falsely suggesting Neo4j USA's authorization and/or sponsorship of PureThink and iGov's products and services, as well as misleading consumers regarding their prior contributions to NEO4J®-branded products.

144.    The misconduct and breaches alleged above also constitute violations of the covenant of good faith and fair dealing implied in the Partner Agreement, because those activities injured and frustrated the right of Neo4j USA to the benefits of the Partner Agreement.

145.    As a direct and proximate result of PureThink and iGov's breaches of contract, Neo4j USA has been damaged in an amount according to proof at trial, but in no event less than the approximate amount of $3.1 million, plus interest thereon under applicable law.

146.    As a direct and proximate result of PureThink and iGov's breaches of contract, Neo4j USAs has suffered irreparable injury and harm and will continue to suffer such injury and harm unless and until PureThink and iGov are enjoined from further misuse and infringement of the NEO4J® Mark.

147.    PureThink and iGov have derived, received, and will continue to derive and receive from the aforementioned breaches of contract, gains, profits and advantages, many of which are not presently known to Neo4j USA.  Unless restrained and enjoined by the Court, PureThink and iGov will continue to breach the Partner Agreement.  Neo4j USA therefore entitled to injunctive relief or specific performance, as well as damages as provided by law and the Partner Agreement.

## SIXTH CAUSE OF ACTION

### INVASION OF PRIVACY – CAL. PENAL CODE §§ 632, 637.2

### (By Neo4j USA Against PureThink LLC and John Mark Suhy)

148.    Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 146 of this complaint as though fully set forth herein.

149.    Unbeknownst to Neo4j USA and its employees, between 2015 and 2018, PureThink and Suhy intentionally recorded their conversations and audible communications transmitted over various electronic and telephonic devices with employees of Neo4j USA by using an electronic device.  Neo4j USA's employees utilized cellular devices to communicate with PureThink and Suhy for one or more of these communications.

150.    Neo4j USA and its employees were located and/or resided in California at the time that these communications occurred.

Hopkins & Carley
Attorneys At Law
San Jose

842\3571755.6                                    - 40 -

THIRD AMENDED COMPLAINT                    CASE NO.  5:18-CV-07182-EJD

Page 80

151.     These communications related sensitive aspects of the Neo4j USA's business, including confidential customer information, private financial information, and other confidential business information.  Neo4j USA and its employees thus had a reasonable expectation that these communications were not being recorded by PureThink and Suhy.

152.     At no time did Neo4j USA or its employees consent to the recording of any of their communications with PureThink and Suhy.  Rather, in the Fall of 2016, Neo4j USA instructed PureThink and Suhy not to record any of their calls and confirmed that PureThink and Suhy that did not have permission record any audible communications with Neo4j USA.  Notwithstanding these demands, PureThink and Suhy continued to secretly record their calls with Neo4j USA for the next two years without first obtaining Neo4j USA's consent.

153.     Neo4j USA is informed and believed, and based thereon on allege that PureThink and Suhy intentionally recording such conversations and audible communications with the intent to disclose those recordings to third parties and/or the general public that would not otherwise be privy to or have a right to listen to such communications.

154.     Neo4j USA is informed and believed, and based thereon on allege that PureThink and Suhy intentionally recording such conversations and audible communications with the intent to cause harm to Neo4j USA.

155.     Neo4j USA seeks statutory damages in the amount $5,000 per incident of unauthorized recording as authorized by Cal. Penal Code § 637.2.

156.     As PureThink and Suhy's wrongful acts are likely to continue due to their unauthorized possession of the aforementioned recordings, the award of money damages alone will not adequately compensate Neo4j USA.  By possessing aforementioned recordings, PureThink and Suhy have caused, and will continue to cause irreparable harm, damages and injury to Neo4j USA.  Neo4j USA's injuries will continue unless restrained by order of this Court.  Accordingly, Neo4j USA is entitled to preliminary and permanent injunctive relief.

/ / /

/ / /

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6

- 41 -

THIRD AMENDED COMPLAINT                          CASE NO.  5:18-CV-07182-EJD

**SEVENTH CAUSE OF ACTION**

**DEFAMATION – Cal. Civ. Code §§ 45, 45a**

**(By Plaintiffs Against All Defendants)**

157.    Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 155 of this Complaint as though fully set forth herein.

158.    Suhy published the above-alleged defamatory statements that Plaintiffs have engaged in fraud and deception with their customers, and engaged in fraudulent and criminal conduct were made to third parties such as Plaintiffs' actual and potential customers and actual and potential investors.  Suhy made such defamatory statements in his individual capacity, as well as an agent and employee of iGov and PureThink and was acting within the course and scope of such agency in making the above-alleged defamatory statements.

159.    It was reasonably understood by those third parties who read Defendants' defamatory statements that they were about Plaintiffs.

160.    On their face of the foregoing defamatory statements, it was reasonably understood Defendants meant to convey that Plaintiffs have engaged in fraud and deception with their customers, engaged in fraudulent and criminal conduct, and are dishonest and should not be dealt with or be trusted.

161.    Defendants' defamatory statements were false, unprivileged and had a natural tendency to injure Plaintiffs.

162.    Defendants intentionally made the defamatory statements with malice with the intent to harm Defendants' business, trade and reputation, with the knowledge that such statements were false or had serious doubts about the truth of the statements.

163.    Defendants' defamatory statements have cast Plaintiffs in a negative and false light, exposed Plaintiffs to hatred, contempt, ridicule and obloquy, as well as making it odious in the estimation of those with whom Plaintiffs have business dealing or connections, and have caused harm to Plaintiffs' business, trade and reputation.

164.    As a result, Plaintiffs have suffered damages in an amount to be proven at trial according to proof, including but not limited to, harm to their business reputation, exposure to

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6                                    - 42 -

THIRD AMENDED COMPLAINT                                    CASE NO.  5:18-CV-07182-EJD

Page 82

1    contempt, ridicule, and obloquy, and bringing Plaintiffs' business into public contempt, and of

2    making it odious in the estimation of those with whom they have business dealing or connections.

3        165.    In making the defamatory statement identified above, Defendants acted with

4    malice, oppression, or fraud, and is thus responsible for punitive damages in an amount to be

5    proven at trial according to proof.

6                            **EIGHTH CAUSE OF ACTION**

7    **UNAUTHORIZED DISTRIBUTION OF ALTERED COPYRIGHT MANAGEMENT**

8                **INFORMATION – 17 U.S.C. § 1202(b)**

9                        **(By Plaintiffs Against Defendants)**

10       166.    Plaintiff incorporates and realleges the allegations set forth in paragraphs 1

11   through 164 of this complaint as though fully set forth herein.

12       167.    Neo4j Sweden is the exclusive owner of the copyrights associated with all

13   versions of NEO4J® graphing database software, including the versions of NEO4J® EE

14   referenced herein (collectively "NEO4J® graph database platform").  Neo4j Sweden is the

15   exclusive owner of the rights to license, copy or distribute and license the use of copies of the

16   NEO4J® graph database platform.

17       168.    The NEO4J® graph database platform is published and distributed with copyright

18   management information that includes the copyright owner's name, the title of the work, terms

19   and conditions for use of the work, and other identifying information about the copyright owner

20   ("NEO4J® CMI").  Various identifications in the source code for the NEO4J® graph database

21   platform reference Neo4j Sweden, including use of "Neo4j" in library file structures – this and

22   other conspicuous displays of the NEO4J® CMI, which constitute copyright management

23   information pursuant to 17 U.S.C. § 1202(b).

24       169.    Acting his individual capacity, as well as an agent of iGov, PureThink and GFI,

25   Suhy intentionally copied source code files for the NEO4J® graph database platform containing

26   NEO4J® CMI, and then intentionally altered and removed NEO4J® CMI, including licensing

27   terms and conditions, in at least 28 separate source code files for the NEO4J® graph database

28   platform.  Defendants publicly distribute these altered source code files as part of the Graph

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6                              - 43 -

THIRD AMENDED COMPLAINT                          CASE NO.  5:18-CV-07182-EJD

Foundation's ONgDB software on iGov's website and Graph Foundation's Github repository

with the intent and knowledge that the NEO4J® CMI had been intentionally removed therefrom.

170.    Defendants intentionally removed the NEO4J® CMI and distributed altered

versions of NEO4J® graph database platform with the knowledge that doing so would induce,

enable, facilitate, or conceal an infringement of Neo4j Sweden's rights under the Copyright Act.

171.    Defendants have knowingly distributed and continue to distribute altered versions

of NEO4J® graph database platform with the knowledge that doing so would induce, enable,

facilitate, or conceal an infringement of Neo4j Sweden's rights under the Copyright Act.

172.    Defendants engaged in these activities without the consent or authorization of

Neo4j Sweden.

173.    Plaintiffs have been injured as a result of these violations of 17 U.S.C. § 1202(b)

and is entitled to injunctive relief, damages, costs, and attorneys' fees.  Pursuant to 17 U.S.C. §

1203(c)(3), Neo4j Sweden may also elect to recover statutory damages for not less than $2,500 or

more than $25,000 for each violation of 17 U.S.C. § 1202(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.    For compensatory damages in an amount to be proven at trial, in amount no less

than $3,100,000, and that the amount of damages for infringement of Neo4j USA's NEO4J®

Mark be increased by a sum not exceeding three times the amount thereof as provided by 15

U.S.C. § 1117;

2.    For an award of all profits heretofore realized by Defendants during their

infringing use of the NEO4J® Mark pursuant to 15 U.S.C. § 1117 and other applicable laws and

statutes;

3.    For reasonably attorneys' fees and costs pursuant to 15 U.S.C. § 1117 and/or 18

U.S.C. § 2520(b)(3);

4.    Compensatory damages according to proof for Defendants' breaches of contract, but

in amount no less than $3,100,000;

5.    Disgorgement and restitution of Defendants' ill-gotten gains;

Hopkins & Carley
Attorneys At Law
San Jose

1          6.     For a preliminary and permanent injunction restraining Defendant, its officers,

2    agents, servants, employees, attorneys, confederates, and all persons acting for, with, by through,

3    under, or in active concert with them temporarily, preliminarily, and permanently enjoined and

4    restrained from use of the NEO4J® Mark;

5          7.     For injunctive relief, costs, and attorneys' fees pursuant to 17 U.S.C. § 1203(b);

6          8.     For actual damages, or in the alternative statutory damages for not less than $2,500

7    or more than $25,000 for each violation of 17 U.S.C. § 1202(b), pursuant to 17 U.S.C. § 1203(c);

8          9.     For damages suffered as a result of Defendants' defamatory statements and an

9    award of punitive damages in amounts to be proven at trial;

10         10.    For interest as allowed by law;

11         11.    For cost of suit herein incurred; and

12         12.    For such other and further relief as this Court may deem proper.

13   Dated: September 28, 2020             HOPKINS & CARLEY

14                             A Law Corporation

15                             By: */s/ Jeffrey M. Ratinoff*

16                               John V. Picone III

                               Jeffrey M. Ratinoff

17                               Attorneys for Neo4j USA

                               NEO4J, INC.

18

19

20

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

842\3571755.6

- 45 -

1

## DEMAND FOR JURY TRIAL

2          Neo4j USA Neo4j, Inc. hereby demands trial by jury for all causes of action presented

3    herein pursuant to Fed. R. Civ. P. 38.

4    Dated:  September 28, 2020                          HOPKINS & CARLEY
                                                         A Law Corporation
5

6                                                        By: _/s/ Jeffrey M. Ratinoff_____
                                                             John V. Picone III
7                                                            Jeffrey M. Ratinoff
                                                             Attorneys for Plaintiffs
8                                                            NEO4J, INC. AND NEO4J SWEDEN AB

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

842\3571755.6                            - 46 -

THIRD AMENDED COMPLAINT                          CASE NO.  5:18-CV-07182-EJD

**10-19-2020 - DEF ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT.pdf**

Filed 10/19/2020

DEFENDANTS PURETHINK, LLC, IGOV INC AND JOHN MARK SUHY'S ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

(Pacer Doc #91)

Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney at Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Attorneys for Defendants:
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,<br><br>Plaintiffs<br><br>v.<br><br>PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual,<br>Defendants. | CASE NO. 5:18-cv-7182 EJD<br><br>**DEFENDANTS PURETHINK, LLC, IGOV INC AND JOHN MARK SUHY'S ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Defendants PURETHINK, LLC, iGOV and JOHN MARK SUHY

("Defendants") answers NEO4J, INC. ("Neo4J USA") and NEO4J SWEDEN

AB's ("Neo4J Sweden") Third Amended Complaint as follows:

1. Defendants admit the statement outlines the claims but otherwise deny the claims and allegations in paragraph 1.

2. Defendants admit the first and second sentence in paragraph 2. Defendants deny that plaintiff is the graph company behind an open source software product called Neo4J as the software is owned by and licensed by Neo4J Sweden AB according to the license for Neo4J-enterprise available at GitHub. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis deny the remaining allegations.

3. Defendants deny the allegation in paragraph 3. Defendants believes that many users are using the open source version called Neo4J and not what plaintiff calls Neo4J®. This confusion arises because plaintiff Neo4J, USA claims they own Neo4J software yet the open source license is by Neo4J Sweden. Likewise, there appear over 183 contributors to the open source version of the Neo4J software and Defendants do not know if each contributor has assigned contributions or moral rights in works to either plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis deny the remaining allegations.

4. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 4 and on that basis deny the allegations.  Defendants deny that Neo4j Sweden owns all rights to the copywright to Neo4j as rights are jointly owned by joint

**Page 89**

authories and are subject to the terms of the GitHub and GPL AGPL licenses.

5.   Defendants admit the allegations in paragraph 5 except they deny PureThink is a shell entity maintained by the other Defendants and is not currently conducting or engaged in any meaningful business activities.

6.   Defendants admit the allegations in paragraph 6 except they deny iGov is the assignee and successor-in-interest to PureThink or otherwise acquired substantially all of PureThink's assets sometime in mid-2017 and deny that Neo4J is a large scale graph solution as it is limited in scalability.

7.   Defendants admit that iGov does business as GraphStack, but deny the remaining allegations in paragraph 7.

8.   Defendants deny the allegations in paragraph 8 except for the fact Suhy is an individual residing in Reston, Virginia and the last sentence.

9.   Defendants deny the allegations in paragraph 9.

10.      Defendants deny the allegations in paragraph 10.

11.      Defendants deny the allegations in paragraph 11 are an example to support the allegations and deny Defendants share the same customer support number but admit the facts alleged.

12.      Defendants deny the allegations in paragraph 12 are an example to support the allegations but admit the facts alleged except Defendants lack information or belief about what virtually identical means.

13.     Defendants deny the allegations in paragraph 13 as the verb ported is unclear and vague.

14.     Defendants deny the allegations in paragraph 14.

15.     Defendants admit the allegations in paragraph 15.

16.     Defendants deny the allegations in paragraph 16.

17.     Defendants deny the allegations in paragraph 17.

18.     Defendants admit the allegations in paragraph 18.

19.     Defendants admit the allegations in paragraph 19.

20.     Defendants deny the allegations in paragraph 20.

21.     Defendants deny Neo4j USA is the owner for the trademark as the owner is Neo4j Sweden and Neo4J USA is not an exclusive licensee or assignee of the trademark. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 21 and on that basis deny the allegations.

22.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 22 and on that basis deny the allegations. However, defendants deny plaintiffs use the mark since 2006 since Neo4j USA did not exist at that time.

23.     Defendants deny the allegations in paragraph 23. Neo4J USA is not the owner, assignee or exclusively licensee of the mark and lacks standing to assert the mark.

24.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 24 and on that basis deny the allegations.  Defendants is informed and believes that both plaintiffs did not license the open source version of Neo4J software

as alleged as the open source software is owned and license only by
Neo4J Sweden. Likewise the business model stated is not accurate as
the business model was limited Neo4J's Sweden's election to use the
GPL and AGPL licenses. Users did not require other feature sets and
support was offered through independent sources such that that
allegations are not true.

25.      Defendants lack knowledge or information sufficient to form a
belief about the truth of the allegations in paragraph 25 and on that
basis deny the allegations. Defendants is informed and believes that
both plaintiffs did not license the open source version of Neo4J software
as the open source licenses is owned and license only by Neo4J
Sweden. Further, Neo4J Sweden did not license a commercial product
based on the open source software.

26.      Defendants deny the allegations in paragraph 26.

27.      Defendants deny the allegations in paragraph 27.

28.      Defendants deny the allegations in paragraph 28.

29.      Defendants deny they agreed to provide first and second line
support to end-users of NEO4J® EE software. Defendants admit the
remaining allegations paragraph 29.

30.      Defendants admit the first sentence in paragraph 30 and deny
the remainder.

31.      Defendants lack knowledge or information sufficient to form a
belief about the truth of the allegations in paragraph 31 and on that

basis deny the allegations. Purethink told the government the truth about using the open source version of Neo4j.

32.     Defendants deny the allegations in paragraph 32.

33.     Defendants admit the first sentence in paragraph 33 and deny the remainder.

34.     Defendants admit the allegations paragraph 34.

35.     Defendants admit the allegations paragraph 35.

36.     Defendants admit the allegations paragraph 36.

37.     Defendants admit the allegations in paragraph 37.

38.     Defendants admit the allegations in paragraph 38.

**Mr. Suhy's efforts to reveal Neo4j USA false business practices**

39.     Defendants deny the allegations in paragraph 39.

40.     Defendants deny the allegations in paragraph 40.

41.     Defendants deny the allegations in paragraph 41.

42.     Defendants deny the allegations in paragraph 42.

43.     Defendants deny the allegations in paragraph 43.

44.     Defendants deny the allegations in paragraph 44.

45.     Defendants deny the allegations in paragraph 45.

46.     Defendants deny the allegations in paragraph 46.

47.     Defendants deny the allegations in paragraph 47.

48.     Defendants deny the allegations in paragraph 48.

49.     Defendants deny the allegations in paragraph 49.

50.     Defendants deny the allegations in paragraph 50.

51.     Defendants deny the allegations in paragraph 51.

52.     Defendants deny the allegations in paragraph 52.

53.     Defendants deny the allegations in paragraph 53.

54.     Defendants deny the allegations in paragraph 54.

55.     Defendants deny the allegations in paragraph 55.

**Mr. Suhy supports continued lawful use of open source Neo4j**

56.     Defendants deny the allegations in paragraph 56.

57.     Defendants deny the allegations in paragraph 57.

58.     Defendants deny the allegations in paragraph 58.

59.     Defendants deny the allegations in paragraph 59.

60.     Defendants deny the allegations in paragraph 60.

61.     Defendants deny the allegations in paragraph 61.

62.     Defendants admit to posting links as users are permitted to use such resources under the GitHub license.

63.     Defendants deny the allegations in paragraph 63.

64.     Defendants deny the allegations in paragraph 64.

65.     Defendants deny the allegations in paragraph 65.

66.     Defendants deny the allegations in paragraph 66.

67.     Defendants deny the allegations in paragraph 67.

68.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 68 and on that basis deny the allegations. Neo4j Sweden does not have a Software license as they are using the software license for the GPL and AGPL license and such licenses are owned by a third party. Neo4J  Sweden's copyright management information violates the APGL copyright and are not valid under the AGPL and are permitted to be removed under the AGPL.

> **Mr. Suhy's conduct was to permit users to understand they can use open source software and not be confused by plaintiffs' unfair trade practices.**

69.     Defendants deny allegations in paragraph 69.

70.     Defendants deny the allegations in paragraph 70.

71.     Defendants deny the allegations in paragraph 71.

72.     Defendants deny the allegations in paragraph 72.

73.     Defendants deny the allegations in paragraph 73.

74.     Defendants deny the allegations in paragraph 74.

75.     Defendants deny the allegations in paragraph 75.

> **Suhy's applying the terms of the AGPL to prevent violation of the AGPL**

76.     Defendants deny the allegations in paragraph 76.

77.     Defendants deny the allegations in paragraph 77.

78.     Defendants deny the allegations in paragraph 78.

79.     Defendants admit the general allegations in paragraph 79.

80.     Defendants admit the allegations in paragraph 80.  But he did not actually record them. His intent was to make them think he was recording them so they would stop lying.

81.     Defendants admit the allegations in paragraph 81.  But he did not actually record them. His intent was to make them think he was recording them so they would stop lying.

82.     Defendants admit the allegations in paragraph 82.  But he did not actually record them. His intent was to make them think he was recording them so they would stop lying.

**Page 95**

**Suhy's opinions regarding plaintiffs' fraud**

83.     Defendants deny the allegations in paragraph 83.

84.     Defendants deny the allegations in paragraph 84.

85.     Defendants deny the allegations in paragraph 85.

86.     Defendants admit the allegations in paragraph 86.

87.     Defendants deny the allegations in paragraph 87.

88.     Defendants deny the allegations in paragraph 88.

89.     Defendants deny the allegations in paragraph 89.

90.     Defendants deny the allegations in paragraph 90.

91.     Defendants admit the allegations in paragraph 91.

92.     Defendants deny the allegations in paragraph 92.

93.     Defendants deny the allegations in paragraph 93.

94.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 94 and on that basis deny the allegations. Neo4j USA sued on the Partner Agreement and cited to terms in that agreement in its pleadings waiving any alleged confidentiality. None of the information appears confidential and calling it confidential does not make it so.

95.     Defendants deny the allegations in paragraph 95. Having been sued on the agreement, the agreement was attached so all terms were considered in the public forum as plaintiffs have elected.

96.     Defendants deny the allegations in paragraph 96.

97.     Defendants deny the allegations in paragraph 97.

98.     Defendants deny the allegations in paragraph 98.

99.　　　Defendants incorporate its responses to paragraphs 1-97.

100.　　　Defendants deny the allegations in paragraph 100. Neo4J USA
did not exist in 2007. It was formed in 2011. The software has been
licensed on an open source basis by Neo4J Sweden and called Neo4J by
Neo4J Sweden. The ownership of the Neo4J software is claimed by
Neo4J Sweden. Likewise, the software development was provided by
over 100 joint authors called contributors, Github shows that there are
1,515 forks to the software with 22 branches and there is no evidence
the joint authors have assigned the rights to the Neo4J open source
software copyright to either plaintiff.

101.　　　Defendants deny the allegations in paragraph 101.

102.　　　Defendants deny the allegations in paragraph 102. The software
has been licensed on an open source basis by Neo4J Sweden and called
Neo4J by Neo4J Sweden.

103.　　　Defendants deny the allegations in paragraph 103.

104.　　　Defendants deny the allegations in paragraph 104.

105.　　　Defendants deny the allegations in paragraph 105.

106.　　　Defendants deny the allegations in paragraph 106.

107.　　　Defendants deny the allegations in paragraph 107.

108.　　　Defendants deny the allegations in paragraph 108.

109.　　　Defendants deny the allegations in paragraph 109.

110.　　　Defendants deny the allegations in paragraph 110.

111.　　　Defendants deny the allegations in paragraph 111.

112.　　　Defendants incorporate its responses to paragraphs 1-110.

113.　　　Defendants deny the allegations in paragraph 113.

114.     Defendants deny the allegations in paragraph 114.

115.     Defendants deny the allegations in paragraph 115.

116.     Defendants deny the allegations in paragraph 116.

117.     Defendants deny the allegations in paragraph 117.

118.     Defendants deny the allegations in paragraph 118.

119.     Defendants deny the allegations in paragraph 119.

120.     Defendants incorporate its responses to paragraphs 1-118.

121.     Defendants deny the allegations in paragraph 121.

122.     Defendants deny the allegations in paragraph 122.

123.     Defendants deny the allegations in paragraph 123.

124.     Defendants deny the allegations in paragraph 124.

125.     Defendants deny the allegations in paragraph 125.

126.     Defendants deny the allegations in paragraph 126.

127.     Defendants incorporate its responses to paragraphs 1-125.

128.     Defendants deny the allegations in paragraph 128.

129.     Defendants deny the allegations in paragraph 129.

130.     Defendants deny the allegations in paragraph 130.

131.     Defendants deny the allegations in paragraph 131.

132.     Defendants deny the allegations in paragraph 132.

133.     Defendants deny the allegations in paragraph 133.

134.     Defendants incorporate its responses to paragraphs 1-132.

135.     Defendants admit PureThink signed the Partner Agreement but
Defendants otherwise deny the allegations in paragraph 83, because
plaintiff has failed to perform, clauses 4.3.1, and 4.3.2 are not

enforceable as written or applied and the limitations in the Partner Agreement violate the open source Neo4J enterprise license.

136.　　Defendants admit the allegations in paragraph 136. However, the open source software is not a Neo4j USA product.

137.　　Defendants admit the terms of the 7.3 of the Partner Agreement claims to prevent PureThink from dealing in Products which is defined as Neo4J commercial software provided by Neo Technology and licensed to the End User but otherwise deny the allegations in paragraph 137.

138.　　Defendants deny the allegations in paragraph 138.

139.　　Defendants deny the allegations in paragraph 139.

140.　　Defendants deny the allegations in paragraph 140.

141.　　Defendants deny the allegations in paragraph 141.

142.　　Defendants deny the allegations in paragraph 142.

143.　　Defendants deny the allegations in paragraph 143.

144.　　Defendants deny the allegations in paragraph 144.

145.　　Defendants deny the allegations in paragraph 145.

146.　　Defendants deny the allegations in paragraph 146.

147.　　Defendants deny the allegations in paragraph 147.

148.　　Defendants incorporate its responses to paragraphs 1-146.

149.　　Defendants deny the allegations in paragraph 149.

150.　　Defendants deny the allegations in paragraph 150.

151.　　Defendants deny the allegations in paragraph 151.

152.　　Defendants admit the first and second sentence in paragraph 152 and deny the remaining allegations in paragraph 152.

**Page 99**

153.     Defendants deny the allegations in paragraph 153.

154.     Defendants deny the allegations in paragraph 154.

155.     Defendants admit Neo4J USA seeks statutory damages but deny they are entitled to any damages as alleged in paragraph 155.

156.     Defendants deny the allegations in paragraph 156.

157.     Defendants incorporate its responses to paragraphs 1-155.

158.     Defendants deny the allegations in paragraph 158.

159.     Defendants deny the allegations in paragraph 159.

160.     Defendants deny the allegations in paragraph 160.

161.     Defendants deny the allegations in paragraph 161.

162.     Defendants deny the allegations in paragraph 161.

163.     Defendants deny the allegations in paragraph 163.

164.     Defendants deny the allegations in paragraph 164.

165.     Defendants deny the allegations in paragraph 165.

166.     Defendants incorporate its responses to paragraphs 1-164.

167.     Defendants deny the allegations in paragraph 165. The joint authors have copyright and moral rights in the Neo4j software.

168.     Defendants deny the allegations in paragraph 168.

169.     Defendants deny the allegations in paragraph 169.

170.     Defendants deny the allegations in paragraph 170. The terms were removed as permitted by the AGPL and to avoid a copyright infringement of that license.

171.     Defendants deny the allegations in paragraph 171.

172.     Defendants deny the allegations in paragraph 172.

173.     Defendants deny the allegations in paragraph 173.

174.    Except as otherwise admitted, Defendants deny the allegations in the TAC.

## Affirmative Defenses

1.    **Void Restriction**

Section 4.3.2 of the Partner Agreement, provides:

> During the term of this Agreement and up until thirty six (36) months after the termination or expiration of this Agreement, Partner may not develop, market, distribute or offer any services related to any Neo Technology Community Edition Products, derivative works of such products, or any Partner software code made to work with Neo Technology Community Edition Products(including, without limitation, hosting services, training, technical support, configuration and customization services, etc.)

Neo4J USA seeks to prevent Defendants from licensing and supporting open source software during and for 36 months after termination of the Partner Agreement. The Partner Agreement is. by its terms, governed by California law. The restriction under Section 4.3.2 cannot be enforced against Defendants as the restriction is void under California Business and Professions Code §16600: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

2.  **License To Use Neo4J Open Source Software**

Section 4.3.1 of the Partner Agreement provides:

**4.3.1** During the term of this Agreement, Partner may not use or run on any of Partner's hardware, or have deployed for internal use, any Neo Technology Community Edition Products for commercial or production use. In no event shall Partner reverse engineer, distribute or otherwise use the Products for its own internal use. There are no implied rights. Partner will not fork or bifurcate the source code for any Neo Technology Community Edition Products into a separately maintained source code repository so that development done on the original code requires manual work to be transferred to the forked software or so that the forked software starts to have features not present in the original software.

The restrictions in Paragragraphs 4.3.1 and 4.3.2 violate the GNU

AFFERO GENERAL PUBLIC LICENSED VERSION 3 for Neo4J

enterprise software:

Section 2 (Basic Permissions) of the AGPL license provides, in part:

"All rights granted under this License are granted for the term of copyright on the Program, and are irrevocable provided the stated conditions are met. This License explicitly affirms your unlimited permission to run the unmodified Program. …

You may make, run and propagate covered works that you do not convey, without conditions so long as your license otherwise remains in force. You may convey covered works to others for the sole purpose of having them make modifications exclusively for you, or provide you with facilities for running those works, provided that you comply with the terms of this License in conveying all material for which you do not control copyright."

Section 4 of the AGPL license provides, in part:

"You may charge any price or no price for each copy that you convey, and you may offer support or warranty protection for a fee."

Section 10 (Automatic licensing of Downstream Recipients)

of the AGPL provides, in part:

"You may not impose any further restrictions on the exercise of the rights granted or affirmed under this License."

Defendants are licensed to use the open source software version of

Neo4J by Neo4J Sweden AB without restriction under the AGPL

license agreement. Neo4J USA may not impose restrictions on use of Neo4J and cannot prevent or bar Defendants from using the open source Neo4J. By imposing restrictions in violation of the License, plaintiff has breached the open source license and has no rights to use or license Neo4J.

3. **Right to fork and use Neo4J open source under GitHub Terms of Service**

By using a public repository at GitHub, the open source versions of Neo4J are subject to the GitHub Terms of Service which allow any user to use and fork the software and other content on the NEO4J SWEDEN public GitHub repository:

D. 5. If you set your pages and repositories to be viewed publicly, you grant each User of GitHub a nonexclusive, worldwide license to use, display, and perform Your Content through the GitHub Service and to reproduce Your Content solely on GitHub as permitted through GitHub's functionality (for example, through forking). You may grant further rights if you adopt a license. If you are uploading Content you did not create or own, you are responsible for ensuring that the Content you upload is licensed under terms that grant these permissions to other GitHub Users.

https://help.github.com/en/articles/github-terms-of-service

4. **Unclean Hands**

Neo4J USA should not be permitted to enforce the Partner Agreement and trademarksbecause of plaintiffs unclean hands in the use of the Partner Agreement and unlawful licensing practices. Neo4J USA told PureThink they could modify the scope of a license agreement to meet the needs of the government users such as the IRS. Neo4J USA's

**Page 103**

license model is priced for core processor charges. However, there is no per core charge on the open source version. Neo4J USA at first agreed PureThink could drop the core use pricing for the IRS, then later plaintiff refused to allow the price change. Neo4J USA also forbade its partners, such as PureThink, to discuss the available open source versions. When the IRS, faced with core pricing limitations, asked PureThink about the differences between the commercial software and the open source version of Neo4J, plaintiff told PureThink to lie stating the open source version could only be used on an open project to try to induce the IRS to purchase a commercial version of Neo4J. When Neo4J USA  threatened to terminate PureThink, they agreed PureThink could remedy the breach if the IRS signed up for a commercial license through plaintiff. When the IRS wanted to use the Neo4J open source software with support from PureThink, plaintiff interfered falsely stating PureThink could not use or support Neo4J open source software. Neo4J USA is attempting to improperly use a dual licensing practice having a commercial version controlled by plaintiff and an open source software licensed under a General Public License. Because the open source software is under a GPL or AGPL license, and has over 183 contributors, plaintiff may not be able to actually convert the GPL or AGPL license to proprietary software. Under a GPL or AGPL type license, contributors' efforts to modify the software cannot be taken away and turned into privately controlled software. NEO4J SEDWEN added an invalid Commons Clause to the AGPL to improperly restrict use and support of the open source

**Page 104**

software. Defendants are informed and believe that plaintiff only provides an object code version of the Neo4J software under a commercial license while the GPL and AGPL type license requires access to the source code as well.  Defendants are informed and believe that because plaintiff cannot lawfully operate a dual license model since the open source is based on GPL or AGPL, plaintiff resorts to sharp and false advertising practices with customers (lying about the difference between the commercial versions and the open source version) attempting to restrict partners, such as PureThink, from supporting the open source Neo4J version with unlawful restrictions and interfering in attempts to use open source Neo4J software during the partner term and for three years after termination. The rights of open source users to use the software without making it open, as Neo4J  USA claims, is shown by the FAQs at the GNU site:

If I only make copies of a GPL-covered program and run them, without distributing or conveying them to others, what does the license require of me?(#NoDistributionRequirements)

Nothing. The GPL does not place any conditions on this activity.

The same rules apply to modified versions of the open source code:

Does the GPL require that source code of modified versions be posted to the public? (#GPLRequireSourcePostedPublic)

The GPL does not require you to release your modified version, or any part of it. **You are free to make modifications and use them privately, without ever releasing them. This applies to organizations (including companies), too; an organization can make a modified version and use it internally without ever releasing it outside the organization.**

But *if* you release the modified version to the public in some way, the GPL requires you to make the modified source code available to the program's users, under the GPL.

Thus, the GPL gives permission to release the modified program in certain ways, and not in other ways; but the decision of whether to release it is up to you.

[Emphasis added]

As plaintiffs have sought to threaten open source users improperly, prevent third parties from providing services to open source code users, they come to this court with unclean hands, they should be barred from any recovery.

5. **The Addition Of The Commons Clause Is Unlawful Under The AGPL**

The open source license used by Neo4J Sweden AB, the AGPL, is a license copyrighted by the Free Software Foundation. The beginning of the AGPL license provides a copyright notice:

Copyright (C) 2007 Free Software Foundation, Inc. <http://fsf.org/> Everyone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed. [Emphasis added]

By its terms, the license may not be changed.

Neo4J Sweden AB's attempt to change the AGPL license violates its terms. The licensee is protected from this violation under the terms of the license: "If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, **you may remove that term**." [Emphasis added].  §7 AGPL.

Defendants had the express right to remove any improper terms and such removal prevented further infringement of the APGL license's terms.

**Page 106**

6. **NEO4J USA Violated the AGPL**

Neo4J USA has attempted to take the open source software under the AGPL and commercialize it in violation of the AGPL while preventing former partner from supporting the open source software. But the APGL provides "You may not impose any further restrictions on the exercise of the rights granted or affirmed under this License. For example, you may not impose a license fee, royalty, or other charge for exercise of rights granted under this License." §10 of the AGPL.

7. **Cancellation of Trademark Procured by Fraud**

The Registered Trademark for NEO4J, Reg. No. 4,784,280, was procured by fraud as the representation was that Neo Technology (a Delaware corporation) (changed to Neo4J, Inc.) was the owner of the trademark and it first used the trademark in 6-4-2006 and in commerce in 5-28-2007. These statements are false as Neo4J, USA is not the owner of the trademark. Neo4J USA is only a non-exclusive licensee of the mark and the ownership of the mark is owned by Neo4J Sweden. The first use representation is also false as Neo4J USA did not exist on the dates its stated to support first use. Neo4J USA was formed 7-7-2011 in Delaware under File Number 5007564. Neo4J USA's representations of ownership and first use in the Trademark application are false. Because the ownership and dates of use in the trademark application were false, the registration was procured by

fraud, the registration should be cancelled pursuant to 15 U.S.C. §1119.

8. **Fair Use of Trademarks**

Defendants use of the trademarks was and is a nominative fair use to 1) identify a software product they support called Neo4J that is freely available as open source software, 2) comparative advertising (See 16 C.F.R. §14.15(b)) and 3) to advise others PureThink was no longer a partner with Neo4J USA.

9. **Naked License Abandonment of Trademark**

Neo4J USA claims they own the Neo4J trademark but they are only a non-exclusive licensee from Neo4J Sweden and that license does not include any quality control requirements for Neo4J USA's use of the licensed trademark related to the products Neo4J USA licenses. Neo4J USA's trademark license does not apply to software licensed by the trademark owner, Neo4J Sweden. Neo4J Sweden licenses the Neo4j software as open source software and has no quality controls, contractual or otherwise under the GPL or AGPL licenses while licensees have the right to modify, use and distribute modified versions of Neo4j software without any quality controls contractually or otherwise from Neo4J Sweden over the quality of such modifications. Licensees of modified versions of open source Neo4J software have used the Neo4J trademark without any effort to bar, stop or limit such use. Licensees of modified versions have a nominative fair use right to use

**Page 108**

the Neo4J trademark to identify the software distributed to third
parties.  As a result, Neo4J Sweden has abandoned the Neo4J
trademark under the doctrine of Naked License and Neo4J USA, non-
exclusive license has no trademark supporting the license and such
license does not extent to the open source software in any event. Neo4J
USA's trademark policies do not apply to licensees of Neo4J Sweden's
software, because such software is beyond the scope of Neo4J's non-
exclusive license to the mark and is licensed by Neo4J Sweden which is
the owner of the Mark.

10.      **Waiver**

Neo4J USA waived PureThink's conduct in modifying the open source
version of Neo4J to create the government edition as they agreed
PureThink could use and modify the software as required to satisfy the
United States Government buyers.

11.      **Setoff**

Neo4J USAs' alleged claims to damages are barred, in whole or in
part, by the right of one or more Defendants to a setoff against any
such damages.

12.      **Failure to State a Claim**

Each claim fails to state a claim for with relief may be granted.

13.      **Estoppel**

Neo4j Sweden licensed neo4j software under the GPL and AGPL
license which is a licensing framework to allow free use, modification
and support for the software licensed. Users, joint authors and third

parties use, modify and support the software with the expectation, as provided under the terms of the GPL and AGPL, that they are free to do so on a continuous basis. John Suhy, relying on the terms of the licenses and the proper use of the GPL and AGPL licenses by Neo4j Sweden, learned the software and developed skills to support the software at a highly skilled level so he could provide professional services to users of the Neo4j open source software. Mr. Suhy did not know Neo4j Sweden was concealing that after using the open source model, it wanted to stop the open source version to commercially profit from the user and third parties efforts, Neo4j Sweden then violated the GPL and AGPL by attempting to take the software and commercialize it, preventing users for obtaining the source code for modifications as required under the GPL and AGPL, adding improper terms (Commons Clause) to prevent users from properly using the software as allowed under the terms of the GPL, the AGPL, and the Github licenses and trying to prevent third parties from supporting the software. They then forced third party service providers to sign up with Neo4j USA agreement which Neo4j USA could terminate at anytime but barred the service provider from supporting Neo4j software for years. Effectively trying to stop all third pary support for software. Then they attack third party users and supporters claiming any use of the trademark is a violation even though there is clear law allowing people to do comparative advertising and support the product using the name of the product. By virtue of Neo4j's conduct in setting up the open source model with the later intent of changing it to commercialize the

software and essentially try to elminate the open source community in violation of the GitHub, GPL and AGPL licenses is a fraud on the public. Neo4J should be estopped from preventing users and third parties for using and supporting Neo4j software and the claims against defendants should be barred.

14. **Truth And Information Provided To Those Who Had Reason To Know**

Mr. Suhy's statements were truthful and were his opinions based on the statements made by plaintiffs and the implications if they were properly remedied by law enforcement and investors. The statement were made to people who had reason to know the information and Suhy had no information his statements were false when made. Neo4J USA has told the US government they could not use the open source version when they know that position is false. Lying to the US government on such a material issue is a fraud and a crime. Neo4j USA told Suhy to change a transaction from a support deal to a license deal. It was Suhy's understanding this was to improperly over state revenues in financials for potential investors. A license fee is generally booked as earned when made while support fees are earned over time. This would be a fraud, claiming support fees as license fees, on investors leading to potential criminal actions and shareholder suits if the authorities or investors found out and did something about it.

## Prayer for Relief

Wherefore Defendants request:

1. The complaint be dismissed with prejudice;

2. That the trademark based claims be found exceptional as there is no standing and the alleged infringments are obviously nominative fair use and comparative advertising, allowing Defendants to recover attorneys fees under 15 U.S.C. §1117 (a);

3. That Defendants recover costs and attorneys fees as permitted by law;

4. And for such other relief as the Court deems just.

Dated: October 19, 2020

_____/s/ Adron G. Beene_____
Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney At Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Attorney for Defendants
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

## DEMAND FOR JURY TRIAL

Defendants PureThink LLC, iGOV Inc. and John Mark Suhy hereby demand a trial by jury.

Dated: October 19, 2020

_____/s/ Adron G. Beene_____
Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney At Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
Fax: (866) 329-0453

adron@adronlaw.com

Attorney for Defendants
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

**12-11-2020 - PLAINTIFFS' CONS NOTICE OF MOT AND MOT FOR SUMRY JUDG.pdf**

Filed 12/11/2020

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

(Pacer Doc #98)

1   John V. Picone III, Bar No. 187226
    jpicone@hopkinscarley.com
2   Jeffrey M. Ratinoff, Bar No. 197241
    jratinoff@hopkinscarley.com
3   HOPKINS & CARLEY
    A Law Corporation
4   The Letitia Building
    70 South First Street
5   San Jose, CA 95113-2406

6   *mailing address:*
    P.O. Box 1469
7   San Jose, CA 95109-1469
    Telephone:    (408) 286-9800
8   Facsimile:    (408) 998-4790

9   Attorneys for Plaintiffs and Counter-Defendants
    NEO4J, INC. and NEO4J SWEDEN AB
10
                    UNITED STATES DISTRICT COURT
11
                    NORTHERN DISTRICT OF CALIFORNIA
12

13  NEO4J, INC., a Delaware corporation, and       CASE NO. 5:18-cv-07182-EJD
    NEO4J SWEDEN AB, a Swedish
14  corporation,                                    **PLAINTIFFS' CONSOLIDATED NOTICE
                                                    OF MOTION AND MOTION FOR
                    Plaintiffs,                     SUMMARY JUDGMENT;
15                                                  MEMORANDUM OF POINTS AND
            v.                                      AUTHORITIES IN SUPPORT THEREOF**
16
    PURETHINK LLC, a Delaware limited               Date:      March 25, 2021
17  liability company, IGOV INC., a Virginia        Time:      9:00 a.m.
    corporation, and JOHN MARK SUHY, an             Dept.:     Courtroom 4, 5th Floor
18  individual,                                     Judge:     Hon. Edward J. Davila

19                  Defendants.

20  AND RELATED COUNTERCLAIM.

21  NEO4J, INC., a Delaware corporation, and        CASE NO. 5:19-CV-06226-EJD
    NEO4J SWEDEN AB, a Swedish
22  corporation,

23                  Plaintiffs,

24          v.

25  GRAPH FOUNDATION, INC., an Ohio                 **REDACTED VERSION OF DOCUMENT
    corporation, GRAPHGRID, INC., an Ohio           PROPOSED TO BE FILED UNDER SEAL**
26  corporation, and ATOMRAIN INC., a
    Nevada corporation,
27
                    Defendants.
28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 115**

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 25, 2021, at 9:00 a.m., before the Honorable Edward J. Davila, in Courtroom 4, 5th Floor, 280 South First Street, San Jose, CA 95113, Plaintiffs and Counter-Defendants Neo4j, Inc., and Neo4j Sweden AB ("Plaintiffs") will and hereby do move the Court for an order granting partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on Neo4j USA's Lanham Act and related California Unfair Competition Law ("UCL") claims against Defendants PureThink LLC, iGov Inc. and John Mark Suhy in CASE NO. 5:18-cv-07182-EJD (the "PT Action") and Defendant Graph Foundation Inc. in CASE NO. 5:19-CV-06226-EJD (the "GFI Action") for: (1) trademark infringement, 15 U.S.C. § 1114; (2) false designation of origin and false advertising, 15 U.S.C. § 1125(a); (3) federal unfair competition, 15 U.S.C. § 1125(a); and (4) state unfair competition in violation of Cal. Bus. Prof. Code §§ 17200 et seq.  *See* PT Dkt. No. 68 at ¶ 3 and No. 90; GFI Dkt. No. 45 at ¶ 3 and No. 65.  Plaintiffs further move for summary judgment on Defendants' nominative fair use defenses to Neo4j USA's Lanham Act and UCL claims.  *See* PT Dkt. No. 91 at 21:4-9 and GFI Dkt. No. 91 at 12:19-23.

The Court previously dismissed and struck the PT Defendants' trademark cancellation and abandonment counterclaims and defenses, respectively, with prejudice.  *See* PT Dkt. Nos. 70, 85.  The Court also struck GFI's cancellation defense with prejudice, and GFI agreed to be bound by the Court's ruling dismissing/striking Defendants' trademark abandonment counterclaim and defense when it stipulated to the filing of Plaintiff's First Amended Complaint in the GFI Action.  *See* GFI Dkt. Nos. 63, 64 at 3:3-27.  The PT Defendants then impermissibly re-pled their cancellation and abandonment defenses in their Answer to Neo4j's Third Amended Complaint. PT Dkt. No. 91.  Plaintiffs filed a motion to strike those affirmative defenses on the grounds that they violated the Court's orders and the local rules, as well as still fail as a matter of law, which is fully briefed and currently set to be heard on February 11, 2021.  *See* Dkt. No. 93.  As such, Plaintiffs will not address those defenses in this motion in the interest of judicial economy and to avoid duplication.

This motion ("Motion") is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the Separate Statement of Undisputed Facts attached hereto as

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9

- 1 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 116**

**Exhibit A**, the Declarations of Jeffrey M. Ratinoff, Philip Rathle and John Broad, all pleadings, records and papers on file in the two related actions, and upon such further oral and documentary evidence as may be presented at the hearing on this Motion.

## REQUESTED RELIEF

Plaintiffs respectfully request that the Court grant partial summary judgment in favor of Neo4j USA on its Lanham Act and UCL claims asserted against Defendants, and in favor of Plaintiffs on Defendants' nominative fair use and "right to fork" affirmative defenses. The undisputed material facts establish that Defendants have infringed Neo4j USA's federally registered "Neo4j" trademark (Neo4j® Mark) and have not engaged in fair use in promoting their ONgDB software. The undisputed material facts further establish that Defendants have engaged in false advertising in promoting their ONgDB software as free and open source drop-in replacement for Plaintiffs' commercially licensed Neo4j® Enterprise Edition graph database software.

Plaintiffs are seeking partial summary judgment on these claims as Neo4j USA intends to separately seek to prove-up its actual damages suffered once it obtains discovery from GraphGrid and AtomRain about their support of customers using ONgDB, and also seek a finding of willful infringement, the trebling of those damages and recovery of its attorneys' fees pursuant to 15 U.S.C. § 1117. Neo4j USA further intends to seek an accounting of Defendants' profits and seek trebling of those damages and its attorneys' fees, which normally occurs after a finding of liability for trademark infringement. *See* 15 U.S.C. § 1117(a)

Finally, Plaintiffs respectfully request that the Court enter the proposed injunction concurrently filed herewith. Neo4j USA has already suffered a reputational loss to its Neo4j® brand and associated goodwill as result of Defendants' unauthorized "relicensing" of Neoj4® EE under the AGPL and falsely calling ONgDB a free and unrestricted drop-in replacement for official Neo4j® EE. It is also clear that Defendants will continue to do so unless enjoined by the Court.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the undisputed material facts establish that Defendants infringed the Neo4j® Mark in violation of 15 U.S.C. §§ 1114, 1125(a) and Cal. Bus. Prof. Code §§ 17200 et seq.

2. Whether the undisputed material facts establish that Defendants cannot succeed on

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                           - 2 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 117**

1    their nominative fair use defenses.

2          3.      Whether the undisputed material facts establish that Defendants engaged in false

3    designation of origin and false advertising in violation of 15 U.S.C. § 1125(a) and Cal. Bus. Prof.

4    Code §§ 17200 et seq.

5          4.      Whether the Court should enjoin Defendants from further infringement of the

6    Neo4j® Mark and engaging in further false advertising and false designation of origin in relation

7    to the Neo4j® Mark and their promotion of graph database software, including ONgDB software.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

842\3639184.9                                      - 3 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS .................................................................................. 2

      A.   The Neo4j® Brand and Mark ................................................................. 2

      B.   The Evolution of Plaintiffs' Licensing Model for the Neo4j® Platform ............... 3

      C.   PureThink Enters Into the Partner Agreement with Neo4j USA ........................... 5

      D.   Suhy and PureThink Form iGov to Evade the Partner Agreement ......................... 6

      E.   iGov and Suhy Infringe the Neo4j® Mark after iGov's Formation....................... 7

      F.   Defendants Form GFI and Improperly Remove the Commercial
           Restrictions in the Neo4j Sweden Software License in Order to Launch
           ONgDB as a "Free and Open Source" Neo4j® EE ................................................. 8

      G.   Defendants Promote ONgDB over Neo4j® EE Based on the False Premise
           that No Paid Commercial License from Plaintiffs is Necessary to Use
           ONgDB ........................................................................................................ 11

      H.   GFI Falsely Promotes ONgDB 3.5 as a "Drop In" Replacement for Neo4j®
           EE ............................................................................................................... 12

      I.   iGov Uses the Neo4j® Mark to Promote ONgDB on its Websites and
           Falsely Claims that ONgDB is a "Drop In" Replacement for Neo4j® EE........... 14

      J.   Defendants Impermissibly Rely Upon Official Neo4j® Support
           Documentation .......................................................................................... 15

      K.   Defendants Improperly Use the Neo4j® Mark to Promote ONgDB on
           Twitter ....................................................................................................... 16

      L.   Defendants' Misuse of the Neo4j® Mark and False Statements about
           ONgDB Have Diverted Customers to Defendants and Caused Actual
           Confusion .................................................................................................. 17

III.  THE CLAIMS AND DEFENSES SUBJECT TO PLAINTIFFS' MOTION................... 19

IV.   APPLICABLE MOTION FOR SUMMARY JUDGMENT STANDARDS ................... 19

V.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF
      NEO4J USA ON ITS TRADEMARK INFRINGEMENT CLAIMS AND
      AGAINST DEFENDANTS ON THEIR NOMINATIVE FAIR USE DEFENSE........... 20

      A.   Legal Standards for Trademark Infringement and Nominative Fair Use ............. 20

      B.   The PT Defendants' Non-ONGDB Related Infringement of the Neo4j®
           Mark ........................................................................................................... 21

      C.   Defendants Did Not Fairly Use the Neo4j® Mark in Promoting ONgDB ........... 25

VI.   NEO4J USA IS ENTITLED TO SUMMARY JUDGMENT ON ITS FALSE
      ADVERTISING AND FALSE DESIGNATION OF ORIGIN CLAIMS........................ 28

      A.   Applicable Legal Standards for False Advertising Claims Under the
           Lanham Act and California's UCL ..................................................................... 28

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

- i -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

Page 119

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3       B.      Defendants' Engaged in False Advertising in the Promotion of ONgDB ............ 29

4       C.      Defendants Engaged in the False Designation of Origin in Promoting
                ONgDB ......................................................................................................... 33

5   VII.     PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF ......................................... 34

6   VIII.    CONCLUSION ........................................................................................................ 35

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

- ii -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 120**

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*2Die4Kourt v. Hillair Capital Mgmt., LLC,*
5      2016 WL 4487895 (C.D. Cal. Aug. 23, 2016),
     *aff'd,* 692 F. App'x 366 (9th Cir. 2017) ............................................................... 21
6

*Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.,*
7      944 F.2d 1446 (9th Cir. 1991) ................................................................................ 20

8

*Addisu v. Fred Meyer, Inc.,*
     198 F.3d 1130 (9th Cir. 2000) ................................................................................ 19
9

10

*Adobe Sys. Inc. v. A & S Elecs., Inc.,*
     153 F.Supp.3d 1136 (N.D. Cal. 2015) ................................................................... 23

11

*AECOM Energy & Constr., Inc. v. Ripley,*
12      348 F.Supp.3d 1038 (C.D. Cal. 2018) ............................................................. 33, 34

13

*Align Tech., Inc. v. Strauss Diamond Instruments, Inc.,*
     2019 WL 1586776 (N.D. Cal. Apr. 12, 2019) ......................................... 25, 27, 28
14

15

*AMF Inc. v. Sleekcraft Boats,*
     599 F.2d 341 (9th Cir.1979) ........................................................................ 21, 28, 33

16

*Anderson v. Liberty Lobby, Inc.,*
17      477 U.S. 242 (1986) .......................................................................................... 19, 20

18

*Apple Inc. v. Psystar Corp.,*
     658 F.3d 1150 (9th Cir. 2011) ................................................................................ 31
19

20

*Automotriz Del Golfo De California S.A. de C.V. v. Resnick,*
     47 Cal.2d 792 (1957) .............................................................................................. 23

21

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.,*
22      174 F.3d 1036 (9th Cir. 1999) ..................................................................... 20, 24, 25

23

*Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.,*
     88 F.Supp.2d 914 (C.D. Ill. 2000) ......................................................................... 22
24

25

*Celotex Corp. v. Catrett,*
     477 U.S. 317 (1986) ................................................................................................ 19

26

*Century 21 Real Estate Corp. v. Sandlin,*
27      846 F.2d 1175 (9th Cir. 1988) ................................................................................ 20

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

- iii -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 121**

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

4
*Century 21 Real Estate LLC v. Ed/Var Inc.*,
  2014 WL 3378278 (N.D. Cal. July 10, 2014) ........................................................ 34

5
*Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*,
  2020 WL 5199434 (N.D. Cal. Aug. 17, 2020) ........................................... 33, 34, 35

6

7
*Cleary v. News Corp.*,
  30 F.3d 1255 (9th Cir. 1994) ................................................................................. 29

8

9
*Coastal Abstract Serv. Inc. v. First Am. Title Ins. Co.*,
  173 F.3d 725 (9th Cir. 1999) ................................................................................. 29

10
*Creative Labs, Inc. v. Cyrix Corp.*,
  1997 WL 337553 (N.D. Cal. 1997) ........................................................................ 31

11

12
*Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.*,
  2014 WL 4679001 (C.D. Cal. Sept. 18, 2014) ....................................................... 35

13

14
*Diller v. Barry Driller, Inc.*,
  2012 WL 4044732 (C.D. Cal. Sept. 10, 2012) ....................................................... 35

15
*Downing v. Abercrombie & Fitch*,
  265 F.3d 994 (9th Cir. 2001) ................................................................................. 27

16

17
*Dreamwerks Prod. Grp., Inc. v. SKG Studio*,
  142 F.3d 1127 (9th Cir. 1998) ............................................................................... 33

18

19
*EFCO Corp. v. Symons Corp.*,
  219 F.3d 734 (8th Cir. 2000) ................................................................................. 31

20
*Experience Hendrix, L.L.C. v. Hendrixlicensing.com, Ltd.*,
  2010 WL 2104239 (W.D. Wash. May 19, 2010) ........................................ 24, 25, 26

21

22
*Hal Roach Studios, Inc. v. Feiner & Co., Inc.*,
  896 F.2d 1542 (9th Cir. 1990) ............................................................................... 20

23

24
*Healthport Corp. v. Tanita Corp. of Am.*,
  563 F.Supp.2d 1169 (D. Or. 2008), *aff'd*, 324 F.App'x 921 (Fed. Cir. 2009) ........................ 29

25
*Herb Reed Enters., LLC v. Florida Entertainment Management*,
  736 F.3d 1239 (9th Cir. 2013) ............................................................................... 34

26

27
*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ............................................................................... 32

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

- iv -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 122**

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Hollywood Athletic Club v. GHAC–CityWalk*,
    938 F.Supp. 612 (C.D.Cal.1996) ............................................................. 21

*Horphag Research Ltd. v. Garcia*,
    475 F.3d 1029 (9th Cir. 2007) ................................................... 24, 25, 26

*Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.*,
    559 F.3d 985 (9th Cir. 2009) ................................................................. 35

*Jacobsen v. Katzer*,
    535 F.3d 1373 (Fed. Cir. 2008) ............................................................. 31

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
    762 F.3d 867 (9th Cir. 2014) ................................................................. 34

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S.Ct. 1377 (2014) ........................................................................... 32

*Lujan v. National Wildlife Fed'n*,
    497 U.S. 871 (1990) ............................................................................. 19

*Luxul Tech. Inc. v. Nectarlux, LLC*,
    78 F.Supp.3d 1156 (N.D. Cal. 2015) .................................................... 28

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................. 20

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011) ............................................................... 20

*New Kids on the Block v. News Am. Publ'g, Inc.*,
    971 F.2d 302 (9th Cir. 1992) ........................................................... 21, 25

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*,
    165 F. Supp. 3d 937 (S.D. Cal. 2016) .................................................. 33

*Online Glob., Inc. v. Google LLC*,
    387 F.Supp.3d 980 (N.D. Cal. 2019) .............................................. 19, 20

*Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*,
    354 F.3d 1020 (9th Cir. 2004) ......................................................... 24, 26

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014) ......................................................... 20, 21

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

- v -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 123**

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Public Impact, LLC v. Boston Consulting Group, Inc.*,
4  169 F. Supp. 3d 278 (D. Mass 2016) .................................... 28

5  *SEC v. Rose Fund, LLC*,
   2013 WL 1345 (N.D. Cal. Apr. 2, 2013) .............................. 24

6
*Southland Sod Farms v. Stover Seed Co.*,
7  108 F.3d 1134 (9th Cir. 1997)........................ 28, 29, 31, 32

8  *Stark v. Diageo Chateau & Estate Wines Co.*,
   907 F.Supp.2d 1042 (N.D. Cal. 2012) ................................ 35
9
*State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*,
10  425 F.3d 708 (9th Cir. 2005)........................................ 21

11
*SuccessFactors, Inc. v. Softscape, Inc.*,
12  544 F.Supp.2d 975 (N.D. Cal. 2008) ................................ 29

13  *Sun Microsystems v. Microsoft Corp.*,
   999 F.Supp. 1301 (N.D.Cal.1998) ........................ 22, 31, 34
14
*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
15  610 F.3d 1171 (9th Cir. 2010)........................... 21, 24, 28

16
*TrafficSchool.com, Inc. v. Edriver, Inc.*,
17  653 F.3d 820 (9th Cir. 2011)...................................... 32

18  *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*,
   108 F.Supp.3d 816 (N.D. Cal. 2015) ................................ 23
19
*Wetzel's Pretzels, LLC v. Johnson*,
20  797 F.Supp.2d 1020 (C.D. Cal. 2011) .............................. 23

21  **Statutes**

22
15 U.S.C.
23   § 1114................................................. 1, 19, 20
     § 1115(a) ................................................... 20
24   § 1116(a) ................................................... 34
     § 1125(a) ................................................. 1, 19
25   § 1125(a)(1)................................................. 20
     § 1125(a)(1)(A) ......................................... 28, 33
26   § 1125(a)(1)(B) ......................................... 28, 33

27

28

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**TABLE OF AUTHORITIES**
**(continued)**

Page

Cal. Bus. Prof. Code
   § 17200 ............................................................................................................................. 20
   §§ 17200 et seq. ............................................................................................................... 19

**Other Authorities**

Fed. R. Civ. P.
   56(a) ................................................................................................................................. 19
   56(c) .......................................................................................................................... 19, 20

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

- vii -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 125**

**12-11-2020 – MEMO OF P'S AND A'S FOR PLAINT MOT FOR SUMRY JUDG.pdf**

Filed 12/11/2020


MEMORANDUM OF POINTS AND AUTHORITIES FOR

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT


(Pacer Doc #98)

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.     INTRODUCTION

3

Plaintiffs Neo4j Inc. ("Neo4j USA") seeks summary judgment on its claims for trademark

4
infringement, false advertising, false designation of origin and unfair competition under the Lanham

5
Act, 15 U.S.C. §§ 1114 and 1125(a), and California's Unfair Competition Law ("UCL") asserted

6
against Defendants PureThink LLC, iGov Inc. and John Mark Suhy (collectively "PT Defendants")

7
and Graph Foundation, Inc. ("GFI").   The undisputed facts establish that the PT Defendants and GFI

8
(collectively "Defendants") have unfairly abused Neo4j Sweden AB (Neo4j Sweden") and Neo4j

9
USA's prior licensing model for its Neo4j® Enterprise Edition graph database software ("Neo4j®

10
EE") and unlawfully used the registered Neo4j® Mark to falsely promote Defendants' pirated-hybrid

11
software (first called "Neo4j Enterprise" and later renamed "ONgDB") as being a free and open

12
source drop-in replacement for Plaintiffs' commercially licensed Neo4j® EE.

13

The undisputed facts establish that Defendants extensively used the NEO4J® Mark on their

14
respective websites and Twitter accounts, in domain names and email addresses, and other forms of

15
advertising and solicitations to promote ONgDB.   They also have plagiarized Plaintiffs' GitHub

16
repository landing page, impermissibly linked to Neo4j USA's website and support documentation

17
in their effort to mislead customers into believing that ONgDB is identical to Neo4j® EE in every

18
way except it is free.  No reasonable finder of fact would consider this nominative or fair use because

19
Defendants did not minimally use the Neo4j® trademark to differentiate ONgDB as a ***divergent*** fork

20
of Neo4j® EE.   Rather, they intentionally misappropriated the goodwill associated with Neo4j®

21
Mark to promote ONgDB and capitalized on consumer confusion resulting from that use.

22

Defendants have also engaged in a false advertising campaign in promoting ONgDB.  This

23
includes matching the version numbers of ONgDB to official Neo4j® EE releases of the same

24
number, while falsely claiming that ONgDB is a free and open source drop-in replacement for

25
commercially licensed Neo4j® EE.  These statements are demonstrably false because Defendants

26
admittedly copied Neo4j Sweden's source code from a pre-release version of Neo4j® EE that was

27
subject to a restricted commercial license and replaced it with the AGPL in contravention of Neo4j

28
Sweden's exclusive right as a copyright holder to license Neo4j® EE as it sees fit.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9

- 1 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 127**

1    Defendants' claims that ONgDB was a drop-in replacement for Neo4j® EE were also false

2    and misleading because that software that is not subject to the same stringent quality control and

3    assurances provided via official Neo4j® EE commercial releases.  Rather, ONgDB is compiled from

4    a patchwork of source code that is held together by "glue source code" authored by Defendants.

5    ONgDB also does not include every feature that is included in commercial releases of Neo4j® EE.

6    As a result, Defendants are misleading consumers into believing that when they download ONgDB,

7    they are receiving an exact copy of Plaintiffs' current commercial-only releases of Neo4j® EE, which

8    in actuality is an inferior product that is not a true "drop-in" replacement.

9    The undisputed evidence shows that Defendants' misappropriation of the goodwill

10   associated with the Neo4j® Mark and their false advertising of ONgDB as a free and open source

11   drop-in replacement for commercially licensed Neo4j® EE not only are likely to cause confusion,

12   but have caused actual confusion.  Plaintiffs have lost customers as a direct result, choosing ONgDB

13   over Neo4j® EE based on price alone.  Defendants profit from this costs savings because they pitch

14   their paid support services that would otherwise violate the commercial restrictions they removed

15   from the license governing Neo4j® EE that they replaced with the AGPL.  Despite this lawsuit,

16   Defendants remain undeterred in misleading consumers.  They also continue to cause grave harm to

17   the Neo4j® brand and Plaintiffs' ability to compete in the marketplace.  Thus, not only should the

18   Court grant summary judgment in Plaintiffs' favor, but also issue an injunction against Defendants.

19   **II.    STATEMENT OF FACTS**

20         **A.    The Neo4j® Brand and Mark**

21   Neo4j USA is the company behind the number one graph platform for connected data,

22   marketed and sold under the Neo4j® trademark.  Neo4j Sweden is the owner of all copyrights related

23   to the Neo4j® graph database platform, including the source code and has licensed said copyrights

24   to Neo4j USA.  Declaration of Philip Rathle ("Rathle Decl."), ¶¶ 3-4.  After its incorporation, Neo4j

25   USA became the parent company to Neo4j Sweden, and obtained the rights to the Neo4j® Mark in

26   the United States from Neo4j Sweden.  *See* Declaration of Jeffrey M. Ratinoff ("Ratinoff Decl."),

27   Exh. 1; Declaration of John Broad ("Broad Decl."), ¶¶ 2-3; *see also* PT Dkt. No. 72 at 24:19-20.

28   Plaintiffs' business was formed after its founders encountered performance problems with

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                    - 2 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 128**

1    relational database management systems (RDMS).  Plaintiffs then developed a graph database

2    management system developed under the Neo4j® brand and quickly became the industry leader in

3    graph database solutions and software.  *See* Broad Decl., ¶¶ 2, 4-18, Exhs. 1-11. The Neo4j® graph

4    database platform ("Neo4j® Platform") helps organizations make sense of their data by revealing

5    how people, processes and digital systems are interrelated. *Id.*, ¶ 2.  This connections-first approach

6    powers intelligent applications tackling challenges such as artificial intelligence, fraud detection,

7    real-time recommendations and master data.  *Id.*

8         Since the creation of the Neo4j® graph database platform, Neo4j USA has made considerable

9    efforts and investment in the Neo4j® brand. Broad Decl., ¶ 17.  As a results, the Neo4j® brand and

10   Neo4j® Platform have become widely known and closely identified with Neo4j USA and represents

11   its substantial and valuable goodwill. *Id.*, ¶¶ 4-16, 18. In particular, it boast the world's largest

12   dedicated investment in native graph technology.  *Id.*  Neo4j USA has more than 300 commercial

13   customers, including global enterprises like Comcast, Cisco, and UBS use the Neo4j® Platform to

14   create a competitive advantage from connections in their data.  *Id.*  Neo4j USA also does substantial

15   business with state and federal government agencies.  *Id.*

16        In conjunction with their business, Neo4j USA filed for and obtained several federally

17   registered trademarks.  Specifically, Neo4j USA is the owner of U.S. Trademark Registration No.

18   4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009,

19   035, 041, 042 and 045 (the "Neo4j® Mark").  Ratinoff Decl., Exh. 1.  The first use of the Neo4j®

20   Mark was claimed in June 2006 and first use in commerce in May 2007 based on the use of that mark

21   by Neo4j USA's predecessor-in-interest and related company, Neo4j Sweden, whose use properly

22   inured to the benefit of Neo4j USA.  *See id.*

23        **B.    The Evolution of Plaintiffs' Licensing Model for the Neo4j® Platform**

24        Prior to November 2018, Plaintiffs offered a free open source version of the Neo4j®

25   Platform, Neo4j® Community Edition ("Neo4j® CE"), under the GNU General Public License

26   version 3 ("GPL") license.  Rathle Decl., ¶¶ 4-5.  Neo4j® CE is limited in its feature set and offers

27   no technical or administrative support.  *Id*., ¶¶ 5-6  Users requiring additional features for more

28   advanced commercial operation, together with support, licensed use of the Neo4j® Platform through

Hopkins & Carley
Attorneys At Law
San Jose ●Palo Alto

842\3639184.9                                          - 3 -

1  Neo4j® Enterprise Edition ("Neo4j® EE") under commercial terms. *Id*., ¶¶ 7-8. Neo4j® EE is a

2  full superset of Community Edition, containing significant additional functionality intended for

3  commercial use. *Id.*

4      Plaintiffs originally offered Neo4j® EE under both a paid-for commercial license and the

5  free GNU Affero General Public License, version 3 ("AGPL"), which was originally made available

6  by the Free Software Foundation ("FSF"). Rathle Decl., ¶¶ 8-10, Exh. 1. A commercial license to

7  Neo4j® EE entitled the purchaser to use it in a proprietary, commercial setting with industry standard

8  terms, receive support or professional services from Neo4j USA, the right to receive software

9  updates, including feature updates, bug fixes and technical assistance. *Id*. It also supported the

10  continued development and improvement of Neo4j® CE and Neo4j® EE. *Id.*

11      In May 2018, Plaintiffs released Neo4j® EE v3.4, which they continued to offer under a

12  proprietary commercial license. Rathle Decl., ¶ 11, Exh. 2. However, they replaced the AGPLv3

13  with a stricter license, which included the terms from the AGPLv3 and additional restrictions

14  provided by the Commons Clause ("Neo4j Sweden Software License"). *Id.,* ¶ 11, Exh. 3. This new

15  license, while still allowing code to be publicly viewable and used within a certain licensed scope,

16  prohibits commercial resale and certain commercial support services. *Id.,* ¶ 12. Plaintiffs added the

17  Commons Clause to prevent third parties from monetizing the Neo4j® Platform and "free riding,"

18  while not contributing back to the open source community. *Id.*

19      In November 2018, Plaintiffs officially released Neo4j® EE v.3.5 solely under a commercial

20  license, while they continued to offer Neo4j® CE under an open source license, which is also referred

21  to as Neo4j® Open Core. Rathle Decl., ¶ 13 Exh. 4. This meant that Plaintiffs were no longer

22  publishing source code for Neo4j® EE on GitHub under any open source license. *Id.* This was done

23  to simplify its licensing model, as well as prevent bad actors from misrepresenting the Neo4j Sweden

24  Software License and profiting by providing commercial support services in closed, proprietary

25  projects. *Id.* Prior to its official release, Plaintiffs published several beta versions of Neo4j® EE v3.5

26  via their GitHub repository subject to the Neo4j Sweden Software License. *Id.,* ¶ 14. They did so in

27  order to obtain user input and to identify potential bugs that could be fixed prior to its official release.

28  *Id.* Neo4j® v3.5.0-RC1 was the last pre-release version available to Defendants via GitHub. *Id.*

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                    - 4 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

Page 130

1   Thereafter, only Neo4j® CE was publicly available under the GPL via Github.  *Id.*

2       Both Neo4j® EE and Neo4j® CE have been subject to trademark policies and guidelines

3   published on Plaintiffs' website.  Rathle Decl., ¶ 15. The first iteration of these policies and guidelines

4   relevant to this motion was updated by Plaintiffs on October 13, 2015, and the second iteration

5   replaced that version on April 3, 2019 and continues to remain in effect.  *Id.*, ¶¶ 16-18, Exhs. 5-7.

6   These policies along with the terms of the GPL, AGPL and Neo4j Sweden Software License made

7   clear, *inter alia*, that to the extent any authorized modifications are made to Neo4j® software, such

8   modified software should indicate so and no longer bear the Neo4j® Mark. *Id.,* ¶ 15.  This was to

9   ensure that consumers knew when they were receiving genuine Neo4j® software that was quality

10  assured by Plaintiffs rather than third-party modified open source versions thereof.  *Id.*

11      **C.**      **PureThink Enters Into the Partner Agreement with Neo4j USA**

12      PureThink is a software and information technology consulting company founded by Suhy,

13  which purports to specialize in supporting agencies within the U.S. Government.  *See* Ratinoff Decl.,

14  Exh. 2.  On September 30, 2014, PureThink and Neo4j USA entered into the Neo4j Solution Partner

15  Agreement ("Partner Agreement").  Ratinoff Decl., ¶ 6, Exh. 4.   Under this agreement, PureThink

16  had a non-exclusive, non-transferable limited license to, *inter alia*, use the Neo4j® Mark solely to

17  market and resell commercial licenses to Neo4j® EE and related support services in exchange for

18  shared revenue for the licenses that it resold.  *Id.*, Exh. 4 at § 4.1; Exh. 3 at 60:10-61:17, 67:25-69:11.

19  PureThink agreed to the terms of this license and to use the Neo4j® Mark in accordance with Neo4j

20  USA's "then-current trademark usage guidelines."[1]  *Id.*  The Partner Agreement was subject to a 1-

21  year term, and would automatically renew at additional 1-year periods subject to the notice and

22  termination provision therein, thereby incorporating whatever was the operative trademark guidelines

23  at that time. *Id.*, Exh. 4 at §7.1; Exh. 3 at 67:18-24.

24      All rights and licenses to the Neo4j® Platform and the Neo4j® mark would terminate upon

25  the expiration or termination, and upon such an event, PureThink agreed to "cease using any

26  trademarks, service marks and other designations of Plaintiffs."   Ratinoff Decl., Exh. 4 at §7.3.

27  

28  [1] As a result of the renewal provision, PureThink became bound by the October 13, 2015 version of
    Neo4j USA's trademark guidelines as of September 30, 2016.  *See* Rathle Decl., ¶ 16, Exh. 5.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9
- 5 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

Page 131

1   PureThink further agreed that for a period of 36 months after termination of the Partner Agreement,

2   it would not "develop, market, distribute or offer any services related to any [Neo4j® CE] Products,

3   derivative works of such products, or any [Purethink] software code made to work with [Neo4j® CE]

4   Products (including, without limitation, hosting services, training, technical support, configuration

5   and customization services, etc.)."[2]  *Id.*, Exh. 4 at § 4.3.2; Exh. 3 at 70:5-19.

6          **D.     Suhy and PureThink Form iGov to Evade the Partner Agreement**

7          In the hope of increasing sales, Suhy came up with the idea of rebranding Neo4j® EE as

8   Neo4j® Government Edition ("Gov't Edition").  *See* Ratinoff Decl., Exhs. 5-6. Suhy knew that if

9   PureThink could create ████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████████

11  ████████████████████████████        *See id.*    Nonetheless, PureThink had limited success in convincing

12  government agencies to pay for licenses to Gov't Edition and support services from PureThink.

13         By September 2016, the only promising lead PureThink had was the IRS. Ratinoff Decl.,

14  Exh. 7. However, ████████████████████████████████████████████████████

15  ██████████████████████████████████████  *Id*.  To make that deal happen, Suhy

16  falsely told the IRS they could use Neo4j® EE under the AGPL for free and pay PureThink for its

17  consulting services.  *Id*., Exh. 8.  In early 2017, Suhy revealed to Neo4j USA that PureThink had

18  compiled its own modified version of the Neo4j® EE software under the AGPL, which the IRS had

19  already installed.  *Id*.

20         On May 30, 2017, Neo4j USA sent PureThink notice that Suhy's actions constituted a

21  material breach of the Partner Agreement.  Ratinoff Decl., Exh. 9.  PureThink made no effort to cure

22  its breaches, and instead formed iGov on or about June 23, 2017 to evade the restrictions in Section

23  4.3.1 of the Partner Agreement.  Ratinoff Decl., Exh. 10 and Exh. 11 ("I would think your legal team

24  understands that since everything is open source and that someone can start a new company to get

25  around this would make this simple negotiating point that does no harm dropping.").  The PT

26  Defendants also admitted as much in their pleadings.  *See* PT Dkt. No. 72 at 8:22-25, 9:15-23.

27

28  ────────────────────────
    [2] The parties agreed to resolve the enforceability of this provision in Phase 2.  *See* PT Dkt. No. 68.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO
842\3639184.9                                    - 6 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 132**

### E.   iGov and Suhy Infringe the Neo4j® Mark after iGov's Formation

On July 11, 2017, Neo4j terminated the Partner Agreement.  In providing notice, Neo4j USA demanded PureThink "cease using [Neo4j's] trademarks, service marks, and other designations…and remove from PureThink's website(s) marketing materials, [Neo4j's] trademarks and tradenames, including, without limitation, Neo4j" as required by Agreement.  Ratinoff Decl., Exh. 12.  Shortly thereafter, Suhy and iGov targeted same federal agencies that PureThink previously solicited, and pushed them to adopt the "Government Package for Neo4j" from the same "principle" behind PureThink and Gov't Edition.  *See id*., Exhs. 14-15.

For example, Suhy emailed the National Geospatial-Intelligence Agency ("NGA") admitting that there was no difference between PureThink and iGov: "Until we broke away from Neo4j Inc last month, we sold every Neo4j subscription to the US federal government under our other company PureThink. I am the core developer who created the Neo4j Government Edition which was retired by Neo last month."  Ratinoff Decl., Exh. 19.  Suhy also referenced iGov's newly created website at https://igovsol.com/neo4j.html, and attached a printout of that webpage which contained multiple unauthorized uses of the Neo4j® Mark, including references to "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise." *Compare id*., Exh. 17 *and* Exh. 19.

Around this same time, both PureThink and iGov put this identical content on their websites:

> The principle [sic] behind PureThink and the Government Package has created a new corporate entity called iGov Inc, which is not a Neo4j Solution Partner. ***Because iGov Inc is not a solution partner, it can offer packages at great cost savings to US Government Agencies as it has no restrictions on working with Neo4j Enterprise open source licenses***!
>
> * * *
>
> iGov Inc's new ***Government Package for Neo4j*** can be added to any Neo4j instance making it a "Government Edition".  By default, ***all Government Packages for Neo4j now comes with Neo4j Enterprise*** included under it's [sic] open source license!

Ratinoff Decl., Exhs. 14-15. Purethink even redirected potential customers wanting to "Learn More" about iGov and the "Government Package for Neo4j" to iGov's website. *Id.,* Exh. 14.

The PT Defendants also used iGov's website to misleadingly market "Neo4j Enterprise" (cobbled together from various sources by Suhy) as genuine Neo4j® EE v3.3: "iGov Inc is now the only US Federal contractor providing Neo4j Enterprise binaries packaged with it's free Open Source

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9

- 7 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

Page 133

1   license!" *See* Ratinoff Decl., 18; *see also* Exh. 17 ("iGov Inc's Government Development Package

2   with Neo4j Enterprise… Comes with same physical Neo4j Enterprise software").  Aside from iGov's

3   "Neo4j Enterprise" being virtually identical in name to Plaintiffs' official "Neo4j® Enterprise

4   Edition," the version distributed by iGov was not of the same quality as the official one compiled by

5   Neo4j Sweden, and did not include several closed-sourced features. *See* Rathle Decl., ¶¶ 10, 19-26.

6   When Suhy cobbled together "Neo4j Enterprise", he was actually creating software and introducing

7   modifications that result in a version of Neo4j® EE that is not of the same quality as if were compiled

8   by Neo4j Sweden. *Id.*  Suhy admitted this in a blog he wrote circumventing Neo4j Sweden's

9   commercial licensing restrictions in place at that time.  Ratinoff Decl., Exh. 20.

10          Other unauthorized uses of the Neo4j® Mark on iGov's website included: (1) using

11   "https://igovsol.com/**neo4j**.html" as a URL to promote "Government Development Packages for

12   **Neo4j**"; (2) prominently displaying a "Request Procurement Document Package" link with

13   "**mailto:neo4j@igovsol.com**" embedded which creates an email addressed thereto upon activation;

14   (3) encouraging consumers to obtain more information by sending an email to

15   "**neo4j@igovsol.com**;" and (4) gratuitously using "Government Packages for Neo4j"  and "Neo4j

16   Enterprise" to describe iGov's patchwork versions of Neo4J® EE.  *Id.*, Exhs. 15-18.

17          **F.     Defendants Form GFI and Improperly Remove the Commercial  Restrictions
18                   in the Neo4j Sweden Software License in Order to Launch ONgDB as a "Free
                     and Open Source" Neo4j® EE**

19          Neo4j Sweden released NEO4J® EE v3.4 under the Neo4j Sweden Software License in May

20   2018. Rathle Decl., ¶ 11.  After that release, the PT Defendants copied the source code, removed the

21   commercial restrictions imposed by the Neo4j Sweden Software License, and began promoting it

22   "free and open source" Neo4j® EE and offering commercial support services.  *See* Ratinoff Decl.,

23   Exh. 3 at 171:23-172:23, 199:22-200:20; Exh. 21.  Suhy then told Plaintiffs that he was forming a

24   non-profit "for a community fork of Neo4j to get things started, and to ensure it's [sic] long term

25   success…" and that "if we do launch this community fork and re-brand, it won't be something [he]

26   can stop once the legal entity is place and launched…."  *Id.*, Exh. 27.  This was not an empty threat

27   because he was working with Brad and Ben Nussbaum, the owners of AtomRain Inc. and GraphGrid

28   Inc., to form GFI and fork Neo4j® EE.  *See id.*, Exhs. 22-23; *see also* Exh. 28 ("We're consolidating

842\3639184.9                                             - 8 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 134**

1   support of the open source neo4j graph database distributions under a non-profit organization: Graph

2   Foundation"); Exh. 29 ("Our team: iGov Inc, GraphGrid [], and AtomRain []. We work together as

3   one company. We all are the founders of the Graph Foundation.").

4        On June 22, 2018, the Nussbaums incorporated GFI and Defendants immediately began to

5   promote what they called ONgDB. Ratinoff Decl., Exh. 30. Rather than develop ONgDB as an

6   independent fork based off an earlier open source version of Neo4j® EE, Defendants again stripped

7   the commercial restrictions out of the Neo4j Sweden Software License from Neo4j® EE version 3.4

8   and began promoting ONgDB as open source Neo4j® EE 3.4 under the AGPL. *See id.*, Exhs. 24-

9   26, 28; *see also* Exh. 3 at 28:25-29:11; Exh. 31 at 87:24-90:9. They did so under the false premise

10  that Sections 7 and 10 of the Neo4j Sweden Software License permitted a licensee to remove "further

11  restrictions," i.e. the Commons Clause, imposed by Neo4j Sweden as the copyright holder and

12  original licensor. *See id.*, Exh. 3 at 171:23-172:23. This contradicted what that license actually states

13  – that only a downstream licensee may remove unauthorized restrictions when placed by an upstream

14  licensee who redistributes the copyrightable program, not those placed by the copyright owner

15  offering the terms to the licensees. *See* Rathle Decl., Exh. 3 at §§ 7, 10.

16       Defendants knew that they could not replace the Neo4j Sweden Software License with the

17  APGL without Neo4j Sweden's prior authorization. The FSF even told Suhy on August 21, 2018

18  that "[t]he copyright holder on a work is the one with the power to enforce the terms of the license"

19  and "[i]f a work was previously available under a free license, and later that license is changed, users

20  can always use that earlier version under the terms of the free license." *See* Ratinoff Decl., Exh. 34.

21  GFI admitted as much on GitHub: ***The Graph Foundation can only change the license of source***

22  ***code where it holds the copyright***." Ratinoff Decl.*,* Exh. 35, Exh. 31 at 183:14-184:24; *see also* Exh.

23  36 ("We cannot change the AGPL license on any code where we don't hold a [sic] copy-right").

24       GFI also traded off the goodwill associated with Neo4j® Mark by copying the landing page

25  on Plaintiffs' GitHub repository without any overt reference to ONgDB. Dkt. No. 89, ¶ 18, Exh. 18;

26  Ratinoff Decl., Exh. 31 at 81:14-20. It was not until January 17, 2019 that GFI modified its landing

27  page by changing the title to "ONgDB - Neo4j Enterprise Fork: Graphs for Everyone" and adding

28  references "ONgDB & Neo4j," but the content still remained almost identical to Plaintiffs' GitHub

842\3639184.9                                    - 9 -

1   landing page and contained wide-spread misuse of the Neo4j® Mark.  *See* Dkt. No. 89, ¶¶ 19-21,

2   Exhs. 19-21. Notably, GFI removed Plaintiffs' licensing notices, including the need for a commercial

3   license, and replaced them with the misrepresentation that "ONgDB & ***Neo4j Enterprise*** consist of

4   modules from Neo4j Community Edition and modules licensed under AGPLv3 in this repository."

5   *Id.*, Exhs. 19-21 (emphasis added).

6            On January 31, 2019, GFI posted a blog entry on its website making its intent clear:

7            We started Graph Foundation, Inc. … in June 2018 when we noticed Neo4j's
         position beginning to change and the implications of this for the community and
8            ecosystem. The Graph Foundation is a nonprofit with 501(c)(3) status ***and its goal
         is to take over neo4j enterprise development*** ...

9   *See* Ratinoff Decl., Exh. 37.  GFI further stated that it "decided on the name ONgDB (oh-n-gee-db)

10  which stands for Open Native Graph DB but also ONgDB's Neo4j Graph DB," which it now claims

11  was merely a joke made in bad taste.  *See id.*; *see also* Exh. 31 at 178:13-179:21.

12           This blog coincided with GFI's release of ONgGB v3.5.1, which contained at least 182

13  source code files that had only been previously released under the Neo4j Sweden Software License

14  in the last beta version of Neo4j® EE 3.5 made available by Plaintiffs via GitHub.  *See* Ratinoff

15  Decl., Exh. 38 at 6:22-7:1, 8:4-16:24; *see also* Rathle Decl., ¶ 29.   In order for Defendants to continue

16  to call ONgDB "free and open source" Neo4j® EE, they again replaced the more restrictive Neo4j

17  Sweden Software License with a generic copy of the AGPL in 28 separate LICENSE.txt files.

18  Ratinoff Decl., Exhs. 39-40; Dkt. No. 91 at 19:9-25; Exh. 31 at 159:3-10; Rathle Decl., ¶ 30.  Not

19  only did this remove the Commons Clause to allow iGov, AtomRain and GraphGrid to commercially

20  use and support ONgDB, but also stripped out valid legal notices identifying Neo4j Sweden as the

21  copyright holder and licensor.[3]  *See* Ratinoff Decl., Exh. 39.

22           GFI did not make any other meaningful changes to its GitHub landing page for ONgDB until

23

24  [3] The Nussbaums also own GraphGrid and AtomRain, which share the same office and computers
25  with GFI, and provide commercial training and consulting and support for users of ONgDB.
    Ratinoff Decl., Exhs. 52-53; Exh. 31 at 22:24-23:3, 31:5-32:19, 35:3-13, 57:18-58:21, 65:20-
26  70:16, 194:14-17.  Like iGov, GraphGrid and AtomRain benefit from customers being able to use
    ONgDB for "free" and diverting available project funds to pay them for such services.  *See, e.g.,*
27  *id., see also* Exh. 28 ("If you are looking for a full shield of liability, we recommend using one of
    our supporters such as GraphGrid") and Exhs. 76, 134-135.
28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                               - 10 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

Page 136

1    April 14, 2020 when it started to remove the Neo4j® Mark and Plaintiffs' URLs from that page.

2    *Compare* GFI Dkt. No. 89, Exh. 22 *and* Exhs. 23-28.  However, GFI's landing page was still

3    confusingly titled "ONgDB - Neo4j Enterprise Fork: Graphs for Everyone," still started off stating

4    "Neo4j is the world's leading Graph Database," encouraged consumers to "Learn more on the Neo4j

5    website," and continued to misuse the Neo4j® Mark throughout.  *Id.*, Exhs. 29-31. It was not until

6    April 21, 2020 that GFI removed most references to the Neo4j® Mark and hyperlinks to Plaintiffs'

7    website, but it still persisted on using Plaintiffs' catch phrase "Graphs for Everyone" and mislabeling

8    the Neo4j® Platform as the "neo4j project."  *Id.,* Exhs. 32-33. GFI also continued to misleadingly

9    claim that "ONgDB Enterprise Edition consists of modules from ONgDB Community Edition and

10   modules licensed under AGPLv3 in this repository." *Id.*, Exh. 32; *see also* Ratinoff Decl., Exh. 41.

11
12   ### G.    Defendants Promote ONgDB over Neo4j® EE Based on the False Premise that No Paid Commercial License from Plaintiffs is Necessary to Use ONgDB

13         In addition to their respective websites, Defendants spread misinformation based on their

14   unauthorized alteration of the Neo4j Sweden Software License directly to potential customers and

15   encouraged them to adopt ONgDB.  *See, e.g.,* Ratinoff Decl., Exhs. 42-47.   A common theme in

16   these communications telling potential customers that ONgDB v3.5.x was "100% free and open"

17   with no limitations or restrictions imposed by commercial licensed Neo4j® EE v3.5.x.  *See id.,* Exhs.

18   42-47; *see also* Exh. 126.   Another common theme was telling potential customers the FSF had

19   determined that Commons Clause was invalid.  *See id.,* Exh. 48 ("The [FSF], which owns rights to

20   AGPLv3 license and its use, reviewed the Commons Clause that had been added and determined that

21   it was not valid."); *see also id*., Exh. 28.  This was false because the FSF did not provide them with

22   a legal opinion and GFI knew it had no right to change the license.  *See* Exhs. 34-36; Exh. 31 at

23   183:14-184:24, 207:10-210:8.

24         Defendants also told potential customers that legal counsel for the IRS had concluded that it

25   was proper for them to have removed the Commons Clause and that ONgDB could be used without

26   obtaining a paid commercial license from Plaintiffs.  *See, e.g.,* Ratinoff Decl., Exhs. 49-50.   When

27   pressed by one customer, GFI was forced to admit that it had never received any such legal opinion

28   from the IRS.  *Id.*, Exh. 51.  In fact, they have no first-hand knowledge of ***any*** meaningful legal

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                            - 11 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 137**

1   analysis performed by the IRS about the validity of the Commons Clause.  *Id.*, Exh. 31 at 218:21-

2   220:24, 226:19-228:24, 266:18-269:22; Exh. 3 at 157:14-162:8.

3   Suhy also reached out on behalf of iGov to many of the same government agencies that he

4   had previously done so under the Partner Agreement.  *See, e.g.,* Ratinoff Decl., Exh. 25 (Excella),

5   Exhs. 29, 54 (USAF), Exh. 45 (Sandia), Exh. 46 (Army); *see also* Dkt. No. 72 at ¶¶ 23-24.  He even

6   encouraged the USAF to modify its open solicitation, which included the Neo4j® Platform as one of

7   the products listed, from "neo4j" to "neo4j/ONgDB" because Suhy pitched them as the same product

8   rather than two separate products.  *Id.,* Exh. 54.  Suhy went further by signing off on a response to a

9   RFQ where he certified iGov was "████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████████████████████████████████"

11  what was listed as "█████████████████████████████████████████████████████████

12  ████████"  *Id.*, Exh. 55; Exh. 31 at 235:21-237:14, 240:22-243:22.  This was false as Suhy knew that

13  Neo4j Sweden owned the copyright to source code for Neo4j® EE and never gave permission to

14  remove Commons Clause and offer it as ONgDB under the AGPL.  *Id.,* Exh. 56 and Exh. 3 at 183:12-

15  183:1, 187:12-188:5, 189:1-191:3.

16  **H.    GFI Falsely Promotes ONgDB 3.5 as a "Drop In" Replacement for Neo4j® EE**

17  GFI also used its website to deceptively market ONgDB as the equivalent of commercially

18  licensed NEO4J® EE.  Between May and September 2019, GFI promoted ONgDB as the "free and

19  open source Neo4j Enterprise project," and "a non-restrictive fork of Neo4j, the world's leading

20  Graph Database" via its webpage.  *See* Ratinoff Decl., Exh. 57.   GFI's website and GitHub landing

21  page also used virtually ***identical*** language from Neo4j's GitHub repository to describe ONgDB.

22  *Compare* Exhs. 57-58 *and* 59 (green highlight).  Even after Plaintiffs filed suit over a year ago, GFI

23  continues to advertise ONgDB as being "licensed under AGPLv3 as a free and open source

24  alternative to currently available proprietary native graph offerings such as Neo4j Enterprise

25  Edition."  *Id.,* Exh. 60.  As discussed above, such claims are misleading because GFI impermissibly

26  replaced the Neo4j Sweden Software License with the generic AGPL.

27  GFI further claimed on its website for most of 2019 that "ONgDB distributions are licensed

28  under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed

842\3639184.9                                      - 12 -

1  distributions with the same version number."  *See* Ratinoff Decl., Exh. 57.  GFI's claim was

2  misleading it admitted that ONgDB v3.5.4 is not 100% identical to official Neo4j® EE v3.5.4.  *Id.,*

3  Exh. 31 at 158:18-163:5, 163:13-165:6; Exh. 3 at 124:2-126:23.  Rather, ONgDB is a patchwork of

4  code from the last public beta, Neo4j® EE v3.5.0-RC1, and Neo4j® Community Edition held

5  together by "glue code" authored by Suhy, Brad Nussbaum and other GFI contributors.  *See id.*  GFI

6  is entirely dependent on what patches are made available in Neo4j® CE and sought to redirect users

7  of official Neo4j® EE to GFI and identify bugs in the closed enterprise directory for Neo4j® EE.

8  *See* Ratinoff Decl., Exh. 61, Exh. 31 at 161:23-163:12, 169:13-172:12.

9       By splicing together source code for ONgDB in that manner, GFI is creating software that is

10  not of the same quality as if it were compiled by Plaintiffs.  Rathle Decl. ¶¶ 31-33.  This is because

11  GFI does not have access to the same rigorous testing and build infrastructure for official Neo4j®

12  software, which goes beyond what is built into Neo4j® CE.  *See id.*; *see also* Ratinoff Decl., Exh. 3

13  at 216:2-218:6; Exh. 31 at 168:14-169:6.  Further, since GFI introduced modifications to ONgDB in

14  an attempt to keep pace with the closed Neo4j® EE releases, the potential for stability and

15  compatibility issues with ONgDB increases.  *See* Rathle Decl., ¶ 34; *see also* Ratinoff Decl., Exh. 31

16  at 161:23-163:12.  Indeed, Defendants had no way of knowing what Plaintiffs had modified or fixed

17  in the source code for enterprise-only features after Plaintiffs closed off public access to that code in

18  November 2018.  Ratinoff Decl., Exh. 31 at 158:18-160:5; Exh. 3 at 223:1-224:9; Exh. 40.

19       Finally, Defendants knew that ONgDB does not include every closed enterprise feature in

20  the equivalent version of Neo4j® EE.  Ratinoff Decl., Exh. 38 at 2:12-17, 4:15-22, 5:4-6:21; Exh. 3

21  at 127:19-128:17.  As a result, they deceived consumers into thinking they were downloading an

22  exact copy of the same version of commercial-only releases of Neo4j® EE, which in actuality they

23  were receiving an improperly licensed and inferior ONgDB product from a qualitative and feature

24  standpoint.  ***GFI even admitted that after ONgDB v3.5.4, it could not "reliably guarantee that it***

25  ***was a drop-in replacement" for Neo4j® EE and was unwilling to do the necessary testing to make***

26  ***such integration and compatibility guarantees because it became "too hard to demonstrate."***  *Id.*,

27  Exh. 31 at 186:24-188:17, 188:23-189:23.  GFI thus stopped calling ONgDB a drop-in replacement

28  and removed those claims from its website in October 2019 shortly after Plaintiffs filed suit.  *See id.*

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9

- 13 -

1  **I.    iGov Uses the Neo4j® Mark to Promote ONgDB on its Websites and Falsely**
2  **Claims that ONgDB is a "Drop In" Replacement for Neo4j® EE**

3  After GFI released ONgDB in July 2018, iGov continued to misuse the Neo4j® Mark on its

4  website.  It continued to use "https://igovsol.com/**neo4j**.html" as a URL address to promote ***ONgDB***

5  until it deactivated that page sometime after July 27, 2020.  Ratinoff Decl., Exhs. 62-65; Exh. 13 at

6  RFA No. 5.  While iGov replaced this url with "https://igovsol.com/**graph**.html, the contents of the

7  page remained the same. *Compare id.,* Exh. 65 *and* Exh. 66.  iGov also used the neo4j@igovsol.com

8  email address on its "neo4j.html" page (*id.*, Exhs. 63-64 [purple highlight]) and "downloads.html"

9  page (*id.*, Exhs. 67-69 [purple highlight]) as means for consumers to inquire about ***ONgDB*** until

10  sometime in July 2020.  *See id.*, Exh. 13 at RFA Nos. 7-11.  Likewise, GFI misled customers on its

11  "downloads" page by using a "Download Neo4j Enterprise" hyperlink that redirects consumers to

12  download links for ***ONgDB*** until July 27, 2020.  *See id.*, Exh. 67 (red highlight); Exh. 13 at RFA

13  Nos. 10, 14.  However, iGov never stopped offering "commercial equivalent support packages for

14  Neo4j Enterprise open source licensed distributions," and interchangeability referring to "ONgDB

15  Enterprise" and "Neo4j Enterprise" on these pages.  *See id.,* Exhs. 62-70 (yellow highlight).

16  In addition, iGov continues misrepresent that "ONgDB Enterprise," "Neo4j Enterprise" and

17  "Neo4j Enterprise Edition" are open source and can be used for free under the AGPL.  *See* Ratinoff

18  Decl., Exhs. 62-74. iGov also continues to misrepresent that "ONgDB is a drop in replacement for

19  the Neo4j Community and Enterprise branded distributions." *Id.,* Exh. 71-74 (green highlight).

20  Similarly, GFI instructed potential users of Neo4j® EE on its "neo4j" page to "simply download

21  ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the

22  same version number" and still does so on the successor "graph" page.  *Id.,* Exhs. 63-66 (green

23  highlight).  Between July 5, 2019 and July 27, 2020, GFI described "ONgDB Enterprise 3.5.5" as a

24  "Drop in replacement for Neo4j Core and Enterprise 3.5.5" on its "downloads" page. *Id.,* Exhs. 67-

25  69 (green highlight).  iGov ***still*** makes drop-in replacement claims for ONgDB v3.5.11 even though

26  GFI ***confirmed*** that versions released after ONgDB v3.5.4 were no longer drop-in replacements for

27  equivalent versions of Neo4j® EE. *Id.,* Exh. 74; Exh. 31 at 186:24-188:17, 188:23-189:23.

28  In addition, the PT Defendants operated www.graphstack.io to further promote the false

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                - 14 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

Page 140

1  equivalency between ONgDB and Neo4j® EE.  They admitted that "iGov Inc is the company behind

2  GraphStack" and that "iGov Inc offers production support packages for Neo4j / ONgDB Enterprise

3  open source distributions for US government agencies."  Ratinoff Decl., Exh. 75.  This website also

4  contained statements that ONgDB "is a non-restrictive fork of Neo4j" and "a drop in replacement for

5  any Neo4j Enterprise (or community) distribution of the same version number." *See id.*  The PT

6  Defendants have made similar misrepresentations directly to potential customers, such as "[ONgDB]

7  is 100% open source and a drop in replacement for the same Neo4j version."  *See id.*, Exh. 43; *see*

8  *also* Exhs. 44-46, 76-77, 126.

9  **J.      Defendants Impermissibly Rely Upon Official Neo4j® Support Documentation**

10  GFI's efforts to steal the goodwill associated with the Neo4j® Mark is further evidenced by

11  the fact that it did not create its own support documentation for ONgDB.  *See* Ratinoff Decl., Exhs.

12  128-129 [RFA Nos. 81-84]. Instead, it has relied upon Neo4j USA's official documentation and used

13  hyperlinks on its website to redirect users to Plaintiffs' operation and developer manuals located on

14  Plaintiffs' website.  Dkt. No. 89, ¶¶ 3-8, 13-16; Ratinoff Decl., Exhs. 78-83. For example, GFI's

15  webpage for ONgDB v3.5.3 stated, "Look for 3.5 Operations manual here" with an embedded

16  hyperlink to https://neo4j.com/docs/operations-manual/3.5/. Dkt. No. 89, ¶ 7; Ratinoff Decl., Exhs.

17  82-83. Similarly, GFI's website consistently directed users to ***Plaintiffs'*** change logs for each new

18  release of ONgDB until GFI finally started its own change log with ONgDB v3.5.16.  Dkt. No. 89,

19  ¶¶ 3-8; Ratinoff Decl., Exh. 84; Exhs. 128-129 [RFA Nos. 87, 92, 97, 103, 107, 110].

20  GFI employed similar misdirection on its GitHub repository.  At least up until April 14, 2020,

21  GFI's GitHub landing page prominently stated "To build the documentation see the Neo4j

22  documentation" with an embedded hyperlink "https://github.com/neo4j/neo4j-documentation/." Dkt.

23  No. 89, Exhs. 18-19, 23.  GFI's general document repository on GitHub also uses hyperlinks that

24  lead consumers to believe they are being directed to documentation provided by GFI.  *See* Dkt. No.

25  89, ¶¶ 9-16.  However, these hyperlinks redirect them to Neo4j USA's official documentation on

26  Neo4j USA's corporate website.  For example, the word "ONgDB 3.5" under the heading "LTS

27  release" contains an embedded hyperlink, https://neo4j.com/docs/operations-manual/3.5/, that

28  redirects users to Neo4j USA's copyrighted "The Neo4j Operations Manual v3.5" located on Neo4j

Hopkins & Carley
Attorneys At Law
San Jose • Palo Alto

842\3639184.9                                          - 15 -

1    USA's website.  *Id.,* ¶¶ 9-10; Ratinoff Decl., Exhs. 82-83; Exh. 31 at 276:19-279:15, 284:2-285:18.

2            As indicated at the top of each of the forgoing manuals, they are copyrighted by Neo4j USA

3    and subject to the License: Creative Commons 4.0, which contains a hyperlink to the Attribution-

4    NonCommercial-ShareAlike 4.0 International Public License.  *See* Ratinoff Decl., Exh. 85.

5    Notably, this license expressly prohibits the use of Neo4j USA's documents for commercial purposes,

6    which is exactly what Defendants were doing by using Plaintiffs' documentation to promote ONgDB

7    as "drop in replacement" for commercially licensed Neo4j EE® and Defendants' related support and

8    consulting services.  *Id.*

9            iGov also does not use its own release notes and announcements in promoting ONgDB.

10   Instead, it uses hyperlinks on its website to redirect consumers to Neo4j USA's official release notes

11   (https://neo4j.com/release-notes/neo4j-3-5-5/) and "What's New" page (https://neo4j.com/whats-

12   new-in-neo4j/) until they apparently removed those references sometime in July 2020.  *See* Ratinoff,

13   Exhs. 67-69 (blue highlight).  The GraphStack website similarly used hyperlinks to redirect

14   consumers to Neo4j USA's official release notes (https://neo4j.com/release-notes/neo4j-3-5-5/) and

15   "What's New" page (https://neo4j.com/whats-new-in-neo4j/) in conjunction with encouraging

16   consumers to download ONgDB as an alleged "[d]rop in replacement for Neo4j Core and Enterprise

17   3.5.3."  Ratinoff Decl., Exh. 75; Exh. 13 [RFA Nos. 42-43].

18   **K.    Defendants Improperly Use the Neo4j® Mark to Promote ONgDB on Twitter**

19           On or about November 17, 2018, GFI claimed on Twitter that ONgDB v3.5 would "be a

20   divergent but open source #AGPL release" of open source Neo4j® EE v3.5.  Ratinoff Decl., Exh.

21   87.  As detailed above, however, GFI did not develop ONgDB as legitimate, bona fide open source

22   fork.  Consequently, Defendants mislead consumers via Twitter that ONgDB was licensed under

23   AGPLv3 as a free and open source equivalent of commercial-only licensed Neo4j® EE containing

24   the same closed source code as equivalent versions thereof.  *See, e.g., id.*, Exhs. 93, 97-104.

25           Defendants also impermissibly used the NEO4J® Mark as a hashtag "**#Neo4j**" to promote

26   ONgDB.  Ratinoff Decl., Exh. 31 at 233:17-237:21.  GFI made a conscious decision to announce its

27   new releases of ONgDB via Twitter using the format, "**#ONgDB (#FOSS#Neo4j** Enterprise) 3.5.x

28   support release is out," with no attempt to differentiate ONgDB and Neo4j® EE as separate,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                            - 16 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

Page 142

1   competing products.[4]  *Id.*, Exhs. 89, 92, 94-95; Exh. 31 at 233:17-236:15, 240:12-241:25.  GFI issued

2   a similar tweets that used "**#Neo4j** Enterprise" and "**#ONgDB**" without *any* differentiation.  *Id.,*

3   Exhs. 91, 93, 96.   As noted above, GFI used "**#Neo4j** Enterprise 3.5" to solicit end-users of ***Neo4j®***

4   ***EE v3.5*** to report bugs so that Defendants could identify bugs without actually doing the work and

5   better mimic Plaintiff's potential fixes in ONgDB.  *Id.*, Exh. 61.  To make matters worse, the PT

6   Defendants retweeted GFI's tweets increasing the number of potential customers that would receive

7   those tweets or come across them in searches.  *See id.*, Exhs. 105-111.

8
9
    ### L.   Defendants' Misuse of the Neo4j® Mark and False Statements about ONgDB Have Diverted Customers to Defendants and Caused Actual Confusion

10   Defendants' strategy to siphon off the goodwill associated with the Neo4j® Mark quickly

11   paid dividends.  By March 21, 2019 – only two months after the release of ONgDB v3.5.1 – GFI

12   boasted on its website and via Twitter that "we have reached our 1,000th download of ONgDB 3.5,

13   the Open Neo4j Enterprise project!" and was "a sign that we are succeeding in our mission."  *See*

14   Ratinoff Decl., Exh. 112; *see also* Exh. 91.  By June 2020, GFI tallied over 10,000 downloads of

15   ONgDB and as of December 2020 had over 14,000 downloads.  *See id.,* Exhs. 113-114.

16   Defendants' misinformation campaign also resulted in actual consumer confusion.   For

17   example, users encountered compatibility issues with ***ONgDB*** and sought assistance from ***Plaintiffs***:

18
19
20
21
22
> Do the terms of use for "neo4j Desktop" apply to the ONGDB server which I downloaded under AGPLv3 license? I read the Desktop terms carefully and they refer everywhere to "neo4j Desktop software". Has anybody encountered this issue? I am feeling really stupid for not thinking this through before downloading the Desktop Software, especially as database authentication keeps failing. Before I spend any more time troubleshooting, could someone indicate any features of Desktop that are really worth it (other than UI)? I am planning production, so the license is important to me.

23   *See* Ratinoff Decl., Exh. 115.  When Defendants learned of this confusion, they had audacity

24   to joke about it rather than take remedial measures to ensure future consumer confusion over

25   licensing and compatibility would not occur. *Id.,* Exh. 116.  GFI confirmed as much, testifying that

26   the Neo4j® desktop tool was not compatible with or supported by ONgDB.  *Id.,* Exh 31 at 230:12-

27   233:10.   iGov found this "interesting" because it showed that ONgDB was obtaining broader

28
    ---
    [4] "FOSS" stands for free open source software. Ratinoff Decl., Exh. 31 at 233:17-234:3.

842\3639184.9                                    - 17 -

1   consumer appeal in the marketplace than originally anticipated.  *Id.,* Exh. 3 at 207:12-209:3.

2        Consumers also have expressed uncertainty over Defendants' unauthorized modification to

3   the Neo4j Sweden Software License and justification for doing so.  *See* Ratinoff Decl., Exh. 49

4   ("there does not seem to be a resolution there certainly not from the Neo4j perspective, which defends

5   their use of both AGPL and the Commons Clause) (hyperlink leads to Exh. 117); Exh. 118 ("When

6   you say "ONgDB – this is a fully AGPL fork of the open source Neo4j Github repository" [] Is that

7   AGPLv3 [] from the FSF?  Is that the same AGPLv3 license referenced below regarding Neo4j

8   Enterprise from the Neo4j Github repository [] albeit with the 'additional sections' you mentioned?");

9   *see also* Exh. 119.  Defendants exacerbate these issues and cause further consumer confusion by

10  falsely equating ONgDB with commercially licensed Neo4j® EE.  *See, e.g., id.,* Exhs. 40, 55, 131,

11  133-134.  In the case of NextCentury and the Maryland Procurment Office (MPO), they ultimately

12  adopted ONgDB over Neo4j® EE after Defendants convinced them that it was not necessary to

13  obtain a commericial license from Plaintiffs.  *Id.*, Exhs. 48-49, 120.  Likewise, Defendants'

14  interchangeable use of "Neo4j Enterprise" and "ONgDB" in marketing ONgDB misleads consumers

15  into mistakenly believing that ONgDB and Neo4j® EE were one and the same.  *See, e.g.,* Exhs. 35,

16  40, 42-43, 46, 53, 55, 76, 100, 134.

17       Finally, consumers who have downloaded ONgDB rather than official Neo4j® EE have

18  experienced issues with ONgDB.  *See, e.g.,* Exh. 121 ("Unable to connect to Neo4j/ONgDB Browser

19  when port forwarding"); Exh. 122 ("ONgDB neoj not starting up"); Exh. 123 ("I also tried ONgdb

20  (neo4j) with different gremlin server versions"); Exh. 124 ("I'm having some difficulty loading a

21  Cypher file into Neo4J… note that I am using an recent ONGDB build, rather than straight Neo4J; I

22  do not believe this will make any substantial difference."); *see also* Exh. 133.  Rather than seek

23  assistance from GFI and ONgDB users, however, these consumers seek assistance from Plaintiffs on

24  GitHub and Neo4j® Platform users on Stack Overflow.  *See id.*  In one instance, Suhy even sent a

25  user to Neo4j USA's operations manual for assistance since GFI never developed its own support

26  documentation.  *See, e.g.,* Exh. 125.  Despite this lawsuit, Defendants remain undeterred in trading

27  off the Neo4j® Mark and falsely advertising ONgDB as free and open Neo4J® EE.

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9

- 18 -

### III.     THE CLAIMS AND DEFENSES SUBJECT TO PLAINTIFFS' MOTION

Plaintiffs move for partial summary judgment on Neo4j USA's Lanham Act and related UCL claims against Defendants for: (1) trademark infringement, 15 U.S.C. § 1114; (2) false designation of origin and false advertising, 15 U.S.C. § 1125(a); (3) federal unfair competition, 15 U.S.C. § 1125(a); and (4) state unfair competition in violation of Cal. Bus. Prof. Code §§ 17200 et seq.  PT Dkt. No. 82, 90 at ¶¶ 99-133; GFI Dkt. Nos. 63, 65 at ¶¶ 78-111.  Plaintiffs also move for summary judgment on Defendants' nominative fair use defenses.  PT Dkt. Nos. 82, 91; GFI Dkt. Nos. 63, 91.

### IV.     APPLICABLE MOTION FOR SUMMARY JUDGMENT STANDARDS

A motion for summary judgment or partial summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A fact is material when it affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party bears the ultimate burden of proof at trial, it must prove each essential element of the claims upon which it seeks judgment based on undisputed facts that are sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.  *Online Glob., Inc. v. Google LLC*, 387 F.Supp.3d 980, 984–85 (N.D. Cal. 2019).  Where the non-moving party bears the burden of proof, "the burden on the moving party may be discharged by … pointing out … that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the non-moving party's claim or defense. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).

If the moving party meets this initial burden, the burden then shifts to the non-moving party to designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324.  The non-moving party does not meet this burden by showing

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                                           - 19 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

Page 145

(108 of 299), Page 108 of 299
Case: 24-5538, 12/23/2024, DktEntry: 18.3, Page 108 of 299
Case 5:18-cv-07182-EJD Document 98 Filed 12/11/20 Page 31 of 67

1    "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*

2    *Corp.*, 475 U.S. 574, 586 (1986). Rather, it must come forward with admissible evidence to satisfy

3    the burden. Fed. R. Civ. P. 56(c); *see Hal Roach Studios, Inc. v. Feiner & Co., Inc.*, 896 F.2d 1542,

4    1550 (9th Cir. 1990). "If the nonmoving party's 'evidence is merely colorable or is not significantly

5    probative," then summary judgment may be granted." *Online Glob., Inc.*, 387 F.Supp.3d at 985

6    (citation omitted); *see also Anderson*, 477 U.S. at 248-49.

7    **V.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF NEO4J**
     **USA ON ITS TRADEMARK INFRINGEMENT CLAIMS AND AGAINST**
8    **DEFENDANTS ON THEIR NOMINATIVE FAIR USE DEFENSE**

9         **A.    Legal Standards for Trademark Infringement and Nominative Fair Use**

10        Neo4j USA moves for partial summary judgment on its causes of action for trademark

11   infringement and unfair competition in violation of 15 U.S.C. §§ 1114, 1125(a)(1). PT Dkt. No. 90

12   at ¶¶ 99-111, 120-126; GFI Dkt. No. 65 at ¶¶ 78-90, 99-105. To prevail on its claim under 15 U.S.C.

13   § 1114, Neo4j USA must prove (1) an ownership interest in a protectable mark; and (2) that

14   Defendants' use of the mark is likely to cause consumer confusion. *Network Automation, Inc. v.*

15   *Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011). These elements also apply to

16   Neo4j USA's cause of action for unfair competition under 15 U.S.C. § 1125(a)(1). *See Brookfield*

17   *Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.8 (9th Cir. 1999). Likewise, an

18   "an action for unfair competition under [Section 17200] is 'substantially congruent' to a trademark

19   infringement claim under the Lanham Act." *Acad. of Motion Picture Arts & Scis. v. Creative House*

20   *Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (citation omitted). This is because the

21   "ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks."

22   *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).

23        Registration of a mark is prima facie evidence of the validity of the mark, the registrant's

24   ownership of the mark, and the registrant's exclusive right to use the mark in connection with the

25   goods specified in the registration. *See* 15 U.S.C. § 1115(a). "When proof of registration is

26   uncontested, the ownership interest element of a trademark infringement claim is met." *Pom*

27   *Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014). Neo4j USA bases its trademark

28   claims on Registration No. 4,784,280 for the word mark "NEO4J." Ratinoff Decl., Exh. 1.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                    - 20 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 146**

1    Importantly, Neo4j USA's exclusive right to use the Neo4j® Mark covers all design variations of the

2    word because it was registered as a standard character mark.  *See Pom Wonderful*, 775 F.3d at 1124.

3    Since the Court struck Defendants' trademark validity defenses with prejudice, there is no basis for

4    them to challenge the Neo4j® Mark.  As a result, Neo4j USA meets the first element.

5           Normally, Neo4j USA would need to establish the second element of consumer confusion

6    by engaging in the 8-factor analysis under *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th

7    Cir.1979).  A defendant may avail himself of the nominative fair use defense if "the use of the

8    trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one

9    product for a different one."  *New Kids on the Block v. News Am. Publ'g, Inc.,* 971 F.2d 302, 308–09

10   (9th Cir. 1992).  Thus, the *Toyota* test replaces the *Sleekcraft* test as the proper measure of consumer

11   confusion.  *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175 (9th Cir. 2010).  In order

12   to rely upon nominative fair use, (1) defendant's product must be one not readily identifiable without

13   use of plaintiffs' trademark; (2) only so much of that mark may be used as is reasonably necessary to

14   identify defendant's product; and (3) defendant must do nothing that would, in conjunction with the

15   mark, suggest sponsorship or endorsement by the trademark holder.  *Id.* at 1175–76.  A defendant

16   seeking to assert nominative fair use as a defense "need only show that it used the mark to refer to

17   the trademarked good."  *Id.* at 1182-83. The burden then reverts to plaintiff to show consumers are

18   likely to believe that use of a mark is sponsored or endorsed by a trademark holder. *Id.*

19   **B.     The PT Defendants' Non-ONgDB Related Infringement of the Neo4j® Mark**

20          The PT Defendants cannot assert a nominative fair use of the Neo4j® Mark on their websites

21   due to PureThink's status as a former licensee.   In a dispute between a licensee and former licensor

22   there is no need to compare the marks or products. *See Hollywood Athletic Club v. GHAC–CityWalk*,

23   938 F.Supp. 612, 614–15 (C.D.Cal.1996).  In this situation, courts recognize that an ex-licensee's

24   continued use of a trademark alone establishes a likelihood of consumer confusion.  *See, e.g. State of*

25   *Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005) ("courts

26   have held that an ex-licensee's continued use of a trademark is enough to establish likelihood of

27   confusion"); *2Die4Kourt v. Hillair Capital Mgmt., LLC*, 2016 WL 4487895, at *6 (C.D. Cal. Aug.

28   23, 2016), *aff'd*, 692 F. App'x 366 (9th Cir. 2017) ("once a license agreement is terminated, the former

842\3639184.9                                    - 21 -

1    licensee cannot continue using the mark"); *Sun Microsystems v. Microsoft Corp.*, 999 F.Supp. 1301,

2    1311 (N.D.Cal.1998) ("[w]here a licensee persists in the unauthorized use of a licensor's trademark,

3    courts have found that the continued use alone establishes a likelihood of consumer confusion");

4    *Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.*, 88 F.Supp.2d 914 at 922 (C.D. Ill. 2000)

5    (likelihood of confusion exists as a matter of law if a licensee continues to use marks owned by the

6    licensor after termination of the license).

7         Here, it undisputed that PureThink had a license to use the Neo4j® Mark to market and resell

8    licenses and support services for Neo4j® EE, and agreed to cease using the mark in that manner upon

9    termination.  Ratinoff Decl., Exh. 4 at §§ 4.1, 7.3.  It is also undisputed PureThink continued to use

10   the Neo4j® Mark after Neo4j USA terminated the Partner Agreement as detailed above. *See supra*

11   Section II.E.  It wrongly used the Neo4j® Mark on its website to funnel customers to iGov to obtain

12   "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise."

13   *See* Ratinoff Decl., Exh. 14.  It also promoted "Neo4j Enterprise" as genuine Neo4j® EE despite

14   being compiled by Suhy and not being of the same quality if it were compiled and tested by Plaintiffs.

15   *See id.*, Exh. 16; Rathle Decl., 19-26, 31-34.

16        iGov used the Neo4j® Mark in the same manner on its website and made similar misleading

17   statements.  *See, e.g.,* Ratinoff Decl., Exhs. 15-18, 21, 62-64, 67-69.  iGov went further by using the

18   Neo4j® Mark as a URL address, in the email address "**neo4j@igovsol.com**" for users to request

19   more information about Neo4j® Software ***from iGov*** and repeatedly using "Government Packages

20   for Neo4j"  and "Neo4j Enterprise" to describe Suhy and iGov's patchwork binaries of Neo4J® EE.

21   *See id.* (purple highlight). The PT Defendants also repeatedly touted their prior relationship with

22   Neo4j USA and claimed to be "the developer of the retired Neo4j Government Edition."  *See id.*

23        The PT Defendants knew these uses were unauthorized since the same trademark guidelines

24   they had agreed to be bound by prohibited the use of the Neo4j® Mark with anything other than "the

25   software in the exact binary form that it is distributed by [Neo4j], without modification of any kind."

26   *See* Ratinoff Decl., Exh. 4 at § 4.1; Rathle Decl., ¶¶ 15-16, Exh. 5.  Likewise, these guidelines

27   prohibited the use of the Neo4j® Mark "in a web page title, titletag, metatag, or other manner with

28   the intent or the likely effect of influencing search engine rankings or results listings." *Id.*  Thus, there

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                    - 22 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

Page 148

1   is no question that any reasonable trier of fact would find the aforementioned uses of the Neo4j®

2   Mark by an ex-licensee would create consumer confusion over the PT Defendants being endorsed by

3   or affiliated with Plaintiffs, and that their recompiled "Neo4j Enterprise" was identical to official

4   Neo4j® EE or otherwise endorsed by Plaintiffs.  *See Wetzel's Pretzels, LLC v. Johnson*, 797

5   F.Supp.2d 1020, 1028 (C.D. Cal. 2011) ("[c]ontinued use by former ... licensee of the mark

6   constitutes a fraud on the public, since they are led to think that the continuing user is still connected

7   with the trademark owner"); *see also Adobe Sys. Inc. v. A & S Elecs., Inc.*, 153 F.Supp.3d 1136, 1143

8   (N.D. Cal. 2015) (not fair use because defendant's use of Adobe's marks was not intended to describe

9   Adobe's product, but rather to make it appear that the software was sanctioned by Adobe for sale and

10  distribution).  Thus, the PT Defendants indisputably have infringed the Neo4j® Mark.

11          Suhy and iGov cannot escape liability for infringement as an ex-licensee simply because they

12  were never a Neo4j Solution Partner.  Under Section 10 of the Partner Agreement, PureThink agreed

13  that all contractual restrictions would apply to any successor-in-interest, assign, and acquirer of

14  substantially all of its assets.  Ratinoff Decl., Exh. 4.  Suhy told Neo4j and then bragged on the PT

15  Defendants' websites that they formed iGov to circumvent the restrictions imposed by the Partner

16  Agreement.  *See, e.g., id.,* Exhs. 11, 14-15; *see also* Exh. 3 at 46:12-16.  Suhy is sole owner and

17  employee of both entities, used the same website template, and initially used the same offices and

18  support telephone number for both entities. *See id.* Exh. 3 at 21:23-22:22, 23:16-18, 37:3-38:16, 39:6-

19  40:23, 47:20-49:8, 52:9-11.  Suhy also used both his iGov and PureThink email accounts to solicit

20  customers that he had previously contacted under the Partner Agreement.  *See, e.g., id.,* Exhs. 19, 25,

21  29, 45-46, 54; and Dkt. No. 72 at ¶¶ 23-24.  iGov even took over PureThink's business relationship

22  with the IRS without skipping a beat.  *See id.* Exh. 3 at 53:4-54:25; Exh. 127.  Thus, it is indisputable

23  that PT Defendants acted as unified infringers of the Neo4j® Mark.

24          Controlling California law does not permit an individual or entity to circumvent its legal

25  obligations by fraudulently forming a purportedly separate, entity.  *Automotriz Del Golfo De*

26  *California S.A. de C.V. v. Resnick*, 47 Cal.2d 792, 796 (1957); *Ultratech, Inc. v. Ensure NanoTech*

27  *(Beijing), Inc.*, 108 F.Supp.3d 816, 826-27 (N.D. Cal. 2015) (enforcing confidentiality protections

28  personally against corporate president who started competing business; noting, "it would be plainly

842\3639184.9

- 23 -

1    inequitable" for corporate president to escape personal liability for breach of a contract). Rather,

2    California law treats such related entities as alter egos, each bound by the same obligations and each

3    responsible for the others unlawful conduct. *See SEC v. Rose Fund, LLC*, 2013 WL 1345, at *2 (N.D.

4    Cal. Apr. 2, 2013) (finding alter ego liability when defendant was the sole officer, agent, and

5    signatory for two companies). Consequently, iGov is equally bound by the Partner Agreement, and

6    equally liable as an ex-licensee for infringing the Neo4j® Mark.

7         Even if Suhy and iGov did not operate as PureThink's alter egos, they still cannot claim

8    nominative fair use of the Neo4j® Mark. The PT Defendants cannot establish the first *Toyota* prong

9    because they did not use the Neo4j® Mark to describe Plaintiffs' products. "To qualify for a fair use

10   defense, the use must not 'create an improper association between a mark and a new product' but

11   must, instead, 'merely identify the trademark holder's products.'" *Horphag Research Ltd. v. Garcia*,

12   475 F.3d 1029, 1037–38 (9th Cir. 2007) (internal citation omitted); *accord Playboy Enterprises, Inc.*

13   *v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1030 (9th Cir. 2004). Rather than calling their

14   patchwork version of "Neo4j Enterprise" something else as required by the guidelines, they made the

15   calculated decision to "appropriate the cachet of" the Neo4® Mark to pass off their inferior "Neo4j

16   Enterprise" packages and related support services. *See Horphag*, 475 F.3d at 1038.

17        The evidence is also indisputable that PT Defendants prominently used the Neo4j® Mark on

18   iGov's website far beyond what was reasonably necessary. Indeed, their use of the Neo4j® Mark in

19   iGov's email address and URL address does nothing to comparatively advertise their lesser copies of

20   Neo4j® EE. *See Experience Hendrix, L.L.C. v. Hendrixlicensing.com, Ltd.*, 2010 WL 2104239, at

21   *6 (W.D. Wash. May 19, 2010) (use of plaintiff's HENDRIX mark in defendants' URL addresses

22   and business names does not describe Plaintiffs' product but rather Defendants' own product-the

23   marketing and licensing of Jimi Hendrix related goods). It was also unnecessary as iGov's website

24   contains two far less prominently featured email addresses, "info@igovsol.com" and

25   "support@igovsol.com," at the bottom of various iGov webpages. *See, e.g.,* Ratinoff Decl., Exhs.

26   15, 63-64. Likewise, the only reason for the PT Defendants to use the Neo4j® Mark in one of iGov's

27   URLs is to make it more likely that the web page will be "hit" in a search for "Neo4j" and the higher

28   on the list of "hits" the web page will appear. *See Brookfield*, 174 F.3d at 1045. This is not fair use.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                          - 24 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

Page 150

1   *See id.* at 1066; *see also Experience Hendrix*, 2010 WL 2104239, at *6.

2   Finally, the PT Defendants calling their patched together binaries "Neo4j Enterprise" and

3   bundling of support services as the "Government Package for Neo4j" strongly suggests sponsorship

4   and endorsement by Neo4j USA.  To be sure, they repeatedly assure potential customers both on

5   iGov's website and direct solicitation via email that their version of  "Neo4j Enterprise" was the

6   "same official Neo4j Github Repositories as Neo4j Inc uses for their paid commercial licensed

7   builds" except distributed under an open source license.  *See, e.g.*, Ratinoff Decl., Exhs. 15, 18-19,

8   21.  This would lead any trier of fact to find that a reasonable consumer would assume it is getting

9   official Neo4j® EE for free, when in fact, it is receiving an unlicensed, lesser quality build of that

10  software.  Thus, the Court should grant partial summary judgment in favor of Neo4j USA on its

11  trademark infringement claims based on Defendants' non-ONgDB related use of the Neo4j® Mark.

12  **C.     Defendants Did Not Fairly Use the Neo4j® Mark in Promoting ONgDB**

13  Defendants' extensive use of the Neo4j® Mark in conjunction with marketing ONgDB

14  v3.5.x does not amount to nominative fair use and instead amounts to a concerted effort to

15  "appropriate the cachet of one product for a different one."  *New Kids on the Block*, 971 F.2d at 308-

16  309; *Horphag*, 475 F.3d at 1038.  As an initial matter, ONgDB can be readily identified as "Open

17  Native Graph Database" without use of Neo4j® Mark. *See* Ratinoff Decl., Exh. 31 at 27:17-29:9,

18  178:13-179:25, Exhs. 86, 88.  Nonetheless, Defendants will argue that describing ONgDB as a fork

19  of Neo4j® EE is necessary to explain the origin of ONgDB.  This argument is untenable because

20  they ***extensively*** used the Neo4j® Mark (albeit without proper trademark usage and notices) on their

21  websites, in direct solicitations to customers and on GFI's Github repository far beyond what was

22  reasonably necessary to describe ONgDB as a divergent fork of Neo4j® EE, and most often to

23  impermissibly promote ONgDB.  *See Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, 2019

24  WL 1586776, at *5 (N.D. Cal. Apr. 12, 2019) ("[i]n nominative fair use, the defendant uses the

25  trademarked term not to describe its product but to describe the plaintiff's [product]").

26  As detailed above in Section II.F., GFI initially copied the landing page on Plaintiffs' GitHub

27  repository without any overt reference to ONgDB.  At the time that Plaintiffs filed suit, GFI's ONgDB

28  repository still strongly resembled the landing page for Plaintiffs repository for Neo4j® Software,

842\3639184.9                                          - 25 -

1   and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used

2   "Neo4j" *instead* of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59.  This does not amount

3   to fair use because GFI is using the Neo4j® Mark to refer to and promote ONgDB and not carefully

4   identify Plaintiffs' product.  *See Horphag*, 475 F.3d at 1037-38.

5         The continued use of the Neo4j® Mark on iGov's website as (1) an URL address for a page

6   promoting *ONgDB*; (2) an email address for customers to obtain more information about *ONgDB*;

7   and (3) a hyperlink to redirect consumers to download *ONgDB* also does not qualify as nominative

8   fair use. *See, e.g.,* Ratinoff Decl., Exhs. 62-65, 67-69; Exh. 13 [RFA Nos. 10-11, 14].  This is because

9   they are using the Neo4j® Mark to promote ONgDB and create an improper association with

10  Plaintiffs and that mark.  *See Horphag,* 475 F.3d at 1037–38; *Playboy*, 354 F.3d at 1030; *Experience*

11  *Hendrix*, 2010 WL 2104239, at *6.  This is also far more than what is necessary to simply identify

12  ONgDB as a fork of Neo4j® EE.  *See id.*

13        Likewise, Defendants' (1) conspicuous use of "neo4j," "neo4j enterprise" and "Neo4j

14  Enterprise" without proper trademark notices; (2) use of embedded "Neo4j" links to Neo4j USA's

15  website and GitHub repository; (3) hyperlinking to Plaintiffs' build instructions, support

16  documentation and change logs containing the Neo4j® Mark rather than creating and hosting their

17  own with the ONgDB name; and (4) interchangeable use of "Neo4j Enterprise" and "ONgDB" to

18  promote ONgDB on their websites goes well beyond what is reasonably necessary to identify GFI's

19  ONgDB products as a fork of Neoj4® EE.  *See supra* Sections II.I. and II.J.; *see also* Ratinoff Decl.,

20  Exhs. 37, 57-58, 62-70, 75; Dkt. No. 89, ¶¶ 3-16.  Any reasonable trier of fact would find Defendants'

21  extensive use of the Neo4j® Mark to be the misappropriation of the associated goodwill and imply

22  endorsement by Neo4j USA and confusion over the source of ONgDB.  *See Horphag,* 475 F.3d at

23  1037–38; *Playboy*, 354 F.3d at 1030; *Experience Hendrix*, 2010 WL 2104239, at *6.

24        Perhaps the most *unfair* use of the Neo4j® Mark has been via GFI's Twitter account.  *See*

25  *supra* Section II.K.  It is undisputed that GFI used a hastag, **#Neo4j** that consists of nothing more

26  than the Neo4j® Mark with a "#" before the Mark.  *See, e.g.,* Ratinoff Decl., Exhs. 1, 89-96.  GFI

27  prominently used the Neo4j® Mark as a hashtag to announce its new releases of ONgDB without

28  differentiating ONgDB and Neo4j® EE as separate, competing products: "**#ONgDB (#FOSS#Neo4j**

842\3639184.9

- 26 -

1   Enterprise) 3.5.x support release is out." *See, e.g., id.*, Exhs. 89, 92, 94-95; Exh. 31 at 233:17-236:15,

2   240:12-241:25, 246:5-249:2.   GFI issued a similar tweet that stated "**#ONgDB**, Open **#Neo4j**

3   Enterprise," and in at least one instance tweeted as if ONgDB and Neo4j® EE were the same thing:

4   "Our **#ONgDB/#Neo4j** Enterprise CI server is up and running builds…." *Id.,* Exhs. 91, 93.   In

5   another instance, GFI did not even refer to "Neo4j Enterprise" and simply used **#Neo4j** to promote

6   ONgDB without reference to Neo4j® EE: "Latest **#ONgDB** apoc 3.5.0.8 procedure release is out.

7   https://github.com/graphfoundatio... **#Neo4j.**" *Id.*, Exh. 96.

8         None of these tweets qualify as nominative fair use. *See Align Tech.,* 2019 WL 1586776, at

9   *5 (defendants' use of plaintiffs' mark as hashtags does not qualify as nominative because defendant

10   used the marks to refer to its own product); *see also Downing v. Abercrombie & Fitch*, 265 F.3d 994,

11   1009 (9th Cir. 2001) (defendant was not entitled to the nominative fair use defense when it used a

12   photograph of the plaintiffs in its catalog for the purpose of selling its own goods rather than in order

13   to refer to the plaintiffs for any purpose).   To be sure, GFI ***admitted*** that it intentionally used the

14   Neo4j® Mark as a hashtag "to inform users about ONgDB" and to make it more likely that potential

15   customers would come across ONgDB in conducting searches in relation to Neo4j® EE.   Ratinoff

16   Decl., Exh. 31 at 174:14-176:19, 236:4-11, 237:9-239:7, 242:14-243:21.   It is this exact function of

17   hashtags that does not amount to fair use.   *See Align Tech.*, 2019 WL 1586776, at *7 (recognizing

18   that defendants' use of plaintiff's mark as hashtags was not fair use because it would result in

19   defendants' ads to come up in response to consumer's searches using plaintiffs' mark).

20         GFI's use of the Neo4j® Mark as a hashtag fails the second prong of nominative fair use test

21   because it constitutes use of that mark, more than that which is reasonably necessary to identify GFI's

22   product. *See Align Tech.*, 2019 WL 1586776, at *6 (holding that use of plaintiff's mark in hashtags

23   was not reasonably necessary to identify defendant's product).   To be sure, GFI admitted that it could

24   have referred to "Neo4j Enterprise" without using the Neo4j® Mark as a hashtag to identify the

25   product. *See* Ratinoff Decl., Exh. 31 at 236:4-15.   It also conceded that it could have used a format

26   where it described ONgDB as being a fork of Neo4j® EE rather than simply inserting "#**Neo4j**

27   Enterprise" with "**#ONgDB**." *See id.*, Exh. 31 at 243:23-245:12; Exh. 93.

28         Finally, it cannot be said that GFI did nothing that would suggest sponsorship or endorsement

842\3639184.9                                                       - 27 -

1    by Neo4j USA. Rather, GFI's use of the Neo4j® Mark as hashtag "will inspire a mistaken belief on

2    the part of the consumers that the speaker is *sponsored or endorsed* by the trademark holder." *Toyota*,

3    610 F.3d at 1176 (emphasis added); *see also Public Impact, LLC v. Boston Consulting Group, Inc.*,

4    169 F. Supp. 3d 278, 295 (D. Mass 2016) (use of competitor's mark in social media hashtag "likely"

5    to confuse "even a sophisticated consumer").  As confirmed by GFI, the intended audience for the

6    Neoj4® Mark as a hashtag are users of Neo4j® EE, and as result, there is a strong implied association

7    between Plaintiffs and ONgDB.  *See Align Tech.*, 2019 WL 1586776, at *7.  Accordingly, Defendants

8    have not engaged in the fair use of the Neo4j® Mark on Twitter and have infringed on the Neo4j®

9    Mark by using it as a hashtag.[5]

10   **VI.    NEO4J USA IS ENTITLED TO SUMMARY JUDGMENT ON ITS FALSE
            ADVERTISING AND FALSE DESIGNATION OF ORIGIN CLAIMS**

11

12        **A.    Applicable Legal Standards for False Advertising Claims Under the Lanham
                Act and California's UCL**

13        A false advertising claim under Section 1125(a)(1)(B) of the Lanham Act requires proof that

14   (1) Defendants made a false statement of fact about a product in a commercial advertisement, (2) the

15   statement actually deceives or has the tendency to deceive a substantial segment of its audience, (3)

16   the deception is material, (4) Defendants caused the false statement to enter interstate commerce, and

17   (5) Neo4j USA has been or is likely to be injured as a result of the false statement.  *Southland Sod*

18   *Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).    Similarly, a claim for false

19   designation of origin under Section 1125(a)(1)(A) requires proof that Defendants: (1) used in

20   commerce (2) any word, false designation of origin, false or misleading description, or representation

21   of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation,

22   or the origin of the goods or services in question.  *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F.Supp.3d

23   1156, 1170 (N.D. Cal. 2015).

24        Proof establishing these Lanham Act claims will also establish Neo4j USA's UCL claim.

25   _____

26   [5] While *Toyota* makes clear that the fair use test replaces the *Sleekcraft* for determining trademark
     infringement, some courts have used the latter to assist in determining consumer confusion after

27   finding that a defendant cannot rely upon nominative fair use. *See, e.g., Align Tech.*, 2019 WL
     1586776, at *7.  As detailed *infra* in Section IV.C., these factors favor a finding that consumers are

28   likely to be confused by Defendants' use of the Neo4j® Mark.

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

Page 154

1  *See Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994) (UCL claims are "substantially

2  congruent to claims made under the Lanham Act").  As discussed below, Neo4j USA is entitled to

3  partial summary judgment on its false advertising claims and an injunction to restrain Defendants

4  from further misconduct.  Neo4j USA intends to separately seek to prove-up its actual damages

5  suffered once it obtains discovery from GraphGrid and AtomRain about their support of customers

6  using ONgDB, and also seek trebling of those damages and its attorneys' fees.

7          **B.**     **Defendants' Engaged in False Advertising in the Promotion of ONgDB**

8          Defendants' representations concerning ONgDB constitute commercial advertising or

9  promotion for Lanham Act purposes if they are (1) commercial speech; (2) made in commercial

10 competition with the plaintiff; (3) for the purpose of influencing consumers to buy their goods or

11 services and (4) sufficiently disseminated to the relevant purchasing public. *Coastal Abstract Serv.*

12 *Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).  More informal types of promotion,

13 such as statements made via websites, emails and social media qualify a commercial advertisement.

14 *See Healthport Corp. v. Tanita Corp. of Am.*, 563 F.Supp.2d 1169, 1178 (D. Or. 2008), *aff'd*, 324

15 F.App'x 921 (Fed. Cir. 2009) (holding that statements made on website were advertisements placed

16 into interstate commerce); *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F.Supp.2d 975, 982 (N.D. Cal.

17 2008) (likelihood of success on interstate commerce element met where defendant had disseminated

18 the misleading statement via email and on its website).  To demonstrate falsity of such a

19 representation, Plaintiffs "may show that the statement was literally false, either on its face or by

20 necessary implication, or that the statement was literally true but likely to mislead or confuse

21 consumers." *Southland Sod*, 108 F.3d at 1139.

22         Defendants have made the following misrepresentations in the advertisement and promotion

23 of ONgDB in interstate commerce via their websites and Twitter: (1) "ONgDB distributions are

24 licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial

25 licensed distributions with the same version number" [Ratinoff Decl., Exh. 57]; (2) "ONgDB and

26 Neo4j Enterprise consists of modules from Neo4j Community Edition and modules licensed under

27 the AGPLv3" [*id.*, Exh. 58]; (3) "ONgDB distributions are licensed under AGPLv3 as a free and

28 open source alternative to currently available proprietary native graph offerings such as Neo4j

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                    - 29 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 155**

1   Enterprise Edition" [*id.,* Exhs. 60, 113-114]; (4) "download ONgDB Enterprise as a drop in

2   replacement for an existing commercial licensed distribution of the same version number." [*id.,* Exhs.

3   62-66]; (5) "ONgDB Enterprise is a drop in replacement for Neo4j Enterprise commercial packages

4   downloaded from Neo4j.com" [*id.,* Exhs. 62-66, 71]; (6) "ONgDB Enterprise 3.5.5…. Drop in

5   replacement for Neo4j Core and Enterprise 3.5.5. AGPLv3 Open Source License, no limitations on

6   causal cluster instances, cores, or production usage" [*id.,* Exhs. 67-69; *see also* Exh. 75]; (7) "ONgDB

7   is a drop in replacement for the Neo4j Community and Enterprise branded distributions" [*id.*, Exh.

8   72-74 (green highlight)]; (8) "[ONgDB] is an open source fork of #Neo4j" [*id.*, Exh. 93]; (9) "You

9   can use the ONgDB fork of Neo4j which adds enterprise code back into Neo4j core. It is 100% free

10  and open." [*id.,* Exh. 98; *see also* Exhs. 99-104, 108]. The PT Defendants also misrepresented on

11  iGov's website that "[Neo4j Enterprise] is 100% free and open source" and "Neo4j Enterprise is

12  released only under the standard AGPLv3 open source license that is managed by the free software

13  foundation." *See id.,* Exhs. 67-70; *see also* Exh. 21.

14       It is undisputed that these statements about ONgDB were made in commercial competition

15  with Plaintiffs. Defendants actively encourage actual and potential users of commercially licensed

16  Neo4j® EE to adopt ONgDB for free and pay iGov and GraphGrid for support services instead of

17  Plaintiffs based on such statements. *See* Ratinoff Decl., Exhs. 23, 28-29, 42-55, 76-77, 126, 134-

18  135. These statements are also false on their face or by necessary implication for two reasons.

19       First, ONgDB is neither free, nor open source Neo4j® EE. The Neo4j Sweden Software

20  License did not permit Defendants to remove the commercial restrictions imposed by the Commons

21  Clause and replace that license with a "pure" AGPL. This is confirmed by the plain language of the

22  license. Section 10 states: "You may not impose any further restrictions on the exercise of rights

23  granted or affirmed under this License." Rathle Decl., Exh. 3. Section 7 states: "[i]f the Program as

24  you received it, or any part of it, contains a notice stating that it is governed by this License along

25  with a term that is a further restriction, you may remove that term." *Id*. Importantly, the AGPLv3

26  defines "you" as the licensee, not the licensor. *Id.,* Exh. 3 at § 0 ("Each licensee is addressed as

27  'you'"). Thus, read correctly, Sections 7 and 10 did not prohibit Neo4j Sweden as the copyright

28  holder and *licensor* from adding the Commons Clause. *See* GFI Dkt. No. 88 at 5:23-8:9.

842\3639184.9                                    - 30 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1  Any other reading would nullify the entire purpose of a license agreement by negating Neo4j

2  Sweden's exclusive right to license Neo4j® EE under the terms of its choosing.  *See Apple Inc. v.*

3  *Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011) ("copyright owners may … use their limited

4  monopoly to leverage the right to use their work on the acceptance of specific conditions"); *Jacobsen*

5  *v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008) ("[c]opyright holders who engage in open source

6  licensing have the right to control the modification and distribution of copyrighted material").  To be

7  sure, GFI admitted on GitHub that only the copyright holder may change its license.  *See* Ratinoff

8  Decl.*,* Exh. 35, Exh. 31 at 183:14-184:24; *see also* Exh. 36.  The FSF told Suhy the same and he

9  never obtained a legal opinion before removal. *Id.*, Exh. 34.

10  Second, ONgDB is not a true drop-in replacement for equivalent versions of Neo4j® EE.

11  This is because ONgDB contained source code files that were wrongly licensed under the AGPL in

12  violation of Neo4j Sweden's copyright.  *See Sun Microsystems*, 999 F.Supp. at 1301 (preliminarily

13  enjoining Microsoft from advertising its product as "JAVA Compatible" where Microsoft, in

14  violation of its license agreement with Sun, advertised its product as compatible, even though it failed

15  to meet agreed-upon compatibility standards).  In addition, as detailed in Section II.H., actual and

16  potential users of ONgDB v3.5.x were not getting software that was of the same quality as Neo4j®

17  EE or included all of the same features as Neo4j® EE.  *See* Rathle Decl., ¶¶ 14, 19-22, 29-34. GFI

18  even admitted that it could not describe ONgDB as drop-in replacement after version 3.5.4.  Ratinoff

19  Decl., Exh. 31 at 186:24-188:17, 188:23-189:23.  Yet, the PT Defendants continue to make such false

20  statements for later versions of ONgDB.  This amounts to false advertising.  *See, e.g., EFCO Corp.*

21  *v. Symons Corp.*, 219 F.3d 734 (8th Cir. 2000) (defendant was proven to have falsely claimed that its

22  product was compatible and interchangeable with plaintiff's product); *Creative Labs, Inc. v. Cyrix*

23  *Corp.*, 1997 WL 337553 (N.D. Cal. 1997) (finding that if 2 to 8 percent of products that function

24  properly with plaintiff's product do not function with defendant's claimed "compatible" product, then

25  defendant's claim of compatibility is false).

26  There is also no dispute that these statements have the tendency to deceive potential users of

27  the parties' competing software products and the deception is material because they were

28  intentionally made by Defendants.  *Southland Sod*, 108 F.3d at 1146 ("'[p]ublication of deliberately

842\3639184.9

- 31 -

1  false comparative claims gives rise to a presumption of actual deception and reliance'") (internal

2  (citation omitted).  Likewise, actual deception and reliance are presumed in "false *comparative*

3  advertising cases, where it is reasonable to presume that every dollar defendant makes has come

4  directly out of plaintiff's pocket." *TrafficSchool.com, Inc. v. Edriver, Inc*., 653 F.3d 820, 831 (9th

5  Cir. 2011) (emphasis in original).

6       Here, Defendants made these misrepresentations to convince customers to adopt ONgDB

7  *over* Neo4j® EE.  Since Defendants misrepresented ONgDB as a *free* version of Neo4j® EE licensed

8  under the APGL, there is no doubt that this was material to potential customers.  *See Hinojos v. Kohl's*

9  *Corp*., 718 F.3d 1098, 1106-1107 (9th Cir. 2013) (recognizing under the UCL that price is material

10 to purchasing decisions).  To be sure, customers chose ONgDB over Neo4j® EE for this reason.  *See,*

11 *e.g.,* Ratinoff Decl., Exhs. 47-49, 120 (Next Century); Exh. 53 (Tufin); Exh. 3 at 54:17-55:1, 224:13-

12 23, 227:3-8, Exh. 38 at 23:14-24:4, Exh. 127 (IRS); Exh. 3 at 142:15-144:20 (DHS) *see also* Exh. 31

13 at 197:21-24; Exhs. 100, 114 (14,000 downloads), 134-135.  Defendants' deception is also material

14 to customers' purchasing decisions because chosing ONgDB over Neo4j® EE unknowingly exposes

15 them copyright infringement liability.

16      Finally, it is indisputable that Plaintiffs have been injured as a result of the above false

17 advertisements, and are entitled to injunctive relief.  This is because commercial injury is generally

18 presumed "when defendant and plaintiff are direct competitors and defendant's misrepresentation

19 has a tendency to mislead consumers." *TrafficSchool.com*, 653 F.3d at 826; *see also Lexmark Int'l,*

20 *Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1393 (2014) ("diversion of sales to a direct

21 competitor may be the paradigmatic direct injury from false advertising"); *Southland Sod,* 108 F.3d

22 at 1145–46 ("even if Plaintiffs had failed to raise a triable issue as to causation and injury, their

23 Lanham Act claim would still be viable to the extent it sought an injunction").  Nonetheless, there is

24 undisputed evidence that Defendants' false statements diverted sales from Neo4j USA.  *See, e.g.*,

25 Ratinoff Decl., Exhs. 47-50, 53, 120, 127; Exh. 3 at 53:4-54:25, 224:13-23; Broad Decl., ¶¶ 20-24.

26 Indeed, Neo4j USA lost multi-year deal with Next Century/MPO adopting ONgDB, amounting to

27 over $2.2 million in lost revenue.  Broad Decl., ¶¶ 22-24, Exhs. 12-13.

28      None of the customers that adopted ONgDB over Neoj4® EE could have legally done so but

1    for Defendants' removal of the commercial restrictions imposed by the Neo4j Sweden Software
2    License.  The Court should thus grant partial summary judgment in favor of Neo4j USA on its
3    Lanham Act false advertising claim and mirror California UCL claim.

4         **C.**     **Defendants Engaged in the False Designation of Origin in Promoting ONgDB**

5         The evidence establishing Defendants' statements amounting to false advertising in violation
6    of Section 1125(a)(1)(B) supports the Court granting summary judgment in favor Neo4j USA on its
7    false designation of origin claim under Section 1125(a)(1)(A).  Again, it is indisputable that
8    Defendants' representations concerning ONgDB being free and open source Neo4j® EE under the
9    AGPL were made in commerce and were false and misleading thereby establishing the first two
10   elements.  As for the third, "[t]he test for likelihood of confusion is whether a 'reasonably prudent
11   consumer' in the marketplace is likely to be confused as to the origin of the good or service."
12   *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

13        In order to make this determination, courts will use the *Sleekcraft* factors to assist in the
14   analysis: (1) strength of the mark; (2) relatedness of the goods; (3) similarity of sight, sound and
15   meaning, (4) evidence of actual confusion; (5) marketing channels; (6) type of goods and purchaser
16   care, (7) intent, and (8) likelihood of expansion.  *See Obesity Research Inst., LLC v. Fiber Research*
17   *Int'l, LLC*, 165 F. Supp. 3d 937, 949-50 (S.D. Cal. 2016).  However, [w]here the use of a name or
18   mark is identical to that of the plaintiff on the very same goods and services for which the plaintiff
19   uses the name or mark, that alone can be 'case-dispositive' before a full balancing of the *Sleekcraft*
20   factors." *AECOM Energy & Constr., Inc. v. Ripley*, 348 F.Supp.3d 1038, 1052 (C.D. Cal. 2018).

21        Here, it is undisputed that the Neo4j® Mark is inherently distinctive and Plaintiffs have used
22   it in commerce since 2007, and as a result has gained strong brand recognition via various awards
23   and recognition in the graph database software market (factor 1).  *See* Broad Decl., ¶¶ 2-19, Exhs. 1-
24   11. There is also no dispute concerning the relatedness of the goods and the similarity of sight, sound
25   and meaning because Defendants promote ONgDB ***as being Neo4j® EE*** except that they are free
26   and licensed without restrictions under the AGPL (factors 2-3).  *See Cisco Sys., Inc. v. Shenzhen*
27   *Usource Tech. Co.*, 2020 WL 5199434, at *8 (N.D. Cal. Aug. 17, 2020).  And, Defendants' use of
28   the Neo4j® Mark to promote Plaintiffs' software with an improperly modified copyright license

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 159**

1  shows that they intend to copy them and confuse the public (factor 7).  *See id.*  The undisputed

2  evidence also shows that Defendants have targeted the same customer base via the internet, and in

3  particular the government sector where the PT Defendants bid against Plaintiffs (factors 5 & 8).  *See,*

4  *e.g.,* Ratinoff Decl., Exhs. 14-15, 18, 25, 29, 37, 45-55, 57, 60-61, 65-66, 76-77, 120, 127, 130-132.

5  Finally, as detailed above in Section II.L., there is evidence of actual consumer confusion

6  over ONgGB properly licensed under the AGPL and a true drop-in replacement for official Neo4®

7  EE without the restrictions imposed by the Neo4j Sweden Software License (factor 4).  Accordingly,

8  the Court should also grant summary judgment in favor of Neo4j USA on its false designation of

9  origin claim and enjoin Defendants from engaging in further misconduct.

10 **VII.    PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF**

11  The Lanham Act vests the Court with the "power to grant injunctions according to principles

12  of equity and upon such terms as the court may deem reasonable, to prevent the violation of any

13  right" of the trademark owner.  15 U.S.C. § 1116(a); *see Century 21 Real Estate LLC v. Ed/Var Inc.*,

14  2014 WL 3378278, at *6 (N.D. Cal. July 10, 2014) (issuing a permanent injunction after granting

15  summary judgment on plaintiff's Lanham Act claims); *AECOM*, 348 F. Supp. 3d at 1061-62 (same).

16  To obtain an injunction, a plaintiff must show: "(1) that it has suffered an irreparable injury; (2) that

17  remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

18  (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity

19  is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *La*

20  *Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014).

21  If the Court does not enjoin Defendants, Neo4j USA will suffer irreparable injury from the

22  ongoing damage to its goodwill as a result of their deceptive tactics in marketing ONgDB. S*ee Herb*

23  *Reed Enters., LLC v. Florida Entertainment Management*, 736 F.3d 1239, 1250 (9th Cir. 2013)

24  ("Evidence of loss of control over business reputation and damage to goodwill could constitute

25  irreparable harm"); *Sun Microsystems*, 999 F. Supp. at 1311 ("a plaintiff demonstrates a likelihood

26  of confusion, it is generally presumed that the plaintiff will suffer irreparable injury if injunctive

27  relief is not granted").  As detailed above, there is compelling evidence that Neo4j USA has suffered

28  a loss to control over the Neo4j® brand and associated goodwill as result of Defendants' unauthorized

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9
- 34 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

Page 160

1    "relicensing" of Neoj4® EE under the AGPL and falsely calling ONgDB a free and unrestricted drop-

2    in replacement for official Neo4j® EE.  It is also clear that Defendants will continue to do so unless

3    enjoined by the Court.  Further, the balance of hardships favors Neo4j USA. *See Diller v. Barry*

4    *Driller, Inc.*, 2012 WL 4044732, at *10 (C.D. Cal. Sept. 10, 2012) ("no hardship to cease intentionally

5    infringing someone else's trademark rights"); *Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.,*

6    2014 WL 4679001, at *13 (C.D. Cal. Sept. 18, 2014) ("There is no hardship to a defendant when a

7    permanent injunction would merely require the defendant to comply with law.").

8         Finally, the public interest is served by enjoining Defendant from using the Neo4j® Mark

9    and making false statements about ONgDB being free and open source software under the AGPL.

10   *See Stark v. Diageo Chateau & Estate Wines Co.*, 907 F.Supp.2d 1042, 1067 (N.D. Cal. 2012)

11   ("Preventing consumer confusion serves the public interest"); *accord Cisco Sys*., 2020 WL 5199434,

12   at *9.  Likewise, the public interest favors an injunction because there has been actual confusion. *See*

13   *Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009)

14   ("[t]he public has an interest in avoiding confusion between two companies' products").  It would be

15   further served by preventing Defendants from inducing unsuspecting customers to use improperly

16   licensed software in violation of Neo4j Sweden's copyright.

17   **VIII.   CONCLUSION**

18        For the reasons set forth herein, Plaintiffs respectfully request that the Court (1) grant partial

19   summary judgment in favor of Neo4j USA on its Lanham Act and UCL claims and against

20   Defendants on their nominative fair use defense; (2) enter a permanent injunction as set forth in the

21   proposed order filed herewith; (3) allow for follow-up party and third party discovery related to

22   Neo4j's damages; and (4) schedule further proceedings for Plaintiffs to prove up their damages and/or

23   the disgorgement of Defendants' ill-gotten gains from their infringement.

24   Dated:  December 11, 2020                    HOPKINS & CARLEY
                                                  A Law Corporation
25

26                                               By:  */s/ Jeffrey M. Ratinoff*
                                                      Jeffrey M. Ratinoff
27                                                    Attorneys for Plaintiffs
                                                      NEO4J, INC. and NEO4J SWEDEN AB
28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                        - 35 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

Page 161

**12-11-2020 - DECL OF JEFFREY M. RATINOFF ISO PLAINT SUM JUDGEMENT.pdf**

Filed 12/11/2020

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF PLAINTIFFS'
CONSOLIDATED MOTION FOR SUMMARY JUDGMENT

(Pacer Doc: #98-1)

John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff, Bar No. 197241
jratinoff@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA 95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:    (408) 286-9800
Facsimile:    (408) 998-4790

Attorneys for Plaintiff and Counter-Defendants
NEO4J, INC. and NEO4J SWEDEN AB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,<br><br>                    Plaintiffs,<br><br>        v.<br><br>PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual,<br><br>                    Defendants. | CASE NO.  5:18-cv-07182-EJD<br><br>**DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        March 25, 2021<br>Time:        9:00 a.m.<br>Dept.:       Courtroom 4, 5th Floor<br>Judge:      Hon. Edward J. Davila |
| AND RELATED COUNTERCLAIM. | |
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,<br><br>                    Plaintiffs,<br><br>        v.<br><br>GRAPH FOUNDATION, INC., an Ohio corporation, GRAPHGRID, INC., an Ohio corporation, and ATOMRAIN INC., a Nevada corporation,<br><br>                    Defendants. | CASE NO.  5:19-CV-06226-EJD<br><br><br><br><br><br><br><br><br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639273.4

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT; 5:18-cv-07182-EJD AND 5:19-CV-06226-EJD

**Page 163**

1    I, Jeffrey M. Ratinoff, declare as follows:

2    1.    I am an attorney at law, duly licensed to practice before all courts of the State of

3    California, and am of counsel with Hopkins & Carley, a Law Corporation, attorney of record for

4    Plaintiff Neo4j, Inc. and Neo4j Sweden AB (collectively "Plaintiffs") in the above-captioned

5    matter.  I make this declaration in support of Plaintiffs' Consolidated Motion for Summary

6    Judgment concurrently filed herewith.

7    2.    The facts stated herein are based on my personal knowledge, except with respect

8    to those matters stated to be on information and belief, and as to those matters, I believe them to

9    be true.  If called upon to testify as a witness in this matter, I could and would do so competently.

10    3.    Attached hereto as **Exhibit 1** is a true and correct copy of the Trademark

11    Registration Certificate for the "Neo4j" trademark, Registration No. 4,784,280, dated August 4,

12    2015, which I downloaded from the USPTO's Trademark Status and Document Retrieval (TSDR)

13    system and bears the Bates No. N4J_000001-N4J_000003.

14    4.    Attached hereto as **Exhibit 2** is a true and correct copy of an October 28, 2020

15    capture of PureThink LLC's "About PureThink" webpage, http://purethink.com/company.html,

16    which I downloaded from the Wayback Machine, a digital archive of the World Wide Web

17    (https://web.archive.org) and bears the Bates No. N4J_019932-N4J_019933.

18    5.    Attached hereto as **Exhibit 3** is a true and correct copy of relevant pages from the

19    transcript for the Deposition of PureThink LLC taken on October 22, 2020.

20    6.    Attached hereto as **Exhibit 4** is a true and correct copy of the Neo4j Solution

21    Partner Agreement entered into by Neo4j Inc. and PureThink LLC, signed by John Mark Suhy on

22    behalf of PureThink, which bears the Bates No. N4J_000004- N4J_000008 and was marked as

23    Exhibit 5 during the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at 58:22-59:12; *see also*

24    Exhibit 13 [RFA No. 2].

25    7.    Attached hereto as **Exhibit 5** is a true and correct copy of a July 14, 2015 email

26    sent by John Mark Suhy to David Fauth of Neo4j USA, which was produced by Defendants in

27    this litigation with the Bates No. 00003677.

28    / / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639273.5                                                    - 1 -
DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY
JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 164**

8.     Attached hereto as **Exhibit 6** is a true and correct copy of a July 29, 2015 email sent by John Mark Suhy to Charles Fischer of Neo4j USA, which was produced by Defendants in this litigation with the Bates No. 00001047-00001048.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.  Plaintiffs have designated this email as "Confidential" under the Protective Order as it contains their confidential and proprietary business information.

9.     Attached hereto as **Exhibit 7**, is a true and correct copy of an August 16, 2016 email sent by John Mark Suhy to Ginger Sanfilippo, which was produced by Defendants in this litigation with the Bates No. 00006480-00006483. The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.  Plaintiffs have designated this email as "Confidential" under the Protective Order as it contains their confidential and proprietary business information.

10.     Attached hereto as **Exhibit 8**, is a true and correct copy of a May 12, 2017 email sent by John Mark Suhy to Philip Rathle of Neo4j USA, which was produced by Defendants in this litigation with the Bates No. 00004185-00004185.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

11.     Attached hereto as **Exhibit 9**, is a true and correct copy of a May 30, 2017 letter from Lars Nordwall of Neo4j USA to John Mark Suhy of PureThink LLC, which was produced by Defendants in this litigation during discovery with the Bates No. 000226.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

12.     Attached hereto as **Exhibit 10**, is a true and correct copy of the Articles of Incorporation for iGov Inc., dated June 23, 2017, which was marked as Exhibit 2 during the Rule 30(b)(6) deposition of iGov (*see* Exhibit 3 at 21:20-22:22) and the authenticity was admitted by iGov in response to Neo4j Sweden's Request for Admission No. 2 (*see* Exhibit 13).

13.     Attached hereto as **Exhibit 11**, is a true and correct copy of a March 14-15, 2017 email exchange between John Mark Suhy and John Broad of Neo4j USA, which was produced by Defendants in this litigation with the Bates No. 00004046-00004047. The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

842\3639273.5                                                      - 2 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

14.     Attached hereto as **Exhibit 12**, is a true and correct copy of a July 11, 2017 letter from Lars Nordwall of Neo4j USA to John Mark Suhy of PureThink LLC, which was produced by Defendants in this litigation with the Bates No. 000245.

15.     Attached hereto as **Exhibit 13**, is a true and correct copy of iGov's verified Fourth Amended Response to Neo4j Sweden AB's Request for Admissions, Set One.

16.     Attached hereto as **Exhibit 14**, is a true and correct copy of a November 1, 2017 capture of PureThink LLC's webpage, http://purethink.com/, from the Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org).  This was produced by Defendants in this litigation with the Bates No. 00020015-00020021, and marked as Exhibit 4 to during the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at 47:20-48:8.

17.     Attached hereto as **Exhibit 15**, is a true and correct copy of a printout of iGov's https://igovsol.com/about.html webpage as it existed on January 13, 2018.  This was originally produced by Defendants in this litigation in html format in this litigation on July 1, 2019, and marked as Exhibit 3 to the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at 39:6-40:3.  Its authenticity was also admitted by iGov in response to Neo4j Sweden's Request for Admission No. 28.  *See* Exhibit 13.

18.     Attached hereto as **Exhibit 16**, is a true and correct copy of a printout of iGov's https://igovsol.com/download.html webpage as it existed on January 13, 2018.  This was originally produced by Defendants in this litigation in html format in this litigation on July 1, 2019.  Its authenticity was admitted by iGov in response to Neo4j Sweden's Request for Admission No. 33.  *See* Exhibit 13.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

19.     Attached hereto as **Exhibit 17**, is a true and correct copy of a printout of iGov's https://igovsol.com/neo4j.html webpage as it existed on January 13, 2018.  This was originally produced by Defendants in this litigation in html format in this litigation on July 1, 2019, and marked as Exhibit 11 to the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at 39:6-40:3.  Its authenticity was also admitted by iGov in response to Neo4j Sweden's Request for Admission No. 37.  *See* Exhibit 13.  The portions referenced by and/or that are most relevant to Plaintiffs'

842\3639273.5

- 3 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1    Motion are highlighted.

2        20.    Attached hereto as **Exhibit 18**, is a true and correct copy of a printout of iGov's

3    https://igovsol.com/index.html webpage as it existed on January 13, 2018.  This was originally

4    produced by Defendants in this litigation in html format in this litigation on July 1, 2019. The

5    portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

6        21.    Attached hereto as **Exhibit 19**, is a true and correct copy of a September 8, 2017

7    email sent by John Mark Suhy to Carol Sinnard of the National Geospatial-Intelligence Agency

8    (NGA), which was produced by Defendants in this litigation with the Bates No. 000036000-

9    000036007.

10       22.    Attached hereto as **Exhibit 20**, is a true and correct copy of an November 14, 2017

11   iGov blog entry located at https://blog.igovsol.com/2017/11/14/Neo4j-330-is-out-but-where-are-

12   the-open-source-enterprise-binaries.html, which I printed out on October 2, 2019 and produced in

13   this litigation bearing the Bates No. N4J_018852-N4J_018855.  The portions referenced by

14   and/or that are most relevant to Plaintiffs' Motion are highlighted.

15       23.    Attached hereto as **Exhibit 21**, is a true and correct copy of an August 25, 2018

16   capture of iGov's https://igovsol.com/index.html webpage from the Wayback Machine, a digital

17   archive of the World Wide Web (https://web.archive.org), which I printed out on August 12, 2020

18   and bears Bates No. N4J_018822-N4J_018823.  The portions referenced by and/or that are most

19   relevant to Plaintiffs' Motion are highlighted.

20       24.    Attached hereto as **Exhibit 22**, is a true and correct copy of a March 26, 2018

21   email sent by John Mark Suhy to Benjamin Nussbaum and Brad Nussbaum, which was produced

22   by the PureThink Defendants and bears the Bates No.  IGOV0001570252.  This was also marked

23   as Exhibit 9 during the Rule 30(b)(6) deposition of iGov (*see* Exhibit 3 at 86:20-87:23) and as

24   Exhibit 19 during the Rule 30(b)(6) deposition of GFI (*see* Exhibit 31 at 147:2-23).

25       25.    Attached hereto as **Exhibit 23**, is a true and correct copy of a May 21, 2018 email

26   sent by John Mark Suhy to Benjamin Nussbaum and Brad Nussbaum, which was produced by the

27   PureThink Defendants and bears the Bates No. IGOV0001570192.  This was also marked as

28   Exhibit 10 during the Rule 30(b)(6) deposition of iGov (*see* Exhibit 3 at 92:10-93:1) and as

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639273.5                                          - 4 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 167**

1    Exhibit 4 during the Rule 30(b)(6) deposition of GFI (*see* Exhibit 31 at 30:3-32:25).

2         26.    Attached hereto as **Exhibit 24**, is a true and correct copy of a July 9, 2018 email

3    exchange between John Mark Suhy and Mariano Lopez spanning July 6, 2018 and July 9, 2018,

4    which was produced by the PureThink Defendants on November 19, 2019 and bears the Bates

5    No. IGOV0001573221.0001- IGOV0001573221.0002. The portions referenced by and/or that are

6    most relevant to Plaintiffs' Motion are highlighted.

7         27.    Attached hereto as **Exhibit 25**, is a true and correct copy of an August 10, 2018

8    email from John Mark Suhy to Brian Rodrigue, which was produced by the PureThink

9    Defendants on November 19, 2019  and bears the Bates No. IGOV0001570129. The portions

10   referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

11        28.    Attached hereto as **Exhibit 26**, is a true and correct copy of an August 28, 2018

12   email from John Mark Suhy to A-Sun Truth, which was produced by the PureThink Defendants

13   on November 19, 2019 and bears the Bates No. IGOV0001570120.0001.  The portions referenced

14   by and/or that are most relevant to Plaintiffs' Motion are highlighted.

15        29.    Attached hereto as **Exhibit 27**, is a true and correct copy of a May 2018 email

16   exchange between John Mark Suhy to Philip Rathle (without attachments), which was produced

17   by the PureThink Defendants in this litigation and bears the Bates No. IGOV00000298.0001-

18   IGOV00000298.0006. The portions referenced by and/or that are most relevant to Plaintiffs'

19   Motion are highlighted in yellow. Plaintiffs have designated portions of this email as

20   "Confidential" under the Protective Order, which are highlighted in blue.

21        30.    Attached hereto as **Exhibit 28** is a true and correct copy of a July 2018 email

22   exchange between GFI and Bob Trudeau produced by GFI, and originally forwarded from iGov,

23   which bears the Bates No. GFI000287- GFI000288.  This was also marked as Exhibit 14 during

24   the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 83:22-84:7. GFI designated this document

25   as "Confidential" when originally produced, but subsequently agreed that they did not need to be

26   filed under seal.

27        31.    Attached hereto as **Exhibit 29**, is a true and correct copy of a July 25, 2018 email

28   from John Mark Suhy to Benjamin Nussbaum, which was produced by the PureThink Defendants

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639273.5                                    - 5 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 168**

1  on November 19, 2019 and bears the Bates No. IGOV0001570130.0001-IGOV0001570130.0002.

2  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

3         32.     Attached hereto as **Exhibit 30**, is a true and correct copy of the Articles of

4  Incorporation for Graph Foundation Inc., dated June 22, 2018, which was produced by GFI in this

5  litigation with the Bates No. GFI000001- GFI000004.  This was also marked as Exhibit 3 during

6  the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 24:19-25:22.  GFI designated this

7  document as "Confidential" when originally produced, but subsequently agreed that they did not

8  need to be filed under seal.

9         33.     Attached hereto as **Exhibit 31** is a true and correct copy of pages from the

10  transcript for the Rule 30(b)(6) Deposition of Graph Foundation Inc. taken on October 16, 2020

11  that have been citing in this declaration and/or Plaintiffs' Motion for Summary Judgment.

12         34.     Attached hereto as **Exhibit 32** is a true and correct copy of an email exchange

13  between John Mark Suhy and Donald Robertson occurring between May 19 and May 22, 2018,

14  which was produced by the PureThink Defendants on November 19, 2019 and bears the Bates

15  No. IGOV0001570187.001- IGOV0001570187.002.  This was also marked as Exhibit 22 during

16  the Rule 30(b)(6) deposition of iGov. *See* Exhibit 3 at 169:10-170:3.  The portions referenced by

17  and/or that are most relevant to Plaintiffs' Motion are highlighted.

18         35.     Attached hereto as **Exhibit 33** is a true and correct copy of an email exchange,

19  namely between John Mark Suhy and Benjamin Nussbaum occurring on May 22, 2018, which

20  was produced by the PureThink Defendants on November 19, 2019  and bears the Bates No.

21  IGOV0001570185.001- IGOV0001570185.003.  This was also marked as Exhibit 15 during the

22  Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 97:1-9, 98:24-99:5.

23         36.     Attached hereto as **Exhibit 34** is a true and correct copy of a further email

24  exchange between John Mark Suhy and Donald Robertson occurring between June 20 and August

25  21, 2018, which was produced by the PureThink Defendants on November 19, 2019 and bears the

26  Bates No. IGOV0001570125.001- IGOV0001570125.002.  This was also marked as Exhibit 24

27  during the Rule 30(b)(6) deposition of iGov (Exhibit 3 at 192:18-193:2) and as Exhibit 16 during

28  the Rule 30(b)(6) deposition of GFI (Exhibit 31 at 108:13-109:11).  The portions referenced by

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639273.5

- 6 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

Page 169

1    and/or that are most relevant to Plaintiffs' Motion are highlighted.

2        37.    Attached hereto as **Exhibit 35**, is a true and correct copy of an issue posted on

3    GFI's GitHub repository on February 13, 2019 that I printed out on June 10, 2020, which was

4    produced with the Bates No. N4J_018645 - N4J_018647.  This was also marked as Exhibit 24

5    during the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 183:14-184:24.  The portions

6    referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

7        38.    Attached hereto as **Exhibit 36**, is a true and correct copy of an issue posted on

8    GFI's GitHub repository on June 27, 2019, which I printed out on June 10, 2020 and was

9    produced with the Bates No. N4J_019439- N4J_019443.  The portions referenced by and/or that

10   are most relevant to Plaintiffs' Motion are highlighted.

11       39.    Attached hereto as **Exhibit 37**, is a true and correct copy of a blog post titled "Neo

12   4j  is Open Core – Now What?" posted on GFI's website on January 31, 2019, which I printed out

13   on September 24, 2019 and produced bearing the Bates No. N4J-GFI_000078- N4J-GFI_000085.

14   This document was marked as Exhibit 23 to the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31

15   at 177:10-178:18.  It was attached as Exhibit K to Neo4j Inc.'s First Set of Requests for

16   Admissions and its authenticity was admitted by GFI in response to RFA No. 137.  *See* Exhibits

17   128-129. The portions referenced by and/or that are most relevant to Plaintiffs' Motion are

18   highlighted.

19       40.    Attached hereto as **Exhibit 38**, is a true and correct copy of Defendant iGov Inc.'s

20   Amended Response to Neo4j Sweden AB's Second Set of Interrogatories to iGov Inc. Inc. and

21   John Mark Suhy's verification thereof.

22       41.    Attached hereto as **Exhibit 39**, is a true and correct copy of a printout of a March

23   1, 2019 commit titled "Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf

24   copyright and to be in linse with the AGPL license" by John Mark Suhy to GFI's GitHub

25   repository for ONgDB v3.5, which shows the replacement of the Neo4j Sweden Software License

26   with the AGPLv3.  This document was produced bearing the Bates No. N4J_019041-

27   N4J_019417.

28       42.    Attached hereto as **Exhibit 40**, is a true and correct copy of an email exchange

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639273.5                                                    - 7 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 170**

1    between John Mark Suhy and Joerg Bacch spanning November 9, 2018 and January 18, 2019,

2    which was produced by the PureThink Defendants on November 19, 2019  and bears the Bates

3    No. IGOV0001570039.0001- IGOV0001570039.0002.  This was also marked as Exhibit 28

4    during the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at 213:3-19.

5         43.    Attached hereto as **Exhibit 41** is a true and correct copy of a September 30, 2020

6    capture of GFI's GitHub landing page for the ONgDB repository,

7    https://github.com/graphfoundation/ongdb, which I downloaded from the Wayback Machine, a

8    digital archive of the World Wide Web (https://web.archive.org) and bears the Bates No.

9    N4J_019940-N4J_019944.

10        44.    Attached hereto as **Exhibit 42** is a true and correct copy of an email exchange

11   between John Mark Suhy and Robin Witherspoon of Perspecta Engineering Inc. spanning March

12   12, 2019 and March 26, 2019, which was produced by the PureThink Defendants on November

13   19, 2019, and bears the Bates No. IGOV0001573351.0001- IGOV0001573351.0004.  The

14   portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

15        45.    Attached hereto as **Exhibit 43** is a true and correct copy of two successive emails

16   sent by John Mark Suhy to steins@sec.gov on May 1 and May 7, 2019, which was produced by

17   the PureThink Defendants on November 19, 2019 and bears the Bates No.

18   IGOV0001573343.0001- IGOV0001573343.0003.  The portions referenced by and/or that are

19   most relevant to Plaintiffs' Motion are highlighted.

20        46.    Attached hereto as **Exhibit 44** is a true and correct copy of a May 29, 2019 email

21   exchange between John Mark Suhy and Ken Woo of Northwestern University, which was

22   produced by the PureThink Defendants on November 19, 2019 and bears the Bates No.

23   IGOV0001573337.0001 - IGOV0001573337.0002.  The portions referenced by and/or that are

24   most relevant to Plaintiffs' Motion are highlighted.

25        47.    Attached hereto as **Exhibit 45** is a true and correct copy of a March 29, 2019 email

26   from John Mark Suhy to Patrick Widener of Sandia National Laboratories, which was produced

27   by the PureThink Defendants on November 19, 2019 and bears the Bates No. IGOV0001570021.

28        48.    Attached hereto as **Exhibit 46** is a true and correct copy of an email exchange

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639273.5                                          - 8 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 171**

1   between John Mark Suhy and Colleen Delawder at the US Army's National Ground Intelligence

2   Center (NGIC) spanning August 6 and August 8, 2019, which was produced by the PureThink

3   Defendants on November 19, 2019 and bears the Bates No. IGOV0001573310.0001 -

4   IGOV0001573310.0003.  The portions referenced by and/or that are most relevant to Plaintiffs'

5   Motion are highlighted.

6        49.     Attached hereto as **Exhibit 47** is a true and correct copy of an October 22, 2018

7   email exchange between John Mark Suhy and Shahak Nagiel of Next Century Corp., which was

8   produced by the PureThink Defendants on November 19, 2019  and bears the Bates No.

9   IGOV0001573500.0001 - IGOV0001573500.0002.  The portions referenced by and/or that are

10  most relevant to Plaintiffs' Motion are highlighted.

11       50.     Attached hereto as **Exhibit 48** is a true and correct copy of a February email

12  exchange between Brad Nussbaum and Shahak Nagiel of Next Century Corp., which is a

13  continuation of a prior email exchange between John Mark Suhy and Shahak Nagiel, and

14  produced by GFI with the Bates No. GFI000071-73.  This was also marked as Exhibit 32 during

15  the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 204:23-205:12.  The portions referenced

16  by and/or that are most relevant to Plaintiffs' Motion are highlighted. GFI designated this

17  document as "Confidential" when originally produced, but subsequently agreed that they did not

18  need to be filed under seal.

19       51.     Attached hereto as **Exhibit 49** is a true and correct copy of a February 19, 2019

20  email exchange between Brad Nussbaum and Shahak Nagiel of Next Century Corp., which is a

21  continuation of a prior email exchange between John Mark Suhy and Shahak Nagiel, and

22  produced by GFI with the Bates No. GFI000068-70.  This was also marked as Exhibit 33 during

23  the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 204:23-205:12.  The portions referenced

24  by and/or that are most relevant to Plaintiffs' Motion are highlighted.  GFI designated this

25  document as "Confidential" when originally produced, but subsequently agreed that they did not

26  need to be filed under seal.

27       52.     Attached hereto as **Exhibit 50** is a true and correct copy of the continuation of the

28  February 19, 2019 email exchange between Brad Nussbaum and Shahak Nagiel of Next Century

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639273.5                                    - 9 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 172**

1    Corp, and produced by GFI with the Bates No. GFI000067.  This was also marked as Exhibit 34

2    during the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 218:21-219:11.  GFI designated

3    this document as "Confidential" when originally produced, but subsequently agreed that they did

4    not need to be filed under seal.

5         53.    Attached hereto as **Exhibit 51** is a true and correct copy of the continuation of the

6    February 19, 2019 email exchange between Brad Nussbaum and Shahak Nagiel of Next Century

7    Corp, and produced by GFI foundation with the Bates No. GFI000065.  This was also marked as

8    Exhibit 35 during the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 226:19-227:10. The

9    portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.  GFI

10   designated this document as "Confidential" when originally produced, but subsequently agreed

11   that they did not need to be filed under seal.

12        54.    Attached hereto as **Exhibit 52** is a true and correct copy of a February 11, 2020

13   email exchange between Brad Nussbaum and Michal Komorowski, which was produced by GFI

14   with the Bates No. GFI000114-115.  The portions referenced by and/or that are most relevant to

15   Plaintiffs' Motion are highlighted.  GFI designated this document as "Confidential" when

16   originally produced, but subsequently agreed that they did not need to be filed under seal.

17        55.    Attached hereto as **Exhibit 53** is a true and correct copy of an email exchange

18   between Brad Nussbaum, first from his GFI email account and then from his GraphGrid account,

19   and Michał Komorowski of AdForm, spanning between February 14 and 19, 2019 which was

20   produced by GFI with the Bates No. GFI000116-118.  This was also marked as Exhibit 30 during

21   the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 200:15-202:9.  The portions referenced by

22   and/or that are most relevant to Plaintiffs' Motion are highlighted.  GFI designated this document

23   as "Confidential" when originally produced, but subsequently agreed that they did not need to be

24   filed under seal.

25        56.    Attached hereto as **Exhibit 54** is a true and correct copy of an August 22, 2018

26   email from John Mark Suhy to Lee Smales at the Department of the Air Force, which was

27   produced by the PureThink Defendants on November 19, 2019 and bears the Bates No.

28   IGOV0001573588.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639273.5                          - 10 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 173**

1    are highlighted.

2         57.    Attached hereto as **Exhibit 55** is a true and correct copy of a Global Supply Chain

3    Request for Quotation issued to iGov on February 17, 2020, which was produced by the

4    PureThink Defendants and bears the Bates No. IGOV0002851527.001- IGOV0002851527.005.

5    This was also marked as Exhibit 36 during the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at

6    235:21-236:17. The PureThink Defendants designated this document as "Confidential" under the

7    Protective Order.

8         58.    Attached hereto as **Exhibit 56** is a true and correct copy of an email exchange

9    between John Mark Suhy and Donald Robertson occurring between May 19 and June 20, 2018,

10   which was produced by the PureThink Defendants on November 19, 2019, and bears the Bates

11   No. IGOV0001570157.001- IGOV0001570157.004.  This was also authenticated and marked as

12   Exhibit 15 during the Rule 30(b)(6) deposition of GFI (Exhibit 31 at 157:10-17) and Exhibit 23

13   during the Rule 30(b)(6) deposition of iGov (Exhibit 3 at 189:1-190:6).

14        59.    Attached hereto as **Exhibit 57** is a true and correct copy of a printout of GFI's

15   webpage, https://www.graphfoundation.org/projects/ongdb/ as it appeared on September 24, 2019

16   and was produced by Plaintiffs with the Bates No. N4J-GFI_000092- N4J-GFI_000094.  This

17   was also authenticated and marked as Exhibit 21 during the Rule 30(b)(6) deposition of GFI.  *See*

18   Exhibit 31 at 157:10-17.  The portions referenced by and/or that are most relevant to Plaintiffs'

19   Motion are highlighted.

20        60.    Attached hereto as **Exhibit 58** is a true and correct copy of the landing page for

21   GFI's GitHub repository for ONgDB, https://www.graphfoundation.org/projects/ongdb/ as it

22   existed on September 25, 2019, which I printed out that day and produced by Plaintiffs with the

23   Bates No. N4J-GFI_000297- N4J-GFI_000299.  It was also attached as Exhibit E to Neo4j Inc.'s

24   First Set of Requests for Admissions and its authenticity was admitted by GFI in response to RFA

25   No. 73.  *See* Exhibits 128-129.  The portions referenced by and/or that are most relevant to

26   Plaintiffs' Motion are highlighted.

27        61.    Attached hereto as **Exhibit 59** is a true and correct copy of the landing page for

28   Plaintiffs' GitHub repository for Neo4j® Software, https://github.com/neo4j/neo4j as it existed

842\3639273.5                                                    - 11 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1    on September 26, 2019, which I printed out on that day and produced by Plaintiffs with the Bates

2    No. N4J_019038 - N4J_019040.  The portions referenced by and/or that are most relevant to

3    Plaintiffs' Motion are highlighted.

4         62.     Attached hereto as **Exhibit 60** is a true and correct copy of the landing page for

5    GFI's GitHub repository for ONgDB, https://www.graphfoundation.org/projects/ongdb/ as it

6    existed on November 9, 2020, which I printed out that day and produced by Plaintiffs with the

7    Bates No. N4J_019945-N4J_019948.  The portions referenced by and/or that are most relevant to

8    Plaintiffs' Motion are highlighted.

9         63.     Attached hereto as **Exhibit 61** is a true and correct copy of a January 31, 2019

10   tweet issued from GFI's Twitter account, which I printed out on July 19, 2020 and produced in

11   this litigation with the Bates No. N4J_018667- N4J_018668.  This was authenticated and marked

12   as Exhibit 22 during the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 169:13-170:25.

13        64.     Attached hereto as **Exhibit 62**, is a true and correct copy of an December 4, 2018

14   capture of iGov's https://igovsol.com/neo4j.html webpage from the Wayback Machine, a digital

15   archive of the World Wide Web (https://web.archive.org), which I printed out on August 12, 2020

16   and produced in this litigation bearing the Bates No. N4J_018824 - N4J_018833.  The portions

17   referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

18        65.     Attached hereto as **Exhibit 63**, is a true and correct copy of a capture of iGov's

19   https://igovsol.com/neo4j.html webpage that reveals some embedded html links, which I printed

20   out on October 2, 2019 and was produced bearing the Bates No. N4J_018842-N4J_018851.  This

21   was marked as Exhibit 13 during the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at 114:9-22.

22   This same capture was also produced with the Bates No. N4J_013010 N4J_013019 and its

23   authenticity was admitted by iGov in response to Neo4j Sweden's Request for Admission No. 4.

24   *See* Exhibit 13.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are

25   highlighted.

26        66.     Attached hereto as **Exhibit 64**, is a true and correct copy of a capture of iGov's

27   https://igovsol.com/neo4j.html webpage that reveals some embedded html links, which I printed

28   out on July 27, 2020 and was produced bearing the Bates No. N4J_018892- N4J_018900.  This

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639273.5                                      - 12 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 175**

1    was also marked as Exhibit 14 during the Rule 30(b)(6) deposition of iGov. *See* Exhibit 3 at

2    116:20-118:10.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are

3    highlighted.

4         67.    Attached hereto as **Exhibit 65**, is a true and correct copy of a graphical capture of

5    iGov's https://igovsol.com/neo4j.html webpage, which I printed out on July 27, 2020 and was

6    produced bearing the Bates No. N4J_018901- N4J_018910. The portions referenced by and/or

7    that are most relevant to Plaintiffs' Motion are highlighted.

8         68.    Attached hereto as **Exhibit 66**, is a true and correct copy of an October 22, 2020

9    capture of iGov's https://igovsol.com/graph.html webpage from the Wayback Machine, a digital

10   archive of the World Wide Web (https://web.archive.org), which I printed out on November 11,

11   2020 and bears Bates No. N4J_019949-N4J_019958.  The portions referenced by and/or that are

12   most relevant to Plaintiffs' Motion are highlighted.

13        69.    Attached hereto as **Exhibit 67**, is a true and correct copy of an July 5, 2019

14   capture of iGov's https://igovsol.com/downloads.html webpage from the Wayback Machine, a

15   digital archive of the World Wide Web (https://web.archive.org), which I printed out on

16   November 11, 2020 and bears Bates No. N4J_019959-N4J_019963.  The portions referenced by

17   and/or that are most relevant to Plaintiffs' Motion are highlighted.

18        70.    Attached hereto as **Exhibit 68**, is a true and correct copy of a capture of iGov's

19   https://igovsol.com/downloads.html webpage that reveals some embedded html links, which I

20   printed out on October 2, 2019 and was produced bearing the Bates No. N4J_018836 -

21   N4J_018841.  This same capture was also produced with the Bates No. N4J_013010 N4J_013019

22   and its authenticity was admitted by iGov in response to Neo4j Sweden's Request for Admission

23   No. 10 (Exhibit C thereto). *See* Exhibit 13.  The portions referenced by and/or that are most

24   relevant to Plaintiffs' Motion are highlighted.

25        71.    Attached hereto as **Exhibit 69**, is a true and correct copy of a capture of iGov's

26   https://igovsol.com/downloads.html webpage that reveals some embedded html links, which I

27   printed out on July 27, 2020 and was produced bearing the Bates No. N4J_018884 - N4J_018887.

28   The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639273.5                                - 13 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 176**

72.     Attached hereto as **Exhibit 70**, is a true and correct copy of an October 22, 2020 capture of iGov's https://igovsol.com/downloads.html webpage from the Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org), which I printed out on November 11, 2020, and bears Bates No. N4J_019964-N4J_019967.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

73.     Attached hereto as **Exhibit 71**, is a true and correct copy of an July 5, 2019 capture of iGov's https://igovsol.com/index.html webpage from the Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org), which I printed out on November 11, 2020, and bears Bates No. N4J_019968-N4J_019969.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

74.     Attached hereto as **Exhibit 72**, is a true and correct copy of a capture of iGov's https://igovsol.com/index.html webpage that reveals some embedded html links, which I printed out on October 1, 2019 and was produced bearing the Bates No. N4J_018834-N4J_018835.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

75.     Attached hereto as **Exhibit 73**, is a true and correct copy of a capture of iGov's https://igovsol.com/index.html webpage that reveals some embedded html links, which I printed out on July 27, 2020 and was produced bearing the Bates No. N4J_018890-N4J_018891.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

76.     Attached hereto as **Exhibit 74**, is a true and correct copy of an October 22, 2020 capture of iGov's https://igovsol.com/index.html webpage from the Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org), which I printed out on November 11, 2020, and bears Bates No. N4J_019970-N4J_019971.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

77.     Attached hereto as **Exhibit 75**, is a true and correct copy of an September 13, 2020 capture of iGov's https://graphstack.io/webpage/ from the Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org), which I printed out on October 22, 2020 and bears the Bates No. N4J_018816-N4J_018818.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639273.5                                    - 14 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1    78.    Attached hereto as **Exhibit 76** is a true and correct copy of an email exchange

2 between John Mark Suhy and Jyothi Viswanadham at Daytona Technologies Ltd. between March

3 8 and March 10, 2019, which was produced by the PureThink Defendants on November 19, 2019

4 and bears the Bates No. IGOV0001573375.0001 - IGOV0001573375.0002.  The portions

5 referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

6    79.    Attached hereto as **Exhibit 77** is a true and correct copy of a January 25, 2019

7 email from John Mark Suhy to Ron Turner of XpressRules, which was produced by the

8 PureThink Defendants on November 19, 2019, and bears the Bates No. IGOV0001573421.  The

9 portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

10    80.    Attached hereto as **Exhibit 78** is a true and correct copy of a January 10, 2019

11 capture of Neo4j's https://neo4j.com/docs/developer-manual/3.4/ webpage from the Wayback

12 Machine, a digital archive of the World Wide Web (https://web.archive.org), which I printed out

13 on October 13, 2020, and was produced with the Bates No. N4J_019917.

14    81.    Attached hereto to **Exhibit 79** is a true and correct copy of Neo4j USA's

15 https://neo4j.com/docs/developer-manual/3.4/ webpage that I printed out on October 13, 2020,

16 and was produced with the Bates No. N4J_019916.

17    82.    Attached hereto as **Exhibit 80** is a true and correct copy of a January 10, 2019

18 capture of Neo4j USA's https://neo4j.com/docs/operations-manual/3.4/ webpage from the

19 Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org), which I

20 printed out on October 13, 2020 and was produced with the Bates No. N4J_019934-N4J_019935.

21    83.    Attached hereto as **Exhibit 81** is a true and correct copy of Neo4j USA's

22 https://neo4j.com/docs/operations-manual/3.4/ webpage that I printed out on October 13, 2020

23 and was produced with the Bates No. N4J_019910-N4J_019911.

24    84.    Attached hereto as **Exhibit 82** is a true and correct copy of an August 20, 2019

25 capture of Neo4j USA's https://neo4j.com/docs/operations-manual/3.5/ webpage from the

26 Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org), which I

27 printed out on October 13, 2020 and was produced with the Bates No. N4J_019932-N4J_019933.

28    85.    Attached hereto as **Exhibit 83** is a true and correct copy of Neo4j USA's

842\3639273.5                                              - 15 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1   https://neo4j.com/docs/operations-manual/3.5/ webpage that I printed out on October 13, 2020

2   and was produced with the Bates No. N4J_019906-N4J_019907.

3         86.     Attached hereto as **Exhibit 84** is a true and correct copy of a September 30, 2020

4   capture of GFI's ONgDB 3.5 Changelog located at

5   https://github.com/graphfoundation/ongdb/wiki/ONgDB-3.5-Changelog, which I downloaded

6   from the Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org),

7   bearing Bates No. N4J_019972-N4J_019973.

8         87.     Attached hereto as **Exhibit 85** is a true and correct copy of an August 20, 2019

9   capture of Neo4j USA's https://neo4j.com/docs/license/ webpage from the Wayback Machine, a

10   digital archive of the World Wide Web (https://web.archive.org), which I printed out on October

11   13, 2020.  This was also authenticated and marked as Exhibit 46 during the Rule 30(b)(6)

12   deposition of GFI.  *See* Exhibit 31 at 286:2-.287:16.

13         88.     Attached hereto as **Exhibit 86** is a true and correct copy of an October 25, 2018,

14   tweet issued from GFI's Twitter account, which I printed out on November 12, 2020, and bears

15   Bates No. N4J_019976-N4J_019976.

16         89.     Attached hereto as **Exhibit 87** is a true and correct copy of a series of November

17   17, 2018 tweets issued from GFI's Twitter account, which I printed out on May 20, 2020 and was

18   produced with the Bates No. N4J_018661- N4J_018662.  This was also authenticated and marked

19   as Exhibit 18 during the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 137:10-138:1.

20         90.     Attached hereto as **Exhibit 88** is a true and correct copy of a January 23, 2019,

21   tweet issued from GFI's Twitter account, which I printed out on May 20, 2020 and was produced

22   with the Bates No. N4J_018663.

23         91.     Attached hereto as **Exhibit 89** is a true and correct copy of a March 17, 2019 tweet

24   issued from GFI's Twitter account, which I printed out on August 13, 2020 and was produced

25   with the Bates No. N4J_018664.  This was also authenticated and marked as Exhibit 38 during

26   the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 233:11-24.

27         92.     Attached hereto as **Exhibit 90** is a true and correct copy of a March 21, 2019 tweet

28   issued from GFI's Twitter account, which I printed out on November 5, 2020, and bears Bates

842\3639273.5

- 16 -

1    No. N4J_019977-N4J_019977.

2          93.    Attached hereto as **Exhibit 91** is a true and correct copy of a March 21, 2019 tweet

3    issued from GFI's Twitter account, which I printed out on August 13, 2020 and was produced

4    with the Bates No. N4J_018665.

5          94.    Attached hereto as **Exhibit 92** is a true and correct copy of a May 10, 2019 tweet

6    issued from GFI's Twitter account, which I printed out on August 13, 2020 and was produced

7    with the Bates No. N4J_018666.  This was also authenticated and marked as Exhibit 39 during

8    the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 240:12-24.

9          95.    Attached hereto as **Exhibit 93** is a true and correct copy of an October 9, 2019

10   tweet issued from GFI's Twitter account, which I printed out on October 13, 2020 and was

11   produced with the Bates No. N4J_019695.  This was also authenticated and marked as Exhibit 40

12   during the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 243:23-244:14.

13         96.    Attached hereto as **Exhibit 94** is a true and correct copy of a November 27, 2019

14   tweet issued from GFI's Twitter account, which I printed out on August 13, 2020 and was

15   produced with the Bates No. N4J_018671.  This was also authenticated and marked as Exhibit 41

16   during the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 245:13-246:4.

17         97.    Attached hereto as **Exhibit 95** is a true and correct copy of a January 18, 2020

18   tweet issued from GFI's Twitter account, which I printed out on August 13, 2020 and was

19   produced with the Bates No. N4J_018672.  This was also authenticated and marked as Exhibit 42

20   during the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 247:23-248:4.

21         98.    Attached hereto as **Exhibit 96** is a true and correct copy of a May 19, 2020 tweet

22   issued from GFI's Twitter account, which I printed out on August 13, 2020 and was produced

23   with the Bates No. N4J_018673.  This was also authenticated and marked as Exhibit 43 during

24   the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 249:9-249:20.

25         99.    Attached hereto as **Exhibit 97** is a true and correct copy of is a true and correct

26   copy of a September 25, 2019 tweet issued from John Mark Suhy's Twitter account in response to

27   several other tweets, which I printed out on October 19, 2020.  This was also authenticated and

28   marked as Exhibit 37 during the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at 246:5-12.

842\3639273.5                                          - 17 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted

100.   Attached hereto as **Exhibit 98** is a true and correct copy of is a true and correct copy of a December 5, 2019 tweet issued from John Mark Suhy's Twitter account in response to several other tweets, which I printed out on May 18, 2020 and was produced with the Bates No. N4J_018946- N4J_018948.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

101.   Attached hereto as **Exhibit 99** is a true and correct copy of is a true and correct copy of a December 15, 2019 tweet issued from John Mark Suhy's Twitter account in response to several other tweets, which I printed out on May 19, 2020 and was produced with the Bates No. N4J_018949- N4J_018950.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

102.   Attached hereto as **Exhibit 100** is a true and correct copy of is a true and correct copy of a January 10, 2020 tweet issued from John Mark Suhy's Twitter account in response to another tweet, which I printed out on October 19, 2020.  This was also authenticated and marked as Exhibit 39 during the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at 250:1-24.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

103.   Attached hereto as **Exhibit 101** is a true and correct copy of is a true and correct copy of January 24, 2020 tweets and a January 29, 2020 tweet issued from John Mark Suhy's Twitter account, which I printed out on October 19, 2020.  This was also authenticated and marked as Exhibit 38 during the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at 248:9-249:16.

104.   Attached hereto as **Exhibit 102** is a true and correct copy of is a true and correct copy of an April 2, 2020 tweet issued from John Mark Suhy's Twitter account in response to several other tweets, which I printed out on May 20, 2020 and was produced with the Bates No. N4J_018989-N4J_018990. The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

105.   Attached hereto as **Exhibit 103** is a true and correct copy of is a true and correct copy of two August 22, 2020 tweets issued from John Mark Suhy's Twitter account in response to several other tweets, which I printed out on August 22, 2020 and was produced with the Bates

1   No. N4J_019019-N4J_019020. The portions referenced by and/or that are most relevant to

2   Plaintiffs' Motion are highlighted.

3       106.    Attached hereto as **Exhibit 104** is a true and correct copy of is a true and correct

4   copy of a February 23, 2019 tweet issued from John Mark Suhy's Twitter account in response to

5   several other tweets, which I printed out on October 2, 2019 and was produced with the Bates No.

6   N4J_018927.

7       107.    Attached hereto as **Exhibit 105** is a true and correct copy of a January 23, 2019,

8   tweet issued from GFI's Twitter account that appeared in John Mark Suhy's twitter feed as being

9   retweeted (highlighted for reference), which I printed out on July 19, 2020 and was produced with

10  the Bates No. N4J_018921-N4J_018922.

11      108.    Attached hereto as **Exhibit 106** is a true and correct copy of a January 31, 2019,

12  tweet issued from GFI's Twitter account that appeared in John Mark Suhy's twitter feed as being

13  retweeted (highlighted for reference), which I printed out on July 19, 2020 and was produced with

14  the Bates No. N4J_018923-N4J_018924.

15      109.    Attached hereto as **Exhibit 107** is a true and correct copy of a March 17, 2019,

16  tweet issued from GFI's Twitter account that appeared in John Mark Suhy's twitter feed as being

17  retweeted (highlighted for reference), which I printed out on July 19, 2020 and was produced with

18  the Bates No. N4J_018928-N4J_018929. The portions referenced by and/or that are most relevant

19  to Plaintiffs' Motion are highlighted.

20      110.    Attached hereto as **Exhibit 108** is a true and correct copy of a March 21, 2019,

21  tweet issued from GFI's Twitter account that appeared in John Mark Suhy's twitter feed as being

22  retweeted (highlighted for reference), which I printed out on July 19, 2020 and was produced with

23  the Bates No. N4J_018930-N4J_018931.

24      111.    Attached hereto as **Exhibit 109** is a true and correct copy of a May 10, 2019, tweet

25  issued from GFI's Twitter account that appeared in John Mark Suhy's twitter feed as being

26  retweeted (highlighted for reference), which I printed out on July 19, 2020 and was produced with

27  the Bates No. N4J_018934-N4J_018935.

28      112.    Attached hereto as **Exhibit 110** is a true and correct copy of a November 27, 2019,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639273.5                                       - 19 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 182**

tweet issued from GFI's Twitter account that appeared in John Mark Suhy's twitter feed as being

retweeted (highlighted for reference), which I printed out on July 19, 2020 and was produced with

the Bates No. N4J_018942-N4J_018943.

113.    Attached hereto as **Exhibit 111** is a true and correct copy of a January 18, 2020,

tweet issued from GFI's Twitter account that appeared in John Mark Suhy's twitter feed as being

retweeted (highlighted for reference), which I printed out on July 19, 2020 and was produced with

the Bates No. N4J_018965-N4J_018966.

114.    Attached hereto as **Exhibit 112** is a true and correct copy of a printout GFI's

webpage https://www.graphfoundation.org/1000th-ongdb-open-neo4j-enterprise-3-5-download-

iequoh3ja/ as it appeared on September 25, 2019 that I printed out and was produced by Plaintiffs

with the Bates No. N4J_018701-N4J_018703.

115.    Attached hereto as **Exhibit 113** is a true and correct copy of a printout of GFI's

webpage https://www.graphfoundation.org/projects/ongdb/ as it appeared on June 10, 2020 that I

printed out and was produced by Plaintiffs with the Bates No. N4J_018732-N4J_018736.  This

was also authenticated and marked as Exhibit 26 during the Rule 30(b)(6) deposition of GFI.  *See*

Exhibit 31 at 190:2-16.

116.    Attached hereto as **Exhibit 114** is a true and correct copy of a printout of GFI's

webpage https://www.graphfoundation.org/projects/ongdb/ as it appeared on December 9, 2020

that I printed out and bears the Bates No. N4J_019978-N4J_019981.  The portions referenced by

and/or that are most relevant to Plaintiffs' Motion are highlighted.

117.    Attached hereto as **Exhibit 115** is a true and correct copy of a printout of an issued

raised on the Neo4j Online Community, which can be found at

https://community.neo4j.com/t/neo4j-desktop-vs-neo4j-server/3066/ via Neo4j USA's webpage

https://community.neo4j.com/, which I printed out on September 13, 2019 and was produced by

Plaintiffs with the Bates No. N4J-GFI_000008-N4J-GFI_000009.  This was also authenticated

and marked as Exhibit 36 during the Rule 30(b)(6) deposition of GFI (*see* Exhibit 31 at 229:1-7,

229:23-232:4 and Exhibit 116) and as Exhibit 27 during the Rule 30(b)(6) deposition of iGov (*see*

Exhibit 3 at 208:14-209:6).

842\3639273.5                                         - 20 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

118. Attached hereto as **Exhibit 116** is a true and correct copy of a January 9, 2019 email exchange between John Mark Suhy and Benjamin Nussbaum, copying Brad Nussbaum, which was produced by Defendants in this litigation and bears the Bates No. IGOV0001570054. This email exchange contains the url address, https://community.neo4j.com/t/neo4j-desktop-vs-neo4j-server/3066, that matches Exhibit 115 hereto. This was also authenticated and marked as Exhibit 37 during the Rule 30(b)(6) deposition of GFI (*see* Exhibit 31 at 229:1-7, 229:23-232:4 and Exhibit 116) and as Exhibit 26 during the Rule 30(b)(6) deposition of iGov (*see* Exhibit 3 at 207:7-209:6).

119. Attached hereto as **Exhibit 117**, is a true and correct copy of Issue #11821 opened on May 19, 2018 on Plaintiffs GitHub repository, https://github.com/neo4j/neo4j/issues/11821 , by John Mark Suhy, which I printed out on June 10, 2020 and was produced with the Bates No. N4J_01944-N4J_019452. This was also authenticated and marked as Exhibit 25 during the Rule 30(b)(6) deposition of iGov. *See* Exhibit 3 at 201:18-203:3. The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

120. Attached hereto as **Exhibit 118** is a true and correct copy of a continued July 2018 email exchange between GFI and Bob Trudeau produced by GFI bearing the Bates No. GFI000284-286. *See* Exhibit 28; s*ee also* Exhibit 31 at 83:22-84:7. GFI designated this document as "Confidential" when originally produced, but subsequently agreed that they did not need to be filed under seal.

121. Attached hereto as **Exhibit 119**, is a true and correct copy of a July 9, 2018 email exchange between John Mark Suhy, and Lewis Lu and Keshav Nagpal of Gravity iLabs spanning December 4 and 5, 2018, which was produced by the PureThink Defendants on November 19, 2019 and bears the Bates No. IGOV0001573440.0001- IGOV0001573440.0002. The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

122. Attached hereto as **Exhibit 120** is a true and correct copy of a January 22, 2020 email from Michael Smolyak of Next Century Corp., copying John Mark Suhy and Shahak Nagiel, and produced by GFI with the Bates No. GFI000047. This was also marked as Exhibit 28 during the Rule 30(b)(6) deposition of GFI. *See* Exhibit 31 at 198:3-198:24. GFI designated this

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639273.5                                                      - 21 -
DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 184**

(147 of 299), Page 147 of 209
Case: 24-5538, 12/23/2024, DktEntry: 18.3, Page 147 of 299
Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 23 of 1198

1   document as "Confidential" when originally produced, but subsequently agreed that they did not

2   need to be filed under seal..

3       123.    Attached hereto as **Exhibit 121** is a true and correct copy of a question posted on

4   Stack Overflow, https://stackoverflow.com/company, a self-described "public platform [that] is

5   used by nearly everyone who codes to learn, share their knowledge, collaborate, and build their

6   careers," at https://stackoverflow.com/questions/54740366/unable-to-connect-to-neo4j-ongdb-

7   browser-when-port-forwarding as it appeared on September 26, 2019 and was produced by

8   Plaintiffs with the Bates No. N4J_019552.

9       124.    Attached hereto as **Exhibit 122** is a true and correct copy of a question posted on

10  Stack Overflow, https://stackoverflow.com/company, a self-described "public platform [that] is

11  used by nearly everyone who codes to learn, share their knowledge, collaborate, and build their

12  careers," at https://stackoverflow.com/questions/61497333/ongdb-neo4j-not-starting-up as it

13  appeared on June 10, 2020 and was produced by Plaintiffs with the Bates No. N4J_019553.

14      125.    Attached hereto as **Exhibit 123** is a true and correct copy of a question posted on

15  Stack Overflow, https://stackoverflow.com/company, a self-described "public platform [that] is

16  used by nearly everyone who codes to learn, share their knowledge, collaborate, and build their

17  careers," at https://stackoverflow.com/questions/54802647/gremlin-server-not-starting-with-

18  ongdb as it appeared on September 26, 2019 and was produced by Plaintiffs with the Bates No.

19  N4J_019544- N4J_019546.  This has also been captured by the Wayback Machine at

20  https://web.archive.org/web/20190515022009/https://stackoverflow.com/questions/54802647/gre

21  mlin-server-not-starting-with-ongdb.

22      126.    Attached hereto as **Exhibit 124** is a true and correct copy of a question posted on

23  Stack Overflow, https://stackoverflow.com/company, a self-described "public platform [that] is

24  used by nearly everyone who codes to learn, share their knowledge, collaborate, and build their

25  careers," at https://stackoverflow.com/questions/54224244/loading-large-cypher-file-in-neo4j as

26  it appeared on September 13, 2020 and was produced by Plaintiffs with the Bates No.

27  N4J_019550.

28      127.    Attached hereto as **Exhibit 125**, is a true and correct copy of Issue #4 opened on

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639273.5                                   - 22 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 185**

May 26, 2019 on GFI's GitHub repository, https://github.com/graphfoundation/ongdb/issues/4, by John Mark Suhy, which I printed out on November 11, 2020 and bears the Bates No. N4J_0199812-N4J_019983.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

128.    Attached hereto as **Exhibit 126** is a true and correct copy of a February 19, 2020 email exchange between John Mark Suhy and Keoni Gasparat of Neo4j, which was produced by the PureThink Defendants and bears the Bates No. IGOV0002851597.0001 - IGOV0002851597.0003. Plaintiffs and the PureThink Defendants have designated this email as "Confidential" under the Protective Order.

129.    Attached hereto as **Exhibit 127** is a true and correct copy of an August 2018 email email exchange between John Mark Suhy and Michael Dunn of the Internal Revenue Service, copying Linkavan Manoharan, Lisa Rosenmerkel and GuoqingWeng, which was produced by the PureThink Defendants on November 19, 2019, and bears the Bates No. IGOV0001573217.0001 - IGOV0001573217.0003

130.    Attached hereto as **Exhibit 128**, is a true and correct copy of Plaintiff Neo4j, Inc.'s Request for Admission, Set One, to Defendant Graph Foundation, Inc.

131.    Attached hereto as **Exhibit 129**, is a true and correct copy of Graph Foundation, Inc.'s Supplemental Objections and Responses to Neo4j, Inc.'s First Set of Requests For Admission.

132.    Attached hereto as **Exhibit 130** is a true and correct copy of a July 3, 2018 email from John Mark Suhy (without attachment), which was produced by the PureThink Defendants as "email-20" and designated by them as Confidential under the Protective Order.

133.    Attached hereto as **Exhibit 131** is a true and correct copy of a February 17, 2020 email to John Mark Suhy and one of the referenced attachments, T001 Request for Quotation Template.docx, which was produced by the PureThink Defendants as "email-11" and designated by them as Confidential under the Protective Order.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

134.    Attached hereto as **Exhibit 132** is a true and correct copy of a February 19-20,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639273.5                                    - 23 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**Page 186**

1   2020 email exchange and the referenced attachment, Outward-Pricing-Breakdown-NGC-v1.pdf,

2   which was produced by the PureThink Defendants and designated by them as Confidential under

3   the Protective Order.

4        135.    Attached hereto as **Exhibit 133** is a true and correct copy of a January 23-24, 2020

5   email exchange, which was produced by the PureThink Defendants with the Bates No. 06-2020-

6   000044 and designated by them as Confidential under the Protective Order. The portions

7   referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

8        136.    Attached hereto as **Exhibit 134** is a true and correct copy of an April 9-10, 2020

9   email exchange, which was produced by the PureThink Defendants with the Bates No. 06-2020-

10  000047-06-2020-000049 and designated by them as Confidential under the Protective Order. The

11  portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

12       137.    Attached hereto as **Exhibit 135** is a true and correct copy of a May 4-5, 2020

13  email exchange, which was produced by the PureThink Defendants with the Bates No. 06-2020-

14  000050-06-2020-000053 and designated by them as Confidential under the Protective Order.  The

15  portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

16       I declare under penalty of perjury under the laws of the United States of America that the

17  foregoing is true and correct, and that this declaration was executed on this 11th day of December

18  2020, at San Jose, California.

19

20                    */s/ Jeffrey M. Ratinoff*

21                    Jeffrey M. Ratinoff

22

23

24

25

26

27

28

842\3639273.5

- 24 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

# EXHIBIT 1

# United States of America
## United States Patent and Trademark Office

# NEO4J

**Reg. No. 4,784,280**

**Registered Aug. 4, 2015**

**Int. Cls.: 9, 35, 41, 42 and 45**

**TRADEMARK**

**SERVICE MARK**

**PRINCIPAL REGISTER**

NEO TECHNOLOGY (DELAWARE CORPORATION)
111 E. 5TH AVE.
SAN MATEO, CA 94401

FOR: COMPUTER PROGRAMS FOR MANAGING, STORING, AND ACCESSING DATA FROM A DATABASE, ANALYZING DATA IN COMPUTER DATABASES FOR BUSINESS PURPOSES, PROCESSING IN THE NATURE OF UPDATING DATA IN COMPUTER DATABASES, AND VISUALIZING IN THE NATURE OF CREATING GRAPHS FROM DATA STORED IN DATABASES; COMPUTER PROGRAMS FOR STORING, MANAGING, AND QUERYING DATA FROM DATABASES ON COMPUTERS, COMPUTER NETWORKS, AND GLOBAL COMPUTER NETWORKS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 6-4-2006; IN COMMERCE 5-28-2007.

FOR: CONSULTING SERVICES AND ADVICE IN THE FIELD OF UPDATING AND MAIN- TENANCE OF DATA IN COMPUTER DATABASES , IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 6-4-2006; IN COMMERCE 5-28-2007.

FOR: EDUCATIONAL SERVICES, NAMELY, CONDUCTING TRAINING CLASSES, CERTI- FICATION TRAINING, WORKSHOPS, TUTORIAL SESSIONS, AND ONLINE CLASSES IN THE FIELDS OF DESIGNING COMPUTER DATABASES AND UPDATING AND MAINTEN- ANCE OF DATA IN COMPUTER DATABASES, AND DISTRIBUTING COURSE MATERIALS IN CONNECTION THEREWITH; PROVIDING TRAINING SERVICES IN THE FIELDS OF DESIGNING COMPUTER DATABASES AND UPDATING AND MAINTENANCE OF DATA IN COMPUTER DATABASES, AND DISTRIBUTING COURSE MATERIALS IN CONNECTION THEREWITH, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 6-4-2006; IN COMMERCE 5-28-2007.

FOR: PROVIDING A WEB SITE FEATURING TECHNOLOGY THAT ENABLES END USERS TO STORE, MANAGE, AND QUERY DATA FROM DATABASES ON COMPUTERS, COM- PUTER NETWORKS, AND GLOBAL COMPUTER NETWORKS; CLOUD COMPUTING FEATURING SOFTWARE FOR USE IN MANAGING, STORING, AND ACCESSING DATA FROM A DATABASE, ANALYZING DATA IN COMPUTER DATABASES FOR BUSINESS PURPOSES, PROCESSING IN THE NATURE OF UPDATING DATA IN COMPUTER



*Michelle K. Lee*

Director of the United States
Patent and Trademark Office

**Reg. No. 4,784,280**   DATABASES, AND VISUALIZING IN THE NATURE OF CREATING GRAPHS FROM DATA STORED IN DATABASES; TECHNICAL SUPPORT SERVICES, NAMELY, INSTALLATION, ADMINISTRATION, AND TROUBLESHOOTING OF DATABASE APPLICATIONS; COMPUTER SERVICES, NAMELY, PROVIDING CONSULTATION SERVICES AND ADVICE IN THE FIELDS OF DESIGNING COMPUTER DATABASES, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 6-4-2006; IN COMMERCE 5-28-2007.

FOR: CONSULTING SERVICES AND ADVICE IN THE FIELD OF MAINTAINING THE SECURITY AND INTEGRITY OF DATABASES, IN CLASS 45 (U.S. CLS. 100 AND 101).

FIRST USE 6-4-2006; IN COMMERCE 5-28-2007.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 86-267,006, FILED 4-30-2014.

SIMON TENG, EXAMINING ATTORNEY

Page: 2 / RN # 4,784,280

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an
> Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office
(USPTO). The time periods for filing are based on the U.S. registration date (not the international registration
date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to
those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international
registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the
underlying international registration at the International Bureau of the World Intellectual Property Organization,
under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated
from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal
forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the
USPTO website for further information. With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark
owners/holders who authorize e-mail communication and maintain a current e-mail address with the
USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark
Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms
available at** http://www.uspto.gov.

Page: 3 / RN # 4,784,280

Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 30 of 1198

# EXHIBIT 2

(155 of 299), Page 155 of 299
Case: 24-5538, 12/23/2024, DktEntry: 18.3, Page 155 of 299
Case 5:16-cv-07182-EJD   Document 98-1   Filed 12/19/20   Page 21 of 1108



Call Us: 703-348-3968   | Contact Us

HOME    CAPABILITIES    CONSULTING    COMPANY

## About PureThink

PureThink is a software and information technology services company focusing on government consulting / contracting. Our team is experienced and innovative and this reflects on the overall quality of our products and services.

| About Us | NAICS & SIC Codes | |
|----------|-------------------|---|

## Philosophy

To help you succeed, we believe in working closely and cooperatively. Our goal is to ensure everyone on the same page regarding project status, methods and tasks. Our approach is to develop software according to an Agile methodology which means we emphasize people and interaction rather than complicated processes and endless documentation.

PureThink provides strategic consulting, business systems development and integration, technology solutions, and managed services to federal government agencies, Non Profits and commercial companies. We collaboratively help our clients achieve results by identifying mission critical issues and implementing innovative and customized solutions that achieve create value and desired business results - productivity, speed, margins, technology and relationships. Over the years, we have earned a solid reputation for combining our strategic consulting, technology, functional and vertical market expertise and innovative delivery model into practical solutions that deliver results. Our flexible yet structured approach and integrated methodologies enable us to structure engagements to best meet our clients' specific needs. In short, we do what it takes to get the job done - on time and on budget.

## Results

## Contact

#### Main Office
1902 Campus Commons Drive
Suite 101
Reston, VA 20191

Phone: 703-348-3968

Email: info@purethink.com.

N4J_019932

Our mission is to bring the greatest value to our clients globally by leveraging our considerable depth of resources and experience. We align our approach to the specific business drivers of each business we work with. We tailor solutions to best suit different cultural environments, industries, and market conditions. We focus on business strategy implementation, not business strategy development.

## Distinguishers

* Past performance in Federal, DOD, and commercial spaces (from small to enterprise) .
* Our management team is comprised of highly experienced technology professionals.
* No off-shoring : our resources are all located in the USA.
* Extensive domain knowledge, adaptability, and experience in emerging technologies, methodologies and processes.
* Security focused. All of our software development professionals must go through security training. We were 2011 RSA speakers on security in the cloud.
* Our company is profitable with zero debt.
* Our core team has been working together for over 10 years.

# EXHIBIT 3

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 34 of 1198

# EXHIBIT 4

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0

**neotechnology** graphs are everywhere

# NEO4J SOLUTION PARTNER AGREEMENT

| Partner: | PureThink LLC | | Neo Representative: | Erik Nolten;<br>erik.nolten@neotechnology.com<br>Phone: +31 652 721 808 |
|---|---|---|---|---|
| Address: | 4202 Adrienne Dr | | Address: | Neo Technology, Inc.<br>111 East 5th Avenue<br>San Mateo, CA 94401 |
| Contact Name: | John Mark Suhy Jr | | Phone: | 1-855-636-4532 |
| Contact Phone: | 703-348-3968 x 101 | | Web: | www.neotechnology.com |
| Contact Email: | jmsuhy@purethink.com | | E-mail: | accounting@neotechnology.com |
| | | | | |
| Support contact 1 | | | Support contact 2 | |
| Name: | John Mark Suhy | | Name: | Nikhil Budhiraja |
| Email: | jmsuhy@purethink.com | | Email: | nikhil@purethink.com |
| Mobile: | 703-348-3968 x 101 | | Mobile: | 703-348-3968 x 109 |

| Payment Information | Wire payment information:<br>Silicon Valley Bank<br>3003 Tasman Drive<br>Santa Clara,<br>CA 95054, USA | Routing and Transit #: 121140399<br>SWIFT code: SVBKUS6S<br>Credit Account #: 330072 6656 | | |
|---|---|---|---|---|
| **Neo4j Solution Partner Program Fee:** | | | | |
| Agreement Period | 1 Year | Annual fees: | | USD 1,995.00 |
| Special condition: Fee is payable with the first Product order/referral. | | | | |

**Territory.** Subject to the terms and conditions of this Agreement, Partner may sell the Products in the following "Territory" (check all that apply). Applicable territories: ___X__North America; _____ Central and South America; _____Europe; _____Middle Eastern; _____Africa; _____Japan; _____ India; ____ Australia and New Zealand; _____Asia Pacific excluding Australia, New Zealand, Japan and India; _____ (Other).

By signing below, "Partner" shall be entitled to the benefits set forth on Exhibit A and Partner acknowledges and agrees to the terms and conditions of the Partner Terms attached hereto as Exhibit B effective as of ____09-30-2014_____ ("Effective Date"), by and between Neo Technology, Inc. ("Neo Technology"), a corporation having its principal place of business at 111 East Fifth Ave., First Floor, San Mateo, CA 94401 ("Neo Technology") and the "Partner" below.

| Partner: | | Neo Technology, Inc. | |
|---|---|---|---|
| Name: | PureThink LLC | Name: | LARS NORDWALL |
| Title: | CTO / Director | Title: | COO |
| Date: | 09-30-2014 | Date: | 10/6/2014 |
| Signature: | | Signature: | DocuSigned by:<br>LARS NORDWALL<br>5E9692354E8643E... |



Witness:
John Mark Suhy
Exhibit 05
10/22/2020 B Gerald

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0

**neo**technology  *graphs are everywhere*

# NEO4J SOLUTION PARTNER AGREEMENT

### Exhibit A
Benefits

In consideration for Partner's pre-payment of applicable fees and ongoing compliance with all of the other terms and conditions of this Agreement, and any Exhibits hereto, Neo Technology agrees to offer Partner the non-exclusive benefits described below.

| NEO4J SOLUTION PARTNER BENEFIT & QUALIFICATION TABLE | |
|---|---|
| Revenue sharing on sold subscriptions based on price list | 25% or as otherwise mutually agreed in an order form |
| Referral fee on sold new subscription | optional |
| Internal use of Neo4j for training and demo purposes | ✓ |
| Press release support for customer case studies | ✓ |
| Invitation to Neo events (fees may apply) | ✓ |
| Neo4j Partner Logo Usage | ✓ |
| Invitation to Product Roadmap Discussions | ✓ |
| Strategic Account Support | ✓ |
| Listing on Partner Page | ✓ |
| Access to training and certification program subject to execution of Authorized Training Partner Addendum | |
| Partner Portal Access | ✓ |
| Access to Neo4j Support | ✓ |
| Training discount | 20% |
| **Qualification and Partner Guidelines** | |
| Proven ability to commit and deliver on consulting engagements with high success rate | ✓ |
| Complete and submit Neo Partner Agreement | ✓ |
| 2 or more Certified Neo Consultants | ✓ |
| Joint Business & Marketing Plan for Territory | ✓ |
| Generate Case study(s) for joint customer | ✓ |
| Two Annual new customer acquisition target | ✓ |
| Organize Neo4j events | ✓ |

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0



# NEO4J SOLUTION PARTNER AGREEMENT

### Exhibit B
### Partner Terms

**1.        PARTNER PROGRAM AND ORDERS.**  In exchange for the payment of applicable fees, Partner will be entitled to the benefits of the Partner Program for described on Exhibit A. Partner may submit orders for Products to Neo Technology from time to time.  All orders must be consistent with the terms of this Agreement and are subject to Neo Technology's acceptance or rejection.  If accepted, Partner shall execute the Neo Technology Order Form and shall: (i) shall cause the applicable End User to execute Neo Technology's Acknowledgement Form as Neo Technology provides to Partner from time to time or (ii) Partner hereby agrees to be responsible and jointly and severally liable for all of the End User/Licensee obligations found at http://www.neotechnology.com/terms/enduser-partner-us/ with respect to (a) the State of Maryland as the End User/Licensee under such terms and (b) with respect to any other governmental entity that Neo Technology approves of in a mutually agreed upon Neo Technology Order Form.  All licenses to use the Products will be between Neo Technology and the applicable End User.  Partner will inform Neo Technology of the status of each Product order renewal in writing at least thirty (30) days before the expiration date of each End User's subscription license period.  In the event Partner fails to notify Neo Technology within the thirty (30) day period described above, Neo Technology may, in its sole discretion, renew the Product subscription directly with the End User.

**2.        PAYMENTS AND FEES.**

**2.1        Partner Program Fees.**  During the term of this Agreement, Partner will pay to Neo Technology the annual Partner Program fees as specified on the front page of this Agreement. The first year's annual Program fees are due on the Effective Date of this Agreement. Thereafter, the annual Program fees for renewal years will be invoiced at the then current annual Partner Program fees and such renewal Partner Program fees will be invoiced annually in advance on each anniversary of the Effective Date of this Agreement.

**2.2        Product Orders and Fees.**  Fees for orders for subscriptions to the Products, including for renewals subject to Section 1, will be at the discounted prices set forth in Exhibit A and will be invoiced in advance after Neo Technology's Acknowledgement Form is executed by Partner and the End User or as otherwise set forth in Section 1.  Partner shall not enable any End User to download, install or use the Products unless and until the End User has duly executed Neo Technology's Acknowledgement Form or as otherwise set forth in Section 1.  Neo Technology shall have the right to modify the discounted prices set forth in Exhibit A at any time.  Neo Technology will provide the renewal amount to Partner for each End User renewal within a reasonable period of time after Partner informs Neo Technology of the status of each Product order renewal as set forth in Section 1 above.

**2.3        Taxes/Duties.**  All fees and charges payable by Partner under this Agreement are exclusive of any (a) duties or (b) present or future sales, use, value added, excise, or other governmental or similar taxes applicable to this Agreement.  Neo Technology will separately itemize any applicable taxes and duties of which it is aware on each invoice, unless Partner furnishes Neo Technology with a properly executed tax exemption certificate certifying that it does not owe such taxes and duties.  Partner will be responsible for paying any applicable taxes and duties currently or hereafter assessed by a government agency, other than taxes based on Neo Technology's net income.  If all or any part of any payment owed to Neo Technology under this Agreement is withheld, based upon a claim that such withholding is required pursuant to the tax laws of any country or its political subdivisions and/or any tax treaty between the U.S. and any such country, such payment shall be increased by the amount necessary to result in a net payment to Neo Technology of the amounts otherwise payable under this Agreement.

**2.4        Payment.**  Unless otherwise indicated in addendums to this Agreement, payments of all invoices: (a) will be paid within thirty (30) days of the date of the invoice; and (b) will be made in EUROS or U.S. dollars as set forth on the front page of this Agreement or as Neo Technology otherwise specifies without right of set off or chargeback.  All fees are non-refundable. All amounts not paid when due are subject to a late fee of the lesser of one percent (1%) per month or the maximum amount allowable by law.

**2.5        Notification of Changes.**  Neo Technology will provide Partner with sixty (60) days written notice of any changes in the Partner program benefits set forth on Exhibit A.

**2.6        Audit Rights.**  Partner will, during the term of this Agreement and for a period of one (1) year after termination, maintain records relating to its performance under this Agreement. Partner agrees that Neo Technology, upon at least ten (10) days prior written notice during business hours may at its own cost and expense directly or through an agent inspect such accounts, records and other information as may be required to verify Partner's compliance with this Agreement. The cost of the audit will be borne by Neo Technology unless the audit reveals an underpayment by Partner to Neo Technology, in which case Partner will immediately pay the amount of the underpayment and will pay for the cost of the audit.

**3.        CONFIDENTIALITY.** Each party acknowledges that it acquires only the right to use the other party's Confidential Information under the terms and conditions of this Agreement and does not acquire any rights of ownership or title in the other party's Confidential Information.  Each party will hold in confidence any Confidential Information received by it from the other and will protect the confidentiality of such with the same degree of care that it exercises with respect to its own information of like import, but in no event less than reasonable care, for a period of five (5) years from receipt.  Each party will only disclose Confidential Information to its employees, agents, representatives and authorized contractors (collectively "Representatives") having a need to know for the purposes of this Agreement.  Each party will notify and inform such Representatives of each party's limitations, duties, and obligations regarding use, access to, and nondisclosure of Confidential Information and will obtain or have obtained its Representatives' agreements to comply with such limitations, duties, and obligations under such Confidential Information no less restrictive than those contained herein.  Each party is liable for all acts and omissions of its Representatives related to the other party's Confidential Information. Each party agrees to give notice to the other party immediately after learning of or having reason to suspect a breach of any of the proprietary restrictions set forth in this Section. In the event that a party is required to disclose Confidential Information pursuant to any applicable statute, regulation or order of a court of competent jurisdiction, that party will use commercially reasonable efforts to notify the other party of the required disclosure.

**4.        LICENSES AND OWNERSHIP.**

**4.1        Licenses.**  Neo Technology hereby grants to Partner a non-exclusive, non-transferable limited license during the term of this Agreement to: (i) use the Products solely to demonstrate the Products to potential customers in connection with its performance under this Agreement; (ii) provided that Partner has executed an Authorized Training Partner Addendum, use the Products to provide training and Level 1 and Level 2 Support to End Users that have licensed the Products from Neo Technology, with all such Support as described on Exhibit C; (iii) use the Neo Technology trademarks solely to market and promote the Products in accordance with the terms of this Agreement; and (iv) market and resell licenses to the Products (in object code only) to End Users, for use by End Users for their internal business purposes and subject to the End Users' agreement to Neo Technology's Acknowledgement Form and license agreement or as otherwise set forth in Section 1.  Partner will use Neo Technology trademarks only in accordance with Neo Technology's then-current trademark usage guidelines. Any use by Partner of Neo Technology trademarks will inure to the benefit of Neo Technology  Neo Technology will provide Partner with Level 3 Support as described on Exhibit C.

**4.2        Pre-Existing Technology.**  Each party acknowledges and agrees that, as between the parties, each party is and will remain the sole and exclusive owner of all right, title, and interest in and to its pre-existing technology, and all associated Intellectual Property Rights, and that this Agreement does not affect such ownership.  Each party acknowledges that it acquires no rights under this Agreement to the other party's pre-existing technology other than the limited rights specifically granted in this Agreement. Neo Technology will own all right, title, and interest in and to all Products and derivative works of the Products and all associated Intellectual Property Rights.  If Partner acquires any rights, including any Intellectual Property Rights, in the Products or derivative works thereof, Partner hereby assigns and agrees to assign to Neo Technology all such rights.

**4.3        Modifications to Pre-Existing Technology.** Each party acknowledges and agrees that, as between the parties, each party is and will remain the sole and exclusive owner of all right, title, and interest in and to any modifications and/or derivative works to its pre-existing technology regardless of who created such modifications and/or derivative works, and all associated Intellectual Property Rights.  Each party acknowledges that it acquires no rights under this Agreement to the modifications and/or derivative works of the other party's pre-existing technology other than the limited rights specifically granted in this Agreement.

**4.3        Restrictions.**

**4.3.1** During the term of this Agreement, Partner may not use or run on any of Partner's hardware, or have deployed for internal use, any Neo Technology Community Edition Products for commercial or production use.  In no event shall Partner reverse engineer, distribute or otherwise use the Products for its own internal use.  There are no implied rights.  Partner will not fork or bifurcate the source code for any Neo Technology Community Edition Products into a separately maintained source code repository so that development done on the original code requires manual work to be transferred to the forked software or so that the forked software starts to have features not present in the original software.

**4.3.2**  During the term of this Agreement and up until thirty six (36) months after the termination or expiration of this Agreement, Partner may not develop, market, distribute or offer any services related to any Neo Technology Community Edition Products, derivative works of such products, or any Partner software code made to work with Neo Technology Community Edition Products (including, without limitation, hosting services, training, technical support, configuration and customization services, etc.).

**4.3.3**  During the term of this Agreement, Partner will not accept work, enter into a contract or accept an obligation inconsistent or incompatible with Partner's obligations, or the scope of services to be rendered for Neo Technology, under this Agreement.  Partner warrants that, to the best of Partner's knowledge, there is no other existing contract or duty on Partner's part that conflicts with or is inconsistent with this Agreement.  Partner agrees to indemnify and hold harmless Neo Technology from any and all losses and liabilities incurred or suffered by Neo Technology by reason of the alleged breach by Partner of any services agreement between Partner and any third party.

**4.3.4**  Partner shall conduct and perform its obligations under this Agreement in a manner that reflects favorably on Neo Technology at all times.  Partner shall not make any representations or warranties regarding Neo Technology or the Products.  Partner agrees to indemnify, defend and hold harmless Neo Technology from any and all claims arising from any representations or warranties made by Partner regarding Neo Technology and/or Product(s) and/or Neo Technology services. Partner may not approach any End Users who purchased Products directly from Neo Technology for the purpose of renewing or upgrading the End User's subscription to the Products through Partner.

**5.        DISCLAIMER.**  NEO TECHNOLOGY MAKES NO WARRANTIES REGARDING THE PRODUCTS OR ANY INFORMATION PROVIDED BY NEO TECHNOLOGY HEREUNDER, EITHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT OR FITNESS FOR A PARTICULAR PURPOSE.

**6.        LIMITATION OF LIABILITY.**  NEO TECHNOLOGY WILL NOT BE LIABLE FOR ANY INDIRECT, PUNITIVE, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGE IN CONNECTION WITH OR ARISING OUT OF OR RELATED TO THIS AGREEMENT (INCLUDING LOSS OF BUSINESS, REVENUE, PROFITS, USE, DATA, OR OTHER ECONOMIC ADVANTAGE), HOWEVER IT ARISES, WHETHER FOR BREACH OR IN TORT (INCLUDING NEGLIGENCE), EVEN IF NEO TECHNOLOGY HAS BEEN PREVIOUSLY ADVISED OF THE

NEO TECHNOLOGY INC. CONFIDENTIAL

N4J_000006

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0



# NEO4J SOLUTION PARTNER AGREEMENT

POSSIBILITY OF SUCH DAMAGE. NEO TECHNOLOGY'S AGGREGATE CUMULATIVE LIABILITY FOR CLAIMS RELATING TO THIS AGREEMENT, WHETHER FOR BREACH OR IN TORT, WILL BE LIMITED TO THE AMOUNT PAID BY PARTNER TO NEO TECHNOLOGY UNDER THIS AGREEMENT IN THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE ACT OR OMISSION FIRST GIVING RISE TO THE CLAIM.    LIABILITY FOR DAMAGES WILL BE LIMITED AND EXCLUDED, EVEN IF ANY EXCLUSIVE REMEDY PROVIDED FOR IN THIS AGREEMENT FAILS OF ITS ESSENTIAL PURPOSE.

**7.       TERM AND TERMINATION.**

**7.1       Term.** This Agreement will commence on the Effective Date, and remain in effect for a period of one (1) year.  Thereafter, this Agreement will automatically renew at additional one (1) year periods unless either party provides at least sixty (60) days prior written notice to the other party of its intent not to renew.

**7.2       Termination.** This Agreement may be terminated by a party for cause immediately if (a) the other ceases to do business, or otherwise terminates its business operations; or (b) the other materially breaches any material provision of this Agreement and fails to cure such breach within thirty (30) days of written notice describing the breach. In addition, Neo Technology may terminate this Agreement at any time by providing Partner with ninety (90) days prior written notice.  This Agreement may be terminated as set forth on Exhibit C.

**7.3       Effect of Termination.** Upon termination of this Agreement by either party (a) all rights and licenses of Partner hereunder will terminate  and Partner shall cease all communications with End Users regarding the Products; and (b) each party will immediately return to the other party all Confidential Information in its possession, custody or control in whichever form held (including all copies or embodiments of the Confidential Information) and will cease using any trademarks, service marks and other designations of the other party; and (c) Partner shall pay to Neo Technology all outstanding fees. To remove all doubt, except as set forth in this Agreement, it is hereby clarified that Partner will not be entitled to any additional remuneration, or reimbursement of any expenses based on the expiration or termination of this Agreement.  An addendum to this Agreement may specify additional effects of termination of this Agreement.  After any termination of this Agreement, Neo Technology shall not be restricted in any manner from licensing or contracting with End Users.

**7.4       Survival.** In addition to any provisions set forth on an addendum to this Agreement that expressly survive termination or expiration of this Agreement, any definitions any payment obligations that accrued prior to the effective termination or expiration date and Sections 2.6, 3, 4.2, 4.3.2 (as set forth therein), 4.3.4, 5, 6, 7, 8, 10 and 11 will survive the expiration or termination of this Agreement.

**8.       INDEMNITY.** Partner will indemnify, defend and hold harmless Neo Technology from and against any and all third party claims, suits, actions, demands and proceedings against Neo Technology and all losses, costs and liabilities related thereto arising out of or related to any negligence by Partner or any other act or omission of Partner, including without limitation any breach of this Agreement by Partner.

**9.       MARKETING**

**9.1       Marketing.** Provided that Partner complies with all of the obligations herein, Neo Technology will include the Partner company logo and profile on the Neo Technology website.  Partner will include the Neo Technology company logo on Partner website in accordance with the Neo Technology trademark usage guidelines.  Each party may issue a press release announcing that Partner is a Partner as the other party approves in writing.  Each party will provide a quote from an executive to support the other party's press release.  All marketing activities are subject to approval by both Partner and Neo Technology.

**9.2       Surveys.** Neo Technology may issues surveys to Partner once per quarter in an effort to improve customer satisfaction.  Partner will provide responses within ten (10) business days of receipt of each survey.

**10.       GENERAL TERMS.**

**10.1       Force Majeure.** A party is not liable under this Agreement for non-performance caused by events or conditions beyond that party's control if the party makes reasonable efforts to perform.

**10.2       Relationship of Parties.** This Agreement is not intended to create a relationship such as a partnership, franchise, joint venture, agency, or employment relationship.  Neither party may act in a manner which expresses or implies a relationship other than that of independent contractor, nor bind the other party.

**10.3       Notices.** All written notices required by this Agreement must be delivered to the addresses specified above, either in person or by a means evidenced by a delivery receipt.  All notices will be effective upon receipt.

**10.4       Assignment.** Neither party may assign or otherwise transfer any of its rights or obligations under this Agreement, without the prior written consent of the other party; provided, however, either party may assign this Agreement without the other party's consent to a parent or subsidiary of such party or in the case of a merger or sale of all or substantially all of its assets or stock.

**10.5       Waiver or Delay.** Any express waiver or failure to exercise promptly any right under this Agreement will not create a continuing waiver or any expectation of non-enforcement.

**10.6       Provisions Found Invalid.** If any term or provision of this Agreement is found to be invalid under any applicable statute or rule of law then, that provision notwithstanding, this Agreement will remain in full force and effect and such provision will be deemed omitted; provided, however, in lieu of such omitted provision there will be added to this Agreement a valid provision which is as nearly identical to the omitted provision as possible.

**10.7       Construction.** This Agreement has been negotiated by the parties, each of which has been represented by counsel.  This Agreement will be fairly interpreted in accordance with its terms, without any strict construction in favor of or against either party.

**10.8       Governing Law.** Any action related to this Agreement will be governed by the laws of California without regard for its choice of law provisions.  The United Nations Convention on Contracts for the International Sale of Goods will not apply.

**10.9       Venue.** Except as set forth below, the courts seated in San Mateo, California, will have sole and exclusive jurisdiction for all purposes in connection with any action or proceeding that arises from, or relates to, this Agreement, and each party hereby irrevocably waives any objection to such exclusive jurisdiction.  Notwithstanding anything in this Agreement to the contrary, Neo Technology may seek injunctive or other equitable relief in any court of competent jurisdiction to protect any actual or threatened misappropriation or infringement of its intellectual property rights or those of its licensors, and Partner hereby submits to the exclusive jurisdiction of such courts and waives any objection thereto on the basis of improper venue, inconvenience of the forum or any other grounds.

**10.10       Export.** Partner will not export the Products in violation of the export laws of the United States or of any other country.

**10.11       Non-solicitation.** During the term of this Agreement and for a period of one (1) year thereafter Partner will not directly or indirectly, either alone or in association with others, (a) solicit, or permit any of its affiliates to solicit, any employee of Neo Technology or its affiliates to leave the employ of Neo Technology or any of its affiliates, or (b) solicit for employment, hire, or engage as an independent contractor, or permit any of its affiliates to solicit for employment, hire, or engage as an independent contractor, any person who was employed by Neo Technology or its affiliates; provided, that this clause (b) will not apply to any individual whose employment with Neo Technology or any of its affiliates has been terminated for a period of six (6) months or longer and provided further that this Section 10.11 will not prohibit general advertisement of employment opportunities not specifically targeting any employee(s) of Neo Technology or its affiliates.

**10.13       Other.** This Agreement and attached Exhibit(s) is the entire agreement between the parties.  This Agreement supersedes and cancels any prior documents or agreements, whether written or oral, regarding the subject matter addressed in this Agreement and attached Exhibit(s).  If any terms on Partner's orders conflict with the terms of this Agreement, the conflicting terms of this Agreement shall control. Any preprinted terms on Partner's purchase order or similar ordering or other document are hereby rejected.

**11.       DEFINITIONS.**

"Confidential Information" means information which has value because it is not generally known and which the disclosing party uses reasonable means to protect and includes without limitation any information designated as confidential or proprietary by either party to this Agreement upon disclosure.  Confidential Information may include proprietary information of third parties who have granted licenses to or have contractual relationships with the disclosing party.  Confidential Information excludes information that receiving party can clearly establish by written evidence: (a) was in the possession of, or was known by, receiving party prior to its receipt from disclosing party; (b) is or becomes generally known to the public without violation of this Agreement; (c) is obtained by receiving party from a third party not under any obligation of confidentiality; or (d) is independently developed by receiving party without use of Confidential Information.  Furthermore, disclosure of Confidential Information will not be prohibited if disclosure is required by law, regulation or order of a court of competent jurisdiction.

"End User" means an end customer that may use the Products for their own internal use and not for resale or distribution.

"Intellectual Property Rights" means all intellectual property rights worldwide arising under statutory or common law or by contract and whether or not perfected, now existing or hereafter filed, issued, or acquired, including all: (a) patent rights; (b) rights associated with works of authorship including copyrights and mask work rights; (c) rights relating to the protection of trade secrets and confidential information; (d) trademarks, service marks, trade dress and trade names; and (e) any right analogous to those set forth in this Agreement and any other proprietary rights relating to intangible property.

"Neo Technology Community Edition Product" means an open source version of a Neo Technology software product.

"Products" means the Neo4J commercial software provided by Neo Technology and licensed to the End User.

"Support" refers generally to the provision of support as described in Exhibit C of this Agreement.

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0

 *graphs are everywhere*

# NEO4J SOLUTION PARTNER AGREEMENT

## Exhibit C
### Support

**1. Introduction**.  This Support Summary is an attachment to the Partner Agreement between Neo Technology and the applicable Partner and is automatically deemed part of, and governed by, the Partner Agreement. Unless otherwise defined in this Support Summary, any capitalized term used in this Support Summary will have the meaning given it in the Partner Agreement.

**2. Partner's Support Obligations**.  Partner will provide First and Second Line Support to End User(s) for the Products. This First  and Second Line Support shall be provided in accordance with Neo Technology's standard Support Terms, available at http://neotechnology.com/support-terms, and be provided in the time zone and local language of End User(s) unless agreed otherwise with End User(s) and Neo Technology. Additionally, Partner commits to agreeing with End User(s) on the manner in which Partner will provide First and Second Line Support, including the minimum response time(s). Partner will provide for any First and Second Line Support request by End User(s), and will provide Neo Technology with a summary of each such agreement.

**3. Deficiencies**.  In the event an End User is dissatisfied with Partner's Support, or Neo Technology otherwise reasonably believes that Partner is not providing such Support in accordance with accepted industry standards, then Neo Technology will notify Partner in writing and both parties will work together in good faith to resolve the deficiencies. If within thirty (30) days, Neo Technology does not believe, in its sole discretion, that such deficiencies have been resolved, Neo Technology may require that Partner cease the provision of Support and allow Neo Technology, or a nominated representative of Neo Technology, to provide such Support directly to the applicable End User(s). In such event, Partner agrees to provide reasonable cooperation in the transition of Support to Neo Technology, or the nominated representative of Neo Technology, and, if Partner was paid in advance for future Support, Partner will pay Neo Technology agreed-to amounts for the period of Support to be provided by Neo Technology or its nominated representative.

**4. Partner Certification**.  Partner must meet any certification requirements specified by Neo Technology from time to time in writing, including, without limitation, the requirement to have on Partner's staff at least two (2) Neo Technology certified engineers within six (6) months of the Effective Date. Neo Technology will offer, and Partner may order, training programs in accordance with Neo Technology's then-current program rates or as agreed by the parties in writing. In addition, Partner will comply with any additional certification and training requirements established by Neo Technology from time to time, within ninety (90) days notice from Neo Technology. Support certification is based on a combination of performance-based tests and attended training days that measure competency on Products.

**5. Neo Technology's Support Obligations**.  For the purposes of Support, Neo Technology will consider Partner as a customer and provide Partner with Second Line Support in accordance with Neo Technology's standard Support Terms, available at http://neotechnology.com/support-terms. Partner will meet all obligations of a customer described in the Support Terms. Partner agrees to contact Neo Technology for Second Line Support only when, after reasonable commercial efforts, Partner has identified an issue related specifically to Product and is unable to determine a resolution.  If any terms of the Support Terms at http://neotechnology.com/support-terms conflict with any terms of this Exhibit C, the conflicting terms of this Exhibit C shall control.

**6. Cooperation**.  Partner will cooperate with and provide assistance to Neo Technology as Neo Technology may reasonably request in connection with Neo Technology's Support obligations, including, without limitation, the following:

    *6.1. Test Code.*  Partner will use its best efforts to provide Neo Technology functioning test code that reproduces and isolates the issue in Product. Such test code must be reproducible using systems and tooling available to Neo Technology. In addition, Partner will remove extraneous comments and code from the test code provided and to the extent possible, such code will be fully self-contained, automated and will demonstrate the precise issue reported rather than other possible problems. If Partner cannot provide test code that reproduces the issue, Partner acknowledges that Neo Technology may be unable to provide a resolution to the issue. In such cases, Neo Technology will work with Partner to assist in the development of a test case.

    *6.2. Access.*  Partner will use its best efforts to provide Neo Technology with access (via remote telecommunications and, if applicable, on-site access at the End User's or Partners premises) to the extent reasonably necessary to allow Neo Technology to provide Support. If Partner cannot provide remote access, Neo Technology may be unable to provide a resolution to the issue.

    *6.3. Assistance.*  Partner will provide Neo Technology with a continually-available engineer who will promptly assist Neo Technology with data gathering, testing, and applying all fixes to the applicable environment for Severity Level 1 and Severity Level 2 issues.

**7. Data**.  In connection with any activities provided hereunder, Partner will only share or otherwise disclose data to Neo Technology for which Partner has obtained the rights, and express consent of the data subject, to disclose to Neo Technology.

**8. Reporting**.  Partner will provide Neo Technology with a monthly report detailing the status of all Severity Level 1 and Severity Level 2 Support cases, as defined in the Support Terms, provided to each End User, including all information reasonably requested by Neo Technology.  Such reports will be provided on the first Friday of every month and cover the previous month's activities. Partner acknowledges that Neo Technology may change the reporting obligations described in this Section, and Partner will comply with any new reporting obligations within thirty (30) days of Neo Technology's request.  The Support report will provide the following:

- Case number (provided by Partner to End User)
- Partner ID (provided by Neo Technology)
- End user name and contact details
- Status (e.g. new, open, hold, solved, closed)
- Severity Level, based on the categories defined in Neo Technology's standard Support Terms.
- Initial response time; opened and closed date
- Responsible support representative
- Product
- Issue description and type, and root cause description

**9. Exclusions**.  Neo Technology will not be obliged to provide Support to Partner for any issue arising out of any of the following events:

- A failure of hardware, equipment or programs not provided by Neo Technology
- Support for any versions of the Product that are not obtained by Partner via the Neo Technology Customer Support Portal
- Use in a Production Environment of versions of the Product not marked as 'Generally Available'
- Support for any version of the Product in production more than two years from the date of its general availability
- Any cause or causes beyond the reasonable control of Neo Technology (e.g. floods, fires, loss of electricity or other utilities)
- Partner's or End User's failure to comply with operating instructions contained in the Product documentation
- Any modification, enhancement or customization of the Product by anyone other than Neo Technology
- APIs, interfaces, web services or data formats other than those included with the Product

**10. Other Terms**.  Neo Technology may modify its processes and requirements from time to time upon reasonable written notice to Partner; provided that any such changes will apply only prospectively.

**11. Termination**.  Neo Technology reserves the right, at any time, to withdraw the availability of Support for a Product with twelve (12) months prior written notice.

# EXHIBIT 5

00803672



| | |
|---|---|
| **From:** | **John Mark Suhy** jmsuhy@purethink.com |
| **Subject:** | Gov Edition Update |
| **Date:** | July 14, 2015 at 3:37 PM CDT |
| **To:** | David Fauth david.fauth@neotechnology.com |

I am going to send you a breakdown of why we created the Government Edition - since it may not be apparent without an explanation.

I will send you the high level overview so it all makes sense.

In a nutshell - it was put together specifically for US government procurements to help with sole source, GSA pricing negotiations (As no commercial sales and more features for pricing justification), and so that price publications to public that are common in govt contracting don't alienate other commercial clients or other country government clients.

Right now for example - with GSA prices public for Enterprise edition it may upset other countries and clients who would also want 18% discount.  The gov edition addresses all these editions.

will send details today.


John Mark Suhy
PureThink
jmsuhy@purethink.com
703-862-7780
http://purethink.com

# EXHIBIT 6

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# EXHIBIT 7

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# EXHIBIT 8

00004185



| | |
|---|---|
| From: | **John Mark Suhy** jmsuhy@purethink.com |
| Subject: | Updated to 3.2 |
| Date: | May 12, 2017 at 3:17 AM CDT |
| To: | Philip Rathle philip@neotechnology.com |

Congrats on product launch! I am running a very large import for IRS on it - just to see how it does. I will let you know how it does.

I will keep you updated.    Dave Fauth finally got access after all this time. We put him as a team member so you guys have more access.  We still haven't done a purchase order with Neo because of an issue with the partner agreement hopefully that will be resolved soon.   (Some parts of Treasury use  Neo4j Enterprise under AGPL which will violate their agreement once signed. You wouldn't see it via UdC because those pings never get out past firewalls.)

On another note - Treasury's laptops use a locked down version of Internet Explorer which won't let bolt run. (Websocket errors).  This is the case for gov agencies as well so be aware that 3.2's browser won't function in those cases.

In the next few weeks I can show you what I built for them if you are imterested in seeing it.


Talk to you later

John Mark

John Mark Suhy
PureThink
jmsuhy@purethink.com
703-862-7780
https://purethink.com

# EXHIBIT 9

DocuSign Envelope ID: DE0C227E-68FF-403D-B5C9-BF225E75B3C4



111 East Fifth Avenue.
San Mateo, CA 94401
(855) 636 - 4532

May 30, 2017

PureThink LLC
4202 Adrienne Dr.
Alexandria, VA 22309
Attn: John Mark Suhy Jr.

To Mr. Suhy:

Re: PureThink LLC's ("PureThink") breach of Neo4j Solution Partner Agreement with Neo Technology, Inc. ("Neo Technology") dated September 30, 2014 ("Agreement")

I am writing on behalf of Neo Technology. As we have discussed and as you know, PureThink is prohibited from using any Neo Technology open source products and from developing, marketing distributing or offering any services related to any Neo Technology open source products as set forth in Section 4.3 of the Agreement. From your own admissions in conversations with both John Broad and Jason Zagalsky, PureThink uses Neo Technology open source products and has distributed and performed services on, and continues to perform services on, Neo Technology open source products for the Internal Revenue Service. PureThink has also stated its intent to market and create a consulting business around Neo Technology open source products.

Thus, the purpose of this letter is to provide PureThink with a formal notification of PureThink's material breach of the Agreement under Section 7.2 of the Agreement. If PureThink fails to cure this breach within thirty (30) days of the date of this letter by both: (i) entering into an order form for the Internal Revenue Service's use of Neo4j software with Neo Technology in the form provided by Neo Technology and paying the applicable fees to Neo Technology, (ii) executing the proposed amendment to the Agreement and (iii) ceasing all use of all Neo Technology open source products and ceasing all marketing, distribution, development and services of or for any Neo Technology open source products to Neo Technology's satisfaction except as expressly set forth in the proposed amendment to the Agreement, then the Agreement is and will be automatically terminated. Such termination will be effective on the thirtieth day after the date of this letter (whether or not Neo Technology provides a subsequent termination notice to PureThink).

If the Agreement terminates as set forth herein, we would like to remind you of your continuing obligations under the Agreement as set forth in Section 7.4 of the Agreement.

Neo Technology further reserves all of its rights and remedies at law and equity under the Agreement and does not waive any rights under the Agreement.

If you have any questions regarding this letter, please contact John Broad at john.broad@neotechnology.com.

Sincerely,

*LARS NORDWALL*
—5E06023E4E8643E—

Neo Technology, Inc.

By: LARS NORDWALL

Case 5:18-cv-07182-EJD Document 98-1 Filed 12/11/20 Page 48 of 1198

# EXHIBIT 10

1707521347



**COMMONWEALTH OF VIRGINIA**
**STATE CORPORATION COMMISSION**

**Office of the Clerk**

June 23, 2017

JOHN MARK  SUHY JR
4202 ADRIENNE DR.
ALEXANDRIA, VA 22309

**RECEIPT**

RE: iGov Inc.

ID: 08198210

DCN: 17-06-23-5846

Dear Customer:

This is your receipt for $75.00 to cover the fee(s) for filing articles of incorporation with this office.

The effective date of the certificate of incorporation is June 23, 2017.

If you have any questions, please call (804) 371-9733 or toll-free in Virginia, 1-866-722-2551.

Sincerely,

*Joel H. Peck*

Joel H. Peck
Clerk of the Commission

CORPRCPT
NEWCD
CISECOM



**Page 211**          N4J_000156

1707521347

**COMMONWEALTH OF VIRGINIA**
**STATE CORPORATION COMMISSION**

AT RICHMOND, JUNE 23, 2017

The State Corporation Commission has found the accompanying articles submitted on behalf of

iGov Inc.

to comply with the requirements of law, and confirms payment of all required fees. Therefore, it is ORDERED that this

## CERTIFICATE OF INCORPORATION

be issued and admitted to record with the articles of incorporation in the Office of the Clerk of the Commission, effective June 23, 2017.

The corporation is granted the authority conferred on it by law in accordance with the articles, subject to the conditions and restrictions imposed by law.

STATE CORPORATION COMMISSION

By *Judith Williams Jagdmann*

Judith Williams Jagdmann
Commissioner

CORPACPT
CISECOM
17-06-23-5846

eFile

1707521347

# ARTICLES OF INCORPORATION
## OF
## IGOV INC.

The undersigned, pursuant to Chapter 9 of Title 13.1 of the Code of Virginia, states as follows:

1.   The name of the corporation is iGov Inc.

2.   The purpose for which the corporation is formed is to engage in any lawful business not required to be specifically set forth in these Articles for which a corporation may be incorporated under the Virginia Stock Corporation Act.

3.   The corporation is authorized to issue 1,500 shares of common stock.

4.   The name of the corporation's initial registered agent is John Mark  Suhy Jr.  The initial registered agent is an individual who is a resident of Virginia and an initial director of the corporation.

5.   The address of the corporation's initial registered office, which is identical to the business office of the initial registered agent, is 4202 Adrienne Dr., Alexandria, VA 22309.  The initial registered office is located in Fairfax County, Virginia.

6.   The following individual is to serve as the initial director of the corporation:

| Name | Address |
| --- | --- |
| John Mark  Suhy Jr | 4202 Adrienne Dr. |
|  | Alexandria, VA 22309 |

7.   The address of the corporation's principal office is 1902 Campus Commons Drive , Suite 101, Reston, VA 20191.

INCORPORATOR:

/s/     CARRI BROWN   Date: June 23, 2017
        CARRI BROWN

# EXHIBIT 11

000004046

From: **John Mark Suhy** jmsuhy@purethink.com
Subject: Re: Follow up
Date: March 15, 2017 at 3:35 PM CDT
To: John Broad john.broad@neotechnology.com



If we wanted to not be a partner any more - it would be because of something such as the partnership not being profitable, which could be resolved with some collaboration. Having that 3 year lockout clause removed would mean we can have a fair and more equal discussion on the topic , if it ever came up.

It would simply make it more likely for Neo (or purchaser of Neo) to work with us if you consider us valuable. The key is - you would have the ability to decide if we are worth it.

Leaving it in there provides a mechanism for you to keep in legal Limbo. I could go into many scenarios where it could be used against a partner - such as raising partner fees to $100k and then canceling contract for cause when a partner could not pay it.

These are just examples of things I could see Oracle doing.

I would think your legal team understands that since everything is open source and that someone can start a new company to get around this would make this a simple negotiating point that does no harm dropping.

It does not effect non disclosures, etc. If it was important I would think they would have made it apply to specific people or corporate officers to prevent them from simply starting another company to pass it.

Also - I could understand it if we were dealing with highly secretive technology or if we were more interconnected as partners - it just doesn't fit in the overall context of being a partner.

Anyway, that is my view. I feel pretty strong about that one as having it removed means we don't have to worry about the other ones as much. IE : makes it simple so we can finish and get this past us.

Talk to you later

On Wed, Mar 15, 2017, 10:21 John Broad <john.broad@neotechnology.com> wrote:
> Please propose what would be a reasonable and keep in mind that this would be waived if Neo
> (or any acquiring party) terminated WITHOUT cause.
>
> John
>
> On Wed, Mar 15, 2017 at 6:54 AM John Mark Suhy <jmsuhy@purethink.com> wrote:
>> I slept on it - I don't think this agreement is very balanced even with our additions. The 36
>> month statement needs to be out if you want this resolved - I am fine with the others. I want to
>> save you time and let you know I have no plans on being flexible on that as I have the others.
>>
>> If we ever decided we wanted to leave it would be because of lack of revenue , etc and you
>> would have the opportunity to make us not want to leave some way.
>>
>> Other than that I think we look good..
>>
>> John Mark Suhy
>> PureThink
>> jmsuhy@purethink.com
>> 703.862.7780
>> https://purethink.com

**Page 215**

098004047

On Mar 14, 2017 23:37, "John Broad" <john.broad@neotechnology.com> wrote:

Thank you, John Mark.  It was indeed good to speak today.

I sent instruction to Chiara this evening to draft language for 4.3.2 and make edits to 7.3 as we discussed this afternoon.

One potential motivation for the 36 month period: without the 36 month period, there is no deterrent if you decide that you want to break the agreement by deliberately operating in breach AND Neo decides to terminate with cause, which would protect the brand and assets of Neo Technology.

I do think that your suggestion, ensures balanced protection for both parties and intend to advocate for this internally.

That said, please do sleep on all of what we discussed.  I hope to have an amendment for you to review tomorrow.

Thank you again and take care.

John

On Tue, Mar 14, 2017 at 8:21 PM, John Mark Suhy <jmsuhy@purethink.com> wrote:

It was good talking with you today.  I will wait for you to come back with the items we spoke about.

I think we are on the right track.  The only item I am not sure about ,and need to sleep on, is the sentence around the 3-year lockout if we are no longer partners.   I am not sure if I would want any terms around that clause saying it is only applicable for termination by cause.   In other words - if we are not under a partner agreement anymore (for whatever reason) - that 3 year lockout clause would not be applicable.

Let me sleep on that but I wanted to let you know before you spend time one just on that specific item.

Have a good night.

John Mark Suhy
PureThink
jmsuhy@purethink.com
703-862-7780
https://purethink.com

--
John

# EXHIBIT 12

(178 of 299), Page 180 of 299, Case: 24-5538, 12/23/2024, DktEntry: 18.3, Page 180 of 299
DocuSign Envelope ID: E838E4B5-43A5-43E9-9752-49FC5E0E25B9
Case 5:18-cv-07182-EJD Document 98-1 Filed 12/11/20 Page 56 of 1198



111 East Fifth Avenue
San Mateo, CA 94401
(855) 636 - 4532

July 11, 2017

PureThink LLC
Attn: John Mark Suhy Jr.
4202 Adrienne Dr.
Alexandria, VA 22309

To Mr. Suhy:

Re:     Termination of Neo4j Solution Partner Agreement between PureThink LLC ("PureThink") and Neo4j, Inc. formerly
        Neo Technology, Inc. ("Neo ") dated September 30, 2014 ("Agreement") due to PureThink's uncured breach

Neo hereby notifies PureThink that the Agreement is immediately terminated pursuant to Section 7.2 of the Agreement.
As you are aware, PureThink failed to timely cure its numerous material breaches set forth in our letter dated May 30,
2017 ("Breach Notice") or to otherwise respond to Neo's attempts to delay termination of the Agreement.

With the termination of the Agreement, Neo would like to remind PureThink of its continuing obligations as set forth in
Section 7.4 of the Agreement.  Critically, as PureThink's rights and licenses under the Agreement have terminated,
PureThink must immediately cease representing that it is an authorized partner or reseller of Neo, including without
limitation, ceasing all references to Government Edition of Neo4j, soliciting any current, former, or prospective End Users
(including Sandia National Lab, IRS, MPO and FBI), assisting in the procurement or renewal of any of Neo's products,
solutions, or services, or providing any procurement support, FISMA services, software development services, or training
services to Neo's existing or prospective End Users.

Additionally, as set forth in the Agreement, for thirty six (36) months after the termination of this Agreement, PureThink
must not develop, market, distribute or offer any services related to any Neo Technology Community Edition Products
(defined in the Agreement as an open source version of a Neo software product, which includes, but is not limited to, GPL
v3 licensed Neo4j Community Edition and AGPL v3 licensed Neo4j Enterprise Edition), derivative works of such products,
or any PureThink software code made to work with Neo Technology Community Edition Products (including, without
limitation, hosting services, training, technical support, configuration and customization services, etc.).

PureThink must also return all Confidential Information in its possession, custody, and control and cease using Neo's
trademarks, service marks, and other designations.  Neo therefore demands that PureThink immediately cease and desist
all uses of, and remove from PureThink's website(s) and marketing materials, Neo's trademarks and tradenames,
including, without limitation, Neo4j.  PureThink has no rights to use Neo's trademarks or tradenames and continued use of
such trademarks and/or tradenames will constitute trademark infringement.

Neo further reserves all of its rights and remedies at law and equity under the Agreement, including without limitation
invoking its audit rights under the Agreement.  Neo does not waive any rights under the Agreement, and this termination is
not intended to and does not affect any prior or other termination rights or notices provided under the Agreement.

If you have any questions regarding this letter, please contact John Broad at john.broad@neotechnology.com.

Sincerely,

LARS NORDWALL
5E9692354E8643E...

Neo4j, Inc.
By:_____   LARS NORDWALL

**Page 218**

# EXHIBIT 13

Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney at Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Attorneys for defendants and Counter
Claimant:
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, NEO4J SWEDEN AB | CASE NO. 5:18-cv-07182-EJD |
| Plaintiffs, | **DEFENDANT IGOV INC.'S FOURTH AMENDED RESPONSE PLAINTIFF NEO4J SWEDEN AB'S REQUEST FOR ADMISSION, SET ONE TO DEFENDANT IGOV INC.** |
| v. | |
| PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual, | |
| Defendants. | |
| AND RELATED COUNTERCLAIMS. | |

**PROPOUNDING PARTY:** Plaintiff and Counter-Defendant Neo4j Sweden AB

**RESPONDING PARTY:** Defendant and Counterclaimant iGov Inc.

**DISCOVERY:** Request for Admissions

**SET NO.:** One

(183 of 299), Page 183 of 299
Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 59 of 1198
Case: 24-5538, 12/23/2024, DktEntry: 18.3, Page 183 of 299

IGOV INC. responds to Plaintiff and Counter-Defendant Neo4j Sweden AB's Requests for Admission as follows:

## RESPONSE TO REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Admit that iGov Inc. does not have a license from Neo4j, Inc. to use U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" (the "NEO4J® Mark").

**Response:**

DENIED.

### REQUEST FOR ADMISSION NO. 2:

Admit that attached hereto as **Exhibit A** is a true and correct copy of the Neo4j Solution Partner Agreement entered into between Neo Technology, Inc. (now Neo4j, Inc.) and PureThink LLC.

**Response:**

Admit.

### REQUEST FOR ADMISSION NO. 3:

Admit that iGov Inc. was incorporated to avoid the restrictions imposed on PureThink LLC by the Neo4j Solution Partner Agreement attached hereto as **Exhibit A**.

**Response:**

DENIED.

### REQUEST FOR ADMISSION NO. 4:

Admit that **Exhibit B** attached hereto is a printout of iGov Inc.'s webpage https://igovsol.com/neo4j.html as it existed on October 2, 2019.

**Response:**

Admitted.

**REQUEST FOR ADMISSION NO. 5:**

Admit that iGov Inc. continued to use the NEO4J® Mark in its web address *https://igovsol.com/neo4j.html as of August 14, 2020.*

**Response:**

Denied. Responding party used the Neo4J product name for open source version of the Neo4J licensed by Neo4J Sweden and the Neo4J product name and Neo4J, Inc. company name for comparative advertisement. Neo4J®, after a reasonable search, does not appear on the graph packages page and that is shown as of the date of this response.

Subject to the foregoing response, Responding Party admits that sometime after July 15, 2020, iGov, Inc. removed some references to "Neo4j" and replaced them with "ONgDB" and removed the "neo4j@igovsol.com" email link and replaced it with  info@igovsol.com and Admits that the website at the URL https://www.igovsol.com/neo4j.html existed as of July 15, 2020.

**REQUEST FOR ADMISSION NO. 6:**

Admit that Neo4j, Inc. did not authorize iGov Inc.'s use of the NEO4J® Mark in iGov *Inc.'s web address https://igovsol.com/neo4j.html.*

**Response:**

DENIED.

**REQUEST FOR ADMISSION NO. 7:**

Admit that iGov Inc. controls the email address neo4j@igovsol.com.

ADMITTED.

**REQUEST FOR ADMISSION NO. 8:**

Admit that when user that clicks on "Request Procurement Document Package" link in **Exhibit B** creates an email with neo4j@igovsol.com as the recipient.

**Response:**

Admitted that prior to August 2020, when a user clicked on "Request Procurement Document Package," an email was created with neo4j@igovsol.com as the recipient.  Denied as the current website provides the email info@igovsol.com when the "Request Procurement Document Package" link is clicked.

**REQUEST FOR ADMISSION NO. 9:**

*Admit that as of August 14, 2020, a user that clicks on "Request Procurement Document Package" link located on https://igovsol.com/neo4j.html creates an email with neo4j@igovsol.com as the recipient.*

**Response:**

Admit that as the website existed on July 5th, 2019, when a user clicked on "Request Procurement Document Package" link located on https://igovsol.com/neo4j.html,  an email was created with neo4j@igovsol.com as the recipient.  After a reasonable inquiry, no information is readily obtainable to verify if this statement was true for August 14th, 2020 and on that basis Responding Party denies.

**REQUEST FOR ADMISSION NO. 10:**

*Admit that **Exhibit C** attached hereto is a printout of Gov Inc.'s webpage https://igovsol.com/downloads.html as it existed on October 2, 2019.*

**Response:**

Admitted.

**REQUEST FOR ADMISSION NO. 11:**

*Admit that as of August 14, 2020, iGov Inc.'s webpage located https://igovsol.com/downloads.html stated "If you have a question for us, please email us at neo4j@igovsol.com."*

Response:

Admit that as of July 5th, 2019, iGov Inc.'s webpage located https://igovsol.com/downloads.html stated "If you have a question for us, please email us at neo4j@igovsol.com." through July or August 2020. After a reasonable inquiry, no information is readily obtainable to verify if this statement was true for August 14th, 2020 and on that basis Responding Party denies.

**REQUEST FOR ADMISSION NO. 12:**

*Admit that iGov Inc. uses the NEO4J® Mark in its email address neo4j@igovsol.com.*

**Response:**

DENIED.

**REQUEST FOR ADMISSION NO. 13:**

*Admit that Neo4j, Inc. did not authorize iGov Inc.'s use of the NEO4J® Mark in iGov Inc.'s email address "neo4j@igovsol.com" on iGov Inc.'s webpage https://igovsol.com/downloads.html.*

**Response:**

DENIED.

**REQUEST FOR ADMISSION NO. 14:**

*Admit that as of August 14, 2020, the "Neo4j Enterprise Open Source Frequently Asked Questions" section on iGov Inc.'s webpage located "https://igovsol.com/downloads.html" contains a hyperlink titled "Download Neo4j Enterprise" that redirects consumers to download links for ONgDB.*

**Response:**

Admit that as of July 5, 2019, the "Neo4j Enterprise Open Source Frequently Asked Questions" section on iGov Inc.'s webpage located https://igovsol.com/downloads.html contained a hyperlink titled "Download Neo4j Enterprise" that redirects consumers to download links for

**Page 224**

ONgDB. After a reasonable inquiry, no information is readily obtainable to verify if this statement was true for August 14th, 2020 and on that basis Responding Party denies.

**REQUEST FOR ADMISSION NO. 15:**

Admit that ***Exhibit D*** *is a printout of Neo4j, Inc.'s Trademark Guidelines as they existed on September 26, 2019.*

**Response:**

Admitted.

**REQUEST FOR ADMISSION NO. 16:**

Admit that Neo4j, Inc.'s Trademark Guidelines in ***Exhibit D*** *were attached as an exhibit to Neo4j, Inc.'s Second Amended Complaint.*

**Response:**

ADMITTED.

**REQUEST FOR ADMISSION NO. 17:**

Admit that you were aware of Neo4j, Inc.'s Trademark Guidelines in ***Exhibit D*** *as of December 9, 2019 when you filed your answer to Neo4j, Inc.'s Second Amended Complaint.*

**Response:**

Responding Party admits that on December 9, 2019, when it filed the answer to the Neo4J, Inc. Second Amended Complaint, it was aware of Neo4J, Inc's Trademark Guidelines.

**REQUEST FOR ADMISSION NO. 18:**

Admit that iGov Inc.'s use of "Neo4j Enterprise" in ***Exhibit B*** *violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit D.***

**Response:**

DENIED.

**Page 225**

**REQUEST FOR ADMISSION NO. 19:**

Admit that iGov Inc.'s use of "Neo4j Enterprise open source licensed distributions" in *Exhibit B* violates Neo4j, Inc.'s Trademark Guidelines attached hereto as *Exhibit D.*

**Response:**

DENIED.


**REQUEST FOR ADMISSION NO. 20:**

Admit that iGov Inc.'s use of the NEO4J® Mark in *Exhibit B* was not authorized by Neo4j, Inc.

**Response:**

DENIED.


**REQUEST FOR ADMISSION NO. 21:**

Admit that iGov Inc.'s use of "Neo4j Enterprise" in *Exhibit C* violates Neo4j, Inc.'s Trademark Guidelines attached hereto as *Exhibit D.*

**Response:**

DENIED.


**REQUEST FOR ADMISSION NO. 22:**

Admit that iGov Inc.'s use of "Neo4j Enterprise" in *Exhibit C* without proper trademark notices violates Neo4j Inc.'s Trademark Guidelines attached hereto as *Exhibit D*.

**Response:**

DENIED.


**REQUEST FOR ADMISSION NO. 23:**

Admit that iGov Inc.'s use of "Neo4j Enterprise open source licensed distributions" in *Exhibit C* without proper trademark notices violates Neo4j Inc.'s Trademark Guidelines attached hereto as *Exhibit D.*

**Response:**

DENIED.


**REQUEST FOR ADMISSION NO. 24:**

Admit that iGov Inc.'s use of the NEO4J® Mark in **Exhibit C** was not authorized by Neo4j, Inc.

**Response:**

DENIED.


**REQUEST FOR ADMISSION NO. 25:**

Admit that attached hereto as **Exhibit E** is a printout of the webpage https://neo4j.com/trademark-policy/ captured by the Internet Archive on July 10, 2017.

**Response:**

ADMITTED.

**REQUEST FOR ADMISSION NO. 26:**

Admit that the Trademark Policy in **Exhibit E** was in effect on January 13, 2018.

**Response:**

Responding Party lacks information and is therefore is unable to verify Neo4j, Inc.'s Trademark Guidelines as of January 13, 2018 and on that basis DENIES.


**REQUEST FOR ADMISSION NO. 27:**

Admit that the Trademark Policy in **Exhibit E** was publicly available at the web address https://neo4j.com/trademark-policy/ on January 13, 2018.

**Response:**

Responding Party lacks information and is therefore is unable to verify the Trademark Policy as of January 13, 2018 and on that basis DENIES.

**REQUEST FOR ADMISSION NO. 28:**

Admit that **Exhibit F** *attached hereto is a printout of iGov Inc.'s "about" webpage as it existed on January 13, 2018, which was produced in this litigation by your counsel in html format on July 1, 2019.*

**Response:**

ADMITTED.

**REQUEST FOR ADMISSION NO. 29:**

*Admit that iGov Inc.'s use of "Government Package for Neo4j" in* **Exhibit F** *violated Neo4j, Inc.'s Trademark Policy that was in effect on January 13, 2018.*

**Response:**

DENIED.

**REQUEST FOR ADMISSION NO. 30:**

*Admit that iGov Inc.'s use of "Government Package for Neo4j" in* **Exhibit F** *violated Neo4j, Inc.'s Trademark Policy set forth in* **Exhibit E.**

**Response:**

DENIED.

**REQUEST FOR ADMISSION NO. 31:**

Admit that iGov Inc.'s use of "Government Package for Neo4j" in **Exhibit F** without proper trademark notices violates Neo4j Inc.'s Trademark Policy attached hereto as **Exhibit E.**

**Response:**

DENIED.

**REQUEST FOR ADMISSION NO. 32:**

Admit that iGov Inc.'s use of the NEO4J® Mark iGov Inc.'s "about" webpage as it existed on January 13, 2018 was not authorized by Neo4j, Inc.

**Response:**

DENIED.

**REQUEST FOR ADMISSION NO. 33:**

Admit that **Exhibit G** attached hereto is a printout of iGov Inc.'s "downloads" webpage as it existed on January 13, 2018, which was produced in this litigation by your counsel in html format on July 1, 2019.

**Response:**

ADMITTED.

**REQUEST FOR ADMISSION NO. 34:**

Admit that **Exhibit G** contains the statement "If you have a question for us, please email us at neo4j@igovsol.com."

**Response:**

ADMITTED.

**REQUEST FOR ADMISSION NO. 35:**

Admit that Neo4j, Inc. did not authorize iGov Inc.'s use of the NEO4J® Mark in iGov Inc.'s email address "neo4j@igovsol.com" as reflected in **Exhibit G.**

**Response:**

DENIED.

**REQUEST FOR ADMISSION NO. 36:**

Admit that iGov Inc.'s use of the NEO4J® Mark on iGov Inc.'s "downloads" webpage as it existed on January 13, 2018 was not authorized by Neo4j, Inc.

**Response:**

DENIED.

**REQUEST FOR ADMISSION NO. 37:**

Admit that **Exhibit H** attached hereto is a printout of iGov Inc.'s "neo4j" webpage as it existed on January 13, 2018, which was produced in this litigation by your counsel in html format on July 1, 2019.

**Response:**

ADMITTED.


**REQUEST FOR ADMISSION NO. 38:**

Admit that iGov Inc.'s use of "Government Development Packages for Neo4j" in **Exhibit H** violated Neo4j, Inc.'s Trademark Policy set forth in **Exhibit E**.

**Response:**

DENIED.


**REQUEST FOR ADMISSION NO. 39:**

Admit that iGov Inc.'s use of the NEO4J® Mark in **Exhibit H** was not authorized by Neo4j, Inc.

**Response:**

DENIED.


**REQUEST FOR ADMISSION NO. 40:**

Admit that iGov Inc. controls the content on website located at www.graphstack.io.

**Response:**

ADMITTED.


**REQUEST FOR ADMISSION NO. 41:**

Admit that **Exhibit I** attached hereto is a true and correct printout of the webpage located at www.graphstack.io as it existed on October 2, 2019.

**Response:**

Admit that Exhibit I is a true and correct printout of the webpage located at www.graphstack.io as it existed on September 13, 2019. After a reasonable inquiry, no information is readily obtainable to verify if Exhibit I is true and correct as the webpage existed on October 2, 2019.

**REQUEST FOR ADMISSION NO. 42:**

Admit that the www.graphstack.io webpage attached hereto as **Exhibit I** contains a hyperlink within "Neo4j's Release Notes" that redirect users to https://neo4j.com/release-notes/neo4j-3-5-3/.

**Response:**

Admitted.

**REQUEST FOR ADMISSION NO. 43:**

Admit that the www.graphstack.io webpage attached hereto as **Exhibit I** contains a hyperlink within "Neo4j's Whats New Page" that redirect users to https://neo4j.com/whats-new-in-neo4j/.

**Response:**

Admitted.

**REQUEST FOR ADMISSION NO. 44:**

Admit that **Exhibit J** is a printout of Neo4j, Inc.'s Trademark Guidelines as they existed on August 13, 2020.

**Response:**

Admitted that Exhibit J is a true and correct printout of Neo4j, Inc.'s Trademark Guidelines as it existed on August 5th, 2020. After a reasonable inquiry, no information is readily obtainable to verify if Exhibit J is true and correct as of August 13, 2020, and on that basis Responding party denies.

**REQUEST FOR ADMISSION NO. 45:**

Admit that Neo4j, Inc.'s Trademark Guidelines in **Exhibit J** have been in effect since April 3, 2019.

**Response:**

Admit that Neo4j, Inc.'s Trademark Guidelines in Exhibit J were posted since April 14th, 2020. After a reasonable inquiry, no information is readily obtainable to verify if Exhibit J were posted since April 3, 2019, and on that basis Responding party denies.

Dated:  October 29, 2020

    ___/s/ Adron G. Beene_____
    Adron W. Beene Sb# 129040
    Adron G. Beene Sb# 298088
    Attorney At Law
    1754 Technology Drive, Suite 228
    San Jose, CA 95110
    Tel: (408) 392-9233
    Fax: (866) 329-0453
    adron@adronlaw.com

    Attorney For Defendants and Counter
    Claimant PURETHINK LLC, a Delaware
    Limited Liability Company, IGOV INC., a
    Virginia Corporation, and JOHN MARK
    SUHY

# Verification

I, John Mark Suhy, am a defendant, and an officer for defendants Purethink LLC and IGOV Inc. in the above cause of action. I have read the following:

**1. DEFENDANT IGOV INC.'S FOURTH AMENDED RESPONSE TO PLAINTIFF NEO4J SWEDEN AB'S REQUEST FOR ADMISSION, SET ONE TO DEFENDANT IGOV INC.**

I am familiar with the contents of the above.

I declare under penalty of perjury under the laws of the United Stated of America that the foregoing responses are true and correct, except as to those matters which are therein stated to be on information or belief, and as to those matters, I believe them to be true.

Signed in Alexandria, Virginia, on October 29, 2020

_____

John Mark Suhy

VERIFICATION

**EXHIBIT 14**

119 captures
14 Dec 2001 – 8 Jun 2019

SEP **NOV** DEC
◀ **01** ▶
**2016** **2017** 2019  About this capture

# Neo4j Government Edition News

If your agency was planning on procuring Neo4j Government Edition, then please checkout iGov Inc's new **Government Package** for Neo4j.

PureThink, the company who created, managed and sold Neo4j Government Edition to all US Federal agencies has ceased their partnership with Neo Technology and Neo4j Government Edition has been retired.

The principle behind PureThink and the Government Package has created a new corporate entity called **iGov Inc**, which is not a Neo4j Solution Partner. Because iGov Inc is not a solution partner, it can offer packages at great cost savings to US Government Agencies as it has no restrictions on working with Neo4j Enterprise open source licenses!

iGov Inc and the new **Government Package** for Neo4j allows agencies to spend their money on developing innovative solutions around Neo4j, not paying for unnecessary production support before they even have a solution built that could be in production.

iGov Inc's new **Government Package** for Neo4j can be added to any Neo4j instance making it a "Government Edition". By default, all Government Packages for Neo4j now comes with Neo4j Enterprise included under it's open source license!

Learn More about iGov Inc and it's new Government Package for Neo4j

## **WHO** WE ARE

PureThink is a software development company established in 2002 and located in Reston, Va. It is part of the Dulles High Tech corridor and Washington, DC Metro area.

## DISTINGUISHERS



- Solid past performance in Federal, DOD, and commercial spaces.
- Our management team is comprised of highly experienced technology professionals.
- No off-shoring : Because we focus on the US Government exclusively, our resources are all located in the USA and have the ability to be cleared or already hold clearances.
- Extensive domain knowledge, adaptability, and experience in emerging technologies, methodologies and processes.
- Security focused. All of our software development professionals must go through security training. We were 2011 RSA speakers regarding continuous monitoring and the cloud.
- Our company is well established with over 12 years in business.

## General Contact

(703) 348-3968

☐ info@purethink.com

☐ 1902 Campus Commons Drive Suite 101 Reston, VA 20191

## Customer Support

Toll Free: **+1 (855) 979-7771**

☐ support@purethink.com

See our support page for more information.

# PHILOSOPHY

To help you succeed, we believe in working closely and cooperatively with our clients. Our goal is to ensure everyone on the same page regarding project status, methods and tasks. Our approach is to develop software according to an Agile methodology which means we emphasize people and interaction rather than complicated processes and endless documentation.

# RESULTS

Our mission is to bring the greatest value to our clients by leveraging our considerable depth of resources and experience. We align our approach to the specific business drivers of each business we work with whom we tailor

solutions to best suit different cultural environments, industries, and market conditions. We focus on business strategy implementation, not business strategy development.

## DUNS & CAGE Information

- DUNS: 147591627
- CAGE Code: 5KLU9

## NAICS Codes

- 511210 Software Reseller
- 541511 Software Development
- 541512 Systems Integration / CAD / CAM / LAN
- 541519 Software Installation / Disaster Recover
- 611420 Software Training
- 541330 Engineering Services

## SIC Codes

- 5045 Computers and Computer Peripheral Equipment and Software
- 7371 Computer Programming Services
- 7372 Prepackaged Software
- 7373 Computer Integrated Systems Design
- 7378 Computer Maintenance and Repair
- 7379 Computer Related Services, Not Elsewhere Classified

## About PureThink

PureThink is a software development company established in 2002 and located in Reston, Va. We focus on bringing innovative technologies to US Federal and State government agencies.

CONTACT US

### (703) 348-3968

□ info@purethink.com

□ 1902 Campus Commons Drive Suite 101 Reston, VA 20191

(200 of 299), Page 200 of 299
00020018
Case 5:18-cv-07182-EJD Document 98-1 Filed 12/11/20 Page 76 of 1198



© 2017 PureThink Corp All Rights Reserved.

00020019

33 captures
10 Feb 2003 – 19 Aug 2018

OCT   AUG   SEP
◄   **19**   ►
2016  **2018**  201   □ About this capture

# Bringing  technologies to the government.

PureThink focuses on bringing innovative, emerging technologies to the US Government.

[ Join Our Team! ]

## WHO WE ARE

PureThink is a software development company established in 2002 and located in Reston, Va. It is part of the Dulles High Tech corridor and Washington, DC Metro area.

## DISTINGUISHERS

- Solid past performance in Federal, DOD, and commercial spaces.
- Our management team is comprised of highly experienced technology professionals.
- No off-shoring : Because we focus on the US Government exclusively, our resources are all located in the USA and have the ability to be cleared or already hold clearances.
- Extensive domain knowledge, adaptability, and experience in emerging technologies, methodologies and processes.
- Security focused. All of our software development professionals must go through security training. We were 2011 RSA speakers regarding continuous monitoring and the cloud.
- Our company is well established with over 12 years in business.

### General Contact

(703) 348-3968

□ info@purethink.com

□ 1902 Campus Commons Drive Suite 101 Reston, VA 20191

Customer Support

Toll Free: **+1 (855) 979-7771**

support@purethink.com

See our support page for more information.

# PHILOSOPHY

To help you succeed, we believe in working closely and cooperatively with our clients. Our goal is to ensure everyone on the same page regarding project status, methods and tasks. Our approach is to develop software according to an Agile methodology which means we emphasize people and interaction rather than complicated processes and endless documentation.

# RESULTS

Our mission is to bring the greatest value to our clients by leveraging our considerable depth of resources and experience. We align our approach to the specific business drivers of each business we work with whom we tailor solutions to best suit different cultural environments, industries, and market conditions. We focus on business strategy implementation, not business strategy development.

## DUNS & CAGE Information

- DUNS: 147591627
- CAGE Code: 5KLU9

## NAICS Codes

- 511210 Software Reseller
- 541511 Software Development
- 541512 Systems Integration / CAD / CAM / LAN
- 541519 Software Installation / Disaster Recover
- 611420 Software Training
- 541330 Engineering Services

(203 of 299), Page 203 of 299
00020021
Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 79 of 1198

## SIC Codes

- 5045 Computers and Computer Peripheral Equipment and Software
- 7371 Computer Programming Services
- 7372 Prepackaged Software
- 7373 Computer Integrated Systems Design
- 7378 Computer Maintenance and Repair
- 7379 Computer Related Services, Not Elsewhere Classified

## About PureThink

PureThink is a software development company established in 2002 and located in Reston, Va. We focus on bringing innovative technologies to US Federal and State government agencies.

CONTACT US

**(703) 348-3968**

☐ info@purethink.com

☐ 1902 Campus Commons Drive Suite 101 Reston, VA 20191

**PURE**THINK

© 2018 PureThink Corp All Rights Reserved.

[Neo4j] is a trademark of Neo Technology, Inc.

# EXHIBIT 15





Witness:
John Mark Suhy
**Exhibit 03**
10/22/2020  B Gerald

# Bringing  open source technologies to the government.

iGov focuses on building innovative opening source based solutions for the US Government.

## **WHO** WE ARE

iGov is a Virginia software development company located in Reston, Va. iGov Inc is located in the Dulles High Tech corridor and Washington, DC Metro area.

The principle behind PureThink and the developer of the retired Neo4j Government Edition has created iGov Inc, which is not a Neo4j Solution Partner. Every US Federal government procurement of Neo4j was through PureThink and supported by our team. Now we can offer packages that allow US Federal agencies to gain all the benefits they had from our team's experience and past performance with the ability to apply it to Neo4j Enterprise using its free open source license!

What sets iGov Inc apart, is the past performance and experience our team brings to the table as well as the ability to develop solutions and support Neo4j Enterprise open source licenses. You will find this is a rare combination especially considering the fact that we can now support Neo4j Enterprise open source licenses.

Neo4j Government Edition has been retired by Neo4j Inc..

PureThink, the company who created, managed and sold Neo4j Government Edition to all US Federal agencies has ceased their partnership with Neo4j Inc.. The principle behind PureThink and the Government Package has created a new corporate entity called **iGov Inc**, which is not a Neo4j Solution Partner. Because we are not a solution partner, we are not under the extremely restrictive terms dealing with services around Neo4j open source licenses which applies to partners. With iGov Inc, we can offer packages that allow US Federal agencies to gain all the benefits they have from our team's experience and past performance we've gained, but now with the ability to apply it to Neo4j Enterprise open source licenses! Before now, the only option for development or non-critical system support was the extremely costly commercial production support packages. Things have changed, and US Federal agencies are going to benefit from huge savings related to

Neo4j and Neo4j solutions.

iGov Inc and the Government Package for Neo4j allows agencies to spend their money on developing innovative solutions around Neo4j, not paying for unnecessary production support before they even have a solution built that could be in production.

The new **Government Package for Neo4j** can be added to any Neo4j instance making it a "Government Edition".

By default, **all Government Packages for Neo4j now comes with Neo4j Enterprise** included under its open source license!

Once ready for production, agencies can choose to have either iGov Inc, a Neo4j Solution partner of their choice, or their own team handle production support. This allows agencies to decide what best fits their production and system needs.

iGov Inc and its partners offered production support packages that cover complex big data architectures that usually make up a Neo4j solution not just Neo4j itself. Ex: ElasticSearch, Apache Kafka, and more.

Please contact us for past performance references, and current Federal agency customer references to find out more about our team and offerings.

Procurement offices can reach out to us for necessary paperwork, documentation, and more needed to make smart procurement decisions. It's simple, if your agency is in development, then procuring a Neo4j Enterprise commercial package is likely not in the best interest of your agency.

Please contact neo4j@igovsol.com for more information.

# DISTINGUISHERS

- Our team has solid Neo4j solutions development and support past performance in Federal government.
- Our management team is comprised of highly experienced technology professionals.
- No off-shoring : Because we focus on the US Government exclusively, our resources are all located in the USA and have the ability to be cleared or already hold clearances.
- Extensive domain knowledge, adaptability, and experience in emerging technologies, methodologies and processes.

General Contact

(703) 862-7780

info@igovsol.com

1902 Campus Commons Drive Suite 101 Reston, VA 20191

Customer Support

Toll Free: **+1 (855) 979-7771**

support@igovsol.com

See our support page for more information.

# PHILOSOPHY

To help you succeed, we believe in working closely and cooperatively with our clients. Our goal is to ensure everyone on the same page regarding project status, methods and tasks. Our approach is to develop software according to an Agile methodology which means we emphasize people and interaction rather than complicated processes and endless documentation.

# RESULTS

Our mission is to bring the greatest value to our clients by leveraging our considerable depth of resources and experience. We align our approach to the specific business drivers of each business we work with whom we tailor solutions to best suit different cultural environments, industries, and market conditions. We focus on business strategy implementation, not business strategy development.

DUNS & CAGE Information Given upon request.

NAICS Codes

- 511210 Software Reseller

- 541511 Software Development
- 541512 Systems Integration / CAD / CAM / LAN
- 541519 Software Installation / Disaster Recover
- 611420 Software Training
- 541330 Engineering Services

## SIC Codes

- 5045 Computers and Computer Peripheral Equipment and Software
- 7371 Computer Programming Services
- 7372 Prepackaged Software
- 7373 Computer Integrated Systems Design
- 7378 Computer Maintenance and Repair
- 7379 Computer Related Services, Not Elsewhere Classified

## About iGov

iGov Inc. is a software development company located in Reston, Va.

We focus on building innovative solutions for US Government agencies using open-source technologies.

CONTACT US

## (703) 862-7780

info@igovsol.com

1902 Campus Commons Drive Suite 101 Reston, VA 20191



© 2019 iGov Inc. All Rights Reserved.

# EXHIBIT 16



# Downloads

iGov Inc is now the only US Federal contractor who compiles enterprise packages directly from the official Neo4j source code. These packages are open source and have none of the restrictions the commercial version have. To get an idea of just how much you are saving by using Neo4j Enterprise under the open source license - check out this blog post.

As of November 2017, Neo4j Inc removed the free open source Neo4j Enterprise downloads from it's distribution site. We stepped up and started compiling the package and making the binaries available for all. These binaries are under the standard AGPLv3 license.

See our blog post to learn more

iGov Inc has no relationship with Neo4j Inc. Since Neo4j Inc has removed their open source binaries from their download sites, we have to compile the packages below. All the downloads on this page are compiled directly from the official neo4j source code repositories located at https://github.com/neo4j. There are no modifications to the code.

iGov Inc and it's founders are US citizens focusing solely on US Federal government consulting and professional services . Please contact us for past performance references or if you would like to be connected with the US Federal agencies currently using the open source packaged Neo4j Enterprise binaries.

The packages below were compiled by iGov Inc from official Neo4j source code repositories. If you would like us to compile a specific version of Neo4j for you (ex: 3.2.1), please contact us.

Neo4j Enterprise Commercial Prices Blog Post

Neo4j open source FAQs

The packages on this page are compiled by iGov Inc using the official Neo4j source code repositories located at https://github.com/neo4j. We do not modify the source code.

If you are a federal client and want to download a package that has the FISMA framework modules bundled in which turn on intra-cluster encryption and provide other security controls, then please login to the support portal to find those download links or email support@igovsol.com.

We do not provide Neo4j Community Edition binaries simply because it makes no sense for federal agencies to use them when they have the ability to use Neo4j Enterprise for free under it's AGPLv3 open source license.

This download page is kept up to date with the current Neo4j versions for each branch. If you would like an older version of Neo4j Enterprise, simply email us and we will package it and make it available to the public.

Neo4j open source FAQs

**Page 248**

# <span style="color:green">NEW!!</span> Newest 3.3.x Version: (Currently 3.3.1)

**Compiled from Neo4j Git Tag 3.3.1 (Neo4j Enterprise 3.3.1)**

[Unix/Linux/OSX Download]    [Windows Download]

# Newest 3.2.x Version: (Currently 3.2.8)

**Compiled from Neo4j Git Tag 3.2.8 (Neo4j Enterprise 3.2.8)**

[Unix/Linux/OSX Download]    [Windows Download]

# Newest 3.1.x Version (3.1.7)

**Compiled from Neo4j Git Tag 3.1.7 (Neo4j Enterprise 3.1.7)**

[Unix/Linux/OSX Download]    [Windows Download]

# Neo4j Enterprise Open Source **F**requently **A**sked **Q**uestions

We've gathered together questions we receive from agencies and integrators regarding Neo4j Enterprise Open Source licenses. If you have a question for us, please email us at neo4j@igovsol.com.

| Is Neo4j Enterprise Really Open Source? | ⌄ |
|---|---|

YES, Neo4j Enterprise is open source under the AGPLv3 open source license created by the Free software

| ...se use? | ▶ |
|---|---|

Neo4j Enterprise can be used for free under the Free Software Foundation's GNU AFFERO GENERAL PUB...

███████████████████████████████rise binaries?                    ▶

Neo4j removed the open source binaries they compiled from their distribution sites so you can no longer get ...

██████████████████████████?                                       ▶

You can get all the Neo4j Enterprise source code at the official Neo4j GitHub Repositories.

████████████████████████ worry about them?                        ▶

There simply are none that we've ever run into.

███████████████████████roduction?                                 ▶

**Yes, of course you can.** It's 100% free and open source. The standard AGPLv3 open source license simply ...

███████████████████rictions above the AGPLv3 open source license?  ▶

No, Neo4j Enterprise is released only under the standard AGPLv3 open source license that is managed by th...

██████████████████PLv3 and Neo4j Enterprise Trial?                ▶

Read the Neo4j Enterprise Trial license agreement they ask you to agree to before downloading and you will ...

# Neo4j Enterprise Commercial & Open Source
## Comparisons

There are no physical differences between Neo4j Enterprise commercial and AGPL open source licenses!
Neo4j Enterprise open source licenses have no other limitations beyond the standard GNU AGPL open source license.
The Neo4j Enterprise commercial end user license agreement (EULA) actually adds restrictions preventing you from using Neo4j open source licenses in many circumstances!! Make sure to read it!

| Neo4j Enterprise open | Neo4j Enterprise |
|---|---|

| License | source license | commercial license |
|---|---|---|
| Can use in any environment for any purpose? | **YES** | **YES** |
| Can I use this with any amount of cores without incurring additional costs? | **YES** | **NO** |
| Can I create custom derivative versions of Neo4j Enterprise? (Ex: My custom Neo4j Enterprise Edition) | **YES** | **YES** |
| Does **NOT** require you to open source your systems that simply use Neo4j Enterprise as a component in your system. | **YES** for both *You do **NOT** have to open source your system that uses Neo4j Enterprise as a server as it is intended to be used. You only need to open source custom Neo4j Enterprise derivatives under the open source license and then only under certain distribution conditions.* | |

## About iGov

iGov Inc. is a software development company located in Reston, Va.

We focus on building innovative solutions for US Government agencies using open-source technologies.

CONTACT US

**(703) 862-7780**

info@igovsol.com

1902 Campus Commons Drive Suite 101 Reston, VA 20191



© 2019 iGov Inc. All Rights Reserved.

# EXHIBIT 17





Witness:
John Mark Suhy
**Exhibit 11**
10/22/2020  B Gerald

## US Federal Government Packages for Neo4j Solutions

If your agency is planning on building a solution around Neo4j, then this package provides the best value over a commercial subscription.

Request Procurement Document Package

# Government Development Packages for **Neo4j**

iGov Inc's development packages for Neo4j are a better value than Neo4j Enterprise commercial support subscriptions for US federal agencies currently developing Neo4j solutions. Spend your budget building a solution instead of unnecessary production support for something not yet built! Its that simple!

## Know your options

It is important to know your options before you make any procurement decisions around Neo4j. The information below provides you with a complete breakdown of the 3 main Neo4j offerings available including the free open source option. Most people are not aware that Neo4j Enterprise Edition is open source like its sibling, Neo4j Community edition.

The information below should provide you with a clear understanding of your options, so you can choose what's best for your agency.

### NEO4J INC. COMMERCIAL SUBSCRIPTION
## $29K - $1M+

Commercial packages are those sold by Neo4j solutions partners. You are paying for production support. The commercial license is actually more restrictive than the open source license!

| |
|---|
| Neo4j Enterprise Software |
| Available through Neo4j Inc. and all Neo4j Solution Partners |
| Yearly Subscription. You are paying for production support backed by Neo4j Inc.. If you don't renew your subscription you simply fall back to the Neo4j Enterprise open source license. |
| Production Email and Phone Support from vendor which is backed by Neo4j Inc. |
| Commercial License (Most government agencies do not need.) |
| Cost is based on number of instances and cores. (See below) |

## IGOV INC. GOVERNMENT DEVELOPMENT PACKAGES
# $25K+

| |
|---|
| 100% of the cost goes into services aimed at building a solution around Neo4j, not unnecessary production support for something not yet built!. |
| Neo4j Enterprise Software |
| Only available through iGov Inc |
| No annual subscription, you are free to do whatever you want in the future. |
| Production Email and Phone Support from iGov Inc, but not backed by Neo4j Inc. |
| Defaults Neo4j Enterprise Open Source license. |
| No limitations on usage, instances or cores - cost goes 100% to solutions development |
| FISMA and 508 Toolkit and Services |
| Suite of Tools, Frameworks, and Starter Projects we use for scalable big data Neo4j projects. |

## OPEN SOURCE

## FREE

There is no reason you should be using Neo4j Community Edition.

Neo4j Enterprise Software (Same physical software as commercial package)

No limitations on usage, can be used in production with as many instances and cores as you want.

Standard GNU AGPL v3.0 Open source License.

Learn More about Neo4j Enterprise Open Source

DEVELOPMENT PACKAGE OVERVIEW    **PRICE COMPARISON**    PROCUREMENT COMPARISON

WHY IGOV INC ?

# Development Package Overview

The Government Development Packages are aimed at agencies who need help building a robust and scalable solution around Neo4j. Unlike the commercial production support subscriptions, 100% of the cost goes into consulting services that help you build out your solution.

All iGov Inc packages also include a suite of tools and services which are combined to address critical FISMA and accessibility requirements relating to Neo4j.

## Customer Support

iGov Inc provides umbrella support across all the components of your Neo4j solution, including Neo4j itself. For example, a solution using Neo4j Enterprise, Apache Kafka, Elastic Search, and custom micro-service architecture components are all covered under the umbrella support provided with these packages. The Neo4j commercial support subscriptions only cover Neo4j Enterprise.

## UI/UX Development

The development packages include UI and UX design services to assist developing everything from your

(218 of 299), Page 218 of 299
Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 94 of 1198
Case: 24-5538, 12/23/2024, DktEntry: 18.3, Page 218 of 299

dashboards and visualization. We ensure all development meets 508(c) requirements. We cover all modern web design frameworks including ReactJS and AngularJS. Furthermore, we provide a toolbox of open source visualization libraries and webapp starter projects to get your project up and running quickly. You can also add on UI packages such as Linkurious OGMA and Graphlytic Visualization tools and APIs.

## Starter Projects and Toolsets

We provide a suite of starter projects (maven and gradle), templates, and tools to get your Neo4j projects off the ground quickly. Our Starters include Docker images, Microservice architecture components (api gateways, service registries, etc), UI and visualization components and more.

## Enterprise Architecture Development

Neo4j is usually just one of many components in a common graph solution. Other components include ElasticSearch, Apache Kafka, and other technologies.

Our team brings a wide range of enterprise architecture development expertise to the table. From monolithic to micro-service architectures, our team will help design a solution that best fit's your agency's needs.

## GraphGrid Data Platform

GraphGrid Data Platform (GDP) is an enterprise-grade graph data management platform that enables a centralized architecture for running batch, interactive and real-time analytics and data processing applications simultaneously across your connected graph data. Development packages include the tools, and platform components needed to get a robust and scalable ETL pipeline in place.

## Newest Libraries and Repositories

The Government Packages for Neo4j include many of the leading technologies which are all covered under the umbrella package support. In many cases, this allows for agencies to start working with new technologies that would have usage restrictions if not part of a vendor supported package such as this. All libraries and repositories are kept on Amazon GovCloud and can be easily accessed once an agency whitelists the servers. Development packages include access to the newest libraries and repositories for the tools we package and support.

## GovCloud Development and Continuous Integration Environment

We understand that many agencies have not adopted the newest technologies and best practices which can make modern web application development almost impossible. Our development packages include use of GovCloud resources including EC2, S3,Container Services, and more.



# Pricing Comparison

Below is a price comparison for a Neo4j Inc. commercial subscription package covering 3 production instances with 8 cores each. (3x8). The Neo4j Inc. commercial package is not a perpetual license, and the commercial EULA limits your use of Neo4j open source licenses in many ways once accepted. Notice that it also has unnecessary production elements which you are paying for as part of the subscription. Neo4j Inc's pricing can be found via a simple GSA Advantage search.

## Neo4j Inc. Commercial Subscription (Annual Subscription)

Neo4j Enterprise Bundle – Standard cluster for enterprise applications that are used by more than one department (or by a larger department), or by customer-facing applications.

Neo4j Enterprise Bundle basic configuration includes:

- a. 3 Production Instances (up to 8 Cores per Instance).
- b. 3 Test Instances (no Core limit).
- c. Premium Support: 24 x 7 / 1-hour response time for Severity 1 issues, **email and phone.**
- d. Unlimited number of licensed developers.

| Name & Description | Annual Subscription Price |
|---|---|
| Neo4j Enterprise Bundle Base (3 Instances X 8 Cores Each) | $189,188 / yr |
| Additional Production Capacity (per Core) | + $6,609 / yr |
| Disaster Recovery (per Core) | + $3,305 / yr |
| Additional Test Instances (per Instance) | + $4,957 / yr |
| Additional Instance (up to 8 Cores) | + $52,874  / yr |
| 8-Core pack | + $52,874 / yr |
| 12-Core pack | + $79,310 / yr |
| 16-Core pack | + $105,747 / yr |

| 24-Core pack | + $158,621 / yr |
| 32-Core pack | + $211,494 / yr |

## iGov Inc's Government Development Package with Neo4j Enterprise

Comes with same physical Neo4j Enterprise software. Under open source license there are no limitations on how you use it. You have no limits on environments, number of instances, cores, etc!

Government Bundle for Neo4j Enterprise basic configuration includes:

- a. Unlimited instances with no core limits for any environment! (dev, test, staging, production, etc)
- c. Premium support and development services by iGov Inc. Unlike the Neo4j commercial package, we support your entire architecture not just Neo4j. (Neo4j, ElasticSearch, UI, Micro Services, etc..)
- d. No limitations on number of developers, etc.

## $25,000+

## 100% goes into development.

The minimum development package costs $25,000. For comparison - you can choose the $189,000 Development package option - where $189,000 goes into consulting services at GSA approved rates.

Of course - you can choose how much you want to spend. We simply offer packages that parallel commercial subscription rates to help make procurement easier.

# Neo4j Inc. Commercial Support vs iGov Inc. Development Package Comparison

So what exactly do you get with a Neo4j Inc. commercial subscription? You get the peace of mind knowing Neo4j Inc. is there to assist with production support tickets if the vendor you purchased it from can not solve an issue on their own. This is not very useful when you are in development, using Neo4j for R & D, or do not have a mission critical Neo4j deployment.

|  | Government Development Package w/ Neo4j Enterprise | Neo4j Enterprise commercial support subscription | Neo4j Enterprise (default open source license) |
|---|---|---|---|
| Has full Neo4j Enterprise functionality. | **YES** | **YES** | **YES** |
| Can purchase through Neo4j Inc. or its resellers | **NO** *The Government Packages for Neo4j are only available through iGov Inc.* | **YES** | **NO** *Neo4j partners are forbidden on offering services or support for Neo4j open source licenses.* |
| Can use in any environment for any purpose? | **YES** | **YES** *\*Your subscription has limits on number of cores and instances* | **YES** |
| Comes with consulting services which can be used to build your solution around Neo4j. (Including UI/UX design, ETL implementation, enterprise architecture, and FISMA and 508c services) | **YES** *This is what seperates out the Government Development Package from the commercial support subscription. Support is swapped out with consulting services you can use to build your solution around Neo4j.* | **NO** | **NO** |
| Comes with tools, services and support to address Accessability (508c) and FISMA requirements. | **YES** | **NO** | **NO** |
| Can I use this with any amount of cores or instances without incurring additional costs? | **YES** | **NO** *\*The cost of a commercial support subscription is based on the cores and instances you use.* | **YES** |
| Can I create custom derivative versions of | **YES** | **YES** | **YES** |

| | | | |
|---|---|---|---|
| Neo4j Enterprise? (Ex: My custom Neo4j Enterprise Edition) | | | |
| Does Neo4j Inc. provide official email and phone production support? | **No\*** *Development packages do not need production support, they swap out production support for consulting services you use to build your solution.* | **YES** | **NO** |
| Does **NOT** require you to open source your systems that simply use Neo4j Enterprise as a component in your system. | **YES** for all *You do **NOT** have to open source your system that uses Neo4j Enterprise as a server as it's intended to be used. You only need to open source custom Neo4j Enterprise derivatives under the open source license and then only under certain distribution conditions.* | | |

# Why iGov Inc ?

Our team is the same team that created Neo4j Enterprise Government Edition. Further, we are the same team that sold and supported every US Federal Government procurement of Neo4j Enterprise Government Edition up until its retirement in July 2017.

iGov Inc's new Government Package can be used as a direct replacement for the now retired Neo4j Government Edition. iGov Inc is the only vendor providing this package. Even more, this package includes Neo4j Enterprise under its open source license!

**How is this possible?** Read below to learn more....

**Neo4j Government Edition** has been retired by Neo4j Inc..

PureThink, the company who created, managed and sold Neo4j Government Edition to all US Federal

agencies has ceased their partnership with Neo4j Inc.. The principle behind PureThink and the Government Package has created a new corporate entity called **iGov Inc**, which is not a Neo4j Solution Partner. Because we are not a solution partner, we are not under the extremely restrictive terms dealing with services around Neo4j open source licenses which applies to partners. With iGov Inc, we can offer packages that allow US Federal agencies to gain all the benefits they have from our team's experience and past performance we've gained, but now with the ability to apply it to Neo4j Enterprise open source licenses! Before now, the only option for development or non-critical system support was the extremely costly commercial production support packages. Things have changed, and US Federal agencies are going to benefit from huge savings related to Neo4j and Neo4j solutions.

iGov Inc and the Government Package for Neo4j allows agencies to spend their money on developing innovative solutions around Neo4j, not paying for unnecessary production support before they even have a solution built that could be in production.

The new **Government Package for Neo4j** can be added to any Neo4j instance making it a "Government Edition".

By default, **all Government Packages for Neo4j now comes with Neo4j Enterprise** included under its open source license!

Once ready for production, agencies can choose to have either iGov Inc, a Neo4j Solution partner of their choice, or their own team handle production support. This allows agencies to decide what best fits their production and system needs.

iGov Inc and its partners offered production support packages that cover complex big data architectures that usually make up a Neo4j solution not just Neo4j itself. Ex: ElasticSearch, Apache Kafka, and more.

Please contact us for past performance references, and current Federal agency customer references to find out more about our team and offerings.

Procurement offices can reach out to us for necessary paperwork, documentation, and more needed to make smart procurement decisions. It's simple, if your agency is in development, then procuring a Neo4j Enterprise commercial package is not likely in the best interest of your agency.

Please contact neo4j@igovsol.com for more information.

iGov Inc is the only US Federal vendor whose team has proven past performance supporting and developing innovative solutions around Neo4j and the ability to work with Neo4j Enterprise open source licenses!

## About iGov

iGov Inc. is a software development company located in Reston, Va.

We focus on building innovative solutions for US Government agencies using open-source technologies.

CONTACT US

**(703) 862-7780**

info@igovsol.com

1902 Campus Commons Drive Suite 101 Reston, VA 20191



© 2019 iGov Inc. All Rights Reserved.

# EXHIBIT 18

(226 of 299), Page 226 of 299
Case: 24-5538, 12/23/2024, DktEntry: 18.3, Page 226 of 299
Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 102 of 1198



iGov Inc is now the only US Federal contractor providing Neo4j Enterprise binaries packaged with it's free *Open Source* license!

As of November 2017, Neo4j Inc removed the free open source Neo4j Enterprise downloads from it's distribution site making iGov Inc the only place where you can down load it.

Learn More

## Introducing Gov Development Packages for **Neo4j**

US Federal agencies developing Neo4j solutions now have a cost effective development package for Neo4j. Spend your budget building a solution instead of unnecessary production support! If you are looking at making a Neo4j Enterprise procurement, then you should be aware of this new Package as in a majority of the cases, it offers a better value than Neo4j Inc.'s commercial subscriptions.

US Federal Agencies and Government Package for Neo4j Procurements

Learn More

Please contact us for more information. The new iGov Inc
packages offer a better value to US Federal government agencies
in a majority of the cases.

## About iGov

iGov Inc. is a software development company located in Reston, Va.

We focus on building innovative solutions for US Government agencies using open-source technologies.

CONTACT US

**(703) 862-7780**

info@igovsol.com

1902 Campus Commons Drive Suite 101 Reston, VA 20191



© 2019 iGov Inc. All Rights Reserved.

# EXHIBIT 19

00036000

**From:** **John Mark Suhy** jmsuhy@igovsol.com 📎
**Subject:** Neo4j Procurement Follow up and guidance on your EULA
**Date:** September 8, 2017 at 1:53 PM
**To:** Carol.E.Sinnard@nga.ic.gov
**Cc:** carol.e.sinnard@nga.mil

JS

Hello Carol,

We spoke on the phone.  I just wanted to reach out to you and send you some information you can forward to the end-users at your agency for next year.    Unfortunately you may have
procured a package that isn't in your best interest, but you will be more informed next year.

I setup a page to help explain all your options   https://igovsol.com/neo4j.html

I also attached the PDF version of the page.

I want to give you some guidance on your EULA before you sign anything.

You will be asked to sign a 3-way form binding you to the commercial EULA.    You want them to remove the term in the EULA that forbids you from using open source licenses next to commercial licenses.

If you do not ask them to remove that term - your agency could be on the hook for a lot of money if you have other teams using Neo4j under it's free open source license as you would have to convert them to commercial.

Until we broke away from Neo4j Inc last month, we sold every Neo4j subscription to the US federal government under our other company PureThink.  I am the core developer who created the Neo4j Government Edition which was retired by Neo last month.

I hope I can help next year.

Have a great weekend,

Respectfully,

John Mark Suhy
iGov Inc
jmsuhy@igovsol.com
703-862-7780
https://igovsol.com



neo4j-gov-dev-
overview-v1.pdf

00036001

# Government Development Packages for **Neo4j**

iGov Inc's development packages for Neo4j are a better value than Neo4j Enterprise commercial support subscriptions for US federal agencies currently developing Neo4j solutions. Spend your budget building a solution instead of unnecessary production support for something not yet built!

Its that simple!

## Know your options

It is important to know your options before you make any procurement decisions around Neo4j. The information below provides you with a complete breakdown of the 3 main Neo4j offerings available including the free open source option. Most people are not aware that Neo4j Enterprise Edition is open source like its sibling, Neo4j Community edition.

The information below should provide you with a clear understanding of your options, so you can choose what's best for your agency.

| COMMERCIAL PACKAGE $29K - $MILLIONS+ | GOVERNMENT DEVELOPMENT PACKAGES $25K+ | OPEN SOURCE FREE |
|---|---|---|
| Commercial packages are those sold by Neo4j solutions partners. You are paying for production support. The commercial license is actually more restrictive than the open source license! | 100% of the cost goes into services aimed at building a solution around Neo4j, not unnecessary production support for something not yet built!. | There is no reason you should be using Neo4j Community Edition. |
| Neo4j Enterprise Software | Neo4j Enterprise Software | Neo4j Enterprise Software (Same physical software as commercial package) |
| Available through Neo4j Inc. and all Neo4j Solution Partners | Only available through iGov Inc | No limitations on usage, can be used in production with as many instances and cores as you want. |
| Yearly Subscription. You are paying for production support backed by Neo4j Inc.. If you don't renew your subscription you simply fall back to the Neo4j Enterprise open source license. | No annual subscription, you are free to do whatever you want in the future. | Standard GNU AGPL v3.0 Open source License. |
| Production Email and Phone Support from vendor which is backed by Neo4j Inc. | Production Email and Phone Support from iGov Inc, but not backed by Neo4j Inc. | |
| Commercial License (Most government agencies do not need.) | Defaults Neo4j Enterprise Open Source license. | |
| Cost is based on number of instances and cores. (See below) | No limitations on usage, instances or cores - cost goes 100% to solutions development | |
| | FISMA and 508 Toolkit and Services | |
| | Suite of Tools, Frameworks, and Starter Projects we use for scalable big data Neo4j projects. | |

00036001

# Development Package Overview

The Government Development Packages are aimed at agencies who need help building a robust and scalable solution around Neo4j. Unlike the commercial production support subscriptions, 100% of the cost goes into consulting services that help you build out your solution.

All iGov Inc packages also include a suite of tools and services which are combined to address critical FISMA and accessibility requirements relating to Neo4j.

 **Customer Support**

iGov Inc provides umbrella support across all the components of your Neo4j solution, including Neo4j itself. For example, a solution using Neo4j Enterprise, Apache Kafka, Elastic Search, and custom micro-service architecture components are all covered under the umbrella support provided with these packages. The Neo4j commercial support subscriptions only cover Neo4j Enterprise.

 **UI/UX Development**

The development packages include UI and UX design services to assist developing everything from your dashboards and visualization. We ensure all development meets 508(c) requirements. We cover all modern web design frameworks including ReactJS and AngularJS. Furthermore, we provide a toolbox of open source visualization libraries and webapp starter projects to get your project up and running quickly.
You can also add on UI packages such as Linkurious OGMA and Graphlytic Visualization tools and APIs.

 **Starter Projects and Toolsets**

We provide a suite of starter projects (maven and gradle), templates, and tools to get your Neo4j projects off the ground quickly. Our Starters include Docker images, Microservice architecture components (api gateways, service registries, etc) and UI and visualization components and more.

 **Enterprise Architecture Development**

Neo4j is usually just one of many components in a common graph solution. Other components include ElasticSearch, Apache Kafka, and other technologies.

Our team brings a wide range of enterprise architecture development expertise to the table. From monolithic to micro-service architectures, our team will help design a solution that best fit's your agency's needs.

 **GraphGrid Data Platform**

GraphGrid Data Platform (GDP) is an enterprise-grade graph data management platform that enables a centralized architecture for running batch, interactive and real-time analytics and data processing applications simultaneously across your connected graph data. Development packages include the tools, and platform components needed to get a robust and scalable ETL pipeline in place.

 **Newest Libraries and Repositories**

The Government Packages for Neo4j include many of the leading technologies which are all covered under the umbrella package support. In many cases, this allows for agencies to start working with new technologies that would have usage restrictions if not part of a vendor supported package such as this. All libraries and repositories are kept on Amazon GovCloud and can be easily accessed once an agency whitelists the servers. Development packages include access to the newest libraries and repositories for the tools we package and support.

 **GovCloud Development and Continuous Integration Environment**

We understand that many agencies have not adopted the newest technologies and best practices which can make modern web application development almost impossible. Our development packages include use of GovCloud resources including EC2, S3,Container Services, and more.

    

00036003

(292 of 299), Page 232 of 299 Case: 24-5538, 12/23/2024, DktEntry: 18.3, Page 232 of 299
Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 108 of 1198

## Pricing Comparison

Below is a price comparison for a 3x8 core yearly production support subscription. The commercial package is not perpetual, and the commercial EULA limits your use of Neo4j open source licenses in many ways once accepted. Notice that it also has unnecessary production elements which you are paying for as part of the subscription.

### Neo4j Enterprise Commercial Subscription (Annual Subscription)

Neo4j Enterprise Bundle – Standard cluster for enterprise applications that are used by more than one department (or by a larger department), or by customer-facing applications.

Neo4j Enterprise Bundle basic configuration includes:

- a. 3 Production Instances (up to 8 Cores per Instance).
- b. 3 Test Instances (no Core limit).
- c. Premium Support: 24 x 7 / 1-hour response time for Severity 1 issues, **email and phone.**
- d. Unlimited number of licensed developers.

| Name & Description | Annual Subscription Price |
|---|---|
| Neo4j Enterprise Bundle Base (3 Instances X 8 Cores Each) | $189,188 / yr |
| Additional Production Capacity (per Core) | + $6,609 / yr |
| Disaster Recovery (per Core) | + $3,305 / yr |
| Additional Test Instances (per Instance) | + $4,957 / yr |
| Additional Instance (up to 8 Cores) | + $52,874  / yr |
| 8-Core pack | + $52,874 / yr |
| 12-Core pack | + $79,310 / yr |
| 16-Core pack | + $105,747 / yr |
| 24-Core pack | + $158,621 / yr |
| 32-Core pack | + $211,494 / yr |

### iGov Inc's Government Development Package with Neo4j Enterprise

Comes with same physical Neo4j Enterprise software. Under open source license there are no limitations on how you use it. You have no limits on environments, number of instances, cores, etc!

Government Bundle for Neo4j Enterprise basic configuration includes:

- a. Unlimited production instances. It is open source!
- b. Unlimited of course
- c. Premium support and development services by iGov Inc. Unlike the Neo4j commercial package, we support your entire architecture not just Neo4j. (Neo4j, ElasticSearch, UI, Micro Services, etc..)
- d. Unlimited number of licensed developers.

## $25,000+

### 100% goes into development.

The minimum development package costs $25,000. For comparison - you can choose the $189,000 Development package option - where $189,000 goes into consulting services at GSA approved rates.

Of course - you can choose how much you want to spend. We simply offer packages that parallel commercial subscription rates to help make procurement easier.

| LCAT | Rate |
|---|---|
| Project Manager | $104.89 |
| UI/Web Designer 1 | $83.35 |
| Principle Enterprise Application Modeler/Developer | $127.50 |
| Senior Enterprise Application Modeler/Developer | $116.52 |
| Enterprise Application Modeler/Developer | $87.39 |
| Sr. Graph Database Management Spec. | $100.47 |
| Mid-Test Engineer | $71.40 |
| Jr. Test Engineer | $52.02 |
| Training Specialist | $66.30 |

# Development vs Commercial Support Package Comparison

So what exactly do you get with a commercial subscription? You get the peace of mind knowing Neo4j Inc. is there to assist with production support tickets if the vendor you purchased it from can not solve an issue on their own. This is not very useful when you are in development, using Neo4j for R & D, or do not have a mission critical Neo4j deployment.

| | Government Development Package w/ Neo4j Enterprise | Neo4j Enterprise commercial support subscription | Neo4j Enterprise (default open source license) |
|---|---|---|---|
| Has full Neo4j Enterprise functionality. | **YES** | **YES** | **YES** |
| Can purchase through Neo4j Inc. or its resellers | **NO** <br> *The Government Packages for Neo4j are only available through iGov Inc.* | **YES** | **NO** <br> *Neo4j partners are forbidden on offering services or support for Neo4j open source licenses.* |
| Can use in any environment for any purpose? | **YES** | **YES** <br> *\*Your subscription has limits on number of cores and instances* | **YES** |
| Comes with consulting services which can be used to build your solution around Neo4j. (Including UI/UX design, ETL implementation, enterprise architecture, and FISMA and 508c services) | **YES** <br> *This is what seperates out the Government Development Package from the commercial support subscription. Support is swapped out with consulting services you can use to build your solution around Neo4j.* | **NO** | **NO** |
| Comes with tools, services and support to address Accessability (508c) and FISMA requirements. | **YES** | **NO** | **NO** |
| Can I use this with any amount of cores or instances without incurring additional costs? | **YES** | **NO** <br> *\*The cost of a commercial support subscription is based on the cores and instances you use.* | **YES** |
| Can I create custom derivative versions of Neo4j Enterprise? (Ex: My custom Neo4j Enterprise Edition) | **YES** | **YES** | **YES** |
| Does Neo4j Inc. provide official email and phone production support? | **No\*** <br> *Development packages do not need production support, they swap out production support for consulting services you use to build your solution.* | **YES** | **NO** |
| Does **NOT** require you to open source your systems that simply use Neo4j Enterprise as a component in your system. | **YES** for all <br> *You do **NOT** have to open source your system that uses Neo4j Enterprise as a server as it's intended to be used. You only need to open source custom Neo4j Enterprise derivatives under the open source license and then only under certain distribution conditions.* | | |

## Why iGov Inc ?

Our team is the same team that created Neo4j Enterprise Government Edition. Further, we are the same team that sold and supported every US Federal Government procurement of Neo4j Enterprise Government Edition up until its retirement in July 2017.

iGov Inc's new Government Package can be used as a direct replacement for the now retired Neo4j Government Edition. iGov Inc is the only vendor providing this package. Even more, this package includes Neo4j Enterprise under its open source license!

**How is this possible?** Read below to learn more....

**Neo4j Government Edition** has been retired by Neo4j Inc..

PureThink, the company who created, managed and sold Neo4j Government Edition to all US Federal agencies has ceased their partnership with Neo4j Inc.. The principle behind PureThink and the Government Package has created a new corporate entity called **iGov Inc**, which is not a Neo4j Solution Partner. Because we are not a solution partner, we are not under the extremely restrictive terms dealing with services around Neo4j open source licenses which applies to partners. With iGov Inc, we can offer packages that allow US Federal agencies to gain all the benefits they have from our team's experience and past performance we've gained, but now with the ability to apply it to Neo4j Enterprise open source licenses! Before now, the only option for development or non-critical system support was the extremely costly commercial production support packages. Things have changed, and US Federal agencies are going to benefit from huge savings related to Neo4j and Neo4j solutions.

iGov Inc and the Government Package for Neo4j allows agencies to spend their money on developing innovative solutions around Neo4j, not paying for unnecessary production support before they even have a solution built that could be in production.

The new **Government Package for Neo4j** can be added to any Neo4j instance making it a "Government Edition".

By default, **all Government Packages for Neo4j now comes with Neo4j Enterprise** included under its open source license!

Once ready for production, agencies can choose to have either iGov Inc, a Neo4j Solution partner of their choice, or their own team handle production support. This allows agencies to decide what best fits their production and system needs.

iGov Inc and its partners offered production support packages that cover complex big data architectures that usually make up a Neo4j solution not just Neo4j itself. Ex: ElasticSearch, Apache Kafka, and more.

Please contact us for past performance references, and current Federal agency customer references to find out more about our team and offerings.

Procurement offices can reach out to us for necessary paperwork, documentation, and more needed to make smart procurement decisions. It's simple, if your agency is in development, then procuring a Neo4j Enterprise commercial package is not likely in the best interest of your agency.

Please contact **neo4j@igovsol.com** for more information.

iGov Inc is the only US Federal vendor whose team has proven past performance supporting and developing innovative solutions around Neo4j and the ability to work with Neo4j Enterprise open source licenses!

00036006

# iGov

iGov is a Virginia software development company located in Reston, Va. iGov Inc is located in the Dulles High Tech corridor and Washington, DC Metro area.

What sets iGov Inc apart, is the past performance and experience our team brings to the table as well as the ability to develop solutions and support Neo4j Enterprise open source licenses. You will find this is a rare combination especially considering the fact that we can now support Neo4j Enterprise open source licenses.

Contact us for more information.

John Mark Suhy
CTO

---

**Address:** 1902 Campus Commons Drive Suite 101 Reston, VA 20191

**Phone:** (703) 862-7780

**Email:** jmsuhy@igovsol.com

## About iGov

iGov Inc. is a software development company located in Reston, Va.

We focus on building innovative solutions for US Government agencies using open-source technologies.

CONTACT US

**(703) 862-7780**

✉ info@igovsol.com

📍 1902 Campus Commons Drive Suite 101
Reston, VA 20191

**iGov**     © 2017 iGov Inc. All Rights Reserved.

00036007

# EXHIBIT 20

🏠 (https://blog.igovsol.com🔊)    November 14, 2017 (/)    10 min read

# Neo4j 3.3.0 is out, but where are the open source enterprise binaries?

Neo4j Enterprise is still open source under it's AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html). However you may have noticed that you can no longer build the enterprise package binary from the source code or download the enterprise package binary with it's free AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html) from dist.neo4j.org. Furthermore, if you use docker, you must now accept a 'commercial agreement' before proceeding (https://github.com/neo4j/docker-neo4j-publish/commit/aa31654ee8544cd544b369d2646cf372086f7b70). In other words, official Neo4j docker images are no longer packaged with the free AGPLv3 (https://www.gnu.org/licenses/agpl-3.0.en.html) licensed binaries.

Neo4j Enterprise 'binaries' are simply the compiled and packaged Neo4j distributions you download and run on your computer, server, container, etc.

For the 3.3.0 release the enterprise binary package file names would be neo4j-enterprise-3.3.0-unix.tar.gz (https://dist.igovsol.com/neo4j-enterprise-3.3.0-unix.tar.gz) for the linux package and neo4j-enterprise-3.3.0-windows.zip (https://dist.igovsol.com/neo4j-enterprise-3.3.0-windows.zip) for the windows package. (The links above point to the binaries iGov Inc compiled and packaged using the source code found at the Neo4j Github repository. By default it is packaged with the AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html).)

Why has Neo4j Inc made it harder to access the open source enterprise binaries?

If they are going to take the trouble to make Neo4j Enterprise more inaccessible to the public, why not just take Neo4j closed source before releasing 3.3.0?

Only Neo4j Inc can answer these questions, and I feel they owe an explanation to the open source community which has made Neo4j what it is today.

With ambitions of an IPO, it would be an extremely risky maneuver to attempt taking Neo4j closed source. It could backfire and be disastrous if the community revolted and creates a more successful Neo4j fork. Even the perceived threat of this sort of behavior could trigger a revolt and fork.

As a reference, look no further than MySQL and MariaDB (https://mariadb.org/about/) , the more popular fork of MySQL, and you can see what could happen (https://www.zdnet.com/article/open-source-mariadb-a-mysql-fork-challenges-oracle/).

It looks like Neo4j Inc does not want to tempt fate with a closed source move just yet. Instead another path was taken which makes it very hard to get ahold of the enterprise packaged binaries with the free AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html). As a passionate advocate of both open source software and Neo4j, this does not sit well with me.

Federal agencies have already invested in the adoption and use of Neo4j Enterprise and many are using it's free AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html). Luckily, iGov Inc builds the Neo4j binaries from the source code and makes it available via a distribution site we setup (https://igovsol.com/downloads.html).

Back to the core of this post. So what has Neo4j Inc done to limit your access to Neo4j Enterprise binaries packaged with the free open source AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html)?

**Action 1**: The enterprise packaging build instructions were removed from the code base (https://github.com/neo4j/neo4j/commit/affe1a0b4ab47c9d4673bfa507868ccd03c48ddd). Until the 3.3.0 release, anyone could have checked out the Neo4j source code from github (https://github.com/neo4j/neo4j), and run a few simple commands to build the Neo4j Enterprise binaries complete with the AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html). That's not the case anymore. If you run the build commands on the 3.3.0 branch you will notice that only the Neo4j Community Edition binary is present after the build process completes. Who really uses Neo4j Community Edition once they realized Neo4j Enterprise edition is also free?

The packaging system simply provides the instructions on how to 'build' the Neo4j Enterprise distribution binary, much like the instructions you get with furniture purchased at IKEA. All the artifacts that are used to build the Neo4j Enterprise binary are all open source, but the instructions explaining how to put together these artifacts have disappeared.



**Action 2**: Neo4j Inc slipped a commercial license into the official binaries found on their distribution site that is used for docker images. Until now, if you wanted to download the Neo4j Enterprise binary from Neo4j Inc directly, you could have done so using the distribution site which is publically available. It just isn't advertised for obvious reasons.

Those who were using the official docker images or downloading the enterprise binary directly from dist.neo4j.org were in for a surprise when they were forced to accept commercial terms in order to access the distributions.

Want to see for yourself - download the Neo4j Enterprise binary (http://dist.neo4j.org/neo4j-enterprise-3.3.0-unix.tar.gz) which Neo4j Inc packages and take a look at the LICENSE.txt file.

Instead of the standard AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html) which used to be there, the LICENSE.txt file now says:

```
Network Engine for Objects in Lund AB. 2017.
All Rights Reserved. Use of this Software without
a proper commercial license with Neo4j, Inc. or its affiliates
is prohibited.
```

As copyright holders, Neo4j Inc has the right to add any license they want for the binary distributions they build, package, and make available for download themselves. If anyone else packages the enterprise binary distribution like we do, you must simply make sure the LICENSE.txt file is the AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html). That is exactly what we do.

**Action 3**: Neo4j Inc kept causal cluster communication encryption (Intra-cluster encryption) off by default. They then created a 'proprietary module' that turns it on.

Of course you can get intra-cluster encryption turned back on by purchasing a costly commercial package.

This move was referenced in the 3.3.0 release changelog (https://neo4j.com/release-notes/neo4j-3-3-0/). They justified this change with the following blurb:

N4J_018853

```
Neo4j Enterprise Edition binaries now include new proprietary
add-ons. Intra-cluster encryption is the first of these.
Consequently Neo4j Enterprise Edition can no longer be
distributed under a dual license but the source is still
available under AGPLv3.
```

Of course Neo4j Enterprise can still be distributed under the AGPLv3 license
(https://www.gnu.org/licenses/agpl-3.0.en.html). Simply provide a binary download without the 'proprietary add-ons' that turn on intra-cluster encryption. The Neo4j Enterprise binaries we make available to the public are proof that this can be done.

I believe that security critical components of Neo4j should remain open source, security by obscurity has proven not to be a good strategy in the past. Currently, the security components of Neo4j Enterprise are still open source. In the case of intra-cluster encryption (causal clustering) - it is just not initialized.

Right now the only difference between the paid Neo4j Enterprise (commercial) binary and Neo4j Enterprise (open source) binary (we compile from source) is that intra-cluster encryption is still off by default in the AGPLv3 version.

We turn it back on for our federal customers via a new component in our FISMA framework, which will be available on github for everyone to use soon.

How many of you are actually using causal clustering in production? Well - if you upgrade to 3.3.0 and don't turn it back on yourself , you may be a little less secure assuming you aren't using encrypted tunnels / vpn, etc between your cluster nodes.

Look for yourself:

3.2 release code (https://github.com/neo4j/neo4j/blob/3.2/enterprise/causal-clustering/src/main/java/org/neo4j/causalclustering/discovery/HazelcastClientConnector.java) : The sslPolicy initialized in the code.

```
HazelcastClientConnector( Config config, LogProvider logProvider, SslPolicy sslPolicy,
        HostnameResolver hostnameResolver )
    {
        this.config = config;
        this.logProvider = logProvider;
        this.sslPolicy = sslPolicy;
        this.hostnameResolver = hostnameResolver;
    }
```

3.3 release code (https://github.com/neo4j/neo4j/blob/3.3/enterprise/causal-clustering/src/main/java/org/neo4j/causalclustering/discovery/HazelcastClientConnector.java) : The sslPolicy initialization has disappeared.

```
    HazelcastClientConnector( Config config, LogProvider logProvider, HostnameResolver
hostnameResolver )
        {
            this.config = config;
            this.logProvider = logProvider;
            this.hostnameResolver = hostnameResolver;
        }
```

These three actions effectively made it impossible to get Neo4j Enterprise binaries with the open source AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html) from Neo4j Inc starting with the 3.3.0 release.

N4J_018854

(241 of 299), Page 241 of 299     Case: 24-5538, 12/23/2024, DktEntry: 18.3, Page 241 of 299
10/2/2019                    Neo4j 3.3.0 is out but where are the open source enterprise binaries?    517 of 1198
Case 5:18-cv-07182-EJD   Document 220-3   Filed 01/26/24   Page 517 of 1198

As a consulting company offering software development and support for Neo4j Enterprise open source licenses to the US federal government, we have been building the binaries ourselves for some time.

As part of the Neo4j open source community, we've decided to absorb the hosting costs and make these distributions available to the general public, not just US federal agencies. We've setup a distribution site that can be used to download Neo4j Enterprise directly, or use use with docker compose.

We will have docker images up as well complete with the AGPLv3 (https://www.gnu.org/licenses/agpl-3.0.en.html) licensed packages.

We will also have the FISMA framework modules on GitHub soon, one of which turns back on intra-cluster encryption.

You can download the Neo4j Enterprise binaries with the open source license from our website at https://igovsol.com/downloads.html (https://igovsol.com/downloads.html).

We compile and package these using the source code from the official Neo4j GitHub repositories.

Federal agencies should email us at support@igovsol.com (mailto:support@igovsol.com) to get their AWS GovCloud download links which should be whitelisted for most agencies.

If you would were not aware that Neo4j Enterprise is open source just like it's sibling 'Neo4j Community Edition', you can learn more here (https://igovsol.com/downloads.html#neo4j-os-faqs).

If you are not happy with Neo4j Inc's behavior, then please reach out to Neo4j Inc and voice your concerns.

Feel free to contact me directly via email at jmsuhy@igovsol.com (mailto:jmsuhy@igovsol.com) if you have questions, comments, or just want to talk about Neo4j in general. We are always available.

 ()

💬 Comment on Twitter (https://twitter.com/share?text=Neo4j%203.3.0%20is%20out%2C%20but%20where%20are%20the%20open%20source%20

🔊 (https://blog.igovsol.com/rss)

(https://blog.igc

**John Mark**

**(https://blog.igovsol.com/author/jmsuhy/)**

Alexandria, VA

igovsol.com (https://igovsol.com)

Senior software developer and enterprise architect with a focus on introducing innovative open source technologies into the US federal government.

# EXHIBIT 21



iGov Inc. is a Northern Virginia software development and consulting company focused on building innovative open source solutions for our US government customers.

## July 2018 News: Neo4j 3.4.4 has been released!

Get the open source licensed **Neo4j Enterprise** distributions we package for our government customers from our downloads page. These are 100% free and open source, with all the enterprise features. They have no restrictions on the number of cluster instances or cores that the commercial licensed packages impose!

We compile and packaged the open source licenced distributions from the same official Neo4j Github Repositories as Neo4j Inc uses for their paid commercial licensed builds.

### About iGov

iGov Inc. is a software development company located in the Washington DC Metro area.
We focus on building innovative solutions for US Government agencies using leading open-source technologies.

CONTACT US

**(703) 672-1205**

[email protected]

7686 Richmond Highway Suite 111-B Alexandria, VA 22306



© 2018 iGov Inc. All Rights Reserved.

N4J_018823

# EXHIBIT 22

| | |
|---|---|
| **From:** | John Mark Suhy (jmsuhy@purethink.com) |
| **To:** | Benjamin Nussbaum (ben@atomrain.com), Brad Nussbaum (brad@atomrain.com) |
| **CC:** | |
| **BCC:** | |
| **Subject:** | graphstack.io - avoid trademark issues |
| **Attachments:** | |
| **Sent:** | 03/26/2018 01:18:42 PM -0700 (PST) |

I added you as admins to graphstack.io repos.

Incase you are wondering what this is - graphstack.io is the website I will have completed soon that will be used to provide Neo4j Enterprise open source packages for downloads without infringing on Neo4j's trademarks.

It is the only name I could find that was open.

I.E.  I can get away with allowing downloads of Neo4j on the site that have no code modifications or plugins but as soon as we add apoc or something else - the nominative trademark protection does not apply as easily.
So:    Neo4j Enterprise AGPL + APOC (and other plugins) = GraphStack

When you download it and extract it - it is /neo4j-enterprise-x.x.x   same as before.





IGOV0001570252

**EXHIBIT 23**

**From:** John Mark Suhy (jmsuhy@purethink.com)
**To:** Benjamin Nussbaum (ben@atomrain.com), Brad Nussbaum (brad@atomrain.com)
**CC:**
**BCC:**
**Subject:** Quick Notes on fork
**Attachments:**
**Sent:** 05/21/2018 11:24:17 AM -0700 (PST)

Just comments That may be good to think about on your end.

When I spoke about setting up a non profit for a fork - it makes other kernel devs more inclined to be part of it - if they are truely open source advocates. I would think that they would be wary going with another 'neo situation'. Assume that Steve baker and team are doing another fork in parallel - would be better to work all together I would think.

But being on the board of this new none profit is a big piece of the pie - if a fork became popular - GraphGrid is what makes it a viable alternative to adopt for agencies / companies who want production support.  IE - if done right - it would allow you to hit Neo from many different angles - weakening their hold.  We will get US agencies using this fork right away so it has past performance.

Just something to think about - I could literally reach out to MariaDB.org and ask them if they can give you copy of their bylaws so there would be hardly any upfront effort.  That may be enough to just let people know we are planning...

Worst case - you spend under $1000 for an org that you close without traction.  You dont have to setup org until you are ready.

Borrow everything from:

https://mariadb.org/about/governance/

I already know we could get several large companies to sponsor it in terms of names : Maybe not money to start.  But we would ask ASR, and kther top analytic companies we work with to sponsor it. Including sheila's companies and of course all of our companies.  (That is a big list already)

Do you want me to take a stab at rebrading Neo4j Enterprise dist - besides the documentation, and misc stuff in distribution? This would be a prppf of concept to see just how hard it would be to do a complete automated rebrand from all current code. the biggest visible part would be for a new logo in Neo4j Browser.

Technically the way they license browser, etc - you could technically use Neo4j browser without rebrand - but why not see how it would look with different brand name.

Make sure openneo4j won't be something Neo comes after you around trademark on.  I would ask your lawyers since I know it can be a hit if you build that brand and only have to start over if Neo hits with trademark.

--
John Mark Suhy
PureThink
jmsuhy@purethink.com
703-862-7780
http://purethink.com





IGOV0001570192

# EXHIBIT 24

**From:**       John Mark Suhy (jmsuhy@egovsol.com)
**To:**         Mariano Lopez (mariano.lopez@analytica.net)
**CC:**
**BCC:**
**Subject:**    Re: GraphFoundation
**Attachments:**
**Sent:**       07/09/2018 10:37:59 AM -0700 (PST)

We can add you as a sponsor without you contributing, but if you would
like to make a donation you can do so at:
https://www.graphfoundation.org/support/donations/

If you want to have a call later today or anytime this week, I can
explain why the foundation was created and how we package Neo4j
Enterprise (We call ONgDB) distributions that are being adopted at IRS
and most likely DHS as they are already using the open source
distributions we packaged before we assigned them to the foundation.

Do you happen to have a good LOGO we can use or can I just grab one
from your website?


John Mark Suhy
eGovernment Solutions Inc
jmsuhy@egovsol.com
703-862-7780
https://egovsol.com


On Mon, Jul 9, 2018 at 8:33 AM, Mariano Lopez
wrote:
> Hi John Mark –
>
> Definitely and would be willing to contribute. If we were to contribute
> $500 how would I do this, process, etc?
>
>
>
> From: John Mark Suhy [mailto:jmsuhy@egovsol.com]
> Sent: Friday, July 06, 2018 9:59 AM
> To: Mariano Lopez
> Subject: GraphFoundation
>
>
>
> Hello Mariano,
>
>
>
> I wanted to ask you if you would like us to list Analytica as a sponsor of
> the GraphFoundation. https://graphfoundation.org
>
>
>
> It is free for you, you can ignore the sponsorship prices page.

>
>
>
> IRS is adopting the open source Neo4j Enterprise distributions we are
> transfered to the GraphFoundation, and I think having our team members all
> involved in it could help give an advantage in the BPA Award. I can explain
> more on a call if you would like.
>
>
>
> Let me know if I can add you to the sponsorship page:
>
> https://www.graphfoundation.org/support/thanks/
>
>
>
> On another note, let me know if you would like to meet up for coffee or
> lunch sometime.
>
>
>
> Talk to you later,
>
>
>
> John Mark
>
>
>
> --
>
> John Mark Suhy
> eGovernment Solutions Inc
> jmsuhy@egovsol.com
> 703-862-7780
> https://egovsol.com

    IGOV0001573221.0002

**EXHIBIT 25**

**From:**       John Mark Suhy (jmsuhy@purethink.com)
**To:**         Brian Rodrigue (brian.rodrigue@excella.com)
**CC:**
**BCC:**
**Subject:**    Checking In
**Attachments:**
**Sent:**       08/10/2018 08:09:41 AM -0700 (PST)

---

Good Morning Brian,

I just wanted to check in as we have not talked for a while.

I hope all is well.

If you have time next week, I can give you an update on our Neo4j activities.

We created a non profit with an Apache like governance model to ensure Neo4j stays open source incase Neo decides to take it closed source anytime in the future.

Check out https://graphfoundation.org

All the Neo4j enterprise distributions we package from now on will come from the foundation and have the standard vanilla AGPLv3 open source license.

Treasury and a bunch of analytic companies in the area now use these.

I figured you would want to know because Neo4j Inc has been trying to scare companies lately telling them they will close source, etc.

Most recently, they tried adding a 'commons clause' to the AGPL license , trying to precent companies from selling (and competing against them on procurements)

The free software foundation guidamce was to ignore it as it was invalid because restrictions like this, cant be added to the AGPL license, but it doesn't stop them from trying to use it to cause confusion.

Anyway, the foundation was actually setup because of this behavior.

On another note, how is your wife's cyber focus coming?

Have you been working with any interesting texhnology lately?

Have a good weekend,

John Mark

--
John Mark Suhy
PureThink
jmsuhy@purethink.com
703-862-7780
http://purethink.com

IGOV0001570129

Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 130 of 1198

# EXHIBIT 26

**From:**     John Mark Suhy (jmsuhy@purethink.com)
**To:**       A-Sun Truth (asuntzu@gmail.com)
**CC:**
**BCC:**
**Subject:**  EMAIL
**Attachments:** micro-service-architecture-with-graphstack.pdf;
**Sent:**     08/28/2018 07:06:58 PM -0700 (PST)

---

I apologize for taking so long to get back to you. We have a large
deployment coming up in Sept for a government contract we are priming
on - so it's been taking all my available bandwidth.

I wanted to send you the links we spoke about so you can understand
more about what we are doing in the graph / analytics space.

I manage the Neo4j Enterprise open source distributions used by the
Treasury, DHS, etc.
If you don't know about Neo4j - here is their website: http://neo4j.com

Our open-source fork we manage can be found at https://graphfoundation.org

Our focus is on 'connected data' which leverages several different
technologies to collect, and connect data from different data sources.

Attached is a diagram of the high level overview of the platform.

We leverage Neo4j, ElasticSearch, Kafka, Apache Spark, and a suite of
services (All Java - Spring Boot for the most part)

Here are some white papers that can tell you more about Neo4j - which
we use as the 'system of record' for our connected data. We did not
write these - but they do a good job of explaining the technology.

https://drive.google.com/drive/folders/0B7w76NCg0bmVdmZoZTJQaGl4Vnc?usp=sharing

What we have is not something we sell right now - it is the platform
that we use for any of our graph analytics projects - that is how
everything originally came together.

One way I could see us working together is to work on your data
integration platform assuming you don't already have one. Everything
from AI, to enrichment, to services that utilize this data would use
the platform.

For example - if you want to create a sentiment analysis service, or
some other service (micro-service architecture) for leveraging natural
language processing - then it may involve creating a service that
takes 1) data from the graph , 2) uses the 'bus' (kafka) to push data
to spark to do sentiment analysis, etc , 3) Takes the new data
generated and augments the graph.

I.E. This would be a central part of your data integration strategy I
would think.

Let me know if this information is useful.

IGOV0001570120.0001

# EXHIBIT 27

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**From:** John Mark Suhy (jmsuhy@purethink.com)
**To:** Philip Rathle (philip@neo4j.com)
**CC:**
**BCC:**
**Subject:** Re: Touching base
**Attachments:** purethink Mail - IRS breakdown.pdf; april-2016-email-number-5-agreement.pdf;
**Sent:** 05/21/2018 02:46:30 PM -0700 (PST)

---

Please give me some time to digest your proposal and see if this makes
sense from a business perspective for us. I probably will have some
questions, In fact I have one right offhand.

Question:

If we were to consider what you proposed, would you require us to
waive our right to pursue our claims, such as tortious interference
against Neo4j Inc in the
future? I believe we can work together moving forward, and in
parallel let the courts decide what is fair for the past. We have
invested quite a bit of time and money into preparation based on the
statute of limitations, and I would think that you would also say it
is fair to let the courts work out what is right - if we agree to
accept the court's decision and move on.

Beyond that question,

In order to trust us, I think based on your email response, you should
really just peak at the attachments I re-attached to this email. Not
to prove anything, but to show that you should be wary of taking one
side of the story from John and Jason.
These attachments are just so you keep an open mind when working with
us. Please read them - they are attached, short and can help our
relationship. I highlighted them to make it quick.

On another note, regarding the licensing, you may want to consider the
implications of going closed source right now.

I completely understand where you are coming from, and you have a
tough decision to make. I wouldn't want to be in your position
regarding that topic, so I respect that you are in a precarious
position and have to make a decision.

My biggest worry does not have to do with you going closed source, but
with how the community reacts. As you can imagine, there will be
probably be several community forks of Neo4j if you go the closed
source router. An unorganized fork without the proper governance
model can lead to the community being in the same situation as they
would be with you if you do go closed source. It would force us to do
a proper fork that addresses governance, meaning spending time I
don't feel like spending. But it would be needed for the Government.

I've already done the preparation to create non profit organization
with the necessary bylaws and governance model for a community fork of
Neo4j to get things started, and to ensure it's long term success (if
adopted).

CONFIDENTIAL

IGOV00000298.0001

We took guidance from MariaDb and my mentors on how to do it right and for the community, I am very confident that this will benefit the community.

By design, if we do launch this community fork and re-brand , it won't be something I can stop once the legal entity is in place and launched, which is the point of ensuring the community has control. I am not sure how it would effect our
working together, but as you can guess - it could actually hurt us all if we end up making this partnership work and this fork becomes popular.

Let me know if there is a time Friday that you want to catch up for a call.

Have a good day,

Sincerely,


John Mark Suhy
PureThink
jmsuhy@purethink.com
703-862-7780
http://purethink.com



REDACTED - CONFIDENTIAL



IGOV00000298.0003



Case 5:18-cv-07182-EJD Document 98-1 Filed 12/11/20 Page 137 of 1198

# REDACTED - CONFIDENTIAL

REDACTED - CONFIDENTIAL

IGOV00000298.0006

# EXHIBIT 28

| | |
|---|---|
| **From:** | Graph Foundation Admin |
| **To:** | btrudeau@micron.com |
| **Subject:** | Re: GraphStack Neo4j Question |
| **Date:** | Monday, July 16, 2018 6:52:30 AM |

Hi Bob,

I received your question from iGov. We're consolidating support of the open source neo4j graph database distributions under a non-profit organization: Graph Foundation - www.graphfoundation.org

I can help you answer your questions.

The naming you'll see for the build on the foundation site is ONgDB - this is a fully AGPL fork of the open source Neo4j Github repository with all restrictive marks from Neo4j, Inc. removed. We've taken the necessary steps make sure we keep the repository fully AGPL which is the license that Neo4j, Inc has released it under, but then added additional sections to the AGPL license, which in our conversations with FSF (Free Software Foundation) is not legal to do when using the AGPL license.

If you are looking for a full shield of liability, we recommend using one of our supporters such as GraphGrid. I can put you in contact with them if that full shield is of interest.

If it makes sense to have a call or if you have specific references that would help your organization assess the validity of it, please let us know and we can try to accommodate.

Thanks You,
GF


---------- Forwarded message ---------
From: **Bob Trudeau (btrudeau)** <btrudeau@micron.com>
Date: Wed, Jul 11, 2018 at 11:47 AM
Subject: GraphStack Neo4j Question
To: info@igovsol.com <info@igovsol.com>


To:    iGov Information (info@igovsol.com)
From:  Bob Trudeau (Micron Technology, Inc.)
Date:  Wednesday, July 11, 2018


I am currently evaluating potential Neo4j options other than a commercial license. The availability of a free, open-source version of Neo4j Enterprise from GraphStack is of obvious interest.


As an employee of Micron I need to ensure that I am operating with integrity and complying with all legal requirements in the procurement and use of software such as Neo4j.



GFI 30(b)(6)
Brad Nussbaum

**Ex 14**
10/16/2020  D Myers

GFI000287
**Page 302**

What references and/or other information can GraphStack provide to assist me in confirming the legality of the GraphStack Neo4j Enterprise software?


Regards,


**Bob Trudeau**

Enterprise Architect
IT Enterprise Analytics & Data
Micron Technology, Inc.

Office +1 (916) 458-3277
btrudeau@micron.com

# EXHIBIT 29

| | |
|---|---|
| **From:** | John Mark Suhy (jmsuhy@purethink.com) |
| **To:** | Benjamin Nussbaum (ben@atomrain.com) |
| **CC:** | |
| **BCC:** | |
| **Subject:** | Neo4j Procurement |
| **Attachments:** | |
| **Sent:** | 07/25/2018 08:48:04 AM -0700 (PST) |

---

https://www.fbo.gov/index?s=opportunity&mode=form&id=02e83be8f7f905fff05de915b30d3418&tab=core&_cview=1

**Quick Summary:**

- Airforce wants Neo4j Enterprise.
They do not realize that Neo4j Enterprise is dual licensed and therefore unique for procurement.

 People can pay money for a restrictive commercial license, or use Neo4j Enterprise for free under it's open source license.
The open source licensed version has no restrictions on number of cluster instances or cores.   This fact is very
counterintuitive.    What the commercial 'subscription' really offers is support, because it's better to use the open source
license than the commercial license in this case.

- We are quite sure that only one Neo4j partner will be able to bid on this because of Neo4j Inc's partner rules requiring
registration of a lead.

- We have an idea about what the quote will be, since Neo4j Inc commercial price lists were placed on GSA for a short time.
 ($29,000)
https://blog.igovsol.com/2018/01/10/Neo4j-Commercial-Prices.html


**Proposed Approach:**

1) You quote for $25,000.
    AirForce gets the Neo4j Enterprise open source distributions we package for the government already.

2) We would manage all support with our existing infrastructure for you. (Managed support).
    Required support to meet AF needs would be:
    Phone support normal business hours Monday-Friday.  24 hour turn around on all support  tickets.  $200 / month or
$2400

We will ensure all the SLA's and requirements specified are met with our existing infrastructure and team.    We can fully
manage support for you using our support system that can be branded with your information.  Ex:  Email:
support@fedstore.com   Online:  https://support.fedstore.com
If you have your own - we can use yours too. Whatever works.

So you would make:  $25,000 - $2400 : $22,600


3) The software (supply) is unlimited, because these are simply open and free neo4j distributions that are downloadable from
the distribution sites.  Your company can even become a mirror - i .e.  https://dist.fedstore.com/neo4j/neo4j-enterprise-3.4.4-
unix.tar.gz


**Up sell:**

    IGOV0001570130.0001

-Neo4j packages are yearly subscription models, so this has high potential to be reoccurring.

- Once you are supporting Airforce with Neo4j, then there is a large potential for custom software development services. Since Neo4j partners are usually forbidden from using Neo4j under it's open source license - this puts you in a very unique position for anyone who wants custom Neo4j development.   We could support you on all development tasks, and bring past performance from our other federal Neo4j projects.

**Possible Scenarios / Risks:**

- Neo4j Inc will protest, and try to prevent this from happening through bullying tactics with the AirForce.  They tried this with Treasury which delayed one of our awards for 8 months and their behavior really upset Treasury.   This was the catalyst for the creation of the GraphFoundation https://graphfoundation.org - which ensures Neo4j stays free and open.

- US Treasury legal precedent is what we use when Neo4j tried to interfere with other agencies.  Treasury / IRS POCs are happy to talk with other agencies to

Links:

1) What I sent to airforce just to let them know there were other options so the competition could be more competitive. (See attached PDF).

 2) https://igovsol.com/downloads.html -> The open source Neo4j Enterprise distributions we package for government agencies.

3) Blog posts that show commercial prices, and will give more information about Neo4j's bad behavior:
 https://blog.igovsol.com

Our team:  iGov Inc, GraphGrid (https://graphgrid.com), and AtomRain (https://atomrain.com).   We work together as one company.  We all are the founders of the GraphFoundation.  https://graphfoundation.org

# EXHIBIT 30

# ARTICLES OF INCORPORATION OF
# GRAPH FOUNDATION, INC.

The undersigned, desiring to form a corporation not for profit under the Non-Profit Corporation Law of Ohio, do hereby certify:

FIRST: The name of said corporation shall be Graph Foundation, Inc.

SECOND: The place in Ohio where the principal office of the corporation is to be located is the City of Wooster, Wayne County, Ohio.

THIRD: The corporation is organized exclusively for charitable, religious, educational and scientific purposes including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under Section 501(c)(3) of the Internal Revenue Code, or the corresponding provision of any future federal tax code. The charitable purposes of the corporation include the following:

(a) to further, at no charge, the Open Source development and distribution of graph technology in the areas of software, storage, networking, clustering, parallel and distributed computation, query processing, analytics, visualization, machine learning, artificial intelligence and cloud accessibility, while serving the community with mentoring, leadership and vision for a healthy graph ecosystem;

(b) to receive and administer funds for the benefit of the corporation, or its successor, and to that end to take and hold, by bequest, devise, gift, purchase or lease, either absolutely or in trust, any property, real, personal or mixed, without limitation as to amount or value, except such limitations, if any, as may be imposed by law;

(c) to sell, lease, borrow, encumber, exchange, subdivide, convey and dispose of any such property and to invest and reinvest principal and income thereof and to deal with and expend principal and income therefrom for the purposes set forth in this Article Third without limitation, except such limitations, if any, as may be contained in the instrument under which such property is received or such limitations, if any, as may be imposed by law;

(d) to borrow money and issue evidence of indebtedness in furtherance of the charitable purposes of this corporation and to secure same by mortgage, pledge, or other lien on property;

(e) to own, use, buy, sell, mortgage or encumber real and personal property as will tend to promote the objects of this corporation and the doing of all things necessary or incident to the purposes of this corporation; and

GFI 30(b)(6)
Brad Nussbaum
**Ex 3**
10/16/2020  D Myers

(f) to do such other lawful acts or activities to accomplish its charitable purposes as contemplated by Section 501(c)(3) of the Internal Revenue Code, or the corresponding provision of any future federal tax code, and the nonprofit corporation laws of the State of Ohio;

FOURTH: The following persons shall serve said corporation as directors until the first annual meeting or other meeting called to elect directors:

1. Bradley Nussbaum, President;

2. Benjamin Nussbaum, Vice President.

FIFTH: No part of the net earnings of the corporation shall inure to the benefit of, or be distributable to its members, directors, officers, or other private persons, except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in Article Third hereof. No substantial part of the activities of the corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of any candidate for public office. Notwithstanding any other provision of these Articles, the corporation shall not, except to an unsubstantiated degree, engage in any activities or exercise any powers that are not in furtherance of the purposes of this corporation.

SIXTH: The corporation shall distribute its income for each taxable year at such time and in such manner as not to become subject to tax on undistributed income imposed by Section 4942 of the Internal Revenue Code, or corresponding provisions of any subsequent federal tax code.

SEVENTH: The corporation shall not engage in any act of self-dealing as defined in Section 4941(d) of the Internal Revenue Code, or corresponding provisions of any subsequent federal tax code.

EIGHTH: The corporation shall not retain any excess business holdings as defined in Section 4943(c) of the Internal Revenue Code, or corresponding provisions of any subsequent federal tax code.

NINTH: The corporation shall not make any investments in such a manner as to subject it to tax under Section 4944 of the Internal Revenue Code, or corresponding provisions of any subsequent federal tax code.

TENTH: The corporation shall not make any taxable expenditures as defined in Section 4945(d) of the Internal Revenue Code, or corresponding provisions of any subsequent federal tax code.

ELEVENTH: Any person, his heirs, executors or administrators, may be indemnified or reimbursed by the organization for reasonable expenses actually incurred (including attorney's fees, judgments, fines and amounts paid in settlement) in connection with any action, suit or proceeding, civil or criminal, to which he or they shall be made a party by reason of being or having been a member of the Board of Directors, officer, employee or member of the organization if such person

acted in good faith and in the manner he reasonably believed to be in or not opposed to the best interests of the organization or (with respect to any criminal action or proceeding) he had no reasonable cause to believe his conduct was unlawful.

The foregoing rights of indemnification or reimbursement shall not be exclusive of other rights to which such person, his heirs, executors or administrators may be entitled as a matter of law or equity.

TWELFTH: Notwithstanding any other provision of these Articles of Incorporation, the corporation shall not conduct or carry on any activities not permitted to be conducted or carried on by any organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code and its Regulations as they now exist or as they may hereafter be amended, or by an organization, contributions to which are deductible under Section 170(c)(2) of the Internal Revenue Code and Regulations as they now exist or as they may hereafter be amended.

THIRTEENTH: Upon the dissolution of the corporation, assets shall be distributed for one or more exempt purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code, or shall be distributed to the federal government, or to a state or local government, for a public purpose. Any such assets not so disposed of shall be disposed of by a Court of Competent Jurisdiction of the county in which the principal office of the corporation is then located, exclusively for such purposes or to such organization or organizations, as said Court shall determine, which are organized and operated exclusively for such purposes.

IN WITNESS WHEREOF, we have hereunto subscribed our names this __22__ of June, 2018.

Bradley Nussbaum

Benjamin Nussbaum

## ORIGINAL APPOINTMENT OF AGENT

Know all men by these presents, that Jeffrey D. Musselman of 140 West Liberty St., Wooster, OH 44691, a natural person and a resident of the State of Ohio, is hereby appointed as the person on whom process, tax notice, and demands against said Graph Foundation, Inc., may be served and shall serve as incorporator for Graph Foundation, Inc. on behalf of the undersigned.

Graph Foundation, Inc.

_____
Bradley Nussbaum

_____
Benjamin Nussbaum

GFI000004

# EXHIBIT 31

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


NEO4J, INC., a Delaware      ) CASE NO.
corporation, and NEO4J       ) 5:19-CV-06226-EJD
SWEDEN AB, a Swedish         )
corporation,                 )
                             )
            Plaintiffs,      )
                             )
    vs.                      )
                             )
GRAPH FOUNDATION, INC., an   )
Ohio corporation,            )
GRAPHGRID, INC., an Ohio     )
corporation, and ATOMRAIN    )
INC., a Nevada corporation,  )
                             )
            Defendants.      )

REMOTE VIA ZOOM


30(b)(6) DEPOSITION OF NEO4J INC


BY BRAD NUSSBAUM


_____
                  9:17 A.M. PDT
           FRIDAY, OCTOBER 16, 2020

    _____



By:  Denise Myers Byrd, CSR 8340, RPR

1

1    maybe touch on a few things later when Jeff gets on

2    board.

3    BY MR. RATINOFF:

4        Q.  Okay.  Let me go ahead and move on to Topic 1

5    on the formation of Graph Foundation.

6            Do you recall when you formed Graph Foundation

7    or when -- let me strike that.

8            When was Graph Foundation founded?

9        A.  Yeah, I think I looked this up, and I'm pretty

10   sure we have it everywhere as June 2018.  I can pull up

11   the exact incorporation document.

12       Q.  I'll do that, actually.  Thank you, though.  I

13   appreciate that.

14       A.  All right.  I have some of these in front of me

15   because, honestly, I'm not going to remember this stuff

16   exactly.

17       Q.  Well, that's -- I'm going to ask you questions.

18   If you don't remember --

19       A.  Yeah, I have effective June 21, 2018.

20       Q.  Okay.  And so I just put up Tab 2 so we'll mark

21   that as Exhibit 3.

22           (WHEREUPON, Exhibit 3 was marked for

23       identification.)

24   BY MR. RATINOFF:

25       Q.  Why don't you take a quick look at that time

                                                        24

1  and let me know if that's what you had in mind as the

2  founding document.

3      A.  Seems to be pretty big.  It's taking a while.

4  If it says State of Ohio corporate registration,

5  that's --

6      Q.  It's actually -- the title of the document

7  should be in your chat as Tab 2.  It's the Articles of

8  Incorporation of Graph Foundation Inc.

9          Do you see that?

10     A.  Oh, okay.  Yeah, okay.  So 22nd of June, okay.

11 So I guess my State of Ohio certificate is June 21st and

12 this is signed June 22nd.  I'm not exactly sure which

13 one.

14     Q.  You recognize the document?

15     A.  Yes.  Yeah, this is what our lawyer here in

16 Ohio drafted.

17     Q.  And then what's -- the signature page -- I

18 think it's the third page -- you see there's two

19 signatures there?

20     A.  Yes.

21     Q.  The date?

22     A.  My signature and Ben's signature, yeah.

23     Q.  Okay.  All right.  Thank you.

24          Leading up to the formation, did you have any

25 discussions with anybody about forming Graph Foundation,

25

(278 of 299), Page 278 of 299
Case: 24-5538, 12/23/2024, DktEntry: 18.3, Page 278 of 299
BRAD NUSSBAUM
Case 5:20-cv-04232-EJD   Document 98-1   Filed 12/11/20   Page 154 of 198
October 16, 2020

1       Q.  I'm just asking yes or no.

2           Did you talk to Mr. Suhy about forming Graph

3   Foundation prior to forming Graph Foundation?

4       A.  I mean, I guess it feels vague to me because

5   forming is a very vague word.  So he was -- so to answer

6   specifically, we did not consult him about how to

7   structure the foundation as a nonprofit with any of

8   these articles here; that came just from our lawyer.  We

9   did not consult him about any of the mission.  So when

10  we filed for a nonprofit status with the IRS and we

11  posted a mission and what we were about, we did not

12  consult him about any of those things.  So he was not

13  consulted, I guess, in any material way about, like,

14  what you could call the actual formation of the corp.

15      Q.  Who -- what led you to form Graph Foundation?

16  Strike that.

17          When did you come up with the idea to form

18  Graph Foundation?

19      A.  Must have been, like, early 2018, maybe late

20  2017, but probably early 2018.

21      Q.  Whose idea was it to form Graph Foundation?

22      A.  Primarily mine, but Ben was also very on board

23  with it.

24      Q.  Why did you decide to form Graph Foundation?

25      A.  I think we see a strong need for graph

                                                    27

```
 1   technology to be open and available to a broader
 2   community.  I think that we both, you know, sort of come
 3   up through a lot of the open source world where, you
 4   know, the Linux Foundations, the Apache Foundations, the
 5   Free Software Foundations of the world have sort of
 6   shaped and enabled everybody to do really great things.
 7   And I think being in the graph space we see, you know,
 8   just the potential for greater work to be done by having
 9   technology that's developed and opened collaboratively.
10   I think that's what led us to write the mission
11   statement that we did about generally making graph
12   technology available.  We see a lot of avenues where
13   that can be applied.
14       Q.  Was there a specific graph technology that you
15   had in mind?
16       A.  I think generally, you know, there's a lot of
17   years to be played out, so, you know, Ben and I see that
18   there are many different technologies, graph
19   technologies that this may be applicable to.  I think we
20   listed several in our mission statement.
21           But, you know, there's certainly areas in data
22   processing and algorithms in -- you know, especially in
23   AI.  There's a lot of capabilities that I think we see
24   graph having a big impact, and so we see the foundation
25   as being a place that, you know, may one day be able to
```

28

1  provide an overall benefit to humanity through those

2  things.

3       Q.  Was Neo4j the primary driver for forming Graph

4  Foundation?

5       A.  Neo4j was definitely one driver.  We see an

6  open source database, certainly something that can store

7  data as a graph, as being a key part and it's definitely

8  where we put a lot of our time and effort in the early

9  days.

10      Q.  And did you discuss with Mr. Suhy about forming

11  Graph Foundation to promote open source Neo4j?

12          MR. PERNICK:  Objection; vague as to time.

13  BY MR. RATINOFF:

14      Q.  Prior to the formation of Graph Foundation.

15      A.  I mean, discuss is a very broad word so could

16  you be more specific?

17      Q.  Did you talk to Mr. Suhy within three months of

18  forming Graph Foundation about forming Graph Foundation?

19      A.  I mean, there must have been some conversations

20  about it, but I don't really think he was very -- I'm

21  not really sure what he offered, if anything, toward

22  like the overall -- I don't think he offered anything in

23  the discussions.  I don't remember him really having

24  much of a drive on the open source side.  I remember

25  him -- you know, he's very practical when it comes to

29

1    business, so I think the foundation has always just

2    been, you know, really for me and Ben to decide on.

3             MR. RATINOFF:  I would like to upload a

4    document.  This is going to be Tab 4.

5             (WHEREUPON, Exhibit 4 was marked for

6        identification.)

7    BY MR. RATINOFF:

8        Q.  Let me know when that's up on your chat.

9             Do you see this document that I put up?  It

10   should be an email from John Mark Suhy dated

11   May 5th -- I'm sorry -- May 21, 2018.  Do you see that?

12       A.  Yeah.

13       Q.  "Subject:  Quick Notes on fork."

14       A.  Yeah, I see it.

15       Q.  And looking at the "to" line, there's a Brad

16   Nussbaum, brad@atomrain.com.  Do you see that email

17   address?

18       A.  Yep.  Yep.

19       Q.  Is that an email address that you use

20   currently?

21       A.  Yes.

22       Q.  And were you using that email address back in

23   2018, in May?

24       A.  Yes.

25       Q.  And the other address, Benjamin Nussbaum,

                                                          30

1    that's your brother Ben?

2         A.  Yes.

3         Q.  And that's his email address, ben@atomrain.com?

4         A.  Yes.

5         Q.  Prior to forming Graph Foundation, when you

6    were in the preformation stage, were you using your

7    AtomRain account to communicate about forming Graph

8    Foundation?

9         A.  We've -- we've spoken with John Mark with our

10   AtomRain accounts.

11        Q.  So the answer is --

12        A.  I don't know if it's --

13        Q.  Sometimes I'm asking very simple yes-or-no

14   questions, and I appreciate you wanting to elaborate,

15   but I think it will go a lot smoother if you just answer

16   my questions as they're asked.  I'm going to ask it one

17   more time.

18            Did you use your AtomRain email address to

19   discuss forming Graph Foundation with John Mark?

20        A.  You're saying like prior to us ever having a

21   Graph Foundation email?

22        Q.  Yes.

23        A.  I mean, prior to having a Graph Foundation

24   email and prior to Graph Foundation existing, John Mark

25   and, you know, Ben and I communicated with our AtomRain

                                                      31

1    emails as the main form, I would say.

2        Q.  At this time in May of 2018, were you an

3    employee of AtomRain?

4        A.  Yes.

5        Q.  And what was your -- what was your position at

6    AtomRain at that time?

7        A.  I was the CEO.

8        Q.  Do you still hold that position at AtomRain?

9        A.  Yes.

10       Q.  And was Ben also an employee of AtomRain at

11   that time in May 2018?

12       A.  Yes.

13       Q.  What was his role at that time?

14       A.  He's the CTO.

15       Q.  And is he still the CTO?

16       A.  Yes.

17       Q.  Were you also employed by anyone else at that

18   time besides AtomRain in May of 2018?

19       A.  No.

20       Q.  Okay.  Turning back to this email, which I

21   believe would be Exhibit 4.

22           MR. RATINOFF:  Mark this as Exhibit 4.  It's

23   got the Bates number IGOV0001570192, and I'll represent

24   this is produced by iGov in the related litigation.  It

25   was not produced by your attorney.

32

1    accurate.

2       Q.  Looking at the blue section, it says JMSuhy

3    initial commit.  Do you see that?

4       A.  Yes.

5       Q.  And do you know -- do you understand who

6    JM Suhy is?

7       A.  Yes.

8       Q.  And who is JM Suhy?

9       A.  To my knowledge, that's John Mark's user on

10   GitHub.

11      Q.  And you see there's a date there on August 29,

12   2018?

13      A.  August, yeah, 29, yeah.

14      Q.  So is it fair to say that Graph Foundation had

15   a GitHub account as of August 29, 2018?

16      A.  Well, yeah, I think that's how those commits

17   are tracked.  There's a difference between the actual

18   commit that goes to get repo and what shows up in

19   GitHub, but I think that date is when it's actually

20   merged into GitHub.

21      Q.  But in order to be merged in the Graph

22   Foundation's GitHub, Graph Foundation would have to have

23   a GitHub account, correct?

24      A.  Right.  Yeah.

25      Q.  All right.  And does this at all refresh your

81

1          What specifically are you looking for?

2      Q.  Well, did he start up the ONgDB fork on

3  GitHub's repository?

4      A.  Well, if what we're looking at here, Neo4j-OE

5  or something, that's not the ONgDB fork.  This doesn't

6  look like much of anything.  I don't even think there's

7  about more than seven files here.  I'm pretty sure ONgDB

8  is well over a million.

9      Q.  Okay, let's go ahead and move on, then.

10         MR. RATINOFF:  All right.  I'm going to drop

11  another.  It should be Tab 46, and this should be

12  Exhibit 14.

13         (WHEREUPON, Exhibit 14 was marked for

14         identification.)

15  BY MR. RATINOFF:

16     Q.  We'll mark this Exhibit 14.  And the Bates

17  number starting with GFI000287 which was produced by

18  your counsel.

19         Do you have the document in front of you,

20  Exhibit 14?

21     A.  Yes.

22     Q.  Looking at Exhibit 14, there's an HTML address.

23  You have to hover your cursor over it, but if you -- it

24  says Graph Foundation admin.  When you hover over that,

25  it should say admin@graphfoundation.org.

                                                    83

1      A.   Uh-huh.  Yeah.

2      Q.   That's a Graph Foundation email that Graph

3   Foundation owns?

4      A.   Correct.  Yes.

5      Q.   Does Graph Foundation still use that email

6   address?

7      A.   Yes.

8      Q.   And you searched for documents in this case in

9   that email account?

10     A.   Yes.

11     Q.   So looking at the date of this email, it says

12  July 16, 2018.  Do you see that?

13     A.   Yes.

14     Q.   Does that help refresh your recollection as to

15  whether Graph Foundation had their own ONgDB up on

16  GitHub at that time?

17     A.   Did we?

18     Q.   I'm asking you.

19     A.   I don't think this gives me anything to

20  refresh.  Sorry, what do you mean by get up on GitHub?

21  You mean like does this help establish a date point in

22  time when the ONgDB repository was created?

23     Q.   Yes.

24     A.   No, this would not do that.

25     Q.   All right.  Let's go to the bottom, looking at

84

1     Q.  It's fair to say it says forwarded message, so

2  this is forwarded from iGov to Graph Foundation?

3     A.  Right.

4     Q.  Do you have an understanding of why it was

5  forwarded to Graph Foundation?

6     A.  They must have felt we could better answer or

7  give better details than they could.

8     Q.  About GraphStack?

9     A.  I'm assuming about the state of, like, an

10  open source version of Neo.  It looks like they want to

11  get information like -- it looks like they're

12  redirecting them to the root source of, like, how to

13  best get involved with the open source project.

14     Q.  Okay.  So then looking at the first paragraph

15  of the top email, that's the July 16, 2018, email, it

16  says:

17          "I received your question from

18          iGov.  We're consolidating support of

19          the open source Neo4j graph database

20          distributions under a nonprofit

21          organization:  Graph Foundation."

22          Do you see that?

23     A.  Right.  Yes.

24     Q.  And then the next paragraph, "I can help you

25  answer your questions."  And then I want you to take a

87

1    look at the following paragraph that says:

2         "The naming you'll see for the

3         build on the foundation site is ONgDB.

4         This is a fully AGPL fork of the open

5         source Neo4J GitHub repository with

6         all restrictive marks from Neo4j Inc.

7         removed."

8         Do you see that?

9    A.   Yes.

10   Q.   So at this point is Graph Foundation saying

11   that there's a fork of Neo4j called ONgDB available as

12   of July 16, 2018?

13   A.   I'm not sure what the state was on this site

14   then that we were directing them to.  It would seem that

15   there was something there.  I don't know what the state

16   was.  Maybe we had pre-built -- there was a point in

17   time where we were -- I don't know, I don't know when

18   that was.  Yeah, I don't know.  There must be something

19   up there for him then.  I'm not sure what was up there.

20   Q.   What do you mean by this is a fully AGPL fork

21   of the open source Neo4j GitHub repository with all

22   restrictive marks from Neo4j removed?

23   A.   I think it was, like, in January or March 2018

24   when the Commons Clause came in to, like, 3.4, something

25   like that.  I don't know the exact date.  So I think

88

1   this is when some of the Commons Clause stuff was going

2   on.  So I think all -- all that would mean by

3   restrictive marks is that we were conveying the

4   open source code as the pure open source under AGPL.

5        Q.  So with an AGPL license without the

6   Commons Clause?

7        A.  Right.  Yeah.  Because I think we -- yeah, we

8   had removed the Commons Clause I think at this point.

9        Q.  Is that what you're saying in the next

10  sentence?

11              "We've taken the necessary steps

12         to make sure we keep the repository

13         fully AGPL which is the license that

14         Neo4j has released it under, but then

15         added additional sections to the AGPL

16         license."

17       Are you referring to the Commons Clause there?

18       A.  Yeah, we're referring to Neo4j Inc. adding the

19  Commons Clause in to the AGPL license, yeah.

20       Q.  It says:

21              "Which in our conversations with

22         FSF (Free Software Foundation) is not

23         legal to do when using the AGPL

24         license."

25         Do you see that?

89

(290 of 299), Page 290 of 299
Case: 24-5538, 12/23/2024, DktEntry: 18.3, Page 290 of 299
BRAD NUSSBAUM Case 5:18-cv-07182-EJD Document 98-1 Filed 12/11/20 Page 166 of 198 October 16, 2020

```
1        A.  Yeah.  I think our understanding of this, you
2   know --
3        Q.  I'm just asking you --
4        A.  -- has evolved since then, but, yeah, I see
5   this.  I see this, yeah.
6        Q.  So as of July 16, 2018, had you had any
7   conversations with the Free Software Foundation
8   regarding Neo4j adding the Commons Clause to AGPL?
9        A.  We did not, no, not the Graph Foundation.
10       Q.  Did you personally have any conversations with
11  the Free Software Foundation whether it was legal for
12  Neo4j to add the Commons Clause to the AGPL?
13       A.  No.  I think I saw a conversation about it, but
14  we did not.
15       Q.  Saw, what do you mean by saw a conversation?
16       A.  I think I saw an email about a conversation.
17  I'm not sure how I saw that.
18       Q.  You don't remember who that email was from?
19       A.  I remember there was a conversation.  I'm not
20  sure what we were telling them, though.  I never spoke
21  to the Free Software Foundation direct.
22       Q.  Have you ever spoken to the Free Software
23  Foundation about whether Neo4j was able to add the
24  Commons Clause, quote, unquote, legally?
25       A.  I have not, no.
```

90

1          (WHEREUPON, Exhibit 15 was marked for

2      identification.)

3  BY MR. RATINOFF:

4      Q.  So we'll mark this document which was produced

5  by iGov.  Do you have what's Tab 56 in front of you?

6      A.  Yes.

7      Q.  Okay.  And so we'll call this Exhibit 15 now.

8  It's got the Bates number IGOV0001570185.001 on the

9  first page.  So again, this is dated May 22, 2018.  I

10  think that was around the same time we looked at that

11  earlier email and you had mentioned that Graph

12  Foundation wasn't in existence yet officially, correct?

13      A.  Sorry, that was too much.  What are you asking?

14      Q.  You see the date May 22, 2018?

15      A.  Yes.

16      Q.  So you didn't have a Graph Foundation email at

17  this point, right?

18      A.  I don't think Graph Foundation was formed so

19  definitely no.

20      Q.  And we looked at a prior email where you were

21  discussing forming Graph Foundation, correct, around

22  this time?

23      A.  I would say I don't think --

24          MR. PERNICK:  Objection, misstates testimony.

25          THE WITNESS:  I don't think we were doing that.

                                                        97

1    I don't think that's quite the right way to say that.

2         MR. RATINOFF:  Well, let's go back to -- I know

3    your counsel made an objection, and just make sure you

4    let me finish my question, give like a slight pause, let

5    Mr. Pernick have a chance to object if he needs to.

6         MR. PERNICK:  Especially since I generally have

7    to press my unmute button so it takes a little bit

8    longer.

9         The objection is misstates testimony.

10        MR. RATINOFF:  I'm going to strike the

11   testimony -- there was a lot of talk over -- so I'll

12   start over again.  In case he wants to object, just give

13   him a second.

14        JOHN PICONE:  Jeff -- Mr. Pernick, if you have

15   your spacebar, if you press it, it will unmute

16   temporarily.  I found that's an effective method.

17        MR. PERNICK:  I wasn't able to get that to work

18   in our test run, but it is working now.

19        JOHN PICONE:  As long as your cursor is on the

20   Zoom application it will work.

21        MR. PERNICK:  Thank you.

22        MR. RATINOFF:  Technology is great.

23   BY MR. RATINOFF:

24        Q.  Let's look again -- I think we looked at this

25   email address before, brad@atomrain.com.  That's your

                                                        98

1    email address, right?

2        A.  Yes.

3        Q.  You have no reason to believe you didn't

4    receive this email?

5        A.  No.  I received it, yeah.

6        Q.  And looking over this email, is this the email

7    you referenced from -- maybe seen from John Mark

8    earlier?

9        A.  It sounds about right.  This seems like an

10   email that came from Free Software Foundation discussing

11   this topic, yes.  I forget what they said, but yes.

12       Q.  Do you see anywhere in here where Free Software

13   Foundation's giving legal advice to Mr. Suhy?

14       A.  I think my view on that was that they -- I

15   think they didn't -- I don't think they could give us

16   legal advice or I don't think they said it was legal

17   advice.  I think it was, like, an opinion.  So I

18   don't -- you know, giving legal advice is not something

19   that they would do so I don't think that makes sense,

20   but I don't see what they're saying here.  I would have

21   to read it.

22       Q.  Okay.  Well, why don't you go ahead and do

23   that.

24       A.  I think they're giving us advice on the further

25   restrictions clause in Section 7, and I think they're

99

1    that I ever saw.  I think there was only ever one.

2           MR. PERNICK:  Jeff, we've been going for about

3    an hour and a half.  Can we take a brief five-minute

4    break.

5           MR. RATINOFF:  Sure.  Let me show one more

6    document.

7           MR. PERNICK:  Okay, no problem.  Nothing dire.

8           MR. RATINOFF:  Thank you for the reminder,

9    though.

10          (WHEREUPON, Exhibit 16 was marked for

11          identification.)

12   BY MR. RATINOFF:

13       Q.  Do you have that in front of you?  So this

14   would be the document produced by iGov, Bates number

15   IGOV0001570125.001, and this is Exhibit 16.

16          And do you recognize this email?

17       A.  Yes.

18       Q.  So you've seen this email before?

19       A.  I'm sorry.  I thought you meant do I know

20   what's in front of me.  You're asking if I -- I'm sorry.

21   What are you asking me?

22       Q.  I'm asking whether you've seen this email

23   before.

24       A.  This looks like a conversation happening with

25   the Free Software Foundation by John Mark.

108

1    Q.  And this is the same Donald Robertson that we

2    saw to your knowledge in the last email that we were

3    looking at?

4    A.  Yeah, it looks like it.

5    Q.  And then -- but you don't know -- you don't

6    know whether you've seen this email or not, before or

7    not?

8    A.  This may have been, like, one of the other

9    emails I mentioned; like, it was probably forwarded to

10   me at one point, but I don't know.  I'd have to go find

11   it.

12   Q.  Okay.  Maybe we'll have you do that after the

13   deposition.  But for the time being, we have this email

14   from the Free Software Foundation to John Mark which you

15   see here.

16       Looking at first where it says "snip" under

17   June 20th, do you see that?

18   A.  Yes, uh-huh.

19   Q.   "1) As the copyright holder,

20        is Neo4j Inc. allowed to add the

21        specific additional terms mentioned

22        above to the license.txt file

23        (containing the AGPL license terms)

24        and enforce these new additions?"

25        Do you see is that?

109

(296 of 299), Page 296 of 299     Case: 24-5538, 12/23/2024, DktEntry: 18.3, Page 296 of 299
Case 5:19-cv-06226-EJD   Document 98-1   Filed 12/11/20   Page 172 of 198
BRAD NUSSBAUM                                                      October 16, 2020

1        Q.  Yeah.

2        A.  I mean, I guess because our goal is to make

3   ONgDB available publicly, so 3.5 was the next version.

4        Q.  And that's because Neo4j released its

5   Version 3.5?

6        A.  Are you asking a question about our versioning?

7        Q.  Well, is there a significant difference between

8   version -- I'm sorry -- Neo4j 3.4 and 3.5?

9        A.  I mean, there are definitely differences.

10        MR. RATINOFF:  Okay.  I'm going to put Tab 13

11   back up.  So this will be Exhibit 18.

12        (WHEREUPON, Exhibit 18 was marked for

13        identification.)

14   BY MR. RATINOFF:

15        Q.  Do you have Tab 13 up on your screen?

16        A.  Yes, I have it up.

17        Q.  And this again was produced with the Bates

18   number N4J_018661.  It was printed out from the

19   internet, from Twitter's website, on 5/20/2020.

20        This is, again, I believe Graph Foundation's

21   Twitter account, correct?

22        A.  Yes, this is our Twitter account.

23        Q.  Do you have any reason to believe these tweets

24   that are included in this document are accurate as far

25   as being from Graph Foundation's account?

137

1    A.  They look accurate to me.

2    Q.  Do you see the first tweet right here at the

3 top?  It says:

4         "It's official:  #Neo4j

5         Enterprise is closed source.  As of

6         November 2, 2018, Neo4j Inc. has

7         moved all enterprise modules of the

8         3.5 release to a private repository."

9    A.  Yep.

10    Q.  Do you see that?

11    A.  I see that.

12    Q.  What did that mean?

13    A.  I think exactly what it says.

14    Q.  Why did Graph Foundation tweet that?

15    A.  I think it's a factual statement.  Enterprise

16 is closed source.  I think that's true.  There were

17 commits that I know that I reversed as of November 2nd,

18 2018, that removed all the enterprise code and all the

19 enterprise modules, yeah, to the private repository, so

20 that's true.  And, yeah, they even announced I think

21 that they were open core.

22    Q.  Was there a prior release Version 3.5 that had

23 enterprise modules that were not part of the enterprise

24 repository?

25    A.  Was there a prior release.  Like -- well, so

138

1        A.  Yeah.  Yeah.

2            MR. RATINOFF:  I'm going to put up another

3    document.  This is -- Tab 25 will be Exhibit 19.

4            (WHEREUPON, Exhibit 19 was marked for

5        identification.)

6    BY MR. RATINOFF:

7        Q.  Let me know if you have that up.

8        A.  Yep, I've got it.

9        Q.  So looking at this email, it shows ben@atomrain

10   and brad@atomrain.com.  Do you see those two email

11   addresses?

12       A.  Yes.

13       Q.  Those are the email addresses we discussed

14   earlier that belong to you and your brother, correct?

15       A.  Yes.

16       Q.  This is johnmarksuhy@purethink.com.  I don't

17   know if we've seen that address before.  Do you

18   recognize it?

19       A.  Yeah.  Yeah.

20       Q.  So this is a document that was produced by

21   Mr. Suhy's counsel.  And do you have any reason to

22   believe this isn't an accurate email that you received?

23       A.  No, no reason.

24       Q.  Do you see the subject there, graphstack.io -

25   avoid trademark issues?

                                                          147

1   good way, and I don't think Neo was too receptive of

2   being in a position of wanting to help find a solution,

3   kind of filed a lawsuit against us, so I don't think

4   there was really much opportunity to discuss it.

5          MR. RATINOFF:  Okay.  So let me move on to

6   another exhibit.

7          (WHEREUPON, Exhibit 21 was marked for

8          identification.)

9   BY MR. RATINOFF:

10     Q.  This will be Exhibit 21, I believe.  This was

11  produced as Bates number N4J-GFI_000092.  This is a

12  printout from Graph Foundation's website as of

13  September 24, 2019.

14         Do you have any reason to believe this isn't a

15  correct printout of what was on Graph Foundation's

16  website as of that date?

17     A.  No reason, no.

18     Q.  And looking at Licensing, do you see that

19  heading right there?

20     A.  Yes.

21     Q.  And it says:

22             "ONgDB distributions are

23             licensed under AGPLv3 as a free and

24             open drop-in replacements of Neo4j

25             Enterprise commercial licensed

157