No. 24-5538

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**NEO4J, INC., et al.,**

*Plaintiff and Appellee,*

v.

**Suhy, et al.**; *Defendant and*

*Appellant.*

---

Appeal From a Judgment of the United States District Court
For the Northern District of California
Hon. Edward J. Davila
United States District Judge
N. D. Cal. No. 5:18-cv-07182 EJD

---

**APPELLANTS' EXCERPT OF RECORD**

**VOL. 9 OF 16**

**pp. 2086-2180**

---

John Mark Suhy Jr (Pro Se)
8814 Danewood Dr
Alexandria, VA 22308
jmsuhy@gmail.com
Tel.: (703) 862-7780

**INTERROGATORY NO. 5:**

IDENTIFY all facts, DOCUMENTS and the legal basis supporting YOUR contention in Paragraph 18 of the YOUR COUNTERCLAIM that "NEO4J, Inc. unlawfully restricts third parties from supporting the free open source version so NEO4J, Inc. can license and support the same software under an expensive commercial license without fear of honest competition," and the four (4) persons most knowledgeable about such facts.

**RESPONSE:**

- 5.1 Neo4j Inc. has restricted PureThink and John Suhy from using the open source version of Neo4j by telling third parties they cannot do business with them under the restrictive terms of the Partner Agreement ( Sections 4.3.1 and 4.3.2 Exhibit B to the Counterclaim) which is violation of California Business and Professions Code §16600 and responding parties have a license from the owner of the software, Neo4J Sweden AB, to license and support the open source software which Neo4j Inc. has no right to restrict.

- 5.2 On or about April 2016 PureThink and Neo4j Inc. entered into an agreement over an upcoming IRS procurement. Over the previous year Neo4j Inc. had been trying to get IRS to procure a Neo4j Enterprise package.  IRS was using Neo4j Community Edition under its open source license already and did not see the benefit of paying a large amount of money for support when their existing system was being operated and supported already.   IRS indicated they were not interested in purchasing a Neo4j subscription around March-April 2016 because they needed a solution built before they could pay to have anything supported for the solution. See file: INTEROGS-PURETHINK-IGOV-1/00005893-A001-A010.pdf
John Mark Suhy spoke with Neo4j and proposed that PureThink submit a proposal to build the solution they needed, which would lead to re-occurring revenue in the follow up years from Neo4j Government Edition package subscriptions.   Over many emails and phone conversations, John Mark convinced the Neo4j Team that not taking the

- 5.24 On information and belief similar interference as to the above statements is believed to have occurred with other agencies to include but not limited to NGA, other DHS organizations, Airforce, Northrup Grumman, and unknown organizations which would have considered PureThink as part of the government procurement process.

- 5.25 In a September 19, 2017 letter to the IRS, Counsel for Neo4j Inc. represented that

  "PureThink, is not authorized to provide the solicited graph database software and services in support of the CKGE."

  and

  "Neo owns software that meets all requirements for the continued operation of the CKGE to meet user demands...".

  The statement above is false as Neo4j was just one piece of CKGE and Neo4j Inc. did not own the other software that made up or could have been dropped in to make CKGE.

  See file: INTEROGS-PURETHINK-IGOV-1/000267-000279.pdf

- 5.26 On or about 2018 John Mark Suhy spoke with Steven Baker via skype. Steven worked for Neo4j Inc. Steven told John Mark that Neo4j Inc. was "out to get him" and that PureThink and John Mark were hated at Neo4j Inc. He stated that he was told that John Mark's promotion of open source licenses was causing Neo4j Inc. to lose a lot of money. He also said that Neo4j had been planning on trying to sue John Mark Suhy with the expectation that he would not have the money to "lawyer up". He said they expected a quick settlement which would take John Mark and his companies out of the picture. He said they told employees they would go after John Mark and his company(s) using trademark law.

- 5.27 On or about March 15, 2017: Mike Dunn from IRS had a phone call with John Mark Suhy and told him that Jason Zagalsky and John Broad had several discussions

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24 **INTERROGATORY NO. 6:**

25    *IDENTIFY all facts and DOCUMENTS supporting YOUR contention in Paragraph 19 of*

26 *YOUR COUNTERCLAIM that "NEO4J, Inc. retaliated, terminating the Government Edition, the*

27 *Government Edition Agreement, the Partner Agreement and eliminating PureThink as a*

28

- 28 -

PURETHINK LLC AND IGOV INC.'S AMENDED RESPONSE TO NEO4J, INC.'S FIRST SET OF
INTERROGATORIES

*competitor by telling users and potential users PureThink could not support the open source version of Neo4j," and the four (4) persons most knowledgeable about such facts.*

**RESPONSE:**

- 6.1 Removed.

- 6.2 On or about April 2016 PureThink and Neo4j Inc. entered into an agreement over an upcoming IRS procurement. Over the previous year Neo4j Inc. had been trying to get IRS to procure a Neo4j Enterprise package.  IRS was using Neo4j Community Edition under its open source license already and did not see the benefit of paying a large amount of money for support when their existing system was being operated and supported already.   IRS indicated they were not interested in purchasing a Neo4j subscription around March-April 2016 because they needed a solution built before they could pay to have anything supported for the solution. See file: INTEROGS-PURETHINK-IGOV-1/00005893-A001-A010.pdf

John Mark Suhy spoke with Neo4j and proposed that PureThink submit a proposal to build the solution they needed, which would lead to re-occurring revenue in the follow up years from Neo4j Government Edition package subscriptions.   Over many emails and phone conversations, John Mark convinced the Neo4j Team that not taking the proposed approach would mean Neo4j would lose out altogether instead of getting a footing at IRS, and almost guaranteed recurring revenue on the follow up years.  The Neo4j Team agreed.

    The agreement around the IRS deal was as follows:

- John Mark Suhy could make all decisions around the agreement between PureThink and IRS relating to the deal.  This came about because time was of

told John Mark Suhy that the legal issues were between PureThink and Neo4j Inc. John Mark Suhy told IRS that he had no control over Jason as Jason did not work for PureThink.

- 6.22 PureThink and DHS:  In 2017 Brian Rodrigue had a phone call with John Mark Suhy where he explained why PureThink did not get the award.

- 6.23 On or about May to July 2017 –  Neo4j Inc. employees had a phone conversation with the DHS USCIS who had reached out to Neo4j to gather / and or verify some details for the Neo4j Government Edition procurement. At this point, Brian Rodrigue had already told John Mark Suhy via email, that the recommendation was to procure Neo4j Government Edition with PureThink.
On the phone call, Neo4j Inc. was told that DHS had decided to procure Neo4j Government Edition through PureThink.  The Neo4j people on the phone told DHS team that DHS could not work with PureThink and had to go through another vendor. Brian Rodrigue (DHS Team) who told John Mark about the incident, and who was on the call said it was an uncomfortable situation and caught the DHS team by surprise as the recommendation to go with Neo4j  because in part because of PureThink's time and effort helping around the procurement / research process.
See file: INTEROGS-PURETHINK-IGOV-1/000304-000306.pdf

- 6.24 On information and belief similar interference as to the above statements is believed to have occurred with other agencies to include but not limited to NGA, other DHS organizations, Airforce, Northrup Grumman, and unknown organizations which would have considered PureThink as part of the government procurement process.

- 6.25 In a September 19, 2017 letter to the IRS, Counsel for Neo4j Inc. represented that

**INTERROGATORY NO. 8:**

IDENTIFY each prospective and actual economic relationship that YOU allege that NEO4J intentionally interfered with in YOUR First Cause of Action of the COUNTERCLAIM and describe in detail the nature and basis of each such relationship.

**RESPONSE:**

- 8.1 Removed.

- 8.2 GraphAware Inc.
  PureThink and John Mark Suhy were working with GraphAware on several potential opportunities including a cyber threat intelligence prototype.

- 8.3 IRS – PureThink was awarded a contract with IRS which it completed. It was awarded a follow up contract which was canceled due to Neo4j Inc. interference.

- 8.4 IRS – iGov Inc. was working with a team to bid on an IRS BPA procurement

- 8.5 DHS USCIS – PureThink worked with the DHS team on a Neo4j Government Edition procurement.

- 8.6 PureThink and DHS:  In 2017 Brian Rodrigue had a phone call with John Mark Suhy where he explained why PureThink did not get the award.

- 8.7 On or about May to July 2017 –  Neo4j Inc. employees had a phone conversation

advertised and which did not have proper brand name justification.

- 8.13 US Airforce: (Airforce) – iGov Inc. was an interested vendor in providing a support subscription for an Airforce Neo4j procurement that was advertised and which did not have proper brand name justification.

- 8.14 Northrup Grumman – iGov Inc. was asked to quote a graph solution for Northrup Grumman which leveraged Neo4j Enterprise under the free open source AGPL license.

- 8.15 United States Parcel Service (USPS) – PureThink worked with USPS to try getting them to procure a Neo4j Government Edition package.

- 8.16 US Army – PureThink worked with Army answering questions about a potential procurement, as well as providing quotes.  The introduction was originally made by Neo4j Inc.

- 8.17 Accenture – iGov Inc
  iGov Inc. was working with DHS USCIS and their Accenture backed team on a potential opportunity that was different than the DHS deal which PureThink is owed the commission on.

- 8.18 Information Analysis Incorporated (IAI) – PureThink was working with IAI around a potential partnership or acquisition of PureThink and the Government Edition exclusivity agreement.

<u>People knowledgeable of facts:</u>



**INTERROGATORY NO. 13:**

For each economic relationship identified in Interrogatory No. 8, IDENTIFY all facts and DOCUMENTS evidencing the economic harm YOU contend YOU suffered as a proximate result of NEO4J's intentional acts of interference, and the four (4) persons most knowledgeable about such facts.

**RESPONSE:**

- 59 -

- 13.1 Removed.

- 13.2 PureThink:  1,200,000 – which is the value of the contract for solicitation
  M7M528ROO00 which was awarded, then canceled.
  See files: INTEROGS-PURETHINK-IGOV-1/000309-000310.pdf, INTEROGS-
  PURETHINK-IGOV-1/000311-000312.pdf

- 13.3 John Mark Suhy:  Lost income for the date range of Sept 22, 2016  to May 2018
  while waiting on IRS to validate claims and decide if the procurement could go
  through, or a new solicitation was in order.

- 13.4 PureThink lost $26,020 which is 25% of a $104,028 deal for DHS USCIS
  PureThink and DHS:  In 2017 Brian Rodrigue had a phone call with John Mark Suhy
  where he explained why PureThink did not get the award.

- 13.5 On information and belief similar interference as to the above and other
  interrogatory responses .  Purethink would have won and made  25% commission
  from government procurements including but not limited to DHS, NGA, and Airforce.
  The Neo4j Government Edition exclusivity agreement specifically stated that only the
  Neo4j Government Edition could be sold to these agencies.  The reason for this term
  was to ensure government agencies would put the effort to get PureThink on the
  proper vehicles and schedules.

- 13.6 Neo4j Exclusivity agreement for Neo4j Government Edition had terms agreeing
  that only US Government agencies could only purchase Neo4j Government Edition,
  there was no way any other vendor could have one any awards because of the
  agreement.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23

24

## INTERROGATORY NO. 14:

25     *IDENTIFY each contractual relationship that YOU allege that Neo4j intentionally*

26  *interfered with in the Second Cause of Action of YOUR COUNTERCLAIM, and describe in detail*

27  *the nature of each such relationship, including but not limited to the parties to the contract, the*

28  *nature and subject matter of each such contract and the terms of each contract.*

- 62 -

PURETHINK LLC AND IGOV INC.'S AMENDED RESPONSE TO NEO4J, INC.'S FIRST SET OF
INTERROGATORIES

**RESPONSE:**

- 14.1 Removed.


- 14.2 GraphAware Inc.

   PureThink and John Mark Suhy were working with GraphAware on several potential

   opportunities including a cyber threat intelligence prototype.


- 14.3 IRS –  PureThink was awarded a contract with IRS which it completed. It was

   awarded a follow up contract which was canceled due to Neo4j Inc. interference.


- 14.4 IRS – iGov Inc. was working with a team to bid on an IRS BPA procurement


- 14.5 DHS USCIS – PureThink worked with the DHS team on a Neo4j Government

   Edition procurement,


- 14.6 PureThink and DHS:  In 2017 Brian Rodrigue had a phone call with John Mark

   Suhy where he explained why PureThink did not get the award.


- 14.7 On or about May to July 2017 –  Neo4j Inc. employees had a phone conversation

   with the DHS USCIS who had reached out to Neo4j to gather / and or verify some

   details for the Neo4j Government Edition procurement. At this point, Brian Rodrigue

   had already told John Mark Suhy via email, that the recommendation was to procure

   Neo4j Government Edition with PureThink.

   On the phone call, Neo4j Inc. was told that DHS had decided to procure Neo4j

   Government Edition through PureThink.  The Neo4j people on the phone told DHS

   team that DHS could not work with PureThink and had to go through another vendor.

   Brian Rodrigue (DHS Team) who told John Mark about the incident, and who was on

   the call said it was an uncomfortable situation and caught the DHS team by surprise as

goods and services sold under the trademark are maintained. Uncontrolled licensing is called

naked licensing and results in abandonment of the trademark.  Neo4j Inc. claims to own the

trademark to NEO4J. Yet a software product names NEO4J, without any ® designation is

licensed and freely available for download on GitHub-a repository for open source software-

without any quality controls over the software. Anyone may then download the software and

modify it without any quality control standards imposed by anyone. Thus, Neo4j Inc. has not

imposed any quality standards over a product bearing its trademark and has abandoned the

trademark.   People who have read the AGPL license and understands that Neo4j Inc. claims to

own the trademark but the software is licensed by a third party and that the source code to the

software may be modified in any fashion and there are no quality controls in the license and

owner of the software imposes no quality controls over use or modification of the software.


People knowledgeable of facts:

John Mark Suhy
703-862-7780
jmsuhy@purethink.com
Alexandria, VA


Discovery is ongoing, Responding party reserves the right to supplement its response to this

interrogatory.

Dated: November 22, 2019        _____

Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney At Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Attorney For Defendants and Counter
Claimants PURETHINK LLC, a Delaware
Limited Liability Company, IGOV INC., a
Virginia Corporation, and JOHN MARK
SUHY

1

## Verification

2

3
I, John Mark Suhy, am a defendant, and an officer for defendants Purethink LLC and IGOV
Inc. in the above cause of action. I have read the following:

4
**PURETHINK LLC AND IGOV INC.'S AMENDED RESPONSE TO NEO4J, INC.'S
FIRST SET OF INTERROGATORIES TO PURETHINK LLC AND IGOV INC.**

5
I am familiar with the contents of the above.

6

7
I declare under penalty of perjury under the laws of the United Stated of America that the

8
foregoing responses are true and correct, except as to those matters which are therein stated to be

9
on information or belief, and as to those matters, I believe them to be true.

10

11
Signed in Tampa Bay, Florida on November 22, 2019.

12

13

14
John Mark Suhy

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

I am a citizen of the United States. My business address is 1754 Technology Drive, Suite 228, San Jose, CA 95110. I am over the age of eighteen years and not a party to the within action. On the date stated below, I served the attached:

**PURETHINK LLC AND IGOV INC.'S AMENDED RESPONSE TO NEO4J, INC.'S FIRST SET OF INTERROGATORIES TO PURETHINK LLC AND IGOV INC.**

On the parties listed below at the addresses listed:

**to NEO4J, INC., a Delaware corporation,** attorneys of record:

Jeffrey M. Ratinoff
jratinoff@hopkinscarley.com
John V. Picone III
jpicone@hopkinscarley.com
Hopkins & Carley, a Law Corporation
70 South First Street
San Jose, CA 95113
Telephone: (408) 286-9800
Facsimile (408) 998-4790

__ (By Mailing) I caused a true copy of each document identified above to be placed in a sealed envelope with first class postage affixed. Each such envelope was deposited for collection and mailing that same day in the ordinary course of business in the United States Mail at San Jose, California.
___(By Personal Service) I caused a true copy of each documents identified above to be delivered by hand to the offices of each addressee above.
___(By Overnight Delivery) I caused a true copy of each documents identified above to be sealed in an envelope to be delivered to an overnight carrier with delivery fees provided for, addressed of each addressee above.
_X__ (By Electronic Service) by transmitting via my electronic service address (adronjr@adronlaw.com) the document(s) listed above to the persons at the e-mail addresses set forth above.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Dated: 11-22-19                              _____

                                             Adron G. Beene

# EXHIBIT F

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA


NEO4J, INC., a Delaware
corporation; and NEO4J SWEDEN
AB, a Swedish corporation,

        Plaintiffs,

                                    CASE NO.
vs.                                 5:18-cv-07182-EJD

PURETHINK, LLC, a Delaware
limited liability company;
IGOV, INC., a Virginia
corporation; and JOHN MARK
SUHY, an individual,

        Defendants.
_____/

REMOTE VIDEOTAPED DEPOSITION OF
JOHN MARK SUHY
as representative of IGOV, INC.
pursuant to Federal Rule of Civil Procedure 30(b)(6)

**Confidential Pursuant to Protective Order**


DATE:        October 22, 2020

TIME:        9:12 a.m.

LOCATION:    Via videoconference


REPORTED BY:  BENJAMIN GERALD
              California CSR No. 14203
              Washington CSR No. 3468

1

1  email address neo4j@igovsol.com; is that right?

2      A.  That never replaced the info@igovsol.com.

3      Q.  I see.  Let me ask that a different way.

4      At any time in -- in the operations of iGov,

5  did -- did the company use an email address,

6  neo4j@igovsol.com?

7      A.  Yes.

8      Q.  Okay.  And what -- you said it didn't replace

9  that, so what was the use of the neo4j@igovsol.com?

10      A.  That was for any questions relating to the

11  open-source Neo4j project around graphs.  Anything where

12  somebody would want consulting around that project.

13      Q.  Okay.  You didn't receive authorization from

14  Neo4j, the company, to use neo4j@igovsol.com as an email

15  address, did you?

16      A.  No.  I should point out that it wasn't actually

17  an email address; it was a catchall.  You can make email

18  address x1234@igovsol.com, and it will still come to a

19  catchall account.

20      Q.  Okay.  But if someone addressed a message to

21  neo4j@igovsol.com, that would go to iGov?

22      MR. STARR:  I'm sorry.  I -- I need to make an

23  objection in there.  I don't want to ruin your flow.

24      But John, if I'm objecting, please don't talk.

25  Just let me finish.  We can't talk over each other on

41

1     website and it has not been corrupted or altered in any

2     way, the -- the 10/18/2020 date, is that when you

3     remember making the change?

4         A.  Well, I don't remember making the change.  I

5     don't remember the date of making the change.  I just

6     remember I made it.

7         Q.  Okay.  And this doesn't help -- help you

8     remember when you made it?

9         A.  No, this does not.

10         Q.  Okay.  Well, we looked at Tab 123, and assuming

11     the date on that was accurate, that was October 2nd --

12     I'm sorry.  That's -- that's wrong.  Strike that.

13         Mr. Suhy, are you familiar with the term

14     "drop-in replacement" as it's used in a computer-science

15     context?

16         A.  I've never heard an official "drop-in

17     replacement" term used in computer science.

18         Q.  Okay.  What does the term "drop-in replacement"

19     mean to you?

20         A.  What does the term "drop-in replacement" --

21     well, it means to me -- in the context of -- of what?

22         Q.  Graph database software.

23         A.  Are you specifically talking about my use of

24     using "drop-in replacement" of ONgDB being a drop-in

25     replacement for Neo4j?

