No. 24-5538

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**NEO4J, INC., et al.,**

*Plaintiff and Appellee,*

v.

**Suhy, et al.**; *Defendant and*

*Appellant.*

---

Appeal From a Judgment of the United States District Court
For the Northern District of California
Hon. Edward J. Davila
United States District Judge
N. D. Cal. No. 5:18-cv-07182 EJD

---

**APPELLANTS' EXCERPT OF RECORD**

**VOL. 14 of 16**

**pp. 2881-2948**

---

John Mark Suhy Jr (Pro Se)
8814 Danewood Dr
Alexandria, VA 22308
jmsuhy@gmail.com
Tel.: (703) 862-7780

# TRIAL EXHIBIT 1012

**From:** "Shahak Nagiel" <shahak.nagiel@nextcentury.com>
**To:** "Brad Nussbaum" <brad@graphfoundation.org>
**Cc:** "Diane Griffith" <diane.griffith@nextcentury.com>; "John Mark Suhy" <jmsuhy@igovsol.com>
**Subject:** Re: Neo4j licensing

Brad-

Thanks again, much appreciated.  We have a conference call scheduled Monday with our counsel.

Have a good weekend.

-Shahak

Get Outlook for Android

---

**From:** Brad Nussbaum <brad@graphfoundation.org>
**Sent:** Friday, February 22, 2019 3:20:16 PM
**To:** Shahak Nagiel
**Cc:** Diane Griffith; John Mark Suhy
**Subject:** Re: Neo4j licensing
We have been advised by The Free Software Foundation in a non-legal capacity and have verified with our legal counsel independently that the Commons Clause is a
"further restriction" to AGPLv3 and may be removed according to this clause of AGPLv3

> All other non-permissive additional terms are considered "further
> restrictions" within the meaning of section 10.  If the Program as you
> received it, or any part of it, contains a notice stating that it is
> governed by this License along with a term that is a further restriction,
> you may remove that term.

and in Section 10:

> You may not impose any further restrictions on the exercise of the
> rights granted or affirmed under this License.

We cannot give legal advise on this matter and you should seek legal counsel.

Best,
Brad

> On Feb 20, 2019, at 08:56, Shahak Nagiel < shahak.nagiel@nextcentury.com > wrote:
>
> Sorry, my language may have been unclear.  For (b), I meant a federal *contractor* developing custom software incorporating ONgdB as part of the
> solution for the agency.  In such a case, the "sell" part of the Commons Clause may be triggered...although if the solution itself is delivered as open-
> source, then maybe that's mitigated?  (Forgive the ramblings of a non-lawyer...)
>
> One thing I observe is that the ONgDB site does not seem to explicitly spell out what the license terms are?  There are a few lines in the README file on
> the github project, though even there it's potentially ambiguous, as it mentions AGPL for the enterprise features but does not mention the Commons
> Clause.

> ○
>     **Shahak Nagiel**
>     Principal Engineer
>     w (240) 297-5089 | c (413) 274-2425
>     shahak.nagiel@nextcentury.com
>     ᵔᴗᵔᴗᵔ

> 2701 Technology Drive, Suite 300 | Annapolis Junction, MD 20701
> main: 443.545.3100 | fax: 240.456.0010 | www.nextcentury.com

> ○

> CONFIDENTIALITY NOTICE: Th s message  s  ntended only for the use of the  nd v dual or to wh ch  t s addressed, and may conta n  nformat on that  s pr v leged, conf dent al and exempt from d sclosure u nder appl cable law. If
> you are not the  ntended rec p ent, or the employee or agent respons ble to the  ntended rec p ent, please be adv sed that any d sclosure, copy ng, d str but on, or tak ng of act on based on the contents of th s message  s proh b ted.
> If you have rece ved th s transm ss on  n error, please not fy the sender  mmed ately.

**From:** Brad Nussbaum < brad@graphfoundation.org >
**Sent:** Wednesday, February 20, 2019 8:41 AM
**To:** Shahak Nagiel
**Cc:** Diane Griffith; John Mark Suhy
**Subject:** Re: Neo4j licensing
There is no difference between (a) and (b). Both are acceptable.

Best,
Brad

> On Feb 19, 2019, at 17:07, Shahak Nagiel < shahak.nagiel@nextcentury.com > wrote:
>
> Thanks, Brad.  This is very helpful.  We've got an internal meeting to discuss this in the next couple of days, and I will be referencing this
> thread and your offer.  I will also raise the possibility of Next Century offering to sponsor or support some of ONgDB's efforts, though
> obviously I can't make any commitments in that regard.
>
> And, not to put too fine a point on it, but is there a difference between:
> (a) a government agency *using* the ONgDB distributions (presuming it developed it directly without contractors), and
> (b) a company (like Next Century or iGov) *developing a software system around ONgDB* ?
>
> Regards,
> Shahak

> ○
>     **Shahak Nagiel**
>     Principal Engineer
>     w (240) 297-5089 | c (413) 274-2425
>     shahak.nagiel@nextcentury.com
>     ᵔᴗᵔᴗᵔ

> 2701 Technology Drive, Suite 300 | Annapolis Junction, MD 20701
> main: 443.545.3100 | fax: 240.456.0010 | www.nextcentury.com

○

CONFIDENTIALITY NOTICE: Th s message  s  ntended only for the use of the  nd v dual or to wh ch  t  s addressed, and may conta n  nformat on that  s pr v leged, conf dent al and exempt from d sclosure u nder appl cable law. If you are not the  ntended rec p ent, or the employee or agent respons ble to the  ntended rec p ent, please be adv sed that any d sclosure, copy ng, d str but on, or tak ng of act on based on the contents of th s message  s proh b ted. If you have rece ved th s transm ss on n error, please not fy the sender  mmed ately.

**From:** Brad Nussbaum < brad@graphfoundation.org >
**Sent:** Tuesday, February 19, 2019 3:57 PM
**To:** Shahak Nagiel
**Cc:** Diane Griffith; John Mark Suhy
**Subject:** Re: Neo4j licensing

It was an internal review so there isn't a document that can be distributed. We are conducting a similar process with other agencies. If you connect us with parties heading up your evaluation then we can go through a similar process with them.

Best,
Brad

> On Feb 19, 2019, at 15:04, Shahak Nagiel < shahak.nagiel@nextcentury.com > wrote:
>
> Aha!
>
> Any chance I could get a copy of that?  (Or, any chance we could get our govies to request it through more official channels?)

○

Shahak Nagiel
Principal Engineer
w (240) 297-5089 | c (413) 274-2425
shahak.nagiel@nextcentury.com
∟□□□□

2701 Technology Drive, Suite 300 | Annapolis Junction, MD 20701
main: 443.545.3100 | fax: 240.456.0010 | www.nextcentury.com

○

CONFIDENTIALITY NOTICE: Th s message  s  ntended only for the use of the  nd v dual or to wh ch  t  s addressed, and may conta n  nformat on that  s pr v leged, conf dent al and exempt from d sclosure u nder appl cable law. If you are not the  ntended rec p ent, or the employee or agent respons ble to the  ntended rec p ent, please be adv sed that any d sclosure, copy ng, d str but on, or tak ng of act on based on the contents of th s message  s proh b ted. If you have rece ved th s transm ss on n error, please not fy the sender  mmed ately.

**From:** Brad Nussbaum < brad@graphfoundation.org >
**Sent:** Tuesday, February 19, 2019 3:00 PM
**To:** Shahak Nagiel
**Cc:** Diane Griffith; John Mark Suhy
**Subject:** Re: Neo4j licensing

ONgDB is currently in use at US Treasury (IRS). Their legal counsel conducted a thorough evaluation of the licensing situation and arrived at the conclusion that Graph Foundation distributions of ONgDB could be used without needing a Neo4j, Inc. license.

Best,
Brad

> On Feb 19, 2019, at 11:37, Shahak Nagiel < shahak.nagiel@nextcentury.com > wrote:
>
> perspective, which defends their use of both AGPL and the Commons Clause).  Are there any other sources of information / guidance in this respect?  e.g. have any independent or gove

# TRIAL EXHIBIT 1101

**From:** Shahak Nagiel [shahak.nagiel@nextcentury.com] on behalf of Shahak Nagiel
<shahak.nagiel@nextcentury.com> [shahak.nagiel@nextcentury.com]
**Sent:** Tuesday, February 19, 2019 8:38 AM
**To:** Brad Nussbaum [brad@graphfoundation.org]
**CC:** Diane Griffith [diane.griffith@nextcentury.com]; John Mark Suhy [jmsuhy@igovsol.com]
**Subject:** Re: Neo4j licensing

Thanks for your perspective, and I did run across this Github thread (which John was involved in) that seems to discuss this issue.  However, there does not seem to be a resolution there (certainly not from the Neo4j perspective, which defends their use of both AGPL and the Commons Clause).  Are there any other sources of information / guidance in this respect?  e.g. have any independent or government legal authorities weighed in on this to your knowledge?

**Shahak Nagiel**
Principal Engineer
w (240) 297-5089 | c (413) 274-2425
shahak.nagiel@nextcentury.com

2701 Technology Drive, Suite 300 | Annapolis Junction, MD 20701
main: 443.545.3100 | fax: 240.456.0010 | www.nextcentury.com

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual or to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible to the intended recipient, please be advised that any disclosure, copying, distribution, or taking of action based on the contents of this message is prohibited. If you have received this transmission in error, please notify the sender immediately.

**From:** Brad Nussbaum <brad@graphfoundation.org>
**Sent:** Tuesday, February 19, 2019 11:21 AM
**To:** Shahak Nagiel
**Cc:** Diane Griffith; John Mark Suhy
**Subject:** Re: Neo4j licensing

The Free Software foundation, which owns rights to AGPLv3 license and its use, reviewed the Commons Clause that had been added and determined that it was not valid. AGPLv3 has clauses preventing additional clauses from being added and still licensing under the AGPLv3 license.

Best,
Brad

On Feb 19, 2019, at 10:46, Shahak Nagiel <shahak.nagiel@nextcentury.com>
wrote:

Hi Brad,

Nice to meet you as well.  Could you please elaborate on this sentence:

> *And when Neo4j, Inc. realized that the additional Commons*
> *Clause didn't prevent usage of enterprise features, it made the*
> *ultimate decision to remove all enterprise modules...*

Neo4j sales guys actually contacted us recently specifically about the Commons
Clause modifier to the AGPLv3 license, pointing out that we may be in violation of it (if
we are using open-sourced builds of their software--including, by extension,
ONgDB).  What is this realization you are referring to?

Appreciate your time.

**Shahak Nagiel**
Principal Engineer
w (240) 297-5089 | c (413) 274-2425
shahak.nagiel@nextcentury.com

2701 Technology Drive, Suite 300 | Annapolis Junction, MD 20701
main: 443.545.3100 | fax: 240.456.0010 | www.nextcentury.com

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual or to which it is addressed,
and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If
you are not the intended recipient, or the employee or agent responsible to the intended recipient, please be
advised that any disclosure, copying, distribution, or taking of action based on the contents of this message is
prohibited. If you have received this transmission in error, please notify the sender immediately.

**From:** Brad Nussbaum <brad@graphfoundation.org>
**Sent:** Tuesday, February 19, 2019 9:07 AM
**To:** Shahak Nagiel
**Cc:** Diane Griffith; John Mark Suhy
**Subject:** Re: Neo4j licensing

Hi Shahak,

Nice to e-meet you.

Our intent is to move ONgDB forward in a fully open source manner governed by The Graph
Foundation (non-profit). ONgDB 3.5 restores the Neo4j Enterprise source code that was removed

by Neo4j, Inc. from https://github.com/neo4j/neo4j and continues development forward from there. Legacy Neo4j, Inc. contributions will continue to be licensed under AGPLv3 and net new Graph Foundation contributions will adopt a more open license structure. We are considering options right now from the community and would like to see the project eventually move fully to Apache2.

Our repo (https://github.com/graphfoundation/ongdb/) has all the enterprise capabilities in 3.5. You can find access to new distributions on the foundation site at https://www.graphfoundation.org/projects/ongdb/.

You can read more about Neo4j, Inc.'s recent changes and the full Graph Foundation response here: https://www.graphfoundation.org/neo4j-is-open-core-now-what-ujah7ein5mis/

Best,
Brad

On Feb 19, 2019, at 08:48, John Mark Suhy <jmsuhy@igovsol.com> wrote:

I wanted to introduce you to Brad Nussbaum from the Graph Foundation.

He can tell you more about the high level goals and plans around ONgDB and answer any specific questions as well relating to ONgDB.

I cc'd him on this thread.

Have a good day,

John Mark

On Mon, Feb 18, 2019 at 8:01 PM Shahak Nagiel <shahak.nagiel@nextcentury.com> wrote:

No concerns on my part; I'm just trying to understand the plans and the implications for the future. So will the Community portion of the codebase be merged from the neo4j repo for every release?

Thanks, and good evening.

Get Outlook for Android

---

**From:** John Mark Suhy <jmsuhy@igovsol.com>
**Sent:** Monday, February 18, 2019 7:41:07 PM
**To:** Shahak Nagiel
**Cc:** Diane Griffith
**Subject:** Re: Neo4j licensing

Yes - the graph foundation will be managing the enterprise features moving forward.

If you are using ONgDB and have any concerns, or don't see it keeping up with enterprise features, you can always switch to a commercial Neo4j Enterprise package through any partner on the Neo4j.com website.

On Mon, Feb 18, 2019 at 7:37 PM Shahak Nagiel
<shahak.nagiel@nextcentury.com> wrote:

Thanks, John. That helps, but this basically means that all
enterprise changes moving forward (big fixes and new features
alike) are completely forked off from Neo4j proper, right? Any
concerns about long-term consistency/parity/maintainability?

Get Outlook for Android

---

**From:** John Mark Suhy <jmsuhy@igovsol.com>
**Sent:** Monday, February 18, 2019 7:29:00 PM
**To:** Shahak Nagiel
**Cc:** Diane Griffith
**Subject:** Re: Neo4j licensing

Check out this issue - It may help you with your question.

https://github.com/graphfoundation/ongdb/issues/3

On Mon, Feb 18, 2019 at 6:33 PM Shahak Nagiel
<shahak.nagiel@nextcentury.com> wrote:

Hi John,

I presume you're aware that, as of the 3.5 branch in github, Neo4j
seems to have close-sourced the entire enterprise/
directory. (Here's one commit that was related.)

What's your take on this? Where does this leave ONgDB moving
forward?

Regards,
Shahak

**Shahak Nagiel**
Principal Engineer
w (240) 297-5089 | c (413) 274-2425
shahak.nagiel@nextcentury.com

2701 Technology Drive, Suite 300 | Annapolis Junction, MD 20701
main: 443.545.3100 | fax: 240.456.0010 | www.nextcentury.com

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual
or to which it is addressed, and may contain information that is privileged, confidential
and exempt from disclosure under applicable law. If you are not the intended recipient,
or the employee or agent responsible to the intended recipient, please be advised that
any disclosure, copying, distribution, or taking of action based on the contents of
this message is prohibited. If you have received this transmission in error, please notify
the sender immediately.

**From:** John Mark Suhy <jmsuhy@igovsol.com>
**Sent:** Monday, October 22, 2018 9:50 PM
**To:** Shahak Nagiel
**Cc:** Diane Griffith
**Subject:** Re: Neo4j licensing

Good evening,

The 'closed source components'  referenced actually do have the related
source code in the git repositories.  Neo4j Inc removed the code from the
current branches but they were still in the history.

We actually package these feature's source code back into the open source
distributions.  Turning features such as causal clustering encryption back on.
See:  https://github.com/GraphFoundation/neo4j-oe

Also, you can read the following post to understand more about what they
have done.
See:  https://blog.igovsol.com/2017/11/14/Neo4j-330-is-out-but-where-are-
the-open-source-enterprise-binaries.html

These are just some of the reasons brand name justification for Neo4j
Enterprise commercial packages is hard to support.  Not to mention the US
Treasury has now adopted ONgDB Enterprise  -  which is the same code
base, with just a different name and removal of the commons clause.

Even more, a side by side comparison of the commercial and open source
enterprise distributions don't give an advantage from a technical perspective
to the commercial side because they have the same feature parity as they
come from the same core code base.

In fact the open source distributions have no limits on the number of cluster
instances, cores, etc - not to mention they are 100% free.

Usually which one you go with falls to the cost of production support.   From a
past performance perspective, the open source distributions are actually in
production in the Federal government and there are companies such as us ,
AtomRain, GraphGrid, etc all have past performance providing production
support for federal agencies for Neo4j Enterprise open source licenses.

