No. 24-5538

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**NEO4J, INC., et al.,**

*Plaintiff and Appellee,*

v.

**Suhy, et al.**; *Defendant and*

*Appellant.*

---

Appeal From a Judgment of the United States District Court
For the Northern District of California
Hon. Edward J. Davila
United States District Judge
N. D. Cal. No. 5:18-cv-07182 EJD

---

**APPELLANTS' EXCERPT OF RECORD**

**VOL. 15 OF 16**

**pp. 2949-3193**

---

John Mark Suhy Jr (Pro Se)
8814 Danewood Dr
Alexandria, VA 22308
jmsuhy@gmail.com
Tel.: (703) 862-7780

1   John V. Picone III, Bar No. 187226
    jpicone@hopkinscarley.com
2   Jeffrey M. Ratinoff, Bar No. 197241
    jratinoff@hopkinscarley.com
3   Arthur E. Rothrock, Bar No. 312704
    arothrock@hopkinscarley.com
4   HOPKINS & CARLEY
    A Law Corporation
5   The Letitia Building
    70 South First Street
6   San Jose, CA  95113-2406

7   *mailing address:*
    P.O. Box 1469
8   San Jose, CA 95109-1469
    Telephone:    (408) 286-9800
9   Facsimile:    (408) 998-4790

10  Attorneys for Plaintiffs and Counter-Defendants
    NEO4J, INC. and NEO4J SWEDEN AB
11
                    UNITED STATES DISTRICT COURT
12
                  NORTHERN DISTRICT OF CALIFORNIA
13

14  NEO4J, INC., a Delaware corporation, and        CASE NO. 5:18-cv-07182-EJD
    NEO4J SWEDEN AB, a Swedish
15  corporation,                                     **PLAINTIFFS' NOTICE OF MOTION AND
                                                     MOTION FOR SUMMARY JUDGMENT
16                 Plaintiffs,                        ON THEIR DMCA CLAIM AND
                                                     DEFENDANTS' BREACH OF CONTRACT
17         v.                                        COUNTERCLAIM AND UNCLEAN
                                                     HANDS DEFENSE; MEMORANDUM OF
18  PURETHINK LLC, a Delaware limited                POINTS AND AUTHORITIES IN
    liability company, IGOV INC., a Virginia         SUPPORT THEREOF**
19  corporation, and JOHN MARK SUHY, an
    individual,                                      Date:        July 27, 2023
20                                                   Time:        9:00 a.m.
                   Defendants.                       Dept.:       Courtroom 4, 5th Floor
21                                                   Judge:       Hon. Edward J. Davila
    AND RELATED COUNTERCLAIM.
22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4892-9596-9103.4
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2950

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 27, 2023, at 9:00 a.m., before the Honorable Edward J. Davila, in Courtroom 4, 5th Floor, 280 South First Street, San Jose, CA 95113, Plaintiffs and Counter-Defendants Neo4j, Inc., and Neo4j Sweden AB ("Plaintiffs") will and hereby do move the Court for an order granting partial summary judgment in Plaintiffs' favor pursuant to Federal Rule of Civil Procedure 56 on their Eighth Cause of Action for the Unauthorized Distribution of Altered Copyright Management Information in violation of 17 U.S.C. § 1202(b) of the Digital Millennium Copyright Act ("DMCA") asserted against Defendants PureThink LLC ("PureThink"), iGov Inc. ("iGov") and John Mark Suhy (collectively "Defendants"). *See* Dkt. No. 90, ¶¶ 166-173.

Plaintiffs also move for the Court for an order granting summary judgment in their favor on Defendants' Fourth Affirmative Defense for Unclean Hands asserted in their Answer to Plaintiffs' Third Amended Complaint. *See* Dkt. No. 91 at 16:20-19:7.

Finally, Neo4j USA moves for an order granting summary judgment in its favor on the Fourth Cause of Action Breach of Exclusive Contract to Government asserted by PureThink in Defendants' Fourth Amended Counterclaim. *See* Dkt. No. 177, ¶¶ 53-57.

This motion ("Motion") is based on (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities below and the Separate Statement of Undisputed Facts attached thereto as **Exhibit A**; (3) the Declaration of Jeffrey M. Ratinoff filed in support of Plaintiffs' first Motion for Summary Judgment [Dkt. No. 98-1]; (4) the Declaration of Philip Rathle filed in support of Plaintiffs first summary judgement motion [Dkt. No. 98-2]; (5) the Declaration of John Broad filed in support of Plaintiffs' first Motion for Summary Judgment [Dkt. No. 98-3]; (6) the Court's order granting partial summary judgment in favor of Neo4j USA on its Lanham Act and UCL claims [Dkt. No. 118] and the Ninth Circuit's Memorandum of Disposition affirming the same [Dkt. No. 140]; (7) the additional Declaration of Jeffrey M. Ratinoff filed herewith; (8) all other orders, pleadings, records and papers on file in this action; and (9) upon such further oral and documentary evidence as may be presented at the hearing on this Motion.

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

- 1 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2951

## REQUESTED RELIEF

Plaintiffs respectfully request that the Court grant partial summary judgment in favor of Plaintiffs on their DMCA claim asserted against all Defendants. The undisputed material facts establish that Defendants violated the DMCA by removing and altering Neo4j Sweden's copyright management information ("CMI") governing the source code for its Neo4j® Enterprise Edition ("Neo4j® EE") software, and distributing it as their improperly licensed ONgDB, GraphStack GDB and GDB software with the understanding that it would induce or result in the infringement of Neo4j Sweden's copyrights.

Plaintiffs are seeking partial summary judgment on this claim because they intend to seek to prove-up their actual damages suffered in conjunction with their Lanham Act claims (which the Court already found Defendants liable for violating 15 U.S.C. §§ 1114(1), 1125(a)), at trial pursuant to 17 U.S.C. § 1203(c)(2). This is in the interest of judicial economy as there is substantial overlap in the evidence supporting Plaintiffs' damages caused by Defendants' violations of the DMCA and the Lanham Act. Plaintiffs also reserve the right to elect to recover statutory damages before final judgment is entered pursuant to 17 U.S.C. § 1203(c)(3)(B). In addition, Plaintiffs will seek its attorneys' fees and costs pursuant to 17 U.S.C. § 1203(b)(4)-(5).

Finally, Plaintiffs respectfully request that the Court enter the proposed preliminary injunction concurrently filed herewith pursuant to 17 U.S.C. § 1203(b)(1). Plaintiffs have already suffered a reputational loss as result of Defendants' unauthorized "relicensing" of Neoj4® EE under the AGPL and falsely calling ONgDB a free and unrestricted drop-in replacement for official Neo4j® EE. Defendants have already infringed on and caused others to infringe on Neo4j Sweden's copyrights associated with Neo4j® EE. It is also clear that Defendants will continue to do so unless enjoined by the Court.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the undisputed material facts establish that Defendants intentionally removed and/or altered Neo4j Sweden's CMI without its authorization.

2.      Whether the undisputed material facts establish that Defendants knew that CMI was removed or altered without Neo4j Sweden's authorization.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4892-9596-9103.4

- 2 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2952

3.      Whether the undisputed material facts establish that Defendants distributing works with the knowledge that Neo4j Sweden's CMI was removed.

4.      Whether the undisputed material facts establish that Defendants knew or had reasonable grounds to know that the removal of Neo4j Sweden's CMI would induce, enable, facilitate, or conceal copyright infringement.

5.      Whether the Court should enjoin Defendants from further violations of the DMCA in relation to the distribution of graph database software containing a DMCA violation and/or that infringes Neo4j Sweden's copyrights in Neo4j® EE.

6.      Whether Neo4j USA is entitled to summary judgment on Defendants' unclean hands defense because they cannot establish that Neo4j USA's conduct is inequitable.

7.      Whether Neo4j USA is are entitled to summary judgment on Defendants' unclean hands defense because they cannot establish that Neo4j USA's conduct relates to the subject matter of its Lanham Act, UCL and breach of contract claims.

8.      Whether Neo4j USA is entitled to summary judgment on PureThink's breach of exclusivity contract counterclaim because it cannot establish the existence of an enforceable contract.

9.      Whether Neo4j USA is entitled to summary judgment on PureThink's breach of exclusivity contract counterclaim because PureThink did not perform and/or has no excuse for its non-performance under the alleged contract.

10.      Whether Neo4j USA is entitled to summary judgment on PureThink's breach of exclusivity contract counterclaim because PureThink cannot establish Neo4j USA breached the alleged contract.

11.      Whether Neo4j USA is entitled to summary judgment on PureThink's breach of exclusivity contract counterclaim because PureThink did not suffer any damages from the alleged breach thereof.

4892-9596-9103.4

- 3 -

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   STATEMENT OF FACTS ................................................................................. 2

A.    The Evolution of Plaintiffs' Licensing Model for the Neo4j® Platform ............... 2

B.    PureThink Enters Into the Neo Solution Partner Agreement with Neo4j USA ....... 3

C.    The IRS's Adoption of the Government Edition .................................... 4

D.    Suhy and iGov Offer "Government Packages for Neo4j" to the IRS ................... 4

E.    The IRS Awards the CKGE Contract to Suhy via eGovernment Solutions ........... 5

F.    Defendants Improperly Remove the Commercial Restrictions in the Neo4j Sweden Software License in Order to Promote ONgDB as a "Free and Open Source" Neo4j® EE ......................................................................... 6

G.    The IRS Adopts ONgDB Rather Than Pay for a License to Use Neo4j® EE ........ 7

III.  APPLICABLE MOTION FOR SUMMARY JUDGMENT STANDARDS ..................... 7

IV.   THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF PLAINTIFFS ON THEIR DMCA CLAIM ........................................................... 8

A.    Neo4j® EE and the License Thereto Contained Neo4j Sweden's CMI ................ 9

B.    Suhy Intentionally Removed Neo4j Sweden's CMI from Neo4j® EE Without its Authorization and PureThink and iGov Had Actual Knowledge Thereof ............................................................................................... 9

C.    Defendants Distributed Neo4j Sweden's Works with its CMI Removed ............. 10

D.    The Undisputed Facts Establish that Defendants Knew or Had a Reasonable Basis to Know the Removal of the Neo4j Sweden's CMI Would Induce, Enable and Facilitate Copyright Infringement ........................... 11

E.    Plaintiffs are Entitled to Injunctive Relief Under 17 U.S.C. ......................... 15

V.    NEO4J USA IS ENTITLED TO SUMMARY JUDGMENT ON DEFENDANTS' UNCLEAN HANDS DEFENSE ....................................................................... 16

VI.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT  PURETHINK'S BREACH OF EXCLUSIVELY CONTRACT COUNTERCLAIM .......................... 20

A.    Neo4j Never Consented to Separate Exclusivity Agreement with PureThink ......................................................................................... 21

B.    Neo4j Did Not Breach the Alleged Exclusivity Agreement .......................... 23

C.    Defendants Failed to Perform and Did Not Suffer Any Monetary Damages ....... 23

VII.  CONCLUSION ............................................................................................... 25

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4892-9596-9103.4                                     - i -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2954

**TABLE OF AUTHORITIES**

Page

**Cases**

*Addisu v. Fred Meyer, Inc.*,
198 F.3d 1130 (9th Cir. 2000)..................................................................................... 8

*Allmerica Fin. Life Ins. & Annuity Co. v. Dalessio*,
No. C-96-0385 VRW, 2006 WL 408538 (N.D. Cal. Feb. 20, 2006)....................................... 18

*Alpha GRP, Inc. v. Subaru of Am., Inc.*,
No. CV182133MWFMRWX, 2022 WL 18638819 (C.D. Cal. Apr. 27, 2022)....................... 24

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................... 8

*Apple Inc. v. Psystar Corp.*,
673 F. Supp. 2d 943 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) ................. 15, 16

*Carson v. Verismart Software*,
2012 WL 1038713 (N.D. Cal. Mar. 27, 2012)........................................................... 10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................................................ 8, 21

*Curley v. Wells Fargo & Co.*,
120 F. Supp. 3d 992 (N.D. Cal. 2015), *aff'd*, 692 F. App'x 900 (9th Cir. 2017) .................. 23

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
826 F.2d 837 (9th Cir. 1987)............................................................................... 17, 19

*GoTo.com, Inc. v. Walt Disney Co.*,
202 F.3d 1199 (9th Cir. 2000)............................................................................... 17

*Hal Roach Studios, Inc. v. Feiner & Co., Inc.*,
896 F.2d 1542 (9th Cir. 1990)..................................................................................... 8

*Harrington v. Pinterest, Inc.*,
No. 5:20-CV-05290-EJD, 2022 WL 4348460 (N.D. Cal. Sept. 19, 2022)........................... 10

*Hickcox-Huffman v. US Airways, Inc.*,
855 F.3d 1057 (9th Cir. 2017)................................................................................... 20

*Jacobsen v. Katzer*,
535 F.3d 1373 (Fed. Cir. 2008)................................................................................ 13

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*,
287 F.3d 866 (9th Cir. 2002)..................................................................................... 17

4892-9596-9103.4

- ii -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,

4
     304 F.3d 829 (9th Cir. 2002)..................................................................... 18

*Keystone Driller Co. v. Gen. Excavator Co.*,

5
     290 U.S. 240 (1933)................................................................................ 17

6

*Lujan v. National Wildlife Fed'n*,

7
     497 U.S. 871 (1990) ................................................................................ 8

8   *Mango v. BuzzFeed, Inc.*,
     970 F.3d 167 (9th Cir. 2020)................................................................. 9, 15

9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

10
     475 U.S. 574 (1986)................................................................................ 8

11

*Maui Jim, Inc. v. SmartBuy Guru Enterprises*,

12
     386 F. Supp. 3d 926 (N.D. Ill. 2019) ...................................................... 20

13   *MDY Indus., LLC v. Blizzard Ent., Inc.*,
     629 F.3d 928 (9th Cir. 2010)................................................................. 13

14

*Merced County Sheriff's Employees' Ass'n v. Merced County*,

15
     188 Cal.App.3d 662 (1987)..................................................................... 21

16

*Meta Platforms, Inc. v. BrandTotal Ltd.*,

17
     605 F. Supp. 3d 1218 (N.D. Cal. 2022) .................................................. 23

18   *Michael Grecco Prods., Inc. v. WrapMarket, LLC*,
     2017 WL 10434020 (C.D. Cal. Nov. 8, 2017)......................................... 15

19

*Mitchell v. Specialized Loan Servicing LLC*, 600 F. Supp. 3d 1112 (C.D. Cal. 2021),

20
     *aff'd*, No. 22-55107, 2022 WL 17883609 (9th Cir. Dec. 23, 2022) ....................... 23

21   *Neo4j, Inc. v. Graph Found., Inc.*,
     No. 5:19-CV-06226-EJD, 2020 WL 6700480 (N.D. Cal. Nov. 13, 2020) ............... 12

22

*Netbula, LLC v. Bindview Dev. Corp.*,

23
     516 F. Supp. 2d 1137 (N.D. Cal. 2007) ............................................. 21, 23

24

*Oasis W. Realty, LLC v. Goldman*,

25
     51 Cal.4th 811 (2011) .............................................................................. 20

26   *Online Glob., Inc. v. Google LLC*,
     387 F. Supp. 3d 980 (N.D. Cal. 2019) ..................................................... 8

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4892-9596-9103.4

- iii -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3    *Perfumebay.com, Inc. v. eBay, Inc.*,

4        506 F.3d 1165 (9th Cir. 2007)............................................................................ 18

*Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*,
5        894 F.3d 1015 (9th Cir. 2018)............................................................................ 17

6    *Republic Molding Corp. v. B.W. Photo Utils.*,

7        319 F.2d 347 (9th Cir. 1963)............................................................................ 18

8    *S. Cal. Darts Ass'n v. Zaffina*,
         762 F.3d 921 (9th Cir. 2014).......................................................................... 17, 19

9

10   *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est. Educ., Inc.*,
         621 F.3d 981 (9th Cir. 2010)............................................................................ 19

11   *Snapkeys, Ltd. v. Google LLC*,

12       539 F. Supp. 3d 1040 (N.D. Cal. 2021) .......................................................... 21

13   *Stevens v. Corelogic, Inc.*,
         899 F.3d 666 (9th Cir. 2018).......................................................................... 11, 14

14

15   *The Comm. for Idaho's High Desert, Inc. v. Yost*,
         92 F.3d 814 (9th Cir. 1996)............................................................................ 10

16

17   *Tveter v. AB Turn–O–Matic*,
         633 F.2d 831 (9th Cir. 1980)............................................................................ 19

18   *Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*,

19       515 F. Supp. 3d 1061 (N.D. Cal. 2021) .......................................................... 17

20   *Warner Bros. v. Gay Toys, Inc.*,
         724 F.2d 327 (2d Cir. 1983)............................................................................ 20

21   *Wells Fargo & Co. v. Stagecoach Properties, Inc.*,

22       685 F.2d 302 (9th Cir. 1982)............................................................................ 18

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4892-9596-9103.4                                       - iv -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2957

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**Statutes**

17 U.S.C.
§ 1202(b) ............................................................................................... 11, 12, 15
§ 1202(b)(1) ................................................................................................... 9, 10
§ 1202(b)(3) ................................................................................................... 9, 10
§ 1202(c)(1)-(3) ..................................................................................................... 9
§ 1202(c)(6) ........................................................................................................... 9
§ 1202(c)(7) ........................................................................................................... 9
§ 1203 ................................................................................................................. 15
§ 1203(b)(1) ....................................................................................................... 15

**Other Authorities**

6 McCarthy on Trademarks and Unfair Competition § 31:55 (5th ed.) ...................... 19

Fed. R. Civ. P.
56(a) ..................................................................................................................... 8
56(c) ..................................................................................................................... 8

4892-9596-9103.4

- v -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Plaintiffs are entitled to summary judgment on their DMCA claim because this Court has already determined that Defendants improperly replaced the Neo4j Sweden Software License governing Neo4j® EE software with a generic copy of the AGPL open source license. In doing so, Defendants removed CMI identifying Neo4j Sweden as the copyright holder and licensor of Neo4j® EE, as well as the commercial restrictions imposed by Neo4j Sweden. The undisputed facts establish that Defendants knew that the removal of this CMI would result in the violation of the commercial restrictions in that license and the infringement of Neo4j Sweden's copyrights. Defendants promoted this improperly licensed software (first called "ONgDB" and later renamed "Graphstack GDB") as being a free and open source drop-in replacement for commercially licensed Neo4j® EE. Further confirming their violation of the DMCA, Defendants sought to profit off the removal of the CMI by offering commercial support services otherwise prohibited by the Neo4j Sweden Software License.

Neo4j USA is also entitled to summary judgment on Defendants' unclean hands defense, which they asserted in response to Neo4j USA's Lanham Act, UCL and breach of contract claims. As admitted by Defendants, none of Neo4j USA's alleged bad acts bear any substantive relationship to those claims since the alleged bad acts relate to Neo4j Sweden's copyright licensing practices, and not Neo4j USA's acquisition or use of the Neo4j Mark. The indisputable fact that Neo4j USA's alleged bad acts occurred 2017, which predate the introduction of Neo4j® EE under the Neo4j Sweden Software license in May 2018 and Defendants' subsequent Lanham Act violations, is also fatal to the defense. Defendants simply cannot establish by clear and convincing evidence that Neo4j USA engaged in any inequitable conduct.

Lastly, Neo4j USA is entitled to summary judgment on PureThink's breach of contract claim that allegedly made PureThink the exclusive reseller of Neo4j Gov't Edition. Suhy sent multiple emails to Neo4j USA confirming that it never agreed to the terms as alleged. These same emails also make clear that Neo4j USA could not have breached that alleged agreement when it discontinued that software. Suhy admitted that the Gov't Edition was merely a means to obtain sole source consideration and that PureThink had no ownership rights to that software.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4892-9596-9103.4         - 1 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2959

1   **II.    STATEMENT OF FACTS**

2       **A.    The Evolution of Plaintiffs' Licensing Model for the Neo4j® Platform**

3       Neo4j, Inc. ("Neo4j USA") is the company behind the number one graph platform for

4   connected data, marketed and sold under the registered trademark "NEO4J". Dkt. No. 118 at 2:8-

5   26.  Neo4j USA's platform helps organizations make sense of their data by revealing how people,

6   processes and digital systems are interrelated.  *Id.* at 2:9-11.  Neo4j Sweden is a wholly owned

7   subsidiary of Neo4j USA.  Dkt. No. 118 at 2:11-16.  It is the owner of all copyrights related to the

8   Neo4j® graph database platform, including the source code, and has licensed those copyrights to

9   Neo4j USA in connection with the making, use, creation of derivative works, sale, offer to sell,

10  importation, performance, display, reproduction and distribution of the copyrighted material, and

11  the sublicensing of such rights in the United States.  Exhibit A, Undisputed Fact ("UDF") No. 1.

12      Prior to May 2018, Plaintiffs' business model was to offer a free open source version of the

13  Neo4j® graph database platform, Neo4j® Community Edition ("Neo4j® CE"), under the GNU

14  General Public License version 3 ("GPL") license.  UDF No. 2.  This edition is limited in its feature

15  set and does not come with technical or administrative support.  *Id*. Plaintiffs also offered a more

16  advanced commercial version with included additional features and support services, known as the

17  Neo4j Enterprise Edition ("Neo4j® EE"). *Id*.

18      Plaintiffs originally offered Neo4j® EE under both a paid-for commercial license and for

19  free under the GNU Affero General Public License, version 3 ("AGPL"). UDF No. 3.  A commercial

20  license to Neo4j® EE entitled the purchaser to use it in a proprietary setting with industry standard

21  terms, receive support or professional services from Neo4j USA, and the right to receive software

22  updates, which included feature updates, bug fixes and assistance.  *Id*. Purchasing a commercial

23  license at a fair price supported the continued development and improvement of Neo4j® EE and the

24  Neo4j® graph database platform, including Neo4j® CE.  *Id.*

25      On May 17, 2018, Plaintiffs announced the release of Neo4j® EE v3.4 and replaced the

26  AGPL with a stricter license, which included the terms from the AGPL and additional commercial

27  restrictions provided by the Commons Clause ("Neo4j Sweden Software License"). UDF No. 4.

28  This new license, while still allowing code to be publicly viewable and used within a certain licensed

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4892-9596-9103.4                                  - 2 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2960

1    scope, prohibited the non-paying public from engaging in commercial resale and support services.

2    UDF No. 5.  The NOTICE provision in the Neo4j Sweden Software License also contained the

3    copyright owner's name (Neo4j Sweden), the title of the work, terms and conditions for use of the

4    work, and other identifying information about Neo4j Sweden. UDF No. 6.

5        In November 2018, Plaintiffs officially released of Neo4j® EE v3.5 solely under a

6    commercial license. UDF No. 7.  This meant that Plaintiffs were no longer offering Neo4j® EE on

7    an open source basis. *Id.*  This was done to simplify the licensing model, as well as prevent bad

8    actors from profiting by providing commercial support services in closed, proprietary projects. *Id.*

9    Prior to the official release of Neo4j® EE v3.5, however, Plaintiffs published several beta versions

10   via their GitHub repository subject to the Neo4j Sweden Software License. UDF No. 8.  Neo4j®

11   EE v3.5.0-RC1 was the last pre-release version available to Defendants via GitHub. UDF No. 9.

12   Thereafter, only the source code for Neo4j® CE was made publicly available under the GPL. *Id.*

13       **B.    PureThink Enters Into the Neo Solution Partner Agreement with Neo4j USA**

14       PureThink is a software and information technology consulting company founded by Suhy,

15   which purports to specialize in supporting agencies within the U.S. Government.  *See* Dkt. No. 118

16   at 3:17-19; *see also* Dkt. No. 177, ¶¶ 12-13.  On September 30, 2014, PureThink and Neo4j USA

17   entered into the Neo4j Solution Partner Agreement ("Partner Agreement" or "SPA").  *Id.*, ¶¶ 12, 15

18   and Ex. B ("SPA").   Under the SPA, PureThink agreed to sell commercial licenses for Neo4j® EE

19   and provide support to end-users in exchange for a commission on each licenses that it resold and

20   would be paid for providing related support services to those purchases.  *See* SPA §1 and Exhibit A

21   thereto (p. 43 of 53); Dkt. No. 118 at 3:20-23.   PureThink also gained access to Neo4j USA's

22   confidential customer information and a non-exclusive and non-transferable limited license to use

23   the Neo4j trademarks "solely to market and promote" Neo4j commercial products. SPA, § 4.1.

24   PureThink further agreed that for a period of 36 months after termination of the SPA, it would not

25   "develop, market, distribute or offer any services related to any Community Edition Products,

26   derivative works of such products, or any [PureThink] software code made to work with Community

27   Edition Products (including, without limitation, hosting services, training, technical support,

28   configuration and customization services, etc.)."  SPA, § 4.3.2.  The SPA defined "Community

4892-9596-9103.4                                      - 3 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1   Edition Products" as any "open source version of a Neo Technology software product."  SPA, § 11.

2       **C.**    **The IRS's Adoption of the Government Edition**

3       In the hope of increasing sales, Suhy came up with the idea of rebranding Neo4j® EE as

4   Neo4j® Government Edition ("Gov't Edition").  Dkt. No. 118 at 4:4-6 (citing Dkt. No. 98-1, Exs.

5   5-6).  PureThink had limited success in convincing government agencies to pay for licenses to Gov't

6   Edition and support services from PureThink.  By September 2016, the only promising lead

7   PureThink had was the IRS.  Dkt. No. 98-1, ¶ 9 and Ex. 7.  However, the IRS indicated that they

8   first needed a prototype built and that a full commercial subscription would leave them with no

9   development budget.  Dkt. No. 118 at 4:7-8.  To make that deal happen, Suhy told the IRS they

10  could use Neo4j® EE under the AGPL for free and pay PureThink for its consulting services.  *Id*. at

11  4:8-11.  Based on those representations, the IRS awarded PureThink a $229,000 support contract.

12  Dkt. No. 177, Ex. D; Ratinoff Decl., ¶ 20 and Ex. 18.  In early 2017, Suhy revealed to Neo4j USA

13  that PureThink had compiled its own modified version of the Neo4j® EE software under the AGPL,

14  which the IRS had already installed and PureThink was supporting.  *Id*. Dkt. No. 98-1, Ex. 8.

15      On May 30, 2017, Neo4j USA sent PureThink notice that that Suhy's use, distribution, and

16  marketing of the open source version of Neo4j® EE and his marketing of consulting services

17  focused on those products constitute a material breach of the SPA.  Dkt. No. 118 at 4:13-15.

18  PureThink made no effort to cure its breaches, and instead formed iGov on June 23, 2017 to evade

19  the restrictions in Section 4.3.1 of the SPA.  Dkt. No. 98-1, Exs. 10-11; Dkt. No. 177 at 10:5-8.  On

20  July 11, 2017, Neo4j terminated the SPA.  Dkt. No. 118 at 4:18-22; Dkt. No. 98-1, Ex. 12.

21      On July 11, 2017, Neo4j USA also notified the IRS that it had terminated its partnership with

22  PureThink.  UDF No. 53.  Neo4j USA advised the IRS that PureThink was contractually restricted

23  from providing support services for open source versions of Neo4j® software for 36 months.  *Id.*

24  Despite Neo4j USA's warnings, the IRS continued to use Neo4j® EE for free under the AGPL and

25  allowed Suhy to perform under PureThink's existing support contract.   UDF No. 54.

26      **D.**    **Suhy and iGov Offer "Government Packages for Neo4j" to the IRS**

27      The same day that Neo4j USA terminated the SPA, Suhy began targeting the same federal

28  agencies that PureThink previously solicited under the SPA by offering iGov's "Government

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1   Packages for Neo4j." UDF Nos. 77-79. Suhy assured potential customers that iGov's package

2   included the *same* framework and security add-ons as the Gov't Edition. Ratinoff Decl., ¶ 23 and

3   Ex. 21 ("The Neo4j Government Edition is just [Neo4j® EE] + FISMA Framework plugins +

4   Additional Support and services…."); *id.*, ¶ 26 and Ex. 24 ("Neo4j Government Edition is being

5   retired and the framework and services we developed are going to be offered under the new name:

6   Government Package for Neo4j."); *accord* UDF Nos. 78-79. The only difference was the

7   "Government Packages for Neo4j" included Neo4j® EE for free under the AGPL rather than a

8   commercial license. Ratinoff Decl., ¶ 26 and Ex. 24 ("you get everything you physically get in the

9   commercial package except the license is a Neo4j Enterprise open source license"); *accord* UDF

10  No. 78. Defendants made clear on iGov and PureThink's websites that the "Government Package

11  for Neo4j" was from the same "principle" behind PureThink and Gov't Edition. UDF No. 80.

12      At that time, Suhy specifically targeted the IRS to transition to iGov's Government Package

13  for Neo4j. His efforts proved successful when in late July 2017, the IRS invited iGov to submit a

14  quote for a sole-source contract for the development and support of its CDW Knowledge Graph

15  Environment ("CKGE"), which used an open source version of Neo4j® EE software as a main

16  component. UDF No. 55. At that point, it was immaterial to the IRS whether iGov or PureThink

17  would be the contracting entity so long as Suhy was the individual providing them. UDF No. 56.

18      On September 5, 2017, the IRS announced its intent to award a sole-source contract to iGov

19  based on that quote. UDF No. 57. Neo4j USA filed an official protest with the IRS. UDF No. 58.

20  The IRS agreed with Neo4j USA that it had improperly awarded the contract to iGov on a sole

21  source basis and canceled it for that reason.[1] *Id.*

22      **E.    The IRS Awards the CKGE Contract to Suhy via eGovernment Solutions**

23      The IRS re-issued the CKGE contract for open bidding, and awarded it on May 24, 2018 to

24  another entity that Suhy had an ownership interest in at the time, eGovernment Solutions, Inc.

25  _____

26  [1] As conceded by Defendants in dismissing their IIPEA counterclaim with prejudice in the face of
    Plaintiffs' motion to dismiss, Neo4j USA's right to protest the sole source nature of that government

27  contract was absolutely protected by the First Amendment under the *Noerr-Pennington* doctrine. *See*

28  Dkt. No. 172 at 20:13-21:11 *and* Dkt. No. 176.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4892-9596-9103.4                                                        - 5 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2963

1   ("eGov Sol").  UDF No. 25.  Before the IRS awarded the contract, however, Suhy made clear that

2   *iGov* would be providing the "Government Package for Neo4j" for the CKGE and he would be

3   performing the necessary support through *iGov*.   UDF No. 26.  Consistent with Suhy's statements

4   made to the IRS, eGov Sol considered the CKGE contract to belong to Suhy, which he had sole

5   responsibility and control over.  UDF No. 27.  The IRS paid a total of $1,316,000 to eGov Sol under

6   the CKGE contract over the course of five years, which in turn Suhy paid to iGov. UDF No. 28.

7       eGov Sol did not take any commission from the payments made by the IRS.  UDF No. 29.

8   Instead, Suhy was entitled to all the payments eGov Sol received from the IRS on the CKGE

9   contract.  *Id*., *accord* Ratinoff Decl., Ex. 3 at 30:13-32:25 ("If we get the money from IRS, we will

10  pay it to [Suhy] without keeping anything out of that. That was the agreement with him.").  eGov

11  Sol maintained a bank account for all the payments received from the IRS, which Suhy had access

12  to and was authorized to disburse the payments made by the IRS as he saw fit.   UDF No. 30, *accord*

13  Ex. 3 at 61:1-63:12 ("I went back and I checked all of our payments which were outgoing, because

14  this account was -- all of the money coming in from IRS, [Suhy] was allowed to use this account to

15  pay to himself for iGov. And I recently noticed in 2019, all of the money went to iGov[].").

16      **F.   Defendants Improperly Remove the Commercial Restrictions in the Neo4j**
17          **Sweden Software License in Order to Promote ONgDB as a "Free and Open**
            **Source" Neo4j® EE**

18      Following the release of Neo4j® EE v3.4, Suhy worked with Brad and Ben Nussbaum to

19  form Graph Foundation, Inc. ("GFI") in June 2018.  UDF No. 10.  After forming GFI, Defendants

20  began offering a graph database software called "ONgDB."  UDF No. 11.   Rather than develop

21  ONgDB as an independent fork based off an earlier open source version of Neo4j® EE, Suhy copied

22  the source code for Neo4j® EE v3.4 and stripped the commercial restrictions out of the Neo4j

23  Sweden Software License by replacing it with the AGPL.  UDF No. 12.  Suhy also removed legal

24  notices identifying Neo4j Sweden as the copyright holder and licensor.  *Id.*

25      In January 2019, GFI and Defendants released ONgDB v3.5.1, which contained at least 182

26  source code files previously released under the Neo4j Sweden Software License in the last beta

27  version of Neo4j® EE 3.5.  UDF No. 13. Defendants falsely advertised ONgDB as "free and open

28  source" with no limitations or restrictions imposed by equivalent version of commercial licensed

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4892-9596-9103.4                                   - 6 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2964

1   Neo4j® EE.  Dkt. No. 118 at 6:21-24, 7:18-24.  To do so, they replaced the Neo4j Sweden Software

2   License with a generic copy of the AGPL in 28 LICENSE.txt files governing those 182 source code

3   files.  UDF No. 14.  This not only removed the commercially restrictive Commons Clause, but also

4   stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor.  *Id.*

5   **G.**   **The IRS Adopts ONgDB Rather Than Pay for a License to Use Neo4j® EE**

6   By removing the Commons Clause, Defendants were able to induce several potential

7   customers, including the IRS, to use the money they should pay Plaintiffs for a commercial license

8   for NEO4J® EE and instead download ONgDB for free and use those funds to obtain support and

9   development services from Defendants. *See* Dkt. No. 118 at 6:21-26, 29:4-11, 29:22-30:6.  On May

10  22, 2018, Suhy sent an email to the IRS falsely stating that Plaintiffs could not add the Commons

11  Clause to the license for Neo4j® EE v3.4.  UDF No. 24.  The IRS did not obtain an independent

12  legal opinion on Suhy's claim regarding the alleged impropriety of adding commercial restrictions

13  to the AGPL.  *Id.*  Two days later, the IRS awarded the aforementioned CKGE contract to Suhy and

14  iGov via eGov Sol, which did not contemplate a paid license for Neo4j® EE.  UDF No. 25-26.

15  In July 2018, a sales representative from Neo4j USA met with the IRS and provided a one-

16  year $156,000 quote for a Neo4j® EE v3.4 subscription on then-current requirements of CKGE.

17  UDF No. 31.  The IRS ultimately decided to not allocate $156,000 for a license to use Neo4j® EE

18  in the CKGE platform because ONgDB was a free and open, unrestricted alternative.  UDF No. 32.

19  This coincided with Suhy convincing the IRS integrate ONgDB v3.4 rather than Neo4j® EE v3.4

20  into the CKGE platform in August 2018. UDF No. 33.  Under the CKGE contract, Suhy and iGov

21  were responsible for supporting, maintaining and updating ONgDB on an internal repository at the

22  IRS.  UDF Nos. 34-37. They helped the IRS upgrade the CKGE platform to ONgDB v3.5 and

23  integrated subsequent subversions through at least April 2022.  UDF No. 35.  After April 2022, the

24  IRS started calling ONgDB just "GDB," which still used Neo4j Sweden's source code improperly

25  licensed under the AGPL and was compiled by Suhy on the IRS' internal repository.  UDF No. 36.

26  **III.   APPLICABLE MOTION FOR SUMMARY JUDGMENT STANDARDS**

27  A motion for summary judgment or partial summary judgment should be granted if "there is

28  no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4892-9596-9103.4                                                    - 7 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2965

1    Fed. R. Civ. P. 56(a); *Addisu v. Fred Meyer, Inc*., 198 F.3d 1130, 1134 (9th Cir. 2000). A fact is

2    material when it affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

3    248 (1986).  The moving party bears the initial burden of informing the court of the basis for the

4    motion and identifying the portions of the pleadings, depositions, answers to interrogatories,

5    admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex*

6    *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

7         Where the moving party bears the ultimate burden of proof at trial, it must prove each

8    essential element of the claims upon which it seeks judgment based on undisputed facts that are

9    sufficient for the court to hold that no reasonable trier of fact could find other than for the moving

10   party.  *Online Glob., Inc. v. Google LLC*, 387 F. Supp. 3d 980, 984–85 (N.D. Cal. 2019).  Where

11   the non-moving party bears the burden of proof, "the burden on the moving party may be discharged

12   by … pointing out … that there is an absence of evidence to support the nonmoving party's case."

13   *Celotex*, 477 U.S. at 325.  The moving party is not required to produce evidence showing the absence

14   of a genuine issue of material fact, nor is it required to offer evidence negating the non-moving

15   party's claim or defense. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).

16        If the moving party meets this initial burden, the burden then shifts to the non-moving party

17   to designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R.

18   Civ. P. 56(c); *Celotex*, 477 U.S. at 324.  The non-moving party does not meet this burden by showing

19   "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*

20   *Corp.*, 475 U.S. 574, 586 (1986).  Rather, it must come forward with admissible evidence to satisfy

21   the burden.  Fed. R. Civ. P. 56(c); *see Hal Roach Studios, Inc. v. Feiner & Co., Inc.*, 896 F.2d 1542,

22   1550 (9th Cir. 1990).  "If the nonmoving party's 'evidence is merely colorable or is not significantly

23   probative," then summary judgment may be granted."  *Online Glob., Inc*., 387 F. Supp. 3d at 985

24   (citation omitted); *see also Anderson*, 477 U.S. at 248-49.

25   **IV.   THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF**
          **PLAINTIFFS ON THEIR DMCA CLAIM**
26

27        A defendant is liable under the DMCA for knowingly removing copyright management

28   information ("CMI"), or for distributing works with the knowledge that CMI was removed, even if

4892-9596-9103.4                                           - 8 -

1    the defendant itself did not remove the CMI. 17 U.S.C. § 1202(b)(1), (3).   To prevail on a claim for

2    the removal or alteration of CMI, a plaintiff must establish that a defendant: (1) without the authority

3    of the copyright owner or the law; (2); intentionally removed or altered CMI; and (3) knowing or

4    having reasonable grounds to know that the removal will induce, enable, facilitate, or conceal

5    copyright infringement. 17 U.S.C. § 1202(b)(1).  Similarly, to prevail on a claim for the distribution

6    of CMI or material from which CMI has been removed, require a showing that (1) the defendant

7    distributing that material knew that CMI "has been removed or altered without authority of the

8    copyright owner or the law;" and (2) the defendant knew or had reason to know that distributing

9    works without CMI would "induce, enable, facilitate or conceal an infringement." 17 U.S.C.

10   § 1202(b)(3); *see also Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (9th Cir. 2020).

11        **A.    Neo4j® EE and the License Thereto Contained Neo4j Sweden's CMI**

12        Both §1202(b)(1) and §1202(b)(3) require that the original copyrighted work contained CMI.

13   CMI includes, *inter alia*, the title or identifying information of the work, author or copyright owner,

14   the terms and identifying numbers or symbols referring to such information.  17 U.S.C. § 1202(c)

15   (1)-(3), (7).  CMI also includes the "[t]erms and conditions for use of the work."  17 U.S.C.

16   § 1202(c)(6). It is undisputed that Neo4j Sweden owns the copyrights for Neo4j® EE v3.4 and v3.5

17   and licensed subject to the Neo4j Sweden Software License. UDF Nos. 1-8.  It is also

18   undisputed that this license constitutes Neo4j Sweden's CMI because the NOTICE provision at the

19   top clearly states that Neo4j® EE is developed and owned by Neo4j Sweden… and is subject to the

20   terms of the [AGPL], ***with the Commons Clause as follows***…." Dkt. No. 98-2, ¶ 11 and Ex. 3

21   (emphasis added); *accord* UDF Nos. 5-6.   It also contains the terms and conditions for the use of

22   that software, including instructions on where to obtain a commercial license in the NOTICE

23   provision and the commercial restrictions imposed by the "'Commons Clause' License Condition"

24   at the bottom. *Id.*

25        **B.    Suhy Intentionally Removed Neo4j Sweden's CMI from Neo4j® EE Without
26              its Authorization and PureThink and iGov Had Actual Knowledge Thereof**

27        To establish a violation of Section 1202(b)(1), Plaintiffs must show Defendants intentionally

28   removed Neo4j Sweden's CMI without Neo4j Sweden's authorization. *See* 17 U.S.C. § 1202(b)(1).

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4892-9596-9103.4                                    - 9 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2967

1  Similarly, to prove a violation of Section 1202(b)(3), Plaintiffs must show that Defendants had

2  actual knowledge that CMI "has been removed or altered" without Neo4j Sweden's authorization.

3  *See* 17 U.S.C. § 1202(b)(3); *see also Harrington v. Pinterest, Inc*., No. 5:20-CV-05290-EJD, 2022

4  WL 4348460, at *3 (N.D. Cal. Sept. 19, 2022).

5      The undisputed evidence establishes that Suhy intentionally removed Neo4j Sweden's CMI

6  in Neo4j® EE v3.4 by replacing the Neo4j Sweden Software License with a generic copy of AGPL

7  in the LICENSE.txt files governing ONgDB v3.4.  UDF No. 12. Suhy did the same to Neo4j® EE

8  v3.5 when he replaced the Neo4j Sweden Software License with the AGPL in 28 LICENSE.txt files

9  governing 182 source code files that had only been released under the Neo4j Sweden Software

10  License. UDF Nos. 13-14.   Suhy did so without Neo4j Sweden's authorization.  UDF Nos. 15-16.

11      The undisputed evidence further establishes that PureThink and iGov are liable for Suhy's

12  removal of the CMI and had actual knowledge of the removal thereof because Suhy was the sole

13  officer and director of those entities when he engaged in that misconduct.  UDF Nos. 17-18.

14  Likewise, it is undisputed that Suhy's removal of Neo4j Sweden's CMI was for the pecuniary benefit

15  of all Defendants as evidenced by their extensive promotion of ONgDB as a "free and open" version

16  of Neo4j® EE and offering paid support services that would have otherwise been prohibited by the

17  Commons Clause. UDF Nos. 19-23, 38, 44-47.  Consequently, Suhy's intentional removal of Neo4j

18  Sweden's CMI and his knowledge thereof is imputed on his entities and vice-versa for purposes of

19  §1202(b)(1) and §1202(b)(3).  *See Carson v. Verismart Software*, 2012 WL 1038713, at *4 (N.D.

20  Cal. Mar. 27, 2012) ("corporate officers, shareholders, and employees may be held personally liable

21  for the corporation's copyright infringements when they are a 'moving, active conscious force

22  behind the corporation's infringement'") (internal citation omitted); *The Comm. for Idaho's High

23  *Desert, Inc. v. Yost,* 92 F.3d 814, 823 (9th Cir. 1996) ("a corporate officer or director is… personally

24  liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he

25  acted as an agent of the corporation and not on his own behalf") (internal citation omitted).

26      **C.    Defendants Distributed Neo4j Sweden's Works with its CMI Removed**

27      The undisputed facts also establish that Defendants distributed Neo4j Sweden's copyrighted

28  source code without the Neo4j Sweden Software License in violation of §1202(b)(3).  Suhy made

4892-9596-9103.4                                    - 10 -

1    Neo4j Sweden's source code under the AGPL available via GFI's Github repository for ONgDB.

2    UDF No. 19.  Likewise, Defendants provided links to potential users of Neo4j® EE to download

3    ONgDB from GFI's GitHub repository and iGov's website. UDF Nos. 20-23.  As of December

4    2020, users had downloaded infringing ONgDB over 14,000 times. Dkt. No. 118 at 8:13-15.

5            In addition, Suhy and iGov were responsible for the IRS' adoption of ONgDB, as well as

6    continuing to upload and distribute infringing ONgDB and rebranded "GDB" at the IRS.  UDF Nos.

7    24-26, 32-36.  Between August 2018 and April 2022, they facilitated the use of ONgDB on at least

8    three servers within the CKGE (a/k/a "main graph") environment. UDF No. 37.

9            Finally, iGov operated a website, www.graphstack.io, to promote ONgDB over Neo4j® EE.

10   UDF No. 38.  This website contained download links for this improperly compiled and licensed

11   software.  *Id.*  iGov continued make several versions of ONgDB available on this website even after

12   GFI entered into a stipulated injunction on February 16, 2021, which prohibited the further

13   distribution of those same versions.  *Compare* Ratinoff Decl., Exs. 48-51 *and* GFI Dkt. No. 110.

14           **D.**     **The Undisputed Facts Establish that Defendants Knew or Had a Reasonable**
               **Basis to Know the Removal of the Neo4j Sweden's CMI Would Induce,**
15             **Enable and Facilitate Copyright Infringement**

16           To establish knowing or having reasonable grounds to know that conduct will "induce,

17   enable, facilitate or conceal" infringement under §1202(b), Plaintiffs "need not show that any

18   specific infringement has already occurred."  *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir.

19   2018).   Rather, they can "provide evidence from which one can infer that future infringement is

20   likely, albeit not certain, to occur as a result of the removal or alteration of CMI." *Id.*  Such evidence

21   may include "a past 'pattern of conduct' or "modus operandi' that the defendant was aware or had

22   reasonable grounds to be aware of the probable future impact of its actions."  Here, Defendants

23   clearly engaged in a pattern of conduct where they had reasonable grounds to know that the removal

24   of Neo4j Sweden's CMI from Neo4j® EE would result in infringement of its copyright.

25           As previously held by this Court and affirmed by the Ninth Circuit, Suhy did so under the

26   false premise that Section 7 of the Neo4j Sweden Software License permitted licensees to remove

27   "further restrictions," *i.e.* the Commons Clause, imposed by Neo4j Sweden as the copyright holder

28   / / /

4892-9596-9103.4                                                    - 11 -

and original licensor.[2]  Dkt. No. 118 at 24:7-25:19, *aff'd* Dkt. No. 140 at 3; Dkt. No. 98-2, ¶ 11 and Exh. 3 at §§ 7, 10.  This contradicted what Sections 7 and 10 of that license actually states—that only a downstream licensee may remove unauthorized restrictions when placed by an upstream licensee who redistributes the copyrightable program, not those placed by the copyright owner offering the terms to the licensees.  *See id*.  The fact that Defendants "misinterpreted" the provisions of the Neo4j Sweden Software License does not negate the knowledge element under §1202(b).  *See Neo4j, Inc. v. Graph Found., Inc*., No. 5:19-CV-06226-EJD, 2020 WL 6700480, at *4 (N.D. Cal. Nov. 13, 2020) (rejecting GFI's argument that it is not possible for a "contractually permitted action" to have been "taken with knowledge that it would aid infringement" under the DMCA).

More importantly, Defendants knew or had reason to know that they could not replace the Neo4j Sweden Software License with the AGPL without Neo4j Sweden's authorization.  UDF No. 39.  This is further evidenced by their failure to seek competent legal advice, and reliance on Suhy's unqualified analysis of the provisions of the AGPL and "internet research" that was admittedly inconclusive.  *Id*.  In May 2018. Suhy also participated in a discussion thread on Plaintiffs' GitHub repository where someone claiming to represent Plaintiffs told Suhy that his interpretation of Section 7 was wrong for reasons similar to those found by this Court. UDF No. 40. Despite this obvious red flag, Suhy "didn't have time to go and dive into it" and chose not to seek legal advice concerning those views despite not understanding Plaintiffs' legal position.  *Id*.  Thus, Suhy chose to remain willfully blind of Neo4j Sweden's rights as the copyright holder and licensor.

Suhy also sought guidance from the Free Software Foundation ("FSF") on the removal of the Commons Clause.  UDF No. 41.  The FSF told him "[t]he copyright holder on a work is the one with the power to enforce the terms of the license" and "[i]f a work was previously available under a free license, and later that license is changed, users can always use that earlier version under the terms of the free license."  *Id*.  The FSF also warned that "we cannot provide you with legal advice" and that he should "talk with legal counsel."  *Id*.  Suhy admittedly ignored the FSF's admonitions

---

[2] As detailed in Plaintiffs' concurrently filed Motion to Strike the Expert Report of Bradley Kuhn, the Court's findings on the interpretation of the provisions in the Neo4j Sweden Software License are now law of the case and thus not subject to further argument or challenges by Defendants.

4892-9596-9103.4                                    - 12 -

1   to seek such advice, and instead chose to replace the Neo4j Sweden Software License with a generic

2   copy of the AGPL, thereby removing *all* of Neo4j Sweden's CMI in that license. UDF No. 42.

3        Finally, Defendants knew or had reason to know their removal of the Commons Clause

4   would result in end-users infringing Neo4j Sweden's right to limit the use of Neo4j® EE to paid

5   subscribers. *See Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008) ("[c]opyright holders

6   who engage in open source licensing have the right to control the modification and distribution of

7   copyrighted material" and where "a license is limited in scope and the licensee acts outside the

8   scope, the licensor can bring an action for copyright infringement"); *accord MDY Indus., LLC v.*

9   *Blizzard Ent., Inc.*, 629 F.3d 928, 939 (9th Cir. 2010).  Suhy understood that Neo4j Sweden owned

10   the copyright for Neo4j® EE and that Neo4j Sweden controlled the licensing thereof.  UDF No. 15.

11   He also understood that the Common Clause imposed commercial restrictions on the use of Neo4j®

12   EE. UDF No. 43; *accord* Dkt. No. 98-1, ¶ 27 and Ex. 25 ("[Neo4j] tried adding a 'commons clause'

13   to the AGPL license, trying to precent [sic] companies from selling (and competing against them on

14   procurements)"); *id.,* ¶ 31 and Ex. 29 ("People can pay money for a restrictive commercial license,

15   or use Neo4j Enterprise for free under it's open source license. [] This fact is very counterintuitive.

16   What the commercial 'subscription' really offers is support, because it's better to use the open source

17   license than the commercial license in this case.").

18        Nevertheless, Suhy copied source code from Neo4j® EE licensed under the Neo4j Sweden

19   Software License and stripped out the CMI for that source code, including the commercial

20   restrictions imposed by the Commons Clause.  UDF Nos. 12-14.  Defendants then distributed that

21   source code as ONgDB without Neo4j Sweden's CMI with the specific intent of providing an open-

22   source, restriction-free version of the software in violation of the Neo4j Sweden Software License.

23   UDF No. 19-38, 43-44.  Defendants intentionally did so to profit off providing paid support services

24   – in direct contradiction to the commercial restrictions in the missing Commons Clause – based off

25   the savings users would gain by not paying Plaintiffs for a commercial license for Neo4j® EE.  UDF

26   No. 44; *accord* Dkt. No. 98-1, ¶¶ 64-68 and Exs. 62-66 ("We only focus on only supporting 100%

27   free and open source ONgDB Enterprise [] Not only does this cut down on unnecessary [sic]

28   commercial license costs, the open source licenses do not place any restrictions on the number of

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4892-9596-9103.4

- 13 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2971

1   cluster instances or cores like the commercial licenses do."); *id.,* ¶ 128 and Ex. 126 ("[Y]ou can

2   have a huge ONgDB causal cluster with as many instances, cores, etc as you wish with no licensing

3   costs - as it's 100% free and open.  You can purchase enterprise production support for the open

4   source distributions as well - just not from Neo4j Inc partners.").  Consequently, any reasonable jury

5   would concluded that Defendants knew this would induce or enable the infringement of Neo4j

6   Sweden's copyrights in Neo4j® EE. *See Stevens*, 899 F.3d at 674.

7         While Plaintiffs are not required to show Defendants' removal of Neo4j Sweden's CMI

8   resulted in actual copyright infringement in order to prevail, there is clear evidence of this occurring.

9   For example, Suhy concealing the infringing nature of ONgDB and misleading the IRS to believe

10   that GFI licensed the software rather than Neo4j Sweden exemplifies their actual knowledge that

11   the removal of Neo4j Sweden's CMI would result in copyright infringement.  UDF No. 45; *accord*

12   Ratinoff Decl., ¶ 35 and Ex. 33 ("ONgDB open source licenses come directly from the Graph

13   Foundation as well, not from Neo4j Inc.").  This deception caused the IRS to adopt ONgDB over

14   Neo4j® EE in August 2018 and paid Suhy and iGov over $1.3 million to support that software in

15   violation of the Neo4j Sweden License that they had replaced with the AGPL. UDF Nos. 24-37.

16         Defendants then leveraged the IRS's adoption of ONgDB to encourage other government

17   agencies and contractors to do the same.   UDF No. 46.   This included convincing Greystones

18   Consulting Group, LLC ("Greystones") to use ONgDB in an analytics platform branded as

19   "GreyRaven." UDF No. 47.  Greystones was able to secure at least two contracts with United States

20   Air Force that contemplated the use of GreyRaven and ONgDB.  UDF No. 48.

21         Perhaps the most egregious example of Defendants facilitating infringement was with the

22   Maryland Procurement Office (a/k/a the National Security Agency, NSA and MPO), which had

23   tasked Next Century to analyze available graph database technologies, including Neo4j® EE.  UDF

24   No. 49.  After the release of ONgDB v3.4, Next Century reconfirmed with Suhy the MPO could use

25   ONgDB under the AGPL without restrictions or paying Plaintiffs for a commercial license as

26   advertised on the iGov's website.  UDF No. 50.  After the release of ONgDB v3.5, Next Century

27   again asked Suhy whether it had the same closed enterprise features as Neo4j® EE v3.5, and could

28   use it without restrictions or paying Neo4j for a commercial license.   UDF No. 51.   Suhy

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4892-9596-9103.4

- 14 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2972

1    reconfirmed the same. *Id.* Defendants' removal of Neo4j Sweden's CMI and false statements about

2    the same caused Neo4j USA to lose a multi-year $2.2 million deal when the MPO chose ONgDB

3    over paying for a subscription to Neo4j® EE. UDF No. 52.

4         In sum, any reasonable jury would find that Defendants knew that their removal of Neo4j

5    Sweden's CMI  would enable the infringement of Neo4j Sweden's copyrights in Neo4j® EE in a

6    commercial setting. *See Mango v. BuzzFeed Inc*., 970 F.3d 167 (2nd Cir. 2020) (upholding district

7    court's finding that defendant violated the DMCA by distributing the photo knowing that the

8    photographer's CMI had been removed and knowing that distributing it with a false credit would

9    conceal that defendant did not have authority to use the photo). The Court should therefore grant

10   summary judgment in favor of Plaintiffs on their DMCA claim.

11       **E.     Plaintiffs are Entitled to Injunctive Relief Under 17 U.S.C. § 1203**

12       The DMCA vests the Court with the "may grant temporary and permanent injunctions on

13   such terms as it deems reasonable to prevent or restrain a violation" of §1202(b).   17 U.S.C.

14   § 1203(b)(1). To obtain an injunction, a plaintiff must show that (1) it suffered an irreparable injury;

15   (2) remedies available at law, such as monetary damages, are inadequate; (3) considering the balance

16   of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public

17   interest would not be disserved by a permanent injunction. *Apple Inc. v. Psystar Corp.,* 673 F. Supp.

18   2d 943, 948 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011).

19       If the Court does not enjoin Defendants, Plaintiffs will suffer irreparable injury from the

20   ongoing damage resulting from the proliferation of improperly licensed ONgDB and its derivatives

21   such as GraphStack GDB and GDB. *See Apple*, 673 F. Supp. 2d at 948 (recognizing that monetary

22   damages would not prevent defendant from continuing to infringe plaintiff's copyrights and violate

23   the DMCA in the future, and will not prevent third-parties from infringing plaintiff's copyrights);

24   accord *Michael Grecco Prods., Inc. v. WrapMarket, LLC*, 2017 WL 10434020, at *4 (C.D. Cal.

25   Nov. 8, 2017) (irreparable injury exists where infringement harms the competitive position and

26   market share of the copyrighted work).

27       As detailed above, there is compelling evidence that Plaintiffs have suffered a loss to control

28   over licensing of the commercial licensing of Neo4j® EE as result of Defendants' unauthorized

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4892-9596-9103.4                                                    - 15 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2973

1    "relicensing" of that software under the AGPL and falsely calling ONgDB a free and unrestricted

2    drop-in replacement for official Neo4j® EE.  It is also clear that Defendants will continue to do so

3    (as evidenced by the IRS' continued use of GDB and Suhy's maintenance thereof) unless enjoined

4    by the Court.  Further, the balance of hardships favors Neo4j USA because an injunction would

5    serve the narrow purpose of preventing or restraining further infringement of Neo4j Sweden's

6    copyrights and violations of the DMCA; and Defendants cannot "claim any legitimate hardships as

7    a result of being enjoined from committing unlawful activities." *Apple*, 673 F. Supp. 2d at 950.

8        Finally, a preliminary injunction "would serve no purpose other than to vindicate the

9    legitimate rights of [Neo4j Sweden] in its copyrights." *Apple*, 673 F. Supp. 2d at 950.  "Such

10   equitable relief would not harm the interests of the public; rather, consistent with the policies

11   underlying copyright protection, an injunction preventing [Defendants] from continuing to commit

12   infringing and illegal, if not criminal, acts under the Copyright Act and DMCA would ensure that

13   the public will continue to benefit from the creative fruits of [Neo4j Sweden's] labor. *Id.* The public

14   interest would be further served by preventing Defendants from inducing unsuspecting customers

15   to use improperly licensed software in violation of Neo4j Sweden's copyright.   The Court should

16   thus enter the proposed preliminary injunction filed herewith.

17   ## V.    NEO4J USA IS ENTITLED TO SUMMARY JUDGMENT ON DEFENDANTS' UNCLEAN HANDS DEFENSE

18

19       Defendants asserted an unclean hands defense to Neo4j USA's Lanham Act and UCL claims,

20   as well as a breach contract claim based on PureThink's breaches of the confidentiality and

21   trademark licensing provisions in the SPA.[3]  *See* Dkt. No. 91 at 16:20-19:7; Dkt. No. 169 at 10:4-8

22   ("[t]he unclean hands defense applies to the breach of [the SPA] and the trademark claims"); *see*

23   *also* Dkt. No. 91 at 16:20-24. To prevail on an unclean defense, a trademark defendant must prove

24   by clear and convincing evidence that (1) plaintiff's conduct is inequitable; and (2) the conduct

25   _____

26   [3] Neo4j USA bases its Lanham Act and UCL claims on the same misconduct. *See* Dkt. No. 118 at

27   23:15-19. Neo4j USA also bases its breach of contract claim on the same acts of infringement of the
     Neo4j Mark and harm to the goodwill associated therewith. *See* Dkt. No. 90, ¶¶ 134-147.  Thus, the

28   analysis of whether Defendants can maintain an unclean hands defense to these claims is the same.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4892-9596-9103.4                                                            - 16 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2974

1   relates to the subject matter of the trademark claims. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,

2   826 F.2d 837, 847 (9th Cir. 1987); *accord Vineyard House, LLC v. Constellation Brands U.S.*

3   *Operations, Inc.*, 515 F. Supp. 3d 1061, 1078 (N.D. Cal. 2021) (citing same).  With respect to the

4   first requirement, "only a showing of wrongfulness, willfulness, bad faith, or gross negligence,

5   proved by clear and convincing evidence, will establish sufficient culpability for invocation of the

6   doctrine of unclean hands." *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1029

7   (9th Cir. 2018) (internal citation and quotes omitted); *see also GoTo.com, Inc. v. Walt Disney Co.*,

8   202 F.3d 1199, 1210 (9th Cir. 2000) (a party's hands need not be "clean as snow" to avoid the

9   unclean hands doctrine).

10      With respect to the second requirement, "[t]o show that a trademark plaintiff's conduct is

11   inequitable, defendant must show that plaintiff used the trademark to deceive consumers." *Japan*

12   *Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002).  To do so, defendant

13   must show that that plaintiff's "misdeeds ... have an immediate and necessary relation to the equity

14   that [plaintiff] seeks in respect of the matter in litigation." *S. Cal. Darts Ass'n v. Zaffina,* 762 F.3d

15   921, 932 (9th Cir. 2014) (*quoting Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245

16   (1933)).  Summary judgment in favor of a trademark plaintiff is thus appropriate where an unclean

17   hands defense fails to meet the relatedness requirement.  *See id.*

18      Defendants do not assert that Neo4j USA engaged in fraud in obtaining the Neo4j Mark or

19   that it used the mark to deceive consumers.  Nor could they do so because this Court already struck

20   Defendants' fraud in the procurement and naked licensing defenses asserting the same.  *See* Dkt.

21   Nos. 70, 85.  Defendants instead allege Neo4j USA engaged in "unlawful" licensing practices by

22   "attempting to improperly use a dual licensing practice having a commercial version controlled by

23   plaintiff and an open source software licensed under [the GPL]."  Dkt. No. 91 at 16:21-24, 17:16-

24   19.  They cite to Neo4j USA and PureThink's dispute over whether the IRS needed to purchase a

25   commercial license for Neo4j® EE rather than use that software under the AGPL as evidence

26   thereof.  *Id.*, 16:23-17:16.  Defendants then conclude that "plaintiff cannot lawfully operate a dual

27   license model since the open source is based on GPL or AGPL, plaintiff resorts to sharp and false

28   practices with customers (lying about the difference between the commercial versions and open

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4892-9596-9103.4                                          - 17 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2975

1    source version) attempting to restrict partners from supporting the open source Neo4j version with

2    unlawful restrictions and interfering in attempts to use open source Neo4j software." *Id.* at 18:4-12.

3    Even assuming Defendants could prove Neo4j USA engaged in these alleged acts, there is

4    no clear and convincing evidence that it acted with any fraudulent intent. *See Wells Fargo & Co. v.*

5    *Stagecoach Properties, Inc.*, 685 F.2d 302, 308 (9th Cir. 1982) (bad intent is the essence of the

6    defense of unclean hands); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th

7    Cir. 2002) (application of unclean hands to Lanham Act claims requires evidence of fraudulent

8    intent). There is also no clear and convincing evidence establishing Neo4j USA's alleged conduct

9    resulted in any consumer deception. *See Perfumebay.com, Inc. v. eBay, Inc.*, 506 F.3d 1165, 1178

10   (9th Cir. 2007) (holding that the record must "affirmatively demonstrate" consumer deception); *see*

11   *also Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347, 349–50 (9th Cir. 1963) (the "extent

12   of actual harm caused by the conduct in question" is "highly relevant" to whether the plaintiff's

13   conduct was inequitable); *Allmerica Fin. Life Ins. & Annuity Co. v. Dalessio*, No. C-96-0385 VRW,

14   2006 WL 408538, at *7 (N.D. Cal. Feb. 20, 2006) (recognizing that "courts do not apply the doctrine

15   of unclean hands where the defendant has suffered no harm as a result of the plaintiff's actions").

16   To the contrary, it is undisputed the IRS ***ignored*** Neo4j USA's assertion that it needed to buy a

17   commercial license and continued to use Neo4j® EE for free under the AGPL. UDF Nos. 53-57.

18   The IRS ultimately awarded Defendants the CKGE contract via eGov Sol. UDF Nos. 25-30, 58.

19   More importantly, ***none*** of Neo4j USA's alleged "bad acts" are materially related to

20   Defendants' infringement of the Neo4j Mark, or their false advertising in connection with the

21   distribution, offering, and promotion of ONgDB software as a free and open, drop-in replacement

22   for Neo4j® EE. *See* Dkt. No. 118 at 18:2-32:14. Rather, Neo4j USA's alleged "bad acts" pertain

23   to the ***prior*** dual license model for Neo4j® EE. *See* Dkt. No. 91 at 16:21-19:7. This is fatal to their

24   unclean hands defense because it is undisputed that ***Neo4j Sweden*** rather than Neo4j USA owned

25   the copyright to Neo4j® EE and was licensor of Neo4j® EE under the GPL and AGPL at all relevant

26   times. UDF Nos. 1, 15, 59.

27   Even if Neo4j USA were the licensor, this Court already determined that the GPL and AGPL

28   "are copyright licenses, not trademark licenses." Dkt. No. 85 at 7:27-8:7. Such copyright-based

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4892-9596-9103.4                              - 18 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2976

1   licensing practices do not bear the requisite "immediate and necessary" relationship to Neo4j USA's

2   Lanham Act and UCL claims.  *See S. Cal. Darts Ass'n*, 762 F.3d at 931-33; *see also Fuddruckers*,

3   826 F.2d at 847 (9th Cir. 1987) (plaintiff's deceptive marketing of its hamburger meat as "ground

4   steak" did not bar trade dress infringement suit); *Tveter v. AB Turn–O–Matic*, 633 F.2d 831, 839

5   (9th Cir. 1980) (plaintiff's use of "patent pending" in connection with trademark at issue when no

6   patent application was on file did not bar claims for trademark infringement and unfair competition).

7       In addition, Defendants' unclean hands defense bears no temporal relationship to the crux of

8   Neo4j USA's Lanham Act claims.  It is undisputed that Neo4j Sweden release Neo4j® EE v3.4 (the

9   first version subject to the more restrictive Neo4j Sweden Software License) *in May 2018*, and as a

10  result, ceased its dual licensing model under the GPL and AGPL.  UDF Nos. 2-5, 61-62.  It is also

11  undisputed that by this time, Neo4j® EE included advanced scalability, availability, security, and

12  operational features that were not previously released under either the GPL or AGPL, at least 182

13  files that had never been released under either license. UDF No. 63. Defendants released ONgDB

14  sometime *in July 2018*, and thereafter engaged in the misconduct that the Court found constituted

15  trademark infringement, false advertising and false designation of origin in violation of the Lanham

16  Act and UCL. *See* Dkt. No. 118 at 18:2-32:14; *see also* UDF Nos. 10-11, 64.

17      Conversely, Neo4j USA's alleged false statements that the IRS needing to obtain a paid

18  license for Neo4j® EE were made *before October 2017*.  *See* UDF No. 65; *see also* Dkt. No. 118 at

19  3:17-4:22; Dkt. No. 171 at ¶¶ 20-21.  For this additional reason, Defendants' unclean hands defense

20  fails as a matter of law.  *See Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est. Educ., Inc*.,

21  621 F.3d 981, 987 (9th Cir. 2010) (recognizing that conduct which came to an end prior to the events

22  which are in issue cannot constitute an unclean hands defense); *see also* 6 McCarthy on Trademarks

23  and Unfair Competition § 31:55 (5th ed.) ("[d]efendant cannot dredge up inequitable conduct of

24  plaintiff which had been discontinued for some time prior to suit") (citing same).

25      The remainder of Neo4j USA's alleged misconduct cannot save Defendants' unclean hands

26  defense.  By stipulating to the dismissal of their IIPEA claim, Defendants conceded that the SPA's

27  3-year post termination restriction on PureThink supporting open source version of Neo4j® software

28  did not amount to an unlawful restrict on trade.  Dkt. Nos. 172, 176.  Thus, Neo4j USA telling the

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4892-9596-9103.4

- 19 -

1   IRS the PureThink was subject to such restrictions cannot amount to wrongful conduct. *See* Dkt.

2   No. 91 at 17:14-16.   Likewise, the subsequent inclusion of the Commons Clause in Neo4j® EE

3   v3.4 does not amount to inequitable conduct.  *See id* at 17:24-18:1.  This Court already held that

4   Neo4j Sweden as the copyright holder could license Neo4j® EE how it saw fit.  *See* Dkt. No. 118

5   at 24:7-25:19, *aff'd* Dkt. No. 140 at 3.  In any event, Neo4j USA telling the IRS that it could not

6   work with PureThink and needed to purchase a commercial license does not have an "immediate

7   and necessary relationship to the subsequent enforcement of its trademark rights against Defendants'

8   promotion of ONgDB. *See, e.g., Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 386 F. Supp. 3d 926

9   (N.D. Ill. 2019) (striking unclean hands defense based on trademark owner's allegedly improper

10  motive to restrict sales of trademarked product to certain desired channels of trade); *Warner Bros.*

11  *v. Gay Toys, Inc.*, 724 F.2d 327 (2nd Cir. 1983) (threatening enforcement of prosecution for

12  copyright violations did not amount to unclean hands because it was unrelated to trademark rights).

13      Accordingly, the Court should grant summary judgment in favor of Neo4j USA on

14  Defendants' unclean hands defense because they cannot prove by clear and convincing evidence

15  that (1) any of Neo4j USA's alleged acts were inequitable; and (2) that such acts bear an immediate

16  and necessary relation to Neo4j USA's Lanham, UCL and breach of contract claims.

17  **VI.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT PURETHINK'S**
    **BREACH OF EXCLUSIVELY CONTRACT COUNTERCLAIM**
18

19      The essential elements of a breach of contract claim are: (1) the existence of an enforceable

20  contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4)

21  resulting damages to the plaintiff.  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011);

22  *accord Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017).  Defendants

23  claim that Neo4j USA entered into a separate agreement with PureThink on April 11, 2015 where it

24  allegedly agreed that PureThink would be the exclusive reseller of the Gov't Edition to government

25  agencies and have continuing exclusivity to support users of that version of Neo4j® Software.  Dkt.

26  No. 177, ¶¶ 15-16, 54 and Ex. C.

27      Defendants identify an April 11, 2015 letter addressed "[t]o whom it may concern" signed

28  by Lars Nordwall on behalf of Neo4j USA as the written contract between the parties. Dkt. No. 177,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4892-9596-9103.4                                                  - 20 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2978

1    ¶ 16 and Ex. C. However, this letter merely states "PureThink LLC a Delaware Company, is the

2    only Neo4j Government Edition reseller that is certified to resell and support to the US Federal

3    Government, Department of Defense (DOD), and Intelligence Agencies." *Id.*, Ex. C.  They further

4    allege that in reliance on this agreement, Defendants "spent an equivalent to $650,000 to design,

5    develop, and build" the Gov't Edition, which consisted of Neo4j® EE and "additional services,

6    support and software modules" to address government security requirements. *Id.*, ¶ 17.  Defendants

7    then claim that Neo4j USA breached the exclusive agreement when it discontinued the Gov't

8    Edition, and as a result, PureThink "suffered damages "excess of $1,354,856.55." *Id.*, ¶ 57.

9        Summary judgment is appropriate where the party claiming breach cannot establish one (or

10   more) of the four essential elements. *Celotex*, 477 U.S. at 322-23; *accord Snapkeys, Ltd. v. Google*

11   *LLC*, 539 F. Supp. 3d 1040, 1048 (N.D. Cal. 2021) (citing same).  As detailed below, PureThink

12   cannot establish the first element because the undisputed facts show that Neo4j USA never entered

13   into a contract on the terms alleged.  Even if it had done so, PureThink still cannot prevail because

14   there was no breach by Neo4j USA, no excused performance and no alleged damages to PureThink.

15       **A.    Neo4j Never Consented to Separate Exclusivity Agreement with PureThink**

16       Under California law, contract formation "requires that the parties' reach mutual assent or

17   consent on definite or complete terms." *Netbula, LLC v. Bindview Dev. Corp.*, 516 F. Supp. 2d 1137,

18   1155 (N.D. Cal. 2007) (citing *Merced County Sheriff's Employees' Ass'n v. Merced County*, 188

19   Cal.App.3d 662, 670 (1987)). "Mutual assent is determined from the reasonable meaning of the

20   words and acts of the parties, and not from their unexpressed intentions or understandings." *Id.*

21   "Terms of a contract must also be sufficiently definite in all particulars essential to its enforcement."

22   *Id.*  "Consent" means "mutual assent or consent on definite or complete terms." *Netbula*, 516 F.

23   Supp. 2d at 1155.  "A contract is void and unenforceable if it is so uncertain and indefinite that the

24   intention of the parties in material particulars cannot be ascertained." *Id.*

25       While Neo4j may have permitted PureThink to act as the exclusive reseller of Neo4j Gov't

26   Edition to the government ***under the SPA***, there is no evidence that Neo4j USA ever consented to

27   or entering into an exclusivity agreement with PureThink apart from the SPA.  Instead, Suhy

28   repeatedly told Neo4j USA – both before and after April 11, 2015 – that it was merely a "virtual

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4892-9596-9103.4

- 21 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2979

1   concept" for PureThink to bypass protracted mandatory competitive bidding processes and take

2   advantage of a faster sole-source procurement track. UDF No. 66; *accord* Dkt. No. 98-1, Ex. 5 ("we

3   created the Government Edition … specifically for US government procurements to help with sole

4   source"); *id.*, Ex. 17 ("[Gov't Edition] can be sole sourced because Neo Technology has given Pure

5   Think exclusivity to this specific edition specifically just to support sole source. This means fast

6   procurements."). Suhy even told potential customers the same. UDF No. 67; *accord* Ratinoff Decl.,

7   Ex. 14 ("We are the only reseller of the [Gov't Edition] which allows for sole source procurement

8   justification for Federal agencies."). The letter purporting to be a separate agreement was simply the

9   means for PureThink to establish sole source justification. UDF No. 68; *accord* Dkt. No. 98-1,

10  Ex. 12 ("Among other supporting documents, we provide a copy of the 'Government Edition

11  Exclusivity Agreement' between Neo Technology and PureThink to the contract officer as part of

12  the sole source justification. It's the key sole source justification document.").

13      Finally, Neo4j USA never agreed to give PureThink ownership rights in the Gov't Edition,

14  or the right to be compensated for any development work upon. Suhy admitted – again before and

15  after April 11, 2015 – that Neo4j USA owned the intellectual property making up the Gov't Edition,

16  as well could terminate PureThink as the exclusive reseller ***at any time and for any reason***. UDF

17  Nos. 69-70; *accord* Ratinoff Decl., Ex. 12 ("The Government Edition is Neo Technology's product,

18  not ours and you have full control over it. You can reassign exclusivity … at any time for instance.").

19  Suhy also sent proposed drafts of the external and internal versions of the letters with the internal

20  one stating, "Neo Technologies has the right to cancel this exclusivity agreement at any time and

21  for any reason." Ratinoff Decl., Ex. 8 (green highlight); *see also id.,* Ex. 7 ("We can basically have

22  2 documents - one that we give to agencies on your letterhead (I would just scan and send to them

23  initially), and 1 between us that says you can cancel at any time for any reason.").

24      Suhy's representations were consistent with the internal version of the April 11, 2015 letter

25  signed by Lars Nordwall on behalf of Neo4j USA, which stated "Neo Technology has the right to

26  cancel this exclusivity agreement at any time and for any reason."[4]  Ratinoff Decl., Ex. 9 (green

27  _____

28  [4] The internal version of the sole source letter signed by Neo4j USA also omitted Suhy's proposed

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4892-9596-9103.4

- 22 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2980

1   highlight).  Other employees of Neo4j USA working with PureThink shared the same understanding

2   based on Suhy's prior written representations.  UDF Nos. 71-73.  After the parties allegedly entered

3   into the exclusivity agreement, Suhy prepared documents for Neo4j USA's new Vice President of

4   Strategic Alliances and Channels, John Broad, wherein Suhy reconfirmed the same.  UDF No. 74.

5   Consequently, no reasonable juror would conclude that there was a meeting of the minds and that

6   Neo4j USA consented to an exclusivity agreement separate from the SPA on the terms claimed by

7   PureThink.  For this reason, the Court should grant summary judgment in favor of Neo4j USA.  *See*

8   *Netbula*, 516 F. Supp. 2d at 1155; *Mitchell v. Specialized Loan Servicing LLC*, 600 F. Supp. 3d

9   1112, 1120 (C.D. Cal. 2021), *aff'd*, No. 22-55107, 2022 WL 17883609 (9th Cir. Dec. 23, 2022).

10  **B.      Neo4j Did Not Breach the Alleged Exclusivity Agreement**

11          Even assuming arguendo a separate exclusivity agreement came into existence, PureThink

12  cannot establish any alleged breach thereof.  As detailed above, Neo4j USA indisputably had the

13  right to discontinue the Gov't Edition and terminate PureThink as the exclusive reseller thereof

14  without cause and without further compensating PureThink.  UDF Nos. 69-74. Consequently, Neo4j

15  USA could not have breached the alleged exclusivity agreement when it notified PureThink that it

16  was discontinuing the Gov't Edition on June 19, 2017.  UDF No. 84. Neo4j USA is therefore entitled

17  to  summary  judgment  on  PureThink's  counterclaim  because  the  uncontroverted  evidence

18  establishes Neo4j USA did not breach the alleged exclusivity agreement.  *See Curley v. Wells Fargo*

19  *& Co.*, 120 F. Supp. 3d 992, 1002 (N.D. Cal. 2015), *aff'd*, 692 F. App'x 900 (9th Cir. 2017) (granting

20  summary judgment in favor of defendant where plaintiff could not establish a genuine issue of fact

21  that a breach occurred); *accord Netbula*, 516 F. Supp. 2d at 1157.

22  **C.      Defendants Failed to Perform and Did Not Suffer Any Monetary Damages[5]**

23          Neo4j is also entitled to summary judgment because PureThink cannot establish that it

24  _____

25  language "[t]his agreement supersedes any other agreements."  UDF No. 72.  This is further evidence

26  that there was never a meeting of the minds between Neo4j USA and PureThink.

27  [5] One court recently recognized "nominal damages are available for breach of contract and can

28  support entry of judgment in favor of a plaintiff who suffered 'no appreciable harm.'" *Meta*

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4892-9596-9103.4                                     - 23 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Page 2981

1  performed all its obligations under the exclusive contract or is otherwise excused from performing

2  such obligations.  In conjunction with terminating the Gov't Edition on June 19, 2015, Neo4j USA

3  informed PureThink that it was "no longer authorized to market, resell, demonstrate or provide

4  training on the Neo4j Government Edition."  UDF No. 75.

5  　　　　Suhy acknowledged this and agreed to remove all references from PureThink's website.

6  UDF No. 76.  Yet, Defendants continued to exploit the intellectual property associated with the

7  Gov't Edition (UDF Nos. 77-80)—despite previously admitting they had no right to do so (UDF

8  Nos. 69-74).  The same day Neo4j USA terminated the SPA, Suhy sent emails to government

9  contractors and agencies admitting that iGov was reusing the *same* framework and add-ons:

> Neo4j Government Edition is being retired and the framework and services we
> developed are going to be offered under the new name: **Government Package
> for Neo4j.** [] PureThink is still a Neo4j Solution partner and has the same exact
> team.  In order to be able to offer the best value to our US agency client, we
> had to move the Government Package to under our other company iGov Inc[.],
> because Neo4j Solution partners are forbidden from dealing with any Neo4j
> open source licenses and this package gives you the option to choose between
> open source or commercial licenses.

> We've simply taken the framework and services that made a Neo4j Enterprise
> (Commercial only) into Neo4j Government Edition and made them available as
> a stand alone package we call (Government Package for Neo4j).

16  Ratinoff Decl., Ex. 24 (emphasis in original); *id.* Ex. 25 ("iGov owns the new Government Package

17  for Neo4j as well"); *accord* UDF Nos. 77-80.  PureThink and its successor-in-interest iGov

18  continued to actively marketed "Government Package for Neo4j" until they released ONgDB.  UDF

19  Nos. 81-83.  PureThink thus cannot establish that it performed all of its contractual obligations or

20  that its performance was otherwise excused **because *it never stopped using the Gov't Edition***.

21  　　　　For these same reasons, no reasonable juror would conclude that PureThink and suffered

22  $1.3 million in damages since the IRS ultimately awarded the CKGE contract for the same amount

23  

24  *Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1258 (N.D. Cal. 2022).  However, this

25  does not preclude this Court from holding that PureThink is not entitled to either monetary damages

26  or nominal damages.  *See Alpha GRP, Inc. v. Subaru of Am., Inc.*, No. CV182133MWFMRWX,

27  2022 WL 18638819, at *6 (C.D. Cal. Apr. 27, 2022) (denying motion for reconsideration of
   summary judgment finding that plaintiff suffered no damages because "at least one California

28  appellate court has held that an award of nominal damages under California law is discretionary").

4892-9596-9103.4                                    - 24 -

1   so that iGov could continue to implement the framework PureThink had developed with the Gov't

2   Edition.  UDF Nos. 25-30, 85.

3       PureThink also did not maintain any time sheets that could support their claim that PureThink

4   "spent an equivalent to $650,000 to design, develop, and build" the Gov't Edition.  UDF No. 86.

5   Likewise, the financial statements produced by PureThink indicated that it never incurred any

6   expenses or overhead related to the development of the Gov't Edition.  UDF No. 87.  Suhy even

7   testified that PureThink did not spend any money in developing Gov't Edition.   UDF No. 88.  This

8   is because PureThink never customized Neo4j® EE, and simply integrated security provided plug-

9   ins and provided support.   Ratinoff Decl., ¶ 23 and Ex. 21 ("We don't even customize Neo4j

10  Enterprise, we just make plugins (Java jar files that are dropped into the plug-in directory which add

11  features to support NIST Security controls….").   Suhy also confirmed that he did not turn over

12  PureThink's work product to Neo4j USA upon termination because "I don't think that would be

13  theirs" and used it for iGov's "Government Packages for Neo4j." Ratinoff Decl., Ex. 2 at 186:14-24;

14  *accord* UDF No. 89   Accordingly, the Court should grant summary judgment in favor of Neo4j USA

15  on the additional ground that PureThink failed to perform under the alleged exclusivity agreement,

16  as well as suffered no actual damages resulting from any alleged breach by Neo4j USA.

## VII.   CONCLUSION

18      For the reasons set forth herein, Plaintiffs respectfully request that the Court (1) grant partial

19  summary judgment in favor of Neo4j USA on its DMCA claim; (2) enter a preliminary injunction as

20  set forth in the proposed order filed herewith; (3) grant summary judgment in favor of Neo4j USA

21  on Defendants' unclean hands defense; and (4) grant summary judgment in favor of Neo4j USA on

22  PureThink's breach of contract claim with respect to the alleged exclusivity agreement.

23   Dated:  April 20, 2023                    HOPKINS & CARLEY
                                                A Law Corporation
24

25

26                                              By: */s/ Jeffrey M. Ratinoff*
                                                    Jeffrey M. Ratinoff
27                                                  Attorneys for Plaintiffs
                                                    NEO4J, INC. and NEO4J SWEDEN AB
28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4892-9596-9103.4                              - 25 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

# EXHIBIT A

## PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| Defendants' Violation of the DMCA [17 U.S.C. § 1202(b)(1)] | | |
| 1. the existence of CMI on the infringed work; | <u>Fact 1</u>:  Neo4j Sweden is the owner of all copyrights related to the Neo4j® graph database platform, including the source code, and has licensed those copyrights to Neo4j USA in connection with the making, use, creation of derivative works, sale, offer to sell, importation, performance, display, reproduction and distribution of the copyrighted material, and the sublicensing of such rights in the United States. Dkt. No. 98-2, ¶¶ 3-4; Dkt. No. 118 at 2:15-18 (citing same). | |
| | <u>Fact 2</u>: Prior to May 2018, Plaintiffs offer a free and open source version of the Neo4j® graph database platform, Neo4j® Community Edition ("Neo4j® CE"), under the GNU General Public License version 3 ("GPL") license. Dkt. No. 118 at 3:1-4 (citing Dkt. No. 98-2, ¶¶ 4-5). Neo4j® CE is limited in its feature set and does not come with technical or administrative support. Dkt. No. 118 at 3:4-5 (citing Dkt. No. 98-2, ¶¶ 5-6). Plaintiffs also offered a more advanced commercial version, which included additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j® EE"). Dkt. No. 118 at 3:5-7 (citing Dkt. No. 98-2, ¶ 8). | |
| | <u>Fact 3</u>: Plaintiffs originally offered Neo4j® EE under both a paid-for commercial license and for free under the GNU Affero General Public License, version 3 ("APGL"). Dkt. No. 118 at 3:7-9 (citing Dkt. No. 98-2, ¶ 8). A commercial license to Neo4j® EE entitled the purchaser to use it in a proprietary setting with industry standard terms, receive support or professional services from Neo4j USA, and the right to receive software updates, which included feature updates, bug fixes and assistance. Dkt. No. 98-2, ¶¶ 7-9. | |
| | <u>Fact 4</u>: On May 17, 2018, Neo4j Sweden released Neo4j® EE v3.4 and replaced the AGPL with a stricter license, which included the terms from the AGPL and additional commercial restrictions provided by the Commons Clause ("Neo4j Sweden Software License").  Dkt. No. 118 at 3:9-12 (citing Dkt. No. 98-2, ¶ 11 and Ex. 3). | |

(38 of 245), Page 38 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 38 of 245
Case 5:18-cv-07182-EJD   Document 183   Filed 04/20/23   Page 37 of 50

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 5: The Neo4j Sweden Software License, while still allowing code to be publicly viewable and used within a certain licensed scope, prohibited the non-paying public from engaging in commercial resale and support services. Dkt. No. 118 at 3:12-13; Dkt. No. 98-2, ¶¶ 11-12 and Ex. 3. | |
| | Fact 6: The NOTICE provision in the Neo4j Sweden Software License states that Neo4j® EE is developed and owned by Neo4j Sweden… and is subject to the terms of the [AGPL], with the Commons Clause as follows…." Dkt. No. 98-2, ¶ 11 and Ex. 3.  It also provides additional information, such as the title of the work, terms and conditions for use of the work, and other identifying information about Neo4j Sweden and how to obtain a commercial license for the use of Neo4j® EE. *Id.* | |
| | Fact 7: In November 2018, Plaintiffs officially released of Neo4j® EE v3.5 solely under a commercial license. Dkt. No. 98-2, ¶ 13 and Ex. 4; Dkt. No. 118 at 3:13-15 (citing same). This meant that Plaintiffs were no longer publishing the source code for Neo4j® EE and offering it on an open source basis. *Id.*  This was done to simplify the licensing model, as well as prevent bad actors from profiting by providing commercial support services in closed, proprietary projects.  Dkt. No. 98-2, ¶ 13. | |
| | Fact 8: Prior to the official release of Neo4j® EE v3.5, Plaintiffs published several beta versions via their GitHub repository subject to the Neo4j Sweden Software License. Dkt. No. 118 at 6:18-21; Dkt. No. 98-2, ¶ 14. | |
| | Fact 9: Neo4j® EE v3.5.0-RC1 was the last pre-release version available to Defendants via GitHub. Thereafter, only the source code for Neo4j® CE was made publicly available under the GPL via Github. *Id.* | |
| 2. Defendants' intentional removal and/or alteration of CMI without the authorization of Neo4j Sweden | Fact 10: Following the release of Neo4j® EE v3.4, Suhy worked with Brad and Ben Nussbaum to form Graph Foundation, Inc. ("GFI") in June 2018.  Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Exs. 27-29); Dkt. No. 98-1, ¶¶ 24-26 and Exs. 22-24. | |
| | Fact 11: After Suhy helped form GFI, Defendants began offering and promoting a graph database software called "ONgDB." Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Ex. 27-29); Dkt. No. 98-1, ¶ 26 and Ex. 24. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 12:** To create ONgDB, Suhy downloaded the source code for Neo4j® EE v3.4 from Neo4j's GitHub repository and impermissibly replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL, which removed (a) the valid legal notices identifying Neo4j Sweden as the copyright holder and licensor in the NOTICE provision; and (b) the commercial restrictions imposed by the Commons Clause. Dkt. No. 118 at 6:7-11 (citing Dkt. No. 98-1, Ex. 3 at 28:25-29:11; Exs. 24-26, 28; Ex. 31 at 87:24-90:9); Dkt. No. 98-1, Ex. 3 at 171:23-172:23; Dkt. No. 98-2, ¶¶ 11-12, 27. | |
| | **Fact 13:** ONgGB v3.5 contained at least 182 source code files that had only been previously released by Neo4j Sweden under the Neo4j Sweden Software License in the last publicly available beta version of Neo4j® EE 3.5. Dkt. No. 118 at 6:18-21; Dkt. No. 98-1, Ex. 38 at 6:22-7:1, 8:4-16:24; Dkt. No. 98-2, ¶¶ 13-14, 29. | |
| | **Fact 14:** Suhy again replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL in ONgDB v3.5, which (a) stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor; and (b) removed the commercial restrictions imposed by the Commons Clause in 28 LICENSE.txt files. Dkt. No. 118 at 6:21-26 (citing Dkt No. 98-1, Ex. 31 at 159:3-10 and Exs. 39-40; Dkt. No. 98-2, ¶ 30; Dkt. No. 91 at 19:2-25); Dkt. No. 98-1, ¶ 41 and Ex. 39. | |
| | **Fact 15:** Suhy knew that Neo4j Sweden owned the copyright for Neo4j® EE, that Neo4j Sweden controlled the licensing thereof, and he could not replace the Neo4j Sweden Software License with the APGL without Neo4j Sweden's authorization. Dkt. No. 98-1, ¶ 36 and Ex. 34 ("As the copyright holder, is Neo4j allowed to add the specific additional terms mentioned above to the License.txt file …?"); *id.,* ¶ 58 and Ex. 56 (yellow highlights); *id.,* Ex. 3 at 183:12-25, 187:12-188:15, 189:1-191:3. | |
| | **Fact 16:** Neo4j Sweden never gave Suhy permission to remove Commons Clause, rename it "ONgDB" and offer it for free under the AGPL. Dkt. No. 98-1, ¶¶ 11-14, 27, 29-30. | |
| | **Fact 17:** Suhy has been the sole officer and director of PureThink since he formed the corporation. Ratinoff Decl., Ex. 2 at 176:4-11; see also Dkt. No. 98-1, ¶ 16 and Ex. 14 ("[t]he principle behind PureThink … has created a new corporate entity called iGov Inc."). | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 18:** Suhy has been the sole officer and director of iGov Inc. since he formed the corporation.  Dkt. No. 98-1, ¶ 12 and Ex. 10; *id.,* Ex. 3 at 21:20-23:25. | |
| 3. Defendants Distributed Neo4j Sweden's Works with its CMI Removed | **Fact 19:** Suhy made Neo4j Sweden's source code with its CMI removed publicly available via GFI's website and Github repository for ONgDB. Dkt. No. 98-1, Ex. 24 ("IRS is adopting the open source Neo4j Enterprise distributions we are transfered [sic] to [GFI]"); *id.*, ¶¶ 27 and Ex. 25 ("All the Neo4j enterprise distributions we package from now on will come from [GFI] and have the standard vanilla AGPLv3 open source license."); *id.*, ¶¶ 28 and Ex. 26 ("I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. [] Our open-source fork we manage can be found at https://graphfoundation.org"); *id.*, Ex. 3 at 172:4-23, 200:9-25, 211:7-24; *id.*, ¶¶ 41 and Ex. 39 (GFI Github commit); Dkt. No. 98-2, ¶¶ 27, 29-30.  This resulted in users downloading infringing ONgDB over 14,000 times by December 2020.  Dkt. No. 118 at 8:13-15. | |
| | **Fact 20:** Suhy provided hyperlinks to potential users of Neo4j® EE to download ONgDB from GFI's website and GitHub repository from his jmsuhy@purethink.com email account. Dkt. No. 98-1, Ex. 26 ("I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. [] Our open-source fork we manage can be found at https://graphfoundation.org"); Ex. 40 ("I just wanted to let you know that for ONgDB 3.5 - we merged the build framework and enterprise code back into the code repository like it used to be before Neo started stripping it out. [] See: https://github.com/GraphFoundation/ongdb"); Ex. 41 (landing page for https://github.com/graphfoundation/ongdb); Ex. 45 (emailing hyperlink to https://graphfoundation.org/ongdb/); Dkt. No. 98-1, ¶¶ 43, 60 and Exs. 41, 58 (landing page for https://github.com/graphfoundation/ongdb). | |
| | **Fact 21:** Suhy also provided hyperlinks to potential users of Neo4j® EE to download ONgDB from GFI's website and GitHub repository from his jmsuhy@igovsol.com email account.  Dkt. No. 98-1, ¶ 43 and Ex. 41 (landing page for https://github.com/graphfoundation/ongdb); *id.*, ¶ 59 and Ex. 57 (GFI webpage https://github.com/graphfoundation/ongdb), Exs. 44, 46, 54, 76-77 (emails with hyperlinks); Ratinoff Decl., Ex. 70 (email with hyperlink to https://graphfoundation.org/ongdb/).  He also tweeted and retweeted links to GFI's ONgDB webpage.  Dkt. No. 98-1, Exs. 98-100, 102-104 (tweets); Exs. 105-111 (retweets). | |

(41 of 245), Page 41 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 41 of 245
Case 5:18-cv-07182-EJD   Document 183   Filed 04/20/23   Page 40 of 50

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 22: iGov's website provided links to potential users of Neo4j® EE to download ONgDB directly from iGov and from GFI's website.  Dkt. No. 98-1, ¶¶ 65-72 and Exs. 63-70; Dkt. No. 98-2, ¶ 27. | |
| | Fact 23: iGov used a "Download Neo4j Enterprise" hyperlink on its "downloads" page to redirect consumers to download links for ONgDB until July 27, 2020.  Dkt. No. 118 at 27:12-28:1; Dkt. No. 98-1, Exs. 66-68 (highlighted in red); id., Ex. 13 at RFA Nos. 10, 14. | |
| | Fact 24: On May 22, 2018, Suhy emailed the IRS telling them the addition of the Common Clause to the license for Neo4j® EE v3.4 was improper and sought to convince the IRS to move to an unrestricted version of Neo4j® EE 3.4.  Ratinoff Decl., ¶ 31 and Ex. 29. The IRS did not obtain an independent legal opinion on Suhy's representations regarding the alleged impropriety of adding commercial restrictions to the AGPL. Id., Ex. 4 at 96:6-98:21. | |
| | Fact 25: On May 24, 2018, the IRS awarded another entity that Suhy had an ownership interest in at the time, eGovernment Solutions ("eGov Sol"), a contract for the development and support of the CDW Knowledge Graph Environment ("CKGE"), which used an open source Neo4j® EE software as a main component.  Ratinoff Decl., ¶¶ 30, 32 and Exs. 28, 30; id., Ex. 4 at 71:2-74:21, 75:14-76:14, 77:7-78:16, 85:3-18, 126:5-127:15; id., Ex. 3 at 47:14-50:8, 50:14-54:3. | |
| | Fact 26: Before the IRS awarded the CKGE contract to eGov Sol, Suhy made clear that he would be performing the work through iGov.  See Ratinoff Decl., Ex. 4 at 61:11-64:23, 72:2-74:21, 75:14-76:14, 77:7-78:11, 85:3-18; id, Ex. 3 at 30:8-31:21, 32:9-37:14, 50:14-54:3; id., Ex. 2 at 188:10-193:25; id., ¶ 30 and Ex. 28. | |
| | Fact 27: eGov Sol viewed the CKGE contract as belonging to Suhy to which he had sole responsibility for and control over.  Ratinoff Decl., Ex. 3 at 30:8-32:23, 34:1-37:14, 50:14-51:20; id., ¶ 37 and Ex. 35 at §§ 5, 5.1, 5.2 and 5.3. | |
| | Fact 28: The IRS paid a total of $1,316,000 to eGov Sol under the CKGE contract, which in turn eGov paid to Suhy and iGov. Ratinoff Decl., Ex. 3 at 54:10-59:5, 59:18-62:3, 63:13-65:25, 67:7-69:11, 69:16-70:19, 71:17-79:12; id., ¶¶ 38-44 and Exs. 36-42. | |

(42 of 245), Page 42 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 42 of 245
Case 5:18-cv-07182-EJD   Document 183   Filed 04/20/23   Page 41 of 50

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | <u>Fact 29:</u> Suhy was entitled to all the payments eGov Sol received from the IRS on the CKGE contract.  Ratinoff Decl., Ex. 3 at 30:13-32:25, 36:15-37:14, 39:18-40:18, 42:14-19, 50:14-54:3, 71:17-79:12, 81:6-82:17; *id.,* ¶ 44 and Ex. 42. | |
| | <u>Fact 30:</u> eGov Sol maintained a bank account for all the payments received from the IRS, which Suhy had access to and was authorized to disburse the payments made by the IRS as he saw fit.  Ratinoff Decl., Ex. 3 at 42:14-19, 62:1-63:12, 66:1-15. | |
| | <u>Fact 31:</u> In July 2018, a sales representative from Neo4j USA met with the IRS and then provided a one-year $156,000 quote for a Neo4j® EE v3.4 subscription on then-current requirements of CKGE.  Ratinoff Decl., ¶ 34 and Ex. 32; *id.*, Ex. 4 at 113:5-115:20, 116:5-117:21. | |
| | <u>Fact 32:</u> As of August 2018, the IRS understood that Neo4j® CE had a performance limitations, while Neo4j® EE had enterprise-only features, came with professional services and subscriptions.  The IRS ultimately decided to not allocate $156,000 for a license for Neo4j® EE because ONgDB was a free unrestricted alternative.  Ratinoff Decl., Ex. 4 at 103:2-104:12, 121:18-124:4, 126:5-129:25, 130:9-132:1. | |
| | <u>Fact 33:</u> In August 2018, Suhy convinced the IRS integrate ONgDB v3.4 rather than Neo4j® EE v3.4 based, in part, on misrepresentations about GFI being the copyright holder and licensor of ONgDB.  Ratinoff Decl., Ex. 4 at 126:5-129:25, 132:2-23, 133:15-138:2, 138:22-140:20, 141:8-24, 142:15-143:20; *id.*, ¶¶ 35-36 and Exs. 33-34. | |
| | <u>Fact 34:</u> While working under the CKGE contract, Suhy and iGov were responsible for supporting, maintaining and updating ONgDB on an internal repository at the IRS.   Dkt. No. 98-1, Ex. 38 at 23:14-24:4; Ratinoff Decl., Ex. 3 at 366:13-368:9; *id.,* Ex. 4 at 75:14-77:24, 126:5-128:24, 142:15-143:20, 179:4-23, 204:4-206:9, 207:10-209:11; *id.,* ¶ 36 and Ex. 34; *id.,* ¶ 47 and Ex. 45 (yellow highlights). | |
| | <u>Fact 35:</u> Suhy and iGov helped the IRS upgrade the CKGE platform to ONgDB v3.5 and continued to integrate subsequent subversions through at least April 2022.  Dkt. No. 98-1, Ex. 3 at 224:13-23; Ratinoff Decl., Ex. 4 at 207:7-209:15, 210:5-211:20, 213:1-216:8; *id.,* ¶¶ 45-49 and Exs. 43-47 (yellow highlights). | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 36:** After April 2022, the IRS started calling ONgDB just "GDB," which still used Neo4j® EE 3.5 source code improperly licensed under the AGPL, which Suhy compiled on the IRS's internal GitLab repository. Ratinoff Decl., Ex. 4 at 175:6-176:21, 193:9-198:15. | |
| | **Fact 37:** Between August 2018 and April 2022, they facilitated the use of four instances of ONgDB on at least three servers within the CKGE platform (a/k/a "main graph") environment. Ratinoff Decl., Ex. 4 at 152:21-156:16, 157:23-158:11, 161:23-163:4, 166:19-167:4, 168:24-172:10, 174:19-175:5, 179:13-23. | |
| | **Fact 38:** iGov operated www.graphstack.io to further promote ONgDB over Neo4j® EE and allowed consumers to directly download ONgDB without any restrictions. *See* Dkt. No. 98-1, ¶ 77 and Ex. 75 ("iGov Inc is the company behind GraphStack" and that "iGov Inc offers production support packages for Neo4j / ONgDB Enterprise open source distributions for US government agencies"); *id.*, Ex. 13 (RFA No. 40); *see also* Ratinoff Decl., ¶¶ 50-54 and Exs. 48-52. | |
| 3. Defendants had reason to know that their actions would induce, enable, facilitate, or conceal copyright infringement | **Fact 39:** Defendants knew or had reasonable grounds to know that they could not replace the Neo4j Sweden Software License with the AGPL without Neo4j Sweden's authorization. *See* Ratinoff Decl., Ex. 1 at 178:17-179:8, 186:5-184:10.  This is further evidenced by their failure to seek competent legal advice, and reliance on Suhy's unqualified analysis of the provisions of the AGPL and "internet research" that he admitted was inconclusive. *Id.* at 196:22-201:16. | |
| | **Fact 40:** Suhy participated in a discussion thread on Plaintiffs' Github repository in May 2018 where a person claiming to represent Neo4j told him that his interpretation of Section 7 was wrong for reasons similar to those found by this Court. Dkt. No. 98-1, ¶ 119 and Ex. 117; Ratinoff Decl., Ex. 1 at 201:18-205:16. Suhy "didn't have time to go and dive into it" and chose not to seek legal advice concerning those views despite not understanding Plaintiffs' legal position on the interpretation of the AGPL. Ratinoff Decl., Ex. 1 at 205:17-206:11. | |
| | **Fact 41:** When Suhy sought guidance from the FSF on the removal of the Commons Clause, the FSF told him "[t]he copyright holder on a work is the one with the power to enforce the terms of the license" and "[i]f a work was previously available under a free license, and later that license is changed, users can always use that earlier version under the terms of | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | the free license." Dkt. No. 98-1, ¶ 36 and Ex. 34 (yellow highlights). The FSF also warned that "we cannot provide you with legal advice" and that he should "talk with legal counsel." *Id.* | |
| | <u>Fact 42:</u>  Suhy ignored the FSF's admonitions, and did not consult an attorney before removing the Commons Clause. Ratinoff Decl., Ex. 1 at 183:2-184:9, 187:12-188:15, 189:1-191:3, 192:18-193:24, 196:22-24. | |
| | <u>Fact 43:</u> Suhy understood that the Common Clause imposed commercial restrictions on the use of Neo4j® EE.  Dkt. No. 98-1, ¶ 27 and Ex. 25 ("[Neo4j Sweden] tried adding a 'commons clause' to the AGPL license, trying to precent [sic] companies from selling (and competing against them on procurements)"); *id.,* ¶ 31 and Ex. 29 ("People can pay money for a restrictive commercial license, or use Neo4j Enterprise for free under it's open source license"); *id.,* ¶¶ 44-45; Exs. 42-43 (yellow highlights); Ratinoff Decl., Ex. 1 at 154:22-156:1. | |
| | <u>Fact 44:</u> Suhy removed the Commons Clause to induce end-users to use ONgDB in commercial applications for free and then use the cost savings to pay Defendants to provide support services to those users.  Dkt. No. 98-1, ¶ 31 and Ex. 29; *id.,* ¶¶ 64-68 and Exs. 62-66; *id.,* ¶ 128 and Ex. 126; *see also* Dkt. No. 118 at 5:24-6:1, 6:11-7:5, 29:4-11; Dkt. No. 98-1, ¶¶ 44-45, 49 and Exs. 42-43, 47; *id.,* ¶ 49 and Ex. 47; *id.,* ¶ 56 and Ex. 54; *id.,* ¶¶ 128 and Ex. 126; *id.,* ¶¶ 132-134 and Exs. 130-132. | |
| | <u>Fact 45:</u> Suhy concealed the infringing nature of ONgDB and misled the IRS to believe that GFI licensed the software rather than Neo4j Sweden exemplifies their actual knowledge that the removal of Neo4j Sweden's CMI would result in copyright infringement.  Ratinoff Decl., ¶ 35 and Ex. 33 ("ONgDB open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc"); *id.,* Ex. 4 at 127:19-129:25, 132:2-133:13, 134:7-136:9, 137:24-138:11, 139:22-141:17. | |
| | <u>Fact 46:</u> Defendants used the IRS's adoption of ONgDB to encourage other government agencies and contractors to do the same and pay them for support services. Dkt. No. 98-1, ¶¶ 26, 44-49 and Exs. 24, 42-47. | |
| | <u>Fact 47:</u> Suhy also convinced another company, Greystones Consulting Group, LLC ("Greystones"), to implement ONgDB in an analytics platform branded by Greystones as "GreyRaven" and worked with them to solicit government agencies.  Ratinoff Decl., ¶¶ 55-60 and Exs. 53-58. | |

(45 of 245), Page 45 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 45 of 245
Case 5:18-cv-07182-EJD   Document 183   Filed 04/20/23   Page 44 of 50

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | <u>Fact 48:</u> The United States Air Force awarded Greystones two SBIR contracts based on its GreyRaven platform, which Greystones touted as being based on ONgDB. Ratinoff Decl., ¶¶ 61-62 and Exs. 59-60. | |
| | <u>Fact 49:</u> The Maryland Procurement Office (a/k/a the National Security Agency, the NSA and the MPO) tasked Next Century to analyze available graph database technologies, including Neo4j® EE. Ratinoff Decl., Ex. 5 at 19:5-20:8, 28:10-31:21. | |
| | <u>Fact 50:</u> After the release of ONgDB v3.4, Suhy told Next Century that the MPO could use ONgDB under the AGPL without restrictions or paying Plaintiffs for a commercial license, as advertised on the iGov's website. *Id.,* Ex. 5 at 35:7-37:3, 40:3-42:3, 42:16-48:22, 49:9-51:14, 51:23-25, 54:7-56:21, 57:18-62:12; *id.,* ¶¶ 63-66 and Exs. 61-63; *see also* Dkt. No. 98-1, ¶¶ 49 and Ex. 47. | |
| | <u>Fact 51:</u> Suhy confirmed that ONgDB v3.5 had the same closed enterprise features as Neo4j® EE v3.5, and Next Century could use it without restrictions or paying Neo4j for a commercial license. *See* Ratinoff Decl., Ex. 5 at 62:13-65:17; *id.,* ¶ 66 and Ex. 64. This led Next Century to upgrade to ONgDB v3.5. Dkt. No. 98-1, ¶ 122 and Ex. 120. | |
| | <u>Fact 52:</u> As result of Defendants' removal of Neo4j Sweden's CMI and false statements about the same, Neo4j USA lost a multi-year $2.2 million deal when the MPO chose ONgDB instead of paying for a subscription to Neo4j® EE. Dkt. No. 118 at 29:19-30:6; Dkt. No. 98-3, ¶¶ 22-24 and Exs. 12-13. | |
| **Defendants' Violation of the DMCA [17 U.S.C. § 1202(b)(3)]** | | |
| 1. the existence of CMI on the infringed work; | *See* <u>Facts 1-9</u>. | |

(46 of 245), Page 46 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 46 of 245
Case 5:18-cv-07182-EJD   Document 183   Filed 04/20/23   Page 45 of 50

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| 2. Defendants distributing that material knew that CMI had been removed or altered without authority of the copyright owner; and | *See* Facts 10-18. | |
| 3. Defendants knew or had reason to know that distributing works without CMI would "induce, enable, facilitate or conceal an infringement. | *See* Facts 39-52. | |
| **Defendants' Unclean Hands Defense** | | |
| 1. Defendants cannot establish that Neo4j USA's conduct is inequitable; and | <u>Fact 53:</u> On July 11, 2017, Neo4j USA notified the IRS that it had terminated its partnership with PureThink, and advised the IRS that PureThink was contractually restricted from providing support services for open source versions of Neo4j® software for 36 months.  Ratinoff Decl., ¶ 24 and Ex. 22. | |
| | <u>Fact 54:</u> Despite Neo4j USA's warnings, the IRS continued to use Neo4j® EE for free under the AGPL and allowed Suhy to perform under PureThink's support contract.  Ratinoff Decl., Ex. 4 at 40:16-43:13; 55:10-59:24; 69:8-70:25, 78:5-16; *id.*, ¶ 27 and Ex. 25. | |
| | <u>Fact 55:</u> Suhy specifically targeted the IRS to transition to iGov's Government Package for Neo4j, and as a result in late July 2017, the IRS invited iGov to provide a quote for a sole-source contract for the development and support of the CKGE, which used an open source version of Neo4j® EE software as a main component.  Dkt. No. 171, ¶ 23; Ratinoff Decl., ¶ 27 and Ex. 25; *id.*, ¶ 28 and Ex. 26 (blue highlights | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | at IGOV0001570513.001–IGOV0001570513.002); *id.*, Ex. 4 at 71:1-73:4. | |
| | Fact 56: It was immaterial to the IRS who was the contracting entity so long as Suhy was the individual providing them. Ratinoff Decl., Ex. 4 at 61:11-64:23. | |
| | Fact 57: On September 5, 2017, the IRS announced its intent to award a sole-source contract to iGov based on that quote. Dkt. No. 171, ¶ 23; Dkt. No. 98-2, ¶ 23. | |
| | Fact 58: Neo4j USA filed an official protest with the IRS, which the IRS agreed with Neo4j USA that it had improperly awarded the contract to iGov on a sole source basis and canceled it for that reason. Dkt. No. 98-2, ¶ 23; Dkt. No. 172-1, ¶¶ 5-7 and Ex. 3; Ratinoff Decl., Ex. 4 at 69:20-70:9, 71:1-74:1. After cancelling the award to iGov, the IRS awarded iGov and Suhy the CKGE contract via eGov Sol. *See* Facts 25-30. | |
| 2. Defendants cannot establish that Neo4j USA's conduct relates to the subject matter of its Lanham Act claims. | Fact 59: Neo4j USA's alleged "bad acts" pertain to the licensing of Neo4j® EE. *See* Dkt. No. 91 at 16:21-19:7. However, Neo4j Sweden owns the copyright to Neo4j® EE and was licensor of that software under the GPL and AGPL, and not Neo4j USA. Dkt. No. 98-2, ¶¶ 3-4; Dkt. No. 118 at 2:11-16 (citing same). | |
| | Fact 60: The GPL, AGPL and Neo4j Sweden Software Licenses are copyright licenses and not trademark licenses. Dkt. No. 85 at 7:27-8:7. | |
| | Fact 61: Neo4j Sweden release Neo4j® EE v3.4 (the first version subject to the more restrictive Neo4j Sweden Software License) in May 2018, and as a result, ceased licensing Neo4j® EE under the AGPL at that time. Dkt. No. 118 at 3:9-12; Dkt. No. 98-2, ¶¶ 11-12, Ex. 3. | |
| | Fact 62: The inclusion of the Commons Clause in Neo4j® EE v3.4 does not amount to inequitable conduct because the Court already held that as the copyright holder Neo4j Sweden could license Neo4j® EE how it saw fit. Dkt. No. 118 at 24:7-25:19, *aff'd* Dkt. No. 140 at 3. | |
| | Fact 63: By May 2018, Neo4j® EE v3.4 included advanced scalability, availability, security, and operational features that were not previously available under the GPL or AGPL, and at least 182 files that were never released under either license. Dkt. No. 118 at 3:1-15; Dkt. No. 98-2, ¶¶ 6-7, 10-11; Dkt. No. 98-1, Ex. 38 at 6:22-7:1, 8:6-16:24. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | **Fact 64:** Defendants released ONgDB sometime in July 2018 and their promotion thereof amounted to trademark infringement, false advertising and false designation of origin in violation of the Lanham Act and UCL. *See* Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Ex. 28); Dkt. No., 98-1, ¶ 26 and Ex. 24; Dkt. No. 118 at 18:2-32:14. | |
| | **Fact 65:** Neo4j Sweden ceased its dual licensing model under the GPL and AGPL in *May 2018* and Neo4j USA's alleged false statements about the IRS needing to obtain a commercial license for Neo4j® EE were made before *October 2017*. *See* Ratinoff Decl., Ex. 65 at 14:9-15:28, 17:1-27:7; *see also* Dkt. No. 118 at 3:17-4:22; Dkt. No. 177 at ¶¶ 20-21. | |
| **PureThink's Claim for Breach of Exclusivity Contract** | | |
| 1. No enforceable contract existed; | **Fact 66:** There is no contract consented to or signed by Neo4j USA giving PureThink ownership rights in the Gov't Edition, the right to be paid for the development thereof, or the right to be compensated for that development work upon termination.  Instead, Suhy repeatedly told Neo4j USA – both before and after April 11, 2015 – that the Gov't Edition was a "concept" for PureThink to bypass protracted mandatory competitive bidding processes and take advantage of a faster sole-source procurement track.  Dkt. No. 98-1, ¶¶ 7-8 and Exs. 5-6; Ratinoff Decl., ¶¶ 8, 10, 12-14, 17, 19 and Exs. 6, 8, 10-12, 15, 17 (yellow highlights). | |
| | **Fact 67:** Suhy told third parties Gov't Edition was only created for sole-source justification.  Ratinoff Decl., ¶ 16 and Ex. 14 (yellow highlights). | |
| | **Fact 68:** The letter purporting to be a separate agreement between Neo4j USA and PureThink was simply the means for PureThink to establish sole source justification. Dkt. No. 98-1, ¶ 8 and Ex. 6; Ratinoff Decl., ¶¶ 14, 18-19 and Exs. 12, 16-17 (yellow highlights). | |
| | **Fact 69:** Suhy repeated confirmed and assured Neo4j USA that it owned the intellectual property making up the Gov't Edition, as well could terminate PureThink as the exclusive reseller *at any time and for any reason*.  Dkt. No. 98-1, Ex. 6 (yellow highlights); Ratinoff Decl., ¶¶ 9-10, 14, 17, 19 and Exs. 7-8, 12, 15, 17 (green highlights). | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 70: Consistent with his prior representations, Suhy sent proposed language for the external and internal versions of the sole-source justification letters to Neo4j USA on April 10, 2015, with the internal version stating "Neo Technologies has the right to cancel this exclusivity agreement at any time and for any reason." Ratinoff Decl., ¶ 10 and Ex. 8 (green highlight); *see also id*., ¶ 9 and Ex. 7 (green highlights). | |
| | Fact 71: The internal version of the April 11, 2015 sole-source letter signed by Lars Nordwall on behalf of Neo4j USA expressly stated that "Neo Technology has the right to cancel this exclusivity agreement at any time and for any reason." Ratinoff Decl., ¶ 11 and Ex. 9 (green highlight) | |
| | Fact 72: The internal version of the April 11, 2015 letter signed by Neo4j USA omitted Suhy's proposed language "[t]his agreement supersedes any other agreements." *Compare* Ratinoff Decl., ¶ 10 and Ex. 8 (red highlight) *and id*., ¶ 11 and Ex. 9 at p. 3. | |
| | Fact 73: Erik Nolten of Neo4j USA shared the same understanding that Neo4j USA owned the Gov't Edition and had the right to cancel PureThink's status as an exclusive reseller thereof any time and for any reason based on Suhy's representations made before April 11, 2015 (Ratinoff Decl., ¶¶ 8-10 and Exs. 6-8) and from the express language of the sole-source letters signed by Lars Nordwall (*id.,* ¶ 15 and Ex. 13). | |
| | Fact 74: After meeting with Neo4j's new Vice President of Strategic Alliances and Channels, John Broad, in October 2015, Suhy prepared documents for him reconfirming that Neo4j USA owned the Gov't Edition and had the right to cancel PureThink's status as the exclusive reseller thereof any time and for any reason. Ratinoff Decl., ¶ 17 and Ex. 15 (green highlights). | |
| 2. PureThink's performance or excuse for nonperformance; | Fact 75: In conjunction with terminating the Gov't Edition on June 19, 2015, Neo4j USA informed PureThink that it was "no longer authorized to market, resell, demonstrate or provide training on the Neo4j Government Edition." Ratinoff Decl., ¶ 21 and Ex. 19. | |
| | Fact 76: Suhy acknowledged the termination of the Gov't Edition and agreed to remove all references from PureThink's website. Ratinoff Decl., ¶¶ 22 and Ex. 20. | |
| | Fact 77: After Neo4j USA terminated the SPA, Defendants targeted same federal agencies that PureThink previously solicited under the SPA by | |

(50 of 245), Page 50 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 50 of 245
Case 5:18-cv-07182-EJD   Document 183   Filed 04/20/23   Page 49 of 50

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | offering "Government Packages for Neo4j." Dkt. No. 118 at 4:24-5:20 (citing Dkt. No. 98-1, Exs. 14-19). | |
| | <u>Fact 78</u>: iGov's "Government Packages for Neo4j" included the same framework and FISMA security add-ons the Gov't Edition. Ratinoff Decl., ¶ 23 and Ex. 21; *id.*, ¶¶ 25-26 and Ex. 23-24. The only difference was it included Neo4j® EE for free under the AGPL. *Id.* | |
| | <u>Fact 79</u>: On July 11, 2017, the same day Neo4j USA terminated the SPA, Suhy emailed government contractors and agencies confirming that iGov was reusing the framework and add-ons developed for the Gov't Edition (contrary to his prior admissions that Neo4j USA owned them). Dkt. No. 98-1, ¶ 14 and Ex. 12; Ratinoff Decl., ¶¶ 25-26 and Exs. 23-24. | |
| | <u>Fact 80</u>: Defendants made clear on iGov and PureThink's websites that the "Government Package for Neo4j" was from the same "principle" behind PureThink and Gov't Edition. Dkt. No. 98-1, Exs. 14-15. | |
| | <u>Fact 81</u>: Suhy and PureThink formed iGov to evade the restrictions in the Partner Agreement. Dkt. No. 98-1, ¶ 13 and Ex. 11; *id.*, ¶¶ 16-17 and Exs. 14-15 ("The principle behind PureThink and the Government Package has created a new corporate entity called iGov Inc, which is not a Neo4j Solution Partner. Because iGov Inc is not a solution partner, it can offer packages at great cost savings to US Government Agencies as it has no restrictions on working with Neo4j Enterprise open source licenses!"); Dkt. No. 118 at 24-5:7 (citing same); Dkt. No. 177 at 10:3-6. | |
| | <u>Fact 82</u>: iGov thereafter operated as PureThink's successor-in-interest. Ratinoff Decl., ¶ 27 and Ex. 25 ("[S]ince iGov Inc has no limitations on supporting or providing services for Neo4j Enterprise open source licenses, we can just have iGov Inc. assume over all [PureThink's] obligations of the current contract now instead of waiting for the next procurement. Nothing would change, we would have the same team, locations and would keep working as we always have."); Ratinoff Decl., Ex. 27 ("US Treasury has decided to make the move to our new company iGov Inc and the new Government Packages for Neo4j Enterprise"); *id.*, ¶¶ 29-30 and Ex. 27-28 (yellow highlights); Dkt. No. 98-1, ¶¶ 13, 16-17 and Exs. 11, 14-15; *see also* Facts 17, 77-80. | |
| | <u>Fact 83</u>: Defendants continued to actively marketed "Government Package for Neo4j" until they released ONgDB. Dkt No. 118 at 4:24- | |

(51 of 245), Page 51 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 51 of 245
Case 5:18-cv-07182-EJD   Document 183   Filed 04/20/23   Page 50 of 50

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | 5:20 (citing Dkt. No. 98-1, Exs. 14-19, 21, 62-64, 67-69); Dkt. No. 118 at 19:13-20:24. | |
| 3. Neo4j USA did not breach the alleged exclusivity agreement; and | Fact 84: Assuming a separate exclusivity agreement existed, Neo4j USA had the unfettered right to discontinue the Gov't Edition and terminate PureThink as its exclusive reseller without cause and without compensating PureThink. *See* Facts 69-74. | |
| 4. There are no resulting damages to PureThink. | Fact 85: PureThink could not have suffered $1.3 million in damages since the IRS ultimately awarded the CKGE contract for the same amount to its successor-in-interest iGov via eGovernment Solutions in order for it to continue developing the CKGE the framework that PureThink had started with the Gov't Edition under the prior contract. *See* Facts 25-30. | |
| | Fact 86: PureThink did not maintain any time sheets that could support their claim that PureThink "spent an equivalent to $650,000 to design, develop, and build" the Gov't Edition. Ratinoff Decl., Ex. 2 at 173:15-177:17. | |
| | Fact 87: PureThink's financial statements showed it did not incur any expenses or overhead for the development of the Gov't Edition. Ratinoff Decl., Ex. 2 at 59:6-63:15; *id.,* ¶¶ 68-69 and Exs. 66-67. | |
| | Fact 88: PureThink did not spend any money to develop the Gov't Edition. Ratinoff Decl., Ex. 2 at 170:10-171:13. | |
| | Fact 89: Suhy used PureThink's work product from the Gov't Edition for iGov's "Government Packages for Neo4j." Ratinoff Decl., Ex. at 186:14-24; *id.,* ¶¶ 25-26 and Exs. 23-24 ("We've simply taken the framework and services that made a Neo4j Enterprise (Commercial only) into Neo4j Government Edition and made them available as a stand alone package we call (Government Package for Neo4j)"); *id.,* ¶¶ 29-20 and Exs. 27-28. | |

I attest that the evidence cited herein fairly and accurately supports the facts as asserted by Plaintiffs Neo4j, Inc. and Neo4j Sweden AB.

Dated:  April 20, 2023                              By:  */s/ Jeffrey M. Ratinoff*
                                                                  Jeffrey M. Ratinoff, Attorney for Plaintiffs Neo4j, Inc. and Neo4j Sweden AB

4893-2937-1191.1

15

Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney at Law
7960 Soquel Drive Ste B #296
Aptos CA 95003
Tel: (408) 392-9233
adron@adronlaw.com

Attorneys for defendants:
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation, Plaintiffs, v. PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual, Defendants. | CASE NO. 5:18-CV-7182 EJD **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THEIR DCMA CLAIM AND DEFENDANTS' BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE** Date: July 27, 2023 Time: 9:00 a.m. Dept. Courtroom 4, 5th floor Judge: Hon. Edward J. Davila Trial Date November 14, 2023 |
| AND RELATED COUNTERCLAIMS | |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................ 2

II.  STANDARD FOR SUMMARY JUDGMENT .............................................. 8

III. ARGUMENT ............................................................................ 10

   A.   The Court Should Deny Summary Judgment on the DCMA Claims. 10

     1.   The Law of The Case Doctrine Does Not Apply To Interim Orders 10

     2.   Removal of the Commons Clause Was Proper. ................................. 11

     3.   Removal of the Common Clause Prevents Further Infringement of
FSF's copyright. .................................................................. 14

     4.   Defendants do not control the GFI Website or Github. ................... 17

   B.   Plaintiffs Have Acted with Unclean Hands ...................................... 17

   C.   Plaintiffs Are Not Entitled To Summary Judgment Purethink's On
Breach Of Exclusively Contract Counterclaim ............................................ 21

     1.   The Parties Consented to a Separate Exclusivity Agreement ......... 22

     2.   Neo4j USA Breached the Exclusivity Agreement. ......................... 22

     3.   Purethink Performed its Obligations Under the Exclusivity
Agreement. ................................................................................ 23

     4.   PureThink Has Been Damaged in Excess of $1.3M ....................... 24

IV. INJUNCTION ............................................................................ 24

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ............................ 8, 9

*Braxton-Secret v. A.H. Robins Co.* (9th Cir. 1985) 769 F2d 528, 531 ............... 9

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ............................................ 8

*Chevron Corp. v. Pennzoil Co.*, 974 F.2d1156, 1161 (9th Cir. 1992)................... 8

*Columbia Pictures Industries v. Redd Horne*, 749 F.2d 154, 160 (3d Cir. 1984)
.................................................................................................................... 13

Dollar Sys., Inc. v. Avcar Leasing Sys., Inc., 890 F.2d 165, 173 (9th Cir.1989)
.................................................................................................................... 17

*Eastman Kodak Co. v. Image Technical Services, Inc.* (1992) 504 US 451, 112
S.Ct. 2072................................................................................................... 9

Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 847 (9th Cir.1987)
.................................................................................................................... 17

*Gordon v. Nextel Commc'ns. & Mullen Advert., Inc.*, 345 F.3d 922, 927 (6th
Cir. 2003).................................................................................................... 12

*Japan Telecom, Inc. v. Japan Telecom America Inc.* (9th Cir. 2002) 287 F.3d
866 ............................................................................................................. 17

*Langevine v. District of Columbia* (D.C. Cir. 1997) 106 F.3d 1018................. 10

*Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990)....................................... 8

*Ray Thomas, Inc., v. Cowan*, 99 Cal.App. 140 [ 277 P. 1086]. ........................ 24

*S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690
F.2d 1235.................................................................................................... 9

*Taylor v. Sapritch,* 38 Cal.App.2d 478, 481 (Cal. Ct. App. 1940)................... 24

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992) ................................... 8

Wells Fargo & Co. v. Stagecoach Props., Inc., 685 F.2d 302, 308 (9th Cir.1982) ....................................................................................................... 17

Worden v. Cal. Fig Syrup Co., 187 U.S. 516, 528, 23 S.Ct. 161, 47 L.Ed. 282 (1903)............................................................................................ 17, 21

*Zee Medical Distributor Assn. Inc. v. Zee Medical, Inc.,* 80 Cal.App.4th 1, 10 (Cal. Ct. App. 2000) ....................................................................... 22

**Statutes**

17 U.S.C. § 1202(b)(1) ............................................................................. 11

Cal. Civ. Proc. Code § 1856 ..................................................................... 22

FRCP 54 ................................................................................................... 10

FRCP 56 ................................................................................................. 8, 9

FRCP 59 ................................................................................................... 11

## I.  INTRODUCTION

Defendants and Counterclaimants Purethink LLC, John Mark Suhy and IGOV INC., ("Defendants") oppose Plaintiff and Counter defendant Neo4J, Inc.'s and Neo4j Sweden AB's motion Motion For Summary Judgment On Neo4J Swedens' DMCA Claim, Defendants' Breach of Contract Counterclaim and Unclean Hands Defense.

Plaintiffs rely on the Phase 1 summary judgment ruling to improperly conclude Phase 2 issues. Plaintiffs improperly brought the review of the AGPL clauses into the Phase 1 dispositive motions. See Dkt. 100, 25:3-11. This has resulted in a chain of critical errors, which Defendants may properly seek to correct.

As shown by the unopposed[1] Expert Report of Bradley M. Kuhn, Defendant's removal of the commons clause from the AGPL was proper. Declaration of Adron G. Beene ("Beene Dec."), Exhibit 33 ("Kuhn Expert Report"), ¶¶71-78. As the facts surrounding the removal of the commons clause are in clear dispute, no summary judgment should be granted on Plaintiffs' DMCA claim.

The DMCA claim lacks merit as Neo4J Sweden does not own the copyright to the AGPL license. The GPL and AGPL licenses were created, copyrighted, and trademarked by the Free Software Foundation ("FSF"). That is what the licenses say.

Neo4J Sweden uses FSF trademark and AGPL license under a license from FSF. That license grants Neo4J Sweden the license to use the copyrighted license under stated restrictions. "Everyone is permitted to copy

---

[1] Plaintiffs have not disclosed any contra-expert, and the deadline for doing so has passed.

and distribute verbatim copies of this license document, but changing it is not allowed." Neo4J Sweden's addition of the commons clause is a violation of FSF' copyright license. Neo4J Sweden's adding the commons clause is false copyright management information which violates 17 U.S. Code §1202 (a).

That is a copyright infringement violating FSF's copyright. Suhy's removal of the commons clause, which is of the infringing addition, prevents further copyright infringement and stops contributory infringement. FSF, owner of the copyright to the AGPL, provides this permission in the AGPL license agreement. Removal of Neo4J's Sweden's infringing terms, is not a violation of the DMCA.

There is clear evidence that Neo4j USA and Neo4J Sweden has acted with unclean hands. Neo4j Sweden started licensing Neo4J software under FSF's GPL and AGPL licenses. In 2012, Neo4J published a Fair Trade Software Licensing document to claim an intention of only allowing use of open source software for open projects. The claim is any use of Neo4J software requires the user to make the source code available to "benefit the world at large." If that was Neo4J's intention, they should not have used the GPL and AGPL licenses. Neo4J cannot join the GPL and AGPL community, using FSF's license and Trademarks then claim the license means other than what it does.

The Fair Trade Licensing concept is inconsistent with FSF's GPL and AGPL licenses.  Under the AGPL, the license granted in §2 broad (You may make, run and propagate covered works that you no convey without conditions so long as you license otherwise remains in force.) Under the GPL and AGPL licenses, the copyleft requirement (providing a license to all source

code) only applies on conveyance- distribution. If a licensee under a GPL or
AGPL, modifies the source code but never distributes it, there is no copyleft
requirement. A licensee may modify the source code and never has the
obligation, as Neo4J claims, to make the project open and share the
modifications for the benefit of the world. The falsity of Neo4J's purported
intention is shown in the GNU.org FAQ:

**Does the GPL require that source code of modified versions be posted to the
public?** (#GPLRequireSourcePostedPublic)

> The GPL does not require you to release your modified version, or any part of it.
> You are free to make modifications and use them privately, without ever releasing
> them. This applies to organizations (including companies), too; an organization
> can make a modified version and use it internally without ever releasing it outside
> the organization.

> But *if* you release the modified version to the public in some way, the GPL
> requires you to make the modified source code available to the program's users,
> under the GPL.

> Thus, the GPL gives permission to release the modified program in certain ways,
> and not in other ways; but the decision of whether to release it is up to you.

https://www.gnu.org/licenses/gplfaq.html#GPLRequireSourcePostedPublic

Under the AGPL, §5 states the rule for Conveying Modified Source
Versions: "You must convey the entire work, as a whole under this License to
anyone who comes into possession of a copy." In §6, if you convey Non-Source
Forms, you must also provide the Corresponding Source. The obligation to
provide modified source code is only when it is conveyed. There is no term in
the GPL/AGPL that can be construed to mean whenever you use or modify
the source, you must publish it to the world.  Neo4J USA told the IRS, "If you

choose to open source your Neo4J-based application…" you can use the AGPL. This is a false claim by Neo4J USA.

Neo4J's Fair Trade Licensing concept was to scare people to purchase Neo4J out of concern they would have to make any use of their open source public. See Suhy Dec. Ex 21, (Zagalsky email to Dunn IRS 4-4-2017). Neo4J USA bolstered this false claim with litigation "'[we] do expect that a court would rule based on the intent of the owner of the copyright [Neo Technology]." This false statement conflates Neo4J's partial copyright ownership of the software with the FSF' copyright ownership of the GPL/AGPL license.

Neo4J has no basis to claim they can state the intention of FSF in creating the GPL/AGPL licenses. Nor is intention relevant when the terms of the GPL/AGPL state that conveying the software is the only time the source code must be provided to the licensee. There is no duty in the GPL/AGPL to grant a worldwide license to modifications to the source code at all. There is no obligation to provide modifications of the source code when the software is not conveyed.

The IRS' decision to use the AGPL version of Neo4J software is more than likely the result of Neo4J's false claims. The IRS was familiar with the AGPL and could glean Mr. Zagalsky's statements were false. It is Neo4J USA's unclean hands that loses business.

If it was Neo4J's intention to require such an obligation that any use of AGPL software had to be open, they used the wrong license form. They cannot promote they use the GPL/AGPL trademarks and licenses, then claim

to change the terms of the GPL/AGPL licenses. Such practice violates FSF's copyright license:

> Copyright © 2007 Free Software Foundation, Inc. <https://fsf.org/>
> Everyone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed.

While the AGPL has been referred to as Neo4J Sweden's license, it is not. It is the license they choose to use. The AGPL defines the license in §0 as: "This License" refers to version 3 of the GNU Affero General Public License. The Program is defined as: "The Program" refers to any copyrightable work licensed under this License. Each licensee is addressed as "you". "Licensees" and "recipients" may be individuals or organizations.

The basic rights granted under §2 of the AGPL is: All rights granted under this License are granted for the term of copyright on the Program, and are irrevocable provided the stated conditions are met. Applying this to the Neo4J software, All rights granted under this AGPL license are granted for the term of the copyright in Neo4J software and are irrevocable. This License [AGPL] explicitly affirms your unlimited permission to run the unmodified Program.

The AGPL limits how software licensed under the AGPL may be conveyed: "Conveying under any other circumstances is permitted solely under the conditions stated below."

Ironically, Neo4J Sweden's license to Neo4J USA violates the AGPL. Under §4 of the AGPL, all licenses to the Program must be under the AGPL license. Neo4J Sweden licensed Neo4J software and trademark to Neo4J USA. This creates two distinct problems. First, software licensed under the GPL/AGPL, may only be licensed under the GPL/AGPL. GPL/AGPL §4. The

license from Neo4J Sweden for Neo4J software was not the GPL or AGPL.
See Beene Dec. Ex. 28 That license is a standard non-exclusive software and
trademark license. There is no compliance with the GPL/AGPL. Neo4J USA
further violates the GPL/AGPL license by not licensing NEO4J software
under the GPL or AGPL and only licenses in binary and does not provide the
source code. See N4J 001735. It's an object code only and no source is
provided. Neo4J USA's licenses violates §6 of the GPL/AGPL. Suhy Dec. Ex.
24; Beene Dec., Ex 26,

The foundation for the trademark claim is unclean hands. Sweden's
Neo4J licensed its Neo4J trademark to Neo4J USA on a nonexclusive basis.
Beene Dec. Ex. 28, § 2.1.1. When Neo4J USA applied for registration with the
PTO, they claimed they owned the trademark and had been using it in
commerce before they existed. When these false statements were called into
question in this litigation, Neo4J USA did not bring these misrepresentations
in the trademark application to the attention of the PTO. See DKT 95 3:17-
23, 6:8-20, DKT 95-1; DKT 100, 12:13-14:9. The foundation of the trademark
claim is two lies and a concealment.

Neo4J USA failed to start with the correct license to close source its
software. Kuhn Expert Report ¶98. Instead, plaintiffs have sought to
threaten open source users improperly, prevent third parties from providing
services to open source code users. These acts are unclean hands barring the
Lanham act claims.

Further, Neo4j USA cannot escape its obligations under the exclusivity
agreement. The internal drafts are not the agreement and should be
disregarded. Neo4j USA is estopped from denying the April 11, 2015

agreement as PureThink was induced by the agreement to develop the Government Edition for the exclusive sale by PureThink. PureThink has incurred substantial damages due to Neo4j USA's breach of the exclusivity agreement.

Movant improperly uses excessive immaterial facts to create a burden on the opposition and this court. Burch v. Regents of Univ. of California, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Following Burch, defendants decline to accept the burden and further burden the court. Defendants address the material facts as those are all that are proper on a Rule 56 motion.

Plaintiffs' motion for summary judgment should be denied in its entirety.

## II.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d ll56, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the

moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. See *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. See *Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law ...." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the basis for the dispute. See id. The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The court must view the evidence presented on the motion in the light most favorable to the opposing party: "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." [*Anderson v. Liberty Lobby, Inc.*, supra, 477 US at 255, 106 S.Ct. at 2513. At the summary judgment stage, the nonmovant's version of any disputed issue of fact is presumed correct. *Eastman Kodak Co. v. Image Technical Services, Inc.* (1992) 504 US 451, 112 S.Ct. 2072. A person's state of mind (motive, intent, knowledge, etc.) may be inferred from his or her conduct. But summary judgment is improper where conflicting inferences can be drawn from such conduct (i.e., where reasonable minds could disagree as to a

person's motives, etc.). See, *Braxton-Secret v. A.H. Robins Co.* (9th Cir. 1985) 769 F2d 528, 531

## III. ARGUMENT

### A. The Court Should Deny Summary Judgment on the DCMA Claims

#### 1. The Law of The Case Doctrine Does Not Apply To Interim Orders

Plaintiffs assert AGPL issues have been conclusively decided under the The Law of the Case Doctrine. This position is inaccurate. The Law of the Case Doctrine does not apply to interlocutory orders. *Langevine v. District of Columbia* 106 F.3d 1018, 1023 (D.C. Cir. 1997). Interlocutory orders are not subject to the law of the case doctrine and may "always be reconsidered prior to final judgment." The ruling on the summary judgment motion was a partial ruling. As the standard authority explains, this is an interlocutory order:

> [14:35] **Effect of "partial summary judgment":** Unlike a summary judgment, a "partial summary judgment" does not terminate the action. It is merely an interlocutory order and is subject to revision. It is *not* immediately appealable without a specific judicial finding (FRCP 54(b), ¶ 14:377); and is *not* entitled to res judicata or collateral estoppel effect in other litigation. [*Information Resources, Inc. v. Dun & Bradstreet Corp.* 294 F3d 447, 452-453 (2nd Cir. 2002); *Solis v. Jasmine Hall Care Homes, Inc.* 610 F3d 541, 543-544 (9th Cir. 2010); *Burge v. Parish of St. Tammany* 187 F3d 452, 467 (5th Cir. 1999)]

A. General Considerations, Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 14-A

This follows FRCP 54. The Court's interlocutory ruling may be revised before final judgment. The other rulings in this case are not final and are not subject to the Law of the Case Doctrine either.

Plaintiffs claim the summary judgment ruling was decided on appeal. They conflate the name of the order with the nature of the appeal. Defendants appealed the order on the preliminary injunction. A partial summary judgment ruling is not appealable.

There is a further anomaly, as the AGPL Further Restrictions Clause issue was relegated to Phase 2, yet Neo4J moved forward on the issue in Phase 1. The Court relied on a pleading motion in another case (Graph Foundation 5:19-CV-06226-EJD) and noted nothing new was added. That is because Neo4J prematurely moved forward with an issue for Phase 2 in Phase 1. The party in the other case settled out and added nothing new. This procedure is not appropriate.

Defendants intend to address this in a FRCP 59 motion, unless the Court is inclined to consider the issue earlier. Plaintiffs seek to exclude the evidence of why the further restriction clause allows removal of improper terms. Licensees may not be able to enforce FSF copyright violations but have permission to remove offending terms under the Further Restrictions clause.

### 2. Removal of the Commons Clause Was Proper.

Even given the prior interim rulings of this court, Mr. Suhy did not engage in some improper intentional act in removing the non-permissive additional clause from the AGPL. Section 1202(b)(1) of the DMCA prohibits, *inter alia*, "intentionally remov[ing] or alter[ing] any copyright management information" with the knowledge, or with "reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. § 1202(b)(1).

"A section 1202(b)(1) violation occurs when a person (i) without authority of the copyright owner or the law (ii) intentionally removes or alters any copyright management information (iii) knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement of the federal copyright laws." *Gordon v. Nextel Commc'ns. & Mullen Advert., Inc.*, 345 F.3d 922, 927 (6th Cir. 2003).

Neo4J Sweden does not own the CMI as it claims. The license is owned by FSF. FSF, in in the AGPL gives permission for the licensee to remove additional restrictions. As discussed above, "you" means licensee under the GPL/AGPL. The right to remove additional terms is triggered when the Program owner uses the GPL/AGPL. The court has ruled that only the person using the license -the licensor-has that right. Mr. Kuhn explains the genesis and basis of the Further Restrictions clause and opines that Mr. Suhy followed the permission granted in the AGPL when removing the commons clause.

If the licensor is the only person who can remove an addition, as the court has ruled, then the license agreement has been changed by Neo4J Sweden. But, under the copyright license for the AGPL, FSF which owns the copyright, granted a license allowing only verbatim copies with no changes allowed:

GNU AFFERO GENERAL
PUBLIC LICENSE
Version 3, 19 November 2007

Copyright © 2007 Free Software Foundation, Inc. <http://fsf.org/> Everyone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed.

Suhy Decl. Ex. 2.

Neo4J Sweden's addition of the Commons Clause is not a verbatim copy of the AGPL and is change. Mr. Suhy did not remove the AGPL. He removed the common clause as allowed and which violated the AGPL. Neo4J's use of the commons clause violates the AGPL. This is a copyright violation of FSF's copyright to the AGPL. Neo4J Sweden was only licensed to use the AGPL form without change. Neo4J Sweden violated the terms of the AGPL license scope in its use of the FSF form.

As Neo4J Sweden does not own the copyright to the AGPL, they cannot meet the requirements for a DCMA claim (ownership of the copyright). While Suhy does not have standing to assert FSF's copyright[2], he does have a duty to **not** contribute to Neo4J' Sweden's copyright infringement: " 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing activity of another, may be held liable as a "contributory" infringer' " *Columbia Pictures Industries v. Redd Horne*, 749 F.2d 154, 160 (3d Cir. 1984), *quoting Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)

Neo4J Sweden violated FSF's copyright in the AGPL license by adding the common clause. Suhy prevented further infringement by removing the offending terms.

Since Neo4J software is licensed under the GPL and AGPL license, licensees have express permission under the terms of the FSF license to remove the additional terms.[3] This right is granted for permissive and non-permissive terms. Any licensee has the right to license the Program only

---

[3] This is an express right to remove terms that violate FSF's copyright.

under the GPL/AGPL without additional terms. AGPL §7. That is what Suhy did which is not a violation of FSF's copyright.

By choosing to use the GPL/AGPL license for Neo4J software, FSF ,the copyright holder, permits removal of additional terms. With the copyright holder's permission, no claim under 17 U.S. Code §1202. Suhy has permission for FSF, the copyright holder. "No person shall, **without the authority of the copyright owner** or the law—" [Emphasis added] Suhy has express permission to remove additional clauses from FSF in the FSF's AGPL license. As Mr. Suhy avoided Neo4J Sweden's violation of FSF's copyrighted license and did what is permitted under the terms of the FSF's license, there is no DMCA claim.

### 3.    Removal of the Common Clause Prevents Further Infringement of FSF's copyright.

Neo4J Sweden choose to use the FSF copyrighted AGPL license agreement. Neo4J Sweden has the burden of proof to show that Mr. Suhy intended to violate Neo4J's copyright. But the copyright to the license is owned by FSF. While Neo4J Sweden claims the license is its to do what it wants. It is not. Neo4J Sweden could not change the license terms unless, as Mr. Kuhn states, they complied with change provisions. Kuhn Expert Report, ¶85. (change the name of the license and delete the preamble).

Neo4J Sweden cannot enjoy the benefits of using the GPL/AGPL without the burdens of complying with the terms of the GPL/AGPL. Under the terms of the License form Neo4J choose to use, they must comply with the restriction, "no changes are permitted", and live up to the irrevocable license grant.

"All rights granted under this License are granted for the term of copyright on the Program, and are irrevocable provided the stated conditions are met." §2 GPL.

Neo4J Sweden did not modify the license by removing references to the GPL/AGPL and removing of the preamble. Exhibits 2 and 21 to Mr. Suhy's declaration shows the licenses Neo4J Sweden used. Neo4J Sweden references the GNU AFFERO GENERAL PUBLIC LICENSE VERSION and includes the Preamble. Neo4J Sweden uses FSF trademark and copyrighted license which means Neo4J Sweden is obligated to comply with the GPL/AGPL license terms.

Mr. Kuhn's opinion is Mr. Suhy's conduct in removing the Common Clause was customary, permissible and widely encouraged:

> In my opinion, when John Mark Suhy encountered the Neo4j Sweden Software License, his removal of the CC and redistribution of the Covered Work under pure AGPLv3 would be considered customary, permissible, and even widely encouraged in the field of FOSS.

Kuhn Expert Report ¶75.

The AGPL term at issue on the Further Restrictions aspect of his opinions is "**All other non-permissive additional terms are considered "further restrictions" within the meaning of section 10. If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term**." There appear two interpretations of that term. The question is who is the "you" who may remove further restrictions. The Court ruled on this issue based on a pleading motion in another case without the benefit of evidence on this term.

The AGPL states in the definition of The Program §0, Each licensee is addressed as "you". The license is defined as the GNU General Public License or the GNU Affero General Public License. Neo4J Sweden provides a notice that the Neo4J software (Program) is licensed under the GPL and AGPL. Thus, Mr. Suhy ("you") received Neo4J software (Program) governed by the AGPL and had permission to remove the terms of further restrictions.

Prior rulings were based on a concept the license was Neo4J' license and they are free to do what they want with it. This omits the foundation that the license is FSF's license Neo4J Sweden choose to use. They could have used any other license form but by the election to use FSF's license, Neo4J Sweden is bound by it and must comply with it.

Mr. Suhy relied on the standard of industry reading of the AGPL license. The existence of a license is a defense to a claim for copyright infringement. *CMS Software Design Sys., Inc. v. Info Designs, Inc.*, 785 F.2d 1246, 1248 (5th Cir. 1986). Suhy was licensed under the GPL/AGPL. The "you" in the further restrictions clause is the licensee, the person reading it. He did not think that meant the person who uses the FSF license form. His understanding is supported by Mr. Kuhn and the definition of you in the FSF license.

Mr. Kuhn was involved in the addition of the "Further Restriction" clause and reasons for it. Kuhn Expert Report ¶¶27-74. He opines that Mr. Suhy's removal of the Commons Clause was customary and permissible and even widely encouraged in the field of FOSS. Kuhn Expert Report ¶75 and permitted under the terms of the "Neo4J Sweden license". Kuhn Expert Report ¶78.

### 4. Defendants do not control the GFI Website or Github.

Plaintiffs claim that Defendants are responsible for making ONgDB publicly available, and responsible for it being downloaded over 14,000 times. However, Defendants do not control GFI, nor control what is placed on GFI's Github or website. See RUDF 19. As they do not control GFI's dissemination of ONgDB, Defendants cannot be responsible for its distribution.

### B. Plaintiffs Have Acted with Unclean Hands

"Unclean hands is a defense to a Lanham Act infringement suit." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 847 (9th Cir.1987).Trademark law's unclean hands defense springs from the rationale that "it is essential that the plaintiff should not in his trade mark, or in his advertisements and business, be himself guilty of any false or misleading representation." *Worden v. Cal. Fig Syrup Co.,* 187 U.S. 516, 528, 23 S.Ct. 161 (1903). To make out an unclean hands defense, a trademark defendant "must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims." *Fuddruckers,* 826 F.2d at 847. To show that a trademark plaintiff's conduct is inequitable, defendant must show that plaintiff used the trademark to deceive consumers. *See Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.,* 890 F.2d 165, 173 (9th Cir.1989) ("Bad intent is the essence of the defense of unclean hands.") (citing *Wells Fargo & Co. v. Stagecoach Props., Inc.,* 685 F.2d 302, 308 (9th Cir.1982)).

*Japan Telecom, Inc. v. Japan Telecom America Inc.* 287 F.3d 866, 870–871 (9th Cir. 2002).

Neo4J USA's business is built on a license of the Neo4J trademark and Neo4J software from Neo4J Sweden. That software is subject to the terms of the AGPL license. Neo4J USA is using the Neo4J trademark to sell the Neo4J software through the misuse of the AGPL license.

Mr. Kuhn contrasts Neo4J Sweden's' misuse of the AGPL with how MongoDB converted from open source to proprietary. Kuhn Expert Report ¶¶90-98.

Neo4J Sweden took the Neo4J software licensed under the AGPL and licensed it to Neo4J USA, but not under the terms of the AGPL. Then Neo4J USA licenses the Neo4J software under a non AGPL license in binary code only and does not provide the source code of modification. This is a violation of the AGPL §6. Neo4J USA licensing only the binary code under a non AGPL license is a violation of the AGPL too.

Kuhn contrast Neo4J wrong way with the correct way MondoDB closed its source code. MondoDB used the terms of the AGPL but did not use FSF's trademark. They named the license a Server Side Public License. MongoDB did not include the AGPL preamble. See Exhibit K to Kuhn Expert Report. This means MondoDB complied with FSF rules for modifications of the AGPL. Kuhn Expert Report ¶90-93. The further restriction removal right only applies when the Program states it is governed by the AGPL license. AGPL §7. MondoDB changed the name of its license and did not say it was governed by the AGPL so the right to remove would not apply. Neo4J Sweden references the AGPL license, so the removal right does apply.

The evidence shows, Neo4J Sweden does not own the complete code to the Neo4J software. See RUDF 1. They did not produce contribution agreements from all the authors of the code. *Id.* Under the Copyright Act, 17 U.S.C. §204 (a), transfers of copyright ownership requires a writing signed by the owner. Neo4J Sweden had a community of people working on the GPL/AGPL versions of Neo4J software for free. Those contributors are part

authors of Neo4J software. Without agreements from the authors, Neo4J Sweden did not own 100% of the copyright to Neo4J software and had no right to license Neo4J software outside of the GPL/AGPL license. Since Neo4J Sweden does not own the complete code, licensing it to Neo4J USA with a non GPL/AGPL license is a violation of the AGPL. Kuhn Expert Report ¶¶99-107.

By embarking on using the GPL/AGPL license and community of free developers, Neo4J cut a deal, they got free development help but lost ownership in all the code. That is the GPL/AGPL bargain. Neo4J is not allowed to use free development efforts over the years from the open source community under the guise of a GPL/AGPL license, take the copyright of others to sell commercially. This is unclean hands in the operation of the business under the Neo4J trademark.

Plaintiffs' violation of FSF trademark, copyright, the AGPL license terms and use of the Neo4J trademark to improperly license Neo4J software is unclean hands. Neo4J USA misrepresentations of time of use, ownership of trademark and failure to correct those misrepresentation is unclean hands under the PTO's standards.[4] See DKT 95 3:17-23, 6:8-20; DKT 91-1; *Chutter v. Great Mgmt. Group*, 2021 U.S.P.Q.2d 1001 (T.T.A.B. 2021).

Kuhn confirms Neo4J Sweden had other license options. Defendants agree Kuhn may not speculate on the reasons Neo4J choose to use FSF's license. But they certainly had other license forms to choose-and could make up their own. That is what MongoDB did. MongoDB modified the AGPL

---

[4] While Defendants are presently foreclosed from invalidating the trademark, the facts remain to support an unclean hands defense.

created and called it the SS Public license. That license complies with FSF's rules. Kuhn Expert Report ¶93. Neo4J Sweden' misuse of the FSF license does not.

Kuhn also explains that unless a licensor, such as Neo4J Sweden, has all the rights to the software, they cannot relicense on the software on a proprietary bases. Kuhn Expert Report ¶¶99-107. The evidence in this case is Neo4J did not have ownership of all code to allow license to Neo4J USA. RUDF 1, Suhy Decl., ¶¶13-14 , Beene Dec., Ex. 32 (Defendants asked for copies of each assignment from the other authors and Neo4J Sweden did not produce them). Neo4J's USA licensing of the software on a commercial basis is a violation of the AGPL.

Neo4J Sweden choose to license and use FSF's license form. FSF states a party may use the GPL terms if they call the license another name and do not include the GPL preamble or mention GNU. Kuhn Expert Report ¶85. Neo4J Sweden did do that. Neo4J Sweden used the FSF trademarks, the entire FSF agreement and did not remove the preamble. With that election, the terms of the FSF license (GPL and AGPL) apply to all Neo4J software and Neo4J Sweden is not allowed, under the AGPL, to change the license or license it other than through the AGPL. Neo4J USA, a licensee is not allowed to change the AGPL either: "Each time you convey a covered work, the recipient automatically receives a license from the original licensors, to run, modify and propagate that work, subject to this **License**." [Emphasis added] AGPL §10.

The heart of unclean hands is "[It is essential that the plaintiff should not in his trade mark, or in his advertisements and business, be himself

guilty of any false or misleading representation." *Worden v. Cal. Fig Syrup Co.,* 187 U.S. 516, 528, 23 S.Ct. 161 (1903). Neo4J Sweden and Neo4J USA have marketed Neo4J software in violation of the AGPL. This is false and misleading use of the Neo4J trademark.

Neo4J USA through false representations obtained its trademark registration in violations of PTO rules. USA obtained the Neo4J software through violation of the GPL/AGPL licenses. USA conveys the Neo4J software through violation of the GPL/AGPL. USA falsely claims using GPL/AGPL software must comply with a " Fair Trade Licensing" option which 1) is a false interpretation of the GPL/AGPL or 2) a violation of §10 of the AGPL which states, "You may not impose any further restrictions on the exercise of the rights granted or affirmed under this License." Neo4J USA's marketing under the Neo4J trademark is false. See Suhy Dec. Ex 22.

Neo4J Sweden may not license under the GPL/AGPL then have Neo4J USA proclaim the license cannot be used under threat of litigation. Neo4J Sweden's' grant is for the life of the copyright and irrevocable and may not be restricted- by anyone. AGPL §2.

### C.  Plaintiffs Are Not Entitled To Summary Judgment Purethink's On Breach Of Exclusively Contract Counterclaim

The contract is clear:
To whom it may concern,

PureThink LLC a Delaware Company, is the only Neo4j Government Edition reseller that is certified to resell and support to the US Federal Government, Department of Defense (DOD), and Intelligence Agencies.

This agreement can be provided to Government Agencies to support any Federal Acquisition Regulation (FAR) regulations.

Suhy Dec., Ex 20 (the "Exclusivity Agreement.")

### 1. The Parties Consented to a Separate Exclusivity Agreement

Neo4j USA consented to the Exclusivity Agreement. The terms include the words "This agreement." *Id.* Neo4j USA does not dispute that Lars Nordwall signed the Exclusivity Agreement on their behalf. *See* UDF 73, "signed by Lars Nordwall."

The terms of the Exclusivity Agreement make no mention of the SPA, and Mr. Suhy confirmed at deposition that the Exclusivity Agreement was separate from the SPA. Beene Dec. Ex 31, Deposition of John Mark Suhy, 43:17 – 45:3

Plaintiffs attempt to extricate themselves from this unambiguous agreement based on contradictory parol evidence. The internal Neo4j USA drafts and communications are not the Exclusivity Agreement and should be disregarded. Cal. Civ. Proc. Code § 1856

### 2. Neo4j USA Breached the Exclusivity Agreement.

While the Exclusivity Agreement contains no termination clause, Plaintiffs are not free to insert one so purely in their favor. Without an express term, "The court determines whether one can be implied from the nature and circumstances of the contract." *Zee Medical Distributor Assn. Inc. v. Zee Medical, Inc.,* 80 Cal.App.4th 1, 10 (Cal. Ct. App. 2000)

The nature of government contracting involves substantial up-front work, which would be recovered over a long-term relationship. This is contemplated when Mr. Suhy states "Neo Technology can **request** to revoke exclusivity" and "our contract requires us to be part of the decision to retire

it." Ratinoff Dec. Ex 15, pg. 4 [emphasis added]; Beene Dec., Ex 13 pg. 1.
Termination of the Exclusivity Agreement would include necessarily include
protections for PureThink LLC's investment on an exit. Suhy Dec. ¶10.

A fair analysis of the nature and circumstances of the Exclusivity
Agreement would not permit a termination clause that permitted Neo4j USA
to "terminate PureThink as the exclusive reseller thereof without cause and
without further compensating PureThink." DKT 183, 23:13-14

As Neo4j USA impermissibly terminated the Exclusivity Agreement,
its actions to take features developed by PureThink, incorporate it into
NEO4Jthe sell Neo4J software and services directly to the US government,
Department of Defense and intelligence Agencies, is a breach of the
Exclusivity Agreement.

### 3. Purethink Performed its Obligations Under the Exclusivity Agreement

Plaintiffs argue that PureThink did not perform its obligations, as
iGov, as successor in interest continued to use Gov't Edition. But iGov is not
a party to the Exclusivity Agreement, there is no evidence that the
agreement was assigned from PureThink to iGov. iGov is not a successor in
interest, it is a separate entity that did not use any assets of PureThink.
Beene Dec. Ex 31, Deposition of John Mark Suhy, 52:5-8. It is not disputed
that Purethink sought to and was successful in reselling to the Gov't Edition.

But even if the court finds PureThink did not perform all its
obligations, its performance is excused as Neo4j USA prevented PureThink's
performance by prohibiting it from engaging with government agencies. Dkt.

No. 177, Ex. D; *Ray Thomas, Inc., v. Cowan,* 99 Cal.App. 140 [ 277 P. 1086]."
*Taylor v. Sapritch,* 38 Cal.App.2d 478, 481 (Cal. Ct. App. 1940)

### 4. PureThink Has Been Damaged in Excess of $1.3M

As discussed above PureThink and IGOV are separate entities and no
assets were transferred, so the successor in interest theory does not work.
The work scope for PureThink and IGOV were substantially different. Beene
Dec. Ex 31, Deposition of John Mark Suhy, 53:19-54:4. Mr. Suhy worked full
time for PureThink See Adron Decl., Ex. 17, The value of that effort,
determining the government requirements using the software and creating
it along with the amount of damages for breach of the Exclusivity
Agreement, is a disputed issue of material fact, that no timecards were kept
is not dispositive of the damages. RUDF 85.

In addition to the loss of revenue related to the IRS, there are other
substantial government sales, as shown in Exhibit 29.

As there are disputed issues of material fact as to each element of the
breach of exclusive contract cause of action, summary judgment should not
be granted.

## IV. INJUNCTION

Neo4J USA seeks the courts injunction to support a trademark
obtained through violation of the PTO requirements and an invalid DMCA
claim. They seek injunction to support persistent violation of FSF's
trademarks and copyright in the GPL/AGPL. While Neo4J claim this case is
only against the defendants, they want to obtain an injunction to prevent
everyone from questioning how they converted a GPL/AGPL license to a
commercial license. The case has far reaching impact.

The ruling on this motion is existential to the future of the GPL/AGPL license. If Neo4J Sweden can change the license terms in contraction to the license grant, if they can add contradiction terms no licensee can remove, and license rights they do not own, everyone can use Neo4J's bait and switch method. Anyone can lure people into using, supporting, and developing software under the GPL/AGPL open source model and then be cut off when the company wants to make money off of other people's labor. The GPL/AGPL does not allow this practice and this practice should not be supported by the court.

Dated: June 1, 2023

    /s/ Adron W. Beene
Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorneys At Law
7960 Soquel Drive, Suite B #296
Aptos, CA 95003
Tel: (408) 392-9233
adron@adronlaw.com

Attorneys for Defendants
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

## ATTESTATION OF E-FILED SIGNATURE

Pursuant to Local Rule 5-1(i)(3), I hereby certify that I have obtained the concurrence in the

filing of this document from all signatories for whom a signature is indicated by a "conformed"

signature (/s/) within this electronically filed document and I have on file records to support this

concurrence for subsequent production to the Court if so ordered or for inspection upon request.

Dated:  June 1, 2023

> */s/ Adron G. Beene*
> Adron W. Beene
> Adron G. Beene
> Attorneys At Law
> 7960 Soquel Drive, Suite B #296
> Aptos, CA 95003
> Tel: (408) 392-9233
>
> Attorneys for Defendants and
> Counter-Claimants
> PURETHINK LLC, IGOV INC., and
> JOHN MARK SUHY

## DEFENDANTS RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Defendants' Violation of the DMCA [17 U.S.C. § 1202(b)(1)]** | | |
| 1. the existence of CMI on the infringed work; | <u>Fact 1:</u> Neo4j Sweden is the owner of all copyrights related to the Neo4j® graph database platform, including the source code, and has licensed those copyrights to Neo4j USA in connection with the making, use, creation of derivative works, sale, offer to sell, importation, performance, display, reproduction and distribution of the copyrighted material, and the sublicensing of such rights in the United States. Dkt. No. 98-2, ¶¶ 3-4; Dkt. No. 118 at 2:15-18 (citing same). | **DISPUTED** Neo4j does not own all the code to the Neo4j software.<br>Beene Decl., Ex. 27.<br><br>Hundreds of committers to Neo4j code do not appear to be associated with Neo4j Sweden, and Neo4j Sweden does not have assignments from committers or authors of Neo4j Software. Copies of agreements were requested in discovery but not provided<br>Suhy Decl. ¶¶13-14, Beene Dec., Ex 32. |
| | <u>Fact 2:</u> Prior to May 2018, Plaintiffs offer a free and open source version of the Neo4j® graph database platform, Neo4j® Community Edition ("Neo4j® CE"), under the GNU General Public License version 3 ("GPL") license. Dkt. No. 118 at 3:1-4 (citing Dkt. No. 98-2, ¶¶ 4-5). Neo4j® CE is limited in its feature set and does not come with technical or administrative support.  Dkt. No. 118 at 3:4-5 (citing Dkt. No. 98-2, ¶¶ 5-6).  Plaintiffs also offered a more advanced commercial version, which included additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j® EE").  Dkt. No. 118 at 3:5-7 (citing Dkt. No. 98-2, ¶ 8). | **DISPUTED**  Prior to May 2018 Plaintiffs also released Neo4j Enterprise Edition under the vanilla AGPL open source license.  Neo4j Enterprise under the AGPL and Neo4j Enterprise under the commercial license were the same physical software as they were compiled from the same source code.<br><br>See Suhy Decl., ¶2. |
| | <u>Fact 3:</u> Plaintiffs originally offered Neo4j® EE under both a paid-for commercial license and for free under the GNU Affero General Public License, version 3 ("APGL"). Dkt. No. 118 at 3:7-9 (citing Dkt. No. 98-2, ¶ 8).  A commercial license to Neo4j® EE entitled the purchaser to use it in a proprietary setting with industry standard terms, receive support or professional services from Neo4j USA, and the right to receive software updates, which included feature updates, bug fixes and assistance.  Dkt. No. 98-2, ¶¶ 7-9. | **UNDISPUTED** that Neo4j EE was available under both a commercial and free open source AGPL license and that a commercial license came with support.<br><br>**DISPUTED** that the commercial license was the only license which allowed Neo4j EE to be used in a proprietary setting or receive updates.  Neo4j Enterprise under the open source AGPL (< v3.4) as well as under AGPL + Commons clause  (v3.4) could be used in a proprietary setting for free, and since the code was the same for the commercial and open-source versions, they both received updates together.<br>See Suhy Decl.,  Ex. 2 |

(82 of 245), Page 82 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 82 of 245
Case 5:18-cv-07182-EJD   Document 188   Filed 06/01/23   Page 31 of 72

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 4:** On May 17, 2018, Neo4j Sweden released Neo4j® EE v3.4 and replaced the AGPL with a stricter license, which included the terms from the AGPL and additional commercial restrictions provided by the Commons Clause ("Neo4j Sweden Software License").  Dkt. No. 118 at 3:9-12 (citing Dkt. No. 98-2, ¶ 11 and Ex. 3). | **UNDISPUTED** that Neo4j Sweden released Neo4j® EE v3.4 on May 17, 2018 which was the AGPL with the commons clause which added prohibited the non-paying public from engaging in commercial resale and support services. |
| | | **DISPUTED** that this was ever called "Neo4j Sweden Software License" outside of court.  The License terms include the AGPL preamble and the NOTICE states: "The Software is subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3 (http://www.fsf.org/licensing/licenses/agpl-3.0.html), included in the LICENSE.txt file, with the Commons Clause."  See Suhy Decl., Ex. 3 |
| | | **DISPUTED t**hat the AGPL was replaced with a stricter license.  The AGPL was not replaced.  The AGPL License file had the full preamble, stated it was copyrighted to the free software foundation.  The commons clause was appended to the AGPL terms.  Note, the commons clause did not affect end-users wishing to use the software, it was targeted at anyone trying to sell or offer a competing support offering as Neo4j USA offered. See Suhy Decl., Exs. 2-3 |
| | **Fact 5:** The Neo4j Sweden Software License, while still allowing code to be publicly viewable and used within a certain licensed scope, prohibited the non-paying public from engaging in commercial resale and support services.  Dkt. No. 118 at 3:12-13; Dkt. No. 98-2, ¶¶ 11-12 and Ex. 3. | **UNDISPUTED** that the commons clause states that it prohibited the non-paying public from engaging in commercial resale and support services. |
| | | **DISPUTED** that there was ever a reference outside of court of a license called  "The Neo4j Sweden Software License".  The License was always referred to as AGPL, even when the commons clause was appended to the AGPL terms. |
| | | **DISPUTED** that "The Neo4j Sweden Software License" had a certain licensed scope for use.  The commons clause stated that it prevented others from selling or offering certain services, but did it did not affect the end-users who were using the software under the license. |

(83 of 245), Page 83 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 83 of 245
Case 5:18-cv-07182-EJD   Document 188   Filed 06/01/23   Page 32 of 72

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | See Suhy Dec., Exs. 2-3 |
| | **Fact 6:** The NOTICE provision in the Neo4j Sweden Software License states that Neo4j® EE is developed and owned by Neo4j Sweden… and is subject to the terms of the [AGPL], with the Commons Clause as follows…." Dkt. No. 98-2, ¶ 11 and Ex. 3.  It also provides additional information, such as the title of the work, terms and conditions for use of the work, and other identifying information about Neo4j Sweden and how to obtain a commercial license for the use of Neo4j® EE. *Id.* | **UNDISPUTED**  The NOTICE provision was found in a separate file called NOTICE.txt which was always present next to the AGPL License file called LICENSE.txt<br><br>Every directory in the enterprise source code that has a LICENSE.txt file also has the corresponding NOTICE.txt.<br><br>See Suhy Decl., ¶ 3. and Exs. 1,3 |
| | **Fact 7:** In November 2018, Plaintiffs officially released of Neo4j® EE v3.5 solely under a commercial license. Dkt. No. 98-2, ¶ 13 and Ex. 4; Dkt. No. 118 at 3:13-15 (citing same). This meant that Plaintiffs were no longer publishing the source code for Neo4j® EE and offering it on an open source basis. *Id.*  This was done to simplify the licensing model, as well as prevent bad actors from profiting by providing commercial support services in closed, proprietary projects.  Dkt. No. 98-2, ¶ 13. | **UNDISPUTED** that Plaintiffs officially released of Neo4j® EE v3.5 solely under a commercial license.<br><br>**DISPUTED** that plaintiffs were no longer publishing the source code for Neo4j EE or offering it on an open source basis.  All Neo4j EE versions prior to v3.5 were public and received updates from Neo4j Sweden.<br><br>**DISPUTED** that this was done to simply the licensing model, as well as prevent bad actors from profiting by providing commercial services in closed, proprietary projects.<br><br>See Suhy Decl., ¶ 4. |
| | **Fact 8:** Prior to the official release of Neo4j® EE v3.5, Plaintiffs published several beta versions via their GitHub repository subject to the Neo4j Sweden Software License. Dkt. No. 118 at 6:18-21; Dkt. No. 98-2, ¶ 14. | **UNDISPUTED** that plaintiffs published several beta versions of EE v3.5 via their GitHub repository.<br><br>**DISPUTED** that the license was ever called "Neo4j Sweden Software License." outside of court proceedings.   The beta versions were licensed under the AGPL and had the commons clause restriction appended to the AGPL license file. |
| | **Fact 9:** Neo4j® EE v3.5.0-RC1 was the last pre-release version available to Defendants via GitHub. Thereafter, only the source code for Neo4j® CE was made publicly available under the GPL via Github. *Id.* | **UNDISPUTED** Note that all prior versions of Neo4j EE remain publicly available on the Neo4j GitHub repository.<br><br>See Suhy Decl., ¶ 2. |
| 2. Defendants' intentional removal and/or | **Fact 10:** Following the release of Neo4j® EE v3.4, Suhy worked with Brad and Ben Nussbaum to form Graph Foundation, Inc. ("GFI") in June | **DISPUTED** that Mr. Suhy worked to form the Graph Foundation, Inc. ("GFI").  Mr. Suhy was part of the volunteer committer team, and gave guidance as an |

(84 of 245), Page 84 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 84 of 245
Case 5:18-cv-07182-EJD   Document 188   Filed 06/01/23   Page 33 of 72

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| alteration of CMI without the authorization of Neo4j Sweden | 2018. Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Exs. 27-29); Dkt. No. 98-1, ¶¶ 24-26 and Exs. 22-24. | open source advocate, but was not involved in forming the GFI entity. Mr. Suhy declined any official role with the foundation. There are no legal documents and Plaintiff's have not shown any official documents, or business records that show Mr. Suhy being involved in the formation of the GFI or serving as any official officer or director.<br><br>Plaintiff has not produced any business records, certificates, or any evidence that Mr. Suhy had a formal role in the GFI other than being on the volunteer committer team.<br><br>Beene Dec. Ex 30, Brad Nussbaum Deposition, 40:7-16, 42:9-14, 44:6-8, 78:19-24 |
| | **Fact 11:** After Suhy helped form GFI, Defendants began offering and promoting a graph database software called "ONgDB." Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Ex. 27-29); Dkt. No. 98-1, ¶ 26 and Ex. 24. | **DISPUTED** that Suhy helped form GFI. See Fact 10.<br><br>**UNDISPUTED** that GFI began offering and promoting a graph database software called "ONgDB".<br><br>**UNDISPUTED** that Mr. Suhy promoted ONgDB as part of his open-source advocacy activities. Mr. Suhy also promotes other open source innovative technologies. |
| | **Fact 12:** To create ONgDB, Suhy downloaded the source code for Neo4j® EE v3.4 from Neo4j's GitHub repository and impermissibly replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL, which removed (a) the valid legal notices identifying Neo4j Sweden as the copyright holder and licensor in the NOTICE provision; and (b) the commercial restrictions imposed by the Commons Clause. Dkt. No. 118 at 6:7-11 (citing Dkt. No. 98-1, Ex. 3 at 28:25-29:11; Exs. 24-26, 28; Ex. 31 at 87:24-90:9); Dkt. No. 98-1, Ex. 3 at 171:23-172:23; Dkt. No. 98-2, ¶¶ 11-12, 27. | **DISPUTED.** Mr. Suhy did not create ONgDB, he was on the volunteer team of committers and gave the guidance on how to set it up, but GFI came up with the name and created the GitHub repositories.<br><br>**DISPUTED.** Mr. Suhy did not make any modifications to the source code in v3.4 code related to the AGPL in any way.<br>See Suhy Decl., Exs. 1-4, 9 |
| | **Fact 13:** ONgGB v3.5 contained at least 182 source code files that had only been previously released by Neo4j Sweden under the Neo4j Sweden Software License in the last publicly available beta version of Neo4j® EE 3.5. Dkt. No. 118 at 6:18-21; Dkt. No. 98-1, Ex. 38 at 6:22-7:1, 8:4-16:24; Dkt. No. 98-2, ¶¶ 13-14, 29. | **UNDISPUTED** that there were at least 182 source code files released under AGPL + Commons clause.<br><br>**DISPUTED** that the AGPL + Commons was ever called "Neo4j Sweden Software License" outside of court proceedings. The files were released under AGPL + Commons clause. |

(85 of 245), Page 85 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 85 of 245
Case 5:18-cv-07182-EJD Document 188 Filed 06/01/23 Page 34 of 72

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | See Suhy Decl., Exs. 2-3<br><br>See Fact 12. |
| | **Fact 14:** Suhy again replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL in ONgDB v3.5, which (a) stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor; and (b) removed the commercial restrictions imposed by the Commons Clause in 28 LICENSE.txt files. Dkt. No. 118 at 6:21-26 (citing Dkt No. 98-1, Ex. 31 at 159:3-10 and Exs. 39-40; Dkt. No. 98-2, ¶ 30; Dkt. No. 91 at 19:2-25); Dkt. No. 98-1, ¶ 41 and Ex. 39. | **DISPUTED.**<br>Mr. Suhy had not previously replaced anything relating to the AGPL and commons for v3.4 of Neo4j Enterprise.  See Fact 12 above.<br><br>The NOTICE provision in the NOTICE.txt files which corresponded to each LICENSE.txt files, along with the 1000s of source code files which also had Neo4j Sweden CMI and the commons clause were untouched by Mr. Suhy and still clearly shows that the commons clause was present.<br><br>The only files Mr. Suhy touched were the AGPL LICENSE.txt files which clearly stated that the copyright to the file / license was to the free software foundation.<br><br>See Suhy Decl.,  Ex. 2<br><br>"Copyright (C) 2007 Free Software Foundation, Inc. <http://fsf.org/> Everyone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed."<br><br>The NOTICE.txt files and all source code files still had the legal notices identifying Neo4j Sweden as the copyright holder and licensor, and also stated the license was AGPL + Commons.<br><br>See Suhy Decl., Ex. 3<br><br>"The Software is subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3 (http://www.fsf.org/licensing/licenses/agpl-3.0.html), included in the LICENSE.txt file, with the Commons Clause."<br><br>See Suhy Decl.,  Exs. 1-10 |

(86 of 245), Page 86 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 86 of 245
Case 5:18-cv-07182-EJD   Document 188   Filed 06/01/23   Page 35 of 72

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
|  | **Fact 15:** Suhy knew that Neo4j Sweden owned the copyright for Neo4j® EE, that Neo4j Sweden controlled the licensing thereof, and he could not replace the Neo4j Sweden Software License with the APGL without Neo4j Sweden's authorization. Dkt. No. 98-1, ¶ 36 and Ex. 34 ("As the copyright holder, is Neo4j allowed to add the specific additional terms mentioned above to the License.txt file …?"); *id.,* ¶ 58 and Ex. 56 (yellow highlights); *id.,* Ex. 3 at 183:12-25, 187:12-188:15, 189:1-191:3. | UNDISPUTED that Mr. Suhy knew that Neo4j Sweden owned the copyright for Neo4j EE.

DISPUTED that Mr. Suhy replaced anything called the Neo4j Sweden Software License.  He only made the AGPL License file verbatim as the copyright holder, the free software foundation instructed.  He did not replace the NOTICE.txt (notice provision) or any source code CMI which clearly stated that the software was copyrighted to Neo4j Sweden and had additional restrictions in the form of the common clause.

Mr. Suhy's commit message which is used to explain why a commit / change was made states: "Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license." See Suhy Decl., Ex. 9

See Fact 14.

See Suhy Decl.,  Exs. 1-10

Neo4J Sweden does not own 100% of the code for Neo4J and the AGPL control how the software is licensed. Neo4J Sweden's misused the AGPL and Suhy corrected that. See response to Fact 1 and Facts 94 and 100. |
|  | **Fact 16:** Neo4j Sweden never gave Suhy permission to remove Commons Clause, rename it "ONgDB" and offer it for free under the AGPL.  Dkt. No. 98-1, ¶¶ 11-14, 27, 29-30. | **UNDISPUTED** that Neo4j Sweden never gave Suhy permission to remove Commons Clause or rename "it" ONgDB.

**DISPUTED** that Mr. Suhy renamed anything ONgDB.  Mr. Suhy did not have any part in coming up with the name ONgDB.

**DISPUTED** that Mr. Suhy offered ONgDB – this is a project that is sponsored and offered by GFI.

The AGPL authorizes licensee to remove any additional terms. See Suhy Dec., Ex. 6. |

(87 of 245), Page 87 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 87 of 245
Case 5:18-cv-07182-EJD   Document 188   Filed 06/01/23   Page 36 of 72

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 17:** Suhy has been the sole officer and director of PureThink since he formed the corporation.  Ratinoff Decl., Ex. 2 at 176:4-11; see also Dkt. No. 98-1, ¶ 16 and Ex. 14 ("[t]he principle behind PureThink … has created a new corporate entity called iGov Inc."). | **DISPUTED.**  Mr. Suhy has had other partners who served as officers and directors since PureThink was formed in 2002.<br><br>See Suhy Decl., ¶ 8. |
| | **Fact 18:** Suhy has been the sole officer and director of iGov Inc. since he formed the corporation.  Dkt. No. 98-1, ¶ 12 and Ex. 10; *id.,* Ex. 3 at 21:20-23:25. | **UNDISPUTED** |
| 3. Defendants Distributed Neo4j Sweden's Works with its CMI Removed | **Fact 19:** Suhy made Neo4j Sweden's source code with its CMI removed publicly available via GFI's website and Github repository for ONgDB. Dkt. No. 98-1, Ex. 24 ("IRS is adopting the open source Neo4j Enterprise distributions we are transfered [sic] to [GFI]"); *id.*, ¶¶ 27 and Ex. 25 ("All the Neo4j enterprise distributions we package from now on will come from [GFI] and have the standard vanilla AGPLv3 open source license."); *id.*, ¶¶ 28 and Ex. 26 ("I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. [] Our open-source fork we manage can be found at https://graphfoundation.org"); *id.*, Ex. 3 at 172:4-23, 200:9-25, 211:7-24; *id.*, ¶¶ 41 and Ex. 39 (GFI Github commit); Dkt. No. 98-2, ¶¶ 27, 29-30.  This resulted in users downloading infringing ONgDB over 14,000 times by December 2020.  Dkt. No. 118 at 8:13-15. | **DISPUTED** – Mr. Suhy does not control or run the GFI website or GFI Github repositories.  He is one of many volunteer open source committers on the team.<br><br>Beene Dec. Ex 30, Brady Nussbaum Deposition, 40:7-16, 42:9-14, 44:6-8, 78:19-24<br><br>The CMI is not (its) Neo4J Sweden's CMI. The copyright to the AGPL is owned by FSF. Neo4J Sweden's violation of FSF's copyright means the CMI was false in violation of the DMCA. Suhy corrected that violation with the removal of the commons clause. See Fact 98. |
| | **Fact 20:** Suhy provided hyperlinks to potential users of Neo4j® EE to download ONgDB from GFI's website and GitHub repository from his jmsuhy@purethink.com email account. Dkt. No. 98-1, Ex. 26 ("I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. [] Our open-source fork we manage can be found at https://graphfoundation.org"); Ex. 40 ("I just wanted to let you know that for ONgDB 3.5 - we merged the build framework and enterprise code back into the code repository like it used to be before Neo started stripping it out. [] See: https://github.com/GraphFoundation/ongdb"); Ex. 41 (landing page for https://github.com/graphfoundation/ongdb); Ex. 45 (emailing hyperlink to https://graphfoundation.org/ongdb/); Dkt. No. 98-1, ¶¶ 43, 60 and Exs. 41, 58 (landing page for https://github.com/graphfoundation/ongdb). | UNDISPUTED that Mr. Suhy provided hyperlinks references for users of the website to view the source code and download distributions.   These links sent the users who clicked on them to the GFI website, which Mr. Suhy has no official role, has no control over, and whom is just one of the many volunteer committers who volunteers time to make the software better for the open source community.<br><br>Note: Dkt. No. 98-1, Ex. 26 shows date of 08/28/2018<br><br>The code still had commons as of Nov 2019.<br><br>See Suhy Decl.,   Exs. 1-4 |
| | **Fact 21:** Suhy also provided hyperlinks to potential users of Neo4j® EE to download ONgDB from GFI's website and GitHub repository from his jmsuhy@igovsol.com email account.  Dkt. No. 98-1, ¶ 43 and Ex. 41 (landing page for https://github.com/graphfoundation/ongdb); *id.*, ¶ 59 | UNDISPUTED – see Fact 20 above. |

(88 of 245), Page 88 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 88 of 245
Case 5:18-cv-07182-EJD Document 188 Filed 06/01/23 Page 37 of 72

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | and Ex. 57 (GFI webpage https://github.com/graphfoundation/ongdb), Exs. 44, 46, 54, 76-77 (emails with hyperlinks); Ratinoff Decl., Ex. 70 (email with hyperlink to https://graphfoundation.org/ongdb/). He also tweeted and retweeted links to GFI's ONgDB webpage. Dkt. No. 98-1, Exs. 98-100, 102-104 (tweets); Exs. 105-111 (retweets). | |
| | <u>Fact 22:</u> iGov's website provided links to potential users of Neo4j® EE to download ONgDB directly from iGov and from GFI's website. Dkt. No. 98-1, ¶¶ 65-72 and Exs. 63-70; Dkt. No. 98-2, ¶ 27. | UNDISPUTED – it should be noted that all the downloads from GFI and from the mirror site I setup on iGov's website had the commons clause in the AGPL license files. |
| | <u>Fact 23:</u> iGov used a "Download Neo4j Enterprise" hyperlink on its "downloads" page to redirect consumers to download links for ONgDB until July 27, 2020. Dkt. No. 118 at 27:12-28:1; Dkt. No. 98-1, Exs. 66-68 (highlighted in red); *id.,* Ex. 13 at RFA Nos. 10, 14. | UNDISPUTED that the hyperlink was on the iGov downloads page. It was a mistake and should have said "Download ONgDB Enterprise". The link was fixed as soon as it was brought to Mr. Suhy's attention.<br><br>See Fact 22 above. |
| | <u>Fact 24:</u> On May 22, 2018, Suhy emailed the IRS telling them the addition of the Common Clause to the license for Neo4j® EE v3.4 was improper and sought to convince the IRS to move to an unrestricted version of Neo4j® EE 3.4. Ratinoff Decl., ¶ 31 and Ex. 29. The IRS did not obtain an independent legal opinion on Suhy's representations regarding the alleged impropriety of adding commercial restrictions to the AGPL. *Id.,* Ex. 4 at 96:6-98:21. | DISPUTED the reference in Ratinoff Decl., ¶ 31 and Ex. 29.<br>Does not mention anything related to trying to get IRS to move to an "unrestricted" version. Furthermore, Plaintiffs have never shown Mr. Suhy ever used the terms "unrestricted" or "restrictions" in describing the AGPL license without the commons clause.<br><br>Mr. Suhy has only used the word "restriction" in only 2 scenarios. 1. when explaining that the commercial license adds restrictions, and 2. around physical restrictions of software itself relating to number of cores, instances, or other physical attributes of Neo4j Enterprise.<br><br>See: Dkt. No. 98-1, Exs. 68,75<br>"no limitations on causal cluster instances, cores, or production usage." |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Dkt. No. 98-1, ¶¶ 45 and Ex. 43<br>"ONgDB takes Neo4j core (which is open source) and adds enterprise features into it, all 100% free and open, with no limits on cores or cluster instances that 'commercial subscriptions' impose."<br><br>Further, the commons clause does not prevent IRS from using Neo4j v3.4 in production.  Mr. Suhy stated this in the email.<br><br>"Again this does not effect IRS in any way, even if the term was enforceable." See Ratinoff Decl., ¶ 31 and Ex. 29.<br><br>The email referenced in Ex. 29 above, was sent May 22nd, 2018.<br>At this date, even the AGPL license files had the references to the commons clause.<br><br>See Suhy Decl., Exs. 1-4,9 |
| | Fact 25: On May 24, 2018, the IRS awarded another entity that Suhy had an ownership interest in at the time, eGovernment Solutions ("eGov Sol"), a contract for the development and support of the CDW Knowledge Graph Environment ("CKGE"), which used an open source Neo4j® EE software as a main component.  Ratinoff Decl., ¶¶ 30, 32 and Exs. 28, 30; *id.,* Ex. 4 at 71:2-74:21, 75:14-76:14, 77:7-78:16, 85:3-18, 126:5-127:15; *id.,* Ex. 3 at 47:14-50:8, 50:14-54:3. | UNDISPUTED that IRS awarded eGovernment Solutions a contract to develop and support the CDW Knowledge Graph ("CKGE") environment which used an open source Neo4j software.<br><br>DISPUTED that Neo4j was a main component in the platform.  It was in fact just one small component of one service that made up the complex platform.<br><br>The SOW for the CKGE project does not have anything referencing Neo4j EE as a component, let alone the main component of CKGE. |

(90 of 245), Page 90 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 90 of 245
Case 5:18-cv-07182-EJD   Document 188   Filed 06/01/23   Page 39 of 72

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | "The CKGE framework includes a graph database: elastic search capabilities; java-script based, user-interface; and microservices components."<br><br>The only time the word Neo4j was mentioned was under the "skills section" of the SOW. (underlined below) "The vendor will need to work with the following components: React, Angularjs, Neo4j, JAVA, micro-services architecture, and Hadoop/Spark, Elastic Search, Kafta, Agile methodology, GitLab, and Plottable." See Suhy Decl., Ex. 11<br><br>See Suhy Decl., ¶ 5. |
| | Fact 26: Before the IRS awarded the CKGE contract to eGov Sol, Suhy made clear that he would be performing the work through iGov.  *See* Ratinoff Decl., Ex. 4 at 61:11-64:23, 72:2-74:21, 75:14-76:14, 77:7-78:11, 85:3-18; *id*, Ex. 3 at 30:8-31:21, 32:9-37:14, 50:14-54:3; *id.*, Ex. 2 at 188:10-193:25; *id.*, ¶ 30 and Ex. 28. | |
| | Fact 27: eGov Sol viewed the CKGE contract as belonging to Suhy to which he had sole responsibility for and control over.  Ratinoff Decl., Ex. 3 at 30:8-32:23, 34:1-37:14, 50:14-51:20; *id.*, ¶ 37 and Ex. 35 at §§ 5, 5.1, 5.2 and 5.3. | DISPUTED:  The stock purchase agreement between Mr. Suhy and eGovernment Solutions does not state anywhere that Mr. Suhy has the sole responsibility or sole control.  The stock purchase agreement gave Mr. Suhy the authority to drive the direction, but not absolute control.<br><br>"5.1 eGovernment Solutions Inc hereby hires John Mark Suhy as an Independent Contractor for all option years that are exercised on the CKGE contract. His compensation will be $200,000 per year paid when eGovernment Solutions gets paid…"<br><br>"5.2 eGovernment Solutions Inc will give John Mark Suhy the authority to drive the direction of the project |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | (Section 5) and is given the authority to enter into agreements on behalf of eGovernment Solutions Inc relating to this project as long as the agreements are in line with government contracting laws and hubzone regulations."<br><br>See Ratinoff Decl., ¶ 37 and Ex. 35 |
| | **Fact 28:** The IRS paid a total of $1,316,000 to eGov Sol under the CKGE contract, which in turn eGov paid to Suhy and iGov. Ratinoff Decl., Ex. 3 at 54:10-59:5, 59:18-62:3, 63:13-65:25, 67:7-69:11, 69:16-70:19, 71:17-79:12; *id.*, ¶¶ 38-44 and Exs. 36-42. | UNDISPUTED that IRS paid a total of $1,316,000 to eGovernment Solutions under the CKGE contract.<br><br>DISPUTED that eGovernment Solutions turned around and paid that amount to Mr. Suhy and/or iGov Inc.<br><br>eGovernment Solutions paid a $200,000 to support the CKGE contract, act as the official facility clearance officer for eGovernment Solutions because Mr. Suhy had an active clearance, and help with business development.  See Fact 27 and Ratinoff Decl., ¶ 37 and Ex. 35<br><br>Over $251,450 of the revenue from IRS did not go to Mr. Suhy in any manner.<br><br>The total payments made to iGov Inc were $1,064,550.00<br><br>See Suhy Decl., ¶¶ 6,7 |
| | **Fact 29:** Suhy was entitled to all the payments eGov Sol received from the IRS on the CKGE contract.  Ratinoff Decl., Ex. 3 at 30:13-32:25, 36:15-37:14, 39:18-40:18, 42:14-19, 50:14-54:3, 71:17-79:12, 81:6-82:17; *id.,* ¶ 44 and Ex. 42. | **DISPUTED** that Mr. Suhy was entitled to all payments eGov Sol received from the IRS on the CKGE contract.<br>See Facts 27-28,<br>See Suhy Decl., ¶¶ 6,7<br><br>**"5.1 eGovernment Solutions Inc hereby hires John Mark Suhy as an Independent Contractor for all option years that are exercised on the CKGE contract. His compensation will be $200,000 per year paid when** |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | **eGovernment Solutions gets paid. eGovernment Solutions will not be liable to pay John Mark Suhy for any work done on this contract in the event they donot get paid from the client. If the payment for the project is received all at once, then John Mark Suhy will also be paid his total salary for the option year up front, otherwise salary will be paid as eGovernment Solutions Inc get paid by the Treasury."**<br><br>See Ratinoff Decl., ¶ 37 and Ex. 35 |
| | Fact 30: eGov Sol maintained a bank account for all the payments received from the IRS, which Suhy had access to and was authorized to disburse the payments made by the IRS as he saw fit.  Ratinoff Decl., Ex. 3 at 42:14-19, 62:1-63:12, 66:1-15. | **UNDISPUTED** that eGovernment Solutions had a bank account that received payments from clients including IRS. Mr. Suhy had access to the account because it had not been removed when he sold his shares.    Mr. Suhy just happened to still have checks and helped out of convenience since there was a bank branch near his home.<br><br>**DISPUTED** Mr. Suhy was not authorized to disburse the payments made by the IRS as he saw fit.  He had to request permission anytime he wanted to write a check for his salary.<br><br>See Facts 27-29<br>See Ratinoff Decl., ¶ 37 and Ex. 35 |
| | Fact 31: In July 2018, a sales representative from Neo4j USA met with the IRS and then provided a one-year $156,000 quote for a Neo4j® EE v3.4 subscription on then-current requirements of CKGE.  Ratinoff Decl., ¶ 34 and Ex. 32; *id*., Ex. 4 at 113:5-115:20, 116:5-117:21. | **DISPUTED** that CKGE had any requirement for Neo4j EE at all.<br><br>Otherwise **UNDISPUTED** that a sales representative from Neo4j USA met with IRS and provided the quote mentioned. |
| | Fact 32: As of August 2018, the IRS understood that Neo4j® CE had a performance limitations, while Neo4j® EE had enterprise-only features, came with professional services and subscriptions.  The IRS ultimately decided to not allocate $156,000 for a license for Neo4j® EE because ONgDB was a free unrestricted alternative.  Ratinoff Decl., Ex. 4 at 103:2-104:12, 121:18-124:4, 126:5-129:25, 130:9-132:1. | **DISPUTED.**  Plaintiff's do not provide any evidence  citing a  "reason"" to why IRS did not allocate money for a Neo4j EE license.    See Fact 24.<br><br>**UNDISPUTED** that Neo4j EE had enterprise only features compared to Neo4j CE, and that the Neo4j EE commercial license came with support.<br><br>Zagalsky of Neo4J USA misrepresented a Fare Trade |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Licensing document as applying to the AGPL code on 4-4-2017 before the IRS to decline to do business with Neo4J USA. There is no obligation under the AGPL to make a project open when using AGPL licensed software. AGPL §2, Suhy Dec. Ex 22.<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | **Fact 33:** In August 2018, Suhy convinced the IRS integrate ONgDB v3.4 rather than Neo4j® EE v3.4 into the CKGE platform based, in part, on misrepresentations about GFI being the copyright holder and licensor of ONgDB.  Ratinoff Decl., Ex. 4 at 126:5-129:25, 132:2-23, 133:15-138:2, 138:22-140:20, 141:8-24, 142:15-143:20; *id.*, ¶¶ 35-36 and Exs. 33-34. | **DISPUTED**<br><br>Mr. Suhy never claimed GFI was the copyright holder.  The only place in Ex. 4 that even mentions the word "copyright" shows that IRS knew the copyright holder was Neo4j.<br><br>**"Q. So the Neo4j source code, Neo4j would own the copyright to that.  Correct?**<br>**A.  Yes.  I would assume it would be available based on whatever Neo4j allowed it to be used from.**"<br>Ratinoff Decl., Ex. 4 at 130:1-4<br><br>IRS was not even sure about who the license came from, and did not associate the license to be anything related to copyright.<br><br>**"A.  My understanding it was not the Enterprise. It was the core source code from GitLab, Neo4j's GitLab, whatever that licensing was of that core source code brought over, and then the additional elements, whatever elements ONgDB, The Graph Foundation added onto that.  That's how I understood from my point of view who was -- who was distributing and licensing it and the follow-through from whatever the licensing was of the Neo4j core that was off of GitLab.  That's how I understood it.**" Ratinoff Decl., Ex. 4 at 135:14-23 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | The source code for v3.4 clearly stated that Neo4j Sweden was the copyright holder.<br><br>"Neo4j Copyright © 2002-2018 Neo4j Sweden AB (referred to in this notice as "Neo4j") [http://neo4j.com]<br>This product includes software ("Software") developed and owned by Neo4j."   Suhy Decl., and Ex. 3<br><br>See also Suhy Decl.,  Exs. 1-4<br><br>There is no evidence that shows that IRS was convinced by Mr. Suhy.<br><br>See Fact 24<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | Fact 34: While working under the CKGE contract, Suhy and iGov were responsible for supporting, maintaining and updating ONgDB on an internal repository at the IRS.  Dkt. No. 98-1, Ex. 38 at 23:14-24:4; Ratinoff Decl., Ex. 3 at 366:13-368:9; *id.,* Ex. 4 at 75:14-77:24, 126:5-128:24, 142:15-143:20, 179:4-23, 204:4-206:9, 207:10-209:11; *id.,* ¶ 36 and Ex. 34; *id.,* ¶ 47 and Ex. 45 (yellow highlights). | **DISPUTED** Suhy and iGov were NOT responsible for supporting, maintaining, and updating ONgDB on the internal repository.<br><br>The Statement of Work for the CKGE project had no requirement to support, maintain or update ONgDB.  See Suhy Decl., Ex. 11<br><br>Mr. Suhy helped IRS with technologies on his own time and not as part of any paid consulting.  Mr. Suhy also assisted with other technologies that he had expertise around when time permitted.<br><br>Mr. Suhy simply helped IRS get the source code into the IRS internal repository so that IRS could perform security |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | scanning outside any contractual obligation between IRS and eGovernment Solutions Inc.  This happened around the time that a serious Log4j Vulnerability was found to exist in Neo4j.

There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | **Fact 35:** Suhy and iGov helped the IRS upgrade the CKGE platform to ONgDB v3.5 and continued to integrate subsequent subversions through at least April 2022.  Dkt. No. 98-1, Ex. 3 at 224:13-23; Ratinoff Decl., Ex. 4 at 207:7-209:15, 210:5-211:20, 213:1-216:8; *id.,* ¶¶ 45-49 and Exs. 43-47 (yellow highlights). | **DISPUTED**  The CKGE platform does not require upgrades to use specific graph databases.

The CKGE platform is suite of micro-services, many of which have nothing to do with graphs. The only service that end-users used which even touched the graph was called the graph explorer.  It provides a way to explore graph structure through visualization.   It is not dependent on any specific underlying graph database and does not require any sort of upgrade to switch between backend graph and non-graph databases.

See also Fact 34.

There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | **Fact 36:** After April 2022, the IRS started calling ONgDB just "GDB," which still used Neo4j® EE 3.5 source code improperly licensed under the AGPL, which Suhy compiled on the IRS's internal GitLab repository. Ratinoff Decl., Ex. 4 at 175:6-176:21, 193:9-198:15. | **DISPUTED.**  There is not any ONgDB, GDB, Neo4j, or other source code based on Neo4j in use at IRS which is "improperly licensed".  All the source code within IRS clearly states that the license is AGPL + Commons.   Plaintiff has provided no evidence to the contrary.

See Suhy Decl., ¶ 9 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | "**Q. I didn't get -- I didn't quite follow that. I apologize. To clarify, so you understood -- so you understood that the license that ONgDB was under was the AGPL version 3 but with the Commons Clause removed by Mr. Suhy?**<br><br> **A. Yeah. I don't -- I don't remember if he removed it. I don't remember it being discussed. I just remember the description of taking the core source code from GitLab, compiling it, and then, as we discussed, adding the additional capabilities that would be the ONgDB release.**<br><br>**So I can't remember the Commons Clause being part of the discussion. I can't remember if he said that he took it out or what, but I can't say that. Yeah. I just can't say that. In my mind, I'm tracing it from the GitLab source code, whatever that licensing was, and then released by ONgDB under their licensing.**" Ratinoff Decl., Ex. 4 at 133:14-134:6<br><br>**UNDISPUTED** that IRS started calling ONgDB just "GDB,"<br><br>**DISPUTED** that the graph used Neo4j EE 3.5 source code, as Neo4j did not release the enterprise source code for v3.5 after the pre-releases. |
| | <u>Fact 37</u>: Between August 2018 and April 2022, they facilitated the use of four instances of ONgDB on at least three servers within the CKGE platform (a/k/a "main graph") environment. Ratinoff Decl., Ex. 4 at 152:21-156:16, 157:23-158:11, 161:23-163:4, 166:19-167:4, 168:24-172:10, 174:19-175:5, 179:13-23. | **DISPUTED** that Mr. Suhy or iGov Inc facilitated the use of four instances of ONgDB. Mr. Suhy gave guidance on the servers needed for the entire CKGE stack, which the graph database was not the main piece of. Furthermore, the references Plaintiff give show that the person being deposed |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | was not sure of the number of ONgDB instances, and was guessing.<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | Fact 38: iGov operated www.graphstack.io to further promote ONgDB over Neo4j® EE and allowed consumers to directly download ONgDB without any restrictions.  *See* Dkt. No. 98-1, ¶ 77 and Ex. 75 ("iGov Inc is the company behind GraphStack" and that "iGov Inc offers production support packages for Neo4j / ONgDB Enterprise open source distributions for US government agencies"); *id.*, Ex. 13 (RFA No. 40); *see also* Ratinoff Decl., ¶¶ 50-54 and Exs. 48-52. | **DISPUTED**  www.graphstack.io was not operated just to promote ONgDB over Neo4j EE.  The website promoted a stack of tools that abstracted out knowledge graphs from the underlying implementation.<br><br>The term "restrictions" mentioned are in the context of physical restrictions and have nothing to do with license restrictions.<br><br>*See* Dkt. No. 98-1, ¶ 77 and Ex. 75<br>"Open Native Graph DB (ONgDB) is a non-restrictive fork of Neo4j managed by the Non profit Graph Foundation. ONgDB is 100% free and open, and **there are no limitations on instances in clusters, cores, etc!**"<br><br>"What is GraphStack?<br> **GraphStack is a development suite that allows teams to build large scale graph apps.**"<br><br>See also Fact 24. |
| 3. Defendants had reason to know that their actions would induce, enable, facilitate, or conceal copyright infringement | Fact 39: Defendants knew or had reasonable grounds to know that they could not replace the Neo4j Sweden Software License with the AGPL without Neo4j Sweden's authorization.  *See* Ratinoff Decl., Ex. 1 at 178:17-179:8, 186:5-184:10.  This is further evidenced by their failure to seek competent legal advice, and reliance on Suhy's unqualified analysis of the provisions of the AGPL and "internet research" that he admitted was inconclusive.  *Id.* at 196:22-201:16. | **DISPUTED** defendants only created a commit to make the AGPL LICENSE.txt files verbatim as instructed in the AGPL preamble  by the copyright holder,  the free software foundation.  Suhy Dec., Ex. 6<br><br>The commit message shows the intent.<br><br>Furthermore, the defendants did not replace anything called |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | "Neo4j Sweden Software License". The license has always been called the AGPL, even when the commons clause was appended to it.<br><br>Mr. Suhy was speaking of the files owned by the FSF only.<br><br>Mr. Nussbaum from the Graph Foundation did get independent legal guidance which was communicated to Mr. Suhy as well.<br><br>**"We have been advised by The Free Software Foundation in a non-legal capacity and have verified with our legal counsel independently that the Commons Clause is a "further restriction" to AGPLv3 and may be removed according to this clause of AGPLv3"**. See also Suhy Decl., Ex. 12 |
| | Fact 40: Suhy participated in a discussion thread on Plaintiffs' Github repository in May 2018 where a person claiming to represent Neo4j told him that his interpretation of Section 7 was wrong for reasons similar to those found by this Court. Dkt. No. 98-1, ¶ 119 and Ex. 117; Ratinoff Decl., Ex. 1 at 201:18-205:16. Suhy "didn't have time to go and dive into it" and chose not to seek legal advice concerning those views despite not understanding Plaintiffs' legal position on the interpretation of the AGPL. Ratinoff Decl., Ex. 1 at 205:17-206:11. | **UNDISPUTED** that Mr. Suhy participated in a discussion thread on Plaintiffs' Github repository in May 2018.<br><br>DISPUTED that Mr. Suhy chose not to seek legal advice concerning those views. The Graph Foundation did get independent legal advice and communicated that to Mr. Suhy.<br><br>Furthermore, Mr. Suhy did do quite a bit of due diligence which is one of the reasons that he only followed the instructions in the files that specifically stated they were copyrighted to the free software foundation. |
| | Fact 41: When Suhy sought guidance from the FSF on the removal of the Commons Clause, the FSF told him "[t]he copyright holder on a work is the one with the power to enforce the terms of the license" and "[i]f a work was previously available under a free license, and later that license is changed, users can always use that earlier version under the terms of the free license." Dkt. No. 98-1, ¶ 36 and Ex. 34 (yellow highlights). The FSF also warned that "we cannot provide you with legal advice" and that he should "talk with legal counsel." *Id.* | UNDISPUTED the free software foundation gave the guidance which Mr. Suhy followed. |

(99 of 245), Page 99 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 99 of 245
Case 5:18-cv-07182-EJD   Document 188   Filed 06/01/23   Page 48 of 72

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | Fact 42:  Suhy ignored the FSF's admonitions, and did not consult an attorney before removing the Commons Clause. Ratinoff Decl., Ex. 1 at 183:2-184:9, 187:12-188:15, 189:1-191:3, 192:18-193:24, 196:22-24. | DISPUTED Mr. Suhy did not remove the commons clause from Neo4j.  In March 2019, he only made the AGPL License file verbatim as the copyright holder of the file, the free software foundation, instructed in the preamble.   The commons clause was still present in all NOTICE provisions and source code headers.

See also Fact 14 |
| | Fact 43: Suhy understood that the Common Clause imposed commercial restrictions on the use of Neo4j® EE.  Dkt. No. 98-1, ¶ 27 and Ex. 25 ("[Neo4j Sweden] tried adding a 'commons clause' to the AGPL license, trying to precent [sic] companies from selling (and competing against them on procurements)"); id., ¶ 31 and Ex. 29 ("People can pay money for a restrictive commercial license, or use Neo4j Enterprise for free under it's open source license"); id., ¶¶ 44-45; Exs. 42-43 (yellow highlights); Ratinoff Decl., Ex. 1 at 154:22-156:1. | DISPUTED Mr. Suhy did not use the term "commercial restrictions" in relationship to the commons clause.   Mr. Suhy knew that the commons clause forbid re-selling, but was unsure about the rest as the language of the commons clause did not define what "support services" was exactly. |
| | Fact 44: Suhy removed the Commons Clause to induce end-users to use ONgDB in commercial applications for free and then use the cost savings to pay Defendants to provide support services to those users.  Dkt. No. 98-1, ¶ 31 and Ex. 29; id., ¶¶ 64-68 and Exs. 62-66; id., ¶ 128 and Ex. 126; see also Dkt. No. 118 at 5:24-6:1, 6:11-7:5, 29:4-11; Dkt. No. 98-1, ¶¶ 44-45, 49 and Exs. 42-43, 47; id., ¶ 49 and Ex. 47; id., ¶ 56 and Ex. 54; id., ¶¶ 128 and Ex. 126; id., ¶¶ 132-134 and Exs. 130-132. | DISPUTED  Mr. Suhy removed the commons clause from only the AGPL License files and gave the reason for the removal clearly in the commit message.  The commons clause was not removed from the NOTICE provision (NOTICE.txt) or any source code files.   See Fact 14.

Mr. Suhy's commit message which is used to explain why a commit / change was made states: "**Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license.**" See Suhy Decl., Ex. 9

Furthermore, the commons clause did not prevent end-users from using Neo4j EE for free in commercial applications or elsewhere.  Plain |

(100 of 245), Page 100 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 100 of 245
Case 5:18-cv-07182-EJD  Document 188  Filed 06/01/23  Page 49 of 72

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 45:** Suhy concealed the infringing nature of ONgDB and misled the IRS to believe that GFI licensed the software rather than Neo4j Sweden exemplifies their actual knowledge that the removal of Neo4j Sweden's CMI would result in copyright infringement. Ratinoff Decl., ¶ 35 and Ex. 33 ("ONgDB open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc"); *id.*, Ex. 4 at 127:19-129:25, 132:2-133:13, 134:7-136:9, 137:24-138:11, 139:22-141:17. | DISPUTED Mr. Suhy was not aware that ONgDB was infringing on anything and would have called out the Graph Foundation had he thought this.

The Graph Foundation Inc communicated to Mr. Suhy and others that their legal counsel had given them the guidance as well.

"**We have been advised by The Free Software Foundation in a non-legal capacity and have verified with our legal counsel independently that the Commons Clause is a "further restriction" to AGPLv3 and may be removed according to this clause of AGPLv3**". See also Suhy Decl.,  Ex. 12

Mr. Suhy clearly stated the reason for replacing only the AGPL License file with the verbatim AGPL, while leaving all Neo4j CMI untouched.  See Fact 14 and 44.

Plaintiffs have not shown that IRS was misled in any way.

Mr. Suhy never misled or stated that the copyright came from GFI.    See Fact 36

Ratinoff Decl., ¶ 35 and Ex. 33, Shows an email dated 08/13/2018.   No modifications to the AGPL code were done as before March 2nd, 2019. See Suhy Decl.,  Exs. 1-4

Suhy removed Neo4J Sweden's infringement of FSF' AGPL license and did not conceal that. |
| | **Fact 46:** Defendants used the IRS's adoption of ONgDB to encourage other government agencies and contractors to do the same and pay them for support services. Dkt. No. 98-1, ¶¶ 26, 44-49 and Exs. 24, 42-47. | UNDISPUTED that defendants referenced IRS's adoption.

DISPUTED – that defendants did this in order for agencies and contractors to pay defendants.

In all the references given by plaintiff for Fact 46, only one was related to trying to get paid, and it was for a package of |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | software.  "**Neo4J Server including the Graphsware PHP-Neo4J Client (Guzzlehttp, Heoku, Myclabs, Pimple, Psr, Silex, Symfony, and Composer**" Dkt. No. 98-1, ¶ 44 and Ex. 42 <br><br> Not only did defendants not encourage agencies or contractors to pay them, they told them they could find companies with past performance such as AtomRain and GraphGrid. <br><br> "**Usually which one you go with falls to the cost of production support. From a past performance perspective, the open source distributions are actually in production in the Federal government and there are companies such as us , AtomRain, GraphGrid, etc all have past performance providing production support for federal agencies for Neo4j Enterprise open source licenses.**" Dkt. No. 98-1, ¶ 49 and Ex. 47 <br><br> Furthermore, Defendants were promoting the open and free nature of ONgDB. <br><br> "**I wanted to make sure you knew that you can use Neo4j Enterprise AGPL distributions at no cost, and with no limitations.**" Dkt. No. 98-1, ¶ 47 and Ex. 45 <br><br> "**1. You do not have to pay any licensing fees for the software you requested. Neo4j Enterprise < 3.5 and ONgDB (Open Native Graph Database) Enterprise (all versions) are available to use 100% free, in production.**" Dkt. No. 98-1, ¶ 45 and Ex. 43 |
| | **Fact 47:** Suhy also convinced another company, Greystones Consulting Group, LLC ("Greystones"), to implement ONgDB in an analytics platform branded by Greystones as "GreyRaven" and worked with them to solicit government agencies.  Ratinoff Decl., ¶¶ 55-60 and Exs. 53-58. | **DISPUTED**  None of the evidence provided by plaintiff relating to this fact suggest that Mr. Suhy convinced Greystones Consulting Group, LLC to implement ONgDB. |

(102 of 245), Page 102 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 102 of 245
Case 5:18-cv-07182-EJD   Document 188   Filed 06/01/23   Page 51 of 72

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | **Fact 48:** The United States Air Force awarded Greystones two SBIR contracts based on its GreyRaven platform, which Greystones touted as being based on ONgDB.  Ratinoff Decl., ¶¶ 61-62 and Exs. 59-60. | **UNDISPUTED**<br>Note however that GreyRaven was not based on ONgDB.<br><br>This was a marketing mistake and the website was updated once it was brought to GreyStone's attention. |
| | **Fact 49:** The Maryland Procurement Office (a/k/a the National Security Agency, the NSA and the MPO) tasked Next Century to analyze available graph database technologies, including Neo4j® EE.  Ratinoff Decl., Ex. 5 at 19:5-20:8, 28:10-31:21. | **UNDISPUTED** |
| | **Fact 50:** After the release of ONgDB v3.4, Suhy told Next Century that the MPO could use ONgDB under the AGPL without restrictions or paying Plaintiffs for a commercial license, as advertised on the iGov's website.  *Id.,* Ex. 5 at 35:7-37:3, 40:3-42:3, 42:16-48:22, 49:9-51:14, 51:23-25, 54:7-56:21, 57:18-62:12; *id.,* ¶¶ 63-66 and Exs. 61-63; *see also* Dkt. No. 98-1, ¶ 49 and Ex. 47. | **DISPUTED** as this mischaracterizes the evidence,  there were no restrictions on the number of cluster instances and cores, however the Software resticted under the AGPL license terms.<br>Dkt. No. 98-1, ¶¶ 64 and Ex. 62;<br>**"Are you aware that, unlike the commercial licensed options, the Neo4j Enterprise open source AGPL license does not place any restrictions on the number of cluster instances and cores?"** |
| | **Fact 51:**   Suhy confirmed that ONgDB v3.5 had the same closed enterprise features as Neo4j® EE v3.5, and Next Century could use it without restrictions or paying Neo4j for a commercial license.  *See* Ratinoff Decl., Ex. 5 at 62:13-65:17; *id.,* ¶ 66 and Ex. 64.  This led Next Century to upgrade to ONgDB v3.5.  Dkt. No. 98-1, ¶ 122 and Ex. 120. | DISPUTED It is not known what led Next Century to upgrade to ONgDB v3.5.<br><br>There is nothing in the evidence provided by plaintiff that "restrictions" had anything to do with the commons clause. In fact Next Century mentions open source and free as being important to them, and this, for example,  could have led to them upgrading to ONgDB v3.5<br><br><br>Dkt. No. 98-1, ¶¶ 64 and Ex. 62;<br>**"Are you aware that, unlike the commercial licensed options, the Neo4j Enterprise open source AGPL license does not place any restrictions on the number of cluster instances and cores?"** |

(103 of 245), Page 103 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 103 of 245
Case 5:18-cv-07182-EJD   Document 188   Filed 06/01/23   Page 52 of 72

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | **Fact 52:** As result of Defendants' removal of Neo4j Sweden's CMI and false statements about the same, Neo4j USA lost a multi-year $2.2 million deal when the MPO chose ONgDB instead of paying for a subscription to Neo4j® EE.  Dkt. No. 118 at 29:19-30:6; Dkt. No. 98-3, ¶¶ 22-24 and Exs. 12-13. | **DISPUTED** Defendants did not remove any "Neo4j Sweden's CMI" nor made any false statements about the same.   See Fact 14 above. <br><br> The commons clause does not prevent the MPO from using the software for free in their projects.  Next Century stated that cost and being open source were 2 important criteria.  There was another open source alternative to Neo4j called JanusGraph on the list of databases NextCentury was evaluating for the MPO. <br><br> No-where in the evidence provided by plaintiff does the MPO say they would have purchased Neo4j Enterprise if ONgDB was not available. <br><br> **"Q. And was this -- sorry. Strike that. What graph database technologies did Next Century consider for Task Order 39?** <br><br> **A. Several, including -- so there was -- Neo4j was one, Oracle was a second one, DataStax and <u>JanusGraph</u> were others that were the primary thrust. There were several others that I don't have the names of that -- that were also under initial consideration."** See Ratinoff Decl., Ex. 5 at 29:19-30:1 <br><br> **"The analysis started with the teams reviewing  other implementations of graph database technologies at the NSA and in other -- other applications to assess the performance, the security, lessons learned, <u>and costs</u> of the wide range of initial technologies under consideration."** See Ratinoff Decl., Ex. 5 at 31:16-21 <br><br> " |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | **Q. All right. And did the NSA provide any guidance on -- on pricing for the graph database software or the -- strike that. Were you provided any instructions from on pricing considerations for the graph database software that was being considered?**<br>**A. The NSA asked us to provide an analysis alternatives that <u>considered cost as one of the many factors</u>, and we were tasked to provide -- not provide -- <u>to consider cost as one of the factors</u>.**" See Ratinoff Decl., Ex. 5 at 44:9-18<br><br>"<br>**A. An alternative to the Neo4j Enterprise solution.**<br>**Q. And how was it an alternative?**<br>**A. <u>Similar features, less cost.</u>**<br>**Q. And when you say "less cost," there was no cost for a license to iGov's offering of Neo4j Enterprise, correct?**<br>**A. Not to my knowledge.**<br>" See Ratinoff Decl., Ex. 5 at 50:15-22<br><br>It was clear that government preferred free, no cost and open source licenses over paid.<br><br>**"A. Our government customer was interested in open-source technologies.**" See Ratinoff Decl., Ex. 5 at 56:10-11<br><br>Next Century was not even sure what the license ONgDB came under. Plaintiff's attorney had to guide the answer.<br><br>"    **Q. And what license did Next Century understand that ONgDB was distributed under?**<br>     **A. The -- (unintelligible).**<br>        **THE REPORTER: I'm sorry. One more time?**<br>        **THE WITNESS: GPLv3 license.**<br>        **BY MR. RATINOFF:**<br>**Q. AGPL Version 3; is that correct?**<br>**A. Yes."** See Ratinoff Decl., Ex. 5 at 59:10-17 |

(105 of 245), Page 105 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 105 of 245
Case 5:18-cv-07182-EJD   Document 188   Filed 06/01/23   Page 54 of 72

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | On Jan 2019, Mr. Suhy had not even replaced the AGPL License file with the verbatim version.   See Fact #14 above.<br><br>"   **Q.  So as of January 2019, had Next Century been using ONgDB to the exclusion of Neo4j Enterprise?**<br>    **A.  I don't know that it was to the exclusion of Neo4j.**<br>    **Q.  But at that time, Next Century hadn't obtained an commercial license for a copy of -- or an installation of Neo4j Enterprise, correct?**<br>**A. Correct."** See Ratinoff Decl., Ex. 5 at 64:2-9<br><br>Suhy did not remove Neo4J Swedens' CMI. The CMI is FSF's copyrighted license. Neo4J was obligated to use only a compliant AGPL license and used false CMI instead. |
| **Defendants' Violation of the DMCA [17 U.S.C. § 1202(b)(3)]** | | |
| 1. the existence of CMI on the infringed work; | *See* <u>Facts 1-9</u>. | **DISPUTED** – See responses to Facts 1-9 |
| 2. Defendants distributing that material knew that CMI had been removed or altered without authority | *See* <u>Facts 10-18</u>. | **DISPUTED** – See responses to facts 14, 10-18<br>Defendants never distributed any material that had modifications to Neo4j Sweden's CMI.  In fact – the mirror downloads provided by Defendants had the full commons in the LICENSE files of the distribution.   Other than the |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| of the copyright owner; and | | mirrors, defendants only shared links to GFI and were not aware of any wrong doing. |
| 3. Defendants knew or had reason to know that distributing works without CMI would "induce, enable, facilitate or conceal an infringement. | *See* <u>Facts 39-52</u>. | DISPUTED – See responses to facts 14,39-52. |
| **Defendants' Unclean Hands Defense** | | |
| 1. Defendants cannot establish that Neo4j USA's conduct is inequitable; and | <u>Fact 53:</u> On July 11, 2017, Neo4j USA notified the IRS that it had terminated its partnership with PureThink, and advised the IRS that PureThink was contractually restricted from providing support services for open source versions of Neo4j® software for 36 months.  Ratinoff Decl., ¶ 24 and Ex. 22. | **UNDISPUTED** Note that the SOW for the contract work did not require support of any of the graphs the platform could explore. |
| | <u>Fact 54:</u> Despite Neo4j USA's warnings, the IRS continued to use Neo4j® EE for free under the AGPL and allowed Suhy to perform under PureThink's support contract.  Ratinoff Decl., Ex. 4 at 40:16-43:13; 55:10-59:24; 69:8-70:25, 78:5-16; *id.*, ¶ 27 and Ex. 25. | **UNDISPUTED**.  IRS was able to use Neo4j EE free both under the AGPL as well as under the AGPL with the commons clause.

Note that the PureThink SOW for the contract work did not require support of any of the graphs the platform could explore. |
| | <u>Fact 55:</u> Suhy specifically targeted the IRS to transition to iGov's Government Package for Neo4j, and as a result in late July 2017, the IRS invited iGov to provide a quote for a sole-source contract for the development and support of the CKGE, which used an open source version of Neo4j® EE software as a main component.  Dkt. No. 171, ¶ 23; Ratinoff Decl., ¶ 27 and Ex. 25; *id.*, ¶ 28 and Ex. 26 (blue highlights at IGOV0001570513.001–IGOV0001570513.002); *id.*, Ex. 4 at 71:1-73:4. | **DISPUTED** that CKGE used Neo4j EE or any other graph database as a "main component".  Out of the many components and services inside CKGE, only one graph explorer even connected to a graph to allow visual exploration. See Suhy Decl., ¶ 5.

None of the references provided by Plaintiff show Neo4j EE as being a main component of CKGE. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | "The CKGE framework includes a Neo4j's Enterprise Edition open-source version2, Elastic Search capabilities, and micro-services components useful for supporting graph-related research; " Ratinoff Decl., ¶ 28 and Ex. 26 at IGOV0001570513.001 |
| | **Fact 56:** It was immaterial to the IRS who was the contracting entity so long as Suhy was the individual providing them.  Ratinoff Decl., Ex. 4 at 61:11-64:23. | **DISPUTED.**  Although IRS wanted to work with Mr. Suhy, the IRS had to properly procure the requirement under the FAR. Ratinoff Decl., Ex. 4 at 63:23-64:21 shows that Plaintiff's attorney tried to get IRS to make this statement but the IRS response was unclear and did not show that it was immaterial who the contracting entity was.<br><br>IRS was planning on competing the opportunity. "**And then we started a new procurement process for <u>new competition</u>**" Ratinoff Decl., Ex. 4 at 69:23-25<br><br>"**A.  Yes.  It was a new procurement order that had started -- or was executed for sort of open competition.  <u>I believe it was AA companies or small business companies originally, but it was open competition</u>, and it was awarded to eGov for professional services to work, you know, to further the development of CKGE.**" Ratinoff Decl., Ex. 4 at 74:4-10 |
| | **Fact 57:** On September 5, 2017, the IRS announced its intent to award a sole-source contract to iGov based on that quote. Dkt. No. 171, ¶ 23; Dkt. No. 98-2, ¶ 23. | **U**NDISPUTED |
| | **Fact 58:** Neo4j USA filed an official protest with the IRS, which the IRS agreed with Neo4j USA that it had improperly awarded the contract to iGov on a sole source basis and canceled it for that reason. Dkt. No. 98-2, ¶ 23; Dkt. No. 172-1, ¶¶ 5-7 and Ex. 3; Ratinoff Decl., Ex. 4 at 69:20-70:9, 71:1-74:1.  After cancelling the award to iGov, the IRS awarded iGov and Suhy the CKGE contract via eGov Sol. *See* Facts 25-30. | **DISPUTED**<br>IRS did not award any contract to iGov and Suhy through eGov Sol.<br>eGovernment Solutions paid Mr. Suhy a salary for a range of services.<br><br>See Suhy Decl., ¶ 7<br>See fact  28 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| 2. Defendants cannot establish that Neo4j USA's conduct relates to the subject matter of its Lanham Act claims. | **Fact 59:** Neo4j USA's alleged "bad acts" pertain to the licensing of Neo4j® EE. *See* Dkt. No. 91 at 16:21-19:7.  However, Neo4j Sweden owns the copyright to Neo4j® EE and was licensor of that software under the GPL and AGPL, and not Neo4j USA.  Dkt. No. 98-2, ¶¶ 3-4; Dkt. No. 118 at 2:11-16 (citing same). | See Fact 1 |
| | **Fact 60:** The GPL, AGPL and Neo4j Sweden Software Licenses are copyright licenses and not trademark licenses. Dkt. No. 85 at 7:27-8:7. | UNDISPUTED |
| | **Fact 61:** Neo4j Sweden release Neo4j® EE v3.4 (the first version subject to the more restrictive Neo4j Sweden Software License) in May 2018, and as a result, ceased licensing Neo4j® EE under the AGPL at that time. Dkt. No. 118 at 3:9-12; Dkt. No. 98-2, ¶¶ 11-12, Ex. 3. | **DISPUTED**. Neo4j EE v3.4 clearly stated its license was AGPL + commons clause. They did not "cease" licensing under AGPL.  Neo4j Sweden used the full AGPL preamble and called the License AGPL. They never called it  "Neo4j Sweden Software License" until the court case started. |
| | **Fact 62:** The inclusion of the Commons Clause in Neo4j® EE v3.4 does not amount to inequitable conduct because the Court already held that as the copyright holder Neo4j Sweden could license Neo4j® EE how it saw fit.  Dkt. No. 118 at 24:7-25:19, *aff'd* Dkt. No. 140 at 3. | **Objection**, this is not a fact, the law of the case doctrine does not apply to interlocutory orders. |
| | **Fact 63:** By May 2018, Neo4j® EE v3.4 included advanced scalability, availability, security, and operational features that were not previously available under the GPL or AGPL, and at least 182 files that were never released under either license. Dkt. No. 118 at 3:1-15; Dkt. No. 98-2, ¶¶ 6-7, 10-11; Dkt. No. 98-1, Ex. 38 at 6:22-7:1, 8:6-16:24. | DISPUTED  See Fact 61.The 182 files licensed under the AGPL + commons clause was still referred to as AGPL and had the full AGPL preamble. |
| | **Fact 64:** Defendants released ONgDB sometime in July 2018 and their promotion thereof amounted to trademark infringement, false advertising and false designation of origin in violation of the Lanham Act and UCL. *See* Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Ex. 28); Dkt. No., 98-1, ¶ 26 and Ex. 24; Dkt. No. 118 at 18:2-32:14. | DISPUTED  Defendants did not release ONgDB.  The Graph Foundation did.   Beene Dec., Ex. 30. |
| | **Fact 65:** Neo4j Sweden ceased its dual licensing model under the GPL and AGPL in ***May 2018*** and Neo4j USA's alleged false statements about | DISPUTED – In May 2018 Neo4j released enterprise under AGPL with the commons clause.   After v3.4 – the source |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | the IRS needing to obtain a commercial license for Neo4j® EE were made before **October 2017**. *See* Ratinoff Decl., Ex. 65 at 14:9-15:28, 17:1-27:7; *see also* Dkt. No. 118 at 3:17-4:22; Dkt. No. 177 at ¶¶ 20-21. | code clearly showed that it was using the AGPL license with commons along with the full AGPL preamble.<br><br>See Suhy Decl., Exs 1-8 |
| **PureThink's Claim for Breach of Exclusivity Contract** | | |
| 1. No enforceable contract existed; | Fact 66: There is no contract consented to or signed by Neo4j USA giving PureThink ownership rights in the Gov't Edition, the right to be paid for the development thereof, or the right to be compensated for that development work upon termination.  Instead, Suhy repeatedly told Neo4j USA – both before and after April 11, 2015 – that the Gov't Edition was a "concept" for PureThink to bypass protracted mandatory competitive bidding processes and take advantage of a faster sole-source procurement track.  Dkt. No. 98-1, ¶¶ 7-8 and Exs. 5-6; Ratinoff Decl., ¶¶ 8, 10, 12-14, 17, 19 and Exs. 6, 8, 10-12, 15, 17 (yellow highlights). | **UNDISPUTED** that PureThink did not have ownership rights to the Government Edition.   The Exclusivity agreement was designed to ensure Neo4j Inc had the proper rights to make business decisions, while still protecting PureThink's investment.<br><br>**DISPUTED**  The Government Edition Exclusivity agreement had an "exit agreement" that was designed to protect PureThink's investment and ensure PureThink would recognize a return on investment and be compensated in an "exit" situation ("Exit Agreement").<br><br>Until the exit clause algorithm could be put down in writing, Neo4j Inc and PureThink agreed that all decisions relating to the Government Edition and the Government Edition |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Exclusivity agreement would have to be agreed on unanimously by both parties. ("unanimous agreement") See Suhy Decl., ¶ 10.<br><br>Mr. Suhy's references the "unanimous agreement" requiring unanimous approval in communications with Neo4j.<br><br>"**Neo Technology <u>can request to revoke exclusivity</u> and assign to another company.**" Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts.<br><br>Adron Decl., Ex. 13, green highlights<br><br><br>The Government Edition is not just a concept.  It is a software product combined with services which were specifically designed to address the shortcomings that Neo4j Enterprise had at the time relating to US government security and accessibility needs.<br><br>Adron Decl.,  Exs. 14, 15<br><br>"**Neo4j US Government Edition is an "officially sponsored" package of offerings strategically designed to drive Neo4j adoption in the US Government market by drastically cutting overall cost of ownership, addressing critical government specific requirements, providing an efficient sole source path (sole source), and more...**" Suhy Decl.,  Ex. 16<br><br>"**Purpose of US Government Edition**<br><br>**Why the approach of defining a new edition compared to other approaches? This approach lowers the barrier of entry for Neo4j into the archaic us government market. How?**<br><br>**- Fast, Efficient Procurement (Sole source - no timely** |

(111 of 245), Page 111 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 111 of 245
Case 5:18-cv-07182-EJD   Document 188   Filed 06/01/23   Page 60 of 72

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | competitive procurements.) This has already been proven - every US Government sale has been through sole source.<br><br>- Drastically cuts down the total cost of ownership for an agency by addressing FISMA via features and support. Infact, this also applies to the community edition. The total cost of ownership for Neo4j Community Edition compared to Neo4j Government Edition can now be compared because of the high costs of FISMA. (This is one focus we address during the sales cycle - when a lead agency is considering the community edition, ignoring all the enterprise benefits they receive.)" Suhy Decl., Ex. 16<br><br>Adron Decl., Ex. 18<br><br>UNDISPUTED that Neo4j USA had the ownership rights of the Neo4j Government Edition.   The government edition was built for Neo4j Inc under the government edition exclusivity agreement.<br><br>--------<br>UNDISPUTED that Neo4j USA had the ownership rights of the Neo4j Government Edition.   The government edition was built for Neo4j Inc under the government edition exclusivity agreement.  In return for Neo4j USA owning the software and benefiting from the business plan, an "exit agreement" was in place to ensure a return on investment would be recognized by PureThink that addressed re-assignment, retirement, or termination.  Suhy Decl., ¶ 10 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 67: Suhy told third parties Gov't Edition was only created for sole-source justification.  Ratinoff Decl., ¶ 16 and Ex. 14 (yellow highlights). | **DISPUTED**<br><br>The government edition was created to address more than just sole source justification.  It was created to address requirements that the US Government needed and which Neo4j Enterprise did not have.  The ability to sole source was one important aspect,  but not the only reason for creating the government edition.  See Fact 66 above. |
| | Fact 68: The letter purporting to be a separate agreement between Neo4j USA and PureThink was simply the means for PureThink to establish sole source justification. Dkt. No. 98-1, ¶ 8 and Ex. 6; Ratinoff Decl., ¶¶ 14, 18-19 and Exs. 12, 16-17 (yellow highlights). | **DISPUTED**<br>The agreement between PureThink and Neo4j USA was specifically focused on exclusivity around the Neo4j Government Edition.   The agreement itself protected PureThink's investment into the Government Edition and ensured it could see a return on the investment.  The agreement also allowed for sole source justification, but that was not its sole purpose.<br><br>See Fact 66. |
| | Fact 69: Suhy repeated confirmed and assured Neo4j USA that it owned the intellectual property making up the Gov't Edition, as well could terminate PureThink as the exclusive reseller ***at any time and for any reason***. Dkt. No. 98-1, Ex. 6 (yellow highlights); Ratinoff Decl., ¶¶ 9-10, 14, 17, 19 and Exs. 7-8, 12, 15, 17 (green highlights). | **UNDISPUTED** that Neo4j USA owned the intellectual property making up the Gov't Edition.  Under the Neo4j Government Exclusivity Agreement, PureThink built the Government Edition for Neo4j as part of the agreement.<br><br>**DISPUTED** that Neo4j USA could terminate PureThink as the exclusive reseller at any time and for any reason.<br><br>PureThink and Neo4j Inc agreed that until the exit agreement would be written down, both PureThink and Neo4j USA had to both fully agree on any changes to the Government Edition and the agreement which included revoking, retirement, re-assignment, or termination of any kind.  This was done to protect the investment PureThink was making into the |

(113 of 245), Page 113 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 113 of 245
Case 5:18-cv-07182-EJD   Document 188   Filed 06/01/23   Page 62 of 72

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Government Edition Exclusivity agreement.<br><br>See Fact 66.<br><br>"**Neo Technology <u>can request to revoke exclusivity</u> and assign to another company**." Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts.<br><br>Adron Decl Ex. 13, green highlights |
| | <u>Fact 70:</u>  Consistent with his prior representations, Suhy sent proposed language for the external and internal versions of the sole-source justification letters to Neo4j USA on April 10, 2015, with the internal version stating "Neo Technologies has the right to cancel this exclusivity agreement at any time and for any reason."  Ratinoff Decl., ¶ 10 and Ex. 8 (green highlight); *see also id.*, ¶ 9 and Ex. 7 (green highlights). | **UNDISPUTED** that Suhy sent proposed language for an internal version of the agreement, which  stated that the agreement could be canceled at any time for any reason. However, this language was dropped and was not executed. See Fact 66<br><br>**DISPUTED** that there were prior representations relating to being able to cancel the agreement at any time.  The exhibits referenced by plaintiff were the first documents related to the planning of the government edition.  Mr. Suhy proposed this language, but that was dropped after speaking to Mr. Tim Brown, who pointed out that having that in there without a corresponding exit agreement would not make sense.<br><br> "I am sending it to Tim Brown who is our Govt procurement expert to see if the version we send to them is suitable." Ratinoff Decl., ¶ 9 and Ex. 7<br><br>After a discuss with Neo4j Inc, the wording to cancel the exclusivity agreement at any time for any reason was never signed or executed. |

(114 of 245), Page 114 of 245

Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 114 of 245
Case 5:18-cv-07182-EJD   Document 188   Filed 06/01/23   Page 63 of 72

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | The only exclusivity agreement signed and executed had no mention of being able to cancel.   Furthermore, the same exclusivity agreement was re-signed on June 23rd, 2016, a year later, with no mention of being able to cancel.   See Suhy Decl., Ex. 20 <br><br> Until the exit agreement was written down, Neo4j and PureThink agreed that any changes to the agreement would require both parties to approve until the exit agreement was written down. <br><br> "**Neo Technology <u>can request to revoke exclusivity</u> and assign to another company.**" Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts. <br><br> Adron Decl.,  Ex. 13 |
| | <u>Fact 71</u>: The internal version of the April 11, 2015 sole-source letter signed by Lars Nordwall on behalf of Neo4j USA expressly stated that "Neo Technology has the right to cancel this exclusivity agreement at any time and for any reason."  Ratinoff Decl., ¶ 11 and Ex. 9 (green highlight) | **DISPUTED** <br> An internal version of the sole source letter was never executed or agreed upon. <br><br> Ratinoff Decl., ¶ 11 and Ex. 9 simply shows 2 documents sent to Mr. Suhy for review but not executed on behalf of PureThink. <br><br> Mr. Suhy did not agree or sign the document stating that exclusivity agreement could be canceled. <br><br> The only exclusivity agreement signed and executed had no mention of being able to cancel.   Furthermore, the same exclusivity agreement was re-signed on June 23rd, 2016, a year later, with no mention of being able to cancel.   See Suhy Decl.,  Ex. 20 <br><br> See fact 66, 70. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 72:** The internal version of the April 11, 2015 letter signed by Neo4j USA omitted Suhy's proposed language "[t]his agreement supersedes any other agreements." *Compare* Ratinoff Decl., ¶ 10 and Ex. 8 (red highlight) *and id.*, ¶ 11 and Ex. 9 at p. 3. | **DISPUTED**<br>The document was not executed by Mr. Suhy or PureThink.<br><br>See fact 71. |
| | **Fact 73:** Erik Nolten of Neo4j USA shared the same understanding that Neo4j USA owned the Gov't Edition and had the right to cancel PureThink's status as an exclusive reseller thereof any time and for any reason based on Suhy's representations made before April 11, 2015 (Ratinoff Decl., ¶¶ 8-10 and Exs. 6-8) and from the express language of the sole-source letters signed by Lars Nordwall (*id.*, ¶ 15 and Ex. 13). | **DISPUTED** The executed agreements, both signed on April 11th, 2015 then on June 23rd, 2016 (Suhy Decl., Ex. 20 ) do not say anything about being able to cancel the exclusivity agreement.<br><br>Ratinoff Decl., ¶ 15 and Ex. 13 simply shows Erik Nolten sending unsigned documents to Charles Fischer on July 31st, 2015. |
| | **Fact 74:** After meeting with Neo4j's new Vice President of Strategic Alliances and Channels, John Broad, in October 2015, Suhy prepared documents for him reconfirming that Neo4j USA owned the Gov't Edition and had the right to cancel PureThink's status as the exclusive reseller thereof any time and for any reason. Ratinoff Decl., ¶ 17 and Ex. 15 (green highlights). | **DISPUTED**<br>Nowhere in the email referenced in Ratinoff Decl., ¶ 17 and Ex. 15 does it say anything about Neo4j USA having the right to cancel PureThink's status as exclusive reseller any time or any reason.  It in fact highlights that the "unanimous agreement" was in place. Mr. Suhy told Mr. Broad – that Neo4j could request to revoke and assign to another company.   The agreement was specifically designed to ensure both parties had to agree.<br><br>"**Neo Technology <u>can request to revoke exclusivity</u> and assign to another company**." Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts.<br><br>**UNDISPUTED** that Neo4j USA owned the Government Edition.<br><br>See fact 66. |

(116 of 245), Page 116 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 116 of 245
Case 5:18-cv-07182-EJD   Document 188   Filed 06/01/23   Page 65 of 72

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| 2. PureThink's performance or excuse for nonperformance; | **Fact 75:** In conjunction with terminating the Gov't Edition on June 19, 2015, Neo4j USA informed PureThink that it was "no longer authorized to market, resell, demonstrate or provide training on the Neo4j Government Edition."  Ratinoff Decl., ¶ 21 and Ex. 19. | **DISPUTED**:  The Government Edition was discontinued, not terminated on June 19th, 2015.<br><br>Ratinoff Decl., ¶ 21 and Ex. 19 "Neo4j is hereby providing notice that Neo4j is **discontinuing Neo4j Government Edition**.."<br><br>**UNDISPUTED** that Neo4j USA sent an email stating that PureThink was no longer authorized to market, resell, demonstrate or provide training on the Neo4j Government Edition. |
| | **Fact 76:** Suhy acknowledged the termination of the Gov't Edition and agreed to remove all references from PureThink's website.  Ratinoff Decl., ¶¶ 22 and Ex. 20. | **DISPUTED**<br>The Government Edition was discontinued, not "terminated". See Fact 75.<br><br>Mr. Suhy's email referenced in Ratinoff Decl., ¶¶ 22 and Ex. 20. Simply states:  "We are removing references from the website.  It hurts you guys as well but it does no good leaving it up as of now.  There is no acknowledgement or acceptance of any of Neo4j's actions as PureThink did not agree to this as was required in the Neo4j Government Exclusivity agreement.<br><br>**UNDISPUTED** that Suhy removed the references on the website. |
| | **Fact 77:** After Neo4j USA terminated the SPA, Defendants targeted same federal agencies that PureThink previously solicited under the SPA by offering "Government Packages for Neo4j."  Dkt. No. 118 at 4:24-5:20 (citing Dkt. No. 98-1, Exs. 14-19). | **DISPUTED** that Neo4j USA terminated the service provider agreement (SPA).<br><br>The Government Packages for Neo4j were not the same packages that PureThink offered. |
| | **Fact 78:**  iGov's "Government Packages for Neo4j" included the same framework and FISMA security add-ons the Gov't Edition.  Ratinoff Decl., ¶ 23 and Ex. 21; *id.*, ¶¶ 25-26 and Ex. 23-24.  The only difference was it included Neo4j® EE for free under the AGPL. *Id.* | **DISPUTED** – Though originally in the marketing material, the Government Package for Neo4j did not ever bring anything over from PureThink or the Government Edition. |

(117 of 245), Page 117 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 117 of 245
Case 5:18-cv-07182-EJD   Document 188   Filed 06/01/23   Page 66 of 72

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Though this was originally the plan, it was never executed. The Government Packages for Neo4j were never sold.<br><br>See Suhy Decl., ¶ 11 |
| | **Fact 79:** On July 11, 2017, the same day Neo4j USA terminated the SPA, Suhy emailed government contractors and agencies confirming that iGov was reusing the framework and add-ons developed for the Gov't Edition (contrary to his prior admissions that Neo4j USA owned them). Dkt. No. 98-1, ¶ 14 and Ex. 12; Ratinoff Decl., ¶¶ 25-26 and Exs. 23-24. | **DISPUTED** the emails referenced in Ratinoff Decl., ¶¶ 25-26 and Exs. 23-24.  Only show what was planned.  The plan was scrapped however and no packages were ever sold. |
| | **Fact 80:** Defendants made clear on iGov and PureThink's websites that the "Government Package for Neo4j" was from the same "principle" behind PureThink and Gov't Edition. Dkt. No. 98-1, Exs. 14-15. | **UNDISPUTED** – The same "principle" behind PureThink and the Gov't Edition was John Mark Suhy |
| | **Fact 81:** Suhy and PureThink formed iGov to evade the restrictions in the Partner Agreement. Dkt. No. 98-1, ¶ 13 and Ex. 11; *id.*, ¶¶ 16-17 and Exs. 14-15 ("The principle behind PureThink and the Government Package has created a new corporate entity called iGov Inc, which is not a Neo4j Solution Partner. Because iGov Inc is not a solution partner, it can offer packages at great cost savings to US Government Agencies as it has no restrictions on working with Neo4j Enterprise open source licenses!"); Dkt. No. 118 at 24-5:7 (citing same); Dkt. No. 177 at 10:3-6. | **DISPUTED**:  iGov did not need to evade any restrictions, as it was not part of the "partner agreement" also known as "service provider agreement (SPA)".  There are no terms in the SPA / partner agreement which forbid Mr. Suhy from creating a new company that would not be restricted by the SPA.<br><br>Note: Plaintiff's using the term. "partner agreement" here, but in Fact #77 above, they use the term "SPA". |
| | **Fact 82:** iGov thereafter operated as PureThink's successor-in-interest. Ratinoff Decl., ¶ 27 and Ex. 25 ("[S]ince iGov Inc has no limitations on supporting or providing services for Neo4j Enterprise open source licenses, we can just have iGov Inc. assume over all [PureThink's] obligations of the current contract now instead of waiting for the next procurement. Nothing would change, we would have the same team, locations and would keep working as we always have."); Ratinoff Decl., Ex. 27 ("US Treasury has decided to make the move to our new company iGov Inc and the new Government Packages for Neo4j Enterprise"); *id.*, ¶¶ 29-30 and Ex. 27-28 (yellow highlights); Dkt. No. 98-1, ¶¶ 13, 16-17 and Exs. 11, 14-15; *see also* Facts 17, 77-80. | DISPUTED:  iGov was not PureThink's successor-in-interest.<br>iGov was created from scratch and no assets, or IP was transferred from PureThink.<br><br>Mr. Suhy was the only member of both companies at the time. |
| | **Fact 83:** Defendants continued to actively marketed "Government Package for Neo4j" until they released ONgDB.  Dkt No. 118 at 4:24- | **DISPUTED**<br>Defendants did not release ONgDB.  The Graph Foundation is the owner of ONgDB and responsible for its development |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | 5:20 (citing Dkt. No. 98-1, Exs. 14-19, 21, 62-64, 67-69); Dkt. No. 118 at 19:13-20:24. | and release.<br><br>Though the graph foundation was once part of the case, it has since settled with plaintiff and is no longer part of the case.<br><br>Mr. Suhy is only one of several volunteer committers and has no control or official position with the Graph Foundation. |
| 3. Neo4j USA did not breach the alleged exclusivity agreement; and | Fact 84: Assuming a separate exclusivity agreement existed, Neo4j USA had the unfettered right to discontinue the Gov't Edition and terminate PureThink as its exclusive reseller without cause and without compensating PureThink. *See* Facts 69-74. | **DISPUTED**.<br>Neo4j USA had to get PureThink's agreement to make any changes which would have included cancellation, retirement, discontinuation, or any other activities that could risk the investment and expected return on the investment PureThink had.<br><br>See Fact 66. |
| 4. There are no resulting damages to PureThink. | Fact 85: PureThink could not have suffered $1.3 million in damages since the IRS ultimately awarded the CKGE contract for the same amount to its successor-in-interest iGov via eGovernment Solutions in order for it to continue developing the CKGE the framework that PureThink had started with the Gov't Edition under the prior contract. *See* Facts 25-30. | DISPUTED<br>iGov is not the successor in interest to PureThink.<br><br>IRS did not award anything to iGov.<br><br>eGovernment Solutions paid Mr. Suhy a salary, the revenue from IRS was not passed through to iGov.<br><br>See Suhy Decl., ¶ 7<br>See fact 28 |
| | Fact 86: PureThink did not maintain any time sheets that could support their claim that PureThink "spent an equivalent to $650,000 to design, develop, and build" the Gov't Edition. Ratinoff Decl., Ex. 2 at 173:15-177:17. | **DISPUTED**<br>PureThink told Neo4j that they would be working full time on the Government Edition. Full time means at or over 40 hours a week. See Adron Decl., Ex. 17 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 87:** PureThink's financial statements showed it did not incur any expenses or overhead for the development of the Gov't Edition. Ratinoff Decl., Ex. 2 at 59:6-63:15; *id.,* ¶¶ 68-69 and Exs. 66-67. | DISPUTED – PureThink is a single person company filing as an s-corporation for tax purposes. All the money remaining was invested into building the Government Edition by paying Mr. Suhy for his focus. The references in Exs 66-77 do not reflect the expenses which came in the form of paying Mr. Suhy to focus full time on the Government Edition.<br><br>"**The partner fees we receive from non-partner government sales help support these initiatives - they are not looked at as 'commissions'. For example - as government adoption grows and many more sales come in - we understand if the fees must be cut to help drive your growth - and since the <u>fees only go towards 'funding' our execution of the initiatives</u>. They are not part of our future business modeling outside of operating costs.** " Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 1 under Important Concepts.<br><br>PureThink's re-invested its money and time into building out the government edition.<br>"**Unlike other partners, we plan on re-investing revenue from the partner fees made from sales to help drive the expansion and adoption of Neo4j in the US Government. This is a key differentiator between us and other partners.**" See Suhy Decl., Ex. 19 |
| | **Fact 88:** PureThink did not spend any money to develop the Gov't Edition. Ratinoff Decl., Ex. 2 at 170:10-171:13. | **DISPUTED**<br>PureThink reinvested the revenue from the partner fees into developing the government edition and performing the tasks required to uphold PureThink's side of the agreement. The money paid Mr. Suhy to focus full time on the Government Edition.<br><br>See fact 87. |
| | **Fact 89:** Suhy used PureThink's work product from the Gov't Edition for iGov's "Government Packages for Neo4j." Ratinoff Decl., Ex. at 186:14-24; *id.,* ¶¶ 25-26 and Exs. 23-24 ("We've simply taken the framework | **DISPUTED**<br>Suhy did not use PureThink's work product from the Government Edition for iGov's "Government Packages for |

| **Claim or Defense** | **Moving Party's Undisputed Facts/Supporting Evidence** | **Opposing Parties' Response/Supporting Evidence** |
|---|---|---|
| | and services that made a Neo4j Enterprise (Commercial only) into Neo4j Government Edition and made them available as a stand alone package we call (Government Package for Neo4j)"); *id.*, ¶¶ 29-20 and Exs. 27-28. | Neo4j".   The statements made were incorrect and iGov never used any work product from the Government Edition, nor did iGov ever sell any of these packages.<br><br>See fact 78<br>See Suhy Decl., ¶ 11 |

### DEFENDANTS UNDISPUTED MATERIAL FACTS

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| **Defendants' did not violate the DMCA [17 U.S.C. § 1202(b)(1)]; [17 U.S.C. § 202(b)(3)]** | | |
| | Fact 90: Neo4J does not license the commercial product under the AGPL. Beene Dec. Ex 26 | |
| | Fact 91: The Amended and Restated License Agreement which Neo4J Sweden licensed Neo4J software to Neo4J USA is not an AGPL license. Been Dec. Ex. 28 | |
| | Fact 92: The Amended and Restated License Agreement which Neo4J Sweden licensed Neo4J software to Neo4J USA is not an AGPL license. Been Dec. Ex. 28 | |
| | Fact 93: the Amended and Restated License Agreement required NEO4 J USA to comply with all third party software licenses including licenses approved by the Open Source Initiative such as the AGPL. Beene Dec. Ex 28, Section 2.1.3. | |
| | Fact 94: Neo4J does not own all the code to Neo4J software. Beene Dec. Ex 27. Since Neo4J Sweden does not own the complete code, licensing it to Neo4J USA with a non GPL/AGPL license is a violation of the AGPL. Beene Dec., Ex. 33, Kuhn Expert Report ¶¶99-107. Suhy Dec. Exs. 6, 21. | |
| | Fact 95: Neo4J told the IRS they could only use the AGPL version if they made the project open in violation of the terms of the AGPL. Suhy Dec. Exs. 22, 23 | |
| | Fact 96: The Fair Trade License document is a misrepresentation of the terms of the AGPL. Suhy Dec. Exs. 22, 23. Under the AGPL, anyone is licensed to use the software. The obligation to provide modified source code is only on conveyance. AGPL sections 2, 5 and 6. Suhy Dec., Ex 6. | |
| | Fact 97: There is no obligation under the AGPL to make use of Neo4J software an open project. AGPL, Suhy Dec., Ex 6. | |
| | Fact 98: The AGPL trademark is owned by FSF. AGPL, Suhy Dec., Ex 6. | |

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 99: The license grant to use AGPL license restricts changes: AGPL "Everyone is permitted to copy and distribute verbatim copies of this license Document, but changing is not allowed." Suhy Dec., Ex 6. | |
| | Fact 100: Neo4J Sweden violated the AGPL by changing the AGPL adding the commons clause. Suhy Dec., Ex 6. | |
| | Fact 101: Neo4J Sweden inclusion of the commons clause violated FSF' AGPL license terms. Suhy Dec., Ex 6. | |
| | Fact 102: Neo4J USA failed to provide verbatim copies of the AGPL license with its commercial license as required under the AGPL section 4. Suhy Dec. Exs. 6, 24; Beene Ex. 26 | |
| Plaintiffs Acted With Unclean Hands | See Facts 90-102 | |
| | Fact 103: No communication shows Neo4j, Inc. advised the PTO they did not own the NEO4J Trademark or change the date of first use. Suhy Dec., ¶15 | |
| Neo4j USA Breached the Exclusivity Agreement | | |
| | Fact 104: Neo4j consented to an Exclusivity Agreement with PureTink LLC. Suhy Dec., Ex. 20 | |
| | Fact 105: The Exclusivity Agreement was separate from the SPA. Beene Dec. Ex 31, Deposition of John Mark Suhy, 43:17 – 45:3 | |
| | Fact 106: The Exclusivity Agreement was subject to an exit clause. Suhy Dec. ¶10, Ex. 20 | |
| | Fact 107: iGov is not a successor in interest to PureThink. The work scope for PureThink and iGov were substantially different. Beene Dec. Ex 31, Deposition of John Mark Suhy, 53:19-54:4. iGove did not use any assets of PureThink. Beene Dec. Ex 31, Deposition of John Mark Suhy, 52:5-8. | |
| | Fact 108: Neo4j USA prevented PureThink's performance by prohibiting it from engaging with government agencies. Dkt. No. 177, Ex. D | |
| | Fact 109: Mr. Suhy worked full time under the Exclusivity Agreement. Beene Decl., Ex. 17 | |

Case 5:18-cv-07182-EJD   Document 188   Filed 06/01/23   Page 72 of 72

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
|  | Fact 110: Plaintiffs have made substantial government sales. Beene Dec., Ex. 29 |  |

I attest that the evidence cited herein fairly and accurately supports the facts as asserted by Defendants.

Dated:  June 1, 2023                    By: _/s/ Adron G. Beene_
                                                    Adron G. Beene, Attorney for Defendants

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEO4J, INC., et al., | Case No. 5:18-cv-07182-EJD |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING PLAINTIFFS' *DAUBERT* MOTION** |
| v. | |
| PURETHINK, LLC, et al., | |
| Defendants. | Re: ECF No. 181, 183 |

Plaintiffs Neo4j, Inc. ("Neo4j") and Neo4j Sweden AB ("Neo4j Sweden") (collectively, "Plaintiffs") move to exclude expert testimony of Dr. Kuhn and for partial summary judgment. ECF Nos. 181, 183. The Court heard oral argument on July 27, 2023. For the reasons stated herein, the Court GRANTS the *Daubert* motion and GRANTS the motion for partial summary judgment.

## I.   BACKGROUND

The Court has previously set forth the facts of this case on multiple occasions (*see* ECF Nos. 70, 85, 118, 168) and, accordingly, will summarize here only the facts pertinent to this Order.

### A.   Plaintiffs and Neo4j Software

Plaintiff Neo4j USA is Delaware corporation that specializes in graph database management systems and software. Third Am. Compl. ("TAC"), ECF No. 90 ¶¶ 2, 20. Neo4j USA markets and sells its graph database platform under the Neo4j mark. *Id.* ¶ 2. Plaintiff Neo4j Sweden is a wholly owned subsidiary of Neo4j USA that owns all copyrights relating to the NEO4J graph database platform, including the source code. *Id.* ¶ 4. Neo4j Sweden licenses the copyrights to Neo4j USA under the Neo4j Sweden Software License (the "Software License"),

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

1

United States District Court
Northern District of California

United States District Court
Northern District of California

1  which sublicenses the rights in the U.S.  *Id.*  Neo4j owns several federally registered trademarks.

2  *Id.* ¶ 21.  All versions of Neo4j's graph platform software are subject to Neo4j USA's Trademark

3  Policy found on its website.  *Id.* ¶ 28.

4  Plaintiffs have historically offered a free and open-source version of their Neo4j software

5  called Neo4j Community Edition ("Neo4j CE"), subject to the GNU General Public License

6  ("GPL").  *Id.* ¶ 24.  For commercial users, Plaintiffs offered a paid-for version of Neo4j called

7  Neo4j Enterprise Edition ("Neo4j EE"), which, compared to the free Neo4j CE version, contains

8  significant additional functionality and provides support for advanced commercial operations.  *Id.*

9  The Neo4j J EE software was historically offered under both a paid-for commercial license and

10  the free GNU Affero General Public License ("AGPL").  As of May 17, 2018, Neo4j EE v.3.4 and

11  later iterations including Neo4j EE 3.5, are only offered under the commercial license, meaning

12  new features to Neo4j EE will be developed as closed source.  *Id.* ¶¶ 25, 27; *see* ECF No. 213-2,

13  Ex. A ("Undisputed Facts"), Facts 4 and 7.

14  **1.  The Neo4j Sweden Software License**

15  The Neo4j Sweden Software License includes the language of the AGPL with additional

16  "Terms and Conditions" to using the license.  The Section 7 "Additional Terms" contain certain

17  restrictions to using the license, including, in relevant part, that:

18  > When you convey a copy of a covered work, you may at your option
19  > remove any additional permissions from that copy, or from any part
    > of it. (Additional permissions may be written to require their own
    > removal in certain cases when you modify the work.) You may place
20  > additional permissions on material, added by you to a covered work,
    > for which you have or can give appropriate copyright permission.

21  ECF No. 188-1 ("Suhy Decl."), Ex. 7.  "Additional Permissions" are defined as "terms that

22  supplement the terms of this License by making exceptions from one or more of its conditions."

23  *Id.* § 7.  If an Additional Permission applies to the entire program, it will be "treated as though

24  they were included in this License, to the extent that they are valid under applicable law."  *Id.*

25  This section also states that "for material you add to a covered work, you may (if

26  authorized by the copyright holders of that material) supplement the terms of this License" with

27  the following enumerated terms:

28  Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

2

a) Disclaiming warranty or limiting liability differently from the terms of sections 15 and 16 of this License; or b) Requiring preservation of specified reasonable legal notices or author attributions in that material or in the Appropriate Legal Notices displayed by works containing it; or c) Prohibiting misrepresentation of the origin of that material, or requiring that modified versions of such material be marked in reasonable ways as different from the original version; or d) Limiting the use for publicity purposes of names of licensors or authors of the material; or e) Declining to grant rights under trademark law for use of some trade names, trademarks, or service marks; or f) Requiring indemnification of licensors and authors of that material by anyone who conveys the material (or modified versions of it) with contractual assumptions of liability to the recipient, for any liability that these contractual assumptions directly impose on those licensors and authors.

*Id.* § 7. Other "additional terms" not included in the list of permitted supplementary terms are considered "further restrictions" under Section 10. *Id.*

Section 10 explains that all conveyances of the covered work are subject to the license from the "original licensors." *Id.* § 10. It also restricts a user from "impos[ing] any further restrictions on the exercise of the rights granted or affirmed under this license." *Id.* If a user receives Neo4j EE under the Neo4j Sweden Software License with a "further restriction" affixed, the user may remove that term. *Id.* § 7.

### B. Defendants' Partner Agreement with Plaintiffs

Defendant PureThink LLC ("PureThink") is a Delaware company that develops software. *Id.* ¶ 5. Defendant John Mark Suhy is the sole manager and member of PureThink. *Id.* ¶ 8. PureThink had been previously authorized as a Neo4j Solution partner beginning September 30, 2014 until July 11, 2017. *Id.* ¶¶ 5, 29, 35. As a Neo4j Solution Partner, PureThink entered into a Solution Partner Agreement with Neo4j USA (the "Partner Agreement") where PureThink would sell Neo4j EE and provide support to end-users of Neo4j EE software in exchange for annual partner program fees and shared revenue. *Id.* ¶¶ 18, 29.

Defendant iGov inc. ("iGov") is a software development and consulting company that competes with Neo4j and its Solution Partners. *Id.* ¶ 6. iGov also does business as "GraphStack." *Id.* ¶ 7. Suhy is also the sole shareholder and the officer and director of iGov. *Id.* ¶ 8. Plaintiffs believe that iGov is a successor-in-interest to PureThink, or that iGov has acquired substantially

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
3

United States District Court
Northern District of California

1    all of PureThinks assets in or around 2017. *Id.* ¶ 6.

2        The Partner Agreement provided PureThink with a non-exclusive, non-transferrable

3    limited license to use Neo4j's trademarks to market and promote products under the terms of the

4    Agreement. *Id.* ¶ 30. Section 4.1 of the Partner Agreement incorporated Neo4j's trademark

5    policies as additional limitations on Defendants' use of the Neo4j mark and making

6    representations about Neo4j EE and Neo4j CE software products. *Id.* Section 4.3.2 provides that

7    PureThink would not "develop, market, distribute or offer any services related to any Community

8    Edition Products, derivative works of such products, or any [PureThink] software code made to

9    work with Community Edition Products (including, without limitation, hosting services, training,

10    technical support, configuration and customization services, etc.)" for a period of 36 months after

11    termination or expiration of the Partnership Agreement. ECF. No. 177 ("FACC"), Ex. B.

12        In March 2017, Plaintiffs allegedly learned that Defendants encouraged or misled the IRS

13    to use "free and open source Neo4j EE under the AGPL," referred to as ONgDB software,[1] and

14    pay PureThink for support services to avoid paying for the commercial license under Neo4j EE.

15    *Id.* ¶ 31. Plaintiffs allege that Defendants used a different server to compile the open-source

16    software in order to recompile it with modifications in an attempt to avoid the restrictions imposed

17    by the Partner Agreement on PureThink. *Id.* ¶¶ 31, 32. Plaintiffs allege that this misleading

18    conduct potentially damaged he Neo4j mark and its goodwill. *Id.* ¶ 32.

19        As a result, on May 30, 2017 Neo4j USA notified PureThink that its actions constituted

20    material breach of the Partner Agreement § 7, and on July 11, 2017, Neo4j USA provided written

21    notice that the Partner Agreement was terminated. *Id.* ¶¶ 33, 35. Several provisions of the

22    Partnership Agreement survived termination, including Section 7.3 and 10. *Id.* ¶¶ 36, 37. Neo4j

23

24    _____

[1] ONgDB" is a software released by the Graph Foundation, founded in part by Suhy, that used
25    Neo4j EE v3.4 (which was openly available subject to the Neo4j Sweden Software License)
replaced with the AGPL. First MSJ Order at 6; *see* FAC ¶¶ 55–56. Plaintiffs allege that ONgDB
26    combines the last public Neo4j EE code (beta version of Neo4j EE 3.5), the Neo4j CE code, and
"glue code" authored by Mr. Suhy and other contributors. *Id.* ¶ 58. ONgDB was later renamed
27    "Graphstack GDB." MSJ at 1. For the purposes of this motion the Court will only refer to the
software as "ONgDB."

Case No.: 5:18-cv-07182-EJD
28    ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

1    USA demanded that PureThink cease using its trademarks. *Id.* ¶ 38.

2    **C.**    **Removal or Alteration of Copyright Management Information**

3    Plaintiffs include copyright management information ("CMI") within the electronic source

4 code files for Neo4j EE. *Id.* ¶ 76. The CMI includes information identifying the copyright owner

5 as Neo4j Sweden, the title of the work, licensing information, terms and conditions for use of the

6 copyrighted work, and other "conspicuous displays identifying the owner or title of these

7 copyrighted works," such as "Neo4j" in the source code and notice headers with terms and

8 conditions. *Id.*

9    Plaintiffs allege that Defendant Suhy, with Graph Foundation Inc.'s approval and

10 encouragement, replicated the Neo4j EE source code files and either removed or altered the Neo4j

11 Sweden Software License, the copyright owner information, and the terms and conditions of at

12 least 28 separate files from Neo4j EE. *Id.* ¶ 77. Suhy also replaced the Neo4j Sweden Software

13 License with a generic version of the AGPL, which effectively removed the commercial

14 restrictions imposed by the license, and republished the source code files on Graph Foundation's

15 Github repository for ONgDB software. *Id.* ONgDB is allegedly a "patchwork of source code"

16 compiled from older versions of Neo4j software that includes "glue" source code authored by the

17 Graph Foundation and Suhy. *Id.* ¶ 58.

18    It is therefore not the same quality as Plaintiffs' software, as it lacks "tens of thousands of

19 functional, performance, load, stress, and other tests to ensure quality and consistency" and other

20 fixes and improvements made by Plaintiffs to Neo4j EE. *Id.* ¶ 59. Defendants purportedly

21 characterized ONgDB as identical to Plaintiffs' commercial-only releases of Neo4j EE. *Id.* ¶ 58.

22 Plaintiffs allege that Defendants are misleading consumers into believing they are downloading an

23 exact copy of Plaintiffs' current commercial-only releases of Neo4j EE, or a "drop in"

24 replacement. *Id.* ¶ 59. Although Defendants have at times disclaimed a relationship or affiliation

25 with Neo4j, any disclaimer is allegedly undermined by Defendants' misinformation, such as

26 displaying the software as display as "Neo4j," "Neo4j Enterprise," "neo4j project" and "Neo4j

27 open source." *Id.* ¶ 60. This misinformation has confused customers "as to the nature of its

28

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

5

United States District Court
Northern District of California

1    'forked' version of ONgDB" and failure to include trademark notices after the Neo4j mark.  *Id.*

2    plaintiffs allege Defendants' actions have caused actual consumer confusion over license

3    obligations.  *Id.* ¶ 70.

4         **D.       Exclusive Contract to Resell Neo4j Software to the Government**

5         In their Fourth Amended Counterclaim, Defendants allege that Suhy and Neo4j USA's

6    COO Lars Nordwall discussed modifications to the software to satisfy U.S. government security

7    requirements.  FACC ¶ 16.  During this discussion, Nordwall purportedly represented that Suhy

8    could improve the Neo4j software for government use.  *Id.*  According to Defendants, PureThink

9    and Nordwall entered an agreement (the "Exclusivity Contract") dated April 11, 2015, separate

10   from the Partnership Agreement, which stated PureThink is the only Neo4j "Government Edition"

11   reseller for the US Federal Government, Department of Defense and Intelligence Agencies.  *Id.* ¶

12   54; *see* Ex. C.

13        PureThink alleges that it subsequently designed and developed Neo4j Government Edition

14   software package that included additional enhancements and features to the Neo4j Software to

15   address the security requirements.  *Id.* ¶ 17.  PureThink expended $650,000 on this endeavor.  *Id.*

16   PureThink alleges that the Government Edition was a "complete package" that included additional

17   services and support and software modules.  *Id.*

18        Pursuant to the Exclusivity Contract, PureThink entered into an agreement with the IRS.

19   *Id.* ¶ 20.  During the performance of the agreement, the IRS inquired into the difference between

20   the Neo4j CE and Neo4j EE.  *Id.* ¶ 20.  Neo4j USA allegedly told PureThink to tell the IRS that

21   Neo4j CE was open use.  *Id.*  Believing that this information misrepresented the differences

22   between open source software and the commercial software, Neo4j refused to answer the IRS as

23   instructed.  *Id.* ¶¶ 20–21.  PureThink alleges that Neo4j USA directly reached out to the IRS to

24   impart this information.  *Id.* ¶ 20.  Neo4j USA allegedly retaliated against PureThink by telling the

25   IRS that PureThink could not provide professional service to the IRS for a period of 3 years as a

26   result of the termination of the Partnership Agreement.  *Id.* ¶ 21; *see* Ex. D.  Neo4j USA also

27   advised iGov potential customers using Neo4j software that iGov was not permitted to work with

28

United States District Court
Northern District of California

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
6

United States District Court
Northern District of California

1   them.  *Id.* ¶ 21.  PureThink alleges that Neo4j USA's actions interfered with and harmed its

2   business.  *Id.*

3   ### E.   Relevant Procedural Background

4         This action has an extensive and convoluted procedural history.  Because the present

5   motion is only concerned with the Plaintiffs' eighth cause of action, Defendant's fourth cause of

6   action, and Defendant's fourth affirmative defense, the Court only recounts the procedural history

7   relevant to the present motion.

8         In this case the parties stipulated to two rounds of motions for summary judgment in which

9   claims, counterclaims, and affirmative defenses would be resolved at two separate phases: "Phase

10  1" and "Phase 2".  *See* ECF No. 68.  On May 18, 2021, the Court granted Plaintiffs' motion for

11  partial summary judgment ("First MSJ Order") as to the Phase 1 issues and denied Defendants'

12  cross-motion for summary judgment.  *See* ECF No. 118.  The Court found that Plaintiffs

13  established trademark infringement under the Lanham Act and granted summary judgment as to

14  false designation of origin and false advertising, federal unfair competition, and state unfair

15  competition.  *Id.* at 22.  The First MSJ Order preliminarily enjoined Defendants from infringing on

16  the mark.  Defendants appealed the First MSJ Order based on the preliminary injunction.  *See* ECF

17  Nos. 121, 122.  The Ninth Circuit affirmed.  *See* ECF No. 140; *see also* ECF Nos. 141, 142.

18        On April 20, 2023, Plaintiffs moved for partial summary judgment to resolve the Phase 2

19  issues.  *See* ECF No. 183 ("MSJ").  Plaintiffs seek summary judgment on Plaintiffs' Digital

20  Millennium Copyright Act ("DMCA") claim, the breach of exclusive contract to government

21  counterclaim asserted in Defendant's Fourth Amended Counterclaim (ECF No. 177), and the

22  unclean hands affirmative defense asserted in Defendant's Answer to Plaintiffs' TAC (ECF No.

23  91).  Defendants oppose the motion.  *See* ECF No. 188 ("Opp'n to MSJ").  After the motion was

24  fully briefed and the Court heard oral argument, Defendants withdrew its unclean hands defense to

25  be dismissed upon final judgment.  ECF No. 215.

26        In addition to moving for summary judgment on the Phase 2 issues, Plaintiffs also moved

27  to strike the entirety of the December 22, 2022 expert report and exclude the testimony of

28  Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

7

1  Defendants' expert witness, Bradely M. Kuhn.  *See* ECF No. 181 ("Daubert Mot."); *see also* ECF

2  No. 181-2 Ex. 1 ("Kuhn Report").

3  **II.  *DAUBERT* MOTION**

4       Plaintiffs move to exclude the expert report of Bradley M. Kuhn ("Kuhn Report") as

5  irrelevant, prejudicial under Rule 403, inadmissible legal interpretation, and as inadmissible

6  speculation regarding Defendant's state of mind.  *See generally* Daubert Mot.

7       **A.  Legal Standard**

8       Courts act as gatekeepers of expert testimony to ensure that such testimony is reliable and

9  relevant under Federal Rule of Evidence 702.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147

10  (1999); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  The proponent of

11  expert testimony has the burden of proving admissibility.  *In re Korean Ramen Antitrust Litig.*,

12  281 F. Supp. 3d 892, 931 (N.D. Cal. 2017) (citations omitted).  Before an expert can offer his or

13  her opinions, they must be qualified by "knowledge, skill, experience, training, or education."

14  Fed. R. Evid. 702.  Once he or she is qualified, Rule 702 permits her to testify as long as "(a) the

15  expert's scientific, technical, or other specialized knowledge will help the trier of fact to

16  understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient

17  facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert

18  has reliably applied the principles and methods to the facts of the case."  *Id.*  This multifactor

19  inquiry is flexible, and "Rule 702 should be applied with a 'liberal thrust' favoring admission."

20  *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (citations omitted).

21       **B.  Discussion**

22            **1.  Relevancy of the Kuhn Expert Report**

23       Plaintiffs argue that the Kuhn Report is irrelevant based on two grounds: it is barred under

24  the Law of Case Doctrine and at is inadmissible hearsay testimony.  Defendants assert that Kuhn's

25  testimony is relevant and supports Defendants' unclean hands defense, the defense that Neo4j

26  violated the AGPL by adding restrictions, the estoppel defense, and the defense to the DMCA

27  claim.  Opp'n to Daubert Mot. at 6.

28  Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
8

*United States District Court*
*Northern District of California*

1    First, Plaintiffs contend that the Kuhn Report is irrelevant to the remaining issues in this

2    action because Kuhn interprets Section 7 (pertaining to further restrictions) of the Neo4j Sweden

3    Software License, and the parties have conclusively litigated whether Section 7 permits

4    Defendants to remove the Commons Clause from the license in Phase 1.  Daubert Mot. at 9.  The

5    stated purpose of the Kuhn Report is to address the issues arising from the "removal of the

6    Commons Clause" from the Neo4j Sweden Software License and Defendants' "redistribution of

7    the Neo4j software under the AGPLv3 with the [Commons Clause] removed."  Kuhn Report ¶ 2.

8    According to Plaintiffs, Defendants are barred under the law of case doctrine from relitigating the

9    Section 7 issue regarding the removal of the Commons Clause.  *See e.g.*, *Arizona v. California*,

10   460 U.S. 605, 618 (1983); *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993)

11   ("The law of the case doctrine states that the decision of an appellate court on a legal issue must be

12   followed in all subsequent proceedings in the same case.").  The Court agrees that testimony

13   relating to previously litigated issues is not relevant to the remaining disputed issues.

14   During Phase 1, Plaintiffs argued in their First MSJ Motion (ECF No. 98) that Defendants

15   made false statements in violation of the Lanham Act, which included "statements that ONgDB

16   and Neo4j Enterprise are "free and open source" versions of or alternatives to commercially

17   licensed Neo4j EE."  First MSJ Order at 24.  Plaintiffs argued these statements were false because

18   "the Neo4j Sweden Software License did not permit Defendants to remove the commercial

19   restrictions imposed by the Commons Clause."  *Id.*  The Court agreed and rejected Defendants'

20   argument that the Neo4j Sweden Software License permits licensees, such as Defendants, to

21   remove the Commons Clause and redistribute the software under the standardized AGPL license.[2]

22   *Id.*  The First MSJ Order also preliminarily enjoined Defendants from infringing on the mark.  *Id.*

23   at 32–34.  Defendants appealed the Court's order based on the preliminary injunction, and raised

24

---

25   [2]Although this finding was made with respect to Plaintiffs' false advertising under the Lanham
Act and UCL claims, the parties had agreed that "the truth or falsity of Defendants' statements

26   hinge on the interpretation of Section 7 [of the Neo4j Sweden Software License], and GFI's right

27   to remove the Commons Clause from the Neo4j Sweden Software License."  First Order at 24
(alteration in original) (quotations and citation omitted).

28   Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
9

United States District Court
Northern District of California

1    the Section 7 argument in their opening appellate brief, asserting that this Court incorrectly

2    concluded that copyright holders may add more restrictive terms to the AGPL and that

3    downstream users could not remove those terms.  ECF No. 181-5, Ex. 4 at 36–40.  The Ninth

4    Circuit affirmed, holding that "[t]he representation that ONgDB is a "free and open-source"

5    version of Neo4j® EE was literally false, because Section 7 of the Sweden Software License only

6    permits a downstream licensee to remove "further restrictions" added by an upstream licensee to

7    the original work.")  *Neo4j, Inc. v. PureThink, LLC*, No. 21-16029, 2022 WL 781037, at *1 (9th

8    Cir. Mar. 14, 2022).  That holding is now the law of the case, and Defendants have made no

9    showing that an exception to the doctrine should apply.[3]  *See Aquino*, 2018 WL 3845718, at *1.

10          Thus, the Court agrees that testimony relating to an issue that has already been decided in

11   this case is not relevant and permitting such testimony would not promote judicial efficiency.  *See*

12   *Allied Erecting & Dismantling Co. v. United States Steel Corp.*, No. 22-3585, 2023 WL 5322213,

13   at *5 (6th Cir. Aug. 18, 2023) ("[C]ourts have discretion to apply the law-of-the-case doctrine to

14   evidentiary rulings.") (citing *United States v. Todd*, 920 F.2d 399, 402–04 (6th Cir. 1990)).

15   Defendants had an opportunity to make their Section 7 argument on appeal—that Suhy

16   permissibly removed the Commons Clause from the Neo4j Sweden Software License—and it

17   cannot rehash this argument through expert testimony.

18          Second, Plaintiffs contend that Kuhn's Report is inadmissible hearsay testimony.  Daubert

19   Mot. at 17.  Based on his time volunteering and working at the FSF from 1996 until March 2005,

20   Kuhn opines on the Free Software Foundation's ("FSF") view of Neo4j Sweden's license and

21   whether Neo4j violated the AGPLv3's Further Restrictions Clause by including the Commons

22   Clause with the AGPLv3 in their license.  *Id.*; *see* Kuhn Report ¶¶ 12–13, 15–16, 19–21, 26 81–

23

---

24   [3] Defendants argue that the law of the case doctrine does not bar them from aguing this issue
25   partial summary judgment rulings are interlocutory orders not subject to appeal.  Opp'n at 4–6.
     Defendants' argument is unavailing.  On appeal, Defendants represented to the Ninth Circuit that
26   "the court's preliminary injunction is 'inextricably bound up' with its legal resolution of the
     summary judgment;" the Court agrees.  Reply to Daubert Mot. at 2–3; *see infra* Section II.B.1 at
27   14.  The law of the case doctrine bars consideration of those issues which have been decided, and
     the Ninth Circuit expressly addressed the Section 7 issue.

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
                                        10

85.  He purportedly bases his opinions, in part, on personal knowledge gleaned from internal discussions with unnamed "staff and Board members of the FSF," including "the GPLv3 drafters themselves," and his involvement "in the early stages of the public comment process for [drafting] the GPLv3 . . . regarding whether the Affero Clause would be incorporated into the GPLv3 itself, or remain a separate license from the main GPLv3" and committee participation.  Kuhn Report ¶¶ 18, 21, 23–24, 26, 52, 81.  Plaintiffs argue that Kuhn's testimony is offered for the truth of the matter asserted and that no hearsay exception is applicable.

Pursuant to Rule 703, "expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'"  *Daubert*, 509 U.S. at 595 (quoting Fed. R. Civ. P. 703).  In other words, experts may rely on hearsay in formulating expert opinions only if the hearsay is the 'type of information upon which experts may reasonably rely."  *United States v. Sims*, 514 F.2d 147, 149 (9th Cir. 1975).  Plaintiffs argue that the hearsay statements made by unnamed individuals relied on in the Kuhn Report are *not* the type of evidence on which an industry expert or an expert in license agreements could reasonably rely.  Daubert Mot. at 17.  Although the Kuhn Report purports to attach, *inter alia*, the "GPLv3 Second Discussion Draft Rationale" (Ex. C), the FSF's "Opinion on Additional Terms" (Ex. D), and the "GPLvs Third Discussion Draft Markup of Changes from Second Discussion Draft" (Ex. F), Plaintiffs contend that Defendants failed to produce markups and/or comments from the GPLv3 during discovery, failed to subpoena the FSF to authenticate these materials, or otherwise obtain the FSF's view on the AGPLv3.  *Id.*

While Kuhn may opine on matters within his experience in the software industry and with respect to software licensing, Kuhn may not state views of the FSF without proper attribution or foundation.  *Williams v. Illinois*, 567 U.S. 50, 50 (2012) (experts may not "act as mere conduits" for hearsay); *see People v. Veamatahau*, 9 Cal. 5th 16, 34 (2020) (experts may not "regurgitate information from another source without applying any of his or her own expertise").

United States District Court
Northern District of California

## 2.    Testimony Interpreting the Software License

Next, Plaintiffs contend that the Kuhn Report impermissibly opines on the meaning and interpretation of Section 7 of the Neo4j Sweden Software License. Dauber Mot. at 13. Plaintiffs seek to exclude paragraphs 51–61, 71–75, 76–78, 79–89, 96–97, 109–110 and 112 of the Kuhn report as inadmissible legal interpretation of the software license. *Id.* at 14.

It is well established that experts are prohibited from testifying about the law or providing legal meaning. *See, e.g.*, *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("[A]n expert witness cannot give an opinion as to her legal conclusion, *i.e.*, an opinion on an ultimate issue of law.") (quotations and citation omitted); *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) ("[Expert] testimony cannot be used to provide legal meaning or interpret the policies as written."); *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (explaining that the role of experts is to interpret and analyze factual evidence and not to testify about the law); *see also Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 509 (2d Cir. 1977) (excluding expert opinion "as to the meaning of the contract terms at issue").

The Kuhn Report contains numerous legal conclusions:

- "I conclude . . . that the Further Restrictions Clause was specifically design[ed] to allow removal of an additional term when a licensor chose to use the text of the GPLv3 and/or AGPLv3 along with a term that the licensee viewed as a "Further Restriction." Kuhn Report ¶ 61.

- "In my professional opinion, the Neo4j Sweden Software License is structured and presented precisely in the manner that the Further Restrictions Clause anticipated." *Id.* ¶ 72.

- "Specifically, I believe that the AGPLv3 contemplated this precise situation: namely, a licensor licenses under the unmodified text of the AGPLv3, but also includes another term that contradicts, limits, and/or restricts the permissions granted under the AGPLv3." *Id.* ¶ 73.

- "In my opinion, the Neo4j Sweden Software License itself gave Suhy, PureThink, LLC, and IGOV, Inc. this permission explicitly . . . ." *Id.* ¶ 76.

- "In my opinion, given the common FOSS practices of either explicitly or implicitly changing terms upon redistribution within the confines and requirements stated in the license, any reasonable party would determine that the Neo4j Sweden Software License intends — given that it was intentionally drafted to include the Further Restrictions Clause — that the [Commons Clause] can be removed by anyone who engages in redistribution (be it commercial or non-commercial) of the

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBER* MOT.
12

United States District Court
Northern District of California

software covered by the Neo4j Sweden Software License." *Id.* ¶ 78.

- "I believe that the Further Restrictions Clause was, in part, included in the GPLv3 and AGPLv3 to assure that the community could rely on the fact that if the text of the entire AGPLv3 was included in the licensing of some software, that Further Restrictions could not be placed on that software." *Id.* ¶ 83.

- "In my opinion, the Neo4j Sweden Software License intentionally includes the Further Restrictions Clause as a term of that license." *Id.* ¶ 109.

- "In my opinion, if a single firm failed to diligently and formally collect explicit, written relicensing permission from all contributors to all code that was licensed under AGPLv3, that distribution of the Neo4j software under the Neo4j Sweden Software License is in violation of AGPLv3 (wholly unrelated to the Further Restrictions Clause). If such rights have not been diligently and carefully collected and consolidated, no entity may engage in Proprietary Relicensing business nor issue the Neo4j Sweden Software License legitimately. In other words, without such consolidation of rights, the only legitimate license of the Neo4j software is AGPLv3." *Id.* ¶ 113.

Although these statements are couched in language suggesting that they are Kuhn's professional opinion or industry custom, they ultimately discuss whether Neo4j violated the AGPL's Further Restrictions Clause by adding the Commons Clause to the AGPL to create the Neo4j Sweden Software License. Kuhn's belief that it was permissible for Suhy to remove the Commons Clause is based in part on his interpretation of the Neo4j Sweden Software License and the AGPL's Further Restriction Clause.

In addition, paragraphs 74–75 of the Kuhn Report impermissibly opines that Suhy's removal of the Commons Clause from the license was "permitted":

- "If I had encountered the "Neo4j Sweden Software License" during the normal course of my work as a FOSS activist and FOSS licensing expert, I would have felt removal of the [Commons Clause] portion, upon redistribution of the software, was ***permitted*** by the AGPLv3's Further Restrictions Clause." Kuhn Report ¶ 74 (emphasis added).

- "In my opinion, when John Mark Suhy encountered the Neo4j Sweden Software License, his removal of the [Commons Clause] and redistribution of the Covered Work under pure AGPLv3 would be considered customary, ***permissible***, and even widely encouraged in the field of FOSS." *Id.* ¶ 75 (emphasis added).

Experts may not opine on whether conduct is or was legally acceptable or permissible. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (excluding sections of an exert report that described a parties' conduct as "wrongful").

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

13

United States District Court
Northern District of California

1    To the extent that Kuhn opines on the permissibility of Suhy's actions or the legal effect

2    and interpretation of any provision of the Neo4j Sweden Software License—such as what conduct

3    is permitted or not permitted under the license—such testimony is improper legal opinion.

### 3. Opinions on Defendants' State of Mind

5    Finally, Plaintiffs seek to exclude paragraphs 71–74, 76–78, and 79–89 of the Kuhn Report

6    as inadmissible opinions on Suhy's subjective intent in removing the Commons Clause from the

7    Neo4j Sweden Software License.  Daubert Mot. at 15.

8    Expert Witnesses may not opine on "the intent, motives, or states of mind of corporations,

9    regulatory agencies and others . . . . "  *Stone Brewing Co., LLC v. MillerCoors LLC*, No. 18-CV-

10   331, 2020 WL 907060, at *4 (S.D. Cal. Feb. 25, 2020) (quotations and citation omitted).

11   Paragraphs 88 and 89 describe how "Software users and/or redistributors" in Suhy's position

12   would have a good faith belief that the Commons Clause and any other additional restrictions in

13   an AGPLv3-based license could be removed pursuant to the Further Restrictions Clause.  Kuhn

14   Report ¶ 88 ("[T]he users and/or redistributors customarily believe ***in good faith*** that the choice of

15   licensing in this manner was intentional); *id.* ¶ 89 ("[U]sers and/or redistributors ***have a***

16   ***good faith basis*** to exercise any and all clauses of the AGPLv3 — including the Further

17   Restrictions Clause and its permission to strike and remove additional restriction clauses.")

18   (emphasis added).  Although these statements do not expressly reference Suhy, they describe an

19   individual in Suhy's position and impermissibly infer intent, motive, or state of mind from

20   "considerations on which persons in the field generally rely."  *Oracle Am., Inc. v. Hewlett Packard*

21   *Enter. Co.*, No. 16-CV-01393-JST, 2018 WL 6511146, at *3 (N.D. Cal. Dec. 11, 2018).  The trier

22   of fact is sufficiently capable of drawing its own inferences regarding whether Suhy believed in

23   good faith that his actions were permissible.  *See id.*

24   The remaining paragraphs identified by Plaintiffs do not specifically speak to Suhy's

25   intent, motive, or state of mind.  In fact, many of these paragraphs are appropriately characterized

26   as legal conclusions.  *See supra* Section II.B.2.  For example, paragraph 78 opines how a

27   "reasonable party" would interpret the intent of the Neo4j Sweden Software License.  Paragraph

28   Case No.: 5:18-cv-07182-EJD

ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

14

United States District Court
Northern District of California

United States District Court
Northern District of California

1    74 speaks more to the permissibility, *i.e.*, the "wrongfulness," of Suhy's conduct than to his intent

2    or state of mind, and paragraph 76 impermissibly interprets the legal effect of the Neo4j Sweden

3    Software License.

4         Accordingly, Kuhn may not opine about why Suhy (or any other person in this case) took a

5    particular action or made a particular decision.  *See Oracle Am., Inc.*, 2018 WL 6511146, at *3.

6              **4.        Conclusion**

7         In sum, the Court GRANTS Plaintiff's *Daubert* motion.  Much of the Kuhn Report

8    testimony relates to the Section 7 issue already decided in this case, and the law of the case

9    doctrine bars reconsideration of that issue.  *See Allied Erecting & Dismantling Co.*, 2023 WL

10   5322213, at *6 (affirming district court's exclusion of an expert report based on the law of the case

11   doctrine).  Moreover, because Defendants have withdrawn their unclean hands defense, and the

12   only remaining counterclaims and defenses are not addressed by, or related to, the Kuhn

13   testimony, the Court finds it appropriate to exclude the Kuhn Report in its entirety as not relevant.[4]

14   **III.      MOTION FOR PARTIAL SUMMARY JUDGMENT**

15        **A.        Legal Standard**

16        Summary judgment is proper where the pleadings, discovery, and affidavits show that

17   there is "no genuine issue as to any material fact and that the moving party is entitled to judgment

18   as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if it would affect the outcome of

19   the suit under the governing law, and a disputed issue is "genuine" if the "evidence is such that a

20   reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*,

21   477 U.S. 242, 248–49 (1986).

22        The party moving for summary judgment bears the initial burden of identifying those

23   portions of the record which demonstrate the absence of a genuine issue of material fact.  *See*

24   _____

25   [4] Defendants' remaining asserted affirmative defenses are waiver and set off, and the remaining
     asserted counterclaims are Defendants' Fourth Cause of Action for Breach of Exclusivity Contract

26   to Government against Neo4j USA (at issue in Plaintiffs' contemporaneously filed partial motion
     for summary judgment addressed Section III of this Order), and the Eighth Cause of Action for

27   Declaratory Relief that the Commons Clause in the AGPL does not Apply to Professional Services
     against Neo4j Sweden (also addressed in Section III of this Order).  *See* ECF No. 206 at 5.

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
                                              15

United States District Court
Northern District of California

1    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the nonmoving party bears the burden

2    of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is,

3    pointing out to the district court—that there is an absence of evidence to support the nonmoving

4    party's case." *Id.* at 325.  If the moving party can meet this initial burden, the burden then shifts to

5    the non-moving party to produce admissible evidence and set forth specific facts showing that a

6    genuine issue of material fact does indeed exist for trial.  *See Nissan Fire & Marine Ins. Co. v.*

7    *Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).  If the non-moving party produces

8    enough evidence to show a genuine issue of material fact exists, then it defeats the motion;

9    otherwise, the moving party is entitled to summary judgment.  *Id.*

10    In considering a motion for summary judgment, the Court must view the evidence in the

11    light most favorable to the non-moving party.  *See Tolan v. Cotton*, 572 U.S. 650, 655 (2014).

12    The Court may not weigh conflicting evidence as to a disputed fact nor may it make credibility

13    determinations; any disputed factual issues must be resolved in favor of the non-moving party.

14    *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

15    However, the Court need not credit the non-moving party's version of events where it is blatantly

16    contradicted by the record.  *See Orn v. City of Tacoma*, 949 F.3d 1167, 1171 (9th Cir. 2020).

17    **B.     Discussion**

18    Plaintiffs move for partial summary judgment on the following claims: (1) Plaintiffs'

19    DMCA claim; (2) Defendants' breach of contract counterclaim; and (3) Defendants' unclean

20    hands affirmative defense.  *See generally* ECF No. 183 ("MSJ").  Because Defendants have since

21    withdrawn the unclean hands defense (*see* ECF No. 215), the Court only addresses Plaintiffs' first

22    and second arguments.

23    **1.     Plaintiffs' DMCA Claim**

24    Plaintiffs' eighth cause of action asserts unauthorized distribution of altered CMI in

25    violation of the DMCA, 17 U.S.C. § 1202(b), against all Defendants.  TAC ¶¶ 166–73.

26    Plaintiffs allege that the Neo4j EE software was published and distributed with CMI that

27    includes the owner's name, a copyright notice, and a license providing the terms and conditions

28    Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
16

United States District Court
Northern District of California

1  for the use of copyrighted work. *Id.* ¶¶ 76, 168.  Plaintiffs allege that Defendants replicated the

2  Neo4j EE source code files and knowingly removed and/or altered and distributed their CMI in

3  violation of § 1202(b)(1) and (3), including licensing terms and conditions and 28 source code

4  files for the Neo4j EE platform. *Id.* ¶¶ 77, 169.  Suhy replaced the Neo4j Sweden Software

5  license with "a generic version of the APGLv3 thereby removing the additional license imposed

6  by the Neo4j Sweden Software License to prevent commercial abuse and other copyright

7  management information." *Id.* ¶ 77.  Defendants allegedly publicly distribute these altered source

8  code files as part of the ONgDB graph database software on iGov's website and Github

9  repository. *Id.*

10  To prove alteration or removal of CMI under § 1202(b)(1), Plaintiffs must demonstrate

11  that Defendants, (i) without the permission of the copyright owner, (ii) "intentionally remove[d] or

12  alter[ed] any copyright management information" (iii) with knowledge "or . . . having reasonable

13  grounds to know, that it will induce, enable, facilitate, or conceal an infringement . . . ."  17

14  U.S.C. § 1202(b).

15  To prove distribution of CMI under § 1202(b)(3), Plaintiffs must show that Defendants, (i)

16  without the permission of the copyright owner, (ii) "distribute[d], import[ed] for distribution, or

17  publicly perform[ed] works, copies of works, or phonorecords, knowing that copyright

18  management information has been removed or altered without authority of the copyright owner or

19  the law" (iii) with knowledge "or . . . having reasonable grounds to know, that it will induce,

20  enable, facilitate, or conceal an infringement . . . ."  17 U.S.C. § 1202(b).

21  CMI refers to, in relevant part:

22  [I]nformation conveyed in connection with copies or phonorecords of
a work or performances or displays of a work, including in digital
23  form, except that such term does not include any personally
identifying information about a user of a work or of a copy,
24  phonorecord, performance, or display of a work: (1) The title and
other information identifying the work, including the information set
25  forth on a notice of copyright.  (2) The name of, and other identifying
information about, the author of a work.  (3) The name of, and other
26  identifying information about, the copyright owner of the work,
including the information set forth in a notice of copyright . . . . (6)
27  Terms and conditions for use of the work. (7) Identifying numbers or
symbols referring to such information or links to such information.

28  Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
17

1    17 U.S.C.A. §§ 1202(c)(1)(3), (6)–(7).

2       As an initial matter, Defendants essentially argue that Suhy removed or altered the

3    Commons Clause, not Plaintiffs' CMI. *See, e.g.*, Undisputed Facts, Fact 51. Plaintiffs assert that

4    Suhy removed legal notices identifying Neo4j Sweden as the copyright holder and licensor. MSJ

5    at 6. It is undisputed that the Notice provision states that Neo4j EE is developed and owned by

6    Neo4j Sweden and that "[t]he NOTICE provision was found in a separate file called NOTICE.txt

7    which was always present next to the AGPL License file called LICENSE.txt." Undisputed Facts,

8    Fact 6. Defendants contend that "[t]he only files Mr. Suhy touched were the AGPL LICENSE.txt

9    files" which contained the commercial restrictions. *Id.*, Fact 14. Plaintiffs submit that during

10    Suhy's deposition, Suhy admitted to replacing the Neo4j Sweden Software License with a

11    "verbatim" copy of the standard AGPL, effectively removing the Commons Clause. Undisputed

12    Fact, Fact 12 "Additional Fact/Objection"; ECF No. 98-1, Ex. 3, 172:4–23, 200:5–12. According

13    to Plaintiffs, once the Licence.txt files were replaced with the standard AGPL, the cross-references

14    to the Licence.txt files in the Notice.txt files became "meaningless." Undisputed Fact, Fact 12

15    "Additional Fact." Removal or alteration of the Commons Clause as referenced by the CMI

16    satisfies the "removed or altered" prong under 1202(b)(3). *See Neo4j, Inc. v. Graph Found., Inc.*,

17    No. 5:19-CV-06226-EJD, 2020 WL 6700480, at *5 (N.D. Cal. Nov. 13, 2020) (finding that

18    "moving the CMI into separate NOTICE.txt files constitutes altering the CMI, and conveying the

19    Neo4j Sweden Software License without the Commons Clause constitutes removing CMI.").

20       With respect to the first prong of §§ 1202(b)(1) and 1202(b)(3), it is undisputed that

21    Plaintiffs did not give permission to Defendants to alter, remove, or distribute the copyright.

22    Undisputed Facts, Fact 16 ("Undisputed that Neo4j Sweden never gave Suhy permission to

23    remove Commons Clause or rename 'it' ONgDB and offer it for free under the AGPL."). The

24    second prong of § 1202(b)(3) is also satisfied because Suhy distributed Neo4j's source code

25    without the Neo4j Sweden Software License.[5] Undisputed Facts, Fact 19 ("Suhy made Neo4j

26

27    [5] Defendants challenge whether Plaintiffs can show that Suhy is responsible for distribution, *i.e.*,
making ONgDB publicly available, because "Defendants do not control GFI, nor control what is

28    Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

*(left margin, vertical)* United States District Court / Northern District of California

United States District Court
Northern District of California

1  Sweden's source code with its CMI removed publicly available via GFI's website and GitHub

2  repository for ONgDB."); *id.*, Fact 20 ("Suhy provided hyperlinks to potential users of Neo4j® EE

3  to download ONgDB from GFI's website and GitHub repository from his jmsuhy@purethink.com

4  email account."); *id.*, Fact 21 (" iGov's website provided links to potential users of Neo4j® EE to

5  download ONgDB directly from iGov and from GFI's website.").  For the reasons discussed

6  below, the Court finds that Plaintiffs have established the third prongs of §§ 1202(b)(1) and

7  1202(b)(3).

8        Plaintiffs contend that it is an undisputed fact that Neo4j Sweden owns the copyrights for

9  Neo4j EE Versions 3.4 and 3.5 and licensed them subject to the Neo4j Sweden Software License,

10  and that this license constitutes Neo4j Sweden's CMI because the "Notice" provision clearly states

11  that Neo4j® EE is developed and owned by Neo4j Sweden . . . and is subject to the terms of the

12  [AGPL], with the Commons Clause as follows . . . . "  MSJ at 9; *see* ECF No. 98-2, ¶ 11 and Ex.

13  3.  According to Plaintiffs, Defendants replaced the Neo4j Sweden Software License with the

14  generic AGLP, or in other words, Defendants deleted the commercial restrictions from the Neo4j

15  Sweden Software License, in effect stripping the license to the generic AGPL license.  MSJ at 6.

16  Plaintiffs allege that, by removing Neo4j's commercial restrictions and stripping down the CMI in

17  the license, Defendants violated commercial restrictions in the Neo4j Sweden Software license

18  and infringed Neo4j Sweden's copyrights.  *Id.* at 12–13.  Defendants then distributed that source

19  code as ONgDB graph database software "with the specific intent of providing an open-source,

20  restriction-free version of the software."  *Id.* at 13; *see also* Undisputed Facts, Fact 15

21  ("Undisputed that Mr. Suhy knew that Neo4j Sweden owned the copyright for Neo4j EE.").  Suhy

22  misled the IRS to believe that Graph Foundation, Inc. (and not Neo4j) licensed the software.

23  Undisputed Facts, Fact 45.  Defendants referenced the IRS's adoption of ONgDB to other

24  government agencies, *id.*, Fact 46, which Defendants allegedly did to encourage other government

25

26  _____

27  placed on GFI's Github or website."  Opp'n to MSJ at 17.  Defendants cite no case law or
   authority to support this argument.  In any event, it is undisputed that Suhy provided hyperlinks of
   the Neo4j EE to users of the website.

28  Case No.: 5:18-cv-07182-EJD
   ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

United States District Court
Northern District of California

1    agencies and contractors to do the same and pay Defendants for their support services.  *Id.*; *see id.*,

2    Facts 47, 49, 51.

3         With respect to the knowledge and intent prong, the statute requires that Defendants

4    "possess the mental state of knowing, or having a reasonable basis to know, that [their] actions

5    'will induce, enable, facilitate, or conceal' infringement."  *Stevens v. Corelogic, Inc.*, 899 F.3d

6    666, 673 (9th Cir. 2018).  For the reasons discussed below, the Court finds that Suhy has not

7    successfully argued lack of requisite knowledge or intent under § 1202(b).

8         It is undisputed that Plaintiffs historically offered a free and open-source version (Neo4j

9    CE) subject to the GPL and a commercial version (Neo4j EE) under both a paid-for commercial

10   license and the free AGPL license.  Undisputed Facts, Fact 3.  According to Neo4j, a commercial

11   license to Neo4j EE entitled a purchaser to use the product in a proprietary setting and to receive

12   professional support and services from Neo4j USA, software updates, and other assistance.  *Id.*

13   Defendants dispute that Neo4j EE commercial license was the only license that permitted

14   proprietary use of Neo4j EE.  *Id.*  According to Defendants, both the Neo4j EE commercial license

15   *and* the Neo4j EE free AGPL license permitted Suhy to use Neo4j EE in a proprietary setting "for

16   free."  *Id.*

17        Defendants' understanding of the Neo4j EE license stems from the AGPL license, which

18   contains the following language "[t]his Software is subject to the terms of the GNU Affero

19   General public License [AGPL] Version 3."  Suhy Decl., Ex. 7.  Defendants assert that this

20   language does not permit a licensor to use and alter the terms of the AGPL, and because the Neo4j

21   Sweden Software License is comprised of the language of the AGPL plus additional commercial

22   restrictions, Plaintiffs improperly altered the AGPL.  The gravamen of Defendants argument, then,

23   is that Suhy permissibly removed the Commons Clause and altered the CMI because Neo4j

24   Sweden does not own the copyright to the AGPL license, which forms part of the Neo4j Sweden

25   Software License.  Opp'n to MSJ at 12; *see* Undisputed Facts, Fact 1.

26        Defendants argue that the GPL and AGPL licenses are owned, copyrighted, and

27   trademarked by the FSF.  Opp'n to MSJ at 2, 12.  Defendants assert that the FSF license grants

28   Case No.: 5:18-cv-07182-EJD

ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

20

United States District Court
Northern District of California

1    Neo4J Sweden the license to use the GPL/AGPL copyrighted licenses under certain enumerated

2    restrictions.  *Id.*  One such restriction prohibits making changes to the license document terms.

3    Opp'n to MSJ at 6.  As noted, Defendants argue that Neo4j violated the FSF copyright license by

4    adding commercial restrictions to the AGPL license in violation of 17 U.S.C. §1202(a).  *Id.* at 3.

5    Therefore, Defendants argue that Suhy's removal and/or alteration of the Commons Clause and

6    CMI was not an "improper intentional act" in violation of the DMCA.  Rather, Defendants accuse

7    Plaintiffs of violating the AGPL by modifying it (*i.e.*, adding commercial restrictions such as the

8    Commons Clause and CMI) and, thus, Suhy "prevented further infringement" by removing the

9    offending terms.  Opp'n to MSJ at 13.

10          In sum, Defendants challenge whether they intentionally or knowingly removed CMI

11    pursuant to §§ 1202(b)(1) and (b)(3) because Defendants argue that Suhy purportedly only

12    intended to remove the improper addition to the AGPL license terms, *i.e.*, the commercial

13    restrictions in the Neo4j Sweden Software License, to prevent infringement to FSF's copyright.  In

14    support, Defendants include expert testimony of Dr. Kuhn opining that "Mr. Suhy's conduct in

15    removing the Common Clause was customary, permissible and widely encouraged."  Opp'n to

16    MSJ at 15 (citing Kuhn Report ¶ 75).

17          The Court is unpersuaded by Defendants' argument that Neo4j violated the FSF copyright

18    license.  The basis of Defendants' argument challenging the existence or ownership of the CMI

19    rests on whether Suhy believed that the FSF owned the copyright due to the inclusion of the

20    AGPL language in the Neo4j Sweden Software License.  Opp'n to MSJ at 12.  Even if true,

21    Defendants are not the owners of the copyright at issue and cannot enforce the FSF's copyright.

22    *Graph Found., Inc.*, 2020 WL 6700480, at *3 ("[W]hether Plaintiffs acted in accordance with the

23    copyright covering the AGPLv3 is not at issue before this Court, as Defendants are not entitled to

24    enforce the FSF's copyright.").  The issue before this Court, then, is whether the Neo4j Sweden

25    Software License permits the alleged removal or alteration of CMI in the Neo4j EE source code

26    such that Defendants' alleged distribution of the altered source is not actionable.

27          Plaintiffs argue that this issue has been decided by the Court's First MSJ Order granting

28    Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
21

United States District Court
Northern District of California

1    partial summary judgment such that the law of the case bars Defendants from rehashing a different

2    version of the same argument.  Reply at 2–3.  Under the law of the case doctrine, "when a court

3    decides upon a rule of law, that decision should continue to govern the same issues in subsequent

4    stages in the same case."  *United States v. Park Place Assoc.*, 563 F.3d 907, 925 (9th Cir. 2009).

5    It further provides "that the decision of an appellate court on a legal issue must be followed in all

6    subsequent proceedings in the same case."  *Herrington v. Cnty. of Sonoma*, 12 F.3d 901, 904 (9th

7    Cir. 1993) (quotations omitted).  As discussed in detail in Section II.B.1, the Court agrees with

8    Plaintiffs that Defendants are in effect barred from raising this argument again because they raised

9    a substantially similar argument in the prior MSJ that was decided against them in May 2021, that

10   was affirmed by the Ninth Circuit.  *See supra* Section II.B.1; s*ee* First MSJ Order at 24.

11       Defendants once again argue that the First MSJ Order is an interlocutory order and "the

12   Law of Case Doctrine does not apply to interlocutory orders," *Langevine v. District of Columbia*,

13   106 F.3d 1018, 1023 (D.C. Cir. 1997).  Opp'n to MSJ at 10.  *Langevine* stands for the

14   uncontroversial and longstanding rule that a trial court *may* reconsider or revise its own

15   interlocutory order.  *See Space Sys./Loral, Inc. v. Martin Marietta Corp.*, No. 95-CV-20122 SW,

16   1995 WL 562171, at *2 (N.D. Cal. Sept. 18, 1995) ("[A] district court has discretion to reconsider

17   its own interlocutory orders.") (citing *Milgard Tempering, Inc. v. Selas Corp. of America*, 902

18   F.2d 703, 715 (9th Cir. 1990)).  It does not suggest that this Court could not or should not be

19   guided by its previous findings in rendering a decision on a pending motion.  Moreover, this

20   action's procedural posture differs from *Langevine*.  Here, Defendants did not move for

21   reconsideration of the Court's First MSJ Order; instead, Defendants appealed the Court's First

22   MSJ Order because it enjoined Defendants from infringing on the mark.  The Ninth Circuit

23   affirmed the Court's entry of a preliminarily injunction enjoining Defendants from infringing on

24   the mark and, in doing so, it affirmed the Court's findings with respect to the Neo4j Sweden

25   Software License.

26       Defendants further argue that the appeal only addressed the preliminary injunction, since a

27   partial MSJ order is not appealable.  But the interpretation of Sections 7 and 10 of the Neo4j

28   Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
22

1  Sweden Software License in the First MSJ Order is relevant and applicable to Plaintiffs' DMCA

2  claim. *See* First MSJ Order at 24 ("The parties agree that the truth or falsity of Defendants'

3  statements hinge on "the interpretation of Section 7 [of the Neo4j Sweden Software License], and

4  GFI's right to remove the Commons Clause from the Neo4j Sweden Software License."); *id.* at 25

5  ("Thus, read correctly, Sections 7 and 10 prohibit a licensee from imposing further restrictions, but

6  do not prohibit a licensor from doing so.") (quoting *Graph Found., Inc.*, 2020 WL 6700480, at

7  *4). Defendants' appellate brief expressly argued that the Court's preliminary injunction ruling

8  was "inextricably bound" with the resolution of the summary judgment, *i.e.*, the Court's

9  interpretation of the Neo4j Sweden Software License. *See* ECF No. 181 at 12. Indeed, The Ninth

10  Circuit expressly affirmed that "Defendants' representation that ONgDB is a 'free and open-

11  source' version of Neo4j® EE was literally false, because Section 7 of the Sweden Software

12  License only permits a downstream licensee to remove 'further restrictions' added by an upstream

13  licensee to the original work." *Id.* (citing USCA Memorandum, ECF No. 140 at 3). The Court's

14  findings in the First MSJ Order, affirmed by the Ninth Circuit, address what Defendants now

15  argue with respect to the DMCA claim: that Suhy's removal of the Commons Clause from the

16  Neo4j Sweden Software License was proper. Pursuant to the Ninth Circuit's holding, the Neo4j

17  Sweden Software License does not permit a licensee, such as Suhy, to remove the CMI and

18  commercial restrictions imposed by the license.

19       Even setting aside these rulings, this Court has rejected the very argument that the AGPL

20  permits a licensee to remove CMI and/orcommercial restrictions from the Neo4j license. *See*

21  *Graph Found., Inc.*, 2020 WL 6700480, at *4. In *Graph Foundation*, the defendant similarly

22  argued that Neo4j Sweden could not draw terms from the AGPL and impose additional

23  restrictions, an argument which this Court rejected. *Id.* ("The Court, therefore, rejects the notion

24  that the terms drawn from the AGPLv3, on which the Neo4j Sweden Software License is based,

25  somehow limit the rights of Neo4j Sweden to include the Commons Clause or any other additional

26  restriction in its own copyright license."). In interpreting the AGPLv3, the Undersigned

27  concluded that it does not "give licensees the right to remove the [CMI]." *Id.*

28  Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

United States District Court
Northern District of California

1    For these reasons, the Court does not agree with the premise that Defendants' alleged

2    actions were contractually permitted and, therefore, rejects this argument as to Defendants' lack of

3    knowledge.  Thus, Plaintiffs have sufficiently shown knowledge as required under Section

4    1202(b), as well as the other requisite elements, in satisfaction of their burden.  Because

5    Defendants have not shown to the contrary, the Court GRANTS Plaintiffs' request for summary

6    judgment on the DMCA claim.

### a.    Injunctive Relief

7

8    The Copyright Act and the DMCA permits the Court to "grant temporary and permanent

9    injunctions on such terms as it deems reasonable to prevent or restrain a violation" of §1202(b).

10   17 U.S.C. §§ 502(a), 1203(b)(1).  Plaintiffs seek a preliminary injunction restraining Defendants

11   from further infringement of Neo4j Sweden's copyrights and violations of the DMCA.  MSJ at

12   15–16.  To obtain an injunction, a plaintiff must show: "1) that it has suffered an irreparable

13   injury; (2) that remedies available at law, such as monetary damages, are inadequate to

14   compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

15   defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved

16   by a permanent injunction." *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 948 (N.D. Cal.

17   2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) (citation omitted).

18   Plaintiffs argue that they have established all the requisite elements and are entitled to

19   injunctive relief.  First, Plaintiffs contend that they will suffer irreparable injury if the Court does

20   not enjoin Defendants from continuing to "relicense" Neo4j EE under the AGPL and falsely refer

21   to ONgDB and its derivatives as a "free and unrestricted" replacement for Neo4j EE.  MSJ at 15–

22   16; *see* Undisputed Facts, Facts 35–36.  Plaintiffs contend that by removing the commercial

23   restrictions from the Neo4j Sweden Software License, Defendants were able to convince the IRS

24   to download ONgDB software for free rather than acquire a commercial license from Plaintiffs.

25   MSJ at 7 (citing First MSJ Order at 6:21-26, 29:4-11, 29:22-30:6).  Plaintiffs allege that the IRS's

26   continued use of the improperly licensed ONgDB software and Suhy's maintenance of the

27   software is evidence that Suhy will continue this conduct unless enjoined.  *Id.*; *see id.* at 2.  The

28   Case No.: 5:18-cv-07182-EJD

ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

United States District Court
Northern District of California

1    Court agrees; "compelling support for a finding of irreparable harm" includes to a company's

2    "band, business, reputation, and goodwill." *Apple Inc.*, 673 F. Supp. 2d at 948; *see Rent-A-Ctr.,*

3    *Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

4        Second, Plaintiffs contend that the loss of control over licensing of the Neo4j EE

5    commercial license cannot be compensated by monetary damages alone. MSJ at 15. While

6    economic injury alone does not constitute irreparable harm, intangible injuries do. *Rent-A-Ctr.,*

7    *Inc.*, 944 F.2d at 603; *Apple Inc.*, 673 F. Supp. 2d at 949–50 ("[A]n award of damages would be

8    inadequate, simply because the harm caused to [the liscensor's] reputation, goodwill, and brand is

9    difficult, if not impossible, to quantify.").

10        Third, "courts must balance the competing claims of injury and must consider the effect on

11    each party of the granting or withholding of the requested relief." *Klein v. City of San Clemente,*

12    584 F.3d 1196, 1199–1200 (9th Cir. 2009) (internal citation omitted). Plaintiffs argue that the

13    balance of hardships weigh in their favor because "an injunction would serve the narrow purpose

14    of preventing or restraining further infringement of Neo4j Sweden's copyrights and violations of

15    the DMCA." *Id.* at 16. In contrast, Defendants cannot legitimately and reasonably assert that

16    refraining from violating the DMCA would impose a hardship on them. *Id.*; *see Apple Inc.*, 673 F.

17    Supp. 2d at 950 (reasoning that defendant "does not (and cannot) claim any *legitimate* hardships

18    as a result of being enjoined from committing unlawful activities."). Finally, Plaintiffs contend

19    that the only narrow purpose of the injunction is to vindicate Neo4j's rights in its copyright, and

20    the Court agrees. *Id.*

21        Defendants oppose injunctive relief but their opposition to Plaintiffs' request is based on

22    the same premise that the AGPL does not permit Neo4j to "convert" it into a commercial license.

23    Opp'n to MSJ at 24–25. For the reasons already discussed, this argument is unavailing.

24        For these reasons, the Court GRANTS Plaintiff's request for a preliminary injunction.

25            **2.**      **Defendants' Breach of Exclusivity Contract Counterclaim**

26        Next, Defendants allege that Neo4j USA and PureThink entered into the Exclusivity

27    Agreement permitting PureThink to sell Neo4j Government Edition to the U.S. Government.

28    Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

United States District Court
Northern District of California

1  Opp'n to MSJ at 24; *see* ECF No. 177 ¶¶ 53–57.  Plaintiffs contend they are entitled to summary

2  judgment on Defendants' counterclaim because Defendants have failed to show the existence of

3  an Exclusivity Agreement; even if there had been an Exclusivity Agreement, Plaintiffs argue that

4  Neo4j did not breach the purported contract.  MSJ at 21.

5      The alleged Exclusivity Agreement is based on a discussion between Neo4j COO Lars

6  Nordwall and Suhy and a letter provided to PureThink on April 11, 2015, and again on June 23,

7  2016.  FACC ¶ 16; *see id.* Exs. C, D.  The letter is addressed "[t]o whom it may concern" and

8  states that PureThink is "the only Neo4j Government Edition reseller" authorized to "resell and

9  support to the US Federal Government, Department of Defense (DOD), and Intelligence

10  Agencies."  *Id.*  It further states that "[t]his agreement can be provided to Government Agencies to

11  support any Federal Acquisition Regulation (FAR) regulations."  *Id.*  The letter is signed by both

12  Nordwall and Suhy.  *Id.*

13      On June 19, 2017, Neo4j emailed Defendants notice that Neo4j is "discontinuing [the]

14  Neo4j Government Edition effective June 19, 2017 such that it is no longer available for sale."

15  Decl. of Jeffrey M. Ratinoff, ECF No. 183-1 ("Ratinoff Decl."), Ex. 19.  Neo4j instructed Suhy

16  that "[a]ll references to Neo4j Government Edition must be removed immediately from any

17  marketing materials, including any web sites."  *Id.*  Approximately one month later, Plaintiffs

18  emailed Michael C. Dunn at IRS, notifying IRS of the termination of the Partnership Agreement

19  and offering assistance with transitioning to an authorized partner "to ensure IRS continues to

20  receive the support it requires in a manner that respects Neo's intellectual property rights and

21  contractual relationships."  FACC, Ex. D at 2.  It also states, in relevant part:

22      Neo understands that IRS entered into an agreement with PureThink
   in September 2016 to purchase a commercial license to Neo4j
23      Government Edition and for consulting services and support. We
   understand that the term of that agreement expires on September 22,
24      2017. We further understand that IRS paid PureThink $229,000 for a
   Neo4j subscription and the consulting services.

25      Regarding IRS's purchase of a Neo4j subscription, Neo still has not
   received a purchase order from PureThink. As a result of PureThink's
26      termination, please be advised that PureThink is no longer authorized
   to purchase a Neo4j subscription on behalf of IRS.  Neo will work
27      with IRS to purchase a subscription through an authorized Neo4j

28  Case No.: 5:18-cv-07182-EJD
   ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
                                   26

partner.

FACC, Ex. D (emphasis added).

Defendants allege that Plaintiffs breached this Exclusivity Agreement when Plaintiffs terminated the contract. Opp'n to MSJ at 22–23. Because the Exclusivity Agreement does not contain an express termination clause, Defendants contend that the Court must determine whether termination of the agreement would impliedly include protections for PureThink's up-front investment. *Id.* According to Defendants, "[a] fair analysis of the nature and circumstances of the Exclusivity Agreement would not permit a termination clause that permitted Neo4j USA to terminate PureThink as the exclusive reseller thereof without cause and without further compensating PureThink." *Id.* at 23 (quotations and citation omitted). PureThink allegedly spent $650,000 to "design, develop, and build" the Government Edition and suffered $1.3 million in damages as a result of Plaintiffs' breach. *Id.*; *see* ECF No. 177 ¶ 57.

Plaintiffs assert they are entitled to summary judgment on Defendants' counterclaim because Defendants have failed to establish the four requisite elements of a contract. Mot. at 20–21. Summary judgment is appropriate where the party claiming breach cannot establish one of the four essential elements. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiffs deny the existence of a separate Exclusivity Agreement, contending that Defendants cannot establish contract formation based on the letter because they never reached mutual assent or consented to any terms of any agreement. MSJ at 21.

Defendants argue that the Nordwell letter constitutes an enforceable contract, in part, because it expressly refers to an agreement. Opp'n to MSJ at 22; *see* FACC Ex. C ("This **agreement** can be provided to Government Agencies to support any Federal Acquisition Regulation (FAR) regulations.") (emphasis added). Moreover, it is undisputed that the letter is signed by both parties. Opp'n to MSJ at 22.

However, the purported Exclusivity Agreement lacks any contractual terms, and without express terms, the obligations that the parties have agreed to, and the scope of the duties, are unknown. "Under California law, a contract will be enforced if it is sufficiently definite (and this

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  is a question of law) for the court to ascertain the parties' obligations and to determine whether

2  those obligations have been performed or breached." *Bustamante v. Intuit, Inc.*, 141 Cal.App.4th

3  199, 208 (Cal. Ct. App. 2006) (finding that "because essential terms were only sketched out, with

4  their final form to be agreed upon in the future" such that "the parties had at best an 'agreement to

5  agree,' which is unenforceable."). "To be enforceable, a promise must be definite enough that a

6  court can determine the scope of the duty[,] and the limits of performance must be sufficiently

7  defined to provide a rational basis for the assessment of damages." *Id.* (alteration in original)

8  (quoting *Cal. Lettuce Growers v. Union Sugar Co.*, 45 Cal.2d 474, 481 (1955)). A contract that is

9  "so uncertain and indefinite" that the intention of the parties cannot be ascertained is void and

10  unenforceable. *Id.* at 209 (quotations and citations omitted). Here, the letter that forms the basis

11  of the Exclusivity Agreement contains only two sentences stating that PureThink is the only Neo4j

12  Government Edition Reseller and that the letter may be provided to government agencies. *See*

13  FACC Ex. C. Defendant argues that the agreement is "unambiguous" and, inexplicably argues

14  that "[t]he terms include the words "[t]his agreement." Opp'n at 22. But aside from the letter

15  referring to itself as "this agreement," it lacks any language indicating that the parties intended to

16  enter into an agreement or what obligations such an agreement would entail.

17      Even if the letter contained sufficient information to suggest the existence of a contract,

18  there appears to be no ambiguity as to the purpose of the letter and the meaning of "exclusive

19  reseller" in the context of the Government Edition. *See, e.g.*, *Wolf v. Superior Ct.*, 114 Cal. App.

20  4th 1343, 1350 (Cal. App. Ct. 2004), *as modified on denial of reh'g* (Feb. 19, 2004) (Courts may

21  look to extrinsic evidence to resolve ambiguous contact terms); *Walter E. Heller W., Inc. v.*

22  *Tecrim Corp.*, 196 Cal. App. 3d 149, 158 (Cal. Ct. App. 1987) ("[P]arol evidence is admissible to

23  aid in interpreting the agreement."). Plaintiffs contend that, as made clear by the Neo4j letter,

24  PureThink was permitted to act as the exclusive reseller of the Government Edition under the

25  Partnership Agreement, but that Neo4j USA never consented to or entered into a formal

26  exclusivity agreement with PureThink separate from the Partnership Agreement as Defendants

27  argue. MSJ at 21. According to Plaintiffs, the letter's language that PureThink is "the only Neo4j

28  Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
28

1    Government Edition reseller" refers to the fact that the Government Edition was created for "sole-

2    source justification," meaning that it enabled PureThink to bypass mandatory competitive bidding

3    processes and utilize a faster sole-source procurement track.  MSJ at 22.  The parties agree that the

4    Government Edition was created to address sole source justification, but Defendants argue that it

5    was also "designed to address the shortcomings that Neo4j Enterprise had at the time relating to

6    US government security and accessibility needs."  Undisputed Facts, Fact 66.  However, there is a

7    dearth of evidence in the record that the Government Edition was developed by Defendants for

8    PureThink's exclusive sale.

9        In emails sent by Suhy to Neo4j, Suhy acknowledges that PureThink is "the only reseller

10   of the Government Edition which allows *for sole source procurement justification for Federal*

11   *agencies*."  Ratinoff Decl., Ex. 14 at 4 (emphasis added).  In the same email, Suhy expressly

12   recognizes that the Government Edition was created to streamline government procurements.  *Id.*

13   He states:

14           We have all the necessary contractual paperwork for *sole source*
             *justification*. We have had several sole source procurements already.
15           I know that government procurement can provide quite a few
             obstacles, *which is why Neo Technology created the Government*
16           *Edition*.

17   *Id.* at 2 (emphasis added).  Earlier in the email thread, Suhy also states that "Neo4j Government

18   Edition is an official Neo Technology product specifically created for US Government

19   procurement."  *Id.* at 4.  Other emails from Suhy to Neo4j representatives refer to "create[ing]

20   something called the 'Government Edition' *so that we can more easily 'sole source' it to*

21   *government agencies*."  Ratinoff Decl., Ex. 10 (emphasis added).

22       Suhy's emails support a finding that the express intent of the letter and the

23   contemporaneous understanding between the parties at the time it was sent was that the

24   Government Edition was created for sole source justification so that PureThink could more

25   efficiently sell the package to various government agencies; it does not reveal an understanding

26   between the parties that the Government Edition was created for the purpose put forth by

27   Defendants.  *See* Cal. Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

United States District Court
Northern District of California

29

United States District Court
Northern District of California

1   mutual intention of the parties as it existed at the time of contracting").  "If there is no evidence

2   establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual

3   consent to contract and no contract formation." *Bustamante*, 141 Cal.App.4th at 208 (quoting

4   *Weddington Prods., Inc. v. Flick*, 60 Cal.App.4th 793, 811, 71 Cal.Rptr.2d 265 (Cal. Ct. App.

5   1998)).  "Mutual consent is determined under an objective standard applied to the outward

6   manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts,

7   and not their unexpressed intentions or understandings." *Id*. (quotations and citations omitted).

8   The evidence before the Court only shows that the parties mutually agreed that the Government

9   Edition allows for sole source procurement justification, and the Neo4j letter was provided so that

10   PureThink could bypass mandatory government bidding processes and fast track sole-source

11   procurement.

12       Although Suhy's emails reference an "exclusivity agreement," the language of the

13   "contract" attached to Suhy's email states that:

> **The purpose of this agreement is to ensure that US Federal, DOD and State governments can quickly** procure Neo4J Enterprise licenses via Sole-Source using the justification defined by Federal Acquisition Regulation 6.302-1 which states: "Only one responsible source and no other supplies or services will satisfy agency requirements."

17   Ratinoff Decl., Ex. 7 (emphasis added).  In Suhy's follow-up email inquiring whether Neo4j had

18   "any comments on the agreement," Neo4j responded that they were forwarding it to their legal

19   department for discussion. *Id.*  Neo4j did not, for example, express a different understanding of

20   PureThink being the "only reseller" of the Government Edition other than the clearly stated

21   understanding that the language was specifically used in the context of streamlining government

22   procurements of the Government Edition package.  The exchanges between the parties reveal that

23   the letter was essentially used to satisfy government bureaucracy to the benefit of each party.

24       Finally, the evidence before the Court suggests that, even if there was an Exclusivity

25   Agreement and the contractual obligations had been performed, Neo4j could not have breached

26   the agreement by terminating PureThink.  The "agreement" that Suhy provided to Neo4j states

27   that Neo4j may cancel "at any time for any reason."  Ratinoff Decl., Ex. 8.  Indeed, Suhy's email

28   Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
30

United States District Court
Northern District of California

1    to Erik Nolten at Neo4j expressly provides that "you can cancel the agreement tomorrow - for any

2    reason." Ratinoff Decl., Ex. 7.  A reasonable jury could not find, even if Suhy established the

3    existence of an Exclusivity Agreement, that Neo4j breached the agreement by terminating it

4    "without cause" as Defendants argue.[6]

5         In sum, Plaintiffs have met their burden.  Defendants have failed to product evidence

6    sufficient to establish the existence of a contract.  Because the existence of a contract is an

7    essential element of a breach of contract cause of action, Defendants counterclaim for Breach of

8    Exclusivity Contract fails.  Accordingly, the Court GRANTS Plaintiff's request for summary

9    judgment.

## IV.   CONCLUSION

11        For the foregoing reasons, the Court GRANTS Plaintiff's *Daubert* motion to exclude the

12   Kuhn Report in its entirety.

13        The Court also GRANTS Plaintiffs' motion for summary judgment in Plaintiffs' favor

14   with respect to Plaintiff's DMCA claim and Defendants' breach of contract claim.

15        The Court further ORDERS the following preliminary injunction against Defendants:

16   1) Defendants may not make further use of, or fork any source code first released under

17       the Neo4j Sweden Software License, including Neo4j EE 3.4, Neo4j EE 3.5, or any

18       subsequent versions, subversions or derivatives thereof.

19   2) Defendants may not make further use of, or fork any source code first released under a

---

[6] Defendants assert that consideration of Suhy's emails is barred by the parol evidence rule, but as the Court has made clear, the Neo4j letter cannot constitute a contract because it lacks any terms or any specific description of the parties' obligations and their scope.  Even if the Neo4j letter did contain definite terms to infer the existence of a contract, parol evidence and/or extrinsic evidence would be permitted to determine the parties' interpretation of "exclusivity" with respect to the Government Edition.  *Walter E. Heller Western, Inc.*, 196 Cal.App.3d at 158 ("When two equally plausible interpretations of the language of a contract may be made . . . parol evidence is admissible to aid in interpreting the agreement . . . .").  Likewise, evidence would be permissible to determine ambiguities—such as how and when the agreement may be terminated—although, here, extrinsic evidence still does not support the existence of a contract as discussed above.  *Wolf*, 114 Cal. App. 4th at 1350 ("Where the meaning of the words used in a contract is disputed, the trial court must provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning.").

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
31

commercial license, including Neo4j EE 3.5, Neo4j EE version 4.x, Neo4j EE version 5.x, or any subsequent versions, subversions or derivatives thereof.

3) Defendants shall not offer for sale, advertise or promote ONgDB, GraphStack GDB and GDB (and any derivative or similar software created and/or maintained by Defendants), or any other software containing Neo4j EE source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License.

4) Defendants shall not state, claim, advertise, or represent that Neo4j Sweden AB's inclusion of the Commons Clause to the license governing Neo4j EE violated the terms of the GNU Affero General Public License, version 3 ("AGPLv3"), or make similar statements interpreting the terms of the AGPLv3.

5) Defendants shall not state, claim, advertise or represent that the Free Software Foundation ("FSF") or that any government agency determined and/or confirmed that (a) the inclusion of the Commons Clause to any license governing Neo4j EE violated the terms of AGPLv3; and/or (b) the Commons Clause can be removed from any software license governing Neo4j EE and/or ONgDB.

6) Defendants may only make further use of the following publicly available Neo4j open source code, subject to the terms of their respective open source licenses: (i) Neo4j CE Source Code under the GNU General Public License, version 3 ("GPL"); (ii) Neo4j EE version 3.2.14 source code released under the AGPLv3; (iii) Neo4j EE version 3.3.10 source code released under the AGPLv3; (iv) Neo4j EE version 3.4.0.RC02 source code released under the AGPLv3. Nothing herein, however, shall be construed as a license or otherwise permit Defendants to use any source code, patches or source code commits for Neo4j EE version 3.3 or Neo4j EE version 3.4 that were first released under the Neo4j Sweden Software License. Further, nothing herein shall be construed as a license or otherwise permit Defendants to use or fork, any of Plaintiffs' source code that was first released as Neo4j EE version 3.5 or otherwise under the Neo4j Sweden Software License, including but not limited to, all beta releases, release

United States District Court
Northern District of California

1  candidates, production releases, stable releases, and official releases, or any subsequent

2  versions, subversions, patches or derivatives thereof.

3  7) Within three (3) days of entry of this Order, Defendants shall remove, take down,

4  destroy and prevent further access to all source code, object code, binaries, build files,

5  build scripts, plug-ins and distributions from any and all public and private repositories

6  (e.g., Docker, GitHub and GitLab) that they have access to, control and/or maintain,

7  including but not limited to

8  https://hub.docker.com/repository/docker/graphstack/ongdb,

9  https://hub.docker.com/repository/docker/graphstack/gdb,

10  https://github.com/graphstackio/gdb, that contains any Neo4j EE source code with a

11  DMCA Violation or that was first released subject to the Neo4j Sweden Software

12  License.  This includes, but is not limited to the removal of (a) ONgDB version 3.4,

13  ONgDB version 3.5, ONgDB version 3.6, ONgDB version 4.x, ONgDB version 2.x,

14  and any versions or subversions thereof; (b) GraphStack GDB version 3.4, GraphStack

15  GDB version 3.5, GraphStack GDB version 3.6, GraphStack GDB version 4.x, and any

16  versions or subversions thereof; and (c) GDB version 3.4, GDB version 3.5, GDB

17  version 3.6, GraphStack GDB version 4.x, and any versions or subversions thereof.

18  8) Within three (3) days of entry of this Order, Defendants shall permanently remove,

19  take down, destroy and prevent further access to any version of ONgDB, GraphStack

20  GDB and GDB (and any derivative or similar software created and/or maintained by

21  Defendants) that is within their possession, custody or control, contains any Neo4j®

22  Enterprise Edition source code with a DMCA Violation or that was first released

23  subject to the Neo4j Sweden Software License, including but not limited to (a) OngDB

24  version 3.4, OngDB version 3.5, OngDB version 3.6, OngDB version 4.x, OngDB

25  version 2.x, and any versions or subversions thereof; (b) GraphStack GDB version 3.4,

26  GraphStack GDB version 3.5, GraphStack GDB version 3.6, GraphStack GDB version

27  4.x, and any versions or subversions thereof; and (c) GDB version 3.4, GDB version

28  Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
33

3.5, GDB version 3.6, GraphStack GDB version 4.x, and any versions or subversions thereof. This removal and destruction shall be effectuated regardless of where that code resides, e.g., Defendants' websites (i.e., https://igovsol.com/, https://purethink.com/, https://graphstack.io/), and any the Content Delivery Services invoked therein), AWS, AWS Gov Cloud, Docker, GitHub, GitLab and/or any other source code repository or hosting service.

9)  Within three (3) days of entry of this Order, Defendants shall take down, delete and otherwise remove all webpages, posts on GitHub, discussion forums, social media posts on Twitter, Facebook, Instagram or similar social media sites, and blog posts (and all links thereto) that they own, control, or have the ability and/or right to remove that directs, redirects, offers, advertises, promotes, represents or refers to ONgDB, GraphStack GDB, GDB (and any derivative or similar software created and/or maintained by Defendants that is within their possession, custody or control) or any other software containing Neo4j® Enterprise Edition source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License.

10) Within fourteen (14) days of entry of this Order, Defendants shall provide a certification from the Internal Revenue Service (IRS) that all versions of ONgDB, GraphStack GDB and GDB, and all other source code and software that contains any Neo4j® Enterprise Edition source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License has been removed from the Internal Revenue Service's internal servers and repositories (i.e. GitLab and GitHub) and cloud storage (i.e. Gov Cloud). This includes, but is not limited to the removal of (a) OngDB version 3.4, OngDB version 3.5, OngDB version 3.6, OngDB version 4.x, OngDB version 2.x, and any versions or subversions thereof; (b) GraphStack GDB version 3.4, GraphStack GDB version 3.5, GraphStack GDB version 3.6, GraphStack GDB version 4.x, and any versions or subversions thereof; and (c) GDB version 3.4, GDB version 3.5, GDB version 3.6, GraphStack GDB version 4.x, and any versions or

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
34

United States District Court
Northern District of California

1        subversions thereof.

2        11) Defendants shall not offer for sale or provide for any paid development, support,

3            maintenance or hosting services for ONgDB, GraphStack GDB, GDB (and any

4            derivative or similar software created and/or maintained by Defendants), or any other

5            software containing Neo4j EE source code with a DMCA Violation or that was first

6            released subject to the Neo4j Sweden Software License. However, nothing herein

7            prevents Defendants from offering paid consulting services for installations of Neo4j

8            EE software, but only where the customer receiving such services has a commercial

9            license and has fully paid the commercial license fees to Plaintiffs.

10       12) Defendants shall not make any statement and/or representations to any third party,

11           affirmatively or in response to an inquiry, that state or imply that they can provide

12           access to or can obtain any software containing any Neo4j EE source code with a

13           DMCA Violation, that is subject to the Neo4j Sweden Software License, or not

14           otherwise permitted for use by Paragraph 6.

15       13) Defendants shall not have any expressed or implied license to use and shall not make

16           any further use of any of Plaintiffs' source code, object code, machine code and

17           software that is subject to a commercial license or paid commercial subscription,

18           including but not limited to Neo4j EE version 3.4, and all versions and subversions

19           thereof; Neo4j EE version 3.5, and all versions and subversions thereof; Neo4j EE

20           version 4.x, and all versions and subversions thereof; and Neo4j EE version 5.x, and all

21           versions and subversions thereof.  Nothing herein, however, restricts Defendants from

22           purchasing a commercial license or subscription to Neo4j EE software from Plaintiffs

23           or their authorized resellers.

24       The Parties are further ORDERED to file an amended Joint Final Pretrial Conference

25   Statement in light of this Order no later than **October 31, 2023**.

26

27

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

1    **IT IS SO ORDERED.**

2    Dated: October 25, 2023

3

4    _____

5    EDWARD J. DAVILA
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    Case No.: 5:18-cv-07182-EJD
      ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
                                    36

1  John V. Picone III, Bar No. 187226
   jpicone@hopkinscarley.com
2  Jeffrey M. Ratinoff, Bar No. 197241
   jratinoff@hopkinscarley.com
3  Arthur E. Rothrock, Bar No. 312704
   arothrock@hopkinscarley.com
4  HOPKINS & CARLEY
   A Law Corporation
5  The Letitia Building
   70 South First Street
6  San Jose, CA 95113-2406

7  *mailing address:*
   P.O. Box 1469
8  San Jose, CA 95109-1469
   Telephone:    (408) 286-9800
9  Facsimile:     (408) 998-4790

10 Attorneys for Plaintiffs and Counter-Defendants
   NEO4J, INC. and NEO4J SWEDEN AB
11

12                UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14 NEO4J, INC., a Delaware corporation,          CASE NO.  5:18-cv-07182-EJD
   NEO4J SWEDEN AB, a Swedish
15 corporation,                                  **PLAINTIFFS' REPLY IN SUPPORT OF
                                                 THEIR MOTION TO STRIKE THE
16                Plaintiffs,                    REPORT AND EXCLUDE THE
                                                 TESTIMONY OF DEFENDANTS'
17        v.                                     EXPERT WITNESS BRADLEY M. KUHN**

18 PURETHINK LLC, a Delaware limited             Date:        July 27, 2023
   liability company, IGOV INC., a               Time:        9:00 a.m.
19 Virginia corporation, and JOHN MARK           Dept.:       Courtroom 4, 5th Floor
   SUHY, an individual,                          Judge:       Hon. Edward J. Davila
20
                  Defendants.                    Trial Date: November 14, 2023
21

22 AND RELATED COUNTERCLAIMS.

23

24

25

26

27

28

4865-9680-8293.5

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF
DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

1

**TABLE OF CONTENTS**

2
**Page**

3    I.    INTRODUCTION ................................................................................................ 1

4    II.   LEGAL ARGUMENT ........................................................................................ 2

5          A.    Defendants Cannot Avoid the Law of the Case Doctrine Due to their
                 Unsuccessful Appeal of the Court's Summary Judgment Order ............................ 2

6          B.    Defendants Cannot Offer Mr. Kuhn's Testimony at Trial as a Means to
                 Seek Reconsideration of the Summary Judgment Order Pursuant to FRCP
7                59(e) ................................................................................................................. 4

8          C.    Mr. Kuhn's Opinions are Not Relevant to Plaintiffs' DMCA Claim, and
                 Impermissibly Provide a Legal Interpretation of the Provisions in the Neo4j
                 Sweden Software License and Mr. Suhy's Understanding Thereof .................... 7

9          D.    Mr. Kuhn's Opinions are Not Relevant to Defendants' Unclean Hands
                 Defense to Neo4j USA's Trademark Infringement Claims ................................ 9

10

11         E.    Mr. Kuhn's Personal Knowledge of FOSS Licensing and Prior Work at the
                 FSF Does Not Allow Him to Opine on the Legal Interpretation of Sections
12               7 and 10 in the Neo4j Sweden Software License............................................... 11

13         F.    Defendants Concede that Mr. Kuhn's Opinions on Neo4j Sweden's State of
                 Mind are Inadmissible and Should Be Excluded .............................................. 13

14         G.    Defendants Fail to Address Mr. Kuhn's Reliance on Inadmissible Hearsay........ 14

15         H.    Defendants Confirm Mr. Kuhn is an Advocate, Not an Expert, Rendering
                 His Opinions Inadmissible Under Daubert and Federal Rule of Evidence
                 403 ................................................................................................................... 14

16   III.  CONCLUSION ................................................................................................. 15

17

18

19

20

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4865-9680-8293.5                                             - i -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF
DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

1

## TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Ambrosia v. Cogent Commc'ns, Inc.*,
5      312 F.R.D. 544 (N.D. Cal. 2016) ............................................................................ 14

6

*AMTAX Holdings 279, LLC v. Montalvo Assocs., LLC*,
       No. 320CV02478BENAGS, 2022 WL 2784456 (S.D. Cal. June 6, 2022) .............................. 8

7

*Aquino v. Cnty. of Monterey Sheriff's Dep't*,
8      No. 5:14-CV-03387-EJD, 2018 WL 3845718 (N.D. Cal. Aug. 12, 2018) ...................... 2, 3, 6

9

*Arista Networks, Inc. v. Cisco Sys. Inc.*,
10     No. 16-CV-00923-BLF, 2018 WL 8949299 (N.D. Cal. June 15, 2018) ................................ 9

11

*Daubert v. Merrell Dow Pharm., Inc.*,
       43 F.3d 1311 (9th Cir. 1995).................................................................................. 10, 11

12

*Daubert v. Merrell Dow Pharms., Inc.*,
13     509 U.S. 579 (1993)........................................................................... 9, 11, 14, 15

14

*Dolby Labs. Licensing Corp. v. Adobe Inc.*,
       No. 18-CV-01553-YGR, 2019 WL 6327210 (N.D. Cal. Nov. 26, 2019)........................ 8, 13
15

16

*F.B.T. Prods., LLC v. Aftermath Records*,
       621 F.3d 958 (9th Cir. 2010).................................................................................. 13

17

*F.B.T. Prods., LLC v. Aftermath Recs.*,
18     No. CV073314PSGMANX, 2009 WL 10671243 (C.D. Cal. May 12, 2009) ...................... 13

19

*Herrington v. County of Sonoma*,
       12 F.3d 901 (9th Cir. 1993)...................................................................................... 2, 3
20

21

*Ins. Grp. Comm. v. Denver & R. G. W. R. Co.*,
       329 U.S. 607 (1947).................................................................................................. 3

22

*Interior Glass Sys., Inc. v. United States*,
23     No. 5:13-CV-05563-EJD, 2017 WL 1153012 (N.D. Cal. Mar. 28, 2017) ............................ 6

24

*Jacobsen v. Katzer*,
       535 F.3d 1373 (Fed. Cir. 2008)................................................................................ 8

25

*Kamakahi v. Am. Soc'y for Reprod. Med.*,
26     305 F.R.D. 164 (N.D. Cal. 2015) ............................................................................ 14

27

*United States ex rel. Kelly v. Serco, Inc.*,
       846 F.3d 325 (9th Cir. 2017)...................................................................................... 6
28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4865-9680-8293.5                              - ii -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF
DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

Page 3110

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Kona Enters., Inc. v. Estate of Bishop*,

4
    229 F.3d 877 (9th Cir. 2000)...................................................................................... 6

*Mango v. BuzzFeed, Inc.*,
5
    970 F.3d 167 (2nd Cir. 2020)..................................................................................... 9

6
*McHugh v. United Serv. Auto. Ass'n*,

7
    164 F.3d 451 (9th Cir. 1999)................................................................................ 8, 13

*Neo4j, Inc. v. Graph Found., Inc.*,
8
    No. 5:19-CV-06226-EJD, 2020 WL 6700480 (N.D. Cal. Nov. 13, 2020) ..................... 7, 8, 10
9

*Nucor Corp. v. Neb. Pub. Power Dist.*,
10
    891 F.2d 1343 (8th Cir. 1989) .................................................................................. 13

11
*O'Neill v. United States*,

12
    50 F.3d 677 (9th Cir. 1995)....................................................................................... 5

13
*Ollier v. Sweetwater Union High Sch. Dist.*,
    768 F.3d 843 (9th Cir. 2014).................................................................................... 15
14

*Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*,
15
    894 F.3d 1015 (9th Cir. 2018).................................................................................. 10

16
*Rissetto v. Plumbers and Steamfitters Local 343*,

17
    94 F.3d 597 (9th Cir. 1996)...................................................................................... 12

18
*Rupert v. Bond*,
    No. 12-CV-05292-BLF, 2015 WL 78739 (N.D. Cal. Jan. 6, 2015),
19
    *aff'd*, 771 F. App'x 777 (9th Cir. 2019)................................................................... 4

20
*S. Cal. Darts Ass'n v. Zaffina*,

21
    762 F.3d 921 (9th Cir. 2014)................................................................................... 10

22
*Sec. Investor Prot. Corp. v. Vigman*,
    74 F.3d 932 (9th Cir. 1996)....................................................................................... 6
23

*Solis v. Jasmine Hall Care Homes, Inc.*,
24
    610 F.3d 541 (9th Cir. 2010)..................................................................................... 3

25
*Tessera, Inc. v. Toshiba Corp.*,

26
    No. 15-CV-02543-BLF, 2019 WL 5395158 (N.D. Cal. Oct. 22, 2019)................................... 9

27
*Tveter v. AB Turn–O–Matic*,
    633 F.2d 831 (9th Cir. 1980).................................................................................... 10
28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4865-9680-8293.5                            - iii -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF
DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

Page 3111

**TABLE OF AUTHORITIES**
(continued)

Page

*United States v. King Features Ent., Inc.*,
    843 F.2d 394 (9th Cir. 1988) ............................................................................. 5, 13

*United States v. Shafi*,
    No. 15-CR-00582-WHO-1, 2018 WL 3159769 (N.D. Cal. June 28, 2018) ......................... 14

*Wapato Heritage, L.L.C. v. United States*,
    637 F.3d 1033 (9th Cir. 2011) .................................................................................. 12

*White v. California*,
    No. 5:15-CV-03521-EJD, 2017 WL 4642571 (N.D. Cal. Oct. 17, 2017) ........................... 5, 6

**Statutes**

17 U.S.C. § 1202(b)(1) ............................................................................................. 9

28 U.S.C. § 1292(a) ................................................................................................ 4

28 U.S.C. § 1292(a)(1) .......................................................................................... 2, 4

**Other Authorities**

Ninth Circuit Rule 36-3 ............................................................................................. 3

Fed. R. Civ. Proc. § 56(e) ........................................................................................ 4

Fed. R. Civ. Proc. § 59(e) ................................................................................... 1, 4, 6

Fed. Rule Evid. § 403 .......................................................................................... 14, 15

Fed. Rule Evid. § 702 .......................................................................................... 14, 15

Fed. Rule Evid. § 703 .......................................................................................... 14, 15

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4865-9680-8293.5                                                - iv -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF
DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

Page 3112

## I.    INTRODUCTION

Defendants' Opposition to Plaintiffs' Motion to Strike confirms that that the sole purpose of using Bradley Kuhn as a purported FOSS expert is to re-litigate this Court's interpretation of the Neo4j Sweden Software License.  Defendants' insistence that the law of the case doctrine does not bar them from offering Mr. Kuhn's opinions on the same issue because the Court only granted partial summary judgment is divorced from the procedural history of this case.  Defendants cannot ignore that their unsuccessful appeal of the Court's May 18, 2021 Summary Judgment Order and the Ninth Circuit's affirmation thereof conclusively establishes that Section 7 of the Sweden Software License did not permit Suhy as a downstream licensee to remove the Commons Clause as a "further restriction" added by the original licensor, Neo4j Sweden.

For this same reason, there is nothing for this Court to reconsider under Rule 59(e).  Even if there were, there was no "manifest injustice" since they agreed that the Court could interpret Section 7 and decide Defendants' right to remove the Commons Clause from the Neo4j Sweden Software License on summary judgment during Phase 1.  Defendants had a full and fair opportunity to present evidence supporting their arguments at that time, including an expert declaration, and as noted by this Court failed to do so.  Defendants also sought de novo review and lost thereby foreclosing any attempt by them to reopen that issue via Mr. Kuhn in Phase 2.

Defendants also cannot use Mr. Kuhn to manufacture extrinsic evidence to support their interpretation of the "further restrictions" provision, and the ultimate legal conclusions drawn to justify Suhy's removal of the Commons Clause from that license.  Ninth Circuit precedent makes clear that the interpretation of the contract is a question of law, and an expert witness thus cannot opine on the legal meaning of contracts as written.  Defendants' attempt to obfuscate what amounts to bare legal opinions by appending the words "custom and practice" to Mr. Kuhn's opinions underscores the impropriety of Mr. Kuhn's proposed testimony.

Finally, Mr. Kuhn's opinions are not relevant to any remaining issues in this case.  Defendants cannot use Mr. Kuhn to support Suhy's belief that he could remove the Commons Clause.  Nor can they use Mr. Kuhn to negate the intent element of Plaintiffs' DMCA claim under controlling Ninth Circuit precedent.  More importantly, since Defendants' unclean hands defense

4865-9680-8293.5

- 1 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

is limited to Neo4j USA's ***trademark*** infringement claims, Mr. Kuhn's opinions that Neo4j Sweden's ***copyright*** licensing practices were somehow inequitable bear no logical relationship to that defense. There is simply no basis for Defendants to offer the personal opinions of self-proclaimed open source activist into evidence as purported expert testimony. The Court should therefore strike Mr. Kuhn's report and prohibit him from testifying at trial, as well as make clear the law of the case doctrine bars Defendants from re-litigating the interpretation of Sections 7 and 10 of the Neo4j Sweden Software License at trial.

## II.    LEGAL ARGUMENT

### A.    Defendants Cannot Avoid the Law of the Case Doctrine Due to their Unsuccessful Appeal of the Court's Summary Judgment Order

Defendants do not refute that they are seeking to re-litigate the interpretation of the Neo4j Sweden Software via Mr. Kuhn's proposed testimony. *Compare* Dkt. No. 181 at 7:16-13:8 *and* Dkt. No. 186 at 4:12-6:8. Instead, they argue that the law of the case doctrine does not bar them from doing so because this Court only granted partial summary judgment. *See id.* Defendants completely ignore their strategic decision to use the issuance of the preliminary injunction to seek immediate appellate review of this Court's substantive findings underlying that injunction. The fact that their appeal was unsuccessful is inconsequential because "[t]he law of the case doctrine states that the decision of an appellate court on a legal issue ***must be followed in all subsequent proceedings in the same case***." *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) (internal quotations omitted, emphasis added); *accord Aquino v. Cnty. of Monterey Sheriff's Dep't*, No. 5:14-CV-03387-EJD, 2018 WL 3845718, at *1 (N.D. Cal. Aug. 12, 2018) (citing same in recognizing the Ninth Circuit's decision on an interlocutory appeal of the summary judgment order "was now law of the case").

The jurisdictional basis for Defendants' appeal further belies their assumption that the Court's summary judgment ruling remains a non-appealable interlocutory order. *See* Dkt. No. 186 at 5:6-9. In Appellants' Opening Brief ("AOB"), Defendants asserted that the Ninth Circuit had jurisdiction to hear an immediate appeal of that order under 28 U.S.C. § 1292(a)(1) because it was an appeal of a preliminary injunction. *See* Supplemental Declaration of Jeffrey M. Ratinoff ("Supp.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4865-9680-8293.5                                                           - 2 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF
DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

Page 3114

1  Ratinoff Decl."), Ex. A at 3 (Jurisdictional Statement) and 17 (Standard of Review).  Defendants

2  also represented that "the court's preliminary injunction is 'inextricably bound up' with its legal

3  resolution of the summary judgment; [the Ninth Circuit] therefore exercises plenary review." *Id.*

4  at 17.  Defendants then asked the Ninth Circuit to conduct ***de novo review*** of this Court's

5  substantive findings in the underlying Summary Judgment Order, including the interpretation of

6  Sections 7 and 10 of the Neo4j Sweden Software License. *Id.*

7  As detailed in Plaintiffs' moving papers, the correctness of this Court's interpretation of the

8  Neo4j Sweden Software License was subject to extensive briefing before the Ninth Circuit. *See,*

9  *e.g.,* Dkt. No. 181 at 11:19-12:20; Dkt. No. 181-1, Ex. 4 at 36-40; Ex. 5 at 47-54; Ex. 6 at 15-17.

10  The Ninth Circuit then ***conclusively affirmed*** that

11  > Defendants' representation that ONgDB is a "free and open-source"
12  > version of Neo4j® EE was literally false, because Section 7 of the
>  Sweden Software License only permits a downstream licensee to
13  > remove "further restrictions" added by an upstream licensee to the
>  original work.

14  Dkt. No. 140 at 3.  In doing so, the Ninth Circuit stated that its opinion ***was precedential for the***

15  ***purpose of the law of the case*** pursuant to Ninth Circuit Rule 36-3.  *Id.* at 1.  Consequently,

16  Defendants' attempt to re-litigate the interpretation of the meaning of "further restrictions" in the

17  Neo4j Sweden Software License by offering the purported "expert" testimony of Mr. Kuhn is in

18  clear violation of the law of the case doctrine. *See Herrington*, 12 F.3d at 904; *Aquino*, 2018 WL

19  3845718, at *1; *see also Ins. Grp. Comm. v. Denver & R. G. W. R. Co.*, 329 U.S. 607, 612 (1947)

20  ("When matters are decided by an appellate court, its rulings, unless reversed by it or a superior

21  court, bind the lower court.").

22  Finally, Defendants' reliance on a non-binding practice guide to argue that the Court's

23  summary judgment order remains an interlocutory order subject to a further challenge is misplaced.

24  Only one of the cases cited by that secondary authority, *Solis v. Jasmine Hall Care Homes, Inc.,*

25  610 F.3d 541, 543-544 (9th Cir. 2010), is precedential.  However, *Solis* is inapplicable in this case

26  because it merely addressed the gatekeeping issue of immediate appellate jurisdiction over

27  interlocutory orders, and if anything, undermines Defendants' position.  In *Solis*, the Ninth Circuit

28  dismissed an appeal of a partial summary judgment order for lack of jurisdiction, in part, because

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4865-9680-8293.5                                    - 3 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF
DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

Page 3115

1   none of the four exceptions to the interlocutory order rule under 28 U.S.C. § 1292(a) applied.

2       Defendants here relied upon one of those four exceptions—an appeal of a preliminary

3   injunction under 28 U.S.C. § 1292(a)(1) —to obtain interlocutory review of a partial summary

4   judgment order. *See* Supplemental Ratinoff Decl., Ex. A at 3 (Jurisdictional Statement: "The appeal

5   is from a preliminary injunction; jurisdiction lies in this Court under 28 U.S.C. § 1292(a)(1)").

6   Defendants thus cannot now argue that this Court's Summary Judgment Order remains

7   interlocutory in nature.  Accordingly, the Court should strike the Kuhn report in its entirety and

8   preclude him from testifying at any further proceedings pursuant to the law of the case doctrine.

9   **B.      Defendants Cannot Offer Mr. Kuhn's Testimony at Trial as a Means to Seek**

10          **Reconsideration of the Summary Judgment Order Pursuant to FRCP 59(e)**

11      Besides violating the law of the case doctrine, there is no basis for Defendants to offer

12   Mr. Kuhn's testimony to justify filing a motion for reconsideration pursuant to FRCP 59(e).

13   Defendants cite to no authority that would allow a trial court to revisit a ruling pursuant to

14   FRCP 59(e) already affirmed by an appellate court.  Even if the Ninth Circuit had affirmed this

15   Court's interpretation of the Neo4j Sweden Software License, Defendants' intent to seek

16   reconsideration under Rule 56(e) based on a "manifest injustice" is untenable.  A "manifest

17   injustice" is limited to an "error in the trial court that is direct, obvious and observable, such as a

18   defendant's guilty plea that is involuntary." *Rupert v. Bond*, No. 12-CV-05292-BLF, 2015 WL

19   78739, at *4 (N.D. Cal. Jan. 6, 2015), *aff'd*, 771 F. App'x 777 (9th Cir. 2019) (internal citation and

20   quotes omitted).  None of Defendants' arguments fall within the manifest injustice prong.

21      Instead, Defendants are seeking to revisit the Court's interpretation of the Neo4j Sweden

22   Software License based on Plaintiffs "prematurely" arguing the interpretation thereof during

23   Phase 1.  Dkt. No. 186 at 5:10-16, 16:5-14.  Defendants fail to cite to any stipulation or order that

24   precluded Plaintiffs from doing so.  Further dispelling any notion of a lack of due process is the

25   fact that they had ample notice and opportunity to argue their interpretation of the Neo4j Sweden

26   Software License in opposition to Plaintiffs' motion for summary judgment during Phase 1.  After

27   Plaintiffs raised the issue in their moving papers (Dkt. No. 98 at 30:19-28), Defendants filed a

28   cross-motion/opposition (Dkt. No. 100) and an additional reply brief (Dkt. No. 112).

4865-9680-8293.5                                    - 4 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF
DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

1    In their cross-motion/opposition, Defendants did not object and argue that it was premature

2 for the Court to resolve the parties' dispute over the meaning of "further restrictions" as used in the

3 Neo4j Sweden Software License.[1]  *See* Dkt. No. 100 at 28:15-29:7, 30:9-16.  Nor did they argue

4 that these provisions were ambiguous and attempt to bring in extrinsic evidence in the form of an

5 expert declaration.  *See id*.  Instead, Defendants **agreed** that the Court could decide the meaning of

6 "further restrictions" within the four-corners of the Neo4j Sweden Software License on summary

7 judgment during Phase 1.  Dkt. No. 118 at 24:7-15 ("The parties agree that the truth or falsity of

8 Defendants' statements hinge on 'the interpretation of Section 7 [of the Neo4j Sweden Software

9 License], and GFI's right to remove the Commons Clause from the Neo4j Sweden Software

10 License.'")  (quoting Defendants' cross-motion).

11    The Court then considered Defendants' arguments: "Defendants argue that there is a

12 reasonable interpretation of the Neo4j Sweden Software License that permits licensees, like GFI or

13 Defendants, to remove the Commons Clause and redistribute the software under the standardized

14 AGPL license. Cross-Motion at 27-30. The Court disagrees."  *Id.* at 24:7-25:12.  There was no

15 manifest injustice in the Court deciding that issue because "[s]ummary judgment is appropriate

16 when the contract terms are clear and unambiguous, even if the parties disagree as to their

17 meaning." *United States v. King Features Ent., Inc.*, 843 F.2d 394, 398 (9th Cir. 1988); *see also*

18 *O'Neill v. United States*, 50 F.3d 677, 682 (9th Cir. 1995) ("the determination of whether contract

19 language is ambiguous is a question of law").

20    As noted above, this Court's interpretation of the Neo4j Sweden Software License was the

21 subject of extensive briefing by the parties before the Ninth Circuit.  At no point during Defendants'

22 appeal did they argue that this Court committed reversible error by interpreting the key provisions

23 of that license during Phase 1.  *See, e.g.* Supp. Ratinoff Decl., Ex. A at 3-4 (Issues Presented).  As

24 explained in Plaintiffs' moving papers—and ignored by Defendants—" [a]rguments that a court

25 was in error on the issues it considered should be directed to the court of appeals." *White v.*

26

---

27 [1] The only issue subject to the parties' bifurcation agreement identified in Defendants' opposition

28 was the resolution of their unclean hands defense in Phase 2. Dkt. No. 100 at 6:21-7:4.

4865-9680-8293.5                                    - 5 -

1    *California*, No. 5:15-CV-03521-EJD, 2017 WL 4642571, at *1 (N.D. Cal. Oct. 17, 2017) (internal

2    quotations and citation omitted). Since Defendants lost their appeal of the exact issue they seek to

3    revisit via Mr. Kuhn's testimony, there is nothing for this Court to reconsider under Rule 59(e).

4    *See United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 336 (9th Cir. 2017) (a failure to

5    challenge particular grounds for a ruling on summary judgment in opening brief on appeal waives

6    a challenge to that ruling); *see also Aquino*, 2018 WL 3845718, at *1.

7           Notwithstanding the Ninth Circuit already affirming this Court's interpretation of the Neo4j

8    Sweden Software License, Defendants ***cannot*** seek relief under FRCP 59(e) "to raise arguments or

9    present evidence for the first time ***when they could reasonably have been raised earlier in the***

10   ***litigation***." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (emphasis

11   added); *accord Interior Glass Sys., Inc. v. United States*, No. 5:13-CV-05563-EJD, 2017 WL

12   1153012, at *3 (N.D. Cal. Mar. 28, 2017) (a party "cannot prevail under Rule 59(e) with new

13   arguments or evidence it could have submitted previously, but did not"). Plaintiffs cited evidence

14   in their moving papers establishing that Defendants could have offered this otherwise inadmissible

15   evidence in opposition to Plaintiffs' prior motion for summary judgment. Dkt. No. 181 at 20:2-

16   21:6. Plaintiffs also detailed how Mr. Kuhn's "opinions" amount to arguments that this Court ***and***

17   the Ninth Circuit already considered. *See, e.g., id.* at 8:5-11:18.

18          Defendants clearly did not heed the Court's previous warning that they could not "offer up

19   successively different legal or factual theories that could have been presented in a prior request for

20   review" under the law of the case doctrine. Dkt. No. 100 at 5:16–25 (quoting *Sec. Investor Prot.*

21   *Corp. v. Vigman*, 74 F.3d 932, 937 (9th Cir. 1996)) (quotations and citations omitted). To be sure,

22   Defendants fail to explain why they were unable to offer Mr. Kuhn's testimony on summary

23   judgment or how they are arguing anything new. As previously recognized by this Court, the

24   purpose of Rule 59(e) "is not to give an unhappy litigant one additional chance to sway the judge."

25   *White*, 2017 WL 4642571, at *1 (internal citation quotation omitted; emphasis preserved). This is

26   exactly what Defendants are now attempting to do with Mr. Kuhn. Accordingly, the Court should

27   strike the Kuhn Report in its entirety and exclude Mr. Kuhn from offering testimony base thereon.

28   / / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4865-9680-8293.5                                      - 6 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF
DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

Page 3118

**C.      Mr. Kuhn's Opinions are Not Relevant to Plaintiffs' DMCA Claim, and Impermissibly Provide a Legal Interpretation of the Provisions in the Neo4j Sweden Software License and Mr. Suhy's Understanding Thereof**

Defendants further argue that Mr. Kuhn's opinions are relevant to their defense to Plaintiffs' DMCA claim.  *See* Dkt. 186 at 6:9-9:14.  The premise of this argument is a misconceived notion that Defendants (and Mr. Kuhn) are entitled to enforce the FSF's copyright in the underlying AGPL by removing the Commons Clause as an impermissible "further restriction."  *Id.*  Defendants specifically argue that "[i]f the licensor is the only person who can remove and addition [sic], as the court has ruled, then the license agreement has been changed by Neo4J Sweden. But, under the copyright license for the AGPL, FSF which owns the copyright, granted a license allowing only verbatim copies with no changes allowed…." Dkt. No. 185 at 7:8-12.  Defendants conclude that Suhy was entitled to remove the Commons Clause from the Neo4j Sweden Software License to prevent "further infringement" of the FSF's copyright because Neo4j Sweden's "addition of the Commons Clause is not a verbatim copy of the AGPL…." *Id.* at 7:18-8:10; *see also id.* at 8:20-9:8 ("Mr. Kuhn's extensive background with the license can assist the trier of fact to determine this issue on whether Suhy's removal of the Commons Clause protects FSF's copyright from Neo4J Sweden's infringement…."); *id.* at 8:16-19 ("Neo4J Sweden could not change the license terms unless, as Mr. Kuhn states, they complied with change provisions. Kuhn Expert Report, ¶85. (change the name of the license and delete the preamble).").

Defendants fail to expound how Mr. Kuhn's testimony on the FSF's copyright in the AGPL is relevant to Plaintiffs' DMCA claim.  What is clear, however, is Defendants made the same argument in opposition to Plaintiffs' motion for summary judgment during Phase 1.  Dkt. No. 100 at 5:23-6:3, 29:14-23 and Dkt. No. 100, Ex. A at 42-43 (Defendant's response to UDF 113).  This Court then ***rejected*** "'the notion that the terms drawn from the AGPLv3, on which the Neo4j Sweden Software License is based, somehow limit the rights of Neo4j Sweden to include the Commons Clause or any other additional restriction in its own copyright license.'"  Dkt. No. 118 at 24:16-25:12, *quoting Neo4j, Inc. v. Graph Found., Inc.*, No. 5:19-CV-06226-EJD, 2020 WL 6700480, at *4 (N.D. Cal. Nov. 13, 2020) ("Defendants argue that Plaintiffs were not permitted to alter the form license agreement under the terms of the [FSF's] copyright over the form AGPLv3.

4865-9680-8293.5

- 7 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

But whether Plaintiffs acted in accordance with the copyright covering the AGPLv3 is not at issue before this Court, as Defendants are not entitled to enforce the FSF's copyright."). Defendants thus cannot use Mr. Kuhn to explain how and why Suhy believed he was preventing the infringement of the FSF's copyright by removing the Commons Clause.[2]

Defendants also concede that they are seeking to use Mr. Kuhn's testimony to negate the intent requirement of Plaintiffs' DMCA claim by explaining why Suhy understood the "further restrictions" provision in Section 7 permitted him to remove the Commons Clause. Dkt. No. 186 at 6:15-7:7 ("Mr. Kuhn explains the genesis and basis of the Further Restrictions clause and opines that Mr. Suhy followed the permission granted in the AGPL when removing the commons clause."); *id* at 13:6-9 ("Suhy relied on the standard of industry reading of the AGPL license. The "you" in the further restrictions clause is the licensee, the person reading it. He did not think that meant the person who uses the FSF license form. His understanding is supported by Mr. Kuhn."). Defendants disregard the controlling case law cited in Plaintiffs' moving papers, which makes clear that they cannot use an expert to interpret the provisions in the Neo4j Sweden Software License. *See McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) ("[expert] testimony cannot be used to provide legal meaning or interpret the [contracts] as written."); *Dolby Labs. Licensing Corp. v. Adobe Inc.*, No. 18-CV-01553-YGR, 2019 WL 6327210, at *2 (N.D. Cal. Nov. 26, 2019) ("[t]hat a dispute has arisen regarding contract interpretation does not mean that a third party may offer "opinions" to support one party's interpretation"); *see also AMTAX Holdings 279, LLC v. Montalvo Assocs., LLC,* No. 320CV02478BENAGS, 2022 WL 2784456, at *4 (S.D. Cal. June 6, 2022) (rejecting argument that proposed expert testimony was helpful to

---

[2] Defendants also erroneously argue, "Neo4J Sweden does not own the copyright to the AGPL. They cannot meet the requirements for a DCMA claim (ownership of the copyright)." Dkt No. 186 at 7:23-24. Again, only Neo4j Sweden's copyright in the underlying source code subject to the Neo4j Sweden Software License is relevant to Plaintiff's DMCA, not the FSF's copyright in the form AGPL. *See Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008) ("[c]opyright holders who engage in open source licensing have the right to control the modification and distribution of copyrighted material"); *accord Neo4j, Inc.*, 2020 WL 6700480, at *4 (citing same).

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4865-9680-8293.5                                     - 8 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF
DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

Page 3120

1    the trier of fact to gain pertinent factual background on the relevant portions of the disputed

2    agreements; and excluding the expert because the interpretation of the contract is a matter of law).

3         Likewise, Defendants ignore that Mr. Kuhn cannot opine on Suhy's mental state, such as

4    intent, motive, or knowledge. *See, e.g., Tessera, Inc. v. Toshiba Corp.*, No. 15-CV-02543-BLF,

5    2019 WL 5395158, at *14 (N.D. Cal. Oct. 22, 2019) (striking portions of an expert report that

6    plaintiff's intent, motive, and state of mind because "[s]uch testimony is not appropriate expert

7    testimony"); *Arista Networks, Inc. v. Cisco Sys. Inc.*, No. 16-CV-00923-BLF, 2018 WL 8949299,

8    at *3 (N.D. Cal. June 15, 2018) (excluding expert testimony because "[e]xperts may not speculate

9    about the state of mind . . . of others"). Even Mr. Kuhn could offer such testimony, it would still

10   be irrelevant to Plaintiffs' DMCA claim because they need only prove that Suhy had reasonable

11   grounds to know that his activities would induce or enable an infringement of Neo4j Sweden's

12   copyright in Neo4j® EE. 17 U.S.C. § 1202(b)(1); *accord Mango v. BuzzFeed, Inc.*, 970 F.3d 167,

13   171 (2nd Cir. 2020). Consequently, as discussed above and in Plaintiffs' moving papers, the Court

14   should (a) strike Paragraphs 51-61, 71-75, 76-78, 79-89, 96-97, 109-110 and 112 in Mr. Kuhn's

15   report and preclude him from testifying on the legal interpretation of the Neo4j Sweden Software

16   License; and (b) strike Paragraphs 71-75, 76-78, 79-89, 96-98 and 110-112 of Mr. Kuhn's report

17   and preclude him from testifying on Suhy's state of mind in removing the Commons Clause from

18   the Neo4j Sweden Software License. *See* Dkt. No. 181 at 13:9-15:26.

19        **D.    Mr. Kuhn's Opinions are Not Relevant to Defendants' Unclean Hands
                  Defense to Neo4j USA's Trademark Infringement Claims**

20

21        Defendants claim that the opinions in Paragraphs 90-98, 99-107 and 113 of the Kuhn report

22   are relevant to their unclean hands defense. Dkt. No. 186 at 9:15-11:6. In doing so, Defendants

23   reconfirm that this defense ***only*** applies to Neo4j USA's trademark infringement claims, and to

24   succeed thereon, they "must show that plaintiff used the trademark to deceive consumers." Dkt.

25   No. 186 at 9:17-25. None of Mr. Kuhn's opinions relate to Neo4j USA's use of the Neo4j Mark.

26   They are instead limited to interpreting the provisions of the AGPLv3 to justify Suhy's removal of

27   the Commons Clause. Thus, Mr. Kuhn's opinions are irrelevant to Defendants' unclean hands

28   defense, and as result are inadmissible. *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4865-9680-8293.5                              - 9 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF
DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

Page 3121

590-91 (1993) ("[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful"); *accord Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995) (courts should exclude expert testimony unless it "speaks clearly and directly to an issue in dispute in the case").

Nonetheless, Defendants try to connect *Neo4j USA's use of the Neo4j Mark* to sell software based on source code licensed by Neo4j Sweden under the Neo4j Sweden Software License with *Neo4j Sweden's use of the AGPL license*. Dkt. No. 186 at 10:3-15, 11:1-6. Their argument is untenable for at least two reasons.

First, it is undisputed that Neo4j Sweden is the licensor of source code for Neo4j® graph database software under the Neo4j Sweden Software License, and as previously recognized by the Court, this license and the AGPL "are copyright licenses, not trademark licenses." Dkt. No. 85 at 7:27-8:7. Consequently, *Neo4j Sweden's* copyright-based licensing practices subject to Mr. Kuhn's opinions do not bear the requisite "immediate and necessary" relationship to *Neo4j USA's* trademark infringement claims as a matter of law. *See S. Cal. Darts Ass'n v. Zaffina,* 762 F.3d 921, 932 (9th Cir. 2014); *see also Tveter v. AB Turn–O–Matic*, 633 F.2d 831, 839 (9th Cir. 1980) (plaintiff's use of "patent pending" in connection with trademark at issue when no patent application was on file did not bar claims for trademark infringement and unfair competition). For this same reason, Mr. Kuhn's attempt to contrast Neo4j Sweden and MongoDB's respective use and modification of the AGPL bears no relevancy to Neo4j USA's trademark infringement claims. *See* Dkt. No. 186 at 10:7-9, 10:16-20; Kuhn Report, ¶¶ 90-99.

Second, as conclusively determined by this Court (and affirmed by the Ninth Circuit), Neo4j Sweden did not "violate" the AGPL by adding the Commons Clause to create the Neo4j Sweden Software License. *See* Dkt. No. 118 at 22:23-28:24, *aff'd* Dkt. No. 140; *see also Neo4j, Inc. v. Graph Found., Inc.*, 2020 WL 6700480, at *4. Thus, even if Defendants could show an immediate and necessary relationship with Neo4j USA's trademark usage and Neo4j Sweden's copyright licensing practices, they still cannot show any inequitable conduct related thereto. *See Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1029 (9th Cir. 2018) ("only a showing of wrongfulness, willfulness, bad faith, or gross negligence, proved by clear and convincing evidence,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4865-9680-8293.5                                                   - 10 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF
DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

Page 3122

1    will establish sufficient culpability for invocation of the doctrine of unclean hands.").

2         Lastly, Defendants argue that they intend to use Mr. Kuhn to establish that Neo4j Sweden

3    engaged in unclean hands because it allegedly "does not own the complete code to Neo4j, licensing

4    it to Neo4J USA with a non AGPL license is a violation of the AGPL." Dkt. No. 186 at 10:21-25,

5    13:22-14:3. Their argument is invalid since Defendants represented to the Court that they are ***not***

6    asserting an unclean hands defense to Neo4j Sweden's DMCA claim. Dkt. No. 91 at 16:20-19:7;

7    Dkt. No. 169 at 10:4-8. Even if Defendants had broadened their unclean hands defense, this theory

8    does not bear an "immediate and necessary" relationship to Neo4j Sweden's DMCA claim. The

9    only alleged DMCA violation is Defendants' unauthorized removal of CMI from 28 copies of the

10   Neo4j Sweden Software License that governed 182 source code files in Neo4j® EE. Dkt. No. 90

11   at ¶¶ 76-78, 166-173; Dkt. No. 183 at 6:18-7:4, 9:27-10:10. As confirmed by Defendants' verified

12   interrogatory response, Neo4j Sweden only released those files under the Neo4j Sweden Software

13   License. Dkt. No. 98-1, Ex. 38 at 6:23-16:24. In other words, Neo4j Sweden ***never released these***

14   ***files under the AGPL.*** Since no third party could have modified or contributed to them under the

15   AGPL, it is impossible for Neo4j Sweden to have "violated" that license as posited by Defendants.

16   The Court should therefore strike Paragraphs 90-98, 99-107 and 113 of the Kuhn Report as

17   irrelevant and inadmissible, and preclude him from testifying on the opinions disclosed therein.[3]

18   *Daubert,* 509 U.S. at 590-91; *Daubert,* 43 F.3d at 1321 n.17.

19       **E.**    **Mr. Kuhn's Personal Knowledge of FOSS Licensing and Prior Work at the**
20             **FSF Does Not Allow Him to Opine on the Legal Interpretation of Sections 7**
               **and 10 in the Neo4j Sweden Software License**

21        Defendants claim that Mr. Kuhn allegedly created the "Affero concept used in the AGPL"

22

23   [3] Even if Mr. Kuhn's opinion that Neo4j Sweden allegedly violated the AGPL was relevant, it

24   would still be inadmissible as rank speculation. *See Daubert*, 509 U.S. at 590, 597. Mr. Kuhn

25   merely posits that Neo4j Sweden may not have obtained contributor licenses from third parties that
     authored source code used in Neo4j® software licensed under the AGPL. Mr. Kuhn does not cite

26   a single document produced by Plaintiffs in support of his opinion. *See* Kuhn Report, ¶¶ 99-107.

27   Yet, he still concludes that if Neo4j Sweden failed to obtain such licenses, its "distribution of the

28   Neo4j software under the Neo4j Sweden Software License is in violation of AGPLv3." *Id.*, ¶ 113.

Hopkins & Carley
Attorneys At Law
San Jose ● Redwood City

4865-9680-8293.5               - 11 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF
DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

Page 3123

1  and "was involved in the Further Restriction Clause addition to the revised AGPL." Dkt. No. 186

2  at 11:10-15 (citing Kuhn Report, ¶¶ 4-28).[4]  Based on this knowledge and experience, they argue

3  that Mr. Kuhn is qualified to interpret the "further restrictions" provision in the AGPL, and "who

4  is the 'you' who may remove further restrictions." *Id.* at 11:16-23.  Defendants insist such testimony

5  is admissible because this Court only reached this issue in the GFI Action "without the benefit of

6  evidence on this ambiguous term." *Id.* 11:23-12:2.

7    Defendants intentionally misrepresent the procedural history in this case.  As detailed

8  above, the parties fully litigated their respective interpretations of "further restrictions" provisions

9  and whether Mr. Suhy could remove such restrictions ***in this case***.  *See* Dkt. No. 118 at 22:23-

10  28:24, *aff'd* Dkt. No. 140.  Instead of arguing that these provisions in the Neo4j Sweden Software

11  License were ambiguous, Defendants argued that the meaning of "you" could be ascertained from

12  Section 0 of the Neo4j Sweden Software License, and that the Court could determine the meaning

13  of "further restrictions" as used in Sections 7 and 10 on summary judgment. Dkt. No. 100 at 28:15-

14  29:27.  Defendants are therefore judicially estopped from now taking a contrary position.  *See*

15  *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996) (doctrine of

16  judicial estoppel "precludes a party from gaining an advantage by taking one position, and then

17  seeking a second advantage by taking an incompatible position").

18    Defendants' now-contrary position that these terms are ambiguous also does not make it so.

19  *Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033, 1039 (9th Cir. 2011) ("[t]he fact that

20  parties to a contract dispute its meaning does not, ipso facto, mean that the contract is ambiguous").

21  As recognized by this Court, the terms "you" and "further restrictions" were clearly defined in

22  Section 0 and Sections 7 and 10, respectively.  Dkt. No. 24:19-25:18; *aff'd* Dkt. No. 140 at ¶ 3.

23    Defendants further argue that Mr. Kuhn should be able to testify that Suhy's removal of the

24

25

26

27

28

---

[4] While Mr. Kuhn may have been the author of the "Affero Clause", he does not claim to be the author of the AGPL or the further restrictions provision therein.  Instead, he claims to have been involved in the public comment process with GPLv3 that shares similar provisions with the AGPLv3.  Kuhn Report, ¶¶ 18, 23-25.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4865-9680-8293.5
- 12 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF
DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

Page 3124

1   Commons Clause because it was "customary and permissible and even widely encouraged in the

2   field of FOSS." Dkt. No. 186 at 9:9-14, 13:10-14 (citing Kuhn Report, ¶¶ 27-75, 78). It is well-

3   established that experts cannot offer legal opinions regarding how to interpret a contract simply by

4   characterizing those opinions as being based on "custom and usage." *F.B.T. Prods., LLC v.*

5   *Aftermath Recs.*, No. CV073314PSGMANX, 2009 WL 10671243, at \*7 (C.D. Cal. May 12, 2009);

6   *accord Dolby Labs.*, 2019 WL 6327210, at \*2. This is especially true here where the terms of the

7   Neo4j Sweden Software License are clear and unambiguous, and Mr. Kuhn's interpretation thereof

8   is clearly "attorney argument dressed in the guise of 'custom and practice.'" [5] *See id.; see also*

9   *King Features Ent.*, 843 F.2d at 398.

10      Finally, Defendants argue that Mr. Kuhn will testify that Suhy was justified in removing

11   the Commons Clause from the Neo4j Sweden Software License because "Neo4j Sweden had other

12   license options" instead of simply adding that clause to the AGPLv3. Dkt. No. 186 at 13:16-21,

13   14:4-11. Defendants unsuccessfully made the same argument in opposition to Plaintiffs' first

14   motion for summary judgment: "If Sweden did not want the Commons Clause removed, they could

15   have used a different license form. They chose to use the well-known AGPL license form and USA

16   cannot complain of the impact of the terms Sweden choose." Dkt. No. 100 at 30:9-16. The Court

17   rejected this argument. Dkt. No. 118 at 24:16-25:19. Defendants do not get second chance by

18   rebranding what amounts to attorney argument as an "expert opinion." *See F.B.T. Prods.*, 2009 WL

19   10671243, at \*7; *Dolby Labs.*, 2019 WL 6327210, at \*2.

20   **F.    Defendants Concede that Mr. Kuhn's Opinions on Neo4j Sweden's State of Mind are Inadmissible and Should Be Excluded**

21

22      Plaintiffs argue in their moving papers that Paragraphs 96-98 and 111-112 of the Kuhn

23   Report amount to inadmissible opinions on Neo4j Sweden's alleged intent and motivation for

24   _____

25   [5] Defendants cite to *Nucor Corp. v. Neb. Pub. Power Dist.*, 891 F.2d 1343 (8th Cir. 1989) to argue

26   that Mr. Kuhn may testify and define "technical terms" used in a particular industry. *See* Dkt.
    No. 186 at 12:16-25. That case is not controlling and conflicts with overriding principle that the

27   language of the contract governs its interpretation where it is clear and explicit. *See F.B.T. Prods.,*

28   *LLC v. Aftermath Records*, 621 F.3d 958, 963 (9th Cir. 2010); *see also McHugh*, 164 F.3d at 454.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4865-9680-8293.5                                             - 13 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF
DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

Page 3125

1   adding the Commons Clause to the AGPLv3. Dkt. No. 181 at 14:19-25. Defendants concede this

2   point and indicate that they "have no issue" with striking those paragraphs. Dkt. No. 186 at

3   14:19-25. The Court should thus do so and exclude him from testifying on all matters pertaining

4   to Neo4j Sweden's state of mind at the time it drafted the Neo4j Sweden Software License.

### G.     Defendants Fail to Address Mr. Kuhn's Reliance on Inadmissible Hearsay

6   Plaintiffs' moving papers identify specific instances where Mr. Kuhn's opinions rely on

7   inadmissible hearsay consisting of his internal discussions with unnamed "staff and Board members

8   of the FSF" persons at the FSF, including "the GPLv3 drafters themselves", as well as comments

9   from anonymous persons during that drafting process of the GPLv3. *See* Dkt. No. 181 at 17:10-

10  18:10. Defendants' opposition does not substantively address these infirmities and Mr. Kuhn's

11  impermissible attempt to attempt to speak on behalf of the FSF. Dkt. No. 186 at 15:2-5. Defendants

12  simply conclude that "[u]nder FRE § 702, evidence which supports an opinion need not be

13  admissible." *Id.* Their failure to explain how Mr. Kuhn's testimony would be admissible ***under***

14  ***FRE 703*** as the kind reasonably relied on to form opinions in the field warrants striking Paragraphs

15  18, 23-24, 26, 44-48, 52-56, 58 and 81 of the Kuhn Report. *See United States v. Shafi*, No. 15-CR-

16  00582-WHO-1, 2018 WL 3159769, at *5 (N.D. Cal. June 28, 2018).

### H.     Defendants Confirm Mr. Kuhn is an Advocate, Not an Expert, Rendering His Opinions Inadmissible Under *Daubert* and Federal Rule of Evidence 403

19  Defendants insist that Mr. Kuhn is an independent expert, while simultaneously admitting

20  in a heading of their brief that Mr. Kuhn "is advocating for open source software." Dkt. No. 186

21  at 15:6-9. Defendants then argue only court-appointed experts are not allowed to be advocates for

22  the party. This ignores that under *Daubert* and FRE 403 and that courts may exclude an expert

23  ***retained by a party*** where that expert is engaging in what amounts to lawyerly advocacy. *See*

24  *Daubert*, 509 U.S. at 595; *see also Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 176

25  (N.D. Cal. 2015) (noting objection is appropriate "[w]here an 'expert report' amounts to written

26  advocacy ... akin to a supplemental brief") (quotation marks omitted); *Ambrosia v. Cogent*

27  *Commc'ns, Inc*., 312 F.R.D. 544, 549 fn 3 (N.D. Cal. 2016) (excluding expert report that was

28  "clearly is advocacy couched as expert opinion") (citing same).

4865-9680-8293.5                                       - 14 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF
DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

1    Defendants also fail to reconcile that Mr. Kuhn's opinions parrot the same legal arguments

2    Defendants made in opposition to Plaintiffs' motion for summary judgment and unsuccessful

3    appeal of the Court's order granting that motion.  Mr. Kuhn's arm-chair lawyering is also readily

4    apparent in his public criticism of the Ninth Circuit affirming this Court's findings that the Neo4j

5    Sweden Software License does not authorize downstream licensees to remove restrictions imposed

6    by the original licensor. Dkt. No. 181-1, Exs. 10-11. Mr. Kuhn is admittedly not a legal expert,

7    which reduces his report to the personal opinions of a self-described "FOSS activist."  *See* Kuhn

8    Report, ¶¶ 34, 74; *see also* Dkt. No. 181-1, Exs. 10-11. And the Ninth Circuit has stated that the

9    personal opinions of an expert witness are "inadmissible as a matter of law under [Federal] Rule

10   [of Evidence] 702." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014).

11   **III.    CONCLUSION**

12   For the reasons discussed above and in Plaintiffs' moving papers, the Court should strike

13   the Kuhn Report and preclude Mr. Kuhn from testifying on the opinions disclosed therein pursuant

14   to FRE 702, FRE 703 and *Daubert* because they are unreliable, irrelevant and not within the proper

15   scope of expert testimony.  The Court should also exclude them under FRE 403 because they will

16   only confuse the issues and will waste the time and resources of the Court, the jury, and the parties.

17   Plaintiffs also respectfully request that the Court exclude Mr. Kuhn's report to the extent that

18   Defendants cite to and rely upon it in opposition to Defendants' motion for summary judgment.

19   *See, e.g.,* Dkt. No. 188 at 11:18-13:19, 14:12-15:16, 16:12-25, 17:9-19:6, 19:20-20:23.

20   Dated:  June 5, 2023                              HOPKINS & CARLEY
                                                        A Law Corporation
21

22                                                      By: */s/ Jeffrey M. Ratinoff*
                                                           John V. Picone III
23                                                         Jeffrey M. Ratinoff
                                                           Arthur E. Rothrock
24                                                         Attorneys for Plaintiffs and Counter-
                                                           Defendants
25                                                         NEO4J, INC., NEO4J SWEDEN AB

26

27

28

4865-9680-8293.5                                    - 15 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF
DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN

1  John V. Picone III, Bar No. 187226
   jpicone@hopkinscarley.com
2  Jeffrey M. Ratinoff, Bar No. 197241
   jratinoff@hopkinscarley.com
3  Arthur E. Rothrock, Bar No. 312704
   arothrock@hopkinscarley.com
4  HOPKINS & CARLEY
   A Law Corporation
5  The Letitia Building
   70 South First Street
6  San Jose, CA 95113-2406

7  *mailing address:*
   P.O. Box 1469
8  San Jose, CA 95109-1469
   Telephone:    (408) 286-9800
9  Facsimile:    (408) 998-4790

10  Attorneys for Plaintiffs and Counter-Defendants
    NEO4J, INC. and NEO4J SWEDEN AB

11

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14  NEO4J, INC., a Delaware corporation, and         CASE NO.  5:18-cv-07182-EJD
    NEO4J SWEDEN AB, a Swedish
15  corporation,                                      **PLAINTIFFS' REPLY IN SUPPORT OF**
                                                      **THEIR MOTION FOR SUMMARY**
16                        Plaintiffs,                 **JUDGMENT ON THEIR DMCA CLAIM**
                                                      **AND DEFENDANTS' BREACH OF**
17         v.                                         **CONTRACT COUNTERCLAIM AND**
                                                      **UNCLEAN HANDS DEFENSE**
18  PURETHINK LLC, a Delaware limited
    liability company, IGOV INC., a Virginia         Date:     July 27, 2023
19  corporation, and JOHN MARK SUHY, an              Time:     9:00 a.m.
    individual,                                       Dept.:    Courtroom 4, 5th Floor
20                                                    Judge:    Hon. Edward J. Davila
                          Defendants.
21

22  AND RELATED COUNTERCLAIM.

23

24

25

26

27

28

4890-7686-1031.5
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                              5:18-CV-07182-EJD

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................................................. 1

II.    OBJECTION TO DEFENDANTS' USE OF THE KUHN REPORT ............................. 1

III.   OBJECTION TO DEFENDANTS' RESPONSIVE SEPARATE STATEMENT ............. 2

IV.    THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR PLAINTIFFS
       ON THEIR DMCA CLAIM ............................................................................... 2

       A.     The Law of the Case Bars Defendants From Rearguing that the Neo4j
              Sweden Software License Permitted Them to Remove the Commons
              Clause ................................................................................................... 2

       B.     It is Undisputed that Suhy Impermissibly Removed Neo4j Sweden's CMI .......... 3

       C.     Defendants' Interpretation of AGPL Remains Untenable ...................................... 5

       D.     Defendants Cannot use the FSF's Alleged Copyright in the AGPL to
              Excuse the Improper Removal of Neo4j Sweden's CMI ...................................... 6

       E.     It is Undisputed that Defendants Knowingly Distributed Neo4j Sweden's
              Copyrighted Works with its CMI Removed and Knew that this Would
              Result in Copyright Infringement ........................................................................... 6

V.     DEFENDANTS' UNCLEAN HANDS DEFENSE FAILS AS A MATTER OF
       LAW .............................................................................................................. 8

VI.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF
       NEO4J USA ON PURETHINK'S BREACH OF EXCLUSIVITY CONTRACT
       CLAIM ......................................................................................................... 10

       A.     Defendants' Opposition Confirms the Lack of Mutual Assent ........................... 10

       B.     Defendants Cannot Invent an Oral Agreement to Prevent Summary
              Judgment ............................................................................................................ 13

       C.     Defendants Fail to Establish a Breach of the Alleged Exclusivity
              Agreement .......................................................................................................... 14

       D.     PureThink Fails to Provide Competent Evidence of Its Alleged Damages .......... 14

VII.   CONCLUSION ............................................................................................. 15

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4890-7686-1031.5                                                    - i -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                              5:18-CV-07182-EJD

Page 3129

# TABLE OF AUTHORITIES

Page

CASES

*Aquino v. Cnty. of Monterey Sheriff's Dep't*,
No. 5:14-CV-03387-EJD, 2018 WL 3845718 (N.D. Cal. Aug. 12, 2018) ................................3

*Banner Entm't, Inc. v. Sup. Court*,
62 Cal. App. 4th 348 (1998) ................................................................................................11

*Bullard v. Wastequip Mfg. Co. LLC*,
2015 WL 12766467 (C.D. Cal. Apr. 14, 2015) ........................................................................13

*Bustamante v. Intuit, Inc.*,
141 Cal. App. 4th 199 (2006) ................................................................................................12

*Codding v. Pearson Educ., Inc.*,
2019 WL 5864579 (N.D. Cal. Nov. 8, 2019), *aff'd*, 842 F. App'x 70 (9th Cir. 2021) ............15

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) ................................................................................................8

*Davidson v. ConocoPhillips Co.*,
2009 WL 2136535 (N.D. Cal. July 10, 2009) ........................................................................14

*F.T.C. v. Publ'g Clearing House, Inc.*,
104 F.3d 1168 (9th Cir. 1997) ................................................................................................13

*GoE3 LLC v. Eaton Corp.*,
798 F. App'x 998 (9th Cir. 2020) ........................................................................................13

*Hansen v. United States*,
7 F.3d 137 (9th Cir. 1993) ................................................................................................13

*Herrington v. County of Sonoma*,
12 F.3d 901 (9th Cir. 1993) ................................................................................................3

*Hohs v. Allstate Ins. Co.*,
2010 WL 11706760 (N.D. Cal. Feb. 10, 2010) ........................................................................13

*ICONICS, Inc. v. Massaro*,
192 F.Supp.3d 254 (D. Mass. 2016) ........................................................................................4

*Jacobsen v. Katzer*,
535 F.3d 1373 (Fed. Cir. 2008) ................................................................................................8

*Kahn Creative Partners, Inc. v. Nth Degree, Inc.*,
2011 WL 1195680 (C.D. Cal. Mar. 29, 2011) ........................................................................14

4890-7686-1031.5

- ii -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                    5:18-CV-07182-EJD

1
2

**TABLE OF AUTHORITIES**
(continued)

Page

3

*Kennedy v. Allied Mut. Ins. Co.*,
4          952 F.2d 262 (9th Cir. 1991).................................................................................3

5   *McGlinchy v. Shell Chem. Co.*,
           845 F.2d 802 (9th Cir. 1988)..........................................................................14, 15
6

7   *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
           545 U.S. 913 (2005) ...........................................................................................8

8   *Neo4j, Inc. v. Graph Found., Inc.*,
           2020 WL 6700480 (N.D. Cal. Nov. 13, 2020)....................................................4, 6, 9
9

10  *Netbula, LLC v. Bindview Dev. Corp.*,
           516 F. Supp. 2d 1137 (N.D. Cal. 2007) .................................................................11

11  *Performance Plastering v. Richmond Am. Homes of California, Inc.*,
12         153 Cal.App. 4th 659 (2007) ...............................................................................12

13  *Pickern v. Pier 1 Imports (U.S.), Inc.*,
           457 F.3d 963 (9th Cir. 2006)................................................................................13
14

15  *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*,
           894 F.3d 1015 (9th Cir. 2018)..............................................................................9

16  *RHUB Commc'ns, Inc. v. Karon, No. 16-CV-06669-BLF,*
17         2019 WL 8267743 (N.D. Cal. Nov. 22, 2019)........................................................12

18  *S. Cal. Darts Ass'n v. Zaffina,*
           762 F.3d 921 (9th Cir. 2014)................................................................................8
19

20  *Scott v. Harris,*
           550 U.S. 372 (2007) ..........................................................................................12

21  *Sneller v. City of Bainbridge Island,*
22         606 F.3d 636 (9th Cir. 2010).................................................................................10

23  *Stanford Hosp. & Clinics v. Multinat'l Underwriters, Inc.*,
           2008 WL 5221071 (N.D. Cal. Dec. 12, 2008) ........................................................14
24

25  *Tveter v. AB Turn–O–Matic,*
           633 F.2d 831 (9th Cir. 1980)................................................................................9

26  *Warner Constr. Corp. v. City of Los Angeles,*
27         2 Cal.3d 285 (1970) ...........................................................................................12

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                    5:18-CV-07182-EJD

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3 *Wasco Prods., Inc. v. Southwall Techs., Inc.*,

4          435 F.3d 989 (9th Cir. 2006)......................................................................................13

*Wolsey, Ltd. v. Foodmaker, Inc.*,
5          144 F.3d 1205 (9th Cir. 1998)............................................................................12, 13

6 STATUTES

7 Cal. Civ. Code § 1636 ................................................................................................11

8 Cal. Civ. Code § 1639 ................................................................................................11

9 Cal. Civ. Proc. Code § 1856(f)-(g).............................................................................11

10 OTHER AUTHORITIES

11 17 U.S.C. § 1202(b) ..................................................................................................4, 6

12 17 U.S.C. § 1202(b)(3)..................................................................................................7

13 Fed. Rule Civ. Proc. 11 ..............................................................................................10

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4890-7686-1031.5

- iv -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                        5:18-CV-07182-EJD

## I.     INTRODUCTION

Defendants' Opposition reads more as rambling recap of Phase 1 than a meaningful effort to address Plaintiffs' legal arguments and identify disputed issues of material fact.  All of their arguments seeking to justify Suhy's removal of Neo4j Sweden's CMI are identical to those already rejected by this Court and the Ninth Circuit.  Defendants do not refute the undisputed evidence establishing they intentionally removed Neo4j Sweden's CMI when creating ONgDB.  There is also no dispute that Defendants helped distribute that infringing software and encouraged end-users to infringe Neo4j's copyright by violating the now-removed commercial restrictions. Consequently, Plaintiffs are entitled to summary judgment establishing Defendants' violation of their DMCA claim.

Likewise, in apparent recognition that none of the allegations supporting their unclean hands defense bears the necessary relationship to Neo4j USA's Lanham Act claims, Defendants brazenly re-assert the same fraud and trademark cancelation theories that the Court previously dismissed with prejudice and expressly warned could not be raised to support *any* affirmative defense.  Defendants even attempt to reargue that Neo4j USA does not really own the Neo4j Mark despite this Court's prior determination that it was the owner for purposes of registration in the United States.  Without any other allegations showing that Neo4j USA's trademark usage amounted to inequitable conduct related thereto, Defendants' unclean hands defense fails as a matter of law.

Finally, Defendants fail to offer any competent evidence establishing that there was any mutual assent to an alleged exclusivity agreement relating to the Gov't Edition.  If anything, their Opposition confirms that the parties had divergent views regarding whether the April 11, 2015 "To whom it may concern" letter was an actual binding agreement separate and apart from the SPA.  To the extent that any such agreement ever existed, the undisputed evidence establishes that there was no meeting of the minds with respect to Neo4j USA's cancelation rights.  Accordingly, the Court should grant summary judgment in favor of Neo4j USA on PureThink's breach of contract claim.

## II.     OBJECTION TO DEFENDANTS' USE OF THE KUHN REPORT

Plaintiffs object to Defendants' reliance on the December 22, 2022 Expert Report of Bradley M. Kuhn ("the Kuhn Report"), which is attached as Exhibit 33 to the Declaration of Adron G. Beene, Dkt. No. 188-2 ("Beene Decl.").  Defendants' Opposition relies on the Kuhn Report

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4890-7686-1031.5                                    - 1 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                    5:18-CV-07182-EJD

Page 3133

1   to support the same arguments they made in opposition to Plaintiffs' Motion to Strike that report and

2   exclude Mr. Kuhn's testimony.  *Compare* Dkt. No. 186 at 6:15-8:10 *and* Dkt. No. 188 ("Opp.") at

3   11:18-13:19 (DMCA); *compare* Dkt. No. 186 at 8:11-9:14 *and* Opp. at 14:12-15:16 (DMCA);

4   *compare* Dkt. No. 186 at 13:6-21 *and* Opp. at 16:12-25 (DMCA); *compare* Dkt. No. 186 at 9:17-

5   10:25 *and* Opp. at 17:9-19:6 (Unclean Hands); *compare* Dkt. No. 186 at 13:16-14:11 *and* Opp. at

6   19:20-20:23 (Unclean Hands).  Accordingly, for the reasons detailed in Plaintiffs' pending Motion

7   to Strike (Dkt. Nos. 181, 189), the Court should exclude the Kuhn Report pursuant to *Daubert*, and

8   disregard Defendants' arguments based thereon in ruling on the present summary judgment motion.

9   **III.    OBJECTION TO DEFENDANTS' RESPONSIVE SEPARATE STATEMENT**

10         Plaintiffs object to Defendants' 43-page Response to Plaintiffs' Separate Statement of

11   Undisputed Material Facts.  Section V.B.2. of the Court's Standing Order provides that where an

12   opposing party contends that a fact is in dispute, it must cite to evidence in the record establishing

13   the dispute. However, Defendants' responsive statement largely consists of attorney argument that

14   either does not refute the evidence cited by Plaintiffs, or is unsupported by evidence that would be

15   admissible at trial; and/or seeks to dispute facts that this Court previously found to be undisputed in

16   Dkt. No. 118. Section V.B.2. further provides that a responsive statement add no more than five (5)

17   pages to the moving parties' statement.  Since Plaintiffs' original statement was only 15 pages,

18   Defendants' additional 23 pages over this limit amounts to an improper attempt to evade Civil L.R.

19   7-3(a)'s 25-page limit on opposition briefs.  The Court should thus strike Defendants' response.

20   **IV.    THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR PLAINTIFFS ON
21           THEIR DMCA CLAIM**

22         **A.    The Law of the Case Bars Defendants From Rearguing that the Neo4j Sweden
                   Software License Permitted Them to Remove the Commons Clause**

23         Defendants erroneously argue that the law of the case doctrine does not bar them from re-

24   litigating whether the "further restrictions" provision in Sections 7 and 10 of the Neo4j Sweden

25   License permitted them to remove the Commons Clause because this Court only granted partial

26   summary judgment.  Defendants made the same arguments in opposition to Plaintiffs' pending

27   Motion to Strike.  Compare Dkt. No. 186 at 4:12-6:8 and Dkt. No. 188 at 10:6-11:17.  In the interest

28   of judicial economy, Plaintiffs incorporate by reference, the portions of that motion addressing these

4890-7686-1031.5                                  - 2 -

1    same untenable arguments.  See Dkt. No. 181 at 7:15-13:8, 20:1-21:6; Dkt No. 189 at 2:9-6:27.

2          Defendants then reassert the same arguments and untenable interpretation of these provisions

3    they previously made in opposition to Plaintiffs' Phase 1 motion for summary judgment.  *Compare*

4    Opp. at 15:17-16:6 *and* Dkt. No. 100 at 28:15-29:27.  However, the parties previously agreed that

5    their respective interpretations of the Neo4j Sweden Software License should be decided on summary

6    judgment.  *See* Dkt. No. 118 at 24:7-15.  The Court then determined that the license did not permit

7    downstream licensees, such as Defendants, to remove the Commons Clause and redistribute Neo4j®

8    EE under the AGPL license.  Dkt. No. 118 at 24:16-25:19.  Since Defendants filed an interlocutory

9    appeal, the resulting affirmation of that ruling is now the law of the case.  *See Herrington v. County*

10   *of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) ("[t]he law of the case doctrine states that the decision

11   of an appellate court on a legal issue must be followed in all subsequent proceedings in the same

12   case") (internal quotations omitted); *Aquino v. Cnty. of Monterey Sheriff's Dep't*, No. 5:14-CV-

13   03387-EJD, 2018 WL 3845718, at *1 (N.D. Cal. Aug. 12, 2018) (citing same in recognizing decision

14   on an interlocutory appeal of the summary judgment order "was now law of the case").  To be sure,

15   the Ninth Circuit *affirmed that its opinion was precedential for the purpose of the law of the case.*

16   Dkt. No. 140 at 3.  Consequently, Defendants cannot re-litigate this issue for a third time.

17        **B.     It is Undisputed that Suhy Impermissibly Removed Neo4j Sweden's CMI**

18        Defendants do not dispute that Suhy removed Neo4j Sweden's CMI without authorization.[1]

19
_____

20   [1] Based on Exhibits 1-4 to Suhy's declaration, Defendants now claim that Suhy did not remove the

21   Commons Clause when he created ONgDB 3.4 from Neo4j® EE v3.4.  *See* UDF Nos. 12, 14, 42,

     45.  The Court should disregard these documents because (a) Defendants did not produce them

22   during discovery; and (b) Suhy generated them for the sole purpose of opposing this motion.  These

23   newly created documents are also unreliable because the permanent injunction entered against GFI

24   required it to remove all versions of ONgDB that contained DMCA violations in February 2022.

     Moreover, Defendants cannot create a disputed issue of fact by submitting a sham declaration and

25   manufacturing evidence that contradicts Suhy's prior deposition testimony.  *See Kennedy v. Allied*

26   *Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  In this regard, Suhy testified that when he created

27   ONgDB v3.4 from Neo4j® EE v3.4, he replaced the Neo4j Sweden Software License found in

28   LICENSE.txt files with "verbatim" copies of the AGPL to remove the Commons Clause.  Dkt. No.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4890-7686-1031.5                                   - 3 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                    5:18-CV-07182-EJD

Page 3135

1   Instead, they argue that the removal of the Commons Clause did not violate §1202(b) because "Neo4J

2   Sweden does not own the CMI as it claims." Opp. at 12:7-15. This is absurd given Defendants do

3   not dispute that prior to making Neo4j® EE a commercial-only product, Neo4j Sweden released

4   certain source code files for Neo4j® EE governed by LICENSE.txt files, consisting of the Neo4j

5   Sweden Software License (AGPL + Commons) that contained following CMI: (a) the Commons

6   Clause, which they admit "prohibited the non-paying public from engaging in commercial resale and

7   support services;" (b) a NOTICE provision identifying *Neo4j Sweden* as the copyright holder and

8   the licensor of Neo4j® EE; and (c) the title, terms and conditions for use of the work, and other

9   identifying information and how to obtain a commercial license for Neo4j® EE. *See* Exhibit A hereto

10  (hereafter referred to as "UDF") Nos. 4-9, 12-15. More importantly, the Court already held that

11  when Suhy replaced the LICENSE.txt files with the form AGPL, he removed ***all*** of the foregoing

12  CMI in those files. *See* Dkt. No. 118 at 6:2-7:6; *see also* Dkt. No. 98-2, ¶¶ 11, 27, 29-30.

13      Defendants further suggest they did not violate the DMCA because the NOTICE.txt files in

14  ONgDB still identified Neo4j Sweden as the copyright holder and referenced the Commons Clause.

15  *See* UDF Nos. 6, 14-15; Dkt. No. 188-1 ("Suhy Decl.") at ¶¶ 22-24 and Exs. 7-9. This does not

16  insulate Defendants from liability because §1202(b) prohibits ***any removal <u>or</u> <u>alteration</u>*** of the title

17  of the work, terms and conditions for use of the copyrighted work and other conspicuous displays

18  identifying the owner of these copyrighted works. *See ICONICS, Inc. v. Massaro*, 192 F.Supp.3d 254

19  (D. Mass. 2016) (copyright headers of individual source code files constituted CMI because they

20  conveyed information about copyright owner, and certain terms of use for the file, and were conveyed

21  along with source code files precisely to keep identifying information together with the code).

22  Indeed, this Court ***rejected*** a similar argument made by GFI. *See Neo4j, Inc. v. Graph Found., Inc*.,

23  2020 WL 6700480, at \*5 (N.D. Cal. Nov. 13, 2020) (holding that "moving the CMI into separate

24  NOTICE.txt files constitutes altering the CMI, and conveying the Neo4j Sweden Software License

25  without the Commons Clause constitutes removing CMI").

26

27  ────────────

    98-1, Ex. 3 at 28:25-29:11, 172:4-23; Dkt. No. 183-1, Ex. 1 at 199:22-201:16. The Court also a

28  found the same. *See* Dkt. No. 118 at 5:21-6:11 (citing Dkt. No. 98-1, Ex. 3 at 28:25-29:11).

4890-7686-1031.5                                  - 4 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                    5:18-CV-07182-EJD

1    Defendants also fail to reconcile that the referenced source code headers and NOTICE.txt

2  files do not contain the Commons Clause.  Rather, they merely direct a user to the LICENSE.txt files

3  that originally contained those terms and conditions.  *See* Suhy Decl., ¶ 18 and Ex. 3 (NOTICE.txt

4  files for ONgDB v3.4); ¶ 19 and Ex. 4 (source code headers for ONgDB v3.4); *id.,* ¶ 22 and Ex. 7

5  (NOTICE.txt files for ONgDB v3.5); ¶ 23 and Ex. 8 (source code headers for ONgDB v3.5).  After

6  Suhy replaced the Neo4j Sweden Software License with the generic AGPL, the Commons Clause

7  and its terms and conditions ceased to exist in those LICENSE.txt files, thereby rendered the cross-

8  referencing meaningless.  Dkt. No. 98-2, ¶ 11 and Ex. 3 (LICENSE.txt file for Neo4j v3.4); *id.,* ¶ 27

9  (confirming replacement of same with AGPL in ONgDB v3.4); Dkt. No. 98-1, ¶ 41 and Ex. 39

10  (commit showing replacement of LICENSE.text files with AGPL for ONgDB v3.5); Dkt. No. 98-2,

11  ¶¶ 29-30 (referencing same); *accord* Suhy Decl., ¶¶ 21, 24-25 and Exs. 6, 9-10 (confirming same).

12    Finally, none of the other CMI that Suhy removed from the LICENSE.txt files amounted to

13  "further restrictions" even under his erroneous reading of the Neo4j Sweden Software License.

14  Accordingly, it remains undisputed that Suhy intentionally removed Neo4j Sweden's CMI without

15  authorization by replacing the Neo4j Sweden Software License with "verbatim" copies of the AGPL

16  in Neo4j® EE v3.4 and Neo4j® EE v3.5.  *See* Dkt. No. 118 at 6:7-11, 6:21-26; *see also* UDF No. 14

17  ("The only files Mr. Suhy touched were the AGPL LICENSE.txt files ...."); UDF No. 15

18  ("UNDISPUTED that Mr. Suhy knew that Neo4j Sweden owned the copyright for Neo4j EE"); UDF

19  No. 16 ("**UNDISPUTED** that Neo4j Sweden never gave Suhy permission to remove Commons

20  Clause"); UDF No. 19 ("Suhy corrected that violation with the removal of the commons clause");

21  UDF No. 44 ("Mr. Suhy removed the commons clause from only the AGPL License files...").

22    **C.**    **Defendants' Interpretation of AGPL Remains Untenable**

23    Defendants argue that the "you" as used throughout the Neo4j Sweden Software License

24  means both a licensee of the form AGPL ***and*** the licensee of the computer program subject to an

25  independent copyright when it is licensed under AGPL.  Opp. at 5:22-6:10, 12:7-15.  They further

26  argue that "This License" as used in the Neo4j Sweden Software License means the form AGPL.  *Id.*

27  at 6:5-10.  This somehow implies that "the AGPL gives permission for the licensee to remove

28  additional restrictions" and "[t]he right to remove additional terms is triggered when the Program

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4890-7686-1031.5    - 5 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE    5:18-CV-07182-EJD

Page 3137

owner uses the GPL/AGPL." *Id.* at 12:7-15. Based on that false assumption, Defendants then argue that Suhy could remove the Commons Clause "because Neo4j Sweden's "addition of the Commons Clause is not a verbatim copy of the AGPL…." *Id.* at 12:16-13:3. Defendants are wrong again. The Court considered rejected the same arguments during Phase 1. *See* Dkt. No. 118 at 24:16-25:19. In particular, it held that Section 0 defines "you" (*i.e.* Defendants) as the downstream licensee of "the Program" (*i.e.* Neo4j® EE") and not the licensee of any copyright the Free Software Foundation ("FSF") may have in the form AGPL. *Id.*

### D. Defendants Cannot use the FSF's Alleged Copyright in the AGPL to Excuse the Improper Removal of Neo4j Sweden's CMI

Defendants insist that they were justified in removing the Commons Clause because the FSF owns the copyright to the AGPL. Opp. at 2:18-3:10, 13:17-15:10. Defendants similarly argue that because "Neo4J Sweden does not own the copyright to the AGPL, [it] cannot meet the requirements for a DCMA claim (ownership of the copyright)." Opp. at 13:8-9. Defendants even claim that Suhy was justified in removing the Commons Clause to prevent Neo4j Sweden's infringement of the FSF's copyright. *Id.* at 13:17-19. FSF's copyright in the AGPL is immaterial to Plaintiffs' DMCA claim.

Defendants asserted the same argument during Phase 1. Dkt. No. 100 at 5:23-6:3, 29:14-23 and Dkt. No. 100, Ex. A at 42-43 (UDF No. 113). This Court **rejected** "'the notion that the terms drawn from the AGPLv3, on which the Neo4j Sweden Software License is based, somehow limit the rights of Neo4j Sweden to include the Commons Clause or any other additional restriction in its own copyright license.'" Dkt. No. 118 at 24:16-25:12, *quoting Neo4j, Inc.*, 2020 WL 6700480, at *4 ("Defendants argue that Plaintiffs were not permitted to alter the form license agreement under the terms of the [FSF's] copyright over the form AGPLv3. But whether Plaintiffs acted in accordance with the copyright covering the AGPLv3 is not at issue before this Court, as Defendants are not entitled to enforce the FSF's copyright."). Thus, Defendants are not absolved from liability under §1202(b) because Suhy thought he was preventing the infringement of the FSF's copyright.

### E. It is Undisputed that Defendants Knowingly Distributed Neo4j Sweden's Copyrighted Works with its CMI Removed and Knew that this Would Result in Copyright Infringement

Plaintiffs' moving papers explain how Defendants distributed Neo4j® EE without the Neo4j

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY
4890-7686-1031.5
- 6 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS' BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE
5:18-CV-07182-EJD
Page 3138

1   Sweden Software License re-branded as ONgDB in violation of §1202(b)(3).  *See* Dkt. No. 183 at

2   10:26-11:13.  Defendants do not deny that they did so via the iGov and Graphstack websites, which

3   by itself is a DMCA violation.  *See* UDF Nos. 22-23.  Instead, Defendants argue they were not

4   responsible for the downloads of ONgDB through GFI's website and GitHub repository because they

5   did not control them. Opp. at 17:1-7.  This is a distinction without a difference because Defendants

6   admit that they provided potential users with hyperlinks to download ONgDB with the DMCA

7   violations from GFI's website and GitHub repository.  *See* UDF No. 20 ("UNDISPUTED that Mr.

8   Suhy provided hyperlinks references for users of the website to view the source code and download

9   distributions."); *see also* UDF Nos. 19, 21-22.

10      This amounts to distribution especially since Suhy was one who **created** infringing versions

11  of ONgDB on GFI's GitHub repository where others were free to download the software.  *See* Dkt.

12  No. 118 at 5:21-7:6, 24:7-25:19; *accord* Dkt. No. 98-1, Ex. 3 at 172:4-23, 200:9-16; *id.,* Exs. 24-26.

13  It is also undisputed that Suhy was integral to the IRS' adoption and continuing use of ONgDB in

14  the CKGE Platform.  *See* UDF No. 33-35 (Defendants do not cite to any contravening evidence).  To

15  be sure, Suhy told potential customers that he assigned ONgDB to GFI and was responsible for

16  managing the ONgDB distributions used by the IRS.  *See* Dkt. No. 98-1, Exs. 24, 26 (yellow

17  highlights); *see also id.,* Ex. 40 ("I just wanted to let you know that for ONgDB 3.5 - we merged the

18  build framework and enterprise code back into the code repository like it used to be").

19      Plaintiffs' moving papers detail how Defendants knew or had reason to know their removal

20  of the Commons Clause would result in end-users infringing Neo4j Sweden's right to limit the use

21  of Neo4j® EE to paid subscribers.  Dkt. No. 183 at 11:16-14:6.  Defendants do not substantively

22  address these arguments, thus conceding they had the requisite knowledge and intent.

23      Last of all, Defendants admit that the Commons Clause "prohibited the non-paying public

24  from engaging in commercial resale and support services." *See* UDF Nos. 4-5.  Defendants built their

25  entire business around inducing others to use "free and open source" ONgDB and pay Defendants

26  for support services that they clearly understood violated the now-removed Commons Clause.  *See*

27  Dkt. No. 118 at 6:18-26 (Defendants' replacement of Neo4j Sweden Software License with the

28  AGPL "removed certain legal notices identifying Neo4j Sweden as the copyright holder and licensor,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4890-7686-1031.5                                    - 7 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                          5:18-CV-07182-EJD

Page 3139

1    and removed the Commons Clause, effectively allowing Defendants to commercially use and support

2    ONgDB"); *see also* UDF No. 43. This amounts to copyright infringement. *See Jacobsen v. Katzer*,

3    535 F.3d 1373, 1382 (Fed. Cir. 2008) (the use and distribution of software in violation of an open

4    source license constitutes copyright infringement); *see also Metro-Goldwyn-Mayer Studios Inc. v.*

5    *Grokster, Ltd*., 545 U.S. 913, 930 (2005) ("[o]ne infringes contributorily by intentionally inducing

6    or encouraging direct infringement," which includes providing a service "with the object of

7    promoting its use to infringe copyright") *accord Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d

8    1020, 1037-38 (9th Cir. 2013) (liability for copyright infringement on an inducement theory is where

9    the product or service was used to infringe the plaintiff's copyrights). Accordingly, the Court should

10   grant summary judgment in favor of Plaintiffs on their DMCA claim.

11   ## V.    DEFENDANTS' UNCLEAN HANDS DEFENSE FAILS AS A MATTER OF LAW

12   Defendants previously represented to the Court *twice* that they are not asserting an unclean

13   hands defense to Neo4j Sweden's DMCA claim. *See* Dkt. No. 91 at 16:20-19:7; Dkt. No. 169 at

14   10:4-8. Their opposition reconfirms that this defense is limited to Neo4j USA's trademark

15   infringement claims, and to succeed thereon, they "must show that plaintiff used the trademark to

16   deceive consumers." Opp. at 17:9-19. Defendants then attempt to equate ***Neo4j Sweden's*** alleged

17   misuse of the AGPL with respect to Neo4j® EE with ***Neo4j USA's*** use of the Neo4j Mark to sell that

18   software. *Id.* at 17:20-20:23. This does not save their unclean hands defense because Defendants

19   concede that Neo4j Sweden is the licensor of source code for Neo4j® EE under the Neo4j Sweden

20   Software License (Dkt. No. 118 at 2:16-18; UDF Nos. 13, 15 and 58), and these licenses "are

21   copyright licenses, not trademark licenses" (Dkt. No. 85 at 7:27-8:7; UDF No. 59). Consequently,

22   Neo4j Sweden's copyright-based licensing practices do not bear the requisite "immediate and

23   necessary" relationship to Neo4j USA's trademark infringement claims as a matter of law.[2] *See S.*

24

25   [2] Defendants also argue that Neo4j Sweden "does not own the complete code to [Neo4j® EE]"

26   because it did not produce any contributor license agreements in response to Defendants' discovery
     requests. Dkt. No. 188 at 20:4-11. This is pure speculation since Neo4j Sweden objected to those

27   requests as overbroad, and limited its response to Neo4j® EE v4.0. *See* Beene Decl., Ex. 32 at RFP

28   Nos. 4-5. Thus, the only reasonable inference drawn from an alleged lack of CLAs is there were no

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4890-7686-1031.5                                    - 8 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                          5:18-CV-07182-EJD

Page 3140

1   *Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 932 (9th Cir. 2014); *Tveter v. AB Turn–O–Matic*, 633 F.2d

2   831, 839 (9th Cir. 1980).

3          Defendants further argue that Neo4j USA somehow engaged in unclean hands because

4   "Neo4j Sweden had other license options" instead of simply adding the Commons Clause to the

5   AGPLv3.  Opp. at 19:20-20:3, 20:12-23.  Defendants made the same argument in opposition to

6   Plaintiffs' first motion for summary judgment (Dkt. No. 100 at 30:9-16), which this Court rejected

7   (Dkt. No. 118 at 24:16-25:19).  More importantly, as conclusively determined by this Court, Neo4j

8   Sweden did not "violate" the AGPL by adding the Commons Clause to create the Neo4j Sweden

9   Software License.  *See* Dkt. No. 118 at 22:23-28:24, *aff'd* Dkt. No. 140; *see also Neo4j, Inc.*, 2020

10  WL 6700480, at *4.  Thus, even if Defendants could show an immediate and necessary relationship

11  with Neo4j USA's trademark usage and Neo4j Sweden's copyright licensing practices, which they

12  cannot, Defendants still cannot show any inequitable conduct related thereto. *See Pinkette Clothing,*

13  *Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1029 (9th Cir. 2018) ("only a showing of wrongfulness,

14  willfulness, bad faith, or gross negligence, proved by clear and convincing evidence, will establish

15  sufficient culpability for invocation of the doctrine of unclean hands.").

16         Defendants also cite to Neo4j USA's 2012 "Fair Trade Licensing" article as a "false

17  interpretation" of the AGPL.  Opp. at 3:11-4:6, 21:8-13.  This relates to Neo4j Sweden's licensing

18  of Neo4j® EE, not Neo4j USA's alleged use of the Neo4j Mark in a way that deceived consumers.

19  Moreover, Neo4j USA's use of this article in conjunction with the parties' dispute over the IRS

20  contract occurred in April 2017.  *See* Suhy Decl., Ex. 22.  This predates Neo4j Sweden's first use of

21  the Neo4j Sweden Software License by more than a year.  *See* UDF No. 4.  It also predates

22  Defendants' infringement of the Neo4j® Mark, which only dates back to November 2017.  *See* Dkt.

23  _____

24  third party contributors to the source code associated with the 28 LICENSE.txt files subject to the

25  DMCA claim.  More importantly, Defendants **reconfirm** that Neo4j® EE v3.4 and v3.5 contained

    at least 182 source code files that were never released under either the GPL or AGPL, and were

26  instead released for the first time under the Neo4j Sweden Software License making Neo4j Sweden

27  the sole copyright owner of those files.  *See* UDF Nos. 13, 15; *see also* Dkt. No. 118 at 6:18-21; Dkt.

28  No. 98-1, Ex. 38 at 6:22-7:1, 8:4-16:24; Dkt. No. 98-2, ¶ 29.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4890-7686-1031.5                                    - 9 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                    5:18-CV-07182-EJD

Page 3141

No. 90 at ¶ 41; Dkt. No. 98-1, ¶¶ 16-20, 22 and Exs. 14-18, 20.  As noted in Plaintiffs' moving papers, these alleged acts do not bear the requisite temporal relationship to Neo4j USA's Lanham Act claims, and as a result, cannot support an unclean hands defense.  *See* Dkt. No. 183 at 19:7-24.

Finally, in recognition that their unclean hands defense bears no relationship to Neo4j USA's trademark claims, Defendants argue that Neo4J USA's "misrepresentations of time of use, ownership of trademark and failure to correct those misrepresentations is unclean hands under the PTO's standards."  Opp. at 19:16-19; *see also id.* at 7:9-17.  Remarkably, Defendants **admit** these are the same facts underpinning their twice-stricken cancellation/fraud on the PTO defense, and then blatantly misrepresent that "[w]hile Defendants are presently foreclosed from invalidating the trademark, the facts remain to support an unclean hands defense." *Id.* at 19:25, fn 4.

Defendants' reassertion of these same facts is in direct violation of the Court's prior warning that "Defendants are not permitted to reassert *any affirmative defense* or counterclaim in this action based on the cancellation or abandonment theories asserted in the stricken defenses."  Dkt. No. 110 at 5:16-6:4 (emphasis added).  This Court also held in granting summary judgment on Neo4j USA's Lanham Act claims that Neo4j USA was the owner of the Neo4j Mark.  Dkt. No. 118 at 11:16-12:26, 13:18-18:1 *aff'd* Dkt. No. 140.  Since the Defendants did not heed this Court's clear admonition, it should (a) grant summary judgment in favor of Plaintiffs on Defendants' unclean hands defense; and (b) issue an Order to Show Cause why sanctions in the form of paying Plaintiffs' attorneys' fees should not be levied against Defendants pursuant to FRCP 11.  *See Sneller v. City of Bainbridge Island*, 606 F.3d 636, 638-39 (9th Cir. 2010).

## VI.   THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF NEO4J USA ON PURETHINK'S BREACH OF EXCLUSIVITY CONTRACT CLAIM

### A.   Defendants' Opposition Confirms the Lack of Mutual Assent

PureThink argues that the Neo4j USA "consented" to an April 11, 2015 letter, which purports to be a separate agreement from the SPA.  Opp. at 21:20-25.  The only evidence they cite in support is the letter using the word "agreement" and not mentioning the SPA, along with Suhy's testimony confirming the same. *Id.* at 22:4-15.  Assuming this were true, the lack of any reference to the SPA means that the parties did not contemplate altering their obligations or entering into an agreement

Hopkins & Carley
Attorneys at Law
San Jose ● Redwood City

4890-7686-1031.5                                    - 10 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                              5:18-CV-07182-EJD

Page 3142

1   separate from the SPA at the time they signed the April 11, 2015 letter. *See* Cal. Civ. Code § 1636

2   ("A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed

3   at the time of contracting"); Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the

4   intention of the parties is to be ascertained from the writing alone, if possible.").

5        Further, "[m]utual assent is determined from the reasonable meaning of the words and acts

6   of the parties, and not from their unexpressed intentions or understandings." *Netbula, LLC v.*

7   *Bindview Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007). In this regard, extrinsic evidence

8   is admissible to determine whether contracting parties achieved mutual assent for purposes of

9   formation. *See* Cal. Civ. Proc. Code § 1856(f)-(g); *accord Banner Entm't, Inc. v. Sup. Court,* 62 Cal.

10  App. 4th 348, 358 (1998) ("[e]vidence as to the parties' understanding and intent … is admissible to

11  ascertain when or whether a binding agreement was ever reached") (citing same).

12       Despite having the burden of proof to establish the existence of an enforceable contract,

13  PureThink fails to offer competent evidence establishing that ***both*** parties understood that the

14  April 11, 2015 letter was a separate agreement rather than simply a tool to seek sole-source

15  procurements. *See* UDF Nos. 65-67. Indeed, none of the emails cited by PureThink establish the

16  existence of an enforceable contract separate from the SPA. *See* Suhy Decl., Ex. 16; Beene Decl.,

17  Exs. 13-15, 18. Conversely, Suhy's indisputable written representations made immediately before

18  and after the April 11, 2015 letter confirm that there was no contract apart from the SPA. *See, e.g.*,

19  Dkt. No. 98-1, Ex. 6 (yellow highlights); Dkt. No. 183-1, Exs. 6-8, 10-12, 14 (yellow highlights).

20       The undisputed evidence also shows that ***Suhy told*** Neo4j USA that the alleged "exclusivity

21  agreement" consisted of ***two letters***: "one that we give to agencies on your letterhead [], and 1

22  between us that says you can cancel at any time for any reason." Dkt. No. 183-1, Ex. 7 (green

23  highlights). Suhy then sent proposed drafts of those letters in an April 10, 2015 email where the

24  internal version stated "[Neo4j USA] has the right to cancel this exclusivity agreement at any time

25  and for any reason." *Id.*, Ex. 8 (green highlights). Suhy instructed Neo4j USA to "copy and paste"

26  that language in the internal version. *Id.* Consistent with Suhy's representations, Neo4j USA created

27  and signed both letters on April 11, 2015, with the internal letter providing that "Neo Technology

28  has the right to cancel this exclusivity agreement at any time and for any reason." *Id.*, ¶ 11 and Ex.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4890-7686-1031.5
- 11 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE
5:18-CV-07182-EJD

Page 3143

1  9 (green highlight); *see also id.,* Exs. 12-13.  Suhy confirmed receipt without objection and assured

2  Neo4j USA that he would sign them.  *See* Ratinoff Reply Decl., ¶¶ 9-10 and Exs. G-H.

3       PureThink now seeks to disavow the unilateral termination provision by claiming that Suhy

4  never signed the internal letter.  *See* UDF No. 69-72.  However, the lack of a party's signature does

5  not make a contract unenforceable.  *Performance Plastering v. Richmond Am. Homes of California,*

6  *Inc.*, 153 Cal.App. 4th 659, 668 (2007).  Nevertheless, if PureThink contends it refused to sign the

7  internal letter because of that provision, then there was no mutual consent to a fully executed,

8  enforceable contract.  *See Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209, 215 (2006)

9  (affirming summary judgment for defendant, holding that "the undisputed facts here show no meeting

10  of the minds as to the essential structure and operation of the alleged joint venture, even if there was

11  agreement on some of the terms"); *see also RHUB Commc'ns, Inc. v. Karon, No. 16-CV-06669-BLF,*

12  2019 WL 8267743, at *4 (N.D. Cal. Nov. 22, 2019) ("failure to reach a meeting of the minds on all

13  material points prevents the formation of a contract even though the parties have orally agreed upon

14  some of the terms, or have taken some action related to the contract") (internal citation omitted).

15       Lastly, the email Defendants rely on to argue that Neo4j USA did not have the unilateral right

16  to terminate the Gov't Edition was sent by Suhy on June 20, 2017 in response to Neo4j USA's

17  cancelation of Neo4j Gov't edition and a month after providing notice of PureThink's breach of the

18  PSA. *See* Beene Decl., Ex. 13 ("I believe our contract requires us to be part of the decision to retire

19  it…. Of course I am assuming you don't agree to this, so just another thing to add to the list for

20  court."); Dkt. No. 118 at 4:13-15 (citing Dkt. No. 98-1, Ex. 9).  This does not create a disputed issue

21  of fact since Suhy sent it in anticipation of litigation and in direct contradiction to the representations

22  he made to Neo4j USA prior to a dispute arising.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (an

23  assertion that is "blatantly contradicted by the record, so that no reasonable jury could believe it" will

24  not create a genuine issue of material fact at summary judgment); *Warner Constr. Corp. v. City of*

25  *Los Angeles*, 2 Cal.3d 285, 296–97 (1970) (refusing to admit "negotiations" after the date on which

26  "the parties had reached a stage of clear disagreement on the crucial question"); *accord Wolsey, Ltd.*

27  *v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998) (recognizing that the principle of "practical

28  construction" only applies to acts before any dispute has arisen) (citing same).

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4890-7686-1031.5                                    - 12 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                         5:18-CV-07182-EJD

Page 3144

**B.    Defendants Cannot Invent an Oral Agreement to Prevent Summary Judgment**

Defendants attempt to invent from whole cloth a subsequent oral "exit agreement" (or oral modification to the April 11, 2015 letters) that purportedly required the discontinuation of the Gov't Edition to be "unanimous" and for Neo4j USA to compensate PureThink.  *See* UDF No. 65 (citing Suhy Decl., ¶ 10).  Defendants admit that no such written instrument executed by the parties exists, and instead rely upon a declaration describing this purported agreement.  *Id.*  Notably, there is no reference to any alleged second oral agreement or modification in any of the **four** iterations of Defendants' counterclaims.  *See* Dkt. No. 22, ¶¶ 14-15; Dkt. No. 55, ¶¶ 16-17, 40-53; Dkt. No. 72, ¶¶ 16-17, 49-53; Dkt. No. 171, ¶¶ 16-17, 53-57.  Since they never alleged that such an agreement or modification existed, they cannot "advance new theories presented for the first time in [] opposition to summary judgment." *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006); *accord Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).

Even if Defendants could do so, Suhy's "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997); *accord GoE3 LLC v. Eaton Corp.*, 798 F. App'x 998, 999 (9th Cir. 2020) (affirming summary judgment for defendant where the district court disregarded plaintiff's self-serving declaration that failed to identify evidence that defendant accepted certain terms as part of the original contract terms or as part of a subsequent contractual modification) (citing same); *Bullard v. Wastequip Mfg. Co. LLC*, 2015 WL 12766467, at *12 (C.D. Cal. Apr. 14, 2015) (prohibiting party from defeating summary judgment by asserting oral contract theory not alleged in the operative pleading); *see also Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) ("[w]hen the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact").

In this regard, PureThink fails to offer competent evidence establishing **when** Neo4j USA consented to such an oral agreement or modification, **who** consented on behalf of Neo4j USA, **how** much compensation would be, and **what** additional consideration PureThink offered.  Thus, no such oral agreement or modification can exist.  *See Hohs v. Allstate Ins. Co.*, 2010 WL 11706760, at *5-

1 6 (N.D. Cal. Feb. 10, 2010) (granting summary judgment where plaintiff failed to provide evidence

2 of when the oral contract was entered into and defendant's consent to the terms thereof); *Kahn*

3 *Creative Partners, Inc. v. Nth Degree, Inc.*, 2011 WL 1195680, at *3-5 (C.D. Cal. Mar. 29, 2011)

4 (same); *see also Stanford Hosp. & Clinics v. Multinat'l Underwriters, Inc.*, 2008 WL 5221071, at *7

5 (N.D. Cal. Dec. 12, 2008) (finding no mutual consent to oral agreement because plaintiff only offered

6 evidence of its own state of mind); *Davidson v. ConocoPhillips Co.*, 2009 WL 2136535, at *3 (N.D.

7 Cal. July 10, 2009) (granting summary judgment for defendant where plaintiffs failed to show the

8 oral modification to a written contract was supported by new consideration).

9 **C.    Defendants Fail to Establish a Breach of the Alleged Exclusivity Agreement**

10 Defendants argue that because the external April 11, 2015 letter does not contain the unilateral

11 termination provision, Neo4j USA is "not free to insert one so purely in their favor." Opp. at 22:17-

12 23:23. However, this is exactly what PureThink is doing by disavowing the internal letter that ***Suhy***

13 ***proposed contain that provision*** and Neo4j USA's reliance thereon when it signed both letters.

14 PureThink cannot have it both ways. Either the two letters constituted parties' exclusivity agreement

15 and gave Neo4j USA the unilateral right to terminate without having to pay PureThink, or there was

16 never a meeting of the minds on any alleged agreement. Under both scenarios, PureThink cannot

17 establish any breach thereof by Neo4j USA.

18 **D.    PureThink Fails to Provide Competent Evidence of Its Alleged Damages**

19 Defendants do not indicate they intend to seek any nominal damages, and instead confirm

20 that they are seeking monetary damages based on the alleged "full time" effort Suhy put into

21 developing the add-ons to Neo4j® EE to create the Gov't Edition. Opp. at 24:4-12. However,

22 Defendants do not offer competent evidence that would allow a trier of fact to determine the actual

23 time spent and the value of that time. *See* UDF Nos. 85, 109. Defendants further admit that

24 PureThink's financial statements "do not reflect the expenses which came in the form of paying Mr.

25 Suhy to focus full time on the [Gov't Edition]," while they fail to cite to any evidence such as

26 paychecks or bank records that would support such expenses. *See* UDF No. 86. PureThink thus

27 cannot make the required showing with "reasonable certainty and probability." *See McGlinchy v.*

28 *Shell Chem. Co.,* 845 F.2d 802, 809 (9th Cir. 1988) (affirming summary judgment where plaintiffs

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

4890-7686-1031.5 - 14 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                                5:18-CV-07182-EJD

Page 3146

1    failed to submit evidence "upon which a finder of fact could reasonably conclude that [they] actually

2    suffered damages, caused by [] defendants, in any quantifiable amount").

3         PureThink's attempt to recover $1.3 million in damages for the alleged loss of the CKGE

4    Contract with the IRS is also untenable.  *See* Opp. at 24:13-14.  By agreeing to dismiss their IIPEA

5    claim with prejudice in the face of a motion to dismiss, Defendants conceded that Neo4j USA had a

6    constitutional right to protest that award.  *See* Dkt. Nos. 171, 172 and 176; *see also* UDF No. 57.

7    Moreover, it is undisputed that the IRS continued to use the Gov't Edition and PureThink's support

8    services after Neo4j notified all concerned that it was discontinuing the Gov't Edition and terminating

9    PureThink as Solutions Partner. *See* UDF Nos. 52-53, 74, 77, 88.  Consequently, Defendants cannot

10   establish a causal connection between Neo4j USA's alleged breach of the exclusivity agreement and

11   the IRS's subsequent decision to award the CKGE Contract to Suhy via one of his other entities,

12   eGovernment Solutions.  *See* UDF No. 25-26.

13        Finally, Defendants cite to a spreadsheet of Neo4j USA's government sales as somehow

14   establishing its alleged damages.  *See* Opp. at 24:13-14.  This is insufficient to establish damages

15   because Defendants fail to offer evidence establishing that but for the termination, PureThink would

16   have sold the Gov't Edition to them.  Without any evidence of a causal connection, PureThink cannot

17   rely on speculation that they would have made any of those sales.  *See McGlinchy,* 845 F.2d at 809;

18   *Codding v. Pearson Educ., Inc*., 2019 WL 5864579, at *12 (N.D. Cal. Nov. 8, 2019), *aff'd*, 842 F.

19   App'x 70 (9th Cir. 2021) (granting summary judgment in favor of defendant where plaintiff failed to

20   provide evidence "establish[ing] a causal connection between the breach and the damages sought").

21   **VII.    CONCLUSION**

22        For the reasons set forth herein and in their opening brief, Plaintiffs respectfully request that

23   the Court grant summary judgment in favor of Neo4j USA on all grounds sought.

24    Dated:  June 29, 2023                                   HOPKINS & CARLEY, ALC

25

26                                  By: */s/ Jeffrey M. Ratinoff*
                                                          Jeffrey M. Ratinoff

27                                  Attorneys for Plaintiffs and Counter-
                                                          Defendants NEO4J, INC. and NEO4J
                                                          SWEDEN AB

28

4890-7686-1031.5                          - 15 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                    5:18-CV-07182-EJD

**PLAINTIFFS' REPLY TO DEFENDANTS RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Defendants' Violation of the DMCA [17 U.S.C. § 1202(b)(1)]** | | |
| 1. the existence of CMI on the infringed work; | <u>Fact 1:</u> Neo4j Sweden is the owner of all copyrights related to the Neo4j® graph database platform, including the source code, and has licensed those copyrights to Neo4j USA in connection with the making, use, creation of derivative works, sale, offer to sell, importation, performance, display, reproduction and distribution of the copyrighted material, and the sublicensing of such rights in the United States. Dkt. No. 98-2, ¶¶ 3-4; Dkt. No. 118 at 2:15-18 (citing same). | **DISPUTED** Neo4j does not own all the code to the Neo4j software.<br>Beene Decl., Ex. 27.<br><br>Hundreds of committers to Neo4j code do not appear to be associated with Neo4j Sweden, and Neo4j Sweden does not have assignments from committers or authors of Neo4j Software. Copies of assignments were requested in discovery but not provided<br>Suhy Decl. ¶¶13-14, Beene Dec., Ex 32. |
| | <u>Additional Fact:</u> The Court previously found it was undisputed that "Neo4j Sweden owns of all copyrights related to the Neo4j graph database platform, including the source code." Dkt. No. 118 at 2:16-18; *accord* Fact 15 ("UNDISPUTED that Mr. Suhy knew that Neo4j Sweden owned the copyright for Neo4j EE").<br><br><u>Additional Fact:</u> Neo4j® EE v3.4 and v3.5 contained at least 182 source code files that were never released under either the GPL or AGPL, and were instead release for the first time under the Neo4j Sweden Software License making Neo4j Sweden the sole copyright owner of those files that are subject to Plaintiffs' DMCA claim. Dkt. No. 98-1, Ex. 38 at 6:23-16:24, 8:4-16:24;  (iGov's verified interrogatory response identifying at least 182 source code files in Neo4j® EE that had not previously been released under the AGPL); Fact 13 ("**UNDISPUTED** that there were at least 182 source code files released under AGPL + Commons clause"); Dkt. No. 118 at 6:18-21 ("GFI released ONgDB v3.5.1, which contained at least 182 source code files that had only been previously released under the Neo4j Sweden Software License in a publicly available beta version of Neo4j EE 3.5."); *accord* Dkt. No. 98-2, ¶¶ 27-30. | |
| | <u>Fact 2:</u> Prior to May 2018, Plaintiffs offered a free and open source version of the Neo4j® graph database platform, Neo4j® Community Edition ("Neo4j® CE"), under the GNU General Public License version 3 ("GPL") license. Dkt. No. 118 at 3:1-4 (citing Dkt. No. 98-2, ¶¶ 4-5). | **DISPUTED**  Prior to May 2018 Plaintiffs also released Neo4j Enterprise Edition under the vanilla AGPL open source license.  Neo4j Enterprise under the AGPL and Neo4j Enterprise under the commercial license were the |

1

(201 of 245), Page 201 of 245

Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 201 of 245
Case 5:18-cv-07182-EJD   Document 191   Filed 06/29/23   Page 22 of 66

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Neo4j® CE is limited in its feature set and does not come with technical or administrative support. Dkt. No. 118 at 3:4-5 (citing Dkt. No. 98-2, ¶¶ 5-6). Plaintiffs also offered a more advanced commercial version, which included additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j® EE"). Dkt. No. 118 at 3:5-7 (citing Dkt. No. 98-2, ¶ 8). | same physical software as they were compiled from the same source code.<br><br>See Suhy Decl., ¶2. |
| | <u>Fact 3:</u> Plaintiffs originally offered Neo4j® EE under both a paid-for commercial license and for free under the GNU Affero General Public License, version 3 ("AGPL"). Dkt. No. 118 at 3:7-9 (citing Dkt. No. 98-2, ¶ 8). A commercial license to Neo4j® EE entitled the purchaser to use it in a proprietary setting with industry standard terms, receive support or professional services from Neo4j USA, and the right to receive software updates, which included feature updates, bug fixes and assistance. Dkt. No. 98-2, ¶¶ 7-9. | **UNDISPUTED** that Neo4j EE was available under both a commercial and free open source AGPL license and that a commercial license came with support.<br><br>**DISPUTED** that the commercial license was the only license which allowed Neo4j EE to be used in a proprietary setting or receive updates. Neo4j Enterprise under the open source AGPL (< v3.4) as well as under AGPL + Commons clause (v3.4) could be used in a proprietary setting for free, and since the code was the same for the commercial and open-source versions, they both received updates together.<br>See Suhy Decl., Ex. 2 |
| | <u>Fact 4:</u> On May 17, 2018, Neo4j Sweden released Neo4j® EE v3.4 and replaced the AGPL with a stricter license, which included the terms from the AGPL and additional commercial restrictions provided by the Commons Clause ("Neo4j Sweden Software License"). Dkt. No. 118 at 3:9-12 (citing Dkt. No. 98-2, ¶ 11 and Ex. 3). | **UNDISPUTED** that Neo4j Sweden released Neo4j® EE v3.4 on May 17, 2018 which was the AGPL with the commons clause which added prohibited the non-paying public from engaging in commercial resale and support services.<br><br>**DISPUTED** that this was ever called "Neo4j Sweden Software License" outside of court. The License terms include the AGPL preamble and the NOTICE states: "The Software is subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3 (http://www.fsf.org/licensing/licenses/agpl-3.0.html), included in the LICENSE.txt file, with the Commons Clause." See Suhy Decl., Ex. 3<br><br>**DISPUTED** that the AGPL was replaced with a stricter license. The AGPL was not replaced. The AGPL License file had the full preamble, stated it was copyrighted to the free software foundation. The commons clause was appended to the AGPL terms. Note, the commons clause did not affect end-users |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | wishing to use the software, it was targeted at anyone trying to sell or offer a competing support offering as Neo4j USA offered. See Suhy Decl., Exs. 2-3 |
| | **Fact 5:** The Neo4j Sweden Software License, while still allowing code to be publicly viewable and used within a certain licensed scope, prohibited the non-paying public from engaging in commercial resale and support services. Dkt. No. 118 at 3:12-13; Dkt. No. 98-2, ¶¶ 11-12 and Ex. 3. | **UNDISPUTED** that the commons clause states that it prohibited the non-paying public from engaging in commercial resale and support services.<br><br>**DISPUTED** that there was ever a reference outside of court of a license called "The Neo4j Sweden Software License". The License was always referred to as AGPL, even when the commons clause was appended to the AGPL terms.<br><br>**DISPUTED** that "The Neo4j Sweden Software License" had a certain licensed scope for use. The commons clause stated that it prevented others from selling or offering certain services, but did it did not affect the end-users who were using the software under the license.<br><br>See Suhy Dec., Exs. 2-3 |
| | **Fact 6:** The NOTICE provision in the Neo4j Sweden Software License states that Neo4j® EE is developed and owned by Neo4j Sweden… and is subject to the terms of the [AGPL], with the Commons Clause as follows…." Dkt. No. 98-2, ¶ 11 and Ex. 3. It also provides additional information, such as the title of the work, terms and conditions for use of the work, and other identifying information about Neo4j Sweden and how to obtain a commercial license for the use of Neo4j® EE. *Id.* | **UNDISPUTED** The NOTICE provision was found in a separate file called NOTICE.txt which was always present next to the AGPL License file called LICENSE.txt<br><br>Every directory in the enterprise source code that has a LICENSE.txt file also has the corresponding NOTICE.txt.<br><br>See Suhy Dec., ¶ 3. and Exs. 1,3 |
| | **Fact 7:** In November 2018, Plaintiffs officially released of Neo4j® EE v3.5 solely under a commercial license. Dkt. No. 98-2, ¶ 13 and Ex. 4; Dkt. No. 118 at 3:13-15 (citing same). This meant that Plaintiffs were no longer publishing the source code for Neo4j® EE and offering it on an open source basis. *Id.* This was done to simplify the licensing model, as well as prevent bad actors from profiting by providing commercial support services in closed, proprietary projects. Dkt. No. 98-2, ¶ 13. | **UNDISPUTED** that Plaintiffs officially released of Neo4j® EE v3.5 solely under a commercial license.<br><br>**DISPUTED** that plaintiffs were no longer publishing the source code for Neo4j EE or offering it on an open source basis. All Neo4j EE versions prior to v3.5 were public and received updates from Neo4j Sweden. |

4853-5930-0200.2

3

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | **DISPUTED** that this was done to simply the licensing model, as well as prevent bad actors from profiting by providing commercial services in closed, proprietary projects.<br><br>See Suhy Decl., ¶ 4. |
| | Fact 8: Prior to the official release of Neo4j® EE v3.5, Plaintiffs published several beta versions via their GitHub repository subject to the Neo4j Sweden Software License. Dkt. No. 118 at 6:18-21; Dkt. No. 98-2, ¶ 14. | **UNDISPUTED** that plaintiffs published several beta versions of EE v3.5 via their GitHub repository.<br><br>**DISPUTED** that the license was ever called "Neo4j Sweden Software License." outside of court proceedings.   The beta versions were licensed under the AGPL and had the commons clause restriction appended to the AGPL license file. |
| | Fact 9: Neo4j® EE v3.5.0-RC1 was the last pre-release version available to Defendants via GitHub. Thereafter, only the source code for Neo4j® CE was made publicly available under the GPL via GitHub. *Id.* | **UNDISPUTED** Note that all prior versions of Neo4j EE remain publicly available on the Neo4j GitHub repository.<br><br>See Suhy Decl., ¶ 2. |
| 2. Defendants' intentional removal and/or alteration of CMI without the authorization of Neo4j Sweden | Fact 10: Following the release of Neo4j® EE v3.4, Suhy worked with Brad and Ben Nussbaum to form Graph Foundation, Inc. ("GFI") in June 2018.  Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Exs. 27-29); Dkt. No. 98-1, ¶¶ 24-26 and Exs. 22-24. | **DISPUTED** that Mr. Suhy worked to form the Graph Foundation, Inc. ("GFI").  Mr. Suhy was part of the volunteer committer team, and gave guidance as an open source advocate, but was not involved in forming the GFI entity.  Mr. Suhy declined any official role with the foundation.   There are no legal documents and Plaintiff's have not shown any official documents, or business records that show Mr. Suhy being involved in the formation of the GFI or serving as any official officer or director.<br><br>Plaintiff has not produced any business records, certificates, or any evidence that Mr. Suhy had a formal role in the GFI other than being on the volunteer committer team.<br><br>Beene Dec. Ex 30, Brad Nussbaum Deposition, 40:7-16, 42:9-14, 44:6-8, 78:19-24 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Additional Fact:** Defendants literally ***admit*** "that Mr. Suhy worked to form the Graph Foundation, Inc. ("GFI")." Further, a month after GFI was formed, Suhy sent an email to the Nussbaums stating, "We work together as one company. We all are the founders of the Graph Foundation." Dkt. No. 98-1, Exs. 29-30. | |
| | <u>Fact 11</u>: After Suhy helped form GFI, Defendants began offering and promoting a graph database software called "ONgDB." Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Ex. 27-29); Dkt. No. 98-1, ¶ 26 and Ex. 24. | **DISPUTED** that Suhy helped form GFI. See Fact 10.<br><br>**UNDISPUTED** that GFI began offering and promoting a graph database software called "ONgDB".<br><br>**UNDISPUTED** that Mr. Suhy promoted ONgDB as part of his open-source advocacy activities. Mr. Suhy also promotes other open source innovative technologies. |
| | <u>Fact 12</u>: To create ONgDB, Suhy downloaded the source code for Neo4j® EE v3.4 from Neo4j's GitHub repository and impermissibly replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL, which removed (a) the valid legal notices identifying Neo4j Sweden as the copyright holder and licensor in the NOTICE provision; and (b) the commercial restrictions imposed by the Commons Clause. Dkt. No. 118 at 6:7-11 (citing Dkt. No. 98-1, Ex. 3 at 28:25-29:11; Exs. 24-26, 28; Ex. 31 at 87:24-90:9); Dkt. No. 98-1, Ex. 3 at 171:23-172:23; Dkt. No. 98-2, ¶¶ 11-12, 27. | **DISPUTED.** Mr. Suhy did not create ONgDB, he was on the volunteer team of committers and gave the guidance on how to set it up, but GFI came up with the name and created the GitHub repositories.<br><br>**DISPUTED.** Mr. Suhy did not make any modifications to the source code in v3.4 code related to the AGPL in any way.<br>See Suhy Decl., Exs. 1-4, 9 |
| | **Additional Fact/Objection**: Suhy testified under oath that when he created ONgDB v3.4 from Neo4j® EE v3.4, he replaced the Neo4j Sweden Software License found in LICENSE.txt files with "verbatim" copies of the AGPL thereby removing Neo4j Sweden's CMI. Dkt. No. 98-1, Ex. 3 at 171:23-172:23; Ratinoff Decl., Ex. 1 at 199:14-201:16. This is consistent with contemporaneous statements Suhy made to potential customers. *See, e.g.*, Dkt. No. 98-1, ¶ 27 and Ex. 25 (Check out https://graphfoundation.org [] All the Neo4j enterprise distributions we package from now on will come from the foundation and have the standard vanilla AGPLv3 open source license"). This is also consistent with Plaintiffs' inspection of ONgDB v3.4 around the time of its release in 2018. Dkt. No. 98-2, ¶ 27. | |
| | <u>Fact 13</u>: ONgDB v3.5 contained at least 182 source code files that had only been previously released by Neo4j Sweden under the Neo4j Sweden Software License in the last publicly available beta version of Neo4j® EE | **UNDISPUTED** that there were at least 182 source code files released under AGPL + Commons clause. |

(205 of 245), Page 205 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 205 of 245
Case 5:18-cv-07182-EJD Document 191 Filed 06/29/23 Page 26 of 66

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | 3.5. Dkt. No. 118 at 6:18-21; Dkt. No. 98-1, Ex. 38 at 6:22-7:1, 8:4-16:24; Dkt. No. 98-2, ¶¶ 13-14, 29. | **DISPUTED** that the AGPL + Commons was ever called "Neo4j Sweden Software License" outside of court proceedings. The files were released under AGPL + Commons clause.<br><br>See Suhy Decl., Exs. 2-3<br><br>See Fact 12. |
| | **Additional Fact:** In particular, ONgDB v3.5.9 contained 247 Java classes that were released for the first time under the Neo4j Sweden Software License either in (a) Neo4j® EE version 3.4 and were incorporated into Neo4j® EE version 3.5; or (b) Neo4j® EE version 3.5.0-RC1, and were therefore never previously licensed under the AGPLv3. Additionally, the full underlying source code for the enterprise-only components of Neo4j® EE version 3.5.9 was never made available or released under the Neo4j Sweden Software License, or any open source license. Dkt. No. 98-2, ¶ 29. | |
| | <u>Fact 14:</u> Suhy again replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL in ONgDB v3.5, which (a) stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor; and (b) removed the commercial restrictions imposed by the Commons Clause in 28 LICENSE.txt files. Dkt. No. 118 at 6:21-26 (citing Dkt No. 98-1, Ex. 31 at 159:3-10 and Exs. 39-40; Dkt. No. 98-2, ¶ 30; Dkt. No. 91 at 19:2-25); Dkt. No. 98-1, ¶ 41 and Ex. 39.<br><br>**Additional Fact/Objection**: Suhy testified under oath that when he created ONgDB v3.4 from Neo4j® EE v3.4, he replaced the Neo4j Sweden Software License found in LICENSE.txt files with "verbatim" copies of the AGPL thereby removing Neo4j Sweden's CMI. *See* Additional Fact 12, *supra*.<br><br>**Additional Fact**: The cited source code headers and NOTICE.txt files do not contain the Commons Clause. Rather, they merely direct a user to the LICENSE.txt, which originally contained the Commons Clause. *See* Suhy Decl., ¶¶ 18-19, 22-23 and Exs. 3-4, 7-8. Once Suhy replaced the Neo4j Sweden Software License with a generic copy of the AGPL, the Commons Clause (along with the other notices, terms and conditions listed by Neo4j Sweden) ceased to exist in those LICENSE.txt files, thereby rendered the cross-references in the NOTICE.txt files | **DISPUTED.**<br>Mr. Suhy had not previously replaced anything relating to the AGPL and commons for v3.4 of Neo4j Enterprise. See Fact 12 above.<br><br>The NOTICE provision in the NOTICE.txt files which corresponded to each LICENSE.txt files, along with the 1000s of source code files which also had Neo4j Sweden CMI and the commons clause were untouched by Mr. Suhy and still clearly shows that the commons clause was present.<br><br>The only files Mr. Suhy touched were the AGPL LICENSE.txt files which clearly stated that the copyright to the file / license was to the free software foundation.<br><br>See Suhy Decl., Ex. 2<br><br>"Copyright (C) 2007 Free Software Foundation, Inc. <http://fsf.org/> Everyone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed." |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | meaningless.  Dkt. No. 98-2, ¶¶ 27, 29-30; Dkt. No. 98-1, ¶ 41 and Ex. 39; *accord* Suhy Decl., ¶¶ 21, 24-25 and Exs. 6, 9-10.  <br><br>**Additional Fact**:  The commit to the GitHub repository for ONgDB v3.5 cited by Defendants shows that Suhy replaced 28 LICENSE.txt files consisting of the Neo4j Sweden Software License with 28 LICENSE.txt files consisting of generic copies of the AGPL, which deleted <u>all</u> of Neo4j Sweden's CMI in those files.  Dkt. No. 98-1, ¶ 41 and Ex. 39 (3/1/19 commit titled "Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license"); Dkt. No. 98-2, ¶ 30 (referencing same commit that replaced the 28 LICENSE.txt files). | The NOTICE.txt files and all source code files still had the legal notices identifying Neo4j Sweden as the copyright holder and licensor, and also stated the license was AGPL + Commons.  <br><br>See Suhy Decl., Ex. 3  <br><br>"The Software is subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3 (http://www.fsf.org/licensing/licenses/agpl-3.0.html), included in the LICENSE.txt file, with the Commons Clause."  <br><br>See Suhy Decl.,  Exs. 1-10 |
| | **Fact 15:** Suhy knew that Neo4j Sweden owned the copyright for Neo4j® EE, that Neo4j Sweden controlled the licensing thereof, and he could not replace the Neo4j Sweden Software License with the AGPL without Neo4j Sweden's authorization. Dkt. No. 98-1, ¶ 36 and Ex. 34 ("As the copyright holder, is Neo4j allowed to add the specific additional terms mentioned above to the License.txt file …?"); *id.,* ¶ 58 and Ex. 56 (yellow highlights); *id.,* Ex. 3 at 183:12-25, 187:12-188:15, 189:1-191:3.  <br><br>**Additional Fact**:  The cited source code headers and NOTICE.txt files do not contain the Commons Clause.  Rather, they merely direct a user to the LICENSE.txt, which originally contained the Commons Clause.  *See* Suhy Decl., ¶¶ 18-19, 22-23 and Exs. 3-4, 7-8.  Once Suhy replaced the Neo4j Sweden Software License with a generic copy of the AGPL, the Commons Clause (along with the other notices, terms and conditions listed by Neo4j Sweden) ceased to exist in those LICENSE.txt files, thereby rendered the cross-references in the NOTICE.txt files meaningless.  Dkt. No. 98-2, ¶¶ 27, 29-30; Dkt. No. 98-1, ¶ 41 and Ex. 39; *accord* Suhy Decl., ¶¶ 21, 24-25 and Exs. 6, 9-10.  <br><br>**Additional Fact**:  The commit to the GitHub repository for ONgDB v3.5 cited by Defendants shows that Suhy replaced 28 LICENSE.txt consisting of the Neo4j Sweden Software License with LICENSE.txt consisting of generic copies of the AGPL, which deleted <u>all</u> of Neo4j Sweden's CMI in those files.  Dkt. No. 98-1, ¶ 41 and Ex. 39 (3/1/19 commit titled "Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf | UNDISPUTED that Mr. Suhy knew that Neo4j Sweden owned the copyright for Neo4j EE.  <br><br>DISPUTED that Mr. Suhy replaced anything called the Neo4j Sweden Software License.  He only made the AGPL License file verbatim as the copyright holder, the free software foundation instructed.  He did not replace the NOTICE.txt (notice provision) or any source code CMI which clearly stated that the software was copyrighted to Neo4j Sweden and had additional restrictions in the form of the common clause.  <br><br>Mr. Suhy's commit message which is used to explain why a commit / change was made states: "Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license."  See Suhy Decl., Ex. 9  <br><br>See Fact 14.  <br><br>See Suhy Decl.,  Exs. 1-10  <br><br>Neo4J Sweden does not own 100% of the code for Neo4J and the AGPL control how the software is licensed. Neo4j Sweden's misused the AGPL and Suhy corrected that. See response to Fact 1 and Facts 94 and |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | copyright and to be in line with the AGPL license"); Dkt. No. 98-2, ¶ 30 (referencing same commit that replaced the 28 LICENSE.txt files). | 100. |
| | **Fact 16:** Neo4j Sweden never gave Suhy permission to remove Commons Clause, rename it "ONgDB" and offer it for free under the AGPL.  Dkt. No. 98-1, ¶¶ 11-14, 27, 29-30. | **UNDISPUTED** that Neo4j Sweden never gave Suhy permission to remove Commons Clause or rename "it" ONgDB.<br><br>**DISPUTED** that Mr. Suhy renamed anything ONgDB. Mr. Suhy did not have any part in coming up with the name ONgDB.<br><br>**DISPUTED** that Mr. Suhy offered ONgDB – this is a project that is sponsored and offered by GFI.<br><br>The AGPL authorizes licensee to remove any additional terms. See Suhy Dec., Ex. 6. |
| | **Fact 17:** Suhy has been the sole officer and director of PureThink since he formed the corporation.  Ratinoff Decl., Ex. 2 at 176:4-11; *see also* Dkt. No. 98-1, ¶ 16 and Ex. 14 ("[t]he principle behind PureThink … has created a new corporate entity called iGov Inc."). | **DISPUTED.**  Mr. Suhy has had other partners who served as officers and directors since PureThink was formed in 2002.<br><br>See Suhy Decl., ¶ 8. |
| | **Additional Fact**: Defendants state "PureThink is a single person company filing as an s-corporation for tax purposes."  *See* Fact 86, *infra*. | |
| | **Fact 18:** Suhy has been the sole officer and director of iGov Inc. since he formed the corporation.  Dkt. No. 98-1, ¶ 12 and Ex. 10; *id.,* Ex. 3 at 21:20-23:25. | **UNDISPUTED** |
| 3. Defendants Distributed Neo4j Sweden's Works with its CMI Removed | **Fact 19:** Suhy made Neo4j Sweden's source code with its CMI removed publicly available via GFI's website and GitHub repository for ONgDB. Dkt. No. 98-1, Ex. 24 ("IRS is adopting the open source Neo4j Enterprise distributions we are transfered [sic] to [GFI]"); *id.*, ¶¶ 27 and Ex. 25 ("All the Neo4j enterprise distributions we package from now on will come from [GFI] and have the standard vanilla AGPLv3 open source license."); *id.*, ¶¶ 28 and Ex. 26 ("I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. [] Our open-source fork we manage can be found at https://graphfoundation.org"); *id.*, Ex. 3 at 172:4-23, 200:9-25, 211:7-24; *id.*, ¶¶ 41 and Ex. 39 (GFI GitHub commit); Dkt. No. 98-2, ¶¶ 27, 29-30.  This resulted in users downloading infringing ONgDB over 14,000 times by December 2020. Dkt. No. 118 at 8:13-15. | **DISPUTED** – Mr. Suhy does not control or run the GFI website or GFI Github repositories.  He is one of many volunteer open source committers on the team.<br><br>Beene Dec. Ex 30, Brady Nussbaum Deposition, 40:7-16, 42:9-14, 44:6-8, 78:19-24<br><br>The CMI is not (its) Neo4J Sweden's CMI. The copyright to the AGPL is owned by FSF. Neo4J Sweden's violation of FSF's copyright means the CMI was false in violation of the DMCA. Suhy corrected that violation with the removal of the commons clause. See |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Fact 98. |
| | **Additional Fact**: On July 9, 2018, Suhy offered a sponsor of GFI an "explain[ation] why [GFI] was created and ***how we package Neo4j Enterprise (We call ONgDB) distributions that are being adopted at IRS*** and most likely DHS as they are already using the open source distributions we packaged before we assigned them to [GFI]." Dkt. No. 98-1, ¶ 26 and Ex. 24 (emphasis added). GFI also confirmed Suhy was involved in the initial development of ONgDB, including making commits and developing solutions for that software.  Ratinoff Reply Decl., Ex. B at 82:20-25. | |
| | <u>Fact 20</u>: Suhy provided hyperlinks to potential users of Neo4j® EE to download ONgDB from GFI's website and GitHub repository from his jmsuhy@purethink.com email account. Dkt. No. 98-1, Ex. 26 ("I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. [] Our open-source fork we manage can be found at https://graphfoundation.org"); Ex. 40 ("I just wanted to let you know that for ONgDB 3.5 - we merged the build framework and enterprise code back into the code repository like it used to be before Neo started stripping it out. [] See: https://github.com/GraphFoundation/ongdb"); Ex. 41 (landing page for https://github.com/graphfoundation/ongdb); Ex. 45 (emailing hyperlink to https://graphfoundation.org/ongdb/); Dkt. No. 98-1, ¶¶ 43, 60 and Exs. 41, 58 (landing page for https://github.com/graphfoundation/ongdb). | UNDISPUTED that Mr. Suhy provided hyperlinks references for users of the website to view the source code and download distributions.  These links sent the users who clicked on them to the GFI website, which Mr. Suhy has no official role, has no control over, and whom is just one of the many volunteer committers who volunteers time to make the software better for the open source community.

Note: Dkt. No. 98-1, Ex. 26 shows date of 08/28/2018

The code still had commons as of Nov 2019.

See Suhy Decl.,  Exs. 1-4 |
| | <u>Fact 21</u>: Suhy also provided hyperlinks to potential users of Neo4j® EE to download ONgDB from GFI's website and GitHub repository from his jmsuhy@igovsol.com email account.  Dkt. No. 98-1, ¶ 43 and Ex. 41 (landing page for https://github.com/graphfoundation/ongdb); *id*., ¶ 59 and Ex. 57 (GFI webpage https://github.com/graphfoundation/ongdb), Exs. 44, 46, 54, 76-77 (emails with hyperlinks); Ratinoff Decl., Ex. 70 (email with hyperlink to https://graphfoundation.org/ongdb/).  He also tweeted and retweeted links to GFI's ONgDB webpage. Dkt. No. 98-1, Exs. 98-100, 102-104 (tweets); Exs. 105-111 (retweets). | UNDISPUTED – see Fact 20 above. |
| | <u>Fact 22</u>: iGov's website provided links to potential users of Neo4j® EE to download ONgDB directly from iGov and from GFI's website.  Dkt. No. 98-1, ¶¶ 65-72 and Exs. 63-70; Dkt. No. 98-2, ¶ 27. | UNDISPUTED – it should be noted that all the downloads from GFI and from the mirror site I setup on iGov's website had the commons clause in the AGPL |

(209 of 245), Page 209 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 209 of 245
Case 5:18-cv-07182-EJD  Document 191  Filed 06/29/23  Page 30 of 66

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | license files. |
| | **Fact 23:** iGov used a "Download Neo4j Enterprise" hyperlink on its "downloads" page to redirect consumers to download links for ONgDB until July 27, 2020. Dkt. No. 118 at 27:12-28:1; Dkt. No. 98-1, Exs. 66-68 (highlighted in red); *id.,* Ex. 13 at RFA Nos. 10, 14. | UNDISPUTED that the hyperlink was on the iGov downloads page. It was a mistake and should have said "Download ONgDB Enterprise". The link was fixed as soon as it was brought to Mr. Suhy's attention.<br><br>See Fact 22 above. |
| | **Fact 24:** On May 22, 2018, Suhy emailed the IRS telling them the addition of the Common Clause to the license for Neo4j® EE v3.4 was improper and sought to convince the IRS to move to an unrestricted version of Neo4j® EE 3.4. Ratinoff Decl., ¶ 31 and Ex. 29. The IRS did not obtain an independent legal opinion on Suhy's representations regarding the alleged impropriety of adding commercial restrictions to the AGPL. *Id.,* Ex. 4 at 96:6-98:21.<br><br>**Additional Fact:** Defendants admit, "the AGPL with the commons clause … prohibited the non-paying public from engaging in commercial resale and support services." *See* Facts 4-5. The word "unrestricted" also means "freely available for use …." https://www.merriam-webster.com/thesaurus/unrestricted. | DISPUTED the reference in Ratinoff Decl., ¶ 31 and Ex. 29.<br>Does not mention anything related to trying to get IRS to move to an "unrestricted" version. Furthermore, Plaintiffs have never shown Mr. Suhy ever used the terms "unrestricted" or "restrictions" in describing the AGPL license without the commons clause.<br><br>Mr. Suhy has only used the word "restriction" in only 2 scenarios. 1. when explaining that the commercial license adds restrictions, and 2. around physical restrictions of software itself relating to number of cores, instances, or other physical attributes of Neo4j Enterprise.<br><br>See: Dkt. No. 98-1, Exs. 68,75 "no limitations on causal cluster instances, cores, or production usage."<br><br>Dkt. No. 98-1, ¶¶ 45 and Ex. 43 "ONgDB takes Neo4j core (which is open source) and adds enterprise features into it, all 100% free and open, with no limits on cores or cluster instances that 'commercial subscriptions' impose."<br><br>Further, the commons clause does not prevent IRS from using Neo4j v3.4 in production. Mr. Suhy stated this in the email. |

4853-5930-0200.2

10

(210 of 245), Page 210 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 210 of 245
Case 5:18-cv-07182-EJD   Document 191   Filed 06/29/23   Page 31 of 66

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | "Again this does not effect IRS in any way, even if the term was enforceable." See Ratinoff Decl., ¶ 31 and Ex. 29.<br><br>The email referenced in Ex. 29 above, was sent May 22nd, 2018.<br>At this date, even the AGPL license files had the references to the commons clause.<br><br>See Suhy Decl., Exs. 1-4,9 |
| | Fact 25: On May 24, 2018, the IRS awarded another entity that Suhy had an ownership interest in at the time, eGovernment Solutions ("eGov Sol"), a contract for the development and support of the CDW Knowledge Graph Environment ("CKGE"), which used open source Neo4j® EE software as a main component. Ratinoff Decl., ¶¶ 30, 32 and Exs. 28, 30; id., Ex. 4 at 71:2-74:21, 75:14-76:14, 77:7-78:16, 85:3-18, 126:5-127:15; id., Ex. 3 at 47:14-50:8, 50:14-54:3.<br><br>**Additional Fact:** Prior to the award of the CKGE Contract, Suhy sent an email to the IRS stating, "[t]he current CKGE environment will require any potential vendor to provide 2 critical components 1) The Government Package / Suite for Neo4j and 2) professional services for continued development." Ratinoff Decl., ¶ 32 and Ex. 30 (yellow highlight). | UNDISPUTED that IRS awarded eGovernment Solutions a contract to develop and support the CDW Knowledge Graph ("CKGE") environment which used an open source Neo4j software.<br><br>DISPUTED that Neo4j was a main component in the platform. It was in fact just one small component of one service that made up the complex platform.<br><br>The SOW for the CKGE project does not have anything referencing Neo4j EE as a component, let alone the main component of CKGE.<br><br>"The CKGE framework includes a graph database: elastic search capabilities; java-script based, user-interface; and microservices components."<br><br>The only time the word Neo4j was mentioned was under the "skills section" of the SOW. (underlined below)<br>"The vendor will need to work with the following components: React, Angularjs, Neo4j, JAVA, micro-services architecture, and Hadoop/Spark, Elastic Search, Kafta, Agile methodology, GitLab, and Plottable."<br>See Suhy Decl., Ex. 11 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | See Suhy Decl., ¶ 5. |
| | **Fact 26:** Before the IRS awarded the CKGE contract to eGov Sol, Suhy made clear that he would be performing the work through iGov. *See* Ratinoff Decl., Ex. 4 at 61:11-64:23, 72:2-74:21, 75:14-76:14, 77:7-78:11, 85:3-18; *id*, Ex. 3 at 30:8-31:21, 32:9-37:14, 50:14-54:3; *id.,* Ex. 2 at 188:10-193:25; *id.,* ¶ 30 and Ex. 28. | |
| | **Fact 27:** eGov Sol viewed the CKGE contract as belonging to Suhy to which he had sole responsibility for and control over. Ratinoff Decl., Ex. 3 at 30:8-32:23, 34:1-37:14, 50:14-51:20; *id.,* ¶ 37 and Ex. 35 at §§ 5, 5.1, 5.2 and 5.3.

**Additional Fact:** Consistent with the testimony of eGov Sol, Section 5.2 of the stock purchase agreement cited by Defendants states "eGovernment Solutions Inc will give John Mark Suhy the authority to drive the direction of the project (Section 5) and is given the authority to enter into agreements on behalf of eGovernment Solutions Inc relating to this project…." *Compare* Ratinoff Decl., Ex. 35 at §5.2 *and id.*, Ex. 3 at 30:8-32:23, 34:1-37:14, 50:14-51:20. | DISPUTED: The stock purchase agreement between Mr. Suhy and eGovernment Solutions does not state anywhere that Mr. Suhy has the sole responsibility or sole control. The stock purchase agreement gave Mr. Suhy the authority to drive the direction, but not absolute control.

"5.1 eGovernment Solutions Inc hereby hires John Mark Suhy as an Independent Contractor for all option years that are exercised on the CKGE contract. His compensation will be $200,000 per year paid when eGovernment Solutions gets paid…"

"5.2 eGovernment Solutions Inc will give John Mark Suhy the authority to drive the direction of the project (Section 5) and is given the authority to enter into agreements on behalf of eGovernment Solutions Inc relating to this project as long as the agreements are in line with government contracting laws and hubzone regulations."

See Ratinoff Decl., ¶ 37 and Ex. 35 |
| | **Fact 28:** The IRS paid a total of $1,316,000 to eGov Sol under the CKGE contract, which in turn eGov paid to Suhy and iGov. Ratinoff Decl., Ex. 3 at 54:10-59:5, 59:18-62:3, 63:13-65:25, 67:7-69:11, 69:16-70:19, 71:17-79:12; *id.*, ¶¶ 38-44 and Exs. 36-42. | UNDISPUTED that IRS paid a total of $1,316,000 to eGovernment Solutions under the CKGE contract.

DISPUTED that eGovernment Solutions turned around and paid that amount to Mr. Suhy and/or iGov Inc. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | eGovernment Solutions paid a $200,000 to support the CKGE contract, act as the official facility clearance officer for eGovernment Solutions because Mr. Suhy had an active clearance, and help with business development.  See Fact 27 and Ratinoff Decl., ¶ 37 and Ex. 35<br><br>Over $251,450 of the revenue from IRS did not go to Mr. Suhy in any manner.<br><br>The total payments made to iGov Inc were $1,064,550.00<br><br>See Suhy Decl., ¶¶ 6,7 |
| | **Fact 29**: Suhy was entitled to all the payments eGov Sol received from the IRS on the CKGE contract.  Ratinoff Decl., Ex. 3 at 30:13-32:25, 36:15-37:14, 39:18-40:18, 42:14-19, 50:14-54:3, 71:17-79:12, 81:6-82:17; *id.*, ¶ 44 and Ex. 42.<br><br>**Additional Fact:** eGov Sol confirmed that Suhy was entitled to the $200,000 payments referenced in Section 5.1 of the stock purchase agreement, which reflected the option year payments made by the IRS under the CKGE Contact.  Dkt. No. 183, Ex. 3 at 31:7-32:21, 34:1-37:14, 50:14-53:4. | **DISPUTED** that Mr. Suhy was entitled to all payments eGov Sol received from the IRS on the CKGE contract.<br>See Facts 27-28,<br>See Suhy Decl., ¶¶ 6,7<br><br>**"5.1 eGovernment Solutions Inc hereby hires John Mark Suhy as an Independent Contractor for all option years that are exercised on the CKGE contract. His compensation will be $200,000 per year paid when eGovernment Solutions gets paid. eGovernment Solutions will not be liable to pay John Mark Suhy for any work done on this contract in the event they donot get paid from the client. If the payment for the project is received all at once, then John Mark Suhy will also be paid his total salary for the option year up front, otherwise salary will be paid as eGovernment Solutions Inc get paid by the Treasury."**<br><br>See Ratinoff Decl., ¶ 37 and Ex. 35 |
| | **Fact 30**: eGov Sol maintained a bank account for all the payments received from the IRS, which Suhy had access to and was authorized to disburse the payments made by the IRS as he saw fit.  Ratinoff Decl., Ex. 3 at 42:14-19, 62:1-63:12, 66:1-15. | **UNDISPUTED** that eGovernment Solutions had a bank account that received payments from clients including IRS. Mr. Suhy had access to the account because it had not been |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | removed when he sold his shares.    Mr. Suhy just happened to still have checks and helped out of convenience since there was a bank branch near his home.<br><br>**DISPUTED** Mr. Suhy was not authorized to disburse the payments made by the IRS as he saw fit.  He had to request permission anytime he wanted to write a check for his salary.<br><br>See Facts 27-29<br>See Ratinoff Decl., ¶ 37 and Ex. 35 |
| | Fact 31: In July 2018, a sales representative from Neo4j USA met with the IRS and then provided a one-year $156,000 quote for a Neo4j® EE v3.4 subscription on then-current requirements of CKGE.  Ratinoff Decl., ¶ 34 and Ex. 32; *id.*, Ex. 4 at 113:5-115:20, 116:5-117:21. | **DISPUTED** that CKGE had any requirement for Neo4j EE at all.<br><br>Otherwise **UNDISPUTED** that a sales representative from Neo4j USA met with IRS and provided the quote mentioned. |
| | Fact 32: As of August 2018, the IRS understood that Neo4j® CE had a performance limitations, while Neo4j® EE had enterprise-only features, came with professional services and subscriptions.  The IRS ultimately decided to not allocate $156,000 for a license for Neo4j® EE because ONgDB was a free unrestricted alternative.  Ratinoff Decl., Ex. 4 at 103:2-104:12, 121:18-124:4, 126:5-129:25, 130:9-132:1. | **DISPUTED.**  Plaintiff's do not provide any evidence  citing a "reason"" to why IRS did not allocate money for a Neo4j EE license.    See Fact 24.<br><br>**UNDISPUTED** that Neo4j EE had enterprise only features compared to Neo4j CE, and that the Neo4j EE commercial license came with support.<br><br>Zagalsky of Neo4J USA misrepresented a Fare Trade Licensing document as applying to the AGPL code on 4-4-2017 before the IRS to decline to do business with Neo4J USA. There is no obligation under the AGPL to make a project open when using AGPL licensed software. AGPL §2, Suhy Dec. Ex 22.<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | Fact 33: In August 2018, Suhy convinced the IRS integrate ONgDB v3.4 rather than Neo4j® EE v3.4 into the CKGE platform based, in part, on | **DISPUTED** |

14

(214 of 245), Page 214 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 214 of 245
Case 5:18-cv-07182-EJD Document 191 Filed 06/29/23 Page 35 of 66

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | misrepresentations about GFI being the copyright holder and licensor of ONgDB. Ratinoff Decl., Ex. 4 at 126:5-129:25, 132:2-23, 133:15-138:2, 138:22-140:20, 141:8-24, 142:15-143:20; *id.*, ¶¶ 35-36 and Exs. 33-34.<br><br>**Additional Fact:** The testimony cited by Defendants is consistent with the foregoing. On August 13, 2018, Suhy sent an email to the IRS stating "ONgDB open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc…." Ratinoff Decl., ¶35 and Ex. 33. Mr. Dunn confirmed the IRS understood from this email and conversations with Suhy that GFI added the source code for the enterprise features to Neo4j® CE (core) to create ONgDB and the open source license for those features came from GFI. Ratinoff Decl., Ex. 4 at 132:2-19, 133:15-137:6. | Mr. Suhy never claimed GFI was the copyright holder. The only place in Ex. 4 that even mentions the word "copyright" shows that IRS knew the copyright holder was Neo4j.<br><br>"**Q. So the Neo4j source code, Neo4j would own the copyright to that. Correct?**<br>**A. Yes. I would assume it would be available based on whatever Neo4j allowed it to be used from.**" Ratinoff Decl., Ex. 4 at 130:1-4<br><br>IRS was not even sure about who the license came from, and did not associate the license to be anything related to copyright.<br><br>"**A. My understanding it was not the Enterprise. It was the core source code from GitLab, Neo4j's GitLab, whatever that licensing was of that core source code brought over, and then the additional elements, whatever elements ONgDB, The Graph Foundation added onto that. That's how I understood from my point of view who was -- who was distributing and licensing it and the follow-through from whatever the licensing was of the Neo4j core that was off of GitLab. That's how I understood it.**" Ratinoff Decl., Ex. 4 at 135:14-23<br><br>The source code for v3.4 clearly stated that Neo4j Sweden was the copyright holder.<br><br>"Neo4j Copyright © 2002-2018 Neo4j Sweden AB (referred to in this notice as "Neo4j") [http://neo4j.com]<br>This product includes software ("Software") developed and owned by Neo4j." Suhy Decl., and Ex. 3<br><br>See also Suhy Decl., Exs. 1-4 |

4853-5930-0200.2

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | There is no evidence that shows that IRS was convinced by Mr. Suhy. <br><br> See Fact 24 <br><br> There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | **Fact 34:** While working under the CKGE contract, Suhy and iGov were responsible for supporting, maintaining and updating ONgDB on an internal repository at the IRS.  Dkt. No. 98-1, Ex. 38 at 23:14-24:4; Ratinoff Decl., Ex. 3 at 366:13-368:9; *id.,* Ex. 4 at 75:14-77:24, 126:5-128:24, 142:15-143:20, 179:4-23, 204:4-206:9, 207:10-209:11; *id.,* ¶ 36 and Ex. 34; *id.,* ¶ 47 and Ex. 45 (yellow highlights). | **DISPUTED** Suhy and iGov were NOT responsible for supporting, maintaining, and updating ONgDB on the internal repository. <br><br> The Statement of Work for the CKGE project had no requirement to support, maintain or update ONgDB.  See Suhy Decl., Ex. 11 <br><br> Mr. Suhy helped IRS with technologies on his own time and not as part of any paid consulting.  Mr. Suhy also assisted with other technologies that he had expertise around when time permitted. <br><br> Mr. Suhy simply helped IRS get the source code into the IRS internal repository so that IRS could perform security scanning outside any contractual obligation between IRS and eGovernment Solutions Inc.  This happened around the time that a serious Log4j Vulnerability was found to exist in Neo4j. <br><br> There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | **Fact 35:** Suhy and iGov helped the IRS upgrade the CKGE platform to ONgDB v3.5 and continued to integrate subsequent subversions through at least April 2022.  Dkt. No. 98-1, Ex. 3 at 224:13-23; Ratinoff Decl., Ex. 4 at 207:7-209:15, 210:5-211:20, 213:1-216:8; *id.,* ¶¶ 45-49 and Exs. 43-47 (yellow highlights). | **DISPUTED**  The CKGE platform does not require upgrades to use specific graph databases. <br><br> The CKGE platform is suite of micro-services, many of which have nothing to do with graphs. The only service that |

(216 of 245), Page 216 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 216 of 245
Case 5:18-cv-07182-EJD   Document 191   Filed 06/29/23   Page 37 of 66

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | end-users used which even touched the graph was called the graph explorer.  It provides a way to explore graph structure through visualization.   It is not dependent on any specific underlying graph database and does not require any sort of upgrade to switch between backend graph and non-graph databases.<br><br>See also Fact 34.<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | Fact 36: After April 2022, the IRS started calling ONgDB just "GDB," which still used Neo4j® EE 3.5 source code improperly licensed under the AGPL, which Suhy compiled on the IRS's internal GitLab repository. Ratinoff Decl., Ex. 4 at 175:6-176:21, 193:9-198:15.<br><br>**Additional Fact:** The IRS confirmed what it calls "GDB" was licensed under the AGPL without the Commons Clause, which was compiled from Neo4j® EE 3.5 source code by Suhy.  Ratinoff Decl., Ex. 4 at 195:2-198:15; Fact 14, *supra*.  Specifically, Mr. Dunn testified:<br><br>    Q. So you're saying that -- okay. So you're saying that for in 2022 that the version of ONgDB that was being run on the servers showed up as being Neo4j source code version 3.5.2.6? Is that fair?<br>    A. Yes. Yes. [] But your main point there is what I understand when I talked with Puru, and he looked at the code base of the graph database, and it's referred to as Neo4j 3.5, and if it's 2.6, that's what it would be. Does that make sense?<br><br>    Q. Yeah. I think so. And you said the different name. So from the IRS's perspective, the program is the same, it's just the names have 16 changed from ONgDB to GDB. Is that correct?<br>    A. Yeah.<br><br>Ratinoff Decl., Ex. 4 at 195:2-13<br><br>    Q. So where did that Neo4j source code that is now maintained | DISPUTED.  There is not any ONgDB, GDB, Neo4j, or other source code based on Neo4j in use at IRS which is "improperly licensed".  All the source code within IRS clearly states that the license is AGPL + Commons.   Plaintiff has provided no evidence to the contrary.<br><br>See Suhy Decl., ¶ 9<br><br>**"Q.  I didn't get -- I didn't quite follow that. I apologize.  To clarify, so you understood -- so you understood that the license that ONgDB was under was the AGPL version 3 but with the Commons Clause removed by Mr. Suhy?**<br><br> **A.  Yeah.  I don't -- I don't remember if he removed it.  I don't remember it being discussed.  I just remember the description of taking the core source code from GitLab, compiling it, and then, as we discussed, adding the additional capabilities that would be the ONgDB release.**<br><br>**So I can't remember the Commons Clause being part of the discussion.  I can't remember if he said that he** |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | internally come from?<br>**A.** John Mark Suhy.<br><br>**Q.** And to your knowledge, what license is that source code under? Is it under the AGPL?<br>**A.** As far as I know. Yeah. I haven't been informed of any other requirements.<br><br>**Q.** And it's not under the AGPL clause comm[ons]?<br>**A.** I'm not -- as far as I know, no.<br><br>*Id.*, Ex. 4 at 198:5-13 | took it out or what, but I can't say that. Yeah. I just can't say that. In my mind, I'm tracing it from the GitLab source code, whatever that licensing was, and then released by ONgDB under their licensing." Ratinoff Decl., Ex. 4 at 133:14-134:6<br><br>UNDISPUTED that IRS started calling ONgDB just "GDB,"<br><br>DISPUTED that the graph used Neo4j EE 3.5 source code, as Neo4j did not release the enterprise source code for v3.5 after the pre-releases. |
| | Fact 37: Between August 2018 and April 2022, they facilitated the use of four instances of ONgDB on at least three servers within the CKGE platform (a/k/a "main graph") environment. Ratinoff Decl., Ex. 4 at 152:21-156:16, 157:23-158:11, 161:23-163:4, 166:19-167:4, 168:24-172:10, 174:19-175:5, 179:13-23. | DISPUTED that Mr. Suhy or iGov Inc facilitated the use of four instances of ONgDB.  Mr. Suhy gave guidance on the servers needed for the entire CKGE stack, which the graph database was not the main piece of.  Furthermore, the references Plaintiff give show that the person being deposed was not sure of the number of ONgDB instances, and was guessing.<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | Fact 38: iGov operated www.graphstack.io to further promote ONgDB over Neo4j® EE and allowed consumers to directly download ONgDB without any restrictions.  *See* Dkt. No. 98-1, ¶ 77 and Ex. 75 ("iGov Inc is the company behind GraphStack" and that "iGov Inc offers production support packages for Neo4j / ONgDB Enterprise open source distributions for US government agencies"); *id.*, Ex. 13 (RFA No. 40); *see also* Ratinoff Decl., ¶¶ 50-54 and Exs. 48-52. | DISPUTED  www.graphstack.io was not operated just to promote ONgDB over Neo4j EE.  The website promoted a stack of tools that abstracted out knowledge graphs from the underlying implementation.<br><br>The term "restrictions" mentioned are in the context of physical restrictions and have nothing to do with license restrictions.<br><br>*See* Dkt. No. 98-1, ¶ 77 and Ex. 75<br>"Open Native Graph DB (ONgDB) is a non-restrictive fork of Neo4j managed by the Non profit Graph Foundation ONgDB is 100% free and open, and **there are no limitations** |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | on instances in clusters, cores, etc!"<br><br>"What is GraphStack?<br> **GraphStack is a development suite that allows teams to build large scale graph apps.**"<br><br>See also Fact 24. |
| 3. Defendants had reason to know that their actions would induce, enable, facilitate, or conceal copyright infringement | **Fact 39:** Defendants knew or had reasonable grounds to know that they could not replace the Neo4j Sweden Software License with the AGPL without Neo4j Sweden's authorization. *See* Ratinoff Decl., Ex. 1 at 178:17-179:8, 186:5-184:10.  This is further evidenced by their failure to seek competent legal advice, and reliance on Suhy's unqualified analysis of the provisions of the AGPL and "internet research" that he admitted was inconclusive. *Id.* at 196:22-201:16.<br><br>**Additional Fact:** Suhy did not seek legal advice concerning whether he could remove the Commons Clause from the Neo4j Sweden Software License.  *See* Facts 40-42. GFI also did not obtain a legal opinion on whether it could remove the Commons Clause as "further restriction" from the Neo4j Sweden Software License before GFI and Suhy replaced the Neo4j Sweden Software License with the AGPL in ONgDB.  Ratinoff Reply Decl., Ex. B at 117:8-118:11; *id.,* Ex. C at 288:14-24. | **DISPUTED** defendants only created a commit to make the AGPL LICENSE.txt files verbatim as instructed in the AGPL preamble  by the copyright holder,  the free software foundation.  Suhy Dec., Ex. 6<br><br>The commit message shows the intent.<br><br>Furthermore, the defendants did not replace anything called "Neo4j Sweden Software License".  The license has always been called the AGPL, even when the commons clause was appended to it.<br><br>Mr. Suhy was speaking of the files owned by the FSF only.<br><br>Mr. Nussbaum from the Graph Foundation did get independent legal guidance which was communicated to Mr. Suhy as well.<br><br>"**We have been advised by The Free Software Foundation in a non-legal capacity and have verified with our legal counsel independently that the Commons Clause is a "further restriction" to AGPLv3 and may be removed according to this clause of AGPLv3**". See also Suhy Decl., Ex. 12 |
| | **Fact 40:** Suhy participated in a discussion thread on Plaintiffs' GitHub repository in May 2018 where a person claiming to represent Neo4j told him that his interpretation of Section 7 was wrong for reasons similar to those found by this Court. Dkt. No. 98-1, ¶ 119 and Ex. 117; Ratinoff Decl., Ex. 1 at 201:18-205:16.  Suhy "didn't have time to go and dive into it" and chose not to seek legal advice concerning those views despite not understanding Plaintiffs' legal position on the interpretation of the AGPL. | **UNDISPUTED** that Mr. Suhy participated in a discussion thread on Plaintiffs' Github repository in May 2018.<br><br>DISPUTED that Mr. Suhy chose not to seek legal advice concerning those views.   The Graph Foundation did get independent legal advice and communicated that to Mr. |

19

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Ratinoff Decl., Ex. 1 at 205:17-206:11. | Suhy.<br><br>Furthermore, Mr. Suhy did do quite a bit of due diligence which is one of the reasons that he only followed the instructions in the files that specifically stated they were copyrighted to the free software foundation. |
| | **Fact 41:** When Suhy sought guidance from the FSF on the removal of the Commons Clause, the FSF told him "[t]he copyright holder on a work is the one with the power to enforce the terms of the license" and "[i]f a work was previously available under a free license, and later that license is changed, users can always use that earlier version under the terms of the free license." Dkt. No. 98-1, ¶ 36 and Ex. 34 (yellow highlights). The FSF also warned that "we cannot provide you with legal advice" and that he should "talk with legal counsel." *Id.* | UNDISPUTED the free software foundation gave the guidance which Mr. Suhy followed. |
| | **Fact 42:** Suhy ignored the FSF's admonitions, and did not consult an attorney before removing the Commons Clause. Ratinoff Decl., Ex. 1 at 183:2-184:9, 187:12-188:15, 189:1-191:3, 192:18-193:24, 196:22-24. | **DISPUTED** Mr. Suhy did not remove the commons clause from Neo4j.  In March 2019, he only made the AGPL License file verbatim as the copyright holder of the file, the free software foundation, instructed in the preamble.   The commons clause was still present in all NOTICE provisions and source code headers.<br><br>See also Fact 14 |
| | **Fact 43:** Suhy understood that the Common Clause imposed commercial restrictions on the use of Neo4j® EE.  Dkt. No. 98-1, ¶ 27 and Ex. 25 ("[Neo4j Sweden] tried adding a 'commons clause' to the AGPL license, trying to precent [sic] companies from selling (and competing against them on procurements)"); *id.,* ¶ 31 and Ex. 29 ("People can pay money for a restrictive commercial license, or use Neo4j Enterprise for free under it's open source license"); *id.,* ¶¶ 44-45; Exs. 42-43 (yellow highlights); Ratinoff Decl., Ex. 1 at 154:22-156:1. | **DISPUTED** Mr. Suhy did not use the term "commercial restrictions" in relationship to the commons clause.   Mr. Suhy knew that the commons clause forbid re-selling, but was unsure about the rest as the language of the commons clause did not define what "support services" was exactly. |
| | **Additional Fact:** Defendants admit that "the AGPL with the commons clause … prohibited the non-paying public from engaging in commercial resale and support services." *See* UDF Nos. 4-5. | |
| | **Fact 44:** Suhy removed the Commons Clause to induce end-users to use ONgDB in commercial applications for free and then use the cost savings to pay Defendants to provide support services to those users.  Dkt. No. | **DISPUTED** Mr. Suhy removed the commons clause from only the AGPL License files and gave the reason for the removal clearly in the commit message.  The commons |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | 98-1, ¶ 31 and Ex. 29; *id.,* ¶¶ 64-68 and Exs. 62-66; *id.,* ¶ 128 and Ex. 126; *see also* Dkt. No. 118 at 5:24-6:1, 6:11-7:5, 29:4-11; Dkt. No. 98-1, ¶¶ 44-45, 49 and Exs. 42-43, 47; *id.,* ¶ 49 and Ex. 47; *id.,* ¶ 56 and Ex. 54; *id.,* ¶¶ 128 and Ex. 126; *id.,* ¶¶ 132-134 and Exs. 130-132.<br><br>**Additional Fact:** The cited source code headers and NOTICE.txt files do not contain the Commons Clause. Rather, they merely direct a user to the LICENSE.txt, which originally contained the Commons Clause prior Suhy's removal thereof. *See* Suhy Decl., ¶¶ 18-19, 22-23 and Exs. 3-4, 7-8; *see also* Facts 14-15. Defendants further admit that the Commons Clause "prohibited the non-paying public from engaging in commercial resale and support services." *See* Facts 4-5, *supra*. | clause was not removed from the NOTICE provision (NOTICE.txt) or any source code files. See Fact 14.<br><br>Mr. Suhy's commit message which is used to explain why a commit / change was made states: "**Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license.**" See Suhy Decl., Ex. 9<br><br>Furthermore, the commons clause did not prevent end-users from using Neo4j EE for free in commercial applications or elsewhere. Plain |
| | <u>Fact 45:</u> Defendants used the IRS's adoption of ONgDB to encourage other government agencies and contractors to do the same and pay them for support services. Dkt. No. 98-1, ¶¶ 26, 44-49 and Exs. 24, 42-47.<br><br>**Additional Fact:** iGov, AtomRain and GraphGrid worked together to provide paid support services to users of ONgDB, as confirmed by Suhy:<br><br>Once you are supporting Airforce with Neo4j, then there is a large potential for custom software development services. Since Neo4j partners are usually forbidden from using Neo4j under it's open source license - this puts you in a very unique position for anyone who wants custom Neo4j development. We could support you on all development tasks, and bring past performance from our other federal Neo4j projects.<br>* * *<br>Our team: iGov Inc, GraphGrid (https://graphgrid.com), and AtomRain (https://atomrain.com). We work together as one company."<br><br>Dkt. No. 98-1, Ex. 29. | UNDISPUTED that defendants referenced IRS's adoption.<br><br>DISPUTED – that defendants did this in order for agencies and contractors to pay defendants.<br><br>In all the references given by plaintiff for Fact 46, only one was related to trying to get paid, and it was for a package of software. "**Neo4J Server including the Graphsware PHP-Neo4J Client (Guzzlehttp, Heoku, Myclabs, Pimple, Psr, Silex, Symfony, and Composer**" Dkt. No. 98-1, ¶ 44 and Ex. 42<br><br>Not only did defendants not encourage agencies or contractors to pay them, they told them they could find companies with past performance such as AtomRain and GraphGrid.<br><br>"**Usually which one you go with falls to the cost of production support. From a past performance perspective, the open source distributions are actually in production in the Federal government and there are companies such as us , AtomRain, GraphGrid, etc all have past performance providing production support for federal agencies for Neo4j Enterprise open source licenses.**" Dkt. No. 98-1, ¶ 49 and Ex. 47 |

21

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Furthermore, Defendants were promoting the open and free nature of ONgDB.<br><br>**"I wanted to make sure you knew that you can use Neo4j Enterprise AGPL distributions at no cost, and with no limitations."** Dkt. No. 98-1, ¶ 47 and Ex. 45<br><br>**"1. You do not have to pay any licensing fees for the software you requested. Neo4j Enterprise < 3.5 and ONgDB (Open Native Graph Database) Enterprise (all versions) are available to use 100% free, in production."** Dkt. No. 98-1, ¶ 45 and Ex. 43 |
| | Fact 46: Suhy also convinced another company, Greystones Consulting Group, LLC ("Greystones"), to implement ONgDB in an analytics platform branded by Greystones as "GreyRaven" and worked with them to solicit government agencies. Ratinoff Decl., ¶¶ 55-60 and Exs. 53-58. | **DISPUTED** None of the evidence provided by plaintiff relating to this fact suggest that Mr. Suhy convinced Greystones Consulting Group, LLC to implement ONgDB. |
| | **Additional Fact:** Suhy worked with Greystone in marketing "GreyRaven" and ONgDB to the U.S. Army. *See* Ratinoff Decl., ¶¶ 56-59 and Exs. 54-57. | |
| | Fact 47: The United States Air Force awarded Greystones two SBIR contracts based on its GreyRaven platform, which Greystones touted as being based on ONgDB. Ratinoff Decl., ¶¶ 61-62 and Exs. 59-60.<br><br>**Additional Fact:** Suhy told the U.S. Army that Greystones was "working with Neo4j / ONgDB open source distributions" and Greystones confirmed, "Our GreyRAVEN platform is based on ONgDB." Ratinoff Decl., ¶¶ 58-59 and Exs. 56-57. | **UNDISPUTED**<br>Note however that GreyRaven was not based on ONgDB.<br><br>This was a marketing mistake and the website was updated once it was brought to GreyStone's attention. |
| | Fact 48: The Maryland Procurement Office (a/k/a the National Security Agency, the NSA and the MPO) tasked Next Century to analyze available graph database technologies, including Neo4j® EE. Ratinoff Decl., Ex. 5 at 19:5-20:8, 28:10-31:21. | **UNDISPUTED** |
| | Fact 49: After the release of ONgDB v3.4, Suhy told Next Century that the MPO could use ONgDB under the AGPL without restrictions or paying Plaintiffs for a commercial license, as advertised on the iGov's | **DISPUTED** as this mischaracterizes the evidence, there were no restrictions on the number of cluster instances and cores, however the Software resticted under the AGPL |

(222 of 245), Page 222 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 222 of 245
Case 5:18-cv-07182-EJD Document 191 Filed 06/29/23 Page 43 of 66

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | website. Ratinoff Decl., Ex. 5 at 35:7-37:3, 40:3-42:3, 42:16-48:22, 49:9-51:14, 51:23-25, 54:7-56:21, 57:18-62:12; *id.*, ¶¶ 63-66 and Exs. 61-63; *see also* Dkt. No. 98-1, ¶¶ 49 and Ex. 47. | license terms.<br>Dkt. No. 98-1, ¶¶ 64 and Ex. 62;<br>**"Are you aware that, unlike the commercial licensed options, the Neo4j Enterprise open source AGPL license does not place any restrictions on the number of cluster instances and cores?"** |
| | Fact 50: Suhy confirmed that ONGDB v3.5 had the same closed enterprise features as Neo4j® EE v3.5, and Next Century could use it without restrictions or paying Neo4j for a commercial license. *See* Ratinoff Decl., Ex. 5 at 62:13-65:17; *id.*, ¶ 66 and Ex. 64. This led Next Century to upgrade to ONgDB v3.5. Dkt. No. 98-1, ¶ 122 and Ex. 120.<br><br>**Additional Fact**: Next Century informed Neo4j USA that open-sourced (non-commercial) ONGDB builds from the Neo4j® EE source code "provide the clustering and security requirements needed in our environment." Ratinoff Reply Decl., Ex. E; *see also id.*, Ex. F ("we're pursuing an open-source alternative (the same Neo4j source code but built and licensed separately) which bundles all the same features as the Neo4j enterprise version but without the costs"); *id.*, Ex. D at 65:18-67:21, 69:11-70:19, 73:21-74:3, 76:11-78:14, 80:10-83:9. | DISPUTED It is not known what led Next Century to upgrade to ONgDB v3.5.<br><br>There is nothing in the evidence provided by plaintiff that "restrictions" had anything to do with the commons clause. In fact Next Century mentions open source and free as being important to them, and this, for example, could have led to them upgrading to ONgDB v3.5<br><br><br>Dkt. No. 98-1, ¶¶ 64 and Ex. 62;<br>**"Are you aware that, unlike the commercial licensed options, the Neo4j Enterprise open source AGPL license does not place any restrictions on the number of cluster instances and cores?"** |
| | Fact 51: As result of Defendants' removal of Neo4j Sweden's CMI and false statements about the same, Neo4j USA lost a multi-year $2.2 million deal when the MPO chose ONgDB instead of paying for a subscription to Neo4j® EE. Dkt. No. 118 at 29:19-30:6; Dkt. No. 98-3, ¶¶ 22-24 and Exs. 12-13.<br><br>**Additional Fact**: Next Century confirmed that the MPO chose ONgDB over Neo4j® EE based on not having to pay Neo4j USA for a license. Ratinoff Reply Decl., Ex. D at 80:10-83:9, 85:11-88:3, 107:5-108:1, 110:11-111:24. | **DISPUTED** Defendants did not remove any "Neo4j Sweden's CMI" nor made any false statements about the same. See Fact 14 above.<br><br>The commons clause does not prevent the MPO from using the software for free in their projects. Next Century stated that cost and being open source were 2 important criteria. There was another open source alternative to Neo4j called JanusGraph on the list of databases NextCentury was evaluating for the MPO.<br><br>No-where in the evidence provided by plaintiff does the MPO say they would have purchased Neo4j Enterprise if ONgDB was not available.<br><br>**"Q. And was this -- sorry. Strike that. What graph** |

(223 of 245), Page 223 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 223 of 245
Case 5:18-cv-07182-EJD   Document 191   Filed 06/29/23   Page 44 of 66

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | database technologies did Next Century consider for Task Order 39?<br><br>A. Several, including -- so there was -- Neo4j was one, Oracle was a second one, DataStax and <u>JanusGraph</u> were others that were the primary thrust. There were several others that I don't have the names of that -- that were also under initial consideration." See Ratinoff Decl., Ex. 5 at 29:19-30:1<br><br>"The analysis started with the teams reviewing other implementations of graph database technologies at the NSA and in other -- other applications to assess the performance, the security, lessons learned, <u>and costs</u> of the wide range of initial technologies under consideration." See Ratinoff Decl., Ex. 5 at 31:16-21<br><br>"<br>Q. All right. And did the NSA provide any guidance on -- on pricing for the graph database software or the -- strike that. Were you provided any instructions from on pricing considerations for the graph database software that was being considered?<br>A. The NSA asked us to provide an analysis alternatives that <u>considered cost as one of the many factors</u>, and we were tasked to provide -- not provide -- <u>to consider cost as one of the factors</u>." See Ratinoff Decl., Ex. 5 at 44:9-18<br><br>"<br>A. An alternative to the Neo4j Enterprise solution.<br>Q. And how was it an alternative?<br>A. <u>Similar features, less cost.</u><br>Q. And when you say "less cost," there was no cost for a license to iGov's offering of Neo4j Enterprise, correct?<br>A.  Not to my knowledge.<br>" See Ratinoff Decl., Ex. 5 at 50:15-22 |

4853-5930-0200.2

(224 of 245), Page 224 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 224 of 245
Case 5:18-cv-07182-EJD   Document 191   Filed 06/29/23   Page 45 of 66

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
|  |  | It was clear that government preferred free, no cost and open source licenses over paid.<br><br>"**A. Our government customer was interested in open-source technologies.**" See Ratinoff Decl., Ex. 5 at 56:10-11<br><br>Next Century was not even sure what the license ONgDB came under. Plaintiff's attorney had to guide the answer.<br><br>"    **Q.  And what license did Next Century understand that ONgDB was distributed under?**<br>    **A.  The -- (unintelligible).**<br>        **THE REPORTER:  I'm sorry.  One more time?**<br>        **THE WITNESS:  GPLv3 license.**<br>        **BY MR. RATINOFF:**<br>    **Q.  AGPL Version 3; is that correct?**<br>    **A.  Yes.**" See Ratinoff Decl., Ex. 5 at 59:10-17<br><br>On Jan 2019, Mr. Suhy had not even replaced the AGPL License file with the verbatim version.   See Fact #14 above.<br><br>"    **Q.  So as of January 2019, had Next Century been using ONgDB to the exclusion of Neo4j Enterprise?**<br>    **A.  I don't know that it was to the exclusion of Neo4j.**<br>    **Q.  But at that time, Next Century hadn't obtained an commercial license for a copy of -- or an installation of Neo4j Enterprise, correct?**<br>**A.  Correct.**" See Ratinoff Decl., Ex. 5 at 64:2-9<br><br>Suhy did not remove Neo4J Swedens' CMI. The CMI is FSF's copyrighted license. Neo4J was obligated to use only a compliant AGPL license and used false CMI instead. |

4853-5930-0200.2

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Defendants' Violation of the DMCA [17 U.S.C. § 1202(b)(3)]** | | |
| 1. the existence of CMI on the infringed work; | *See* <u>Facts 1-9</u>. | **DISPUTED** – See responses to Facts 1-9 |
| 2. Defendants distributing that material knew that CMI had been removed or altered without authority of the copyright owner; and | *See* <u>Facts 10-18</u>. | **DISPUTED** – See responses to facts 14, 10-18 Defendants never distributed any material that had modifications to Neo4j Sweden's CMI.  In fact – the mirror downloads provided by Defendants had the full commons in the LICENSE files of the distribution.   Other than the mirrors, defendants only shared links to GFI and were not aware of any wrong doing. |
| | <u>**Additional Fact**</u>:  Suhy testified that when he created ONgDB v3.4 from Neo4j® EE v3.4, he replaced the Neo4j Sweden Software License found in LICENSE.txt files with "verbatim" copies of the AGPL thereby removing Neo4j Sweden's CMI. Dkt. No. 98-1, Ex. 3 at 171:23-172:23; Ratinoff Decl., Ex. 1 at 199:14-201:16. This is consistent with contemporaneous statements Suhy made to potential customers. *See, e.g.*, Dkt. No. 98-1, ¶ 27 and Ex. 25 (Check out https://graphfoundation.org [] All the Neo4j enterprise distributions we package from now on will come from the foundation and have the standard vanilla AGPLv3 open source license"). This is also consistent with Plaintiffs' inspection of ONgDB v3.4 around the time of its release in 2018.  Dkt. No. 98-2, ¶ 27. | |
| | <u>**Additional Fact**</u>:  The commit to the GitHub repository for ONgDB v3.5 cited by Defendants shows that Suhy replaced 28 LICENSE.txt consisting of the Neo4j Sweden Software License with LICENSE.txt consisting of generic copies of the AGPL, which deleted <u>all</u> of Neo4j Sweden's CMI in those files.  Dkt. No. 98-1, ¶ 41 and Ex. 39 (3/1/19 commit titled "Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license"); Dkt. No. 98-2, ¶ 30 (referencing same commit that replaced the 28 LICENSE.txt files). | |
| 3. Defendants knew or had | *See* <u>Facts 39-52</u>. | |

26

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| reason to know that distributing works without CMI would "induce, enable, facilitate or conceal an infringement. | | |
| **Defendants' Unclean Hands Defense** | | |
| 1. Defendants cannot establish that Neo4j USA's conduct is inequitable; and | <u>Fact 52</u>: On July 11, 2017, Neo4j USA notified the IRS that it had terminated its partnership with PureThink, and advised the IRS that PureThink was contractually restricted from providing support services for open source versions of Neo4j® software for 36 months.  Ratinoff Decl., ¶ 24 and Ex. 22. | **UNDISPUTED**<br>Note that the SOW for the contract work did not require support of any of the graphs the platform could explore. |
| | <u>Fact 53</u>: Despite Neo4j USA's warnings, the IRS continued to use Neo4j® EE for free under the AGPL and allowed Suhy to perform under PureThink's support contract.  Ratinoff Decl., Ex. 4 at 40:16-43:13; 55:10-59:24; 69:8-70:25, 78:5-16; *id.*, ¶ 27 and Ex. 25. | **UNDISPUTED**.  IRS was able to use Neo4j EE free both under the AGPL as well as under the AGPL with the commons clause.<br><br>Note that the PureThink SOW for the contract work did not require support of any of the graphs the platform could explore. |
| | <u>Fact 54</u>: Suhy specifically targeted the IRS to transition to iGov's Government Package for Neo4j, and as a result in late July 2017, the IRS invited iGov to provide a quote for a sole-source contract for the development and support of the CKGE, which used an open source version of Neo4j® EE software as a main component.  Dkt. No. 171, ¶ 23; Ratinoff Decl., ¶ 27 and Ex. 25; *id.*, ¶ 28 and Ex. 26 (blue highlights at IGOV0001570513.001–IGOV0001570513.002); *id.*, Ex. 4 at 71:1-73:4.<br><br>**Additional Fact:** Prior to the award of the CKGE Contract, Suhy sent an email to the IRS stating, "[t]he current CKGE environment will require any potential vendor to provide 2 critical components 1) The Government Package / Suite for Neo4j and 2) professional services for continued development."  Ratinoff Decl., ¶ 32 and Ex. 30 (yellow highlight). | **DISPUTED** that CKGE used Neo4j EE or any other graph database as a "main component".  Out of the many components and services inside CKGE, only one the graph explorer even connected to a graph to allow for visual exploration.  See Suhy Decl., ¶ 5.<br><br>None of the references provided by Plaintiff show Neo4j EE as being a main component of CKGE.<br>"The CKGE framework includes a Neo4j's Enterprise Edition open-source version2, Elastic Search capabilities, and micro-services components useful for supporting graph-related research; " Ratinoff Decl., ¶ 28 and Ex. 26  at IGOV0001570513.001 |

27

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | **Fact 55:** It was immaterial to the IRS who was the contracting entity so long as Suhy was the individual providing them. Ratinoff Decl., Ex. 4 at 61:11-64:23. | **DISPUTED.** Although IRS wanted to work with Mr. Suhy, the IRS had to properly procure the requirement under the FAR. Ratinoff Decl., Ex. 4 at 63:23-64:21 shows that Plaintiff's attorney tried to get IRS to make this statement but the IRS response was unclear and did not show that it was immaterial who the contracting entity was.<br><br>IRS was planning on competing the opportunity. "**And then we started a new procurement process for new competition**" Ratinoff Decl., Ex. 4 at 69:23-25<br><br>"**A. Yes. It was a new procurement order that had started -- or was executed for sort of open competition. I believe it was AA companies or small business companies originally, but it was open competition, and it was awarded to eGov for professional services to work, you know, to further the development of CKGE.**" Ratinoff Decl., Ex. 4 at 74:4-10 |
| | **Fact 56:** On September 5, 2017, the IRS announced its intent to award a sole-source contract to iGov based on that quote. Dkt. No. 171, ¶ 23; Dkt. No. 98-2, ¶ 23. | **UNDISPUTED** |
| | **Fact 57:** Neo4j USA filed an official protest with the IRS, which the IRS agreed with Neo4j USA that it had improperly awarded the contract to iGov on a sole source basis and canceled it for that reason. Dkt. No. 98-2, ¶ 23; Dkt. No. 172-1, ¶¶ 5-7 and Ex. 3; Ratinoff Decl., Ex. 4 at 69:20-70:9, 71:1-74:1. After cancelling the award to iGov, the IRS awarded iGov and Suhy the CKGE contract via eGov Sol. *See* Facts 25-30. | **DISPUTED**<br>IRS did not award any contract to iGov and Suhy through eGov Sol.<br>eGovernment Solutions paid Mr. Suhy a salary for a range of services.<br><br>See Suhy Decl., ¶ 7<br>See fact 28 |
| 2. Defendants cannot establish that Neo4j USA's conduct relates to | **Fact 58:** Neo4j USA's alleged "bad acts" pertain to the licensing of Neo4j® EE. *See* Dkt. No. 91 at 16:21-19:7. However, Neo4j Sweden owns the copyright to Neo4j® EE and was licensor of that software under the GPL and AGPL, and not Neo4j USA. Dkt. No. 98-2, ¶¶ 3-4; Dkt. No. | See Fact 1 |

(228 of 245), Page 228 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 228 of 245
Case 5:18-cv-07182-EJD Document 191 Filed 06/29/23 Page 49 of 66

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| the subject matter of its Lanham Act claims. | 118 at 2:11-16 (citing same). | |
| | **Additional Fact:** Neo4j Sweden wholly owns the copyrights to and was the licensor of the 182 source code files release for the first time under the Neo4j Sweden Software License that are subject to the DMCA claim. *See* Additional Facts in Fact 1. | |
| | Fact 59: The GPL, AGPL and Neo4j Sweden Software Licenses are copyright licenses and not trademark licenses. Dkt. No. 85 at 7:27-8:7. | UNDISPUTED |
| | Fact 60: Neo4j Sweden release Neo4j® EE v3.4 (the first version subject to the more restrictive Neo4j Sweden Software License) in May 2018, and as a result, ceased licensing Neo4j® EE under the AGPL at that time. Dkt. No. 118 at 3:9-12; Dkt. No. 98-2, ¶¶ 11-12, Ex. 3. | **DISPUTED**. Neo4j EE v3.4 clearly stated its license was AGPL + commons clause. They did not "cease" licensing under AGPL. Neo4j Sweden used the full AGPL preamble and called the License AGPL. They never called it "Neo4j Sweden Software License" until the court case started. |
| | Fact 61: The inclusion of the Commons Clause in Neo4j® EE v3.4 does not amount to inequitable conduct because the Court already held that as the copyright holder Neo4j Sweden could license Neo4j® EE how it saw fit. Dkt. No. 118 at 24:7-25:19, *aff'd* Dkt. No. 140 at 3. | **Objection**, this is not a fact, the law of the case doctrine does not apply to interlocutory orders. |
| | Fact 62: By May 2018, Neo4j® EE v3.4 included advanced scalability, availability, security, and operational features that were not previously available under the GPL or AGPL, and at least 182 files that were never released under either license. Dkt. No. 118 at 3:1-15; Dkt. No. 98-2, ¶¶ 6-7, 10-11; Dkt. No. 98-1, Ex. 38 at 6:22-7:1, 8:6-16:24. | DISPUTED See Fact 61.The 182 files licensed under the AGPL + commons clause was still referred to as AGPL and had the full AGPL preamble. |
| | Fact 63: Defendants released ONgDB sometime in July 2018 and their promotion thereof amounted to trademark infringement, false advertising and false designation of origin in violation of the Lanham Act and UCL. *See* Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Ex. 28); Dkt. No., 98-1, ¶ 26 and Ex. 24; Dkt. No. 118 at 18:2-32:14. | DISPUTED Defendants did not release ONgDB. The Graph Foundation did. Beene Dec., Ex. 30. |
| | **Additional Fact:** Suhy was involved in the initial development of ONgDB, including making commits and developing solutions for that software. Ratinoff Reply Decl., Ex. B at 82:20-25. On July 9, 2018, Suhy told a potential sponsor of GFI that they had **assigned** to GFI the "Neo4j Enterprise (We call ONgDB) distributions that are being adopted at IRS | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | and most likely DHS." Dkt. No. 98-1, ¶ 26 and Ex. 24. | |
| | <u>Fact 64:</u> Neo4j Sweden ceased its dual licensing model under the GPL and AGPL in *May 2018* and Neo4j USA's alleged false statements about the IRS needing to obtain a commercial license for Neo4j® EE were made before ***October 2017***.  *See* Ratinoff Decl., Ex. 65 at 14:9-15:28, 17:1-27:7; *see also* Dkt. No. 118 at 3:17-4:22; Dkt. No. 177 at ¶¶ 20-21. | DISPUTED – In May 2018 Neo4j released enterprise under AGPL with the commons clause.  After v3.4 – the source code clearly showed that it was using the AGPL license with commons along with the full AGPL preamble.<br><br>See Suhy Decl., Exs 1-8 |
| **PureThink's Claim for Breach of Exclusivity Contract** | | |
| 1. No enforceable contract existed; | <u>Fact 65:</u> There is no contract consented to or signed by Neo4j USA giving PureThink ownership rights in the Gov't Edition, the right to be paid for the development thereof, or the right to be compensated for that development work upon termination.  Instead, Suhy repeatedly told Neo4j USA – both before and after April 11, 2015 – that the Gov't Edition was a "concept" for PureThink to bypass protracted mandatory competitive bidding processes and take advantage of a faster sole-source procurement track.  Dkt. No. 98-1, ¶¶ 7-8 and Exs. 5-6; Ratinoff Decl., ¶¶ 8, 10, 12-14, 17, 19 and Exs. 6, 8, 10-12, 15, 17 (yellow highlights).<br><br>**Additional Fact/Objection:** The October 26, 2015 email and attachment (Ratinoff Decl., Ex. 15) cited by Defendants was sent by Suhy over six months after the parties allegedly entered into the exclusivity agreement to John Broad, who had just joined Neo4j USA and thus was not privy to any prior discussions relating thereto (Ratinoff Reply Decl., ¶ 11 and Ex. I).  Suhy described the attachment as something he just wrote to "lay[] out some concepts … from PureThink's perspective." Ratinoff Decl., Ex. 15 pp. 1, 4.  Consequently, this is not competent evidence of mutual assent to an alleged "exit agreement" because at most it merely establishes Suhy's state of mind, while Defendants fail offer evidence that Neo4j USA had the same understanding.  *See Stanford Hosp. & Clinics v. Multinat'l Underwriters, Inc.,* 2008 WL 5221071, at *7 (N.D. Cal. Dec. 12, 2008) (finding no mutual consent to oral agreement because plaintiff only offered evidence of its own state of mind). | **UNDISPUTED** that PureThink did not have ownership rights to the Government Edition.   The Exclusivity agreement was designed to ensure Neo4j Inc had the proper rights to make business decisions, while still protecting PureThink's investment.<br><br>**DISPUTED**  The Government Edition Exclusivity agreement had an "exit agreement" that was designed to protect PureThink's investment and ensure PureThink would recognize a return on investment and be compensated in an "exit" situation ("Exit Agreement").<br><br>Until the exit clause algorithm could be put down in writing, Neo4j Inc and PureThink agreed that all decisions relating to the Government Edition and the Government Edition Exclusivity agreement would have to be agreed on unanimously by both parties. ("unanimous agreement") See Suhy Decl., ¶ 10.<br><br>Mr. Suhy's references the "unanimous agreement" requiring unanimous approval in communications with Neo4j.<br><br>"**Neo Technology <u>can request to revoke exclusivity</u> and assign to another company.**" Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts. |

(230 of 245), Page 230 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 230 of 245
Case 5:18-cv-07182-EJD   Document 191   Filed 06/29/23   Page 51 of 66

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Additional Fact/Objection:** The June 20, 2017 email (Beene Decl., Ex. 13) cited by Defendants does not establish that Neo4j USA was required to obtain PureThink's consent before termination.  It was sent more than two years after the alleged formation of the exclusivity agreement in response to Neo4j USA's discontinuation of Neo4j Gov't and in anticipation of litigation: "I believe our contract requires us to be part of the decision to retire it…. Of course I am assuming you don't agree to this, so just another thing to add to the list for court." *See Warner Constr. Corp. v. City of Los Angeles*, 2 Cal.3d 285, 296–97 (1970) (refusing to admit "negotiations" after the date on which "the parties had reached a stage of clear disagreement on the crucial question"); *accord Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998) (recognizing that the principle of "practical construction" only applies to acts before any dispute has arisen) (citing same). | Adron Decl., Ex. 13, green highlights<br><br>The Government Edition is not just a concept.  It is a software product combined with services which were specifically designed to address the shortcomings that Neo4j Enterprise had at the time relating to US government security and accessibility needs.<br><br>Adron Decl.,  Exs. 14, 15<br><br>**"Neo4j US Government Edition is an "officially sponsored" package of offerings strategically designed to drive Neo4j adoption in the US Government market by drastically cutting overall cost of ownership, addressing critical government specific requirements, providing an efficient sole source path (sole source), and more…"** Suhy Decl.,  Ex. 16<br><br>**"Purpose of US Government Edition**<br><br>**Why the approach of defining a new edition compared to other approaches? This approach lowers the barrier of entry for Neo4j into the archaic us government market. How?**<br><br>**- Fast, Efficient Procurement (Sole source - no timely competitive procurements.) This has already been proven - every US Government sale has been through sole source.**<br><br>**- Drastically cuts down the total cost of ownership for an agency by addressing FISMA via features and support. Infact, this also applies to the community edition. The total cost of ownership for Neo4j Community Edition compared to Neo4j Government Edition can now be compared because of the high** |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | **costs of FISMA. (This is one focus we address during the sales cycle - when a lead agency is considering the community edition, ignoring all the enterprise benefits they receive.)"** Suhy Decl., Ex. 16 <br><br> Adron Decl., Ex. 18 <br><br> **UNDISPUTED** that Neo4j USA had the ownership rights of the Neo4j Government Edition.   The government edition was built for Neo4j Inc under the government edition exclusivity agreement. <br><br> -------- <br> **UNDISPUTED** that Neo4j USA had the ownership rights of the Neo4j Government Edition.   The government edition was built for Neo4j Inc under the government edition exclusivity agreement.  In return for Neo4j USA owning the software and benefiting from the business plan, an "exit agreement" was in place to ensure a return on investment would be recognized by PureThink that addressed re-assignment, retirement, or termination.  Suhy Decl., ¶ 10 |
| | <u>Fact 66:</u> Suhy told third parties Gov't Edition was only created for sole-source justification.  Ratinoff Decl., ¶ 16 and Ex. 14 (yellow highlights). | **DISPUTED** <br><br> The government edition was created to address more than just sole source justification.  It was created to address requirements that the US Government needed and which Neo4j Enterprise did not have.   The ability to sole source was one important aspect,  but not the only reason for creating the government edition.  See Fact 66 above. |
| | <u>Fact 67:</u> The letter purporting to be a separate agreement between Neo4j USA and PureThink was simply the means for PureThink to establish sole source justification. Dkt. No. 98-1, ¶ 8 and Ex. 6; Ratinoff Decl., ¶¶ 14, 18-19 and Exs. 12, 16-17 (yellow highlights). | **DISPUTED** <br> The agreement between PureThink and Neo4j USA was specifically focused on exclusivity around the Neo4j Government Edition.   The agreement itself protected PureThink's investment into the Government Edition and ensured it could see a return on the investment.  The agreement also allowed for sole source justification, but that was not its sole purpose. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | See Fact 66. |
| | **Fact 68:** Suhy repeated confirmed and assured Neo4j USA that it owned the intellectual property making up the Gov't Edition, as well could terminate PureThink as the exclusive reseller ***at any time and for any reason***.  Dkt. No. 98-1, Ex. 6 (yellow highlights); Ratinoff Decl., ¶¶ 9-10, 14, 17, 19 and Exs. 7-8, 12, 15, 17 (green highlights). <br><br> **Additional Fact/Objection:** The October 26, 2015 email and attachment (Ratinoff Decl., Ex. 15) cited by Defendants was sent by Suhy over six months after the parties allegedly entered into the exclusivity agreement to John Broad, who had just joined Neo4j USA and thus was not privy to any prior discussions relating thereto (Ratinoff Reply Decl., ¶ 11 and Ex. I).  Suhy described the attachment as something he just wrote to "lay[] out some concepts … from PureThink's perspective." Ratinoff Decl., Ex. 15 pp. 1, 4.  Consequently, this is not competent evidence of mutual assent because at most it merely establishes Suhy's state of mind, while Defendants fail offer evidence that Neo4j USA had the same understanding.  *See Stanford Hosp. & Clinics,* 2008 WL 5221071, at *7. <br><br> **Additional Fact/Objection:** The June 20, 2017 email (Beene Decl., Ex. 13) cited by Defendants does not establish that Neo4j USA was required to obtain PureThink's consent before termination.  It was sent more than two years after the alleged formation of the exclusivity agreement in response to Neo4j USA's discontinuation of Neo4j Gov't and in anticipation of litigation: "I believe our contract requires us to be part of the decision to retire it…. Of course I am assuming you don't agree to this, so just another thing to add to the list for court." *See Warner Constr.,* 2 Cal.3d at 296–97 (1970); *accord Wolsey, Ltd.,* 144 F.3d at 1210. | **UNDISPUTED** that Neo4j USA owned the intellectual property making up the Gov't Edition.  Under the Neo4j Government Exclusivity Agreement, PureThink built the Government Edition for Neo4j as part of the agreement. <br><br> **DISPUTED** that Neo4j USA could terminate PureThink as the exclusive reseller at any time and for any reason. <br><br> PureThink and Neo4j Inc agreed that until the exit agreement would be written down, both PureThink and Neo4j USA had to both fully agree on any changes to the Government Edition and the agreement which included revoking, retirement, re-assignment, or termination of any kind.  This was done to protect the investment PureThink was making into the Government Edition Exclusivity agreement. <br><br> See Fact 66. <br><br> "**Neo Technology <u>can request to revoke exclusivity</u> and assign to another company**." Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts. <br><br> Adron Decl Ex. 13, green highlights |
| | **Fact 69:**  Consistent with his prior representations, Suhy sent proposed language for the external and internal versions of the sole-source justification letters to Neo4j USA on April 10, 2015, with the internal version stating "Neo Technologies has the right to cancel this exclusivity agreement at any time and for any reason." Ratinoff Decl., ¶ 10 and Ex. 8 (green highlight); *see also id.*, ¶ 9 and Ex. 7 (green highlights). <br><br> **Additional Fact:** There is no evidence cited establishing that the parties agreed to drop the language that Neo4j USA could cancel at any time for any reason.  Rather, as demonstrated by the internal April 11, 2015 letter that was returned with Mr. Nordwall's signature contained this language. | **UNDISPUTED** that Suhy sent proposed language for an internal version of the agreement, which  stated that the agreement could be canceled at any time for any reason. However, this language was dropped and was not executed. See Fact 66 <br><br> **DISPUTED** that there were prior representations relating to being able to cancel the agreement at any time.  The exhibits referenced by plaintiff were the first documents related to the planning of the government edition.  Mr. Suhy proposed this |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | *See* Ratinoff Decl., ¶ 11 and Ex. 9.  After Neo4j USA returned the signed letters for a second time, Suhy acknowledged receipt and assured Neo4j USA that he would be signing.  Ratinoff Reply Decl., ¶¶ 9-10 and Exs. G-H.<br><br>**Additional Fact/Objection:** The October 26, 2015 email and attachment (Ratinoff Decl., Ex. 15) cited by Defendants was sent by Suhy over six months after the parties allegedly entered into the exclusivity agreement to John Broad, who had just joined Neo4j USA and thus was not privy to any prior discussions relating thereto (Ratinoff Reply Decl., ¶ 11 and Ex. I).  Suhy described the attachment as something he just wrote to "lay[] out some concepts … from PureThink's perspective." Ratinoff Decl., Ex. 15 pp. 1, 4.  Consequently, this is not competent evidence of mutual assent because at most it merely establishes Suhy's state of mind, while Defendants fail offer evidence that Neo4j USA had the same understanding.  *See Stanford Hosp. & Clinics*, 2008 WL 5221071, at *7.<br><br>**Additional Fact/Objection:** The June 20, 2017 email (Beene Decl., Ex. 13) cited by Defendants does not establish that Neo4j USA was required to obtain PureThink's consent before termination.  It was sent more than two years after the alleged formation of the exclusivity agreement in response to Neo4j USA's discontinuation of Neo4j Gov't and in anticipation of litigation: "I believe our contract requires us to be part of the decision to retire it…. Of course I am assuming you don't agree to this, so just another thing to add to the list for court." *See Warner Constr.*, 2 Cal.3d at 296–97 (1970); *accord Wolsey, Ltd.*, 144 F.3d at 1210. | language, but that was dropped after speaking to Mr. Tim Brown, who pointed out that having that in there without a corresponding exit agreement would not make sense.<br><br>"I am sending it to Tim Brown who is our Govt procurement expert to see if the version we send to them is suitable." Ratinoff Decl., ¶ 9 and Ex. 7<br><br>After a discuss with Neo4j Inc, the wording to cancel the exclusivity agreement at any time for any reason was never signed or executed.<br><br>The only exclusivity agreement signed and executed had no mention of being able to cancel.  Furthermore, the same exclusivity agreement was re-signed on June 23rd, 2016, a year later, with no mention of being able to cancel.   See Suhy Decl., Ex. 20<br><br>Until the exit agreement was written down, Neo4j and PureThink agreed that any changes to the agreement would require both parties to approve until the exit agreement was written down.<br><br>"**Neo Technology <u>can request to revoke exclusivity</u> and assign to another company.**" Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts.<br><br>Adron Decl.,  Ex. 13 |
| | <u>Fact 70</u>: The internal version of the April 11, 2015 sole-source letter signed by Lars Nordwall on behalf of Neo4j USA expressly stated that "Neo Technology has the right to cancel this exclusivity agreement at any time and for any reason."  Ratinoff Decl., ¶ 11 and Ex. 9 (green highlight). | **DISPUTED**<br>An internal version of the sole source letter was never executed or agreed upon.<br><br>Ratinoff Decl., ¶ 11 and Ex. 9 simply shows 2 documents sent to Mr. Suhy for review but not executed on behalf of PureThink.<br><br>Mr. Suhy did not agree or sign the document stating that exclusivity agreement could be canceled. |

34

(234 of 245), Page 234 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 234 of 245
Case 5:18-cv-07182-EJD  Document 191  Filed 06/29/23  Page 55 of 66

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | The only exclusivity agreement signed and executed had no mention of being able to cancel.  Furthermore, the same exclusivity agreement was re-signed on June 23rd, 2016, a year later, with no mention of being able to cancel.   See Suhy Decl.,  Ex. 20 <br><br> See fact 66, 70. |
| | **Fact 71:** The internal version of the April 11, 2015 letter signed by Neo4j USA omitted Suhy's proposed language "[t]his agreement supersedes any other agreements."  *Compare* Ratinoff Decl., ¶ 10 and Ex. 8 (red highlight) *and id.*, ¶ 11 and Ex. 9 at p. 3. | **DISPUTED** <br> The document was not executed by Mr. Suhy or PureThink. <br><br> See fact 71. |
| | **Fact 72:** Erik Nolten of Neo4j USA shared the same understanding that Neo4j USA owned the Gov't Edition and had the right to cancel PureThink's status as an exclusive reseller thereof any time and for any reason based on Suhy's representations made before April 11, 2015 (Ratinoff Decl., ¶¶ 8-10 and Exs. 6-8) and from the express language of the sole-source letters signed by Lars Nordwall (*id.*, ¶ 15 and Ex. 13). | **DISPUTED**  The executed agreements, both signed on April 11th, 2015 then on June 23rd, 2016 (Suhy Decl., Ex. 20 ) do not say anything about being able to cancel the exclusivity agreement. <br><br> Ratinoff Decl., ¶ 15 and Ex. 13 simply shows Erik Nolten sending unsigned documents to Charles Fischer on July 31st, 2015. |
| | **Fact 73:** After meeting with Neo4j's new Vice President of Strategic Alliances and Channels, John Broad, in October 2015, Suhy prepared documents for him reconfirming that Neo4j USA owned the Gov't Edition and had the right to cancel PureThink's status as the exclusive reseller thereof any time and for any reason.  Ratinoff Decl., ¶ 17 and Ex. 15 (green highlights). <br><br> **Additional Fact/Objection:** The October 26, 2015 email and attachment (Ratinoff Decl., Ex. 15) cited by Defendants was sent by Suhy over six months after the parties allegedly entered into the exclusivity agreement to John Broad, who had just joined Neo4j USA and thus was not privy to any prior discussions relating thereto (Ratinoff Reply Decl., ¶ 11 and Ex. I).  Suhy described the attachment as something he just wrote to "lay[] out some concepts … from PureThink's perspective." Ratinoff Decl., Ex. 15 pp. 1, 4.  Consequently, this is not competent evidence of mutual assent because at most it merely establishes Suhy's state of mind, while Defendants fail offer evidence that Neo4j USA had the same | **DISPUTED** <br> Nowhere in the email referenced in Ratinoff Decl., ¶ 17 and Ex. 15 does it say anything about Neo4j USA having the right to cancel PureThink's status as exclusive reseller any time or any reason.   It in fact highlights that the "unanimous agreement" was in place. Mr. Suhy told Mr. Broad – that Neo4j could request to revoke and assign to another company.  The agreement was specifically designed to ensure both parties had to agree. <br><br> "**Neo Technology <u>can request to revoke exclusivity</u> and assign to another company**." Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts. <br><br> **UNDISPUTED** that Neo4j USA owned the |

(235 of 245), Page 235 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 235 of 245
Case 5:18-cv-07182-EJD   Document 191   Filed 06/29/23   Page 56 of 66

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | understanding. *See Stanford Hosp. & Clinics*, 2008 WL 5221071, at *7. | Government Edition.<br>See fact 66. |
| 2. PureThink's performance or excuse for nonperformance; | Fact 74:  In conjunction with terminating the Gov't Edition on June 19, 2015, Neo4j USA informed PureThink that it was "no longer authorized to market, resell, demonstrate or provide training on the Neo4j Government Edition."  Ratinoff Decl., ¶ 21 and Ex. 19. | DISPUTED:  The Government Edition was discontinued, not terminated on June 19th, 2015.<br><br>Ratinoff Decl., ¶ 21 and Ex. 19 "Neo4j is hereby providing notice that Neo4j is **discontinuing Neo4j Government Edition**.."<br><br>UNDISPUTED that Neo4j USA sent an email stating that PureThink was no longer authorized to market, resell, demonstrate or provide training on the Neo4j Government Edition. |
| | Fact 75: Suhy acknowledged the termination of the Gov't Edition and agreed to remove all references from PureThink's website.  Ratinoff Decl., ¶¶ 22 and Ex. 20. | DISPUTED<br>The Government Edition was discontinued, not "terminated". See Fact 75.<br><br>Mr. Suhy's email referenced in Ratinoff Decl., ¶¶ 22 and Ex. 20. Simply states:  "We are removing references from the website.  It hurts you guys as well but it does no good leaving it up as of now.  There is no acknowledgement or acceptance of any of Neo4j's actions as PureThink did not agree to this as was required in the Neo4j Government Exclusivity agreement.<br><br>UNDISPUTED that Suhy removed the references on the website. |
| | Fact 76:  After Neo4j USA terminated the SPA, Defendants targeted same federal agencies that PureThink previously solicited under the SPA by offering "Government Packages for Neo4j." Dkt. No. 118 at 4:24-5:20 (citing Dkt. No. 98-1, Exs. 14-19). | DISPUTED that Neo4j USA terminated the service provider agreement (SPA).<br><br>The Government Packages for Neo4j were not the same packages that PureThink offered. |
| | Fact 77:  iGov's "Government Packages for Neo4j" included the same framework and FISMA security add-ons the Gov't Edition.  Ratinoff | DISPUTED – Though originally in the marketing material, the Government Package for Neo4j did not ever bring |

(236 of 245), Page 236 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 236 of 245
Case 5:18-cv-07182-EJD   Document 191   Filed 06/29/23   Page 57 of 66

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Decl., ¶ 23 and Ex. 21; *id.*, ¶¶ 25-26 and Ex. 23-24.  The only difference was it included Neo4j® EE for free under the AGPL.  *Id.* | anything over from PureThink or the Government Edition. Though this was originally the plan, it was never executed. The Government Packages for Neo4j were never sold.  See Suhy Decl., ¶ 11 |
| | **Additional Fact**:  Despite admitting "Neo4j USA owned the intellectual property making up the Gov't Edition," PureThink, continued to support the IRS's use of the Gov't Edition after Neo4j USA discontinued the Gov't Edition and terminated the PSA.  *See* Fact 68; Ratinoff Decl., ¶¶ 27, 29 and Exs. 25, 27 (yellow highlights).  iGov also told the IRS it intended to continue the use that same intellectual property under the CKGE Contract.  *See* Ratinoff Decl., ¶ 30 and Ex. 28. | |
| | Fact 78:  On July 11, 2017, the same day Neo4j USA terminated the SPA, Suhy emailed government contractors and agencies confirming that iGov was reusing the framework and add-ons developed for the Gov't Edition (contrary to his prior admissions that Neo4j USA owned them). Dkt. No. 98-1, ¶ 14 and Ex. 12; Ratinoff Decl., ¶¶ 25-26 and Exs. 23-24. | **DISPUTED** the emails referenced in Ratinoff Decl., ¶¶ 25-26 and Exs. 23-24.  Only show what was planned.  The plan was scrapped however and no packages were ever sold. |
| | Fact 79:  Defendants made clear on iGov and PureThink's websites that the "Government Package for Neo4j" was from the same "principle" behind PureThink and Gov't Edition. Dkt. No. 98-1, Exs. 14-15. | **UNDISPUTED** – The same "principle" behind PureThink and the Gov't Edition was John Mark Suhy. |
| | Fact 80:  Suhy and PureThink formed iGov to evade the restrictions in the Partner Agreement. Dkt. No. 98-1, ¶ 13 and Ex. 11; *id.*, ¶¶ 16-17 and Exs. 14-15 ("The principle behind PureThink and the Government Package has created a new corporate entity called iGov Inc, which is not a Neo4j Solution Partner. Because iGov Inc is not a solution partner, it can offer packages at great cost savings to US Government Agencies as it has no restrictions on working with Neo4j Enterprise open source licenses!"); Dkt. No. 118 at 24-5:7 (citing same); Dkt. No. 177 at 10:3-6. | **DISPUTED**:  iGov did not need to evade any restrictions, as it was not part of the "partner agreement" also known as "service provider agreement (SPA)". There are no terms in the SPA / partner agreement which forbid Mr. Suhy from creating a new company that would not be restricted by the SPA.  Note: Plaintiff's using the term. "partner agreement" here, but in Fact #77 above, they use the term "SPA". |
| | Fact 81:  iGov thereafter operated as PureThink's successor-in-interest. Ratinoff Decl., ¶ 27 and Ex. 25 ("[S]ince iGov Inc has no limitations on supporting or providing services for Neo4j Enterprise open source licenses, we can just have iGov Inc. assume over all [PureThink's] obligations of the current contract now instead of waiting for the next procurement. Nothing would change, we would have the same team, | DISPUTED:  iGov was not PureThink's successor-in-interest. iGov was created from scratch and no assets, or IP was transferred from PureThink.  Mr. Suhy was the only member of both companies at the |

4853-5930-0200.2

(237 of 245), Page 237 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 237 of 245
Case 5:18-cv-07182-EJD Document 191 Filed 06/29/23 Page 58 of 66

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | locations and would keep working as we always have."); Ratinoff Decl., Ex. 27 ("US Treasury has decided to make the move to our new company iGov Inc and the new Government Packages for Neo4j Enterprise"); *id.*, ¶¶ 29-30 and Ex. 27-28 (yellow highlights); Dkt. No. 98-1, ¶¶ 13, 16-17 and Exs. 11, 14-15; *see also* Facts 17, 77-80. | time. |
| | **Additional Fact:** Suhy admitted to forming iGov to evade the restrictions in the PSA imposed on PureThink. Dkt. No. 98-1, Exs. 11, 14-15; accord Dkt. No. 118 at 24-5:7 (citing same); Dkt. No. 177 at 10:3-6. Suhy also informed the IRS that iGov was effectively PureThink's successor-in-interest, and iGov would be providing the same technology and know-how for the CKGE Contract. See Ratinoff Decl., Ex. 25, 27-28 (yellow highlights). Defendants further admit that Suhy is the sole shareholder of both Purethink and iGov, which is consistent with his representations to the IRS, making Suhy the sole beneficiary. *See* Facts 18, 86. | |
| | **Fact 82:** Defendants continued to actively market "Government Package for Neo4j" until they released ONgDB. Dkt No. 118 at 4:24-5:20 (citing Dkt. No. 98-1, Exs. 14-19, 21, 62-64, 67-69); Dkt. No. 118 at 19:13-20:24.<br><br>**Additional Fact/Objection:** There is no evidence to support Defendants' statement. Suhy was involved in the initial development of ONgDB, including making various commits and developing various solutions for that software. Ratinoff Reply Decl., Ex. B at 82:20-25. On July 9, 2018, Suhy told a potential sponsor of GFI that they had ***assigned*** to GFI the "Neo4j Enterprise (We call ONgDB) distributions that are being adopted at IRS and most likely DHS." Dkt. No. 98-1, ¶ 26 and Ex. 24. | **DISPUTED**<br>Defendants did not release ONgDB. The Graph Foundation is the owner of ONgDB and responsible for its development and release.<br><br>Though the graph foundation was once part of the case, it has since settled with plaintiff and is no longer part of the case.<br><br>Mr. Suhy is only one of several volunteer committers and has no control or official position with the Graph Foundation. |
| 3. Neo4j USA did not breach the alleged exclusivity agreement; and | **Fact 83:** Assuming a separate exclusivity agreement existed, Neo4j USA had the unfettered right to discontinue the Gov't Edition and terminate PureThink as its exclusive reseller without cause and without compensating PureThink. *See* Facts 69-74.<br><br>**Additional Fact/Objection:** Defendants fail to offer competent evidence of Neo4j USA consented to an "exit agreement" requiring it to obtain PureThink's consent to discontinue the Gov't Edition. *See* Fact 66. | **DISPUTED**.<br>Neo4j USA had to get PureThink's agreement to make any changes which would have included cancellation, retirement, discontinuation, or any other activities that could risk the investment and expected return on the investment PureThink had.<br><br>See Fact 66. |

4853-5930-0200.2

(238 of 245), Page 238 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 238 of 245
Case 5:18-cv-07182-EJD   Document 191   Filed 06/29/23   Page 59 of 66

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| 4. There are no resulting damages to PureThink. | **Fact 84:** PureThink could not have suffered $1.3 million in damages since the IRS ultimately awarded the CKGE contract for the same amount to its successor-in-interest iGov via eGovernment Solutions in order for it to continue developing the CKGE the framework that PureThink had started with the Gov't Edition under the prior contract. *See* Facts 25-30.

**Additional Fact:** Suhy told the IRS that iGov was acting as PureThink's successor-in-interest, and iGov would be providing the same technology and know-how for the CKGE Contract. See Ratinoff Decl., Ex. 25, 27-28 (yellow highlights).  Defendants also admit that Suhy is the sole shareholder of PureThink and iGov, which is consistent with what he told the IRS, making Suhy the sole beneficiary. *See* Facts 18, 86. | DISPUTED
iGov is not the successor in interest to PureThink.

IRS did not award anything to iGov.

eGovernment Solutions paid Mr. Suhy a salary, the revenue from IRS was not passed through to iGov.

See Suhy Decl., ¶ 7
See fact 28 |
| | <u>Fact 85:</u>  PureThink did not maintain any time sheets that could support their claim that PureThink "spent an equivalent to $650,000 to design, develop, and build" the Gov't Edition.  Ratinoff Decl., Ex. 2 at 173:15-177:17.

**Additional Fact:** Suhy speculated that PureThink might have other records reflecting time he spent allegedly working on the Gov't Edition, but could not specifically identify them. Ratinoff Decl., Ex. 2 at 173:15-178:24.  Defendants did not produce such records during discovery and do not attach any to their opposition. | **DISPUTED**
PureThink told Neo4j that they would be working full time on the Government Edition.   Full time means at or over 40 hours a week. See Adron Decl., Ex. 17 |
| | <u>Fact 86:</u> PureThink's financial statements showed it did not incur any expenses or overhead for the development of the Gov't Edition.  Ratinoff Decl., Ex. 2 at 59:6-63:15; *id.,* ¶¶ 68-69 and Exs. 66-67.

**Additional Fact/Objection:** Defendants fail to offer competent evidence showing that PureThink "reinvested" any revenue into developing the Gov't Edition, and confirm that PureThink's financial statements do not show the alleged "reinvestment" made and expenses incurred in having Suhy allegedly work on the Gov't Edition. The fact that PureThink is an s-corporation, by definition, means Suhy as the sole shareholder is the receipt and beneficiary of all income received by PureThink.  *See* 26 U.S.C. §§ 1361, 1366. | DISPUTED – PureThink is a single person company filing as an s-corporation for tax purposes.  All the money remaining was invested into building the Government Edition by paying Mr. Suhy for his focus.   The references in Exs 66-77 do not reflect the expenses which came in the form of paying Mr. Suhy to focus full time on the Government Edition.

**"The partner fees we receive from non-partner government sales help support these initiatives - they are not looked at as 'commissions'. For example - as government adoption grows and many more sales come in - we understand if the fees must be cut to help drive your growth - and since the <u>fees only go towards 'funding' our execution of the initiatives</u>. They are not part of our** |

(239 of 245), Page 239 of 245

Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 239 of 245
Case 5:18-cv-07182-EJD Document 191 Filed 06/29/23 Page 60 of 66

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | future business modeling outside of operating costs. " Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 1 under Important Concepts.<br><br>PureThink's re-invested its money and time into building out the government edition.<br>**"Unlike other partners, we plan on re-investing revenue from the partner fees made from sales to help drive the expansion and adoption of Neo4j in the US Government. This is a key differentiator between us and other partners."** See Suhy Decl., Ex. 19 |
| | <u>Fact 87</u>: PureThink did not spend any money to develop the Gov't Edition. Ratinoff Decl., Ex. 2 at 170:10-171:13.<br><br>**Additional Fact/Objection:** Defendants fail to offer competent evidence showing that PureThink "reinvested" any revenue into developing the Gov't Edition, and confirm that PureThink's financial statements do not show the alleged "reinvestment" made and expenses incurred in having Suhy allegedly work on the Gov't Edition. *See* Fact 86. | **DISPUTED**<br>PureThink reinvested the revenue from the partner fees into developing the government edition and performing the tasks required to uphold PureThink's side of the agreement. The money paid Mr. Suhy to focus full time on the Government Edition.<br><br>See fact 87. |
| | <u>Fact 88</u>: Suhy used PureThink's work product from the Gov't Edition for iGov's "Government Packages for Neo4j." Ratinoff Decl., Ex. at 186:14-24; *id.*, ¶¶ 25-26 and Exs. 23-24 ("We've simply taken the framework and services that made a Neo4j Enterprise (Commercial only) into Neo4j Government Edition and made them available as a stand alone package we call (Government Package for Neo4j)"); *id.*, ¶¶ 29-20 and Exs. 27-28. | **DISPUTED**<br>Suhy did not use PureThink's work product from the Government Edition for iGov's "Government Packages for Neo4j". The statements made were incorrect and iGov never used any work product from the Government Edition, nor did iGov ever sell any of these packages.<br><br>See fact 78<br>See Suhy Decl., ¶ 11 |
| | <u>**Additional Fact**</u>: Despite admitting "Neo4j USA owned the intellectual property making up the Gov't Edition," PureThink, continued to support the IRS's use of the Gov't Edition after Neo4j USA discontinued the Gov't Edition and terminated the PSA. *See* Fact 68; Ratinoff Decl., ¶¶ 27, 29 and Exs. 25, 27 (yellow highlights). iGov also told the IRS it intended to continue the use that same intellectual property under the CKGE Contract. *See* Ratinoff Decl., ¶ 30 and Ex. 28. | |

(240 of 245), Page 240 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 240 of 245
Case 5:18-cv-07182-EJD   Document 191   Filed 06/29/23   Page 61 of 66

**PLAINTIFFS' RESPONSE TO DEFENDANTS STATEMENT OF UNDISPUTED MATERIAL FACTS**

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| Defendants' did not violate the DMCA [17 U.S.C. § 1202(b)(1)]; [17 U.S.C. § 202(b)(3)] | | |
| | **Fact 90:** Neo4J does not license the commercial product under the AGPL. Beene Dec. Ex 26 | **UNDISPUTED**: Plaintiffs originally offered Neo4j® EE under both a paid-for commercial license and for free under the AGPL. Dkt. No. 118 at 3:7-9 (citing Dkt. No. 98-2, ¶ 8).  As of May 17, 2018, Neo4j stopped licensing Neo4j® EE under the AGPL.  Dkt. No. 118 at 3:9-12. |
| | **Fact 91:** The Amended and Restated License Agreement which Neo4J Sweden licensed Neo4J software to Neo4J USA is not an AGPL license. Been Dec. Ex. 28 | **UNDISPUTED**: However, this is not a material fact that is relevant to Plaintiffs' DMCA claim. |
| | **Fact 92:** The Amended and Restated License Agreement which Neo4J Sweden licensed Neo4J software to Neo4J USA is not an AGPL license. Been Dec. Ex. 28 | **UNDISPUTED**: However, this is not a material fact that is relevant to Plaintiffs' DMCA claim. |
| | **Fact 93:** the Amended and Restated License Agreement required NEO4J USA to comply with all third party software licenses including licenses approved by the Open Source Initiative such as the AGPL. Beene Dec. Ex 28, Section 2.1.3. | **DISPUTED**: This is a legal argument and conclusion, and is not a material fact relevant to Plaintiffs' DMCA claim.  Neo4j Sweden is the licensor under the Neo4j Sweden Software License, which contains the only CMI subject to the DMCA claim. *See* Dkt. No. 98-2, ¶¶ 3-4, 11 and Ex. 3; Dkt. No. 118 at 2:15-18. |
| | **Fact 94:** Neo4J does not own all the code to Neo4J software. Beene Dec. Ex 27. Since Neo4J Sweden does not own the complete code, licensing it to Neo4J USA with a non GPL/AGPL license is a violation of the AGPL. Beene Dec., Ex. 33, Kuhn Expert Report ¶¶99-107. Suhy Dec. Exs. 6, 21. | **DISPUTED**: This is not a material fact that is relevant to Plaintiffs' DMCA claim.  *See Echostar Satellite, L.L.C. v. Viewtech, Inc.,* 543 F. Supp. 2d 1201, 1205 (S.D. Cal. 2008) ("Nothing in the DMCA limits standing to the copyright owner"). Defendants further admit "Mr. Suhy knew that Neo4j Sweden owned the copyright for Neo4j EE." *See* Fact 15; *accord* Dkt. No. 118 at 2:16-18 ("Neo4j Sweden owns of all copyrights related to the |

(241 of 245), Page 241 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 241 of 245
Case 5:18-cv-07182-EJD  Document 191  Filed 06/29/23  Page 62 of 66

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| | | Neo4j graph database platform, including the source code"). Moreover, the alleged DMCA violation is Defendants' unauthorized removal of CMI from 28 copies of the Neo4j Sweden Software License that governed 182 source code files in Neo4j® EE. Dkt. No. 90 at ¶¶ 76-78, 166-173; Dkt. No. 183 at 6:18-7:4, 9:27-10:10. In that regard, it is undisputed Neo4j Sweden owns the copyright to and released those 182 files for the first time under the Neo4j Sweden Software License. Fact 13; Dkt. No. 98-1, Ex. 38 at 6:23-16:24. |
| | **Fact 95**: Neo4J told the IRS they could only use the AGPL version if they made the project open in violation of the terms of the AGPL. Suhy Dec. Exs. 22, 23 | **DISPUTED:** This is not a material fact that is relevant to Plaintiffs' DMCA claim, which is based on Defendants' violations that occurred after May 2018. *See* Facts 4-15. The communications cited by Defendants occurred on April 4, 2017, and thus pre-date and do not bear any relationship to Neo4j Sweden's subsequent release of Neo4j® EE v3.4 under the Neo4j Sweden Software License in May 2018. *See* Facts 4, 7. |
| | **Fact 96**: The Fair Trade License document is a misrepresentation of the terms of the AGPL. Suhy Dec. Exs. 22, 23. Under the AGPL, anyone is licensed to use the software. The obligation to provide modified source code is only on conveyance. AGPL sections 2, 5 and 6. Suhy Dec., Ex. 6. | **DISPUTED**: This is a legal argument, and is a not a material fact that is relevant to Plaintiffs' DMCA claim, which is based on Defendants' violations that occurred after May 2018. *See* Facts 4-15. The cited Fair Trade License document is from 2012 and the referenced communications are from April 2017, and as a result do not bear any relationship to the subsequent release of Neo4j® EE under the Neo4j Sweden Software License. *Compare* Suhy Decl., Exs. 22-23 *and* Dkt. No. 98-2, ¶¶ 11-13. |
| | **Fact 97**: There is no obligation under the AGPL to make use of Neo4J software an open project. AGPL, Suhy Dec., Ex 6. | **DISPUTED**: This is a legal argument, and is a not a material fact that is relevant to Plaintiffs' DMCA claim and Suhy's removal of Neo4j Sweden's CMI. Defendants do not cite to this "fact" in their opposition. It is also unclear what Defendants mean by "to make use of Neo4J software an open project." |

4853-5930-0200.2

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | **Fact 98**: The AGPL trademark is owned by FSF. AGPL, Suhy Dec., Ex 6. | **DISPUTED:** This is not a material fact that is relevant to Plaintiffs' DMCA claim.  The Court previously rejected "'the notion that the terms drawn from the AGPLv3, on which the Neo4j Sweden Software License is based, somehow limit the rights of Neo4j Sweden to include the Commons Clause or any other additional restriction in its own copyright license.'"  Dkt. No. 118 at 24:16-25:12, *quoting Neo4j, Inc. v. Graph Found*., Inc., No. 5:19-CV-06226-EJD, 2020 WL 6700480, at *4 (N.D. Cal. Nov. 13, 2020), *aff'd* Dkt. No. 140. |
| | **Fact 99**: The license grant to use AGPL license restricts changes:  AGPL "Everyone is permitted to copy and distribute verbatim copies of this license Document, but changing is not allowed." Suhy Dec., Ex 6. | **DISPUTED:** This is a legal argument that the Court previously rejected. Dkt. No. 100 at 27:18-29:23; Dkt. No. 118 at 24:16-25:19, *aff'd* Dkt. No. 140. |
| | **Fact 100**: Neo4J Sweden violated the AGPL by changing the AGPL adding the commons clause. Suhy Dec., Ex 6. | **DISPUTED:** This is a legal argument and conclusion that the Court previously rejected.  Dkt. No. 100 at 27:18-29:23; Dkt. No. 118 at 24:16-25:19, *aff'd* Dkt. No. 140. |
| | **Fact 101**: Neo4J Sweden inclusion of the commons clause violated FSF' AGPL license terms. Suhy Dec., Ex 6. | **DISPUTED:** This is a legal argument and conclusion that the Court previously rejected.  Dkt. No. 100 at 27:18-29:23; Dkt. No. 118 at 24:16-25:19, *aff'd* Dkt. No. 140. |
| | **Fact 102**: Neo4J USA failed to provide verbatim copies of the AGPL license with its commercial license as required under the AGPL section 4.  Suhy Dec. Exs. 6, 24; Beene Ex. 26 | **DISPUTED:** This is a legal argument that the Court previously rejected.  Dkt. No. 100 at 27:18-29:23; Dkt. No. 118 at 24:16-25:19, *aff'd* Dkt. No. 140. |
| **Plaintiffs Acted With Unclean Hands** | See Facts 90-102 | *See* Facts 90-102 |
| | **Fact 103**: No communication shows Neo4j, Inc. advised the PTO they did not own the NEO4J Trademark or change the date of first use. Suhy Dec., ¶15 | **DISPUTED:**  This is not a material fact.  The Court already dismissed/struck with prejudice Defendants' counterclaim and affirmative defense based on Neo4j USA allegedly misrepresenting the date of first use and |

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| | | its ownership of the Neo4j Mark. Dkt. No. 70 at 8:4-18. The Court further held that Defendants could not base *any* affirmative defense on such facts. Dkt. No. 110 at 5:16-6:4. Moreover, as affirmed by the Ninth Circuit, Neo4j USA was and is the owner of the Neo4j Mark for purposes of registration in the United States. Dkt. No. 118 at 11:16-12:26, 13:18-18:1 *aff'd* Dkt. No. 140. |
| **Neo4j USA Breached the Exclusivity Agreement** | | |
| | <u>Fact 104:</u> Neo4j consented to an Exclusivity Agreement with PureTink LLC. Suhy Dec., Ex. 20 | **DISPUTED:** This is a legal conclusion unsupported by competent evidence of Neo4j USA's consent to the terms described in the Suhy Declaration. Suhy told Neo4j USA that the alleged exclusivity agreement consisted of <u>two</u> letters: "one that we give to agencies on your letterhead [], and 1 between us that says you can cancel at any time for any reason." Ratinoff Decl., Ex. 7 (green highlights). Suhy sent proposed drafts of those letters in an April 10, 2015 email where the internal letter stated "[Neo4j USA] has the right to cancel this exclusivity agreement at any time and for any reason." *Id.*, Ex. 8 (green highlights). Consistent with Suhy's representations, Neo4j USA signed two letters on April 11, 2015 with the internal letter containing provision giving Neo4j USA the unilateral and unconditional right to cancel the arrangement. *Id.*, Exs. 9, 13. After Neo4j USA returned the signed letters for a second time, Suhy acknowledged receipt and assured Neo4j USA that he would be signing. Ratinoff Reply Decl., ¶¶ 9-10 and Exs. G-H. |
| | <u>Fact 105:</u> The Exclusivity Agreement was separate from the SPA. Beene Dec. Ex 31, Deposition of John Mark Suhy, 43:17 – 45:3 | **DISPUTED:** Defendants fail to cite to competent evidence establishing that Neo4j USA understood that there was an enforceable exclusivity agreement separate from the SPA and consented to the same, which is necessary to establish mutual consent. *See Stanford Hosp. & Clinics v. Multinat'l Underwriters, Inc.*, 2008 |

(244 of 245), Page 244 of 245
Case: 24-5538, 12/23/2024, DktEntry: 18.16, Page 244 of 245
Case 5:18-cv-07182-EJD Document 191 Filed 06/29/23 Page 65 of 66

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| | | WL 5221071, at *7 (N.D. Cal. Dec. 12, 2008) (finding no mutual consent to oral agreement because plaintiff only offered evidence of its own state of mind); *see also Hohs v. Allstate Ins. Co.,* 2010 WL 11706760, at *5-6 (N.D. Cal. Feb. 10, 2010); *Kahn Creative Partners, Inc. v. Nth Degree, Inc.*, 2011 WL 1195680, at *3-5 (C.D. Cal. Mar. 29, 2011). |
| | Fact 106: The Exclusivity Agreement was subject to an exit clause. Suhy Dec. ¶10, Ex. 20 | DISPUTED: There is no exit clause in Exhibit 20 to the Suhy Declaration, and Defendants fail to offer any competent evidence establishing that Neo4j USA agreed to one when it allegedly entered into the exclusivity agreement on April 11, 2015. Likewise, Defendants fail to cite to any competent evidence that Neo4j USA assented to subsequent oral "exit agreement." The uncontroverted evidence also suggests the contrary. *See* UDF No. 104. |
| | Fact 107: iGov is not a successor in interest to PureThink. The work scope for PureThink and iGov were substantially different. Beene Dec. Ex 31, Deposition of John Mark Suhy, 53:19-54:4. iGove did not use any assets of PureThink. Beene Dec. Ex 31, Deposition of John Mark Suhy, 52:5-8. | DISPUTED: Suhy admitted to forming iGov to evade the restrictions in the PSA imposed on PureThink. Dkt. No. 98-1, Exs. 11, 14-15; *accord* Dkt. No. 118 at 24-5:7 (citing same); Dkt. No. 177 at 10:3-6. Suhy also informed the IRS that iGov was effectively PureThink's successor-in-interest, and iGov would be providing the same technology and know-how for the CKGE Contract. *See* Ratinoff Decl., Ex. 25, 27-28 (yellow highlights). Defendants further admit that Suhy is the sole shareholder of both Purethink and iGov, which is consistent with his representations to the IRS, making Suhy the sole beneficiary. *See* Facts 18, 86. |
| | Fact 108: Neo4j USA prevented PureThink's performance by prohibiting it from engaging with government agencies. Dkt. No. 177, Ex. D | DISPUTED: PureThink was restricted by Section 4.3.1 of the SPA from providing paid support services to government agencies using open source versions of Neo4j® softer. By agreeing to dismiss their IIPEA claim with prejudice in the face of a motion to dismiss, Defendants conceded the validity of those restrictions. |

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| | | *See* Dkt. No. 171, ¶¶ 22-47; Dkt. Nos. 172, 176. |
| | Fact 109: Mr. Suhy worked full time under the Exclusivity Agreement. Beene Decl., Ex. 17 | **DISPUTED:** This assertion is not supported by competent evidence. PureThink did not maintain any time sheets that could support this assertion. Ratinoff Decl., Ex. 2 at 173:15-178:24. Defendants also do not provide any other records accounting for the time he spent allegedly working on the Gov't Edition. *See* Ratinoff Reply Decl., Ex. A at 177:7-178:14. |
| | Fact 110: Plaintiffs have made substantial government sales. Beene Dec., Ex. 29 | **UNDISPUTED:** However, this is not a material fact that is relevant to PureThink's breach of contract claim. |

I attest that the evidence cited herein by Plaintiffs fairly and accurately supports the facts as asserted by Plaintiffs.

Dated:  June 29, 2023                          By:  */s/ Jeffrey M. Ratinoff*
                                                        Jeffrey M. Ratinoff, Attorney for Plaintiffs

46