IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,<br><br>        Plaintiffs-ctr-defendants-Appellees,<br><br>v.<br><br>JOHN MARK SUHY,<br><br>        Defendant-ctr-claimant-Appellant.<br>and<br><br>PURETHINK LLC, a Delaware limited liability company; and IGOV, INC., a Virginia corporation,<br><br>        Defendants. | No. 24-5538<br><br>District No. 5:18-cv-07182-EJD<br>U.S. District Court for the Northern District of California<br><br><br>**DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF APPELLEES' OPPOSITION TO APPELLANT JOHN MARK SUHY'S MOTION TO SUBSTITUTE PARTY** |

I, Jeffrey M. Ratinoff, declare as follows:

1.      I am an attorney at law, duly licensed to practice before all courts of the State of California and admitted to this Court, and am a partner of Spencer Fane LLP, attorneys of record for Plaintiffs-Appellees Neo4j, Inc. ("Neo4j USA"), and Neo4j Sweden AB ("Neo4j Sweden," collectively "Appellees"). I make this declaration in support of Appellees' Opposition to Appellant John Mark Suhy's Motion to Substitute Party.

2.      The facts stated herein are based on my personal knowledge, except with respect to those matters stated to be on information and belief, and as to those matters, I believe them to be true. If called upon to testify as a witness in this matter, I could and would do so competently.

3.      Attached hereto as **Exhibit 1** is a true and correct copy of Defendant John Mark Suhy's Notice of Appeal, filed with the District Court on September 8, 2024.

4.      Attached hereto as **Exhibit 2** is a true and correct copy of Adron W. Beene and Adron G. Beene's Notice of Motion Without Hearing and Motion to Withdraw as Counsel for Defendant John Mark Suhy, filed with the District Court on September 27, 2024.

5.      Attached hereto as **Exhibit 3** is a true and correct copy of the Order Granting Motion to Withdraw, entered by the District Court on October 21, 2024.

6.      Attached hereto as **Exhibit 4** is a true and correct copy of Richard E. Starr's Notice of Motion Without Hearing and Motion to Withdraw as Counsel for Defendant John Mark Suhy, filed with the District Court on October 23, 2024.

7.      Attached hereto as **Exhibit 5** is a true and correct copy of the Order Granting Motion to Withdraw, entered by the District Court on October 25, 2024.

8.      Attached hereto as **Exhibit 6** is a true and correct copy of the Motion to Stay Enforcement of Judgment Without a Bond, filed by Defendant John Mark Suhy ("Suhy") in the Circuit Court of Fairfax County, Virginia on or about October 23, 2024.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on this 30th day of December, 2024, at San Jose, California.


_/s/ Jeffrey M. Ratinoff_____
Jeffrey M. Ratinoff

2

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I HEREBY CERTIFY that on December 30, 2024, I electronically filed the

foregoing DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF

APPELLEES' OPPOSITION TO APPELLANT JOHN MARK SUHY'S

MOTION TO SUBSTITUTE PARTY with the Clerk of Court using the CM/ECF

system which will send notification of such filing to the following email addresses:

**John Mark Suhy**
jmsuhy@gmail.com

**Rick Sanders**
rick@sfconservancy.org


*/s/   Jeffrey M. Ratinoff*
Jeffrey M. Ratinoff

# EXHIBIT 1

Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorneys-at-Law
7960 Soquel Drive, Ste B #296
Aptos, CA 95003
Tel: (408) 392-9233
adron@adronlaw.com

Attorneys for defendants:
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

NEO4J, INC., et al.,
Plaintiffs,
v.

PURETHINK LLC, et al.,
Defendants.

CASE NO. 5:18-CV-7182 EJD

**DEFENDANT JOHN MARK SUHY'S NOTICE OF APPEAL (with Circuit Rule 3-2 Representation Statement attached)**

Defendant JOHN MARK SUHY appeals to the United States Court of Appeals for the Ninth Circuit from the "Judgment Re: Dkt. Nos. 118, 216, 248" Dkt. No. 251, filed on August 15, 2024, attached hereto as Exhibit A. This notice of appeal is intended to encompass all rulings, decisions, findings, and orders that are appealable and adverse to John Mark Suhy.

Dated: September 8, 2024

_____/s/ Adron G. Beene_____
Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorneys-at-Law
7960 Soquel Drive, Ste B #296
Aptos, CA 95003
Tel: (408) 392-9233
adron@adronlaw.com

## CIRCUIT RULE 3-2 REPRESENTATION STATEMENT

**Appellants:**

JOHN MARK SUHY, Defendant

**Represented By:**

**Trial Counsel**
**Adron W. Beene**
adron@adronlaw.com
**Adron G. Beene**
adronjr@adronlaw.com
Attorneys-at-Law
7960 Soquel Drive, Ste B #296
Aptos, CA 95003
408-392-9233

**For Appellate Purposes**
**John Mark Suhy**
jmsuhy@gmail.com
Pro se
8814 Danewood Drive
Alexandria, VA 22308
Tel: (703) 862-7780

**Appellees:**

NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation, Plaintiffs

**Represented By:**

**John V. Picone , III**
jpicone@spencerfane.com
**Jeffrey Michael Ratinoff**
jratinoff@spencerfane.com
SPENCER FANE LLP
225 West Santa Clara Street
Suite 1500
San Jose, California 95113
Telephone: 408.286.5100
Facsimile: 408.286.5722

Dated: September 8, 2024

_____*/s/ Adron G. Beene*_____
Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorneys-at-Law
7960 Soquel Drive, Ste B #296
Aptos, CA 95003
Tel: (408) 392-9233
adron@adronlaw.com

DEFENDANT JOHN MARK SUHY'S NOTICE OF APPEAL
CASE NO. 5:18-cv-7182 EJD                                                    2

# EXHIBIT A

1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    NEO4J, INC., et al.,                          Case No. 5:18-cv-07182-EJD

                     Plaintiffs,
8
                                                   **JUDGMENT**
9           v.
                                                   Re: Dkt. Nos. 118, 216, 248
10   PURETHINK, LLC, et al.,

11                   Defendants.

12          In accordance with the Court's Orders at ECF Nos. 118, 216, and 248, the Court ENTERS

13   Judgment as follows:

14          1.      Judgment is entered in favor of Plaintiff Neo4j, Inc., on its First Cause of Action

15   for Trademark Infringement, 15 U.S.C. § 1114, against Defendants for their infringement of the

16   NEO4J Mark.  ECF No. 118.

17          2.      Judgment is entered in favor of Plaintiff Neo4j, Inc., on its Second Cause of Action

18   for False Designation of Origin and False Advertising, 15 U.S.C. § 1125(a), against all

19   Defendants.  ECF No. 118.

20          3.      Judgment is entered in favor of Plaintiff Neo4j, Inc., on its Third Cause of Action

21   for Unfair Competition, 15 U.S.C. § 1125(a), against all Defendants for their infringement of the

22   NEO4J Mark.  ECF No. 118.

23          4.      Judgment is entered in favor of Plaintiff Neo4j, Inc., on its Fourth Cause of Action

24   for Unfair Competition, Cal. Bus. Prof. Code §§ 17200, et seq., against all Defendants.  ECF No.

25   118.

26          5.      Judgment is entered in favor of Plaintiffs on their Eighth Cause of Action for

27   Unauthorized Distribution of Altered Copyright Management Information, 17 U.S.C. § 1202(b)(1)

28   and 17 U.S.C. § 1202(b)(3), against all Defendants.  ECF No. 216.

United States District Court
Northern District of California

6.  Plaintiffs are HEREBY AWARDED $597,000 in actual damages plus $57,288 in prejudgment interest, less the stipulated $26,000 deduction, and a permanent injunction as described in ECF No. 248.  Defendants are jointly and severally liable for the payment of all such amounts.  Each Party shall bear its own attorneys' fees and costs.

The Clerk of Court shall close the file in this matter.

**IT IS SO ORDERED.**

Dated: August 15, 2024

EDWARD J. DAVILA
United States District Judge

# EXHIBIT 2

1  Adron W. Beene SB# 129040
2  Adron G. Beene SB# 298088
   Attorney at Law
3  1754 Technology Drive, Suite 228
   San Jose, CA 95110
4  Tel: (408) 392-9233
   adron@adronlaw.com
5
6  Attorneys for defendants:
   PURETHINK LLC, a Delaware limited
7  liability company, IGOV INC., a Virginia
   corporation, and JOHN MARK SUHY

8
9              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
10
11 NEO4J, INC., a Delaware corporation,      CASE NO. 5:18-CV-7182 EJD
   and NEO4J SWEDEN AB, a Swedish
12 corporation,                              **ADRON W. BEENE AND**
   Plaintiffs,                              **ADRON G. BEENE'S NOTICE**
13 v.                                        **OF MOTION WITHOUT**
                                             **HEARING AND MOTION TO**
14                                           **WITHDRAW AS COUNSEL FOR**
   PURETHINK LLC, a Delaware                 **DEFENDANT JOHN MARK**
15 limited                                   **SUHY; DECLARATION OF**
   liability company, IGOV INC., a           **JOHN MARK SUHY;**
16 Virginia corporation, and JOHN            **[PROPOSED] ORDER**
   MARK SUHY, an individual,                 **GRANTING MOTION TO**
17 Defendants.                               **WITHDRAW**

18
   AND RELATED COUNTERCLAIMS
19

20

21

22              **NOTICE OF MOTION**

23      **PLEASE TAKE NOTICE** that, Adron W. Beene and Adron G. Beene shall

24 and hereby do respectfully seek leave of this Court, pursuant to L.R. 11-5 and in

25 compliance with CAL. R. Prof. Conduct 3-700, to withdraw as counsel for Defendant

John Mark Suhy. Pursuant to L.R. 7-1(b), counsel requests this motion be made without an oral hearing, as this motion is made with consent of the client and therefore there are no disputed issues.

## MOTION TO WITHDRAW

### I.      Introduction

Defendant John Mark Suhy has discharged his current counsel and seeks represent himself on a Pro-se basis. This motion is brought to effectuate the client's wishes.

### II.     Good Cause Exists to Permit the Withdrawal

Leave of court is required for an attorney to withdraw from representation. L.R. 11-5(a). Notice is to be provided to client and all other parties, reasonable in advance, who have appeared in the case. L.R. 11-5(a). Where a party stipulates to appear pro-se, the withdraw does not need to be conditioned. L.R. 11-5(b).

CAL. R. Prof. Conduct 1.16(A)(4) requires withdrawal where the client discharges the lawyer.

The notice above has been provided in reasonably in advance, and served to counsel for all other parties through ECF. Mr. Suhy's has acknowledge receipt of this motion in the below declaration providing his consent, therefore no separate proof of service for him is required. The below declaration providing consent shows that a withdraw needs to be granted to allow counsel to comply with their professional conduct obligations, the wishes of the client, and that no conditions are necessary on the withdrawal.

1     For all of the foregoing reasons, and the below delaration of consent, this

2  motion for withdraw should be granted.

3

4  Dated: September 25, 2024

5                              _____ /s/ Adron W. Beene _____
                                Adron W. Beene SB# 129040
6                               Adron G. Beene SB# 298088
                                Attorney At Law
7                               Attorney for Defendants
                                PURETHINK LLC,
8                               IGOV INC., and JOHN MARK SUHY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**DECLARATION OF JOHN MARK SUHY**

I, John Mark Suhy, declare as follows:

    1. I have discharged Adron W. Beene and Adron G. Beene as my attorneys for all purposes.

    2. I seek to represent myself in this action, including any appeal, on a Pro-se basis.

    3. I consent to the withdrawal of Adron W. Beene and Adron G. Beene as my attorneys for all purposes.

    4. I have received and read the foregoing motion for withdraw and understand its contents.

    5. My contact information for service of documents, until such time as I am granted access to ECF, is:

> John Mark Suhy
> 8814 Danewood Drive
> Alexandria, VA 22308
> Tel: (703) 862-7780
> Email: jmsuhy@gmail.com

I declare under penalty of perjury under the Laws of the State of California that the foregoing is true and correct.

Executed on September 25, 2024 in the Commonwealth of Virginia, County Of Fairfax

_____
John Mark Suhy

MOTION TO WITHDRAW
CASE NO. 5:18-cv-7182 EJD

3

1  Adron W. Beene SB# 129040
   Adron G. Beene SB# 298088
2  Attorney at Law
   1754 Technology Drive, Suite 228
3  San Jose, CA 95110
   Tel: (408) 392-9233
4  adron@adronlaw.com

5
   Attorneys for defendants:
6  PURETHINK LLC, a Delaware limited
   liability company, IGOV INC., a Virginia
7  corporation, and JOHN MARK SUHY

8
                  UNITED STATES DISTRICT COURT
9                NORTHERN DISTRICT OF CALIFORNIA

10 NEO4J, INC., a Delaware corporation,        CASE NO. 5:18-CV-7182 EJD
   and NEO4J SWEDEN AB, a Swedish
11 corporation,                                **[PROPOSED] ORDER**
   Plaintiffs,                                 **GRANTING MOTION TO**
12                                             **WITHDRAW**
   v.
13
14 PURETHINK LLC, a Delaware
   limited
15 liability company, IGOV INC., a
   Virginia corporation, and JOHN
16 MARK SUHY, an individual,
   Defendants.
17

18
   AND RELATED COUNTERCLAIMS
19

20      Adron W. Beene and Adron G. Beene, seek to withdraw as counsel for

21 defendant John Mark Suhy in the above-captioned litigation pursuant to L.R. 11-5

22 and CAL. R. Prof. Conduct 3-700. This court finds that, as the withdraw is based on

23 the consent of the client, and the granting of this motion will not cause substantial

24 prejudice or delay to any party,

25

1    IT IS HEREBY ORDERED THAT Adron W. Beene and Adron G. Beene's

2    Motion to Withdraw as Counsel for defendant John Mark Suhy is GRANTED.

3    Adron W. Beene and Adron G. Beene's representation of John Mark Suhy is hereby

4    terminated in this proceeding.

5

6    DATED:_____          By:_____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**FILER'S ATTESTATION**

I, Adron G. Beene, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with N.D. Cal. Civil Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

Dated: September 27, 2024

_____*/s/ Adron G. Beene*_____
Adron G. Beene SB# 298088

# EXHIBIT 3

1

Adron W. Beene SB# 129040

2

Adron G. Beene SB# 298088
Attorney at Law

3

1754 Technology Drive, Suite 228
San Jose, CA 95110

4

Tel: (408) 392-9233
adron@adronlaw.com

5

6

Attorneys for defendants:
PURETHINK LLC, a Delaware limited

7

liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

8

9

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

10

11

NEO4J, INC., a Delaware corporation,
and NEO4J SWEDEN AB, a Swedish
corporation,

CASE NO. 5:18-CV-7182 EJD

12

Plaintiffs,

**[PROSED] ORDER
GRANTING MOTION TO
WITHDRAW**

13

v.

14

PURETHINK LLC, a Delaware
limited

15

liability company, IGOV INC., a

16

Virginia corporation, and JOHN
MARK SUHY, an individual,

17

Defendants.

18

AND RELATED COUNTERCLAIMS

19

20

    Adron W. Beene and Adron G. Beene, seek to withdraw as counsel for

21

defendant John Mark Suhy in the above-captioned litigation pursuant to L.R. 11-5

22

and CAL. R. Prof. Conduct 3-700. This court finds that, as the withdraw is based on

23

the consent of the client, and the granting of this motion will not cause substantial

24

prejudice or delay to any party,

25

1    IT IS HEREBY ORDERED THAT Adron W. Beene and Adron G. Beene's

2 Motion to Withdraw as Counsel for defendant John Mark Suhy is GRANTED.

3 Adron W. Beene and Adron G. Beene's representation of John Mark Suhy is hereby

4 terminated in this proceeding.

5

6 DATED:  October 21, 2024

EDWARD J. DAVILA

7 United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 4

Richard E. Starr, VSB# 32319
Attorney at Law
2503 Childs Lane
Alexandria, VA 22308
Tel: (703) 780-3330
Pacer@RStarr.Biz

Attorney for defendants:
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation, <br><br> Plaintiffs, <br> v. <br><br> PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual, <br> Defendants. | CASE NO. 5:18-CV-7182 EJD <br><br> **RICHARD E. STARR'S NOTICE OF MOTION WITHOUT HEARING AND MOTION TO WITHDRAW AS COUNSEL FOR DEFENDANT JOHN MARK SUHY; DECLARATION OF JOHN MARK SUHY; [PROPOSED] ORDER GRANTING MOTION TO WITHDRAW** |

AND RELATED COUNTERCLAIMS

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that, Richard E. Starr shall and hereby

respectfully seeks leave of this Court, pursuant to L.R. 11-5 and in compliance with

CAL. R. Prof. Conduct 3-700, to withdraw as counsel for Defendant John Mark

Suhy. Pursuant to L.R. 7-1(b), counsel requests this motion be made without an oral

hearing, as this motion is made with consent of the client and therefore there are no disputed issues.

## MOTION TO WITHDRAW

### I.    Introduction

Defendant John Mark Suhy has discharged his current counsel and seeks represent himself on a Pro-se basis. This motion is brought to effectuate the client's wishes.

### II.    Good Cause Exists to Permit the Withdrawal

Leave of court is required for an attorney to withdraw from representation. L.R. 11-5(a). Notice is to be provided to client and all other parties, reasonable in advance, who have appeared in the case. L.R. 11-5(a). Where a party stipulates to appear pro-se, the withdraw does not need to be conditioned. L.R. 11-5(b).

CAL. R. Prof. Conduct 1.16(A)(4) requires withdrawal where the client discharges the lawyer.

The notice above has been provided in reasonably in advance, and served to counsel for all other parties through ECF. Mr. Suhy's has acknowledge receipt of this motion in the below declaration providing his consent, therefore no separate proof of service for him is required. The below declaration providing consent shows that a withdraw needs to be granted to allow counsel to comply with their professional conduct obligations, the wishes of the client, and that no conditions are necessary on the withdrawal.

1    For all of the foregoing reasons, and the below delaration of consent, this

2    motion for withdraw should be granted.

3

4    Dated: October 23, 2024

5                                    _____ */s/ Richard E. Starr* _____
                                     Richard E. Starr VSB# 32319
6                                    Attorney At Law
                                     Attorney for Defendants
7                                    PURETHINK LLC,
                                     IGOV INC., and JOHN MARK SUHY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

## DECLARATION OF JOHN MARK SUHY

2  I, John Mark Suhy, declare as follows:

3      1. I have discharged Richard E. Starr as my attorney for all purposes.

4      2. I seek to represent myself in this action, including any appeal, on a Pro-se

5  basis.

6      3. I consent to the withdrawal of Richard E. Starr as my attorney for all

7  purposes.

8      4. I have received and read the foregoing motion for withdraw and

9  understand its contents.

10     5. My contact information for service of documents, until such time as I am

11  granted access to ECF, is:

12          John Mark Suhy
            8814 Danewood Drive
13          Alexandria, VA 22308
            Tel: (703) 862-7780
14          Email: jmsuhy@gmail.com

15

16  I declare under penalty of perjury under the Laws of the State of California that the

17  foregoing is true and correct.

