IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation, | No. 24-5538 |
| Plaintiffs-ctr-defendants-Appellees, | District No. 5:18-cv-07182-EJD U.S. District Court for the Northern District of California |
| v. | |
| JOHN MARK SUHY, | **APPELLEES' OPPOSITION TO APPELLANT JOHN MARK SUHY'S EMERGENCY MOTION TO STAY ENFORCEMENT OF JUDGMENT PENDING APPEAL** |
| Defendant-ctr-claimant-Appellant, | |
| and | |
| PURETHINK LLC, a Delaware limited liability company, and IGOV, INC., a Virginia corporation, | |
| Defendants. | |

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................1

II.     PROCEDURAL BACKGROUND ..................................................................2

III.    RELEVANT FACTS RELATING TO SUHY'S FINANCIAL
        CONDITION ..................................................................................6

IV.     LEGAL STANDARD ..................................................................................8

V.      ARGUMENT..................................................................................10

        A.      The First *Dillion* Factor Goes Against Imposing a Stay Without
                a Supersedeas Bond..................................................................10

        B.      The Second *Dillion* Factor Weighs Against Waiving the Bond
                Requirement ..................................................................11

        C.      Suhy's Alleged Inability to Post a Bond or Satisfy the Judgment
                Weighs Heavily Against the Third *Dillon* Factor ..............................12

        D.      The Fourth *Dillion* Factor Weighs Against Waiving the Bond
                Requirement ..................................................................16

        E.      The Fifth Factor Does Not Support the Waiver of the Bond
                Requirement ..................................................................16

        F.      There is No Relevant Public Interest Affected by Requiring
                Suhy to Post a Bond as a Condition for Imposing a Stay of
                Execution..................................................................17

        G.      Suhy's Proposed Alternative Security is Inadequate ..........................19

VI.     CONCLUSION..................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AngioScore, Inc. v. TriReme Medical, Inc.*,
No. 12-CV-03393-YGR, 2015 WL 13387576 (N.D. Cal. Oct. 23,
2015) ............................................................................................................... 9, 11

*Clark v. Hidden Valley Lake Ass'n*,
No. 16-CV-02009-SI, 2018 WL 2412136 (N.D. Cal. May 29,
2018) ...................................................................................................... 14, 17, 18

*Dillon v. City of Chicago*,
866 F.2d 902 (7th Cir.1988) ........................................................................*passim*

*Erickson Prods. Inc. v. Kast*,
No. 13-CV-05472-DMR, 2022 WL 698148 (N.D. Cal. Feb. 10,
2022) .................................................................................................................15, 16

*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*,
636 F.2d 755 (D.C. Cir. 1980) .................................................................................10

*Geddes v. United Fin. Grp.*,
559 F.2d 557 (9th Cir. 1977) ..................................................................................16

*Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*,
512 F.3d 1112 (9th Cir. 2008) ................................................................................10

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
No. 11-cv-3838-ODW, 2013 WL 361109 (C.D. Cal. Jan. 30, 2013) ...............16

*Int'l Telemeter Corp. v. Hamlin Int'l Corp.*,
754 F.2d 1492 (9th Cir. 1985) ................................................................................20

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) ..................................................................................10

*Lowery v. Rhapsody Int'l, Inc.*,
No. 16-CV-01135-JSW, 2022 WL 267442 (N.D. Cal. Jan. 28,
2022) ...................................................................................................... 14, 17, 18

*Max Sound Corp. v. Google LLC*
No. 5:14-CV-04412-EJD, 2019 WL 480544, at *2....................................*passim*

ii

*Cotton ex rel. McClure v. City of Eureka, Cal.*,
   860 F. Supp. 2d 999 (N.D. Cal. 2012) ............................................... 13, 14

*N.L.R.B. v. Westphal*,
   859 F.2d 818 (9th Cir. 1988) ............................................................. 9, 19

*Neo4j, Inc. et al. v. PureThink LLC, et al.*,
   Ninth Circuit Case No. 21-16029 (2021) ............................................... 4

*Neo4j, Inc. v. PureThink*,
   LLC, No. 5:18-CV-07182-EJD, 2021 WL 2483778 (N.D. Cal.
   May 18, 2021), *aff'd*, No. 21-16029, 2022 WL 501120 (9th Cir.
   Feb. 18, 2022), *amended on denial of reh'g*, No. 21-16029, 2022
   WL 781037 (9th Cir. Mar. 14, 2022) ...................................................... 8

*Popular Grove Planting and Refining Co., Inc. v. Bache Halsey*
   *Stuart, Inc.*,
   600 F.2d 1189 (5th Cir. 1979) ........................................................... 9, 20

