IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CASE NO.: 24-5538
**NEO4J, INC., et al.,**
Plaintiffs-Appellees,

v.

**JOHN MARK SUHY,**
Defendant-Appellant.

**OPPOSITION TO APPELLEES' MOTION TO SEAL PORTIONS OF VOLUMES 10 AND 11**

Defendant-Appellant John Mark Suhy ("Appellant") respectfully submits this opposition to Plaintiffs-Appellees Neo4j, Inc. and Neo4j Sweden AB's (collectively "Appellees") motion to seal portions of Volumes 10 and 11 of the Excerpts of Record. Appellant opposes the sealing of the following portions:

- Page 2198 of Volume 10;
- Pages 2358-2364 of Volume 10;
- Pages 2371-2374 of Volume 10; and
- Page 2430 of Volume 11.

I.  INTRODUCTION

Appellees have failed to meet their burden under the Ninth Circuit's standard for sealing judicial records. As set forth in *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006), there is a "strong presumption in favor of access" particularly where the documents at issue are part of a dispositive motion. Appellees must demonstrate compelling reasons for sealing that outweigh the public's interest in transparency and the party's right to present their case. For the reasons stated below, Appellees' motion to seal the specified portions of Volumes 10 and 11 should be denied.

II.  ARGUMENT

A. **Appellees Fail to Establish Compelling Reasons to Seal Page 2198 of Volume 10**

Page 2198 is part of Appellees' Consolidated Notice of Motion and Motion for Summary Judgment, which is central to this case and the public's understanding of the issues at hand. Under *Kamakana*, judicial records attached to dispositive motions may only be sealed for compelling reasons, and embarrassment or harm to reputation does not

2

suffice. *Kamakana* clearly states: "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." 447 F.3d at 1179.

The content of Page 2198 discusses licensing practices, government procurement, and Appellant's interactions with Appellees. This information is critical to assessing the legal and factual issues in this case, including allegations of breach of agreement and Appellees' licensing strategies. Transparency is necessary to ensure accountability and public trust, particularly when the case involves business dealings that could impact government contracts and public funds. Appellees' claims of competitive harm are unsubstantiated and do not meet the high burden required for sealing.

## B. Emails Involving Appellant (Pages 2358-2364 and 2371-2374 of Volume 10) Should Not Be Sealed

Appellees seek to seal email communications that were sent to or from Appellant, including pages 2358-2364 and 2371-2374. These communications cannot reasonably be considered confidential or

proprietary because they were voluntarily shared with Appellant, a third party.

As the Fourth Circuit held in Rushford, and as cited by the Ninth Circuit in Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1136 (9th Cir. 2003), "once the [sealed discovery] documents are made part of a dispositive motion [e.g., a summary judgment motion ruled upon by the court] . . . they lose their status of being raw fruits of discovery." Furthermore, Foltz emphasizes that when materials are disclosed to opposing parties, the rationale for continued sealing diminishes significantly. Here, Appellant's possession of these emails negates any claim of confidentiality or risk of competitive harm. Moreover, the emails are directly relevant to Appellant's defense and broader allegations of Appellees' anticompetitive practices.

## C. Page 2430 of Volume 11 Highlights Internal Discussions Relevant to Context and Broader Issues and Should Not Be Sealed

Page 2430 contains an internal email exchange between Neo4j employees discussing licensing strategies, government use of open-

4

source software, and the role of Appellant's business offerings. While Appellees argue this email is confidential, its relevance extends beyond actionable antitrust claims and provides important context for understanding Appellees' business practices.

Although the date of the email may place it outside the statute of limitations for antitrust claims, its content demonstrates patterns in Appellees' licensing strategies and competitive behavior. In particular, the email sheds light on Neo4j's approach to leveraging open-source licensing ambiguities and its strategy to position its licensing model in government procurement. The timing of this discussion also coincides with Neo4j's addition of the Commons Clause to its licensing, which significantly limited the open-source nature of its software.

This email could support allegations that Neo4j sought to misrepresent or manipulate its licensing to mislead government entities, which is directly relevant to public interest. Courts recognize the importance of such contextual evidence in shedding light on litigants' motivations and tactics. As stated in *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008), compelling reasons sufficient to justify sealing exist only for

information that constitutes "trade secrets" or "sources of business information that might harm a litigant's competitive standing." The discussion in Page 2430 does not meet this threshold but instead provides insight into business practices that are directly relevant to this case. Allowing this document to remain sealed would hinder transparency and accountability in the judicial process.

### D. Appellees' Claim of "False and Defamatory" Statements in Pages 2371-2374 Undermines Their Sealing Argument

Appellees assert that pages 2371-2374 contain "false and defamatory" statements by Appellant that, if disclosed, would harm Neo4j's reputation and business standing. This assertion highlights an improper motive for sealing: shielding Appellees from embarrassment or reputational harm. Under *Kamakana*, reputational concerns alone do not meet the compelling reasons standard for sealing judicial records. The court in *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978), stated: "[A]ccess has been denied where court files might have become a vehicle for improper purposes." The Court provided examples, such as ensuring records are not used " to gratify private spite or promote

6

public scandal," referencing In re Caswell. However, reputational harm alone does not outweigh the public's right to access.

Additionally, by labeling these statements as "false and defamatory" without substantiating the claim in the original case, Appellees invite the Court to suppress contested allegations rather than subject them to public scrutiny. *Kamakana* further warns against using sealing to avoid unfavorable optics, emphasizing that the standard for sealing must be based on articulated and specific harms.

If Neo4j believes the statements are defamatory, it has remedies outside of sealing to address that issue, such as litigating defamation claims on the merits. Sealing these emails would preclude the public and the Court from evaluating their content, which is central to this case and Appellant's defense. Furthermore, the emails provide critical insight into Neo4j's interactions with its customers and licensing practices, both of which are directly relevant to allegations of misconduct.

### E. V. The Public's Right to Access Judicial Records Outweighs Appellees' Confidentiality Concerns

7

The public has a strong interest in accessing judicial records, particularly in cases involving business practices with potential public impact. As noted in *Kamakana*, 447 F.3d at 1178-79, the presumption of public access is particularly strong for records filed in connection with dispositive motions. Appellees' generalized assertions of competitive harm are insufficient to overcome this presumption.

Moreover, as this case involves allegations of Appellees' misuse of licensing agreements and interactions with government entities, the public interest in transparency is heightened. Denying access to these documents would undermine public trust in the judicial process and shield potentially questionable business practices from scrutiny. *Nixon*, 435 U.S. at 598, further supports this principle, noting that "the common-law right of inspection has bowed before the power of a court to insure that its records are not used to gratify private spite or promote public scandal." Neo4j's attempts to seal these records appear to be motivated more by reputational concerns than by legitimate competitive harm.

### III. CONCLUSION

For the foregoing reasons, Appellant respectfully requests that the Court deny Appellees' motion to seal the specified portions of Volumes 10 and 11.


Respectfully submitted,

**John Mark Suhy**
Pro Se
Dated: 01/23/2025
8814 Danewood Dr
Alexandria, VA 22308
Tel: (703) 862-7780
Email: jmsuhy@gmail.com

## CERTIFICATE OF SERVICE

I, John Mark Suhy Jr, hereby certify that on this January 23, 2025, I electronically filed the foregoing motion, exhibit, and declaration with the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ John Mark Suhy Jr

John Mark Suhy Jr

8814 Danewood Dr

Alexandria, VA 22308

jmsuhy@gmail.com

703-862-7780