**No. 24-5538**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

NEO4J, INC., NEO4J SWEDEN AB,

*Plaintiffs-Appellees*,

v.

JOHN MARK SUHY,

*Defendant-Appellant*.

On Appeal from the United States District Court
For the Northern District of California
No. 5:18-cv-07182-EJD
Hon. Edward J. Davila

---

**APPELLEES' ANSWERING BRIEF**

---

John V. Picone III (State Bar No. 187226)
jpicone@spencerfane.com
Jeffrey M. Ratinoff (State Bar No. 197241)
jratinoff@ spencerfane.com
Jeremy A. Moseley (MT Bar #44830177)
jmoseley@spencerfane.com

*Attorneys for Appellees*
Neo4j, Inc. and Neo4j Sweden AB

## DISCLOSURE STATEMENT

Pursuant to FRAP 26.1, the undersigned, counsel of record for Neo4j, Inc. ("Neo4j") certifies that Neo4j, Inc., as of this date, does not have a parent corporation and that no publicly held corporation holds 10% or more of its stock

The undersigned, counsel of record for Neo4j Sweden AB ("Neo4j Sweden") certifies that Neo4j, Inc., as of this date, is the parent corporation of Neo4j Sweden and that no publicly held corporation holds 10% or more of Neo4j Sweden's stock.

Date: February 24, 2025

SPENCER FANE LLP

*/s/ Jeffrey M. Ratinoff*

Jeffrey M. Ratinoff, Esq.

*Attorneys for Appellees*
Neo4j, Inc. and Neo4j Sweden AB

-i-

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not believe oral argument would aid in the Court's decisional process and therefore does not request oral argument. However, if the Court finds oral argument would be beneficial, Appellees would be honored to attend and present argument.

Date: February 24, 2025

SPENCER FANE LLP

*/s/ Jeffrey M. Ratinoff*

Jeffrey M. Ratinoff, Esq.

*Attorneys for Appellees*
Neo4j, Inc. and Neo4j Sweden AB

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ............................................................ i

STATEMENT REGARDING ORAL ARGUMENT .......................... ii

TABLE OF CONTENTS ................................................................... iii

TABLE OF AUTHORITIES ............................................................ vii

I. INTRODUCTION ......................................................................... 1

II. JURISDICTIONAL STATEMENT ............................................ 1

III. STATUTORY AUTHORITIES .................................................. 2

IV. ISSUES PRESENTED ............................................................... 2

V. STATEMENT OF THE CASE ..................................................... 3

    A.    Relevant Undisputed Facts ................................................ 3

        1.    Neo4j USA and Neo4j Sweden .................................. 3

        2.    The NEO4J Mark and Evolution of Neo4j®-Branded Software and Appellants' Pirated Versions Thereof ................ 4

        3.    Suhy, PureThink, and iGov ........................................ 5

        4.    Suhy Improperly Removes the Commercial Restrictions in the Neo4j Sweden Software License ..................... 7

        5.    Suhy's Lanham Act and DMCA Violations Cause Appellees to Lose Licensing Revenue ...................... 9

    B.    Relevant Procedural History .............................................. 11

        1.    The District Court Grants Neo4j USA's Motion for Judgment on the Pleadings ..................................... 11

        2.    The District Court Grants Summary Judgment in Favor of Neo4j USA on its Lanham Act Claims .............. 12

            a.    Defendants Infringed the NEO4J Mark .......................... 13

            b.    Defendants' False Advertising ...................................... 14

        3.    The Ninth Circuit Affirms the First MSJ Order ...................... 15

        4.    The District Court Excludes Kuhn' Expert Opinions .............. 17

## TABLE OF CONTENTS
### (continued)

Page

5.  The District Court Grants Appellees' Second Motion for Summary Judgment ....................................................18

6.  The District Court's Damages Award and Entry of Judgment ...............................................................19

VI. SUMMARY OF THE ARGUMENT ..................................................20

VII. STANDARDS OF REVIEW ........................................................23

VIII. ARGUMENT ...........................................................................26

A.  The District Court Did Not Abuse Its Discretion in Dismissing Suhy's Fraud Counterclaim and Defense with Prejudice .................26

B.  The District Court Properly Granted Summary Judgment on Appellees' DMCA Claim................................................27

1.  Suhy's Subsequent Stipulated Admissions Cure Any Alleged Error on Summary Judgment ....................................28

2.  Suhy Fails to Establish the District Court Abused its Discretion by Following the Law-of-the-Case Doctrine .........30

3.  The FSF's Copyright in the AGPL is Immaterial...................31

C.  Suhy Improperly Seeks to Relitigate Issues Resolved in *Neo4j I*......32

1.  This Court Previously Affirmed that Neo4j USA had Standing Under the Lanham Act .............................32

2.  This Court Conclusively Affirmed that Sections 7 and 10 of the NSSL Prohibited the Removal of the Commons Clause....................................................33

3.  This Court Previously Affirmed the Falsity of Advertising ONgDB as a "Drop-in" Replacement for Neo4j® EE ...............................................................36

D.  The District Court Did Not Err in Granting Summary Judgment on Neo4j USA's Lanham Act Claims................................37

1.  The District Court Correctly Found Neo4j USA had Standing Under the Lanham Act .............................38

2.  The NEO4J Registration is Valid ...........................40

-iv-

# TABLE OF CONTENTS
## (continued)

Page

      a.    Suhy Fails to Assign Error to the Legal Framework Used by the District Court to Determine Validity.........40

      b.    Suhy's Reliance on the Intercompany License Fails to Overcome the Strong Presumption of Validity ........................................................................42

E.    The District Court Correctly Found that Suhy Engaged in False Advertising ...............................................................45

    1.    The District Court Did Not Err in Finding Suhy's Claims that ONgDB was "Free and Open-Source" Were False ..........46

      a.    The District Court Correctly Interpreted the NSSL ......47

      b.    Neo4j Sweden's Intent as the Copyright Holder and Licensor Controls the Interpretation of the NSSL................................................................................51

    2.    Suhy's Assertions that ONgDB was a "Drop-In Replacement" Were False and Misleading..............................53

F.    The District Court's Damages Award was Neither Clearly Erroneous nor an Abuse of Discretion .................................58

    1.    The Record Evidence Establishes Proximate Causation .........58

    2.    The Record Evidence Supports the Amount of the District Court's Damages Award............................................59

    3.    Suhy's Remaining Arguments Do Not Establish an Abuse of Discretion ................................................................62

G.    Suhy Fails to Establish Error in the Evidentiary Rulings Below.......63

    1.    The District Court Properly Excluded the FSF Letter.............63

    2.    The District Court Properly Excluded Kuhn's Proposed Expert Testimony.....................................................................65

H.    The District Court Did Not Err in Granting Summary Judgment on PureThink's Breach of Contract Counterclaim.............................66

**TABLE OF CONTENTS**
**(continued)**

**Page**

     1.    Suhy Fails to Address that the Lack of Mutual Assent
Precluded the Formation of the Alleged Exclusivity
Agreement ...................................................................................68

     2.    Suhy Fails to Establish Error with the Finding of No
Breach .......................................................................................69

IX. CONCLUSION..................................................................................71

CERTIFICATE OF COMPLIANCE FOR BRIEFS .............................................. ii

CERTIFICATE OF SERVICE ............................................................................. iii

# TABLE OF AUTHORITIES

**Page**

## CASES

*Acosta-Huerta v. Estelle*,
  7 F.3d 139 (9th Cir. 1993) ....................................................................26, 29, 64

*Adidas America, Inc. v. Athletic Propulsion Labs, LLC*,
  120 U.S.P.Q.2d 1303, 2016 WL 3896826 (D. Or. 2016) ...................................38

*Allard Enterprises, Inc. v. Advanced Programming Res., Inc.*,
  146 F.3d 350 (6th Cir. 1998) ...........................................................................43

*Altera Corp. v. Clear Logic, Inc.*,
  424 F.3d 1079 (9th Cir. 2005) .........................................................................52

*Animal Legal Def. Fund v. U.S. Food & Drug Admin.*,
  836 F.3d 987 (9th Cir. 2016) ...........................................................................23

*Apple Inc. v. Psystar Corp.*,
  658 F.3d 1150 (9th Cir. 2011) .........................................................................51

*Banner Entm't, Inc. v. Sup. Court*,
  62 Cal. App. 4th 348 (1998) ............................................................................68

*Biological Diversity v. Salazar*,
  706 F.3d 1085 (9th Cir. 2013) .........................................................................34

*Bustamante v. Intuit, Inc.*,
  141 Cal.App.4th 199 (Cal. Ct. App. 2006) ......................................................67

*Campidoglio LLC v. Wells Fargo & Co.*,
  870 F.3d 963 (9th Cir. 2017) ...........................................................................23

*Christian Legal Soc. Chapter of the Univ. of California, Hastings
  Coll. of the L. v. Martinez*,
  561 U.S. 661 (2010)................................................................................. *passim*

*Daly-Murphy v. Winston*,
  837 F.2d 348 (9th Cir. 1987) ...........................................................................62

*EFCO Corp. v. Symons Corp.*,
  219 F.3d 734 (8th Cir. 2000) ...........................................................................55

*F.T.C. v. Stefanchik*,
  559 F.3d 924 (9th Cir. 2009) ...........................................................................23

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,

## TABLE OF AUTHORITIES
### (continued)

Page

772 F.2d 505 (9th Cir. 1985) ............................................................24

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)..............................................................23, 24

*Grinder v. S. Farm Bureau Cas. Ins. Co.*,
  590 F.2d 741 (8th Cir. 1979) ......................................................59

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
  547 F.3d 1213, (9th Cir. 2008) ...............................................37, 38

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
  189 F.3d 971 (9th Cir. 1999) ......................................................22

*Herrington v. County of Sonoma*,
  12 F.3d 901 (9th Cir. 1993) ........................................................35

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) .....................................................61

*In re Am. W. Airlines, Inc.*,
  217 F.3d 1161 (9th Cir. 2000) .....................................................46

*In re Wella A.G.*,
  787 F.2d 1549 (Fed. Cir. 1986) ...................................................40

*In re Wella A.G.*,
  858 F.2d 725 (Fed. Cir. 1988) .....................................................40

*Jacobsen v. Katzer*,
  535 F.3d 1373 (Fed. Cir. 2008) ...................................................51

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,
  68 F.4th 1203 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 550 (2024) ............24, 60

*K Mart Corp. v. Cartier, Inc.*,
  486 U.S. 281 (1988)...................................................................44

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)...................................................................24

*Leslie Salt Co. v. United States*,
  55 F.3d 1388 (9th Cir. 1995) .........................................31, 32, 34, 36

*LexMark Intern., Inc. v. Static Control Components, Inc.*,

## TABLE OF AUTHORITIES
### (continued)

Page

572 U.S. 118 (2014) ............................................................58

*McHugh v. United Serv. Auto. Ass'n*,
  164 F.3d 451 (9th Cir. 1999) .........................................64

*Micro Star v. Formgen Inc.*,
  154 F.3d 1107 (9th Cir. 1998) ......................................52

*Milenbach v. C.I.R.*,
  318 F.3d 924 (9th Cir.2003) .........................................52

*Milgard Tempering, Inc. v. Selas Corp. of Am.*,
  902 F.2d 703 (9th Cir. 1990) ........................................29

*Minden Pictures, Inc. v. John Wiley & Sons,
  Inc.*,
  795 F.3d 997 (9th Cir. 2015) ........................................30

*Nat'l Licensing Ass'n, LLC. v. Inland Joseph Fruit Co.*,
  361 F.Supp.2d 1244 (E.D. Wash. 2004) ........................38

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
  926 F.3d 528 (9th Cir. 2019) ........................................38

*Neo4j, Inc. v. Graph Found., Inc.*,
  2020 WL 6700480 (N.D. Cal. Nov. 13, 2020) ........13, 49, 50

*Neo4j, Inc. v. PureThink, LLC*,
  2022 WL 781037 (9th Cir. Mar. 14, 2022) ............... *passim*

*Netbula, LLC v. Bindview Dev. Corp.*,
  516 F. Supp. 2d 1137 (N.D. Cal. 2007) ..........................67

*Noble House Home Furnishings, LLC v. Floorco Enterprises, LLC*,
  118 U.S.P.Q.2d 1413, 2016 WL 3357265 (T.T.A.B. 2016) ...........43, 44

*Oracle Corp. v. SAP AG*,
  765 F.3d 1081 (9th Cir. 2014) ......................................59

*Pom Wonderful LLC v. Hubbard*,
  775 F.3d 1118 (9th Cir. 2014) ......................................39

*Pony Exp. Courier Corp. of Am. v. Pony Exp. Delivery Serv.*,
  872 F.2d 317 (9th Cir. 1989) ........................................25

# TABLE OF AUTHORITIES
## (continued)

Page

*Quabaug Rubber Co. v. Fabiano Shoe Co.*,
    567 F.2d 154 (1st Cir. 1977)...................................................................37

*S. California Gas Co. v. City of Santa Ana*,
    336 F.3d 885 (9th Cir. 2003) ...............................................................46

*Scott v. Harris*,
    550 U.S. 372 (2007)...............................................................................68

*Secular Organizations for Sobriety, Inc. v. Ullrich*,
    213 F.3d 1125 (9th Cir. 2000) .............................................................39

*Skydive Arizona, Inc. v. Quattrocchi*,
    673 F.3d 1105 (9th Cir. 2012) .....................................................58, 60

*Smith v. Marsh*,
    194 F.3d 1045 (9th Cir. 1999) ..........................................36, 39, 45, 49

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) .......................................................45, 53

*Swan v. Peterson*,
    6 F.3d 1373 (9th Cir. 1993) ...........................................................49, 50

*Tan Lam v. City of Los Banos*,
    976 F.3d 986 (9th Cir. 2020) ...............................................................23

*Taylor v. List*,
    880 F.2d 1040 (9th Cir. 1989) .............................................................68

*Telesaurus VPC, LLC v. Power*,
    623 F.3d 998 (9th Cir. 2010) ...............................................................26

*Tongass Conservation Soc. v. U.S. Forest Serv.*,
    455 F. App'x 774 (9th Cir. 2011) .......................................................34

*U.S. v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000) .............................................................24

*United States v. Crawford*,
    372 F.3d 1048 (9th Cir. 2004) .......................................................28, 58

*United States v. DeBright*,
    730 F.2d 1255 (9th Cir. 1984) .............................................................63

