**No. 24-5538**

---

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

---

NEO4J, INC., NEO4J SWEDEN AB,

*Plaintiffs-Appellees*,

v.

JOHN MARK SUHY,

*Defendant-Appellant.*

On Appeal from the United States District Court
For the Northern District of California
No. 5:18-cv-07182-EJD
Hon. Edward J. Davila

---

### CIRCUIT RULE 28-2.7 ADDENDUM OF STATUTES TO APPELLEES' ANSWER BRIEF

---

John V. Picone III (State Bar No. 187226)
jpicone@spencerfane.com
Jeffrey M. Ratinoff (State Bar No. 197241)
jratinoff@spencerfane.com
Jeremy A. Moseley (MT Bar No. 44830177)
jmoseley@spencerfane.com

*Attorneys for Appellees*
Neo4j, Inc. and Neo4j Sweden AB

## <u>ADDENDUM TABLE OF CONTENTS</u>

**Page**

**15 U.S.C. § 1055**........................................................................ **A-3**

**15 U.S.C.A. § 1114**................................................................... **A-4**

**15 U.S.C.A. § 1117**................................................................... **A-8**

**15 U.S.C.A. § 1125**................................................................. **A-10**

**15 U.S.C.A. § 1127**................................................................. **A-17**

**17 U.S.C.A. § 1202**................................................................. **A-21**

**Lanham Act - 15 U.S. Code § 1051**..................................... **A-25**

**H.R.2281 - Digital Millennium Copyright Act**................. **A-29**

## 15 U.S.C. § 1055

### § 1055. Use by related companies affecting validity and registration

Where a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration, provided such mark is not used in such manner as to deceive the public. If first use of a mark by a person is controlled by the registrant or applicant for registration of the mark with respect to the nature and quality of the goods or services, such first use shall inure to the benefit of the registrant or applicant, as the case may be.

## <u>15 U.S.C.A. § 1114</u>

**§ 1114. Remedies; infringement; innocent infringement by printers and publishers**

**(1)** Any person who shall, without the consent of the registrant--

**(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

**(b)** reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

As used in this paragraph, the term "any person" includes the United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, or other persons acting for the United States and with the authorization and consent of the United States, and any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. The United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, other persons acting for the United States and with the authorization and consent of the United States, and any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

**(2)** Notwithstanding any other provision of this chapter, the remedies given to the owner of a right infringed under this chapter or to a person bringing an action under section 1125(a) or (d) of this title shall be limited as follows:

**(A)** Where an infringer or violator is engaged solely in the business of printing the mark or violating matter for others and establishes that he or she was an innocent

A-4

infringer or innocent violator, the owner of the right infringed or person bringing the action under section 1125(a) of this title shall be entitled as against such infringer or violator only to an injunction against future printing.

**(B)** Where the infringement or violation complained of is contained in or is part of paid advertising matter in a newspaper, magazine, or other similar periodical or in an electronic communication as defined in section 2510(12) of Title 18, the remedies of the owner of the right infringed or person bringing the action under section 1125(a) of this title as against the publisher or distributor of such newspaper, magazine, or other similar periodical or electronic communication shall be limited to an injunction against the presentation of such advertising matter in future issues of such newspapers, magazines, or other similar periodicals or in future transmissions of such electronic communications. The limitations of this subparagraph shall apply only to innocent infringers and innocent violators.

**(C)** Injunctive relief shall not be available to the owner of the right infringed or person bringing the action under section 1125(a) of this title with respect to an issue of a newspaper, magazine, or other similar periodical or an electronic communication containing infringing matter or violating matter where restraining the dissemination of such infringing matter or violating matter in any particular issue of such periodical or in an electronic communication would delay the delivery of such issue or transmission of such electronic communication after the regular time for such delivery or transmission, and such delay would be due to the method by which publication and distribution of such periodical or transmission of such electronic communication is customarily conducted in accordance with sound business practice, and not due to any method or device adopted to evade this section or to prevent or delay the issuance of an injunction or restraining order with respect to such infringing matter or violating matter.

**(D)(i)(I)** A domain name registrar, a domain name registry, or other domain name registration authority that takes any action described under clause (ii) affecting a domain name shall not be liable for monetary relief or, except as provided in subclause (II), for injunctive relief, to any person for such action, regardless of whether the domain name is finally determined to infringe or dilute the mark.

**(II)** A domain name registrar, domain name registry, or other domain name registration authority described in subclause (I) may be subject to injunctive relief only if such registrar, registry, or other registration authority has--

**(aa)** not expeditiously deposited with a court, in which an action has been filed regarding the disposition of the domain name, documents sufficient for the court to establish the court's control and authority regarding the disposition of the registration and use of the domain name;

**(bb)** transferred, suspended, or otherwise modified the domain name during the pendency of the action, except upon order of the court; or

**(cc)** willfully failed to comply with any such court order.

**(ii)** An action referred to under clause (i)(I) is any action of refusing to register, removing from registration, transferring, temporarily disabling, or permanently canceling a domain name--

**(I)** in compliance with a court order under section 1125(d) of this title; or

**(II)** in the implementation of a reasonable policy by such registrar, registry, or authority prohibiting the registration of a domain name that is identical to, confusingly similar to, or dilutive of another's mark.

**(iii)** A domain name registrar, a domain name registry, or other domain name registration authority shall not be liable for damages under this section for the registration or maintenance of a domain name for another absent a showing of bad faith intent to profit from such registration or maintenance of the domain name.

**(iv)** If a registrar, registry, or other registration authority takes an action described under clause (ii) based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's fees, incurred by the domain name registrant as a result of such action. The court may also grant injunctive relief to the domain name registrant, including the reactivation of the domain name or the transfer of the domain name to the domain name registrant.

