No. 24-5538

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

NEO4J, INC., NEO4J SWEDEN AB,

*Plaintiffs-Appellees*,

v.

JOHN MARK SUHY,

*Defendant-Appellant.*

On Appeal from the United States District Court
For the Northern District of California
No. 5:18-cv-07182-EJD
Hon. Edward J. Davila

_____

## APPELLEES' EXCERPTS OF RECORD
## Volume 1 of 18

_____

John V. Picone III (State Bar No. 187226)
jpicone@spencerfane.com
Jeffrey M. Ratinoff (State Bar No. 197241)
jratinoff@spencerfane.com
Jeremy A. Moseley (MT Bar No. 44830177)
jmoseley@spencerfane.com

*Attorneys for Appellees*
Neo4j, Inc. and Neo4j Sweden AB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> PURETHINK, LLC, et al., <br><br> Defendants. | Case No. 5:18-cv-07182-EJD <br><br> **JUDGMENT** <br><br> Re: Dkt. Nos. 118, 216, 248 |

In accordance with the Court's Orders at ECF Nos. 118, 216, and 248, the Court ENTERS Judgment as follows:

1.      Judgment is entered in favor of Plaintiff Neo4j, Inc., on its First Cause of Action for Trademark Infringement, 15 U.S.C. § 1114, against Defendants for their infringement of the NEO4J Mark.  ECF No. 118.

2.      Judgment is entered in favor of Plaintiff Neo4j, Inc., on its Second Cause of Action for False Designation of Origin and False Advertising, 15 U.S.C. § 1125(a), against all Defendants.  ECF No. 118.

3.      Judgment is entered in favor of Plaintiff Neo4j, Inc., on its Third Cause of Action for Unfair Competition, 15 U.S.C. § 1125(a), against all Defendants for their infringement of the NEO4J Mark.  ECF No. 118.

4.      Judgment is entered in favor of Plaintiff Neo4j, Inc., on its Fourth Cause of Action for Unfair Competition, Cal. Bus. Prof. Code §§ 17200, et seq., against all Defendants.  ECF No. 118.

5.      Judgment is entered in favor of Plaintiffs on their Eighth Cause of Action for Unauthorized Distribution of Altered Copyright Management Information, 17 U.S.C. § 1202(b)(1) and 17 U.S.C. § 1202(b)(3), against all Defendants.  ECF No. 216.

6.      Plaintiffs are HEREBY AWARDED $597,000 in actual damages plus $57,288 in prejudgment interest, less the stipulated $26,000 deduction, and a permanent injunction as described in ECF No. 248.  Defendants are jointly and severally liable for the payment of all such amounts.  Each Party shall bear its own attorneys' fees and costs.

The Clerk of Court shall close the file in this matter.

**IT IS SO ORDERED.**

Dated: August 15, 2024

_____
EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| NEO4J, INC., et al., | Case No.  5:18-cv-07182-EJD |
| Plaintiffs, | |
| v. | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| PURETHINK, LLC, et al., | |
| Defendants. | |

Plaintiffs Neo4j, Inc. ("Neo4j USA") and Neo4j Sweden AB ("Neo4j Sweden") (collectively, "Plaintiffs") brought the present lawsuit against Defendants PureThink LLC ("PureThink"), iGov Inc. ("iGov"), and John Mark Suhy ("Suhy") (collectively, "Defendants") alleging claims under the Lanham Act and the Digital Millennium Copyright Act ("DMCA"), among other claims, related to Plaintiffs' proprietary software.  Third Am. Compl., ECF No. 90.

The Court previously found Defendants liable as to Neo4j USA's first, second, third, and fourth Lanham Act and unfair competition claims.  Order Granting Mot. for Partial Summ. J; Den. Cross-Mot. for Summ. J. ("First MSJ Order"), ECF No. 118.  The Court also found Defendants liable as to Neo4j Sweden's eighth cause of action for violation of the DMCA.  Order Granting Mot. to Strike Expert Report and Exclude Expert Testimony; Granting Mot. for Partial Summ. J. ("Second MSJ Order"), ECF No. 216.  The only issue remaining before the Court is damages.

The Court held a bench trial on November 14, 2023, and November 28, 2023, and heard oral arguments and evidence presented by both Parties.  ECF Nos. 225, 229.  The Court also received pre-trial and post-trial submissions of the Parties' proposed findings of fact and conclusions of law.  *See* Pls.' Proposed Findings of Fact and Conclusions of Law ("Pls.' FFCL"), Case No.: 5:18-cv-07182-EJD

FINDINGS OF FACT AND CONCLUSIONS OF LAW

1

United States District Court
Northern District of California

ECF No. 238; Defs.' Proposed Findings of Fact and Conclusions of Law ("Defs.' FFCL"), ECF No. 237.

Having considered the Parties' submissions and evidence, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).[1]

## I.  FINDINGS OF FACT

The Court finds the following facts based on factual findings from the Court's two prior summary judgment orders, facts stipulated to by the Parties, and all other relevant evidence in the record.

### A.  The Parties

1.  Plaintiff Neo4j USA is a corporation specializing in graph database management systems.  First MSJ Order 2.  Plaintiff Neo4j Sweden is a wholly owned subsidiary of Neo4j USA and owns all copyrights relating to the Neo4j graph database platform, including the source code. *Id.*

2.  Defendant Suhy is the founder and sole employee, member, and manager of Defendant PureThink, which is a single person limited liability software and information technology consulting company specializing in supporting agencies within the U.S. Government that use Neo4j graph database software.  Stip. of Undisputed Facts for Trial ("Undisputed Facts") ¶ 15, ECF No. 227.  Suhy also formed Defendant iGov, a software development and consulting company, to offer paid support services for open source Neo4j software to the IRS and other government agencies.  First MSJ Order 4.

### B.  The Neo4j Platforms

3.  Neo4j USA originally offered a free and open-source version of the Neo4j platform known as the Neo4j Community Edition ("Neo4j CE") under the GNU General Public License version 3 ("GPL") license.  Undisputed Facts ¶ 5.  The Neo4j CE source code was available to the

---

[1] Any findings of fact that constitute conclusions of law shall be deemed to have been found by the Court as a matter of law.  Likewise, any conclusions of law that constitute findings of fact shall be deemed to have been found by the Court as a matter of fact.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
2

public on GitHub pursuant to the GPL. First MSJ Order 3. Neo4j CE is limited in its feature set and does not come with technical or administrative support. Undisputed Facts ¶ 5. Neo4j CE under the GPL license remains publicly available and free. *See id.* ¶ 12.

4.  Neo4j USA also offered a more advanced commercial version which included additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j EE"). Undisputed Facts ¶ 6. Neo4j EE was originally offered under both a paid-for commercial license and the free GNU Affero General Public License ("APGL"). *Id.*

5.  In May 2018, Neo4j USA released Neo4j EE version ("v") 3.4, which they continued to offer under an open-source license; however, they replaced the AGPL with a stricter license, which included additional restrictions provided by the new Commons Clause. First MSJ Order 3. The Commons Clause prohibited the non-paying public from engaging in commercial resale and certain commercial support services. *Id.* This stricter license is referred to as the "Neo4j Sweden Software License." *Id.*

6.  In November 2018, Neo4j USA released Neo4j EE v3.5 under a commercial license only. Undisputed Facts ¶ 11. Moving forward, Plaintiffs were no longer publishing open source code for new versions of Neo4j EE. First MSJ Order 3.

**C.    Former Partnership Agreement Between the Parties**

7.  In 2014, PureThink and Neo4j USA entered into the Neo Technologies Solution Partner Agreement ("Partnership Agreement"). Undisputed Facts ¶ 17. In conjunction with its business, Neo4j USA owns several federally registered trademarks, including the word mark "NEO4J" ("Neo4j Mark"). First MSJ Order 2. Under the Partnership Agreement, PureThink had a non-exclusive, non-transferable limited license to use the Neo4j Mark solely to market and resell commercial licenses to Neo4j EE and related support services in exchange for shared revenue for the licenses that it resold. *Id.* at 3.

8.  In the hopes of increased sales, PureThink developed the Neo4j Government Edition ("Gov't Edition"), which was a package designed to use Neo4j EE to streamline the government's procurements. *Id.* at 4.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
3

9.     After a dispute concerning Suhy's use, distribution, and marketing of Neo4j's open source products, rather than the commercial products, and his marketing of consulting services focused on those products to the Internal Revenue Services ("IRS"), Neo4j USA terminated the Partnership Agreement on July 11, 2017. *Id.* at 4.  Neo4j USA demanded that PureThink no longer use Neo4j's trademarks, service marks, and other designations, as well as remove marketing materials and Neo4j's trademarks and tradenames from PureThink's website. *Id.*

10.     Suhy incorporated iGov to continue supporting open source Neo4j software without being bound by restrictions in the Partnership Agreement, which he believed to be unlawful. *Id.*

**D.     Defendants' Conduct Following the Partnership Agreement Termination**

11.     Suhy and iGov continued marketing the Gov't Edition and using the Neo4j Mark after the Partnership Agreement was terminated.  First MSJ Order 4.  For example, the iGov website used "https://igovsol.com/neo4j.html" as a URL to promote "Government Development Packages for Neo4j"; displayed a "Request Procurement Document Package" link with "mailto:neo4j@igovsol.com" embedded that creates an email addressed thereto upon activation; encouraged consumers to obtain more information by sending an email to "neo4j@igovsol.com"; and used "Government Packages for Neo4j" and "Neo4j Enterprise" to describe iGov's modified version of the Neo4j EE software. *Id.* at 5.

12.     After Plaintiffs released Neo4j EE v3.4—which replaced the AGPL with the Neo4j Sweden Software License—Suhy helped form Graph Foundation, Inc. ("the Graph Foundation").[2] First MSJ Order 6.

13.     The Graph Foundation began promoting a software called ONgDB, which it referred to as "free and open source." First MSJ Order 6.  Suhy created ONgDB using Neo4j EE v3.4 as a base, which was subject to the Neo4j Sweden Software License, but he removed the stricter Neo4j Sweden Software License and replaced it with the AGPL. *Id.*; Am. Dep.

---

[2] The Graph Foundation is not a defendant in this matter.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
4

United States District Court
Northern District of California

1   Designations, Ex. 2, Dep. of John Mark Suhy ("Suhy Dep.") 171:23–172:23, ECF No. 226.  Doing

2   so removed certain legal notices identifying Neo4j Sweden as the copyright holder and licensor

3   and removed the Commons Clause, effectively allowing Defendants to commercially use and

4   support ONgDB.  First MSJ Order 6.  Suhy testified that he believed he was permitted to remove

5   the Commons Clause based on his research of existing case law, research of other companies who

6   had removed similar information, and consultations with the Graph Foundation and the IRS. [3]

7   Suhy Dep. 196:22–199:21; Trial Tr. Vol. II 328:9–19, ECF No. 233; Trial Ex. 1012, ECF No.

8   242-38.

9         14.     Following the creation of ONgDB, Suhy provided hyperlinks to potential users of

10   Neo4j EE to view and download ONgDB from the Graph Foundation's website and GitHub

11   repository using his iGov and PureThink email addresses.  Undisputed Facts ¶¶ 42, 43.  iGov's

12   website also provided links to potential users of Neo4j EE to download ONgDB directly from

13   iGov and from the Graph Foundation's website.  Id. ¶¶ 44, 45.  The "landing page" for ONgDB on

14   GitHub was very similar to that of Neo4j EE.  First MSJ Order 7.  It was titled "ONgDB – Neo4j

15   Enterprise Fork: Graphs for Everyone," and contained numerous references to Neo4j throughout.

16   Id.

17         15.     Defendants also made a series of representations regarding ONgDB, including

18   communicating to potential customers that ONgDB v3.5 was "100% free and open" with no

19   limitations or restrictions imposed by the Neo4j EE v3.5 commercial license.  First MSJ Order 7.

20   iGov also promoted ONgDB and asserted that "ONgDB is a drop in replacement for the Neo4j

21   Community and Enterprise branded distributions."  Id.  Defendants have made similar statements

22   directly to potential customers, such as characterizing ONgDB as a "100% open source and a drop

23

24   _____

25   [3] Plaintiffs argue that Suhy's statement regarding consulting the IRS is contradicted by the IRS
    representative's deposition.  Pls.' FFCL 9 n.2.  However, Suhy specifically stated that he
    discussed his ability to *remove* the Commons Clause with the IRS, whereas, in the section cited to
26   by Plaintiffs, the IRS representative testified that he did not know of any conversation with Suhy
    regarding Neo4j USA's ability to *add* the Commons Clause.  *Compare* Trial Tr. Vol. II 328:9–19,
27   *with* Dep. Designations, Ex. 5, Dep. of Internal Revenue Service Through its Designee Michael C.
    Dunn ("Dunn Dep.") 97:17–98:21, ECF No. 210.

28   Case No.: 5:18-cv-07182-EJD
    FINDINGS OF FACT AND CONCLUSIONS OF LAW
    5

1    in replacement for the same Neo4j version." *Id.*

2    16.    Relying on these and other facts, the Court made three findings relevant to the

3    present Findings of Fact and Conclusions of Law.

4    17.    First, the Court found that the following conduct constituted trademark

5    infringement: (1) extensively using "Neo4j' and "Neo4j Enterprise" on iGov and PureThink

6    websites without proper trademark notices; (2) using embedded "Neo4j" links to Neo4j USA's

7    website and GitHub repository on their websites; (3) hyperlinking to Plaintiffs' build instructions,

8    support documentation and change logs containing the Neo4j Mark rather than creating and

9    hosting their own with the ONgDB name; and (4) using of "Neo4j Enterprise" and "ONgDB"

10    interchangeably to promote ONgDB on their websites.  First MSJ Order 21.  The Court found that

11    Defendants were not using "Neo4j" to refer to Plaintiffs' products; they were using it to create the

12    misleading perception that Defendants' products were Plaintiffs' products.  *Id.* at 20.

13    18.    Second, the Court found that Defendants' claims that ONgDB was a "drop-in

14    replacement" or "open source" constituted false advertising and false designation of origin.  *Id.* at

15    28–32.

16    19.    Third, the Court found that Suhy's removal of the copyright management

17    information ("CMI"), that is, the removal of the Commons Clause and replacement of the Neo4j

18    Sweden Software license with a generic open source APGL license, violated the DMCA.  Second

19    MSJ Order 23.

20    **E.    Damages**

21    20.    Given that the Court has determined liability, the only issue remaining is damages.

22    Central to Plaintiffs' claims for damages are offers made to, and rejected by, (1) the Maryland

23    Procurement Office ("MPO"), and (2) the IRS.

24    **1.    MPO**

25    21.    The MPO, on behalf of the National Security Agency ("NSA"), tasked third party

26    company Next Century to analyze available graph database technologies for a project referred to

27    as the "KMS Project."  Stip. to the Amount of Pls.' Lost Profits and Defs.' Profits ("Stip. to

28    Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
6

United States District Court
Northern District of California

Amount") ¶¶ 1, 8, ECF No. 234.  The KMS Project was essentially a continuation of prior projects where the MPO had similarly tasked Next Century with analyzing available graph database technologies, including projects referred to as "Task Order 39" and "Blue Rocket Task Order 50." Dep. Designations, Ex. 4, Dep. of Jim Weyant as a Representative of CACI International, Inc. ("Weyant Dep.") 92:23–94:12, 96:4–11, 103:21–104:3, 108:2–19, ECF No. 210.

22.     Next Century was looking for enterprise-only features, such as causal clustering and multi-data centers, which were offered by both Neo4j EE and ONgDB.  Stip. to Amount ¶ 2.

23.     In June 2018, Next Century sought information from Neo4j USA regarding certain Neo4j EE features, including causal clustering.  Trial Ex. 103, ECF No. 241-27.  In response, Neo4j USA confirmed those features required a commercial subscription for Neo4j EE, and the pricing for it was based on the number of servers in the cluster, cores per server, and RAM per server.  *Id.*  Neo4j USA informed Next Century that their prices started at $111,000 per year for a 3-server cluster with standard support.  *Id.*  This price rose to $199,000, by April 2019.  Trial Ex. 17, ECF No. 239-4.

24.     Next Century obtained additional information about the pricing of Neo4j USA's Neo4j EE software bundles from iGov's website and learned that iGov offered the same software for free under the AGPL bundled with iGov's consulting services.  Stip. to Amount ¶ 3.

25.     In October 2018, Next Century exchanged emails with Suhy regarding representations made on iGov's website that ONgDB was an open source version of Neo4j EE that provided the same enterprise-only features for free.  *Id.* ¶ 4.

26.     Suhy told Next Century that they could use ONgDB under the AGPL without restrictions or paying Plaintiffs for a commercial license, as advertised on the iGov's website. Undisputed Facts ¶ 114.

27.     As a result of Next Century's communications with Suhy, Next Century downloaded ONgDB v3.4 and began evaluating it against Neo4j EE v3.4.  *Id.* ¶ 15.

28.     In a series of emails with Next Century ending on January 4, 2019, Suhy confirmed that ONgDB v3.5 would have feature parity with the enterprise features of Neo4j EE v3.5 and

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
7

United States District Court
Northern District of California

would also be available without restrictions on the number of clusters, instances, and cores, and without paying Neo4j USA for a commercial license.  *Id.* ¶ 16.  This led Next Century to upgrade from ONgDB v3.4 to ONgDB v3.5 for use in the KMS Project.  *Id.*

29.     By February 2019, the MPO had chosen to use ONgDB v3.5 over Neo4j EE v3.5 for continued development work for the KMS Project.  *Id.* ¶ 117.  On February 5, 2019, Next Century informed Neo4j USA of this decision, stating, "[w]e have found that open-sourced (non-commercial) builds from the Neo4j source code provide the clustering and security requirements needed in our environment."  *Id.* ¶ 118.

30.     However, Next Century was still researching other graph databases, including Neo4j EE.  Weyant Dep. 92:19–25.  Next Century and Neo4j USA continued their discussions, and in March 2019, Next Century gave Neo4j USA the required specifications for its ongoing KMS Project and asked Neo4j USA to provide a quote for use in a production environment.  Trial Ex. 116, ECF No. 241-40.  Although Next Century cautioned that they did not "have a firm grasp on what the (eventual) production posture will be," Next Century provided Neo4j with some information "for now."  Trial Ex. 116.

31.     On April 19, 2019, Neo4j USA sent a 3-year Neo4j EE Enterprise Bundle offer based on those requirements ("April 2019 Offer").  Trial Ex. 118, ECF No. 241-42.  Under this proposal, Next Century and the MPO had the option to (a) purchase three one-year subscriptions on an incremental basis for a total of $2,667,000; or (b) purchase a 3-year subscription for a total of $2,266,950, which reflects a 15% multi-year, paid up front discount.  *Id.*

32.     On April 29, 2019, Next Century confirmed that it shared Neo4j USA's proposal with the MPO and was instructed by the MPO to continue using ONgDB.  Trial Ex. 119, ECF No. 241-43.

33.     A few months later, as a follow up to a meeting between Neo4j USA and Next Century that occurred in May 2019, Neo4j USA emailed Next Century stating that they were prepared to offer "a more robust capability that provides the same SLA as your Neo4j CE based solution for a much lower price point than what we originally proposed based on your initial stated

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
8

requirements."  Trial Ex. 120, ECF No. 241-44.

34.    That same day, Next Century informed Neo4j USA that the MPO was not interested in the Neo4j EE proposal for the KMS project.  *Id.*  The reason for the MPO continuing to use ONgDB over Neo4j EE was price.  *Id.*; Stip. to Amount ¶ 101.

35.    The project immediately following the expiration of the KMS Project, referred to as "Route 66," continued on to deploy an ONgDB-based solution, and the subcontracts and renewals that followed continued deploying ONgDB-based solutions until as recently as October 2022. Weyant Dep. 116:25–117:5, 126:12–127:23.

36.    While the MPO declined Neo4j USA's offer in this instance, MPO has purchased six other one-year commercial licenses from Neo4j USA between 2014 and 2022, which ranged from $9,300 to $248,310, as well as one two-year commercial license for $66,249.  Trial Ex. 15, at lines 337–43, ECF No. 240.

37.    The Parties stipulated to the calculations as to the profits Neo4j USA would have generated had the MPO accepted their April 2019 Offer as written, which range from $1,786,542 to $2,370,598.  Stip. to Amount ¶¶ 21–24.

### 2.    IRS

38.    In April 2018, Suhy submitted a bid for a new contract issued by the IRS for a project referred to as the "CKGE Project" on behalf of eGovernment Solutions, Inc. ("eGov"), another entity that he had an ownership interest in at the time.[4]  Under Suhy's proposal, eGov would perform "all operations and maintenance duties for all components of the CKGE framework," including working with Neo4j components.  Trial Ex. 181, ECF No. 242-5; Undisputed Facts ¶¶ 61, 62.

39.    In May 2018, the IRS publicly posted an intent to award the sole source contract for the CKGE Project to eGov.  Trial Tr. Vol. I 79:20–23, ECF No. 231.  Under this contract, eGov would perform all operations and maintenance duties for all components of the CKGE

---

[4] eGov is not a Defendant in this matter.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW

9

United States District Court
Northern District of California

framework.  Trial Ex. 124, ECF No. 241-48.  At that time, the CKGE Project had been using the

publicly available Neo4j EE v3.2.  Dep. Designations, Ex. 5, Dep. of Internal Revenue Service

Through its Designee Michael C. Dunn ("Dunn Dep.") 99:3–100:10, ECF No. 210.

40.     Neo4j USA saw this public post and emailed the IRS on May 22, 2018.  Trial Ex.

126, ECF No. 241-50; Trial Tr. Vol. I 79:20–82:8.  Neo4j USA believed that the CKGE Project

would require Neo4j EE v3.4, so they contacted the IRS to inform them of the licensing changes

to the Neo4j EE v3.4, namely the addition of the Commons Clause, and encourage them to

purchase a commercial license and support services for that license from Neo4j USA.  Trial Tr.

Vol. I 81:22–82:8. That same day, Suhy sent an email to the IRS opining that Neo4j Sweden could

not lawfully add the Commons Clause to the license governing Neo4j EE v3.4.  Trial Ex. 128,

ECF No. 241-52.  The IRS subsequently declined the invitation to purchase the Neo4j EE v3.4

license, informing Neo4j USA that their budget was "extraordinarily limited in all avenues," and

they would be sticking with the publicly available Neo4j EE v3.2 that they had been using.  Trial

Ex. 128; Trial Ex. 131.  However, the IRS welcomed Neo4j USA to provide a demonstration of

the 3.4 version for planning purposes.  *Id.*

41.     On May 24, 2018, the IRS officially awarded eGov the new contract to further

develop and support the CKGE Project.  Trial Ex. 182, ECF No. 242-6; Trial Ex. 183, ECF No.

242-7.  The project proceeded using the publicly available Neo4j EE v3.2.  Dunn Dep. 99:3–

100:10.

42.     In June 2018, the IRS had asked Suhy about switching from Neo4j EE v3.2 to the

Neo4j 3.3.1 CE because, given the amount of users and the demand requirements, "it wasn't

necessary to have any of the Enterprise features."  Dunn. Dep. 110:11–101:4; Trial Ex. 129, ECF

No. 241-53. [5]  Suhy responded by suggesting that, instead of switching to Neo4j CE v3.3.1, the

---

[5] The Court took into consideration the Parties' stipulation that the IRS used at least one Neo4j
enterprise-only feature, node ID, via ONgDB in CKGE, Stip. to Amount ¶ 41, and weighed that
fact against the IRS representative's email and testimony stating that they were not seeking
enterprise features at the time,  Dunn. Dep. 110:11–101:4; Trial Ex. 129, as well as Suhy's
testimony consistent with this evidence, Trial Tr. Vol. II 322:5–323:5.  The Court also notes that it
has considered and rejected Plaintiffs' blanket assertion that Suhy's testimony disagreeing with
Case No.: 5:18-cv-07182-EJD

FINDINGS OF FACT AND CONCLUSIONS OF LAW

10

IRS should adopt the open fork software managed by eGov for the CKEG project, which was later released as ONgDB.  Trial Ex. 129.  The IRS accepted Suhy's advice and planned to integrate ONgDB rather than switch to Neo4j CE v3.3.1.  Dunn. Dep. 102:3–15.

43.     Meanwhile, the IRS had been continuing its discussions with Neo4j USA about Neo4j EE v3.4 "for planning purposes."  Trial Ex. 128, 131.  After some back and forth, on July 18, 2018, Neo4j USA provided IRS a quote for $156,000 for a one-year Neo4j EE subscription and $397,800 for three years to use in the CKGE Project ("July 2018 Offer"), with the understanding that the IRS was "just looking for budgetary pricing at the moment."  Trial Ex. 131, ECF No. 241-55.  On July 27, 2018, the IRS replied that the quote was helpful "for planning purposes," but informed Neo4j USA again that they still did not intend to purchase the subscription at that time.  *Id.*

44.     In August 2018, approximately one month after the IRS had declined to purchase a Neo4j EE v3.4 license for the second time, the IRS followed up on their June 2018 plan to integrate ONgDB instead of Neo4j CE v3.3.1.  Trial Ex. 132, ECF No. 241-56.  The IRS asked Suhy if it would be easier to switch to ONgDB in the CKGE Project at that time, or if they should wait and deploy the CKGE with Neo4j EE v3.3.2 and then later transition.  Trial Ex. 132.  Suhy recommended that the IRS integrate ONgDB v3.4 at that time rather than continue using Neo4j EE v3.3.2 in the CKGE framework, claiming that "ONgDB open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc."  Trial Ex. 132, 133.

45.     Based on Suhy's recommendation, the IRS instructed him to "[g]o ahead and integrate the ONgDB into the CKGE framework we'll deploy" on August 14, 2018.  Trial Ex. 133, ECF No. 241-57.

46.     The IRS had a team dedicated to supporting ONgDB, and Suhy's contract for the CKGE Project did not specifically require him to provide support for ONgDB.  Trial Tr. Vol. II

---

this, and other stipulated facts, renders him an unreliable witness in all regards.  Pls.' FFCL 3 n.1, 9 n.2, 35.  The Court will continue to exercise its discretion to give appropriate weight to Suhy's testimony in light of other evidence in the record.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
11

United States District Court
Northern District of California

316:16–17; 320:11–321:25.[6]  However, Suhy did provide input in the architecture design and hardware requirements needed to run ONgDB installations on multiple servers within the CKGE. *Id.*; Undisputed Facts ¶ 32.

47.     After the Court's preliminary injunction requiring that the IRS remove ONgDB from their servers, the IRS switched back to Neo4j CE.  Trial Tr. Vol. I 277:18–278:14, 280:22.

48.     The Parties stipulated to the calculations as to the profits Neo4j USA would have generated had the IRS accepted their July 2018 Offer as written, along with additional commercial subscriptions for every integration of ONgDB that followed, ranging from $2,646,557 to $3,069,646 in lost profits.  Stip. to Amount ¶¶ 60, 63.

49.     The Parties also stipulated that iGov and Suhy gained $1,316,000 in profits from the IRS under the CKGE Contract, as well as an additional $246,082.55 for work performed under IRS subcontracts.  *Id.* ¶¶ 68, 71.

## II.     CONCLUSIONS OF LAW

The Court previously found Defendants liable under the Lanham Act's prohibition of trademark infringement and false advertising and designation of origin, as well as the DMCA's prohibition of copyright infringement.  *See* First MSJ Order; Second MSJ Order.  Plaintiffs now seek relief in the form of monetary damages under the Lanham Act and the DMCA, as well as a permanent injunction.  Pls.' FFCL.  The Court will address each request below.

### A.     Monetary Damages

Under the Lanham Act, the court may, "in its discretion and subject to the principles of equity," award monetary damages in the form of actual damages, the defendant's illicit profits, and attorneys' fees.  *Jason Scott Collection, Inc. v. Trendily Furniture*, LLC, 68 F.4th 1203, 1220 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 550 (2024) (internal quotation marks omitted) (quoting  15 U.S.C. § 1117(a)).  Courts "assess trademark damages in the same manner as tort damages: the

---

[6] The Court weighed the IRS representative's testimony on this point, Dunn Dep. 97:17–98:21, against Suhy's testimony and the other evidence in the record, including Suhy's contract, Trial Ex. 1011, ECF No. 242-37.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
12

United States District Court
Northern District of California

1    reasonably foreseeable harms caused by the wrong." *Id.* (internal quotation marks omitted)

2    (quoting *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110, 1113 (9th Cir. 2012)).

3         To recover actual damages sustained by a plaintiff, the plaintiff must prove both (1) the

4    fact of the damages and (2) the amount of damages. *Skydive Arizona, Inc. v. Quattrocchi*, 673

5    F.3d 1105, 1112 (9th Cir. 2012); *see also eAdGear, Inc. v. Liu*, No. CV-11-05398 JCS, 2012 WL

6    2367805, at *18 (N.D. Cal. June 21, 2012), *report and recommendation adopted*, No. C-11-05398

7    RMW JCS, 2012 WL 4005454 (N.D. Cal. Sept. 11, 2012).  Once the fact of damages is

8    established, plaintiffs are held to a lower standard of proof regarding the exact amount of actual

9    damages. *Skydive Arizona*, 673 F.3d at 1112.

10        Regarding a defendant's profits, a plaintiff may recover an infringing defendant's profits as

11   a measure of the plaintiff's own damages or on a theory of disgorgement. *Sky Billiards, Inc. v.*

12   *Loong Star, Inc.*, No. EDCV14921JGBSPX, 2016 WL 6661175, at *6 (C.D. Cal. Mar. 17, 2016)

13   (citing *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993)).  "[A] trademark

14   defendant's mental state is a highly important consideration in determining whether an award of

15   profits is appropriate." *Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212, 219 (2020).

16        Attorneys' fees may be awarded at a court's discretion in "exceptional cases." 15 U.S.C. §

17   1117(a).  Courts determine whether a case is "exceptional" by examining the totality of the

18   circumstances and "evaluating whether the case is one that stands out from others with respect to

19   the substantive strength of the party's litigating position . . . or the unreasonable manner in which

20   the case was litigated based on a preponderance of the evidence." *Jason Scott Collection*, 68 F.4th

21   at 1223.

22        Similarly, under the DMCA, a plaintiff may also recover "the actual damages suffered . . .

23   as a result of the violation, and any profits of the violator that are attributable to the violation and

24   are not taken into account in computing the actual damages." 17 U.S.C. § 1203(c)(2).  Actual

25   damages may consist of lost licensing fees and renewal fees, as well as lost profits. *See Polar*

26   *Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707–08 (9th Cir. 2004) (affirming an actual

27   damages award based on the copyright holder's actual price quote to the infringer).  A plaintiff

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                    13

1    may also recover hypothetical-license damages as actual damages.  *Id*

2        Here, Plaintiffs argue that Defendants' trademark infringement, false advertising and false

3    designation of origin, and copyright infringement caused Plaintiffs to lose potential licensing

4    contracts with, and caused Defendants to gain illicit profits from, the MPO and the IRS.[7]

5    Plaintiffs also argue that Defendants' conduct makes this case "exceptional" and gives rise to

6    attorneys' fees and prejudgment interest.

7        The Court will address in turn Plaintiffs' requests for monetary damages regarding: (1) the

8    MPO offer, (2) the IRS offer, (3) attorneys' fees, and (4) prejudgment interest.  Where the Court

9    finds monetary damages appropriate, the Court will also address Defendants' argument that any

10   award should be reduced pursuant to the DMCA's innocent copyright infringer defense.

