No. 24-5538
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

NEO4J, INC., NEO4J SWEDEN AB,

*Plaintiffs-Appellees*,

v.

JOHN MARK SUHY,

*Defendant-Appellant.*

On Appeal from the United States District Court
For the Northern District of California
No. 5:18-cv-07182-EJD
Hon. Edward J. Davila

_____

### APPELLEES' EXCERPTS OF RECORD
### Volume 8 of 18

_____

John V. Picone III (State Bar No. 187226)
jpicone@spencerfane.com
Jeffrey M. Ratinoff (State Bar No. 197241)
jratinoff@spencerfane.com
Jeremy A. Moseley (MT Bar No. 44830177)
jmoseley@spencerfane.com

*Attorneys for Appellees*
Neo4j, Inc. and Neo4j Sweden AB

# EXHIBIT 5

No. 21-16029

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Neo4J, Inc., Neo4j Sweden AB,

*Plaintiffs-Appellees,*

v.

PureThink, LLC, iGov, Inc., John Mark Suhy,

*Defendants-Appellants.*

On Appeal from the United States District Court
For the Northern District of California
No. 5:18-cv-07182-EJD
Hon. Edward J. Davila

APPELLEES' ANSWERING BRIEF

Allonn E. Levy (State Bar No. 187251)
appeals@hopkinscarley.com
John V. Picone III (State Bar No. 187226)
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff (State Bar No. 197241)
jratinoff@hopkinscarley.com
HOPKINS & CARLEY, ALC
70 S First Street
San Jose, CA  95113-2406
Telephone:   (408) 286-9800

*Attorneys for Appellees*
Neo4j, Inc. and Neo4j Sweden AB

SER_1834

# DISCLOSURE STATEMENT

Pursuant to FRAP 26.1, the undersigned, counsel of record for Neo4j, Inc. ("Neo4j") certifies that Neo4j, Inc., as of this date, does not have a parent corporation and that no publicly held corporation holds 10% or more of its stock

The undersigned, counsel of record for Neo4j Sweden AB ("Neo4j Sweden") certifies that Neo4j, Inc., as of this date, is the parent corporation of Neo4j Sweden and that no publicly held corporation holds 10% or more of Neo4j Sweden's stock.

Date: October 28, 2021

HOPKINS & CARLEY
A Law Corporation

*/s/ Allonn E. Levy*

Allonn E. Levy, Esq.

*Attorneys for Appellee*
Neo4j, Inc. and Neo4j Sweden AB

-i-

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not believe oral argument would aid in the Court's decisional process and therefore does not request oral argument.  However, if the Court finds oral argument would be beneficial, Appellees would be honored to attend and present argument.

Date:  October 28, 2021

HOPKINS & CARLEY
A Law Corporation

*/s/ Allonn E. Levy*

Allonn E. Levy, Esq.

*Attorneys for Appellee*
Neo4j, Inc. and Neo4j Sweden AB

-ii-

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT .................................................................. i

STATEMENT REGARDING ORAL ARGUMENT ........................... ii

TABLE OF CONTENTS ...................................................................... iii

TABLE OF AUTHORITIES ................................................................ vi

I.      INTRODUCTION ...................................................................... 1

II.     JURISDICTIONAL STATEMENT .......................................... 1

III.    STATUTORY AUTHORITIES .................................................. 1

IV.     STATEMENT OF THE CASE .................................................. 2

        A.     Procedural Facts ............................................................ 2

        B.     Substantive Undisputed Facts ...................................... 2

               1.     Identification of Relevant Entities and Individuals ................. 2

               2.     Evolution of Neo4j-Branded Software and Appellants' Pirated Versions Thereof ............................................ 4

               3.     Appellees Registered the NEO4J Mark .................................... 8

               4.     It is Undisputed that Appellants Use Appellees' Source-Identifying NEO4J Mark to Market their Inferior Software ................................ 8

               5.     Appellants Falsely Advertise That ONgDB Replaces Neo4j® EE And Is Free and Open Source .............................. 12

               6.     Appellants Appeal the Interim Order Based Upon The Ordered Injunctive Relief ................................. 13

V.      SUMMARY OF THE ARGUMENT ........................................ 14

VI.     STANDARD OF REVIEW ...................................................... 16

VII.    ARGUMENT ............................................................................ 17

        A.     Appellants Demonstrate No Error in the Trial Court's Finding That Neo4j USA had Standing to Assert its Lanham Act Claims ..... 17

               1.     Standing Exists Under §1114(1) of the Lanham Act Based Upon the Unchallenged Finding That Neo4j USA is the Owner of the Registration for the NEO4J Mark ........... 18

**TABLE OF CONTENTS**
**(continued)**

Page

2.   Standing Exists Under §1125(a) of the Lanham Act Based Upon the Unchallenged Finding That Neo4J is a "Nonowner With a Cognizable Interest" in the Mark .............19

3.   The Related Companies Doctrine is Irrelevant to Appellant's Standing Challenge ...............................................20

    a.   Had Appellants Properly Raised the Issue of Ownership, They Nevertheless Fail to Assign Error to the Legal Framework Used by the Trial Court .....................................................................................21

    b.   Appellants' Sole Evidentiary Challenge – The Neo4J License – Fails to Overcome the Presumption of Validity..................................................23

B.   Appellants Demonstrate No Error In the Trial Court's Conclusion That Appellants Failed to Defeat Neo4j USA's Infringement Claim Through Nominative Fair Use...........................27

1.   The Unchallenged Threshold Finding that Appellants Did Not Use the NEO4J Mark to Identify Appellees' Products is Dispositive...........................................................29

    a.   Appellants' Promotion of iGov "Neo4j Enterprise" and iGov "Government Package for Neo4j" Described Appellants' Products ....................................30

    b.   Appellants Other Uses of the NEO4J Mark on iGov's Website Similarly Did Not Describe Appellee's Products.......................................................34

2.   Appellants Fail to Establish Any Error in the Trial Court's Analysis under the Three-Prong New Kids Test ........36

    a.   Appellants Fail to Challenge the Trial Court's Finding that Appellants Used the NEO4J Mark More Than Was Reasonably Necessary........................36

SER_1838

## TABLE OF CONTENTS
### (continued)

<div align="right">Page</div>

b.    The Trial Court's Finding that Appellants Used the NEO4J Mark to Suggest Endorsement of "Neo4j Enterprise" is Supported by Undisputed Record Evidence ................................................................37

    (1)    Endorsement of iGov's "Neo4j Enterprise"........39

    (2)    Endorsement of ONgDB .....................................43

C.    The Trial Court's Finding of False Advertising in Appellants' Promotion of ONgDB Was Supported by Undisputed Record Evidence .............................................................................47

    1.    Appellants' Assertions that ONgDB was "Free and Open-Source" Neo4j EE Were False....................................48

    2.    Appellants' Assertions that ONgDB was a "Drop-In" Replacement for Neo4j EE Were False or Misleading............54

D.    Appellants Demonstrate No Error in the Trial Court's Finding of Consumer Confusion in Granting Summary Judgment on False Designation of Origin ..............................................................59

VIII.  CONCLUSION......................................................................................63

CERTIFICATE OF COMPLIANCE FOR BRIEFS

CERTIFICATE OF SERVICE

ADDENDUM

SER_1839

### C. The Trial Court's Finding of False Advertising in Appellants' Promotion of ONgDB Was Supported by Undisputed Record Evidence

A false advertising claim under § 1125(a) requires proof that (1) defendant made a false statement of fact in a commercial advertisement about its own or another's product; (2) the statement actually deceives or has the tendency to deceive a substantial segment of its audience; (3) the deception is material; (4) defendant caused the false statement to enter interstate commerce, and (5) plaintiff has been or is likely to be injured as a result of the false statement. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Proof establishing this claim will also establish a violation of the UCL. *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994) (UCL claims are "substantially congruent to claims made under the Lanham Act").

The trial court found Appellants engaged in false advertising in the promotion of ONgDB by making: "(1) statements that ONgDB and Neo4j Enterprise are 'free and open source' versions of or alternatives to commercially licensed Neo4j EE; and (2) statements that ONgDB is a 'drop-in replacement for an existing commercial licensed distribution of the same version number' of Neo4j EE." 1-SER-26–32 (24:1-30:13). Appellants only assign error to its finding that such statements were false. AOB, pp.34-43.

Appellants first argue that trial court ignored ONgDB was GFI's product,

-47-

and Appellants were merely offering a support package for it.  AOB, p.34.  As

detailed in Sect. VII.B.2. *et seq*., Appellants offered ONgDB via their website with

that package.  More importantly, § 1125(a) expressly states that liability attaches

where a false statement is made "about its own **or another's product**."  *Southland*

*Sod Farms*, 108 F.3d at 1139 (emphasis).  Thus, it is irrelevant that ONgDB

originated from GFI before Appellants marketed and offered it.

Next, Appellants argue the trial court's findings were primarily based on

misstatements made on GFI's website.  AOB, p.35.  Separately from the implied

concession that some misstatements *were* present on Appellant's site, the statement

contradicts the record, which shows iGov's website was replete with express

misstatements of ONgDB being a "drop in" replacement for Neo4j EE.  3-SER-

368–455 (green highlights); 1-SER-26 (24:1-6); 1-SER-29–30 (27:6-28:11)

(falsely stating ONgDB had same features as Neo4j® EE) (citing 2-ER-266–274,

2-SER-147–148, 2-SER-323–329, 2-SER-331–334, 3-SER-368–372, 3-SER-422–

427). Suhy also published numerous Tweets making similar statements. 3-SER-

486–495, 3-SER-497–501 (yellow highlights); 5-ER-1099–1100.  These

misstatements are analyzed below.

### 1.    Appellants' Assertions that ONgDB was "Free and Open-Source" Neo4j EE Were False

The trial court found that Appellants' representations regarding ONgDB as

"'free and open source' versions of Neo4j EE" were false because the plain

language of the Neo4j Sweden Software License did not permit them to remove the

Commons Clause. 1-SER-26–27 (24:7-25:19).  Appellants conceded that the

falsity of their "'free and open source' versions" statements hinged on the

interpretation of Section 7 of that license agreement.  *Id.* at 24:11-15.  They repeat

that concession here.  AOB, p.37-38.

     Seeking to establish error, Appellants first argue that specific clauses in

Sections 7 and 10 allowed them as licensees to remove "further restrictions" added

by Neo4j Sweden.  AOB, pp.37-38.  This runs contrary to the express terms of the

license, which must be interpreted as a whole to "so as to give effect to every part

... each clause helping to interpret the other."  Cal. Civ. Code § 164; *Wapato*

*Heritage, L.L.C. v. United States*, 637 F.3d 1033, 1039 (9th Cir. 2011).

     Appellants isolate a clause within Section 10 that "***You*** may not impose any

further restrictions on the exercise of the rights granted or affirmed under this

License" and argue that this means that the licensor cannot add restrictions.  AOB,

pp.37-38.  This ignores that the Neo4j Sweden Software License (and the AGPL)

expressly defines "you" as ***the licensee***. 6-ER-1408 at §0 ("'The Program' refers to

any copyrighted work under this License.  Each licensee is addressed as 'you'").

Thus, Section 10 prohibits ***a licensee*** from imposing further restrictions, but does

not prohibit Neo4j Sweden ***as the licensor*** of the Program from doing so. 6-ER-

1413 at §10.

-49-

Appellants' assertion that Section 7 explicitly grants a licensee permission to remove further restrictions added by Neo4j Sweden as the licensor and copyright holder fares no better.[19] AOB, pp.37-38. In making that claim, they cite to the clause "If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term." *Id*. This clause also cannot be read in isolation. Rather, it must be put in context within the surrounding clauses Section 7:

> Notwithstanding any other provision of this License, for material **you** add to a covered work, **you** may (if authorized by the copyright holders of that material) supplement the terms of this License with [the following six additional] terms ….
>
> \* \* \*
>
> All other non-permissive additional terms are considered "**further restrictions**" within the meaning of section 10. If the Program as **you** received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a **further restriction**, **you** may remove that term.

6-ER-1411–1412 at §7 (emphasis added).

---

[19] Appellants also assert that Neo4j USA is improperly seeking to enforce Neo4j Sweden's copyright. AOB, pp.39-40. Not so. The interpretation of the terms of the Neo4j Sweden Software License are merely necessary to determine the falsity of the advertisements based thereon – another point Appellant conceded below. 1-SER-26 (24:10-15 [parties agree issue turns on the interpretation of Section 7 of the license]).

When read in full, Section 7 clearly governs the actions of licensees alone, ergo the repeated use of the defined term "you," and thus pertains to what additional restrictions licensees may place on a covered work when adding source code and redistributing it as required by the license. Indeed, the sentence relied upon by Appellants is immediately proceeded by a sentence stating that a licensee who adds material to the original work may add any of the six enumerated "additional restrictions" and that any other "nonpermissive additional terms" are "further restrictions" *as defined by Section 10*. As noted above, Section 10 makes clear that only licensees are precluded from adding further restrictions. Thus, reading these provisions together, Section 7 only permits a *downstream licensee* to remove "further restrictions" placed by an *upstream licensee* that has added to the original work, which do not fall within the six enumerated additional terms.

Appellants' contrary read also contradicts Neo4j Sweden's expressed intent of precluding others from commercially benefiting from its software. 6-ER-1370 (¶11); 6-ER-1415 ("the grant of rights under the License will not include, and the License does not grant to you, the right to Sell the Software"); *see also* 6-ER-1370–1371 (¶12 ["Plaintiffs made the decision to modify the license terms used to distribute Neo4j® EE to prevent third parties from monetizing its software while not contributing back to the software or companies who are producers of the software"]). A licensor's intent to limit the commercialization of its software

should be given effect as intended by the *licensor*, not the licensee. *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090-91 (9th Cir. 2005) (interpreting terms to effectuate licensor's intent to prevent competitors from benefitting from its software); *see also Micro Star v. Formgen Inc.*, 154 F.3d 1107 (9th Cir. 1998); *Storm Impact, Inc. v. Software of the Month Club*, 44 U.S.P.Q.2d 1441, 1997 WL 566378 (N.D. Ill. 1997) (distribution for commercial purposes infringes where license terms limit use to non-commercial purposes).

Appellants' strained reading is also illogical. It would nullify Neo4j Sweden's exclusive right, as copyright holder, to license Neo4j® EE under the terms of its choosing. *See Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008) ("[c]opyright holders who engage in open source licensing have the right to control the modification and distribution of copyrighted material"); 1-SER-26–27 (24:16-25:19) (citing same); *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011) (copyright owners may condition use). Thus, just as the trial court previously held (*Neo4j, Inc. v. Graph Found., Inc.,* No. 5:19-CV-06226-EJD, 2020 WL 6700480, at *4 (N.D. Cal. Nov. 13, 2020)), it again correctly held that nothing in the license prohibited Neo4j Sweden from adding the Commons Clause, nor authorized Appellants to remove it. 1-SER-26–27 (24:7-25:12).

Appellants further suggest that the trial court's reasoning was "flawed" because Neo4j Sweden violated the terms of the Free Software Foundation's

("FSF") copyright in the form AGPL license.  AOB, pp.38-39. In doing so, Appellants argue "you" means Neo4j Sweden.  This is not supported by the plain text, which clearly delineates that the license governs the rights of copyright holder of "the Program," and not copyright holder of the underlying form.  6-ER-1408 at §0 (Definitions), §2 (Basic Permissions).  Even ignoring the inconsistencies Appellants create with the defined term "you," they lack standing to enforce FSF's copyright – and copyright enforcement in the form is not relevant to interpretation and enforcement of Neo4j Sweden's license.  *See Minden Pictures, Inc. v. John Wiley & Sons, Inc*., 795 F.3d 997 (9th Cir. 2015) (only the copyright owner, assignee or an exclusive licensee of a right enumerated by §106 has standing to bring an infringement action); *see also* 2-SER-282 (FSF confirmed "[o]nly the copyright holder has the power to enforce the terms of the license"); 10-ER-2317–2319 (189:1-191:3) (Suhy admits that Neo4j Sweden is the copyright owner of Neo4j® EE).

Finally, Appellants argue its representations to the public were not misleading because iGov's website stated that ONgDB is a free fork of Neo4j® EE.  AOB, p.36.  Not only is this argument impermissibly raised for the first time here (7-ER-1539–1580, 7-ER-2149–2158), but it also contradicts the record.

-53-

Appellants did not develop ONgDB as an independent fork[20] from properly

licensed open source Neo4j® EE in compliance with the terms analyzed above.

Rather, Appellants simply **stripped the restrictions** they did not wish to follow and

used the code to create ONgDB in violation thereof.  1-SER-8–9 (6:2-7:6); 10-ER-

2265–2323 (28:25-29:11, 171:23-172:23, 187:12-188:5, 199:22-200:20); 2-SER-

185–188 (87:24-90:9); 2-SER-199 (159:3-10); 2-SER-153–155; 4-ER-856–858; 3-

SER-575 (19:9-25); 6-ER-1374–1375 (¶¶27-30).

In sum, Appellants misguided interpretation of the Neo4j Sweden Software

License does not withstand scrutiny.  The trial court was correct in concluding that

Appellants' representations that ONgDB was a "'free and open source' versions of

Neo4j EE" were false.

### 2. Appellants' Assertions that ONgDB was a "Drop-In" Replacement for Neo4j EE Were False or Misleading

To demonstrate falsity under the Lanham Act, "a plaintiff may show that the

statement was literally false, either on its face or by necessary implication, or that

the statement was literally true but likely to mislead or confuse consumers."

*Southland Sod Farms*, 108 F.3d at 1139.  The trial court found the undisputed

---

[20] "In software development, a fork is a new application developed from an existing one. When an application is "forked," it creates a new, separate program, rather than a new development branch." https://techterms.com/definition/fork

-54-

# VIII.

## CONCLUSION

The trial court correctly concluded that Appellants' unauthorized use of Appellee's Mark to promote their own products was a trademark violation. Their false and misleading representations, made to promote Appellants' products, created likely confusion, actual confusion, and suggested a false origin for Appellants' products. These conclusions were amply supported by undisputed evidence and no reasonable jury would have ruled otherwise. This Court should, therefore, affirm.

Respectfully submitted,


Dated: October 28, 2021                    /s/ Allonn E. Levy
                                           Allonn E. Levy (CA Bar No. 187251)
                                           HOPKINS & CARLEY
                                           70 S. First Street
                                           San Jose, CA 95113
                                           Telephone:  (408) 286-9800
                                           Facsimile:   (408) 998-4790
                                           appeals@hopkinscarley.com

                                           *Attorneys for Appellees*
                                           Neo4j, Inc. and Neo4j Sweden AB

-63-

### CERTIFICATE OF COMPLIANCE FOR BRIEFS

I hereby certify that this motion complies with the type-volume limitations of FED. R. APP. P. 27(d)(2)(A) because this motion contains 13,948 words, excluding the parts of the motion exempted by FED. R. APP. P. 32(f).

This motion complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this motion has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

Date: October 28, 2021

HOPKINS & CARLEY
A Law Corporation

*/s/ Allonn E. Levy*
_____
Allonn E. Levy, Esq.

*Attorneys for Appellee*
Neo4j, Inc. and Neo4j Sweden AB

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 28, 2021. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: October 28, 2021

HOPKINS & CARLEY
A Law Corporation

*/s/ Allonn E. Levy*
_____
Allonn E. Levy, Esq.

*Attorneys for Appellee*
Neo4j, Inc. and Neo4j Sweden AB

SER_1850

# EXHIBIT 6

SER_1851

No. 21-16029

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**NEO4J, INC., et al.,**

*Plaintiff and Appellee,*

**v.**

**PURETHINK, LLC, et al.,**

*Defendant and Appellant.*

---

Appeal From a Judgment of the United States District Court
For the Northern District of California
Hon. Edward J. Davila
United States District Judge
N. D. Cal. No. 5:18-cv-07182 EJD

---

**APPELLANTS' REPLY BRIEF**

---

ADRON W. BEENE, CA Bar # 129040
ADRON G. BEENE, CA Bar # 298088
1754 Technology Drive, Ste. 228
San Jose, CA 95110
Tel.: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Joseph A. Hearst, CA Bar # 130286
1569 Solano Ave. #525
Berkeley, CA 94707
Telephone: (510) 528-6863
Facsimile: (510) 280-2556
jahearst@pacbell.net

Attorneys for defendants, cross-
complainants and appellants John Mark
Suhy, PureThink, LLC and iGov, Inc.

# TABLE OF CONTENTS

I.       INTRODUCTION.........................................................................................1

II.      ARGUMENT ...............................................................................................2

    A.   NEO4J USA IS NOT THE OWNER OF THE NEO4J MARK AND
        THUS IS NOT ENTITLED TO SUE UNDER 15 U.S.C. § 1114.............2

    B.   USES OF THE NEO4J NAME BY IGOV WERE NOMINATIVE FAIR
        USE....................................................................................................6

    C.   THE TRIAL COURT'S FINDING THAT DEFENDANTS HAD
        ENGAGED IN FALSE ADVERTISING OVERLOOKED FACTUAL
        DISPUTES. ........................................................................................14

    D.   THE COURT ERRED IN FINDING A LIKELIHOOD OF CONSUMER
        CONFUSION. ......................................................................................19

III.     CONCLUSION ..........................................................................................21

ii

'ONgDB Enterprise' and 'Neo4j Enterprise' on its website."  Appellees' Br., 45.
The pages on the website which Neo4j USA cites for this claim include statements
that ONgDB and Neo4j Enterprise were "free and open-source" versions of the
Neo4j graph databases.  *See* 3-SER 269.  The website is replete with statements
that ONgDB and Neo4j Enterprise are free and open-source, in contrast with the
Neo4j commercially licensed versions.  In fact, the pages to which Neo4j refers are
intended to let customers "know your options" and discusses the "3 main Neo4j
offerings available including the free open-source option." *See e.g.*, 3 SER 270-72,
274.

The claim that the content on web pages intended to show why customers
should choose ONgDB or Neo4j Enterprise *instead of* the commercial builds of
Neo4j "impermissibly suggested affiliation with and endorsement by Appellees"
(Appellees' Br., 46) is thus far-fetched.  The issue of whether the website
suggested endorsement is one that a jury should make.

### C.   The Trial Court's Finding That Defendants Had Engaged In False Advertising Overlooked Factual Disputes.

In the opening brief, defendants argued that the court wrongly determined
that defendants had engaged in false advertising when they asserted that ONgDB
was a "free and open-source" version of Neo4j.  Defendants also attacked the
court's contention that defendants' description of OngDB as a "drop in"

14

replacement for Neo4j commercial versions was false advertising. Plaintiffs' responses to these arguments do not withstand analysis.

### 1. Defendants Were Permitted—Indeed, Obligated—To Remove The "Commons Clause."

Neo4j USA argues that ONgDB is not a "free and open-source" version of Neo4j EE because GFI was not permitted to remove the "Commons Clause" Neo4j Sweden added to the Affero General Public License ("AGPL") that governed versions of Neo4j EE prior to version 3.5. Appellees' Br., 48-52. Neo4j USA asserts that the AGPL license "must be interpreted as a whole … 'so as to give effect to every part … each clause helping to interpret the other.'" Appellees' Br., 49, *quoting* Cal. Civ. Code § 164. Then Neo4j USA simply parrots the trial court's statement that Neo4j Sweden was permitted to impose the Commons Clause because it was a "licensor," while the prohibition against removal or addition of any terms refers only to a "licensee."

Neo4j USA itself fails to discuss the entire contract, including in particular the clause at the beginning stating that the Free Software Foundation is the holder of the copyright, and that "[e]veryone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed." 6-ER-1408. Neo4j USA is thus a licensee, because it is not a copyright holder. Indeed, Neo4j USA implicitly concedes this when it claims that "Section 7 [of the AGPL] only permits a ***downstream licensee*** to remove 'further restrictions' placed by an

15

*upstream licensee.*" Appellees' Br., 51. Neo4j USA is an upstream licensee, not an original licensor.

Moreover, Neo4j USA largely ignores that only Neo4j Sweden is the upstream licensee and has standing to complain about the removal of the Commons Clause, referring to the argument only in a footnote. Appellees' Br., 50, fn. 19. The issue is not simply that the interpretation of the terms of the Neo4j Sweden Software License [*i.e.*, the AGPL] is necessary to determine if defendants' advertisements were faulty, as Neo4j USA contends, but rather whether Neo4j USA is entitled to enforce rights that belong to Neo4j Sweden. In the same vein, the claim that defendants "lack standing to enforce FSF's copyright" (Appellees' Br., 53) is unavailing. Defendants are not attempting to enforce FSF's copyright— they are instead contending that the AGPL gave them permission to remove restrictive license terms not included in the AGPL.

Plaintiffs contend that reading the license in the manner defendants have suggested would "nullify Neo4j Sweden's exclusive right, as copyright holder, to license Neo4j® under the terms of its choosing." Appellees' Br., p. 52. But nothing prevented Neo4j Sweden from licensing using any terms it wished. What it could *not* do, however, was license its software pursuant to the AGPL under terms not permitted by the AGPL. If Neo4j Sweden did not like the AGPL's terms, it was under no obligation to use that license. Mixed in the morass of

16

licensing is a more fundamental issue. Free and open-source software may come with many different open-source license agreement types. There is GPL, AGPL, Apache, MIT, BSD, *etc*. *See* https://opensource.org/licenses/alphabetical. Some licenses are more restrictive and some more permissive. But the type of license does not change the fact the license is "free" and includes "open-source software."

2.      **It Was, At Worst, A Jury Question Whether Describing ONgDB As A "Drop In Replacement" Was Accurate.**

Plaintiffs argue that descriptions of ONgDB as a "drop in replacement" were false or misleading because ONgDB is not a feature-for-feature copy of Neo4j EE 3.5 and later. Plaintiffs argue that there is "no evidence showing that a jury could find consumers did not understand their statements as at least assuring compatibility with Neo4j EE." Appellees' Br., 55. But of course it was plaintiffs' burden to show that no reasonable juror could believe that the statement had the meaning defendants ascribe to it. And plaintiffs do not even acknowledge that the claim that ONgDB does not replicate the features of Neo4j EE 3.5 and later is based solely on the say-so of Neo4j USA's Mr. Rathle, who did no empirical testing to confirm his opinion. *See* 6-ER-1375-76. Yet Neo4j was required to prove falsity with empirical evidence. *Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 679 (5th Cir.1986). There is no evidence in the record to show that data and queries on both versions do not work. Even though

17

and offered a product with "lesser features" (Appellees' Br., 62) has been dealt

with above, but the court should note that defendants carefully explained to

prospective users what features they would and would not get if they opted to

purchase services from iGov. *E.g.*, 2-ER-268-273.

### III.    CONCLUSION

For the foregoing reasons and for the reasons stated in the opening brief this

Court should reverse the preliminary injunction and vacate the summary judgment

on which it is based, with a remand to the district court to set the issues for trial.


Respectfully submitted,

Dated:  December 3, 2021                     _____/s/_____

Joseph A. Hearst

Counsel for Appellants John
Mark Mr. Suhy, PureThink,
LLC and iGov, Inc.

21

# EXHIBIT 7

SER_1859

| | |
|---|---|
| **From:** | John Mark Suhy(jmsuhy@purethink.com) |
| **To:** | donald@fsf.org; craigt@fsf.org; licensing@fsf.org |
| **CC:** | |
| **BCC:** | |
| **Subject:** | Nov 13th 2020 Court opinion on AGPL - may need FSF involvement |
| **Sent:** | 11/17/2020 05:05:53 AM -0800 (PST) |
| **Attachments:** | order-88-case-519cv06226EJD.pdf; |

Good morning,

My name is John Mark Suhy and I wanted to make sure you are aware of a recent court order (November 13th 2020) that may set some disastrous precedent around GPL and AGPL.

Case No. 5:19-cv-06226-EJD

I attached the order I am referencing to this email.   You can also get it on pacer.gov.

In a nutshell, Neo4j Inc licensed their enterprise software under AGPL for quite some time.  In May 2018 they added a "further restriction" called the  "Commons Clause" to the AGPL license file they include in their github repository.

Neo4j marketed their software as open source under AGPL, but in this filing, they admit that the modified AGPL is not open source. However, that is not what is at issue.

In a fork of Neo4j software on Github, the License.txt file with the modified AGPL license was overwritten to be a verbatim copy of the AGPL license, effectively removing the additional restrictions adding the commons clause.   It was assumed that The free software foundation owns the AGPL license copyright not Neo4j, and removal of the additional terms in the AGPL license.txt file seems to be what the AGPL requires.  (Verbatim and removal of additional restrictions).

Neo4j says this removal of the commons clause wording in the AGPL license.txt is a DMCA violation.

The court  agrees with Neo4j in that they can add further restrictions to AGPL and that licensees down the line can not remove the additional restriction as the AGPL clearly states.

This was not argued in court, but done all via paperwork so an amendment is due soon I am assuming.

I am sure that you can see how this may affect GPL and AGPL moving forward.

I think that now is the time for the free software foundation to get involved now that the court's opinion is clear.

I have spoken to the directors of the Graph Foundation and both the foundation and  my company would be willing to donate  legal resources / costs to assist your team with addressing this issue.

Please let me know if you receive this message and if you want to talk further. I'll try reaching out other ways until I hear from you, as I am not sure if the emails I am using are accurate.

You can reach me anytime at 703-862-7780 or via this email.

Respectfully,

John Mark Suhy

John Mark Suhy
PureThink
jmsuhy@purethink.com
703-862-7780
http://purethink.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEO4J, INC.,<br><br>       Plaintiff,<br><br>v.<br><br>GRAPH FOUNDATION, INC.,<br><br>       Defendant. | Case No.  5:19-cv-06226-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 74, 75 |

Plaintiffs Neo4j, Inc. ("Neo4j USA") and Neo4j Sweden AB ("Neo4j Sweden" and together with Neo4j USA "Plaintiffs") recently filed a First Amended Complaint (Dkt. No. 65, "FAC") in this matter against Graph Foundation, Inc. ("GFI"), GraphGrid, Inc. ("GraphGrid"), and AtomRain Inc. ("ARI" and altogether, "Defendants").  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, GraphGrid and ARI seek to dismiss the fifth and seventh causes of action in the FAC.  Dkt. No. 74 ("GraphGrid/ARI Motion")).  GFI separately seeks to dismiss the fifth, sixth, and seventh causes of action.  Dkt. No. 78 ("GFI Motion").  The Court took the motions under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons below, the Court **GRANTS in part and DENIES in part** both motions.

    **I.**    **Background**

        **A.  Allegations in the FAC**

Neo4j USA is a Delaware corporation with its principal place of business in San Mateo, California, and is a global leader in graph database technology.  Dkt. No. 1, First Amended Complaint ("FAC"), ¶ 2.  The Neo4j graph database platform natively stores and processes the

Case No.: 5:19-cv-06226-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

1

IGOV0002997653.001

United States District Court
Northern District of California

relationship between data points, which "helps organizations make sense of their data by revealing how people, processes and digital systems are interrelated." *Id.* Neo4j Sweden is a wholly owned subsidiary of Neo4j USA and owns all copyrights related to the Neo4j graph database platform, including the source code. *Id.* ¶ 4.

Plaintiffs offer multiple products and services related to the Neo4j graph database platform. They offer a free version of the software, known as the Neo4j Community Edition, on an open source basis. The Community Edition is offered under a copyright license called the GNU General Public License ("GPL") developed by the Free Software Foundation ("FSF") as a form license for open source software. *Id.* ¶ 30. Plaintiffs also offer a more advanced commercial version of the software known as the Neo4j Enterprise Edition ("Neo4j EE"), which includes additional features and Neo4j USA's support services. *Id.* Plaintiffs originally offered the Neo4j EE under both a paid-for commercial license and the free GNU Affero General Public License version 3 ("AGPLv3"), a variant of the GPL also developed by FSF. *Id.* ¶ 31.

In May 2018, Plaintiffs released an updated version of Neo4j EE, version 3.4, which they continued to offer under a proprietary commercial license. However, Neo4j Sweden replaced the AGPLv3 with a stricter license ("Neo4j Sweden Software License"), which included the terms of the AGPLv3 with additional restrictions provided by the Commons Clause. *Id.* ¶ 32. The Commons Clause is a contractual rider that can be added to an existing open source license to restrict the sale of the licensed software. In November 2018, Plaintiffs released version 3.5 of Neo4j EE, which it offered exclusively under the paid-for commercial license. *Id.* ¶ 33. Thus, as of November 2018, Plaintiffs no longer offered Neo4j EE on an open source basis.

Plaintiffs allege that Defendant GFI is a 501(c)(3) organization formed on or around June 21, 2018 in response to Plaintiffs' decision to cease offering the Neo4j EE on an open source basis. *Id.* at ¶ 35. GFI offers a graph database software called "ONgDB," which it describes as the "free and open source Neo4j Enterprise project" and "a non-restrictive fork of Neo4j, the world's leading Graph Database." *Id.* ¶ 36. Defendant GraphGrid provides products and services

Case No.: 5:19-cv-06226-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

2

IGOV0002997653.002

SER_1863

related to ONgDB and is owned and operated by the same individuals who own and operate GFI. *Id.* ¶ 8. ARI is a holding company for GraphGrid. *Id.* ¶ 10. Plaintiffs allege that both GraphGrid and ARI are alter egos of GFI and abuse GFI's tax exempt status by making tax-deductible donations to alleviate the tax burden on their profits. *Id.* ¶¶ 15-21.

While Defendants market ONgDB as identical to the current version of the Neo4j EE, Plaintiffs allege that ONgDB is, in fact, compiled by GFI and includes source code authored by GFI. *Id.* ¶¶ 41-44. Plaintiffs allege that Defendants have made a number of false and misleading statements in connection with the distribution, offering, and promotion of the ONgDB software, which were intended to lead consumers to believe that ONgDB is a genuine version of Neo4j EE. *See e.g.*, *id.* ¶ 57. Defendants also regularly refer to ONgDB as the "Open Neo4j Enterprise project" (*see e.g. id.* ¶ 60), and copy from or provide hyperlinks to genuine content from the Neo4j operations manual or Neo4j website. *Id.* ¶¶ 51-56.

Plaintiffs further allege that one of the founders of GFI, John Mark Suhy, copied Neo4j EE source code and modified the Neo4j Sweden Software License by removing the Commons Clause, copyright owner information, and other terms and conditions for use of the copyrighted source code. *Id.* ¶ 67. With the knowledge and permission of GFI, Suhy republished these altered source code files on GFI's Github repository for ONgDB. *Id.* Defendants then actively solicited third parties to download ONgDB, ultimately distributing or causing to be distributed over 10,000 copies of ONgDB containing altered Neo4j EE source code files that no longer included Neo4j Sweden's copyright management information. *Id.* ¶¶ 69-70.

### B. Procedural History

On October 1, 2019, Plaintiffs filed this action against Defendants, asserting (1) Trademark Infringement; (2) False Designation of Origin and False Advertising; and (4) Federal and State Unfair Competition. Dkt. No. 1. Over the months that followed the parties litigated motions relating to Defendants' affirmative defenses and counterclaims. On July 16, 2020, the Court grant the parties' joint stipulation for leave to file an amended complaint, and later that day, Plaintiffs

Case No.: 5:19-cv-06226-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

3

IGOV0002997653.003

SER_1864

United States District Court
Northern District of California

1    filed the FAC.  Dkt. Nos. 64, 65.  The FAC added three claims at issue in the present dispute: the

2    Fifth Cause of Action against all Defendants for Unauthorized Distribution of Altered Copyright

3    Management Information under the Digital Millennium Copyright Act ("DMCA"); the Sixth

4    Cause of Action against GFI for Breach of License Agreement; and the Seventh Cause of Action

5    against all Defendants for Unfair and Fraudulent Business Practices under California's Unfair

6    Competition Law ("UCL").

7          Defendants GraphGrid and ARI filed a joint motion to dismiss the Fifth and Seventh

8    Causes of Action (the "GraphGrid/ARI Motion").  Defendant GFI filed a separate motion to

9    dismiss the Fifth, Sixth, and Seventh Causes of Action (the "GFI Motion").  Defendants raise

10   similar arguments across both motions.  Unless otherwise specified, the Court will consider the

11   motions and overlapping arguments together.

12        **II.     Legal Standard**

13         Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

14   specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

15   it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929

16   (2007) (internal quotations omitted).  A complaint which falls short of the Rule 8(a) standard may

17   be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

18   To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual

19   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

20   556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp.*, 550

21   U.S. at 570).  A claim has facial plausibility when the plaintiff pleads factual content that allows

22   the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

23   *Id.*  Dismissal "is proper only where there is no cognizable legal theory or an absence of sufficient

24   facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

25   2001).

26

27   Case No.: 5:19-cv-06226-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS
                                              4

IGOV0002997653.004

III.     **Discussion**

**A.  Fifth Cause of Action – DMCA Violation**

Plaintiffs bring a claim for unauthorized distribution of altered copyright management information pursuant to the DMCA.  17 U.S.C. § 1202(b).  Section 1202(b) states:

> **(b)** . . . No person shall, without the authority of the copyright owner or the law—
>
>> **(1)** intentionally remove or alter any copyright management information,
>>
>> **(2)** distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
>>
>> **(3)** distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b).  Plaintiffs allege that the Neo4j EE software was published and distributed with copyright management information ("CMI") that includes the owner's name, a copyright notice, and a license providing the terms and conditions for the use of copyrighted work.  FAC ¶ 114.  Each source code file for the software conspicuously displays this Neo4j CMI, which is conveyed in a "LICENSE.txt" file connection with each source code file.  Plaintiffs claim that Defendants violated Section 1202(b) by intentionally distributing altered Neo4j source code knowing that the CMI in that source code had been removed.  FAC ¶ 115.

Defendants first argue that Neo4j's claim fails because their alleged removal of CMI was not "without the authority" of Neo4j.  Defendants assert that certain sections of the AGPLv3 expressly grant them the right to remove the CMI at issue.  In particular, Defendants argue that Section 7 of the AGPLv3 prohibits licensors like Neo4j Sweden from adding restrictions beyond

Case No.: 5:19-cv-06226-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

5

IGOV0002997653.005

SER_1866

United States District Court
Northern District of California

1    those set out in the form AGPLv3 license itself. They assert that the Commons Clause, which is

2    included in the Neo4j Sweden Software License, is a "further restriction" under the terms of the

3    form AGPLv3, and may be properly removed by a licensee in the licensee's distributions of the

4    source code.

5            As an initial matter, Defendants operate under the factual assumption that that Neo4j EE

6    was licensed under the form AGPLv3. *See e.g.*, GraphGrid/ARI Motion at 5, citing FAC ¶ 31.

7    Although the FAC states that Neo4j Sweden initially licensed the Neo4j EE under the form

8    AGPLv3, Defendants ignore the allegation that beginning in May 2018 Neo4j Sweden replaced

9    the AGPLv3 with the stricter Neo4j Sweden Software License, which included the terms of the

10   AGPLv3 plus additional restrictions provided by the Commons Clause. FAC ¶ 32. Defendants

11   argue that Plaintiffs were not permitted to alter the form license agreement under the terms of the

12   Free Software Foundation's ("FSF") copyright over the form AGPLv3. But whether Plaintiffs

13   acted in accordance with the copyright covering the AGPLv3 is not at issue before this Court, as

14   Defendants are not entitled to enforce the FSF's copyright. *See Minden Pictures, Inc. v. John*

15   *Wiley & Sons, Inc.*, 795 F.3d 997, 1002 (9th Cir. 2015) ("Under § 501(b) of the Copyright Act,

16   only '[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to

17   institute an action for any infringement of that particular right committed while he or she is the

18   owner of it.'").

19           The issue before the Court is whether the Neo4j Sweden Software License permits the

20   alleged removal or alteration of CMI in the Neo4j EE source code, such that Defendants' alleged

21   distribution of that altered source code is not actionable. The Court finds that it does not. Neither

22   of the two provisions in the form AGPLv3 that Defendants point to give licensees the right to

23   remove the information at issue. Section 10 of the AGPLv3, which is incorporated into the Neo4J

24   Sweden Software License, states: "You may not impose any further restrictions on the exercise of

25   rights granted or affirmed under this License." Declaration of Jeffrey M. Ratinoff In Support of

26   Plaintiffs' Consolidated Opposition To Defendants' Motions To Dismiss The First Amended

27   Case No.: 5:19-cv-06226-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS

6

IGOV0002997653.006

SER_1867

United States District Court
Northern District of California

Complaint (Dkt. No. 80-1, "Ratinoff Decl."), Exhibit B § 10 (the "Neo4j Sweden Software License").[1]  Section 7 states: "[i]f the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term." *Id.* § 7.  Defendants argue that these provisions mean that "there can be no liability for removing the further licensing restrictions which Neo4j incorporated into the license," namely the Commons Clause.  GraphGrid/ARI Motion at 6.  As Plaintiffs point out, however, the AGPLv3 defines "you" as the licensee, not the licensor.  Ex. 1 at § 0 ("Each licensee is addressed as 'you'").  Thus, read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so.

Indeed, it would be contrary to principles of contract and copyright law to interpret these provisions as limiting Neo4J Sweden's exclusive right to license its copyrighted software under terms of its choosing.  *See Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011) ("copyright owners may choose to simply exclude others from their work" or "use their limited monopoly to leverage the right to use their work on the acceptance of specific conditions").  Even "[c]opyright holders who engage in open source licensing have the right to control the modification and distribution of copyrighted material." *Jacobsen v. Katzer*, 535 F.3d 1373, 1381

---

[1] The Court finds that the Neo4j Sweden Software License, attached as Exhibit B to the Ratinoff Declaration, may be properly considered at the motion to dismiss stage because it is incorporated by reference into the FAC. *See* Plaintiffs' Request For Judicial Notice In Support of Plaintiffs' Consolidated Opposition To Defendants' Motions To Dismiss The First Amended Complaint (Dkt. No. 81).  The Neo4j Sweden Software License is referenced extensively throughout the FAC and forms the basis for Plaintiffs' Sixth Cause of Action for Breach of Licensing Agreement.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S .308, 322, 127 S.Ct. 2499 (2007) (court ruling on motion to dismiss must consider entire complaint and other sources incorporated by reference as well as judicially noticeable matters).

Case No.: 5:19-cv-06226-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

7

IGOV0002997653.007

SER_1868

United States District Court
Northern District of California

United States District Court
Northern District of California

1   (Fed. Cir. 2008).  The Court, therefore, rejects the notion that the terms drawn from the AGPLv3,

2   on which the Neo4j Sweden Software License is based, somehow limit the rights of Neo4j

3   Sweden to include the Commons Clause or any other additional restriction in its own copyright

4   license.

5          Defendants next argue that Plaintiffs do not allege the requisite knowledge or intent to

6   state a claim under 1202(b).  *See* GraphGrid/ARI Motion at 6; GFI Motion at 13-14.  The statute

7   requires that Defendants "possess the mental state of knowing, or having a reasonable basis to

8   know, that [their] actions 'will induce, enable, facilitate, or conceal' infringement."  *Stevens v.*

9   *Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018).  Defendants argue that it is not possible for a

10  "contractually permitted action" to have been "taken with knowledge that it would aid

11  infringement."  GFI Motion at 14.  For the reasons stated above, the Court does not agree with the

12  premise that Defendants' alleged actions were contractually permitted and, therefore, rejects this

13  argument as to Defendants' lack of knowledge.

14         Defendants further argue that Plaintiffs' knowledge allegations are conclusory.  Plaintiffs

15  allege that the Neo4j Sweden Software License "is generally recognized in the software industry

16  not to qualify as open source, as it prohibits all third-party resale and services activity."  FAC ¶ 32.

17  Plaintiffs further allege that GFI was formed specifically "to evade the restrictions imposed [on the

18  Neo4j EE software] and for the benefit of their respective for-profit companies GraphGrid, ARI

19  and iGov Inc."  *Id.* ¶ 35.  Plaintiffs allege that "Defendants knowingly copied source code from

20  the Neo4j graph database platform that is subject to [the] Neo4j Sweden Software License and

21  stripped out [the CMI] governing that source code," then published the altered files on its Github

22  repository for ONgDB.  *Id.* ¶ 74.  Defendants advertised ONgDB as a "free and open source Neo4j

23  Enterprise project," and "a non-restrictive fork of Neo4j."  *Id.* ¶ 36, 66-68.  Drawing all inferences

24  in favor of Plaintiffs, these allegations plausibly suggest that Defendants distributed Neo4j EE

25  source code in which the CMI was removed or modified with the specific intent of providing an

26  open-source, restriction-free version of the software in violation of the New4j Sweden Software

27  Case No.: 5:19-cv-06226-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
    DISMISS

IGOV0002997653.008

SER_1869

License.  Moreover, Plaintiffs allege that Defendants marketed ONgDB in order to profit off of support and development services offered by GraphGrid and ARI.  *See, e.g.*, FAC ¶ 77.  Given that the Neo4j Sweden Software License prohibits third parties from offering support services, it is reasonable to conclude that Defendants acted with knowledge that their actions would "induce, enable, facilitate, or conceal infringement."  *Stevens*, 899 F.3d at 673.

Finally, Defendants argue that the removal of CMI from the Neo4j Sweden Software License does not violate Section 1202(b) because the CMI was not removed entirely, but rather, was moved to separate text files (the "NOTICE.txt" files).  Whereas the Neo4j EE source code is accompanied by a LICENSE.txt file, which contains the Neo4j Sweden Software License and other CMI discussed above, Defendants conveyed Neo4j source code with both a LICENSE.txt and NOTICE.txt file.  Defendants assert that "other than the Commons Clause language itself, all of the language removed from the Neo4j Sweden Software License from the LICENSE.txt file is included in the NOTICES.txt file for each of the source code files copied from Neo4J EE along with the copyright attribution language."  GFI Motion at 9.  Defendants argue that because the CMI was included in a NOTICE.txt file—with the exception of the Commons Clause, which was removed entirely—they cannot be liable under Section 1202(b).

As an initial matter, the parties dispute whether the Court may consider these NOTICE.txt files at this stage of the proceedings.  The files were not referenced in the FAC, but GFI argues that they are subject to judicial notice because they "currently exist on the internet, are not subject to reasonable dispute, and are from the same exact source as the pages attached as Exhibit 36 to the Amended Complaint."  GFI Motion at 8; *see also* Dkt. No. 75-1, Request for Judicial Notice In Support of Graph Foundation, Inc.'s Motion To Dismiss, ¶ 4.  Because these files were not referenced or relied on in the FAC, the Court finds that they have not been incorporated by reference.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint"). Moreover, the Court declines to

Case No.: 5:19-cv-06226-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

9

IGOV0002997653.009

SER_1870

United States District Court
Northern District of California

1  exercise judicial notice over the documents merely because they are found on the same website as

2  exhibits that are attached to the FAC.  In any event, Section 1202(b) prohibits distributing a work

3  "knowing that [CMI] has been removed *or altered*."  17 U.S.C. § 1202(b)(3).  The Court finds that

4  moving the CMI into separate NOTICE.txt files constitutes altering the CMI, and conveying the

5  Neo4j Sweden Software License without the Commons Clause constitutes removing CMI.  Thus,

6  the fact that Defendants conveyed most of the removed CMI in NOTICE.txt files does not insulate

7  them from potential liability under Section 1202(b).

8  Because Plaintiffs adequately plead knowledge as required under Section 1202(b), and

9  because Defendants have not demonstrated that their actions were expressly permitted by licensing

10  agreement, the Court finds that the FAC states a claim under Section 1202(b).  Defendants'

11  Motions are DENIED as to the Fifth Cause of Action.

12  **B.  Sixth Cause of Action – Breach of License Agreement**

13  Plaintiffs bring a claim against GFI for breach of the Neo4j Sweden Software License,

14  alleging that GFI's removal of the Commons Clause, copyright notices, and ownership attributions

15  from the licenses accompanying the Neo4j source code violates Sections 4 and 5 of the License.

16  FAC ¶¶ 120-125.  The elements of breach of contract under California law are: (1) the existence of

17  a contract; (2) plaintiff's performance under the contract; (3) defendant's breach of the contract;

18  and (4) that plaintiff was damaged as a result of the breach.  *Buschman v. Anesthesia Bus.*

19  *Consultants, LLC*, 42 F.Supp.3d 1244, 1250 (N.D. Cal. 2014).

20  As with the DMCA claim above, GFI moves to dismiss the Sixth Cause of Action on the

21  grounds that they cannot have breached the Neo4j Sweden Software License by distributing Neo4j

22  source code with the CMI removed or altered because Sections 7 and 10 of that license permit GFI

23  to remove the information at issue.  GFI Motion at 11-12.  For the same reasons discussed with

24  respect to the DMCA claim above, the Court rejects the argument that the terms of the Neo4j

25  Sweden Software License permitted licensees to remove any CMI, including the Commons

26  Clause, from the source code or from the license itself.  Thus, Plaintiffs' allegations that

27  

28  Case No.: 5:19-cv-06226-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
DISMISS

United States District Court
Northern District of California

IGOV0002997653.010

SER_1871

1    Defendants distributed altered Neo4j source code as ONgDB, and offered commercial services to

2    support that software, are sufficient to allege that Defendants breached the license agreement.

3    GFI does not contest that Neo4j Sweden sufficiently alleged the other three elements of a

4    breach claim. Thus, the Court finds that Plaintiffs have sufficiently stated a claim for breach of

5    the license agreement. GFI's Motion is DENIED as to the Sixth Cause of Action.

6    ### C. Seventh Cause of Action – UCL Violation

7    Plaintiffs' Seventh Cause of Action is for violation of California's Unfair Competition

8    Law (the "UCL"). Cal. Bus. & Prof. Code § 17200. The UCL broadly prohibits "any unlawful,

9    unfair, or fraudulent business act or practice." *Id.* "Because each prong—fraudulent, unfair, and

10   unlawful—is independently actionable, a UCL claim survives if a plaintiff pleads either unlawful,

11   unfair, or fraudulent business acts." *Forsyth v. HP Inc.*, No. 5:16-CV-04775-EJD, 2020 WL

12   6081719, at *7 (N.D. Cal. Oct. 15, 2020) (citing *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d

13   718, 731 (9th Cir. 2007)). Plaintiffs raise allegations under all three prongs.

14   Plaintiffs allege that GFI falsely holds itself out as a 501(c)(3) nonprofit organization as

15   part of a fraudulent scheme to defray the costs of operating their for-profit alter egos, GraphGrid

16   and ARI. *See* FAC ¶¶ 129-36. Plaintiffs concede that GFI has been given 501(c)(3) nonprofit

17   status by the IRS but allege that GFI actually operates for the substantial non-exempt purpose of

18   developing software for GraphGrid and ARI. *See id.* ¶ 5, Ex. 1. GraphGrid and ARI, in turn,

19   allegedly support GFI through tax-deductible donations, which offset the tax burdens for the

20   profits they make through software support services. *Id.* ¶ 132-34. Plaintiffs allege that this

21   scheme gives Defendants an unfair competitive advantage over Plaintiffs in the marketplace and

22   constitutes an unfair or fraudulent business practice.

23   ARI and GraphGrid move to dismiss on the basis that Plaintiffs failed to allege an "unfair"

24   act amounting to an antitrust violation and that the allegations fail to meet Rule 9(b)'s particularity

25   requirements with respect to the fraud prong. GraphGrid/ARI Motion at 7-8. GFI also moves to

26   dismiss arguing that Plaintiffs fail to state a claim against it based on any of the three prongs. GFI

27   Case No.: 5:19-cv-06226-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

11

IGOV0002997653.011

SER_1872

United States District Court
Northern District of California

1    Motion at 15-17.

2        First, GFI argues that Plaintiffs failed to allege a fraudulent practice by Defendants.  The

3    term "fraudulent" in section 17200 "requires a showing members of the public 'are likely to be

4    deceived.'"  *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 839 (1994) (quoting *Bank of W. v.*

5    *Super. Ct.*, 2 Cal. 4th 1254, 1267 (1992)).  Claims sounding in fraud under California's Unfair

6    Competition Law must be pleaded with particularity and satisfy Federal Rule of Civil Procedure

7    9(b).  *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103-05 (9th Cir. 2003)), aff'd sub

8    nom., 632 F. App'x 429 (9th Cir. 2016); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th

9    Cir. 2007) (per curiam) ("[W]here a complaint includes allegations of fraud, Federal Rule of Civil

10    Procedure 9(b) requires more specificity including an account of the time, place, and specific

11    content of the false representations as well as the identities of the parties to the

12    misrepresentations." (internal quotation marks omitted)).

13        GFI asserts that none of the statements that Plaintiffs take issue with can be the basis of a

14    fraud claim because they are undisputedly true.  *See e.g.*, FAC ¶ 130 (alleging that GFI accepts

15    donations "under the guises that it is 'a 501(c)(3) which has nonprofit status from the IRS so any

16    donations are tax deductible by any enterprise that makes a donation.'").  Plaintiffs concede that

17    GFI has been determined by the IRS to be a 501(c)(3) tax exempt organization but allege that GFI

18    is not deserving of that status.  Given that Defendants statements are true, the Court finds that

19    Plaintiffs have failed to allege how such statements are likely to deceive the public.

20        Moreover, Plaintiffs fail to allege that they relied on Defendants statements, as required to

21    plead a UCL claim based on "fraudulent" conduct.  *See, e.g., 23andMe, Inc. v. Ancestry.com DNA,*

22    *LLC*, 356 F. Supp. 3d 889, 911 (N.D. Cal. 2018) (dismissing UCL claim brought by competitor

23    based on alleged fraudulent statements relied on by customers, not the competitor).  Plaintiffs

24    allege that "Defendants misuse GFI's alleged nonprofit status to solicit and *deceive third parties*

25    into contributing their time and expertise towards the development of ONgDB without

26    compensating those individuals" (FAC ¶ 132, (emphasis added)) and that "that *customers and*

27    Case No.: 5:19-cv-06226-EJD

28    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

12

IGOV0002997653.012

*prospective customers* have been confused and misled, deceived and mistaken as to the nature of Graph Foundation's business." FAC ¶ 136 (emphasis added). "[C]ourts have recognized that UCL fraud plaintiffs must allege their *own* reliance—not the reliance of third parties—to have standing under the UCL." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1156 (N.D. Cal. 2019) (citing *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1002 (N.D. Cal. 2014) (emphasis in original)). Thus, the Court finds that Plaintiffs fail to state a claim under the fraudulent prong of the UCL.

Defendants next argue that Plaintiffs fail to state a claim under the unfair or unlawful prongs as well. "[T]he word 'unfair' in [the UCL] means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). By proscribing "any unlawful" business act or practice, the UCL "borrows" rules set out in other laws and makes violations of those rules independently actionable. *Id.* at 180.

Defendants argue that Plaintiffs' theory of this claim—that Defendants misrepresented GFI's nonprofit status because it does not actually operate under the requirements of a 501(c)(3)—cannot stand because there is no private right of action under Section 501(c)(3). District courts generally do not have jurisdiction to determine "initial or continuing qualification of an organization described in section 501(c)(3)." 26 U.S.C. § 7428(a)(1)(A) (conferring jurisdiction for declaratory judgments regarding § 503(c)(1) status on "the United States Tax Court, the United States Court of Federal Claims, or the district court of the United States for the District of Columbia"); *see also* 28 U.S.C. § 2201(a) (providing district courts with jurisdiction to grant declaratory judgments "[i]n a case of actual controversy within its jurisdiction, except with respect to Federal taxes"). "It is inarguably the province of the Internal Revenue Service ("IRS") and the tax courts to determine, in the first instance, whether an organization qualifies as tax-exempt under § 501(c)(3)." *Shinde v. Nithyananda Found.*, No. EDCV 13-363, 2015 WL 12732434, at *11–12

Case No.: 5:19-cv-06226-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

13

1    (C.D. Cal. Feb. 23, 2015); *see also Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d

2    473, 477 (1st Cir. 2005) (citing *Bob Jones Univ. v. United States*, 461 U.S. 574, 596–97 (1983)).

3    Thus, Courts have held that there is no private right of action under section 501(c)(3) to enforce

4    the requirements for obtaining or maintaining tax-exempt status. *Quigley v. Yelp, Inc.,* No. 17- cv-

5    03771-RS, 2018 U.S. Dist. LEXIS 230967 (N.D. Cal. Jan. 22, 2018) (dismissing a claim against a

6    501(c)(3) nonprofit which sought an order removing that entity's non-profit status based on

7    allegations that the nonprofit did not act appropriately for a 501(c)(3)).

8           Because there is no private right of action under 501(c)(3) and because this Court does not

9    have jurisdiction to determine whether GFI meets the requirements for obtaining or maintaining

10   tax-exempt status, Plaintiffs allegations may not serve as the basis for a claim under either the

11   unlawful or unfair prongs of the UCL. *Zhang v. Superior Court*, 57 Cal. 4th 364, 379–80, 304

12   P.3d 163, 173–74 (2013) (UCL claims are barred where a private cause of action is absolutely

13   precluded under another statute) (citing *Stop Youth Addiction*, 17 Cal.4th at pp. 565–566, 71

14   Cal.Rptr.2d 731, 950 P.2d 1086); *see also Cel–Tech*, 20 Cal.4th at pp. 182–183, 83 Cal.Rptr.2d

15   548, 973 P.2d 527) ("A plaintiff may thus not plead around an absolute bar to relief simply by

16   recasting the cause of action as one for unfair competition") (internal quotations omitted); *Shinde*

17   *v. Nithyananda Found.*, No. EDCV 13-363, 2015 WL 12732434, at *12 (C.D. Cal. Feb. 23, 2015)

18   (finding that a Court lacks jurisdiction "[t]o the extent the [plaintiff's] claims seek a determination

19   from the Court any [defendant] did in fact 'violate' the tax code"). Any holding as to whether

20   GFI's practices are unlawful or unfair would necessarily involve this Court improperly

21   determining that GFI violated the tax code. This Court declines to make such a determination,

22   even in the context of a UCL claim.

23          The Court, therefore, finds that Plaintiffs' allegations regarding Defendants' failure to

24   operate under the requirements of 501(c)(3) are insufficient to show an unlawful, unfair, or

25   fraudulent business practice as required to state a claim under the UCL. Moreover, because

26   Plaintiffs concede that Defendants have, in fact, been granted tax exempt status by the IRS, the

27   Case No.: 5:19-cv-06226-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS

                                          14

IGOV0002997653.014

United States District Court
Northern District of California

1  Court finds that further amendment on this claim would be futile.  Defendants' Motions to dismiss

2  the Seventh Cause of Action are GRANTED with prejudice.

3      **IV.**    **Conclusion**

4      For the reasons stated above, Defendants' Motions to Dismiss are **GRANTED** as to the

5  Seventh Cause of Action and **DENIED** as to the Fifth and Sixth Causes of Action.  The Seventh

6  Cause of Action is hereby **DISMISSED** with prejudice.

7      **IT IS SO ORDERED.**

8  Dated:  November 13, 2020

9

10  EDWARD J. DAVILA
    United States District Judge

11

12

United States District Court
Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  Case No.: 5:19-cv-06226-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

15

# EXHIBIT 8

| | |
|---|---|
| **From:** | John Mark Suhy(jmsuhy@purethink.com) |
| **To:** | GeoffreyK@fsf.org |
| **CC:** | |
| **BCC:** | |
| **Subject:** | Case regarding AGPL precedent: Nov 13th, 2020 - Case No. 5:19-cv-06226-EJD |
| **Sent:** | 11/17/2020 05:12:18 AM -0800 (PST) |
| **Attachments:** | order-88-case-519cv06226EJD.pdf; |

Good morning Geoffrey,
I could not find your email so I tried to guess it.

My name is John Mark Suhy and I wanted to make sure you are aware of a recent court order (November 13th 2020) that may set some disastrous precedent around GPL and AGPL.

Case No. 5:19-cv-06226-EJD

I attached the order I am referencing to this email.    You can also get it on pacer.gov.

In a nutshell, Neo4j Inc licensed their enterprise software under AGPL for quite some time.  In May 2018 they added a "further restriction" called the  "Commons Clause" to the AGPL license file they include in their github repository.

Neo4j marketed their software as open source under AGPL, but in this filing, they admit that the modified AGPL is not open source. However, that is not what is at issue.

In a fork of Neo4j software on Github, the License.txt file with the modified AGPL license was overwritten to be a verbatim copy of the AGPL license, effectively removing the additional restrictions adding the commons clause.   It was assumed that The free software foundation owns the AGPL license copyright not Neo4j, and removal of the additional terms in the AGPL license.txt file seems to be what the AGPL requires.  (Verbatim and removal of additional restrictions).

Neo4j says this removal of the commons clause wording in the AGPL license.txt is a DMCA violation.

The court  agrees with Neo4j in that they can add further restrictions to AGPL and that licensees down the line can not remove the additional restriction as the AGPL clearly states.

This was not argued in court, but done all via paperwork so an amendment is due soon I am assuming.

I am sure that you can see how this may affect GPL and AGPL moving forward.

I think that now is the time for the free software foundation to get involved now that the court's opinion is clear.

I have spoken to the directors of the Graph Foundation and both the foundation and  my company would be willing to donate  legal resources

/ costs to assist your team with addressing this issue.

Please let me know if you receive this message and if you want to talk further.  I'll try reaching out other ways until I hear from you, as I am not sure if the emails I am using are accurate.

You can reach me anytime at 703-862-7780 or via this email.

Respectfully,

John Mark Suhy

John Mark Suhy
PureThink
jmsuhy@purethink.com
703-862-7780
http://purethink.com

1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6                        SAN JOSE DIVISION

7

8   NEO4J, INC.,                          Case No.  5:19-cv-06226-EJD

        Plaintiff,
9                                          **ORDER GRANTING IN PART AND
        v.                                 DENYING IN PART DEFENDANTS'
10                                         MOTIONS TO DISMISS**

11  GRAPH FOUNDATION, INC.,                Re: Dkt. Nos. 74, 75

        Defendant.
12

13          Plaintiffs Neo4j, Inc. ("Neo4j USA") and Neo4j Sweden AB ("Neo4j Sweden" and

14  together with Neo4j USA "Plaintiffs") recently filed a First Amended Complaint (Dkt. No. 65,

15  "FAC") in this matter against Graph Foundation, Inc. ("GFI"), GraphGrid, Inc. ("GraphGrid"),

16  and AtomRain Inc. ("ARI" and altogether, "Defendants").  Pursuant to Rule 12(b)(6) of the

17  Federal Rules of Civil Procedure, GraphGrid and ARI seek to dismiss the fifth and seventh causes

18  of action in the FAC.  Dkt. No. 74 ("GraphGrid/ARI Motion")).  GFI separately seeks to dismiss

19  the fifth, sixth, and seventh causes of action.  Dkt. No. 78 ("GFI Motion").  The Court took the

20  motions under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b).

21  For the reasons below, the Court **GRANTS in part and DENIES in part** both motions.

22          **I.    Background**

23                  **A. Allegations in the FAC**

24          Neo4j USA is a Delaware corporation with its principal place of business in San Mateo,

25  California, and is a global leader in graph database technology.  Dkt. No. 1, First Amended

26  Complaint ("FAC"), ¶ 2.  The Neo4j graph database platform natively stores and processes the

27
Case No.: 5:19-cv-06226-EJD
28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
    DISMISS

1

*United States District Court*
*Northern District of California*

IGOV0002997659.001

SER_1880

United States District Court
Northern District of California

relationship between data points, which "helps organizations make sense of their data by revealing how people, processes and digital systems are interrelated." *Id.* Neo4j Sweden is a wholly owned subsidiary of Neo4j USA and owns all copyrights related to the Neo4j graph database platform, including the source code. *Id.* ¶ 4.

Plaintiffs offer multiple products and services related to the Neo4j graph database platform. They offer a free version of the software, known as the Neo4j Community Edition, on an open source basis. The Community Edition is offered under a copyright license called the GNU General Public License ("GPL") developed by the Free Software Foundation ("FSF") as a form license for open source software. *Id.* ¶ 30. Plaintiffs also offer a more advanced commercial version of the software known as the Neo4j Enterprise Edition ("Neo4j EE"), which includes additional features and Neo4j USA's support services. *Id.* Plaintiffs originally offered the Neo4j EE under both a paid-for commercial license and the free GNU Affero General Public License version 3 ("AGPLv3"), a variant of the GPL also developed by FSF. *Id.* ¶ 31.

In May 2018, Plaintiffs released an updated version of Neo4j EE, version 3.4, which they continued to offer under a proprietary commercial license. However, Neo4j Sweden replaced the AGPLv3 with a stricter license ("Neo4j Sweden Software License"), which included the terms of the AGPLv3 with additional restrictions provided by the Commons Clause. *Id.* ¶ 32. The Commons Clause is a contractual rider that can be added to an existing open source license to restrict the sale of the licensed software. In November 2018, Plaintiffs released version 3.5 of Neo4j EE, which it offered exclusively under the paid-for commercial license. *Id.* ¶ 33. Thus, as of November 2018, Plaintiffs no longer offered Neo4j EE on an open source basis.

Plaintiffs allege that Defendant GFI is a 501(c)(3) organization formed on or around June 21, 2018 in response to Plaintiffs' decision to cease offering the Neo4j EE on an open source basis. *Id.* at ¶ 35. GFI offers a graph database software called "ONgDB," which it describes as the "free and open source Neo4j Enterprise project" and "a non-restrictive fork of Neo4j, the world's leading Graph Database." *Id.* ¶ 36. Defendant GraphGrid provides products and services

Case No.: 5:19-cv-06226-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS
2

IGOV0002997659.002

SER_1881

related to ONgDB and is owned and operated by the same individuals who own and operate GFI. *Id.* ¶ 8. ARI is a holding company for GraphGrid. *Id.* ¶ 10. Plaintiffs allege that both GraphGrid and ARI are alter egos of GFI and abuse GFI's tax exempt status by making tax-deductible donations to alleviate the tax burden on their profits. *Id.* ¶¶ 15-21.

While Defendants market ONgDB as identical to the current version of the Neo4j EE, Plaintiffs allege that ONgDB is, in fact, compiled by GFI and includes source code authored by GFI. *Id.* ¶¶ 41-44. Plaintiffs allege that Defendants have made a number of false and misleading statements in connection with the distribution, offering, and promotion of the ONgDB software, which were intended to lead consumers to believe that ONgDB is a genuine version of Neo4j EE. *See e.g.*, *id.* ¶ 57. Defendants also regularly refer to ONgDB as the "Open Neo4j Enterprise project" (*see e.g. id.* ¶ 60), and copy from or provide hyperlinks to genuine content from the Neo4j operations manual or Neo4j website. *Id.* ¶¶ 51-56.

Plaintiffs further allege that one of the founders of GFI, John Mark Suhy, copied Neo4j EE source code and modified the Neo4j Sweden Software License by removing the Commons Clause, copyright owner information, and other terms and conditions for use of the copyrighted source code. *Id.* ¶ 67. With the knowledge and permission of GFI, Suhy republished these altered source code files on GFI's Github repository for ONgDB. *Id.* Defendants then actively solicited third parties to download ONgDB, ultimately distributing or causing to be distributed over 10,000 copies of ONgDB containing altered Neo4j EE source code files that no longer included Neo4j Sweden's copyright management information. *Id.* ¶¶ 69-70.

### B. Procedural History

On October 1, 2019, Plaintiffs filed this action against Defendants, asserting (1) Trademark Infringement; (2) False Designation of Origin and False Advertising; and (4) Federal and State Unfair Competition. Dkt. No. 1. Over the months that followed the parties litigated motions relating to Defendants' affirmative defenses and counterclaims. On July 16, 2020, the Court grant the parties' joint stipulation for leave to file an amended complaint, and later that day, Plaintiffs

United States District Court
Northern District of California

IGOV0002997659.003

SER_1882

filed the FAC. Dkt. Nos. 64, 65. The FAC added three claims at issue in the present dispute: the

Fifth Cause of Action against all Defendants for Unauthorized Distribution of Altered Copyright

Management Information under the Digital Millennium Copyright Act ("DMCA"); the Sixth

Cause of Action against GFI for Breach of License Agreement; and the Seventh Cause of Action

against all Defendants for Unfair and Fraudulent Business Practices under California's Unfair

Competition Law ("UCL").

Defendants GraphGrid and ARI filed a joint motion to dismiss the Fifth and Seventh

Causes of Action (the "GraphGrid/ARI Motion"). Defendant GFI filed a separate motion to

dismiss the Fifth, Sixth, and Seventh Causes of Action (the "GFI Motion"). Defendants raise

similar arguments across both motions. Unless otherwise specified, the Court will consider the

motions and overlapping arguments together.

## II. Legal Standard

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929

(2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may

be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp.*, 550

U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Id.* Dismissal "is proper only where there is no cognizable legal theory or an absence of sufficient

facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

2001).

United States District Court
Northern District of California

IGOV0002997659.004

SER_1883

### III. Discussion

#### A. Fifth Cause of Action – DMCA Violation

Plaintiffs bring a claim for unauthorized distribution of altered copyright management information pursuant to the DMCA.  17 U.S.C. § 1202(b).  Section 1202(b) states:

> **(b) . . .** No person shall, without the authority of the copyright owner or the law—
>
> > **(1)** intentionally remove or alter any copyright management information,
> >
> > **(2)** distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
> >
> > **(3)** distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b).  Plaintiffs allege that the Neo4j EE software was published and distributed with copyright management information ("CMI") that includes the owner's name, a copyright notice, and a license providing the terms and conditions for the use of copyrighted work.  FAC ¶ 114.  Each source code file for the software conspicuously displays this Neo4j CMI, which is conveyed in a "LICENSE.txt" file connection with each source code file.  Plaintiffs claim that Defendants violated Section 1202(b) by intentionally distributing altered Neo4j source code knowing that the CMI in that source code had been removed.  FAC ¶ 115.

Defendants first argue that Neo4j's claim fails because their alleged removal of CMI was not "without the authority" of Neo4j.  Defendants assert that certain sections of the AGPLv3 expressly grant them the right to remove the CMI at issue.  In particular, Defendants argue that Section 7 of the AGPLv3 prohibits licensors like Neo4j Sweden from adding restrictions beyond

IGOV0002997659.005

SER_1884

United States District Court
Northern District of California

United States District Court
Northern District of California

1  those set out in the form AGPLv3 license itself. They assert that the Commons Clause, which is

2  included in the Neo4j Sweden Software License, is a "further restriction" under the terms of the

3  form AGPLv3, and may be properly removed by a licensee in the licensee's distributions of the

4  source code.

5      As an initial matter, Defendants operate under the factual assumption that that Neo4j EE

6  was licensed under the form AGPLv3. *See e.g.*, GraphGrid/ARI Motion at 5, citing FAC ¶ 31.

7  Although the FAC states that Neo4j Sweden initially licensed the Neo4j EE under the form

8  AGPLv3, Defendants ignore the allegation that beginning in May 2018 Neo4j Sweden replaced

9  the AGPLv3 with the stricter Neo4j Sweden Software License, which included the terms of the

10  AGPLv3 plus additional restrictions provided by the Commons Clause. FAC ¶ 32. Defendants

11  argue that Plaintiffs were not permitted to alter the form license agreement under the terms of the

12  Free Software Foundation's ("FSF") copyright over the form AGPLv3. But whether Plaintiffs

13  acted in accordance with the copyright covering the AGPLv3 is not at issue before this Court, as

14  Defendants are not entitled to enforce the FSF's copyright. *See Minden Pictures, Inc. v. John*

15  *Wiley & Sons, Inc.*, 795 F.3d 997, 1002 (9th Cir. 2015) ("Under § 501(b) of the Copyright Act,

16  only '[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to

17  institute an action for any infringement of that particular right committed while he or she is the

18  owner of it.'").

19      The issue before the Court is whether the Neo4j Sweden Software License permits the

20  alleged removal or alteration of CMI in the Neo4j EE source code, such that Defendants' alleged

21  distribution of that altered source code is not actionable. The Court finds that it does not. Neither

22  of the two provisions in the form AGPLv3 that Defendants point to give licensees the right to

23  remove the information at issue. Section 10 of the AGPLv3, which is incorporated into the Neo4J

24  Sweden Software License, states: "You may not impose any further restrictions on the exercise of

25  rights granted or affirmed under this License." Declaration of Jeffrey M. Ratinoff In Support of

26  Plaintiffs' Consolidated Opposition To Defendants' Motions To Dismiss The First Amended

27  Case No.: 5:19-cv-06226-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
DISMISS

6

IGOV0002997659.006

SER_1885

1    Complaint (Dkt. No. 80-1, "Ratinoff Decl."), Exhibit B § 10 (the "Neo4j Sweden Software

2    License").[1]  Section 7 states: "[i]f the Program as you received it, or any part of it, contains a

3    notice stating that it is governed by this License along with a term that is a further restriction, you

4    may remove that term." *Id.* § 7.   Defendants argue that these provisions mean that "there can be

5    no liability for removing the further licensing restrictions which Neo4j incorporated into the

6    license," namely the Commons Clause.  GraphGrid/ARI Motion at 6.  As Plaintiffs point out,

7    however, the AGPLv3 defines "you" as the licensee, not the licensor.  Ex. 1 at § 0 ("Each licensee

8    is addressed as 'you'").  Thus, read correctly, Sections 7 and 10 prohibit a *licensee* from imposing

9    further restrictions, but do not prohibit a *licensor* from doing so.

10          Indeed, it would be contrary to principles of contract and copyright law to interpret these

11    provisions as limiting Neo4J Sweden's exclusive right to license its copyrighted software under

12    terms of its choosing.  *See Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011)

13    ("copyright owners may choose to simply exclude others from their work" or "use their limited

14    monopoly to leverage the right to use their work on the acceptance of specific conditions").  Even

15    "[c]opyright holders who engage in open source licensing have the right to control the

16    modification and distribution of copyrighted material."  *Jacobsen v. Katzer*, 535 F.3d 1373, 1381

_____

17

18    [1] The Court finds that the Neo4j Sweden Software License, attached as Exhibit B to the Ratinoff

19    Declaration, may be properly considered at the motion to dismiss stage because it is incorporated

20    by reference into the FAC. *See* Plaintiffs' Request For Judicial Notice In Support of Plaintiffs'

21    Consolidated Opposition To Defendants' Motions To Dismiss The First Amended Complaint

22    (Dkt. No. 81).  The Neo4j Sweden Software License is referenced extensively throughout the FAC

23    and forms the basis for Plaintiffs' Sixth Cause of Action for Breach of Licensing Agreement. *See*

24    *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S .308, 322, 127 S.Ct. 2499 (2007) (court

25    ruling on motion to dismiss must consider entire complaint and other sources incorporated by

26    reference as well as judicially noticeable matters).

27    Case No.: 5:19-cv-06226-EJD
      ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
28    DISMISS

IGOV0002997659.007

SER_1886

United States District Court
Northern District of California

United States District Court
Northern District of California

1    (Fed. Cir. 2008). The Court, therefore, rejects the notion that the terms drawn from the AGPLv3,

2    on which the Neo4j Sweden Software License is based, somehow limit the rights of Neo4j

3    Sweden to include the Commons Clause or any other additional restriction in its own copyright

4    license.

5         Defendants next argue that Plaintiffs do not allege the requisite knowledge or intent to

6    state a claim under 1202(b). *See* GraphGrid/ARI Motion at 6; GFI Motion at 13-14. The statute

7    requires that Defendants "possess the mental state of knowing, or having a reasonable basis to

8    know, that [their] actions 'will induce, enable, facilitate, or conceal' infringement." *Stevens v.*

9    *Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018). Defendants argue that it is not possible for a

10   "contractually permitted action" to have been "taken with knowledge that it would aid

11   infringement." GFI Motion at 14. For the reasons stated above, the Court does not agree with the

12   premise that Defendants' alleged actions were contractually permitted and, therefore, rejects this

13   argument as to Defendants' lack of knowledge.

14        Defendants further argue that Plaintiffs' knowledge allegations are conclusory. Plaintiffs

15   allege that the Neo4j Sweden Software License "is generally recognized in the software industry

16   not to qualify as open source, as it prohibits all third-party resale and services activity." FAC ¶ 32.

17   Plaintiffs further allege that GFI was formed specifically "to evade the restrictions imposed [on the

18   Neo4j EE software] and for the benefit of their respective for-profit companies GraphGrid, ARI

19   and iGov Inc." *Id.* ¶ 35. Plaintiffs allege that "Defendants knowingly copied source code from

20   the Neo4j graph database platform that is subject to [the] Neo4j Sweden Software License and

21   stripped out [the CMI] governing that source code," then published the altered files on its Github

22   repository for ONgDB. *Id.* ¶ 74. Defendants advertised ONgDB as a "free and open source Neo4j

23   Enterprise project," and "a non-restrictive fork of Neo4j." *Id.* ¶ 36, 66-68. Drawing all inferences

24   in favor of Plaintiffs, these allegations plausibly suggest that Defendants distributed Neo4j EE

25   source code in which the CMI was removed or modified with the specific intent of providing an

26   open-source, restriction-free version of the software in violation of the New4j Sweden Software

27   Case No.: 5:19-cv-06226-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS

8

IGOV0002997659.008

SER_1887

United States District Court
Northern District of California

1    License.  Moreover, Plaintiffs allege that Defendants marketed ONgDB in order to profit off of

2    support and development services offered by GraphGrid and ARI.  *See, e.g.*, FAC ¶ 77.  Given

3    that the Neo4j Sweden Software License prohibits third parties from offering support services, it is

4    reasonable to conclude that Defendants acted with knowledge that their actions would "induce,

5    enable, facilitate, or conceal infringement."  *Stevens*, 899 F.3d at 673.

6         Finally, Defendants argue that the removal of CMI from the Neo4j Sweden Software

7    License does not violate Section 1202(b) because the CMI was not removed entirely, but rather,

8    was moved to separate text files (the "NOTICE.txt" files).  Whereas the Neo4j EE source code is

9    accompanied by a LICENSE.txt file, which contains the Neo4j Sweden Software License and

10   other CMI discussed above, Defendants conveyed Neo4j source code with both a LICENSE.txt

11   and NOTICE.txt file.  Defendants assert that "other than the Commons Clause language itself, all

12   of the language removed from the Neo4j Sweden Software License from the LICENSE.txt file is

13   included in the NOTICES.txt file for each of the source code files copied from Neo4J EE along

14   with the copyright attribution language."  GFI Motion at 9.  Defendants argue that because the

15   CMI was included in a NOTICE.txt file—with the exception of the Commons Clause, which was

16   removed entirely—they cannot be liable under Section 1202(b).

17        As an initial matter, the parties dispute whether the Court may consider these NOTICE.txt

18   files at this stage of the proceedings.  The files were not referenced in the FAC, but GFI argues

19   that they are subject to judicial notice because they "currently exist on the internet, are not subject

20   to reasonable dispute, and are from the same exact source as the pages attached as Exhibit 36 to

21   the Amended Complaint."  GFI Motion at 8; *see also* Dkt. No. 75-1, Request for Judicial Notice In

22   Support of Graph Foundation, Inc.'s Motion To Dismiss, ¶ 4.  Because these files were not

23   referenced or relied on in the FAC, the Court finds that they have not been incorporated by

24   reference.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("if the

25   document merely creates a defense to the well-pled allegations in the complaint, then that

26   document did not necessarily form the basis of the complaint"). Moreover, the Court declines to

27   Case No.: 5:19-cv-06226-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS

9

IGOV0002997659.009

1   exercise judicial notice over the documents merely because they are found on the same website as

2   exhibits that are attached to the FAC.  In any event, Section 1202(b) prohibits distributing a work

3   "knowing that [CMI] has been removed *or altered*."  17 U.S.C. § 1202(b)(3).  The Court finds that

4   moving the CMI into separate NOTICE.txt files constitutes altering the CMI, and conveying the

5   Neo4j Sweden Software License without the Commons Clause constitutes removing CMI.  Thus,

6   the fact that Defendants conveyed most of the removed CMI in NOTICE.txt files does not insulate

7   them from potential liability under Section 1202(b).

8        Because Plaintiffs adequately plead knowledge as required under Section 1202(b), and

9   because Defendants have not demonstrated that their actions were expressly permitted by licensing

10  agreement, the Court finds that the FAC states a claim under Section 1202(b).  Defendants'

11  Motions are DENIED as to the Fifth Cause of Action.

### B.  Sixth Cause of Action – Breach of License Agreement

13       Plaintiffs bring a claim against GFI for breach of the Neo4j Sweden Software License,

14  alleging that GFI's removal of the Commons Clause, copyright notices, and ownership attributions

15  from the licenses accompanying the Neo4j source code violates Sections 4 and 5 of the License.

16  FAC ¶¶ 120-125.  The elements of breach of contract under California law are: (1) the existence of

17  a contract; (2) plaintiff's performance under the contract; (3) defendant's breach of the contract;

18  and (4) that plaintiff was damaged as a result of the breach.  *Buschman v. Anesthesia Bus.*

19  *Consultants, LLC*, 42 F.Supp.3d 1244, 1250 (N.D. Cal. 2014).

20       As with the DMCA claim above, GFI moves to dismiss the Sixth Cause of Action on the

21  grounds that they cannot have breached the Neo4j Sweden Software License by distributing Neo4j

22  source code with the CMI removed or altered because Sections 7 and 10 of that license permit GFI

23  to remove the information at issue.  GFI Motion at 11-12.  For the same reasons discussed with

24  respect to the DMCA claim above, the Court rejects the argument that the terms of the Neo4j

25  Sweden Software License permitted licensees to remove any CMI, including the Commons

26  Clause, from the source code or from the license itself.  Thus, Plaintiffs' allegations that

27

28  Case No.: 5:19-cv-06226-EJD
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
    DISMISS

United States District Court
Northern District of California

IGOV0002997659.0010

1    Defendants distributed altered Neo4j source code as ONgDB, and offered commercial services to

2    support that software, are sufficient to allege that Defendants breached the license agreement.

3         GFI does not contest that Neo4j Sweden sufficiently alleged the other three elements of a

4    breach claim.  Thus, the Court finds that Plaintiffs have sufficiently stated a claim for breach of

5    the license agreement.  GFI's Motion is DENIED as to the Sixth Cause of Action.

6                   **C.  Seventh Cause of Action – UCL Violation**

7         Plaintiffs' Seventh Cause of Action is for violation of California's Unfair Competition

8    Law (the "UCL").  Cal. Bus. & Prof. Code § 17200.  The UCL broadly prohibits "any unlawful,

9    unfair, or fraudulent business act or practice."  *Id.*  "Because each prong—fraudulent, unfair, and

10   unlawful—is independently actionable, a UCL claim survives if a plaintiff pleads either unlawful,

11   unfair, or fraudulent business acts."  *Forsyth v. HP Inc.*, No. 5:16-CV-04775-EJD, 2020 WL

12   6081719, at *7 (N.D. Cal. Oct. 15, 2020) (citing *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d

13   718, 731 (9th Cir. 2007)).  Plaintiffs raise allegations under all three prongs.

14        Plaintiffs allege that GFI falsely holds itself out as a 501(c)(3) nonprofit organization as

15   part of a fraudulent scheme to defray the costs of operating their for-profit alter egos, GraphGrid

16   and ARI.  *See* FAC ¶¶ 129-36.  Plaintiffs concede that GFI has been given 501(c)(3) nonprofit

17   status by the IRS but allege that GFI actually operates for the substantial non-exempt purpose of

18   developing software for GraphGrid and ARI.  *See id.* ¶ 5, Ex. 1.  GraphGrid and ARI, in turn,

19   allegedly support GFI through tax-deductible donations, which offset the tax burdens for the

20   profits they make through software support services.  *Id.* ¶ 132-34.  Plaintiffs allege that this

21   scheme gives Defendants an unfair competitive advantage over Plaintiffs in the marketplace and

22   constitutes an unfair or fraudulent business practice.

23        ARI and GraphGrid move to dismiss on the basis that Plaintiffs failed to allege an "unfair"

24   act amounting to an antitrust violation and that the allegations fail to meet Rule 9(b)'s particularity

25   requirements with respect to the fraud prong.  GraphGrid/ARI Motion at 7-8.  GFI also moves to

26   dismiss arguing that Plaintiffs fail to state a claim against it based on any of the three prongs.  GFI

27

28

Case No.: 5:19-cv-06226-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
DISMISS

11

IGOV0002997659.0011

SER_1890

1    Motion at 15-17.

2         First, GFI argues that Plaintiffs failed to allege a fraudulent practice by Defendants.  The

3    term "fraudulent" in section 17200 "requires a showing members of the public 'are likely to be

4    deceived.'" *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 839 (1994) (quoting *Bank of W. v.*

5    *Super. Ct.*, 2 Cal. 4th 1254, 1267 (1992)).  Claims sounding in fraud under California's Unfair

6    Competition Law must be pleaded with particularity and satisfy Federal Rule of Civil Procedure

7    9(b).  *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103-05 (9th Cir. 2003)), aff'd sub

8    nom., 632 F. App'x 429 (9th Cir. 2016); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th

9    Cir. 2007) (per curiam) ("[W]here a complaint includes allegations of fraud, Federal Rule of Civil

10   Procedure 9(b) requires more specificity including an account of the time, place, and specific

11   content of the false representations as well as the identities of the parties to the

12   misrepresentations." (internal quotation marks omitted)).

13        GFI asserts that none of the statements that Plaintiffs take issue with can be the basis of a

14   fraud claim because they are undisputedly true.  *See e.g.*, FAC ¶ 130 (alleging that GFI accepts

15   donations "under the guises that it is 'a 501(c)(3) which has nonprofit status from the IRS so any

16   donations are tax deductible by any enterprise that makes a donation.'").  Plaintiffs concede that

17   GFI has been determined by the IRS to be a 501(c)(3) tax exempt organization but allege that GFI

18   is not deserving of that status.  Given that Defendants statements are true, the Court finds that

19   Plaintiffs have failed to allege how such statements are likely to deceive the public.

20        Moreover, Plaintiffs fail to allege that they relied on Defendants statements, as required to

21   plead a UCL claim based on "fraudulent" conduct.  *See, e.g., 23andMe, Inc. v. Ancestry.com DNA,*

22   *LLC*, 356 F. Supp. 3d 889, 911 (N.D. Cal. 2018) (dismissing UCL claim brought by competitor

23   based on alleged fraudulent statements relied on by customers, not the competitor).  Plaintiffs

24   allege that "Defendants misuse GFI's alleged nonprofit status to solicit and *deceive third parties*

25   into contributing their time and expertise towards the development of ONgDB without

26   compensating those individuals" (FAC ¶ 132, (emphasis added)) and that "that *customers and*

27   Case No.: 5:19-cv-06226-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS

United States District Court
Northern District of California

IGOV0002997659.012

SER_1891

Case 5:19-cv-06226-EJD Document 189 Filed 11/03/2023 Page 13 of 15

1   *prospective customers* have been confused and misled, deceived and mistaken as to the nature of

2   Graph Foundation's business." FAC ¶ 136 (emphasis added). "[C]ourts have recognized that

3   UCL fraud plaintiffs must allege their *own* reliance—not the reliance of third parties—to have

4   standing under the UCL." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1156

5   (N.D. Cal. 2019) (citing *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1002 (N.D. Cal.

6   2014) (emphasis in original)). Thus, the Court finds that Plaintiffs fail to state a claim under the

7   fraudulent prong of the UCL.

8        Defendants next argue that Plaintiffs fail to state a claim under the unfair or unlawful

9   prongs as well. "[T]he word 'unfair' in [the UCL] means conduct that threatens an incipient

10  violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects

11  are comparable to or the same as a violation of the law, or otherwise significantly threatens or

12  harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187

13  (1999). By proscribing "any unlawful" business act or practice, the UCL "borrows" rules set out

14  in other laws and makes violations of those rules independently actionable. *Id.* at 180.

15       Defendants argue that Plaintiffs' theory of this claim—that Defendants misrepresented

16  GFI's nonprofit status because it does not actually operate under the requirements of a 501(c)(3)—

17  cannot stand because there is no private right of action under Section 501(c)(3). District courts

18  generally do not have jurisdiction to determine "initial or continuing qualification of an

19  organization described in section 501(c)(3)." 26 U.S.C. § 7428(a)(1)(A) (conferring jurisdiction

20  for declaratory judgments regarding § 503(c)(1) status on "the United States Tax Court, the United

21  States Court of Federal Claims, or the district court of the United States for the District of

22  Columbia"); *see also* 28 U.S.C. § 2201(a) (providing district courts with jurisdiction to grant

23  declaratory judgments "[i]n a case of actual controversy within its jurisdiction, except with respect

24  to Federal taxes"). "It is inarguably the province of the Internal Revenue Service ("IRS") and the

25  tax courts to determine, in the first instance, whether an organization qualifies as tax-exempt under

26  § 501(c)(3)." *Shinde v. Nithyananda Found.*, No. EDCV 13-363, 2015 WL 12732434, at *11–12

27

28

   Case No.: 5:19-cv-06226-EJD

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
DISMISS

13

United States District Court
Northern District of California

1     (C.D. Cal. Feb. 23, 2015); *see also Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d

2     473, 477 (1st Cir. 2005) (citing *Bob Jones Univ. v. United States*, 461 U.S. 574, 596–97 (1983)).

3     Thus, Courts have held that there is no private right of action under section 501(c)(3) to enforce

4     the requirements for obtaining or maintaining tax-exempt status. *Quigley v. Yelp, Inc.,* No. 17- cv-

5     03771-RS, 2018 U.S. Dist. LEXIS 230967 (N.D. Cal. Jan. 22, 2018) (dismissing a claim against a

6     501(c)(3) nonprofit which sought an order removing that entity's non-profit status based on

7     allegations that the nonprofit did not act appropriately for a 501(c)(3)).

8        Because there is no private right of action under 501(c)(3) and because this Court does not

9     have jurisdiction to determine whether GFI meets the requirements for obtaining or maintaining

10    tax-exempt status, Plaintiffs allegations may not serve as the basis for a claim under either the

11    unlawful or unfair prongs of the UCL. *Zhang v. Superior Court*, 57 Cal. 4th 364, 379–80, 304

12    P.3d 163, 173–74 (2013) (UCL claims are barred where a private cause of action is absolutely

13    precluded under another statute) (citing *Stop Youth Addiction*, 17 Cal.4th at pp. 565–566, 71

14    Cal.Rptr.2d 731, 950 P.2d 1086); *see also Cel–Tech*, 20 Cal.4th at pp. 182–183, 83 Cal.Rptr.2d

15    548, 973 P.2d 527) ("A plaintiff may thus not plead around an absolute bar to relief simply by

16    recasting the cause of action as one for unfair competition") (internal quotations omitted); *Shinde*

17    *v. Nithyananda Found.*, No. EDCV 13-363, 2015 WL 12732434, at *12 (C.D. Cal. Feb. 23, 2015)

18    (finding that a Court lacks jurisdiction "[t]o the extent the [plaintiff's] claims seek a determination

19    from the Court any [defendant] did in fact 'violate' the tax code"). Any holding as to whether

20    GFI's practices are unlawful or unfair would necessarily involve this Court improperly

21    determining that GFI violated the tax code. This Court declines to make such a determination,

22    even in the context of a UCL claim.

23        The Court, therefore, finds that Plaintiffs' allegations regarding Defendants' failure to

24    operate under the requirements of 501(c)(3) are insufficient to show an unlawful, unfair, or

25    fraudulent business practice as required to state a claim under the UCL. Moreover, because

26    Plaintiffs concede that Defendants have, in fact, been granted tax exempt status by the IRS, the

27

Case No.: 5:19-cv-06226-EJD

28 ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
DISMISS

14

IGOV0002997659.014

SER_1893

*(vertical left margin)* United States District Court / Northern District of California

Court finds that further amendment on this claim would be futile.  Defendants' Motions to dismiss the Seventh Cause of Action are GRANTED with prejudice.

### IV.    Conclusion

For the reasons stated above, Defendants' Motions to Dismiss are **GRANTED** as to the Seventh Cause of Action and **DENIED** as to the Fifth and Sixth Causes of Action.  The Seventh Cause of Action is hereby **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

Dated:  November 13, 2020

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

Case No.: 5:19-cv-06226-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

15

IGOV0002997659.015

SER_1894

# EXHIBIT 9

SER_1895

| | |
|---|---|
| **From:** | John Mark Suhy(jmsuhy@igovsol.com) |
| **To:** | copyright@fsf.org; licensing@fsf.org |
| **CC:** | |
| **BCC:** | |
| **Subject:** | Question regarding AGPL and Verbatim License |
| **Sent:** | 11/23/2020 05:59:18 PM -0800 (PST) |
| **Attachments:** | |

I was recently accused of DMCA violations for overwriting a modified AGPLv3 license (adding commons clause) with the verbatim AGPL license.

Essentially - the Neo4j project added the commons clause to the AGPL license file and kept calling their release open source and AGPL.  See file link below:

I read the AGPL license file which said the copy had to be verbatim, and overwrote just the modified AGPL license files with the verbatim AGPL license from the free software foundation site.

For doing this - I now have DMCA claims accusing me of removing copyright information from the license file.

Any feedback from you would be appreciated.  Another ongoing court case with the Graph Foundation also has similar claims by Neo4j Inc.

So from your point of view - should be be using the modified AGPL license or should we have used the verbatim License.txt ?

This is only specific to the AGPL License.txt file - nothing was modified anywhere else.


Reference:

Original License file that we replaced with verbatim AGPL:

https://raw.githubusercontent.com/neo4j/neo4j/3.5.0-beta01/enterprise/auth-plugin-api/LICENSE.txt


Thank you,

John Mark Suhy
703-862-7780

--
John Mark Suhy
iGov Inc
jmsuhy@igovsol.com
703-862-7780
https://igovsol.com

IGOV0002997701.001
**SER_1896**

# EXHIBIT 10



☰   **DONATE**   **JOIN**   **VIZIO**   🔍

Until January 15, the next $16,651 of support we receive will be matched!

**$88,108 matched!**                              **$16,651 to go!**

Home / News / Blog

# An Erroneous Preliminary Injunction Granted in Neo4j v. PureThink

by Bradley M. Kuhn on March 30, 2022

## Bad Early Court Decision for AGPLv3 Has Not Yet Been Appealed

We at Software Freedom Conservancy proudly and vigilantly watch out for your rights under copyleft licenses such as the Affero GPLv3. Toward this goal, we have studied the Neo4j, Inc. v. PureThink, LLC ongoing case in the Northern District of California , and the preliminary injunction appeal decision in the Ninth Circuit Court this month. The case is complicated, and we've seen much understandable confusion in the public discourse about the status of the case and the impact of the Ninth Circuit's decision to continue the trial court's preliminary injunction while the case continues. While it's true that part of the summary judgment decision in the lower court bodes badly for an important provision in AGPLv3§7¶4, the good news is that the case is not over, nor was the appeal (decided this month) even an *actual appeal* of the decision itself! This lawsuit is far from completion.

### A Brief Summary of the Case So Far

The primary case in question is a dispute between Neo4j, a proprietary relicensing company, against a very small company called PureThink, run by an individual named John Mark Suhy. Studying the docket of the case, and a relevant related case, and other available public materials, we've come to understand some basic facts and events. To paraphrase LeVar Burton, we encourage all our readers to not take our word (or anyone else's) for it, but instead take the time to read the dockets and come to your own conclusions.

After canceling their formal, contractual partnership with Suhy, Neo4j alleged multiple claims in court against Suhy and his companies. Most of these claims centered around trademark rights regarding "Neo4j" and related marks. However, the claims central to our concern relate to a dispute between Suhy and Neo4j regarding Suhy's clarification in downstream licensing of the Enterprise version that Neo4j distributed.

Specifically, Neo4j attempted to license the codebase under something they (later, in their Court filings) dubbed the "Neo4j Sweden Software License" — which consists of a LICENSE.txt file containing the entire text of the Affero General Public License, version 3 ("AGPLv3") (a license that I helped write), and the so-called "Commons Clause" — a toxic proprietary license. Neo4j admits that this license mash-up (if legitimate, which we at Software Freedom Conservancy and Suhy both dispute), is not an "open source license".

SER_1898

There are many complex issues of trademark and breach of other contracts in this case; we agree that there are lots of interesting issues there. However, we focus on the matter of most interest to us and many FOSS activists: Suhy's permissions to remove the "Commons Clause". Neo4j accuses Suhy of improperly removing the "Commons Clause" from the codebase (and subsequently redistributing the software under pure AGPLv3) in paragraph 77 of their third amended complaint. (Note that Suhy denied these allegations in court — asserting that his removal of the "Commons Clause" was legitimate and permitted.)

Neo4j filed for summary judgment on all the issues, and throughout their summary judgment motion, Neo4j argued that the removal of the "Commons Clause" from the license information in the repository (and/or Suhy's suggestions to others that removal of the "Commons Clause" was legitimate) constituted behavior that the Court should enjoin or otherwise prohibit. The Court *partially* granted Neo4j's motion for summary judgment. Much of that ruling is not particularly related to FOSS licensing questions, but the section regarding licensing deeply concerns us. Specifically, to support the Court's order that temporarily prevents Suhy and others from saying that the Neo4j Enterprise edition that was released under the so-called "Neo4j Sweden Software License" is a "free and open source" version and/or alternative to proprietary-licensed Neo4j EE, the Court held that removal of the "Commons Clause" was not permitted. (BTW, the court confuses "commercial" and "proprietary" in that section — it seems they do not understand that FOSS can be commercial as well.)

In this instance, we're not as concerned with the names used for the software; as much as the copyleft licensing question — because it's the software's license, not its name, that either assures or prevents users to exercise their fundamental software rights. Notwithstanding our disinterest in the naming issue, we'd all likely agree that — **if** "AGPLv3 WITH Commons-Clause" were a legitimate form of licensing — such a license is not FOSS. The primary issue, therefore, is not about whether or not this software is FOSS, but whether or not the "Commons Clause" can be legitimately removed by downstream licensees when presented with a license of "AGPLv3 WITH Commons-Clause". We believe the Court held incorrectly by concluding that Suhy was not permitted to remove the "Commons Clause". Their order that enjoins Suhy from saying that such removal is permitted is problematic because the underlying holding (if later upheld on appeal) could seriously harm FOSS and copyleft.

### The Confusion About the Appeal

Because this was an incomplete summary judgment and the case is ongoing, the injunction against Suhy's on making such statements is a *preliminary* injunction, and cannot be made permanent until the case actually completes in the trial court. The decision by the Ninth Circuit appeals court regarding this preliminary injunction has been widely reported by others as an "appeal decision" on the issue of what can be called "open source". However, this is **not** an appeal of the entire summary judgment decision, and certainly not an appeal of the entire case (which cannot even been appealed until the case completes). The Ninth Circuit decision *merely* affirms that Suhy remains under the preliminary injunction (which prohibits him and his companies from taking certain actions and saying certain things publicly) while the case continues. In fact, the standard that an appeals Court uses when considering an appeal of a preliminary injunction differs from the standard for ordinary appeals. Generally speaking, appeals Courts are highly deferential to trial courts regarding preliminary injunctions, and appeals of actual decisions have a much more stringent standard.

### The Affero GPL Right to Restriction Removal

In their partial summary judgment ruling, the lower Court erred because they rejected an important and (in our opinion) correct counter-argument made by Suhy's attorneys. Specifically, Suhy's attorneys argued that Neo4j's license expressly permitted the removal of the "Commons Clause" from the license. AGPLv3 was, in fact, drafted to permit such removal in this precise fact pattern.

Specifically, the AGPLv3 itself has the following provisions (found in AGPLv3§0 and AGPLv3§7¶4):

SER_1899

- "This License" refers to version 3 of the GNU Affero General Public License.
- "The Program" refers to any copyrightable work licensed under this License. Each licensee is addressed as "you".
- If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term.

That last term was added to address a real-world, known problem with GPLv2. Frequently throughout the time when GPLv2 was the current version, original copyright holders and/or licensors would attempt to license work under the GPL with additional restrictions. The problem was rampant and caused much confusion among licensees. As an attempted solution, the FSF (the publisher of the various GPL's) loosened its restrictions on reuse of the text of the GPL — in hopes *that* would provide a route for reuse of some GPL text, while also avoiding confusion for licensees. Sadly, many licensors continued to take the confusing route of using the entire text a GPL license with an additional restriction — attached either before or after, or both. Their goals were obvious and nefarious: they wanted to confuse the public into "thinking" the software was under the GPL, but in fact restrict certain other activities (such as commercial redistribution). They combined this practice with proprietary relicensing (i.e., a sole licensor selling separate proprietary licenses while releasing a (seemingly FOSS) public version of the code as demoware for marketing). Their goal is to build on the popularity of the GPL, but in direct opposition to the GPL's policy goals; they manipulate the GPL to open-wash bad policies rather than give actual rights to users. This tactic even permitted bad actors to sell "gotcha" proprietary licenses to those who were legitimately confused. For example, a company would look for users operating commercially with the code in compliance with GPLv2, but hadn't noticed the company's code had the statement: "Licensed GPLv2, but not for commercial use". The user had seen GPLv2, and knew from its brand reputation that it gave certain rights, but hadn't realized that the additional restriction outside of the GPLv2's text might actually be valid. The goal was to catch users in a sneaky trap.

Neo4j tried to use the AGPLv3 to set one of those traps. Neo4j, despite the permission in the FSF's GPL FAQ to "use the GPL terms (possibly modified) in another license provided that you call your license by another name and do not include the GPL preamble", left the entire AGPLv3 intact as the license of the software — adding only a note at the front and at the end. However, their users can escape the trap, because GPLv3 (and AGPLv3) added a clause (which doesn't exist in GPLv2) to defend users from this. Specifically, AGPLv3§7¶4 includes a key provision to help this situation.

Specifically, the clause was designed to give more rights to downstream recipients when bad actors attempt this nasty trick. Indeed, I recall from my direct participation in the A/GPLv3 drafting that this provision was *specifically designed* for the situation where the original, sole copyright holder/licensor[0] added additional restrictions. And, I'm not the only one who recalls this. Richard Fontana (now a lawyer at IBM's Red Hat, but previously legal counsel to the FSF during the GPLv3 process), wrote on a mailing list[1] in response to the Neo4j preliminary injunction ruling:

> For those who care about anecdotal drafting history … the whole point of the section 7 clause ("If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term.") was to address the well known problem of an original GPL licensor tacking on non-GPL, non-FOSS, GPL-norm-violating restrictions, precisely like the use of the Commons Clause with the GPL. Around the time that this clause was added to the GPLv3 draft, there had been some recent examples of this phenomenon that had been picked up in the tech press.

Fontana also pointed us to the FSF's own words on the subject, written during their process of drafting this section of the license (emphasis ours):

> Unlike additional permissions, additional requirements that are allowed under subsection 7b may not be removed. The revised section 7 makes clear that **this condition does not apply to any other additional requirements, however, which are removable** just like additional permissions.

SER_1900

Here **we are particularly concerned about the practice of program authors who purport to license their works under the GPL with an additional requirement that contradicts the terms of the GPL, such as a prohibition on commercial use**. Such terms can make the program non-free, and thus contradict the basic purpose of the GNU GPL; but even when the conditions are not fundamentally unethical, adding them in this way invariably makes the rights and obligations of licensees uncertain.

While the intent of the original drafter of a license text is not dispositive over the text as it actually appears in the license, all this information was available to Neo4j as *they* drafted *their* license. Many voices in the community had told them that provision in AGPLv3§7¶4 was added specifically to prevent what Neo4j was trying to do. The FSF, the copyright holder of the actual text of the AGPLv3, also publicly gave Neo4j permission to draft a new license, using any provisions they like from AGPLv3 and putting them together in a new way. But Neo4j made a conscious choice to do not *that*, but instead constructed their license in the exact manner that allowed Suhy's removal of the "Commons Clause".

In addition, that provision in AGPLv3§7¶4 has little meaning if it's *not* intended to bind the original licensor! Many other provisions (such as AGPLv3§10¶3) protect the users against further restrictions imposed later in the distribution chain of licensees. This clause was targeted from its inception against the exact, specific bad behavior that Neo4j did here.

We don't dispute that copyright and contract law give Neo4j authority to license their work under any terms they wish — including terms that we consider unethical or immoral. In fact, we already pointed out above that Neo4j had permission to pick and choose only *some* text from AGPLv3. As long as they didn't use the name "Affero", "GNU" or "General Public" or include any of the Preamble text in the name/body of their license — we'd readily agree that Neo4j could have put together a bunch of provisions from the AGPLv3, and/or the "Commons Clause", and/or any other license that suited their fancy. They could have made an entirely new license. Lawyers commonly do share text of licenses and contracts to jump-start writing new ones. That's a practice we generally support (since it's sharing a true commons of ideas freely — even if the resulting license might not be FOSS).

But Neo4j consciously chose *not* to do that. Instead, they license their software "subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3, with the Commons Clause". (The name "Neo4j Sweden Software License" only exists in the later Court papers, BTW, not with "The Program" in question.) Neo4j defines "This License" to mean "version 3 of the GNU Affero General Public License.". Then, Neo4j tells all licensees that "If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term". Yet, after all that, Neo4j had the audacity to claim to the Court that they didn't actually *mean* that last sentence, and the Court rubber-stamped that view.

Simply put, the Court erred when it said: "Neither of the two provisions in the form AGPLv3 that Defendants point to give licensees the right to remove the information at issue.". The Court then used that error as a basis for its ruling to temporarily enjoin Suhy from stating that software with "Commons Clause" removed by downstream is "free and open source", or tell others that he disagrees with the Court's (temporary) conclusion about removing the "Commons Clause" in this situation.

## What Next?

The case isn't over. The lower Court still has various issues to consider — including a DMCA claim regarding Suhy's removal of the "Commons Clause". We suspect that's why the Court only made a preliminary injunction against Suhy's *words*, and *did not issue an injunction against the actual removal of the clause*! The issue as to whether the clause can be removed is still pending, and the current summary judgment decision doesn't address the DMCA claim from Neo4j's complaint.

Sadly, the Court has temporarily enjoined Suhy from "representing that Neo4j Sweden AB's addition of the Commons Clause to the license governing Neo4j Enterprise Edition violated the terms of AGPL or that removal of the Commons Clause is lawful, and similar statements". But they haven't enjoined us, and our view on the matter is as follows:

Clearly, Neo4j gave explicit permission, pursuant to the AGPLv3, for anyone who would like to to remove the "Commons Clause" from their LICENSE.txt file in version 3.4 and other versions of their Enterprise edition where it appears. We believe that you have full permission, pursuant to AGPLv3, to distribute that software under the terms of the AGPLv3 as written. In saying that, we also point out that we're not a law firm, our lawyers are not your lawyers, and this is not legal advice. However, after our decades of work in copyleft licensing, we know well the reason and motivations of this policy in the license (described above), and given the error by the Court, it's our civic duty to inform the public that the licensing conclusions (upon which they based their temporary injunction) are incorrect.

Meanwhile, despite what you may have read last week, the key software licensing issues in this case *have not been decided* — even by the *lower* Court. For example, the DMCA issue is still before the trial court. Furthermore, if you do read the docket of this case, it will be obvious that neither party is perfect. We have not analyzed every action Suhy took, nor do we have any comment on any action by Suhy other than this: we believe that Suhy's removal of the "Commons Clause" was fully permitted by the terms of the AGPLv3, and that Neo4j gave him that permission in that license. Suhy also did a great service to the community by taking action that obviously risked litigation against him. Misappropriation and manipulation of the strongest and most freedom-protecting copyleft license ever written to bolster a proprietary relicensing business model is an affront to FOSS and its advancement. It's even worse when the Courts are on the side of the bad actor. Neo4j should not have done this.

Finally, we note that the Court was rather narrow on what it said regarding the question of "What Is Open Source?". The Court ruled that one individual and his companies — when presented with ambiguous licensing information in one part of a document, who then finds another part of the document grants permission to repair and clarify the licensing information, and does so — is temporarily forbidden from telling others that the resulting software is, in fact, FOSS, after making such a change. The ruling does not set precedent, nor does it bind anyone other than the Defendants as to what they can or cannot say is FOSS, which is why we can say *it is* FOSS, because the AGPLv3 is an OSI-approved license and the AGPLv3 permits removal of the toxic "Commons Clause" in this situation.

We will continue to follow this case and write further when new events occur..

---

[0] We were unable to find anywhere in the Court record that shows Neo4j used a Contributor Licensing Agreement (CLA) or Copyright Assignment Agreement (©AA) that sufficiently gave them exclusive rights as licensor of this software. We did however find evidence online that Neo4j accepted contributions from others. If Neo4j is, in fact, also a licensor of others' AGPLv3'd derivative works that have been incorporated into their upstream versions, then there are many other arguments (in addition to the one presented herein) that would permit removal of the "Commons Clause". This issue remains an open question of fact in this case.

[1] Fontana made these statements on a mailing list governed by an odd confidentiality rule called CHR (which was originally designed for in-person meetings with a beginning and an end, not a mailing list). Nevertheless, Fontana explicitly waived CHR (in writing) to allow me to quote his words publicly.

[permalink]

Tags: conservancy, GPL, law

Please email any comments on this entry to info@sfconservancy.org.

SER_1902

Other Conservancy Blog entries…

## See all blog posts…

## Blog Index by Year

- 2022
- 2021
- 2020
- 2019
- 2018
- 2017
- 2016
- 2015
- 2014
- 2013
- 2012
- 2011
- 2010

## Blogs by Tag

- conservancy (rss)
- GPL (rss)
- supporter (rss)
- conferences (rss)
- licensing (rss)
- law (rss)
- events (rss)
- Member Projects (rss)
- software freedom for everyone (rss)
- Outreachy (rss)
- FOSS Sustainability (rss)
- diversity (rss)
- Copyleft Conf (rss)
- ContractPatch (rss)
- Filings (rss)
- Godot (rss)
- Reproducible Builds (rss)
- Year In Review 2016 (rss)
- resources (rss)
- CLA (rss)
- Wine (rss)
- Year In Review 2015 (rss)
- Kallithea (rss)
- QEMU (rss)
- Selenium (rss)
- Google Summer of Code (rss)
- Homebrew (rss)
- inkscape (rss)
- patent (rss)

SER_1903

- Clojars ([rss](#))
- Git ([rss](#))
- Hackfests ([rss](#))
- Racket ([rss](#))
- cyborg ([rss](#))
- phpMyAdmin ([rss](#))
- pypy ([rss](#))
- security ([rss](#))
- volunteer ([rss](#))
- Accounting ([rss](#))
- LibreHealth ([rss](#))
- Shotwell ([rss](#))
- inclusion ([rss](#))
- jQuery ([rss](#))
- microblocks ([rss](#))

## Blogs by Author

- Vladimir Bejdo ([rss](#))
- Kate Chapman ([rss](#))
- Pamela Chestek ([rss](#))
- Denver Gingerich ([rss](#))
- Will Hawkins ([rss](#))
- Fred Jennings ([rss](#))
- Deb and Karen ([rss](#))
- Jeff King ([rss](#))
- Bradley M. Kuhn ([rss](#))
- Denver Gingerich and Bradley M. Kuhn ([rss](#))
- Conservancy + Bro LT ([rss](#))
- Deb Nicholson ([rss](#))
- Bradley M. Kuhn and Karen M. Sandler ([rss](#))
- Karen Sandler ([rss](#))
- Tony Sebro ([rss](#))
- Sage A. Sharp ([rss](#))
- Brett Smith ([rss](#))
- Conservancy's Staff ([rss](#))
- Daniel Takamori ([rss](#))
- Outreachy Team ([rss](#))
- Christopher Allan Webber ([rss](#))
- Marina Zhurakhinskaya ([rss](#))
- Molly deBlanc ([rss](#))

Connect with Conservancy on Mastodon, Twitter, Facebook, and YouTube.

Main Page | Contact | Sponsors | Privacy Policy | RSS Feed

Our privacy policy was last updated **22 December 2020**.



This page, and all contents herein, unless a license is otherwise specified, are licensed under a Creative

SER_1904

12/23/22, 9:08 AM · Neo4j v. PureThink: How Free-Licensed Software Can Still Entrap Its Users by Preventing Compliance with GPL Terms - Bradley M. Kuhn - Freedom Conservancy

Commons Attribution-ShareAlike 4.0 International License.

SER_1905

# EXHIBIT 11

SER_1906

2/17/23, 11:11 AM     Case 5:18-cv-07182-EJD     Court erred in Neo4j source license ruling, says Software Freedom Conservancy • The Register     Filed 04/20/23 • Page 2 of 15

# The Register®



**SOFTWARE**

29

# Court erred in Neo4j source license ruling, says Software Freedom Conservancy

If decision is upheld, this 'could seriously harm FOSS and copyleft'

Thomas Claburn                                    Sat 2 Apr 2022 // 01:28 UTC

A US federal district court decision in California favoring database biz Neoj4 is incorrect and imperils free open-source software, according to the Software Freedom Conservancy.

Neo4j Enterprise Edition (EE) was at first offered under both a paid-for commercial license and for free under the GNU Affero General Public License, version 3 (AGPLv3). In May 2018, version 3.4 of the software was put under AGLv3 plus additional terms from the Commons Clause license, which is not an open-source license and explicitly says as much in its documentation.

The viability of Neo4j's AGPLv3+Commons Clause license is what's at issue, because taken as a whole, the AGPLv3 includes language that says any added terms are removable. That view has been rejected in court – which accepts Neoj4's right to craft custom terms and to resolve contradictions in those terms – and the Software Freedom Conservancy believes the court erred.

2/17/23, 11:11 AM Case 5:18-cv-07182-EJD Court enforces Neo4j licensing clause: Software Freedom Conservancy • The Register Document 81-12 Filed 04/20/23 Page 3 of 15

As *The Register* underlined reported last month, Neo4j and its Swedish subsidiary have been pursuing legal claims, filed in 2018 and 2019, against several companies that sold what was marketed as an open-source licensed version of Neo4j EE under the name ONgDB – allegedly in violation of terms in the concatenated AGPLv3+Commons Clause license and Neo4j's trademarks.

The Graph Foundation, one of the defendants, in February 2021 underlined settled with Neo4j, agreeing that it would stop calling specific versions of ONgDB, forked from Neo4j EE, a "100 percent free and open source version" of Neo4J EE.

In May 2021, US District Court Judge Edward J. Davila, who is overseeing Neoj4's case against PureThink and iGov – both run by John Mark Suhy to sell ONgDB – granted Neo4j's motion for partial summary judgment [PDF]. The ruling declared the defendants could not infringe Neo4j's trademark and could not claim that ONgDB is open source software. In effect, the district court said you can't call non-open-source software open source.

The defendants, PureThink and iGov, challenged that ruling – the case continues to be litigated – though in February the US Court of Appeals for the Ninth Circuit affirmed the district court's decision specifically with regard to the lower court's partial summary judgment, including the point about only calling open-source software open source.

SER_1908



**Open-source developers under corporate pressure to adopt less-permissive licenses, Percona CEO says**

READ MORE →

The Open Source Initiative, which oversees the Open Source Definition and the licenses based on the OSD, applauded the appeals court decision. So too did Bruce Perens, who created the Open Source Definition in 1997. Both welcomed the court's acknowledgement that it's false advertising to claim a license is open source when it's not.

But on Thursday, Bradley Kuhn, policy fellow and hacker-in-residence at Software Freedom Conservancy, took issue with the district court's partial summary judgment and the Ninth Circuit's endorsement of it. He said he'd agree that the defendants ought not say their software is under a free and open source (FOSS) license if the AGPLv3+Commons Clause combo were valid. But he argues the two licenses can't co-exist as published by Neo4j.

"We believe the court held incorrectly by concluding that Suhy was not permitted to remove the 'Commons Clause,'" wrote Kuhn in a blog post. "Their order that enjoins Suhy from calling the resulting code 'FOSS' is problematic because the underlying holding (if later upheld on appeal) could seriously harm FOSS and copyleft."

> " Their order that enjoins Suhy from calling the resulting code 'FOSS' is problematic because the underlying holding (if later upheld on appeal)

SER_1909

2/17/23, 11:11 AM    Case 5:18-cv-07182-EJD    Court enjoins continued use... Software Freedom Conservancy • The Register Page 5 of 15

**could seriously harm
FOSS and copyleft**

Kuhn, who created the Affero clause in the AGPLv1 and co-drafted v3, says that the AGPLv3 contains a clause that explicitly allows the removal of terms added to the AGPLv3, something Suhy's companies argued but the judge rejected.

The AGPLv3 license says, "If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term."

The judge, citing his prior ruling against The Graph Foundation, says [PDF] the terms of the AGPLv3 "prohibit a licensee from imposing further restrictions, but do not prohibit a licensor from doing so." And he argues that "it would be contrary to principles of contract and copyright law to interpret these provisions as limiting Neo4J Sweden's exclusive right to license its copyrighted software under terms of its choosing."

"It's just wrong," Kuhn told *The Register* in a phone interview. He agrees that Neo4j has the right to set its own licensing terms but points out that the company specifically chose the full text of AGPLv3. And in making that choice, he argues, they can't selectively ignore the AGPLv3's terms when they specifically state their software is <u>"subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3, with the Commons Clause."</u>

"Neo4j defines 'This License' to mean 'version 3 of the GNU Affero General Public License,'" he wrote in his post. "Then, Neo4j tells all licensees that 'If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term.' Yet, after all that, Neo4j had the audacity to claim to the court that they didn't actually *mean* that last sentence, and the court rubber-stamped that view."

Perens in an email agreed with Kuhn's interpretation.

"The license of Neo4J Enterprise Edition has the Affero GPL v3 license (AGPLv3), a license with very strong share-and-share-alike terms, but these weren't good enough for Neo4J Inc, which added a license term called the 'Commons Clause,' which says 'you can't sell it.'"

But the AGPLv3, said Perens, includes a passage that allows the removal of added restrictions.

"So Neo4J also gave anyone permission to remove the Commons Clause from Neo4J and use it as if it's just under the AGPLv3 license," he said. "Which is what the defendant did. The judge said he couldn't. Now, an appeals court may get to reverse that decision."

SER_1911



**NASA advised to study up on what open source, free software, and permissive licenses actually mean**

READ MORE →

Paul Berg, a software licensing consultant who has worked for Amazon and Microsoft, among others, told *The Register* in an email that Kuhn in his post raises salient points.

"A core issue under contention that I see here is that Neo4j is releasing a product they own under proprietary licensing terms with an unconventional license," he said, adding that the license text "obscures those terms rather than explicitly stating them."

"They are doing this by including the whole of the text of a well-known open source license, yet adding confusing and seemingly contradictory terms which conflict directly with the stated intent of the drafters of the open source license," he continued.

Berg argues that by structuring their license this way, they benefit from association with free-and-open-source software without actually offering the implied assurances.

"This causes some users of their product to begin designing and building their own systems under these false assumptions only to realize after committing to their design that the software is not open source," he argued. "This often results in insurmountable late stage migrations to another technology or accepting Neo4j's costly alternative licensing, a sales conversion tactic. One which is severely disadvantageous to the user if the software and of negative utility."

Berg, pointing to the Log4shell incident, said there's a growing need in the tech industry for developers to integrate third-party dependencies under unambiguous licensing terms in a way that minimizes supply chain disruption.

Software, he said, "should include clear knowledge of origin, clear licensing terms, and transparent security information. Regardless of current law or existing license text, this is the

SER_1912

aim we should strive for and prioritize as an industry instead of trading that for misleading branding and Ill-gotten sales." ®

Whitepaper: Top 5 Tips For Navigating Your SASE Journey

**SIMILAR TOPICS**

29 &#x1F5A9; **COMMENTS**

Copyright    Law    Linux    **More like these**



**Voice.ai denies claim it violated open source software license requirements**

Maker of voice changing software says it has removed GPLv3 code "to alleviate any doubt"

DEVOPS                                                                           10 days | **11** &#x1F5A9;



## The quest to make Linux bulletproof

<span style="color:red">PART 2</span> What the big players and an outlier are doing, and why

OSES                                                                    1 day | 89 ❑



## Make Linux safer… or die trying

<span style="color:red">PART 1</span> The OS family isn't broken – so why are so many companies trying to fix it?

OSES                                                                    3 days | 169 ❑



**It's time to fill those cloud security gaps**

Here's how Wiz can help

SPONSORED FEATURE

SER_1915



### Spotted in the wild: Chimera – a Linux that isn't GNU/Linux

FOSDEM It's not yet reached alpha, but it's already breaking new ground

OSES

4 days | 72 🗨



### Linus Torvalds releases probably unnecessary release candidate eight for Linux 6.2

Emperor Penguin promised a relaxed seasonal development cycle and has delivered

OSES

5 days | 11 🗨

SER_1916

2/17/23, 11:11 AM    Case 5:18-cv-07182-EJD    Court ends Neo4j suit over software license non-compliance • The Register    Page 12 of 15    Document 181-12    Filed 04/20/23



**Creator of Linux virtual assistant blames 'patent troll' for project's death**

Kickstarter backers left empty-handed

SOFTWARE                                              4 days | **45** ❑



**WINE Windows translation layer has matured like a fine... you get the picture**

FOSDEM Along with DXVK 2.1, more and better compatibility comes to Linux – we'll drink to that

OSES                                                 14 days | **70** ❑



### Core-JS chief complains open source is broken, no one will pay for it

Being in Russia and going to jail might have something to do with it, tho

DEVOPS                                                        2 days | 60 💬



### System76 teases features coming in homegrown Rust-based desktop COSMIC

Meanwhile, Xfce takes its first steps toward Wayland support

OSES                                                         15 days | 41 💬

SER_1918



## Open Source Policy Summit: Where FOSS and government meet

FOSDEM Sometimes it takes a war to make people pay attention

APPLICATIONS                                                        8 days | 8 💬



## Debian dev to the rescue after proposal to remove Itanium from Linux kernel

Nobody uses it, Linus Torvalds was happy to lose it, but it looks like sticking around

SYSTEMS                                                            2 days | 20 💬

SER_1919

Court emboldens Neo4j in open source vs closed software trademark spat • The Register



The Register 🔔 Biting the hand that feeds IT

About Us ⌄

Our Websites ⌄

Your Privacy ⌄

situation publishing.

Copyright. All rights reserved © 1998–2023

SER_1920

# EXHIBIT 12

SER_1921

| | |
|---|---|
| **From:** | John Mark Suhy <jmsuhy@egovsol.com> |
| **Sent:** | Wednesday, April 27, 2022 8:05 AM |
| **To:** | Puru.K.Komaravolu@irs.gov; Michael.C.Dunn@irs.gov; John.M.SuhyJr@irs.gov |
| **Subject:** | Article relating to agpl and commons |

https://sfconservancy.org/blog/2022/mar/30/neo4j-v-purethink-open-source-affero-gpl/

1

EGOVS_000210
**SER_1922**

# EXHIBIT 13

SER_1923



☰    **DONATE**    **JOIN**    **VIZIO**    🔍

Home / News

# SFC's Policy Fellow Files Expert Report in Neo4j v. PureThink

## Case about the "further restrictions" removal provision of the AGPLv3 continues after counterclaim filing

February 9, 2023

In the ongoing litigation — Neo4j, Inc. v. PureThink, LLC and John Mark Suhy (5:18-cv-07182) — in U.S. federal court in the Northern District of California, Software Freedom Conservancy (SFC)'s Policy Fellow, Bradley M. Kuhn, will serve as the Defendants' third-party expert on issues related to the AGPLv3. The Defendants' request for Kuhn's expertise comes after months of public discussion about previous preliminary actions in the Neo4j litigation.

As outlined in the Joint Case Management Statement, filed earlier this month, the key issue of concern in the FOSS community remains an unsettled controversy in this case. Specifically, the list of *Legal and Factual Issues That Remain In Dispute* filed with the Court includes: "whether removal of the Common's [sic] Clause on Neo4J Sweden's open source version of Neo4J software … was justified and authorized … based on the then standard application of the terms of the AGPL allowing removal of further restrictions". Furthermore, Defendants note in the same filing that Kuhn's expert report bears heavily on the question of PureThink and Suhy's right to exercise the AGPLv3's "further restrictions" removal clause (found in AGPLv3§7¶4).

As often happens with complex litigation, prior news on this case have led many in the FOSS community to incorrectly believe that the issue of the right to remove the so-called "Commons Clause" when it is attached to AGPLv3 is now a settled question. However, the issue is still not fully litigated. Two weeks ago, Defendants filed their updated counterclaim. In its eighth clause of action, Defendants "request a declaration [from the Court] that the Commons Clause does not prevent PureThink [et al] … from providing professional services to users of the open source versions of Neo4J where the AGPL has a Commons Clause".

SFC, which works to uphold users' rights with copyleft, gladly provides Kuhn's time to serve as an expert on this important issue of users' rights under the AGPLv3. While it is typical for outside experts to receive compensation, Kuhn will serve *pro bono publico* as an expert (with only travel expenses (to appear for depositions and trial) covered by the Defendants). SFC remains deeply concerned at the incorrect claims about AGPLv3§7¶4 that Neo4j has promulgated. SFC is happy to provide Kuhn's time and expertise in this matter.

As always, SFC does its work as transparently as possible. As such, we release today the expert report that Kuhn provided in this case. This expert report not only clears up past confusing and incorrect information promulgated on this matter in the media, but also provides a thorough summary of events leading up to the creation of the "further restrictions" removal provision found in AGPLv3 and GPLv3.

SFC encourages everyone who cares about the rights and freedoms guaranteed by copyleft licenses to review the expert report available here, and to follow the Neo4j case as it proceeds.

Connect with Conservancy on Mastodon, Twitter, Facebook, and YouTube.

Main Page | Contact | Sponsors | Privacy Policy | RSS Feed

Our privacy policy was last updated **22 December 2020**.



This page, and all contents herein, unless a license is otherwise specified, are licensed under a Creative Commons Attribution-ShareAlike 4.0 International License.

# EXHIBIT 14

SER_1926

2/17/23, 11:30 AM AGPLv3 Contains may be key in database legal fight – The Register

# The Register®



DEVOPS

4 💬

# How this database legal war could be decided by the name given to this license

Neo4j v PureThink rumbles on

Thomas Claburn        Sun 12 Feb 2023 // 14:44 UTC

Bradley Kuhn, policy fellow at the Software Freedom Conservancy, claims a California federal court has misinterpreted version 3 of GNU Affero General Public License (AGPLv3) by allowing it to be combined with the Common Clause software license.

Kuhn, who created the Affero clause in the AGPLv1 and co-drafted v3, expects to serve as an expert witness for defendants PureThink and founder John Mark Suhy, who were sued by database biz Neo4j in November 2018, for alleged trademark and competition law violations.

PureThink at the time distributed database software called ONgDB, which was marketed as an open-source licensed version of Neo4j EE.

Neo4j EE is under a combined AGPLv3+Commons Clause license – the Commons Clause modified the APGLv3 by adding a restriction that forbids the sale of the software. However, PureThink offered a forked version of the Neo4j EE database software under the APGLv3 alone, having removed the Commons Clause from its version of the software.

SER_1927

So Neo4j and its Swedish subsidiary sued PureThink and others claiming that they had violated the license terms and had infringed Neo4j's trademarks.

### MORE CONTEXT

Court erred in Neo4j source license ruling, says Software Freedom Conservancy

False advertising to call software open source when it's not, says court

Florida man accused of breaking Mastodon's open-source license with botched social network launch

Someone has to pay to keep the lights so data-viz outfit Grafana switches licence regime to AGPLv3

In May 2021, Neo4j won a partial summary judgment [PDF] when the judge overseeing the case granted the company's request for a temporary injunction based on its trademark and unfair competition claims.

PureThink was enjoined – until the matter can be resolved – from "advertising, promoting, representing or referring to ONgDB as a free and open source drop-in replacement for Neo4j Enterprise Edition" and making false representations about ONgDB to customers.

The US Ninth Circuit Court of Appeals subsequently upheld that injunction, and the case has continued so far.

Among the remaining disputed issues to be resolved, the most important for the Free and Open Source Software (FOSS) community is whether Neo4j's concatenation of the AGPLv3 and Commons Clause is allowed.

Kuhn, in an expert report [PDF] prepared for the case, acknowledges that the AGPLv3 language can be re-mixed and used in another license, as long as that license is not called the

**SER_1928**

AGPLv3. He cites MongoDB's modified AGPLv3 license, referred to as the Server-Side Public License, as an example of how the AGPLv3 can be altered into something that's not a FOSS license.

But if the license is referred to as the AGPLv3, then its Further Restrictions Clause – which allows users of APGLv3 licensed software to remove added licensing terms – should apply. If the court accepts that argument, it would be a significant reversal: PureThink would be allowed to fork Neo4J EE under the AGPLv3.

A trial date has yet to be set but several possibilities in July, 2023, have been proposed. ®

Sponsored: The Roomba approach to tidying up your AWS spend

SER_1929

AGPL: Databases may be key in battle to make the software world more secure • The Register

## SIMILAR TOPICS

4 💬 COMMENTS

Database    FOSS    Neo4j    More like these

---

### Voice.ai denies claim it violated open source software license requirements

Maker of voice changing software says it has removed GPLv3 code "to alleviate any doubt"

DEVOPS                                                             10 days | 11 💬

### The quest to make Linux bulletproof

PART 2 What the big players and an outlier are doing, and why

OSES                                                              1 day | 89 💬

### AWS dragged over lengthy downtime to migrate PostgreSQL DBaaS

Aurora needs a break to get users off 11.x, says cloud giant

DATABASES                                                         3 days | 💬

### AWS Supercharges Amazon RDS at re:Invent 2022

The AWS open-source database commitment

ADVERTORIAL

### FOSS could be an unintended victim of EU crusade to make software more secure

SER_1930

2/17/23, 11:30 AM Case 5:18-cv-07182-EJD AGPLv3 compliance may be a key in damages legal case • The Register Document 181-15 Filed 04/20/23 Page 6 of 8

OPINION Don't throw the open source baby out with the bathwater

OSES                                                                          18 days | 100 🗨

## Open Source Policy Summit: Where FOSS and government meet

FOSDEM Sometimes it takes a war to make people pay attention

APPLICATIONS                                                                   8 days | 8 🗨

## Have we learnt nothing from SolarWinds supply chain attacks? Not yet it appears

From frameworks to new federal offices it's time to get busy

SECURITY                                                                      12 days | 26 🗨

## Core-JS chief complains open source is broken, no one will pay for it

Being in Russia and going to jail might have something to do with it, tho

DEVOPS                                                                         2 days | 60 🗨

## Google's Go may add telemetry that's on by default

Some devs object because they don't trust Mountain View

SOFTWARE                                                                       7 days | 61 🗨

## American jailed for smuggling controlled tech to Iran

30 months in prison for providing, um... enterprise mobile banking software dev tool

LEGAL                                                                          7 days | 11 🗨

## Best time to prepare to leave an Oracle ULA? The day after it starts, say licensing gurus

Big Red 'will always start with a large number and negotiate down'

DATABASES                                                                     16 days | 10 🗨

## VMware turns 25 today: Is it a mature professional or headed back to Mom's house?

SER_1931

2/17/23, 11:30 AM Case 5:18-cv-07182-EJD Document 181-15 Filed 04/20/23 Page 7 of 8 AGPLv3 contention may be key in dataintelligence v. The Register

**SPECIAL FEATURE** Beat Microsoft. Set agendas. Became essential. Hiked prices. Now we wait for Broadcom's reign

VIRTUALIZATION

7 days | 15 ❑



SER_1933

John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff, Bar No. 197241
jratinoff@hopkinscarley.com
Arthur E. Rothrock, Bar No. 312704
arothrock@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA  95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:     (408) 286-9800
Facsimile:      (408) 998-4790

Attorneys for Plaintiffs and Counter-Defendants
NEO4J, INC. and NEO4J SWEDEN AB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,<br><br>Plaintiff,<br><br>v.<br><br>PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | CASE NO.  5:18-cv-07182-EJD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF DEFENDANTS' EXPERT WITNESS BRADLEY M. KUHN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:         July 27, 2023<br>Time:         9:00 AM<br>Dept.         Courtroom 4, 5th Floor<br>Judge:        Hon. Edward J. Davila<br><br>Trial Date: November 14, 2023 |

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4871-5160-8137.5

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF BRADLEY M. KUHN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1934

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 27, 2023, at 9:00 a.m., before the Honorable Edward J. Davila, in Courtroom 4, 5th floor, 280 S. First Street, San Jose, CA 95113, Plaintiffs and Counter-Defendants Neo4j, Inc., and Neo4j Sweden AB ("Plaintiffs") will and hereby do move the Court for an order striking the December 22, 2022 Expert Report of Bradley M. Kuhn served by Defendants and Counterclaimants PureThink LLC, iGov Inc. and John Mark Suhy (collectively "Defendants") and excluding the testimony and opinions of Bradley M. Kuhn identified and expressed therein on both summary judgment and at trial.

This motion is made pursuant to Fed. R. Evid. 702 and 703 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) on the grounds that the opinions Mr. Kuhn expresses in his report fail under the standard set by the Supreme Court in *Daubert* as they are irrelevant, are inadmissible, not helpful to the jury, and not reliably applied to the facts and remaining issue in the case. Mr. Kuhn opines on issues previously decided on summary judgment and affirmed by the Ninth Circuit Court of Appeals, and are thus barred by the law of the case doctrine.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the accompanying Declaration of Jeffrey M. Ratinoff, all pleadings, records and papers on file in this action, and upon such further oral and documentary evidence as may be presented at the hearing on this Motion.

## REQUESTED RELIEF

Plaintiffs respectfully requests that the Court strike the entirety of Mr. Kuhn's December 22, 2022 Expert Report and exclude him from testifying on all opinions express in or contemplated by that report.

## STATEMENT OF ISSUES TO BE DECIDED

1.  Whether Mr. Kuhn's expert report and proposed testimony improperly seeks to relitigate the interpretation of Sections 7 and 10 of the Neo4j Sweden Software License, the interpretation of which was previously decided by this Court and affirmed by the Ninth Circuit.

2.  Whether the law of the case doctrine prohibits Defendants' from offering expert

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4871-5160-8137.5

- 2 -

SER_1935

1    testimony on the interpretation of the Neo4j Sweden Software License and thereby renders Mr.

2    Kuhn's proposed testimony irrelevant to the remaining issues in the case.

3         3.    Whether Mr. Kuhn's opinions are inadmissible because they impinge on the Court's

4    exclusive province of interpreting the contractual language of the Neo4j Sweden Software License.

5         4.    Whether Mr. Kuhn's opinions are inadmissible because he impermissibly opines on

6    and speculates about Defendants' intent, motive and knowledge in removing the Commons Clause

7    from the Neo4j Sweden Software License.

8         5.    Whether Mr. Kuhn's opinions are inadmissible because he impermissibly opines on

9    and speculates about Neo4j Sweden's state of mind at the time it drafted the Neo4j Sweden

10   Software License.

11        6.    Whether Mr. Kuhn seeks to introduce inadmissible hearsay evidence regarding the

12   drafting of the GPLv3 and AGPLv3.

13        7.    Whether the Court should exclude Mr. Kuhn's testimony pursuant to Federal Rule

14   of Evidence 403 because he is acting as an advocate rather than as an independent expert, which

15   will confuse the jury and is more prejudicial than probative.

16        8.    Whether Defendants can offer Mr. Kuhn's testimony to justify filing a motion

17   pursuant to Rule 59(e) for the reconsideration of the Court's summary judgment order.

18

19

20

21

22

23

24

25

26

27

28

4871-5160-8137.5                                                   - 3 -

SER_1936

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND.......................................... 2

   A.   Plaintiffs' Lanham Act, UCL and Digital Millennium Copyright Act Claims ................................................................................................................ 2

   B.   The Court Finds Defendants Engaged in False Advertising.................................. 3

   C.   Defendants Appeal the Summary Judgment and Preliminary Injunction.............. 3

   D.   Defendants Seek to Circumvent the Ninth Circuit's Affirmation of this Court's Interpretation of the Neo4j Sweden Software License via Purported Expert Testimony from Bradley M. Kuhn .............................................................. 3

   E.   Defendants Refuse to Voluntarily Withdraw Mr. Kuhn's Report ......................... 5

III. APPLICABLE LEGAL STANDARDS .................................................................... 6

IV.  ARGUMENT ............................................................................................................... 7

   A.   The Law of the Case Doctrine Bars Defendants From Using Expert Testimony to Relitigate Whether Sections 7 and 10 of the Neo4j Sweden Software License Permitted Defendants to Remove the Commons Clause .......... 7

   B.   Mr. Kuhn Cannot Opine on the Meaning of Contractual Provisions................... 13

   C.   Mr. Kuhn's Opinions on Defendants' State of Mind is Inadmissible.................. 14

   D.   Mr. Kuhn Improperly Speculates on Neo4j Sweden's State of Mind.................. 15

   E.   Mr. Kuhn's Report Seeks to Introduce Inadmissible Hearsay Evidence............. 17

   F.   Mr. Kuhn is Acting as an Advocate Rather than an Independent Expert ............ 18

   G.   Defendants Cannot Use Mr. Kuhn's Opinion to Bolster a FRCP 59(e) Motion .................................................................................................................. 19

V.   CONCLUSION ......................................................................................................... 21

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4871-5160-8137.5

- i -

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF BRADLEY M. KUHN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AMTAX Holdings 279, LLC v. Montalvo Assocs.*,
   LLC, 2022 WL 2784456 (S.D. Cal. June 6, 2022) ................................ 13

*Aquino v. Cnty. of Monterey Sheriff's Dep't*,
   No. 5:14-CV-03387-EJD, 2018 WL 3845718 (N.D. Cal. Aug. 12, 2018) ............................ 12

*Arista Networks, Inc. v. Cisco Sys. Inc.*,
   No. 16-CV-00923-BLF, 2018 WL 8949299 (N.D. Cal. June 15, 2018) ........................ 15, 16

*Backlund v. Barnhart*,
   778 F.2d 1386 (9th Cir. 1985) .................................................. 20

*CZ Servs., Inc. v. Express Scripts Holding Co.*,
   No. 3:18-CV-04217-JD, 2020 WL 4518978 (N.D. Cal. Aug. 5, 2020) .................................... 7

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ................................................ 6, 7, 16, 18, 21

*Dolby Labs. Licensing Corp. v. Adobe Inc.*,
   No. 18-CV-01553-YGR, 2019 WL 6327210 (N.D. Cal. Nov. 26, 2019) ........................ 13, 14

*Exxon Shipping Co. v. Baker*,
   554 U.S. 471 (2008) .................................................. 20

*Garcia v. Biter*,
   195 F. Supp. 3d 1131 (E.D. Cal. 2016) .................................................. 20

*Herrington v. County of Sonoma*,
   12 F.3d 901 (9th Cir. 1993) .................................................. 7, 12

*Ins. Grp. Comm. v. Denver & R. G. W. R. Co.*,
   329 U.S. 607 (1947) .................................................. 12

*Interior Glass Sys., Inc. v. United States*,
   No. 5:13-CV-05563-EJD, 2017 WL 1153012 (N.D. Cal. Mar. 28, 2017) ............................ 21

*Kona Enters., Inc. v. Estate of Bishop*,
   229 F.3d 877 (9th Cir. 2000) .................................................. 20

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) .................................................. 6, 7

*Lust v. Merrill Dow Pharma., Inc.*,
   89 F.3d 594 (9th Cir. 1996) .................................................. 7

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4871-5160-8137.5                                    - ii -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF BRADLEY M.
KUHN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

**TABLE OF AUTHORITIES**
(continued)

Page

*Magadia v. Wal-Mart Assocs., Inc.*,
  2018 WL 6003376 (N.D. Cal. Nov. 15, 2018)................................................ 12

*MAI Sys. Corp. v. Peak Computing, Inc.*,
  991 F.2d 511 (9th Cir. 1993)......................................................................... 12

*Marvel Characters, Inc. v. Kirby*,
  726 F.3d 119 (2d Cir. 2013).......................................................................... 18

*McHugh v. United Serv. Auto. Ass'n*,
  164 F.3d 451 (9th Cir. 1999)......................................................................... 13

*Miranda v. U.S. Sec. Assocs., Inc.*,
  No. 18-CV-00734-LHK, 2019 WL 2929966 (N.D. Cal. July 8, 2019) ................................. 12

*Nationwide Transport Fin. v. Cass Info. Sys., Inc.*,
  523 F.3d 1051 (9th Cir. 2008)............................................................ 13, 15, 17

*Neo4j, Inc. v. Graph Found., Inc.*,
  No. 5:19-CV-06226-EJD, 2020 WL 6700480 (N.D. Cal. Nov. 13, 2020) ...................... 3, 11

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  No. 16-CV-01393-JST, 2018 WL 6511146 (N.D. Cal. Dec. 11, 2018) ............................... 15

*In re Rezulin Products Liab. Litigation*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004)............................................................ 18

*Richardson v. United States*,
  841 F.2d 993 (9th Cir. 1988).......................................................................... 7

*Rissetto v. Plumbers and Steamfitters Local 343*,
  94 F.3d 597 (9th Cir. 1996)........................................................................... 11

*SA Music LLC v. Apple, Inc.*,
  592 F. Supp. 3d 869 (N.D. Cal. 2022) ....................................................... 15, 17

*Sec. Inv. Prot. Corp. v. Vigman*,
  74 F.3d 932 (9th Cir. 1996)............................................................................. 8

*Tessera, Inc. v. Toshiba Corp.*,
  No. 15-CV-02543-BLF, 2019 WL 5395158 (N.D. Cal. Oct. 22, 2019)...................... 15, 17

*United States v. King Features Ent., Inc.*,
  843 F.2d 394 (9th Cir. 1988)......................................................................... 11

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4871-5160-8137.5                                                           - iii -

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF BRADLEY M.
KUHN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

**TABLE OF AUTHORITIES**
(continued)

Page

*United States v. Park Place Assoc.*,
 563 F.3d 907 (9th Cir. 2009)...................................................................................................... 7

*United States v. Shafi*,
 No. 15-CR-00582-WHO-1, 2018 WL 3159769 (N.D. Cal. June 28, 2018) .......................... 18

*White v. California*,
 No. 5:15-CV-03521-EJD, 2017 WL 4642571 (N.D. Cal. Oct. 17, 2017) ....................... 20, 21

**Statutes**

15 U.S.C. § 1114(1) ...................................................................................................................... 2

15 U.S.C. § 1125(a) ...................................................................................................................... 2

17 U.S.C. § 1202 ................................................................................................................. 2, 3, 15

**Other Authorities**

Ninth Circuit Rule 36-3 ............................................................................................................... 12

Fed. R. Civ. Proc. 59 .................................................................................................................... 6

Fed. R. Civ. Proc. 59(e) ..................................................................................... 1, 11, 20, 21

Fed. R. Evid. 403 .............................................................................................................. 18, 21

Fed. R. Evid. 702 ........................................................................................................ 6, 18, 21

Fed. R. Evid. 703 ........................................................................................................ 17, 21

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4871-5160-8137.5

- iv -

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF BRADLEY M.
KUHN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  INTRODUCTION**

Defendants PureThink LLC, iGov Inc. and John Mark Suhy (collectively "Defendants") have disclosed Bradley Kuhn as a purported expert who will opine on: (1) the meaning of the provisions in the Neo4j Sweden Software License and the propriety of Defendants' removal of the Commons Clause from that license as a "further restriction;" (2) Defendants' purported understanding of Section 7 of that license was "reasonable, customary, in good faith, and correct;" (3) Defendants "acted in a reasonable, customary, good faith, and correct manner" when removing Commons Clause from the Neo4j Sweden Software License as a "further restriction;" and (4) Neo4j should have expected the Commons Clause to have been removed based on the same.  Defendants claim that they are entitled to offer his testimony to justify revisiting the Court's summary judgment order under Federal Rule of Civil Procedure 59(e) ("Rule 59(e)").  However, Mr. Kuhn's testimony amounts to an improper attempt by Defendants to seek a *third* bite at the apple.

This Court previously determined that Sections 7 and 10 of the Neo4j Sweden Software License *precluded* the removal of the Commons Clause.  Defendants agreed this issue could be decided as a matter of law and ultimately lost that argument on summary judgment. Mr. Kuhn's report parrots Defendants' incorrect interpretation of that license under the guise of "industry custom" and that Suhy's removal of the Commons Clause mirrored his understanding thereof.  In doing so, Mr. Kuhn exclusively relies on "evidence" that was available to Defendants at the time of summary judgment.  Defendants thus cannot use his proposed testimony to circumvent the law of the case doctrine, which precludes revisiting an issue previously decided by a higher court in the same case.  Likewise, they cannot use a Rule 59(e) motion to re-litigate old matters by raising arguments or presenting evidence that they could have raised in opposition to Plaintiffs' prior summary judgment motion.

Even if the meaning of the relevant provisions in the Neo4j Sweden Software License were not settled law of the case, Mr. Kuhn's opinions would still be inadmissible because his opinions all hinge on the interpretation of Section 7 of that license.  The Ninth Circuit has made clear that an expert witness cannot opine on the legal meaning of contracts as written.  It is also settled law

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4871-5160-8137.5                                                                                                    - 1 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF BRADLEY M. KUHN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1941

1    that an expert may not opine or speculate regarding a party's mental state, such as intent, motive,

2    or knowledge.  Consequently, his opinions on Suhy's purported good-faith belief in removing the

3    Commons Clause is inadmissible.  For the same reason, Mr. Kuhn's opinions about Neo4j

4    Sweden's reasons for creating the Neo4j Sweden Software License and using the Commons Clause

5    amounts to inadmissible gross speculation.

6          Finally, allowing Mr. Kuhn to testify would confuse the jury and would be prejudicial to

7    Plaintiffs because Mr. Kuhn is not a qualified expert.  Rather, he is admittedly an open source

8    software advocate that has been a vocal critic of this Court's interpretation of Neo4j Sweden

9    Software License.  This is evident from an April 2022 online article Mr. Kuhn authored expressing

10    his displeasure with the Ninth Circuit's affirmation of it.  He has also made his expert report

11    publicly available on the internet via an open source advocacy website in a thinly veiled attempt to

12    taint the jury pool.  Accordingly, the Court should strike Mr. Kuhn's improper and inadmissible

13    report and preclude him from testifying on the matters discussed therein at trial.

14    **II.**      **FACTUAL AND PROCEDURAL BACKGROUND**

15         **A.**      **Plaintiffs' Lanham Act, UCL and Digital Millennium Copyright Act Claims**

16          In this lawsuit, Plaintiffs assert Lanham Act claims against Defendants for trademark

17    infringement, false advertising and false designation of origin claims under the Lanham Act

18    (15 U.S.C. §§ 1114(1), 1125(a)) and mirror claims under California's Unfair Competition Law

19    (UCL).  See, generally, Dkt. No. 90.  Plaintiffs based these claims, in part, on Defendants' improper

20    use of the NEO4J mark and falsely promoting ONgDB as a "free and open source" versions of or

21    alternatives to commercially licensed Neo4j EE.  *See id.*, ¶¶ 99-133.

22          Plaintiffs also assert a claim against Defendants under Section 1202(b) of the Digital

23    Millennium Copyright Act (DMCA).  *See* Dkt. No. 90, ¶¶ 166-173.  Plaintiffs base their DMCA

24    claim on Defendants' removal of the Commons Clause from the Neo4j Sweden Software License,

25    as well was the removal and alteration of Neo4j Sweden's CMI in at least 28 separate source code

26    files.  *See id.*, ¶¶ 45, 68, 76-78, 112-115, 166-173.  Defendants also violated the DMCA by

27    promoting and distributing altered versions of Neo4j® graph database platform with the knowledge

28    that doing so would induce, enable, facilitate, or conceal an infringement of Neo4j Sweden's rights

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4871-5160-8137.5        - 2 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF BRADLEY M.
KUHN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1942

1    under the DMCA.  *See id.*

2    **B.     The Court Finds Defendants Engaged in False Advertising**

3    After Phase 1 of this case, Neo4j USA moved for summary judgment on its Lanham Act

4    and mirror claims under the UCL.  On May 18, 2021, the Court granted the motion.  *See* Dkt. No.

5    118.  The Court held, *inter alia*, that Defendants' statements and advertisements - that ONgDB was

6    a free and open source version of Neo4j® EE with no limitations or restrictions - were false and

7    misleading.  *See* Dkt. No. 118 at 22:23-28:24.  The Court necessarily interpreted Sections 0, 7 and

8    10 of the Neo4j Sweden Software License to conclude that Defendants had engaged in false

9    advertising by wrongfully removing the Commons Clause and promoting ONgDB as free and open

10   source Neo4j® EE. *Id.* at 24:7-25:19 (citing *Neo4j, Inc. v. Graph Found., Inc.*, No. 5:19-CV-06226-

11   EJD, 2020 WL 6700480, at *4 (N.D. Cal. Nov. 13, 2020)).  Along with granting the motion, the

12   Court issued a preliminary injunction prohibiting Defendants from engaging in such false

13   advertising. Dkt. No. 118 at 32:16-36:5

14   **C.     Defendants Appeal the Summary Judgment and Preliminary Injunction**

15   On June 16, 2021, Defendants sought immediate appellate review of this Court's May 18,

16   2021 order.  *See* Dkt. No. 121.  After extensive briefing by the parties, the Ninth Circuit issued a

17   Memorandum Disposition affirming summary judgment for Plaintiffs and the issuance of the

18   preliminary injunction on February 18, 2022. Dkt. No. 140.  Defendants then unsuccessfully sought

19   a rehearing, which resulted in the Ninth Circuit making minor amendments to its Memorandum

20   Disposition and issuing a formal mandate on March 22, 2022.  Dkt. Nos. 141-142.

21   **D.     Defendants Seek to Circumvent the Ninth Circuit's Affirmation of this
22            Court's Interpretation of the Neo4j Sweden Software License via Purported
         Expert Testimony from Bradley M. Kuhn**

23   On December 22, 2022, Defendants served the Export Report of Bradley M. Kuhn, which

24   "primarily discusses the issues of the removal of the Commons Clause ("CC") from the 'Neo4j

25   Sweden Software License' and Suhy's and/or PureThink, LLC's and/or IGOV, Inc.'s redistribution

26   of the Neo4j software under the AGPLv3 with CC removed."  Declaration of Jeffrey M. Ratinoff

27   ("Ratinoff Decl."), Ex. 1 ("Kuhn Report").

28   Mr. Kuhn claims to be an "expert" in "interpreting the requirements and details of [free and

4871-5160-8137.5                               - 3 -

1   open source software] licenses."  Kuhn Report, ¶ 13.  Yet Mr. Kuhn is not a licensed attorney nor

2   has he ever attended law school.  Rather, his qualifications mainly consist of: (1) an undergraduate

3   and graduate computer science degree [*id.*, ¶ 6, 11]; (2) working as a computer programmer [*id.*,

4   ¶¶ 7-11]; (3) "work related to software licensing and compliance with the [GPL] … and other

5   related and similar licenses" at the Free Software Foundation, Inc. ("FSF") between 2000 and 2005,

6   as well as serving on its board between 2010 and 2019 [*id.*, ¶¶ 12-16, 19 and Exhibit I]; and (4) a

7   founder and the president of the Software Freedom Conservancy ("SFC"), which "promotes and

8   defends these rights through fostering free and open source software (FOSS) projects, driving

9   initiatives that actively make technology more inclusive, and advancing policy strategies that

10  defend FOSS (such as copyleft)" [*id.*, ¶¶ 4, 17  and Exhibit I].

11        Mr. Kuhn also claims to have participated first-hand in a public process to comment on,

12  evaluate, and make suggestions for the new version of the GPL (version 3). Kuhn Report, ¶¶ 18, 21.

13  While not one of the actual authors of the GPLv3, he allegedly had discussions with unidentified

14  persons responsible for drafting the GPLv3.  *Id., ¶* 23.  Though Mr. Kuhn's prior departure from

15  the FSF meant he did not play an active role in the drafting of the AGPLv3, he claims that he is the

16  author of its Section 13 – an irrelevant provision related to remote network interaction.  *See id.,*

17  ¶¶ 21-26.

18        Mr. Kuhn further claims to be an "expert" on the issue of "further restrictions" in copyleft

19  licenses.  *See id., ¶¶* 27-28.  This is based on moderating "community discussions" about the

20  imposition of non-military use restrictions with the GPLv2, which was later replaced by the

21  aforementioned GPLv3.  *See id., ¶¶* 34-42.  Mr. Kuhn also cites to his participation in the public

22  drafting process for the GPLv3 and the FSF's collection of anonymous comments on a least three

23  drafts that took place between January 2006 and November 2007. *See id., ¶¶* 44-50.  Citing to

24  specific comments on these drafts, Mr. Kuhn then summarizes his recollection of the evolution of

25  the "further restrictions" clause in Section 7 of the GPLv3 through this process.  *See id., ¶¶* 51-59.

26        Mr. Kuhn finally concludes that the community discussions about drafts of the GPLv3 are

27  somehow relevant to the AGPLv3 since it contains the same "further restrictions" clause, and

28  / / /

SER_1944

conclude[s] based on these documents, plus my recollection of the GPLv3 and AGPLv3 drafting process in which I participated, and my extensive work with the FSF and SFC in copyleft licensing, that the Further Restrictions Clause [in Section 7] was specifically design to allow removal of an additional term when a licensor chose to use the text of the GPLv3 and/or AGPLv3 along with a term that the licensee viewed as a "Further Restriction".

Kuhn Report, ¶ 61.  Mr. Kuhn then provides additional opinions based on his interpretation of this clause as it appears in the Neo4j Sweden Software License, of which he has no knowledge regarding Neo4j Sweden's drafting thereof.   Without citing to any facts documents or evidence produced in the underlying action, Mr. Kuhn further speculates that Neo4j Sweden would violate the APGLv3 if it failed to obtain permission from contributors to the source code licensed under Neo4j Sweden Software License.  *See* Kuhn Report, ¶¶ 99-107, 113.

### E.  Defendants Refuse to Voluntarily Withdraw Mr. Kuhn's Report

On January 13, 2023, Plaintiffs sent a letter requesting that they withdraw Mr. Kuhn's report.  *See* Ratinoff Decl., Ex. 2.  In particular, Plaintiffs explained that Defendants' attempt to use Mr. Kuhn's "expert opinions" to reargue that Section 7 of the Neo4j Sweden Software License permitted the removal of the Commons Clause violated the law of the case doctrine.  *Id.*  This was a settled issue as confirmed by the Ninth Circuit's affirmation of the Court's interpretation of Sections 7 and 10 in granting summary judgment on Plaintiffs' false advertising claim.  *Id.*

Plaintiffs also explained that controlling authority makes clear that Mr. Kuhn's proposed testimony was inadmissible because contractual interpretation is a question of law—one that the Court again correctly determined as affirmed by the Ninth Circuit.  *See* Ratinoff Decl., Ex. 2. Likewise, his proposed testimony on Suhy's  the state of mind at the time he removed the Commons Clause was inadmissible because courts in the Ninth Circuit have held that expert  testimony about the state of mind and/or intent of a party is inadmissible.  For this same reason, Mr. Kuhn's proposed testimony about Neo4j Sweden's intent, motive, and knowledge at the time it created the Neo4j Sweden Software License was speculative and inadmissible. Finally, Plaintiffs warned Defendants that attempting to offer Mr. Kuhn's testimony would constitute an improper end-around of a dispositive ruling in the case.  This was not the first time that Defendants ignored the law of the

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4871-5160-8137.5                                                    - 5 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF BRADLEY M. KUHN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1945

1    case doctrine in an attempt to revive a claim or defense that had been subject to a dispositive ruling.[1]

2    *See* Dkt. No. 110 at 6:6-7:12.

3         On January 20, 2023, Defendants sent a letter in response where they refused to withdraw

4    Mr. Kuhn's report.  *See* Ratinoff Decl., Ex. 3. Their refusal was primarily based on ignoring the

5    Ninth Circuit affirming the Court' summary judgment order, and then mischaracterizing it as an

6    interlocutory order that was not subject to the law of case.  Defendants also argued that because

7    partial summary judgments are interlocutory orders and the interpretation of Section 7 was "not

8    fully litigated," they could offer Mr. Kuhn's testimony at trial and file a post-trial motion under

9    FRCP 59.  Yet they addressed ***none*** of the controlling authority to the contrary.

10        Defendants even ***confirmed*** that they intended to offer Mr. Kuhn's testimony to establish

11   that "Mr. Suhy was ***legally correct*** in removing the terms as the AGPL provides."  *See* Ratinoff

12   Decl., Ex. 3 (emphasis added).  This was a remarkable admission given that Plaintiffs pointed

13   Defendants to controlling Ninth Circuit case law that made clear that Mr. Kuhn opinions on the

14   interpretation of the Neo4j Sweden Software License were clearly inadmissible.  Defendants also

15   ignored the express language of Mr. Kuhn's report and claimed that he was not opining on the state

16   of mind of either Plaintiffs or Suhy.  Plaintiffs thus had no other option than to file this motion.

17   **III.    APPLICABLE LEGAL STANDARDS**

18        Rule 702 of the Federal Rules of Evidence requires that district court act as a "gatekeeper"

19   to ensure that proposed expert testimony are valid and reliable, and will "assist the trier of fact to

20   understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc.*,

21   509 U.S. 579, 590-91, 597 (1993) (quoting FRE 702).  This gatekeeping function "applies not only

22   to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other

23   specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  Ultimately,

24   the objective of *Daubert* is "to make certain that an expert, whether basing testimony upon

25   _____

26   [1] As detailed in Plaintiff's previously filed motion to dismiss (Dkt. No. 172), Defendants have
     engaged in a pattern and practice of disregarding the Court's directives and ignoring controlling
27   Ninth Circuit authority in attempt to maintain what are clearly frivolous legal theories and claims.
28   *See* Dkt. No. 110 at 6:5-7:12.

1    professional studies or personal experience, employs in the courtroom the same level of intellectual

2    rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.  Expert testimony

3    is only admissible if the expert is testifying as to knowledge of the "relevant discipline," which in

4    turn must be more than "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 589-

5    590; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

6          Relevance is as much a precondition of admissibility as reliability. Expert testimony must

7    be "relevant to be admissible." *Daubert*, 509 U.S. at 589.  "Expert testimony which does not relate

8    to any issue in the case is not relevant and, ergo, non-helpful." *Id.* at 590-91. The testimony must

9    "fit" the case, and be tied to the claims and facts in a way that helps the jury decide the parties'

10   dispute. *Id.*; *accord CZ Servs., Inc. v. Express Scripts Holding Co.*, No. 3:18-CV-04217-JD, 2020

11   WL 4518978, at *1 (N.D. Cal. Aug. 5, 2020) (citing same). The party seeking to admit expert

12   testimony bears the burden of proving that the proffered testimony of its expert is admissible.

13   *Daubert*, 509 U.S. at 592 fn 10; *accord Lust v. Merrill Dow Pharma., Inc.*, 89 F.3d 594, 598 (9th

14   Cir. 1996).

15   **IV.    ARGUMENT**

16          **A.    The Law of the Case Doctrine Bars Defendants From Using Expert
                Testimony to Relitigate Whether Sections 7 and 10 of the Neo4j Sweden**

17               **Software License Permitted Defendants to Remove the Commons Clause**

18          Mr. Kuhn's proposed expert testimony is irrelevant to the remaining issues here because it

19   relates to matters that were decided on summary judgment and affirmed by the Ninth Circuit in

20   Phase 1 of this action.  Under the law of the case doctrine, "when a court decides upon a rule of

21   law, that decision should continue to govern the same issues in subsequent stages in the same case."

22   *United States v. Park Place Assoc.*, 563 F.3d 907, 925 (9th Cir. 2009); *see also Richardson v.*

23   *United States*, 841 F.2d 993, 996 (9th Cir. 1988) ("Under the 'law of the case' doctrine, a court is

24   ordinarily precluded from reexamining an issue previously decided by the same court, or a higher

25   court, in the same case.").   Further*,* "[t]he law of the case doctrine states that the decision of an

26   appellate court on a legal issue must be followed in all subsequent proceedings in the same case."

27   *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) (internal quotations omitted).

28   A party also cannot "offer up successively different legal or factual theories that could have been

4871-5160-8137.5                                          - 7 -

1   presented in a prior request for review." *Sec. Inv. Prot. Corp. v. Vigman*, 74 F.3d 932, 937 (9th

2   Cir. 1996) (quotations and citations omitted).  Defendants violate these principles by offering Mr.

3   Kuhn as a purported expert witness in an effort to re-litigate whether Section 7 of the Neo4j Sweden

4   Software License authorized their removal the Commons Clause.

5        Mr. Kuhn's opinions are premised on his layperson view of the language in Section 7 of the

6   Neo4j Sweden Software License (derived from the AGPLv3), which he calls the "Further

7   Restriction Clause," and the propriety of Defendants' removal of the Commons Clause as a "further

8   restriction."  *See, e.g.,* Kuhn Report, ¶ 61 ("the Further Restrictions Clause [in Section 7] was

9   specifically design [sic] to allow removal of an additional term when a licensor chose to use the

10  text of the GPLv3 and/or AGPLv3 along with a term that the licensee viewed as a 'Further

11  Restriction'").

12       The excerpts below from Mr. Kuhn's report reaffirms that he is providing his interpretation

13  of Section 7 of the Neo4j Sweden Software License under the guise of "industry custom" and that

14  Mr. Suhy's removal of the Commons Clause from the Neo4j Sweden Software License aligns with

15  his understanding thereof:

16       In my professional opinion, the Neo4j Sweden Software License is structured
         and presented precisely in the manner that the Further Restrictions Clause
17       anticipated.

18       Specifically, I believe that the AGPLv3 contemplated this precise situation:
         namely, a licensor licenses under the unmodified text of the AGPLv3, but also
19       includes another term that contradicts, limits, and/or restricts the permissions
         granted under the AGPLv3.
20
         If I had encountered the "Neo4j Sweden Software License" during the normal
21       course of my work as a FOSS activist and FOSS licensing expert, I would have
         felt removal of the [Commons Clause], upon redistribution of the software, was
22       permitted by the AGPLv3's Further Restrictions Clause.

23       In my opinion, when John Mark Suhy encountered the Neo4j Sweden Software
         License, his removal of the [Commons Clause] and redistribution of the
24       Covered Work under pure AGPLv3 would be considered customary,
         permissible, and even widely encouraged in the field of FOSS.
25

26  Kuhn Report, ¶¶ 72-74. The rest of Mr. Kuhn's report is replete with opinions and conclusions

27  based on his personal and unqualified interpretation of Section 7:

28  / / /

- In my professional opinion, the Neo4j Sweden Software License is structured and presented precisely in the manner that the Further Restrictions Clause anticipated. Kuhn Report, ¶ 75.

- "In my opinion, the Neo4j Sweden Software License itself gave Suhy, PureThink, LLC, and IGOV, Inc. this permission explicitly. Specifically, even if one firm is the only copyright holder and therefore sole licensor of the work…." *Id.*, ¶ 76

- "In my opinion … any reasonable party would determine that the Neo4j Sweden Software License intends — given that it was intentionally drafted to include the Further Restrictions Clause — that the [Commons Clause] can be removed by anyone who engages in redistribution [] of the software covered by the Neo4j Sweden Software License." *Id.* at ¶ 78.

- "Therefore, if a license that has the full text of the unmodified AGPLv3, users and/or redistributors have a good faith basis to exercise any and all clauses of the AGPLv3 — including the Further Restrictions Clause and its permission to strike and remove additional restriction clauses." *Id.* at ¶ 89.

- "In my opinion … the Neo4j Sweden Software License was structured and promoted to give users the incorrect impression that the [Commons Clause] could not be removed from those terms — even though the Further Restrictions Clause was present." *Id.* at ¶ 97.

- "In my opinion, there is widespread understanding in the FOSS community of the purpose and function of the Further Restrictions Clause. As such, Suhy acted in a reasonable, customary, good faith, and correct manner when removing [Commons Clause] from the Neo4j Sweden Software License and licensing the software under AGPLv3 to his customers and/or the public." *Id.* at ¶ 110.

- "In my opinion, it is reasonable, customary, in good faith, and correct for redistributors to believe that the Neo4j Sweden Software License intentionally included the Further Restrictions Clause. The authors of the Neo4j Sweden Software License should have expected that the Further Restrictions Clause would be used to remove [Commons Clause] from the Neo4j Sweden Software License." *Id.* at ¶ 112.

The trial court and appellate record here makes clear that the parties fully and conclusively litigated the meaning of "further restrictions" within the context Neo4j Sweden Software License as a whole. *See* Dkt. No. 98 at 30:19-31:9; Dkt. No. 100 at 27:18-30:16; Dkt. No. 109 at 18:13-22:3. In particular, Plaintiffs argued on summary judgment:

The Neo4j Sweden Software License did not permit Defendants to remove the commercial restrictions imposed by the Commons Clause and replace that license with a "pure" AGPL. This is confirmed by the plain language of the license. Section 10 states: "You may not impose any further restrictions on the exercise of rights granted or affirmed under this License." Rathle Decl., Ex. 3. Section 7 states: "[i]f the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4871-5160-8137.5                                     - 9 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF BRADLEY M. KUHN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1949

1    further restriction, you may remove that term." *Id.* Importantly, the AGPLv3
2    defines "you" as the licensee, not the licensor. *Id.*, Ex. 3 at § 0 ("Each licensee
     is addressed as 'you'"). Thus, read correctly, Sections 7 and 10 did not prohibit
3    Neo4J Sweden as the copyright holder and licensor from adding the Commons
     Clause. *See* GFI Dkt. No. 88 at 5:23-8:9.

4    Dkt. No. 98 at 30:19-28.

5         In their opposition and cross-motion for summary judgment, Defendants argued:

6         the Neo4J Sweden Software License defines "you" as the "licensee." Neo4J
7         Sweden Software License, Section 0 ("Each licensee is addressed as 'you'.)

8                                    * * *

9         Section 7 of the Neo4J Sweden Software License states: "If the Program as you
          received it, or any part of it, contains a notice stating that it is governed by this
10        License along with a term that is a further restriction, you may remove that
          term." Neo4J Sweden Software License, Section 7. Substituting the matching
11        language for the defined terms in this provision, Section 7 of the Neo4J [sic]
          Sweden Software License states: "If the Program as [GFI] received it, or any
12        part of it, contains a notice stating that it is governed by [the AGPLv3 license]
          along with a term that is a further restriction, [GFI] may remove that term."

13        The Neo4J Sweden Software License states that the software is "subject to the
          terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3, with
14        the Commons Clause . . ." Therefore, the Neo4J Sweden Software License has
          a notice stating that the software is governed by the AGPLv3 license plus a
15        further restriction, i.e. the Commons Clause. Because the Neo4J software, i.e.
          "the Program", contained a notice stating that it is governed by "this License"
16        (the AGPLv3 license) along with a term that is a further restriction (the
          Commons Clause), then, under Section 7, GFI as the licensee, i.e. "you", may
17        remove that term. Removal of the Commons Clause is expressly permitted
          under the terms of the Neo4J Sweden Software License.

18                                   * * *

19        Sweden chose to control is license under the AGPL license model. And, the
20        AGPL, by its terms, allows a licensee to remove restrictive terms. If Sweden
          did not want the Common Clause removed, they could have used a different
21        license form. They chose to use the well-known AGPL license form and USA
          cannot complain of the impact of the terms Sweden choose.

22

23   Dkt. No. 100 at 28:15-29:7, 30:9-16.

24        The Court held this was an issue of contractual interpretation properly decided as a matter

25   of law on summary judgment because "*[t]he parties agree* that the truth or falsity of Defendants'

26   statements hinge on 'the interpretation of Section 7 [of the Neo4j Sweden Software License], and

27   / / /

28   / / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4871-5160-8137.5                              - 10 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF BRADLEY M.
KUHN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1950

1    GFI's right to remove the Commons Clause from the Neo4j Sweden Software License.'" [2]  Dkt.

2    No. 118 at 24:10-15 (quoting Defendants' cross-motion, emphasis added).  The Court then

3    considered Defendants' arguments and rejected them: "Defendants argue that there is a reasonable

4    interpretation of the Neo4j Sweden Software License that permits licensees, like GFI or

5    Defendants, to remove the Commons Clause and redistribute the software under the standardized

6    AGPL license. Cross-Motion at 27-30. The Court disagrees." *Id.* at 24:7-25:12.

7         The Court agreed with Plaintiff's interpretation of relevant provisions of Neo4j Sweden

8    Software License, and reiterated that

9         Neither of the two provisions in the form AGPLv3 that Defendants point to give
10        licensees the right to remove [the Commons Clause]. Section 10 of the
         AGPLv3, which is incorporated into the Neo4J Sweden Software License,
11        states: "You may not impose any further restrictions on the exercise of rights
         granted or affirmed under this License." . . . Section 7 states: "[i]f the Program
12        as you received it, or any part of it, contains a notice stating that it is governed
         by this License along with a term that is a further restriction, you may remove
13        that term." [] Defendants argue that these provisions mean that "there can be no
         liability for removing the further licensing restrictions which Neo4j
14        incorporated into the license," namely the Commons Clause. [] As Plaintiffs
         point out, however, the AGPLv3 defines "you" as the licensee, not the licensor.
15        Ex. 1 at § 0 ("Each licensee is addressed as 'you'"). Thus, read correctly,
         Sections 7 and 10 prohibit a licensee from imposing further restrictions, but do
16        not prohibit a licensor from doing so.

17    Dkt. No. 118 at 25:16-19 (quoting *Neo4j, Inc. v. Graph Found., Inc.*, No. 5:19-CV-06226-EJD,

18    2020 WL 6700480, at *4 (N.D. Cal. Nov. 13, 2020)).

19         Defendants did not wait until the conclusion of this case to file a motion pursuant to

20    Rule 59(e) and then file an appeal.  Rather, Defendants made a strategic decision to use the Court's

21    

22    [2] This is consistent with the long-recognized principle that "[s]ummary judgment is appropriate

23    when the contract terms are clear and unambiguous, even if the parties disagree as to their

24    meaning." *United States v. King Features Ent., Inc*., 843 F.2d 394, 398 (9th Cir. 1988).  Defendants

25    are also judicially estopped from taking a contrary position that the Court could not make that

26    determination on summary judgment simply because they did not like the outcome resulting from

27    their prior position.  *See Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th

28    Cir. 1996) (doctrine of judicial estoppel "precludes a party from gaining an advantage by taking

     one position, and then seeking a second advantage by taking an incompatible position").

4871-5160-8137.5                              - 11 -

1   issuance of a preliminary injunction as a means to obtain immediate appellate review, *inter alia*, as

2   to whether the provisions of the Neo4j Sweden Software License permitted Defendants to remove

3   the Commons Clause as a further restriction.  To be sure, Defendants' opening appellate brief

4   characterized the underlying legal and factual basis of this Court's interpretation of the provisions

5   of Neo4j Sweden Software License as being "'inextricably bound up' with its legal resolution of

6   the summary judgment" and therefore sought ***de novo review*** thereof.  *See* Ratinoff Decl., Ex. 4

7   at 17 (citing to *MAI Sys. Corp. v. Peak Computing, Inc.*, 991 F.2d 511, 516 (9th Cir. 1993) and

8   arguing that "the court's preliminary injunction is 'inextricably bound up' with its legal resolution

9   of the summary judgment; this Court therefore exercises plenary review."); *see also id.* at 8, fn 3

10  ("The propriety of adding the Commons Clause to the AGPL license was a matter of dispute and

11  is discussed further in the Argument").

12        The correctness of this Court's interpretation of the relevant provisions of the Neo4j Sweden

13  Software License was the subject of extensive briefing by the parties before the Ninth Circuit.

14  Ratinoff Decl., Ex. 4 at 36-40; Ex. 5 at 47-54; Ex. 6 at 15-17.  The Ninth Circuit then ***expressly***

15  ***affirmed*** that "Defendants' representation that ONgDB is a 'free and open-source' version of

16  Neo4j® EE was literally false, because ***Section 7 of the Sweden Software License only permits a***

17  ***downstream licensee to remove 'further restrictions' added by an upstream licensee to the***

18  ***original work***."  Dkt. No. 140 at 3 (emphasis added).  The Ninth Circuit also removed all doubt as

19  to the conclusiveness of its decision by indicating that the opinion was precedential for the purpose

20  of the doctrine of law of the case "as provided by Ninth Circuit Rule 36-3."  *See id.* at 1.

21        Defendants' attempt to offer testimony from Mr. Kuhn on the meaning of Section 7 is thus

22  a blatant violation of the law of the case doctrine.  It is beyond inappropriate for Defendants to ask

23  this Court to ignore the Ninth Circuit affirming its interpretation of the Neo4j Sweden Software

24  License. *See Herrington*, 12 F.3d at 904; *accord Aquino v. Cnty. of Monterey Sheriff's Dep't*, No.

25  5:14-CV-03387-EJD, 2018 WL 3845718, at *1 (N.D. Cal. Aug. 12, 2018) (citing same); *see also*

26  *Ins. Grp. Comm. v. Denver & R. G. W. R. Co.*, 329 U.S. 607, 612 (1947) ("When matters are decided

27  by an appellate court, its rulings, unless reversed by it or a superior court, bind the lower court.").

28        Finally, even if the law of the case did not apply, courts in this District "exclude testimony

Hopkins & Carley
Attorneys At Law
San Jose ◆ Redwood City

4871-5160-8137.5                                                                - 12 -

1   on issues already ruled on at summary judgment." *Miranda v. U.S. Sec. Assocs., Inc.*, No. 18-CV-

2   00734-LHK, 2019 WL 2929966, at *3 (N.D. Cal. July 8, 2019) (collecting cases); *accord Magadia*

3   *v. Wal-Mart Assocs., Inc.*, 2018 WL 6003376, at *2 (N.D. Cal. Nov. 15, 2018) (granting motion in

4   limine because "the Court has already ruled on these matters in its summary judgment orders," thus

5   "testimony on these issues would have no probative value, and would merely waste time").  The

6   Court should therefore strike Mr. Kuhn's expert report in its entirety, as well as exclude him from

7   testifying on his opinions therein because they have no probative value and are irrelevant to the

8   remaining issues to be tried in this case.

9            **B.       Mr. Kuhn Cannot Opine on the Meaning of Contractual Provisions**

10           Besides violating the law of the case doctrine, Mr. Kuhn's proposed testimony on the

11   interpretation of the provisions detailed above are inadmissible. The Ninth Circuit has made clear

12   that "[expert] testimony cannot be used to provide legal meaning or interpret the [contracts] as

13   written." *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999)); *accord Dolby*

14   *Labs. Licensing Corp. v. Adobe Inc.*, No. 18-CV-01553-YGR, 2019 WL 6327210, at *2 (N.D. Cal.

15   Nov. 26, 2019) ("[t]hat a dispute has arisen regarding contract interpretation does not mean that a

16   third party may offer "opinions" to support one party's interpretation"); *AMTAX Holdings 279,*

17   *LLC v. Montalvo Assocs.*, LLC, 2022 WL 2784456, at *4 (S.D. Cal. June 6, 2022) ("[t]he

18   interpretation of the contract is a matter of law, one this Court is more than capable of handling

19   without the assistance of a so-called expert witness testimony") (citing *Nationwide Transport Fin.*

20   *v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008)).  "To claim that a person dressed as

21   an expert can opine in court and seek to interpret the contracts at the core of the parties' dispute

22   would usurp the [fact-finder's] role of resolving contract disputes and open the door to 'legal

23   experts' frequenting the courtroom." *Dolby Labs.*, 2019 WL 6327210, at *2 (emphasis added).  This

24   is exactly what Defendants are seeking to do with Mr. Kuhn's proposed testimony.

25           Mr. Kuhn's report leaves no doubt that his opinions are "merely attorney argument dressed

26   in the guise of 'custom and practice.'" *Dolby Labs.*, 2019 WL 6327210, at *2.  As detailed above,

27   his interpretation of Section 7 parrots Defendants' unsuccessful legal arguments made on summary

28   judgment and on appeal – and are equally erroneous because he also fails to reconcile Section 7

4871-5160-8137.5                                   - 13 -

1   with Sections 0 and 10 of the Neo4j Sweden License.  Kuhn even repackages Defendants' failed

2   argument that Neo4j Sweden could have used a different license form if it wanted to add the

3   Commons Clause instead of simply adding it to the AGPLv3.  *Compare* Kuhn Report, ¶¶ 76-89,

4   96 *and* Dkt. No. 100 at 30:9-16.

5          Mr. Kuhn's opinion on what is "customary" in the "open source community" and the

6   correctness of removing "further restrictions" based thereon cannot override the Court's exclusive

7   province to determine the meaning of this term within the context of Section 7 and Section 10.  *See*

8   *Dolby Labs*., 2019 WL 6327210, at \*2 (excluding expert opinion on whether plaintiff's

9   "interpretation of the agreements at issue in this case is 'commercially reasonable relative to

10  customs and practices in the software industry'").  Likewise, Mr. Kuhn's attempt to introduce his

11  recollection of the drafting history of the GPLv3, as well hearsay from anonymous commenters

12  and unnamed persons at the FSF does not override the Court's exclusive province of interpreting

13  the plain language of the provisions in Neo4j Sweden Software License – especially after

14  Defendants *agreed* that the Court could do so.  Mr. Kuhn conceded as much in an article he authored

15  that criticized the Ninth Circuit's affirmation of the Court's interpretation of the Neo4j Sweden

16  Software License: "***the intent of the original drafter of a license text is not dispositive over the***

17  ***text as it actually appears in the license***."  Ratinoff Decl., Ex. 7 at 4 (emphasis added).

18  Accordingly, the opinions in Paragraphs 51-61, 71-75, 76-78, 79-89, 96-97, 109-110 and 112 in

19  Mr. Kuhn's report are inadmissible because they are rooted in and dependent on the ***legal***

20  ***interpretation*** of provisions in the Neo4j Sweden Software License.

21          **C.      Mr. Kuhn's Opinions on Defendants' State of Mind is Inadmissible**

22          Based on the same impermissible interpretation of "further restrictions" and what he

23  speculates is a wide-spread understanding in the open source community, Mr. Kuhn concludes that

24  "Suhy acted in a reasonable, customary, good faith, and correct manner when removing CC from

25  the Neo4j Sweden Software License and licensing the software under AGPLv3 to his customers

26  and/or the public."  Kuhn Report, ¶ 110; *see also id.,* ¶ 75 ("In my opinion, when John Mark Suhy

27  encountered the Neo4j Sweden Software License, his removal of the CC and redistribution of the

28  Covered Work under pure AGPLv3 would be considered customary, permissible, and even widely

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4871-5160-8137.5                                                    - 14 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF BRADLEY M.
KUHN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1954

1   encouraged in the field of FOSS.").  Paragraphs 71-74, 76-78, 79-89 of Mr. Kuhn's report seek to

2   support that conclusion or offer related opinions on Suhy's subjective intent in removing the

3   Commons Clause from the Neo4j Sweden Software License.

4          It is well-settled law in the Ninth Circuit and this District that an expert may not opine or

5   speculate regarding a party's mental state, such as intent, motive, or knowledge.  *See, e.g,*

6   *Nationwide Transp. Fin. v. Cass Info Sys. Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (excluding,

7   *inter alia*, sections of expert report that identify the parties' actions as "wrongful" or "intentional"

8   under the law); *SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869, 903 (N.D. Cal. 2022) (excluding

9   expert opinion that concluded infringement was willful because experts cannot opine about a

10  party's mental state); *Tessera, Inc. v. Toshiba Corp.*, No. 15-CV-02543-BLF, 2019 WL 5395158,

11  at *14 (N.D. Cal. Oct. 22, 2019) (striking portions of an expert report that plaintiff's intent, motive,

12  and state of mind because "[s]uch testimony is not appropriate expert testimony"; *Arista Networks,*

13  *Inc. v. Cisco Sys. Inc.*, No. 16-CV-00923-BLF, 2018 WL 8949299, at *3 (N.D. Cal. June 15, 2018)

14  (excluding expert testimony because "[e]xperts may not speculate about the state of mind . . . of

15  others").  "Expert testimony as to intent, motive, or state of mind offers no more than drawing an

16  inference from the facts of the case," an exercise that the jury is "sufficiently capable" of doing

17  without the help of expert testimony, and thus "permitting expert testimony on this subject . . .

18  merely substitut[es] the expert's judgment for the jury's and would not be helpful to the jury."

19  *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-CV-01393-JST, 2018 WL 6511146, at *3

20  (N.D. Cal. Dec. 11, 2018) (internal citation and quotations omitted).

21         Removing all doubt that Defendants are using Mr. Kuhn's testimony for this improper

22  purpose, Defendants admitted that Mr. Kuhn intends to testify that Suhy did not have the requisite

23  intent to remove the Commons Clause in violation of the DMCA.  *See* Ratinoff Decl., Exh. 3 at

24  p. 2.  The Court should therefore strike Paragraphs 71-75, 76-78, 79-89, 97, 110, and 112 of

25  Mr. Kuhn's report and preclude him from testifying on Mr. Suhy's state of mind in removing the

26  Commons Clause from the Neo4j Sweden Software license.

27      **D.    Mr. Kuhn Improperly Speculates on Neo4j Sweden's State of Mind**

28         Mr. Kuhn also impermissibly seeks to opine on Neo4j Sweden's state of mind at the time it

4871-5160-8137.5                                                - 15 -

1  drafted the Neo4j Sweden Software License:

2   - "In my opinion, *it seems highly unlikely that the drafters of the Neo4j Sweden Software License were unaware* of MongoDB's approach to their license change. As such, *drafters of the Neo4j Sweden Software License was almost surely aware* that they had the options presented under ¶ 85 to produce a fully modified AGPLv3 — sans the preamble and with no mention of FSF's trademark "GNU" — instead of the Neo4j Sweden Software License." Kuhn Report, ¶ 96 (emphasis added).

6   - "In my opinion, *this speaks to clear intentionally [sic] in choosing* a license that included the Further Restrictions Clause." *Id.* at ¶ 97 (emphasis added).

8   - In my opinion … the Neo4j Sweden Software License *was structured and promoted to give users the incorrect impression* that the [Commons Clause] could not be removed from those terms — even though the Further Restrictions Clause was present." *Id.* (emphasis added).

10  - "In essence, *my opinion is that the Neo4j Sweden Software License attempted to inappropriately capitalize* on the goodwill, power, and notoriety of the "GNU" and 'AGPLv3' brands while also frightening commercial redistributors with the addition of the [Commons Clause]." *Id.*, ¶ 98 (emphasis added).

12  - "*I firmly believe that Neo4j hoped that no one would notice the Further Restrictions Clause remained included*, and thereby realize that [Commons Clause] could, in fact, be removed and that commercial activity by downstream redistributors could therefore continue under pure AGPLv3." *Id.* (emphasis added).

15  - "In my opinion, given the extensive publicity of MongoDB's SS Public License, FSF's FAQ, and other widely understood licensing knowledge regarding AGPLv3, *those who promulgated the Neo4j Sweden Software License were (or should have been) aware* that they could construct their own license, picking and choosing their preferred clauses from the AGPLv3 under the rules outlined by the FSF in ¶ 85." *Id.*, ¶ 111 (emphasis added).

19  - "*The authors of the Neo4j Sweden Software License should have expected* that the Further Restrictions Clause would be used to remove CC from the Neo4j Sweden Software License. *If they wanted to prevent that behavior, they should have* (and could have, provided they had sufficient rights to all contributions to be licensed) removed the Further Restrictions Clause." *Id.*, ¶ 112 (emphasis added).

23  His proposed testimony on Neo4j Sweden's motivation and intent in using the AGPLv3 as

24  a starting place, as well as its reasoning for adding the Commons Clause, is rife with gross

25  speculation.  Mr. Kuhn does not cite a single internal email produced by Plaintiffs that could support

26  any of his assumptions or conclusions as to Plaintiffs' motives or intent.  The Supreme Court has

27  made clear that expert testimony cannot be based on "subjective belief or unsupported speculation."

28  *Daubert*, 509 U.S. at 590, 597; *see also Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 8949299,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4871-5160-8137.5                           - 16 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF BRADLEY M. KUHN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1956

1  at *3 (N.D. Cal. June 15, 2018) (excluding expert testimony because "[e]xperts may not speculate

2  about the state of mind . . . of others"). Even if he had cited to any such emails, as discussed above,

3  his proposed testimony about Neo4j Sweden's intent, motive, and knowledge in drafting the Neo4j

4  Sweden Software License remains inadmissible. *See Nationwide Transp.*, 523 F.3d at 1058; *SA*

5  *Music*, 592 F. Supp. 3d at 903; *Tessera*, 2019 WL 5395158, at *14. Accordingly, the Court should

6  strike Paragraphs 96-98 and 111-112 of Mr. Kuhn's report and exclude him from testifying on

7  Neo4j Sweden's state of mind at the time it drafted the Neo4j Sweden Software License, and its

8  alleged intent and motivation for adding the Commons Clause to the AGPLv3.

9           **E.       Mr. Kuhn's Report Seeks to Introduce Inadmissible Hearsay Evidence**

10          Mr. Kuhn's opinions are largely based on inadmissible hearsay consisting of his internal

11  discussions with unnamed "staff and Board members of the FSF" persons at the FSF, including

12  "the GPLv3 drafters themselves" (Kuhn Report, ¶¶ 18, 23-24, 26, 52, 81), as well as comments

13  from anonymous persons during that drafting process of the GPLv3 (*id.,* ¶¶ 44-48, 52-56, 58 and

14  Exs. B-F). Mr. Kuhn also speculates on how the FSF viewed Neo4j Sweden using the Commons

15  Clause with the AGPLv3. *See id.* at ¶¶ 81-85. Mr. Kuhn offers this testimony for the truth of the

16  matters stated and no exception to the hearsay rule applies.

17          Expert opinions based on otherwise inadmissible hearsay are admissible ***only*** if the facts or

18  data are "of a type reasonably relied upon by experts in the particular field in forming opinions or

19  inferences upon the subject." Fed. R. Evid. 703. There is nothing in Mr. Kuhn's report to suggest

20  that hearsay statements from anonymous persons are the type of evidence that an industry expert

21  or an expert in license agreements (of which he is neither) could reasonably rely on. None of the

22  markups and comments from the GPLv3 were produced by Defendants during discovery. Ratinoff

23  Decl., ¶ 12. Defendants also did not subpoena the FSF to authenticate these materials and to obtain

24  its views on the AGPLv3. In fact, Mr. Suhy reached out to the FSF multiple times in the fall of

25  2020 where he attached this Court's initial ruling in the GFI action that Sections 7 and 10 did not

26  permit the removal of the Commons Clause. *Id.*, Exs. 7-9. Defendants did not produce any

27  responses from the FSF. *Id.*, ¶ 13. Thus, it appears that FSF was not concerned about the Court's

28  / / /

4871-5160-8137.5                                    - 17 -

1  interpretation of Sections 7 and 10, or had any interest in expressing any contrary viewpoint.[3]

2       Defendants cannot now offer Mr. Kuhn as an expert witness to fix these admissibility issues

3  and substitute his personal views for those of the FSF after it chose to remain silent. *See United*

4  *States v. Shafi*, No. 15-CR-00582-WHO-1, 2018 WL 3159769, at *5 (N.D. Cal. June 28, 2018)

5  ("[a]n expert may not serve 'simply as a conduit for introducing hearsay under the guise that the

6  testifying expert used the hearsay as the basis of his testimony'") (internal citation omitted); *Marvel*

7  *Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (excluding expert testimony on

8  historical perspective concerning relationship between comic book publishers and freelance artist

9  whose artworks depicted iconic characters where experts' testimony "was by and large undergirded

10  by hearsay statements").

11      **F.**    **Mr. Kuhn is Acting as an Advocate Rather than an Independent Expert**

12       When assessing a proffer of expert testimony for both reliability and relevance under

13  Rule 702, courts must "be mindful of other applicable rules," including Rule 403. *Daubert*, 509

14  U.S. at 595. Because "[e]xpert evidence can be both powerful and quite misleading because of the

15  difficulty in evaluating it[,] . . . the judge in weighing possible prejudice against probative force

16  under Rule 403 . . . exercises more control over experts than over lay witnesses." *Id.* (citation and

17  internal quotation marks omitted).  Courts must also be "mindful" of the other prongs of Rule 403,

18  including waste of time and confusion of the issues, which each independently may warrant

19  exclusion of expert testimony. Fed. R. Evid. 403.  When an expert's report is more accurately

20  characterized as lawyerly advocacy, exclusion is appropriate. *See, e.g., In re Rezulin Products Liab.*

21  *Litigation*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) (excluding expert testimony where expert

22  was acting as an advocate rather than as an expert who could assist the trier of fact).

23       Allowing Mr. Kuhn to testify would confuse the jury and would be prejudicial to Plaintiffs

24  _____

25  [3] Plaintiffs are not conceding that the FSF's views on the AGPLv3 would be admissible or relevant
for purposes of interpreting the Neo4j Sweden Software License.  However, the FSF's silence is

26  indicative of Mr. Kuhn having contrary views to the FSF and is seeking a forum to express his

27  personal views on open source licensing. As discussed below, his personal views not amount to

28  admissible expert testimony.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦REDWOOD CITY

4871-5160-8137.5                                    - 18 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF BRADLEY M.
KUHN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1958

1   because Mr. Kuhn is not acting an impartial expert witness.  Rather, he is a self-described "FOSS

2   activist" and is acting as advocate for Defendants.  *See* Kuhn Report, ¶¶ 34, 74.  Mr. Kuhn is

3   personally invested in this case as reflected by his March 30, 2022 article published on the SFC's

4   website titled, "An Erroneous Preliminary Injunction Granted in Neo4j v. PureThink" and with the

5   byline, "Bad Early Court Decision for AGPLv3 Has Not Been Appealed." Ratinoff Decl.,

6   Ex. 10.  Mr. Kuhn first touts that "We at Software Freedom Conservancy proudly and vigilantly

7   watch out for your rights under copyleft licenses such as the Affero GPLv3." *Id.*  Mr. Kuhn then

8   warns readers "we're not a law firm, our lawyers are not your lawyers, and this is not legal advice."

9   *Id.* Reaffirming he is unqualified to provide an expert opinion on contractual provisions, Mr. Kuhn

10  then provides an inaccurate assessment of the case and the impact of the Ninth Circuit's ruling.  *Id.*

11  He eventually concludes from an admitted layperson's view "that Suhy's removal of the 'Commons

12  Clause' was fully permitted by the terms of the AGPLv3, and that Neo4j gave him that permission

13  in that license." *Id.*  Mr. Kuhn also offered similar unqualified views on how to interpret contracts

14  to the author of a news article published days later, entitled "Court erred in Neo4j source license

15  ruling, says Software Freedom Conservancy." *Id.*, Ex. 11.

16          Finally, Defendants and Mr. Kuhn are proliferating his criticisms of this Court's rulings in

17  an apparent effort to unduly influence witnesses and jurors.  Shortly after Mr. Kuhn published his

18  opinion piece, Suhy sent a link to the article to Mike Dunn at the IRS.  Ratinoff Decl., Ex. 12.  On

19  February 9, 2023, the SFC posted a "press release" about Mr. Kuhn's report (replete with

20  mischaracterizations about this case) on its website, "SFC's Policy Fellow Files Expert Report in

21  Neo4j v. PureThink." *Id.*, Ex. 13.   This article also includes a link to his expert report.  *Id.*  Since

22  his report was not publicly filed, it seems that Defendants and Mr. Kuhn are hoping to sway

23  potential jurors in the Silicon Valley, which are likely to read tech-centric publications.  They

24  appear to have already succeeded as evidenced by a recent article published by a technology news

25  outlet, which also includes a link to his report.  *Id.*, Ex. 14.   The Court should thus exclude

26  Mr. Kuhn's testimony because he is acting as an advocate for Defendants, rather than as an expert

27  who could assist the jury on the remaining issues here.

28  / / /

**G.      Defendants Cannot Use Mr. Kuhn's Opinion to Bolster a FRCP 59(e) Motion**

Lastly, there is no basis for Defendants to offer Mr. Kuhn's testimony to justify filing a motion pursuant to Rule 59(e).  As detailed above, the Court already decided on summary judgment the issues on which he opines.  As recognized by this Court, "[a]rguments that a court was in error on the issues it considered should be directed to the court of appeals." *White v. California*, No. 5:15-CV-03521-EJD, 2017 WL 4642571, at *1 (N.D. Cal. Oct. 17, 2017) (internal quotations and citation omitted).  Since Defendants did exactly that—and lost—there is nothing for this Court to reconsider under Rule 59(e).

Even if this were not the case, Defendants still cannot meet the requirements of Rule 59(e).  A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 fn 5 (2008) (internal quotations and citations omitted); *accord White*, 2017 WL 4642571, at *1 (citing same). The rule's purpose "is ***not*** to give an unhappy litigant one additional chance to sway the judge." *Garcia v. Biter*, 195 F. Supp. 3d 1131, 1133 (E.D. Cal. 2016), (internal quotation omitted; emphasis preserved); *accord White*, 2017 WL 4642571, at *1  (citing same); *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985) (affirming denial of Rule 59(e) motion which "presented no arguments that had not already been raised in opposition to summary judgment").  As detailed above, Mr. Kuhn's otherwise inadmissible opinions recycle arguments that this Court ***and*** the Ninth Circuit already considered.

A Rule 59(e) motion also "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).  Mr. Kuhn's alleged personal knowledge of the drafting of the GPLv3 and the drafting comments he relies on are not new evidence.  All were available when Defendants opposed Plaintiff's summary judgment motion filed in January 2021.  As confirmed by Mr. Kuhn, "the FSF has also continuously made available … [the] discussion drafts, license texts, and rationale documents" from 2016 to 2017 that he relies on "in an easily accessible and browsable format on the website https://gplv3.fsf.org — from their publication dates until present day."  Kuhn Report, ¶¶ 44-50.  As recognized by the Court, however, Defendants

4871-5160-8137.5

- 20 -

1  *chose* to argue the plain meaning of the language in the Neo4j Sweden Software License as a matter

2  of law.  *See* Dkt. No. 118 at 24:10-15.  Consequently, "[t]his new way to frame the evidence cannot

3  be considered under Rule 59(e)."  *White*, 2017 WL 4642571, at *1; *accord Interior Glass Sys., Inc.*

4  *v. United States*, No. 5:13-CV-05563-EJD, 2017 WL 1153012, at *3 (N.D. Cal. Mar. 28, 2017)

5  (recognizing that a party "cannot prevail under Rule 59(e) with new arguments or evidence it could

6  have submitted previously, but did not").

7  **V.      CONCLUSION**

8        For the reasons discussed above, the Court should exclude Mr. Kuhn's expert report,

9  testimony, and opinions in their entirety under Rules 702 and 703 and *Daubert* because they are

10 unreliable, irrelevant and not within the proper scope of expert testimony.  The Court should also

11 exclude them under Rule 403 because they will only confuse the issues and will waste the time and

12 resources of the Court, the jury, and the parties.

13 Dated:  April 20, 2023                          HOPKINS & CARLEY
                                                    A Law Corporation
14

15

16                                                  By: */s/ Jeffrey M. Ratinoff*
                                                        Jeffrey M. Ratinoff
17                                                      Attorneys for Plaintiffs and Counter-
                                                        Defendants NEO4J, INC. and NEO4J
18                                                      SWEDEN AB

19

20

21

22

23

24

25

26

27

28

4871-5160-8137.5                                - 21 -

1   John V. Picone III, Bar No. 187226
    jpicone@hopkinscarley.com
2   Jeffrey M. Ratinoff, Bar No. 197241
    jratinoff@hopkinscarley.com
3   Arthur E. Rothrock, Bar No. 312704
    arothrock@hopkinscarley.com
4   HOPKINS & CARLEY
    A Law Corporation
5   The Letitia Building
    70 South First Street
6   San Jose, CA  95113-2406

7   *mailing address:*
    P.O. Box 1469
8   San Jose, CA 95109-1469
    Telephone:     (408) 286-9800
9   Facsimile:     (408) 998-4790

10  Attorneys for Plaintiffs and Counter-Defendants
    NEO4J, INC. and NEO4J SWEDEN AB

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13

14  NEO4J, INC., a Delaware corporation, and        CASE NO. 5:18-cv-07182-EJD
    NEO4J SWEDEN AB, a Swedish
15  corporation,                                     **PLAINTIFFS' NOTICE OF MOTION AND
                                                     MOTION FOR SUMMARY JUDGMENT
16                      Plaintiffs,                  ON THEIR DMCA CLAIM AND
                                                     DEFENDANTS' BREACH OF CONTRACT
17             v.                                    COUNTERCLAIM AND UNCLEAN
                                                     HANDS DEFENSE; MEMORANDUM OF
18  PURETHINK LLC, a Delaware limited                POINTS AND AUTHORITIES IN
    liability company, IGOV INC., a Virginia         SUPPORT THEREOF**
19  corporation, and JOHN MARK SUHY, an
    individual,                                      Date:       July 27, 2023
20                                                   Time:       9:00 a.m.
                        Defendants.                  Dept.:      Courtroom 4, 5th Floor
21                                                   Judge:      Hon. Edward J. Davila
    AND RELATED COUNTERCLAIM.
22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4

**NOTICE OF MOTION AND MOTION**

TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 27, 2023, at 9:00 a.m., before the Honorable Edward J. Davila, in Courtroom 4, 5th Floor, 280 South First Street, San Jose, CA 95113, Plaintiffs and Counter-Defendants Neo4j, Inc., and Neo4j Sweden AB ("Plaintiffs") will and hereby do move the Court for an order granting partial summary judgment in Plaintiffs' favor pursuant to Federal Rule of Civil Procedure 56 on their Eighth Cause of Action for the Unauthorized Distribution of Altered Copyright Management Information in violation of 17 U.S.C. § 1202(b) of the Digital Millennium Copyright Act ("DMCA") asserted against Defendants PureThink LLC ("PureThink"), iGov Inc. ("iGov") and John Mark Suhy (collectively "Defendants"). *See* Dkt. No. 90, ¶¶ 166-173.

Plaintiffs also move for the Court for an order granting summary judgment in their favor on Defendants' Fourth Affirmative Defense for Unclean Hands asserted in their Answer to Plaintiffs' Third Amended Complaint. *See* Dkt. No. 91 at 16:20-19:7.

Finally, Neo4j USA moves for an order granting summary judgment in its favor on the Fourth Cause of Action Breach of Exclusive Contract to Government asserted by PureThink in Defendants' Fourth Amended Counterclaim. *See* Dkt. No. 177, ¶¶ 53-57.

This motion ("Motion") is based on (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities below and the Separate Statement of Undisputed Facts attached thereto as **Exhibit A**; (3) the Declaration of Jeffrey M. Ratinoff filed in support of Plaintiffs' first Motion for Summary Judgment [Dkt. No. 98-1]; (4) the Declaration of Philip Rathle filed in support of Plaintiffs first summary judgement motion [Dkt. No. 98-2]; (5) the Declaration of John Broad filed in support of Plaintiffs' first Motion for Summary Judgment [Dkt. No. 98-3]; (6) the Court's order granting partial summary judgment in favor of Neo4j USA on its Lanham Act and UCL claims [Dkt. No. 118] and the Ninth Circuit's Memorandum of Disposition affirming the same [Dkt. No. 140]; (7) the additional Declaration of Jeffrey M. Ratinoff filed herewith; (8) all other orders, pleadings, records and papers on file in this action; and (9) upon such further oral and documentary evidence as may be presented at the hearing on this Motion.

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4
- 1 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1963

**REQUESTED RELIEF**

Plaintiffs respectfully request that the Court grant partial summary judgment in favor of Plaintiffs on their DMCA claim asserted against all Defendants.  The undisputed material facts establish that Defendants violated the DMCA by removing and altering Neo4j Sweden's copyright management information ("CMI") governing the source code for its Neo4j® Enterprise Edition ("Neo4j® EE") software, and distributing it as their improperly licensed ONgDB, GraphStack GDB and GDB software with the understanding that it would induce or result in the infringement of Neo4j Sweden's copyrights.

Plaintiffs are seeking partial summary judgment on this claim because they intend to seek to prove-up their actual damages suffered in conjunction with their Lanham Act claims (which the Court already found Defendants liable for violating 15 U.S.C. §§ 1114(1), 1125(a)), at trial pursuant to 17 U.S.C. § 1203(c)(2). This is in the interest of judicial economy as there is substantial overlap in the evidence supporting Plaintiffs' damages caused by Defendants' violations of the DMCA and the Lanham Act. Plaintiffs also reserve the right to elect to recover statutory damages before final judgment is entered pursuant to 17 U.S.C. § 1203(c)(3)(B).  In addition, Plaintiffs will seek its attorneys' fees and costs pursuant to 17 U.S.C. § 1203(b)(4)-(5).

Finally, Plaintiffs respectfully request that the Court enter the proposed preliminary injunction concurrently filed herewith pursuant to 17 U.S.C. § 1203(b)(1).  Plaintiffs have already suffered a reputational loss as result of Defendants' unauthorized "relicensing" of Neoj4® EE under the AGPL and falsely calling ONgDB a free and unrestricted drop-in replacement for official Neo4j® EE.  Defendants have already infringed on and caused others to infringe on Neo4j Sweden's copyrights associated with Neo4j® EE. It is also clear that Defendants will continue to do so unless enjoined by the Court.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the undisputed material facts establish that Defendants intentionally removed and/or altered Neo4j Sweden's CMI without its authorization.

2. Whether the undisputed material facts establish that Defendants knew that CMI was removed or altered without Neo4j Sweden's authorization.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4                                              - 2 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

3. Whether the undisputed material facts establish that Defendants distributing works with the knowledge that Neo4j Sweden's CMI was removed.

4. Whether the undisputed material facts establish that Defendants knew or had reasonable grounds to know that the removal of Neo4j Sweden's CMI would induce, enable, facilitate, or conceal copyright infringement.

5. Whether the Court should enjoin Defendants from further violations of the DMCA in relation to the distribution of graph database software containing a DMCA violation and/or that infringes Neo4j Sweden's copyrights in Neo4j® EE.

6. Whether Neo4j USA is entitled to summary judgment on Defendants' unclean hands defense because they cannot establish that Neo4j USA's conduct is inequitable.

7. Whether Neo4j USA is are entitled to summary judgment on Defendants' unclean hands defense because they cannot establish that Neo4j USA's conduct relates to the subject matter of its Lanham Act, UCL and breach of contract claims.

8. Whether Neo4j USA is entitled to summary judgment on PureThink's breach of exclusivity contract counterclaim because it cannot establish the existence of an enforceable contract.

9. Whether Neo4j USA is entitled to summary judgment on PureThink's breach of exclusivity contract counterclaim because PureThink did not perform and/or has no excuse for its non-performance under the alleged contract.

10. Whether Neo4j USA is entitled to summary judgment on PureThink's breach of exclusivity contract counterclaim because PureThink cannot establish Neo4j USA breached the alleged contract.

11. Whether Neo4j USA is entitled to summary judgment on PureThink's breach of exclusivity contract counterclaim because PureThink did not suffer any damages from the alleged breach thereof.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4
- 3 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1965

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................... 1

II. STATEMENT OF FACTS ........................................................................................ 2

   A. The Evolution of Plaintiffs' Licensing Model for the Neo4j® Platform................ 2

   B. PureThink Enters Into the Neo Solution Partner Agreement with Neo4j USA.............................................................................................................................. 3

   C. The IRS's Adoption of the Government Edition .................................................... 4

   D. Suhy and iGov Offer "Government Packages for Neo4j" to the IRS ..................... 4

   E. The IRS Awards the CKGE Contract to Suhy via eGovernment Solutions .......... 5

   F. Defendants Improperly Remove the Commercial Restrictions in the Neo4j Sweden Software License in Order to Promote ONgDB as a "Free and Open Source" Neo4j® EE ............................................................................................ 6

   G. The IRS Adopts ONgDB Rather Than Pay for a License to Use Neo4j® EE........ 7

III. APPLICABLE MOTION FOR SUMMARY JUDGMENT STANDARDS ..................... 7

IV. THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF PLAINTIFFS ON THEIR DMCA CLAIM ..................................................................... 8

   A. Neo4j® EE and the License Thereto Contained Neo4j Sweden's CMI ................. 9

   B. Suhy Intentionally Removed Neo4j Sweden's CMI from Neo4j® EE Without its Authorization and PureThink and iGov Had Actual Knowledge Thereof ....................................................................................................................... 9

   C. Defendants Distributed Neo4j Sweden's Works with its CMI Removed............. 10

   D. The Undisputed Facts Establish that Defendants Knew or Had a Reasonable Basis to Know the Removal of the Neo4j Sweden's CMI Would Induce, Enable and Facilitate Copyright Infringement ............................. 11

   E. Plaintiffs are Entitled to Injunctive Relief Under 17 U.S.C.................................. 15

V. NEO4J USA IS ENTITLED TO SUMMARY JUDGMENT ON DEFENDANTS' UNCLEAN HANDS DEFENSE ........................................................................................ 16

VI. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT  PURETHINK'S BREACH OF EXCLUSIVELY CONTRACT COUNTERCLAIM ................................. 20

   A. Neo4j Never Consented to Separate Exclusivity Agreement with PureThink ............................................................................................................... 21

   B. Neo4j Did Not Breach the Alleged Exclusivity Agreement ................................. 23

   C. Defendants Failed to Perform and Did Not Suffer Any Monetary Damages ....... 23

VII. CONCLUSION...................................................................................................... 25

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4

- i -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1966

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Addisu v. Fred Meyer, Inc.*,
198 F.3d 1130 (9th Cir. 2000).................................................................................. 8

*Allmerica Fin. Life Ins. & Annuity Co. v. Dalessio*,
No. C-96-0385 VRW, 2006 WL 408538 (N.D. Cal. Feb. 20, 2006) ...................................... 18

*Alpha GRP, Inc. v. Subaru of Am., Inc.*,
No. CV182133MWFMRWX, 2022 WL 18638819 (C.D. Cal. Apr. 27, 2022)..................... 24

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).......................................................................................................... 8

*Apple Inc. v. Psystar Corp.*,
673 F. Supp. 2d 943 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) ................... 15, 16

*Carson v. Verismart Software*,
2012 WL 1038713 (N.D. Cal. Mar. 27, 2012)........................................................ 10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................................... 8, 21

*Curley v. Wells Fargo & Co.*,
120 F. Supp. 3d 992 (N.D. Cal. 2015), *aff'd*, 692 F. App'x 900 (9th Cir. 2017) ................... 23

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
826 F.2d 837 (9th Cir. 1987)......................................................................... 17, 19

*GoTo.com, Inc. v. Walt Disney Co.*,
202 F.3d 1199 (9th Cir. 2000)....................................................................................... 17

*Hal Roach Studios, Inc. v. Feiner & Co., Inc.*,
896 F.2d 1542 (9th Cir. 1990)........................................................................................ 8

*Harrington v. Pinterest, Inc.*,
No. 5:20-CV-05290-EJD, 2022 WL 4348460 (N.D. Cal. Sept. 19, 2022)........................... 10

*Hickox-Huffman v. US Airways, Inc.*,
855 F.3d 1057 (9th Cir. 2017)....................................................................................... 20

*Jacobsen v. Katzer*,
535 F.3d 1373 (Fed. Cir. 2008)....................................................................................... 13

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*,
287 F.3d 866 (9th Cir. 2002)......................................................................................... 17

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4                                     - ii -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002)..................................................................... 18

4

5

*Keystone Driller Co. v. Gen. Excavator Co.*,
   290 U.S. 240 (1933) ................................................................................. 17

6

*Lujan v. National Wildlife Fed'n*,
   497 U.S. 871 (1990) ................................................................................... 8

7

8

*Mango v. BuzzFeed, Inc.*,
   970 F.3d 167 (9th Cir. 2020).................................................................. 9, 15

9

10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ................................................................................... 8

11

*Maui Jim, Inc. v. SmartBuy Guru Enterprises*,
   386 F. Supp. 3d 926 (N.D. Ill. 2019) ....................................................... 20

12

13

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
   629 F.3d 928 (9th Cir. 2010).................................................................... 13

14

*Merced County Sheriff's Employees' Ass'n v. Merced County*,
   188 Cal.App.3d 662 (1987)....................................................................... 21

15

16

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
   605 F. Supp. 3d 1218 (N.D. Cal. 2022) .................................................... 23

17

18

*Michael Grecco Prods., Inc. v. WrapMarket, LLC*,
   2017 WL 10434020 (C.D. Cal. Nov. 8, 2017)........................................... 15

19

*Mitchell v. Specialized Loan Servicing LLC*, 600 F. Supp. 3d 1112 (C.D. Cal. 2021),
   *aff'd*, No. 22-55107, 2022 WL 17883609 (9th Cir. Dec. 23, 2022) ...................... 23

20

21

*Neo4j, Inc. v. Graph Found., Inc.*,
   No. 5:19-CV-06226-EJD, 2020 WL 6700480 (N.D. Cal. Nov. 13, 2020) ............... 12

22

23

*Netbula, LLC v. Bindview Dev. Corp.*,
   516 F. Supp. 2d 1137 (N.D. Cal. 2007) ............................................... 21, 23

24

*Oasis W. Realty, LLC v. Goldman*,
   51 Cal.4th 811 (2011) .............................................................................. 20

25

26

*Online Glob., Inc. v. Google LLC*,
   387 F. Supp. 3d 980 (N.D. Cal. 2019) ........................................................ 8

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4

- iii -

SER_1968

**TABLE OF AUTHORITIES**
(continued)

Page

*Perfumebay.com, Inc. v. eBay, Inc.*,
   506 F.3d 1165 (9th Cir. 2007)..............................................................18

*Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*,
   894 F.3d 1015 (9th Cir. 2018)..............................................................17

*Republic Molding Corp. v. B.W. Photo Utils.*,
   319 F.2d 347 (9th Cir. 1963)...............................................................18

*S. Cal. Darts Ass'n v. Zaffina*,
   762 F.3d 921 (9th Cir. 2014)..........................................................17, 19

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est. Educ., Inc.*,
   621 F.3d 981 (9th Cir. 2010)...............................................................19

*Snapkeys, Ltd. v. Google LLC*,
   539 F. Supp. 3d 1040 (N.D. Cal. 2021) .................................................21

*Stevens v. Corelogic, Inc.*,
   899 F.3d 666 (9th Cir. 2018)..........................................................11, 14

*The Comm. for Idaho's High Desert, Inc. v. Yost*,
   92 F.3d 814 (9th Cir. 1996).................................................................10

*Tveter v. AB Turn–O–Matic*,
   633 F.2d 831 (9th Cir. 1980)...............................................................19

*Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*,
   515 F. Supp. 3d 1061 (N.D. Cal. 2021) ................................................17

*Warner Bros. v. Gay Toys, Inc.*,
   724 F.2d 327 (2d Cir. 1983)................................................................20

*Wells Fargo & Co. v. Stagecoach Properties, Inc.*,
   685 F.2d 302 (9th Cir. 1982)...............................................................18

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4

- iv -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1969

**TABLE OF AUTHORITIES**
(continued)

Page

**Statutes**

17 U.S.C.
    § 1202(b) ................................................................................................ 11, 12, 15
    § 1202(b)(1) ............................................................................................... 9, 10
    § 1202(b)(3) ............................................................................................... 9, 10
    § 1202(c)(1)-(3) ............................................................................................... 9
    § 1202(c)(6) ...................................................................................................... 9
    § 1202(c)(7) ...................................................................................................... 9
    § 1203 ............................................................................................................. 15
    § 1203(b)(1) ................................................................................................... 15

**Other Authorities**

6 McCarthy on Trademarks and Unfair Competition § 31:55 (5th ed.)........................................ 19

Fed. R. Civ. P.
    56(a) .................................................................................................................. 8
    56(c) .................................................................................................................. 8

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4

- v -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1970

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Plaintiffs are entitled to summary judgment on their DMCA claim because this Court has already determined that Defendants improperly replaced the Neo4j Sweden Software License governing Neo4j® EE software with a generic copy of the AGPL open source license.  In doing so, Defendants removed CMI identifying Neo4j Sweden as the copyright holder and licensor of Neo4j® EE, as well as the commercial restrictions imposed by Neo4j Sweden.  The undisputed facts establish that Defendants knew that the removal of this CMI would result in the violation of the commercial restrictions in that license and the infringement of Neo4j Sweden's copyrights. Defendants promoted this improperly licensed software (first called "ONgDB" and later renamed "Graphstack GDB") as being a free and open source drop-in replacement for commercially licensed Neo4j® EE.  Further confirming their violation of the DMCA, Defendants sought to profit off the removal of the CMI by offering commercial support services otherwise prohibited by the Neo4j Sweden Software License.

Neo4j USA is also entitled to summary judgment on Defendants' unclean hands defense, which they asserted in response to Neo4j USA's Lanham Act, UCL and breach of contract claims. As admitted by Defendants, none of Neo4j USA's alleged bad acts bear any substantive relationship to those claims since the alleged bad acts relate to Neo4j Sweden's copyright licensing practices, and not Neo4j USA's acquisition or use of the Neo4j Mark.  The indisputable fact that Neo4j USA's alleged bad acts occurred 2017, which predate the introduction of Neo4j® EE under the Neo4j Sweden Software license in May 2018 and Defendants' subsequent Lanham Act violations, is also fatal to the defense.  Defendants simply cannot establish by clear and convincing evidence that Neo4j USA engaged in any inequitable conduct.

Lastly, Neo4j USA is entitled to summary judgment on PureThink's breach of contract claim that allegedly made PureThink the exclusive reseller of Neo4j Gov't Edition.  Suhy sent multiple emails to Neo4j USA confirming that it never agreed to the terms as alleged.  These same emails also make clear that Neo4j USA could not have breached that alleged agreement when it discontinued that software.  Suhy admitted that the Gov't Edition was merely a means to obtain sole source consideration and that PureThink had no ownership rights to that software.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

## II.    STATEMENT OF FACTS

### A.    The Evolution of Plaintiffs' Licensing Model for the Neo4j® Platform

Neo4j, Inc. ("Neo4j USA") is the company behind the number one graph platform for connected data, marketed and sold under the registered trademark "NEO4J". Dkt. No. 118 at 2:8-26. Neo4j USA's platform helps organizations make sense of their data by revealing how people, processes and digital systems are interrelated. *Id.* at 2:9-11. Neo4j Sweden is a wholly owned subsidiary of Neo4j USA. Dkt. No. 118 at 2:11-16. It is the owner of all copyrights related to the Neo4j® graph database platform, including the source code, and has licensed those copyrights to Neo4j USA in connection with the making, use, creation of derivative works, sale, offer to sell, importation, performance, display, reproduction and distribution of the copyrighted material, and the sublicensing of such rights in the United States. Exhibit A, Undisputed Fact ("UDF") No. 1.

Prior to May 2018, Plaintiffs' business model was to offer a free open source version of the Neo4j® graph database platform, Neo4j® Community Edition ("Neo4j® CE"), under the GNU General Public License version 3 ("GPL") license. UDF No. 2. This edition is limited in its feature set and does not come with technical or administrative support. *Id*. Plaintiffs also offered a more advanced commercial version with included additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j® EE"). *Id*.

Plaintiffs originally offered Neo4j® EE under both a paid-for commercial license and for free under the GNU Affero General Public License, version 3 ("AGPL"). UDF No. 3. A commercial license to Neo4j® EE entitled the purchaser to use it in a proprietary setting with industry standard terms, receive support or professional services from Neo4j USA, and the right to receive software updates, which included feature updates, bug fixes and assistance. *Id*. Purchasing a commercial license at a fair price supported the continued development and improvement of Neo4j® EE and the Neo4j® graph database platform, including Neo4j® CE. *Id*.

On May 17, 2018, Plaintiffs announced the release of Neo4j® EE v3.4 and replaced the AGPL with a stricter license, which included the terms from the AGPL and additional commercial restrictions provided by the Commons Clause ("Neo4j Sweden Software License"). UDF No. 4. This new license, while still allowing code to be publicly viewable and used within a certain licensed

1    scope, prohibited the non-paying public from engaging in commercial resale and support services.

2    UDF No. 5.  The NOTICE provision in the Neo4j Sweden Software License also contained the

3    copyright owner's name (Neo4j Sweden), the title of the work, terms and conditions for use of the

4    work, and other identifying information about Neo4j Sweden. UDF No. 6.

5         In November 2018, Plaintiffs officially released of Neo4j® EE v3.5 solely under a

6    commercial license. UDF No. 7.  This meant that Plaintiffs were no longer offering Neo4j® EE on

7    an open source basis. *Id.*  This was done to simplify the licensing model, as well as prevent bad

8    actors from profiting by providing commercial support services in closed, proprietary projects.  *Id.*

9    Prior to the official release of Neo4j® EE v3.5, however, Plaintiffs published several beta versions

10   via their GitHub repository subject to the Neo4j Sweden Software License. UDF No. 8.  Neo4j®

11   EE v3.5.0-RC1 was the last pre-release version available to Defendants via GitHub. UDF No. 9.

12   Thereafter, only the source code for Neo4j® CE was made publicly available under the GPL. *Id.*

13        **B.    PureThink Enters Into the Neo Solution Partner Agreement with Neo4j USA**

14        PureThink is a software and information technology consulting company founded by Suhy,

15   which purports to specialize in supporting agencies within the U.S. Government.  *See* Dkt. No. 118

16   at 3:17-19; *see also* Dkt. No. 177, ¶¶ 12-13.  On September 30, 2014, PureThink and Neo4j USA

17   entered into the Neo4j Solution Partner Agreement ("Partner Agreement" or "SPA").  *Id.*, ¶¶ 12, 15

18   and Ex. B ("SPA").   Under the SPA, PureThink agreed to sell commercial licenses for Neo4j® EE

19   and provide support to end-users in exchange for a commission on each licenses that it resold and

20   would be paid for providing related support services to those purchases.  *See* SPA §1 and Exhibit A

21   thereto (p. 43 of 53); Dkt. No. 118 at 3:20-23.  PureThink also gained access to Neo4j USA's

22   confidential customer information and a non-exclusive and non-transferable limited license to use

23   the Neo4j trademarks "solely to market and promote" Neo4j commercial products. SPA, § 4.1.

24   PureThink further agreed that for a period of 36 months after termination of the SPA, it would not

25   "develop, market, distribute or offer any services related to any Community Edition Products,

26   derivative works of such products, or any [PureThink] software code made to work with Community

27   Edition Products (including, without limitation, hosting services, training, technical support,

28   configuration and customization services, etc.)."  SPA, § 4.3.2.  The SPA defined "Community

4892-9596-9103.4                                      - 3 -

1  Edition Products" as any "open source version of a Neo Technology software product."  SPA, § 11.

2  **C.      The IRS's Adoption of the Government Edition**

3  In the hope of increasing sales, Suhy came up with the idea of rebranding Neo4j® EE as

4  Neo4j® Government Edition ("Gov't Edition").  Dkt. No. 118 at 4:4-6 (citing Dkt. No. 98-1, Exs.

5  5-6).  PureThink had limited success in convincing government agencies to pay for licenses to Gov't

6  Edition and support services from PureThink.  By September 2016, the only promising lead

7  PureThink had was the IRS.  Dkt. No. 98-1, ¶ 9 and Ex. 7.  However, the IRS indicated that they

8  first needed a prototype built and that a full commercial subscription would leave them with no

9  development budget.  Dkt. No. 118 at 4:7-8.  To make that deal happen, Suhy told the IRS they

10 could use Neo4j® EE under the AGPL for free and pay PureThink for its consulting services.  *Id*. at

11 4:8-11.  Based on those representations, the IRS awarded PureThink a $229,000 support contract.

12 Dkt. No. 177, Ex. D; Ratinoff Decl., ¶ 20 and Ex. 18.  In early 2017, Suhy revealed to Neo4j USA

13 that PureThink had compiled its own modified version of the Neo4j® EE software under the AGPL,

14 which the IRS had already installed and PureThink was supporting.  *Id*.  Dkt. No. 98-1, Ex. 8.

15 On May 30, 2017, Neo4j USA sent PureThink notice that that Suhy's use, distribution, and

16 marketing of the open source version of Neo4j® EE and his marketing of consulting services

17 focused on those products constitute a material breach of the SPA.  Dkt. No. 118 at 4:13-15.

18 PureThink made no effort to cure its breaches, and instead formed iGov on June 23, 2017 to evade

19 the restrictions in Section 4.3.1 of the SPA. Dkt. No. 98-1, Exs. 10-11; Dkt. No. 177 at 10:5-8.  On

20 July 11, 2017, Neo4j terminated the SPA.  Dkt. No. 118 at 4:18-22; Dkt. No. 98-1, Ex. 12.

21 On July 11, 2017, Neo4j USA also notified the IRS that it had terminated its partnership with

22 PureThink.  UDF No. 53.  Neo4j USA advised the IRS that PureThink was contractually restricted

23 from providing support services for open source versions of Neo4j® software for 36 months.  *Id.*

24 Despite Neo4j USA's warnings, the IRS continued to use Neo4j® EE for free under the AGPL and

25 allowed Suhy to perform under PureThink's existing support contract.   UDF No. 54.

26 **D.      Suhy and iGov Offer "Government Packages for Neo4j" to the IRS**

27 The same day that Neo4j USA terminated the SPA, Suhy began targeting the same federal

28 agencies that PureThink previously solicited under the SPA by offering iGov's "Government

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4                    - 4 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1974

1  Packages for Neo4j."  UDF Nos. 77-79.  Suhy assured potential customers that iGov's package

2  included the *same* framework and security add-ons as the Gov't Edition.  Ratinoff Decl., ¶ 23 and

3  Ex. 21 ("The Neo4j Government Edition is just [Neo4j® EE] + FISMA Framework plugins +

4  Additional Support and services…."); *id*., ¶ 26 and Ex. 24 ("Neo4j Government Edition is being

5  retired and the framework and services we developed are going to be offered under the new name:

6  Government Package for Neo4j.");  *accord* UDF Nos. 78-79.  The only difference was the

7  "Government Packages for Neo4j" included Neo4j® EE for free under the AGPL rather than a

8  commercial license.  Ratinoff Decl., ¶ 26 and Ex. 24 ("you get everything you physically get in the

9  commercial package except the license is a Neo4j Enterprise open source license"); *accord* UDF

10  No. 78.  Defendants made clear on iGov and PureThink's websites that the "Government Package

11  for Neo4j" was from the same "principle" behind PureThink and Gov't Edition.  UDF No. 80.

12  At that time, Suhy specifically targeted the IRS to transition to iGov's Government Package

13  for Neo4j.  His efforts proved successful when in late July 2017, the IRS invited iGov to submit a

14  quote for a sole-source contract for the development and support of its CDW Knowledge Graph

15  Environment ("CKGE"), which used an open source version of Neo4j® EE software as a main

16  component.  UDF No. 55.  At that point, it was immaterial to the IRS whether iGov or PureThink

17  would be the contracting entity so long as Suhy was the individual providing them.  UDF No. 56.

18  On September 5, 2017, the IRS announced its intent to award a sole-source contract to iGov

19  based on that quote.  UDF No. 57.  Neo4j USA filed an official protest with the IRS.  UDF No. 58.

20  The IRS agreed with Neo4j USA that it had improperly awarded the contract to iGov on a sole

21  source basis and canceled it for that reason.[1]  *Id.*

22  **E.      The IRS Awards the CKGE Contract to Suhy via eGovernment Solutions**

23  The IRS re-issued the CKGE contract for open bidding, and awarded it on May 24, 2018 to

24  another entity that Suhy had an ownership interest in at the time, eGovernment Solutions, Inc.

25  _____

26  [1] As conceded by Defendants in dismissing their IIPEA counterclaim with prejudice in the face of

27  Plaintiffs' motion to dismiss, Neo4j USA's right to protest the sole source nature of that government

contract was absolutely protected by the First Amendment under the *Noerr-Pennington* doctrine.  *See*

28  Dkt. No. 172 at 20:13-21:11 *and* Dkt. No. 176.

4892-9596-9103.4                                       - 5 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1   ("eGov Sol").  UDF No. 25.  Before the IRS awarded the contract, however, Suhy made clear that

2   *iGov* would be providing the "Government Package for Neo4j" for the CKGE and he would be

3   performing the necessary support through *iGov*.  UDF No. 26.  Consistent with Suhy's statements

4   made to the IRS, eGov Sol considered the CKGE contract to belong to Suhy, which he had sole

5   responsibility and control over.  UDF No. 27.  The IRS paid a total of $1,316,000 to eGov Sol under

6   the CKGE contract over the course of five years, which in turn Suhy paid to iGov. UDF No. 28.

7       eGov Sol did not take any commission from the payments made by the IRS.  UDF No. 29.

8   Instead, Suhy was entitled to all the payments eGov Sol received from the IRS on the CKGE

9   contract.  *Id.*, *accord* Ratinoff Decl., Ex. 3 at 30:13-32:25 ("If we get the money from IRS, we will

10  pay it to [Suhy] without keeping anything out of that. That was the agreement with him.").  eGov

11  Sol maintained a bank account for all the payments received from the IRS, which Suhy had access

12  to and was authorized to disburse the payments made by the IRS as he saw fit.   UDF No. 30, *accord*

13  Ex. 3 at 61:1-63:12 ("I went back and I checked all of our payments which were outgoing, because

14  this account was -- all of the money coming in from IRS, [Suhy] was allowed to use this account to

15  pay to himself for iGov. And I recently noticed in 2019, all of the money went to iGov[].").

16      **F.    Defendants Improperly Remove the Commercial Restrictions in the Neo4j**
         **Sweden Software License in Order to Promote ONgDB as a "Free and Open**
17       **Source" Neo4j® EE**

18      Following the release of Neo4j® EE v3.4, Suhy worked with Brad and Ben Nussbaum to

19  form Graph Foundation, Inc. ("GFI") in June 2018.  UDF No. 10.  After forming GFI, Defendants

20  began offering a graph database software called "ONgDB." UDF No. 11.  Rather than develop

21  ONgDB as an independent fork based off an earlier open source version of Neo4j® EE, Suhy copied

22  the source code for Neo4j® EE v3.4 and stripped the commercial restrictions out of the Neo4j

23  Sweden Software License by replacing it with the AGPL.  UDF No. 12.  Suhy also removed legal

24  notices identifying Neo4j Sweden as the copyright holder and licensor.  *Id.*

25      In January 2019, GFI and Defendants released ONgDB v3.5.1, which contained at least 182

26  source code files previously released under the Neo4j Sweden Software License in the last beta

27  version of Neo4j® EE 3.5.  UDF No. 13. Defendants falsely advertised ONgDB as "free and open

28  source" with no limitations or restrictions imposed by equivalent version of commercial licensed

1   Neo4j® EE. Dkt. No. 118 at 6:21-24, 7:18-24. To do so, they replaced the Neo4j Sweden Software

2   License with a generic copy of the AGPL in 28 LICENSE.txt files governing those 182 source code

3   files. UDF No. 14. This not only removed the commercially restrictive Commons Clause, but also

4   stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor. *Id.*

5           **G.**      **The IRS Adopts ONgDB Rather Than Pay for a License to Use Neo4j® EE**

6         By removing the Commons Clause, Defendants were able to induce several potential

7   customers, including the IRS, to use the money they should pay Plaintiffs for a commercial license

8   for NEO4J® EE and instead download ONgDB for free and use those funds to obtain support and

9   development services from Defendants. *See* Dkt. No. 118 at 6:21-26, 29:4-11, 29:22-30:6. On May

10   22, 2018, Suhy sent an email to the IRS falsely stating that Plaintiffs could not add the Commons

11   Clause to the license for Neo4j® EE v3.4. UDF No. 24. The IRS did not obtain an independent

12   legal opinion on Suhy's claim regarding the alleged impropriety of adding commercial restrictions

13   to the AGPL. *Id.* Two days later, the IRS awarded the aforementioned CKGE contract to Suhy and

14   iGov via eGov Sol, which did not contemplate a paid license for Neo4j® EE. UDF No. 25-26.

15         In July 2018, a sales representative from Neo4j USA met with the IRS and provided a one-

16   year $156,000 quote for a Neo4j® EE v3.4 subscription on then-current requirements of CKGE.

17   UDF No. 31. The IRS ultimately decided to not allocate $156,000 for a license to use Neo4j® EE

18   in the CKGE platform because ONgDB was a free and open, unrestricted alternative. UDF No. 32.

19   This coincided with Suhy convincing the IRS integrate ONgDB v3.4 rather than Neo4j® EE v3.4

20   into the CKGE platform in August 2018. UDF No. 33. Under the CKGE contract, Suhy and iGov

21   were responsible for supporting, maintaining and updating ONgDB on an internal repository at the

22   IRS. UDF Nos. 34-37. They helped the IRS upgrade the CKGE platform to ONgDB v3.5 and

23   integrated subsequent subversions through at least April 2022. UDF No. 35. After April 2022, the

24   IRS started calling ONgDB just "GDB," which still used Neo4j Sweden's source code improperly

25   licensed under the AGPL and was compiled by Suhy on the IRS' internal repository. UDF No. 36.

26   **III.**    **APPLICABLE MOTION FOR SUMMARY JUDGMENT STANDARDS**

27         A motion for summary judgment or partial summary judgment should be granted if "there is

28   no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4
- 7 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1  Fed. R. Civ. P. 56(a); *Addisu v. Fred Meyer, Inc*., 198 F.3d 1130, 1134 (9th Cir. 2000). A fact is

2  material when it affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

3  248 (1986).  The moving party bears the initial burden of informing the court of the basis for the

4  motion and identifying the portions of the pleadings, depositions, answers to interrogatories,

5  admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex*

6  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

7          Where the moving party bears the ultimate burden of proof at trial, it must prove each

8  essential element of the claims upon which it seeks judgment based on undisputed facts that are

9  sufficient for the court to hold that no reasonable trier of fact could find other than for the moving

10  party.  *Online Glob., Inc. v. Google LLC*, 387 F. Supp. 3d 980, 984–85 (N.D. Cal. 2019).  Where

11  the non-moving party bears the burden of proof, "the burden on the moving party may be discharged

12  by … pointing out … that there is an absence of evidence to support the nonmoving party's case."

13  *Celotex*, 477 U.S. at 325.  The moving party is not required to produce evidence showing the absence

14  of a genuine issue of material fact, nor is it required to offer evidence negating the non-moving

15  party's claim or defense. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).

16          If the moving party meets this initial burden, the burden then shifts to the non-moving party

17  to designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R.

18  Civ. P. 56(c); *Celotex*, 477 U.S. at 324.  The non-moving party does not meet this burden by showing

19  "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*

20  *Corp.*, 475 U.S. 574, 586 (1986).  Rather, it must come forward with admissible evidence to satisfy

21  the burden.  Fed. R. Civ. P. 56(c); *see Hal Roach Studios, Inc. v. Feiner & Co., Inc.*, 896 F.2d 1542,

22  1550 (9th Cir. 1990).  "If the nonmoving party's 'evidence is merely colorable or is not significantly

23  probative," then summary judgment may be granted."  *Online Glob., Inc.*, 387 F. Supp. 3d at 985

24  (citation omitted); *see also Anderson*, 477 U.S. at 248-49.

25  **IV.      THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF**
        **PLAINTIFFS ON THEIR DMCA CLAIM**
26

27          A defendant is liable under the DMCA for knowingly removing copyright management

28  information ("CMI"), or for distributing works with the knowledge that CMI was removed, even if

4892-9596-9103.4                                    - 8 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1    the defendant itself did not remove the CMI. 17 U.S.C. § 1202(b)(1), (3).   To prevail on a claim for

2    the removal or alteration of CMI, a plaintiff must establish that a defendant: (1) without the authority

3    of the copyright owner or the law; (2); intentionally removed or altered CMI; and (3) knowing or

4    having reasonable grounds to know that the removal will induce, enable, facilitate, or conceal

5    copyright infringement. 17 U.S.C. § 1202(b)(1).  Similarly, to prevail on a claim for the distribution

6    of CMI or material from which CMI has been removed, require a showing that (1) the defendant

7    distributing that material knew that CMI "has been removed or altered without authority of the

8    copyright owner or the law;" and (2) the defendant knew or had reason to know that distributing

9    works without CMI would "induce, enable, facilitate or conceal an infringement." 17 U.S.C.

10   § 1202(b)(3); *see also Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (9th Cir. 2020).

11   **A.      Neo4j® EE and the License Thereto Contained Neo4j Sweden's CMI**

12   Both §1202(b)(1) and §1202(b)(3) require that the original copyrighted work contained CMI.

13   CMI includes, *inter alia*, the title or identifying information of the work, author or copyright owner,

14   the terms and identifying numbers or symbols referring to such information.  17 U.S.C. § 1202(c)

15   (1)-(3), (7).   CMI also includes the "[t]erms and conditions for use of the work."   17 U.S.C.

16   § 1202(c)(6).  It is undisputed that Neo4j Sweden owns the copyrights for Neo4j® EE v3.4 and v3.5

17   and licensed them subject to the Neo4j Sweden Software License.  UDF Nos. 1-8.   It is also

18   undisputed that this license constitutes Neo4j Sweden's CMI because the NOTICE provision at the

19   top clearly states that Neo4j® EE is developed and owned by Neo4j Sweden… and is subject to the

20   terms of the [AGPL], ***with the Commons Clause as follows***…." Dkt. No. 98-2, ¶ 11 and Ex. 3

21   (emphasis added); *accord*  UDF Nos. 5-6.   It also contains the terms and conditions for the use of

22   that software, including instructions on where to obtain a commercial license in the NOTICE

23   provision and the commercial restrictions imposed by the "'Commons Clause' License Condition"

24   at the bottom. *Id.*

25   **B.      Suhy Intentionally Removed Neo4j Sweden's CMI from Neo4j® EE Without**
26   **its Authorization and PureThink and iGov Had Actual Knowledge Thereof**

27   To establish a violation of Section 1202(b)(1), Plaintiffs must show Defendants intentionally

28   removed Neo4j Sweden's CMI without Neo4j Sweden's authorization.  *See* 17 U.S.C. § 1202(b)(1).

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4                                            - 9 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1979

1   Similarly, to prove a violation of Section 1202(b)(3), Plaintiffs must show that Defendants had

2   actual knowledge that CMI "has been removed or altered" without Neo4j Sweden's authorization.

3   *See* 17 U.S.C. § 1202(b)(3); *see also Harrington v. Pinterest, Inc*., No. 5:20-CV-05290-EJD, 2022

4   WL 4348460, at *3 (N.D. Cal. Sept. 19, 2022).

5         The undisputed evidence establishes that Suhy intentionally removed Neo4j Sweden's CMI

6   in Neo4j® EE v3.4 by replacing the Neo4j Sweden Software License with a generic copy of AGPL

7   in the LICENSE.txt files governing ONgDB v3.4.  UDF No. 12. Suhy did the same to Neo4j® EE

8   v3.5 when he replaced the Neo4j Sweden Software License with the AGPL in 28 LICENSE.txt files

9   governing 182 source code files that had only been released under the Neo4j Sweden Software

10  License.  UDF Nos. 13-14.   Suhy did so without Neo4j Sweden's authorization.  UDF Nos. 15-16.

11        The undisputed evidence further establishes that PureThink and iGov are liable for Suhy's

12  removal of the CMI and had actual knowledge of the removal thereof because Suhy was the sole

13  officer and director of those entities when he engaged in that misconduct.   UDF Nos. 17-18.

14  Likewise, it is undisputed that Suhy's removal of Neo4j Sweden's CMI was for the pecuniary benefit

15  of all Defendants as evidenced by their extensive promotion of ONgDB as a "free and open" version

16  of Neo4j® EE and offering paid support services that would have otherwise been prohibited by the

17  Commons Clause. UDF Nos. 19-23, 38, 44-47.  Consequently, Suhy's intentional removal of Neo4j

18  Sweden's CMI and his knowledge thereof is imputed on his entities and vice-versa for purposes of

19  §1202(b)(1) and §1202(b)(3).  *See Carson v. Verismart Software*, 2012 WL 1038713, at *4 (N.D.

20  Cal. Mar. 27, 2012) ("corporate officers, shareholders, and employees may be held personally liable

21  for the corporation's copyright infringements when they are a 'moving, active conscious force

22  behind the corporation's infringement'") (internal citation omitted); *The Comm. for Idaho's High

23  Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) ("a corporate officer or director is… personally

24  liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he

25  acted as an agent of the corporation and not on his own behalf") (internal citation omitted).

26        **C.      Defendants Distributed Neo4j Sweden's Works with its CMI Removed**

27        The undisputed facts also establish that Defendants distributed Neo4j Sweden's copyrighted

28  source code without the Neo4j Sweden Software License in violation of §1202(b)(3).  Suhy made

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4                                                        - 10 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1980

1   Neo4j Sweden's source code under the AGPL available via GFI's Github repository for ONgDB.

2   UDF No. 19.  Likewise, Defendants provided links to potential users of Neo4j® EE to download

3   ONgDB from GFI's GitHub repository and iGov's website. UDF Nos. 20-23.  As of December

4   2020, users had downloaded infringing ONgDB over 14,000 times.  Dkt. No. 118 at 8:13-15.

5           In addition, Suhy and iGov were responsible for the IRS' adoption of ONgDB, as well as

6   continuing to upload and distribute infringing ONgDB and rebranded "GDB" at the IRS.  UDF Nos.

7   24-26, 32-36.  Between August 2018 and April 2022, they facilitated the use of ONgDB on at least

8   three servers within the CKGE (a/k/a "main graph") environment. UDF No. 37.

9           Finally, iGov operated a website, www.graphstack.io, to promote ONgDB over Neo4j® EE.

10  UDF No. 38.  This website contained download links for this improperly compiled and licensed

11  software.  *Id.*  iGov continued make several versions of ONgDB available on this website even after

12  GFI entered into a stipulated injunction on February 16, 2021, which prohibited the further

13  distribution of those same versions.  *Compare* Ratinoff Decl., Exs. 48-51 *and* GFI Dkt. No. 110.

### D. The Undisputed Facts Establish that Defendants Knew or Had a Reasonable Basis to Know the Removal of the Neo4j Sweden's CMI Would Induce, Enable and Facilitate Copyright Infringement

16          To establish knowing or having reasonable grounds to know that conduct will "induce,

17  enable, facilitate or conceal" infringement under §1202(b), Plaintiffs "need not show that any

18  specific infringement has already occurred."  *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir.

19  2018).   Rather, they can "provide evidence from which one can infer that future infringement is

20  likely, albeit not certain, to occur as a result of the removal or alteration of CMI." *Id.*  Such evidence

21  may include "a past 'pattern of conduct' or 'modus operandi' that the defendant was aware or had

22  reasonable grounds to be aware of the probable future impact of its actions."  Here, Defendants

23  clearly engaged in a pattern of conduct where they had reasonable grounds to know that the removal

24  of Neo4j Sweden's CMI from Neo4j® EE would result in infringement of its copyright.

25          As previously held by this Court and affirmed by the Ninth Circuit, Suhy did so under the

26  false premise that Section 7 of the Neo4j Sweden Software License permitted licensees to remove

27  "further restrictions," *i.e.* the Commons Clause, imposed by Neo4j Sweden as the copyright holder

28  / / /

4892-9596-9103.4                                                    - 11 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1   and original licensor.[2]  Dkt. No. 118 at 24:7-25:19, *aff'd* Dkt. No. 140 at 3; Dkt. No. 98-2, ¶ 11 and

2   Exh. 3 at §§ 7, 10.  This contradicted what Sections 7 and 10 of that license actually states—that only

3   a downstream licensee may remove unauthorized restrictions when placed by an upstream licensee

4   who redistributes the copyrightable program, not those placed by the copyright owner offering the

5   terms to the licensees.  *See id.*  The fact that Defendants "misinterpreted" the provisions of the Neo4j

6   Sweden Software License does not negate the knowledge element under §1202(b).  *See Neo4j, Inc.*

7   *v. Graph Found., Inc*., No. 5:19-CV-06226-EJD, 2020 WL 6700480, at \*4 (N.D. Cal. Nov. 13, 2020)

8   (rejecting GFI's argument that it is not possible for a "contractually permitted action" to have been

9   "taken with knowledge that it would aid infringement" under the DMCA).

10        More importantly, Defendants knew or had reason to know that they could not replace the

11   Neo4j Sweden Software License with the AGPL without Neo4j Sweden's authorization.   UDF

12   No. 39.  This is further evidenced by their failure to seek competent legal advice, and reliance on

13   Suhy's unqualified analysis of the provisions of the AGPL and "internet research" that was

14   admittedly inconclusive.  *Id*.  In May 2018. Suhy also participated in a discussion thread on

15   Plaintiffs' GitHub repository where someone claiming to represent Plaintiffs told Suhy that his

16   interpretation of Section 7 was wrong for reasons similar to those found by this Court. UDF No. 40.

17   Despite this obvious red flag, Suhy "didn't have time to go and dive into it" and chose not to seek

18   legal advice concerning those views despite not understanding Plaintiffs' legal position.  *Id*.  Thus,

19   Suhy chose to remain willfully blind of Neo4j Sweden's rights as the copyright holder and licensor.

20        Suhy also sought guidance from the Free Software Foundation ("FSF") on the removal of

21   the Commons Clause.  UDF No. 41.  The FSF told him "[t]he copyright holder on a work is the one

22   with the power to enforce the terms of the license" and "[i]f a work was previously available under

23   a free license, and later that license is changed, users can always use that earlier version under the

24   terms of the free license." *Id*.  The FSF also warned that "we cannot provide you with legal advice"

25   and that he should "talk with legal counsel." *Id.*  Suhy admittedly ignored the FSF's admonitions

26

27   [2] As detailed in Plaintiffs' concurrently filed Motion to Strike the Expert Report of Bradley Kuhn, the Court's findings on the interpretation of the provisions in the Neo4j Sweden Software License

28   are now law of the case and thus not subject to further argument or challenges by Defendants.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4

- 12 -

1    to seek such advice, and instead chose to replace the Neo4j Sweden Software License with a generic

2    copy of the AGPL, thereby removing *all* of Neo4j Sweden's CMI in that license. UDF No. 42.

3          Finally, Defendants knew or had reason to know their removal of the Commons Clause

4    would result in end-users infringing Neo4j Sweden's right to limit the use of Neo4j® EE to paid

5    subscribers. *See Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008) ("[c]opyright holders

6    who engage in open source licensing have the right to control the modification and distribution of

7    copyrighted material" and where "a license is limited in scope and the licensee acts outside the

8    scope, the licensor can bring an action for copyright infringement"); *accord MDY Indus., LLC v.*

9    *Blizzard Ent., Inc*., 629 F.3d 928, 939 (9th Cir. 2010).   Suhy understood that Neo4j Sweden owned

10   the copyright for Neo4j® EE and that Neo4j Sweden controlled the licensing thereof.  UDF No. 15.

11   He also understood that the Common Clause imposed commercial restrictions on the use of Neo4j®

12   EE. UDF No. 43; *accord* Dkt. No. 98-1, ¶ 27 and Ex. 25 ("[Neo4j] tried adding a 'commons clause'

13   to the AGPL license, trying to precent [sic] companies from selling (and competing against them on

14   procurements)"); *id.,* ¶ 31 and Ex. 29 ("People can pay money for a restrictive commercial license,

15   or use Neo4j Enterprise for free under it's open source license. [] This fact is very counterintuitive.

16   What the commercial 'subscription' really offers is support, because it's better to use the open source

17   license than the commercial license in this case.").

18          Nevertheless, Suhy copied source code from Neo4j® EE licensed under the Neo4j Sweden

19   Software License and stripped out the CMI for that source code, including the commercial

20   restrictions imposed by the Commons Clause.  UDF Nos. 12-14.  Defendants then distributed that

21   source code as ONgDB without Neo4j Sweden's CMI with the specific intent of providing an open-

22   source, restriction-free version of the software in violation of the Neo4j Sweden Software License.

23   UDF No. 19-38, 43-44.  Defendants intentionally did so to profit off providing paid support services

24   – in direct contradiction to the commercial restrictions in the missing Commons Clause – based off

25   the savings users would gain by not paying Plaintiffs for a commercial license for Neo4j® EE.  UDF

26   No. 44; *accord* Dkt. No. 98-1, ¶¶ 64-68 and Exs. 62-66 ("We only focus on only supporting 100%

27   free and open source ONgDB Enterprise [] Not only does this cut down on unnecessary [sic]

28   commercial license costs, the open source licenses do not place any restrictions on the number of

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4                                    - 13 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1983

1   cluster instances or cores like the commercial licenses do."); *id.,* ¶ 128 and Ex. 126 ("[Y]ou can

2   have a huge ONgDB causal cluster with as many instances, cores, etc as you wish with no licensing

3   costs - as it's 100% free and open.  You can purchase enterprise production support for the open

4   source distributions as well - just not from Neo4j Inc partners.").  Consequently, any reasonable jury

5   would concluded that Defendants knew this would induce or enable the infringement of Neo4j

6   Sweden's copyrights in Neo4j® EE. *See Stevens*, 899 F.3d at 674.

7          While Plaintiffs are not required to show Defendants' removal of Neo4j Sweden's CMI

8   resulted in actual copyright infringement in order to prevail, there is clear evidence of this occurring.

9   For example, Suhy concealing the infringing nature of ONgDB and misleading the IRS to believe

10  that GFI licensed the software rather than Neo4j Sweden exemplifies their actual knowledge that

11  the removal of Neo4j Sweden's CMI would result in copyright infringement.  UDF No. 45; *accord*

12  Ratinoff Decl., ¶ 35 and Ex. 33 ("ONgDB open source licenses come directly from the Graph

13  Foundation as well, not from Neo4j Inc.").  This deception caused the IRS to adopt ONgDB over

14  Neo4j® EE in August 2018 and paid Suhy and iGov over $1.3 million to support that software in

15  violation of the Neo4j Sweden License that they had replaced with the AGPL. UDF Nos. 24-37.

16         Defendants then leveraged the IRS's adoption of ONgDB to encourage other government

17  agencies and contractors to do the same.    UDF No. 46.    This included convincing Greystones

18  Consulting Group, LLC ("Greystones") to use ONgDB in an analytics platform branded as

19  "GreyRaven."  UDF No. 47.  Greystones was able to secure at least two contracts with United States

20  Air Force that contemplated the use of GreyRaven and ONgDB.  UDF No. 48.

21         Perhaps the most egregious example of Defendants facilitating infringement was with the

22  Maryland Procurement Office (a/k/a the National Security Agency, NSA and MPO), which had

23  tasked Next Century to analyze available graph database technologies, including Neo4j® EE.  UDF

24  No. 49.  After the release of ONgDB v3.4, Next Century reconfirmed with Suhy the MPO could use

25  ONgDB under the AGPL without restrictions or paying Plaintiffs for a commercial license as

26  advertised on the iGov's website.  UDF No. 50.  After the release of ONgDB v3.5, Next Century

27  again asked Suhy whether it had the same closed enterprise features as Neo4j® EE v3.5, and could

28  use it without restrictions or paying Neo4j for a commercial license.  UDF No. 51.  Suhy

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4                                          - 14 -

1   reconfirmed the same.  *Id.*  Defendants' removal of Neo4j Sweden's CMI and false statements about

2   the same caused Neo4j USA to lose a multi-year $2.2 million deal when the MPO chose ONgDB

3   over paying for a subscription to Neo4j® EE.  UDF No. 52.

4       In sum, any reasonable jury would find that Defendants knew that their removal of Neo4j

5   Sweden's CMI  would enable the infringement of Neo4j Sweden's copyrights in Neo4j® EE in a

6   commercial setting.  *See Mango v. BuzzFeed Inc*., 970 F.3d 167 (2nd Cir. 2020) (upholding district

7   court's finding that defendant violated the DMCA by distributing the photo knowing that the

8   photographer's CMI had been removed and knowing that distributing it with a false credit would

9   conceal that defendant did not have authority to use the photo).  The Court should therefore grant

10  summary judgment in favor of Plaintiffs on their DMCA claim.

### E.  Plaintiffs are Entitled to Injunctive Relief Under 17 U.S.C. § 1203

12      The DMCA vests the Court with the "may grant temporary and permanent injunctions on

13  such terms as it deems reasonable to prevent or restrain a violation" of §1202(b).   17 U.S.C.

14  § 1203(b)(1).  To obtain an injunction, a plaintiff must show that (1) it suffered an irreparable injury;

15  (2) remedies available at law, such as monetary damages, are inadequate; (3) considering the balance

16  of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public

17  interest would not be disserved by a permanent injunction.  *Apple Inc. v. Psystar Corp.,* 673 F. Supp.

18  2d 943, 948 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011).

19      If the Court does not enjoin Defendants, Plaintiffs will suffer irreparable injury from the

20  ongoing damage resulting from the proliferation of improperly licensed ONgDB and its derivatives

21  such as GraphStack GDB and GDB.  *See Apple*, 673 F. Supp. 2d at 948 (recognizing that monetary

22  damages would not prevent defendant from continuing to infringe plaintiff's copyrights and violate

23  the DMCA in the future, and will not prevent third-parties from infringing plaintiff's copyrights);

24  accord *Michael Grecco Prods., Inc. v. WrapMarket, LLC*, 2017 WL 10434020, at *4 (C.D. Cal.

25  Nov. 8, 2017) (irreparable injury exists where infringement harms the competitive position and

26  market share of the copyrighted work).

27      As detailed above, there is compelling evidence that Plaintiffs have suffered a loss to control

28  over licensing of the commercial licensing of Neo4j® EE as result of Defendants' unauthorized

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4                                    - 15 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1985

1    "relicensing" of that software under the AGPL and falsely calling ONgDB a free and unrestricted

2    drop-in replacement for official Neo4j® EE.  It is also clear that Defendants will continue to do so

3    (as evidenced by the IRS' continued use of GDB and Suhy's maintenance thereof) unless enjoined

4    by the Court.  Further, the balance of hardships favors Neo4j USA because an injunction would

5    serve the narrow purpose of preventing or restraining further infringement of Neo4j Sweden's

6    copyrights and violations of the DMCA; and Defendants cannot "claim any legitimate hardships as

7    a result of being enjoined from committing unlawful activities." *Apple*, 673 F. Supp. 2d at 950.

8        Finally, a preliminary injunction "would serve no purpose other than to vindicate the

9    legitimate rights of [Neo4j Sweden] in its copyrights." *Apple*, 673 F. Supp. 2d at 950.  "Such

10   equitable relief would not harm the interests of the public; rather, consistent with the policies

11   underlying copyright protection, an injunction preventing [Defendants] from continuing to commit

12   infringing and illegal, if not criminal, acts under the Copyright Act and DMCA would ensure that

13   the public will continue to benefit from the creative fruits of [Neo4j Sweden's] labor. *Id.* The public

14   interest would be further served by preventing Defendants from inducing unsuspecting customers

15   to use improperly licensed software in violation of Neo4j Sweden's copyright.   The Court should

16   thus enter the proposed preliminary injunction filed herewith.

17   **V.      NEO4J USA IS ENTITLED TO SUMMARY JUDGMENT ON DEFENDANTS'
             UNCLEAN HANDS DEFENSE**

18

19       Defendants asserted an unclean hands defense to Neo4j USA's Lanham Act and UCL claims,

20   as well as a breach contract claim based on PureThink's breaches of the confidentiality and

21   trademark licensing provisions in the SPA.[3]  *See* Dkt. No. 91 at 16:20-19:7; Dkt. No. 169 at 10:4-8

22   ("[t]he unclean hands defense applies to the breach of [the SPA] and the trademark claims"); *see*

23   *also* Dkt. No. 91 at 16:20-24. To prevail on an unclean defense, a trademark defendant must prove

24   by clear and convincing evidence that (1) plaintiff's conduct is inequitable; and (2) the conduct

25   _____

26   [3] Neo4j USA bases its Lanham Act and UCL claims on the same misconduct. *See* Dkt. No. 118 at
     23:15-19. Neo4j USA also bases its breach of contract claim on the same acts of infringement of the

27   Neo4j Mark and harm to the goodwill associated therewith. *See* Dkt. No. 90, ¶¶ 134-147.  Thus, the

28   analysis of whether Defendants can maintain an unclean hands defense to these claims is the same.

1    relates to the subject matter of the trademark claims.  *Fuddruckers, Inc. v. Doc's B.R. Others, Inc*.,

2    826 F.2d 837, 847 (9th Cir. 1987); *accord Vineyard House, LLC v. Constellation Brands U.S.*

3    *Operations, Inc.*, 515 F. Supp. 3d 1061, 1078 (N.D. Cal. 2021) (citing same).  With respect to the

4    first requirement, "only a showing of wrongfulness, willfulness, bad faith, or gross negligence,

5    proved by clear and convincing evidence, will establish sufficient culpability for invocation of the

6    doctrine of unclean hands."  *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1029

7    (9th Cir. 2018) (internal citation and quotes omitted); *see also GoTo.com, Inc. v. Walt Disney Co*.,

8    202 F.3d 1199, 1210 (9th Cir. 2000) (a party's hands need not be "clean as snow" to avoid the

9    unclean hands doctrine).

10        With respect to the second requirement, "[t]o show that a trademark plaintiff's conduct is

11   inequitable, defendant must show that plaintiff used the trademark to deceive consumers." *Japan*

12   *Telecom, Inc. v. Japan Telecom Am. Inc*., 287 F.3d 866, 870 (9th Cir. 2002).  To do so, defendant

13   must show that that plaintiff's "misdeeds ... have an immediate and necessary relation to the equity

14   that [plaintiff] seeks in respect of the matter in litigation."  *S. Cal. Darts Ass'n v. Zaffina,* 762 F.3d

15   921, 932 (9th Cir. 2014) (*quoting Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245

16   (1933)).  Summary judgment in favor of a trademark plaintiff is thus appropriate where an unclean

17   hands defense fails to meet the relatedness requirement.  *See id.*

18        Defendants do not assert that Neo4j USA engaged in fraud in obtaining the Neo4j Mark or

19   that it used the mark to deceive consumers.  Nor could they do so because this Court already struck

20   Defendants' fraud in the procurement and naked licensing defenses asserting the same.  *See* Dkt.

21   Nos. 70, 85.  Defendants instead allege Neo4j USA engaged in "unlawful" licensing practices by

22   "attempting to improperly use a dual licensing practice having a commercial version controlled by

23   plaintiff and an open source software licensed under [the GPL]."  Dkt. No. 91 at 16:21-24, 17:16-

24   19.  They cite to Neo4j USA and PureThink's dispute over whether the IRS needed to purchase a

25   commercial license for Neo4j® EE rather than use that software under the AGPL as evidence

26   thereof.  *Id.*, 16:23-17:16.  Defendants then conclude that "plaintiff cannot lawfully operate a dual

27   license model since the open source is based on GPL or AGPL, plaintiff resorts to sharp and false

28   practices with customers (lying about the difference between the commercial versions and open

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4                                   - 17 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_1987

1   source version) attempting to restrict partners from supporting the open source Neo4j version with

2   unlawful restrictions and interfering in attempts to use open source Neo4j software." *Id.* at 18:4-12.

3        Even assuming Defendants could prove Neo4j USA engaged in these alleged acts, there is

4   no clear and convincing evidence that it acted with any fraudulent intent. *See Wells Fargo & Co. v.*

5   *Stagecoach Properties, Inc.*, 685 F.2d 302, 308 (9th Cir. 1982) (bad intent is the essence of the

6   defense of unclean hands); *Jarrow Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d 829, 841 (9th

7   Cir. 2002) (application of unclean hands to Lanham Act claims requires evidence of fraudulent

8   intent).  There is also no clear and convincing evidence establishing Neo4j USA's alleged conduct

9   resulted in any consumer deception.  *See Perfumebay.com, Inc. v. eBay, Inc*., 506 F.3d 1165, 1178

10  (9th Cir. 2007) (holding that the record must "affirmatively demonstrate" consumer deception); *see*

11  *also Republic Molding Corp. v. B.W. Photo Utils*., 319 F.2d 347, 349–50 (9th Cir. 1963) (the "extent

12  of actual harm caused by the conduct in question" is "highly relevant" to whether the plaintiff's

13  conduct was inequitable); *Allmerica Fin. Life Ins. & Annuity Co. v. Dalessio*, No. C-96-0385 VRW,

14  2006 WL 408538, at *7 (N.D. Cal. Feb. 20, 2006) (recognizing that "courts do not apply the doctrine

15  of unclean hands where the defendant has suffered no harm as a result of the plaintiff's actions").

16  To the contrary, it is undisputed the IRS **ignored** Neo4j USA's assertion that it needed to buy a

17  commercial license and continued to use Neo4j® EE for free under the AGPL. UDF Nos. 53-57.

18  The IRS ultimately awarded Defendants the CKGE contract via eGov Sol.  UDF Nos. 25-30, 58.

19        More importantly, **none** of Neo4j USA's alleged "bad acts" are materially related to

20  Defendants' infringement of the Neo4j Mark, or their false advertising in connection with the

21  distribution, offering, and promotion of ONgDB software as a free and open, drop-in replacement

22  for Neo4j® EE.  *See* Dkt. No. 118 at 18:2-32:14.  Rather, Neo4j USA's alleged "bad acts" pertain

23  to the **prior** dual license model for Neo4j® EE.  *See* Dkt. No. 91 at 16:21-19:7.  This is fatal to their

24  unclean hands defense because it is undisputed that **Neo4j Sweden** rather than Neo4j USA owned

25  the copyright to Neo4j® EE and was licensor of Neo4j® EE under the GPL and AGPL at all relevant

26  times.  UDF Nos. 1, 15, 59.

27        Even if Neo4j USA were the licensor, this Court already determined that the GPL and AGPL

28  "are copyright licenses, not trademark licenses."  Dkt. No. 85 at 7:27-8:7.  Such copyright-based

4892-9596-9103.4                           - 18 -

1  licensing practices do not bear the requisite "immediate and necessary" relationship to Neo4j USA's

2  Lanham Act and UCL claims.  *See S. Cal. Darts Ass'n*, 762 F.3d at 931-33; *see also Fuddruckers*,

3  826 F.2d at 847 (9th Cir. 1987) (plaintiff's deceptive marketing of its hamburger meat as "ground

4  steak" did not bar trade dress infringement suit); *Tveter v. AB Turn–O–Matic*, 633 F.2d 831, 839

5  (9th Cir. 1980) (plaintiff's use of "patent pending" in connection with trademark at issue when no

6  patent application was on file did not bar claims for trademark infringement and unfair competition).

7        In addition, Defendants' unclean hands defense bears no temporal relationship to the crux of

8  Neo4j USA's Lanham Act claims.  It is undisputed that Neo4j Sweden release Neo4j® EE v3.4 (the

9  first version subject to the more restrictive Neo4j Sweden Software License) **in May 2018**, and as a

10 result, ceased its dual licensing model under the GPL and AGPL.  UDF Nos. 2-5, 61-62.  It is also

11 undisputed that by this time, Neo4j® EE included advanced scalability, availability, security, and

12 operational features that were not previously released under either the GPL or AGPL, at least 182

13 files that had never been released under either license. UDF No. 63. Defendants released ONgDB

14 sometime **in July 2018**, and thereafter engaged in the misconduct that the Court found constituted

15 trademark infringement, false advertising and false designation of origin in violation of the Lanham

16 Act and UCL. *See* Dkt. No. 118 at 18:2-32:14; *see also* UDF Nos. 10-11, 64.

17       Conversely, Neo4j USA's alleged false statements that the IRS needing to obtain a paid

18 license for Neo4j® EE were made **before October 2017**.  *See* UDF No. 65; *see also* Dkt. No. 118 at

19 3:17-4:22; Dkt. No. 171 at ¶¶ 20-21.  For this additional reason, Defendants' unclean hands defense

20 fails as a matter of law.  *See Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est. Educ., Inc.*,

21 621 F.3d 981, 987 (9th Cir. 2010) (recognizing that conduct which came to an end prior to the events

22 which are in issue cannot constitute an unclean hands defense); *see also* 6 McCarthy on Trademarks

23 and Unfair Competition § 31:55 (5th ed.) ("[d]efendant cannot dredge up inequitable conduct of

24 plaintiff which had been discontinued for some time prior to suit") (citing same).

25       The remainder of Neo4j USA's alleged misconduct cannot save Defendants' unclean hands

26 defense.  By stipulating to the dismissal of their IIPEA claim, Defendants conceded that the SPA's

27 3-year post termination restriction on PureThink supporting open source version of Neo4j® software

28 did not amount to an unlawful restrict on trade.  Dkt. Nos. 172, 176.   Thus, Neo4j USA telling the

1   IRS the PureThink was subject to such restrictions cannot amount to wrongful conduct. *See* Dkt.

2   No. 91 at 17:14-16.   Likewise, the subsequent inclusion of the Commons Clause in Neo4j® EE

3   v3.4 does not amount to inequitable conduct.  *See id* at 17:24-18:1.  This Court already held that

4   Neo4j Sweden as the copyright holder could license Neo4j® EE how it saw fit.  *See* Dkt. No. 118

5   at 24:7-25:19, *aff'd* Dkt. No. 140 at 3.  In any event, Neo4j USA telling the IRS that it could not

6   work with PureThink and needed to purchase a commercial license does not have an "immediate

7   and necessary relationship to the subsequent enforcement of its trademark rights against Defendants'

8   promotion of ONgDB. *See, e.g., Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 386 F. Supp. 3d 926

9   (N.D. Ill. 2019) (striking unclean hands defense based on trademark owner's allegedly improper

10  motive to restrict sales of trademarked product to certain desired channels of trade); *Warner Bros.*

11  *v. Gay Toys, Inc*., 724 F.2d 327 (2nd Cir. 1983) (threatening enforcement of prosecution for

12  copyright violations did not amount to unclean hands because it was unrelated to trademark rights).

13       Accordingly, the Court should grant summary judgment in favor of Neo4j USA on

14  Defendants' unclean hands defense because they cannot prove by clear and convincing evidence

15  that (1) any of Neo4j USA's alleged acts were inequitable; and (2) that such acts bear an immediate

16  and necessary relation to Neo4j USA's Lanham, UCL and breach of contract claims.

17  **VI.     PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT  PURETHINK'S**
        **BREACH OF EXCLUSIVELY CONTRACT COUNTERCLAIM**
18

19       The essential elements of a breach of contract claim are: (1) the existence of an enforceable

20  contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4)

21  resulting damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011);

22  *accord Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017).  Defendants

23  claim that Neo4j USA entered into a separate agreement with PureThink on April 11, 2015 where it

24  allegedly agreed that PureThink would be the exclusive reseller of the Gov't Edition to government

25  agencies and have continuing exclusivity to support users of that version of Neo4j® Software.  Dkt.

26  No. 177, ¶¶ 15-16, 54 and Ex. C.

27       Defendants identify an April 11, 2015 letter addressed "[t]o whom it may concern" signed

28  by Lars Nordwall on behalf of Neo4j USA as the written contract between the parties. Dkt. No. 177,

1   ¶ 16 and Ex. C. However, this letter merely states "PureThink LLC a Delaware Company, is the

2   only Neo4j Government Edition reseller that is certified to resell and support to the US Federal

3   Government, Department of Defense (DOD), and Intelligence Agencies." *Id.*, Ex. C. They further

4   allege that in reliance on this agreement, Defendants "spent an equivalent to $650,000 to design,

5   develop, and build" the Gov't Edition, which consisted of Neo4j® EE and "additional services,

6   support and software modules" to address government security requirements. *Id.*, ¶ 17. Defendants

7   then claim that Neo4j USA breached the exclusive agreement when it discontinued the Gov't

8   Edition, and as a result, PureThink "suffered damages "excess of $1,354,856.55." *Id.*, ¶ 57.

9       Summary judgment is appropriate where the party claiming breach cannot establish one (or

10  more) of the four essential elements. *Celotex*, 477 U.S. at 322-23; *accord Snapkeys, Ltd. v. Google

11  LLC*, 539 F. Supp. 3d 1040, 1048 (N.D. Cal. 2021) (citing same). As detailed below, PureThink

12  cannot establish the first element because the undisputed facts show that Neo4j USA never entered

13  into a contract on the terms alleged. Even if it had done so, PureThink still cannot prevail because

14  there was no breach by Neo4j USA, no excused performance and no alleged damages to PureThink.

15      **A.     Neo4j Never Consented to Separate Exclusivity Agreement with PureThink**

16      Under California law, contract formation "requires that the parties' reach mutual assent or

17  consent on definite or complete terms." *Netbula, LLC v. Bindview Dev. Corp.*, 516 F. Supp. 2d 1137,

18  1155 (N.D. Cal. 2007) (citing *Merced County Sheriff's Employees' Ass'n v. Merced County*, 188

19  Cal.App.3d 662, 670 (1987)). "Mutual assent is determined from the reasonable meaning of the

20  words and acts of the parties, and not from their unexpressed intentions or understandings." *Id.*

21  "Terms of a contract must also be sufficiently definite in all particulars essential to its enforcement."

22  *Id.* "Consent" means "mutual assent or consent on definite or complete terms." *Netbula*, 516 F.

23  Supp. 2d at 1155. "A contract is void and unenforceable if it is so uncertain and indefinite that the

24  intention of the parties in material particulars cannot be ascertained." *Id.*

25      While Neo4j may have permitted PureThink to act as the exclusive reseller of Neo4j Gov't

26  Edition to the government ***under the SPA***, there is no evidence that Neo4j USA ever consented to

27  or entering into an exclusivity agreement with PureThink apart from the SPA. Instead, Suhy

28  repeatedly told Neo4j USA – both before and after April 11, 2015 – that it was merely a "virtual

4892-9596-9103.4                                          - 21 -

1   concept" for PureThink to bypass protracted mandatory competitive bidding processes and take

2   advantage of a faster sole-source procurement track.  UDF No. 66; *accord* Dkt. No. 98-1, Ex. 5 ("we

3   created the Government Edition … specifically for US government procurements to help with sole

4   source"); *id.*, Ex. 17 ("[Gov't Edition] can be sole sourced because Neo Technology has given Pure

5   Think exclusivity to this specific edition specifically just to support sole source. This means fast

6   procurements.").  Suhy even told potential customers the same.  UDF No. 67; *accord* Ratinoff Decl.,

7   Ex. 14 ("We are the only reseller of the [Gov't Edition] which allows for sole source procurement

8   justification for Federal agencies."). The letter purporting to be a separate agreement was simply the

9   means for PureThink to establish sole source justification. UDF No. 68; *accord* Dkt. No. 98-1,

10  Ex. 12 ("Among other supporting documents, we provide a copy of the 'Government Edition

11  Exclusivity Agreement' between Neo Technology and PureThink to the contract officer as part of

12  the sole source justification. It's the key sole source justification document.").

13          Finally, Neo4j USA never agreed to give PureThink ownership rights in the Gov't Edition,

14  or the right to be compensated for any development work upon.  Suhy admitted – again before and

15  after April 11, 2015 – that Neo4j USA owned the intellectual property making up the Gov't Edition,

16  as well could terminate PureThink as the exclusive reseller ***at any time and for any reason***.  UDF

17  Nos. 69-70; *accord* Ratinoff Decl., Ex. 12 ("The Government Edition is Neo Technology's product,

18  not ours and you have full control over it. You can reassign exclusivity … at any time for instance.").

19  Suhy also sent proposed drafts of the external and internal versions of the letters with the internal

20  one stating, "Neo Technologies has the right to cancel this exclusivity agreement at any time and

21  for any reason."  Ratinoff Decl., Ex. 8 (green highlight); *see also id.,* Ex. 7 ("We can basically have

22  2 documents - one that we give to agencies on your letterhead (I would just scan and send to them

23  initially), and 1 between us that says you can cancel at any time for any reason.").

24          Suhy's representations were consistent with the internal version of the April 11, 2015 letter

25  signed by Lars Nordwall on behalf of Neo4j USA, which stated "Neo Technology has the right to

26  cancel this exclusivity agreement at any time and for any reason."[4]  Ratinoff Decl., Ex. 9 (green

27  _____

28  [4] The internal version of the sole source letter signed by Neo4j USA also omitted Suhy's proposed

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4                                          - 22 -

**SER_1992**

highlight).  Other employees of Neo4j USA working with PureThink shared the same understanding based on Suhy's prior written representations.  UDF Nos. 71-73.  After the parties allegedly entered into the exclusivity agreement, Suhy prepared documents for Neo4j USA's new Vice President of Strategic Alliances and Channels, John Broad, wherein Suhy reconfirmed the same. UDF No. 74. Consequently, no reasonable juror would conclude that there was a meeting of the minds and that Neo4j USA consented to an exclusivity agreement separate from the SPA on the terms claimed by PureThink.  For this reason, the Court should grant summary judgment in favor of Neo4j USA.  *See Netbula*, 516 F. Supp. 2d at 1155; *Mitchell v. Specialized Loan Servicing LLC*, 600 F. Supp. 3d 1112, 1120 (C.D. Cal. 2021), *aff'd*, No. 22-55107, 2022 WL 17883609 (9th Cir. Dec. 23, 2022).

**B.    Neo4j Did Not Breach the Alleged Exclusivity Agreement**

Even assuming arguendo a separate exclusivity agreement came into existence, PureThink cannot establish any alleged breach thereof.  As detailed above, Neo4j USA indisputably had the right to discontinue the Gov't Edition and terminate PureThink as the exclusive reseller thereof without cause and without further compensating PureThink.  UDF Nos. 69-74. Consequently, Neo4j USA could not have breached the alleged exclusivity agreement when it notified PureThink that it was discontinuing the Gov't Edition on June 19, 2017.  UDF No. 84. Neo4j USA is therefore entitled to summary judgment on PureThink's counterclaim because the uncontroverted evidence establishes Neo4j USA did not breach the alleged exclusivity agreement. *See Curley v. Wells Fargo & Co.*, 120 F. Supp. 3d 992, 1002 (N.D. Cal. 2015), *aff'd*, 692 F. App'x 900 (9th Cir. 2017) (granting summary judgment in favor of defendant where plaintiff could not establish a genuine issue of fact that a breach occurred); *accord Netbula*, 516 F. Supp. 2d at 1157.

**C.    Defendants Failed to Perform and Did Not Suffer Any Monetary Damages[5]**

Neo4j is also entitled to summary judgment because PureThink cannot establish that it

---

language "[t]his agreement supersedes any other agreements." UDF No. 72.  This is further evidence that there was never a meeting of the minds between Neo4j USA and PureThink.

[5] One court recently recognized "nominal damages are available for breach of contract and can support entry of judgment in favor of a plaintiff who suffered 'no appreciable harm.'" *Meta*

4892-9596-9103.4                    - 23 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1   performed all its obligations under the exclusive contract or is otherwise excused from performing

2   such obligations.  In conjunction with terminating the Gov't Edition on June 19, 2015, Neo4j USA

3   informed PureThink that it was "no longer authorized to market, resell, demonstrate or provide

4   training on the Neo4j Government Edition."  UDF No. 75.

5        Suhy acknowledged this and agreed to remove all references from PureThink's website.

6   UDF No. 76.  Yet, Defendants continued to exploit the intellectual property associated with the

7   Gov't Edition (UDF Nos. 77-80)—despite previously admitting they had no right to do so (UDF

8   Nos. 69-74).  The same day Neo4j USA terminated the SPA, Suhy sent emails to government

9   contractors and agencies admitting that iGov was reusing the ***same*** framework and add-ons:

> 10   Neo4j Government Edition is being retired and the framework and services we
> developed are going to be offered under the new name: **Government Package
> for Neo4j.** [] PureThink is still a Neo4j Solution partner and has the same exact
> team.   In order to be able to offer the best value to our US agency client, we
> had to move the Government Package to under our other company iGov Inc[.],
> because Neo4j Solution partners are forbidden from dealing with any Neo4j
> open source licenses and this package gives you the option to choose between
> open source or commercial licenses.

> 14   We've simply taken the framework and services that made a Neo4j Enterprise
> (Commercial only) into Neo4j Government Edition and made them available as
> a stand alone package we call (Government Package for Neo4j).

16   Ratinoff Decl., Ex. 24 (emphasis in original); *id.* Ex. 25 ("iGov owns the new Government Package

17   for Neo4j as well"); *accord* UDF Nos. 77-80.  PureThink and its successor-in-interest iGov

18   continued to actively marketed "Government Package for Neo4j" until they released ONgDB.  UDF

19   Nos. 81-83.  PureThink thus cannot establish that it performed all of its contractual obligations or

20   that its performance was otherwise excused **because *it never stopped using the Gov't Edition***.

21        For these same reasons, no reasonable juror would conclude that PureThink and suffered

22   $1.3 million in damages since the IRS ultimately awarded the CKGE contract for the same amount

23   _____

24   *Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1258 (N.D. Cal. 2022).  However, this

25   does not preclude this Court from holding that PureThink is not entitled to either monetary damages

26   or nominal damages.  *See Alpha GRP, Inc. v. Subaru of Am., Inc.*, No. CV182133MWFMRWX,

27   2022 WL 18638819, at *6 (C.D. Cal. Apr. 27, 2022) (denying motion for reconsideration of

28   summary judgment finding that plaintiff suffered no damages because "at least one California

     appellate court has held that an award of nominal damages under California law is discretionary").

4892-9596-9103.4                                  - 24 -

1   so that iGov could continue to implement the framework PureThink had developed with the Gov't

2   Edition.  UDF Nos. 25-30, 85.

3       PureThink also did not maintain any time sheets that could support their claim that PureThink

4   "spent an equivalent to $650,000 to design, develop, and build" the Gov't Edition.  UDF No. 86.

5   Likewise, the financial statements produced by PureThink indicated that it never incurred any

6   expenses or overhead related to the development of the Gov't Edition.  UDF No. 87.  Suhy even

7   testified that PureThink did not spend any money in developing Gov't Edition.  UDF No. 88.  This

8   is because PureThink never customized Neo4j® EE, and simply integrated security provided plug-

9   ins and provided support.  Ratinoff Decl., ¶ 23 and Ex. 21 ("We don't even customize Neo4j

10   Enterprise, we just make plugins (Java jar files that are dropped into the plug-in directory which add

11   features to support NIST Security controls….").  Suhy also confirmed that he did not turn over

12   PureThink's work product to Neo4j USA upon termination because "I don't think that would be

13   theirs" and used it for iGov's "Government Packages for Neo4j." Ratinoff Decl., Ex. 2 at 186:14-24;

14   *accord* UDF No. 89   Accordingly, the Court should grant summary judgment in favor of Neo4j USA

15   on the additional ground that PureThink failed to perform under the alleged exclusivity agreement,

16   as well as suffered no actual damages resulting from any alleged breach by Neo4j USA.

17   **VII.   CONCLUSION**

18       For the reasons set forth herein, Plaintiffs respectfully request that the Court (1) grant partial

19   summary judgment in favor of Neo4j USA on its DMCA claim; (2) enter a preliminary injunction as

20   set forth in the proposed order filed herewith; (3) grant summary judgment in favor of Neo4j USA

21   on Defendants' unclean hands defense; and (4) grant summary judgment in favor of Neo4j USA on

22   PureThink's breach of contract claim with respect to the alleged exclusivity agreement.

23   Dated:  April 20, 2023                 HOPKINS & CARLEY
                                           A Law Corporation
24

25

26   By: */s/ Jeffrey M. Ratinoff*
        Jeffrey M. Ratinoff
27       Attorneys for Plaintiffs
         NEO4J, INC. and NEO4J SWEDEN AB
28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4                 - 25 -

# EXHIBIT A

SER_1996

### PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Defendants' Violation of the DMCA [17 U.S.C. § 1202(b)(1)]** | | |
| 1. the existence of CMI on the infringed work; | Fact 1: Neo4j Sweden is the owner of all copyrights related to the Neo4j® graph database platform, including the source code, and has licensed those copyrights to Neo4j USA in connection with the making, use, creation of derivative works, sale, offer to sell, importation, performance, display, reproduction and distribution of the copyrighted material, and the sublicensing of such rights in the United States. Dkt. No. 98-2, ¶¶ 3-4; Dkt. No. 118 at 2:15-18 (citing same). | |
| | Fact 2: Prior to May 2018, Plaintiffs offer a free and open source version of the Neo4j® graph database platform, Neo4j® Community Edition ("Neo4j® CE"), under the GNU General Public License version 3 ("GPL") license. Dkt. No. 118 at 3:1-4 (citing Dkt. No. 98-2, ¶¶ 4-5). Neo4j® CE is limited in its feature set and does not come with technical or administrative support. Dkt. No. 118 at 3:4-5 (citing Dkt. No. 98-2, ¶¶ 5-6). Plaintiffs also offered a more advanced commercial version, which included additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j® EE"). Dkt. No. 118 at 3:5-7 (citing Dkt. No. 98-2, ¶ 8). | |
| | Fact 3: Plaintiffs originally offered Neo4j® EE under both a paid-for commercial license and for free under the GNU Affero General Public License, version 3 ("APGL"). Dkt. No. 118 at 3:7-9 (citing Dkt. No. 98-2, ¶ 8). A commercial license to Neo4j® EE entitled the purchaser to use it in a proprietary setting with industry standard terms, receive support or professional services from Neo4j USA, and the right to receive software updates, which included feature updates, bug fixes and assistance. Dkt. No. 98-2, ¶¶ 7-9. | |
| | Fact 4: On May 17, 2018, Neo4j Sweden released Neo4j® EE v3.4 and replaced the AGPL with a stricter license, which included the terms from the AGPL and additional commercial restrictions provided by the Commons Clause ("Neo4j Sweden Software License"). Dkt. No. 118 at 3:9-12 (citing Dkt. No. 98-2, ¶ 11 and Ex. 3). | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 5:** The Neo4j Sweden Software License, while still allowing code to be publicly viewable and used within a certain licensed scope, prohibited the non-paying public from engaging in commercial resale and support services.  Dkt. No. 118 at 3:12-13; Dkt. No. 98-2, ¶¶ 11-12 and Ex. 3. | |
| | **Fact 6:** The NOTICE provision in the Neo4j Sweden Software License states that Neo4j® EE is developed and owned by Neo4j Sweden… and is subject to the terms of the [AGPL], with the Commons Clause as follows…." Dkt. No. 98-2, ¶ 11 and Ex. 3.  It also provides additional information, such as the title of the work, terms and conditions for use of the work, and other identifying information about Neo4j Sweden and how to obtain a commercial license for the use of Neo4j® EE.  *Id.* | |
| | **Fact 7:** In November 2018, Plaintiffs officially released of Neo4j® EE v3.5 solely under a commercial license. Dkt. No. 98-2, ¶ 13 and Ex. 4; Dkt. No. 118 at 3:13-15 (citing same). This meant that Plaintiffs were no longer publishing the source code for Neo4j® EE and offering it on an open source basis. *Id.*  This was done to simplify the licensing model, as well as prevent bad actors from profiting by providing commercial support services in closed, proprietary projects.  Dkt. No. 98-2, ¶ 13. | |
| | **Fact 8:** Prior to the official release of Neo4j® EE v3.5, Plaintiffs published several beta versions via their GitHub repository subject to the Neo4j Sweden Software License. Dkt. No. 118 at 6:18-21; Dkt. No. 98-2, ¶ 14. | |
| | **Fact 9:** Neo4j® EE v3.5.0-RC1 was the last pre-release version available to Defendants via GitHub. Thereafter, only the source code for Neo4j® CE was made publicly available under the GPL via Github. *Id.* | |
| 2. Defendants' intentional removal and/or alteration of CMI without the authorization of Neo4j Sweden | **Fact 10:** Following the release of Neo4j® EE v3.4, Suhy worked with Brad and Ben Nussbaum to form Graph Foundation, Inc. ("GFI") in June 2018. Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Exs. 27-29); Dkt. No. 98-1, ¶¶ 24-26 and Exs. 22-24. | |
| | **Fact 11:** After Suhy helped form GFI, Defendants began offering and promoting a graph database software called "ONgDB." Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Ex. 27-29); Dkt. No. 98-1, ¶ 26 and Ex. 24. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 12:** To create ONgDB, Suhy downloaded the source code for Neo4j® EE v3.4 from Neo4j's GitHub repository and impermissibly replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL, which removed (a) the valid legal notices identifying Neo4j Sweden as the copyright holder and licensor in the NOTICE provision; and (b) the commercial restrictions imposed by the Commons Clause. Dkt. No. 118 at 6:7-11 (citing Dkt. No. 98-1, Ex. 3 at 28:25-29:11; Exs. 24-26, 28; Ex. 31 at 87:24-90:9); Dkt. No. 98-1, Ex. 3 at 171:23-172:23; Dkt. No. 98-2, ¶¶ 11-12, 27. | |
| | **Fact 13:** ONgGB v3.5 contained at least 182 source code files that had only been previously released by Neo4j Sweden under the Neo4j Sweden Software License in the last publicly available beta version of Neo4j® EE 3.5. Dkt. No. 118 at 6:18-21; Dkt. No. 98-1, Ex. 38 at 6:22-7:1, 8:4-16:24; Dkt. No. 98-2, ¶¶ 13-14, 29. | |
| | **Fact 14:** Suhy again replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL in ONgDB v3.5, which (a) stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor; and (b) removed the commercial restrictions imposed by the Commons Clause in 28 LICENSE.txt files. Dkt. No. 118 at 6:21-26 (citing Dkt No. 98-1, Ex. 31 at 159:3-10 and Exs. 39-40; Dkt. No. 98-2, ¶ 30; Dkt. No. 91 at 19:2-25); Dkt. No. 98-1, ¶ 41 and Ex. 39. | |
| | **Fact 15:** Suhy knew that Neo4j Sweden owned the copyright for Neo4j® EE, that Neo4j Sweden controlled the licensing thereof, and he could not replace the Neo4j Sweden Software License with the APGL without Neo4j Sweden's authorization. Dkt. No. 98-1, ¶ 36 and Ex. 34 ("As the copyright holder, is Neo4j allowed to add the specific additional terms mentioned above to the License.txt file …?"); *id.,* ¶ 58 and Ex. 56 (yellow highlights); *id.,* Ex. 3 at 183:12-25, 187:12-188:15, 189:1-191:3. | |
| | **Fact 16:** Neo4j Sweden never gave Suhy permission to remove Commons Clause, rename it "ONgDB" and offer it for free under the AGPL. Dkt. No. 98-1, ¶¶ 11-14, 27, 29-30. | |
| | **Fact 17:** Suhy has been the sole officer and director of PureThink since he formed the corporation. Ratinoff Decl., Ex. 2 at 176:4-11; see also Dkt. No. 98-1, ¶ 16 and Ex. 14 ("[t]he principle behind PureThink … has created a new corporate entity called iGov Inc."). | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | <u>Fact 18:</u> Suhy has been the sole officer and director of iGov Inc. since he formed the corporation.  Dkt. No. 98-1, ¶ 12 and Ex. 10; *id.*, Ex. 3 at 21:20-23:25. | |
| 3. Defendants Distributed Neo4j Sweden's Works with its CMI Removed | <u>Fact 19:</u> Suhy made Neo4j Sweden's source code with its CMI removed publicly available via GFI's website and Github repository for ONgDB. Dkt. No. 98-1, Ex. 24 ("IRS is adopting the open source Neo4j Enterprise distributions we are transfered [sic] from [GFI]"); *id.*, ¶¶ 27 and Ex. 25 ("All the Neo4j enterprise distributions we package from now on will come from [GFI] and have the standard vanilla AGPLv3 open source license."); *id.*, ¶¶ 28 and Ex. 26 ("I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. [] Our open-source fork we manage can be found at https://graphfoundation.org"); *id.*, Ex. 3 at 172:4-23, 200:9-25, 211:7-24; *id.*, ¶¶ 41 and Ex. 39 (GFI Github commit); Dkt. No. 98-2, ¶¶ 27, 29-30.  This resulted in users downloading infringing ONgDB over 14,000 times by December 2020.  Dkt. No. 118 at 8:13-15. | |
| | <u>Fact 20:</u> Suhy provided hyperlinks to potential users of Neo4j® EE to download ONgDB from GFI's website and GitHub repository from his jmsuhy@purethink.com email account. Dkt. No. 98-1, Ex. 26 ("I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. [] Our open-source fork we manage can be found at https://graphfoundation.org"); Ex. 40 ("I just wanted to let you know that for ONgDB 3.5 - we merged the build framework and enterprise code back into the code repository like it used to be before Neo started stripping it out. [] See: https://github.com/GraphFoundation/ongdb"); Ex. 41 (landing page for https://github.com/graphfoundation/ongdb); Ex. 45 (emailing hyperlink to https://graphfoundation.org/ongdb/); Dkt. No. 98-1, ¶¶ 43, 60 and Exs. 41, 58 (landing page for https://github.com/graphfoundation/ongdb). | |
| | <u>Fact 21:</u> Suhy also provided hyperlinks to potential users of Neo4j® EE to download ONgDB from GFI's website and GitHub repository from his jmsuhy@igovsol.com email account.  Dkt. No. 98-1, ¶ 43 and Ex. 41 (landing page for https://github.com/graphfoundation/ongdb); *id.*, ¶ 59 and Ex. 57 (GFI webpage https://github.com/graphfoundation/ongdb), Exs. 44, 46, 54, 76-77 (emails with hyperlinks); Ratinoff Decl., Ex. 70 (email with hyperlink to https://graphfoundation.org/ongdb/).  He also tweeted and retweeted links to GFI's ONgDB webpage.  Dkt. No. 98-1, Exs. 98-100, 102-104 (tweets); Exs. 105-111 (retweets). | |

4

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 22: iGov's website provided links to potential users of Neo4j® EE to download ONgDB directly from iGov and from GFI's website.  Dkt. No. 98-1, ¶¶ 65-72 and Exs. 63-70; Dkt. No. 98-2, ¶ 27. | |
| | Fact 23: iGov used a "Download Neo4j Enterprise" hyperlink on its "downloads" page to redirect consumers to download links for ONgDB until July 27, 2020.  Dkt. No. 118 at 27:12-28:1; Dkt. No. 98-1, Exs. 66-68 (highlighted in red); id., Ex. 13 at RFA Nos. 10, 14. | |
| | Fact 24: On May 22, 2018, Suhy emailed the IRS telling them the addition of the Common Clause to the license for Neo4j® EE v3.4 was improper and sought to convince the IRS to move to an unrestricted version of Neo4j® EE 3.4.  Ratinoff Decl., ¶ 31 and Ex. 29. The IRS did not obtain an independent legal opinion on Suhy's representations regarding the alleged impropriety of adding commercial restrictions to the AGPL. Id., Ex. 4 at 96:6-98:21. | |
| | Fact 25: On May 24, 2018, the IRS awarded another entity that Suhy had an ownership interest in at the time, eGovernment Solutions ("eGov Sol"), a contract for the development and support of the CDW Knowledge Graph Environment ("CKGE"), which used an open source Neo4j® EE software as a main component.  Ratinoff Decl., ¶¶ 30, 32 and Exs. 28, 30; id., Ex. 4 at 71:2-74:21, 75:14-76:14, 77:7-78:16, 85:3-18, 126:5-127:15; id., Ex. 3 at 47:14-50:8, 50:14-54:3. | |
| | Fact 26: Before the IRS awarded the CKGE contract to eGov Sol, Suhy made clear that he would be performing the work through iGov.  See Ratinoff Decl., Ex. 4 at 61:11-64:23, 72:2-74:21, 75:14-76:14, 77:7-78:11, 85:3-18; id, Ex. 3 at 30:8-31:21, 32:9-37:14, 50:14-54:3; id., Ex. 2 at 188:10-193:25; id., ¶ 30 and Ex. 28. | |
| | Fact 27: eGov Sol viewed the CKGE contract as belonging to Suhy to which he had sole responsibility for and control over.  Ratinoff Decl., Ex. 3 at 30:8-32:23, 34:1-37:14, 50:14-51:20; id., ¶ 37 and Ex. 35 at §§ 5, 5.1, 5.2 and 5.3. | |
| | Fact 28: The IRS paid a total of $1,316,000 to eGov Sol under the CKGE contract, which in turn eGov paid to Suhy and iGov. Ratinoff Decl., Ex. 3 at 54:10-59:5, 59:18-62:3, 63:13-65:25, 67:7-69:11, 69:16-70:19, 71:17-79:12; id., ¶¶ 38-44 and Exs. 36-42. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 29:** Suhy was entitled to all the payments eGov Sol received from the IRS on the CKGE contract. Ratinoff Decl., Ex. 3 at 30:13-32:25, 36:15-37:14, 39:18-40:18, 42:14-19, 50:14-54:3, 71:17-79:12, 81:6-82:17; *id.,* ¶ 44 and Ex. 42. | |
| | **Fact 30:** eGov Sol maintained a bank account for all the payments received from the IRS, which Suhy had access to and was authorized to disburse the payments made by the IRS as he saw fit. Ratinoff Decl., Ex. 3 at 42:14-19, 62:1-63:12, 66:1-15. | |
| | **Fact 31:** In July 2018, a sales representative from Neo4j USA met with the IRS and then provided a one-year $156,000 quote for a Neo4j® EE v3.4 subscription on then-current requirements of CKGE. Ratinoff Decl., ¶ 34 and Ex. 32; *id.,* Ex. 4 at 113:5-115:20, 116:5-117:21. | |
| | **Fact 32:** As of August 2018, the IRS understood that Neo4j® CE had a performance limitations, while Neo4j® EE had enterprise-only features, came with professional services and subscriptions. The IRS ultimately decided to not allocate $156,000 for a license for Neo4j® EE because ONgDB was a free unrestricted alternative. Ratinoff Decl., Ex. 4 at 103:2-104:12, 121:18-124:4, 126:5-129:25, 130:9-132:1. | |
| | **Fact 33:** In August 2018, Suhy convinced the IRS integrate ONgDB v3.4 rather than Neo4j® EE v3.4 into the CKGE platform based, in part, on misrepresentations about GFI being the copyright holder and licensor of ONgDB. Ratinoff Decl., Ex. 4 at 126:5-129:25, 132:2-23, 133:15-138:2, 138:22-140:20, 141:8-24, 142:15-143:20; *id.,* ¶¶ 35-36 and Exs. 33-34. | |
| | **Fact 34:** While working under the CKGE contract, Suhy and iGov were responsible for supporting, maintaining and updating ONgDB on an internal repository at the IRS. Dkt. No. 98-1, Ex. 38 at 23:14-24:4; Ratinoff Decl., Ex. 3 at 366:13-368:9; *id.,* Ex. 4 at 75:14-77:24, 126:5-128:24, 142:15-143:20, 179:4-23, 204:4-206:9, 207:10-209:11; *id.,* ¶ 36 and Ex. 34; *id.,* ¶ 47 and Ex. 45 (yellow highlights). | |
| | **Fact 35:** Suhy and iGov helped the IRS upgrade the CKGE platform to ONgDB v3.5 and continued to integrate subsequent subversions through at least April 2022. Dkt. No. 98-1, Ex. 3 at 224:13-23; Ratinoff Decl., Ex. 4 at 207:7-209:15, 210:5-211:20, 213:1-216:8; *id.,* ¶¶ 45-49 and Exs. 43-47 (yellow highlights). | |

6

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 36: After April 2022, the IRS started calling ONgDB just "GDB," which still used Neo4j® EE 3.5 source code improperly licensed under the AGPL, which Suhy compiled on the IRS's internal GitLab repository. Ratinoff Decl., Ex. 4 at 175:6-176:21, 193:9-198:15. | |
| | Fact 37: Between August 2018 and April 2022, they facilitated the use of four instances of ONgDB on at least three servers within the CKGE platform (a/k/a "main graph") environment. Ratinoff Decl., Ex. 4 at 152:21-156:16, 157:23-158:11, 161:23-163:4, 166:19-167:4, 168:24-172:10, 174:19-175:5, 179:13-23. | |
| | Fact 38: iGov operated www.graphstack.io to further promote ONgDB over Neo4j® EE and allowed consumers to directly download ONgDB without any restrictions. *See* Dkt. No. 98-1, ¶ 77 and Ex. 75 ("iGov Inc is the company behind GraphStack" and that "iGov Inc offers production support packages for Neo4j / ONgDB Enterprise open source distributions for US government agencies"); *id.*, Ex. 13 (RFA No. 40); *see also* Ratinoff Decl., ¶¶ 50-54 and Exs. 48-52. | |
| 3. Defendants had reason to know that their actions would induce, enable, facilitate, or conceal copyright infringement | Fact 39: Defendants knew or had reasonable grounds to know that they could not replace the Neo4j Sweden Software License with the AGPL without Neo4j Sweden's authorization. *See* Ratinoff Decl., Ex. 1 at 178:17-179:8, 186:5-184:10. This is further evidenced by their failure to seek competent legal advice, and reliance on Suhy's unqualified analysis of the provisions of the AGPL and "internet research" that he admitted was inconclusive. *Id.* at 196:22-201:16. | |
| | Fact 40: Suhy participated in a discussion thread on Plaintiffs' Github repository in May 2018 where a person claiming to represent Neo4j told him that his interpretation of Section 7 was wrong for reasons similar to those found by this Court. Dkt. No. 98-1, ¶ 119 and Ex. 117; Ratinoff Decl., Ex. 1 at 201:18-205:16. Suhy "didn't have time to go and dive into it" and chose not to seek legal advice concerning those views despite not understanding Plaintiffs' legal position on the interpretation of the AGPL. Ratinoff Decl., Ex. 1 at 205:17-206:11. | |
| | Fact 41: When Suhy sought guidance from the FSF on the removal of the Commons Clause, the FSF told him "[t]he copyright holder on a work is the one with the power to enforce the terms of the license" and "[i]f a work was previously available under a free license, and later that license is changed, users can always use that earlier version under the terms of | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | the free license." Dkt. No. 98-1, ¶ 36 and Ex. 34 (yellow highlights).  The FSF also warned that "we cannot provide you with legal advice" and that he should "talk with legal counsel." *Id.* | |
| | Fact 42:  Suhy ignored the FSF's admonitions, and did not consult an attorney before removing the Commons Clause. Ratinoff Decl., Ex. 1 at 183:2-184:9, 187:12-188:15, 189:1-191:3, 192:18-193:24, 196:22-24. | |
| | Fact 43: Suhy understood that the Common Clause imposed commercial restrictions on the use of Neo4j® EE.  Dkt. No. 98-1, ¶ 27 and Ex. 25 ("[Neo4j Sweden] tried adding a 'commons clause' to the AGPL license, trying to precent [sic] companies from selling (and competing against them on procurements)"); *id.*, ¶ 31 and Ex. 29 ("People can pay money for a restrictive commercial license, or use Neo4j Enterprise for free under it's open source license"); *id.,* ¶¶ 44-45; Exs. 42-43 (yellow highlights); Ratinoff Decl., Ex. 1 at 154:22-156:1. | |
| | Fact 44: Suhy removed the Commons Clause to induce end-users to use ONgDB in commercial applications for free and then use the cost savings to pay Defendants to provide support services to those users.  Dkt. No. 98-1, ¶ 31 and Ex. 29; *id.*, ¶¶ 64-68 and Exs. 62-66; *id.,* ¶ 128 and Ex. 126; *see also* Dkt. No. 118 at 5:24-6:1, 6:11-7:5, 29:4-11; Dkt. No. 98-1, ¶¶ 44-45, 49 and Exs. 42-43, 47; *id.,* ¶ 49 and Ex. 47; *id.,* ¶ 56 and Ex. 54; *id.,* ¶¶ 128 and Ex. 126; *id.,* ¶¶ 132-134 and Exs. 130-132. | |
| | Fact 45: Suhy concealed the infringing nature of ONgDB and misled the IRS to believe that GFI licensed the software rather than Neo4j Sweden exemplifies their actual knowledge that the removal of Neo4j Sweden's CMI would result in copyright infringement. Ratinoff Decl., ¶ 35 and Ex. 33 ("ONgDB open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc"); *id.*, Ex. 4 at 127:19-129:25, 132:2-133:13, 134:7-136:9, 137:24-138:11, 139:22-141:17. | |
| | Fact 46: Defendants used the IRS's adoption of ONgDB to encourage other government agencies and contractors to do the same and pay them for support services.  Dkt. No. 98-1, ¶¶ 26, 44-49 and Exs. 24, 42-47. | |
| | Fact 47: Suhy also convinced another company, Greystones Consulting Group, LLC ("Greystones"), to implement ONgDB in an analytics platform branded by Greystones as "GreyRaven" and worked with them to solicit government agencies.  Ratinoff Decl., ¶¶ 55-60 and Exs. 53-58. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 48: The United States Air Force awarded Greystones two SBIR contracts based on its GreyRaven platform, which Greystones touted as being based on ONgDB.  Ratinoff Decl., ¶¶ 61-62 and Exs. 59-60. | |
| | Fact 49: The Maryland Procurement Office (a/k/a the National Security Agency, the NSA and the MPO) tasked Next Century to analyze available graph database technologies, including Neo4j® EE.  Ratinoff Decl., Ex. 5 at 19:5-20:8, 28:10-31:21. | |
| | Fact 50: After the release of ONgDB v3.4, Suhy told Next Century that the MPO could use ONgDB under the AGPL without restrictions or paying Plaintiffs for a commercial license, as advertised on the iGov's website.  *Id.,* Ex. 5 at 35:7-37:3, 40:3-42:3, 42:16-48:22, 49:9-51:14, 51:23-25, 54:7-56:21, 57:18-62:12; *id.*, ¶¶ 63-66 and Exs. 61-63; *see also* Dkt. No. 98-1, ¶¶ 49 and Ex. 47. | |
| | Fact 51:  Suhy confirmed that ONgDB v3.5 had the same closed enterprise features as Neo4j® EE v3.5, and Next Century could use it without restrictions or paying Neo4j for a commercial license.  *See* Ratinoff Decl., Ex. 5 at 62:13-65:17; *id.*, ¶ 66 and Ex. 64.  This led Next Century to upgrade to ONgDB v3.5.  Dkt. No. 98-1, ¶ 122 and Ex. 120. | |
| | Fact 52: As result of Defendants' removal of Neo4j Sweden's CMI and false statements about the same, Neo4j USA lost a multi-year $2.2 million deal when the MPO chose ONgDB instead of paying for a subscription to Neo4j® EE.  Dkt. No. 118 at 29:19-30:6; Dkt. No. 98-3, ¶¶ 22-24 and Exs. 12-13. | |
| **Defendants' Violation of the DMCA [17 U.S.C. § 1202(b)(3)]** | | |
| 1. the existence of CMI on the infringed work; | *See* Facts 1-9. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| 2. Defendants distributing that material knew that CMI had been removed or altered without authority of the copyright owner; and | *See* Facts 10-18. | |
| 3. Defendants knew or had reason to know that distributing works without CMI would "induce, enable, facilitate or conceal an infringement. | *See* Facts 39-52. | |
| **Defendants' Unclean Hands Defense** | | |
| 1. Defendants cannot establish that Neo4j USA's conduct is inequitable; and | Fact 53: On July 11, 2017, Neo4j USA notified the IRS that it had terminated its partnership with PureThink, and advised the IRS that PureThink was contractually restricted from providing support services for open source versions of Neo4j® software for 36 months.  Ratinoff Decl., ¶ 24 and Ex. 22. | |
| | Fact 54: Despite Neo4j USA's warnings, the IRS continued to use Neo4j® EE for free under the AGPL and allowed Suhy to perform under PureThink's support contract.  Ratinoff Decl., Ex. 4 at 40:16-43:13; 55:10-59:24; 69:8-70:25, 78:5-16; *id.*, ¶ 27 and Ex. 25. | |
| | Fact 55: Suhy specifically targeted the IRS to transition to iGov's Government Package for Neo4j, and as a result in late July 2017, the IRS invited iGov to provide a quote for a sole-source contract for the development and support of the CKGE, which used an open source version of Neo4j® EE software as a main component. Dkt. No. 171, ¶ 23; Ratinoff Decl., ¶ 27 and Ex. 25; *id.*, ¶ 28 and Ex. 26 (blue highlights | |

10

Case 5:18-cv-07182-EJD   Document 183   Filed 04/20/23   Page 46 of 50

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | at IGOV0001570513.001–IGOV0001570513.002); *id.*, Ex. 4 at 71:1-73:4. | |
| | Fact 56: It was immaterial to the IRS who was the contracting entity so long as Suhy was the individual providing them.  Ratinoff Decl., Ex. 4 at 61:11-64:23. | |
| | Fact 57: On September 5, 2017, the IRS announced its intent to award a sole-source contract to iGov based on that quote. Dkt. No. 171, ¶ 23; Dkt. No. 98-2, ¶ 23. | |
| | Fact 58: Neo4j USA filed an official protest with the IRS, which the IRS agreed with Neo4j USA that it had improperly awarded the contract to iGov on a sole source basis and canceled it for that reason. Dkt. No. 98-2, ¶ 23; Dkt. No. 172-1, ¶¶ 5-7 and Ex. 3; Ratinoff Decl., Ex. 4 at 69:20-70:9, 71:1-74:1.  After cancelling the award to iGov, the IRS awarded iGov and Suhy the CKGE contract via eGov Sol. *See* Facts 25-30. | |
| 2. Defendants cannot establish that Neo4j USA's conduct relates to the subject matter of its Lanham Act claims. | Fact  59: Neo4j USA's alleged "bad acts" pertain to the licensing of Neo4j® EE.  *See* Dkt. No. 91 at 16:21-19:7.  However, Neo4j Sweden owns the copyright to Neo4j® EE and was licensor of that software under the GPL and AGPL, and not Neo4j USA.  Dkt. No. 98-2, ¶¶ 3-4; Dkt. No. 118 at 2:11-16 (citing same). | |
| | Fact  60: The GPL, AGPL and Neo4j Sweden Software Licenses are copyright licenses and not trademark licenses. Dkt. No. 85 at 7:27-8:7. | |
| | Fact 61: Neo4j Sweden release Neo4j® EE v3.4 (the first version subject to the more restrictive Neo4j Sweden Software License) in May 2018, and as a result, ceased licensing Neo4j® EE under the AGPL at that time. Dkt. No. 118 at 3:9-12; Dkt. No. 98-2, ¶¶ 11-12, Ex. 3. | |
| | Fact 62: The inclusion of the Commons Clause in Neo4j® EE v3.4 does not amount to inequitable conduct because the Court already held that as the copyright holder Neo4j Sweden could license Neo4j® EE how it saw fit.  Dkt. No. 118 at 24:7-25:19, *aff'd* Dkt. No. 140 at 3. | |
| | Fact 63: By May 2018, Neo4j® EE v3.4 included advanced scalability, availability, security, and operational features that were not previously available under the GPL or AGPL, and at least 182 files that were never released under either license. Dkt. No. 118 at 3:1-15; Dkt. No. 98-2, ¶¶ 6-7, 10-11; Dkt. No. 98-1, Ex. 38 at 6:22-7:1, 8:6-16:24. | |

4893-2937-1191.1

Case 5:18-cv-07182-EJD   Document 183   Filed 04/20/23   Page 47 of 50

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | <u>Fact 64:</u> Defendants released ONgDB sometime in July 2018 and their promotion thereof amounted to trademark infringement, false advertising and false designation of origin in violation of the Lanham Act and UCL. *See* Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Ex. 28); Dkt. No., 98-1, ¶ 26 and Ex. 24; Dkt. No. 118 at 18:2-32:14. | |
| | <u>Fact 65:</u> Neo4j Sweden ceased its dual licensing model under the GPL and AGPL in ***May 2018*** and Neo4j USA's alleged false statements about the IRS needing to obtain a commercial license for Neo4j® EE were made before ***October 2017***.  *See* Ratinoff Decl., Ex. 65 at 14:9-15:28, 17:1-27:7; *see also* Dkt. No. 118 at 3:17-4:22; Dkt. No. 177 at ¶¶ 20-21. | |
| **PureThink's Claim for Breach of Exclusivity Contract** | | |
| 1. No enforceable contract existed; | <u>Fact 66:</u> There is no contract consented to or signed by Neo4j USA giving PureThink ownership rights in the Gov't Edition, the right to be paid for the development thereof, or the right to be compensated for that development work upon termination.  Instead, Suhy repeatedly told Neo4j USA – both before and after April 11, 2015 – that the Gov't Edition was a "concept" for PureThink to bypass protracted mandatory competitive bidding processes and take advantage of a faster sole-source procurement track.  Dkt. No. 98-1, ¶¶ 7-8 and Exs. 5-6; Ratinoff Decl., ¶¶ 8, 10, 12-14, 17, 19 and Exs. 6, 8, 10-12, 15, 17 (yellow highlights). | |
| | <u>Fact 67:</u> Suhy told third parties Gov't Edition was only created for sole-source justification.  Ratinoff Decl., ¶ 16 and Ex. 14 (yellow highlights). | |
| | <u>Fact 68:</u> The letter purporting to be a separate agreement between Neo4j USA and PureThink was simply the means for PureThink to establish sole source justification. Dkt. No. 98-1, ¶ 8 and Ex. 6; Ratinoff Decl., ¶¶ 14, 18-19 and Exs. 12, 16-17 (yellow highlights). | |
| | <u>Fact 69:</u> Suhy repeated confirmed and assured Neo4j USA that it owned the intellectual property making up the Gov't Edition, as well could terminate PureThink as the exclusive reseller ***at any time and for any reason***.  Dkt. No. 98-1, Ex. 6 (yellow highlights); Ratinoff Decl., ¶¶ 9-10, 14, 17, 19 and Exs. 7-8, 12, 15, 17 (green highlights). | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 70: Consistent with his prior representations, Suhy sent proposed language for the external and internal versions of the sole-source justification letters to Neo4j USA on April 10, 2015, with the internal version stating "Neo Technologies has the right to cancel this exclusivity agreement at any time and for any reason." Ratinoff Decl., ¶ 10 and Ex. 8 (green highlight); *see also id.*, ¶ 9 and Ex. 7 (green highlights). | |
| | Fact 71: The internal version of the April 11, 2015 sole-source letter signed by Lars Nordwall on behalf of Neo4j USA expressly stated that "Neo Technology has the right to cancel this exclusivity agreement at any time and for any reason." Ratinoff Decl., ¶ 11 and Ex. 9 (green highlight) | |
| | Fact 72: The internal version of the April 11, 2015 letter signed by Neo4j USA omitted Suhy's proposed language "[t]his agreement supersedes any other agreements." *Compare* Ratinoff Decl., ¶ 10 and Ex. 8 (red highlight) *and id.*, ¶ 11 and Ex. 9 at p. 3. | |
| | Fact 73: Erik Nolten of Neo4j USA shared the same understanding that Neo4j USA owned the Gov't Edition and had the right to cancel PureThink's status as an exclusive reseller thereof any time and for any reason based on Suhy's representations made before April 11, 2015 (Ratinoff Decl., ¶¶ 8-10 and Exs. 6-8) and from the express language of the sole-source letters signed by Lars Nordwall (*id.,* ¶ 15 and Ex. 13). | |
| | Fact 74: After meeting with Neo4j's new Vice President of Strategic Alliances and Channels, John Broad, in October 2015, Suhy prepared documents for him reconfirming that Neo4j USA owned the Gov't Edition and had the right to cancel PureThink's status as the exclusive reseller thereof any time and for any reason. Ratinoff Decl., ¶ 17 and Ex. 15 (green highlights). | |
| 2. PureThink's performance or excuse for nonperformance; | Fact 75: In conjunction with terminating the Gov't Edition on June 19, 2015, Neo4j USA informed PureThink that it was "no longer authorized to market, resell, demonstrate or provide training on the Neo4j Government Edition." Ratinoff Decl., ¶ 21 and Ex. 19. | |
| | Fact 76: Suhy acknowledged the termination of the Gov't Edition and agreed to remove all references from PureThink's website. Ratinoff Decl., ¶¶ 22 and Ex. 20. | |
| | Fact 77: After Neo4j USA terminated the SPA, Defendants targeted same federal agencies that PureThink previously solicited under the SPA by | |

13

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | offering "Government Packages for Neo4j." Dkt. No. 118 at 4:24-5:20 (citing Dkt. No. 98-1, Exs. 14-19). | |
| | Fact 78: iGov's "Government Packages for Neo4j" included the same framework and FISMA security add-ons the Gov't Edition. Ratinoff Decl., ¶ 23 and Ex. 21; *id.*, ¶¶ 25-26 and Ex. 23-24. The only difference was it included Neo4j® EE for free under the AGPL. *Id.* | |
| | Fact 79: On July 11, 2017, the same day Neo4j USA terminated the SPA, Suhy emailed government contractors and agencies confirming that iGov was reusing the framework and add-ons developed for the Gov't Edition (contrary to his prior admissions that Neo4j USA owned them). Dkt. No. 98-1, ¶ 14 and Ex. 12; Ratinoff Decl., ¶¶ 25-26 and Exs. 23-24. | |
| | Fact 80: Defendants made clear on iGov and PureThink's websites that the "Government Package for Neo4j" was from the same "principle" behind PureThink and Gov't Edition. Dkt. No. 98-1, Exs. 14-15. | |
| | Fact 81: Suhy and PureThink formed iGov to evade the restrictions in the Partner Agreement. Dkt. No. 98-1, ¶ 13 and Ex. 11; *id.*, ¶¶ 16-17 and Exs. 14-15 ("The principle behind PureThink and the Government Package has created a new corporate entity called iGov Inc, which is not a Neo4j Solution Partner. Because iGov Inc is not a solution partner, it can offer packages at great cost savings to US Government Agencies as it has no restrictions on working with Neo4j Enterprise open source licenses!"); Dkt. No. 118 at 24-5:7 (citing same); Dkt. No. 177 at 10:3-6. | |
| | Fact 82: iGov thereafter operated as PureThink's successor-in-interest. Ratinoff Decl., ¶ 27 and Ex. 25 ("[S]ince iGov Inc has no limitations on supporting or providing services for Neo4j Enterprise open source licenses, we can just have iGov Inc. assume over all [PureThink's] obligations of the current contract now instead of waiting for the next procurement. Nothing would change, we would have the same team, locations and would keep working as we always have."); Ratinoff Decl., Ex. 27 ("US Treasury has decided to make the move to our new company iGov Inc and the new Government Packages for Neo4j Enterprise"); *id.*, ¶¶ 29-30 and Ex. 27-28 (yellow highlights); Dkt. No. 98-1, ¶¶ 13, 16-17 and Exs. 11, 14-15; *see also* Facts 17, 77-80. | |
| | Fact 83: Defendants continued to actively marketed "Government Package for Neo4j" until they released ONgDB. Dkt No. 118 at 4:24- | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | 5:20 (citing Dkt. No. 98-1, Exs. 14-19, 21, 62-64, 67-69); Dkt. No. 118 at 19:13-20:24. | |
| 3. Neo4j USA did not breach the alleged exclusivity agreement; and | Fact 84: Assuming a separate exclusivity agreement existed, Neo4j USA had the unfettered right to discontinue the Gov't Edition and terminate PureThink as its exclusive reseller without cause and without compensating PureThink. *See* Facts 69-74. | |
| 4. There are no resulting damages to PureThink. | Fact 85: PureThink could not have suffered $1.3 million in damages since the IRS ultimately awarded the CKGE contract for the same amount to its successor-in-interest iGov via eGovernment Solutions in order for it to continue developing the CKGE the framework that PureThink had started with the Gov't Edition under the prior contract. *See* Facts 25-30. | |
| | Fact 86:  PureThink did not maintain any time sheets that could support their claim that PureThink "spent an equivalent to $650,000 to design, develop, and build" the Gov't Edition.  Ratinoff Decl., Ex. 2 at 173:15-177:17. | |
| | Fact 87:  PureThink's financial statements showed it did not incur any expenses or overhead for the development of the Gov't Edition.  Ratinoff Decl., Ex. 2 at 59:6-63:15; *id.*, ¶¶ 68-69 and Exs. 66-67. | |
| | Fact 88:  PureThink did not spend any money to develop the Gov't Edition.  Ratinoff Decl., Ex. 2 at 170:10-171:13. | |
| | Fact 89: Suhy used PureThink's work product from the Gov't Edition for iGov's "Government Packages for Neo4j."  Ratinoff Decl., Ex. at 186:14-24; *id.*, ¶¶ 25-26 and Exs. 23-24 ("We've simply taken the framework and services that made a Neo4j Enterprise (Commercial only) into Neo4j Government Edition and made them available as a stand alone package we call (Government Package for Neo4j)"); *id.*, ¶¶ 29-20 and Exs. 27-28. | |

I attest that the evidence cited herein fairly and accurately supports the facts as asserted by Plaintiffs Neo4j, Inc. and Neo4j Sweden AB.

Dated:  April 20, 2023                    By:  */s/ Jeffrey M. Ratinoff*
                                               Jeffrey M. Ratinoff, Attorney for Plaintiffs Neo4j, Inc. and Neo4j Sweden AB

1  Adron W. Beene SB# 129040
   Adron G. Beene SB# 298088
2  Attorney at Law
   7960 Soquel Drive, Suite B# 296
3  Aptos, CA 95003
   Tel: (408) 392-9233
4  adron@adronlaw.com

5  Attorneys for Defendants and Counter Claimants:
6  PURETHINK LLC, a Delaware limited
   liability company, IGOV INC., a Virginia
7  corporation, and JOHN MARK SUHY

8              UNITED STATES DISTRICT COURT
9           NORTHERN DISTRICT OF CALIFORNIA

10
    NEO4J, INC., a Delaware corporation,    CASE NO. 5:18-cv-7182 EJD
11  NEO4J SWEDEN AB

12                                          **DEFENDANTS PURETHINK**
    Plaintiffs,                             **LLC, IGOV, INC AND JOHN**
13                                          **MARK SUHY'S FORTH**
    v.                                      **AMENDED COUNTERCLAIM**
14                                          **AGAINST NEO4J, INC. AND**
                                            **NEO4J SWEDEN AB FOR**
15  PURETHINK LLC, a Delaware               **1) Omitted**
    limited                                 **2) Omitted**
16  liability company, IGOV INC., a         **3) Breach of Contract**
    Virginia corporation, and JOHN          **4) Breach of Exclusive**
17  MARK SUHY, an individual,                 **Contract to Government**
18                                          **5) Omitted**
    Defendants.                             **6) Omitted**
19                                          **7) Omitted**
                                            **8) Declaratory Relief**
20                                            **(Commons Clause in AGPL**
    PURETHINK LLC, a Delaware                 **does not apply to**
21  limited                                   **professional services)**
    liability company, IGOV, INC. a         **9) Declaratory Relief (Users**
22  Virginia corporation, JOHN MARK           **may use and fork content**
    SUHY                                      **NEO4J SWEDEN put on a**
23  Counter Claimants                         **public GitHub respository)**
                                            **10)        OMITTED**
24
    v.
25

    PURETHINK, IGOV and JOHN MARK SUHY'S FORTH AMENDED COUNTERCLAIM
    CASE NO. 5:18-cv-7182 EJD                                              1

1  NEO4J, INC. a Delaware corporation,
   NEO4J SWEDEN AB
2  Counter Defendants                           **DEMAND FOR JURY TRIAL**

3

4

5       Counter Claimants PURETHINK LLC, a Delaware limited liability

6  company ("PureThink"), IGOV, INC. a Virginia corporation ("iGov") and John

7  Mark Suhy allege against NEO4J, Inc. ("NEO4J USA") and NEO4J

8  SWEDEN AB ("NEO4J SWEDEN") as follows:

9

10                      **I.       Jurisdiction**

11  1.  This is a compulsory counterclaim under Federal Rule of Civil

12      Procedure §13(a). This Court has supplemental jurisdiction under 28

13      USC § 1367(a).

14

15                        **II.      Parties**

16  2.  Counter Claimant PureThink LLC, is a Delaware limited liability

17      company.

18  3.  Counter Claimant IGOV, INC. is a Virginia corporation.

19  4.  Counter Claimant John Mark Suhy is an individual. John Mark Suhy's

20      Counterclaim (Dkt. No. 48) is superseded by this pleading such that all

21      counterclaims are consolidated per Order (Dkt. No. 70.)

22  5.  Counter Defendant NEO4J, Inc. is a Delaware corporation.

23  6.  Counter Defendant NEO4J SWEDEN is a Swedish corporation.

24

25

PURETHINK, IGOV and JOHN MARK SUHY'S FORTH AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                              2

### III.    Introduction

7.  NEO4J SWEDEN licenses software called Neo4j as open source software under a GNU General Public License model. The GNU General Public License "GPL" license and a variant for server deployment called the GNU Affero General Public License "AGPL" license have several versions and distinctions. Neo4j is licensed as a Community edition under the GPLv.3 and an Enterprise edition under the AGPLv.3 ("License") A true and correct copy of the Neo4j AGPL License is attached as Exhibit A.

8.  The Neo4j open source software is available at Github.com which is the preeminent open source software repository:

https://github.com/neo4j/neo4j/tree/3.5

9.  PureThink and iGov have downloaded Neo4j source code from GitHub under the APGL license. Anyone may download the Neo4j source code and use, modify, support, combine and convey the software. However, using GPL or AGPL may require distribution of modifications to the source code under "copyleft" license requirements of GPL and AGPL licenses.

10.    Using an open source distribution and development model, NEO4J SWEDEN distributes Neo4j software to users and developers. The GPL and AGPL licenses provide for free use of the software and free use of distributed modifications and extended versions of the program as well.

11.    After starting the Neo4j software with open source free licensing and benefitting from free third party development, there was a change

PURETHINK, IGOV and JOHN MARK SUHY'S FORTH AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                                     3

1  to a dual-license model. Neo4j SWEDEN continues to license the open
2  source software while NEO4J USA licenses an object code version of
3  the open source software with support under a "commercial" license.
4  PureThink is unable to determine if NEO4J USA claims the
5  commercial version is proprietary or limited in some manner. Neo4j has
6  over 183 contributors and the  contributors did not assigned their
7  copyright and moral rights to changes in Neo4j to NEO4J USA. As
8  NEO4J USA used the open source version to develop and convey
9  "commercial" versions of Neo4j, the "commercial" software is subject to
10 the terms of the AGPL. Those terms include:

11

12 Section 2 of the AGPL license provides, in part:
13     All rights granted under this License are granted for the term of
14     copyright on the Program, and are irrevocable provided the
15     stated conditions are met. This License explicitly affirms your
16     unlimited permission to run the unmodified Program. …
17     You may make, run and propagate covered works that you do
18     not convey, without conditions so long as your license otherwise
19     remains in force."

20

21 Section 4 of the AGPL license provides, in part:
22     "You may charge any price or no price for each copy that you
23     convey, and you may offer support or warranty protection for a
24     fee."

25

PURETHINK, IGOV and JOHN MARK SUHY'S FORTH AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                    4

Section 7 of the AGPL license provides, in part:

> All other non-permissive additional terms are considered "further restrictions" within the meaning of section 10. If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term. If a license document contains a further restriction but permits relicensing or conveying under this License, you may add to a covered work material governed by the terms of that license document, provided that the further restriction does not survive such relicensing or conveying.

Section 10 (Automatic licensing of Downstream Recipients) of the AGPL provides, in part:

> "Each time you convey a covered work, the receipient automatically receives a license from the original licensors, to run, modify and propagate that work, subject to this license… ."

> "You may not impose any further restrictions on the exercise of the rights granted or affirmed under this License."

12.     NEO4J USA also set up a sales channel to use partners, such as PureThink, to sell and support the "commercial" version of Neo4j. As part of that model, the partner would receive 25% of the fee and provide support for customer.

SER_2016

13.     The Partner Agreement seeks to restrict partners from working with the open source version of Neo4j software during the Partner Agreement and for 3 years after termination. But these restrictions are invalid under California Business and Professions Code §16600. PureThink and IGOV filed a motion under FRCP 12 (b)(6) and 12 (f) against the attempt by NEO4J USA to enforce a restrictive covenant preventing defendants from performing any services on the open source versions of Neo4J software for a period of three years post termination of the Partner Agreement. Conceeding the invalidity of the restriction, raised by the motions, Plaintiffs then filed a Second Amended Complaint altering paragraph 112 in the First Amended Complaint removing and waiving a breach of contract claim based on the unlawful restriction. The restriction also violate the no further restrictions clause (Section 10) of the AGPL. The AGPL license limits the rights of a party to restrict rights to use the AGPL. PureThink is informed and believes that NEO4J USA uses these restrictions to prevent partners from working with any customers on open source versions of Neo4j which also prevents such parties from working for or with PureThink and iGov.

14.     During 2014, the MPO (Maryland Procurement Office) was in discussions with NEO4J USA about Neo4j. The MPO referred NEO4J USA to PureThink as PureThink was a registered vendor in the Arcnet Vendor System and with Neo4j listed as one it its capabilities.

15.     PureThink and NEO4J USA signed a NEO4J Solution Partner Agreement with Neo Technology, Inc, effective 9-30-2014. ("Partner

SER_2017

Agreement") A true and correct copy of the Partner Agreement is attached as Exhibit B.

16.     John Suhy, of PureThink, had discussions with Lars Nordwall, COO of NEO4J USA concerning the challenges of obtaining business with the US government. Mr. Suhy and Mr. Nordwall discussed the need to modify the software offering to satisfy security and other requirements the government had. Mr. Nordwall represented to Mr. Suhy that Mr. Suhy could improve the open source Neo4j software offering for the government  and that PureThink would have exclusive rights to the Neo4J support and deals with the Government. Furthermore, a separate agreement came into place for the new Neo4j version for the government which was supposed to protect the investment PureThink was making and was going to make.  A true and correct copy of the exclusive agreement for Government sales is attached as Exhibit C.

17.     PureThink, worked for months on the new Neo4j Government Package software, determining the requirements, designing and developing enhancements and additional features around Neo4j including support and professional services to addressed critical government security and procurement requirements. PureThink spent an equivalent to $650,000 to design, develop, and build the new Neo4j Government Package software based on Mr. Nordwall's representations that PureThink would have continuing exclusivity with the government sales and support contracts. PureThink's government packaging of Neo4j was called Neo4j Government Edition and a.k.a. Neo4j

SER_2018

Enterprise Government Edition. ("Neo4j Government Edition"). The Neo4j Government Edition was a complete package that included additional services, support and software modules enhancing Neo4j to address critical government requirements.

18.      PureThink did deals with MPO, Sandia National Laboratories, and the FBI with NEO4J USA's approval and closed a deal with the IRS which NEO4J USA initially approved but later changed its position and ultimately did not approve.

19.     There were no significant functional differences between the open source version of Neo4j and what NEO4J USA called a commercial version of Neo4j.  Further, under the rules of GPL and AGPL open source software, there could not be proprietary modification as modifications to and conveyance of open source software under an AGPL license must continue to be licensed on an open source AGPL license. It appears NEO4J USA's solution to this problem was and is to misrepresent the truth or actively conceal the issue.

20.      PureThink and IRS entered into a contract which for the first time, was done completely outside the Partner Agreement, and under the Government Edition agreement. The contract included consulting services to build out a solution IRS requested around the Neo4j Government Edition.  NEO4J USA told PureThink to make whatever decisions were needed regarding the much smaller license portion of the contract. During the performance of the contract, when the IRS asked PureThink the difference between Neo4j open source and NEO4J USA's commercial version, NEO4J USA told PureThink to tell the IRS

PURETHINK, IGOV and JOHN MARK SUHY'S FORTH AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                                      8

1   the open source version had to be an open use.  When PureThink would

2   not make this statement to IRS, NEO4J USA then proceeded to reach

3   out directly to IRS personel directly with this false message.  This scare

4   tactic is utterly false and a user of AGPL software does not have to

5   license its use to everyone. The other improper control is NEO4J USA's

6   unlawful restrictions in its Solution Partner Agreement which claims

7   the partner may not suport the open source software during the

8   Partner Agreement or for three years after termination. With these

9   invalid restrictions NEO4J USA unlawfully restricts third parties from

10  supporting the free open source version so NEO4J USA can license and

11  support the same software under an expensive commercial license

12  without fear of fair competition. NEO4J SWEDEN attempted to

13  improperly restrict this open source software by adding a restriction to

14  the AGPL software license documents referred to as "Commons Clause"

15  license condition which sought to broadly restrict the rights of anyone

16  from selling or otherwise profiting from the sales of support services

17  upon such software.   Such attempt of adding this type of restriction

18  was in violation of the AGPL license.

19  21.      When PureThink resisted misrepresenting the differences

20  between the open source software and NEO4J USA's commercial

21  version, NEO4J USA retaliated, terminating the Government Edition,

22  the Government Edition Agreement, the Partner Agreement with the

23  stated intent of shutting down PureThink. NEO4J USA told users and

24  potential users PureThink could not support the open source version of

25  Neo4j. See Exhibit D where Neo4j Inc. specifically told the IRS

PURETHINK, IGOV and JOHN MARK SUHY'S FORTH AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                                    9

1   PureThink could not provided professional services to the IRS for a

2   period of three years as a result of the termination of the Partner

3   Agreement. Because of NEO4J USA's improper retaliation and

4   interference with PureThink's business, tarnishing PureThink's

5   business,  iGov was set up to start fresh in providing solutions around

6   Neo4j for parties who use the open source software version of Neo4J.

7   iGov is informed and believes that NEO4J USA also advised iGov

8   potential customers that iGov could not work with them either.

9   ### IV.   Counterclaims

10   ### First Cause of Action

11   ### Omitted

12   Paragraphs 22-47 are omitted.

13   ### Second Cause of Action

14   ### Omitted

15   ### Third Cause of Action

16   ### Breach of Contract

17   ### (Against NEO4J, Inc.)

18   48.      PureThink reincorporates the allegations in paragraph 1-47 as

19   alleged above.

20   49.      PureThink and NEO4J USA entered into the Partner Agreement

21   effective 9-30-2014.

22   50.      PureThink performed all its obligations under the Partner

23   Agreement, except those which are unlawful, were prevented, waived

24   or excused.

25

PURETHINK, IGOV and JOHN MARK SUHY'S FORTH AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                10

51.   NEO4J USA breached the Partner Agreement by failing to pay PureThink $26,020 which is 25% of a $104,028 deal with DHS USCIS.

52.   As a result of NEO4J USA's breach, PureThink has been damaged in the sum of $26,020 plus interest at the legal rate.

### Fourth Cause of Action

### Breach of Exclusive Contract to Government

### (Against NEO4J, Inc.)

53.   PureThink reincorporates the allegations in paragraph 1-52 as alleged above.

54.   Under the terms of the exlusive government agreement dated April 11, 2015, Neo4J, Inc., through its COO Lars Nordwall, agreed PureThink is the only Neo4J Government Edition reseller for the US Federal Bovernment, Department of Defense and Intelligence Agrencies. This exclusive agreement is Exhibit C. This agreement was a separate and distinct agreement from the Partner Agreement. There are no terms in the Partner Agreement where PureThink would develop software or functionality for the US government as PureThink did to create the Government Edition. NEO4J USA is estopped from denying the April 11, 2015 agreement as PureThink was induced by the agreement to develop the Government Edition for the exclusive sale by PureThink.

55.   PureThink has performed all its obligations under the April 11, 2015 exclusive government agreement except those which are unlawful, were prevented, waived or excused.

PURETHINK, IGOV and JOHN MARK SUHY'S FORTH AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                          11

56.     PureThink is informed and believes that NEO4J USA took features developed by PureThink incorporated it into NEO4J. PureThink is informed and believes that NEO4J USA sold Neo4J software and services directly to the US government, Department of Defense and intelligence Agencies in breach of its April 11, 2015 agreement with PureThink.

57.     As a result of its breach, PureThink has suffered damages in excess of $1,354,856.55.

**Fifth Cause of Action**

**Omitted**

**Sixth Cause of Action**

**Omitted**

**Seventh Cause of Action**

**Omitted**

**Eight Cause of Action**

**Declaratory Relief**

**(The Commons Clause in AGPL does not apply to Professional Services for the open source versions of Neo4J)**

**(Against NEO4J SWEDEN AB)**

58.     PureThink and iGov reincorporate the allegations in paragraph 1-57 as alleged above.

59.     There is a present controversy where NEO4J, SWEDEN added a restrictive clause to the AGPL on at least version 3.4 of the open source version of Neo4J known as a Commons Clause License Condition which provides:

PURETHINK, IGOV and JOHN MARK SUHY'S FORTH AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

12

"Commons Clause" License Condition The Software is provided
to you by the Licensor under the License, as defined below,
subject to the following condition. Without limiting other
conditions in the License, the grant of rights under the License
will not include, and the License does not grant to you, the right
to Sell the Software. For purposes of the foregoing, "Sell" means
practicing any or all of the rights granted to you under the
License to provide to third parties, for a fee or other
consideration, a product or service that consists, entirely or
substantially, of the Software or the functionality of the
Software. Any license notice or attribution required by the
License must also include this Commons Cause License
Condition notice.

Last page of Exhibit A.

60.      There is a present controversy whether the Commons Clause,
even if valid, prevents professional service providers from supporting
open source Neo4J users from using independent third party from
supporting upen source Neo4J users.   The reason for this controversy
is the definition of Sell in the Commons Clause provides:

For purposes of the foregoing, "Sell" means practicing any or all
of the rights granted to you under the License to provide to third
parties, for a fee or other consideration, a product or service that

PURETHINK, IGOV and JOHN MARK SUHY'S FORTH AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                        13

1    consists, entirely or substantially, of the Software or the

2    functionality of the Software.

3    Exhibit A, last page.

4

5    61.    PureThink and IGOV should not be prevented from providing

6    professional support services to open source Neo4J users under the

7    Commons Clause as such services do not consist of entirely or

8    substantially the software or the functionality of the software.

9    62.    PureThink and IGOV's position is supported by NEO4J, Inc's

10    own attorney, Heather Meeker, who led the drafting of the Commons

11    Clause. She stated "[t]he Commons Clause does not restrict performing

12    services—it can't be.":

13     **heathermeeker** commented on Aug 23, 2018

14
15    Bear with a legal technicality, but the Commons Clause is not a restriction on performing services
     -- it can't be. The license grant for the software is in the underlying license, and the Commons
16    Clause claws back one kind of commercial use right. So, picture the original grant as a Venn
     diagram circle, and the excluded right to Sell as a little circle inside that. Providing services was
17    not in the big circle in the first place, so the small circle can't change it.

18    But perhaps you are thinking, can I use the software in order to provide my services? That's a
     reasonable question. In other words, is the right to use the software in support of professional
19    services -- like development, maintenance, or analysis, clawed back by the exclusion? No,
     because that use is not a service that derives its value from the functionality of the software. Your
20    professional services derive their value from your expertise, not what the software does. The
     exclusion has to cover services, though, or it would have a big loophole. Offering the software via
21    SaaS as a substitute for distributing it, and selling that access, is the main kind of service that is
     meant to be limited. Your consulting is not an economic substitute for the software. SaaS is.
22
     Of course, I'm not your lawyer, so technically I can't give you advice. The clause means what it
23    means, and although I led the drafting of the clause, that doesn't mean I have authority to
     interpret documents. That's not how the law works -- in the end, only a court has that power, no
24    matter who wrote the document. But I hope to be helpful and dispel any confusion.

25

PURETHINK, IGOV and JOHN MARK SUHY'S FORTH AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                    14

SER_2025

63.     The AGPL license expressly allows users to have third parties make modifications for users on the licensed open source software. Such use is not considered a conveyance implicating the copyleft requirements of the AGPL. Exhibit A, pg. 3, §2. The Commons Clause, if interpreted to prevent such right, violates the APGL as a further restriction and is void.

64.     The Commons Clause is unclear whether third parties such as PureThink and IGOV may provide professional services for open source users of Neo4J. PureThink and IGOV's position is that the Commons Clause does not prevent independent service providers from supporting open source code users. The conclusion services provided are not prevent from providing users services under the Commons Clause is fully supported by NEO4J USA's attorney and the drafter of the Commons Clause. The Commons Clause should be judicially interpreted so there is no controversy that prevents open source Neo4J users from using independent service providers such as PureThink and iGov to provide support and development services for open source Neo4J users.

65.     PureThink and iGov request a declaration that the Commons Clause does not prevent PureThink and IGOV from providing professional services to users of the open source versions of Neo4J where the AGPL has a Commons Clause.

## Ninth Cause of Action

## Declaratory Relief

PURETHINK, IGOV and JOHN MARK SUHY'S FORTH AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

15

**(Users may use and fork content NEO4J SWEDEN put on a public GitHub respository)**

**(Against NEO4J SWEDEN AB)**

66.    PureThink and iGov reincorporate the allegations in paragraph 1-52 as alleged above.

67.    There is a present controversy where NEO4J, SWEDEN contends users of its github public repository, such as PureThink and IGOV may not use or fork its content NEO4J SWEDEN put on the GitHub repository. NEO4J, SWEDEN has content including the open source versions of Neo4J software, documentation and extensive information about Neo4J software on NEO4J SWEDEN'S public GitHub respository.

68.    Under the GitHub terms of services for public repositories, NEO4J SWEDEN agreed: By setting your repositories to be viewed publicly, you agree to allow others to view and "fork" your repositories (this means that others may make their own copies of Content from your repositories in repositories they control).

69.    Under the GitHub terms of services for public repositories, NEO4J SWEDEN granted each user the right to "User of GitHub a nonexclusive, worldwide license to use, display, and perform Your Content through the GitHub Service and to reproduce Your Content solely on GitHub as permitted through GitHub's functionality (for example, through forking)." By its express grant, NEO4J may not bar users from using the content NEO4J SWEDEN put on the public GitHub repository.

PURETHINK, IGOV and JOHN MARK SUHY'S FORTH AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

16

SER_2027

70.     Under the GitHub Terms of Service, "Content" means:

> "Content" refers to content featured or displayed through the
> Website, including without limitation code, text, data, articles,
> images, photographs, graphics, software, applications,
> packages, designs, features, and other materials that are
> available on the Website or otherwise available through the
> Service. "Content" also includes Services. "User-Generated
> Content" is Content, written or otherwise, created or uploaded
> by our Users. "Your Content" is Content that you create or own.

71.     PureThink and iGov request a declaration that they may use use
NEO4J SWEDEN's public repository on GitHub and may fork, use,
display and perform all Content NEO4J SWEDEN has on its public
GitHub Repository.

### Tenth Cause of Action

### Omitted

### Eleventh Cause of Action

Omitted. See Docket No. 70. But because of numbering references in
the case, the Cause of Action numbering has not been altered.

### Twelfth Cause of Action

### Omitted

//

//

PURETHINK, IGOV and JOHN MARK SUHY'S FORTH AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                          17

## V.    Prayer for Relief

Wherefore PureThink, iGov and John Mark Suhy request judgment against NEO4J USA and NEO4J SWEDEN as follows:

1. For general and special damages in an amount of more than $1,380,876.55 according to proof.

2. For declaratory relief that:

   a. § 4.3.2 of the Partner Agreement is void under California Business and Professions Code §16600.

   b. Omitted.

   c. Omitted.

   d. The Commons Clause does not prevent third parties, such as PureThink and IGOV from providing professional services to users of the open source versions of Neo4J where the AGPL has a Commons Clause.

   e. PureThink and iGov and any user of NEO4J SWEDEN's public repository on GitHub may fork, use, display and perform all Content NEO4J SWEDEN has on its public GitHub Repository.

   f. Omitted

3. Omitted. See Docket No. 70 but because of numbering references in the case, the numbering has not been altered.

4. Omitted.

5. Omitted.

6. That Counter Claimants recover costs and attorneys fees as permitted by law, including under trademark law and copyright law and, because of

SER_2029

1    the significant benefit to the public in preserving the public rights to open

2    source software, Code of Civil Procedure §1021.5;

3    7.  And for such other relief and remedies as the Court deems just.

4    Dated: March 17, 2023

5                              ____/s/ Adron W. Beene____
6                              Adron W. Beene SB# 129040
                             Adron G. Beene SB# 298088
7
                             Attorneys for Counter Claimants
8                              PURETHINK LLC, a Delaware limited
                             liability company, IGOV INC., a Virginia
9                              corporation and John Mark Suhy.

10

11                      **DEMAND FOR JURY TRIAL**

12        Counter Claimant PURETHINK LLC and IGOV, Inc. and John Mark

13   Suhy demand a trial by jury.
14
15                              ____/s/ Adron W. Beene____
                             Adron W. Beene SB# 129040
16                             Adron G. Beene SB# 298088
                             Attorney At Law
17                             7960 Soquel Drive, Suite B#296
                             Aptos, CA 95003
18                             Tel: (408) 392-9233
                             Fax: (866) 329-0453
19                             adron@adronlaw.com

20                             Attorneys for Counter Claimants
                             PURETHINK LLC, a Delaware limited
21                             liability company, IGOV INC., a Virginia
                             corporation.

22

23

24

25

PURETHINK, IGOV and JOHN MARK SUHY'S FORTH AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                    19

**FILER'S ATTESTATION**

I, Adron G. Beene, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with N.D. Cal. Civil Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

Dated: March 17, 2023

                    _/s/ Adron G. Beene_
                    Adron W. Beene SB# 129040
                    Adron G. Beene SB# 298088
                    Attorney At Law
                    7960 Soquel Drive, Suite B#296
                    Aptos, CA 95003
                    Tel: (408) 392-9233
                    adron@adronlaw.com

                    Attorney for Defendants
                    PURETHINK LLC, a Delaware limited
                    liability company, IGOV INC., a Virginia
                    corporation, and JOHN MARK SUHY

PURETHINK, IGOV and JOHN MARK SUHY'S FORTH AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

20



# EXHIBIT A

SER_2032



neo4j / **neo4j**

Dismiss

**Join GitHub today**

GitHub is home to over 28 million developers working together to host and review code, manage projects, and build software together.

Sign up

Branch: 3.4 **neo4j** / enterprise / neo4j-enterprise / **LICENSE.txt** Find file Copy path

**digitalstain** Updates enterprise LICENSE.txt and NOTICE.txt 6558e5e on May 13

3 contributors

694 lines (568 sloc) 35.1 KB

```
NOTICE
This package contains software licensed under different
licenses, please refer to the NOTICE.txt file for further
information and LICENSES.txt for full license texts.

Neo4j Enterprise object code can be licensed independently from
the source under separate commercial terms. Email inquiries can be
directed to: licensing@neo4j.com. More information is also
available at:https://neo4j.com/licensing/

The software ("Software") is developed and owned by Neo4j Sweden AB
(referred to in this notice as "Neo4j") and is subject to the terms
of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3, with the Commons Clause as follows:

                    GNU AFFERO GENERAL PUBLIC LICENSE
                       Version 3, 19 November 2007

 Copyright (C) 2007 Free Software Foundation, Inc. <http://fsf.org/>
 Everyone is permitted to copy and distribute verbatim copies
 of this license document, but changing it is not allowed.

                            Preamble

  The GNU Affero General Public License is a free, copyleft license
for software and other kinds of works, specifically designed to ensure
cooperation with the community in the case of network server software.

  The licenses for most software and other practical works are
designed to take away your freedom to share and change the works.  By
contrast, our General Public Licenses are intended to guarantee your
freedom to share and change all versions of a program--to make sure it
remains free software for all its users.

  When we speak of free software, we are referring to freedom, not
price.  Our General Public Licenses are designed to make sure that you
have the freedom to distribute copies of free software (and charge for
them if you wish), that you receive source code or can get it if you
want it, that you can change the software or use pieces of it in new
free programs, and that you know you can do these things.

  Developers that use our General Public Licenses protect your rights
with two steps: (1) assert copyright on the software, and (2) offer
you this License which gives you legal permission to copy, distribute
```

**EXHIBIT A**

```
 46  and/or modify the software.
 47
 48    A secondary benefit of defending all users' freedom is that
 49  improvements made in alternate versions of the program, if they
 50  receive widespread use, become available for other developers to
 51  incorporate.  Many developers of free software are heartened and
 52  encouraged by the resulting cooperation.  However, in the case of
 53  software used on network servers, this result may fail to come about.
 54  The GNU General Public License permits making a modified version and
 55  letting the public access it on a server without ever releasing its
 56  source code to the public.
 57
 58    The GNU Affero General Public License is designed specifically to
 59  ensure that, in such cases, the modified source code becomes available
 60  to the community.  It requires the operator of a network server to
 61  provide the source code of the modified version running there to the
 62  users of that server.  Therefore, public use of a modified version, on
 63  a publicly accessible server, gives the public access to the source
 64  code of the modified version.
 65
 66    An older license, called the Affero General Public License and
 67  published by Affero, was designed to accomplish similar goals.  This is
 68  a different license, not a version of the Affero GPL, but Affero has
 69  released a new version of the Affero GPL which permits relicensing under
 70  this license.
 71
 72    The precise terms and conditions for copying, distribution and
 73  modification follow.
 74
 75                          TERMS AND CONDITIONS
 76
 77    0. Definitions.
 78
 79    "This License" refers to version 3 of the GNU Affero General Public
 80  License.
 81
 82    "Copyright" also means copyright-like laws that apply to other kinds
 83  of works, such as semiconductor masks.
 84
 85    "The Program" refers to any copyrightable work licensed under this
 86  License.  Each licensee is addressed as "you".  "Licensees" and
 87  "recipients" may be individuals or organizations.
 88
 89    To "modify" a work means to copy from or adapt all or part of the work
 90  in a fashion requiring copyright permission, other than the making of an
 91  exact copy.  The resulting work is called a "modified version" of the
 92  earlier work or a work "based on" the earlier work.
 93
 94    A "covered work" means either the unmodified Program or a work based
 95  on the Program.
 96
 97    To "propagate" a work means to do anything with it that, without
 98  permission, would make you directly or secondarily liable for
 99  infringement under applicable copyright law, except executing it on a
100  computer or modifying a private copy.  Propagation includes copying,
101  distribution (with or without modification), making available to the
102  public, and in some countries other activities as well.
103
104    To "convey" a work means any kind of propagation that enables other
105  parties to make or receive copies.  Mere interaction with a user through
106  a computer network, with no transfer of a copy, is not conveying.
107
108    An interactive user interface displays "Appropriate Legal Notices"
109  to the extent that it includes a convenient and prominently visible
110  feature that (1) displays an appropriate copyright notice, and (2)
111  tells the user that there is no warranty for the work (except to the
```

**EXHIBIT A**

SER_2034

12/7/2018                                              neo4j/LICENSE.txt at 3.4 · neo4j/neo4j · GitHub

112    extent that warranties are provided), that licensees may convey the
113    work under this License, and how to view a copy of this License.  If
114    the interface presents a list of user commands or options, such as a
115    menu, a prominent item in the list meets this criterion.
116
117      1. Source Code.
118
119      The "source code" for a work means the preferred form of the work
120    for making modifications to it.  "Object code" means any non-source
121    form of a work.
122
123      A "Standard Interface" means an interface that either is an official
124    standard defined by a recognized standards body, or, in the case of
125    interfaces specified for a particular programming language, one that
126    is widely used among developers working in that language.
127
128      The "System Libraries" of an executable work include anything, other
129    than the work as a whole, that (a) is included in the normal form of
130    packaging a Major Component, but which is not part of that Major
131    Component, and (b) serves only to enable use of the work with that
132    Major Component, or to implement a Standard Interface for which an
133    implementation is available to the public in source code form.  A
134    "Major Component", in this context, means a major essential component
135    (kernel, window system, and so on) of the specific operating system
136    (if any) on which the executable work runs, or a compiler used to
137    produce the work, or an object code interpreter used to run it.
138
139      The "Corresponding Source" for a work in object code form means all
140    the source code needed to generate, install, and (for an executable
141    work) run the object code and to modify the work, including scripts to
142    control those activities.  However, it does not include the work's
143    System Libraries, or general-purpose tools or generally available free
144    programs which are used unmodified in performing those activities but
145    which are not part of the work.  For example, Corresponding Source
146    includes interface definition files associated with source files for
147    the work, and the source code for shared libraries and dynamically
148    linked subprograms that the work is specifically designed to require,
149    such as by intimate data communication or control flow between those
150    subprograms and other parts of the work.
151
152      The Corresponding Source need not include anything that users
153    can regenerate automatically from other parts of the Corresponding
154    Source.
155
156      The Corresponding Source for a work in source code form is that
157    same work.
158
159      2. Basic Permissions.
160
161      All rights granted under this License are granted for the term of
162    copyright on the Program, and are irrevocable provided the stated
163    conditions are met.  This License explicitly affirms your unlimited
164    permission to run the unmodified Program.  The output from running a
165    covered work is covered by this License only if the output, given its
166    content, constitutes a covered work.  This License acknowledges your
167    rights of fair use or other equivalent, as provided by copyright law.
168
169      You may make, run and propagate covered works that you do not
170    convey, without conditions so long as your license otherwise remains
171    in force.  You may convey covered works to others for the sole purpose
172    of having them make modifications exclusively for you, or provide you
173    with facilities for running those works, provided that you comply with
174    the terms of this License in conveying all material for which you do
175    not control copyright.  Those thus making or running the covered works
176    for you must do so exclusively on your behalf, under your direction
177    and control, on terms that prohibit them from making any copies of

https://github.com/neo4j/neo4j/blob/3.4/enterprise/neo4j-enterprise/LICENSE.txt                                   3/11

**EXHIBIT A**

SER_2035

```
178   your copyrighted material outside their relationship with you.
179
180     Conveying under any other circumstances is permitted solely under
181   the conditions stated below.  Sublicensing is not allowed; section 10
182   makes it unnecessary.
183
184     3. Protecting Users' Legal Rights From Anti-Circumvention Law.
185
186     No covered work shall be deemed part of an effective technological
187   measure under any applicable law fulfilling obligations under article
188   11 of the WIPO copyright treaty adopted on 20 December 1996, or
189   similar laws prohibiting or restricting circumvention of such
190   measures.
191
192     When you convey a covered work, you waive any legal power to forbid
193   circumvention of technological measures to the extent such circumvention
194   is effected by exercising rights under this License with respect to
195   the covered work, and you disclaim any intention to limit operation or
196   modification of the work as a means of enforcing, against the work's
197   users, your or third parties' legal rights to forbid circumvention of
198   technological measures.
199
200     4. Conveying Verbatim Copies.
201
202     You may convey verbatim copies of the Program's source code as you
203   receive it, in any medium, provided that you conspicuously and
204   appropriately publish on each copy an appropriate copyright notice;
205   keep intact all notices stating that this License and any
206   non-permissive terms added in accord with section 7 apply to the code;
207   keep intact all notices of the absence of any warranty; and give all
208   recipients a copy of this License along with the Program.
209
210     You may charge any price or no price for each copy that you convey,
211   and you may offer support or warranty protection for a fee.
212
213     5. Conveying Modified Source Versions.
214
215     You may convey a work based on the Program, or the modifications to
216   produce it from the Program, in the form of source code under the
217   terms of section 4, provided that you also meet all of these conditions:
218
219       a) The work must carry prominent notices stating that you modified
220       it, and giving a relevant date.
221
222       b) The work must carry prominent notices stating that it is
223       released under this License and any conditions added under section
224       7.  This requirement modifies the requirement in section 4 to
225       "keep intact all notices".
226
227       c) You must license the entire work, as a whole, under this
228       License to anyone who comes into possession of a copy.  This
229       License will therefore apply, along with any applicable section 7
230       additional terms, to the whole of the work, and all its parts,
231       regardless of how they are packaged.  This License gives no
232       permission to license the work in any other way, but it does not
233       invalidate such permission if you have separately received it.
234
235       d) If the work has interactive user interfaces, each must display
236       Appropriate Legal Notices; however, if the Program has interactive
237       interfaces that do not display Appropriate Legal Notices, your
238       work need not make them do so.
239
240     A compilation of a covered work with other separate and independent
241   works, which are not by their nature extensions of the covered work,
242   and which are not combined with it such as to form a larger program,
243   in or on a volume of a storage or distribution medium, is called an
```

**EXHIBIT A**

SER_2036

244  "aggregate" if the compilation and its resulting copyright are not
245  used to limit the access or legal rights of the compilation's users
246  beyond what the individual works permit.  Inclusion of a covered work
247  in an aggregate does not cause this License to apply to the other
248  parts of the aggregate.
249
250    6. Conveying Non-Source Forms.
251
252    You may convey a covered work in object code form under the terms
253  of sections 4 and 5, provided that you also convey the
254  machine-readable Corresponding Source under the terms of this License,
255  in one of these ways:
256
257      a) Convey the object code in, or embodied in, a physical product
258      (including a physical distribution medium), accompanied by the
259      Corresponding Source fixed on a durable physical medium
260      customarily used for software interchange.
261
262      b) Convey the object code in, or embodied in, a physical product
263      (including a physical distribution medium), accompanied by a
264      written offer, valid for at least three years and valid for as
265      long as you offer spare parts or customer support for that product
266      model, to give anyone who possesses the object code either (1) a
267      copy of the Corresponding Source for all the software in the
268      product that is covered by this License, on a durable physical
269      medium customarily used for software interchange, for a price no
270      more than your reasonable cost of physically performing this
271      conveying of source, or (2) access to copy the
272      Corresponding Source from a network server at no charge.
273
274      c) Convey individual copies of the object code with a copy of the
275      written offer to provide the Corresponding Source.  This
276      alternative is allowed only occasionally and noncommercially, and
277      only if you received the object code with such an offer, in accord
278      with subsection 6b.
279
280      d) Convey the object code by offering access from a designated
281      place (gratis or for a charge), and offer equivalent access to the
282      Corresponding Source in the same way through the same place at no
283      further charge.  You need not require recipients to copy the
284      Corresponding Source along with the object code.  If the place to
285      copy the object code is a network server, the Corresponding Source
286      may be on a different server (operated by you or a third party)
287      that supports equivalent copying facilities, provided you maintain
288      clear directions next to the object code saying where to find the
289      Corresponding Source.  Regardless of what server hosts the
290      Corresponding Source, you remain obligated to ensure that it is
291      available for as long as needed to satisfy these requirements.
292
293      e) Convey the object code using peer-to-peer transmission, provided
294      you inform other peers where the object code and Corresponding
295      Source of the work are being offered to the general public at no
296      charge under subsection 6d.
297
298    A separable portion of the object code, whose source code is excluded
299  from the Corresponding Source as a System Library, need not be
300  included in conveying the object code work.
301
302    A "User Product" is either (1) a "consumer product", which means any
303  tangible personal property which is normally used for personal, family,
304  or household purposes, or (2) anything designed or sold for incorporation
305  into a dwelling.  In determining whether a product is a consumer product,
306  doubtful cases shall be resolved in favor of coverage.  For a particular
307  product received by a particular user, "normally used" refers to a
308  typical or common use of that class of product, regardless of the status
309  of the particular user or of the way in which the particular user

**EXHIBIT A**

SER_2037

12/7/2018                                                                  neo4j/LICENSE.txt at 3.4 · neo4j/neo4j · GitHub

```
310    actually uses, or expects or is expected to use, the product.  A product
311    is a consumer product regardless of whether the product has substantial
312    commercial, industrial or non-consumer uses, unless such uses represent
313    the only significant mode of use of the product.
314
315      "Installation Information" for a User Product means any methods,
316    procedures, authorization keys, or other information required to install
317    and execute modified versions of a covered work in that User Product from
318    a modified version of its Corresponding Source.  The information must
319    suffice to ensure that the continued functioning of the modified object
320    code is in no case prevented or interfered with solely because
321    modification has been made.
322
323      If you convey an object code work under this section in, or with, or
324    specifically for use in, a User Product, and the conveying occurs as
325    part of a transaction in which the right of possession and use of the
326    User Product is transferred to the recipient in perpetuity or for a
327    fixed term (regardless of how the transaction is characterized), the
328    Corresponding Source conveyed under this section must be accompanied
329    by the Installation Information.  But this requirement does not apply
330    if neither you nor any third party retains the ability to install
331    modified object code on the User Product (for example, the work has
332    been installed in ROM).
333
334      The requirement to provide Installation Information does not include a
335    requirement to continue to provide support service, warranty, or updates
336    for a work that has been modified or installed by the recipient, or for
337    the User Product in which it has been modified or installed.  Access to a
338    network may be denied when the modification itself materially and
339    adversely affects the operation of the network or violates the rules and
340    protocols for communication across the network.
341
342      Corresponding Source conveyed, and Installation Information provided,
343    in accord with this section must be in a format that is publicly
344    documented (and with an implementation available to the public in
345    source code form), and must require no special password or key for
346    unpacking, reading or copying.
347
348      7. Additional Terms.
349
350      "Additional permissions" are terms that supplement the terms of this
351    License by making exceptions from one or more of its conditions.
352    Additional permissions that are applicable to the entire Program shall
353    be treated as though they were included in this License, to the extent
354    that they are valid under applicable law.  If additional permissions
355    apply only to part of the Program, that part may be used separately
356    under those permissions, but the entire Program remains governed by
357    this License without regard to the additional permissions.
358
359      When you convey a copy of a covered work, you may at your option
360    remove any additional permissions from that copy, or from any part of
361    it.  (Additional permissions may be written to require their own
362    removal in certain cases when you modify the work.)  You may place
363    additional permissions on material, added by you to a covered work,
364    for which you have or can give appropriate copyright permission.
365
366      Notwithstanding any other provision of this License, for material you
367    add to a covered work, you may (if authorized by the copyright holders of
368    that material) supplement the terms of this License with terms:
369
370      a) Disclaiming warranty or limiting liability differently from the
371    terms of sections 15 and 16 of this License; or
372
373      b) Requiring preservation of specified reasonable legal notices or
374    author attributions in that material or in the Appropriate Legal
375    Notices displayed by works containing it; or
```

**EXHIBIT A**

SER_2038

12/7/2018                                    neo4j/LICENSE.txt at 3.4 · neo4j/neo4j · GitHub

```
376
377      c) Prohibiting misrepresentation of the origin of that material, or
378      requiring that modified versions of such material be marked in
379      reasonable ways as different from the original version; or
380
381      d) Limiting the use for publicity purposes of names of licensors or
382      authors of the material; or
383
384      e) Declining to grant rights under trademark law for use of some
385      trade names, trademarks, or service marks; or
386
387      f) Requiring indemnification of licensors and authors of that
388      material by anyone who conveys the material (or modified versions of
389      it) with contractual assumptions of liability to the recipient, for
390      any liability that these contractual assumptions directly impose on
391      those licensors and authors.
392
393    All other non-permissive additional terms are considered "further
394  restrictions" within the meaning of section 10.  If the Program as you
395  received it, or any part of it, contains a notice stating that it is
396  governed by this License along with a term that is a further restriction,
397  you may remove that term.  If a license document contains a further
398  restriction but permits relicensing or conveying under this License, you
399  may add to a covered work material governed by the terms of that license
400  document, provided that the further restriction does not survive such
401  relicensing or conveying.
402
403    If you add terms to a covered work in accord with this section, you
404  must place, in the relevant source files, a statement of the
405  additional terms that apply to those files, or a notice indicating
406  where to find the applicable terms.
407
408    Additional terms, permissive or non-permissive, may be stated in the
409  form of a separately written license, or stated as exceptions;
410  the above requirements apply either way.
411
412    8. Termination.
413
414    You may not propagate or modify a covered work except as expressly
415  provided under this License.  Any attempt otherwise to propagate or
416  modify it is void, and will automatically terminate your rights under
417  this License (including any patent licenses granted under the third
418  paragraph of section 11).
419
420    However, if you cease all violation of this License, then your
421  license from a particular copyright holder is reinstated (a)
422  provisionally, unless and until the copyright holder explicitly and
423  finally terminates your license, and (b) permanently, if the copyright
424  holder fails to notify you of the violation by some reasonable means
425  prior to 60 days after the cessation.
426
427    Moreover, your license from a particular copyright holder is
428  reinstated permanently if the copyright holder notifies you of the
429  violation by some reasonable means, this is the first time you have
430  received notice of violation of this License (for any work) from that
431  copyright holder, and you cure the violation prior to 30 days after
432  your receipt of the notice.
433
434    Termination of your rights under this section does not terminate the
435  licenses of parties who have received copies or rights from you under
436  this License.  If your rights have been terminated and not permanently
437  reinstated, you do not qualify to receive new licenses for the same
438  material under section 10.
439
440    9. Acceptance Not Required for Having Copies.
441
```

**EXHIBIT A**

SER_2039

442 You are not required to accept this License in order to receive or
443 run a copy of the Program.  Ancillary propagation of a covered work
444 occurring solely as a consequence of using peer-to-peer transmission
445 to receive a copy likewise does not require acceptance.  However,
446 nothing other than this License grants you permission to propagate or
447 modify any covered work.  These actions infringe copyright if you do
448 not accept this License.  Therefore, by modifying or propagating a
449 covered work, you indicate your acceptance of this License to do so.
450
451   10. Automatic Licensing of Downstream Recipients.
452
453   Each time you convey a covered work, the recipient automatically
454 receives a license from the original licensors, to run, modify and
455 propagate that work, subject to this License.  You are not responsible
456 for enforcing compliance by third parties with this License.
457
458   An "entity transaction" is a transaction transferring control of an
459 organization, or substantially all assets of one, or subdividing an
460 organization, or merging organizations.  If propagation of a covered
461 work results from an entity transaction, each party to that
462 transaction who receives a copy of the work also receives whatever
463 licenses to the work the party's predecessor in interest had or could
464 give under the previous paragraph, plus a right to possession of the
465 Corresponding Source of the work from the predecessor in interest, if
466 the predecessor has it or can get it with reasonable efforts.
467
468   You may not impose any further restrictions on the exercise of the
469 rights granted or affirmed under this License.  For example, you may
470 not impose a license fee, royalty, or other charge for exercise of
471 rights granted under this License, and you may not initiate litigation
472 (including a cross-claim or counterclaim in a lawsuit) alleging that
473 any patent claim is infringed by making, using, selling, offering for
474 sale, or importing the Program or any portion of it.
475
476   11. Patents.
477
478   A "contributor" is a copyright holder who authorizes use under this
479 License of the Program or a work on which the Program is based.  The
480 work thus licensed is called the contributor's "contributor version".
481
482   A contributor's "essential patent claims" are all patent claims
483 owned or controlled by the contributor, whether already acquired or
484 hereafter acquired, that would be infringed by some manner, permitted
485 by this License, of making, using, or selling its contributor version,
486 but do not include claims that would be infringed only as a
487 consequence of further modification of the contributor version.  For
488 purposes of this definition, "control" includes the right to grant
489 patent sublicenses in a manner consistent with the requirements of
490 this License.
491
492   Each contributor grants you a non-exclusive, worldwide, royalty-free
493 patent license under the contributor's essential patent claims, to
494 make, use, sell, offer for sale, import and otherwise run, modify and
495 propagate the contents of its contributor version.
496
497   In the following three paragraphs, a "patent license" is any express
498 agreement or commitment, however denominated, not to enforce a patent
499 (such as an express permission to practice a patent or covenant not to
500 sue for patent infringement).  To "grant" such a patent license to a
501 party means to make such an agreement or commitment not to enforce a
502 patent against the party.
503
504   If you convey a covered work, knowingly relying on a patent license,
505 and the Corresponding Source of the work is not available for anyone
506 to copy, free of charge and under the terms of this License, through a
507 publicly available network server or other readily accessible means,

**EXHIBIT A**

SER_2040

```
508   then you must either (1) cause the Corresponding Source to be so
509   available, or (2) arrange to deprive yourself of the benefit of the
510   patent license for this particular work, or (3) arrange, in a manner
511   consistent with the requirements of this License, to extend the patent
512   license to downstream recipients.  "Knowingly relying" means you have
513   actual knowledge that, but for the patent license, your conveying the
514   covered work in a country, or your recipient's use of the covered work
515   in a country, would infringe one or more identifiable patents in that
516   country that you have reason to believe are valid.
517
518     If, pursuant to or in connection with a single transaction or
519   arrangement, you convey, or propagate by procuring conveyance of, a
520   covered work, and grant a patent license to some of the parties
521   receiving the covered work authorizing them to use, propagate, modify
522   or convey a specific copy of the covered work, then the patent license
523   you grant is automatically extended to all recipients of the covered
524   work and works based on it.
525
526     A patent license is "discriminatory" if it does not include within
527   the scope of its coverage, prohibits the exercise of, or is
528   conditioned on the non-exercise of one or more of the rights that are
529   specifically granted under this License.  You may not convey a covered
530   work if you are a party to an arrangement with a third party that is
531   in the business of distributing software, under which you make payment
532   to the third party based on the extent of your activity of conveying
533   the work, and under which the third party grants, to any of the
534   parties who would receive the covered work from you, a discriminatory
535   patent license (a) in connection with copies of the covered work
536   conveyed by you (or copies made from those copies), or (b) primarily
537   for and in connection with specific products or compilations that
538   contain the covered work, unless you entered into that arrangement,
539   or that patent license was granted, prior to 28 March 2007.
540
541     Nothing in this License shall be construed as excluding or limiting
542   any implied license or other defenses to infringement that may
543   otherwise be available to you under applicable patent law.
544
545     12. No Surrender of Others' Freedom.
546
547     If conditions are imposed on you (whether by court order, agreement or
548   otherwise) that contradict the conditions of this License, they do not
549   excuse you from the conditions of this License.  If you cannot convey a
550   covered work so as to satisfy simultaneously your obligations under this
551   License and any other pertinent obligations, then as a consequence you may
552   not convey it at all.  For example, if you agree to terms that obligate you
553   to collect a royalty for further conveying from those to whom you convey
554   the Program, the only way you could satisfy both those terms and this
555   License would be to refrain entirely from conveying the Program.
556
557     13. Remote Network Interaction; Use with the GNU General Public License.
558
559     Notwithstanding any other provision of this License, if you modify the
560   Program, your modified version must prominently offer all users
561   interacting with it remotely through a computer network (if your version
562   supports such interaction) an opportunity to receive the Corresponding
563   Source of your version by providing access to the Corresponding Source
564   from a network server at no charge, through some standard or customary
565   means of facilitating copying of software.  This Corresponding Source
566   shall include the Corresponding Source for any work covered by version 3
567   of the GNU General Public License that is incorporated pursuant to the
568   following paragraph.
569
570     Notwithstanding any other provision of this License, you have permission
571   to link or combine any covered work with a work licensed under version 3
572   of the GNU General Public License into a single combined work, and to
573   convey the resulting work.  The terms of this License will continue to
```

**EXHIBIT A**

SER_2041

```
574   apply to the part which is the covered work, but the work with which it is
575   combined will remain governed by version 3 of the GNU General Public
576   License.
577
578     14. Revised Versions of this License.
579
580     The Free Software Foundation may publish revised and/or new versions of
581   the GNU Affero General Public License from time to time.  Such new
582   versions will be similar in spirit to the present version, but may differ
583   in detail to address new problems or concerns.
584
585     Each version is given a distinguishing version number.  If the
586   Program specifies that a certain numbered version of the GNU Affero
587   General Public License "or any later version" applies to it, you have
588   the option of following the terms and conditions either of that
589   numbered version or of any later version published by the Free
590   Software Foundation.  If the Program does not specify a version number
591   of the GNU Affero General Public License, you may choose any version
592   ever published by the Free Software Foundation.
593
594     If the Program specifies that a proxy can decide which future
595   versions of the GNU Affero General Public License can be used, that
596   proxy's public statement of acceptance of a version permanently
597   authorizes you to choose that version for the Program.
598
599     Later license versions may give you additional or different
600   permissions.  However, no additional obligations are imposed on any
601   author or copyright holder as a result of your choosing to follow a
602   later version.
603
604     15. Disclaimer of Warranty.
605
606     THERE IS NO WARRANTY FOR THE PROGRAM, TO THE EXTENT PERMITTED BY
607   APPLICABLE LAW.  EXCEPT WHEN OTHERWISE STATED IN WRITING THE COPYRIGHT
608   HOLDERS AND/OR OTHER PARTIES PROVIDE THE PROGRAM "AS IS" WITHOUT WARRANTY
609   OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO,
610   THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR
611   PURPOSE.  THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE PROGRAM
612   IS WITH YOU.  SHOULD THE PROGRAM PROVE DEFECTIVE, YOU ASSUME THE COST OF
613   ALL NECESSARY SERVICING, REPAIR OR CORRECTION.
614
615     16. Limitation of Liability.
616
617     IN NO EVENT UNLESS REQUIRED BY APPLICABLE LAW OR AGREED TO IN WRITING
618   WILL ANY COPYRIGHT HOLDER, OR ANY OTHER PARTY WHO MODIFIES AND/OR CONVEYS
619   THE PROGRAM AS PERMITTED ABOVE, BE LIABLE TO YOU FOR DAMAGES, INCLUDING ANY
620   GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE
621   USE OR INABILITY TO USE THE PROGRAM (INCLUDING BUT NOT LIMITED TO LOSS OF
622   DATA OR DATA BEING RENDERED INACCURATE OR LOSSES SUSTAINED BY YOU OR THIRD
623   PARTIES OR A FAILURE OF THE PROGRAM TO OPERATE WITH ANY OTHER PROGRAMS),
624   EVEN IF SUCH HOLDER OR OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF
625   SUCH DAMAGES.
626
627     17. Interpretation of Sections 15 and 16.
628
629     If the disclaimer of warranty and limitation of liability provided
630   above cannot be given local legal effect according to their terms,
631   reviewing courts shall apply local law that most closely approximates
632   an absolute waiver of all civil liability in connection with the
633   Program, unless a warranty or assumption of liability accompanies a
634   copy of the Program in return for a fee.
635
636                        END OF TERMS AND CONDITIONS
637
638              How to Apply These Terms to Your New Programs
639
```

**EXHIBIT A**

SER_2042

12/7/2018                                        neo4j/LICENSE.txt at 3.4 · neo4j/neo4j · GitHub

```
640    If you develop a new program, and you want it to be of the greatest
641  possible use to the public, the best way to achieve this is to make it
642  free software which everyone can redistribute and change under these terms.
643
644    To do so, attach the following notices to the program.  It is safest
645  to attach them to the start of each source file to most effectively
646  state the exclusion of warranty; and each file should have at least
647  the "copyright" line and a pointer to where the full notice is found.
648
649      <one line to give the program's name and a brief idea of what it does.>
650      Copyright (C) <year>  <name of author>
651
652    This program is free software: you can redistribute it and/or modify
653    it under the terms of the GNU Affero General Public License as
654    published by the Free Software Foundation, either version 3 of the
655    License, or (at your option) any later version.
656
657    This program is distributed in the hope that it will be useful,
658    but WITHOUT ANY WARRANTY; without even the implied warranty of
659    MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE.  See the
660    GNU Affero General Public License for more details.
661
662    You should have received a copy of the GNU Affero General Public License
663    along with this program.  If not, see <http://www.gnu.org/licenses/>.
664
665  Also add information on how to contact you by electronic and paper mail.
666
667    If your software can interact with users remotely through a computer
668  network, you should also make sure that it provides a way for users to
669  get its source.  For example, if your program is a web application, its
670  interface could display a "Source" link that leads users to an archive
671  of the code.  There are many ways you could offer source, and different
672  solutions will be better for different programs; see section 13 for the
673  specific requirements.
674
675    You should also get your employer (if you work as a programmer) or school,
676  if any, to sign a "copyright disclaimer" for the program, if necessary.
677  For more information on this, and how to apply and follow the GNU AGPL, see
678  <http://www.gnu.org/licenses/>.
679
680
681  "Commons Clause" License Condition
682
683  The Software is provided to you by the Licensor under the License, as
684  defined below, subject to the following condition. Without limiting
685  other conditions in the License, the grant of rights under the License
686  will not include, and the License does not grant to you, the right to
687  Sell the Software.  For purposes of the foregoing, "Sell" means
688  practicing any or all of the rights granted to you under the License
689  to provide to third parties, for a fee or other consideration,
690  a product or service that consists, entirely or substantially,
691  of the Software or the functionality of the Software. Any license
692  notice or attribution required by the License must also include
693  this Commons Cause License Condition notice.
```

**EXHIBIT A**

SER_2043

# EXHIBIT B

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0

**neotechnology** *graphs are everywhere*

# NEO4J SOLUTION PARTNER AGREEMENT

| Partner: | PureThink LLC | Neo Representative: | Erik Nolten; erik.nolten@neotechnology.com Phone: +31 652 721 808 |
|---|---|---|---|
| Address: | 4202 Adrienne Dr | Address: | Neo Technology, Inc. 111 East 5th Avenue San Mateo, CA 94401 |
| Contact Name: | John Mark Suhy Jr | Phone: | 1-855-636-4532 |
| Contact Phone: | 703-348-3968 x 101 | Web: | www.neotechnology.com |
| Contact Email: | jmsuhy@purethink.com | E-mail: | accounting@neotechnology.com |

| Support contact 1 | | Support contact 2 | |
|---|---|---|---|
| Name: | John Mark Suhy | Name: | Nikhil Budhiraja |
| Email: | jmsuhy@purethink.com | Email: | nikhil@purethink.com |
| Mobile: | 703-348-3968 x 101 | Mobile: | 703-348-3968 x 109 |

| Payment Information | Wire payment information: Silicon Valley Bank 3003 Tasman Drive Santa Clara, CA 95054, USA | Routing and Transit #: 121140399 SWIFT code: SVBKUS6S Credit Account #: 330072 6656 | |
|---|---|---|---|

**Neo4j Solution Partner Program Fee:**

| Agreement Period | 1 Year | Annual fees: | USD 1,995.00 |
|---|---|---|---|

Special condition: Fee is payable with the first Product order/referral.

**Territory.** Subject to the terms and conditions of this Agreement, Partner may sell the Products in the following "Territory" (check all that apply). Applicable territories: ___X__ North America; _____ Central and South America; _____Europe; _____Middle Eastern; _____Africa; _____Japan; _____ India; ____ Australia and New Zealand; _____Asia Pacific excluding Australia, New Zealand, Japan and India; _____ (Other).

By signing below, "Partner" shall be entitled to the benefits set forth on Exhibit A and Partner acknowledges and agrees to the terms and conditions of the Partner Terms attached hereto as Exhibit B effective as of ____09-30-2014_____ ("Effective Date"), by and between Neo Technology, Inc. ("Neo Technology"), a corporation having its principal place of business at 111 East Fifth Ave., First Floor, San Mateo, CA 94401 ("Neo Technology") and the "Partner" below.

| Partner: | | Neo Technology, Inc. | |
|---|---|---|---|
| Name: | PureThink LLC | Name: | LARS NORDWALL |
| Title: | CTO / Director | Title: | COO |
| Date: | 09-30-2014 | Date: | 10/6/2014 |
| Signature: | *[signature]* | Signature: | *DocuSigned by:* LARS NORDWALL 5E9692354E8643E... |

NEO TECHNOLOGY INC. CONFIDENTIAL

**EXHIBIT B**

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0

neotechnology graphs are everywhere

# NEO4J SOLUTION PARTNER AGREEMENT

**Exhibit A**
Benefits

In consideration for Partner's pre-payment of applicable fees and ongoing compliance with all of the other terms and conditions of this Agreement, and any Exhibits hereto, Neo Technology agrees to offer Partner the non-exclusive benefits described below.

| NEO4J SOLUTION PARTNER BENEFIT & QUALIFICATION TABLE | |
|---|---|
| Revenue sharing on sold subscriptions based on price list | 25% or as otherwise mutually agreed in an order form |
| Referral fee on sold new subscription | optional |
| Internal use of Neo4j for training and demo purposes | ✓ |
| Press release support for customer case studies | ✓ |
| Invitation to Neo events (fees may apply) | ✓ |
| Neo4j Partner Logo Usage | ✓ |
| Invitation to Product Roadmap Discussions | ✓ |
| Strategic Account Support | ✓ |
| Listing on Partner Page | ✓ |
| Access to training and certification program subject to execution of Authorized Training Partner Addendum | |
| Partner Portal Access | ✓ |
| Access to Neo4j Support | ✓ |
| Training discount | 20% |
| **Qualification and Partner Guidelines** | |
| Proven ability to commit and deliver on consulting engagements with high success rate | ✓ |
| Complete and submit Neo Partner Agreement | ✓ |
| 2 or more Certified Neo Consultants | ✓ |
| Joint Business & Marketing Plan for Territory | ✓ |
| Generate Case study(s) for joint customer | ✓ |
| Two Annual new customer acquisition target | ✓ |
| Organize Neo4j events | ✓ |

NEO TECHNOLOGY INC. CONFIDENTIAL

**EXHIBIT B**

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0

 neotechnology graphs are everywhere

# NEO4J SOLUTION PARTNER AGREEMENT

### Exhibit B
### Partner Terms

**1.    PARTNER PROGRAM AND ORDERS.**  In exchange for the payment of applicable fees, Partner will be entitled to the benefits of the Partner Program for described on Exhibit A. Partner may submit orders for Products to Neo Technology from time to time.  All orders must be consistent with the terms of this Agreement and are subject to Neo Technology's acceptance or rejection.  If accepted, Partner shall execute the Neo Technology Order Form and shall: (i) shall cause the applicable End User to execute Neo Technology's Acknowledgement Form as Neo Technology provides to Partner from time to time or (ii) Partner hereby agrees to be responsible and jointly and severally liable for all of the End User/Licensee obligations found at http://www.neotechnology.com/terms/enduser-partner-us/ with respect to (a) the State of Maryland as the End User/Licensee under such terms and (b) with respect to any other governmental entity that Neo Technology approves of in a mutually agreed upon Neo Technology Order Form.  All licenses to use the Products will be between Neo Technology and the applicable End User.  Partner will inform Neo Technology of the status of each Product order renewal in writing at least thirty (30) days before the expiration date of each End User's subscription license period.  In the event Partner fails to notify Neo Technology within the thirty (30) day period described above, Neo Technology may, in its sole discretion, renew the Product subscription directly with the End User.

**2.    PAYMENTS AND FEES.**

**2.1    Partner Program Fees.**  During the term of this Agreement, Partner will pay to Neo Technology the annual Partner Program fees as specified on the front page of this Agreement. The first year's annual Program fees are due on the Effective Date of this Agreement. Thereafter, the annual Program fees for renewal years will be invoiced at the then current annual Partner Program fees and such renewal Partner Program fees will be invoiced annually in advance on each anniversary of the Effective Date of this Agreement.

**2.2    Product Orders and Fees.**  Fees for orders for subscriptions to the Products, including for renewals subject to Section 1, will be at the discounted prices set forth in Exhibit A and will be invoiced in advance after Neo Technology's Acknowledgement Form is executed by Partner and the End User or as otherwise set forth in Section 1.  Partner shall not enable any End User to download, install or use the Products unless and until the End User has duly executed Neo Technology's Acknowledgement Form or as otherwise set forth in Section 1. Neo Technology shall have the right to modify the discounted prices set forth in Exhibit A at any time.  Neo Technology will provide the renewal amount to Partner for each End User renewal within a reasonable period of time after Partner informs Neo Technology of the status of each Product order renewal as set forth in Section 1 above.

**2.3    Taxes/Duties.**  All fees and charges payable by Partner under this Agreement are exclusive of any (a) duties or (b) present or future sales, use, value added, excise, or other governmental or similar taxes applicable to this Agreement.  Neo Technology will separately itemize any applicable taxes and duties of which it is aware on each invoice, unless Partner furnishes Neo Technology with a properly executed tax exemption certificate certifying that it does not owe such taxes and duties.  Partner will be responsible for paying any applicable taxes and duties currently or hereafter assessed by a government agency, other than taxes based on Neo Technology's net income.  If all or any part of any payment owed to Neo Technology under this Agreement is withheld, based upon a claim that such withholding is required pursuant to the tax laws of any country or its political subdivisions and/or any tax treaty between the U.S. and any such country, such payment shall be increased by the amount necessary to result in a net payment to Neo Technology of the amounts otherwise payable under this Agreement.

**2.4    Payment.**  Unless otherwise indicated in addendums to this Agreement, payments of all invoices: (a) will be paid within thirty (30) days of the date of the invoice; and (b) will be made in EUROS or U.S. dollars as set forth on the front page of this Agreement or as Neo Technology otherwise specifies without right of set off or chargeback.  All fees are non-refundable. All amounts not paid when due are subject to a late fee of the lesser of one percent (1%) per month or the maximum amount allowable by law.

**2.5    Notification of Changes.**  Neo Technology will provide Partner with sixty (60) days written notice of any changes in the Partner program benefits set forth on Exhibit A.

**2.6    Audit Rights.**  Partner will, during this Agreement and for a period of one (1) year after termination, maintain records relating to its performance under this Agreement. Partner agrees that Neo Technology, upon at least ten (10) days prior written notice during business hours may at its own cost and expense directly or through an agent inspect such accounts, records and other information as may be required to verify Partner's compliance with this Agreement. The cost of the audit will be borne by Neo Technology unless the audit reveals an underpayment by Partner to Neo Technology, in which case Partner will immediately pay the amount of the underpayment and will pay for the cost of the audit.

**3.    CONFIDENTIALITY.** Each party acknowledges that it acquires only the right to use the other party's Confidential Information under the terms and conditions of this Agreement and does not acquire any rights of ownership or title in the other party's Confidential Information.  Each party will hold in confidence any Confidential Information received by it from the other and will protect the confidentiality of such with the same degree of care that it exercises with respect to its own information of like import, but in no event less than reasonable care, for a period of five (5) years from receipt. Each party will only disclose Confidential Information to its employees, agents, representatives and authorized contractors (collectively "Representatives") having a need to know for the purposes of this Agreement.  Each party will notify and inform such Representatives of each party's limitations, duties, and obligations regarding use, access to, and nondisclosure of Confidential Information and will obtain or have obtained its Representatives' agreements to comply with such limitations, duties, and obligations with regard to such Confidential Information no less restrictive than those contained herein. Each party is liable for all acts and omissions of the Representatives related to the other party's Confidential Information. Each party agrees to give notice to the other party immediately after learning of or having reason to suspect a breach of any of the proprietary restrictions set forth in this Section. In the event that a party is required to disclose Confidential Information pursuant to any applicable statute, regulation or order of a court of competent jurisdiction, that party will use commercially reasonable efforts to notify the other party of the required disclosure.

**4.    LICENSES AND OWNERSHIP.**

**4.1    Licenses.**  Neo Technology hereby grants to Partner a non-exclusive, non-transferable limited license during the term of this Agreement to: (i) use the Products solely to demonstrate the Products to potential customers in connection with its performance under this Agreement; (ii) provided that Partner has executed an Authorized Training Partner Addendum, use the Products to provide training and Level 1 and Level 2 Support to End Users that have licensed the Products from Neo Technology, with all such Support as described on Exhibit C; (iii) use the Neo Technology trademarks solely to market and promote the Products in accordance with the terms of this Agreement; and (iv) market and resell licenses to the Products (in object code only) to End Users, for use by End Users for their internal business purposes and subject to the End Users' agreement to Neo Technology's Acknowledgement Form and license agreement or as otherwise set forth in Section 1.  Partner will use Neo Technology trademarks only in accordance with Neo Technology's then-current trademark usage guidelines. Any use by Partner of Neo Technology trademarks will inure to the benefit of Neo Technology  Neo Technology will provide Partner with Level 3 Support as described on Exhibit C.

**4.2    Pre-Existing Technology.**  Each party acknowledges and agrees that, as between the parties, each party is and will remain the sole and exclusive owner of all right, title, and interest in and to its pre-existing technology, and all associated Intellectual Property Rights, and that this Agreement does not affect such ownership.  Each party acknowledges that it acquires no rights under this Agreement to the other party's pre-existing technology other than the limited rights specifically granted in this Agreement. Neo Technology will own all right, title, and interest in and to all Products and derivative works of the Products and all associated Intellectual Property Rights.  If Partner acquires any rights, including any Intellectual Property Rights, in the Products or derivative works thereof, Partner hereby assigns and agrees to assign to Neo Technology all such rights.

**4.3    Modifications to Pre-Existing Technology.** Each party acknowledges and agrees that, as between the parties, each party is and will remain the sole and exclusive owner of all right, title, and interest in and to any modifications and/or derivative works to its pre-existing technology regardless of who created such modifications and/or derivative works, and all associated Intellectual Property Rights.  Each party acknowledges that it acquires no rights under this Agreement to the modifications and/or derivative works of the other party's pre-existing technology other than the limited rights specifically granted in this Agreement.

**4.3    Restrictions.**

**4.3.1** During the term of this Agreement, Partner may not use or run on any of Partner's hardware, or have deployed for internal use, any Neo Technology Community Edition Products for commercial or production use.  In no event shall Partner reverse engineer, distribute or otherwise use the Products for its own internal use.  There are no implied rights.  Partner will not fork or bifurcate the source code for any Neo Technology Community Edition Products and separately maintained source code repository so that development done on the original code requires manual work to be transferred to the forked software or so that the forked software starts to have features not present in the original software.

**4.3.2** During the term of this Agreement and up until thirty six (36) months after the termination or expiration of this Agreement, Partner may not develop, market, distribute or offer any services related to any Neo Technology Community Edition Products, derivative works of such products, or any Partner software code made to work with Neo Technology Community Edition Products (including, without limitation, hosting services, training, technical support, configuration and customization services, etc.).

**4.3.3** During the term of this Agreement, Partner will not accept work, enter into a contract or accept an obligation inconsistent or incompatible with Partner's obligations, or the scope of services to be rendered for Neo Technology, under this Agreement.  Partner warrants that, to the best of Partner's knowledge, there is no other existing contract or duty on Partner's part that conflicts with or is inconsistent with this Agreement.  Partner agrees to indemnify and hold harmless Neo Technology from any and all losses and liabilities incurred or suffered by Neo Technology by reason of the alleged breach by Partner of any services agreement between Partner and any third party.

**4.3.4** Partner shall conduct and perform its obligations under this Agreement in a manner that reflects favorably on Neo Technology at all times.  Partner shall not make any representations or warranties regarding Neo Technology or the Products.  Partner agrees to indemnify, defend and hold harmless Neo Technology from any and all claims arising from any representations or warranties made by Partner regarding Neo Technology and/or Product(s) and/or Neo Technology Services. Partner may not approach any End Users who purchased Products directly from Neo Technology for the purpose of renewing or upgrading the End User's subscription to the Products through Partner.

**5.    DISCLAIMER.**  NEO TECHNOLOGY MAKES NO WARRANTIES REGARDING THE PRODUCTS OR ANY INFORMATION PROVIDED BY NEO TECHNOLOGY HEREUNDER, EITHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT OR FITNESS FOR A PARTICULAR PURPOSE.

**6.    LIMITATION OF LIABILITY.** NEO TECHNOLOGY WILL NOT BE LIABLE FOR ANY INDIRECT, PUNITIVE, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGE IN CONNECTION WITH OR ARISING OUT OF OR RELATED TO THIS AGREEMENT (INCLUDING LOSS OF BUSINESS, REVENUE, PROFITS, USE, DATA, OR OTHER ECONOMIC ADVANTAGE), HOWEVER IT ARISES, WHETHER FOR BREACH OR IN TORT (INCLUDING NEGLIGENCE), EVEN IF NEO TECHNOLOGY HAS BEEN PREVIOUSLY ADVISED OF THE

NEO TECHNOLOGY INC. CONFIDENTIAL

# EXHIBIT B

SER_2047

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0

 neotechnology graphs are everywhere

# NEO4J SOLUTION PARTNER AGREEMENT

POSSIBILITY OF SUCH DAMAGE. NEO TECHNOLOGY'S AGGREGATE CUMULATIVE LIABILITY FOR CLAIMS RELATING TO THIS AGREEMENT, WHETHER FOR BREACH OR IN TORT, WILL BE LIMITED TO THE AMOUNT PAID BY PARTNER TO NEO TECHNOLOGY UNDER THIS AGREEMENT IN THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE ACT OR OMISSION FIRST GIVING RISE TO THE CLAIM.   LIABILITY FOR DAMAGES WILL BE LIMITED AND EXCLUDED, EVEN IF ANY EXCLUSIVE REMEDY PROVIDED FOR IN THIS AGREEMENT FAILS OF ITS ESSENTIAL PURPOSE.

**7.      TERM AND TERMINATION.**

**7.1      Term.** This Agreement will commence on the Effective Date, and remain in effect for a period of one (1) year.  Thereafter, this Agreement will automatically renew at additional one (1) year periods unless either party provides at least sixty (60) days prior written notice to the other party of its intent not to renew.

**7.2      Termination.** This Agreement may be terminated by a party for cause immediately if (a) the other ceases to do business, or otherwise terminates its business operations; or (b) the other materially breaches any material provision of this Agreement and fails to cure such breach within thirty (30) days of written notice describing the breach. In addition, Neo Technology may terminate this Agreement at any time by providing Partner with ninety (90) days prior written notice.  This Agreement may be terminated as set forth on Exhibit C.

**7.3      Effect of Termination.** Upon termination of this Agreement by either party (a) all rights and licenses of Partner hereunder will terminate  and Partner shall cease all communications with End Users regarding the Products; and (b) each party will immediately return to the other party all Confidential Information in its possession, custody or control in whichever form held (including all copies or embodiments of the Confidential Information) and will cease using any trademarks, service marks and other designations of the other party; and (c) Partner shall pay to Neo Technology all outstanding fees. To remove all doubt, except as set forth in this Agreement, it is hereby clarified that Partner will not be entitled to any additional remuneration, or reimbursement of any expenses based on the expiration or termination of this Agreement.  An addendum to this Agreement may specify additional effects of termination of this Agreement.  After any termination of this Agreement, Neo Technology shall not be restricted in any manner from licensing or contracting with End Users.

**7.4      Survival.** In addition to any provisions set forth on an addendum to this Agreement that expressly survive termination or expiration of this Agreement, any definitions any payment obligations that accrued prior to the effective termination or expiration date and Sections 2.6, 3, 4.2, 4.3.2 (as set forth therein), 4.3.4, 5, 6, 7, 8, 10 and 11 will survive the expiration or termination of this Agreement.

**8.      INDEMNITY.**  Partner will indemnify, defend and hold harmless Neo Technology from and against any and all third party claims, suits, actions, demands and proceedings against Neo Technology and all losses, costs and liabilities related thereto arising out of or related to any negligence by Partner or any other act or omission of Partner, including without limitation any breach of this Agreement by Partner.

**9.      MARKETING**

**9.1      Marketing.** Provided that Partner complies with all of the obligations herein, Neo Technology will include the Partner company logo and profile on the Neo Technology website.  Partner will include the Neo Technology company logo on Partner website in accordance with the Neo Technology trademark usage guidelines.  Each party may issue a press release announcing that Partner is a Partner as the other party approves in writing.  Each party will provide a quote from an executive to support the other party's press release.  All marketing activities are subject to approval by both Partner and Neo Technology.

**9.2      Surveys.** Neo Technology may issues surveys to Partner once per quarter in an effort to improve customer satisfaction.  Partner will provide responses within ten (10) business days of receipt of each survey.

**10.      GENERAL TERMS.**

**10.1      Force Majeure.** A party is not liable under this Agreement for non-performance caused by events or conditions beyond that party's control if the party makes reasonable efforts to perform.

**10.2      Relationship of Parties.** This Agreement is not intended to create a relationship such as a partnership, franchise, joint venture, agency, or employment relationship.  Neither party may act in a manner which expresses or implies a relationship other than that of independent contractor, nor bind the other party.

**10.3      Notices.** All written notices required by this Agreement must be delivered to the addresses specified above, either in person or by a means evidenced by a delivery receipt.  All notices will be effective upon receipt.

**10.4      Assignment.** Neither party may assign or otherwise transfer any of its rights or obligations under this Agreement, without the prior written consent of the other party; provided, however, either party may assign this Agreement without the other party's consent to a parent or subsidiary of such party or in the case of a merger or sale of all or substantially all of its assets or stock.

**10.5      Waiver or Delay.** Any express waiver or failure to exercise promptly any right under this Agreement will not create a continuing waiver or any expectation of non-enforcement.

**10.6      Provisions Found Invalid.** If any term or provision of this Agreement is found to be invalid under any applicable statute or rule of law then, that provision notwithstanding, this Agreement will remain in full force and effect and such provision will be deemed omitted; provided, however, in lieu of such omitted provision there will be added to this Agreement a valid provision which is as nearly identical to the omitted provision as possible.

**10.7      Construction.** This Agreement has been negotiated by the parties, each of which has been represented by counsel.  This Agreement will be fairly interpreted in accordance with its terms, without any strict construction in favor of or against either party.

**10.8      Governing Law.**  Any action related to this Agreement will be governed by the laws of California without regard for its choice of law provisions.  The United Nations Convention on Contracts for the International Sale of Goods will not apply.

**10.9      Venue.** Except as set forth below, the courts seated in San Mateo, California, will have sole and exclusive jurisdiction for all purposes in connection with any action or proceeding that arises from, or relates to, this Agreement, and each party hereby irrevocably waives any objection to such exclusive jurisdiction.  Notwithstanding anything in this Agreement to the contrary, Neo Technology may seek injunctive or other equitable relief in any court of competent jurisdiction to protect any actual or threatened misappropriation or infringement of its intellectual property rights or those of its licensors, and Partner hereby submits to the exclusive jurisdiction of such courts and waives any objection thereto on the basis of improper venue, inconvenience of the forum or any other grounds.

**10.10      Export.**  Partner will not export the Products in violation of the export laws of the United States or of any other country.

**10.11      Non-solicitation.** During the term of this Agreement and for a period of one (1) year thereafter Partner will not directly or indirectly, either alone or in association with others, (a) solicit, or permit any of its affiliates to solicit, any employee of Neo Technology or its affiliates to leave the employ of Neo Technology or any of its affiliates, or (b) solicit for employment, hire, or engage as an independent contractor, or permit any of its affiliates to solicit for employment, hire, or engage as an independent contractor, any person who was employed by Neo Technology or its affiliates; provided, that this clause (b) will not apply to any individual whose employment with Neo Technology or any of its affiliates has been terminated for a period of six (6) months or longer and provided further that this Section 10.11 will not prohibit general advertisement of employment opportunities not specifically targeting any employee(s) of Neo Technology or its affiliates.

**10.13      Other.** This Agreement and attached Exhibit(s) is the entire agreement between the parties.  This Agreement supersedes and cancels any prior documents or agreements, whether written or oral, regarding the subject matter addressed in this Agreement and attached Exhibit(s).  If any terms on Partner's orders conflict with the terms of this Agreement, the conflicting terms of this Agreement shall control. Any preprinted terms on Partner's purchase order or similar ordering or other document are hereby rejected.

**11.      DEFINITIONS.**

"Confidential Information" means information which has value because it is not generally known and which the disclosing party uses reasonable means to protect and includes without limitation any information designated as confidential or proprietary by either party to this Agreement upon disclosure.  Confidential Information may include proprietary information of third parties who have granted licenses to or have contractual relationships with the disclosing party.  Confidential Information excludes information that receiving party can clearly establish by written evidence: (a) was in the possession of, or was known by, receiving party prior to its receipt from disclosing party; (b) is or becomes generally known to the public without violation of this Agreement; (c) is obtained by receiving party from a third party not under any obligation of confidentiality; or (d) is independently developed by receiving party without use of Confidential Information. Furthermore, disclosure of Confidential Information will not be prohibited if disclosure is required by law, regulation or order of a court of competent jurisdiction.

"End User" means an end customer that may use the Products for their own internal use and not for resale or distribution.

"Intellectual Property Rights" means all intellectual property rights worldwide arising under statutory or common law or by contract and whether or not perfected, now existing or hereafter filed, issued, or acquired, including all: (a) patent rights; (b) rights associated with works of authorship including copyrights and mask work rights; (c) rights relating to the protection of trade secrets and confidential information; (d) trademarks, service marks, trade dress and trade names; and (e) any right analogous to those set forth in this Agreement and any other proprietary rights relating to intangible property.

"Neo Technology Community Edition Product" means an open source version of a Neo Technology software product.

"Products" means the Neo4J commercial software provided by Neo Technology and licensed to the End User.

"Support" refers generally to the provision of support as described in Exhibit C of this Agreement.

NEO TECHNOLOGY INC. CONFIDENTIAL

# EXHIBIT B

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0

 graphs are everywhere

# NEO4J SOLUTION PARTNER AGREEMENT

## Exhibit C
## Support

**1. Introduction.** This Support Summary is an attachment to the Partner Agreement between Neo Technology and the applicable Partner and is automatically deemed part of, and governed by, the Partner Agreement. Unless otherwise defined in this Support Summary, any capitalized term used in this Support Summary will have the meaning given it in the Partner Agreement.

**2. Partner's Support Obligations.** Partner will provide First and Second Line Support to End User(s) for the Products. This First and Second Line Support shall be provided in accordance with Neo Technology's standard Support Terms, available at http://neotechnology.com/support-terms, and be provided in the time zone and local language of End User(s) unless agreed otherwise with End User(s) and Neo Technology. Additionally, Partner commits to agreeing with End User(s) on the manner in which Partner will provide First and Second Line Support, including the minimum response time(s). Partner will provide for any First and Second Line Support request by End User(s), and will provide Neo Technology with a summary of each such agreement.

**3. Deficiencies.** In the event an End User is dissatisfied with Partner's Support, or Neo Technology otherwise reasonably believes that Partner is not providing such Support in accordance with accepted industry standards, then Neo Technology will notify Partner in writing and both parties will work together in good faith to resolve the deficiencies. If within thirty (30) days, Neo Technology does not believe, in its sole discretion, that such deficiencies have been resolved, Neo Technology may require that Partner cease the provision of Support and allow Neo Technology, or a nominated representative of Neo Technology, to provide such Support directly to the applicable End User(s). In such event, Partner agrees to provide reasonable cooperation in the transition of Support to Neo Technology, or the nominated representative of Neo Technology, and, if Partner was paid in advance for future Support, Partner will pay Neo Technology agreed-to amounts for the period of Support to be provided by Neo Technology or its nominated representative.

**4. Partner Certification.** Partner must meet any certification requirements specified by Neo Technology from time to time in writing, including, without limitation, the requirement to have on Partner's staff at least two (2) Neo Technology certified engineers within six (6) months of the Effective Date. Neo Technology will offer, and Partner may order, training programs in accordance with Neo Technology's then-current program rates or as agreed by the parties in writing. In addition, Partner will comply with any additional certification and training requirements established by Neo Technology from time to time, within ninety (90) days notice from Neo Technology. Support certification is based on a combination of performance-based tests and attended training days that measure competency on Products.

**5. Neo Technology's Support Obligations.** For the purposes of Support, Neo Technology will consider Partner as a customer and provide Partner with Second Line Support in accordance with Neo Technology's standard Support Terms, available at http://neotechnology.com/support-terms. Partner will meet all obligations of a customer described in the Support Terms. Partner agrees to contact Neo Technology for Second Line Support only when, after reasonable commercial efforts, Partner has identified an issue related specifically to Product and is unable to determine a resolution. If any terms of the Support Terms at http://neotechnology.com/support-terms conflict with any terms of this Exhibit C, the conflicting terms of this Exhibit C shall control.

**6. Cooperation.** Partner will cooperate with and provide assistance to Neo Technology as Neo Technology may reasonably request in connection with Neo Technology's Support obligations, including, without limitation, the following:

*6.1. Test Code.* Partner will use its best efforts to provide Neo Technology functioning test code that reproduces and isolates the issue in Product. Such test code must be reproducible using systems and tooling available to Neo Technology. In addition, Partner will remove extraneous comments and code from the test code provided and to the extent possible, such code will be fully self-contained, automated and will demonstrate the precise issue reported rather than other possible problems. If Partner cannot provide test code that reproduces the issue, Partner acknowledges that Neo Technology may be unable to provide a resolution to the issue. In such cases, Neo Technology will work with Partner to assist in the development of a test case.

*6.2. Access.* Partner will use its best efforts to provide Neo Technology with access (via remote telecommunications and, if applicable, on-site access at the End User's or Partners premises) to the extent reasonably necessary to allow Neo Technology to provide the Support. If Partner cannot provide remote access, Neo Technology may be unable to provide a resolution to the issue.

*6.3. Assistance.* Partner will provide Neo Technology with a continually-available engineer who will promptly assist Neo Technology with data gathering, testing, and applying all fixes to the applicable environment for Severity Level 1 and Severity Level 2 issues.

**7. Data.** In connection with any activities provided hereunder, Partner will only share or otherwise disclose data to Neo Technology for which Partner has obtained the rights, and express consent of the data subject, to disclose to Neo Technology.

**8. Reporting.** Partner will provide Neo Technology with a monthly report detailing the status of all Severity Level 1 and Severity Level 2 Support cases, as defined in the Support Terms, provided to each End User, including all information reasonably requested by Neo Technology. Such reports will be provided on the first Friday of every month and cover the previous month's activities. Partner acknowledges that Neo Technology may change the reporting obligations described in this Section, and Partner will comply with any new reporting obligations within thirty (30) days of Neo Technology's request. The Support report will provide the following:

- Case number (provided by Partner to End User)
- Partner ID (provided by Neo Technology)
- End user name and contact details
- Status (e.g. new, open, hold, solved, closed)
- Severity Level, based on the categories defined in Neo Technology's standard Support Terms.
- Initial response time; opened and closed date
- Responsible support representative
- Product
- Issue description and type, and root cause description

**9. Exclusions.** Neo Technology will not be obliged to provide Support to Partner for any issue arising out of any of the following events:

- A failure of hardware, equipment or programs not provided by Neo Technology
- Support for any versions of the Product that are not obtained by Partner via the Neo Technology Customer Support Portal
- Use in a Production Environment of versions of the Product not marked as 'Generally Available'
- Support for any version of the Product in production more than two years from the date of its general availability
- Any cause or causes beyond the reasonable control of Neo Technology (e.g. floods, fires, loss of electricity or other utilities)
- Partner's or End User's failure to comply with operating instructions contained in the Product documentation
- Any modification, enhancement or customization of the Product by anyone other than Neo Technology
- APIs, interfaces, web services or data formats other than those included with the Product

**10. Other Terms.** Neo Technology may modify its processes and requirements from time to time upon reasonable written notice to Partner; provided that any such changes will apply only prospectively.

**11. Termination.** Neo Technology reserves the right, at any time, to withdraw the availability of Support for a Product with twelve (12) months prior written notice.

NEO TECHNOLOGY INC. CONFIDENTIAL

# EXHIBIT B

SER_2049

Case 5:18-cv-07182-EJD   Document 177   Filed 03/17/23   Page 39 of 45

**EXHIBIT C**

SER_2050

DocuSign Envelope ID: F6D9F641-CA88-486B-A516-365FE7206262



San Mateo, 11. April 2015

To whom it may concern,

PureThink LLC a Delaware Company, is the only Neo4j Government Edition reseller that is certified to resell and support to the US Federal Government, Department of Defense (DOD), and Intelligence Agencies.

This agreement can be provided to Government Agencies to support any **Federal Acquisition Regulation (FAR)** regulations.

Signed: _LARS NORDWALL_    Signed: _____
DocuSigned by:
5E9692354E8643E...

| Neo Technology, Inc. | PureThink LLC |
| Lars Nordwall | John Mark Suhy |
| COO | CTO PureThink LLC |
| Neo Technology, Inc. | jmsuhy@purethink.com |
| lars.nordwall@neotechnology.com | 703-862-7780 |
| 1-855-636-4532 | |

Neo Technology, Inc.    111 East Fifth Avenue    San Mateo, CA  1-855-636-4532

**EXHIBIT C**

SER_2051

DocuSign Envelope ID: 9C05B5E7-6D91-4C15-A1C5-81FB1B29C22F



San Mateo, 23. June 2016

To whom it may concern,

PureThink LLC a Delaware Company, is the only Neo4j Government Edition reseller that is certified to resell and support to the US Federal Government, Department of Defense (DOD), and Intelligence Agencies.

This agreement can be provided to Government Agencies to support any Federal Acquisition Regulation (FAR) regulations.

Signed: _____        Signed: _____

**Neo Technology, Inc.**                      **PureThink LLC**
Lars Nordwall                            John Mark Suhy
COO                                    CTO
Neo Technology, Inc.                    PureThink LLC
lars.nordwall@neotechnology.com       jmsuhy@purethink.com
1-855-636-4532                          703-862-7780

**EXHIBIT C**

# EXHIBIT D

SER_2053

12/11/2018                                    purethink Mail - FW: Termination of Neo4j Solution Partner PureThink LLC



John Mark Suhy <jmsuhy@purethink.com>

---

## FW: Termination of Neo4j Solution Partner PureThink LLC

**Dunn Michael C** <Michael.C.Dunn@irs.gov>                                    Wed, Jul 12, 2017 at 6:13 AM
To: "Suhy John M Jr [Contractor]" <John.M.SuhyJr@irs.gov>, "jmsuhy@purethink.com" <jmsuhy@purethink.com>
Cc: Hess Chris <Christopher.E.Hess@irs.gov>, Goss Renee Y <Renee.Y.Goss@irs.gov>, Rosenmerkel Lisa S
<Lisa.S.Rosenmerkel@irs.gov>, Butler Jeff <Jeff.Butler@irs.gov>

Hello John Mark,

We received this notification from Jason (Neo4j), and so it's been passed onto Procurement too: Vivian and
Genevieve.  One question I have for this existing contract is if services are stopped due to what Neo4j
states below regarding Purethink's inability to provide open-source version support in the below?  Now this
is me asking for an initial statement, and so there's probably also a need to either work through Renee to
the Procurement folks and/or talk with them too, since I figured they're going to reach out after receiving this
email from Jason.

"Regarding the consulting services, please be advised that PureThink is not authorized to provide consulting services
and support on open source versions of Neo4j products… prohibit them from providing any consulting services on
these products during the term of their agreement and for a period of thirty six (36) months following termination.  Neo
will work with IRS to ensure that it receives the correct product and services from an authorized Neo4j partner."

---

**Michael C. Dunn**

Data Management Division/Business Systems Planning

Research, Applied Analytics, & Statistics

(o) 202.803.9009

---

**From:** Dunn Michael C
**Sent:** July-12-17 6:03 AM
**To:** 'Jason Zagalsky' <jason@neo4j.com>
**Cc:** vvivian.d.daniels@irs.gov; John Broad <john.broad@neo4j.com>; Goss Renee Y
<Renee.Y.Goss@irs.gov>
**Subject:** RE: Termination of Neo4j Solution Partner PureThink LLC

Hello, Thank Jason. I'm looping in Renee Goss, our COR on the Purethink contract.

---

**EXHIBIT D**

**SER_2054**

12/11/2018                              purethink Mail - FW: Termination of Neo4j Solution Partner PureThink LLC

**Michael C. Dunn**

Data Management Division/Business Systems Planning

Research, Applied Analytics, & Statistics

(o) 202.803.9009

**From:** Jason Zagalsky [mailto:jason@neo4j.com]
**Sent:** July-11-17 7:49 PM
**To:** Dunn Michael C <Michael.C.Dunn@irs.gov>
**Cc:** vvivian.d.daniels@irs.gov; John Broad <john.broad@neo4j.com>
**Subject:** Termination of Neo4j Solution Partner PureThink LLC

July 11, 2017

Internal Revenue Service

Attn: Michael Dunn

Cc: Vivian Daniels

Department of Treasury

To: Michael Dunn

Re:      Termination of Neo4j Solution Partner PureThink LLC ("PureThink")

I write to inform you that Neo4j, Inc., formerly Neo Technology, Inc. ("Neo"), recently terminated its partnership agreement with PureThink.  I understand that IRS has a relationship with PureThink relating to Neo's products.  Because this change in PureThink's status may affect the services and support IRS receives, Neo wanted to notify IRS of this development and to offer Neo's assistance in transitioning IRS to an authorized Neo4j partner to ensure IRS continues to receive the support it requires in a manner that respects Neo's intellectual property rights and contractual relationships.

Neo understands that IRS entered into an agreement with PureThink in September 2016 to purchase a commercial license to Neo4j Government Edition and for consulting services and support.  We understand that the term of that agreement expires on September 22, 2017.  We further understand that IRS paid PureThink $229,000 for a Neo4j subscription and the consulting services.

Regarding IRS's purchase of a Neo4j subscription, Neo still has not received a purchase order from PureThink.  As a result of PureThink's termination, please be advised that PureThink is no longer authorized to purchase a Neo4j subscription on behalf of IRS.  Neo will work with IRS to purchase a subscription through an authorized Neo4j partner.

Regarding the consulting services, please be advised that PureThink is not authorized to provide consulting services and support on open source versions of Neo4j products.  This prohibition applies not only to the APGL-licensed Enterprise Edition but also to the GPL-licensed Community Edition.  While IRS has stated its intention to proceed with the AGPL-licensed Enterprise Edition, please understand that Neo's agreements with its partners, including PureThink, prohibit them from providing any consulting services on these products during the term of their agreement and for a period of thirty six (36) months following termination.  Neo will work with IRS to ensure that it receives the correct product and services from an authorized Neo4j partner.

We appreciate that this news may come as a surprise to IRS, and Neo wanted to make sure that IRS was promptly notified of this action so that it can make the appropriate decisions.  Neo is available to answer any questions you may have and to assist in transitioning your subscription and support to an authorized Neo4j partner.  We appreciate your continued interest in Neo4j and look forward to continuing to work with you.

Please do not hesitate to reach out to me with any questions regarding this notification.

**EXHIBIT D**

12/11/2018                         purethink Mail - FW: Termination of Neo4j Solution Partner PureThink LLC

Sincerely,

**Jason Zagalsky**

Federal Technical Account Manager  |  Neo4j

410-280-9697  |  jason@neo4j.com



**EXHIBIT D**

**SER_2056**

No. 21-16029

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**NEO4J, INC.,**

*Plaintiff and Appellee,*

**v.**

**PURETHINK, LLC, et al.**;

*Defendants and Appellants.*

---

Appeal From a Judgment of the United States District Court
For the Northern District of California
Hon. Edward J. Davila
United States District Judge
N. D. Cal. No. 5:18-cv-07182 EJD

**APPELLANTS' PETITION FOR PANEL REHEARING**

---

ADRON W. BEENE (SBN 129040)      JOSEPH A. HEARST (SBN 130284)
ADRON G. BEENE (SBN 298088)      1569 Solano Ave. #525
1754 Technology Drive, Ste. 228   Berkeley, CA 94707
San Jose, CA 95110                Tel: (510) 528-6863
Tel.: (408) 392-9233              Fax: (510) 280-2556
Fax: (866) 329-0453               jahearst@pacbell.net
adron@adronlaw.com

                                  Attorneys for defendants, cross-complainants
                                  and appellants John Mark Mr. Suhy,
                                  PureThink, Inc. and iGov, Inc.

1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. 3

I.      INTRODUCTION ................................................................... 4

II.     ARGUMENT .......................................................................... 4

   A.      THE OPINION INCORRECTLY DEFINES THE PARTIES:
       GFI IS NOT A PARTY TO THE APPEAL OR THE
       INJUNCTION ........................................................................... 4

   B.      THE OPINION'S STATEMENT IN FOOTNOTE 1 ON
       PAGE 2 IS FACTUALLY INCORRECT AND NOT
       SUPPORTED BY RECORD. ..................................................... 5

   C.      THE OPINION HAS STATEMENTS RELATING TO
       PARTIES WHO ARE NOT PART OF THE APPEAL AND
       OVERLOOKS MATERIAL POINTS OF FACT IN THE
       RECORD. .................................................................................. 7

III.    CONCLUSION ..................................................................... 12

SER_2058

# TABLE OF AUTHORITIES

## Statutes

15 U.S.C.
  Section 1114..............................................................................................................4

  Section 1125..............................................................................................................4

SER_2059

## I.    INTRODUCTION

Appellants iGov, Inc., PureThink, LLC and John Mark Suhy (collectively, "appellants") respectfully request panel rehearing to correct numerous misstatements of fact that collectively lead the Court to erroneous conclusions. Even if the Court should determine that rehearing is not appropriate, correction of these misstatements is important, as the Court's Opinion may control future proceedings in this preliminary injunction appeal.

## II.    ARGUMENT

The opinion has 4 numbered paragraphs.  We will first highlight issues in the opinion as a whole, then note more specifically the parts which have factual issues.

### A.    THE OPINION INCORRECTLY DEFINES THE PARTIES: GFI IS NOT A PARTY TO THE APPEAL OR THE INJUNCTION

The first paragraph of the court's opinion states: "Neo4j, Inc. (Neo4j USA) sued John Mark Suhy and three corporations, PureThink, LLC, iGov, Inc., and Graph Foundation, Inc. (collectively, Defendants), asserting claims under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and California law.  The district court

4

SER_2060

entered a preliminary injunction enjoining Defendants from infringing the registered NEO4J mark1 and from making misrepresentations to consumers about their products." Slip Op., pp. 1-2, footnote omitted.

This statement is inaccurate, as the Graph Foundation, Inc. ("GFI") was not a party to the appeal. While originally named as a defendant, it settled out before the district court granted summary judgment to the plaintiffs/appellees. The erroneous identification of GFI as a party to the appeal is significant, as several other statements made in the Opinion actually refer to actions by GFI.

**B.    THE OPINION'S STATEMENT IN FOOTNOTE 1 ON PAGE 2 IS FACTUALLY INCORRECT AND NOT SUPPORTED BY RECORD.**

Footnote 1 of the Opinion incorrectly defines the term "NEO4J": "We use the term NEO4J to refer to the word mark registered by Neo4j USA. We use the term "Neo4j®" to denote the Neo4j USA-licensed platforms, Neo4j® Community Edition and Neo4j® Enterprise Edition." (internal quotes omitted)

Neo4j USA does not license Neo4j® Community Edition or Neo4j® Enterprise Edition. While Neo4j USA has a registration for the word mark, the record shows that Neo4j USA does not license the software platforms known as Neo4j® Community Edition and Neo4j® Enterprise Edition.  Neo4j Sweden

5

licenses such platforms under open source licenses available to all.  Neo4j USA

offers a software platform under a commercial license known as Neo4j®

Enterprise.  *See* 6-ER-1368, ¶¶ 5-6.

These facts are critical to the ruling on this appeal.  Previous versions of

Neo4j Enterprise are open source and could be downloaded from websites

belonging to the appellees or compiled from appellees' public GitHub repository.

There were no physical differences between the commercial and open source

editions as they have the same exact underlying source code.  The only difference

between the commercial edition licensed only by Neo4j USA, and the open source

edition licensed by Neo4j Sweden was in the licensing.  The Neo4j Sweden

version had this clause: "If you have not executed a Commercial Agreement with

Neo Technology, the Software is subject to the terms of the GNU AFFERO

GENERAL PUBLIC LICENSE Version 3, as follows:" *See* 6-ER-1379. In other

words, Neo4j Sweden allowed users to obtain and use Neo4j Enterprise Edition

under an open-source license; Neo4j USA offered that exact same software

application using the same name "Neo4j Enterprise."

6

C.    THE OPINION HAS STATEMENTS RELATING TO PARTIES
WHO ARE NOT PART OF THE APPEAL AND OVERLOOKS
MATERIAL POINTS OF FACT IN THE RECORD.

The Opinion states, in numbered paragraph 2: "The court did not abuse its discretion by enjoining Defendants from infringing the NEO4J mark in the names of their own products. Defendants' use of the NEO4J mark was not nominative fair use, as it referred to their competing products, 'Neo4j Enterprise' and 'Government Package for Neo4j,' not Neo4j® Enterprise Edition." This statement is not supported by the record . First, appellants' Government Package for Neo4j is a consulting services package, focusing on services around Neo4j Sweden's open source Neo4j Enterprise Edition and Neo4j Community Edition software. The Package is not a software product or "Edition" of Neo4j® Enterprise, as the court states. *See* 2-ER-253, 254.

A consulting services package focusing on Sweden's Open Source Neo4j Enterprise and Community, is completely different from Neo4j USA's Neo4j Enterprise Edition, which is a commercial software product. That is the reason the offering is called Government Package for Neo4j  without using the word "edition" or putting the name Neo4j at the beginning. Thus, this use of the term "Neo4j" is nominative.  It is describing a Government Consulting Package focused on providing services for Neo4j Sweden's open source Neo4j Enterprise Edition and

7

Neo4j Community Edition.  The word "Neo4j" in the Government Package for Neo4j is referring to Neo4j Sweden's open source Neo4j offerings which include the open source Neo4j Community Edition and Neo4j Enterprise Edition.

The Government Package for Neo4j is a consulting services package offered to government agencies focusing on providing services around Neo4j Sweden's open source ecosystem which includes Neo4j Community Edition and Neo4j Enterprise Edition.  The appellants do not have any product called Neo4j, Neo4j Community Edition, or Neo4j Enterprise Edition.  *See* 2-ER-253; 2-ER-254; 2-ER-276.

Nor do appellants have a product called "Neo4j Enterprise," as the opinion states.  Appellants have only used the term "Neo4j Enterprise" in the following three contexts.  First, appellants use the term "Neo4j Enterprise" to specify Neo4j Sweden's open source Neo4j Enterprise Edition software.  It is usually in the context of open source advocacy efforts in educating the community about their options and the fact that Neo4j Enterprise Edition is available from Neo4j Sweden and is open source, while if a customer obtains it from Neo4j USA it is covered under a commercial license. *See* 2-ER-276; ER-6-1368 ¶¶ 5-6.

The second way appellants use the term "Neo4j Enterprise" is in comparative advertising aimed at Neo4j USA's commercial Neo4j Enterprise Edition.  See 2-ER-253

8

The third way appellants use the term "Neo4j Enterprise" is to discuss the modules defined in the source code or reference the binary distribution file names that are generated by compiling the *unmodified* open source Neo4j Sweden source code from the appellees' official public GitHub source repository. This source code and the two binary distribution files created by the compilation process use the literal names "neo4j community" and "neo4j enterprise." Since the code is unmodified, they are generated exactly as the code instructs. Furthermore, appellants always ensure that they communicate who compiled the source code when referencing the literal distribution names created by the compilation process to ensure no confusion as to what the files are and where they came from. *See* 2-ER-276 (showing the folder structure and files created by compilation of Neo4j Sweden's unmodified source code). Appellees have failed to show any usages outside of these contexts and neither is a reference to appellants' products as the court states.

Neo4j USA licenses Neo4j Enterprise commercial edition and Neo4j Sweden licenses the two open-source licensed software packages known as Neo4j Community Edition and Neo4j Enterprise Edition. Appellants only market services for Sweden's Neo4j Enterprise Edition and Neo4j Community Edition both of which are open-source software, not Neo4j USA's commercially licensed software. Their use of the Neo4j name is thus either in reference to the open-source versions

9

or to the literal distribution names generated by compiling the unmodified source code from appellee's public Github Repository. Both uses are nominative fair use.

In addition, any statements that ONgDB was a drop in replacement for only commercially licensed distributions of Neo4j Enterprise were made solely by GFI, not appellants. *See* 1-ER-9 (court refers to GFI's website, not the appellants' as stating that ONgDB is a drop in replacement for Neo4j Enterprise). Appellants have stated that ONgDB is a drop-in replacement for Neo4j Community Edition and *supersets* of Neo4j Community Edition. A superset contains all the features of the subset; in this instance the superset Neo4j Enterprise contains all the features of Neo4j Community but may have additional features. Neo4j Community Edition has no enterprise features and thus these statements do not imply that appellants were stating that ONgDB is a drop in replacement for Neo4j Enterprise commercially licensed distributions and has nothing to do with enterprise features as the trial court concluded. Rather, appellants were stating that software applications, where both software applications being compared have Neo4j Community Edition as a subset, can swap data back and forth and query the data using the same standard language called Cypher. This is because all the core functionality is found in Neo4j Community Edition. And supersets of Neo4j Community (e.g., Neo4j Enterprise and ONgDB) will also be able to use that data,

10

even though the superset has additional features that are not part of Neo4j Community or ONgDB.

Because there is no accepted definition for "drop-in replacement," the appellants used accepted mathematical terminology and a proof (subset, superset theory) to describe what they believe "drop-in" means. They did not use the term "compatibility" as the court incorrectly stated. Mr. Suhy's deposition highlights this use—in the deposition, he testified ONgDB is a drop in replacement because it is a "superset" of Neo4j Community Edition. *See* 9-ER-2104-05. Philip Rathle, Vice President of Products at Neo4j Inc., confirms this mathematical terminology, stating, "Neo4j® EE is a full superset of Neo4j® CE." 6-ER-1368 ¶¶ 27-28.

The opinion further states: "And, even if the 'drop-in replacement' representations were not literally false, substantial evidence showed that consumers were confused by Defendants' use of the term." However, appellees referenced *only* possible confusion caused by GFI, *not* appellants. *See* 11-ER 2455-58. There is no evidence that any confused consumers received information from the appellants, who specifically focus on Government consulting.

11

### III.   CONCLUSION

This Court should grant rehearing so that it will have the opportunity to issue an opinion that is not based upon the errors above.

Dated: March 4, 2022                    Respectfully submitted,


_____/s/_____
By:  Joseph A. Hearst

12

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**Form 11. Certificate of Compliance for Petitions for Rehearing/Responses**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 21-16029_____

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

[ x ] Prepared in a format, typeface, and type style that complies with Fed. R. App.

P.

32(a)(4)-(6) and **contains the following number of words: _____.**

*(Petitions and responses must not exceed 4,200 words)*

**OR**

[  ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature**   /s/ Joseph A. Hearst   **Date March 4, 2022**
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**                                                                 *Rev. 12/01/21*

**SER_2069**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** 21-16029

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

**Signature** /s/ Joseph A. Hearst   **Date** March 4, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**                                                    *Rev. 12/01/2018*

**SER_2070**

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 18 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NEO4J, INC.; NEO4J SWEDEN AB,<br><br>        Plaintiffs-counter-<br>        defendants-Appellees,<br><br>    v.<br><br>PURETHINK, LLC; IGOV, INC.; JOHN<br>MARK SUHY,<br><br>        Defendants-counter-<br>        claimants-Appellants. | No.    21-16029<br><br>D.C. No. 5:18-cv-07182-EJD<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Argued and Submitted February 7, 2022
San Francisco, California

Before: HURWITZ and VANDYKE, Circuit Judges, and ERICKSEN,[**] District
Judge.

Neo4j, Inc. ("Neo4j USA") sued John Mark Suhy and three corporations,

PureThink, LLC, iGov, Inc., and Graph Foundation, Inc. (collectively,

--------

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Joan N. Ericksen, United States District Judge for the
District of Minnesota, sitting by designation.

"Defendants"), asserting claims under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and California law. The district court entered a preliminary injunction enjoining Defendants from infringing the registered NEO4J mark[1] and from making misrepresentations to consumers about their products. Reviewing for abuse of discretion, *see Dev'l Servs. Network v. Douglas*, 666 F.3d 540, 544 (9th Cir. 2011), we affirm.

    1.   Because Neo4j USA registered the NEO4J mark, U.S. Trademark Registration No. 4,784,280, the district court correctly held it has standing to sue for infringement. *See* 15 U.S.C. § 1114(1) (infringers "shall be liable in a civil action by the registrant"); *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1214, 1226–28 (9th Cir. 2008).

    2.   The court did not abuse its discretion by enjoining Defendants from infringing the NEO4J mark in the names of their own products. Defendants' use of the NEO4J mark was not nominative fair use, as it referred to their competing products, "Neo4j Enterprise" and "Government Package for Neo4j," not Neo4j® Enterprise Edition. *See Toyota Motor Sales, USA, Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010) (holding that nominative use of a trademark requires that the mark "refer to the trademarked good" not the defendant's good); *New Kids on the*

---

[1]    We use the term "NEO4J" to refer to the word mark registered by Neo4j USA. We use the term "Neo4j®" to denote the Neo4j USA-licensed platforms, Neo4j® Community Edition and Neo4j® Enterprise Edition.

SER_2072

*Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).

3.     Nor did the court abuse its discretion by enjoining Defendants from "[a]dvertising, promoting, representing or referring to ONgDB as a free and open source drop-in replacement of Neo4j Enterprise Edition," and making other false representations about ONgDB to consumers.   Lanham Act falsity is established either if a "statement was literally false, either on its face or by necessary implication," or if a "statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).   Defendants' representation that ONgDB is a "free and open-source" version of Neo4j® EE was literally false, because Section 7 of the Sweden Software License only permits a downstream licensee to remove "further restrictions" added by an upstream licensee to the original work.   Defendants' advertisements of ONgDB as a "drop-in replacement" for Neo4j® EE were also false, even taking Defendants' own definition of the term—"compatibility."   And, even if the "drop-in replacement" representations were not literally false, substantial evidence showed that consumers were confused by Defendants' use of the term.

4.     The district court did not abuse its discretion by enjoining Defendants from suggesting Neo4j USA endorsement of their products.   Defendants argue that two of the eight factors identified in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)—the "type of goods and the degree of care likely to be

3

exercised by the purchaser" and "evidence of actual confusion"—weigh in their favor. But the "presence or absence of a particular factor does not necessarily drive the determination of a likelihood of confusion." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290–91 (9th Cir. 1992). A particularly strong showing of some factors will suffice to demonstrate confusion. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014). It was not an abuse of discretion for the district court to rely on the other six *Sleekcraft* factors in entering the preliminary injunction.

**AFFIRMED.**

4

## United States Court of Appeals for the Ninth Circuit

### Office of the Clerk
95 Seventh Street
San Francisco, CA 94103

## Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

(1)    A.    **Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
    ▶ A material point of fact or law was overlooked in the decision;
    ▶ A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
    ▶ An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

   B.    **Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

Post Judgment Form - Rev. 12/2021

1

> ► Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
> ► The proceeding involves a question of exceptional importance; or
> ► The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)   Deadlines for Filing:**
- A petition for rehearing may be filed within 14 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication.  9th Cir. R. 40-2.

**(3)   Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4)   Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- A response, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

Case: 21-16029, 02/18/2022, ID: 12374325, DktEntry: 45-2, Page 3 of 4

- The petition or response must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms.*
- You may file a petition electronically via the appellate ECF system.  No paper copies are required unless the Court orders otherwise.  If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper.  No additional paper copies are required unless the Court orders otherwise.

## Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)

- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms.*

## Attorneys Fees

- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

## Petition for a Writ of Certiorari

- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

## Counsel Listing in Published Opinions

- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send an email or letter **in writing within 10 days** to:
  - ► Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Maria Evangelista (maria.b.evangelista@tr.com));
  - ► and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

Post Judgment Form - Rev. 12/2021

3

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 10. Bill of Costs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form10instructions.pdf*

**9th Cir. Case Number(s)** [                    ]

**Case Name** [                    ]

The Clerk is requested to award costs to *(party name(s))*:

[                                                            ]

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature** [                    ]  **Date** [                    ]

*(use "s/[typed name]" to sign electronically-filed documents)*

| COST TAXABLE | REQUESTED *(each column must be completed)* | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | [  ] | [  ] | $ [  ] | $ [  ] |
| Principal Brief(s) *(Opening Brief; Answering Brief; 1st, 2nd, and/or 3rd Brief on Cross-Appeal; Intervenor Brief)* | [  ] | [  ] | $ [  ] | $ [  ] |
| Reply Brief / Cross-Appeal Reply Brief | [  ] | [  ] | $ [  ] | $ [  ] |
| Supplemental Brief(s) | [  ] | [  ] | $ [  ] | $ [  ] |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee / Appeal from Bankruptcy Appellate Panel Docket Fee | | | | $ [  ] |
| | | | **TOTAL:** | $ [  ] |

***Example:** Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:*
*No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10);*
*TOTAL: 4 x 500 x $.10 = $200.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 10**                                                    *Rev. 12/01/2021*

No. 21-16029

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**NEO4J, INC., et al.,**

*Plaintiff and Appellee,*

**v.**

**PURETHINK, LLC, et al.,**

*Defendant and Appellant.*

---

Appeal From a Judgment of the United States District Court
For the Northern District of California
Hon. Edward J. Davila
United States District Judge
N. D. Cal. No. 5:18-cv-07182 EJD

---

**APPELLANTS' REPLY BRIEF**

---

ADRON W. BEENE, CA Bar # 129040
ADRON G. BEENE, CA Bar # 298088
1754 Technology Drive, Ste. 228
San Jose, CA 95110
Tel.: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Joseph A. Hearst, CA Bar # 130286
1569 Solano Ave. #525
Berkeley, CA 94707
Telephone: (510) 528-6863
Facsimile: (510) 280-2556
jahearst@pacbell.net

Attorneys for defendants, cross-complainants and appellants John Mark
Suhy, PureThink, LLC and iGov, Inc.

SER_2079

## TABLE OF CONTENTS

I.      INTRODUCTION.............................................................................1

II.     ARGUMENT ...............................................................................2

    A.      NEO4J USA IS NOT THE OWNER OF THE NEO4J MARK AND
        THUS IS NOT ENTITLED TO SUE UNDER 15 U.S.C. § 1114.............2

    B.      USES OF THE NEO4J NAME BY IGOV WERE NOMINATIVE FAIR
        USE.........................................................................................6

    C.      THE TRIAL COURT'S FINDING THAT DEFENDANTS HAD
        ENGAGED IN FALSE ADVERTISING OVERLOOKED FACTUAL
        DISPUTES. ...........................................................................14

    D.      THE COURT ERRED IN FINDING A LIKELIHOOD OF CONSUMER
        CONFUSION. .........................................................................19

III.    CONCLUSION .........................................................................21

ii

SER_2080

## TABLE OF AUTHORITIES

### CASES

*Align Technology, Inc. v. Strauss Diamond Instruments, Inc.*,
   2019 U.S. Dist. LEXIS 63616 (N.D. Cal. April 12, 2019) ...................................7

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979 ........................................19

*Desly Int'l Corp. v. Otkrytoe Aktsionernoe Obshchestvo "Spartak"*,
   No. 13-CV-2303 (ENV) (LB), 2016 U.S. Dist. LEXIS 115782
   (E.D.N.Y. Aug. 15, 2016)..........................................................................................3

*Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013 (C.D. Cal. 2011).......3

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011) ..............................................................................20

*Noble House Home Furnishings, LLC v. Floorco Enterprises, LLC*,
   118 U.S.P.Q.2d 1413 (TTAB 2016)........................................................................5

*Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674 (5th Cir.1986)...17

*Quabaug Rubber Co. v. Fashion Shoe Co.*, 567 F2d 154 (1st Cir. 1977).....................4

*Smith v. Tobacco By Products & Chemical Corp.*, 243 F.2d 188 (Fed. Cir. 1957).......3

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) ..........10, 11

SER_2081

## STATUTES

15 U.S.C.

    Section 1125(a) ...........................................................................3

15 U.S.C.

    Section 1114 ................................................................ ii, 2, 3

California Civil Code

    Section 164 ...........................................................................15

## RULES

TMEP

    Section 1201.09 ..........................................................................4

iv

SER_2082

## I.   INTRODUCTION

The brief by appellees Neo4j Inc. ("Neo4j USA") and Neo4j Sweden repeatedly confuses the distinction between the two Neo4j entities and between the various iterations of the Neo4j graph database.  In fact, the very listing of Neo4j Sweden as an appellee on the cover page of appellees' brief is misleading, as Neo4j Sweden was not the plaintiff on any of the trademark causes of action at issue in this appeal and is thus not properly an appellee.  *See* 2-ER-71-76.  And, while Neo4j USA may or may not properly assert rights on behalf of itself, it has no standing to pursue claims on behalf of Neo4j Sweden.

Neo4j Sweden licenses an open-source version of the Neo4j graph database that businesses can use for free.  Neo4j USA licenses the same Neo4j graph database with added functions which business can use when they pay substantial license fees.  Neo4j USA is using Neo4j Sweden's trademark to stop defendants from telling people they do not need to pay for Neo4j USA's graph database because they can get it for free.  Businesses should be able to decide if they want to pay hundreds of thousands of dollars for added functionality they may not need or ever use when they can get a fully functioning graph data base, with the same database engine, for free.

Plaintiffs also confuse the actions of defendant John Mark Suhy, who is the principal of both Purethink, LLC and iGov, Inc. but is not affiliated with Graph

1

Foundation, Inc. ("GFI"). GFI provides the ONgDB program which is based on the Neo4j Sweden open-source version of the graph data base; Mr. Suhy is no more than a voluntary contributor to that "fork" of Neo4j. Claims made by GFI or against it are not relevant to the issues in this appeal. GFI settled out and all claims against it have been resolved.

Cutting through plaintiffs' claims about the strength of the evidence, the bottom line is that the trial court usurped the role of the jury in its determinations, in particular whether defendants' use of the word "Neo4j" is nominative fair use and whether defendants have engaged in false advertising. A jury could conclude that a reasonable consumer of the software programs offered by both plaintiffs and defendants would understand that what defendants were offering was a fork of Neo4j based upon the open-source versions of that program that are available on GitHub, and that defendants' descriptions of that fork and how it was put together are accurate and not misleading.

## II.   ARGUMENT

### A.   Neo4j USA Is Not The Owner Of The Neo4j Mark And Thus Is Not Entitled To Sue Under 15 U.S.C. § 1114

Neo4j USA begins its discussion of the question whether its trademark registration is valid by asserting that defendants have "waived" the argument because they noted that Neo4j USA lacked standing. But defendants' argument

2

was that, because Neo4j USA does not own the Neo4j trademark, Neo4j USA had no right bring a trademark infringement claim under 15 U.S.C. § 1114.[1]  It is elementary that a nonowner has no right to bring a trademark claim, and any registration is invalid.  *Smith v. Tobacco By Products & Chemical Corp.*, 243 F.2d 188, 191 (Fed. Cir. 1957); *Desly Int'l Corp. v. Otkrytoe Aktsionernoe Obshchestvo "Spartak"*, No. 13-CV-2303 (ENV) (LB), 2016 U.S. Dist. LEXIS 115782, at *14 (E.D.N.Y. Aug. 15, 2016) ("a trademark application that is not filed by the owner is void").  Thus, the legal question is whether Neo4j USA's registration of the Neo4j mark is valid—exactly the argument addressed in the opening brief.  AOB 19-22.

As noted in the opening brief, registration creates a rebuttable presumption that the registrant is the owner, but that presumption "evaporates as soon as evidence of invalidity is presented."  *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013, 1022 (C.D. Cal. 2011).  Here, the evidence shows that Neo4j Sweden was the owner of the mark at the time that Neo4j USA registered it (11-ER-2414), therefore the presumption collapses.

---

[1]     Plaintiffs assert that defendants "fail to challenge" the court's finding that Neo4j USA had standing pursuant to 15 U.S.C. § 1125(a).  Appellee's Br., 19.  We deal with defendants' asserted liability for that claim under the discussion whether defendants had engaged in false advertising.

3

As noted in the opening brief, there is no dispute that the subsidiary, Neo4j Sweden, is the owner of the Neo4j mark, which it licenses on a non-exclusive basis to its parent, Neo4j USA. 11-ER-2414. The Trademark Manual of Examining Procedures ("TMEP") states that "[w]here the mark is used by a related company, the owner is the party who controls the nature and quality of the goods sold or services rendered under the mark." TMEP § 1201.01. But the "party who controls the nature and quality of the goods sold" in this situation is Neo4j Sweden, not the party who was able to obtain the registration, Neo4j USA. As noted in the opening brief, "[w]here the license is non-exclusive, the licensee does not have standing to bring an infringement action." *Quabaug Rubber Co. v. Fashion Shoe Co.*, 567 F2d 154, 159-60 (1st Cir. 1977).

Neo4j USA points to the trial court's assertion that, even though plaintiffs considered Neo4j Sweden to be the owner of the mark in 2010, they considered Neo4j USA to be the owner in 2015 when Neo4j USA registered the mark. Appellees' Br., 24; *see* 1-SER-19. But Neo4j USA points to no assignment of rights in the mark from Neo4j Sweden to Neo4j USA in the intervening five years. The fact that Neo4j USA registered the mark does not necessarily mean it was an owner of the mark. There is no evidence that Neo4j Sweden ever transferred ownership of the mark to Neo4j USA, nor that the parties abrogated the agreement

4

by which Neo4j Sweden gave Neo4j USA a *non-exclusive* license.  *See* 11-ER-2414.

Appellees cite *Noble House Home Furnishings, LLC v. Floorco Enterprises, LLC*, 118 U.S.P.Q.2d 1413 (TTAB 2016) as somehow supporting their argument.  Appellees' Br., 26.  But in *Noble House*, a parent corporation controlled the nature and quality of the goods sold under the mark by the subsidiary.  The court concluded that the parent's use inured to the benefit of the subsidiary.  But here, it was *the subsidiary* that controlled the nature and quality of the goods, and it is *the parent* which is attempting to show that it owned the mark and controls the nature and quality of the goods sold under the mark.  While the use of a mark by a parent corporation may inure to the benefit of the subsidiary as registrant because the subsidiary is controlled by the parent, the obverse situation does not suffice, because the parent is attempting to register a mark which it does not control.[2]

Moreover, Neo4j USA's claim that, under the Trademark Manual of Examining Procedures ("TMEP"), the filing of an application will be considered an expression of the parties' intent as to ownership of the mark (Appellees' Br.,

---

[2]    Plaintiffs claim that defendants "ignored" the court's finding that defendants "confirmed" Neo4j USA's ownership of the mark when they signed a non-exclusive license. Appellee's Br., 24.  There is no evidence that iGov or Suhy signed any agreement and there is no such finding at the cited portion of the court's order.  *See* 1-SER-19.  In any event, the relationship between defendants and Neo4j USA has no relevance to whether Neo4j USA was the owner of the mark at the time of registration.

5

22) overlooks that ownership of Neo4j mark is controlled by the licensing agreement between Neo4j Sweden and Neo4j USA. 11-ER-2414. When there is a written license agreement showing Neo4j Sweden owns the mark, no intent by implication is required. Had the Neo4j parties wished to change ownership, they should have changed the contractual assignment of such ownership. The court had no power to change the license agreement in the name of assigning the "real" ownership of the mark. At the very least, the issue is one of disputed fact that should not have been resolved on summary judgment. Moreover, there is no undisputed evidence that Neo4j USA controlled the nature and quality of the goods sold under the mark, which is the way it would demonstrate a change of ownership.

### B. Uses Of The Neo4j Name By iGov Were Nominative Fair Use.

Neo4j USA commences its discussion of whether iGov's use of "Neo4j" was a nominative fair use by claiming that defendants challenge only the third of the three prongs for nominative fair use.[3] But in fact defendants pointed out that their

---

[3]     The three prongs are whether: "(1) the product was 'readily identifiable' without use of the mark; (2) defendant used more of the mark than necessary; or (3) defendant falsely suggested he was sponsored or endorsed by the trademark holder." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175-76 (9th Cir. 2010). It does not require extensive argument to prove that it would be difficult to identify the programs offered by the plaintiffs without using the word

*Footnote continues on next page*

6

use satisfied the first two prongs, while concentrating on the last prong because that is what the trial court did. *See* AOB 23.

The most important factor in the nominative fair use defense is whether the defendant's use of the mark implies sponsorship by or affiliation with the owner of the mark. *Align Technology, Inc. v. Strauss Diamond Instruments, Inc.*, 2019 U.S. Dist. LEXIS 63616 (N.D. Cal. April 12, 2019). As noted in the opening brief, the court decided that defendants' use of "Neo4j" was not nominative fair use principally because it concluded that defendants were using Neo4j "to create the misleading perception that Defendants' products *were* Plaintiffs' products." 1-ER-22, emphasis in original.

The essence of the court's analysis is its contention that "[w]hile Defendants claim that these products [Government Package for Neo4j and Neo4j Enterprise] consisted of genuine open-source Neo4j EE software, neither product was in fact a Neo4j USA product." 1-ER-21. Both halves of that sentence may be true, but the conclusion that defendants were attempting to cause or causing confusion is not. It is accurate to state that the Government Package for Neo4j and Neo4j Enterprise for which defendants offered service used "genuine open-source Neo4j EE software." That does not, however, imply that either product was a Neo4j USA

_____

Neo4j, and it would be impossible to use less of the mark than the entire word and still be understood.

7

product, because the versions of Neo4j defendants used were open-source versions licensed from Neo4j Sweden.

As noted in the opening brief, the court stated that "iGov's website assured potential customers that Neo4j Enterprise used 'the same official Neo4j Git[H]ub repositories as Neo4j Inc. uses for their paid commercial licensed builds' except distributed under an open-source license." 1-ER-21-22. But the website's statements are accurate and not misleading. iGov *did* use the "official Neo4j repositories" to compile the code for Neo4j Enterprise.[4] *See, e.g.* 2-ER-248, 250, 279, 281. But precisely because defendants distinguished between the "paid commercial licensed builds" and Neo4j EE (*e.g.*, 2-ER-281), potential customers were unlikely to be misled into believing that what iGov offered was a Neo4j "commercial licensed build." This is particularly true in light of the fact that potential customers would likely be sophisticated users who would know the difference between open-source and commercial software. A graph database is used by large businesses and governments to manage huge amounts of connected

---

[4]     Neo4j USA contends that this statement is inaccurate because "iGov set up their own distribution on *their* site for *their* products." Appellee's Br., 32, emphasis in original. Neo4j USA has confused the difference between the use of a repository and distribution. The source code repository for all Neo4j instances is GitHub. iGov's distribution was of the application compiled from that repository, and was made for the convenience of its clients so they did not have to compile the chosen open-source application on their own. iGov has a license to do that from Neo4j Sweden under the open-source license agreement.

8

data. The consumer's level of sophistication required to implement such a complex graph database solution—configuring the database, setting up the data structures, ingesting data, writing complex search queries—would lead a jury to understand that there is no confusion in what defendants were explaining on the website.

The plain fact remains that what defendants offered was services for software packages compiled from Neo4j's open-source versions, including Neo4j EE versions prior to version 3.5. In order to describe the software accurately and to inform consumers what it included, it was necessary to state that it was compiled from "the official Neo4j repositories." Neo4j USA claims that defendants used the Neo4j mark "to encourage customers to download 'Neo4j Enterprise' *instead of official Neo4j® EE*." Appellees' Br., p. 32, emphasis in original. While it is true that defendants competed with Neo4j USA's commercially licensed builds, it is not true that defendants "'appropriated the cachet' of the Neo4j mark to pass off iGov's 'Neo4j Enterprise' product." Appellees' Br., 32. Rather, defendants informed consumers that its products used open-source versions of the Neo4j software.

What plaintiffs are complaining about is that defendants competed with them using free open-source versions of their software and went to great lengths to describe for potential customers what they could expect to get from the offerings of

9

SER_2091

(261 of 274), Page 261 of 274 Case: 24-5538, 02/24/2025, DktEntry: 52.9, Page 261 of 274

Case: 21-16029, 12/03/2021, ID: 12304925, DktEntry: 39, Page 14 of 27


*both* plaintiffs and defendants. *See, e.g.* 2-ER-268-74. It is difficult to credit the court's conclusion that iGov's website attempted to cause confusion with the commercially licensed versions of Neo4j when that website was set up to compare the versions offered by defendants and those offered by plaintiffs feature-by-feature. *E.g.*, 2-ER-271. Consumers sophisticated enough to use a graph database, would understand that the defendants' versions are based on Neo4j Sweden's open-source version while Neo4j USA's version is based on the same database engine (licensed from Neo4j Sweden).

The fundamental problem for Neo4j USA is that there are numerous open-source versions of Neo4j Sweden's free software available. By asserting that defendants cannot use the Neo4j mark as part of the description for their products and services, Neo4j USA is attempting to have the courts squelch uses of those open-source versions instead of removing them from the marketplace.

As noted in the opening brief, the "usual" case for use of the nominative fair use doctrine is not well suited to the analysis of the use of a mark on open-source software. The most relevant case is likely *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010). In that case, Judge Kozinski considered whether domain names that incorporated the "Lexus" mark constituted nominative fair use. He concluded that, notwithstanding the use of the mark in the domain name, consumers would be unlikely to be confused once they arrived at the

10

website under that domain name because "the site as a whole does not suggest sponsorship or endorsement by the trademark holder." *Id.* at 1179. Here, similarly, the iGov website as a whole dispels any momentary confusion that might have occurred, because it clearly informs users that what iGov offers is "Neo4j Enterprise open-source licenses." 2-ER-235, 2-ER-261; 2-SER-235. Users familiar with open-source software would know immediately upon reaching the iGov website that it did not offer Neo4j commercial builds because the website repeatedly states that it uses open-source software which iGov compiles. 2-ER-235, 2-ER-261; 2-SER-235. At the very least, the question whether the website was likely to mislead is a question for a jury.

Neo4j USA asserts that *Toyota* is inapposite because the disclaimers that appeared on the iGov and PureThink websites were not conspicuous enough. Appellees' Br., 43. Since there is no requirement for a disclaimer, there is no requirement that the disclaimer be a certain size and location. *Toyota*, 610 F.3d at 1177 ("[s]peakers are under no obligation to provide a disclaimer as a condition for engaging in truthful, non-misleading speech"). Yet iGov and Purethink *had* disclaimers and it is unlikely anyone would be confused on sponsorship. Whether the entire look and feel of the websites would suggest endorsement by Neo4j USA is at the very least a factual question that should have been left to a jury.

SER_2093

Plaintiffs also argue that the prior use of "Neo4j" in an email address, a URL
and a download link (discontinued in 2018 and 2020), was not protected by the
nominative fair use doctrine.  Appellees' Br., 35.  First, discontinued uses will not
support a preliminary injunction, which is necessarily forward-looking.  Second,
and more important, the issue is still whether the website as a whole implies
sponsorship by the Neo4j entities and, as discussed above, it does not.  Any user
who was "clicking around" in the iGov website (which stated, *inter alia*, that
"iGov Inc. is not a partner or reseller of Neo4j Inc. and is not under any open-
source prohibitions that resellers and partners may be under"—2-ER-235) would
surely know that the site was neither sponsored by nor a purveyor of Neo4j
commercially-licensed versions, but was rather a service option for customers
interested in using Neo4j Sweden's open-source versions.  In that context, a URL
or email address is unlikely to be taken as a reference to the commercially licensed
versions of the program.  Likewise, the use of a "Download Neo4j Enterprise"
hyperlink that redirected customers to download links for ONgDB (*see* Appellees'
Br., 35-36) would not have confused customers into believing that they were being
led to download a commercially licensed version of Neo4j from Neo4j USA.

Neo4j USA also claims that defendants did not challenge the court's finding
that the use of the Neo4j mark was greater than necessary.  Appellees' Br., pp. 35-
36.  Not so.  *See* AOB 22, *see also* AOB 22-26.  It is a fundamental premise of the

12

argument made in the opening brief that defendants' use of the term "Neo4j" was necessary to describe what defendants were offering. The court's conclusion that defendants used the term more than necessary is based upon its erroneous conclusion that the uses of the mark on the website were not nominative fair use and has been addressed in the argument on that issue.

Similarly, the claim that the "use of the Neo4j mark in connection with ONgDB 'suggested ONgDB was sponsored by or affiliated with Neo4j USA'" (Appellees' Br., 43) ignores that the entire website would have alerted users that ONgDB is simply a "fork" of Neo4j based upon open-source versions that John Mark Suhy recommended to some users who did not want the commercially-licensed versions of the software.

The claim that Mr. Suhy "cobbled together" code from various Neo4j products to create ONgDB (Appellees' Br., 44) is not, in any event, accurate. ONgDB is a product of Graph Foundation, Inc. and Mr. Suhy is not its author. He has simply acted as a contributor to this fork and has explained how the fork came to be. Indeed, some of the string-cites Neo4j USA has listed for the "use of the NEO4J mark in connection with ONgDB" point out that the Graph Foundation issued ONgDB. *E.g.*, 2-SER-333.

Neo4j USA also contends that "iGov misrepresented that ONgDB was the same as Neo4jEE 'branded distributions' and interchangeability [*sic*] referred to

13

SER_2095

'ONgDB Enterprise' and 'Neo4j Enterprise' on its website." Appellees' Br., 45.

The pages on the website which Neo4j USA cites for this claim include statements

that ONgDB and Neo4j Enterprise were "free and open-source" versions of the

Neo4j graph databases. *See* 3-SER 269. The website is replete with statements

that ONgDB and Neo4j Enterprise are free and open-source, in contrast with the

Neo4j commercially licensed versions. In fact, the pages to which Neo4j refers are

intended to let customers "know your options" and discusses the "3 main Neo4j

offerings available including the free open-source option." *See e.g.*, 3 SER 270-72,

274.

The claim that the content on web pages intended to show why customers

should choose ONgDB or Neo4j Enterprise *instead of* the commercial builds of

Neo4j "impermissibly suggested affiliation with and endorsement by Appellees"

(Appellees' Br., 46) is thus far-fetched. The issue of whether the website

suggested endorsement is one that a jury should make.

### C. The Trial Court's Finding That Defendants Had Engaged In False Advertising Overlooked Factual Disputes.

In the opening brief, defendants argued that the court wrongly determined

that defendants had engaged in false advertising when they asserted that ONgDB

was a "free and open-source" version of Neo4j. Defendants also attacked the

court's contention that defendants' description of OngDB as a "drop in"

14

replacement for Neo4j commercial versions was false advertising. Plaintiffs' responses to these arguments do not withstand analysis.

### 1. Defendants Were Permitted—Indeed, Obligated—To Remove The "Commons Clause."

Neo4j USA argues that ONgDB is not a "free and open-source" version of Neo4j EE because GFI was not permitted to remove the "Commons Clause" Neo4j Sweden added to the Affero General Public License ("AGPL") that governed versions of Neo4j EE prior to version 3.5. Appellees' Br., 48-52. Neo4j USA asserts that the AGPL license "must be interpreted as a whole … 'so as to give effect to every part … each clause helping to interpret the other.'" Appellees' Br., 49, *quoting* Cal. Civ. Code § 164. Then Neo4j USA simply parrots the trial court's statement that Neo4j Sweden was permitted to impose the Commons Clause because it was a "licensor," while the prohibition against removal or addition of any terms refers only to a "licensee."

Neo4j USA itself fails to discuss the entire contract, including in particular the clause at the beginning stating that the Free Software Foundation is the holder of the copyright, and that "[e]veryone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed." 6-ER-1408. Neo4j USA is thus a licensee, because it is not a copyright holder. Indeed, Neo4j USA implicitly concedes this when it claims that "Section 7 [of the AGPL] only permits a ***downstream licensee*** to remove 'further restrictions' placed by an

15

*upstream licensee.*" Appellees' Br., 51. Neo4j USA is an upstream licensee, not an original licensor.

Moreover, Neo4j USA largely ignores that only Neo4j Sweden is the upstream licensee and has standing to complain about the removal of the Commons Clause, referring to the argument only in a footnote. Appellees' Br., 50, fn. 19. The issue is not simply that the interpretation of the terms of the Neo4j Sweden Software License [*i.e.*, the AGPL] is necessary to determine if defendants' advertisements were faulty, as Neo4j USA contends, but rather whether Neo4j USA is entitled to enforce rights that belong to Neo4j Sweden. In the same vein, the claim that defendants "lack standing to enforce FSF's copyright" (Appellees' Br., 53) is unavailing. Defendants are not attempting to enforce FSF's copyright— they are instead contending that the AGPL gave them permission to remove restrictive license terms not included in the AGPL.

Plaintiffs contend that reading the license in the manner defendants have suggested would "nullify Neo4j Sweden's exclusive right, as copyright holder, to license Neo4j® under the terms of its choosing." Appellees' Br., p. 52. But nothing prevented Neo4j Sweden from licensing using any terms it wished. What it could *not* do, however, was license its software pursuant to the AGPL under terms not permitted by the AGPL. If Neo4j Sweden did not like the AGPL's terms, it was under no obligation to use that license. Mixed in the morass of

16

licensing is a more fundamental issue. Free and open-source software may come with many different open-source license agreement types. There is GPL, AGPL, Apache, MIT, BSD, *etc*. *See* https://opensource.org/licenses/alphabetical. Some licenses are more restrictive and some more permissive. But the type of license does not change the fact the license is "free" and includes "open-source software."

### 2. It Was, At Worst, A Jury Question Whether Describing ONgDB As A "Drop In Replacement" Was Accurate.

Plaintiffs argue that descriptions of ONgDB as a "drop in replacement" were false or misleading because ONgDB is not a feature-for-feature copy of Neo4j EE 3.5 and later. Plaintiffs argue that there is "no evidence showing that a jury could find consumers did not understand their statements as at least assuring compatibility with Neo4j EE." Appellees' Br., 55. But of course it was plaintiffs' burden to show that no reasonable juror could believe that the statement had the meaning defendants ascribe to it. And plaintiffs do not even acknowledge that the claim that ONgDB does not replicate the features of Neo4j EE 3.5 and later is based solely on the say-so of Neo4j USA's Mr. Rathle, who did no empirical testing to confirm his opinion. *See* 6-ER-1375-76. Yet Neo4j was required to prove falsity with empirical evidence. *Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 679 (5th Cir.1986). There is no evidence in the record to show that data and queries on both versions do not work. Even though

17

Neo4j USA had access to both their commercial versions and ONgDB, they did not test whether ONgDB is a drop in replacement.

Moreover, there *was* evidence from which a jury could conclude that descriptions of ONgDB as a drop in replacement meant that users could drop in files from the same version number of the commercially licensed Neo4j and operate the same data and run queries. Mr. Suhy—a long time member of the graph database open-source community—was certainly as well qualified as Mr. Rathle to describe what "drop in replacement" means, as could Brad Nussbaum, principal of GFI.[5] *See, e.g.*, 2-RT 339-42; 3-ER-457-68, 470.

And a jury should have been permitted to consider whether the statement that ONgDB is a drop in replacement for *both* Community and Enterprise editions of Neo4j implied that the program was a feature-for-feature replacement for those programs, given that Community lacked many of the features of Enterprise editions. 5-ER-1012. In light of this fact, the statement could *not* have had the meaning the trial court ascribed to it—*i.e.*, that ONgDB was a feature-for-feature replacement for Neo4j Enterprise Edition.

---

[5] Ironically, plaintiffs argue that the statement that ONgDB was a drop in replacement for later versions of Neo4j EE is misleading because, they say, GFI was not willing to do the testing to determine compatibility. Appellees' Br., 55-56. Yet, plaintiffs rely upon the statements of Mr. Rathle about compatibility which were also *not* based on testing.

Plaintiffs also argue that the "drop in replacement" statements were false advertising "because ONgDB contained source code files that purported to be offered" with the AGPL license from which the Commons Clause had been stripped. Appellees' Br., p. 58. This argument is a restatement of the claim that defendants could not strip out terms that were incompatible with the AGPL license and has been dealt with in the section above dealing with that issue. The license terms do not impact how a graph database operates.

### D. The Court Erred In Finding A Likelihood Of Consumer Confusion.

Plaintiffs defend the court's conclusion that defendants had engaged in false designation of origin by claiming that, because defendants' opening brief challenged only two of the *Sleekcraft* (*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)) factors, they "foreclose[d]" their claim that the court erred. Appellees' Br., 59. But the opening brief explained why those factors were most relevant in this situation (AOB 44)—if the court was wrong about their application, then at a minimum a remand is necessary.

Plaintiffs allege that defendants ignored the "actual evidence supporting the finding of actual confusion." Appellees' Br., p. 61. But the opening brief considered that evidence and argued that, because the evidence did not demonstrate that consumers were actually confused about the source of the various

19

versions of Neo4j (as opposed to asking questions about open-source versions of Neo4j), the court's reliance on this factor was misplaced. *See* AOB 44-45.

Plaintiffs also argue that the fact that Neo4j commercial editions are extremely expensive (*see*, *e.g.*, 2-ER-270), meaning that consumers are likely to use care in choosing it, is irrelevant because defendants are supposedly "targeting the same customers as Neo4j USA" and because "price *was* material to [consumers'] purchasing decisions." Appellees' Br., p. 61, emphasis in original. But this argument makes defendants' point. Defendants informed consumers at great length about what they could and could not do with both the commercial and the open-source versions of Neo4j. *E.g.*, 2-ER-268-273. Defendants were encouraging consumers to engage in comparison shopping, which is not a trademark violation. As noted in the opening brief, the Ninth Circuit has "recognized that liability for infringement may not be imposed for using a registered trademark in connection with truthful comparative advertising." *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1152 (9th Cir. 2011).

Plaintiffs apparently believe that there cannot be "legitimate comparative advertising against a backdrop of providing a '100% free' alternative to Neo4j® EE." Appellees' Br., 62. But that is precisely what comparative advertising is intended to do. Plaintiffs' assertion that defendants "stripped out" license terms

and offered a product with "lesser features" (Appellees' Br., 62) has been dealt with above, but the court should note that defendants carefully explained to prospective users what features they would and would not get if they opted to purchase services from iGov.  *E.g.*, 2-ER-268-273.

### III.    CONCLUSION

For the foregoing reasons and for the reasons stated in the opening brief this Court should reverse the preliminary injunction and vacate the summary judgment on which it is based, with a remand to the district court to set the issues for trial.

Respectfully submitted,

Dated:  December 3, 2021        _____/s/_____

Joseph A. Hearst

Counsel for Appellants John Mark Mr. Suhy, PureThink, LLC and iGov, Inc.

21

SER_2103

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 21-16029

I am the attorney or self-represented party.

**This brief contains** | 4920 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one):*

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated         .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Joseph A. Hearst     **Date** | Dec. 3, 2021

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                              *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 21-16029

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

**Signature** | /s/ Joseph A. Hearst     **Date** | Dec. 3, 2021

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**                                          *Rev. 12/01/2018*