**No. 24-5538**
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____

NEO4J, INC., NEO4J SWEDEN AB,

*Plaintiffs-Appellees*,

v.

JOHN MARK SUHY,

*Defendant-Appellant.*

On Appeal from the United States District Court
For the Northern District of California
No. 5:18-cv-07182-EJD
Hon. Edward J. Davila
_____

**APPELLEES' EXCERPTS OF RECORD
Volume 9 of 18**
_____

John V. Picone III (State Bar No. 187226)
jpicone@spencerfane.com
Jeffrey M. Ratinoff (State Bar No. 197241)
jratinoff@spencerfane.com
Jeremy A. Moseley (MT Bar No. 44830177)
jmoseley@spencerfane.com

*Attorneys for Appellees*
Neo4j, Inc. and Neo4j Sweden AB

No. 21-16029

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

NEO4J, INC., NEO4J SWEDEN AB,

*Plaintiffs-Appellees*,

v.

PURETHINK, LLC, IGOV, INC., JOHN MARK SUHY,

*Defendants-Appellants*.

On Appeal from the United States District Court
For the Northern District of California
No. 5:18-cv-07182-EJD
Hon. Edward J. Davila

**APPELLEES' ANSWERING BRIEF**

Allonn E. Levy (State Bar No. 187251)
appeals@hopkinscarley.com
John V. Picone III (State Bar No. 187226)
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff (State Bar No. 197241)
jratinoff@hopkinscarley.com
HOPKINS & CARLEY, ALC
70 S First Street
San Jose, CA  95113-2406
Telephone:    (408) 286-9800

*Attorneys for Appellees*
Neo4j, Inc. and Neo4j Sweden AB

### DISCLOSURE STATEMENT

Pursuant to FRAP 26.1, the undersigned, counsel of record for Neo4j, Inc. ("Neo4j") certifies that Neo4j, Inc., as of this date, does not have a parent corporation and that no publicly held corporation holds 10% or more of its stock

The undersigned, counsel of record for Neo4j Sweden AB ("Neo4j Sweden") certifies that Neo4j, Inc., as of this date, is the parent corporation of Neo4j Sweden and that no publicly held corporation holds 10% or more of Neo4j Sweden's stock.

Date: October 28, 2021

HOPKINS & CARLEY
A Law Corporation

*/s/ Allonn E. Levy*

Allonn E. Levy, Esq.

*Attorneys for Appellee*
Neo4j, Inc. and Neo4j Sweden AB

-i-

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not believe oral argument would aid in the Court's decisional process and therefore does not request oral argument.  However, if the Court finds oral argument would be beneficial, Appellees would be honored to attend and present argument.

Date:  October 28, 2021

HOPKINS & CARLEY
A Law Corporation

*/s/ Allonn E. Levy*

Allonn E. Levy, Esq.

*Attorneys for Appellee*
Neo4j, Inc. and Neo4j Sweden AB

SER_2109

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ................................................................. i

STATEMENT REGARDING ORAL ARGUMENT ........................... ii

TABLE OF CONTENTS.................................................................... iii

TABLE OF AUTHORITIES .............................................................. vi

I.     INTRODUCTION ................................................................ 1

II.    JURISDICTIONAL STATEMENT ................................... 1

III.   STATUTORY AUTHORITIES ......................................... 1

IV.    STATEMENT OF THE CASE ........................................... 2

    A.     Procedural Facts ....................................................... 2

    B.     Substantive Undisputed Facts .................................. 2

        1.     Identification of Relevant Entities and Individuals .................. 2

        2.     Evolution of Neo4j-Branded Software and Appellants' Pirated Versions Thereof ............................................ 4

        3.     Appellees Registered the NEO4J Mark ...................................... 8

        4.     It is Undisputed that Appellants Use Appellees' Source-Identifying NEO4J Mark to Market their Inferior Software ....................................... 8

        5.     Appellants Falsely Advertise That ONgDB Replaces Neo4j® EE And Is Free and Open Source .............................. 12

        6.     Appellants Appeal the Interim Order Based Upon The Ordered Injunctive Relief ...................................... 13

V.     SUMMARY OF THE ARGUMENT .......................................... 14

VI.    STANDARD OF REVIEW ................................................... 16

VII.   ARGUMENT ...................................................................... 17

    A.     Appellants Demonstrate No Error in the Trial Court's Finding That Neo4j USA had Standing to Assert its Lanham Act Claims ..... 17

        1.     Standing Exists Under §1114(1) of the Lanham Act Based Upon the Unchallenged Finding That Neo4j USA is the Owner of the Registration for the NEO4J Mark ........... 18

**SER_2110**

# TABLE OF CONTENTS
## (continued)

Page

2.    Standing Exists Under §1125(a) of the Lanham Act Based Upon the Unchallenged Finding That Neo4J is a "Nonowner With a Cognizable Interest" in the Mark .............19

3.    The Related Companies Doctrine is Irrelevant to Appellant's Standing Challenge ..............................20

    a.    Had Appellants Properly Raised the Issue of Ownership, They Nevertheless Fail to Assign Error to the Legal Framework Used by the Trial Court ....................................................................21

    b.    Appellants' Sole Evidentiary Challenge – The Neo4J License – Fails to Overcome the Presumption of Validity.................................................23

B.    Appellants Demonstrate No Error In the Trial Court's Conclusion That Appellants Failed to Defeat Neo4j USA's Infringement Claim Through Nominative Fair Use...........................27

1.    The Unchallenged Threshold Finding that Appellants Did Not Use the NEO4J Mark to Identify Appellees' Products is Dispositive...........................................................29

    a.    Appellants' Promotion of iGov "Neo4j Enterprise" and iGov "Government Package for Neo4j" Described Appellants' Products .....................................30

    b.    Appellants Other Uses of the NEO4J Mark on iGov's Website Similarly Did Not Describe Appellee's Products.......................................................34

2.    Appellants Fail to Establish Any Error in the Trial Court's Analysis under the Three-Prong New Kids Test ........36

    a.    Appellants Fail to Challenge the Trial Court's Finding that Appellants Used the NEO4J Mark More Than Was Reasonably Necessary.......................36

**TABLE OF CONTENTS**
**(continued)**

Page

b.　The Trial Court's Finding that Appellants Used the NEO4J Mark to Suggest Endorsement of "Neo4j Enterprise" is Supported by Undisputed Record Evidence ................................................................37

(1)　Endorsement of iGov's "Neo4j Enterprise"........39

(2)　Endorsement of ONgDB ....................................43

C.　The Trial Court's Finding of False Advertising in Appellants' Promotion of ONgDB Was Supported by Undisputed Record Evidence ................................................................47

1.　Appellants' Assertions that ONgDB was "Free and Open-Source" Neo4j EE Were False.......................48

2.　Appellants' Assertions that ONgDB was a "Drop-In" Replacement for Neo4j EE Were False or Misleading............54

D.　Appellants Demonstrate No Error in the Trial Court's Finding of Consumer Confusion in Granting Summary Judgment on False Designation of Origin ...............................................59

VIII.　CONCLUSION............................................................63

CERTIFICATE OF COMPLIANCE FOR BRIEFS

CERTIFICATE OF SERVICE

ADDENDUM

SER_2112

# TABLE OF AUTHORITIES

Page

CASES

*A-1 Ambulance Serv., Inc. v. Cty. of Monterey*,
   90 F.3d 333 (9th Cir. 1996) ...............................................................40

*Adidas America, Inc. v. Athletic Propulsion Labs, LLC*,
   120 U.S.P.Q.2d 1303, 2016 WL 3896826 (D. Or. 2016) ...................20

*Adobe Sys. Inc. v. A & S Elecs., Inc.*,
   153 F.Supp.3d 1136 (N.D. Cal. 2015) ....................................32, 33, 36

*Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*,
   No. 18-CV-06663-TSH, 2019 WL 1586776 (N.D. Cal. Apr. 12, 2019)...........29

*Allard Enterprises, Inc. v. Advanced Programming Res., Inc.*,
   146 F.3d 350 (6th Cir. 1998) .............................................................26

*Altera Corp. v. Clear Logic, Inc.*,
   424 F.3d 1079 (9th Cir. 2005) ...........................................................52

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) ............................................59, 60, 61, 62

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...........................................................................16

*Animal Legal Def. Fund v. U.S. Food & Drug Admin.*,
   836 F.3d 987 (9th Cir. 2016) (en banc) .............................................16

*Apple Inc. v. Psystar Corp.*,
   658 F.3d 1150 (9th Cir. 2011) ...........................................................52

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ...........................................................35

*Brother Recs., Inc. v. Jardine*,
   318 F.3d 900 (9th Cir. 2003) .............................................................38

*Campidoglio LLC v. Wells Fargo & Co.*,
   870 F.3d 963 (9th Cir. 2017) ......................................................17, 59

SER_2113

## TABLE OF AUTHORITIES
### (continued)

Page

*Cleary v. News Corp.*,
   30 F.3d 1255 (9th Cir. 1994) ................................................................47

*Developmental Servs. Network v. Douglas*,
   666 F.3d 540 (9th Cir. 2011) ...............................................................16

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
   967 F.2d 1280 (9th Cir. 1992) .............................................................59

*In re E.R. Fegert, Inc.*,
   887 F.2d 955 (9th Cir.1989) ..........................................................39, 61

*EFCO Corp. v. Symons Corp.*,
   219 F.3d 734 (8th Cir. 2000) ...............................................................56

*Experience Hendrix v. Hendrixlicensing.com*,
   97 U.S.P.Q.2d 1364, No. C09-285Z, 2010 WL 2104239
   (W.D. Wash. May 19, 2010)............................................................35, 36

*F.T.C. v. Stefanchik*,
   559 F.3d 924 (9th Cir. 2009) ...............................................................16

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
   547 F.3d 1213 (9th Cir. 2008) ........................................17, 18, 19, 20

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
   810 F.Supp.2d 1013 (C.D. Cal. 2011) .................................................59

*Horphag Rsch. Ltd. v. Garcia*,
   475 F.3d 1029 (9th Cir. 2007) ..............................................29, 32, 36

*Horphag Rsch. Ltd. v. Pellegrini*,
   337 F.3d 1036 (9th Cir. 2003) .............................................................37

*Jacobsen v. Katzer*,
   535 F.3d 1373 (Fed. Cir. 2008) ...........................................................52

*K Mart Corp. v. Cartier, Inc.*,
   486 U.S. 281 (1988)..............................................................................27

SER_2114

## TABLE OF AUTHORITIES
### (continued)

Page

*Mattel, Inc. v. Walking Mountain Prods.*,
    353 F.3d 792 (9th Cir. 2003) ..............................................................38

*Micro Star v. Formgen Inc.*,
    154 F.3d 1107 (9th Cir. 1998) ...........................................................52

*Minden Pictures, Inc. v. John Wiley & Sons, Inc*.,
    795 F.3d 997 (9th Cir. 2015) ..............................................................53

*Nat'l Licensing Ass'n, LLC. v. Inland Joseph Fruit Co.*,
    361 F.Supp.2d 1244 (E.D. Wash. 2004)............................................19

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
    926 F.3d 528 (9th Cir. 2019) ..............................................................20

*Neo4j, Inc. v. Graph Found., Inc.*,
    No. 5:19-CV-06226-EJD, 2020 WL 6700480 (N.D. Cal. Nov. 13, 2020) ........52

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011) ...........................................................21

*New Kids on the Block v. News Am. Publ'g, Inc.*,
    971 F.2d 302 (9th Cir. 1992) ....................................................*passim*

*Noble House Home Furnishings, LLC v. Floorco Enterprises, LLC*,
    118 U.S.P.Q.2d 1413 (TTAB 2016) ............................................26, 27

*Novartis Animal Health US, Inc. v. LM Connelly & Sons, Pty Ltd.*,
    No. 04 Civ. 10213(BSJ), 2005 WL 1902085 (S.D.N.Y. June 14, 2005) ..........20

*Owens v. White*,
    380 F.2d 310 (9th Cir. 1967) ..............................................................17

*Playboy Enterprises, Inc. v. Netscape Commc'ns Corp*.,
    354 F.3d 1020 (9th Cir. 2004) ...........................................................28

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014) .....................................................21, 59

SER_2115

## TABLE OF AUTHORITIES
### (continued)

Page

*Quabaug Rubber Co. v. Fabiano Shoe Co.*,
    567 F.2d 154 (1st Cir. 1977).....................................19

*Rockhill Ins. Companies v. CSAA Ins. Exch.*,
    829 F.App'x 808 (9th Cir. 2020) ....................................16

*Secular Organizations for Sobriety, Inc. v. Ullrich*,
    213 F.3d 1125 (9th Cir. 2000) ....................................22

*Smith v. Marsh*,
    194 F.3d 1045 (9th Cir. 1999) ...............................20, 21

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) .............................47, 48, 54

*Southwest Voter Registration Educ. Pro. v. Shelley*,
    344 F.3d 914 (9th Cir. 2003) (en banc) ...........................16

*Storm Impact, Inc. v. Software of the Month Club*,
    44 U.S.P.Q.2d 1441, 1997 WL 566378 (N.D. Ill. 1997)...................52

*Sun Microsystems, Inc. v. Microsoft Corp.*,
    999 F. Supp. 1301 (N.D. Cal. Mar. 24, 1998) ......................58

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
    610 F.3d 1171 (9th Cir. 2010) ................................*passim*

*United States v. Kama*,
    394 F.3d 1236 (9th Cir. 2005) ....................................36

*Upper Deck Co. v. Panini Am., Inc.*,
    No. 20CV185-GPC(KSC), 2021 WL 1388630 (S.D. Cal. Apr. 13, 2021) ........19

*W. Fla. Seafood, Inc. v. Jet Restaurants, Inc.*,
    31 F.3d 1122 (Fed. Cir. 1994) ....................................22

*W. Watersheds Project v. Abbey*,
    719 F.3d 1035 (9th Cir. 2013) ....................................17

SER_2116

## TABLE OF AUTHORITIES
### (continued)

Page

*Wapato Heritage, L.L.C. v. United States*,
   637 F.3d 1033 (9th Cir. 2011) .......................................................49, 50

*In re Wella A.G.*,
   787 F.2d 1549 (Fed. Cir. 1986) ....................................................22, 26

*In re Wella A.G.*,
   858 F.2d 725 (Fed. Cir. 1988) ...............................................22, 25, 26

*Zobmondo Ent., LLC v. Falls Media, LLC*,
   602 F.3d 1108 (9th Cir. 2010) ...........................................................23

**STATUTES**

15 U.S.C.
   § 1055........................................................................................20, 23
   § 1114(1)..........................................................................14, 18, 19, 21
   § 1125(a)............................................................................*passim*
   § 1127........................................................................................20, 23

28 U.S.C.
   § 1292(a)(1) ...................................................................................1
   § 2107(a) .........................................................................................1

Cal. Civ. Code
   § 164.................................................................................................49

**RULES**

Fed. R. Civ. Proc.
   61.................................................................................................17

**OTHER AUTHORITIES**

*6 McCarthy on Trademarks and Unfair Competition* § 32:3 (5th ed.)....................19

SER_2117

## TABLE OF AUTHORITIES
### (continued)

Page

TMEP

§ 1201.01................................................................................23, 24, 25
§ 1201.03(b)............................................................................22, 23, 24
§ 1201.03(c)...................................................................................23
§ 1201.07(b)(i)...............................................................................25
§ 1201.07(b)(ii)..............................................................................26

-xi-

# I.

## INTRODUCTION

While the factual development of this case is admittedly complex, the trademark and competition issues are not. At bottom, this is a case of a former support partner who went rogue. He developed new entities to skirt licensing terms, tried cobbling together parts of open-sourced software to develop a similar free version of commercially popular software, ignored and removed licenses that got in his way, and then used the Mark of the known software originator to confuse customers into buying his support services for the newly created free, but pirated, products. Thus, the scheme is a complex one, but the violations of law are not.

# II.

## JURISDICTIONAL STATEMENT

This is an appeal of an interlocutory order for a preliminary injunction against Appellants. This Court's jurisdiction is based on the appeal of the grant of a preliminary injunction under 28 U.S.C. § 1292(a)(1). The appeal is timely under 28 U.S.C. § 2107(a).

# III.

## STATUTORY AUTHORITIES

All relevant statutory authorities appear in the Addendum to this brief.

## IV.

## STATEMENT OF THE CASE

### A.    Procedural Facts

On September 28, 2020, Appellees (plaintiffs below) filed the operative third amended complaint alleging eight causes of action, including those at issue in this appeal.  2-ER-40.  Appellants filed their answer on October 19, 2020.  3-SER-557.  On December 11, 2020, Appellees filed a motion for partial summary judgment of Phase 1 Issues. 1-SER-11 (9:5-23).  Appellants opposed and filed a cross-motion for summary judgment.  *Id*. at 9:23-24; 9:26-10:2. The trial court granted Appellees' motion, which included a preliminary injunction and denied Appellants' cross-motion on May 18, 2021. It is from that order that Appellants filed the instant appeal on June 16, 2021. 1-SER-4 (2:3-5).

### B.    Substantive Undisputed Facts

This appeal is about Appellants' use of Appellees' NEO4J Mark to promote their own services and related software.  *See generally*, 1-SER-6–11(4:23-9:1). Appellants packaged different versions of Appellees' software and then used the NEO4J Mark to falsely promote it as a free, drop-in replacement for Appellees' paid, commercial subscriptions to Appellees' software.  1-SER-7–10 (5:21-8:11).

### 1.    Identification of Relevant Entities and Individuals

**Neo4j Sweden AB ("Neo4j Sweden"):**  A wholly-owned subsidiary of Neo4j USA, Neo4j Sweden is the owner of all copyrights related to the Neo4j®

-2-

Platform; including the source code. 1-SER-4 (2:8-18); 6-ER-1367–1368 (¶¶3-4). It licenses the commercial Neo4j® Platform to Neo4j USA. *Id.*

**Neo4j, Inc. ("Neo4j USA"):** Parent corporation of Neo4j Sweden and registrant of the NEO4J Mark. 1-SER-4 (2:15-21); 6-ER-1367 (¶3); 2-ER-188–191. Neo4J USA is responsible for all commercial licensing of Neo4j® Platform products and managing the Neo4j Solution Partner sales program in the United States. 1-SER-4– (2:16-18); 6-ER-1367–1368 (¶4).

**John Mark Suhy:** Founder of PureThink and iGov, co-founder of GFI, co-author of "glue code" for ONgDB, and responsible for removing and replacing the Neo4j Sweden Software License terms with the open source GNU Affero General Public License, version 3 ("AGPL"). 1-SER-8–9 (6:2-11, 7:7-10).

**PureThink, LLC:** Founded by Mr. Suhy, PureThink signed a Neo4j Solution Partner Agreement ("SPA") with Neo4j USA to resell and support commercial subscriptions to Neo4j® EE. 1-SER-5–6 (3:17-4:6). Upon termination of the SPA with Neo4j USA in July 2017 (requiring cessation of all use of the NEO4J Mark), PureThink initially promoted a patchwork version of Appellees' software it called "Neo4j Enterprise." 1-SER-5–6 (3:26-4:3, 4:13-6:1).

**iGov, Inc. ("iGov"):** Founded by Mr. Suhy for the stated purpose of avoiding the restrictions imposed by the SPA (precluding PureThink from offering support for open source Neo4j® Software). 2-ER-210–213; 2-SER-101–103; 2-

-3-

ER-234–244; 2-SER-138–140; 2-ER-266–267; 3-SER-590–591(¶¶18-19). iGov subsequently reconstituted and promoted non-conforming versions of Neo4j® EE software, first as iGov's "Neo4j Enterprise" and later as ONgDB. 1-SER-6–9 (4:24-7:10, 7:18-24).

**Graph Foundation, Inc. ("GFI"):** Founded by John Mark Suhy, Brad Nussbaum and Ben Nussbaum to promote ONgDB software. 1-SER-8 (6:2-7); 2-SER-161–162. Appellees brought a separate, related action solely against GFI which settled through stipulated judgment before the motions for summary judgement were fully briefed. 1-SER-11 (9:24-26); 2-SER-41–48.

**Brad Nussbaum and Ben Nussbaum:** Co-founders of GFI (with Suhy); owners of Atom Inc. and GraphGrid, Inc. 1-SER-8 (6:4-7); 2-SER-161–162; 2-ER-301–303; 2-SER-169–170.

## 2. Evolution of Neo4j-Branded Software and Appellants' Pirated Versions Thereof

Below is chronological summary of the relevant versions Appellees' official Neo4j® Software and Appellants' pirated versions thereof. A more detailed description of the differences can be found in the Declaration of Philip Rathle at 6-ER-1365–6-ER-1446.

**Neo4j® Community Edition ("Neo4j® CE"):** Software developed and copyrighted by Appellees. 1-SER-5 (3:1-5); 6-ER-1367–1368 (¶¶1, 4-6). Underlying source code for Neo4j CE was publicly available and licensed by

-4-

Appellees since 2010 under the GNU General Public License, version 3 ("GPL"), an open-source, royalty-free license, which provides limited features and no support services. *Id*. The same software is sometimes referred to as "Neo4j Core" in Appellants' materials. *E.g.,* 10-ER-2295–2298 (124:9-15:16, 127:7-23); 2-SER-318–329; 3-SER-445-456.

**Neo4j® Enterprise Edition ("Neo4j® EE") v3.3:** Software developed and copyrighted by Appellees. 6-ER-1367–1368 (¶¶1, 4-7). Neo4j® EE v3.3 was intended for commercial use, contains additional functionality compared to Neo4j CE and for the first time included closed-source features for increased security. 1-SER-5 (3:1-9); 6-ER-1368–1369 (¶¶7-10). It was made available under a paid-for commercial license and was available publicly for testing, trial use, and non-commercial use under the AGPL. *Id.*

**iGov's "Neo4j Enterprise" v3.3:** Software promoted by Appellants as an equivalent alternative to Neo4j® EE after the SPA was terminated, reconstructed by Appellants using publicly available source code from Neo4j® EE v3.3 with modifications and lacking "closed-source" security features available under commercially licensed Neo4j® EE v3.3. 1-SER-7–8 (5:21-6:1); 1-SER-21 (19:15-21); 6-ER-1374 (¶¶24-26); 2-ER-234–244.

**Neo4j® EE v3.4:** Software developed and copyrighted by Appellees, released in May 2018. 6-ER-1367–1370 (¶¶1, 4, 11). Appellees replaced the

SER_2123

AGPL with a stricter license, including the Commons Clause restricting commercial resale and support services ("Neo4j Sweden Software License").[1] 1-SER-5 (3:9-13); 6-ER-1370–1371 (¶¶11-12). Appellees added the Commons Clause to prevent third parties from monetizing the Neo4j® Platform and "free riding" on Appellees' engineering investments. 6-ER-1370–1371 (¶¶11-12). This was the last official version of Neo4j® EE source code publicly released by Appellees. 1-SER-5 (3:14-15); 6-ER-1370–1371 (¶13).

**iGov's "Neo4j Enterprise" v3.4 and ONgDB v3.4:** Software offered by Appellants in July 2018, built using publicly available Neo4j® EE v3.4 source code as a base combined with older build scripts modified by Appellants. 1-SER-7–8 (5:24-6:1, 6:8-13); 6-ER-1374–1375 (¶¶27-28); 10-ER-2265–2266 (28:25-29:11), 10-ER-2311–2312 (171:23-172:23). Appellants replaced the Neo4j Sweden Software License governing Neo4j® EE v3.4 with the AGPL, deleting legal notices identifying Neo4j Sweden as the copyright holder and licensor, removing the Commons Clause, and inducing users to believe Appellees permitted commercial use and Appellants' commercial support. *Id.*

**iGov's "Government Package for Neo4j" and "Government**

---

[1] The Neo4j Sweden Software License and Commons Clause, as well as a detailed explanation of each license used by Neo4j Sweden can be found at 6-ER-1365–1446, ¶¶ 5-14.

SER_2124

**Development Package with Neo4j Enterprise":** Appellants' fee-based support packages bundled with iGov's "Neo4j Enterprise," targeted at the same federal agencies that PureThink had previously solicited under the SPA. 1-SER-6–8 (4:4-12, 4:24-6:1); 2-ER-234–244; 2-SER-122–139; 2-ER-266–274; 2-SER-147–148; 3-SER-368–404.

**Neo4j® EE v3.5.x:** Software developed, copyrighted and released by Appellees in November 2018 exclusively under a paid-for commercial license, the source code was not made publicly available. 1-SER-5 (3:13-15); 1-SER-8 (6:18-21); 6-ER-1371 (¶13); 6-ER-1416–1421. Prior to its official release, however, Appellees published a beta version of the source code for Neo4j® EE v3.5 subject to the Neo4j Sweden Software License. 6-ER-1371 (¶¶13-14); 1-SER-8(6:18-21). All subsequent Neo4j® EE 3.5.x versions were exclusively released under a commercial license. 1-SER-5 (3:13-15); 6-ER-1371 (¶¶13-14).

**ONgDB v3.5.x:** Software packaged by Mr. Suhy and GFI using (1) source code from Neo4j® EE v3.4, (2) the last public beta version of Neo4j® EE v3.5; (3) source code from Neo4j® CE; and (4) "glue code" written by Mr. Suhy and other contributors. 1-SER-8–9 (6:18-26, 7:7-10); 4-ER-856–858; 3-ER-339–346 (158:18-163:5, 163:13-165:6); 10-ER-2295–2297 (124:2-126:23); 6-ER-1371–1377 (¶¶14, 19-22, 29-34). The software lacked all the closed enterprise features included in the numerical equivalent version of Neo4j® EE. 1-SER-28 (26:2-4); 2-

-7-

SER-289–294 (2:12-17, 4:15-22, 5:4-6:21). Mr. Suhy also replaced the Neo4j

Sweden Software License governing certain source code files with the AGPL,

thereby inducing users to believe the licensor was permitting commercial use and

Appellants' commercial support. 1-SER-8 (6:18-26); 3-ER-477–4-ER-858; 3-

SER-575 (19:9-25); 6-ER-1375 (¶30).

### 3. Appellees Registered the NEO4J Mark

On August 4, 2015, the U.S. Patent and Trademark Office issued Trademark

Registration Certificate No. 4,784,280 to Neo4j USA for the Mark "NEO4J." 1-

SER-4 (2:18-26); 2-ER-189–190 (registration). No party disputed Neo4j USA's

status as registrant of the NEO4J Mark. 1-SER-4 (2:18-26); 1-SER-16 (14:3-5).

### 4. It is Undisputed that Appellants Use Appellees' Source-Identifying NEO4J Mark to Market their Inferior Software

The undisputed evidence established that Appellants used the NEO4J Mark

to promote their goods and services. 1-SER-6 (4:24-5:19); 1-SER-9 (7:7-24); 1-

SER-21–22 (19:15-21, 20:15-20). In or about October 2017, Appellants' website

contained numerous uses of the Neo4j Mark, including references to iGov's

"Government Package for Neo4j" and "Government Development Package with

Neo4j Enterprise." 1-SER-6–7 (4:25-5:12); 2-ER-234–244; 2-SER-122–139; 2-

ER-266–274; 2-SER-147–148.

iGov's website also: (1) used "https://igovsol.com/neo4j.html" as a URL to

promote iGov's "Government Development Packages for Neo4j"; (2) displayed a

-8-

"Request Procurement Document Package" link with "mailto:neo4j@igovsol.com" embedded, creating an email addressed thereto upon activation; (3) encouraged consumers to seek information by sending an email to "neo4j@igovsol.com;" and (4) used "Neo4j Enterprise" to describe iGov's patchwork version of Neo4j® EE v3.3. 1-SER-7 (5:13-20); 2-ER-234–244; 2-SER-122–139; 2-ER-266–274; 2-SER-147–148; 3-SER-368–394; 3-SER-422–439. Appellants did not dispute that the iGov website used the NEO4J Mark in these ways. *Id.*

After the release of Neo4j® EE v3.4 in May 2018, Appellants used the NEO4J Mark to promote iGov's "Neo4j Enterprise" v3.4, and after Suhy co-founded GFI with the Nussbaums in July 2018, began using the NEO4J Mark to promote ONgDB v3.4. 1-SER-5 (3:9-12); 1-SER-7–8 (5:24-6:2, 6:8-13); 2-SER-147–148; 2-SER-151–159; 2-SER-235–337; 3-SER-355–356; 3-SER-544–547. There was no dispute that the source code for their software differed from Neo4j® EE v3.4 and that Mr. Suhy replaced the Neo4j Sweden Software License with the AGPL inducing users to believe Appellants could sell commercial support services for ONgDB. 1-SER-7–8 (5:24-6:1, 6:8-11); 2-ER-301–303; 10-ER-2265–2366 (28:25-29:11); 2-SER-185–188 (87:24-90:9); 6-ER-1370–1375 (¶¶11-12, 27-28).

In November 2018, Appellants released Neo4j® EE v3.5 solely under a commercial license, and with Suhy's help, GFI released ONgDB v3.5.1 shortly thereafter. 1-SER-8 (6:18-19); 6-ER-1371 (¶¶13-14); 3-SER-505–506. ONgDB

-9-

v3.5.1 contained at least 182 source code files that had only been previously released by Appellees under the Neo4j Sweden Software License in the last public beta version of Neo4j® EE v3.5. 1-SER-8 (6:19-21); 2-SER-295-297 (6:22-7:1, 8:4-16:24); 6-ER-1375 (¶29). Appellants did not dispute that in order to call ONgDB "free and open source" Neo4j® EE and commercially support that software, they again replaced the more restrictive Neo4j Sweden Software License tied to these files with the AGPL. 1-SER-8 (6:21-26); 3-ER-477—4-ER-858; 3-SER-575 (19:9-25); 2-SER-199 (159:3-10); 6-ER-1375 (¶30).

Appellants did not dispute that they communicated to potential customers that ONgDB v3.5.x was "100% free and open" with no limitations or restrictions imposed by commercially licensed Neo4j® EE of the same version number. 1-SER-9 (7:2-5); 2-SER-318–329; 4-ER-877–878; 2-SER-331–337; 10-ER-2371–2373; 3-SER-544–547. Appellants also extensively used the NEO4J Mark on iGov's website to promote ONgDB in this manner. 1-SER-8 (6:11-17); 3-SER-368–439, 3-SER-445–456 (highlighted in green). This also included using "https://igovsol.com/neo4j.html" as a URL address to promote ONgDB until Appellants deactivated that page sometime after July 27, 2020.[2] 1-SER-8 (6:11-

---

[2] Thereafter, this URL was replaced with "https://igovsol.com/graph.html," but the page content remained the same. 1-SER-8 (6:13-15); *compare* 3-SER-400–404 *and* 3-SER-411–415.

-10-

15); 3-SER-368–404; 2-SER-108 (RFA No. 5).

In addition, Appellants used the neo4j@igovsol.com email address on iGov's "neo4j.html" webpage (3-SER-380, 3-SER-391 [purple highlight]) and "downloads.html" webpage (3-SER-425, 3-SER-431, 3-SER-437 [purple highlight]) as means for consumers to inquire about ONgDB until sometime in July 2020. 1-SER-7 (5:13-17); 1-SER-22 (20:20-21); 2-SER-108–110 (RFA Nos. 7-11). Appellants also used a "Download Neo4j Enterprise" hyperlink on iGov's "downloads" page that redirected consumers to download links for *ONgDB* until July 27, 2020. 3-SER-426, 3-SER-438 (red highlight); 2-SER-109–111 (RFA Nos. 10, 14); 1-SER-8 (6:15-17).[3] iGov concurrently continued offering "commercial equivalent support packages for [iGov's] Neo4j Enterprise open source licensed distributions," and interchangeability referring to "ONgDB Enterprise" and "Neo4j Enterprise" on these pages. 3-SER-368–372, 3-SER-379–383, 3-SER-390–394, 3-SER-400–404, 3-SER-411-415, 3-SER-422–444 (yellow highlights); 1-SER-9 (7:10-22).

Appellants also did not use their own release notes and announcements in promoting ONgDB. Instead, they used hyperlinks on iGov's website to redirect

_____

[3] The trial court referred to the use of the NEO4J Mark on GFI's website several times. However, the unrefuted evidence cited to by the trial court makes clear it was referring the content of iGov's website.

SER_2129

consumers to Neo4j USA's official release notes (https://neo4j.com/release-notes/neo4j-3-5-5/) and "What's New" page (https://neo4j.com/whatsnew-in-neo4j/) until they removed those references sometime in July 2020. 1-SER-29–30 (27:12-28:2); 3-SER-422–439 (blue highlights).

In sum, Appellants used the NEO4J Mark to identify and promote its own products. 1-SER-22 (20:10-12). It is undisputed that Appellants' products do not contain the same source code as that denoted by Appellees' NEO4J Mark or the associated NEO4J products. 1-SER-9 (7:7-10) ("Defendants do not claim that ONgDB is identical to its Neo4j counterpart versions"); 3-ER-339–346 (158:18-163:5, 163:13-165:6); 10-ER-2295–2297 (124:2-126:23).

### 5. Appellants Falsely Advertise That ONgDB Replaces Neo4j® EE And Is Free and Open Source

The trial court found that Appellants used false statements to promote ONgDB. 1-SER-32 (30:7-10). The trial court first found Appellants' statements that ONgDB is a "free and open source" alternative to the commercially licensed Neo4j® EE were false because the provisions of the Neo4j Sweden Software License did not authorize Appellants to remove its commercial restrictions. 1-SER-26–27 (24:7-25:19).

Second, it found that Appellants' statements that ONgDB v3.5.x was a "drop-in replacement" for Neo4j® EE were false or misleading because those statements could not be verified, given that Neo4j® EE v3.5.4 and later versions

-12-

were all closed source.[4]  1-SER-28 (26:12-24).  For earlier versions of ONgDB, the trial court found that the context of Appellants' statements "clearly implies" (falsely) that ONgDB had all the same enterprise features and were "essentially the same software as Neo4j® EE." 1-SER-28–30 (26:25-28:16).

For these same reasons, the trial court found that Appellants' statements also had a tendency to deceive *and* that customers where actually deceived. 1-SER-30 (28:18-24); 3-SER-516–518; 5-ER-1161–1168; 3-SER-539–541; *see also* fn 13. Finally, the trial court found that Appellants' false and misleading statements were material and caused commercial injury:  Neo4j® EE 3.5.x required a paid subscription while ONgDB 3.5.x was "misrepresented as a free version of Neo4j® EE licensed under the AGPL." 1-SER-31 (29:5-7); 1-SER-31–32 (29:26-30:6). The court therefore determined that Appellants engaged in false advertising. *Id*.

### 6. Appellants Appeal the Interim Order Based Upon The Ordered Injunctive Relief

On June 16, 2021, Appellants appealed the trial court's order granting

---

[4] GFI confirmed that after releasing ONgDB v3.5.4, Appellants could no longer "reliably guarantee that it was a drop-in replacement" for Neo4j® EE and they were unwilling to do the necessary testing to make such integration and compatibility guarantees because it became "too hard to demonstrate."  *Id*., Ex. 31 at 186:24-188:17, 188:23-189:23. Appellants did not offer any evidence to the contrary, and thus it was undisputed that versions released after ONgDB v3.5.4 were no longer drop-in replacements for equivalent versions of Neo4j® EE.

-13-

Appellees' motion for partial summary judgment and issuing a Preliminary Injunction. 1-SER-36–38 (34:19-36:2). Appellants do not appear to challenge the breadth or scope of the Preliminary Injunction or the denial of their cross-motion. 1-SER-36 (34:24-25).

# V.

## SUMMARY OF THE ARGUMENT

Appellants assign error to relatively few points in the trial court's carefully crafted 36-page opinion. Their challenge to standing pursuant to 15 U.S.C. § 1114(1) ("§ 1114(1)") misses the statutorily created reality that Neo4j USA's status as registrant of the Mark establishes standing. Even if it did not, Appellants fail to challenge the trial court's alternate finding of standing under 15 U.S.C. § 1125(a) ("§ 1125(a)"). Appellants do not assign error to the trial court's substantive finding of validity (the first element of infringement under § 1114(1)) electing only to challenge its analysis of nominative fair use under the second element. Even then, they fail to assign error to the dispositive threshold finding: Appellants impermissibly used the NEO4J Mark in email addresses, download links, and other paraphernalia to promote Appellants' products rather than merely referring to Appellee's products. Ignoring that fatal defect, they commit another by not addressing all three prongs of the *New Kids* fair use test. As to the prong they do challenge (which error would thus be harmless), they fail to show any error

-14-

in law or a factual dispute that would support a contrary jury verdict.

Appellants' challenge of the adverse rulings on false advertising and unfair competition fare no better. They largely ignore the record evidence—including their own admissions—and offer strained interpretations of the licensing agreements that cannot withstand scrutiny. There is no interpretation that could allow Appellants to simply take source code, re-write the copyright holder's license, and falsely represent to the public that their bundle of that code is "free and open source" based on Appellants' unauthorized changes to the license.

Also, the record evidence supports the court's finding that Appellants' representations that certain products are compatible with Appellees' products when Appellants failed to verify that fact are false and misleading. The same is true for Appellants' statements representing that the products are essentially the same, or offer the same features, when they admit those facts are untrue. For the same reasons, Appellants fail to demonstrate any error in the finding that Appellants' statements also amounted to false designation of origin.

Throughout, Appellants impermissibly raise issues for the first time on appeal, ignoring necessary legal elements of their claims and ignore adverse findings and undisputed evidence. Finally, throughout, as to each claim of error, Appellants never demonstrate that any reasonable jury, looking at *all* the record evidence, would reach a contrary verdict.

-15-

# VI.

## STANDARD OF REVIEW

The instant order is rendered appealable because it involves a preliminary injunction, the review of which "is limited and deferential." *Southwest Voter Registration Educ. Pro. v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc). Review of a preliminary injunction is afforded the highly deferential abuse of discretion standard. *Developmental Servs. Network v. Douglas*, 666 F.3d 540, 544 (9th Cir. 2011).

An appellate court "review[s] *de novo* the district court's grant of summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 927 (9th Cir. 2009) (affirming grant of summary judgment for plaintiff). It "determine[s] whether there are any genuine issues of material fact, and decide[s] whether the district court correctly applied the relevant substantive law." *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 988-9 (9th Cir. 2016) (en banc). In determining the presence or absence of a genuine issue of material fact, an appellate court will look at "the record as a whole." *Rockhill Ins. Companies v. CSAA Ins. Exch.*, 829 F.App'x 808, 809 (9th Cir. 2020) (affirming summary judgment for plaintiff). A dispute as to a material fact is genuine only if there is sufficient evidence for "a reasonable jury to return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may be affirmed "on

-16-

any ground supported by the record," and may be appropriate even when "a mixed question of fact and law involves undisputed underlying facts." *Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 973 (9th Cir. 2017) (quotation marks and citation omitted).

Finally, it is always the appellant's duty to illustrate claimed error; issues not "clearly articulate[d] in [an] opening brief" are waived. *W. Watersheds Project v. Abbey*, 719 F.3d 1035, 1042, fn. 2 (9th Cir. 2013). It must also, with few exceptions, show prejudice flowing from the demonstrated error. Fed. R. Civ. Proc. 61; *Owens v. White*, 380 F.2d 310, 316 (9th Cir. 1967) (fn. 4, declining to address selected errors on summary judgment based on harmless error analysis).

## VII.

## ARGUMENT

### A. Appellants Demonstrate No Error in the Trial Court's Finding That Neo4j USA had Standing to Assert its Lanham Act Claims

The parties agree that the trial court employed the correct test for standing to assert a trademark infringement claim under the Lanham Act. AOB, p.18; 1-SER-13–14 (11:18-12:1). Neo4j USA must be "(1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008). Although Appellants recite the test correctly, they quickly shift to arguing *validity* of

-17-

registration thereby demonstrating a fundamental misunderstanding of the distinct legal principles of standing and validity. AOB, p.18. While they are substantively wrong as to validity (*see* Sect. VII.A.3) those arguments are irrelevant in determining standing. *See Halicki*, 547 F.3d at 1127 (defendant confused the analysis of the merits of plaintiff's infringement claim with whether standing existed in the first instance).

Properly analyzed, the trial court's finding of standing is correct based on Appellants' concession that Neo4j USA holds the registration for the NEO4J Mark. AOB, p.7 (citing 2-ER-189). Moreover, Appellants' failure to challenge the trial court's alternate, independent, basis for standing – the Third *Halicki* prong – ensures that even if their attack on prong one were valid (it is not), no reversible error would result. 1-SER-14–15 (12:2-13:1).

### 1. Standing Exists Under §1114(1) of the Lanham Act Based Upon the Unchallenged Finding That Neo4j USA is the Owner of the Registration for the NEO4J Mark

The trial court held that Neo4j USA had standing to assert a claim pursuant to § 1114(1) based on the undisputed fact that Neo4j USA holds the ***federal registration*** for the NEO4J Mark. 1-SER-14 (12:2-8 ["Defendants argue that despite being the registrant of the mark, Neo4j USA does not actually own the mark"]); 2-ER-188–191 (NEO4J Mark registration). Appellants concede "Neo4j USA is the registrant of the mark in the United States." AOB p.18. This

-18-

concession ends the analysis, foreclosing error, because the Lanham Act expressly provides that ***the registrant*** of the NEO4J Mark has standing to sue.[5] 15 U.S.C. § 1114(1); *Halicki*, 547 F.3d at 1226-28 (recognizing that proof of a registered mark is sufficient to establish standing under the Lanham Act); *6 McCarthy on Trademarks and Unfair Competition* § 32:3 (5th ed.) ("only the 'registrant' has standing" to sue under § 1114(1)). The balance of Appellants' arguments at AOB pp.18-24 do not affect standing. *See* Sect. VII.A.3 et seq.

### 2. Standing Exists Under §1125(a) of the Lanham Act Based Upon the Unchallenged Finding That Neo4J is a "Nonowner With a Cognizable Interest" in the Mark

Appellants fail to challenge the trial court's alternate determination that even if Neo4j USA were not the registrant, it would still have standing pursuant to § 1125(a), "[a]s the registrant of the NEO4J Mark and parent company of Neo4j Sweden … Neo4j USA undoubtedly has a cognizable interest in the mark." 1-

---

[5] Appellants' reliance on *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154 (1st Cir. 1977) and *Upper Deck Co. v. Panini Am., Inc.*, No. 20CV185-GPC(KSC), 2021 WL 1388630 (S.D. Cal. Apr. 13, 2021) offers them no solace. The courts in these cases found that the plaintiff-licensees did not have standing to sue under §1114(1) because they were not the registrant of the asserted marks. Precisely the opposite of the scenario here. *Nat'l Licensing Ass'n, LLC. v. Inland Joseph Fruit Co.*, 361 F.Supp.2d 1244, 1254 (E.D. Wash. 2004) is distinguishable on its facts. In that case, the court rejected plaintiff's argument that because the registrant assigned it the right to sue, plaintiff had standing as a "legal representative." *Id.* at 1255-56. Appellees did not make such argument because Neo4j USA as the registrant has the right to assert a claim.

-19-

SER-14 (12:9-17).  It is settled that a "valid ownership interest in a mark ... is sufficient, although not necessary, to provide standing to sue for infringement of that mark." *Halicki*, 547 F.3d at 1225.  Thus, the fact that Neo4j USA was *also* a non-exclusive licensee simply establishes a sufficient commercial interest for it to *also* have standing under § 1125(a).  *See, e.g., Adidas America, Inc. v. Athletic Propulsion Labs, LLC*, 120 U.S.P.Q.2d 1303, 2016 WL 3896826, *3-4 (D. Or. 2016) (Adidas America, a nonexclusive licensee of Adidas AG, had standing to sue under § 1125(a)); *Novartis Animal Health US, Inc. v. LM Connelly & Sons, Pty Ltd.*, No. 04 Civ. 10213(BSJ), 2005 WL 1902085, at *3 (S.D.N.Y. June 14, 2005) (plaintiff had standing because it was both a licensee and subsidiary of the trademark owner).

Because Appellants failed to address the trial court's alternate finding that Neo4j USA has standing under § 1125(a), this Court must affirm.  *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.,* 926 F.3d 528, 533 (9th Cir. 2019) (failure to address district court's standing determination on appeal waived the issue)*; see also Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("arguments not raised by a party in its opening brief are deemed waived").

### 3.    The Related Companies Doctrine is Irrelevant to Appellant's Standing Challenge

Appellants argue that the trial court erred by relying on the related companies doctrine (as defined in 15 U.S.C. §§ 1055 and 1127) "to show that

-20-

Neo4j USA had an ownership interest which gave it standing to sue."  AOB, p.18.

Appellants' misperceive the law (Sect. VII.A.) and the court's order.  Nowhere in

the court's analysis of Neo4j USA's *standing* does it rely upon the related entities

doctrine.  1-SER-13–15 (11:17-13:1).  The order only does so – correctly – in

assessing validity as part of Neo4j USA's § 1114(1) infringement claim.[6]  *See id.* at

13:2-18:1.  Having failed to challenge the substantive findings on this element in

the proper context of infringement, Appellants forfeit the issue.  *See Smith*, 194

F.3d at 1052.  If this Court were to nevertheless reach the issue, it would find no

error in the trial court's finding that Neo4j USA owned a valid registration.

> ### a. Had Appellants Properly Raised the Issue of Ownership, They Nevertheless Fail to Assign Error to the Legal Framework Used by the Trial Court

Even if Appellants had challenged the trial court's finding that Neo4j USA

had satisfied the validity prong of § 1114(1), none of their arguments would

warrant a reversal of that finding.  Appellants concede that "Neo4j USA is the

registrant of the mark in the United States," which creates a strong presumption of

ownership and validity.  *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124

---

[6] To prevail on its infringement claim under § 1114(1), Neo4j USA must prove (1) an ownership interest in a protectable mark; and (2) that Defendants' use of the mark is likely to cause consumer confusion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011).

SER_2139

(9th Cir. 2014); 1-SER-15–16 (13:19-14:5); AOB, p.18 (citing same).

Appellants do not address the legal framework used by the trial court to determine Appellants' failure to rebut Neo4J USA's presumption of ownership, including its reliance on Federal Circuit authority.  1-SER-17–19 (15:20-17:4); *Secular Organizations for Sobriety, Inc. v. Ullrich*, 213 F.3d 1125, 1131 (9th Cir. 2000) (citing Federal Circuit authority in applying the related companies doctrine).  There, the court held that it is not even *required* to determine ownership of a mark as between a parent and wholly owned subsidiary when deciding whether registration of the mark was valid.  1-SER-18–19 (16:25-17:4) (citing *W. Fla. Seafood, Inc. v. Jet Restaurants, Inc.*, 31 F.3d 1122 (Fed. Cir. 1994)). Appellants are also silent on the trial court's finding that the Federal Circuit rejected the very argument made by Appellants "that a trademark registered by a parent company could be invalidated simply based on the fact that the company's wholly owned subsidiary technically owned the marks." 1-SER-17–18 (15:20-16:24) (citing *In re Wella A.G.*, 787 F.2d 1549 (Fed. Cir. 1986) ("*Wella I*"), *In re Wella A.G.*, 858 F.2d 725 (Fed. Cir. 1988) ("*Wella II*")).

Lastly, Appellants do not address the court's reliance on the TMEP stating that the USPTO "will consider the filing of the application in the name of either the parent or the subsidiary ***to be the expression of the intention of the parties as to ownership in accord with the arrangements between them***." TMEP § 1201.03(b)

-22-

(emphasis added); 1-SER-19 (17:5-12).[7]  Further, "[w]here the mark is used by a related company, the owner is the party who controls the nature and quality of the goods sold or services rendered under the mark."  TMEP § 1201.01; 1-SER-19 (17:5-12).  It is in this context the trial court cited Sections 1055 and 1127.  *Cf.* AOB, pp.18-19 *and* 1-SER-16–17 (14:25-15:16).  Against this unchallenged legal framework, the trial court's holding that Appellants failed to overcome the strong presumption that Neo4j USA was the owner of the NEO4J Mark in the United States *at the time of registration* was correct.  *See Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1115 (9th Cir. 2010); 1-SER-15–16 (13:26-14:2).

### b.    Appellants' Sole Evidentiary Challenge – The Neo4J License – Fails to Overcome the Presumption of Validity

Appellants begin their misplaced analysis with an unsupported statement that "the evidence showed that Neo4j Sweden was the owner and user of the mark at the time of registration."  AOB, p.18.  This ignores both the trial court's ultimate findings, as well as the very presumption of ownership that Appellants conceded in

---

[7]   The trial court cited to § 1201.03(c) from the 5th Edition of the TMEP. Between the time Neo4j USA filed the application for the NEO4J Mark in April 2014 and issuance of the registration in August 2015, the TMEP was revised several times, where the cited provision remained the same but was renumbered as TMEP § 1201.03(b).
https://tmep.uspto.gov/RDMS/TMEP/Oct2013#/Jan2015/changed1e1.html

-23-

their preceding section. *Id.* To overcome the presumption of ownership, Appellants point to a single piece of evidence: the intercompany license agreement between Neo4j USA and Neo4j Sweden. *Id.* Even then, Appellants ignore the trial court's analysis thereof.

Instead, Appellants extrapolate what they claim the trial court "believed" about Appellees' intercompany relationship. AOB, p.21, fn. 8. But no such speculation is needed. The trial court evaluated the license agreement, finding that it was not dispositive of Appellees' intent because it was executed six years *before* the registration. 1-SER-16–17 (14:15-15:2). Relying on the TMEP, the lower court correctly concluded that "while the License Agreement tends to show that Plaintiffs considered Neo4j Sweden to be the owner of the Neo4j Mark in 2010, the fact that Neo4j USA registered the mark tends to show that the parties considered Neo4j USA to be the owner of the mark in 2015." 1-SER-19 (17:5-18) (citing TMEP §§ 1201.01, 1201.03(b)). Appellants are silent on these findings.

Appellants also ignore the trial court's finding that they confirmed Neo4j USA's ownership of the NEO4J Mark when Appellants executed a non-exclusive license thereto under the SPA in September 2014. 1-SER-19 (17:16-18); 2-ER-196–201(§4.1). Appellant's offer no rebuttal to this admission.

Appellants' effort to address the "related companies" doctrine,

-24-

misapprehends the rule.[8]  AOB, p.19.  The trial court set forth the doctrine correctly by citing to TMEP § 1201.01.  1-SER-19 (17:19-28).  It also made unchallenged findings that "Neo4j USA wholly owns and controls Neo4j Sweden … did so at the time of registration [record citations]" and that "Neo4j USA is [] the only party who exercises control over the mark in the United States." 1-SER-4 (2:15-16); 1-SER-19 (17:22-24); 6-ER-1367–1373 (¶¶1, 3-5, 19-22).  Appellants are silent on this undisputed evidence; even openly conceding it. (AOB, p.1 "[Neo4j Sweden] creates software packages . . . which its parent, [Neo4j USA], distributes and services in this country").

These findings and related undisputed facts are amplified by *Wella II,* which recognized that because a parent owns substantially all of the stock of the subsidiary, it controls the subsidiary's actions and thus is the "same source" such that there is no likelihood of confusion, permitting concurrent registration.  858 F.2d at 728-29.  *Wella II* is consistent with TMEP § 1201.07(b)(i), which provides "[i]f the applicant … represents that *either* the applicant or the registrant owns *all* of the other entity, and there is no contradictory evidence, then the examining attorney should conclude that there is unity of control, a single source, and no

---

[8] Without citation they apply the test incorrectly; starting off with the conclusion they seek (Neo4j Sweden's ownership) with no citation to evidence or law.

SER_2143

likelihood of confusion." (emphasis in original); *see also* TMEP § 1201.07(b)(ii). Appellants present "no contradictory evidence" – here or below.

Failing to challenge the relevant findings, or to cite to any evidence creating a factual dispute, Appellants rely upon the various standing cases addressed above. AOB, pp.19-20. But none of these cases involve a registrant parent corporation holding a license from its wholly-owned subsidiary, they do not address ownership of a mark in the context of validity at the time of registration, and they do not address the *Wella* cases.[9]

Appellants endeavor to rely on *Noble House Home Furnishings, LLC v. Floorco Enterprises, LLC*, 118 U.S.P.Q.2d 1413 (TTAB 2016). First, *Noble* is an abandonment case. Second, there the registrant was the subsidiary (not the parent as here), but when analogized, *Noble* supports the trial court's interpretation. The Board began its related entity use analysis by observing: "In most situations, the inherent nature of the parent's overall control over the affairs of a subsidiary will be sufficient to presume that the parent is adequately exercising control over the nature and quality of goods and services sold by the subsidiary under a mark

---

[9] Appellants' reliance on *Allard Enterprises, Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 356 (6th Cir. 1998) to argue that "[o]wnership does not turn on registration (or registrability)" is similarly inapposite. AOB, p.21. This case merely addresses whether a competitor's prior use of a mark established priority over plaintiff's registration for that mark.

-26-

owned by the parent, without the need for a license or other agreement. *Noble House*, 118 U.S.P.Q.2d at 1421. This is because "the parent corporation--not the subsidiary whose every decision it controls--better fits the bill as the true owner of any [trademark] property that the subsidiary nominally possesses." *Id.* (citing *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 298-99 (1988) (concurring in part and dissenting in part)).

In *Noble House,* not only was the parent *not* the registrant (and presumptive owner), but the non-registrant parent also (1) used the mark (2) controlled the subsidiary-registrant (and not vice-versa) (3) had no license or similar agreement with the registrant concerning use of the mark and (4) controlled the nature and quality of the products. 118 U.S.P.Q.2d at 14***. Thus, *Noble House* presents nearly the *mirror image* of the scenario here where Neo4j USA is the undisputed (1) parent-registrant and user of the NEO4J Mark in the United States, (2) controller of non-registrant Neo4j Sweden, (3) licensee of the mark, and (4) controller of the nature and quality of the products. As a result, Neo4j USA is the owner of the NEO4J Mark and the registration thereof is valid.

### B. Appellants Demonstrate No Error In the Trial Court's Conclusion That Appellants Failed to Defeat Neo4j USA's Infringement Claim Through Nominative Fair Use

Appellants' challenge to the trial court's decision on infringement is limited to its analysis of their nominative fair use defense. AOB, p.22. Appellants

-27-

acknowledge that in order to assert nominative fair use, they must first establish that they used the NEO4J Mark to refer to the trademark goods rather than their own. AOB, pp.22-23 (citing *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010)).

Only if they meet this threshold requirement does the burden shift to Appellees to negate *one* of the three prongs of test enumerated in *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302 (9th Cir. 1992) to defeat Appellants' nominative fair use defense. *See Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1030 (9th Cir. 2004) (because defendants use of plaintiff's mark ran afoul of the first prong, no need to consider the other two); 1-SER-20–21 (18:23-19:1). The three prongs are: (1) the plaintiff's product must be one not readily identifiable without use of the plaintiff's mark; (2) only so much of that mark may be used as is reasonably necessary to identify plaintiff's product; and (3) defendant must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by plaintiff. *New Kids*, 971 F.2d at 308; *accord Toyota*, 610 F.3d at 1175-76 (citing same).

Here, Appellants only assign error to the trial court's finding on the third prong of the *New Kids* test. They ignore the trial court's adverse findings on the threshold issue and the second prong of the *New Kids* test. Thus, they cannot as a matter of law demonstrate reversible error. Nevertheless, even as to that one prong

-28-

that they do challenge, their analysis is wrong.

### 1. The Unchallenged Threshold Finding that Appellants Did Not Use the NEO4J Mark to Identify Appellees' Products is Dispositive

As recognized by Appellants, a defendant can rely on nominative fair use *only* where "defendant uses the trademarked term not to describe its product but to describe the plaintiff's [product]." AOB, p.22 (quoting *Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, No. 18-CV-06663-TSH, 2019 WL 1586776, at *4 (N.D. Cal. Apr. 12, 2019)). A defendant's impermissible use of a trademark for a purpose *other than* describing plaintiffs' product is dispositive of the issue of infringement. *Toyota*, 610 F.3d at 1183. This is because "[t]o qualify for a fair use defense, the use must not create an improper association between a mark and a new product but must, instead, merely identify the trademark holder's products." *Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1037–38 (9th Cir. 2007).

Appellants fail to address the trial court's finding that Appellants *did not* meet their initial burden because they repeatedly used the NEO4J Mark to refer to *Appellants products*. 1-SER-21–23 (19:13-21:14). Instead, they cherry-pick selected facts to show that sometimes they also referred to Neo4j USA products (AOB, pp.32-33); but that is not the test.

Appellants also argue that they cannot be held liable for using the NEO4J Mark in the context of consulting. AOB, p.23. That argument too is

-29-

unilluminating since the trial court agreed, holding that Appellants *could* fairly use the NEO4J Mark to refer to "'support services' targeted at software that [Appellees] provide." 1-SER-23 (21:11-14). The trial court similarly held that Appellants could "describe their products as an unaffiliated or independent 'fork' of Neo4j source code" and could "comparatively advertise ONgDB in relation to Neo4j USA's products" so long as they did so fairly and followed Neo4j USA's trademark guidelines. 1-SER-23 (21:14-19). Outside of those contexts, however, the trial court correctly concluded that Appellants failed to prove they *did not* use the NEO4J Mark to describe their own software products, which precludes Appellants from relying on nominative fair use.

### a. Appellants' Promotion of iGov "Neo4j Enterprise" and iGov "Government Package for Neo4j" Described Appellants' Products

Below, there was no dispute that Appellants extensively used the NEO4J Mark to market iGov's "Neo4j Enterprise" and "Government Package for Neo4j" on their websites. It was similarly undisputed that Appellees did not produce, market or endorse a software package called "Neo4j Enterprise" or "Government Package for Neo4j." 1-SER-6–7 (4:24-5:12) (citing 2-ER-234–244, 2-SER-122–139, 2-SER-147–148, 3-SER-368–439); 1-SER-21 (19:13-21) (admission that "'Government Packages for Neo4j' and 'Neo4j Enterprise' were used to describe the government packages" for which iGov provided support).

-30-

As detailed above, iGov's "Neo4j Enterprise" was a patchwork variant of Neo4j® EE, and was *not* Appellees' product. *See* Sect. IV.B.2. (definitions of iGov's "Neo4j Enterprise" v3.3 and iGov's "Neo4j Enterprise" v3.4). iGov offered "Neo4j Enterprise" either as standalone software or bundled with iGov support services, which it marketed as "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise." *See* Sect. IV.B.2 (definitions of same).

Appellees submitted the uncontested declaration of Philip Rathle, Neo4j USA's Vice President of Products, who explained that iGov's "Neo4j Enterprise" was constructed from source code using older build scripts that introduced modifications resulting in software that was not the same as that compiled by Neo4j Sweden. 6-ER-1369–1375 (¶¶10-11, 19-27); 1-SER-7 (5:21-24). As recognized by the trial court, iGov's "Neo4j Enterprise" also "did not include several 'closed-source' features of Neo4j EE that were only available under the Neo4j USA's commercial license." 1-SER-7 (5:22-23); 6-ER-1369–1375 (¶¶10, 24-27).

Appellants' uses of the NEO4J Mark only worked to reinforce the misimpression as they assured potential customers both on iGov's website and in direct email communications that iGov's "'Neo4j Enterprise' was the 'same official Neo4j Github Repositories as Neo4j Inc uses for their paid commercial

-31-

licensed builds' except distributed under an open source license." 1-SER-21–22 (19:25-20:2) (citing 2-ER-242–244, 2-SER-139, 2-ER-266–274, 2-SER-147–148). Nor were Appellants "pointing" to Appellants' repositories. iGov set up their own distribution, on *their* site, for *their* products: "iGov Inc builds the Neo4j binaries from the source code and makes it available via a distribution site we setup (https://igovsol.com/downloads.html)." 2-SER-143; 2-SER-127–140. The same was true for later versions. 1-SER-21 (19:22-25) (citing 3-ER-339–346 [158:18-163:5, 163:13-165:6], 10-ER-2295–2297 [124:2-126:23]).

Appellants' argument that iGov was *also* offering consulting services, and not "Neo4j Enterprise" software "alone" does nothing to change the analysis. *See* AOB, pp. 11-12, 23 and 25. They still used the NEO4J Mark to encourage customers to download iGov's "Neo4j Enterprise" *instead of official Neo4j® EE*. *E.g.,* 2-SER-123–124, 2-SER-127–131, 2-SER-139; 2-SER-147–148 (yellow highlights); 2-ER-242–244; 2-ER-266–274. This "appropriate[d] the cachet of" the NEO4J Mark to pass off iGov's "Neo4j Enterprise" product. *See Garcia,* 475 F.3d at 1037–38; *see also Adobe Sys. Inc. v. A & S Elecs., Inc.*, 153 F.Supp.3d 1136, 1143 (N.D. Cal. 2015) (not fair use because defendant's use of Adobe's marks was not intended to describe Adobe's product, but rather to make it appear

-32-

that the software was sanctioned by Adobe).[10]  It was from these unrefuted uses of

the NEO4J Mark that the trial court correctly determined that Appellants used the

mark "to create the misleading perception that Defendants' products *were*

Plaintiffs' products," and thus could not assert a nominative fair use defense. 1-

SER-22 (20:3-14) (emphasis in original).

Appellants' arguments that they were *really* offering genuine Neo4J® EE

software is unavailing.[11]  AOB, pp. 23-25.  It is no more logical to say that Burger

King® could take parts of a McDonalds Big Mac® and parts of a Burger King

Whopper®, repackaging and selling it as a "McDonalds Bigger Mac."  Nor is the

result logically different if Burger King® also adds services, such as movie

_____

[10] Appellants argue that *Adobe* is distinguishable because iGov's website informed consumers that "the Neo4j versions it used were 'Neo4j Enterprise open-source licenses.'" However, the facts in *Adobe* are analogous because the defendant was using its website to advertise and sell Adobe's trademarked products, which they had no right to distribute. 153 F.Supp.3d at 1142-43.  Here, the undisputed evidence established that Appellants were similarly offering unauthorized iGov "Neo4j Enterprise" which was not official Neo4j® EE.

[11] Appellants' argument that they were merely compiling "software from GitHub for Neo4j Enterprise" by pulling "that software from the 'official Neo4j' repositories without modification is unsupported by the evidence in the record.  *See* AOB, p.24 (citing 2-ER-248; 5-ER-991).  The website printouts cited by Appellants contain the statements in question, and thus do not refute that they were offering a product that was not the same as official Neo4j® EE, and no contrary evidence was offered below that disputed Mr. Rathle's hands-on analysis of iGov's "Neo4j Enterprise" products.

SER_2151

screenings, and packages it as "McDonalds Bigger Mac Experience."  In both the hypothetical scenario and here, the resulting concoction is simply *not* the product of the Mark holder.  *See* 1-SER-7–8 (5:21-6:1); 1-SER-21–22 (19:13-20:2); 6-ER-1373–1375 (¶¶ 24-28).  Thus, it is not nominative fair use.

> ### b.  Appellants Other Uses of the NEO4J Mark on iGov's Website Similarly Did Not Describe Appellee's Products

Appellants also fail to address the points other instances of Appellants' use of the NEO4J Mark in a manner that does not refer to Appellees' products.[12]  Nothing about their use of the NEO4J Mark in an email address, a URL and a download link for Appellants' software "can be reasonably interpreted to refer to [Appellees'] products."  1-SER-7 (5:13-19); 1-SER-22–23 (20:15-21:10).

Appellants used the NEO4J Mark in the URL https://igovsol.com/neo4j.html to promote iGov's "Neo4j Enterprise" and "Government Package for Neo4j," and later to promote ONgDB until they deactivated that page sometime after July 27, 2020.  1-SER-7 (5:13-20); 1-SER-22 (20:15-20) (citing 7-ER-1586 [Fact 16] and 7-ER-1587 [Fact 18]); 2-SER-127–137; 3-SER-368–404; and 2-SER-108 (RFA

---

[12] Appellants obliquely argue that the trial court should have taken their use of the NEO4J Mark in the context of iGov's website as a whole and then determine whether it suggests sponsorship or endorsement by Neo4j USA.  AOB, pp. 26-28. That argument applies to, and is therefore analyzed under the third prong of the *New Kids/Toyota* test in Sect. VII.B.2.a-b.

SER_2152

No. 5). The uses were akin to posting a sign with the NEO4J Mark to draw customers to Appellants' products. *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.,* 174 F.3d 1036, 1045, 1064-65 (9th Cir. 1999); *accord Experience Hendrix v. Hendrixlicensing.com*, 97 U.S.P.Q.2d 1364, No. C09-285Z, 2010 WL 2104239, at *6 (W.D. Wash. May 19, 2010) (use of plaintiff's mark in defendants' URL addresses and business names did not describe plaintiffs' products, but rather defendants' products).

Similarly, undisputed evidence showing Appellants used the NEO4J Mark in their email address, neo4j@igovsol.com, for consumers to obtain more information about iGov's "Neo4j Enterprise" and "Government Package for Neo4j" does not refer to Appellees' products. 1-SER-7 (5:13-20); 1-SER-22 (20:15-20). The same is true for their continued use (until sometime in July 2020) of the neo4j@igovsol.com email address on iGov's "neo4j.html" page and "downloads.html" page as "'a means to inquire about ONgDB" and "[ONgDB] open source license support.'" 1-SER-22 (20:20-24) (citing 7-ER-1587 [Fact 19]); AOB, p.29 (admitting Suhy and iGov used the email for persons inquiring about iGov's consulting services and about ONgDB); 3-SER-380, 3-SER-391("Request Procurement Document Package [mailto:neo4jgovsol.com]), 3-SER-422–437 ("If you have a question for us, please email us at neo4j@igovsol.com" [purple highlights]); 2-SER-108–110 (RFA Nos. 7-11). Nor did Appellants dispute their

-35-

use of a "Download Neo4j Enterprise" hyperlink that redirected consumers to download links for ONgDB. 3-SER-426, 3-SER-438 (red highlight); 2-SER-109–111 (RFA Nos. 10, 14); 7-ER-1587 (Fact 20); 1-SER-8 (6:15-17). Consequently, the trial court correctly concluded that the foregoing uses of the NEO4J Mark precluded a nominative fair use defense as to those uses. 1-SER-23 (21:2-10); *Garcia,* 475 F.3d at 1037-38; *Adobe Sys*., 153 F.Supp.3d at 1143; *Experience Hendrix*, 97 U.S.P.Q.2d at *6 (the nominative fair use test does not apply where defendant uses plaintiff's trademark to promote defendants' product rather than merely describe plaintiff's product).

### 2. Appellants Fail to Establish Any Error in the Trial Court's Analysis under the Three-Prong *New Kids* Test

Even if Appellants had met their initial burden, they fail to demonstrate error in both *New Kids* prongs that the trial court found had been violated. Having challenged only one of the two findings on this issue, Appellants are foreclosed from relief. *See United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) (where appellant attacks only one of several bases of decision, appellant is deemed to have waived the right to challenge the alternative bases of that decision). Nevertheless, the undisputed evidence supported each of the trial court's findings.

### a. Appellants Fail to Challenge the Trial Court's Finding that Appellants Used the NEO4J Mark More Than Was Reasonably Necessary

With respect to the second *New Kids* prong, the trial court expressly found

-36-

that Appellants use of the NEO4J Mark went beyond what was reasonably

necessary. 1-SER-23–24 (21:20-22:10). The undisputed facts support the finding

that Appellants used the NEO4J mark on their websites in labeling and promoting

their products without proper trademark notices. 2-SER-69 (¶15) and 2-SER-107–

115 (RFA Nos. 4-11, 14, 33-34); 2-SER-69–70 (¶¶16-20) and 2-ER-234–244; 2-

SER-122–139; 2-SER-70 (¶23) and 2-SER-147–148 ; 2-SER-78–80 (¶¶64-72) and

3-SER-368–372, 3-SER-379–383, 3-SER-390–394, 3-SER-400–404, 3-SER-411-

415, 3-SER-422–444; *see also* 1-SER-8 1-SER-7–8 (5:7-18, 6:11-17); 1-SER-23–

24 (21:25-22:10); *and* Sects. IV.B.4. and VII.B.1.b.

Having failed to address, much less show error, as to any of the court's

findings or evidence supporting the second prong of the *New Kids* test, Appellants

can show no reversible error. *See Horphag Rsch. Ltd. v. Pellegrini*, 337 F.3d 1036,

1041 (9th Cir. 2003) (defendant's use of plaintiffs' mark must meet all three

prongs). Consequently, the trial court was correct in finding that Appellants

infringed the NEO4J Mark by using it more than reasonably necessary.

> **b.** **The Trial Court's Finding that Appellants Used the NEO4J Mark to Suggest Endorsement of "Neo4j Enterprise" is Supported by Undisputed Record Evidence**

In analyzing the third prong of the *New Kids* test, courts review both the use

of the mark, as well as the surrounding content of any promotion or presentation

that includes the mark. *New Kids*, 971 F.2d at 308-309. The material is

-37-

scrutinized because nominative fair use requires "that the user do nothing that would, in conjunction with use of the mark or dress, suggest sponsorship or endorsement by the trademark or trade dress holder." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 811 (9th Cir. 2003). As shown in the next sections, the trial court correctly concluded Appellants failed this test.

Appellants' arguments regarding actual confusion are also wrong. First, actual confusion *is not* a separate requirement in addition to the *New Kids* test. AOB, p.29, fn 10. Second, contrary to Appellants' assertion, the trial court was free to rely upon actual confusion to negate the third prong of the *New Kids* test. *See Brother Recs., Inc. v. Jardine,* 318 F.3d 900, 908 (9th Cir. 2003) (overruled on other grounds in *Toyota*, 610 F.3d at 1182); *cf.*, AOB, p.29, fn 10. Undisputed record evidence[13] supports the express and implied findings of actual confusion,

---

[13] Evidence of Appellants' use of the NEO4J resulting in actual consumer confusion included users seeking assistance from Neo4j USA after experiencing compatibility issues, technical problems or glitches with ONgDB. *E.g.,* 3-SER-516–518 (reported compatibility issue posted on Neo4j USA's Online Community); 5-ER-1161–1162 ("Unable to connect to Neo4j/ONgDB Browser when port forwarding"); 5-ER-1163–1164 ("ONgDB neoj not starting up"); 5-ER-1165–1168 (problems with "ONgdb (neo4j) with different . . .server versions"); 3-SER-539–541 ("difficulty loading a Cypher file into Neo4J… note that I am using an recent ONGDB build, rather than straight Neo4J; I do not believe this will make any substantial difference."); and 10-ER-2397–2398 (set-up and load problems). Appellants' interchangeable use of "Neo4j Enterprise" and "ONgDB" also mislead

-38-

and thus provide an independent basis for affirmance.  1-SER-10–11 (8:13-9:1); 1-SER-34–35 (32:2-10, 33:3-8).

### (1)    Endorsement of iGov's "Neo4j Enterprise"

Undisputed record evidence supports the trial court's conclusion that Appellants' use of the NEO4J Mark implied endorsement by Appellees.  This includes the same overuse of the NEO4J Mark detailed in Sects. VII.B.1.a-b and VII.B.2.b.  1-SER-7 (5:7-20); 1-SER-23–24 (21:20-22:10).  Appellants do not argue that these were disputed facts.  *See id.*  Rather, they argue that the trial court failed to take into account the "look and feel" of specific snapshots of iGov's website and that there were "prominent" disclaimers.  AOB, pp.25-30.

As an initial matter, Appellants failed to identify the cited disclaimers to the trial court.[14]  Thus, forfeiting any related error.  *See In re E.R. Fegert, Inc.*, 887

---

consumers into mistakenly believing that ONgDB and Neo4j® EE were one and the same.  *E.g.,* 4-ER-856–858; 2-SER-318–322; 10-ER-2369 (¶17); 3-SER–462; 3-SER-493–494; 10-ER-2401.

[14] Appellants only made unsupported conclusory arguments that a "reasonable consumer would not be confused that defendants' websites are a USA site or sponsored by USA or Sweden."  7-ER-1561–1562; *see also* 9-ER-2156 (7:3-7) ("There is no genuine dispute that defendants' websites, taken as a whole suggest sponsorship or endorsement by USA.").  In their in their responsive statement of undisputed facts, Appellants relied on ***different*** language limited to PureThink, while failing to address that the cited portions iGov's website did not contain any prominent disclaimers. *See* 7-ER-1590–1592, (Fact 31-Fact 33 [only referencing language that PureThink "has ceased their partnership with Neo4j Inc").

-39-

F.2d 955, 957 (9th Cir.1989) (appellate court will not consider arguments that were not sufficiently raised with the trial court to rule upon it); *accord A-1 Ambulance Serv., Inc. v. Cty. of Monterey*, 90 F.3d 333, 339 (9th Cir. 1996).

Even if Appellants had properly raised the issue below, on appeal they mischaracterize the webpages and fail to address the "look and feel" of the entirety of iGov's website over the course of several years (as considered by the trial court). *See* AOB, p.26 (citing 2-ER-235, 2-ER-261 and 2-ER-248), pp.32-33 (citing 5-ER-1007). The actual home page for iGov's website was https://igovsol.com/index.html. *E.g.*, 2-SER-70–80 (¶¶20, 23, 73-76); 2-SER-138–139; 2-SER-147–148; 3-SER-448–453. Notably, this home page *did not* feature any disclaimer of affiliation with Neo4j USA through at least July 2020. *Compare* 2-SER-138–139, 2-SER-147–148, 3-SER-445–453 *and* 3-SER-454–456. This contrasts with the webpage cited in the AOB at pages 11, 26, 28-30 and 32 – *that* is the home page for **PureThink's** legacy website *circa* November 2017. 2-SER-69 (¶16) and 2-ER-234–241.

The second webpage, https://igovsol.com/neo4j.html, is a subpage of the iGov site, not the "landing page" as claimed by Appellants. 2-SER-69–70 (¶19) and 2-SER-127–137; *cf.* AOB, p. 26 (citing 2-ER-261). Moreover, the "disclaimer" is neither at the top of that webpage nor prominent. *Id*. Rather, it is buried near **the bottom** of that secondary webpage. 2-ER-253–262; 2-SER-69

-40-

(¶16).  On page 26, Appellants cite to language that iGov "is not a Neo4j Solution Partner," but fail to disclose that this "disclaimer" is proceeded by repeated ***bolded*** references to iGov's "Neo4j Enterprise" and "Government Package for Neo4j," which the trial court correctly held would misleading customers to believe they would be receiving genuine Neo4j® EE (or the equivalent thereof).  2-ER-261; *see also* 1-SER-7 (5:7-24); 1-SER-21–22 (19:15-20:14).

The third webpage, https://igovsol.com/download.html, is also not iGov's landing or home page as claimed by Appellants.  2-SER-69 (¶18) and 2-SER-122–124; *cf.* AOB, p. 26 (citing 2-ER-248).  It is an early version of a January 2018 subpage, and the cited language, "iGov Inc has no relationship with Neo4j Inc.," ***was subsequently removed from this webpage.***  *Compare* 2-SER-69 (¶18), 2-SER-122–124 *and* 2-SER-79 (¶¶70-71), 3-SER-428–439.  Prior to its removal, this language was not conspicuous, and did not inform consumers that iGov's "Neo4j Enterprise" and "Government Packages for Neo4j" were not approved or endorsed by Neo4j USA.  1-SER-21–24 (19:13-20:14, 21:20-22:10).

Appellants' reliance on a fourth disclaimer that "iGov Inc is not a partner or reseller of Neo4j" is also misleading.  5-ER-1007.  This October 10, 2020 iteration of iGov's download subpage shows when it ***removed the infringing content*** and ***added*** the cited "disclaimer." *Compare* 2-SER-79 (¶71), 3-SER-435–439 *and* 2-SER-80 (¶72), 3-SER-440–443.  iGov's belated addition of this disclaimer does

-41-

not negate the trial court's finding of infringement based on prior iterations of this webpage. 1-SER-8 (6:15-17) ("[Appellants] further used a "Download Neo4j Enterprise" hyperlink on its "downloads" page, which redirected consumers to download links for ONgDB until July 27, 2020") (citing 3-SER-411–412, 3-SER-422–424, 3-SER-428–430); 3-SER-426, 3-SER-438 (red highlight).[15]

Appellants' reliance on *Toyota* for the proposition that websites that *do not* suggest endorsement, and do not harm the market only undercuts their position. *cf.* AOB pp.25-26. Defendants in *Toyota* were auto brokers. 610 F.3d at 1175. Customers purchasing a Lexus through defendants would thus receive "a genuine Lexus car sold by an authorized Lexus dealer, and a portion of the proceeds ends up in Toyota's bank account." *Id.* Nonetheless, Toyota objected to domain names used by defendants containing the Lexus mark, as well as the use of Lexus logo on their website. This Court vacated an injunction based in part on the First Amendment, in part on over breadth of the injunction, and in part on the second and third prongs of the *New Kids* test, remanding the case for consideration of a narrower injunction. *Toyota,* 610 F.3d at 1180–83.

---

[15] While the trial court attributed this misuse to GFI's website, the cited undisputed evidence is iGov's download page.

-42-

Defendants in *Toyota* were undeniably referring to genuine Lexus cars made by plaintiffs – not parts of Lexus cars cobbled together by a third party as occurred here.[16]  *Compare Toyota,* 610 F.3d at 1175, 1181-82 *and* 1-SER-21–23 (19:13-21:10).  Moreover, unlike *Toyota*, Appellants' disclaimers – once they appeared – were not at the top of iGov's home page.  *Compare* 2-SER-138–139, 2-SER-147–148, 3-SER-445–453 *and* 3-SER-454–456; *cf. Toyota,* 610 F.3d at 1181-82.  Consequently, *Toyota* is inapposite.

### (2)  Endorsement of ONgDB

Appellants also challenge the conclusion that their use of the NEO4J mark in connection with ONgDB "suggested ONgDB was sponsored by or affiliated with Neo4j USA."  AOB, pp.30-33.  First, the same website and email usage described above in Sect. VII.B.1.b. also creates a false implication of endorsement of ONgDB.  Meanwhile, the same critique of the "disclaimers" issue applies with equal force.  Second, Appellants ignore strong evidence in the words of company founder, Suhy that created a false public suggestion of affiliation and endorsement by Appellees.  1-SER-9 (7:19-24), 1-SER-21–22 (19:25-20:2), 1-SER-29 (27:6-27)

---

[16] As detailed above, Appellants' insistence that any customer would understanding they offering consulting services and a "Neo4j Enterprise package iGov had compiled from unmodified source code from Neo4j Sweden's official GitHub repository" is contrary to the undisputed evidence.  *See, e.g.,* AOB, p.27 (citing 5-ER-989), p.29 (citing 2-ER-244–245), p.32 (citing 2-ER-235).

-43-

(citing 2-ER-266–274, 2-SER-147–148, 2-SER-323–334, 3-SER-461–465); *see also* 2-SER-153–155 ("I can explain why [GFI] was created and how we package Neo4j Enterprise (We call ONgDB) distributions"); 2-SER-335–337 ("ONgDB Enterprise - which is the same code base, with just a different name and removal of the commons clause").

Next, Appellants argue a "reasonable consumer" would understand that ONgDB was merely a fork of Neo4j Sweden's open source software, and not the same as commercially license Neo4j® EE. AOB, pp.32-33. This is not supported by the record and ignores the contrary findings that ONgDB *was not* a divergent fork of open source Neo4j® EE.[17] 1-SER-8–9 (6:2-7:5, 7:7-10) (citing 3-ER-339–346 [158:18-163:5, 163:13-165:6], 10-ER-2295–2297 [124:2-126:23]); 1-SER-23–24 (21:20-22:10) (use more than necessary and create confusion). Rather, it was code cobbled together from various Neo4J products (*see* Sect. I.B.2.), by Suhy who impermissibly removed legal notices and commercial restrictions from the operative license and then purported to offer ONgDB for free, charging users support fees based on the savings they would incur by not paying Appellees for a

---

[17] Even assuming arguendo Appellants were merely offering a fork, the trial court specifically held that the undisputed facts established that their use of the NEO4J Mark "goes beyond what is necessary to identify ONgDB as a fork of Neo4j." 1-SER-23–24 (21:11-22:5); *supra* Sect.VII.B.2.a.

-44-

commercial license for Neo4j EE. 3-SER-358–361; 10-ER-2313–2319 (183:12-183:1, 187:12-188:5, 189:1-191:3); 6-ER-1370–1375 (¶¶11-13, 27-30).

Appellants also ignore that iGov misrepresented that ONgDB was the same as Neo4j EE "branded distributions" and interchangeability referred to "ONgDB Enterprise" and "Neo4j Enterprise" on its website. 1-SER-9 (7:18-24) (citing 3-SER-368–455 [yellow highlights]); 1-SER-8–9 (6:15-17, 7:12-17)[18] (citing 3-SER-422–438 [yellow highlights]). iGov also misled customers on its "downloads" subpage by using a "Download Neo4j Enterprise" hyperlink that redirected consumers to download links for ONgDB. *E.g.,* 3-SER-426, 3-SER-438 (red highlight); 2-SER-109–111 (RFA Nos. 10, 14).

iGov also instructed potential users of Neo4j EE on its "neo4j" subpage to "simply download ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the same version number." 3-SER-368–415 (green highlight); 1-SER-9 (7:12-17). Appellants also coopted the Neo4j USA's documentation in promoting ONgDB. They used hyperlinks on iGov's website to redirect consumers to Neo4j USA's official release notes and "What's New" webpage. 3-SER-422–436 (blue highlight); 1-SER-24 (22:1-4) and 1-SER-30

---

[18] It appears that trial court mistakenly stated this was GFI's website, but a review of this evidence cited by the trial court shows printouts of iGov's download pages.

-45-

(28:1-11) (citing 3-SER-368–372, 3-SER-422–427). All of this content impermissibly suggested affiliation with and endorsement by Appellees.

Appellants' assertion that the district court erred by "fail[ing] to recognize that iGov does not control or offer a product called ONgDB" is also wrong. AOB, p.32. In fact, iGov actively promoted ONgDB on its website. 1-SER-8 (6:2-11). Suhy was a major contributor to the development of ONgDB. 10-ER-2330–2331 (211:7-212:21). Suhy was also responsible for the removal of commercial restrictions governing the underlying source code, inducing users to believe iGov was allowed to offer ONgDB for "free" with paid support services. 1-SER-8 (6:21-26) (citing 3-ER-477–4-ER-858, 2-SER-199 [159:3-10], 6-ER-1375 [¶30], 3-SER-575 [19:9-25]); 1-SER-9 (7:8-10) (citing 10-ER-2311 [171:23-172:23], 2-SER-198–205 [158:1-162:5, 163:13-165:6]). Thereafter, iGov offered downloads of ONgDB via its website. 1-SER-29–31 (27:12-28:1); 3-SER-422–439; 2-SER-110–111 (RFA No. 14).

In sum, Appellants demonstrate no error in the trial court's analysis both legally (because they fail to challenge dispositive findings) and because as to those findings they do challenge (largely by ignoring undisputed record evidence and misconstruing other evidence) Appellants do not show that any reasonable jury would conclude that theirs was nominative fair use.

-46-

**C.** **The Trial Court's Finding of False Advertising in Appellants' Promotion of ONgDB Was Supported by Undisputed Record Evidence**

A false advertising claim under § 1125(a) requires proof that (1) defendant made a false statement of fact in a commercial advertisement about its own or another's product; (2) the statement actually deceives or has the tendency to deceive a substantial segment of its audience; (3) the deception is material; (4) defendant caused the false statement to enter interstate commerce, and (5) plaintiff has been or is likely to be injured as a result of the false statement. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Proof establishing this claim will also establish a violation of the UCL. *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994) (UCL claims are "substantially congruent to claims made under the Lanham Act").

The trial court found Appellants engaged in false advertising in the promotion of ONgDB by making: "(1) statements that ONgDB and Neo4j Enterprise are 'free and open source' versions of or alternatives to commercially licensed Neo4j EE; and (2) statements that ONgDB is a 'drop-in replacement for an existing commercial licensed distribution of the same version number' of Neo4j EE." 1-SER-26–32 (24:1-30:13). Appellants only assign error to its finding that such statements were false. AOB, pp.34-43.

Appellants first argue that trial court ignored ONgDB was GFI's product,

-47-

and Appellants were merely offering a support package for it.  AOB, p.34.  As detailed in Sect. VII.B.2. *et seq*., Appellants offered ONgDB via their website with that package.  More importantly, § 1125(a) expressly states that liability attaches where a false statement is made "about its own ***or another's product***."  *Southland Sod Farms*, 108 F.3d at 1139 (emphasis).  Thus, it is irrelevant that ONgDB originated from GFI before Appellants marketed and offered it.

Next, Appellants argue the trial court's findings were primarily based on misstatements made on GFI's website.  AOB, p.35.  Separately from the implied concession that some misstatements *were* present on Appellant's site, the statement contradicts the record, which shows iGov's website was replete with express misstatements of ONgDB being a "drop in" replacement for Neo4j EE.  3-SER-368–455 (green highlights); 1-SER-26 (24:1-6); 1-SER-29–30 (27:6-28:11) (falsely stating ONgDB had same features as Neo4j® EE) (citing 2-ER-266–274, 2-SER-147–148, 2-SER-323–329, 2-SER-331–334, 3-SER-368–372, 3-SER-422–427).  Suhy also published numerous Tweets making similar statements. 3-SER-486–495, 3-SER-497–501 (yellow highlights); 5-ER-1099–1100.  These misstatements are analyzed below.

### 1.    Appellants' Assertions that ONgDB was "Free and Open-Source" Neo4j EE Were False

The trial court found that Appellants' representations regarding ONgDB as "'free and open source' versions of Neo4j EE" were false because the plain

-48-

language of the Neo4j Sweden Software License did not permit them to remove the Commons Clause. 1-SER-26–27 (24:7-25:19). Appellants conceded that the falsity of their "'free and open source' versions" statements hinged on the interpretation of Section 7 of that license agreement. *Id.* at 24:11-15. They repeat that concession here. AOB, p.37-38.

Seeking to establish error, Appellants first argue that specific clauses in Sections 7 and 10 allowed them as licensees to remove "further restrictions" added by Neo4j Sweden. AOB, pp.37-38. This runs contrary to the express terms of the license, which must be interpreted as a whole to "so as to give effect to every part ... each clause helping to interpret the other." Cal. Civ. Code § 164; *Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033, 1039 (9th Cir. 2011).

Appellants isolate a clause within Section 10 that "***You*** may not impose any further restrictions on the exercise of the rights granted or affirmed under this License" and argue that this means that the licensor cannot add restrictions. AOB, pp.37-38. This ignores that the Neo4j Sweden Software License (and the AGPL) expressly defines "you" as ***the licensee***. 6-ER-1408 at §0 ("'The Program' refers to any copyrighted work under this License. Each licensee is addressed as 'you'"). Thus, Section 10 prohibits ***a licensee*** from imposing further restrictions, but does not prohibit Neo4j Sweden ***as the licensor*** of the Program from doing so. 6-ER-1413 at §10.

SER_2167

Appellants' assertion that Section 7 explicitly grants a licensee permission to remove further restrictions added by Neo4j Sweden as the licensor and copyright holder fares no better.[19] AOB, pp.37-38.  In making that claim, they cite to the clause "If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term." *Id*.  This clause also cannot be read in isolation. Rather, it must be put in context within the surrounding clauses Section 7:

> Notwithstanding any other provision of this License, for material ***you*** add to a covered work, ***you*** may (if authorized by the copyright holders of that material) supplement the terms of this License with [the following six additional] terms ….
>
> * * *
>
> All other non-permissive additional terms are considered "***further restrictions***" within the meaning of section 10. If the Program as ***you*** received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a ***further restriction***, ***you*** may remove that term.

6-ER-1411–1412 at §7 (emphasis added).

---

[19] Appellants also assert that Neo4j USA is improperly seeking to enforce Neo4j Sweden's copyright.  AOB, pp.39-40.  Not so.  The interpretation of the terms of the Neo4j Sweden Software License are merely necessary to determine the falsity of the advertisements based thereon – another point Appellant conceded below.  1-SER-26 (24:10-15 [parties agree issue turns on the interpretation of Section 7 of the license]).

SER_2168

When read in full, Section 7 clearly governs the actions of licensees alone, ergo the repeated use of the defined term "you," and thus pertains to what additional restrictions licensees may place on a covered work when adding source code and redistributing it as required by the license. Indeed, the sentence relied upon by Appellants is immediately proceeded by a sentence stating that a licensee who adds material to the original work may add any of the six enumerated "additional restrictions" and that any other "nonpermissive additional terms" are "further restrictions" *as defined by Section 10*. As noted above, Section 10 makes clear that only licensees are precluded from adding further restrictions. Thus, reading these provisions together, Section 7 only permits a *downstream licensee* to remove "further restrictions" placed by an *upstream licensee* that has added to the original work, which do not fall within the six enumerated additional terms.

Appellants' contrary read also contradicts Neo4j Sweden's expressed intent of precluding others from commercially benefiting from its software. 6-ER-1370 (¶11); 6-ER-1415 ("the grant of rights under the License will not include, and the License does not grant to you, the right to Sell the Software"); *see also* 6-ER-1370–1371 (¶12 ["Plaintiffs made the decision to modify the license terms used to distribute Neo4j® EE to prevent third parties from monetizing its software while not contributing back to the software or companies who are producers of the software"]). A licensor's intent to limit the commercialization of its software

-51-

should be given effect as intended by the *licensor*, not the licensee.  *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090-91 (9th Cir. 2005) (interpreting terms to effectuate licensor's intent to prevent competitors from benefitting from its software); *see also Micro Star v. Formgen Inc.*, 154 F.3d 1107 (9th Cir. 1998); *Storm Impact, Inc. v. Software of the Month Club*, 44 U.S.P.Q.2d 1441, 1997 WL 566378 (N.D. Ill. 1997) (distribution for commercial purposes infringes where license terms limit use to non-commercial purposes).

Appellants' strained reading is also illogical.  It would nullify Neo4j Sweden's exclusive right, as copyright holder, to license Neo4j® EE under the terms of its choosing.  *See Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008) ("[c]opyright holders who engage in open source licensing have the right to control the modification and distribution of copyrighted material"); 1-SER-26–27 (24:16-25:19) (citing same); *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011) (copyright owners may condition use).  Thus, just as the trial court previously held (*Neo4j, Inc. v. Graph Found., Inc.,* No. 5:19-CV-06226-EJD, 2020 WL 6700480, at *4 (N.D. Cal. Nov. 13, 2020)), it again correctly held that nothing in the license prohibited Neo4j Sweden from adding the Commons Clause, nor authorized Appellants to remove it.  1-SER-26–27 (24:7-25:12).

Appellants further suggest that the trial court's reasoning was "flawed" because Neo4j Sweden violated the terms of the Free Software Foundation's

-52-

("FSF") copyright in the form AGPL license. AOB, pp.38-39. In doing so, Appellants argue "you" means Neo4j Sweden. This is not supported by the plain text, which clearly delineates that the license governs the rights of copyright holder of "the Program," and not copyright holder of the underlying form. 6-ER-1408 at §0 (Definitions), §2 (Basic Permissions). Even ignoring the inconsistencies Appellants create with the defined term "you," they lack standing to enforce FSF's copyright – and copyright enforcement in the form is not relevant to interpretation and enforcement of Neo4j Sweden's license. *See Minden Pictures, Inc. v. John Wiley & Sons, Inc*., 795 F.3d 997 (9th Cir. 2015) (only the copyright owner, assignee or an exclusive licensee of a right enumerated by §106 has standing to bring an infringement action); *see also* 2-SER-282 (FSF confirmed "[o]nly the copyright holder has the power to enforce the terms of the license"); 10-ER-2317–2319 (189:1-191:3) (Suhy admits that Neo4j Sweden is the copyright owner of Neo4j® EE).

Finally, Appellants argue its representations to the public were not misleading because iGov's website stated that ONgDB is a free fork of Neo4j® EE. AOB, p.36. Not only is this argument impermissibly raised for the first time here (7-ER-1539–1580, 7-ER-2149–2158), but it also contradicts the record.

SER_2171

Appellants did not develop ONgDB as an independent fork[20] from properly licensed open source Neo4j® EE in compliance with the terms analyzed above. Rather, Appellants simply **stripped the restrictions** they did not wish to follow and used the code to create ONgDB in violation thereof. 1-SER-8–9 (6:2-7:6); 10-ER-2265–2323 (28:25-29:11, 171:23-172:23, 187:12-188:5, 199:22-200:20); 2-SER-185–188 (87:24-90:9); 2-SER-199 (159:3-10); 2-SER-153–155; 4-ER-856–858; 3-SER-575 (19:9-25); 6-ER-1374–1375 (¶¶27-30).

In sum, Appellants misguided interpretation of the Neo4j Sweden Software License does not withstand scrutiny. The trial court was correct in concluding that Appellants' representations that ONgDB was a '"free and open source' versions of Neo4j EE" were false.

### 2. Appellants' Assertions that ONgDB was a "Drop-In" Replacement for Neo4j EE Were False or Misleading

To demonstrate falsity under the Lanham Act, "a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms*, 108 F.3d at 1139. The trial court found the undisputed

---

[20] "In software development, a fork is a new application developed from an existing one. When an application is "forked," it creates a new, separate program, rather than a new development branch." https://techterms.com/definition/fork

record evidence met this standard in two respects.  1-SER-27–30 (25:20-28:16).

Appellants point to no evidence allowing a reasonable jury to conclude otherwise

with respect to *both*.  *Cf.* AOB p.41.

First, the trial court found that Appellants' representations that post-ONgDB

v3.5.4 releases were "drop-in replacements" for equivalent versions of Neo4j® EE

were both false and misleading based on Appellants' *own interpretation* of what

they meant by "drop-in replacements," i.e. mere compatibility.  1-SER-27–28

(25:20-26:11).  Unsurprisingly, Appellants cite no evidence showing that a jury

could find consumers did not understand their statements as at least assuring

compatibility with Neo4j® EE. 1-SER-30 (28:12-16).  Premised on Appellant's

meaning of "compatibility," the record evidence supported the trial court's finding

that these claims  were false or misleading with respect to ONgDB versions 3.5.5

and later because they Appellants could not verify ONgDB's compatibility with

Neo4j® EE. 1-SER-28 (26:12-24); *cf.* AOB pp.41-42.

It was undisputed that Appellees officially released Neo4j® EE v.3.5 solely

under a commercial license and did not publish any of the underlying source code.

6-ER-1371–1377 (¶¶13-14, 33-34).   GFI confirmed that after ONgDB v3.5.4, it

could not "reliably guarantee that it was a drop-in replacement" for Neo4j® EE

and was unwilling to do the necessary testing to make such integration and

compatibility guarantees because it became "too hard to demonstrate."  2-SER-

-55-

219–222 (186:24-188:17, 188:23-189:23). Despite there being no way to guarantee compatibility without access to the closed Neo4j® EE source code of the same version, Appellants continued to make drop-in replacement claims for later versions. 2-SER-331–334 (ONgDB v3.5.8); 3-SER-422–427 (ONgDB v3.5.5); 3-SER-435–439 (ONgDB v3.5.5); 3-SER-445–446 (ONgDB Enterprise v3.5.5); 3-SER-448–449 (ONgDB v3.5.5); 3-SER-451–452 (ONgDB Enterprise v3.5.5); 3-SER-454–456 (ONgDB v3.5.11); 3-SER-493–494 (ONgDB 3.5.14).

Thus, the trial court was correct to conclude that Appellants' representations that the equivalent post-ONgDB v3.5.4 versions were "drop-in replacements" for the same versions of Neo4j® EE were demonstratively false or misleading because Appellants could not verify compatibility.[21] 1-SER-28 (26:12-24); *see also EFCO Corp. v. Symons Corp.*, 219 F.3d 734 (8th Cir. 2000) (defendant was proven to have falsely claimed that its product was compatible and interchangeable with plaintiff's product). Appellants fail to address this undisputed evidence, and thus fail to show error. AOB, pp.40-43.

Second, the trial court found that Appellants' "drop-in replacement"

_____

[21] Appellants suggest that trial court erred because Neo4j USA failed to offer evidence that users of Neo4j® EE could not "drop-in" their data to ONgDB. AOB, p.42. Aside from GFI's fatal admission that it could not verify compatibility, Appellees offered evidence of compatibility issues. *See* 1-SER-10 (8:17-23).

-56-

statements about ONgDB were also likely to mislead or confuse consumers by falsely implying that ONgDB "has all the enterprise features" and is essentially the same software as Neo4j® EE. 1-SER-28–30 (26:25-28:12). The trial court reached this conclusion based on the numerous examples of statements made by Appellants to consumers that ONgDB was a drop-in replacement for equivalent versions of Neo4j® EE, stating it had "all the enterprise features with no limitations on cores, cluster instances, etc." 1-SER-29–30 (27:8-28:11); (citing 2-ER-266–274, 2-SER-147–148, 2-SER-223–329, 2-SER-331–334, 3-SER-368–372, 3-SER-422–427); 3-SER-368–439, 3-SER-445–456 (green highlights).

The record evidence supported the trial court's finding that iGov's "drop-in replacement" statements were false or misleading (1-SER-28–29 [26:25-27:7]) because Appellants' products *were not* identical, essentially the same, or had all of the Neo4j EE features (1-SER-29–30 [27:6-28:16]). It is undisputed that ONgDB was not 100% identical to and did not include every closed enterprise feature in equivalent Neo4j® EE. 2-SER-291–294 (2:12-17, 4:15-22, 5:4-6:21); 10-ER-2295–2299 (124:2-126:23, 127:19-128:17), 3-ER-339–346 (158:18-163:5, 163:13-165:6); 1-SER-28 (26:2-4). Here too, Appellants ignore their undisputed statements falsely implying that ONgDB was essentially the same software as equivalent versions of Neo4j® EE. 2-ER-266–274; 2-SER-147–148; 2-SER-223–329; 2-SER-331–334; 3-SER-368–372; 3-SER-422–427; 3-SER-435–439; 3-SER-

-57-

445–456; 3-SER-493–494; 1-SER-29–30 (27:8-28:11).  They only raise objections

to the Rathle declaration – ironically evidence *not* cited by the trial court for this

point.  (AOB p.41)  But their arguments evince no contrary facts – especially in

light of the admissions cited by the trial court, and the aforementioned evidence

which reinforces Mr. Rathle's testimony.  1-SER-27–28 (25:25-26:1) (no argument

that ONgDB was of same quality or offered all features); 1-SER-28 (26:2-4)

(same, citing Appellants' interrogatory response); *compare* 6-ER-1375–1377

(¶¶29-34).

Third, the record evidence establishes a separate basis for affirmance raised

by Appellees below (2-ER-157 [31:1-16]), but not ruled upon by the trial court 1-

SER-27 (25:20-23).  Appellants' "drop in" replacement statements also constituted

false advertising because ONgDB contained source code files that purported to be

offered with a license (the AGPL) to which the copyright holder had not assented.

As discussed above in Sect. VII.C.1, this amounts to false advertising since

Appellants violated the terms of the Neo4j Sweden Software License in doing so.

*See Sun Microsystems, Inc. v. Microsoft Corp.*, 999 F. Supp. 1301, 1301 (N.D. Cal.

Mar. 24, 1998) (preliminarily enjoining Microsoft from advertising its product as

"JAVA Compatible" where Microsoft, in violation of its license agreement with

Sun, advertised its product as compatible, even though it failed to meet agreed-

upon compatibility standards).  This Court may affirm on any of the three bases set

-58-

forth herein.  *Campidoglio*, 870 F.3d at 973.

### D. Appellants Demonstrate No Error in the Trial Court's Finding of Consumer Confusion in Granting Summary Judgment on False Designation of Origin

A claim for false designation of origin under § 1125(a) requires proof that: (1) defendant used a false designation of origin; (2) the use occurred in interstate commerce; (3) that such false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship, or approval of defendants' goods or services by another person; and (4) that plaintiff has been or is likely to be damaged.  *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013, 1039 (C.D. Cal. 2011), *aff'd*, 738 F.3d 1085 (9th Cir. 2013).

Appellants challenge only the two of the *Sleekcraft* factors commonly used to evaluate the confusion element.  In so doing, they effectively foreclose their ability to show error since "[t]he presence or absence of a particular factor does not necessarily drive the determination of a likelihood of confusion." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290–91 (9th Cir. 1992).  Indeed, the factors are fluid, and a particularly strong showing of some factors will suffice to show confusion.  *Pom Wonderful* at 1125.  Moreover, Appellants *did not* address either of these two issues below and therefore should be foreclosed from doing so

-59-

here.[22]

Here, the trial court reviewed *each Sleekcraft* factor and concluded that holding out ONgDB as "'free and open source' Neo4j EE" constituted a false designation of origin under the first element.[23]  1-SER-32 (30:22-31:14).  This was largely based on the same evidence that supported its false advertising findings. *See* Sect. VII.C.1-2.

Without any reference to authority, Appellants criticize the trial court's reliance on the established *Sleekcraft* factors, but point to no alternate analysis. AOB, p.44.  Their commentary illustrates no cognizable error.  As to the two *Sleekcraft* factors Appellants challenge (for the first time), "evidence of actual confusion" and "type of goods and the degree of care likely to be exercised by the purchaser," they do so without authority or a full review of the evidence.[24]  AOB,

---

[22] Appellants only addressed the first element, and did not address the second, third and fourth elements below. 1-SER-32–33 (30:22-31:6).  Appellants are now addressing the third element and related *Sleekcraft* factors for the first time on appeal. AOB, p.43.  This Court may thus consider the issues forfeited.

[23] Appellants' argument that there was a question of material of fact regarding the falsity of their "drop-in replacement" statements (AOB, p.46) are addressed in Section VII.C.2., but are irrelevant to this issue because the trial court's ruling was solely based on Appellants "holding out of ONgDB as free and open source Neo4j EE." 1-SER-32–33 (30:22-31:4).

[24] Appellants ignore the trial court's findings that the other six factors weighed in favor of Appellees.  *Compare* AOB, pp.44-45 and 1-SER-33–34 (31:21-32:9).

pp.44-45.

The actual evidence supporting the finding of actual confusion is found in footnote 13 above in Sect. VII.B.2.b.  Notably, Appellants do not dispute that consumers attributed issues they had with ONgDB to Neo4j USA (1-SER-10 [8:17-23] [citing  3-SER-516-518; 5-ER-1161–1168; 3-SER-539–541; 10-ER-2397–2398]), or that "consumers… expressed uncertainty about the propriety of Defendants' modification to the Neo4j Sweden Software License" (1-SER-10–11 [8:24-9:1] [citing 3-SER-343–346, 3-SER-520–533], 1-SER-34 [32:5-6]).  That is customer confusion.  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 351-52 (9th Cir. 1979) (some evidence sufficient to establish actual confusion, while the complete absence of such evidence not dispositive).

Appellants further argue (without any citation to the record) that type of goods and the care likely to be exercised by purchasers militate against confusion because Neo4j® EE is expensive.  AOB, p.45.  Their conclusion is belied by unchallenged evidence of Appellants targeting the same customers as Neo4j USA, and Appellants' admission that price *was* material to their purchasing decisions. 1-SER-30 (29:4-11); 1-SER-34 (32:6-10); 4-ER-856–858; 10-ER-2369 (¶17), 10-

_____

Thus, they concede that the trial court was correct in its findings.  *See E.R. Fegert*, 887 F.2d at 957.

SER_2179

ER-2386–2396, 10-ER-2397–2398, 10-ER-2399–2402.   It pushed customers *toward* ONgDB – just as Appellants wanted.  1-SER-31–32 (29:19-30:10) (citing =2-SER-235–337, 3-SER-339–346, 3-SER-351–353 [yellow highlights]; 3-SER-348; 3-SER-544–547; 10-ER-2276–2277 [53:4-54:25]; 10-ER-2334 [224:13-23]; 6-ER-1452–1453 [¶¶20-24]).

Appellants' remaining arguments fare no better.  First, the disclaimer Appellants raise is addressed at Sect. VII.B.2.b.(1)-(2) and does little to dispel the repeated uses of the Mark in the deceptive manner described in Sect. VII.B. et seq. and Sect. VII.C.1-2.  The issue of "truthful comparative advertising" is addressed in Sect. VII.B.1, which demonstrates that Appellants were commonly not referring to Appellees products.  Indeed it is difficult to imagine legitimate comparative advertising against a backdrop of providing a "100% free" alternative to Neo4j® EE by taking parts of various iterations of Appellees' source code, stripping their license terms and offering them as a new "free" product with lesser features and no guarantee of compatibility while confusingly using the NEO4J Mark.  *See* 1-SER-30–31 (28:17-29:11); 1-SER-32–33 (30:22-31:4); 1-SER-34 (32:2-10).  Having failed to show legal error in the trial court's reliance on *Sleekcraft,* any material fact dispute (much less one that would convince a reasonable jury), this Court should affirm the court's ruling on Neo4j USA's False Designation claim.

## VIII.

## CONCLUSION

The trial court correctly concluded that Appellants' unauthorized use of Appellee's Mark to promote their own products was a trademark violation. Their false and misleading representations, made to promote Appellants' products, created likely confusion, actual confusion, and suggested a false origin for Appellants' products. These conclusions were amply supported by undisputed evidence and no reasonable jury would have ruled otherwise. This Court should, therefore, affirm.

Respectfully submitted,

Dated: October 28, 2021

*/s/ Allonn E. Levy*
Allonn E. Levy (CA Bar No. 187251)
HOPKINS & CARLEY
70 S. First Street
San Jose, CA 95113
Telephone: (408) 286-9800
Facsimile: (408) 998-4790
appeals@hopkinscarley.com

*Attorneys for Appellees*
Neo4j, Inc. and Neo4j Sweden AB

SER_2181

**CERTIFICATE OF COMPLIANCE FOR BRIEFS**

I hereby certify that this motion complies with the type-volume limitations of FED. R. APP. P. 27(d)(2)(A) because this motion contains 13,948 words, excluding the parts of the motion exempted by FED. R. APP. P. 32(f).

This motion complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this motion has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

Date: October 28, 2021

HOPKINS & CARLEY
A Law Corporation

*/s/ Allonn E. Levy*
_____
Allonn E. Levy, Esq.

*Attorneys for Appellee*
Neo4j, Inc. and Neo4j Sweden AB

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 28, 2021. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: October 28, 2021

HOPKINS & CARLEY
A Law Corporation

/s/ *Allonn E. Levy*
_____
Allonn E. Levy, Esq.

*Attorneys for Appellee*
Neo4j, Inc. and Neo4j Sweden AB

# ADDENDUM

## TABLE OF CONTENTS

Page

15 USC § 1114 ...................................................................................................1

15 USC § 1125 ...................................................................................................9

i

# ADDENDUM

## 15 U.S. Code § 1114

**(1)** Any person who shall, without the consent of the registrant--

**(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

**(b)** reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

SER_2185

As used in this paragraph, the term "any person" includes the United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, or other persons acting for the United States and with the authorization and consent of the United States, and any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. The United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, other persons acting for the United States and with the authorization and consent of the United States, and any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

**(2)** Notwithstanding any other provision of this chapter, the remedies given to the owner of a right infringed under this chapter or to a person bringing an action under section 1125(a) or (d) of this title shall be limited as follows:

**(A)** Where an infringer or violator is engaged solely in the business of printing the mark or violating matter for others and establishes that he or she was an innocent infringer or innocent violator, the owner of the right infringed or person bringing the action under section 1125(a) of this title shall be entitled as against such infringer or violator only to an injunction against future printing.

2

**(B)** Where the infringement or violation complained of is contained in or is part of paid advertising matter in a newspaper, magazine, or other similar periodical or in an electronic communication as defined in section 2510(12) of Title 18, the remedies of the owner of the right infringed or person bringing the action under section 1125(a) of this title as against the publisher or distributor of such newspaper, magazine, or other similar periodical or electronic communication shall be limited to an injunction against the presentation of such advertising matter in future issues of such newspapers, magazines, or other similar periodicals or in future transmissions of such electronic communications. The limitations of this subparagraph shall apply only to innocent infringers and innocent violators.

**(C)** Injunctive relief shall not be available to the owner of the right infringed or person bringing the action under section 1125(a) of this title with respect to an issue of a newspaper, magazine, or other similar periodical or an electronic communication containing infringing matter or violating matter where restraining the dissemination of such infringing matter or violating matter in any particular issue of such periodical or in an electronic communication would delay the delivery of such issue or transmission of such electronic communication after the regular time for such delivery or transmission, and such delay would be due to the method by which publication and distribution of such periodical or

3

SER_2187

transmission of such electronic communication is customarily conducted in accordance with sound business practice, and not due to any method or device adopted to evade this section or to prevent or delay the issuance of an injunction or restraining order with respect to such infringing matter or violating matter.

**(D)(i)(I)** A domain name registrar, a domain name registry, or other domain name registration authority that takes any action described under clause (ii) affecting a domain name shall not be liable for monetary relief or, except as provided in subclause (II), for injunctive relief, to any person for such action, regardless of whether the domain name is finally determined to infringe or dilute the mark.

**(II)** A domain name registrar, domain name registry, or other domain name registration authority described in subclause (I) may be subject to injunctive relief only if such registrar, registry, or other registration authority has--

  **(aa)** not expeditiously deposited with a court, in which an action has been filed regarding the disposition of the domain name, documents sufficient for the court to establish the court's control and authority regarding the disposition of the registration and use of the domain name;

  **(bb)** transferred, suspended, or otherwise modified the domain name during the pendency of the action, except upon order of the court; or

4

**(cc)** willfully failed to comply with any such court order.

**(ii)** An action referred to under clause (i)(I) is any action of refusing to register, removing from registration, transferring, temporarily disabling, or permanently canceling a domain name--

   **(I)** in compliance with a court order under section 1125(d) of this title; or

   **(II)** in the implementation of a reasonable policy by such registrar, registry, or authority prohibiting the registration of a domain name that is identical to, confusingly similar to, or dilutive of another's mark.

**(iii)** A domain name registrar, a domain name registry, or other domain name registration authority shall not be liable for damages under this section for the registration or maintenance of a domain name for another absent a showing of bad faith intent to profit from such registration or maintenance of the domain name.

**(iv)** If a registrar, registry, or other registration authority takes an action described under clause (ii) based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's

5

fees, incurred by the domain name registrant as a result of such action. The court may also grant injunctive relief to the domain name registrant, including the reactivation of the domain name or the transfer of the domain name to the domain name registrant.

**(v)** A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

**(E)** As used in this paragraph--

   **(i)** the term "violator" means a person who violates section 1125(a) of this title; and

   **(ii)** the term "violating matter" means matter that is the subject of a violation under section 1125(a) of this title.

**(3)(A)** Any person who engages in the conduct described in paragraph (11) of section 110 of Title 17 and who complies with the requirements set forth in that

6

paragraph is not liable on account of such conduct for a violation of any right under this chapter. This subparagraph does not preclude liability, nor shall it be construed to restrict the defenses or limitations on rights granted under this chapter, of a person for conduct not described in paragraph (11) of section 110 of Title 17, even if that person also engages in conduct described in paragraph (11) of section 110 of such title.

**(B)** A manufacturer, licensee, or licensor of technology that enables the making of limited portions of audio or video content of a motion picture imperceptible as described in subparagraph (A) is not liable on account of such manufacture or license for a violation of any right under this chapter, if such manufacturer, licensee, or licensor ensures that the technology provides a clear and conspicuous notice at the beginning of each performance that the performance of the motion picture is altered from the performance intended by the director or copyright holder of the motion picture. The limitations on liability in subparagraph (A) and this subparagraph shall not apply to a manufacturer, licensee, or licensor of technology that fails to comply with this paragraph.

**(C)** The requirement under subparagraph (B) to provide notice shall apply only with respect to technology manufactured after the end of the 180-day period beginning on April 27, 2005.

7

**(D)** Any failure by a manufacturer, licensee, or licensor of technology to qualify for the exemption under subparagraphs (A) and (B) shall not be construed to create an inference that any such party that engages in conduct described in paragraph (11) of section 110 of Title 17 is liable for trademark infringement by reason of such conduct.

**15 U.S. Code § 1125**

**(a) Civil action**

**(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

  **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

  **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

**(2)** As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State

SER_2193

acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

**(3)** In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

**(b) Importation**

Any goods marked or labeled in contravention of the provisions of this section shall not be imported into the United States or admitted to entry at any customhouse of the United States. The owner, importer, or consignee of goods refused entry at any customhouse under this section may have any recourse by protest or appeal that is given under the customs revenue laws or may have the remedy given by this chapter in cases involving goods refused entry or seized.

**(c) Dilution by blurring; dilution by tarnishment**

**(1) Injunctive relief**

Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction

10

against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

**(2) Definitions**

**(A)** For purposes of paragraph (1), a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:

  **(i)** The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

  **(ii)** The amount, volume, and geographic extent of sales of goods or services offered under the mark.

  **(iii)** The extent of actual recognition of the mark.

  **(iv)** Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

11

**(B)** For purposes of paragraph (1), "dilution by blurring" is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark. In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:

  **(i)** The degree of similarity between the mark or trade name and the famous mark.

  **(ii)** The degree of inherent or acquired distinctiveness of the famous mark.

  **(iii)** The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

  **(iv)** The degree of recognition of the famous mark.

  **(v)** Whether the user of the mark or trade name intended to create an association with the famous mark.

  **(vi)** Any actual association between the mark or trade name and the famous mark.

**(C)** For purposes of paragraph (1), "dilution by tarnishment" is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.

12

SER_2196

**(3) Exclusions**

The following shall not be actionable as dilution by blurring or dilution by tarnishment under this subsection:

   **(A)** Any fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the person's own goods or services, including use in connection with--

   **(i)** advertising or promotion that permits consumers to compare goods or services; or

   **(ii)** identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner.

   **(B)** All forms of news reporting and news commentary.

   **(C)** Any noncommercial use of a mark.

**(4) Burden of proof**

In a civil action for trade dress dilution under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that--

13

**(A)** the claimed trade dress, taken as a whole, is not functional and is famous; and

**(B)** if the claimed trade dress includes any mark or marks registered on the principal register, the unregistered matter, taken as a whole, is famous separate and apart from any fame of such registered marks.

**(5) Additional remedies**

In an action brought under this subsection, the owner of the famous mark shall be entitled to injunctive relief as set forth in section 1116 of this title. The owner of the famous mark shall also be entitled to the remedies set forth in sections 1117(a) and 1118 of this title, subject to the discretion of the court and the principles of equity if--

**(A)** the mark or trade name that is likely to cause dilution by blurring or dilution by tarnishment was first used in commerce by the person against whom the injunction is sought after October 6, 2006; and

**(B)** in a claim arising under this subsection--

**(i)** by reason of dilution by blurring, the person against whom the injunction is sought willfully intended to trade on the recognition of the famous mark; or

14

**(ii)** by reason of dilution by tarnishment, the person against whom the injunction is sought willfully intended to harm the reputation of the famous mark.

**(6) Ownership of valid registration a complete bar to action**

The ownership by a person of a valid registration under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register under this chapter shall be a complete bar to an action against that person, with respect to that mark, that--

**(A)** is brought by another person under the common law or a statute of a State; and

**(B)(i)** seeks to prevent dilution by blurring or dilution by tarnishment; or

**(ii)** asserts any claim of actual or likely damage or harm to the distinctiveness or reputation of a mark, label, or form of advertisement.

**(7) Savings clause**

Nothing in this subsection shall be construed to impair, modify, or supersede the applicability of the patent laws of the United States.

SER_2199

**(d) Cyberpiracy prevention**

**(1)(A)** A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person--

  **(i)** has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

  **(ii)** registers, traffics in, or uses a domain name that--

    **(I)** in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

    **(II)** in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

    **(III)** is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

**(B)(i)** In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to--

  **(I)** the trademark or other intellectual property rights of the person, if any, in the domain name;

16

**(II)** the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

**(III)** the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

**(IV)** the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

**(V)** the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

**(VI)** the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

**(VII)** the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional

17

failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

**(VIII)** the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

**(IX)** the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

**(ii)** Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.

**(C)** In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.

18

**(D)** A person shall be liable for using a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee.

**(E)** As used in this paragraph, the term "traffics in" refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration.

**(2)(A)** The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if--

  **(i)** the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c); and

  **(ii)** the court finds that the owner--

    **(I)** is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or

    **(II)** through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by--

19

**(aa)** sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and

**(bb)** publishing notice of the action as the court may direct promptly after filing the action.

**(B)** The actions under subparagraph (A)(ii) shall constitute service of process.

**(C)** In an in rem action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which--

**(i)** the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located; or

**(ii)** documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain name are deposited with the court.

**(D)(i)** The remedies in an in rem action under this paragraph shall be limited to a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark. Upon receipt of written notification of a filed, stamped copy of a complaint filed by the owner of a mark in a United

20

States district court under this paragraph, the domain name registrar, domain name registry, or other domain name authority shall--

**(I)** expeditiously deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court; and

**(II)** not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court.

**(ii)** The domain name registrar or registry or other domain name authority shall not be liable for injunctive or monetary relief under this paragraph except in the case of bad faith or reckless disregard, which includes a willful failure to comply with any such court order.

**(3)** The civil action established under paragraph (1) and the in rem action established under paragraph (2), and any remedy available under either such action, shall be in addition to any other civil action or remedy otherwise applicable.

**(4)** The in rem jurisdiction established under paragraph (2) shall be in addition to any other jurisdiction that otherwise exists, whether in rem or in personam.

21

No. 21-16029

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**NEO4J, INC., et al.,**

*Plaintiff and Appellee,*

v.

**PURETHINK, LLC, et al.,**

*Defendant and Appellant.*

---

Appeal From a Judgment of the United States District Court
For the Northern District of California
Hon. Edward J. Davila
United States District Judge
N. D. Cal. No. 5:18-cv-07182 EJD

---

**APPELLANTS' OPENING BRIEF**

---

ADRON W. BEENE, CA Bar # 129040
ADRON G. BEENE, CA Bar # 298088
1754 Technology Drive, Ste. 228
San Jose, CA  95110
Tel.: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Joseph A. Hearst, CA Bar # 130286
1569 Solano Ave. #525
Berkeley, CA  94707
Telephone: (510) 528-6863
Facsimile: (510) 280-2556
jahearst@pacbell.net

Attorneys for defendants, cross-complainants and appellants John Mark
Mr. Suhy, PureThink,LLC and iGov, Inc.

# TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................... 1

II.     JURISDICTIONAL STATEMENT ............................................ 3

III.    ISSUES PRESENTED ................................................................ 3

IV.     STATEMENT OF THE CASE .................................................. 4

V.      STATEMENT OF FACTS .......................................................... 7

VI.     SUMMARY OF ARGUMENT ................................................ 15

VII.    ARGUMENT ............................................................................ 17

        A.   Standard Of Review. ...................................................... 17

        B.   Neo4j USA Lacks An Ownership Interest That Would Give It Standing
             To Sue For Trademark Infringement .................................. 18

        C.   Assuming For The Sake Of Argument That Neo4j Usa Had Standing,
             There Was No Infringement Because Defendants' Use Of The Mark
             Was Nominative Fair Use. ............................................. 22

        D.   The Court's Finding That Defendants Engaged In False Advertising And
             False Designation Of Origin Overlooks How Consumers Would View
             The Igov Website. ........................................................ 34

        E.   References To Ongdb As "Free And Open-Source" Are Accurate. ........ 36

        F.   Descriptions Of Ongdb As A "Drop-In" Replacement For An Existing
             Commercially Licensed Distribution Of The Same Version Number
             Of Neo4j Are Accurate.................................................. 40

        G.   The Court's Finding Of False Designation Of Origin Is Fatally
             Flawed. ...................................................................... 43

VIII.   CONCLUSION ........................................................................ 47

ii

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Adobe Systems v. A & S Electronics, Inc.*, 153 F.Supp.3d 1136 (N.D. Cal. 2015) ......28

*Align Technology, Inc. v. Strauss Diamond Instruments, Inc.*,
    2019 U.S. Dist. LEXIS 63616 (N.D. Cal. April 12, 2019) ...........................22, 33

*Allard Enterprises v. Advanced Programming Resources, Inc.*,
    146 F.3d 350 (6th Cir. 1998) ...............................................................................21

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)...............................passim

*Diller v. Barry Driller, Inc.*, No. CV 12-7200 ABC (Ex),
    2012 U.S. Dist. LEXIS 133515 (C.D. Cal. Sep. 10, 2012) ..................................33

*Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213 (9th Cir. 2008)........18

*Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013 (C.D. Cal. 2011).....18

*Interstellar Starship Servs, Ltd. v. Epix Inc.*, 184 F.3d 1107 (9th Cir. 1999) .............17

*MAI Systems Corp. v. Peak Computing, Inc.*, 991 F.2d 511 (9th Cir. 1993) ..............17

*National Licensing Association, LLC v. Inland Joseph Fruit Co.*,
    361 F.Suup.2d 1244 (E.D. Wash. 2004)..............................................................20

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011) .............................................................................46

*Noble House Home Furnishings, LLC v. Floorco Enterprises, LLC*,
    2016 TTAB LEXIS 100 (Trademark Trial & App. Bd. April 4, 2016)...............20

*Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002).............................22

*Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118 (9th Cir. 2014).........................17, 18

*Quabaug Rubber Co. v. Fashion Shoe Co.*, 567 F2d 154 (1st Cir. 1977)...................20

iii

*Scholz v. Migliaccio*, No. C13-1229 JLR,

 2013 U.S. Dist. LEXIS 118334 (W.D. Wash. Aug. 20, 2013)............................29

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) ..........22, 26

*Upper Deck Co. v. Paninia America, Inc.,*

 2021 U.S. Dist. Lexis 71157 (No 20cv185-GPC(KSC), April 13, 2021)............19

*Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992)................................34

*West Florida Seafood, Inc. v. Jet Restaurants, Inc.*, 31 F.3d 1122 (Fed. Cir. 1994) ...18

## STATUTES

15 U.S.C. § 1055..............................................................................19

15 U.S.C. § 1114.........................................................................passim

15 U.S.C. § 1125..........................................................................4, 34

15 U.S.C. § 1127..............................................................................19

17 U.S.C. § 1202...............................................................................5

28 U.S.C. § 1292...............................................................................3

28 U.S.C. § 1331...............................................................................3

28 U.S.C. § 1367...............................................................................3

## RULES

Federal Rules of Appellate Procedure

 Rule 4..................................................................................3

iv

SER_2209

## I.   INTRODUCTION

Plaintiff-appellee Neo4j Sweden AB ("Neo4j Sweden") creates software packages for graph databases, which its parent, appellee Neo4j, Inc. ("Neo4j USA"), distributes and services in this country.  Until recently, the software came in three "flavors": 1) Neo4j Community Edition, which was licensed under the Free Software Foundation's ("FSF's") GPL ("General Public License") open-source license by Neo4j Sweden; 2) Neo4j Enterprise Edition, which was licensed under the FSF's AGPL ("Affero General Public License") by Neo4j Sweden; and 3) Neo4j Enterprise Edition, with a commercial license that Neo4j USA sells.  The source code for these editions was published and available on GitHub.  There were historically no source code differences between the Neo4j Enterprise open-source and commercial offerings.

Appellant John Mark Suhy and his company, appellant PureThink, Inc., were "Solution Partners" with Neo4j.  After a falling out with the Neo4j entities centering around Mr. Suhy's negotiations with the IRS regarding open-source usage rights, Mr. Suhy became a volunteer contributor for a "fork" of Neo4j Enterprise run by the Graph Foundation Inc. ("GFI").[1]  Neo4j USA then sued Mr.

---

[1]      Wikipedia defines a "fork" in software as follows:

"In software engineering, a project fork happens when developers take a copy of source code from one software package and start independent development on it,

*Footnote continues on next page*

1

SER_2210

Suhy and his businesses, PureThink and another entity Mr. Suhy created, iGov,

Inc., for trademark infringement and related claims. The trial court granted

summary judgment on the trademark claims and entered a preliminary injunction

forbidding Mr. Suhy and his companies from using the Neo4j mark in any manner

defined by the court in its ruling.

The court found that Neo4j USA could bring an action for trademark

infringement under 15 U.S.C. § 1114 as the registrant of the mark, notwithstanding

that Neo4j USA is not the actual owner of the mark, which it licenses on a non-

exclusive basis from Neo4j Sweden. The court also found that defendants' use of

the Neo4j mark exceeded that permitted under the nominative fair use doctrine,

and that Mr. Suhy and his entities had engaged in false advertising using Neo4j's

trademarks.

The court's actions ignored or papered over numerous factual disputes

concerning who owned the mark and had a right to bring a trademark action and

concerning defendants' use of the Neo4j mark. The trademark analysis in this case

is exceedingly complex, involving as it does different, similarly-named corporate

entities using the mark, sometimes on free and open-source versions of the

_____

creating a distinct and separate piece of software … Free and open-source software
is that which, by definition, may be forked from the original development team
without prior permission, and without violating copyright law."
https://en.wikipedia.org/wiki/Fork_(software_development).

2

SER_2211

software and sometimes on commercial versions, as well as the scope of defendants' undisputed right to use and describe the open-source versions of Neo4j.  This complexity is especially apparent with respect to the question whether defendants engaged in nominative fair use of the mark to describe their own use of the open-source versions of the software.  The court should have denied the summary judgment and should not have enjoined defendants based upon that summary judgment.

## II.  JURISDICTIONAL STATEMENT

This is an action brought under the Lanham Act and federal copyright statutes.  The court had federal question jurisdiction pursuant to 28 U.S.C. § 1331.  The court had pendent jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

The appeal is from a preliminary injunction; jurisdiction lies in this Court under 28 U.S.C. § 1292(a)(1).  The appeal was filed within 30 days of entry of the preliminary injunction and is timely under Rule 4, Fed. Rules App. Proc.  *See* 9-ER-2160.

## III. ISSUES PRESENTED

1.  Where the evidence shows that a non-exclusive licensee has registered a trademark, but the actual owner of the mark does not control the use of the mark, does the licensee have standing to assert trademark infringement?

3

2. Where the authors of a "fork" of open-source software use the trademark identifying the core of that software to describe their own fork, does the use of the trademark constitute nominative fair use?

3. Where authors of a fork of software describe the fork as an open-source version of named commercial software which also has open-source versions, is there consumer confusion that would justify an injunction against the use of the name that describes both the open-source and commercial versions?

4. Does a description of an open-source fork stating that it uses open source versions of named software and that the products with which defendants worked were drop in replacements for the commercial version mislead consumers, where it is undisputed that defendants' fork *was* based upon open-source versions of the named software and that the products with which defendants worked could run queries just as the commercial version of the software did?

## IV. STATEMENT OF THE CASE

Neo4j USA commenced this action in November 2018. Neo4j Sweden later joined in the copyright cause of action. They filed their third amended complaint ("TAC"), the operative complaint in this appeal, in September 2020. The TAC states claims for trademark infringement under 15 U.S.C. § 1114 (Lanham Act § 32), false designation of origin and false advertising under 15 U.S.C. § 1125(a)

4

SER_2213

(Lanham Act § 43(a)), unfair competition under California law, defamation, invasion of privacy (based upon alleged recording of Neo4j employees by defendant-appellant John Mark Mr. Suhy) and Neo4j's sole claim for copyright infringement under the Digital Millennium Copyright Act, 17 U.S.C. § 1202(b). 2-ER-71-84. All of the causes of action involving trademark and state law unfair competition in the TAC are alleged on behalf of Neo4j USA only. 2-ER-71-89.

In their answer to the original complaint, defendants stated affirmative defenses that the trademark registration was obtained by fraud and that the trademark had been abandoned through naked licensing. The court granted motions for judgment on the pleadings on these affirmative defenses. After these defenses were again raised in the answer to the third amended complaint, the court again struck those defenses.[2] *See* 1-ER-11. Defendants also filed a cross-complaint, which is still pending.

By stipulation approved by the court, the parties agreed to file summary judgment motions on Neo4j USA's trademark-related claims, as well as defendants' counterclaims and affirmative defenses related to abandonment of

---

[2] The questions whether plaintiffs' registration had been obtained through fraud before the Trademark Trial and Appeal Board (which requires actual fraudulent intent) and whether plaintiffs' registration was invalid because not obtained by the actual owner are different from those presented in this appeal, and the trial court's resolution of the fraud issue does not foreclose the issues regarding standing and trademark validity discussed in this brief.

5

trademark, cancellation of trademark and fair use, in a Phase One, reserving other claims for a Phase Two. Certain defenses to trademark infringement, such as unclean hands, are also reserved for Phase Two.

Plaintiffs filed their motion for summary judgment as to the Phase One issues on December 11, 2020; defendants filed their opposition and their own motion for summary judgment on January 15, 2021. By order dated May 18, 2021, the court granted summary judgment to plaintiffs and preliminarily enjoined defendants from: (1) infringing on the Neo4j mark, (2) referring to ONgDB (Open Native graph Database, the name for the fork of Neo4j Mr. Suhy helps with as a volunteer contributor) as a "free and open-source drop-in replacement of Neo4j Enterprise Edition," (3) representing that the Neo4j Enterprise Edition had been released only under the AGPL ("Affero General Public License"), or (4) representing that Neo4j Sweden's addition of what the parties refer to as the Commons Clause to the AGPL violated the terms of the AGPL, (5) distributing any advertisement or literature that used the Neo4j mark to advertise or promote ONgDB in "any way that suggests sponsorship or endorsement by Neo4j USA or Sweden," (6) advertising or representing in any way "tending to falsely describe or represent [defendants'] goods as being Neo4j products" or offering such goods in commerce, and (7) aiding any other person or entity in engaging in the conduct enjoined. 1-ER-37.

6

PureThink, iGov and Mr. Suhy filed their notice of appeal on June 16, 2021.

9-ER-2159.

## V.  STATEMENT OF FACTS

Neo4j Sweden created and supports a graph platform for connected data

distributed under the Neo4j mark.  Sweden's software initially, and for many years,

was distributed free under the Free Software Foundation's open-source GPL

(General Public License) and AGPL (Affero General Public License) licenses.  6-

ER-1378, ¶¶ 5-7.  Because Neo4j was free and open-source, its use grew widely;

contributors created more than 2000 forks/derivatives of the Neo4j software.

Neo4j Sweden decided to monetize its software by creating commercial

versions of its program.  Neo4j Sweden organized Neo Technology, Inc. in the

United States, which eventually changed its name to Neo4j, Inc. ("Neo4j USA").

Neo4j USA then became the corporate parent of Neo4j Sweden.  Neo4j Sweden

granted Neo4j USA a non-exclusive license to use the Neo4j mark in the United

States.  11-ER-2414.  Notwithstanding that it was neither an owner nor exclusive

licensee, Neo4j USA obtained a United States registration for the Neo4j mark.  2-

ER-189.

Prior to November 2018, Neo4j offered free open-source versions known as

Neo4j Community Edition (sometimes, hereafter "Neo4j CE") under the GPL open

source license and Neo4j Enterprise Edition (sometimes, hereafter "Neo4j EE")

7

SER_2216

under the AGPL open source license. 6-ER-1368 ¶¶ 12-14; 6-ER-1369 ¶¶ 6-8. Neo4j USA also offered a commercial edition with commercial support also (confusingly) named Neo4j Enterprise Edition (sometimes, hereafter "Neo4j CEE"). 6-ER-1368, ¶¶ 5-8. Historically, there was no difference between Neo4j EE under its AGPL open-source license and Neo4j EE under its commercial license; the latter was simply packaged and sold as a support solution. *See* 6-ER-1369 ¶ 9. Until Neo4j Enterprise 3.5.0 was released, Neo4j Enterprise open-source distributions and Neo4j Enterprise commercially licensed distributions were compiled from the same official Neo4j public GitHub repository. 6-ER-281.

Up through the "beta" and testing versions of Neo4j EE version 3.4, all Neo4j EE products were offered on an open-source basis under the AGPL license; later, when Neo4j officially released Neo4J EE 3.4, it added restrictions on the AGPL through what the parties referred to as the "Commons Clause." *See* 6-ER-1370, ¶ 11. The new terms prohibited the non-paying public from engaging in commercial resale and certain support services.[3] 6-ER-1370, ¶ 11; *see* 6-ER-1415 (text of Commons Clause). Neo4j USA released Neo4j EE versions 3.5 and later under a commercial license only, and Neo4j Sweden no longer released the enterprise source code to the public on the Neo4j GitHub repository. 6-ER-1371, ¶

---

[3] The propriety of adding the Commons Clause to the AGPL license was a matter of dispute and is discussed further in the Argument.

8

13.  Neo4j software under the unmodified AGPL license, through version 3.4 beta and testing versions, is still in use and available under that license at GitHub to this day.  *See* 6-ER-1369, ¶ 9.

John Mark Suhy's company, PureThink, became a Neo4j reseller under a Solution Partner Agreement ("SPA") with Neo4j USA in 2014, receiving a non-exclusive license to use the Neo4j mark.  2-ER-197.  PureThink, with Neo4j's approval, designed and developed a government edition that would streamline government procurements.  PureThink offered this software package under the name Neo4j Government Edition and had an exclusive agreement to resell it to the government.  *See* 8-ER-2085.

Neo4j USA had been trying to get the IRS to purchase a Neo4j EE commercial license.  *See* 1-ER-6.  As the procurement deadline loomed, the IRS informed PureThink that it was not interested in purchasing a commercial license with support.  Rather than lose the possibility of a subscription from the IRS, Mr. Suhy informed Neo4j USA that he wanted to build the solution the IRS needed during the first year, so that follow up years could generate commercial license revenues.  USA agreed, and PureThink entered into an agreement with the IRS and signed a contract for consulting services to build out a solution for them.  9-ER-2087, 2090.

9

As the initial IRS contract was ending, the IRS informed Mr. Suhy that government policy was to use open-source software to save taxpayer dollars. The IRS asked Mr. Suhy about the Neo4j open-source license. Neo4j USA instructed Mr. Suhy to lie and tell the IRS that it could not use open-source versions of the software. USA contacted the IRS and informed it that it could not use Neo4j EE in any version. Mr. Suhy, on the other hand, refused to lie and informed the IRS that Neo4j EE was available under an open-source license for version 3.4 and earlier, leading to a rift between Mr. Suhy and Neo4j USA. As a result, Neo4j USA terminated the SPA agreement with PureThink.

Neo4j USA retaliated against Mr. Suhy and informed the IRS that PureThink could not provide any services on open-source versions of Neo4j because the SPA had a three-years-after-termination bar on providing services. 7-ER-1660-62. Because the IRS was still only interested in open-source versions, Mr. Suhy set up a new company, iGov, Inc., to be able to work with open-source versions of the software.

After PureThink's termination, Mr. Suhy and iGov changed direction and focused on offering consulting services focused on Neo4j and forks of Neo4j such as GFI's ONgDB. Mr. Suhy created a new offering called the Government Package for Neo4j which was marketed to government agencies as a consulting package. *See* 2-ER-235. It provided consulting, support, and tools focused

10

specifically on government needs relating to solutions development around Neo4j open-source software.

iGov's website stated:

The principle [*sic*] behind PureThink and the Government Package has created a new corporate entity called iGov Inc.**, which is not a Neo4j Solution Partner. Because iGov Inc. is not a solution partner**, it can offer packages at great cost saving to US Government Agencies as it has no restrictions on working with Neo4j Enterprise **open-source licenses**.

...

iGov Inc's new Government Package for Neo4j can be added to any Neo4j instance making it a "Government Edition." By default, all Government Packages for Neo4j now come[] with Neo4j Enterprise included under it's [*sic*] open-source license!

2-ER-235 (emphasis added).

The iGov website noted that it offered a "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise." 2-ER-235; 2-ER-253. The website stated that iGov was "the only US Federal contractor providing Neo4j Enterprise binaries packaged with it's [*sic*] free Open-source License!" 2-ER-264. The website also used Neo4j in URLs and displayed a "Request Procurement Document Package" link with an email address of mailto:Neo4j@igovsol.com. 5-ER-946.

The court below stated that "[i]t is undisputed that PureThink and iGov initially marketed a product called 'Neo4j Enterprise,' and a 'Government Package for Neo4j,' before rebranding Neo4j Enterprise as ONgDB." 1-ER-21. This

11

statement mischaracterizes both what iGov and PureThink marketed and who controlled ONgDB. iGov offered consulting services, not software products. There is no evidence that iGov ever offered Neo4j Enterprise alone—it marketed the "Government Package for Neo4j" by stating, in part, that "iGov Inc.'s open-source enterprise packages provide a better value than Neo4j Enterprise commercial support subscriptions because 100% of the cost goes to support and development services, not un[n]ecessary and more restrictive commercial licenses," and "[w]e offer the same support features and SLAs as the Neo4j Enterprise commercial subscriptions offered by Neo4j Inc. partners, *but for the open-source licenses enterprise distributions*." 4-ER-935; 5-ER-937 (emphasis added). In other words, the iGov website made clear that it was *not* offering the commercially-licensed version of Neo4j EE, but rather a consulting package focused on open-source-licensed versions of Neo4j EE or forks such as GFI's ONgDB. Further, the website stated that iGov packages included an optional Neo4j Enterprise distribution that iGov had compiled for the community from the unmodified source code taken directly from Neo4j Sweden's official GitHub repository. 2-ER-276, 279.

Following release of Neo4j EE version 3.5, which Neo4j USA offered only in a commercial version, Brad and Ben Nussbaum, owners of Atom Rain, Inc. and GraphGrid, Inc., formed Graph Foundation, Inc. ("GFI"), the purpose of which

12

was to develop Neo4j on a non-profit basis using open-source versions of the software.[4] 2-ER-314, 315 . The fork of Neo4j which GFI eventually created was named ONgDB (Open Native Graph Database).

The Court's statement that PureThink and iGov had "rebranded" Neo4j Enterprise as ONgDB is not supported by the record. GFI created and controlled ONgDB; there is no evidence PureThink or iGov had anything to do with the way GFI might have marketed ONgDB. Rather, the iGov website recommended ONgDB for clients who did not need the support solutions offered either by iGov or Neo4j USA. 4-ER-935. The website suggested that consumers who did not want to obtain a commercial license for Neo4j Enterprise could use ONgDB as a fork of Neo4j that offered many of the same features as Neo4j Enterprise. 4-ER-935.

GFI began promoting ONgDB, which was available for free. 6-ER-1315, 1322. Mr. Suhy, as a volunteer contributor, replaced the modified AGPL license (*i.e.*, the AGPL license with the Commons Clause) under which Neo4j Sweden released Neo4j EE 3.4 with the unmodified AGPL because he believed that the

---

[4]    The Neo4J entities sued GFI at the same time as PureThink, iGov and Mr. Suhy. GFI settled out shortly before the summary judgment was entered.

13

Commons Clause was not a permitted change for the AGPL.[5]  3-ER-478; 7-ER-1651, ¶ 29.  The propriety of this change is discussed in the Argument.

The "landing page" for GFI's ONgDB website was titled "ONgDB—Neo4j Enterprise Fork: Graphs for everyone."  4-ER-861.  Mr. Suhy promoted GFI's ONgDB fork of Neo4j as "100% free and open" without the limitations imposed by the commercially licensed edition of Neo4jEE v. 3.5.x.  *See, e.g.*, 4-ER-871.  GFI's ONgDB website further declared that "ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number."  4-ER-915.  On the "downloads" page, GFI again described ONgDB 3.5.5 as a "drop-in replacement for Neo4j Core and Enterprise 3.5.5."[6]  iGov's website made similar statements—but noted that ONgDB was a drop in replacement for Neo4j Community and Neo4j Enterprise commercial distributions.  5-ER-1012.  Neo4j Community Edition does not have enterprise features.

By December 2020, ONgDB v 3.5.1 had been downloaded over 14,000 times.  *See* 1-ER-10.  Neo4j USA provided evidence that a handful of customers

---

[5]     Mr. Suhy only removed the Commons Clause from license texts that indicated that the Free Software Foundation held the copyright and which had directions to users to insert the AGPL content verbatim.  7-ER-1651, ¶ 29.  Other contributors later may have removed the Commons Clause from other licenses.

[6]     The parties disagreed about what a "drop-in replacement" actually means—we discuss this dispute in the Argument.

14

SER_2223

who encountered issues with ONgDB have directed questions to Neo4j USA.  5-ER-1138, 1162, 1170, 1186.

## VI. SUMMARY OF ARGUMENT

The court determined that Neo4j USA had standing to bring a trademark infringement claim notwithstanding that it is not the owner or exclusive licensee of the Neo4j mark.  It did so based upon the "related companies doctrine," which, in certain circumstances, allow uses by a related entity to inure to the benefit of the trademark registrant.  But the related companies doctrine does not apply here because Neo4j Sweden, the owner of the mark, did not control the use of the mark by Neo4j USA.

Even assuming that Neo4j USA had standing, the court's conclusion that defendants had infringed misapplied the nominative fair use doctrine.  Under that doctrine, a use of a trademark to describe plaintiffs' mark by the defendants is not infringing.  The court rejected application of the doctrine here because it believed that defendants were misusing plaintiffs' mark to dupe consumers into believing that the products and services defendants offered were somehow affiliated with plaintiffs.  However, the court overlooked the context of how open-source software is used.  Defendants here described their offerings as based on open-source versions of Neo4j.  That was an accurate description of what plaintiffs offered, and the language of defendants' websites made clear that defendants worked only with

15

open-source versions of Neo4j. Thus, the nominative fair use doctrine should have prevented a finding of infringement.

The court also found that defendants had engaged in false advertising, largely based upon its conclusion that: (1) statements made by defendants to the effect that the products with which defendants worked were free and open source versions of or alternatives to commercially licensed versions of Neo4j, and (2) statements that descriptions of the products with which defendants worked were "drop in" replacements for Neo4j were misleading. The first conclusion is faulty because the defendants made clear on their websites and elsewhere that defendants were not affiliated with Neo4j USA. The second conclusion is erroneous because the court assumed that the phrase "drop in replacement" meant that the products with which defendants worked were feature-for-feature duplicates of Neo4j commercial versions, whereas it is a jury question what the phrase meant. The fact that defendants described the product offered by GFI as a drop in replacement for both commercial and open source versions of Neo4j, where those versions differ in features, implies that defendants were not offering feature-for-feature replacements.

Finally, the court's finding that defendants had engaged in false designation of origin is faulty because, applying the *Sleekcraft* factors, there is little likelihood

16

of consumer confusion.  For that reason, the court should not have held defendants liable for false designation of origin.

## VII.   ARGUMENT

### A.     Standard Of Review.

A grant of summary judgment is reviewed de novo.  We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. … The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial.

*MAI Systems Corp. v. Peak Computing, Inc.*, 991 F.2d 511, 516 (9th Cir. 1993).

"Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena."  *Interstellar Starship Servs, Ltd. v. Epix Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999).

This Court usually reviews a preliminary injunction under an abuse of discretion standard, which means that it reviews questions of law *de novo* and determinations of fact under the clearly erroneous standard.  *E.g.*, *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1123 (9th Cir. 2014).  In this instance, however, the court's preliminary injunction is "inextricably bound up" with its legal resolution of the summary judgment; this Court therefore exercises plenary review. *MAI Systems*, 991 F.2d at 516.

SER_2226

### B.  Neo4j USA Lacks An Ownership Interest That Would Give It Standing To Sue For Trademark Infringement

To establish standing for a claim under 15 U.S.C. § 1114, the plaintiff must be "(1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark." *E.g. Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008). Neo4j USA is the registrant of the mark in the United States, which gives rise to a rebuttable presumption that it is the owner of the mark. *Pom Wonderful*, 775 F.3d at 1124. Although the presumption is a strong one, it may be overcome by a preponderance of the evidence. *E.g.*, *West Florida Seafood, Inc. v. Jet Restaurants, Inc.*, 31 F.3d 1122, 1125 (Fed. Cir. 1994). "Under the Lanham Act, registration of a trademark creates a rebuttable presumption that the mark is valid, but the presumption evaporates as soon as evidence of invalidity is presented." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013, 1022 (C.D. Cal. 2011).

Because the evidence showed that Neo4j Sweden was the owner and user of the mark at the time of registration,[7] the district court relied upon the "related companies doctrine" to show that Neo4j USA had an ownership interest which gave it standing to sue. Under that doctrine,

---

[7]  Again, Neo4j Sweden was not named as a plaintiff in any of the trademark causes of action in the TAC.,

SER_2227

> Where a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration, provided such mark is not used in such manner as to deceive the public. If first use of a mark by a person is controlled by the registrant or applicant for registration of the mark with respect to the nature and quality of the goods or services, such first use shall inure to the benefit of the registrant or applicant, as the case may be.

15 U.S.C. § 1055. The court below also quoted 15 U.S.C. § 1127, which defines a "related company" as "any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used." 1-ER-17-18. The court failed to consider how these definitions applied in this case.

Construed together, the provisions cited above state that the use of a mark by a "related company" inures to the benefit of an applicant or registrant so long as the owner of the mark (here, Neo4j Sweden) controls the nature and quality of the goods and services on which the mark was used at the time of the application. However, Neo4j Sweden, the owner of the mark, did *not* control the applicant's (*i.e.*, Neo4j USA's) use of the mark in the United States. Rather, the license from Neo4j Sweden to Neo4j USA was and is non-exclusive. 11-ER-2414.

A non-exclusive license, by definition, is one where the owner does *not* control the nature and quality of the goods or services on which the mark is used. *E.g.*, *Upper Deck Co. v. Paninia America, Inc.* 2021 U.S. Dist. Lexis 71157 (No 20cv185-GPC(KSC), April 13, 2021) at *11 ("standing may exist where the

19

SER_2228

licensing agreement both [1] grants an exclusive license and [2] grants to the exclusive licensee a property interest in the trademark, or rights that amount to those of an assignee") (emphasis in original)).  "Where the license is non-exclusive, the licensee does not have standing to bring an infringement action." *Quabaug Rubber Co. v. Fashion Shoe Co.*, 567 F2d 154, 159-60 (1st Cir. 1977); *National Licensing Association, LLC v. Inland Joseph Fruit Co.*, 361 F.Suup.2d 1244, 1254 (E.D. Wash. 2004) ("[w]here a licensing agreement does not grant the licensee a property interest in the mark or otherwise assign to the licensee the registrant licensor's ownership right, the licensee, even if exclusive, cannot enforce the mark" under section 1114).

As the Trademark Trial and Appeal Board has explained, where a parent corporation uses the mark, controls the purported owner "(and not vice versa)," and controls the nature and quality of the goods sold under the mark, the use of the mark by the parent corporation inures to the benefit of the subsidiary, as registrant. *Noble House Home Furnishings, LLC v. Floorco Enterprises, LLC*, 2016 TTAB LEXIS 100 (Trademark Trial & App. Bd. April 4, 2016).  In this case, however, the owner of the mark, the subsidiary Neo4j Sweden, did not control the nature and quality of the goods offered under the mark by the registrant (Neo4j USA); Neo4j USA therefore is not entitled to the benefit of the related companies doctrine and lacked standing to bring an action under 15 U.S.C. § 1114.

20

Moreover, and perhaps more important, establishing whether Neo4j USA's registration is valid does not necessarily indicate that it is the *owner* of the mark. Ownership does not turn on registration (or registrability). *E.g.*, *Allard Enterprises v. Advanced Programming Resources, Inc.*, 146 F.3d 350, 356 (6th Cir. 1998) ("[o]ne of the bedrock principles of trademark law is that trademark or service mark ownership is not acquired by federal or state registration. … rights flow only from prior appropriation and actual use in the market") (internal citation and quotation marks omitted). Here, the related companies doctrine defines how an owner may take advantage of prior use of a trademark by a related company to obtain registration. It says nothing about ownership—and ownership of the Neo4j mark lies with Neo4j Sweden *alone*.[8]

---

[8] The court below seemed to believe that ownership of a mark can be established by the relationship and assumptions of the parties alone, stating that the "fact that Neo4j USA registered the … Mark can … be understood as evidence of the intention of the parties as to ownership of the mark." 1-ER 19. But ownership is established by the license agreement, which states that Neo4j Sweden owns the mark. Moreover, the notion that Neo4j Sweden has foregone ownership is belied by the facts that (1) it has never assigned rights to the mark in the United States to Neo4j USA, and (2) Neo4j Sweden has registered as owner of the mark outside the United States.

21

    **C.**    **Assuming For The Sake Of Argument That Neo4j Usa Had Standing, There Was No Infringement Because Defendants' Use Of The Mark Was Nominative Fair Use.**

Even assuming, for the sake of argument, that Neo4j USA had standing to bring an action under 15 U.S.C. § 1114, the court's finding of infringement was erroneous because it failed to analyze properly whether defendants' uses of the mark were nominative fair use. As the court below noted, when a nominative fair use defense is raised, the fair-use analysis replaces the traditional likelihood of consumer confusion analysis. *E.g.*, *Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002).

> In nominative fair use, the defendant uses the trademarked term not to describe its product, but to describe the plaintiff's. 'Nominative fair use of a mark—where the only word reasonably available to describe a particular thing is pressed into service—lies outside the strictures of trademark law … such use is fair because it does not imply sponsorship or endorsement by the trademark holder.'

*Align Technology, Inc. v. Strauss Diamond Instruments, Inc.*, 2019 U.S. Dist. LEXIS 63616 (N.D. Cal. April 12, 2019).

> In cases where a nominative fair use defense is raised, we ask whether (1) the product was "readily identifiable" without use of the mark; (2) defendant used more of the mark than necessary; or (3) defendant falsely suggested he was sponsored or endorsed by the trademark holder.

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175-76 (9th Cir. 2010). A defendant asserting nominative fair use need only show that it used the

22

mark to refer to the trademarked good. The burden then reverts to the plaintiff to show a likelihood of confusion. *Id.* at 1183.

In evaluating the nominative fair use factors, the district court decided that Mr. Suhy and iGov were using the Neo4j mark "to create the misleading perception that Defendants' products *were* Plaintiffs' products." 1-ER-22 (emphasis in original). In reaching this conclusion, the district court improperly failed to consider the context of how iGov used the Neo4j mark.

iGov's use of the Neo4j mark was precisely the type that the nominative fair use doctrine was intended to address. First, it would be difficult, if not impossible, to describe iGov's consulting services without informing users that the support packages iGov offered focused on either Neo4j Sweden's open-source packages or GFI's ONgDB (a fork Neo4j using open-source versions of Neo4j), without using the Neo4j mark. And use of the entire Neo4j mark is necessary to describe to consumers what it was that iGov was offering—consulting services using either free open-source versions of Neo4j or ONgDB.

The district court decided that iGov's use of the Neo4j mark was not nominative fair use principally because it concluded that iGov suggested that it was offering "genuine" versions of Neo4j Enterprise. 1-ER-21. The court noted that "neither product [*i.e.*, Neo4j Government Package and Neo4j Enterprise] was in fact a Neo4j USA product." 1-ER-21. But the evidence to which the court

23

refers as proving this proposition illustrates how the court was misled. The court stated that iGov's website "assured potential customers … that 'Neo4j Enterprise' was 'the same official Neo4j Git[H]ub repositories as Neo4j Inc. uses for their paid commercial licensed builds' except distributed under an open-source license." 1-ER-21-22.

Noting that the "build" iGov used was the source code used by the "same official Neo4j GitHub repositories as Neo4j Inc. uses" does not imply that the open-source versions of Neo4j which iGov supported are identical to the "official" Neo4j CEE. Rather, iGov was informing potential customers that, when it "compiled" software from GitHub for Neo4j Enterprise, it would pull that software from the "official Neo4j" repositories without modification.[9] 2-ER-248; 5-ER-991. In other words, iGov was stating that both it and Neo4j USA compiled their code from the same repositories on GitHub. There was no showing that this statement was untrue or misleading. By concluding that neither of the products referenced on the iGov site were "in fact a Neo4j USA product" (1-ER-21), the

---

[9]     Wikipedia defines "compiler" as follows:

In computing, a compiler is a computer program that translates computer code written in one programming language (the source language) into another language (the target language). The name "compiler" is primarily used for programs that translate source code from a high-level programming language to a lower level language (e.g. assembly language, object code, or machine code) to create an executable program.

24

court answered the wrong question—the question is not how Mr. Suhy compiled the software offered by iGov, but whether iGov's uses of Neo4j suggest sponsorship by Neo4j. Both Neo4j USA and iGov were using Neo4j software licensed from Neo4j Sweden.

The trial court ignored how products such as Neo4j are identified in the open-source community. Like any user compiling the source code from GitHub into a runnable distribution, iGov would have to download the source code from Neo4j Sweden's repository of Neo4j on GitHub and compile it. And to describe the software, iGov told users that the source code that was used to create the compiled application was taken directly from Neo4j Sweden's GitHub repository and was under the open-source license.

Taken together, these statements by iGov indicated that it was offering a consulting package aimed at Neo4j, and it offered to compile open source Neo4j Enterprise from the official Neo4j GitHub repositories for users who did not already have Neo4j or ONgDB.

> When a domain name making nominative use of a mark does not actively suggest sponsorship or endorsement, the worst that can happen is that some consumers may arrive at the site uncertain as to what they will find. Outside the special case of trademark.com, or domains that actively claim affiliation with the trademark holder, consumers don't form any firm expectations about the sponsorship of a website until they've seen the landing page --if then. This is sensible agnosticism, not consumer confusion. … So long as the site as a whole does not suggest sponsorship or endorsement by the trademark holder, such momentary uncertainty does not preclude a finding of nominative fair use.

25

*Toyota Motor Sales*, 610 F.3d at 1179 (9th Cir. 2010).

The question is thus whether iGov's "site as a whole … suggest[s] sponsorship or endorsement" by Neo4j USA. And references to "Neo4j Enterprise" and "Government Package for Neo4j," in the context of the iGov website as a whole, and in the context of how open-source software is created and described, do not suggest such sponsorship (or, at worst, the issue is one for a jury).

The court did not properly weigh the impact of the actual language used on the iGov "landing page," which stated prominently:

> The principle [*sic*] behind PureThink and the Government Package has created a new corporate entity called iGov Inc., ***which is not a Neo4j Solution Partner.***
>
> ***Because iGov Inc. is not a solution partner***, it can offer packages at great cost saving to US Government Agencies as it has no restrictions on working with Neo4j Enterprise ***open-source licenses***.

2-ER-235, 2-ER-261 (emphasis added). (Another section of the iGov website states that "iGov Inc has no relationship with Neo4j Inc." 2-ER-248). As noted, "consumers don't form any firm expectations about the sponsorship of a website until they've seen the landing page --if then." *Toyota Motor Sales*, 610 F.3d at 1179. The landing page here clearly does not suggest sponsorship by Neo4j USA (or Sweden, for that matter).

26

In light of this prominent language, the notion that iGov's website could create confusion (especially deliberate confusion!) about whether iGov's offerings were sponsored by Neo4j seems perverse. Yes, the website identified Neo4j, but it simply stated undisputed facts—which is that there are open-source versions of Neo4j that iGov's prospective customers were free to use, and that if they preferred to use GFI's ONgDB, they were free to do that as well. How iGov was supposed to communicate this information without using the Neo4j mark is not explained by the district court.

> This point is made directly on the iGov website:
>
> If you've been misled by Neo4j Inc sales people regarding your rights to use Neo4j Enterprise AGPL distributions with no limitations, please contact us. You can also view a few FAQs we have put together for our US Federal clients. Neo4j open-source FAQs (downloads.html#neo4j-os-faqs)
>
> ...
>
> If you want an older Neo4j Enterprise open-source distribution not found on the site, please email info@graphstack.io (mailto:info@graphstack.io) and tell us what version you would like. We are happy to package it for you then make it available on this site for everyone to benefit from.

5-ER-989. iGov is thus telling customers that there are versions of Neo4j Enterprise that are open-source, and that iGov can compile the customer's preferred version from the GitHub repositories. iGov was certainly *not* telling customers that it was offering instances of the commercial version of Neo4j Enterprise Edition.

27

The facts here are thus very different from those in *Adobe Systems v. A & S Electronics, Inc.*, 153 F.Supp.3d 1136, 1143 (N.D. Cal. 2015), on which the court relied. In that case, the defendant was selling Adobe products it had no right to sell, and its use of the "Adobe" mark was intended to mislead consumers into believing that the defendant was an authorized Adobe reseller. In this case, by contrast, the iGov website informed consumers "right off the bat" that it was not a "Neo4j Solution Partner," and that the Neo4j versions it used were "Neo4j Enterprise open-source licenses." 2-ER-235. As long as Neo4j makes instances of its program available open-source, it can hardly complain that the authors of forks using those open-source versions state the truth—*i.e.*, that they are based on open-source Neo4j versions.

This problem of describing a product that is based upon Neo4j, where the product makes legitimate use of the Neo4j code, is not well answered by the "standard" nominative fair use analysis. *Of course* a fork of Neo4j based upon an open-source version of the software describes itself by using the Neo4j mark. The distinction in this case is that the language on the iGov website makes clear that it offers a consulting package that is not offered by or endorsed by Neo4j USA. At the very least, the trial court should have left it to a jury to determine if the

28

language employed on the website adequately conveyed that the product being offered did not come from Neo4j USA.[10]

The trial court applied the same analysis to other uses of Neo4j that appeared on iGov's websites. One of the "sub-pages" within the website was igovsol.com/neo4j.html. 2-ER-245. In addition, Mr. Suhy and iGov used neo4j@igovsol.com as an email address for persons to inquire about iGov's consulting packages or Learn about GFI's ONgDB. 2-ER-244. The trial court stated that "[n]othing about the use of the Neo4j Mark in the URL or email can reasonably be interpreted to refer to Plaintiff's products."[11] 1-ER-22. But again, that conclusion overlooks the question whether the entire look and feel of the website would give the impression that Mr. Suhy and iGov were selling Neo4j USA's commercial versions of the program, as opposed to informing users that iGov offered a consulting package focused on Neo4j which included an optional Neo4j Enterprise package iGov had compiled from unmodified source code from Neo4j Sweden's official GitHub repository. Given that the website prominently

---

[10] The court also relied on what it characterized as instances of actual confusion to show the nominative fair use defense was inapplicable. Such confusion, to the extent it could be said to exist, does not apply to the nominative fair use defense. *E.g.*, *Scholz v. Migliaccio*, No. C13-1229 JLR, 2013 U.S. Dist. LEXIS 118334, at *6 (W.D. Wash. Aug. 20, 2013).

[11] While not a part of the record, we note that there are literally thousands of forks/derivatives of Neo4j available on GitHub which use Neo4j as part of their URL. *See, e.g.*, https://github.com/search?p=5&q=neo4j&type=Repositories

29

featured a statement that iGov was not a "Neo4j Solution Partner" (2-ER-235), and goes further to state "iGov Inc is not a partner or reseller of Neo4j Inc and is not under any open-source usage prohibitions that resellers and partners may be under" (2-ER-235), a reasonable consumer would be aware that what was offered was not a commercial version of the programs offered by Neo4j USA.

The conclusion that iGov's references to Neo4j were not nominative fair use is also questionable in light of the care that consumers would use in identifying the various versions of Neo4j. Neo4j is a sophisticated database program which can cost (for those who use the non-open-source versions) hundreds of thousands of dollars. Any person looking to use the iGov site or GFI's ONgDB would *have* to be aware that, when iGov stated that it offered consulting on a free and open-source version and was not a Neo4j solution partner, it was informing users that GFI had created a fork of Neo4j called ONgDB which was not a commercial Neo4j licensee, and that iGov Inc only offered consulting packages focused on Neo4j open source licenses and forks of Neo4j such as GFI's ONgDB.

We recognize, of course, that the "sophistication of consumers" is one of the factors to be weighed in determining "regular" trademark infringement, rather than nominative fair use. *See, e.g. AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979) ("*Sleekcraft*") (noting that the "degree of care likely to be exercised by the purchaser" is one of the factors to be considered in determining if a

30

particular use infringes).  But in circumstances where courts are attempting to determine if consumers would conclude that iGov or GFI's ONgDB was sponsored by or affiliated with Neo4j USA because of the use of the Neo4j name on the iGov website, it is surely relevant that persons likely to be viewing the website would know, based on the information on iGov's website and general principles of open-source software, that: (1) Neo4j Sweden had open-source versions, (2) iGov was not affiliated with Neo4j USA, (3) ONgDB was a fork authored by GFI based on open-source versions of Neo4j Sweden's open-source versions, and (4) the commercial versions of Neo4j might cost hundreds of thousands of dollars, while what iGov was offering was consulting packages focused only on free and open-source Neo4j and Neo4j forks.  In fact, that is precisely what is conveyed by the website.

The court below asserted that defendants' use of the Neo4j mark went beyond

> what is necessary to identify ONgDB as a "fork" of Neo4j by (1) extensively using … "Neo4j" and "Neo4j Enterprise" on [the] iGov and PureThink websites without proper trademark notices, (2) using embedded "Neo4j" links to Neo4j USA's website and GitHub repository on their websites; (3) hyperlinking to Plaintiffs' build instructions, support documentation and change logs containing the Neo4j Mark rather than creating and hosting their own with the ONgDB name; and (4) using … "Neo4j Enterprise" and "ONgDB' interchangeably to promote ONgDB on their websites.  The Court finds these embedded links to Plaintiffs' sites and links to Plaintiffs' documentation, along with the repeated references to "Neo4j," including in the title of the products themselves, create the misleading perception that Defendants and Plaintiffs are affiliated.

31

SER_2240

1-ER-23-24.

The district court failed to recognize that iGov does not control or offer a product called ONgDB and only offers consulting packages focused on open source Neo4j. The court also usurped the role of the jury, which should have been allowed to consider whether the uses of the mark were nominative fair use.

It is hardly surprising that references to the free and open-source versions of Neo4j would refer to those versions on iGov's website, just as references to Neo4j's "builds" or support documentation would refer to those documents on Neo4j's website or on GitHub. The court's statement that "[a]ny reasonable consumer reading about Neo4j Enterprise would conclude that they are getting official Neo4j EE, or in the case of the 'Government Package for Neo4j,' consumers would conclude they are getting Neo4j EE in a specialized government package" (1-ER-22) misreads the actual language. The court simply does not explain how a website which states prominently on its landing page that iGov is offering a consulting package with an optional Neo4j EE edition that iGov compiled directly from unmodified source code on Neo4j's GitHub repository could be said to mislead consumers. Nor does the court explain how users are misled when the website informs users immediately that iGov "is not a Neo4j Solution Partner" (2-ER-235), and states elsewhere that "iGov Inc is not a partner or reseller of Neo4j Inc and is not under any open source usage prohibitions that

32

resellers and partners may be under" (5-ER-1007). In light of this language, the court's assertion that consumers were misled to believe "that Defendants and Plaintiffs are affiliated" (1-ER-24) is unsupportable.

In a sense, the court below was correct that references to GFI's ONgDB and Neo4j are mixed up on the iGov website. The website was attempting to inform consumers that ONgDB was a viable alternative to Neo4j using earlier Neo4j versions to create a new graph database, ONgDB. Informing consumers that the "core" of Neo4j open-source editions had been used in ONgDB is not the same thing as saying that ONgDB and the commercial versions of Neo4j were identical, which the trial court seemed to believe.[12]

---

[12]    The court's determination that defendants' use of the Neo4j mark was not nominative fair use does not necessarily determine whether defendants' use of the mark is forbidden. Even if a particular use of a mark does not satisfy the conditions for nominative fair use, the court is nevertheless obliged to consider if the use of the mark is likely to cause confusion under *Sleekcraft*. *E.g.*, *Align Technology,* 2019 U.S. Dist. LEXIS 63616, at *22; *see also, Diller v. Barry Driller, Inc.*, No. CV 12-7200 ABC (Ex), 2012 U.S. Dist. LEXIS 133515, at *9 (C.D. Cal. Sep. 10, 2012) (noting that the court must evaluate nominative fair use before turning to *Sleekcraft* factors). The court here considered the *Sleekcraft* factors in examining the issue of false designation of origin and we evaluate the court's conclusions in that context below.

33

**D.    The Court's Finding That Defendants Engaged In False Advertising And False Designation Of Origin Overlooks How Consumers Would View The iGov Website.**

In addition to finding trademark infringement under 15 U.S.C. § 1114, the court below determined that defendants had engaged in false designation of origin and false advertising under 15 U.S.C. § 1125. A plaintiff need not have a direct ownership interest in a mark to bring a claim for false advertising under § 1125. Rather, to maintain a claim under § 1125(a), the plaintiff must show that it has a commercial interest in the allegedly misused mark that is "likely to be damaged" by the defendant's use of the mark. *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1109 (9th Cir. 1992).

The court below stated that "[d]efendants have made numerous misrepresentations in their advertisement and promotion of ONGDB." 1-ER-26. According to the court, these misrepresentations consist of two separate types: (1) that ONgDB and Neo4j Enterprise are "free and open-source" versions of or alternatives to commercially licensed Neo4j EE; and (2) statements that ONgDB is a "drop-in replacement" for an existing commercial license distribution of the same version number of Neo4j. 1-ER-26. In each instance, the court ignored that defendants did not have a product called ONgDB (GFI did), and how defendants might legitimately describe a consulting package focused on Neo4j open source licenses and ONgDB.

34

Before turning to the court's reasoning, it is necessary to point out that the evidence on which the court relied for these conclusions consists largely of statements made on the *GFI website*, not on the iGov or PureThink sites. *See* 1-ER-26, referring to pp. 29-30 of plaintiffs' memo, which in turn cites to 4-ER 919, 927, *etc.* The iGov website does contain statements "similar" to those the court relies upon, to the effect that a user who did not "need ONgDB Enterprise or Neo4j Enterprise open-source licensed distribution" could "simply download ONgDB Enterprise … as a drop-in replacement for an existing commercial licensed distribution of the same version number." 4-ER-935. But this statement does not imply that ONgDB is a feature-for-feature replacement for the commercial enterprise versions of Neo4j, since it states that ONgDB is a "drop-in replacement" *for users who don't need the support offered for commercial editions*.

Furthermore, the iGov website also states "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions." 5-ER-1012. Since Neo4j Enterprise has many features not present in Neo4j Community, it is difficult to see how users could believe that, by calling ONgDB a drop-in replacement, iGov was asserting that ONgDB was a feature-for-feature copy of Neo4j Enterprise.

35

### E.     References to ONgDB As "Free and Open-Source" Are Accurate.

Moreover, the court's determination that references to ONgDB and Neo4j Enterprise as "free and open-source" versions of Neo4j somehow misrepresent what consumers are actually receiving does not, in fact, describe how these references are misleading.  The versions of Neo4j which GFI's ONgDB fork uses are *not* the commercial versions of that software, and nothing in the descriptions of that software on the iGov website implies that they are.  Rather, the iGov website accurately describes ONgDB as a fork of the *free* versions of Neo4j.

Neo4j USA, having decided that it wishes to monetize a software program that had previously been free and open-source, is now attempting to shut down any uses of the free and open-source versions, without removing any of those versions from Neo4j Sweden's free and open-source iterations on GitHub.

Consumers interested in Neo4j have options: They can obtain an open-source forked version of the software for free (without service); they can compile Neo4j Enterprise directly from the official Neo4j Sweden GitHub repository or have someone do it for them; or they can pay for the commercial version of the software, with service provided by Neo4j USA.  Neo4j USA *cannot* prevent those who create forks of the free software from informing users that (1) there are forks of the Neo4j software that are not subject to expensive licenses and (2) the "open-

36

source" forks of Neo4j can be obtained without obtaining a license from Neo4j USA.

As the court pointed out, plaintiffs' arguments about whether ONgDB is free and open-source largely depend upon whether defendants properly removed the so-called Commons Clause that Neo4j Sweden added to versions 3.4 and later of Neo4j under the AGPL. 1-ER-8, 26-27; *see* 6-ER-1415 (text of Commons Clause). However, defendants argued that, the software is free and open-source and by its own terms, the AGPL license (even with the Commons Clause added by Neo4j Sweden) allowed defendants to inform possible consumers that it was possible— indeed desirable—to use versions of Neo4j EE versions 3.4 and earlier, but did not indicate that iGov or GFI's ONgDB were offerings by Neo4j USA.

In any event, the court's conclusion concerning removal of the Commons Clause is fatally flawed. The court noted that AGPL versions 3.4 and later (which are incorporated into the Neo4j Sweden software license) state, in Section 7, that

> non-permissive additional terms [in this License] are considered 'further restrictions' within the meaning of section 10. If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term "You may not impose any further restrictions on the exercise of rights granted or affirmed under this License.

Furthermore, section 10 states that "[y]ou may not impose any further restrictions on the exercise of the rights granted or affirmed under this License." 1-ER 26; 6-ER-1411-13.

37

Together, these provisions state that if a licensee receives the work (*i.e.*, Neo4j in any version covered by the license, including Neo4j EE 3.4 and later) with restrictive "non-permissive additional terms," they can be removed under section 7. Thus, defendants argued below that the Commons Clause which Neo4j Sweden added to the AGPL license from versions 3.4 onward could be removed as more restrictive than the AGPL license itself.

The court rejected this argument on the grounds that the license states that "[e]ach licensee is addressed as 'you'," and therefore "Sections 7 and 10 [of the AGPL] prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* [*i.e.*, Neo4j USA, in the court's view] from doing so." 1 ER-26-27. But even assuming the court's construction is correct, the court overlooks the way the license uses "you." The license states "[i]f the Program as *you* received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, *you* may remove that term." 6-ER-1412 (emphasis added). Even if the AGPL permitted Neo4j to add the Commons Clause, the court does not explain why the licensee was prohibited from removing more restrictive terms.

Moreover, the court's construction has a glaring flaw. The court did not ask who was the copyright holder. Under the AGPL, the Free Software Foundation is the holder of the copyright. This is made clear in the Preamble, which states that

38

the FSF has a 2007 copyright on the document, and that "[e]veryone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed." 6-ER-1408. Thus, when the AGPL states that each licensee is addressed as "you," that designation included Neo4j Sweden as a licensee of the copyright holder *and* those who sub-licensed from it. And there is no doubt that anyone using the AGPL to copyright their work is prohibited from adding more restrictive terms and that "downstream" users thus had a right to remove those restrictive terms.

In any event, the district court's conclusions do not distinguish between Neo4j Sweden—which imposes the Commons Clause—and Neo4j USA, which seeks to take advantage of that clause. As noted, Sweden is *not* the plaintiff on any of the trademark-related claims. Thus, Neo4j USA is attempting to enforce rights granted to Neo4j Sweden, with no showing that Neo4j USA had been assigned any of the rights granted under the license which included the Commons Clause.

While the question whether it was illegitimate for ONgDB to have removed the Commons Clause may be difficult, there can be no argument that Neo4j USA had any right to determine whether the Commons Clause applies to the versions of ONgDB offered in the United States. If Neo4j Sweden wished to prove that instances of Neo4j as described on the ONgDB website were not genuine editions of Neo4j, it could have registered the mark and brought a claim for infringement.

39

What it could *not* do was require that instances of the Commons Clause should be applied to software offered by Neo4j USA even though Neo4j Sweden was the author of the versions listed on the website and there was no showing that Neo4j USA had any ownership interest in the versions which involved the Commons Clause.

### F.    Descriptions Of ONgDB As A "Drop-In" Replacement For An Existing Commercially Licensed Distribution Of The Same Version Number of Neo4j Are Accurate.

One of the most contentious of the disputes between Neo4j USA and defendants has to do with defendants' descriptions of ONgDB as a "drop-in replacement" for Neo4j EE.  As the court recognized, plaintiffs argued that "because the software was not of the same quality and did not contain all of the features of Neo4j EE," it was misleading for defendants to describe it as a "drop-in" replacement.[13]  1-ER-27.  Even assuming that plaintiffs' characterization of ONgDB as being of inferior quality or lacking certain features is accurate, the court's resolution of the issue usurps the role of the jury.

We note first that the assertion that ONgDB was an inferior product was based upon a claim from Philip Rathle, the Vice President of Products at Neo4j

---

[13]    As noted, the court overlooked the fact that iGov made statements that ONgDB is a drop in replacement for both Community and Enterprise editions.  5-ER-1012.  This implies that ONgDB is *not* a feature-for-feature reproduction of Neo4j, since the Enterprise and Community editions have different features.

SER_2249

USA.  Mr. Rathle describes having obtained a copy of ONgDB (which, true to its open-source nature, was available on GitHub) and, based on his observations—but no testing—he stated his belief that none of the defendants, nor GFI and its principals, "would be able to replicate the same level of reliability, quality, or features of subsequent releases of Neo4j® EE 3.5.x by Plaintiffs."  6-ER-1375. Notwithstanding that he had both the means and the opportunity to test ONgDB, however, there is no evidentiary showing that ONgDB did *not* replicate the reliability of Neo4j EE itself.  Mr. Rathle's conclusion that "neither Neo4j USA nor Neo4j Sweden would consider ONgDB v3.5.9 to be *the exact equivalent both in function and quality as the same version of official Neo4j® EE v3.5.9*" (6-ER-1376) is thus *ipse dixit*, with no evidentiary support beyond his unsupported opinion.

Deciding whether ONgDB is a "drop-in replacement" would require a jury to determine whether the phrase means that ONgDB duplicates all of the features of Neo4j EE, or whether it means that ONgDB is compatible with Neo4j CE and EE versions of Neo4j.  Plaintiffs' view of this question is that stated by Mr. Rathle, which is that, because "neither Neo4j USA nor Neo4j Sweden would consider ONgDB v3.5.9 to be the exact equivalent both in function and quality as the same version of official Neo4j® EE v3.5.9" (6-ER-1376), it could not be a drop-in replacement.  Mr. Suhy explained, on the other hand, that, by describing ONgDB

41

as a drop-in replacement, he meant that "anyone who is currently using Neo4j commercial or open-source distributions can switch over to ONgDB." 7 ER 1655, ¶ 45. More specifically, "ONgDB allows users of other versions of Neo4j (including older versions of commercial and open-source community and enterprise) to drop-in the files from the same version number and operate the same data and run queries on it, which is the core functionality of a database." 7-ER-1657, ¶ 57. Neo4j USA presented no evidence that users of Neo4j *could not* "drop-in" their data to ONgDB and be able to run queries.

One way of conceptualizing the issue whether ONgDB is a "drop-in replacement" for Neo4j is to view the Neo4j core as the "motor" of a software solution. If a secondary distributor described a motor it sold as a "drop-in replacement" for an original equipment manufacturer's engine for a truck, a consumer would believe that the engine could be installed in the truck and that, with the new engine, the truck would run. No consumer would believe, without more, that the "drop-in replacement" would perform exactly as the original equipment manufacturer's engine. Moreover, there is no reason to believe that, when defendants described ONgDB as a "drop-in replacement" for Neo4j, consumers were misled into believing that ONgDB had the exact same functionality as instances of Neo4j commercial EE, especially when defendants

SER_2251

state it is a drop in replacement for *both* Community and Enterprise editions. 5-ER-1012.

The evidence showed that persons who used ONgDB should be able to run queries that would normally be run in Neo4j Community or Neo4j Enterprise Editions with the same version number, since the core source code is shared between Community and Enterprise editions. It is, therefore, at the very least, a jury question whether iGov's descriptions of GFI's ONgDB as a "drop-in replacement" was accurate. These are certainly not issues that can be decided on summary judgment on the basis that instances of ONgDB do not duplicate all the functionality of Neo4j Commercial (CEE), when defendants clearly state that ONgDB is a drop in replacement for the open source community editions which have no enterprise features at all.

## G. The Court's Finding Of False Designation Of Origin Is Fatally Flawed.

In addition to its decision that defendants had made false advertising claims, the court below concluded that defendants had engaged in false designation of origin. The origin of Neo4j for both Neo4j USA and defendants is Neo4j Sweden. The court's conclusion was based upon its evaluation of the *Sleekcraft* factors. *Sleekcraft* defines the factors a plaintiff must satisfy to show that the defendants' use of a mark is an infringement. Those factors are: (1) strength of the mark; (2)

43

SER_2252

proximity of the goods; (3) similarity of the marks; (4) evidence of actual
confusion; (5) marketing channels used; (6) type of goods and the degree of care
likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark;
and (8) likelihood of expansion of the product lines.  599 F.3d at 348.

It goes without saying that, in the circumstances where a defendant (such as
PureThink and iGov) is using a mark without modification, the *Sleekcraft* factors
that look to whether the defendant is using the mark are not particularly relevant.
The important factors in the present analysis are whether there is evidence of actual
confusion, the type of goods and degree of care used, and the defendant's intent in
choosing the marks.  *Sleekcraft*, 599 F.2d at 348-49.

The court below believed that Mr. Suhy and iGov were creating actual
confusion.  The only evidence on this issue is a showing that some persons using
ONgDB sent questions to Neo4j USA.  But the relevance of such questions is not
obvious.  Since Neo4j EE versions 3.4 and earlier were and still are available free
and open-source from GitHub, instances of "confusion" do not reveal much.  Why
wouldn't consumers believe that if versions of Neo4j are available open-source,
Neo4j USA might support it?  Did these consumers get their information from
GFI's website, or from iGov's website?  There is certainly no suggestion that
consumers were actively misled into believing that ONgDB and Neo4j (in

44

whatever version) were identical, or that questions about Neo4j would be answered by the creators of ONgDB (or vice-versa).[14]

Similarly, as noted, the "type of goods and degree of care used" weigh heavily in favor of a finding of no confusion. As discussed above, the "commercial" versions of Neo4j are expensive, and no one familiar with these types of databases would be likely to confuse ONgDB with those commercial versions. Any prospective user of Neo4j would be aware that there were versions of Neo4j that used a commercial license, and other versions (and forks) that were available open-source.

Finally, as noted, the opening sentence on iGov's website informs users that iGov is "*not a Neo4j Solution Partner.*" 2-ER-235. It also informs users that "iGov Inc is not a partner or reseller of Neo4j Inc and is not under any open source usage prohibitions that resellers and partners may be under." 5-ER-1007. In light of this language, the notion that Mr. Suhy *intended* to mislead users into believing that iGov was somehow affiliated with or part of Neo4j is farfetched. 5-ER-1007; 2-235.

The court's assertion that "Defendants intended to convince consumers to buy Defendants' products instead of Neo4j EE commercial licenses" (1-ER-34) is

---

[14]    Moreover, the examples of "confusion" presented by Neo4j were a few queries among thousands and, as Mr. Suhy explained, did not necessarily even show customer confusion. 7-ER-1695, ¶¶ 25-29.

SER_2254

not only flawed because iGov offered consulting packages, not software products, but is, in essence, an attack on comparative advertising. Comparative advertising to explain to consumers they can purchase similar software or get it for free should be promoted, not enjoined. *See, e.g.*, *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1152 (9th Cir. 2011) (the Ninth Circuit has "recognized that liability for infringement may not be imposed for using a registered trademark in connection with truthful comparative advertising").

The court's analysis of the question whether defendants misled consumers into believing that ONgDB can be considered a "drop-in" replacement is based upon the (unstated) premise that ONgDB was, in plaintiffs' words, the "exact equivalent both in function and quality as the same version of official Neo4j® EE." 6-ER-1376. But, as noted, (1) defendants did not make such a representation, (2) plaintiffs never did the tests that would be required to demonstrate that ONgDB was not an equivalent to the official versions of Neo4j, (3) defendants state that ONgDB is a drop in replacement for both Community and Enterprise distributions of Neo4j, and (4) it was, at worst, a jury question whether descriptions of ONgDB as a drop-in replacement are misleading in any way.

In short, there were, at the very least, questions of material fact concerning whether iGov's use of the Neo4j marks created consumer confusion under

46

*Sleekcraft.*  This Court should therefore remand for a determination of the likelihood of consumer confusion under *Sleekcraft.*

## VIII.  CONCLUSION

For the foregoing reasons this Court should reverse the summary judgment entered against appellants and vacate the preliminary injunction based upon it, with a remand to the district court to set the issues for trial.

Respectfully submitted,

Dated:  August 16, 2021                  _____/s/_____
                                         Joseph A. Hearst

                                         Counsel for Appellants John
                                         Mark Mr. Suhy, PureThink,
LLC
                                         And iGov, Inc.

47

## STATEMENT OF RELATED CASES

Appellant is unaware of any cases pending in this Court related to this case.

SER_2257

1   Adron W. Beene SB# 129040
    Adron G. Beene SB# 298088
2   Attorney at Law
    1754 Technology Drive, Suite 228
3   San Jose, CA 95110
    Tel: (408) 392-9233
4   adron@adronlaw.com

5
    Attorneys for defendants:
6   PURETHINK LLC, a Delaware limited
    liability company, IGOV INC., a Virginia
7   corporation, and JOHN MARK SUHY

8
                    UNITED STATES DISTRICT COURT
9              NORTHERN DISTRICT OF CALIFORNIA

10
    NEO4J, INC., a Delaware corporation,        CASE NO. 5:18-CV-7182 EJD
11  and NEO4J SWEDEN AB, a Swedish
    corporation,                                **DEFENDANTS' REPLY TO**
12  Plaintiffs,                                 **PLAINTIFFS' OPPOSITION TO**
                                                **DEFENDANTS' CROSS-**
13  v.                                          **MOTION FOR SUMMARY**
                                                **JUDGMENT**
14  PURETHINK LLC, a Delaware
15  limited                                     Date: April 15, 2021
    liability company, IGOV INC., a             Time: 9:00 a.m.
16  Virginia corporation, and JOHN              Dept. Courtroom 4, 5th floor
    MARK SUHY, an individual,                   Judge: Hon. Edward J. Davila
17  Defendants.

18
    AND RELATED COUNTERCLAIMS
19

20

21  **I.      Introduction**

22          Neo4J Inc. "USA" has filed a 24 page reply and a 1 page (a paragraph)

23  opposition to Purethink, LLC, Igov, Inc. and John Mark Suhys ("Defendants")'

24  motion for summary judgment. At the same time, they have settled out with the

25  GFI defendants. They are no longer part of this motion. USA presses it registration

    DEFENDANTS' REPLY TO OPPOSITION
    CASE NO. 5:18-cv-7182 EJD                                                    1

1   to support standing and ownership. But ownership is a separate and distinct issue

2   from registration. As USA does not own the Neo4J trademark, they cannot proceed

3   with the Trademark and False Designation of Origin claims. While USA does not

4   need to own the trademark for false advertising standing, they lack the materiality

5   element for the claim. This is fatal to the claim. As they cannot establish a

6   necessary element for the claim, the Lanham Act 43(a) and UCL claims should be

7   dismissed.

8   **II.     Trademark and False Advertising claims**

9          Summary judgment should be granted in defendants favor on the First and

10   Second Causes of Action for Trademark Infringement and False Designation of

11   Origin claims.

12          A party seeking summary judgment always bears the initial burden of

13   establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,*

14   477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party can

15   satisfy this burden by: (1) presenting evidence that negates an essential element of

16   the non-moving party's case or (2) demonstrating that the non-moving party failed

17   to establish an essential element of the non-moving party's case on which the non-

18   moving party bears the burden of proving at trial. *Id.* at 322–23, 106 S.Ct. 2548.

19   Once the moving party establishes the absence of genuine issues of material fact,

20   the burden shifts to the non-moving party to set forth facts showing that a genuine

21   issue of disputed fact remains. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

22          Defendants moved for summary judgment on the trademark infringement

23   and false designation of origin claims because USA does not own the Neo4J mark.

24   Ownership of the mark is a required element of USA's trademark infringement

25   claim. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir.1987);

DEFENDANTS' REPLY TO OPPOSITION
CASE NO. 5:18-cv-7182 EJD                                               2

*Rearden LLC v. Rearden Commerce, Inc.* (9th Cir. 2012) 683 F.3d 1190, 1202–1203. Dahon North America, Inc. v. Hon (C.D. Cal., Apr. 24, 2012, No. 2:11-CV-05835-ODW) 2012 WL 1413681 (A party lacks standing to sue for trademark infringement if it does not own the trademark at issue).

While USA relies on its registration, "To prevail in the infringement action, [Plaintiff] had to establish his exclusive right to use the trademark **independent** of the registration." [Emphasis added] [citations omitted]. *Wrist-Rocket Mfg. Co., Inc. v. Saunders Archery Co.* (8th Cir. 1975) 516 F.2d 846, 850.[1] "[T]he Lanham Act creates at least two adjudicative mechanisms to help protect marks. First, a trademark owner can register its mark with the PTO. Second, a mark owner can bring a suit for infringement in federal court. *B & B Hardware, Inc. v. Hargis Industries, Inc.* (2015) 575 U.S. 138, 142. The anomaly in this case is USA does not own the trademark yet owns the registration. This motion does not deal with registration[2]. This motion addresses the second adjudicative mechanism: the right of a mark owner to bring a suit.

USA's reliance on its registration to prove ownership (D Fact 125) fails. Registration does not confer ownership. *Allard Enterprises v. Advanced Program*, 146 F.3d 350, 356 (6th Cir. 1998) ("One of the bedrock principles of trademark law is that trademark or "service mark" ownership is not acquired by federal or state

[1] The Wrist-Rocket test for determination of ownership of a mark is not applicable as there is a license agreement establishing Sweden's ownership of the mark. The test is applied in absence of an agreement. See *Sengoku Works Ltd. v RMC International, Ltd.* 96 F.3d 1217 (9th Cir. 1996) (applying Wrist-Rocket test).
[2] Given this Courts recent Order Granting Motion to Strike, Dkt. 110, defendant's affirmative defenses for Cancellation of Trademark Procured by Fraud and Naked License Abandonment of Trademark are withdrawn. D Facts 130, 131 and 132 are withdrawn. Those issues were not raised as part of defendants' motion for summary judgment.

DEFENDANTS' REPLY TO OPPOSITION
CASE NO. 5:18-cv-7182 EJD                                         3

1  registration.").

2      The undisputed fact shows USA does not own the NEO4J mark. (D Facts

3  125). Since USA does not own the Neo4J trademark, it cannot bring a trademark

4  infringement claim or False Designation of Origin claim. *Kythera*

5  *Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F.Supp.2d 890, 897 (C.D. Cal. 2014)

6  ("A claim for false designation of origin under 15 U.S.C. § 1125 requires proof of the

7  same elements as a claim for trademark infringement under 15 U.S.C. § 1114.")

8      USA's non-exclusive license to the Neo4J mark (D fact 126), does not support

9  standing to bring an infringement action. *Quabang Rubber Co. v. Fabiano Shoe Co.*,

10  567 F.2d 154, 159-60 (1st Cir. 1977); *Int'l Soc'y for Krishna Consciousness of*

11  *Western Pennsylvania v. Stadium Authority*, 479 F. Supp. 792, 797 (W.D. Pa. 1979)).

12      As USA does not own the mark, they instead try to confuse and misdirect the

13  Court to affirmative defenses, its registration, and its relationship with NEO4J

14  SWEDEN AB "Sweden". The ownership of the mark is jurisdictional and an element

15  of USA's claim, not defendant's dismissed affirmative defense. Defendants are

16  demanding USA prove the ownership element of its claim. USA has the burden to

17  prove they own the mark for an element of the claim and for this court's

18  jurisdiction. It is undisputed that they cannot establish ownership. Registration is a

19  procedural issue and confers only a presumption of ownership which disappears

20  with contrary evidence. *Hokto Kinoko Co. v. Concord Farms, Inc.* (C.D. Cal. 2011)

21  810 F.Supp.2d 1013, 1022, aff'd (9th Cir. 2013) 738 F.3d 1085.

22      As defendants have shown, USA does not own the Neo4J trademark, the

23  presumption of ownership through registration is gone. USA cannot rest on its

24  procedural presumption of registration to prove an element of thier claim.

25  Registration is not a conclusive presumption. It is rebuttable. Defedants have

DEFENDANTS' REPLY TO OPPOSITION
CASE NO. 5:18-cv-7182 EJD                  4

rebutted it and USA must prove it is the owner of the Neo4J mark. But USA presents no evidence it owns the mark because it is undisputed Sweden owns the mark.

Reliance on Sweden's prior use for registration of the mark under 15 U.S.C. §1055 does not shore up the ownership element for USA. The registration process does allow the **owner** of a mark to use a subsidiaries prior use of the mark for registration purposes. *In re Wella A.G.* 787 F.2d 1549. (Fed. Cir. 1986) "Wella I"[3]. ("Regardless of their being related companies, only one is the owner.") The related company doctrine is only applied for prior use on a registration issue. Defendants are not attacking the registration. See fnt. 2. 15 U.S.C. §1055 does nothing to confer ownership of the trademark on a related company. There can be only one owner of the Neo4J mark and the License Agreement  (Dkt. No. 100-3, Beene Dec ¶ 4, Exhibit 1) clearly states the Neo4J mark is owned by Sweden.

As USA does not own the Neo4J mark, an element of its infringement and false designation of origin claim, summary judgment on those two[4] claims should be granted in favor of Defendants.

---

[3]  The court in Wella II (*In re Wella A.G.* 858 F.2d 725 (Fed. Cir. 1988) did not reject Judge Nies' additional view in Wella I as USA stated Dkt. 109 7:13-15. Wella II rejected the Trademark Trial and Appeal Board's failure to follow the Court's instructions in Wella I.  Judge Nies additional views were favorably cited in the Federal Circuit's later opinion, *Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc.* (Fed. Cir. 1992) 971 F.2d 732, 734 :"see also *In re Wella, A.G.*, 787 F.2d 1549, 1554, 229 USPQ 274, 278 (Fed.Cir.1986) (Nies, J., additional views) (right to use and right to register are "separate and distinct").

[4] The ownership standard does not apply to the Lanham Act 43(a) false advertising claims. *Silverstar Enterprises, Inc. v. Aday* (S.D.N.Y. 1982) 537 F.Supp. 236, 241. (standing under this section [15 USC §1125] may lie with users of trademarks who are not owners of the marks.)

DEFENDANTS' REPLY TO OPPOSITION
CASE NO. 5:18-cv-7182 EJD                                                                                5

III.    **Nominative Use**

Even if USA has standing and can raise an issue on ownership, they cannot prove infringement by defendants. Defendants' use of the Neo4J mark is to identify Neo4J software, USA, and Sweden. The use is permissible nominative fair use. Its not infringement. Fundamentally, it's defendants' First Amendment right to free speech. USA may want to stop defendants from telling people they can use free software instead of paying money for it, but a trademark cannot stop that. USA bears the burden of establishing that the use of the mark was not nominative fair use. *Toyota Motor Sales, U.S.A., Inc. v. Tabari* (9th Cir. 2010) 610 F.3d 1171, 1182–1183. The test for nominative fair use is three part determine whether: (1) the product was "readily identifiable" without use of the mark; (2) defendant used more of the mark than necessary; or (3) defendant falsely suggested he was sponsored or endorsed by the trademark holder. *Toyota* at 1165-1176. USA cannot meet its burden to show defendants' use of the Neo4J mark was not nominative. *Toyota* at 1182.

On the first element, that the product can be identified without reference to the mark, USA provides no facts to dispute D Fact 148. The services defendants provide for Neo4J software are properly identified and cannot be readily identified without reference to the mark. *Volkswagenwerk Aktiengesellschaft v. Church* (9th Cir. 1969) 411 F.2d 350, 352, supplemented (9th Cir. 1969) 413 F.2d 1126. They argue about the GFI's defendant use, but those defendants have settled out.[5] Defendants can comparatively advertise and there is no evidence to show how that

---

[5] USA suggest defendants ignore the fact the GFI defendants settled out with an agreed injunction. Dkt. No. 109. P.4, Ftn 2. It is plaintiffs who ignore the fact that settlement occurred long after Defendants' opposition was filed.

DEFENDANTS' REPLY TO OPPOSITION
CASE NO. 5:18-cv-7182 EJD                                                    6

1    is done without using the mark. *Network Automation, Inc. v. Advanced Systems*

2    *Concepts, Inc.* (9th Cir. 2011) 638 F.3d 1137, 1153.

3         There is no evidence defendants used the mark more than they should have

4    to establish the second element and the third and most important element, that the

5    use does not show sponsorship or endorsement. *Toyota*, at 1179. USA provides no

6    facts to dispute D Fact 135. There is no genuine dispute that defendants' websites,

7    taken as a whole suggest sponsorship or endorsement by USA.

8         As defendants' use of the Neo4J mark was nominative, within its First

9    Amendment rights to identify its services, comparatively advertise, without any

10   false suggestion they are sponsored or endorsed by USA, summary judgment on the

11   Trade Mark and infringement claim should be granted.

12   **IV.   False Advertisement**

13        Defendants moved for summary judgment on USA's False Advertising and

14   UCL claims against defendants. While there are a number of disputed facts on this

15   claim,[6] one required element of the claim is starkly not disputed: Sophisticated

16   consumers of databases make purchase decisions based on price. (D Fact 151). USA

17   concedes customers chose ONgDB based on pricing **alone**. (Emphasis added) Dkt.

18   No. 98, p. 2:12-13; p. 32:6-10. USA offers no evidence that consumers made any

19   material decisions based on what USA claims is false in the remaining defendants

20

21   ─────────────────────

22   [6] While USA claims defendants concede the other issues, this is not true. Dkt. No.
     109 at 18:6-8. See Plaintiff's Facts 77-124. Most of which are disputed. Likewise, the
     facts were not segregated by the different defendant groups. Many are only
     addressed to the GFI defendants. A plaintiff may not mix and match statements

23   (even some about dismissed defendants and others against the remaining) to satisfy

24   all elements. *Verisign, Inc. v. XYZ.COM LLC* (4th Cir. 2017) 848 F.3d 292, 299.
     Likewise, there is a due process issue when a party overloads briefs with cases and

25   over 100 alleged material issues of facts, and a party has a page limit to respond;
     concessions claimed based on omission should not apply.

DEFENDANTS' REPLY TO OPPOSITION
CASE NO. 5:18-cv-7182 EJD                                          7

advertising. False advertising must be material. *Pizza Hut, Inc. v. Papa John's Intern., Inc.* (5th Cir. 2000) 227 F.3d 489, 495. USA's failure to establish this element is fatal to the claim. *Verisign, Inc. v. XYZ.COM LLC* (4th Cir. 2017) 848 F.3d 292, 299. While USA attempts to distract the Court with argument on a play on the word "free", which is actually part of phase 2 in this case, they do not dispute the software is free. As in, it costs no money. The material decision for consumers is deciding to purchase USA's software for money or downloading software for free. There is no evidence to dispute this material issue, and none of the other claims arise to a material issue when price is the only purchasing issue. Since USA cannot prove a material false statement, summary judgment should be granted in defendants' favor on the false advertising claim and related UCL claim.

## V.     Evidence Objections

Defendants object to USA's failure to include the evidence objection in the brief as required under Civil L.R. 7-3. "Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum." All evidence objections not in the brief should be stricken. Likewise, the objections are improper. The standards for evidence on summary judgment are not the same as for trial. The standard is the evidence would be admissible at trial, not that it presently is. *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC,* 310 F. Supp. 3d 1089, 1107 (S.D. Cal. 2018).

Dated: March 9, 2021

_____*/s/ Adron W. Beene*_____
Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney At Law
Attorney for Defendants
PURETHINK LLC,
IGOV INC., and JOHN MARK SUHY

DEFENDANTS' REPLY TO OPPOSITION
CASE NO. 5:18-cv-7182 EJD                                    8

<u>FILER'S ATTESTATION</u>

I, Adron G. Beene, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with N.D. Cal. Civil Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

Dated: March 9, 2021

　　　　　　　　　　　　　　　　　　　　　　<u>*/s/ Adron G. Beene*　　　　</u>
　　　　　　　　　　　　　　　　　　　　　　Adron G. Beene SB# 298088

DEFENDANTS' REPLY TO OPPOSITION
CASE NO. 5:18-cv-7182 EJD                                             9

**SER_2266**

John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff, Bar No. 197241
jratinoff@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA 95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:     (408) 286-9800
Facsimile:     (408) 998-4790

Attorneys for Plaintiff and Counter-Defendants
NEO4J, INC. and NEO4J SWEDEN AB

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual,<br><br>　　　　　Defendants.<br><br>AND RELATED COUNTERCLAIM. | CASE NO.  5:18-cv-07182-EJD<br><br>**CONSOLIDATED REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　April 15, 2021<br>Time:　　9:00 a.m.<br>Dept.:　　Courtroom 4, 5th Floor<br>Judge:　　Hon. Edward J. Davila |

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3690595.10

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ......................................................................................... 1

II.   EVIDENTIARY OBJECTIONS.................................................................... 1

III.  LEGAL ARGUMENT .................................................................................. 2

      A.    Neo4j USA Has Standing to Assert its Lanham Act Claims Against
            Defendants .......................................................................................... 2

      B.    Defendants Do Not Establish that the Neo4j® Mark is Invalid.............................. 4

            1.    Defendants Fail to Meet Their Burden of Proof Establishing that the
                  Registration for the Neo4j® Mark was Fraudulently Obtained................. 5

            2.    Defendants Fail to Establish the Naked Licensing of the Neo4j®
                  Mark ........................................................................................ 8

      C.    Defendants Have Not Engaged in Nominative Fair Use of the Neo4j®
            Mark .................................................................................................. 9

            1.    The Undisputed Facts Establish that Defendants Impermissibly
                  Used the Neo4j® Mark to Refer to Their Products and Services ............. 10

            2.    The Undisputed Facts Establish that Defendants Used the Neo4j®
                  Mark More Than Was Reasonably Necessary and Not for the
                  Purpose of Comparative Advertising ......................................................... 12

            3.    Defendants Misappropriate the Cachet of the Neo4j® Mark ................. 14

      D.    Defendants Fail to Address their Liability for Infringement as Ex-Licensees...... 16

      E.    Defendants' Licensee Estoppel Arguments are Meritless ................................... 17

      F.    Plaintiffs are Entitled to Summary Judgment on Neo4j USA's False
            Advertising Claims Under the Lanham Act and the UCL ................................... 18

            1.    The Terms of the Neo4j Sweden Software License Do Not Give a
                  Licensee the Right to Remove Restrictions Imposed by the
                  Copyright Holder and Licensor of the Underlying Software................. 18

            2.    Defendants' Claims that ONgDB is a Drop-in Replacement for
                  Equivalent versions of official Neo4j® EE are Demonstratively
                  False ....................................................................................... 22

            3.    Defendants Falsely Advertising ONgDB as a Free version of
                  Neo4j® EE licensed under the APGL is Material to Customers'
                  Decisions .................................................................................. 23

      G.    False Designation of Origin .................................................................... 24

      H.    Plaintiffs are Entitled to Either Preliminary or Permanent Injunctive Relief ....... 25

      I.    The Court Should Deny Defendants' Cross-Motion for Summary Judgment...... 25

IV.   CONCLUSION ........................................................................................... 25

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • PALO ALTO

842\3690595.10                                        - i -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

SER_2268

**TABLE OF AUTHORITIES**

Page

**Cases**

*Adidas America, Inc. v. Athletic Propulsion Labs, LLC,*
    120 U.S.P.Q.2d 1303, 2016 WL 3896826 (D. Or. 2016) ......................... 3

*AECOM Energy & Constr., Inc. v. Ripley,*
    348 F.Supp.3d 1038 (C.D. Cal. 2018) ......................................... 24

*Align Tech., Inc. v. Strauss Diamond Instruments, Inc.,*
    2019 WL 1586776 (N.D. Cal. Apr. 12, 2019) ................................. 10

*Altera Corp. v. Clear Logic, Inc.,*
    424 F.3d 1079 (9th Cir. 2005) ................................................. 21

*Am. Auto. Ass'n of N. California, Nevada & Utah v. Gen. Motors LLC,*
    367 F. Supp. 3d 1072 (N.D. Cal. 2019) ...................................... 5

*Apple Inc. v. Psystar Corp.,*
    658 F.3d 1150 (9th Cir. 2011) ................................................. 20

*In re Bose Corp.,*
    580 F.3d 1240 (Fed.Cir.2009) ................................................. 6

*Brookfield Commc'ns Inc. v. West Coast Ent. Corp.,*
    174 F.3d 1036 (9th Cir.1999) ............................................ 11, 15

*Cont'l Distilling Corp. v. Old Charter Distillery Co.,*
    188 F.2d 614 (D.C. Cir. 1950) ................................................. 8

*Copperweld Corp. v. Independence Tube Corp.,*
    467 U.S. 752 (1984) ............................................................ 8

*DEP Corp. v. Interstate Cigar Co.,*
    622 F.2d 621 (2nd Cir.1980) ................................................. 3

*Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.,*
    448 F.3d 1118 (9th Cir. 2006) ............................................... 11

*Dole Food Co. v. Patrickson,*
    538 U.S. 468 (2003) ............................................................ 8

*Experience Hendrix, L.L.C. v. Hendrixlicensing.com, Ltd.,*
    2010 WL 2104239 (W.D. Wash. May 19, 2010) ............................. 11

*Far Out Prods., Inc. v. Oskar,*
    247 F.3d 986 (9th Cir. 2001) .............................................. 4, 6

**TABLE OF AUTHORITIES**
(continued)

Page

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
    547 F.3d 1213 (9th Cir. 2008) ................................................................. 2

*Hansen v. United States*,
    7 F.3d 137 (9th Cir. 1993) (per curiam) ................................................ 2

*Heaton Distributing Co. v. Union Tank Car Co.*,
    387 F.2d 477 (8th Cir. 1967) ................................................................. 17

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
    738 F.3d 1085 (9th Cir. 2013) ....................................................... 5, 8, 9

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
    810 F.Supp.2d 1013 (C.D. Cal. 2011), *aff'd*, 738 F.3d 1085 (9th Cir. 2013) .......................... 3

*Horphag Research Ltd. v. Garcia*,
    475 F.3d 1029 (9th Cir. 2007) ................................................. 9, 14, 15

*Idaho Potato Commission v. M & M Produce Farm & Sales*,
    335 F.3d 130 (2d Cir. 2003) ................................................................ 17

*Jacobsen v. Katzer*,
    535 F.3d 1373 (Fed. Cir. 2008) ........................................................... 20

*McSherry v. City of Long Beach*,
    584 F.3d 1129 (9th Cir. 2009) ............................................................... 2

*Micro Star v. Formgen Inc.*,
    154 F.3d 1107 (9th Cir. 1998) ............................................................. 21

*Milenbach v. C.I.R.*,
    318 F.3d 924 (9th Cir.2003) ................................................................ 21

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
    795 F.3d 997 (9th Cir. 2015) ............................................................... 19

*New Kids on the Block v. News Am. Pub., Inc.*,
    971 F.2d 302 (9th Cir. 1992) ......................................................... 13, 14

*Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*,
    354 F.3d 1020 (9th Cir. 2004) ............................................................... 9

*Playboy Enters., Inc. v. Welles*,
    279 F.3d 796 (9th Cir. 2002) ............................................................... 13

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3690595.10

- iii -

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Pom Wonderful LLC v. Hubbard*,

4

   775 F.3d 1118 (9th Cir. 2014) ......................................................................... 10

5

*Pony Exp. Courier Corp. of Am. v. Pony Exp. Delivery Serv.*,

   872 F.2d 317 (9th Cir. 1989) ........................................................................... 6

6

*Quabaug Rubber Co. v. Fabiano Shoe Co.*,

7

   567 F.2d 154 (1st Cir.1977) ............................................................................ 3

8

*Rearden LLC v. Rearden Commerce, Inc.*,

   683 F.3d 1190 (9th Cir. 2012) ......................................................................... 5

9

*Rise Basketball Skill Dev. LLC v. K Mart Corp.*,

10

   2017 WL 4865561 (N.D. Cal. Oct. 27, 2017) ............................................... 10

11

*Scat Enterprises, Inc. v. FCA US LLC*,

12

   2017 WL 5749771 (C.D. Cal. June 8, 2017) ................................................ 7

13

*Schwinn Bicycle Co. v. Murray Ohio Mfg. Co.*,

   339 F.Supp. 973 (M.D. Tenn. 1971) ............................................................... 5

14

*Segal v. Silberstein*,

15

   156 Cal.App.4th 627 (2007) ........................................................................... 20

16

*Southland Sod Farms v. Stover Seed Co.*,

17

   108 F.3d 1134 (9th Cir. 1997) ......................................................................... 22

18

*State St. Glob. Advisors Tr. Co. v. Visbal*,

   431 F.Supp.3d 322 (S.D.N.Y. 2020) ............................................................. 11

19

*Storm Impact, Inc. v. Software of the Month Club*,

20

   44 U.S.P.Q.2d 1441, 1997 WL 566378 (N.D. Ill. 1997) .............................. 21

21

*STX, Inc. v. Bauer USA, Inc.*,

22

   43 U.S.P.Q.2d 1492 (N.D. Cal. June 5, 1997) ............................................... 17

23

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,

   610 F.3d 1171 (9th Cir. 2010) ......................................................................... 9

24

*TrafficSchool.com, Inc. v. Edriver Inc.*,

25

   653 F.3d 820 (9th Cir. 2011) ........................................................................... 4

26

*U.S. v. King Features Entm't, Inc.*,

27

   843 F.2d 394 (9th Cir. 1988) ........................................................................... 18

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3690595.10

- iv -

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

**TABLE OF AUTHORITIES**
(continued)

Page

*Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*,
   108 F.Supp.3d 816 (N.D. Cal. 2015) ................................................ 17

*Universal Sales Corp. v. Cal., Press Mfg. Co.*,
   20 Cal.2d 751 (1942) .......................................................................... 21

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) .............................................................. 2

*Vuitton et Fils S.A. v. J. Young Enters., Inc.*,
   644 F.2d 769 (9th Cir. 1981) ................................................................. 4

*W. Fla. Seafood, Inc. v. Jet Restaurants, Inc.*,
   31 F.3d 1122 (Fed. Cir. 1994) .............................................................. 7

*In re Wella A.G.*,
   787 F.2d 1549 (Fed. Cir. 1986) ............................................................ 7

*In re Wella A.G.*,
   858 F.2d 725 (Fed. Cir. 1988) .............................................................. 7

*Wetzel's Pretzels, LLC v. Johnson*,
   797 F.Supp.2d 1020 (C.D. Cal. 2011) ................................................ 17

*Zalkind v. Ceradyne, Inc.*,
   194 Cal.App.4th 1010 (2011) ...................................................... 19, 20

*Zobmondo Entm't, LLC v. Falls Media, LLC*,
   602 F.3d 1108 (9th Cir. 2010)............................................................... 4

**Statutes**

15 U.S.C.
   § 1055................................................................................................ 6, 8, 9
   § 1114...................................................................................................... 3
   § 1114(1).................................................................................................. 2
   § 1114(1)(a).............................................................................................. 3
   § 1115(a).................................................................................................. 4
   § 1117(a)................................................................................................ 11
   § 1125(a).................................................................................................. 3
   § 1125(a)(1).............................................................................................. 4
   § 1127...................................................................................................... 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3690595.10                                                    - v -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

SER_2272

**TABLE OF AUTHORITIES**
(continued)

Page

Cal. Civ. Code
§ 1638.................................................................................................. 13, 19
§ 1639.................................................................................................. 13
§ 1641.................................................................................................. 19, 20

**Other Authorities**

Trademark Manual of Examining Procedure
§ 1201.03(b).......................................................................................... 6
§ 1201.03(c).......................................................................................... 6
§ 1201.07(b).......................................................................................... 7
§ 1201.07(b)(i)...................................................................................... 7
§ 1201.07(b)(ii)..................................................................................... 7
§ 903.05................................................................................................ 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

## I.      INTRODUCTION

Defendants' Opposition fails to establish a disputed issue of fact with respect to Neo4j USA's trademark claims.  This is because they offer no admissible evidence that would allow a jury to conclude that they engaged in fair use of the Neo4j® Mark in promoting their pirated versions of Neo4j® EE.  Instead, Defendants attempt to revive their already-stricken naked licensing and fraud in the procurement defenses to attack the validity of the Neo4j® Mark.  Aside from ignoring this Court's orders striking them, they fail to comprehend that Neo4j USA rightfully owns the registration for that mark because of Plaintiffs' status as related companies due to their parent-subsidiary relationship.  Defendants also argue that they were fairly using the Neo4j® Mark merely for comparative advertising.   Their unsubstantiated arguments do not change the fact that Defendants repeatedly use the Neo4j® Mark on their websites to promote ONgDB rather than merely describe Plaintiffs' Neo4j® EE.  Their use of the Neo4j® Mark also goes well beyond what is reasonably necessary, and suggests sponsorship or endorsement by Plaintiffs.   Defendants therefore cannot rely upon a nominative fair use defense, entitling Neo4j USA to entry of summary judgment in its favor.

Defendants' primary argument in opposition to Neo4j USA's Section 43(a) claims is that they were entitled to remove the commercial restrictions imposed by the Neo4j Sweden Software License and promote ONgDB as a no-cost "drop in" replacement for Neo4j® EE.  As previously recognized by this Court, the plain language of the Neo4j Sweden Software License does not permit those restrictions to be removed by licensees.  Defendants' promotion of ONgDB is thus false and misleading as a matter of law.  Defendants further concede that price is material to consumers decision to choose ONgDB rather than pay for a license for Neo4j® EE.  Consequently, Neo4j USA is also entitled to summary judgment on its false advertising and designation of origin claims.

## II.     EVIDENTIARY OBJECTIONS

Defendants offer over five pages of "background facts" in support of their opposition and cross-motion for summary judgment that are not supported by any admissible evidence.  *See* Opp. at 1:23-6:18. Defendants then acknowledge that "[a] party cannot create a genuine issue of material fact simply by making assertions in its legal papers. [] Rather, there must be specific, admissible,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • PALO ALTO

842\3690595.10                                   - 1 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

SER_2274

1  evidence identifying the basis for the dispute." *Id.* at 9:15-19 (citations omitted).  Thus, by their

2  own admission, the Court should disregard this section.

3       Defendants' responsive separate statements are also problematic (Neo4j USA's further

4  responses are attached hereto as Exhibits A and B) because they almost exclusively rely on the

5  declaration of John Mark Suhy, which consists of uncorroborated argument and immaterial "facts"

6  lacking any foundation, inadmissible opinion testimony and self-serving denials lacking any

7  evidentiary value.  It is well-settled that, "[w]hen the non-moving party relies only on its own

8  affidavits to oppose summary judgment, it cannot rely on conclusory allegations … to create an

9  issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (per curiam);

10  "Summary judgment requires facts, not simply unsupported denials or rank speculation." *McSherry*

11  *v. City of Long Beach*, 584 F.3d 1129, 1138 (9th Cir. 2009).  The Court also need not find "a 'genuine

12  issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo*

13  *v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).  Thus, the Court should disregard

14  Suhy's declaration and the "facts" that rely upon it.  Plaintiffs' specific evidentiary objections to this

15  declaration are included in a chart attached hereto as Exhibit C.

16  **III.  LEGAL ARGUMENT**

17       **A.    Neo4j USA Has Standing to Assert its Lanham Act Claims Against Defendants**

18       Defendants' standing and ownership arguments do nothing more than attempt to re-litigate

19  their unsuccessful arguments made in opposing Plaintiffs' prior dispositive motions.  *Compare* Opp.

20  at 7:10-8:2, 11:5-11:16, 12:15-14:9; *and* Dkt. Nos. 70, 85.[1]  In doing so, they confuse the legal

21  principles of standing and validity.  To have standing under the Lanham Act, a plaintiff must prove

22  that he is "(1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3)

23  a nonowner with a cognizable interest in the allegedly infringed trademark."  *Halicki Films, LLC v.*

24  *Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008).  In particular, trademark claims

25  under 15 U.S.C. § 1114(1) may be brought **by the registrant of the trademark**, and the registrant's

26  "legal representatives, predecessors, successors, and assigns."  15 U.S.C. § 1127.

27       Defendants do not dispute that Neo4j Sweden is a wholly owned subsidiary controlled by

28

---

[1] All docket references are to the PureThink Action unless otherwise referenced as "GFI Dkt."

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3690595.10                                    - 2 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

SER_2275

1   Neo4j USA, or that Neo4j USA is the *registrant* of the Neo4j® Mark. *See* Fact 1; *see also* Opp. at

2   7:21-23, Dkt. No. 72 at 24:24-25:1.   Conversely, Defendants fail to offer any admissible evidence

3   contesting that Neo4j USA has a cognizable interest in stopping Defendants' infringement of the

4   Neo4j® Mark.  Moreover, since both Neo4j USA and Neo4j Sweden are parties to this action and

5   have a unity of interest in enforcing the Neo4j® Mark, they have standing. *See Hokto Kinoko Co.*

6   *v. Concord Farms, Inc.*, 810 F.Supp.2d 1013, 1046 (C.D. Cal. 2011), *aff'd*, 738 F.3d 1085 (9th Cir.

7   2013) (granting summary judgment in favor of plaintiffs on defense for failure to join indispensable

8   party where subsidiary brought infringement action and parent company that purported to be the

9   actual owner of the marks was also a party).

10       Defendants also misapprehend the holdings in *Quabaug Rubber Co. v. Fabiano Shoe Co.*,

11   567 F.2d 154 (1st Cir.1977) and *DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621 (2nd Cir.1980) as

12   supporting their standing argument. *See* Opp. at 13:10-21.  Both cases recognize that the *registrant*

13   has standing to file a trademark infringement suit under 15 U.S.C. § 1114(1)(a).  Yet, *Quabaug* is

14   distinguishable because the licensee bringing the Section 1114 claim was not the owner of the

15   registration for the mark, instead it had a non-exclusive license *from the registrant of the mark*. *See*

16   567 F.2d at 158-160.  The circumstances in *DEP* were even more attenuated where plaintiff lacked

17   direct ties to the owner of the registration and merely had a sub-license from one of the registrant's

18   distributors that expressly precluded it from enforcing the mark.  622 F.2d at 621-623.  These are

19   critical distinctions because Neo4j USA is the proper registrant for the Neo4j® Mark and the owner

20   thereof under the related company doctrine.

21       Even assuming *arguendo* that Neo4j USA were not the owner of the registration for the

22   Neo4j® Mark, it is well-established that one does not need to be the owner to have standing to assert

23   such claims under Section 43(a). *See* 15 U.S.C. § 1125(a); *see also Quabaug,* 567 F.2d at 160 ("one

24   who may suffer adverse consequences from a violation of section 1125(a) has standing to sue

25   regardless of whether he is the registrant of a trademark"); *Adidas America, Inc. v. Athletic*

26   *Propulsion Labs, LLC*, 120 U.S.P.Q.2d 1303, 2016 WL 3896826, *3-4 (D. Or. 2016) (Adidas

27   America, a nonexclusive licensee of Adidas AG, had standing to sue under Section 43(a)). Similarly,

28   even if the registration was invalid, which it is not, Plaintiffs' common law rights in the Neo4j®

842\3690595.10                                    - 3 -

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1    Mark would still persist. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

2    Defendants' argument that Neo4j USA does not have standing because its Lanham Act

3    claims revolve around their use and mention of software owned by Neo4j Sweden bearing the

4    Neo4j® Mark, and that Neo4j Sweden licenses it under the AGPL is unsupported and is wrong. *See*

5    PT Opp. at 11:5-24. As the Court recognized, the "GPL and AGPL are copyright licenses, not

6    trademark licenses." *See* Dkt. No. 85 at 7:27. Defendants' breach of the Neo4j Sweden Software

7    License is a separate issue from their infringement of the Neo4j® Mark.[2] The trademark claims

8    asserted by Neo4j are based on Defendants' improper use of the Neo4j® Mark in the promotion of

9    ***Defendants' software***, not their use of the underlying copyrighted source code.

10    Finally, there is no standing issue created by Neo4j USA raising Defendants' unauthorized

11    removal of the Commons Clause from the Neo4j Sweden Software License to establish their false

12    and misleading advertisement of ONgDB as "free and open source" Neo4j® EE. The Lanham Act

13    confers standing on "any person who believes that he or she is or is likely to be damaged by such

14    act." 15 U.S.C. § 1125(a)(1). Here, there is uncontroverted evidence that Defendants compete with

15    Neo4j USA for the same customers and a nexus between Neo4j USA losing business and

16    Defendants' false and misleading promotion of ONgDB. *See, e.g.,* Fact 93, 110-111; *see also* Dkt.

17    No. 98-1, Exhs. 42-54, 100, 103. Defendants' standing arguments thus fail. *See TrafficSchool.com,*

18    *Inc. v. Edriver Inc.,* 653 F.3d 820, 825 (9th Cir. 2011) (plaintiff alleging competitive injury under

19    the false advertising prong of Section 43(a) "need only believe that [it] is likely to be injured").

20    **B.      Defendants Do Not Establish that the Neo4j® Mark is Invalid**

21    The registration for the Neo4j® Mark is prima facie evidence of the validity of the mark and

22    the registrant's ownership of the mark. *See* 15 U.S.C. § 1115(a). Importantly, this "presumption

23    of validity is a strong one, and the burden on the defendant necessary to overcome that presumption

24    at summary judgment is heavy." *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1115

25    (9th Cir. 2010); *see also Vuitton et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 775 (9th Cir.

26    1981) (defendant bears the burden of establishing the invalidity of a registration and the court draws

27
28

---

[2] Defendants also ignore that Neo4j Sweden obtained a stipulated judgment in its favor on its DMCA and breach of license claims against GFI. GFI Dkt. No. 65 at ¶¶ 118-128; GFI Dkt. No. 110.

842\3690595.10                                                    - 4 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1    any inference from the facts in favor of the registrant of the mark).  While Defendants claim to

2    contest Neo4j USA's ownership of the Neo4j® Mark, they are actually challenging the validity of

3    the registration for that mark.[3]  *See Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1203

4    (9th Cir. 2012) ("[i]t is axiomatic in trademark law that the standard test of ownership is priority of

5    use") (internal quotes and citation omitted); *accord Am. Auto. Ass'n of N. California, Nevada &*

6    *Utah v. Gen. Motors LLC*, 367 F. Supp. 3d 1072, 1088 (N.D. Cal. 2019).  Specifically, Defendants

7    attempt to rebut the presumption of validity offering "facts" that were identical to those

8    underpinning their fraud in the procurement and naked licensing defenses that this Court ***previously***

9    ***struck with prejudice*** (Dkt. Nos. 70, 85)*,* which Defendants improperly revived in their Answer to

10   the TAC (Dkt. No. 91) and now raise here (PT Dkt. 100, Exhibit B at D Fact 130-132).[4]

### 1.    Defendants Fail to Meet Their Burden of Proof Establishing that the Registration for the Neo4j® Mark was Fraudulently Obtained

13   To invalidate the registration for the Neo4j® Mark based on fraud in the procurement,

14   Defendants must offer undisputed evidence that: "(1) a false representation regarding a material fact;

15   (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to

16   induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation;

17   and (5) damages proximately caused by that reliance."  *Hokto Kinoko Co. v. Concord Farms, Inc.,*

18   738 F.3d 1085, 1098 (9th Cir. 2013).  Notably, Defendants offer no evidence establishing a knowing

19   intent to deceive by Neo4j USA, or reliance by and any alleged damage to them.  *See* D Fact 130.

20   As for the first element, it is immaterial whether Neo4j USA existed at the time of claimed

21   first use.  Indeed, the PT Defendants previously conceded this was not grounds for invalidating the

---

[3] Defendants rely upon *Schwinn Bicycle Co. v. Murray Ohio Mfg. Co.,* 339 F.Supp. 973, 979 (M.D. Tenn. 1971), a non-controlling 50-year old case, for the proposition "that the ownership to a trademark is not conferred by registration." *See* Opp. at 12:20-23. That court made no such ruling and Defendants misconstrue the meaning "ownership," which the court noted "stems from prior appropriation and use." *See id*. The *Schwinn* court also made clear that challenging the validity of the registration was the appropriate way to rebut the presumptions conferred by a registration.

[4] Defendants' violation of the Court's orders and local rules, as well as the doctrines of claim preclusion and the law of case are discussed in detail in Plaintiffs' pending motion to strike their answer to the TAC wherein they impermissibly reasserted these defenses. *See* Dkt. Nos. 93-96.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3690595.10                                          - 5 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1   registration for the Neo4j® Mark. *See* Dkt. No. 70 at 8:4-18. This is because an applicant's claimed

2   date of first use cannot form the basis for cancellation of registration so long as the first use in fact

3   preceded the application date. *Pony Exp. Courier Corp. of Am. v. Pony Exp. Delivery Serv.*, 872

4   F.2d 317, 319 (9th Cir. 1989). Defendants also do not offer evidence that Neo4j USA failed to use

5   the Neo4j word mark in commerce prior to the April 30, 2014 filing date of the application. Nor

6   can they do so because Neo4j USA was using the Neo4j® Mark in interstate commerce before that

7   date. Fact 1 (Reply Ratinoff Decl., Exhs. A-D). Further, Neo4j USA was **legally entitled** to rely on

8   Neo4j Sweden's prior use of the Neo4j® Mark. *See* 15 U.S.C. § 1055 ("Where a [] mark sought to

9   be registered is [] used legitimately by related companies, such use shall inure to the benefit of the

10  registrant or applicant for registration, and such use shall not affect the validity of such mark or of

11  its registration…."); *see also* Trademark Manual of Examining Procedure ("TMEP") § 903.05.

12      Neo4j USA's purported failure to disclose that Neo4j Sweden was the owner of the rights to

13  the Neo4j word mark to the USPTO is also not a material omission. The USPTO's rules did not

14  require Neo4j USA to disclose that information in the application. *See* TMEP § 1201.03(c) ("Either

15  a parent corporation or a subsidiary corporation may be the proper applicant, depending on the facts

16  concerning ownership of the mark. The USPTO will consider the filing of the application in the

17  name of either the parent or the subsidiary to be the expression of the intention of the parties as to

18  ownership in accord with the arrangements between them."); *see also* TMEP § 1201.03(b) ("where

19  the application states that use of the mark is by a related company or companies, the USPTO does

20  not require an explanation of how the applicant controls the use of the mark").

21      As for the second element, Defendants baselessly **speculate** there is a "strong inference" that

22  Neo4j USA's COO allegedly knew that Neo4j USA did not own rights in the Neo4j word mark at

23  the time it filed the application. *See* D Fact 130. This does not invalidate the resulting registration

24  because "absent the requisite intent to mislead the USPTO, even a material misrepresentation would

25  not qualify as fraud under the Lanham Act warranting cancellation." *In re Bose Corp.*, 580 F.3d

26  1240, 1243 (Fed.Cir.2009); *see also Far Out Prods.*, 247 F.3d at 996 (an affidavit was fraudulent

27  only if the affiant acted with scienter). Indeed, Defendants offer no admissible evidence of any

28  intent to deceive by either Mr. Nordwall or Neo4j USA, and Defendants apparently knew that such

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3690595.10          - 6 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

SER_2279

1  evidence does not exist since they did not bother to take their depositions during discovery.  *See*

2  *Scat Enterprises, Inc. v. FCA US LLC*, 2017 WL 5749771, at *2 (C.D. Cal. June 8, 2017)

3  (cancellation claim failed because "[m]erely demonstrating that Plaintiff made a misrepresentation

4  is insufficient to establish that Plaintiff possessed the requisite intent to deceive").

5         Defendants also misconstrue the scope and application of the related companies' doctrine by

6  arguing that it is "only for registration and only allows the 'owner' of the trademark to use its

7  subsidiaries 'use' of the mark in the application."  Opp. at 14:3-6.  Defendants' reliance on Judge

8  Nies' concurring opinion from *In re Wella A.G.*, 787 F.2d 1549, 1554 (Fed. Cir. 1986) ("*Wella I*")

9  to support this proposition is improper since the Federal Circuit subsequently reversed the TTAB's

10  decision that was based on the same concurring opinion.  *See In re Wella A.G.*, 858 F.2d 725 (Fed.

11  Cir. 1988) ("*Wella II*").  In the *Wella* cases, a foreign corporation applied to register a WELLA mark

12  and the USPTO cited prior registrations owned by its subsidiaries as confusingly similar under § 2(d)

13  as owned "by another."  The *Wella II* court **rejected** Judge Nies' "additional views" that there can

14  be only one "owner" of a mark and nothing in the Lanham Act confers a right to register on a non-

15  owner, whether a licensee or subsidiary.  *Wella II*, 858 F.2d at 727.  The *Wella II* court further held

16  that because the parent owned substantially all of the stock of the subsidiary, it controlled the

17  subsidiary's actions and thus were the "same source" such that there was no likelihood of confusion

18  and the marks could be registered accordingly.  *Id*. at 728-29.  Defendants do note cite any

19  undisputed evidence that Plaintiffs used the Neo4j® Mark in a manner that deceived the public.

20         Again, it is undisputed that Neo4j USA wholly owns and controls Neo4j Sweden.  *See* Fact

21  1; *see also* Dkt. No. 98-2 at 1:17-18.  Further, Mr. Nordwall's declaration indicates that Neo4j USA

22  relied upon the related company provisions in the Lanham Act to register the Neo4j word mark.

23  Dkt. No. 100-3, Exh. 6 (p. 101 of 125).  Thus, Plaintiffs' unity of control over the Neo4j® Mark is

24  presumed.  *See* TMEP §§ 1201.07(b), 1201.07(b)(i), 1201.07(b)(ii); *see also W. Fla. Seafood, Inc.*

25  *v. Jet Restaurants, Inc.*, 31 F.3d 1122, 1126-27 (Fed. Cir. 1994) (separate entities operating as a

26  single entity in the eyes of the consuming public may be treated as such for trademark purposes).

27         The Supreme Court has recognized that "a corporation may adopt the subsidiary form of

28  organization for valid management and related purposes" and that this structure "may improve

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • PALO ALTO

842\3690595.10                          - 7 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1   management, avoid special tax problems arising from multistate operations, or serve other legitimate

2   interest."  *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 772-73 (1984) ("[a]t least

3   when a subsidiary is wholly owned … the ultimate interests of the subsidiary and the parent are

4   identical").  Here, the Intercompany Agreement relied upon by Defendants simply reflects the

5   intercompany division of assets, including trademarks, between Neo4j USA and Neo4j Sweden as

6   parent and wholly-owned subsidiary, and does not damage the validity of the mark either at the time

7   of registration or thereafter.  *See* 15 U.S.C. § 1055 ("***Where a registered mark … is or may be used***

8   ***legitimately by related companies***, such use shall inure to the benefit of the registrant …, ***and such***

9   ***use shall not affect the validity of such mark*** …, provided such mark is not used in such a manner

10  as to deceive the public.") (emphasis added); *see also Cont'l Distilling Corp. v. Old Charter*

11  *Distillery Co.*, 188 F.2d 614, 620 (D.C. Cir. 1950) ("[a] court of equity… does not hesitate to

12  disregard a corporate entity and to recognize that all the assets of a solvent wholly owned subsidiary

13  are equitably owned by the parent corporation").  Thus, any alleged failure by Neo4j USA to disclose

14  the internal management of intellectual property within its wholly controlled corporate group is

15  immaterial and cannot be used by Defendants to invalidate the registration for the Neo4j® Mark.[5]

16          **2.      Defendants Fail to Establish the Naked Licensing of the Neo4j® Mark**

17          Defendants' attempt to revive their failed naked license defense based on Plaintiffs allegedly

18  failing to offer evidence that Neo4j Sweden controlled the quality of Neo4j®-branded software used

19  by third parties fares no better.  *See* D Fact 131.  As discussed above, Defendants have the burden

20  of producing uncontroverted evidence to rebut the presumption of validity.  This is also an ***argument***

21  that the Court rejected in striking their naked licensing defense with prejudice.  *See* Dkt. No. 85 at

22  7:27-10:17.  It is also controverted by the Court's prior ruling that "the GPL and AGPL are copyright

---

[5] Defendants cite to dicta in *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) to suggest that Neo4j USA does not have legal title to Neo4j Sweden's assets, *i.e.*, the Neo4j® Mark.  This case is not instructive because it addressed the issue whether a corporation is deemed an instrumentality of a foreign state where that state owns less than a majority of shares for purposes of sovereign immunity, and did not involve the ownership of trademark rights or take into account the aforementioned provisions of the Lanham Act.  Further, the fact that Neo4j Sweden registered marks for "Neo4j" outside the United States is irrelevant for purposes of determining the validity of a U.S. registration, and is consistent Plaintiffs' parent-subsidiary relationship.  *See Hokto Kinoko*, 738 F.3d at 1097-99.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • PALO ALTO

842\3690595.10                                    - 8 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

SER_2281

1    licenses, not trademark licenses" and that "[n]aked licensing does not occur when there is no

2    trademark license at issue." *Id.* at 7:27-8:25.  As a result, they cannot invalidate the Neo4j® Mark

3    based on third party modifications to source code licensed under the GPL or AGPL. *See id.*

4         Likewise, Defendants' suggestion that an absence of quality control provisions in the

5    Intercompany Agreement amounts to the naked licensing of the Neo4j® Mark is wrong.  *See* Fact

6    132.  This "fact" does not overcome the legal presumption that Neo4j USA and Neo4j Sweden

7    continue to operate as "related companies" and their continued combined use of the Neo4j® Mark

8    "shall not affect the validity of such mark." 15 U.S.C. § 1055; *see also See Hokto Kinoko*, 738 F.3d

9    at 1098 (no naked licensing where subsidiary used parent company's trademark).  Moreover,

10   Defendants ignore that Plaintiffs offered uncontroverted evidence that they work closely to ensure

11   that the software bearing the Neo4j® Mark is of the highest quality.  *See* Dkt. No. 98-2 at ¶¶ 19-22.

12        Finally, Defendants do not offer any admissible evidence establishing consumer confusion

13   resulting from the licensing arrangement between Neo4j USA and Neo4j Sweden.  Nor can they do

14   so because it is entirely permissible for a related company such as Neo4j Sweden to use the Neo4j®

15   Mark alongside Neo4j USA.  *See Hokto Kinoko*, 738 F.3d at 1098 ("[e]ven absent formal quality

16   control provisions, a trademark owner does not abandon its trademark where the particular

17   circumstances of the licensing arrangement suggests that the public will not be deceived") (internal

18   quotes and citation omitted).  As a result, the Court should again reject this defense.

19        **C.    Defendants Have Not Engaged in Nominative Fair Use of the Neo4j® Mark**

20        In order to rely upon nominative fair use, (1) defendant's product must be one not readily

21   identifiable without use of plaintiffs' trademark; (2) only so much of that mark may be used as is

22   reasonably necessary to identify defendant's product; and (3) defendant must do nothing that would,

23   in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.  *Toyota*

24   *Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175-76 (9th Cir. 2010).  Plaintiffs need only

25   negate one of these elements to defeat Defendants' reliance on the nominative fair defense.  *See*

26   *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.,* 354 F.3d 1020, 1030 (9th Cir. 2004)

27   (because defendants use of plaintiff's mark ran afoul of the first prong for nominative use, no need

28   to consider the other two); *see also Horphag Research Ltd. v. Garcia,* 475 F.3d 1029, 1041 (9th Cir.

842\3690595.10                          - 9 -

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1  2007) (defendant's use must meet all three fair use prongs).  Despite Plaintiffs setting forth how

2  Defendants' use of the Neo4® Mark to promote ONgDB software does not meet each element,

3  Defendants only unsuccessfully attempt to address the third.  *See* Opp. at 15:15-17:17.

**1.  The Undisputed Facts Establish that Defendants Impermissibly Used the Neo4j® Mark to Refer to Their Products and Services**

6  Defendants cannot rely on a nominative fair use defense where they use the Neo4j® Mark

7  to refer to Defendants' products rather than Plaintiffs' products. *Align Tech., Inc. v. Strauss Diamond*

8  *Instruments, Inc.*, 2019 WL 1586776, at *5-7 (N.D. Cal. Apr. 12, 2019) ("[i]n nominative fair use,

9  the defendant uses the trademarked term not to describe its product but to describe the plaintiff's

10 [product]"). Defendants do not dispute that they used Neo4j® Mark to promote "Government

11 Packages for Neo4j" and "Government Development Package with Neo4j Enterprise." *See* Fact 8,

12 15-16, 25, 27.  Instead, Defendants argue that they cannot be held liable for trademark infringement

13 because did not use the Neo4j® Mark "for the promotion of [Neo4j] USA's products" and were

14 instead referring to "Sweden's open source software called Neo4j." *See* Opp. at 11:5-13, 14:17-20.

15 This is a distinction without a difference because the Neo4j® Mark is registered as a standard

16 character mark, and as a result Neo4j USA's exclusive right to use the mark "is extremely broad,

17 covering the word in all types of depictions."  *Pom Wonderful LLC v. Hubbard,* 775 F.3d 1118,

18 1125 (9th Cir. 2014); *accord Rise Basketball Skill Dev. LLC v. K Mart Corp.*, 2017 WL 4865561,

19 at *3 (N.D. Cal. Oct. 27, 2017) (citing same) ("ownership of a word mark entitles the owner

20 exclusive rights in the word for the class of goods specified in the trademark").  This argument also

21 echoes their failed defense that Plaintiffs cannot use the Neo4j® Mark as both a company name for

22 Neo4j USA and Neo4j Sweden, as well as the name of its software products.  *See* Dkt. No. 70 at

23 9:3-10:24.  In this regard, the Court held that "[t]he Lanham Act expressly recognizes that a

24 registered mark "may be used legitimately by related companies." *See id.* at 10:8-11.  More

25 importantly, a review of iGov's website shows the overly-repetitive use of the Neo4j® Mark to

26 promote its recompiled patchwork binaries.  Fact 15-17, 19, 26-28, 30-32, 34.

27 Defendants also argue that their promotion of iGov's patchwork binaries "have been to

28 marketing and service [sic] Sweden's open source Neo4J software and derivatives of such software

842\3690595.10                                                    - 10 -

1   as permitted under the GitHub Terms of Service and the AGPL."  *See* Fact 25-28. It is immaterial

2   that the underlying source code used by iGov was licensed by Neo4j Sweden under the AGPL

3   because it is not a trademark license and does not give licensees "any rights to use the [Neo4j®

4   Mark]." Dkt. No. 85 at 7:27-8:2.  Likewise, there is nothing in the GitHub Terms of Service (GTOS)

5   that expressly or implicitly contemplates a user licensing their trademark to other GitHub users, and

6   Defendants cite no evidence establishing that Plaintiffs agreed to license the Neo4j® Mark to third

7   parties under any GTOS.  *See Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118,

8   1129-30 (9th Cir. 2006) (normally a mark owner intentionally enters into an express license, and for

9   an implied license to exist, there must be "evidence of an agreement or course of conduct by the

10  parties to contract for a trademark license").  To the contrary, the GTOS warns them that "use of the

11  Website and Service must not violate any applicable laws, including copyright or trademark

12  laws…."  Dkt. No. 100-3, Exh. 9 at § C.  It also does not include trademarks in the definition of

13  "Content" that other users may have a right to use under the GTOS, and a plain reading of this

14  definition makes clear that it is intended to cover copyrightable works.  *Id.*, §§ A.4, D.5.

15      Further, Defendants do not refute their use of the Neo4j® Mark in the URL

16  "https://igovsol.com/neo4j.html" to promote their patchwork binaries of Neo4J® EE.  Fact 16.  They

17  even ***admit*** that "iGov continued to use "https://igovsol.com/neo4j.html" as a URL address to

18  promote ONgDB until it deactivated that page sometime after July 27, 2020."  Fact 18.  Thus, they

19  cannot claim this is fair use.  *See Brookfield Commc'ns Inc. v. West Coast Ent. Corp.*, 174 F.3d

20  1036, 1064-65 (9th Cir.1999) ("[u]sing another trademark in one's metatags is much like posting a

21  sign with another's trademark in front of one's store"); *see also Experience Hendrix, L.L.C. v.*

22  *Hendrixlicensing.com, Ltd.*, 2010 WL 2104239, at *6 (W.D. Wash. May 19, 2010) (use of plaintiff's

23  HENDRIX mark in defendants' URL addresses and business names did not describe plaintiffs'

24  products but rather defendants' products); *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F.Supp.3d

25  322, 342 (S.D.N.Y. 2020) (holding that use of a trademark in a URL is not fair use).  The fact that

26  iGov ceased using this URL after July 27, 2020 – almost two years ***after*** Plaintiffs filed suit – does

27  not absolve it of liability for past infringement of the Neo4j® Mark.  *See* 15 U.S.C. § 1117(a).

28      Similarly, Defendants do not refute that they used neo4j@igovsol.com as means for

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3690595.10                                      - 11 -

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

SER_2284

1   consumers to inquire about the patchwork of ONgDB binaries claimed be equivalent to Neo4j® EE.

2   Fact 16, 19 (Dkt. No. 93-1, Exhs. 15-16, 62-64, 67-69 [purple highlights]).  Instead, they argue they

3   the email address is for inquiries about "Sweden's open source Neo4j," as "as a way to inquire about

4   iGov support services and support for the neo4j open source database," and "a means to inquire

5   about ONgDB" and "ongdb open source license support." Fact 16, 19.  This is still not fair use

6   because they are using the goodwill associated with the Neo4j® Mark to promote their patchwork

7   binaries for ONgDB, rather than merely referring to Plaintiffs' unmodified software.

8       Finally, Defendants claim that their use of the Neo4j® Mark *ad nauseam* throughout iGov's

9   website was merely for "comparative advertisement" purposes.  *See* Fact 25-27.  A review of

10  Defendants' website from 2018 through 2020, the contents of which are not disputed, completely

11  undermines this claim.  *See* Fact 15-21, 25-27 (cited webpages).  Defendants' website does not

12  independently promote ONgDB as a graph database software with minimal or nominative use of the

13  Neo4j® Mark, and Defendants used the mark to promote ONgDB and related support services for

14  ONgDB.  *See* Fact 29.  For example, Defendants do not dispute that iGov used a "Download Neo4j

15  Enterprise" hyperlink on its 'downloads' page to redirect consumers to download links for ONgDB

16  until July 27, 2020."  Fact 20; *see also* Fact 27(3).  Thus, there is no disputed issue of fact that

17  Defendants used the Neo4j® Mark to impermissibly promote their products, and therefore cannot

18  rely upon nominative fair use to preclude the Court from entering summary judgment against them.

19  **2.    The Undisputed Facts Establish that Defendants Used the Neo4j®
20          Mark More Than Was Reasonably Necessary and Not for the Purpose
        of Comparative Advertising**

21      Defendants completely ignore incontrovertible evidence that they use the Neo4j® Mark far

22  more than what is reasonably necessary to describe ONgDB 3.5 as a divergent fork of official

23  Neo4j® EE.  Rather, any reasonable jury would conclude from the undisputed evidence that

24  Defendants extensively used the Neo4j® Mark (albeit without proper trademark usage and notices)

25  on their websites and in direct solicitations to customers to describe their patchwork of binaries as

26  official Neo4j® EE, except with a fraudulently altered license.  *See* Fact 28-30.  No matter how hard

27  Mr. Suhy *argues* in his declaration to the contrary, Defendants go far beyond what is reasonably

28  necessary and are not engaging in comparative advertising.  *See id.*  It constitutes a misuse of the

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • PALO ALTO

842\3690595.10                                    - 12 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1   Neo4j® Mark that defeats its source-identification function. *See Playboy Enters., Inc. v. Welles*,

2   279 F.3d 796, 804 (9th Cir. 2002) (holding that "[t]he repeated depiction of 'PMOY '81' is not

3   necessary to describe" a former "Playmate of the Year" on her website).

4        Likewise, Defendants can only use the Neo4j® Mark "in advertising and other channels of

5   communication *if the use is not false or misleading*." *See New Kids on the Block v. News Am. Pub.,*

6   *Inc.*, 971 F.2d 302, 307 (9th Cir. 1992) (emphasis added).  This is not the case here because as

7   detailed below, Defendants are misleadingly promoting ONgDB *as Neo4j® EE* except without the

8   commercial limitations imposed by the Commons Clause in the Neo4j Sweden Software License.

9   Defendants' suggestion that they are fairly using the Neo4j® Mark to advertise their support and

10  consulting services for either ONgDB or official Neo4j® EE is equally problematic.  In this regard,

11  Defendants argue that the Commons Clause does not prevent their offering of such services and

12  "they have a right to tell consumers they can use Sweden's Neo4J open source software for free

13  instead of paying for USA's commercial license."  *See* Opp. at 15:11-12, 19:19-21; Suhy Decl.,

14  ¶ 23, Exh. 2.  The evidence relied upon by Defendants supporting this argument is unauthenticated

15  and inadmissible hearsay, as well as is irrelevant and lacks foundation because Ms. Meeker was not

16  speaking on behalf of Plaintiffs, was not specifically discussing the Neo4j® Sweden Software

17  License, and is not a party to that agreement.  *See* F.R.E. 602, 801 et seq.

18       More importantly, it contradicts the plain language of the Commons Clause, which states

19  this "License does not grant to you, the right to Sell the Software" and defines "Sell" as "practicing

20  any or all of the rights granted to you under the License to provide to third parties, for a fee or other

21  consideration (*including without limitation fees for hosting or consulting/ support services related*

22  *to the Software*), a product or service whose value derives, entirely or substantially, from the

23  functionality of the Software."  Dkt. No. 98-1, Exh. 39 (emphasis added).  Where "the language [of

24  a contract] is clear and explicit, and does not involve an absurdity," the language must govern the

25  contract's interpretation.  Cal. Civ. Code § 1638; *see also* Cal. Civ. Code § 1639.  Such is case here.

26       This further begs the question that if Defendants believed the services they offer do not

27  violate the Commons Clause, then why remove the clause in the first place?  The answer is simple:

28  Defendants are advertising paid services "aimed at building a solution around Neo4j," the value of

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • PALO ALTO

842\3690595.10                    - 13 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

SER_2286

1   which is entirely derived from Neo4j® EE's enhanced features and functionality over Neo4j® CE.

2   *See, e.g.,* Dkt. No. 98-1, Exh. 62-66 ("there is no reason you should be using community edition …

3   you should use the enterprise edition under it's open source license"), ("iGov Development

4   Packages $25K+ … 100% of the cost goes into services aimed at building a solution around Neo4j"

5   and "iGov Inc provides umbrella support across all the components of your Neo4j solution,

6   including Neo4j itself"), ("[w]e only focus on only supporting 100% free and open source ONgDB

7   Enterprise").  The undisputed facts thus establish that Defendants use the Neo4j® Mark more than

8   reasonably necessary to identify their product and services, and do so in a false and misleading

9   manner.  As a result, they cannot establish the second prong of nominative fair use.

10   **3.      Defendants Misappropriate the Cachet of the Neo4j® Mark**

11   Defendants offer no admissible evidence refuting they made the statements on their website

12   and directly to customers suggesting sponsorship or endorsement of Defendants' "Neo4j Enterprise"

13   and ONgDB products by Neo4j USA.  *See* Fact 31-33.  Defendants also offer no admissible evidence

14   refuting that they used hyperlinks to redirect consumers to Neo4j USA's official release and

15   Plaintiffs' other documentation in promoting ONgDB.  *See* Fact 34.  Instead, Defendants argue that

16   their website makes clear that they are not affiliated with Neo4j USA, and without citing to any

17   admissible evidence, that "[a] reasonable consumer would not be confused that defendants' websites

18   are … sponsored by [Plaintiffs]."  Dkt. 100 at 16:18-20.

19   Defendants miss the mark by focusing on website affiliation, while ignoring their use of the

20   Neo4j® Mark misleadingly suggests Plaintiffs' sponsorship or approval of their "Neo4j Enterprise,"

21   "Government Package for Neo4j" and ONgDB products.  This is because they are misappropriating

22   the goodwill associated with the Neo4j® Mark and "appropriate[ing] the cachet of one product for

23   a different one." *See New Kids on the Block*, 971 F.2d at 308-309; *see also Horphag*, 475 F.3d at

24   1038.  Defendants' representations about their products on their website and directly to customers

25   in conjunction with the use of Neo4j® Mark would lead any reasonable consumer to assume they

26   are getting official Neo4j® EE as free open source software, when in fact, it is receiving an

27   improperly licensed, non-identical build of that software not compiled by Plaintiffs.  Fact 31-34.

28   Neo4j USA is not required to prove actual customer confusion to negate the third prong of

842\3690595.10                    - 14 -

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1  Defendants' nominative fair use defense.  *Brookfield*, 174 F.3d at 1050 (absence of actual confusion

2  is not dispositive and is "generally unnoteworthy").   Nonetheless, Defendants fail to adequately

3  refute all of the evidence of customer confusion cited by Plaintiffs.  *See, e.g.*, Fact 36 (only

4  addressing 3 of the 14 cited exhibits showing Suhy misleading consumers into believing that

5  ONgDB and Neo4j® EE were one and the same); Fact 37 (not addressing any cited evidence

6  showing Suhy creating customer confusion by falsely equating ONgDB with commercially licensed

7  Neo4j® EE, and claiming it is "free and open source").   One example of customer confusion

8  Defendants ignore is the RFQ for Northrup Grumman signed by Suhy states "Neo4j Enterprise open

9  source distribution licenses and basic support. Aka ONGDB."  Fact 36-37 (Dkt. No. 98-1, Exh. 55

10  at p. 4 of 5, Exh. 3 at 235:21-237:14, Exhs. 130-131).   Perhaps the best example of Defendants

11  capitalizing on consumer confusion that they ignore is their misrepresentations to Next Century

12  about the Commons Clause being invalid and that ONgDB was a drop-in equivalent to Neo4j® EE

13  except it was free to use under the APGL.  Fact 36 and 37 (Dkt. No. 98-1, Exhs. 47-49); Fact 76

14  (Dkt. No. 98-1, Exh. 48-50, 120); Dkt. No. 98-3, ¶¶ 20-24, Exhs. 12-13); Fact 111.

15          Lastly, Defendants' attempt to downplay the customer issues cited by Neo4j USA by arguing

16  that the issues are user error or are inherent in Neo4j Sweden's code and miss the mark.  *See* Fact.

17  No. 38; *see also* Opp. at 17:4-7. The fact that consumers sought help from either Plaintiffs or other

18  users of Neo4j® software when they encounter issues with ONgDB implicates the source-

19  identification function of the Neo4j® Mark, and thus supports a strong inference of uncertainty and

20  confusion in the minds of consumers caused by Defendants.  *See Horphag*, 475 F.3d at 1038.  Their

21  hearsay objection to this evidence is also unsustainable. *See* Opp. at 17:4-8; Fact 35.  For example,

22  when asked about why Defendants found a user complaining to Neo4j USA that ONgDB was not

23  compatible with Neo4j® Desktop was funny (Dkt. No. 98-2, Exhs. 115-116), GFI confirmed actual

24  confusion because it was ***not compatible*** (*id.,* Exh 31 at 230:12-233:10), and iGov effectively

25  conceded that Neo4j® EE appealed to less sophisticated customers than they originally believed

26  (*id.,* Exh. 3 at 207:12-209:3).  Fact 35.  This means there is a broader customer base that is more

27  likely to be confused by Defendants' use of Neo4j® Mark in promoting ONgDB.  Accordingly, the

28  Court should grant partial summary judgment in favor of Neo4j USA on its trademark infringement

842\3690595.10                                    - 15 -

1    claims based on Defendants' *unfair* use of the Neo4j® Mark to promote their products.

2        **D.    Defendants Fail to Address their Liability for Infringement as Ex-Licensees**

3        Defendants do not dispute that they agreed to certain restrictions in exchange for a non-

4    exclusive license to the Neo4j® Mark under Section § 4.1 of the Neo4j Solution Partner Agreement

5    ("SPA"), and agreed to be bound by the additional restrictions imposed by Neo4j USA's trademark

6    usage guidelines.  Fact 2-5.  They also do not dispute that they agreed to cease using the Neo4j®

7    Mark upon termination, or refute that they continued to use the Neo4j® Mark after termination.

8    Fact 6-8. Defendants then ignore that their subsequent usage of the Neo4j® Mark to first promote

9    their patchwork binaries, and then ONgDB as genuine Neo4j® EE violated these guidelines.[6]

10   Compare Dkt No. 98 at 21:20-23:10 and Opp. at 17:19-20:14.  They further ignore the controlling

11   authority cited by Plaintiffs that an ex-licensee's continued use of a trademark alone establishes a

12   likelihood of consumer confusion and thus concede infringement of the Neo4j® Mark.  *See id.*

13       Instead, Defendants argue that the open source restrictions in Section 4.3.2 of the SPA are

14   unenforceable. Opp. at 19:12-20:7.  This is irrelevant because Neo4j USA is not seeking to enforce

15   these restrictions in Section 4.3.2, and issue of whether that provision violates public policy is a

16   Phase 2 issue.  To the extent that that provision may later found to be invalid does not negate the

17   presumed consumer confusion created by Defendants' status as a hold-over infringer of the Neo4j®

18   Mark.[7]  *See* Fact Dkt. No. 98-1, Exh. 4 at § 10.6 (severability).  In this regard, Defendants *admit*

19   PureThink's successors-in-interest are bound by the SPA (Fact 9) and *repeatedly admitted* to

20   forming iGov to circumvent the restrictions imposed by the SPA irrespective of their validity (Fact

21   10).  Defendants websites also make this clear (Fact 10 [Dkt. No. 98-1, Exhs. 14-16]), and Suhy

22   testified that iGov continued PureThink's business relationship with the IRS (Fact 13 [Dkt. No. 98-

23   1, Exh. 3 at 53:4-11]).  Yet, Defendants fail to reconcile that California law does not permit

24   PureThink from circumventing *all* of its legal obligations under the SPA by forming iGov (Dkt. No.

---

25   [6] Defendants attempt to dispute their continued usage of Neo4j® Mark by arguing they were only

26   referring to "Sweden's open source versions of Neo4J and proper nominative use of Sweden's

27   mark."  Fact Nos. 8, 24.  As detailed above, this is a meritless distinction.

28   [7] For this same reason, Defendants' reliance on licensee estoppel based on the SPA being against
     public policy is untenable.  *See* Opp. 21:1-6.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • PALO ALTO

842\3690595.10
- 16 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

SER_2289

1   23:24-24:6).  As the owner of PureThink and iGov, Suhy and his customer contacts are the main

2   assets.  His use of the same website template, and the same offices and support telephone number

3   simply confirms that no reasonable finder of fact would conclude otherwise.  *See* Fact 11-14.

4          Thus, iGov and Suhy are imputed with the knowledge of Neo4j USA's guidelines and the

5   presumption that they are precluded from using the Neo4® Mark resulting in a violation thereof.

6   *See Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F.Supp.3d 816, 826-27 (N.D. Cal. 2015).

7   Likewise, they are equally guilty of creating consumer confusion by promoting recompiled software

8   as being identical to official Neo4j® EE or otherwise affiliated with or endorsed by Plaintiffs.  *See*

9   *Wetzel's Pretzels, LLC v. Johnson*, 797 F.Supp.2d 1020, 1028 (C.D. Cal. 2011).

10         **E.    Defendants' Licensee Estoppel Arguments are Meritless**

11         Defendants raise two licensee estoppel arguments in their opposition – none are germane to

12  the Phase 1 claims and defenses.  First, they argue that licensee estoppel does not bar Defendants

13  from attacking Neo4j USA's ownership of the Neo4j® Mark.  Opp. at 20:16-25.  While Plaintiffs

14  did not assert licensee estoppel against Defendants in their moving papers, this doctrine bars a

15  former licensee from challenging the licensor's mark based upon facts that arose before or during

16  the term of the license.  *See Heaton Distributing Co. v. Union Tank Car Co.*, 387 F.2d 477 (8th Cir.

17  1967) (subsequent validity challenges by former licensees not allowed); *Idaho Potato Commission*

18  *v. M & M Produce Farm & Sales,* 335 F.3d 130, 135 (2d Cir. 2003) ("licensee estoppel provides

19  that when a licensee enters into an agreement to use the intellectual property of a licensor, the

20  licensee effectively recognizes the validity of that property"); *see also STX, Inc. v. Bauer USA, Inc.*,

21  43 U.S.P.Q.2d 1492 (N.D. Cal. June 5, 1997).  Since Defendants cite facts from 2010 and 2014,

22  before they entered the license, they are estopped from challenging the validity of the Neo4j® Mark.

23         Second, they erroneously argue that because Neo4j USA is a licensee of the Neo4j® Mark,

24  it is estopped from "disput[ing] that Sweden owns the Neo4j mark." Opp. at 21:8-16.  The doctrine

25  is inapplicable here because, as discussed above, Neo4j USA ***is the owner of that registration***, not

26  a licensee thereof.  Dkt No. 98 at Exh. 1.  Defendants further contend that because Neo4j USA

27  claims it is the owner of the Neo4j® Mark, a dispute exists. Opp. at 21:13-14. Defendants ignore

28  that there is no dispute between Neo4j USA and Neo4j Sweden regarding the ownership or validity

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • PALO ALTO

1    of the Neo4j® Mark, and they are in agreement that Neo4j USA is the owner of the registration of

2    Neo4j® Mark.  Fact 1; Rathle Decl. ¶¶ 3-4; Broad Decl. ¶ 3.  Simply put, there is nothing to estop.

3    **F.      Plaintiffs are Entitled to Summary Judgment on Neo4j USA's False
               Advertising Claims Under the Lanham Act and the UCL**

4

5           Neo4j USA's moving papers address all five elements necessary to prove a false advertising

6    claim under Section 43(a) of the Lanham Act and the UCL.  Defendants only address the falsity and

7    materiality elements thereby conceding Neo4j USA established the other three elements.  *See* Opp.

8    at 22:8-23:12.  As discussed below, Defendants cannot refute the falsity of their advertisements in

9    question, which they do not deny making, and the deception caused by those statements is material

10   to consumers' decision to use ONgDB for free rather than pay for license to use Neo4j® EE.

11          **1.      The Terms of the Neo4j Sweden Software License Do Not Give a
                       Licensee the Right to Remove Restrictions Imposed by the Copyright
12                     Holder and Licensor of the Underlying Software**

13          Defendants do not dispute that their marketing of ONgDB as "free and open source" Neo4j®

14   EE is primarily based on their (mis)interpretation of the Neo4j Sweden Software License and the

15   form AGPL upon which it was based.  They also concede that the falsity of that assertion hinges on

16   the interpretation of these license agreements.  *See* Opp. at 27:8-24; *see also* Fact 77-78, 81-84, 88-

17   91, 93. Contrary to Defendants, "[s]ummary judgment is appropriate when the contract terms are

18   clear and unambiguous, even if the parties disagree as to their meaning." *U.S. v. King Features*

19   *Entm't, Inc.,* 843 F.2d 394, 398 (9th Cir. 1988). While interpretation of these agreements is disputed,

20   their terms are not ambiguous as previously recognized by the Court.  *See* Dkt. No. 88 at 6:19-8:4.

21   Since Neo4j USA has asserted false advertising claims under the Lanham Act and the UCL, it

22   necessarily requires such a determination of the underlying license agreement to establish falsity.

23          Defendants justify their removal of the Commons Clause from Neo4j Sweden Software

24   License based on the erroneous assumption that "This License" as defined in that agreement means

25   the form AGPL without the commons clause.  *See* Opp. 28:1-9; *see also* Fact 88-91 ("Suhy did not

26   replace the Neo4j Software License … He only followed the instructions given by the AGPL license

27   copyright holder to make the actual license verbatim"); Fact 93 ("[t]he [FSF] owns the copyright for

28   the AGPL License.txt file and clearly states that the license must be verbatim").  This is wrong

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3690595.10                                    - 18 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

SER_2291

1   because third parties do not have standing to enforce FSF's copyright.  *See Minden Pictures, Inc. v.*

2   *John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015) (only the copyright owner, assignee or an

3   exclusive licensee of a right enumerated by §106 has standing to bring an infringement action); *see*

4   *also* GFI Dkt. No. 88 at 6:12-18 (citing same).

5          Further, the terms of the Neo4j Sweden Software License and their intent are not determined

6   by Suhy's email exchanges with the Free Software Foundation ("FSF").  *See* Opp. 29:14-23.  They

7   are irrelevant and inadmissible hearsay because FSF is not the actual licensor or a party to the actual

8   license.  Suhy conceded as much in his deposition.  Dkt. 98-1 at 187:12-188:15.  In any case, the

9   FSF did not bless Suhy's removal of the Commons Clause.  *See* Dkt. No. 100-2, Exh. B.  Suhy

10  admitted that the FSF did not seem to understand his questions, which prompted him to send second

11  a second email.  Dkt. No. 98-1, Exh. 3 at 183:2-184:10.  In response, the FSF did not agree with his

12  interpretation and stated that it could not give him legal advice.  *Id.,* Exh. 34 ("[i]f a work was

13  previously available under a free license, and later that license is changed, users can always use that

14  earlier version under the terms of the free license"); *see also* Exh. 3 at 189:1-191:3, 192:18-193:24.

15         Defendants then twist the definition of "License" and misconstrue the NOTICE provision at

16  the beginning of the Neo4j Sweden License to justify removing the Commons Clause.  *See* Opp. at

17  28:1-9, 28:23-29:13.    Defendants' arguments violate the cardinal principles of contract

18  interpretation.  In this regard, where "the language [of a contract] is clear and explicit, and does not

19  involve an absurdity," the language must govern the contract's interpretation.  Cal. Civ. Code §

20  1638.  In addition, "the meaning of a contract must be derived from reading the whole of the contract,

21  with individual provisions interpreted together, in order to give effect to all provisions and to avoid

22  rendering some meaningless." *Zalkind v. Ceradyne, Inc.*, 194 Cal.App.4th 1010, 1027 (2011); *see*

23  *also* Cal. Civ. Code § 1641 ("if reasonably practicable" a contract must be interpreted as a whole,

24  "so as to give effect to every part ... each clause helping to interpret the other").

25         The NOTICE provision clearly states that Neo4j® EE is developed and owned by Neo4j

26  Sweden… and is subject to the terms of the [AGPL], ***with the Commons Clause as follows***…." *See*

27  Dkt. No. 98-2, Exh. 3 (emphasis added).  The only logical way to read this and give effect to the

28  entirely of the agreement is that Neo4j Sweden is offering Neo4j® EE under a ***new license*** that

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3690595.10                                          - 19 -

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1    incorporates the terms of the AGPL with the additional terms in the Common Clause. *See* Cal. Civ.

2    Code. § 1641; *see also Segal v. Silberstein*, 156 Cal.App.4th 627, 633 (2007) ("[w]hen interpreting

3    contracts, the language used controls if it is clear and explicit"). Defendants also ignore that their

4    view nullifies the entire purpose of a license agreement by negating Neo4j Sweden's exclusive right

5    to control the modification and distribution of copyrighted code under the terms of its choosing. *See*

6    GFI Dkt. No. 88 at 7:10-8 (citing *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011)

7    and *Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008)).

8        Defendants' claim that Section 7 explicitly grants a licensee permission to remove additional

9    restrictions added by the original licensor, i.e. copyright holder, fares no better. *See* Opp. at 28:15-

10    29:7. In making that claim, the cite to the clause "If the Program as you received it, or any part of

11    it, contains a notice stating that it is governed by this License along with a term that is a further

12    restriction, you may remove that term." *Id.* This clause, however, cannot be read in isolation.

13    Rather, it must be put in context within the surrounding clauses in Section 7 and the Neo4j Sweden

14    Software License. *See* Cal. Civ. Code. § 1641; *Zalkind*, 194 Cal.App.4th at 1027. Notably, the

15    excerpt cited by them is preceded by the following in Section 7: "Notwithstanding any other

16    provision of this License, *for material you add to a covered work*, *you* may (if authorized by the

17    copyright holders of that material) supplement the terms of this License with terms: [six enumerated

18    terms omitted]…." *See* Dkt. No. 98-2, Exh. 3 at §7 (emphasis added). Defendants do not dispute

19    that "you" is defined as the "licensee," i.e. Defendants, in Section 0 of the Neo4j Sweden Software

20    License. *See* Opp. 28:10-14; *see also* Dkt. No. 98-2, Exh. 3 at §0. Thus, Section 7 clearly governs

21    the actions of *licensees* alone, ergo the repeated use of the defined term "you" and the fact that

22    subject matter of Section 7 pertains to what additional permissions and restrictions *licensees* may

23    place on a covered work when adding source code and redistributing it as required by the license.

24        The clause cited by Defendants is also immediately preceded by a clause stating that a

25    licensee who adds material to the original work may add any of the six enumerated "additional

26    restrictions" and that any other "non-permissive additional terms" are "further restrictions" *as*

27    *defined by Section 10*. *See* Dkt. No. 98-12, Exh. 3 at §7. In this regard, Section 10 makes clear that

28    only *licensees* are precluded from adding further restrictions: "*You* may not impose any further

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1  restrictions on the exercise of the rights granted or affirmed under this License." *See id.* at §10

2  (emphasis added). Since the Neo4j Sweden Software License – and the AGPL – defines "you" as

3  the *licensee*, it only prohibits *licensees*, such as Defendants, from imposing further restrictions, but

4  does not prohibit Neo4j Sweden as the *licensor* of the *Program* from doing so. *See* GFI Dkt. No.

5  88 at 7:6-9 (holding that "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further

6  restrictions, but do not prohibit a *licensor* from doing so") (emphasis in original); Reply Ratinoff

7  Decl., Exh. I, ¶ 5 (affirming that the Neo4j Sweden Software License with the Common Clause is

8  valid, and GFI's removal thereof and distribution of ONgDB violated that license and the DMCA).

9        Defendants' strained view that licensees may alter or remove terms from the Neo4j Sweden

10  Software License also goes against Neo4j Sweden's express intent of precluding others from

11  commercially benefiting from the software and the express language of terms such as the Commons

12  Clause. *See* Dkt. No. 98-2, ¶¶ 11-14. A licensor's intent to limit the commercialization of its

13  software generally should be given effect as intended by the *licensor*, not the licensee. *See Altera*

14  *Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1091 (9th Cir. 2005) (giving broad interpretation of "use"

15  clause that effectuated licensor's intent to prevent competitors from benefitting from its software);

16  *see also Micro Star v. Formgen Inc.*, 154 F.3d 1107 (9th Cir. 1998) (term in a license allowing users

17  of a computer game to develop enhancements, but barring the resale of the enhancements for a profit,

18  was enforceable); *Storm Impact, Inc. v. Software of the Month Club*, 44 U.S.P.Q.2d 1441, 1997 WL

19  566378 (N.D. Ill. 1997) (distribution for commercial purposes was infringement where terms of

20  license limited use to non-commercial purposes).

21        Finally, the Commons Clause must be harmonized with the balance of the Neo4j Sweden

22  Software License. Aside from its obligation to ascertain whether a contract is clear or ambiguous,

23  a Court has a duty to construe a contract to avoid a forfeiture, if at all possible. *Milenbach v. C.I.R.*,

24  318 F.3d 924, 936 (9th Cir.2003) ("[w]here there are two possible interpretations of a contract, one

25  that leads to a forfeiture and one that avoids it, California law requires the adoption of the

26  interpretation that avoids forfeiture, if at all possible"); *accord Universal Sales Corp. v. Cal., Press*

27  *Mfg. Co.*, 20 Cal.2d 751, 771 (1942). As detailed above, accepting Defendants' interpretation would

28  result in a forfeiture of Neo4j Sweden's right to license Neo4j® EE as it sees fit. As such, there is

842\3690595.10                                          - 21 -

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1   no disputed issue of fact that Defendants' statements, such as "ONgDB distributions are licensed

2   under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed

3   distributions with the same version number" are demonstratively false. *See* Fact 77-78.

**2.   Defendants' Claims that ONgDB is a Drop-in Replacement for Equivalent versions of official Neo4j® EE are Demonstratively False**

6   Defendants argue their advertising ONgDB as a "drop-in replacement" for Neo4j® EE is

7   merely an opinion, and cannot support a false advertising claim because the statement does not

8   expressly mention the quality or features of ONgDB. Opp. at 23:15-25:2. Their arguments are

9   legally and factually incorrect. As acknowledged by Defendants, Neo4j USA "may show that this

10  statement was literally false, either on its face or by necessary implication, or that the statement was

11  literally true but likely to mislead or confuse **consumers**." *Southland Sod Farms v. Stover Seed Co.*,

12  108 F.3d 1134, 1139 (9th Cir. 1997) (emphasis added); *accord* Opp. at 22:23-23:1. Thus, whether

13  Defendants believe these statements were an opinion or factually true is irrelevant.

14  Defendants primarily rely upon GFI's testimony about ONgDB version 3.5.4 to refute that

15  their representations were a drop in replacement for Neo4j® EE version 3.5.4 were false and/or

16  misleading. This does nothing to refute that Defendants' subsequent versions of ONgDB were not

17  true drop-in replacements and such statements were false or likely to mislead or confuse consumers.

18  To be sure, GFI ***again*** confirmed that it "is no longer developing ONgDB versions as drop in

19  replacements for Neo4j EE [] and does not describe versions after 3.5.4 as such." *See* Fact 96-97,

20  101. This is because GFI "no longer could … reliably guarantee that [ONgDB] was a drop-in

21  replacement" and was unwilling to do the testing to make such integration and compatibility

22  guarantees because it became "too hard to demonstrate" with the code become more divergent. Fact

23  101 (Dkt. No. 98-1, Exh. 31 at 188:5-17, 188:23-189:23). Notwithstanding GFI's admission, iGov

24  ***continues to*** makes drop-in replacement claims for ONgDB v3.5.5 and ONgDB v3.5.11. *See* Dkt.

25  No. 98-1, Exhs. 64-69, 71-74 [green highlights]; Exh. 46 ("All ONgDB distributions are drop-in

26  replacements for Neo4j Enterprise and Neo4j Community as they use the same code base and

27  versioning. Ex: ONgDB 3.5.8 is a drop-in replacement for Neo4j Enterprise 3.5.8 and so on.").

28  Since the producer of ONgDB says otherwise, any reasonable jury would conclude Defendants'

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3690595.10                                    - 22 -

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

SER_2295

1   post-version 3.5.4 representations were false or misleading.

2       Defendants' effort to create a disputed issue of fact concerning the actual qualitative

3   differences between ONgDB versus Neo4j® EE also falls flat.  Defendants attempt to downplay

4   their drop-in replacement statements by arguing that Plaintiffs failed to offer actual empirical testing

5   to show that ONgDB is of inferior quality and has an increased potential for instability.  Opp. 25:3-

6   26:10.  Defendants admit to having no visibility into enterprise-only source code after Neo4j®

7   v3.5.0-RC1 and the testing Plaintiffs employed with subsequent versions.  Fact 95, 98 (Dkt. No. 98-

8   1, Exh. 31 at 158:18-160:5; Exh. 3 at 223:1-224:9). Defendants also fail to offer evidence that the

9   testing done by GFI is equivalent to Plaintiffs' rigorous testing regiment.  As a result, Mr. Suhy's

10  declaration insisting that ONgDB is of the same quality has no evidentiary value.  *See* Dkt. No. 100-

11  1 at ¶¶ 39-40.  The fact that GFI admitted it stopped calling ONgDB a drop-in replacement for

12  equivalent versions of Neo4® EE after version 3.5.4 also negates Defendants' assertions to the

13  contrary.  As noted above, Neo4j USA must either show that these statements are demonstratively

14  false *or likely to mislead or confuse consumers*.  The unrefuted evidence concerning Defendants'

15  statements, at minimum, would lead any reasonable jury to find the latter since ONgDB is not 100%

16  identical, contains glue code, does not include every feature, and is not subject to the same level of

17  quality control as Neo4j® EE as conceded by GFI.  *See* Fact 95-97, 99-101.

18          **3.**      **Defendants Falsely Advertising ONgDB as a Free version of Neo4j® EE**
19                    **licensed under the APGL is Material to Customers' Decisions**

20      Defendants concede that price is material to customers' decision to choosing ONgDB by

21  arguing that customers can decide to pay $500,000 for Neo4j® EE or ONgDB for *free* without the

22  commercial limitations imposed by the Commons Clause.  *See* Opp. at 30:18-31:2.  Defendants then

23  argue that they made no false claims based on pricing.  *See id.*  This is undermined by undisputed

24  evidence that Defendants' websites and tweets contain statements that ONgDB is licensed under

25  AGPL as a free drop-in replacement for Neo4j® EE available under a paid commercial license.  *See*

26  Fact 77-78.  To be sure, Defendants' main selling point for ONgDB is that the money customers

27  save by not having to pay Plaintiffs for a license to Neo4j® EE can be used to pay iGov for support

28  and development services.  *See* Dkt. No. 98-1, Exhs. 62-66; *see also* Exhs. 42-43, 76-77.

842\3690595.10
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1    Defendants' additional argument that purchasing decisions were based on price - "there is

2    no evidence that a customer would have paid for a commercial Neo4J version of the software given

3    the availability of free ONgDB," defies logic. *See* Opp. at 31:2-6. Indeed, had Defendants not

4    illegally replaced the Neo4j Sweden Software License with the AGPL, they could not offer ONgDB

5    as a free, no-cost "drop-in" replacement. Defendants' additional argument that there is no evidence

6    of materiality ignores that "where a statement is literally false … both actual deception and

7    materiality are presumed." *AECOM Energy & Constr., Inc. v. Ripley*, 348 F.Supp.3d 1038, 1056

8    (C.D. Cal. 2018). They also ignore evidence that customers chose ONgDB over Neo4j® EE for this

9    reason. *See* Fact 105-106. Simply arguing that the statements are true or that Defendants never

10   used the terms "drop in replacement/equivalent" together do nothing to refute this fact. *See id.* To

11   the contrary, in their email exchanges with Next Century, Defendants assure that it can use ONgDB

12   under the AGPL at no-cost, and did not need to worry about the Commons Clause or have to obtain

13   a paid license from Plaintiffs. *See* Dkt. No. 98-1, Exh. 48-50. Next Century then ***chose*** ONgDB

14   over Neo4j® EE: "I work with Shahak Nagiel who wrote to you earlier regarding the possibility of

15   using OngDB instead of the enterprise edition of Neo4j. I am currently leading the Graph Database

16   team responsible for deploying an OngDB-based solution into production." *Id.*, Exh. 120; *see also*

17   Dkt. No. 98-3, ¶¶ 22-23; Exh. 12-13. Therefore, Neo4j USA is entitled to summary judgment on its

18   false advertising claims against Defendants as there are no disputed facts as to falsity and materiality.

19       **G.**    **False Designation of Origin**

20    Defendants' only response to Plaintiffs' argument in response to Neo4j USA's false

21   designation of origin claim is that there is an issue of fact on whether Defendants' statements

22   concerning ONgDB being "free and open source" Neo4j® EE under the AGPL are false. Opp. at

23   22:1-5. This is entirely based on Defendants erroneous belief that they could replace the Neo4j

24   Sweden Software License with a form AGPL. *See id.* As detailed above, their position is untenable

25   and not supported by the language of either of those agreements. Plaintiffs are therefore entitled to

26   summary judgment on their Section 43(a) false designation of origin claim against Defendants.

27       **H.**    **Plaintiffs are Entitled to Either Preliminary or Permanent Injunctive Relief**

28    Defendants argue that Neo4j USA is not entitled to injunctive relief because their unclean

hands defense may preclude it and the requested injunction is "overbroad." Opp. at 31:21-33:18 However, they do not explain how this defense, even if they were to succeed on it, would stop Neo4j USA from obtaining an injunction to halt their infringement of the Neo4j® Mark and false advertising of ONgDB. This is because it does not apply to these claims, which is why it was relegated to Phase 2. *See* Dkt. No. 81, ¶¶ 1-3. Even if the unclean hands defense were applicable, Defendants offer no explanation beyond insisting their discredited view of the APGL and do not explain why the Court could not issue it as a preliminary injunction until their defense is adjudicated.

## I.    The Court Should Deny Defendants' Cross-Motion for Summary Judgment

Defendants cross-move for summary judgment on Neo4j USA's trademark claims based the same theories that Neo4j USA does not own the Neo4j® Mark and they merely use mark for comparative advertising. Opp. at 33:21-34:4. As detailed above, they fail to meet their burden of proof on their invalidity defense, and fail to create a disputed issue of fact on the validity of the registration for the Neo4j® Mark. Likewise, Defendants' misuse of the Neo4j® Mark to promote their patchwork binaries of Neo4j® EE source code and ONgDB does not qualify as nominative fair use. Defendants also cross-move on Neo4j USA's false advertising claims based an alleged lack of evidence that consumers do not chose ONgDB because of price. *Id.* at 34:6-19. This makes no sense because they concede that customers choose ONgDB over Neo4j® EE because the former costs nothing, and Next Century chose it for this precise reason. As discussed above, the undisputed evidence establishes falsity because Defendants removed the Commons Clause in order to promote ONgDB as no-cost Neo4j® EE. The Court should therefore deny Defendants' cross-motion.

## IV.    CONCLUSION

For the reasons set forth herein and in their moving papers, Plaintiffs respectfully request that the Court (1) grant partial summary judgment in favor of Neo4j USA on its Lanham Act and UCL claims; (2) enter either a preliminary or permanent injunction as set forth in the previously filed proposed order; and (3) deny Defendants' cross-motion for summary judgment.

Dated:  February 16, 2021

HOPKINS & CARLEY
A Law Corporation

By: */s/ Jeffrey M. Ratinoff*
Jeffrey M. Ratinoff
Attorneys for Plaintiffs NEO4J, INC. and
NEO4J SWEDEN AB

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • PALO ALTO

842\3690595.10                                                - 25 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

# EXHIBIT A

**PLAINTIFFS' REPLY SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Claim 1: Trademark Infringement Against the PT Defendants and Their Nominative Fair Use Defense** | | |
| 1. Plaintiff Neo4j Inc. ("Neo4j USA") owns a protectable trademark | **Fact 1:** Neo4j USA is the owner of U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j® Mark"). Declaration of Jeffrey M. Ratinoff, ("Ratinoff Decl."), Exh. 1. | **DISPUTED:** Neo4j is not the owner, assignee, or exclusive licensee of the Neo4j mark, and therefore its ownership of U.S. Trademark Registration No. 4,784,280 is disputed. Declaration of Adron G. Beene ("Beene Dec."), Ex. 1 at §2.1.1., 2 and 3. |
| | **Additional Fact:** Neo4j Sweden is a wholly owned subsidiary of and controlled by Neo4j USA, and is a "related company" as referenced in the US application for the Neo4j® Mark. Rathle, Decl. at 1:17-18; Broad Decl. at ¶¶ 19-21; Beene Decl., Exh. 6 (p. 101 of 125). Neo4j USA actively offered licenses to Neo4j® software via its website from at least as early as July 2011 and immediately before it filed the application for the Neo4j® Mark. *Id.*, Exhs. A-D. | |
| 2. The PT Defendants impermissibly used the Neo4j® Mark after Neo4j USA terminated the Partner Agreement | **Fact 2:** On September 30, 2014, PureThink and Neo4j USA entered into the Neo4j Solution Partner Agreement ("Partner Agreement"). Ratinoff Decl., Exh. 4. | **DISPUTED:** The PT defendants use of the Neo4J trademark is nominative to identify NEO4J as a company and the Neo4J software and for comparative advertisement. Declaration of John Mark Suhy ("Suhy Dec.") ¶2, |
| | **Additional Fact:** Defendants admitted that PureThink entered into this agreement with Neo4j USA. Dkt. No. 90, ¶29; Dkt. No. 91, ¶ 29. | |
| | **Fact 3:** Under the Partner Agreement, PureThink was granted a non-exclusive, non-transferable limited license to, *inter alia*, use the Neo4j® Mark solely to market and resell commercial licenses to Neo4j® Enterprise Edition ("Neo4j® EE") and related support services in exchange for shared revenue for the licenses that it resold. *Id.*, Exh. 4 at § 4.1; Exh. 3 at 60:10-61:17, 57:25-69:11. | **UNDISPUTED** |
| | **Fact 4:** PureThink further agreed to the terms of the limited license under the Partner Agreement to use the Neo4j® Mark in accordance | **UNDISPUTED** |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | with Neo4j USA's "then-current trademark usage guidelines." *Id.*, Exh. 4 at § 4.1. | |
| | Fact 5: The Partner Agreement was subject to a 1-year term, and would automatically renew at additional 1-year periods subject to the notice and termination provision therein, thereby incorporating whatever was the operative trademark guidelines at that time. Ratinoff Decl., Exh. 4 at §7.1; Exh. 3 at 67:18-24.   As a result of the renewal provision, PureThink became bound by the October 13, 2015 version of Neo4j USA's trademark guidelines as of September 30, 2016. *See* Rathle Decl., ¶ 16, Exh. 5. | **UNDISPUTED** |
| | Fact 6: All rights and licenses to Neo4j® Software and the Neo4j® Mark would terminate upon the expiration or termination, and upon such an event, PureThink agreed to "cease using any trademarks, service marks and other designations of Plaintiffs." Ratinoff Decl., Exh. 4 at §7.3. | **UNDISPUTED** |
| | Fact 7: On July 11, 2017, Neo4j terminated the Partner Agreement thereby requiring PureThink to "cease using [Neo4j's] trademarks, service marks, and other designations…and remove from PureThink's website(s) marketing materials, [Neo4j's] trademarks and tradenames, including, without limitation, Neo4j" as required by Agreement. Ratinoff Decl., Exh. 12. | **DISPUTED**: Moving Party's reference to [Neo4j] is vague and misleading as the Partner Agreement provides "will cease using any trademarks, service marks and other designations of the *other party*" emphasis added. Ratinoff Decl., Exh. 4 at §7.3. Neo4J USA is not the owner, assignee or exclusively licensee of the mark and lacks standing to assert the mark. Beene Dec., Ex. 1. |
| | Fact 8: PureThink continued to use the Neo4j® Mark without Neo4j USA's authorization to send customers to iGov to obtain "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise." *See* Ratinoff Decl., Exh. 14. It also promoted "Neo4j Enterprise" as genuine Neo4j® EE despite being compiled by Suhy. *See id.*, Exh. 16. | **DISPUTED**:   The PureThink references are to Sweden's open source versions of Neo4J and proper nominative use of Sweden's mark. Suhy Dec. ¶3 |
| | Fact 9: Under the Partner Agreement, PureThink agreed that all contractual restrictions would apply to any successor-in-interest, assign, and acquirer of substantially all of its assets. Ratinoff Decl., Exh. 4 at § 10. | **UNDISPUTED** |
| | | **Additional Facts** |
| | **DISPUTED:** Section 7.3 of the Partner Agreement relates to its termination, and does not contain an assignment provision.  Suhy's testimony that there is no evidence of consent is inadmissible argument. | Under the Partner Agreement, assignment of the agreement, outside of a successor in interest required consent of Neo4J USA. Ratinoff Decl., Exh. 4 at |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | §7.3. No evidence of consent to the assignment exists. Suhy Dec. ¶61. |
| | **Fact 10:** Suhy and PureThink formed iGov on or about June 23, 2017 to circumvent the restrictions in Section 4.3.1 of the Partner Agreement. Ratinoff Decl., Exhs. 10-11, 14-15, 17-19; PT Dkt. No. 22, ¶¶ 18-19; *see also* Exh. 3 at 46:12-16, PT Dkt. No. 72 at 8:22-25, 9:15-23. | **DISPUTED:** iGov was formed as a separate entity by Suhy for several reasons. Suhy Dec. ¶4., Beene Dec. Ex. 4 at 45:4-47:5. The restrictions are for purposes of non-competition and void. Suhy Dec. ¶4. |
| | **Fact 11:** Suhy is sole owner and employee of PureThink and iGov, used the same website template, and initially used the same offices and support telephone number for both entities. Ratinoff, Decl, Exh. 3 at 21:23-22:22, 23:16-18, 37:3-38:16, 39:6-40:23, 47:20-49:8, 52:9-11. | **DISPUTED** - PureThink and iGov used the same office address for a mailing address until iGov could setup a new office.   iGov did not "use" the office address other than for correspondence.

The support telephone number is a 3rd party number that neither PureThink or iGov owned.  The website template used was a commercial template.  PureThink and iGov purchased the same template because Suhy was familiar with it. iGov did not use PT's computers.   Suhy Dec. ¶5. |
| | **Fact 12:** Suhy used both his iGov and PureThink email accounts to solicit customers that he had previously contacted under the Partner Agreement.  Ratinoff, Decl., Exhs. 19, 25, 29, 45-46, 54. | **DISPUTED:**  All new business development was done using iGov Inc emails (Exhibit 19, 46, and 54). Exhibit 25, 29 were discussions and not solicitations.)
The only entity who was a customer listed in this fact was Sandia National Laboratories.  They were a customer of PureThink and the communication was through PureThink.  (See Ratinoff, Decl. Exhibit 45). The solicitations were for use of Sweden's open source Neo4J. Suhy Dec. ¶6. |
| | **Additional Facts:** Exh. 19 was sent to the NGA and Exh. 54 was sent to the USAF via Suhy's iGov account, both which were originally PureThink relationships. Reply Ratinoff Decl., Exh. E at Resp. Nos. 5.24, 6.23-6.24, 13.5.  Exh. 46 was sent to the US Army via Suhy's iGov account, and was originally a PureThink relationship.   Reply Ratinoff Decl., Exh. E at Resp. 8.16. | |
| | **Fact 13:** iGov took over PureThink's business relationship with the IRS. Ratinoff, Decl, Exh. 3 at 53:4-54:25; Exh. 127. | **DISPUTED:** USA interfered with PT's potential business with the IRS. iGov did not take over PT's potential business relationship with the IRS. Suhy Dec. ¶7., Exhibit 1 |

**SER_2302**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Additional Fact:** Suhy established a relationship with the IRS via PureThink, and continued that relationship via iGov. *See* Reply Ratinoff Decl., Exh. E, Resp. No. 1.16(a)-(b), 8.3-8.4, 14.3-14.4. | |
| | <u>Fact 14</u>: The PureThink Defendants ("PT Defendants") claimed to be "the developer of the retired Neo4j Government Edition" in close connection with touting their prior relationship with Neo4j USA. Ratinoff Decl., Exhs. 15-19, 21, 62-64. | **DISPUTED:** Suhy and PureThink did develop the Neo4j Government Edition. the PT Defendants do not "tout" PT's prior relationship; they said it was terminated. Suhy Dec. ¶8 |
| | <u>Fact 15</u>: iGov used the Neo4j® Mark on its website without authorization to promote "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise," and related support services. *See* Ratinoff Decl., Exhs. 15-18, 21, 62-64. | **DISPUTED:** A nominative use does not require authorization. iGov references Sweden's Neo4J mark to reference Sweden's open source software called Neo4J to describe the software and uses USA's company name and products to identify them in comparative advertisement. Suhy Dec. ¶9 |
| | <u>Fact 16</u>: iGov's other unauthorized uses of the Neo4j® Mark on its website included: (1) using "https://igovsol.com/**neo4j**.html" as a URL to promote "Government Development Packages for **Neo4j**"; (2) prominently displaying a "Request Procurement Document Package" link with "**mailto:neo4j@igovsol.com**" embedded that creates an email addressed thereto upon activation; (3) encouraging consumers to obtain more information by sending an email to "**neo4j@igovsol.com**;" (4) using "Government Packages for Neo4j" and "Neo4j Enterprise" to describe iGov's patchwork binaries of Neo4J® EE; and (5) touting PT Defendants' prior relationship with Neo4j USA and to be "the developer of the retired Neo4j Government Edition." Ratinoff Decl., Exhs. 15-18, 21, 62-64, 67-69. | **DISPUTED:** Objection this is not a fact; it is argument. A nomantive use does not require authorization. USA does not own the trademark. D Fact . Beene Dec Exhibit 1,2,3. (4) "Government Packages for Neo4j" and "Neo4j Enterprise" were used to describe the government packages iGov provided support for around the free and open source neo4j database. Neo4j® Mark was never used.<br>The email address is for Sweden's open source Neo4j for inquires for that product. The email address was discontinued in the hopes USA would discontinue this litigation.<br>"Neo4j Enterprise" is needed to distinguish between the open source "Neo4j Community" and "Neo4j Enterprise" distributions, both of which are built when compiling the Neo4j source code.<br>iGov does not "tout" PT's prior relationship; they said it was terminated. Suhy Dec. ¶10 |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions, including Plaintiffs' | |

**SER_2303**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | exclusive right of use in connection with the Neo4j® products and services. Ratinoff Decl., Exh. 1; PT Dkt. No. 70 at 9:3-10:24.  The AGPL is not a trademark license, and thus does not permit Defendants to use the Neo4j® Mark to promote their recompiled binaries. *See* Rathle Decl., ¶¶ 15-18, Exhs. 5-7; PT Dkt. No. 85 at 7:27-8:2. | |
| | Fact 17: iGov continues to offer "Neo4j enterprise open source licensed distributions" and interchangeability referring to "ONgDB Enterprise" and "Neo4j Enterprise" on its website.   Ratinoff Decl., Exhs. 62-70 (highlighted in yellow). | DISPUTED:  iGov offers support for both Neo4j Enterprise open source licensed distributions, and ONgDB Enterprise open source distributions. Neo4j Enterprise distributions below 3.5 are still in use and available to the public. <br><br> iGov no longer offers distributions from it's website and only recommends ONgDB Enterprise distributions. iGov links to the GraphFoundation download page. Suhy Dec. ¶11 |
| 3. The PT Defendants used the Neo4j® Mark without Neo4j USA's authorization to promote ONgDB | Fact 18:  After Graph Foundation ("GFI") released ONgDB in July 2018, iGov continued to use "https://igovsol.com/neo4j.html" as a URL address to promote ONgDB until it deactivated that page sometime after July 27, 2020.  Ratinoff Decl., Exhs. 62-65; Exh. 13 at RFA No. 5.  While iGov replaced this url with "https://igovsol.com/graph.html," the contents of the page remained the same. *Compare id.*, Exh. 65 *and* Exh. 66. | UNDISPUTED |
| | Fact 19:  iGov used the neo4j@igovsol.com email address on its "neo4j.html" page (*id.*, Exhs. 62-65) and "downloads.html" page (*id.*, Exhs. 67-69) as means for consumers to inquire about ONgDB until sometime in July 2020.  Ratinoff Decl., Exh. 13 at RFA Nos. 7-11. | DISPUTED:  iGov used neo4j@igovsol.com and neo4j.html as a way to inquire about iGov support services and support for the neo4j open source database.  'neo4j' is Sweden's Github repository name for the official Sweden open source Neo4j repository.  It was not just a means for consumers to inquire about ONgDB but of the services and support around open source neo4j and ongdb open source license support. Suhy Dec. ¶12 |
| | Additional Facts: Suhy testified that he used the neo4j@igovsol.com for "any questions relating to the open-source Neo4j project around graphs. Anything where somebody would want consulting around that project" without Neo4j's authorization. Reply Ratinoff Decl., Exh. F at 41:4-16. The AGPL is not a trademark license, and thus does not permit | |

5

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Defendants to use the Neo4j® Mark with their recompiled binaries. *See* Rathle Decl., ¶¶ 15-18, Exhs. 5-7; PT Dkt. No. 85 at 7:27-8:2. | |
| | <u>Fact 20:</u> GFI used a "Download Neo4j Enterprise" hyperlink on its "downloads" page to redirect consumers to download links for ONgDB until July 27, 2020.  Ratinoff Decl., Exhs. 66-68 (highlighted in red), Exh. 13 at RFA Nos. 10, 14. | **UNDISPUTED** |
| | **<u>Additional Fact:</u>** This should state that iGov, not GFI used the hyperlink as admitted by the PT Defendants in requests for admissions. | |
| | <u>Fact 21:</u> iGov continues to promote "ONgDB Enterprise," "Neo4j Enterprise" and "Neo4j Enterprise Edition" versions 3.5.x as open source Neo4j® EE that can be used for free under the AGPL.  Ratinoff Decl., Exhs. 62-74. | **DISPUTED:** Neo4j Enterprise and ONgDB Enterprise are open source and free to use under the open source AGPL license.<br><br>After versions 3.4.x – the term Neo4j Enterprise Edition was not applicable as Neo4j Inc stopped contributing to the enterprise code.<br><br>iGov does not promote Neo4j Enterprise Edition 3.5.x as being open source.<br><br>Many of the exhibits are showing the same page over and over from different snapshot dates but with matching content giving the illusion that there were more pages than existed.<br><br>ONgDB 3.5.5 is a drop in replacement for Neo4j 3.5.5 (Community and Enterprise commercial.)<br><br>After reading this - iGov realizes that the next line needs to have the grammar cleaned up to say:  "**The AGPLv3 Open Source License, has** no limitations on causal cluster instances, cores or production usage"<br><br>Suhy Dec. ¶13 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 22**: iGov operated www.graphstack.io to further promote ONgDB using the Neo4j® Mark, and that "iGov Inc offers production support packages for Neo4j / ONgDB Enterprise open source distributions for US government agencies." Ratinoff Decl., Exh. 75. | **DISPUTED:** GraphStack is a graph development stack aimed at building out large scale AI and graph solutions. GraphStack is to promote iGov software packages and solution development, not specifically Neo4j. Both Neo4j and ONgDB will drop into GraphStack – so using the names is important to explain that GraphStack will work with both. Suhy Dec. ¶14 |
| | <u>Fact 23</u>: The GraphStack website used hyperlinks to redirect consumers to Neo4j USA's official release notes and "What's New" page in conjunction with encouraging consumers to download ONgDB as an alleged "[d]rop in replacement for Neo4j Core and Enterprise 3.5.3." Ratinoff Decl., Exh. 75; Exh. 13 [RFA Nos. 42-43]. | **UNDISPUTED** |
| 4. The PT Defendants knew their uses of the Neo4j® Mark were unauthorized and violated Neo4j USA's Trademark Guidelines | <u>Fact 24</u>: The trademark guidelines the PT Defendants had agreed to be bound by in the Partner Agreement prohibited the use of the Neo4j® Mark: (1) with anything other than "the software in the exact binary form that it is distributed by [Neo4j], without modification of any kind;" and (2) "in a web page title, titletag, metatag, or other manner with the intent or the likely effect of influencing search engine rankings or results listings." Ratinoff Decl., Exh. 4 at § 4.1; Rathle Decl., ¶¶ 15-16, Exh. 5; *see also* Exh. 4 at §7.1; Exh. 3 at 67:18-24 | **DISPUTED:** The Partner Agreement terminated on July 11, 2017 (Fact 7 above). Suhy and iGov are not parties to the Partner agreement. The PT defendants have not used USA's disputed trademark to market, sell or service and USA products. All marketing and services are limited to Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. Suhy Dec. ¶15 |
| 5. The PT Defendants did not use the Neo4j® Mark to describe Plaintiffs' products | <u>Fact 25</u>: The PT Defendants used the Neo4j® Mark to promote their "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise" rather than comparatively describe Plaintiffs' Neo4j® EE. Ratinoff Decl., Exhs. 14-18, 21, 62-65. | **DISPUTED:** PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16

All exhibits referenced except for exhibit 14  (15, 16, 17, 18, 21, 62-65 ) are all for iGov Inc sites are iGov sites, but have been incorrectly referenced in this fact as being PT Defendants. Suhy Dec. ¶17 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| | Fact 26: The PT Defendants often used the Neo4® Mark to promote ONgDB instead of to comparatively describe Plaintiffs' Neo4j® EE. Ratinoff Decl., Exhs. 62-74; Exh. 13 [RFA Nos. 4-11, 14]. | **DISPUTED:** PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16 |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| | Fact 27: The PT Defendants used the Neo4j® Mark on iGov's website as (1) an URL address for a page promoting their "Neo4j Enterprise" packages and ONgDB; (2) an email address for customers to obtain more information about their "Neo4j Enterprise" packages while referring to ONgDB; and (3) a hyperlink to redirect consumers to download ONgDB. Ratinoff Decl., Exhs. 14-18, 62-65, 67-69; Exh. 13 [RFA Nos. 4-11, 14, 33-34]. | **DISPUTED:** PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. 16 |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| 6. Defendant's product was readily identifiable without use of plaintiffs' trademark | Fact 28: Rather than naming their version of Neo4j® EE something else without using the Neo4j® Mark, the PT Defendants used the mark to name and promote their "Neo4j Enterprise" packages and while referring to ONgDB, as well as using the Neo4j® Mark to offer related support services for ONgDB.   Ratinoff Decl., Exhs. 14-18, 62-65, 67-69; Exh. 13 [RFA Nos. 4-11, 14, 33-34]. | **DISPUTED:** PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16<br><br>When Sweden's Neo4j open source code is compiled from the official Sweden Neo4j Github repository - it creates 2 distributions called "Neo4j Community" and "Neo4j Enterprise".  Enterprise is |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | a standard term for software used for business as in an "Enterprise" is a generic identifier.  Suhy Dec. ¶18 |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions.  *Id.*, Exh. 1. | |
| | Fact 29: Rather than independently promoting ONgDB as a graph database software without use of Neo4j® Mark, Defendants used the mark to promote ONgDB and related support services for ONgDB. Ratinoff Decl., Exhs. 62-65, 67-74; Exh. 13 [RFA Nos. 4-11, 14]. | **DISPUTED:**  Objection this is not a fact its argument.  ONgDB is a fork of Sweden's open source Neo4j and nominatively identified as such. Suhy Dec. ¶19 |
| 7. The PT Defendants prominently used the Neo4j® Mark beyond what was reasonably necessary | Fact 30: The PT Defendants extensively used the Neo4j® Mark (without proper trademark usage and notices) on their website, and in direct solicitations beyond describing "Neo4j Enterprise" packages and ONgDB as a forks of Neo4j® EE.  Ratinoff Decl., Exhs. 14-18, 24-26, 42-47, 62-65, 67-74; Exh. 13 [RFA Nos. 4-11, 14, 33-34]. | **DISPUTED:** PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16 |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions.  *Id.*, Exh. 1. | |
| 8. The PT Defendant's use of the Neo4j® Mark suggested sponsorship or endorsement by Neo4j USA | Fact 31:   The PT Defendants claimed that (a) "By default, all Government Packages for Neo4j now comes with Neo4j Enterprise included under it's open source license!" [Ratinoff Decl., Exhs 14-15]; (b) "The packages on this page are compiled by iGov Inc using the official Neo4j source code repositories located at https://github.com/neo4j" [*id.*, Exh. 16]; (c) "US Federal Government Packages for Neo4j Solutions" [*id.*, Exh. 17]; (d) "Government Development Packages for Neo4j" [*id.*]; (5) "iGov Inc is now the only US Federal contractor providing Neo4j Enterprise binaries packaged with it's [sic] free Open Source license!" [*id.*, Exh. 18]; (e) "Get the open source licensed Neo4j Enterprise distributions we package for our government customers" [*id.*, Exh. 21]; (f) "We compile and packaged the open source licenced [sic] distributions from the same official Neo4j Github Repositories as Neo4j Inc uses for their paid commercial licensed builds" [*id.*]; (g) "I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. If you don't know about Neo4j - here is their website: http://neo4j.com" [*id.*, Exh. 26].  *See also id.*, Exhs. 19-20, 62-66. | **DISPUTED** Objection this fact does not suggest sponsorship or endorsement by Neo4J USA. USA claim is misleading. PT and iGov websites, taken as a whole do not suggest sponsorship or endorsement by USA.  Suhy does not have a website. PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶20

All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16

The statements provided on the websites that PT "has ceased their partnership with Neo Technology" |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Ratinoff Decl. Exh. 14, that PT "has ceased their partnership with Neo4j Inc." *Id.* Exhs. 15, 17, 19, certainly reflects a total lack of sponsorship or endorsement. Suhy Dec. ¶21 |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| | **Fact 32:** The PT Defendants also claimed on iGov's website that (a) "We only focus on only supporting 100% free and open source ONgDB Enterprise & Neo4j Enterprise open source licensed distributions." [Ratinoff Decl., Exh. 66]; (b) "ONgDB Enterprise is a drop In replacement for Neo4j Enterprise commercial packages downloaded from Neo4j.com" [*id.*]; (c) "The distributions we package for the federal government and community as a whole are drop in replacements for Neo4j Enterprise commercial packages you download from neo4j.com" [*id.*]; and (d) "ONgDB (AKA ONgDB Enterprise) 3.5.11 is Neo4j 3.5.11 Core + the enterprise features Neo4j Inc removed from the code base as of v3.5.  All ONgDB and Neo4j Enterprise AGPL distributions can be used in production, in closed source projects, and with no limitations on # of cores or causal cluster instances." [*id.*, Exh. 74]. *See also, id.* at Exhs. 62-65, 71-73. | **DISPUTED:** Objection this fact does not suggest sponsorship or endorsement by Neo4J USA. USA claim is misleading. PT and iGov websites, taken as a whole do not suggest sponsorship or endorsement by USA.  Suhy does not have a website. PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶20

All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16

The statements provided on the websites that PT "has ceased their partnership with Neo Technology" Ratinoff Decl. Exh. 14, that PT "has ceased their partnership with Neo4j Inc." *Id.* Exhs. 15, 17, 19, certainly reflects a total lack of sponsorship or endorsement. Suhy Dec. ¶21 |
| | **Additional Facts:** As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original). This is also confirmed by the Stipulated Judgment entered in the GFI Action. Reply Ratinoff Decl., Exh. I (GFI Dkt. No. 110). Defendants promoted ONgDB as Neo4j® EE except that ONgDB is free and without commercial restrictions only because they removed the Commons Clause. Rathle Decl., ¶¶ 5-13, 27, 29, Exh. 3. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 33:** The PT Defendants solicited customers about ONgDB stating that (a) "I can explain why the foundation was created and how we package Neo4j Enterprise (We call ONgDB) distributions that are being adopted at IRS…" [Ratinoff Decl., Exh. 24]; (b) "the Graph Foundation was setup to ensure Neo4j/ONgDB remains free and open. It is Neo4j Core + Enterprise feature set added back in, so it is drop in replacement for a Neo instance of the same version. (Ex: 3.5.5)" [*id.*, Exh. 44]; (c) "ONgDB (Open Native Graph Database): Neo4j Enterprise OSS distribution downloads 3.5.8 will be up next week" and "ONgDB 3.5.8 is a drop-in replacement for Neo4j Enterprise 3.5.8" [*id.*, Exh. 46]; (d) "We compile Neo4j branded distributions for agencies who added Neo4j branded distributions instead of ONgDB branded distributions to their white lists. We have all versions of the Neo4j branded distributions up to 3.5 available" [*id.*,]; and (e) "Neo4j Enterprise open source distribution licenses and basic support. Aka: ONGDB" [*id.*, Exhs. 55, 131]. *See also, id.* Exhs. 43, 47, 54. | **DISPUTED:** Objection this fact does not suggest sponsorship or endorsement by Neo4J USA. USA claim is misleading. PT and iGov websites, taken as a whole do not suggest sponsorship or endorsement by USA. Suhy does not have a website. PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶20<br><br>All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16<br><br>The statements provided on the websites that PT "has ceased their partnership with Neo Technology" Ratinoff Decl. Exh. 14, that PT "has ceased their partnership with Neo4j Inc." *Id.* Exhs. 15, 17, 19, certainly reflects a total lack of sponsorship or endorsement. Suhy Dec. ¶21 |
| | **Fact 34:** In its promotion of ONgDB software, iGov used hyperlinks on its website to redirect consumers to Neo4j USA's official release notes (https://neo4j.com/release-notes/neo4j-3-5-5/) and "What's New" page (https://neo4j.com/whats-new-in-neo4j/) until it removed those references sometime in July 2020. *See* Ratinoff, Exhs. 67-69 (highlighted in blue). | **DISPUTED:** Because ONgDB is a fork of Neo4j which the core code is unmodified, the release notes and whats new page are relevant and provide important information. Suhy Dec. ¶22<br><br>Objection this fact does not suggest sponsorship or endorsement by Neo4J USA. USA claim is misleading. PT and iGov websites, taken as a whole do not suggest sponsorship or endorsement by USA. Suhy does not have a website. PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶20 |

11

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16<br><br>The statements provided on the websites that PT "has ceased their partnership with Neo Technology" Ratinoff Decl. Exh. 14, that PT "has ceased their partnership with Neo4j Inc." *Id.* Exhs. 15, 17, 19, certainly reflects a total lack of sponsorship or endorsement. Suhy Dec. ¶21<br><br>The Sweden GitHub repository for open source Neo4J provides content including USA's documentation. Under the GitHub Terms of Services, all users may use all content. Referring licensees to such documentation is permissive. Nevertheless, when Neo4j Inc complained - the links were removed. Suhy Dec. ¶23 |
| 8. The PT Defendant's use of the Neo4j® Mark caused actual consumer confusion | Fact 35: The PT Defendant's use of the Neo4j® Mark to promote ONgDB resulted in customers choosing ONgDB and encountering compatibility issues. Ratinoff Decl., Exh. 115-116; Exh 31 at 230:12-233:10; Exh. 3 at 207:12-209:3. | DISPUTED: Objection, the evidence is hearsay and there is no showing the use of the Name Neo4J caused consumer confusion. Consumers choose ONgDB because of price. This fact is conceded by Plaintiffs. Dkt. 98, p. 2:12-13; p. 32:6-10<br><br>PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶24<br><br>All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | to USA and its products are for comparative advertisement. Suhy Dec. ¶16<br><br>Exhibit 115:  Shows an anonymous user named "stephanie" asking about trying to use ONgDB with Neo4j Desktop, it does not mention a specific version or anything more.  There is no way of knowing if there was a "compatibility" issue, in fact the issue could have been caused because of an incorrect version number and could have occurred with Neo4j Enterprise distributions packaged by Neo4j.  Furthermore, USA responds and in no way explains or tells the user that ONgDB is not even provided by them.  The omissions in Neo4j's response would actually cause confusion because they are not saying anything about ONgDB being a 3rd party product. The confusion is caused by USA and Sweden's dual channel marketing of commercial and open source software through two different companies with the same name.  Exhibit 116 is simply forwarding this post to Brad Nussbaum.  Suhy Dec. ¶25 |
| | Fact 36: Defendants' interchangeable use of "Neo4j Enterprise" and "ONgDB" in marketing ONgDB misleads consumers into mistakenly believing that ONgDB and Neo4j® EE were one and the same.  *See, e.g.,* Exhs. 35, 40, 42-44, 46, 53, 55, 76, 100, 130-131, 134-135. | **DISPUTED:**  Defendants only used "Neo4j Enterprise" and "ONgDB" in descriptive manners. Furthermore defendants focused on educating consumers, not misleading them.  Specific versions of Neo4j and ONgDB had no difference in source code before enterprise source was closed.  Suhy Dec. ¶25<br><br>Even for those distributions, defendants made all the facts clear and never misled consumers. The inference drawn is not supported by the evidence: **Exhibit 35:** shows no confusion or misleading of customers.   The user is asking a question on the |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | ongdb github issue list and the content does not lead to any confusion.<br>**Exhibit 40:** Exhibit 40 clearly shows that there is no confusion as the user was asking about compiling the binaries himself. There is nothing in the exhibit supporting that this user was mislead.<br>"where can I find the source of the binaries you provide? could you provide instructions on how to build your binaries myself?"<br>**Exhibit 42:** Exhibit 42 shows actually shows that iGov is helping Perspecta Engineering Inc understand the differences between Neo4j and ONgDB.  Originally Perspecta had reached out to iGov and iGov responded explaining the facts and differences.   The statements in exhibits are true and not misleading. Suhy Dec. ¶27 |
| | Fact 37: The PT Defendant's use of the Neo4j® Mark to promote ONgDB as free open source and falsely [equate] it with commercially licensed Neo4j® EE created actual customer confusion. Ratinoff Decl., Exh. 48-49, 117-120, 130-131, 134-135. | **DISPUTED:** Defendants only used "Neo4j Enterprise" and "ONgDB" in descriptive manners. Furthermore defendants focused on educating consumers, not misleading them.  Specific versions of Neo4j and ONgDB had no difference in source code before enterprise source was closed.  Suhy Dec. ¶25<br><br>Even for those distributions, defendants made all the facts clear and never misled consumers. The inference drawn is not supported by the statement:<br><br>**Exhibit 35:** shows no confusion or misleading of customers.   The user is asking a question on the ongdb github issue list and the content does not lead to any confusion.<br><br>**Exhibit 40:** Exhibit 40 clearly shows that there is no confusion as the user was asking about compiling |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | the binaries himself. There is nothing in the exhibit supporting that this user was mislead. "where can I find the source of the binaries you provide? could you provide instructions on how to build your binaries myself?" **Exhibit 42:** Exhibit 42 shows actually shows that iGov is helping Perspecta Engineering Inc understand the differences between Neo4j and ONgDB.  Originally Perspecta had reached out to iGov and iGov responded explaining the facts and differences.   The facts in exhibit are true and not misleading.  Suhy Dec. ¶27 |
| | <u>Fact 38</u>: Consumers who have downloaded ONgDB rather than official Neo4j® EE have experienced technical issues with ONgDB.  Ratinoff Decl., Exh. 121-124, 133. In one instance, Suhy sent a user to Neo4j USA's operations manual for assistance. *Id.,* Exh. 125. | DISPUTED:  Mr. Suhy believes that the technical issues could be caused by Neo4j Core code that it does not modify or simply because an end-user did not read the instructions on configuring a specific feature.   Mr Suhy is not aware of a bug fix for this issue indicating it could have just been user error. The inference drawn is not supported by the statement:  In many of the exhibits Neo4j tries to show a problem, but does not show any proof that the problem was simply user error or configuration or an analysis of what the problem was.<br><br>Exhibit 121 does not give enough information to identify if there is a technical issue, and furthermore the user from the exhibit said that they figured out the problem on their own indicating it was user error.<br><br>Exhibit 122 seems to indicate that a plugin or misconfiguration of the JVM is the problem.<br><br>Exhibit 123 indicates that the user is using ONgDB 3.2.3 which would have had the same source code as the Neo4j Enterprise branded distribution. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Furthermore it seems that the issue was with the a 3rd party plugin called "tinker pop" and therefore was not even specific to Neo4j or ONgDB.  Because the source code for Neo4j and ONgDB was the same for that specific 3.2.3 version - if there was a technical issue - then it would have also been present in the Neo4j Enterprise 3.2.3 version as well.<br><br>USA charges customers and provides technical support for its commercial Neo4J products because consumers have technical issues with their "commercial" Neo4J products as well. Technical issues with software is not indicative of any difference in the software.  Suhy Dec.  ¶28 |
| **Claim 2: Trademark Infringement Against Graph Foundation Inc.** | | |
| 1. Plaintiff Neo4j Inc. ("Neo4j USA") owns a protectable trademark | Fact 39: Neo4j USA is the owner of U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j® Mark").  Declaration of Jeffrey M. Ratinoff, ("Ratinoff Decl."), Exh. 1. | **DISPUTED:** Neo4j is not the owner, assignee, or exclusive licensee of the Neo4j mark, and therefore its ownership of U.S. Trademark Registration No. 4,784,280 is disputed. Beene Dec, Exh. 1 at §2.1.1., 2 and 3. |
| 3.  GFI used the Neo4j® Mark without Neo4j USA's authorization to promote ONgDB | Fact 40: Defendants copied the code, removed the commercial restrictions imposed by the Neo4j Sweden Software License from Neo4j® EE version 3.4 and began promoting ONgDB as the open source Neo4j® EE 3.4 under the AGPL.  Ratinoff Decl., Exh. 24-26, 28-29, 37, 62, 86; *see also* Exh. 3 at 28:25-29:11, 171:23-172:23, 199:22-200:20; Exh. 31 at 87:24-90:9. | **DISPUTED:** Suhy did not remove commercial restrictions imposed by Neo4j.  He only followed the instructions of the License.txt copyright holder (free software foundation) making it verbatim.  The commons clause restrictions were still in effect and referenced in 1000s of files which Mr Suhy did not modify because the other files were copyrighted to Neo4j Sweden.  Following the rules for the License.txt file did not remove any restrictions on the software. Suhy Dec.  ¶29 |
| | **Additional Facts:**  GFI testified that Defendants removed the Commons Clause from the Neo4j Sweden Software License for Neo4j EE v3.4 and offered it as ONgDB.  Ratinoff Decl., Exh. 31 at 87:24-89:8. The AGPL and the Neo4j Sweden Software License also requires | |

842\3697141.3

16

**SER_2315**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | each copy of the software subject to the license to bear copyright notices. Rathle Decl., Exh. 3 at §§ 4-5. | |
| | <u>Fact 41:</u> GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB. GFI Dkt. No. 89, ¶ 18, Exh. 18; Ratinoff Decl., Exh. 31 at 81:14-20. | **DISPUTED** The referenced GFI GitHub repository page expressly describes ONgDB as follows: ONgDB (Open Native Graph DB) - Neo4j fork with enterprise code base. ONgDB integrates Neo4j Open Core commits. GFI Dkt. No. 89, Exh. 18. |
| | <u>Additional Fact:</u> There was no overt difference between GFI's original landing page for ONgDB and Plaintiffs' landing page on GitHub. Compare Dkt. No. 89, Exh. 18 *and* Ratinoff Decl., Exh. 59. | |
| | <u>Fact 42:</u> On January 17, 2019, GFI modified its landing page by changing the title to "ONgDB - Neo4j Enterprise Fork: Graphs for Everyone," adding references "ONgDB & Neo4j" and that "ONgDB & ***Neo4j Enterprise*** consist of modules from Neo4j Community Edition and modules licensed under AGPLv3 in this repository," but the content still remained almost identical to Plaintiffs' GitHub landing page and contained wide-spread misuse of the Neo4j® Mark. Dkt. No. 89, ¶¶ 19-21, Exhs. 19-21 (emphasis added). | **UNDISPUTED** that GFI's landing page was modified and that the modified page contained the quoted language.<br><br>**DISPUTED** that the landing page contained "wide-spread misuse" of the Neo4® Mark. The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | <u>Fact 43:</u> On April 14, 2020, GFI started to remove the Neo4j® Mark and Neo4j USA's URLs from that page. *Compare* GFI Dkt. No. 89, Exh. 22 *and* Exhs. 23-28. However, GFI's landing page was still titled "ONgDB - Neo4j Enterprise Fork: Graphs for Everyone," still started off stating "Neo4j is the world's leading Graph Database," encouraged consumers to "Learn more on the Neo4j website," and continued to use the Neo4j® Mark throughout. *Id.*, ¶¶ 29-31, Exhs. 29-31. | **UNDISPUTED** that GFI's landing page was modified and that the modified page contained the quoted language.<br><br>**DISPUTED** that the landing page used the Neo4® Mark. The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | <u>Fact 44:</u> On April 21, 2020, GFI removed instances of the Neo4j® Mark and hyperlinks to Neo4j USA's website, but still used Plaintiffs' catch phrase "Graphs for Everyone" and mislabeling the Neo4j® Platform as the "neo4j project." GFI Dkt. No. 89, Exhs. 32-33. | **UNDISPUTED** that GFI's landing page was modified and that the modified page contained the quoted language.<br><br>**DISPUTED** that the "neo4j project" is mislabeling. The term "neo4j project" is used to describe the fact |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| | Fact 45: Rather than create its support documentation for ONgDB, GFI relied upon Neo4j USA's official documentation and used hyperlinks on its website to redirect users to Plaintiffs' official documentation, including Neo4j USA's copyrighted operation and developer manuals, located on its website. Dkt. No. 89, ¶¶ 3-8, 13-16, Exhs. 3-8, 13-16; Ratinoff Decl., Exhs. 78-83, Exh. 129 [RFA Nos. 81-84, 88-89, 93-94, 98-100, 104, 108, 111, 123-126, 130-136]. | **UNDISPUTED** |
| | Fact 46: GFI's website directed users to **Plaintiffs'** change logs for each new release of ONgDB until GFI finally started its own change log with ONgDB v3.5.16. Dkt. No. 89, ¶¶ 3-8, Exhs. 3-8; Ratinoff Decl., Exh. 84; Exh. 129 [RFA Nos. 87, 92, 97, 103, 107, 110]. | **UNDISPUTED** |
| | Fact 47: Up until April 14, 2020, GFI's GitHub landing page stated "To build the documentation see the Neo4j documentation" with an embedded hyperlink: https://github.com/neo4j/neo4j-documentation/. Dkt. No. 89, Exhs. 18-19, 23. | **UNDISPUTED** |
| | Fact 48: GFI's document repository on GitHub also uses hyperlinks that send consumers to Neo4j USA's official documentation on Neo4j USA's corporate website. Dkt. No. 89, ¶¶ 9-16; Ratinoff Decl., Exhs. 82-83; Exh. 31 at 276:19-279:12, 284:2-285:18; Exhs. 128-129 [RFA Nos. 81-84, 115-126]. | **UNDISPUTED** |
| | Fact 49: The Neo4j USA developer and operation manuals are copyrighted by Neo4j USA and subject to the License: Creative Commons 4.0, which contains a hyperlink to the Attribution-NonCommercial-ShareAlike 4.0 International Public License, which expressly prohibits the use of Plaintiffs' documents for commercial purposes. Ratinoff Decl., Exh. 85, Exh. 31 at 286:1-288:13. | **UNDISPUTED** |
| | Fact 50: GFI used the Neo4j® Mark in the title tags of webpages on its website featuring ONgDB. Ratinoff Decl., Exhs. 128-129 [RFA Nos. 85-86, 90-91, 95-96, 101-102, 105-106]. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 51:** GFI did not seek or obtain Neo4j USA's authorization to use the Neo4j® Mark on GFI's website and GitHub repository in the foregoing manner. Ratinoff Decl., Exh. 31 at 181:6-182:3, Exh. 129 [RFA Nos. 5-9, 22-26, 69, 71, 73-76, 78]. | **UNDISPUTED** |
| | **Fact 52:** GFI used the Neo4j® Mark as a hashtag (#Neo4j) in tweets published from GFI's Twitter Account to promote ONgDB. Ratinoff Decl., Exhs. 89-92, 95-96, Exhs. 128-129 [RFA Nos. 149-150, 157-158, 165-166, 173-174, 181-182, 187-188]. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" and the hashtag "#Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| 4. GFI's ONgDB product was readily identifiable without the Neo4j® Mark | **Fact 53:** ONgDB can be readily identified as such or as "Open Native Graph Database" without use of the Neo4j® Mark. Ratinoff Decl., Exh. 31 at 27:17-29:9, 172:23-173:16, 175:5-20, 176:7-19, 178:13-179:25. | **DISPUTED:** ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark

If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Fact 54:** GFI issued tweets promoting ONgDB without using the Neo4j® mark or the mark as hashtag. Ratinoff Decl., Exhs. 86, 88. | **UNDISPUTED** |
| 4. GFI did not use the Neo4j® Mark to describe Plaintiffs' Neo4j® products | **Fact 55:** GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB and gratuitously used the Neo4j® Mark to describe and promote its own software. *See supra* Facts 41-44. | **DISPUTED:** ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark |

842\3697141.3

**SER_2318**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| | Fact 56:  At the time that Plaintiffs filed suit, GFI's ONgDB repository still strongly resembled the landing page for Plaintiffs repository for the Neo4j® Platform, and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used "Neo4j" *instead* of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59. | **DISPUTED**:  The GFI ONgDB depository page attached as Exhibit 58 starts with "ONgDB (Open Native Graph DB) – Neo4j fork with enterprise code base."  There is not a reference to ONgDB and Neo4j being one in the same.  ONgDB is a fork of the open source Neo4 database.  It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions.  ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users.  Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | Fact 57: Rather than independently promoting ONgDB as a graph database software without use of Neo4j® Mark, GFI used the mark to promote ONgDB on its website and GitHub repository. *See supra* Facts 41-52. | **DISPUTED**:  ONgDB is a fork of the open source Neo4 database.  It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions.   ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 58:** GFI used a hashtag, **#Neo4j** that consists of nothing more than the Neo4j® Mark with a "#" before the mark to promote ONgDB on social media. Ratinoff Decl., Exhs. 1, 89-96 and Exh. 31 at 233:17-237:21. | DISPUTED The Neo4j® Mark was never used, only the words neo4j and "Neo4j" and the hashtag "#Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| | **Fact 59:** GFI chose the following format that relied on using the Neo4j® Mark as a hashtag to announce its new releases of ONgDB: "**#ONgDB (#FOSS#Neo4j** Enterprise) 3.5.x support release is out," with no attempt to differentiate ONgDB and Neo4j® EE as separate, competing products.[1]  Ratinoff Decl., Exhs. 89, 92, 94-95; Exh. 31 at 233:17-236:15, 240:12-241:25, 246:5-249:2. | DISPUTED The Neo4j® Mark was never used, only the words neo4j and "Neo4j" and the hashtag "#Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element.<br>Further, as is shown in the cited exhibits, each announcement contained the following statement distinguishing ONgDB from Neo4j EE: "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation." |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| | **Fact 60:** GFI issued a tweet that stated "**#ONgDB**, Open **#Neo4j** Enterprise," and in another instance "Our **#ONgDB/#Neo4j** Enterprise CI server is up and running builds…." Ratinoff Decl., Exhs. 91, 93. | UNDISPUTED-that the cited tweets contain the quoted language.<br><br>DISPUTED – that the cited language is the only language in the tweets. Exh. 93 contains the following additional language distinguishing ONgDB from Neo4j EE: "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation." And "What is ONgDB: Open Native Graph DB is an open source fork of #Neo4j, that picks up prior to Neo4j, Inc.'s removal of enterprise code from the main Github repository." |

---

[1] "FOSS" stands for free open source software. Ratinoff Decl., Exh. 31 at 233:17-234:3.

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 61:** GFI used "**#Neo4j** Enterprise 3.5" to solicit end-users of official Neo4j® EE v3.5 to report bugs to GFI so that it could identify bugs in the closed enterprise directory for Neo4j® EE and attempt to mimic such fixes in ONgDB. Ratinoff Decl., Exh. 61, Exh. 31 at 161:23-163:12, 169:13-172:13. | **DISPUTED** The hashtag "#Neo4j" was used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project where to report enterprise issues on open source. Ratinoff Decl., Exh. 31 at 170:11-22. |
| | **Fact 62:** GFI used **#Neo4j** to promote ONgDB without reference to Neo4j® EE: "Latest **#ONgDB** apoc 3.5.0.8 procedure release is out. https://github.com/graphfoundatio... **#Neo4j**." Ratinoff Decl., Exh. 96. | **UNDISPUTED** – that the language appears on the exhibit.<br><br>**DISPUTED** – that there is no reference to Neo4j EE. To the contrary, Exhibit 96 tweet contains the following language <u>distinguishing ONgDB from Neo4j EE:</u> "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation." |
| | **Fact 63:** GFI admitted intentionally used the Neo4j® Mark as a hashtag "to inform users about ONgDB" and to make it more likely that potential customers would come across ONgDB in conducting searches in relation to Neo4j® EE. Ratinoff Decl., Exh. 31 at 174:14-176:19, 236:4-11, 237:9-239:7, 242:14- 243:21. | **DISPUTED** – GFI did not use the Neo4j Mark. GFI used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project. Ratinoff Decl., Exh. 31 at 236:3-11 |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| 7. GFI prominently used the Neo4j® Mark beyond what was reasonably necessary | **Fact 64:** GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB and despite making modifications continued to use the Neo4j® Mark on its GitHub repository beyond merely describing ONgDB as a fork of Neo4j® EE. *See supra* Facts 41-55; *see also* Dkt. No. 89 at ¶¶ 17-33, Exhs. 17-33. | **DISPUTED** The referenced GFI GitHub repository page expressly describes ONgDB as follows: ONgDB (Open Native Graph DB) - Neo4j fork with enterprise code base. ONgDB integrates Neo4j Open Core commits. GFI Dkt. No. 89, Exh. 18. The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Fact 65:** At the time that Plaintiffs filed suit, GFI's ONgDB repository still strongly resembled the landing page for Plaintiffs repository for Neo4j® Software, and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used "Neo4j" instead of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59. | **DISPUTED**:  The GFI ONgDB depository page attached as Exhibit 58 starts with "ONgDB (Open Native Graph DB) – Neo4j fork with enterprise code base."  There is not a reference to ONgDB and Neo4j being one in the same.  ONgDB is a fork of the open source Neo4 database.  It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions.   ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Fact 66:** GFI's (1) use of "neo4j," "neo4j enterprise" and "Neo4j Enterprise" without proper trademark notices; (2) use of embedded "Neo4j" links to Neo4j USA's website and GitHub repository; (3) hyperlinking to Plaintiffs' build instructions, support documentation and change logs all containing the Neo4j® Mark rather than creating and hosting their own with the ONgDB name; and (4) interchangeable use of "Neo4j Enterprise" with "ONgDB" to promote ONgDB on its website and GitHub goes beyond what is reasonably necessary to identify ONgDB as a fork of Neoj4® EE.  *See supra* Facts 41-51, 56-58; *see also* Ratinoff Decl., Exhs. 37, 57-58; Dkt. No. 89, ¶¶ 3-16. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | to communicate this to potential end-users. Furthermore GFI only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| | <u>Fact 67:</u> GFI used the Neo4j® Mark as a hashtag, **#Neo4j**, to promote ONgDB rather than to merely describe ONgDB as a fork of Neo4j® EE. *See supra* Facts 59-64. | **DISPUTED** GFI used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project. Ratinoff Decl., Exh. 31 at 236:3-11. GFI's tweets referenced in Facts 59-64 <u>contained the following additional language distinguishing ONgDB from Neo4j EE:</u> "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation." See Responses to Facts 59-64. And Exhibit 93 also states: "What is ONgDB: Open Native Graph DB is an open source fork of #Neo4j, that picks up prior to Neo4j, Inc.'s removal of enterprise code from the main Github repository." |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. Ratinoff Decl., Exh. 1. GFI admitted that it used Neo4j® Mark as a hashtag for the purpose of promoting ONgDB. *Id.,* Exh. 31 at 174:11-23; 176:15-18, 233:17-236:15, 240:12-241:25, 242-243:21, 246:5-249:2. | |
| | <u>Fact 68:</u> GFI admitted that it could have referred to "Neo4j Enterprise" without using the Neo4j® Mark as a hashtag to identify the product. Ratinoff Decl., Exh. 31 at 236:4-15. | **DISPUTED** the cited testimony contains no such admission. The testimony is only that it is possible to write a tweet without a hashtag. GFI did not use the Neo4j Mark. GFI used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | users who wanted to participate in the open source project. Ratinoff Decl., Exh. 31 at 236:3-11 |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. Ratinoff Decl., Exh. 1. GFI further testified that the reason it used the Neo4j® Mark as a hashtag was to bring ONgDB to the attention of users of Neo4j® via searches. *Id.,* Exh. 31 at 236:17-239:7, 241:15-243:7, 243:15-22. | |
| | Fact 69: GFI It also conceded that it could have used a format where it described ONgDB as being a fork of Neo4j® EE rather than simply inserting "#Neo4j Enterprise" with "#ONgDB." Ratinoff Decl., Exh. 31 at 243:23-245:12; Exh. 93. | **DISPUTED** the cited testimony relates to a different type of tweet that still used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project. |
| 8. GFI's use of the Neo4j® Mark suggested sponsorship or endorsement by Neo4j USA | Fact 70: GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB and despite making modifications continued to use the Neo4j® Mark on its GitHub repository beyond merely describing ONgDB as a fork of Neo4j® EE. *See supra* Facts 41-55; *see also* Dkt. No. 89 at ¶¶ 17-33, Exhs. 17-33. | **DISPUTED** The referenced GFI GitHub repository page expressly describes ONgDB as follows: ONgDB (Open Native Graph DB) - Neo4j fork with enterprise code base. ONgDB integrates Neo4j Open Core commits. GFI Dkt. No. 89, Exh. 18. The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark

If Neo4j was not referenced then end-users would have no idea to what ONgDB forked.

See also Responses to Facts 41-55. |

25

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Additional Fact:** There was no overt difference between GFI's original landing page for ONgDB and Plaintiffs' landing page on GitHub. Compare Dkt. No. 89, Exh. 18 *and* Ratinoff Decl., Exh. 59. | |
| | <u>Fact 71:</u> At the time that Plaintiffs filed suit, GFI's ONgDB repository still strongly resembled the landing page for Plaintiffs repository for Neo4j® Software, and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used "Neo4j" instead of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59. | **DISPUTED:**  The GFI ONgDB depository page attached as Exhibit 58 starts with "ONgDB (Open Native Graph DB) – Neo4j fork with enterprise code base."  There is not a reference to ONgDB and Neo4j being one in the same.  ONgDB is a fork of the open source Neo4 database.  It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions.   ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark

If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | <u>Fact 72:</u> GFI (1) used "neo4j," "neo4j enterprise" and "Neo4j Enterprise" without proper trademark notices; (2) used embedded "Neo4j" links to Neo4j USA's website and GitHub repository; (3) stated on its GitHub repository for ONgDB for customers to "Learn more on the Neo4j website," and continued to use the Neo4j® Mark throughout that repository; (4) hyperlinked to Plaintiffs' build instructions, support documentation and change logs on GFI's website and GitHub repository all containing the Neo4j® Mark; (5) interchangeably used "Neo4j Enterprise" with "ONgDB" to promote ONgDB on its website and Github repository; and (6) used the Neo4j® as a hashtag on Twitter to promote ONgDB.  *See supra* Facts 42-43, 56-70. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore GFI only uses the descriptive term neo4j - it does not use the Neo4j® Mark

If Neo4j was not referenced then end-users would have no idea to what ONgDB forked |

842\3697141.3

SER_2325

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| | <u>Fact 73:</u> GFI's intended audience in using the Neoj4® Mark as a hashtag were users of Neo4j® EE. Ratinoff Decl., Exh. 31 at 174:14-176:19, 236:4-11, 237:9-239:7, 242:14- 243:21. | **DISPUTED** the cited testimony contains no such admission. The testimony is only that it is possible to write a tweet without a hashtag. GFI did not use the Neo4j Mark. GFI used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project. Ratinoff Decl. Exh. 31 at 236:3-11 |
| 9. GFI's use of the Neo4j® Mark caused actual consumer confusion | <u>Fact 74:</u> GFI's use of the Neo4j® Mark to promote ONgDB resulted in customers choosing ONgDB and encountering compatibility issues. Ratinoff Decl., Exh. 115-116; Exh 31 at 230:12-233:10; Exh. 3 at 207:12-209:3. | **DISPUTED** – The cited emails are hearsay and do not establish compatibility issues. Rather, Exhibit 115 demonstrates an attempt to use a desktop tool inappropriately with a server application. Ratinoff Decl., Exh. 31 at 232:5-25. Nothing in the email demonstrates that there would be any compatibility issues when ONgDB is used as a server application. |
| | <u>Fact 75:</u> GFI lead consumers to believe that ONgDB and Neo4j® EE were one and the same. *See, e.g.,* Exhs. 35, 40, 42-44, 46-47, 53, 55-58, 76, 100, 130-131, 134-135. | **DISPUTED**: Defendants consistently present ONgDB as an alternative to Neo4j EE. As is set out above, in numerous statements, on the GFI website and on Twitter, GFI describes ONgDB as "an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation." Ratinoff Decl., Exhs. 89, 92, 94, 95. GFI has also described, on its website, the distinction between ONgDB and the Neo4j EE software distributed by Neo4j, Inc., while also disassociating itself from Neo4j, Inc. Open Native Graph DB (ONgDB) is a fork of the neo4j project that continues development of the neo4j enterprise code base as a fully open source project after Neo4j, Inc. Open Core Shift that closed ongoing development and removed existing source code. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Ratinoff Decl., Exh. 66.  . |
| | **Fact 76:** GFI's use of the Neo4j® Mark to promote ONgDB as free open source and falsely comparing it with commercially licensed Neo4j® EE created actual customer confusion, and diverted sales from Neo4j USA, including the IRS and Next Century/MPO.  Ratinoff Decl., Exh. 48-50, 117-120, 127, 131, 134-135; Broad Decl., ¶¶ 20-24, Exhs. 12-13. | **DISPUTED**:  Plaintiffs present no evidence of a single person or entity that would have made that choice.  Indeed, the evidence Plaintiffs provide with respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability."  Broad Decl., Exh. 13. |
| | **Additional Facts:**  As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original); *see also* Rathle Decl., ¶¶ 11, 27, 29, Exh. 3.  This is also confirmed by the Stipulated Judgment entered in the GFI Action. Reply Ratinoff Decl., Exh. I (GFI Dkt. No. 110).  Next Century chose ONgDB after Defendants told them that they could use it under the AGPL for free, and did not need paid license from Plaintiffs, which they could only state because they removed the Commons Clause and its commercial restrictions.  Ratinoff Decl., Exh. 48-50, 120. | |
| **Claim 3: False Advertising Against GFI and the PT Defendants** | | |
| 1. Defendants made a false statement of fact about a product in a commercial advertisement, which is (a) commercial speech; (b) made in commercial competition with Neo4j USA; (c) for the purpose of influencing consumers to buy their goods or services; and (d) | **Fact 77:** Defendants made the following false statements interstate commerce via their websites and Twitter: (1) "ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number" [Ratinoff Decl., Exh. 57]; (2) "ONgDB and Neo4j Enterprise consists of modules from Neo4j Community Edition and modules licensed under the AGPLv3" [*id.*, Exh. 58]; (3) "ONgDB distributions are licensed under AGPLv3 as a free and open source alternative to currently available proprietary native graph offerings such as Neo4j Enterprise Edition" [*id.*, Exhs. 60, 113-114]; (4) "download ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the same version number." [*id.*, Exhs. 62-66]; (5) "ONgDB Enterprise is a drop in replacement for Neo4j Enterprise commercial packages downloaded from Neo4j.com" [*id.*, Exhs. 62-66, | DISPUTED: Objection none of the evidence cited supports the alleged fact they are false. The legal standard is not correct. See, *Pizza Hut, Inc. v. Papa John's Intern., Inc.* (5th Cir. 2000) 227 F.3d 489, 495. The statements are all true: (1) "ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number"; (2) "ONgDB and Neo4j Enterprise consists of modules from Neo4j Community Edition and modules licensed under the AGPLv3"; (3) "ONgDB distributions are licensed under AGPLv3 as a free and open source alternative to currently |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| sufficiently disseminated to the relevant purchasing public | 71]; (6) "ONgDB Enterprise 3.5.5…. Drop in replacement for Neo4j Core and Enterprise 3.5.5. AGPLv3 Open Source License, no limitations on causal cluster instances, cores, or production usage" [*id.*, Exhs. 67-69, 75]; (7) "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions" [*id.*, Exh. 72-74]; (8) "[ONgDB] is an open source fork of #Neo4j" [*id.*, Exh. 93]; and (9) "You can use the ONgDB fork of Neo4j which adds enterprise code back into Neo4j core. It is 100% free and open." [*id.*, Exh. 98-104, 108]. | available proprietary native graph offerings such as Neo4j Enterprise Edition"; (4) "download ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the same version number."; (5) "ONgDB Enterprise is a drop in replacement for Neo4j Enterprise commercial packages downloaded from Neo4j.com" ; (6) "ONgDB Enterprise 3.5.5…. Drop in replacement for Neo4j Core and Enterprise 3.5.5. AGPLv3 Open Source License, no limitations on causal cluster instances, cores, or production usage" (7) "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions"; (8) "[ONgDB] is an open source fork of #Neo4j"; and (9) "You can use the ONgDB fork of Neo4j which adds enterprise code back into Neo4j core. It is 100% free and open." Suhy Dec. ¶30 |
| | Fact 78: The PT Defendants also stated on iGov's website that "[Neo4j Enterprise] is 100% free and open source" and "Neo4j Enterprise is released only under the standard AGPLv3 open source license that is managed by the free software foundation." Ratinoff Decl., Exhs. 67-70; *see also* Exh. 21. | DISPUTED: The PT Defendants did not all say this. Only iGov's website stated: that "[Neo4j Enterprise] is 100% free and open source" and "Neo4j Enterprise is released only under the standard AGPLv3 open source license that is managed by the free software foundation." Defendants do not sell ONgDB, ONgDB is licensed under AGPL and AGPL is an open source license for free software. Suhy Dec. ¶31, Ratinoff Decl. Exh. 39, 11:635-638

ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Substituting the matching |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Pernick Dec. Ex. B |
| | **Additional Facts:** As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original); *see also* Rathle Decl., ¶¶ 11, 27, 29, Exh. 3. This is also confirmed by the Stipulated Judgment entered in the GFI Action. Reply Ratinoff Decl., Exh. I (GFI Dkt. No. 110). | |
| | Fact 79: Defendants actively encourage actual and potential users of commercially licensed Neo4j® EE to adopt ONgDB and obtain support services from iGov and GraphGrid instead of Plaintiffs. Ratinoff Decl., Exhs. 23, 28-29, 40, 42-54, 76-77, 126, 134-135. | **DISPUTED:** None of the evidence cited identifies any party that would have used Neo4j EE. Further, Plaintiffs present no evidence that they competed with GraphGrid or provided similar services. Plaintiffs are misidentified as if they both do the same thing. Sweden is not a party to the cause of action. Sweden licenses the open source software USA does not. See APGL license. USA does not support open source software licensed by Sweden. Suhy Dec. 32 |
| | Fact 80: Neo4j Sweden is the owner of all copyrights in Neo4j® CE and Neo4j® EE, including the source code and has licensed said copyrights to Neo4j USA. Rathle Decl., ¶¶ 3-4. | **UNDISPUTED** |
| | Fact 81: Plaintiffs released Neo4j® EE v3.4 under a license that which included the terms from the AGPLv3 and additional restrictions provided by the Commons Clause ("Neo4j Sweden Software License"). Rathle Decl., ¶¶ 11-12, Exhs. 2-3. | **DISPUTED:** Neo4J USA did no such thing. Neo4J Sweden release the open source software, not Neo4J USA. Ratinoff Decl. Exh. 39, 25:11-13 Suhy Dec. ¶33 |
| | Fact 82: The Neo4j Sweden Software License, while still allowing code to be publicly viewable and used within a certain licensed scope, prohibits commercial resale and certain commercial support services. Rathle Decl., ¶¶ 11-12, Exhs. 2-3. | **DISPUTED:** Versions of Neo4j Enterprise open source distributions using AGPL only have no terms mentioning these prohibitions. When the commons clause was added to AGPL, Sweden did not change license forms and used the AGPL form which bars additions and also allows licensees to remove non- |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | permissive additional restriction. AGPL §7. Ratinoff Decl. Exh. 39, 6:331-7:393<br><br>Furthermore - the commons clause does not use the word "commercial". It only uses the word "sell". Ratinoff Decl. Exh. 39, 25:681-693<br><br>The author of the commons clause clarifies the intention and meaning of the commons clause as well. Support services are not barred as they do not consist entirely or substantially of the Software or Functionality of the Software as limited in the commons clause. The restriction of services is using the software as a service as in a SaaS implementation. Suhy Dec. ¶34 Ex. 2 |
| | **Additional Facts:** The Common Clause states the Neo4j® Sweden Software License "does not grant to you, the right to Sell the Software. For purposes of the foregoing, 'Sell' means practicing any or all of the rights granted to you under the License to provide to third parties, for a fee or other consideration, a product or service that consists, entirely or substantially, of the Software or the functionality of the Software." Rathle Decl., Exh. 3.  The ex post facto statement allegedly made by Heather Meeker is contrary to the foregoing and inadmissible hearsay and lacks foundation.  Contrary to Suhy, it was not posted on Plaintiffs' GitHub repository or made on behalf of Plaintiffs.  *See* Reply Ratinoff Decl., Exh. G. | |
| | <u>Fact 83:</u> After Plaintiffs released Neo4j® EE v3.4, the PT Defendants downloaded Neo4j's source code from Neo4j's GitHub repository, removed the commercial restrictions imposed by the Neo4j Sweden Software License, and began promoting it "free and open source" Neo4j Enterprise and offering commercial support services.  Ratinoff Decl., Exh. 3 at 171:23-172:23, 199:22-200:20; Exh. 21. | DISPUTED:  USA did no such thing. Sweden release the open source software not USA. Ratinoff Decl. Exh. 39, 25:11-13 Suhy Dec. ¶33<br>Suhy only removed the commons clause as allowed in the AGPL §7. Ratinoff Decl. Exh. 39, 6:331-7:393<br>Suhy did not remove any commercial restrictions. He simply ensured the LICENSE.txt file was verbatim as required by the copyright holder of the LICENSE.txt files : the free software foundation. Suhy did not modify any other files, and the |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | commons commercial restrictions were still in effect.  Following the FSF copyright instructions for the AGPL License.txt file did not remove any restrictions from the distribution - as the restrictions were documented across the repository.  Following the rules for just the specific files did not remove legal terms from the distributions. Suhy Dec. ¶35 |
| | **Fact 84:** Rather than develop ONgDB as an independent fork based off an earlier open source version of Neo4j® EE, Defendants stripped the commercial restrictions out of the Neo4j Sweden Software License from Neo4j® EE version 3.4 and began promoting ONgDB as the open source equivalent of Neo4j® EE 3.4 under the AGPL.  Ratinoff Decl., Exh. 24-26, 28; *see also* Exh. 31 at 87:24-90:9. | DISPUTED:  PT, Suhy, and iGov Inc did not use the term "equivalent" in any references.  For Neo4j Enterprise versions below 3.5 - ONgDB was equivalent in features as it used the same unmodified source code.  So this statement would be true for specific versions of Neo4j and ONgDB.  PT, Suhy, and iGov always used the term drop in replacement which does not mean the features are all equivalent.<br><br>Furthermore - ONgDB is a current fork of Neo4j open source software licensed from Sweden, it pulls in all the Neo4j community commits from the official repository regularly keeping it up to date.  This is allowed under the AGPL. Suhy Dec. ¶36 |
| | **Fact 85:** Plaintiffs officially released Neo4j® EE v.3.5 solely under a commercial license in November 2018, and were no longer publishing source code for Neo4j® EE on GitHub under any open source license. Rathle Decl., ¶ 13, Exh. 4. | DISPUTED:  PT, Suhy, and iGov Inc did not use the term "equivalent" in any references.  For Neo4j Enterprise versions below 3.5 - ONgDB was equivalent in features as it used the same unmodified source code.  So this statement would be true for specific versions of Neo4j and ONgDB.  PT, Suhy, and iGov always used the term drop in replacement which does not mean the features are all equivalent. Furthermore - ONgDB is a current fork of Neo4j open source software licensed from Sweden, it pulls in all the Neo4j community commits from the official repository regularly keeping it up to date.  This is allowed under the AGPL. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Suhy Dec. ¶36 |
| | **Fact 86:** Prior to its official release, Plaintiffs published several beta versions of Neo4j® EE v3.5 via their GitHub repository subject to the Neo4j Sweden Software License, with Neo4j® v3.5.0-RC1 being the last pre-release version available to Defendants via GitHub.  Rathle Decl., ¶ 14; *see also* Ratinoff Decl., Exh. 31 at 158:18-159:20. | **DISPUTED:**  USA did not release version on GitHub. Only Sweden released the open source Neo4J software under the AGPL license. Ratinoff Decl. Exh. 39, 25:11-13 Suhy Dec. ¶33

There are no pre-release terms in the GitHub repository.  It's possible that a pre-release agreement was added to the compiled packages - but that would be in the actual download of the package, not the GitHub source code as they state. Furthermore - enterprise code was not available in v3.5.0-RC1 but it was available in 3.5.0-beta03. Suhy Dec. ¶37

Also - the License.txt files for the above mentioned releases clearly shows the license as being AGPL, complete with the AGPL preamble - and does not say anything about a "Neo4j Sweden Software License" Decl. Exh. 39, 12-13 |
| | **Fact 87:** GFI's release of ONgGB v3.5.1, which contained at least 182 source code files that had only been previously released under the Neo4j Sweden Software License in the last beta version of Neo4j® EE 3.5 made available by Plaintiffs via GitHub.  Ratinoff Decl., Exh. 38 at 6:22-7:1, 8:4-16:24; *see also* Rathle Decl., ¶ 29. | Disputed. USA does not release the open source software. Ratinoff Decl. Exh. 39, 25:11-13 Suhy Dec. ¶33 |
| | **Fact 88:** In order for Defendants to call ONgDB "free and open source" Neo4j® EE, they again replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL and stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor in 28 LICENSE.txt files.  Ratinoff Decl., Exhs. 39-40; Dkt. No. 91 at 19:9-25; Exh. 31 at 159:3-10; Rathle Decl., ¶ 30. | DISPUTED:  The AGPL license.txt file is copyrighted to the free software foundation.  Suhy followed the guidance from the free software foundation relating to the license being verbatim. By following the FSF copyright guidance he did not remove the legal terms from the distribution as a whole.   There are 1000s of Neo4j files in the repository which clearly state the commons clause is still part of the license.  I.E.  Using the verbatim AGPL license content as instructed by the Free software foundation did not remove the commons license in any way as it was stated in many other |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | places. There is no obligation to repeat Sweden's copyright notice on every file. And Sweden owns the copyright (undisputed Fact 80 above) USA has not standing to argue about the copyright notice. Phase 1 does not address the DCMA claim. Suhy Dec. ¶38 |
| | **Additional Fact:** The AGPL and the Neo4j Sweden Software License requires each copy of the software subject to the license to bear copyright notices. Rathle Decl., Exh. 3 at §§ 4-5. | |
| | Fact 89: The Neo4j Sweden Software License did not permit a licensees such as Defendants to remove "further restrictions," i.e. the Commons Clause, imposed by Neo4j Sweden as the copyright holder and original licensor. Rathle Decl., Exh. 3 at §§ 7, 10; GFI Dkt. No. 88 at 5:23-8:9. | DISPUTED: Suhy only worked on the License.txt file which he believes is copyrighted to the Free software foundation. When Suhy replaced the file with verbatim - it was following the copyright holder's instructions. All the other files which Neo4j held the copyright for were not modified by Suhy and clearly stated that the commons clause was there. Suhy Dec. ¶35<br><br>Following the copyright holder's instructions for the License.txt file did not remove restrictions as these were mentioned in many other files in the github repository. Suhy Dec. ¶35 |
| | Fact 90: Defendants knew that they could not unilaterally replace the Neo4j Sweden Software License with the APGL without authorization. Ratinoff Decl., Exhs. 34-36, Exh. 31 at 183:14-184:24, 207:10-210:8. | DISPUTED: Suhy did not replace the Neo4j Software License - He only followed the instructions given by the AGPL license copyright holder to make the actual license verbatim. The Neo4j Sweden Software License was still in effect as the commons clause was mentioned in many other neo4j files which Neo4j Inc owned the copyright for. Suhy Dec. ¶35 |
| | Fact 91: Defendants' statements that ONgDB v3.5.x was "100% free and open" with no limitations or restrictions imposed by commercial licensed Neo4j® EE v3.5.x and the like were false because they knew that Neo4j Sweden owned the copyright for Neo4j® EE and never gave permission to remove Commons Clause and offer it as ONgDB under | DISPUTED: Suhy only acted on License.txt files who's copyright is owned by the free software foundation. Furthermore - Suhy only made AGPL license.txt files verbatim as the free software foundation required. The commons clause was |

842\3697141.3

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | the AGPL.    Ratinoff Decl., Exh. 55-56; Exh. 3 at 183:12-183:1, 187:12-188:5, 189:1-191:3, 235:21-237:14, 240:22-243:22. | referenced and defined in almost every one of the thousands of enterprise code headers - all of which were left untouched by Suhy. Suhy Dec. ¶35 |
| | **Fact 92:** The Nussbaums also own GraphGrid and AtomRain, which share the same office and computers with GFI, and provide commercial training and consulting and support for users of ONgDB, and benefit from customers being able to use ONgDB for "free" and diverting available project funds to pay them for such services.  Ratinoff Decl., Exhs. 52-53; Exh. 31 at 22:24-23:3, 31:5-32:19, 35:3-13, 57:18-58:21, 65:20-70:16, 194:14-17; *see also* Exh. 28 ("If you are looking for a full shield of liability, we recommend using one of our supporters such as GraphGrid") and Exhs. 76, 134-135. | DISPUTED: GFI does not "share the same office" with GraphGrid and AtomRain.  GFI uses 111 South Buckeye Street for receiving mail and 111 Buckeye Street is leased by AtomRain and is used by AtomRain and GraphGrid for business activities.  Nussbaum Depo., 65:18-67:3. Pernick Dec. Ex. A |
| | **Fact 93:** Defendants removed the Commons Clause without Neo4j Sweden's authorization as the copyright holder in an attempt to allow iGov, AtomRain and GraphGrid to commercially use and support ONgDB.  Ratinoff Decl., Exh. 23-26, 28-29, 39, 76-77, 126, 134-135; Exh. 3 at 28:25-29:11; Rathle Decl., ¶¶ 29-30. | DISPUTED:  The free software foundation owns the copyright for the AGPL License.txt file and clearly states that the license must be verbatim.  Suhy Dec. 35. Suhy's commit message for the changes to the license files to be in line with the FSF requirements clearly states the reason for the change. Suhy Dec. 47. Furthermore - the commons clause does not say anything about commercial use and support, the commons clause author Heather Meaker clarifies the commons clause in her article and states they do not cover professional services: Suhy Dec. ¶34 Ex. 2 |
| | **Additional Facts:** The Common Clause states the Neo4j® Sweden Software License "does not grant to you, the right to Sell the Software. For purposes of the foregoing, 'Sell' means practicing any or all of the rights granted to you under the License to provide to third parties, for a fee or other consideration, a product or service that consists, entirely or substantially, of the Software or the functionality of the Software." Rathle Decl., Exh. 3.  The ex post facto statement allegedly made by Heather Meeker is contrary to the foregoing and inadmissible hearsay and lacks foundation.  Contrary to Suhy's sworn statement, it was not posted on Plaintiffs' GitHub repository or made on behalf of Plaintiffs. *See* Reply Ratinoff Decl., Exh. G.

GFI promoted "training, advisory and production support through our commercial sponsors such as GraphGrid" for ONgDB.  Ratinoff Decl., | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Exh. 52. iGov promoted similar services for government agencies that adopt ONgDB.  *See, e.g., id.,* Exhs. 62-66. | |
| | <u>Fact 94</u>: ONgDB v3.5.1 and later versions are not 100% identical to equivalent version numbers of Neo4j® EE.  Ratinoff Decl*., Exh. 31 at 158:18-163:5, 163:13-165:6; Exh. 3 at 124:2-126:2.  Rather, ONgDB is a patchwork of code from the last public beta, Neo4j® EE 3.5.0-RC1, and Neo4j® Community Edition held together by "glue code" authored by Suhy, Brad Nussbaum and other GFI contributors.  *See id.* | UNDISPUTED:  ONgDB 3.5 and later versions are not 100% identical to equivalent Neo4j enterprise versions and that claim was never made.<br><br>DISPUTED:  ONgDB is not a "patchwork" or "glue"  of code - it has been proven in large production deployments.  After the enterprise code was closed - Suhy and other contributors continued it's development.   The enterprise code came from Neo4j - so it is calling the code it developed a patchwork of code. Suhy Dec. ¶39 |
| | **Additional Fact:** Suhy testified in his deposition that he and other developers needed to author code to implement enterprise features into ONgDB.  *See* Ratinoff Decl., Exh. 3 at 124:2-127-23. | |
| | <u>Fact 95:</u> By splicing together source code for ONgDB in that manner, GFI is creating software that is not of the same quality as if it were compiled by Plaintiffs because GFI does not have access to the same rigorous build infrastructure for official Neo4j® Software, which goes beyond what is built into Neo4j® CC and carries out tens of thousands of functional, performance, load, stress, and other tests to ensure quality. Rathle Decl. ¶¶ 31-34; Ratinoff Decl., Exh. 31 at 168:14-169:6. | **UNDISPUTED**:  GFI does not have access to Neo4j software build infrastructure and ONgDB 3.5 and later versions are not 100% identical to equivalent Neo4j enterprise versions and that claim was never made.<br>**DISPUTED**:  That GFI does not do its own quality testing of ONgDB.  To the contrary, GFI conducts about 64,000 tests for each build.  Nussbaum Depo., 166:18-168:13. |
| | <u>Fact 96:</u> GFI is dependent on what patches are made available in Neo4j® CE and sought to redirect users of official Neo4j® EE to GFI and identify bugs in the closed enterprise directory for Neo4j® EE. Ratinoff Decl., Exh. 61, Exh. 31 at 161:23-163:12, 169:13-172:12. | UNDISPUTED – GFI uses information from users of Neo4j software to identify bugs and uses open source patches made available in Neo4j CE.<br><br>**DISPUTED** – GFI is not dependent on information about Neo4j EE bugs to develop ONgDB.  To the contrary, GFI is no longer developing ONgDB versions as drop in replacements for Neo4j EE (and does not describe versions after 3.5.4 as such. Indeed, GFI has developed ONgDB 3.6 even though there is no Neo4j EE 3.6 and is developing ONgDB |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | 4 independent from Neo4j EE 4. Nussbaum Depo., 190:17-191:6. |
| | **Fact 97:** Since GFI introduced modifications and patches to ONgDB 3.5.x in an attempt to keep pace with the closed Neo4j® EE releases, the potential for stability and compatibility issues with ONgDB increases. Rathle Decl., ¶ 34; Ratinoff Decl., Exh. 31 at 161:23-163:12. | **DISPUTED** – GFI conducts tests on ONgDB to ensure its quality and compatibility.<br><br>**UNDISPUTED** GFI has not verified that ONgDB versions after 3.5.4 are drop in replacements for the equivalent version of Neo4j EE |
| | **Fact 98:** Defendants had no way of knowing this after Plaintiffs closed off public access to the source code for enterprise-only features in November 2018 and had no visibility into Neo4j Sweden's proprietary testing and patches. Ratinoff Decl., Exh. 31 at 158:18-160:5; Exh. 3 at 223:1-224:9; Exh. 40; Rathle Decl., ¶¶ 31-34. | **DISPUTED:** Defendants are not sure what "this" means in the context of this statement. If it is referencing Fact 97 then it would be true.<br><br>Furthermore, defendants believe that the older approach for the enterprise features (which include the tests) is more stable and higher quality than newer re-implementations. See GitHub bug tickets. Suhy has not been advised by any user of ONgDB that is it incompatible with Neo4J commercial software. Suhy Dec. ¶40 |
| | **Fact 99:** Defendants knew that ONgDB 3.5.x does not include every closed enterprise feature in equivalent Neo4j® EE 3.5.x. Ratinoff Decl., Exh. 38 at 2:12-17, 4:15-22, 5:4-6:21; Exh. 3 at 127:19-128:17. | **UNDISPUTED:** Defendants did know that ONgDB did not include every closed enterprise feature and did not ever say that the 2 were equivalent. The defendants used the term "Drop in replacement" which has nothing to do with feature by feature equivalency. |
| | **Fact 100:** GFI admitted that ONgDB v3.5.4 is not 100% identical to official Neo4j® EE v3.5.4. Ratinoff Decl., Exh. 31 at 158:18-163:5, 163:13-165:6; Exh. 3 at 124:2-126:23. | **UNDISPUTED:** ONgDB 3.5.4 is not 100% identical to equivalent Neo4j enterprise versions and that claim was never made. |
| | **Fact 101:** GFI admitted that after ONgDB v3.5.4, it could not "reliably guarantee that it was a drop-in replacement" for the same version number of Neo4j® EE and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate." Ratinoff Decl., Exh. 31 at 186:24-188:17, 188:23-189:23. | **DISPUTED** – GFI conducts tests on ONgDB to ensure its quality and compatibility.<br><br>**UNDISPUTED** GFI has not verified that ONgDB versions after 3.5.4 are drop in replacements for the equivalent version of Neo4j EE. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Suhy has not been advised by any user of ONgDB that is it incompatible with Neo4J commercial software. Suhy Dec. ¶40 |
| | **Fact 102**: As a result, Defendants were leading consumers to believe they were downloading an exact copy of the same version of commercial-only releases of NEO4J® EE, which in actuality they were receiving an inferior ONgDB product that was not a true "drop in" replacement. *See supra* Facts 80-101. | DISPUTED:  Suhy, PureThink and iGov never lead consumers into believing they were downloading an exact copy of the same commercial only releases. For versions when the enterprise code was present and no modifications were made in the source code - defendents made clear that Neo4j did not compile the code, even though the code was the same for Neo4j Enterprise and ONgDB.  The defendants knew that knowledgeable users only needed to know specific facts such as the code being unchanged in specific versions.  Furthermore ONgDB is a drop in replacement for Neo4j community and enterprise for all versions including 3.5.  Drop in replacement has nothing to do with feature parity.

Suhy believes that the original code for causal clustering and other features is actual superior to the feature rewrites Neo4j Inc made when it closed the Neo4j Enterprise code in 3.5

To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393

Suhy has not been advised by any user of ONgDB that is it incompatible with Neo4J commercial software.  Suhy Dec. ¶40 |
| | **Additional Fact:** Defendants confirm above that GFI "is no longer developing ONgDB versions as drop in replacements for Neo4j EE [] and does not describe versions after 3.5.4 as such." Fact 96-97, 101. This is because GFI "no longer could … reliably guarantee that [ONgDB] was a drop-in replacement" and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate" with the code become more divergent.  Ratinoff Decl., Exh. 31 at 188:5-17, 188:23-189:23).  As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original); *see also* Rathle Decl., ¶¶ 11, 27, 29, Exh. 3.  This is also confirmed by the Stipulated Judgment entered in the GFI Action. Reply Ratinoff Decl., Exh. I (GFI Dkt. No. 110). | |
| | Fact 103: Neo4j® EE has been subject to trademark policies and guidelines published on Plaintiffs' website, which along with the terms of the GPL, AGPL and Neo4j Sweden Software License, made clear that to the extent any authorized modifications are made to Neo4j® Software, such modified software should indicate so and no longer bear the Neo4j® Mark.  Rathle Decl., ¶¶ 15-18. Exhs. 5-7. | DISPUTED:  Those terms were only recently added.  Furthermore - Neo4j Inc never provided us with trademark policies and these policies were not found on their websites until recently. Furthermore - The neo4j word is only used in a descriptive manner.  The Neo4j® Mark was not used. Suhy Dec.41 USA trademark policies only cover its limited license to the trademark covering the commercial version of Neo4J. See Beene Dec. Exhibit 1. |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions.  *Id.*, Exh. 1. Defendants do not dispute that at least PureThink and Suhy were on | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | notice of the October 13, 2015 guidelines. PureThink agreed to be bound by them via Partner Agreement. *See* Fact 5. Defendants also admitted to becoming aware of the guidelines as a result of this lawsuit. *See* Raitnoff Decl., Exh. 3 at 67:18-70:1; Reply Ratinoff Decl., Exh. H at 152:5-153:1, 181:19-182:25. | |
| 2. Defendants' statements actually deceive or has the tendency to deceive a substantial segment of its audience | Fact 104: Defendants intentionally made the false statements publicly on their website and on Twitter that ONgDB is a "free and open" drop-in replacement/equivalent under the AGPL to convince customers to adopt ONgDB over Neo4j® EE, and pay iGov, Graph Grid and/or AtomRain for related consulting and support services. *See supra* Facts 78-80, 83-84, 86-93. | **DISPUTED:** The statements referenced are true. The statements made by Suhy and iGov were made to educate the community about ONgDB and Neo4j. Furthermore - the word drop-in replacement was used which is still true for all versions of ONgDB. The term "drop in replacement/equivalent" not used in combination the way Neo4j fact suggests. The term "drop in replacement" was used on its own. Suhy Dec.42 To the contrary, the statements are true. First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393 The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
| | **Additional Facts:** Defendants confirm above that GFI "is no longer developing ONgDB versions as drop in replacements for Neo4j EE [] and does not describe versions after 3.5.4 as such." Fact 96-97, 100. | |

40

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | This is because GFI "no longer could … reliably guarantee that [ONgDB] was a drop-in replacement" and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate" with the code become more divergent. Ratinoff Decl., Exh. 31 at 188:5-17, 188:23-189:23. As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original); *see also* Rathle Decl., ¶¶ 11, 27, 29, Exh. 3. This is also confirmed by the Stipulated Judgment entered in the GFI Action. Reply Ratinoff Decl., Exh. I (GFI Dkt. No. 110). | |
| | Fact 105: Consumers chose ONgDB over Neo4j® EE based on Defendants' misrepresentations about ONgDB being "free and open" drop-in replacement/equivalent under the AGPL, including NextCentury and the MPO, Tufin, the IRS, Department of Homeland Security (DHS) and others. Ratinoff Decl., Exhs. 35, 40, 48-51, 53, 100, 120, 127, 133-135; Exh. 3 at 54:17-55:1, 142:15-144:20, 227:3-8, Exh. 31 at 191:15-24, 194:23-25, 195:13-18, 196:22-197:24; Broad Decl., ¶¶ 20-24; Exhs. 12-13. | DISPUTED: the representations made about being a drop-in replacement are true. The term "drop in replacement/equivalent" was not used together in the manner Neo4j referenced. Only the term "drop-in replacement" was used. Suhy Dec.42<br><br>To the contrary, the statements are true. First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393 The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Neo4j and ONgDB are highly technical products and the end-users who use them are knowledgeable about the technology.<br><br>Furthermore, defendants focused on educating the community with facts.  In the case of the IRS - defendants laid out the facts including differences, license, features, and future of ONgDB were all taken into consideration.<br><br>The agencies mentioned in this fact would not have have been effected by the commons clause restriction as they are using ONgDB for their projects and not creating or selling anything. Suhy Dec. 42<br><br>Plaintiffs present no evidence of a single person or entity that would have made that choice.  Indeed, the evidence Plaintiffs provide with respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability."  Broad Decl., Exh. 13. |
| | **Additional Facts:** Defendants confirm above that GFI "is no longer developing ONgDB versions as drop in replacements for Neo4j EE [] and does not describe versions after 3.5.4 as such." Fact 96-97, 100. This is because GFI "no longer could … reliably guarantee that [ONgDB] was a drop-in replacement" and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate" with the code become more divergent. Ratinoff Decl., Exh. 31 at 188:5-17, 188:23-189:23).<br><br>As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original); *see also* Rathle Decl., ¶¶ 11, 27, 29, Exh. 3.  Next Century | |

842\3697141.3

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | chose ONgDB after Defendants told them that they could use it under the AGPL for free, and did not need paid license from Plaintiffs, which they could only state because they removed the Commons Clause and its commercial restrictions. Ratinoff Decl., Exh. 48-50, 120. | |
| 3. Defendants' deception is material | <u>Fact 106:</u> Defendants' false statements that ONgDB is a drop-in replacement/equivalent to paid-for, commercial licensed Neo4® EE was material to potential consumers' purchasing decision because Defendants were offering it for free under the AGPL, and unbeknownst to consumers, in violation of the Neo4j Sweden Software License and Neo4j Sweden's copyright. *See supra* Facts 78-93. | DISPUTED:  ONgDB is a drop-in replacement for any Neo4j (community or enterprise) with the same version number.  ONgDB is a superset of Neo4j Core.  Furthermore:  the term "drop-in replacement/equivalent" was not used together as Neo4j says in the fact. |
| | <u>**Additional Facts:**</u> Next Century chose ONgDB after Defendants told them that they could use it under the AGPL for free, and did not need paid license from Plaintiffs, which they could only state because they removed the Commons Clause and its commercial restrictions. *Id.* Exh. 48-50, 120; *see also* Dkt. No. 98-3, ¶¶ 22-23; Exh. 12-13. | |
| | <u>Fact 107:</u> Defendants intentionally made the false statements publicly on their website and on Twitter that ONgDB is a "free and open" drop-in replacement/equivalent under the AGPL to convince customers to adopt ONgDB over Neo4j® EE. *See supra* Facts 78-93. | DISPUTED:  The statements mentioned are true statements, not false.  Suhy and iGov clearly state that there are no limitations to cores and causal clustering - free and open would still apply to the AGPL with commons clause as all the terms in AGPL are still present.  Had Neo4j removed some terms from AGPL - then it may be harder to use the term free and open<br><br>Furthermore:  the term "drop-in replacement/equivalent" was not used together as Neo4j says in the fact.<br><br>To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause |

43

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | language from the Neo4J Sweden Software License was improper is incorrect. Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
| 4. Defendants caused the false statement to enter interstate commerce | Fact 108:  Defendants' false statements entered interstate commerce through the internet via their websites and Twitter, as well as emails sent to consumers.  Ratinoff Decl., Exhs. 18, 21, 25, 29, 42-46, 49-51, 54-55, 57-58, 60, 62-66, 67-70, 72-74, 93, 99-104, 108, 113-114. | DISPUTED:  Defendants statements were / are true. To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
| 5. Neo4j USA has been or is likely to be injured as a result | Fact 109: Defendants' false statements diverted sales from Neo4j USA. Ratinoff Decl., Exhs. 35, 40, 47-51, 53, 100, 120, 127, 133-135; Exh. 3 | DISPUTED:  Defendants statements were / are true. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| of the false statement | at 54:17-55:1, 142:15-144:20, 227:3-8, Exh. 31 at 191:15-24, 194:23-25, 195:13-18, 196:22-197:24; Broad Decl., ¶¶ 20-24; Exhs. 12-13. | To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A<br><br>Plaintiffs present no evidence of a single person or entity that would have made that choice.  Indeed, the evidence Plaintiffs provide with respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability."  Broad Decl., Exh. 13. |
|  | **Additional Facts:** Defendants confirm above that GFI "is no longer developing ONgDB versions as drop in replacements for Neo4j EE [] and does not describe versions after 3.5.4 as such." Fact 96-97, 100. This is because GFI "no longer could … reliably guarantee that [ONgDB] was a drop-in replacement" and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate" with the code become more |  |

SER_2344

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | divergent. Ratinoff Decl., Exh. 31 at 188:5-17, 188:23-189:23).   As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original); *see also* Rathle Decl., ¶¶ 11, 27, 29, Exh. 3. Next Century chose ONgDB after Defendants told them that they could use it under the AGPL for free, and did not need paid license from Plaintiffs, which they could only say after removing the Commons Clause. *Id.* Exh. 48-50, 120; *see also* Dkt. No. 98-3, ¶¶ 22-23; Exh. 12-13. | |
| | **Fact 110**: Neo4j USA lost multi-year deal with the IRS.  Broad Decl., ¶¶ 20-21. | DISPUTED:  PureThink lost a multi-year deal with IRS, not Neo4j USA.  Suhy Dec. ¶7, Ex. 1 Furthermore - IRS created a competitive procurement  which Neo4j or Resellers could have competed on.  Mr. Suhy is not aware of Neo4j Inc or other resellers providing competitive responses to the procurement. Suhy Dec. ¶49 |
| | **Additional Facts:** Defendants testified in their depositions that the IRS is using ONgDB instead of Neo4j® EE. *See* Ratinoff Decl., Exh. 3 at 142:15-144:15, 224:13-224:23; Exh. 31 at 191:15-24, 194:23-25. iGov also was paid six figures by the IRS for providing support services for ONgDB. *Id.*, Exh. 3 at 227:9-24. | |
| | **Fact 111**: Neo4j USA lost multi-year deal with Next Century/MPO adopting ONgDB, amounting to over over $2.2 million in lost revenue. Broad Decl., ¶¶ 22-24, Exhs. 12-13. | DISPUTED:  Mr Suhy is not aware of Neo4j USA having a multi-year deal with Next Centry / MPO which it could have lost in the first place.

The evidence Plaintiffs provide with respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability."  Broad Decl., Exh. 13. |
| | **Additional Facts:** Defendants emails show that Next Century chose ONgDB after Defendants told them that they could use it under the AGPL for free, and did not need paid license from Plaintiffs.  Ratinoff Decl., Exh. 48-50, 120. Suhy participated in Defendants' email exchange with Next Century, and thus has knowledge its decision to use ONgDB instead of Neo4j® EE. *See id.* | |
| **Claim 4: False Designation of** | | |

46

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Origin Against GFI and the PT Defendants** | | |
| 1. used in commerce any word, false designation of origin, false or misleading description, or representation of fact | **Fact 112:** Defendants' false and misleading statements that ONgDB is a "free and open" drop-in replacement under the AGPL for equivalent versions of paid-for commercially licensed Neo4® EE were made in commerce through the internet via their websites and Twitter, as well as emails sent to consumers. Ratinoff Decl., Exhs. 18, 21, 25, 29, 42-46, 49-51, 54-55, 57-58, 60, 62-66, 67-70, 72-74, 93, 99-104, 108, 113-114; *see also* Facts 78-80. | DISPUTED:  The statements made are not misleading or false.   ONgDB is a drop in replacement for Neo4j distributions.   ONgDB is free and open - it has no limitations on number of cores, number of cluster instances, etc - while Neo4j Enterprise commercial packages have legal terms limiting these features making them not free and open.  To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B  Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
| | **Fact 113:** Defendants' statements that ONgDB is a "free and open" drop-in replacement under the AGPL for equivalent versions of paid-for commercially licensed Neo4® EE were false and misleading | DISPUTED:  ONgDB is a free and open drop-in replacement.  iGov or Suhy talk about free and open meaning that there were no limitations on the number of cores or cluster instances. |

47

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | because Defendants did not have the right to replace the Neo4j Sweden Software License with the AGPL. *See* Facts 78-93. | Furthermore - Neo4j Sweden still uses the AGPL license with the AGPL preamble. They added the commons clause restriction which defendants question - but they added this to the AGPL license which is known as a free and open source license. Had they removed the preamble or just copied the terms they liked from the AGPL into a new license then the story may be different.<br><br>To the contrary, the statements are true. First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393 The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
| | **Additional Facts:** As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original); *see also* Rathle Decl., ¶¶ 11, 27, 29, Exh. 3. This is also confirmed by the Stipulated Judgment entered in the GFI Action. Reply Ratinoff Decl., Exh. I (GFI Dkt. No. 110). | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 114:** Defendants' statements ONgDB is a "free and open" drop-in replacement under the AGPL for equivalent versions of paid-for commercially licensed Neo4® EE were false and misleading because ONgDB was not of the same quality as if it were compiled by Plaintiffs. Rathle Decl. ¶¶ 19-22, 29-34; Ratinoff Decl., Exh. 3 at 216:2-218:6; Exh. 31 at 161:23-163:12, 168:14-169:6. | DISPUTED: These statements are true. They are also not misleading. ONgDB is a superset of Neo4j as it forks and does not modify the core code. All versions of ONgDB (even 3.5 ) are drop in replacements for neo4j community and enterprise versions of the same version number.

If different people compile the same code using the same build configuration - then there will not be any quality differences between the 2 compiled distributions. In fact - Neo4j does not technically compile their code, the build system they use from atlassian does the job. It should be noted that the GFI build system also uses atlassian tooling and automation.

To the contrary, the statements are true. First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393 The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |

842\3697141.3

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | When ONgDB and Neo4j Enterprise share the same code base - the compiled distributions are identical from a functionality and feature perspective. Only the metadata timestamps of the compile time differ which has no effect on the quality.<br><br>ONgDB ensures that the same JVM and other parameters are used as the Neo4j compiled binaries - there are no quality differences because of the fact that the source code across versions using the same code are the same. |
| | **Additional Facts:** Defendants confirm above that GFI "is no longer developing ONgDB versions as drop in replacements for Neo4j EE []" and does not describe versions after 3.5.4 as such." Fact 96-97, 100. This is because GFI "no longer could … reliably guarantee that [ONgDB] was a drop-in replacement" and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate" with the code become more divergent. Ratinoff Decl., Exh. 31 at 188:5-17, 188:23-189:23. | |
| | **Fact 115:** Since GFI introduced modifications to ONgDB in an attempt to keep pace with the closed Neo4j® EE releases, the potential for stability and compatibility issues with ONgDB increases. *See* Rathle Decl., ¶¶ 29-24; *see also* Ratinoff Decl., Exh. 31 at 158:18-160:5, 161:23-163:12; Exh. 3 at 223:1-224:9; Exh. 40. | DISPUTED: GFI does not modify the core code it keeps in sync from the Neo4j official GitHub repository. The same can be said about Neo4j - and historically they have had many stability and other issues across different releases. ONgDB skipped over some 4.x releases as it waited for Neo4j Inc to address issues and tickets relating to the releases before GFI felt it was stable enough to upgrade. GFI conducts about 64,000 tests for each build. Nussbaum Depo., 166:18-168:13. |
| | **Fact 116:** ONgDB does not include every closed enterprise feature in the equivalent version of Neo4j® EE. Ratinoff Decl., Exh. 38 at 2:12-17, 4:15-22, 5:4-6:21; Exh. 3 at 127:19-128:17. | DISPUTED: Versions of Neo4j Enterprise below 3.5 had the same code and therefore has every equivalent feature of the corresponding ONgDB version that did not change the source code. Only ONgDB 3.5 and higher do not include every enterprise feature and defendants don't claim that ongdb 3.5 and above have every feature.<br><br>See fact 32. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | ONgDB (AKA ONgDB Enterprise) 3.5.11 is Neo4j 3.5.11 Core + the enterprise features Neo4j Inc removed from the code base as of v3.5. This shows we are not saying we have every feature - the features are only the ones removed from the code base as of v3.5 |
| | Fact 117: GFI admitted that after ONgDB v3.5.4, it could not "reliably guarantee that it was a drop-in replacement" for the same version number of Neo4j® EE and was unwilling to do the testing to make such integration and compatibility guarantees. Ratinoff Decl., Exh. 31 at 186:24-188:17, 188:23-189:23. | DISPUTED – GFI conducts tests on ONgDB to ensure its quality and compatibility.<br><br>UNDISPUTED GFI has not verified that ONgDB versions after 3.5.4 are drop in replacements for the equivalent version of Neo4j EE |
| 2. which is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question. | | |
| (a) strength of the mark | The Neo4j® Mark is inherently distinctive and Plaintiffs have used it in commerce since 2007, and as a result has gained strong brand recognition via various awards and recognition in the graph database software market. Broad Decl., ¶¶ 2-19, Exhs. 1-11. | DISPUTED: The word Neo4J is used to describe various software versions and companies, so it is not distinct, and the recognition is not as a company brand but as a type of graph database widely distributed on GitHub under open source licenses. Suhy Dec. 50 |
| | Additional Facts: The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. Ratinoff Decl., Exh. 1. The Court already rejected Defendants' company name versus software "confusion argument." See PT Dkt. No. 70 9:3-10:24. | |
| (b) relatedness of the goods and similarity of sight, sound and meaning | Defendants promote ONgDB as Neo4j® EE except that they are free and licensed without restrictions under the AGPL. Ratinoff Decl., Exhs. 18, 21, 25, 29, 42-46, 49-51, 54-55, 57-58, 60, 62-66, 67-70, 72-74, 93, 99-104, 108, 113-114. | DISPUTED: The website content clearly says that there are no restrictions in usage of cores or number of instances, something the commercial edition enforced via legal terms. These features have no usage restrictions in ONgDB. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Exhibit 19 states: "**They have no restrictions on the number of cluster instances or cores** that the commercial licensed packages impose!"

Exhibit 42 states: "More agencies are adopting it as they learn about it. ONgDB takes Neo4j core (which is open source) and adds enterprise features into it, all 100% free and open, with no **limits on cores or cluster instances** that 'commercial subscriptions' impose.

Exhibit 43 states:  1. You do not have to pay any licensing fees for the software you requested. Neo4j Enterprise < 3.5 and ONgDB (Open Native Graph Database) Enterprise (all versions) are available to use 100% free, in production.

Exhibit 43 states:
More agencies are adopting ONgDB over Neo4j as they learn that it is just the free and open Neo4j enterprise alternative.
ONgDB takes Neo4j core (which is open source) and adds enterprise features into it, **all 100% free and open, with no limits on cores or cluster instances that 'commercial subscriptions' impose.**

The exhibits cited do not support the proposition. To the contrary, GFI consistently uses language distinguishing ONgDB from Neo4j EE such as "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation."  See Responses to Facts 59-64.  And  Exhibit 93 also states:  "What is ONgDB:  Open Native Graph DB is an open source fork of #Neo4j, that picks up prior to Neo4j, Inc.'s |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | removal of enterprise code from the main Github repository." |
| | **Additional Facts:** As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original). This is also confirmed by the Stipulated Judgment entered in the GFI Action. Reply Ratinoff Decl., Exh. I (GFI Dkt. No. 110). | |
| (c) evidence of actual confusion; | <u>Fact 118:</u> Defendants' interchangeable use of "Neo4j Enterprise" and "ONgDB" misleads consumers into mistakenly believing that ONgDB and Neo4j® EE were one and the same.  Ratinoff Decl., Exhs. 35, 40, 42-44, 46-47, 53, 55-58, 76, 100, 130-131, 134-135. | **DISPUTED:**  Defendants to do mislead consumers about ONgDB and Neo4j Enterprise.  The statements are true for some versions of Neo4j Enterprise and ONgDB.   Defendants clearly communicate what ONgDB is, what it's origin is.  GFI consistently uses <u>language distinguishing ONgDB from Neo4j EE such as</u> "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation."  See Responses to Facts 59-64.  And Exhibit 93 also states:  "What is ONgDB:  Open Native Graph DB is an open source fork of #Neo4j, that picks up prior to Neo4j, Inc.'s removal of enterprise code from the main Github repository."<br><br>Defendants have never mislead and tried to confuse people into thinking ONgDB is just another name for Neo4j Enterprise.  In fact defendants work hard at educating the community about the facts. The cited emails are hearsay and do not establish compatibility issues.  Rather, Exhibit 115 demonstrates an attempt to use a desktop tool inappropriately with a server application.  Ratinoff Decl., Exh. 31 at 232:5-25.  Nothing in the email demonstrates that there would be any compatibility issues when ONgDB is used as a server application. |
| | <u>Fact 119:</u> Defendants' misrepresentations about ONgDB being "free and open" drop-in replacement/equivalent under the AGPL caused | DISPUTED: the statements made are not misrepresentations.   ONgDB is a drop in |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | actual confusion over Defendants' unauthorized modification to the Neo4j Sweden Software License and justification for doing so. *See* Ratinoff Decl., Exhs. 40, 49, 55, 118-119, 131, 133-134. | replacement of Neo4j community and enterprise versions with the same version number. ONgDB is a superset of Neo4j and does not modify the Neo4j core code. Furthermore - the combined term "drop-in replacement/equivalent" is not used. To the contrary, the statements are true. First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A The cited emails are hearsay and do not establish compatibility issues. Rather, Exhibit 115 demonstrates an attempt to use a desktop tool inappropriately with a server application. Ratinoff Decl., Exh. 31 at 232:5-25. Nothing in the email demonstrates that there would be any compatibility issues when ONgDB is used as a server application. |
| | **Fact 120:** GFI's use of the Neo4j® Mark to promote ONgDB resulted in customers choosing ONgDB over Neo4j® EE and encountering compatibility issues. Ratinoff Decl., Exh. 115-116; Exh 31 at 230:12-233:10; Exh. 3 at 207:12-209:3. | To the contrary, the statements are true. First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A The cited emails are hearsay and do not establish compatibility issues.  Rather, Exhibit 115 demonstrates an attempt to use a desktop tool inappropriately with a server application.  Ratinoff Decl., Exh. 31 at 232:5-25.  Nothing in the email demonstrates that there would be any compatibility issues when ONgDB is used as a server application. |
| | **Fact 121:** Consumers chose ONgDB over Neo4j® EE based on Defendants' misrepresentations about ONgDB being "free and open" drop-in replacement/equivalent under the AGPL, including NextCentury and the MPO, Tufin, the IRS, Department of Homeland Security (DHS) and others.  Ratinoff Decl., Exhs. 35, 40, 47-51, 53, 100, 120, 127, 133-135; Exh. 3 at 54:17-55:1, 142:15-144:20, 224:13-23, 227:3-8, Exh. 31 at 191:15-24, 194:23-25, 195:13-18, 196:22-197:24; Exh. 38 at 23:14-24:4; Broad Decl., ¶¶ 20-24, Exhs. 12-13. | DISPUTED:  USA concedes consumers decided to use ONgDB because it was free. Dkt. 98, p. 2:12-13; p. 32:6:10.

Price is the material concern on the purchase,  not the license or drop in capability. This is obvious in the analysis. Consumers can test whether the software is drop in and review the license. As users of ONgDB do not sell the software, whether the commons clause is valid or not has no impact. Under the AGPL, if you use the open source software internally, as for example what the IRS does, there is |

SER_2354

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | no issue with the commons clause. Consumers do not face any copyright infringement claim from Sweden as they are licensed under the AGPL. Suhy Dec. ¶44<br><br>The terms mentioned are not misrepresentations about ONgDB.  They are true.<br>Defendants do not use the term "drop-in replacement/equivalent".  ONgDB is free and open - it still contains all the AGPL terms that make it so. All the agencies listed use ONgDB for free. Furthermore - the commons clause would have no effect on the agencies mentioned from Mr Suhy's knowledge. Suhy Dec. ¶43<br><br>Plaintiffs present no evidence of a single person or entity that would have made that choice based on the statements in defendants' websites.<br><br>Most people do not make million dollar decision to decide on the use of a database from website statements.  Indeed, the evidence Plaintiffs provide with respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability."  Broad Decl., Exh. 13. |
| | **Additional Facts:** As noted by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original). This is also confirmed by the Stipulated Judgment entered in the GFI Action. Reply Ratinoff Decl., Exh. I (GFI Dkt. No. 110).  Next Century chose ONgDB after Defendants said they could use ONgDB under the AGPL for free, and did not need a paid license from Plaintiffs, which Defendants could only state because they | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | removed the Commons Clause. Ratinoff Decl., Exh. 48-50, 120; *see also* Rathle Decl., ¶¶ 5-13, 27, 29, Exh. 3. | |
| (d) marketing channels and likelihood of expansion | **Fact 122:** Defendants continue to target the same potential users of graph database platforms and software and use the same channels via the internet. *See, e.g.,* Ratinoff Decl., Exhs. 14-15, 18, 25, 29, 37, 45-55, 57, 60-61, 65-66, 76-77, 118-119, 120, 127, 130-132, 134-135. | UNDISPUTED: Objection this fact does not support the claim. Because ONgDB is an unmodified fork of Neo4j Core code, and a superset of Neo4j Core - then anyone who is currently using Neo4j commercial or open source distributions can switch over to ONgDB. In other words - people that use Neo4j are the people who would want to switch to ONgDB if they wanted enterprise features with no limitations on cores or cluster instances for free. Suhy Dec. ¶45 |
| | **Fact 123:** Neo4j USA and the PT Defendants competed for the same contracts in the government sector. Ratinoff Decl., Exhs. 42-51, 54-55, 100, 120, 127, 130-135; Broad Decl., ¶¶ 20-24, Exhs. 12-13. | DISPUTED: To Mr Suhy's knowledge, Neo4j USA does not directly respond to contracts. Neo4j partners bid on a contracts. Purthink has no contracts with the government. Igov does not license software to the government. Suhy Dec. ¶46 |
| (e) intent | **Fact 124:** Defendants' use of the Neo4j® Mark to promote Plaintiffs' software with an improperly modified copyright license shows that they intend to copy them and confuse the public. *See supra* Facts 78-102. | DISPUTED: Defendants do not use the Neo4j® Mark, they use the neo4j word in a descriptive manner. Suhy Dec. ¶41 Defendants aim at educating the public not causing confusion. Mr. Suhy did not modify any copyrighted content which is owned by USA, it only updated Sweden's License.txt file which the free software foundation owns the copyright for under the express terms of the AGPL. Suhy Dec. ¶29 <br><br> Furthermore - when Suhy made the AGPL license verbatim - the commit message clearly states the intention: <br><br> The commit which replaced the modified License.txt file copyrighted to the FSF has a commit message which clarifies the intent of replacing the modified license with the verbatim. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | **"Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license."**<br><br>ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. |
| | **Additional Facts:** As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original). This is also confirmed by the Stipulated Judgment entered in the GFI Action. Reply Ratinoff Decl., Exh. I (GFI Dkt. No. 110). Defendants promoted ONgDB as Neo4j® EE except that ONgDB is free and without commercial restrictions only because they removed the Commons Clause. Rathle Decl., ¶¶ 5-13, 27, 29, Exh. 3. | |

## Attestation

I attest that the evidence cited herein by Plaintiffs fairly and accurately supports or disputes the facts asserted.

Dated:  February 16, 2021                          By:  */s/ Jeffrey M. Ratinoff*
                                                            Jeffrey M. Ratinoff
                                                            Attorney for Plaintiffs and Counter-Defendants
                                                            Neo4j, Inc. and Neo4j Sweden AB

# EXHIBIT B

SER_2358

**PLAINTIFFS' RESPONSE TO DEFENDANT'S CONSOLIDATED SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Claim 1: Neo4J USA's Trademark Infringement Claim** | | |
| Plaintiff Neo4j Inc. ("USA") Does not own a protectable trademark in Neo4J which is a required element of a trademark claim | Fact 125: **USA Fka, Neo Techonolgy, Inc. does not own the trademark to Neo4J. Neo4J Sweden AB, Fka Network Engine for Objects in Lund AB) ("Sweden") owns the trademark to Neo4J.** Beene Dec ¶ 2-7 Exhibits 1, (recital 1, Section 1.6. (b), 1.7, 2.1 (non-exclusive license) Article 3 (Reservation of Rights [to Sweden]) 2 Royalty report on license, 3 (Sweden Neo4J trademark applications and registrations). Dkt. No 56 ¶91 (Neo Technologies, Inc. was incorporated in July 7, 2011 and changed its name to Neo4j, Inc. on August 7, 2017) | **DISPUTED:** This is not a material fact. Neo4j USA is the owner of the U.S. registration for the Neo4j® Mark. Ratinoff Decl., Exh. 1. Neo4j Sweden is a wholly owned subsidiary of and controlled by Neo4j USA, and is considered a "related company" as referenced in the U.S. application for the Neo4j® Mark. Rathle, Decl. at 1:17-18; Broad Decl. at ¶¶ 19-21; Beene Decl., Exh. 6 (p. 101 of 125). |
| | Fact 126: Sweden licensed its Neo4J software and trademarks on a **non-exclusive basis** to USA. Beene Dec ¶ 2-7 Exhibits 1, (recital 1, Section 1.6. (b), 1.7, 2.1 (non-exclusive license) Article 3 (Reservation of Rights [to Sweden]) 2 Royalty report on license, 3 (Sweden Neo4J trademark applications and registrations). | **DISPUTED:** Defendants' stated interpretation of the Amended and Restated License Agreement mischaracterizes the express terms thereof.<br><br>**UNDISPUTED:** Under Section 2.1 of the referenced agreement, Neo4j Sweden granted Neo4j USA a non-exclusive worldwide license to Neo-Sweden Intellectual Property Rights (as defined in Section 1.6), and royalty payments are required as set forth in Section 4.1 and Exhibit B. *See* Beene Dec, Exh. 1. |
| | Fact 127: Sweden retained exclusive ownership of the mark in the license agreement. Beene Dec ¶ 2-7 Exhibit 1, (recital 1, Section 1.6. (b), 1.7, Article 3 (Reservation of Rights [to Sweden]) | **DISPUTED:** This is not a material fact. Neo4j USA is the owner of the U.S. registration for the Neo4j® Mark in the United States. Ratinoff Decl., Exh. 1. Neo4j Sweden is a wholly owned subsidiary of and controlled by Neo4j USA, and is considered a "related company" as referenced in that application. Rathle, Decl. at 1:17-18; Broad Decl. at ¶¶ 19-21; Beene Decl., Exh. 6 (p. 101 of 125). |
| | Fact 128: Sweden has in fact made trademark applications claiming ownership of the Neo4J mark throughout the world further providing evidence of Sweden's ownership of the Neo4J mark. Beene Dec ¶ 7, Exhibit 3. | **DISPUTED:** Whether Neo4j Sweden holds trademark registrations for "Neo4j" outside the United States, is irrelevant and immaterial. Neo4j USA is the owner of the U.S. registration for the Neo4j® Mark. Ratinoff Decl., Exh. 1. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 129:** USA has paid Sweden royalties for the license. Beene Dec ¶ 6, Exhibits 2. | **UNDISPUTED:** Neo4j USA has paid Neo4j Sweden royalties as required by the referenced agreement. |
| Fraud on the PTO defense | **Fact 130:** Lars Nordwall, as the COO of USA, knew USA did not own the NEO4J trademark and did not use the trademark since 6/04/2006 which is before USA was formed on July 7, 2011. Beene Dec. Ex. 6 (NEO4J trademark application, principle register) and Dkt. No 56 ¶91 (Neo Technologies, Inc. was incorporated in July 7, 2011 and changed its name to Neo4j, Inc. on August 7, 2017) | **DISPUTED:** This is pure speculation with no cited admissible evidence of Mr. Nordwall's intent. Neo4j Sweden is a wholly owned subsidiary of and controlled by Neo4j USA, and is considered a "related company" as referenced in Neo4j USA's application for the Neo4j® Mark. Rathle, Decl. at 1:17-18; Broad Decl., ¶¶ 19-21; Beene Decl., Exh. 6 at p. 101 of 125. |
| Naked license defense | **Fact 131:** USA provides no evidence that Sweden controlled quality on Sweden's software the years before the software and trademark was licensed to USA. Declaration of John Mark Suhy (Suhy Dec.) ¶51. | **DISPUTED:** This is defense was stricken with prejudice, and which Defendants otherwise have the evidentiary burden to establish a lack of quality would control. The cited paragraph from the Suhy Dec is inadmissible argument and lacks foundation. Neo4j Sweden is a wholly owned subsidiary of and controlled by Neo4j USA. Rathle, Decl. at 1:17-18; Broad Decl., ¶¶ 19-21. Plaintiffs work closely together ensure that software bearing the Neo4j® Mark is of the highest quality. Rathle Decl., ¶¶ 2-3, 19-22. |
| | **Fact 132:** The License Agreement from Sweden to USA has no quality control provisions. Beene Dec ¶ 2-7 Exhibit 1 (no quality control provision in license agreement.) | **DISPUTED:** The cited paragraphs to the Beene Dec are not admissible evidence and do not establish any lack of quality control. Neo4j Sweden is a wholly owned subsidiary of and controlled by Neo4j USA. Rathle, Decl. at 1:17-18. Plaintiffs work closely together ensure that the software bearing the Neo4j® Mark is of the highest quality. *Id*., ¶¶ 2-3, 19-22. |
| Defendants did not infringe on USA's limited trademark license when referring to the open source software | **Fact 133:** Sweden is the licensor of the open source version of Neo4J under the AGPL and the owner of the Neo4J trademark. Fact 125 and Ratinoff Dec. Ex 39 at 25:11-13 | **DISPUTED:** Neo4j Sweden licensed Neo4j® EE under the AGPL through version 3.3. Rathle Decl., ¶¶ 5-11. Subsequent versions of Neo4j EE were no longer licensed on an open source basis. *Id*., ¶¶ 12-13. Neo4j USA is the owner of the U.S. registration for the Neo4j® Mark. Rathle Decl., Exh. 1. |
| Defendants use of Neo4J was nominative which is not infringing. | **Fact 134:** Defendants references Sweden's Neo4J mark to reference Sweden's open source software called Neo4J to describe the software | **DISPUTED:** The cited statement is inadmissible argument and lacks foundation. The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions, including Plaintiffs' |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | and uses USA's company name and products to identify them in comparative advertisement. Suhy Dec. ¶9 | exclusive right of use in connection with the Neo4j® products and services. Ratinoff Decl., Exh. 1; PT Dkt. No. 70 at 9:3-10:24. Defendants' repetitive use of the Neo4j® Mark on their websites to promote their recompiled patchwork binaries goes beyond what is reasonably necessary for purposes of comparative advertising. *Id.*, Exhs. 14-18, 62-75. |
| Defendants use of Neo4J does not suggest sponsorship or endorsement | <u>Fact 135</u> Defendants websites, taken as a whole do not suggest sponsorship or endorsement by USA. Suhy does not have a website. Defendants did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been for marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶9, 16 | **DISPUTED:** The cited statements are inadmissible argument and lack foundation. The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions, including Plaintiffs' exclusive right of use in connection with the Neo4j® products and services. Ratinoff Decl., Exh. 1; PT Dkt. No. 70 at 9:3-10:24. Defendants' repetitive use of the Neo4j® Mark on their websites to promote their recompiled patchwork binaries goes beyond what is reasonably necessary for purposes comparative advertising. *Id.*, Exhs. 14-18, 62-75. The GitHub Terms of Service do not expressly license a user's trademarks to other GitHub users and no admissible evidence is offered establishing that Plaintiffs agreed to such terms. *See* Beene Decl., ¶ 13 Exh. 9 at §§ C., A.4, D.5. |
| PT defendants engaged in no conduct leading to an inequitable result to support Alter Ego Liability | <u>Fact 136:</u> The Partner Agreement seeks to prevent PT from dealing in all versions of Sweden's Neo4J open source software when USA is not the licensor under the AGPL and the AGPL freely allows anyone to use the software. Fact 133; Suhy Dec. ¶52 | **DISPUTED:** The cited statement is inadmissible argument. PureThink voluntarily agreed to the restrictions imposed by the Partner Agreement. *See* Ratinoff Decl., Exh. 4. Neo4j Sweden authorized Neo4j USA to license its software in the United States. *See* Beene Decl., Exh. 1 at §2.1.1(a); Rathle Decl., ¶ 4. |
| | <u>Fact 137:</u> The purpose of USA' restriction in the Partner Agreement is to prevent any terminated partner from supporting Sweden's open source version of Neo4J which is unlawful. Suhy Dec. ¶4, 53 | **DISPUTED:** The cited statements are inadmissible argument, lack foundation, and are immaterial. While their validity is a Phase 2 issue, Suhy and PureThink admittedly formed iGov to circumvent the restrictions in Section 4.3.1 of the Partner Agreement. Ratinoff Decl., Exhs. 10-11, 14-15, 17-19; PT Dkt. No. 22, ¶¶ 18-19; *see also* Exh. 3 at 46:12-16, PT Dkt. No. 72 at 8:22-25, 9:15-23. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 138:** USA wrongfully and successfully asserted the unlawful restriction to interfere with PT efforts to get business from the IRS. Suhy Dec. ¶7, 54, Ex. 1 | **DISPUTED**: The cited statement is inadmissible argument, lacks foundation and is immaterial because the validity of the restrictions and any alleged interference are a Phase 2 issues. *See* PT Dkt. No. 68. |
| The PT Defendants did not used the Neo4J® Mark without Neo4j USA's authorization to promote ONgDB | **Fact 139:** The PT defendants are not using the Neo4J mark to sell USA's commercial software. Suhy Dec. ¶31 | **DISPUTED**: The Neo4j® Mark is registered as a standard character mark and is evidence of Plaintiffs' exclusive right to use in connection with Neo4j® products and services.  Ratinoff Decl., Exh. 1; PT Dkt. No. 70 at 9:3-10:24. Defendants' repeatedly used the Neo4j® Mark to promote their recompiled patchwork of binaries and ONgDB.  *See* Ratinoff Decl., Exhs. 14-18, 62-75. The AGPL is not a trademark license, and thus does not grant Defendants the right to use the Neo4j® Mark with their recompiled binaries. *See* Rathle Decl., ¶¶ 15-18, Exhs. 5-7; PT Dkt. No. 85 at 7:27-8:2. |
| | **Fact 140:** USA agreed Sweden owns the intellectual property, including marks for Neo4J. Fact 125. | **DISPUTED**: This is not a material fact.  Neo4j USA is the owner of the U.S. registration for the Neo4j® Mark.  Ratinoff Decl., Exh. 1. Neo4j Sweden is a wholly owned subsidiary of and controlled by Neo4j USA, and is considered a "related company" as referenced in the U.S. application for the Neo4j® Mark. Rathle, Decl. at 1:17-18; Broad Decl. at ¶¶ 19-21; Beene Decl., Exh. 6 (p. 101 of 125). |
| | **Fact 141:** Here there is an issue of fact on the false designation of origin element as ONgDB is a fork of Sweden's open source software licensed under the AGPL. Suhy Dec. ¶19 | **DISPUTED:**  The cited statement is inadmissible argument and lacks foundation.  It is indisputable that ONgDB is not a "free and open source" fork of Neo4j® EE because Defendants impermissibly replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL and stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor. Rathle Decl., ¶¶ 11-14, 27-30; Exh. 3 at §§ 7, 10; Ratinoff Decl., Exhs. 24-26, 28, 39; Exh. 31 at 87:24-90:9, 159:3-10; GFI Dkt. No. 110 and No. 88 at 5:23-8:9. |
| | **Fact 142:** USA even admits, the open source version has the same great features as the commercial version. Suhy Dec. ¶55; Beene Dec. Ex. 8 | **DISPUTED:**  The cited statement is inadmissible argument and lacks foundation. The alleged website printout has no URL address and is unverifiable, and |

4

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | actually states that Neo4j® EE has additional features, such as enterprise-grade availability, management and scale-up and scale-out capabilities. *See* Beene Dec. Ex. 8; *see also* Rathle Decl., ¶¶ 5-9. |
| | **Fact 143:** Whether ONgDB is a "drop in" replacement for USA's "commercial" Neo4J software, is a disputed issue of fact. | **DISPUTED:** This is unsupported argument, and not a material fact supported by admissible evidence. |
| | **Fact 144:** Data and queries, the key function of a databases, from either version work on both versions. Suhy Dec. ¶56 | **DISPUTED:** This statement is vague and ambiguous, lacks foundation as it is unclear what software and versions thereof are being referred to in the cited paragraph. To the extent that it refers to the open source and commercial versions of Neo4j® software in preceding paragraph, Neo4j® EE has additional commercial-grade features that are not offered with open source Neo4j® CE. *See* Suhy Dec., ¶ 55; *see also* Rathle Decl., ¶¶ 5-9. |
| ONgDB is a Drop in replacement to versions of Neo4J | **Fact 145:** USA, in its website, stated that its commercial Enterprise version of Neo4J has "same great features" as the open source version of Neo4j. Suhy Dec. ¶55, Ex 3 | **DISPUTED:** The cited statement lacks foundation and there is no Exhibit 3 to the Suhy Declaration. Neo4j® EE has additional commercial-grade features that is not offered with open source Neo4j® CE. *See* Beene Dec. Ex. 8; *see also* Rathle Decl., ¶¶ 5-9. |
| | **Fact 146:** ONgBD allows users of other versions of Neo4J (including older versions of commercial and open source) to drop in the files from the same version number and operate the same data and run queries on it, which is the core functionality of a database. Defendants have not heard of any consumer suggest otherwise. Suhy Dec. ¶57 | **DISPUTED:** This statement is vague and ambiguous as to which software and versions thereof Suhy is referring. He testified that only in "certain versions" of Neo4j® EE and ONgDB can a user copy the data directories directly between two software instances. Reply Ratinoff Decl., Exh. F 120:18-122:25. Yet, Suhy tweeted that they must be identical versions. Ratinoff Decl., Exh. 104.

GFI admitted that after ONgDB version 3.5.4, it could not "reliably guarantee that it was a drop-in replacement" for the same version number of Neo4j® EE and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate." Ratinoff Decl., Exh. 31 at 186:24-188:17, 188:23-189:23. |
| Use of USA documentation is | **Fact 147:** Any user of open source software from Sweden's Neo4J GitHub repository are allowed to use all content on the site. This is | **DISPUTED:** This is inadmissible argument, not a material fact. There is nothing in the GitHub Terms |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| licensed Content and is not actionable on any claim. | permitted under the GitHub Terms of Service.  GitHub Terms of service A. 4 definition of Content and ¶ D 5 license. (including "You may grant further rights… " inferring rights to End Users under the GitHub license may **not** be limited.) Suhy Dec. ¶58 Beene Dec. Ex. 9. | of Service (GTOS) that expressly or implicitly contemplates a user licensing their trademarks to other GitHub users. To the contrary, the GTOS warns them that "use of the Website and Service must not violate any applicable laws, including copyright or trademark laws…." Beene, Exh. 9 at § C.  It also does not include trademarks in the definition of "Content" that other users may have a right to use under the GTOS.  *Id.*, ¶ 13,  Exh. 9 at §§ A.4, D.5. There is also no admissible evidence is offered establishing that Plaintiffs agreed to such terms. *Id* |
| Defendants product and services are not readily identifiable without use of the Neo4J trademark | Fact. 148: Neo4J is a type of database that must be identified so consumers looking for the database may find it. Defendants properly used Neo4J to identify companies and products in marketing and comparative advertisements to provide knowledgeable consumers with information for fair competition. Suhy Dec. ¶2, 59 | **DISPUTED**: The cited statements are inadmissible argument, lack foundation and not a material facts. ONgDB can be readily identified as "Open Native Graph Database" without use of Neo4j® Mark. Ratinoff Decl., Exh. 31 at 27:17-29:9, 178:13-179:25, Exhs. 86, 88.  Defendants' use the Neo4j® Mark to promote their own recompiled patchwork of binaries beyond what is reasonably necessary for identifying ONgDB as a fork of Neo4j® EE or for purposes of comparative advertising. *Id.*, Exhs. 14-18, 62-75. |
| **2. False Advertising Claims 2nd, 3rd and 4th causes of action.** | | |
| ONgDB is based on the open source version of Neo4J licensed under the AGPL and is free. | Fact 149: ONgDB is a free fork of Neo4J software licensed under the Sweden's AGPL. Suhy Dec. ¶36 | **DISPUTED**: The cited "evidence" is inadmissible argument, not a material fact.  The undisputed facts show that ONgDB is not a free fork of Neo4j® EE under Sweden's AGPL because Defendants impermissibly replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL and stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor. Rathle Decl., ¶¶ 11-14, 27-30; Exh. 3 at §§ 7, 10; Ratinoff Decl., Exhs. 24-26, 28, 39; Exh. 31 at 87:24-90:9, 159:3-10; GFI Dkt. No. 88 at 5:23-8:9. |
| | Fact 150: The AGPL is a free open source license. AGPL Preamble, Ratinoff Dec. Ex. 39, 1-2 | **DISPUTED**: The cited evidentiary support is a printout of a GitHub commit showing Defendants' replacement of the Neo4j Sweden Software License |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | with the AGPL. Ratinoff Decl., ¶ 41. The AGPL preamble actually states that it "is a free, copyleft license for software and other kinds of works…" *See* Rathle Decl., Exh. 1. |
| Consumer did not materially rely on the defendants' representations to determine to use ONgDB software for free instead of paying USA money for a commercial version of Neo4J. | Fact 151: Sophisticated consumers of databases make purchase decisions based on price. Suhy Dec. ¶44; USA concedes consumers decided to use ONgDB because it was free. Dkt. 98, p.2:12-13 p. 32:6:10. Information Analysis Incorporated's GSA price list has a $500,000 bid for a Neo4J term license. (Beene Dec. Exhibit 5, p.1.) Beene Dec Ex. 7 | UNDISPUTED: Price is a material factor in customers' decision to choosing ONgDB because Defendants advertised it as a "free" version of Neo4j® EE.<br><br>DISPUTED: ONgDB is not a "free" version of Neo4j® EE because Defendants impermissibly replaced the commercially restrictive Neo4j Sweden Software License with a generic copy of the AGPL. Rathle Decl., ¶¶ 11-14, 27-30; Exh. 3 at §§ 7, 10; Ratinoff Decl., Exhs. 24-26, 28, 39; Exh. 31 at 87:24-90:9, 159:3-10; GFI Dkt. No. 88 at 5:23-8:9. Defendants admitted that potential customers of ONgDB and Neo4j® EE are less sophisticated than they originally believed. Ratinoff Decl., Exh. 3 at 207:12-209:3. The cited GSA price list is irrelevant, is not properly authenticated and lacks foundation. |
| An ONgDB licensee that only internally uses the software does not violate the commons clause- valid or not. | Fact 152: The common clause, valid or not, only restricts licensees from selling the software. It does not prevent a licensee from internally using the software. Ratinoff Dec. Ex 39 at 25:11-13, Suhy Dec. ¶36, 60, Ex. 2 | DISPUTED: The Neo4j Sweden Software License imposes limits on licensees' right to "sell" the licensed source code (including without limitation fees for hosting or consulting/ support services related to the Software) underlying Neo4j® EE and offering professional services that are substantially derived from Neo4j® EE or the functionality thereof. Rathle Decl., ¶¶ 11-13, Exh. 3. |
| | Fact 153: Not all versions of Sweden's open source software are subject to the common clause. Suhy Dec. ¶61 | UNDISPUTED: However, this is not a material fact, and is inadmissible because Paragraph 61 if the Suhy Dec. does not support this statement. |
| | | Additional Fact: Neo4j® EE was offered under a paid-for commercial license and under the AGPL prior to version 3.4. Neo4j® EE v3.4 and several pre-release versions of Neo4j® EE v3.5 were subject to the Commons Clause. Rathle Decl., ¶¶ 7-14. |

7

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 154:** A licensee who wants to sell an open source Neo4J fork, may do so with a prior version of Neo4j where the license does not include the added common clause if they have concerns of the validity of the commons clause. Suhy Dec. ¶62 | **DISPUTED**: There is no evidentiary support offered because the Suhy Dec does not contain a Paragraph 62. A licensee may "sell" source code licensed under the AGPL so long as any modifications are redistributed and all copyrights and license terms are retained therewith. Rathle Decl., Ex. 1, §§ 4, 5. 3. The AGPL is not a trademark license, and thus does not grant a licensee the right to use the Neo4j® Mark. *See* PT Dkt. No. 85 at 7:27-8:2. |
| The commons clauses added to the AGPL does not bar professional services. | **Fact 155:** Even if valid, the commons clause only bars services that "consists, entirely or substantially of the Software or the functionality of the Software." Ratinoff Dec. Ex 39 at 25:681-693 | **DISPUTED:** The statement is incomplete representation of the Commons Clause, which states: "For purposes of the foregoing, 'Sell' means practicing any or all of the rights granted to you under the License to provide to third parties, for a fee or other consideration (<u>including without limitation fees for hosting or consulting/ support services related to the Software</u>), a product or service whose value derives, entirely or substantially, from the functionality of the Software." Rathle Decl., Exh. 3. |
| | **Fact 156:** Professional services to support a licensee of open source Neo4j do not "consists, entirely or substantially of the Software or the functionality of the Software." Ratinoff Dec. Ex 39 at 25:681-693, Suhy Dec. ¶36, 60, Ex.2 | **DISPUTED**: This is inadmissible argument, not a material fact. It is also vague and ambiguous as to which version of Neo4j® software and the type of professional services are being referred to in this context. The Neo4j Sweden Software License restricts third-parties from selling Neo4j® EE and offering professional services that are substantially derived from Neo4j® EE or the functionality thereof. Rathle Decl., ¶¶ 11-13, Exh. 3. The AGPL is not a trademark license, and thus does not grant Defendants the right to use the Neo4j® Mark with their recompiled binaries. *See* Rathle Decl., ¶¶ 15-18, Exhs. 5-7; PT Dkt. No. 85 at 7:27-8:2. |

**Attestation**

I attest that the evidence cited herein by Plaintiffs fairly and accurately supports or disputes the facts asserted.

Dated: February 16, 2021   By:  _/s/ Jeffrey M. Ratinoff_

Jeffrey M. Ratinoff, Attorney for Plaintiffs and Counter-Defendants Neo4j, Inc. and Neo4j Sweden AB

8

**EXHIBIT C**

SER_2367

### Plaintiffs' Evidentiary Objections to the Declaration of John Mark Suhy

| Suhy Declaration Paragraph | Basis of Evidentiary Objection |
|---|---|
| Para 2, 3 and 4 (PT nominative use of TM and reasons for forming iGov) | FRE 701 (Improper opinion testimony, improper legal conclusion); |
| Para 6 (iGov's intent) | FRE 701 (Improper opinion testimony); FRE 602 (no foundation for iGov's intent, or to what solicitations are being referred) |
| Para 7, 46, 49, 52, 53, 54; and Exh. 1 (Alleged interference and Partner Agreement restrictions) | FRE 701 (Improper opinion testimony, improper legal conclusion); FRE 401 (IRS issues are irrelevant and immaterial to Phase 1 issues) |
| Para 8 (Development of Neo4j Government Edition) | FRE 602 (No foundation for iGov's development and where they stated PT's relationship with Neo4j USA was terminated) |
| Para 9 (iGov's intent in referencing Neo4j's TM) | FRE 701 (Improper opinion testimony, improper legal conclusion and argument); FRE 602 (no foundation for alleged "references" to the Neo4j® Mark) |
| Para 10 (PT's intent regarding use of Neo4j's mark in PT's email address) | FRE 701 (Improper opinion testimony, improper legal conclusion and argument); FRE 602 (no foundation for purposes of email address); FRE 401 (PT's intent in using mark is irrelevant and immaterial) |
| Para 11 (iGov's software offerings) | FRE 602 (no foundation for existing open source distributions or what evidence is being referred to) |
| Para 12 (iGov's use of Neo4j's trademark) | FRE 701 (Improper opinion testimony); FRE 602 (no foundation for purposes of email address); FRE 401 (PT's intent in using mark is irrelevant and immaterial) |
| Para 13, 14, 15 and 16 (Use of Neo4j software under the AGPL, Graphstack and the partner agreement) | FRE 701 (Improper opinion testimony); FRE 602 (no foundation for iGov's or PT's open source and contractual claims); FRE 401 (PT's intent in using mark is irrelevant and immaterial) |
| Para 18 (Neo4j Sweden's distributions). | FRE 602 (No foundation for how Neo4j Sweden compiles it software and creates distributions, and vague as to which version(s) thereof are referenced) |
| Para 19, 22 (ONgDB) | FRE 701 (Improper opinion testimony); FRE 602 (no foundation for the open source, forking and licensing averments) |
| Para 20 and 21 (PT & iGov websites and ONgDB) | FRE 602 (no foundation for referenced websites and specific statements thereon); FRE 802 (what PT and iGov websites said is hearsay); FRE 701 (Improper opinion testimony and legal conclusion as to whether their use of the Neo4j® Mark is nominative fair use) |

| | |
|---|---|
| Para 20 (ONgDB) | FRE 602 (no foundation for referenced websites and specific statements thereon); FRE 802 (what PT and iGov websites said is hearsay); FRE 701 (Improper opinion testimony and legal conclusion as to whether their use of the Neo4j® Mark is nominative fair use) |
| Para 23, 24, 25, 26, 27 and 28 (Consumer confusion, PT and iGov's use of trademark) | FRE 701 (Improper opinion testimony and legal conclusions as to terms of service and licensing, and as to whether their use of the Neo4j® Mark is nominative fair use); FRE 602 (no foundation); FRE 602, 701 (improper speculation as to alleged lack of consumer confusion and source of technical issues) |
| Para 29 and 30 (Removal of commercial restriction and veracity of statements) | FRE 701 (Improper opinion testimony); FRE 602 (no foundation for referenced files and vague as to which files and version(s) of software is being referred to) |
| Para 31, 32, 33, 34, 35, 36, 37 and 38; and Exhibit 2 (Defendants' statements, interpretation of the AGPL, and GitHub policy) | FRE 602 (no foundation); FRE 802 (FSF and Heather Meek's statements are inadmissible hearsay); FRE 701 (Improper opinion testimony and legal conclusion regarding AGPL interpretation, standing and the requirements of the DMCA and Copyright Act); FRE 401 (PT's meaning and intent in making "drop in replacement" is irrelevant and immaterial); FRE 901a (lack of authentication of Exh. 2) |
| Para 39, and 40 (Defendants' statement re ONgDB and nature of Neo4j Sweden's source code) | FRE 602 (no foundation regarding content and nature Neo4j enterprise code); FRE 701 (Improper opinion testimony regarding content and nature Neo4j enterprise code) |
| Para 41, 42, 43, 44 and 45 (Use of the Neo4j® Mark, price, use of ONgDB and AGPL) | FRE 602, 701 (no foundation and speculative as to technical and pricing averments, and customers' purchasing decisions); FRE 701 (Improper opinion testimony re AGPL interpretation and characterization of ONgDB, as well as improper opinion testimony and legal conclusion as to whether use of the Neo4j® Mark qualifies as nominative fair use) |
| Para 47 (AGPL and FSF) | FRE 802 (FSF and other third party statements are hearsay); FRE 701 (Improper opinion testimony re AGPL interpretation and copyrights) |
| Para 50, 51, 55, 56, 57, 58, 59, and 60 (Use of Neo4j® Mark, quality control, technical and legal claims re ONgDB, GitHub terms of service and the Commons Clause) | FRE 701 (Improper opinion testimony); FRE 602 (no foundation for iGov's or PT's open source, technical and/or contractual averments) FRE 602, 701 (no foundation and impermissible speculation regarding customers) |