<div align="right">120</div>

1    Q.   Yes.  I'm going to get around to it.

2    A.   Okay.  All right.

3         So -- so that term means -- to me, it's that

4    it's using -- as long as you're using the same

5    underlying core, then you can easily switch back and

6    forth the data, the version of Cypher that you're using,

7    will all work the same across different versions.

8         So for example, Neo4j Core, which you can call

9    Community -- sometimes I hear it both ways -- is a

10   drop-in replacement for Neo4j Enterprise.  ONgDB, since

11   it's using Neo4j Core in superset, is also a drop-in

12   replacement.

13        So as an example, in certain versions, you can

14   copy the data directories directly over to the -- to

15   between the two software instances.  So Neo4j Enterprise

16   Commercial, for example, or Neo4j Enterprise AGPL over

17   to ONgDB, and those data files would work.  In other

18   instances, you can actually do an export and an import,

19   and since you're using the same Cypher versioning, you

20   can do the same things that you would -- do queries and

21   whatnot.  It would be -- it would be -- wouldn't be a

22   big change.

23        So for example, something that's not a drop-in

24   replacement would be changing from Neo4j to ArangoDB or

25   to TerminusDB, which are two different open-source graph

121

1  databases.

2      Q.  Right.  So there's a lot there, so let's try to

3  unpack it.

4          So you're not saying that -- that the software

5  packages are identical?  You're not saying that?

6      A.  The only time that they would be identical

7  would be when they -- when AGPL -- like, if you

8  compiled -- if you compiled -- the source would be

9  identical for certain versions of Neo4j Enterprise AGPL,

10  but remember, there's source and then there's object

11  code, the compiled code.

12      Q.  Right.  So you're saying only under certain

13  circumstances would the Neo4j Enterprise be identical to

14  you ONgDB?

15      A.  Well, it depends what "identical" means.  I

16  need you to define.  Is it -- identical how?

17      Q.  Like, the code.  The code's identical?

18      A.  Yeah, the source code is identical in certain

19  versions, and I'm trying to think if -- because the

20  source code itself would be identical for certain

21  versions, in some versions, there's changes.  Like for

22  example, you could never be identical source when we

23  don't have the source after a version.  But before a

24  certain version, when it was still open, they're

25  identical, the source code.

122

```
 1                         CERTIFICATE

 2       I, BENJAMIN GERALD, Certified Shorthand Reporter,

 3   Certificate No. 14203, for the State of California do

 4   hereby certify:

 5       That prior to being examined, the witness named in

 6   the foregoing deposition was by me duly sworn to testify

 7   to the truth, the whole truth, and nothing but the truth

 8   in the within-entitled cause;

 9       That said deposition was taken shorthand at the

10   time and place herein named;

11       That the deposition is a true record of the

12   witness's testimony as reported to the best of my

13   ability by me, and was thereafter transcribed to

14   typewriting by computer under my direction;

15       That request [X] was [ ] was not made to read and

16   correct said deposition.

17       I further certify that I am not interested in

18   the outcome of said action, nor am I connected with, nor

19   related to any of the parties in said action, nor to

20   their respective counsel.

21       Witness my hand this 29th day of October, 2020.

22

23                      _____

24                      BENJAMIN GERALD, CSR No. 14203

                        STATE OF CALIFORNIA

25

                                                          261
```

# EXHIBIT G

🖥 **fossas** / **commons-clause**

<> Code   ⓘ Issues 7   ⭠⭠ Pull requests 2   ▷ Actions   ⊞ Projects   ⛨ Security   ∿ Insights

# Preventing specialized consultants? #4

New issue

🕃 Closed     **saibotsivad** opened this issue on Aug 22, 2018 · 15 comments



**saibotsivad** commented on Aug 22, 2018

The section defining "sell" raised a question:

> "Sell" means practicing any or all of the rights granted to you under the License to provide to third parties, for a fee or other consideration (including without limitation fees for hosting or consulting/ support services related to the Software), a product or service whose value derives, entirely or substantially, from the functionality of the Software.

The relevant section of that paragraph being the following:

> to provide to third parties, for a fee ... consulting/ support services related to the Software

That sounds like I couldn't offer consulting specializing in software that uses the Commons Clause.

For example, if this clause were applied to something like MySQL, I wouldn't be able to offer services like:

- Pay me X$ and I will install and configure a MySQL server.
- Pay me X$ and I will fix your broken MySQL server.
- Pay me X$ and I will consult you on what sort of MySQL server you need for your business.

Question: is preventing examples like I listed one of the goals of the Commons Clause?

I think the motivation for the Commons Clause in general is well explained, but it would be useful to expound a bit more on what the reasoning is in having the "consulting/support" clause. More details would be helpful in understanding motivation and intent for companies who want to use this license addendum.

**Assignees**

No one assigned

**Labels**

None yet

**Projects**

None yet

**Milestone**

No milestone

**Linked pull requests**

Successfully merging a pull request may close this issue.

None yet

**7 participants**



(25 of 95) Page 25 of 95
2/4/2021    Case: 24-5538, 12/23/2024, DktEntry: 18.10, Page 25 of 95
Case 5:18-cv-07182 preventing specialized commentinates Issue #4 fossa/commons-clause GitHub 25 of 80

 6



**saibotsivad** commented on Aug 22, 2018    [Author]

For a more at-hand example, Redis Labs is adding the Commons Clause to certain modules, for example RedisSearch.

My interpretation of the "consulting/support" clause of the text would be that the use of the Commons Clause disallows a consultancy engineer offering services like:

- Pay me X$ and I will add and configure RedisSearch in your existing Redis server setup.
- Pay me X$ and I will consult you on whether you need the RedisSearch module and how you will want to configure it.



**heathermeeker** commented on Aug 23, 2018

Consulting would not be "a product or service whose value derives, entirely or substantially, from the functionality of the Software." The value of consulting doesn't derive from what the software does ("functionality").



**saibotsivad** commented on Aug 23, 2018    [Author]

So are you saying that the Commons Clause is *not* meant to prevent the examples I listed?

The structure of the sentence I quoted seems to tie "consulting/support" to the word "sell" in some way, and I'm not sure how else to interpret it other than forbidding the examples I listed.

Can you write a bit about what that parenthesis is trying to prevent? That would probably help me understand it better.

 6

**xizhao** commented on Aug 23, 2018    [Contributor]

(26 of 95)  Page 26 of 95
2/4/2021    Case: 24-5538, 12/23/2024, DktEntry: 18.10, Page 26 of 95
Case 5:18-cv-07 Preventing specialized consultants issue #4 fossas/commons-clause · GitHub of 80



**@saibotsivad** Yes, I believe so, as the value of consulting is additive, not "substantially" the same value.

If this is a major area of confusion for people, we can clarify this in the FAQ.

 1



**heathermeeker** commented on Aug 23, 2018

Bear with a legal technicality, but the Commons Clause is not a restriction on performing services -- it can't be. The license grant for the software is in the underlying license, and the Commons Clause claws back one kind of commercial use right. So, picture the original grant as a Venn diagram circle, and the excluded right to Sell as a little circle inside that. Providing services was not in the big circle in the first place, so the small circle can't change it.

But perhaps you are thinking, can I use the software in order to provide my services? That's a reasonable question. In other words, is the right to use the software in support of professional services -- like development, maintenance, or analysis, clawed back by the exclusion? No, because that use is not a service that derives its value from the functionality of the software. Your professional services derive their value from your expertise, not what the software does. The exclusion has to cover services, though, or it would have a big loophole. Offering the software via SaaS as a substitute for distributing it, and selling that access, is the main kind of service that is meant to be limited. Your consulting is not an economic substitute for the software. SaaS is.

Of course, I'm not your lawyer, so technically I can't give you advice. The clause means what it means, and although I led the drafting of the clause, that doesn't mean I have authority to interpret documents. That's not how the law works -- in the end, only a court has that power, no matter who wrote the document. But I hope to be helpful and dispel any confusion.

 3     3



**xizhao** commented on Aug 23, 2018    `Contributor`

**@heathermeeker**, I suggest we can add a quick clarification in the FAQ and link to this Github Issue as I've seen this pop up before on HN and Twitter.

(27 of 95)   Page 27 of 95
2/4/2021
Case: 24-5538, 12/23/2024, DktEntry: 18.10, Page 27 of 95
Case 5:18-cv-07182-EJD Document 105-4 Filed 02/02/24 Page 44 of 80



**mpdehaan** commented on Aug 24, 2018

I've shared on twitter, but here's some long-form comments on why I think this is a good idea to *start* here, but the terms about "substantial value" may possibly block people that, for instance, are using a product as a key internal component but are not reselling.

I think the language to describe what reselling to third parties is should be more explicit.

For instance, making a hosted-RDS type solution of a database is reselling, but using that database inside your .com petstore isn't.

As such I can't use this *NOW*, but want to use something like this. Definitely up for a larger conversation. Anyway, see blog post:

https://medium.com/@michaeldehaan/why-open-source-needs-new-licenses-d2d9d819a10



**mpdehaan** commented on Aug 24, 2018 • edited ▾

Further clarification is I don't really want to *block* consulting either, consultants are great for patches and spreading software sometime, but I would like to encourage them (in my case) to buy a commercial license. They are making money off the thing, so they should be able to share some of the funds with that thing.

 1



**Lmpessoa** commented on Aug 24, 2018

I'm also considering switching from a regular open source license to Commons Clause but I also don't like the inclusion of "consulting/support" in this restriction. As well as @mpdehaan I would like to encourage people to use my software even to offer consulting/support services and (one I haven't seen explicitly covered here) educational courses. I believe these encourage people to use the software and even work as advertising for it. What we should be wary of is selling the software itself.

Thus, it is my opinion only, of course, that a license in these terms should restrict only the "right" to sell/rent the software itself, derivative works (from using the provided source code) or other services or applications embedding the software subject to the license and thus exclude completely the restriction to offer support/consulting services in any way.

I believe we need new "open-source" licenses that may help sustain this development model and this is a great initiative but I also believe it needs more discussing. After this, I may think of drafting my own "open-source except for sale" license and see how it goes but always keeping an eye here.

 2

---

 **saibotsivad** commented on Aug 27, 2018                                      `Author`

@heathermeeker says:

> Your professional services derive their value from your expertise, not what the software does.

But if consulting/support is excluded because of the phrase "from the functionality of the Software" then why even have "consulting/support" in the CC at all? Doesn't it just add confusion?

For me, as a software consultant, offering consultancy specializing in software that uses the CC is a risk because 1) the general reading implies that some sort of limitation on consultancy exists, and 2) trying to get an answer on interpretation through a court cost is crazy expensive.

The only interpretation I have been able to make is that the intended desire of the Commons Clause is to *prevent* consulting/support services specific to the Software, e.g. the examples I listed originally.

Maybe that's my failure to understand English legalese, but if that's not the intent I would love to hear more about what the intent of the "consulting/support" phrase actually *is*, instead of what it *is not*.

 2

---

 **mpdehaan** commented on Aug 30, 2018

Here's the approach that I personally arrived at (trademarks, not copyright). Thanks to Adam Jacob from Chef for being a good sounding board:

https://gist.github.com/mpdehaan/6c1bf2314ce89cac961b31da36c60252

While I like the idea of authors and communities having more control, it is clear there are some that are religiously opposed to new licenses, and that *does* suck. However I sympathize with legal departments who have preapproved license lists and can see that being an adoption barrier.

2/4/2021    Case 5:18-cv-07182 preventing specialized consultants... · Issue #4 · fossas/commons-clause · GitHub

So I'm stuck between what I feel is right and smart vs what might not cause a lot of blowback.

This is possibly a good middle ground.



**Lmpessoa** commented on Aug 30, 2018

**@mpdehaan** I liked this approach. Instead of preventing a person from offering consulting/supporting services, you prevent them from using the trademark so they can barely advertise they do unless they support the project and offer to list those supporting in order to even help them be found by those who need. Very clever!

However, this approach seems only to cover consulting/supporting and not derivative works made using your code. You mention they are on their own and have to rebrand the app but they are still able to sell the resulting software commercially either directly or embedded as another product or service and you are still maintaining their source of revenue without getting a dime for. That's what I wanted to avoid using CC.

As I said, I like your approach and I'd like to follow it but I wanted to have it structured in the form of a new generic open-source license anyone could adopt. I'm thinking about pausing my project to work on this.



**xizhao** commented on Sep 20, 2018                                                      Contributor

I think this has been substantially discussed here for now.

I'm adding some clarifications to the FAQ that should address this. I'm linking this discussion in the FAQ and closing this issue.

 1     2

 **xizhao** closed this on Sep 20, 2018



**kortschak** commented on Oct 2, 2018

(30 of 95), Page 30 of 95
2/4/2021
Case: 24-5538, 12/23/2024, DktEntry: 18.10, Page 30 of 95
Case 5:18-CV-07 preventing/specialized-consultants-to-issue #4 fossas/commons-clause · GitHub of 80

This has been closed, but the question above "Maybe that's my failure to understand English legalese, but if that's not the intent I would love to hear more about what the intent of the "consulting/support" phrase actually *is*, instead of what it *is not*." has not been answered. That would go a long way towards clarifying this concerns here.

 4



**miraculixx** commented on Oct 8, 2018 • edited ▾

I came here from the link provided in the FAQ at https://commonsclause.com. I was specifically trying to understand what the Commons Clause means in relation to the very type of services asked in this thread. Unfortunatley this thread does not do anything to clarify, nor does the FAQ. All they do is confirm that there is an issue, but no resolve.

I am guessing that the author of the license wanted to add a provision against "smart" vendors who might claim to host the software for free but then charge for support/consulting instead, effectively just mincing words.

On the other hand, the reference to consulting/support services in the clause is the source of confusion and does nothing to provide better protection against such providers - they could always claim that their consulting/support services does not derive its value from the functionality of the Software itself and thus is not affected by the clause anyway. Also "product or service" already covers the case of a service (including support services) that is merely circumventing "hosting".

As a constructive proposal I suggest to remove the consulting/support services part from the Commons Clause as follows (IANAL):

*For purposes of the foregoing, "Sell" means practicing any or all of the rights granted to you under the License to provide to third parties, for a fee or other consideration (including without limitation fees for hosting Software), a product or service whose value derives, entirely or substantially, from the functionality of the Software. Any license notice or attribution required by the License must also include this Commons Cause License Condition notice.*

Effectively this change would allow those providing consulting/support to continue to offer services as described by the original question, without taking away from the original intent.

 7

**Page 2115**

(31 of 95), Page 31 of 95
2/4/2021

Case: 24-5538, 12/23/2024, DktEntry: 18.10, Page 31 of 95
Case 5:18-cv-07182-EJD Document 180-9 Filed 02/03/23 Page 146 of 80



 **ComodoMelih** mentioned this issue on Nov 14, 2020

### Stop calling it Open Source if you only provide Commons Clause license



ComodoSecurity/openedr#4

# EXHIBIT H

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


NEO4J, INC., a Delaware      ) CASE NO.
corporation, and NEO4J      ) 5:19-CV-06226-EJD
SWEDEN AB, a Swedish        )
corporation,                )
                            )
            Plaintiffs,     )
                            )
    vs.                     )
                            )
GRAPH FOUNDATION, INC., an  )
Ohio corporation,           )
GRAPHGRID, INC., an Ohio    )
corporation, and ATOMRAIN   )
INC., a Nevada corporation, )
                            )
            Defendants.     )


REMOTE VIA ZOOM


30(b)(6) DEPOSITION OF NEO4J INC


BY BRAD NUSSBAUM


_____

9:17 A.M. PDT

FRIDAY, OCTOBER 16, 2020

_____



By:  Denise Myers Byrd, CSR 8340, RPR


1

1        A.  No.  This case was the first time I found out

2   that this existed.

3        Q.  Are you sure about that?

4        A.  Yeah, I think it's pretty recent.

5        Q.  Do you remember the first time that you saw

6   these trademark guidelines?

7        A.  I think we looked at them when we got the case

8   filing that Neo sent us.  It's the first time that I

9   really remember seeing all this.

10       Q.  Okay.  You said remember, so before you said

11  you're sure -- well, let me strike that.

12          So you're sure you didn't see these trademark

13  guidelines prior to the filing of the lawsuit?

14       A.  Yeah, I don't remember these guidelines before.

15       Q.  I'm not asking whether you remember.  I'm

16  asking you whether you've seen them or not.

17          Your testimony is -- correct me if I'm wrong,

18  your testimony is that you had not seen these guidelines

19  prior to the filing of the lawsuit; is that correct?

20       A.  Okay, so I guess it's assumed that from what I

21  remember.  So, yeah, no, I have not seen these

22  guidelines before the start of the lawsuit.

23       Q.  Since the lawsuit was filed, have you reviewed

24  these guidelines?

25       A.  I think on the date that the lawsuit was filed

152

1    I saw them.

2        Q.  I'm asking did you actually read them after you

3    became aware of them?

4        A.  Yes, I believe, but, yeah, I read through --

5    not -- I don't think it was this version.  I don't know

6    if it was this version, but I read through a version.

7    It was a lot less than this when I first read it at the

8    time of our case, I think, but I don't know.

9        Q.  Okay.  So I'm just going to make this clear for

10   the record.  This was attached to the complaint as an

11   exhibit which was filed on October 1, 2019, so that's

12   when the complaint was filed and it would have been the

13   first time that you could have possibly reviewed this in

14   the complaint.  So you said in reviewing the case file

15   you saw these guidelines.  So there's a different

16   version of guidelines other than these that you

17   reviewed?  Is that your testimony?

18       A.  I think that whatever version was attached is

19   what we read.  So this doesn't -- yeah, it was a long

20   time ago when we read it.  I don't remember exactly what

21   was in here.

22       Q.  Do you have any reason to believe this wasn't

23   the version that you reviewed after the case was filed?

24       A.  Do I have any -- I'm sorry, I'm not sure what

25   the question is.

153

1    them what would be okay in terms of doing a fork?

2         A.  Unfortunately, because they caused the

3    confusion, they didn't have great answers.  They were

4    sort of the source of it all.

5         Q.  That wasn't my question.

6              My question was did you ever think to go to

7    Neo4j to ask how you can refer to Neo4j as a project?

8         A.  No.  No.  Because I think that they had moved

9    to a place -- I don't know.  Everything -- I don't think

10   there was really much to be -- to be done in terms of,

11   like, how do we talk about the project, Neo4j Community

12   versus Enterprise.  I don't know.  We didn't think -- we

13   didn't think about it.

14        Q.  And you never went to their website to see if

15   there was any guidance on how to refer to Neo4j as a

16   fork?

17        A.  No.  I don't see why that -- I don't see why

18   they would really have an answer on it.

19        Q.  Well, but you remember those trademark

20   guidelines you saw, right, that you looked at?

21        A.  Yeah.

22        Q.  So at least as of when the complaint was filed,

23   Neo4j provided guidance to people that fork Neo4j

24   software, correct?

25             MR. PERNICK:  Objection; misstates the

181

1    document.  The document speaks for itself.

2          THE WITNESS:  I think we said what we said

3    because it made sense of how to describe the project.

4    BY MR. RATINOFF:

5          Q.  But that's not the question.

6          So my question is, there is guidance that

7    you're now aware of on Neo4j's website explaining how to

8    refer to Neo4j as a fork, correct?

9          A.  So -- sorry.  Are you saying, like, as of today

10   there is guidance?

11         Q.  Yes.

12         A.  Yeah, as of today there is guidance on Neo4j's

13   website that does talk about, like, how to talk about a

14   fork of Neo4j, which is interesting that they put that

15   up there, I guess.