One thing you will find in your research is that Neo4j partners are not allowed
to promote or support the open source licenses, and furthermore , Neo4j Inc
usually assigns a single partner to a specific deal, so from the commercial
perspective, you actually have less options.

I would be happy to connect you with the US Treasury team we work with
who are some of the original teams who moved to the open source enterprise
distributions of Neo4j.    They have met with other agencies in the past to
share their experience.

Feel free to call me anytime if you have more questions.


John Mark Suhy
iGov Inc
jmsuhy@igovsol.com
703-862-7780
https://igovsol.com


On Mon, Oct 22, 2018 at 8:50 PM Shahak Nagiel
<shahak.nagiel@nextcentury.com> wrote:
> Hi John,

I am trying to better understand the licensing nuances of Neo4j
Enterprise Edition, and came across some posts you made on
StackOverflow.

Neo4j's github repo includes this at the bottom in the License
section (emphasis mine):

> Neo4j Enterprise consists of modules from Neo4j
> Community Edition and modules licensed under AGPLv3
> with the Commons Clause in this repository, **and other
> closed source components not present in this
> repository**.

> When packaged as a binary, Enterprise Edition includes
> additional closed-source components *not available in
> this repository* and requires a commercial license from
> Neo4j Sweden AB or one of its affiliates.


I'm curious whether you're familiar with what this means (i.e.
what's excluded), especially given that one of the sub-
modules seems to be the Enterprise bundle?



Shahak Nagiel
Principal Engineer
w (240) 297-5089 | c (413) 274-2425
shahak.nagiel@nextcentury.com

2701 Technology Drive, Suite 300 | Annapolis Junction, MD 20701
main: 443.545.3100 | fax: 240.456.0010 | www.nextcentury.com

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual
or to which it is addressed, and may contain information that is privileged, confidential
and exempt from disclosure under applicable law. If you are not the intended recipient,
or the employee or agent responsible to the intended recipient, please be advised that
any disclosure, copying, distribution, or taking of action based on the contents of
this message is prohibited. If you have received this transmission in error, please notify
the sender immediately.

--
John Mark Suhy
iGov Inc
jmsuhy@igovsol.com
703-862-7780
https://igovsol.com

1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6                          SAN JOSE DIVISION

7

8   NEO4J, INC., et al.,                    Case No.  5:18-cv-07182-EJD

9                    Plaintiffs,

10        v.                                 **FINDINGS OF FACT AND**
                                            **CONCLUSIONS OF LAW**
11  PURETHINK, LLC, et al.,

12                   Defendants.

13          Plaintiffs Neo4j, Inc. ("Neo4j USA") and Neo4j Sweden AB ("Neo4j Sweden")

14  (collectively, "Plaintiffs") brought the present lawsuit against Defendants PureThink LLC

15  ("PureThink"), iGov Inc. ("iGov"), and John Mark Suhy ("Suhy") (collectively, "Defendants")

16  alleging claims under the Lanham Act and the Digital Millennium Copyright Act ("DMCA"),

17  among other claims, related to Plaintiffs' proprietary software.  Third Am. Compl., ECF No. 90.

18          The Court previously found Defendants liable as to Neo4j USA's first, second, third, and

19  fourth Lanham Act and unfair competition claims.  Order Granting Mot. for Partial Summ. J; Den.

20  Cross-Mot. for Summ. J. ("First MSJ Order"), ECF No. 118.  The Court also found Defendants

21  liable as to Neo4j Sweden's eighth cause of action for violation of the DMCA.  Order Granting

22  Mot. to Strike Expert Report and Exclude Expert Testimony; Granting Mot. for Partial Summ. J.

23  ("Second MSJ Order"), ECF No. 216.  The only issue remaining before the Court is damages.

24          The Court held a bench trial on November 14, 2023, and November 28, 2023, and heard

25  oral arguments and evidence presented by both Parties.  ECF Nos. 225, 229.  The Court also

26  received pre-trial and post-trial submissions of the Parties' proposed findings of fact and

27  conclusions of law.  *See* Pls.' Proposed Findings of Fact and Conclusions of Law ("Pls.' FFCL"),

28  Case No.: 5:18-cv-07182-EJD
    FINDINGS OF FACT AND CONCLUSIONS OF LAW

*United States District Court*
*Northern District of California*

1    ECF No. 238; Defs.' Proposed Findings of Fact and Conclusions of Law ("Defs.' FFCL"), ECF

2    No. 237.

3              Having considered the Parties' submissions and evidence, the Court makes the following

4    findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).[1]

5    **I.      FINDINGS OF FACT**

6              The Court finds the following facts based on factual findings from the Court's two prior

7    summary judgment orders, facts stipulated to by the Parties, and all other relevant evidence in the

8    record.

9              **A.      The Parties**

10             1.      Plaintiff Neo4j USA is a corporation specializing in graph database management

11   systems.  First MSJ Order 2.  Plaintiff Neo4j Sweden is a wholly owned subsidiary of Neo4j USA

12   and owns all copyrights relating to the Neo4j graph database platform, including the source code.

13   *Id.*

14             2.      Defendant Suhy is the founder and sole employee, member, and manager of

15   Defendant PureThink, which is a single person limited liability software and information

16   technology consulting company specializing in supporting agencies within the U.S. Government

17   that use Neo4j graph database software.  Stip. of Undisputed Facts for Trial ("Undisputed Facts")

18   ¶ 15, ECF No. 227.  Suhy also formed Defendant iGov, a software development and consulting

19   company, to offer paid support services for open source Neo4j software to the IRS and other

20   government agencies.  First MSJ Order 4.

21             **B.      The Neo4j Platforms**

22             3.      Neo4j USA originally offered a free and open-source version of the Neo4j platform

23   known as the Neo4j Community Edition ("Neo4j CE") under the GNU General Public License

24   version 3 ("GPL") license.  Undisputed Facts ¶ 5.  The Neo4j CE source code was available to the

25

26   _____

27   [1] Any findings of fact that constitute conclusions of law shall be deemed to have been found by
     the Court as a matter of law.  Likewise, any conclusions of law that constitute findings of fact
     shall be deemed to have been found by the Court as a matter of fact.

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                              2

United States District Court
Northern District of California

1    public on GitHub pursuant to the GPL.  First MSJ Order 3.  Neo4j CE is limited in its feature set

2    and does not come with technical or administrative support.  Undisputed Facts ¶ 5.  Neo4j CE under

3    the GPL license remains publicly available and free.  *See id.* ¶ 12.

4        4.    Neo4j USA also offered a more advanced commercial version which included

5    additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j EE").

6    Undisputed Facts ¶ 6.  Neo4j EE was originally offered under both a paid-for commercial license

7    and the free GNU Affero General Public License ("APGL").  *Id.*

8        5.    In May 2018, Neo4j USA released Neo4j EE version ("v") 3.4, which they

9    continued to offer under an open-source license; however, they replaced the AGPL with a stricter

10   license, which included additional restrictions provided by the new Commons Clause.  First MSJ

11   Order 3.  The Commons Clause prohibited the non-paying public from engaging in commercial

12   resale and certain commercial support services.  *Id.*  This stricter license is referred to as the

13   "Neo4j Sweden Software License."  *Id.*

14       6.    In November 2018, Neo4j USA released Neo4j EE v3.5 under a commercial

15   license only.  Undisputed Facts ¶ 11.  Moving forward, Plaintiffs were no longer publishing open

16   source code for new versions of Neo4j EE.  First MSJ Order 3.

17       **C.    Former Partnership Agreement Between the Parties**

18       7.    In 2014, PureThink and Neo4j USA entered into the Neo Technologies Solution

19   Partner Agreement ("Partnership Agreement").  Undisputed Facts ¶ 17.  In conjunction with its

20   business, Neo4j USA owns several federally registered trademarks, including the word mark

21   "NEO4J" ("Neo4j Mark").  First MSJ Order 2.  Under the Partnership Agreement, PureThink had

22   a non-exclusive, non-transferable limited license to use the Neo4j Mark solely to market and resell

23   commercial licenses to Neo4j EE and related support services in exchange for shared revenue for

24   the licenses that it resold.  *Id.* at 3.

25       8.    In the hopes of increased sales, PureThink developed the Neo4j Government

26   Edition ("Gov't Edition"), which was a package designed to use Neo4j EE to streamline the

27   government's procurements.  *Id.* at 4.

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                              3

United States District Court
Northern District of California

9. After a dispute concerning Suhy's use, distribution, and marketing of Neo4j's open source products, rather than the commercial products, and his marketing of consulting services focused on those products to the Internal Revenue Services ("IRS"), Neo4j USA terminated the Partnership Agreement on July 11, 2017. *Id.* at 4. Neo4j USA demanded that PureThink no longer use Neo4j's trademarks, service marks, and other designations, as well as remove marketing materials and Neo4j's trademarks and tradenames from PureThink's website. *Id.*

10. Suhy incorporated iGov to continue supporting open source Neo4j software without being bound by restrictions in the Partnership Agreement, which he believed to be unlawful. *Id.*

**D. Defendants' Conduct Following the Partnership Agreement Termination**

11. Suhy and iGov continued marketing the Gov't Edition and using the Neo4j Mark after the Partnership Agreement was terminated. First MSJ Order 4. For example, the iGov website used "https://igovsol.com/neo4j.html" as a URL to promote "Government Development Packages for Neo4j"; displayed a "Request Procurement Document Package" link with "mailto:neo4j@igovsol.com" embedded that creates an email addressed thereto upon activation; encouraged consumers to obtain more information by sending an email to "neo4j@igovsol.com"; and used "Government Packages for Neo4j" and "Neo4j Enterprise" to describe iGov's modified version of the Neo4j EE software. *Id.* at 5.

12. After Plaintiffs released Neo4j EE v3.4—which replaced the AGPL with the Neo4j Sweden Software License—Suhy helped form Graph Foundation, Inc. ("the Graph Foundation").[2] First MSJ Order 6.

13. The Graph Foundation began promoting a software called ONgDB, which it referred to as "free and open source." First MSJ Order 6. Suhy created ONgDB using Neo4j EE v3.4 as a base, which was subject to the Neo4j Sweden Software License, but he removed the stricter Neo4j Sweden Software License and replaced it with the AGPL. *Id.*; Am. Dep.

---

[2] The Graph Foundation is not a defendant in this matter.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
4

1   Designations, Ex. 2, Dep. of John Mark Suhy ("Suhy Dep.") 171:23–172:23, ECF No. 226.  Doing

2   so removed certain legal notices identifying Neo4j Sweden as the copyright holder and licensor

3   and removed the Commons Clause, effectively allowing Defendants to commercially use and

4   support ONgDB.  First MSJ Order 6.  Suhy testified that he believed he was permitted to remove

5   the Commons Clause based on his research of existing case law, research of other companies who

6   had removed similar information, and consultations with the Graph Foundation and the IRS. [3]

7   Suhy Dep. 196:22–199:21; Trial Tr. Vol. II 328:9–19, ECF No. 233; Trial Ex. 1012, ECF No.

8   242-38.

9        14.     Following the creation of ONgDB, Suhy provided hyperlinks to potential users of

10  Neo4j EE to view and download ONgDB from the Graph Foundation's website and GitHub

11  repository using his iGov and PureThink email addresses.  Undisputed Facts ¶¶ 42, 43.  iGov's

12  website also provided links to potential users of Neo4j EE to download ONgDB directly from

13  iGov and from the Graph Foundation's website.  *Id.* ¶¶ 44, 45.  The "landing page" for ONgDB on

14  GitHub was very similar to that of Neo4j EE.  First MSJ Order 7.  It was titled "ONgDB – Neo4j

15  Enterprise Fork: Graphs for Everyone," and contained numerous references to Neo4j throughout.

16  *Id.*

17       15.     Defendants also made a series of representations regarding ONgDB, including

18  communicating to potential customers that ONgDB v3.5 was "100% free and open" with no

19  limitations or restrictions imposed by the Neo4j EE v3.5 commercial license.  First MSJ Order 7.

20  iGov also promoted ONgDB and asserted that "ONgDB is a drop in replacement for the Neo4j

21  Community and Enterprise branded distributions."  *Id.*  Defendants have made similar statements

22  directly to potential customers, such as characterizing ONgDB as a "100% open source and a drop

23

24  ──────────────────────

[3] Plaintiffs argue that Suhy's statement regarding consulting the IRS is contradicted by the IRS
25  representative's deposition. Pls.' FFCL 9 n.2.  However, Suhy specifically stated that he
    discussed his ability to *remove* the Commons Clause with the IRS, whereas, in the section cited
26  by Plaintiffs, the IRS representative testified that he did not know of any conversation with Suhy
    regarding Neo4j USA's ability to *add* the Commons Clause.  *Compare* Trial Tr. Vol. II 328:9–19,
27  *with* Dep. Designations, Ex. 5, Dep. of Internal Revenue Service Through its Designee Michael C.
    Dunn ("Dunn Dep.") 97:17–98:21, ECF No. 210.

28  Case No.: 5:18-cv-07182-EJD
    FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                        5

United States District Court
Northern District of California

1    in replacement for the same Neo4j version." *Id.*

2        16.    Relying on these and other facts, the Court made three findings relevant to the

3    present Findings of Fact and Conclusions of Law.

4        17.    First, the Court found that the following conduct constituted trademark

5    infringement: (1) extensively using "Neo4j' and "Neo4j Enterprise" on iGov and PureThink

6    websites without proper trademark notices; (2) using embedded "Neo4j" links to Neo4j USA's

7    website and GitHub repository on their websites; (3) hyperlinking to Plaintiffs' build instructions,

8    support documentation and change logs containing the Neo4j Mark rather than creating and

9    hosting their own with the ONgDB name; and (4) using of "Neo4j Enterprise" and "ONgDB"

10   interchangeably to promote ONgDB on their websites.  First MSJ Order 21.  The Court found that

11   Defendants were not using "Neo4j" to refer to Plaintiffs' products; they were using it to create the

12   misleading perception that Defendants' products were Plaintiffs' products.  *Id.* at 20.

13       18.    Second, the Court found that Defendants' claims that ONgDB was a "drop-in

14   replacement" or "open source" constituted false advertising and false designation of origin.  *Id.* at

15   28–32.

16       19.    Third, the Court found that Suhy's removal of the copyright management

17   information ("CMI"), that is, the removal of the Commons Clause and replacement of the Neo4j

18   Sweden Software license with a generic open source APGL license, violated the DMCA.  Second

19   MSJ Order 23.

20       **E.    Damages**

21       20.    Given that the Court has determined liability, the only issue remaining is damages.

22   Central to Plaintiffs' claims for damages are offers made to, and rejected by, (1) the Maryland

23   Procurement Office ("MPO"), and (2) the IRS.

24           **1.    MPO**

25       21.    The MPO, on behalf of the National Security Agency ("NSA"), tasked third party

26   company Next Century to analyze available graph database technologies for a project referred to

27   as the "KMS Project."  Stip. to the Amount of Pls.' Lost Profits and Defs.' Profits ("Stip. to

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                6

United States District Court
Northern District of California

1   Amount") ¶¶ 1, 8, ECF No. 234.  The KMS Project was essentially a continuation of prior projects

2   where the MPO had similarly tasked Next Century with analyzing available graph database

3   technologies, including projects referred to as "Task Order 39" and "Blue Rocket Task Order 50."

4   Dep. Designations, Ex. 4, Dep. of Jim Weyant as a Representative of CACI International, Inc.

5   ("Weyant Dep.") 92:23–94:12, 96:4–11, 103:21–104:3, 108:2–19, ECF No. 210.

6           22.      Next Century was looking for enterprise-only features, such as causal clustering

7   and multi-data centers, which were offered by both Neo4j EE and ONgDB.  Stip. to Amount ¶ 2.

8           23.      In June 2018, Next Century sought information from Neo4j USA regarding certain

9   Neo4j EE features, including causal clustering.  Trial Ex. 103, ECF No. 241-27.  In response,

10   Neo4j USA confirmed those features required a commercial subscription for Neo4j EE, and the

11   pricing for it was based on the number of servers in the cluster, cores per server, and RAM per

12   server.  *Id.*  Neo4j USA informed Next Century that their prices started at $111,000 per year for a

13   3-server cluster with standard support.  *Id.*  This price rose to $199,000, by April 2019.  Trial Ex.

14   17, ECF No. 239-4.

15           24.      Next Century obtained additional information about the pricing of Neo4j USA's

16   Neo4j EE software bundles from iGov's website and learned that iGov offered the same software

17   for free under the AGPL bundled with iGov's consulting services.  Stip. to Amount ¶ 3.