18

19  Executed on October 23, 2024 in the Commonwealth of Virginia, County Of Fairfax

20

21  _____
    John Mark Suhy

22

23

24

25

MOTION TO WITHDRAW
CASE NO. 5:18-cv-7182 EJD                                              3

1  Richard E. Starr, VSB# 32319
2  Attorney at Law
   2503 Childs Lane
3  Alexandria, VA 22308
   Tel: (703) 780-3330
4  Pacer@RStarr.Biz

5  Attorneys for defendants:
   PURETHINK LLC, a Delaware limited
6  liability company, IGOV INC., a Virginia
   corporation, and JOHN MARK SUHY
7

8              UNITED STATES DISTRICT COURT
9             NORTHERN DISTRICT OF CALIFORNIA

10 NEO4J, INC., a Delaware corporation,      CASE NO. 5:18-CV-7182 EJD
   and NEO4J SWEDEN AB, a Swedish
11 corporation,                              **[PROPOSED] ORDER
                                             GRANTING MOTION TO
12 Plaintiffs,                               WITHDRAW**
   v.
13

14 PURETHINK LLC, a Delaware
   limited
15 liability company, IGOV INC., a
   Virginia corporation, and JOHN
16 MARK SUHY, an individual,
   Defendants.
17

18 AND RELATED COUNTERCLAIMS

19

20         Richard E. Starr seeks to withdraw as counsel for defendant John Mark Suhy

21 in the above-captioned litigation pursuant to L.R. 11-5 and CAL. R. Prof. Conduct 3-

22 700. This court finds that, as the withdraw is based on the consent of the client, and

23 the granting of this motion will not cause substantial prejudice or delay to any

24 party,

25

   MOTION TO WITHDRAW
   CASE NO. 5:18-cv-7182 EJD                                          4

1    IT IS HEREBY ORDERED THAT Richard E. Starr's Motion to Withdraw as

2  Counsel for defendant John Mark Suhy is GRANTED. Richard E. Starr's

3  representation of John Mark Suhy is hereby terminated in this proceeding.

4

5  DATED:_____        By:_____

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**FILER'S ATTESTATION**

I, Adron G. Beene, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with N.D. Cal. Civil Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

Dated: October 23, 2024

_____/s/ Adron G. Beene_____
Adron G. Beene SB# 298088

# EXHIBIT 5

1
Richard E. Starr, VSB# 32319
Attorney at Law
2
2503 Childs Lane
Alexandria, VA 22308
3
Tel: (703) 780-3330
Pacer@RStarr.Biz
4

5
Attorneys for defendants:
PURETHINK LLC, a Delaware limited
6
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY
7

8
UNITED STATES DISTRICT COURT
9
NORTHERN DISTRICT OF CALIFORNIA

10
NEO4J, INC., a Delaware corporation,        CASE NO. 5:18-CV-7182 EJD
and NEO4J SWEDEN AB, a Swedish
11
corporation,                                **[PROPOSED] ORDER**
                                            **GRANTING MOTION TO**
12
Plaintiffs,                                 **WITHDRAW**
v.
13

14
PURETHINK LLC, a Delaware
limited
15
liability company, IGOV INC., a
Virginia corporation, and JOHN
16
MARK SUHY, an individual,
Defendants.
17

18
AND RELATED COUNTERCLAIMS

19

20
        Richard E. Starr seeks to withdraw as counsel for defendant John Mark Suhy

21
in the above-captioned litigation pursuant to L.R. 11-5 and CAL. R. Prof. Conduct 3-

22
700. This court finds that, as the withdraw is based on the consent of the client, and

23
the granting of this motion will not cause substantial prejudice or delay to any

24
party,

25

1    IT IS HEREBY ORDERED THAT Richard E. Starr's Motion to Withdraw as

2   Counsel for defendant John Mark Suhy is GRANTED. Richard E. Starr's

3   representation of John Mark Suhy is hereby terminated in this proceeding.

4

5   DATED:  October 25, 2024

        EDWARD J. DAVILA
6       United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ORDER GRANTING MOTION TO WITHDRAW
CASE NO. 5:18-cv-7182 EJD                                              5

# EXHIBIT 6

**V I R G I N I A :**      **IN THE CIRCUIT COURT OF FAIRFAX COUNTY**

Neo4j Inc
_____
                    **Plaintiff**
                      **vs.**                              Civil Action No.   CL 2024-0014686
                                                           _____

John Mark Suhy                                             Previous Chancery No.   CH _____
_____
                    **Defendant**
**SERVE:**

## FRIDAY MOTIONS DAY – PRAECIPE/NOTICE

**Moving Party:**   ☐ Plaintiff   ☒ Defendant   ☐ Other

**Title of Motion:** MOTION TO STAY ENFORCEMENT OF JUDGMENT WITHOUT A BOND   ☒ Attached   ☐ Previously Filed

**DATE TO BE HEARD:** 11/08/2024 _____   **Time Estimate** (combined no more than 30 minutes): 15 minutes

**Time to be Heard:**   ☐ 9:00 a.m. **with** a Judge

☒ 10:00 a.m. (Civil Action Cases)  Does this motion require 2 weeks notice? ☒ Yes   ☐ No

☐ 11:30 a.m. (DOMESTIC/Family Law Cases) Does this motion require 2 weeks notice? ☐ Yes   ☐ No

**Case continued from:** _____   _ continued to: _____
                        (Date)                                    (Date)

**Judge** _____ **must** hear this motion because (check one reason below):

☐ The matter is on the docket for presentation of an order reflecting a specific ruling previously made by that Judge.
☐ This Judge has been assigned to this entire case by the Chief Judge; or,
☐ The Judge has advised counsel that all future motions, or this specific motion, should be placed on this Judge's Docket; or,
☐ This matter concerns a demurrer filed in a case where that Judge previously granted a demurrer in favor of demurrant.

**PRAECIPE by:** John Mark Suhy                         (Pro Se)
                Printed Attorney Name/ Moving Party Name              Firm Name
8814 Danewood Dr , Alexandria, VA 22308
_____
                              Address

703-862-7780                                         jmsuhy@gmail.com
  Tel. No.              Fax No.              VSB No.        E-Mail Address

### CERTIFICATIONS

I certify that I have in good faith conferred or attempted to confer with other affected parties in an effort to resolve the subject of the motion without Court action, pursuant to Rule 4:15(b) of the Rules of the Supreme Court of Virginia; and, I have read, and complied with, each of the Instructions for Moving Party on the reverse side of this form.

                                                     _____
                                                        Moving Party/Counsel of Record

### CERTIFICATE OF SERVICE

I certify on the 23rd day of October , 2024 , a true copy of the foregoing Praecipe was

☒ mailed ☐ faxed ☐ delivered to all counsel of record pursuant to the provisions of Rule 4:15(e) of the Rules of the Supreme Court of Virginia.

                                                     _____
                                                        Moving Party/Counsel of Record

CCR-E-10 (July 2021)

Clear

1

2　　　　　　　IN THE CIRCUIT COURT OF FAIRFAX COUNTY, VIRGINIA

3

4　NEO4J, INC.　　　　　　　　　　　Case No.: CL-2024-0014686
　　Plaintiff,
5　v.
　　JOHN MARK SUHY
6　Defendant.

7

8　**MOTION TO STAY ENFORCEMENT OF JUDGMENT WITHOUT A BOND**

9　　　　　Comes now, John Mark Suhy, the Defendant, and moves this Honorable

10　　　Court for an Order staying enforcement of the judgment entered against him,

11　　　pending the outcome of an appeal to the United States Court of Appeals for

12　　　the Ninth Circuit. In support of this Motion, the Defendant states the

13　　　following:

14

15

16　**I. INTRODUCTION**

17　　　　　A judgment was entered against the Defendant, along with iGov Inc and

18　　　Purethink LLC, in the United States District Court for the Northern District

19　　　of California, Case No. 5:18-cv-07182-EJD, as documented in Document 251,

20　　　filed on August 15, 2024. The judgment holds the parties jointly and severally

21　　　liable, and it has been domesticated in the Fairfax County Circuit Court. (See

22　　　Exhibit C).

23

24

25　　　　　Defendant has filed an appeal in the United States Court of Appeals for the

1

Ninth Circuit, Neo4j, Inc., et al. v. Suhy, et al., Case No. 24-5538, where it is currently pending. (See Exhibit D).

This case exemplifies how Neo4j Inc., a multi-billion-dollar corporation, is using its vast resources to harass and intimidate a single open-source advocate. Neo4j, which initially gained prominence through the open-source community, shifted its strategy to maximize profits by imposing restrictive licensing terms, including the unauthorized addition of the "Commons Clause" to the Free Software Foundation's (FSF) GPLv3 license. The specific license in this case, the AGPLv3, is a member of the GPLv3 family with an additional requirement for network access.

The Free Software Foundation's GPLv3 License is central to the dispute.

As an open-source advocate and developer, Defendant created the competing free and open-source forks of Neo4j's software called ONgDB and DozerDB in response to these actions. (See Declaration #2 of John Mark Suhy, attached as Exhibit E).

These free and open source forks have gained significant traction, and according to Neo4j's own admissions in court filings, ONgDB alone has cost the company millions of dollars.

This lawsuit is not about licensing but about Neo4j trying to eliminate competition by exerting financial and legal pressure. Neo4j is exerting

significant legal and financial pressure on Defendant, which could lead to bankruptcy and limit Defendant's ability to support these open-source projects, which are gaining traction within a large and growing community as alternatives to Neo4j's software and challenge their business model.

The damages in this case stem from Defendant's modification of AGPL license files, which are copyrighted to the Free Software Foundation (FSF), not Neo4j Inc., and include the FSF's preamble. The AGPL makes it clear that the FSF holds the 2007 copyright, stating that "[e]veryone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed." (See Exhibit F, attached). Defendant adhered to these instructions by making the license verbatim.

The court concluded that Defendant's removal of the Commons Clause and labeling the software as "open source" influenced the Maryland Procurement Office (MPO) to adopt ONgDB as a free alternative.

Removal of the Commons Clause: The court found that Defendant removed the Commons Clause from the ONgDB fork of Neo4j EE v3.4 and replaced it with the vanilla AGPL license, facilitating the MPO's adoption of ONgDB. (Findings of Fact and Conclusions of Law, p. 5, lines 13–21.) Although this did not change the software's free nature for non-commercial use, it was central to the damages.

MPO's Adoption of ONgDB: The court determined that the removal of the Commons Clause, combined with the availability of ONgDB as a free and unrestricted alternative, directly influenced the MPO's decision to adopt ONgDB instead of purchasing a commercial Neo4j EE license. (Findings of Fact and Conclusions of Law, p. 15, lines 9–28; p. 16, lines 1–16.)

False Advertising and DMCA Violations: The court concluded that Defendant's promotion of ONgDB as a "drop-in replacement" and "open source" after removing the Commons Clause constituted false advertising and DMCA violations, further contributing to the MPO's decision. (Findings of Fact and Conclusions of Law, p. 5, lines 13–21; p. 6, lines 14–24.)

Lost Licensing Revenue: Damages were calculated based on Neo4j's lost opportunity to license the commercial version of Neo4j EE to the MPO, which used ONgDB for free. (Findings of Fact and Conclusions of Law, p. 16, lines 1–16; p. 19, lines 9–20.)

Right before trial, the Free Software Foundation (FSF) sent Neo4j a cease-and-desist letter demanding the removal of the Commons Clause. (See Exhibit A).

Following the Free Software Foundation's cease-and-desist letter, Neo4j, Inc. complied by removing all infringing tags, branches, files, and source code containing the Commons Clause from their public repository. This validated Defendant's actions, which are the basis for the damages in this case. (See Declaration of John Mark Suhy, #3 Exhibit E).

Despite this, Neo4j continues to pursue aggressive legal actions against Defendant, including issuing a garnishment of $628,335.50 on October 17, 2024, against Greystones Consulting Group LLC as garnishee. (See Neo4j, Inc. v. John Mark Suhy, Case No. CL-2024-0014686). This amounts to legal bullying.

If the garnishment proceeds, Defendant will be forced into bankruptcy, harming him, his family, and other creditors, including Neo4j. (See Declaration of John Mark Suhy, #4 Exhibit E).

## II. RELIEF REQUESTED

Requiring the Defendant to post a bond would likely result in bankruptcy which threatens the loss of his security clearance, causing undue financial harm to both the Defendant and his family. Given these extraordinary circumstances, Defendant respectfully requests that this Court intervene to stay the judgment's enforcement without bond pending the resolution of Defendant's appeal before the Ninth Circuit.

Neo4j's actions are not about recovering damages but silencing a critic and competitor. The Court's involvement is crucial to ensure justice.

This case raises important issues for the open-source software community, and a stay without bond is crucial to prevent irreparable harm to the Defendant while these issues are addressed on appeal.

For these reasons, and as further detailed in the accompanying Memorandum of Points and Authorities, Defendant respectfully requests this Court to stay all collection efforts and enforcement of the judgment without requiring the posting of a bond due to financial hardship, the public importance of the appeal, and the disproportionate impact enforcement would have on Defendant and his family, as compared to the minimal impact on Plaintiff.

Respectfully submitted
John Mark Suhy
Pro Se

Dated: October 23rd, 2024

By: _____ /s/ John Mark Suhy

8814 Danewood Dr
Alexandria, VA 22308

Tel: (703) 862-7780
Email: jmsuhy@gmail.com

6

IN THE CIRCUIT COURT OF FAIRFAX COUNTY, VIRGINIA

| | |
|---|---|
| NEO4J, INC.<br>Plaintiff,<br>v.<br>JOHN MARK SUHY<br>Defendant. | Case No.: CL-2024-0014686 |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY ENFORCEMENT OF JUDGMENT WITHOUT A BOND

## I. INTRODUCTION

This memorandum is submitted in support of Defendant John Mark Suhy's Motion to Stay Enforcement of Judgment Without a Bond. Defendant respectfully requests that this Court stay the enforcement of the judgment entered against him, pending the outcome of his appeal to the United States Court of Appeals for the Ninth Circuit.

The enforcement of this judgment would cause undue financial hardship on the Defendant, possibly leading to bankruptcy. Given the substantial public interest in the legal issues surrounding the case, particularly regarding open-source licensing, and the Defendant's inability to post a bond without suffering significant harm, this Court should exercise its equitable powers to grant a stay without bond.

## II. LEGAL ARGUMENTS

### 1. Equitable Grounds for Stay Without Bond

1

The Court has the equitable power to stay the enforcement of a judgment without requiring the posting of a bond when circumstances justify such relief. Courts have discretion to waive bond requirements when the financial burden on the defendant is disproportionate to the potential harm to the plaintiff. Numerous federal courts have recognized this discretion, allowing stays without bond when imposing a bond would cause undue hardship. See In re Nassau County Strip Search Cases, 783 F.3d 414, 418 (2d Cir. 2015); Dillon v. City of Chicago, 866 F.2d 902, 904 (7th Cir. 1988); Fed. Prescription Serv. Inc. v. Am. Pharm. Ass'n, 636 F.2d 755, 759 (D.C. Cir. 1980).

In this case, the Defendant faces significant financial hardship and would likely be forced into bankruptcy if required to post a bond. Additionally, the Free Software Foundation (FSF), the copyright holder of the GPLv3 license, has validated the Defendant's removal of the Commons Clause, reinforcing the merits of his appeal. Thus, equity supports granting a stay without a bond. (See Declaration of John Mark Suhy, #3 and #6 Exhibit E)

## 2. Financial Hardship and Potential Bankruptcy

Enforcement of the judgment would cause the Defendant to suffer irreparable financial harm, including bankruptcy. The Defendant is unable to post a bond due to his current financial situation and the imminent threat of garnishment, which would result in the loss of critical financial resources, including his government security clearance.

Under Virginia Code § 8.01-676.1(J), the Court has discretion to waive the bond requirement in cases of financial hardship. Federal courts have similarly waived bond requirements when defendants have demonstrated limited financial resources. See Federal Prescription Serv., Inc. v. Am. Pharm. Ass'n, 636 F.2d 755, 759 (D.C. Cir. 1980). In this case, the Defendant's current financial hardship, combined with the potential loss of his security clearance and livelihood, provides ample justification for waiving the bond requirement.

### 3. Merits of the Appeal

The appeal raises critical issues regarding the interpretation and application of the GPLv3 license, which underpins much of the open-source software ecosystem. The Free Software Foundation has confirmed that Neo4j's addition of the Commons Clause violated the terms of the GPLv3 license, and the Defendant's removal of the clause was justified to maintain the integrity of the license. This appeal, therefore, addresses significant legal issues that affect not only the Defendant but also the broader open-source community. The district court's findings regarding the removal of the Commons Clause and its impact on the Maryland Procurement Office's (MPO) decision to use ONgDB are based on factual errors, particularly the assumption that the MPO would have purchased a commercial Neo4j EE license had the Commons Clause remained. This assumption overlooks the fact that the software was available for free use regardless of the clause, and the MPO

chose ONgDB primarily due to pricing concerns. These factual errors further support the likelihood of success on appeal.

## 4. Legal Bullying and Disproportionate Impact

Neo4j, a billion-dollar corporation, is using its vast financial resources to overwhelm the Defendant, a pro se litigant, with legal pressure. The judgment amount of over $600,000 is minimal for Neo4j but represents a catastrophic financial burden for the Defendant. Courts have recognized the disproportionate impact of judgments in cases where one party is financially disadvantaged, and this Court should consider that enforcing the judgment would disproportionately harm the Defendant while causing minimal prejudice to Neo4j. See O'Donnell v. CBS Broadcasting Inc., 247 F. Supp. 3d 411, 419 (S.D.N.Y. 2017).

## 5. Minimal Prejudice to Plaintiff

Staying enforcement of the judgment would cause minimal prejudice to Neo4j. The Plaintiff will still be able to pursue collection efforts against the Defendant's two companies, PureThink and iGov, which are not requesting a stay. Moreover, the Plaintiff is a financially robust company, and the judgment amount will have little impact on their overall financial status. In contrast, immediate garnishment of the Defendant's wages will result in bankruptcy, depriving Neo4j of any potential recovery if the appeal is unsuccessful. This would also harm the Defendant's other creditors and could disrupt his government security clearance, further compounding the harm.

4

### 6. Public Interest

Granting a stay would cause minimal prejudice to Neo4j. The Plaintiff can still pursue collection efforts against the Defendant's companies, PureThink and iGov, which are not requesting a stay. Furthermore, Neo4j is financially stable and will not suffer substantial harm if the enforcement is delayed. In contrast, immediate enforcement would cause severe financial harm to the Defendant, including bankruptcy, depriving Neo4j of any meaningful recovery if the appeal is unsuccessful.

## III. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant the Motion to Stay Enforcement of Judgment without requiring the posting of a bond, in light of the significant financial hardship, the public interest in the legal issues at stake, and the minimal prejudice to the Plaintiff.

Respectfully submitted
John Mark Suhy
Pro Se
Dated: October 23rd, 2024

By: _____ /s/ John Mark Suhy Jr._

8814 Danewood Dr
Alexandria, VA 22308

Tel: (703) 862-7780
Email: jmsuhy@gmail.com

5

## CERTIFICATE OF SERVICE

1

2   I hereby certify that on October 23rd, 2024 a true and correct copy of the Motion to Stay
    Enforcement of Judgment Without a Bond, the Memorandum of Points and Authorities, and all
3   accompanying Exhibits were duly served by sending such copies via certified mail to the
    following:

4

5   A. Charles Dean, Esq.
    Dean & DeSimone, P.C.
    3975 University Drive, Suite 410
6   Fairfax, Virginia 22030

7                                                      John Mark Suhy
                                                             Pro Se
8                                             Dated: October 23rd, 2024

9
                                              By: _____ /s/ John Mark Suhy
10
                                                     8814 Danewood Dr
11                                                   Alexandria, VA 22308

12                                                   Tel: (703) 862-7780
                                                Email: jmsuhy@gmail.com
13

14

15

16

17

18

19

20

21

22

23

24

25

                                                                                        1

**IN THE CIRCUIT COURT OF FAIRFAX COUNTY, VIRGINIA**

**NEO4J, INC.**
Plaintiff,

v.

**JOHN MARK SUHY**
Defendant.

Case No.: CL-2024-0014686

**ORDER STAYING ENFORCEMENT OF JUDGMENT WITHOUT BOND**

This matter came before the Court on the Defendant, John Mark Suhy's, **Motion to Stay Enforcement of Judgment Without Bond**. After considering the motion and the arguments of the parties, the Court finds that there is sufficient basis to grant the Defendant's request.

Accordingly, it is hereby **ORDERED** that:

1. The enforcement of the judgment entered against John Mark Suhy in this case is **stayed** pending the resolution of the Defendant's appeal before the United States Court of Appeals for the Ninth Circuit;

2. The Defendant is **not required** to post a bond as a condition of this stay;

3. All collection efforts, including garnishment proceedings, are **suspended** until the conclusion of the appellate process.