*Rachel v. Banana Republic, Inc.*,
   831 F.2d 1503 (9th Cir.1987) ............................................................... 9

*Richardson v. United States*,
   841 F.2d 993 (9th Cir. 1988) ............................................................... 19

*Sarver v. Hurt Locker LLC*,
   2012 WL 12892147 (C.D. Cal. Feb. 2, 2012) .................................... 10, 16

*United States v. Park Place Assoc.*,
   563 F.3d 907 (9th Cir. 2009) ............................................................... 19

*Walnut Creek Manor, LLC v. Mayhew Ctr.*,
   LLC, No. C 07-5664 CW, 2010 WL 653561 (N.D. Cal. Feb. 22,
   2010) ................................................................................................. 14

*Zoellner v. City of Arcata*,
   No. 3:18-CV-04471-JSC, 2024 WL 4700633 (N.D. Cal. Nov. 5,
   2024) ................................................................................................... 9

## **Statutes**

17 U.S.C. § 1202 .................................................................................... 3

California's Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200,
  *et seq.* ........................................................................................................3

17 U.S.C. § 1202(b) ........................................................................................3, 4

## **Other Authorities**

Ninth Circuit Rule 36-3 ..............................................................................19

Federal Rules of Civil Procedure Rule 62 .......................................*passim*

Federal Rules of Appellate Procedure Rule 8 .......................................8, 9

## I.    INTRODUCTION

The Emergency Motion filed by Defendant and Appellant John Mark Suhy ("Suhy") is the latest attempt to frustrate efforts by Plaintiffs and Appellees Neo4j Inc. ("Neo4j USA") and Neo4j Sweden AB ("Neo4j Sweden, collectively "Neo4j" or "Appellees") to recoup the lost licensing revenue caused by Suhy's violations of the Lanham Act and the DMCA.  During the pendency of the underlying litigation, Suhy sold his house for which the proceeds remain unaccounted for.  After the district court's findings that Suhy violated the Lanham Act were affirmed by this Court in March 2022, Suhy sold intellectual property assets valued over $1.3 million to his current employer, Greystones Consulting Group, LLC ("Greystones").  Suhy also transferred iGov's government subcontracts that he was servicing over to Greystones, which he continued service those contracts as an employee of Greystones.  Thus, Suhy's claims that he does not have the financial resources to post a bond and will go bankrupt from a 25% wage garnishment are not creditable.

Suhy's motion also amounts to an untenable third bite of the apple.  Suhy, a Virginia resident, previously filed a motion for a stay without posting a bond in the Virginia Circuit Court for Fairfax County, which was denied. Suhy then unsuccessfully sought a stay of execution with the district court. Suhy raises similar arguments here – none of which justify a stay of execution pending appeal without posting the required supersedeas bond.

1

Conversely, Suhy's unverifiable claims of financial hardship cut against the applicable five *Dillion* factors and amplify the need for him to post a supersedeas bond sufficient to secure Appellees from further loss. Accordingly, the Court should deny Suhy's motion and order him to post a supersedeas bond or alternate security in the amount of $843,043, which is equal to 1.25 times the amount of the Judgment, interest and costs, or an alternate security of similar value, to obtain a stay enforcement of the Judgment while his appeal is pending.

## II. PROCEDURAL BACKGROUND

Neo4j USA markets and sells its graph database platform under the federally registered "NEO4J" trademark ("Neo4j Mark"). Dkt Entry 14.3 at ¶ 2. Neo4j Sweden is a wholly owned subsidiary of Neo4j USA that owns all copyrights relating to the Appellees' graph database platform, including the source code. *Id.*, ¶ 4. Appellees historically offered a free and open-source version of their Neo4j software called Neo4j Community Edition ("Neo4j® CE"), subject to the GNU General Public License ("GPL"). Dkt Entry 14.3 at ¶ 24; Dkt Entry 14.10 at ¶¶ 5-6. For commercial users, Appellees offered a paid-for version of Neo4j called Neo4j Enterprise Edition ("Neo4j® EE"), which, compared to the free Neo4j® CE version, contains significant additional functionality. *Id.*

On November 28, 2018, Neo4j USA filed suit against Defendants Suhy and his two entities, iGov and PureThink LLC (collectively, "Defendants"), for

2

violations of the Lanham Act and California's Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200, *et seq.* ("UCL"). These claims were based on Defendants' infringement of Neo4j USA's federally registered "NEO4J" trademark for graph database software (the "Neo4j Mark") by promoting a re-branded version of Neo4j® EE, which Defendants called ONgDB, and false advertising in relation thereto.