## TABLE OF AUTHORITIES
### (continued)

Page

*United States v. Hinkson,*
   585 F.3d 1247 (9th Cir. 2009) ..........................................................24

*United States v. Kama,*
   394 F.3d 1236 (9th Cir. 2005) ..........................................................57

*United States v. King Features Ent., Inc.,*
   843 F.2d 394 (9th Cir. 1988) ....................................................32, 35

*United States v. Lummi Indian Tribe,*
   235 F.3d 443 (9th Cir. 2000) ..........................................................23

*United States v. Ponticelli,*
   622 F.2d 985 (9th Cir. 1980), *cert. denied*, 449 U.S. 1016 (1980) ..................63

*Universal Sales Corp. v. Cal., Press Mfg. Co.,*
   20 Cal.2d 751 (1942) ..........................................................52

*W. Fla. Seafood, Inc. v. Jet Restaurants, Inc.,*
   31 F.3d 1122 (Fed. Cir. 1994) ..........................................................40

*W. S. Shamban & Co. v. Com. & Indus. Ins. Co.,*
   475 F.2d 34 (9th Cir. 1973) ..........................................................25

*W. Watersheds Project v. Abbey,*
   719 F.3d 1035 (9th Cir. 2013) ....................................................29, 64

*Wapato Heritage, L.L.C. v. United States,*
   637 F.3d 1033 (9th Cir. 2011) ..........................................................47

*Zango, Inc. v. Kaspersky Lab, Inc.,*
   568 F.3d 1169 (9th Cir. 2009) ....................................................49, 50

*Zobmondo Ent., LLC v. Falls Media, LLC,*
   602 F.3d 1108 (9th Cir. 2010) ..........................................................39

*Zucco Partners, LLC v. Digimarc Corp.,*
   552 F.3d 981 (9th Cir. 2009) ..........................................................23

**STATUTES**

15 U.S.C. § 1114(1) ..........................................................42

17 U.S.C. § 1202(b)(1) ..........................................................29

17 U.S.C. § 1202(b)(3) ..........................................................29

## TABLE OF AUTHORITIES
### (continued)

**Page**

**OTHER AUTHORITIES**

Cal. Civ. Code § 1636 ................................................................56

Cal. Civ. Code § 1639 ................................................................57

Cal. Civ. Code § 1641 ................................................................53

Cal. Civ. Proc. Code § 1856 .......................................................76

Cal. Civ. Proc. Code § 1856(f) ..................................................76

**RULES**

Fed. R. Civ. P. 52(a)(6) ..............................................................25

Fed. R. Evid. 803(6) ..................................................................71

Fed. R. Evid. 803(8) ..................................................................71

# I.

## INTRODUCTION

This is a case of a former support partner who went rogue. Appellant John Mark Suhy ("Suhy" or "Appellant") skirted licensing terms, tried cobbling together parts of software created and sold by Appellees Neo4j, Inc. and Neo4j Sweden AB (collectively "Appellees'") to develop a similar free version of commercially popular software, ignored and removed licenses that got in his way, and then used Appellees' trademark to confuse customers into buying his support services for his free, but pirated, products.

The district court found this misconduct violated the Lanham Act, and this Court affirmed those findings. The district court then properly applied the law of the case to find that this same misconduct violated the DMCA and awarded damages lower than what Appellant stipulated to at trial. This Court should affirm the resulting judgment entered by the district court.

# II.

## JURISDICTIONAL STATEMENT

This is an appeal of a judgment entered on claims brought by Appellees against Suhy under the Lanham Act and the Digital Millennium Copyright Act ("DMCA"). The district court had federal question jurisdiction pursuant to 28 U.S.C. § 1331. Appellate jurisdiction of Suhy's appeal lies under 28 U.S.C. § 1291, as the

appeal is from a final order.  As detailed in Appellees' opposition to Suhy's Motion

to Substitute Party, however, this Court lacks appellate jurisdiction over the district

court's rulings and other matters associated with PureThink because it failed to

timely file a notice of appeal.  *See, generally*, Dkt Entry 20.

## III.

## STATUTORY AUTHORITIES

All relevant statutory authorities appear in a separately bound Addendum to

this brief.

## IV.

## ISSUES PRESENTED

1.      Whether the district court acted within its discretion when it dismissed

Suhy's fraud counterclaim claim with prejudice based on Suhy's admission the

counterclaim was futile.

2.      Whether the district court correctly held Suhy violated the Lanham Act

and DMCA as a matter of law based on Suhy's stipulation that he distributed

Appellees' software knowing it would result in copyright infringement, as well as

Suhy's other stipulations and undisputed facts.

3.      Whether the district court acted within its discretion to apply the law of

the case to Suhy's attempts to challenge this Court's prior rulings in *Neo4j, Inc. v.*

*PureThink, LLC*, No. 21-16029, 2022 WL 781037, at *1 (9th Cir. Mar. 14, 2022).

-2-

4.     Whether the district court acted within its discretion in awarding damages lower than those stipulated to by Suhy and that are amply supported by the record evidence and in excluding evidence that was not relevant to the issues at trial.

## V.

## STATEMENT OF THE CASE

### A.     Relevant Undisputed Facts[1]

#### 1.     Neo4j USA and Neo4j Sweden

Neo4j USA is the company behind the number one graph database management systems and offers its graph database platform ("Neo4j® Software") and related services in the United States.  2-ER-42 (¶¶2-3).  Neo4j® Software helps organizations make sense of their data by revealing how people, processes, and digital systems are interrelated. 1-SER-0074 (2:8–14).

Neo4j Sweden is a wholly owned subsidiary of Neo4j USA. 2-SER-0189 (¶1). It is the owner of all copyrights related to the Neo4j® graph database platform, including the source code, and has licensed those copyrights to Neo4j USA, including the exclusive right to sell commercial subscriptions for Neo4j® Software

---

[1] Such facts were either undisputed at the time of summary judgment, became undisputed via joint stipulations of fact made in conjunction with trial, or were otherwise uncontested at trial.

in the United States. 1-SER-0074 (2:16–18); 2-SER-0193 (¶58).

### 2. The NEO4J Mark and Evolution of Neo4j®-Branded Software and Appellants' Pirated Versions Thereof

In conjunction with its business, Neo4j USA obtained U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" on August 4, 2015 (the "NEO4J Registration"). 10-SER-2578–2581 (Ex. 1); 1-SER-0074 (2:18–26); 1-SER-0086 (14:3–5).

Prior to May 2018, Plaintiffs offered an open-source version of the Neo4j® Software, Neo4j® Community Edition ("Neo4j® CE"), under the GNU General Public License version 3 ("GPL") license. 1-SER-0075 (3:1–5); 2-SER-0189 (¶5). Neo4j® CE is limited in its feature set and does not come with technical or administrative support. *Id.*

Appellees also offered a more robust commercial version, which included additional advanced features and support services, known as the Neo4j® Enterprise Edition ("Neo4j® EE"). 2-SER-0189–190 (¶¶5–6); 1-SER-0075 (3:5–7). Prior to May 2018, Plaintiffs offered Neo4j® EE under both a paid-for commercial license and for free under the GNU Affero General Public License, version 3 ("AGPL"). 2-SER-0190 (¶6); 1-SER-0075 (3:7–9).

On May 17, 2018, Neo4j Sweden released Neo4j® EE v3.4 with new advanced features under a stricter license, which included terms of the AGPL and

-4-

commercial restrictions provided by the Commons Clause (the "Neo4j Sweden Software License" or "NSSL"). 2-SER-0190 (¶10); 1-SER-0075 (3:9–12). The Commons Clause prohibited non-paying individuals and entities from engaging in commercial resale and support services. 2-SER-0194–0195 (¶¶75–76); 2-SER-0144 (¶¶4–7); 2-SER-0148 (¶48); 1-SER-0075 (3:12–13); 1-SER-0077–0078 (5:26–6:1). The NSSL also contained a NOTICE provision, which provided the title of the work, terms and conditions for use of the work, and other identifying information about Neo4j Sweden and how to obtain a commercial license for the use of Neo4j® EE. 1-SER-0054 (18:5–19); 1-SER-0078 (6:21–26); 10-SER-2476, 10-SER-2513–2521 (¶11 and Ex. 3).

In November 2018, Appellees officially released Neo4j® EE v3.5 solely under a commercial license. 2-SER-0190 (¶11). Prior to the official release, however, Appellees published several beta versions via their GitHub repository subject to the NSSL. 2-SER-0190 (¶12). Thereafter, Neo4j Sweden only made the source code for Neo4j® CE publicly available under the GPL. *Id*.

### 3.    Suhy, PureThink, and iGov

PureThink, LLC ("PureThink") was founded and operated by John Mark Suhy. 2-SER-0190 (¶¶15–16). On September 30, 2014, PureThink and Neo4j USA entered into the Neo Technologies Solution Partner Agreement ("SPA") where

PureThink agreed to sell commercial licenses for Neo4j® EE and provide support to end-users that purchased those licenses. 2-SER-0190 (¶17); 1-SER-0075–0076 (3:17–4:6); 10-SER-2586–2591 (Ex. 4).

Under this agreement, PureThink had a non-exclusive, non-transferable limited license to, *inter alia*, use the NEO4J Mark solely to market and resell commercial licenses to Neo4j® EE and related support services in exchange for shared revenue for the licenses that it resold. 10-SER-2589 (Ex. 4 at §4.1). The SPA also restricted PureThink from distributing and offering any services relating to open source Neo4j® Software both during the term of the SPA and for three years after termination. 10-SER-2589 (§4.3.2).

In March 2017, Appellees learned that Suhy encouraged and misled the IRS to use open source Neo4j® EE under the AGPL and pay PureThink for support services to avoid paying for a commercial license to Neo4j® EE. As a result, on May 30, 2017 Neo4j USA notified PureThink that its actions constituted material breach, and on July 11, 2017, Neo4j USA provided written notice that the SPA was terminated. 10-SER-2598–2599 (Ex. 9); 10-SER-2607–2608 (Ex. 12).

Suhy formed iGov Inc. ("iGov") on June 23, 2017 to offer paid support services for open source Neo4j® EE to government agencies to compete with Neo4j USA, which PureThink was prohibited from doing under the SPA. 1-SER-0076

(4:13–18); 8-SER-2020–2021 (¶21).  Suhy and iGov subsequently reconstituted and promoted non-conforming versions of Neo4j® EE, first as "Neo4j Enterprise" and then as "ONgDB." 1-SER-0076–0077 (4:24–7:5, 7:18–24); 2-SER-0192 (¶¶42–44); 2-SER-0193 (¶¶58–60).

### 4. Suhy Improperly Removes the Commercial Restrictions in the Neo4j Sweden Software License

Following the release of Neo4j® EE v3.4, Suhy created ONgDB v3.4 by replacing the NSSL with verbatim copies of the AGPL, thereby removing the Commons Clause and the NOTICE provision (collectively, the "Neo4j CMI"), which could not be characterized as a "further restriction."  1-SER-0078 (6:2–11, 6:18–26); 10-ER-2311–2372 (171:23–172:23).  There was no dispute that the source code for ONgDB differed from Neo4j® EE and that Suhy replaced the NSSL with a generic copy of the AGPL, inducing users to believe Defendants[2] could sell commercial support services for ONgDB. 1-SER-0078–0079 (6:21–26, 7:7–10, 7:18–24); 2-SER-0193 (¶¶58–76); 2-SER-0197–0198 (¶¶110–118).

After Appellees released Neo4j® EE v3.5 solely under a commercial license, Suhy created ONgDB v3.5 by again replacing the more restrictive NSSL with a

---

[2] "Defendants" collectively refers to PureThink, iGov Inc. and Suhy.  "Appellant" and "Suhy" refers to Appellant John Mark Suhy.

verbatim copy of the AGPL. 1-SER-0078 (6:18–24) (citing 10-SER-2867–11-SER-3245 (Ex. 39); 11-SER-3246–3248 (Ex. 40); 11-SER-2730 (Ex. 31 at 159:3–10); 10-SER-2481 (¶30); 2-SER-0193 (¶¶58–60).  Doing so stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor in the NOTICE provision and removed the commercial restrictions imposed by the Commons Clause. 1-SER-0078 (6:24–26); 16-SER-4106–17-SER-4484 (TX 1010), 13-ER-2784 (294:4–23), 13-ER-2833-2836 (343:8–346:20); 2-SER-0144 (¶¶4–7); 2-SER-0148 (¶48).

After Suhy created ONgDB v3.5, he donated it to GFI, which then made it publicly available for download via GFI's website and GitHub source code repository for ONgDB.[3] 1-SER-0078 (6:18–21); 16-SER-4106–17-SER-4484 (TX 1010), 13-ER-2784-2785 (294:4–295:10), 13-ER-2789-2790 (299:23–300:12), 13-ER-2833-2836 (343:8–346:20).  Suhy provided hyperlinks to potential users of Neo4j® EE to view and download ONgDB.  2-SER-0192 (¶¶42–44).

---

[3] Neo4j Sweden released subversions of Neo4j® EE 3.5, and GFI and Suhy sought to release matching subversions of ONgDB, *i.e.* releasing ONgDB v3.5.4 as an alleged equivalent to Neo4j® EE v3.5.4 and so on. *See, e.g.,* 11-SER-2729–2736 (Ex. 31 at 158:18-163:5, 163:13-165:6); 12-SER-3260–3266 (Exs. 43–44); 13-SER-3324–3355 (Exs. 62-64 [green highlights]); 13-SER-3378–3395 (Exs. 67-69); 13-SER-3401–3413 (Exs. 71-75).

Defendants misrepresented to potential customers that ONgDB was "100% free and open" with no limitations or restrictions imposed by commercial licensed Neo4j EE. *See* 1-SER-0079 (7:2–5); 1-SER-0096 (24:7–15). They also misrepresented that ONgDB was a "drop in replacement" for the equivalent version Neo4j® EE. *See* 1-SER-0079 (7:18-24). In conjunction with these misrepresentations, they offered "commercial equivalent support packages" for ONgDB. 1-SER-0079 (7:18-24).

### 5. Suhy's Lanham Act and DMCA Violations Cause Appellees to Lose Licensing Revenue

Neo4j USA has a long history of selling commercial subscriptions for Neo4j® EE through resellers to the federal government, and specifically for several projects at the Maryland Procurement Office, a/k/a the National Security Agency ("MPO"). 2-SER-0199 (¶124). For another project, the MPO tasked one of its contractors, Next Century, to analyze available graph database technologies, including Neo4j® EE. 2-SER-0145 (¶18); 18-SER-4525–4527 (Lines 337-343); 1-SER-0012 (9:9-12). Next Century and the MPO required the enterprise-only features, such as causal clustering and multi-data centers, offered by both Neo4j® EE and ONgDB. 2-SER-0143 (¶2).