**(v)** A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

**(E)** As used in this paragraph--

A-6

**(i)** the term "violator" means a person who violates section 1125(a) of this title; and

**(ii)** the term "violating matter" means matter that is the subject of a violation under section 1125(a) of this title.

**(3)(A)** Any person who engages in the conduct described in paragraph (11) of section 110 of Title 17 and who complies with the requirements set forth in that paragraph is not liable on account of such conduct for a violation of any right under this chapter. This subparagraph does not preclude liability, nor shall it be construed to restrict the defenses or limitations on rights granted under this chapter, of a person for conduct not described in paragraph (11) of section 110 of Title 17, even if that person also engages in conduct described in paragraph (11) of section 110 of such title.

**(B)** A manufacturer, licensee, or licensor of technology that enables the making of limited portions of audio or video content of a motion picture imperceptible as described in subparagraph (A) is not liable on account of such manufacture or license for a violation of any right under this chapter, if such manufacturer, licensee, or licensor ensures that the technology provides a clear and conspicuous notice at the beginning of each performance that the performance of the motion picture is altered from the performance intended by the director or copyright holder of the motion picture. The limitations on liability in subparagraph (A) and this subparagraph shall not apply to a manufacturer, licensee, or licensor of technology that fails to comply with this paragraph.

**(C)** The requirement under subparagraph (B) to provide notice shall apply only with respect to technology manufactured after the end of the 180-day period beginning on April 27, 2005.

**(D)** Any failure by a manufacturer, licensee, or licensor of technology to qualify for the exemption under subparagraphs (A) and (B) shall not be construed to create an inference that any such party that engages in conduct described in paragraph (11) of section 110 of Title 17 is liable for trademark infringement by reason of such conduct.

<u>**15 U.S.C.A. § 1117**</u>

**§ 1117. Recovery for violation of rights**

**(a) Profits; damages and costs; attorney fees**

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

**(b) Treble damages for use of counterfeit mark**

In assessing damages under subsection (a) for any violation of section 1114(1)(a) of this title or section 220506 of Title 36, in a case involving use of a counterfeit mark or designation (as defined in section 1116(d) of this title), the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of--

**(1)** intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services; or

**(2)** providing goods or services necessary to the commission of a violation specified in paragraph (1), with the intent that the recipient of the goods or services would put the goods or services to use in committing the violation.

In such a case, the court may award prejudgment interest on such amount at an annual interest rate established under section 6621(a)(2) of Title 26, beginning on the date of the service of the claimant's pleadings setting forth the claim for such entry of judgment and ending on the date such entry is made, or for such shorter time as the court considers appropriate.

**(c) Statutory damages for use of counterfeit marks**

In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--

**(1)** not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

**(2)** if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

**(d) Statutory damages for violation of section 1125(d)(1)**

In a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

**(e) Rebuttable presumption of willful violation**

In the case of a violation referred to in this section, it shall be a rebuttable presumption that the violation is willful for purposes of determining relief if the violator, or a person acting in concert with the violator, knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority

in registering, maintaining, or renewing a domain name used in connection with the violation. Nothing in this subsection limits what may be considered a willful violation under this section.

## 15 U.S.C.A. § 1125

### § 1125. False designations of origin, false descriptions, and dilution forbidden

**(a) Civil action**

**(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

**(2)** As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

**(3)** In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

**(b) Importation**
Any goods marked or labeled in contravention of the provisions of this section shall not be imported into the United States or admitted to entry at any customhouse of the United States. The owner, importer, or consignee of goods refused entry at any customhouse under this section may have any recourse by protest or appeal that is given under the customs revenue laws or may have the remedy given by this chapter in cases involving goods refused entry or seized.

**(c) Dilution by blurring; dilution by tarnishment**

**(1) Injunctive relief**

Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

**(2) Definitions**

**(A)** For purposes of paragraph (1), a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:

**(i)** The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

**(ii)** The amount, volume, and geographic extent of sales of goods or services offered under the mark.

**(iii)** The extent of actual recognition of the mark.

**(iv)** Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

**(B)** For purposes of paragraph (1), "dilution by blurring" is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark. In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:

**(i)** The degree of similarity between the mark or trade name and the famous mark.

**(ii)** The degree of inherent or acquired distinctiveness of the famous mark.

**(iii)** The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

**(iv)** The degree of recognition of the famous mark.

**(v)** Whether the user of the mark or trade name intended to create an association with the famous mark.

**(vi)** Any actual association between the mark or trade name and the famous mark.

(**C**) For purposes of paragraph (1), "dilution by tarnishment" is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.

**(3) Exclusions**

The following shall not be actionable as dilution by blurring or dilution by tarnishment under this subsection:

(**A**) Any fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the person's own goods or services, including use in connection with--

(**i**) advertising or promotion that permits consumers to compare goods or services; or

(**ii**) identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner.

(**B**) All forms of news reporting and news commentary.

(**C**) Any noncommercial use of a mark.

**(4) Burden of proof**

In a civil action for trade dress dilution under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that--

(**A**) the claimed trade dress, taken as a whole, is not functional and is famous; and

(**B**) if the claimed trade dress includes any mark or marks registered on the principal register, the unregistered matter, taken as a whole, is famous separate and apart from any fame of such registered marks.

**(5) Additional remedies**

In an action brought under this subsection, the owner of the famous mark shall be entitled to injunctive relief as set forth in section 1116 of this title. The owner of the famous mark shall also be entitled to the remedies set forth in sections 1117(a) and 1118 of this title, subject to the discretion of the court and the principles of equity if--

(**A**) the mark or trade name that is likely to cause dilution by blurring or dilution by tarnishment was first used in commerce by the person against whom the injunction is sought after October 6, 2006; and

(**B**) in a claim arising under this subsection--

**(i)** by reason of dilution by blurring, the person against whom the injunction is sought willfully intended to trade on the recognition of the famous mark; or

**(ii)** by reason of dilution by tarnishment, the person against whom the injunction is sought willfully intended to harm the reputation of the famous mark.