### 1.    MPO

12       Plaintiffs argue that Defendants' trademark infringement, false advertising and false

13   designation of origin, and copyright infringement caused Plaintiffs to lose potential licensing

14   revenue after the MPO rejected their April 2019 Offer for a Neo4j EE commercial license

15   subscription and instead adopted ONgDB for free.  *See* Pls.' FFCL 29–31.  Plaintiffs seek an

16   award of $2,370,598 in lost licensing revenue.  *Id.* at 30.  Given that Defendants did not generate

17   any profit from these circumstances, Plaintiffs do not seek damages in the form of Defendants'

18   illicit profits.  *See id.* at 29–31.

19       To reiterate, in order to recover actual damages, Plaintiffs must prove both (1) the fact of

20   the damages and (2) the amount of damages.  *Skydive Arizona*, 673 F.3d at 1112.  Once the fact of

21   damages is established, plaintiffs are held to a lower standard of proof regarding the exact amount

22   of actual damages.  *Id.*

23       For the reasons explained below, the Court finds that, although there is evidence that

24   Defendants' conduct caused the MPO to integrate ONgDB v3.5 for free rather than pay for a

25   Neo4j EE commercial license, there is insufficient evidence to show that the MPO would have

26

27   [7] Plaintiffs' briefing does not request independent damages for the unfair competition claims.  *See* Pls.' FFCL 28.

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
     14

*United States District Court*
*Northern District of California*

accepted the specific prices quoted in Plaintiffs' April 2019 Offer but for Defendants' conduct.

### a.    Fact of Damages

The Court finds that Defendants' (1) trademark infringement, (2) false advertising and designation of origin, and (3) copyright infringement caused Neo4j USA damages in the form of lost licensing revenue from the MPO.

<u>First</u>, the evidence shows that Defendants' trademark infringement violation contributed to the MPO choosing ONgDB over Neo4j EE.

The Court previously found that the following conduct was likely to create customer confusion and thus gave rise to trademark infringement: (1) marketing without proper trademark notices products called "Neo4j Enterprise" and "Government Package for Neo4j" to create the misleading perception that Defendants' products were Plaintiffs' products; (2) using the Neo4j Mark in their URLs and email addresses; (3) using embedded "Neo4j" links to Neo4j USA's website and GitHub repository on their websites; (4) hyperlinking to Plaintiffs' build instructions, support documentation and change logs containing the Neo4j Mark rather than creating and hosting their own with the ONgDB name; and (5) using of "Neo4j Enterprise" and "ONgDB" interchangeably to promote ONgDB on their websites.  First MSJ Order 19–22.

Here, the KMS Project required the enterprise features found in both Neo4j EE and ONgDB.  Undisputed Facts ¶ 111.  The MPO learned about the pricing of Neo4j Enterprise software bundles offered by Neo4j USA and iGov from iGov's website, and subsequently exchanged emails with Suhy regarding representations made on iGov's website that ONgDB was an open source version of Neo4j EE that provided the same enterprise-only features for free.  *Id.* ¶¶ 3, 4.  Suhy also informed Next Century that the MPO could use ONgDB under the AGPL without restrictions or paying Plaintiffs for a commercial license, as advertised on the iGov's website.  *Id.* ¶ 5.  As a result of Next Century's communications with Suhy, Next Century downloaded ONgDB v3.4 and began evaluating against Neo4j EE v3.4.  *Id.* ¶ 6.  The MPO subsequently chose to integrate ONgDB v3.4 for free instead of Neo4j EE v3.4, and later upgraded to ONgDB v3.5 instead of purchasing Neo4j EE v3.5.  *Id.*  This series of events makes clear that

United States District Court
Northern District of California

the trademark infringements on iGov's website led to the MPO learning of ONgDB and ultimately choosing ONgDB v3.5 over Neo4j EE v3.5.

Second, the evidence shows that Defendants' false advertising and false designation of origin violation contributed to the MPO choosing to integrate ONgDB over Neo4j EE.

The Court previously found that Defendants' characterization of ONgDB as a "drop-in replacement" and "open source" are material statements that were false or likely to mislead consumers.  First MSJ Order 28–32.

Here, for similar reasons, the Court finds that Defendants' advertisement of ONgDB to Next Century as a "drop-in replacement" and "open source" contributed to the MPO integrating ONgDB rather than Neo4j EE.  As discussed above, the KMS Project required the enterprise features found in both Neo4j EE and ONgDB, and the MPO ultimately chose ONgDB in part on the belief that it was a "drop-in replacement" and "open source" version of Neo4j EE.  Undisputed Facts ¶ 111.

Third, the evidence shows that Defendants' DMCA violation contributed to the MPO choosing ONgDB over Neo4j EE.

The Court previously found that Defendants' removal of the Commons Clause and replacement of the Neo4j Sweden Software license with a generic open source APGL license violated the DMCA.  Second MSJ Order 16–24.

Again here, the evidence shows that the KMS Project required the enterprise features found in both Neo4j EE and ONgDB, and the MPO ultimately chose ONgDB in part because it offered the same features as Neo4j EE, but for free.  Because Defendants' removal of the Commons Clause allowed the MPO to use ONgDB v3.5 for free rather than pay for a Neo4j EE v3.5 commercial license, the DMCA violation necessarily contributed to the MPO choosing ONgDB over Neo4j EE.

Based on the foregoing, the Court finds sufficient evidence that Defendants' Lanham Act and DMCA violations caused the MPO to implement ONgDB instead of purchasing a commercial license from Neo4j USA.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
16

### b.     Amount of Damages

While Plaintiffs have proven the fact of damages, the Court finds the evidence insufficient to establish that this conduct caused Plaintiffs to lose $2,370,598 in potential licensing revenue. However, the Court finds sufficient evidence to show that the MPO would have accepted an offer for a lesser amount.

### i.     Insufficient Evidence to Support Damages Requested

Most notably, the evidence shows that the April 2019 Offer was not final.  When Next Century provided the information to generate the April 2019 quote, they informed Neo4j USA that they did not "have a firm grasp on what the (eventual) production posture will be," but provided Neo4j with some information "for now."  Trial Ex. 116, ECF No. 241-40.  A few months later, after a meeting between Neo4j USA and Next Century, Neo4j USA emailed Next Century stating that they were prepared to offer a "much lower" quote—in Neo4j USA representative's own words, Neo4jUSA was willing to offer "a more robust capability that provides the same SLA as your Neo4j CE based solution for a *much lower price* point than what we originally proposed based on your initial stated requirements." Trial Ex. 120 (emphasis added).  Plaintiffs have provided no evidence for the Court to presume what amount this new quote may have been.

Further, there is no evidence that the MPO had the budget to accept the April 2019 Offer for the KMS Project; to the contrary, the only evidence regarding funding is evidence showing that the MPO's prior similar projects with Next Century never budgeted for a commercial license. Weyant Dep. 30:6–17, 37:6–13, 67:11–21, 92:23–94:12, 96:4–11, 108:2–19, 103:21–104:3.

Finally, while the Parties' stipulation states that the MPO's willingness to purchase a commercial license for Neo4j EE for the KMS Project is supported by its history of purchasing other Neo4j EE commercial licenses, the Court finds this support tenuous.  It is true that the MPO has a history of purchasing Neo4j EE commercial licenses, and this fact serves to support Plaintiffs' argument.  Undisputed Facts ¶ 18.  However, there is a significant price disparity between the licenses purchased and the April 2019 Offer.  The evidence shows that between 2014 and 2022, the MPO purchased six one-year commercial licenses from Neo4j USA, which ranged

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW

17

from $9,300 to $248,310, as well as one two-year commercial license for $66,249. Trial Ex. 15, at

lines 337–43. In total, the MPO has spent $929,208.00 in various licenses across the course of

eight years. But here, the April 2019 Offer gave the MPO the option to purchase three one-year

subscriptions for a total of $2,667,000 or purchase a three-year subscription for a total of

$2,266,950. Undisputed Facts ¶ 17. There is no evidence of any comparable purchases or other

evidence of the MPO's budget which would support Plaintiffs' argument that the MPO had the

ability to accept a multi-million dollar licensing package. Considering this extreme price

disparity, there is insufficient evidence to support the damages sought by Plaintiffs.

Together, these facts demonstrate the lack of evidence sufficient to show that the MPO

would have accepted the April 2019 Offer as written but for Defendants' conduct. While

Plaintiffs are correct that the Court had previously found that the circumstances surrounding the

April 2019 Offer gave rise to a presumption of injury under the Lanham Act, the Court cannot

presume that Plaintiffs would have generated over two million dollars in revenue given these

facts.[8]

<div align="center">

**ii.**     **Sufficient Evidence to Show Lesser Amount of Damages**

</div>

However, Plaintiffs are correct that they have a lower burden of proof in calculating the

exact amount of actual damages here. *Skydive Arizona*, 673 F.3d at 1112. Calculations need not

rely on, for example, empirical quantification or expert testimony—they must only be supported

by "reasonable inferences and assessments, based upon substantial evidence in the record." *Id.* at

1113. While there is insufficient evidence to establish that the MPO would have accepted the

April 2019 Offer as written, the evidence of other purchases and the ongoing negotiations does

support a conclusion that the MPO would have been more likely to accept an offer of a lower

amount but for Defendants' conduct.

---

[8] To clarify, the Court did not make a finding as to the specific amount of actual damages incurred by the loss of the MPO contract in its First MSJ Order, as Plaintiffs argue. *See* Pls.' FFCL 22. While the Court found that Plaintiffs provided evidence sufficient to show an injury arising from Defendants' Lanham Act violations, the issue of calculating monetary damages was not presented before the Court at that time. First MSJ Order 16.

Case No.: 5:18-cv-07182-EJD

FINDINGS OF FACT AND CONCLUSIONS OF LAW

18

Aside from Neo4j USA's multi-million dollar offer, the only other estimate in the evidence is in Neo4j USA's initial communications with Next Century in June 2018, where Neo4j USA informed Next Century that the Enterprise Edition bundles started at $111,000 per year for a 3-server cluster with standard support.  Trial Ex. 103.  By the time Neo4j USA made its April 2019 Offer, this starting bundle price rose to $199,000, with optional add-ons for an increased price.  Trial Ex. 17.  This number is also reflected in the breakdown of Neo4j USA's April 2019 Offer.  Trial Ex. 118.

The Court finds sufficient evidence to show that the MPO would have at least purchased this starting bundle for $199,000 but for Defendants' conduct.  This price reflects the lowest possible bundle price, therefore even a "much lower quote" would not have fell below this amount.  *See* Steven Boyles Expert Report, Trial Ex. 209, Expert Report of Steven B. Boyles, at 41 n.169, ECF No. 244-3.  This price also falls within the range of other licenses that the MPO has purchased from Neo4j USA, and it is an amount that could have conceivably been allocated from Next Century's awards in similar prior projects.  Trial Ex. 15, at lines 337–43; Weyant Dep. 30:6–17.  The Court notes that it cannot be certain whether this base configuration would have ultimately been enough to fit the MPO's specific needs for the KMS Project—it is possible that the KMS Project required additional servers or machines; but as discussed above, there is no evidence regarding exactly what the MPO required beyond the base package given Neo4j USA's email indicating that the specifications used for the April 2019 quote had changed.

Finding that the evidence shows the MPO likely would have purchased, at a minimum, the starting bundle for $199,000 but for Defendants' conduct, the Court now considers how many years of that subscription the MPO would have purchased.  Neo4j USA's April 2019 offer was limited to the KMS Project, which terminated in September 2019, and Neo4jUSA did not make any additional offers.  *See* Trial Ex. 103.  However, the evidence also shows that the project immediately following the expiration of the KMS Project, referred to as "Route 66," continued on to deploy an ONgDB-based solution, and the subcontracts and renewals that followed continued deploying ONgDB-based solutions until as recently as October 2022.  Weyant Dep. 116:25–117:5,

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
19

United States District Court
Northern District of California

126:12–127:23.[9]  There is also evidence that the MPO has historically renewed other Neo4j EE license subscriptions.  Trial Ex. 15, at lines 337–43.  Taken together, the evidence supports a finding that, if the MPO had implemented a Neo4j EE subscription in the KMS Project, the projects immediately following would have done the same until October 2022; thus, the MPO would have renewed this contract for at least three years following the April 2019 Offer for a total of $597,000.

Therefore, in consideration of Plaintiffs' lower burden of proof in calculating the exact amount of actual damages, *Skydive Arizona*, 673 F.3d at 1112, the Court exercises its discretion in evaluating the evidence and equities and awards $597,000 in actual damages.

### c. Innocent Infringer

Defendants argue that any monetary award should be reduced or remitted because Suhy's DMCA violation was "innocent" pursuant to 17 U.S.C. § 1203(c).  Defs.' FFCL 11.  Defendants argue that Suhy had no reason to believe that removing the Commons Clause would violate the DMCA, highlighting that Suhy read the AGPL license, studied information, and spoke with the Free Software Foundation, the copyright holder of the AGPL, which confirmed that the addition could be removed.  *Id.*

The Court finds Defendants' arguments irrelevant to its award of damages here.  The Court found that the actual damages arising out of the lost MPO contract was the result of not only Defendants' DMCA violation, but also Defendants' violation of the Lanham Act.  Thus, even if the Court were to find that Suhy was an innocent copyright infringer because he believed he could lawfully remove the Commons Clause, this would not alter the actual damages award arising from the Lanham Act violations.  Therefore, the Court finds it unnecessary to address Defendants' DMCA innocent copyright infringer arguments.

* * *

---

[9] While the MPO increased the number of servers and machines once ONgDB was placed into production, there is no evidence that this increase met or exceeded the specifications in Neo4j USA's April 2019 Offer.  Weyant Dep. 118:7–24.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
20

United States District Court<br>Northern District of California

The Court finds that Plaintiffs have provided evidence sufficient to show the fact of damages, but not sufficient to show the amount Plaintiffs requested.  Therefore, the Court exercises its discretion to award Plaintiffs $597,000 in actual damages.

### 2.   IRS

Plaintiffs argue that Suhy's trademark infringement, false advertising and false designation of origin, and copyright infringement caused Plaintiffs to lose potential licensing revenue after the IRS rejected their July 2018 Offer for a Neo4j EE v§3.4 commercial subscription and instead adopted ONgDB for free.  Pls.' FFCL 30.  Plaintiffs seek an award of $3,069,646 in potential licensing revenue, as well as $1,562,082.55 in Defendants' illicit profits.  *Id.* at 31.

Again here, to recover actual damages, Plaintiffs must prove both (1) the fact of the damages and (2) the amount of damages.  *Skydive Arizona*, 673 F.3d at 1112.

For the reasons explained below, the Court finds that Plaintiffs fail at the first step—there is insufficient evidence to show that Suhy's conduct caused Plaintiffs to lose potential licensing revenue or caused Suhy to gain illicit profits.

### a.   Fact of Damages

The Court finds insufficient evidence to show that Defendants' (1) trademark infringement, (2) false advertising and designation of origin, or (3) copyright infringement caused Neo4j USA damages in the form of lost licensing revenue from the IRS.

First, the Court finds insufficient evidence to show that Suhy's trademark infringement contributed to Plaintiffs losing potential licensing revenue from their July 2018 Offer.

There is simply no evidence that the IRS ever came across or experienced the online conduct that the Court found constituted trademark infringement, i.e., marketing "Neo4j Enterprise" and "Government Package for Neo4j" without proper trademark notices; using the Neo4j Mark in their URLs and email addresses; using embedded "Neo4j" links on their websites; hyperlinking to Plaintiffs' materials containing the Neo4j Mark; or using of "Neo4j Enterprise" and "ONgDB" interchangeably to promote ONgDB on their websites.  First MSJ Order 19–22. For those same reasons, the Court finds that there is no evidence to show that Suhy and eGov were

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
21

<div style="text-align: right; writing-mode: vertical">United States District Court<br>Northern District of California</div>

1    awarded their contract due to any of the conduct the Court found gave rise to trademark

2    infringement.

3         <u>Second</u>, the Court finds insufficient evidence to show that Suhy's false advertising and

4    false designation of origin violation contributed to Plaintiffs losing potential licensing revenue

5    from their July 2018 Offer.

6         Plaintiffs argue that Suhy's characterization of ONgDB as an "open source license" that

7    "come[s] directly from the Graph Foundation" caused the IRS to reject their July 2018 Offer. *See*

8    Pls.' FFCL 29–30. However, the evidence shows that Suhy made these statements months after

9    the IRS had already rejected Neo4j USA's July 2018 Offer, and more importantly, these

10   statements were made to convince the IRS to integrate ONgDB instead of another open source

11   Neo4j CE license, not Neo4j EE v3.4.

12        A brief reiteration of the relevant timeline will aid the Court's discussion on this point.

13        *May 2018*

14        In May 2018, the IRS publicly posted an intent to award the sole source contract for the

15   CKGE Project to eGov. Trial Tr. Vol. I 79:20–23. At that time, the CKGE Project had been using

16   the publicly available Neo4j EE v3.2. Dunn Dep. 99:3–100:10, ECF No. 210, Ex. 5. Neo4j USA

17   saw this public post and emailed the IRS. Trial Ex. 126; Trial Tr. Vol. I 79:20–82:8. Neo4j USA

18   believed that the CKGE Project would require Neo4j EE v3.4, so they informed the IRS of the

19   licensing changes to Neo4j EE v3.4, namely the addition of the Commons Clause, and encouraged

20   them to purchase a commercial license and support services from Neo4j USA. Trial Tr. Vol. I

21   81:22–82:8. That same day, Suhy contacted the IRS to share his opinion that Neo4j Sweden was

22   not permitted to add the Commons Clause to the license governing Neo4j EE v3.4. Trial Ex. 128.

23   The following day, the IRS declined the invitation to purchase the Neo4j EE v3.4 license,

24   informing Neo4j USA that their budget was "extraordinarily limited in all avenues," and they

25   would be sticking with the publicly available Neo4j EE v3.2 that they had been using. Trial Ex.

26   128; Trial Ex. 131. However, the IRS welcomed Neo4j USA to provide a demonstration of Neo4j

27   EE 3.4 for planning purposes. *Id.*

28   Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
<div style="text-align: center">22</div>

1    On May 24, 2018, the IRS carried forward with its plan to award eGov the contract for the

2    CKGE Project.  Trial Ex. 182; Trial Ex. 183.  The project proceeded using the publicly available

3    Neo4j EE v3.2.  Dunn Dep. 99:3–100:10.

4    *June 2018*

5    In June 2018, the IRS had asked Suhy about switching from Neo4j EE v3.2 to the Neo4j

6    3.3.1 CE (the open-source community edition) because, given the amount of users and the demand

7    requirements, "it wasn't necessary to have any of the Enterprise features."  Dunn. Dep. 110:11–

8    101:4.  Suhy suggested that the IRS should adopt the open fork software managed by eGov for the

9    CKEG project, later released as ONgDB, instead of switching to Neo4j CE 3.3.1.  Trial Ex. 129.

10   The IRS ultimately followed Suhy's advice and made a plan to integrate what would later be

11   called ONgDB.  Dunn. Dep. 102:3–15.

12   *July 2018*

13   Meanwhile, the IRS had been continuing its discussions with Neo4j USA about Neo4j EE

14   v3.4 "for planning purposes."  Trial Ex. 128, 131.  After some back and forth, Neo4j USA

15   provided its July 2018 Offer, with the understanding that the IRS was "just looking for budgetary

16   pricing at the moment."  Trial Ex. 131.  On July 27, 2018, the IRS replied that the quote was

17   helpful "for planning purposes," but informed Neo4j again that they still did not intend to follow

18   up with a new acquisition at that time.  Trial Ex. 131.

19   *August 2018*

20   In August 2018, approximately one month after the IRS declined to purchase a Neo4j EE

21   v3.4 license for the second time, the IRS revisited its June 2018 plan to integrate ONgDB instead

22   of Neo4j CE v3.3.1.  Trial Ex. 132.  When asked about when to integrate ONgDB, Suhy

23   recommended that the IRS integrate ONgDB v3.4 sooner rather than later, claiming that "ONgDB

24   open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc."  Trial

25   Ex. 132, 133.  The Court later found that this statement constituted false advertising and false

26   designation of origin.  First MSJ Order 28–32.  Based on Suhy's recommendation, the IRS

27   instructed him to integrate the ONgDB into the CKGE framework on August 14, 2018.  Trial Ex.

28   Case No.: 5:18-cv-07182-EJD

United States District Court
Northern District of California

133.

The evidence clearly shows that Suhy's representations caused the IRS to integrate ONgDB; however, the evidence also shows that the IRS chose ONgDB over Neo4j *CE v3.3.1*, not Neo4j *EE v3.4*. [10]  The IRS did not need Neo4j v3.4 features for the CKGE Project—they were considering a switch to the free and publicly available Community Edition software when Suhy recommended ONgDB.  Dunn. Dep. 110:11–101:4; Trial Ex. 129, ECF No. 241-53.  And notably, since removing ONgDB after the Court's preliminary injunction, the IRS has returned to the Community Edition across the board with no evidence of any issues or need for additional features.  Trial Tr. Vol. I 277:18–278:14, 280:22.  While the IRS invited Neo4j USA to demonstrate Neo4j EE v3.4, the evidence shows that this invitation was to gain information "for planning purposes."  Trial Ex. 131.  Neo4j USA understood that the IRS was merely looking for "budgetary pricing" when it allowed Neo4j USA to demo the software for them and provide a quote.  *Id.*

The Court also finds the evidence insufficient to prove that Defendants' profits from the CKEG contract were the result of his statements.  Suhy's contract for the CKGE Project did not require him to provide support for ONgDB—the IRS had a team dedicated to supporting ONgDB.  Trial Tr. Vol. II 316:16–17; 320:11–321:25.  While Suhy voluntarily provided input in the architecture design and hardware requirements needed to run ONgDB installations on multiple servers within the CKGE, his income from the project was not dependent on that support.  *Id.*  Even if Suhy was required under his contract to provide the support services for whichever

---

[10] The Court notes that, pursuant to Rule 52, it reached its conclusion by weighing the Parties' stipulation that the IRS decided to not allocate $156,000 for a license to use Neo4j EE in the CKGE platform because ONgDB was a free and open, unrestricted alternative, with the other evidence cited to in this section.  *See, e.g., In re Jagar*, No. 13-46850 CN, 2015 WL 4327902, at *1 (Bankr. N.D. Cal. July 15, 2015), *aff'd*, No. 4:14-AP-04037-CN, 2017 WL 1371297 (B.A.P. 9th Cir. Apr. 12, 2017), *aff'd*, 742 F. App'x 310 (9th Cir. 2018) ("When considering a Rule 52(c) motion, this court must take an unbiased view of all of the evidence, direct and circumstantial, and accord it such weight as the court believes it is entitled to receive.") (internal quotation marks omitted); *see also Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1090 (9th Cir. 2002) (stating that it is the obligation of the trier of fact to resolve conflicting evidence).

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
24

United States District Court
Northern District of California

software the IRS chose, the Court reiterates that the IRS was considering ONgDB and Neo4j *CE v3.3.1*, thus Suhy would have been able to provide support to both, as Neo4j CE was a publicly available software.

Third, the Court finds insufficient evidence to show that Suhy's DMCA violation, that is, his removal of the Commons Clause, contributed to Plaintiffs losing potential licensing revenue from their July 2018 Offer. Again here, the evidence clearly shows that the IRS did not need the enterprise features. Dunn. Dep. 110:11–101:4.[11] Thus, for all the reasons described above, the evidence does not support Plaintiffs' argument that Suhy's profits resulted from his removal of the Commons Clause in ONgDB v3.5.

### b. Amount of Damages

Because the Court finds insufficient evidence to show the fact of damages, the Court finds it unnecessary to address the Parties' arguments regarding the amount of damages.

\* \* \*

The Court finds that Plaintiffs have failed to provide sufficient evidence to show the fact of damages resulting from their July 2018 Offer. Therefore, the Court awards no damages as to the July 2018 Offer.

### 3. Attorneys' Fees

Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Similarly, the DMCA provides in relevant part that "the court may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. An "exceptional" case under either statute "is simply one that stands out from others" where there is a showing "that a defendant engaged in malicious, fraudulent, deliberate or willful infringement." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839

---

[11] Again here, the Court took into consideration the Parties' stipulation that Defendants' removal of the Commons Clause from the license governing ONgDB enabled the IRS to use ONgDB for free rather than pay for a commercial license to Neo4j EE, Stip. to Amount ¶ 48, and weighed that fact against the IRS representative's email and testimony stating that they were not seeking enterprise features at the time. Dunn. Dep. 110:11–101:4; Trial Ex. 129.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW

25

F.3d 1179, 1180 (9th Cir. 2016) (internal quotation marks omitted) (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993), *superseded by statute on other grounds*, Trademark Amendments Act of 1999, Pub. L. No. 106–43, 113 Stat. 218)); *see also, e.g., Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223 n.13 (9th Cir. 2023); *Dish Network, L.L.C. v. SatFTA,* No. 5:08-CV-01561 JF PSG, 2011 WL 856268, at *7 (N.D. Cal. Mar. 9, 2011). Courts "should examine the totality of the circumstances to determine if the case was exceptional, exercising equitable discretion in light of the nonexclusive factors identified in *Octane Fitness* and *Fogerty*, and using a preponderance of the evidence standard." *SunEarth*, 839 F.3d at 1181 (internal quotation marks omitted) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). These factors include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 n.6 (internal quotation marks omitted) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). Courts generally understand the term "exceptional" to mean cases in which the infringement can be characterized as "malicious, fraudulent, deliberate or willful." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008). But ultimately, "[t]here is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the[se] considerations." *Fogerty*, 510 U.S. at 534 (internal quotation marks omitted).

Here, Plaintiffs argue that this is an "exceptional" case because Defendants' violations of the Lanham Act and the DMCA were willful. In support, Plaintiffs highlight the Court's prior findings that Defendants' use of the Neo4j Mark created the misleading perception that Defendants' products were Plaintiffs' products, Defendants' statements that ONgDB was "open source" and a "drop in replacement" were false, and that Defendants' removal of the Commons Clause was unlawful under Neo4j USA's copyright. Pls.' FFCL 31–32. Plaintiffs also argue that Defendants litigated this case in an unreasonable manner by repeatedly reasserting legal arguments, claims, and defenses that the Court previously dismissed with prejudice or otherwise

United States District Court
Northern District of California

1    determined to be meritless.  *Id.* at 33–34.

2         Upon consideration of the totality of the circumstances and the factors referenced in

3    *SunEarth*, the Court finds that this is not an "exceptional" case warranting attorneys' fees.

4         First, while some of Defendants' conduct in this case could be considered frivolous, such

5    as re-litigating settled issues or raising affirmative defenses without a proper basis, the Court does

6    not find this conduct egregious enough to be considered "exceptional."  *See, e.g., TransPerfect*

7    *Glob., Inc. v. MotionPoint Corp.*, No. C 10-2590 CW, 2014 WL 6068384, at *8 (N.D. Cal. Nov.

8    13, 2014) (finding "frivolous arguments" and other missteps, only some of which were

9    inadvertent, too minor to justify a fee award).

10        Next, the evidence shows that Suhy's conduct was largely motivated by his belief in the

11   freedom and liberty of open-source software rather than financial or other motivation.  Trial Tr.

12   Vol. II 251:11–21; 299:25–17.  As the Court discussed above, Suhy did not make any financial

13   gains from his interactions with the MPO, and the IRS's choice between Neo4j CE or ONgDB did

14   not impact his ability to continue his work with the IRS.

15        Further, while some of Defendants' arguments in this case, as noted above, were objectively

16   unreasonable, the Court observes that this case dealt with issues lacking the benefit of a body of

17   established case law to guide Defendants' conduct or litigation strategy, particularly the legal

18   implications of removing a Commons Clause.  Thus, Defendants' conduct, when viewed in the

19   totality of the limited legal landscape surrounding this case, does not make this case "exceptional."

20        Moreover, the Court weighs the equities and finds that the monetary award of $597,000

21   plus the prejudgment interest and injunctive relief described below is sufficient to advance

22   considerations of compensation and deterrence.

23        Finally, the Court is unpersuaded by Plaintiffs' arguments that the conduct here constitutes

24   "exceptional" malicious, fraudulent, deliberate or willful infringement.  Plaintiffs' reliance on the

25   Court's findings that Defendants violated the Lanham Act and the DMCA does not aid the Court

26   in its analysis here—liability does not automatically trigger an award of attorneys' fees.

27        In consideration of the above, the Court finds that Plaintiffs have failed to show that this

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                   27

United States District Court
Northern District of California

1    case "stands out" from others and denies Plaintiffs' request for attorneys' fees.

2         Given that the Court has not awarded attorneys' fees, the Court finds it unnecessary to

3    address Plaintiffs' remaining arguments regarding whether Defendants' counsel should be held

4    jointly and severally liable for those fees.

5                        **4.    Prejudgment Interest**

6         "An award of pre-judgment interest in a case under federal law is left to the sound

7    discretion of the trial court." *Twin City Sportserv., Inc. v. Charles O. Finley & Co.*, 676 F.2d

8    1291, 1310 (9th Cir. 1982). "Awards of pre-judgment interest are governed by considerations of

9    fairness and are awarded when it is necessary to make the wronged party whole." *United States v.*

10   *Cal. State Bd. of Equalization,* 650 F.2d 1127, 1132 (9th Cir. 1981), *aff'd mem.*, 456 U.S. 901

11   (1982) (citation omitted). Courts may, in their discretion, award prejudgment interest under the

12   DMCA if necessary "to effectuate the legislative purpose of making copyright holders whole and

13   removing incentives for copyright infringement." *Polar Bear Prods., Inc. v. Timex Corp.*, 384

14   F.3d 700, 716–18 (9th Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (Oct. 25,

15   2004), *opinion amended on denial of reh'g*, No. 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25,

16   2004). Although not specifically provided in the statute, Courts may also award prejudgment

17   interest under the Lanham Act under the federal common law, which "authorizes the award of such

18   interest in appropriate cases to victims of violations of federal law." *Cyclone USA, Inc. v. LL&C*

19   *Dealer Servs., LLC*, No. CV 03-992-AJW, 2010 WL 2132378, at *1 (CD. Cal. May 24, 2010)

20   (quoting *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989)).

21        Here, the Court exercises its discretion and awards prejudgment interest on the $597,000

22   award using the agreed-upon treasury-bill rate. *See* Stip. to Amount 1 (stipulating to Mr. Boyles's

23   interest calculations); *see also S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1083 (9th

24   Cir. 2010) ("The treasury-bill rate is the rate typically used in most cases for prejudgment interest

25   calculation."). The Court finds prejudgment interest appropriate under these circumstances to

26   make Plaintiffs whole and remove incentives for any future infringement.

27        The Court grants Plaintiffs leave to provide a declaration from Mr. Boyles on the final

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                    28

1    prejudgment interest calculations pursuant to the Parties' stipulated method and in accordance

2    with this Order by **August 5, 2024**.