16         Q.  Okay.  And you also testified earlier that you

17   read those trademark guidelines around sometime after

18   the complaint was filed, right?

19         A.  When the case was filed, yeah.

20         Q.  And then you said you testified I believe you

21   went to Neo4j's website and actually found the

22   guidelines, right?

23         A.  Yes, uh-huh.

24         Q.  And you read the guidelines at that time?

25         A.  Yes.

182

1              COURT REPORTER'S CERTIFICATE

2

3              I, DENISE MYERS BYRD, CA CSR 8340, RPR, the officer

4    before whom the foregoing proceeding was conducted, do hereby

5    certify that the witness whose testimony appears in the

6    foregoing proceeding was duly sworn by me; that the testimony

7    of said witness was taken down by me in stenotype to the best

8    of my ability and thereafter transcribed under my supervision;

9    and that the foregoing pages, inclusive, constitute a true and

10   accurate transcription of the testimony of the witness.

11             Before completion of the deposition, review of the

12   transcript [X] was [ ] was not requested.  If requested, any

13   changes made by the deponent (and provided to the reporter)

14   during the period allowed are appended hereto.

15             I further certify that I am neither counsel for,

16   related to, nor employed by any of the parties to this action,

17   and further, that I am not a relative or employee of any

18   attorney or counsel employed by the parties thereof, nor

19   financially or otherwise interested in the outcome of said

20   action.  Signed this 9th day of October 2020.

21

22

23

                    Denise Myers Byrd

24                  CSR 8340, RPR, CLR 102409-02

25

                                                        253

# EXHIBIT I

John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff, Bar No. 197241
jratinoff@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 S First Street
San Jose, CA 95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:     (408) 286-9800
Facsimile:     (408) 998-4790

Attorneys for Plaintiffs
NEO4J, INC. and NEO4J SWEDEN AB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation; and NEO4J SWEDEN AB, a Swedish corporation,<br><br>Plaintiffs,<br><br>v.<br><br>GRAPH FOUNDATION, INC., an Ohio corporation, GRAPHGRID, INC., an Ohio corporation, and ATOMRAIN INC., a Nevada corporation,<br><br>Defendants. | CASE NO. 5:19-cv-06226-EJD<br><br>~~[PROPOSED]~~ **STIPULATED JUDGMENT AND PERMANENT INJUNCTION** |

Plaintiffs Neo4j, Inc. and Neo4j Sweden AB (collectively "Neo4j" or "Plaintiffs"), and Graph Foundation, Inc. ("GFI"), AtomRain and GraphGrid (GFI, AtomRain and GraphGrid collectively "Defendants" and with Plaintiffs collectively "Parties"), through their undersigned counsel, hereby stipulate and move this Court for entry of judgment and a permanent injunction ("Stipulated Judgment"):

Accordingly, IT IS HEREBY ADJUDGED AND ORDERED that:

1.      Neo4j and Defendants have entered into a Confidential Settlement Agreement to resolve this action and these parties have agreed on terms of this Stipulated Judgment.

842\3692662.2

~~[PROPOSED]~~ STIPULATED JUDGMENT AND PERMANENT INJUNCTION; CASE NO. 5:19-CV-06226-EJD

2.      On Plaintiffs' claims for (a) trademark infringement, 15 U.S.C. § 1114; (b) false designation of origin and false advertising, 15 U.S.C. § 1125(a); (c) federal unfair competition, 15 U.S.C. § 1125(a); (d) state unfair competition, Cal. Bus. Prof. Code §§ 17200 et seq.; (e) violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(b); and (f) breach of license agreement, Plaintiffs shall recover the injunctive and equitable relief against Defendants herein.

3.      Defendants affirm and acknowledge that Neo4j, Inc. is the rightful owner in the United States of all right, title and interest in and to U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j® Mark"). Defendants affirm and acknowledge that the Neo4j® Mark and its registration are valid and subsisting. Defendants agree and affirm that they will not at any time or for any reason challenge either the validity of the Neo4j® Mark, its registration or the ownership thereof, or assist any third party in challenging the validity of the Neo4j® Mark or the registration thereof.

4.      Defendants also declare and affirm that Neo4j, Inc. is the owner of U.S. Trademark Application No. 90056224 for the word mark "NEO4J." Defendants affirm and acknowledge that the word mark "NEO4J" subject to that application valid and subsisting. Furthermore, Defendants agree and affirm that they will abandon all efforts to oppose this application and will not challenge the validity or ownership thereof, or the validity or ownership of any resulting registration thereof, or assist any third party in opposing this application or challenging the validity or ownership of the mark subject to this application or the validity of any resulting registration thereof.

5.      Defendants further declare and affirm that Plaintiffs' inclusion of the Commons Clause in the Neo4j Sweden Software License, and example of which is attached hereto as Exhibit A, is valid; and Defendants' removal, replacement and/or omission thereof, and related copyright management information from source code to which Plaintiffs hold the copyright, was not authorized by Plaintiffs, allowed by the terms of the Neo4j Sweden Software License and violated the DMCA, 17 U.S.C § 1202(b)  ("DMCA Violation").

6.      Defendants agree and affirm that they will not assist or encourage John Mark Suhy, PureThink LLC and iGov Inc. or any third party in challenging the validity of the Neo4j Sweden

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3692662.2          - 2 -
[PROPOSED] STIPULATED JUDGMENT 5:19-CV-06226-EJD

Page 2126

Software License, or in the copying and distribution of source code with a DMCA Violation, including ONgDB version 3.4, ONgDB version 3.5, ONgDB version 3.6 and any subversions or derivatives thereof, or that has been subject to the Neo4j Sweden Software License, including Neo4j® Enterprise Edition 3.4, Neo4j® Enterprise Edition 3.5, or any subsequent versions, subversions, or derivatives thereof.

7. Defendants, as well as their shareholders, directors, officers, agents, employees, parents, subsidiaries, successors and assigns, and all those acting under their direction, control or on their behalf, as well as any entity that is spun-off from or formed by them, or acquires or merges with any Defendant are hereby permanently enjoined as follows:

(a) Defendants may not make further use of, or fork any source code first released under the Neo4j Sweden Software License, including Neo4j® Enterprise Edition 3.4, Neo4j® Enterprise Edition 3.5, or any subsequent subversions or derivatives thereof.

(b) Defendants shall not offer for sale, advertise, promote, represent or refer to ONgDB as follows:

 i. A free and open source drop-in replacement of Neo4j® Enterprise Edition distributions with the same version number;

 ii. A drop-in replacement for commercially licensed Neo4j® Enterprise Edition;

 iii. A drop-in replacement for Neo4j® Enterprise Edition under the GNU Affero General Public License, version 3 ("AGPLv3"), without limitations on causal cluster instances, cores, or production usage;

 iv. A fork of the Neo4j® graph database platform that adds enterprise code back into Neo4j® core; and

 v. One hundred percent (100%) free and open source version of Neo4j® Enterprise Edition version 3.4, Neo4j® Enterprise Edition version 3.5, or any version of Neo4j® Enterprise Edition released by Neo4j thereafter.

(c) Defendants shall not represent that Neo4j Sweden AB's inclusion of the Commons Clause to the license governing Neo4j® Enterprise Edition violated the terms of AGPLv3, or make similar statements.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3692662.2                                          - 3 -
[PROPOSED] STIPULATED JUDGMENT 5:19-CV-06226-EJD

Page 2127

1        (d)    Defendants shall not represent that the Free Software Foundation (FSF) or

2    that any government agency determined and/or confirmed that (a) the inclusion of the Commons

3    Clause to any license governing Neo4j® Enterprise Edition violated the terms of AGPLv3; and/or

4    (b) the Commons Clause can be removed from any software license governing Neo4j® Enterprise

5    Edition and/or ONgDB.

6        (e)    Defendants may only make further use of the following publicly available

7    open source code, subject to the terms of their respective open source licenses: (i) Neo4j

8    Community Edition Source Code under the GNU General Public License, version 3 ("GPL"); (ii)

9    Neo4j® Enterprise Edition version 3.2.14 source code released under the AGPLv3; (iii) Neo4j®

10   Enterprise Edition version 3.3.10 source code released under the AGPLv3; (iv) Neo4j® Enterprise

11   Edition version 3.4.0.RC02 source code released under the AGPLv3.  Nothing herein, however,

12   shall be construed as a license or otherwise entitle Defendants to use any source code, patches or

13   source code commits for Neo4j® Enterprise Edition version 3.3 or Neo4j® Enterprise Edition

14   version 3.4 that were first released under the Neo4j Sweden Software License.  Further, nothing

15   herein shall be construed as a license or otherwise entitle Defendants to use or fork, any of

16   Plaintiffs' source code that was first released as Neo4j® Enterprise Edition version 3.5 or otherwise

17   under the Neo4j Sweden Software License, including but not limited to, all beta releases, release

18   candidates, production releases, stable releases, and official releases, or any subsequent

19   subversions, patches or derivatives thereof.

20       (f)    Defendants may not make representations about the AGPLv3, and shall

21   instead refer to the Free Software Foundation's website for any interpretation of its meaning.

22       (g)    Defendants may continue to use the name "ONgDB" for its products so long

23   as (i) it states on any website and/or any public statement that the name stands for "Open Native

24   Graph DB" and removes all references to ONgDB in reference to Plaintiffs and the Neo4j® Mark,

25   other than what is allowed in Paragraph 7(r); and (ii) restarts the version number for ONgDB to

26   version 1.0.

27       (h)    Within three (3) days of entry of this Stipulated Judgment, Defendants shall

28   permanently remove, take down, destroy and prevent further access to all source code, object code,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • PALO ALTO

842\3692662.2                                    - 4 -
[PROPOSED] STIPULATED JUDGMENT 5:19-CV-06226-EJD

binaries, build files, build scripts and distributions from its repositories located at https://github.com/graphfoundation and https://hub.docker.com/r/graphfoundation that contains any Neo4j® Enterprise Edition source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License, including ONgDB version 3.4, ONgDB version 3.5, ONgDB version 3.6, and any subversions thereof.

(i)    Within seven (7) days of entry of this Stipulated Judgment, Defendants shall permanently remove, take down, destroy and prevent further access to any version of ONgDB (or any similar software created and/or maintained by Defendants that is within their possession, custody or control) that contains any Neo4j® Enterprise Edition source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License, including ONgDB version 3.4, ONgDB version 3.5, ONgDB version 3.6 and any subversions or derivatives thereof.  This removal and destruction shall be effectuated regardless of where that code resides, e.g., Defendants' websites (i.e., https://www.graphfoundation.org/projects/ongdb/, https://www.graphgrid.com/gdp/, https://www.graphgrid.com/ongdb/, and https://www.atomrain.com/products/, and any the Content Delivery Services invoked therein), AWS, AWS Gov Cloud, Docker, GitHub and/or any other source code repository or host service.

(j)    Within ten (10) days of entry of this Stipulated Judgment, Defendants shall identify in writing any known third-party commercial and/or governmental use of any version of ONgDB containing any Neo4j Enterprise Edition source code with a DMCA Violation, that was first released subject to the Neo4j Sweden Software License, or not otherwise permitted for use by Paragraph 7(e).

(k)    Defendants shall not offer any development, support, maintenance or hosting services for any version of ONgDB that includes any Neo4j® Enterprise Edition source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License, including ONgDB version 3.4, ONgDB version 3.5, ONgDB version 3.6 and any subversions or derivatives thereof.  Defendants can offer consulting services for commercial installations of Neo4j® software, but only where the third party receiving such services has a commercial license and has fully paid the commercial license fees to Plaintiffs. Should Defendants continue to offer

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3692662.2                                    - 5 -
[PROPOSED] STIPULATED JUDGMENT 5:19-CV-06226-EJD

Page 2129

ONgDB consulting services alongside consulting services with Neo4j® software as permitted herein, then any advertising of Defendant's services related to Neo4j® software is subject to adhering to Plaintiffs' then-current Trademark Policy.

(l)     Defendants will not make any negative or disparaging comments or representations about Plaintiffs, and their founders, officers, directors, investors, employees, customers, products, partnership practices, licensing practices or pricing.

(m)     Defendants will take down, delete and otherwise remove all webpages, posts on GitHub, discussion forums, social media posts and blog posts (and all links thereto) that they own, control, or have the ability and/or right to remove wherein they (i) reference Plaintiffs, their licensing policies and practices, (ii) make the same or similar statements referenced in Paragraph 7(b) above, or (iii) use the Neo4j® Mark. Defendants also shall not use the Neo4j® Mark as a hashtag on their respective websites or in any posts made on Twitter, Facebook or similar social media sites.

(n)     Defendants shall not make use of, or direct others to use, any of Plaintiffs' documents or materials, such as software documentation, guides, manuals, change logs, release notes and/or other publicly available technical information to create, maintain, market, use, and/or sell ONgDB (or the equivalent). Any links to Plaintiffs' documentation in Defendants' software shall be removed, or replaced with ONgDB documentation, bearing in mind that Plaintiffs' documentation is licensed under the Creative Commons Attribution-NonCommercial-ShareAlike 4.0 International (CC BY-NC-SA 4.0) and its use by third parties, such as Defendants and their customers, would be restricted to noncommercial purposes.

(o)     Defendants shall not make any statement and/or representations to any third party, affirmatively or in response to an inquiry, that state or imply that they can provide access to or can obtain any software containing any Neo4j® Enterprise Edition source code with a DMCA Violation, that is subject to the Neo4j Sweden Software License, or not otherwise permitted for use by Paragraph 7(e).

(p)     Defendants shall not have any expressed or implied license to use and shall not make any further use of any of Plaintiffs' trademarks, including U.S. Trademark Registration

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3692662.2                                - 6 -

[PROPOSED] STIPULATED JUDGMENT 5:19-CV-06226-EJD

Page 2130

No. 4775253 for "CYPHER," Trademark Registration No. 4784280 for "NEO4J," U.S. Trademark Registration No. 4824877 for "NEO TECHNOLOGY," U.S. Trademark Registration No. 5250026 for the Neo4j Logo, and U.S. Trademark Application No. 90056224 for "NEO4J" (collectively "Plaintiffs' US Marks"), other than what is permitted in Paragraph 7(r).

(q)     Defendants (and those acting in concert with them) will also permanently remove Plaintiffs' US Marks from their websites, marketing literature, social media sites, and any other public facing resource, including all software interfaces, including, but not limited to, GUIs and command lines.

(r)     If Defendants continue to attempt to fork any of Plaintiffs' source code subject to the terms herein, their description of that source code and/or software, if it includes the Neo4j® Mark, may only be made by the following statement: "ONgDB (or any equivalent) is an independent fork of [Neo4j® Enterprise Edition version 3.2.14, Neo4j® Enterprise Edition version 3.3.10, and/or Neo4j® Enterprise Edition Source Code version 3.4.0.RC02 licensed under the AGPLv3 and/or Community Edition licensed under the GPL].  ONgDB and [Defendants to insert name of specific Defendant(s)] is not affiliated in any way with Neo4j, Inc. or Neo4j Sweden AB. Neo4j, Inc. and Neo4j Sweden AB do not sponsor or endorse ONgDB and [Defendants to insert name of the specific Defendant(s)].  Neo4j Sweden AB is the owner of the copyrights for Neo4j® software and commercial use of any source code from Neo4j® Enterprise Edition beyond [Neo4j® Enterprise Edition version 3.2.14, Neo4j® Enterprise Edition version 3.3.10, and/or Neo4j® Enterprise Edition Source Code version 3.4.0.RC02] is prohibited and could subject the user to claims of copyright infringement."

8.     Neo4j, Inc. and AtomRain Inc. agree that the Neo4j Solution Partner Agreement between AtomRain Inc. and Neo4j, Inc. was previously terminated and no surviving terms remain in effect or enforceable other than any confidentiality obligations that remain.

9.     As between Plaintiffs, on one hand, and Defendants, on the other, each shall bear its own costs and attorneys' fees except as specified below in Paragraph 11.

10.     The Parties waive any rights to appeal this Stipulated Judgment.

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3692662.2                                                - 7 -
[PROPOSED] STIPULATED JUDGMENT 5:19-CV-06226-EJD

Page 2131

1    11.    This Stipulated Judgment adjudicates all claims in this litigation and is a final

2    judgment.    However, the Court expressly retains jurisdiction over any action to enforce this

3    Stipulated Judgment and the underlying Confidential Settlement Agreement concurrently entered

4    into by the Parties herewith.  In any such action, the prevailing party shall be entitled to reasonable

5    attorneys' fees and costs.  The Parties request that in any future action to enforce or resolve any

6    disputes regarding this Stipulated Judgment and the underlying Confidential Settlement

7    Agreement, the Court refer the matter to Hon. Edward Davila for all purposes provided he is

8    available.

9    Dated: February 15, 2021                         HOPKINS & CARLEY
                                                       A Law Corporation
10
                                                       By: /s/ Jeffrey M. Ratinoff
11                                                         John V. Picone III
                                                           Jeffrey M. Ratinoff
12                                                         Attorneys for Plaintiffs
                                                           NEO4J, INC. and NEO4J SWEDEN AB
13
      Dated: February 15, 2021                         BERGESON, LLP
14
                                                       By: /s/ John D. Pernick
15                                                         John D. Pernick
                                                           Attorneys for Defendant
16                                                         GRAPH FOUNDATION, INC.

17    Dated: February 15, 2021                         SKAGGS FAUCETTE LLP

18                                                     By: /s/ Jeffrey E. Faucette
19                                                         Jeffrey E. Faucette
                                                           Attorneys for Defendants GRAPHGRID,
20                                                         INC. and ATOMRAIN INC.

21
22                 PURSUANT TO STIPULATION, IT IS SO ORDERED AND ADJUDICATED.

23

24    Dated:    February 16   , 2021

25                                                     EDWARD J. DAVILA
                                                       United States District Court Judge
26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • PALO ALTO

842\3692662.2                                     - 8 -
[PROPOSED] STIPULATED JUDGMENT 5:19-CV-06226-EJD

# EXHIBIT A



neo4j / **neo4j**

<> Code | Issues 214 | Pull requests 2 | Actions | Projects | Wiki | Sec

3.4 ▾ | ...

neo4j / enterprise / neo4j enterprise / **LICENSE.txt**

**digitalstain** Updates enterprise LICENSE.txt and NOTICE.txt ... | **History**

3 contributors

Raw | Blame

693 lines (568 sloc) | 35.1 KB

```
NOTICE
This package contains software licensed under different
licenses, please refer to the NOTICE.txt file for further
information and LICENSES.txt for full license texts.

Neo4j Enterprise object code can be licensed independently from
the source under separate commercial terms. Email inquiries can be
directed to: licensing@neo4j.com. More information is also
available at:https://neo4j.com/licensing/

The software ("Software") is developed and owned by Neo4j Sweden AB
(referred to in this notice as "Neo4j") and is subject to the terms
of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3, with the Commons Clause as follows:

                    GNU AFFERO GENERAL PUBLIC LICENSE
                       Version 3, 19 November 2007

 Copyright (C) 2007 Free Software Foundation, Inc. <http://fsf.org/>
 Everyone is permitted to copy and distribute verbatim copies
 of this license document, but changing it is not allowed.

                            Preamble

  The GNU Affero General Public License is a free, copyleft license
for software and other kinds of works, specifically designed to ensure
```

(50 of 95), Page 50 of 95     Case: 24-5538, 12/23/2024, DktEntry: 18.10, Page 50 of 95
2/9/2021     Case 5:19-cv-06226-EJD  Document 109-4  Filed 04/21/2021  Page 10 of 240

cooperation with the community in the case of network server software.