18           25.      In October 2018, Next Century exchanged emails with Suhy regarding

19   representations made on iGov's website that ONgDB was an open source version of Neo4j EE that

20   provided the same enterprise-only features for free.  *Id.* ¶ 4.

21           26.      Suhy told Next Century that they could use ONgDB under the AGPL without

22   restrictions or paying Plaintiffs for a commercial license, as advertised on the iGov's website.

23   Undisputed Facts ¶ 114.

24           27.      As a result of Next Century's communications with Suhy, Next Century

25   downloaded ONgDB v3.4 and began evaluating it against Neo4j EE v3.4.  *Id.* ¶ 15.

26           28.      In a series of emails with Next Century ending on January 4, 2019, Suhy confirmed

27   that ONgDB v3.5 would have feature parity with the enterprise features of Neo4j EE v3.5 and

28   Case No.: 5:18-cv-07182-EJD

United States District Court
Northern District of California

FINDINGS OF FACT AND CONCLUSIONS OF LAW

7

United States District Court
Northern District of California

1  would also be available without restrictions on the number of clusters, instances, and cores, and

2  without paying Neo4j USA for a commercial license.  *Id.* ¶ 16.  This led Next Century to upgrade

3  from ONgDB v3.4 to ONgDB v3.5 for use in the KMS Project.  *Id.*

4        29.     By February 2019, the MPO had chosen to use ONgDB v3.5 over Neo4j EE v3.5

5  for continued development work for the KMS Project.  *Id.* ¶ 117.  On February 5, 2019, Next

6  Century informed Neo4j USA of this decision, stating, "[w]e have found that open-sourced (non-

7  commercial) builds from the Neo4j source code provide the clustering and security requirements

8  needed in our environment."  *Id.* ¶ 118.

9        30.     However, Next Century was still researching other graph databases, including

10  Neo4j EE.  Weyant Dep. 92:19–25.  Next Century and Neo4j USA continued their discussions,

11  and in March 2019, Next Century gave Neo4j USA the required specifications for its ongoing

12  KMS Project and asked Neo4j USA to provide a quote for use in a production environment.  Trial

13  Ex. 116, ECF No. 241-40.  Although Next Century cautioned that they did not "have a firm grasp

14  on what the (eventual) production posture will be," Next Century provided Neo4j with some

15  information "for now."  Trial Ex. 116.

16        31.     On April 19, 2019, Neo4j USA sent a 3-year Neo4j EE Enterprise Bundle offer

17  based on those requirements ("April 2019 Offer").  Trial Ex. 118, ECF No. 241-42.  Under this

18  proposal, Next Century and the MPO had the option to (a) purchase three one-year subscriptions

19  on an incremental basis for a total of $2,667,000; or (b) purchase a 3-year subscription for a total

20  of $2,266,950, which reflects a 15% multi-year, paid up front discount.  *Id.*

21        32.     On April 29, 2019, Next Century confirmed that it shared Neo4j USA's proposal

22  with the MPO and was instructed by the MPO to continue using ONgDB.  Trial Ex. 119, ECF No.

23  241-43.

24        33.     A few months later, as a follow up to a meeting between Neo4j USA and Next

25  Century that occurred in May 2019, Neo4j USA emailed Next Century stating that they were

26  prepared to offer "a more robust capability that provides the same SLA as your Neo4j CE based

27  solution for a much lower price point than what we originally proposed based on your initial stated

28  Case No.: 5:18-cv-07182-EJD

FINDINGS OF FACT AND CONCLUSIONS OF LAW

8

United States District Court
Northern District of California

1   requirements." Trial Ex. 120, ECF No. 241-44.

2       34.    That same day, Next Century informed Neo4j USA that the MPO was not

3   interested in the Neo4j EE proposal for the KMS project. *Id.* The reason for the MPO continuing

4   to use ONgDB over Neo4j EE was price. *Id.*; Stip. to Amount ¶ 101.

5       35.    The project immediately following the expiration of the KMS Project, referred to as

6   "Route 66," continued on to deploy an ONgDB-based solution, and the subcontracts and renewals

7   that followed continued deploying ONgDB-based solutions until as recently as October 2022.

8   Weyant Dep. 116:25–117:5, 126:12–127:23.

9       36.    While the MPO declined Neo4j USA's offer in this instance, MPO has purchased

10   six other one-year commercial licenses from Neo4j USA between 2014 and 2022, which ranged

11   from $9,300 to $248,310, as well as one two-year commercial license for $66,249. Trial Ex. 15, at

12   lines 337–43, ECF No. 240.

13       37.    The Parties stipulated to the calculations as to the profits Neo4j USA would have

14   generated had the MPO accepted their April 2019 Offer as written, which range from $1,786,542

15   to $2,370,598. Stip. to Amount ¶¶ 21–24.

16           **2.**    **IRS**

17       38.    In April 2018, Suhy submitted a bid for a new contract issued by the IRS for a

18   project referred to as the "CKGE Project" on behalf of eGovernment Solutions, Inc. ("eGov"),

19   another entity that he had an ownership interest in at the time.[4] Under Suhy's proposal, eGov

20   would perform "all operations and maintenance duties for all components of the CKGE

21   framework," including working with Neo4j components. Trial Ex. 181, ECF No. 242-5;

22   Undisputed Facts ¶¶ 61, 62.

23       39.    In May 2018, the IRS publicly posted an intent to award the sole source contract

24   for the CKGE Project to eGov. Trial Tr. Vol. I 79:20–23, ECF No. 231. Under this contract,

25   eGov would perform all operations and maintenance duties for all components of the CKGE

26

27      ——————————
[4] eGov is not a Defendant in this matter.

28   Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
9

framework.  Trial Ex. 124, ECF No. 241-48.  At that time, the CKGE Project had been using the publicly available Neo4j EE v3.2.  Dep. Designations, Ex. 5, Dep. of Internal Revenue Service Through its Designee Michael C. Dunn ("Dunn Dep.") 99:3–100:10, ECF No. 210.

40.    Neo4j USA saw this public post and emailed the IRS on May 22, 2018.  Trial Ex. 126, ECF No. 241-50; Trial Tr. Vol. I 79:20–82:8.  Neo4j USA believed that the CKGE Project would require Neo4j EE v3.4, so they contacted the IRS to inform them of the licensing changes to the Neo4j EE v3.4, namely the addition of the Commons Clause, and encourage them to purchase a commercial license and support services for that license from Neo4j USA.  Trial Tr. Vol. I 81:22–82:8. That same day, Suhy sent an email to the IRS opining that Neo4j Sweden could not lawfully add the Commons Clause to the license governing Neo4j EE v3.4.  Trial Ex. 128, ECF No. 241-52.  The IRS subsequently declined the invitation to purchase the Neo4j EE v3.4 license, informing Neo4j USA that their budget was "extraordinarily limited in all avenues," and they would be sticking with the publicly available Neo4j EE v3.2 that they had been using.  Trial Ex. 128; Trial Ex. 131.  However, the IRS welcomed Neo4j USA to provide a demonstration of the 3.4 version for planning purposes.  *Id.*

41.    On May 24, 2018, the IRS officially awarded eGov the new contract to further develop and support the CKGE Project.  Trial Ex. 182, ECF No. 242-6; Trial Ex. 183, ECF No. 242-7.  The project proceeded using the publicly available Neo4j EE v3.2.  Dunn Dep. 99:3–100:10.

42.    In June 2018, the IRS had asked Suhy about switching from Neo4j EE v3.2 to the Neo4j 3.3.1 CE because, given the amount of users and the demand requirements, "it wasn't necessary to have any of the Enterprise features."  Dunn. Dep. 110:11–101:4; Trial Ex. 129, ECF No. 241-53. [5]  Suhy responded by suggesting that, instead of switching to Neo4j CE v3.3.1, the

---

[5] The Court took into consideration the Parties' stipulation that the IRS used at least one Neo4j enterprise-only feature, node ID, via ONgDB in CKGE, Stip. to Amount ¶ 41, and weighed that fact against the IRS representative's email and testimony stating that they were not seeking enterprise features at the time,  Dunn. Dep. 110:11–101:4; Trial Ex. 129, as well as Suhy's testimony consistent with this evidence, Trial Tr. Vol. II 322:5–323:5.  The Court also notes that it has considered and rejected Plaintiffs' blanket assertion that Suhy's testimony disagreeing with

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
10

1   IRS should adopt the open fork software managed by eGov for the CKEG project, which was later

2   released as ONgDB.  Trial Ex. 129.  The IRS accepted Suhy's advice and planned to integrate

3   ONgDB rather than switch to Neo4j CE v3.3.1.  Dunn. Dep. 102:3–15.

4        43.     Meanwhile, the IRS had been continuing its discussions with Neo4j USA about

5   Neo4j EE v3.4 "for planning purposes."  Trial Ex. 128, 131.  After some back and forth, on July

6   18, 2018, Neo4j USA provided IRS a quote for $156,000 for a one-year Neo4j EE subscription

7   and $397,800 for three years to use in the CKGE Project ("July 2018 Offer"), with the

8   understanding that the IRS was "just looking for budgetary pricing at the moment."  Trial Ex. 131,

9   ECF No. 241-55.  On July 27, 2018, the IRS replied that the quote was helpful "for planning

10  purposes," but informed Neo4j USA again that they still did not intend to purchase the

11  subscription at that time.  *Id.*

12       44.     In August 2018, approximately one month after the IRS had declined to purchase a

13  Neo4j EE v3.4 license for the second time, the IRS followed up on their June 2018 plan to

14  integrate ONgDB instead of Neo4j CE v3.3.1.  Trial Ex. 132, ECF No. 241-56.  The IRS asked

15  Suhy if it would be easier to switch to ONgDB in the CKGE Project at that time, or if they should

16  wait and deploy the CKGE with Neo4j EE v3.3.2 and then later transition.  Trial Ex. 132.  Suhy

17  recommended that the IRS integrate ONgDB v3.4 at that time rather than continue using Neo4j

18  EE v3.3.2 in the CKGE framework, claiming that "ONgDB open source licenses come directly

19  from the Graph Foundation as well, not from Neo4j Inc."  Trial Ex. 132, 133.

20       45.     Based on Suhy's recommendation, the IRS instructed him to "[g]o ahead and

21  integrate the ONgDB into the CKGE framework we'll deploy" on August 14, 2018.  Trial Ex.

22  133, ECF No. 241-57.

23       46.     The IRS had a team dedicated to supporting ONgDB, and Suhy's contract for the

24  CKGE Project did not specifically require him to provide support for ONgDB.  Trial Tr. Vol. II

25

26  _____

27  this, and other stipulated facts, renders him an unreliable witness in all regards.  Pls.' FFCL 3 n.1,
    9 n.2, 35.  The Court will continue to exercise its discretion to give appropriate weight to Suhy's
    testimony in light of other evidence in the record.

28  Case No.: 5:18-cv-07182-EJD
    FINDINGS OF FACT AND CONCLUSIONS OF LAW

United States District Court
Northern District of California

316:16–17; 320:11–321:25.[6]  However, Suhy did provide input in the architecture design and

hardware requirements needed to run ONgDB installations on multiple servers within the CKGE.

*Id.*; Undisputed Facts ¶ 32.

47.    After the Court's preliminary injunction requiring that the IRS remove ONgDB

from their servers, the IRS switched back to Neo4j CE.  Trial Tr. Vol. I 277:18–278:14, 280:22.

48.    The Parties stipulated to the calculations as to the profits Neo4j USA would have

generated had the IRS accepted their July 2018 Offer as written, along with additional commercial

subscriptions for every integration of ONgDB that followed, ranging from $2,646,557 to

$3,069,646 in lost profits.  Stip. to Amount ¶¶ 60, 63.

49.    The Parties also stipulated that iGov and Suhy gained $1,316,000 in profits from

the IRS under the CKGE Contract, as well as an additional $246,082.55 for work performed under

IRS subcontracts.  *Id.* ¶¶ 68, 71.

## II.    CONCLUSIONS OF LAW

The Court previously found Defendants liable under the Lanham Act's prohibition of

trademark infringement and false advertising and designation of origin, as well as the DMCA's

prohibition of copyright infringement.  *See* First MSJ Order; Second MSJ Order.  Plaintiffs now

seek relief in the form of monetary damages under the Lanham Act and the DMCA, as well as a

permanent injunction.  Pls.' FFCL.  The Court will address each request below.

### A.    Monetary Damages

Under the Lanham Act, the court may, "in its discretion and subject to the principles of

equity," award monetary damages in the form of actual damages, the defendant's illicit profits,

and attorneys' fees.  *Jason Scott Collection, Inc. v. Trendily Furniture*, LLC, 68 F.4th 1203, 1220

(9th Cir. 2023), *cert. denied*, 144 S. Ct. 550 (2024) (internal quotation marks omitted) (quoting  15

U.S.C. § 1117(a)).  Courts "assess trademark damages in the same manner as tort damages: the

---

[6] The Court weighed the IRS representative's testimony on this point, Dunn Dep. 97:17–98:21, against Suhy's testimony and the other evidence in the record, including Suhy's contract, Trial Ex. 1011, ECF No. 242-37.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
12

United States District Court
Northern District of California

United States District Court
Northern District of California

1    reasonably foreseeable harms caused by the wrong." *Id.* (internal quotation marks omitted)

2    (quoting *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110, 1113 (9th Cir. 2012)).

3         To recover actual damages sustained by a plaintiff, the plaintiff must prove both (1) the

4    fact of the damages and (2) the amount of damages. *Skydive Arizona, Inc. v. Quattrocchi*, 673

5    F.3d 1105, 1112 (9th Cir. 2012); *see also eAdGear, Inc. v. Liu*, No. CV-11-05398 JCS, 2012 WL

6    2367805, at *18 (N.D. Cal. June 21, 2012), *report and recommendation adopted*, No. C-11-05398

7    RMW JCS, 2012 WL 4005454 (N.D. Cal. Sept. 11, 2012).  Once the fact of damages is

8    established, plaintiffs are held to a lower standard of proof regarding the exact amount of actual

9    damages.  *Skydive Arizona*, 673 F.3d at 1112.

10        Regarding a defendant's profits, a plaintiff may recover an infringing defendant's profits as

11   a measure of the plaintiff's own damages or on a theory of disgorgement.  *Sky Billiards, Inc. v.*

12   *Loong Star, Inc.*, No. EDCV14921JGBSPX, 2016 WL 6661175, at *6 (C.D. Cal. Mar. 17, 2016)

13   (citing *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993)).  "[A] trademark

14   defendant's mental state is a highly important consideration in determining whether an award of

15   profits is appropriate." *Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212, 219 (2020).

16        Attorneys' fees may be awarded at a court's discretion in "exceptional cases."  15 U.S.C. §

17   1117(a).  Courts determine whether a case is "exceptional" by examining the totality of the

18   circumstances and "evaluating whether the case is one that stands out from others with respect to

19   the substantive strength of the party's litigating position . . . or the unreasonable manner in which

20   the case was litigated based on a preponderance of the evidence." *Jason Scott Collection*, 68 F.4th

21   at 1223.

22        Similarly, under the DMCA, a plaintiff may also recover "the actual damages suffered . . .

23   as a result of the violation, and any profits of the violator that are attributable to the violation and

24   are not taken into account in computing the actual damages."  17 U.S.C. § 1203(c)(2).  Actual

25   damages may consist of lost licensing fees and renewal fees, as well as lost profits.  *See Polar*

26   *Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707–08 (9th Cir. 2004) (affirming an actual

27   damages award based on the copyright holder's actual price quote to the infringer).  A plaintiff

28   Case No.: 5:18-cv-07182-EJD

FINDINGS OF FACT AND CONCLUSIONS OF LAW

13

1    may also recover hypothetical-license damages as actual damages. *Id*

2        Here, Plaintiffs argue that Defendants' trademark infringement, false advertising and false

3    designation of origin, and copyright infringement caused Plaintiffs to lose potential licensing

4    contracts with, and caused Defendants to gain illicit profits from, the MPO and the IRS.[7]

5    Plaintiffs also argue that Defendants' conduct makes this case "exceptional" and gives rise to

6    attorneys' fees and prejudgment interest.

7        The Court will address in turn Plaintiffs' requests for monetary damages regarding: (1) the

8    MPO offer, (2) the IRS offer, (3) attorneys' fees, and (4) prejudgment interest.  Where the Court

9    finds monetary damages appropriate, the Court will also address Defendants' argument that any

10   award should be reduced pursuant to the DMCA's innocent copyright infringer defense.