**IT IS SO ORDERED.**

**Entered this _____ day of _____, 2024.**

**Judge's Signature: _____**
Judge, Circuit Court of Fairfax County

IN THE CIRCUIT COURT OF FAIRFAX COUNTY, VIRGINIA

NEO4J, INC.
Plaintiff,
v.
JOHN MARK SUHY
Defendant.

Case No.: CL-2024-0014686

**DECLARATION OF JOHN MARK SUHY**

I, John Mark Suhy, declare under penalty of perjury under the laws of the United States of America and the Commonwealth of Virginia that the following is true and correct to the best of my knowledge:

1. I am the Defendant in the above-referenced case.

2. I am an open-source advocate and developer who created the competing free and open source forks of Neo4j software called ONgDB and DozerDB.

3. Following the Free Software Foundation's issuance of the cease-and-desist letter, Neo4j, Inc. complied by removing all infringing content, including tags, branches, files, and source code from their public repository that contained the Commons Clause within the AGPL license.

4. I am the primary breadwinner for my family, while my wife works part-time, and my salary is essential for covering our family's living expenses. The garnishment of my wages would significantly impact our ability to meet those obligations, and it is highly likely that I will be forced into bankruptcy if the garnishment proceeds. This would not only harm me, my family, and other creditors, including Neo4j, but also jeopardize my government security clearances, which are vital to my employment.

5. The Free Software Foundation (FSF) and the Free Software Conservancy have communicated their intent to file amicus briefs in my appeal before the 9th Circuit Court.

6. Attached as Exhibit A is a true and accurate copy of the cease-and-desist letter sent by the Free Software Foundation to Neo4j, Inc. on November 13, 2023. This letter was provided to me by the Free Software Foundation.

7. Attached as Exhibit B is a true and accurate copy of the Findings of Fact and Conclusions of Law from the United States District Court for the Northern District of California, Case No. 5:18-cv-07182-EJD, dated July 22, 2024.

8. Attached as Exhibit C is a true and accurate copy of the Judgment from the United States District Court for the Northern District of California, Case No. 5:18-cv-07182-EJD, dated August 15, 2024.

9. Attached as Exhibit D is a true and accurate copy of the Notice of Appeal filed in the United States District Court for the Northern District of California, Case No. 5:18-cv-07182-EJD, dated September 8, 2024.

10. Attached as Exhibit F is a true and correct copy of the AGPLv3 license as it appeared in the Neo4j official repository before Neo4j removed it following the Free Software Foundation's cease-and-desist letter, dated November 13, 2023.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 23rd day of October, 2024.

**/s/ John Mark Suhy**

John Mark Suhy
8814 Danewood Dr
Alexandria, VA 22308
(703) 862-7780
jmsuhy@gmail.com

# EXHIBIT A

Free Software Foundation (FSF) Cease-and-Desist Letter to Neo4j, Inc.

Dated: November 13, 2023


**FREE SOFTWARE**
F O U N D A T I O N

Page 1

November 13, 2023

Neo4j, Inc.
400 Concar Dr.
San Mateo, CA 94402, USA
Attention: Legal Department

Re:     Neo4J Cease and Desist

We have learned of your continued use of the Free Software Foundation's ("FSF") rights related to the GNU Affero General Public License version 3 ("GNU AGPLv3") in a confusing and unauthorized manner. The FSF holds the copyright to the GNU AGPLv3, including all rights to make derivative works, as well as trademark rights to "GNU AFFERO GENERAL PUBLIC LICENSE" and related marks used in it, including:

* FSF (USPTO 87909272, EUIPO 003119691);
* Free Software Foundation (USPTO 87909237, EUIPO 003120334);
* GNU (USPTO 85380218)

While we are pleased when people use the GNU AGPLv3 to distribute and license software, we want to ensure that software freedom is protected as intended. The FSF allows everyone to use its licenses to grant and protect the fundamental freedoms to use programs for any purpose, study and change them, and sell or give away copies of programs or their modified versions. However, the FSF does *not* allow the making or distributing of altered versions of the licenses, including the GNU AGPLv3, resulting in unauthorized derivative works. Nor do we allow others to use our registered or common law trademarks without authorization.

We are referring to the README file[1] distributed by Neo4j releases 3.4.0-3.5.3. Among other issues, it clearly states in the "Extending" section that the software is available under the GNU AGPLv3. However, you then inappropriately use our marks in the "Licensing" section, where it states that some of the modules of Neo4j Enterprise are "licensed under AGPLv3 with the Commons Clause." You are not authorized to use any of our marks including "GNU," "AGPL," and "Affero General Public License," or any other variation of those marks in connection with any licenses other than to refer to the unmodified licenses as published by us. You are also not permitted to make unauthorized derivative works of the GNU AGPLv3 by adding additional text to the license as was done in LICENSE.txt accompanying aforementioned releases.

Your distribution of these releases has caused and continues to cause confusion among consumers since the README distributed by you clearly states that each of these releases is

51 Franklin St. 5ᵗʰ Floor Boston MA 02110 U.S.A
tel: 1.617.542.5942 | fax: 1.617.542.2652 | www.fsf.org



**FREE SOFTWARE**
F O U N D A T I O N

Page 2

"licensed under the [GNU] AGPLv3," but confusingly suggests that the Commons Clause would restrict a licensee's rights under our license.

The GNU AGPLv3 by its terms, including as reproduced by you in the LICENSE.txt, permits all licensees to remove any additional terms that are "further restrictions" under the GNU AGPLv3. The text of the GNU AGPLv3 makes this clear as it says, "[i]f the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term[,]" and the GNU AGPLv3 clearly defines the phrase "this License" to mean "version 3 of the GNU Affero General Public License." It is well known that the "Commons Clause" is a "further restriction" under the terms of the GNU AGPLv3 and therefore all licensees under the GNU AGPLv3 are permitted to remove it[2].

We encourage you to clarify the situation by making it unambiguous that these software releases are licensed under the GNU AGPLv3 and users who already received copies of the software are allowed to remove any further restriction. You can do this by simply stating that the releases are licensed under the GNU AGPLv3 without any further restrictions and removing all references to the "Commons Clause."

However, if your altered version of the license is an attempt to create a proprietary license, you are not allowed to use any of the FSF's family of GNU General Public Licenses or any of the FSF's trademarks, registered or unregistered, for that purpose. The FSF has no wish to advise or request drafting a new proprietary software license, but we realize that we cannot forbid you from doing so. Thus, we believe that in such case it is our duty to minimize the harm resulting from confusing users with attempts to release proprietary software under a license using the name, text, and trademarks associated with free software.

The conditions on which we authorize the creation of derivative works of our licenses are stated in our FAQ[3]. Our FAQ clearly outlines the steps required, including removing specific sections of the license text and removing any references to our marks. These conditions avoid confusing uses of the GNU AGPLv3 and the FSF's trademarks included in it.

We hope to cooperate to resolve this matter amicably. Neo4j software mentioned above is publicly available on Github as of this writing and also advertised by Neo4j, Inc. [4][5] (the latter not mentioning 3.4 release). If Neo4j, Inc. is currently making any other unauthorized use of any of FSF's copyrights or trademark rights related to the GNU AGPLv3, the above requests apply to such other copies and uses as well. Please confirm in writing within 14 days from the receipt of this letter that you have taken steps to remedy this situation.

Sincerely,

Zoë Kooyman,
Executive Director
Free Software Supporter

51 Franklin St. 5th Floor Boston MA 02110 U.S.A
tel: 1.617.542.5942 | fax: 1.617.542.2652 | www.fsf.org

 **FREE SOFTWARE** FOUNDATION

Page 3

[1] README.asciidoc available at
https://github.com/neo4j/neo4j/tree/3.4#readme and related tagged releases

[2] "Can I modify the GPL and make a modified license?" available at
https://www.gnu.org/licenses/gpl-faq.html#ModifyGPL

[3] "I'd like to license my code under the GPL, but I'd also like to make it clear that it can't be
used for military and/or commercial uses. Can I do this?" available at
https://www.gnu.org/licenses/gpl-faq.html#NoMilitary

[4] "Neo4j Debian Packages" available at https://debian.neo4j.com/

[5] "Neo4j RPM Packages" available at https://yum.neo4j.com/

# EXHIBIT B

Findings of Fact and Conclusions of Law, Northern District of California,
Case No. 5:18-cv-07182-EJD

Date: July 22, 2024

1
2
3
4          UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6          SAN JOSE DIVISION
7

8   NEO4J, INC., et al.,                    Case No.   5:18-cv-07182-EJD
9                      Plaintiffs,
                                            **FINDINGS OF FACT AND**
10         v.                               **CONCLUSIONS OF LAW**
11  PURETHINK, LLC, et al.,
12                     Defendants.

13         Plaintiffs Neo4j, Inc. ("Neo4j USA") and Neo4j Sweden AB ("Neo4j Sweden")

14  (collectively, "Plaintiffs") brought the present lawsuit against Defendants PureThink LLC

15  ("PureThink"), iGov Inc. ("iGov"), and John Mark Suhy ("Suhy") (collectively, "Defendants")

16  alleging claims under the Lanham Act and the Digital Millennium Copyright Act ("DMCA"),

17  among other claims, related to Plaintiffs' proprietary software.  Third Am. Compl., ECF No. 90.

18         The Court previously found Defendants liable as to Neo4j USA's first, second, third, and

19  fourth Lanham Act and unfair competition claims.  Order Granting Mot. for Partial Summ. J; Den.

20  Cross-Mot. for Summ. J. ("First MSJ Order"), ECF No. 118.  The Court also found Defendants

21  liable as to Neo4j Sweden's eighth cause of action for violation of the DMCA.  Order Granting

22  Mot. to Strike Expert Report and Exclude Expert Testimony; Granting Mot. for Partial Summ. J.

23  ("Second MSJ Order"), ECF No. 216.  The only issue remaining before the Court is damages.

24         The Court held a bench trial on November 14, 2023, and November 28, 2023, and heard

25  oral arguments and evidence presented by both Parties.  ECF Nos. 225, 229.  The Court also

26  received pre-trial and post-trial submissions of the Parties' proposed findings of fact and

27  conclusions of law.  *See* Pls.' Proposed Findings of Fact and Conclusions of Law ("Pls.' FFCL"),

28  Case No.: 5:18-cv-07182-EJD
    FINDINGS OF FACT AND CONCLUSIONS OF LAW
                          1

United States District Court
Northern District of California

1   ECF No. 238; Defs.' Proposed Findings of Fact and Conclusions of Law ("Defs.' FFCL"), ECF

2   No. 237.

3           Having considered the Parties' submissions and evidence, the Court makes the following

4   findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).[1]

5   **I.      FINDINGS OF FACT**

6           The Court finds the following facts based on factual findings from the Court's two prior

7   summary judgment orders, facts stipulated to by the Parties, and all other relevant evidence in the

8   record.

9           **A.      The Parties**

10          1.      Plaintiff Neo4j USA is a corporation specializing in graph database management

11  systems.  First MSJ Order 2.  Plaintiff Neo4j Sweden is a wholly owned subsidiary of Neo4j USA

12  and owns all copyrights relating to the Neo4j graph database platform, including the source code.

13  *Id.*

14          2.      Defendant Suhy is the founder and sole employee, member, and manager of

15  Defendant PureThink, which is a single person limited liability software and information

16  technology consulting company specializing in supporting agencies within the U.S. Government

17  that use Neo4j graph database software.  Stip. of Undisputed Facts for Trial ("Undisputed Facts")

18  ¶ 15, ECF No. 227.  Suhy also formed Defendant iGov, a software development and consulting

19  company, to offer paid support services for open source Neo4j software to the IRS and other

20  government agencies.  First MSJ Order 4.

21          **B.      The Neo4j Platforms**

22          3.      Neo4j USA originally offered a free and open-source version of the Neo4j platform

23  known as the Neo4j Community Edition ("Neo4j CE") under the GNU General Public License

24  version 3 ("GPL") license.  Undisputed Facts ¶ 5.  The Neo4j CE source code was available to the

---

[1] Any findings of fact that constitute conclusions of law shall be deemed to have been found by the Court as a matter of law.  Likewise, any conclusions of law that constitute findings of fact shall be deemed to have been found by the Court as a matter of fact.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
2

United States District Court
Northern District of California

public on GitHub pursuant to the GPL. First MSJ Order 3. Neo4j CE is limited in its feature set and does not come with technical or administrative support. Undisputed Facts ¶ 5. Neo4j CE under the GPL license remains publicly available and free. *See id.* ¶ 12.

4.      Neo4j USA also offered a more advanced commercial version which included additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j EE"). Undisputed Facts ¶ 6. Neo4j EE was originally offered under both a paid-for commercial license and the free GNU Affero General Public License ("APGL"). *Id.*

5.      In May 2018, Neo4j USA released Neo4j EE version ("v") 3.4, which they continued to offer under an open-source license; however, they replaced the AGPL with a stricter license, which included additional restrictions provided by the new Commons Clause. First MSJ Order 3. The Commons Clause prohibited the non-paying public from engaging in commercial resale and certain commercial support services. *Id.* This stricter license is referred to as the "Neo4j Sweden Software License." *Id.*

6.      In November 2018, Neo4j USA released Neo4j EE v3.5 under a commercial license only. Undisputed Facts ¶ 11. Moving forward, Plaintiffs were no longer publishing open source code for new versions of Neo4j EE. First MSJ Order 3.

**C.      Former Partnership Agreement Between the Parties**

7.      In 2014, PureThink and Neo4j USA entered into the Neo Technologies Solution Partner Agreement ("Partnership Agreement"). Undisputed Facts ¶ 17. In conjunction with its business, Neo4j USA owns several federally registered trademarks, including the word mark "NEO4J" ("Neo4j Mark"). First MSJ Order 2. Under the Partnership Agreement, PureThink had a non-exclusive, non-transferable limited license to use the Neo4j Mark solely to market and resell commercial licenses to Neo4j EE and related support services in exchange for shared revenue for the licenses that it resold. *Id.* at 3.

8.      In the hopes of increased sales, PureThink developed the Neo4j Government Edition ("Gov't Edition"), which was a package designed to use Neo4j EE to streamline the government's procurements. *Id.* at 4.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
3

United States District Court
Northern District of California

9.    After a dispute concerning Suhy's use, distribution, and marketing of Neo4j's open source products, rather than the commercial products, and his marketing of consulting services focused on those products to the Internal Revenue Services ("IRS"), Neo4j USA terminated the Partnership Agreement on July 11, 2017. *Id.* at 4. Neo4j USA demanded that PureThink no longer use Neo4j's trademarks, service marks, and other designations, as well as remove marketing materials and Neo4j's trademarks and tradenames from PureThink's website. *Id.*

10.    Suhy incorporated iGov to continue supporting open source Neo4j software without being bound by restrictions in the Partnership Agreement, which he believed to be unlawful. *Id.*

**D.    Defendants' Conduct Following the Partnership Agreement Termination**

11.    Suhy and iGov continued marketing the Gov't Edition and using the Neo4j Mark after the Partnership Agreement was terminated. First MSJ Order 4. For example, the iGov website used "https://igovsol.com/neo4j.html" as a URL to promote "Government Development Packages for Neo4j"; displayed a "Request Procurement Document Package" link with "mailto:neo4j@igovsol.com" embedded that creates an email addressed thereto upon activation; encouraged consumers to obtain more information by sending an email to "neo4j@igovsol.com"; and used "Government Packages for Neo4j" and "Neo4j Enterprise" to describe iGov's modified version of the Neo4j EE software. *Id.* at 5.

12.    After Plaintiffs released Neo4j EE v3.4—which replaced the AGPL with the Neo4j Sweden Software License—Suhy helped form Graph Foundation, Inc. ("the Graph Foundation").[2] First MSJ Order 6.

13.    The Graph Foundation began promoting a software called ONgDB, which it referred to as "free and open source." First MSJ Order 6. Suhy created ONgDB using Neo4j EE v3.4 as a base, which was subject to the Neo4j Sweden Software License, but he removed the stricter Neo4j Sweden Software License and replaced it with the AGPL. *Id.*; Am. Dep.

---

[2] The Graph Foundation is not a defendant in this matter.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
4

1    Designations, Ex. 2, Dep. of John Mark Suhy ("Suhy Dep.") 171:23–172:23, ECF No. 226.  Doing

2    so removed certain legal notices identifying Neo4j Sweden as the copyright holder and licensor

3    and removed the Commons Clause, effectively allowing Defendants to commercially use and

4    support ONgDB.  First MSJ Order 6.  Suhy testified that he believed he was permitted to remove

5    the Commons Clause based on his research of existing case law, research of other companies who

6    had removed similar information, and consultations with the Graph Foundation and the IRS.[3]

7    Suhy Dep. 196:22–199:21; Trial Tr. Vol. II 328:9–19, ECF No. 233; Trial Ex. 1012, ECF No.

8    242-38.

9         14.     Following the creation of ONgDB, Suhy provided hyperlinks to potential users of

10   Neo4j EE to view and download ONgDB from the Graph Foundation's website and GitHub

11   repository using his iGov and PureThink email addresses.  Undisputed Facts ¶¶ 42, 43.  iGov's

12   website also provided links to potential users of Neo4j EE to download ONgDB directly from

13   iGov and from the Graph Foundation's website.  *Id.* ¶¶ 44, 45.  The "landing page" for ONgDB on

14   GitHub was very similar to that of Neo4j EE.  First MSJ Order 7.  It was titled "ONgDB – Neo4j

15   Enterprise Fork: Graphs for Everyone," and contained numerous references to Neo4j throughout.

16   *Id.*

17        15.     Defendants also made a series of representations regarding ONgDB, including

18   communicating to potential customers that ONgDB v3.5 was "100% free and open" with no

19   limitations or restrictions imposed by the Neo4j EE v3.5 commercial license.  First MSJ Order 7.

20   iGov also promoted ONgDB and asserted that "ONgDB is a drop in replacement for the Neo4j

21   Community and Enterprise branded distributions."  *Id.*  Defendants have made similar statements

22   directly to potential customers, such as characterizing ONgDB as a "100% open source and a drop

23

24   _____

[3] Plaintiffs argue that Suhy's statement regarding consulting the IRS is contradicted by the IRS
25   representative's deposition. Pls.' FFCL 9 n.2.  However, Suhy specifically stated that he
     discussed his ability to *remove* the Commons Clause with the IRS, whereas, in the section cited to
26   by Plaintiffs, the IRS representative testified that he did not know of any conversation with Suhy
     regarding Neo4j USA's ability to *add* the Commons Clause. *Compare* Trial Tr. Vol. II 328:9–19,
27   *with* Dep. Designations, Ex. 5, Dep. of Internal Revenue Service Through its Designee Michael C.
     Dunn ("Dunn Dep.") 97:17–98:21, ECF No. 210.

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW

*United States District Court*
*Northern District of California*

in replacement for the same Neo4j version." *Id.*

16.    Relying on these and other facts, the Court made three findings relevant to the present Findings of Fact and Conclusions of Law.

17.    First, the Court found that the following conduct constituted trademark infringement: (1) extensively using "Neo4j' and "Neo4j Enterprise" on iGov and PureThink websites without proper trademark notices; (2) using embedded "Neo4j" links to Neo4j USA's website and GitHub repository on their websites; (3) hyperlinking to Plaintiffs' build instructions, support documentation and change logs containing the Neo4j Mark rather than creating and hosting their own with the ONgDB name; and (4) using of "Neo4j Enterprise" and "ONgDB" interchangeably to promote ONgDB on their websites. First MSJ Order 21. The Court found that Defendants were not using "Neo4j" to refer to Plaintiffs' products; they were using it to create the misleading perception that Defendants' products were Plaintiffs' products. *Id.* at 20.

18.    Second, the Court found that Defendants' claims that ONgDB was a "drop-in replacement" or "open source" constituted false advertising and false designation of origin. *Id.* at 28–32.