Neo4j USA later amended its complaint to add Neo4j Sweden as a plaintiff and assert claims against Defendants for violations of Section 1202(b) of the DMCA based on Suhy's removal of the Commons Clause and other copyright management information identifying Neo4j Sweden as the copyright holder and licensor ("Neo4j CMI") from the Neo4j Sweden Software License and redistributing that improperly licensed software as ONgDB. *See* Dkt Entry 14.3 at ¶¶ 58-59, 76-78, 166-173; Dkt Entry 14.4 at 5:24-8:11.

In particular, Suhy copied the Neo4j® EE source code files and knowingly removed and/or altered and distributed the Neo4j CMI in violation of 17 U.S.C. § 1202(b)(1) and (3). Dkt Entry 14.3 at ¶¶ 77, 169; Dkt Entry 14.4 at 6:2-7:6. Suhy then publicly distribute these altered source code files as part of the ONgDB on iGov's website. *See* Dkt Entry 14.3 at ¶¶ 58-59, 76-78; Dkt Entry 14.4 at 6:2-7:6; Dkt Entry 14.10 at 6:5-12; Dkt Entry 14.11 at 2:3-4:6, 6:1-7:2.

On May 18, 2021, the district court granted Appellees' motion for partial summary judgment in favor of Neo4j USA wherein it found Defendants liable for

trademark infringement, false advertising and false designation of origin under the Lanham Act and for violating the UCL. Dkt Entry 14.3 ("First MSJ Order"). The district court also imposed a preliminary injunction against Defendants prohibiting further unlawful conduct. *Id*. Defendants immediately appealed the First MSJ Order. *See Neo4j, Inc. et al. v. PureThink LLC, et al*., Ninth Circuit Case No. 21-16029 (2021). The Court affirmed the district court's underlying rulings on liability in conjunction with the issuance of the preliminary injunction. Dkt Entry 14.3 and 14.4. This included affirming the rejection of Suhy's interpretation of the Neo4j Sweden Software License that allegedly allowed him to remove the Neo4j CMI as a "further restriction." *See id.; see also* Dkt Entry 14.4 at 22:22-25:19.

On October 25, 2023, the district court granted a second motion for partial summary judgment in favor of Appellees wherein it found Defendants liable for violating Section 1202(b) of the DMCA ("Second MSJ Order"). Dkt Entry 14.7. The trial court held a bench trial on November 14 and November 28, 2023. It also received pre-trial and post-trial stipulations of fact, including the amount of lost licensing fees caused by Defendants' violations of the Lanham Act and DMCA.

On July 22, 2024, the trial court issued its Findings of Fact and Conclusions of Law; and a final judgment on August 15, 2024, wherein it awarded Appellees $597,000 in actual damages plus $57,288 in prejudgment interest, less a stipulated

$26,000 deduction, and issued a permanent injunction. Dkt Entry 14.12. The district court clerk then awarded Appellees $46,146.02 in costs, which Suhy did not contest.

On September 5, 2024, Appellees domesticated the judgment in Virginia where Defendants reside and began collection efforts. Three days later, Suhy appealed the Judgment to the United States Court of Appeals for the Ninth Circuit.

On October 15, 2024, Appellees served a notice of garnishment on Suhy's current employer, Greystones. *See* Dkt Entry 22.1. A review date is set for January 10, 2025. *Id.* Appellees also served Suhy with debtor interrogatories to determine location, type and value of all monies and assets owned by Suhy. *See* Declaration of Jeffrey M. Ratinoff in Support of Appellees' Opposition to Suhy's Motion to Stay ("Ratinoff Decl."), Ex. 1. He is required to appear in court and provide ***all*** of his financial records to Appellees on January 17, 2025. *See id.*

On October 23, 2024, Suhy filed a motion to stay enforcement of the Judgment with the Circuit Court of Fairfax County in Virginia. Ratinoff Decl., Ex. 2. That court denied Suhy's motion on November 8, 2024. *Id.*, Ex. 3.

Based on the same claims of financial hardship, Suhy filed a motion to stay execution with the district court on December 2, 2024, which Appellees opposed. Ratinoff Decl., Exs. 4-7. The trial court denied that motion on December 10, 2024. *Id.,* Ex. 8. In particular, the trial court found that

> although financial hardship is an equitable factor that courts may
> weigh in favor of issuing a stay without a bond for injunctive

5

judgments, the opposite is true for monetary judgments. Under *Dillon* and its progeny, financial hardship weighs against issuing a stay without a bond, as it signals a greater risk that the judgment will become uncollectable for the prevailing party.