Next Century learned about the pricing of Neo4j® EE software bundles offered by Neo4j USA and equivalent ONgDB bundles from iGov's website. 2-

-9-

SER-0144 (¶3). In October 2018, Next Century exchanged emails with Suhy about representations made on iGov's website that ONgDB v3.4 was an open source version of Neo4j® EE v3.4 that provided the same enterprise-only features for free. 2-SER-0144 (¶4). Suhy told Next Century that the MPO could use ONgDB v3.4 without restrictions and without paying Plaintiffs for a commercial license, as advertised on the iGov's website. 2-SER-0144 (¶5). iGov's website provided links to potential users of Neo4j® EE to download ONgDB directly from iGov. 2-SER-0192 (¶¶42–44). Persuaded by Suhy, Next Century downloaded ONgDB v3.4 and began evaluating it against Neo4j® EE v3.4. 2-SER-0197–0198 (¶¶112–115).

In a series of emails with Next Century ending on January 4, 2019, Suhy confirmed that ONgDB v3.5 would have feature parity with the enterprise features of newly released Neo4j® EE v3.5 and would also be available without restrictions and without paying Neo4j USA for a commercial license. 2-SER-0198 (¶116). This caused Next Century to upgrade to ONgDB v3.5. *Id.*

By February 2019, the MPO chose to use ONgDB v3.5 over Neo4j® EE v3.5 for continued development work for the MPO. 2-SER-0198 (¶¶116–118). In March 2019, however, Next Century gave Neo4j USA the required specifications for its ongoing project with the MPO and asked Neo4j USA for a quote for use in a production environment. 2-SER-0198 (¶119). In response, Jason Zagalsky of Neo4j

USA sent a 3-year proposal based on those requirements. 2-SER-0198 (¶120); 10-ER-2249–2256.

On April 29, 2019, Next Century confirmed that it shared Neo4j USA's proposal with the MPO and was instructed to continue using ONgDB. 2-SER-0198 (¶121). The reason for this was price. *Id.* On July 21, 2019, Next Century informed Neo4j USA that the MPO was not interested in the Neo4j® EE proposal and would continue to use ONgDB. 2-SER-0199 (¶¶122–123). Again, the deciding factor between ONgDB and Neo4j® EE was price. *Id.*

## B. Relevant Procedural History

### 1. The District Court Grants Neo4j USA's Motion for Judgment on the Pleadings

On November 25, 2019, Appellees filed a Second Amended Complaint. In response, Defendants filed an answer, which asserted affirmative defenses for cancellation of Trademark Procured by Fraud based on Neo4j USA allegedly misrepresenting to the USPTO the dates of first use for the Neo4j Mark. 15-SER-3968–3969 (18:20-19:3). Defendants asserted an identical cancellation counterclaim. 15-SER-3915 (¶¶ 87–92).

Neo4j USA moved for judgment on the pleadings on the fraud-based affirmative defense and counterclaim. 15-SER-3866–3890. It argued that they failed as a matter of law because the alleged misstatement of the date of first use in

commerce of a mark was not material to the NEO4J Registration as the stated date for first use preceded the application date. 15-SER-3881–3882 (10:9–11:24).

Rather than oppose, Defendants conceded that their fraud theories were legally unviable. 14-SER-3858 (3:7–25), 14-SER-3863 (9:4–18). Consequently, the district court held that:

> In their Opposition, Defendants conceded, and the Court agrees, that a misstatement of a date of first use in a registration in and of itself does not support cancellation of the trademark. Opposition, p. 3 [citations omitted].
>
> Thus, Defendants effectively conceded that the Cancellation Arguments fail to establish a legally plausible claim or defense. Given this concession, the Court finds that amendment would be futile. [citations omitted]. Accordingly, the Court **GRANTS** the Motion as to the Cancellation Arguments and **DISMISSES** these claims with prejudice.

1-SER-0116 (8:4–18) (emphasis in original).

### 2. The District Court Grants Summary Judgment in Favor of Neo4j USA on its Lanham Act Claims

On May 18, 2020, the district court granted summary judgment in favor of Neo4j USA on its claims for trademark infringement, false advertising and false designation of origin asserted pursuant to 15 U.S.C. § 1114(1) ("§1114(1)") and 15 U.S.C. § 1125(a) ("§1125(a)") of the Lanham Act and related California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, et seq. ("UCL") claims (the "First MSJ Order").

### a.     Defendants Infringed the NEO4J Mark

In addressing the trademark infringement claims, the district court rejected Defendants' arguments that Neo4j USA lacked standing because Neo4j Sweden was the owner of the NEO4J Mark and merely licensed it to Neo4j USA. 1-SER-0083–0085 (11:18–13:1). It was undisputed that Neo4j USA owned the NEO4J Registration, and even if Neo4j Sweden were the true owner of the underlying mark, Neo4j USA still had a cognizable interest in the mark as the parent company to assert a claim under §1125(a). *Id.*

The district court then found the NEO4J Registration to be valid. 1-SER-0085–0090 (13:18–18:1). Under the related-companies doctrine, Neo4j USA's registration evidenced the intention of the parties as to ownership of the NEO4J mark. 1-SER-0089 (17:5-22). It was also undisputed that Neo4j USA wholly owns and controls Neo4j Sweden and did so at the time of the registration and is the only party who exercises control over the mark in the United States. 1-SER-0089 (17:22–24). Thus, Neo4j USA was, and continues to be, the presumptive owner of the registration. 1-SER-0089–0090 (17:24–18:1).

Finally, the district court found the undisputed evidence established that Defendants infringed the NEO4J Mark because they were not using "Neo4j" to refer to Appellees' products; they were using it to create the misleading perception that

-13-

Defendants' products were Appellees' products. 1-SER-0076–0077 (4:24–5:20); 1-SER-0079 (7:18–24); 1-SER-0091–0094 (19:13–22:21).

### b.    Defendants' False Advertising

The district court also found Defendants liable under §1125(a) for false advertising, which fell into two groups of misrepresentations that ONgDB was: (1) a "free and open source" version of or alternative to commercially licensed Neo4j® EE; and (2) a "drop-in replacement for an existing commercial licensed distribution of the same version number" of Neo4j® EE. 1-SER-0094–0102 (22:22–30:13).

With the first group of statements, the parties agreed that their truth or falsity hinged on the legal interpretation of the NSSL. 1-SER-0096 (24:7–15). The district court held that statements that ONgDB was a "free and open source" version of Neo4j® EE were literally false. 1-SER-0096–0097 (24:16-25:19). In doing so, it rejected Defendants' interpretation of Sections 7 and 10 of the NSSL. *Id.* (*quoting Neo4j, Inc. v. Graph Found., Inc.*, No. 5:19-CV-06226-EJD, 2020 WL 6700480, at *4 (N.D. Cal. Nov. 13, 2020)).[4]

---

[4] Appellees filed a related action against GFI for identical violations of the Lanham Act and DMCA. GFI unsuccessfully moved to dismiss the DMCA claim based on a shared interpretation of the NSSL. GFI eventually stipulated to a judgment in favor of Appellees. *See* Dkt Entry No. 32-2, Ex. 9. In doing so, GFI affirmed that the

The district court found the second group to be false because they could not be verified, given that Neo4j® EE v3.5.4 and later versions were all closed source. 1-SER-0098 (26:12–24). For earlier versions of ONgDB, the context of Defendants' statements "clearly implies" (falsely) that ONgDB has all the same enterprise features and is "essentially the same software as Neo4j EE." 1-SER-0098–0099 (26:25-28:16).

### 3.    The Ninth Circuit Affirms the First MSJ Order

Since the district court issued a preliminary injunction with granting summary judgment, Defendants immediately appealed. *See Neo4j, Inc. et al. v. Purethink LLC et al*., No. 21-16029 (9th Cir. 2021). They sought review of the district court's findings in the First MSJ Order because they were "inextricably bound up" with the preliminary injunction. 9-SER-2226. Defendants argued the district court erred in finding Neo4j USA had standing because it was not the owner of the NEO4J Mark. 9-SER-2227–2230.

Defendants also challenged the district court's findings that they engaged in false advertising, arguing that the language of Sections 7 and 10 authorized Suhy to

---

inclusion of the Common Clause in the NSSL was proper, and the removal thereof violated Section 1202(b) of the DMCA. *See id.* at ¶ 5.

-15-

remove the Commons Clause as a "further restriction." 9-SER-2245–2247. They further argued that because Free Software Foundation ("FSF") owned the copyright to the form AGPL license, Neo4j Sweden could not add the Commons Clause (and thus Suhy could remove it). *Id.*

With respect to the finding that calling ONgDB a "drop-in replacement" constituted false advertising, Defendants argued that the jury should determine the meaning of this phrase. Specifically, they argued this meant ONgDB was compatible with Neo4j® EE for data and queries. 9-SER-2249–2252.

This Court affirmed the preliminary injunction and the district court's underlying findings. 8-SER-2071–2078. It subsequently denied Defendants' petition for a rehearing and amended its prior opinion, warning that "[n]o future petitions for rehearing or rehearing en banc will be entertained." *See Neo4j, Inc. v. PureThink, LLC*, No. 21-16029, 2022 WL 781037, at *1 (9th Cir. Mar. 14, 2022) ("*Neo4j I*").

In particular, the Court affirmed that "[b]ecause Neo4j USA registered the NEO4J mark…, the district court correctly held it has standing to sue for infringement." *Neo4j I,* 2022 WL 781037, at *1, ¶ 1. It further affirmed that Defendants infringed the NEO4J Mark. *Id.* at ¶ 2.

With respect to false advertising, this Court affirmed that Defendants'

-16-

> representation that ONgDB is a "free and open-source" version of Neo4j® EE was literally false, because Section 7 of the Sweden Software License only permits a downstream licensee to remove "further restrictions" added by an upstream licensee to the original work. And advertisements of ONgDB as a "drop-in replacement" for Neo4j® EE were also false. And, even if the "drop-in replacement" representations were not literally false, substantial evidence showed that consumers were confused by Defendants' use of the term.

*Neo4j I,* 2022 WL 781037, at *1, ¶ 3. The Court indicated that its decision was precedential for the purpose of the law of the case "as provided by Ninth Circuit Rule 36-3." *Id.* at *1, fn **.

### 4.    The District Court Excludes Kuhn' Expert Opinions

After this Court remanded the case, the parties completed discovery on Appellees' DMCA claim. Defendants disclosed Bradley Kuhn ("Kuhn") as an expert that would address the issues arising from the "removal of the Commons Clause" from the NSSL and Defendants' "redistribution of the Neo4j software under the AGPLv3 with the [Commons Clause] removed." 7-SER-1615–1622 (Ex. 1 at ¶2). Appellees moved to strike Kuhn's report and exclude his opinion testimony at trial. 8-SER-1934–1961.

The district court excluded Kuhn's opinions that Sections 7 and 10 prohibited Neo4j Sweden from adding the Commons Clause as a "further restriction," while those same provisions permitted Defendants' removal of that clause on the grounds

-17-

of relevancy for two reasons. 1-SER-0044–0051 (8:3–15:13). First, the law of the case prohibited Defendants from relitigating the interpretation of the NSSL. 1-SER-0045–0046 (9:1–10:17). Second, Kuhn's opinions as to how the FSF would interpret the NSSL was inadmissible hearsay. 1-SER-0046–0047 (10:18–11:26).

The district court also held that "[t]o the extent that Kuhn opines on the permissibility of Defendants' actions or the legal effect and interpretation of any provision of the [NSSL]—such as what conduct is permitted or not permitted under the license—such testimony is improper legal opinion." 1-SER-0048–0049 (12:1–13:3). In addition, it excluded Kuhn's opinions on Suhy's subjective intent in removing the Commons Clause in the NSSL. 1-SER-0050–0051 (14:4–15:5).

### 5. The District Court Grants Appellees' Second Motion for Summary Judgment

Before trial, Appellees filed a motion for summary judgment on their DMCA claim and PureThink's breach-of-contract counterclaim. 8-SER-1962–2011. The district court granted Appellees' motion, finding Suhy liable for violating 17 U.S.C. § 1202(b) of the DMCA ("§1202(b)") on October 25, 2023 ("Second MSJ Order"). 1-SER-0052–0060 (16:23–24:6).

With respect to the first and second prongs of §1202(b)(1) and §1202(b)(3), there was no dispute that Suhy removed the Neo4j CMI when he replaced the NSSL with a "verbatim" copy of the AGPL without Neo4j Sweden's authorization. 1-SER-

-18-

0054–0055 (18:2–19:7); *see also* 2-SER-0193 (¶¶58–60). The second prong of §1202(b)(3) was also satisfied because it was undisputed that Suhy distributed Neo4j Sweden's source code without the NSSL. 1-SER-0054–0055 (18:23–19:7); *see also* 2-SER-0193 (¶¶58–60).

The district court then found that Suhy knew that his removal of the Neo4j CMI would result in copyright infringement. 1-SER-0056–0060 (20:3–24:6). The district court rejected Defendants' arguments that Suhy was acting in accordance with his reading of Sections 7 and 10 of the NSSL and to prevent the "further infringement" of the FSF's copyright in the AGPL. 1-SER-0056–0057 (20:17–21:16). It then found that Defendants unsuccessfully made the same arguments in *Neo4j I.* 1-SER-0057 (21:17–22). The law of the case thus precluded Defendants from arguing a lack of necessary knowledge and intent on these same grounds. 1-SER-0057–0058 (21:24–23:18).

### 6. The District Court's Damages Award and Entry of Judgment

The only issue remaining for trial was the amount of damages caused by Defendants' violations of the Lanham Act and the DMCA. A bench trial was held on November 14 and November 28, 2023, where the district court admitted evidence on Appellees' damages. 2-SER-0129–0141; 2-SER-0181–0187; 2-SER-0201–0206. During trial, the parties stipulated to relevant facts, thereby eliminating the need for

-19-

further proof.  2-SER-0188–0200.  Defendants also stipulated to the total amount of Appellees' lost licensing fees caused by Defendants' violations of the Lanham Act and DMCA.  2-SER-0142–0169.  The parties further stipulated to the admission of Appellees' deposition designations and corresponding trial exhibits.  2-SER-0170–0180.