### (6) Ownership of valid registration a complete bar to action

The ownership by a person of a valid registration under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register under this chapter shall be a complete bar to an action against that person, with respect to that mark, that--

**(A)** is brought by another person under the common law or a statute of a State; and

**(B)(i)** seeks to prevent dilution by blurring or dilution by tarnishment; or

**(ii)** asserts any claim of actual or likely damage or harm to the distinctiveness or reputation of a mark, label, or form of advertisement.

### (7) Savings clause

Nothing in this subsection shall be construed to impair, modify, or supersede the applicability of the patent laws of the United States.

### (d) Cyberpiracy prevention

**(1)(A)** A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person--

**(i)** has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

**(ii)** registers, traffics in, or uses a domain name that--

**(I)** in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

**(II)** in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

**(III)** is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

**(B)(i)** In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to--

**(I)** the trademark or other intellectual property rights of the person, if any, in the domain name;

**(II)** the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

**(III)** the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

**(IV)** the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

**(V)** the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

**(VI)** the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

**(VII)** the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

**(VIII)** the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

**(IX)** the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

**(ii)** Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.

**(C)** In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.

**(D)** A person shall be liable for using a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee.

**(E)** As used in this paragraph, the term "traffics in" refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration.

**(2)(A)** The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if--

> **(i)** the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c); and
>
> **(ii)** the court finds that the owner--
>
>> **(I)** is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or
>>
>> **(II)** through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by--
>>
>>> **(aa)** sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and
>>>
>>> **(bb)** publishing notice of the action as the court may direct promptly after filing the action.

**(B)** The actions under subparagraph (A)(ii) shall constitute service of process.

**(C)** In an in rem action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which--

> **(i)** the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located; or
>
> **(ii)** documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain name are deposited with the court.

**(D)(i)** The remedies in an in rem action under this paragraph shall be limited to a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark. Upon receipt of written notification of a filed, stamped copy of a complaint filed by the owner of a

mark in a United States district court under this paragraph, the domain name registrar, domain name registry, or other domain name authority shall--

    **(I)** expeditiously deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court; and

    **(II)** not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court.

**(ii)** The domain name registrar or registry or other domain name authority shall not be liable for injunctive or monetary relief under this paragraph except in the case of bad faith or reckless disregard, which includes a willful failure to comply with any such court order.

**(3)** The civil action established under paragraph (1) and the in rem action established under paragraph (2), and any remedy available under either such action, shall be in addition to any other civil action or remedy otherwise applicable.

**(4)** The in rem jurisdiction established under paragraph (2) shall be in addition to any other jurisdiction that otherwise exists, whether in rem or in personam.

### <u>15 U.S.C.A. § 1127</u>

**§ 1127. Construction and definitions; intent of chapter**

In the construction of this chapter, unless the contrary is plainly apparent from the context--

The United States includes and embraces all territory which is under its jurisdiction and control.

The word "commerce" means all commerce which may lawfully be regulated by Congress.

The term "principal register" refers to the register provided for by sections 1051 to 1072 of this title, and the term "supplemental register" refers to the register provided for by sections 1091 to 1096 of this title.

The term "person" and any other word or term used to designate the applicant or other entitled to a benefit or privilege or rendered liable under the provisions of this chapter includes a juristic person as well as a natural person. The term "juristic person" includes a firm, corporation, union, association, or other organization capable of suing and being sued in a court of law.

The term "person" also includes the United States, any agency or instrumentality thereof, or any individual, firm, or corporation acting for the United States and with the authorization and consent of the United States. The United States, any agency or instrumentality thereof, and any individual, firm, or corporation acting for the United States and with the authorization and consent of the United States, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

The term "person" also includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.
The terms "applicant" and "registrant" embrace the legal representatives, predecessors, successors and assigns of such applicant or registrant.
The term "Director" means the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office.

The term "related company" means any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used.

The terms "trade name" and "commercial name" mean any name used by a person to identify his or her business or vocation.

The term "trademark" includes any word, name, symbol, or device, or any combination thereof--
(**1**) used by a person, or
(**2**) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter,
to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

The term "service mark" means any word, name, symbol, or device, or any combination thereof--
(**1**) used by a person, or
(**2**) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter,
to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown. Titles, character names, and other distinctive features of radio or television programs may be registered as service marks notwithstanding that they, or the programs, may advertise the goods of the sponsor.

The term "certification mark" means any word, name, symbol, or device, or any combination thereof--
(**1**) used by a person other than its owner, or
(**2**) which its owner has a bona fide intention to permit a person other than the owner to use in commerce and files an application to register on the principal register established by this chapter,
to certify regional or other origin, material, mode of manufacture, quality, accuracy, or other characteristics of such person's goods or services or that the work or labor on the goods or services was performed by members of a union or other organization.

The term "collective mark" means a trademark or service mark--

**(1)** used by the members of a cooperative, an association, or other collective group or organization, or

**(2)** which such cooperative, association, or other collective group or organization has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter,

and includes marks indicating membership in a union, an association, or other organization.

The term "mark" includes any trademark, service mark, collective mark, or certification mark.

The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce--

**(1)** on goods when--

**(A)** it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

**(B)** the goods are sold or transported in commerce, and

**(2)** on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

A mark shall be deemed to be "abandoned" if either of the following occurs:

**(1)** When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

**(2)** When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark. Purchaser motivation shall not be a test for determining abandonment under this paragraph.

The term "colorable imitation" includes any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive.

The term "registered mark" means a mark registered in the United States Patent and Trademark Office under this chapter or under the Act of March 3, 1881, or the Act of February 20, 1905, or the Act of March 19, 1920. The phrase "marks registered in the Patent and Trademark Office" means registered marks.