   **B.      Injunctive Relief**

4          Under the Lanham Act, a district court has the power to grant injunctions according to the

5    rules of equity and to prevent the violation of a trademark holder's rights.  15 U.S.C. §§ 1116(a),

6    1125(a); *see also Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 939, 948 (9th Cir. 2002);

7    *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir. 1997).  The Lanham Act entitles a

8    trademark owner to an injunction if the owner's rights are being violated.  *Penpower Tech. Ltd. v.*

9    *S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1094 (N.D. Cal. 2008); *see also Century 21 Real Estate Corp.*

10   *v. Sandlin,* 846 F.2d 1175, 1180–81 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for

11   trademark and unfair competition cases, since there is no adequate remedy at law for the injury

12   caused by a defendant's continuing infringement.").  The DMCA also permits the Court to "grant

13   temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a

14   violation" of Section 1202(b).  17 U.S.C. §§ 502(a), 1203(b)(1).

15         Here, the Court had previously granted a preliminary injunction upon finding that Plaintiffs

16   established a likelihood of success on the merits.  First MSJ Order 32–34.  The Ninth Circuit

17   affirmed the Court's ruling.  *Neo4j, Inc. v. PureThink, LLC*, No. 21-16029, 2022 WL 781037 (9th

18   Cir. Mar. 14, 2022).  Now, Plaintiffs have proven success on the merits, and Defendants consent

19   to a permanent injunction.  Def.'s FFCL 10.  Therefore, the Court finds good cause to convert the

20   preliminary injunctions entered in this action into a permanent injunction.

21   **III.     CONCLUSIONS AND ORDERS**

22         The Court **AWARDS** $597,000 in actual damages, subject to prejudgment interest.  All

23   other requests for damages and attorneys' fees are **DENIED**.

24         Plaintiffs are **ORDERED** to provide the Court an amended proposed judgment and revised

25   prejudgment interest calculations consistent with the Court's Findings of Fact and Conclusions of

26   Law by **August 5, 2024**.

27         The Court **GRANTS** Plaintiffs' unopposed request for a permanent injunction.

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                    29

United States District Court
Northern District of California

Accordingly, consistent with the prior preliminary injunctions, *see* First MSJ Order; Second MSJ Order, Defendants are **HEREBY ENJOINED** from the following:

(1) Infringing U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j Mark").

(2) Advertising, promoting, representing or referring to ONgDB as a free and open source drop-in replacement of Neo4j Enterprise Edition distributions with the same version number, and any similar statement that may lead consumers to believe that ONgDB is a Neo4j USA or Neo4j Sweden product, or is identical to a Neo4j USA or Neo4j Sweden product.

(3) Advertising, promoting, representing, or referring to Neo4 Enterprise or Neo4j Enterprise Edition being released only under the AGPL.

(4) Representing that Neo4j Sweden AB's addition of the Commons Clause to the license governing Neo4j Enterprise Edition violated the terms of AGPL or that removal of the Commons Clause is lawful, and similar statements.

(5) Advertising, displaying or distributing products, literature or any other materials that use the Neo4j Mark to advertise or promote ONgDB in any way that suggests sponsorship or endorsement by Neo4j USA or Neo4j Sweden or that may lead consumers to believe that ONgDB is a Neo4j USA or Neo4j Sweden product, or is identical to a Neo4j USA or Neo4j Sweden product.

(6) Affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being Neo4j products and from offering such goods in commerce.

(7) Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in Paragraphs 1-6 above.

(8) Making further use of or fork any source code first released under the Neo4j Sweden

United States District Court
Northern District of California

Software License, including Neo4j EE v3.4, Neo4j EE v3.5, or any subsequent versions, subversions or derivatives thereof.

(9) Making further use of or fork any source code first released under a commercial license, including Neo4j EE v3.5, Neo4j EE v4.x, Neo4j EE 5.x, or any subsequent versions, subversions or derivatives thereof.

(10) Offering for sale, advertising or promoting ONgDB, GraphStack GDB and GDB (and any derivative or similar software created and/or maintained by Defendants), or any other software containing Neo4j EE source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License.

(11) Stating, claiming, advertising, or representing that Neo4j Sweden AB's inclusion of the Commons Clause to the license governing Neo4j EE violated the terms of the GNU Affero General Public License, version 3 ("AGPLv3"), or make similar statements interpreting the terms of the AGPLv3.

(12) Stating, claiming, advertising, or representing that the Free Software Foundation ("FSF") or that any government agency determined and/or confirmed that (a) the inclusion of the Commons Clause to any license governing Neo4j EE violated the terms of AGPLv3; and/or (b) the Commons Clause can be removed from any software license governing Neo4j EE and/or ONgDB.

(13) Offering for sale or providing for any paid development, support, maintenance or hosting services for ONgDB, GraphStack GDB, GDB (and any derivative or similar software created and/or maintained by Defendants), or any other software containing Neo4j EE source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License. However, nothing herein prevents Defendants from offering paid consulting services for installations of Neo4j EE software, but only where the customer receiving such services has a commercial license and has fully paid the commercial license fees to Plaintiffs.

(14) Making any statement and/or representations to any third party, affirmatively or in

United States District Court
Northern District of California

response to an inquiry, that state or imply that they can provide access to or can obtain any software containing any Neo4j EE source code with a DMCA Violation, that is subject to the Neo4j Sweden Software License, or not otherwise permitted for use by this Order.

(15) Having any expressed or implied license to use and making any further use of any of Plaintiffs' source code, object code, machine code and software that is subject to a commercial license or paid commercial subscription, including but not limited to Neo4j EE v3.4, and all versions and subversions thereof; Neo4j EE v3.5, and all versions and subversions thereof; Neo4j EE v4.x, and all versions and subversions thereof; and Neo4j EE v5.x, and all versions and subversions thereof. Nothing herein, however, restricts Defendants from purchasing a commercial license or subscription to Neo4j EE software from Plaintiffs or their authorized resellers.

(16) Defendants may only make further use of the following publicly available Neo4j open source code, subject to the terms of their respective open source licenses: (i) Neo4j CE Source Code under the GNU General Public License, v3 ("GPL"); (ii) Neo4j EE v3.2.14 source code released under the AGPLv3; (iii) Neo4j EE v3.3.10 source code released under the AGPLv3; (iv) Neo4j EE v3.4.0.RC02 source code released under the AGPLv3. Nothing herein, however, shall be construed as a license or otherwise permit Defendants to use any source code, patches or source code commits for Neo4j EE v3.3 or Neo4j EE v3.4 that were first released under the Neo4j Sweden Software License. Further, nothing herein shall be construed as a license or otherwise permit Defendants to use or fork, any of Plaintiffs' source code that was first released as Neo4j EE v3.5 or otherwise under the Neo4j Sweden Software License, including but not limited to, all beta releases, release candidates, production releases, stable releases, and official releases, or any subsequent versions, subversions, patches or derivatives thereof.

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: July 22, 2024

_____

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
33

SER_0036

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEO4J, INC., et al., | Case No. 5:18-cv-07182-EJD |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING PLAINTIFFS' *DAUBERT* MOTION** |
| v. | |
| PURETHINK, LLC, et al., | |
| Defendants. | Re: ECF No. 181, 183 |

Plaintiffs Neo4j, Inc. ("Neo4j") and Neo4j Sweden AB ("Neo4j Sweden") (collectively, "Plaintiffs") move to exclude expert testimony of Dr. Kuhn and for partial summary judgment. ECF Nos. 181, 183.  The Court heard oral argument on July 27, 2023.  For the reasons stated herein, the Court GRANTS the *Daubert* motion and GRANTS the motion for partial summary judgment.

## I.     BACKGROUND

The Court has previously set forth the facts of this case on multiple occasions (*see* ECF Nos. 70, 85, 118, 168) and, accordingly, will summarize here only the facts pertinent to this Order.

### A.     Plaintiffs and Neo4j Software

Plaintiff Neo4j USA is Delaware corporation that specializes in graph database management systems and software.  Third Am. Compl. ("TAC"), ECF No. 90 ¶¶ 2, 20.  Neo4j USA markets and sells its graph database platform under the Neo4j mark.  *Id.* ¶ 2.  Plaintiff Neo4j Sweden is a wholly owned subsidiary of Neo4j USA that owns all copyrights relating to the NEO4J graph database platform, including the source code.  *Id.* ¶ 4.  Neo4j Sweden licenses the copyrights to Neo4j USA under the Neo4j Sweden Software License (the "Software License"),

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
1

United States District Court
Northern District of California

United States District Court
Northern District of California

1  which sublicenses the rights in the U.S.  *Id.*  Neo4j owns several federally registered trademarks.

2  *Id.* ¶ 21.  All versions of Neo4j's graph platform software are subject to Neo4j USA's Trademark

3  Policy found on its website.  *Id.* ¶ 28.

4      Plaintiffs have historically offered a free and open-source version of their Neo4j software

5  called Neo4j Community Edition ("Neo4j CE"), subject to the GNU General Public License

6  ("GPL").  *Id.* ¶ 24.  For commercial users, Plaintiffs offered a paid-for version of Neo4j called

7  Neo4j Enterprise Edition ("Neo4j EE"), which, compared to the free Neo4j CE version, contains

8  significant additional functionality and provides support for advanced commercial operations.  *Id.*

9  The Neo4j J EE software was historically offered under both a paid-for commercial license and

10  the free GNU Affero General Public License ("AGPL").  As of May 17, 2018, Neo4j EE v.3.4 and

11  later iterations including Neo4j EE 3.5, are only offered under the commercial license, meaning

12  new features to Neo4j EE will be developed as closed source.  *Id.* ¶¶ 25, 27; *see* ECF No. 213-2,

13  Ex. A ("Undisputed Facts"), Facts 4 and 7.

14          **1.**      **The Neo4j Sweden Software License**

15      The Neo4j Sweden Software License includes the language of the AGPL with additional

16  "Terms and Conditions" to using the license.  The Section 7 "Additional Terms" contain certain

17  restrictions to using the license, including, in relevant part, that:

18         When you convey a copy of a covered work, you may at your option

19         remove any additional permissions from that copy, or from any part
       of it. (Additional permissions may be written to require their own
       removal in certain cases when you modify the work.)  You may place

20         additional permissions on material, added by you to a covered work,
       for which you have or can give appropriate copyright permission.

21  ECF No. 188-1 ("Suhy Decl."), Ex. 7.  "Additional Permissions" are defined as "terms that

22  supplement the terms of this License by making exceptions from one or more of its conditions."

23  *Id.* § 7.  If an Additional Permission applies to the entire program, it will be "treated as though

24  they were included in this License, to the extent that they are valid under applicable law."  *Id.*

25      This section also states that "for material you add to a covered work, you may (if

26  authorized by the copyright holders of that material) supplement the terms of this License" with

27  the following enumerated terms:

28  Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

2

a) Disclaiming warranty or limiting liability differently from the terms of sections 15 and 16 of this License; or b) Requiring preservation of specified reasonable legal notices or author attributions in that material or in the Appropriate Legal Notices displayed by works containing it; or c) Prohibiting misrepresentation of the origin of that material, or requiring that modified versions of such material be marked in reasonable ways as different from the original version; or d) Limiting the use for publicity purposes of names of licensors or authors of the material; or e) Declining to grant rights under trademark law for use of some trade names, trademarks, or service marks; or f) Requiring indemnification of licensors and authors of that material by anyone who conveys the material (or modified versions of it) with contractual assumptions of liability to the recipient, for any liability that these contractual assumptions directly impose on those licensors and authors.

*Id.* § 7.  Other "additional terms" not included in the list of permitted supplementary terms are considered "further restrictions" under Section 10.  *Id.*

Section 10 explains that all conveyances of the covered work are subject to the license from the "original licensors."  *Id.* § 10.  It also restricts a user from "impos[ing] any further restrictions on the exercise of the rights granted or affirmed under this license."  *Id.*  If a user receives Neo4j EE under the Neo4j Sweden Software License with a "further restriction" affixed, the user may remove that term.  *Id.* § 7.

**B.      Defendants' Partner Agreement with Plaintiffs**

Defendant PureThink LLC ("PureThink") is a Delaware company that develops software.  *Id.* ¶ 5.  Defendant John Mark Suhy is the sole manager and member of PureThink.  *Id.* ¶ 8.  PureThink had been previously authorized as a Neo4j Solution partner beginning September 30, 2014 until July 11, 2017.  *Id.* ¶¶ 5, 29, 35.  As a Neo4j Solution Partner, PureThink entered into a Solution Partner Agreement with Neo4j USA (the "Partner Agreement") where PureThink would sell Neo4j EE and provide support to end-users of Neo4j EE software in exchange for annual partner program fees and shared revenue.  *Id.* ¶¶ 18, 29.

Defendant iGov inc. ("iGov") is a software development and consulting company that competes with Neo4j and its Solution Partners.  *Id.* ¶ 6.  iGov also does business as "GraphStack."  *Id.* ¶ 7.  Suhy is also the sole shareholder and the officer and director of iGov.  *Id.* ¶ 8.  Plaintiffs believe that iGov is a successor-in-interest to PureThink, or that iGov has acquired substantially

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
3

1    all of PureThinks assets in or around 2017.  *Id.* ¶ 6.

2        The Partner Agreement provided PureThink with a non-exclusive, non-transferrable

3    limited license to use Neo4j's trademarks to market and promote products under the terms of the

4    Agreement.  *Id.* ¶ 30.  Section 4.1 of the Partner Agreement incorporated Neo4j's trademark

5    policies as additional limitations on Defendants' use of the Neo4j mark and making

6    representations about Neo4j EE and Neo4j CE software products.  *Id.*  Section 4.3.2 provides that

7    PureThink would not "develop, market, distribute or offer any services related to any Community

8    Edition Products, derivative works of such products, or any [PureThink] software code made to

9    work with Community Edition Products (including, without limitation, hosting services, training,

10   technical support, configuration and customization services, etc.)" for a period of 36 months after

11   termination or expiration of the Partnership Agreement.  ECF. No. 177 ("FACC"), Ex. B.

12       In March 2017, Plaintiffs allegedly learned that Defendants encouraged or misled the IRS

13   to use "free and open source Neo4j EE under the AGPL," referred to as ONgDB software,[1] and

14   pay PureThink for support services to avoid paying for the commercial license under Neo4j EE.

15   *Id.* ¶ 31.  Plaintiffs allege that Defendants used a different server to compile the open-source

16   software in order to recompile it with modifications in an attempt to avoid the restrictions imposed

17   by the Partner Agreement on PureThink.  *Id.* ¶¶ 31, 32.  Plaintiffs allege that this misleading

18   conduct potentially damaged he Neo4j mark and its goodwill.  *Id.* ¶ 32.

19       As a result, on May 30, 2017 Neo4j USA notified PureThink that its actions constituted

20   material breach of the Partner Agreement § 7, and on July 11, 2017, Neo4j USA provided written

21   notice that the Partner Agreement was terminated.  *Id.* ¶¶ 33, 35.  Several provisions of the

22   Partnership Agreement survived termination, including Section 7.3 and 10.  *Id.* ¶¶ 36, 37.  Neo4j

23

24   _____

25   [1] ONgDB" is a software released by the Graph Foundation, founded in part by Suhy, that used
     Neo4j EE v3.4 (which was openly available subject to the Neo4j Sweden Software License)
     replaced with the AGPL.  First MSJ Order at 6; *see* FAC ¶¶ 55–56. Plaintiffs allege that ONgDB
26   combines the last public Neo4j EE code (beta version of Neo4j EE 3.5), the Neo4j CE code, and
     "glue code" authored by Mr. Suhy and other contributors.  *Id.* ¶ 58.  ONgDB was later renamed
27   "Graphstack GDB."  MSJ at 1.  For the purposes of this motion the Court will only refer to the
     software as "ONgDB."

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
     4

1   USA demanded that PureThink cease using its trademarks.  *Id.* ¶ 38.

2   **C.   Removal or Alteration of Copyright Management Information**

3   Plaintiffs include copyright management information ("CMI") within the electronic source

4   code files for Neo4j EE.  *Id.* ¶ 76.  The CMI includes information identifying the copyright owner

5   as Neo4j Sweden, the title of the work, licensing information, terms and conditions for use of the

6   copyrighted work, and other "conspicuous displays identifying the owner or title of these

7   copyrighted works," such as "Neo4j" in the source code and notice headers with terms and

8   conditions.  *Id.*

9   Plaintiffs allege that Defendant Suhy, with Graph Foundation Inc.'s approval and

10  encouragement, replicated the Neo4j EE source code files and either removed or altered the Neo4j

11  Sweden Software License, the copyright owner information, and the terms and conditions of at

12  least 28 separate files from Neo4j EE.  *Id.* ¶ 77.  Suhy also replaced the Neo4j Sweden Software

13  License with a generic version of the AGPL, which effectively removed the commercial

14  restrictions imposed by the license, and republished the source code files on Graph Foundation's

15  Github repository for ONgDB software.  *Id.*  ONgDB is allegedly a "patchwork of source code"

16  compiled from older versions of Neo4j software that includes "glue" source code authored by the

17  Graph Foundation and Suhy.  *Id.* ¶ 58.

18  It is therefore not the same quality as Plaintiffs' software, as it lacks "tens of thousands of

19  functional, performance, load, stress, and other tests to ensure quality and consistency" and other

20  fixes and improvements made by Plaintiffs to Neo4j EE.  *Id.* ¶ 59.  Defendants purportedly

21  characterized ONgDB as identical to Plaintiffs' commercial-only releases of Neo4j EE.  *Id.* ¶ 58.

22  Plaintiffs allege that Defendants are misleading consumers into believing they are downloading an

23  exact copy of Plaintiffs' current commercial-only releases of Neo4j EE, or a "drop in"

24  replacement.  *Id.* ¶ 59.  Although Defendants have at times disclaimed a relationship or affiliation

25  with Neo4j, any disclaimer is allegedly undermined by Defendants' misinformation, such as

26  displaying the software as display as "Neo4j," "Neo4j Enterprise," "neo4j project" and "Neo4j

27  open source."  *Id.* ¶ 60.  This misinformation has confused customers "as to the nature of its

28  Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

5

United States District Court
Northern District of California

SER_0041

<div style="writing-mode: vertical">United States District Court
Northern District of California</div>

1  'forked' version of ONgDB" and failure to include trademark notices after the Neo4j mark.  *Id.*

2  plaintiffs allege Defendants' actions have caused actual consumer confusion over license

3  obligations.  *Id.* ¶ 70.

4        **D.**      **Exclusive Contract to Resell Neo4j Software to the Government**

5        In their Fourth Amended Counterclaim, Defendants allege that Suhy and Neo4j USA's

6  COO Lars Nordwall discussed modifications to the software to satisfy U.S. government security

7  requirements.  FACC ¶ 16.  During this discussion, Nordwall purportedly represented that Suhy

8  could improve the Neo4j software for government use.  *Id.*  According to Defendants, PureThink

9  and Nordwall entered an agreement (the "Exclusivity Contract") dated April 11, 2015, separate

10  from the Partnership Agreement, which stated PureThink is the only Neo4j "Government Edition"

11  reseller for the US Federal Government, Department of Defense and Intelligence Agencies.  *Id.* ¶

12  54; *see* Ex. C.

13        PureThink alleges that it subsequently designed and developed Neo4j Government Edition

14  software package that included additional enhancements and features to the Neo4j Software to

15  address the security requirements.  *Id.* ¶ 17.  PureThink expended $650,000 on this endeavor.  *Id.*

16  PureThink alleges that the Government Edition was a "complete package" that included additional

17  services and support and software modules.  *Id.*

18        Pursuant to the Exclusivity Contract, PureThink entered into an agreement with the IRS.

19  *Id.* ¶ 20.  During the performance of the agreement, the IRS inquired into the difference between

20  the Neo4j CE and Neo4j EE.  *Id.* ¶ 20.  Neo4j USA allegedly told PureThink to tell the IRS that

21  Neo4j CE was open use.  *Id.*  Believing that this information misrepresented the differences

22  between open source software and the commercial software, Neo4j refused to answer the IRS as

23  instructed.  *Id.* ¶¶ 20–21.  PureThink alleges that Neo4j USA directly reached out to the IRS to

24  impart this information.  *Id.* ¶ 20.  Neo4j USA allegedly retaliated against PureThink by telling the

25  IRS that PureThink could not provide professional service to the IRS for a period of 3 years as a

26  result of the termination of the Partnership Agreement.  *Id.* ¶ 21; *see* Ex. D.  Neo4j USA also

27  advised iGov potential customers using Neo4j software that iGov was not permitted to work with

28  Case No.: 5:18-cv-07182-EJD

1  them.  *Id.* ¶ 21.  PureThink alleges that Neo4j USA's actions interfered with and harmed its

2  business.  *Id.*

3       **E.    Relevant Procedural Background**

4       This action has an extensive and convoluted procedural history.  Because the present

5  motion is only concerned with the Plaintiffs' eighth cause of action, Defendant's fourth cause of

6  action, and Defendant's fourth affirmative defense, the Court only recounts the procedural history

7  relevant to the present motion.

8       In this case the parties stipulated to two rounds of motions for summary judgment in which

9  claims, counterclaims, and affirmative defenses would be resolved at two separate phases: "Phase

10  1" and "Phase 2".  *See* ECF No. 68.  On May 18, 2021, the Court granted Plaintiffs' motion for

11  partial summary judgment ("First MSJ Order") as to the Phase 1 issues and denied Defendants'

12  cross-motion for summary judgment.  *See* ECF No. 118.  The Court found that Plaintiffs

13  established trademark infringement under the Lanham Act and granted summary judgment as to

14  false designation of origin and false advertising, federal unfair competition, and state unfair

15  competition.  *Id.* at 22.  The First MSJ Order preliminarily enjoined Defendants from infringing on

16  the mark.  Defendants appealed the First MSJ Order based on the preliminary injunction.  *See* ECF

17  Nos. 121, 122.  The Ninth Circuit affirmed.  *See* ECF No. 140; *see also* ECF Nos. 141, 142.

18       On April 20, 2023, Plaintiffs moved for partial summary judgment to resolve the Phase 2

19  issues.  *See* ECF No. 183 ("MSJ").  Plaintiffs seek summary judgment on Plaintiffs' Digital

20  Millennium Copyright Act ("DMCA") claim, the breach of exclusive contract to government

21  counterclaim asserted in Defendant's Fourth Amended Counterclaim (ECF No. 177), and the

22  unclean hands affirmative defense asserted in Defendant's Answer to Plaintiffs' TAC (ECF No.

23  91).  Defendants oppose the motion.  *See* ECF No. 188 ("Opp'n to MSJ").  After the motion was

24  fully briefed and the Court heard oral argument, Defendants withdrew its unclean hands defense to

25  be dismissed upon final judgment.  ECF No. 215.

26       In addition to moving for summary judgment on the Phase 2 issues, Plaintiffs also moved

27  to strike the entirety of the December 22, 2022 expert report and exclude the testimony of

28  Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
7

1    Defendants' expert witness, Bradely M. Kuhn.  *See* ECF No. 181 ("Daubert Mot."); *see also* ECF

2    No. 181-2 Ex. 1 ("Kuhn Report").

3    **II.    *DAUBERT* MOTION**

4           Plaintiffs move to exclude the expert report of Bradley M. Kuhn ("Kuhn Report") as

5    irrelevant, prejudicial under Rule 403, inadmissible legal interpretation, and as inadmissible

6    speculation regarding Defendant's state of mind.  *See generally* Daubert Mot.

7           **A.    Legal Standard**

8           Courts act as gatekeepers of expert testimony to ensure that such testimony is reliable and

9    relevant under Federal Rule of Evidence 702.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147

10   (1999); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  The proponent of

11   expert testimony has the burden of proving admissibility.  *In re Korean Ramen Antitrust Litig.*,

12   281 F. Supp. 3d 892, 931 (N.D. Cal. 2017) (citations omitted).  Before an expert can offer his or

13   her opinions, they must be qualified by "knowledge, skill, experience, training, or education."

14   Fed. R. Evid. 702.  Once he or she is qualified, Rule 702 permits her to testify as long as "(a) the

15   expert's scientific, technical, or other specialized knowledge will help the trier of fact to

16   understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient

17   facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert

18   has reliably applied the principles and methods to the facts of the case."  *Id.*  This multifactor

19   inquiry is flexible, and "Rule 702 should be applied with a 'liberal thrust' favoring admission."

20   *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (citations omitted).

21          **B.    Discussion**

22                 **1.    Relevancy of the Kuhn Expert Report**

23          Plaintiffs argue that the Kuhn Report is irrelevant based on two grounds: it is barred under

24   the Law of Case Doctrine and at is inadmissible hearsay testimony.  Defendants assert that Kuhn's

25   testimony is relevant and supports Defendants' unclean hands defense, the defense that Neo4j

26   violated the AGPL by adding restrictions, the estoppel defense, and the defense to the DMCA

27   claim.  Opp'n to Daubert Mot. at 6.

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
                                      8

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

First, Plaintiffs contend that the Kuhn Report is irrelevant to the remaining issues in this action because Kuhn interprets Section 7 (pertaining to further restrictions) of the Neo4j Sweden Software License, and the parties have conclusively litigated whether Section 7 permits Defendants to remove the Commons Clause from the license in Phase 1.  Daubert Mot. at 9.  The stated purpose of the Kuhn Report is to address the issues arising from the "removal of the Commons Clause" from the Neo4j Sweden Software License and Defendants' "redistribution of the Neo4j software under the AGPLv3 with the [Commons Clause] removed."  Kuhn Report ¶ 2. According to Plaintiffs, Defendants are barred under the law of case doctrine from relitigating the Section 7 issue regarding the removal of the Commons Clause.  *See e.g.*, *Arizona v. California*, 460 U.S. 605, 618 (1983); *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) ("The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case.").  The Court agrees that testimony relating to previously litigated issues is not relevant to the remaining disputed issues.

During Phase 1, Plaintiffs argued in their First MSJ Motion (ECF No. 98) that Defendants made false statements in violation of the Lanham Act, which included "statements that ONgDB and Neo4j Enterprise are "free and open source" versions of or alternatives to commercially licensed Neo4j EE."  First MSJ Order at 24.  Plaintiffs argued these statements were false because "the Neo4j Sweden Software License did not permit Defendants to remove the commercial restrictions imposed by the Commons Clause."  *Id.*  The Court agreed and rejected Defendants' argument that the Neo4j Sweden Software License permits licensees, such as Defendants, to remove the Commons Clause and redistribute the software under the standardized AGPL license.[2] *Id.*  The First MSJ Order also preliminarily enjoined Defendants from infringing on the mark.  *Id.* at 32–34.  Defendants appealed the Court's order based on the preliminary injunction, and raised

---

[2]Although this finding was made with respect to Plaintiffs' false advertising under the Lanham Act and UCL claims, the parties had agreed that "the truth or falsity of Defendants' statements hinge on the interpretation of Section 7 [of the Neo4j Sweden Software License], and GFI's right to remove the Commons Clause from the Neo4j Sweden Software License."  First Order at 24 (alteration in original) (quotations and citation omitted).

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
9

the Section 7 argument in their opening appellate brief, asserting that this Court incorrectly concluded that copyright holders may add more restrictive terms to the AGPL and that downstream users could not remove those terms. ECF No. 181-5, Ex. 4 at 36–40. The Ninth Circuit affirmed, holding that "[t]he representation that ONgDB is a "free and open-source" version of Neo4j® EE was literally false, because Section 7 of the Sweden Software License only permits a downstream licensee to remove "further restrictions" added by an upstream licensee to the original work.") *Neo4j, Inc. v. PureThink, LLC*, No. 21-16029, 2022 WL 781037, at *1 (9th Cir. Mar. 14, 2022). That holding is now the law of the case, and Defendants have made no showing that an exception to the doctrine should apply.[3] *See Aquino*, 2018 WL 3845718, at *1.

Thus, the Court agrees that testimony relating to an issue that has already been decided in this case is not relevant and permitting such testimony would not promote judicial efficiency. *See Allied Erecting & Dismantling Co. v. United States Steel Corp.*, No. 22-3585, 2023 WL 5322213, at *5 (6th Cir. Aug. 18, 2023) ("[C]ourts have discretion to apply the law-of-the-case doctrine to evidentiary rulings.") (citing *United States v. Todd*, 920 F.2d 399, 402–04 (6th Cir. 1990)). Defendants had an opportunity to make their Section 7 argument on appeal—that Suhy permissibly removed the Commons Clause from the Neo4j Sweden Software License—and it cannot rehash this argument through expert testimony.

Second, Plaintiffs contend that Kuhn's Report is inadmissible hearsay testimony. Daubert Mot. at 17. Based on his time volunteering and working at the FSF from 1996 until March 2005, Kuhn opines on the Free Software Foundation's ("FSF") view of Neo4j Sweden's license and whether Neo4j violated the AGPLv3's Further Restrictions Clause by including the Commons Clause with the AGPLv3 in their license. *Id.*; *see* Kuhn Report ¶¶ 12–13, 15–16, 19–21, 26 81–

---

[3] Defendants argue that the law of the case doctrine does not bar them from aguing this issue partial summary judgment rulings are interlocutory orders not subject to appeal. Opp'n at 4–6. Defendants' argument is unavailing. On appeal, Defendants represented to the Ninth Circuit that "the court's preliminary injunction is 'inextricably bound up' with its legal resolution of the summary judgment;" the Court agrees. Reply to Daubert Mot. at 2–3; *see infra* Section II.B.1 at 14. The law of the case doctrine bars consideration of those issues which have been decided, and the Ninth Circuit expressly addressed the Section 7 issue.

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
10

85.  He purportedly bases his opinions, in part, on personal knowledge gleaned from internal

discussions with unnamed "staff and Board members of the FSF," including "the GPLv3 drafters

themselves," and his involvement "in the early stages of the public comment process for [drafting]

the GPLv3 . . . regarding whether the Affero Clause would be incorporated into the GPLv3 itself,

or remain a separate license from the main GPLv3" and committee participation.  Kuhn Report ¶¶

18, 21, 23–24, 26, 52, 81.  Plaintiffs argue that Kuhn's testimony is offered for the truth of the

matter asserted and that no hearsay exception is applicable.

Pursuant to Rule 703, "expert opinions based on otherwise inadmissible hearsay are to be

admitted only if the facts or data are 'of a type reasonably relied upon by experts in the particular

field in forming opinions or inferences upon the subject.'"  *Daubert*, 509 U.S. at 595 (quoting Fed.

R. Civ. P. 703).  In other words, experts may rely on hearsay in formulating expert opinions only

if the hearsay is the 'type of information upon which experts may reasonably rely."  *United States

v. Sims*, 514 F.2d 147, 149 (9th Cir. 1975).  Plaintiffs argue that the hearsay statements made by

unnamed individuals relied on in the Kuhn Report are *not* the type of evidence on which an

industry expert or an expert in license agreements could reasonably rely.  Daubert Mot. at 17.

Although the Kuhn Report purports to attach, *inter alia*, the "GPLv3 Second Discussion Draft

Rationale" (Ex. C), the FSF's "Opinion on Additional Terms" (Ex. D), and the "GPLvs Third

Discussion Draft Markup of Changes from Second Discussion Draft" (Ex. F), Plaintiffs contend

that Defendants failed to produce markups and/or comments from the GPLv3 during discovery,

failed to subpoena the FSF to authenticate these materials, or otherwise obtain the FSF's view on

the AGPLv3.  *Id.*

While Kuhn may opine on matters within his experience in the software industry and with

respect to software licensing, Kuhn may not state views of the FSF without proper attribution or

foundation.  *Williams v. Illinois*, 567 U.S. 50, 50 (2012) (experts may not "act as mere conduits"

for hearsay); *see People v. Veamatahau*, 9 Cal. 5th 16, 34 (2020) (experts may not "regurgitate

information from another source without applying any of his or her own expertise").