  The licenses for most software and other practical works are
designed to take away your freedom to share and change the works.  By
contrast, our General Public Licenses are intended to guarantee your
freedom to share and change all versions of a program--to make sure it
remains free software for all its users.

  When we speak of free software, we are referring to freedom, not
price.  Our General Public Licenses are designed to make sure that you
have the freedom to distribute copies of free software (and charge for
them if you wish), that you receive source code or can get it if you
want it, that you can change the software or use pieces of it in new
free programs, and that you know you can do these things.

  Developers that use our General Public Licenses protect your rights
with two steps: (1) assert copyright on the software, and (2) offer
you this License which gives you legal permission to copy, distribute
and/or modify the software.

  A secondary benefit of defending all users' freedom is that
improvements made in alternate versions of the program, if they
receive widespread use, become available for other developers to
incorporate.  Many developers of free software are heartened and
encouraged by the resulting cooperation.  However, in the case of
software used on network servers, this result may fail to come about.
The GNU General Public License permits making a modified version and
letting the public access it on a server without ever releasing its
source code to the public.

  The GNU Affero General Public License is designed specifically to
ensure that, in such cases, the modified source code becomes available
to the community.  It requires the operator of a network server to
provide the source code of the modified version running there to the
users of that server.  Therefore, public use of a modified version, on
a publicly accessible server, gives the public access to the source
code of the modified version.

  An older license, called the Affero General Public License and
published by Affero, was designed to accomplish similar goals.  This is
a different license, not a version of the Affero GPL, but Affero has
released a new version of the Affero GPL which permits relicensing under
this license.

  The precise terms and conditions for copying, distribution and
modification follow.

                     TERMS AND CONDITIONS

```
76
77      0. Definitions.
78
79      "This License" refers to version 3 of the GNU Affero General Public
80   License.
81
82      "Copyright" also means copyright-like laws that apply to other kinds
83   of works, such as semiconductor masks.
84
85      "The Program" refers to any copyrightable work licensed under this
86   License.  Each licensee is addressed as "you".  "Licensees" and
87   "recipients" may be individuals or organizations.
88
89      To "modify" a work means to copy from or adapt all or part of the work
90   in a fashion requiring copyright permission, other than the making of an
91   exact copy.  The resulting work is called a "modified version" of the
92   earlier work or a work "based on" the earlier work.
93
94      A "covered work" means either the unmodified Program or a work based
95   on the Program.
96
97      To "propagate" a work means to do anything with it that, without
98   permission, would make you directly or secondarily liable for
99   infringement under applicable copyright law, except executing it on a
100  computer or modifying a private copy.  Propagation includes copying,
101  distribution (with or without modification), making available to the
102  public, and in some countries other activities as well.
103
104     To "convey" a work means any kind of propagation that enables other
105  parties to make or receive copies.  Mere interaction with a user through
106  a computer network, with no transfer of a copy, is not conveying.
107
108     An interactive user interface displays "Appropriate Legal Notices"
109  to the extent that it includes a convenient and prominently visible
110  feature that (1) displays an appropriate copyright notice, and (2)
111  tells the user that there is no warranty for the work (except to the
112  extent that warranties are provided), that licensees may convey the
113  work under this License, and how to view a copy of this License.  If
114  the interface presents a list of user commands or options, such as a
115  menu, a prominent item in the list meets this criterion.
116
117     1. Source Code.
118
119     The "source code" for a work means the preferred form of the work
120  for making modifications to it.  "Object code" means any non-source
121  form of a work.
122
123     A "Standard Interface" means an interface that either is an official
```

124    standard defined by a recognized standards body, or, in the case of
125    interfaces specified for a particular programming language, one that
126    is widely used among developers working in that language.
127
128      The "System Libraries" of an executable work include anything, other
129    than the work as a whole, that (a) is included in the normal form of
130    packaging a Major Component, but which is not part of that Major
131    Component, and (b) serves only to enable use of the work with that
132    Major Component, or to implement a Standard Interface for which an
133    implementation is available to the public in source code form.  A
134    "Major Component", in this context, means a major essential component
135    (kernel, window system, and so on) of the specific operating system
136    (if any) on which the executable work runs, or a compiler used to
137    produce the work, or an object code interpreter used to run it.
138
139      The "Corresponding Source" for a work in object code form means all
140    the source code needed to generate, install, and (for an executable
141    work) run the object code and to modify the work, including scripts to
142    control those activities.  However, it does not include the work's
143    System Libraries, or general-purpose tools or generally available free
144    programs which are used unmodified in performing those activities but
145    which are not part of the work.  For example, Corresponding Source
146    includes interface definition files associated with source files for
147    the work, and the source code for shared libraries and dynamically
148    linked subprograms that the work is specifically designed to require,
149    such as by intimate data communication or control flow between those
150    subprograms and other parts of the work.
151
152      The Corresponding Source need not include anything that users
153    can regenerate automatically from other parts of the Corresponding
154    Source.
155
156      The Corresponding Source for a work in source code form is that
157    same work.
158
159      2. Basic Permissions.
160
161      All rights granted under this License are granted for the term of
162    copyright on the Program, and are irrevocable provided the stated
163    conditions are met.  This License explicitly affirms your unlimited
164    permission to run the unmodified Program.  The output from running a
165    covered work is covered by this License only if the output, given its
166    content, constitutes a covered work.  This License acknowledges your
167    rights of fair use or other equivalent, as provided by copyright law.
168
169      You may make, run and propagate covered works that you do not
170    convey, without conditions so long as your license otherwise remains
171    in force.  You may convey covered works to others for the sole purpose

2/9/2021    Case 5:19-cv-00626-EJD   Document 109-4   Filed 02/16/21   Page 170 of 240

172  of having them make modifications exclusively for you, or provide you
173  with facilities for running those works, provided that you comply with
174  the terms of this License in conveying all material for which you do
175  not control copyright.  Those thus making or running the covered works
176  for you must do so exclusively on your behalf, under your direction
177  and control, on terms that prohibit them from making any copies of
178  your copyrighted material outside their relationship with you.
179
180    Conveying under any other circumstances is permitted solely under
181  the conditions stated below.  Sublicensing is not allowed; section 10
182  makes it unnecessary.
183
184    3. Protecting Users' Legal Rights From Anti-Circumvention Law.
185
186    No covered work shall be deemed part of an effective technological
187  measure under any applicable law fulfilling obligations under article
188  11 of the WIPO copyright treaty adopted on 20 December 1996, or
189  similar laws prohibiting or restricting circumvention of such
190  measures.
191
192    When you convey a covered work, you waive any legal power to forbid
193  circumvention of technological measures to the extent such circumvention
194  is effected by exercising rights under this License with respect to
195  the covered work, and you disclaim any intention to limit operation or
196  modification of the work as a means of enforcing, against the work's
197  users, your or third parties' legal rights to forbid circumvention of
198  technological measures.
199
200    4. Conveying Verbatim Copies.
201
202    You may convey verbatim copies of the Program's source code as you
203  receive it, in any medium, provided that you conspicuously and
204  appropriately publish on each copy an appropriate copyright notice;
205  keep intact all notices stating that this License and any
206  non-permissive terms added in accord with section 7 apply to the code;
207  keep intact all notices of the absence of any warranty; and give all
208  recipients a copy of this License along with the Program.
209
210    You may charge any price or no price for each copy that you convey,
211  and you may offer support or warranty protection for a fee.
212
213    5. Conveying Modified Source Versions.
214
215    You may convey a work based on the Program, or the modifications to
216  produce it from the Program, in the form of source code under the
217  terms of section 4, provided that you also meet all of these conditions:
218
219      a) The work must carry prominent notices stating that you modified

```
220       it, and giving a relevant date.
221
222       b) The work must carry prominent notices stating that it is
223       released under this License and any conditions added under section
224       7.  This requirement modifies the requirement in section 4 to
225       "keep intact all notices".
226
227       c) You must license the entire work, as a whole, under this
228       License to anyone who comes into possession of a copy.  This
229       License will therefore apply, along with any applicable section 7
230       additional terms, to the whole of the work, and all its parts,
231       regardless of how they are packaged.  This License gives no
232       permission to license the work in any other way, but it does not
233       invalidate such permission if you have separately received it.
234
235       d) If the work has interactive user interfaces, each must display
236       Appropriate Legal Notices; however, if the Program has interactive
237       interfaces that do not display Appropriate Legal Notices, your
238       work need not make them do so.
239
240     A compilation of a covered work with other separate and independent
241   works, which are not by their nature extensions of the covered work,
242   and which are not combined with it such as to form a larger program,
243   in or on a volume of a storage or distribution medium, is called an
244   "aggregate" if the compilation and its resulting copyright are not
245   used to limit the access or legal rights of the compilation's users
246   beyond what the individual works permit.  Inclusion of a covered work
247   in an aggregate does not cause this License to apply to the other
248   parts of the aggregate.
249
250     6. Conveying Non-Source Forms.
251
252     You may convey a covered work in object code form under the terms
253   of sections 4 and 5, provided that you also convey the
254   machine-readable Corresponding Source under the terms of this License,
255   in one of these ways:
256
257       a) Convey the object code in, or embodied in, a physical product
258       (including a physical distribution medium), accompanied by the
259       Corresponding Source fixed on a durable physical medium
260       customarily used for software interchange.
261
262       b) Convey the object code in, or embodied in, a physical product
263       (including a physical distribution medium), accompanied by a
264       written offer, valid for at least three years and valid for as
265       long as you offer spare parts or customer support for that product
266       model, to give anyone who possesses the object code either (1) a
267       copy of the Corresponding Source for all the software in the
```

```
268    product that is covered by this License, on a durable physical
269    medium customarily used for software interchange, for a price no
270    more than your reasonable cost of physically performing this
271    conveying of source, or (2) access to copy the
272    Corresponding Source from a network server at no charge.
273
274    c) Convey individual copies of the object code with a copy of the
275    written offer to provide the Corresponding Source.  This
276    alternative is allowed only occasionally and noncommercially, and
277    only if you received the object code with such an offer, in accord
278    with subsection 6b.
279
280    d) Convey the object code by offering access from a designated
281    place (gratis or for a charge), and offer equivalent access to the
282    Corresponding Source in the same way through the same place at no
283    further charge.  You need not require recipients to copy the
284    Corresponding Source along with the object code.  If the place to
285    copy the object code is a network server, the Corresponding Source
286    may be on a different server (operated by you or a third party)
287    that supports equivalent copying facilities, provided you maintain
288    clear directions next to the object code saying where to find the
289    Corresponding Source.  Regardless of what server hosts the
290    Corresponding Source, you remain obligated to ensure that it is
291    available for as long as needed to satisfy these requirements.
292
293    e) Convey the object code using peer-to-peer transmission, provided
294    you inform other peers where the object code and Corresponding
295    Source of the work are being offered to the general public at no
296    charge under subsection 6d.
297
298   A separable portion of the object code, whose source code is excluded
299  from the Corresponding Source as a System Library, need not be
300  included in conveying the object code work.
301
302   A "User Product" is either (1) a "consumer product", which means any
303  tangible personal property which is normally used for personal, family,
304  or household purposes, or (2) anything designed or sold for incorporation
305  into a dwelling.  In determining whether a product is a consumer product,
306  doubtful cases shall be resolved in favor of coverage.  For a particular
307  product received by a particular user, "normally used" refers to a
308  typical or common use of that class of product, regardless of the status
309  of the particular user or of the way in which the particular user
310  actually uses, or expects or is expected to use, the product.  A product
311  is a consumer product regardless of whether the product has substantial
312  commercial, industrial or non-consumer uses, unless such uses represent
313  the only significant mode of use of the product.
314
315   "Installation Information" for a User Product means any methods,
```

316    procedures, authorization keys, or other information required to install
317    and execute modified versions of a covered work in that User Product from
318    a modified version of its Corresponding Source.  The information must
319    suffice to ensure that the continued functioning of the modified object
320    code is in no case prevented or interfered with solely because
321    modification has been made.
322
323      If you convey an object code work under this section in, or with, or
324    specifically for use in, a User Product, and the conveying occurs as
325    part of a transaction in which the right of possession and use of the
326    User Product is transferred to the recipient in perpetuity or for a
327    fixed term (regardless of how the transaction is characterized), the
328    Corresponding Source conveyed under this section must be accompanied
329    by the Installation Information.  But this requirement does not apply
330    if neither you nor any third party retains the ability to install
331    modified object code on the User Product (for example, the work has
332    been installed in ROM).
333
334      The requirement to provide Installation Information does not include a
335    requirement to continue to provide support service, warranty, or updates
336    for a work that has been modified or installed by the recipient, or for
337    the User Product in which it has been modified or installed.  Access to a
338    network may be denied when the modification itself materially and
339    adversely affects the operation of the network or violates the rules and
340    protocols for communication across the network.
341
342      Corresponding Source conveyed, and Installation Information provided,
343    in accord with this section must be in a format that is publicly
344    documented (and with an implementation available to the public in
345    source code form), and must require no special password or key for
346    unpacking, reading or copying.
347
348      7. Additional Terms.
349
350      "Additional permissions" are terms that supplement the terms of this
351    License by making exceptions from one or more of its conditions.
352    Additional permissions that are applicable to the entire Program shall
353    be treated as though they were included in this License, to the extent
354    that they are valid under applicable law.  If additional permissions
355    apply only to part of the Program, that part may be used separately
356    under those permissions, but the entire Program remains governed by
357    this License without regard to the additional permissions.
358
359      When you convey a copy of a covered work, you may at your option
360    remove any additional permissions from that copy, or from any part of
361    it.  (Additional permissions may be written to require their own
362    removal in certain cases when you modify the work.)  You may place
363    additional permissions on material, added by you to a covered work,

for which you have or can give appropriate copyright permission.

  Notwithstanding any other provision of this License, for material you
add to a covered work, you may (if authorized by the copyright holders of
that material) supplement the terms of this License with terms:

    a) Disclaiming warranty or limiting liability differently from the
    terms of sections 15 and 16 of this License; or

    b) Requiring preservation of specified reasonable legal notices or
    author attributions in that material or in the Appropriate Legal
    Notices displayed by works containing it; or

    c) Prohibiting misrepresentation of the origin of that material, or
    requiring that modified versions of such material be marked in
    reasonable ways as different from the original version; or

    d) Limiting the use for publicity purposes of names of licensors or
    authors of the material; or

    e) Declining to grant rights under trademark law for use of some
    trade names, trademarks, or service marks; or

    f) Requiring indemnification of licensors and authors of that
    material by anyone who conveys the material (or modified versions of
    it) with contractual assumptions of liability to the recipient, for
    any liability that these contractual assumptions directly impose on
    those licensors and authors.

  All other non-permissive additional terms are considered "further
restrictions" within the meaning of section 10.  If the Program as you
received it, or any part of it, contains a notice stating that it is
governed by this License along with a term that is a further restriction,
you may remove that term.  If a license document contains a further
restriction but permits relicensing or conveying under this License, you
may add to a covered work material governed by the terms of that license
document, provided that the further restriction does not survive such
relicensing or conveying.

  If you add terms to a covered work in accord with this section, you
must place, in the relevant source files, a statement of the
additional terms that apply to those files, or a notice indicating
where to find the applicable terms.

  Additional terms, permissive or non-permissive, may be stated in the
form of a separately written license, or stated as exceptions;
the above requirements apply either way.

8. Termination.

  You may not propagate or modify a covered work except as expressly
provided under this License.  Any attempt otherwise to propagate or
modify it is void, and will automatically terminate your rights under
this License (including any patent licenses granted under the third
paragraph of section 11).

  However, if you cease all violation of this License, then your
license from a particular copyright holder is reinstated (a)
provisionally, unless and until the copyright holder explicitly and
finally terminates your license, and (b) permanently, if the copyright
holder fails to notify you of the violation by some reasonable means
prior to 60 days after the cessation.

  Moreover, your license from a particular copyright holder is
reinstated permanently if the copyright holder notifies you of the
violation by some reasonable means, this is the first time you have
received notice of violation of this License (for any work) from that
copyright holder, and you cure the violation prior to 30 days after
your receipt of the notice.

  Termination of your rights under this section does not terminate the
licenses of parties who have received copies or rights from you under
this License.  If your rights have been terminated and not permanently
reinstated, you do not qualify to receive new licenses for the same
material under section 10.

  9. Acceptance Not Required for Having Copies.

  You are not required to accept this License in order to receive or
run a copy of the Program.  Ancillary propagation of a covered work
occurring solely as a consequence of using peer-to-peer transmission
to receive a copy likewise does not require acceptance.  However,
nothing other than this License grants you permission to propagate or
modify any covered work.  These actions infringe copyright if you do
not accept this License.  Therefore, by modifying or propagating a
covered work, you indicate your acceptance of this License to do so.

  10. Automatic Licensing of Downstream Recipients.

  Each time you convey a covered work, the recipient automatically
receives a license from the original licensors, to run, modify and
propagate that work, subject to this License.  You are not responsible
for enforcing compliance by third parties with this License.