### 1.    MPO

12       Plaintiffs argue that Defendants' trademark infringement, false advertising and false

13   designation of origin, and copyright infringement caused Plaintiffs to lose potential licensing

14   revenue after the MPO rejected their April 2019 Offer for a Neo4j EE commercial license

15   subscription and instead adopted ONgDB for free. *See* Pls.' FFCL 29–31.  Plaintiffs seek an

16   award of $2,370,598 in lost licensing revenue. *Id.* at 30.  Given that Defendants did not generate

17   any profit from these circumstances, Plaintiffs do not seek damages in the form of Defendants'

18   illicit profits. *See id.* at 29–31.

19       To reiterate, in order to recover actual damages, Plaintiffs must prove both (1) the fact of

20   the damages and (2) the amount of damages. *Skydive Arizona*, 673 F.3d at 1112.  Once the fact of

21   damages is established, plaintiffs are held to a lower standard of proof regarding the exact amount

22   of actual damages. *Id.*

23       For the reasons explained below, the Court finds that, although there is evidence that

24   Defendants' conduct caused the MPO to integrate ONgDB v3.5 for free rather than pay for a

25   Neo4j EE commercial license, there is insufficient evidence to show that the MPO would have

26

27   ────────────────
     [7] Plaintiffs' briefing does not request independent damages for the unfair competition claims. *See* Pls.' FFCL 28.

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                        14

United States District Court
Northern District of California

1 │ accepted the specific prices quoted in Plaintiffs' April 2019 Offer but for Defendants' conduct.

2 │                 **a.**       **Fact of Damages**

3 │         The Court finds that Defendants' (1) trademark infringement, (2) false advertising and

4 │ designation of origin, and (3) copyright infringement caused Neo4j USA damages in the form of

5 │ lost licensing revenue from the MPO.

6 │         _First_, the evidence shows that Defendants' trademark infringement violation contributed to

7 │ the MPO choosing ONgDB over Neo4j EE.

8 │         The Court previously found that the following conduct was likely to create customer

9 │ confusion and thus gave rise to trademark infringement: (1) marketing without proper trademark

10 │ notices products called "Neo4j Enterprise" and "Government Package for Neo4j" to create the

11 │ misleading perception that Defendants' products were Plaintiffs' products; (2) using the Neo4j

12 │ Mark in their URLs and email addresses; (3) using embedded "Neo4j" links to Neo4j USA's

13 │ website and GitHub repository on their websites; (4) hyperlinking to Plaintiffs' build instructions,

14 │ support documentation and change logs containing the Neo4j Mark rather than creating and

15 │ hosting their own with the ONgDB name; and (5) using of "Neo4j Enterprise" and "ONgDB"

16 │ interchangeably to promote ONgDB on their websites.  First MSJ Order 19–22.

17 │         Here, the KMS Project required the enterprise features found in both Neo4j EE and

18 │ ONgDB.  Undisputed Facts ¶ 111.  The MPO learned about the pricing of Neo4j Enterprise

19 │ software bundles offered by Neo4j USA and iGov from iGov's website, and subsequently

20 │ exchanged emails with Suhy regarding representations made on iGov's website that ONgDB was

21 │ an open source version of Neo4j EE that provided the same enterprise-only features for free.  _Id._

22 │ ¶¶ 3, 4.  Suhy also informed Next Century that the MPO could use ONgDB under the AGPL

23 │ without restrictions or paying Plaintiffs for a commercial license, as advertised on the iGov's

24 │ website.  _Id._ ¶ 5.  As a result of Next Century's communications with Suhy, Next Century

25 │ downloaded ONgDB v3.4 and began evaluating against Neo4j EE v3.4.  _Id._ ¶ 6.  The MPO

26 │ subsequently chose to integrate ONgDB v3.4 for free instead of Neo4j EE v3.4, and later upgraded

27 │ to ONgDB v3.5 instead of purchasing Neo4j EE v3.5.  _Id._  This series of events makes clear that

28 │

*(left margin, rotated)* United States District Court
Northern District of California

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
15

1    the trademark infringements on iGov's website led to the MPO learning of ONgDB and ultimately

2    choosing ONgDB v3.5 over Neo4j EE v3.5.

3        Second, the evidence shows that Defendants' false advertising and false designation of

4    origin violation contributed to the MPO choosing to integrate ONgDB over Neo4j EE.

5        The Court previously found that Defendants' characterization of ONgDB as a "drop-in

6    replacement" and "open source" are material statements that were false or likely to mislead

7    consumers.  First MSJ Order 28–32.

8        Here, for similar reasons, the Court finds that Defendants' advertisement of ONgDB to

9    Next Century as a "drop-in replacement" and "open source" contributed to the MPO integrating

10   ONgDB rather than Neo4j EE.  As discussed above, the KMS Project required the enterprise

11   features found in both Neo4j EE and ONgDB, and the MPO ultimately chose ONgDB in part on

12   the belief that it was a "drop-in replacement" and "open source" version of Neo4j EE.  Undisputed

13   Facts ¶ 111.

14       Third, the evidence shows that Defendants' DMCA violation contributed to the MPO

15   choosing ONgDB over Neo4j EE.

16       The Court previously found that Defendants' removal of the Commons Clause and

17   replacement of the Neo4j Sweden Software license with a generic open source APGL license

18   violated the DMCA.  Second MSJ Order 16–24.

19       Again here, the evidence shows that the KMS Project required the enterprise features

20   found in both Neo4j EE and ONgDB, and the MPO ultimately chose ONgDB in part because it

21   offered the same features as Neo4j EE, but for free.  Because Defendants' removal of the

22   Commons Clause allowed the MPO to use ONgDB v3.5 for free rather than pay for a Neo4j EE

23   v3.5 commercial license, the DMCA violation necessarily contributed to the MPO choosing

24   ONgDB over Neo4j EE.

25       Based on the foregoing, the Court finds sufficient evidence that Defendants' Lanham Act

26   and DMCA violations caused the MPO to implement ONgDB instead of purchasing a commercial

27   license from Neo4j USA.

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                            16

*United States District Court*
*Northern District of California*

#### b.    Amount of Damages

While Plaintiffs have proven the fact of damages, the Court finds the evidence insufficient to establish that this conduct caused Plaintiffs to lose $2,370,598 in potential licensing revenue. However, the Court finds sufficient evidence to show that the MPO would have accepted an offer for a lesser amount.

#### i.    Insufficient Evidence to Support Damages Requested

Most notably, the evidence shows that the April 2019 Offer was not final.  When Next Century provided the information to generate the April 2019 quote, they informed Neo4j USA that they did not "have a firm grasp on what the (eventual) production posture will be," but provided Neo4j with some information "for now."  Trial Ex. 116, ECF No. 241-40.  A few months later, after a meeting between Neo4j USA and Next Century, Neo4j USA emailed Next Century stating that they were prepared to offer a "much lower" quote—in Neo4j USA representative's own words, Neo4jUSA was willing to offer "a more robust capability that provides the same SLA as your Neo4j CE based solution for a *much lower price* point than what we originally proposed based on your initial stated requirements."  Trial Ex. 120 (emphasis added).  Plaintiffs have provided no evidence for the Court to presume what amount this new quote may have been.

Further, there is no evidence that the MPO had the budget to accept the April 2019 Offer for the KMS Project; to the contrary, the only evidence regarding funding is evidence showing that the MPO's prior similar projects with Next Century never budgeted for a commercial license. Weyant Dep. 30:6–17, 37:6–13, 67:11–21, 92:23–94:12, 96:4–11, 108:2–19, 103:21–104:3.

Finally, while the Parties' stipulation states that the MPO's willingness to purchase a commercial license for Neo4j EE for the KMS Project is supported by its history of purchasing other Neo4j EE commercial licenses, the Court finds this support tenuous.  It is true that the MPO has a history of purchasing Neo4j EE commercial licenses, and this fact serves to support Plaintiffs' argument.  Undisputed Facts ¶ 18.  However, there is a significant price disparity between the licenses purchased and the April 2019 Offer.  The evidence shows that between 2014 and 2022, the MPO purchased six one-year commercial licenses from Neo4j USA, which ranged

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
17

United States District Court
Northern District of California

1    from $9,300 to $248,310, as well as one two-year commercial license for $66,249.  Trial Ex. 15, at

2    lines 337–43.  In total, the MPO has spent $929,208.00 in various licenses across the course of

3    eight years.  But here, the April 2019 Offer gave the MPO the option to purchase three one-year

4    subscriptions for a total of $2,667,000 or purchase a three-year subscription for a total of

5    $2,266,950.  Undisputed Facts ¶ 17.  There is no evidence of any comparable purchases or other

6    evidence of the MPO's budget which would support Plaintiffs' argument that the MPO had the

7    ability to accept a multi-million dollar licensing package.  Considering this extreme price

8    disparity, there is insufficient evidence to support the damages sought by Plaintiffs.

9         Together, these facts demonstrate the lack of evidence sufficient to show that the MPO

10   would have accepted the April 2019 Offer as written but for Defendants' conduct.  While

11   Plaintiffs are correct that the Court had previously found that the circumstances surrounding the

12   April 2019 Offer gave rise to a presumption of injury under the Lanham Act, the Court cannot

13   presume that Plaintiffs would have generated over two million dollars in revenue given these

14   facts.[8]

15                      **ii.        Sufficient Evidence to Show Lesser Amount of Damages**

16        However, Plaintiffs are correct that they have a lower burden of proof in calculating the

17   exact amount of actual damages here.  *Skydive Arizona*, 673 F.3d at 1112.  Calculations need not

18   rely on, for example, empirical quantification or expert testimony—they must only be supported

19   by "reasonable inferences and assessments, based upon substantial evidence in the record."  *Id.* at

20   1113.  While there is insufficient evidence to establish that the MPO would have accepted the

21   April 2019 Offer as written, the evidence of other purchases and the ongoing negotiations does

22   support a conclusion that the MPO would have been more likely to accept an offer of a lower

23   amount but for Defendants' conduct.

24

25   _____

26   [8] To clarify, the Court did not make a finding as to the specific amount of actual damages incurred
     by the loss of the MPO contract in its First MSJ Order, as Plaintiffs argue.  *See* Pls.' FFCL 22.

27   While the Court found that Plaintiffs provided evidence sufficient to show an injury arising from
     Defendants' Lanham Act violations, the issue of calculating monetary damages was not presented
     before the Court at that time.  First MSJ Order 16.

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                           18

1     Aside from Neo4j USA's multi-million dollar offer, the only other estimate in the evidence

2  is in Neo4j USA's initial communications with Next Century in June 2018, where Neo4j USA

3  informed Next Century that the Enterprise Edition bundles started at $111,000 per year for a 3-

4  server cluster with standard support.  Trial Ex. 103.  By the time Neo4j USA made its April 2019

5  Offer, this starting bundle price rose to $199,000, with optional add-ons for an increased price.

6  Trial Ex. 17.  This number is also reflected in the breakdown of Neo4j USA's April 2019 Offer.

7  Trial Ex. 118.

8     The Court finds sufficient evidence to show that the MPO would have at least purchased

9  this starting bundle for $199,000 but for Defendants' conduct.  This price reflects the lowest

10  possible bundle price, therefore even a "much lower quote" would not have fell below this

11  amount.  *See* Steven Boyles Expert Report, Trial Ex. 209, Expert Report of Steven B. Boyles, at

12  41 n.169, ECF No. 244-3.  This price also falls within the range of other licenses that the MPO has

13  purchased from Neo4j USA, and it is an amount that could have conceivably been allocated from

14  Next Century's awards in similar prior projects.  Trial Ex. 15, at lines 337–43; Weyant Dep. 30:6–

15  17.  The Court notes that it cannot be certain whether this base configuration would have

16  ultimately been enough to fit the MPO's specific needs for the KMS Project—it is possible that

17  the KMS Project required additional servers or machines; but as discussed above, there is no

18  evidence regarding exactly what the MPO required beyond the base package given Neo4j USA's

19  email indicating that the specifications used for the April 2019 quote had changed.

20     Finding that the evidence shows the MPO likely would have purchased, at a minimum, the

21  starting bundle for $199,000 but for Defendants' conduct, the Court now considers how many

22  years of that subscription the MPO would have purchased.  Neo4j USA's April 2019 offer was

23  limited to the KMS Project, which terminated in September 2019, and Neo4jUSA did not make

24  any additional offers.  *See* Trial Ex. 103.  However, the evidence also shows that the project

25  immediately following the expiration of the KMS Project, referred to as "Route 66," continued on

26  to deploy an ONgDB-based solution, and the subcontracts and renewals that followed continued

27  deploying ONgDB-based solutions until as recently as October 2022.  Weyant Dep. 116:25–117:5,

28  Case No.: 5:18-cv-07182-EJD

United States District Court
Northern District of California

1    126:12–127:23.[9]  There is also evidence that the MPO has historically renewed other Neo4j EE

2    license subscriptions.  Trial Ex. 15, at lines 337–43.  Taken together, the evidence supports a

3    finding that, if the MPO had implemented a Neo4j EE subscription in the KMS Project, the

4    projects immediately following would have done the same until October 2022; thus, the MPO

5    would have renewed this contract for at least three years following the April 2019 Offer for a total

6    of $597,000.

7          Therefore, in consideration of Plaintiffs' lower burden of proof in calculating the exact

8    amount of actual damages, *Skydive Arizona*, 673 F.3d at 1112, the Court exercises its discretion in

9    evaluating the evidence and equities and awards $597,000 in actual damages.

10                          **c.    Innocent Infringer**

11          Defendants argue that any monetary award should be reduced or remitted because Suhy's

12    DMCA violation was "innocent" pursuant to 17 U.S.C. § 1203(c).  Defs.' FFCL 11.  Defendants

13    argue that Suhy had no reason to believe that removing the Commons Clause would violate the

14    DMCA, highlighting that Suhy read the AGPL license, studied information, and spoke with the

15    Free Software Foundation, the copyright holder of the AGPL, which confirmed that the addition

16    could be removed.  *Id.*

17          The Court finds Defendants' arguments irrelevant to its award of damages here.  The Court

18    found that the actual damages arising out of the lost MPO contract was the result of not only

19    Defendants' DMCA violation, but also Defendants' violation of the Lanham Act.  Thus, even if

20    the Court were to find that Suhy was an innocent copyright infringer because he believed he could

21    lawfully remove the Commons Clause, this would not alter the actual damages award arising from

22    the Lanham Act violations.  Therefore, the Court finds it unnecessary to address Defendants'

23    DMCA innocent copyright infringer arguments.

24                                    * * *

25

26    _____

27    [9] While the MPO increased the number of servers and machines once ONgDB was placed into production, there is no evidence that this increase met or exceeded the specifications in Neo4j USA's April 2019 Offer.  Weyant Dep. 118:7–24.

28    Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
20

1    The Court finds that Plaintiffs have provided evidence sufficient to show the fact of

2    damages, but not sufficient to show the amount Plaintiffs requested.  Therefore, the Court

3    exercises its discretion to award Plaintiffs $597,000 in actual damages.

### 2.    IRS

5    Plaintiffs argue that Suhy's trademark infringement, false advertising and false designation

6    of origin, and copyright infringement caused Plaintiffs to lose potential licensing revenue after the

7    IRS rejected their July 2018 Offer for a Neo4j EE v§3.4 commercial subscription and instead

8    adopted ONgDB for free.  Pls.' FFCL 30.  Plaintiffs seek an award of $3,069,646 in potential

9    licensing revenue, as well as $1,562,082.55 in Defendants' illicit profits.  *Id.* at 31.

10    Again here, to recover actual damages, Plaintiffs must prove both (1) the fact of the

11    damages and (2) the amount of damages.  *Skydive Arizona*, 673 F.3d at 1112.

12    For the reasons explained below, the Court finds that Plaintiffs fail at the first step—there

13    is insufficient evidence to show that Suhy's conduct caused Plaintiffs to lose potential licensing

14    revenue or caused Suhy to gain illicit profits.

### a.    Fact of Damages

16    The Court finds insufficient evidence to show that Defendants' (1) trademark infringement,

17    (2) false advertising and designation of origin, or (3) copyright infringement caused Neo4j USA

18    damages in the form of lost licensing revenue from the IRS.

19    First, the Court finds insufficient evidence to show that Suhy's trademark infringement

20    contributed to Plaintiffs losing potential licensing revenue from their July 2018 Offer.

21    There is simply no evidence that the IRS ever came across or experienced the online

22    conduct that the Court found constituted trademark infringement, i.e., marketing "Neo4j

23    Enterprise" and "Government Package for Neo4j" without proper trademark notices; using the

24    Neo4j Mark in their URLs and email addresses; using embedded "Neo4j" links on their websites;

25    hyperlinking to Plaintiffs' materials containing the Neo4j Mark; or using of "Neo4j Enterprise"

26    and "ONgDB" interchangeably to promote ONgDB on their websites.  First MSJ Order 19–22.