19.    Third, the Court found that Suhy's removal of the copyright management information ("CMI"), that is, the removal of the Commons Clause and replacement of the Neo4j Sweden Software license with a generic open source APGL license, violated the DMCA. Second MSJ Order 23.

### E.    Damages

20.    Given that the Court has determined liability, the only issue remaining is damages. Central to Plaintiffs' claims for damages are offers made to, and rejected by, (1) the Maryland Procurement Office ("MPO"), and (2) the IRS.

#### 1.    MPO

21.    The MPO, on behalf of the National Security Agency ("NSA"), tasked third party company Next Century to analyze available graph database technologies for a project referred to as the "KMS Project." Stip. to the Amount of Pls.' Lost Profits and Defs.' Profits ("Stip. to

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
6

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Amount") ¶¶ 1, 8, ECF No. 234. The KMS Project was essentially a continuation of prior projects

2  where the MPO had similarly tasked Next Century with analyzing available graph database

3  technologies, including projects referred to as "Task Order 39" and "Blue Rocket Task Order 50."

4  Dep. Designations, Ex. 4, Dep. of Jim Weyant as a Representative of CACI International, Inc.

5  ("Weyant Dep.") 92:23–94:12, 96:4–11, 103:21–104:3, 108:2–19, ECF No. 210.

6       22.    Next Century was looking for enterprise-only features, such as causal clustering

7  and multi-data centers, which were offered by both Neo4j EE and ONgDB. Stip. to Amount ¶ 2.

8       23.    In June 2018, Next Century sought information from Neo4j USA regarding certain

9  Neo4j EE features, including causal clustering. Trial Ex. 103, ECF No. 241-27. In response,

10  Neo4j USA confirmed those features required a commercial subscription for Neo4j EE, and the

11  pricing for it was based on the number of servers in the cluster, cores per server, and RAM per

12  server. *Id.* Neo4j USA informed Next Century that their prices started at $111,000 per year for a

13  3-server cluster with standard support. *Id.* This price rose to $199,000, by April 2019. Trial Ex.

14  17, ECF No. 239-4.

15       24.    Next Century obtained additional information about the pricing of Neo4j USA's

16  Neo4j EE software bundles from iGov's website and learned that iGov offered the same software

17  for free under the AGPL bundled with iGov's consulting services. Stip. to Amount ¶ 3.

18       25.    In October 2018, Next Century exchanged emails with Suhy regarding

19  representations made on iGov's website that ONgDB was an open source version of Neo4j EE that

20  provided the same enterprise-only features for free. *Id.* ¶ 4.

21       26.    Suhy told Next Century that they could use ONgDB under the AGPL without

22  restrictions or paying Plaintiffs for a commercial license, as advertised on the iGov's website.

23  Undisputed Facts ¶ 114.

24       27.    As a result of Next Century's communications with Suhy, Next Century

25  downloaded ONgDB v3.4 and began evaluating it against Neo4j EE v3.4. *Id.* ¶ 15.

26       28.    In a series of emails with Next Century ending on January 4, 2019, Suhy confirmed

27  that ONgDB v3.5 would have feature parity with the enterprise features of Neo4j EE v3.5 and

28  Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW

1   would also be available without restrictions on the number of clusters, instances, and cores, and

2   without paying Neo4j USA for a commercial license. *Id.* ¶ 16. This led Next Century to upgrade

3   from ONgDB v3.4 to ONgDB v3.5 for use in the KMS Project. *Id.*

4       29.    By February 2019, the MPO had chosen to use ONgDB v3.5 over Neo4j EE v3.5

5   for continued development work for the KMS Project. *Id.* ¶ 117. On February 5, 2019, Next

6   Century informed Neo4j USA of this decision, stating, "[w]e have found that open-sourced (non-

7   commercial) builds from the Neo4j source code provide the clustering and security requirements

8   needed in our environment." *Id.* ¶ 118.

9       30.    However, Next Century was still researching other graph databases, including

10  Neo4j EE. Weyant Dep. 92:19–25. Next Century and Neo4j USA continued their discussions,

11  and in March 2019, Next Century gave Neo4j USA the required specifications for its ongoing

12  KMS Project and asked Neo4j USA to provide a quote for use in a production environment. Trial

13  Ex. 116, ECF No. 241-40. Although Next Century cautioned that they did not "have a firm grasp

14  on what the (eventual) production posture will be," Next Century provided Neo4j with some

15  information "for now." Trial Ex. 116.

16      31.    On April 19, 2019, Neo4j USA sent a 3-year Neo4j EE Enterprise Bundle offer

17  based on those requirements ("April 2019 Offer"). Trial Ex. 118, ECF No. 241-42. Under this

18  proposal, Next Century and the MPO had the option to (a) purchase three one-year subscriptions

19  on an incremental basis for a total of $2,667,000; or (b) purchase a 3-year subscription for a total

20  of $2,266,950, which reflects a 15% multi-year, paid up front discount. *Id.*

21      32.    On April 29, 2019, Next Century confirmed that it shared Neo4j USA's proposal

22  with the MPO and was instructed by the MPO to continue using ONgDB. Trial Ex. 119, ECF No.

23  241-43.

24      33.    A few months later, as a follow up to a meeting between Neo4j USA and Next

25  Century that occurred in May 2019, Neo4j USA emailed Next Century stating that they were

26  prepared to offer "a more robust capability that provides the same SLA as your Neo4j CE based

27  solution for a much lower price point than what we originally proposed based on your initial stated

28  Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
8

United States District Court
Northern District of California

United States District Court
Northern District of California

1    requirements." Trial Ex. 120, ECF No. 241-44.

2         34.    That same day, Next Century informed Neo4j USA that the MPO was not

3    interested in the Neo4j EE proposal for the KMS project. *Id.* The reason for the MPO continuing

4    to use ONgDB over Neo4j EE was price. *Id.*; Stip. to Amount ¶ 101.

5         35.    The project immediately following the expiration of the KMS Project, referred to as

6    "Route 66," continued on to deploy an ONgDB-based solution, and the subcontracts and renewals

7    that followed continued deploying ONgDB-based solutions until as recently as October 2022.

8    Weyant Dep. 116:25–117:5, 126:12–127:23.

9         36.    While the MPO declined Neo4j USA's offer in this instance, MPO has purchased

10   six other one-year commercial licenses from Neo4j USA between 2014 and 2022, which ranged

11   from $9,300 to $248,310, as well as one two-year commercial license for $66,249. Trial Ex. 15, at

12   lines 337–43, ECF No. 240.

13        37.    The Parties stipulated to the calculations as to the profits Neo4j USA would have

14   generated had the MPO accepted their April 2019 Offer as written, which range from $1,786,542

15   to $2,370,598. Stip. to Amount ¶¶ 21–24.

16        **2.    IRS**

17        38.    In April 2018, Suhy submitted a bid for a new contract issued by the IRS for a

18   project referred to as the "CKGE Project" on behalf of eGovernment Solutions, Inc. ("eGov"),

19   another entity that he had an ownership interest in at the time.[4] Under Suhy's proposal, eGov

20   would perform "all operations and maintenance duties for all components of the CKGE

21   framework," including working with Neo4j components. Trial Ex. 181, ECF No. 242-5;

22   Undisputed Facts ¶¶ 61, 62.

23        39.    In May 2018, the IRS publicly posted an intent to award the sole source contract

24   for the CKGE Project to eGov. Trial Tr. Vol. I 79:20–23, ECF No. 231. Under this contract,

25   eGov would perform all operations and maintenance duties for all components of the CKGE

26

27   ───────────────
     [4] eGov is not a Defendant in this matter.

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                        9

framework. Trial Ex. 124, ECF No. 241-48. At that time, the CKGE Project had been using the publicly available Neo4j EE v3.2. Dep. Designations, Ex. 5, Dep. of Internal Revenue Service Through its Designee Michael C. Dunn ("Dunn Dep.") 99:3–100:10, ECF No. 210.

40. Neo4j USA saw this public post and emailed the IRS on May 22, 2018. Trial Ex. 126, ECF No. 241-50; Trial Tr. Vol. I 79:20–82:8. Neo4j USA believed that the CKGE Project would require Neo4j EE v3.4, so they contacted the IRS to inform them of the licensing changes to the Neo4j EE v3.4, namely the addition of the Commons Clause, and encourage them to purchase a commercial license and support services for that license from Neo4j USA. Trial Tr. Vol. I 81:22–82:8. That same day, Suhy sent an email to the IRS opining that Neo4j Sweden could not lawfully add the Commons Clause to the license governing Neo4j EE v3.4. Trial Ex. 128, ECF No. 241-52. The IRS subsequently declined the invitation to purchase the Neo4j EE v3.4 license, informing Neo4j USA that their budget was "extraordinarily limited in all avenues," and they would be sticking with the publicly available Neo4j EE v3.2 that they had been using. Trial Ex. 128; Trial Ex. 131. However, the IRS welcomed Neo4j USA to provide a demonstration of the the 3.4 version for planning purposes. *Id.*

41. On May 24, 2018, the IRS officially awarded eGov the new contract to further develop and support the CKGE Project. Trial Ex. 182, ECF No. 242-6; Trial Ex. 183, ECF No. 242-7. The project proceeded using the publicly available Neo4j EE v3.2. Dunn Dep. 99:3–100:10.

42. In June 2018, the IRS had asked Suhy about switching from Neo4j EE v3.2 to the Neo4j 3.3.1 CE because, given the amount of users and the demand requirements, "it wasn't necessary to have any of the Enterprise features." Dunn. Dep. 110:11–101:4; Trial Ex. 129, ECF No. 241-53.[5] Suhy responded by suggesting that, instead of switching to Neo4j CE v3.3.1, the

---

[5] The Court took into consideration the Parties' stipulation that the IRS used at least one Neo4j enterprise-only feature, node ID, via ONgDB in CKGE, Stip. to Amount ¶ 41, and weighed that fact against the IRS representative's email and testimony stating that they were not seeking enterprise features at the time, Dunn. Dep. 110:11–101:4; Trial Ex. 129, as well as Suhy's testimony consistent with this evidence, Trial Tr. Vol. II 322:5–323:5. The Court also notes that it has considered and rejected Plaintiffs' blanket assertion that Suhy's testimony disagreeing with

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
10

United States District Court
Northern District of California

1    IRS should adopt the open fork software managed by eGov for the CKEG project, which was later

2    released as ONgDB.  Trial Ex. 129.  The IRS accepted Suhy's advice and planned to integrate

3    ONgDB rather than switch to Neo4j CE v3.3.1.  Dunn. Dep. 102:3–15.

4          43.     Meanwhile, the IRS had been continuing its discussions with Neo4j USA about

5    Neo4j EE v3.4 "for planning purposes."  Trial Ex. 128, 131.  After some back and forth, on July

6    18, 2018, Neo4j USA provided IRS a quote for $156,000 for a one-year Neo4j EE subscription

7    and $397,800 for three years to use in the CKGE Project ("July 2018 Offer"), with the

8    understanding that the IRS was "just looking for budgetary pricing at the moment."  Trial Ex. 131,

9    ECF No. 241-55.  On July 27, 2018, the IRS replied that the quote was helpful "for planning

10   purposes," but informed Neo4j USA again that they still did not intend to purchase the

11   subscription at that time.  *Id.*

12         44.     In August 2018, approximately one month after the IRS had declined to purchase a

13   Neo4j EE v3.4 license for the second time, the IRS followed up on their June 2018 plan to

14   integrate ONgDB instead of Neo4j CE v3.3.1.  Trial Ex. 132, ECF No. 241-56.  The IRS asked

15   Suhy if it would be easier to switch to ONgDB in the CKGE Project at that time, or if they should

16   wait and deploy the CKGE with Neo4j EE v3.3.2 and then later transition.  Trial Ex. 132.  Suhy

17   recommended that the IRS integrate ONgDB v3.4 at that time rather than continue using Neo4j

18   EE v3.3.2 in the CKGE framework, claiming that "ONgDB open source licenses come directly

19   from the Graph Foundation as well, not from Neo4j Inc."  Trial Ex. 132, 133.

20         45.     Based on Suhy's recommendation, the IRS instructed him to "[g]o ahead and

21   integrate the ONgDB into the CKGE framework we'll deploy" on August 14, 2018.  Trial Ex.

22   133, ECF No. 241-57.

23         46.     The IRS had a team dedicated to supporting ONgDB, and Suhy's contract for the

24   CKGE Project did not specifically require him to provide support for ONgDB.  Trial Tr. Vol. II

25

26   ───────────────────────────

27   this, and other stipulated facts, renders him an unreliable witness in all regards.  Pls.' FFCL 3 n.1,
     9 n.2, 35.  The Court will continue to exercise its discretion to give appropriate weight to Suhy's
     testimony in light of other evidence in the record.

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                    11

United States District Court
Northern District of California

1  316:16–17; 320:11–321:25.[6]  However, Suhy did provide input in the architecture design and

2  hardware requirements needed to run ONgDB installations on multiple servers within the CKGE.

3  *Id.*; Undisputed Facts ¶ 32.

4  47.    After the Court's preliminary injunction requiring that the IRS remove ONgDB

5  from their servers, the IRS switched back to Neo4j CE.  Trial Tr. Vol. I 277:18–278:14, 280:22.

6  48.    The Parties stipulated to the calculations as to the profits Neo4j USA would have

7  generated had the IRS accepted their July 2018 Offer as written, along with additional commercial

8  subscriptions for every integration of ONgDB that followed, ranging from $2,646,557 to

9  $3,069,646 in lost profits.  Stip. to Amount ¶¶ 60, 63.

10  49.    The Parties also stipulated that iGov and Suhy gained $1,316,000 in profits from

11  the IRS under the CKGE Contract, as well as an additional $246,082.55 for work performed under

12  IRS subcontracts.  *Id.* ¶¶ 68, 71.

13  **II.    CONCLUSIONS OF LAW**

14  The Court previously found Defendants liable under the Lanham Act's prohibition of

15  trademark infringement and false advertising and designation of origin, as well as the DMCA's

16  prohibition of copyright infringement.  *See* First MSJ Order; Second MSJ Order.  Plaintiffs now

17  seek relief in the form of monetary damages under the Lanham Act and the DMCA, as well as a

18  permanent injunction.  Pls.' FFCL.  The Court will address each request below.

19  **A.    Monetary Damages**

20  Under the Lanham Act, the court may, "in its discretion and subject to the principles of

21  equity," award monetary damages in the form of actual damages, the defendant's illicit profits,

22  and attorneys' fees.  *Jason Scott Collection, Inc. v. Trendily Furniture*, LLC, 68 F.4th 1203, 1220

23  (9th Cir. 2023), *cert. denied*, 144 S. Ct. 550 (2024) (internal quotation marks omitted) (quoting 15

24  U.S.C. § 1117(a)).  Courts "assess trademark damages in the same manner as tort damages: the

---

[6] The Court weighed the IRS representative's testimony on this point, Dunn Dep. 97:17–98:21, against Suhy's testimony and the other evidence in the record, including Suhy's contract, Trial Ex. 1011, ECF No. 242-37.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
12

1    reasonably foreseeable harms caused by the wrong." *Id.* (internal quotation marks omitted)

2    (quoting *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110, 1113 (9th Cir. 2012)).

3        To recover actual damages sustained by a plaintiff, the plaintiff must prove both (1) the

4    fact of the damages and (2) the amount of damages. *Skydive Arizona, Inc. v. Quattrocchi*, 673

5    F.3d 1105, 1112 (9th Cir. 2012); *see also eAdGear, Inc. v. Liu*, No. CV-11-05398 JCS, 2012 WL

6    2367805, at *18 (N.D. Cal. June 21, 2012), *report and recommendation adopted*, No. C-11-05398

7    RMW JCS, 2012 WL 4005454 (N.D. Cal. Sept. 11, 2012). Once the fact of damages is

8    established, plaintiffs are held to a lower standard of proof regarding the exact amount of actual

9    damages. *Skydive Arizona*, 673 F.3d at 1112.

10        Regarding a defendant's profits, a plaintiff may recover an infringing defendant's profits as

11    a measure of the plaintiff's own damages or on a theory of disgorgement. *Sky Billiards, Inc. v.*

12    *Loong Star, Inc.*, No. EDCV14921JGBSPX, 2016 WL 6661175, at *6 (C.D. Cal. Mar. 17, 2016)

13    (citing *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993)). "[A] trademark

14    defendant's mental state is a highly important consideration in determining whether an award of

15    profits is appropriate." *Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212, 219 (2020).

16        Attorneys' fees may be awarded at a court's discretion in "exceptional cases." 15 U.S.C. §

17    1117(a). Courts determine whether a case is "exceptional" by examining the totality of the

18    circumstances and "evaluating whether the case is one that stands out from others with respect to

19    the substantive strength of the party's litigating position . . . or the unreasonable manner in which

20    the case was litigated based on a preponderance of the evidence." *Jason Scott Collection*, 68 F.4th

21    at 1223.

22        Similarly, under the DMCA, a plaintiff may also recover "the actual damages suffered . . .

23    as a result of the violation, and any profits of the violator that are attributable to the violation and

24    are not taken into account in computing the actual damages." 17 U.S.C. § 1203(c)(2). Actual

25    damages may consist of lost licensing fees and renewal fees, as well as lost profits. *See Polar*

26    *Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707–08 (9th Cir. 2004) (affirming an actual

27    damages award based on the copyright holder's actual price quote to the infringer). A plaintiff

28

*Left margin (vertical text):* United States District Court Northern District of California

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
13

1    may also recover hypothetical-license damages as actual damages. *Id*

2            Here, Plaintiffs argue that Defendants' trademark infringement, false advertising and false

3    designation of origin, and copyright infringement caused Plaintiffs to lose potential licensing

4    contracts with, and caused Defendants to gain illicit profits from, the MPO and the IRS.[7]

5    Plaintiffs also argue that Defendants' conduct makes this case "exceptional" and gives rise to

6    attorneys' fees and prejudgment interest.

7            The Court will address in turn Plaintiffs' requests for monetary damages regarding: (1) the

8    MPO offer, (2) the IRS offer, (3) attorneys' fees, and (4) prejudgment interest.  Where the Court

9    finds monetary damages appropriate, the Court will also address Defendants' argument that any

10   award should be reduced pursuant to the DMCA's innocent copyright infringer defense.

11                   **1.**     **MPO**

12           Plaintiffs argue that Defendants' trademark infringement, false advertising and false

13   designation of origin, and copyright infringement caused Plaintiffs to lose potential licensing

14   revenue after the MPO rejected their April 2019 Offer for a Neo4j EE commercial license

15   subscription and instead adopted ONgDB for free. *See* Pls.' FFCL 29–31.  Plaintiffs seek an

16   award of $2,370,598 in lost licensing revenue. *Id.* at 30.  Given that Defendants did not generate

17   any profit from these circumstances, Plaintiffs do not seek damages in the form of Defendants'

18   illicit profits. *See id.* at 29–31.

19           To reiterate, in order to recover actual damages, Plaintiffs must prove both (1) the fact of

20   the damages and (2) the amount of damages. *Skydive Arizona*, 673 F.3d at 1112.  Once the fact of

21   damages is established, plaintiffs are held to a lower standard of proof regarding the exact amount

22   of actual damages. *Id.*

23           For the reasons explained below, the Court finds that, although there is evidence that

24   Defendants' conduct caused the MPO to integrate ONgDB v3.5 for free rather than pay for a

25   Neo4j EE commercial license, there is insufficient evidence to show that the MPO would have

26

27   [7] Plaintiffs' briefing does not request independent damages for the unfair competition claims. *See*
     Pls.' FFCL 28.

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                          14

United States District Court
Northern District of California

accepted the specific prices quoted in Plaintiffs' April 2019 Offer but for Defendants' conduct.

### a.    Fact of Damages

The Court finds that Defendants' (1) trademark infringement, (2) false advertising and designation of origin, and (3) copyright infringement caused Neo4j USA damages in the form of lost licensing revenue from the MPO.