* * *

Suhy's apparent financial hardship is unfortunate, but the Court cannot put Neo4j's right to obtain its Judgment "at risk solely on the basis of [Suhy's] ability to pay. Indeed, it may be an abuse of discretion to do so."

Ratinoff Decl*.,* Ex. 8 at 3:4-17 (internal citations omitted).

Suhy has not posted a supersedeas bond with the district court or this Court, and now seeks to have this Court stay enforcement of the Judgment pending appeal without posting such a bond or other sufficient security for similar unsupported reasons argued to the district court.

## III.    RELEVANT FACTS ABOUT SUHY'S FINANCIAL CONDITION

At the time Appellees filed suit against Defendants, Suhy owned real property located at 4202 Adrienne Drive, Alexandria, Viriginia.  Ratinoff Decl., Ex. 9. On January 28, 2020, Suhy purchased real property located at 8814 Danewood Drive, Alexandria, Virginia for $644,000. *Id*., Ex. 10. That property was valued at $798,150 by the tax assessor in 2024.  *Id*., Ex. 11.  Suhy then sold the Adrienne Drive property for $600,000 on May 28, 2020.  *Id*., Ex. 9.  Despite Appellees raising this issue in opposition to Suhy's motion filed with the district court (*see id.*, Ex. 6 at 3:18-24), Suhy has yet to explain what happened to the proceeds from that sale or why the Danewood Drive property cannot be used to secure the Judgment.

During the pendency of this litigation, Suhy generated $1,316,000 in revenue supporting the IRS's use of ONgDB.  Ratinoff Decl., Ex. 15 at ¶ 68. ASR Analytics also paid Suhy and iGov a total of $246,082.55 for supporting ONgDB.  *Id.* at ¶ 71. Appellees raised this same issue in opposing Suhy's prior motion. *See id.*, Ex. 6 at 3:25-28. Yet, Suhy still has not accounted for the disposition of any of this revenue.

After the trial court found Suhy liable for violating the Lanham Act and this Court affirmed those findings in March 2022, Suhy transferred and otherwise obfuscated money and assets that could satisfy the Judgment.  Between May and July 2022, Suhy shut down iGov and hollowed out that entity.  In May 2022, Suhy went to work for Greystones, which took over iGov's contracts with the IRS and ASR Analytics, and all the work Suhy performed under those contracts thereafter was for the benefit of Greystones.  Ratinoff Decl., Ex. 12 at 343:12-16, 345:11-346:1, 347:17-349:25 (employed by Greystones in May 2022); *id.,* Ex. 13 at 66:8-68:25, 167:11-168:21 (transfer of IRS contracts); *id.,* Ex. 13 at 160:5-162:18, 163:23-167:10, 180:12-183:5, 185:2-20, 186:5-10, 206:24-207:12 (transfer of ASR contracts); *id.,* Ex. 14 at 115:4-116:16, 173:24-174:21 (transfer of ASR contracts); *id.*, Ex. 12 at 284:24-286:10, 292:14-293:12 (transfer of ASR contracts).  Suhy also expressly promised Greystones that he "only would be dedicated to them" and would no longer pursue work on behalf of iGov.  Ratinoff Decl., Ex. 12 at 349:21-25.

Between May and July 2022, Suhy sold off intellectual property owned by him to Greystones for $1.3 million. Ratinoff Decl., Ex. 14 at 170:8-11, 171:22-172:22. This sale is fraudulent conveyance because it occurred during the litigation, after this Court affirmed the trial court's findings that Suhy violated the Lanham Act. *See Neo4j, Inc. v. PureThink*, LLC, No. 5:18-CV-07182-EJD, 2021 WL 2483778, at *1 (N.D. Cal. May 18, 2021), *aff'd*, No. 21-16029, 2022 WL 501120 (9th Cir. Feb. 18, 2022), *amended on denial of reh'g*, No. 21-16029, 2022 WL 781037 (9th Cir. Mar. 14, 2022); Dkt Entry 14.3 and Dkt Entry 14.4. Suhy has yet to explain what happened to the proceeds from this sale or why he cannot use them to post a bond.

## IV.    LEGAL STANDARD

Rule 8 of the Federal Rules of Appellate Procedure ("Rule 8") requires that Suhy "move first in the district court" for stay of the judgment before seeking relief from this Court. Fed. R. App. P. 8(a)(1)(A). Since Suhy unsuccessfully did so, as a condition for relief with this Court, he must either "show that moving first in the district court would be impracticable" or "state that, a motion having been made, the district court denied the motion or failed to afford the relief requested and state any reasons given by the district court for its action." Fed. R. App. P. 8(a)(2)(A).