The district court issued its Findings of Fact and Conclusions of Law on July 22, 2024 (1-SER-0004–0036); it issued a final judgment on August 15, 2024, wherein it awarded Appellees $597,000 in actual damages, plus $57,288 in prejudgment interest, less a stipulated $26,000 deduction, and issued a permanent injunction (1-SER-0002–0003). The district court clerk subsequently awarded Appellees $46,146.02 in costs, which were unopposed by Defendants. 2-SER-0124–0128.  On September 8, 2024, Suhy filed a notice of appeal only on behalf of himself. 17-ER-4485–4489.

## VI.

## SUMMARY OF THE ARGUMENT

Suhy seeks to assign error to the trial court's findings on separate summary judgment motions that he violated the Lanham Act and DMCA by removing the commercial restrictions from the NSSL that governed the use of Appellees' Neo4j® EE software.  Suhy's claimed errors should be rejected for two reasons.

-20-

First, this Court already considered the same arguments raised by Suhy, including his incorrect interpretation of that license he argued allowed him to remove those restrictions and redistribute Neo4j® EE as free software. Likewise, this Court already affirmed the district court's findings that Neo4j USA had standing to assert claims pursuant §1114(1) as the undisputed as the owner of a valid registration for the NEO4J Mark. Thus, the law-of-the-case doctrine precludes him from rearguing these issues in this appeal.

Second, Suhy stipulated at trial to knowingly distributing Neo4j® EE without the commercial restrictions imposed by the NSSL, and knowing that it would result in copyright infringement. This case-dispositive admission negates the need for this Court to consider any argument from Suhy or Amicus Curiae Software Freedom Conservancy ("SFC") on the interpretation of the NSSL.[5] It also negates any alleged error in the district court's findings of liability for Suhy's false advertising under the

---

[5] SFC claims to represent a "public interest" in the interpretation of the GPL and AGPL. There is no such interest implicated in this case. The only license at issue is the NSSL, a modified version of the AGPL applied only to a handful of versions of Neo4j® EE. Neo4j USA discontinued using the NSSL in 2019 and has never advocated that the district court's interpretation thereof applies to anything but the NSSL. SFC fails to identify a single instance where the district court and this Court's prior rulings on the interpretation of the NSSL have had any negative impact on the greater open source "movement," rendering its speculative concerns unfounded. Consequently, SFC's interloping is unnecessary for this additional reason.

-21-

Lanham Act and for his unauthorized removal of copyright management information ("CMI") in violation of the DMCA.

Similarly, Suhy cannot establish any abuse of discretion in the district court's damages award. At trial, Suhy entered into stipulations establishing that his violations of the Lanham Act and DMCA *caused* Appellees' damages in an amount ***three times higher*** than what was ultimately awarded by the trial court. These stipulations preclude Suhy from arguing anything contrary on appeal. Nevertheless, Suhy fails to demonstrate that there is a complete lack of record evidence rationally supporting the $597,000 award. Indeed, the evidence would have supported a much higher award as well.

Finally, even if any issues were properly before this Court, none of Suhy's arguments establish reversible error. Instead, Suhy fails to assign error to the trial court's substantive finding that Neo4j USA had standing as the owner of a valid registration for the NEO4J Mark, ignores the legal framework used by the district court to reach that determination, and disregards the adverse findings and the undisputed record evidence that confirms the district court's summary judgment orders should be affirmed.

Suhy's challenge of the adverse rulings on Neo4j USA's false advertising claim fare no better. He largely ignores the record evidence—including his own

-22-

admissions—and offers strained interpretations of the NSSL that go against Appellees' express intent as the copyright holder. There is no interpretation that allows Suhy to take a copyright holder's source code, remove commercial restrictions from its license, and falsely represent that such code is "free and open source" based on his unauthorized changes to that license.

The undisputed record evidence also supports the district court's finding that representations that ONgDB was 100% compatible with Neo4j® EE were false because it could not be verified. The same is true for Suhy's representations that those products are essentially the same when he admits that is a falsehood.

In sum, as to each claim of error on summary judgment, Suhy never demonstrates that any reasonable jury, looking at all the record evidence, would reach a contrary verdict on Appellees' Lanham Act and DMCA claims.

## VII.

## STANDARDS OF REVIEW

This Court "review[s] *de novo* an order granting a Rule 12(c) motion for judgment on the pleadings." *Heliotrope Gen., Inc. v. Ford Motor Co*., 189 F.3d 971, 978 (9th Cir. 1999). A judgment on the pleadings "is properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Id.* (internal citation omitted).  A district court's decision to deny

leave to amend upon granting such a motion is reviewed for abuse of discretion. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009).

An appellate court "review[s] *de novo* the district court's grant of summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 927 (9th Cir. 2009). It "determine[s] whether there are any genuine issues of material fact, and decide[s] whether the district court correctly applied the relevant substantive law." *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 988–9 (9th Cir. 2016). Summary judgment may be affirmed "on any ground supported by the record," and may be appropriate even when "a mixed question of fact and law involves undisputed underlying facts." *Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 973 (9th Cir. 2017) (quotation marks and citation omitted).

The district court's application of the law of the case doctrine is "reviewed for an abuse of discretion." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000).

This Court also "review[s] the district court's evidentiary decisions under the deferential abuse of discretion standard." *Tan Lam v. City of Los Banos*, 976 F.3d 986, 1004–05 (9th Cir. 2020) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141–42 (1997)). Likewise, it applies "an abuse-of-discretion standard when it 'review[s] a district court's decision to admit or exclude expert testimony.'" *Kumho Tire Co. v.*

*Carmichael*, 526 U.S. 137, 152 (1999) (quoting *Joiner*, 522 U.S. at 138–139); *accord U.S. v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000). Evidentiary "rulings will be reversed only if "manifestly erroneous." *Hankey*, 203 F.3d at 1167 (quoting *Joiner*, 522 U.S. at 142).

Because the damages award under the DMCA was based on findings of fact and conclusion of law, the reviewing court must uphold those findings unless shown to be clearly erroneous. Fed. R. Civ. P. 52(a)(6) ("[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous…"); *accord Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 513 (9th Cir. 1985) (district court's determination of actual copyright damages will be upheld unless shown to be clearly erroneous). This Court has applied both the abuse-of-discretion standard and the clearly erroneous standard to Lanham Act damages awarded by the trial court. *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1212 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 550 (2024).

A district court abuses its discretion only when its ruling is "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *United States v. Hinkson,* 585 F.3d 1247, 1251 (9th Cir. 2009). Under the clearly erroneous standard, this Court "must view the record in the light most favorable to sustain the lower court's judgment for plaintiff." *W. S. Shamban & Co.*

-25-

*v. Com. & Indus. Ins. Co*., 475 F.2d 34, 36 (9th Cir. 1973).

## VIII.

## ARGUMENT

### A.  The District Court Did Not Abuse Its Discretion in Dismissing Suhy's Fraud Counterclaim and Defense with Prejudice

Suhy argues that the district court erred in dismissing Suhy's fraud-in-the-procurement of the NEO4J Registration counterclaim and defense ("Fraud Theory") because it (1) failed to take all facts alleged in support thereof as true; and (2) there were unidentified facts that could have saved that defense, which resulted in the district court abusing discretion in denying leave to amend.  AOB at 35–38.

Aside from Suhy not identifying any allegations that the district court failed to accept as true, the record confirms that it properly granted Appellees' motion for judgment on the pleadings.  Suhy **conceded** that the Fraud Theory was not legally viable because the date of first use of the NEO4J Mark occurred prior to registration. 15-SER-3881–3882 (10:9–11:24); 14-SER-3858 (3:7–25), 14-SER-3863 (9:4–18). Allegations that an applicant made false statements about the date of first use are insufficient to state a claim for fraud to cancel a trademark registration where the date of first use proceeded the date of registration. *Pony Exp. Courier Corp. of Am. v. Pony Exp. Delivery Serv*., 872 F.2d 317, 319 (9th Cir. 1989). The district court correctly applied controlling authority in relying on Suhy's concession. 1-SER-0116

-26-

(8:4–18). Consequently, there is no reversible error.

In addition, Suhy did not identify any new or different facts that could cure the admitted legal deficiency. *See* SER-3858 (3:7–25), 14-SER-3863 (9:4–18). Thus, the district court did not abuse its discretion in denying leave to amend on the grounds of ***admitted*** futility. *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) ("district court may deny a plaintiff leave to amend if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency'") (internal citation omitted); *accord* 1-SER-0116 (8:4–18) (citing same).  Suhy's failure to identify such facts in the present appeal is also fatal. *Acosta-Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1993) (issues not supported by argument in pro se appellant's opening brief are deemed abandoned).  This Court, therefore, should affirm.

### B.    The District Court Properly Granted Summary Judgment on Appellees' DMCA Claim

To prevail on a claim for the unauthorized removal or alteration of CMI, plaintiff must establish that defendant: (i) without the permission of the copyright owner or the law; (ii); intentionally removed or altered CMI; and (iii) knowing or having reasonable grounds to know that the removal will induce, enable, facilitate, or conceal copyright infringement. 17 U.S.C. § 1202(b)(1).  Similarly, to prevail on a claim for the distribution of material from which CMI has been removed, plaintiff

must show that defendant (i) without the permission of the copyright owner; (ii) distributed material knowing that CMI "has been removed or altered without authority of the copyright owner or the law;" and (iii) knowing or having reason to know that distributing works without CMI would "induce, enable, facilitate or conceal an infringement." 17 U.S.C. § 1202(b)(3).

Suhy does not assign error to the district court's findings that Appellees satisfied the first prongs of §1202(b)(1) and §1202(b)(3) because it was undisputed that Suhy's alteration and removal of the Neo4j CMI and distribution of Neo4j Sweden's copyrighted source code without the Neo4j CMI was unauthorized. 1-SER-0054 (18:2–23). Likewise, Suhy does not assign error to the district court's finding that Appellees satisfied the second prongs of §1202(b)(1) and §1202(b)(3) because it was undisputed that Suhy intentionally replaced the NSSL with the AGPL thereby removing the Neo4j CMI and distributed that copyrighted source code without such CMI. 1-SER-0054–0055 (18:2–19:7); *see also* 1-SER-0078 (6:2–10, 6:18–26). Instead, Suhy seeks to assign error only to the knowledge and intent prongs of §1202(b)(1) and §1202(b)(3).

### 1. Suhy's Subsequent Stipulated Admissions Cure Any Alleged Error on Summary Judgment

The district court did not err in finding that Suhy knew that his removal of the Neo4j CMI and distribution Neo4j Sweden's copyrighted source code without the

CMI would result in copyright infringement.    At trial, Suhy **stipulated** to intentionally violating §1202(b) of the DMCA:

> Neo4j Sweden owns of all copyrights related to the Neo4j graph database platform, including the source code, and has licensed those copyrights to Neo4j USA.
>
> Neo4j Sweden did not give Mr. Suhy permission to replace the Neo4j Sweden Software License with verbatim copies of the AGPL in the 28 LICENSE.txt files in ONgDB v3.4 and ONgDB v3.5.
>
> Suhy **knowingly** distributed Neo4j® EE source code without the [NSSL] **with the understanding that it would result in the infringement of Neo4j Sweden's copyrights**.

2-SER-0193 (¶¶58–60) (emphasis added).

As recognized by the Supreme Court, "factual stipulations are 'formal concessions ... that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.  Thus, a judicial admission ... is conclusive in the case.'" *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 677–78 (2010) (citation omitted).   Such admissions are binding on appeal.  *United States v. Crawford*, 372 F.3d 1048, 1055 (9th Cir. 2004) (en banc).  Consequently, Suhy cannot argue "on appeal, that the facts were other than as stipulated …." *Martinez*, 561 U.S at 677 (citation omitted); *accord Crawford*, 372 F.3d at 1055.  Accordingly, this Court should disregard Suhy's contradictory arguments and affirm that he violated the DMCA.

-29-

### 2. Suhy Fails to Establish the District Court Abused its Discretion by Following the Law-of-the-Case Doctrine

Suhy argues that the district court "improperly" relied upon the law-of-the-case doctrine to preclude Suhy from arguing Sections 7 and 10 permitted him to remove the Commons Clause as a "further restriction" to negate the knowledge and intent prongs of §1202(b)(1) and §1202(b)(3). AOB at 57-58; 1-SER-0044–0046 at (8:8-10:17); 1-SER-0058–0059 (22:26-23:18). Even if Suhy had not made case-dispositive admissions on this issue, his failure to explain how or why this amounts to an abuse of discretion is fatal to his appeal. *See Acosta-Huerta*, 7 F.3d at 144; *see also W. Watersheds Project v. Abbey*, 719 F.3d 1035, 1042, fn. 2 (9th Cir. 2013) (issues not "clearly articulate[d] in [an] opening brief" are waived).

The record is clear that this Court addressed the same arguments in *Neo4j I* and explicitly (and by necessary implication) affirmed the district court's interpretation of the NSSL. *See* Section C.2, *infra*. Suhy "made no showing that an exception to the doctrine should apply" before the district court and again fails to do so here. *See* 1-SER-0046 (10:8–9). Thus, the district court did not abuse its discretion by following its ***own prior ruling*** on the issue, as well as this Court's express affirmance thereof as the law of the case. *See Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) ("a court is generally precluded from reconsidering an issue previously decided by the same court, or a

-30-

higher court in the identical case."). These issues previously decided in the First MSJ Order and addressed in the first appeal are the law of the case and should not be reconsidered in the present appeal.

### 3. The FSF's Copyright in the AGPL is Immaterial

Suhy again argues that the FSF's copyright in the AGPL created a "material question" as to whether Neo4j Sweden could assert a DMCA claim based on a modified version of a license, i.e. the NSSL. AOB at 54–55. Suhy further argues that its purported violation of that copyright somehow justified his removal of the Neo4j CMI by replacing the NSSL with a generic copy of the AGPL. AOB at 56-57. These arguments are not based on any disputed *material* fact. Instead, Suhy ignores he stipulated that, prior to his removal of the Commons Clause, the FSF told him that any issues with the inclusion of that provision must be taken up with Neo4j Sweden as the copyright holder of Neo4j® EE. 2-SER-0191 (¶33).