The term "Act of March 3, 1881", "Act of February 20, 1905", or "Act of March 19, 1920", means the respective Act as amended.

A "counterfeit" is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.

The term "domain name" means any alphanumeric designation which is registered with or assigned by any domain name registrar, domain name registry, or other domain name registration authority as part of an electronic address on the Internet.

The term "Internet" has the meaning given that term in section 230(f)(1) of Title 47.

Words used in the singular include the plural and vice versa.

The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

## <u>17 U.S.C.A. § 1202</u>

### § 1202. Integrity of copyright management information

**(a) False copyright management information.**--No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement--

**(1)** provide copyright management information that is false, or

**(2)** distribute or import for distribution copyright management information that is false.

**(b) Removal or alteration of copyright management information.**--No person shall, without the authority of the copyright owner or the law--

**(1)** intentionally remove or alter any copyright management information,

**(2)** distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

**(3)** distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

**(c) Definition.**--As used in this section, the term "copyright management information" means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:

**(1)** The title and other information identifying the work, including the information set forth on a notice of copyright.

**(2)** The name of, and other identifying information about, the author of a work.

**(3)** The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.

**(4)** With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.

**(5)** With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work.

**(6)** Terms and conditions for use of the work.

**(7)** Identifying numbers or symbols referring to such information or links to such information.

**(8)** Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.

**(d) Law enforcement, intelligence, and other government activities.**--This section does not prohibit any lawfully authorized investigative, protective, information security, or intelligence activity of an officer, agent, or employee of the United States, a State, or a political subdivision of a State, or a person acting pursuant to a contract with the United States, a State, or a political subdivision of a State. For purposes of this subsection, the term "information security" means activities carried out in order to identify and address the vulnerabilities of a government computer, computer system, or computer network.

**(e) Limitations on liability.**--

**(1) Analog transmissions.**--In the case of an analog transmission, a person who is making transmissions in its capacity as a broadcast station, or as a cable system, or someone who provides programming to such station or system, shall not be liable for a violation of subsection (b) if--

**(A)** avoiding the activity that constitutes such violation is not technically feasible or would create an undue financial hardship on such person; and

**(B)** such person did not intend, by engaging in such activity, to induce, enable, facilitate, or conceal infringement of a right under this title.

**(2) Digital transmissions.**--

**(A)** If a digital transmission standard for the placement of copyright management information for a category of works is set in a voluntary, consensus standard-setting process involving a representative cross-section of broadcast stations or cable systems and copyright owners of a category of works that are intended for public performance by such stations or systems, a person identified in paragraph (1) shall not be liable for a violation of subsection (b) with respect to the particular copyright management information addressed by such standard if--

**(i)** the placement of such information by someone other than such person is not in accordance with such standard; and

**(ii)** the activity that constitutes such violation is not intended to induce, enable, facilitate, or conceal infringement of a right under this title.

**(B)** Until a digital transmission standard has been set pursuant to subparagraph (A) with respect to the placement of copyright management information for a category of works, a person identified in paragraph (1) shall not be liable for a violation of subsection (b) with respect to such copyright management information, if the activity that constitutes such violation is not intended to induce, enable, facilitate, or conceal infringement of a right under this title, and if--

**(i)** the transmission of such information by such person would result in a perceptible visual or aural degradation of the digital signal; or

**(ii)** the transmission of such information by such person would conflict with--

**(I)** an applicable government regulation relating to transmission of information in a digital signal;

**(II)** an applicable industry-wide standard relating to the transmission of information in a digital signal that was adopted by a voluntary consensus standards body prior to the effective date of this chapter; or

**(III)** an applicable industry-wide standard relating to the transmission of information in a digital signal that was adopted in a voluntary, consensus standards-setting process open to participation by a representative cross-section of broadcast stations or cable systems and copyright owners of a category of works that are intended for public performance by such stations or systems.

**(3) Definitions.**--As used in this subsection--

A-23

**(A)** the term "broadcast station" has the meaning given that term in section 3 of the Communications Act of 1934 (47 U.S.C. 153); and

**(B)** the term "cable system" has the meaning given that term in section 602 of the Communications Act of 1934 (47 U.S.C. 522).

## <u>LANHAM ACT - 15 U.S. CODE § 1051</u>

**(a) Application for use of trademark**

**(1)** The owner of a trademark used in commerce may request registration of its trademark on the principal register hereby established by paying the prescribed fee and filing in the Patent and Trademark Office an application and a verified statement, in such form as may be prescribed by the Director, and such number of specimens or facsimiles of the mark as used as may be required by the Director.

**(2)** The application shall include specification of the applicant's domicile and citizenship, the date of the applicant's first use of the mark, the date of the applicant's first use of the mark in commerce, the goods in connection with which the mark is used, and a drawing of the mark.

**(3)** The statement shall be verified by the applicant and specify that--

**(A)** the person making the verification believes that he or she, or the juristic person in whose behalf he or she makes the verification, to be the owner of the mark sought to be registered;

**(B)** to the best of the verifier's knowledge and belief, the facts recited in the application are accurate;

**(C)** the mark is in use in commerce; and

**(D)** to the best of the verifier's knowledge and belief, no other person has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of such other person, to cause confusion, or to cause mistake, or to deceive, except that, in the case of every application claiming concurrent use, the applicant shall--

**(i)** state exceptions to the claim of exclusive use; and

**(ii)** shall1 specify, to the extent of the verifier's knowledge--

**(I)** any concurrent use by others;

**(II)** the goods on or in connection with which and the areas in which each concurrent use exists;

**(III)** the periods of each use; and

**(IV)** the goods and area for which the applicant desires registration.

**(4)** The applicant shall comply with such rules or regulations as may be prescribed by the Director. The Director shall promulgate rules prescribing the requirements for the application and for obtaining a filing date herein.