United States District Court
Northern District of California

### 2. Testimony Interpreting the Software License

Next, Plaintiffs contend that the Kuhn Report impermissibly opines on the meaning and interpretation of Section 7 of the Neo4j Sweden Software License. Dauber Mot. at 13. Plaintiffs seek to exclude paragraphs 51–61, 71–75, 76–78, 79–89, 96–97, 109–110 and 112 of the Kuhn report as inadmissible legal interpretation of the software license. *Id.* at 14.

It is well established that experts are prohibited from testifying about the law or providing legal meaning. *See, e.g.*, *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("[A]n expert witness cannot give an opinion as to her legal conclusion, *i.e.*, an opinion on an ultimate issue of law.") (quotations and citation omitted); *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) ("[Expert] testimony cannot be used to provide legal meaning or interpret the policies as written."); *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (explaining that the role of experts is to interpret and analyze factual evidence and not to testify about the law); *see also Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 509 (2d Cir. 1977) (excluding expert opinion "as to the meaning of the contract terms at issue").

The Kuhn Report contains numerous legal conclusions:

- "I conclude . . . that the Further Restrictions Clause was specifically design[ed] to allow removal of an additional term when a licensor chose to use the text of the GPLv3 and/or AGPLv3 along with a term that the licensee viewed as a "Further Restriction." Kuhn Report ¶ 61.

- "In my professional opinion, the Neo4j Sweden Software License is structured and presented precisely in the manner that the Further Restrictions Clause anticipated." *Id.* ¶ 72.

- "Specifically, I believe that the AGPLv3 contemplated this precise situation: namely, a licensor licenses under the unmodified text of the AGPLv3, but also includes another term that contradicts, limits, and/or restricts the permissions granted under the AGPLv3." *Id.* ¶ 73.

- "In my opinion, the Neo4j Sweden Software License itself gave Suhy, PureThink, LLC, and IGOV, Inc. this permission explicitly . . . . " *Id.* ¶ 76.

- "In my opinion, given the common FOSS practices of either explicitly or implicitly changing terms upon redistribution within the confines and requirements stated in the license, any reasonable party would determine that the Neo4j Sweden Software License intends — given that it was intentionally drafted to include the Further Restrictions Clause — that the [Commons Clause] can be removed by anyone who engages in redistribution (be it commercial or non-commercial) of the

United States District Court
Northern District of California

software covered by the Neo4j Sweden Software License." *Id.* ¶ 78.

- "I believe that the Further Restrictions Clause was, in part, included in the GPLv3 and AGPLv3 to assure that the community could rely on the fact that if the text of the entire AGPLv3 was included in the licensing of some software, that Further Restrictions could not be placed on that software." *Id.* ¶ 83.

- "In my opinion, the Neo4j Sweden Software License intentionally includes the Further Restrictions Clause as a term of that license." *Id.* ¶ 109.

- "In my opinion, if a single firm failed to diligently and formally collect explicit, written relicensing permission from all contributors to all code that was licensed under AGPLv3, that distribution of the Neo4j software under the Neo4j Sweden Software License is in violation of AGPLv3 (wholly unrelated to the Further Restrictions Clause). If such rights have not been diligently and carefully collected and consolidated, no entity may engage in Proprietary Relicensing business nor issue the Neo4j Sweden Software License legitimately. In other words, without such consolidation of rights, the only legitimate license of the Neo4j software is AGPLv3." *Id.* ¶ 113.

Although these statements are couched in language suggesting that they are Kuhn's professional opinion or industry custom, they ultimately discuss whether Neo4j violated the AGPL's Further Restrictions Clause by adding the Commons Clause to the AGPL to create the Neo4j Sweden Software License. Kuhn's belief that it was permissible for Suhy to remove the Commons Clause is based in part on his interpretation of the Neo4j Sweden Software License and the AGPL's Further Restriction Clause.

In addition, paragraphs 74–75 of the Kuhn Report impermissibly opines that Suhy's removal of the Commons Clause from the license was "permitted":

- "If I had encountered the "Neo4j Sweden Software License" during the normal course of my work as a FOSS activist and FOSS licensing expert, I would have felt removal of the [Commons Clause] portion, upon redistribution of the software, was ***permitted*** by the AGPLv3's Further Restrictions Clause." Kuhn Report ¶ 74 (emphasis added).

- "In my opinion, when John Mark Suhy encountered the Neo4j Sweden Software License, his removal of the [Commons Clause] and redistribution of the Covered Work under pure AGPLv3 would be considered customary, ***permissible***, and even widely encouraged in the field of FOSS." *Id.* ¶ 75 (emphasis added).

Experts may not opine on whether conduct is or was legally acceptable or permissible. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (excluding sections of an exert report that described a parties' conduct as "wrongful").

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
13

To the extent that Kuhn opines on the permissibility of Suhy's actions or the legal effect and interpretation of any provision of the Neo4j Sweden Software License—such as what conduct is permitted or not permitted under the license—such testimony is improper legal opinion.

### 3.    Opinions on Defendants' State of Mind

Finally, Plaintiffs seek to exclude paragraphs 71–74, 76–78, and 79–89 of the Kuhn Report as inadmissible opinions on Suhy's subjective intent in removing the Commons Clause from the Neo4j Sweden Software License.  Daubert Mot. at 15.

Expert Witnesses may not opine on "the intent, motives, or states of mind of corporations, regulatory agencies and others . . . . "  *Stone Brewing Co., LLC v. MillerCoors LLC*, No. 18-CV-331, 2020 WL 907060, at *4 (S.D. Cal. Feb. 25, 2020) (quotations and citation omitted). Paragraphs 88 and 89 describe how "Software users and/or redistributors" in Suhy's position would have a good faith belief that the Commons Clause and any other additional restrictions in an AGPLv3-based license could be removed pursuant to the Further Restrictions Clause.  Kuhn Report ¶ 88 ("[T]he users and/or redistributors customarily believe ***in good faith*** that the choice of licensing in this manner was intentional); *id.* ¶ 89 ("[U]sers and/or redistributors ***have a good faith basis*** to exercise any and all clauses of the AGPLv3 — including the Further Restrictions Clause and its permission to strike and remove additional restriction clauses.") (emphasis added).  Although these statements do not expressly reference Suhy, they describe an individual in Suhy's position and impermissibly infer intent, motive, or state of mind from "considerations on which persons in the field generally rely."  *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-CV-01393-JST, 2018 WL 6511146, at *3 (N.D. Cal. Dec. 11, 2018).  The trier of fact is sufficiently capable of drawing its own inferences regarding whether Suhy believed in good faith that his actions were permissible.  *See id.*

The remaining paragraphs identified by Plaintiffs do not specifically speak to Suhy's intent, motive, or state of mind.  In fact, many of these paragraphs are appropriately characterized as legal conclusions.  *See supra* Section II.B.2.  For example, paragraph 78 opines how a "reasonable party" would interpret the intent of the Neo4j Sweden Software License.  Paragraph

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
14

1   74 speaks more to the permissibility, *i.e.*, the "wrongfulness," of Suhy's conduct than to his intent

2   or state of mind, and paragraph 76 impermissibly interprets the legal effect of the Neo4j Sweden

3   Software License.

4       Accordingly, Kuhn may not opine about why Suhy (or any other person in this case) took a

5   particular action or made a particular decision. *See Oracle Am., Inc.*, 2018 WL 6511146, at *3.

6       **4.    Conclusion**

7       In sum, the Court GRANTS Plaintiff's *Daubert* motion. Much of the Kuhn Report

8   testimony relates to the Section 7 issue already decided in this case, and the law of the case

9   doctrine bars reconsideration of that issue. *See Allied Erecting & Dismantling Co.*, 2023 WL

10  5322213, at *6 (affirming district court's exclusion of an expert report based on the law of the case

11  doctrine). Moreover, because Defendants have withdrawn their unclean hands defense, and the

12  only remaining counterclaims and defenses are not addressed by, or related to, the Kuhn

13  testimony, the Court finds it appropriate to exclude the Kuhn Report in its entirety as not relevant.[4]

14  **III.    MOTION FOR PARTIAL SUMMARY JUDGMENT**

15      **A.    Legal Standard**

16      Summary judgment is proper where the pleadings, discovery, and affidavits show that

17  there is "no genuine issue as to any material fact and that the moving party is entitled to judgment

18  as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it would affect the outcome of

19  the suit under the governing law, and a disputed issue is "genuine" if the "evidence is such that a

20  reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*,

21  477 U.S. 242, 248–49 (1986).

22      The party moving for summary judgment bears the initial burden of identifying those

23  portions of the record which demonstrate the absence of a genuine issue of material fact. *See*

24

25  _____

    [4] Defendants' remaining asserted affirmative defenses are waiver and set off, and the remaining
26  asserted counterclaims are Defendants' Fourth Cause of Action for Breach of Exclusivity Contract
    to Government against Neo4j USA (at issue in Plaintiffs' contemporaneously filed partial motion
27  for summary judgment addressed Section III of this Order), and the Eighth Cause of Action for
    Declaratory Relief that the Commons Clause in the AGPL does not Apply to Professional Services
28  against Neo4j Sweden (also addressed in Section III of this Order). *See* ECF No. 206 at 5.

United States District Court
Northern District of California

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the nonmoving party bears the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  If the moving party can meet this initial burden, the burden then shifts to the non-moving party to produce admissible evidence and set forth specific facts showing that a genuine issue of material fact does indeed exist for trial.  *See Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).  If the non-moving party produces enough evidence to show a genuine issue of material fact exists, then it defeats the motion; otherwise, the moving party is entitled to summary judgment.  *Id.*

In considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party.  *See Tolan v. Cotton*, 572 U.S. 650, 655 (2014).  The Court may not weigh conflicting evidence as to a disputed fact nor may it make credibility determinations; any disputed factual issues must be resolved in favor of the non-moving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). However, the Court need not credit the non-moving party's version of events where it is blatantly contradicted by the record.  *See Orn v. City of Tacoma*, 949 F.3d 1167, 1171 (9th Cir. 2020).

### B.    Discussion

Plaintiffs move for partial summary judgment on the following claims: (1) Plaintiffs' DMCA claim; (2) Defendants' breach of contract counterclaim; and (3) Defendants' unclean hands affirmative defense.  *See generally* ECF No. 183 ("MSJ").  Because Defendants have since withdrawn the unclean hands defense (*see* ECF No. 215), the Court only addresses Plaintiffs' first and second arguments.

### 1.    Plaintiffs' DMCA Claim

Plaintiffs' eighth cause of action asserts unauthorized distribution of altered CMI in violation of the DMCA, 17 U.S.C. § 1202(b), against all Defendants.  TAC ¶¶ 166–73.

Plaintiffs allege that the Neo4j EE software was published and distributed with CMI that includes the owner's name, a copyright notice, and a license providing the terms and conditions

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
16

1   for the use of copyrighted work. *Id.* ¶¶ 76, 168.  Plaintiffs allege that Defendants replicated the

2   Neo4j EE source code files and knowingly removed and/or altered and distributed their CMI in

3   violation of § 1202(b)(1) and (3), including licensing terms and conditions and 28 source code

4   files for the Neo4j EE platform. *Id.* ¶¶ 77, 169.  Suhy replaced the Neo4j Sweden Software

5   license with "a generic version of the APGLv3 thereby removing the additional license imposed

6   by the Neo4j Sweden Software License to prevent commercial abuse and other copyright

7   management information." *Id.* ¶ 77.  Defendants allegedly publicly distribute these altered source

8   code files as part of the ONgDB graph database software on iGov's website and Github

9   repository. *Id.*

10        To prove alteration or removal of CMI under § 1202(b)(1), Plaintiffs must demonstrate

11   that Defendants, (i) without the permission of the copyright owner, (ii) "intentionally remove[d] or

12   alter[ed] any copyright management information" (iii) with knowledge "or . . . having reasonable

13   grounds to know, that it will induce, enable, facilitate, or conceal an infringement . . . . "  17

14   U.S.C. § 1202(b).

15        To prove distribution of CMI under § 1202(b)(3), Plaintiffs must show that Defendants, (i)

16   without the permission of the copyright owner, (ii) "distribute[d], import[ed] for distribution, or

17   publicly perform[ed] works, copies of works, or phonorecords, knowing that copyright

18   management information has been removed or altered without authority of the copyright owner or

19   the law" (iii) with knowledge "or . . . having reasonable grounds to know, that it will induce,

20   enable, facilitate, or conceal an infringement . . . ."  17 U.S.C. § 1202(b).

21        CMI refers to, in relevant part:

22        [I]nformation conveyed in connection with copies or phonorecords of
          a work or performances or displays of a work, including in digital
23        form, except that such term does not include any personally
          identifying information about a user of a work or of a copy,
24        phonorecord, performance, or display of a work: (1) The title and
          other information identifying the work, including the information set
25        forth on a notice of copyright.  (2) The name of, and other identifying
          information about, the author of a work.  (3) The name of, and other
26        identifying information about, the copyright owner of the work,
          including the information set forth in a notice of copyright . . . . (6)
27        Terms and conditions for use of the work.  (7) Identifying numbers or
          symbols referring to such information or links to such information.

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
                                          17

United States District Court
Northern District of California

1    17 U.S.C.A. §§ 1202(c)(1)(3), (6)–(7).

2            As an initial matter, Defendants essentially argue that Suhy removed or altered the

3    Commons Clause, not Plaintiffs' CMI.  *See, e.g.*, Undisputed Facts, Fact 51.  Plaintiffs assert that

4    Suhy removed legal notices identifying Neo4j Sweden as the copyright holder and licensor.  MSJ

5    at 6.  It is undisputed that the Notice provision states that Neo4j EE is developed and owned by

6    Neo4j Sweden and that "[t]he NOTICE provision was found in a separate file called NOTICE.txt

7    which was always present next to the AGPL License file called LICENSE.txt."  Undisputed Facts,

8    Fact 6.  Defendants contend that "[t]he only files Mr. Suhy touched were the AGPL LICENSE.txt

9    files" which contained the commercial restrictions.  *Id.*, Fact 14.  Plaintiffs submit that during

10   Suhy's deposition, Suhy admitted to replacing the Neo4j Sweden Software License with a

11   "verbatim" copy of the standard AGPL, effectively removing the Commons Clause.  Undisputed

12   Fact, Fact 12 "Additional Fact/Objection"; ECF No. 98-1, Ex. 3, 172:4–23, 200:5–12.  According

13   to Plaintiffs, once the Licence.txt files were replaced with the standard AGPL, the cross-references

14   to the Licence.txt files in the Notice.txt files became "meaningless."  Undisputed Fact, Fact 12

15   "Additional Fact."  Removal or alteration of the Commons Clause as referenced by the CMI

16   satisfies the "removed or altered" prong under 1202(b)(3).  *See Neo4j, Inc. v. Graph Found., Inc.*,

17   No. 5:19-CV-06226-EJD, 2020 WL 6700480, at *5 (N.D. Cal. Nov. 13, 2020) (finding that

18   "moving the CMI into separate NOTICE.txt files constitutes altering the CMI, and conveying the

19   Neo4j Sweden Software License without the Commons Clause constitutes removing CMI.").

20           With respect to the first prong of §§ 1202(b)(1) and 1202(b)(3), it is undisputed that

21   Plaintiffs did not give permission to Defendants to alter, remove, or distribute the copyright.

22   Undisputed Facts, Fact 16 ("Undisputed that Neo4j Sweden never gave Suhy permission to

23   remove Commons Clause or rename 'it' ONgDB and offer it for free under the AGPL.").  The

24   second prong of § 1202(b)(3) is also satisfied because Suhy distributed Neo4j's source code

25   without the Neo4j Sweden Software License.[5]  Undisputed Facts, Fact 19 ("Suhy made Neo4j

26

27   ───────────────────
     [5] Defendants challenge whether Plaintiffs can show that Suhy is responsible for distribution, *i.e.*,
     making ONgDB publicly available, because "Defendants do not control GFI, nor control what is

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

United States District Court
Northern District of California

Sweden's source code with its CMI removed publicly available via GFI's website and GitHub

repository for ONgDB."); *id.*, Fact 20 ("Suhy provided hyperlinks to potential users of Neo4j® EE

to download ONgDB from GFI's website and GitHub repository from his jmsuhy@purethink.com

email account."); *id.*, Fact 21 (" iGov's website provided links to potential users of Neo4j® EE to

download ONgDB directly from iGov and from GFI's website.").  For the reasons discussed

below, the Court finds that Plaintiffs have established the third prongs of §§ 1202(b)(1) and

1202(b)(3).

Plaintiffs contend that it is an undisputed fact that Neo4j Sweden owns the copyrights for

Neo4j EE Versions 3.4 and 3.5 and licensed them subject to the Neo4j Sweden Software License,

and that this license constitutes Neo4j Sweden's CMI because the "Notice" provision clearly states

that Neo4j® EE is developed and owned by Neo4j Sweden . . . and is subject to the terms of the

[AGPL], with the Commons Clause as follows . . . . "  MSJ at 9; *see* ECF No. 98-2, ¶ 11 and Ex.

3.  According to Plaintiffs, Defendants replaced the Neo4j Sweden Software License with the

generic AGLP, or in other words, Defendants deleted the commercial restrictions from the Neo4j

Sweden Software License, in effect stripping the license to the generic AGPL license.  MSJ at 6.

Plaintiffs allege that, by removing Neo4j's commercial restrictions and stripping down the CMI in

the license, Defendants violated commercial restrictions in the Neo4j Sweden Software license

and infringed Neo4j Sweden's copyrights.  *Id.* at 12–13.  Defendants then distributed that source

code as ONgDB graph database software "with the specific intent of providing an open-source,

restriction-free version of the software."  *Id.* at 13; *see also* Undisputed Facts, Fact 15

("Undisputed that Mr. Suhy knew that Neo4j Sweden owned the copyright for Neo4j EE.").  Suhy

misled the IRS to believe that Graph Foundation, Inc. (and not Neo4j) licensed the software.

Undisputed Facts, Fact 45.  Defendants referenced the IRS's adoption of ONgDB to other

government agencies, *id.*, Fact 46, which Defendants allegedly did to encourage other government

placed on GFI's Github or website."  Opp'n to MSJ at 17.  Defendants cite no case law or
authority to support this argument.  In any event, it is undisputed that Suhy provided hyperlinks of
the Neo4j EE to users of the website.

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
19

United States District Court
Northern District of California

1  agencies and contractors to do the same and pay Defendants for their support services.  *Id.*; *see id.*,

2  Facts 47, 49, 51.

3      With respect to the knowledge and intent prong, the statute requires that Defendants

4  "possess the mental state of knowing, or having a reasonable basis to know, that [their] actions

5  'will induce, enable, facilitate, or conceal' infringement." *Stevens v. Corelogic, Inc.*, 899 F.3d

6  666, 673 (9th Cir. 2018).  For the reasons discussed below, the Court finds that Suhy has not

7  successfully argued lack of requisite knowledge or intent under § 1202(b).

8      It is undisputed that Plaintiffs historically offered a free and open-source version (Neo4j

9  CE) subject to the GPL and a commercial version (Neo4j EE) under both a paid-for commercial

10  license and the free AGPL license.  Undisputed Facts, Fact 3.  According to Neo4j, a commercial

11  license to Neo4j EE entitled a purchaser to use the product in a proprietary setting and to receive

12  professional support and services from Neo4j USA, software updates, and other assistance.  *Id.*

13  Defendants dispute that Neo4j EE commercial license was the only license that permitted

14  proprietary use of Neo4j EE.  *Id.*  According to Defendants, both the Neo4j EE commercial license

15  *and* the Neo4j EE free AGPL license permitted Suhy to use Neo4j EE in a proprietary setting "for

16  free." *Id.*

17      Defendants' understanding of the Neo4j EE license stems from the AGPL license, which

18  contains the following language "[t]his Software is subject to the terms of the GNU Affero

19  General public License [AGPL] Version 3."  Suhy Decl., Ex. 7.  Defendants assert that this

20  language does not permit a licensor to use and alter the terms of the AGPL, and because the Neo4j

21  Sweden Software License is comprised of the language of the AGPL plus additional commercial

22  restrictions, Plaintiffs improperly altered the AGPL.  The gravamen of Defendants argument, then,

23  is that Suhy permissibly removed the Commons Clause and altered the CMI because Neo4j

24  Sweden does not own the copyright to the AGPL license, which forms part of the Neo4j Sweden

25  Software License.  Opp'n to MSJ at 12; *see* Undisputed Facts, Fact 1.

26      Defendants argue that the GPL and AGPL licenses are owned, copyrighted, and

27  trademarked by the FSF.  Opp'n to MSJ at 2, 12.  Defendants assert that the FSF license grants

28  Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
20

1    Neo4J Sweden the license to use the GPL/AGPL copyrighted licenses under certain enumerated

2    restrictions.  *Id.*  One such restriction prohibits making changes to the license document terms.

3    Opp'n to MSJ at 6.  As noted, Defendants argue that Neo4j violated the FSF copyright license by

4    adding commercial restrictions to the AGPL license in violation of 17 U.S.C. §1202(a).  *Id.* at 3.

5    Therefore, Defendants argue that Suhy's removal and/or alteration of the Commons Clause and

6    CMI was not an "improper intentional act" in violation of the DMCA.  Rather, Defendants accuse

7    Plaintiffs of violating the AGPL by modifying it (*i.e.*, adding commercial restrictions such as the

8    Commons Clause and CMI) and, thus, Suhy "prevented further infringement" by removing the

9    offending terms.  Opp'n to MSJ at 13.

10           In sum, Defendants challenge whether they intentionally or knowingly removed CMI

11   pursuant to §§ 1202(b)(1) and (b)(3) because Defendants argue that Suhy purportedly only

12   intended to remove the improper addition to the AGPL license terms, *i.e.*, the commercial

13   restrictions in the Neo4j Sweden Software License, to prevent infringement to FSF's copyright.  In

14   support, Defendants include expert testimony of Dr. Kuhn opining that "Mr. Suhy's conduct in

15   removing the Common Clause was customary, permissible and widely encouraged."  Opp'n to

16   MSJ at 15 (citing Kuhn Report ¶ 75).

17           The Court is unpersuaded by Defendants' argument that Neo4j violated the FSF copyright

18   license.  The basis of Defendants' argument challenging the existence or ownership of the CMI

19   rests on whether Suhy believed that the FSF owned the copyright due to the inclusion of the

20   AGPL language in the Neo4j Sweden Software License.  Opp'n to MSJ at 12.  Even if true,

21   Defendants are not the owners of the copyright at issue and cannot enforce the FSF's copyright.

22   *Graph Found., Inc.*, 2020 WL 6700480, at *3 ("[W]hether Plaintiffs acted in accordance with the

23   copyright covering the AGPLv3 is not at issue before this Court, as Defendants are not entitled to

24   enforce the FSF's copyright.").  The issue before this Court, then, is whether the Neo4j Sweden

25   Software License permits the alleged removal or alteration of CMI in the Neo4j EE source code

26   such that Defendants' alleged distribution of the altered source is not actionable.

27           Plaintiffs argue that this issue has been decided by the Court's First MSJ Order granting

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
                                          21

1    partial summary judgment such that the law of the case bars Defendants from rehashing a different

2    version of the same argument.  Reply at 2–3.  Under the law of the case doctrine, "when a court

3    decides upon a rule of law, that decision should continue to govern the same issues in subsequent

4    stages in the same case."  *United States v. Park Place Assoc.*, 563 F.3d 907, 925 (9th Cir. 2009).

5    It further provides "that the decision of an appellate court on a legal issue must be followed in all

6    subsequent proceedings in the same case."  *Herrington v. Cnty. of Sonoma*, 12 F.3d 901, 904 (9th

7    Cir. 1993) (quotations omitted).  As discussed in detail in Section II.B.1, the Court agrees with

8    Plaintiffs that Defendants are in effect barred from raising this argument again because they raised

9    a substantially similar argument in the prior MSJ that was decided against them in May 2021, that

10   was affirmed by the Ninth Circuit.  *See supra* Section II.B.1; *see* First MSJ Order at 24.

11           Defendants once again argue that the First MSJ Order is an interlocutory order and "the

12   Law of Case Doctrine does not apply to interlocutory orders," *Langevine v. District of Columbia*,

13   106 F.3d 1018, 1023 (D.C. Cir. 1997).  Opp'n to MSJ at 10.  *Langevine* stands for the

14   uncontroversial and longstanding rule that a trial court *may* reconsider or revise its own

15   interlocutory order.  *See Space Sys./Loral, Inc. v. Martin Marietta Corp.*, No. 95-CV-20122 SW,

16   1995 WL 562171, at *2 (N.D. Cal. Sept. 18, 1995) ("[A] district court has discretion to reconsider

17   its own interlocutory orders.") (citing *Milgard Tempering, Inc. v. Selas Corp. of America*, 902

18   F.2d 703, 715 (9th Cir. 1990)).  It does not suggest that this Court could not or should not be

19   guided by its previous findings in rendering a decision on a pending motion.  Moreover, this

20   action's procedural posture differs from *Langevine*.  Here, Defendants did not move for

21   reconsideration of the Court's First MSJ Order; instead, Defendants appealed the Court's First

22   MSJ Order because it enjoined Defendants from infringing on the mark.  The Ninth Circuit

23   affirmed the Court's entry of a preliminarily injunction enjoining Defendants from infringing on

24   the mark and, in doing so, it affirmed the Court's findings with respect to the Neo4j Sweden

25   Software License.

26           Defendants further argue that the appeal only addressed the preliminary injunction, since a

27   partial MSJ order is not appealable.  But the interpretation of Sections 7 and 10 of the Neo4j

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
                                          22

United States District Court
Northern District of California

Sweden Software License in the First MSJ Order is relevant and applicable to Plaintiffs' DMCA claim. *See* First MSJ Order at 24 ("The parties agree that the truth or falsity of Defendants' statements hinge on "the interpretation of Section 7 [of the Neo4j Sweden Software License], and GFI's right to remove the Commons Clause from the Neo4j Sweden Software License."); *id.* at 25 ("Thus, read correctly, Sections 7 and 10 prohibit a licensee from imposing further restrictions, but do not prohibit a licensor from doing so.") (quoting *Graph Found., Inc.*, 2020 WL 6700480, at *4). Defendants' appellate brief expressly argued that the Court's preliminary injunction ruling was "inextricably bound" with the resolution of the summary judgment, *i.e.*, the Court's interpretation of the Neo4j Sweden Software License. *See* ECF No. 181 at 12. Indeed, The Ninth Circuit expressly affirmed that "Defendants' representation that ONgDB is a 'free and open-source' version of Neo4j® EE was literally false, because Section 7 of the Sweden Software License only permits a downstream licensee to remove 'further restrictions' added by an upstream licensee to the original work." *Id.* (citing USCA Memorandum, ECF No. 140 at 3). The Court's findings in the First MSJ Order, affirmed by the Ninth Circuit, address what Defendants now argue with respect to the DMCA claim: that Suhy's removal of the Commons Clause from the Neo4j Sweden Software License was proper. Pursuant to the Ninth Circuit's holding, the Neo4j Sweden Software License does not permit a licensee, such as Suhy, to remove the CMI and commercial restrictions imposed by the license.

Even setting aside these rulings, this Court has rejected the very argument that the AGPL permits a licensee to remove CMI and/orcommercial restrictions from the Neo4j license. *See Graph Found., Inc.*, 2020 WL 6700480, at *4. In *Graph Foundation*, the defendant similarly argued that Neo4j Sweden could not draw terms from the AGPL and impose additional restrictions, an argument which this Court rejected. *Id.* ("The Court, therefore, rejects the notion that the terms drawn from the AGPLv3, on which the Neo4j Sweden Software License is based, somehow limit the rights of Neo4j Sweden to include the Commons Clause or any other additional restriction in its own copyright license."). In interpreting the AGPLv3, the Undersigned concluded that it does not "give licensees the right to remove the [CMI]." *Id.*

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
23

United States District Court
Northern District of California

For these reasons, the Court does not agree with the premise that Defendants' alleged actions were contractually permitted and, therefore, rejects this argument as to Defendants' lack of knowledge.  Thus, Plaintiffs have sufficiently shown knowledge as required under Section 1202(b), as well as the other requisite elements, in satisfaction of their burden.  Because Defendants have not shown to the contrary, the Court GRANTS Plaintiffs' request for summary judgment on the DMCA claim.

### a.    Injunctive Relief

The Copyright Act and the DMCA permits the Court to "grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation" of §1202(b).  17 U.S.C. §§ 502(a), 1203(b)(1).  Plaintiffs seek a preliminary injunction restraining Defendants from further infringement of Neo4j Sweden's copyrights and violations of the DMCA.  MSJ at 15–16.  To obtain an injunction, a plaintiff must show: "1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 948 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) (citation omitted).

Plaintiffs argue that they have established all the requisite elements and are entitled to injunctive relief.  First, Plaintiffs contend that they will suffer irreparable injury if the Court does not enjoin Defendants from continuing to "relicense" Neo4j EE under the AGPL and falsely refer to ONgDB and its derivatives as a "free and unrestricted" replacement for Neo4j EE.  MSJ at 15–16; *see* Undisputed Facts, Facts 35–36.  Plaintiffs contend that by removing the commercial restrictions from the Neo4j Sweden Software License, Defendants were able to convince the IRS to download ONgDB software for free rather than acquire a commercial license from Plaintiffs.  MSJ at 7 (citing First MSJ Order at 6:21-26, 29:4-11, 29:22-30:6).  Plaintiffs allege that the IRS's continued use of the improperly licensed ONgDB software and Suhy's maintenance of the software is evidence that Suhy will continue this conduct unless enjoined.  *Id.*; *see id.* at 2.  The

1    Court agrees; "compelling support for a finding of irreparable harm" includes to a company's

2    "band, business, reputation, and goodwill." *Apple Inc.*, 673 F. Supp. 2d at 948; *see Rent-A-Ctr.,*

3    *Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

4          Second, Plaintiffs contend that the loss of control over licensing of the Neo4j EE

5    commercial license cannot be compensated by monetary damages alone.  MSJ at 15.  While

6    economic injury alone does not constitute irreparable harm, intangible injuries do.  *Rent-A-Ctr.,*

7    *Inc.*, 944 F.2d at 603; *Apple Inc.*, 673 F. Supp. 2d at 949–50 ("[A]n award of damages would be

8    inadequate, simply because the harm caused to [the liscensor's] reputation, goodwill, and brand is

9    difficult, if not impossible, to quantify.").

10         Third, "courts must balance the competing claims of injury and must consider the effect on

11   each party of the granting or withholding of the requested relief."  *Klein v. City of San Clemente,*

12   584 F.3d 1196, 1199–1200 (9th Cir. 2009) (internal citation omitted).  Plaintiffs argue that the

13   balance of hardships weigh in their favor because "an injunction would serve the narrow purpose

14   of preventing or restraining further infringement of Neo4j Sweden's copyrights and violations of

15   the DMCA."  *Id.* at 16.  In contrast, Defendants cannot legitimately and reasonably assert that

16   refraining from violating the DMCA would impose a hardship on them.  *Id.*; *see Apple Inc.*, 673 F.