  An "entity transaction" is a transaction transferring control of an
organization, or substantially all assets of one, or subdividing an

```
460    organization, or merging organizations.  If propagation of a covered
461    work results from an entity transaction, each party to that
462    transaction who receives a copy of the work also receives whatever
463    licenses to the work the party's predecessor in interest had or could
464    give under the previous paragraph, plus a right to possession of the
465    Corresponding Source of the work from the predecessor in interest, if
466    the predecessor has it or can get it with reasonable efforts.
467
468      You may not impose any further restrictions on the exercise of the
469    rights granted or affirmed under this License.  For example, you may
470    not impose a license fee, royalty, or other charge for exercise of
471    rights granted under this License, and you may not initiate litigation
472    (including a cross-claim or counterclaim in a lawsuit) alleging that
473    any patent claim is infringed by making, using, selling, offering for
474    sale, or importing the Program or any portion of it.
475
476      11. Patents.
477
478      A "contributor" is a copyright holder who authorizes use under this
479    License of the Program or a work on which the Program is based.  The
480    work thus licensed is called the contributor's "contributor version".
481
482      A contributor's "essential patent claims" are all patent claims
483    owned or controlled by the contributor, whether already acquired or
484    hereafter acquired, that would be infringed by some manner, permitted
485    by this License, of making, using, or selling its contributor version,
486    but do not include claims that would be infringed only as a
487    consequence of further modification of the contributor version.  For
488    purposes of this definition, "control" includes the right to grant
489    patent sublicenses in a manner consistent with the requirements of
490    this License.
491
492      Each contributor grants you a non-exclusive, worldwide, royalty-free
493    patent license under the contributor's essential patent claims, to
494    make, use, sell, offer for sale, import and otherwise run, modify and
495    propagate the contents of its contributor version.
496
497      In the following three paragraphs, a "patent license" is any express
498    agreement or commitment, however denominated, not to enforce a patent
499    (such as an express permission to practice a patent or covenant not to
500    sue for patent infringement).  To "grant" such a patent license to a
501    party means to make such an agreement or commitment not to enforce a
502    patent against the party.
503
504      If you convey a covered work, knowingly relying on a patent license,
505    and the Corresponding Source of the work is not available for anyone
506    to copy, free of charge and under the terms of this License, through a
507    publicly available network server or other readily accessible means,
```

```
508    then you must either (1) cause the Corresponding Source to be so
509    available, or (2) arrange to deprive yourself of the benefit of the
510    patent license for this particular work, or (3) arrange, in a manner
511    consistent with the requirements of this License, to extend the patent
512    license to downstream recipients.  "Knowingly relying" means you have
513    actual knowledge that, but for the patent license, your conveying the
514    covered work in a country, or your recipient's use of the covered work
515    in a country, would infringe one or more identifiable patents in that
516    country that you have reason to believe are valid.
517
518      If, pursuant to or in connection with a single transaction or
519    arrangement, you convey, or propagate by procuring conveyance of, a
520    covered work, and grant a patent license to some of the parties
521    receiving the covered work authorizing them to use, propagate, modify
522    or convey a specific copy of the covered work, then the patent license
523    you grant is automatically extended to all recipients of the covered
524    work and works based on it.
525
526      A patent license is "discriminatory" if it does not include within
527    the scope of its coverage, prohibits the exercise of, or is
528    conditioned on the non-exercise of one or more of the rights that are
529    specifically granted under this License.  You may not convey a covered
530    work if you are a party to an arrangement with a third party that is
531    in the business of distributing software, under which you make payment
532    to the third party based on the extent of your activity of conveying
533    the work, and under which the third party grants, to any of the
534    parties who would receive the covered work from you, a discriminatory
535    patent license (a) in connection with copies of the covered work
536    conveyed by you (or copies made from those copies), or (b) primarily
537    for and in connection with specific products or compilations that
538    contain the covered work, unless you entered into that arrangement,
539    or that patent license was granted, prior to 28 March 2007.
540
541      Nothing in this License shall be construed as excluding or limiting
542    any implied license or other defenses to infringement that may
543    otherwise be available to you under applicable patent law.
544
545      12. No Surrender of Others' Freedom.
546
547      If conditions are imposed on you (whether by court order, agreement or
548    otherwise) that contradict the conditions of this License, they do not
549    excuse you from the conditions of this License.  If you cannot convey a
550    covered work so as to satisfy simultaneously your obligations under this
551    License and any other pertinent obligations, then as a consequence you may
552    not convey it at all.  For example, if you agree to terms that obligate you
553    to collect a royalty for further conveying from those to whom you convey
554    the Program, the only way you could satisfy both those terms and this
555    License would be to refrain entirely from conveying the Program.
```

```
556
557      13. Remote Network Interaction; Use with the GNU General Public License.
558
559      Notwithstanding any other provision of this License, if you modify the
560    Program, your modified version must prominently offer all users
561    interacting with it remotely through a computer network (if your version
562    supports such interaction) an opportunity to receive the Corresponding
563    Source of your version by providing access to the Corresponding Source
564    from a network server at no charge, through some standard or customary
565    means of facilitating copying of software.  This Corresponding Source
566    shall include the Corresponding Source for any work covered by version 3
567    of the GNU General Public License that is incorporated pursuant to the
568    following paragraph.
569
570      Notwithstanding any other provision of this License, you have permission
571    to link or combine any covered work with a work licensed under version 3
572    of the GNU General Public License into a single combined work, and to
573    convey the resulting work.  The terms of this License will continue to
574    apply to the part which is the covered work, but the work with which it is
575    combined will remain governed by version 3 of the GNU General Public
576    License.
577
578      14. Revised Versions of this License.
579
580      The Free Software Foundation may publish revised and/or new versions of
581    the GNU Affero General Public License from time to time.  Such new
582    versions will be similar in spirit to the present version, but may differ
583    in detail to address new problems or concerns.
584
585      Each version is given a distinguishing version number.  If the
586    Program specifies that a certain numbered version of the GNU Affero
587    General Public License "or any later version" applies to it, you have
588    the option of following the terms and conditions either of that
589    numbered version or of any later version published by the Free
590    Software Foundation.  If the Program does not specify a version number
591    of the GNU Affero General Public License, you may choose any version
592    ever published by the Free Software Foundation.
593
594      If the Program specifies that a proxy can decide which future
595    versions of the GNU Affero General Public License can be used, that
596    proxy's public statement of acceptance of a version permanently
597    authorizes you to choose that version for the Program.
598
599      Later license versions may give you additional or different
600    permissions.  However, no additional obligations are imposed on any
601    author or copyright holder as a result of your choosing to follow a
602    later version.
603
```

```
604       15. Disclaimer of Warranty.
605
606         THERE IS NO WARRANTY FOR THE PROGRAM, TO THE EXTENT PERMITTED BY
607       APPLICABLE LAW.  EXCEPT WHEN OTHERWISE STATED IN WRITING THE COPYRIGHT
608       HOLDERS AND/OR OTHER PARTIES PROVIDE THE PROGRAM "AS IS" WITHOUT WARRANTY
609       OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO,
610       THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR
611       PURPOSE.  THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE PROGRAM
612       IS WITH YOU.  SHOULD THE PROGRAM PROVE DEFECTIVE, YOU ASSUME THE COST OF
613       ALL NECESSARY SERVICING, REPAIR OR CORRECTION.
614
615       16. Limitation of Liability.
616
617         IN NO EVENT UNLESS REQUIRED BY APPLICABLE LAW OR AGREED TO IN WRITING
618       WILL ANY COPYRIGHT HOLDER, OR ANY OTHER PARTY WHO MODIFIES AND/OR CONVEYS
619       THE PROGRAM AS PERMITTED ABOVE, BE LIABLE TO YOU FOR DAMAGES, INCLUDING ANY
620       GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE
621       USE OR INABILITY TO USE THE PROGRAM (INCLUDING BUT NOT LIMITED TO LOSS OF
622       DATA OR DATA BEING RENDERED INACCURATE OR LOSSES SUSTAINED BY YOU OR THIRD
623       PARTIES OR A FAILURE OF THE PROGRAM TO OPERATE WITH ANY OTHER PROGRAMS),
624       EVEN IF SUCH HOLDER OR OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF
625       SUCH DAMAGES.
626
627       17. Interpretation of Sections 15 and 16.
628
629         If the disclaimer of warranty and limitation of liability provided
630       above cannot be given local legal effect according to their terms,
631       reviewing courts shall apply local law that most closely approximates
632       an absolute waiver of all civil liability in connection with the
633       Program, unless a warranty or assumption of liability accompanies a
634       copy of the Program in return for a fee.
635
636                        END OF TERMS AND CONDITIONS
637
638               How to Apply These Terms to Your New Programs
639
640         If you develop a new program, and you want it to be of the greatest
641       possible use to the public, the best way to achieve this is to make it
642       free software which everyone can redistribute and change under these terms.
643
644         To do so, attach the following notices to the program.  It is safest
645       to attach them to the start of each source file to most effectively
646       state the exclusion of warranty; and each file should have at least
647       the "copyright" line and a pointer to where the full notice is found.
648
649           <one line to give the program's name and a brief idea of what it does.>
650           Copyright (C) <year>  <name of author>
651
```

```
652        This program is free software: you can redistribute it and/or modify
653        it under the terms of the GNU Affero General Public License as
654        published by the Free Software Foundation, either version 3 of the
655        License, or (at your option) any later version.
656
657        This program is distributed in the hope that it will be useful,
658        but WITHOUT ANY WARRANTY; without even the implied warranty of
659        MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE.  See the
660        GNU Affero General Public License for more details.
661
662        You should have received a copy of the GNU Affero General Public License
663        along with this program.  If not, see <http://www.gnu.org/licenses/>.
664
665    Also add information on how to contact you by electronic and paper mail.
666
667      If your software can interact with users remotely through a computer
668    network, you should also make sure that it provides a way for users to
669    get its source.  For example, if your program is a web application, its
670    interface could display a "Source" link that leads users to an archive
671    of the code.  There are many ways you could offer source, and different
672    solutions will be better for different programs; see section 13 for the
673    specific requirements.
674
675      You should also get your employer (if you work as a programmer) or school,
676    if any, to sign a "copyright disclaimer" for the program, if necessary.
677    For more information on this, and how to apply and follow the GNU AGPL, see
678    <http://www.gnu.org/licenses/>.
679
680
681    "Commons Clause" License Condition
682
683    The Software is provided to you by the Licensor under the License, as
684    defined below, subject to the following condition. Without limiting
685    other conditions in the License, the grant of rights under the License
686    will not include, and the License does not grant to you, the right to
687    Sell the Software.  For purposes of the foregoing, "Sell" means
688    practicing any or all of the rights granted to you under the License
689    to provide to third parties, for a fee or other consideration,
690    a product or service that consists, entirely or substantially,
691    of the Software or the functionality of the Software. Any license
692    notice or attribution required by the License must also include
693    this Commons Cause License Condition notice.
```

**03-09-2021 – DEF REPLY TO PLAINT OPP TO DEF CROSS- MOTION FOR SUM JUDGMENT.pdf**

Filed 03/09/2021

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

(Pacer Doc: #112)

Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney at Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
adron@adronlaw.com

Attorneys for defendants:
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

<div align="center">

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

</div>

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation, Plaintiffs, v. PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual, Defendants. | CASE NO. 5:18-CV-7182 EJD **DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** Date: April 15, 2021 Time: 9:00 a.m. Dept. Courtroom 4, 5th floor Judge: Hon. Edward J. Davila |
| AND RELATED COUNTERCLAIMS | |

## I.    Introduction

Neo4J Inc. "USA" has filed a 24 page reply and a 1 page (a paragraph) opposition to Purethink, LLC, Igov, Inc. and John Mark Suhys ("Defendants")' motion for summary judgment. At the same time, they have settled out with the GFI defendants. They are no longer part of this motion. USA presses it registration

to support standing and ownership. But ownership is a separate and distinct issue from registration. As USA does not own the Neo4J trademark, they cannot proceed with the Trademark and False Designation of Origin claims. While USA does not need to own the trademark for false advertising standing, they lack the materiality element for the claim. This is fatal to the claim. As they cannot establish a necessary element for the claim, the Lanham Act 43(a) and UCL claims should be dismissed.

## II.   Trademark and False Advertising claims

Summary judgment should be granted in defendants favor on the First and Second Causes of Action for Trademark Infringement and False Designation of Origin claims.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party can satisfy this burden by: (1) presenting evidence that negates an essential element of the non-moving party's case or (2) demonstrating that the non-moving party failed to establish an essential element of the non-moving party's case on which the non-moving party bears the burden of proving at trial. *Id.* at 322–23, 106 S.Ct. 2548. Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the non-moving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

Defendants moved for summary judgment on the trademark infringement and false designation of origin claims because USA does not own the Neo4J mark. Ownership of the mark is a required element of USA's trademark infringement claim. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir.1987);

*Rearden LLC v. Rearden Commerce, Inc.* (9th Cir. 2012) 683 F.3d 1190, 1202–1203.

Dahon North America, Inc. v. Hon (C.D. Cal., Apr. 24, 2012, No. 2:11-CV-05835-ODW) 2012 WL 1413681 (A party lacks standing to sue for trademark infringement if it does not own the trademark at issue).

While USA relies on its registration, "To prevail in the infringement action, [Plaintiff] had to establish his exclusive right to use the trademark **independent** of the registration." [Emphasis added] [citations omitted]. *Wrist-Rocket Mfg. Co., Inc. v. Saunders Archery Co.* (8th Cir. 1975) 516 F.2d 846, 850.[1] "[T]he Lanham Act creates at least two adjudicative mechanisms to help protect marks. First, a trademark owner can register its mark with the PTO. Second, a mark owner can bring a suit for infringement in federal court. *B & B Hardware, Inc. v. Hargis Industries, Inc.* (2015) 575 U.S. 138, 142. The anomaly in this case is USA does not own the trademark yet owns the registration. This motion does not deal with registration[2]. This motion addresses the second adjudicative mechanism: the right of a mark owner to bring a suit.

USA's reliance on its registration to prove ownership (D Fact 125) fails. Registration does not confer ownership. *Allard Enterprises v. Advanced Program*, 146 F.3d 350, 356 (6th Cir. 1998) ("One of the bedrock principles of trademark law is that trademark or "service mark" ownership is not acquired by federal or state

---

[1] The Wrist-Rocket test for determination of ownership of a mark is not applicable as there is a license agreement establishing Sweden's ownership of the mark. The test is applied in absence of an agreement. See *Sengoku Works Ltd. v RMC International, Ltd.* 96 F.3d 1217 (9th Cir. 1996) (applying Wrist-Rocket test).
[2] Given this Courts recent Order Granting Motion to Strike, Dkt. 110, defendant's affirmative defenses for Cancellation of Trademark Procured by Fraud and Naked License Abandonment of Trademark are withdrawn. D Facts 130, 131 and 132 are withdrawn. Those issues were not raised as part of defendants' motion for summary judgment.

registration.").

The undisputed fact shows USA does not own the NEO4J mark. (D Facts 125). Since USA does not own the Neo4J trademark, it cannot bring a trademark infringement claim or False Designation of Origin claim. *Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F.Supp.2d 890, 897 (C.D. Cal. 2014) ("A claim for false designation of origin under 15 U.S.C. § 1125 requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. § 1114.")

USA's non-exclusive license to the Neo4J mark (D fact 126), does not support standing to bring an infringement action. *Quabang Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 159-60 (1st Cir. 1977); *Int'l Soc'y for Krishna Consciousness of Western Pennsylvania v. Stadium Authority*, 479 F. Supp. 792, 797 (W.D. Pa. 1979)).

As USA does not own the mark, they instead try to confuse and misdirect the Court to affirmative defenses, its registration, and its relationship with NEO4J SWEDEN AB "Sweden". The ownership of the mark is jurisdictional and an element of USA's claim, not defendant's dismissed affirmative defense. Defendants are demanding USA prove the ownership element of its claim. USA has the burden to prove they own the mark for an element of the claim and for this court's jurisdiction. It is undisputed that they cannot establish ownership. Registration is a procedural issue and confers only a presumption of ownership which disappears with contrary evidence. *Hokto Kinoko Co. v. Concord Farms, Inc.* (C.D. Cal. 2011) 810 F.Supp.2d 1013, 1022, aff'd (9th Cir. 2013) 738 F.3d 1085.

As defendants have shown, USA does not own the Neo4J trademark, the presumption of ownership through registration is gone. USA cannot rest on its procedural presumption of registration to prove an element of thier claim. Registration is not a conclusive presumption. It is rebuttable. Defedants have

rebutted it and USA must prove it is the owner of the Neo4J mark. But USA presents no evidence it owns the mark because it is undisputed Sweden owns the mark.

Reliance on Sweden's prior use for registration of the mark under 15 U.S.C. §1055 does not shore up the ownership element for USA. The registration process does allow the **owner** of a mark to use a subsidiaries prior use of the mark for registration purposes. *In re Wella A.G.* 787 F.2d 1549. (Fed. Cir. 1986) "Wella I"[3]. ("Regardless of their being related companies, only one is the owner.") The related company doctrine is only applied for prior use on a registration issue. Defendants are not attacking the registration. See fnt. 2. 15 U.S.C. §1055 does nothing to confer ownership of the trademark on a related company. There can be only one owner of the Neo4J mark and the License Agreement (Dkt. No. 100-3, Beene Dec ¶ 4, Exhibit 1) clearly states the Neo4J mark is owned by Sweden.

As USA does not own the Neo4J mark, an element of its infringement and false designation of origin claim, summary judgment on those two[4] claims should be granted in favor of Defendants.

---

[3]  The court in Wella II (*In re Wella A.G.* 858 F.2d 725 (Fed. Cir. 1988) did not reject Judge Nies' additional view in Wella I as USA stated Dkt. 109 7:13-15. Wella II rejected the Trademark Trial and Appeal Board's failure to follow the Court's instructions in Wella I.  Judge Nies additional views were favorably cited in the Federal Circuit's later opinion, *Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc.* (Fed. Cir. 1992) 971 F.2d 732, 734 :"see also *In re Wella, A.G.*, 787 F.2d 1549, 1554, 229 USPQ 274, 278 (Fed.Cir.1986) (Nies, J., additional views) (right to use and right to register are "separate and distinct").

[4] The ownership standard does not apply to the Lanham Act 43(a) false advertising claims. *Silverstar Enterprises, Inc. v. Aday* (S.D.N.Y. 1982) 537 F.Supp. 236, 241. (standing under this section [15 USC §1125] may lie with users of trademarks who are not owners of the marks.)

### III.     Nominative Use

Even if USA has standing and can raise an issue on ownership, they cannot prove infringement by defendants. Defendants' use of the Neo4J mark is to identify Neo4J software, USA, and Sweden. The use is permissible nominative fair use. Its not infringement. Fundamentally, it's defendants' First Amendment right to free speech. USA may want to stop defendants from telling people they can use free software instead of paying money for it, but a trademark cannot stop that. USA bears the burden of establishing that the use of the mark was not nominative fair use. *Toyota Motor Sales, U.S.A., Inc. v. Tabari* (9th Cir. 2010) 610 F.3d 1171, 1182–1183. The test for nominative fair use is three part determine whether: (1) the product was "readily identifiable" without use of the mark; (2) defendant used more of the mark than necessary; or (3) defendant falsely suggested he was sponsored or endorsed by the trademark holder. *Toyota* at 1165-1176. USA cannot meet its burden to show defendants' use of the Neo4J mark was not nominative. *Toyota* at 1182.

On the first element, that the product can be identified without reference to the mark, USA provides no facts to dispute D Fact 148. The services defendants provide for Neo4J software are properly identified and cannot be readily identified without reference to the mark. *Volkswagenwerk Aktiengesellschaft v. Church* (9th Cir. 1969) 411 F.2d 350, 352, supplemented (9th Cir. 1969) 413 F.2d 1126. They argue about the GFI's defendant use, but those defendants have settled out.[5] Defendants can comparatively advertise and there is no evidence to show how that

---

[5] USA suggest defendants ignore the fact the GFI defendants settled out with an agreed injunction. Dkt. No. 109. P.4, Ftn 2. It is plaintiffs who ignore the fact that settlement occurred long after Defendants' opposition was filed.

is done without using the mark. *Network Automation, Inc. v. Advanced Systems Concepts, Inc.* (9th Cir. 2011) 638 F.3d 1137, 1153.

There is no evidence defendants used the mark more than they should have to establish the second element and the third and most important element, that the use does not show sponsorship or endorsement. *Toyota*, at 1179. USA provides no facts to dispute D Fact 135. There is no genuine dispute that defendants' websites, taken as a whole suggest sponsorship or endorsement by USA.

As defendants' use of the Neo4J mark was nominative, within its First Amendment rights to identify its services, comparatively advertise, without any false suggestion they are sponsored or endorsed by USA, summary judgment on the Trade Mark and infringement claim should be granted.

## IV.    False Advertisement

Defendants moved for summary judgment on USA's False Advertising and UCL claims against defendants. While there are a number of disputed facts on this claim,[6] one required element of the claim is starkly not disputed: Sophisticated consumers of databases make purchase decisions based on price. (D Fact 151). USA concedes customers chose ONgDB based on pricing **alone**. (Emphasis added) Dkt. No. 98, p. 2:12-13; p. 32:6-10. USA offers no evidence that consumers made any material decisions based on what USA claims is false in the remaining defendants

---

[6] While USA claims defendants concede the other issues, this is not true. Dkt. No. 109 at 18:6-8. See Plaintiff's Facts 77-124. Most of which are disputed. Likewise, the facts were not segregated by the different defendant groups. Many are only addressed to the GFI defendants. A plaintiff may not mix and match statements (even some about dismissed defendants and others against the remaining) to satisfy all elements. *Verisign, Inc. v. XYZ.COM LLC* (4th Cir. 2017) 848 F.3d 292, 299. Likewise, there is a due process issue when a party overloads briefs with cases and over 100 alleged material issues of facts, and a party has a page limit to respond; concessions claimed based on omission should not apply.

advertising. False advertising must be material. *Pizza Hut, Inc. v. Papa John's Intern., Inc.* (5th Cir. 2000) 227 F.3d 489, 495. USA's failure to establish this element is fatal to the claim. *Verisign, Inc. v. XYZ.COM LLC* (4th Cir. 2017) 848 F.3d 292, 299. While USA attempts to distract the Court with argument on a play on the word "free", which is actually part of phase 2 in this case, they do not dispute the software is free. As in, it costs no money. The material decision for consumers is deciding to purchase USA's software for money or downloading software for free. There is no evidence to dispute this material issue, and none of the other claims arise to a material issue when price is the only purchasing issue. Since USA cannot prove a material false statement, summary judgment should be granted in defendants' favor on the false advertising claim and related UCL claim.