27    For those same reasons, the Court finds that there is no evidence to show that Suhy and eGov were

28    Case No.: 5:18-cv-07182-EJD

FINDINGS OF FACT AND CONCLUSIONS OF LAW

21

United States District Court
Northern District of California

1  awarded their contract due to any of the conduct the Court found gave rise to trademark

2  infringement.

3        Second, the Court finds insufficient evidence to show that Suhy's false advertising and

4  false designation of origin violation contributed to Plaintiffs losing potential licensing revenue

5  from their July 2018 Offer.

6        Plaintiffs argue that Suhy's characterization of ONgDB as an "open source license" that

7  "come[s] directly from the Graph Foundation" caused the IRS to reject their July 2018 Offer. *See*

8  Pls.' FFCL 29–30. However, the evidence shows that Suhy made these statements months after

9  the IRS had already rejected Neo4j USA's July 2018 Offer, and more importantly, these

10 statements were made to convince the IRS to integrate ONgDB instead of another open source

11 Neo4j CE license, not Neo4j EE v3.4.

12       A brief reiteration of the relevant timeline will aid the Court's discussion on this point.

13 *May 2018*

14       In May 2018, the IRS publicly posted an intent to award the sole source contract for the

15 CKGE Project to eGov. Trial Tr. Vol. I 79:20–23. At that time, the CKGE Project had been using

16 the publicly available Neo4j EE v3.2. Dunn Dep. 99:3–100:10, ECF No. 210, Ex. 5. Neo4j USA

17 saw this public post and emailed the IRS. Trial Ex. 126; Trial Tr. Vol. I 79:20–82:8. Neo4j USA

18 believed that the CKGE Project would require Neo4j EE v3.4, so they informed the IRS of the

19 licensing changes to Neo4j EE v3.4, namely the addition of the Commons Clause, and encouraged

20 them to purchase a commercial license and support services from Neo4j USA. Trial Tr. Vol. I

21 81:22–82:8. That same day, Suhy contacted the IRS to share his opinion that Neo4j Sweden was

22 not permitted to add the Commons Clause to the license governing Neo4j EE v3.4. Trial Ex. 128.

23 The following day, the IRS declined the invitation to purchase the Neo4j EE v3.4 license,

24 informing Neo4j USA that their budget was "extraordinarily limited in all avenues," and they

25 would be sticking with the publicly available Neo4j EE v3.2 that they had been using. Trial Ex.

26 128; Trial Ex. 131. However, the IRS welcomed Neo4j USA to provide a demonstration of Neo4j

27 EE 3.4 for planning purposes. *Id.*

28 Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
22

United States District Court
Northern District of California

1    On May 24, 2018, the IRS carried forward with its plan to award eGov the contract for the

2    CKGE Project.  Trial Ex. 182; Trial Ex. 183.  The project proceeded using the publicly available

3    Neo4j EE v3.2.  Dunn Dep. 99:3–100:10.

4    *June 2018*

5    In June 2018, the IRS had asked Suhy about switching from Neo4j EE v3.2 to the Neo4j

6    3.3.1 CE (the open-source community edition) because, given the amount of users and the demand

7    requirements, "it wasn't necessary to have any of the Enterprise features."  Dunn. Dep. 110:11–

8    101:4.  Suhy suggested that the IRS should adopt the open fork software managed by eGov for the

9    CKEG project, later released as ONgDB, instead of switching to Neo4j CE 3.3.1.  Trial Ex. 129.

10   The IRS ultimately followed Suhy's advice and made a plan to integrate what would later be

11   called ONgDB.  Dunn. Dep. 102:3–15.

12   *July 2018*

13   Meanwhile, the IRS had been continuing its discussions with Neo4j USA about Neo4j EE

14   v3.4 "for planning purposes."  Trial Ex. 128, 131.  After some back and forth, Neo4j USA

15   provided its July 2018 Offer, with the understanding that the IRS was "just looking for budgetary

16   pricing at the moment."  Trial Ex. 131.  On July 27, 2018, the IRS replied that the quote was

17   helpful "for planning purposes," but informed Neo4j again that they still did not intend to follow

18   up with a new acquisition at that time.  Trial Ex. 131.

19   *August 2018*

20   In August 2018, approximately one month after the IRS declined to purchase a Neo4j EE

21   v3.4 license for the second time, the IRS revisited its June 2018 plan to integrate ONgDB instead

22   of Neo4j CE v3.3.1.  Trial Ex. 132.  When asked about when to integrate ONgDB, Suhy

23   recommended that the IRS integrate ONgDB v3.4 sooner rather than later, claiming that "ONgDB

24   open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc."  Trial

25   Ex. 132, 133.  The Court later found that this statement constituted false advertising and false

26   designation of origin.  First MSJ Order 28–32.  Based on Suhy's recommendation, the IRS

27   instructed him to integrate the ONgDB into the CKGE framework on August 14, 2018.  Trial Ex.

28   Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
23

United States District Court
Northern District of California

United States District Court
Northern District of California

1   133.

2          The evidence clearly shows that Suhy's representations caused the IRS to integrate

3   ONgDB; however, the evidence also shows that the IRS chose ONgDB over Neo4j *CE v3.3.1*, not

4   Neo4j *EE v3.4*.[10]   The IRS did not need Neo4j v3.4 features for the CKGE Project—they were

5   considering a switch to the free and publicly available Community Edition software when Suhy

6   recommended ONgDB.  Dunn. Dep. 110:11–101:4; Trial Ex. 129, ECF No. 241-53.   And notably,

7   since removing ONgDB after the Court's preliminary injunction, the IRS has returned to the

8   Community Edition across the board with no evidence of any issues or need for additional

9   features.  Trial Tr. Vol. I 277:18–278:14, 280:22.  While the IRS invited Neo4j USA to

10  demonstrate Neo4j EE v3.4, the evidence shows that this invitation was to gain information "for

11  planning purposes."  Trial Ex. 131.  Neo4j USA understood that the IRS was merely looking for

12  "budgetary pricing" when it allowed Neo4j USA to demo the software for them and provide a

13  quote. *Id.*

14         The Court also finds the evidence insufficient to prove that Defendants' profits from the

15  CKEG contract were the result of his statements.  Suhy's contract for the CKGE Project did not

16  require him to provide support for ONgDB—the IRS had a team dedicated to supporting ONgDB.

17  Trial Tr. Vol. II 316:16–17; 320:11–321:25.  While Suhy voluntarily provided input in the

18  architecture design and hardware requirements needed to run ONgDB installations on multiple

19  servers within the CKGE, his income from the project was not dependent on that support.  *Id.*

20  Even if Suhy was required under his contract to provide the support services for whichever

21

22  ───────────────────────

23  [10] The Court notes that, pursuant to Rule 52, it reached its conclusion by weighing the Parties'
    stipulation that the IRS decided to not allocate $156,000 for a license to use Neo4j EE in the
24  CKGE platform because ONgDB was a free and open, unrestricted alternative, with the other
    evidence cited to in this section.  *See, e.g., In re Jagar*, No. 13-46850 CN, 2015 WL 4327902, at
25  *1 (Bankr. N.D. Cal. July 15, 2015), *aff'd*, No. 4:14-AP-04037-CN, 2017 WL 1371297 (B.A.P.
    9th Cir. Apr. 12, 2017), *aff'd*, 742 F. App'x 310 (9th Cir. 2018) ("When considering a Rule 52(c)
26  motion, this court must take an unbiased view of all of the evidence, direct and circumstantial, and
    accord it such weight as the court believes it is entitled to receive.") (internal quotation marks
27  omitted); *see also Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1090 (9th Cir. 2002)
    (stating that it is the obligation of the trier of fact to resolve conflicting evidence).

28  Case No.: 5:18-cv-07182-EJD
    FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                    24

1   software the IRS chose, the Court reiterates that the IRS was considering ONgDB and Neo4j *CE*

2   *v3.3.1*, thus Suhy would have been able to provide support to both, as Neo4j CE was a publicly

3   available software.

4      <u>Third</u>, the Court finds insufficient evidence to show that Suhy's DMCA violation, that is,

5   his removal of the Commons Clause, contributed to Plaintiffs losing potential licensing revenue

6   from their July 2018 Offer.  Again here, the evidence clearly shows that the IRS did not need the

7   enterprise features.  Dunn. Dep. 110:11–101:4.[11]  Thus, for all the reasons described above, the

8   evidence does not support Plaintiffs' argument that Suhy's profits resulted from his removal of the

9   Commons Clause in ONgDB v3.5.

10          **b.**   **Amount of Damages**

11      Because the Court finds insufficient evidence to show the fact of damages, the Court finds

12   it unnecessary to address the Parties' arguments regarding the amount of damages.

13                \* \* \*

14      The Court finds that Plaintiffs have failed to provide sufficient evidence to show the fact of

15   damages resulting from their July 2018 Offer.  Therefore, the Court awards no damages as to the

16   July 2018 Offer.

17         **3.**   **Attorneys' Fees**

18      Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award

19   reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).  Similarly, the DMCA

20   provides in relevant part that "the court may . . . award a reasonable attorney's fee to the prevailing

21   party as part of the costs."  17 U.S.C. § 505.  An "exceptional" case under either statute "is simply

22   one that stands out from others" where there is a showing "that a defendant engaged in malicious,

23   fraudulent, deliberate or willful infringement."  *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839

24

_____

25   [11] Again here, the Court took into consideration the Parties' stipulation that Defendants' removal
26   of the Commons Clause from the license governing ONgDB enabled the IRS to use ONgDB for
     free rather than pay for a commercial license to Neo4j EE,  Stip. to Amount ¶ 48, and weighed that
27   fact against the IRS representative's email and testimony stating that they were not seeking
     enterprise features at the time.  Dunn. Dep. 110:11–101:4; Trial Ex. 129.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
25

United States District Court
Northern District of California

1    F.3d 1179, 1180 (9th Cir. 2016) (internal quotation marks omitted) (quoting *Lindy Pen Co. v. Bic*

2    *Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993), *superseded by statute on other grounds*,

3    Trademark Amendments Act of 1999, Pub. L. No. 106–43, 113 Stat. 218)); *see also, e.g., Jason*

4    *Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223 n.13 (9th Cir. 2023); *Dish*

5    *Network, L.L.C. v. SatFTA,* No. 5:08-CV-01561 JF PSG, 2011 WL 856268, at *7 (N.D. Cal. Mar.

6    9, 2011).  Courts "should examine the totality of the circumstances to determine if the case was

7    exceptional, exercising equitable discretion in light of the nonexclusive factors identified in

8    *Octane Fitness* and *Fogerty*, and using a preponderance of the evidence standard." *SunEarth*, 839

9    F.3d at 1181 (internal quotation marks omitted) (quoting *Octane Fitness, LLC v. ICON Health &*

10   *Fitness, Inc.*, 572 U.S. 545, 554 (2014)).  These factors include "frivolousness, motivation,

11   objective unreasonableness (both in the factual and legal components of the case) and the need in

12   particular circumstances to advance considerations of compensation and deterrence." *Octane*

13   *Fitness*, 572 U.S. at 554 n.6 (internal quotation marks omitted) (quoting *Fogerty v. Fantasy, Inc.*,

14   510 U.S. 517 (1994)).  Courts generally understand the term "exceptional" to mean cases in which

15   the infringement can be characterized as "malicious, fraudulent, deliberate or willful." *Derek*

16   *Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008).  But ultimately, "[t]here is

17   no precise rule or formula for making these determinations, but instead equitable discretion should

18   be exercised in light of the[se] considerations." *Fogerty*, 510 U.S. at 534 (internal quotation

19   marks omitted).

20         Here, Plaintiffs argue that this is an "exceptional" case because Defendants' violations of

21   the Lanham Act and the DMCA were willful.  In support, Plaintiffs highlight the Court's prior

22   findings that Defendants' use of the Neo4j Mark created the misleading perception that

23   Defendants' products were Plaintiffs' products, Defendants' statements that ONgDB was "open

24   source" and a "drop in replacement" were false, and that Defendants' removal of the Commons

25   Clause was unlawful under Neo4j USA's copyright. Pls.' FFCL 31–32.  Plaintiffs also argue that

26   Defendants litigated this case in an unreasonable manner by repeatedly reasserting legal

27   arguments, claims, and defenses that the Court previously dismissed with prejudice or otherwise

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                              26

1    determined to be meritless. *Id.* at 33–34.

2         Upon consideration of the totality of the circumstances and the factors referenced in

3    *SunEarth*, the Court finds that this is not an "exceptional" case warranting attorneys' fees.

4         First, while some of Defendants' conduct in this case could be considered frivolous, such

5    as re-litigating settled issues or raising affirmative defenses without a proper basis, the Court does

6    not find this conduct egregious enough to be considered "exceptional." *See, e.g., TransPerfect*

7    *Glob., Inc. v. MotionPoint Corp.*, No. C 10-2590 CW, 2014 WL 6068384, at *8 (N.D. Cal. Nov.

8    13, 2014) (finding "frivolous arguments" and other missteps, only some of which were

9    inadvertent, too minor to justify a fee award).

10        Next, the evidence shows that Suhy's conduct was largely motivated by his belief in the

11   freedom and liberty of open-source software rather than financial or other motivation.  Trial Tr.

12   Vol. II 251:11–21; 299:25–17.  As the Court discussed above, Suhy did not make any financial

13   gains from his interactions with the MPO, and the IRS's choice between Neo4j CE or ONgDB did

14   not impact his ability to continue his work with the IRS.

15        Further, while some of Defendants' arguments in this case, as noted above, were objectively

16   unreasonable, the Court observes that this case dealt with issues lacking the benefit of a body of

17   established case law to guide Defendants' conduct or litigation strategy, particularly the legal

18   implications of removing a Commons Clause.  Thus, Defendants' conduct, when viewed in the

19   totality of the limited legal landscape surrounding this case, does not make this case "exceptional."

20        Moreover, the Court weighs the equities and finds that the monetary award of $597,000

21   plus the prejudgment interest and injunctive relief described below is sufficient to advance

22   considerations of compensation and deterrence.

23        Finally, the Court is unpersuaded by Plaintiffs' arguments that the conduct here constitutes

24   "exceptional" malicious, fraudulent, deliberate or willful infringement.  Plaintiffs' reliance on the

25   Court's findings that Defendants violated the Lanham Act and the DMCA does not aid the Court

26   in its analysis here—liability does not automatically trigger an award of attorneys' fees.

27        In consideration of the above, the Court finds that Plaintiffs have failed to show that this

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                        27

United States District Court
Northern District of California

1   case "stands out" from others and denies Plaintiffs' request for attorneys' fees.

2        Given that the Court has not awarded attorneys' fees, the Court finds it unnecessary to

3   address Plaintiffs' remaining arguments regarding whether Defendants' counsel should be held

4   jointly and severally liable for those fees.

5                    **4.        Prejudgment Interest**

6        "An award of pre-judgment interest in a case under federal law is left to the sound

7   discretion of the trial court." *Twin City Sportserv., Inc. v. Charles O. Finley & Co.*, 676 F.2d

8   1291, 1310 (9th Cir. 1982). "Awards of pre-judgment interest are governed by considerations of

9   fairness and are awarded when it is necessary to make the wronged party whole." *United States v.*

10  *Cal. State Bd. of Equalization,* 650 F.2d 1127, 1132 (9th Cir. 1981), *aff'd mem.*, 456 U.S. 901

11  (1982) (citation omitted). Courts may, in their discretion, award prejudgment interest under the

12  DMCA if necessary "to effectuate the legislative purpose of making copyright holders whole and

13  removing incentives for copyright infringement." *Polar Bear Prods., Inc. v. Timex Corp.*, 384

14  F.3d 700, 716–18 (9th Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (Oct. 25,

15  2004), *opinion amended on denial of reh'g*, No. 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25,

16  2004). Although not specifically provided in the statute, Courts may also award prejudgment

17  interest under the Lanham Act under the federal common law, which "authorizes the award of such

18  interest in appropriate cases to victims of violations of federal law." *Cyclone USA, Inc. v. LL&C*

19  *Dealer Servs., LLC*, No. CV 03-992-AJW, 2010 WL 2132378, at *1 (CD. Cal. May 24, 2010)

20  (quoting *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989)).

21        Here, the Court exercises its discretion and awards prejudgment interest on the $597,000

22  award using the agreed-upon treasury-bill rate. *See* Stip. to Amount 1 (stipulating to Mr. Boyles's

23  interest calculations); *see also S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1083 (9th

24  Cir. 2010) ("The treasury-bill rate is the rate typically used in most cases for prejudgment interest

25  calculation."). The Court finds prejudgment interest appropriate under these circumstances to

26  make Plaintiffs whole and remove incentives for any future infringement.