First, the evidence shows that Defendants' trademark infringement violation contributed to the MPO choosing ONgDB over Neo4j EE.

The Court previously found that the following conduct was likely to create customer confusion and thus gave rise to trademark infringement: (1) marketing without proper trademark notices products called "Neo4j Enterprise" and "Government Package for Neo4j" to create the misleading perception that Defendants' products were Plaintiffs' products; (2) using the Neo4j Mark in their URLs and email addresses; (3) using embedded "Neo4j" links to Neo4j USA's website and GitHub repository on their websites; (4) hyperlinking to Plaintiffs' build instructions, support documentation and change logs containing the Neo4j Mark rather than creating and hosting their own with the ONgDB name; and (5) using of "Neo4j Enterprise" and "ONgDB" interchangeably to promote ONgDB on their websites.  First MSJ Order 19–22.

Here, the KMS Project required the enterprise features found in both Neo4j EE and ONgDB.  Undisputed Facts ¶ 111.  The MPO learned about the pricing of Neo4j Enterprise software bundles offered by Neo4j USA and iGov from iGov's website, and subsequently exchanged emails with Suhy regarding representations made on iGov's website that ONgDB was an open source version of Neo4j EE that provided the same enterprise-only features for free.  *Id.* ¶¶ 3, 4.  Suhy also informed Next Century that the MPO could use ONgDB under the AGPL without restrictions or paying Plaintiffs for a commercial license, as advertised on the iGov's website.  *Id.* ¶ 5.  As a result of Next Century's communications with Suhy, Next Century downloaded ONgDB v3.4 and began evaluating against Neo4j EE v3.4.  *Id.* ¶ 6.  The MPO subsequently chose to integrate ONgDB v3.4 for free instead of Neo4j EE v3.4, and later upgraded to ONgDB v3.5 instead of purchasing Neo4j EE v3.5.  *Id.*  This series of events makes clear that

1   the trademark infringements on iGov's website led to the MPO learning of ONgDB and ultimately

2   choosing ONgDB v3.5 over Neo4j EE v3.5.

3         Second, the evidence shows that Defendants' false advertising and false designation of

4   origin violation contributed to the MPO choosing to integrate ONgDB over Neo4j EE.

5         The Court previously found that Defendants' characterization of ONgDB as a "drop-in

6   replacement" and "open source" are material statements that were false or likely to mislead

7   consumers. First MSJ Order 28–32.

8         Here, for similar reasons, the Court finds that Defendants' advertisement of ONgDB to

9   Next Century as a "drop-in replacement" and "open source" contributed to the MPO integrating

10   ONgDB rather than Neo4j EE.  As discussed above, the KMS Project required the enterprise

11   features found in both Neo4j EE and ONgDB, and the MPO ultimately chose ONgDB in part on

12   the belief that it was a "drop-in replacement" and "open source" version of Neo4j EE.  Undisputed

13   Facts ¶ 111.

14         Third, the evidence shows that Defendants' DMCA violation contributed to the MPO

15   choosing ONgDB over Neo4j EE.

16         The Court previously found that Defendants' removal of the Commons Clause and

17   replacement of the Neo4j Sweden Software license with a generic open source APGL license

18   violated the DMCA.  Second MSJ Order 16–24.

19         Again here, the evidence shows that the KMS Project required the enterprise features

20   found in both Neo4j EE and ONgDB, and the MPO ultimately chose ONgDB in part because it

21   offered the same features as Neo4j EE, but for free.  Because Defendants' removal of the

22   Commons Clause allowed the MPO to use ONgDB v3.5 for free rather than pay for a Neo4j EE

23   v3.5 commercial license, the DMCA violation necessarily contributed to the MPO choosing

24   ONgDB over Neo4j EE.

25         Based on the foregoing, the Court finds sufficient evidence that Defendants' Lanham Act

26   and DMCA violations caused the MPO to implement ONgDB instead of purchasing a commercial

27   license from Neo4j USA.

28   Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
16

### b. Amount of Damages

While Plaintiffs have proven the fact of damages, the Court finds the evidence insufficient to establish that this conduct caused Plaintiffs to lose $2,370,598 in potential licensing revenue. However, the Court finds sufficient evidence to show that the MPO would have accepted an offer for a lesser amount.

### i. Insufficient Evidence to Support Damages Requested

Most notably, the evidence shows that the April 2019 Offer was not final. When Next Century provided the information to generate the April 2019 quote, they informed Neo4j USA that they did not "have a firm grasp on what the (eventual) production posture will be," but provided Neo4j with some information "for now." Trial Ex. 116, ECF No. 241-40. A few months later, after a meeting between Neo4j USA and Next Century, Neo4j USA emailed Next Century stating that they were prepared to offer a "much lower" quote—in Neo4j USA representative's own words, Neo4jUSA was willing to offer "a more robust capability that provides the same SLA as your Neo4j CE based solution for a *much lower price* point than what we originally proposed based on your initial stated requirements." Trial Ex. 120 (emphasis added). Plaintiffs have provided no evidence for the Court to presume what amount this new quote may have been.

Further, there is no evidence that the MPO had the budget to accept the April 2019 Offer for the KMS Project; to the contrary, the only evidence regarding funding is evidence showing that the MPO's prior similar projects with Next Century never budgeted for a commercial license. Weyant Dep. 30:6–17, 37:6–13, 67:11–21, 92:23–94:12, 96:4–11, 108:2–19, 103:21–104:3.

Finally, while the Parties' stipulation states that the MPO's willingness to purchase a commercial license for Neo4j EE for the KMS Project is supported by its history of purchasing other Neo4j EE commercial licenses, the Court finds this support tenuous. It is true that the MPO has a history of purchasing Neo4j EE commercial licenses, and this fact serves to support Plaintiffs' argument. Undisputed Facts ¶ 18. However, there is a significant price disparity between the licenses purchased and the April 2019 Offer. The evidence shows that between 2014 and 2022, the MPO purchased six one-year commercial licenses from Neo4j USA, which ranged

1   from $9,300 to $248,310, as well as one two-year commercial license for $66,249. Trial Ex. 15, at

2   lines 337–43. In total, the MPO has spent $929,208.00 in various licenses across the course of

3   eight years. But here, the April 2019 Offer gave the MPO the option to purchase three one-year

4   subscriptions for a total of $2,667,000 or purchase a three-year subscription for a total of

5   $2,266,950. Undisputed Facts ¶ 17. There is no evidence of any comparable purchases or other

6   evidence of the MPO's budget which would support Plaintiffs' argument that the MPO had the

7   ability to accept a multi-million dollar licensing package. Considering this extreme price

8   disparity, there is insufficient evidence to support the damages sought by Plaintiffs.

9       Together, these facts demonstrate the lack of evidence sufficient to show that the MPO

10   would have accepted the April 2019 Offer as written but for Defendants' conduct. While

11   Plaintiffs are correct that the Court had previously found that the circumstances surrounding the

12   April 2019 Offer gave rise to a presumption of injury under the Lanham Act, the Court cannot

13   presume that Plaintiffs would have generated over two million dollars in revenue given these

14   facts.[8]

15                 ii.       **Sufficient Evidence to Show Lesser Amount of Damages**

16       However, Plaintiffs are correct that they have a lower burden of proof in calculating the

17   exact amount of actual damages here. *Skydive Arizona*, 673 F.3d at 1112. Calculations need not

18   rely on, for example, empirical quantification or expert testimony—they must only be supported

19   by "reasonable inferences and assessments, based upon substantial evidence in the record." *Id.* at

20   1113. While there is insufficient evidence to establish that the MPO would have accepted the

21   April 2019 Offer as written, the evidence of other purchases and the ongoing negotiations does

22   support a conclusion that the MPO would have been more likely to accept an offer of a lower

23   amount but for Defendants' conduct.

24

25

26   _____

[8] To clarify, the Court did not make a finding as to the specific amount of actual damages incurred by the loss of the MPO contract in its First MSJ Order, as Plaintiffs argue. *See* Pls.' FFCL 22.

27   While the Court found that Plaintiffs provided evidence sufficient to show an injury arising from Defendants' Lanham Act violations, the issue of calculating monetary damages was not presented before the Court at that time. First MSJ Order 16.

28   Case No.: 5:18-cv-07182-EJD
    FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                      18

United States District Court
Northern District of California

1    Aside from Neo4j USA's multi-million dollar offer, the only other estimate in the evidence

2    is in Neo4j USA's initial communications with Next Century in June 2018, where Neo4j USA

3    informed Next Century that the Enterprise Edition bundles started at $111,000 per year for a 3-

4    server cluster with standard support.  Trial Ex. 103.  By the time Neo4j USA made its April 2019

5    Offer, this starting bundle price rose to $199,000, with optional add-ons for an increased price.

6    Trial Ex. 17.  This number is also reflected in the breakdown of Neo4j USA's April 2019 Offer.

7    Trial Ex. 118.

8    The Court finds sufficient evidence to show that the MPO would have at least purchased

9    this starting bundle for $199,000 but for Defendants' conduct.  This price reflects the lowest

10   possible bundle price, therefore even a "much lower quote" would not have fell below this

11   amount.  *See* Steven Boyles Expert Report, Trial Ex. 209, Expert Report of Steven B. Boyles, at

12   41 n.169, ECF No. 244-3.  This price also falls within the range of other licenses that the MPO has

13   purchased from Neo4j USA, and it is an amount that could have conceivably been allocated from

14   Next Century's awards in similar prior projects.  Trial Ex. 15, at lines 337–43; Weyant Dep. 30:6–

15   17.  The Court notes that it cannot be certain whether this base configuration would have

16   ultimately been enough to fit the MPO's specific needs for the KMS Project—it is possible that

17   the KMS Project required additional servers or machines; but as discussed above, there is no

18   evidence regarding exactly what the MPO required beyond the base package given Neo4j USA's

19   email indicating that the specifications used for the April 2019 quote had changed.

20   Finding that the evidence shows the MPO likely would have purchased, at a minimum, the

21   starting bundle for $199,000 but for Defendants' conduct, the Court now considers how many

22   years of that subscription the MPO would have purchased.  Neo4j USA's April 2019 offer was

23   limited to the KMS Project, which terminated in September 2019, and Neo4jUSA did not make

24   any additional offers.  *See* Trial Ex. 103.  However, the evidence also shows that the project

25   immediately following the expiration of the KMS Project, referred to as "Route 66," continued on

26   to deploy an ONgDB-based solution, and the subcontracts and renewals that followed continued

27   deploying ONgDB-based solutions until as recently as October 2022.  Weyant Dep. 116:25–117:5,

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                    19

United States District Court
Northern District of California

United States District Court
Northern District of California

1    126:12–127:23.[9]  There is also evidence that the MPO has historically renewed other Neo4j EE

2    license subscriptions.  Trial Ex. 15, at lines 337–43.  Taken together, the evidence supports a

3    finding that, if the MPO had implemented a Neo4j EE subscription in the KMS Project, the

4    projects immediately following would have done the same until October 2022; thus, the MPO

5    would have renewed this contract for at least three years following the April 2019 Offer for a total

6    of $597,000.

7         Therefore, in consideration of Plaintiffs' lower burden of proof in calculating the exact

8    amount of actual damages, *Skydive Arizona*, 673 F.3d at 1112, the Court exercises its discretion in

9    evaluating the evidence and equities and awards $597,000 in actual damages.

### c.    Innocent Infringer

11        Defendants argue that any monetary award should be reduced or remitted because Suhy's

12   DMCA violation was "innocent" pursuant to 17 U.S.C. § 1203(c).  Defs.' FFCL 11.  Defendants

13   argue that Suhy had no reason to believe that removing the Commons Clause would violate the

14   DMCA, highlighting that Suhy read the AGPL license, studied information, and spoke with the

15   Free Software Foundation, the copyright holder of the AGPL, which confirmed that the addition

16   could be removed.  *Id.*

17        The Court finds Defendants' arguments irrelevant to its award of damages here.  The Court

18   found that the actual damages arising out of the lost MPO contract was the result of not only

19   Defendants' DMCA violation, but also Defendants' violation of the Lanham Act.  Thus, even if

20   the Court were to find that Suhy was an innocent copyright infringer because he believed he could

21   lawfully remove the Commons Clause, this would not alter the actual damages award arising from

22   the Lanham Act violations.  Therefore, the Court finds it unnecessary to address Defendants'

23   DMCA innocent copyright infringer arguments.

24                                    * * *

25

26   _____

27   [9] While the MPO increased the number of servers and machines once ONgDB was placed into
     production, there is no evidence that this increase met or exceeded the specifications in Neo4j
     USA's April 2019 Offer.  Weyant Dep. 118:7–24.

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                    20

United States District Court
Northern District of California

1    The Court finds that Plaintiffs have provided evidence sufficient to show the fact of

2    damages, but not sufficient to show the amount Plaintiffs requested.  Therefore, the Court

3    exercises its discretion to award Plaintiffs $597,000 in actual damages.

4         **2.    IRS**

5    Plaintiffs argue that Suhy's trademark infringement, false advertising and false designation

6    of origin, and copyright infringement caused Plaintiffs to lose potential licensing revenue after the

7    IRS rejected their July 2018 Offer for a Neo4j EE v§3.4 commercial subscription and instead

8    adopted ONgDB for free.  Pls.' FFCL 30.  Plaintiffs seek an award of $3,069,646 in potential

9    licensing revenue, as well as $1,562,082.55 in Defendants' illicit profits.  *Id.* at 31.

10   Again here, to recover actual damages, Plaintiffs must prove both (1) the fact of the

11   damages and (2) the amount of damages.  *Skydive Arizona*, 673 F.3d at 1112.

12   For the reasons explained below, the Court finds that Plaintiffs fail at the first step—there

13   is insufficient evidence to show that Suhy's conduct caused Plaintiffs to lose potential licensing

14   revenue or caused Suhy to gain illicit profits.

15        **a.    Fact of Damages**

16   The Court finds insufficient evidence to show that Defendants' (1) trademark infringement,

17   (2) false advertising and designation of origin, or (3) copyright infringement caused Neo4j USA

18   damages in the form of lost licensing revenue from the IRS.

19   <u>First</u>, the Court finds insufficient evidence to show that Suhy's trademark infringement

20   contributed to Plaintiffs losing potential licensing revenue from their July 2018 Offer.

21   There is simply no evidence that the IRS ever came across or experienced the online

22   conduct that the Court found constituted trademark infringement, i.e., marketing "Neo4j

23   Enterprise" and "Government Package for Neo4j" without proper trademark notices; using the

24   Neo4j Mark in their URLs and email addresses; using embedded "Neo4j" links on their websites;

25   hyperlinking to Plaintiffs' materials containing the Neo4j Mark; or using of "Neo4j Enterprise"

26   and "ONgDB" interchangeably to promote ONgDB on their websites.  First MSJ Order 19–22.

27   For those same reasons, the Court finds that there is no evidence to show that Suhy and eGov were

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
     21

1    The Court finds that Plaintiffs have provided evidence sufficient to show the fact of

2    damages, but not sufficient to show the amount Plaintiffs requested. Therefore, the Court

3    exercises its discretion to award Plaintiffs $597,000 in actual damages.

4         **2.    IRS**

5    Plaintiffs argue that Suhy's trademark infringement, false advertising and false designation

6    of origin, and copyright infringement caused Plaintiffs to lose potential licensing revenue after the

7    IRS rejected their July 2018 Offer for a Neo4j EE v§3.4 commercial subscription and instead

8    adopted ONgDB for free. Pls.' FFCL 30. Plaintiffs seek an award of $3,069,646 in potential

9    licensing revenue, as well as $1,562,082.55 in Defendants' illicit profits. *Id.* at 31.

10   Again here, to recover actual damages, Plaintiffs must prove both (1) the fact of the

11   damages and (2) the amount of damages. *Skydive Arizona*, 673 F.3d at 1112.

12   For the reasons explained below, the Court finds that Plaintiffs fail at the first step—there

13   is insufficient evidence to show that Suhy's conduct caused Plaintiffs to lose potential licensing

14   revenue or caused Suhy to gain illicit profits.

15        **a.    Fact of Damages**

16   The Court finds insufficient evidence to show that Defendants' (1) trademark infringement,

17   (2) false advertising and designation of origin, or (3) copyright infringement caused Neo4j USA

18   damages in the form of lost licensing revenue from the IRS.

19   <u>First</u>, the Court finds insufficient evidence to show that Suhy's trademark infringement

20   contributed to Plaintiffs losing potential licensing revenue from their July 2018 Offer.

21   There is simply no evidence that the IRS ever came across or experienced the online

22   conduct that the Court found constituted trademark infringement, i.e., marketing "Neo4j

23   Enterprise" and "Government Package for Neo4j" without proper trademark notices; using the

24   Neo4j Mark in their URLs and email addresses; using embedded "Neo4j" links on their websites;

25   hyperlinking to Plaintiffs' materials containing the Neo4j Mark; or using of "Neo4j Enterprise"

26   and "ONgDB" interchangeably to promote ONgDB on their websites. First MSJ Order 19–22.

27   For those same reasons, the Court finds that there is no evidence to show that Suhy and eGov were

28   Case No.: <u>5:18-cv-07182-EJD</u>
FINDINGS OF FACT AND CONCLUSIONS OF LAW

United States District Court
Northern District of California

1    awarded their contract due to any of the conduct the Court found gave rise to trademark

2    infringement.

3        _Second_, the Court finds insufficient evidence to show that Suhy's false advertising and

4    false designation of origin violation contributed to Plaintiffs losing potential licensing revenue

5    from their July 2018 Offer.

6        Plaintiffs argue that Suhy's characterization of ONgDB as an "open source license" that

7    "come[s] directly from the Graph Foundation" caused the IRS to reject their July 2018 Offer. _See_

8    Pls.' FFCL 29–30. However, the evidence shows that Suhy made these statements months after

9    the IRS had already rejected Neo4j USA's July 2018 Offer, and more importantly, these

10   statements were made to convince the IRS to integrate ONgDB instead of another open source

11   Neo4j CE license, not Neo4j EE v3.4.

12       A brief reiteration of the relevant timeline will aid the Court's discussion on this point.

13   _May 2018_

14       In May 2018, the IRS publicly posted an intent to award the sole source contract for the

15   CKGE Project to eGov. Trial Tr. Vol. I 79:20–23. At that time, the CKGE Project had been using

16   the publicly available Neo4j EE v3.2. Dunn Dep. 99:3–100:10, ECF No. 210, Ex. 5. Neo4j USA

17   saw this public post and emailed the IRS. Trial Ex. 126; Trial Tr. Vol. I 79:20–82:8. Neo4j USA

18   believed that the CKGE Project would require Neo4j EE v3.4, so they informed the IRS of the

19   licensing changes to Neo4j EE v3.4, namely the addition of the Commons Clause, and encouraged

20   them to purchase a commercial license and support services from Neo4j USA. Trial Tr. Vol. I

21   81:22–82:8. That same day, Suhy contacted the IRS to share his opinion that Neo4j Sweden was

22   not permitted to add the Commons Clause to the license governing Neo4j EE v3.4. Trial Ex. 128.

23   The following day, the IRS declined the invitation to purchase the Neo4j EE v3.4 license,

24   informing Neo4j USA that their budget was "extraordinarily limited in all avenues," and they

25   would be sticking with the publicly available Neo4j EE v3.2 that they had been using. Trial Ex.

26   128; Trial Ex. 131. However, the IRS welcomed Neo4j USA to provide a demonstration of Neo4j

27   EE 3.4 for planning purposes. _Id._

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
     22

United States District Court
Northern District of California

Case 5:18-cv-07182-EJD   Document 248   Filed 07/22/24   Page 23 of 33

1    On May 24, 2018, the IRS carried forward with its plan to award eGov the contract for the

2    CKGE Project.  Trial Ex. 182; Trial Ex. 183.  The project proceeded using the publicly available

3    Neo4j EE v3.2.  Dunn Dep. 99:3–100:10.

4        *June 2018*

5    In June 2018, the IRS had asked Suhy about switching from Neo4j EE v3.2 to the Neo4j

6    3.3.1 CE (the open-source community edition) because, given the amount of users and the demand

7    requirements, "it wasn't necessary to have any of the Enterprise features."  Dunn. Dep. 110:11–

8    101:4.  Suhy suggested that the IRS should adopt the open fork software managed by eGov for the

9    CKEG project, later released as ONgDB, instead of switching to Neo4j CE 3.3.1.  Trial Ex. 129.

10   The IRS ultimately followed Suhy's advice and made a plan to integrate what would later be

11   called ONgDB.  Dunn. Dep. 102:3–15.