Normally, an appellant seeking a stay of the execution of a monetary judgment must post a sufficient supersedeas bond or other security. *See* Fed. R. Civ. P. 62(b). "The purpose of a supersedeas bond is to secure the appellees from a loss resulting

from the stay of execution and a full supersedeas bond should therefore be required."
*Rachel v. Banana Republic, Inc*., 831 F.2d 1503, 1505 n. 1 (9th Cir.1987); *accord*
*N.L.R.B. v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988). Consequently, Suhy carries
the burden to "objectively demonstrate" that relief from the bond requirement is
justified. *Popular Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart,*
*Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979); *accord Zoellner v. City of Arcata*, No.
3:18-CV-04471-JSC, 2024 WL 4700633, at *3 (N.D. Cal. Nov. 5, 2024).

When examining whether to stay the enforcement of a monetary judgment
without the required bond, Appellees agree with Suhy that courts in the Ninth Circuit
use the factors laid out in *Dillon v. City of Chicago*, 866 F.2d 902, 904–905 (7th
Cir.1988). *See, e.g., Max Sound Corp. v. Google LLC*, No. 5:14-CV-04412-EJD,
2019 WL 480544, at *2 (N.D. Cal. Feb. 7, 2019) (citing *Dillon*); *accord AngioScore,*
*Inc. v. TriReme Medical, Inc*., No. 12-CV-03393-YGR, 2015 WL 13387576, at *2
(N.D. Cal. Oct. 23, 2015) (citing *Dillion*). Under the *Dillon*, courts consider:

> (1) the complexity of the collection process; (2) the amount of time
> required to obtain a judgment after it is affirmed on appeal; (3) the
> degree of confidence that the district court has in the availability of
> funds to pay the judgment; (4) whether the defendant's ability to
> pay the judgment is so plain that the cost of a bond would be a waste
> of money; and (5) whether the defendant is in such a precarious
> financial situation that the requirement to post a bond would place
> other creditors of the defendant in an insecure position.

*Dillon,* 866 F.2d at 904–905.

However, Suhy's attempt to argue the balancing of hardships and the public

9

interest is misplaced. *See* Dkt. Entry 22.2 at p. 5 of 13. These are elements used in examining whether to stay the enforcement of an injunctive judgment without a bond, which are inapplicable here.[1] *See* Fed. R. Civ. P. 62(d); *see also Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980) (examining Rule 62(d) requirements for stay of injunction upon appeal, including equitable considerations); *accord Sarver v. Hurt Locker LLC*, 2012 WL 12892147, at \*2 (C.D. Cal. Feb. 2, 2012) ("courts in this circuit have held that the preliminary injunction test specifically applies to a stay of injunctive relief … and is irrelevant in a case involving a monetary judgment.").

## V.    ARGUMENT

### A.    The First *Dillion* Factor Goes Against Imposing a Stay Without Requiring the Posting of a Supersedeas Bond

With respect to the first *Dillion* factor, Suhy argues without any evidence that the collection process is "straight forward."  Dkt Entry 22.2 at p. 5 of 13. This conclusory statement is belied by the number of fraudulent conveyances that Appellants will need to unwind.  As detailed above, Suhy transferred assets generated from the sale of intellectual property valued at $1.3 million during the pendency of the litigation.  As a result, Appellees will be required to engage in

---

[1] Suhy's reliance on *Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) and *Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112 (9th Cir. 2008) is misplaced.  These cases were decided using the standards governing injunctive relief, and not the waving of a bond with a stay of execution of a monetary judgment.

additional legal proceedings to undue that transaction.  Likewise, Appellees will need to engage in a lengthy and complex process of tracing the proceeds of Suhy's sale of the Adrienne Drive property and undoing any subsequent fraudulent transfer or concealment of those proceeds.

More importantly, Suhy's alleged poor financial condition "suggest the collection process may be arduous and the availability of sufficient funds in future years… is questionable." *AngioScore, Inc.*, 2015 WL 13387576, at *2 (defendants' claims of financial hardship go against the first and second *Dillon* factors in considering waiving the bond requirement).  Consequently, the first *Dillon* factor weigh against waiving the supersedeas bond requirement.

### B.     The Second *Dillion* Factor Weighs Against Waiving the Bond Requirement

Suhy asserts that the time required to obtain judgment after affirmance on appeal is "reasonable," and thus weighs in favor of granting a stay without the need to post a bond. Dkt Entry 22.2 at 6 of 13. Suhy offers no evidence to support this assertion.  Instead, Suhy cites the unsubstantiated financial harm he would suffer without the imposition of a stay.  Suhy's argument misses the mark.  The Administrative Office of the U.S. Courts' 2023 statistics on the termination of civil appeals indicates that the median time for disposition on the merits is over a year. Ratinoff Decl., Ex. 16.  This lengthy amount of time provides Suhy with ample opportunity to obfuscate his assets without consequences.