The district court found Suhy's claimed pretext of preventing the infringement of the FSF's copyright was ***legally untenable*** because he lacked standing to enforce that copyright. 1-SER-0056–0057 (20:26–21:26). This is consistent with controlling law on standing under the Copyright Act. *See Minden Pictures, Inc. v. John Wiley & Sons, Inc*., 795 F.3d 997 (9th Cir. 2015) (only the copyright owner, assignee or an exclusive licensee of a right enumerated by §106 has standing to bring an

-31-

infringement action). Suhy cites no contrary authority, and thus fails to establish reversible error.

### C.  Suhy Improperly Seeks to Relitigate Issues Resolved in *Neo4j I*

Suhy cannot relitigate *Neo4j I*, in which this Court affirmed the district court's determination that he violated the Lanham Act. This includes Neo4j USA's ownership and validity of the NEO4J Registration, as well as the district court's findings that the statements made by Suhy in promoting ONgDB were false. *See, generally,* AOB at 39–53.

Under the law of the case, "one panel of an appellate court will not reconsider matters resolved in a prior appeal to another panel in the same case." *See Leslie Salt Co. v. United States*, 55 F.3d 1388, 1392 (9th Cir. 1995). This doctrine "applies to issues decided explicitly or by necessary implication in this court's previous disposition." *Id.* at 1393 (internal quotes and citation omitted). This Court made clear that its findings in *Neo4j I* were law of the case. Consequently, as detailed below, law of the case precludes him from relitigating issues adjudicated in *Neo4j I*.

### 1.  This Court Previously Affirmed that Neo4j USA had Standing Under the Lanham Act

Suhy does not argue that the district court erred in finding his uses of the NEO4J Mark violated §1114(1) and §1125(a) of the Lanham Act. Instead, he argues it erred in finding that Neo4j USA had standing thereunder. Suhy cites to Neo4j

-32-

Sweden only giving Neo4j USA a non–exclusive license to the NEO4J Mark and its foreign trademark registrations to argue that Neo4j USA is not the owner of the mark in the United States. AOB at 49–51. Suhy also argues against the presumption of validity of the NEO4J Registration on similar grounds, and that Neo4j Sweden was not a "related company" as defined by 15 U.S.C. §§ 1055, 1127. AOB at 51–53.

The record makes clear, however, that the parties fully litigated the issues of standing and the validity of the NEO4J Registration in *Neo4j I.* 9-SER-2227–2230; 9-SER-2135–2145; 8-SER-2084–2088. This Court then *expressly* found that Neo4j USA had standing as the owner of the NEO4J Registration (and implicitly the validity thereof). *Neo4j I,* 2022 WL 781037, at *1, ¶ 1 and fn **. The Court should not revisit the same issues. *See Leslie Salt*, 55 F.3d at 1392–93.

### 2. This Court Conclusively Affirmed that Sections 7 and 10 of the NSSL Prohibited the Removal of the Commons Clause

Suhy argues that the district court erred in the First MSJ Order by finding statements that ONgDB was a "free and open source" version of Neo4j® EE" were literally false. AOB at 41–42. In particular, he argues that Section 7 allowed him as a licensee to remove the Commons Clause as a "further restriction" and that the

-33-

district court erred by failing to consider the "plain language" of that section.[6]  *Id*. at 42.  SFC similarly argues that the district court erred in interpreting Sections 7 and 10.  Dkt Entry 34.1 (Amicus) at 13–22.  It also dismissively asserts that this Court's affirmance of the district court's interpretation of the NSSL is not the law of the case because it was merely an appeal of a preliminary injunction.  *Id.* at 27.

The appellate record, however, confirms that this Court's affirmance of the district court's interpretation ***is*** law of the case. Defendants' opening brief in *Neo4j I* characterized the district court's interpretation of the NSSL as "inextricably bound up" with the resolution of the summary judgment motion.  *See* 9-SER-2226; *see also* 9-SER-2217 fn. 3. The correctness of the district court's interpretation of Sections 7 and 10 of the NSSL was then thoroughly briefed by the parties. 9-SER-2245–2249; 9-SER-2165–2172; 8-SER-2097–2099.

After considering the parties' arguments, this Court affirmed that "Defendants' representation that ONgDB is a 'free and open-source' version of Neo4j® EE was literally false, ***because Section 7 of the [NSSL] only permits a downstream licensee to remove 'further restrictions' added by an upstream***

---

[6] Suhy mischaracterizes the interpretation of the NSSL as a disputed issue of fact, when it is clearly a question of law. *See United States v. King Features Ent., Inc*., 843 F.2d 394, 398 (9th Cir. 1988).

*licensee to the original work*." *Neo4j I,* 2022 WL 781037, at *1, ¶ 3 (emphasis added). It removed all doubt as to the conclusiveness of this decision by indicating this was now the law of the case. *Id.* at *1, fn **.

Nonetheless, SFC cites *Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1090 (9th Cir. 2013) to argue that "in general" appellate "decisions at the preliminary injunction phase do not constitute the law of the case." Dkt Entry 34.1 at 27. However, this "general rule" is inapplicable here because the preliminary injunction in *Neo4j I* was not at the onset of the case, but the result of a *fully developed* record on summary judgment *after* the close of fact discovery on Neo4j USA's Lanham Act and UCL claims.[7] *See* 14-SER-3840–3844; 14-SER-3822–3827; 1-SER-0081–0082 (9:2–10:2). This Court then necessarily considered the trial court's interpretation of the NSSL as evidenced by its express findings. *Neo4j*

---

[7] Even if the issue was decided at the preliminary injunction phase, this Court's memorandum disposition would still be law of the case since the arguments made here are identical to those previously made. *See Tongass Conservation Soc. v. U.S. Forest Serv.*, 455 F. App'x 774, 776 (9th Cir. 2011) (trial court properly deferred to prior memorandum disposition on issues of law and on issues where plaintiff made identical arguments on identical evidence in that disposition); *accord Comcast of Maine/New Hampshire, Inc. v. Mills*, 988 F.3d 607, 612 (1st Cir. 2021) (under the law of the case doctrine, a panel decision on a preliminary injunction constitutes binding precedent where the record was sufficiently developed); *see also United States v. Schaff*, 948 F.2d 501, 506 (9th Cir.1991) (the law of the case doctrine applies to rulings in prior memorandum dispositions).

*I,* 2022 WL 781037, at *1, ¶ 3.  Thus, Suhy and SFC cannot reargue the same on a subsequent appeal.  *See Leslie Salt*, 55 F.3d at 1392.

*Salazar* also undermines SFC's argument because even in affirming a preliminary injunction, "[a]ny of [the appellate court's] conclusions on pure issues of law … **are binding**."  *Salazar*, 706 F.3d at 1114 (emphasis added). It is well-established that the "interpretation of a contract is a matter of law." *King Features Ent., Inc*., 843 F.2d at 398.  Suhy conceded this on summary judgment.  *See* 1-SER-0096 (24:7–15).  SFC confirms the same.  *See, e.g.*, Dkt Entry 34.1 at 17, 20, 24. Under law of the case, "the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case."  *Herrington v. County of Sonoma,* 12 F.3d 901, 904 (9th Cir. 1993) (internal quotation marks omitted).  The district court's interpretation of the NSSL is therefore the law of the case.

### 3. This Court Previously Affirmed the Falsity of Advertising ONgDB as a "Drop-in" Replacement for Neo4j® EE

Suhy seeks to relitigate the district court's finding that claims that ONgDB was a "drop-in replacement" for commercial licensed distributions of the same version number of Neo4j® EE were false or likely to mislead consumers.  AOB at 42-47.  Suhy argues that "the district court misinterpreted the term "drop-in replacement."  *Id.* at 43.  He further argues that it usurped the role of the jury in finding falsity, while ignoring his testimony that "drop-in replacement" meant

compatibility. *Id.* at 46-47. Suhy also cites to an alleged lack of "empirical evidence" establishing the falsity of the statement, and that testimony on the incompatibility between ONgDB and Neo4j® EE by Philip Rathle, Neo4j USA's Vice President of Products, was merely an opinion. *Id.*

Suhy made identical arguments in his first appeal. *See* 9-SER-2249–2252 (the trial court usurped the role of the jury); *id.* at 40–41 (Rathle's testimony was an unsupported opinion); *id.* at 41–42 (Suhy testified that it meant users could "drop-in" data from Neo4j® EE into ONgDB and run queries). After this Court considered these arguments and those by Appellees, it expressly affirmed that Suhy's claims that ONgDB was a "drop-in replacement" for Neo4j® EE were false and misleading. *Neo4j I,* 2022 WL 781037, at *1, ¶ 3. Accordingly, Suhy cannot now assign error on the same grounds. *See Leslie Salt*, 55 F.3d at 1392.

### D. The District Court Did Not Err in Granting Summary Judgment on Neo4j USA's Lanham Act Claims[8]

Even if Suhy could relitigate the district court's findings in the First MSJ Order that Neo4j USA had standing and the Neo4j Registration is valid, there is still

---

[8] Suhy does not argue in his opening brief that the district court erred in concluding that he was liable for false designation of origin under §1125(a). Besides this Court previously affirming those findings, Suhy has further waived any remaining right to appeal that ruling. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

no reversible error for the reasons discussed below.

### 1. The District Court Correctly Found Neo4j USA had Standing Under the Lanham Act

To have standing to assert a trademark infringement claim under the Lanham Act, Neo4j USA must be "(1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008). The district court correctly held that Neo4j USA had standing based on the undisputed fact that it holds the federal registration for the NEO4J Mark. 1-SER-0084 (12:2-8); *aff'd Neo4j I*, 2022 WL 781037, at *1, ¶ 1.

Although Suhy references this decision on standing, he quickly shifts to arguing *validity* of the NEO4J Registration thereby demonstrating a fundamental misunderstanding of the distinct legal principles of standing versus validity. AOB at 49–50. While he is substantively wrong on validity (*see* Section D.2), those arguments are irrelevant in determining standing. *See Halicki*, 547 F.3d at 1127 (defendant confused the analysis of the merits of plaintiff's infringement claim with whether standing existed).

Properly analyzed, the district court's finding is confirmed by Suhy's prior admission that "Neo4j USA is the registrant of the [NEO4J Mark] in the United States." 9-SER-2227. This forecloses error because the Lanham Act expressly

provides that ***the registrant*** of the NEO4J Mark has standing to sue.[9]  15 U.S.C. § 1114(1); *Halicki*, 547 F.3d at 1226–28 (proof of a registered mark is sufficient to establish standing under the Lanham Act).

Suhy also fails to challenge the district court's alternate finding that even if Neo4j USA were not the registrant, it would still have standing pursuant to §1125(a). 1-SER-0084 (12:9–17).  It is settled that a "valid ownership interest in a mark ... is sufficient, although not necessary, to provide standing to sue for infringement of that mark." *Halicki*, 547 F.3d at 1225.  Thus, the fact that Neo4j USA was also a non-exclusive licensee simply establishes a sufficient commercial interest for it to *also* have standing under §1125(a).  *See, e.g., Adidas America, Inc. v. Athletic Propulsion Labs, LLC*, 120 U.S.P.Q.2d 1303, 2016 WL 3896826, *3–4 (D. Or. 2016) (Adidas America, a nonexclusive licensee of Adidas AG, had standing to sue under §1125(a)).  Because Suhy fails to address this alternate finding on standing, this

---

[9] Suhy's reliance on *Quabaug Rubber Co. v. Fabiano Shoe Co*., 567 F.2d 154 (1st Cir. 1977) offers him no solace. The *Quabaug* court found that the plaintiff-licensee did not have standing to sue under §1114(1) because it was not the registrant of the asserted mark, the opposite of the scenario here.  *Nat'l Licensing Ass'n, LLC. v. Inland Joseph Fruit Co.*, 361 F.Supp.2d 1244, 1254 (E.D. Wash. 2004) is distinguishable. In that case, the court rejected plaintiff's argument that because the registrant assigned it the right to sue, plaintiff had standing as a "legal representative." *Id.* at 1255–56. Suhy did not argue this because Neo4j USA, as the registrant, has the right to assert a claim.

Court must affirm.  *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.,* 926 F.3d 528, 533 (9th Cir. 2019) (failure to address district court's standing determination on appeal waived the issue)*; see also See Smith*, 194 F.3d at 1052 ("arguments not raised by a party in its opening brief are deemed waived").

### 2.   The NEO4J Registration is Valid

#### a.   Suhy Fails to Assign Error to the Legal Framework Used by the District Court to Determine Validity

Suhy argues that the district court erred in finding that Neo4j USA owned a valid registration for the NEO4J Mark.  Nothing warrants a reversal of that finding. Suhy's prior judicial admission that "Neo4j USA is the registrant of the mark in the United States" (9-SER-2227) creates a strong presumption of ownership and validity.  *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014); *accord* 1-SER-0085–0086 (13:19-14:6) (citing same); *see also Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1115 (9th Cir. 2010) (finding "the presumption of validity is a strong one, and the burden on the defendant necessary to overcome that presumption at summary judgment is heavy").  Suhy does not address the legal framework used by the district court, including its proper reliance on Federal Circuit authority.  1-SER-0087–0089 (15:20-17:4); *see Secular Organizations for Sobriety, Inc. v. Ullrich*, 213 F.3d 1125, 1131 (9th Cir. 2000) (citing Federal Circuit authority in applying the related companies doctrine).

-40-

Under such authority, the district court correctly held that it is not *required* to determine ownership of a mark as between a parent and wholly owned subsidiary when deciding whether registration of the mark was valid. 1-SER-0088–0089 (16:25–17:4) (citing *W. Fla. Seafood, Inc. v. Jet Restaurants, Inc.*, 31 F.3d 1122 (Fed. Cir. 1994)). Suhy is also silent on its finding that the Federal Circuit rejected the very argument made by him "that a trademark registered by a parent company could be invalidated simply based on the fact that the company's wholly owned subsidiary technically owned the marks." 1-SER-0087–0088 (15:20–16:24) (citing *In re Wella A.G.*, 787 F.2d 1549 (Fed. Cir. 1986) ("*Wella I*"), *In re Wella A.G.*, 858 F.2d 725 (Fed. Cir. 1988) ("*Wella II*")).