**(b) Application for bona fide intention to use trademark**

**(1)** A person who has a bona fide intention, under circumstances showing the good faith of such person, to use a trademark in commerce may request registration of its trademark on the principal register hereby established by paying the prescribed fee and filing in the Patent and Trademark Office an application and a verified statement, in such form as may be prescribed by the Director.

**(2)** The application shall include specification of the applicant's domicile and citizenship, the goods in connection with which the applicant has a bona fide intention to use the mark, and a drawing of the mark.

**(3)** The statement shall be verified by the applicant and specify--

**(A)** that the person making the verification believes that he or she, or the juristic person in whose behalf he or she makes the verification, to be entitled to use the mark in commerce;

**(B)** the applicant's bona fide intention to use the mark in commerce;

**(C)** that, to the best of the verifier's knowledge and belief, the facts recited in the application are accurate; and

**(D)** that, to the best of the verifier's knowledge and belief, no other person has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of such other person, to cause confusion, or to cause mistake, or to deceive.

Except for applications filed pursuant to section 1126 of this title, no mark shall be registered until the applicant has met the requirements of subsections (c) and (d) of this section.

**(4)** The applicant shall comply with such rules or regulations as may be prescribed by the Director. The Director shall promulgate rules prescribing the requirements for the application and for obtaining a filing date herein.

**(c) Amendment of application under subsection (b) to conform to requirements of subsection (a)**

At any time during examination of an application filed under subsection (b), an applicant who has made use of the mark in commerce may claim the benefits of

such use for purposes of this chapter, by amending his or her application to bring it into conformity with the requirements of subsection (a).

**(d) Verified statement that trademark is used in commerce**

**(1)** Within six months after the date on which the notice of allowance with respect to a mark is issued under section 1063(b)(2) of this title to an applicant under subsection (b) of this section, the applicant shall file in the Patent and Trademark Office, together with such number of specimens or facsimiles of the mark as used in commerce as may be required by the Director and payment of the prescribed fee, a verified statement that the mark is in use in commerce and specifying the date of the applicant's first use of the mark in commerce and those goods or services specified in the notice of allowance on or in connection with which the mark is used in commerce. Subject to examination and acceptance of the statement of use, the mark shall be registered in the Patent and Trademark Office, a certificate of registration shall be issued for those goods or services recited in the statement of use for which the mark is entitled to registration, and notice of registration shall be published in the Official Gazette of the Patent and Trademark Office. Such examination may include an examination of the factors set forth in subsections (a) through (e) of section 1052 of this title. The notice of registration shall specify the goods or services for which the mark is registered.

**(2)** The Director shall extend, for one additional 6-month period, the time for filing the statement of use under paragraph (1), upon written request of the applicant before the expiration of the 6-month period provided in paragraph (1). In addition to an extension under the preceding sentence, the Director may, upon a showing of good cause by the applicant, further extend the time for filing the statement of use under paragraph (1) for periods aggregating not more than 24 months, pursuant to written request of the applicant made before the expiration of the last extension granted under this paragraph. Any request for an extension under this paragraph shall be accompanied by a verified statement that the applicant has a continued bona fide intention to use the mark in commerce and specifying those goods or services identified in the notice of allowance on or in connection with which the applicant has a continued bona fide intention to use the mark in commerce. Any request for an extension under this paragraph shall be accompanied by payment of the prescribed fee. The Director shall issue regulations setting forth guidelines for determining what constitutes good cause for purposes of this paragraph.

**(3)** The Director shall notify any applicant who files a statement of use of the acceptance or refusal thereof and, if the statement of use is refused, the reasons for the refusal. An applicant may amend the statement of use.

**(4)** The failure to timely file a verified statement of use under paragraph (1) or an extension request under paragraph (2) shall result in abandonment of the application, unless it can be shown to the satisfaction of the Director that the delay in responding was unintentional, in which case the time for filing may be extended, but for a period not to exceed the period specified in paragraphs (1) and (2) for filing a statement of use.

**(e) Designation of resident for service of process and notices**

If the applicant is not domiciled in the United States the applicant may designate, by a document filed in the United States Patent and Trademark Office, the name and address of a person resident in the United States on whom may be served notices or process in proceedings affecting the mark. Such notices or process may be served upon the person so designated by leaving with that person or mailing to that person a copy thereof at the address specified in the last designation so filed. If the person so designated cannot be found at the address given in the last designation, or if the registrant does not designate by a document filed in the United States Patent and Trademark Office the name and address of a person resident in the United States on whom may be served notices or process in proceedings affecting the mark, such notices or process may be served on the Director.

**(f) Third-party submission of evidence**

A third party may submit for consideration for inclusion in the record of an application evidence relevant to a ground for refusal of registration. The third-party submission shall identify the ground for refusal and include a concise description of each piece of evidence submitted in support of each identified ground for refusal. Not later than 2 months after the date on which the submission is filed, the Director shall determine whether the evidence should be included in the record of the application. The Director shall establish by regulation appropriate procedures for the consideration of evidence submitted by a third party under this subsection and may prescribe a fee to accompany the submission. If the Director determines that the third-party evidence should be included in the record of the application, only the evidence and the ground for refusal to which the evidence relates may be so included. Any determination by the Director whether or not to include evidence in the record of an application shall be final and non-reviewable, and a determination to include or to not include evidence in the record shall not prejudice any party's right to raise any issue and rely on any evidence in any other proceeding.

## H.R.2281 - DIGITAL MILLENNIUM COPYRIGHT ACT

**Title I: WIPO Treaties Implementation** - WIPO Copyright and Performances and Phonograms Treaties Implementation Act of 1998 - Amends Federal copyright law to grant copyright protection to: (1) sound recordings that were first fixed in a treaty party (a country or intergovernmental organization other than the United States that is a party to specified international copyright and other agreements); and (2) pictorial, graphic, or sculptural works incorporated in a building or other structure or an architectural work embodied in a building located in the United States or a treaty party.