17   Supp. 2d at 950 (reasoning that defendant "does not (and cannot) claim any *legitimate* hardships

18   as a result of being enjoined from committing unlawful activities.").   Finally, Plaintiffs contend

19   that the only narrow purpose of the injunction is to vindicate Neo4j's rights in its copyright, and

20   the Court agrees.  *Id.*

21         Defendants oppose injunctive relief but their opposition to Plaintiffs' request is based on

22   the same premise that the AGPL does not permit Neo4j to "convert" it into a commercial license.

23   Opp'n to MSJ at 24–25.  For the reasons already discussed, this argument is unavailing.

24         For these reasons, the Court GRANTS Plaintiff's request for a preliminary injunction.

### 2.    Defendants' Breach of Exclusivity Contract Counterclaim

26         Next, Defendants allege that Neo4j USA and PureThink entered into the Exclusivity

27   Agreement permitting PureThink to sell Neo4j Government Edition to the U.S. Government.

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
                                          25

1   Opp'n to MSJ at 24; *see* ECF No. 177 ¶¶ 53–57.  Plaintiffs contend they are entitled to summary

2   judgment on Defendants' counterclaim because Defendants have failed to show the existence of

3   an Exclusivity Agreement; even if there had been an Exclusivity Agreement, Plaintiffs argue that

4   Neo4j did not breach the purported contract.  MSJ at 21.

5          The alleged Exclusivity Agreement is based on a discussion between Neo4j COO Lars

6   Nordwall and Suhy and a letter provided to PureThink on April 11, 2015, and again on June 23,

7   2016.  FACC ¶ 16; *see id.* Exs. C, D.  The letter is addressed "[t]o whom it may concern" and

8   states that PureThink is "the only Neo4j Government Edition reseller" authorized to "resell and

9   support to the US Federal Government, Department of Defense (DOD), and Intelligence

10  Agencies."  *Id.*  It further states that "[t]his agreement can be provided to Government Agencies to

11  support any Federal Acquisition Regulation (FAR) regulations."  *Id.*  The letter is signed by both

12  Nordwall and Suhy.  *Id.*

13         On June 19, 2017, Neo4j emailed Defendants notice that Neo4j is "discontinuing [the]

14  Neo4j Government Edition effective June 19, 2017 such that it is no longer available for sale."

15  Decl. of Jeffrey M. Ratinoff, ECF No. 183-1 ("Ratinoff Decl."), Ex. 19.  Neo4j instructed Suhy

16  that "[a]ll references to Neo4j Government Edition must be removed immediately from any

17  marketing materials, including any web sites."  *Id.*  Approximately one month later, Plaintiffs

18  emailed Michael C. Dunn at IRS, notifying IRS of the termination of the Partnership Agreement

19  and offering assistance with transitioning to an authorized partner "to ensure IRS continues to

20  receive the support it requires in a manner that respects Neo's intellectual property rights and

21  contractual relationships."  FACC, Ex. D at 2.  It also states, in relevant part:

22         Neo understands that IRS entered into an agreement with PureThink
           in September 2016 to purchase a commercial license to Neo4j
23         Government Edition and for consulting services and support. We
           understand that the term of that agreement expires on September 22,
24         2017. We further understand that IRS paid PureThink $229,000 for a
           Neo4j subscription and the consulting services.

25         Regarding IRS's purchase of a Neo4j subscription, Neo still has not
           received a purchase order from PureThink. As a result of PureThink's
26         termination, please be advised that PureThink is no longer authorized
           to purchase a Neo4j subscription on behalf of IRS.  Neo will work
27         with IRS to purchase a subscription through an authorized Neo4j

28  Case No.: 5:18-cv-07182-EJD
    ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
    26

United States District Court
Northern District of California

partner.

FACC, Ex. D (emphasis added).

Defendants allege that Plaintiffs breached this Exclusivity Agreement when Plaintiffs terminated the contract. Opp'n to MSJ at 22–23. Because the Exclusivity Agreement does not contain an express termination clause, Defendants contend that the Court must determine whether termination of the agreement would impliedly include protections for PureThink's up-front investment. *Id.* According to Defendants, "[a] fair analysis of the nature and circumstances of the Exclusivity Agreement would not permit a termination clause that permitted Neo4j USA to terminate PureThink as the exclusive reseller thereof without cause and without further compensating PureThink." *Id.* at 23 (quotations and citation omitted). PureThink allegedly spent $650,000 to "design, develop, and build" the Government Edition and suffered $1.3 million in damages as a result of Plaintiffs' breach. *Id.*; *see* ECF No. 177 ¶ 57.

Plaintiffs assert they are entitled to summary judgment on Defendants' counterclaim because Defendants have failed to establish the four requisite elements of a contract. Mot. at 20–21. Summary judgment is appropriate where the party claiming breach cannot establish one of the four essential elements. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiffs deny the existence of a separate Exclusivity Agreement, contending that Defendants cannot establish contract formation based on the letter because they never reached mutual assent or consented to any terms of any agreement. MSJ at 21.

Defendants argue that the Nordwell letter constitutes an enforceable contract, in part, because it expressly refers to an agreement. Opp'n to MSJ at 22; *see* FACC Ex. C ("This ***agreement*** can be provided to Government Agencies to support any Federal Acquisition Regulation (FAR) regulations.") (emphasis added). Moreover, it is undisputed that the letter is signed by both parties. Opp'n to MSJ at 22.

However, the purported Exclusivity Agreement lacks any contractual terms, and without express terms, the obligations that the parties have agreed to, and the scope of the duties, are unknown. "Under California law, a contract will be enforced if it is sufficiently definite (and this

United States District Court
Northern District of California

1    is a question of law) for the court to ascertain the parties' obligations and to determine whether

2    those obligations have been performed or breached."  *Bustamante v. Intuit, Inc.*, 141 Cal.App.4th

3    199, 208 (Cal. Ct. App. 2006) (finding that "because essential terms were only sketched out, with

4    their final form to be agreed upon in the future" such that "the parties had at best an 'agreement to

5    agree,' which is unenforceable.").  "To be enforceable, a promise must be definite enough that a

6    court can determine the scope of the duty[,] and the limits of performance must be sufficiently

7    defined to provide a rational basis for the assessment of damages." *Id.* (alteration in original)

8    (quoting *Cal. Lettuce Growers v. Union Sugar Co.*, 45 Cal.2d 474, 481 (1955)).  A contract that is

9    "so uncertain and indefinite" that the intention of the parties cannot be ascertained is void and

10   unenforceable.  *Id.* at 209 (quotations and citations omitted).  Here, the letter that forms the basis

11   of the Exclusivity Agreement contains only two sentences stating that PureThink is the only Neo4j

12   Government Edition Reseller and that the letter may be provided to government agencies.  *See*

13   FACC Ex. C.  Defendant argues that the agreement is "unambiguous" and, inexplicably argues

14   that "[t]he terms include the words "[t]his agreement."  Opp'n at 22.  But aside from the letter

15   referring to itself as "this agreement," it lacks any language indicating that the parties intended to

16   enter into an agreement or what obligations such an agreement would entail.

17          Even if the letter contained sufficient information to suggest the existence of a contract,

18   there appears to be no ambiguity as to the purpose of the letter and the meaning of "exclusive

19   reseller" in the context of the Government Edition.  *See, e.g.*, *Wolf v. Superior Ct.*, 114 Cal. App.

20   4th 1343, 1350 (Cal. App. Ct. 2004), *as modified on denial of reh'g* (Feb. 19, 2004) (Courts may

21   look to extrinsic evidence to resolve ambiguous contact terms); *Walter E. Heller W., Inc. v.*

22   *Tecrim Corp.*, 196 Cal. App. 3d 149, 158 (Cal. Ct. App. 1987) ("[P]arol evidence is admissible to

23   aid in interpreting the agreement.").  Plaintiffs contend that, as made clear by the Neo4j letter,

24   PureThink was permitted to act as the exclusive reseller of the Government Edition under the

25   Partnership Agreement, but that Neo4j USA never consented to or entered into a formal

26   exclusivity agreement with PureThink separate from the Partnership Agreement as Defendants

27   argue.  MSJ at 21.  According to Plaintiffs, the letter's language that PureThink is "the only Neo4j

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
     28

Government Edition reseller" refers to the fact that the Government Edition was created for "sole-source justification," meaning that it enabled PureThink to bypass mandatory competitive bidding processes and utilize a faster sole-source procurement track.  MSJ at 22.  The parties agree that the Government Edition was created to address sole source justification, but Defendants argue that it was also "designed to address the shortcomings that Neo4j Enterprise had at the time relating to US government security and accessibility needs."  Undisputed Facts, Fact 66.  However, there is a dearth of evidence in the record that the Government Edition was developed by Defendants for PureThink's exclusive sale.

In emails sent by Suhy to Neo4j, Suhy acknowledges that PureThink is "the only reseller of the Government Edition which allows *for sole source procurement justification for Federal agencies*."  Ratinoff Decl., Ex. 14 at 4 (emphasis added).  In the same email, Suhy expressly recognizes that the Government Edition was created to streamline government procurements.  *Id.* He states:

> We have all the necessary contractual paperwork for ***sole source justification***. We have had several sole source procurements already. I know that government procurement can provide quite a few obstacles, ***which is why Neo Technology created the Government Edition***.

*Id.* at 2 (emphasis added).  Earlier in the email thread, Suhy also states that "Neo4j Government Edition is an official Neo Technology product specifically created for US Government procurement."  *Id.* at 4.  Other emails from Suhy to Neo4j representatives refer to "create[ing] something called the 'Government Edition' *so that we can more easily 'sole source' it to government agencies*."  Ratinoff Decl., Ex. 10 (emphasis added).

Suhy's emails support a finding that the express intent of the letter and the contemporaneous understanding between the parties at the time it was sent was that the Government Edition was created for sole source justification so that PureThink could more efficiently sell the package to various government agencies; it does not reveal an understanding between the parties that the Government Edition was created for the purpose put forth by Defendants.  *See* Cal. Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the

mutual intention of the parties as it existed at the time of contracting").  "If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent to contract and no contract formation."  *Bustamante*, 141 Cal.App.4th at 208 (quoting *Weddington Prods., Inc. v. Flick*, 60 Cal.App.4th 793, 811, 71 Cal.Rptr.2d 265 (Cal. Ct. App. 1998)).  "Mutual consent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings."  *Id*. (quotations and citations omitted). The evidence before the Court only shows that the parties mutually agreed that the Government Edition allows for sole source procurement justification, and the Neo4j letter was provided so that PureThink could bypass mandatory government bidding processes and fast track sole-source procurement.

Although Suhy's emails reference an "exclusivity agreement," the language of the "contract" attached to Suhy's email states that:

> ***The purpose of this agreement is to ensure that US Federal, DOD and State governments can quickly*** procure Neo4J Enterprise licenses via Sole-Source using the justification defined by Federal Acquisition Regulation 6.302-1 which states: "Only one responsible source and no other supplies or services will satisfy agency requirements."

Ratinoff Decl., Ex. 7 (emphasis added).  In Suhy's follow-up email inquiring whether Neo4j had "any comments on the agreement," Neo4j responded that they were forwarding it to their legal department for discussion.  *Id.*  Neo4j did not, for example, express a different understanding of PureThink being the "only reseller" of the Government Edition other than the clearly stated understanding that the language was specifically used in the context of streamlining government procurements of the Government Edition package.  The exchanges between the parties reveal that the letter was essentially used to satisfy government bureaucracy to the benefit of each party.

Finally, the evidence before the Court suggests that, even if there was an Exclusivity Agreement and the contractual obligations had been performed, Neo4j could not have breached the agreement by terminating PureThink.  The "agreement" that Suhy provided to Neo4j states that Neo4j may cancel "at any time for any reason."  Ratinoff Decl., Ex. 8.  Indeed, Suhy's email

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
30

to Erik Nolten at Neo4j expressly provides that "you can cancel the agreement tomorrow - for any reason." Ratinoff Decl., Ex. 7. A reasonable jury could not find, even if Suhy established the existence of an Exclusivity Agreement, that Neo4j breached the agreement by terminating it "without cause" as Defendants argue.[6]

In sum, Plaintiffs have met their burden. Defendants have failed to product evidence sufficient to establish the existence of a contract. Because the existence of a contract is an essential element of a breach of contract cause of action, Defendants counterclaim for Breach of Exclusivity Contract fails. Accordingly, the Court GRANTS Plaintiff's request for summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's *Daubert* motion to exclude the Kuhn Report in its entirety.

The Court also GRANTS Plaintiffs' motion for summary judgment in Plaintiffs' favor with respect to Plaintiff's DMCA claim and Defendants' breach of contract claim.

The Court further ORDERS the following preliminary injunction against Defendants:

1)    Defendants may not make further use of, or fork any source code first released under the Neo4j Sweden Software License, including Neo4j EE 3.4, Neo4j EE 3.5, or any subsequent versions, subversions or derivatives thereof.

2)    Defendants may not make further use of, or fork any source code first released under a

---

[6] Defendants assert that consideration of Suhy's emails is barred by the parol evidence rule, but as the Court has made clear, the Neo4j letter cannot constitute a contract because it lacks any terms or any specific description of the parties' obligations and their scope. Even if the Neo4j letter did contain definite terms to infer the existence of a contract, parol evidence and/or extrinsic evidence would be permitted to determine the parties' interpretation of "exclusivity" with respect to the Government Edition. *Walter E. Heller Western, Inc.*, 196 Cal.App.3d at 158 ("When two equally plausible interpretations of the language of a contract may be made . . . parol evidence is admissible to aid in interpreting the agreement . . . ."). Likewise, evidence would be permissible to determine ambiguities—such as how and when the agreement may be terminated—although, here, extrinsic evidence still does not support the existence of a contract as discussed above. *Wolf*, 114 Cal. App. 4th at 1350 ("Where the meaning of the words used in a contract is disputed, the trial court must provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning.").

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
31

United States District Court
Northern District of California

1    commercial license, including Neo4j EE 3.5, Neo4j EE version 4.x, Neo4j EE version

2    5.x, or any subsequent versions, subversions or derivatives thereof.

3    3)   Defendants shall not offer for sale, advertise or promote ONgDB, GraphStack GDB

4    and GDB (and any derivative or similar software created and/or maintained by

5    Defendants), or any other software containing Neo4j EE source code with a DMCA

6    Violation or that was first released subject to the Neo4j Sweden Software License.

7    4)   Defendants shall not state, claim, advertise, or represent that Neo4j Sweden AB's

8    inclusion of the Commons Clause to the license governing Neo4j EE violated the terms

9    of the GNU Affero General Public License, version 3 ("AGPLv3"), or make similar

10   statements interpreting the terms of the AGPLv3.

11   5)   Defendants shall not state, claim, advertise or represent that the Free Software

12   Foundation ("FSF") or that any government agency determined and/or confirmed that

13   (a) the inclusion of the Commons Clause to any license governing Neo4j EE violated

14   the terms of AGPLv3; and/or (b) the Commons Clause can be removed from any

15   software license governing Neo4j EE and/or ONgDB.

16   6)   Defendants may only make further use of the following publicly available Neo4j open

17   source code, subject to the terms of their respective open source licenses: (i) Neo4j CE

18   Source Code under the GNU General Public License, version 3 ("GPL"); (ii) Neo4j EE

19   version 3.2.14 source code released under the AGPLv3; (iii) Neo4j EE version 3.3.10

20   source code released under the AGPLv3; (iv) Neo4j EE version 3.4.0.RC02 source

21   code released under the AGPLv3.  Nothing herein, however, shall be construed as a

22   license or otherwise permit Defendants to use any source code, patches or source code

23   commits for Neo4j EE version 3.3 or Neo4j EE version 3.4 that were first released

24   under the Neo4j Sweden Software License.  Further, nothing herein shall be construed

25   as a license or otherwise permit Defendants to use or fork, any of Plaintiffs' source

26   code that was first released as Neo4j EE version 3.5 or otherwise under the Neo4j

27   Sweden Software License, including but not limited to, all beta releases, release

28   Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
32

1    candidates, production releases, stable releases, and official releases, or any subsequent

2    versions, subversions, patches or derivatives thereof.

3    7)   Within three (3) days of entry of this Order, Defendants shall remove, take down,

4    destroy and prevent further access to all source code, object code, binaries, build files,

5    build scripts, plug-ins and distributions from any and all public and private repositories

6    (e.g., Docker, GitHub and GitLab) that they have access to, control and/or maintain,

7    including but not limited to

8    https://hub.docker.com/repository/docker/graphstack/ongdb,

9    https://hub.docker.com/repository/docker/graphstack/gdb,

10   https://github.com/graphstackio/gdb, that contains any Neo4j EE source code with a

11   DMCA Violation or that was first released subject to the Neo4j Sweden Software

12   License.  This includes, but is not limited to the removal of (a) ONgDB version 3.4,

13   ONgDB version 3.5, ONgDB version 3.6, ONgDB version 4.x, ONgDB version 2.x,

14   and any versions or subversions thereof; (b) GraphStack GDB version 3.4, GraphStack

15   GDB version 3.5, GraphStack GDB version 3.6, GraphStack GDB version 4.x, and any

16   versions or subversions thereof; and (c) GDB version 3.4, GDB version 3.5, GDB

17   version 3.6, GraphStack GDB version 4.x, and any versions or subversions thereof.

18   8)   Within three (3) days of entry of this Order, Defendants shall permanently remove,

19   take down, destroy and prevent further access to any version of ONgDB, GraphStack

20   GDB and GDB (and any derivative or similar software created and/or maintained by

21   Defendants) that is within their possession, custody or control, contains any Neo4j®

22   Enterprise Edition source code with a DMCA Violation or that was first released

23   subject to the Neo4j Sweden Software License, including but not limited to (a) OngDB

24   version 3.4, OngDB version 3.5, OngDB version 3.6, OngDB version 4.x, OngDB

25   version 2.x, and any versions or subversions thereof; (b) GraphStack GDB version 3.4,

26   GraphStack GDB version 3.5, GraphStack GDB version 3.6, GraphStack GDB version

27   4.x, and any versions or subversions thereof; and (c) GDB version 3.4, GDB version

United States District Court
Northern District of California

United States District Court<br>Northern District of California

1    3.5, GDB version 3.6, GraphStack GDB version 4.x, and any versions or subversions

2    thereof. This removal and destruction shall be effectuated regardless of where that code

3    resides, e.g., Defendants' websites (i.e., https://igovsol.com/, https://purethink.com/,

4    https://graphstack.io/), and any the Content Delivery Services invoked therein), AWS,

5    AWS Gov Cloud, Docker, GitHub, GitLab and/or any other source code repository or

6    hosting service.

7  9)  Within three (3) days of entry of this Order, Defendants shall take down, delete and

8    otherwise remove all webpages, posts on GitHub, discussion forums, social media

9    posts on Twitter, Facebook, Instagram or similar social media sites, and blog posts

10    (and all links thereto) that they own, control, or have the ability and/or right to remove

11    that directs, redirects, offers, advertises, promotes, represents or refers to ONgDB,

12    GraphStack GDB, GDB (and any derivative or similar software created and/or

13    maintained by Defendants that is within their possession, custody or control) or any

14    other software containing Neo4j® Enterprise Edition source code with a DMCA

15    Violation or that was first released subject to the Neo4j Sweden Software License.

16  10) Within fourteen (14) days of entry of this Order, Defendants shall provide a

17    certification from the Internal Revenue Service (IRS) that all versions of ONgDB,

18    GraphStack GDB and GDB, and all other source code and software that contains any

19    Neo4j® Enterprise Edition source code with a DMCA Violation or that was first

20    released subject to the Neo4j Sweden Software License has been removed from the

21    Internal Revenue Service's internal servers and repositories (i.e. GitLab and GitHub)

22    and cloud storage (i.e. Gov Cloud). This includes, but is not limited to the removal of

23    (a) OngDB version 3.4, OngDB version 3.5, OngDB version 3.6, OngDB version 4.x,

24    OngDB version 2.x, and any versions or subversions thereof; (b) GraphStack GDB

25    version 3.4, GraphStack GDB version 3.5, GraphStack GDB version 3.6, GraphStack

26    GDB version 4.x, and any versions or subversions thereof; and (c) GDB version 3.4,

27    GDB version 3.5, GDB version 3.6, GraphStack GDB version 4.x, and any versions or

28  Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
34

1          subversions thereof.

2     11) Defendants shall not offer for sale or provide for any paid development, support,

3          maintenance or hosting services for ONgDB, GraphStack GDB, GDB (and any

4          derivative or similar software created and/or maintained by Defendants), or any other

5          software containing Neo4j EE source code with a DMCA Violation or that was first

6          released subject to the Neo4j Sweden Software License. However, nothing herein

7          prevents Defendants from offering paid consulting services for installations of Neo4j

8          EE software, but only where the customer receiving such services has a commercial

9          license and has fully paid the commercial license fees to Plaintiffs.

10    12) Defendants shall not make any statement and/or representations to any third party,

11         affirmatively or in response to an inquiry, that state or imply that they can provide

12         access to or can obtain any software containing any Neo4j EE source code with a

13         DMCA Violation, that is subject to the Neo4j Sweden Software License, or not

14         otherwise permitted for use by Paragraph 6.

15    13) Defendants shall not have any expressed or implied license to use and shall not make

16         any further use of any of Plaintiffs' source code, object code, machine code and

17         software that is subject to a commercial license or paid commercial subscription,

18         including but not limited to Neo4j EE version 3.4, and all versions and subversions

19         thereof; Neo4j EE version 3.5, and all versions and subversions thereof; Neo4j EE

20         version 4.x, and all versions and subversions thereof; and Neo4j EE version 5.x, and all

21         versions and subversions thereof.  Nothing herein, however, restricts Defendants from

22         purchasing a commercial license or subscription to Neo4j EE software from Plaintiffs

23         or their authorized resellers.

24         The Parties are further ORDERED to file an amended Joint Final Pretrial Conference

25    Statement in light of this Order no later than **October 31, 2023**.

26

27

28    Case No.: 5:18-cv-07182-EJD
      ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
                                          35

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: October 25, 2023

_____
EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
36

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEO4J, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PURETHINK, LLC, et al.,<br><br>Defendants. | Case No.  5:18-cv-07182-EJD<br><br>**ORDER GRANTING PLAINTIFFS'<br>MOTION FOR PARTIAL SUMMARY<br>JUDGMENT; DENYING<br>DEFENDANTS' CROSS-MOTION FOR<br>SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 98, 100 |

Plaintiffs Neo4j, Inc. ("Neo4j USA") and Neo4j Sweden AB ("Neo4j Sweden," and collectively, "Plaintiffs") brought the present lawsuit against Defendants PureThink LLC, iGov Inc., and John Mark Suhy ("Defendants") alleging trademark and copyright infringement, among other claims, related to Plaintiffs' proprietary software.  Currently before the Court is Plaintiffs' Motion for Partial Summary Judgment as to Neo4j USA's Lanham Act and related California Unfair Competition Law ("UCL") claims against Defendants.  Dkt. No. 98 ("Motion").  Also, before the Court is Defendants' Consolidated Cross-Motion for Summary Judgment as to the same subset of claims.  Dkt. No. 100 ("Cross-Motion").

Both the Motion and Cross-Motion were originally filed on a consolidated basis with the corresponding motions in the related action against Defendants Graph Foundation, Inc., GraphGrid, Inc., and AtomRain, Inc. *See Neo4j, Inc. v. Graph Foundation, Inc.*, Case No. 5:19-cv-06226-EJD ("GFI Action").  Before the Motions were fully briefed, however, the parties to the GFI Action reached a settlement and the Court entered a stipulated judgment terminating the case.

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
1

*See* GFI Action, Dkt. No. 110.

The Court took the Motion and Cross-Motion under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b).  Having considered all the papers filed in support of or in opposition to the Motion and Cross-Motion, the Court GRANTS Plaintiffs' Motion and DENIES Defendants' Cross-Motion.

## I.   Background

### A.  Plaintiffs' Business

Neo4j USA is a Delaware corporation with its principal place of business in San Mateo, California, specializing in graph database management systems.  Neo4j USA's platform helps organizations make sense of their data by revealing how people, processes and digital systems are interrelated.  Declaration of John Broad ("Broad Decl."), ¶¶ 2-3.  Neo4j USA has more than 400 commercial customers, including global enterprises such as Walmart, Comcast, Cisco, and eBay, and also does substantial business with government agencies, including agencies within the United States Government.  *Id.* ¶ 4.

Neo4j USA is the parent corporation of Neo4j Sweden, which in turn is a wholly owned subsidiary of Neo4j USA.  Declaration of Philip Rathle ("Rathle Decl."), ¶ 3.  Neo4j Sweden owns of all copyrights related to the Neo4j graph database platform, including the source code, and has licensed those copyrights to Neo4j USA.  *Id.* ¶¶ 3-4.  In conjunction with its business, Neo4j USA filed for and obtained several federally registered trademarks, including U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j Mark").  Dkt. No. 98-1, Declaration of Jeffrey M. Ratinoff in Support of Neo4j, Inc. and Neo4j Sweden AB's Consolidated Motion for Summary Judgment ("Ratinoff Decl."), Ex. 1.  In its registration application, Neo4j USA claimed first use of the Neo4j Mark was in June 2006 and first use in commerce in May 2007 based on the use of that mark by Neo4j Sweden, Neo4j USA's predecessor-in-interest and related company.  *See id.*

United States District Court
Northern District of California

Plaintiffs originally offered a free and open source version of the Neo4j platform, meaning that the source code was available to the public on GitHub pursuant to the GNU General Public License version 3 ("GPL"). Rathle Decl., ¶¶ 4-5. This version was known as the Neo4j Community Edition ("Neo4j CE"). *Id.* Neo4j CE is limited in its feature set and does not come with technical or administrative support. *Id.* ¶¶ 5-6. Plaintiffs also offered a more advanced commercial version with included additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j EE"). *Id* ¶ 8. Neo4j EE was originally offered under both a paid-for commercial license and the free GNU Affero General Public License, version 3 ("APGL"). *Id.* ¶ 9. In May 2018, Plaintiffs released Neo4j EE version 3.4, which they continued to offer under an open source license; however, they replaced the AGPL with a stricter license, which included the terms from the AGPLv3 and additional restrictions provided by the Commons Clause ("Neo4j Sweden Software License"). *Id.*, ¶ 11, Ex. 3. The new terms prohibited the non-paying public from engaging in commercial resale and certain commercial support services. In November 2018, Plaintiffs released Neo4j EE version 3.5 under a commercial license only. From that point on, Plaintiffs were no longer providing Neo4j EE on an open source basis. Rathle Decl., ¶ 13 Ex. 4.

### B. Plaintiffs Partnership with PureThink

PureThink is a software and information technology consulting company founded by Mr. Suhy, which specializes in supporting agencies within the U.S. Government. *See* Ratinoff Decl., Ex. 2. Neo4j USA contracted with PureThink to sell and support the commercial version of Neo4j pursuant to a Solution Partner Agreement ("SPA"). *Id.*, Ex. 4. Under this agreement, PureThink had a non-exclusive, non-transferable limited license to, inter alia, use the Neo4j Mark solely to market and resell commercial licenses to Neo4j EE and related support services in exchange for shared revenue for the licenses that it resold. *Id.*, Ex. 4 at § 4.1. The SPA was subject to a 1-year term and would automatically renew at additional 1-year periods subject to the notice and termination provision therein, thereby incorporating whatever was the Neo4j USA's "then-current trademark usage guidelines." *Id.*, Ex. 4 at §7.1; Ex. 3 at 67:18-24. All rights and licenses to the

United States District Court
Northern District of California

1   Neo4j Platform and the Neo4j Mark under the SPA terminate upon the expiration or termination,

2   and upon such an event, PureThink expressly agreed to "cease using any trademarks, service

3   marks and other designations of Plaintiffs." *Id.*, Ex. 4 at §7.3.

4        In the hopes of increased sales, PureThink developed the Neo4j Government Edition

5   ("Gov't Edition"), which was a package designed to streamline government procurements. *See*

6   *Id.*, Ext. 5-6.  PureThink focused mainly on selling Gov't Edition packages to various government

7   agencies. *Id.*  PureThink initially marketed Gov't Edition to the IRS, however, the IRS indicated

8   that it would require a prototype before purchasing a full subscription.  To secure the IRS's

9   business, Mr. Suhy told the IRS that it could use the open source version of Neo4j EE and pay

10  PureThink for consulting services instead of buying a commercial subscription from Neo4j USA.

11  *Id.*, Ex. 8. The facts regarding what PureThink said and offered to the IRS are disputed and are

12  relevant to the breach of contract claims which are not at issue in this motion.

13       It is undisputed that on May 30, 2017, Neo4j USA sent PureThink notice that Mr. Suhy's

14  use, distribution, and marketing of Neo4j's open source products and his marketing of consulting

15  services focused on those products constitute a material breach of the SPA.  *Id.*, Ex. 9.  The notice

16  triggered a 30-day cure period, during which Mr. Suhy incorporated a new company, iGov Inc., in

17  order to support open source Neo4j software without being bound by restrictions in the SPA that

18  he believed to be unlawful.  *Id.*, Ex 11; Dkt. No. 72, Second Amended Counterclaim, ¶ 20.  On

19  July 11, 2017, Neo4j USA terminated the SPA, demanding that PureThink "cease using [Neo4j's]

20  trademarks, service marks, and other designations . . . and remove from PureThink's website(s)

21  marketing materials, [Neo4j's] trademarks and tradenames, including, without limitation, Neo4j."

22  Ratinoff Decl., Ex. 12.

23                     **C. Defendants' Use of the Neo4j Mark**

24       After the partnership agreement terminated, Mr. Suhy and iGov continued marketing the

25  Gov't Edition to government agencies.  *See id.*, Exs. 14-15.  Around this time, PureThink and

26  iGov put the following statement on their websites:

27  Case No.: 5:18-cv-07182-EJD

28  ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
    DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
                                  4

> The principle [sic] behind PureThink and the Government Package has created a new corporate entity called iGov Inc, which is not a Neo4j Solution Partner. Because iGov Inc is not a solution partner, it can offer packages at great cost savings to US Government Agencies as it has no restrictions on working with Neo4j Enterprise open source licenses!
> * * *
> iGov Inc's new Government Package for Neo4j can be added to any Neo4j instance making it a "Government Edition". By default, all Government Packages for Neo4j now comes with Neo4j Enterprise included under it's [sic] open source license!

*Id.* The iGov website contained numerous uses of the Neo4j Mark, including references to "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise." *Id.*, Exs. 14-19. iGov advertised itself as "the only US Federal contractor providing Neo4j Enterprise binaries packaged with it's free Open Source license!" *See id.*, Ex. 17 ("iGov Inc's Government Development Package with Neo4j Enterprise . . . Comes with same physical Neo4j Enterprise software").

The website also (1) uses "https://igovsol.com/neo4j.html" as a URL to promote "Government Development Packages for Neo4j"; (2) displays "Request Procurement Document Package" link with "mailto:neo4j@igovsol.com" embedded that creates an email addressed thereto upon activation; (3) encourages consumers to obtain more information by sending an email to "neo4j@igovsol.com;" and (4) uses "Government Packages for Neo4j" and "Neo4j Enterprise" to describe iGov's modified version of the Neo4j EE software. Ratinoff Decl., Exs. 15-18, 21, 62-64, 67-69. The parties do not dispute that the website used the Neo4j Mark in these ways, however, they disagree about whether the uses were authorized.