## V.    Evidence Objections

Defendants object to USA's failure to include the evidence objection in the brief as required under Civil L.R. 7-3. "Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum." All evidence objections not in the brief should be stricken. Likewise, the objections are improper. The standards for evidence on summary judgment are not the same as for trial. The standard is the evidence would be admissible at trial, not that it presently is. *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC,* 310 F. Supp. 3d 1089, 1107 (S.D. Cal. 2018).

Dated: March 9, 2021

_____/s/ Adron W. Beene_____
Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney At Law
Attorney for Defendants
PURETHINK LLC,
IGOV INC., and JOHN MARK SUHY

**FILER'S ATTESTATION**

I, Adron G. Beene, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with N.D. Cal. Civil Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

Dated: March 9, 2021

_____/s/ Adron G. Beene_____
Adron G. Beene SB# 298088

**06-16-2021 – DEFENDANTS' NOTICE OF APPEAL.pdf**

Filed 06/16/2021

DEFENDANTS' NOTICE OF APPEAL (with Circuit Rule 3-2 Representation Statement attached) PRELIMINARY INJUNCTION APPEAL

(Pacer Doc: #121)

Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorneys-at-Law
7960 Soquel Drive, Ste B #296
Aptos, CA 95003
Tel: (408) 392-9233
adron@adronlaw.com

Attorneys for defendants:
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation, Plaintiffs, v. PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual, Defendants. | CASE NO. 5:18-CV-7182 EJD **DEFENDANTS' NOTICE OF APPEAL (with Circuit Rule 3-2 Representation Statement attached)** **PRELIMINARY INJUNCTION APPEAL** |
| AND RELATED COUNTERCLAIMS | |

Defendants   PURETHINK LLC, IGOV INC. and JOHN MARK SUHY appeal
to the United States Court of Appeals for the Ninth Circuit from the "Order
Granting Plaintiffs' Motion for Partial Summary Judgment; Denying Defendants'
Cross-Motion for Summary Judgment," Dkt. No. 118, filed on May 18, 2021.

Dated: June 16, 2021

                                      _____/s/ Adron W. Beene_____
                                      Adron W. Beene SB# 129040
                                      Adron G. Beene SB# 298088
                                      Attorneys-at-Law
                                      7960 Soquel Drive, Ste B #296
                                      Aptos, CA 95003
                                      Tel: (408) 392-9233
                                      adron@adronlaw.com

## CIRCUIT RULE 3-2 REPRESENTATION STATEMENT

**Appellants:**

PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, Defendants and Counter Claimants

**Represented By:**

**Adron W. Beene**
adron@adronlaw.com
**Adron G. Beene**
adronjr@adronlaw.com
Attorneys-at-Law
7960 Soquel Drive, Ste B #296
Aptos, CA 95003
408-392-9233

**Richard Starr** (Pro hac vice)
richardestarr@starrlaw.biz
Attorney-at-Law
2503 Childs Lane
Alexandria, VA 22308
703-780-3330

**Joseph A. Hearst** (appellate counsel)
jahearst@pacbell.net
Attorney-at-Law
1569 Solano Ave. #525
Berkeley, CA 94707
Tel: (510) 528-6863
Fax: (510) 280-2556

**Appellees:**

NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation, Plaintiffs and Counter Defendants

**Represented By:**

**John V. Picone , III**
jpicone@hopkinscarley.com
**Jeffrey Michael Ratinoff**
jratinoff@hopkinscarley.com
Hopkins & Carley
The Letitia Building
70 South First Street
San Jose, CA 95113
(408) 286-9800
Fax: (408) 998-4790

Dated: June 16, 2021

_____/s/ Adron G. Beene_____

Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorneys-at-Law
7960 Soquel Drive, Ste B #296
Aptos, CA 95003
Tel: (408) 392-9233
adron@adronlaw.com

## FILER'S ATTESTATION

I, Adron G. Beene, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with N.D. Cal. Civil Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.


Dated: June 16, 2021

_____*/s/ Adron G. Beene*_____
Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorneys-at-Law
7960 Soquel Drive, Ste B #296
Aptos, CA 95003
Tel: (408) 392-9233
adron@adronlaw.com

**08-14-2021 – CIVIL DOCKET FOR CASE #: 5:18-cv-07182-EJD.pdf**

Filed 08/14/2021

CIVIL DOCKET FOR CASE #: 5:18-cv-07182-EJD

ADRMOP,AO279,APPEAL,PROTO,PRVADR,RELATE

# U.S. District Court
## California Northern District (San Jose)
## CIVIL DOCKET FOR CASE #: 5:18-cv-07182-EJD

Neo4j, Inc. v. PureThink, LLC et al                    Date Filed: 11/28/2018
Assigned to: Judge Edward J. Davila                    Jury Demand: Both
Referred to: Magistrate Judge Susan van Keulen         Nature of Suit: 840 Trademark
Relate Case Case: 5:19-cv-06226-EJD                    Jurisdiction: Federal Question
Case in other court: 9th Circuit Court of Appeals, 21-16029
Cause: 15:1051 Trademark Infringement

**Plaintiff**

**Neo4j, Inc.**                     represented by    **Cary Chien**
                                                      Hopkins and Carley
                                                      The Letita Building
                                                      70 S. First Street
                                                      San Jose, CA 95113-2406
                                                      408-286-9800
                                                      Fax: 408-998-4790
                                                      Email: cchien@hopkinscarley.com
                                                      *TERMINATED: 07/27/2020*

                                                      **John V. Picone , III**
                                                      Hopkins & Carley
                                                      The Letitia Building
                                                      70 South First Street
                                                      San Jose, CA 95113
                                                      (408) 286-9800
                                                      Email: jpicone@hopkinscarley.com
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Jeffrey Michael Ratinoff**
                                                      Hopkins & Carley
                                                      70 S. First Street
                                                      San Jose, CA 95113
                                                      408-286-9800
                                                      Fax: 408-998-4790
                                                      Email: jratinoff@hopkinscarley.com
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Neo4j Sweden AB**                 represented by    **Cary Chien**
                                                      (See above for address)
                                                      *TERMINATED: 07/27/2020*

                                                      **Jeffrey Michael Ratinoff**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**PureThink, LLC**                                      represented by **Adron W. Beene**
Attorney-at-Law
7960 Soquel Drive, Ste B #296
Aptos, CA 95003
408-392-9233
Email: adron@adronlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adron Gustav Beene**
Law Offices of Adron W. Beene
7960 Soquel Drive, Ste B #296
Aptos, CA 95003
(408) 392-9233
Email: adronjr@adronlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**iGov, Inc.**                                      represented by **Adron W. Beene**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adron Gustav Beene**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**John Mark Suhy**                                      represented by **Adron W. Beene**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adron Gustav Beene**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter-claimant**

**iGov, Inc.**                                      represented by **Adron W. Beene**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adron Gustav Beene**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter-claimant**

**PureThink, LLC**                                      represented by **Adron W. Beene**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adron Gustav Beene**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard Edward Starr**
Irving Starr Esq., P.C.
2503 Childs Lane
ALEXANDRIA, VA 22308
United Sta
703-780-3330
Email: Pacer@RStarr.biz
*ATTORNEY TO BE NOTICED*

V.

<u>**Counter-defendant**</u>

**Neo4j, Inc.**                    represented by **Cary Chien**
(See above for address)
*TERMINATED: 07/27/2020*

**John V. Picone , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey Michael Ratinoff**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Counter-claimant**</u>

**John Mark Suhy**                 represented by **Adron W. Beene**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adron Gustav Beene**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

<u>**Counter-defendant**</u>

**PureThink, LLC**                 represented by **Adron W. Beene**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adron Gustav Beene**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter-defendant**

**Neo4j Sweden AB**                    represented by **Cary Chien**
                                       (See above for address)
                                       *TERMINATED: 07/27/2020*

                                       **Jeffrey Michael Ratinoff**
                                       (See above for address)
                                       *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/28/2018 | 1 | COMPLAINT *for (1) Trademark Infringement; (2) False Designation of Origin; (3) False Advertising; (4) Federal and State Unfair Competition; (5) Breach of Contract; and (6) Invasion of Privacy* against All Defendants ( Filing fee $ 400, receipt number 0971-12880258.). Filed byNeo4j, Inc.. (Attachments: # 1 Civil Cover Sheet)(Ratinoff, Jeffrey) (Filed on 11/28/2018) (Entered: 11/28/2018) |
| 11/28/2018 | 2 | Proposed Summons. (Ratinoff, Jeffrey) (Filed on 11/28/2018) (Entered: 11/28/2018) |
| 11/28/2018 | 3 | Proposed Summons. (Ratinoff, Jeffrey) (Filed on 11/28/2018) (Entered: 11/28/2018) |
| 11/28/2018 | 4 | Proposed Summons. (Ratinoff, Jeffrey) (Filed on 11/28/2018) (Entered: 11/28/2018) |
| 11/28/2018 | 5 | Certificate of Interested Entities by Neo4j, Inc. identifying Other Affiliate Sunstone Technology Ventures Fund II K/S, Other Affiliate Europe Ventures L.P., Other Affiliate Greenbridge Investment Partners Limited, Other Affiliate One Peak Expansion Europe LP for Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 11/28/2018) (Entered: 11/28/2018) |
| 11/28/2018 | 6 | Rule 7.1 Disclosures by Neo4j, Inc. (Ratinoff, Jeffrey) (Filed on 11/28/2018) (Entered: 11/28/2018) |
| 11/28/2018 | 7 | NOTICE of Appearance by Jeffrey Michael Ratinoff (Ratinoff, Jeffrey) (Filed on 11/28/2018) (Entered: 11/28/2018) |
| 11/28/2018 | 8 | NOTICE of Appearance by John V. Picone, III (Picone, John) (Filed on 11/28/2018) (Entered: 11/28/2018) |
| 11/28/2018 | 9 | Case assigned to Judge Edward J. Davila and Magistrate Judge Susan van Keulen. Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening. Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. Counsel is required to send chambers a copy of the initiating documents pursuant to L.R. 5-1(e)(7). A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. (jmlS, COURT STAFF) (Filed on 11/28/2018) (Entered: 11/28/2018) |
| 11/28/2018 | 10 | Summons Issued as to John Mark Suhy. (cv, COURT STAFF) (Filed on 11/28/2018) (Entered: 11/28/2018) |
| 11/28/2018 | 11 | Summons Issued as to iGov, Inc.. (cv, COURT STAFF) (Filed on 11/28/2018) (Entered: 11/28/2018) |

| | | |
|---|---|---|
| 11/28/2018 | 12 | Summons Issued as to PureThink, LLC. (cv, COURT STAFF) (Filed on 11/28/2018) (Entered: 11/28/2018) |
| 11/28/2018 | 13 | **Initial Case Management Scheduling Order with ADR Deadlines: This case is assigned to a judge who participates in the Cameras in the Courtroom Pilot Project. See General Order 65 and http://cand.uscourts.gov/cameras Case Management Statement due by 2/21/2019. Initial Case Management Conference set for 2/28/2019 10:00 AM in San Jose, Courtroom 4, 5th Floor. (Attachments: # 1 Notice of Eligibility for Video Recording)(cv, COURT STAFF) (Filed on 11/28/2018) (Entered: 11/28/2018)** |
| 11/29/2018 | 14 | REPORT on the filing or determination of an action regarding Trademark (cc: form mailed to register). (cv, COURT STAFF) (Filed on 11/29/2018) (Entered: 11/29/2018) |
| 12/11/2018 | 15 | SUMMONS Returned Executed by Neo4j, Inc.. PureThink, LLC served on 11/30/2018, answer due 12/21/2018. (Ratinoff, Jeffrey) (Filed on 12/11/2018) (Entered: 12/11/2018) |
| 12/11/2018 | 16 | SUMMONS Returned Executed by Neo4j, Inc.. iGov, Inc. served on 11/30/2018, answer due 12/21/2018. (Ratinoff, Jeffrey) (Filed on 12/11/2018) (Entered: 12/11/2018) |
| 12/11/2018 | 17 | SUMMONS Returned Executed by Neo4j, Inc.. John Mark Suhy served on 11/30/2018, answer due 12/21/2018. (Ratinoff, Jeffrey) (Filed on 12/11/2018) (Entered: 12/11/2018) |
| 12/21/2018 | 18 | STIPULATION *TO EXTEND TIME TO RESPOND TO COMPLAINT* filed by PureThink, LLC, John Mark Suhy, iGov, Inc.. (Beene, Adron) (Filed on 12/21/2018) (Entered: 12/21/2018) |
| 12/21/2018 | 19 | NOTICE of Appearance by Adron Gustav Beene (Beene, Adron) (Filed on 12/21/2018) (Entered: 12/21/2018) |
| 12/21/2018 | 20 | Corporate Disclosure Statement by PureThink, LLC, John Mark Suhy, iGov, Inc. (Beene, Adron) (Filed on 12/21/2018) (Entered: 12/21/2018) |
| 12/21/2018 | 21 | NOTICE of Appearance by Adron W. Beene (Beene, Adron) (Filed on 12/21/2018) (Entered: 12/21/2018) |
| 01/09/2019 | 22 | COUNTERCLAIM against Neo4j, Inc.. filed byiGov, Inc., PureThink, LLC. (Beene, Adron) (Filed on 1/9/2019) (Entered: 01/09/2019) |
| 01/10/2019 | 23 | ANSWER to Complaint with JURY DEMAND , COUNTERCLAIM against PureThink, LLC byJohn Mark Suhy, iGov, Inc., PureThink, LLC. (Attachments: # 1 Supplement) (Beene, Adron) (Filed on 1/10/2019) (Entered: 01/10/2019) |
| 01/25/2019 | 24 | MOTION for Extension of Time to File Answer re 22 Counterclaim *Stipulation for Extension of Time to Respond to PureThink LLC and iGov, Inc.'s Counterclaims* filed by Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 1/25/2019) (Entered: 01/25/2019) |
| 01/28/2019 | 25 | **Order Granting 24 Stipulation for Extension of Time to to Respond to PURETHINK LLC and IGOV, INC.S 22 Counterclaims Signed by by Judge Edward J. Davila.(ejdlc1, COURT STAFF) (Filed on 1/28/2019) (Entered: 01/28/2019)** |
| 02/07/2019 | 26 | STIPULATION and Proposed Order selecting Private ADR by Neo4j, Inc. filed by Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 2/7/2019) (Entered: 02/07/2019) |
| 02/07/2019 | 27 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options (Ratinoff, Jeffrey) (Filed on 2/7/2019) (Entered: 02/07/2019) |
| 02/08/2019 | 28 | **Order Granting 26 Stipulation selecting Private ADR Signed by Judge Edward J. Davila.(ejdlc1S, COURT STAFF) (Filed on 2/8/2019) (Entered: 02/08/2019)** |

| 02/15/2019 | 29 | Certificate of Interested Entities by PureThink, LLC, John Mark Suhy, iGov, Inc. (Beene, Adron) (Filed on 2/15/2019) (Entered: 02/15/2019) |
| 02/21/2019 | 30 | ANSWER TO COUNTERCLAIM 22 Counterclaim byNeo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 2/21/2019) (Entered: 02/21/2019) |
| 02/21/2019 | 31 | CASE MANAGEMENT STATEMENT *Joint Case Management Conference Statement and FRCP 26(f) Report* filed by Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 2/21/2019) (Entered: 02/21/2019) |
| 02/22/2019 | 32 | **CASE MANAGEMENT SCHEDULING ORDER Signed by Judge Edward J. Davila on 2/22/2019. (ejdlc1S, COURT STAFF) (Filed on 2/22/2019) (Entered: 02/22/2019)** |
| 02/22/2019 | | ***Set Deadlines/Hearings per ECF 32 Order: Close of Expert Discovery due by 6/1/2020. Close of Fact Discovery due by 2/28/2020. Trial Setting Conference Statement due by 1/21/2020. Trial Setting Conference set for 1/30/2020 11:00 AM in San Jose, Courtroom 4, 5th Floor before Judge Edward J. Davila. Dispositive and Daubert Motions due by 7/17/2020. Responses due by 8/17/2020. Replies due by 9/4/2020. Opening Reports due by 4/1/2020. Rebuttal Reports due by 5/1/2020. Dispositive and Daubert Motion Hearing set for 10/29/2020 09:00 AM in San Jose, Courtroom 4, 5th Floor before Judge Edward J. Davila. (amkS, COURT STAFF) (Filed on 2/22/2019) (Entered: 02/26/2019) |
| 09/30/2019 | 33 | STIPULATION WITH PROPOSED ORDER *Stipulated Protective Order* filed by Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 9/30/2019) (Entered: 09/30/2019) |
| 10/02/2019 | 34 | **STIPULATED PROTECTIVE ORDER 33 . Signed by Judge Susan van Keulen on 10/2/19. (cfeS, COURT STAFF) (Filed on 10/2/2019) (Entered: 10/02/2019)** |
| 10/22/2019 | 35 | STIPULATION WITH PROPOSED ORDER *Joint Stipulation for Leave to File First Amended Complaint* filed by Neo4j, Inc.. (Attachments: # 1 Exhibit A - Proposed First Amended Complaint)(Ratinoff, Jeffrey) (Filed on 10/22/2019) (Entered: 10/22/2019) |
| 10/22/2019 | 36 | **Order granting 35 Stipulation For Leave To File First Amended Complaint. Signed by Judge Edward J. Davila on 10/22/2019. (ejdlc3S, COURT STAFF) (Filed on 10/22/2019) (Entered: 10/22/2019)** |
| 10/23/2019 | 37 | AMENDED COMPLAINT *First Amended Complaint for: (1) Trademark Infringement; (2) False Designation of Origin; (3) False Advertising; (4) Federal and State Unfair Competition; (5) Breach of Contract; (6) Invasion of Privacy; and (7) Violations of the DMCA* against PureThink, LLC, John Mark Suhy, iGov, Inc.. Filed byNeo4j, Inc., Neo4j Sweden AB. (Ratinoff, Jeffrey) (Filed on 10/23/2019) (Entered: 10/23/2019) |
| 10/24/2019 | 38 | Corporate Disclosure Statement by Neo4j Sweden AB identifying Corporate Parent Neo4j, Inc. for Neo4j Sweden AB. (Ratinoff, Jeffrey) (Filed on 10/24/2019) (Entered: 10/24/2019) |
| 10/24/2019 | 39 | Certificate of Interested Entities by Neo4j Sweden AB identifying Other Affiliate Sunstone Technology Ventures Fund II K/S, Other Affiliate Europe Ventures L.P., Other Affiliate Greenbridge Investment Partners Limited, Other Affiliate One Peak Expansion Europe LP for Neo4j Sweden AB. (Ratinoff, Jeffrey) (Filed on 10/24/2019) (Entered: 10/24/2019) |
| 10/28/2019 | 40 | NOTICE of Appearance by Cary Chien (Chien, Cary) (Filed on 10/28/2019) (Entered: 10/28/2019) |
| 10/28/2019 | 41 | ADMINISTRATIVE MOTION Consider Whether Cases Should be Related filed by Neo4j, Inc.. Responses due by 11/1/2019. (Attachments: # 1 Declaration Declaration of |