27        The Court grants Plaintiffs leave to provide a declaration from Mr. Boyles on the final

Case No.: 5:18-cv-07182-EJD

28  FINDINGS OF FACT AND CONCLUSIONS OF LAW

28

United States District Court
Northern District of California

1 prejudgment interest calculations pursuant to the Parties' stipulated method and in accordance

2 with this Order by **August 5, 2024**.

3        **B.      Injunctive Relief**

4        Under the Lanham Act, a district court has the power to grant injunctions according to the

5 rules of equity and to prevent the violation of a trademark holder's rights.  15 U.S.C. §§ 1116(a),

6 1125(a); *see also Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 939, 948 (9th Cir. 2002);

7 *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir. 1997).  The Lanham Act entitles a

8 trademark owner to an injunction if the owner's rights are being violated.  *Penpower Tech. Ltd. v.*

9 *S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1094 (N.D. Cal. 2008); *see also Century 21 Real Estate Corp.*

10 *v. Sandlin,* 846 F.2d 1175, 1180–81 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for

11 trademark and unfair competition cases, since there is no adequate remedy at law for the injury

12 caused by a defendant's continuing infringement.").  The DMCA also permits the Court to "grant

13 temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a

14 violation" of Section 1202(b).  17 U.S.C. §§ 502(a), 1203(b)(1).

15        Here, the Court had previously granted a preliminary injunction upon finding that Plaintiffs

16 established a likelihood of success on the merits.  First MSJ Order 32–34.  The Ninth Circuit

17 affirmed the Court's ruling.  *Neo4j, Inc. v. PureThink, LLC*, No. 21-16029, 2022 WL 781037 (9th

18 Cir. Mar. 14, 2022).  Now, Plaintiffs have proven success on the merits, and Defendants consent

19 to a permanent injunction.  Def.'s FFCL 10.  Therefore, the Court finds good cause to convert the

20 preliminary injunctions entered in this action into a permanent injunction.

21 **III.    CONCLUSIONS AND ORDERS**

22        The Court **AWARDS** $597,000 in actual damages, subject to prejudgment interest.  All

23 other requests for damages and attorneys' fees are **DENIED**.

24        Plaintiffs are **ORDERED** to provide the Court an amended proposed judgment and revised

25 prejudgment interest calculations consistent with the Court's Findings of Fact and Conclusions of

26 Law by **August 5, 2024**.

27        The Court **GRANTS** Plaintiffs' unopposed request for a permanent injunction.

28 Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
29

*United States District Court*
*Northern District of California*

1    Accordingly, consistent with the prior preliminary injunctions, *see* First MSJ Order; Second MSJ

2    Order, Defendants are **HEREBY ENJOINED** from the following:

3        (1)   Infringing U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J"

4                covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the

5                "Neo4j Mark").

6        (2)   Advertising, promoting, representing or referring to ONgDB as a free and open source

7                drop-in replacement of Neo4j Enterprise Edition distributions with the same version

8                number, and any similar statement that may lead consumers to believe that ONgDB is a

9                Neo4j USA or Neo4j Sweden product, or is identical to a Neo4j USA or Neo4j Sweden

10               product.

11       (3)   Advertising, promoting, representing, or referring to Neo4 Enterprise or Neo4j

12               Enterprise Edition being released only under the AGPL.

13       (4)   Representing that Neo4j Sweden AB's addition of the Commons Clause to the license

14               governing Neo4j Enterprise Edition violated the terms of AGPL or that removal of the

15               Commons Clause is lawful, and similar statements.

16       (5)   Advertising, displaying or distributing products, literature or any other materials that use

17               the Neo4j Mark to advertise or promote ONgDB in any way that suggests sponsorship or

18               endorsement by Neo4j USA or Neo4j Sweden or that may lead consumers to believe that

19               ONgDB is a Neo4j USA or Neo4j Sweden product, or is identical to a Neo4j USA or

20               Neo4j Sweden product.

21       (6)   Affixing, applying, annexing, or using in connection with the sale of any goods, a false

22               description or representation including words or other symbols tending to falsely

23               describe or represent such goods as being Neo4j products and from offering such goods

24               in commerce.

25       (7)   Assisting, aiding, or abetting any other person or business entity in engaging in or

26               performing any of the activities referred to in Paragraphs 1-6 above.

27       (8)   Making further use of or fork any source code first released under the Neo4j Sweden

28   Case No.: 5:18-cv-07182-EJD

United States District Court
Northern District of California

1    Software License, including Neo4j EE v3.4, Neo4j EE v3.5, or any subsequent versions,

2    subversions or derivatives thereof.

3    (9)    Making further use of or fork any source code first released under a commercial license,

4    including Neo4j EE v3.5, Neo4j EE v4.x, Neo4j EE 5.x, or any subsequent versions,

5    subversions or derivatives thereof.

6    (10)   Offering for sale, advertising or promoting ONgDB, GraphStack GDB and GDB (and

7    any derivative or similar software created and/or maintained by Defendants), or any other

8    software containing Neo4j EE source code with a DMCA Violation or that was first

9    released subject to the Neo4j Sweden Software License.

10   (11)   Stating, claiming, advertising, or representing that Neo4j Sweden AB's inclusion of the

11   Commons Clause to the license governing Neo4j EE violated the terms of the GNU

12   Affero General Public License, version 3 ("AGPLv3"), or make similar statements

13   interpreting the terms of the AGPLv3.

14   (12)   Stating, claiming, advertising, or representing that the Free Software Foundation ("FSF")

15   or that any government agency determined and/or confirmed that (a) the inclusion of the

16   Commons Clause to any license governing Neo4j EE violated the terms of AGPLv3;

17   and/or (b) the Commons Clause can be removed from any software license governing

18   Neo4j EE and/or ONgDB.

19   (13)   Offering for sale or providing for any paid development, support, maintenance or hosting

20   services for ONgDB, GraphStack GDB, GDB (and any derivative or similar software

21   created and/or maintained by Defendants), or any other software containing Neo4j EE

22   source code with a DMCA Violation or that was first released subject to the Neo4j

23   Sweden Software License. However, nothing herein prevents Defendants from offering

24   paid consulting services for installations of Neo4j EE software, but only where the

25   customer receiving such services has a commercial license and has fully paid the

26   commercial license fees to Plaintiffs.

27   (14)   Making any statement and/or representations to any third party, affirmatively or in

United States District Court
Northern District of California

response to an inquiry, that state or imply that they can provide access to or can obtain any software containing any Neo4j EE source code with a DMCA Violation, that is subject to the Neo4j Sweden Software License, or not otherwise permitted for use by this Order.

(15) Having any expressed or implied license to use and making any further use of any of Plaintiffs' source code, object code, machine code and software that is subject to a commercial license or paid commercial subscription, including but not limited to Neo4j EE v3.4, and all versions and subversions thereof; Neo4j EE v3.5, and all versions and subversions thereof; Neo4j EE v4.x, and all versions and subversions thereof; and Neo4j EE v5.x, and all versions and subversions thereof. Nothing herein, however, restricts Defendants from purchasing a commercial license or subscription to Neo4j EE software from Plaintiffs or their authorized resellers.

(16) Defendants may only make further use of the following publicly available Neo4j open source code, subject to the terms of their respective open source licenses: (i) Neo4j CE Source Code under the GNU General Public License, v3 ("GPL"); (ii) Neo4j EE v3.2.14 source code released under the AGPLv3; (iii) Neo4j EE v3.3.10 source code released under the AGPLv3; (iv) Neo4j EE v3.4.0.RC02 source code released under the AGPLv3. Nothing herein, however, shall be construed as a license or otherwise permit Defendants to use any source code, patches or source code commits for Neo4j EE v3.3 or Neo4j EE v3.4 that were first released under the Neo4j Sweden Software License. Further, nothing herein shall be construed as a license or otherwise permit Defendants to use or fork, any of Plaintiffs' source code that was first released as Neo4j EE v3.5 or otherwise under the Neo4j Sweden Software License, including but not limited to, all beta releases, release candidates, production releases, stable releases, and official releases, or any subsequent versions, subversions, patches or derivatives thereof.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
32

1      **IT IS SO ORDERED.**

2      Dated: July 22, 2024

3

4      _____

5      EDWARD J. DAVILA
       United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28     Case No.: 5:18-cv-07182-EJD
       FINDINGS OF FACT AND CONCLUSIONS OF LAW
                        33

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NEO4J, INC., et al.,

            Plaintiffs,

      v.

PURETHINK, LLC, et al.,

            Defendants.

Case No. 5:18-cv-07182-EJD

**JUDGMENT**

Re: Dkt. Nos. 118, 216, 248

In accordance with the Court's Orders at ECF Nos. 118, 216, and 248, the Court ENTERS

Judgment as follows:

1.      Judgment is entered in favor of Plaintiff Neo4j, Inc., on its First Cause of Action

for Trademark Infringement, 15 U.S.C. § 1114, against Defendants for their infringement of the

NEO4J Mark.  ECF No. 118.

2.      Judgment is entered in favor of Plaintiff Neo4j, Inc., on its Second Cause of Action

for False Designation of Origin and False Advertising, 15 U.S.C. § 1125(a), against all

Defendants.  ECF No. 118.

3.      Judgment is entered in favor of Plaintiff Neo4j, Inc., on its Third Cause of Action

for Unfair Competition, 15 U.S.C. § 1125(a), against all Defendants for their infringement of the

NEO4J Mark.  ECF No. 118.

4.      Judgment is entered in favor of Plaintiff Neo4j, Inc., on its Fourth Cause of Action

for Unfair Competition, Cal. Bus. Prof. Code §§ 17200, et seq., against all Defendants.  ECF No.

118.

5.      Judgment is entered in favor of Plaintiffs on their Eighth Cause of Action for

Unauthorized Distribution of Altered Copyright Management Information, 17 U.S.C. § 1202(b)(1)

and 17 U.S.C. § 1202(b)(3), against all Defendants.  ECF No. 216.

United States District Court
Northern District of California

6.    Plaintiffs are HEREBY AWARDED $597,000 in actual damages plus $57,288 in prejudgment interest, less the stipulated $26,000 deduction, and a permanent injunction as described in ECF No. 248.  Defendants are jointly and severally liable for the payment of all such amounts.  Each Party shall bear its own attorneys' fees and costs.

The Clerk of Court shall close the file in this matter.

**IT IS SO ORDERED.**

Dated: August 15, 2024

EDWARD J. DAVILA
United States District Judge

2

**TRIAL EXHIBIT 117**

| | |
|---|---|
| **From:** | Jason Zagalsky(jason@neo4j.com) |
| **To:** | Philip Rathle; John Broad; Gary Mann |
| **CC:** | |
| **BCC:** | |
| **Subject:** | Fwd: Neo4j pricing for MPO KMS Project |
| **Sent:** | 04/29/2019 02:54:33 PM -0700 (PST) |
| **Attachments:** | |

Well - the customer clearly understood that in his own words "ONgDB is not legally viable", and yet he directed Next Century to continue using it for development purposes per below.

**Jason Zagalsky**
Federal Technical Account Manager  |  Neo4j, Inc.
410-280-9697  |  jason@neo4j.com



---------- Forwarded message ---------
From: **Shahak Nagiel** <shahak.nagiel@nextcentury.com>
Date: Mon, Apr 29, 2019 at 2:30 PM
Subject: Re: Neo4j pricing for MPO KMS Project
To: Jason Zagalsky <jason@neo4j.com>
Cc: Jim Weyant <jim.weyant@nextcentury.com>

Hi Jason,

I imported (high side) your proposal and shared it with Matt.  Unfortunately--although not surprisingly--he has not yet responded.  I will ping him again this week about it and about the offer for a follow-on meeting, though I believe he expressed interest in doing so.

We continue to use ONgDB for our development purposes based on the customer's direction.

Thanks,
Shahak

  Shahak Nagiel
Principal Engineer
w (240) 297-5089 | c (413) 274-2425
shahak.nagiel@nextcentury.com

2701 Technology Drive, Suite 300 | Annapolis Junction, MD 20701
main: 443.545.3100 | fax: 240.456.0010 | www.nextcentury.com

CONFIDENTIALITY NOTICE: This message is intended only for the use of the individual or to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for the intended recipient, please be advised that any disclosure, copying, distribution, or taking of action based on the contents of this message is prohibited. If you have received this transmission in error, please notify the sender immediately.

**From:** Jason Zagalsky <jason@neo4j.com>
**Sent:** Monday, April 29, 2019 1:58 PM
**To:** Shahak Nagiel
**Cc:** Jim Weyant
**Subject:** Re: Neo4j pricing for MPO KMS Project

> **CAUTION:** This email originated from outside Next Century. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Shahak,

Has Matt shared with you any feedback on the proposal I provided?
Is he still interested in scheduling a meeting to discuss CE vs. EE?
At this point do you feel that using CE is a serious option for your project, or do you just need help showing Matt why CE won't meet his requirements?
Has ONgDB been completely removed from consideration at this point?
One thing I am not sure I mentioned is that if Matt does decide to move forward with a purchase of a Neo4j EE subscription, you could use a free 30-day trial of Neo4j EE to continue your development while the purchase makes it's way through the MPO procurement process.

Feel free to give me a call this afternoon if you prefer to discuss live rather than via email.

Best Regards,
Jason

**Jason Zagalsky**
Federal Technical Account Manager  |  Neo4j, Inc.
410-280-9697  |  jason@neo4j.com

---

On Fri, Apr 19, 2019 at 4:03 PM Jason Zagalsky <jason@neo4j.com> wrote:

Hi Shahak,

Thanks again for setting up the meeting with Matt this week. Have you received any feedback from him following the meeting? We would be glad to schedule a technical deep dive on enterprise features in the coming weeks as we discussed. For now, you will find a high level list of enterprise features included in the attached proposal that I prepared for Matt. Please forward the proposal to Matt and share any feedback.

Best Regards,
Jason

**Jason Zagalsky**
Federal Technical Account Manager  |  Neo4j, Inc.
410-280-9697  |  jason@neo4j.com

1

2

3

4            UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6                 SAN JOSE DIVISION

7

8    NEO4J, INC., et al.,                    Case No.  5:18-cv-07182-EJD

               Plaintiffs,
9                                            **ORDER GRANTING MOTION FOR**
        v.                                   **JUDGMENT ON THE PLEADINGS**
10
                                             Re: Dkt. No. 60
11   PURETHINK, LLC, et al.,

               Defendants.
12

13          Before the Court is Plaintiff and Counter-Defendant Neo4j, Inc.'s ("Plaintiff" or "Neo4j

14   USA") motion for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c)

15   (the "Motion").  Dkt. No. 60.  Plaintiff requests judgment on the pleadings as to the First Cause of

16   Action for Cancellation of Trademark and Second Cause of Action for Declaratory Relief for

17   Abandonment of Trademark asserted in Defendant John Mark Suhy's ("Suhy") Counterclaim

18   (Dkt. No. 48), as well as the Tenth Cause of Action for Declaratory Relief for Abandonment of

19   Trademark and Eleventh Cause of Action for Cancellation of Trademark asserted in the First

20   Amended Counterclaim filed by Defendants PureThink, LLC ("PureThink") and iGov Inc.

21   ("iGov") (Dkt. No. 55).  Plaintiff further seeks judgment on the on the substantively identical

22   Seventh Affirmative Defense for Cancellation of Trademark Procured by Fraud and Ninth

23   Affirmative Defense for Naked License Abandonment of Trademark asserted in the Answer to the

24   Second Amended Complaint (Dkt. No. 54) by Defendants Suhy, PureThink, and iGov

25   (collectively "Defendants").

26          The Court took the matter under submission for decision without oral argument pursuant to

27   Civil Local Rule 7-1(b).  For the reasons below, Plaintiff's motion is **GRANTED**.

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
                                        1

United States District Court
Northern District of California

# I.    Background[1]

## A.  Factual Background

Neo4j USA is a Delaware corporation with its principal place of business in San Mateo, California, specializing in graph database management systems.  SAC, ¶ 2.  Neo4j USA's platform "helps organizations make sense of their data by revealing how people, processes and digital systems are interrelated."  *Id.*  Neo4j USA has more than 300 commercial customers, including global enterprises such as Walmart, Comcast, Cisco, and eBay, and also does substantial business with government agencies, including agencies within the United States Government.  *Id.* at ¶ 3.  Neo4j USA was originally incorporated as Neo Technology, Inc., but changed its name to Neo4j, Inc. in or about July 2017.  *Id.* at ¶ 2.