12       *July 2018*

13   Meanwhile, the IRS had been continuing its discussions with Neo4j USA about Neo4j EE

14   v3.4 "for planning purposes."  Trial Ex. 128, 131.  After some back and forth, Neo4j USA

15   provided its July 2018 Offer, with the understanding that the IRS was "just looking for budgetary

16   pricing at the moment."  Trial Ex. 131.  On July 27, 2018, the IRS replied that the quote was

17   helpful "for planning purposes," but informed Neo4j again that they still did not intend to follow

18   up with a new acquisition at that time.  Trial Ex. 131.

19       *August 2018*

20   In August 2018, approximately one month after the IRS declined to purchase a Neo4j EE

21   v3.4 license for the second time, the IRS revisited its June 2018 plan to integrate ONgDB instead

22   of Neo4j CE v3.3.1.  Trial Ex. 132.  When asked about when to integrate ONgDB, Suhy

23   recommended that the IRS integrate ONgDB v3.4 sooner rather than later, claiming that "ONgDB

24   open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc."  Trial

25   Ex. 132, 133.  The Court later found that this statement constituted false advertising and false

26   designation of origin.  First MSJ Order 28–32.  Based on Suhy's recommendation, the IRS

27   instructed him to integrate the ONgDB into the CKGE framework on August 14, 2018.  Trial Ex.

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                          23

*United States District Court*
*Northern District of California*

1    133.

2          The evidence clearly shows that Suhy's representations caused the IRS to integrate

3    ONgDB; however, the evidence also shows that the IRS chose ONgDB over Neo4j *CE v3.3.1*, not

4    Neo4j *EE v3.4*.[10] The IRS did not need Neo4j v3.4 features for the CKGE Project—they were

5    considering a switch to the free and publicly available Community Edition software when Suhy

6    recommended ONgDB. Dunn. Dep. 110:11–101:4; Trial Ex. 129, ECF No. 241-53. And notably,

7    since removing ONgDB after the Court's preliminary injunction, the IRS has returned to the

8    Community Edition across the board with no evidence of any issues or need for additional

9    features. Trial Tr. Vol. I 277:18–278:14, 280:22. While the IRS invited Neo4j USA to

10   demonstrate Neo4j EE v3.4, the evidence shows that this invitation was to gain information "for

11   planning purposes." Trial Ex. 131. Neo4j USA understood that the IRS was merely looking for

12   "budgetary pricing" when it allowed Neo4j USA to demo the software for them and provide a

13   quote. *Id.*

14          The Court also finds the evidence insufficient to prove that Defendants' profits from the

15   CKEG contract were the result of his statements. Suhy's contract for the CKGE Project did not

16   require him to provide support for ONgDB—the IRS had a team dedicated to supporting ONgDB.

17   Trial Tr. Vol. II 316:16–17; 320:11–321:25. While Suhy voluntarily provided input in the

18   architecture design and hardware requirements needed to run ONgDB installations on multiple

19   servers within the CKGE, his income from the project was not dependent on that support. *Id.*

20   Even if Suhy was required under his contract to provide the support services for whichever

21

22   _____

23   [10] The Court notes that, pursuant to Rule 52, it reached its conclusion by weighing the Parties'
     stipulation that the IRS decided to not allocate $156,000 for a license to use Neo4j EE in the
24   CKGE platform because ONgDB was a free and open, unrestricted alternative, with the other
     evidence cited to in this section. *See, e.g., In re Jagar*, No. 13-46850 CN, 2015 WL 4327902, at
     *1 (Bankr. N.D. Cal. July 15, 2015), *aff'd*, No. 4:14-AP-04037-CN, 2017 WL 1371297 (B.A.P.
25   9th Cir. Apr. 12, 2017), *aff'd*, 742 F. App'x 310 (9th Cir. 2018) ("When considering a Rule 52(c)
     motion, this court must take an unbiased view of all of the evidence, direct and circumstantial, and
26   accord it such weight as the court believes it is entitled to receive.") (internal quotation marks
     omitted); *see also Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1090 (9th Cir. 2002)
27   (stating that it is the obligation of the trier of fact to resolve conflicting evidence).

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                       24

United States District Court
Northern District of California

software the IRS chose, the Court reiterates that the IRS was considering ONgDB and Neo4j *CE v3.3.1*, thus Suhy would have been able to provide support to both, as Neo4j CE was a publicly available software.

**Third**, the Court finds insufficient evidence to show that Suhy's DMCA violation, that is, his removal of the Commons Clause, contributed to Plaintiffs losing potential licensing revenue from their July 2018 Offer. Again here, the evidence clearly shows that the IRS did not need the enterprise features. Dunn. Dep. 110:11–101:4.[11] Thus, for all the reasons described above, the evidence does not support Plaintiffs' argument that Suhy's profits resulted from his removal of the Commons Clause in ONgDB v3.5.

### b.    Amount of Damages

Because the Court finds insufficient evidence to show the fact of damages, the Court finds it unnecessary to address the Parties' arguments regarding the amount of damages.

* * *

The Court finds that Plaintiffs have failed to provide sufficient evidence to show the fact of damages resulting from their July 2018 Offer. Therefore, the Court awards no damages as to the July 2018 Offer.

### 3.    Attorneys' Fees

Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Similarly, the DMCA provides in relevant part that "the court may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. An "exceptional" case under either statute "is simply one that stands out from others" where there is a showing "that a defendant engaged in malicious, fraudulent, deliberate or willful infringement." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839

---

[11] Again here, the Court took into consideration the Parties' stipulation that Defendants' removal of the Commons Clause from the license governing ONgDB enabled the IRS to use ONgDB for free rather than pay for a commercial license to Neo4j EE, Stip. to Amount ¶ 48, and weighed that fact against the IRS representative's email and testimony stating that they were not seeking enterprise features at the time. Dunn. Dep. 110:11–101:4; Trial Ex. 129.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
25

1    F.3d 1179, 1180 (9th Cir. 2016) (internal quotation marks omitted) (quoting *Lindy Pen Co. v. Bic*

2    *Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993), *superseded by statute on other grounds*,

3    Trademark Amendments Act of 1999, Pub. L. No. 106–43, 113 Stat. 218)); *see also, e.g., Jason*

4    *Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223 n.13 (9th Cir. 2023); *Dish*

5    *Network, L.L.C. v. SatFTA*, No. 5:08-CV-01561 JF PSG, 2011 WL 856268, at *7 (N.D. Cal. Mar.

6    9, 2011).  Courts "should examine the totality of the circumstances to determine if the case was

7    exceptional, exercising equitable discretion in light of the nonexclusive factors identified in

8    *Octane Fitness* and *Fogerty*, and using a preponderance of the evidence standard." *SunEarth*, 839

9    F.3d at 1181 (internal quotation marks omitted) (quoting *Octane Fitness, LLC v. ICON Health &*

10   *Fitness, Inc.*, 572 U.S. 545, 554 (2014)).  These factors include "frivolousness, motivation,

11   objective unreasonableness (both in the factual and legal components of the case) and the need in

12   particular circumstances to advance considerations of compensation and deterrence." *Octane*

13   *Fitness*, 572 U.S. at 554 n.6 (internal quotation marks omitted) (quoting *Fogerty v. Fantasy, Inc.*,

14   510 U.S. 517 (1994)).  Courts generally understand the term "exceptional" to mean cases in which

15   the infringement can be characterized as "malicious, fraudulent, deliberate or willful." *Derek*

16   *Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008).  But ultimately, "[t]here is

17   no precise rule or formula for making these determinations, but instead equitable discretion should

18   be exercised in light of the[se] considerations." *Fogerty*, 510 U.S. at 534 (internal quotation

19   marks omitted).

20         Here, Plaintiffs argue that this is an "exceptional" case because Defendants' violations of

21   the Lanham Act and the DMCA were willful.  In support, Plaintiffs highlight the Court's prior

22   findings that Defendants' use of the Neo4j Mark created the misleading perception that

23   Defendants' products were Plaintiffs' products, Defendants' statements that ONgDB was "open

24   source" and a "drop in replacement" were false, and that Defendants' removal of the Commons

25   Clause was unlawful under Neo4j USA's copyright.  Pls.' FFCL 31–32.  Plaintiffs also argue that

26   Defendants litigated this case in an unreasonable manner by repeatedly reasserting legal

27   arguments, claims, and defenses that the Court previously dismissed with prejudice or otherwise

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                        26

United States District Court
Northern District of California

1   determined to be meritless. *Id.* at 33–34.

2        Upon consideration of the totality of the circumstances and the factors referenced in

3   *SunEarth*, the Court finds that this is not an "exceptional" case warranting attorneys' fees.

4        First, while some of Defendants' conduct in this case could be considered frivolous, such

5   as re-litigating settled issues or raising affirmative defenses without a proper basis, the Court does

6   not find this conduct egregious enough to be considered "exceptional." *See, e.g., TransPerfect*

7   *Glob., Inc. v. MotionPoint Corp.*, No. C 10-2590 CW, 2014 WL 6068384, at *8 (N.D. Cal. Nov.

8   13, 2014) (finding "frivolous arguments" and other missteps, only some of which were

9   inadvertent, too minor to justify a fee award).

10       Next, the evidence shows that Suhy's conduct was largely motivated by his belief in the

11  freedom and liberty of open-source software rather than financial or other motivation.  Trial Tr.

12  Vol. II 251:11–21; 299:25–17.  As the Court discussed above, Suhy did not make any financial

13  gains from his interactions with the MPO, and the IRS's choice between Neo4j CE or ONgDB did

14  not impact his ability to continue his work with the IRS.

15       Further, while some of Defendants' arguments in this case, as noted above, were objectively

16  unreasonable, the Court observes that this case dealt with issues lacking the benefit of a body of

17  established case law to guide Defendants' conduct or litigation strategy, particularly the legal

18  implications of removing a Commons Clause.  Thus, Defendants' conduct, when viewed in the

19  totality of the limited legal landscape surrounding this case, does not make this case "exceptional."

20       Moreover, the Court weighs the equities and finds that the monetary award of $597,000

21  plus the prejudgment interest and injunctive relief described below is sufficient to advance

22  considerations of compensation and deterrence.

23       Finally, the Court is unpersuaded by Plaintiffs' arguments that the conduct here constitutes

24  "exceptional" malicious, fraudulent, deliberate or willful infringement.  Plaintiffs' reliance on the

25  Court's findings that Defendants violated the Lanham Act and the DMCA does not aid the Court

26  in its analysis here—liability does not automatically trigger an award of attorneys' fees.

27       In consideration of the above, the Court finds that Plaintiffs have failed to show that this

28  Case No.: 5:18-cv-07182-EJD
    FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                27

1   case "stands out" from others and denies Plaintiffs' request for attorneys' fees.

2          Given that the Court has not awarded attorneys' fees, the Court finds it unnecessary to

3   address Plaintiffs' remaining arguments regarding whether Defendants' counsel should be held

4   jointly and severally liable for those fees.

5          **4.      Prejudgment Interest**

6          "An award of pre-judgment interest in a case under federal law is left to the sound

7   discretion of the trial court." *Twin City Sportserv., Inc. v. Charles O. Finley & Co.*, 676 F.2d

8   1291, 1310 (9th Cir. 1982). "Awards of pre-judgment interest are governed by considerations of

9   fairness and are awarded when it is necessary to make the wronged party whole." *United States v.*

10  *Cal. State Bd. of Equalization,* 650 F.2d 1127, 1132 (9th Cir. 1981), *aff'd mem.*, 456 U.S. 901

11  (1982) (citation omitted). Courts may, in their discretion, award prejudgment interest under the

12  DMCA if necessary "to effectuate the legislative purpose of making copyright holders whole and

13  removing incentives for copyright infringement." *Polar Bear Prods., Inc. v. Timex Corp.*, 384

14  F.3d 700, 716–18 (9th Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (Oct. 25,

15  2004), *opinion amended on denial of reh'g*, No. 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25,

16  2004). Although not specifically provided in the statute, Courts may also award prejudgment

17  interest under the Lanham Act under the federal common law, which "authorizes the award of such

18  interest in appropriate cases to victims of violations of federal law." *Cyclone USA, Inc. v. LL&C*

19  *Dealer Servs., LLC*, No. CV 03-992-AJW, 2010 WL 2132378, at *1 (CD. Cal. May 24, 2010)

20  (quoting *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989)).

21         Here, the Court exercises its discretion and awards prejudgment interest on the $597,000

22  award using the agreed-upon treasury-bill rate. *See* Stip. to Amount 1 (stipulating to Mr. Boyles's

23  interest calculations); *see also S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1083 (9th

24  Cir. 2010) ("The treasury-bill rate is the rate typically used in most cases for prejudgment interest

25  calculation."). The Court finds prejudgment interest appropriate under these circumstances to

26  make Plaintiffs whole and remove incentives for any future infringement.

27         The Court grants Plaintiffs leave to provide a declaration from Mr. Boyles on the final

28  Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
28

prejudgment interest calculations pursuant to the Parties' stipulated method and in accordance with this Order by **August 5, 2024**.

### B.     Injunctive Relief

Under the Lanham Act, a district court has the power to grant injunctions according to the rules of equity and to prevent the violation of a trademark holder's rights. 15 U.S.C. §§ 1116(a), 1125(a); *see also Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 939, 948 (9th Cir. 2002); *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir. 1997). The Lanham Act entitles a trademark owner to an injunction if the owner's rights are being violated. *Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1094 (N.D. Cal. 2008); *see also Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1180–81 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."). The DMCA also permits the Court to "grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation" of Section 1202(b). 17 U.S.C. §§ 502(a), 1203(b)(1).

Here, the Court had previously granted a preliminary injunction upon finding that Plaintiffs established a likelihood of success on the merits. First MSJ Order 32–34. The Ninth Circuit affirmed the Court's ruling. *Neo4j, Inc. v. PureThink, LLC*, No. 21-16029, 2022 WL 781037 (9th Cir. Mar. 14, 2022). Now, Plaintiffs have proven success on the merits, and Defendants consent to a permanent injunction. Def.'s FFCL 10. Therefore, the Court finds good cause to convert the preliminary injunctions entered in this action into a permanent injunction.

## III.     CONCLUSIONS AND ORDERS

The Court **AWARDS** $597,000 in actual damages, subject to prejudgment interest. All other requests for damages and attorneys' fees are **DENIED**.

Plaintiffs are **ORDERED** to provide the Court an amended proposed judgment and revised prejudgment interest calculations consistent with the Court's Findings of Fact and Conclusions of Law by **August 5, 2024**.

The Court **GRANTS** Plaintiffs' unopposed request for a permanent injunction.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
29

Accordingly, consistent with the prior preliminary injunctions, *see* First MSJ Order; Second MSJ Order, Defendants are **HEREBY ENJOINED** from the following:

(1)   Infringing U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j Mark").

(2)   Advertising, promoting, representing or referring to ONgDB as a free and open source drop-in replacement of Neo4j Enterprise Edition distributions with the same version number, and any similar statement that may lead consumers to believe that ONgDB is a Neo4j USA or Neo4j Sweden product, or is identical to a Neo4j USA or Neo4j Sweden product.

(3)   Advertising, promoting, representing, or referring to Neo4 Enterprise or Neo4j Enterprise Edition being released only under the AGPL.

(4)   Representing that Neo4j Sweden AB's addition of the Commons Clause to the license governing Neo4j Enterprise Edition violated the terms of AGPL or that removal of the Commons Clause is lawful, and similar statements.

(5)   Advertising, displaying or distributing products, literature or any other materials that use the Neo4j Mark to advertise or promote ONgDB in any way that suggests sponsorship or endorsement by Neo4j USA or Neo4j Sweden or that may lead consumers to believe that ONgDB is a Neo4j USA or Neo4j Sweden product, or is identical to a Neo4j USA or Neo4j Sweden product.

(6)   Affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being Neo4j products and from offering such goods in commerce.

(7)   Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in Paragraphs 1-6 above.

(8)   Making further use of or fork any source code first released under the Neo4j Sweden

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
30

United States District Court
Northern District of California

Software License, including Neo4j EE v3.4, Neo4j EE v3.5, or any subsequent versions, subversions or derivatives thereof.

(9) Making further use of or fork any source code first released under a commercial license, including Neo4j EE v3.5, Neo4j EE v4.x, Neo4j EE 5.x, or any subsequent versions, subversions or derivatives thereof.

(10) Offering for sale, advertising or promoting ONgDB, GraphStack GDB and GDB (and any derivative or similar software created and/or maintained by Defendants), or any other software containing Neo4j EE source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License.

(11) Stating, claiming, advertising, or representing that Neo4j Sweden AB's inclusion of the Commons Clause to the license governing Neo4j EE violated the terms of the GNU Affero General Public License, version 3 ("AGPLv3"), or make similar statements interpreting the terms of the AGPLv3.

(12) Stating, claiming, advertising, or representing that the Free Software Foundation ("FSF") or that any government agency determined and/or confirmed that (a) the inclusion of the Commons Clause to any license governing Neo4j EE violated the terms of AGPLv3; and/or (b) the Commons Clause can be removed from any software license governing Neo4j EE and/or ONgDB.

(13) Offering for sale or providing for any paid development, support, maintenance or hosting services for ONgDB, GraphStack GDB, GDB (and any derivative or similar software created and/or maintained by Defendants), or any other software containing Neo4j EE source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License. However, nothing herein prevents Defendants from offering paid consulting services for installations of Neo4j EE software, but only where the customer receiving such services has a commercial license and has fully paid the commercial license fees to Plaintiffs.

(14) Making any statement and/or representations to any third party, affirmatively or in

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
31

United States District Court
Northern District of California

response to an inquiry, that state or imply that they can provide access to or can obtain any software containing any Neo4j EE source code with a DMCA Violation, that is subject to the Neo4j Sweden Software License, or not otherwise permitted for use by this Order.

(15) Having any expressed or implied license to use and making any further use of any of Plaintiffs' source code, object code, machine code and software that is subject to a commercial license or paid commercial subscription, including but not limited to Neo4j EE v3.4, and all versions and subversions thereof; Neo4j EE v3.5, and all versions and subversions thereof; Neo4j EE v4.x, and all versions and subversions thereof; and Neo4j EE v5.x, and all versions and subversions thereof. Nothing herein, however, restricts Defendants from purchasing a commercial license or subscription to Neo4j EE software from Plaintiffs or their authorized resellers.