11

Suhy also claims he is prepared to provide additional financial records under seal to substantiate the claims of financial hardship. Dkt Entry 22.2 at 6 of 13. This is simply a delay tactic. The rules of this Court permitted Suhy to do so in conjunction the filing of his motion, and he does not explain why he failed to use this procedural protection in the first instance. Moreover, Appellees previously argued in opposition to Suhy's motion filed with the district court that his claims of "financial hardship" were unsubstantiated and contrary to the evidence produced by Appellees. *See, e.g.,* Ratinoff Decl., Ex. 6 at 7:14-8:9. Thus, Suhy knew or should have known the need to detail all his assets, liabilities, income and monthly expenses when he filed the present motion to allow this Court and Appellees to evaluate his claims of financial hardship. Accordingly, the second factor weighs against waiving the requirement for Suhy to post a supersedeas bond.

### C.     Suhy's Alleged Inability to Post a Bond or Satisfy the Judgment Weighs Heavily Against the Third *Dillon* Factor

As for the third factor, Suhy's "ability to pay the judgment is but one of many factors the Court is to consider in connection with a request to waive a supersedeas bond." *See Cotton ex rel. McClure v. City of Eureka, Cal.,* 860 F. Supp. 2d 999, 1029 (N.D. Cal. 2012). In this regard, Suhy asserts that his "financial situation is precarious." Dkt Entry 22.2 at pp. 6-7 of 13. He then proceeds to undermine this claim by arguing that his home, bank accounts and personal property are immune from the execution of the judgment under Virgina law. *Id.* However, Suhy does not

specifically identify these assets, their value and total money in those accounts and their availability as collateral to obtain a bond or use as alternate security.

Suhy's averments in his declaration that a 25% wage garnishment "has significantly impact [his] ability to meet my family's basic living expenses."  Dkt Entry 22.4 at ¶ 1.  This rings hollow because Suhy does not provide evidence of (a) the total amount of those living expenses; (b) what his monthly wages are, what cash is on hand; (c) what assets are owned and their value; and (d) other similar financial information that would allow an objective determination of whether a 25% wage garnishment justifies his alleged need to seek bankruptcy protection.  Suhy's failure to provide this objective evidence alone warrants the denial of his motion. *Hines*, 2010 WL 3565498, at *1 (denying motion to stay judgment pending an appeal without posting a bond because defendant failed to offer evidence concerning her financial condition that would establish the claimed undue hardship); *Walnut Creek Manor, LLC v. Mayhew Ctr.*, LLC, No. C 07-5664 CW, 2010 WL 653561, at *7 (N.D. Cal. Feb. 22, 2010) (same); *see also Cotton*, 860 F. Supp. 2d at 1029 (denying motion for stay and waiver of supersedeas bond where defendants only addressed one of the five *Dillon* factors in arguing financial condition).

Suhy also previously disclosed to the district court that his spouse works part time, yet failed to disclose this information to this Court.  Ratinoff Decl., Ex. 5 at 4 ("I am the primary breadwinner for my family, while my wife works part-time").

13

The amount of income she earns is highly relevant to evaluating the veracity of his claims of financial hardship imposed by a 25% garnishment of *his* wages.

More importantly, Suhy's claim of financial hardship strongly weighs against the third factor. *See Max Sound Corp*, No. 5:14-CV-04412-EJD, 2019 WL 480544, at *2 (finding that party's "financial insecurity weighs in favor of requiring a bond or security" and denying motion to stay judgment without a bond); *see also Lowery v. Rhapsody Int'l, Inc.*, No. 16-CV-01135-JSW, 2022 WL 267442, at *2 (N.D. Cal. Jan. 28, 2022) (defendant's claim of undue financial hardship "directly undermines the Court's confidence in Defendant's ultimate ability to pay the judgment"); *Clark v. Hidden Valley Lake Ass'n*, No. 16-CV-02009-SI, 2018 WL 2412136, at *3 (N.D. Cal. May 29, 2018) ("the Court's lack of confidence that defendant has funds available to pay the judgment weighs against waiver"). The denial of a motion based on similar facts in *Erickson Prods. Inc. v. Kast*, No. 13-CV-05472-DMR, 2022 WL 698148, at *4 (N.D. Cal. Feb. 10, 2022) is particularly instructive here.