Lastly, Suhy does not address the district court's reliance on the TMEP, which states that the USPTO "will consider the filing of the application in the name of either the parent or the subsidiary ***to be the expression of the intention of the parties as to ownership in accord with the arrangements between them***." TMEP § 1201.03(b) (emphasis added); 1-SER-0089 (17:5–12).[10]     Against this

---

[10] The district court cited to §1201.03(c) from the 5th Edition of the TMEP. Between the time Neo4j USA filed the application for the NEO4J Mark in April 2014 and issuance of the registration in August 2015, the TMEP was revised several times, where the cited provision remained the same but was renumbered as §1201.03(b). *See* INDEX TO CHANGES IN TMEP JANUARY 2015.

-41-

unchallenged legal framework, the district court's holding that Suhy failed to overcome the strong presumption that Neo4j USA was the owner of the NEO4J Mark in the United States at the time of registration was correct and should be (again) affirmed. 1-SER-0085–0086 (13:23–14:2).

> **b.** **Suhy's Reliance on the Intercompany License Fails to Overcome the Strong Presumption of Validity**

Suhy asserts that the district court erred in relying on the related-companies doctrine because "Neo4j Sweden—the true owner of the mark—did not control Neo4j USA's use of the mark." AOB at 49-50. This ignores both the district court's findings, as well as the strong presumption of ownership that Suhy concedes. 9-SER-2227. To overcome this presumption, Suhy points to the intercompany license agreement between Neo4j USA and Neo4j Sweden. AOB at 50-51. Yet, he ignores the district court's analysis thereof.

The district court evaluated the license agreement, finding that it was not dispositive of Appellees' intent because it was executed six years *before* the registration. 1-SER-0086–00879 (14:15–15:2). Relying on the TMEP, it correctly concluded that "while the License Agreement tends to show that Plaintiffs considered Neo4j Sweden to be the owner of the Neo4j Mark in 2010, the fact that Neo4j USA registered the mark tends to show that the parties considered Neo4j USA to be the owner of the mark in 2015." 1-SER-0089 (17:5–18) (citing TMEP §§

1201.01, 1201.03(b)).  Suhy is silent on these findings.

Suhy also ignores the district court's finding that he confirmed Neo4j USA's ownership of the NEO4J Mark when he executed a non-exclusive license thereto on behalf of PureThink.  1-SER-0089 (17:16–18); 10-SER-2589 (Ex. 4 at §4.1).  Suhy offers no rebuttal to this admission.

Suhy's effort to address the "related companies" doctrine misapprehends the rule.[11]  AOB at 51.  The district court correctly set forth the doctrine by citing to TMEP § 1201.01.  1-SER-0089–0090 (17:19–18:1).  It also made unchallenged findings that "Neo4j USA wholly owns and controls Neo4j Sweden … did so at the time of registration [record citations]" and that "Neo4j USA is [] the only party who exercises control over the mark in the United States."  1-SER-0074 (2:15–16); 1-SER-0089 (17:22–24); *accord* 10-SER-2473–2479 (¶1, ¶¶3–5, ¶¶19–22).  Suhy's silence on this undisputed evidence is best explained by his prior concession: "[Neo4j Sweden] creates software packages . . . which its parent, [Neo4j USA], distributes and services in this country."  9-SER-2210.

These findings and related undisputed facts are amplified by *Wella II,* which

_____

[11] Suhy applies the test incorrectly—starting off with the conclusion he seeks (Neo4j Sweden's ownership) with no citation to evidence or law.

recognized that because a parent owns the stock of the subsidiary, it controls the subsidiary's actions and thus is the "same source" such that there is no likelihood of confusion, permitting concurrent registration. 858 F.2d at 728–29. *Wella II* is consistent with TMEP § 1201.07(b)(i), which provides "[i]f the applicant … represents that *either* the applicant or the registrant owns *all* of the other entity, and there is no contradictory evidence, then the examining attorney should conclude that there is unity of control, a single source, and no likelihood of confusion." (emphasis in original); *see also* TMEP § 1201.07(b)(ii). Suhy presents "no contradictory evidence" – here or below. He also does not address ownership in the context of validity at the time of registration, and does not address the *Wella* cases.[12]

Suhy's reliance on *Noble House Home Furnishings, LLC v. Floorco Enterprises, LLC*, 118 U.S.P.Q.2d 1413, 2016 WL 3357265 (T.T.A.B. 2016), is misplaced. AOB at 51–52. First, *Noble House* is an abandonment case. Second, the registrant there was the subsidiary (not the parent as here). When analogized, *Noble House* supports the district court's interpretation. The Board observed that, due to

_____

[12] Suhy's reliance on *Allard Enterprises, Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350 (6th Cir. 1998) to argue that registration does not confer ownership is misplaced. AOB at 51-52. This non-controlling case merely addresses whether a competitor's prior use of a mark established priority over plaintiff's registration for that mark. *Allard,* 146 F.3d at 356–59.

the parent's overall control, "the parent corporation—not the subsidiary whose every decision it controls—better fits the bill as the true owner of any [trademark] property that the subsidiary nominally possesses." *Noble House*, 118 U.S.P.Q.2d at 1421*Id.* (citing *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 298–99 (1988) (Brennan, J., concurring in part and dissenting in part)).

In *Noble House,* not only was the parent ***not*** the registrant (and presumptive owner), but the non-registrant parent also (1) used the mark; (2) controlled the subsidiary-registrant (and not vice-versa); (3) had no license or similar agreement with the registrant concerning use of the mark; and (4) controlled the nature and quality of the products. 118 U.S.P.Q.2d at 1420–22. Thus, *Noble House* presents nearly the *mirror image* of the scenario here, where Neo4j USA is the undisputed (1) parent-registrant and user of the NEO4J Mark in the United States; (2) controller of non-registrant Neo4j Sweden; (3) licensee of the mark; and (4) controller of the nature and quality of the products. Neo4j USA is thus the owner of the NEO4J Mark in the United States, and the registration thereof is valid.

## E. The District Court Correctly Found that Suhy Engaged in False Advertising

A false advertising claim under §1125(a) requires proof that (1) defendant made a false statement of fact in a commercial advertisement about its own or another's product; (2) the statement actually deceives or has the tendency to deceive

a substantial segment of its audience; (3) the deception is material; (4) defendant caused the false statement to enter interstate commerce, and (5) plaintiff has been or is likely to be injured as a result of the false statement. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

The district court found Suhy engaged in false advertising by making: "(1) statements that ONgDB and Neo4j Enterprise are 'free and open source' versions of or alternatives to commercially licensed Neo4j EE; and (2) statements that ONgDB is a 'drop-in replacement for an existing commercial licensed distribution of the same version number' of Neo4j EE." 1-SER-0096–0102 (24:1–30:13). Suhy attempts to assign error to the findings on falsity, materiality, and deception (AOB at 45-46), but only argues the issue of falsity (AOB at 41–45), thereby waiving the right to appeal the other elements. *Smith,* 194 F.3d at 1052.

### 1. The District Court Did Not Err in Finding Suhy's Claims that ONgDB was "Free and Open-Source" Were False

The district court found that Appellants' representations regarding ONgDB as "free and open source" versions of Neo4j® EE were false because the plain language of the NSSL did not permit them to remove the Commons Clause. 1-SER-0096–0097 (24:7-25:19). Suhy previously conceded that the falsity of these "free and open source" statements hinged on the interpretation of Sections 7 and 10 of the NSSL under California law. 1-SER-0096 (24:11–15); 9-SER-2246–2247.

-46-

Suhy waived any alleged error in the trial court's interpretation after stipulating at trial that his removal of the Commons Clause violated the NSSL. 2-SER-0193 (¶¶ 58–60) (emphasis added). The Court need not go any further to reaffirm the falsity of Suhy's "free and open source" claims. *See Martinez*, 561 U.S. at 677–78 (courts will not "consider a party's argument that contradict[s] a joint stipulation") (citations and internal quotation marks omitted). Even if Suhy could reargue this issue, he still fails to establish any reversible error by the trial court.

### a.    The District Court Correctly Interpreted the NSSL

Seeking to establish error, Suhy and SFC first argue that the definition of "free and open source" software in the preamble of the NSSL conflicts with the commercial restrictions imposed by the Commons Clause (and the district court's interpretation that Sections 7 and 10 allowed Neo4j Sweden to include it). AOB at 41–42; Amicus at 9–12, 19–20, 22. Suhy made no such argument before the district court or in *Neo4j I*. *See* 10-SER-2403–2406 (27:18–30:16); 9-SER-2264–2265 (7:12–8:11); 5-SER-1019–1024 (11:18-16:25). As such, this Court should not consider it for the first time. *See In re Am. W. Airlines, Inc*., 217 F.3d 1161, 1165 (9th Cir. 2000). Even so, the preamble of the NSSL is not controlling over the specific provisions therein. *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885 (9th Cir. 2003) ("when [contractual] provisions are inconsistent, specific terms

-47-

control over general ones").

Suhy and SFC then argue that Section 7 allowed Suhy as a licensee to remove the Commons Clause as a "further restriction." AOB at 42; Amicus at 15–17. In support, they cite the clause "If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term." *Id*. However, this must be interpreted within the contract as a whole "so as to give effect to every part if reasonably practical, each clause helping to interpret the other." Cal. Civ. Code § 1641; *accord Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033, 1039 (9th Cir. 2011). Section 7 more broadly states:

> Notwithstanding any other provision of this License, for material *you* add to a covered work, *you* may (if authorized by the copyright holders of that material) supplement the terms of this License with [the following six additional] terms ….
>
> * * *
>
> All other non-permissive additional terms are considered "*further restrictions*" *within the meaning of section 10*. If the Program as *you* received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a *further restriction*, *you* may remove that term.

6-ER-1411–1412 at §7 (emphasis added).

Notably, the excerpt cited by them is preceded by the following in Section 7: "Notwithstanding any other provision of this License, **for material you add to a**

-48-

*covered work*, *you* may (if authorized by the copyright holders of that material) supplement the terms of this License with terms: [six enumerated terms omitted]…." See 6-ER-1408 at §7 (emphasis added). The NSSL expressly defines "you" as *the licensee*. *Id.* at §0 ("'The Program' refers to any copyrighted work under this License. Each licensee is addressed as 'you'"). Thus, when read in full, Section 7 clearly governs the actions of licensees alone, *ergo* the repeated use of the defined term "you," and the fact that subject matter of this section pertains to what additional permissions and restrictions *licensees* may place on a covered work when adding source code and redistributing it as required by the license.

The clause cited by Suhy and SFC is also immediately preceded by a clause stating that a licensee who adds material to the original work may add any of the six enumerated "additional restrictions" and that any other "non-permissive additional terms" are "further restrictions" *as defined by Section 10*. 6-ER-1411–1412 at §7. In this regard, Section 10 makes clear that only licensees are precluded from adding further restrictions: "*You* may not impose any further restrictions on the exercise of the rights granted or affirmed under this License." *See id.* at §10 (emphasis added). Since the NSSL defines "you" as the licensee, the district court correctly concluded it only prohibits *licensees*, such as Suhy, from imposing further restrictions, but does not prohibit Neo4j Sweden as the copyright holder and *licensor* of the Neo4j® EE

-49-

from doing so in the first instance.  *See* 1-SER-0096–0097 (24:21-25:12) (citing *Neo4j, Inc. v. Graph Found., Inc.*, 2020 WL 6700480, at *4).

SFC then alone argues that the district court misinterpreted Section 10. Amicus at 17–20.  Suhy does not assign error to the district court's interpretation of Section 10, however, thereby waiving the issue.  *Smith*, 194 F.3d at 1052.  The Court should, therefore, disregard SFC's arguments. *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 (9th Cir. 2009) ("[a]n amicus curiae generally cannot raise new arguments on appeal); *Swan v. Peterson*, 6 F.3d 1373, 1383 (9th Cir. 1993) ("[g]enerally, we do not consider on appeal an issue raised only by an amicus").  Even if Suhy had properly challenged this issue on appeal, the district court's interpretation stands correct.

SFC's reading of Section 10 runs contrary to the express definition of "you" in the NSSL. It also results in the absurdity of "you" meaning both the licensor (Neo4j Sweden) and the licensee (Suhy), which is impermissible.  As noted above, Section 10 makes clear that only licensees are precluded from adding further restrictions. The district court thus correctly harmonized these provisions, finding that Section 7 only permits a ***downstream licensee*** to remove "further restrictions" placed by an ***upstream licensee*** that has added to the original Program, which do not fall within the six enumerated additional terms.  *See Graph Found.*, 2020 WL

-50-

6700480, at *3–4; *accord Neo4j I,* 2022 WL 781037, at *1, ¶ 3.

### b. Neo4j Sweden's Intent as the Copyright Holder and Licensor Controls the Interpretation of the NSSL

SFC argues that the district court failed to consider that the commercial restrictions imposed by the Commons Clause contradicts Section 4's allowance of charging per copy (Amicus at 22–25), while also arguing the intent of the AGPL "is to make software free not only in terms of price, but in terms of principle" (*id.* at 10, 25–26). Suhy asserted no such arguments for the district court to consider. *See* 10-SER-2403–2406 (27:18–30:16); 9-SER-2264–2265; 5-SER-1019–1024 (11:18–16:25). SFC's arguments are thus not properly before this Court. *See Zango,* 568 F.3d at 1177; *Swan,* 6 F.3d at 1383. Nevertheless, SFC cannot have it both ways— either the AGPL makes software licensed thereunder "free," or it does not.

Moreover, any alleged conflict with the intent of the FSF and SFC's speculation thereon are also irrelevant. Only Neo4j Sweden's intent as the licensor of Neo4j® EE matters. *See* Cal. Civ. Code §§ 1636, 1639. Likewise, any perceived internal conflict within the provisions of the NSSL must be resolved in favor of Neo4j Sweden's undisputed express intent. *See* Cal. Civ. Code § 1653 ("[w]ords in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected."). In this regard, SFC's arguments run contrary to Neo4j Sweden's express intent to preclude others from commercially benefiting

-51-

from Neo4j® EE under the ***plain*** terms of the Commons Clause. *See* 10-SER-2514 (Ex. 3) ("'Commons Clause' License Condition … "the grant of rights under the License will not include, and the License does not grant to you, the right to Sell the Software"); 10-SER-2476–2477(¶12) ("Neo4j Sweden added the Commons Clause to the license for NEO4J® EE to prevent third parties… from monetizing such software while not contributing back to the companies who are producers of the software"); *see also* 10-SER-2477 (¶13) and 10-SER-2522–2532 (Ex. 4).