Treats works published in the United States or a treaty party within 30 days after publication in a foreign nation that is not a treaty party as first published in the United States or a treaty party for purposes of conferring protection.

Provides that no works other than sound recordings shall be eligible for protection solely by virtue of U.S. adherence to the Geneva Phonograms Convention or the World Intellectual Property Organization (WIPO) Performances and Phonograms Treaty.

Revises the definition of "eligible country," for purposes of provisions regarding copyright in restored works, to include nations other than the United States that: (1) become World Trade Organization member countries after the date of enactment of the Uruguay Round Agreements Act; (2) are or become nations adhering to the Berne Convention; (3) adhere to the WIPO Copyright or Performances and Phonograms Treaties; or (4) become subject to a certain presidential proclamation of copyright restoration after such enactment date. Includes sound recordings in the definition of "restored work" if the source country for the work is an eligible country solely by its adherence to the WIPO Performances and Phonograms Treaty.

(Sec. 103) Prohibits: (1) circumvention of technological measures that control access to protected works; or (2) manufacturing or trafficking in technology designed to circumvent measures that control access to, or protect rights of copyright owners in, such works.

Makes the prohibition effective at the end of the two-year period beginning on the enactment of this Act. Exempts persons who are users of a copyrighted work which is in a particular class if such persons are, or are likely to be in the succeeding three-year period, adversely affected by virtue of such prohibition in their ability to make noninfringing uses of that particular class of works. Requires, during the two-year period and during each succeeding three-year period, the Librarian of Congress, upon the recommendation of the Register of Copyrights, to make the determination in a rulemaking proceeding on the record of whether the

individuals who are users of copyrighted work are adversely affected in their ability to make noninfringing uses of a particular class of copyrighted works. Requires the Librarian to publish any class of copyrighted works for which the Librarian determines, pursuant to the rulemaking procedure, that noninfringing uses by persons who are users of copyrighted work are, or are likely to be, adversely affected and that the prohibition is inapplicable to such users with respect to such class of works for the ensuring three-year period. Prohibits an exception from the applicability of the prohibition or any determination made in such rule making from being used as a defense in any action to enforce any provision of this title.

Specifies that nothing in this Act shall enlarge or diminish any rights of free speech or the press for activities using consumer electronics, telecommunications, or computing products.

Provides exemptions to such prohibition for: (1) nonprofit libraries, archives, or educational institutions which gain access to a commercially exploited copyrighted work solely to make a good faith determination of whether to acquire such work, subject to certain conditions; (2) lawfully authorized investigative, protective, information security, or intelligence activities of the United States, a State, or political subdivision of a State; and (3) purposes of achieving interoperability of computer programs. Defines "information security" as activities carried out in order to identify and address the vulnerabilities of a government computer, computer system, or computer network.

Specifies: (1) conditions under which a person is allowed to circumvent technological measures as applied to a copy, phonorecord, performance, or display of a published work in the course of an act of good faith encryption research and the use of technological means for such encryption research activities; and (2) factors to be considered in determining whether the person qualifies for such exemption. Defines "encryption research" as activities necessary to identify and analyze flaws and vulnerabilities of encryption technologies applied to copyrighted works, if these activities are conducted to advance the state of knowledge in the field of encryption technology or to assist in the development of encryption products.

Requires the Register of Copyrights and the Assistant Secretary for Communications and Information of the Department of Commerce to jointly report to the Congress, along with legislative recommendations, if any, on the effect this Act has had on: (1) encryption research and the development of encryption technology; (2) the adequacy and effectiveness of technological measures designed to protect copyrighted works; and (3) protection of copyright owners against the unauthorized access to their encrypted copyrighted works.

Permits the court, in applying this Act to a component or part, to consider the necessity for its intended and actual incorporation in a technology, product, service, or device which: (1) does not itself violate the provisions of this title; and (2) has the sole purpose to prevent the access of minors to material on the Internet. Sets forth provisions regarding: (1) protection of personally identifying information; (2) inapplicability to certain technological measures; (3) permissible acts of security testing and factors in determining an exemption for such testing; and (4) use of technological means for security testing.

Prohibits the manufacturing or trafficking of certain analog video cassette recorder devices and copy control technological measures unless they: (1) effective 18 months after enactment of this Act, conform to the automatic gain control copy control technology or the automatic gain control technology under certain conditions; or (2) effective on the enactment of this Act, have been modified after such date so if they previously conformed to the automatic gain control copy control technology they no longer conform or if they previously conformed to the four-line colorstripe copy control technology they no longer. Requires manufacturers that have not previously manufactured or sold a VHS format analog video cassette recorder or an 8mm format analog cassette recorder to conform to the four-line colorstripe copy control technology in the initial model of any such recorder manufactured after the enactment of this Act and thereafter to continue to do so.

Prohibits allowing a person to apply the automatic gain control copy control technology or colorstripe copy control technology to prevent or limit consumer copying, subject to exceptions.

Provides that this Act shall not: (1) require any analog video cassette camcorder to conform to the automatic gain control copy control technology with respect to any video signal received through a camera lens; (2) apply to the manufacturing or trafficking in any professional analog video cassette recorder; or (3) apply to the offer for sale or provision of, or other trafficking in, any previously owned analog video cassette recorder, if such recorder was legally manufactured and sold when new and not subsequently modified in violation of this Act.

Bars the provision or distribution of false copyright management information with the intent to induce or conceal infringement. Defines "copyright management information" as certain information, including title, name of author and copyright owner, and terms for use of the work, conveyed in connection with copies or phonorecords of a work or performances or displays, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work.