The "Neo4j Enterprise" software that iGov packaged and sold was a modified version of the open source Neo4j EE software, which was only publicly available through Neo4j EE v3.3. It did not include several "closed-source" features of Neo4j EE that were only available under the Neo4j USA's commercial license. In May 2018, Plaintiffs released Neo4j EE v3.4 but replaced the AGPL with the Neo4j Sweden Software License, a stricter license which included additional restrictions provided by the Commons Clause. Rathle Decl. ¶ 11, Ex. 2. The Commons Clause

United States District Court
Northern District of California

1    prohibited resale and commercial support services.  *Id.*

2         Following the release of version 3.4, Mr. Suhy told Plaintiffs that he was forming a non-

3    profit "for a community fork of Neo4j to get things started, and to ensure it's [sic] long term

4    success."  Ratinoff Decl., Ex. 27.  He worked with Brad and Ben Nussbaum, owners of Atom Inc.

5    and GraphGrid, Inc., to form Graph Foundation, Inc.  *Id.*, Ex. 29 ("Our team: iGov Inc, GraphGrid

6    [], and AtomRain [].  We work together as one company.  We all are the founders of the Graph

7    Foundation.").  Once formed, GFI began promoting a software called "ONgDB."  *Id.*, Ex. 28.

8    Defendants and GFI used Neo4j EE version 3.4, which was openly available subject to the Neo4j

9    Sweden Software License, as a base for ONgDB, but they replaced the Neo4j Sweden Software

10   License with the AGPL.  *See id.*, Exs. 24-26, 28; see also Ex. 3 at 28:25-29:11; Ex. 31 at 87:24-

11   90:9.  After Graph Foundation ("GFI") released ONgDB in July 2018, iGov continued to use

12   "https://igovsol.com/neo4j.html" as a URL address to promote ONgDB until it deactivated that

13   page sometime after July 27, 2020.  Ratinoff Decl., Exs. 62-65; Ex. 13 at RFA No. 5.  While iGov

14   replaced this URL with "https://igovsol.com/graph.html," the contents of the page remained the

15   same.  Compare *id.*, Ex. 65 and Ex. 66.  GFI further used a "Download Neo4j Enterprise"

16   hyperlink on its "downloads" page, which redirected consumers to download links for ONgDB

17   until July 27, 2020.  *Id.*, Exs. 66-68.

18        In November 2018, Plaintiffs released Neo4j EE v3.5 solely under a commercial license.

19   *Id.*, Ex. 4.  In January 2019, GFI released ONgDB v3.5.1, which contained at least 182 source

20   code files that had only been previously released under the Neo4j Sweden Software License in a

21   publicly available beta version of Neo4j EE 3.5.  Defendants continued to promote ONgDB as

22   "free and open source" by replacing the Neo4j Sweden Software License with the AGPL in certain

23   LICENSE.txt files alongside the source code.  *Id.*, Exs. 39-40; Dkt. No. 91 at 19:9-25; Ex. 31 at

24   159:3-10; Rathle Decl. ¶ 30.  Doing so removed certain legal notices identifying Neo4j Sweden as

25   the copyright holder and licensor, and removed the Commons Clause, effectively allowing

26   Defendants to commercially use and support ONgDB.  The "landing page" for ONgDB on GitHub

27   Case No.: 5:18-cv-07182-EJD

28   ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

6

United States District Court
Northern District of California

was very similar to that of Neo4j EE.  It was titled "ONgDB – Neo4j Enterprise Fork: Graphs for Everyone," and contained numerous references to Neo4j throughout.  Defendants communicated to potential customers that ONgDB v3.5.x was "100% free and open" with no limitations or restrictions imposed by commercial licensed Neo4j EE v3.5.x.  *See* Ratinoff Decl., Exs. 42-47; *see also* Ex. 126.  Defendants made various representations about ONgDB relevant to Plaintiffs' copyright and contract claims that are not pertinent to the trademark claims at issue here.

Defendants do not claim that ONgDB is identical to its Neo4j counterpart versions. Rather, it combines the last public Neo4j EE code (beta version of Neo4j EE 3.5), the Neo4j CE code, and "glue code" authored by Mr. Suhy and other contributors.  *Id.*, Ex. 31 at 158:18-163:5, 163:13-165:6; Ex. 3 at 124:2-126:23.  Nevertheless, the GFI website stated "ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number."  *Id.*, Ex. 57.  On its "downloads" page, GFI specifically described "ONgDB Enterprise 3.5.5" as a "Drop in replacement for Neo4j Core and Enterprise 3.5.5."  *Id.*, Exs. 67- 69.  GFI instructed potential users of Neo4j EE on its "neo4j" page to "simply download ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the same version number" and still does so on the successor "graph" page.  *Id.*, Exs. 63-66.

Similarly, iGov also continues to assert that "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions."  *Id.*, Ex. 71-74.  iGov also continues to offer "commercial equivalent support packages for Neo4j Enterprise open source licensed distributions," and interchangeability refers to "ONgDB Enterprise" and "Neo4j Enterprise" on its website.  *See id.*, Exs. 62-70.  Defendants have made similar statements directly to potential customers, such as "[ONgDB] is 100% open source and a drop in replacement for the same Neo4j version."  *Id.*, Ex. 43; *see also* Exs. 44-46, 76-77.

GFI used hyperlinks on its website to redirect users to Plaintiffs' operation and developer manuals located on Plaintiffs' website. Dkt. No. 89, ¶¶ 3-8, 13-16; Ratinoff Decl., Exs. 78-83.

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

7

United States District Court
Northern District of California

1    For example, GFI's webpage for ONgDB v3.5.3 stated, "Look for 3.5 Operations manual here"

2    with an embedded hyperlink to https://neo4j.com/docs/operations-manual/3.5.  Dkt. No. 89, ¶ 7;

3    Ratinoff Decl., Exs. 82-83.  Similarly, on GFI's GitHub repository the word "ONgDB 3.5" under

4    the heading "LTS release" contains an embedded hyperlink that redirects users to Neo4j USA's

5    copyrighted "Neo4j Operations Manual v3.5" located on Neo4j, USA's website.  *Id*., ¶¶ 9-10; Exs.

6    82-83; Ex. 31 at 276:19-279:15, 284:2-285:18.

7         Defendants also regularly used the Neo4j Mark as a hashtag on twitter.  For example, GFI

8    announced its release of a new ONgDB version by tweeting "#ONgDB (#FOSS#Neo4j

9    Enterprise) 3.5.x support release is out."  *Id.*, 89, 92, 94-95; Ex. 31 at 233:17-236:15, 240:12-

10   241:25.  Mr. Suhy regularly retweeted those posts, increasing their circulation.  *See id.* Exs. 105-

11   111.

12         **D.  Customer Response**

13         By December 2020, just under two years after the release of ONgDB v3.5.1, the ONgDB

14   software had been downloaded over 14,000 times, signaling its widespread success.  *See id.*, Exs.

15   113-114.  Plaintiffs generally contend that Defendants' actions with respect to ONgDB and use of

16   the Neo4j Mark have caused significant consumer confusion.

17         For example, consumers have encountered compatibility issues, technical problems or

18   glitches with ONgDB and sought assistance from Plaintiffs.  *See e.g.*, *id.*, Ex. 115; Ex. 121

19   ("Unable to connect to Neo4j/ONgDB Browser when port forwarding"); Ex. 122 ("ONgDB neoj

20   not starting up"); Ex. 123 ("I also tried ONgdb (neo4j) with different gremlin server versions");

21   Ex. 124 ("I'm having some difficulty loading a Cypher file into Neo4J . . . note that I am using an

22   recent ONGDB build, rather than straight Neo4J; I do not believe this will make any substantial

23   difference."); *see also* Ex. 133.

24         Furthermore, consumers have expressed uncertainty about the propriety of Defendants'

25   modification to the Neo4j Sweden Software License.  This has caused some confusion about

26   whether and when a commercial license from Neo4j USA is necessary to use, modify or

27   Case No.: 5:18-cv-07182-EJD

28   ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

8

redistribute the software in a commercial setting.  *See id.*, Exs. 49, 117, 118.

### E.  Relevant Procedural Background

On April 10, 2020, the Court granted the parties' stipulation concerning the claims, counterclaims and affirmative defenses ("Phase 1 Issues") that would be subject to the first motions for summary judgment/adjudication filed by each party.  Dkt. No. 68.  The Phase 1 Issues include Plaintiffs' claims for trademark infringement, false designation of origin and false advertising, and unfair competition, as well as Defendants' counterclaims and affirmative defenses related to abandonment of trademark, cancellation of trademark, and fair use.  *Id.*  The parties have since clarified the scope of and have modified that schedule several times.

On May 21, 2020, the Court granted Plaintiffs' Motion for Judgment on the Pleadings, dismissing with prejudice Defendants' affirmative defense and counterclaim for "cancellation of trademark procured by fraud," and dismissing without prejudice Defendants' counterclaim and affirmative defense based on abandonment of trademark by naked licensing.  Dkt. No. 70. Defendants filed a Second Amended Counterclaim and First Amended Answer, realleging the naked licensing defense and counterclaim.  Plaintiffs brought another motion to dismiss and strike, and on August 20, 2020, the Court granted it, dismissing with prejudice Defendants' tenth cause of action based on naked licensing and striking the related affirmative defense.  Dkt. No. 85.

The parties stipulated to the filing of Plaintiffs' Third Amended Complaint.  Defendants filed an Answer to the TAC, which reasserted the affirmative defenses based on cancellation of trademark and abandonment by naked licensing.  Dkt. No. 91.  Plaintiffs filed a motion to strike those affirmative defenses, which the Court granted on March 3, 2021.  Dkt. No. 110.

On December 11, 2020, Plaintiffs filed the present Motion for Summary Judgment as to the Phase 1 Issues ("Motion").  On January 15, 2021, Defendants filed a combined Cross-Motion for Summary Judgment and Opposition ("Cross-Motion").  Both of those motions applied to this action as well as the GFI Action, however, the parties to the GFI Action reached a settlement before the motions were fully briefed.  Plaintiffs then filed a combined Reply in support of their

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
9

1    Motion and Opposition to Defendants' Cross-Motion ("Plaintiffs' Reply"), and Defendants' filed

2    a final Reply in support of their Cross-Motion ("Defendants' Reply").

3    **II.    Legal Standard**

4          Summary judgement is appropriate where the moving party "shows that there is no

5    genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

6    Fed. R. Civ. P. 56(a).  A dispute is "genuine" if there is sufficient evidence that a reasonable fact

7    finder could find for the nonmoving party.  *eOnline Glob., Inc. v. Google LLC*, 387 F. Supp. 3d

8    980, 984 (N.D. Cal. 2019).  A fact is "material" if it could change the outcome of the case.  *Id.*

9    The Court must read the evidence and draw all reasonable inferences in the light most favorable to

10    the nonmoving party.  *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

11          Where the moving party will bear the ultimate burden of proof at trial, such as with

12    Plaintiffs' Motion in this case, the moving party "must prove each element essential of the claims

13    upon which it seeks judgment by undisputed facts" in order to succeed.  *eOnline Global, Inc.*, 387

14    F. Supp. 3d at 984 (citing *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513

15    (N.D. Cal. 1995).  This showing "must be sufficient for the court to hold that no reasonable trier of

16    fact could find other than for the moving party."  *t'Bear v. Forman*, 359 F. Supp. 3d 882, 905

17    (N.D. Cal. 2019) (quoting *First Pacific Networks, Inc.*, 891 F. Supp. at 513).  Only then must the

18    nonmoving party "present significant probative evidence tending to support its claim or defense"

19    to defeat the motion.  *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474,

20    480 (9th Cir. 2000).

21          If the moving party will not bear the ultimate burden of persuasion at trial, like Defendants

22    on their Cross-Motion, then it must carry both the burden of production and the burden of

23    persuasion on its motion for summary judgment.  *Friedman v. Live Nation Merch., Inc.*, 833 F.3d

24    1180, 1188 (9th Cir. 2016) (citing *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210

25    F.3d 1099, 1102 (9th Cir. 2000)).  To carry the burden of production, the moving party "must

26    either produce evidence negating an essential element of the nonmoving party's claim . . . or show

27

28

United States District Court
Northern District of California

that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102–03.  To successfully carry the burden of persuasion, the moving party must show the court that no genuine dispute of material fact exists. *Id.* at 1102.  "If the moving party does not carry its initial burden of production, then the nonmoving party need not produce any evidence to defeat the motion.  But, if the moving party does carry the burden of production, then the nonmoving party must identify with reasonable particularity enough evidence supporting its claim or defense to create a genuine dispute of material fact to defeat the motion." *eOnline Global, Inc.*, 387 F. Supp. 3d at 984 (citations omitted) (citing *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102–03).  Otherwise, the moving party will win on its motion.  *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1103.

In both types of motions, the evidence presented by the nonmoving party must be enough for a jury to return a verdict for the nonmoving party.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "If the nonmoving party's 'evidence is merely colorable or is not significantly probative,' then summary judgment may be granted." *eOnline Global, Inc.*, 387 F. Supp. 3d at 984.

### III.   Discussion

#### A.  Standing

"To establish standing to sue for trademark infringement under the Lanham Act, a plaintiff must show that he or she is either (1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008) (citing 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §§ 27:20–21, 32:3, 32:12 (4th ed.2008) (noting that standing to sue for trademark infringement under the Lanham Act extends to owners of registered and unregistered marks, and nonowners with a protectable interest in the mark)).  Trademark claims under 15 U.S.C. § 1114(1) may be brought by the registrant of the trademark, and the registrant's "legal representatives, predecessors,

1   successors, and assigns." 15 U.S.C. § 1127.

2        Neo4j USA is the registrant of the Neo4j Mark.  Defendants argue that despite being the

3   registrant of the mark, Neo4j USA does not actually own the mark.  As discussed further in

4   Section B(i) *infra*, the Court disagrees with that assessment.  As it pertains to standing, Defendants

5   argue that because "[Neo4j] USA does not own the Neo4J trademark, its lacks standing to bring an

6   infringement claim."  Cross-Motion at 11.  Defendants do not cite any case law to support this

7   argument, nor do they address the fact that 15 U.S.C. § 1114 expressly contemplates that the

8   registrant of a trademark may bring suit for infringement.

9        Moreover, even if Neo4j USA was not the owner of the mark, Defendants do not raise any

10  argument that Neo4j USA is not a "nonowner with a cognizable interest in the allegedly infringing

11  trademark."  *See Halicki Films, LLC*, 547 F.3d at 1225.  As the registrant of the Neo4j Mark and

12  parent company of Neo4j Sweden—which, according to Defendants, is the true owner of the

13  mark—Neo4j USA undoubtedly has a cognizable interest in the mark.  *See Hem & Thread, Inc. v.*

14  *Wholesalefashionsquare.com*, No. 2:19-CV-283-CBM-AFM, 2019 WL 3017669, at *2 (C.D. Cal.

15  Mar. 27, 2019) (finding standing to bring claim under 15 U.S.C. § 1125 where plaintiff was not

16  the owner or registrant but had "express authority and permission" to use the mark in commerce

17  and therefore had a cognizable interest in the trademark).

18       Defendant further argues that "[n]one of defendants' conduct with respect to the use [of]

19  [Neo4j] Sweden's software is germane to [Neo4j] USA's claims" because "[u]se of [Neo4j]

20  Sweden's software is governed by AGPL license" and because Neo4j USA is not the licensor, it

21  "has no standing to assert claims related to that license agreement."  Cross-Motion at 11.

22  Defendants' use of the software and any dispute about the terms or limitations of the AGPL are

23  relevant to Plaintiffs' copyright claims, which are not at issue in this summary judgment motion.

24  Defendants' use of the trademark, not the software, is pertinent to Plaintiffs' trademark

25  infringement and false advertising claims, and Defendants' do not contend that the AGPL

26  constituted a trademark license.

27  Case No.: 5:18-cv-07182-EJD
28  ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
    DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
                                        12

United States District Court
Northern District of California

1    Thus, the Court concludes that Neo4j USA has standing to pursue its trademark claims.

2       **B.  Trademark Infringement**

3    To prevail on its claim under 15 U.S.C. § 1114, Neo4j USA must prove (1) an ownership

4    interest in a protectable mark; and (2) that Defendants' use of the mark is likely to cause consumer

5    confusion.  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th

6    Cir. 2011).  "The core element of trademark infringement is the likelihood of confusion, i.e.,

7    whether the similarity of the marks is likely to confuse customers about the source of the

8    products."  *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992).

9    Furthermore, although disfavored in trademark infringement cases, summary judgment

10   may be entered when no genuine issue of material fact exists.  *See Surfvivor Media, Inc. v.*

11   *Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005).  Whether likelihood of confusion is more a

12   question of law or one of fact can depend on the circumstances of each particular case.  *DC*

13   *Comics v. Towle*, 989 F. Supp. 2d 948, 956 (C.D. Cal. 2013), *aff'd,* 802 F.3d 1012 (9th Cir. 2015)

14   (citing *Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 443 (9th Cir. 1980)).

15   A question of fact may be resolved as a matter of law if reasonable minds cannot differ and the

16   evidence permits only one conclusion.  *Id.* (citing *Sanders v. Parker Drilling Co.*, 911 F.2d 191,

17   194 (9th Cir. 1990).

18       **i.  Ownership**

19   "Registration of a mark is prima facie evidence of the validity of the mark, the registrant's

20   ownership of the mark, and the registrant's exclusive right to use the mark in connection with the

21   goods specified in the registration."  *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th

22   Cir. 2014) (citing 15 U.S.C. § 1115(a)); *see also Align Tech., Inc. v. Strauss Diamond Instruments,*

23   *Inc.*, No. 18-CV-06663-TSH, 2019 WL 1586776, at *4 (N.D. Cal. Apr. 12, 2019) (same).  Under

24   the Lanham Act, registration of a trademark creates a rebuttable presumption that the mark is

25   valid, but the presumption evaporates as soon as evidence of invalidity is presented.  15 U.S.C. §

26   1051.  This "presumption of validity is a strong one, and the burden on the defendant necessary to

27   Case No.: 5:18-cv-07182-EJD

28   ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

13

1    overcome that presumption at summary judgment is heavy." *Zobmondo Ent., LLC v. Falls Media,*

2    *LLC*, 602 F.3d 1108, 1115 (9th Cir. 2010).

3           The parties do not dispute that Neo4j USA is the registrant of the mark. *See* Cross-Motion

4    at 5 ("Defendants are not attacking the registration."). Thus, there is no dispute that Neo4j USA

5    benefits from a presumption of ownership and a presumption that the mark is valid. *Pom*

6    *Wonderful LLC*, 775 F.3d at 1124. Nevertheless, Defendants argue that Neo4j USA is not the

7    *owner* of the trademark. Under section 1 of the Lanham Act, only the owner of a mark is entitled

8    to apply for registration. 15 U.S.C. § 1051 ("The owner of a trademark . . . may request

9    registration of its trademark on the principal register hereby established by paying the prescribed

10   fee and filing in the Patent and Trademark Office an application and a verified statement"). If one

11   who is not the owner seeks registration, the application must be denied and any registration which

12   issues is invalid. *Smith v. Tobacco By-Prod. & Chem. Corp.*, 243 F.2d 188 (C.C.P.A. 1957).

13   Thus, although Defendants state that they challenge ownership and not registration, the distinction

14   is without difference.

15          Defendants contend that Neo4j Sweden is the actual owner of the Neo4j Mark because it

16   was undisputedly the first to use the mark. Defendants point to a License Agreement between

17   Neo4j Sweden and Neo4j USA ("License Agreement"), by which Neo4j Sweden granted Neo4j

18   USA a non-exclusive license to use the mark in the United States. Dkt. No. 101, Declaration of

19   Adron G. Beene In Support Of Defendants And Counterclaimants' Administrative Motion To File

20   Exhibits Under Seal ("Beene Decl."), Ex. 1 ("Neo-Sweden has agreed to grant to Neo-US and

21   Neo-US has agreed to receive, a non-exclusive license under such Neo-Sweden Intellectual

22   Property Rights on the terms and conditions of this Agreement"). The License Agreement was

23   executed in August 2010, approximately six years before Neo4j USA's registration of the Neo4j

24   Mark in the United States.

25          Plaintiffs argue that "the [License] Agreement relied upon by Defendants simply reflects

26   the intercompany division of assets, including trademarks, between Neo4j USA and Neo4j

27   Case No.: 5:18-cv-07182-EJD

28   ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
     14

United States District Court
Northern District of California

1    Sweden as parent and wholly-owned subsidiary, and does not damage the validity of the mark

2    either at the time of registration or thereafter."  Plaintiffs' Reply at 8.  Plaintiffs cite 15 U.S.C. §

3    1055, also referred to as the related companies doctrine, in support of their general proposition that

4    Neo4j USA was entitled to rely on Neo4j Sweden's first use of the mark in its registration.

5    Section 1055 states:

6            "Where a registered mark or a mark sought to be registered is or may be
         used legitimately by related companies, such use shall inure to the benefit
7        of the registrant or applicant for registration, and such use shall not affect
         the validity of such mark or of its registration, provided such mark is not
8        used in such manner as to deceive the public.  If first use of a mark by a
         person is controlled by the registrant or applicant for registration of the
9        mark with respect to the nature and quality of the goods or services, such
         first use shall inure to the benefit of the registrant or applicant, as the case
10       may be."

11

12   *Id.*  "The term 'related company' means any person whose use of a mark is controlled by the

13   owner of the mark with respect to the nature and quality of the goods or services on or in

14   connection with which the mark is used."  15 U.S.C. § 1127.  Given that the registrant of a

15   trademark must be the owner of the trademark and given that "related companies" specifically

16   refers to entities under the control of the owner, Section 1055 only benefits the owner of a mark.

17   Thus, Neo4j USA was only entitled to rely on Neo4j Sweden's prior use if Neo4j USA was the

18   owner of the Neo4j Mark at the time.  Likewise, Neo4j USA must have been the owner of the

19   Neo4j Mark at the time it registered for the registration to be valid.

20           Both Plaintiffs and Defendants rely on and dispute the relevance of *In re Wella A.G.*, 787

21   F.2d 1549, 1555 (Fed. Cir. 1986) (*Wella I*) and *In re Wella A.G.*, 858 F.2d 725 (Fed. Cir. 1988)

22   ("*Wella II*").  In *Wella I*, the Federal Circuit considered whether a foreign parent corporation,

23   Wella A.G., could properly register a trademark which was "the same or similar" to trademarks

24   already registered in the U.S. by Wella A.G.'s subsidiary, Wella U.S.  The registration had been

25   rejected by the examining attorney and TTAB because it was "confusingly similar" to the existing

26   Wella U.S. registered marks under Section 2(d).  The Federal Circuit reversed and remanded,

27   Case No.: 5:18-cv-07182-EJD

28   ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
                                              15

United States District Court
Northern District of California

finding that the Board had misinterpreted and misapplied Section 2(d).  *Wella I*, 787 F. 2d at 1553.

Specifically, the Circuit held that the correct question under Section 2(d) is whether there is any

likelihood of consumer confusion from allowing both the parent and the subsidiary companies to

register the same or similar marks.  *Id.* at 1552–53.  Given the fact that Wella A.G. wholly

controlled Wella U.S., and that the entities operated as one brand in the view of consumers, the

registration was unlikely to result in any consumer confusion.  *Id.*

On remand, Judge Nies wrote separately in *Wella I* to express certain "additional views."  *Id.* at 1554.

Judge Nies agreed with the majority's analysis regarding Section 2(d) but felt there was a different

potentially dispositive question regarding ownership of U.S. rights in the Wella marks.  According

to Judge Nies, Wella A.G.'s registration could also properly be denied because Wella U.S., and

not Wella A.G., appeared to own the U.S. rights to the marks.  *Id.*  She explained that the

registrant must be the owner of the marks, that there could only be one owner of the marks, and

that therefore, Wella A.G. had no right to register the marks unless it was the owner, despite its

status as the parent company of Wella U.S.  *Id.* at 1555.

On remand, the Board held that there was no likelihood of confusion, but nonetheless

rejected the application again based on Judge Nies' concurrence, finding that the parent and

subsidiary could not both own the Wella trademarks.  On a second appeal, the Federal Circuit

chastised the Board for considering the ownership issue.  *Wella II*, 858 F.2d at 728 ("the unusual

nature of our limiting instruction to the Board--we did not merely reverse the Board's denial of

registration but explicitly told the Board what it could consider on remand--should have led the

Board to realize that the majority of the court did not view the additional issue Judge Nies had

raised as something for the Board to address on remand.").  The Federal Circuit, therefore,

rejected the idea that a trademark registered by a parent company could be invalidated simply

based on the fact that the company's wholly owned subsidiary technically owned the marks.

While the facts of the *Wella* cases are not precisely similar to the facts at issue in this case, the

Court finds it instructive that the Federal Circuit did not find it necessary to determine ownership

United States District Court
Northern District of California

1    of a mark as between a parent and wholly owned subsidiary when deciding whether registration of

2    the mark was valid.  *See W. Fla. Seafood, Inc. v. Jet Restaurants, Inc.*, 31 F.3d 1122, 1126–27

3    (Fed. Cir. 1994) (separate entities operating as a single entity in the eyes of the consuming public

4    may be treated as such for trademark purposes).

5         The Trademark Manual of Examining Procedure ("TMEP"), which governs the

6    application for trademark registrations, is also instructive.  The TMEP expressly states that

7    "[e]ither a parent corporation or a subsidiary corporation may be the proper applicant, depending

8    on the facts concerning ownership of the mark."  § 1201.03(c) Wholly Owned Related Companies,

9    TMEP5th 1201.03(c).  Furthermore, it states that the PTO "will consider the filing of the

10   application in the name of either the parent or the subsidiary *to be the expression of the intention*

11   *of the parties as to ownership* in accord with the arrangements between them."  *Id.* (emphasis

12   added).  Under these rules, the fact that Neo4j USA registered the Neo4j Mark can, therefore, be

13   understood as evidence of the intention of the parties as to ownership of the mark.  Thus, while the

14   License Agreement tends to show that Plaintiffs considered Neo4j Sweden to be the owner of the

15   Neo4j Mark in 2010, the fact that Neo4j USA registered the mark tends to show that the parties

16   considered Neo4j USA to be the owner of the mark in 2015.  It is also clear that Defendants

17   understood Neo4j USA to be the owner of the mark when they signed the SPA, by which Neo4j

18   USA granted PureThink a non-exclusive license to use the mark.

19        The TMEP further explains that "[w]here the mark is used by a related company, the

20   owner is the party who controls the nature and quality of the goods sold or services rendered under

21   the mark."  § 1201.01 Claim of Ownership May Be Based on Use By Related Companies,

22   TMEP5th 1201.01.  It is undisputed that Neo4j USA wholly owns and controls Neo4j Sweden and

23   did so at the time of the registration.  *See* Fact 1; Dkt. No. 98-2 at 1:17-18; Neo4j USA is also the

24   only party who exercises control over the mark in the United States.  Thus, the Court finds that the

25   License Agreement alone is insufficient to rebut the presumption of ownership from which Neo4j

26   USA benefits as the registrant of the Neo4j Mark, especially where significant evidence supports

27   Case No.: 5:18-cv-07182-EJD
28   ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

17

1    that presumption.

2    **ii.   Customer Confusion and Nominative Fair Use**

3    Typically, Plaintiffs would need to establish that Defendants' use of the mark is likely to

4    confuse consumers, under the eight factor analysis in *Sleekcraft*.  *See Fortune Dynamic, Inc. v.*

5    *Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010); *AMF Inc. v.*

6    *Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).  When a nominative fair use defense is

7    raised, however the fair-use analysis replaces the likelihood-of-consumer confusion analysis set

8    forth in *Sleekcraft*.  *See Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002).

9    A defendant may raise a nominative fair use defense if "the use of the trademark does not

10   attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a

11   different one."  *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308–09 (9th Cir.

12   1992).  The nominative fair use analysis is appropriate where a defendant has used the plaintiff's

13   mark to describe the plaintiff's product, *even if the defendant's ultimate goal is to describe his*

14   *own product.*"  *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002).  To establish a

15   nominative fair use defense, a defendant must prove the following three elements:

16       First, the [plaintiff's] product or service in question must be one not readily
         identifiable without use of the trademark; second, only so much of the mark
17       or marks may be used as is reasonably necessary to identify the [plaintiff's]
         product or service; and third, the user must do nothing that would, in
18       conjunction with the mark, suggest sponsorship or endorsement by the
         trademark holder.
19

20   *Id.* (citing *New Kids on the Block*, 971 F.2d at 308).  "This test 'evaluates the likelihood of

21   confusion in nominative use cases.'" *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171,

22   1176 (9th Cir. 2010) (quoting *Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1041 (9th Cir. 2007).

23   Plaintiffs need only negate one of these elements to defeat Defendants' reliance on the nominative

24   fair defense.  *See Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1030

25   (9th Cir. 2004) (because defendants use of plaintiff's mark ran afoul of the first prong for

26   nominative use, no need to consider the other two); *see also Horphag Research Ltd. v. Garcia*,

27   Case No.: 5:18-cv-07182-EJD
28   ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
                                    18

United States District Court
Northern District of California

475 F.3d 1029, 1041 (9th Cir. 2007) (defendant's use must meet all three fair use prongs).

In this case, Defendants claim to be "using the Neo4J mark to identify [Neo4j] USA, the commercial Neo4J software and Sweden's open source Neo4J software." Cross-Motion at 14. Plaintiffs first argue that Defendants cannot rely on a fair use defense because PureThink was a licensee of the Neo4J Mark under the SPA, until the SPA terminated.  Plaintiffs cite to several cases in which courts found a likelihood of confusion where a former licensee continued using a trademark after the license agreement terminated.  *See, e.g.*, *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005) ("courts have held that an ex-licensee's continued use of a trademark is enough to establish likelihood of confusion").  None of those cases, however, involved a nominative fair use defense, and the Court is not persuaded that nominative fair use cannot apply in the context of a dispute between a licensor and former licensee.

Plaintiffs next argue that Defendants have not engaged in nominative fair use because Defendants used the Neo4j Mark to refer to Defendants' own products, rather than Plaintiffs' products.  It is undisputed that PureThink and iGov initially marketed a product called "Neo4j Enterprise," and a "Government Package for Neo4j," before rebranding Neo4j Enterprise as ONgDB.  *See* Cross-Motion, Ex. A Defendants' Response to Neo4j Inc.'s Consolidated Separate Statement Of Undisputed Material Facts ("Defendants' Statement of Facts"), at 4 (disputing Fact 16 by explaining that "'Government Packages for Neo4j' and 'Neo4j Enterprise' were used to describe the government packages iGov provided support for around the free and open source neo4j database.").  While Defendants claim that these products consisted of genuine open source Neo4j EE software, neither product was in fact a Neo4j USA product.  Rather, "Neo4j Enterprise" consisted of the last public Neo4j EE code (beta version of Neo4j EE 3.5), the Neo4j CE code, and "glue code" authored by Mr. Suhy and other contributors.  Ratinoff Decl., Ex. 31 at 158:18-163:5, 163:13-165:6; Ex. 3 at 124:2-126:23.  Moreover, Defendants assured potential customers both on iGov's website and in direct email communications that "Neo4j Enterprise" was the "same official

United States District Court
Northern District of California

Neo4j Github Repositories as Neo4j Inc uses for their paid commercial licensed builds" except

distributed under an open source license.  *See, e.g.*, *id.*, Exs. 15, 18-19, 21.