8/14/2021                                                                    CAND-ECF

| | | |
|---|---|---|
| | | Cary Chien iso Plaintiff's Stipulated Administrative Motion to Consider Whether Cases Should be Related, # 2 Certificate/Proof of Service Proof of Service)(Chien, Cary) (Filed on 10/28/2019) (Entered: 10/28/2019) |
| 10/28/2019 | 42 | STIPULATION WITH PROPOSED ORDER re 41 ADMINISTRATIVE MOTION Consider Whether Cases Should be Related filed by Neo4j Sweden AB, Neo4j, Inc.. (Chien, Cary) (Filed on 10/28/2019) (Entered: 10/28/2019) |
| 10/29/2019 | 43 | **ORDER Denying Without Prejudice 41 Administrative Motion ; Denying 42 Stipulation Signed by Judge Edward J. Davila on 10/29/2019. (ejdlc1S, COURT STAFF) (Filed on 10/29/2019) (Entered: 10/29/2019)** |
| 10/30/2019 | 44 | STIPULATION WITH PROPOSED ORDER *(JOINT) FOR LEAVE TO FILE PLAINTIFF AND COUNTER-DEFENDANTS FIRST AMENDED ANSWER* filed by Neo4j Sweden AB, Neo4j, Inc.. (Attachments: # 1 Exhibit A)(Chien, Cary) (Filed on 10/30/2019) (Entered: 10/30/2019) |
| 10/31/2019 | 45 | **Order granting 44 Stipulation for Leave to File Plaintiff and Counter-Defendant's First Amended Answer. Signed by Judge Edward J. Davila on 10/31/2019. (ejdlc3S, COURT STAFF) (Filed on 10/31/2019) (Entered: 10/31/2019)** |
| 10/31/2019 | 46 | *Plaintiffs and Counter-Defendants Amended* ANSWER to Counterclaim byNeo4j Sweden AB, Neo4j, Inc.. (Chien, Cary) (Filed on 10/31/2019) (Entered: 10/31/2019) |
| 11/13/2019 | 47 | ANSWER to Amended Complaint byJohn Mark Suhy. (Beene, Adron) (Filed on 11/13/2019) (Entered: 11/13/2019) |
| 11/13/2019 | 48 | COUNTERCLAIM against Neo4j Sweden AB, Neo4j, Inc.. Filed byJohn Mark Suhy. (Beene, Adron) (Filed on 11/13/2019) (Entered: 11/13/2019) |
| 11/13/2019 | 49 | MOTION to Dismiss *Or, Alternatively, Motion To Strike* filed by PureThink, LLC, iGov, Inc.. Motion Hearing set for 3/19/2020 09:00 AM in San Jose, Courtroom 4, 5th Floor before Judge Edward J. Davila. Responses due by 11/27/2019. Replies due by 12/4/2019. (Attachments: # 1 Declaration of John Mark Suhy In Support of Motion)(Beene, Adron) (Filed on 11/13/2019) (Entered: 11/13/2019) |
| 11/25/2019 | 50 | SECOND AMENDED COMPLAINT *for (1) Trademark Infringement; (2) False Designation of Origin; (3) False Advertising; (4) Federal and State Unfair Competition; (5) Breach of Contract; (6) Invasion of Privacy; and (7) Violations of the DMCA* against PureThink, LLC, John Mark Suhy, iGov, Inc.. Filed by Neo4j, Inc., Neo4j Sweden AB. (Ratinoff, Jeffrey) (Filed on 11/25/2019) Modified on 12/5/2019 (cv, COURT STAFF). (Entered: 11/25/2019) |
| 12/02/2019 | 51 | **REFERRAL FOR PURPOSE OF DETERMINING RELATIONSHIP. Signed by Magistrate Judge Jacqueline Scott Corley on 12/2/2019. (ahm, COURT STAFF) (Filed on 12/2/2019) (Entered: 12/02/2019)** |
| 12/04/2019 | 52 | ANSWER TO COUNTERCLAIM 48 Counterclaim byNeo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 12/4/2019) (Entered: 12/04/2019) |
| 12/05/2019 | 53 | **ORDER RELATING CASE. Signed by Judge Edward J. Davila on 12/5/2019. (ejdlc1S, COURT STAFF) (Filed on 12/5/2019) (Entered: 12/05/2019)** |
| 12/09/2019 | 54 | ANSWER to Amended Complaint byPureThink, LLC, John Mark Suhy, iGov, Inc.. (Beene, Adron) (Filed on 12/9/2019) (Entered: 12/09/2019) |
| 12/09/2019 | 55 | Amended COUNTERCLAIM against Neo4j Sweden AB, Neo4j, Inc.. Filed byiGov, Inc., PureThink, LLC. (Beene, Adron) (Filed on 12/9/2019) (Entered: 12/09/2019) |
| 12/23/2019 | 56 | ANSWER TO COUNTERCLAIM 55 Counterclaim *Plaintiffs and Counter-Defendants* |

| | | |
|---|---|---|
| | | *Neo4j, Inc. and Neo4j Sweden AB's Answer to First Amended Counterclaim* byNeo4j Sweden AB, Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 12/23/2019) (Entered: 12/23/2019) |
| 01/03/2020 | 57 | STIPULATION WITH PROPOSED ORDER re 32 Case Management Scheduling Order *for Modification of Case Schedule and Request for Setting of a Case Management Conference* filed by Neo4j Sweden AB, Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 1/3/2020) (Entered: 01/03/2020) |
| 01/06/2020 | 58 | **Order Granting 57 Stipulation to Modify Case Schedule Signed by Judge Edward J. Davila on 1/6/2020.(ejdlc1S, COURT STAFF) (Filed on 1/6/2020) (Entered: 01/06/2020)** |
| 01/06/2020 | 59 | **CORRECTED ORDER re 58 Order Granting Stipulation to Modify Case Schedule Signed by Judge Edward J. Davila on 1/6/2020. (ejdlc1S, COURT STAFF) (Filed on 1/6/2020) (Entered: 01/06/2020)** |
| 01/06/2020 | | ***Set Deadlines/Hearings per ECF 59 Order: Close of Expert Discovery due by 8/31/2020. Close of Fact Discovery due by 5/28/2020. Joint Trial Setting Conference Statement due by 4/27/2020. Dispositive Motion due by 10/15/2020. Fact Discovery Motions due by 6/4/2020. Opening Reports due by 6/30/2020. Rebuttal Reports due by 7/30/2020. Responses due by 11/16/2020. Replies due by 12/3/2020. Case Management Statement due by 2/24/2020. Further Case Management Conference set for 3/5/2020 10:00 AM in San Jose, Courtroom 4, 5th Floor. Dispositive and Daubert Motion Hearing set for 1/28/2021 09:00 AM in San Jose, Courtroom 4, 5th Floor before Judge Edward J. Davila. Trial Setting Conference set for 5/7/2020 11:00 AM in San Jose, Courtroom 4, 5th Floor before Judge Edward J. Davila. (amkS, COURT STAFF) (Filed on 1/6/2020) (Entered: 01/23/2020) |
| 02/11/2020 | 60 | MOTION for Judgment on the Pleadings filed by Neo4j, Inc.. Motion Hearing set for 5/7/2020 09:00 AM in San Jose, Courtroom 4, 5th Floor before Judge Edward J. Davila. Responses due by 2/25/2020. Replies due by 3/3/2020. (Attachments: # 1 Declaration of Jeffrey M. Ratinoff iso Motion for Judgment on the Pleadings)(Ratinoff, Jeffrey) (Filed on 2/11/2020) (Entered: 02/11/2020) |
| 02/11/2020 | 61 | Request for Judicial Notice re 60 MOTION for Judgment on the Pleadings filed byNeo4j, Inc.. (Related document(s) 60 ) (Ratinoff, Jeffrey) (Filed on 2/11/2020) (Entered: 02/11/2020) |
| 02/25/2020 | 62 | JOINT CASE MANAGEMENT STATEMENT *and Status Conference Statement* filed by Neo4j Sweden AB, Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 2/25/2020) (Entered: 02/25/2020) |
| 02/25/2020 | 63 | OPPOSITION/RESPONSE (re 60 MOTION for Judgment on the Pleadings ) filed byPureThink, LLC, John Mark Suhy, iGov, Inc.. (Beene, Adron) (Filed on 2/25/2020) (Entered: 02/25/2020) |
| 03/03/2020 | 64 | REPLY (re 60 MOTION for Judgment on the Pleadings ) filed byNeo4j Sweden AB, Neo4j, Inc.. (Attachments: # 1 Declaration of Jeffrey M. Ratinoff)(Ratinoff, Jeffrey) (Filed on 3/3/2020) (Entered: 03/03/2020) |
| 03/03/2020 | 65 | Request for Judicial Notice re 64 Reply to Opposition/Response filed byNeo4j Sweden AB, Neo4j, Inc.. (Related document(s) 64 ) (Ratinoff, Jeffrey) (Filed on 3/3/2020) (Entered: 03/03/2020) |
| 03/05/2020 | 66 | **Minute Entry for proceedings held before Judge Edward J. Davila: Further Case Management Conference held on 3/5/2020. The parties shall meet and confer re an agreed upon schedule and trial date and submit the proposed order to the Court for approval. The Court vacates previous deadlines/hearing dates. The Court will allow** |

|  |  |  |
|---|---|---|
|  |  | **2 summary judgment motions and if possible pleadings shall have the page limit indicated by the Court. Deadline for Defendants to respond to settlement proposal from mediation shall be due 3/17/2020. Should a further settlement conference be necessary the parties agreed to have a settlement conference with the assigned Magistrate Judge van Keulen and shall contact her chambers directly to schedule. Plaintiff Attorney: Jeffrey Ratinoff, John Picone. Defendant Attorney: Adron Beene, John Pernick. Total Time in Court:10:42-10:57am(15 Mins.) Court Reporter: Lee-Anne Shortridge.** *(This is a text-only entry generated by the court. There is no document associated with this entry.)* **(amkS, COURT STAFF) (Date Filed: 3/5/2020) (Entered: 03/05/2020)** |
| 04/10/2020 | 67 | STIPULATION WITH PROPOSED ORDER *for Modification of Case Management Schedule* filed by Neo4j Sweden AB, Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 4/10/2020) (Entered: 04/10/2020) |
| 04/13/2020 | 68 | **Order granting 67 Stipulation for Modification of Case Management Schedule. Signed by Judge Edward J. Davila on 4/13/2020. (ejdlc3S, COURT STAFF) (Filed on 4/13/2020) (Entered: 04/13/2020)** |
| 04/13/2020 |  | ***Set Deadlines/Hearings per ECF 68 Order: Close of Fact Discovery Phase 1 due by 8/14/2020. Plaintiffs Motion Summary Judgment due by 9/25/2020. Defendants combined Motion Summary Judgment/Opposition due by 10/23/2020. Reply/Opposition due by 11/16/2020. Reply due 12/2/2020. Motions for Summary Judgment Hearing set for 12/17/2020 09:00 AM in San Jose, Courtroom 4, 5th Floor before Judge Edward J. Davila. (amkS, COURT STAFF) (Filed on 4/13/2020) (Entered: 04/13/2020) |
| 04/29/2020 | 69 | (Text Only) CLERKS NOTICE TAKING MOTIONS UNDER SUBMISSION WITHOUT ORAL ARGUMENT. The Motions for Judgment on the Pleadings(Docket Item No. 60 ) and to Strike (Docket Item No. 32 5:19-cv-06226-EJD) before Judge Edward J. Davila previously noticed for 5/7/2020 at 9:00 AM have been taken under submission without oral argument pursuant to Civ. L.R. 7-1(b). The 5/7/2020 hearing is VACATED NO APPEARANCE NECESSARY. The Court to issue further Order on the submitted motions. **This is a text only docket entry, there is no document associated with this notice.** (amkS, COURT STAFF) (Filed on 4/29/2020) (Entered: 04/29/2020) |
| 05/21/2020 | 70 | **ORDER GRANTING 60 MOTION FOR JUDGMENT ON THE PLEADINGS. Signed by Judge Edward J. Davila on 5/21/2020. (ejdlc1S, COURT STAFF) (Filed on 5/21/2020) (Entered: 05/21/2020)** |
| 06/05/2020 | 71 | AMENDED ANSWER to *SECOND AMENDED COMPLAINT* byPureThink, LLC, John Mark Suhy, iGov, Inc.. (Beene, Adron) (Filed on 6/5/2020) (Entered: 06/05/2020) |
| 06/05/2020 | 72 | Second COUNTERCLAIM *AMENDED* against Neo4j Sweden AB, Neo4j, Inc.. Filed byJohn Mark Suhy, PureThink, LLC, iGov, Inc.. (Beene, Adron) (Filed on 6/5/2020) (Entered: 06/05/2020) |
| 06/19/2020 | 73 | MOTION to Dismiss *for Failure to State a Claim and Motion to Strike* filed by Neo4j, Inc.. Motion Hearing set for 8/13/2020 09:00 AM in San Jose, Courtroom 4, 5th Floor before Judge Edward J. Davila. Responses due by 7/6/2020. Replies due by 7/13/2020. (Attachments: # 1 Declaration of Cary Chien iso Neo4j, Inc.'s Motion to Strike and Motion to Dismiss, # 2 Exhibit 1 to Declaration of Cary Chien, # 3 Exhibit 2 to Declaration of Cary Chien)(Chien, Cary) (Filed on 6/19/2020) (Entered: 06/19/2020) |
| 06/19/2020 | 74 | Request for Judicial Notice re 73 MOTION to Dismiss *for Failure to State a Claim and Motion to Strike* filed byNeo4j, Inc.. (Related document(s) 73 ) (Chien, Cary) (Filed on 6/19/2020) (Entered: 06/19/2020) |
| 06/19/2020 | 75 | ANSWER TO COUNTERCLAIM 72 Counterclaim *Second Amended Counterclaim* |

| | | byNeo4j Sweden AB. (Chien, Cary) (Filed on 6/19/2020) (Entered: 06/19/2020) |
|---|---|---|
| 06/22/2020 | 76 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 310, receipt number 0971-14607687.) filed by PureThink, LLC. (Attachments: # 1 Exhibit Certificate Good Standing)(Starr, Richard) (Filed on 6/22/2020) (Entered: 06/22/2020) |
| 06/23/2020 | 77 | **ORDER Granting (76) Application for Admission of Attorney Pro Hac Vice for Richard E. Starr, Counsel for Defendants. Order Granted in case 5:18-cv-07182-EJD. Signed by Judge Edward J. Davila on 6/23/2020. (amkS, COURT STAFF) (Filed on 6/23/2020) (Entered: 06/23/2020)** |
| 07/06/2020 | 78 | OPPOSITION/RESPONSE (re 73 MOTION to Dismiss *for Failure to State a Claim and Motion to Strike* ) filed byPureThink, LLC, John Mark Suhy, iGov, Inc.. (Beene, Adron) (Filed on 7/6/2020) (Entered: 07/06/2020) |
| 07/13/2020 | 79 | REPLY (re 73 MOTION to Dismiss *for Failure to State a Claim and Motion to Strike* ) filed byNeo4j, Inc.. (Attachments: # 1 Declaration Reply Declaration of Cary Chien iso Motion to Strike and Motion to Dismiss, # 2 Exhibit A to Declaration of Cary Chien, # 3 Exhibit B to Declaration of Cary Chien)(Chien, Cary) (Filed on 7/13/2020) (Entered: 07/13/2020) |
| 07/13/2020 | 80 | Request for Judicial Notice re 79 Reply to Opposition/Response, *iso Motion to Strike and Motion to Dismiss* filed byNeo4j, Inc.. (Related document(s) 79 ) (Chien, Cary) (Filed on 7/13/2020) (Entered: 07/13/2020) |
| 07/15/2020 | 81 | STIPULATION WITH PROPOSED ORDER *for Further Modification of Case Management Schedule* filed by Neo4j Sweden AB, Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 7/15/2020) (Entered: 07/15/2020) |
| 07/16/2020 | 82 | **Order granting (81) Stipulation For Further Modification of Case Management Schedule. Signed by Judge Edward J. Davila on 7/16/2020. Associated Cases: 5:18-cv-07182-EJD, 5:19-cv-06226-EJD. (ejdlc1S, COURT STAFF) (Filed on 7/16/2020) (Entered: 07/16/2020)** |
| 07/27/2020 | 83 | NOTICE by Neo4j Sweden AB, Neo4j, Inc. *of Withdrawal of Counsel* (Chien, Cary) (Filed on 7/27/2020) (Entered: 07/27/2020) |
| 08/05/2020 | 84 | (Text Only) CLERK'S NOTICE TAKING MOTION UNDER SUBMISSION WITHOUT ORAL ARGUMENT. The Motion to Dismiss for Failure to State a Claim and Motion to Strike (Docket Item No. 73 ) before Judge Edward J. Davila previously noticed for August 13, 2020, at 9:00 AM has been taken under submission without oral argument pursuant to Civ. L.R. 7-1(b). The motion hearing is VACATED NO APPEARANCE NECESSARY. The Court to issue further Order on the submitted motion. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (lmh, COURT STAFF) (Filed on 8/5/2020) (Entered: 08/05/2020) |
| 08/20/2020 | 85 | **ORDER GRANTING 73 MOTION TO DISMISS AND STRIKE. Signed by Judge Edward J. Davila on 8/20/2020. (ejdlc1, COURT STAFF) (Filed on 8/20/2020) (Entered: 08/20/2020)** |
| 09/09/2020 | 86 | STIPULATION WITH PROPOSED ORDER *for Second Modification of the Phase 1 Case Schedule* filed by Neo4j Sweden AB, Neo4j, Inc.. (Attachments: # 1 Declaration of Jeffrey M. Ratinoff)(Ratinoff, Jeffrey) (Filed on 9/9/2020) (Entered: 09/09/2020) |
| 09/10/2020 | 87 | **ORDER GRANTING 86 STIPULATION FOR SECOND MODIFICATION OF THE PHASE 1 CASE SCHEDULE. Signed by Judge Edward J. Davila on 9/10/2020. (ejdlc1, COURT STAFF) (Filed on 9/10/2020) (Entered: 09/10/2020)** |
| 09/10/2020 | | ***Set Deadlines/Hearings per ECF 87 Order: Dispositive Motion due by 12/11/2020. |