Neo4j USA owns the trademark for the word mark "Neo4j," U.S. Trademark Registration No. 4,784,280.  *Id.* at ¶ 21.  Neo4j USA first used this trademark in June 2006 and has continually used it since it was published by the USPTO in May 2015 and issued on August 4, 2015.  *Id.* at ¶ 22.  Neo4j Sweden AB ("Neo4j Sweden"), a wholly owned subsidiary of Neo4j USA and a plaintiff in this action, owns certain copyrights related to the Neo4j graph platform software, including the source code, and has licensed these copyrights to Neo4j USA.  *Id.* at ¶ 4.  Neo4j Sweden distributes a version of Neo4j software known as "Neo4j Community Edition" on an open source basis under the GNU General Public License (Dkt. No. 65, Ex. B) ("GPL") and a variant called the GNU Affero General Public License (Dkt. No. 55, Ex. A) ("AGPL").  First Amended Counterclaim, Dkt. No. 55 ("Am. Counterclaim"), ¶ 7.  This open source software is available at Github.com, the preeminent open source software repository.  *Id.* at ¶ 8.  Under the GPL and AGPL, anyone can download the Neo4j Community Edition source code and use, modify,

---

[1] This background summarizes only the allegations relevant to the affirmative defenses and counterclaims at issue in the present motion for judgment on the pleadings.  Because the motion challenges both affirmative defenses and counterclaims, this background draws from allegations in both the Second Amended Complaint and the First Amended Counterclaim.

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
2

United States District Court
Northern District of California

support, combine and convey the software for free; however, licensees who copy, distribute, or modify the software are required to provide notice of any modifications they make to the software. *Id.* at ¶ 9.

While Neo4j Sweden licensed the Neo4j Community Edition software under the GPL and AGPL, Neo4j USA licensed a commercial version, known as the "Enterprise Edition" which came with additional features and commercial support. *Id.* at ¶ 11; SAC ¶ 24. The commercial version was initially licensed under the terms of the AGPL as well as under a paid commercial license. *Id.* at ¶ 25; Am. Counterclaim, ¶ 11. Plaintiff alleges that beginning in November 2018, it exclusively offered the commercial version under a paid commercial license. SAC ¶¶ 25-27.

On or around September 30, 2014, Neo4j USA entered into a Partner Agreement with Defendant PureThink, by which PureThink agreed to sell and support the commercial version of the software in exchange for a percentage of the fees. *Id.* at ¶ 29; Am Counterclaim, ¶¶ 12-15. PureThink is a Delaware limited liability company, allegedly focused on software development. SAC ¶ 6. Plaintiff alleges that iGov is the successor-in-interest and alter ego of PureThink. *Id.* at ¶¶ 6-14. Plaintiff alleges that Defendant Suhy is the sole member and manager of PureThink and the sole shareholder of iGov. *Id.* at ¶ 8.

The partnership between Neo4j USA and PureThink deteriorated, for reasons not relevant to the analysis herein, and on May 30, 2017, Neo4j USA provided PureThink with formal notification of material breach. SAC ¶ 33. Shortly thereafter, on July 11, 2017, Neo4j USA provided PureThink with written notice that the Partner Agreement was terminated due to PureThink's failure to cure the material breaches set forth in the May 30, 2017 letter. *Id.* at ¶ 35.

### B.  Procedural History

On November 28, 2018, Plaintiff filed this action against Defendants, asserting (1) Trademark Infringement; (2) False Designation of Origin; (3) False Advertising; (4) Federal and State Unfair Competition; (5) Breach of Contract; and (6) Invasion of Privacy. On January 9, 2019, Defendants PureThink and iGov filed a counterclaim against Plaintiff, alleging (1) Interference With Prospective Economic Advantage; (2) Interference with Contract; (3) Breach of

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
3

1    Contract; (4) Declaratory Relief (Void Restrictions); (5) Declaratory Relief (Restrictions Violate

2    AGPL License); and (6) Declaratory Relief (Abandonment of Trademark).

3          On October 1, 2019, Neo4j USA filed the now-related action, *Neo4j, Inc. v. Graph

4    *Foundation, Inc.*, Case No. 3:19-cv-06226-EJD (the "GFI Action").  Neo4j USA alleges that GFI

5    engaged in conduct that amounts to trademark infringement in violation of 15 U.S.C. § 1117(a), as

6    well false advertising, passing-off and false designation of origin in violation of 15 U.S.C. §

7    1125(a).  Neo4j USA further alleges that this same conduct constitutes unlawful and unfair

8    competition in violation of California's unfair competition law, Cal. Bus. & Prof. Code § 17200 et

9    seq. ("UCL").  These claims overlap with and are substantially similar to the Lanham Act and

10   UCL claims asserted by Neo4j USA against Defendants in this action.

11         On October 22, 2019, Plaintiff sought and obtained leave to file its First Amended

12   Complaint (*see* Dkt. Nos. 35-37), which set forth additional allegations to support its claims under

13   the Lanham Act and the UCL, and also included a new claim alleging that Defendant Suhy

14   violated the Digital Millennium Copyright Act ("DMCA").  The First Amended Complaint also

15   added Neo4j Sweden AB ("Neo4j Sweden") as a plaintiff, which joined in the new DMCA claim.

16         On November 13, 2019, Suhy filed a counterclaim wherein he asserted claims for (1)

17   Cancellation Of Trademark Procured By Fraud; and (2) Declaratory Relief (Abandonment of

18   Trademark).  Dkt. No. 48 ("Suhy Counterclaim").  On November 25, 2019, Plaintiffs filed their

19   Second Amended Complaint in response to a motion to dismiss filed by PureThink and iGov Inc.

20   *See* Dkt. Nos. 49-50.  On December 9, 2019, PureThink and iGov filed their First Amended

21   Counterclaim.  Dkt. No. 55 ("Am. Counterclaim").  The First Amended Counterclaim contained

22   claims identical to claims (1) and (2) asserted by Suhy for the cancellation and abandonment of the

23   trademark.  Similarly, the Answer filed by all Defendants on December 9, 2019 contains

24   affirmative defenses that are substantively identical to the cancellation and abandonment

25   counterclaims.  Dkt. No. 54 ("Answer").

26         The Defendants' Ninth Affirmative Defense, PureThink and iGov's Tenth Cause of Action

27   in their Amended Counterclaim, and Suhy's Second Cause of Action in his Counterclaim

28   Case No.: 5:18-cv-07182-EJD

*United States District Court*
*Northern District of California*

ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

4

1   (collectively, the "Abandonment Arguments") all allege:

2          [T]here is confusion whether Neo4j is a company name trademark or

3          product name trademark. This confusion is exacerbated by NEO4J

4          SWEDEN' open source license for a product called Neo4j. NEO4J

5          SWEDEN's license states: "The software ("Software") is developed and

6          owned by NEO4J SWEDEN (referred to in this notice as "Neo4j") . . .

7          NEO4J SWEDEN asserts they own the software-and not NEO4J Inc.- and

8          they use Neo4j name as part of the company name and call the open source

9          software product Neo4j too.

10  See Suhy Counterclaim at ¶ 9; Am. Counterclaim at ¶ 85; Answer at 19:13-21.  They further

11  allege, in varying language, that because "the Neo4j trademark is used and licensed as open source

12  software, there is no ability to maintain quality control" over the product and that Neo4j has

13  therefore abandoned the Neo4j trademark.  Am. Counterclaim ¶ 85.

14         Similarly, the Defendants' Seventh Affirmative Defense, PureThink and iGov's Eleventh

15  Cause of Action in their Amended Counterclaim, and Suhy's First Cause of Action in his

16  Counterclaim (collectively, the "Cancellation Arguments") all allege:

17         "The Registered Trademark for NEO4J, Reg. No. 4,784,280, was procured

18         by fraud as the representation to the PTO was that Neo Technology (a

19         Delaware corporation) (changed to Neo4J, Inc.) first used the trademark in

20         6-4-2006 and in commerce in 5-28-2007. [] These statements are

21         [knowingly] false and material to the decision to grant the registration

22         application. [] Neo Technology, the predecessor to NEO4J USA did not

23         exist on 6-4-2006 or 5-28-2007. [] Neo Technology, the predecessor to

24         NEO4J US was first formed 7-7-2011 in Delaware under File Number

25         5007564."

26  Am. Counterclaim at ¶¶ 88-92; *see also* Suhy Counterclaim at ¶¶ 4-7; Answer at 18:20-19:3.

27         The Abandonment and Cancellations Arguments are also identical to the trademark-related

28  Case No.: 5:18-cv-07182-EJD
    ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
                              5

*United States District Court*
*Northern District of California*

1    affirmative defenses asserted by Graph Foundation in the GFI Action. Thus, in addition to filing

2    the present motion for judgment on the pleadings, Neo4j USA also filed a motion to strike GFI's

3    affirmative defenses in the GFI action, which raises substantively identical legal arguments. See

4    GFI Action, Dkt. No. 32.

5          II.    **Legal Standard**

6          Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but

7    early enough not to delay trial—a party may move for judgment on the pleadings." A Rule 12(c)

8    motion challenges the legal sufficiency of the opposing party's pleadings. Judgment on the

9    pleadings is appropriate when, even if all material facts in the pleading under attack are true, the

10   moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925

11   (9th Cir. 2009).

12         On a motion for judgment on the pleadings, "all material allegations in the complaint are

13   accepted as true and construed in the light most favorable to the non-moving party." *Turner v.*

14   *Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004). "[A]ll reasonable inferences" must be made "in favor

15   of the nonmoving party." *Mediran v. International Ass'n of Machinists and Aerospace Workers*,

16   No. 09-0538 TEH, 2011 WL 2746601, at *2 (N.D. Cal. July 14, 2011). "A motion for judgment

17   on the pleadings may be granted if, after assessing the complaint and matters for which judicial

18   notice is proper, it appears 'beyond doubt that the [non-moving party] cannot prove any facts that

19   would support his claim for relief.'" *Williams v. Nichols Demos, Inc.*, No. 5:17-CV-07101-EJD,

20   2018 WL 3046507, at *3 (N.D. Cal. June 20, 2018) (citing *Morgan v. County of Yolo*, 436 F.

21   Supp. 2d 1152, 1155 (E.D. Cal. 2006)). In other words, the standard for a Rule 12(c) motion is

22   essentially the same as that for a Rule 12(b)(6) motion. *Chavez v. United States*, 683 F.3d 1102,

23   1108 (9th Cir. 2012).

24         "[I]t is common to apply Rule 12(c) to individual causes of action," as well as individual

25   affirmative defenses and answers. *Strigliabotti v. Franklin Res., Inc.*, 398 F.Supp.2d 1094, 1097

26   (N.D. Cal. 2005); *Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*, No. C 12-05523

27   WHA, 2013 WL 4519805, at *1 (N.D. Cal. Aug. 23, 2013) (granting trademark holder's motion

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
                                            6

1    for judgment on the pleadings with respect to three of defendant's affirmative defenses).

2    Although Rule 12(c) makes no mention of leave to amend, "courts have discretion both to grant a

3    Rule 12(c) motion with leave to amend . . . and to simply grant dismissal of the action instead of

4    entry of judgment." *Mitchell v. Corelogic, Inc.*, No. SA 17-CV-2274-DOC (DFMx), 2019 WL

5    7172978, at *4 (C.D. Cal. Nov. 20, 2019) (citing *Carmen v. S.F. Unified Sch. Dist.*, 982 F. Supp.

6    1396, 1401 (N.D. Cal. 1997) and *Moran v. Peralta Community College Dist.*, 825 F.Supp. 891,

7    893 (N.D. Cal. 1993)).

8         **III.    Discussion**

9              **A.  Judicial Notice**

10        As with a Rule 12(b)(6) motion, the Court may also consider documents that are attached

11   to the complaint, incorporated by reference when their authenticity is not contested, or are

12   otherwise properly the subject to judicial notice. *See Ramachandran v. City of Los Altos*, 359

13   F.Supp.3d 801, 810 (N.D. Cal. 2019); *see also Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163

14   F.Supp.3d 755, 764 (C.D. Cal. 2015).

15        The AGPL was attached to the Amended Counterclaim as Exhibit A.  It was also

16   repeatedly referenced and quoted throughout the SAC and Amended Counterclaim.  The GPL was

17   attached to Plaintiff's Request for Judicial Notice, submitted in conjunction with the Reply.  See

18   Dkt. No. 65, Ex. B.  The GPL was also repeatedly referenced in the SAC, Amended Counterclaim

19   Suhy Counterclaim and Answer.  Both documents are publicly available and their authenticity is

20   not in dispute.  Thus, the Court finds that the document is incorporated by reference into the

21   pleadings and may be properly considered on this motion. *See Van Buskirk v. CNN*, 284 F.3d 977,

22   980 (9th Cir. 2002) (recognizing that a court may rely upon "the doctrine of 'incorporation by

23   reference' to consider documents that were referenced extensively in the complaint and were

24   accepted by all parties as authentic"); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)

25   ("Even if a document is not attached to a complaint, it may be incorporated by reference into a

26   complaint if the plaintiff refers extensively to the document or the document forms the basis of the

27   plaintiff's claim.").

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
     7

*United States District Court*
*Northern District of California*

1    The remainder of the documents included in Plaintiff's two requests for judicial notice are

2    not relevant to the Court's analysis and, therefore, the Court declines to take judicial notice of

3    those documents.

4                              **B.  Cancellation Arguments**

5          In their Opposition, Defendants conceded, and the Court agrees, that a misstatement of a

6    date of first use in a registration in and of itself does not support cancellation of the trademark.

7    Opposition, p. 3; *see Pony Exp. Courier Corp. of Am. v. Pony Exp. Delivery Serv.*, 872 F.2d 317,

8    319 (9th Cir. 1989); *Teeter-Totter, LLC v. Palm Bay Int'l, Inc.*, 344 F.Supp.3d 1100, 1109 (N.D.

9    Cal. 2018) (citing same) (dismissing trademark cancellation counterclaim because "allegations

10   that [the trademark applicant] made false statements about [its] date of first use in commerce are

11   not sufficient to state a claim ... for fraud to cancel [Plaintiff's trademark] registration").

12         Thus, Defendants effectively conceded that the Cancellation Arguments fail to establish a

13   legally plausible claim or defense.  Given this concession, the Court finds that amendment would

14   be futile.  *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (The Court

15   "may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with

16   the challenged pleading could not possibly cure the deficiency.").  Accordingly, the Court

17   **GRANTS** the Motion as to the Cancellation Arguments and **DISMISSES** these claims with

18   prejudice.

19                              **C.  Abandonment Arguments**

20         Under the Lanham Act, a mark can only be deemed "abandoned" when either of the

21   following occurs: "(1) When its use has been discontinued with intent not to resume such use," or

22   "(2) When any course of conduct of the owner, including acts of omission as well as commission,

23   causes the mark to become the generic name for the goods or services on or in connection with

24   which it is used or otherwise to lose its significance as a mark."  15 U.S.C. § 1127.  Both of

25   Defendants' arguments fall under the second definition of abandonment.

26         In their counterclaims and identical affirmative defense, Defendants argue that Neo4j USA

27   abandoned the Neo4j mark by (1) creating "confusion" by using it as both a company name and

28   Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

8

United States District Court
Northern District of California

United States District Court
Northern District of California

1    the name of multiple software products; and (2) distributing Neo4j-branded software via an open

2    source license, which allegedly amounts to naked licensing.

3                                    **i.  Confusion**

4          Defendant first alleges that the use of the mark "Neo4j" as both a trade name and the name

5    of multiple software products is confusing.  Specifically, the allegations stated in the Amended

6    Counterclaim are that "there is confusion whether Neo4j is a company name trademark or product

7    name trademark" and that "[Plaintiffs] use Neo4j name as part of the company name and call the

8    open source software product Neo4j too."  Am. Counterclaim, ¶ 85; *see also* Suhy Counterclaim, ¶

9    9; Answer, 19:13-21.

10          Plaintiff argues that these allegations are insufficient to state a claim or defense of

11   abandonment because there are no allegations suggesting that the use of "Neo4j" as both a

12   company name and product name has caused the mark to become generic or otherwise lose its

13   trade significance.  In fact, Plaintiff avers that the use of the mark as both a company name and

14   product name "demonstrates its strength and significance because the mark is functioning as its

15   intended purpose as an indicator of origin."  Motion, p. 13.