(16) Defendants may only make further use of the following publicly available Neo4j open source code, subject to the terms of their respective open source licenses: (i) Neo4j CE Source Code under the GNU General Public License, v3 ("GPL"); (ii) Neo4j EE v3.2.14 source code released under the AGPLv3; (iii) Neo4j EE v3.3.10 source code released under the AGPLv3; (iv) Neo4j EE v3.4.0.RC02 source code released under the AGPLv3. Nothing herein, however, shall be construed as a license or otherwise permit Defendants to use any source code, patches or source code commits for Neo4j EE v3.3 or Neo4j EE v3.4 that were first released under the Neo4j Sweden Software License. Further, nothing herein shall be construed as a license or otherwise permit Defendants to use or fork, any of Plaintiffs' source code that was first released as Neo4j EE v3.5 or otherwise under the Neo4j Sweden Software License, including but not limited to, all beta releases, release candidates, production releases, stable releases, and official releases, or any subsequent versions, subversions, patches or derivatives thereof.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
32

1    **IT IS SO ORDERED.**

2    Dated: July 22, 2024

3

4

5                                                    EDWARD J. DAVILA
                                                     United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                              33

United States District Court
Northern District of California

# EXHIBIT C

Judgment, Northern District of California, Case No. 5:18-cv-07182-EJD

Date: August 15, 2024

1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 NEO4J, INC., et al.,

Plaintiffs,
8

v.
9

10 PURETHINK, LLC, et al.,

Defendants.
11

Case No. 5:18-cv-07182-EJD

**JUDGMENT**

Re: Dkt. Nos. 118, 216, 248

12      In accordance with the Court's Orders at ECF Nos. 118, 216, and 248, the Court ENTERS

13 Judgment as follows:

14      1.    Judgment is entered in favor of Plaintiff Neo4j, Inc., on its First Cause of Action

15 for Trademark Infringement, 15 U.S.C. § 1114, against Defendants for their infringement of the

16 NEO4J Mark. ECF No. 118.

17      2.    Judgment is entered in favor of Plaintiff Neo4j, Inc., on its Second Cause of Action

18 for False Designation of Origin and False Advertising, 15 U.S.C. § 1125(a), against all

19 Defendants. ECF No. 118.

20      3.    Judgment is entered in favor of Plaintiff Neo4j, Inc., on its Third Cause of Action

21 for Unfair Competition, 15 U.S.C. § 1125(a), against all Defendants for their infringement of the

22 NEO4J Mark. ECF No. 118.

23      4.    Judgment is entered in favor of Plaintiff Neo4j, Inc., on its Fourth Cause of Action

24 for Unfair Competition, Cal. Bus. Prof. Code §§ 17200, et seq., against all Defendants. ECF No.

25 118.

26      5.    Judgment is entered in favor of Plaintiffs on their Eighth Cause of Action for

27 Unauthorized Distribution of Altered Copyright Management Information, 17 U.S.C. § 1202(b)(1)

28 and 17 U.S.C. § 1202(b)(3), against all Defendants. ECF No. 216.

*United States District Court*
*Northern District of California*

6.    Plaintiffs are HEREBY AWARDED $597,000 in actual damages plus $57,288 in prejudgment interest, less the stipulated $26,000 deduction, and a permanent injunction as described in ECF No. 248.  Defendants are jointly and severally liable for the payment of all such amounts.  Each Party shall bear its own attorneys' fees and costs.

The Clerk of Court shall close the file in this matter.

**IT IS SO ORDERED.**

Dated: August 15, 2024

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

2

# EXHIBIT D

Notice of Appeal, Northern District of California, Case No. 5:18-cv-07182-EJD

Date: September 8, 2024

Case 5:18-cv-07182-EJD   Document 255   Filed 09/08/24   Page 1 of 5

1  Adron W. Beene SB# 129040
   Adron G. Beene SB# 298088
2  Attorneys-at-Law
   7960 Soquel Drive, Ste B #296
3  Aptos, CA 95003
   Tel: (408) 392-9233
4  adron@adronlaw.com

5
   Attorneys for defendants:
6  PURETHINK LLC, a Delaware limited
   liability company, IGOV INC., a Virginia
7  corporation, and JOHN MARK SUHY

8
                UNITED STATES DISTRICT COURT
9               NORTHERN DISTRICT OF CALIFORNIA

10
   NEO4J, INC., et al.,              CASE NO. 5:18-CV-7182 EJD
11 Plaintiffs,
                                     **DEFENDANT JOHN MARK**
12 v.                                **SUHY'S NOTICE OF APPEAL**
                                     **(with Circuit Rule 3-2**
13 PURETHINK LLC, et al.,            **Representation Statement**
   Defendants.                       **attached)**
14

15

16         Defendant JOHN MARK SUHY appeals to the United States Court of

17 Appeals for the Ninth Circuit from the "Judgment Re: Dkt. Nos. 118, 216, 248" Dkt.

18 No. 251, filed on August 15, 2024, attached hereto as Exhibit A. This notice of

19 appeal is intended to encompass all rulings, decisions, findings, and orders that are

20 appealable and adverse to John Mark Suhy.

21 Dated: September 8, 2024

22                                    _____/s/ Adron G. Beene_____
                                      Adron W. Beene SB# 129040
23                                    Adron G. Beene SB# 298088
                                      Attorneys-at-Law
24                                    7960 Soquel Drive, Ste B #296
                                      Aptos, CA 95003
25                                    Tel: (408) 392-9233
                                      adron@adronlaw.com

   DEFENDANT JOHN MARK SUHY'S NOTICE OF APPEAL
   CASE NO. 5:18-cv-7182 EJD                                           1

## CIRCUIT RULE 3-2 REPRESENTATION STATEMENT

**Appellants:**

JOHN MARK SUHY, Defendant

**Represented By:**

**Trial Counsel**
**Adron W. Beene**
adron@adronlaw.com
**Adron G. Beene**
adronjr@adronlaw.com
Attorneys-at-Law
7960 Soquel Drive, Ste B #296
Aptos, CA 95003
408-392-9233

**For Appellate Purposes**
**John Mark Suhy**
jmsuhy@gmail.com
Pro se
8814 Danewood Drive
Alexandria, VA 22308
Tel: (703) 862-7780

**Appellees:**

NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish
corporation, Plaintiffs

**Represented By:**

**John V. Picone , III**
jpicone@spencerfane.com
**Jeffrey Michael Ratinoff**
jratinoff@spencerfane.com
SPENCER FANE LLP
225 West Santa Clara Street
Suite 1500
San Jose, California 95113
Telephone: 408.286.5100
Facsimile: 408.286.5722

Dated: September 8, 2024

_____/s/ Adron G. Beene_____
Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorneys-at-Law
7960 Soquel Drive, Ste B #296
Aptos, CA 95003
Tel: (408) 392-9233
adron@adronlaw.com

DEFENDANT JOHN MARK SUHY'S NOTICE OF APPEAL
CASE NO. 5:18-cv-7182 EJD

2

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>PURETHINK, LLC, et al.,<br><br>                    Defendants. | Case No. 5:18-cv-07182-EJD<br><br>**JUDGMENT**<br><br>Re: Dkt. Nos. 118, 216, 248 |

In accordance with the Court's Orders at ECF Nos. 118, 216, and 248, the Court ENTERS Judgment as follows:

1.      Judgment is entered in favor of Plaintiff Neo4j, Inc., on its First Cause of Action for Trademark Infringement, 15 U.S.C. § 1114, against Defendants for their infringement of the NEO4J Mark.  ECF No. 118.

2.      Judgment is entered in favor of Plaintiff Neo4j, Inc., on its Second Cause of Action for False Designation of Origin and False Advertising, 15 U.S.C. § 1125(a), against all Defendants.  ECF No. 118.

3.      Judgment is entered in favor of Plaintiff Neo4j, Inc., on its Third Cause of Action for Unfair Competition, 15 U.S.C. § 1125(a), against all Defendants for their infringement of the NEO4J Mark.  ECF No. 118.

4.      Judgment is entered in favor of Plaintiff Neo4j, Inc., on its Fourth Cause of Action for Unfair Competition, Cal. Bus. Prof. Code §§ 17200, et seq., against all Defendants.  ECF No. 118.

5.      Judgment is entered in favor of Plaintiffs on their Eighth Cause of Action for Unauthorized Distribution of Altered Copyright Management Information, 17 U.S.C. § 1202(b)(1) and 17 U.S.C. § 1202(b)(3), against all Defendants.  ECF No. 216.

1        6.     Plaintiffs are HEREBY AWARDED $597,000 in actual damages plus $57,288 in

2   prejudgment interest, less the stipulated $26,000 deduction, and a permanent injunction as

3   described in ECF No. 248. Defendants are jointly and severally liable for the payment of all such

4   amounts. Each Party shall bear its own attorneys' fees and costs.

5        The Clerk of Court shall close the file in this matter.

6        **IT IS SO ORDERED.**

7   Dated: August 15, 2024

8

9   EDWARD J. DAVILA
   United States District Judge

United States District Court
Northern District of California

2

# EXHIBIT E

Declaration of John Mark Suhy in Support of Motion to Stay Enforcement
of Judgment

Date: October 23, 2024

**IN THE CIRCUIT COURT OF FAIRFAX COUNTY, VIRGINIA**

**NEO4J, INC.**
Plaintiff,

v.

**JOHN MARK SUHY**
Defendant.

Case No.: CL-2024-0014686

## DECLARATION OF JOHN MARK SUHY

I, John Mark Suhy, declare under penalty of perjury under the laws of the United States of America and the Commonwealth of Virginia that the following is true and correct to the best of my knowledge:

1. I am the Defendant in the above-referenced case.

2. I am an open-source advocate and developer who created the competing free and open source forks of Neo4j software called ONgDB and DozerDB.

3. Following the Free Software Foundation's issuance of the cease-and-desist letter, Neo4j, Inc. complied by removing all infringing content, including tags, branches, files, and source code from their public repository that contained the Commons Clause within the AGPL license.

4. I am the primary breadwinner for my family, while my wife works part-time, and my salary is essential for covering our family's living expenses. The garnishment of my wages would significantly impact our ability to meet those obligations, and it is highly likely that I will be forced into bankruptcy if the garnishment proceeds. This would not only harm me, my family, and other creditors, including Neo4j, but also jeopardize my government security clearances, which are vital to my employment.

5. The Free Software Foundation (FSF) and the Free Software Conservancy have communicated their intent to file amicus briefs in my appeal before the 9th Circuit Court.

6. Attached as Exhibit A is a true and accurate copy of the cease-and-desist letter sent by the Free Software Foundation to Neo4j, Inc. on November 13, 2023. This letter was provided to me by the Free Software Foundation.

7. Attached as Exhibit B is a true and accurate copy of the Findings of Fact and Conclusions of Law from the United States District Court for the Northern District of California, Case No. 5:18-cv-07182-EJD, dated July 22, 2024.

8. Attached as Exhibit C is a true and accurate copy of the Judgment from the United States District Court for the Northern District of California, Case No. 5:18-cv-07182-EJD, dated August 15, 2024.

9. Attached as Exhibit D is a true and accurate copy of the Notice of Appeal filed in the United States District Court for the Northern District of California, Case No. 5:18-cv-07182-EJD, dated September 8, 2024.

10. Attached as Exhibit F is a true and correct copy of the AGPLv3 license as it appeared in the Neo4j official repository before Neo4j removed it following the Free Software Foundation's cease-and-desist letter, dated November 13, 2023.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 23rd day of October, 2024.


**/s/ John Mark Suhy**

John Mark Suhy
8814 Danewood Dr
Alexandria, VA 22308
(703) 862-7780
jmsuhy@gmail.com

# EXHIBIT F

AGPLv3 License from Neo4j's Official Repository
Retrieved prior to its removal following the Free Software Foundation's
cease-and-desist letter on November 13, 2023

📖 neo4j / **neo4j**

&lt;&gt; **Code**    ⊙ Issues 214    ⥮ Pull requests 2    ⊙ Actions    ▦ Projects    📖 Wiki    ⊙ Sec

ᵞ 3.4 ▾                                                                          ···

neo4j / enterprise / neo4j-enterprise / **LICENSE.txt**

🐾 **digitalstain** Updates enterprise LICENSE.txt and NOTICE.txt ...        ⊙ **History**

🗠 **3 contributors** 😎 🐾 🐾

| Raw | Blame |

693 lines (568 sloc)    35.1 KB

```
1    NOTICE
2    This package contains software licensed under different
3    licenses, please refer to the NOTICE.txt file for further
4    information and LICENSES.txt for full license texts.

6    Neo4j Enterprise object code can be licensed independently from
7    the source under separate commercial terms. Email inquiries can be
8    directed to: licensing@neo4j.com. More information is also
9    available at:https://neo4j.com/licensing/

11   The software ("Software") is developed and owned by Neo4j Sweden AB
12   (referred to in this notice as "Neo4j") and is subject to the terms
13   of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3, with the Commons Clause as follows:
14
15
16
17              GNU AFFERO GENERAL PUBLIC LICENSE
18                 Version 3, 19 November 2007
19
20   Copyright (C) 2007 Free Software Foundation, Inc. <http://fsf.org/>
21   Everyone is permitted to copy and distribute verbatim copies
22   of this license document, but changing it is not allowed.
23
                        Preamble
25
26     The GNU Affero General Public License is a free, copyleft license
27   for software and other kinds of works, specifically designed to ensure
```

```
28    cooperation with the community in the case of network server software.

29

30      The licenses for most software and other practical works are
31    designed to take away your freedom to share and change the works.  By
32    contrast, our General Public Licenses are intended to guarantee your
33    freedom to share and change all versions of a program--to make sure it
34    remains free software for all its users.

35

36      When we speak of free software, we are referring to freedom, not
37    price.  Our General Public Licenses are designed to make sure that you
38    have the freedom to distribute copies of free software (and charge for
39    them if you wish), that you receive source code or can get it if you
40    want it, that you can change the software or use pieces of it in new
41    free programs, and that you know you can do these things.

42

43      Developers that use our General Public Licenses protect your rights
44    with two steps: (1) assert copyright on the software, and (2) offer
45    you this License which gives you legal permission to copy, distribute
46    and/or modify the software.

47

48      A secondary benefit of defending all users' freedom is that
49    improvements made in alternate versions of the program, if they
50    receive widespread use, become available for other developers to
51    incorporate.  Many developers of free software are heartened and
52    encouraged by the resulting cooperation.  However, in the case of
53    software used on network servers, this result may fail to come about.
54    The GNU General Public License permits making a modified version and
55    letting the public access it on a server without ever releasing its
56    source code to the public.

57

58      The GNU Affero General Public License is designed specifically to
59    ensure that, in such cases, the modified source code becomes available
60    to the community.  It requires the operator of a network server to
61    provide the source code of the modified version running there to the
62    users of that server.  Therefore, public use of a modified version, on
63    a publicly accessible server, gives the public access to the source
64    code of the modified version.

65

66      An older license, called the Affero General Public License and
67    published by Affero, was designed to accomplish similar goals.  This is
68    a different license, not a version of the Affero GPL, but Affero has
69    released a new version of the Affero GPL which permits relicensing under
70    this license.

71

72      The precise terms and conditions for copying, distribution and
73    modification follow.

74

75                            TERMS AND CONDITIONS
```

```
76
77     0. Definitions.
78
79     "This License" refers to version 3 of the GNU Affero General Public
80   License.
81
82     "Copyright" also means copyright-like laws that apply to other kinds
83   of works, such as semiconductor masks.
84
85     "The Program" refers to any copyrightable work licensed under this
86   License.  Each licensee is addressed as "you".  "Licensees" and
87   "recipients" may be individuals or organizations.
88
89     To "modify" a work means to copy from or adapt all or part of the work
90   in a fashion requiring copyright permission, other than the making of an
91   exact copy.  The resulting work is called a "modified version" of the
92   earlier work or a work "based on" the earlier work.
93
94     A "covered work" means either the unmodified Program or a work based
95   on the Program.
96
97     To "propagate" a work means to do anything with it that, without
98   permission, would make you directly or secondarily liable for
99   infringement under applicable copyright law, except executing it on a
100  computer or modifying a private copy.  Propagation includes copying,
101  distribution (with or without modification), making available to the
102  public, and in some countries other activities as well.
103
104    To "convey" a work means any kind of propagation that enables other
105  parties to make or receive copies.  Mere interaction with a user through
106  a computer network, with no transfer of a copy, is not conveying.
107
108    An interactive user interface displays "Appropriate Legal Notices"
109  to the extent that it includes a convenient and prominently visible
110  feature that (1) displays an appropriate copyright notice, and (2)
111  tells the user that there is no warranty for the work (except to the
112  extent that warranties are provided), that licensees may convey the
113  work under this License, and how to view a copy of this License.  If
114  the interface presents a list of user commands or options, such as a
115  menu, a prominent item in the list meets this criterion.
116
117    1. Source Code.
118
119    The "source code" for a work means the preferred form of the work
120  for making modifications to it.  "Object code" means any non-source
121  form of a work.
122
123    A "Standard Interface" means an interface that either is an official
```

https://github.com/neo4j/neo4j/blob/3.4/enterprise/neo4j-enterprise/LICENSE.txt          **Page 2136**          3/15

124  standard defined by a recognized standards body, or, in the case of
125  interfaces specified for a particular programming language, one that
126  is widely used among developers working in that language.
127

128  The "System Libraries" of an executable work include anything, other
129  than the work as a whole, that (a) is included in the normal form of
130  packaging a Major Component, but which is not part of that Major
131  Component, and (b) serves only to enable use of the work with that
132  Major Component, or to implement a Standard Interface for which an
133  implementation is available to the public in source code form.  A
134  "Major Component", in this context, means a major essential component
135  (kernel, window system, and so on) of the specific operating system
136  (if any) on which the executable work runs, or a compiler used to
137  produce the work, or an object code interpreter used to run it.
138

139  The "Corresponding Source" for a work in object code form means all
140  the source code needed to generate, install, and (for an executable
141  work) run the object code and to modify the work, including scripts to
142  control those activities.  However, it does not include the work's
143  System Libraries, or general-purpose tools or generally available free
144  programs which are used unmodified in performing those activities but
145  which are not part of the work.  For example, Corresponding Source
146  includes interface definition files associated with source files for
147  the work, and the source code for shared libraries and dynamically
148  linked subprograms that the work is specifically designed to require,
149  such as by intimate data communication or control flow between those
150  subprograms and other parts of the work.
151

152  The Corresponding Source need not include anything that users
153  can regenerate automatically from other parts of the Corresponding
154  Source.
155

156  The Corresponding Source for a work in source code form is that
157  same work.
158

159  2. Basic Permissions.
160

161  All rights granted under this License are granted for the term of
162  copyright on the Program, and are irrevocable provided the stated
163  conditions are met.  This License explicitly affirms your unlimited
164  permission to run the unmodified Program.  The output from running a
165  covered work is covered by this License only if the output, given its
166  content, constitutes a covered work.  This License acknowledges your
167  rights of fair use or other equivalent, as provided by copyright law.
168

169  You may make, run and propagate covered works that you do not
170  convey, without conditions so long as your license otherwise remains
171  in force.  You may convey covered works to others for the sole purpose

172   of having them make modifications exclusively for you, or provide you
173   with facilities for running those works, provided that you comply with
174   the terms of this License in conveying all material for which you do
175   not control copyright.  Those thus making or running the covered works
176   for you must do so exclusively on your behalf, under your direction
177   and control, on terms that prohibit them from making any copies of
178   your copyrighted material outside their relationship with you.
179
180      Conveying under any other circumstances is permitted solely under
181   the conditions stated below.  Sublicensing is not allowed; section 10
182   makes it unnecessary.
183
184      3. Protecting Users' Legal Rights From Anti-Circumvention Law.
185
186      No covered work shall be deemed part of an effective technological
187   measure under any applicable law fulfilling obligations under article
188   11 of the WIPO copyright treaty adopted on 20 December 1996, or
189   similar laws prohibiting or restricting circumvention of such
190   measures.
191
192      When you convey a covered work, you waive any legal power to forbid
193   circumvention of technological measures to the extent such circumvention
194   is effected by exercising rights under this License with respect to
195   the covered work, and you disclaim any intention to limit operation or
196   modification of the work as a means of enforcing, against the work's
197   users, your or third parties' legal rights to forbid circumvention of
198   technological measures.
199
200      4. Conveying Verbatim Copies.
201
202      You may convey verbatim copies of the Program's source code as you
203   receive it, in any medium, provided that you conspicuously and
204   appropriately publish on each copy an appropriate copyright notice;
205   keep intact all notices stating that this License and any
206   non-permissive terms added in accord with section 7 apply to the code;
207   keep intact all notices of the absence of any warranty; and give all
208   recipients a copy of this License along with the Program.
209
210      You may charge any price or no price for each copy that you convey,
211   and you may offer support or warranty protection for a fee.
212
213      5. Conveying Modified Source Versions.
214
215      You may convey a work based on the Program, or the modifications to
216   produce it from the Program, in the form of source code under the
217   terms of section 4, provided that you also meet all of these conditions:
218
219      a) The work must carry prominent notices stating that you modified

it, and giving a relevant date.

b) The work must carry prominent notices stating that it is
released under this License and any conditions added under section
7.  This requirement modifies the requirement in section 4 to
"keep intact all notices".

c) You must license the entire work, as a whole, under this
License to anyone who comes into possession of a copy.  This
License will therefore apply, along with any applicable section 7
additional terms, to the whole of the work, and all its parts,
regardless of how they are packaged.  This License gives no
permission to license the work in any other way, but it does not
invalidate such permission if you have separately received it.

d) If the work has interactive user interfaces, each must display
Appropriate Legal Notices; however, if the Program has interactive
interfaces that do not display Appropriate Legal Notices, your
work need not make them do so.