In *Erickson,* a *pro se* defendant, Kast, filed a motion to stay the proceedings and enforcement of a $450,000 judgment for copyright infringement without posting a bond pursuant to Fed. R. Civ. P. 62(b). *Erickson,* 2022 WL 698148, at *1, *3. Kast argued that he satisfied the *Dillon* factors on the grounds, *inter alia*, that Kast's only income was from social security income, the lawsuit "placed a stigma on his professional licenses preventing him from earning a living," and was unable to

obtain a bond "because of his precarious financial condition and because [he] cannot earn a living"; and Kast was a severe financial burden to his fiancé to whom he owed more than $1 million. The court found that

> Kast's arguments do not support waiver of the bond requirement; to the contrary, his assertions that his financial condition is "precarious" and that he is unable to "earn a living" weigh in favor of requiring a bond, since "[t]he purpose of the supersedeas bond is to protect the prevailing party from the risk of a later uncollectible judgment."

*Erickson*, 2022 WL 698148, at *4 (N.D. Cal. Feb. 10, 2022) (quoting *Max Sound Corp.*, No. 5:14-CV-04412-EJD, 2019 WL 480544, at *2).

Just as the defendant in *Erickson,* Suhy's claims of financial hardship **reinforce** the need to post a supersedeas bond to protect Appellees' interest in the collection of the judgment. *See, e.g., Inhale, Inc. v. Starbuzz Tobacco, Inc.*, No. 11-cv-3838-ODW, 2013 WL 361109, at *2 (C.D. Cal. Jan. 30, 2013) ("The fact that Inhale 'does not have sufficient liquid assets' to cover the award of attorneys' fees and costs is precisely why it must post a supersedeas bond."). This Court should not put Appellees' right to enforce the Judgment "at risk solely on the basis of [Suhy's] ability to pay." *Max Sound Corp,* 2019 WL 480544, at *2 (internal quotations and citations omitted); *accord Sarver*, 2012 WL 12892147, at *3; *see also Geddes v. United Fin. Grp.*, 559 F.2d 557, 561 (9th Cir. 1977) (trial court abused its discretion in staying an execution of judgment based on the ability to pay).

Finally, an unsecured stay would prevent Appellees from receiving Suhy's financial information and discovering all monies and assets in Suhy's possession through the debtor interrogatory process.  Suhy has now had two opportunities to provide evidence of his assets and liabilities in seeking a stay of enforcement, but chose to withhold this evidence that may support his claims of financial hardship. This indicates that Suhy is using an unsubstantiated threat of bankruptcy to obtain an unsecured stay to buy more time to hide his assets from Appellees.

### D.   The Fourth *Dillon* Factor Weighs Against Waiving the Bond Requirement

Suhy also cannot satisfy the fourth *Dillon* factor for reasons similar to the third factor.  Suhy's alleged "'financial frailty' indicates that a bond is necessary to protect [Appellees'] interests, and that it will not be a waste of money." *Clark*, 2018 WL 2412136, at *3 (denying defendant's motion to stay enforcement of the judgment without posting a supersedeas bond).  Moreover, Suhy's claim of undue financial hardship "means that [his] ability to pay the final judgment is not so plain as to make a bond a waste of money." *Lowery*, 2022 WL 267442, at *2.

### E.   The Fifth Factor Does Not Support the Waiver of the Supersedeas Bond Requirement

Suhy fails to adequately substantiate the risks to other creditors.  He does not identify any specific creditors (other than Appellees) that the requirement to post a bond would place in an insecure position.  Rather, Suhy claims—without any

16

corroborating evidence—that he has credit card liability of "approximately $10,000" and a business credit card for an unnamed business with a balance of approximately $1,600. *See* Dkt Entry 22.4 at ¶ 4.

His failure to produce credit card statements makes it impossible to determine whether these are simply charges that are paid off every month or a long-term debt that he would be unable to pay off with a 25% garnishment of his wages. Suhy even admits that they are "modest" thereby undermining any notion that there are risks to these other unidentified creditors. *See id.*

Likewise, Suhy does not substantiate claims that "the existence of personally guaranteed business debts adds another layer of complexity and potential harm to third parties if bankruptcy is forced." Dkt. Entry 22.2 at pp. 8-9 of 13. As such, the fifth *Dillon* factor does not support Suhy's request for a stay without providing adequate security. *Clark*, 2018 WL 2412136, at *3 (finding that the fifth *Dillon* factor did not support a waiver because defendant failed to identify any other creditors or explain how requiring a bond would affect those creditors).