The district court thus correctly concluded that Neo4j Sweden as the copyright holder had the exclusive right to control the use of its copyrighted code under the licensing terms of its choosing. *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011) ("copyright owners may choose to simply exclude others from their work" or "use their limited monopoly to leverage the right to use their work on the acceptance of specific conditions"); *accord* 1-SER-0097 (25:2–10) (citing same). This is also consistent with "'[c]opyright holders who engage in open source licensing hav[ing] the right to control the modification and distribution of copyrighted material.'" *Apple*, 658 F.3d at 1159 (*quoting Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008)); *accord* 1-SER-0097 (25:2–10) (citing same).

Further, controlling authority that holds a licensor's intent to limit the commercial use of its software should be given effect as intended by the licensor,

-52-

not a licensee.  *See Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1091 (9th Cir. 2005) (giving effect to language limiting commercial use in a license agreement that "sought to prevent competitors from benefitting from its software"); *Micro Star v. Formgen Inc.*, 154 F.3d 1107 (9th Cir. 1998) (license term allowing users of a computer game to develop enhancements, but barring the resale of the enhancements for a profit, was enforceable).  Any perceived conflict between terms in the NSSL must be resolved in Neo4j Sweden's favor as the copyright holder and licensor of that software.

Finally, a court has a duty to construe a contract to avoid a forfeiture. *Milenbach v. C.I.R.*, 318 F.3d 924, 936 (9th Cir.2003) ("[w]here there are two possible interpretations of a contract, one that leads to a forfeiture and one that avoids it, California law requires the adoption of the interpretation that avoids forfeiture, if at all possible"); *accord Universal Sales Corp. v. Cal., Press Mfg. Co*., 20 Cal.2d 751, 771 (1942). As detailed above, accepting SFC's interpretation would result in a forfeiture of Neo4j Sweden's right as the copyright holder to license Neo4j® EE as it sees fit.  As such, the district court's interpretation (and this Court's subsequent affirmation thereof in *Neo4j I*) was and remains correct.

### 2.  Suhy's Assertions that ONgDB was a "Drop-In Replacement" Were False and Misleading

To demonstrate falsity under the Lanham Act, "a plaintiff may show that the

statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms*, 108 F.3d at 1139. The district court found the undisputed record evidence concerning statements that ONgDB was a "drop-in" replacement for Neo4j® EE met this standard in both respects. 1-SER-0097–0100 (25:20–28:16). Suhy points to no evidence allowing a reasonable jury to conclude otherwise.

First, the district court found Suhy's representations that post-ONgDB v3.5.4 releases were "drop-in replacements" for equivalent versions of Neo4j® EE were both false and misleading based on his ***own interpretation*** of what they meant by "drop-in replacements," i.e. mere compatibility. 1-SER-0097–0098 (25:20–26:11) (citing 11-SER-2731 (Ex. 31 at 160:9–14); *accord* AOB at 42–43 (citing same evidence). Suhy cites no record evidence refuting that a jury would find consumers understood his statements as assuring ONgDB's compatibility with Neo4j® EE. *See* 1-SER-0080–0081 (8:13-9:1); 1-SER-0100 (28:12–16). Premised on Suhy's meaning of "compatibility," the record evidence supported the district court's finding that these claims were false or misleading with respect to ONgDB versions 3.5.5 and later, because neither Suhy nor GFI could verify ONgDB's compatibility with Neo4j® EE. 1-SER-0098 (26:12–24).

-54-

It was undisputed that Appellees officially released Neo4j® EE v.3.5 solely under a commercial license and did not publish any of the underlying source code. 10-SER-2477 (¶¶13–14); 10-SER-2482–2483 (¶¶33–34). GFI confirmed that, after ONgDB v3.5.4, it could not "reliably guarantee that it was a drop-in replacement" for Neo4j® EE and was unwilling to do the necessary testing to make such integration and compatibility guarantees because it became "too hard to demonstrate." 11-SER-2750–2753 (Ex. 31 at 186:24–188:17, 188:23–189:23). Suhy offered no evidence to the contrary. *See* 1-SER-0098 (26:2–24). Despite there being no way to guarantee compatibility without access to the closed Neo4j® EE source code of the same version, Suhy continued to make drop-in replacement claims for later versions. *See, e.g.,* 13-SER-3270–3273 (Ex. 46); 13-SER-3384–3395 (Exs. 68-69 [green highlights]); 13-SER-3404–3406 (Ex. 72); 13-SER-3410–3413 (Ex. 74); 13-SER-3478–3480 (Ex. 100).

Thus, the district court correctly concluded that Suhy's representations that the equivalent post-ONgDB v3.5.4 versions were "drop-in replacements" for the same versions of Neo4j® EE were demonstratively false or misleading because

-55-

Appellants could not verify compatibility.[13]    1-SER-0098 (26:12–24); *see also EFCO Corp. v. Symons Corp.*, 219 F.3d 734 (8th Cir. 2000) (defendant proven to falsely claim that its product was compatible and interchangeable with plaintiff's product).  Suhy fails to address this undisputed evidence, and thus fails to show error.

Second, the district court found that "drop-in replacement" statements were also likely to mislead or confuse consumers by falsely implying that ONgDB "has all the enterprise features" and is essentially the same software as Neo4j® EE.  1-SER-0099–0100 (26:25-28:16). The district court reached this conclusion based on numerous examples of Suhy's representations to consumers.  1-SER-0099–0100 (27:6–28:11) (citing 10-SER-2656–2664 (Ex. 19); 11-SER-2671–2673 (Ex. 21); 12-SER-3260–3266 (Exs. 43–44); 13-SER-3270–3273 (Ex. 46); 13-SER-3325–3334 (Ex. 62); 13-SER-3378–3383 (Ex. 67).

The record evidence supported the district court's finding that iGov's "drop-in replacement" statements were false or misleading (1-SER-0098–0099 [26:25–

---

[13] Suhy suggests the district court erred because Neo4j USA failed to offer empirical evidence showing incompatibility between Neo4j® and ONgDB.  AOB at 47. Aside from GFI's fatal admission that it could not verify compatibility, Appellees offered uncontested evidence of incompatibility issues thereby establishing actual deception.  *See* 1-SER-0080 (8:17–23) (citing 13-SER-3527–3529 [Ex. 115]); 13-SER-3551–3561 (Exs. 121–124); 1-SER-0100 (28:18-24) (citing same).

27:7]) because ONgDB *was not* identical, essentially the same, or had all of the Neo4j EE features (1-SER-0099–0100 [27:6–28:16]). It is undisputed that ONgDB was not 100% identical to and did not include every closed enterprise feature equivalent to Neo4j® EE. 1-SER-0097–0100 (26:2–8) (citing 11-SER-2858 [Ex. 38 at 17:15–19]); *see also* 11-SER-2843–2847 (Ex. 38 at 2:12–17, 4:15–22, 5:4–6:21); 10-ER-2295–2299 (124:2–126:23, 127:19–128:17); 11-SER-2729–2736 (Ex. 31 at 158:18–163:5, 163:13–165:6). Here too, Suhy ignores his undisputed statements falsely implying that ONgDB was essentially the same software as equivalent versions of Neo4j® EE. 1-SER-0099–0100 (27:8–28:11); *accord* 11-SER-2671–2673 (Ex. 21); 12-SER-3260–3266 (Exs. 43–44); 13-SER-3274–3276 (Ex. 47); 13-SER-3378–3395 (Exs. 67-69 [green highlights]); 13-SER-3401–3412 (Exs. 71-74); 13-SER-3417–3419 (Ex. 76); 13-SER-3478–3480 (Ex. 100); 13-SER-3486–3488 (Ex. 103).

Suhy only raises objections to the Rathle declaration – ironically evidence *not* cited by the district court for this point. AOB at 47. But his arguments evince no contrary facts—especially given the admissions cited by the district court, and the aforementioned evidence that reinforces Rathle's testimony. *Compare* 1-SER-0097–0098 (25:25–26:1) (no argument that ONgDB was of same quality or offered all features); 1-SER-0098 (26:2–4) (same, citing Suhy-verified interrogatory response);

*with* 10-SER-2481–2483 (¶¶ 29–34). Therefore, the district court correctly found Suhy's statements that ONgDB was a "drop-in replacement" for Neo4j® EE were false and misleading.

### F. The District Court's Damages Award was Neither Clearly Erroneous nor an Abuse of Discretion

#### 1. The Record Evidence Establishes Proximate Causation

Suhy claims error in the district court's award of $597,000 in lost licensing revenue when the MPO chose ONgDB over Neo4j® EE based on an alleged lack of causation. AOB at 19–26. Suhy's arguments solely focus on the district court's determination that his false advertising caused those damages.

However, Suhy does not assign error to the district court's findings that the same damages were caused by Suhy's infringement of the NEO4J Mark and DMCA violation. *See* 1-SER-0007–0009 (4:11–6:19); 1-SER-0018–0019 (15:3-16:27). Thus, there are alternative grounds for this Court to affirm the damages award. *See United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) (where appellant attacks only one of several bases of a decision, appellant waives the right to challenge the alternative bases thereof).

Even if the issue of causation were properly before this Court, Suhy ***stipulated*** that his false advertising of ONgDB as "free and open source" Neo4j® EE ***induced*** the MPO to adopt ONgDB for free rather than pay for a commercial license to

Neo4j® EE.  2-SER-0143–0145 (¶¶1–14).  He cannot now argue a contrary position.  *See Martinez*, 561 U.S. at 677-78; *Crawford*, 372 F.3d at 1055.

The record evidence reinforces the district court's finding that Suhy's false advertising caused the MPO and Next Century, the contractor responsible for selecting the software for the MPO, to adopt ONgDB over Neo4j® EE. *See, e.g.,* 16-SER-3973–3983;  12-ER-2571  (74:4–24),  13-ER-2840-2843  (350:10–353:1);  2-SER-0207–0208; 3-SER-0511–0532 (Ex. 4 at 42:16–48:10, 49:18—51:14, 51:23–25, 54:7–56:21, 57:9 60:15, 60:19–20; 60:25–65:17); 16-SER-3984–4002 (TX104, TX105, TX106, TX107, TX108).  This uncontested evidence exceeds what is necessary to support causation for a competitive false advertising claim. *See LexMark Intern., Inc. v. Static Control Components, Inc*. 572 U.S. 118, 137–38 (2014) ("diversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising").

## 2. The Record Evidence Supports the Amount of the District Court's Damages Award

Suhy next argues that the $597,000 award was "unduly speculative" because the district court relied on a non-final quote and speculated that MPO was willing to

purchase a 3-year license for Neo4j® EE. [14]  AOB at 27–33.  However, the district court correctly assumed that the MPO would have purchased a license but for Suhy's wrongdoing.  *See Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1088 (9th Cir. 2014) ("[h]ypothetical-license damages assume rather than require the existence of a willing seller and buyer").  Suhy also stipulated to this fact. 2-SER-0145 (¶16).

Suhy's stipulation to Appellees' lost licensing revenue from the KMS Project ranging between $1,786,542 and $2,354,145 also undermine his argument.  2-SER-0145 (¶17); 2-SER-0146 (¶¶21–24).  He further stipulated that if ONgDB had not been a free alternative, the MPO was willing to pay for a commercial license for Neo4j® EE.  2-SER-0145 (¶18); 2-SER-0199 (¶124).  These judicial admissions negate any notion that the district court's award for a significantly *lower* amount was an abuse of discretion.  *See Martinez*, 561 U.S. at 677–78; *see also Grinder v. S. Farm Bureau Cas. Ins. Co.*, 590 F.2d 741, 744 (8th Cir. 1979) (defendant cannot argue on appeal that plaintiff failed to offer evidence of damages after voluntarily entering into stipulation as to damages at trial).

---

[14] Suhy misapplies *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105 (9th Cir. 2012) in arguing that the district court's damages award was not based on substantial evidence.  AOB at 27-28.  However, such awards are reviewed for an abuse of discretion.  *Id.* at 1110.

Contrary to Suhy's arguments, the district court accounted for Neo4j USA's proposal not being final and that the full amount quoted might not be in the MPO's budget.[15]  *Compare* 1-SER-0020–0021 (17:6–18:8) *with* AOB 28–29.  The record evidence confirms the MPO used ONgDB in the KMS Project and its successor, Road Rally/Route 66, through at least October 2022.  2-SER-0207–0208, 3-SER-0575–0578 (Ex. 4 at 114:11–117:5), 3-SER-0581–0582 (Ex. 4 at 126:12–127:23); 1-SER-0012 (9:5–8) (citing same).   The MPO also purchased a $248,310 subscription to Neo4j® EE for another project, and two subsequent renewals, for a total of $744,930 over three years.  12-ER-2627-2628 (133:15–134:9), 18-SER-4536—4537 (175:18–176:15), 18-SER-4527 (TX 15 [AEO-sealed]); *accord* 1-SER-0012 (9:9–12).   Consequently, the district court's awarding the *lesser* amount of $597,000 for a three-year period was not an abuse of discretion, given Appellees' lower burden of proof under the Lanham Act in calculating the exact amount of actual damages. *Skydive Arizona*, 673 F.3d at 1112.

Finally, Suhy fails to appreciate that the Lanham Act "confers a wide scope of discretion upon the district judge in fashioning a remedy." *Jason Scott Collection*,

---

[15] Next Century also confirmed that the MPO's budget could be modified to pay for a commercial license. 2-SER-0207–0208, 3-SER-0568–0570 (Ex. 4 at 106:14–108:1, 108:6–108:19).

68 F.4th at 1220.  At no point does Suhy show a total absence of evidence rationally supporting the district court's $597,000 award.  As a result, this Court should affirm.

### 3. Suhy's Remaining Arguments Do Not Establish an Abuse of Discretion

Suhy asserts several scattershot arguments that are either contrary to the record evidence or his stipulation to Appellees' damages.  First, Suhy argues that cost considerations were irrelevant and that the MPO did not need enterprise-only features. AOB at 21–22.  However, he stipulated that the MPO choose improperly licensed ONgDB over Neo4j® EE *because* the enterprise-only features the MPO needed were free.  2-SER-0197 (¶111); 2-SER-0144–0145 (¶¶7–14); *accord* 1-SER-0010–0011 (7:6–8:8); 1-SER-0018–0019 (15:17–16:13).  Thus, he cannot establish error. *See Martinez*, 561 U.S. at 677–78; *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106–1107 (9th Cir. 2013) (price is material to purchasing decisions in false advertising cases).