Provides exemptions to such prohibition for: (1) lawfully authorized investigative, protective, information security (as previously defined), or intelligence activities of the United States, a State, or political subdivision of a State; and (2) certain analog and digital transmissions by broadcast stations or cable systems.

Establishes civil remedies for violations regarding the circumvention of technological protection measures and the falsification of copyright management information.

Prescribes criminal penalties for willful violations committed for commercial advantage or private financial gain. Makes criminal penalties inapplicable to nonprofit libraries, archives, and educational institutions. Imposes a statute of limitations on criminal proceedings.

(Sec. 104) Requires the Register of Copyrights and the Assistant Secretary for Communications and Information of the Department of Commerce to jointly evaluate and report to the Congress, along with any legislative recommendations on: (1) the effects of the amendments made by this title and the development of electronic commerce and associated technology on the operation of copyright law provisions concerning the disposition of a particular copy or phonorecord and the making of a copy or adaptation of a computer program; and (2) the relationship between existing and emergent technology and the operation of such provisions.

(Sec. 105) Provides that certain provisions of this title shall be effective as of enactment, except for specified provisions which shall be effective upon the entry into force of the WIPO Copyright and Performances and Phonograms Treaties.

**Title II: Online Copyright Infringement Liability Limitation** - Online Copyright Infringement Liability Limitation Act - Establishes limited liability for online copyright infringement for: (1) entities offering the transmission, routing, or providing of connections for digital online communications between points specified by a user of material of the user's choosing, without modification of the material; and (2) providers of online services or network access.

Describes specific circumstances that provide for limited liability, including cases in which material is stored on service provider systems or networks or where users are linked to an online location containing infringing materials or activity by using information location tools.

Makes liability limitations applicable only if a service provider has designated an agent to receive notifications of claimed infringement by making contact information available through its service, including on its website in a location accessible to the public, and to the Copyright Office. Sets forth requirements for such notifications.

Specifies conditions under which limitation on liability of nonprofit educational institutions shall apply.

Makes liable for damages persons who knowingly misrepresent that material or activity is infringing or that it was removed or disabled by mistake or misidentification.

Absolves service providers of liability with respect to claims based on good faith disabling of access to, or removal of, material or activity claimed to be infringing regardless of whether the material or activity is ultimately determined to be infringing. Sets forth additional conditions to be met by service providers with respect to such activities that involve service subscribers.

Makes liability limitations applicable only if a service provider: (1) implements and informs subscribers of a policy for terminating subscribers who are repeat infringers; and (2) accommodates and does not interfere with certain standard technical measures used by copyright owners to identify or protect copyrighted works.

Describes conditions under which a court may grant injunctive relief with respect to service providers.

**Title III: Computer Maintenance or Repair Copyright Exemption** - Computer Maintenance Competition Assurance Act -Provides that it is not a copyright infringement for the owner or lessee of a machine to make or authorize the making of a copy of a computer program solely by activation of a machine that lawfully contains an authorized copy of the program for purposes only of maintenance or repair of that machine, provided: (1) such new copy is used in no other manner and is destroyed immediately after the maintenance or repair is completed; and (2) any program or part thereof that is not necessary for machine activation is not accessed or used other than to make such new copy by activation of the machine.

**Title IV: Miscellaneous Provisions** - Adjusts the compensation of the Commissioner of Patents and Trademarks and the Register of Copyrights to that in effect for level III of the Executive Pay Schedule.

Includes the positions of Assistant Secretary of Commerce and Commissioner of Patents and Trademarks and the Register of Copyrights within the level III Executive Pay Schedule.

Modifies the duties and functions of the Register of Copyrights (Register) to include: (1) advising the Congress on national and international issues relating to copyright, other matters arising under this title, and related matters; (2) providing information and assistance to Federal departments and agencies and the Judiciary on national and international issues relating to copyright, other matters arising under this title, and related matters; (3) participating in meetings of international intergovernmental organizations and meetings with foreign government officials relating to copyright, other matters arising under this title, and related matters,

including as a member of U.S. delegations as authorized by the appropriate executive branch authority; (4) conducting studies and programs regarding copyright, other matters arising under this title, and related matters, the administration of the Copyright Office, or any function vested in the Copyright Office by law, including educational programs conducted cooperatively with foreign intellectual property offices and international intergovernmental organizations; and (5) performing such other functions as the Congress may direct, or as may be appropriate in furtherance of the functions and duties specifically set forth in this title.

(Sec. 402) Expands certain limitations on exclusive rights with respect to ephemeral recordings to authorize licensed radio or television stations to make one copy or phonorecord of a broadcast of a performance of a sound recording in a digital format on a nonsubscription basis.

(Sec. 403) Directs the Register to submit to the Congress recommendations on how to promote distance education through digital technologies while maintaining a balance between the rights of copyright owners and the needs of users.

(Sec. 404) Expands certain rights of libraries and archives to reproduce and distribute copies or phonorecords to authorize three copies or phonorecords (currently, one) to be reproduced or distributed for preservation, security, or replacement purposes. Prohibits copies or phonorecords reproduced in digital format from being distributed otherwise, or available to the public outside library or archive premises, in such format.

Considers a format to be obsolete if the machine or device necessary to render perceptible a work stored in such format is no longer manufactured or reasonably available in the commercial marketplace.

(Sec. 405) Revises provisions concerning the performance of a sound recording publicly by means of a digital audio transmission, other than as a part of an interactive service, to permit such performance without copyright infringement if the performance is part of a nonsubscription broadcast (deletes two current exemptions). Revises provisions concerning statutory licensing of sound recordings to subject to statutory licensing (subject to specified conditions): (1) the performance of a sound recording publicly by means of a non-exempt subscription digital audio transmission; (2) an eligible nonsubscription transmission; or (3) a non-exempt transmission that is made by a preexisting satellite digital audio radio service. Revises procedures for determining reasonable rates and terms of royalty payments for such transmissions.