Thus, Defendants were not using "Neo4j" to refer to Plaintiffs' products, they were using it

to create the misleading perception that Defendants' products *were* Plaintiffs' products.  *See*

*Adobe Sys. Inc. v. A & S Elecs., Inc.*, 153 F. Supp. 3d 1136, 1143 (N.D. Cal. 2015) (not fair use

because defendant's use of Adobe's marks was not intended to describe Adobe's product, but

rather to make it appear that the software was sanctioned by Adobe for sale and distribution).  Any

reasonable consumer reading about "Neo4j Enterprise" would conclude that they are getting

official Neo4j EE, or in the case of the "Government Package for Neo4j," consumers would

conclude they are getting Neo4j EE in a specialized government package.  Thus, because

Defendants used "Neo4j Enterprise" and "Government Package for Neo4j" to refer to their own

products, they do not benefit from a nominative fair use defense as to those uses.  *Align*

*Technology, Inc.*, 2019 WL 1586776, at *5 ("[i]n nominative fair use, the defendant uses the

trademarked term not to describe its product but to describe the plaintiff's [product]").

The same is true of iGov's use of the Neo4j Mark in its email address and URL.

Defendants do not refute their use of the Neo4j Mark in the URL https://igovsol.com/neo4j.html to

promote "Neo4j Enterprise," and later to promote ONgDB.  *See* Defendants' Statement of Facts at

4 (failing to substantively refute Fact 16); *id.* at 5 (not disputing that "iGov continued to use

'https://igovsol.com/neo4j.html' as a URL address to promote ONgDB until it deactivated that

page sometime after July 27, 2020.").  Similarly, Defendants do not refute that they used

neo4j@igovsol.com as means for consumers to inquire about ONgDB.  *Id.* (Fact 19).  Instead,

they argue that the email address is for inquiries about "Sweden's open source Neo4j," as "a way

to inquire about iGov support services and support for the neo4j open source database," and "a

means to inquire about ONgDB" and "[ONgDB] open source license support."  *Id.*

Nothing about the use of the Neo4j Mark in the URL or email can be reasonably

interpreted to refer to Plaintiffs' products.  Indeed, the URL brings users to a page marketing

United States District Court
Northern District of California

1    Defendants' products, and the email address is offered to answer questions about Defendants'

2    products.  Thus, Defendants' use of the Neo4j Mark in their URLs or email addresses are not

3    protected by the nominative fair use defense.  S*ee Brookfield Commc'ns, Inc. v. W. Coast Ent.*

4    *Corp.*, 174 F.3d 1036, 1064–65 (9th Cir. 1999) ("[u]sing another trademark in one's metatags is

5    much like posting a sign with another's trademark in front of one's store"); *see also Experience*

6    *Hendrix, L.L.C. v. Hendrixlicensing.com, Ltd.*, No. C09-285Z, 2010 WL 2104239, at *6 (W.D.

7    Wash. May 19, 2010) (use of plaintiff's HENDRIX mark in defendants' URL addresses and

8    business names did not describe plaintiffs' products but rather defendants' products); *State St.*

9    *Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 342 (S.D.N.Y. 2020) (holding that use of a

10   trademark in a URL is not fair use).

11   By contrast, to the extent Defendants offer "support services" targeted at software that

12   Neo4j Sweden or Neo4j USA provide on an open source basis, use of the Neo4j Mark to explain

13   those services could potentially benefit from a fair-use defense because such uses reference

14   Plaintiffs' products, not Defendants'.  Likewise, Defendants are permitted to describe their

15   product as an unaffiliated or independent "fork" of Neo4j source code because that phrasing

16   makes clear that the product is not itself a Neo4j product.  Defendants can also comparatively

17   advertise ONgDB in relation to Neo4J USA's products, however, the trademark guidelines

18   provided on Neo4j USA's website would likely apply to these uses.  *Network Automation, Inc.*,

19   638 F.3d at 1153.

20   Defendants further argue that they "have a right to tell consumers they can use Sweden's

21   Neo4J open source software for free instead of paying for USA's commercial license."  Cross-

22   Motion at 15.  Although Defendants have the right to comparatively advertise their products and

23   refer to Plaintiffs' products in the process, they still cannot use the Neo4j Mark more than

24   necessary and cannot falsely suggest endorsement by Neo4j USA.  *See Toyota Motor Sales,*

25   *U.S.A., Inc.*, 610 F.3d at 1176.  Defendants' use goes beyond what is necessary to identify

26   ONgDB as a fork of Neo4j by (1) extensively using of "Neo4j' and "Neo4j Enterprise" on iGov

27   Case No.: 5:18-cv-07182-EJD

28   ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
     21

United States District Court
Northern District of California

United States District Court
Northern District of California

1    and PureThink websites without proper trademark notices; (2) using embedded "Neo4j" links to

2    Neo4j USA's website and GitHub repository on their websites; (3) hyperlinking to Plaintiffs'

3    build instructions, support documentation and change logs containing the Neo4j Mark rather than

4    creating and hosting their own with the ONgDB name; and (4) using of "Neo4j Enterprise" and

5    "ONgDB" interchangeably to promote ONgDB on their websites.  The Court finds that these

6    embedded links to Plaintiffs' sites and links to Plaintiffs' documentation, along with the repeated

7    references to "Neo4j," including in the title of the products themselves, create the misleading

8    perception that Defendants and Plaintiffs are affiliated.  Thus, the Court finds these undisputed

9    facts sufficient to establish that Defendants' use of the Neo4j Mark falsely suggests endorsement

10   by Neo4j USA, and therefore, is not nominative fair use.

11          Finally, Plaintiffs argue that Defendants' use of the Neo4j Mark on Twitter constitutes

12   infringement and not nominative fair use because Defendants' tweets do not differentiate between

13   Plaintiffs' products and Defendants' products.  For example, on January 23, 2019, GFI tweeted

14   ""#ONgDB (Open #Neo4j Enterprise) 3.4.12 support release is out."  Ratinoff Decl., Ex. 105.  All

15   of the tweets that Plaintiffs point to, however, are from GFI, not Defendants.  The GFI Action

16   have settled and there are no arguments that the tweets may be attributed to Defendants in this

17   action.

18          The Court finds that Plaintiffs have satisfied their burden of proving each essential element

19   of their trademark infringement claim.  Defendants have not produced sufficient evidence that a

20   jury could find in their favor.  Thus, the Court GRANTS Plaintiffs' Motion as to trademark

21   infringement and DENIES Defendants' Cross-Motion as to the same.

22                    **C.  False Advertising Under the Lanham Act and UCL**

23          The elements of a Lanham Act false advertising claim are: "(1) a false statement of fact by

24   the defendant in a commercial advertisement about its own or another's product; (2) the statement

25   actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the

26   deception is material, in that it is likely to influence the purchasing decision; (4) the defendant

27   Case No.: 5:18-cv-07182-EJD

28   ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
                                        22

caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Align Technology, Inc.*, 2019 WL 1586776, at *13 (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).

Defendants do not dispute that statements made via their websites, email, and social media qualify as commercial advertisements under element one. Likewise, they do not raise any argument to dispute that statements made through these channels were placed into interstate commerce, as required under element four. *See Healthport Corp. v. Tanita Corp. of Am.*, 563 F. Supp. 2d 1169, 1178 (D. Or. 2008), *aff'd,* 324 F. App'x 921 (Fed. Cir. 2009) (holding that statements made on website were advertisements placed into interstate commerce); *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 982 (N.D. Cal. 2008) (likelihood of success on interstate commerce element met where defendant had disseminated the misleading statement via email and on its website).

Proof establishing these Lanham Act claims will also establish Neo4j USA's UCL claim. "State common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994); *Acad. of Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (same).

### i. False Statement

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms*, 108 F.3d at 1139. Plaintiffs argue that Defendants have made the following misrepresentations in the advertisement and promotion of ONgDB in interstate commerce via their websites and Twitter.

United States District Court
Northern District of California

1    Plaintiffs argue that Defendants have made numerous misrepresentations in their

2    advertisement and promotion of ONgDB.  These statements generally fall into two groups: (1)

3    statements that ONgDB and Neo4j Enterprise are "free and open source" versions of or

4    alternatives to commercially licensed Neo4j EE; and (2) statements that ONgDB is a "drop-in

5    replacement for an existing commercial licensed distribution of the same version number" of

6    Neo4j EE.  *See* Motion at 29-30 (listing ten discreet statements that Plaintiffs allege are false).

7    With respect to the first group of statements, Plaintiffs argue that Defendants'

8    representations that ONgDB is "free and open source" is false because "the Neo4j Sweden

9    Software License did not permit Defendants to remove the commercial restrictions imposed by the

10   Commons Clause."  Motion at 30.  The parties agree that the truth or falsity of Defendants'

11   statements hinge on "the interpretation of Section 7 [of the Neo4j Sweden Software License], and

12   GFI's right to remove the Commons Clause from the Neo4j Sweden Software License."  Cross-

13   Motion at 30; *see also* Plaintiffs' Reply at 18 ("Defendants do not dispute that their marketing of

14   ONgDB as 'free and open source' Neo4j® EE is primarily based on their (mis)interpretation of

15   the Neo4j Sweden Software License and the form AGPLE upon which it was based.").

16   Defendants argue that there is a reasonable interpretation of the Neo4j Sweden Software

17   License that permits licensees, like GFI or Defendants, to remove the Commons Clause and

18   redistribute the software under the standardized AGPL license.  Cross-Motion at 27-30.  The

19   Court disagrees.  In fact, the Court considered precisely this question in the GFI Action and found

20   as follows:

21   Neither of the two provisions in the form AGPLv3 that Defendants point to
     give licensees the right to remove the information at issue.  Section 10 of
22   the AGPLv3, which is incorporated into the Neo4J Sweden Software
     License, states: "You may not impose any further restrictions on the
23   exercise of rights granted or affirmed under this License."  . . . Section 7
     states: "[i]f the Program as you received it, or any part of it, contains a notice
24   stating that it is governed by this License along with a term that is a further
     restriction, you may remove that term."  [] Defendants argue that these
25   provisions mean that "there can be no liability for removing the further
     licensing restrictions which Neo4j incorporated into the license," namely
26   the Commons Clause. [] As Plaintiffs point out, however, the AGPLv3
     defines "you" as the licensee, not the licensor.  Ex. 1 at § 0 ("Each licensee

27   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
28   DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
                                          24

United States District Court
Northern District of California

is addressed as 'you'"). Thus, read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so.

Indeed, it would be contrary to principles of contract and copyright law to interpret these provisions as limiting Neo4J Sweden's exclusive right to license its copyrighted software under terms of its choosing. *See Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011) ("copyright owners may choose to simply exclude others from their work" or "use their limited monopoly to leverage the right to use their work on the acceptance of specific conditions"). Even "[c]opyright holders who engage in open source licensing have the right to control the modification and distribution of copyrighted material." *Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008). The Court, therefore, rejects the notion that the terms drawn from the AGPLv3, on which the Neo4j Sweden Software License is based, somehow limit the rights of Neo4j Sweden to include the Commons Clause or any other additional restriction in its own copyright license.

*Neo4j, Inc. v. Graph Found., Inc.*, No. 5:19-CV-06226-EJD, 2020 WL 6700480, at *4 (N.D. Cal. Nov. 13, 2020).

Despite this Court's prior ruling on point, Defendants maintain that because the definition of "License" in the Neo4j Sweden Software License is actually the AGPL, licensees may remove any terms in the license that are not in the AGPL pursuant to Section 7. Defendants do not raise any new evidence or arguments to support their interpretation. Defendants also fail to address the Court's reasoning that "further restriction" refers only to further restrictions imposed by a licensee, not the licensor. Thus, the Court finds that Plaintiffs have established that Defendants' statements regarding ONgDB as "free and open source" versions of Neo4j EE are false.

The next group of statements Plaintiffs challenge are those that refer to ONgDB as a "drop-in replacement" for Neo4j EE. Plaintiffs argue that ONgDB is not a true drop-in replacement for equivalent versions of Neo4j EE because ONgDB contains source code filed that were wrongly licensed under the AGPL in violation of Neo4j Sweden's copyright and because the software was not of the same quality and did not contain all of the features of Neo4j EE. Motion at 31. Defendants do not argue that ONgDB was of the same quality or that it did offer all of the features of Neo4j EE, rather, they argue that the phrase "drop-in replacement" was not meant to

1    signify that the two products were identical.  Cross-Motion at 23-24.

2         In response to an interrogatory, iGov asserted that "no claim is made that ONgDB matches

3    every feature of Neo4j Enterprise Edition."  Ratinoff Decl., Ex. 38 (Defendant iGov Inc.'s

4    Amended Response to Neo4j Sweden AB's Second Set of Interrogatories to iGov Inc) at 17.  iGov

5    further explains that "'[d]rop-in replacement' as used by [iGov] means the ability for a user to

6    copy their data from a neo4j instance and place into an ONgDB instance of the same version and

7    have it function with ONgDB using the cypher language version defined in neo4j core for that

8    version."  *Id.*  Similarly, in his deposition, GFI representative Brad Nussbaum explained that

9    "Drop-in replacement refers more to compatibility of features, so we were able to take a Neo4j

10   3.5.4 version, create a database and just show that it worked with ONgDB at that same version."

11   Ratinoff Decl., Ex. 31 at 160:9-14.

12        Plaintiffs first argue that even if "drop-in replacement" merely indicates compatibility,

13   iGov's representations related to ONgDB versions 3.5 and later are still false.  Mr. Nussbaum

14   admitted in his deposition that after Neo4j EE 3.5 was released entirely closed source, GFI "no

15   longer could . . . reliably guarantee that [ONgDB] was a drop-in replacement" and was unwilling

16   to do the testing to make such compatibility guarantees because it was "too hard to demonstrate"

17   with the Neo4j EE code becoming more divergent.  Fact 101 (Dkt. No. 98-1, Ex. 31 at 188:5-17,

18   188:23-189:23).  Despite GFI's admission that there is no way to prove compatibility without

19   access to the Neo4j EE source code of the same version, iGov continues to make drop-in

20   replacement claims for later versions.  *See, e.g.*, Ratinoff Decl., Ex. 46 ("ONgDB 3.5.8 is a drop-in

21   replacement for Neo4j Enterprise 3.5.8 and so on").  The Court agrees that in light of the

22   undisputed fact that Neo4j EE v3.5 and later versions were all closed source, ONgDB's

23   representations that the equivalent versions of ONgDB were "drop-in replacements" could not be

24   verified and were therefore false or misleading.

25        With respect to Defendants' "drop-in replacement" statements about earlier versions,

26   Plaintiffs argue that Defendants' interpretation of what "drop-in replacement" implies is irrelevant.

27   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
28   DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
                                          26

For the purpose of this false advertising claim, Plaintiffs can prove either that the statement was "literally false" or that the statement was "likely to mislead or confuse consumers." *See Southland Sod Farms*, 108 F.3d at 1139;. The Court therefore considers whether there is a genuine dispute of fact about whether Defendants' "drop in replacement" claims were likely to mislead or confuse consumers.

Although the phrase "drop-in replacement" on its own may not necessarily indicate that the software systems were identical, in context, that is precisely what Defendants' statements implied. For example, in an email to a Northwestern University representative, Mr. Suhy stated: "I would recommend using the Neo4j Enterprise fork called ONgDB (Open Native Graph Database) if you want all the enterprise features with no limitations on cores, cluster instances, etc. . . . It is Neo4j Core + Enterprise feature set added back in, so it is drop in replacement for a Neo instance of the same version." *Id.*, Ex. 44.[1]  Similarly, on the "Downloads" page of the iGov website, iGov provides a link to download ONgDB Enterprise 3.5.5, calling it a "[d]rop in replacement for Neo4j Core and Enterprise 3.5.5 AGPLv3 Open Source License, no limitations on causal cluster

---

[1]  *See also*, *id.*, Ex. 43 (email sent by Mr. Suhy to a representative from the Securities and Exchange Commission, Mr. Suhy represented that ONgDB "is just the Neo4j code (https://github.com/neo4j/neo4j) combined with the enterprise code.  It is 100% open source and a drop in replacement for the same Neo4j version."); Ex. 46 (emails with U.S. army, in which Mr. Suhy states that "[a]ll ONgDB distributions are drop-in replacements for Neo4j Enterprise and Neo4j Community as they use the same code base and versioning. Ex: ONgDB 3.5.8 is a drop-in replacement for Neo4j Enterprise 3.5.8 and so on."); Ex. 19 (Sending comparison chart to the National Geospatial Intelligence Agency, asserting that the open source version packaged by iGov is the "same physical software" as Neo4j EE); Ex 21 ("We compile and packaged the open source licen[sed] distributions from the same official Neo4j Github Repositories as Neo4j Inc uses for their paid commercial licensed builds.").

United States District Court
Northern District of California

1   instances, cores, or production usage." *Id.*, Ex. 67.   The site links to Neo4j USA's release notes

2   and website for the same version.  Elsewhere on the website, iGov asserts that "commercial

3   packages available from Neo4j Inc and their partners are essentially support offerings . . . [i]f you

4   do not need support for your ONgDB Enterprise or Neo4j Enterprise open source licensed

5   distribution, then simply download ONgDB Enterprise as a drop in replacement for an existing

6   commercial licensed distribution of the same version number." *Id.*, Ex. 62.  It further provides a

7   chart comparing Neo4j EE and "Neo4j Enterprise open source license," which is captioned:

8   "There are no physical differences between Neo4j Enterprise commercial and AGPL open source

9   licenses!" *Id.*, Ex. 67.  The chart purports to show the differences between the two software

10   products but does not identify or disclaim that there may be source code differences or that

11   ONgDB is not an identical replica of Neo4j EE.

12        The Court finds that the use of "drop-in replacement" in these instances clearly implies that

13   ONgDB "has all the enterprise features" and is essentially the same software as Neo4j EE.  No

14   reasonable consumer would understand these statements to indicate mere compatibility with Neo4j

15   EE.  Thus, the Court concludes that the "drop-in replacement" claims are false or likely to mislead

16   consumers for the purposes of Plaintiffs' false advertising claim.

17                    **ii.  Actual Deception or Tendency to Deceive**

18        For the same reasons that Defendants' statements regarding ONgDB as "free and open

19   source" and as a "drop-in replacement" for Neo4j are likely to mislead consumers, they also have

20   a tendency to deceive.  Moreover, Plaintiffs offer evidence that consumers who chose ONgDB and

21   encountered technical issues reached out to Neo4j USA for help, indicating that those consumers

22   thought they were operating genuine Neo4j EE.  *See, e.g.*, Ratinoff Decl. Ex. 115, 121-124.  Thus,

23   the Court finds sufficient evidence that Defendants' misstatements caused actual deception or had

24   a tendency to deceive.

25                         **iii.  Materiality**

26        "A finding of consumer deception does not amount to a Lanham Act violation unless the

27

28

United States District Court
Northern District of California

deception 'is material, in that it is likely to influence the purchasing decision.'" *R & A Synergy LLC v. Spanx, Inc.*, No. 2:17-CV-09147-SVW-AS, 2019 WL 4390564, at *12 (C.D. Cal. May 1, 2019) (quoting *Southland Sod Farms*, 108 F.3d at 1139).

It is undisputed that Defendants made the statements at issue to convince customers to adopt ONgDB over Neo4j EE.  Because Defendants misrepresented ONgDB as a free version of Neo4j EE licensed under the APGL, there is no doubt that this price differential (free versus paid) was likely to influence customers purchasing decisions.  *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106–1107 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (recognizing under the UCL that price is material to purchasing decisions).  Thus, the Court finds that Defendants' statements suggesting that customers could obtain a "free and open source drop in replacement" for Neo4j EE were material.

### iv. Injury

"Under the Lanham Act, the plaintiff must "plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 644 (N.D. Cal. 2019).  "Lost sales for the plaintiff because of the defendant's false advertising is the 'paradigmatic direct injury from false advertising.'" *Id.* (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 1393, 188 L. Ed. 2d 392 (2014)).

Plaintiffs maintain that there is undisputed evidence that Defendants' false statements diverted sales from Neo4j USA.  *See, e.g.*, Ratinoff Decl., Exs. 47-50, 53, 120, 127; Ex. 3 at 53:4-54:25, 224:13-23; Broad Decl., ¶¶ 20-24.  Indeed, Neo4j USA lost multi-year deal when Next Century adopted ONgDB via the Maryland Procurement Office, amounting to over $2.2 million in lost revenue.  Broad Decl., ¶¶ 22-24, Exs. 12-13.  Defendants claim that Plaintiffs have failed to establish that customers like Next Century would have purchased a Neo4j subscription but for Defendants' offering ONgDB as a "free and open source drop-in replacement."  The Court does not find this argument persuasive.  Commercial injury is generally presumed "in false comparative

United States District Court
Northern District of California

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
29

1  advertising cases, where it's reasonable to presume that every dollar defendant makes has come

2  directly out of plaintiff's pocket." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th

3  Cir. 2011); *see also Lexmark Intern., Inc.*, 134 S. Ct. at 1393 ("diversion of sales to a direct

4  competitor may be the paradigmatic direct injury from false advertising").  Defendants provide no

5  evidence to dispute Plaintiffs' evidence that customers chose ONgDB based on Defendants

6  misrepresentations at the commercial detriment to Plaintiffs.

7        Thus, the Court finds that Plaintiffs have established each element of their claims for false

8  advertising under the Lanham Act and that Defendants have not raised any disputed issues of

9  material fact on which a jury could find in Defendants' favor.  The Court GRANTS Plaintiffs'

10  Motion as to the false advertising claim.

11        Because the Court finds that summary judgment is appropriate as to the Lanham Act

12  claims, the Court also GRANTS Plaintiffs' Motion as to the related UCL claim.  *See Cleary*, 30

13  F.3d at 1262–63.

14                    **D.  False Designation of Origin**

15        Similar to the a false advertising claim, a false designation of origin claim under Section

16  1125(a)(1)(A) requires that Plaintiffs show: (1) the defendants used a false designation of origin;

17  (2) the use occurred in interstate commerce; (3) that such false designation is likely to cause

18  confusion, mistake or deception as to the origin, sponsorship, or approval of defendants' goods or

19  services by another person; and (4) that plaintiff has been or is likely to be damaged.  *Hokto*

20  *Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1039 (C.D. Cal. 2011), *aff'd,* 738 F.3d

21  1085 (9th Cir. 2013) (citing 15 U.S.C. § 1125(a)).

22        Plaintiffs argue that Defendants' holding out of ONgDB as free and open source Neo4j EE

23  constitutes a false designation of origin under the first element.  Defendants argue that "there is an

24  issue of fact on this element because "ONgDB is a fork of Sweden's open source software

25  licensed under the AGPL . . . [and] [t]he designation of origin is, therefore, not false."  Cross-

26  Motion at 22.  Plaintiffs, however, do not challenge statements in which Defendants refer to

27

28  Case No.: 5:18-cv-07182-EJD
   ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
   DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
                              30

United States District Court
Northern District of California

<div style="text-align:right">United States District Court<br>Northern District of California</div>

1   ONgDB as a "fork" or Neo4j core source code.  Rather, Plaintiffs take issue with Defendants

2   identifying ONgDB as "free and open source" Neo4j EE.  As discussed above, Defendants' claim

3   that ONgDB *is* free and open source Neo4j is false because it relies on an interpretation of the

4   Neo4j Sweden Software License that this Court has rejected.  *See* Section C(i) *supra*.

5          Defendants do not raise any arguments regarding the remaining elements of a false

6   designation of origin claim.  Nevertheless, Plaintiffs must still establish each element of the claim

7   to warrant summary judgment.  There is no dispute that Defendants used the Neo4j Mark to

8   falsely imply origin in interstate commerce (element 2).  Plaintiffs have also established that they

9   have been or are likely to be damaged, as discussed in Section C(iv) *supra* (element 4).

10          As to the likelihood of confusion, "[t]he Ninth Circuit has held that the *Sleekcraft* test is

11   appropriate to determine likelihood of confusion regarding a claim for false designation of origin."

12   *Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, No. 5:20-CV-04773-EJD, 2020 WL 5199434, at

13   *7 (N.D. Cal. Aug. 17, 2020) (citing *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1536

14   (9th Cir. 1989)).  The *Sleekcraft* factors include: "(1) [T]he similarity of the marks; (2) the strength

15   of the plaintiff's mark; (3) the proximity or relatedness of the goods or services; (4) the

16   defendant's intent in selecting the mark; (5) evidence of actual confusion; (6) the marketing

17   channels used; (7) the likelihood of expansion into other markets; and (8) the degree of care likely

18   to be exercised by purchasers of the defendant's product.  *Align Technology, Inc.*, 2019 WL

19   1586776, at *8 (citing *Fortune Dynamic, Inc.*, 618 F.3d at 1030).

20          For reasons similar to why the Court rejected Defendants' nominative fair use defense, the

21   Court also finds that the *Sleekcraft* factors weigh in favor of finding a likelihood of confusion to

22   establish the third element of Plaintiffs' false designation of origin claim.  Specifically, it is

23   undisputed that the Defendants used the Neo4j Mark (factor 1), which Plaintiffs' have used in

24   commerce since 2007 and which enjoys strong brand recognition in the graph database software

25   market (factor 2).  *See* Broad Decl. ¶¶ 2-19; Ratinoff Decl., Ex. 72 (iGov website recognizing that

26   Neo4j is the "world's leading Graph Database").  There is also no dispute as to the relatedness of

27   Case No.: 5:18-cv-07182-EJD

28   ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
   DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

<div style="text-align:center">31</div>

1    the products, given that Defendants hold out ONgDB as a free and open source drop-in

2    replacement for Neo4j EE (factor 3).  Although Defendants may assert that their intent was to

3    describe their own products, the evidence also makes clear that Defendants intended to convince

4    consumers to buy Defendants' products instead of Neo4j EE commercial licenses; in other words,

5    Defendants used the Neo4j Mark to unfairly compete with Plaintiffs (factor 4).  As noted above,

6    Plaintiffs have introduced evidence of actual customer confusion (factor 5).  The evidence also

7    shows that both Plaintiffs and Defendants were attempting to gain the business of various

8    government entities, and even bid for the same contracts.  This particularly weighs in Plaintiffs'

9    favor because, as Defendants recognize, government entities prefer cost-effective and open source

10   products where possible (factor 6-8).

11       Thus, the Court finds that Plaintiffs have established each element of their false

12   designation of origin claim.  Defendants have not offered any evidence of a factual dispute

13   sufficient to withstand summary judgment.  The Court, therefore, GRANTS Plaintiffs' Motion as

14   to the false designation of origin claim.

15                    **E.  Injunctive Relief**

16       The Lanham Act vests the Court with the "power to grant injunctions according to

17   principles of equity and upon such terms as the court may deem reasonable, to prevent the

18   violation of any right" of the trademark owner.  15 U.S.C. § 1116(a); *see Century 21 Real Est.*

19   *LLC v. Ed/Var Inc.*, No. 5:13-CV-00887 EJD, 2014 WL 3378278, at *6 (N.D. Cal. July 10, 2014)

20   (issuing a permanent injunction after granting summary judgment on plaintiff's Lanham Act

21   claims).  To obtain an injunction, a plaintiff must show: "(1) that it has suffered an irreparable

22   injury; (2) that remedies available at law, such as monetary damages, are inadequate to

23   compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

24   defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved

25   by a permanent injunction."  *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867,

26   879 (9th Cir. 2014).  "The decision to grant or deny such relief is an act of equitable discretion by

27   Case No.: 5:18-cv-07182-EJD

28   ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
     32

United States District Court
Northern District of California

1    the district court." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 388, 126 S. Ct. 1837, 1838,

2    164 L. Ed. 2d 641 (2006).

3          Plaintiffs argue that they have established all the necessary elements and are entitled to

4    injunctive relief.  First, Neo4j USA has suffered and will continue to suffer irreparable harm

5    because Defendants' trademark infringement, false advertising, and false designation of origin

6    damage Plaintiffs' reputation and the goodwill of the Neo4j Mark.  When a plaintiff demonstrates

7    a likelihood of confusion, it is generally presumed that the plaintiff will suffer irreparable injury if

8    injunctive relief is not granted." *Sun Microsystems, Inc. v. Microsoft Corp.*, 999 F. Supp. 1301,

9    1311 (N.D. Cal. 1998).  Thus, the Court agrees that Plaintiffs face irreparable harm, not

10   compensable by money damages alone, in the absence of injunctive relief.

11         The balance of hardships and public interest factors are less straightforward.  Plaintiffs

12   argue that requiring Defendants to comply with the law will impose no cognizable hardship on

13   Defendants and that the public interest is served by preventing consumer confusion.  Motion at 35

14   (citing *Diller v. Barry Driller, Inc.*, No. CV 12-7200 ABC EX, 2012 WL 4044732, at *10 (C.D.

15   Cal. Sept. 10, 2012) ("no hardship to cease intentionally infringing someone else's trademark

16   rights"); *Stark v. Diageo Chateau & Est. Wines Co.*, 907 F. Supp. 2d 1042, 1067 (N.D. Cal. 2012)

17   ("Preventing consumer confusion serves the public interest")).  Indeed, "[t]he public has an

18   interest in avoiding confusion between two companies' products." *Internet Specialties W., Inc. v.*

19   *Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 993 (9th Cir. 2009).  However, Defendants

20   argue that they have a legitimate First Amendment interest in using the Neo4j Mark to identify

21   Plaintiffs' products and to comparatively advertise their own products.  Cross-Motion at 32.

22   Indeed, iGov's business depends on marketing ONgDB, which does include some or all Neo4j CE

23   open source code.

24         Given the First Amendment interests involved, the Court "may not enjoin nominative use

25   of the mark altogether." *Toyota Motor Sales, U.S.A., Inc.*, 610 F.3d at 1176.  In *Toyota*, the Court

26   held that if a defendant fails to satisfy all the *New Kids* factors for a nominative fair use defense,

27

28

United States District Court
Northern District of California

1    "the district court may order defendants to modify their use of the mark so that all three factors are

2    satisfied." *Id.*  In other words, the Court may order that if Defendants' products are not "readily

3    identifiable" without use of the Neo4j Mark, Defendants may not use more of the mark than

4    necessary, nor use the mark in any way that suggests sponsorship or endorsement by Plaintiffs.

5    *See New Kids on the Block*, 971 F.2d at 308–09).  But the Court "must [e]nsure that [the

6    injunction] is tailored to eliminate only the specific harm alleged." *Toyota Motor Sales, U.S.A.,*

7    *Inc.*, 610 F.3d at 1176 (striking down overbroad injunction which prevented "truthful and non-

8    misleading speech").

9          Moreover, the Court recognizes that there are still additional "Phase 2" claims, issues, and

10   defenses to be adjudicated in this case.  Among other defenses, Defendants have raised an

11   "unclean hands" defense, which was reserved for Phase 2 summary judgment motions.

12   Defendants argue that "[a]ll defenses must be considered before any final action may be taken."

13   Cross-Motion at 6.  The Court agrees that it would be improper to impose permanent relief at this

14   stage in the case.

15         Thus, the Court GRANTS Plaintiffs' request for injunctive relief and issues a preliminary

16   injunction enjoining Defendants' use of the Neo4j Mark only to the extent necessary to prevent

17   unlawful use, as detailed below, without prejudice to Plaintiffs renewing their request for a

18   permanent injunction at the conclusion of the case.