8/14/2021                                    CAND-ECF

| | | |
|---|---|---|
| | | Defendants Cross Summary Judgment Motion and Opposition due by 1/15/2021. Plaintiff Reply and Opposition due by 2/15/2021. Reply due by 3/8/2021. Motions for Summary Judgment Hearing set for 3/25/2021 09:00 AM in San Jose, Courtroom 4, 5th Floor before Judge Edward J. Davila. Responses due by 1/15/2021. (amkS, COURT STAFF) (Filed on 9/10/2020) (Entered: 09/11/2020) |
| 09/25/2020 | 88 | STIPULATION WITH PROPOSED ORDER *Joint Stipulation for Leave to File Third Amended Complaint* filed by Neo4j Sweden AB, Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 9/25/2020) (Entered: 09/25/2020) |
| 09/28/2020 | 89 | **Order Granting 88 Joint Stipulation For Leave To File Third Amended Complaint. Signed by Judge Edward J. Davila on 9/28/2020. (ejdlc1, COURT STAFF) (Filed on 9/28/2020) (Entered: 09/28/2020)** |
| 09/28/2020 | 90 | AMENDED COMPLAINT *Third Amended Complaint for: (1) Trademark Infringement; (2) False Designation of Origin; (3) False Advertising; (4) Defamation; (5) Federal and State Unfair Competition; (6) Breach of Contract; (7) Invasion of Privacy; and (8) Violations of the DMCA* against PureThink, LLC, John Mark Suhy, iGov, Inc.. Filed byNeo4j, Inc., Neo4j Sweden AB. (Ratinoff, Jeffrey) (Filed on 9/28/2020) (Entered: 09/28/2020) |
| 10/19/2020 | 91 | ANSWER to Amended Complaint byPureThink, LLC, John Mark Suhy, iGov, Inc.. (Beene, Adron) (Filed on 10/19/2020) (Entered: 10/19/2020) |
| 10/21/2020 | 92 | STIPULATION *for Remote Protocol for the Deposition of Defendant iGov Inc. Made Pursuant to FRCP 30(b)(4)* filed by Neo4j Sweden AB, Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 10/21/2020) (Entered: 10/21/2020) |
| 10/30/2020 | 93 | MOTION to Strike *Memorandum of Points and Authorities in Support Thereof* filed by Neo4j Sweden AB, Neo4j, Inc.. Motion Hearing set for 2/11/2021 09:00 AM in San Jose, Courtroom 4, 5th Floor before Judge Edward J. Davila. Responses due by 11/13/2020. Replies due by 11/20/2020. (Attachments: # 1 Declaration of Jeffrey M. Ratinoff) (Ratinoff, Jeffrey) (Filed on 10/30/2020) (Entered: 10/30/2020) |
| 10/30/2020 | 94 | Request for Judicial Notice re 93 MOTION to Strike *Memorandum of Points and Authorities in Support Thereof* filed byNeo4j Sweden AB, Neo4j, Inc.. (Related document(s) 93 ) (Ratinoff, Jeffrey) (Filed on 10/30/2020) (Entered: 10/30/2020) |
| 11/13/2020 | 95 | OPPOSITION/RESPONSE (re 93 MOTION to Strike *Memorandum of Points and Authorities in Support Thereof* ) filed byPureThink, LLC, John Mark Suhy, iGov, Inc.. (Attachments: # 1 Declaration of Adron G. Beene)(Beene, Adron) (Filed on 11/13/2020) (Entered: 11/13/2020) |
| 11/20/2020 | 96 | REPLY (re 93 MOTION to Strike *Memorandum of Points and Authorities in Support Thereof* ) filed byNeo4j Sweden AB, Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 11/20/2020) (Entered: 11/20/2020) |
| 12/11/2020 | 97 | Administrative Motion to File Under Seal *Portions of Plaintiffs' Motion for Summary Judgment and Exhibits to Supporting Declarations* filed by Neo4j Sweden AB, Neo4j, Inc.. (Attachments: # 1 Declaration of Jeffrey Ratinoff, # 2 Declaration of Philip Rathle, # 3 Proposed Order, # 4 Unredacted Version of Exhibit 6 to Ratinoff Declaration, # 5 Unredacted Version of Exhibit 7 to Ratinoff Declaration, # 6 Redacted Version of Exhibit 27 to Ratinoff Declaration, # 7 Unredacted Version of Exhibit 27 to Ratinoff Declaration, # 8 Unredacted Version of Exhibit 126 to Ratinoff Declaration, # 9 Unredacted Version of Exhibit 3 to Broad Declaration, # 10 Unredacted Version of Exhibit 12 to Broad Declaration, # 11 Unredacted Version of Exhibit 13 to Broad Declaration, # 12 Redacted Version of Plaintiffs' Motion for Summary Judgment, # 13 Unredacted Version of Plaintiffs' Motion for Summary Judgment, # 14 Unredacted Version of Exhibit 3 to |

|  |  | Ratinoff Declaration, # 15 Unredacted Version of Exhibit 55 to Ratinoff Declaration, # 16 Unredacted Version of Exhibit 130 to Ratinoff Declaration, # 17 Unredacted Version of Exhibit 131 to Ratinoff Declaration, # 18 Unredacted Version of Exhibit 132 to Ratinoff Declaration, # 19 Unredacted Version of Exhibit 133 to Ratinoff Declaration, # 20 Unredacted Version of Exhibit 134 to Ratinoff Declaration, # 21 Unredacted Version of Exhibit 135 to Ratinoff Declaration)(Ratinoff, Jeffrey) (Filed on 12/11/2020) (Entered: 12/11/2020) |
|---|---|---|
| 12/11/2020 | 98 | MOTION for Summary Judgment filed by Neo4j Sweden AB, Neo4j, Inc.. Motion Hearing set for 3/25/2021 09:00 AM in San Jose, Courtroom 4, 5th Floor before Judge Edward J. Davila. Responses due by 1/15/2021. Replies due by 2/15/2021. (Attachments: # 1 Declaration of Jeffrey M. Ratinoff, # 2 Declaration of Philip Rathle, # 3 Declaration of John Broad, # 4 Proposed Order)(Ratinoff, Jeffrey) (Filed on 12/11/2020) (Entered: 12/11/2020) |
| 12/11/2020 | 99 | CERTIFICATE OF SERVICE by Neo4j Sweden AB, Neo4j, Inc. re 97 Administrative Motion to File Under Seal *Portions of Plaintiffs' Motion for Summary Judgment and Exhibits to Supporting Declarations* (Ratinoff, Jeffrey) (Filed on 12/11/2020) (Entered: 12/11/2020) |
| 01/15/2021 | 100 | Cross MOTION for Summary Judgment and opposition 98 ) *And Cross Motion for Summary Judgment* filed by PureThink, LLC, John Mark Suhy, iGov, Inc.. (Attachments: # 1 Declaration of John Mark Suhy, # 2 Declaration of John D. Pernick, # 3 Declaration of Adron G. Beene)(Beene, Adron) (Filed on 1/15/2021) Modified on 1/26/2021 *** opposition and cross/motion must be e-filed separately*** (cv, COURT STAFF). (Entered: 01/15/2021) |
| 01/15/2021 | 101 | Administrative Motion to File Under Seal *Exhibits Designated by Opposing Side As Highly Confidential-Attorneys Eyes Only And Confidential Under Protective Order* filed by PureThink, LLC, John Mark Suhy, iGov, Inc.. (Attachments: # 1 Declaration of Adron G. Beene, # 2 Proposed Order, # 3 Unredacted Version of Exhibit 1, # 4 Unredacted Version of Exhibit 2, # 5 Unredacted Version of Exhibit 7)(Beene, Adron) (Filed on 1/15/2021) (Entered: 01/15/2021) |
| 01/19/2021 | 102 | Declaration of Philip Rathle in Support of 101 Administrative Motion to File Under Seal *Exhibits Designated by Opposing Side As Highly Confidential-Attorneys Eyes Only And Confidential Under Protective Order* filed byNeo4j Sweden AB, Neo4j, Inc.. (Attachments: # 1 Proposed Order)(Related document(s) 101 ) (Ratinoff, Jeffrey) (Filed on 1/19/2021) (Entered: 01/19/2021) |
| 01/19/2021 | 103 | ERRATA re 98 MOTION for Summary Judgment *Notice of Errata for Exhibit 31 to Declaration of Jeffrey M. Ratinoff in Support of Plaintiffs' Consolidated Motion for Summary Judgment* by Neo4j Sweden AB, Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 1/19/2021) (Entered: 01/19/2021) |
| 01/19/2021 | 104 | ERRATA re 98 MOTION for Summary Judgment *Notice of Errata for Separate Statement of Undisputed Facts in Support of Plaintiffs' Consolidated Motion for Summary Judgment and Response to Defendants' Request to Strike Same* by Neo4j Sweden AB, Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 1/19/2021) (Entered: 01/19/2021) |
| 01/26/2021 |  | Electronic filing error. Incorrect event used. [err101]Corrected by Clerk's Office. No further action is necessary. Re: 100 Opposition/Response to Motion, filed by John Mark Suhy, iGov, Inc., PureThink, LLC *** opposition and cross/motion must be e-filed separately*** (cv, COURT STAFF) (Filed on 1/26/2021) (Entered: 01/26/2021) |
| 01/26/2021 | 105 | CLERK'S NOTICE CONTINUING HEARING. Please take NOTICE that the Hearing as to ( 100 in 5:18-cv-07182-EJD) Cross Motion for Summary Judgment, ( 98 in 5:18-cv- |

8/14/2021                                                    CAND-ECF

|  |  |  |
|---|---|---|
|  |  | 07182-EJD) Motion for Summary Judgment, ( 98 in 5:19-cv-06226-EJD) Cross Motion for Summary Judgment, ( 93 in 5:19-cv-06226-EJD) Motion for Summary Judgment set for 3/25/2021 is HEREBY CONTINUED to 4/15/2021 09:00 AM in San Jose, Courtroom 4, 5th Floor before Judge Edward J. Davila. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (amkS, COURT STAFF) (Filed on 1/26/2021) (Entered: 01/26/2021) |
| 02/01/2021 | 106 | STIPULATION WITH PROPOSED ORDER *for Further Modification of Phase 1 Summary Judgment Briefing Schedule* filed by Neo4j Sweden AB, Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 2/1/2021) (Entered: 02/01/2021) |
| 02/02/2021 | 107 | **ORDER GRANTING 106 STIPULATION FOR FURTHER MODIFICATION OF PHASE 1 SUMMARY JUDGMENT BRIEFING SCHEDULE. Signed by Judge Edward J. Davila on 2/2/2021. (ejdlc1S, COURT STAFF) (Filed on 2/2/2021) (Entered: 02/02/2021)** |
| 02/02/2021 |  | ***Set/Reset Deadlines per ECF 107 Order: as to 100 Cross Motion for Summary Judgment, and 98 Motion for Summary Judgment. Responses due by 2/16/2021. Replies due by 3/9/2021. (amkS, COURT STAFF) (Filed on 2/2/2021) (Entered: 02/02/2021) |
| 02/03/2021 | 108 | (Text Only) CLERKS NOTICE TAKING MOTION UNDER SUBMISSION WITHOUT ORAL ARGUMENT. The Motion to Strike (Docket Item No. 93 ) before Judge Edward J. Davila previously noticed for 2/11/2021 at 9:00 AM has been taken under submission without oral argument pursuant to Civ. L.R. 7-1(b). The 2/11/2021 hearing is VACATED NO APPEARANCE NECESSARY. The Court to issue further Order on the submitted motion. **This is a text only docket entry, there is no document associated with this notice.** (amkS, COURT STAFF) (Filed on 2/3/2021) (Entered: 02/03/2021) |
| 02/16/2021 | 109 | REPLY (re 100 Cross MOTION for Summary Judgment, 98 MOTION for Summary Judgment ) *Consolidated Reply in Support of Plaintiffs' Motion for Summary Judgment and Opposition to Defendants' Cross-Motion for Summary Judgment* filed byNeo4j Sweden AB, Neo4j, Inc.. (Attachments: # 1 Declaration of Jeffrey M. Ratinoff)(Ratinoff, Jeffrey) (Filed on 2/16/2021) (Entered: 02/16/2021) |
| 03/03/2021 | 110 | **ORDER GRANTING 93 MOTION TO STRIKE. Signed by Judge Edward J. Davila on 3/3/2021. (ejdlc1S, COURT STAFF) (Filed on 3/3/2021) (Entered: 03/03/2021)** |
| 03/08/2021 | 111 | Joint Discovery Letter Brief filed by Neo4j Sweden AB, Neo4j, Inc.. (Attachments: # 1 Proposed Order)(Ratinoff, Jeffrey) (Filed on 3/8/2021) (Entered: 03/08/2021) |
| 03/09/2021 | 112 | REPLY (re 100 Cross MOTION for Summary Judgment ) *To Plaintiffs Opposition* filed byPureThink, LLC, John Mark Suhy, iGov, Inc.. (Beene, Adron) (Filed on 3/9/2021) (Entered: 03/09/2021) |
| 03/10/2021 | 113 | **Order re Joint Discovery Letter Brief. Signed by Judge Susan van Keulen on 3/10/2021. (svklc1S, COURT STAFF) (Filed on 3/10/2021) (Entered: 03/10/2021)** |
| 03/11/2021 | 114 | Supplemental Discovery Letter Brief filed by Neo4j Sweden AB, Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 3/11/2021) (Entered: 03/11/2021) |
| 03/11/2021 | 115 | **ORDER DENYING RELIEF REQUESTED IN 111 114 JOINT DISCOVERY SUBMISSION. Signed by Judge Susan van Keulen on 3/11/2021. (svklc1S, COURT STAFF) (Filed on 3/11/2021) (Entered: 03/11/2021)** |
| 04/08/2021 | 116 | (Text Only) CLERKS NOTICE TAKING MOTIONS UNDER SUBMISSION WITHOUT ORAL ARGUMENT. The Motions for Summary Judgment (Docket Item Nos. 98 and 100 ) before Judge Edward J. Davila previously noticed for 4/15/2021 at 9:00 AM have been taken under submission without oral argument pursuant to Civ. L.R. |

| | | |
|---|---|---|
| | | 7-1(b). The 4/15/2021 hearing is VACATED NO APPEARANCE NECESSARY. The Court to issue further Order on the submitted motions. **This is a text only docket entry, there is no document associated with this notice.** (amkS, COURT STAFF) (Filed on 4/8/2021) (Entered: 04/08/2021) |
| 05/18/2021 | 117 | **Order Granting 101 Administrative Motion to File Under Seal. Signed by Judge Edward J. Davila on 5/16/2021. (ejdlc3S, COURT STAFF) (Filed on 5/18/2021) (Entered: 05/18/2021)** |
| 05/18/2021 | 118 | ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT. Was originally FILED UNDER SEAL by Court Staff. (ejdlc3S, COURT STAFF) (Filed on 5/18/2021) Parties mutually agreed the Order may be UNSEALED and accessible to public. Modified text on 5/27/2021 (amkS, COURT STAFF). (Entered: 05/18/2021) |
| 05/18/2021 | 119 | **Order Granting 97 Administrative Motion to File Under Seal. Signed by Judge Edward J. Davila on 5/18/2021. (ejdlc3S, COURT STAFF) (Filed on 5/18/2021) (Entered: 05/18/2021)** |
| 06/15/2021 | 120 | ADMINISTRATIVE MOTION for Leave to File Additional Motions for Summary Judgment and to Set a Case Management Conference filed by Neo4j Sweden AB, Neo4j, Inc.. Responses due by 6/21/2021. (Attachments: # 1 Declaration of Jeffrey M. Ratinoff, # 2 Proposed Order)(Ratinoff, Jeffrey) (Filed on 6/15/2021) (Entered: 06/15/2021) |
| 06/16/2021 | 121 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by PureThink, LLC, John Mark Suhy, iGov, Inc.. (Appeal fee of $505 receipt number 0971-16081361 paid.) (Beene, Adron) (Filed on 6/16/2021) (Entered: 06/16/2021) |
| 06/16/2021 | 122 | USCA Notice. The schedule is set as follows: To be set. Preliminary Injunction Appeal, C.R. 3-3re 121 Notice of Appeal to the Ninth Circuit (bwS, COURT STAFF) (Filed on 6/16/2021) (Entered: 06/16/2021) |
| 06/21/2021 | 123 | OPPOSITION/RESPONSE (re 120 ADMINISTRATIVE MOTION for Leave to File Additional Motions for Summary Judgment and to Set a Case Management Conference ) filed byPureThink, LLC, John Mark Suhy, iGov, Inc.. (Attachments: # 1 Proposed Order) (Beene, Adron) (Filed on 6/21/2021) (Entered: 06/21/2021) |
| 06/23/2021 | 124 | CLERK'S NOTICE SETTING CASE MANAGEMENT CONFERENCE. Pursuant to this notice, a Case Management Conference is hereby SET for 7/22/2021 at 10:00 AM in San Jose, Courtroom 4, 5th Floor. Joint Case Management Statement due by 7/12/2021. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (kedS, COURT STAFF) (Filed on 6/23/2021) (Entered: 06/23/2021) |
| 07/12/2021 | 125 | JOINT CASE MANAGEMENT STATEMENT *Joint Statement for Subsequent Case Management Conference* filed by Neo4j Sweden AB, Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 7/12/2021) (Entered: 07/12/2021) |
| 07/15/2021 | 126 | **CLERKS NOTICE CONVERTING CASE MANAGEMENT CONFERENCE TO ZOOM WEBINAR. Further Case Management Conference set for 7/22/2021 10:00 AM before Judge Edward J. Davila will be held via a Zoom webinar.**<br><br>**Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/ejd**<br><br>**Court Appearances: Advanced notice is required of counsel or parties who w ish to be identified by the court as making an appearance or will be participating in the** |

|  |  | argument at the hearing. A list of names and emails must be sent to the CRD at ejdcrd@cand.uscourts.gov no later than July 19, 2021 at 2:00 PM PST.

General Order 58. Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.

Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/.

*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (tshS, COURT STAFF) (Filed on 7/15/2021) (Entered: 07/15/2021) |
| 07/16/2021 | 127 | ANSWER TO COUNTERCLAIM 72 Counterclaim *Plaintiff and Counter-Defendant Neo4j, Inc.'s Answer to Defendants PureThink LLC, iGov, Inc. and John Mark Suhy's Second Amended Counterclaim* byNeo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 7/16/2021) (Entered: 07/16/2021) |
| 07/22/2021 | 128 | **Minute Entry for proceedings held before Judge Edward J. Davila.**
**Further Case Management Conference held on 7/22/2021. Counsel are to meet and confer to develop a schedule to propose to the Court. Additionally, counsel to jointly propose an alternate motion and timeline as an alternative to a motion for summary judgment. Proposed schedules to be submitted to the Court within two weeks.**

Attorneys for Plaintiff: Jeffrey Ratinoff, Merton Thompson.
Attorney for Defendant: Adron Beene.
Court Reporter: Irene Rodriguez.
Total Time in Court 22 minutes.

*(This is a text-only entry generated by the court. There is no document associated with this entry.)*
(lmh, COURT STAFF) (Date Filed: 7/22/2021) (Entered: 07/22/2021) |
| 08/03/2021 | 129 | STIPULATION WITH PROPOSED ORDER *for Modification of Case Schedule and Request for Setting of a Case Management Conference* filed by Neo4j Sweden AB, Neo4j, Inc.. (Ratinoff, Jeffrey) (Filed on 8/3/2021) (Entered: 08/03/2021) |
| 08/03/2021 | 130 | **Order granting AS MODIFIED 129 Stipulation re Case Schedule. Signed by Judge Edward J. Davila on 8/3/2021. (ejdlc1S, COURT STAFF) (Filed on 8/3/2021) (Entered: 08/03/2021)** |
| 08/03/2021 |  | ***Set Deadlines/Hearings per ECF 130 Order: Close of Expert Discovery due by 11/18/2022. Close of Fact Discovery due by 8/26/2022. Fact Discovery Motions due by 9/2/2022. Joint Trial Setting Conference Statement due by 7/25/2022. Trial Setting Conference set for 8/4/2022 11:00 AM in San Jose, Courtroom 4, 5th Floor before Judge Edward J. Davila. Dispositive and Daubert Motions due by 1/13/2023. Responses due by 2/10/2023. Replies due by 2/27/2023. Opening Reports due by 9/16/2022. Rebuttal Reports due by 10/17/2022. (amkS, COURT STAFF) (Filed on 8/3/2021) (Entered: 08/04/2021) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/14/2021 15:07:16 | | |
| **PACER** | jahearst:2571226:0 | **Client Code:** |

8/14/2021                                                    CAND-ECF

| Login: | | | |
|---|---|---|---|
| **Description:** | Docket Report | **Search Criteria:** | 5:18-cv-07182-EJD |
| **Billable Pages:** | 14 | **Cost:** | 1.40 |