16          The Court agrees with Plaintiff that the use of a mark in both a company name and product

17   name, without more, is not sufficient to show that the mark has been abandoned.  Indeed,

18   companies often share a name with their products without causing any confusion to the public or

19   reducing the significance of the mark.  *See Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531,

20   1534 (9th Cir. 1989) ("Trade names often function as trademarks or service marks as well.");

21   *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 846 F. Supp. 2d 1063, 1074 (N.D. Cal. 2012)

22   (finding that trademark was still protected where plaintiff SunEarth "used SunEarth as both a trade

23   name, referring to the company, and a trademark, referring to particular products"); *Stork Rest. v.*

24   *Sahati*, 166 F.2d 348, 353 (9th Cir.1948) ("A corporate name or trade name identifies a

25   corporation; it also identifies its business and the goods or services which it sells or renders");

26   *Standard Oil Co. of N. M. v. Standard Oil Co. of Cal.*, 56 F.2d 973, 979 (10th Cir. 1932) (same).

27          Defendants do not address this case law in their Opposition, nor do they provide any

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
                                       9

United States District Court
Northern District of California

1  factual allegations in their pleadings demonstrating that Plaintiff's use of the Neo4j mark in its

2  company name and product name has caused confusion. Even accepting the allegations of

3  confusion in the pleadings as true, Defendant does not allege that this confusion has caused the

4  mark "to become the generic name" for goods of the same type or "to lose its significance as a

5  mark" such that the mark could be found to be abandoned. 15 U.S.C. § 1127.

6       Defendants' allegation that the "Neo4j" mark is used in the company names of both Neo4j,

7  Inc. as well as Neo4j Sweden is insufficient to establish abandonment for the same reasons.

8  Plaintiff alleges that Neo4j Sweden is a wholly owned subsidiary of Neo4j USA. SAC ¶ 4. The

9  Lanham Act expressly recognizes that a registered mark "may be used legitimately by related

10 companies, such use shall inure to the benefit of the registrant . . . and such use shall not affect the

11 validity of such mark or of its registration." 15 U.S.C. § 1055; see also 15 U.S.C. § 1127 ("The

12 term 'related company' means any person whose use of a mark is controlled by the owner of the

13 mark with respect to the nature and quality of the goods or services on or in connection with

14 which the mark is used.").

15      Defendants, however, denied the allegation that the companies are related in their Answer,

16 asserting a lack of knowledge sufficient to form a belief. Answer, ¶ 4. Defendants do not assert

17 any allegations as to the relationship of Neo4j USA and Neo4j Sweden in their pleadings. Even

18 making all inferences in favor of Defendants and assuming that the companies are not related, the

19 allegation that both companies use "Neo4j" in their name is still insufficient to show that the mark

20 has been abandoned. The use of the mark in two companies' names, without more, does not

21 demonstrate that the mark has "become the generic name" for goods of the same type or has

22 "los[t] its significance as a mark" such that the mark could be found to be abandoned. 15 U.S.C. §

23 1127. Thus, Defendants' argument that Plaintiff used the mark in multiple company names and

24 product names fails to support a claim or defense that the mark has been abandoned.

25                              **ii. Naked Licensing**

26      Defendants next argue that the "Neo4j" mark has been abandoned under the "naked

27 licensing" doctrine because Plaintiff failed to control the quality of products using the trademark.

28 Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
10

United States District Court
Northern District of California

1    It is well-established that "[u]ncontrolled or 'naked' licensing may result in the trademark

2    ceasing to function as a symbol of quality and controlled source." *Barcamerica Int'l USA Trust v.*

3    *Tyfield Importers, Inc.*, 289 F.3d 589, 595-96 (9th Cir. 2002) (citing *Moore Bus. Forms, Inc. v.*

4    *Ryu,* 960 F.2d 486, 489 (5th Cir.1992)). "Consequently, where the licensor fails to exercise

5    adequate quality control over the licensee, a court may find that the trademark owner has

6    abandoned the trademark, in which case the owner would be estopped from asserting rights to the

7    trademark." *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 516 (9th Cir. 2010)

8    (quoting *Barcamerica*, 289 F.3d at 596). "[T]he naked licensing claim is fundamentally a claim

9    that the trademark is no longer valid and enforceable because of the licensor's neglect in policing

10   its use." *Monster, Inc. v. Dolby Labs. Licensing Corp.*, 920 F. Supp. 2d 1066, 1076 (N.D. Cal.

11   2013). Because the theory is essentially that a party forfeited trademark rights, "the Ninth Circuit

12   has described the standard required of the trademark challenger as 'stringent.'" *Id.* (quoting

13   *FreecycleSunnyvale*, 626 F.3d at 514) (citing *Barcamerica*, 289 F.3d at 596).

14   Defendants argue that the distribution of Neo4j branded software on an open source basis,

15   subject to the GPL and AGPL, amounts to naked licensing. Specifically, Defendants allege that

16   because "the Neo4j trademark is used and licensed as open source software there is no ability to

17   maintain quality control over the software product called Neo4j as any licensees may modify

18   combine the software with other code and distribute[] or convey Neo4j without required quality

19   control by Neo4J USA." Am. Counterclaim, ¶ 85; *see also* Suhy Counterclaim, ¶ 9; Answer at

20   19:21-25.

21   Plaintiff argues that distribution of Neo4j software on an open source basis does not

22   establish abandonment because its use of the GPL and AGPL demonstrates an effort to control the

23   quality of the mark rather than evidence an abandonment of it. Motion, p. 15. Under the terms of

24   the GPL, a licensee may "convey a work based on the Program, or the modifications to produce it

25   from the Program, in the form of source code under the terms of section 4, provided that . . . [t]he

26   work must carry prominent notices stating that [the licensee] modified it, and giving a relevant

27   date." GPL § 5(a). The AGPL similarly provides that a licensee "may convey a work based on

28   Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
11

the Program, or the modifications to produce it from the Program, in the form of source code under the terms of section 4, provided that . . . [t]he work must carry prominent notices stating that the licensee modified it, and giving a relevant date." AGPL § 5(a). Plaintiff argues that these provisions expressly require licensees to identify any and all modifications they make to the software to ensure that such modifications are not attributed to the Neo4j mark. Because users are required to provide prominent notice of their modifications, Plaintiff argues that the GPL and AGPL are not trademark licenses at all, and that it is still able to control the quality of software bearing the Neo4j mark. *See* GPL § 7(e) (authorizing users to *supplement* to terms of the GPL with terms "declining to grant rights under trademark law for . . . trademarks" indicating that the GPL does not otherwise cover trademark rights).

In support of this argument, Plaintiff cites *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1198 (11th Cir. 2001). In *Planetary Motion*, the Eleventh Circuit considered whether the plaintiff's distribution of his software on a public site pursuant to the GPL constituted "use in commerce" sufficient to create ownership rights in the mark. *Id.* at 1196. The Court held:

> "That the Software had been distributed pursuant to a GNU General Public License does not defeat trademark ownership, nor does this in any way compel a finding that [plaintiff] abandoned his rights in trademark. Appellants misconstrue the function of a GNU General Public License. Software distributed pursuant to such a license is not necessarily ceded to the public domain and the licensor purports to retain ownership rights, which may or may not include rights to a mark."

*Id.* at 1198. In a footnote, the Court explained that "[b]ecause a GNU General Public License requires licensees who wish to copy, distribute, or modify the software to include a copyright notice, the license itself is evidence of [plaintiff's] efforts to control the use of the . . . mark in connection with the Software." *Ibid.*

Defendants argue that *Planetary Motion* is distinguishable here because "[c]ontrol of ownership of a trademark to support a use in commerce position is not equivalent to requiring

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
12

1    quality control under a naked license analysis." Opposition, p. 7. While it is true that ownership

2    analysis in *Planetary Motion* differs from the abandonment analysis here, Defendants fail to show

3    why the level of control exerted under the GPL is not also sufficient to overcome a claim of

4    abandonment. Instead, Defendants argue that Neo4j USA is unable to control the quality of

5    products using the mark because neither the GPL nor AGLP contain specific trademark quality

6    control provisions. In support of this contention, Defendants cite *FreecycleSunnyvale v. Freecycle*

7    *Network*, 626 F.3d 509 (9th Cir. 2010). In *Freecycle*, the Court considered whether the defendant

8    had established adequate control standards over its licensees' use of the trademark to avoid a

9    finding of naked licensing and abandonment where the defendant allowed others to use the

10    trademark without a formal license agreement. *Id.* The Court noted that the absence of an

11    agreement with quality control provisions supports a finding of naked licensing, but also

12    acknowledged that "[t]he lack of an express contract right . . . is not conclusive evidence of lack of

13    control." *Id.* at 516 (citing *Barcamerica,* 289 F.3d at 596). The court found in that case that the

14    defendant did not exercise "actual control" over licensees' use of the trademark. *Id.* at 518.

15    Defendants do not raise any allegations indicating that Plaintiff has failed to exercise actual

16    control over licensees' use of the trademark. Thus, the Court finds that the absence of specific

17    quality control provisions—either in the GPL, AGPL, or in a separate trademark license—is not

18    dispositive here. *See Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1098 (9th Cir.

19    2013) ("[e]ven absent formal quality control provisions, a trademark owner does not abandon its

20    trademark where the particular circumstances of the licensing arrangement suggests that the public

21    will not be deceived") (internal quotes and citation omitted). Moreover, this Court is persuaded by

22    the reasoning in *Planetary Motion* that the notice requirements in the GPL and AGPL evidence an

23    effort to control the use of the mark.

24    Thus, the fact that Plaintiff distributed Neo4j software on an open source basis pursuant to

25    the GPL and AGPL is not, without more, sufficient to establish a naked license or demonstrate

26    abandonment. However, "[t]he court should freely give leave when justice so requires." Fed. R.

27    Civ. P. 15(a)(2). To the extent that Defendants are able to allege that Plaintiff failed to exercise

28    Case No.: 5:18-cv-07182-EJD

1    actual control over licensees' use of the trademark, such allegations may be sufficient to state a

2    claim of abandonment under *Freecycle*.  Because amending the complaint to add allegations

3    regarding Plaintiff's lack of actual control over use of the trademark would not be futile, cause

4    undue delay, or unduly prejudice Plaintiff, the Court grants leave to amend. *Leadsinger, Inc. v.*

5    *Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).  The Court **GRANTS** Neo4j USA's Motion and

6    **DISMISSES** the Abandonment Arguments with leave to amend.

7          **IV.**    **Conclusion**

8         For the reasons stated above, the Court **GRANTS** Neo4j USA's Motion in full.  The First

9    Cause of Action in the Suhy Counterclaim, the Eleventh Cause of Action in the Amended

10   Counterclaim, and the Seventh Affirmative Defense in the Answer are **DISMISSED with**

11   **prejudice**.  The Second Cause of Action in the Suhy Counterclaim, the Tenth Cause of Action in

12   the Amended Counterclaim and the Ninth Affirmative Defense in the Answer are **DISMISSED**

13   **with leave to amend**.

14        If Defendants wish to file an amended counterclaim for the sole purpose of adding

15   allegations to support an abandonment argument as described above, they may do so on a

16   consolidated basis by no later than June 5, 2020.

17        **IT IS SO ORDERED.**

18   Dated:  May 21, 2020

19

20                                    EDWARD J. DAVILA
                                 United States District Judge

21

22

23

24

25

26

27

28   Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
                                   14

*United States District Court*
*Northern District of California*

# EXHIBIT A

Free Software Foundation (FSF) Cease-and-Desist Letter to Neo4j, Inc.

Dated: November 13, 2023



Page 1

November 13, 2023

Neo4j, Inc.
400 Concar Dr.
San Mateo, CA 94402, USA
Attention: Legal Department

Re:     Neo4J Cease and Desist

We have learned of your continued use of the Free Software Foundation's ("FSF") rights related to the GNU Affero General Public License version 3 ("GNU AGPLv3") in a confusing and unauthorized manner. The FSF holds the copyright to the GNU AGPLv3, including all rights to make derivative works, as well as trademark rights to "GNU AFFERO GENERAL PUBLIC LICENSE" and related marks used in it, including:

* FSF (USPTO 87909272, EUIPO 003119691);
* Free Software Foundation (USPTO 87909237, EUIPO 003120334);
* GNU (USPTO 85380218)

While we are pleased when people use the GNU AGPLv3 to distribute and license software, we want to ensure that software freedom is protected as intended. The FSF allows everyone to use its licenses to grant and protect the fundamental freedoms to use programs for any purpose, study and change them, and sell or give away copies of programs or their modified versions. However, the FSF does *not* allow the making or distributing of altered versions of the licenses, including the GNU AGPLv3, resulting in unauthorized derivative works. Nor do we allow others to use our registered or common law trademarks without authorization.

We are referring to the README file[1] distributed by Neo4j releases 3.4.0-3.5.3. Among other issues, it clearly states in the "Extending" section that the software is available under the GNU AGPLv3. However, you then inappropriately use our marks in the "Licensing" section, where it states that some of the modules of Neo4j Enterprise are "licensed under AGPLv3 with the Commons Clause." You are not authorized to use any of our marks including "GNU," "AGPL," and "Affero General Public License," or any other variation of those marks in connection with any licenses other than to refer to the unmodified licenses as published by us. You are also not permitted to make unauthorized derivative works of the GNU AGPLv3 by adding additional text to the license as was done in LICENSE.txt accompanying aforementioned releases.

Your distribution of these releases has caused and continues to cause confusion among consumers since the README distributed by you clearly states that each of these releases is

51 Franklin St. 5th Floor Boston MA 02110 U.S.A
tel: 1.617.542.5942 | fax: 1.617.542.2652 | www.fsf.org



Page 2

"licensed under the [GNU] AGPLv3," but confusingly suggests that the Commons Clause would restrict a licensee's rights under our license.

The GNU AGPLv3 by its terms, including as reproduced by you in the LICENSE.txt, permits all licensees to remove any additional terms that are "further restrictions" under the GNU AGPLv3. The text of the GNU AGPLv3 makes this clear as it says, "[i]f the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term[,]" and the GNU AGPLv3 clearly defines the phrase "this License" to mean "version 3 of the GNU Affero General Public License." It is well known that the "Commons Clause" is a "further restriction" under the terms of the GNU AGPLv3 and therefore all licensees under the GNU AGPLv3 are permitted to remove it[2].

We encourage you to clarify the situation by making it unambiguous that these software releases are licensed under the GNU AGPLv3 and users who already received copies of the software are allowed to remove any further restriction. You can do this by simply stating that the releases are licensed under the GNU AGPLv3 without any further restrictions and removing all references to the "Commons Clause."

However, if your altered version of the license is an attempt to create a proprietary license, you are not allowed to use any of the FSF's family of GNU General Public Licenses or any of the FSF's trademarks, registered or unregistered, for that purpose. The FSF has no wish to advise or request drafting a new proprietary software license, but we realize that we cannot forbid you from doing so. Thus, we believe that in such case it is our duty to minimize the harm resulting from confusing users with attempts to release proprietary software under a license using the name, text, and trademarks associated with free software.

The conditions on which we authorize the creation of derivative works of our licenses are stated in our FAQ[3]. Our FAQ clearly outlines the steps required, including removing specific sections of the license text and removing any references to our marks. These conditions avoid confusing uses of the GNU AGPLv3 and the FSF's trademarks included in it.

We hope to cooperate to resolve this matter amicably. Neo4j software mentioned above is publicly available on Github as of this writing and also advertised by Neo4j, Inc. [4][5] (the latter not mentioning 3.4 release). If Neo4j, Inc. is currently making any other unauthorized use of any of FSF's copyrights or trademark rights related to the GNU AGPLv3, the above requests apply to such other copies and uses as well. Please confirm in writing within 14 days from the receipt of this letter that you have taken steps to remedy this situation.

Sincerely,

Zoë Kooyman,
Executive Director
Free Software Supporter

51 Franklin St. 5th Floor Boston MA 02110 U.S.A
tel: 1.617.542.5942 | fax: 1.617.542.2652 | www.fsf.org



Page 3

[1] README.asciidoc available at
https://github.com/neo4j/neo4j/tree/3.4#readme and related tagged releases

[2] "Can I modify the GPL and make a modified license?" available at
https://www.gnu.org/licenses/gpl-faq.html#ModifyGPL

[3] "I'd like to license my code under the GPL, but I'd also like to make it clear that it can't be
used for military and/or commercial uses. Can I do this?" available at
https://www.gnu.org/licenses/gpl-faq.html#NoMilitary

[4] "Neo4j Debian Packages" available at https://debian.neo4j.com/

[5] "Neo4j RPM Packages" available at https://yum.neo4j.com/

51 Franklin St. 5th Floor Boston MA 02110 U.S.A
tel: 1.617.542.5942 | fax: 1.617.542.2652 | www.fsf.org