A compilation of a covered work with other separate and independent
works, which are not by their nature extensions of the covered work,
and which are not combined with it such as to form a larger program,
in or on a volume of a storage or distribution medium, is called an
"aggregate" if the compilation and its resulting copyright are not
used to limit the access or legal rights of the compilation's users
beyond what the individual works permit.  Inclusion of a covered work
in an aggregate does not cause this License to apply to the other
parts of the aggregate.

  6. Conveying Non-Source Forms.

  You may convey a covered work in object code form under the terms
of sections 4 and 5, provided that you also convey the
machine-readable Corresponding Source under the terms of this License,
in one of these ways:

a) Convey the object code in, or embodied in, a physical product
(including a physical distribution medium), accompanied by the
Corresponding Source fixed on a durable physical medium
customarily used for software interchange.

b) Convey the object code in, or embodied in, a physical product
(including a physical distribution medium), accompanied by a
written offer, valid for at least three years and valid for as
long as you offer spare parts or customer support for that product
model, to give anyone who possesses the object code either (1) a
copy of the Corresponding Source for all the software in the

product that is covered by this License, on a durable physical
medium customarily used for software interchange, for a price no
more than your reasonable cost of physically performing this
conveying of source, or (2) access to copy the
Corresponding Source from a network server at no charge.

c) Convey individual copies of the object code with a copy of the
written offer to provide the Corresponding Source.  This
alternative is allowed only occasionally and noncommercially, and
only if you received the object code with such an offer, in accord
with subsection 6b.

d) Convey the object code by offering access from a designated
place (gratis or for a charge), and offer equivalent access to the
Corresponding Source in the same way through the same place at no
further charge.  You need not require recipients to copy the
Corresponding Source along with the object code.  If the place to
copy the object code is a network server, the Corresponding Source
may be on a different server (operated by you or a third party)
that supports equivalent copying facilities, provided you maintain
clear directions next to the object code saying where to find the
Corresponding Source.  Regardless of what server hosts the
Corresponding Source, you remain obligated to ensure that it is
available for as long as needed to satisfy these requirements.

e) Convey the object code using peer-to-peer transmission, provided
you inform other peers where the object code and Corresponding
Source of the work are being offered to the general public at no
charge under subsection 6d.

  A separable portion of the object code, whose source code is excluded
from the Corresponding Source as a System Library, need not be
included in conveying the object code work.

  A "User Product" is either (1) a "consumer product", which means any
tangible personal property which is normally used for personal, family,
or household purposes, or (2) anything designed or sold for incorporation
into a dwelling.  In determining whether a product is a consumer product,
doubtful cases shall be resolved in favor of coverage.  For a particular
product received by a particular user, "normally used" refers to a
typical or common use of that class of product, regardless of the status
of the particular user or of the way in which the particular user
actually uses, or expects or is expected to use, the product.  A product
is a consumer product regardless of whether the product has substantial
commercial, industrial or non-consumer uses, unless such uses represent
the only significant mode of use of the product.

  "Installation Information" for a User Product means any methods,

316  procedures, authorization keys, or other information required to install
317  and execute modified versions of a covered work in that User Product from
318  a modified version of its Corresponding Source.  The information must
319  suffice to ensure that the continued functioning of the modified object
320  code is in no case prevented or interfered with solely because
321  modification has been made.
322
323    If you convey an object code work under this section in, or with, or
324  specifically for use in, a User Product, and the conveying occurs as
325  part of a transaction in which the right of possession and use of the
326  User Product is transferred to the recipient in perpetuity or for a
327  fixed term (regardless of how the transaction is characterized), the
328  Corresponding Source conveyed under this section must be accompanied
329  by the Installation Information.  But this requirement does not apply
330  if neither you nor any third party retains the ability to install
331  modified object code on the User Product (for example, the work has
332  been installed in ROM).
333
334    The requirement to provide Installation Information does not include a
335  requirement to continue to provide support service, warranty, or updates
336  for a work that has been modified or installed by the recipient, or for
337  the User Product in which it has been modified or installed.  Access to a
338  network may be denied when the modification itself materially and
339  adversely affects the operation of the network or violates the rules and
340  protocols for communication across the network.
341
342    Corresponding Source conveyed, and Installation Information provided,
343  in accord with this section must be in a format that is publicly
344  documented (and with an implementation available to the public in
345  source code form), and must require no special password or key for
346  unpacking, reading or copying.
347
348    7. Additional Terms.
349
350    "Additional permissions" are terms that supplement the terms of this
351  License by making exceptions from one or more of its conditions.
352  Additional permissions that are applicable to the entire Program shall
353  be treated as though they were included in this License, to the extent
354  that they are valid under applicable law.  If additional permissions
355  apply only to part of the Program, that part may be used separately
356  under those permissions, but the entire Program remains governed by
357  this License without regard to the additional permissions.
358
359    When you convey a copy of a covered work, you may at your option
360  remove any additional permissions from that copy, or from any part of
361  it.  (Additional permissions may be written to require their own
362  removal in certain cases when you modify the work.)  You may place
363  additional permissions on material, added by you to a covered work,

364   for which you have or can give appropriate copyright permission.

365

366       Notwithstanding any other provision of this License, for material you
367   add to a covered work, you may (if authorized by the copyright holders of
368   that material) supplement the terms of this License with terms:

369

370           a) Disclaiming warranty or limiting liability differently from the
371           terms of sections 15 and 16 of this License; or

372

373           b) Requiring preservation of specified reasonable legal notices or
374           author attributions in that material or in the Appropriate Legal
375           Notices displayed by works containing it; or

376

377           c) Prohibiting misrepresentation of the origin of that material, or
378           requiring that modified versions of such material be marked in
379           reasonable ways as different from the original version; or

380

381           d) Limiting the use for publicity purposes of names of licensors or
382           authors of the material; or

383

384           e) Declining to grant rights under trademark law for use of some
385           trade names, trademarks, or service marks; or

386

387           f) Requiring indemnification of licensors and authors of that
388           material by anyone who conveys the material (or modified versions of
389           it) with contractual assumptions of liability to the recipient, for
390           any liability that these contractual assumptions directly impose on
391           those licensors and authors.

392

393       All other non-permissive additional terms are considered "further
394   restrictions" within the meaning of section 10.  If the Program as you
395   received it, or any part of it, contains a notice stating that it is
396   governed by this License along with a term that is a further restriction,
397   you may remove that term.  If a license document contains a further
398   restriction but permits relicensing or conveying under this License, you
399   may add to a covered work material governed by the terms of that license
400   document, provided that the further restriction does not survive such
401   relicensing or conveying.

402

403       If you add terms to a covered work in accord with this section, you
404   must place, in the relevant source files, a statement of the
405   additional terms that apply to those files, or a notice indicating
406   where to find the applicable terms.

407

408       Additional terms, permissive or non-permissive, may be stated in the
409   form of a separately written license, or stated as exceptions;
410   the above requirements apply either way.

411

8. Termination.

    You may not propagate or modify a covered work except as expressly
provided under this License.  Any attempt otherwise to propagate or
modify it is void, and will automatically terminate your rights under
this License (including any patent licenses granted under the third
paragraph of section 11).

    However, if you cease all violation of this License, then your
license from a particular copyright holder is reinstated (a)
provisionally, unless and until the copyright holder explicitly and
finally terminates your license, and (b) permanently, if the copyright
holder fails to notify you of the violation by some reasonable means
prior to 60 days after the cessation.

    Moreover, your license from a particular copyright holder is
reinstated permanently if the copyright holder notifies you of the
violation by some reasonable means, this is the first time you have
received notice of violation of this License (for any work) from that
copyright holder, and you cure the violation prior to 30 days after
your receipt of the notice.

    Termination of your rights under this section does not terminate the
licenses of parties who have received copies or rights from you under
this License.  If your rights have been terminated and not permanently
reinstated, you do not qualify to receive new licenses for the same
material under section 10.

    9. Acceptance Not Required for Having Copies.

    You are not required to accept this License in order to receive or
run a copy of the Program.  Ancillary propagation of a covered work
occurring solely as a consequence of using peer-to-peer transmission
to receive a copy likewise does not require acceptance.  However,
nothing other than this License grants you permission to propagate or
modify any covered work.  These actions infringe copyright if you do
not accept this License.  Therefore, by modifying or propagating a
covered work, you indicate your acceptance of this License to do so.

    10. Automatic Licensing of Downstream Recipients.

    Each time you convey a covered work, the recipient automatically
receives a license from the original licensors, to run, modify and
propagate that work, subject to this License.  You are not responsible
for enforcing compliance by third parties with this License.

    An "entity transaction" is a transaction transferring control of an
organization, or substantially all assets of one, or subdividing an

460 organization, or merging organizations.  If propagation of a covered
461 work results from an entity transaction, each party to that
462 transaction who receives a copy of the work also receives whatever
463 licenses to the work the party's predecessor in interest had or could
464 give under the previous paragraph, plus a right to possession of the
465 Corresponding Source of the work from the predecessor in interest, if
466 the predecessor has it or can get it with reasonable efforts.
467
468   You may not impose any further restrictions on the exercise of the
469 rights granted or affirmed under this License.  For example, you may
470 not impose a license fee, royalty, or other charge for exercise of
471 rights granted under this License, and you may not initiate litigation
472 (including a cross-claim or counterclaim in a lawsuit) alleging that
473 any patent claim is infringed by making, using, selling, offering for
474 sale, or importing the Program or any portion of it.
475
476   11. Patents.
477
478   A "contributor" is a copyright holder who authorizes use under this
479 License of the Program or a work on which the Program is based.  The
480 work thus licensed is called the contributor's "contributor version".
481
482   A contributor's "essential patent claims" are all patent claims
483 owned or controlled by the contributor, whether already acquired or
484 hereafter acquired, that would be infringed by some manner, permitted
485 by this License, of making, using, or selling its contributor version,
486 but do not include claims that would be infringed only as a
487 consequence of further modification of the contributor version.  For
488 purposes of this definition, "control" includes the right to grant
489 patent sublicenses in a manner consistent with the requirements of
490 this License.
491
492   Each contributor grants you a non-exclusive, worldwide, royalty-free
493 patent license under the contributor's essential patent claims, to
494 make, use, sell, offer for sale, import and otherwise run, modify and
495 propagate the contents of its contributor version.
496
497   In the following three paragraphs, a "patent license" is any express
498 agreement or commitment, however denominated, not to enforce a patent
499 (such as an express permission to practice a patent or covenant not to
500 sue for patent infringement).  To "grant" such a patent license to a
501 party means to make such an agreement or commitment not to enforce a
502 patent against the party.
503
504   If you convey a covered work, knowingly relying on a patent license,
505 and the Corresponding Source of the work is not available for anyone
506 to copy, free of charge and under the terms of this License, through a
507 publicly available network server or other readily accessible means,

508 then you must either (1) cause the Corresponding Source to be so
509 available, or (2) arrange to deprive yourself of the benefit of the
510 patent license for this particular work, or (3) arrange, in a manner
511 consistent with the requirements of this License, to extend the patent
512 license to downstream recipients.  "Knowingly relying" means you have
513 actual knowledge that, but for the patent license, your conveying the
514 covered work in a country, or your recipient's use of the covered work
515 in a country, would infringe one or more identifiable patents in that
516 country that you have reason to believe are valid.
517
518     If, pursuant to or in connection with a single transaction or
519 arrangement, you convey, or propagate by procuring conveyance of, a
520 covered work, and grant a patent license to some of the parties
521 receiving the covered work authorizing them to use, propagate, modify
522 or convey a specific copy of the covered work, then the patent license
523 you grant is automatically extended to all recipients of the covered
524 work and works based on it.
525
526     A patent license is "discriminatory" if it does not include within
527 the scope of its coverage, prohibits the exercise of, or is
528 conditioned on the non-exercise of one or more of the rights that are
529 specifically granted under this License.  You may not convey a covered
530 work if you are a party to an arrangement with a third party that is
531 in the business of distributing software, under which you make payment
532 to the third party based on the extent of your activity of conveying
533 the work, and under which the third party grants, to any of the
534 parties who would receive the covered work from you, a discriminatory
535 patent license (a) in connection with copies of the covered work
536 conveyed by you (or copies made from those copies), or (b) primarily
537 for and in connection with specific products or compilations that
538 contain the covered work, unless you entered into that arrangement,
539 or that patent license was granted, prior to 28 March 2007.
540
541     Nothing in this License shall be construed as excluding or limiting
542 any implied license or other defenses to infringement that may
543 otherwise be available to you under applicable patent law.
544
545     12. No Surrender of Others' Freedom.
546
547     If conditions are imposed on you (whether by court order, agreement or
548 otherwise) that contradict the conditions of this License, they do not
549 excuse you from the conditions of this License.  If you cannot convey a
550 covered work so as to satisfy simultaneously your obligations under this
551 License and any other pertinent obligations, then as a consequence you may
552 not convey it at all.  For example, if you agree to terms that obligate you
553 to collect a royalty for further conveying from those to whom you convey
554 the Program, the only way you could satisfy both those terms and this
555 License would be to refrain entirely from conveying the Program.

556
557    13. Remote Network Interaction; Use with the GNU General Public License.
558
559    Notwithstanding any other provision of this License, if you modify the
560  Program, your modified version must prominently offer all users
561  interacting with it remotely through a computer network (if your version
562  supports such interaction) an opportunity to receive the Corresponding
563  Source of your version by providing access to the Corresponding Source
564  from a network server at no charge, through some standard or customary
565  means of facilitating copying of software.  This Corresponding Source
566  shall include the Corresponding Source for any work covered by version 3
567  of the GNU General Public License that is incorporated pursuant to the
568  following paragraph.
569
570    Notwithstanding any other provision of this License, you have permission
571  to link or combine any covered work with a work licensed under version 3
572  of the GNU General Public License into a single combined work, and to
573  convey the resulting work.  The terms of this License will continue to
574  apply to the part which is the covered work, but the work with which it is
575  combined will remain governed by version 3 of the GNU General Public
576  License.
577
578    14. Revised Versions of this License.
579
580    The Free Software Foundation may publish revised and/or new versions of
581  the GNU Affero General Public License from time to time.  Such new
582  versions will be similar in spirit to the present version, but may differ
583  in detail to address new problems or concerns.
584
585    Each version is given a distinguishing version number.  If the
586  Program specifies that a certain numbered version of the GNU Affero
587  General Public License "or any later version" applies to it, you have
588  the option of following the terms and conditions either of that
589  numbered version or of any later version published by the Free
590  Software Foundation.  If the Program does not specify a version number
591  of the GNU Affero General Public License, you may choose any version
592  ever published by the Free Software Foundation.
593
594    If the Program specifies that a proxy can decide which future
595  versions of the GNU Affero General Public License can be used, that
596  proxy's public statement of acceptance of a version permanently
597  authorizes you to choose that version for the Program.
598
599    Later license versions may give you additional or different
600  permissions.  However, no additional obligations are imposed on any
601  author or copyright holder as a result of your choosing to follow a
602  later version.
603

15. Disclaimer of Warranty.

   THERE IS NO WARRANTY FOR THE PROGRAM, TO THE EXTENT PERMITTED BY
APPLICABLE LAW.  EXCEPT WHEN OTHERWISE STATED IN WRITING THE COPYRIGHT
HOLDERS AND/OR OTHER PARTIES PROVIDE THE PROGRAM "AS IS" WITHOUT WARRANTY
OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO,
THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR
PURPOSE.  THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE PROGRAM
IS WITH YOU.  SHOULD THE PROGRAM PROVE DEFECTIVE, YOU ASSUME THE COST OF
ALL NECESSARY SERVICING, REPAIR OR CORRECTION.

   16. Limitation of Liability.

   IN NO EVENT UNLESS REQUIRED BY APPLICABLE LAW OR AGREED TO IN WRITING
WILL ANY COPYRIGHT HOLDER, OR ANY OTHER PARTY WHO MODIFIES AND/OR CONVEYS
THE PROGRAM AS PERMITTED ABOVE, BE LIABLE TO YOU FOR DAMAGES, INCLUDING ANY
GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE
USE OR INABILITY TO USE THE PROGRAM (INCLUDING BUT NOT LIMITED TO LOSS OF
DATA OR DATA BEING RENDERED INACCURATE OR LOSSES SUSTAINED BY YOU OR THIRD
PARTIES OR A FAILURE OF THE PROGRAM TO OPERATE WITH ANY OTHER PROGRAMS),
EVEN IF SUCH HOLDER OR OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF
SUCH DAMAGES.

   17. Interpretation of Sections 15 and 16.

   If the disclaimer of warranty and limitation of liability provided
above cannot be given local legal effect according to their terms,
reviewing courts shall apply local law that most closely approximates
an absolute waiver of all civil liability in connection with the
Program, unless a warranty or assumption of liability accompanies a
copy of the Program in return for a fee.

                     END OF TERMS AND CONDITIONS

              How to Apply These Terms to Your New Programs

   If you develop a new program, and you want it to be of the greatest
possible use to the public, the best way to achieve this is to make it
free software which everyone can redistribute and change under these terms.

   To do so, attach the following notices to the program.  It is safest
to attach them to the start of each source file to most effectively
state the exclusion of warranty; and each file should have at least
the "copyright" line and a pointer to where the full notice is found.

    <one line to give the program's name and a brief idea of what it does.>
    Copyright (C) <year>  <name of author>

2/9/2021    Case 5:19-cv-06226-EJD   Document 109-14   Filed 02/16/21   Page 240 of 240

```
652    This program is free software: you can redistribute it and/or modify
653    it under the terms of the GNU Affero General Public License as
654    published by the Free Software Foundation, either version 3 of the
655    License, or (at your option) any later version.
656
657    This program is distributed in the hope that it will be useful,
658    but WITHOUT ANY WARRANTY; without even the implied warranty of
659    MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE.  See the
660    GNU Affero General Public License for more details.
661
662    You should have received a copy of the GNU Affero General Public License
663    along with this program.  If not, see <http://www.gnu.org/licenses/>.
664
665  Also add information on how to contact you by electronic and paper mail.
666
667    If your software can interact with users remotely through a computer
668  network, you should also make sure that it provides a way for users to
669  get its source.  For example, if your program is a web application, its
670  interface could display a "Source" link that leads users to an archive
671  of the code.  There are many ways you could offer source, and different
672  solutions will be better for different programs; see section 13 for the
673  specific requirements.
674
675    You should also get your employer (if you work as a programmer) or school,
676  if any, to sign a "copyright disclaimer" for the program, if necessary.
677  For more information on this, and how to apply and follow the GNU AGPL, see
678  <http://www.gnu.org/licenses/>.
679
680
681    "Commons Clause" License Condition
682
683  The Software is provided to you by the Licensor under the License, as
684  defined below, subject to the following condition. Without limiting
685  other conditions in the License, the grant of rights under the License
686  will not include, and the License does not grant to you, the right to
687  Sell the Software.  For purposes of the foregoing, "Sell" means
688  practicing any or all of the rights granted to you under the License
689  to provide to third parties, for a fee or other consideration,
690  a product or service that consists, entirely or substantially,
691  of the Software or the functionality of the Software. Any license
692  notice or attribution required by the License must also include
693  this Commons Cause License Condition notice.
```