### F. There is No Relevant Public Interest Affected by Requiring Suhy to Post a Bond as a Condition for Imposing a Stay of Execution

Suhy lastly argues that there is a strong public interest in granting the stay without requiring a bond because this case allegedly will have implications for "the integrity of open-source licensing" and that the FSF and SFC have a vested policy interest in the outcome of Suhy's appeal on the interpretation of the software license

17

at issue. Dkt Entry 22.2 at 9 of 13; *see also* Dkt Entry 17.1 at pp. 41-42, 55-56, 61-62. Such considerations are irrelevant to determining whether to waive the supersedeas bond requirement with respect to a monetary judgment under *Dillion*.

Even if public policy considerations were relevant, the concerns raised by Suhy are moot because this Court already upheld the district court' interpretation of the software license at issue. *See* Dkt Entry 14.4 at 22:22-25:19; Dkt Entry 14.3; Dkt Entry 14.4. Suhy cannot reargue this issue because the law of case doctrine precludes him from appealing the same ruling a second time on. *See Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988) ("Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case."); *accord United States v. Park Place Assoc.*, 563 F.3d 907, 925 (9th Cir. 2009).

To be sure, this Court expressly affirmed that "Defendants' representation that ONgDB is a 'free and open-source' version of Neo4j® EE was literally false, because Section 7 of the Sweden Software License only permits a downstream licensee to remove 'further restrictions' added by an upstream licensee to the original work." Dkt Entry 14.3 at 3. This Court removed all doubt as to the conclusiveness of its decision by indicating that the opinion was precedential for the purpose of the doctrine of law of the case "as provided by Ninth Circuit Rule 36-3." *See id.* at 1.

Finally, there is a strong public interest embodied in Rule 62(b) ensuring that

18

parties who obtain monetary judgments and their ability to enforce them are not jeopardized by a defendants' appeal thereof. *Westphal*, 859 F.2d at 819.

### G.    Suhy's Proposed Alternative Security is Inadequate

Suhy offers to make "structured monthly payments of $200 during the pendency of appeal" as an alternate form of security. Dkt Entry 22.2 at p. 2 of 13 and Dkt Entry 22.4 at ¶ 6. While a court may stay execution of a judgment with an alternate form of security, that security must be a reasonable alternative providing financial security to Appellees. *See Poplar Grove Planting and Refining Co. v. Bache Halsey Stuart, Inc*., 600 F.2d 1189, 1191 (5th Cir.1979) (substitute security permissible where debtors present financially secure plan); accord *Int'l Telemeter Corp. v. Hamlin Int'l Corp*., 754 F.2d 1492, 1495 (9th Cir. 1985) (citing same).

Suhy's proposal falls well short of this requirement, and is not a serious one since Suhy refuses to provide evidence of his financial condition. Had Suhy been more forthcoming in disclosing his actual income, expenses, assets and liabilities, Appellees would be open to discussing potential alternative security arrangements, such as liens on his personal and real property and/or an adjustment in the amount of the wage garnishment. However, Suhy appears more interested in frustrating Appellees' ability to ascertain his true financial condition, including evading the debtor interrogatory scheduled for January 17, 2025.

## VI. CONCLUSION

For the foregoing reasons, Appellees respectively request that the Court deny Suhy's request for a stay of execution of the Judgment pending appeal and waiving the bond requirement.  Appellees also respectfully request that the Court condition a stay on Suhy posting a supersedeas bond in the amount of $843,043.00, which is roughly equal to 1.25 times the amount of the Judgment, interest and costs.

Dated:  January 2, 2025                    Respectfully submitted,


*/s/ Jeffrey M. Ratinoff*
Jeremy A. Moseley (MT Bar #44830177)
**SPENCER FANE LLP**
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Telephone:  303.839.3800
Facsimile:   303.839.3838
Email:   jmoseley@spencerfane.com

John V. Picone (CA Bar #187226)
Jeffrey M. Ratinoff (CA Bar #197241)
**SPENCER FANE LLP**
225 West Santa Clara Street, Suite 1500
San Jose, CA 95113
Telephone:  408.286.5100
Facsimile:   408.286.5722
Email:        jpicone@spencerfane.com
                 jratinoff@spencerfane.com

Attorneys for Plaintiffs-Appellees NEO4J,
INC., and NEO4J SWEDEN AB

20

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I HEREBY CERTIFY that on January 2, 2025, I electronically filed the

foregoing **APPELLEES' OPPOSITION TO APPELLANT JOHN MARK**

**SUHY'S EMERGENCY MOTION TO STAY ENFORCEMENT OF**

**JUDGMENT PENDING APPEAL** with the Clerk of Court using the CM/ECF

system which will send notification of such filing to the following email addresses:

**John Mark Suhy**
jmsuhy@gmail.com

**Rick Sanders**
rick@sfconservancy.org


*/s/  Jeffrey M. Ratinoff*
Jeffrey M. Ratinoff

1