Next Suhy argues that MPO relied upon misrepresentations made by GFI, and not Suhy. AOB at 23–26, 32.  Again, Suhy stipulated to the contrary.  2-SER-0144 (¶¶3–10); *accord* 1-SER-0008–0009 (5:17–6:15); *see also* 16-SER-3989–3995 (TX106–TX107) and 2-SER-0207–0208, 3-SER-0521–0529 (Ex. 4 at 54:7–56:21, 57:9–60:15, 60:19–20; 60:25–62:12).

Finally, Suhy argues that the Commons Clause was not applicable to the MPO

because it does not engage in resale and commercial consulting.  AOB at 22–23.  This ignores that Next Century was acting as a reseller and was providing the MPO such services, which Suhy admits violates the Commons Clause.  2-SER-0144 (¶7); 2-SER-0193 (¶60); *see also* 1-SER-0078 (6:18–26).  Thus, there was no abuse of discretion by the district court.

### G.    Suhy Fails to Establish Error in the Evidentiary Rulings Below

#### 1.    The District Court Properly Excluded the FSF Letter

Suhy previously moved to supplement the appellate record with a cease and desist letter dated November 13, 2023 from the FSF, which was produced in the middle of trial (proposed Trial Exhibit 1108).  *See* Dkt Entry 13.1.  After Appellees opposed (Dkt Entry 14.1), Suhy withdrew his motion (Dkt Entry 16.1), thereby conceding that the district court's exclusion of that document was correct.  Suhy now improperly argues that the letter was admissible, but fails to establish any abuse of discretion for at least three reasons.

First, the FSF's interpretation of the AGPL (and the NSSL) as of November 2023 is irrelevant to Suhy's state of mind in 2019 when he violated the DMCA by removing the Neo4j CMI.  1-SER-0078–0079 (5:24–6:26); 2-SER-0193 (¶¶58–60); *cf*. AOB at 61–62.  More importantly, Suhy's (former) counsel conceded that it was inadmissible for this purpose.  13-ER-2686-2688 (196:21–197:9, 198:12–24).

Second, it is undisputed that the FSF letter was not before the district court at summary judgment on Appellees' DMCA claim. Consequently, there was no "impact" on the granting of that motion. *See Daly-Murphy v. Winston*, 837 F.2d 348, 351 (9th Cir. 1987) (denying plaintiff-appellant's request to add investigative report to the record where "the report was not considered by the trial court because it was submitted after the summary judgment hearing"); *cf.* AOB at 66–67.

Lastly, the district court correctly found that the FSF's views about the NSSL was inadmissible hearsay. 13-ER-2683-2684 (193:10–194:1), 13-ER-2688-2692 (198:12–202:13). Notably, Suhy did not raise any of the exceptions below he now argues on appeal. AOB at 67. Hearsay exception Fed. R. Evid. 803(3) does not apply because the FSF's state of mind four years *after* Suhy violated the DMCA is irrelevant. *United States v. Ponticelli,* 622 F.2d 985, 991 (9th Cir. 1980), *cert. denied*, 449 U.S. 1016 (1980), *overruled on other grounds by United States v. DeBright,* 730 F.2d 1255, 1259 (9th Cir. 1984) (determining relevance of the hearsay statement before addressing an exception). Likewise, Suhy does not establish each element required by Fed. R. Evid. 803(6), including establishing foundation. Finally, Fed. R. Evid. 803(8) does not apply because a letter sent by a private organization is not a public record.

-64-

### 2.     The District Court Properly Excluded Kuhn's Proposed Expert Testimony

Suhy argues that the district should not have excluded Kuhn's opinions, which supported Suhy's interpretation of the NSSL, because it was essential to his defense of the DMCA claim.[16]  AOB at 63.  However, he does not explain how this amounted to an abuse of discretion. AOB at 58, 63–65.  Suhy has thus waived any remaining right to appeal that ruling.  *Acosta-Huerta*, 7 F.3d at 144; *Abbey*, 719 F.3d at 1042, fn. 2.  Even if Suhy had argued this issue, as discussed above in Section C.2, the district court's reliance on the law of the case to exclude Kuhn's opinions interpreting the NSSL was not an abuse of discretion because such issues were conclusively resolved in *Neo4j I*.  *See* 1-SER-0045–0046 (9:1–10:17).

The district court did not abuse its discretion excluding Kuhn's opinions that Suhy's actions were customary and permissible within the free software community and opinions on the interpretation of the NSSL. 1-SER-0048–0049 (12:1–13:3). It is elementary that experts cannot provide legal opinions or interpret contracts.  *See,*

---

[16] Suhy also claims that Kuhn could establish that Neo4j Sweden did not own the copyright to all of the source code subject to the NSSL.  AOB at 63–64.  However, Suhy stipulated to Neo4j Sweden owning "***all*** copyrights related to … the source code." 2-SER-0193 (¶58). The district court also correctly excluded his opinion as an improper legal conclusion.  1-SER-0048–0049 (12:5–25, 13:11–16).

*e.g., McHugh v. United Serv. Auto. Ass'n,* 164 F.3d 451, 454 (9th Cir. 1999) ("[expert] testimony cannot be used to provide legal meaning or interpret the [contracts] as written"); *accord* 1-SER-0048 (12:5–15) (citing same). Suhy even concedes that "the district court is the ultimate authority on interpreting legal documents." AOB at 61. This Court should therefore affirm the district court's exclusion of Kuhn's opinions.

### H.    The District Court Did Not Err in Granting Summary Judgment on PureThink's Breach of Contract Counterclaim

As an initial matter, and as detailed in Appellees' opposition to Suhy's Motion to Substitute Party (Dkt Entry 20), this Court lacks jurisdiction over matters relating to PureThink because it failed to timely file a notice of appeal. Appellees' arguments in response to Suhy's arguments regarding PureThink are not a concession that jurisdiction exists and are made to preserve Appellees' rights should this Court grant Suhy's motion (it should not).

PureThink alleged that Suhy and Neo4j USA's then-COO, Lars Nordwall, discussed enhancements to Neo4j® EE to satisfy government security requirements. 8-SER-2018, (¶16), 8-SER-2022 (¶54). During this discussion, Nordwall purportedly represented that Suhy could improve the Neo4j software for government use. *Id*. PureThink and Neo4j USA allegedly entered an agreement, separate from the SPA, evidenced by a notice letter to potential customers signed by Neo4j® on

April 11, 2015 ("April 11th letter"). 8-SER-2018(¶16); 8-SER-2050–2056 (Exs. C–D). The letter is addressed "[t]o whom it may concern" and states that PureThink is "the only Neo4j Government Edition reseller" authorized to "resell and support" the U.S. Government. *Id.*

PureThink alleged that it subsequently designed and developed "Neo4j Government Edition," software package that combined Neo4j® EE with additional plug-ins to address government security requirements. 8-SER-2018–2019(¶17). PureThink valued its development of those add-ons at $650,000. *Id.*

On June 19, 2017, after providing notice of breach of the SPA, Neo4j USA notified PureThink that it was "discontinuing Neo4j Government Edition effective June 19, 2017 such that it is no longer available for sale." 5-SER-1078–1094, 6-SER-1368–1369 (Ex. 19). PureThink alleged that this constituted a breach of the "exclusivity agreement" reflected by the April 15th letter.

Neo4j USA moved for summary judgment on the grounds that PureThink could not establish all four elements of a contract. 8-SER-1990–1995 (20:17–25:16). The district court granted the motion, finding that the parties never reached mutual assent or consented to any terms of any exclusivity agreement. 1-SER-0061–0066– (25:25–30:24). Even if an exclusivity agreement existed, a reasonable jury would not find Neo4j USA in breach. 1-SER-0066–0067 (30:24–31:4). As discussed

-67-

below, Suhy fails to establish any reversible error.

### 1. Suhy Fails to Address that the Lack of Mutual Assent Precluded the Formation of the Alleged Exclusivity Agreement

Suhy fails to address the district court's finding that the undisputed evidence established that no "exclusivity agreement" existed due to a lack of mutual assent. *See Netbula, LLC v. Bindview Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007) (under California law, contract formation "requires that the parties' reach mutual assent or consent on definite or complete terms"). Despite having the burden of proof, Suhy fails to cite to any record evidence establishing that both parties understood that the April 11th letter was an agreement. Conversely, the undisputed record evidence shows Suhy repeatedly telling Neo4j USA that the April 11th letter purporting to memorialize that agreement was merely a "virtual concept" for PureThink to bypass protracted mandatory competitive bidding processes and take advantage of faster sole-source procurement. 1-SER-0064–0066 (28:10-30:24) (citing 5-SER-1078–1094, 6-SER-1310–1313 (Ex. 7), 6-SER-1321–1323 (Ex. 10), 6-SER-1334–1340 (Ex. 14); *see also* 5-SER-1078–1094, 6-SER-1324–1329 (Exs. 11–12 [yellow highlights])

Instead, Suhy argues that the district court should not have considered his emails leading up to the April 11th letter as "extrinsic evidence that contradicts an

-68-

integrated written agreement" under Cal. Civ. Proc. Code § 1856. AOB at 73. However, the district court correctly found that the April 11th letter "lack[ed] any language indicating that the parties intended to enter into an agreement or what obligations [it] would entail." 1-SER-0063–0064 (27:24–28:16) (citing *Bustamante v. Intuit, Inc*., 141 Cal.App.4th 199, 208 (Cal. Ct. App. 2006)).

Extrinsic evidence is admissible to determine whether contracting parties achieved mutual assent for purposes of formation. Cal. Civ. Proc. Code § 1856(f); *accord Banner Entm't, Inc. v. Sup. Court*, 62 Cal. App. 4th 348, 358 (1998) ("[e]vidence as to the parties' understanding and intent … is admissible to ascertain when or whether a binding agreement was ever reached") (citing same). Thus, the district court correctly concluded from the relevant emails that there was no mutual assent to the terms alleged by PureThink. *See* 1-SER-0064–0066 (28:7–30:24, 31:21–28) (citing 5-SER-1078–1094, 6-SER-1310–1313 (Ex. 7), 6-SER-1321–1323 (Ex. 10), 6-SER-1334–1340 (Ex. 14).

### 2. Suhy Fails to Establish Error with the Finding of No Breach

Suhy claims error in the district court's holding that, even if an exclusivity agreement existed, no reasonable jury would find Neo4j USA breached by terminating it. AOB at 71–72, 74–75. In doing so, Suhy merely cites to *arguments* PureThink made in opposition to the summary judgment motion. *See id.* This does

not establish a disputed issue of fact on whether Neo4j USA had the unfettered right to terminate the alleged exclusivity agreement.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (an assertion "blatantly contradicted by the record, so that no reasonable jury could believe it" will not create a genuine issue of material fact at summary judgment); *see also Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989).

Suhy also does not address the uncontroverted evidence that he told Neo4j USA that it would have "the right to cancel this exclusivity agreement at any time and for any reason" and Neo4j USA relied upon that representation at the alleged time of formation.  1-SER-0066–007 (30:24–31:4, 31:21–28) (citing 5-SER-1078–1094, 6-SER-1310–1316 (Exs. 7–8); 5-SER-1078–1094, 6-SER-1317–1320, 6-SER-1326–1333 (Exs. 9, 12–13); *see also* 4-SER-0953–0955(10:23-12:28).  The parties' contemporaneous "internal agreement" written by Suhy confirms the same. *Id.*  Consequently, this Court should affirm the granting of summary judgment in favor of Neo4j USA on PureThink's breach of contract counterclaim.

## IX.

## CONCLUSION

Suhy's appeal ignores the stipulated facts and undisputed evidence, rejects the law of the case, and disregards the legal principles relied upon by the district court. The district court's findings that Suhy violated the Lanham Act and DMCA, as well as the damages awarded for such violations, were amply supported by undisputed evidence. No reasonable jury would have ruled otherwise. Likewise, no abuse of discretion has been shown by Suhy with respect to the district court's damages award. Lastly, Suhy fails to identify any reversible error with respect to district court granting summary judgment in favor of Neo4j USA on PureThink's breach of contract counterclaim.

This Court should therefore affirm district court's entry of judgment below.

Dated:  February 24, 2025        Respectfully submitted,

*/s/ Jeffrey M. Ratinoff*
Jeremy A. Moseley (MT Bar #44830177)
**SPENCER FANE LLP**
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Telephone:  303.839.3800
Facsimile:   303.839.3838
Email:   jmoseley@spencerfane.com

John V. Picone (CA Bar #187226)
Jeffrey M. Ratinoff (CA Bar #197241)
**SPENCER FANE LLP**
225 West Santa Clara Street, Suite 1500
San Jose, CA 95113
Telephone:  408.286.5100
Facsimile:   408.286.5722
Email:        jpicone@spencerfane.com
               jratinoff@spencerfane.com

Attorneys for Plaintiffs-Appellees NEO4J,
INC., and NEO4J SWEDEN AB

-72-

## STATEMENT OF RELATED CASES PURSUANT TO
## CIRCUIT RULE 28-2.6

The undersigned attorney states the following: I am unaware of any related cases currently pending in this court. However, this Court has previously adjudicated an appeal filed by Appellants in this matter, *Neo4j, Inc. et al. v. Purethink LLC et al.*, No. 21-16029 (9th Cir. 2021).

Date: February 24, 2025              SPENCER FANE LLP

                                     *s/ Jeffrey M. Ratinoff*

                                     _____
                                     Jeffrey M. Ratinoff
                                     *Attorneys for Appellees*
                                     Neo4j, Inc. and Neo4j Sweden AB

## CERTIFICATE OF COMPLIANCE FOR BRIEFS

The undersigned attorney states the following:

This brief contains 14,851 words and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6) because this motion has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

I certify that this brief complies with the longer length limit permitted by Cir. R. 32-2(b) because Appellees are filing a single brief in response to multiple briefs.

Date: February 24, 2025

SPENCER FANE LLP

*s/ Jeffrey M. Ratinoff*

_____

Jeffrey M. Ratinoff
*Attorneys for Appellees*
Neo4j, Inc. and Neo4j Sweden AB

ii

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of

Court for the United States Court of Appeals for the Ninth Circuit by using the

appellate CM/ECF system on February 24, 2025. I certify that all participants in

the case are registered CM/ECF users and that service will be accomplished by the

appellate CM/ECF system.

Date:  February 24, 2025                    SPENCER FANE LLP

                                            *s/ Jeffrey M. Ratinoff*
                                            _____
                                            Jeffrey M. Ratinoff

                                            *Attorneys for Appellees*
                                            Neo4j, Inc. and Neo4j Sweden AB

iii