Specifies conditions under which a transmitting organization entitled to transmit to the public a performance of a sound recording, under the limitation on exclusive rights or under a statutory license for certain nonexempt transmissions, to make no more than one phonorecord of the sound recording (unless the terms and

conditions of the statutory license allow for more). Allows copyright owners of sound recordings and transmitting organizations entitled to a statutory license to: (1) negotiate and agree upon royalty rates and license terms and conditions for making phonorecords of such sound recordings and the proportionate division of fees paid among copyright owners; and (2) designate common agents to negotiate, agree to, pay, or receive such royalty payments. Specifies procedures to determine the reasonable terms and rates of royalty payments for such statutory licenses. Sets forth conditions under which a person is allowed to make a phonorecord of a sound recording under a statutory license without infringing the exclusive right of the copyright owner.

Modifies the period in which the Librarian of Congress has to: (1) adopt or to reject the determination of a copyright arbitration royalty panel; and (2) issue an order setting the royalty fee or distribution of fees, as the case may be, if the Librarian rejects the panel's determination. States that when the royalty rates or terms that were previously in effect are to expire on a specified date, any adjustment by the Librarian of those rates or terms shall be effective as of the day following the date of expiration of the rates and terms that were previously in effect, even if the Librarian's decision is rendered on a later date.

(Sec. 406) Amends the Federal judicial code to provide, under specified conditions, in the case of a transfer of copyright ownership in a motion picture that is produced subject to one or more collective bargaining agreements negotiated under Federal laws, if the transfer is executed on or after the effective date of this Act and is not limited to public performance rights, the transfer instrument shall be deemed to incorporate the assumption agreements applicable to the copyright ownership being transferred that are required by the applicable collective bargaining agreement, and the transferee shall be subject to the obligations under each such assumption agreement to make residual payments and provide related notices, accruing after the effective date of the transfer and applicable to the exploitation of the rights transferred, and any remedies under each such assumption agreement for breach of those obligations, as they are set forth in the applicable collective bargaining agreement.

States that the exclusion of transfers of copyright ownership in a motion picture that are limited to public performance rights includes transfers to a terrestrial broadcast station, cable system, or programmer to the extent that the station, system, or programmer is functioning as an exhibitor of the motion picture, either by exhibiting the motion picture on its own network, system, service, or station, or by initiating the transmission of an exhibition that is carried on another network, system, service, or station. Provides that when a terrestrial broadcast station, cable system, or programmer, or other transferee, is also functioning otherwise as a distributor or as a producer of the motion picture, the public performance exclusion

does not effect any obligations imposed on the transferee to the extent that it is engaging in such functions.

Specifies an exclusion for grants of security interests.

Requires the Comptroller General to study and report to the Congress on the conditions in the motion picture industry that gave rise to this Act and its impact on such industry.

**Title V: Protection of Certain Original Designs** - Vessel Hull Design Protection Act - Amends Federal copyright law to provide for protection of original designs of vessel hulls which make a vessel attractive or distinctive in appearance to the purchasing or using public.

Bars protection for designs that are: (1) not original; (2) staple or commonplace; (3) dictated solely by a utilitarian function of the article that embodies them; or (4) embodied in a useful article that was made public by the designer or owner more than one year before the date of application for registration.

Provides for ten-year terms of protection.

Sets forth marking and design notice requirements for protected designs. Bars recovery against persons who began undertakings leading to infringement before receiving notice. Places the burden of providing notice of protection on design owners.

Grants owners of protected designs exclusive rights to make, have made, import, sell, or distribute for sale or for use in trade any useful article embodying protected designs. Makes it infringement to engage in such activities with respect to infringing articles without an owner's consent. Provides that it shall not be infringement to: (1) engage in certain activities with respect to protected designs without knowledge; or (2) reproduce a protected design solely for purposes of teaching, analyzing, or evaluating the appearance, concepts, or techniques embodied in the design or the functions of the useful article embodying the design. Places the burden of establishing a design's originality on the party alleging rights in a design.

Provides that protection shall be lost if application for design registration is not made within two years after the date on which the design is first made public.

Sets forth registration application requirements. Accords protection to designs with respect to which an application was filed by a U.S. owner in a foreign country on the date as filed if the U.S. application is filed within six months after the earliest date on which such foreign application was filed.

Sets forth provisions regarding: (1) determinations of registrations and procedures for cancelling registrations in cases where a party believes he or she may be damaged by registration; and (2) ownership and transfer of property rights of protected designs.

Authorizes design owners to seek judicial review of final refusals of the Register of Copyrights to register designs. Permits the use of arbitration to resolve infringement disputes. Authorizes injunctive relief to prevent infringement. Provides for recovery of damages or the infringer's profits in infringement cases. Sets a three-year statute of limitations with respect to recovery for infringement. Authorizes the court to order or cancel registrations. Prescribes penalties for the filing of infringement actions with respect to fraudulently-obtained registrations or making false markings or representations.

Directs the Secretary of the Treasury and the Postal Service to issue regulations for the enforcement of exclusive rights with respect to importation of protected designs. Subjects articles imported in violation of such rights to seizure and forfeiture.

Terminates protection under this Act upon issuance of a design patent with respect to an original design.

Grants the U.S. district courts jurisdiction over actions arising under this Act.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of

Court for the United States Court of Appeals for the Ninth Circuit by using the

appellate CM/ECF system on February 24, 2025. I certify that all participants in

the case are registered CM/ECF users and that service will be accomplished by the

appellate CM/ECF system.

Date:  February 24, 2025                    SPENCER FANE LLP

*s/ Jeffrey M. Ratinoff*

_____
Jeffrey M. Ratinoff

*Attorneys for Appellees*
Neo4j, Inc. and Neo4j Sweden AB