19   **IV.    Conclusion**

20         For the reasons stated above, the Court hereby GRANTS Plaintiffs' Motion for Partial

21   Summary Judgment as to Neo4j USA's first, second, third, and fourth causes of action for

22   trademark infringement, false designation of origin and false advertising, federal unfair

23   competition, and state unfair competition, respectively.

24         IT IS FURTHER ORDERED that the Court DENIES Defendants' Cross-Motion as to the

25   same claims.

26         IT IS FURTHER ORDERED that the Court enters the following PRELIMINARY

27   Case No.: 5:18-cv-07182-EJD

28   ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

                                                    34

*United States District Court*
*Northern District of California*

INJUNCTION against Defendants as follows.

Defendants and their owners, principals, agents, managers, officers, directors, members, servants, employees, successors, assigns, and all other persons acting in concert and participation with them (collectively, the "Enjoined Parties") ARE HEREBY ENJOINED from:

1.  Infringing U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j Mark").

2.  Advertising, promoting, representing or referring to ONgDB as a free and open source drop-in replacement of Neo4j Enterprise Edition distributions with the same version number, and any similar statement that may lead consumers to believe that ONgDB is a Neo4j USA or Neo4j Sweden product, or is identical to a Neo4j USA or Neo4j Sweden product.

3.  Advertising, promoting, representing, or referring to Neo4 Enterprise or Neo4j Enterprise Edition being released only under the AGPL.

4.  Representing that Neo4j Sweden AB's addition of the Commons Clause to the license governing Neo4j Enterprise Edition violated the terms of AGPL or that removal of the Commons Clause is lawful, and similar statements.

5.  Advertising, displaying or distributing products, literature or any other materials that use the Neo4j Mark to advertise or promote ONgDB in any way that suggests sponsorship or endorsement by Neo4j USA or Neo4j Sweden or that may lead consumers to believe that ONgDB is a Neo4j USA or Neo4j Sweden product, or is identical to a Neo4j USA or Neo4j Sweden product.

6.  Affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being Neo4j products and from offering such goods in commerce.

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
35

7.  Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in Paragraphs 1-6 above.

Within three business days of the date of this Order, the Enjoined Parties shall remove all infringing material and enjoined uses of the Neo4j Mark from all websites, webpages, and GitHub repositories owned or managed by the Enjoined Parties.

**IT IS SO ORDERED.**

Dated:  May 18, 2021

_____
EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
36

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEO4J, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> PURETHINK, LLC, et al., <br><br> Defendants. | Case No. 5:18-cv-07182-EJD <br><br> **ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Re: Dkt. No. 60 |

Before the Court is Plaintiff and Counter-Defendant Neo4j, Inc.'s ("Plaintiff" or "Neo4j USA") motion for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (the "Motion"). Dkt. No. 60. Plaintiff requests judgment on the pleadings as to the First Cause of Action for Cancellation of Trademark and Second Cause of Action for Declaratory Relief for Abandonment of Trademark asserted in Defendant John Mark Suhy's ("Suhy") Counterclaim (Dkt. No. 48), as well as the Tenth Cause of Action for Declaratory Relief for Abandonment of Trademark and Eleventh Cause of Action for Cancellation of Trademark asserted in the First Amended Counterclaim filed by Defendants PureThink, LLC ("PureThink") and iGov Inc. ("iGov") (Dkt. No. 55). Plaintiff further seeks judgment on the on the substantively identical Seventh Affirmative Defense for Cancellation of Trademark Procured by Fraud and Ninth Affirmative Defense for Naked License Abandonment of Trademark asserted in the Answer to the Second Amended Complaint (Dkt. No. 54) by Defendants Suhy, PureThink, and iGov (collectively "Defendants").

The Court took the matter under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons below, Plaintiff's motion is **GRANTED**.

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
1

SER_0109

## I.   Background[1]

### A.  Factual Background

Neo4j USA is a Delaware corporation with its principal place of business in San Mateo, California, specializing in graph database management systems.  SAC, ¶ 2.  Neo4j USA's platform "helps organizations make sense of their data by revealing how people, processes and digital systems are interrelated."  *Id.*  Neo4j USA has more than 300 commercial customers, including global enterprises such as Walmart, Comcast, Cisco, and eBay, and also does substantial business with government agencies, including agencies within the United States Government.  *Id.* at ¶ 3.  Neo4j USA was originally incorporated as Neo Technology, Inc., but changed its name to Neo4j, Inc. in or about July 2017.  *Id.* at ¶ 2.

Neo4j USA owns the trademark for the word mark "Neo4j," U.S. Trademark Registration No. 4,784,280.  *Id.* at ¶ 21.  Neo4j USA first used this trademark in June 2006 and has continually used it since it was published by the USPTO in May 2015 and issued on August 4, 2015.  *Id.* at ¶ 22.  Neo4j Sweden AB ("Neo4j Sweden"), a wholly owned subsidiary of Neo4j USA and a plaintiff in this action, owns certain copyrights related to the Neo4j graph platform software, including the source code, and has licensed these copyrights to Neo4j USA.  *Id.* at ¶ 4.  Neo4j Sweden distributes a version of Neo4j software known as "Neo4j Community Edition" on an open source basis under the GNU General Public License (Dkt. No. 65, Ex. B) ("GPL") and a variant called the GNU Affero General Public License (Dkt. No. 55, Ex. A) ("AGPL").  First Amended Counterclaim, Dkt. No. 55 ("Am. Counterclaim"), ¶ 7.  This open source software is available at Github.com, the preeminent open source software repository.  *Id.* at ¶ 8.  Under the GPL and AGPL, anyone can download the Neo4j Community Edition source code and use, modify,

---

[1] This background summarizes only the allegations relevant to the affirmative defenses and counterclaims at issue in the present motion for judgment on the pleadings.  Because the motion challenges both affirmative defenses and counterclaims, this background draws from allegations in both the Second Amended Complaint and the First Amended Counterclaim.

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
2

SER_0110

support, combine and convey the software for free; however, licensees who copy, distribute, or

modify the software are required to provide notice of any modifications they make to the software.

*Id.* at ¶ 9.

   While Neo4j Sweden licensed the Neo4j Community Edition software under the GPL and

AGPL, Neo4j USA licensed a commercial version, known as the "Enterprise Edition" which came

with additional features and commercial support.  *Id.* at ¶ 11; SAC ¶ 24.  The commercial version

was initially licensed under the terms of the AGPL as well as under a paid commercial license.  *Id.*

at ¶ 25; Am. Counterclaim, ¶ 11.  Plaintiff alleges that beginning in November 2018, it exclusively

offered the commercial version under a paid commercial license.  SAC ¶¶ 25-27.

   On or around September 30, 2014, Neo4j USA entered into a Partner Agreement with

Defendant PureThink, by which PureThink agreed to sell and support the commercial version of

the software in exchange for a percentage of the fees.  *Id.* at ¶ 29; Am Counterclaim, ¶¶ 12-15.

PureThink is a Delaware limited liability company, allegedly focused on software development.

SAC ¶ 6.  Plaintiff alleges that iGov is the successor-in-interest and alter ego of PureThink.  *Id.* at

¶¶ 6-14.  Plaintiff alleges that Defendant Suhy is the sole member and manager of PureThink and

the sole shareholder of iGov.  *Id.* at ¶ 8.

   The partnership between Neo4j USA and PureThink deteriorated, for reasons not relevant

to the analysis herein, and on May 30, 2017, Neo4j USA provided PureThink with formal

notification of material breach.  SAC ¶ 33.  Shortly thereafter, on July 11, 2017, Neo4j USA

provided PureThink with written notice that the Partner Agreement was terminated due to

PureThink's failure to cure the material breaches set forth in the May 30, 2017 letter.  *Id.* at ¶ 35.

**B.  Procedural History**

   On November 28, 2018, Plaintiff filed this action against Defendants, asserting (1)

Trademark Infringement; (2) False Designation of Origin; (3) False Advertising; (4) Federal and

State Unfair Competition; (5) Breach of Contract; and (6) Invasion of Privacy.  On January 9,

2019, Defendants PureThink and iGov filed a counterclaim against Plaintiff, alleging (1)

Interference With Prospective Economic Advantage; (2) Interference with Contract; (3) Breach of

Case No.: 5:18-cv-07182-EJD

ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

3

United States District Court
Northern District of California

1   Contract; (4) Declaratory Relief (Void Restrictions); (5) Declaratory Relief (Restrictions Violate

2   AGPL License); and (6) Declaratory Relief (Abandonment of Trademark).

3         On October 1, 2019, Neo4j USA filed the now-related action, *Neo4j, Inc. v. Graph*

4   *Foundation, Inc.*, Case No. 3:19-cv-06226-EJD (the "GFI Action"). Neo4j USA alleges that GFI

5   engaged in conduct that amounts to trademark infringement in violation of 15 U.S.C. § 1117(a), as

6   well false advertising, passing-off and false designation of origin in violation of 15 U.S.C. §

7   1125(a). Neo4j USA further alleges that this same conduct constitutes unlawful and unfair

8   competition in violation of California's unfair competition law, Cal. Bus. & Prof. Code § 17200 et

9   seq. ("UCL"). These claims overlap with and are substantially similar to the Lanham Act and

10  UCL claims asserted by Neo4j USA against Defendants in this action.

11        On October 22, 2019, Plaintiff sought and obtained leave to file its First Amended

12  Complaint (*see* Dkt. Nos. 35-37), which set forth additional allegations to support its claims under

13  the Lanham Act and the UCL, and also included a new claim alleging that Defendant Suhy

14  violated the Digital Millennium Copyright Act ("DMCA"). The First Amended Complaint also

15  added Neo4j Sweden AB ("Neo4j Sweden") as a plaintiff, which joined in the new DMCA claim.

16        On November 13, 2019, Suhy filed a counterclaim wherein he asserted claims for (1)

17  Cancellation Of Trademark Procured By Fraud; and (2) Declaratory Relief (Abandonment of

18  Trademark). Dkt. No. 48 ("Suhy Counterclaim"). On November 25, 2019, Plaintiffs filed their

19  Second Amended Complaint in response to a motion to dismiss filed by PureThink and iGov Inc.

20  *See* Dkt. Nos. 49-50. On December 9, 2019, PureThink and iGov filed their First Amended

21  Counterclaim. Dkt. No. 55 ("Am. Counterclaim"). The First Amended Counterclaim contained

22  claims identical to claims (1) and (2) asserted by Suhy for the cancellation and abandonment of the

23  trademark. Similarly, the Answer filed by all Defendants on December 9, 2019 contains

24  affirmative defenses that are substantively identical to the cancellation and abandonment

25  counterclaims. Dkt. No. 54 ("Answer").

26        The Defendants' Ninth Affirmative Defense, PureThink and iGov's Tenth Cause of Action

27  in their Amended Counterclaim, and Suhy's Second Cause of Action in his Counterclaim

28  Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
4

(collectively, the "Abandonment Arguments") all allege:

> [T]here is confusion whether Neo4j is a company name trademark or
> product name trademark. This confusion is exacerbated by NEO4J
> SWEDEN' open source license for a product called Neo4j. NEO4J
> SWEDEN's license states: "The software ("Software") is developed and
> owned by NEO4J SWEDEN (referred to in this notice as "Neo4j") . . .
> NEO4J SWEDEN asserts they own the software-and not NEO4J Inc.- and
> they use Neo4j name as part of the company name and call the open source
> software product Neo4j too.

See Suhy Counterclaim at ¶ 9; Am. Counterclaim at ¶ 85; Answer at 19:13-21.  They further

allege, in varying language, that because "the Neo4j trademark is used and licensed as open source

software, there is no ability to maintain quality control" over the product and that Neo4j has

therefore abandoned the Neo4j trademark.  Am. Counterclaim ¶ 85.

Similarly, the Defendants' Seventh Affirmative Defense, PureThink and iGov's Eleventh

Cause of Action in their Amended Counterclaim, and Suhy's First Cause of Action in his

Counterclaim (collectively, the "Cancellation Arguments") all allege:

> "The Registered Trademark for NEO4J, Reg. No. 4,784,280, was procured
> by fraud as the representation to the PTO was that Neo Technology (a
> Delaware corporation) (changed to Neo4J, Inc.) first used the trademark in
> 6-4-2006 and in commerce in 5-28-2007. [] These statements are
> [knowingly] false and material to the decision to grant the registration
> application. [] Neo Technology, the predecessor to NEO4J USA did not
> exist on 6-4-2006 or 5-28-2007. [] Neo Technology, the predecessor to
> NEO4J US was first formed 7-7-2011 in Delaware under File Number
> 5007564."

Am. Counterclaim at ¶¶ 88-92; *see also* Suhy Counterclaim at ¶¶ 4-7; Answer at 18:20-19:3.

The Abandonment and Cancellations Arguments are also identical to the trademark-related

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
5

affirmative defenses asserted by Graph Foundation in the GFI Action. Thus, in addition to filing

the present motion for judgment on the pleadings, Neo4j USA also filed a motion to strike GFI's

affirmative defenses in the GFI action, which raises substantively identical legal arguments. See

GFI Action, Dkt. No. 32.

## II.    Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but

early enough not to delay trial—a party may move for judgment on the pleadings." A Rule 12(c)

motion challenges the legal sufficiency of the opposing party's pleadings. Judgment on the

pleadings is appropriate when, even if all material facts in the pleading under attack are true, the

moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925

(9th Cir. 2009).

On a motion for judgment on the pleadings, "all material allegations in the complaint are

accepted as true and construed in the light most favorable to the non-moving party." *Turner v.

Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004). "[A]ll reasonable inferences" must be made "in favor

of the nonmoving party." *Mediran v. International Ass'n of Machinists and Aerospace Workers*,

No. 09-0538 TEH, 2011 WL 2746601, at *2 (N.D. Cal. July 14, 2011). "A motion for judgment

on the pleadings may be granted if, after assessing the complaint and matters for which judicial

notice is proper, it appears 'beyond doubt that the [non-moving party] cannot prove any facts that

would support his claim for relief.'" *Williams v. Nichols Demos, Inc.*, No. 5:17-CV-07101-EJD,

2018 WL 3046507, at *3 (N.D. Cal. June 20, 2018) (citing *Morgan v. County of Yolo*, 436 F.

Supp. 2d 1152, 1155 (E.D. Cal. 2006)). In other words, the standard for a Rule 12(c) motion is

essentially the same as that for a Rule 12(b)(6) motion. *Chavez v. United States*, 683 F.3d 1102,

1108 (9th Cir. 2012).

"[I]t is common to apply Rule 12(c) to individual causes of action," as well as individual

affirmative defenses and answers. *Strigliabotti v. Franklin Res., Inc.*, 398 F.Supp.2d 1094, 1097

(N.D. Cal. 2005); *Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*, No. C 12-05523

WHA, 2013 WL 4519805, at *1 (N.D. Cal. Aug. 23, 2013) (granting trademark holder's motion

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
6

United States District Court
Northern District of California

for judgment on the pleadings with respect to three of defendant's affirmative defenses).

Although Rule 12(c) makes no mention of leave to amend, "courts have discretion both to grant a

Rule 12(c) motion with leave to amend . . . and to simply grant dismissal of the action instead of

entry of judgment." *Mitchell v. Corelogic, Inc.*, No. SA 17-CV-2274-DOC (DFMx), 2019 WL

7172978, at *4 (C.D. Cal. Nov. 20, 2019) (citing *Carmen v. S.F. Unified Sch. Dist.*, 982 F. Supp.

1396, 1401 (N.D. Cal. 1997) and *Moran v. Peralta Community College Dist.*, 825 F.Supp. 891,

893 (N.D. Cal. 1993)).

### III.   Discussion

#### A.  Judicial Notice

As with a Rule 12(b)(6) motion, the Court may also consider documents that are attached

to the complaint, incorporated by reference when their authenticity is not contested, or are

otherwise properly the subject to judicial notice. *See Ramachandran v. City of Los Altos*, 359

F.Supp.3d 801, 810 (N.D. Cal. 2019); *see also Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163

F.Supp.3d 755, 764 (C.D. Cal. 2015).

The AGPL was attached to the Amended Counterclaim as Exhibit A.  It was also

repeatedly referenced and quoted throughout the SAC and Amended Counterclaim.  The GPL was

attached to Plaintiff's Request for Judicial Notice, submitted in conjunction with the Reply.  See

Dkt. No. 65, Ex. B.  The GPL was also repeatedly referenced in the SAC, Amended Counterclaim

Suhy Counterclaim and Answer.  Both documents are publicly available and their authenticity is

not in dispute.  Thus, the Court finds that the document is incorporated by reference into the

pleadings and may be properly considered on this motion. *See Van Buskirk v. CNN*, 284 F.3d 977,

980 (9th Cir. 2002) (recognizing that a court may rely upon "the doctrine of 'incorporation by

reference' to consider documents that were referenced extensively in the complaint and were

accepted by all parties as authentic"); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)

("Even if a document is not attached to a complaint, it may be incorporated by reference into a

complaint if the plaintiff refers extensively to the document or the document forms the basis of the

plaintiff's claim.").

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
7

1    The remainder of the documents included in Plaintiff's two requests for judicial notice are

2    not relevant to the Court's analysis and, therefore, the Court declines to take judicial notice of

3    those documents.

4    **B. Cancellation Arguments**

5    In their Opposition, Defendants conceded, and the Court agrees, that a misstatement of a

6    date of first use in a registration in and of itself does not support cancellation of the trademark.

7    Opposition, p. 3; *see Pony Exp. Courier Corp. of Am. v. Pony Exp. Delivery Serv.*, 872 F.2d 317,

8    319 (9th Cir. 1989); *Teeter-Totter, LLC v. Palm Bay Int'l, Inc.*, 344 F.Supp.3d 1100, 1109 (N.D.

9    Cal. 2018) (citing same) (dismissing trademark cancellation counterclaim because "allegations

10   that [the trademark applicant] made false statements about [its] date of first use in commerce are

11   not sufficient to state a claim ... for fraud to cancel [Plaintiff's trademark] registration").

12   Thus, Defendants effectively conceded that the Cancellation Arguments fail to establish a

13   legally plausible claim or defense.  Given this concession, the Court finds that amendment would

14   be futile.  *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (The Court

15   "may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with

16   the challenged pleading could not possibly cure the deficiency.").  Accordingly, the Court

17   **GRANTS** the Motion as to the Cancellation Arguments and **DISMISSES** these claims with

18   prejudice.

19   **C. Abandonment Arguments**

20   Under the Lanham Act, a mark can only be deemed "abandoned" when either of the

21   following occurs: "(1) When its use has been discontinued with intent not to resume such use," or

22   "(2) When any course of conduct of the owner, including acts of omission as well as commission,

23   causes the mark to become the generic name for the goods or services on or in connection with

24   which it is used or otherwise to lose its significance as a mark." 15 U.S.C. § 1127.  Both of

25   Defendants' arguments fall under the second definition of abandonment.

26   In their counterclaims and identical affirmative defense, Defendants argue that Neo4j USA

27   abandoned the Neo4j mark by (1) creating "confusion" by using it as both a company name and

28   Case No.: 5:18-cv-07182-EJD

United States District Court
Northern District of California

1   the name of multiple software products; and (2) distributing Neo4j-branded software via an open

2   source license, which allegedly amounts to naked licensing.

3                                  **i.  Confusion**

4        Defendant first alleges that the use of the mark "Neo4j" as both a trade name and the name

5   of multiple software products is confusing.  Specifically, the allegations stated in the Amended

6   Counterclaim are that "there is confusion whether Neo4j is a company name trademark or product

7   name trademark" and that "[Plaintiffs] use Neo4j name as part of the company name and call the

8   open source software product Neo4j too."  Am. Counterclaim, ¶ 85; *see also* Suhy Counterclaim, ¶

9   9; Answer, 19:13-21.

10       Plaintiff argues that these allegations are insufficient to state a claim or defense of

11  abandonment because there are no allegations suggesting that the use of "Neo4j" as both a

12  company name and product name has caused the mark to become generic or otherwise lose its

13  trade significance.  In fact, Plaintiff avers that the use of the mark as both a company name and

14  product name "demonstrates its strength and significance because the mark is functioning as its

15  intended purpose as an indicator of origin."  Motion, p. 13.

16       The Court agrees with Plaintiff that the use of a mark in both a company name and product

17  name, without more, is not sufficient to show that the mark has been abandoned.  Indeed,

18  companies often share a name with their products without causing any confusion to the public or

19  reducing the significance of the mark.  *See Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531,

20  1534 (9th Cir. 1989) ("Trade names often function as trademarks or service marks as well.");

21  *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 846 F. Supp. 2d 1063, 1074 (N.D. Cal. 2012)

22  (finding that trademark was still protected where plaintiff SunEarth "used SunEarth as both a trade

23  name, referring to the company, and a trademark, referring to particular products"); *Stork Rest. v.*

24  *Sahati*, 166 F.2d 348, 353 (9th Cir.1948) ("A corporate name or trade name identifies a

25  corporation; it also identifies its business and the goods or services which it sells or renders");

26  *Standard Oil Co. of N. M. v. Standard Oil Co. of Cal.*, 56 F.2d 973, 979 (10th Cir. 1932) (same).

27       Defendants do not address this case law in their Opposition, nor do they provide any

28  Case No.: 5:18-cv-07182-EJD
    ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
                                         9

*United States District Court*
*Northern District of California*

1    factual allegations in their pleadings demonstrating that Plaintiff's use of the Neo4j mark in its

2    company name and product name has caused confusion.  Even accepting the allegations of

3    confusion in the pleadings as true, Defendant does not allege that this confusion has caused the

4    mark "to become the generic name" for goods of the same type or "to lose its significance as a

5    mark" such that the mark could be found to be abandoned.  15 U.S.C. § 1127.

6          Defendants' allegation that the "Neo4j" mark is used in the company names of both Neo4j,

7    Inc. as well as Neo4j Sweden is insufficient to establish abandonment for the same reasons.

8    Plaintiff alleges that Neo4j Sweden is a wholly owned subsidiary of Neo4j USA.  SAC ¶ 4.  The

9    Lanham Act expressly recognizes that a registered mark "may be used legitimately by related

10   companies, such use shall inure to the benefit of the registrant . . . and such use shall not affect the

11   validity of such mark or of its registration." 15 U.S.C. § 1055; see also 15 U.S.C. § 1127 ("The

12   term 'related company' means any person whose use of a mark is controlled by the owner of the

13   mark with respect to the nature and quality of the goods or services on or in connection with

14   which the mark is used.").

15         Defendants, however, denied the allegation that the companies are related in their Answer,

16   asserting a lack of knowledge sufficient to form a belief.  Answer, ¶ 4.  Defendants do not assert

17   any allegations as to the relationship of Neo4j USA and Neo4j Sweden in their pleadings.  Even

18   making all inferences in favor of Defendants and assuming that the companies are not related, the

19   allegation that both companies use "Neo4j" in their name is still insufficient to show that the mark

20   has been abandoned.  The use of the mark in two companies' names, without more, does not

21   demonstrate that the mark has "become the generic name" for goods of the same type or has

22   "los[t] its significance as a mark" such that the mark could be found to be abandoned.  15 U.S.C. §

23   1127.  Thus, Defendants' argument that Plaintiff used the mark in multiple company names and

24   product names fails to support a claim or defense that the mark has been abandoned.

25                    **ii.  Naked Licensing**

26         Defendants next argue that the "Neo4j" mark has been abandoned under the "naked

27   licensing" doctrine because Plaintiff failed to control the quality of products using the trademark.

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
                                    10

United States District Court
Northern District of California

1    It is well-established that "[u]ncontrolled or 'naked' licensing may result in the trademark

2    ceasing to function as a symbol of quality and controlled source." *Barcamerica Int'l USA Trust v.*

3    *Tyfield Importers, Inc.*, 289 F.3d 589, 595-96 (9th Cir. 2002) (citing *Moore Bus. Forms, Inc. v.*

4    *Ryu,* 960 F.2d 486, 489 (5th Cir.1992)).  "Consequently, where the licensor fails to exercise

5    adequate quality control over the licensee, a court may find that the trademark owner has

6    abandoned the trademark, in which case the owner would be estopped from asserting rights to the

7    trademark." *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 516 (9th Cir. 2010)

8    (quoting *Barcamerica*, 289 F.3d at 596).  "[T]he naked licensing claim is fundamentally a claim

9    that the trademark is no longer valid and enforceable because of the licensor's neglect in policing

10   its use." *Monster, Inc. v. Dolby Labs. Licensing Corp.*, 920 F. Supp. 2d 1066, 1076 (N.D. Cal.

11   2013).  Because the theory is essentially that a party forfeited trademark rights, "the Ninth Circuit

12   has described the standard required of the trademark challenger as 'stringent.'" *Id.* (quoting

13   *FreecycleSunnyvale*, 626 F.3d at 514) (citing *Barcamerica*, 289 F.3d at 596).

14   Defendants argue that the distribution of Neo4j branded software on an open source basis,

15   subject to the GPL and AGPL, amounts to naked licensing.  Specifically, Defendants allege that

16   because "the Neo4j trademark is used and licensed as open source software there is no ability to

17   maintain quality control over the software product called Neo4j as any licensees may modify

18   combine the software with other code and distribute[] or convey Neo4j without required quality

19   control by Neo4J USA."  Am. Counterclaim, ¶ 85; *see also* Suhy Counterclaim, ¶ 9; Answer at

20   19:21-25.

21   Plaintiff argues that distribution of Neo4j software on an open source basis does not

22   establish abandonment because its use of the GPL and AGPL demonstrates an effort to control the

23   quality of the mark rather than evidence an abandonment of it.  Motion, p. 15.  Under the terms of

24   the GPL, a licensee may "convey a work based on the Program, or the modifications to produce it

25   from the Program, in the form of source code under the terms of section 4, provided that . . . [t]he

26   work must carry prominent notices stating that [the licensee] modified it, and giving a relevant

27   date."  GPL § 5(a).  The AGPL similarly provides that a licensee "may convey a work based on

28   Case No.: 5:18-cv-07182-EJD

*(left margin, rotated)* United States District Court
Northern District of California

ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
11

the Program, or the modifications to produce it from the Program, in the form of source code

under the terms of section 4, provided that . . . [t]he work must carry prominent notices stating that

the licensee modified it, and giving a relevant date."  AGPL § 5(a).  Plaintiff argues that these

provisions expressly require licensees to identify any and all modifications they make to the

software to ensure that such modifications are not attributed to the Neo4j mark.  Because users are

required to provide prominent notice of their modifications, Plaintiff argues that the GPL and

AGPL are not trademark licenses at all, and that it is still able to control the quality of software

bearing the Neo4j mark.  *See* GPL § 7(e) (authorizing users to *supplement* to terms of the GPL

with terms "declining to grant rights under trademark law for . . . trademarks" indicating that the

GPL does not otherwise cover trademark rights).

In support of this argument, Plaintiff cites *Planetary Motion, Inc. v. Techsplosion, Inc.*,

261 F.3d 1188, 1198 (11th Cir. 2001).  In *Planetary Motion*, the Eleventh Circuit considered

whether the plaintiff's distribution of his software on a public site pursuant to the GPL constituted

"use in commerce" sufficient to create ownership rights in the mark.  *Id.* at 1196.  The Court held:

> "That the Software had been distributed pursuant to a GNU General Public
>
> License does not defeat trademark ownership, nor does this in any way
>
> compel a finding that [plaintiff] abandoned his rights in trademark.
>
> Appellants misconstrue the function of a GNU General Public License.
>
> Software distributed pursuant to such a license is not necessarily ceded to
>
> the public domain and the licensor purports to retain ownership rights,
>
> which may or may not include rights to a mark."

*Id.* at 1198.  In a footnote, the Court explained that "[b]ecause a GNU General Public License

requires licensees who wish to copy, distribute, or modify the software to include a copyright

notice, the license itself is evidence of [plaintiff's] efforts to control the use of the . . . mark in

connection with the Software."  *Ibid.*

Defendants argue that *Planetary Motion* is distinguishable here because "[c]ontrol of

ownership of a trademark to support a use in commerce position is not equivalent to requiring

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
12

1    quality control under a naked license analysis."  Opposition, p. 7.  While it is true that ownership

2    analysis in *Planetary Motion* differs from the abandonment analysis here, Defendants fail to show

3    why the level of control exerted under the GPL is not also sufficient to overcome a claim of

4    abandonment.  Instead, Defendants argue that Neo4j USA is unable to control the quality of

5    products using the mark because neither the GPL nor AGLP contain specific trademark quality

6    control provisions.  In support of this contention, Defendants cite *FreecycleSunnyvale v. Freecycle*

7    *Network*, 626 F.3d 509 (9th Cir. 2010).  In *Freecycle*, the Court considered whether the defendant

8    had established adequate control standards over its licensees' use of the trademark to avoid a

9    finding of naked licensing and abandonment where the defendant allowed others to use the

10   trademark without a formal license agreement.  *Id.*  The Court noted that the absence of an

11   agreement with quality control provisions supports a finding of naked licensing, but also

12   acknowledged that "[t]he lack of an express contract right . . . is not conclusive evidence of lack of

13   control."  *Id.* at 516 (citing *Barcamerica,* 289 F.3d at 596).  The court found in that case that the

14   defendant did not exercise "actual control" over licensees' use of the trademark.  *Id.* at 518.

15         Defendants do not raise any allegations indicating that Plaintiff has failed to exercise actual

16   control over licensees' use of the trademark.  Thus, the Court finds that the absence of specific

17   quality control provisions—either in the GPL, AGPL, or in a separate trademark license—is not

18   dispositive here.  *See Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1098 (9th Cir.

19   2013) ("[e]ven absent formal quality control provisions, a trademark owner does not abandon its

20   trademark where the particular circumstances of the licensing arrangement suggests that the public

21   will not be deceived") (internal quotes and citation omitted).  Moreover, this Court is persuaded by

22   the reasoning in *Planetary Motion* that the notice requirements in the GPL and AGPL evidence an

23   effort to control the use of the mark.

24         Thus, the fact that Plaintiff distributed Neo4j software on an open source basis pursuant to

25   the GPL and AGPL is not, without more, sufficient to establish a naked license or demonstrate

26   abandonment.  However, "[t]he court should freely give leave when justice so requires."  Fed. R.

27   Civ. P. 15(a)(2).  To the extent that Defendants are able to allege that Plaintiff failed to exercise

28   Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
13

actual control over licensees' use of the trademark, such allegations may be sufficient to state a claim of abandonment under *Freecycle*. Because amending the complaint to add allegations regarding Plaintiff's lack of actual control over use of the trademark would not be futile, cause undue delay, or unduly prejudice Plaintiff, the Court grants leave to amend. *Leadsinger, Inc. v. Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). The Court **GRANTS** Neo4j USA's Motion and **DISMISSES** the Abandonment Arguments with leave to amend.

### IV.   Conclusion

For the reasons stated above, the Court **GRANTS** Neo4j USA's Motion in full. The First Cause of Action in the Suhy Counterclaim, the Eleventh Cause of Action in the Amended Counterclaim, and the Seventh Affirmative Defense in the Answer are **DISMISSED with prejudice**. The Second Cause of Action in the Suhy Counterclaim, the Tenth Cause of Action in the Amended Counterclaim and the Ninth Affirmative Defense in the Answer are **DISMISSED with leave to amend**.

If Defendants wish to file an amended counterclaim for the sole purpose of adding allegations to support an abandonment argument as described above, they may do so on a consolidated basis by no later than June 5, 2020.

**IT IS SO ORDERED.**

Dated:  May 21, 2020

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
14

United States District Court
Northern District of California