**No. 24-5538**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

NEO4J, INC., NEO4J SWEDEN AB,

*Plaintiffs-Appellees*,

v.

JOHN MARK SUHY,

*Defendant-Appellant.*

On Appeal from the United States District Court
For the Northern District of California
No. 5:18-cv-07182-EJD
Hon. Edward J. Davila

_____

**APPELLEES' EXCERPTS OF RECORD
Volume 10 of 18**

_____

John V. Picone III (State Bar No. 187226)
jpicone@spencerfane.com
Jeffrey M. Ratinoff (State Bar No. 197241)
jratinoff@spencerfane.com
Jeremy A. Moseley (MT Bar No. 44830177)
jmoseley@spencerfane.com

*Attorneys for Appellees*
Neo4j, Inc. and Neo4j Sweden AB

Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney at Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
adron@adronlaw.com

Attorneys for defendants:
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,<br>Plaintiffs,<br>v.<br><br>PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual,<br>Defendants. | CASE NO. 5:18-CV-7182 EJD<br>CASE NO. 5:19-CV-06226-EJD<br><br>**DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT / NOTICE OF MOTION AND CROSS MOTION MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OR POINTS AND AUTHORITIES IN SUPPORT** |
| AND RELATED COUNTERCLAIMS | Date: March 25, 2021<br>Time: 9:00 a.m.<br>Dept. Courtroom 4, 5th floor<br>Judge: Hon. Edward J. Davila |
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,<br>Plaintiffs,<br>v.<br>GRAPH FOUNDATION, INC., an Ohio corporation, GRAPHGRID, INC., an Ohio corporation, and ATOMRAIN INC., a Nevada corporation,<br>Defendants. | |

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

i

1

## TABLE OF CONTENTS

2   I.      Introduction ............................................................................................. 1

3   II.     Defendants' Notice of Cross Motion and Cross Motion ....................... 1

4   III.    Background Facts Germane to Phase 1. ................................................ 1

5
    A.     PureThink ........................................................................................ 3
6
7   B.     The Falling out (IRS) ..................................................................... 3

8   IV.    Statement Of Issues To Be Decided .................................................... 8

9   V.     Standard for Summary Judgment ........................................................ 8

10  VI.    Standing ............................................................................................. 10

11
12  VII.   Trade Mark Causes of Action ........................................................... 12

13  A.     USA is not the owner of the Neo4j trademark and its registration does not
14         mean USA owns the trademark to Neo4j ........................................ 12

15  B.     Defendants' Nominative Use is Non Infringing. ........................... 14

16  C.     USA has not met its burden to show defendants' use is not nominative fair
17         use. ................................................................................................ 15

18  VIII.  Contract Liability Theory ................................................................... 17
19
20  IX.    Licensee Estoppel .............................................................................. 20

21  A.     USA is estopped to claim ownership in Sweden's Neo4J's Mark. ........ 21

22  X.     False Advertising Claims .................................................................. 21

23  A.     False Designation Of Origin Claim Is Not Valid As ONgDB is based on
24         Neo4J. .............................................................................................. 21

25

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR            ii
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

B.     There are disputed issues of fact on Elements of the False Advertising claims. ........................................................................................................ 22

C.     USA cannot show empirically that ONgDB is not a "Drop In" replacement for the commercial version. ...................................................................... 23

D.     There is no false advertising based on the APGL ......................................... 27

E.     The Material Purchasing Issue Is The Price ................................................. 30

F.     Use of Content on the Github Site is Permitted ........................................... 31

XI.    Permanent Injunction ............................................................................................ 31

A.     Nominative Use Injunctions are Limited. ................................................... 33

XII.   Cross Motion for Summary Judgment ................................................................. 33

A.     Trademark Infringment Claim .................................................................... 33

B.     False Advertising Claims ............................................................................ 34

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR            iii
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

1

## <u>TABLE OF AUTHORITIES</u>

2  **Cases**

3  *American Council of Certified Podiatric Physicians & Surgeons v. American Bd. of*

4  *Podiatric Surgery, Inc.*, 185 F.3d 606 (6th Cir. 1999)................................................ 30

5  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................... 9, 10

6  *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150 (9th Cir. 2011) ....................................... 30

7  *Automotriz del Golfo De California S.A. de C.V. v. Resnick*, 47 Cal.2d 792 (1957) .. 18

8  *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528 (9th Cir. 1985) ............................. 10

9  *Castrol, Inc., v. Quaker State Corp.*, 977 F.2d 57 (2d Cir. 1992) .............................. 25

10  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)............................................................ 9

11  *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939 (9th Cir. 2011)................... 10, 11

12  *Chevron Corp. v. Pennzoil Co.*, 974 F.2d ll56 (9th Cir. 1992) ..................................... 9

13  *Creative Labs, Inc. v. Cyrix Corp.*, 1997 U.S. Dist. LEXIS 14492 (N.D. Cal., May 7,

14  1997) ...................................................................................................................... 26

15  *Dole Food Co. v. Patrickson,*  538 U.S. 468 (2003) ................................................... 14

16  *Donald F. Duncan, Inc. v. Royal Tops Mfg. Co.*, 343 F.2d 655 (7th Cir. 1965) ......... 20

17  *Eastman Kodak Co. v. Image Technical Services, Inc.* 504 U.S. 451 (1992) ............ 10

18  *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008) ....................................... 20

19  *EFCO Corp. v. Symons Corp.*, 219 F.3d 734 (8th Cir. 2000)..................................... 26

20  *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837 (9th Cir.1987)........... 6, 12

21  *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013 (C.D. Cal. 2011) aff'd

22  738 F.3d 1085 (9th Cir. 2013) .......................................................................... 13, 21

23  *In re Wella A.G.*, 787 F.2d 1549 (Fed. Cir. 1986)...................................................... 14

24  *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130 (2020)..................................... 19

25  *Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) ................................................. 30

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

iv

1    *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................. 10

2    *Musick v. Burke*, 913 F.2d 1390 (9th Cir. 1990) ........................................................ 9

3    *Navajo Air, LLC v. Crye Precision, LLC,* 318 F.Supp.3d 640 (S.D.N.Y. 2018) ......... 21

4    *New Kids on the Block v. News America Pub., Inc.,* 971 F.2d 302 (9th Cir. 1992).... 15

5    *Pacific Supply Co-op. v. Farmers Union Central Exchange Inc.,* 318 F.2d 894 (9th

6      Cir. 1963) .................................................................................................................. 21

7    *Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d 840 (9th Cir. 2004) ...................... 27

8    *Pizza Hut, Inc. v. Papa John's Intern., Inc.,* 227 F.3d 489 (5th Cir. 2000) ......... 22, 23

9    *Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002) ............................ 16

10    *Quabaug Rubber Co. v. Fabiano Shoe Co.,* 567 F.2d 154 (1st Cir.1977) .................. 13

11    *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190 (9th Cir. 2012)....... 8, 13, 34

12    *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.,* 690 F.2d

13      1235 (9th Cir. 1982) ................................................................................................... 9

14    *Schwinn Bicycle Co. v. Murray Ohio Mfg. Co.,* 339 F.Supp. 973 (M.D. Tenn. 1971),

15      aff'd 470 F.2d 975 (6th Cir. 1972) ........................................................................... 12

16    *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir.1997) ........... 23, 26

17    *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016) ........................................................ 10

18    *Sun Microsystems, Inc. v. Microsoft Corp.*, 999 F. Supp. 1301 (N.D. Cal. 1998) ...... 26

19    *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) ....... passim

20    *Ultrapure Systems, Inc. v. Ham-Let Group*, 921 F.Supp. 659 (N.D. Cal. 1996) ........ 13

21    *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F.Supp.3d 816 (N.D. Cal.

22      2015) .......................................................................................................................... 18

23    *United States v. Diebold, Inc.*, 369 U.S. 654 (1992) ..................................................... 9

24    *United States v. Hays*, 515 U.S. 737 (1995) ............................................................... 10

25    *Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292 (4th Cir. 2017) ................................ 22

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR     v
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

1  *Volkswagenwerk Aktiengesellschaft v. Church,* 411 F.2d 350 (9th Cir. 1969) aff'd

2     413 F.2d 1126 (9th Cir. 1969) ................................................................. 15

3  *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7 (2008) ............... 31, 32

4  *Worden v. Cal. Fig Syrup Co.,* 187 U.S. 516 (1903) ....................................... 7

5  **Statutes**

6  15 U.S.C. § 1051 et. seq ................................................................. 13

7  15 U.S.C. § 1125 ......................................................................... 23

8  16 C.F.R. § 14.15 ........................................................................ 16

9  Cal. Bus. and Prof. Code § 16600 ................................................... 19

10  Cal. Evid. Code § 622 ................................................................. 21

11  USCS Fed. Rules Civ. Proc. 56 ...................................................... 8, 9

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR                    vi
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

## I.      Introduction

This is defendants combined opposition to Plaintiff's Neo4J Inc.'s ("USA") motion for partial summary judgment and summary judgment, and cross motion for summary judgment on Plaintiff Neo4J Inc.'s First Causes of Action for Trademark Infringement, 15 U.S.C. 1114 and False Advertising and UCL claims in both cases. While Plaintiff Neo4J Sweden AB ("Sweden") is listed as a moving party, they are not a party to the 4 causes of action in Phase 1 and cannot bring the motion.

## II.     Defendants' Notice of Cross Motion and Cross Motion

Notice is hereby given that on March 25, 2021 at 9:00 a.m. before the Honorable Edward J. Davila, in Courtroom 4, 5th Floor, 280 South First Street, San Jose, CA 95113, defendants will move for Summary Judgment under Federal Rule of Civil Procedure 56 against Neo4J, Inc.'s First Cause of Action for Trademark Infringement and the Second, Third, and Fourth Causes of Action for False Advertising and related State UCL claims in each case (Case No. 5:18-cv-07182-EDJ and Case No. 5:19-CV-06226-EJD).

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, Defendant's responses to  Neo4J Inc.'s Separate Statement of Undisputed Facts attached as **Exhibit A**, Defendants' Separate Statement of Undisputed Facts attached as **Exhibit B**, the Declarations of Adron G. Beene, John Mark Suhy, John D. Pernick, and all pleadings records and files in the two related actions and such other evidence and argument as may be presented at the hearing on the motions.

## III.    Background Facts Germane to Phase 1.

Neo4j Sweden AB (FKA Network Engine for Objects in Lund AB) ("Sweden") was involved in developing a graph database called Neo4j.  Sweden then released

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

1

1  the software for free under the Free Software Foundation's open source GPL (Neo4j

2  community) and AGPL (Neo4j Enterprise) licenses to the public.   Because Neo4j

3  was free and open source, its adoption and use grew dramatically attracting 3rd

4  parties who wanted to work with open source. Because it was open source it also

5  attracted joint authors called contributors who helped further add to the software.

6  It also led to over 2000 forks/derivatives of the Neo4j software.

7      As Neo4j's adoption grew, Sweden decided to monetize its efforts. However,

8  instead of offering a support model by the founders of the Neo4J software, Sweden

9  decided to license the software as a proprietary closed version which is a violation of

10  the GPL and AGPL licenses.

11      Sweden set up Neo Technology, Inc. which changed its name to Neo4J, Inc.

12  and licensed its software and trademarks on a non-exclusive basis to USA. (D Fact[1]

13  126) Although not the owner of the Neo4J trademark, USA improperly filed and

14  obtained a registration for the Neo4J trademark.

15      Historically, the difference between the Neo4j Enterprise AGPL open source

16  licensed distribution and the Neo4j Enterprise Commercially licensed distribution,

17  was via legal terms.  There were not any physical differences in the software.   The

18  commercial license put restrictions on the number of computer cpu cores and

19  number of server instances that could be used.  The Neo4j Enterprise open source

20  license had no such legal restrictions.

21      Neo4j Enterprise open source software under the AGPL license through

22  version 3.4 are still in use, and available under the AGPL license terms to this day.

23  Neo4j Enterprise versions 3.4 are also available under the AGPL License with the

24

25  ─────────────────────
[1] "D Fact" refers to defendants additional undisputed facts referenced in Defendants'
Separate Statement of Undisputed Facts attached as **Exhibit B**
     DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR        2
     SUMMARY JUDGMENT
     CASE NO. 5:18-cv-7182 EJD

commons clause restriction aimed at preventing users from selling Neo4j. The services restriction is not about providing professional services but using the software as a service known as SaaS. Sweden then abandonded the open source community as Neo4j Enterprise source code was removed from the public GitHub repositories starting with version 3.5.0.

### A.     PureThink

USA signed PureThink as a reseller under a Solution Partner Agreement ("SPA"). PureThink had quick initial success selling Neo4j to the US government leading to PureThink being a trusted partner to USA in the US government space.

PureThink and USA then entered into an exclusivity agreement and PureThink designed and developed a government package that would streamline government procurements via sole source procurements and address requirements specific to the US government which were not provided with the standard Neo4j Enterprise commercial packages.  The new offering was called Neo4j Government Edition (AKA Neo4j Enterprise Government Edition)

In total - PureThink sold commercial packages to NSA, FBI, Sandia Laboratories, IRS, and almost DHS. Neo4j USA offered to hire Mr. Suhy to continue to run the Government Edition under the Neo4j USA umbrella as it was becoming very valuable. Mr. Suhy declined.

### B.     The Falling out (IRS)

USA had been trying to get the Internal Revenue Service to purchase a Neo4j Enterprise commercial license for over a year.  As the procurement deadline loomed - the IRS communicated that it was not interested in purchasing a commercial license with support because they needed a solution built and not support for something that was not built or ready for production.

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

3

1    Instead of losing the opportunity to work with the IRS, Suhy told USA that

2    he wanted to try another approach to be able to work with IRS.   The approach was

3    to build the solution IRS needed during the first year, so that the follow up years

4    could generate commercial license revenue. USA agreed, and Suhy / PureThink

5    entered into an agreement with USA and signed a contract with IRS for consulting

6    services to build out a solution for IRS.

7    As the initial contract was coming to an end, IRS was planning on pushing

8    the solution built under the consulting contract to production.  IRS had learned that

9    Neo4j Enterprise was available for free with no restrictions on cores or server

10   instances under the AGPL open source license.  The US government has set a policy

11   of using open source software to save taxpayer dollars. IRS asked Suhy about the

12   Neo4J open source license.

13   For clarity, as USA obfuscates the issue, Sweden licenses Neo4J as open

14   source under the GPL and APGL; USA does not. USA licenses Neo4j in object code

15   on a commercial basis based on its license with Sweden. Defendants in this case are

16   only involved in Sweden's open source version of Neo4J.

17   USA's sales team instructed Suhy to lie and tell IRS that they could not use

18   the open source licensed distribution in production.   On phone calls they indicated

19   that PureThink and USA would not make any revenue from licensing if IRS used

20   the open source license.   Suhy refused to lie to the IRS.

21   USA then directly contacted the IRS and told them they could not use Neo4j

22   Enterprise in production under the open source license.   Suhy refuted that

23   statement. USA's position was false and inconsistent with the AGPL. And USA

24   knows that the position is false and that the Neo4j Enterprise open sourced licensed

25

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

4

1   version was preferred and did not have limitations on cluster instances or cores,

2   that the commercial licensed version had.

3       USA retaliated against PureThink and Suhy in a campaign that included

4   interference with PureThink clients and targeting Suhy personally. USA then

5   terminated PureThink's partner agreement and exclusivity agreement based on

6   claims that were allowed by the IRS PT/USA agreement.

7       USA told the Government that PureThink could not provide any services on

8   the open source Neo4J database as the SPA had a three year bar after termination.

9   As USA was terminating PureThink, Suhy set up a new company called iGov Inc to

10   focus on offering only open source solutions to the government.

11       iGov set up as a new company to build and sell, with the plan to support open

12   source software including Sweden's Neo4J open source software and eventually

13   supported the government use of the open source version of Neo4J. iGov has

14   explained on its website and blog why people should use the free open source

15   version of Neo4J. USA wants to stop that, even though they know its true, so they

16   can sell licenses for basically the same software.

17       Suhy and GFI then worked to ensure a version of open source software

18   survived for all the users to have access to a proper copy of Neo4J in open source.

19       As more people learned that Neo4j Enterprise was open source, Sweden,

20   which owns Neo4j, tried to add commercial restrictions to the public downloads of

21   Neo4j enterprise on USA's websites and implemented measures to make it harder

22   for users to build the software themselves.

23       When the measures to deter users failed, Neo4j Sweden then changed its

24   AGPL license to add a commons clause preventing resale of the open source

25   software even though the copyright holder says the AGPL cannot be altered and

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

5

1   licensees can remove the improper restrictions. And this is after all the users and

2   joint authors relied on the AGPL agreement as third-party beneficiaries of the

3   express terms of the AGPL.

4         Neo4j Sweden released new versions of Neo4j Enterprise with the modified

5   AGPL license to attract new users, many of whom adopted it because it was open

6   source.  Finally, when that measure did not stop the enterprise licensed distribution

7   adoption, Sweden finally abandoned releasing enterprise as open source code and

8   has attempted to shut down all use.

9         By this lawsuit, USA seeks to stop the defendants from doing what they are

10   allowed to do. They are allowed to support Neo4J open source software. They are

11   allowed to make derivatives of Neo4J software licensed as open source software.

12   They are allowed to use all content, which included documentation, Sweden puts on

13   the GitHub repository and fork the Neo4J software. They are allowed to fairly use

14   the Neo4J trademark owned by Sweden to identify to people the software they

15   support and GFI's open source Neo4J fork called ONgDB. They are allowed to fairly

16   use the Neo4J trademark for comparative advertisements to provide consumers the

17   right to fairly decide whether it's worth it to pay for USA's "commercial" version or

18   use a free version.

19         This motion is part of Phase 1 which is limited to Trademark issues and

20   certain trademark defenses (Dkt. No. 68 pg. 3.)

21         Under the agreement to limit the issues in Phase 1, the Unclean Hand

22   defense was reserved to Phase 2. (Dkt. No. 82 ¶3) The Unclean Hands defense is a

23   significant defense against the Trademark and Lanham Act and UCL claims in this

24   action and was reserved for Phase 2 because it is intertwined with the

25   counterclaims and other defenses. See *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,*

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

6

1  826 F.2d 837, 847 (9th Cir.1987). ("Unclean hands is a defense to a Lanham Act

2  infringement suit."); *Worden v. Cal. Fig Syrup Co.,* 187 U.S. 516, 528, 23 S.Ct. 161,

3  47 L.Ed. 282 (1903). All defenses must be considered before any final action may be

4  taken.

5       On September 28, 2020 Plaintiffs filed a Third Amended Complaint. (Dkt.

6  No. 90). The PT defendants filed a Third Amended Answer on October 19, 2020

7  (Dkt. No. 91) which they are allowed to do. Defendants asserted procedural issues

8  with the answer moving to strike the 7th affirmative defense (Cancellation of

9  Trademark Procured by Fraud) and the 9th Affirmative (Defense for Naked License

10  Abandonment of Trademark). (Dkt. No 93.) USA claims a party may not assert

11  affirmative defenses to a new complaint when they are dismissed with prejudice on

12  a prior complaint. That motion is set for hearing February 11, 2021. USA does not

13  challenge the affirmative defenses in this motion. But the evidence shows USA does

14  not own the Neo4J trademark and did not use the trademark before it existed. (D

15  Facts 125, 130) As USA paid Sweden under the License Agreement, there is a

16  strong inference the Lars Nordwall, the COO of USA, knew USA did not own the

17  Neo4J Trademark when he applied for the trademark claiming it did.  (D Facts 129,

18  130). He also knows USA did not use the trademark since 6/04/2006 which is before

19  USA was formed on July 7, 2011. (D Fact 130). USA provides no evidence that

20  Sweden controlled quality on Sweden's software the years before the software and

21  trademark was licensed to USA. (D Fact 131). While USA has mentioned the parent

22  controls the subsidiary concept on quality control, that is not accurate in this

23  relationship. The subsidiary, Sweden owns the mark and the software. This is not a

24  typical parent subsidiary downstream license or relationship. And the License

25  Agreement from Sweden to USA has no quality control provisions. (D Fact 132)

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

7

1  Sweden did not control quality with users of Neo4J and allowed them to use the
2  Neo4J trademark extensively without any quality controls.

3  **IV.    Statement Of Issues To Be Decided**

4      1. Whether there is a material fact whether USA owns the Neo4J mark which
5  is an element of its trademark claim.

6      2. Whether there is a disputed material fact whether defendants use of the
7  Neo4J mark is **not** nominative.

8      3. Whether there is a disputed issue of fact that USA has no standing on
9  claims regarding defendants' use of **Sweden**'s Neo4J trademark and software.

10     4. Whether there is a disputed material fact that ONgDB is not falsely
11  advertised and its origin is not falsely designating.

12     5. Whether there is a disputed material fact that consumers material decision
13  is based on **price** and not defendants representations.

14     6. Whether a permanent injunction may issue before all defenses and claims
15  are considered.

16     7. Whether a permanent injunction may issue preventing all nominative use
17  of the Neo4J mark.

18     8. Whether any injunction is proper given the public consequences.

19  **V.    Standard for Summary Judgment**

20     Because of the intensely factual nature of trademark disputes, summary
21  judgment is generally disfavored in the trademark arena. *Rearden LLC v. Rearden*
22  *Commerce, Inc.* (9th Cir. 2012) 683 F.3d 1190, 1202. Summary judgment is proper if
23  "the movant shows that there is no genuine dispute as to any material fact and the
24  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary
25  judgment is to be granted cautiously, with due respect for a party's right to have its

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR         8
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

1   factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477

2   U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A

3   court must view the facts and draw inferences in the manner most favorable to the

4   non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron*

5   *Corp. v. Pennzoil Co.*, 974 F.2d ll56, 1161 (9th Cir. 1992). The moving party bears

6   the initial burden of demonstrating the absence of a genuine issue of material fact

7   for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323.

8   When the non-moving party bears the burden of proving the claim or defense, the

9   moving party can meet its burden by pointing out that the non-moving party has

10   failed to present any genuine issue of material fact as to an essential element of its

11   case. See *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

12        Once the moving party meets its burden, the burden shifts to the opposing

13   party to set out specific material facts showing a genuine issue for trial. See *Liberty*

14   *Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome

15   of the suit under the governing law ...." *Id.* at 248. A party cannot create a genuine

16   issue of material fact simply by making assertions in its legal papers. *S.A. Empresa*

17   *de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238

18   (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the

19   basis for the dispute. See id. The Court need not "comb the record" looking for other

20   evidence; it is only required to consider evidence set forth in the moving and

21   opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3);

22   *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The court

23   must view the evidence presented on the motion in the light most favorable to the

24   opposing party: "The evidence of the non-movant is to be believed, and all justifiable

25   inferences are to be drawn in his favor." [*Anderson v. Liberty Lobby, Inc.*, supra, 477

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

9

1   US at 255, 106 S.Ct. at 2513.  At the summary judgment stage, the nonmovant's

2   version of any disputed issue of fact is presumed correct. *Eastman Kodak Co. v.*

3   *Image Technical Services, Inc.* (1992) 504 US 451, 112 S.Ct. 2072. A person's state

4   of mind (motive, intent, knowledge, etc.) may be inferred from his or her conduct.

5   But summary judgment is improper where conflicting inferences can be drawn from

6   such conduct (i.e., where reasonable minds could disagree as to a person's motives,

7   etc.). See, *Braxton-Secret v. A.H. Robins Co.* (9th Cir. 1985) 769 F2d 528, 531

8   **VI.   Standing**

9        "The federal courts are under an independent obligation to examine their

10  own jurisdiction, and standing is perhaps the most important of the jurisdictional

11  doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995).

12       At an irreducible constitutional minimum, a plaintiff must show three

13  elements to establish standing. *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939,

14  956 (9th Cir. 2011). First, the plaintiff must have suffered an "injury in fact"—an

15  invasion of a legally protected interest which is concrete, particularized, and

16  imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S.

17  555, 560 (1992); see also *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1548-49 (2016), as

18  revised (May 24, 2016). In Spokeo, the Supreme Court made clear that "concrete" is

19  not "necessarily synonymous with 'tangible,' " and indicated a "risk of real harm"

20  could satisfy the concreteness requirement. *Id.* at 1549. Second, there must be a

21  causal connection between the injury and the challenged conduct. Lujan, 504 U.S.

22  at 560. Third, it must be likely, as opposed to merely speculative, that the injury

23  will be redressed by a favorable decision. Id. Ultimately, a plaintiff, as the party

24  invoking federal jurisdiction, has the burden of establishing these elements. See id.

25  at 561. "Even if a claim satisfies the three elements of standing to sue for past

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

10

1    illegal conduct, to sustain standing for injunctive relief, a claimant must also

2    establish a 'real and immediate threat of repeated injury.' " *Chapman*, 631 F.3d at

3    956 (citing *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)

4    ).

5         Since USA does not own the Neo4J trademark, its lacks standing to bring an

6    infringement claim. Much of USA's claims actually revolve around defendants' use

7    and mention of **Sweden**'s open source software and trademark. Defendants do not

8    use or support USA's software. Defendants' mention of USA software is for

9    comparative advertisement which legally allowed fair use. USA cannot assert

10   claims based on Defendants use of Sweden's software and trademark. While USA

11   litters the pleadings and the motion with plaintiffs plural, the reference is false.

12   Plaintiff Sweden is not the plaintiff in the First, Second, Third, Fourth, Fifth, or

13   Sixth causes of Action. (Dkt No. 90). While USA asserts claims based on Sweden's

14   DCMA claims, USA is not the owner of the software (D Fact 125) and therefore has

15   no standing to assert the claim. This is also a phase 2 issue and premature to

16   address at this point.

17        None of defendants' conduct with respect to the use and Sweden's software is

18   germane to USA's claims. Use of Sweden's software is governed by AGPL license.

19   USA is not the licensor of the AGPL software and has no standing to assert claims

20   related to that license agreement. Sweden has declined to  asserted any compulsory

21   claims based on breach of the AGPL against defendants and has, necessarily,

22   waived them. Similarly, USA attempts to join all the defendants as one party or

23   groups of parties. They are not. Each defendant is independent and the claims may

24   not be maintained in a goulash.

25

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR        11
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

**VII.    Trade Mark Causes of Action**

Summary adjudication should not be granted to USA on the trademark claims as there are at least disputed issues of fact showing USA is not the owner of the Neo4J mark and defendants use of the mark is nominative.

To prove trademark infringement, a plaintiff must show ownership of a protectable trademark and a likelihood of consumer confusion. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir.1987). But when defendants use is nominative, the consumer confusion test does not apply. The test is whether USA can show defendants use is **not** nominative. *Toyota Motor Sales, U.S.A., Inc. v. Tabari* (9th Cir. 2010) 610 F.3d 1171, 1182–1183. While defendants asserted affirmative defenses on nomanitive use, the burden is actually on USA to show the use is not nominative.

**A.    USA is not the owner of the Neo4j trademark and its registration does not mean USA owns the trademark to Neo4j**

USA's registration does not create ownership of the Neo4J mark. Sweden owns the Neo4j mark. (D Facts 125, 126, 127, 128) As only the owner of the mark may bring a claim for trademark infringement, USA cannot meet the first element of its Trademark Claims and its motion must be denied and summary judgment granted in defendants favor.

Although USA has a registered mark, that does not mean they are the owner of the Neo4J mark. Registration confers jurisdiction but the ownership right to a trademark is not conferred by registration. *Schwinn Bicycle Co. v. Murray Ohio Mfg. Co.* (M.D. Tenn. 1971) 339 F.Supp. 973, 979, aff'd (6th Cir. 1972) 470 F.2d 975

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

12

1   To prevail on its Lanham Act trademark claim, a plaintiff " 'must prove: (1) that it

2   has a protectible ownership interest in the mark…." ; [citations omitted] *Rearden*

3   *LLC v. Rearden Commerce, Inc.* (9th Cir. 2012) 683 F.3d 1190, 1202–1203

4          There is at least a factual dispute that USA does not have a protectible

5   ownership interest in the Neo4J mark. (D Facts 126, 126, 127, 128, 129) Under the

6   Lanham Act, while registration of a trademark creates a rebuttable presumption

7   that the mark is valid, the presumption evaporates as soon as evidence of invalidity

8   is presented. 15 U.S.C. § 1051 et seq. *Hokto Kinoko Co. v. Concord Farms, Inc.* (C.D.

9   Cal. 2011) 810 F.Supp.2d 1013, 1022, aff'd (9th Cir. 2013) 738 F.3d 1085.

10          USA's presumption of ownership based on registration evaporates because of

11   overwhelming evidence it does not own the Neo4J mark. The evidence shows

12   Sweden owns the trademark and licensed the rights to the Neo4J trademark to

13   USA. (D Facts 125, 126). And Sweden licensed the Neo4j mark to USA only on a

14   non-exclusive basis.  (D Fact 126). "Where the license is non-exclusive the licensee

15   does not have standing to bring an infringement action." *Quabaug Rubber Co. v.*

16   *Fabiano Shoe Co.,* 567 F.2d 154, 159–160 (1st Cir.1977).  Also, USA lacks standing

17   when provisions in the contract indicate that Sweden retains exclusive ownership of

18   the mark. *DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621, 623 (2nd Cir.1980).

19   *Ultrapure Systems, Inc. v. Ham-Let Group* (N.D. Cal. 1996) 921 F.Supp. 659, 665.

20   Sweden retained exclusive ownership of the mark in the License Agreement. (D

21   Fact 127). Sweden has in fact made trademark applications claiming ownership of

22   the Neo4J mark throughout the world further providing evidence of Sweden's

23   ownership of the Neo4J mark. (D Fact 128). USA has paid Sweden royalties for the

24   license. (D Fact 129).  As there is at least a triable issue of fact whether USA owns

25   the Neo4J mark, USA cannot establish the first element of its trademark claims

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR          13
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

1  and the motion should be denied. Since the fact of ownership is not disputable,

2  summary judgment should, instead, be granted in defendants favor.

3      The related party concept does not save USA. The related party doctrine is

4  only for registration and only allows the "owner" of the trademark to use its

5  subsidiaries "use' of the mark in the application. *In re Wella A.G.* (Fed. Cir. 1986)

6  787 F.2d 1549, 1555. "A corporate parent which owns the shares of a subsidiary

7  does not, for that reason alone, own or have legal title to the assets of the subsidiary

8  …" *Dole Food Co. v. Patrickson* (2003) 538 U.S. 468, 475. Sweden owns the Mark,

9  not USA.

10  **B.    Defendants' Nominative Use is Non Infringing.**

11      Defendants have not infringed the Neo4J mark. Defendants used the Neo4J

12  name to identify the entities, the Sweden open source software they support and

13  used to fork ONgDB and for comparative advertising. This use is non-infringing fair

14  use of the Neo4J mark. "We've long held that such use of the trademark is a fair

15  use, namely nominative fair use. And fair use is, by definition, not infringement."

16  *Toyota Motor Sales, U.S.A., Inc. v. Tabari* (9th Cir. 2010) 610 F.3d 1171, 1175

17      This is not the case where defendants are using a mark close to the Neo4J

18  mark to identify a different product. Defendants are using the Neo4J mark to

19  identify USA, the commercial Neo4J software and Sweden's open source Neo4J

20  software.

21      Defendants are not attempting to capitalize on consumer confusion or to

22  appropriate the cachet of one product for a different one. They are identifying Neo4J

23  software products. Defendants have a freedom of speech to use the Neo4J mark.

24  "Such nominative use of a mark—where the only word reasonably available to

25  describe a particular thing is pressed into service—lies outside the strictures of

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

14

1  trademark law: Because it does not implicate the source-identification function that

2  is the purpose of trademark, it does not constitute unfair competition; such use is

3  fair because it does not imply sponsorship or endorsement by the trademark

4  holder." *New Kids on the Block v. News America Pub., Inc.* (9th Cir. 1992) 971 F.2d

5  302, 307–308

6       Defendants are permitted to advertise they provide services for Neo4J

7  software product. *Volkswagenwerk Aktiengesellschaft v. Church* (9th Cir. 1969) 411

8  F.2d 350, 352, supplemented (9th Cir. 1969) 413 F.2d 1126. Defendants are

9  permitted to comparatively advertise Neo4J software products. *Network*

10 *Automation, Inc. v. Advanced Systems Concepts, Inc.* (9th Cir. 2011) 638 F.3d 1137,

11 1153. Defendants  have a right to tell consumers they can use Sweden's Neo4J open

12 source software for free instead of paying for USA's commercial license which USA

13 advertises on its website as having the same great features as the open source

14 software. (Beene Dec. Ex. 8)

15       **C.    USA has not met its burden to show defendants' use is not**

16             **nominative fair use.**

17       When the use is nominative, the plaintiff bears the burden of establishing

18 that the use of the mark was not nominative fair use. *Toyota*, at 1182–1183. A

19 defendant seeking to assert nominative fair use as a defense need only show that it

20 used the mark to refer to the trademarked good… The burden then reverts to the

21 plaintiff to show a likelihood of confusion. *Toyota,* at 1183. As Defendants use of

22 Neo4J mark is to identify Neo4J software and the entities, the use is permissible

23 nominative fair use.

24

25

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR       15
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

1    Similarly, competitors may use a rival's trademark in advertising and other

2    channels of communication if the use is not false or misleading. The Federal Trade

3    Commission specifically supports comparative advertising. 16 C.F.R. §14.15.

4    The key issue on nominative fair use is whether the use suggests sponsorship

5    or endorsement of the trademark owner. *Toyota*, at 1179. Here there is a dispute

6    whether any of defendants' use suggests sponsorship or endorsement of Sweden (the

7    actual trademark owner). iGov pointedly states on its website: As iGov Inc. is not a

8    Neo4j Inc Partner, it is not prohibited from promoting open source Neo4j options

9    such as the OngDB fork." (*see* Defendants' Response to Fact 24).  Nothing in

10   defendants' nominative use suggests sponsorship or endorsement of either USA or

11   Sweden. "So long as the site as a whole does not suggest sponsorship or

12   endorsement by the trademark holder, such momentary uncertainty does not

13   preclude a finding of nominative fair use." *Toyota* at 1179. Here all the defendants'

14   websites, taken as a whole, do not suggest sponsorship or endorsement of the

15   trademark holder.

16   No defendant uses the Neo4J name as a company name or a domain name.

17   Use of Neo4J in metatags is nomantive. *Playboy Enterprises, Inc. v. Welles* (9th Cir.

18   2002) 279 F.3d 796, 803. Presumable this applies to twitter as well. A reasonable

19   consumer would not be confused that defendants' websites are a USA site or

20   sponsored by USA or Sweden. And the reasonable consumer in this context is a

21   person looking to obtain a sophisticated Neo4J database. The reasonable consumer

22   can determine if they want to pay USA for Neo4J software or obtain it for free in an

23   open source version. As there are many versions of Neo4J in open source, which is

24   permitted under the Github Terms of Service (Beene Dec. Ex. 9) and the AGPL

25   license, there is a disputed issue over whether any consumer is confused over the

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR          16
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

1   sponsorship or endorsement of Sweden. Given the tone and tenor of defendants

2   position with respect to USA charging money for what a person can get for free, no

3   reasonable jury could find they sponsor defendants.

4        While USA contends people are confused because they sought assistance from

5   USA, that is simply the process of an open source Neo4J user, perhaps wanting

6   more support or the commercial product which is the natural process of the dual

7   channel distribution model Sweden set up. Defendants object to consumer confusion

8   evidence as Hearsay, FRE §802.

9        Consumers can get an open source version for free or can pay USA for

10  support and an alleged better product. The forked free version of the software offers

11  the reasonable consumers a competitive option. Trademarks are not swords to

12  prevent competition; USA does not have the right to eliminate the right of free

13  speech. Defendants are using Sweden's free version of Neo4J software to provide

14  consumers the better option of using free software. Defendants efforts are not

15  unfair. USA's attempts to shut defendants down is unfair. The nominative fair use

16  doctrine is designed to prevent this type of abuse of the rights granted by the

17  Lanham Act. *Toyota* at 1180.

18  **VIII.  Contract Liability Theory.**

19       USA seeks to enforce an unlawful restrictive covenant barring PT, Suhy and

20  iGov from using or supporting Sweden's open source software. USA cannot rely on

21  the 36 month contract restrictions in §4.3.2 of the Solutions Partner Agreement

22  ("SPA"). (The SPA is Ex. 4 to Ratinoff Dec.). The SPA terminated July 11, 2017

23  (Plaintiffs' Fact 7). The restrictions, invalid or not, expired July 11, 2020.

24       Suhy and iGov were not ever bound to the SPA under an alter ego theory.

25  The SPA was not assignable without consent unless to a parent or subsidiary or

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR          17
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

1   through a merger or sale of all or substantially all assets or stock. SPA 10.4 There is

2   a dispute whether consent was asked for or given to assign the agreement to Suhy

3   or iGov and there is no evidence of the exceptions to consent. (D Fact 9; Suhy Dec.

4   ¶61).  And the alter ego doctrine is fundamentally misapplied by USA.

5        An individual can be liable for the action of a company and deemed an alter

6   ego of a corporation if: (1) there is a unity of interest and ownership such that the

7   separate personalities of the corporation and the individual no longer exist, and (2)

8   an inequitable result will follow if the acts are treated as those of the corporation

9   alone. *Automotriz Del Golfo De California S.A. de C.V. v. Resnick*, 47 Cal.2d 792,

10  796, 306 P.2d 1 (1957) Alter Ego liability is to hold an individual or entity liable for

11  the actions of the company. The alter ego doctrine does not bind the individual or

12  another entity to an agreement. Contrary to USA's suggestion, there was no finding

13  the defendant was bound by the agreement in *Ultratech, Inc. v. Ensure NanoTech*

14  *(Beijing), Inc.* (N.D. Cal. 2015) 108 F.Supp.3d 816, 826. In the pleading case, the

15  defendant was alleged to be liable for the company's breach of contract on an alter

16  ego theory. This does not mean or imply that unlawful restrictive contract terms

17  may be applied to Suhy or iGov. Alter Ego liability would only apply to liability for

18  the acts of PT-if there where any. Suhy and iGov are free to use open source

19  software without restrictions. The facts supporting Alter Ego theory are disputed

20  too.

21       There is a dispute on the unity of interest element (*see* Defendants' responses

22  to Plaintiffs' Facts 10, 11) iGov did not use PT's computers, the website format was

23  because that was the format Suhy was familiar with. There was no sale of assets or

24  merger either. The fact they are at the same location operated by the same person is

25  because Suhy is an individual who set up the two different entities and operates

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR           18
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

1   them. Individuals and the entities they operate are not alter egos because of that

2   fact.

3          There is a dispute on the second element of whether an inequitable result is

4   achieved if Suhy and iGov are not made signatories to the PSA. Suhy and iGov deal

5   in Sweden's open source version of Neo4J. As Sweden is the owner of Neo4j software

6   and trademark, USA has no right to prevent third parties or anyone from dealing

7   with Sweden's software and trademark. There is nothing inequitable about Suhy

8   and iGov supporting licensee's use of Sweden's open source software. If there is an

9   issue on the AGPL, that will be addressed in Phase 2 and it is Sweden's concern, not

10  USA. USA cannot simply side step this issue by trying to enforce a patently

11  unlawful contract restriction.

12         The §4.3.2 restriction in the SPA preventing a person or entity from using or

13  supporting Sweden's open source software in unlawful as it violates California

14  Business and Professions Code § 16600. Initially, the restriction is far too long at 36

15  months SPA 4.3.2 There is no geographic limitations. The term also seeks to

16  prevent PT from dealing in all versions of Sweden's Neo4J open source software

17  when the AGPL freely allows anyone to use the software. (D Fact 136) The purpose

18  of USA' restriction is to prevent any terminated partner from supporting Sweden's

19  open source version of Neo4J. (D Fact 137).  Even the commons clause addition to

20  the AGPL, valid or not, does not prevent professional services. (D Facts 155, 156)

21  Thus, the SPA restriction is solely to reduce the people who can support Sweden's

22  free software so USA can reduce competition and sell the same software for money.

23  The restriction is patently invalid against Suhy. And the restriction is unlawful

24  against PT or iGov as "This restriction harms competition far more than it helps

25  rendering the restriction invalid." *Ixchel Pharma, LLC v. Biogen, Inc.,* (2020) 9

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR        19
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

1    Cal.5th 1130, 1150. USA asserted the unlawful restriction to stop PT from getting

2    business from the IRS. (D Fact 138) USA's use of an unlawful restriction is

3    absolutely against public policy and supports a claim for interference with

4    prospective economic advantage. *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937

5    (2008). PT, Suhy and iGov's supporting the open source software is not inequitable.

6    USA's efforts to have and enforce an illegal covenant is unconscionable. Equity

7    should never enforce such an agreement.

8         The termination of the trademark license to PT does not mean PT cannot use

9    Sweden's trademarks or engage in nominative use of the Neo4J trademark. The

10   SPA trademark license allowed PT to use USA's sublicensed trademark rights for

11   selling USA's "commercial" software. PT is not using the Neo4J mark to sell USA's

12   commercial software. (D Fact 139) PT is not violating the terminated license. PT is

13   using the Neo4J mark which Sweden owns, to reference the companies and software

14   products. This is not infringement, it is nominative use.

15   **IX.    Licensee Estoppel**

16        USA's claim all three PT defendants cannot attack the ownership of the mark

17   based on licensee estoppel. As discussed above, Suhy and iGov are nor bound by the

18   PSA. There is no dispute that USA terminated the SPA. Licensee estoppel only

19   applies for the duration of the license. See *Donald F. Duncan, Inc. v. Royal Tops*

20   *Mfg. Co.*, 343 F.2d 655, 658 (7th Cir. 1965) ("[A]n estoppel by a licensee to deny the

21   validity of licensor's trademark expires with the license.") While a licensee, PT could

22   not challenge USA's trademark rights. That does not mean they cannot challenge

23   ownership after termination particularly for conduct that is after termination of the

24   license having nothing to do with the license. A trademark license, once terminated,

25   is not a permanent bar to challenges to the trademark on any claim made.

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR          20
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

Finally, the doctrine of licensee estoppel is equitable in nature and not subject to rigid application. Estoppel may not be used to enforce a contract that contravenes public policy.   *Navajo Air, LLC v. Crye Precision, LLC* (S.D.N.Y. 2018) 318 F.Supp.3d 640, 650–651, as amended (Aug. 2, 2018). As discussed above, the restricions violate the law. Equity should not allow USA to evade its jurisdictional requirement of trade mark ownership by estoppel.

**A.   USA is estoped to claim ownership in Sweden's Neo4J's Mark.**

The proper use of licensee estoppel is to estop USA from claiming it owns the Neo4J mark when it is a licensee. The recitals in the License Agreement that USA owns all the intellectual property related to Neo4J, is conclusively presumed true. California Evidence Code §622. (The License Agreement is governed by California law). USA agreed Sweden owns the intellectual property, including marks for Neo4J. (D Fact 140) Under licensee estoppel, USA may not dispute that Sweden owns the Neo4J mark and they may not claim USA is the owner of the Neo4J mark. *Pacific Supply Co-op. v. Farmers Union Central Exchange Inc.* (9th Cir. 1963) 318 F.2d 894, 908.

**X.   False Advertising Claims**

**A.   False Designation Of Origin Claim Is Not Valid As ONgDB Is based on Neo4J.**

To establish a false designation of origin claim, Plaintiff must show: (1) the defendants used a false designation of origin; (2) the use occurred in interstate commerce; (3) that such false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship, or approval of defendants' goods or services by another person; and (4) that plaintiff has been or is likely to be damaged. See 15 U.S.C. § 1125(a).

*Hokto Kinoko Co. v. Concord Farms, Inc.* (C.D. Cal. 2011) 810 F.Supp.2d 1013, 1039, aff'd (9th Cir. 2013) 738 F.3d 1085

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

21

Here there is an issue of fact on the false designation of origin element as ONgDB is a fork of Sweden's open source software licensed under the AGPL. (D Fact 149) The designation of origin is, therefore, not false. USA even admits, the open source version has the same great features as the commercial version (D Fact 145). A jury can certainly determine if the origin is properly stated.

**B.     There are disputed issues of fact on Elements of the False Advertising claims.**

A prima facie case of false advertising under section 43(a) requires the plaintiff to establish:

(1) A false or misleading statement of fact about a product;
(2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers;
(3) The deception is material, in that it is likely to influence the consumer's purchasing decision;
(4) The product is in interstate commerce; and
(5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

*Pizza Hut, Inc. v. Papa John's Intern., Inc.* (5th Cir. 2000) 227 F.3d 489, 495 [citations omitted]

[F]ailure to establish any one" of these five elements is "fatal" to a plaintiff's claim. *Id.* And importantly, [Plaintiff] must be able to point to at least one challenged statement that satisfies all five Lanham Act requirements; as the parties agree, a Lanham Act claimant may not mix and match statements, with some satisfying one Lanham Act element and some satisfying others. *Verisign, Inc. v. XYZ.COM LLC* (4th Cir. 2017) 848 F.3d 292, 299 (Summary Judgment for defendant affirmed where statements were opinions or harmless puffery)

In order to obtain monetary damages or equitable relief in the form of an injunction, "a plaintiff must demonstrate that the commercial advertisement or promotion is either literally false, or that [if the advertisement is not literally false,]

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD                                                    22

1   it is likely to mislead and confuse consumers." [Citations omitted] *Pizza Hut, Inc.,* at

2   495

> 3   Essential to any claim under 15 U.S.C. 1125 section - 43(a) of the
> Lanham Act is a determination of whether the challenged statement is
> 4   one of fact—actionable under  section 43(a)—or one of general
> opinion—not actionable under section 43(a). Bald assertions of
> 5   superiority or general statements of opinion cannot form the basis of
> Lanham Act liability. [Citations omitted] Rather the statements at
> 6   issue must be a "specific and measurable claim, capable of being
> proved false or of being reasonably interpreted as a statement of
> objective fact." [Citations omitted] *Coastal Abstract Serv., Inc. v. First
> 7   Am. Title Ins. Co.,* 173 F.3d 725, 731 (9th Cir.1999); see also American
> Council, 185 F.3d at 614 (stating that "a Lanham Act claim must be
> 8   based upon a statement of fact, not of opinion"). As noted by our court
> in Presidio: "[A] statement of fact is one that (1) admits of being
> 9   adjudged true or false in a way that (2) admits of empirical
> verification." *Presidio,* 784 F.2d at 679; see also *Southland Sod Farms
> 10   v. Stover Seed Co.,* 108 F.3d 1134, 1145 (9th Cir.1997)(stating that in
> order to constitute a statement of fact, a statement must make "a
> 11   specific and measurable advertisement claim of product superiority").

12   *Pizza Hut, Inc. v. Papa John's Intern., Inc.* (5th Cir. 2000) 227 F.3d 489, 495–496

13   **C.     USA cannot show empirically that ONgDB is not a "Drop In"**

14   **replacement for the commercial version.**

15       USA argues that Defendants' description of certain versions of ONgDB as

16   "drop-in replacement" for certain versions of Neo4j EE is false advertising. Given

17   the general nature of the statement, it an opinion. USA makes two arguments in

18   their effort to establish falsity, one technological opinion and one contractual. Both

19   arguments fail.

20       Technologically, USA argues that describing ONgDB as a drop-in

21   replacement is false advertising because, according to USA, ONgDB was not of the

22   same quality and did not include all of the same features as Neo4j EE. That is a

23   misleading matter of opinion which does not satisfy the legal requirements.

24   Defendants made no statements about ONgDB's quality.  Quality has nothing to do

25   with whether a user can share data and queries on different versions of Neo4J

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR       23
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

1   database. Nor did Defendants claim that ONgDB had the exact same features as

2   Neo4j EE.  They just described ONgDB as a "drop-in replacement."  Brad

3   Nussbaum explained what was meant by that description, and how its accuracy was

4   verified, during his deposition:

> I think we provided an explanation of this. Drop-in, I think as everybody
> understands it in development, you know, essentially functions
> equivalently from one version to another. So if you took a Neo4j
> Enterprise version, let's say 3.5.4, the database format that it creates
> would work with ONgDB 3.5.4, so you can essentially write your data,
> and with Neo4j Enterprise, you can use that same data with ONgDB.

Nussbaum Depo., 158:7-14[2]

> Drop-in replacement refers more to compatibility of features, so we were
> able to take a Neo4j 3.5.4 version, create a database and just show that
> it worked with ONgDB at that same version. So I think that's exactly
> what we described, and I think that's exactly what we did.

Nussbaum Depo., 160:9-14.

13          In a truck analogy, different engines will drop in and replace the original

14   engine. The drop in engine will connect to the existing chassis, transmission and

15   other drive components. One engine can be a factory new engine, the other can be a

16   rebuilt or even used engine found on craigslist. The truck will run with any of the

17   drop in engines. USA is arguing that they added wifi and a special muffler to their

18   truck so the engine is not a drop-in replacement. But adding bells and whistles,

19   which not everyone wants, to the truck does not alter the drop in ability of an

20   engine to run the truck. People are free to pay millions of dollars for USA's added

21   availability if they want to. But the truck will drive with either engine. ONgDB is a

22   drop in replacement for the functions required to operate the database. While

---

[2] True and correct copies of the cited pages of the deposition of Brad Nussbaum are attached as Exhibit A to the Declaration of John D. Pernick ("Pernick Decl.") filed herewith.

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

24

1   plaintiffs may attempt to disrupt the ability, defendants have not heard any

2   ONgDB user claim the software is not drop in.

3          Significantly, USA has not presented any evidence that, technologically,

4   ONgDB does not function as a drop-in replacement for Neo4j EE.  None of the

5   statements on which USA's false advertising claims are based either explicitly or

6   implicitly represent that tests or studies were conducted to support the statements.

7   Consequently, USA has the burden of presenting affirmative evidence that

8   Defendants' description of ONgDB as a "drop-in replacement" are false.  See, e.g.,

9   *Castrol, Inc., v. Quaker State Corp.*, 977 F.2d 57, 62-63 (2d Cir. 1992).  And they

10  must prove that falsity with empirical evidence. *Presidio*, at 679. USA has failed to

11  meet that burden.

12         All USA provides is the declaration of Philip Rathle, Neo4j USA's Vice

13  President of Products, who describes the various tests that are performed on USA's

14  commercial software and claims that because of the testing and other work USA

15  performs, he believes that ONgDB is of inferior quality and has an increased

16  potential for instability and compatibility issues.  Rathle Decl., ¶¶ 29-34.  Based on

17  that, Mr. Rathle opines that ONgDB 3.5.9 is not the "exact equivalent in both

18  function and quality as the same version of official Neo4j(r) EE v3.5.9, and this

19  would be true for any other version of ONgDB 3.5.x that Graph Foundation claims

20  to be the equivalent version of Neo4j EE v3.5.x."  Rathle Decl., ¶ 32

21         But Rathle did not actually test a version of ONgDB to determine if the

22  database format created by a version of Neo4j EE would work with the version of

23  ONgDB with the same version number.  Indeed, Rathle did no actual testing of

24  ONgDB at all. This lack of a test is significant. ONgDB is freely available. USA can

25  test both engines to see if they worked. Rathle's lack of statements on testing

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR          25
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

1  available databases implies the tests were made and USA did not like the results so

2  they instead rely on conjecture instead of emperical results.  Defendants no longer

3  have access to the commercial version which is why GFI no longer guarantee they

4  test out. However, there is no evidence that ONgDB is *not* a drop in replacement.

5  Instead of providing a demonstrable test, Rathlehe merely opines that ONgDB is

6  not the "exact equivalent in both function and quality" as Neo4j EE.  But

7  Defendants have never distributed any advertising or other statement claiming that

8  it was. Drop in replacement is simply not "a specific and measurable advertisement

9  claim of product superiority" *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d

10  1134, 1145 (9th Cir.1997). The statement is to general and not actionable.

11          This is in stark contrast to each of the cases cited by USA: *Sun Microsystems,*

12  *Inc. v. Microsoft Corp.*, 999 F. Supp. 1301 (N.D. Cal. 1998), *EFCO Corp. v. Symons*

13  *Corp.,* 219 F.3d 734 (8th Cir. 2000), and *Creative Labs, Inc. v. Cyrix Corp.*, 1997

14  U.S. Dist. LEXIS 14492 (N.D. Cal., May 7, 1997). In each case, the plaintiff actually

15  tested the defendant's product and presented evidence showing that the defendant's

16  statements about its product was false.  Here, USA conducted no testing of ONgDB

17  to determine whether it operated as a drop-in replacement of Neo4j EE.  Instead,

18  USA ask the Court to just accept their assumption that because Neo4j undergoes

19  significant testing and the creators of ONgDB do not have complete information

20  about Neo4j EE, ONgDB could not be a drop-in replacement.  There is no basis for

21  the Court to accept that assumption and for the Court to do so on summary

22  judgment would be entirely improper.

23          Defendants do not contend Sweden's open source and free software is exactly

24  the same as USA's costly version. Defendants say nothing about quality controls.

25  But both database engines for the versions are derived from the same source:

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

26

1   Sweden's Neo4J software. So they are drop in replacements. USA even concedes the

2   two versions have the same features when they compared the open source version to

3   the commercial versions on their website [Community Edition is open source while

4   Enterprise is "commercial"]. Referring to Enterprise USA stated: "The same great

5   features as Community Edition…" (D Fact 145; Beene Dec Ex. 8) Given this

6   admission, there is a dispute whether USA will be able to convince a jury of this.

7       **D.**    **There is no false advertising based on the APGL**

8          Contractually, USA's argument is based on their interpretation of the Neo4J

9   Sweden Software License.  USA is not a party to that agreement. In order to obtain

10  summary judgment based on the interpretation of a contract, the contractual

11  language at issue cannot be susceptible to more than one reasonable interpretation.

12  "Where contractual language is susceptible to more than one reasonable

13  interpretation, summary judgment is ordinarily improper because 'differing views of

14  the intent of the parties will raise genuine issues of material fact.'" *Pardi v.*

15  *KaiserPermanente Hospital, Inc.*, 389 F.3d 840, 848 (9th Cir. 2004) (quoting *San*

16  *Diego Gas & Electric Co. v. Canadian Hunter Mktg Ltd.*, 132 F. 3d 1303, 1307 (9th

17  Cir. 1997).

18         Here, the contractual issue is whether Section 7 of the Neo4J Sweden

19  Software License permits GFI, as the "licensee" to remove the Commons Clause

20  language.  Section 7 states:  "If the Program as you received it, or any part of it,

21  contains a notice stating that it is governed by this License along with a term that

22  is a further restriction, you may remove that term."  To determine what is allowed

23  under Section 7, it is necessary to review the definitions set out in the Neo4J

24  Sweden Software License.

25

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR      27
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

1    First, the Neo4J Sweden Software License defines the phrase "This License"

2 as follows:  "'This License' refers to version 3 of the GNU Affero General Public

3 License."  Neo4J Sweden Software License, Section 0.  Thus, crucially, "This

4 License" is defined as the AGPLv3 license, not the Neo4j Sweden Software License.

5 This alone supports the validity of defendants' reference to the AGPL license.  In

6 other words, in the Neo4J Sweden Software License, the term "This License" means

7 the AGPLv3 license without the Commons Clause.  Neo4j Sweden could have

8 changed this definition when it distributed software under the Neo4J Sweden

9 Software License, but it did not.

10    Second, the Neo4J Sweden Software License defines "you" as the "licensee."

11 Neo4J Sweden Software License, Section 0 ("Each licensee is addressed as 'you'.)  In

12 the First Amended Complaint, Neo4j Sweden specifically alleges that GFI received

13 the Neo4j EE software files at issue as a licensee under the Neo4J Sweden Software

14 License.  First Amended Complaint, ¶ 120.

15    Third, Section 7 of the Neo4J Sweden Software License states:  "If the

16 Program as you received it, or any part of it, contains a notice stating that it is

17 governed by this License along with a term that is a further restriction, you may

18 remove that term."  Neo4J Sweden Software License, Section 7.  Substituting the

19 matching language for the defined terms in this provision, Section 7 of the Neo4J

20 Sweden Software License states:  "If the Program as [GFI] received it, or any part of

21 it, contains a notice stating that it is governed by [the AGPLv3 license] along with a

22 term that is a further restriction, [GFI] may remove that term."

23    The Neo4J Sweden Software License states that the software is "subject to

24 the terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3, with the

25 Commons Clause . . ."  Therefore, the Neo4J Sweden Software License has a notice

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

28

1   stating that the software is governed by the AGPLv3 license plus a further

2   restriction, i.e. the Commons Clause.  Because the Neo4J software, i.e. "the

3   Program", contained a notice stating that it is governed by "this License" (the

4   AGPLv3 license) along with a term that is a further restriction (the Commons

5   Clause), then, under Section 7, GFI as the licensee, i.e. "you", may remove that

6   term. Removal of the Commons Clause is expressly permitted under the terms of

7   the Neo4J Sweden Software License.

8       Importantly, USA does not offer an alternative interpretation of Section 7.

9   And there is no interpretation that would not conflict with the express terms of the

10   Neo4J Sweden Software License.  They do not explain how, if "the License" is

11   defined as the AGPLv3 license, a licensee would not be permitted to remove a

12   further restriction such as the Commons Clause from the Neo4J Sweden Software

13   License.

14       USA may argue that "This License" should be read as "the Neo4J Sweden

15   Software License" instead of being read as it is defined.  But that is not the

16   language of the Neo4J Sweden Software License.  Indeed, in its communications

17   with Defendants, the Free Software Foundation, the copyright holder for the

18   AGPLv3 license, confirmed the interpretation that a licensee may remove further

19   restrictions when they are added to an AGPLv3 license.  "All other non-permissive

20   additional terms are considered "further restrictions" within the meaning of section

21   10. If the Program as you received it, or any part of it, contains a notice stating that

22   it is governed by this License along with a term that is a further restriction, you

23   may remove that term."  Pernick Decl., Exh. B.

24

25

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD          29

1   Because there is a reasonable interpretation of the Neo4J Sweden Software
2   License that permits GFI, as the "licensee," to remove the Commons Clause term,
3   summary judgment based on USA's offered interpretation would be improper.

4   Therefore, because the interpretation of Section 7, and GFI's right to remove
5   the Commons Clause from the Neo4J Sweden Software License, cannot be decided
6   on summary judgment, then USA cannot establish, on summary judgment, that
7   Defendants' statements regarding ONgDB being a free and open source fork of
8   Neo4J Enterprise were false.

9   USA contends the Sweden was free to control licensing conditions citing
10  *Apple Inc. v. Psystar Corp.,* 658 F.3d 1150, 1159 (9th Cir. 2011) *Jacobsen v. Katzer*,
11  535 F.3d 1373, 1381 (Fed. Cir. 2008). While the statement is true,  Sweden chose to
12  control is license under the AGPL license model. And, the AGPL, by its terms,
13  allows a licensee to remove restrictive terms. If Sweden did not want the Common
14  Clause removed, they could have used a different license form. They chose to use
15  the well-known AGPL license form and USA cannot complain of the impact of the
16  terms Sweden choose.

17  ### E.     The Material Purchasing Issue Is The Price

18  If the statement is shown to be misleading, the plaintiff must also introduce
19  evidence of the statement's impact on consumers, referred to as materiality.
20  *American Council of Certified Podiatric Physicians and Surgeons v. American Bd. of*
21  *Podiatric Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir.1999). Defendants made no false
22  claims based on pricing. Yet USA concedes customers chose ONgDB based on
23  pricing **alone**. Dkt. No. 98, p. 2:12-13; p. 32:6-10. They must admit this; its obvious.
24  Information Analysis Incorporated's GSA price list has a $500,000 bid for a Neo4J term license.
25  (Beene Dec. Exhibit 5, p.1.) Since the government has no concern over the common clause-as

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT                                                              30
CASE NO. 5:18-cv-7182 EJD

1  they do not sell the software- they can decide to pay $500,000 for a term license or get a

2  unlimited perpetual right to use a free open source fork. There is no evidence the

3  purchasing decisions were based on representation about the Drop in capability or

4  the license terms. There is likewise no evidence that purchaser would have paid for

5  a commercial Neo4J version of the software given the availability of free ONgDB or

6  other forks of Neo4J. If purchasers decide to pay money for database software, they

7  can then look at alternative commercial options. As there is no evidence the

8  representations by defendants were material, they are not actionable.

9      **F.      Use of Content on the Github Site is Permitted**

10  USA complains of use of its documentation. But any user of open source software

11  from Sweden's Neo4J GitHub repository are allowed to use all content on the site.

12  This is permitted under the GitHub license. (D Fact 147.; Beene Dec. Ex. 9) Sweden

13  elected to use a free GitHub repository to distribute the open source version of

14  Neo4J. Sweden's election to use a free repository comes with obligations to allow

15  users to use all content on that site. The content USA complains of, such a

16  documentation,  is linked on the GitHub site and by the terms of Sweden's

17  agreement with Github, all users have the right to use the content. As there is a

18  dispute of fact whether defendants may use the content Sweden posted on its

19  GitHub repository, USA has no right to complain of such use or block it.

20  **XI.    Permanent Injunction**

21      A plaintiff seeking a preliminary injunction must establish that he is likely to

22  succeed on the merits, that he is likely to suffer irreparable harm in the absence of

23  preliminary relief, that the balance of equities tips in his favor, and that an

24  injunction is in the public interest. [Citations omitted] *Winter v. Natural Resources*

25  *Defense Council, Inc.* (2008) 555 U.S. 7, 20. The difference between a preliminary

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR          31
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

1 and permanent injunction is likelihood of success is not an issue on a permanent

2 injunction. While USA seeks a permanent injunction, they cannot until phase 2 is

3 completed.

4      USA has requested a broad permanent injunction with 25 requests including

5 one with 8 subparts. (Dkt. No. 98-4). First, USA's request for permanent injunction

6 is premature until all affirmative defenses and claim are considered in phase 2.

7 They have yet to succeed on all claims. Second, the request is overbroad seeking an

8 injunction far beyond USA's licensed rights in the Neo4J trademark and the false

9 advertising claims. Essentially, USA wants to shut defendants down with when it

10 does not own the trademark and there is no false advertising. An injunction is never

11 awarded as a matter of right. *Winter*, at 24.  The court should pay particular regard

12 for the public consequences. *Winter,* at 24.

13      USA does not want the public or the US government to know that you can get

14 the same software for free so they can force people to pay them for the software.

15 They want to keep defendants from tell consumers they can use free software.

16 Under the AGPL, licensees are allowed to make copies and make derivatives of

17 Neo4J. They have that right under the GitHub agreement too. Under the fair use

18 standards, people can use the Neo4J name to identify the software, they can explain

19 that USA is selling what you can get for free. They can explain that the open source

20 version is supported to combat USA's false statements they are not. USA can tell

21 people the AGPL does not allow restrictions which by its terms may be removed.

22 USA can throw over a thousand of pages at defendants, but these fundamental

23 rights may not be stopped.

24      USA does not have the right on the merits to an injunction, and given the

25 public consequences no injunction should issue. In *Winter*, the District Court issued

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

32

1    an injunction which was affirmed by the 9th Circuit. The injunction was vacated

2    because the consideration of the public interest was not taken into account. USA

3    seeks an injunction to prevent defendants from telling the public there is a free

4    resource for Neo4J software. The USA government should not waste taxpayer

5    dollars to use software that is available for free. It is against the public benefit to

6    remove the free version out of the consumers decision by silencing defendants with

7    an injunction.

8       **A.      Nominative Use Injunctions are Limited.**

9          An injunction may only cover the specific harm alleged. *Toyota*, at 1172. USA

10   has not shown that any of defendants' use is not nominative. USA may not prevent

11   free speech with an overbroad trademark injunction. In *Toyota*, the district court

12   enjoined the defendant from using "any ... domain name, service mark, trademark,

13   trade name, meta tag or other commercial indication of origin that includes the

14   mark LEXUS." This overbroad injunction was vacated in *Toyota*. The overbroad

15   injunction vacated in *Toyota* is only part of the demand in USA's overreaching,

16   overboard, vague and improper demand in USA's [Proposed] Permanent Injunction

17   against Defendants (Dkt. No. 98-4). For these reasons, the injunction should be

18   denied.

19   **XII.   Cross Motion for Summary Judgment**

20      **A.      Trademark Infringement Claims**

21          To prevail on its Lanham Act trademark claim, a plaintiff must prove they

22   have an ownership interest in the mark and defendant infringed. *Rearden LLC v.*

23   *Rearden Commerce, Inc.* (9th Cir. 2012) 683 F.3d 1190, 1202–1203. The simple fact

24   is USA does not own the Neo4J mark. As USA does not own the Neo4J trademark,

25   it cannot prove the first element of its Trademark infringement claims against

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR          33
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

defendants. Alternatively, as discussed above, defendants fairly used the Neo4J mark nominatively and such use is not infringing.  As USA cannot prove at least one of the two elements of its trademark infringement claim, summary judgment should be granted in defendants' favor.

### B.     False Advertising Claims

An element of the false advertising claims is that the deception is material, in that it is likely to influence the consumer's purchasing decision. All the hodgepodge claims USA makes are not material to a database consumers purchasing decision. USA concedes consumers decide to adopt free open source software over commercial software because of price **alone**. Dkt. No. 98, p. 2:12-13; p. 32:6-10. Consumers of sophisticated databases do not read a website and decide to save $500,000 based on what the website says. There is no evidence they do. This point is obvious. Databases are complex, require sophisticated operations to load, migrate data, create queries and analysis results. Consumers can download ONgDB for free and decide if it fits there needs. They can evaluate USA's commercial Neo4J and see if its worth the money. As that is the buying process, with price the material difference, USA has no material facts to support the required element of a material deception. Accordingly, summary judgment should be granted against USA's False Advertising and UCL claims against defendants in both cases.

Dated: January 15, 2021

_____/s/ Adron G. Beene_____
Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney At Law
Attorney for Defendants
PURETHINK LLC,
IGOV INC.,
and JOHN MARK SUHY

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

34

1

2 Dated:  January 15, 2021                    BERGESON, LLP

3                                             By:____/s/ John D. Pernick_____
                                                    John D. Pernick
4                                             Attorneys for Defendant
                                              GRAPH FOUNDATION, INC.
5

6

7                              **Filer's Attestation**

8  I, Adron G. Beene, am the ECF user whose credentials were utilized in the electronic filing of
   this document. In accordance with N.D. Cal. Civil Local Rule 5-1(i)(3), I hereby attest that all
9  signatories hereto concur in this filing.
   Dated: January 15, 2021
10

11        _____*/s/ Adron G. Beene*_____
          Adron W. Beene SB# 129040
12

13

14

15

16

17

18

19

20

21

22

23

24

25

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR      35
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

**EXHIBIT A**

**DEFENDANTS' RESPONSE TO NEO4J INC.'S CONSOLIDATED SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendants' object to Neo4J Inc's Separate Statement of Undisputed Material Facts as it violates this Court's Standing Order for Civil Cases dated May 3, 2019, Section V. B, as it is 20 pages long which is more than the 15-page limit and is not a short and concise statement of material facts. Furthermore, there is no attestation that: "I attest that the evidence cited herein fairly and accurately supports or disputes the facts asserted." As required under the Standing Order. And they could not so attest as, for example, many of the excerpts in Mr. Nussbaum's deposition cited are not included in Exhibit 31 to Mr. Ratinoff's 1198-page declaration.

Instead, the Separate Statement it is used to burden defendants and this Court with many immaterial facts in violation of the Standing Order and FRCP Rule 1. Defendants request Neo4J Inc.'s Separate Statement be stricken for violation of the Standing Order and the motion be denied.

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Claim 1: Trademark Infringement Against the PT Defendants and Their Nominative Fair Use Defense** | | |
| 1. Plaintiff Neo4j Inc. ("Neo4j USA") owns a protectable trademark | <u>Fact 1</u>: Neo4j USA is the owner of U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j® Mark"). Declaration of Jeffrey M. Ratinoff, ("Ratinoff Decl."), Exh. 1. | **DISPUTED:** Neo4j is not the owner, assignee, or exclusive licensee of the Neo4j mark, and therefore its ownership of U.S. Trademark Registration No. 4,784,280 is disputed. Declaration of Adron G. Beene ("Beene Dec."), Ex. 1 at §2.1.1., 2 and 3. |
| 2. The PT Defendants impermissibly used the Neo4j® Mark after Neo4j USA terminated the Partner Agreement | <u>Fact 2</u>: On September 30, 2014, Purethink and Neo4j USA entered into the Neo4j Solution Partner Agreement ("Partner Agreement"). Ratinoff Decl., Exh. 4. | **DISPUTED**: The PT defendants use of the Neo4J trademark is nominative to identify NEO4J as a company and the Neo4J software and for comparative advertisement. Declaration of John Mark Suhy ("Suhy Dec.") ¶2, |
| | <u>Fact 3</u>: Under the Partner Agreement, PureThink was granted a non-exclusive, non-transferable limited license to, *inter alia*, use the Neo4j® Mark solely to market and resell commercial licenses to Neo4j® Enterprise Edition ("Neo4j® EE") and related support services in exchange for shared revenue for the licenses that it resold. *Id.*, Exh. 4 at § 4.1; Exh. 3 at 60:10-61:17, 67:25-69:11. | **UNDISPUTED** |
| | <u>Fact 4</u>: PureThink further agreed to the terms of the limited license under the Partner Agreement to use the Neo4j® Mark in accordance | **UNDISPUTED** |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | with Neo4j USA's "then-current trademark usage guidelines." *Id.*, Exh. 4 at § 4.1. | |
| | <u>Fact 5</u>: The Partner Agreement was subject to a 1-year term, and would automatically renew at additional 1-year periods subject to the notice and termination provision therein, thereby incorporating whatever was the operative trademark guidelines at that time. Ratinoff Decl., Exh. 4 at §7.1; Exh. 3 at 67:18-24. As a result of the renewal provision, PureThink became bound by the October 13, 2015 version of Neo4j USA's trademark guidelines as of September 30, 2016. *See* Rathle Decl., ¶ 16, Exh. 5. | **UNDISPUTED** |
| | <u>Fact 6</u>: All rights and licenses to Neo4j® Software and the Neo4j® Mark would terminate upon the expiration or termination, and upon such an event, PureThink agreed to "cease using any trademarks, service marks and other designations of Plaintiffs." Ratinoff Decl., Exh. 4 at §7.3. | **UNDISPUTED** |
| | <u>Fact 7</u>: On July 11, 2017, Neo4j terminated the Partner Agreement thereby requiring PureThink to "cease using [Neo4j's] trademarks, service marks, and other designations…and remove from PureThink's website(s) marketing materials, [Neo4j's] trademarks and tradenames, including, without limitation, Neo4j" as required by Agreement. Ratinoff Decl., Exh. 12. | **DISPUTED**: Moving Party's reference to [Neo4j] is vague and misleading as the Partner Agreement provides "will cease using any trademarks, service marks and other designations of the *other party*" emphasis added. Ratinoff Decl., Exh. 4 at §7.3. Neo4J USA is not the owner, assignee or exclusively licensee of the mark and lacks standing to assert the mark. Beene Dec., Ex. 1. |
| | <u>Fact 8</u>: PureThink continued to use the Neo4j® Mark without Neo4j USA's authorization to send customers to iGov to obtain "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise." *See* Ratinoff Decl., Exh. 14. It also promoted "Neo4j Enterprise" as genuine Neo4j® EE despite being compiled by Suhy. *See id.*, Exh. 16. | **DISPUTED**: The PureThink references are to Sweden's open source versions of Neo4J and proper nominative use of Sweden's mark. Suhy Dec. ¶3 |
| | <u>Fact 9</u>: Under the Partner Agreement, PureThink agreed that all contractual restrictions would apply to any successor-in-interest, assign, and acquirer of substantially all of its assets. Ratinoff Decl., Exh. 4 at § 10. | **UNDISPUTED** |
| | | **Additional Facts** |
| | | Under the Partner Agreement, assignment of the agreement, outside of a successor in interest required |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | consent of Neo4J USA. Ratinoff Decl., Exh. 4 at §7.3. No evidence of consent to the assignment exists. Suhy Dec. ¶61. |
| | **Fact 10:** Suhy and PureThink formed iGov on or about June 23, 2017 to circumvent the restrictions in Section 4.3.1 of the Partner Agreement. Ratinoff Decl., Exhs. 10-11, 14-15, 17-19; PT Dkt. No. 22, ¶¶ 18-19; *see also* Exh. 3 at 46:12-16, PT Dkt. No. 72 at 8:22-25, 9:15-23. | **DISPUTED:** iGov was formed as a separate entity by Suhy for several reasons. Suhy Dec. ¶4., Beene Dec. Ex. 4 at 45:4-47:5. The restrictions are for purposes of non-competition and void. Suhy Dec. ¶4. |
| | **Fact 11:** Suhy is sole owner and employee of PureThink and iGov, used the same website template, and initially used the same offices and support telephone number for both entities. Ratinoff, Decl, Exh. 3 at 21:23-22:22, 23:16-18, 37:3-38:16, 39:6-40:23, 47:20-49:8, 52:9-11. | **DISPUTED** - PureThink and iGov used the same office address for a mailing address until iGov could setup a new office.  iGov did not "use" the office address other than for correspondence.<br><br>The support telephone number is a 3rd party number that neither PureThink or iGov owned.  The website template used was a commercial template. PureThink and iGov purchased the same template because Suhy was familiar with it. iGov did not use PT's computers.  Suhy Dec. ¶5. |
| | **Fact 12:** Suhy used both his iGov and PureThink email accounts to solicit customers that he had previously contacted under the Partner Agreement.  Ratinoff, Decl., Exhs. 19, 25, 29, 45-46, 54. | **DISPUTED:**  All new business development was done using iGov Inc emails (Exhibit 19, 46, and 54). Exhibit 25, 29 were discussions and not solicitations.)<br>The only entity who was a customer listed in this fact was Sandia National Laboratories.  They were a customer of PureThink and the communication was through PureThink.  (See Ratinoff. Decl. Exhibit 45). The solicitations were for use of Sweden's open source Neo4J. Suhy Dec. ¶6. |
| | **Fact 13:** iGov took over PureThink's business relationship with the IRS. Ratinoff, Decl, Exh. 3 at 53:4-54:25; Exh. 127. | **DISPUTED**: USA interfered with PT's potential business with the IRS. iGov did not take over PT's potential business relationship with the IRS. Suhy Dec. ¶7., Exhibit 1 |
| | **Fact 14:** The PureThink Defendants ("PT Defendants") claimed to be "the developer of the retired Neo4j Government Edition" in close connection with touting their prior relationship with Neo4j USA. Ratinoff Decl., Exhs. 15-19, 21, 62-64. | **DISPUTED:**  Suhy and PureThink did develop the Neo4j Government Edition. the PT Defendants do not "tout" PT's prior relationship; they said it was terminated.   Suhy Dec. ¶8 |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | **Fact 15:** iGov used the Neo4j® Mark on its website without authorization to promote "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise," and related support services. *See* Ratinoff Decl., Exhs. 15-18, 21, 62-64. | **DISPUTED:** A nominative use does not require authorization. iGov references Sweden's Neo4J mark to reference Sweden's open source software called Neo4J to describe the software and uses USA's company name and products to identify them in comparative advertisement. Suhy Dec. ¶9 |
| | **Fact 16:** iGov's other unauthorized uses of the Neo4j® Mark on its website included: (1) using "https://igovsol.com/**neo4j**.html" as a URL to promote "Government Development Packages for **Neo4j**"; (2) prominently displaying a "Request Procurement Document Package" link with "**mailto:neo4j@igovsol.com**" embedded that creates an email addressed thereto upon activation; (3) encouraging consumers to obtain more information by sending an email to "**neo4j@igovsol.com**;" (4) using "Government Packages for Neo4j" and "Neo4j Enterprise" to describe iGov's patchwork binaries of Neo4J® EE; and (5) touting PT Defendants' prior relationship with Neo4j USA and to be "the developer of the retired Neo4j Government Edition." Ratinoff Decl., Exhs. 15-18, 21, 62-64, 67-69. | **DISPUTED:** Objection this is not a fact; it is argument. A nomantive use does not require authorization. USA does not own the trademark. D Fact . Beene Dec Exhibit 1,2,3. (4) "Government Packages for Neo4j" and "Neo4j Enterprise" were used to describe the government packages iGov provided support for around the free and open source neo4j database. Neo4j® Mark was never used.<br>The email address is for Sweden's open source Neo4j for inquires for that product. The email address was discontinued in the hopes USA would discontinue this litigation.<br>"Neo4j Enterprise" is needed to distinguish between the open source "Neo4j Community" and "Neo4j Enterprise" distributions, both of which are built when compiling the Neo4j source code.<br>iGov does not "tout" PT's prior relationship; they said it was terminated. Suhy Dec. ¶10 |
| | **Fact 17:** iGov continues to offer "Neo4j enterprise open source licensed distributions" and interchangeability referring to "ONgDB Enterprise" and "Neo4j Enterprise" on its website. Ratinoff Decl., Exhs. 62-70 (highlighted in yellow). | **DISPUTED:** iGov offers support for both Neo4j Enterprise open source licensed distributions, and ONgDB Enterprise open source distributions. Neo4j Enterprise distributions below 3.5 are still in use and available to the public.<br><br>iGov no longer offers distributions from it's website and only recommends ONgDB Enterprise |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | distributions. iGov links to the GraphFoundation download page. Suhy Dec. ¶11 |
| 3. The PT Defendants used the Neo4j® Mark without Neo4j USA's authorization to promote ONgDB | **Fact 18:** After Graph Foundation ("GFI") released ONgDB in July 2018, iGov continued to use "https://igovsol.com/neo4j.html" as a URL address to promote ONgDB until it deactivated that page sometime after July 27, 2020. Ratinoff Decl., Exhs. 62-65; Exh. 13 at RFA No. 5. While iGov replaced this url with "https://igovsol.com/graph.html," the contents of the page remained the same. *Compare id.*, Exh. 65 *and* Exh. 66. | **UNDISPUTED** |
| | **Fact 19:** iGov used the neo4j@igovsol.com email address on its "neo4j.html" page (*id.*, Exhs. 62-65) and "downloads.html" page (*id.*, Exhs. 67-69) as means for consumers to inquire about ONgDB until sometime in July 2020. Ratinoff Decl., Exh. 13 at RFA Nos. 7-11. | **DISPUTED:** iGov used neo4j@igovsol.com and neo4j.html as a way to inquire about iGov support services and support for the neo4j open source database. 'neo4j' is Sweden's Github repository name for the official Sweden open source Neo4j repository. It was not just a means for consumers to inquire about ONgDB but of the services and support around open source neo4j and ongdb open source license support. Suhy Dec. ¶12 |
| | **Fact 20:** GFI used a "Download Neo4j Enterprise" hyperlink on its "downloads" page to redirect consumers to download links for ONgDB until July 27, 2020. Ratinoff Decl., Exhs. 66-68 (highlighted in red), Exh. 13 at RFA Nos. 10, 14. | **UNDISPUTED** |
| | **Fact 21:** iGov continues to promote "ONgDB Enterprise," "Neo4j Enterprise" and "Neo4j Enterprise Edition" versions 3.5.x as open source Neo4j® EE that can be used for free under the AGPL. Ratinoff Decl., Exhs. 62-74. | **DISPUTED:** Neo4j Enterprise and ONgDB Enterprise are open source and free to use under the open source AGPL license.<br><br>After versions 3.4.x – the term Neo4j Enterprise Edition was not applicable as Neo4j Inc stopped contributing to the enterprise code.<br><br>iGov does not promote Neo4j Enterprise Edition 3.5.x as being open source.<br><br>Many of the exhibits are showing the same page over and over from different snapshot dates but with |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | matching content giving the illusion that there were more pages than existed.<br><br>ONgDB 3.5.5 is a drop in replacement for Neo4j 3.5.5 (Community and Enterprise commercial.)<br><br>After reading this - iGov realizes that the next line needs to have the grammar cleaned up to say: "**The** AGPLv3 Open Source License, **has** no limitations on causal cluster instances, cores or production usage"<br><br>Suhy Dec. ¶13 |
| | **Fact 22:** iGov operated www.graphstack.io to further promote ONgDB using the Neo4j® Mark, and that "iGov Inc offers production support packages for Neo4j / ONgDB Enterprise open source distributions for US government agencies." Ratinoff Decl., Exh. 75. | **DISPUTED:** GraphStack is a graph development stack aimed at building out large scale AI and graph solutions. GraphStack is to promote iGov software packages and solution development, not specifically Neo4j. Both Neo4j and ONgDB will drop into GraphStack – so using the names is important to explain that GraphStack will work with both. Suhy Dec. ¶14 |
| | **Fact 23:** The GraphStack website used hyperlinks to redirect consumers to Neo4j USA's official release notes and "What's New" page in conjunction with encouraging consumers to download ONgDB as an alleged "[d]rop in replacement for Neo4j Core and Enterprise 3.5.3." Ratinoff Decl., Exh. 75; Exh. 13 [RFA Nos. 42-43]. | **UNDISPUTED** |
| 4. The PT Defendants knew their uses of the Neo4j® Mark were unauthorized and violated Neo4j USA's Trademark Guidelines | **Fact 24:** The trademark guidelines the PT Defendants had agreed to be bound by in the Partner Agreement prohibited the use of the Neo4j® Mark: (1) with anything other than "the software in the exact binary form that it is distributed by [Neo4j], without modification of any kind;" and (2) "in a web page title, titletag, metatag, or other manner with the intent or the likely effect of influencing search engine rankings or results listings." Ratinoff Decl., Exh. 4 at § 4.1; Rathle Decl., ¶¶ 15-16, Exh. 5; *see also* Exh. 4 at §7.1; Exh. 3 at 67:18-24 | **DISPUTED:** The Partner Agreement terminated on July 11, 2017 (Fact 7 above). Suhy and iGov are not parties to the Partner agreement. The PT defendants have not used USA's disputed trademark to market, sell or service and USA products. All marketing and services are limited to Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. Suhy Dec. ¶15 |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| 5. The PT Defendants did not use the Neo4j® Mark to describe Plaintiffs' products | Fact 25: The PT Defendants used the Neo4j® Mark to promote their "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise" rather than comparatively describe Plaintiffs' Neo4j® EE. Ratinoff Decl., Exhs. 14-18, 21, 62-65. | DISPUTED: PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16

All exhibits referenced except for exhibit 14  (15, 16, 17, 18, 21, 62-65 ) are all for iGov Inc sites are iGov sites, but have been incorrectly referenced in this fact as being PT Defendants. Suhy Dec. ¶17 |
| | Fact 26: The PT Defendants often used the Neo4® Mark to promote ONgDB instead of to comparatively describe Plaintiffs' Neo4j® EE. Ratinoff Decl., Exhs. 62-74; Exh. 13 [RFA Nos. 4-11, 14]. | DISPUTED: PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16 |
| | Fact 27: The PT Defendants used the Neo4j® Mark on iGov's website as (1) a URL address for a page promoting their "Neo4j Enterprise" packages and ONgDB; (2) an email address for customers to obtain more information about their "Neo4j Enterprise" packages while referring to ONgDB; and (3) a hyperlink to redirect consumers to download ONgDB. Ratinoff Decl., Exhs. 14-18, 62-65, 67-69; Exh. 13 [RFA Nos. 4-11, 14, 33-34]. | DISPUTED:  PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement.  Suhy Dec. 16 |
| 6. Defendant's product was readily identifiable without use of plaintiffs' trademark | Fact 28: Rather than naming their version of Neo4j® EE something else without using the Neo4j® Mark, the PT Defendants used the mark to name and promote their "Neo4j Enterprise" packages and while referring to ONgDB, as well as using the Neo4j® Mark to offer related | DISPUTED: PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | support services for ONgDB.   Ratinoff Decl., Exhs. 14-18, 62-65, 67-69; Exh. 13 [RFA Nos. 4-11, 14, 33-34]. | software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16

When Sweden's  Neo4j open source code is compiled from the official Sweden Neo4j Github repository - it creates 2 distributions called "Neo4j Community" and "Neo4j Enterprise".  Enterprise is a standard term for software used for business as in an "Enterprise" is a generic identifier.  Suhy Dec. ¶18 |
| | Fact 29: Rather than independently promoting ONgDB as a graph database software without use of Neo4j® Mark, the PT Defendants used the mark to promote ONgDB and related support services for ONgDB.  Ratinoff Decl., Exhs. 62-65, 67-74; Exh. 13 [RFA Nos. 4-11, 14]. | DISPUTED:   Objection this is not a fact its argument.  ONgDB is a fork of Sweden's open source Neo4j and nominatively identified as such. Suhy Dec. ¶19 |
| 7. The PT Defendants prominently used the Neo4j® Mark beyond what was reasonably necessary | Fact 30: The PT Defendants extensively used the Neo4j® Mark (without proper trademark usage and notices) on their website, and in direct solicitations beyond describing "Neo4j Enterprise" packages and ONgDB as a forks of Neo4j® EE.  Ratinoff Decl., Exhs. 14-18, 24-26, 42-47, 62-65, 67-74; Exh. 13 [RFA Nos. 4-11, 14, 33-34]. | DISPUTED:  PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16 |
| 8. The PT Defendant's use of the Neo4j® Mark suggested sponsorship or endorsement by Neo4j USA | Fact 31:    The PT Defendants claimed that (a) "By default, all Government Packages for Neo4j now comes with Neo4j Enterprise included under it's open source license!" [Ratinoff Decl., Exhs 14-15]; (b) "The packages on this page are compiled by iGov Inc using the official  Neo4j  source  code  repositories  located  at https://github.com/neo4j" [id., Exh. 16]; (c) "US Federal Government Packages for Neo4j Solutions" [id., Exh. 17]; (d) "Government Development Packages for Neo4j" [id.]; (5) "iGov Inc is now the only US Federal contractor providing Neo4j Enterprise binaries packaged with it's [sic] free Open Source license!" [id., Exh. 18]; (e) "Get the open source licensed Neo4j Enterprise distributions we package for our government customers" [id., Exh. 21]; (f) "We compile and packaged the open source licenced [sic] distributions from the same official Neo4j | DISPUTED Objection this fact does not suggest sponsorship or endorsement by Neo4j USA. USA claim is misleading. PT and iGov websites, taken as a whole do not suggest sponsorship or endorsement by USA. PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶20

All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Github Repositories as Neo4j Inc uses for their paid commercial licensed builds" [*id.*]; (g) "I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. If you don't know about Neo4j - here is their website: http://neo4j.com" [*id.*, Exh. 26]. *See also id.*, Exhs. 19-20, 62-66. | GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16<br><br>The statements provided on the websites that PT "has ceased their partnership with Neo Technology" Ratinoff Decl. Exh. 14, that PT "has ceased their partnership with Neo4j Inc." *Id.* Exhs. 15, 17, 19, certainly reflects a total lack of sponsorship or endorsement. Suhy Dec. ¶21 |
| | <u>Fact 32</u>:  The PT Defendants also claimed on iGov's website that (a) "We only focus on only supporting 100% free and open source ONGDB Enterprise & Neo4j Enterprise open source licensed distributions." [Ratinoff Decl., Exh. 66]; (b) "ONgDB Enterprise is a drop In replacement for Neo4j Enterprise commercial packages downloaded from Neo4j.com" [*id.*]; (c) "The distributions we package for the federal government and community as a whole are drop in replacements for Neo4j Enterprise commercial packages you download from neo4j.com" [*id.*]; and (d) "ONgDB (AKA ONgDB Enterprise) 3.5.11 is Neo4j 3.5.11 Core + the enterprise features Neo4j Inc removed from the code base as of v3.5.  All ONgDB and Neo4j Enterprise AGPL distributions can be used in production, in closed source projects, and with no limitations on # of cores or causal cluster instances." [*id.*, Exh. 74]. *See also, id.* at Exhs. 62-65, 71-73. | **DISPUTED:** Objection this fact does not suggest sponsorship or endorsement by Neo4J USA. USA claim is misleading. PT and iGov websites, taken as a whole do not suggest sponsorship or endorsement by USA.  Suhy does not have a website. PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶20<br><br>All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16<br><br>The statements provided on the websites that PT "has ceased their partnership with Neo Technology" Ratinoff Decl. Exh. 14, that PT "has ceased their partnership with Neo4j Inc." *Id.* Exhs. 15, 17, 19, certainly reflects a total lack of sponsorship or endorsement. Suhy Dec. ¶21 |
| | <u>Fact 33</u>:  The PT Defendants solicited customers about ONgDB stating that (a) "I can explain why the foundation was created and how we package Neo4j Enterprise (We call ONgDB) distributions that are being adopted at IRS…" [Ratinoff Decl., Exh. 24]; (b) "the Graph Foundation was setup to ensure Neo4j/ONgDB remains free and open.  It is Neo4j | **DISPUTED:** Objection this fact does not suggest sponsorship or endorsement by Neo4J USA. USA claim is misleading. PT and iGov websites, taken as a whole do not suggest sponsorship or endorsement |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Core + Enterprise feature set added back in, so it is drop in replacement for a Neo instance of the same version. (Ex: 3.5.5)" [*id.*, Exh. 44]; (c) "ONgDB (Open Native Graph Database): Neo4j Enterprise OSS distribution downloads 3.5.8 will be up next week" and "ONgDB 3.5.8 is a drop-in replacement for Neo4j Enterprise 3.5.8" [*id.*, Exh. 46]; (d) "We compile Neo4j branded distributions for agencies who added Neo4j branded distributions instead of ONgDB branded distributions to their white lists. We have all versions of the Neo4j branded distributions up to 3.5 available" [*id.*,]; and (e) "Neo4j Enterprise open source distribution licenses and basic support. Aka: ONGDB" [*id.*, Exhs. 55, 131]. *See also, id.* Exhs. 43, 47, 54. | by USA. Suhy does not have a website. PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶20<br><br>All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16<br><br>The statements provided on the websites that PT "has ceased their partnership with Neo Technology" Ratinoff Decl. Exh. 14, that PT "has ceased their partnership with Neo4j Inc." *Id.* Exhs. 15, 17, 19, certainly reflects a total lack of sponsorship or endorsement. Suhy Dec. ¶21 |
| | **Fact 34:** In its promotion of ONgDB software, iGov used hyperlinks on its website to redirect consumers to Neo4j USA's official release notes (https://neo4j.com/release-notes/neo4j-3-5-5/) and "What's New" page (https://neo4j.com/whats-new-in-neo4j/) until it removed those references sometime in July 2020. *See* Ratinoff, Exhs. 67-69 (highlighted in blue). | **DISPUTED:** Because ONgDB is a fork of Neo4j which the core code is unmodified, the release notes and whats new page are relevant and provide important information. Suhy Dec. ¶22<br><br>Objection this fact does not suggest sponsorship or endorsement by Neo4J USA. USA claim is misleading. PT and iGov websites, taken as a whole do not suggest sponsorship or endorsement by USA. Suhy does not have a website. PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶20<br><br>All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | to USA and its products are for comparative advertisement. Suhy Dec. ¶16<br><br>The statements provided on the websites that PT "has ceased their partnership with Neo Technology" Ratinoff Decl. Exh. 14, that PT "has ceased their partnership with Neo4j Inc." *Id.* Exhs. 15, 17, 19, certainly reflects a total lack of sponsorship or endorsement. Suhy Dec. ¶21<br><br>The Sweden GitHub repository for open source Neo4J provides content including USA's documentation. Under the GitHub Terms of Services, all users may use all content. Referring licensees to such documentation is permissive. Nevertheless, when Neo4j Inc complained - the links were removed. Suhy Dec. ¶23 |
| 8. The PT Defendant's use of the Neo4j® Mark caused actual consumer confusion | **Fact 35:** The PT Defendant's use of the Neo4j® Mark to promote ONgDB resulted in customers choosing ONgDB and encountering compatibility issues. Ratinoff Decl., Exh. 115-116; Exh 31 at 230:12-233:10; Exh. 3 at 207:12-209:3. | **DISPUTED:** Objection, the evidence is hearsay and there is no showing the use of the Name Neo4J caused consumer confusion. Consumers choose ONgDB because of price. This fact is conceded by Plaintiffs. Dkt. 98, p. 2:12-13; p. 32:6-10<br><br>PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶24<br><br>All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16<br><br>Exhibit 115: Shows an anonymous user named "stephanie" asking about trying to use ONgDB with |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Neo4j Desktop, it does not mention a specific version or anything more.  There is no way of knowing if there was a "compatibility" issue, in fact the issue could have been caused because of an incorrect version number and could have occurred with Neo4j Enterprise distributions packaged by Neo4j.  Furthermore, USA responds and in no way explains or tells the user that ONgDB is not even provided by them.  The omissions in Neo4j's response would actually cause confusion because they are not saying anything about ONgDB being a 3rd party product. The confusion is caused by USA and Sweden's dual channel marketing of commercial and open source software through two different companies with the same name.  Exhibit 116 is simply forwarding this post to Brad Nussbaum.  Suhy Dec. ¶25 |
| | Fact 36: Defendants' interchangeable use of "Neo4j Enterprise" and "ONgDB" in marketing ONgDB misleads consumers into mistakenly believing that ONgDB and Neo4j® EE were one and the same. *See, e.g.,* Exhs. 35, 40, 42-44, 46, 53, 55, 76, 100, 130-131, 134-135. | **DISPUTED:**  Defendants only used "Neo4j Enterprise" and "ONgDB" in descriptive manners. Furthermore defendants focused on educating consumers, not misleading them.  Specific versions of Neo4j and ONgDB had no difference in source code before enterprise source was closed.  Suhy Dec. ¶25

Even for those distributions, defendants made all the facts clear and never misled consumers. The inference drawn is not supported by the evidence: **Exhibit 35:** shows no confusion or misleading of customers.   The user is asking a question on the ongdb github issue list and the content does not lead to any confusion.
 **Exhibit 40:**  Exhibit 40 clearly shows that there is no confusion as the user was asking about compiling the binaries himself. There is nothing in the exhibit supporting that this user was mislead. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | "where can I find the source of the binaries you provide? could you provide instructions on how to build your binaries myself?"<br><br>**Exhibit 42:** Exhibit 42 shows actually shows that iGov is helping Perspecta Engineering Inc understand the differences between Neo4j and ONgDB.  Originally Perspecta had reached out to iGov and iGov responded explaining the facts and differences.   The statements in exhibits are true and not misleading. Suhy Dec. ¶27 |
| | <u>Fact 37:</u> The PT Defendant's use of the Neo4j® Mark to promote ONgDB as free open source and falsely it with commercially licensed Neo4j® EE created actual customer confusion.  Ratinoff Decl., Exh. 48-49, 117-120, 130-131, 134-135. | **DISPUTED:**  Defendants only used "Neo4j Enterprise" and "ONgDB" in descriptive manners.  Furthermore defendants focused on educating consumers, not misleading them.  Specific versions of Neo4j and ONgDB had no difference in source code before enterprise source was closed.  Suhy Dec. ¶25<br><br>Even for those distributions, defendants made all the facts clear and never misled consumers. The inference drawn is not supported by the statement:<br><br>**Exhibit 35:** shows no confusion or misleading of customers.   The user is asking a question on the ongdb github issue list and the content does not lead to any confusion.<br><br>**Exhibit 40:**  Exhibit 40 clearly shows that there is no confusion as the user was asking about compiling the binaries himself. There is nothing in the exhibit supporting that this user was mislead.<br>"where can I find the source of the binaries you provide? could you provide instructions on how to build your binaries myself?"<br>**Exhibit 42:** Exhibit 42 shows actually shows that iGov is helping Perspecta Engineering Inc |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | understand the differences between Neo4j and ONgDB.   Originally Perspecta had reached out to iGov and iGov responded explaining the facts and differences.   The facts in exhibit are true and not misleading.  Suhy Dec. ¶27 |
| | Fact 38: Consumers who have downloaded ONgDB rather than official Neo4j® EE have experienced technical issues with ONgDB.  Ratinoff Decl., Exh. 121-124, 133. In one instance, Suhy sent a user to Neo4j USA's operations manual for assistance. *Id.,* Exh. 125. | DISPUTED:  Mr. Suhy believes that the technical issues could be caused by Neo4j Core code that it does not modify or simply because an end-user did not read the instructions on configuring a specific feature.   Mr Suhy is not aware of a bug fix for this issue indicating it could have just been user error. The inference drawn is not supported by the statement:  In many of the exhibits Neo4j tries to show a problem, but does not show any proof that the problem was simply user error or configuration or an analysis of what the problem was.

Exhibit 121 does not give enough information to identify if there is a technical issue, and furthermore the user from the exhibit said that they figured out the problem on their own indicating it was user error.

Exhibit 122 seems to indicate that a plugin or misconfiguration of the JVM is the problem.

Exhibit 123 indicates that the user is using ONgDB 3.2.3 which would have had the same source code as the Neo4j Enterprise branded distribution. Furthermore it seems that the issue was with the a 3rd party plugin called "tinker pop" and therefore was not even specific to Neo4j or ONgDB.  Because the source code for Neo4j and ONgDB was the same for that specific 3.2.3 version - if there was a technical issue - then it would have also been present in the Neo4j Enterprise 3.2.3 version as well. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | USA charges customers and provides technical support for its commercial Neo4J products because consumers have technical issues with their "commercial" Neo4J products as well. Technical issues with software is not indicative of any difference in the software.  Suhy Dec.  ¶28 |
| **Claim 2: Trademark Infringement Against Graph Foundation Inc.** | | |
| 1. Plaintiff Neo4j Inc. ("Neo4j USA") owns a protectable trademark | Fact 39: Neo4j USA is the owner of U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j® Mark").  Declaration of Jeffrey M. Ratinoff, ("Ratinoff Decl."), Exh. 1. | **DISPUTED:** Neo4j is not the owner, assignee, or exclusive licensee of the Neo4j mark, and therefore its ownership of U.S. Trademark Registration No. 4,784,280 is disputed. Beene Dec, Exh. 1 at §2.1.1., 2 and 3. |
| 3.  GFI used the Neo4j® Mark without Neo4j USA's authorization to promote ONgDB | Fact 40: Defendants copied the code, removed the commercial restrictions imposed by the Neo4j Sweden Software License from Neo4j® EE version 3.4 and began promoting ONgDB as the open source Neo4j® EE 3.4 under the AGPL.  Ratinoff Decl., Exh. 24-26, 28-29, 37, 62, 86; *see also* Exh. 3 at 28:25-29:11, 171:23-172:23, 199:22-200:20; Exh. 31 at 87:24-90:9. | **DISPUTED:** Suhy did not remove commercial restrictions imposed by Neo4j.  He only followed the instructions of the License.txt copyright holder (free software foundation) making it verbatim.  The commons clause restrictions were still in effect and referenced in 1000s of files which Mr Suhy did not modify because the other files were copyrighted to Neo4j Sweden.  Following the rules for the License.txt file did not remove any restrictions on the software. Suhy Dec.  ¶29 |
| | Fact 41: GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB.  GFI Dkt. No. 89, ¶ 18, Exh. 18; Ratinoff Decl., Exh. 31 at 81:14-20. | **DISPUTED** The referenced GFI GitHub repository page expressly describes ONgDB as follows: ONgDB (Open Native Graph DB) - Neo4j fork with enterprise code base. ONgDB integrates Neo4j Open Core commits.  GFI Dkt. No. 89, Exh. 18. |
| | Fact 42: On January 17, 2019, GFI modified its landing page by changing the title to "ONgDB - Neo4j Enterprise Fork: Graphs for Everyone," adding references "ONgDB & Neo4j" and that "ONgDB & ***Neo4j Enterprise*** consist of modules from Neo4j Community Edition and modules licensed under AGPLv3 in this repository," but the content | **UNDISPUTED** that GFI's landing page was modified and that the modified page contained the quoted language. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | still remained almost identical to Plaintiffs' GitHub landing page and contained wide-spread misuse of the Neo4j® Mark.  Dkt. No. 89, ¶¶ 19-21, Exhs. 19-21 (emphasis added). | **DISPUTED** that the landing page contained "wide-spread misuse" of the Neo4® Mark.  The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | <u>Fact 43:</u>  On April 14, 2020, GFI started to remove the Neo4j® Mark and Neo4j USA's URLs from that page.  *Compare* GFI Dkt. No. 89, Exh. 22 *and* Exhs. 23-28.  However, GFI's landing page was still titled "ONgDB - Neo4j Enterprise Fork: Graphs for Everyone," still started off stating "Neo4j is the world's leading Graph Database," encouraged consumers to "Learn more on the Neo4j website," and continued to use the Neo4j® Mark throughout. *Id.*, ¶¶ 29-31Exhs. 29-31. | **UNDISPUTED** that GFI's landing page was modified and that the modified page contained the quoted language.\n\n**DISPUTED** that the landing page used the Neo4® Mark.  The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | <u>Fact 44:</u>   On April 21, 2020, GFI removed instances of the Neo4j® Mark and hyperlinks to Neo4j USA's website, but still used Plaintiffs' catch phrase "Graphs for Everyone" and mislabeling the Neo4j® Platform as the "neo4j project."  GFI Dkt. No. 89, Exhs. 32-33. |  **UNDISPUTED** that GFI's landing page was modified and that the modified page contained the quoted language.\n\n**DISPUTED** that the "neo4j project" is mislabeling.  The term "neo4j project" is used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | <u>Fact 45:</u> Rather than create its support documentation for ONgDB, GFI relied upon Neo4j USA's official documentation and used hyperlinks on its website to redirect users to Plaintiffs' official documentation, including Neo4j USA's copyrighted operation and developer manuals, located on its website.  Dkt. No. 89, ¶¶ 3-8, 13-16, Exhs. 3-8, 13-16; Ratinoff Decl., Exhs. 78-83, Exh. 129 [RFA Nos. 81-84, 88-89, 93-94, 98-100, 104, 108, 111, 123-126, 130-136]. | **UNDISPUTED** |
| | <u>Fact 46:</u> GFI's website directed users to ***Plaintiffs'*** change logs for each new release of ONgDB until GFI finally started its own change log with ONgDB v3.5.16.  Dkt. No. 89, ¶¶ 3-8, Exhs. 3-8; Ratinoff Decl., Exh. 84; Exh. 129 [RFA Nos. 87, 92, 97, 103, 107, 110]. | **UNDISPUTED** |
| | <u>Fact 47:</u> Up until April 14, 2020, GFI's GitHub landing page stated "To build the documentation see the Neo4j documentation" with an | **UNDISPUTED** |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | embedded hyperlink: https://github.com/neo4j/neo4j-documentation/. Dkt. No. 89, Exhs. 18-19, 23. | |
| | Fact 48: GFI's document repository on GitHub also uses hyperlinks that send consumers to Neo4j USA's official documentation on Neo4j USA's corporate website. Dkt. No. 89, ¶¶ 9-16; Ratinoff Decl., Exhs. 82-83; Exh. 31 at 276:19-279:12, 284:2-285:18; Exhs. 128-129 [RFA Nos. 81-84, 115-126]. | **UNDISPUTED** |
| | Fact 49: The Neo4j USA developer and operation manuals are copyrighted by Neo4j USA and subject to the License: Creative Commons 4.0, which contains a hyperlink to the Attribution-NonCommercial-ShareAlike 4.0 International Public License, which expressly prohibits the use of Plaintiffs' documents for commercial purposes. Ratinoff Decl., Exh. 85, Exh. 31 at 286:1-288:13. | **UNDISPUTED** |
| | Fact 50: GFI used the Neo4j® Mark in the title tags of webpages on its website featuring ONgDB. Ratinoff Decl., Exhs. 128-129 [RFA Nos. 85-86, 90-91, 95-96, 101-102, 105-106]. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | Fact 51: GFI did not seek or obtain Neo4j USA's authorization to use the Neo4j® Mark on GFI's website and GitHub repository in the foregoing manner. Ratinoff Decl., Exh. 31 at 181:6-182:3, Exh. 129 [RFA Nos. 5-9, 22-26, 69, 71, 73-76, 78]. | **UNDISPUTED** |
| | Fact 52: GFI used the Neo4j® Mark as a hashtag (#Neo4j) in tweets published from GFI's Twitter Account to promote ONgDB. Ratinoff Decl., Exhs. 89-92, 95-96, Exhs. 128-129 [RFA Nos. 149-150, 157-158, 165-166, 173-174, 181-182, 187-188]. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" and the hashtag "#Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| 4. GFI's ONgDB product was readily identifiable without the Neo4j® Mark | Fact 53: ONgDB can be readily identified as such or as "Open Native Graph Database" without use of the Neo4j® Mark. Ratinoff Decl., Exh. 31 at 27:17-29:9, 172:23-173:16, 175:5-20, 176:7-19, 178:13-179:25. | **DISPUTED:** ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Fact 54**: GFI issued tweets promoting ONgDB without using the Neo4j® mark or the mark as hashtag. Ratinoff Decl., Exhs. 86, 88. | **UNDISPUTED** |
| 4. GFI did not use the Neo4j® Mark to describe Plaintiffs' Neo4j® products | **Fact 55**: GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB and gratuitously used the Neo4j® Mark to describe and promote its own software. *See supra* Facts 41-44. | **DISPUTED**: ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Fact 56**: At the time that Plaintiffs filed suit, GFI's ONgDB repository still strongly resembled the landing page for Plaintiffs repository for the Neo4j® Platform, and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used "Neo4j" ***instead*** of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59. | **DISPUTED**: The GFI ONgDB depository page attached as Exhibit 58 starts with "ONgDB (Open Native Graph DB) – Neo4j fork with enterprise code base." There is not a reference to ONgDB and Neo4j being one in the same. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Fact 57:** Rather than independently promoting ONgDB as a graph database software without use of Neo4j® Mark, GFI used the mark to promote ONgDB on its website and GitHub repository. *See supra* Facts 41-52. | **DISPUTED**: ONgDB is a fork of the open source Neo4 database.  It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions.   ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | <u>Fact 58:</u>  GFI used a hashtag, **#Neo4j** that consists of nothing more than the Neo4j® Mark with a "#" before the mark to promote ONgDB on social media.  Ratinoff Decl., Exhs. 1, 89-96 and Exh. 31 at 233:17-237:21. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" and the hashtag "#Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | <u>Fact 59:</u> GFI chose the following format that relied on using the Neo4j® Mark as a hashtag to announce its new releases of ONgDB: "**#ONgDB (#FOSS#Neo4j** Enterprise) 3.5.x support release is out," with no attempt to differentiate ONgDB and Neo4j® EE as separate, competing products.[1]   Ratinoff Decl., Exhs. 89, 92, 94-95; Exh. 31 at 233:17-236:15, 240:12-241:25, 246:5-249:2. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" and the hashtag "#Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element.<br>Further, as is shown in the cited exhibits, each announcement contained the following statement distinguishing ONgDB from Neo4j EE: "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation." |
| | <u>Fact 60:</u> GFI issued a tweet that stated "**#ONgDB,** Open **#Neo4j** Enterprise," and in another instance "Our **#ONgDB/#Neo4j** Enterprise CI server is up and running builds…." Ratinoff Decl., Exhs. 91, 93. | **UNDISPUTED**-that the cited tweets contain the quoted language. |

[1] "FOSS" stands for free open source software. Ratinoff Decl., Exh. 31 at 233:17-234:3.

**EXHIBIT A**

19

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | **DISPUTED** – that the cited language is the only language in the tweets.  Exh. 93 contains the following additional language distinguishing ONgDB from Neo4j EE:  "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation."  And "What is ONgDB:  Open Native Graph DB is an open source fork of #Neo4j, that picks up prior to Neo4j, Inc.'s removal of enterprise code from the main Github repository." |
| | **Fact 61:** GFI used "**#Neo4j** Enterprise 3.5" to solicit end-users of official Neo4j® EE v3.5 to report bugs to GFI so that it could identify bugs in the closed enterprise directory for Neo4j® EE and attempt to mimic such fixes in ONgDB.  Ratinoff Decl., Exh. 61, Exh. 31 at 161:23-163:12, 169:13-172:13 | **DISPUTED** The hashtag "#Neo4j" was used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project where to report enterprise issues on open source.  Ratinoff Decl., Exh. 31 at 170:11-22. |
| | **Fact 62:** GFI used **#Neo4j** to promote ONgDB without reference to Neo4j® EE:  "Latest **#ONgDB** apoc 3.5.0.8 procedure release is out.  https://github.com/graphfoundatio... **#Neo4j**." Ratinoff Decl., Exh. 96. | **UNDISPUTED** – that the language appears on the exhibit.

**DISPUTED** – that there is no reference to Neo4j EE.  To the contrary, Exhibit 96 tweet contains the following language <u>distinguishing ONgDB from Neo4j EE:</u>  "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation." |
| | **Fact 63:** GFI admitted intentionally used the Neo4j® Mark as a hashtag "to inform users about ONgDB" and to make it more likely that potential customers would come across ONgDB in conducting searches in relation to Neo4j® EE.  Ratinoff Decl., Exh. 31 at 174:14-176:19, 236:4-11, 237:9-239:7, 242:14- 243:21. | **DISPUTED** – GFI did not use the Neo4j Mark.  GFI used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project.  Ratinoff Decl., Exh. 31 at 236:3-11 |

**EXHIBIT A**                    20

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| 7. GFI prominently used the Neo4j® Mark beyond what was reasonably necessary | **Fact 64:** GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB and despite making modifications continued to use the Neo4j® Mark on its GitHub repository beyond merely describing ONgDB as a fork of Neo4j® EE. *See supra* Facts 41-55; *see also* Dkt. No. 89 at ¶¶ 17-33, Exhs. 17-33. | **DISPUTED** The referenced GFI GitHub repository page expressly describes ONgDB as follows: ONgDB (Open Native Graph DB) - Neo4j fork with enterprise code base. ONgDB integrates Neo4j Open Core commits.  GFI Dkt. No. 89, Exh. 18.  The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element.  ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions.  ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users.  Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark

If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Fact 65:** At the time that Plaintiffs filed suit, GFI's ONgDB repository still strongly resembled the landing page for Plaintiffs repository for Neo4j® Software, and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used "Neo4j" instead of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59. | **DISPUTED**:  The GFI ONgDB depository page attached as Exhibit 58 starts with "ONgDB (Open Native Graph DB) – Neo4j fork with enterprise code base."  There is not a reference to ONgDB and Neo4j being one in the same.  ONgDB is a fork of the open source Neo4 database.  It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions.   ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users.  Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Fact 66:** GFI's (1) use of "neo4j," "neo4j enterprise" and "Neo4j Enterprise" without proper trademark notices; (2) use of embedded "Neo4j" links to Neo4j USA's website and GitHub repository; (3) hyperlinking to Plaintiffs' build instructions, support documentation and change logs all containing the Neo4j® Mark rather than creating and hosting their own with the ONgDB name; and (4) interchangeable use of "Neo4j Enterprise" with "ONgDB" to promote ONgDB on its website and GitHub goes beyond what is reasonably necessary to identify ONgDB as a fork of Neoj4® EE. *See supra* Facts 41-51, 56-58; *see also* Ratinoff Decl., Exhs. 37, 57-58; Dkt. No. 89, ¶¶ 3-16. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore GFI only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Fact 67:** GFI used the Neo4j® Mark as a hashtag, **#Neo4j**, to promote ONgDB rather than to merely describe ONgDB as a fork of Neo4j® EE. *See supra* Facts 59-64. | **DISPUTED** GFI used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project. Ratinoff Decl., Exh. 31 at 236:3-11. GFI's tweets referenced in Facts 59-64 underline contained the following additional language distinguishing ONgDB from Neo4j EE: "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation." See Responses to Facts 59-64. And Exhibit 93 also states: "What is ONgDB: Open Native Graph DB is an open source fork of #Neo4j, that picks up prior to Neo4j, Inc.'s removal of enterprise code from the main Github repository." |
| | **Fact 68:** GFI admitted that it could have referred to "Neo4j Enterprise" without using the Neo4j® Mark as a hashtag to identify the product. Ratinoff Decl., Exh. 31 at 236:4-15. | **DISPUTED** the cited testimony contains no such admission. The testimony is only that it is possible |

**EXHIBIT A**                                    22

SER_2434

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | to write a tweet without a hashtag. GFI did not use the Neo4j Mark. GFI used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project. Ratinoff Decl., Exh. 31 at 236:3-11 |
| | **Fact 69:** GFI It also conceded that it could have used a format where it described ONgDB as being a fork of Neo4j® EE rather than simply inserting "#Neo4j Enterprise" with "#ONgDB." See id., Exh. 31 at 243:23-245:12; Exh. 93. | **DISPUTED** the cited testimony relates to a different type of tweet that still used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project. |
| **8. GFI's use of the Neo4j® Mark suggested sponsorship or endorsement by Neo4j USA** | **Fact 70:** GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB and despite making modifications continued to use the Neo4j® Mark on its GitHub repository beyond merely describing ONgDB as a fork of Neo4j® EE. *See supra* Facts 41-55; *see also* Dkt. No. 89 at ¶¶ 17-33, Exhs. 17-33. | **DISPUTED** The referenced GFI GitHub repository page expressly describes ONgDB as follows: ONgDB (Open Native Graph DB) - Neo4j fork with enterprise code base. ONgDB integrates Neo4j Open Core commits. GFI Dkt. No. 89, Exh. 18. The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark

If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | See also Responses to Facts 41-55. |
| | **Fact 71:** At the time that Plaintiffs filed suit, GFI's ONgDB repository still strongly resembled the landing page for Plaintiffs repository for Neo4j® Software, and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used "Neo4j" instead of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59. | **DISPUTED:** The GFI ONgDB depository page attached as Exhibit 58 starts with "ONgDB (Open Native Graph DB) – Neo4j fork with enterprise code base." There is not a reference to ONgDB and Neo4j being one in the same. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Fact 72:** GFI (1) used "neo4j," "neo4j enterprise" and "Neo4j Enterprise" without proper trademark notices; (2) used embedded "Neo4j" links to Neo4j USA's website and GitHub repository; (3) stated on its GitHub repository for ONgDB for customers to "Learn more on the Neo4j website," and continued to use the Neo4j® Mark throughout that repository; (4) hyperlinked to Plaintiffs' build instructions, support documentation and change logs on GFI's website and GitHub repository all containing the Neo4j® Mark; (5) interchangeably used "Neo4j Enterprise" with "ONgDB" to promote ONgDB on its Github repository; and (6) used the Neo4j® as a hashtag on Twitter to promote ONgDB. *See supra* Facts 42-43, 56-70. | **DISPUTED** The Neo4j® Mark was never used, only the words Neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore GFI only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Fact 73:** GFI's intended audience in using the Neoj4® Mark as a hashtag were users of Neo4j® EE. Ratinoff Decl., Exh. 31 at 174:14-176:19, 236:4-11, 237:9-239:7, 242:14- 243:21. | **DISPUTED** the cited testimony contains no such admission. The testimony is only that it is possible |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | to write a tweet without a hashtag.  GFI did not use the Neo4j Mark.  GFI used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project.  Ratinoff Decl., Exh. 31 at 236:3-11 |
| 9. GFI's use of the Neo4j® Mark caused actual consumer confusion | **Fact 74:** GFI's use of the Neo4j® Mark to promote ONgDB resulted in customers choosing ONgDB and encountering compatibility issues.  Ratinoff Decl., Exh. 115-116; Exh 31 at 230:12-233:10; Exh. 3 at 207:12-209:3. | **DISPUTED** – The cited emails are hearsay and do not establish compatibility issues.  Rather, Exhibit 115 demonstrates an attempt to use a desktop tool inappropriately with a server application.  Ratinoff Decl., Exh. 31 at 232:5-25.  Nothing in the email demonstrates that there would be any compatibility issues when ONgDB is used as a server application. |
| | **Fact 75:** GFI lead consumers to believe that ONgDB and Neo4j® EE were one and the same.  *See, e.g.,* Exhs. 35, 40, 42-44, 46-47, 53, 55-58, 76, 100, 130-131, 134-135. | **DISPUTED:**  Defendants consistently present ONgDB as an alternative to Neo4j EE.  As is set out above, in numerous statements, on the GFI website and on Twitter, GFI describes ONgDB as "an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation."  Ratinoff Decl., Exhs. 89, 92, 94, 95.  GFI has also described, on its website, the distinction between ONgDB and the Neo4j EE software distributed by Neo4j, Inc., while also disassociating itself from Neo4j, Inc.  Open Native Graph DB (ONgDB) is a fork of the neo4j project that continues development of the neo4j enterprise code base as a fully open source project after Neo4j, Inc. Open Core Shift that closed ongoing development and removed existing source code.  Ratinoff Decl., Exh. 66.  . |
| | **Fact 76:** GFI's use of the Neo4j® Mark to promote ONgDB as free open source and falsely comparing it with commercially licensed Neo4j® EE created actual customer confusion, and diverted sales from Neo4j USA, | **DISPUTED:**  Plaintiffs present no evidence of a single person or entity that would have made that choice.  Indeed, the evidence Plaintiffs provide with |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | including the IRS and Next Century/MPO.  Ratinoff Decl., Exh. 48-50, 117-120, 127, 131, 134-135; Broad Decl., ¶¶ 20-24, Exhs. 12-13. | respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability."  Broad Decl., Exh. 13. |
| **Claim 3: False Advertising Against GFI and the PT Defendants** | | |
| 1. Defendants made a false statement of fact about a product in a commercial advertisement, which is (a) commercial speech; (b) made in commercial competition with Neo4j USA; (c) for the purpose of influencing consumers to buy their goods or services; and (d) sufficiently disseminated to the relevant purchasing public | **Fact 77:** Defendants made the following false statements interstate commerce via their websites and Twitter: (1) "ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number" [Ratinoff Decl., Exh. 57]; (2) "ONgDB and Neo4j Enterprise consists of modules from Neo4j Community Edition and modules licensed under the AGPLv3" [*id.*, Exh. 58]; (3) "ONgDB distributions are licensed under AGPLv3 as a free and open source alternative to currently available proprietary native graph offerings such as Neo4j Enterprise Edition" [*id.*, Exhs. 60, 113-114]; (4) "download ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the same version number." [*id.*, Exhs. 62-66]; (5) "ONgDB Enterprise is a drop in replacement for Neo4j Enterprise commercial packages downloaded from Neo4j.com" [*id.*, Exhs. 62-66, 71]; (6) "ONgDB Enterprise 3.5.5…. Drop in replacement for Neo4j Core and Enterprise 3.5.5. AGPLv3 Open Source License, no limitations on causal cluster instances, cores, or production usage" [*id.*, Exhs. 67-69, 75]; (7) "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions" [*id.*, Exh. 72-74]; (8) "[ONgDB] is an open source fork of #Neo4j" [*id.*, Exh. 93]; and (9) "You can use the ONgDB fork of Neo4j which adds enterprise code back into Neo4j core. It is 100% free and open." [*id.*, Exh. 98-104, 108]. | DISPUTED: Objection none of the evidence cited supports the alleged fact is false. The legal standard is not correct. See, *Pizza Hut, Inc. v. Papa John's Intern., Inc.* (5th Cir. 2000) 227 F.3d 489, 495.<br>The statements are all true: (1) "ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number"; (2) "ONgDB and Neo4j Enterprise consists of modules from Neo4j Community Edition and modules licensed under the AGPLv3"; (3) "ONgDB distributions are licensed under AGPLv3 as a free and open source alternative to currently available proprietary native graph offerings such as Neo4j Enterprise Edition"; (4) "download ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the same version number."; (5) "ONgDB Enterprise is a drop in replacement for Neo4j Enterprise commercial packages downloaded from Neo4j.com" ; (6) "ONgDB Enterprise 3.5.5…. Drop in replacement for Neo4j Core and Enterprise 3.5.5. AGPLv3 Open Source License, no limitations on causal cluster instances, cores, or production usage" (7) "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions"; (8) |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | "[ONgDB] is an open source fork of #Neo4j"; and (9) "You can use the ONgDB fork of Neo4j which adds enterprise code back into Neo4j core. It is 100% free and open." Suhy Dec. ¶30 |
| | **Fact 78:** The PT Defendants also stated on iGov's website that "[Neo4j Enterprise] is 100% free and open source" and "Neo4j Enterprise is released only under the standard AGPLv3 open source license that is managed by the free software foundation." Ratinoff Decl., Exhs. 67-70; *see also* Exh. 21. | <u>DISPUTED:</u> The PT Defendants did not all say this. Only iGov's website stated: that "[Neo4j Enterprise] is 100% free and open source" and "Neo4j Enterprise is released only under the standard AGPLv3 open source license that is managed by the free software foundation." Defendants do not sell ONgDB, ONgDB is licensed under AGPL and AGPL is an open source license for free software. Suhy Dec. ¶31, Ratinoff Decl. Exh. 39, 11:635-638<br><br>ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Pernick Dec. Ex. B |
| | **Fact 79:** Defendants actively encourage actual and potential users of commercially licensed Neo4j® EE to adopt ONgDB and obtain support services from iGov and GraphGrid instead of Plaintiffs. Ratinoff Decl., Exhs. 23, 28-29, 40, 42-54, 76-77, 126, 134-135. | **DISPUTED:** None of the evidence cited identifies any party that would have used Neo4j EE. Further, Plaintiffs present no evidence that they competed with GraphGrid or provided similar services. |

**EXHIBIT A**

27

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Plaintiffs are misidentified as if they both do the same thing. Sweden is not a party to the cause of action. Sweden licenses the open source software USA does not. See APGL license. USA does not support open source software licensed by Sweden. Suhy Dec. 32 |
| | **Fact 80:**  Neo4j Sweden is the owner of all copyrights in Neo4j® CE and Neo4j® EE, including the source code and has licensed said copyrights to Neo4j USA.  Rathle Decl., ¶¶ 3-4. | **UNDISPUTED** |
| | **Fact 81:** Plaintiffs released Neo4j® EE v3.4 under a license that which included the terms from the AGPLv3 and additional restrictions provided by the Commons Clause ("Neo4j Sweden Software License"). Rathle Decl., ¶¶ 11-12, Exhs. 2-3. | **DISPUTED:**  Neo4J USA did no such thing. Neo4J Sweden release the open source software, not Neo4J USA. Ratinoff Decl. Exh. 39, 25:11-13 Suhy Dec. ¶33 |
| | **Fact 82:** The Neo4j Sweden Software License, while still allowing code to be publicly viewable and used within a certain licensed scope, prohibits commercial resale and certain commercial support services. Rathle Decl., ¶¶ 11-12, Exhs. 2-3. | **DISPUTED:**   Versions of Neo4j Enterprise open source distributions using AGPL only have no terms mentioning these prohibitions.  When the commons clause was added to AGPL, Sweden did not change license forms and used the AGPL form which bars additions and also allows licensees to remove non-permissive additional restriction. AGPL §7. Ratinoff Decl. Exh. 39, 6:331-7:393<br><br>Furthermore - the commons clause does not use the word "commercial". It only uses the word "sell". Ratinoff Decl. Exh. 39, 25:681-693<br><br>The author of the commons clause clarifies the intention and meaning of the commons clause as well. Support services are not barred as they do not consist entirely or substantially of the Software or Functionality of the Software as limited in the commons clause. The restriction of services is using the software as a service as in a SaaS implementation. Suhy Dec. ¶34 Ex. 2 |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 83:** After Plaintiffs released Neo4j® EE v3.4, the PT Defendants downloaded Neo4j's source code from Neo4j's GitHub repository, removed the commercial restrictions imposed by the Neo4j Sweden Software License, and began promoting it "free and open source" Neo4j Enterprise and offering commercial support services.  Ratinoff Decl., Exh. 3 at 171:23-172:23, 199:22-200:20; Exh. 21. | DISPUTED:  USA did no such thing. Sweden release the open source software not USA. Ratinoff Decl. Exh. 39, 25:11-13 Suhy Dec. ¶33<br>Suhy only removed the commons clause as allowed in the AGPL §7. Ratinoff Decl. Exh. 39, 6:331-7:393<br>Suhy did not remove any commercial restrictions. He simply ensured the LICENSE.txt file was verbatim as required by the copyright holder of the LICENSE.txt files : the free software foundation. Suhy did not modify any other files, and the commons commercial restrictions were still in effect.  Following the FSF copyright instructions for the AGPL License.txt file did not remove any restrictions from the distribution - as the restrictions were documented across the repository.  Following the rules for just the specific files did not remove legal terms from the distributions. Suhy Dec. ¶35 |
| | **Fact 84:** Rather than develop ONgDB as an independent fork based off an earlier open source version of Neo4j® EE, Defendants stripped the commercial restrictions out of the Neo4j Sweden Software License from Neo4j® EE version 3.4 and began promoting ONgDB as the open source equivalent of Neo4j® EE 3.4 under the AGPL.  Ratinoff Decl., Exh. 24-26, 28; *see also* Exh. 31 at 87:24-90:9. | DISPUTED:  PT, Suhy, and iGov Inc did not use the term "equivalent" in any references.   For Neo4j Enterprise versions below 3.5 - ONgDB was equivalent in features as it used the same unmodified source code.  So this statement would be true for specific versions of Neo4j and ONgDB.  PT, Suhy, and iGov always used the term drop in replacement which does not mean the features are all equivalent.<br><br>Furthermore - ONgDB is a current fork of Neo4j open source software licensed from Sweden, it pulls in all the Neo4j community commits from the official repository regularly keeping it up to date. This is allowed under the AGPL. Suhy Dec. ¶36 |
| | **Fact 85:** Plaintiffs officially released Neo4j® EE v.3.5 solely under a commercial license in November 2018, and were no longer publishing | DISPUTED:  PT, Suhy, and iGov Inc did not use the term "equivalent" in any references.   For Neo4j |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | source code for Neo4j® EE on GitHub under any open source license. Rathle Decl., ¶ 13, Exh. 4. | Enterprise versions below 3.5 - ONgDB was equivalent in features as it used the same unmodified source code.  So this statement would be true for specific versions of Neo4j and ONgDB.  PT, Suhy, and iGov always used the term drop in replacement which does not mean the features are all equivalent.  Furthermore - ONgDB is a current fork of Neo4j open source software licensed from Sweden, it pulls in all the Neo4j community commits from the official repository regularly keeping it up to date.  This is allowed under the AGPL. Suhy Dec. ¶36 |
| | **Fact 86:** Prior to its official release, Plaintiffs published several beta versions of Neo4j® EE v3.5 via their GitHub repository subject to the Neo4j Sweden Software License, with Neo4j® v3.5.0-RC1 being the last pre-release version available to Defendants via GitHub.  Rathle Decl., ¶ 14; *see also* Ratinoff Decl., Exh. 31 at 158:18-159:20. | **DISPUTED:**  USA did not release version on GitHub. Only Sweden released the open source Neo4J software under the AGPL license. Ratinoff Decl. Exh. 39, 25:11-13 Suhy Dec. ¶33

There are no pre-release terms in the GitHub repository.  It's possible that a pre-release agreement was added to the compiled packages - but that would be in the actual download of the package, not the GitHub source code as they state. Furthermore - enterprise code was not available in v3.5.0-RC1 but it was available in 3.5.0-beta03. Suhy Dec. ¶37

Also - the License.txt files for the above mentioned releases clearly shows the license as being AGPL, complete with the AGPL preamble - and does not say anything about a "Neo4j Sweden Software License" Decl. Exh. 39, 12-13 |
| | **Fact 87:** GFI's release of ONgGB v3.5.1, which contained at least 182 source code files that had only been previously released under the Neo4j Sweden Software License in the last beta version of Neo4j® EE 3.5 made available by Plaintiffs via GitHub.  Ratinoff Decl., Exh. 38 at 6:22-7:1, 8:4-16:24; *see also* Rathle Decl., ¶ 29. | Disputed. USA does not release the open source software. Ratinoff Decl. Exh. 39, 25:11-13 Suhy Dec. ¶33 |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 88:** In order for Defendants to call ONgDB "free and open source" Neo4j® EE, they again replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL and stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor in 28 LICENSE.txt files. Ratinoff Decl., Exhs. 39-40; Dkt. No. 91 at 19:9-25; Exh. 31 at 159:3-10; Rathle Decl., ¶ 30. | DISPUTED: The AGPL license.txt file is copyrighted to the free software foundation. Suhy followed the guidance from the free software foundation relating to the license being verbatim. By following the FSF copyright guidance he did not remove the legal terms from the distribution as a whole. There are 1000s of Neo4j files in the repository which clearly state the commons clause is still part of the license. I.E. Using the verbatim AGPL license content as instructed by the Free software foundation did not remove the commons license in any way as it was stated in many other places. There is no obligation to repeat Sweden's copyright notice on every file. And Sweden owns the copyright (undisputed Fact 80 above) USA has not standing to argue about the copyright notice. Phase 1 does not address the DCMA claim. Suhy Dec. ¶38 |
| | **Fact 89:** The Neo4j Sweden Software License did not permit a licensees such as Defendants to remove "further restrictions," i.e. the Commons Clause, imposed by Neo4j Sweden as the copyright holder and original licensor. Rathle Decl., Exh. 3 at §§ 7, 10; GFI Dkt. No. 88 at 5:23-8:9. | DISPUTED: Suhy only worked on the License.txt file which he believes is copyrighted to the Free software foundation. When Suhy replaced the file with verbatim - it was following the copyright holder's instructions. All the other files which Neo4j held the copyright for were not modified by Suhy and clearly stated that the commons clause was there. Suhy Dec. ¶35

Following the copyright holder's instructions for the License.txt file did not remove restrictions as these were mentioned in many other files in the github repository. Suhy Dec. ¶35 |
| | **Fact 90:** Defendants knew that they could not unilaterally replace the Neo4j Sweden Software License with the APGL without authorization. Ratinoff Decl., Exhs. 34-36, Exh. 31 at 183:14-184:24, 207:10-210:8. | DISPUTED: Suhy did not replace the Neo4j Software License - He only followed the instructions given by the AGPL license copyright holder to make the actual license verbatim. The Neo4j Sweden |

**EXHIBIT A**

842\3658210.3

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Software License was still in effect as the commons clause was mentioned in many other neo4j files which Neo4j Inc owned the copyright for. Suhy Dec. ¶35 |
| | **Fact 91:** Defendants' statements that ONgDB v3.5.x was "100% free and open" with no limitations or restrictions imposed by commercial licensed Neo4j® EE v3.5.x and the like were false because they knew that Neo4j Sweden owned the copyright for Neo4j® EE and never gave permission to remove Commons Clause and offer it as ONgDB under the AGPL. Ratinoff Decl., Exh. 55-56; Exh. 3 at 183:12-183:1, 187:12-188:5, 189:1-191:3, 235:21-237:14, 240:22-243:22. | DISPUTED: Suhy only acted on License.txt files who's copyright is owned by the free software foundation. Furthermore - Suhy only made AGPL license.txt files verbatim as the free software foundation required. The commons clause was referenced and defined in almost every one of the thousands of enterprise code headers - all of which were left untouched by Suhy. Suhy Dec. ¶35 |
| | **Fact 92:** The Nussbaums also own GraphGrid and AtomRain, which share the same office and computers with GFI, and provide commercial training and consulting and support for users of ONgDB, and benefit from customers being able to use ONgDB for "free" and diverting available project funds to pay them for such services. Ratinoff Decl., Exhs. 52-53; Exh. 31 at 22:24-23:3, 31:5-32:19, 35:3-13, 57:18-58:21, 65:20-70:16, 194:14-17; *see also* Exh. 28 ("If you are looking for a full shield of liability, we recommend using one of our supporters such as GraphGrid") and Exhs. 76, 134-135. | DISPUTED: GFI does not "share the same office" with GraphGrid and AtomRain. GFI uses 111 South Buckeye Street for receiving mail and 111 Buckeye Street is leased by AtomRain and is used by AtomRain and GraphGrid for business activities. Nussbaum Depo., 65:18-67:3. Pernick Dec. Ex. A |
| | **Fact 93:** Defendants removed the Commons Clause without Neo4j Sweden's authorization as the copyright holder in an attempt to allow iGov, AtomRain and GraphGrid to commercially use and support ONgDB. Ratinoff Decl., Exh. 23-26, 28-29, 39, 76-77, 126, 134-135; Exh. 3 at 28:25-29:11; Rathle Decl., ¶¶ 29-30. | DISPUTED: The free software foundation owns the copyright for the AGPL License.txt file and clearly states that the license must be verbatim. Suhy Dec. 35. Suhy's commit message for the changes to the license files to be in line with the FSF requirements clearly states the reason for the change. Suhy Dec. 47. Furthermore - the commons clause does not say anything about commercial use and support, the commons clause author Heather Meaker clarifies the commons clause in her article and states they do not cover professional services: Suhy Dec. ¶34 Ex. 2 |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 94:** ONgDB v3.5.1 and later versions are not 100% identical to equivalent version numbers of Neo4j® EE. Ratinoff Decl., Exh. 31 at 158:18-163:5, 163:13-165:6; Exh. 3 at 124:2-126:2. Rather, ONgDB is a patchwork of code from the last public beta, Neo4j® EE 3.5.0-RC1, and Neo4j® Community Edition held together by "glue code" authored by Suhy, Brad Nussbaum and other GFI contributors. *See id.* | UNDISPUTED:  ONgDB 3.5 and later versions are not 100% identical to equivalent Neo4j enterprise versions and that claim was never made.<br><br>DISPUTED:  ONgDB is not a "patchwork" or "glue" of code - it has been proven in large production deployments.   After the enterprise code was closed - Suhy and other contributors continued it's development.   The enterprise code came from Neo4j - so it is calling the code it developed a patchwork of code. Suhy Dec. ¶39 |
| | **Fact 95:** By splicing together source code for ONgDB in that manner, GFI is creating software that is not of the same quality as if it were compiled by Plaintiffs because GFI does not have access to the same rigorous build infrastructure for official Neo4j® Software, which goes beyond what is built into Neo4j® CC and carries out tens of thousands of functional, performance, load, stress, and other tests to ensure quality. Rathle Decl. ¶¶ 31-34; Ratinoff Decl., Exh. 31 at 168:14-169:6. | **UNDISPUTED**:  GFI does not have access to Neo4j software build infrastructure and ONgDB 3.5 and later versions are not 100% identical to equivalent Neo4j enterprise versions and that claim was never made.<br>**DISPUTED**:  That GFI does not do its own quality testing of ONgDB.  To the contrary, GFI conducts about 64,000 tests for each build.  Nussbaum Depo., 166:18-168:13. |
| | **Fact 96:** GFI is dependent on what patches are made available in Neo4j® CE and sought to redirect users of official Neo4j® EE to GFI and identify bugs in the closed enterprise directory for Neo4j® EE. Ratinoff Decl., Exh. 61, Exh. 31 at 161:23-163:12, 169:13-172:12. | UNDISPUTED – GFI uses information from users of Neo4j software to identify bugs and uses open source patches made available in Neo4j CE.<br><br>DISPUTED – GFI is not dependent on information about Neo4j EE bugs to develop ONgDB.  To the contrary, GFI is no longer developing ONgDB versions as drop in replacements for Neo4j EE (and does not describe versions after 3.5.4 as such.  Indeed, GFI has developed ONgDB 3.6 even though there is no Neo4j EE 3.6 and is developing ONgDB 4 independent from Neo4j EE 4. Nussbaum Depo., 190:17-191:6. |
| | **Fact 97:** Since GFI introduced modifications and patches to ONgDB 3.5.x in an attempt to keep pace with the closed Neo4j® EE releases, | **DISPUTED** – GFI conducts tests on ONgDB to ensure its quality and compatibility. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | the potential for stability and compatibility issues with ONgDB increases.  Rathle Decl., ¶ 34; Ratinoff Decl., Exh. 31 at 161:23-163:12. | **UNDISPUTED** GFI has not verified that ONgDB versions after 3.5.4 are drop in replacements for the equivalent version of Neo4j EE |
| | **Fact 98:** Defendants had no way of knowing this after Plaintiffs closed off public access to the source code for enterprise-only features in November 2018 and had no visibility into Neo4j Sweden's proprietary testing and patches.  Ratinoff Decl., Exh. 31 at 158:18-160:5; Exh. 3 at 223:1-224:9; Exh. 40; Rathle Decl., ¶¶ 31-34. | **DISPUTED:**  Defendants are not sure what "this" means in the context of this statement.  If it is referencing Fact 97 then it would be true.

Furthermore, defendants believe that the older approach for the enterprise features (which include the tests) is more stable and higher quality than newer re-implementations.  See GitHub bug tickets. Suhy has not been advised by any user of ONgDB that is it incompatible with Neo4J commercial software. Suhy Dec. ¶40 |
| | **Fact 99:** Defendants knew that ONgDB 3.5.x does not include every closed enterprise feature in equivalent Neo4j® EE 3.5.x.  Ratinoff Decl., Exh. 38 at 2:12-17, 4:15-22, 5:4-6:21; Exh. 3 at 127:19-128:17. | **UNDISPUTED:**  Defendants did know that ONgDB did not include every closed enterprise feature and did not ever say that the 2 were equivalent.   The defendants used the term "Drop in replacement" which has nothing to do with feature by feature equivalency. |
| | **Fact 100:** GFI admitted that ONgDB v3.5.4 is not 100% identical to official Neo4j® EE v3.5.4.  Ratinoff Decl., Exh. 31 at 158:18-163:5, 163:13-165:6; Exh. 3 at 124:2-126:23. | **UNDISPUTED**:  ONgDB 3.5.4 is not 100% identical to equivalent Neo4j enterprise versions and that claim was never made. |
| | **Fact 101:** GFI admitted that after ONgDB v3.5.4, it could not "reliably guarantee that it was a drop-in replacement" for the same version number of Neo4j® EE and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate." Ratinoff Decl., Exh. 31 at 186:24-188:17, 188:23-189:23. | **DISPUTED** – GFI conducts tests on ONgDB to ensure its quality and compatibility.

**UNDISPUTED** GFI has not verified that ONgDB versions after 3.5.4 are drop in replacements for the equivalent version of Neo4j EE. Suhy has not been advised by any user of ONgDB that is it incompatible with Neo4J commercial software. Suhy Dec. ¶40 |
| | **Fact 102:** As a result, Defendants were leading consumers to believe they were downloading an exact copy of the same version of commercial-only releases of NEO4J® EE, which in actuality they were | DISPUTED:  Suhy, PureThink and iGov never lead consumers into believing they were downloading an exact copy of the same commercial only releases. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | receiving an inferior ONgDB product that was not a true "drop in" replacement. *See supra* Facts 80-101. | For versions when the enterprise code was present and no modifications were made in the source code - defendants made clear that Neo4j did not compile the code, even though the code was the same for Neo4j Enterprise and ONgDB. The defendants knew that knowledgeable users only needed to know specific facts such as the code being unchanged in specific versions. Furthermore ONgDB is a drop in replacement for Neo4j community and enterprise for all versions including 3.5. Drop in replacement has nothing to do with feature parity.

Suhy believes that the original code for causal clustering and other features is actual superior to the feature rewrites Neo4j Inc made when it closed the Neo4j Enterprise code in 3.5

To the contrary, the statements are true. First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393 |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Suhy has not been advised by any user of ONgDB that is it incompatible with Neo4J commercial software. Suhy Dec. ¶40 |
| | Fact 103: Neo4j® EE has been subject to trademark policies and guidelines published on Plaintiffs' website, which along with the terms of the GPL, AGPL and Neo4j Sweden Software License, made clear that to the extent any authorized modifications are made to Neo4j® Software, such modified software should indicate so and no longer bear the Neo4j® Mark. Rathle Decl., ¶¶ 15-18. Exhs. 5-7. | DISPUTED: Those terms were only recently added. Furthermore - Neo4j Inc never provided us with trademark policies and these policies were not found on their websites until recently. Furthermore - The neo4j word is only used in a descriptive manner. The Neo4j® Mark was not used. Suhy Dec.41 USA trademark policies only cover its limited license to the trademark covering the commercial version of Neo4J. See Beene Dec. Exhibit 1. |
| 2. Defendants' statements actually deceive or has the tendency to deceive a substantial segment of its audience | Fact 104: Defendants intentionally made the false statements publicly on their website and on Twitter that ONgDB is a "free and open" drop-in replacement/equivalent under the AGPL to convince customers to adopt ONgDB over Neo4j® EE, and pay iGov, Graph Grid and/or AtomRain for related consulting and support services. *See supra* Facts 78-80, 83-84, 86-93. | DISPUTED: The statements referenced are true. The statements made by Suhy and iGov were made to educate the community about ONgDB and Neo4j. Furthermore - the word drop-in replacement was used which is still true for all versions of ONgDB. The term "drop in replacement/equivalent" not used in combination the way Neo4j fact suggests. The term "drop in replacement" was used on its own. Suhy Dec.42 To the contrary, the statements are true. First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4j Sweden Software License was improper is incorrect. Pernick Dec. Ex. B Substituting the matching language for the defined |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
| | **Fact 105:** Consumers chose ONgDB over Neo4j® EE based on Defendants' misrepresentations about ONgDB being "free and open" drop-in replacement/equivalent under the AGPL, including NextCentury and the MPO, Tufin, the IRS, Department of Homeland Security (DHS) and others.  Ratinoff Decl., Exhs. 35, 40, 48-51, 53, 100, 120, 127, 133-135; Exh. 3 at 54:17-55:1, 142:15-144:20, 227:3-8, Exh. 31 at 191:15-24, 194:23-25, 195:13-18, 196:22-197:24; Broad Decl., ¶¶ 20-24; Exhs. 12-13. | DISPUTED: the representations made about being a drop-in replacement are true.  The term "drop in replacement/equivalent" was not used together in the manner Neo4j referenced.  Only the term "drop-in replacement" was used. Suhy Dec.42  To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A

Neo4j and ONgDB are highly technical products and the end-users who use them are knowledgeable about the technology.

Furthermore, defendants focused on educating the community with facts. In the case of the IRS - defendants laid out the facts including differences, license, features, and future of ONgDB were all taken into consideration.

The agencies mentioned in this fact would not have have been effected by the commons clause restriction as they are using ONgDB for their projects and not creating or selling anything. Suhy Dec. 42

Plaintiffs present no evidence of a single person or entity that would have made that choice. Indeed, the evidence Plaintiffs provide with respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability." Broad Decl., Exh. 13. |
| 3. Defendants' deception is material | Fact 106: Defendants' false statements that ONgDB is a drop-in replacement/equivalent to paid-for, commercial licensed Neo4® EE was material to potential consumers' purchasing decision because Defendants were offering it for free under the AGPL, and unbeknownst to consumers, in violation of the Neo4j Sweden Software License and Neo4j Sweden's copyright. *See supra* Facts 78-93. | DISPUTED: ONgDB is a drop-in replacement for any Neo4j (community or enterprise) with the same version number. ONgDB is a superset of Neo4j Core. Furthermore: the term "drop-in replacement/equivalent" was not used together as Neo4j says in the fact. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 107:** Defendants intentionally made the false statements publicly on their website and on Twitter that ONgDB is a "free and open" drop-in replacement/equivalent under the AGPL to convince customers to adopt ONgDB over Neo4j® EE. *See supra* Facts 78-93. | DISPUTED: The statements mentioned are true statements, not false. Suhy and iGov clearly state that there are no limitations to cores and causal clustering - free and open would still apply to the AGPL with commons clause as all the terms in AGPL are still present. Had Neo4j removed some terms from AGPL - then it may be harder to use the term free and open

Furthermore: the term "drop-in replacement/equivalent" was not used together as Neo4j says in the fact.

To the contrary, the statements are true. First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393 The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
| 4. Defendants caused the false | **Fact 108:** Defendants' false statements entered interstate commerce through the internet via their websites and Twitter, as well as emails | DISPUTED: Defendants statements were / are true. |

842\3658210.3

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| statement to enter interstate commerce | sent to consumers.  Ratinoff Decl., Exhs. 18, 21, 25, 29, 42-46, 49-51, 54-55, 57-58, 60, 62-66, 67-70, 72-74, 93, 99-104, 108, 113-114. | To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
| 5. Neo4j USA has been or is likely to be injured as a result of the false statement | Fact 109: Defendants' false statements diverted sales from Neo4j USA. Ratinoff Decl., Exhs. 35, 40, 47-51, 53, 100, 120, 127, 133-135; Exh. 3 at 54:17-55:1, 142:15-144:20, 227:3-8, Exh. 31 at 191:15-24, 194:23-25, 195:13-18, 196:22-197:24; Broad Decl., ¶¶ 20-24; Exhs. 12-13. | DISPUTED:  Defendants statements were / are true.  To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393 The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A<br><br>Plaintiffs present no evidence of a single person or entity that would have made that choice. Indeed, the evidence Plaintiffs provide with respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability." Broad Decl., Exh. 13. |
| | Fact 110: Neo4j USA lost multi-year deal with the IRS. Broad Decl., ¶¶ 20-21. | DISPUTED: PureThink lost a multi-year deal with IRS, not Neo4j USA. Suhy Dec. ¶7, Ex. 1 Furthermore - IRS created a competitive procurement which Neo4j or Resellers could have competed on. Mr. Suhy is not aware of Neo4j Inc or other resellers providing competitive responses to the procurement. Suhy Dec. ¶49 |
| | Fact 111: Neo4j USA lost multi-year deal with Next Century/MPO adopting ONgDB, amounting to over over $2.2 million in lost revenue. Broad Decl., ¶¶ 22-24, Exhs. 12-13. | DISPUTED: Mr Suhy is not aware of Neo4j USA having a multi-year deal with Next Century / MPO which it could have lost in the first place.<br><br>The evidence Plaintiffs provide with respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability." Broad Decl., Exh. 13. |
| Claim 4: False Designation of Origin Against GFI and the PT Defendants | | |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| 1. used in commerce any word, false designation of origin, false or misleading description, or representation of fact | **Fact 112:** Defendants' false and misleading statements that ONgDB is a "free and open" drop-in replacement under the AGPL for equivalent versions of paid-for commercially licensed Neo4® EE were made in commerce through the internet via their websites and Twitter, as well as emails sent to consumers. Ratinoff Decl., Exhs. 18, 21, 25, 29, 42-46, 49-51, 54-55, 57-58, 60, 62-66, 67-70, 72-74, 93, 99-104, 108, 113-114; *see also* Facts 78-80. | DISPUTED: The statements made are not misleading or false.  ONgDB is a drop in replacement for Neo4j distributions.  ONgDB is free and open - it has no limitations on number of cores, number of cluster instances, etc - while Neo4j Enterprise commercial packages have legal terms limiting these features making them not free and open.<br><br>To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
|  | **Fact 113:** Defendants' statements that ONgDB is a "free and open" drop-in replacement under the AGPL for equivalent versions of paid-for commercially licensed Neo4® EE were false and misleading because Defendants did not have the right to replace the Neo4j Sweden Software License with the AGPL. *See* Facts 78-93. | DISPUTED: ONgDB is a free and open drop-in replacement.  iGov or Suhy talk about free and open meaning that there were no limitations on the number of cores or cluster instances. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Furthermore - Neo4j Sweden still uses the AGPL license with the AGPL preamble.  They added the commons clause restriction which defendants question - but they added this to the AGPL license which is known as a free and open source license.  Had they removed the preamble or just copied the terms they liked from the AGPL into a new license then the story may be different.<br><br>To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
| | **Fact 114:**  Defendants' statements ONgDB is a "free and open" drop-in replacement under the AGPL for equivalent versions of paid-for commercially licensed Neo4® EE were false and misleading because ONgDB was not of the same quality as if it were compiled by Plaintiffs. Rathle Decl. ¶¶ 19-22, 29-34; Ratinoff Decl., Exh. 3 at 216:2-218:6; Exh. 31 at 161:23-163:12, 168:14-169:6. | DISPUTED:  These statements are true. They are also not misleading.  ONgDB is a superset of Neo4j as it forks and does not modify the core code.  All versions of ONgDB (even 3.5 ) are drop in replacements for neo4j community and enterprise versions of the same version number. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | If different people compile the same code using the same build configuration - then there will not be any quality differences between the 2 compiled distributions. In fact - Neo4j does not technically compile their code, the build system they use from atlassian does the job. It should be noted that the GFI build system also uses atlassian tooling and automation.<br><br>To the contrary, the statements are true. First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393 The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A<br><br>When ONgDB and Neo4j Enterprise share the same code base - the compiled distributions are identical from a functionality and feature perspective. Only the metadata timestamps of the compile time differ which has no effect on the quality. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | ONgDB ensures that the same JVM and other parameters are used as the Neo4j compiled binaries - there are no quality differences because of the fact that the source code across versions using the same code are the same. |
| | **Fact 115:** Since GFI introduced modifications to ONgDB in an attempt to keep pace with the closed Neo4j® EE releases, the potential for stability and compatibility issues with ONgDB increases. *See* Rathle Decl., ¶¶ 29-24; *see also* Ratinoff Decl., Exh. 31 at 158:18-160:5, 161:23-163:12; Exh. 3 at 223:1-224:9; Exh. 40. | DISPUTED: GFI does not modify the core code it keeps in sync from the Neo4j official GitHub repository. The same can be said about Neo4j - and historically they have had many stability and other issues across different releases. ONgDB skipped over some 4.x releases as it waited for Neo4j Inc to address issues and tickets relating to the releases before GFI felt it was stable enough to upgrade. GFI conducts about 64,000 tests for each build. Nussbaum Depo., 166:18-168:13. |
| | **Fact 116:** ONgDB does not include every closed enterprise feature in the equivalent version of Neo4j® EE. Ratinoff Decl., Exh. 38 at 2:12-17, 4:15-22, 5:4-6:21; Exh. 3 at 127:19-128:17. | DISPUTED: Versions of Neo4j Enterprise below 3.5 had the same code and therefore has every equivalent feature of the corresponding ONgDB version that did not change the source code. Only ONgDB 3.5 and higher do not include every enterprise feature and defendants don't claim that ongdb 3.5 and above have every feature.<br><br>See fact 32.<br>ONgDB (AKA ONgDB Enterprise) 3.5.11 is Neo4j 3.5.11 Core + the enterprise features Neo4j Inc removed from the code base as of v3.5. This shows we are not saying we have every feature - the features are only the ones removed from the code base as of v3.5 |
| | **Fact 117:** GFI admitted that after ONgDB v3.5.4, it could not "reliably guarantee that it was a drop-in replacement" for the same version number of Neo4j® EE and was unwilling to do the testing to make such integration and compatibility guarantees. Ratinoff Decl., Exh. 31 at 186:24-188:17, 188:23-189:23. | **DISPUTED** – GFI conducts tests on ONgDB to ensure its quality and compatibility.<br><br>**UNDISPUTED** GFI has not verified that ONgDB versions after 3.5.4 are drop in replacements for the equivalent version of Neo4j EE |
| 2. which is likely to cause confusion or mistake, or to | | |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| deceive, as to sponsorship, affiliation, or the origin of the goods or services in question. | | |
| (a) strength of the mark | The Neo4j® Mark is inherently distinctive and Plaintiffs have used it in commerce since 2007, and as a result has gained strong brand recognition via various awards and recognition in the graph database software market.  Broad Decl., ¶¶ 2-19, Exhs. 1-11. | **DISPUTED**: The word Neo4J is used to describe various software versions and companies, so it is not distinct, and the recognition is not as a company brand but as a type of graph database widely distributed on GitHub under open source licenses. Suhy Dec. 50 |
| (b) relatedness of the goods and similarity of sight, sound and meaning | Defendants promote ONgDB as Neo4j® EE except that they are free and licensed without restrictions under the AGPL.  Ratinoff Decl., Exhs. 18, 21, 25, 29, 42-46, 49-51, 54-55, 57-58, 60, 62-66, 67-70, 72-74, 93, 99-104, 108, 113-114. | DISPUTED:  The website content clearly says that there are no restrictions in usage of cores or number of instances, something the commercial edition enforced via legal terms.  These features have no usage restrictions in ONgDB.<br><br>Exhibit 19 states:  "**They have no restrictions on the number of cluster instances or cores** that the commercial licensed packages impose!"<br><br>Exhibit 42 states: "More agencies are adopting it as they learn about it. ONgDB takes Neo4j core (which is open source) and adds enterprise features into it, all 100% free and open, with no **limits on cores or cluster instances** that 'commercial subscriptions' impose.<br><br>Exhibit 43 states:  1. You do not have to pay any licensing fees for the software you requested. Neo4j Enterprise < 3.5 and ONgDB (Open Native Graph Database) Enterprise (all versions) are available to use 100% free, in production.<br><br>Exhibit 43 states: |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | More agencies are adopting ONgDB over Neo4j as they learn that it is just the free and open Neo4j enterprise alternative.<br>ONgDB takes Neo4j core (which is open source) and adds enterprise features into it, **all 100% free and open, with no limits on cores or cluster instances that 'commercial subscriptions' impose.**<br><br>The exhibits cited do not support the proposition. To the contrary, GFI consistently uses <u>language distinguishing ONgDB from Neo4j EE such as</u> "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation."  See Responses to Facts 59-64.  And  Exhibit 93 also states:  "What is ONgDB:  Open Native Graph DB is an open source fork of #Neo4j, that picks up prior to Neo4j, Inc.'s removal of enterprise code from the main Github repository." |
| (c) evidence of actual confusion; | **Fact 118:** Defendants' interchangeable use of "Neo4j Enterprise" and "ONgDB" misleads consumers into mistakenly believing that ONgDB and Neo4j® EE were one and the same.  Ratinoff Decl., Exhs. 35, 40, 42-44, 46-47, 53, 55-58, 76, 100, 130-131, 134-135. | **DISPUTED:**  Defendants to do mislead consumers about ONgDB and Neo4j Enterprise.  The statements are true for some versions of Neo4j Enterprise and ONgDB.  Defendants clearly communicate what ONgDB is, what it's origin is.  GFI consistently uses <u>language distinguishing ONgDB from Neo4j EE such as</u> "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation."  See Responses to Facts 59-64.  And Exhibit 93 also states:  "What is ONgDB:  Open Native Graph DB is an open source fork of #Neo4j, that picks up prior to Neo4j, Inc.'s removal of enterprise code from the main Github repository." |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Defendants have never mislead and tried to confuse people into thinking ONgDB is just another name for Neo4j Enterprise.  In fact defendants work hard at educating the community about the facts.<br>The cited emails are hearsay and do not establish compatibility issues.  Rather, Exhibit 115 demonstrates an attempt to use a desktop tool inappropriately with a server application.  Ratinoff Decl., Exh. 31 at 232:5-25.  Nothing in the email demonstrates that there would be any compatibility issues when ONgDB is used as a server application. |
| | **Fact 119:** Defendants' misrepresentations about ONgDB being "free and open" drop-in replacement/equivalent under the AGPL caused actual confusion over Defendants' unauthorized modification to the Neo4j Sweden Software License and justification for doing so. *See* Ratinoff Decl., Exhs. 40, 49, 55, 118-119, 131, 133-134. | DISPUTED: the statements made are not misrepresentations.   ONgDB is a drop in replacement of Neo4j community and enterprise versions with the same version number. ONgDB is a superset of Neo4j and does not modify the Neo4j core code.  Furthermore - the combined term "drop-in replacement/equivalent" is not used.<br>To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A The cited emails are hearsay and do not establish compatibility issues.  Rather, Exhibit 115 demonstrates an attempt to use a desktop tool inappropriately with a server application.  Ratinoff Decl., Exh. 31 at 232:5-25.  Nothing in the email demonstrates that there would be any compatibility issues when ONgDB is used as a server application. |
| | **Fact 120:** GFI's use of the Neo4j® Mark to promote ONgDB resulted in customers choosing ONgDB over Neo4j® EE and encountering compatibility issues.  Ratinoff Decl., Exh. 115-116; Exh 31 at 230:12-233:10; Exh. 3 at 207:12-209:3. | To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A The cited emails are hearsay and do not establish compatibility issues.  Rather, Exhibit 115 demonstrates an attempt to use a desktop tool inappropriately with a server application.  Ratinoff Decl., Exh. 31 at 232:5-25.  Nothing in the email |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | demonstrates that there would be any compatibility issues when ONgDB is used as a server application. |
| | **Fact 121:** Consumers chose ONgDB over Neo4j® EE based on Defendants' misrepresentations about ONgDB being "free and open" drop-in replacement/equivalent under the AGPL, including NextCentury and the MPO, Tufin, the IRS, Department of Homeland Security (DHS) and others. Ratinoff Decl., Exhs. 35, 40, 47-51, 53, 100, 120, 127, 133-135; Exh. 3 at 54:17-55:1, 142:15-144:20, 224:13-23, 227:3-8, Exh. 31 at 191:15-24, 194:23-25, 195:13-18, 196:22-197:24; Exh. 38 at 23:14-24:4; Broad Decl., ¶¶ 20-24, Exhs. 12-13. | DISPUTED:  USA concedes consumers decided to use ONgDB because it was free. Dkt. 98, p. 2:12-13; p. 32:6:10.

Price is the material concern on the purchase,  not the license or drop in capability. This is obvious in the analysis. Consumers can test whether the software is drop in and review the license. As users of ONgDB do not sell the software, whether the commons clause is valid or not has no impact. Under the AGPL, if you use the open source software internally, as for example what the IRS does, there is no issue with the commons clause. Consumers do not face any copyright infringement claim from Sweden as they are licensed under the AGPL. Suhy Dec. ¶44

The terms mentioned are not misrepresentations about ONgDB.  They are true.
Defendants do not use the term "drop-in replacement/equivalent".  ONgDB is free and open - it still contains all the AGPL terms that make it so. All the agencies listed use ONgDB for free. Furthermore - the commons clause would have no effect on the agencies mentioned from Mr Suhy's knowledge. Suhy Dec. ¶43

Plaintiffs present no evidence of a single person or entity that would have made that choice based on the statements in defendants' websites.

Most people do not make million dollar decision to decide on the use of a database from website statements.  Indeed, the evidence Plaintiffs provide |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | with respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability." Broad Decl., Exh. 13. |
| (d) marketing channels and likelihood of expansion | Fact 122: Defendants continue to target the same potential users of graph database platforms and software and use the same channels via the internet. *See, e.g.,* Ratinoff Decl., Exhs. 14-15, 18, 25, 29, 37, 45-55, 57, 60-61, 65-66, 76-77, 118-119, 120, 127, 130-132, 134-135. | UNDISPUTED: Objection this fact does not support the claim. Because ONgDB is an unmodified fork of Neo4j Core code, and a superset of Neo4j Core - then anyone who is currently using Neo4j commercial or open source distributions can switch over to ONgDB.   In other words - people that use Neo4j are the people who would want to switch to ONgDB if they wanted enterprise features with no limitations on cores or cluster instances for free. Suhy Dec. ¶45 |
| | Fact 123: Neo4j USA and the PT Defendants competed for the same contracts in the government sector. Ratinoff Decl., Exhs. 42-51, 54-55, 100, 120, 127, 130-135; Broad Decl., ¶¶ 20-24, Exhs. 12-13. | DISPUTED:  To Mr Suhy's knowledge, Neo4j USA does not directly respond to contracts.  Neo4j partners bid on a contracts. Purthink has no contracts with the government.  Igov does not license software to the government. Suhy Dec. ¶46 |
| (e) intent | Fact 124: Defendants' use of the Neo4j® Mark to promote Plaintiffs' software with an improperly modified copyright license shows that they intend to copy them and confuse the public. *See supra* Facts 78-102. | DISPUTED:  Defendants do not use the Neo4j® Mark, they use the neo4j word in a descriptive manner.  Suhy Dec. ¶41 Defendants aim at educating the public not causing confusion.  Mr. Suhy did not modify any copyrighted content which is owned by USA, it only updated Sweden's  License.txt file which the free software foundation owns the copyright for under the express terms of the AGPL.  Suhy Dec. ¶29 <br><br> Furthermore - when Suhy made the AGPL license verbatim - the commit message clearly states the intention: |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | The commit which replaced the modified License.txt file copyrighted to the FSF has a commit message which clarifies the intent of replacing the modified license with the verbatim.<br><br>**"Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license."**<br><br>ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. |

**EXHIBIT A**

**Attestations**

I attest that the evidence cited by defendants John Mark Suhy, Purethink, LLC and iGov, Inc. herein fairly and accurately supports or disputes the facts asserted.

Dated: 1/15/2021

/s/ Adron G. Beene
Adron G. Beene


I attest that the evidence cited by defendants Graph Foundation, Inc. herein fairly and accurately supports or disputes the facts asserted.

Dated: 1/15/2021

/s/ John D. Pernick
John D. Pernick

**FILER'S ATTESTATION**

I, Adron G. Beene, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with N.D. Cal. Civil Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

Dated: January 15, 2021

_____ /s/ Adron G. Beene _____
Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney At Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Attorney for Defendants
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

842\3658210.3

**EXHIBIT A**

53

Case 5:18-cv-07182-EJD   Document 100   Filed 01/15/21   Page 96 of 101

# EXHIBIT B

SER_2466

### DEFENDANTS' CONSOLIDATED SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Claim 1: Neo4J USA's Trademark Infringement Claim** | | |
| Plaintiff Neo4j Inc. ("USA") Does not own a protectable trademark in Neo4J which is a required element of a trademark claim | Fact 125: **USA Fka, Neo Techonolgy, Inc. does not own the trademark to Neo4J. Neo4J Sweden AB, Fka Network Engine for Objects in Lund AB) ("Sweden") owns the trademark to Neo4J.** Beene Dec ¶ 2-7 Exhibits 1, (recital 1, Section 1.6. (b), 1.7, 2.1 (non-exclusive license) Article 3 (Reservation of Rights [to Sweden]) 2 Royalty report on license, 3 (Sweden Neo4J trademark applications and registrations). Dkt. No 56 ¶91 (Neo Technologies, Inc. was incorporated in July 7, 2011 and changed its name to Neo4j, Inc. on August 7, 2017) | |
| | Fact 126: Sweden licensed its Neo4J software and trademarks on a **non-exclusive basis** to USA. Beene Dec ¶ 2-7 Exhibits 1, (recital 1, Section 1.6. (b), 1.7, 2.1 (non-exclusive license) Article 3 (Reservation of Rights [to Sweden]) 2 Royalty report on license, 3 (Sweden Neo4J trademark applications and registrations). | |
| | Fact 127: Sweden retained exclusive ownership of the mark in the license agreement. Beene Dec ¶ 2-7 Exhibit 1, (recital 1, Section 1.6. (b), 1.7, Article 3 (Reservation of Rights [to Sweden]) | |
| | Fact 128: Sweden has in fact made trademark applications claiming ownership of the Neo4J mark throughout the world further providing evidence of Sweden's ownership of the Neo4J mark. Beene Dec ¶ 7, Exhibit 3. | |
| | Fact 129: USA has paid Sweden royalties for the license. Beene Dec ¶ 6, Exhibits 2. | |
| Fraud on the PTO defense | Fact 130: Lars Nordwall, as the COO of USA, knew USA did not own the NEO4J trademark and did not use the trademark since 6/04/2006 which is before USA was formed on July 7, 2011. Beene Dec. Ex. 6 (NEO4J trademark application, principle register) and Dkt. No 56 ¶91 (Neo Technologies, Inc. was incorporated in July 7, 2011 and changed its name to Neo4j, Inc. on August 7, 2017) | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| Naked license defense | **Fact 131:** USA provides no evidence that Sweden controlled quality on Sweden's software the years before the software and trademark was licensed to USA. Declaration of John Mark Suhy (Suhy Dec.) ¶51. | |
| | **Fact 132:** The License Agreement from Sweden to USA has no quality control provisions. Beene Dec ¶ 2-7 Exhibit 1 (no quality control provision in license agreement.) | |
| Defendants did not infringe on USA's limited trademark license when referring to the open source software | **Fact 133:** Sweden is the licensor of the open source version of Neo4J under the AGPL and the owner of the Neo4J trademark. Fact 125 and Ratinoff Dec. Ex 39 at 25:11-13 | |
| Defendants use of Neo4J was nominative which is not infringing. | **Fact 134:** Defendants references Sweden's Neo4J mark to reference Sweden's open source software called Neo4J to describe the software and uses USA's company name and products to identify them in comparative advertisement. Suhy Dec. ¶9 | |
| Defendants use of Neo4J does not suggest sponsorship or endorsement | **Fact 135** Defendants websites, taken as a whole do not suggest sponsorship or endorsement by USA.  Suhy does not have a website. Defendants did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been for marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶9, 16 | |
| PT defendants engaged in no conduct leading to an inequitable result to support Alter Ego Liability | **Fact 136:** The Partner Agreement seeks to prevent PT from dealing in all versions of Sweden's Neo4J open source software when USA is not the licensor under the AGPL and the AGPL freely allows anyone to use the software. Fact 133; Suhy Dec. ¶52 | |
| | **Fact 137:** The purpose of USA' restriction in the Partner Agreement is to prevent any terminated partner from supporting Sweden's open source version of Neo4J which is unlawful. Suhy Dec. ¶4, 53 | |
| | **Fact 138:** USA wrongfully and successfully asserted the unlawful restriction to interfere with PT efforts to get business from the IRS. Suhy Dec. ¶7, 54, Ex. 1 | |

EXHIBIT B

2

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| The PT Defendants did not used the Neo4j® Mark without Neo4j USA's authorization to promote ONgDB | **Fact 139:** The PT defendants are not using the Neo4J mark to sell USA's commercial software. Suhy Dec. ¶31 | |
| | **Fact 140:** USA agreed Sweden owns the intellectual property, including marks for Neo4J. Fact 125. | |
| | **Fact 141:** Here there is an issue of fact on the false designation of origin element as ONgDB is a fork of Sweden's open source software licensed under the AGPL. Suhy Dec. ¶19 | |
| | **Fact 142:** USA even admits, the open source version has the same great features as the commercial version. Suhy Dec. ¶55; Beene Dec. Ex. 8 | |
| | **Fact 143:** Whether ONgDB is a "drop in" replacement for USA's "commercial" Neo4J software, is a disputed issue of fact. | |
| | **Fact 144:** Data and queries, the key function of a databases, from either version work on both versions. Suhy Dec. ¶56 | |
| ONgDB is a Drop in replacement to versions of Neo4J | **Fact 145:** USA, in its website, stated that its commercial Enterprise version of Neo4J has "same great features" as the open source version of Neo4j.  Suhy Dec. ¶55, Ex 3 | |
| | **Fact 146:** ONgBD allows users of other versions of Neo4J (including older versions of commercial and open source) to drop in the files from the same version number and operate the same data and run queries on it, which is the core functionality of a database. Defendants have not heard of any consumer suggest otherwise. Suhy Dec. ¶57 | |
| Use of USA documentation is licensed Content and is not actionable on any claim. | **Fact 147:** Any user of open source software from Sweden's Neo4J GitHub repository are allowed to use all content on the site. This is permitted under the GitHub Terms of Service.  GitHub Terms of service A. 4 definition of Content and ¶ D 5 license. (including "You may grant further rights… " inferring rights to End Users under the GitHub license may **not** be limited.) Suhy Dec. ¶58 Beene Dec. Ex. 9. | |
| Defendants product and services are not readily identifiable without use of the Neo4J trademark | **Fact. 148:** Neo4J is a type of database that must be identified so consumers looking for the database may find it. Defendants properly used Neo4J to identify companies and products in marketing and | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | comparative advertisements to provide knowledgeable consumers with information for fair competition. Suhy Dec. ¶2, 59 | |
| **2. False Advertising Claims 2nd, 3rd and 4th causes of action.** | | |
| ONgDB is based on the open source version of Neo4J licensed under the AGPL and is free. | Fact 149: ONgDB is a free fork of Neo4J software licensed under the Sweden's AGPL. Suhy Dec. ¶36 | |
| | Fact 150: The AGPL is a free open source license. AGPL Preamble, Ratinoff Dec. Ex. 39, 1-2 | |
| Consumer did not materially rely on the defendants' representations to determine to use ONgDB software for free instead of paying USA money for a commercial version of Neo4J. | Fact 151: Sophisticated consumers of databases make purchase decisions based on price. Suhy Dec. ¶44; USA concedes consumers decided to use ONgDB because it was free. Dkt. 98, p.2:12-13 p. 32:6:10. Information Analysis Incorporated's GSA price list has a $500,000 bid for a Neo4J term license. (Beene Dec. Exhibit 5, p.1.) Beene Dec Ex. 7 | |
| An ONgDB licensee that only internally uses the software does not violate the commons clause-valid or not. | Fact 152: The common clause, valid or not, only restricts licensees from selling the software. It does not prevent a licensee from internally using the software. Ratinoff Dec. Ex 39 at 25:11-13, Suhy Dec. ¶36, 60, Ex. 2 | |
| | Fact 153: Not all versions of Sweden's open source software are subject to the common clause. Suhy Dec. ¶61 | |
| | Fact 154: A licensee who wants to sell an open source Neo4J fork, may do so with a prior version of Neo4j where the license does not include the added common clause if they have concerns of the validity of the commons clause. Suhy Dec. ¶62 | |

| **Claim or Defense** | **Moving Party's Undisputed Facts/Supporting Evidence** | **Opposing Parties' Response/Supporting Evidence** |
|---|---|---|
| The commons clauses added to the AGPL does not bar professional services. | <u>Fact 155:</u> Even if valid, the commons clause only bars services that "consists, entirely or substantially of the Software or the functionality of the Software."  Ratinoff Dec. Ex 39 at 25:681-693 | |
| | <u>Fact 156:</u> Professional services to support a licensee of open source Neo4j do not "consists, entirely or substantially of the Software or the functionality of the Software."  Ratinoff Dec. Ex 39 at 25:681-693, Suhy Dec. ¶36, 60, Ex.2 | |

**Attestation**

I attest that the evidence cited by herein fairly and accurately supports or disputes the facts asserted. Dated:

1/15/2021

<u>/s/ Adron G. Beene</u>
  Adron G. Beene

EXHIBIT B

1  John V. Picone III, Bar No. 187226
   jpicone@hopkinscarley.com
2  Jeffrey M. Ratinoff, Bar No. 197241
   jratinoff@hopkinscarley.com
3  HOPKINS & CARLEY
   A Law Corporation
4  The Letitia Building
   70 South First Street
5  San Jose, CA  95113-2406

6  *mailing address:*
   P.O. Box 1469
7  San Jose, CA 95109-1469
   Telephone:      (408) 286-9800
8  Facsimile:      (408) 998-4790

9  Attorneys for Plaintiffs and Counter-Defendants
   NEO4J, INC. and NEO4J SWEDEN AB

10

                        UNITED STATES DISTRICT COURT
11
                    NORTHERN DISTRICT OF CALIFORNIA
12

13 | NEO4J, INC., a Delaware corporation, and | CASE NO.  5:18-cv-07182-EJD |
   | NEO4J SWEDEN AB, a Swedish | |
14 | corporation, | **DECLARATION OF PHILIP RATHLE IN** |
   | | **SUPPORT OF PLAINTIFFS'** |
   |                    Plaintiffs, | **CONSOLIDATED MOTION FOR** |
15 | | **SUMMARY JUDGMENT** |
   | v. | |
16 | | Date:        March 25, 2021 |
   | PURETHINK LLC, a Delaware limited | Time:        9:00 a.m. |
17 | liability company, IGOV INC., a Virginia | Dept.:       Courtroom 4, 5th Floor |
   | corporation, and JOHN MARK SUHY, an | Judge:       Hon. Edward J. Davila |
18 | individual, | |
   | | |
19 |                    Defendants. | |

20 | AND RELATED COUNTERCLAIM. |

21

22 | NEO4J, INC., a Delaware corporation, and | CASE NO.  5:19-CV-06226-EJD |
   | NEO4J SWEDEN AB, a Swedish | |
23 | corporation, | |
   | | |
24 |                    Plaintiffs, | |
   | | |
25 | v. | |
   | | |
26 | GRAPH FOUNDATION, INC., an Ohio | |
   | corporation, GRAPHGRID, INC., an Ohio | |
27 | corporation, and ATOMRAIN INC., a | |
   | Nevada corporation, | |
   | | |
28 |                    Defendants. | |

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3655474.7

DECLARATION OF PHILIP RATHLE IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT;
5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1     I, Philip Rathle, declare as follows:

2        1.     I am the Vice President of Products at Neo4j, Inc. ("Neo4j USA").  I have held

3     that position since December 2013 and prior to that worked in a similar position as Senior

4     Director of Products at Neo4j USA, beginning May 2012.  I am responsible for product

5     management of the Neo4j product portfolio, which includes the Neo4j® graph database platform

6     ("Neo4j® Platform"). My responsibilities include product strategy and product roadmap,

7     including specifying what features are to be built in successive versions of the Neo4j® Platform,

8     as well as the design and behaviors of those features. My team and I work closely with the Neo4j

9     Product Engineering team who are responsible for building and testing each successive version of

10    the Neo4j® Platform and who comprise of over 100 engineers primarily employed by Neo4j

11    Sweden AB.

12       2.     I submit this declaration on behalf of Plaintiffs in support of their Consolidated

13    Motion for Summary Judgment.  The facts stated in this declaration are based on my personal

14    knowledge, except with respect to those matters stated to be on information and belief, and as to

15    those matters, I believe them to be true.  If called upon to testify as a witness in this matter, I

16    could and would do so competently.

17       3.     Neo4j USA is the parent corporation of Neo4j Sweden AB ("Neo4j Sweden"),

18    which in turn is as a wholly owned subsidiary of Neo4j USA.  As Vice President of Products for

19    Neo4j USA, I work with Neo4j Sweden and other subsidiaries world-wide as referenced above.

20    This includes working with Neo4j Sweden's continuing development of the source code

21    underlying the software for the Neo4j® Platform and various quality assurance and testing on

22    software package builds compiled from this source code.  I also work closely with Neo4j

23    Marketing, Developer Relations, Field Engineering, Support, Customer Success, and Professional

24    Services, to ensure they understand the Neo4j® Platform and its capabilities, and can

25    communicate about it and use it as appropriate to their role. I also spend a great deal of time

26    meeting with customers about their use of the Neo4j® Platform and their needs.

27       4.     As Vice President of Products for Neo4j USA, I have been involved in strategic

28    decisions concerning the world-wide licensing strategy for the Neo4j® Platform.  Neo4j Sweden

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3655474.7                                              - 1 -
DECLARATION OF PHILIP RATHLE IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT;
5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_2473

1   is the owner of all copyrights related to the Neo4j® Platform, including the source code, and has

2   licensed those copyrights to Neo4j USA in connection with the making, use, creation of

3   derivative works, sale, offer to sell, importation, performance, display, reproduction and

4   distribution of the copyrighted material, and the sublicensing of such rights in the United States.

5   This includes Neo4j USA being solely responsible for the commercial licensing of Neo4j®

6   Platform products and managing the Neo4j Solution Partner program in the United States.

7          5.      From 2010 until present, Neo4j Sweden and Neo4j USA's business model

8   followed the "multi-licensing" model in the software industry. In this scenario, one option is a

9   proprietary software license, which allows the possibility of creating proprietary applications

10  derived from it, while the other license is a "copyleft" open-source license, which requires public

11  release under the same open-source license of any derived work.  Under this model, Plaintiffs

12  offered two products, Neo4j® Community Edition ("Neo4j® CE") along with a richer and more

13  feature-robust Enterprise Edition ("Neo4j® EE") designed for commercial deployment, both

14  products engineered by Neo4j Sweden.

15         6.      Neo4j® CE is offered by Plaintiffs for royalty-free use, subject to the terms of the

16  GNU General Public License version 3 ("GPL") license and provides a limited feature set.  For

17  example, Neo4j® CE limits the ability to operate on only one machine at a time (i.e. no

18  clustering), work with only one database at a time (i.e. no "multi-database" capability).  It also

19  has limited operational features, security features, and is offered without support contracts or

20  warranties from Neo4j USA and Neo4j Sweden (collectively, "Plaintiffs").

21         7.      Neo4j® offers its EE under commercial licensing terms, including technical

22  support, and is the primary source of revenue for Plaintiffs. Neo4j® EE provides customers with

23  added advanced scalability, availability, security, and operational features. Users requiring those

24  additional features for more advanced commercial operation, including unlimited number of user

25  databases, together with support, license use of the Neo4j® Platform through Neo4j® EE under

26  commercial terms.  Commercial users benefit from a turn-key solution with the assistance of

27  authorized Neo4j solution partners, typically avoiding drawn-out development processes. Neo4j®

28  EE is a full superset of Neo4j® CE, containing significant additional functionality intended for

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3655474.7                                            - 2 -
DECLARATION OF PHILIP RATHLE IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT;
5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1   commercial use. In the United States, a commercial license to Neo4j® EE entitled the purchaser

2   to use it in a custom setting composed of proprietary modules with industry standard terms,

3   receive support or professional services from Neo4j USA, and the right to receive periodic

4   software updates, which included feature updates, bug and security fixes and assistance. Both

5   Neo4j® EE and Neo4j® CE undergo extensive testing and review as described below.

6        8.    Plaintiffs originally offered Neo4j® EE  under a paid-for commercial license and

7   also made the source code available under the GNU Affero General Public License, version 3

8   ("AGPL"), to allow testing and trial use, and non-commercial use, following well-accepted dual-

9   licensing model that has been, or is being, used by software companies, such as Oracle (with

10   MySQL), IBM (with Linux), and MongoDB.

11        9.    Purchasing a commercial license supported the continued development and

12   improvement of Neo4j® EE and the Neo4j® Platform as a whole, including the development of

13   source code for proprietary modules made for enterprise uses and overall improvements to the

14   source code underlying Neo4j® CE.  Importantly, the commercial license for Neo4j® EE also

15   relieved customers of the "copyleft" obligations included in the AGPLv3, which obligated end

16   users to open source any applications that access the database either locally or over a network.

17   Attached hereto as **Exhibit 1** is a true and correct copy of an exemplar of the AGPL as previously

18   used by Neo4j Sweden for Neoj4® EE version 3.3 (and earlier versions), which is still available

19   on Plaintiffs' GitHub repository.[1]

20        10.   Neo4j® EE version 3.3 was the first version of Neo4j® EE to include a small

21   number of closed-source features for increased security as needed by commercial users of the

22   Neo4j® Platform, namely Kerberos and intra-cluster encryption. The source code for those two

23   features were not included in Neo4j's public GitHub source code repository, but were instead

24   built and managed inside a private repository. All of the tests to Neo4j® EE version 3.3

25

---

26   [1] GitHub provides hosting for software development and version control. It offers software
27   distributed version control, source code management, as well as access control and collaboration
     features such as bug tracking, feature requests, task management, and continuous integration.
     GitHub offers its basic services free of charge. Its more advanced professional and enterprise
28   services are available on commercial terms.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3655474.7                                    - 3 -
DECLARATION OF PHILIP RATHLE IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT;
5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_2475

1  conducted by Plaintiff were done so specifically accounting for these features and the interplay

2  between that functionality and the other classes of code within the software.

3      11.    In May 2018, Plaintiffs released Neo4j® EE version 3.4, which they continued to

4  offer under a dual license.  Attached hereto as **Exhibit 2** is a true and correct copy of a May 17,

5  2018 announcement I published on Neo4j USA's website regarding the release of Neo4j® CE

6  and Neo4j® EE version 3.4.  However, Neo4j Sweden replaced the AGPLv3 with a stricter

7  license, which included the terms of the AGPLv3 with additional restrictions and further

8  information about the owner and author of the copyrights underlying the source code (the "Neo4j

9  Sweden Software License"), which in relevant part stated:

10     NOTICE

11     This package contains software licensed under different licenses, please refer
       to the NOTICE.txt file for further information and LICENSES.txt for full
12     license texts. Neo4j Enterprise object code can be licensed independently from
       the source under separate commercial terms. Email inquiries can be directed to:
13     licensing@neo4j.com.    More   information   is   also   available
       at:https://neo4j.com/licensing/   The software ("Software") is developed and
14     owned by Neo4j Sweden AB (referred to in this notice as "Neo4j") and is
       subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE
15     Version 3, with the Commons Clause as follows:
                              * * *
16     "Commons Clause" License Condition

17     The Software is provided to you by the Licensor under the License, as defined
       below, subject to the following condition. Without limiting other conditions in
18     the License, the grant of rights under the License will not include, and the
       License does not grant to you, the right to Sell the Software.  For purposes of
19     the foregoing, "Sell" means practicing any or all of the rights granted to you
       under the License to provide to third parties, for a fee or other consideration, a
20     product or service that consists, entirely or substantially, of the Software or the
       functionality of the Software. Any license notice or attribution required by the
21     License must also include this Commons Cause License Condition notice.

22  Attached hereto as **Exhibit 3** is a true and correct copy of an exemplar of the Neo4j Sweden

23  Software License used with Neo4j® EE version 3.4, which is still available on Plaintiffs' GitHub

24  repository.

25     12.    This marked an important transition for newer versions of the source code for

26  Neo4j® EE: from being "open source", to being "source available." More specifically: while

27  allowing code to be publicly viewable and used within a certain limited scope of usage, the Neo4j

28  Sweden Software License imposes commercial restrictions that included third-party resale and

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3655474.7                    - 4 -
DECLARATION OF PHILIP RATHLE IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT;
5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_2476

1    services activity. This new license, applied to Neo4j® EE version 3.4 and several pre-release

2    versions of Neo4j® EE version 3.5, and are sufficiently restrictive so as to no longer qualify as

3    "open source" under industry-accepted definitions of open source.    Plaintiffs made the decision to

4    modify the license terms used to distribute Neo4j® EE to prevent third parties from monetizing its

5    software while not contributing back to the software or companies who are producers of the

6    software.  Plaintiffs also wanted to be able to control their reputation and brand by certifying and

7    approving services partners working with the flagship commercial version of its product.

8        13.    In November 2018, Plaintiffs officially released Neo4j® EE version 3.5 solely under

9    a proprietary and commercial license, while they continued to offer the source code for Neo4j® CE

10   under the GPL open source license.  This meant that Plaintiffs were no longer publishing source

11   code for new versions of Neo4j® EE to their public GitHub repository.  This was done to simplify

12   the Neo4j® Platform's licensing model, as well as to more clearly communicate the commercial

13   intent of the Neo4j® EE product, and prevent third parties from engaging parasitic behavior and

14   diverting funds from the Plaintiff to themselves in closed, proprietary commercial projects.

15   Attached hereto as **Exhibit 4** is a true and correct copy of November 15, 2018 announcement

16   regarding the release of Neo4j® CE and Neo4j® EE version 3.5 that I published on Neo4j USA's

17   website.

18       14.    Prior to its official release, Plaintiffs published several beta versions of the source

19   code for Neo4j® EE v3.5 via their GitHub repository subject to the Neo4j Sweden Software

20   License.  Plaintiffs did so in order to obtain user input and to make it easier to identify potential

21   bugs that could be fixed prior to its official release.  Neo4j® EE version 3.5.0-RC1 was the last

22   pre-release beta version made available via GitHub.  Thereafter, Plaintiffs only made the source

23   code for Neo4j® CE available under the GPL via Github and only distributed Neo4j® EE as

24   executable object code under a commercial license.

25       15.    Both Neo4j® EE and Neo4j® CE have been subject to trademark policies and

26   guidelines published on Plaintiffs' website.  These policies made clear that to the extent any

27   authorized modifications are made to Neo4j® Software, such modified software should indicate

28   so and no longer bear the Neo4j® Mark. Neo4j USA did this to ensure that consumers knew

842\3655474.7                                    - 5 -

DECLARATION OF PHILIP RATHLE IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT;
5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1   when they were receiving genuine Neo4j® Software that was quality assured by Plaintiffs rather

2   than third-party modified open source versions thereof.

3          16.     Attached hereto as **Exhibit 5** is a true and correct copy of a July 10, 2017 capture

4   of Neo4j USA's Trademark Policy located at https://neo4j.com/trademark-policy/, which was

5   downloaded from the Wayback Machine website, a digital archive of the World Wide Web

6   (https://web.archive.org).  This version of Neo4j USA's Trademark Guidelines was updated on

7   October 13, 2015, and to my knowledge publicly available on Neo4j USA's website between

8   October 15, 2015 and April 2, 2019.

9          17.     Attached hereto as **Exhibit 6** is a true and correct copy of a September 26, 2019

10  printout of Neo4j USA's Trademark Guidelines.  This version of Neo4j USA's Trademark

11  Guidelines has been publicly available on Neo4j USA's website since April 3, 2019.

12         18.     Attached hereto as **Exhibit 7** is a true and correct copy of an August 8, 2020

13  capture of Neo4j USA's Trademark Guidelines located at https://neo4j.com/trademark-policy/,

14  which was downloaded from the Wayback Machine website, a digital archive of the World Wide

15  Web (https://web.archive.org).  Again, this version of Neo4j USA's Trademark Guidelines has

16  been publicly available on Neo4j USA's website since April 3, 2019.

17         19.     As Vice President of Products, I am also involved in and work with Neo4j Sweden

18  AB's continuing development of the source code underlying the software for the Neo4j®

19  Platform and various quality assurance and testing on software package builds compiled from this

20  source code.  Neo4j Sweden AB ("Neo4j Sweden") relies on more than 100 engineers, dozens of

21  engineering-years of build and test infrastructure, and millions of dollars annually in

22  infrastructure costs alone in continuing to improve Neo4j® EE.

23         20.     Included in our tests is approximately 150,000 unit and integration tests that run

24  automatically on every code change to each new version of both Neo4j® CE and Neo4j® EE. We

25  also have an extensive suite of stress and robustness tests, which subject the database product

26  artifacts that we build to complex randomized scenarios that include deliberately-induced

27  machine outages, to ensure that  distributed computing ("clustering") features, which are unique

28  to Neo4j® EE, adequately protect customers and their data from the kinds of network, server, and

842\3655474.7                                        - 6 -
DECLARATION OF PHILIP RATHLE IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT;
5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1   software outages that occur in real-world customer environments, providing resilience in the face

2   of technical adversity.

3        21.    Another important kind of test that we have is end-to-end soak testing, which is

4   based on an infrastructure was expensive and time consuming to build.  Plaintiffs have had a team

5   of engineers that are dedicated to building and maintaining this testing framework since at least

6   2014.  This test is only performed on Neo4j® EE releases and not independently performed on

7   Neoj4® CE release. This layer, like the others, leverages a complex proprietary automation suite

8   that simulates how end users would automate and run Neo4j® EE. It access a Neo4j® EE cluster

9   through Neo4j's programmatic software drivers, running realistic load through the system for

10  days at a time, to ensure stable operation over extended periods, simulating customer usage.

11  Neo4j also has a complex benchmarking suite that is run with every candidate release of the

12  Neo4j® EE software, designed to ensure that there are no performance regressions in between

13  releases of software. This includes micro benchmarks, which are highly localized and fine

14  grained; macro benchmarks, which use larger data sets, some of which are obfuscated and

15  anonymized data sets provided by customers for this purpose; and full workloads, which test

16  databases of different size with mixed workloads with high levels of concurrency.

17       22.    In addition to all of the automated testing outlined above, Neo4j USA and Neo4j

18  Sweden's customer-facing technical experts, including Customer Support, Field Engineering

19  (pre-sales), Professional Services (consulting), Product Management (my own team that has

20  included employees of both Neo4j USA and Neo4j Sweden), carry out manual testing of releases

21  as part of our certification process, before they are deemed ready to be shipped to customers.

22       23.    In or about September 2017, I learned that John Mark Suhy had formed a new

23  company called iGov Inc., and that a group within Internal Revenue Service intended to award

24  PureThink a sole-source contract for their so-called "iGov Graph Database" software, which

25  appeared to be compiled using the source code from a version of Neo4j® EE licensed under the

26  AGPL.  On September 19, 2017, Neo4j USA filed a protest objecting to the sole source

27  justification of the intended award.

28  / / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3655474.7                                                    - 7 -
DECLARATION OF PHILIP RATHLE IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT;
5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_2479

24.      In or about October 2017, I learned from iGov's website, www.igovsol.com, that John Mark Suhy was recompiling binaries allegedly from source code underlying Neo4j® EE v3.3, which he called "Neo4j Enterprise" and was advertised as being identical to Plaintiffs' official Neo4j® EE v3.3 binaries.  I downloaded this version distributed by iGov from https://igovsol.com/downloads.htm and found that this software as compiled by Mr. Suhy was not of the same quality as official binary compiled by Neo4j Sweden, and did not include several closed-sourced features and corresponding source code.

25.      In particular, I learned the following from the inspection of Mr. Suhy's recompiled version of Neo4j® EE v3.3:

- Mr. Suhy was using modified versions of older build scripts to assemble iGov's Government Package for Neo4j/Neo4j Enterprise.

- Mr. Suhy did not include key security feature such as kerberos and intra-cluster encryption, which were only available in the official Neo4j® EE v3.3 release.

- Neo4j® EE includes many components ("jar" files). The version made available by Mr. Suhy included many but not all of the components, calling into question whether the software would operate to the same level of capability and quality as Neo4j Sweden's official release of the software. Specifically, two commercial-only libraries, neo4j-server-commercial-3.3.0.jar and neo4j-causal-clustering-commercial-3.3.0.jar did not exist in Mr. Suhy's version of "Neo4j Enterprise."

26.      By recompiling Neo4j® EE v3.3 in the foregoing manner, Mr. Suhy introduced modifications that Plaintiffs would not consider to be of the same quality as if were compiled by Neo4j Sweden.  Mr. Suhy's intermixing of scripts from older versions of Neo4j® EE increased the likelihood of stability issues for end-user customers and the co-mingling of divergent code increases the risk of environment failure and/or loss of database and/or data availability.

27.      After Plaintiffs released Neo4j® EE version 3.4, I learned from iGov's website that it was promoting what it called open source "Neo4j Enterprise" version 3.4.  I downloaded a copy of this software and found that similar to the software iGov released supposedly based on Neo4j® EE version 3.3, this "version 3.4" had been built with older versions of build scripts

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3655474.7                                                  - 8 -
DECLARATION OF PHILIP RATHLE IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT;
5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1    modified by Mr. Suhy, and that the Neo4j Sweden Software License had also been replaced with

2    a generic copy of the APGL in the LICENSE.txt files accompanying iGov's versions of what it

3    called version 3.4 of its own offering it called "Neo4j Enterprise" and ONgDB.

4        28.    Since Plaintiffs were no longer offering the binaries for Neo4j® EE version 3.4

5    under a non-commercial license, iGov's version of what it called "Neo4j Enterprise v3.4" it

6    would be highly unlikely that it would be of the same quality as if were compiled by Neo4j

7    Sweden AB, which is subject to the extensive proprietary testing described above beyond what is

8    publicly available in Neo4j® CE.

9        29.    On or about September 20, 2019, I inspected a copy of ONgDB v3.5.9 that GFI

10   claimed was licensed under the AGPL and purported to mirror Neo4j® EE version 3.5.9, which I

11   obtained from Defendant Graph Foundation's GitHub repository.  Plaintiffs never offered this

12   version of the software as either open source under the AGPL, nor as source available.  ONgDB

13   version 3.5.9 contained 247 Java classes that were released for the first time under the Neo4j

14   Sweden Software License either in (a) Neo4j® EE version 3.4 and were incorporated into

15   Neo4j® EE version 3.5; or (b) Neo4j® EE version 3.5.0-RC1, and were therefore never

16   previously licensed under the AGPLv3.  Additionally, the full underlying source code for the

17   enterprise-only components of Neo4j® EE version 3.5.9 was never made available or released

18   under the Neo4j Sweden Software License, or any open source license.  Specifically, Neo4j® EE

19   version 3.5.9 includes ten versions worth of discrete advances (fixes & improvements critical to

20   the reliable function of the software) not present in the last version of restricted source available

21   software that I understand that ONgDB used as the basis for its software.

22       30.    Also as part of my inspection,  I also reviewed a commit

23   (https://github.com/graphfoundation/ongdb/commit/c0b23b21e051fe12bd01a50d46ca3a7ad9e883

24   74) authored by John Mark Suhy in the ONgDB Github repository where he replaced at least 28

25   LICENSE.txt files that contained the Neo4j® Sweden Software License covering the

26   aforementioned source code files and replaced it with the AGPL.

27       31.    As described above, Neo4j Sweden employs significant propriety testing and

28   quality assurances beyond what is publicly available in Neo4j® CE to create and build Neo4j®

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3655474.7                          - 9 -

DECLARATION OF PHILIP RATHLE IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT;
5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_2481

1    EE version 3.5.  The substantially complex nature of those scripts and tests, combined with the

2    significant multi-year investment in said infrastructure, the large team involved in operating these

3    tests and knowledge and training required to maintain and evolve them, the high cost of running

4    these tests (over $1M/year in infrastructure costs alone), the complex nature of the Neo4j® EE

5    software itself, and the lack of visibility into the code changes being made in all versions

6    subsequent to Neo4j® EE version 3.5-RC, make it improbable that any third party, including

7    John Mark Suhy (iGov & PureThink), Brad Nussbaum and Ben Nussbaum of the Graph

8    Foundation (and AtomRain and GraphGrid), would be able to replicate the same level of

9    reliability, quality, or features of subsequent releases of Neo4j® EE 3.5.x by Plaintiffs.  As a

10   result, there would be an increased potential for instability and compatibility issues in ONgDB

11   software that is compiled in this manner, and that fails to include incremental improvements to

12   the proprietary software.

13          32.     Given the number of engineers that work on developing Neo4j® EE, the amount

14   of man hours they put in and the rigors of Neo4j Sweden's proprietary development and testing

15   protocols, and the long period of onboarding required for each engineer to become familiar with

16   the code and quality processes, it would be virtually impossible for Graph Foundation replicate

17   this.  Consequently, neither Neo4j USA nor Neo4j Sweden would consider ONgDB v3.5.9 to be

18   the exact equivalent both in function and quality as the same version of official Neo4j® EE

19   v3.5.9, and this would be true for any other version of ONgDB 3.5.x that Graph Foundation

20   claims to be the equivalent version of Neo4j EE v3.5.x.

21          33.     When Neo4j Sweden closed off the enterprise source code after Neo4j® EE

22   version 3.5.0-RC1, any changes or additions it made to that code that were not mirrored in

23   Neo4j® CE would not available to developers and end users of Neo4j® EE v3.5.x.  This includes

24   Neo4j 3.5.0, which was the first version certified for General Availability by Plaintiff, and

25   collectively includes critical fixes and other ongoing improvements in closed-off enterprise code,

26   a substantial number of which are in the clustering layer of the software, which is now closed

27   source.  Thus, Graph Foundation would not have received such fixes and improvements, nor have

28   been aware of the precise nature of all of the fixes. As of the date of this declaration, the latest

842\3655474.7                                                      - 10 -

1   version of Neo4j® EE is 4.2.1; and the latest version of the Neo4j® EE 3.5 code line is Neo4j

2   3.5.25. *See* https://neo4j.com/release-notes/. With over twenty proprietary patch releases

3   differentiating the underlying code line of Neo4j® EE 3.5.25, any versions of ONgDB relying on

4   older code would be meaningfully different from version 3.5.0-RC1, the pre-general availability

5   release candidate upon which ONgDB is based.

6       34.   Examples include multiple critical patches introduced by Neo4j Sweden that were

7   only included in the closed enterprise code for Neo4j® EE 3.5.x and were never publicly release

8   under the Neo4j Sweden Software License or the AGPL, or otherwise made publicly accessible or

9   available via Neo4® CE. The specific fixes to the closed Neo4j® EE source code consisted of

10  security and functionality fixes crucial to proper operation of clustering and other commercial-

11  only features. These patches were necessary to increase the stability and functionality of Neo4j®

12  EE, and in particular to avoid the risk that customers using the software might face risks and

13  instabilities with their data and operation of the software, including risk of unplanned downtime,

14  data corruption, returning incorrect results for certain queries, and risks the reliable operation of

15  backups. The absence of these Neo4j-developed and tested patches in ONgDB software leaves

16  users vulnerable to these and other problems, for which Plaintiff is uniquely positioned and has

17  uniquely invested in addressing.

18      I declare under penalty of perjury under the laws of the United States of America that the

19  foregoing is true and correct, and that this declaration was executed on this 10th day of December

20  2020, at San Mateo, California

21

22

23  Philip Rathle

24

25

26

27

28

842\3655474.7                                        - 11 -
DECLARATION OF PHILIP RATHLE IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT;
5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

# EXHIBIT 1

SER_2484

NOTICE
This package contains software licensed under different
licenses, please refer to the NOTICE.txt file for further
information and LICENSES.txt for full license texts.

The software ("Software") is developed and owned by Network Engine
for Objects in Lund AB (referred to in this notice as "Neo Technology").
If you have executed an End User Software License and Services Agreement,
an OEM Software License and Support Services Agreement, or another
commercial license agreement (including an Evaluation Agreement) with
Neo Technology or one of its affiliates (each, a "Commercial Agreement"),
you may use the Software solely pursuant to the terms of the relevant
Commercial Agreement.

If you have not executed a Commercial Agreement with Neo Technology, the
Software is subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE
Version 3, as follows:

                    GNU AFFERO GENERAL PUBLIC LICENSE
                       Version 3, 19 November 2007

 Copyright (C) 2007 Free Software Foundation, Inc. <http://fsf.org/>
 Everyone is permitted to copy and distribute verbatim copies
 of this license document, but changing it is not allowed.

                    Preamble

  The GNU Affero General Public License is a free, copyleft license
for software and other kinds of works, specifically designed to ensure
cooperation with the community in the case of network server software.

  The licenses for most software and other practical works are
designed to take away your freedom to share and change the works.  By
contrast, our General Public Licenses are intended to guarantee your
freedom to share and change all versions of a program--to make sure it
remains free software for all its users.

  When we speak of free software, we are referring to freedom, not
price.  Our General Public Licenses are designed to make sure that you
have the freedom to distribute copies of free software (and charge for
them if you wish), that you receive source code or can get it if you
want it, that you can change the software or use pieces of it in new
free programs, and that you know you can do these things.

  Developers that use our General Public Licenses protect your rights
with two steps: (1) assert copyright on the software, and (2) offer
you this License which gives you legal permission to copy, distribute
and/or modify the software.

  A secondary benefit of defending all users' freedom is that
improvements made in alternate versions of the program, if they
receive widespread use, become available for other developers to
incorporate.  Many developers of free software are heartened and
encouraged by the resulting cooperation.  However, in the case of
software used on network servers, this result may fail to come about.
The GNU General Public License permits making a modified version and
letting the public access it on a server without ever releasing its
source code to the public.

  The GNU Affero General Public License is designed specifically to
ensure that, in such cases, the modified source code becomes available
to the community.  It requires the operator of a network server to
provide the source code of the modified version running there to the
users of that server.  Therefore, public use of a modified version, on
a publicly accessible server, gives the public access to the source
code of the modified version.

  An older license, called the Affero General Public License and
published by Affero, was designed to accomplish similar goals.  This is
a different license, not a version of the Affero GPL, but Affero has
released a new version of the Affero GPL which permits relicensing under
this license.

  The precise terms and conditions for copying, distribution and
modification follow.

                    TERMS AND CONDITIONS

  0. Definitions.

  "This License" refers to version 3 of the GNU Affero General Public
License.

  "Copyright" also means copyright-like laws that apply to other kinds
of works, such as semiconductor masks.

  "The Program" refers to any copyrightable work licensed under this
License.  Each licensee is addressed as "you".  "Licensees" and
"recipients" may be individuals or organizations.

SER_2485

   To "modify" a work means to copy from or adapt all or part of the work
in a fashion requiring copyright permission, other than the making of an
exact copy.  The resulting work is called a "modified version" of the
earlier work or a work "based on" the earlier work.

   A "covered work" means either the unmodified Program or a work based
on the Program.

   To "propagate" a work means to do anything with it that, without
permission, would make you directly or secondarily liable for
infringement under applicable copyright law, except executing it on a
computer or modifying a private copy.  Propagation includes copying,
distribution (with or without modification), making available to the
public, and in some countries other activities as well.

   To "convey" a work means any kind of propagation that enables other
parties to make or receive copies.  Mere interaction with a user through
a computer network, with no transfer of a copy, is not conveying.

   An interactive user interface displays "Appropriate Legal Notices"
to the extent that it includes a convenient and prominently visible
feature that (1) displays an appropriate copyright notice, and (2)
tells the user that there is no warranty for the work (except to the
extent that warranties are provided), that licensees may convey the
work under this License, and how to view a copy of this License.  If
the interface presents a list of user commands or options, such as a
menu, a prominent item in the list meets this criterion.

   1. Source Code.

   The "source code" for a work means the preferred form of the work
for making modifications to it.  "Object code" means any non-source
form of a work.

   A "Standard Interface" means an interface that either is an official
standard defined by a recognized standards body, or, in the case of
interfaces specified for a particular programming language, one that
is widely used among developers working in that language.

   The "System Libraries" of an executable work include anything, other
than the work as a whole, that (a) is included in the normal form of
packaging a Major Component, but which is not part of that Major
Component, and (b) serves only to enable use of the work with that
Major Component, or to implement a Standard Interface for which an
implementation is available to the public in source code form.  A
"Major Component", in this context, means a major essential component
(kernel, window system, and so on) of the specific operating system
(if any) on which the executable work runs, or a compiler used to
produce the work, or an object code interpreter used to run it.

   The "Corresponding Source" for a work in object code form means all
the source code needed to generate, install, and (for an executable
work) run the object code and to modify the work, including scripts to
control those activities.  However, it does not include the work's
System Libraries, or general-purpose tools or generally available free
programs which are used unmodified in performing those activities but
which are not part of the work.  For example, Corresponding Source
includes interface definition files associated with source files for
the work, and the source code for shared libraries and dynamically
linked subprograms that the work is specifically designed to require,
such as by intimate data communication or control flow between those
subprograms and other parts of the work.

   The Corresponding Source need not include anything that users
can regenerate automatically from other parts of the Corresponding
Source.

   The Corresponding Source for a work in source code form is that
same work.

   2. Basic Permissions.

   All rights granted under this License are granted for the term of
copyright on the Program, and are irrevocable provided the stated
conditions are met.  This License explicitly affirms your unlimited
permission to run the unmodified Program.  The output from running a
covered work is covered by this License only if the output, given its
content, constitutes a covered work.  This License acknowledges your
rights of fair use or other equivalent, as provided by copyright law.

   You may make, run and propagate covered works that you do not
convey, without conditions so long as your license otherwise remains
in force.  You may convey covered works to others for the sole purpose
of having them make modifications exclusively for you, or provide you
with facilities for running those works, provided that you comply with
the terms of this License in conveying all material for which you do
not control copyright.  Those thus making or running the covered works
for you must do so exclusively on your behalf, under your direction
and control, on terms that prohibit them from making any copies of

SER_2486

your copyrighted material outside their relationship with you.

  Conveying under any other circumstances is permitted solely under
the conditions stated below.  Sublicensing is not allowed; section 10
makes it unnecessary.

  3. Protecting Users' Legal Rights From Anti-Circumvention Law.

  No covered work shall be deemed part of an effective technological
measure under any applicable law fulfilling obligations under article
11 of the WIPO copyright treaty adopted on 20 December 1996, or
similar laws prohibiting or restricting circumvention of such
measures.

  When you convey a covered work, you waive any legal power to forbid
circumvention of technological measures to the extent such circumvention
is effected by exercising rights under this License with respect to
the covered work, and you disclaim any intention to limit operation or
modification of the work as a means of enforcing, against the work's
users, your or third parties' legal rights to forbid circumvention of
technological measures.

  4. Conveying Verbatim Copies.

  You may convey verbatim copies of the Program's source code as you
receive it, in any medium, provided that you conspicuously and
appropriately publish on each copy an appropriate copyright notice;
keep intact all notices stating that this License and any
non-permissive terms added in accord with section 7 apply to the code;
keep intact all notices of the absence of any warranty; and give all
recipients a copy of this License along with the Program.

  You may charge any price or no price for each copy that you convey,
and you may offer support or warranty protection for a fee.

  5. Conveying Modified Source Versions.

  You may convey a work based on the Program, or the modifications to
produce it from the Program, in the form of source code under the
terms of section 4, provided that you also meet all of these conditions:

    a) The work must carry prominent notices stating that you modified
    it, and giving a relevant date.

    b) The work must carry prominent notices stating that it is
    released under this License and any conditions added under section
    7.  This requirement modifies the requirement in section 4 to
    "keep intact all notices".

    c) You must license the entire work, as a whole, under this
    License to anyone who comes into possession of a copy.  This
    License will therefore apply, along with any applicable section 7
    additional terms, to the whole of the work, and all its parts,
    regardless of how they are packaged.  This License gives no
    permission to license the work in any other way, but it does not
    invalidate such permission if you have separately received it.

    d) If the work has interactive user interfaces, each must display
    Appropriate Legal Notices; however, if the Program has interactive
    interfaces that do not display Appropriate Legal Notices, your
    work need not make them do so.

  A compilation of a covered work with other separate and independent
works, which are not by their nature extensions of the covered work,
and which are not combined with it such as to form a larger program,
in or on a volume of a storage or distribution medium, is called an
"aggregate" if the compilation and its resulting copyright are not
used to limit the access or legal rights of the compilation's users
beyond what the individual works permit.  Inclusion of a covered work
in an aggregate does not cause this License to apply to the other
parts of the aggregate.

  6. Conveying Non-Source Forms.

  You may convey a covered work in object code form under the terms
of sections 4 and 5, provided that you also convey the
machine-readable Corresponding Source under the terms of this License,
in one of these ways:

    a) Convey the object code in, or embodied in, a physical product
    (including a physical distribution medium), accompanied by the
    Corresponding Source fixed on a durable physical medium
    customarily used for software interchange.

    b) Convey the object code in, or embodied in, a physical product
    (including a physical distribution medium), accompanied by a
    written offer, valid for at least three years and valid for as
    long as you offer spare parts or customer support for that product
    model, to give anyone who possesses the object code either (1) a
    copy of the Corresponding Source for all the software in the

SER_2487

product that is covered by this License, on a durable physical
medium customarily used for software interchange, for a price no
more than your reasonable cost of physically performing this
conveying of source, or (2) access to copy the
Corresponding Source from a network server at no charge.

c) Convey individual copies of the object code with a copy of the
written offer to provide the Corresponding Source.  This
alternative is allowed only occasionally and noncommercially, and
only if you received the object code with such an offer, in accord
with subsection 6b.

d) Convey the object code by offering access from a designated
place (gratis or for a charge), and offer equivalent access to the
Corresponding Source in the same way through the same place at no
further charge.  You need not require recipients to copy the
Corresponding Source along with the object code.  If the place to
copy the object code is a network server, the Corresponding Source
may be on a different server (operated by you or a third party)
that supports equivalent copying facilities, provided you maintain
clear directions next to the object code saying where to find the
Corresponding Source.  Regardless of what server hosts the
Corresponding Source, you remain obligated to ensure that it is
available for as long as needed to satisfy these requirements.

e) Convey the object code using peer-to-peer transmission, provided
you inform other peers where the object code and Corresponding
Source of the work are being offered to the general public at no
charge under subsection 6d.

  A separable portion of the object code, whose source code is excluded
from the Corresponding Source as a System Library, need not be
included in conveying the object code work.

  A "User Product" is either (1) a "consumer product", which means any
tangible personal property which is normally used for personal, family,
or household purposes, or (2) anything designed or sold for incorporation
into a dwelling.  In determining whether a product is a consumer product,
doubtful cases shall be resolved in favor of coverage.  For a particular
product received by a particular user, "normally used" refers to a
typical or common use of that class of product, regardless of the status
of the particular user or of the way in which the particular user
actually uses, or expects or is expected to use, the product.  A product
is a consumer product regardless of whether the product has substantial
commercial, industrial or non-consumer uses, unless such uses represent
the only significant mode of use of the product.

  "Installation Information" for a User Product means any methods,
procedures, authorization keys, or other information required to install
and execute modified versions of a covered work in that User Product from
a modified version of its Corresponding Source.  The information must
suffice to ensure that the continued functioning of the modified object
code is in no case prevented or interfered with solely because
modification has been made.

  If you convey an object code work under this section in, or with, or
specifically for use in, a User Product, and the conveying occurs as
part of a transaction in which the right of possession and use of the
User Product is transferred to the recipient in perpetuity or for a
fixed term (regardless of how the transaction is characterized), the
Corresponding Source conveyed under this section must be accompanied
by the Installation Information.  But this requirement does not apply
if neither you nor any third party retains the ability to install
modified object code on the User Product (for example, the work has
been installed in ROM).

  The requirement to provide Installation Information does not include a
requirement to continue to provide support service, warranty, or updates
for a work that has been modified or installed by the recipient, or for
the User Product in which it has been modified or installed.  Access to a
network may be denied when the modification itself materially and
adversely affects the operation of the network or violates the rules and
protocols for communication across the network.

  Corresponding Source conveyed, and Installation Information provided,
in accord with this section must be in a format that is publicly
documented (and with an implementation available to the public in
source code form), and must require no special password or key for
unpacking, reading or copying.

  7. Additional Terms.

  "Additional permissions" are terms that supplement the terms of this
License by making exceptions from one or more of its conditions.
Additional permissions that are applicable to the entire Program shall
be treated as though they were included in this License, to the extent
that they are valid under applicable law.  If additional permissions
apply only to part of the Program, that part may be used separately
under those permissions, but the entire Program remains governed by
this License without regard to the additional permissions.

SER_2488

    When you convey a copy of a covered work, you may at your option
remove any additional permissions from that copy, or from any part of
it.  (Additional permissions may be written to require their own
removal in certain cases when you modify the work.)  You may place
additional permissions on material, added by you to a covered work,
for which you have or can give appropriate copyright permission.

    Notwithstanding any other provision of this License, for material you
add to a covered work, you may (if authorized by the copyright holders of
that material) supplement the terms of this License with terms:

    a) Disclaiming warranty or limiting liability differently from the
    terms of sections 15 and 16 of this License; or

    b) Requiring preservation of specified reasonable legal notices or
    author attributions in that material or in the Appropriate Legal
    Notices displayed by works containing it; or

    c) Prohibiting misrepresentation of the origin of that material, or
    requiring that modified versions of such material be marked in
    reasonable ways as different from the original version; or

    d) Limiting the use for publicity purposes of names of licensors or
    authors of the material; or

    e) Declining to grant rights under trademark law for use of some
    trade names, trademarks, or service marks; or

    f) Requiring indemnification of licensors and authors of that
    material by anyone who conveys the material (or modified versions of
    it) with contractual assumptions of liability to the recipient, for
    any liability that these contractual assumptions directly impose on
    those licensors and authors.

    All other non-permissive additional terms are considered "further
restrictions" within the meaning of section 10.  If the Program as you
received it, or any part of it, contains a notice stating that it is
governed by this License along with a term that is a further restriction,
you may remove that term.  If a license document contains a further
restriction but permits relicensing or conveying under this License, you
may add to a covered work material governed by the terms of that license
document, provided that the further restriction does not survive such
relicensing or conveying.

    If you add terms to a covered work in accord with this section, you
must place, in the relevant source files, a statement of the
additional terms that apply to those files, or a notice indicating
where to find the applicable terms.

    Additional terms, permissive or non-permissive, may be stated in the
form of a separately written license, or stated as exceptions;
the above requirements apply either way.

    8. Termination.

    You may not propagate or modify a covered work except as expressly
provided under this License.  Any attempt otherwise to propagate or
modify it is void, and will automatically terminate your rights under
this License (including any patent licenses granted under the third
paragraph of section 11).

    However, if you cease all violation of this License, then your
license from a particular copyright holder is reinstated (a)
provisionally, unless and until the copyright holder explicitly and
finally terminates your license, and (b) permanently, if the copyright
holder fails to notify you of the violation by some reasonable means
prior to 60 days after the cessation.

    Moreover, your license from a particular copyright holder is
reinstated permanently if the copyright holder notifies you of the
violation by some reasonable means, this is the first time you have
received notice of violation of this License (for any work) from that
copyright holder, and you cure the violation prior to 30 days after
your receipt of the notice.

    Termination of your rights under this section does not terminate the
licenses of parties who have received copies or rights from you under
this License.  If your rights have been terminated and not permanently
reinstated, you do not qualify to receive new licenses for the same
material under section 10.

    9. Acceptance Not Required for Having Copies.

    You are not required to accept this License in order to receive or
run a copy of the Program.  Ancillary propagation of a covered work
occurring solely as a consequence of using peer-to-peer transmission
to receive a copy likewise does not require acceptance.  However,
nothing other than this License grants you permission to propagate or
modify any covered work.  These actions infringe copyright if you do

SER_2489

not accept this License.  Therefore, by modifying or propagating a
covered work, you indicate your acceptance of this License to do so.

  10. Automatic Licensing of Downstream Recipients.

  Each time you convey a covered work, the recipient automatically
receives a license from the original licensors, to run, modify and
propagate that work, subject to this License.  You are not responsible
for enforcing compliance by third parties with this License.

  An "entity transaction" is a transaction transferring control of an
organization, or substantially all assets of one, or subdividing an
organization, or merging organizations.  If propagation of a covered
work results from an entity transaction, each party to that
transaction who receives a copy of the work also receives whatever
licenses to the work the party's predecessor in interest had or could
give under the previous paragraph, plus a right to possession of the
Corresponding Source of the work from the predecessor in interest, if
the predecessor has it or can get it with reasonable efforts.

  You may not impose any further restrictions on the exercise of the
rights granted or affirmed under this License.  For example, you may
not impose a license fee, royalty, or other charge for exercise of
rights granted under this License, and you may not initiate litigation
(including a cross-claim or counterclaim in a lawsuit) alleging that
any patent claim is infringed by making, using, selling, offering for
sale, or importing the Program or any portion of it.

  11. Patents.

  A "contributor" is a copyright holder who authorizes use under this
License of the Program or a work on which the Program is based.  The
work thus licensed is called the contributor's "contributor version".

  A contributor's "essential patent claims" are all patent claims
owned or controlled by the contributor, whether already acquired or
hereafter acquired, that would be infringed by some manner, permitted
by this License, of making, using, or selling its contributor version,
but do not include claims that would be infringed only as a
consequence of further modification of the contributor version.  For
purposes of this definition, "control" includes the right to grant
patent sublicenses in a manner consistent with the requirements of
this License.

  Each contributor grants you a non-exclusive, worldwide, royalty-free
patent license under the contributor's essential patent claims, to
make, use, sell, offer for sale, import and otherwise run, modify and
propagate the contents of its contributor version.

  In the following three paragraphs, a "patent license" is any express
agreement or commitment, however denominated, not to enforce a patent
(such as an express permission to practice a patent or covenant not to
sue for patent infringement).  To "grant" such a patent license to a
party means to make such an agreement or commitment not to enforce a
patent against the party.

  If you convey a covered work, knowingly relying on a patent license,
and the Corresponding Source of the work is not available for anyone
to copy, free of charge and under the terms of this License, through a
publicly available network server or other readily accessible means,
then you must either (1) cause the Corresponding Source to be so
available, or (2) arrange to deprive yourself of the benefit of the
patent license for this particular work, or (3) arrange, in a manner
consistent with the requirements of this License, to extend the patent
license to downstream recipients.  "Knowingly relying" means you have
actual knowledge that, but for the patent license, your conveying the
covered work in a country, or your recipient's use of the covered work
in a country, would infringe one or more identifiable patents in that
country that you have reason to believe are valid.

  If, pursuant to or in connection with a single transaction or
arrangement, you convey, or propagate by procuring conveyance of, a
covered work, and grant a patent license to some of the parties
receiving the covered work authorizing them to use, propagate, modify
or convey a specific copy of the covered work, then the patent license
you grant is automatically extended to all recipients of the covered
work and works based on it.

  A patent license is "discriminatory" if it does not include within
the scope of its coverage, prohibits the exercise of, or is
conditioned on the non-exercise of one or more of the rights that are
specifically granted under this License.  You may not convey a covered
work if you are a party to an arrangement with a third party that is
in the business of distributing software, under which you make payment
to the third party based on the extent of your activity of conveying
the work, and under which the third party grants, to any of the
parties who would receive the covered work from you, a discriminatory
patent license (a) in connection with copies of the covered work
conveyed by you (or copies made from those copies), or (b) primarily
for and in connection with specific products or compilations that

SER_2490

contain the covered work, unless you entered into that arrangement,
or that patent license was granted, prior to 28 March 2007.

   Nothing in this License shall be construed as excluding or limiting
any implied license or other defenses to infringement that may
otherwise be available to you under applicable patent law.

   12. No Surrender of Others' Freedom.

   If conditions are imposed on you (whether by court order, agreement or
otherwise) that contradict the conditions of this License, they do not
excuse you from the conditions of this License.  If you cannot convey a
covered work so as to satisfy simultaneously your obligations under this
License and any other pertinent obligations, then as a consequence you may
not convey it at all.  For example, if you agree to terms that obligate you
to collect a royalty for further conveying from those to whom you convey
the Program, the only way you could satisfy both those terms and this
License would be to refrain entirely from conveying the Program.

   13. Remote Network Interaction; Use with the GNU General Public License.

   Notwithstanding any other provision of this License, if you modify the
Program, your modified version must prominently offer all users
interacting with it remotely through a computer network (if your version
supports such interaction) an opportunity to receive the Corresponding
Source of your version by providing access to the Corresponding Source
from a network server at no charge, through some standard or customary
means of facilitating copying of software.  This Corresponding Source
shall include the Corresponding Source for any work covered by version 3
of the GNU General Public License that is incorporated pursuant to the
following paragraph.

   Notwithstanding any other provision of this License, you have permission
to link or combine any covered work with a work licensed under version 3
of the GNU General Public License into a single combined work, and to
convey the resulting work.  The terms of this License will continue to
apply to the part which is the covered work, but the work with which it is
combined will remain governed by version 3 of the GNU General Public
License.

   14. Revised Versions of this License.

   The Free Software Foundation may publish revised and/or new versions of
the GNU Affero General Public License from time to time.  Such new
versions will be similar in spirit to the present version, but may differ
in detail to address new problems or concerns.

   Each version is given a distinguishing version number.  If the
Program specifies that a certain numbered version of the GNU Affero
General Public License "or any later version" applies to it, you have
the option of following the terms and conditions either of that
numbered version or of any later version published by the Free
Software Foundation.  If the Program does not specify a version number
of the GNU Affero General Public License, you may choose any version
ever published by the Free Software Foundation.

   If the Program specifies that a proxy can decide which future
versions of the GNU Affero General Public License can be used, that
proxy's public statement of acceptance of a version permanently
authorizes you to choose that version for the Program.

   Later license versions may give you additional or different
permissions.  However, no additional obligations are imposed on any
author or copyright holder as a result of your choosing to follow a
later version.

   15. Disclaimer of Warranty.

   THERE IS NO WARRANTY FOR THE PROGRAM, TO THE EXTENT PERMITTED BY
APPLICABLE LAW.  EXCEPT WHEN OTHERWISE STATED IN WRITING THE COPYRIGHT
HOLDERS AND/OR OTHER PARTIES PROVIDE THE PROGRAM "AS IS" WITHOUT WARRANTY
OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO,
THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR
PURPOSE.  THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE PROGRAM
IS WITH YOU.  SHOULD THE PROGRAM PROVE DEFECTIVE, YOU ASSUME THE COST OF
ALL NECESSARY SERVICING, REPAIR OR CORRECTION.

   16. Limitation of Liability.

   IN NO EVENT UNLESS REQUIRED BY APPLICABLE LAW OR AGREED TO IN WRITING
WILL ANY COPYRIGHT HOLDER, OR ANY OTHER PARTY WHO MODIFIES AND/OR CONVEYS
THE PROGRAM AS PERMITTED ABOVE, BE LIABLE TO YOU FOR DAMAGES, INCLUDING ANY
GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE
USE OR INABILITY TO USE THE PROGRAM (INCLUDING BUT NOT LIMITED TO LOSS OF
DATA OR DATA BEING RENDERED INACCURATE OR LOSSES SUSTAINED BY YOU OR THIRD
PARTIES OR A FAILURE OF THE PROGRAM TO OPERATE WITH ANY OTHER PROGRAMS),
EVEN IF SUCH HOLDER OR OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF
SUCH DAMAGES.

   17. Interpretation of Sections 15 and 16.

SER_2491

If the disclaimer of warranty and limitation of liability provided
above cannot be given local legal effect according to their terms,
reviewing courts shall apply local law that most closely approximates
an absolute waiver of all civil liability in connection with the
Program, unless a warranty or assumption of liability accompanies a
copy of the Program in return for a fee.

                    END OF TERMS AND CONDITIONS

           How to Apply These Terms to Your New Programs

   If you develop a new program, and you want it to be of the greatest
possible use to the public, the best way to achieve this is to make it
free software which everyone can redistribute and change under these terms.

   To do so, attach the following notices to the program.  It is safest
to attach them to the start of each source file to most effectively
state the exclusion of warranty; and each file should have at least
the "copyright" line and a pointer to where the full notice is found.

    <one line to give the program's name and a brief idea of what it does.>
    Copyright (C) <year>  <name of author>

    This program is free software: you can redistribute it and/or modify
    it under the terms of the GNU Affero General Public License as
    published by the Free Software Foundation, either version 3 of the
    License, or (at your option) any later version.

    This program is distributed in the hope that it will be useful,
    but WITHOUT ANY WARRANTY; without even the implied warranty of
    MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE.  See the
    GNU Affero General Public License for more details.

    You should have received a copy of the GNU Affero General Public License
    along with this program.  If not, see <http://www.gnu.org/licenses/>.

Also add information on how to contact you by electronic and paper mail.

   If your software can interact with users remotely through a computer
network, you should also make sure that it provides a way for users to
get its source.  For example, if your program is a web application, its
interface could display a "Source" link that leads users to an archive
of the code.  There are many ways you could offer source, and different
solutions will be better for different programs; see section 13 for the
specific requirements.

   You should also get your employer (if you work as a programmer) or school,
if any, to sign a "copyright disclaimer" for the program, if necessary.
For more information on this, and how to apply and follow the GNU AGPL, see
<http://www.gnu.org/licenses/>.

SER_2492

# EXHIBIT 2

SER_2493



(Neo4j Blog)←[:BACK]

# Neo4j Graph Database 3.4 GA Release: Everything You Need to Know



Philip Rathle, VP of Products
May 17, 2018  ·  8 mins read

---

*Author's note: What a hectic week in the world of Neo4j! In addition to finalizing the delivery of Neo4j 3.4, we simultaneously built the* GQL Manifesto*, a call to support a common, unified Graph Query Language. Thank you to the graph community for your strong vote of support!* If you have not already voted, please do so*.*

The Neo4j graph database has always been the technology closest to the core of our mission: *to help the world make sense of data.*



With today's general availability release of Neo4j Graph Database version 3.4, we believe that mission is advanced further than ever before.

The native graph database is the foundation around which the rest of the Neo4j Graph Platform is built, and we're proud to be releasing this version that will delight both longstanding community developers and enterprise DBAs alike.

SER_2494

Neo4j Graph Database 3.4 GA Release: Everything You Need to Know

| 3.4 Features By Edition | Community | Enterprise |
|---|:---:|:---:|
| **Data Types** | | |
| Date/Time data type | ☐ | ☐ |
| 3D Geospatial data types | ☐ | ☐ |
| **Performance Improvements** | | |
| Native String Indexes – up to 5x faster writes | ☐ | ☐ |
| Fast Backups | ☐ | **2x Faster** |
| Enterprise Cypher Runtime up to 70% faster | – | ☐ |
| 100B+ Bulk Importer | ☐ | **Resumable** |
| **Enterprise Scaling & Administration** | | |
| Multi-Clustering (partition of clusters) | – | ☐ |
| Automatic Cache Warming | – | ☐ |
| Rolling Upgrades | – | ☐ |
| Resumable Copy/restore cluster member | – | ☐ |

https://neo4j.com/blog/neo4j-graph-database-3-4-ga-release/?ref=blog[11/7/2020 3:03:57 PM]

Neo4j Graph Database 3.4 GA Release: Everything You Need to Know

| | | |
|---|---|---|
| New diagnostic metrics and support tools | – | ☐ |
| Property Blacklisting | – | ☐ |

Here is a closer look at the release-defining features of Neo4j Database 3.4:

# Multi-Clustering

Multi-Clustering is the flagship feature of Neo4j Database 3.4, advancing the Graph Platform in scale, expanded uses and performance.



With Multi-Clustering, you can create and manage multiple domain-specific database clusters, effectively

https://neo4j.com/blog/neo4j-graph-database-3-4-ga-release/?ref=blog[11/7/2020 3:03:57 PM]

partitioning the graph into independent parts. We view this as a step in our march toward fully-sharded horizontal scaling of graph data.

Multi-Clustering can be used to logically partition graphs; create highly-available, large-scale multi-tenant SaaS systems; or oversee multiple graph implementations across the enterprise. For example, Multi-Clustering is perfect for building GDPR-compliant data lineage systems by country, or segmenting a graph database according to product line or division.

## Directory Service

Multi-Clustering comes with a new directory service that manages a routing table of locations for each named database cluster. The directory service lives within lower levels of Bolt drivers at the same level as cluster load balancing and routing logic, all of which saves developers innumerable headaches.

## Multi-Clustering Scalability Use Cases & Strategies

Here are just a few scalability use cases of Multi-Clustering we initially imagined (we're sure you'll surprise us with even more):

## 1. Physical Graph Partitioning

For the horizontal scaling of databases with logically distinct graphs, Multi-Clustering can be used to adopt a strategy of physical graph partitioning.

Physical graph partitioning might include naming and managing graphs according to geography (e.g., country), customer ID, products, use cases, versions, or data center as individual clustered instances. Or, you could use this approach for the creation and storage of multiple analytic graphs derived from graph-based analysis.

Physical graph partitioning is a cloud-friendly model, especially considering server-to-server encryption, multi-

SER_2497

Neo4j Graph Database 3.4 GA Release: Everything You Need to Know

data center or zone support in conjunction with the above-mentioned strategies.

## 2. Cluster-Based Multi-Tenancy

Using Multi-Clustering for a cluster-based multi-tenant strategy allows you to define baseline schemas and data templates independent of a given tenant. You can also name graph data according to tenant ID and route it accordingly.

This strategy allows SaaS providers to deploy tenants as triplets of cloud instances that both separates individual customer data and provides high availability and customer-centric security – all without disturbing the top-level behavior and operation of the application or service.

## 3. Multi-Graph Operations within the Enterprise

Finally, Multi-Clustering can be used to combine oversight of use-specific graphs within an enterprise organization, such as metadata, GDPR compliance services, identity management, network topology management and Customer 360 experience data.

# New Data Types

Neo4j Database introduces two brand-new data types: **date/time** data and **three-dimensional geospatial** data. These new data types enable optimized Cypher queries for searches across time or space.

## Temporal Data in Neo4j

The introduction of date/time data expands graph-based thinking into other types of temporal (time-situated) logic and queries that matches modern research happening at leading universities across the globe. Temporal data is also important for Internet of Things (IoT) use cases, versioning and other changes-over-time implementations.

SER_2498

Neo4j Graph Database 3.4 GA Release: Everything You Need to Know

With the new date/time data types, you can more easily tap into a variety of use cases, such as:

- Time trees

- Change logs

- Temporal incentives ("Offer this coupon until this date.")

- Complements to spatial queries ("Optimize route based on commute hour.")

The new date/time data includes a variety of formats and conforms to a familiar SQL-like model.

## 3D Spatial Data in Neo4j

In addition to traditional latitude and longitude, the new geospatial data types in Neo4j also include Cartesian coordinates (x, y, z), radial distances, altitude, depth and slope.

**Query Example: "Find all coffee shops within 100m"**

```
WITH point({latitude: 55.612149, longitude: 12.995090}) AS poi
MATCH (l:Location)<-[:AT]-(b:Business)-[:OF]->(c:Category)
  WHERE c.name = "coffee"
    AND distance(l.location, poi) < 100
RETURN distance(l.location, poi) as distance, b.name as coffee_shop
  ORDER BY distance DESC
```

**Neo4j Database 3.4 now supports three-dimensional geospatial search as a data type and in Cypher queries.**

https://neo4j.com/blog/neo4j-graph-database-3-4-ga-release/?ref=blog[11/7/2020 3:03:57 PM]

SER_2499

Neo4j Graph Database 3.4 GA Release: Everything You Need to Know

These new data types greatly expand the types of searches and use cases for graph data, including location-based searches ("Find me a coffee shop within 100 meters") and 3D routing requests ("Route the delivery to the 3rd floor").

Another example: Using these new data formats, you could build a real-time bike-messenger delivery system that could not only locate addresses, but also specify time of delivery and elevation changes for the rider.



Another 3D geospatial search example: Recommend a shirt available in a multi-floor store close by in the men's department. In Neo4j 3.4, Cypher queries now support the data types necessary to complete such searches and recommendations.

# Performance Improvements

Neo4j 3.4 is faster in terms of both reads and writes, and these overall performance improvements are

SER_2500

proportionally reflected in both Community and Enterprise Editions (with some differences).

The 3.4 release removes multiple layers of APIs between the kernel, interpreters and compilers, producing impressive performance improvements that other graph-layered products will find challenging to reproduce.

## Blazing-Fast Writes

- **Writes are now up to 5x faster** for nodes with indexed string properties, thanks to native string indexes and lessening dependence on third-party libraries.
- A **new kernel API** streamlines internal instructions.
- Bulk imports can handle over a 100 billion nodes and relationships.
- **Transaction states consume less memory** thanks to various efficiency improvements (including native indexing) working together.

### Writes with Native String Indexes

Writes are now up to 5x faster for nodes with indexed string properties, thanks to native string indexes. This reduces Neo4j's dependency on the popular external indexing library Lucene, and gives Neo4j finer-grained control over index response times.

## Speedy Reads

- Internal testing shows that **Cypher runtime is 20% faster** than for Neo4j 3.3 Community Edition and **Cypher runtime is 50-70% faster** than Neo4j 3.3 Enterprise Edition.

SER_2501

Neo4j Graph Database 3.4 GA Release: Everything You Need to Know



**Reads – Neo4j Enterprise Cypher Runtime**

Internal testing shows that Cypher runtime is 50-70% faster in Neo4j 3.4 Enterprise Edition than in Neo4j 3.3 Enterprise Edition.

# New Administrator Features

Database administrators, DevOps and other support staff have had an important voice in strengthening Neo4j both in the past and in the 3.4 release. Some of the key highlights include:

- **Hot backups are now twice as fast** as in previous releases.

- After restart or restore, **active cache warming** now automatically warms the page cache to its previous operational state, getting servers back online in record time. This active warm-up exercise also cascades to Read Replicas within that Causal Cluster. The effect is that applications enjoy the peak operational responsiveness – immediately.

- A **new diagnostic utility** (dump tool) improves the speed and accuracy of collaboration support cases

SER_2502

Neo4j Graph Database 3.4 GA Release: Everything You Need to Know

between customers and Neo4j Support.

## Cluster Member Management

- **Data store copy and catch-up** features to enable a new empty instance to join a cluster and become operational in no time. This feature adds full transaction history as well as bulk-load historic data and transaction leftovers.
- **Catch-up functions** can be stopped and resumed, and also include ongoing raft log updates to complete making a new instance fully armed and operational.

## Rolling Upgrades

- Rolling upgrades allow for **updating older instances while keeping other members stable** and without requiring a restart of the environment.
- All **new patch, minor and major versions** will support rolling upgrades starting from Neo4j 3.4.
- Rolling upgrades will operate with **both read-only and read/write instances**.

SER_2503

Neo4j Graph Database 3.4 GA Release: Everything You Need to Know



**Neo4j 3.4 now supports rolling upgrades so you can update older instances while keeping other members stable and without requiring a restart of the environment.**

# Database Security Advancements

As with past releases, the Neo4j Database 3.4 release continues to robustly uphold modern database security principles, often not available in competing graph stores or other NoSQL databases.

Our current database security features include:

- User- and role-based security within the database

- LDAP and AD directory integration

- Kerberos authentication (ticket-based)

https://neo4j.com/blog/neo4j-graph-database-3-4-ga-release/?ref=blog[11/7/2020 3:03:57 PM]

**SER_2504**

Neo4j Graph Database 3.4 GA Release: Everything You Need to Know

- HTTPS access to all user-facing interfaces

- TLS encrypted traffic among cluster routing, cluster members, including through Bolt application drivers and across data centers

- Encrypted data at rest via file-system encryption

With Neo4j 3.4, administrators can now implement **property blacklisting by name or role**, securing property visibility. This feature is similar to SQL-centric column level security without impacting performance.



With Neo4j 3.4, administrators can now implement property security by name, blacklisting properties for users.

# Conclusion

As the core of the Neo4j Graph Platform, this 3.4 release of the Neo4j Graph Database indicates an upgrade

https://neo4j.com/blog/neo4j-graph-database-3-4-ga-release/?ref=blog[11/7/2020 3:03:57 PM]

SER_2505

Neo4j Graph Database 3.4 GA Release: Everything You Need to Know

for the entire platform that relies on it. We're confident that the upgrades in Neo4j 3.4 will deliver stunning spillover results into all of the new products and features of the Graph Platform as they roll out later this year.



**Neo4j Database 3.4 is just one of many recent or soon-to-be-released upgrades to the Neo4j Graph Platform.**

We encourage you to download Neo4j Database 3.4 and try it out for yourself – whether as part of Neo4j Desktop or as part of your Enterprise Edition license.

While we know some of the most clear and obvious ways that this release will help you harness your data connections, we're even more excited to hear how our millions of users worldwide will use these new features to build applications beyond the limits of our wildest imagination.

For all of the Neo4j team,

–Philip Rathle

**Start pushing boundaries today:**
**Download Neo4j Desktop right now and see for yourself what you can do with the leading platform for connected data.**

Download Neo4j 3.4

cache warming   Cartesian coordinates   cypher   database security   DevOps   graph database   hot backups

native graph database   neo4j   Neo4j 3.4

https://neo4j.com/blog/neo4j-graph-database-3-4-ga-release/?ref=blog[11/7/2020 3:03:57 PM]

**SER_2506**

Neo4j Graph Database 3.4 GA Release: Everything You Need to Know

  

Neo4j Community Disclaimer



Author

**Philip Rathle, VP of Products**

Philip Rathle has a passion for building great products that help users solve tomorrow's challenges. He spent the first decade of his career building information solutions for some of the world's largest companies: first with Accenture, then with Tanning Technology, one of the world's top database consultancies of the time, ...

know more

Related Articles

SER_2507

Neo4j Graph Database 3.4 GA Release: Everything You Need to Know

The Lean-In Moment: 5-Minute Interview with Paul Westcott

Oct 16 · 3 mins read

SER_2508

Neo4j Graph Database 3.4 GA Release: Everything You Need to Know

5-Minute Interview: Graph Databases For Dummies with Dr. Jim Webber and Rik Van Bruggen

Oct 15 · 5 mins read

SER_2509

Neo4j Graph Database 3.4 GA Release: Everything You Need to Know

Fixing Your Microservices Architecture Using Graph Analysis

Oct 07  ·  13 mins read

## Comments (2)

### Leave a Reply

Your email address will not be published.

https://neo4j.com/blog/neo4j-graph-database-3-4-ga-release/?ref=blog[11/7/2020 3:03:57 PM]

SER_2510

Neo4j Graph Database 3.4 GA Release: Everything You Need to Know



**Satish**
Nov 6, 2018

Hi, is there any article describing: how ne04j works with a bigdata cluster which ingests 10 billion events per day and data needs to be visualized with a graph visualization like keylines?

Reply



**Sebastien DOLLAR**
May 6, 2019

We are trying to have some DB on same cluster like Production DB, copy of it as dev side data

It can be possible and with what way ?

SER_2511

Neo4j Graph Database 3.4 GA Release: Everything You Need to Know

Reply

PRODUCTS              CUSTOMERS              Why Graph Databases?    Company

USE CASES             LEARN                  Graph Databases vs      News
                                             RDBMS                   Awards
PARTNERS              DEVELOPERS             What's New in Neo4j      Careers
                                             Graphdatabases.com       Staff

CONTACT US →

US: 1-855-636-4532
Sweden +46 171 480 113
UK: +44 20 3868 3223
France: +33 (0) 1 73 23 56 07

© 2020 Neo4j, Inc.

Terms | Privacy | Sitemap

Neo4j®, Neo Technology®, Cypher®, Neo4j®
Bloom™ and Neo4j® Aura™ are registered
trademarks
of Neo4j, Inc. All other marks are owned by their
respective companies.

Contact Sales: 1.855.636.4532          Email a graph expert

https://neo4j.com/blog/neo4j-graph-database-3-4-ga-release/?ref=blog[11/7/2020 3:03:57 PM]

SER_2512

**EXHIBIT 3**

```
NOTICE
This package contains software licensed under different
licenses, please refer to the NOTICE.txt file for further
information and LICENSES.txt for full license texts.

Neo4j Enterprise object code can be licensed independently from
the source under separate commercial terms. Email inquiries can be
directed to: licensing@neo4j.com. More information is also
available at:https://neo4j.com/licensing/

The software ("Software") is developed and owned by Neo4j Sweden AB
(referred to in this notice as "Neo4j") and is subject to the terms
of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3, with the Commons Clause as follows:


                GNU AFFERO GENERAL PUBLIC LICENSE
                   Version 3, 19 November 2007

 Copyright (C) 2007 Free Software Foundation, Inc. <http://fsf.org/>
 Everyone is permitted to copy and distribute verbatim copies
 of this license document, but changing it is not allowed.

                        Preamble

  The GNU Affero General Public License is a free, copyleft license
for software and other kinds of works, specifically designed to ensure
cooperation with the community in the case of network server software.

  The licenses for most software and other practical works are
designed to take away your freedom to share and change the works.  By
contrast, our General Public Licenses are intended to guarantee your
freedom to share and change all versions of a program--to make sure it
remains free software for all its users.

  When we speak of free software, we are referring to freedom, not
price.  Our General Public Licenses are designed to make sure that you
have the freedom to distribute copies of free software (and charge for
them if you wish), that you receive source code or can get it if you
want it, that you can change the software or use pieces of it in new
free programs, and that you know you can do these things.

  Developers that use our General Public Licenses protect your rights
with two steps: (1) assert copyright on the software, and (2) offer
you this License which gives you legal permission to copy, distribute
and/or modify the software.

  A secondary benefit of defending all users' freedom is that
improvements made in alternate versions of the program, if they
receive widespread use, become available for other developers to
incorporate.  Many developers of free software are heartened and
encouraged by the resulting cooperation.  However, in the case of
software used on network servers, this result may fail to come about.
The GNU General Public License permits making a modified version and
letting the public access it on a server without ever releasing its
source code to the public.

  The GNU Affero General Public License is designed specifically to
ensure that, in such cases, the modified source code becomes available
to the community.  It requires the operator of a network server to
provide the source code of the modified version running there to the
users of that server.  Therefore, public use of a modified version, on
a publicly accessible server, gives the public access to the source
code of the modified version.

  An older license, called the Affero General Public License and
published by Affero, was designed to accomplish similar goals.  This is
a different license, not a version of the Affero GPL, but Affero has
released a new version of the Affero GPL which permits relicensing under
this license.

  The precise terms and conditions for copying, distribution and
modification follow.

                   TERMS AND CONDITIONS

  0. Definitions.

  "This License" refers to version 3 of the GNU Affero General Public
License.

  "Copyright" also means copyright-like laws that apply to other kinds
of works, such as semiconductor masks.

  "The Program" refers to any copyrightable work licensed under this
License.  Each licensee is addressed as "you".  "Licensees" and
"recipients" may be individuals or organizations.

  To "modify" a work means to copy from or adapt all or part of the work
in a fashion requiring copyright permission, other than the making of an
```

SER_2514

exact copy.  The resulting work is called a "modified version" of the
earlier work or a work "based on" the earlier work.

  A "covered work" means either the unmodified Program or a work based
on the Program.

  To "propagate" a work means to do anything with it that, without
permission, would make you directly or secondarily liable for
infringement under applicable copyright law, except executing it on a
computer or modifying a private copy.  Propagation includes copying,
distribution (with or without modification), making available to the
public, and in some countries other activities as well.

  To "convey" a work means any kind of propagation that enables other
parties to make or receive copies.  Mere interaction with a user through
a computer network, with no transfer of a copy, is not conveying.

  An interactive user interface displays "Appropriate Legal Notices"
to the extent that it includes a convenient and prominently visible
feature that (1) displays an appropriate copyright notice, and (2)
tells the user that there is no warranty for the work (except to the
extent that warranties are provided), that licensees may convey the
work under this License, and how to view a copy of this License.  If
the interface presents a list of user commands or options, such as a
menu, a prominent item in the list meets this criterion.

  1. Source Code.

  The "source code" for a work means the preferred form of the work
for making modifications to it.  "Object code" means any non-source
form of a work.

  A "Standard Interface" means an interface that either is an official
standard defined by a recognized standards body, or, in the case of
interfaces specified for a particular programming language, one that
is widely used among developers working in that language.

  The "System Libraries" of an executable work include anything, other
than the work as a whole, that (a) is included in the normal form of
packaging a Major Component, but which is not part of that Major
Component, and (b) serves only to enable use of the work with that
Major Component, or to implement a Standard Interface for which an
implementation is available to the public in source code form.  A
"Major Component", in this context, means a major essential component
(kernel, window system, and so on) of the specific operating system
(if any) on which the executable work runs, or a compiler used to
produce the work, or an object code interpreter used to run it.

  The "Corresponding Source" for a work in object code form means all
the source code needed to generate, install, and (for an executable
work) run the object code and to modify the work, including scripts to
control those activities.  However, it does not include the work's
System Libraries, or general-purpose tools or generally available free
programs which are used unmodified in performing those activities but
which are not part of the work.  For example, Corresponding Source
includes interface definition files associated with source files for
the work, and the source code for shared libraries and dynamically
linked subprograms that the work is specifically designed to require,
such as by intimate data communication or control flow between those
subprograms and other parts of the work.

  The Corresponding Source need not include anything that users
can regenerate automatically from other parts of the Corresponding
Source.

  The Corresponding Source for a work in source code form is that
same work.

  2. Basic Permissions.

  All rights granted under this License are granted for the term of
copyright on the Program, and are irrevocable provided the stated
conditions are met.  This License explicitly affirms your unlimited
permission to run the unmodified Program.  The output from running a
covered work is covered by this License only if the output, given its
content, constitutes a covered work.  This License acknowledges your
rights of fair use or other equivalent, as provided by copyright law.

  You may make, run and propagate covered works that you do not
convey, without conditions so long as your license otherwise remains
in force.  You may convey covered works to others for the sole purpose
of having them make modifications exclusively for you, or provide you
with facilities for running those works, provided that you comply with
the terms of this License in conveying all material for which you do
not control copyright.  Those thus making or running the covered works
for you must do so exclusively on your behalf, under your direction
and control, on terms that prohibit them from making any copies of
your copyrighted material outside their relationship with you.

  Conveying under any other circumstances is permitted solely under

SER_2515

the conditions stated below.  Sublicensing is not allowed; section 10
makes it unnecessary.

  3. Protecting Users' Legal Rights From Anti-Circumvention Law.

  No covered work shall be deemed part of an effective technological
measure under any applicable law fulfilling obligations under article
11 of the WIPO copyright treaty adopted on 20 December 1996, or
similar laws prohibiting or restricting circumvention of such
measures.

  When you convey a covered work, you waive any legal power to forbid
circumvention of technological measures to the extent such circumvention
is effected by exercising rights under this License with respect to
the covered work, and you disclaim any intention to limit operation or
modification of the work as a means of enforcing, against the work's
users, your or third parties' legal rights to forbid circumvention of
technological measures.

  4. Conveying Verbatim Copies.

  You may convey verbatim copies of the Program's source code as you
receive it, in any medium, provided that you conspicuously and
appropriately publish on each copy an appropriate copyright notice;
keep intact all notices stating that this License and any
non-permissive terms added in accord with section 7 apply to the code;
keep intact all notices of the absence of any warranty; and give all
recipients a copy of this License along with the Program.

  You may charge any price or no price for each copy that you convey,
and you may offer support or warranty protection for a fee.

  5. Conveying Modified Source Versions.

  You may convey a work based on the Program, or the modifications to
produce it from the Program, in the form of source code under the
terms of section 4, provided that you also meet all of these conditions:

    a) The work must carry prominent notices stating that you modified
    it, and giving a relevant date.

    b) The work must carry prominent notices stating that it is
    released under this License and any conditions added under section
    7.  This requirement modifies the requirement in section 4 to
    "keep intact all notices".

    c) You must license the entire work, as a whole, under this
    License to anyone who comes into possession of a copy.  This
    License will therefore apply, along with any applicable section 7
    additional terms, to the whole of the work, and all its parts,
    regardless of how they are packaged.  This License gives no
    permission to license the work in any other way, but it does not
    invalidate such permission if you have separately received it.

    d) If the work has interactive user interfaces, each must display
    Appropriate Legal Notices; however, if the Program has interactive
    interfaces that do not display Appropriate Legal Notices, your
    work need not make them do so.

  A compilation of a covered work with other separate and independent
works, which are not by their nature extensions of the covered work,
and which are not combined with it such as to form a larger program,
in or on a volume of a storage or distribution medium, is called an
"aggregate" if the compilation and its resulting copyright are not
used to limit the access or legal rights of the compilation's users
beyond what the individual works permit.  Inclusion of a covered work
in an aggregate does not cause this License to apply to the other
parts of the aggregate.

  6. Conveying Non-Source Forms.

  You may convey a covered work in object code form under the terms
of sections 4 and 5, provided that you also convey the
machine-readable Corresponding Source under the terms of this License,
in one of these ways:

    a) Convey the object code in, or embodied in, a physical product
    (including a physical distribution medium), accompanied by the
    Corresponding Source fixed on a durable physical medium
    customarily used for software interchange.

    b) Convey the object code in, or embodied in, a physical product
    (including a physical distribution medium), accompanied by a
    written offer, valid for at least three years and valid for as
    long as you offer spare parts or customer support for that product
    model, to give anyone who possesses the object code either (1) a
    copy of the Corresponding Source for all the software in the
    product that is covered by this License, on a durable physical
    medium customarily used for software interchange, for a price no
    more than your reasonable cost of physically performing this

SER_2516

conveying of source, or (2) access to copy the
Corresponding Source from a network server at no charge.

c) Convey individual copies of the object code with a copy of the
written offer to provide the Corresponding Source.  This
alternative is allowed only occasionally and noncommercially, and
only if you received the object code with such an offer, in accord
with subsection 6b.

d) Convey the object code by offering access from a designated
place (gratis or for a charge), and offer equivalent access to the
Corresponding Source in the same way through the same place at no
further charge.  You need not require recipients to copy the
Corresponding Source along with the object code.  If the place to
copy the object code is a network server, the Corresponding Source
may be on a different server (operated by you or a third party)
that supports equivalent copying facilities, provided you maintain
clear directions next to the object code saying where to find the
Corresponding Source.  Regardless of what server hosts the
Corresponding Source, you remain obligated to ensure that it is
available for as long as needed to satisfy these requirements.

e) Convey the object code using peer-to-peer transmission, provided
you inform other peers where the object code and Corresponding
Source of the work are being offered to the general public at no
charge under subsection 6d.

  A separable portion of the object code, whose source code is excluded
from the Corresponding Source as a System Library, need not be
included in conveying the object code work.

  A "User Product" is either (1) a "consumer product", which means any
tangible personal property which is normally used for personal, family,
or household purposes, or (2) anything designed or sold for incorporation
into a dwelling.  In determining whether a product is a consumer product,
doubtful cases shall be resolved in favor of coverage.  For a particular
product received by a particular user, "normally used" refers to a
typical or common use of that class of product, regardless of the status
of the particular user or of the way in which the particular user
actually uses, or expects or is expected to use, the product.  A product
is a consumer product regardless of whether the product has substantial
commercial, industrial or non-consumer uses, unless such uses represent
the only significant mode of use of the product.

  "Installation Information" for a User Product means any methods,
procedures, authorization keys, or other information required to install
and execute modified versions of a covered work in that User Product from
a modified version of its Corresponding Source.  The information must
suffice to ensure that the continued functioning of the modified object
code is in no case prevented or interfered with solely because
modification has been made.

  If you convey an object code work under this section in, or with, or
specifically for use in, a User Product, and the conveying occurs as
part of a transaction in which the right of possession and use of the
User Product is transferred to the recipient in perpetuity or for a
fixed term (regardless of how the transaction is characterized), the
Corresponding Source conveyed under this section must be accompanied
by the Installation Information.  But this requirement does not apply
if neither you nor any third party retains the ability to install
modified object code on the User Product (for example, the work has
been installed in ROM).

  The requirement to provide Installation Information does not include a
requirement to continue to provide support service, warranty, or updates
for a work that has been modified or installed by the recipient, or for
the User Product in which it has been modified or installed.  Access to a
network may be denied when the modification itself materially and
adversely affects the operation of the network or violates the rules and
protocols for communication across the network.

  Corresponding Source conveyed, and Installation Information provided,
in accord with this section must be in a format that is publicly
documented (and with an implementation available to the public in
source code form), and must require no special password or key for
unpacking, reading or copying.

  7. Additional Terms.

  "Additional permissions" are terms that supplement the terms of this
License by making exceptions from one or more of its conditions.
Additional permissions that are applicable to the entire Program shall
be treated as though they were included in this License, to the extent
that they are valid under applicable law.  If additional permissions
apply only to part of the Program, that part may be used separately
under those permissions, but the entire Program remains governed by
this License without regard to the additional permissions.

  When you convey a copy of a covered work, you may at your option
remove any additional permissions from that copy, or from any part of

SER_2517

it.  (Additional permissions may be written to require their own
removal in certain cases when you modify the work.)  You may place
additional permissions on material, added by you to a covered work,
for which you have or can give appropriate copyright permission.

  Notwithstanding any other provision of this License, for material you
add to a covered work, you may (if authorized by the copyright holders of
that material) supplement the terms of this License with terms:

    a) Disclaiming warranty or limiting liability differently from the
    terms of sections 15 and 16 of this License; or

    b) Requiring preservation of specified reasonable legal notices or
    author attributions in that material or in the Appropriate Legal
    Notices displayed by works containing it; or

    c) Prohibiting misrepresentation of the origin of that material, or
    requiring that modified versions of such material be marked in
    reasonable ways as different from the original version; or

    d) Limiting the use for publicity purposes of names of licensors or
    authors of the material; or

    e) Declining to grant rights under trademark law for use of some
    trade names, trademarks, or service marks; or

    f) Requiring indemnification of licensors and authors of that
    material by anyone who conveys the material (or modified versions of
    it) with contractual assumptions of liability to the recipient, for
    any liability that these contractual assumptions directly impose on
    those licensors and authors.

  All other non-permissive additional terms are considered "further
restrictions" within the meaning of section 10.  If the Program as you
received it, or any part of it, contains a notice stating that it is
governed by this License along with a term that is a further restriction,
you may remove that term.  If a license document contains a further
restriction but permits relicensing or conveying under this License, you
may add to a covered work material governed by the terms of that license
document, provided that the further restriction does not survive such
relicensing or conveying.

  If you add terms to a covered work in accord with this section, you
must place, in the relevant source files, a statement of the
additional terms that apply to those files, or a notice indicating
where to find the applicable terms.

  Additional terms, permissive or non-permissive, may be stated in the
form of a separately written license, or stated as exceptions;
the above requirements apply either way.

  8. Termination.

  You may not propagate or modify a covered work except as expressly
provided under this License.  Any attempt otherwise to propagate or
modify it is void, and will automatically terminate your rights under
this License (including any patent licenses granted under the third
paragraph of section 11).

  However, if you cease all violation of this License, then your
license from a particular copyright holder is reinstated (a)
provisionally, unless and until the copyright holder explicitly and
finally terminates your license, and (b) permanently, if the copyright
holder fails to notify you of the violation by some reasonable means
prior to 60 days after the cessation.

  Moreover, your license from a particular copyright holder is
reinstated permanently if the copyright holder notifies you of the
violation by some reasonable means, this is the first time you have
received notice of violation of this License (for any work) from that
copyright holder, and you cure the violation prior to 30 days after
your receipt of the notice.

  Termination of your rights under this section does not terminate the
licenses of parties who have received copies or rights from you under
this License.  If your rights have been terminated and not permanently
reinstated, you do not qualify to receive new licenses for the same
material under section 10.

  9. Acceptance Not Required for Having Copies.

  You are not required to accept this License in order to receive or
run a copy of the Program.  Ancillary propagation of a covered work
occurring solely as a consequence of using peer-to-peer transmission
to receive a copy likewise does not require acceptance.  However,
nothing other than this License grants you permission to propagate or
modify any covered work.  These actions infringe copyright if you do
not accept this License.  Therefore, by modifying or propagating a
covered work, you indicate your acceptance of this License to do so.

10. Automatic Licensing of Downstream Recipients.

  Each time you convey a covered work, the recipient automatically
receives a license from the original licensors, to run, modify and
propagate that work, subject to this License.  You are not responsible
for enforcing compliance by third parties with this License.

  An "entity transaction" is a transaction transferring control of an
organization, or substantially all assets of one, or subdividing an
organization, or merging organizations.  If propagation of a covered
work results from an entity transaction, each party to that
transaction who receives a copy of the work also receives whatever
licenses to the work the party's predecessor in interest had or could
give under the previous paragraph, plus a right to possession of the
Corresponding Source of the work from the predecessor in interest, if
the predecessor has it or can get it with reasonable efforts.

  You may not impose any further restrictions on the exercise of the
rights granted or affirmed under this License.  For example, you may
not impose a license fee, royalty, or other charge for exercise of
rights granted under this License, and you may not initiate litigation
(including a cross-claim or counterclaim in a lawsuit) alleging that
any patent claim is infringed by making, using, selling, offering for
sale, or importing the Program or any portion of it.

  11. Patents.

  A "contributor" is a copyright holder who authorizes use under this
License of the Program or a work on which the Program is based.  The
work thus licensed is called the contributor's "contributor version".

  A contributor's "essential patent claims" are all patent claims
owned or controlled by the contributor, whether already acquired or
hereafter acquired, that would be infringed by some manner, permitted
by this License, of making, using, or selling its contributor version,
but do not include claims that would be infringed only as a
consequence of further modification of the contributor version.  For
purposes of this definition, "control" includes the right to grant
patent sublicenses in a manner consistent with the requirements of
this License.

  Each contributor grants you a non-exclusive, worldwide, royalty-free
patent license under the contributor's essential patent claims, to
make, use, sell, offer for sale, import and otherwise run, modify and
propagate the contents of its contributor version.

  In the following three paragraphs, a "patent license" is any express
agreement or commitment, however denominated, not to enforce a patent
(such as an express permission to practice a patent or covenant not to
sue for patent infringement).  To "grant" such a patent license to a
party means to make such an agreement or commitment not to enforce a
patent against the party.

  If you convey a covered work, knowingly relying on a patent license,
and the Corresponding Source of the work is not available for anyone
to copy, free of charge and under the terms of this License, through a
publicly available network server or other readily accessible means,
then you must either (1) cause the Corresponding Source to be so
available, or (2) arrange to deprive yourself of the benefit of the
patent license for this particular work, or (3) arrange, in a manner
consistent with the requirements of this License, to extend the patent
license to downstream recipients.  "Knowingly relying" means you have
actual knowledge that, but for the patent license, your conveying the
covered work in a country, or your recipient's use of the covered work
in a country, would infringe one or more identifiable patents in that
country that you have reason to believe are valid.

  If, pursuant to or in connection with a single transaction or
arrangement, you convey, or propagate by procuring conveyance of, a
covered work, and grant a patent license to some of the parties
receiving the covered work authorizing them to use, propagate, modify
or convey a specific copy of the covered work, then the patent license
you grant is automatically extended to all recipients of the covered
work and works based on it.

  A patent license is "discriminatory" if it does not include within
the scope of its coverage, prohibits the exercise of, or is
conditioned on the non-exercise of one or more of the rights that are
specifically granted under this License.  You may not convey a covered
work if you are a party to an arrangement with a third party that is
in the business of distributing software, under which you make payment
to the third party based on the extent of your activity of conveying
the work, and under which the third party grants, to any of the
parties who would receive the covered work from you, a discriminatory
patent license (a) in connection with copies of the covered work
conveyed by you (or copies made from those copies), or (b) primarily
for and in connection with specific products or compilations that
contain the covered work, unless you entered into that arrangement,
or that patent license was granted, prior to 28 March 2007.

https://raw.githubusercontent.com/neo4j/neo4j/3.4/packaging/standalone/LICENSE.txt                                6/8

SER_2519

Nothing in this License shall be construed as excluding or limiting
any implied license or other defenses to infringement that may
otherwise be available to you under applicable patent law.

  12. No Surrender of Others' Freedom.

  If conditions are imposed on you (whether by court order, agreement or
otherwise) that contradict the conditions of this License, they do not
excuse you from the conditions of this License.  If you cannot convey a
covered work so as to satisfy simultaneously your obligations under this
License and any other pertinent obligations, then as a consequence you may
not convey it at all.  For example, if you agree to terms that obligate you
to collect a royalty for further conveying from those to whom you convey
the Program, the only way you could satisfy both those terms and this
License would be to refrain entirely from conveying the Program.

  13. Remote Network Interaction; Use with the GNU General Public License.

  Notwithstanding any other provision of this License, if you modify the
Program, your modified version must prominently offer all users
interacting with it remotely through a computer network (if your version
supports such interaction) an opportunity to receive the Corresponding
Source of your version by providing access to the Corresponding Source
from a network server at no charge, through some standard or customary
means of facilitating copying of software.  This Corresponding Source
shall include the Corresponding Source for any work covered by version 3
of the GNU General Public License that is incorporated pursuant to the
following paragraph.

  Notwithstanding any other provision of this License, you have permission
to link or combine any covered work with a work licensed under version 3
of the GNU General Public License into a single combined work, and to
convey the resulting work.  The terms of this License will continue to
apply to the part which is the covered work, but the work with which it is
combined will remain governed by version 3 of the GNU General Public
License.

  14. Revised Versions of this License.

  The Free Software Foundation may publish revised and/or new versions of
the GNU Affero General Public License from time to time.  Such new
versions will be similar in spirit to the present version, but may differ
in detail to address new problems or concerns.

  Each version is given a distinguishing version number.  If the
Program specifies that a certain numbered version of the GNU Affero
General Public License "or any later version" applies to it, you have
the option of following the terms and conditions either of that
numbered version or of any later version published by the Free
Software Foundation.  If the Program does not specify a version number
of the GNU Affero General Public License, you may choose any version
ever published by the Free Software Foundation.

  If the Program specifies that a proxy can decide which future
versions of the GNU Affero General Public License can be used, that
proxy's public statement of acceptance of a version permanently
authorizes you to choose that version for the Program.

  Later license versions may give you additional or different
permissions.  However, no additional obligations are imposed on any
author or copyright holder as a result of your choosing to follow a
later version.

  15. Disclaimer of Warranty.

  THERE IS NO WARRANTY FOR THE PROGRAM, TO THE EXTENT PERMITTED BY
APPLICABLE LAW.  EXCEPT WHEN OTHERWISE STATED IN WRITING THE COPYRIGHT
HOLDERS AND/OR OTHER PARTIES PROVIDE THE PROGRAM "AS IS" WITHOUT WARRANTY
OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO,
THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR
PURPOSE.  THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE PROGRAM
IS WITH YOU.  SHOULD THE PROGRAM PROVE DEFECTIVE, YOU ASSUME THE COST OF
ALL NECESSARY SERVICING, REPAIR OR CORRECTION.

  16. Limitation of Liability.

  IN NO EVENT UNLESS REQUIRED BY APPLICABLE LAW OR AGREED TO IN WRITING
WILL ANY COPYRIGHT HOLDER, OR ANY OTHER PARTY WHO MODIFIES AND/OR CONVEYS
THE PROGRAM AS PERMITTED ABOVE, BE LIABLE TO YOU FOR DAMAGES, INCLUDING ANY
GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE
USE OR INABILITY TO USE THE PROGRAM (INCLUDING BUT NOT LIMITED TO LOSS OF
DATA OR DATA BEING RENDERED INACCURATE OR LOSSES SUSTAINED BY YOU OR THIRD
PARTIES OR A FAILURE OF THE PROGRAM TO OPERATE WITH ANY OTHER PROGRAMS),
EVEN IF SUCH HOLDER OR OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF
SUCH DAMAGES.

  17. Interpretation of Sections 15 and 16.

  If the disclaimer of warranty and limitation of liability provided
above cannot be given local legal effect according to their terms,

SER_2520

```
reviewing courts shall apply local law that most closely approximates
an absolute waiver of all civil liability in connection with the
Program, unless a warranty or assumption of liability accompanies a
copy of the Program in return for a fee.

                     END OF TERMS AND CONDITIONS

           How to Apply These Terms to Your New Programs

  If you develop a new program, and you want it to be of the greatest
possible use to the public, the best way to achieve this is to make it
free software which everyone can redistribute and change under these terms.

  To do so, attach the following notices to the program.  It is safest
to attach them to the start of each source file to most effectively
state the exclusion of warranty; and each file should have at least
the "copyright" line and a pointer to where the full notice is found.

    <one line to give the program's name and a brief idea of what it does.>
    Copyright (C) <year>  <name of author>

    This program is free software: you can redistribute it and/or modify
    it under the terms of the GNU Affero General Public License as
    published by the Free Software Foundation, either version 3 of the
    License, or (at your option) any later version.

    This program is distributed in the hope that it will be useful,
    but WITHOUT ANY WARRANTY; without even the implied warranty of
    MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE.  See the
    GNU Affero General Public License for more details.

    You should have received a copy of the GNU Affero General Public License
    along with this program.  If not, see <http://www.gnu.org/licenses/>.

Also add information on how to contact you by electronic and paper mail.

  If your software can interact with users remotely through a computer
network, you should also make sure that it provides a way for users to
get its source.  For example, if your program is a web application, its
interface could display a "Source" link that leads users to an archive
of the code.  There are many ways you could offer source, and different
solutions will be better for different programs; see section 13 for the
specific requirements.

  You should also get your employer (if you work as a programmer) or school,
if any, to sign a "copyright disclaimer" for the program, if necessary.
For more information on this, and how to apply and follow the GNU AGPL, see
<http://www.gnu.org/licenses/>.


"Commons Clause" License Condition

The Software is provided to you by the Licensor under the License, as
defined below, subject to the following condition. Without limiting
other conditions in the License, the grant of rights under the License
will not include, and the License does not grant to you, the right to
Sell the Software.  For purposes of the foregoing, "Sell" means
practicing any or all of the rights granted to you under the License
to provide to third parties, for a fee or other consideration,
a product or service that consists, entirely or substantially,
of the Software or the functionality of the Software. Any license
notice or attribution required by the License must also include
this Commons Cause License Condition notice.
```

SER_2521

# EXHIBIT 4

SER_2522

Case 5:18-cv-07182-EJD   Document 98-2   Filed 12/11/20   Page 52 of 81





(Neo4j Blog)←[:BACK]

# Simplicity Wins: We're Shifting to an Open Core Licensing Model for Neo4j Enterprise Edition



Philip Rathle, VP of Products

Nov 15, 2018  ·  2 mins read

**TL;DR:** Starting with Neo4j 3.5, Enterprise Edition source code will no longer be published to the open source commons, including future versions.



- This does not impact Neo4j Community Edition. We will continue to deliver the world's best and most comprehensive graph database as open source.

- This does not affect customers, partners, OEMs or Neo4j Desktop users.

- Code contributions from outside Neo4j remain available as open source in earlier versions.

## Neo4j Is Going Open Core

Today we are announcing an important change to the licensing of Neo4j Enterprise Edition: **Beginning with Neo4j 3.5 release candidates, Enterprise Edition is available solely under a commercial license.** (Read

SER_2523

Simplicity Wins: We're Shifting to an Open Core Licensing Model for Neo4j Enterprise Edition

Case 5:18-cv-07182-EJD    Document 98-2    Filed 12/11/20    Page 53 of 81

our FAQ here for all the nitty-gritty details.)

We are doing this to clarify our licensing model and so that we can continue to offer you the most powerful graph database technology that we can offer: both commercially and across the wide range of open source projects to which we remain strongly committed. In essence, Neo4j is moving to a more industry-standard "open core" licensing model.

Neo4j Community Edition – the core of the Neo4j Graph Platform – will continue to be provided under an open source GPLv3 license, as it has been for years. In order minimize business confusion around what portion of our IP we sell and what portion we offer as free open source, we will no longer make Neo4j Enterprise Edition source code publicly available.

This move brings Neo4j in line with industry norms – most of the popular open source databases use an open core model – and it clearly delineates the licensing choices between Neo4j Enterprise and Community Editions.

What this **does not** affect:

- **Neo4j Community Edition.** This does not impact Community Edition in any way. The vast majority of new features have always landed into both editions, and we intend to continue investing in it.

- **Any software that you have received (or will receive) from us.** The Neo4j Enterprise distribution that you download from Neo4j.com, Docker Hub, etc. is not undergoing any change. Those binaries are already licensed under a commercial license. This move doesn't affect that.

- **Startup, Educational, Developer, Data Journalism and other free Enterprise Edition licenses.** Neo4j Enterprise Edition is available under a commercial license and is, in many cases, free.

- **Contributors.** More than 99% of Enterprise Edition code was authored by Neo4j employees and contractors. We have reached out to the few who make up the fractional <1% to affirm their contributions are given proper due, as well as to confirm their contributions are still freely available in past versions.

- **Older versions of Neo4j Enterprise.** Any version of Neo4j that's already been published is going to remain on GitHub.

https://neo4j.com/blog/open-core-licensing-model-neo4j-enterprise-edition/[11/7/2020 3:16:53 PM]

Simplicity Wins: We're Shifting to an Open Core Licensing Model for Neo4j Enterprise Edition

What this *does* affect:

- **The source code we publish.** In the past, we've published our Enterprise Edition code to GitHub alongside the Neo4j Community Edition source that we publish. Starting today, we will only publish source for Neo4j Community Edition.

- **Neo4j-dependent open source projects.** We've reached out to the few open source projects we know are based on Neo4j Enterprise Edition, and we are working with them to make sure they have a way forward. These are few and far between (we know of five globally) as the AGPLv3 is a rather restrictive license, and because many projects qualify for free use under the Startup license. Please get in touch with us if you feel you fall under this category.

## Reasons Behind Our Move to Open Core

Neo4j Enterprise Edition has always unambiguously been Neo4j's commercial edition, just like Neo4j Community Edition has always clearly been intended for broad free use by the community under the GPLv3.

Our choice to license our commercially-destined, commercially-produced IP as AGPLv3 was made for a number of reasons that were right for the time. However, times have changed.

The right decision for us today is to make the commercial portion of our product closed source – but not the rigorously open and extensively capable Neo4j Community Edition database core.

This change clarifies what has always been our intent. The move to a clearer and more commonplace model comes from numerous cases over the years where we saw confusion, misunderstanding and misinterpretation.

Any customer, user or partner who feels this change will directly affect them should reach out to us by contacting Neo4j Support.

https://neo4j.com/blog/open-core-licensing-model-neo4j-enterprise-edition/[11/7/2020 3:16:53 PM]

SER_2525

Simplicity Wins: We're Shifting to an Open Core Licensing Model for Neo4j Enterprise Edition

## Final Thoughts: We Love Open Source

We are narrowing the scope of our open source contributions in one specific area, but if you take a step back and look at all of the work that we're doing today, we're making *more FOSS contributions than ever, across a wider range of projects than ever, with more permissive licenses than ever*.

We are committed to continuing to invest in and to offer the largest, most comprehensive graph technology stack available, as open source.

Today this includes the following projects and products:

- **Neo4j Community Edition** (GPLv3) – the best open source graph database in the world which is the core of the Neo4j ecosystem and platform;

- **openCypher** (Apache 2.0) – the graph query language and future of Neo4j Cypher via the openCypher project and the GQL standardization initiative;

- **Native language drivers** (Apache 2.0) for Java, JavaScript, Python, .NET and Go; as well as Neo4j's JDBC driver and a variety of connectors (for Elasticsearch, GraphQL, et al);

- **Graph Algorithms** (GPLv3) – more than 20 iterative graph algorithms for finding communities and clusters, centrality, similarities and paths;

- **Neo4j APOC Library** (Apache 2.0) – a collection of hundreds of procedures ("Awesome Procedures on Cypher") that work with both editions of Neo4j;

- **Cypher for Apache Spark** (Apache 2.0) and **Cypher for Gremlin** (Apache 2.0) – extending the Cypher language to other graph engines besides Neo4j.

If you'd like to know more of the details about our move to an open core licensing model, please read more on our published FAQ page. Thank you so much for your understanding, and let's stay connected!

–Philip

https://neo4j.com/blog/open-core-licensing-model-neo4j-enterprise-edition/[11/7/2020 3:16:53 PM]

SER_2526

Simplicity Wins: We're Shifting to an Open Core Licensing Model for Neo4j Enterprise Edition

cypher | graph algorithms | graph database | graph technology | neo4j | Neo4j Community | Neo4j Desktop
Neo4j Graph Platform | open core | open source



Neo4j Community Disclaimer

Author
**Philip Rathle, VP of Products**



Philip Rathle has a passion for building great products that help users solve tomorrow's challenges. He spent the first decade of his career building information solutions for some of the world's largest companies: first with Accenture, then with Tanning Technology, one of the world's top database consultancies of the time, ...
know more

Related Articles

Simplicity Wins: We're Shifting to an Open Core Licensing Model for Neo4j Enterprise Edition

Case 5:18-cv-07182-EJD   Document 98-2   Filed 12/11/20   Page 57 of 81



Graphistania Podcast: Authors Discuss Graph Databases For Dummies

Oct 27 · 2 mins read

SER_2528

Simplicity Wins: We're Shifting to an Open Core Licensing Model for Neo4j Enterprise Edition

Case 5:19-cv-07182-EJD   Document 98-2   Filed 12/11/20   Page 58 of 81



#GraphCast: Graph Data Science Library

Oct 23 · < 1 min read

SER_2529

Simplicity Wins: We're Shifting to an Open Core Licensing Model for Neo4j Enterprise Edition

Case 5:19-cv-07182-EJD   Document 98-3   Filed 12/11/20   Page 59 of 81



Announcing: Graph-Native Machine Learning in Neo4j!

Oct 21 · 6 mins read

## Comments ()

SER_2530

Simplicity Wins: We're Shifting to an Open Core Licensing Model for Neo4j Enterprise Edition

Case 5:18-cv-07182-EJD    Document 98-2    Filed 12/11/20    Page 60 of 81

## Leave a Reply

Your email address will not be published.



| PRODUCTS | CUSTOMERS | Why Graph Databases? | Company | |
|---|---|---|---|---|
| USE CASES | LEARN | Graph Databases vs RDBMS | News | |
| PARTNERS | DEVELOPERS | What's New in Neo4j | Awards | |
| | | Graphdatabases.com | Careers | |
| | | | Staff | |

CONTACT US →

SER_2531

Simplicity Wins: We're Shifting to an Open Core Licensing Model for Neo4j Enterprise Edition

© 2020 Neo4j, Inc.

Terms | Privacy | Sitemap

Neo4j®, Neo Technology®, Cypher®, Neo4j®
Bloom™ and Neo4j® Aura™ are registered
trademarks
of Neo4j, Inc. All other marks are owned by their
respective companies.

US: 1-855-636-4532
Sweden +46 171 480 113
UK: +44 20 3868 3223
France: +33 (0) 1 73 23 56 07

Contact Sales: 1.855.636.4532        Email a graph expert

SER_2532

# EXHIBIT 5

SER_2533



# Trademark Policy

The name and trademarks of Neo Technology, Inc. and its subsidiaries ("Neo Technology") signals a quality scalable graph database. Neo Technology is proud of its reputation for excellent software products, and wishes to maintain that reputation for the benefit of Neo Technology and its open source community. This trademark policy (the "Trademark Policy") describes the ways in which all of the trademarks, service marks, and logos of Neo Technology relating to the Neo Technology products such as Neo4j ("Trademark(s)") may or may not be used. The Trademarks are:

- Neo4j
- Cypher
- Neo Technology

If you use any of the Trademarks, you must abide by this Trademark Policy. We encourage communication to prevent misunderstandings. If you have any questions or comments, please contact us as described at the end of the Trademark Policy.

Neo Technology's Trademark Policy attempts to balance two competing interests: Neo Technology's need to ensure that its Trademarks remain reliable indicators of quality, and Neo Technology's desire to permit community members to contribute to the development and success of the Neo Technology software. Striking a proper balance can be difficult, and we hope this Trademark Policy will help us to do that.

Underlying Neo Technology's Trademark Policy is the general law of trademarks. Trademarks exist to help consumers identify the source or origin of products. When a company makes a good product or a bad one, consumers begin to associate those qualities with the name and trademarks of that company. The reputation of a company can be a key factor in a user deciding to use one product or another. Allowing others to place a company's trademarks on other people's products can affect this reputation. Trademark law exists, at least in part, to help users avoid being confused about the source and quality of the goods they are using.

Witness:
John Mark Suhy
**Exhibit 06**
10/22/2020  B Gerald

**SER_2534**

Trademark Policy - Neo4j Graph Database

Neo Technology software, which is created and/or distributed by Neo Technology and thus properly bears the Trademarks, is the software in the exact binary form that it is distributed by Neo Technology, without modification of any kind. To the extent any authorized modifications are made to the software, such modified software should no longer bear the Trademarks. The public has a right to know when it is receiving a genuine Neo Technology product that is quality assured by Neo Technology.

Uses that Are Not Approved by This Trademark Policy

The following uses are not allowed. If you feel you need to use the Trademarks as described below, and have a legitimate reason to do so, please contact us. Some such uses may be acceptable under a separate written license agreement between you and Neo Technology. However, Neo Technology will decide this at its discretion on a case-by-case basis.

- **Certain web uses**. You must not use any Trademark in a web page title, titletag, metatag, or other manner with the intent or the likely effect of influencing search engine rankings or results listings.
- **Combination marks**. You must not use any Trademark in a manner that creates a "combined mark," or use that integrates other wording with the Trademark in a way that the public may think of the use as a new mark (e.g., SuperNeo4j, or Neo4j Lite by me)
- **Company names**. You must not use any Trademarks as part of your company name, trademark, or logo.
- **Domain names**. If you want to include all or part of a Neo Technology Trademark in a domain name, you must first receive written permission from Neo Technology. This includes uses for user groups, developer groups, or international groups. We may approve many such uses, but we need to do this on a case-by-case basis.
- **Misuse**. You must not use the Trademarks in a manner that is unethical, offensive, disparaging, illegal, or in bad taste.

Uses Permitted Under This Trademark Policy

In all cases you must use the Trademark only as permitted by this Trademark Policy and only as authorized in, and subject to, a separate written license agreement between you and Neo Technology. Also, if you use the Trademarks in violation of this Trademark Policy in any way, Neo Technology may revoke your right to use the Trademarks.

Services Related to Neo Technology Software

If you offer services related to Neo Technology software, unless you have entered into a separate written license agreement between you and Neo Technology, you may only use Neo Technology's Trademarks in word form to describe and advertise your services, so long as you do not suggest that you are the origin of the Neo Technology software or have otherwise been authorized by Neo Technology to provide services related to the Neo Technology software. For example, your web site might say "Training services for the

SER_2535

Trademark Policy - Neo4j Graph Database

Neo Technology software available here." It must not say "Neo Technology services sold here," or "custom Neo Technology software available here."

## Proper trademark use

If you use the Trademarks as described in this Trademark Policy, here is how they should be used.

- **Proper form.** Neo Technology's Trademarks should be used in their exact form, neither abbreviated nor combined with any other word or words. Do not vary the spelling, add hyphens, make one word into two, or use possessive or plural forms of the Trademarks. Do not abbreviate a trademark to create an acronym. When using a logo, you must never modify the design, add or delete any words, or change any colors or proportions. The logo may only be scaled proportionally. The logo may in it's entirely be displayed using the exact colors used by Neo Technology or shown at http://neo4j.com/style-guide.
- **Use of word mark.** We encourage you to use the word form of the Trademark (as opposed to the logo), because using the word form is easier to do without violating this policy. You may use the word form of the Trademarks – Neo4j and Cypher. No other capitalization should be used. Use of the word form of the trademark should be in the same font and style as the surrounding text.
- **Trademarks are adjectives.** Always use the Trademarks as adjectives, and not as a verb or noun or in the possessive or plural forms. Examples of proper use: Neo4j Software, Neo4j Software application. Examples of improper use: Custom Neo4j or I Neo4j-ed my system.
- **Accompanying symbol.** The first or most prominent mention of a Neo Technology Trademark should be accompanied by a symbol indicating whether the mark is a registered trademark ("R") or an unregistered trademark ("tm").
- **Attribution.** The fact that the Trademarks are owned by Neo Technology should be stated (e.g., "[Neo4j] is a trademark of Neo Technology, Inc.") in a footnote or similar place, in reasonably legible position and size.
- **Separation.** The Neo Technology logos must be used as standalone icons, without any other third-party logos and/or trademarks combined or associated with them. A margin of at least the size of [describe letter or graphical feature of the logo] on the logo should be left empty around the logo in the background color of the displayed logo.

**Possible Infringements.** Please help us by reporting any possible infringement of any Trademark by contacting us at the e-mail address below.

webinfo@neotechnology.com

## Policy Updates

Neo Technology reserves the right to modify this Trademark Policy at any time. You should review this Trademark Policy from time to time so that you will be aware of any updates. Any updates will apply as soon as they are posted on this page.

SER_2536

Trademark Policy - Neo4j Graph Database

Questions

Neo Technology has tried to make this Trademark Policy as comprehensive and understandable as possible. If you are considering a use of a Trademark that is not covered by the policy, and you are unsure whether that use would run afoul of this Trademark Policy, please feel free to contact us. Also, we welcome your suggestions as to how to make this Trademark Policy better and more workable for our community. We like hearing from you!

*Updated October 13, 2015*



PRODUCTS          CUSTOMERS          COMPANY

SOLUTIONS         LEARN              News

PARTNERS          DEVELOPERS         Awards

                                     Jobs

                                     Staff

GET NEO4J NEWS                      CONTACT US →

Keep up with the latest graph         1-855-636-4532 US
© 2017 Neo Technology, Inc.           database trends, tips & events.    +44 808 189 0493 UK
Terms | Privacy | Sitemap                                               Please email: Germany
                                                                        +33 (0) 8 05 08 03 44 France
Neo4j®, Cypher®, and
Neo Technology®
are registered trademarks
of Neo Technology, Inc.

CONTACT SALES: 1.855.636.4532          EMAIL A GRAPH EXPERT

**SER_2537**

# EXHIBIT 6

SER_2538



Skip to content

Company ▾    Support    Contact Us

PRODUCTS    SOLUTIONS    CUSTOMERS    PARTNERS    RESOURCES

▾    ▾    ▾    DEVELOPERS    DOWNLOAD NEO4J

# Trademark Guidelines

## Legal Notices



Terms
California Privacy Rights
Privacy Policy
Trademark Policy

This document outlines the policy for allowable uses of trademarks owned by Neo4j, Inc. and its subsidiaries ("Neo4j") by other parties.

Neo4j owns all Neo4j-related trademarks, service marks, and logos on behalf of our communities and the names of all Neo4j® projects are trademarks of Neo4j.

The role of trademarks is to provide assurance about the quality of the products or services with which the trademark is associated. Neo4j has established this Policy to encourage others to make accurate, non-confusing use of the Neo4j trademarks, while also ensuring that those trademarks maintain their distinctiveness and strength as reliable indicators of the source and quality of Neo4j products and services. Although some Neo4j projects may be available under free and open licenses, those licenses cover copyright only and do not include any express or implied right to use our trademarks. Neo4j does not allow third parties to use its trademarks without a written agreement or express permission. Thus, Neo4j projects that are available under open source licenses may be copied, modified, or sold by third parties, but they cannot be branded or marketed with Neo4j trademarks in the absence of a trademark license.

While open-source licenses allow modification of copyrighted software and distribution in original or modified form, such distribution could be misleading if distributed under the same name.  This could cause confusion among consumers of the software as to source. They may mistakenly believe they are receiving software that is produced or supported by Neo4j.  This Policy describes the circumstances under which you may use our trademarks, regardless of the type of license you may have from Neo4j.  In this Policy we are not trying to limit the lawful use of our trademarks, but rather describe for you what we consider the parameters of lawful use to be. Trademark law can be ambiguous, so we hope to provide enough clarity for you to understand whether we will consider your use licensed or non-infringing.

Neo4j® software, which is created and/or distributed by Neo4j, is the software in the exact form that it is distributed by Neo4j without modification of any kind. To the extent any authorized modifications are made to the software, such modified software should no longer bear the Neo4j trademarks. The public has a right to know when it is receiving a genuine Neo4j® product that is quality assured by Neo4j.

https://neo4j.com/trademark-policy/    1/5

SER_2539

9/26/2019    Case 5:18-cv-07182-EJD   Document 98-2   Filed 04/11/20   Page 69 of 81
Case 5:19-cv-06226   Document 1-2   Filed 10/01/19   Page 6 of 0

The sections that follow describe what trademarks are covered by this Policy, as well as uses of the trademarks that are allowed without additional permission from us. Any use that does not comply with this Policy or for which we have not separately provided written permission is not a use that we have approved, so you must decide for yourself whether the use is nevertheless lawful.

## Our Commitment to Open Source Principles

We want to encourage and facilitate the use of our open source software by the community, but do so in a way that still ensures that the Neo4j trademarks are meaningful as a source and quality indicator for our software and the associated goods and services and continue to embody the high reputation of the software and the community associated with it. This Policy therefore tries to strike the proper balance between: 1) our need to ensure that our trademarks remain reliable indicators of the qualities that they are meant to preserve and 2) our community members' desire to be full participants in Neo4j® projects.

## Trademarks Subject to the Guidelines

### Our Trademarks

This Policy covers the following non-exhaustive list of our trademarks:

1. Our word trademarks and service marks (the "Word Marks"):
   Neo4j®
   Cypher®
   Neo4j® Bloom™
   Neo4j® Desktop™
   Neo Technology®



2. Our logos (the "Logos")



3. The unique visual styling of our website and elements used in or otherwise related to the products and services we offer (the "Trade Dress"). See our Style Guide for further information.

This Policy encompasses all trademarks and service marks, whether Word Marks, Logos or Trade Dress, which are collectively referred to as the "Marks." Some Marks may not be registered, but registration is not necessarily required for ownership of trademarks. This Policy covers our Marks whether they are registered or not.

## Universal Considerations for All Uses

The following guidelines show proper (and improper) use of Marks. Any use of the Marks must be licensed and comply with these guidelines. Whenever you use one of the Marks, you must always do so in a way that does not mislead anyone, either directly or by omission, about exactly what they are getting and from whom. For example, you cannot say you are distributing the Neo4j® software when you're distributing a modified version

SER_2540

of it, because people would be confused when they are not getting the same features and functionality they would get if they downloaded the software directly from us. You also cannot distribute Neo4j® software using the Marks if you do not have a license from us, because that would imply that your distribution comes from or is supported by Neo4j. You cannot use our Marks on your website in a way that suggests that your website is an official website or that we endorse your website, unless permitted in a written agreement with us. You can, though, say you like the Neo4j® software, say that you participate in the Neo4j® community, or refer to Neo4j® products and services.

This fundamental requirement, that it is always clear to people what they are getting and from whom, is reflected throughout this Policy. It should also serve as your guide if you are not sure about how you are using the Marks.

In addition:
You may not use the Marks in association with the use or distribution of software if you are also not in compliance with the copyright license for the software.

You may not use or register, in whole or in part, the Marks as part of your own trademark, service mark, domain name, company name, trade name, product name or service name.

Provided that you have obtained a license from Neo4j, you can use the Word Marks in book and article titles, and the Logo in illustrations within the document, as long as the use does not suggest that we have published, endorse, or agree with your work.

Trademark law does not allow your use of names or trademarks that are too similar to ours. You therefore may not use an obvious variation of any of our Marks or any phonetic equivalent, foreign language equivalent, takeoff, or abbreviation for a similar or compatible product or service. This includes combinations or integrations of all or portions of the Marks in a way that the public may think of the use as a new mark (e.g. SuperNeo4j, or Neo5k).

You agree that you will not acquire any rights in the Marks and that any goodwill generated by your use of the Marks inures solely to our benefit.

## Proper Use of the Marks

These rules hold true for all trademarks, not just ours, so you should follow them for our Marks as well as anyone else's.

<u>Always use the Marks in their Exact Form and Distinguishable from Other Text</u>. Always use the Word Marks in a manner distinguished from surrounding text, with initial capital letters, and in the exact form with the correct spelling (neither abbreviated, hyphenated, or combined with any other word or words).

|  CORRECT | INCORRECT |
| --- | --- |
| Neo4j® | NEO4J |
|  | Neo-4j |
|  | neo4j |
|  | n4j |
|  | Neo |

<u>Use Marks as Proper Adjectives Followed by a Generic Term.</u> Trademarks should be used as adjectives followed by a generic modifier, and not as nouns or verbs. Trademarks are products or services, never actions. Do not use "a" or "the" to refer to an instance of the Marks. For example:

|  CORRECT | INCORRECT |
| --- | --- |

SER_2541

| CORRECT | INCORRECT |
|---|---|
| The Neo4j® graph platform is widely used in many industries. | Neo4j® is widely used. |
| I was able to quickly realize graph epiphanies with Neo4j® Bloom™ visualization software. | We use the Neo4j. |
| I downloaded the Neo4j® database from neo4j.com. | I use Cypher. |
| Cypher® query language | I load data into and out of Neo4j. |

<u>Do Not Use Marks in the Possessive Form.</u> Because trademarks are not nouns, they should not be used in the possessive from. For example:

| CORRECT | INCORRECT |
|---|---|
| The Neo4j® graph database software presents and stores data natively as a graph. | Neo4j's storage presents and stores data natively as a graph. |

<u>Do Not Use Marks in the Plural Form.</u> Because trademarks are not nouns, they should not be used in the plural form. For example:

| CORRECT | INCORRECT |
|---|---|
| The Neo4j® platform allows multiple instances of the Neo4j database software to form a single highly-available cluster. | High-availability clustering allows a cluster of instances to be formed using multiple Neo4js. |

<u>Do Not Use Marks to Suggest Endorsement by Neo4j.</u>

| CORRECT | INCORRECT |
|---|---|
| | "Open Neo4j" |
| graph database software | XYZ ENTERPRISE 3.4.9 (FREE AND OPEN UNRESTRICTED NEO4J ENTERPRISE FORK) |

<u>Use of Logos</u>

You may not change any Logo except to scale it proportionally. This means you may not add decorative elements, change the colors, change the proportions, distort it, add elements, or combine it with other logos. The logo may only be used displaying the exact colors shown in our Style Guide.

<u>Mark Attribution and Notices</u>

The first or most prominent mention of a Mark on a webpage, document, packaging, or documentation should be accompanied by a symbol indicating whether the mark is a registered trademark ("®") or an unregistered trademark ("™"). Also, if you are using our Marks for uses for which we are granting a separate license, please put following notice at the foot of the page where you have used the Mark (or, if in a book, on the credits page), on any packaging or labeling, and on advertising or marketing materials: "Neo4j is a trademark or registered trademark of Neo4j, Inc. or its subsidiaries in the United States and/or other countries."

<u>Possible Infringement</u>

If you are aware of any confusing use or misuse of the Marks in any way, we would appreciate you bringing this to our attention. Please contact us at webinfo@neo4j.com so that we can investigate it further.

SER_2542

Updates

Neo4j reserves the right to modify or update this Policy at any time. You should review this Policy from time to time so that you will be aware of any modifications or updates as they will apply as soon as they as posted on this page.

Further Information

Neo4j has tried to make this Trademark Policy as comprehensive and understandable as possible. If you have any questions about this Policy, would like to speak with us about the use of our Marks in ways not described in the Policy, or see any abuse of our Marks, please contact us.

*Updated April 3, 2019*

- *PRODUCTS*
- *SOLUTIONS*
- *PARTNERS*

- *CUSTOMERS*
- *LEARN*
- *DEVELOPERS*

- *Why Graph Databases?*
- *Graph Databases vs RDBMS*
- *What's New in Neo4j*
- *Graphdatabases.com*

- *Company*
- *News*
- *Awards*
- *Careers*
- *Staff*

    

© 2019 Neo4j, Inc.
*Terms* | *Privacy* | *Sitemap*

*Neo4j®, Neo Technology® and Cypher®*
*are registered trademarks*
*of Neo4j, Inc.*

**Contact Us →**

*US: 1-855-636-4532*
*Sweden +46 171 480 113*
*UK: +44 20 3868 3223*
*France: +33 (0) 8 05 08 03 44*
*Germany: +49 (0)89 26204 6300*

*Contact Sales: 1.855.636.4532* *Email a graph expert*

SER_2543

# EXHIBIT 7

SER_2544



## Legal Notices

Terms

California Privacy
Rights

Privacy Policy

Trademark Policy

Modern Slavery
Statement

This document outlines the policy for allowable uses of trademarks owned by Neo4j, Inc. and its subsidiaries ("Neo4j") by other parties.

Neo4j owns all Neo4j-related trademarks, service marks, and logos on behalf of our communities and the names of all Neo4j® projects are trademarks of Neo4j.

The role of trademarks is to provide assurance about the quality of the products or services with which the trademark is associated. Neo4j has established this Policy to encourage others to make accurate, non-confusing use of the Neo4j trademarks, while also ensuring that those trademarks maintain their distinctiveness and strength as reliable indicators of the source and quality of Neo4j products and services. Although some Neo4j projects may be available under free and open licenses, those licenses cover copyright only and do not include any express or implied right to use our trademarks. Neo4j does not allow third parties to use its trademarks without a written agreement or express permission. Thus, Neo4j projects that are available under open source licenses may be copied, modified, or sold by third parties, but they cannot be branded or marketed with Neo4j trademarks in the absence of a trademark license.

While open-source licenses allow modification of copyrighted software and distribution in original or modified form, such distribution could be misleading if distributed under the same name.  This could cause confusion among consumers of the software as to source. They may mistakenly believe they are receiving software that is produced or supported by Neo4j.  This Policy describes the circumstances under which you may use our trademarks, regardless of the type of license you may have from Neo4j.  In this Policy we are not trying to limit the lawful use of our trademarks, but rather describe for you what we consider the parameters of lawful use to be. Trademark law can

N4J_019936

SER_2545

be ambiguous, so we hope to provide enough clarity for you to understand whether we will consider your use licensed or non-infringing.

Neo4j® software, which is created and/or distributed by Neo4j, is the software in the exact form that it is distributed by Neo4j without modification of any kind. To the extent any authorized modifications are made to the software, such modified software should no longer bear the Neo4j trademarks. The public has a right to know when it is receiving a genuine Neo4j® product that is quality assured by Neo4j.

The sections that follow describe what trademarks are covered by this Policy, as well as uses of the trademarks that are allowed without additional permission from us. Any use that does not comply with this Policy or for which we have not separately provided written permission is not a use that we have approved, so you must decide for yourself whether the use is nevertheless lawful.

## Our Commitment to Open Source Principles

We want to encourage and facilitate the use of our open source software by the community, but do so in a way that still ensures that the Neo4j trademarks are meaningful as a source and quality indicator for our software and the associated goods and services and continue to embody the high reputation of the software and the community associated with it. This Policy therefore tries to strike the proper balance between: 1) our need to ensure that our trademarks remain reliable indicators of the qualities that they are meant to preserve and 2) our community members' desire to be full participants in Neo4j® projects.

## Trademarks Subject to the Guidelines

<u>Our Trademarks</u>

This Policy covers the following non-exhaustive list of our trademarks:

1. Our word trademarks and service marks (the "Word Marks"):
   Neo4j®
   Cypher®
   Neo4j® Bloom™
   Neo4j® Desktop™

N4J_019937

SER_2546

Neo Technology®

2. Our logos (the "Logos")





3. The unique visual styling of our website and elements used in or otherwise related to the products and services we offer (the "Trade Dress"). See our Style Guide for further information.

This Policy encompasses all trademarks and service marks, whether Word Marks, Logos or Trade Dress, which are collectively referred to as the "Marks." Some Marks may not be registered, but registration is not necessarily required for ownership of trademarks. This Policy covers our Marks whether they are registered or not.

## Universal Considerations for All Uses

The following guidelines show proper (and improper) use of Marks. Any use of the Marks must be licensed and comply with these guidelines. Whenever you use one of the Marks, you must always do so in a way that does not mislead anyone, either directly or by omission, about exactly what they are getting and from whom. For example, you cannot say you are distributing the Neo4j® software when you're distributing a modified version of it, because people would be confused when they are not getting the same features and functionality they would get if they downloaded the software directly from us. You also cannot distribute Neo4j® software using the Marks if you do not have a license from us, because that would imply that your distribution comes from or is supported by Neo4j. You cannot use our Marks on your website in a way that suggests that your website is an official website or that we endorse your website, unless permitted in a written agreement with us. You can, though, say you like the Neo4j® software, say that you participate in the Neo4j®

N4J_019938

SER_2547

community, or refer to Neo4j® products and services.

This fundamental requirement, that it is always clear to people what they are getting and from whom, is reflected throughout this Policy. It should also serve as your guide if you are not sure about how you are using the Marks.

In addition:
You may not use the Marks in association with the use or distribution of software if you are also not in compliance with the copyright license for the software.

You may not use or register, in whole or in part, the Marks as part of your own trademark, service mark, domain name, company name, trade name, product name or service name.

Provided that you have obtained a license from Neo4j, you can use the Word Marks in book and article titles, and the Logo in illustrations within the document, as long as the use does not suggest that we have published, endorse, or agree with your work.

Trademark law does not allow your use of names or trademarks that are too similar to ours. You therefore may not use an obvious variation of any of our Marks or any phonetic equivalent, foreign language equivalent, takeoff, or abbreviation for a similar or compatible product or service. This includes combinations or integrations of all or portions of the Marks in a way that the public may think of the use as a new mark (e.g. SuperNeo4j, or Neo5k).

You agree that you will not acquire any rights in the Marks and that any goodwill generated by your use of the Marks inures solely to our benefit.

## Proper Use of the Marks

These rules hold true for all trademarks, not just ours, so you should follow them for our Marks as well as anyone else's.

Always use the Marks in their Exact Form and Distinguishable from Other Text.
Always use the Word Marks in a manner distinguished from surrounding text, with initial capital letters, and in the exact form with the correct spelling (neither abbreviated, hyphenated, or combined with any other word or words).

N4J_019939

SER_2548

Trademark Guidelines - Neo4j Graph Database Platform

| CORRECT | INCORRECT |
|---|---|
| Neo4j® | NEO4J<br>Neo-4j<br>neo4j<br>n4j<br>Neo |

Use Marks as Proper Adjectives Followed by a Generic Term. Trademarks should be used as adjectives followed by a generic modifier, and not as nouns or verbs. Trademarks are products or services, never actions. Do not use "a" or "the" to refer to an instance of the Marks. For example:

| CORRECT | INCORRECT |
|---|---|
| The Neo4j® graph platform is widely used in many industries. | |
| I was able to quickly realize graph epiphanies with Neo4j® Bloom™ visualization software. | Neo4j® is widely used.<br><br>We use the Neo4j. |
| I downloaded the Neo4j® database from neo4j.com. | I use Cypher.<br><br>I load data into and out of Neo4j. |
| Cypher® query language | |

Do Not Use Marks in the Possessive Form. Because trademarks are not nouns, they should not be used in the possessive from. For example:

| CORRECT | INCORRECT |
|---|---|
| The Neo4j® graph database | Neo4j's storage |

N4J_019940<br>SER_2549

| | |
|---|---|
| software presents and stores data natively as a graph. | presents and stores data natively as a graph. |

<u>Do Not Use Marks in the Plural Form.</u> Because trademarks are not nouns, they should not be used in the plural form. For example:

| CORRECT | INCORRECT |
|---|---|
| The Neo4j® platform allows multiple instances of the Neo4j database software to form a single highly-available cluster. | High-availability clustering allows a cluster of instances to be formed using multiple Neo4js. |

<u>Do Not Use Marks to Suggest Endorsement by Neo4j.</u>

| CORRECT | INCORRECT |
|---|---|
| graph database software | "Open Neo4j" XYZ ENTERPRISE 3.4.9 (FREE AND OPEN UNRESTRICTED NEO4J ENTERPRISE FORK) |

<u>Use of Logos</u>

You may not change any Logo except to scale it proportionally. This means you may not add decorative elements, change the colors, change the proportions, distort it, add elements, or combine it with other logos. The logo may only be used displaying the exact colors shown in our Style Guide.

N4J_019941

SER_2550

Mark Attribution and Notices

The first or most prominent mention of a Mark on a webpage, document, packaging, or documentation should be accompanied by a symbol indicating whether the mark is a registered trademark ("®") or an unregistered trademark ("™"). Also, if you are using our Marks for uses for which we are granting a separate license, please put following notice at the foot of the page where you have used the Mark (or, if in a book, on the credits page), on any packaging or labeling, and on advertising or marketing materials: "Neo4j is a trademark or registered trademark of Neo4j, Inc. or its subsidiaries in the United States and/or other countries."

Possible Infringement

If you are aware of any confusing use or misuse of the Marks in any way, we would appreciate you bringing this to our attention. Please contact us at webinfo@neo4j.com so that we can investigate it further.

Updates

Neo4j reserves the right to modify or update this Policy at any time. You should review this Policy from time to time so that you will be aware of any modifications or updates as they will apply as soon as they as posted on this page.

Further Information

Neo4j has tried to make this Trademark Policy as comprehensive and understandable as possible. If you have any questions about this Policy, would like to speak with us about the use of our Marks in ways not described in the Policy, or see any abuse of our Marks, please contact us.

*Updated April 3, 2019*

N4J_019942

SER_2551

Trademark Guidelines - Neo4j Graph Database Platform

PRODUCTS

CUSTOMERS

Why Graph
Databases?

Company

USE CASES

LEARN

Graph Databases
vs RDBMS

News

Awards

PARTNERS

DEVELOPERS

What's New in
Neo4j

Careers

Staff

Graphdatabases.com

CONTACT US →

US: 1-855-636-4532

Sweden +46 171 480 113

© 2020 Neo4j, Inc.

UK: +44 20 3868 3223

Terms | Privacy | Sitemap

France: +33 (0) 8 05 08 03 44

Neo4j®, Neo Technology®, Cypher®,
Neo4j® Bloom™ and Neo4j® Aura™ are
registered trademarks
of Neo4j, Inc. All other marks are owned
by their respective companies.

Contact Sales: 1.855.636.4532

Email a graph expert

N4J_019943

SER_2552

1   John V. Picone III, Bar No. 187226
    jpicone@hopkinscarley.com
2   Jeffrey M. Ratinoff, Bar No. 197241
    jratinoff@hopkinscarley.com
3   HOPKINS & CARLEY
    A Law Corporation
4   The Letitia Building
    70 South First Street
5   San Jose, CA  95113-2406

6   *mailing address:*
    P.O. Box 1469
7   San Jose, CA 95109-1469
    Telephone:    (408) 286-9800
8   Facsimile:    (408) 998-4790

9   Attorneys for Plaintiff and Counter-Defendants
    NEO4J, INC. and NEO4J SWEDEN AB
10

11                    UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13  NEO4J., INC., a Delaware corporation, and      CASE NO.  5:18-cv-07182-EJD
    NEO4J SWEDEN AB, a Swedish
14  corporation,                                   **DECLARATION OF JEFFREY M.
                                                   RATINOFF IN SUPPORT OF**
                   Plaintiffs,                     **PLAINTIFFS' CONSOLIDATED MOTION**
15                                                 **FOR SUMMARY JUDGMENT**
16         v.
                                                   Date:       March 25, 2021
17  PURETHINK LLC, a Delaware limited              Time:       9:00 a.m.
    liability company, IGOV INC., a Virginia       Dept.:      Courtroom 4, 5th Floor
18  corporation, and JOHN MARK SUHY, an            Judge:      Hon. Edward J. Davila
    individual,
19                 Defendants.

20  AND RELATED COUNTERCLAIM.
21

22  NEO4J., INC., a Delaware corporation, and      CASE NO.  5:19-CV-06226-EJD
    NEO4J SWEDEN AB, a Swedish
23  corporation,

                   Plaintiffs,
24
25         v.

26  GRAPH FOUNDATION, INC., an Ohio
    corporation, GRAPHGRID, INC., an Ohio
27  corporation, and ATOMRAIN INC., a              **REDACTED VERSION OF DOCUMENT
    Nevada corporation,                            PROPOSED TO BE FILED UNDER SEAL**
28                 Defendants.

842\3639273.4
DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY
JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

I, Jeffrey M. Ratinoff, declare as follows:

1.      I am an attorney at law, duly licensed to practice before all courts of the State of California, and am of counsel with Hopkins & Carley, a Law Corporation, attorney of record for Plaintiff Neo4j, Inc. and Neo4j Sweden AB (collectively "Plaintiffs") in the above-captioned matter.  I make this declaration in support of Plaintiffs' Consolidated Motion for Summary Judgment concurrently filed herewith.

2.      The facts stated herein are based on my personal knowledge, except with respect to those matters stated to be on information and belief, and as to those matters, I believe them to be true.  If called upon to testify as a witness in this matter, I could and would do so competently.

3.      Attached hereto as **Exhibit 1** is a true and correct copy of the Trademark Registration Certificate for the "Neo4j" trademark, Registration No. 4,784,280, dated August 4, 2015, which I downloaded from the USPTO's Trademark Status and Document Retrieval (TSDR) system and bears the Bates No. N4J_000001-N4J_000003.

4.      Attached hereto as **Exhibit 2** is a true and correct copy of an October 28, 2020 capture of PureThink LLC's "About PureThink" webpage, http://purethink.com/company.html, which I downloaded from the Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org) and bears the Bates No. N4J_019932-N4J_019933.

5.      Attached hereto as **Exhibit 3** is a true and correct copy of relevant pages from the transcript for the Deposition of PureThink LLC taken on October 22, 2020.

6.      Attached hereto as **Exhibit 4** is a true and correct copy of the Neo4j Solution Partner Agreement entered into by Neo4j Inc. and PureThink LLC, signed by John Mark Suhy on behalf of PureThink, which bears the Bates No. N4J_000004- N4J_000008 and was marked as Exhibit 5 during the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at 58:22-59:12; *see also* Exhibit 13 [RFA No. 2].

7.      Attached hereto as **Exhibit 5** is a true and correct copy of a July 14, 2015 email sent by John Mark Suhy to David Fauth of Neo4j USA, which was produced by Defendants in this litigation with the Bates No. 00003677.

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3639273.5

- 1 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_2554

1      8.     Attached hereto as **Exhibit 6** is a true and correct copy of a July 29, 2015 email
2  sent by John Mark Suhy to Charles Fischer of Neo4j USA, which was produced by Defendants in
3  this litigation with the Bates No. 00001047-00001048.  The portions referenced by and/or that are
4  most relevant to Plaintiffs' Motion are highlighted.  Plaintiffs have designated this email as
5  "Confidential" under the Protective Order as it contains their confidential and proprietary
6  business information.

7      9.     Attached hereto as **Exhibit 7**, is a true and correct copy of an August 16, 2016
8  email sent by John Mark Suhy to Ginger Sanfilippo, which was produced by Defendants in this
9  litigation with the Bates No. 00006480-00006483. The portions referenced by and/or that are
10  most relevant to Plaintiffs' Motion are highlighted.  Plaintiffs have designated this email as
11  "Confidential" under the Protective Order as it contains their confidential and proprietary
12  business information.

13      10.    Attached hereto as **Exhibit 8**, is a true and correct copy of a May 12, 2017 email
14  sent by John Mark Suhy to Philip Rathle of Neo4j USA, which was produced by Defendants in
15  this litigation with the Bates No. 00004185-00004185.  The portions referenced by and/or that are
16  most relevant to Plaintiffs' Motion are highlighted.

17      11.    Attached hereto as **Exhibit 9**, is a true and correct copy of a May 30, 2017 letter
18  from Lars Nordwall of Neo4j USA to John Mark Suhy of PureThink LLC, which was produced
19  by Defendants in this litigation during discovery with the Bates No. 000226.  The portions
20  referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

21      12.    Attached hereto as **Exhibit 10**, is a true and correct copy of the Articles of
22  Incorporation for iGov Inc., dated June 23, 2017, which was marked as Exhibit 2 during the Rule
23  30(b)(6) deposition of iGov (*see* Exhibit 3 at 21:20-22:22) and the authenticity was admitted by
24  iGov in response to Neo4j Sweden's Request for Admission No. 2 (*see* Exhibit 13).

25      13.    Attached hereto as **Exhibit 11**, is a true and correct copy of a March 14-15, 2017
26  email exchange between John Mark Suhy and John Broad of Neo4j USA, which was produced by
27  Defendants in this litigation with the Bates No. 00004046-00004047. The portions referenced by
28  and/or that are most relevant to Plaintiffs' Motion are highlighted.

842\3639273.5

- 2 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

14.     Attached hereto as **Exhibit 12**, is a true and correct copy of a July 11, 2017 letter from Lars Nordwall of Neo4j USA to John Mark Suhy of PureThink LLC, which was produced by Defendants in this litigation with the Bates No. 000245.

15.     Attached hereto as **Exhibit 13**, is a true and correct copy of iGov's verified Fourth Amended Response to Neo4j Sweden AB's Request for Admissions, Set One.

16.     Attached hereto as **Exhibit 14**, is a true and correct copy of a November 1, 2017 capture of PureThink LLC's webpage, http://purethink.com/, from the Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org).  This was produced by Defendants in this litigation with the Bates No. 00020015-00020021, and marked as Exhibit 4 to during the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at 47:20-48:8.

17.     Attached hereto as **Exhibit 15**, is a true and correct copy of a printout of iGov's https://igovsol.com/about.html webpage as it existed on January 13, 2018.  This was originally produced by Defendants in this litigation in html format in this litigation on July 1, 2019, and marked as Exhibit 3 to the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at 39:6-40:3.  Its authenticity was also admitted by iGov in response to Neo4j Sweden's Request for Admission No. 28.  *See* Exhibit 13.

18.     Attached hereto as **Exhibit 16**, is a true and correct copy of a printout of iGov's https://igovsol.com/download.html webpage as it existed on January 13, 2018.  This was originally produced by Defendants in this litigation in html format in this litigation on July 1, 2019.  Its authenticity was admitted by iGov in response to Neo4j Sweden's Request for Admission No. 33.  *See* Exhibit 13.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

19.     Attached hereto as **Exhibit 17**, is a true and correct copy of a printout of iGov's https://igovsol.com/neo4j.html webpage as it existed on January 13, 2018.  This was originally produced by Defendants in this litigation in html format in this litigation on July 1, 2019, and marked as Exhibit 11 to the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at 39:6-40:3.  Its authenticity was also admitted by iGov in response to Neo4j Sweden's Request for Admission No. 37.  *See* Exhibit 13.  The portions referenced by and/or that are most relevant to Plaintiffs'

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3639273.5                                    - 3 -
DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_2556

1   Motion are highlighted.

2       20.     Attached hereto as **Exhibit 18**, is a true and correct copy of a printout of iGov's

3   https://igovsol.com/index.html webpage as it existed on January 13, 2018.  This was originally

4   produced by Defendants in this litigation in html format in this litigation on July 1, 2019. The

5   portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

6       21.     Attached hereto as **Exhibit 19**, is a true and correct copy of a September 8, 2017

7   email sent by John Mark Suhy to Carol Sinnard of the National Geospatial-Intelligence Agency

8   (NGA), which was produced by Defendants in this litigation with the Bates No. 000036000-

9   000036007.

10      22.     Attached hereto as **Exhibit 20**, is a true and correct copy of an November 14, 2017

11  iGov blog entry located at https://blog.igovsol.com/2017/11/14/Neo4j-330-is-out-but-where-are-

12  the-open-source-enterprise-binaries.html, which I printed out on October 2, 2019 and produced in

13  this litigation bearing the Bates No. N4J_018852-N4J_018855.  The portions referenced by

14  and/or that are most relevant to Plaintiffs' Motion are highlighted.

15      23.     Attached hereto as **Exhibit 21**, is a true and correct copy of an August 25, 2018

16  capture of iGov's https://igovsol.com/index.html webpage from the Wayback Machine, a digital

17  archive of the World Wide Web (https://web.archive.org), which I printed out on August 12, 2020

18  and bears Bates No. N4J_018822-N4J_018823.  The portions referenced by and/or that are most

19  relevant to Plaintiffs' Motion are highlighted.

20      24.     Attached hereto as **Exhibit 22**, is a true and correct copy of a March 26, 2018

21  email sent by John Mark Suhy to Benjamin Nussbaum and Brad Nussbaum, which was produced

22  by the PureThink Defendants and bears the Bates No.  IGOV0001570252.  This was also marked

23  as Exhibit 9 during the Rule 30(b)(6) deposition of iGov (*see* Exhibit 3 at 86:20-87:23) and as

24  Exhibit 19 during the Rule 30(b)(6) deposition of GFI (*see* Exhibit 31 at 147:2-23).

25      25.     Attached hereto as **Exhibit 23**, is a true and correct copy of a May 21, 2018 email

26  sent by John Mark Suhy to Benjamin Nussbaum and Brad Nussbaum, which was produced by the

27  PureThink Defendants and bears the Bates No. IGOV0001570192.  This was also marked as

28  Exhibit 10 during the Rule 30(b)(6) deposition of iGov (*see* Exhibit 3 at 92:10-93:1) and as

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3639273.5                                      - 4 -
DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_2557

1     Exhibit 4 during the Rule 30(b)(6) deposition of GFI (*see* Exhibit 31 at 30:3-32:25).

2         26.     Attached hereto as **Exhibit 24**, is a true and correct copy of a July 9, 2018 email

3 exchange between John Mark Suhy and Mariano Lopez spanning July 6, 2018 and July 9, 2018,

4 which was produced by the PureThink Defendants on November 19, 2019 and bears the Bates

5 No. IGOV0001573221.0001- IGOV0001573221.0002. The portions referenced by and/or that are

6 most relevant to Plaintiffs' Motion are highlighted.

7         27.     Attached hereto as **Exhibit 25**, is a true and correct copy of an August 10, 2018

8 email from John Mark Suhy to Brian Rodrigue, which was produced by the PureThink

9 Defendants on November 19, 2019  and bears the Bates No. IGOV0001570129. The portions

10 referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

11         28.     Attached hereto as **Exhibit 26**, is a true and correct copy of an August 28, 2018

12 email from John Mark Suhy to A-Sun Truth, which was produced by the PureThink Defendants

13 on November 19, 2019 and bears the Bates No. IGOV0001570120.0001.  The portions referenced

14 by and/or that are most relevant to Plaintiffs' Motion are highlighted.

15         29.     Attached hereto as **Exhibit 27**, is a true and correct copy of a May 2018 email

16 exchange between John Mark Suhy to Philip Rathle (without attachments), which was produced

17 by the PureThink Defendants in this litigation and bears the Bates No. IGOV00000298.0001-

18 IGOV00000298.0006. The portions referenced by and/or that are most relevant to Plaintiffs'

19 Motion are highlighted in yellow. Plaintiffs have designated portions of this email as

20 "Confidential" under the Protective Order, which are highlighted in blue.

21         30.     Attached hereto as **Exhibit 28** is a true and correct copy of a July 2018 email

22 exchange between GFI and Bob Trudeau produced by GFI, and originally forwarded from iGov,

23 which bears the Bates No. GFI000287- GFI000288.  This was also marked as Exhibit 14 during

24 the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 83:22-84:7. GFI designated this document

25 as "Confidential" when originally produced, but subsequently agreed that they did not need to be

26 filed under seal.

27         31.     Attached hereto as **Exhibit 29**, is a true and correct copy of a July 25, 2018 email

28 from John Mark Suhy to Benjamin Nussbaum, which was produced by the PureThink Defendants

1    on November 19, 2019 and bears the Bates No. IGOV0001570130.0001-IGOV0001570130.0002.

2    The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

3        32.    Attached hereto as **Exhibit 30**, is a true and correct copy of the Articles of

4    Incorporation for Graph Foundation Inc., dated June 22, 2018, which was produced by GFI in this

5    litigation with the Bates No. GFI000001- GFI000004.  This was also marked as Exhibit 3 during

6    the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 24:19-25:22.  GFI designated this

7    document as "Confidential" when originally produced, but subsequently agreed that they did not

8    need to be filed under seal.

9        33.    Attached hereto as **Exhibit 31** is a true and correct copy of pages from the

10    transcript for the Rule 30(b)(6) Deposition of Graph Foundation Inc. taken on October 16, 2020

11    that have been citing in this declaration and/or Plaintiffs' Motion for Summary Judgment.

12        34.    Attached hereto as **Exhibit 32** is a true and correct copy of an email exchange

13    between John Mark Suhy and Donald Robertson occurring between May 19 and May 22, 2018,

14    which was produced by the PureThink Defendants on November 19, 2019 and bears the Bates

15    No. IGOV0001570187.001- IGOV0001570187.002.  This was also marked as Exhibit 22 during

16    the Rule 30(b)(6) deposition of iGov. *See* Exhibit 3 at 169:10-170:3.  The portions referenced by

17    and/or that are most relevant to Plaintiffs' Motion are highlighted.

18        35.    Attached hereto as **Exhibit 33** is a true and correct copy of an email exchange,

19    namely between John Mark Suhy and Benjamin Nussbaum occurring on May 22, 2018, which

20    was produced by the PureThink Defendants on November 19, 2019  and bears the Bates No.

21    IGOV0001570185.001- IGOV0001570185.003.  This was also marked as Exhibit 15 during the

22    Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 97:1-9, 98:24-99:5.

23        36.    Attached hereto as **Exhibit 34** is a true and correct copy of a further email

24    exchange between John Mark Suhy and Donald Robertson occurring between June 20 and August

25    21, 2018, which was produced by the PureThink Defendants on November 19, 2019 and bears the

26    Bates No. IGOV0001570125.001- IGOV0001570125.002.  This was also marked as Exhibit 24

27    during the Rule 30(b)(6) deposition of iGov (Exhibit 3 at 192:18-193:2) and as Exhibit 16 during

28    the Rule 30(b)(6) deposition of GFI (Exhibit 31 at 108:13-109:11).  The portions referenced by

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3639273.5                                          - 6 -

1   and/or that are most relevant to Plaintiffs' Motion are highlighted.

2        37.     Attached hereto as **Exhibit 35**, is a true and correct copy of an issue posted on

3   GFI's GitHub repository on February 13, 2019 that I printed out on June 10, 2020, which was

4   produced with the Bates No. N4J_018645 - N4J_018647.  This was also marked as Exhibit 24

5   during the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 183:14-184:24.  The portions

6   referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

7        38.     Attached hereto as **Exhibit 36**, is a true and correct copy of an issue posted on

8   GFI's GitHub repository on June 27, 2019, which I printed out on June 10, 2020 and was

9   produced with the Bates No. N4J_019439- N4J_019443.  The portions referenced by and/or that

10   are most relevant to Plaintiffs' Motion are highlighted.

11        39.     Attached hereto as **Exhibit 37**, is a true and correct copy of a blog post titled "Neo

12   4j  is Open Core – Now What?" posted on GFI's website on January 31, 2019, which I printed out

13   on September 24, 2019 and produced bearing the Bates No. N4J-GFI_000078- N4J-GFI_000085.

14   This document was marked as Exhibit 23 to the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31

15   at 177:10-178:18.  It was attached as Exhibit K to Neo4j Inc.'s First Set of Requests for

16   Admissions and its authenticity was admitted by GFI in response to RFA No. 137.  *See* Exhibits

17   128-129. The portions referenced by and/or that are most relevant to Plaintiffs' Motion are

18   highlighted.

19        40.     Attached hereto as **Exhibit 38**, is a true and correct copy of Defendant iGov Inc.'s

20   Amended Response to Neo4j Sweden AB's Second Set of Interrogatories to iGov Inc. Inc. and

21   John Mark Suhy's verification thereof.

22        41.     Attached hereto as **Exhibit 39**, is a true and correct copy of a printout of a March

23   1, 2019 commit titled "Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf

24   copyright and to be in linse with the AGPL license" by John Mark Suhy to GFI's GitHub

25   repository for ONgDB v3.5, which shows the replacement of the Neo4j Sweden Software License

26   with the AGPLv3.  This document was produced bearing the Bates No. N4J_019041-

27   N4J_019417.

28        42.     Attached hereto as **Exhibit 40**, is a true and correct copy of an email exchange

842\3639273.5              - 7 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1  between John Mark Suhy and Joerg Bacch spanning November 9, 2018 and January 18, 2019,

2  which was produced by the PureThink Defendants on November 19, 2019  and bears the Bates

3  No. IGOV0001570039.0001- IGOV0001570039.0002.  This was also marked as Exhibit 28

4  during the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at 213:3-19.

5  43.  Attached hereto as **Exhibit 41** is a true and correct copy of a September 30, 2020

6  capture of GFI's GitHub landing page for the ONgDB repository,

7  https://github.com/graphfoundation/ongdb, which I downloaded from the Wayback Machine, a

8  digital archive of the World Wide Web (https://web.archive.org) and bears the Bates No.

9  N4J_019940-N4J_019944.

10  44.  Attached hereto as **Exhibit 42** is a true and correct copy of an email exchange

11  between John Mark Suhy and Robin Witherspoon of Perspecta Engineering Inc. spanning March

12  12, 2019 and March 26, 2019, which was produced by the PureThink Defendants on November

13  19, 2019, and bears the Bates No. IGOV0001573351.0001- IGOV0001573351.0004.  The

14  portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

15  45.  Attached hereto as **Exhibit 43** is a true and correct copy of two successive emails

16  sent by John Mark Suhy to steins@sec.gov on May 1 and May 7, 2019, which was produced by

17  the PureThink Defendants on November 19, 2019 and bears the Bates No.

18  IGOV0001573343.0001- IGOV0001573343.0003.  The portions referenced by and/or that are

19  most relevant to Plaintiffs' Motion are highlighted.

20  46.  Attached hereto as **Exhibit 44** is a true and correct copy of a May 29, 2019 email

21  exchange between John Mark Suhy and Ken Woo of Northwestern University, which was

22  produced by the PureThink Defendants on November 19, 2019 and bears the Bates No.

23  IGOV0001573337.0001 - IGOV0001573337.0002.  The portions referenced by and/or that are

24  most relevant to Plaintiffs' Motion are highlighted.

25  47.  Attached hereto as **Exhibit 45** is a true and correct copy of a March 29, 2019 email

26  from John Mark Suhy to Patrick Widener of Sandia National Laboratories, which was produced

27  by the PureThink Defendants on November 19, 2019 and bears the Bates No. IGOV0001570021.

28  48.  Attached hereto as **Exhibit 46** is a true and correct copy of an email exchange

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3639273.5  - 8 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_2561

1  between John Mark Suhy and Colleen Delawder at the US Army's National Ground Intelligence

2  Center (NGIC) spanning August 6 and August 8, 2019, which was produced by the PureThink

3  Defendants on November 19, 2019 and bears the Bates No. IGOV0001573310.0001 -

4  IGOV0001573310.0003.  The portions referenced by and/or that are most relevant to Plaintiffs'

5  Motion are highlighted.

6      49.    Attached hereto as **Exhibit 47** is a true and correct copy of an October 22, 2018

7  email exchange between John Mark Suhy and Shahak Nagiel of Next Century Corp., which was

8  produced by the PureThink Defendants on November 19, 2019  and bears the Bates No.

9  IGOV0001573500.0001 - IGOV0001573500.0002.  The portions referenced by and/or that are

10  most relevant to Plaintiffs' Motion are highlighted.

11      50.    Attached hereto as **Exhibit 48** is a true and correct copy of a February email

12  exchange between Brad Nussbaum and Shahak Nagiel of Next Century Corp., which is a

13  continuation of a prior email exchange between John Mark Suhy and Shahak Nagiel, and

14  produced by GFI with the Bates No. GFI000071-73.  This was also marked as Exhibit 32 during

15  the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 204:23-205:12.  The portions referenced

16  by and/or that are most relevant to Plaintiffs' Motion are highlighted. GFI designated this

17  document as "Confidential" when originally produced, but subsequently agreed that they did not

18  need to be filed under seal.

19      51.    Attached hereto as **Exhibit 49** is a true and correct copy of a February 19, 2019

20  email exchange between Brad Nussbaum and Shahak Nagiel of Next Century Corp., which is a

21  continuation of a prior email exchange between John Mark Suhy and Shahak Nagiel, and

22  produced by GFI with the Bates No. GFI000068-70.  This was also marked as Exhibit 33 during

23  the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 204:23-205:12.  The portions referenced

24  by and/or that are most relevant to Plaintiffs' Motion are highlighted.  GFI designated this

25  document as "Confidential" when originally produced, but subsequently agreed that they did not

26  need to be filed under seal.

27      52.    Attached hereto as **Exhibit 50** is a true and correct copy of the continuation of the

28  February 19, 2019 email exchange between Brad Nussbaum and Shahak Nagiel of Next Century

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3639273.5

- 9 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1    Corp, and produced by GFI with the Bates No. GFI000067.  This was also marked as Exhibit 34

2    during the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 218:21-219:11.  GFI designated

3    this document as "Confidential" when originally produced, but subsequently agreed that they did

4    not need to be filed under seal.

5            53.     Attached hereto as **Exhibit 51** is a true and correct copy of the continuation of the

6    February 19, 2019 email exchange between Brad Nussbaum and Shahak Nagiel of Next Century

7    Corp, and produced by GFI foundation with the Bates No. GFI000065.  This was also marked as

8    Exhibit 35 during the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 226:19-227:10. The

9    portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.  GFI

10   designated this document as "Confidential" when originally produced, but subsequently agreed

11   that they did not need to be filed under seal.

12           54.     Attached hereto as **Exhibit 52** is a true and correct copy of a February 11, 2020

13   email exchange between Brad Nussbaum and Michal Komorowski, which was produced by GFI

14   with the Bates No. GFI000114-115.  The portions referenced by and/or that are most relevant to

15   Plaintiffs' Motion are highlighted.  GFI designated this document as "Confidential" when

16   originally produced, but subsequently agreed that they did not need to be filed under seal.

17           55.     Attached hereto as **Exhibit 53** is a true and correct copy of an email exchange

18   between Brad Nussbaum, first from his GFI email account and then from his GraphGrid account,

19   and Michał Komorowski of AdForm, spanning between February 14 and 19, 2019 which was

20   produced by GFI with the Bates No. GFI000116-118.  This was also marked as Exhibit 30 during

21   the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 200:15-202:9.  The portions referenced by

22   and/or that are most relevant to Plaintiffs' Motion are highlighted.  GFI designated this document

23   as "Confidential" when originally produced, but subsequently agreed that they did not need to be

24   filed under seal.

25           56.     Attached hereto as **Exhibit 54** is a true and correct copy of an August 22, 2018

26   email from John Mark Suhy to Lee Smales at the Department of the Air Force, which was

27   produced by the PureThink Defendants on November 19, 2019 and bears the Bates No.

28   IGOV0001573588.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3639273.5                                        - 10 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_2563

1   are highlighted.

2   57.   Attached hereto as **Exhibit 55** is a true and correct copy of a Global Supply Chain

3   Request for Quotation issued to iGov on February 17, 2020, which was produced by the

4   PureThink Defendants and bears the Bates No. IGOV0002851527.001- IGOV0002851527.005.

5   This was also marked as Exhibit 36 during the Rule 30(b)(6) deposition of iGov. *See* Exhibit 3 at

6   235:21-236:17. The PureThink Defendants designated this document as "Confidential" under the

7   Protective Order.

8   58.   Attached hereto as **Exhibit 56** is a true and correct copy of an email exchange

9   between John Mark Suhy and Donald Robertson occurring between May 19 and June 20, 2018,

10   which was produced by the PureThink Defendants on November 19, 2019, and bears the Bates

11   No. IGOV0001570157.001- IGOV0001570157.004.  This was also authenticated and marked as

12   Exhibit 15 during the Rule 30(b)(6) deposition of GFI (Exhibit 31 at 157:10-17) and Exhibit 23

13   during the Rule 30(b)(6) deposition of iGov (Exhibit 3 at 189:1-190:6).

14   59.   Attached hereto as **Exhibit 57** is a true and correct copy of a printout of GFI's

15   webpage, https://www.graphfoundation.org/projects/ongdb/ as it appeared on September 24, 2019

16   and was produced by Plaintiffs with the Bates No. N4J-GFI_000092- N4J-GFI_000094.  This

17   was also authenticated and marked as Exhibit 21 during the Rule 30(b)(6) deposition of GFI. *See*

18   Exhibit 31 at 157:10-17.  The portions referenced by and/or that are most relevant to Plaintiffs'

19   Motion are highlighted.

20   60.   Attached hereto as **Exhibit 58** is a true and correct copy of the landing page for

21   GFI's GitHub repository for ONgDB, https://www.graphfoundation.org/projects/ongdb/ as it

22   existed on September 25, 2019, which I printed out that day and produced by Plaintiffs with the

23   Bates No. N4J-GFI_000297- N4J-GFI_000299.  It was also attached as Exhibit E to Neo4j Inc.'s

24   First Set of Requests for Admissions and its authenticity was admitted by GFI in response to RFA

25   No. 73. *See* Exhibits 128-129.  The portions referenced by and/or that are most relevant to

26   Plaintiffs' Motion are highlighted.

27   61.   Attached hereto as **Exhibit 59** is a true and correct copy of the landing page for

28   Plaintiffs' GitHub repository for Neo4j® Software, https://github.com/neo4j/neo4j as it existed

842\3639273.5
- 11 -
DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1 on September 26, 2019, which I printed out on that day and produced by Plaintiffs with the Bates

2 No. N4J_019038 - N4J_019040.  The portions referenced by and/or that are most relevant to

3 Plaintiffs' Motion are highlighted.

4     62.    Attached hereto as **Exhibit 60** is a true and correct copy of the landing page for

5 GFI's GitHub repository for ONgDB, https://www.graphfoundation.org/projects/ongdb/ as it

6 existed on November 9, 2020, which I printed out that day and produced by Plaintiffs with the

7 Bates No. N4J_019945-N4J_019948.  The portions referenced by and/or that are most relevant to

8 Plaintiffs' Motion are highlighted.

9     63.    Attached hereto as **Exhibit 61** is a true and correct copy of a January 31, 2019

10 tweet issued from GFI's Twitter account, which I printed out on July 19, 2020 and produced in

11 this litigation with the Bates No. N4J_018667- N4J_018668.  This was authenticated and marked

12 as Exhibit 22 during the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 169:13-170:25.

13     64.    Attached hereto as **Exhibit 62**, is a true and correct copy of an December 4, 2018

14 capture of iGov's https://igovsol.com/neo4j.html webpage from the Wayback Machine, a digital

15 archive of the World Wide Web (https://web.archive.org), which I printed out on August 12, 2020

16 and produced in this litigation bearing the Bates No. N4J_018824 - N4J_018833.  The portions

17 referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

18     65.    Attached hereto as **Exhibit 63**, is a true and correct copy of a capture of iGov's

19 https://igovsol.com/neo4j.html webpage that reveals some embedded html links, which I printed

20 out on October 2, 2019 and was produced bearing the Bates No. N4J_018842-N4J_018851.  This

21 was marked as Exhibit 13 during the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at 114:9-22.

22 This same capture was also produced with the Bates No. N4J_013010 N4J_013019 and its

23 authenticity was admitted by iGov in response to Neo4j Sweden's Request for Admission No. 4.

24 *See* Exhibit 13.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are

25 highlighted.

26     66.    Attached hereto as **Exhibit 64**, is a true and correct copy of a capture of iGov's

27 https://igovsol.com/neo4j.html webpage that reveals some embedded html links, which I printed

28 out on July 27, 2020 and was produced bearing the Bates No. N4J_018892- N4J_018900.  This

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3639273.5

- 12 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_2565

1   was also marked as Exhibit 14 during the Rule 30(b)(6) deposition of iGov. *See* Exhibit 3 at

2   116:20-118:10. The portions referenced by and/or that are most relevant to Plaintiffs' Motion are

3   highlighted.

4         67.   Attached hereto as **Exhibit 65**, is a true and correct copy of a graphical capture of

5   iGov's https://igovsol.com/neo4j.html webpage, which I printed out on July 27, 2020 and was

6   produced bearing the Bates No. N4J_018901- N4J_018910. The portions referenced by and/or

7   that are most relevant to Plaintiffs' Motion are highlighted.

8         68.   Attached hereto as **Exhibit 66**, is a true and correct copy of an October 22, 2020

9   capture of iGov's https://igovsol.com/graph.html webpage from the Wayback Machine, a digital

10  archive of the World Wide Web (https://web.archive.org), which I printed out on November 11,

11  2020 and bears Bates No. N4J_019949-N4J_019958. The portions referenced by and/or that are

12  most relevant to Plaintiffs' Motion are highlighted.

13        69.   Attached hereto as **Exhibit 67**, is a true and correct copy of an July 5, 2019

14  capture of iGov's https://igovsol.com/downloads.html webpage from the Wayback Machine, a

15  digital archive of the World Wide Web (https://web.archive.org), which I printed out on

16  November 11, 2020 and bears Bates No. N4J_019959-N4J_019963. The portions referenced by

17  and/or that are most relevant to Plaintiffs' Motion are highlighted.

18        70.   Attached hereto as **Exhibit 68**, is a true and correct copy of a capture of iGov's

19  https://igovsol.com/downloads.html webpage that reveals some embedded html links, which I

20  printed out on October 2, 2019 and was produced bearing the Bates No. N4J_018836 -

21  N4J_018841. This same capture was also produced with the Bates No. N4J_013010 N4J_013019

22  and its authenticity was admitted by iGov in response to Neo4j Sweden's Request for Admission

23  No. 10 (Exhibit C thereto). *See* Exhibit 13. The portions referenced by and/or that are most

24  relevant to Plaintiffs' Motion are highlighted.

25        71.   Attached hereto as **Exhibit 69**, is a true and correct copy of a capture of iGov's

26  https://igovsol.com/downloads.html webpage that reveals some embedded html links, which I

27  printed out on July 27, 2020 and was produced bearing the Bates No. N4J_018884 - N4J_018887.

28  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3639273.5                                                    - 13 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_2566

72.     Attached hereto as **Exhibit 70**, is a true and correct copy of an October 22, 2020 capture of iGov's https://igovsol.com/downloads.html webpage from the Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org), which I printed out on November 11, 2020, and bears Bates No. N4J_019964-N4J_019967.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

73.     Attached hereto as **Exhibit 71**, is a true and correct copy of an July 5, 2019 capture of iGov's https://igovsol.com/index.html webpage from the Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org), which I printed out on November 11, 2020, and bears Bates No. N4J_019968-N4J_019969.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

74.     Attached hereto as **Exhibit 72**, is a true and correct copy of a capture of iGov's https://igovsol.com/index.html webpage that reveals some embedded html links, which I printed out October 1, 2019 and was produced bearing the Bates No. N4J_018834-N4J_018835.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

75.     Attached hereto as **Exhibit 73**, is a true and correct copy of a capture of iGov's https://igovsol.com/index.html webpage that reveals some embedded html links, which I printed out on July 27, 2020 and was produced bearing the Bates No. N4J_018890-N4J_018891.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

76.     Attached hereto as **Exhibit 74**, is a true and correct copy of an October 22, 2020 capture of iGov's https://igovsol.com/index.html webpage from the Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org), which I printed out on November 11, 2020, and bears Bates No. N4J_019970-N4J_019971.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

77.     Attached hereto as **Exhibit 75**, is a true and correct copy of an September 13, 2020 capture of iGov's https://graphstack.io/webpage/ from the Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org), which I printed out on October 22, 2020 and bears Bates No. N4J_018816-N4J_018818.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

78.    Attached hereto as **Exhibit 76** is a true and correct copy of an email exchange between John Mark Suhy and Jyothi Viswanadham at Daytona Technologies Ltd. between March 8 and March 10, 2019, which was produced by the PureThink Defendants on November 19, 2019 and bears the Bates No. IGOV0001573375.0001 - IGOV0001573375.0002.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

79.    Attached hereto as **Exhibit 77** is a true and correct copy of a January 25, 2019 email from John Mark Suhy to Ron Turner of XpressRules, which was produced by the PureThink Defendants on November 19, 2019, and bears the Bates No. IGOV0001573421.  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

80.    Attached hereto as **Exhibit 78** is a true and correct copy of a January 10, 2019 capture of Neo4j's https://neo4j.com/docs/developer-manual/3.4/ webpage from the Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org), which I printed out on October 13, 2020, and was produced with the Bates No. N4J_019917.

81.    Attached hereto as **Exhibit 79** is a true and correct copy of Neo4j USA's https://neo4j.com/docs/developer-manual/3.4/ webpage that I printed out on October 13, 2020, and was produced with the Bates No. N4J_019916.

82.    Attached hereto as **Exhibit 80** is a true and correct copy of a January 10, 2019 capture of Neo4j USA's https://neo4j.com/docs/operations-manual/3.4/ webpage from the Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org), which I printed out on October 13, 2020 and was produced with the Bates No. N4J_019934-N4J_019935.

83.    Attached hereto as **Exhibit 81** is a true and correct copy of Neo4j USA's https://neo4j.com/docs/operations-manual/3.4/ webpage that I printed out on October 13, 2020 and was produced with the Bates No. N4J_019910-N4J_019911.

84.    Attached hereto as **Exhibit 82** is a true and correct copy of an August 20, 2019 capture of Neo4j USA's https://neo4j.com/docs/operations-manual/3.5/ webpage from the Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org), which I printed out on October 13, 2020 and was produced with the Bates No. N4J_019932-N4J_019933.

85.    Attached hereto as **Exhibit 83** is a true and correct copy of Neo4j USA's

1   https://neo4j.com/docs/operations-manual/3.5/ webpage that I printed out on October 13, 2020

2   and was produced with the Bates No. N4J_019906-N4J_019907.

3       86.   Attached hereto as **Exhibit 84** is a true and correct copy of a September 30, 2020

4   capture of GFI's ONgDB 3.5 Changelog located at

5   https://github.com/graphfoundation/ongdb/wiki/ONgDB-3.5-Changelog, which I downloaded

6   from the Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org),

7   bearing Bates No. N4J_019972-N4J_019973.

8       87.   Attached hereto as **Exhibit 85** is a true and correct copy of an August 20, 2019

9   capture of Neo4j USA's https://neo4j.com/docs/license/ webpage from the Wayback Machine, a

10  digital archive of the World Wide Web (https://web.archive.org), which I printed out on October

11  13, 2020.  This was also authenticated and marked as Exhibit 46 during the Rule 30(b)(6)

12  deposition of GFI.  *See* Exhibit 31 at 286:2-.287:16.

13      88.   Attached hereto as **Exhibit 86** is a true and correct copy of an October 25, 2018,

14  tweet issued from GFI's Twitter account, which I printed out on November 12, 2020, and bears

15  Bates No. N4J_019976-N4J_019976.

16      89.   Attached hereto as **Exhibit 87** is a true and correct copy of a series of November

17  17, 2018 tweets issued from GFI's Twitter account, which I printed out on May 20, 2020 and was

18  produced with the Bates No. N4J_018661- N4J_018662.  This was also authenticated and marked

19  as Exhibit 18 during the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 137:10-138:1.

20      90.   Attached hereto as **Exhibit 88** is a true and correct copy of a January 23, 2019,

21  tweet issued from GFI's Twitter account, which I printed out on May 20, 2020 and was produced

22  with the Bates No. N4J_018663.

23      91.   Attached hereto as **Exhibit 89** is a true and correct copy of a March 17, 2019 tweet

24  issued from GFI's Twitter account, which I printed out on August 13, 2020 and was produced

25  with the Bates No. N4J_018664.  This was also authenticated and marked as Exhibit 38 during

26  the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 233:11-24.

27      92.   Attached hereto as **Exhibit 90** is a true and correct copy of a March 21, 2019 tweet

28  issued from GFI's Twitter account, which I printed out on November 5, 2020, and bears Bates

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3639273.5

- 16 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1    No. N4J_019977-N4J_019977.

2         93.    Attached hereto as **Exhibit 91** is a true and correct copy of a March 21, 2019 tweet

3    issued from GFI's Twitter account, which I printed out on August 13, 2020 and was produced

4    with the Bates No. N4J_018665.

5         94.    Attached hereto as **Exhibit 92** is a true and correct copy of a May 10, 2019 tweet

6    issued from GFI's Twitter account, which I printed out on August 13, 2020 and was produced

7    with the Bates No. N4J_018666.  This was also authenticated and marked as Exhibit 39 during

8    the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 240:12-24.

9         95.    Attached hereto as **Exhibit 93** is a true and correct copy of an October 9, 2019

10   tweet issued from GFI's Twitter account, which I printed out on October 13, 2020 and was

11   produced with the Bates No. N4J_019695.  This was also authenticated and marked as Exhibit 40

12   during the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 243:23-244:14.

13        96.    Attached hereto as **Exhibit 94** is a true and correct copy of a November 27, 2019

14   tweet issued from GFI's Twitter account, which I printed out on August 13, 2020 and was

15   produced with the Bates No. N4J_018671.  This was also authenticated and marked as Exhibit 41

16   during the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 245:13-246:4.

17        97.    Attached hereto as **Exhibit 95** is a true and correct copy of a January 18, 2020

18   tweet issued from GFI's Twitter account, which I printed out on August 13, 2020 and was

19   produced with the Bates No. N4J_018672.  This was also authenticated and marked as Exhibit 42

20   during the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 247:23-248:4.

21        98.    Attached hereto as **Exhibit 96** is a true and correct copy of a May 19, 2020 tweet

22   issued from GFI's Twitter account, which I printed out on August 13, 2020 and was produced

23   with the Bates No. N4J_018673.  This was also authenticated and marked as Exhibit 43 during

24   the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 249:9-249:20.

25        99.    Attached hereto as **Exhibit 97** is a true and correct copy of is a true and correct

26   copy of a September 25, 2019 tweet issued from John Mark Suhy's Twitter account in response to

27   several other tweets, which I printed out on October 19, 2020.  This was also authenticated and

28   marked as Exhibit 37 during the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at 246:5-12.

842\3639273.5
- 17 -

1  The portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted

2      100.    Attached hereto as **Exhibit 98** is a true and correct copy of is a true and correct

3  copy of a December 5, 2019 tweet issued from John Mark Suhy's Twitter account in response to

4  several other tweets, which I printed out on May 18, 2020 and was produced with the Bates No.

5  N4J_018946- N4J_018948.  The portions referenced by and/or that are most relevant to

6  Plaintiffs' Motion are highlighted.

7      101.    Attached hereto as **Exhibit 99** is a true and correct copy of is a true and correct

8  copy of a December 15, 2019 tweet issued from John Mark Suhy's Twitter account in response to

9  several other tweets, which I printed out on May 19, 2020 and was produced with the Bates No.

10  N4J_018949- N4J_018950.  The portions referenced by and/or that are most relevant to

11  Plaintiffs' Motion are highlighted.

12      102.    Attached hereto as **Exhibit 100** is a true and correct copy of is a true and correct

13  copy of a January 10, 2020 tweet issued from John Mark Suhy's Twitter account in response to

14  another tweet, which I printed out on October 19, 2020.  This was also authenticated and marked

15  as Exhibit 39 during the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at 250:1-24. The

16  portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

17      103.    Attached hereto as **Exhibit 101** is a true and correct copy of is a true and correct

18  copy of January 24, 2020 tweets and a January 29, 2020 tweet issued from John Mark Suhy's

19  Twitter account, which I printed out on October 19, 2020.  This was also authenticated and

20  marked as Exhibit 38 during the Rule 30(b)(6) deposition of iGov.  *See* Exhibit 3 at 248:9-249:16.

21      104.    Attached hereto as **Exhibit 102** is a true and correct copy of is a true and correct

22  copy of an April 2, 2020 tweet issued from John Mark Suhy's Twitter account in response to

23  several other tweets, which I printed out on May 20, 2020 and was produced with the Bates No.

24  N4J_018989-N4J_018990. The portions referenced by and/or that are most relevant to Plaintiffs'

25  Motion are highlighted.

26      105.    Attached hereto as **Exhibit 103** is a true and correct copy of is a true and correct

27  copy of two August 22, 2020 tweets issued from John Mark Suhy's Twitter account in response

28  to several other tweets, which I printed out on August 22, 2020 and was produced with the Bates

842\3639273.5                     - 18 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1  No. N4J_019019-N4J_019020. The portions referenced by and/or that are most relevant to

2  Plaintiffs' Motion are highlighted.

3       106.    Attached hereto as **Exhibit 104** is a true and correct copy of is a true and correct

4  copy of a February 23, 2019 tweet issued from John Mark Suhy's Twitter account in response to

5  several other tweets, which I printed out on October 2, 2019 and was produced with the Bates No.

6  N4J_018927.

7       107.    Attached hereto as **Exhibit 105** is a true and correct copy of a January 23, 2019,

8  tweet issued from GFI's Twitter account that appeared in John Mark Suhy's twitter feed as being

9  retweeted (highlighted for reference), which I printed out on July 19, 2020 and was produced with

10  the Bates No. N4J_018921-N4J_018922.

11       108.    Attached hereto as **Exhibit 106** is a true and correct copy of a January 31, 2019,

12  tweet issued from GFI's Twitter account that appeared in John Mark Suhy's twitter feed as being

13  retweeted (highlighted for reference), which I printed out on July 19, 2020 and was produced with

14  the Bates No. N4J_018923-N4J_018924.

15       109.    Attached hereto as **Exhibit 107** is a true and correct copy of a March 17, 2019,

16  tweet issued from GFI's Twitter account that appeared in John Mark Suhy's twitter feed as being

17  retweeted (highlighted for reference), which I printed out on July 19, 2020 and was produced with

18  the Bates No. N4J_018928-N4J_018929. The portions referenced by and/or that are most relevant

19  to Plaintiffs' Motion are highlighted.

20       110.    Attached hereto as **Exhibit 108** is a true and correct copy of a March 21, 2019,

21  tweet issued from GFI's Twitter account that appeared in John Mark Suhy's twitter feed as being

22  retweeted (highlighted for reference), which I printed out on July 19, 2020 and was produced with

23  the Bates No. N4J_018930-N4J_018931.

24       111.    Attached hereto as **Exhibit 109** is a true and correct copy of a May 10, 2019, tweet

25  issued from GFI's Twitter account that appeared in John Mark Suhy's twitter feed as being

26  retweeted (highlighted for reference), which I printed out on July 19, 2020 and was produced with

27  the Bates No. N4J_018934-N4J_018935.

28       112.    Attached hereto as **Exhibit 110** is a true and correct copy of a November 27, 2019,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3639273.5                                    - 19 -
DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1  tweet issued from GFI's Twitter account that appeared in John Mark Suhy's twitter feed as being

2  retweeted (highlighted for reference), which I printed out on July 19, 2020 and was produced with

3  the Bates No. N4J_018942-N4J_018943.

4      113.   Attached hereto as **Exhibit 111** is a true and correct copy of a January 18, 2020,

5  tweet issued from GFI's Twitter account that appeared in John Mark Suhy's twitter feed as being

6  retweeted (highlighted for reference), which I printed out on July 19, 2020 and was produced with

7  the Bates No. N4J_018965-N4J_018966.

8      114.   Attached hereto as **Exhibit 112** is a true and correct copy of a printout GFI's

9  webpage https://www.graphfoundation.org/1000th-ongdb-open-neo4j-enterprise-3-5-download-

10  iequoh3ja/ as it appeared on September 25, 2019 that I printed out and was produced by Plaintiffs

11  with the Bates No. N4J_018701-N4J_018703.

12      115.   Attached hereto as **Exhibit 113** is a true and correct copy of a printout of GFI's

13  webpage https://www.graphfoundation.org/projects/ongdb/ as it appeared on June 10, 2020 that I

14  printed out and was produced by Plaintiffs with the Bates No. N4J_018732-N4J_018736.  This

15  was also authenticated and marked as Exhibit 26 during the Rule 30(b)(6) deposition of GFI.  *See*

16  Exhibit 31 at 190:2-16.

17      116.   Attached hereto as **Exhibit 114** is a true and correct copy of a printout of GFI's

18  webpage https://www.graphfoundation.org/projects/ongdb/ as it appeared on December 9, 2020

19  that I printed out and bears the Bates No. N4J_019978-N4J_019981.  The portions referenced by

20  and/or that are most relevant to Plaintiffs' Motion are highlighted.

21      117.   Attached hereto as **Exhibit 115** is a true and correct copy of a printout of an issued

22  raised on the Neo4j Online Community, which can be found at

23  https://community.neo4j.com/t/neo4j-desktop-vs-neo4j-server/3066/ via Neo4j USA's webpage

24  https://community.neo4j.com/, which I printed out on September 13, 2019 and was produced by

25  Plaintiffs with the Bates No. N4J-GFI_000008-N4J-GFI_000009.  This was also authenticated

26  and marked as Exhibit 36 during the Rule 30(b)(6) deposition of GFI (*see* Exhibit 31 at 229:1-7,

27  229:23-232:4 and Exhibit 116) and as Exhibit 27 during the Rule 30(b)(6) deposition of iGov (*see*

28  Exhibit 3 at 208:14-209:6).

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3639273.5                                - 20 -
DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1    118.    Attached hereto as **Exhibit 116** is a true and correct copy of a January 9, 2019

2    email exchange between John Mark Suhy and Benjamin Nussbaum, copying Brad Nussbaum,

3    which was produced by Defendants in this litigation and bears the Bates No. IGOV0001570054.

4    This email exchange contains the url address, https://community.neo4j.com/t/neo4j-desktop-vs-

5    neo4j-server/3066, that matches Exhibit 115 hereto.   This was also authenticated and marked as

6    Exhibit 37 during the Rule 30(b)(6) deposition of GFI (*see* Exhibit 31 at 229:1-7, 229:23-232:4

7    and Exhibit 116) and as Exhibit 26 during the Rule 30(b)(6) deposition of iGov (*see* Exhibit 3 at

8    207:7-209:6).

9    119.    Attached hereto as **Exhibit 117**, is a true and correct copy of Issue #11821 opened

10   on May 19, 2018 on Plaintiffs GitHub repository, https://github.com/neo4j/neo4j/issues/11821 ,

11   by John Mark Suhy, which I printed out on June 10, 2020 and was produced with the Bates No.

12   N4J_01944-N4J_019452.  This was also authenticated and marked as Exhibit 25 during the Rule

13   30(b)(6) deposition of iGov. *See* Exhibit 3 at 201:18-203:3.  The portions referenced by and/or

14   that are most relevant to Plaintiffs' Motion are highlighted.

15   120.    Attached hereto as **Exhibit 118** is a true and correct copy of a continued July 2018

16   email exchange between GFI and Bob Trudeau produced by GFI bearing the Bates No.

17   GFI000284-286. *See* Exhibit 28; s*ee also* Exhibit 31 at 83:22-84:7.  GFI designated this

18   document as "Confidential" when originally produced, but subsequently agreed that they did not

19   need to be filed under seal.

20   121.    Attached hereto as **Exhibit 119**, is a true and correct copy of a July 9, 2018 email

21   exchange between John Mark Suhy, and Lewis Lu and Keshav Nagpal of Gravity iLabs spanning

22   December 4 and 5, 2018, which was produced by the PureThink Defendants on November 19,

23   2019  and bears the Bates No. IGOV0001573440.0001- IGOV0001573440.0002.  The portions

24   referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

25   122.    Attached hereto as **Exhibit 120** is a true and correct copy of a January 22, 2020

26   email from Michael Smolyak of Next Century Corp., copying John Mark Suhy and Shahak

27   Nagiel, and produced by GFI with the Bates No. GFI000047.  This was also marked as Exhibit 28

28   during the Rule 30(b)(6) deposition of GFI.  *See* Exhibit 31 at 198:3-198:24.  GFI designated this

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3639273.5

- 21 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1  document as "Confidential" when originally produced, but subsequently agreed that they did not

2  need to be filed under seal..

3          123.    Attached hereto as **Exhibit 121** is a true and correct copy of a question posted on

4  Stack Overflow, https://stackoverflow.com/company, a self-described "public platform [that] is

5  used by nearly everyone who codes to learn, share their knowledge, collaborate, and build their

6  careers," at https://stackoverflow.com/questions/54740366/unable-to-connect-to-neo4j-ongdb-

7  browser-when-port-forwarding as it appeared on September 26, 2019 and was produced by

8  Plaintiffs with the Bates No. N4J_019552.

9          124.    Attached hereto as **Exhibit 122** is a true and correct copy of a question posted on

10  Stack Overflow, https://stackoverflow.com/company, a self-described "public platform [that] is

11  used by nearly everyone who codes to learn, share their knowledge, collaborate, and build their

12  careers," at https://stackoverflow.com/questions/61497333/ongdb-neo4j-not-starting-up as it

13  appeared on June 10, 2020 and was produced by Plaintiffs with the Bates No. N4J_019553.

14          125.    Attached hereto as **Exhibit 123** is a true and correct copy of a question posted on

15  Stack Overflow, https://stackoverflow.com/company, a self-described "public platform [that] is

16  used by nearly everyone who codes to learn, share their knowledge, collaborate, and build their

17  careers," at https://stackoverflow.com/questions/54802647/gremlin-server-not-starting-with-

18  ongdb as it appeared on September 26, 2019 and was produced by Plaintiffs with the Bates No.

19  N4J_019544- N4J_019546.  This has also been captured by the Wayback Machine at

20  https://web.archive.org/web/20190515022009/https://stackoverflow.com/questions/54802647/gre

21  mlin-server-not-starting-with-ongdb.

22          126.    Attached hereto as **Exhibit 124** is a true and correct copy of a question posted on

23  Stack Overflow, https://stackoverflow.com/company, a self-described "public platform [that] is

24  used by nearly everyone who codes to learn, share their knowledge, collaborate, and build their

25  careers," at https://stackoverflow.com/questions/54224244/loading-large-cypher-file-in-neo4j as

26  it appeared on September 13, 2020 and was produced by Plaintiffs with the Bates No.

27  N4J_019550.

28          127.    Attached hereto as **Exhibit 125**, is a true and correct copy of Issue #4 opened on

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3639273.5                                           - 22 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_2575

1    May 26, 2019 on GFI's GitHub repository, https://github.com/graphfoundation/ongdb/issues/4,

2    by John Mark Suhy, which I printed out on November 11, 2020 and bears the Bates No.

3    N4J_0199812-N4J_019983.  The portions referenced by and/or that are most relevant to

4    Plaintiffs' Motion are highlighted.

5         128.    Attached hereto as **Exhibit 126** is a true and correct copy of a February 19, 2020

6    email exchange between John Mark Suhy and Keoni Gasparat of Neo4j, which was produced by

7    the PureThink Defendants and bears the Bates No. IGOV0002851597.0001 -

8    IGOV0002851597.0003. Plaintiffs and the PureThink Defendants have designated this email as

9    "Confidential" under the Protective Order.

10        129.    Attached hereto as **Exhibit 127** is a true and correct copy of an August 2018 email

11   email exchange between John Mark Suhy and Michael Dunn of the Internal Revenue Service,

12   copying Linkavan Manoharan, Lisa Rosenmerkel and GuoqingWeng, which was produced by the

13   PureThink Defendants on November 19, 2019, and bears the Bates No. IGOV0001573217.0001 -

14   IGOV0001573217.0003

15        130.    Attached hereto as **Exhibit 128**, is a true and correct copy of Plaintiff Neo4j, Inc.'s

16   Request for Admission, Set One, to Defendant Graph Foundation, Inc.

17        131.    Attached hereto as **Exhibit 129**, is a true and correct copy of Graph Foundation,

18   Inc.'s Supplemental Objections and Responses to Neo4j, Inc.'s First Set of Requests For

19   Admission.

20        132.    Attached hereto as **Exhibit 130** is a true and correct copy of a July 3, 2018 email

21   from John Mark Suhy (without attachment), which was produced by the PureThink Defendants as

22   "email-20" and designated by them as Confidential under the Protective Order.

23        133.    Attached hereto as **Exhibit 131** is a true and correct copy of a February 17, 2020

24   email to John Mark Suhy and one of the referenced attachments, T001 Request for Quotation

25   Template.docx, which was produced by the PureThink Defendants as "email-11" and designated

26   by them as Confidential under the Protective Order.  The portions referenced by and/or that are

27   most relevant to Plaintiffs' Motion are highlighted.

28        134.    Attached hereto as **Exhibit 132** is a true and correct copy of a February 19-20,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3639273.5                                    - 23 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1  2020 email exchange and the referenced attachment, Outward-Pricing-Breakdown-NGC-v1.pdf,

2  which was produced by the PureThink Defendants and designated by them as Confidential under

3  the Protective Order.

4      135.    Attached hereto as **Exhibit 133** is a true and correct copy of a January 23-24, 2020

5  email exchange, which was produced by the PureThink Defendants with the Bates No. 06-2020-

6  000044 and designated by them as Confidential under the Protective Order. The portions

7  referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

8      136.    Attached hereto as **Exhibit 134** is a true and correct copy of an April 9-10, 2020

9  email exchange, which was produced by the PureThink Defendants with the Bates No. 06-2020-

10  000047-06-2020-000049 and designated by them as Confidential under the Protective Order. The

11  portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

12      137.    Attached hereto as **Exhibit 135** is a true and correct copy of a May 4-5, 2020

13  email exchange, which was produced by the PureThink Defendants with the Bates No. 06-2020-

14  000050-06-2020-000053 and designated by them as Confidential under the Protective Order.  The

15  portions referenced by and/or that are most relevant to Plaintiffs' Motion are highlighted.

16      I declare under penalty of perjury under the laws of the United States of America that the

17  foregoing is true and correct, and that this declaration was executed on this 11th day of December

18  2020, at San Jose, California.

19

20           */s/ Jeffrey M. Ratinoff*

21           Jeffrey M. Ratinoff

22

23

24

25

26

27

28

842\3639273.5

- 24 -

DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF NEO4J, INC. AND NEO4J SWEDEN AB'S CONSOLIDATED MOTION
FOR SUMMARY JUDGMENT; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**EXHIBIT 1**

# United States of America

## United States Patent and Trademark Office

# NEO4J

**Reg. No. 4,784,280**

**Registered Aug. 4, 2015**

**Int. Cls.: 9, 35, 41, 42 and 45**

**TRADEMARK**

**SERVICE MARK**

**PRINCIPAL REGISTER**

NEO TECHNOLOGY (DELAWARE CORPORATION)
111 E. 5TH AVE.
SAN MATEO, CA 94401

FOR: COMPUTER PROGRAMS FOR MANAGING, STORING, AND ACCESSING DATA FROM A DATABASE, ANALYZING DATA IN COMPUTER DATABASES FOR BUSINESS PURPOSES, PROCESSING IN THE NATURE OF UPDATING DATA IN COMPUTER DATABASES, AND VISUALIZING IN THE NATURE OF CREATING GRAPHS FROM DATA STORED IN DATABASES; COMPUTER PROGRAMS FOR STORING, MANAGING, AND QUERYING DATA FROM DATABASES ON COMPUTERS, COMPUTER NETWORKS, AND GLOBAL COMPUTER NETWORKS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 6-4-2006; IN COMMERCE 5-28-2007.

FOR: CONSULTING SERVICES AND ADVICE IN THE FIELD OF UPDATING AND MAINTENANCE OF DATA IN COMPUTER DATABASES , IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 6-4-2006; IN COMMERCE 5-28-2007.

FOR: EDUCATIONAL SERVICES, NAMELY, CONDUCTING TRAINING CLASSES, CERTIFICATION TRAINING, WORKSHOPS, TUTORIAL SESSIONS, AND ONLINE CLASSES IN THE FIELDS OF DESIGNING COMPUTER DATABASES AND UPDATING AND MAINTENANCE OF DATA IN COMPUTER DATABASES, AND DISTRIBUTING COURSE MATERIALS IN CONNECTION THEREWITH; PROVIDING TRAINING SERVICES IN THE FIELDS OF DESIGNING COMPUTER DATABASES AND UPDATING AND MAINTENANCE OF DATA IN COMPUTER DATABASES, AND DISTRIBUTING COURSE MATERIALS IN CONNECTION THEREWITH, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 6-4-2006; IN COMMERCE 5-28-2007.

FOR: PROVIDING A WEB SITE FEATURING TECHNOLOGY THAT ENABLES END USERS TO STORE, MANAGE, AND QUERY DATA FROM DATABASES ON COMPUTERS, COMPUTER NETWORKS, AND GLOBAL COMPUTER NETWORKS; CLOUD COMPUTING FEATURING SOFTWARE FOR USE IN MANAGING, STORING, AND ACCESSING DATA FROM A DATABASE, ANALYZING DATA IN COMPUTER DATABASES FOR BUSINESS PURPOSES, PROCESSING IN THE NATURE OF UPDATING DATA IN COMPUTER



Director of the United States
Patent and Trademark Office

N4J_000001
SER_2579

**Reg. No. 4,784,280**  DATABASES, AND VISUALIZING IN THE NATURE OF CREATING GRAPHS FROM DATA STORED IN DATABASES; TECHNICAL SUPPORT SERVICES, NAMELY, INSTALLATION, ADMINISTRATION, AND TROUBLESHOOTING OF DATABASE APPLICATIONS; COMPUTER SERVICES, NAMELY, PROVIDING CONSULTATION SERVICES AND ADVICE IN THE FIELDS OF DESIGNING COMPUTER DATABASES, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 6-4-2006; IN COMMERCE 5-28-2007.

FOR: CONSULTING SERVICES AND ADVICE IN THE FIELD OF MAINTAINING THE SECURITY AND INTEGRITY OF DATABASES, IN CLASS 45 (U.S. CLS. 100 AND 101).

FIRST USE 6-4-2006; IN COMMERCE 5-28-2007.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 86-267,006, FILED 4-30-2014.

SIMON TENG, EXAMINING ATTORNEY

N4J_000002
**SER_2580**

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

> **First Filing Deadline:** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> **Second Filing Deadline:** You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

Page: 3 / RN # 4,784,280

N4J_000003
SER_2581

**EXHIBIT 2**

PureThink

Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 31 of 1198



Call Us: 703-348-3968  |  Contact Us

HOME    CAPABILITIES    CONSULTING    COMPANY

## About PureThink

PureThink is a software and information technology services company focusing on government consulting / contracting. Our team is experienced and innovative and this reflects on the overall quality of our products and services.

**About Us**  |  NAICS & SIC Codes

## Philosophy

To help you succeed, we believe in working closely and cooperatively. Our goal is to ensure everyone on the same page regarding project status, methods and tasks. Our approach is to develop software according to an Agile methodology which means we emphasize people and interaction rather than complicated processes and endless documentation.

PureThink provides strategic consulting, business systems development and integration, technology solutions, and managed services to federal government agencies, Non Profits and commercial companies. We collaboratively help our clients achieve results by identifying mission critical issues and implementing innovative and customized solutions that achieve create value and desired business results - productivity, speed, margins, technology and relationships. Over the years, we have earned a solid reputation for combining our strategic consulting, technology, functional and vertical market expertise and innovative delivery model into practical solutions that deliver results. Our flexible yet structured approach and integrated methodologies enable us to structure engagements to best meet our clients' specific needs. In short, we do what it takes to get the job done - on time and on budget.

## Results

### Contact

Main Office
1902 Campus Commons Drive
Suite 101
Reston, VA 20191

Phone: 703-348-3968

Email: info@purethink.com.

N4J_019932

SER_2583

PureThink

Our mission is to bring the greatest value to our clients globally by leveraging our considerable depth of resources and experience. We align our approach to the specific business drivers of each business we work with. We tailor solutions to best suit different cultural environments, industries, and market conditions. We focus on business strategy implementation, not business strategy development.

## Distinguishers

* Past performance in Federal, DOD, and commercial spaces (from small to enterprise) .
* Our management team is comprised of highly experienced technology professionals.
* No off-shoring : our resources are all located in the USA.
* Extensive domain knowledge, adaptability, and experience in emerging technologies, methodologies and processes.
* Security focused. All of our software development professionals must go through security training. We were 2011 RSA speakers on security in the cloud.
* Our company is profitable with zero debt.
* Our core team has been working together for over 10 years.

N4J_019933

SER_2584

# EXHIBIT 3

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

SER_2585

**EXHIBIT 4**

SER_2586

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0

**neo**technology  *graphs are everywhere*

# NEO4J SOLUTION PARTNER AGREEMENT

| Partner: | PureThink LLC | Neo Representative: | Erik Nolten; erik.nolten@neotechnology.com Phone: +31 652 721 808 |
|---|---|---|---|
| Address: | 4202 Adrienne Dr | Address: | Neo Technology, Inc. 111 East 5th Avenue San Mateo, CA 94401 |
| Contact Name: | John Mark Suhy Jr | Phone: | 1-855-636-4532 |
| Contact Phone: | 703-348-3968 x 101 | Web: | www.neotechnology.com |
| Contact Email: | jmsuhy@purethink.com | E-mail: | accounting@neotechnology.com |
| | | | |
| Support contact 1 | | Support contact 2 | |
| Name: | John Mark Suhy | Name: | Nikhil Budhiraja |
| Email: | jmsuhy@purethink.com | Email: | nikhil@purethink.com |
| Mobile: | 703-348-3968 x 101 | Mobile: | 703-348-3968 x 109 |
| | | | |
| Payment Information | Wire payment information: Silicon Valley Bank 3003 Tasman Drive Santa Clara, CA 95054, USA | Routing and Transit #:  121140399 SWIFT code: SVBKUS6S Credit Account #: 330072 6656 | |

| Neo4j Solution Partner Program Fee: | | | |
|---|---|---|---|
| Agreement Period | 1 Year | Annual fees: | USD 1,995.00 |
| Special condition: Fee is payable with the first Product order/referral. | | | |

**Territory.**  Subject to the terms and conditions of this Agreement, Partner may sell the Products in the following "Territory" (check all that apply). Applicable territories: ___X___North America; _____ Central and South America; _____Europe; _____Middle Eastern; _____Africa; _____Japan; _____ India; ____ Australia and New Zealand; _____Asia Pacific excluding Australia, New Zealand, Japan and India; _____(Other).

By signing below, "Partner" shall be entitled to the benefits set forth on Exhibit A and Partner acknowledges and agrees to the terms and conditions of the Partner Terms attached hereto as Exhibit B effective as of ____09-30-2014_____ ("Effective Date"), by and between Neo Technology, Inc. ("Neo Technology"), a corporation having its principal place of business at 111 East Fifth Ave., First Floor, San Mateo, CA 94401 ("Neo Technology") and the "Partner" below.

| Partner: | | Neo Technology, Inc. | |
|---|---|---|---|
| Name: | PureThink LLC | Name: | LARS NORDWALL |
| Title: | CTO / Director | Title: | COO |
| Date: | 09-30-2014 | Date: | 10/6/2014 |
| Signature: | *[signature]* | Signature: | DocuSigned by: *LARS NORDWALL* 5E9692354E8643E... |

NEO TECHNOLOGY INC. CONFIDENTIAL



Witness: John Mark Suhy
**Exhibit 05**
10/22/2020  B Gerald

N4J_000004
SER_2587

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0

**neotechnology** *graphs are everywhere*

# NEO4J SOLUTION PARTNER AGREEMENT

**Exhibit A**
Benefits

In consideration for Partner's pre-payment of applicable fees and ongoing compliance with all of the other terms and conditions of this Agreement, and any Exhibits hereto, Neo Technology agrees to offer Partner the non-exclusive benefits described below.

| NEO4J SOLUTION PARTNER BENEFIT & QUALIFICATION TABLE | |
|---|---|
| Revenue sharing on sold subscriptions based on price list | 25% or as otherwise mutually agreed in an order form |
| Referral fee on sold new subscription | optional |
| Internal use of Neo4j for training and demo purposes | ✓ |
| Press release support for customer case studies | ✓ |
| Invitation to Neo events (fees may apply) | ✓ |
| Neo4j Partner Logo Usage | ✓ |
| Invitation to Product Roadmap Discussions | ✓ |
| Strategic Account Support | ✓ |
| Listing on Partner Page | ✓ |
| Access to training and certification program subject to execution of Authorized Training Partner Addendum | |
| Partner Portal Access | ✓ |
| Access to Neo4j Support | ✓ |
| Training discount | 20% |
| **Qualification and Partner Guidelines** | |
| Proven ability to commit and deliver on consulting engagements with high success rate | ✓ |
| Complete and submit Neo Partner Agreement | ✓ |
| 2 or more Certified Neo Consultants | ✓ |
| Joint Business & Marketing Plan for Territory | ✓ |
| Generate Case study(s) for joint customer | ✓ |
| Two Annual new customer acquisition target | ✓ |
| Organize Neo4j events | ✓ |

N4J_000005
SER_2588

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0

 *graphs are everywhere*

# NEO4J SOLUTION PARTNER AGREEMENT

### Exhibit B
### Partner Terms

**1.      PARTNER PROGRAM AND ORDERS.**  In exchange for the payment of applicable fees, Partner will be entitled to the benefits of the Partner Program for described on Exhibit A. Partner may submit orders for Products to Neo Technology from time to time.  All orders must be consistent with the terms of this Agreement and are subject to Neo Technology's acceptance or rejection.  If accepted, Partner shall execute the Neo Technology Order Form and shall: (i) shall cause the applicable End User to execute Neo Technology's Acknowledgement Form as Neo Technology provides to Partner from time to time or (ii) Partner hereby agrees to be responsible and jointly and severally liable for all of the End User/Licensee obligations found at http://www.neotechnology.com/terms/enduser-partner-us/ with respect to (a) the State of Maryland as the End User/Licensee under such terms and (b) with respect to any other governmental entity that Neo Technology approves of in a mutually agreed upon Neo Technology Order Form.  All licenses to use the Products will be between Neo Technology and the applicable End User.  Partner will inform Neo Technology of the status of each Product order renewal in writing at least thirty (30) days before the expiration date of each End User's subscription license period.  In the event Partner fails to notify Neo Technology within the thirty (30) day period described above, Neo Technology may, in its sole discretion, renew the Product subscription directly with the End User.

**2.      PAYMENTS AND FEES.**

**2.1      Partner Program Fees.**  During the term of this Agreement, Partner will pay to Neo Technology the annual Partner Program fees as specified on the front page of this Agreement. The first year's annual Program fees are due on the Effective Date of this Agreement. Thereafter, the annual Program fees for renewal years will be invoiced at the then current annual Partner Program fees and such renewal Partner Program fees will be invoiced annually in advance on each anniversary of the Effective Date of this Agreement.

**2.2      Product Orders and Fees.**  Fees for orders for subscriptions to the Products, including for renewals subject to Section 1, will be at the discounted prices set forth in Exhibit A and will be invoiced in advance after Neo Technology's Acknowledgement Form is executed by Partner and the End User or as otherwise set forth in Section 1.  Partner shall not enable any End User to download, install or use the Products unless and until the End User has duly executed Neo Technology's Acknowledgement Form or as otherwise set forth in Section 1.  Neo Technology shall have the right to modify the discounted prices set forth in Exhibit A at any time.  Neo Technology will provide the renewal amount to Partner for each End User renewal within a reasonable period of time after Partner informs Neo Technology of the status of each Product order renewal as set forth in Section 1 above.

**2.3      Taxes/Duties.**  All fees and charges payable by Partner under this Agreement are exclusive of any (a) duties or (b) present or future sales, use, value added, excise, or other governmental or similar taxes applicable to this Agreement.  Neo Technology will separately itemize any applicable taxes and duties of which it is aware on each invoice, unless Partner furnishes Neo Technology with a properly executed tax exemption certificate certifying that it does not owe such taxes and duties.  Partner will be responsible for paying any applicable taxes and duties currently or hereafter assessed by a government agency, other than taxes based on Neo Technology's net income.  If all or any part of any payment owed to Neo Technology under this Agreement is withheld, based upon a claim that such withholding is required pursuant to the tax laws of any country or its political subdivisions and/or any tax treaty between the U.S. and any such country, such payment shall be increased by the amount necessary to result in a net payment to Neo Technology of the amounts otherwise payable under this Agreement.

**2.4      Payment.**  Unless otherwise indicated in addendums to this Agreement, payments of all invoices: (a) will be paid within thirty (30) days of the date of the invoice; and (b) will be made in EUROS or U.S. dollars as set forth on the front page of this Agreement or as Neo Technology otherwise specifies without right of set off or chargeback.  All fees are non-refundable. All amounts not paid when due are subject to a late fee of the lesser of one percent (1%) per month or the maximum amount allowable by law.

**2.5      Notification of Changes.**  Neo Technology will provide Partner with sixty (60) days written notice of any changes in the Partner program benefits set forth on Exhibit A.

**2.6      Audit Rights.**  Partner will, during this Agreement and for a period of one (1) year after termination, maintain records relating to its performance under this Agreement. Partner agrees that Neo Technology, upon at least ten (10) days prior written notice during business hours may at its own cost and expense directly or through an agent inspect such accounts, records and other information as may be required to verify Partner's compliance with this Agreement. The cost of the audit will be borne by Neo Technology unless the audit reveals an underpayment by Partner to Neo Technology, in which case Partner will immediately pay the amount of the underpayment and will pay for the cost of the audit.

**3.      CONFIDENTIALITY.** Each party acknowledges that it acquires only the right to use the other party's Confidential Information under the terms and conditions of this Agreement and does not acquire any rights of ownership or title in the other party's Confidential Information. Each party will hold in confidence any Confidential Information received by it from the other and will protect the confidentiality of such with the same degree of care that it exercises with respect to its own information of like import, but in no event less than reasonable care, for a period of five (5) years from receipt. Each party will only disclose Confidential Information to its employees, agents, representatives and authorized contractors (collectively "Representatives") having a need to know for the purposes of this Agreement.  Each party will notify and inform such Representatives of each party's limitations, duties, and obligations regarding use, access to, and nondisclosure of Confidential Information and will obtain or have obtained its Representatives' agreements to comply with such limitations, duties, and obligations with regard to such Confidential Information no less restrictive than those contained herein.  Each party is liable for all acts and omissions of the Representatives related to the other party's Confidential Information. Each party agrees to give notice to the other party immediately after learning of or having reason to suspect a breach of any of the proprietary restrictions set forth in this Section. In the event that a party is required to disclose Confidential Information pursuant to any applicable statute, regulation or order of a court of competent jurisdiction, that party will use commercially reasonable efforts to notify the other party of the required disclosure.

**4.      LICENSES AND OWNERSHIP.**

**4.1      Licenses.**  Neo Technology hereby grants to Partner a non-exclusive, non-transferable limited license during the term of this Agreement to: (i) use the Products solely to demonstrate the Products to potential customers in connection with its performance under this Agreement; (ii) provided that Partner has executed an Authorized Training Partner Addendum, use the Products to provide training and Level 1 and Level 2 Support to End Users that have licensed the Products from Neo Technology, with all such Support as described on Exhibit C; (iii) use the Neo Technology trademarks solely to market and promote the Products in accordance with the terms of this Agreement; and (iv) market and resell licenses to the Products (in object code only) to End Users, for use by End Users for their internal business purposes and subject to the End Users' agreement to Neo Technology's Acknowledgement Form and license agreement or as otherwise set forth in Section 1.  Partner will use Neo Technology trademarks only in accordance with Neo Technology's then-current trademark usage guidelines. Any use by Partner of Neo Technology trademarks will inure to the benefit of Neo Technology  Neo Technology will provide Partner with Level 3 Support as described on Exhibit C.

**4.2      Pre-Existing Technology.**  Each party acknowledges and agrees that, as between the parties, each party is and will remain the sole and exclusive owner of all right, title, and interest in and to its pre-existing technology, and all associated Intellectual Property Rights, and that this Agreement does not affect such ownership.  Each party acknowledges that it acquires no rights under this Agreement to the other party's pre-existing technology other than the limited rights specifically granted in this Agreement. Neo Technology will own all right, title, and interest in and to all Products and derivative works of the Products and all associated Intellectual Property Rights.  If Partner acquires any rights, including any Intellectual Property Rights, in the Products or derivative works thereof, Partner hereby assigns and agrees to assign to Neo Technology all such rights.

**4.3      Modifications to Pre-Existing Technology.** Each party acknowledges and agrees that, as between the parties, each party is and will remain the sole and exclusive owner of all right, title, and interest in and to any modifications and/or derivative works to its pre-existing technology regardless of who created such modifications and/or derivative works, and all associated Intellectual Property Rights.  Each party acknowledges that it acquires no rights under this Agreement to the modifications and/or derivative works of the other party's pre-existing technology other than the limited rights specifically granted in this Agreement.

**4.3      Restrictions.**

**4.3.1** During the term of this Agreement, Partner may not use or run on any of Partner's hardware, or have deployed for internal use, any Neo Technology Community Edition Products for commercial or production use.  In no event shall Partner reverse engineer, distribute or otherwise use the Products for its own internal use.  There are no implied rights.  Partner will not fork or bifurcate the source code for any Neo Technology Community Edition Products into a separately maintained source code repository so that development done on the original code requires manual work to be transferred to the forked software or so that the forked software starts to have features not present in the original software.

**4.3.2** During the term of this Agreement and up until thirty six (36) months after the termination or expiration of this Agreement, Partner may not develop, market, distribute or offer any services related to any Neo Technology Community Edition Products, derivative works of such products, or any Partner software code made to work with Neo Technology Community Edition Products (including, without limitation, hosting services, training, technical support, configuration and customization services, etc.).

**4.3.3** During the term of this Agreement, Partner will not accept work, enter into a contract or accept an obligation inconsistent or incompatible with Partner's obligations, or the scope of services to be rendered for Neo Technology, under this Agreement.  Partner warrants that, to the best of Partner's knowledge, there is no other existing contract or duty on Partner's part that conflicts with or is inconsistent with this Agreement.  Partner agrees to indemnify and hold harmless Neo Technology from any and all losses and liabilities incurred or suffered by Neo Technology by reason of the alleged breach by Partner of any services agreement between Partner and any third party.

**4.3.4** Partner shall conduct and perform its obligations under this Agreement in a manner that reflects favorably on Neo Technology at all times.  Partner shall not make any representations or warranties regarding Neo Technology or the Products.  Partner agrees to indemnify, defend and hold harmless Neo Technology from any and all claims arising from any representations or warranties made by Partner regarding Neo Technology and/or Product(s) and/or Neo Technology Services. Partner may not approach any End Users who purchased Products directly from Neo Technology for the purpose of renewing or upgrading the End User's subscription to the Products through Partner.

**5.      DISCLAIMER.**  NEO TECHNOLOGY MAKES NO WARRANTIES REGARDING THE PRODUCTS OR ANY INFORMATION PROVIDED BY NEO TECHNOLOGY HEREUNDER, EITHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT OR FITNESS FOR A PARTICULAR PURPOSE.

**6.      LIMITATION OF LIABILITY.**  NEO TECHNOLOGY WILL NOT BE LIABLE FOR ANY INDIRECT, PUNITIVE, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGE IN CONNECTION WITH OR ARISING OUT OF OR RELATED TO THIS AGREEMENT (INCLUDING LOSS OF BUSINESS, REVENUE, PROFITS, USE, DATA, OR OTHER ECONOMIC ADVANTAGE), HOWEVER IT ARISES, WHETHER FOR BREACH OR IN TORT (INCLUDING NEGLIGENCE), EVEN IF NEO TECHNOLOGY HAS BEEN PREVIOUSLY ADVISED OF THE

NEO TECHNOLOGY INC. CONFIDENTIAL

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0

 neotechnology graphs are everywhere

# NEO4J SOLUTION PARTNER AGREEMENT

POSSIBILITY OF SUCH DAMAGE. NEO TECHNOLOGY'S AGGREGATE CUMULATIVE LIABILITY FOR CLAIMS RELATING TO THIS AGREEMENT, WHETHER FOR BREACH OR IN TORT, WILL BE LIMITED TO THE AMOUNT PAID BY PARTNER TO NEO TECHNOLOGY UNDER THIS AGREEMENT IN THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE ACT OR OMISSION FIRST GIVING RISE TO THE CLAIM.   LIABILITY FOR DAMAGES WILL BE LIMITED AND EXCLUDED, EVEN IF ANY EXCLUSIVE REMEDY PROVIDED FOR IN THIS AGREEMENT FAILS OF ITS ESSENTIAL PURPOSE.

**7.**        **TERM AND TERMINATION.**

**7.1**        **Term.** This Agreement will commence on the Effective Date, and remain in effect for a period of one (1) year.  Thereafter, this Agreement will automatically renew at additional one (1) year periods unless either party provides at least sixty (60) days prior written notice to the other party of its intent not to renew.

**7.2**        **Termination.** This Agreement may be terminated by a party for cause immediately if (a) the other ceases to do business, or otherwise terminates its business operations; or (b) the other materially breaches any material provision of this Agreement and fails to cure such breach within thirty (30) days of written notice describing the breach. In addition, Neo Technology may terminate this Agreement at any time by providing Partner with ninety (90) days prior written notice.  This Agreement may be terminated as set forth on Exhibit C.

**7.3**        **Effect of Termination.** Upon termination of this Agreement by either party (a) all rights and licenses of Partner hereunder will terminate  and Partner shall cease all communications with End Users regarding the Products; and (b) each party will immediately return to the other party all Confidential Information in its possession, custody or control in whichever form held (including all copies or embodiments of the Confidential Information) and will cease using any trademarks, service marks and other designations of the other party; and (c) Partner shall pay to Neo Technology all outstanding fees. To remove all doubt, except as set forth in this Agreement, it is hereby clarified that Partner will not be entitled to any additional remuneration, or reimbursement of any expenses based on the expiration or termination of this Agreement.  An addendum to this Agreement may specify additional effects of termination of this Agreement.  After any termination of this Agreement, Neo Technology shall not be restricted in any manner from licensing or contracting with End Users.

**7.4**        **Survival.** In addition to any provisions set forth on an addendum to this Agreement that expressly survive termination or expiration of this Agreement, any definitions any payment obligations that accrued prior to the effective termination or expiration date and Sections 2.6, 3, 4.2, 4.3.2 (as set forth therein), 4.3.4, 5, 6, 7, 8, 10 and 11 will survive the expiration or termination of this Agreement.
**8.**        **INDEMNITY.**  Partner will indemnify, defend and hold harmless Neo Technology from and against any and all third party claims, suits, actions, demands and proceedings against Neo Technology and all losses, costs and liabilities related thereto arising out of or related to any negligence by Partner or any other act or omission of Partner, including without limitation any breach of this Agreement by Partner.
**9.**        **MARKETING**
**9.1**  **Marketing.**  Provided that Partner complies with all of the obligations herein, Neo Technology will include the Partner company logo and profile on the Neo Technology website.  Partner will include the Neo Technology company logo on Partner website in accordance with the Neo Technology trademark usage guidelines.  Each party may issue a press release announcing that Partner is a Partner as the other party approves in writing.  Each party will provide a quote from an executive to support the other party's press release.  All marketing activities are subject to approval by both Partner and Neo Technology.
**9.2**  **Surveys.**  Neo Technology may issues surveys to Partner once per quarter in an effort to improve customer satisfaction.  Partner will provide responses within ten (10) business days of receipt of each survey.

**10.**        **GENERAL TERMS.**

**10.1**    **Force Majeure.** A party is not liable under this Agreement for non-performance caused by events or conditions beyond that party's control if the party makes reasonable efforts to perform.

**10.2**    **Relationship of Parties.** This Agreement is not intended to create a relationship such as a partnership, franchise, joint venture, agency, or employment relationship.  Neither party may act in a manner which expresses or implies a relationship other than that of independent contractor, nor bind the other party.

**10.3**    **Notices.** All written notices required by this Agreement must be delivered to the addresses specified above, either in person or by a means evidenced by a delivery receipt.  All notices will be effective upon receipt.

**10.4**    **Assignment.** Neither party may assign or otherwise transfer any of its rights or obligations under this Agreement, without the prior written consent of the other party; provided, however, either party may assign this Agreement without the other party's consent to a parent or subsidiary of such party or in the case of a merger or sale of all or substantially all of its assets or stock.

**10.5**    **Waiver or Delay.** Any express waiver or failure to exercise promptly any right under this Agreement will not create a continuing waiver or any expectation of non-enforcement.

**10.6**    **Provisions Found Invalid.** If any term or provision of this Agreement is found to be invalid under any applicable statute or rule of law then, that provision notwithstanding, this Agreement will remain in full force and effect and such provision will be deemed omitted; provided, however, in lieu of such omitted provision there will be added to this Agreement a valid provision which is as nearly identical to the omitted provision as possible.

**10.7**    **Construction.** This Agreement has been negotiated by the parties, each of which has been represented by counsel.  This Agreement will be fairly interpreted in accordance with its terms, without any strict construction in favor of or against either party.

**10.8**    **Governing Law.** Any action related to this Agreement will be governed by the laws of California without regard for its choice of law provisions.  The United Nations Convention on Contracts for the International Sale of Goods will not apply.

**10.9**    **Venue.** Except as set forth below, the courts seated in San Mateo, California, will have sole and exclusive jurisdiction for all purposes in connection with any action or proceeding that arises from, or relates to, this Agreement, and each party hereby irrevocably waives any objection to such exclusive jurisdiction.  Notwithstanding anything in this Agreement to the contrary, Neo Technology may seek injunctive or other equitable relief in any court of competent jurisdiction to protect any actual or threatened misappropriation or infringement of its intellectual property rights or those of its licensors, and Partner hereby submits to the exclusive jurisdiction of such courts and waives any objection thereto on the basis of improper venue, inconvenience of the forum or any other grounds.

**10.10**  **Export.**  Partner will not export the Products in violation of the export laws of the United States or of any other country.

**10.11**  **Non-solicitation.** During the term of this Agreement and for a period of one (1) year thereafter Partner will not directly or indirectly, either alone or in association with others, (a) solicit, or permit any of its affiliates to solicit, any employee of Neo Technology or its affiliates to leave the employ of Neo Technology or any of its affiliates, or (b) solicit for employment, hire, or engage as an independent contractor, or permit any of its affiliates to solicit for employment, hire, or engage as an independent contractor, any person who was employed by Neo Technology or its affiliates; provided, that this clause (b) will not apply to any individual whose employment with Neo Technology or any of its affiliates has been terminated for a period of six (6) months or longer and provided further that this Section 10.11 will not prohibit general advertisement of employment opportunities not specifically targeting any employee(s) of Neo Technology or its affiliates.

**10.13**  **Other.** This Agreement and attached Exhibit(s) is the entire agreement between the parties.  This Agreement supersedes and cancels any prior documents or agreements, whether written or oral, regarding the subject matter addressed in this Agreement and attached Exhibit(s).  If any terms on Partner's orders conflict with the terms of this Agreement, the conflicting terms of this Agreement shall control. Any preprinted terms on Partner's purchase order or similar ordering or other document are hereby rejected.

**11.**        **DEFINITIONS.**

"Confidential Information" means information which has value because it is not generally known and which the disclosing party uses reasonable means to protect and includes without limitation any information designated as confidential or proprietary by either party to this Agreement upon disclosure.  Confidential Information may include proprietary information of third parties who have granted licenses to or have contractual relationships with the disclosing party.  Confidential Information excludes information that receiving party can clearly establish by written evidence: (a) was in the possession of, or was known by, receiving party prior to its receipt from disclosing party; (b) is or becomes generally known to the public without violation of this Agreement; (c) is obtained by receiving party from a third party not under any obligation of confidentiality; or (d) is independently developed by receiving party without use of Confidential Information.  Furthermore, disclosure of Confidential Information will not be prohibited if disclosure is required by law, regulation or order of a court of competent jurisdiction.

"End User" means an end customer that may use the Products for their own internal use and not for resale or distribution.

"Intellectual Property Rights" means all intellectual property rights worldwide arising under statutory or common law or by contract and whether or not perfected, now existing or hereafter filed, issued, or acquired, including all: (a) patent rights; (b) rights associated with works of authorship including copyrights and mask work rights; (c) rights relating to the protection of trade secrets and confidential information; (d) trademarks, service marks, trade dress and trade names; and (e) any right analogous to those set forth in this Agreement and any other proprietary rights relating to intangible property.

"Neo Technology Community Edition Product" means an open source version of a Neo Technology software product.

"Products" means the Neo4J commercial software provided by Neo Technology and licensed to the End User.

"Support" refers generally to the provision of support as described in Exhibit C of this Agreement.

N4J_000007
**SER_2590**

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0

 neotechnology graphs are everywhere

# NEO4J SOLUTION PARTNER AGREEMENT

## Exhibit C
### Support

**1. Introduction.** This Support Summary is an attachment to the Partner Agreement between Neo Technology and the applicable Partner and is automatically deemed part of, and governed by, the Partner Agreement. Unless otherwise defined in this Support Summary, any capitalized term used in this Support Summary will have the meaning given it in the Partner Agreement.

**2. Partner's Support Obligations.** Partner will provide First and Second Line Support to End User(s) for the Products. This First and Second Line Support shall be provided in accordance with Neo Technology's standard Support Terms, available at http://neotechnology.com/support-terms, and be provided in the time zone and local language of End User(s) unless agreed otherwise with End User(s) and Neo Technology. Additionally, Partner commits to agreeing with End User(s) on the manner in which Partner will provide First and Second Line Support, including the minimum response time(s). Partner will provide for any First and Second Line Support request by End User(s), and will provide Neo Technology with a summary of each such agreement.

**3. Deficiencies.** In the event an End User is dissatisfied with Partner's Support, or Neo Technology otherwise reasonably believes that Partner is not providing such Support in accordance with accepted industry standards, then Neo Technology will notify Partner in writing and both parties will work together in good faith to resolve the deficiencies. If within thirty (30) days, Neo Technology does not believe, in its sole discretion, that such deficiencies have been resolved, Neo Technology may require that Partner cease the provision of Support and allow Neo Technology, or a nominated representative of Neo Technology, to provide such Support directly to the applicable End User(s). In such event, Partner agrees to provide reasonable cooperation in the transition of Support to Neo Technology, or the nominated representative of Neo Technology, and, if Partner was paid in advance for future Support, Partner will pay Neo Technology agreed-to amounts for the period of Support to be provided by Neo Technology or its nominated representative.

**4. Partner Certification.** Partner must meet any certification requirements specified by Neo Technology from time to time in writing, including, without limitation, the requirement to have on Partner's staff at least two (2) Neo Technology certified engineers within six (6) months of the Effective Date. Neo Technology will offer, and Partner may order, training programs in accordance with Neo Technology's then-current program rates or as agreed by the parties in writing. In addition, Partner will comply with any additional certification and training requirements established by Neo Technology from time to time, within ninety (90) days notice from Neo Technology. Support certification is based on a combination of performance-based tests and attended training days that measure competency on Products.

**5. Neo Technology's Support Obligations.** For the purposes of Support, Neo Technology will consider Partner as a customer and provide Partner with Second Line Support in accordance with Neo Technology's standard Support Terms, available at http://neotechnology.com/support-terms. Partner will meet all obligations of a customer described in the Support Terms. Partner agrees to contact Neo Technology for Second Line Support only when, after reasonable commercial efforts, Partner has identified an issue related specifically to Product and is unable to determine a resolution. If any terms of the Support Terms at http://neotechnology.com/support-terms conflict with any terms of this Exhibit C, the conflicting terms of this Exhibit C shall control.

**6. Cooperation.** Partner will cooperate with and provide assistance to Neo Technology as Neo Technology may reasonably request in connection with Neo Technology's Support obligations, including, without limitation, the following:

*6.1. Test Code.* Partner will use its best efforts to provide Neo Technology functioning test code that reproduces and isolates the issue in Product. Such test code must be reproducible using systems and tooling available to Neo Technology. In addition, Partner will remove extraneous comments and code from the test code provided and to the extent possible, such code will be fully self-contained, automated and will demonstrate the precise issue reported rather than other possible problems. If Partner cannot provide test code that reproduces the issue, Partner acknowledges that Neo Technology may be unable to provide a resolution to the issue. In such cases, Neo Technology will work with Partner to assist in the development of a test case.

*6.2. Access.* Partner will use its best efforts to provide Neo Technology with access (via remote telecommunications and, if applicable, on-site access at the End User's or Partners premises) to the extent reasonably necessary to allow Neo Technology to provide Support. If Partner cannot provide remote access, Neo Technology may be unable to provide a resolution to the issue.

*6.3. Assistance.* Partner will provide Neo Technology with a continually-available engineer who will promptly assist Neo Technology with data gathering, testing, and applying all fixes to the applicable environment for Severity Level 1 and Severity Level 2 issues.

**7. Data.** In connection with any activities provided hereunder, Partner will only share or otherwise disclose data to Neo Technology for which Partner has obtained the rights, and express consent of the data subject, to disclose to Neo Technology.

**8. Reporting.** Partner will provide Neo Technology with a monthly report detailing the status of all Severity Level 1 and Severity Level 2 Support cases, as defined in the Support Terms, provided to each End User, including all information reasonably requested by Neo Technology. Such reports will be provided on the first Friday of every month and cover the previous month's activities. Partner acknowledges that Neo Technology may change the reporting obligations described in this Section, and Partner will comply with any new reporting obligations within thirty (30) days of Neo Technology's request. The Support report will provide the following:

- Case number (provided by Partner to End User)
- Partner ID (provided by Neo Technology)
- End user name and contact details
- Status (e.g. new, open, hold, solved, closed)
- Severity Level, based on the categories defined in Neo Technology's standard Support Terms.
- Initial response time; opened and closed date
- Responsible support representative
- Product
- Issue description and type, and root cause description

**9. Exclusions.** Neo Technology will not be obliged to provide Support to Partner for any issue arising out of any of the following events:

- A failure of hardware, equipment or programs not provided by Neo Technology
- Support for any versions of the Product that are not obtained by Partner via the Neo Technology Customer Support Portal
- Use in a Production Environment of versions of the Product not marked as 'Generally Available'
- Support for any version of the Product in production more than two years from the date of its general availability
- Any cause or causes beyond the reasonable control of Neo Technology (e.g. floods, fires, loss of electricity or other utilities)
- Partner's or End User's failure to comply with operating instructions contained in the Product documentation
- Any modification, enhancement or customization of the Product by anyone other than Neo Technology
- APIs, interfaces, web services or plug-ins other than those included with the Product

**10. Other Terms.** Neo Technology may modify its processes and requirements from time to time upon reasonable written notice to Partner; provided that any such changes will apply only prospectively.

**11. Termination.** Neo Technology reserves the right, at any time, to withdraw the availability of Support for a Product with twelve (12) months prior written notice.

N4J_000008
SER_2591

# EXHIBIT 5

SER_2592

00003677

From: **John Mark Suhy** jmsuhy@purethink.com
Subject: Gov Edition Update
Date: July 14, 2015 at 3:37 PM CDT
To: David Fauth david.fauth@neotechnology.com



I am going to send you a breakdown of why we created the Government Edition - since it may not be apparent without an explanation.

I will send you the high level overview so it all makes sense.

In a nutshell - it was put together specifically for US government procurements to help with sole source, GSA pricing negotiations (As no commercial sales and more features for pricing justification), and so that price publications to public that are common in govt contracting don't alienate other commercial clients or other country government clients.

Right now for example - with GSA prices public for Enterprise edition it may upset other countries and clients who would also want 18% discount.  The gov edition addresses all these editions.

will send details today.


John Mark Suhy
PureThink
jmsuhy@purethink.com
703-862-7780
http://purethink.com

# EXHIBIT 6

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

SER_2594

Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 43 of 1198

# EXHIBIT 7

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

SER_2595

**EXHIBIT 8**

00004185



From: **John Mark Suhy** jmsuhy@purethink.com
Subject: Updated to 3.2
Date: May 12, 2017 at 3:17 AM CDT
To: Philip Rathle philip@neotechnology.com

Congrats on product launch! I am running a very large import for IRS on it - just to see how it does. I will let you know how it does.

I will keep you updated.    Dave Fauth finally got access after all this time. We put him as a team member so you guys have more access.  We still haven't done a purchase order with Neo because of an issue with the partner agreement hopefully that will be resolved soon.   (Some parts of Treasury use  Neo4j Enterprise under AGPL which will violate their agreement once signed. You wouldn't see it via UdC because those pings never get out past firewalls.)

On another note - Treasury's laptops use a locked down version of Internet Explorer which won't let bolt run. (Websocket errors).  This is the case for gov agencies as well so be aware that 3.2's browser won't function in those cases.

In the next few weeks I can show you what I built for them if you are imterested in seeing it.


Talk to you later

John Mark

John Mark Suhy
PureThink
jmsuhy@purethink.com
703-862-7780
https://purethink.com

# EXHIBIT 9

SER_2598

000226
DocuSign Envelope ID: BDC97257-6BF7-41BF-9159-3F45E0252574

Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 47 of 1198



111 East Fifth Avenue.
San Mateo, CA 94401
(855) 636 - 4532

May 30, 2017

PureThink LLC
4202 Adrienne Dr.
Alexandria, VA 22309
Attn: John Mark Suhy Jr.


To Mr. Suhy:


Re: PureThink LLC's ("PureThink") breach of Neo4j Solution Partner Agreement with Neo Technology, Inc. ("Neo Technology") dated September 30, 2014 ("Agreement")

I am writing on behalf of Neo Technology. As we have discussed and as you know, PureThink is prohibited from using any Neo Technology open source products and from developing, marketing distributing or offering any services related to any Neo Technology open source products as set forth in Section 4.3 of the Agreement. From your own admissions in conversations with both John Broad and Jason Zagalsky, PureThink uses Neo Technology open source products and has distributed and performed services on, and continues to perform services on, Neo Technology open source products for the Internal Revenue Service. PureThink has also stated its intent to market and create a consulting business around Neo Technology open source products.

Thus, the purpose of this letter is to provide PureThink with a formal notification of PureThink's material breach of the Agreement under Section 7.2 of the Agreement. If PureThink fails to cure this breach within thirty (30) days of the date of this letter by both: (i) entering into an order form for the Internal Revenue Service's use of Neo4j software with Neo Technology in the form provided by Neo Technology and paying the applicable fees to Neo Technology, (ii) executing the proposed amendment to the Agreement and (iii) ceasing all use of all Neo Technology open source products and ceasing all marketing, distribution, development and services of or for any Neo Technology open source products to Neo Technology's satisfaction except as expressly set forth in the proposed amendment to the Agreement, then the Agreement is and will be automatically terminated. Such termination will be effective on the thirtieth day after the date of this letter (whether or not Neo Technology provides a subsequent termination notice to PureThink).

If the Agreement terminates as set forth herein, we would like to remind you of your continuing obligations under the Agreement as set forth in Section 7.4 of the Agreement.

Neo Technology further reserves all of its rights and remedies at law and equity under the Agreement and does not waive any rights under the Agreement.

If you have any questions regarding this letter, please contact John Broad at john.broad@neotechnology.com.

Sincerely,

Neo Technology, Inc.

By: LARS NORDWALL
_____

**EXHIBIT 10**

1707521347



**COMMONWEALTH OF VIRGINIA**
**STATE CORPORATION COMMISSION**

**Office of the Clerk**

June 23, 2017

JOHN MARK  SUHY JR
4202 ADRIENNE DR.
ALEXANDRIA, VA 22309

**RECEIPT**

RE: iGov Inc.

ID: 08198210

DCN: 17-06-23-5846

Dear Customer:

This is your receipt for $75.00 to cover the fee(s) for filing articles of incorporation with this office.

The effective date of the certificate of incorporation is June 23, 2017.

If you have any questions, please call (804) 371-9733 or toll-free in Virginia, 1-866-722-2551.

Sincerely,

*Joel H. Peck*

Joel H. Peck
Clerk of the Commission

CORPRCPT
NEWCD
CISECOM

P.O. Box 1197, Richmond, VA 23218-1197
Tyler Building, First Floor, 1300 East Main Street, Richmond, VA 23219-3630
Clerk's Office (804) 371-9733 or (866) 722-2551 (toll-free in Virginia) www.scc.virginia.gov/clk



Witness:
John Mark Suhy
**Exhibit 02**
10/22/2020  B Gerald

N4J_000156
**SER_2601**

1707521347

**COMMONWEALTH OF VIRGINIA**
**STATE CORPORATION COMMISSION**

AT RICHMOND, JUNE 23, 2017

The State Corporation Commission has found the accompanying articles submitted on behalf of

## iGov Inc.

to comply with the requirements of law, and confirms payment of all required fees.  Therefore, it is ORDERED that this

## CERTIFICATE OF INCORPORATION

be issued and admitted to record with the articles of incorporation in the Office of the Clerk of the Commission, effective June 23, 2017.

The corporation is granted the authority conferred on it by law in accordance with the articles, subject to the conditions and restrictions imposed by law.

STATE CORPORATION COMMISSION

By *Judith Williams Jagdmann*

Judith Williams Jagdmann
Commissioner

CORPACPT
CISECOM
17-06-23-5846

eFile                                                                    1707521347

## ARTICLES OF INCORPORATION
## OF
## IGOV INC.

The undersigned, pursuant to Chapter 9 of Title 13.1 of the Code of Virginia, states as follows:

1.    The name of the corporation is iGov Inc.

2.    The purpose for which the corporation is formed is to engage in any lawful business not required to be specifically set forth in these Articles for which a corporation may be incorporated under the Virginia Stock Corporation Act.

3.    The corporation is authorized to issue 1,500 shares of common stock.

4.    The name of the corporation's initial registered agent is John Mark  Suhy Jr.  The initial registered agent is an individual who is a resident of Virginia and an initial director of the corporation.

5.    The address of the corporation's initial registered office, which is identical to the business office of the initial registered agent, is 4202 Adrienne Dr., Alexandria, VA 22309.  The initial registered office is located in Fairfax County, Virginia.

6.    The following individual is to serve as the initial director of the corporation:

| Name | Address |
|---|---|
| John Mark  Suhy Jr | 4202 Adrienne Dr. |
|  | Alexandria, VA 22309 |

7.    The address of the corporation's principal office is 1902 Campus Commons Drive , Suite 101, Reston, VA 20191.

INCORPORATOR:

    /s/    CARRI BROWN   Date: June 23, 2017
           CARRI BROWN

# EXHIBIT 11

SER_2604

00004046



| | |
|---|---|
| **From:** | **John Mark Suhy** jmsuhy@purethink.com |
| **Subject:** | Re: Follow up |
| **Date:** | March 15, 2017 at 3:35 PM CDT |
| **To:** | John Broad john.broad@neotechnology.com |

If we wanted to not be a partner any more - it would be because of something such as the partnership not being  profitable, which could be resolved with some collaboration.   <mark>Having that 3 year lockout clause removed would mean we can have a fair and more equal discussion on the topic , if it ever came up.</mark>

It would simply make it more likely for Neo (or purchaser of Neo) to work with us if you consider us valuable.  The key is - you would have the ability to decide if we are worth it.

Leaving it in there provides a mechanism for you to keep in legal Limbo.  I could go into many scenarios where it could be used against a partner - such as raising partner fees to $100k and then canceling contract for cause when a partner could not pay it.

These are just examples of things I could see Oracle doing.

<mark>I would think your legal team understands that since everything is open source and that someone can start a new company to get around this would make this a simple negotiating point that does no harm dropping.</mark>

It does not effect non disclosures, etc.  If it was important I would think they would have made it apply to specific people or corporate officers to prevent them from simply starting another company to pass it.

Also - I could understand it if we were dealing with highly secretive technology or if we were more interconnected as partners - it just doesn't fit in the overall context of being a partner.

Anyway, that is my view.  I feel pretty strong about that one as having it removed means we don't have to worry about the other ones as much.  IE : makes it simple so we can finish and get this past us.

Talk to you later


On Wed, Mar 15, 2017, 10:21 John Broad <john.broad@neotechnology.com> wrote:
> Please propose what would be a reasonable and keep in mind that this would be waived if Neo (or any acquiring party) terminated WITHOUT cause.
>
> John
>
> On Wed, Mar 15, 2017 at 6:54 AM John Mark Suhy <jmsuhy@purethink.com> wrote:
>> I slept on it - I don't think this agreement is very balanced even with our additions. The 36 month statement needs to be out if you want this resolved - I am fine with the others.  I want to save you time and let you know I have no plans on being flexible on that as I have the others.
>>
>> If we ever decided we wanted to leave it would be because of lack of revenue , etc and you would have the opportunity to make us not want to leave some way.
>>
>> Other than that I think we look good..
>>
>> John Mark Suhy
>> PureThink
>> jmsuhy@purethink.com
>> 703.862.7780
>> https://purethink.com

**SER_2605**

00004047

On Mar 14, 2017 23:37, "John Broad" <john.broad@neotechnology.com> wrote:

Thank you, John Mark.  It was indeed good to speak today.

I sent instruction to Chiara this evening to draft language for 4.3.2 and make edits to 7.3 as we discussed this afternoon.

One potential motivation for the 36 month period: without the 36 month period, there is no deterrent if you decide that you want to break the agreement by deliberately operating in breach AND Neo decides to terminate with cause, which would protect the brand and assets of Neo Technology.

I do think that your suggestion, ensures balanced protection for both parties and intend to advocate for this internally.

That said, please do sleep on all of what we discussed.  I hope to have an amendment for you to review tomorrow.

Thank you again and take care.

John

On Tue, Mar 14, 2017 at 8:21 PM, John Mark Suhy <jmsuhy@purethink.com> wrote:

It was good talking with you today.  I will wait for you to come back with the items we spoke about.

I think we are on the right track.  The only item I am not sure about ,and need to sleep on, is the sentence around the 3-year lockout if we are no longer partners.   I am not sure if I would want any terms around that clause saying it is only applicable for termination by cause.   In other words - if we are not under a partner agreement anymore (for whatever reason) - that 3 year lockout clause would not be applicable.

Let me sleep on that but I wanted to let you know before you spend time one just on that specific item.

Have a good night.

John Mark Suhy
PureThink
jmsuhy@purethink.com
703-862-7780
https://purethink.com

--
John

# EXHIBIT 12

SER_2607

000245
DocuSign Envelope ID: E8425D45-93C1-4B78-8573-2EE51C23E03B

Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 56 of 1198



111 East Fifth Avenue
San Mateo, CA 94401
(855) 636 - 4532

July 11, 2017

PureThink LLC
Attn: John Mark Suhy Jr.
4202 Adrienne Dr.
Alexandria, VA 22309

To Mr. Suhy:

Re:     Termination of Neo4j Solution Partner Agreement between PureThink LLC ("PureThink") and Neo4j, Inc. formerly
        Neo Technology, Inc. ("Neo ") dated September 30, 2014 ("Agreement") due to PureThink's uncured breach

Neo hereby notifies PureThink that the Agreement is immediately terminated pursuant to Section 7.2 of the Agreement.
As you are aware, PureThink failed to timely cure its numerous material breaches set forth in our letter dated May 30,
2017 ("Breach Notice") or to otherwise respond to Neo's attempts to delay termination of the Agreement.

With the termination of the Agreement, Neo would like to remind PureThink of its continuing obligations as set forth in
Section 7.4 of the Agreement.   Critically, as PureThink's rights and licenses under the Agreement have terminated,
PureThink must immediately cease representing that it is an authorized partner or reseller of Neo, including without
limitation, ceasing all references to Government Edition of Neo4j, soliciting any current, former, or prospective End Users
(including Sandia National Lab, IRS, MPO and FBI), assisting in the procurement or renewal of any of Neo's products,
solutions, or services, or providing any procurement support, FISMA services, software development services, or training
services to Neo's existing or prospective End Users.

Additionally, as set forth in the Agreement, for thirty six (36) months after the termination of this Agreement, PureThink
must not develop, market, distribute or offer any services related to any Neo Technology Community Edition Products
(defined in the Agreement as an open source version of a Neo software product, which includes, but is not limited to, GPL
v3 licensed Neo4j Community Edition and AGPL v3 licensed Neo4j Enterprise Edition), derivative works of such products,
or any PureThink software code made to work with Neo Technology Community Edition Products (including, without
limitation, hosting services, training, technical support, configuration and customization services, etc.).

PureThink must also return all Confidential Information in its possession, custody, and control and cease using Neo's
trademarks, service marks, and other designations.  Neo therefore demands that PureThink immediately cease and desist
all uses of, and remove from PureThink's website(s) and marketing materials, Neo's trademarks and tradenames,
including, without limitation, Neo4j.  PureThink has no rights to use Neo's trademarks or tradenames and continued use of
such trademarks and/or tradenames will constitute trademark infringement.

Neo further reserves all of its rights and remedies at law and equity under the Agreement, including without limitation
invoking its audit rights under the Agreement.  Neo does not waive any rights under the Agreement, and this termination is
not intended to and does not affect any prior or other termination rights or notices provided under the Agreement.

If you have any questions regarding this letter, please contact John Broad at john.broad@neotechnology.com.

Sincerely,

DocuSigned by:

*LARS NORDWALL*

5E9692354E8643E...

Neo4j, Inc.
By:_____     LARS NORDWALL

SER_2608

# EXHIBIT 13

SER_2609

1  Adron W. Beene SB# 129040
2  Adron G. Beene SB# 298088
   Attorney at Law
3  1754 Technology Drive, Suite 228
   San Jose, CA 95110
4  Tel: (408) 392-9233
   Fax: (866) 329-0453
5  adron@adronlaw.com
6
7  Attorneys for defendants and Counter
   Claimant:
8  PURETHINK LLC, a Delaware limited
   liability company, IGOV INC., a Virginia
9  corporation, and JOHN MARK SUHY
10
11              UNITED STATES DISTRICT COURT
12            NORTHERN DISTRICT OF CALIFORNIA

13  NEO4J, INC., a Delaware corporation,          CASE NO.  5:18-cv-07182-EJD
    NEO4J SWEDEN AB
14                                                **DEFENDANT IGOV INC.'S FOURTH
15                 Plaintiffs,                    AMENDED RESPONSE PLAINTIFF
                                                  NEO4J SWEDEN AB'S REQUEST FOR
16         v.                                     ADMISSION, SET ONE TO DEFENDANT
                                                  IGOV INC.**
17  PURETHINK LLC, a Delaware limited
    liability company, IGOV INC., a Virginia
18  corporation, and JOHN MARK SUHY, an
    individual,
19
                   Defendants.
20
21  AND RELATED COUNTERCLAIMS.
22
23       **PROPOUNDING PARTY: Plaintiff and Counter-Defendant Neo4j Sweden AB**
24       **RESPONDING PARTY:    Defendant and Counterclaimant iGov Inc.**
25       **DISCOVERY:           Request for Admissions**
26       **SET NO.:             One**
27
28

1        IGOV INC. responds to Plaintiff and Counter-Defendant Neo4j Sweden AB's Requests

2  for Admission as follows:

3

4                **RESPONSE TO REQUESTS FOR ADMISSION**

5  **REQUEST FOR ADMISSION NO. 1:**

6       *Admit that iGov Inc. does not have a license from Neo4j, Inc. to use U.S. Trademark*

7  *Registration No. 4,784,280 for the word mark "NEO4J" (the "NEO4J® Mark").*

8       **Response:**

9       DENIED.

10

11  **REQUEST FOR ADMISSION NO. 2:**

12       *Admit that attached hereto as **Exhibit A** is a true and correct copy of the Neo4j Solution*

13  *Partner Agreement entered into between Neo Technology, Inc. (now Neo4j, Inc.) and PureThink*

14  *LLC.*

15       **Response:**

16       Admit.

17

18  **REQUEST FOR ADMISSION NO. 3:**

19       *Admit that iGov Inc. was incorporated to avoid the restrictions imposed on PureThink*

20  *LLC by the Neo4j Solution Partner Agreement attached hereto as **Exhibit A**.*

21       **Response:**

22       DENIED.

23

24  **REQUEST FOR ADMISSION NO. 4:**

25       *Admit that **Exhibit B** attached hereto is a printout of iGov Inc.'s webpage*

26  *https://igovsol.com/neo4j.html as it existed on October 2, 2019.*

27       **Response:**

28       Admitted.

- 2 -

1

2   **REQUEST FOR ADMISSION NO. 5:**

3        *Admit that iGov Inc. continued to use the NEO4J® Mark in its web address*

4   *https://igovsol.com/neo4j.html as of August 14, 2020.*

5        **Response:**

6        Denied. Responding party used the Neo4J product name for open source version of the

7   Neo4J licensed by Neo4J Sweden and the Neo4J product name and Neo4J, Inc. company name

8   for comparative advertisement. Neo4J®, after a reasonable search, does not appear on the graph

9   packages page and that is shown as of the date of this response.

10       Subject to the foregoing response, Responding Party admits that sometime after July 15,

11  2020, iGov, Inc. removed some references to "Neo4j" and replaced them with "ONgDB" and

12  removed the "neo4j@igovsol.com" email link and replaced it with  info@igovsol.com and

13  Admits that the website at the URL https://www.igovsol.com/neo4j.html existed as of July 15,

14  2020.

15

16  **REQUEST FOR ADMISSION NO. 6:**

17       *Admit that Neo4j, Inc. did not authorize iGov Inc.'s use of the NEO4J® Mark in iGov*

18  *Inc.'s web address https://igovsol.com/neo4j.html.*

19       **Response:**

20       DENIED.

21

22  **REQUEST FOR ADMISSION NO. 7:**

23       *Admit that iGov Inc. controls the email address neo4j@igovsol.com.*

24       ADMITTED.

25

26  **REQUEST FOR ADMISSION NO. 8:**

27       *Admit that when user that clicks on "Request Procurement Document Package" link in*

28  ***Exhibit B*** *creates an email with neo4j@igovsol.com as the recipient.*

- 3 -

IGOV INC'S FOURTH AMENDED RESPONSE TO NEO4J SWEDEN AB FIRST SET OF RFA

1  **Response:**

2      Admitted that prior to August 2020, when a user clicked on "Request Procurement

3  Document Package," an email was created with neo4j@igovsol.com as the recipient.  Denied as

4  the current website provides the email info@igovsol.com when the "Request Procurement

5  Document Package" link is clicked.

6

7

8  **REQUEST FOR ADMISSION NO. 9:**

9      *Admit that as of August 14, 2020, a user that clicks on "Request Procurement Document*

10  *Package" link located on https://igovsol.com/neo4j.html creates an email with*

11  *neo4j@igovsol.com as the recipient.*

12      **Response:**

13      Admit that as the website existed on July 5th, 2019, when a user clicked on "Request

14  Procurement Document Package" link located on https://igovsol.com/neo4j.html,  an email was

15  created with neo4j@igovsol.com as the recipient.  After a reasonable inquiry, no information is

16  readily obtainable to verify if this statement was true for August 14th, 2020 and on that basis

17  Responding Party denies.

18

19  **REQUEST FOR ADMISSION NO. 10:**

20      *Admit that **Exhibit C** attached hereto is a printout of Gov Inc.'s webpage*

21  *https://igovsol.com/downloads.html as it existed on October 2, 2019.*

22      **Response:**

23      Admitted.

24

25  **REQUEST FOR ADMISSION NO. 11:**

26      *Admit that as of August 14, 2020, iGov Inc.'s webpage located*

27  *https://igovsol.com/downloads.html stated "If you have a question for us, please email us at*

28  *neo4j@igovsol.com."*

- 4 -

IGOV INC'S FOURTH AMENDED RESPONSE TO NEO4J SWEDEN AB FIRST SET OF RFA

1  **Response:**

2      Admit that as of July 5th, 2019, iGov Inc.'s webpage located

3  https://igovsol.com/downloads.html stated "If you have a question for us, please email us at

4  neo4j@igovsol.com." through July or August 2020. After a reasonable inquiry, no information is

5  readily obtainable to verify if this statement was true for August 14th, 2020 and on that basis

6  Responding Party denies.

7

8  **REQUEST FOR ADMISSION NO. 12:**

9      *Admit that iGov Inc. uses the NEO4J® Mark in its email address* <u>*neo4j@igovsol.com.*</u>

10  **Response:**

11      DENIED.

12

13  **REQUEST FOR ADMISSION NO. 13:**

14      *Admit that Neo4j, Inc. did not authorize iGov Inc.'s use of the NEO4J® Mark in iGov*

15  *Inc.'s email address "neo4j@igovsol.com" on iGov Inc.'s webpage*

16  <u>*https://igovsol.com/downloads.html*</u>.

17  **Response:**

18      DENIED.

19

20  **REQUEST FOR ADMISSION NO. 14:**

21      *Admit that as of August 14, 2020, the "Neo4j Enterprise Open Source Frequently Asked*

22  *Questions" section on iGov Inc.'s webpage located "https://igovsol.com/downloads.html"*

23  *contains a hyperlink titled "Download Neo4j Enterprise" that redirects consumers to download*

24  *links for ONgDB.*

25  **Response:**

26      Admit that as of July 5, 2019, the "Neo4j Enterprise Open Source Frequently Asked

27  Questions" section on iGov Inc.'s webpage located https://igovsol.com/downloads.html contained

28  a hyperlink titled "Download Neo4j Enterprise" that redirects consumers to download links for

- 5 -

1   ONgDB. After a reasonable inquiry, no information is readily obtainable to verify if this

2   statement was true for August 14th, 2020 and on that basis Responding Party denies.

3

4   **REQUEST FOR ADMISSION NO. 15:**

5       *Admit that **Exhibit D** is a printout of Neo4j, Inc.'s Trademark Guidelines as they existed*

6   *on September 26, 2019.*

7       **Response:**

8       Admitted.

9

10  **REQUEST FOR ADMISSION NO. 16:**

11      *Admit that Neo4j, Inc.'s Trademark Guidelines in **Exhibit D** were attached as an exhibit*

12  *to Neo4j, Inc.'s Second Amended Complaint.*

13      **Response:**

14      ADMITTED.

15  **REQUEST FOR ADMISSION NO. 17:**

16      *Admit that you were aware of Neo4j, Inc.'s Trademark Guidelines in **Exhibit D** as of*

17  *December 9, 2019 when you filed your answer to Neo4j, Inc.'s Second Amended Complaint.*

18      **Response:**

19      Responding Party admits that on December 9, 2019, when it filed the answer to the

20  Neo4J, Inc. Second Amended Complaint, it was aware of Neo4J, Inc's Trademark Guidelines.

21

22  **REQUEST FOR ADMISSION NO. 18:**

23      *Admit that iGov Inc.'s use of "Neo4j Enterprise" in **Exhibit B** violates Neo4j, Inc.'s*

24  *Trademark Guidelines attached hereto as **Exhibit D**.*

25      **Response:**

26      DENIED.

27

28

- 6 -

IGOV INC'S FOURTH AMENDED RESPONSE TO NEO4J SWEDEN AB FIRST SET OF RFA

**REQUEST FOR ADMISSION NO. 19:**

*Admit that iGov Inc.'s use of "Neo4j Enterprise open source licensed distributions" in* **Exhibit B** *violates Neo4j, Inc.'s Trademark Guidelines attached hereto as* **Exhibit D.**

**Response:**

DENIED.

**REQUEST FOR ADMISSION NO. 20:**

*Admit that iGov Inc.'s use of the NEO4J® Mark in* **Exhibit B** *was not authorized by Neo4j, Inc.*

**Response:**

DENIED.

**REQUEST FOR ADMISSION NO. 21:**

*Admit that iGov Inc.'s use of "Neo4j Enterprise" in* **Exhibit C** *violates Neo4j, Inc.'s Trademark Guidelines attached hereto as* **Exhibit D.**

**Response:**

DENIED.

**REQUEST FOR ADMISSION NO. 22:**

*Admit that iGov Inc.'s use of "Neo4j Enterprise" in* **Exhibit C** *without proper trademark notices violates Neo4j Inc.'s Trademark Guidelines attached hereto as* **Exhibit D**.

**Response:**

DENIED.

**REQUEST FOR ADMISSION NO. 23:**

*Admit that iGov Inc.'s use of "Neo4j Enterprise open source licensed distributions" in* **Exhibit C** *without proper trademark notices violates Neo4j Inc.'s Trademark Guidelines attached hereto as* **Exhibit D**.

- 7 -

1    **Response:**

2    DENIED.

3

4    **REQUEST FOR ADMISSION NO. 24:**

5    *Admit that iGov Inc.'s use of the NEO4J® Mark in **Exhibit C** was not authorized by*

6    *Neo4j, Inc.*

7    **Response:**

8    DENIED.

9

10   **REQUEST FOR ADMISSION NO. 25:**

11   Admit that attached hereto as **Exhibit E** is a printout of the webpage

12   https://neo4j.com/trademark-policy/ captured by the Internet Archive on July 10, 2017.

13   **Response:**

14   ADMITTED.

15   **REQUEST FOR ADMISSION NO. 26:**

16   *Admit that the Trademark Policy in **Exhibit E** was in effect on January 13, 2018.*

17   **Response:**

18   Responding Party lacks information and is therefore is unable to verify Neo4j, Inc.'s

19   Trademark Guidelines as of January 13, 2018 and on that basis DENIES.

20

21   **REQUEST FOR ADMISSION NO. 27:**

22   *Admit that the Trademark Policy in **Exhibit E** was publicly available at the web address*

23   *https://neo4j.com/trademark-policy/ on January 13, 2018.*

24

25   **Response:**

26   Responding Party lacks information and is therefore is unable to verify the Trademark

27   Policy as of January 13, 2018 and on that basis DENIES.

28

- 8 -

IGOV INC'S FOURTH AMENDED RESPONSE TO NEO4J SWEDEN AB FIRST SET OF RFA

**REQUEST FOR ADMISSION NO. 28:**

*Admit that **Exhibit F** attached hereto is a printout of iGov Inc.'s "about" webpage as it existed on January 13, 2018, which was produced in this litigation by your counsel in html format on July 1, 2019.*

**Response:**

ADMITTED.

**REQUEST FOR ADMISSION NO. 29:**

*Admit that iGov Inc.'s use of "Government Package for Neo4j" in **Exhibit F** violated Neo4j, Inc.'s Trademark Policy that was in effect on January 13, 2018.*

**Response:**

DENIED.

**REQUEST FOR ADMISSION NO. 30:**

*Admit that iGov Inc.'s use of "Government Package for Neo4j" in **Exhibit F** violated Neo4j, Inc.'s Trademark Policy set forth in **Exhibit E**.*

**Response:**

DENIED.

**REQUEST FOR ADMISSION NO. 31:**

Admit that iGov Inc.'s use of "Government Package for Neo4j" in **Exhibit F** without proper trademark notices violates Neo4j Inc.'s Trademark Policy attached hereto as **Exhibit E**.

**Response:**

DENIED.

**REQUEST FOR ADMISSION NO. 32:**

Admit that iGov Inc.'s use of the NEO4J® Mark iGov Inc.'s "about" webpage as it existed on January 13, 2018 was not authorized by Neo4j, Inc.

- 9 -

SER_2618

1    **Response:**

2        DENIED.

3

4    **REQUEST FOR ADMISSION NO. 33:**

5        *Admit that* **Exhibit G** *attached hereto is a printout of iGov Inc.'s "downloads" webpage*

6    *as it existed on January 13, 2018, which was produced in this litigation by your counsel in html*

7    *format on July 1, 2019.*

8        **Response:**

9        ADMITTED.

10

11   **REQUEST FOR ADMISSION NO. 34:**

12       *Admit that* **Exhibit G** *contains the statement "If you have a question for us, please email*

13   *us at neo4j@igovsol.com."*

14       **Response:**

15       ADMITTED.

16

17   **REQUEST FOR ADMISSION NO. 35:**

18       *Admit that Neo4j, Inc. did not authorize iGov Inc.'s use of the NEO4J® Mark in iGov*

19   *Inc.'s email address "neo4j@igovsol.com" as reflected in* **Exhibit G.**

20       **Response:**

21       DENIED.

22

23   **REQUEST FOR ADMISSION NO. 36:**

24       *Admit that iGov Inc.'s use of the NEO4J® Mark on iGov Inc.'s "downloads" webpage as*

25   *it existed on January 13, 2018 was not authorized by Neo4j, Inc.*

26       **Response:**

27       DENIED.

28

- 10 -

IGOV INC'S FOURTH AMENDED RESPONSE TO NEO4J SWEDEN AB FIRST SET OF RFA

**REQUEST FOR ADMISSION NO. 37:**

*Admit that **Exhibit H** attached hereto is a printout of iGov Inc.'s "neo4j" webpage as it existed on January 13, 2018, which was produced in this litigation by your counsel in html format on July 1, 2019.*

**Response:**

ADMITTED.

**REQUEST FOR ADMISSION NO. 38:**

*Admit that iGov Inc.'s use of "Government Development Packages for Neo4j" in **Exhibit H** violated Neo4j, Inc.'s Trademark Policy set forth in **Exhibit E**.*

**Response:**

DENIED.

**REQUEST FOR ADMISSION NO. 39:**

*Admit that iGov Inc.'s use of the NEO4J® Mark in **Exhibit H** was not authorized by Neo4j, Inc.*

**Response:**

DENIED.

**REQUEST FOR ADMISSION NO. 40:**

*Admit that iGov Inc. controls the content on website located at www.graphstack.io.*

**Response:**

ADMITTED.

**REQUEST FOR ADMISSION NO. 41:**

Admit that **Exhibit I** attached hereto is a true and correct printout of the webpage located at www.graphstack.io as it existed on October 2, 2019.

**Response:**

- 11 -

1     Admit that Exhibit I is a true and correct printout of the webpage located at

2  www.graphstack.io as it existed on September 13, 2019. After a reasonable inquiry, no

3  information is readily obtainable to verify if Exhibit I is true and correct as the webpage existed

4  on October 2, 2019.

5

6  **REQUEST FOR ADMISSION NO. 42:**

7     Admit that the www.graphstack.io webpage attached hereto as **Exhibit I** contains a

8  hyperlink within "Neo4j's Release Notes" that redirect users to https://neo4j.com/release-

9  notes/neo4j-3-5-3/.

10     **Response:**

11     Admitted.

12

13  **REQUEST FOR ADMISSION NO. 43:**

14     Admit that the www.graphstack.io webpage attached hereto as **Exhibit I** contains a

15  hyperlink within "Neo4j's Whats New Page" that redirect users to https://neo4j.com/whats-new-

16  in-neo4j/.

17     **Response:**

18     Admitted.

19

20  **REQUEST FOR ADMISSION NO. 44:**

21     Admit that **Exhibit J** is a printout of Neo4j, Inc.'s Trademark Guidelines as they existed

22  on August 13, 2020.

23     **Response:**

24     Admitted that Exhibit J is a true and correct printout of Neo4j, Inc.'s Trademark

25  Guidelines as it existed on August 5th, 2020. After a reasonable inquiry, no information is readily

26  obtainable to verify if Exhibit J is true and correct as of August 13, 2020, and on that basis

27  Responding party denies.

28

- 12 -

**REQUEST FOR ADMISSION NO. 45:**

Admit that Neo4j, Inc.'s Trademark Guidelines in **Exhibit J** have been in effect since April 3, 2019.

**Response:**

Admit that Neo4j, Inc.'s Trademark Guidelines in Exhibit J were posted since April 14th, 2020. After a reasonable inquiry, no information is readily obtainable to verify if Exhibit J were posted since April 3, 2019, and on that basis Responding party denies.

Dated:  October 29, 2020

/s/ Adron G. Beene
Adron W. Beene Sb# 129040
Adron G. Beene Sb# 298088
Attorney At Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Attorney For Defendants and Counter Claimant PURETHINK LLC, a Delaware Limited Liability Company, IGOV INC., a Virginia Corporation, and JOHN MARK SUHY

- 13 -

SER_2622

1

### Verification

2

3
I, John Mark Suhy, am a defendant, and an officer for defendants Purethink LLC and IGOV Inc. in the above cause of action. I have read the following:

4
**1. DEFENDANT IGOV INC.'S FOURTH AMENDED RESPONSE TO PLAINTIFF NEO4J SWEDEN AB'S REQUEST FOR ADMISSION, SET ONE TO DEFENDANT IGOV INC.**

5

6

7

8

9
I am familiar with the contents of the above.

10

11
I declare under penalty of perjury under the laws of the United Stated of America that the

12
foregoing responses are true and correct, except as to those matters which are therein stated to be

13
on information or belief, and as to those matters, I believe them to be true.

14

15

16

17
Signed in Alexandria, Virginia, on October 29, 2020

John Mark Suhy

18

19

20

21

22

23

24

25

26

27

28

VERIFICATION

# EXHIBIT 14

SEP **NOV** DEC

◀ **01** ▶

2016 **2017** 2019

119 captures
14 Dec 2001 – 8 Jun 2019

About this capture

# Neo4j Government Edition News

If your agency was planning on procuring Neo4j Government Edition, then please checkout iGov Inc's new **Government Package** for Neo4j.

PureThink, the company who created, managed and sold Neo4j Government Edition to all US Federal agencies has ceased their partnership with Neo Technology and Neo4j Government Edition has been retired.

The principle behind PureThink and the Government Package has created a new corporate entity called **iGov Inc**, which is not a Neo4j Solution Partner. Because iGov Inc is not a solution partner, it can offer packages at great cost savings to US Government Agencies as it has no restrictions on working with Neo4j Enterprise open source licenses!

iGov Inc and the new **Government Package** for Neo4j allows agencies to spend their money on developing innovative solutions around Neo4j, not paying for unnecessary production support before they even have a solution built that could be in production.

iGov Inc's new **Government Package** for Neo4j can be added to any Neo4j instance making it a "Government Edition". By default, all Government Packages for Neo4j now comes with Neo4j Enterprise included under it's open source license!

Learn More about iGov Inc and it's new Government Package for Neo4j

## **WHO** WE ARE

PureThink is a software development company established in 2002 and located in Reston, Va. It is part of the Dulles High Tech corridor and Washington, DC Metro area.

## DISTINGUISHERS



Witness:
John Mark Suhy
**Exhibit 04**
10/22/2020  B Gerald

**SER_2625**

PureThink     00020016

- Solid past performance in Federal, DOD, and commercial spaces.
- Our management team is comprised of highly experienced technology professionals.
- No off-shoring : Because we focus on the US Government exclusively, our resources are all located in the USA and have the ability to be cleared or already hold clearances.
- Extensive domain knowledge, adaptability, and experience in emerging technologies, methodologies and processes.
- Security focused. All of our software development professionals must go through security training. We were 2011 RSA speakers regarding continuous monitoring and the cloud.
- Our company is well established with over 12 years in business.

## General Contact

(703) 348-3968

☐ info@purethink.com

☐ 1902 Campus Commons Drive Suite 101 Reston, VA 20191

## Customer Support

Toll Free: **+1 (855) 979-7771**

☐ support@purethink.com

See our support page for more information.

# PHILOSOPHY

To help you succeed, we believe in working closely and cooperatively with our clients. Our goal is to ensure everyone on the same page regarding project status, methods and tasks. Our approach is to develop software according to an Agile methodology which means we emphasize people and interaction rather than complicated processes and endless documentation.

# RESULTS

Our mission is to bring the greatest value to our clients by leveraging our considerable depth of resources and experience. We align our approach to the specific business drivers of each business we work with whom we tailor

00020016

SER_2626

PureThink    00020017

solutions to best suit different cultural environments, industries, and market conditions. We focus on business strategy implementation, not business strategy development.

## DUNS & CAGE Information

- DUNS: 147591627
- CAGE Code: 5KLU9

## NAICS Codes

- 511210 Software Reseller
- 541511 Software Development
- 541512 Systems Integration / CAD / CAM / LAN
- 541519 Software Installation / Disaster Recover
- 611420 Software Training
- 541330 Engineering Services

## SIC Codes

- 5045 Computers and Computer Peripheral Equipment and Software
- 7371 Computer Programming Services
- 7372 Prepackaged Software
- 7373 Computer Integrated Systems Design
- 7378 Computer Maintenance and Repair
- 7379 Computer Related Services, Not Elsewhere Classified

## About PureThink

PureThink is a software development company established in 2002 and located in Reston, Va. We focus on bringing innovative technologies to US Federal and State government agencies.

CONTACT US

**(703) 348-3968**

info@purethink.com

1902 Campus Commons Drive Suite 101 Reston, VA 20191

SER_2627

PureThink    00020018



© 2017 PureThink Corp All Rights Reserved.

00020018

SER_2628



PureThink    00020019

Case 5:18-cv-07182-EJD    Document 98-1    Filed 12/11/20    Page 77 of 1198

33 captures
10 Feb 2003 – 19 Aug 2018

OCT  AUG  SEP
19
2016  2018  201

About this capture

# Bringing  technologies to the government.

PureThink focuses on bringing innovative, emerging technologies to the US Government.



Join Our Team!

## WHO WE ARE

PureThink is a software development company established in 2002 and located in Reston, Va. It is part of the Dulles High Tech corridor and Washington, DC Metro area.

## DISTINGUISHERS

- Solid past performance in Federal, DOD, and commercial spaces.
- Our management team is comprised of highly experienced technology professionals.
- No off-shoring : Because we focus on the US Government exclusivly, our resources are all located in the USA and have the ability to be cleared or already hold clearances.
- Extensive domain knowledge, adaptability, and experience in emerging technologies, methodologies and processes.
- Security focused. All of our software development professionals must go through security training. We were 2011 RSA speakers regarding continuous monitoring and the cloud.
- Our company is well established with over 12 years in business.

General Contact

(703) 348-3968

info@purethink.com

1902 Campus Commons Drive Suite 101 Reston, VA 20191

00020019

SER_2629

PureThink     00020020

Customer Support

Toll Free: **+1 (855) 979-7771**

☐ support@purethink.com

See our support page for more information.

# PHILOSOPHY

To help you succeed, we believe in working closely and cooperatively with our clients. Our goal is to ensure everyone on the same page regarding project status, methods and tasks. Our approach is to develop software according to an Agile methodology which means we emphasize people and interaction rather than complicated processes and endless documentation.

# RESULTS

Our mission is to bring the greatest value to our clients by leveraging our considerable depth of resources and experience. We align our approach to the specific business drivers of each business we work with whom we tailor solutions to best suit different cultural environments, industries, and market conditions. We focus on business strategy implementation, not business strategy development.

## DUNS & CAGE Information

- DUNS: 147591627
- CAGE Code: 5KLU9

## NAICS Codes

- 511210 Software Reseller
- 541511 Software Development
- 541512 Systems Integration / CAD / CAM / LAN
- 541519 Software Installation / Disaster Recover
- 611420 Software Training
- 541330 Engineering Services

SER_2630

PureThink    00020021

## SIC Codes

- 5045 Computers and Computer Peripheral Equipment and Software
- 7371 Computer Programming Services
- 7372 Prepackaged Software
- 7373 Computer Integrated Systems Design
- 7378 Computer Maintenance and Repair
- 7379 Computer Related Services, Not Elsewhere Classified

## About PureThink

PureThink is a software development company established in 2002 and located in Reston, Va. We focus on bringing innovative technologies to US Federal and State government agencies.

CONTACT US

**(703) 348-3968**

☐ info@purethink.com

☐ 1902 Campus Commons Drive Suite 101 Reston, VA 20191

**PURE**THINK

© 2018 PureThink Corp All Rights Reserved.

[Neo4j] is a trademark of Neo Technology, Inc.

00020021

**SER_2631**

# EXHIBIT 15

SER_2632

iGov : Innovative Government Solutions





Witness:
John Mark Suhy
**Exhibit 03**
10/22/2020  B Gerald

# Bringing  open source technologies to the government.

iGov focuses on building innovative opening source based solutions for the US Government.

## WHO WE ARE

iGov is a Virginia software development company located in Reston, Va. iGov Inc is located in the Dulles High Tech corridor and Washington, DC Metro area.

The principle behind PureThink and the developer of the retired Neo4j Government Edition has created iGov Inc, which is not a Neo4j Solution Partner. Every US Federal government procurement of Neo4j was through PureThink and supported by our team. Now we can offer packages that allow US Federal agencies to gain all the benefits they had from our team's experience and past performance with the ability to apply it to Neo4j Enterprise using its free open source license!

What sets iGov Inc apart, is the past performance and experience our team brings to the table as well as the ability to develop solutions and support Neo4j Enterprise open source licenses. You will find this is a rare combination especially considering the fact that we can now support Neo4j Enterprise open source licenses.

Neo4j Government Edition has been retired by Neo4j Inc..

PureThink, the company who created, managed and sold Neo4j Government Edition to all US Federal agencies has ceased their partnership with Neo4j Inc.. The principle behind PureThink and the Government Package has created a new corporate entity called **iGov Inc**, which is not a Neo4j Solution Partner. Because we are not a solution partner, we are not under the extremely restrictive terms dealing with services around Neo4j open source licenses which applies to partners. With iGov Inc, we can offer packages that allow US Federal agencies to gain all the benefits they have from our team's experience and past performance we've gained, but now with the ability to apply it to Neo4j Enterprise open source licenses! Before now, the only option for development or non-critical system support was the extremely costly commercial production support packages. Things have changed, and US Federal agencies are going to benefit from huge savings related to

SER_2633

Neo4j and Neo4j solutions.

iGov Inc and the Government Package for Neo4j allows agencies to spend their money on developing innovative solutions around Neo4j, not paying for unnecessary production support before they even have a solution built that could be in production.

The new **Government Package for Neo4j** can be added to any Neo4j instance making it a "Government Edition".

By default, **all Government Packages for Neo4j now comes with Neo4j Enterprise** included under its open source license!

Once ready for production, agencies can choose to have either iGov Inc, a Neo4j Solution partner of their choice, or their own team handle production support. This allows agencies to decide what best fits their production and system needs.

iGov Inc and its partners offered production support packages that cover complex big data architectures that usually make up a Neo4j solution not just Neo4j itself. Ex: ElasticSearch, Apache Kafka, and more.

Please contact us for past performance references, and current Federal agency customer references to find out more about our team and offerings.

Procurement offices can reach out to us for necessary paperwork, documentation, and more needed to make smart procurement decisions. It's simple, if your agency is in development, then procuring a Neo4j Enterprise commercial package is likely not in the best interest of your agency.

Please contact neo4j@igovsol.com for more information.

# DISTINGUISHERS

- Our team has solid Neo4j solutions development and support past performance in Federal government.
- Our management team is comprised of highly experienced technology professionals.
- No off-shoring : Because we focus on the US Government exclusively, our resources are all located in the USA and have the ability to be cleared or already hold clearances.
- Extensive domain knowledge, adaptability, and experience in emerging technologies, methodologies and processes.

file:///litdata01ps/...urethink/Productions/2019-07-01 IGOV-PureThink/Defendant's use of Neo4j trademark/igov-01-13-2018-html/about.html[8/12/2020 5:12:20 PM]

SER_2634

iGov : Innovative Government Solutions

## General Contact

(703) 862-7780

info@igovsol.com

1902 Campus Commons Drive Suite 101 Reston, VA 20191

## Customer Support

Toll Free: **+1 (855) 979-7771**

support@igovsol.com

See our support page for more information.

# PHILOSOPHY

To help you succeed, we believe in working closely and cooperatively with our clients. Our goal is to ensure everyone on the same page regarding project status, methods and tasks. Our approach is to develop software according to an Agile methodology which means we emphasize people and interaction rather than complicated processes and endless documentation.

# RESULTS

Our mission is to bring the greatest value to our clients by leveraging our considerable depth of resources and experience. We align our approach to the specific business drivers of each business we work with whom we tailor solutions to best suit different cultural environments, industries, and market conditions. We focus on business strategy implementation, not business strategy development.

## DUNS & CAGE Information Given upon request.

## NAICS Codes

- 511210 Software Reseller

SER_2635

iGov : Innovative Government Solutions

- 541511 Software Development
- 541512 Systems Integration / CAD / CAM / LAN
- 541519 Software Installation / Disaster Recover
- 611420 Software Training
- 541330 Engineering Services

## SIC Codes

- 5045 Computers and Computer Peripheral Equipment and Software
- 7371 Computer Programming Services
- 7372 Prepackaged Software
- 7373 Computer Integrated Systems Design
- 7378 Computer Maintenance and Repair
- 7379 Computer Related Services, Not Elsewhere Classified

## About iGov

iGov Inc. is a software development company located in Reston, Va.

We focus on building innovative solutions for US Government agencies using open-source technologies.

CONTACT US

**(703) 862-7780**

info@igovsol.com

1902 Campus Commons Drive Suite 101 Reston, VA 20191



© 2019 iGov Inc. All Rights Reserved.

SER_2636

**EXHIBIT 16**

SER_2637

iGov : Innovative Government Solutions



# Downloads

Neo4j Enterprise Commercial Prices Blog Post

Neo4j open source FAQs

iGov Inc is now the only US Federal contractor who compiles enterprise packages directly from the official Neo4j source code. These packages are open source and have none of the restrictions the commercial version have. To get an idea of just how much you are saving by using Neo4j Enterprise under the open source license - check out this blog post.

As of November 2017, Neo4j Inc removed the free open source Neo4j Enterprise downloads from it's distribution site. We stepped up and started compiling the package and making the binaries available for all. These binaries are under the standard AGPLv3 license.

See our blog post to learn more

iGov Inc has no relationship with Neo4j Inc. Since Neo4j Inc has removed their open source binaries from their download sites, we have to compile the packages below. All the downloads on this page are compiled directly from the official neo4j source code repositories located at https://github.com/neo4j. There are no modifications to the code.

iGov Inc and it's founders are US citizens focusing solely on US Federal government consulting and professional services . Please contact us for past performance references or if you would like to be connected with the US Federal agencies currently using the open source packaged Neo4j Enterprise binaries.

The packages on this page are compiled by iGov Inc using the official Neo4j source code repositories located at https://github.com/neo4j. We do not modify the source code.

If you are a federal client and want to download a package that has the FISMA framework modules bundled in which turn on intra-cluster encryption and provide other security controls, then please login to the support portal to find those download links or email support@igovsol.com.

We do not provide Neo4j Community Edition binaries simply because it makes no sense for federal agencies to use them when they have the ability to use Neo4j Enterprise for free under it's AGPLv3 open source license.

This download page is kept up to date with the current Neo4j versions for each branch. If you would like an older version of Neo4j Enterprise, simply email us and we will package it and make it available to the public.

The packages below were compiled by iGov Inc from official Neo4j source code repositories. If you would like us to compile a specific version of Neo4j for you (ex: 3.2.1), please contact us.

Neo4j open source FAQs

SER_2638

270 of 300), Page 270 of 300

Case: 24-5538, 02/24/2025, DktEntry: 52.11, Page 270 of 300

iGov : Innovative Government Solutions

Case 5:18-cv-07182-EJD    Document 98-1    Filed 12/11/20    Page 87 of 1198

# NEW!! Newest 3.3.x Version: (Currently 3.3.1)

Compiled from Neo4j Git
Tag 3.3.1 (Neo4j Enterprise
3.3.1)

[Unix/Linux/OSX Download]   [Windows Download]

# Newest 3.2.x Version: (Currently 3.2.8)

Compiled from Neo4j Git
Tag 3.2.8 (Neo4j Enterprise
3.2.8)

[Unix/Linux/OSX Download]   [Windows Download]

# Newest 3.1.x Version (3.1.7)

Compiled from Neo4j Git
Tag 3.1.7 (Neo4j Enterprise
3.1.7)

[Unix/Linux/OSX Download]   [Windows Download]

# Neo4j Enterprise Open Source **F**requently **A**sked **Q**uestions

We've gathered together questions we receive from agencies and integrators regarding Neo4j Enterprise Open Source licenses. If you have a question for us, please email us at neo4j@igovsol.com.

Is Neo4j Enterprise Really Open Source?    ▼

YES, Neo4j Enterprise is open source under the AGPLv3 open source license created by the Free software

...se use?    ▶

file:///litdata01ps/...2 NEO4J v. Purethink/Productions/2019-07-01 IGOV-PureThink/Defendant's use of Neo4j trademark/igov-01-13-2018-html/downloads.html[8/12/2020 5:18:32 PM]

**SER_2639**

iGov : Innovative Government Solutions

Neo4j Enterprise can be used for free under the Free Software Foundation's GNU AFFERO GENERAL PUB...

rise binaries?

Neo4j removed the open source binaries they compiled from their distribution sites so you can no longer get ...

?

You can get all the Neo4j Enterprise source code at the official Neo4j GitHub Repositories.

o worry about them?

There simply are none that we've ever run into.

production?

**Yes, of course you can.** It's 100% free and open source. The standard AGPLv3 open source license simply ...

rictions above the AGPLv3 open source license?

No, Neo4j Enterprise is released only under the standard AGPLv3 open source license that is managed by th...

PLv3 and Neo4j Enterprise Trial?

Read the Neo4j Enterprise Trial license agreement they ask you to agree to before downloading and you will ...

# Neo4j Enterprise Commercial & Open Source
## Comparisons

There are no physical differences between Neo4j Enterprise commercial and AGPL open source licenses!
Neo4j Enterprise open source licenses have no other limitations beyond the standard GNU AGPL open source license.
The Neo4j Enterprise commercial end user license agreement (EULA) actually adds restrictions preventing you from using Neo4j open source licenses in many circumstances!! Make sure to read it!

Neo4j Enterprise open                    Neo4j Enterprise

SER_2640

Case: 24-5538, 02/24/2025, DktEntry: 52.11, Page 272 of 300

iGov : Innovative Government Solutions

Case 5:18-cv-07182-EJD    Document 98-1    Filed 12/11/20    Page 89 of 1198

| License | source license | commercial license |
|---|---|---|
| Can use in any environment for any purpose? | **YES** | **YES** |
| Can I use this with any amount of cores without incurring additional costs? | **YES** | **NO** |
| Can I create custom derivative versions of Neo4j Enterprise? (Ex: My custom Neo4j Enterprise Edition) | **YES** | **YES** |
| Does **NOT** require you to open source your systems that simply use Neo4j Enterprise as a component in your system. | colspan | |

**YES** for both

*You do **NOT** have to open source your system that uses Neo4j Enterprise as a server as it is intended to be used. You only need to open source custom Neo4j Enterprise derivatives under the open source license and then only under certain distribution conditions.*

## About iGov

iGov Inc. is a software development company located in Reston, Va.

We focus on building innovative solutions for US Government agencies using open-source technologies.

CONTACT US

**(703) 862-7780**

info@igovsol.com

1902 Campus Commons Drive Suite 101 Reston, VA 20191



© 2019 iGov Inc. All Rights Reserved.

# EXHIBIT 17

SER_2642

iGov : Innovative Government Solutions





Witness:
John Mark Suhy
**Exhibit 11**
10/22/2020  B Gerald

## US Federal Government Packages for Neo4j Solutions

If your agency is planning on building a solution around Neo4j, then this package provides the best value over a commercial subscription.

Request Procurement Document Package

## Government Development Packages for **Neo4j**

iGov Inc's development packages for Neo4j are a better value than Neo4j Enterprise commercial support subscriptions for US federal agencies currently developing Neo4j solutions. Spend your budget building a solution instead of unnecessary production support for something not yet built!

Its that simple!

## Know your options

It is important to know your options before you make any procurement decisions around Neo4j. The information below provides you with a complete breakdown of the 3 main Neo4j offerings available including the free open source option. Most people are not aware that Neo4j Enterprise Edition is open source like its sibling, Neo4j Community edition.

The information below should provide you with a clear understanding of your options, so you can choose what's best for your agency.

### NEO4J INC. COMMERCIAL SUBSCRIPTION
# $29K - $1M+

**SER_2643**

iGov : Innovative Government Solutions

Commercial packages are those sold by Neo4j solutions partners. You are paying for production support. The commercial license is actually more restrictive than the open source license!

| |
| --- |
| Neo4j Enterprise Software |
| Available through Neo4j Inc. and all Neo4j Solution Partners |
| Yearly Subscription. You are paying for production support backed by Neo4j Inc.. If you don't renew your subscription you simply fall back to the Neo4j Enterprise open source license. |
| Production Email and Phone Support from vendor which is backed by Neo4j Inc. |
| Commercial License (Most government agencies do not need.) |
| Cost is based on number of instances and cores. (See below) |

## IGOV INC. GOVERNMENT DEVELOPMENT PACKAGES
# $25K+

100% of the cost goes into services aimed at building a solution around Neo4j, not unnecessary production support for something not yet built!.

| |
| --- |
| Neo4j Enterprise Software |
| Only available through iGov Inc |
| No annual subscription, you are free to do whatever you want in the future. |
| Production Email and Phone Support from iGov Inc, but not backed by Neo4j Inc. |
| Defaults Neo4j Enterprise Open Source license. |
| No limitations on usage, instances or cores - cost goes 100% to solutions development |
| FISMA and 508 Toolkit and Services |
| Suite of Tools, Frameworks, and Starter Projects we use for scalable big data Neo4j projects. |

## OPEN SOURCE

iGov : Innovative Government Solutions

## FREE

There is no reason you should be using Neo4j Community Edition.

Neo4j Enterprise Software (Same physical software as commercial package)

No limitations on usage, can be used in production with as many instances and cores as you want.

Standard GNU AGPL v3.0 Open source License.

[ Learn More about Neo4j Enterprise Open Source ]

DEVELOPMENT PACKAGE OVERVIEW     **PRICE COMPARISON**     PROCUREMENT COMPARISON

WHY IGOV INC ?

# Development Package Overview

The Government Development Packages are aimed at agencies who need help building a robust and scalable solution around Neo4j. Unlike the commercial production support subscriptions, 100% of the cost goes into consulting services that help you build out your solution.

All iGov Inc packages also include a suite of tools and services which are combined to address critical FISMA and accessibility requirements relating to Neo4j.

## Customer Support

iGov Inc provides umbrella support across all the components of your Neo4j solution, including Neo4j itself. For example, a solution using Neo4j Enterprise, Apache Kafka, Elastic Search, and custom micro-service architecture components are all covered under the umbrella support provided with these packages. The Neo4j commercial support subscriptions only cover Neo4j Enterprise.

## UI/UX Development

The development packages include UI and UX design services to assist developing everything from your

**SER_2645**

iGov : Innovative Government Solutions

dashboards and visualization. We ensure all development meets 508(c) requirements. We cover all modern web design frameworks including ReactJS and AngularJS. Furthermore, we provide a toolbox of open source visualization libraries and webapp starter projects to get your project up and running quickly. You can also add on UI packages such as Linkurious OGMA and Graphlytic Visualization tools and APIs.

## Starter Projects and Toolsets

We provide a suite of starter projects (maven and gradle), templates, and tools to get your Neo4j projects off the ground quickly. Our Starters include Docker images, Microservice architecture components (api gateways, service registries, etc), UI and visualization components and more.

## Enterprise Architecture Development

Neo4j is usually just one of many components in a common graph solution. Other components include ElasticSearch, Apache Kafka, and other technologies.

Our team brings a wide range of enterprise architecture development expertise to the table. From monolithic to micro-service architectures, our team will help design a solution that best fit's your agency's needs.

## GraphGrid Data Platform

GraphGrid Data Platform (GDP) is an enterprise-grade graph data management platform that enables a centralized architecture for running batch, interactive and real-time analytics and data processing applications simultaneously across your connected graph data. Development packages include the tools, and platform components needed to get a robust and scalable ETL pipeline in place.

## Newest Libraries and Repositories

==The Government Packages for Neo4j== include many of the leading technologies which are all covered under the umbrella package support. In many cases, this allows for agencies to start working with new technologies that would have usage restrictions if not part of a vendor supported package such as this. All libraries and repositories are kept on Amazon GovCloud and can be easily accessed once an agency whitelists the servers. Development packages include access to the newest libraries and repositories for the tools we package and support.

## GovCloud Development and Continuous Integration Environment

We understand that many agencies have not adopted the newest technologies and best practices which can make modern web application development almost impossible. Our development packages include use of GovCloud resources including EC2, S3,Container Services, and more.



SER_2646

iGov : Innovative Government Solutions

# Pricing Comparison

Below is a price comparison for a Neo4j Inc. commercial subscription package covering 3 production instances with 8 cores each. (3x8). The Neo4j Inc. commercial package is not a perpetual license, and the commercial EULA limits your use of Neo4j open source licenses in many ways once accepted. Notice that it also has unnecessary production elements which you are paying for as part of the subscription. Neo4j Inc's pricing can be found via a simple GSA Advantage search.

## Neo4j Inc. Commercial Subscription (Annual Subscription)

Neo4j Enterprise Bundle – Standard cluster for enterprise applications that are used by more than one department (or by a larger department), or by customer-facing applications.

Neo4j Enterprise Bundle basic configuration includes:

- a. 3 Production Instances (up to 8 Cores per Instance).
- b. 3 Test Instances (no Core limit).
- c. Premium Support: 24 x 7 / 1-hour response time for Severity 1 issues, **email and phone.**
- d. Unlimited number of licensed developers.

| Name & Description | Annual Subscription Price |
|---|---|
| Neo4j Enterprise Bundle Base (3 Instances X 8 Cores Each) | $189,188 / yr |
| Additional Production Capacity (per Core) | + $6,609 / yr |
| Disaster Recovery (per Core) | + $3,305 / yr |
| Additional Test Instances (per Instance) | + $4,957 / yr |
| Additional Instance (up to 8 Cores) | + $52,874  / yr |
| 8-Core pack | + $52,874 / yr |
| 12-Core pack | + $79,310 / yr |
| 16-Core pack | + $105,747 / yr |

SER_2647

iGov : Innovative Government Solutions

| 24-Core pack | + $158,621 / yr |
| 32-Core pack | + $211,494 / yr |

## iGov Inc's Government Development Package with Neo4j Enterprise

Comes with same physical Neo4j Enterprise software. Under open source license there are no limitations on how you use it. You have no limits on environments, number of instances, cores, etc!

Government Bundle for Neo4j Enterprise basic configuration includes:

- a. Unlimited instances with no core limits for any environment! (dev, test, staging, production, etc)
- c. Premium support and development services by iGov Inc. Unlike the Neo4j commercial package, we support your entire architecture not just Neo4j. (Neo4j, ElasticSearch, UI, Micro Services, etc..)
- d. No limitations on number of developers, etc.

## $25,000+

100% goes into development.

The minimum development package costs $25,000. For comparison - you can choose the $189,000 Development package option - where $189,000 goes into consulting services at GSA approved rates.

Of course - you can choose how much you want to spend. We simply offer packages that parallel commercial subscription rates to help make procurement easier.

---

# Neo4j Inc. Commercial Support vs iGov Inc. Development Package Comparison

So what exactly do you get with a Neo4j Inc. commercial subscription? You get the peace of mind knowing Neo4j Inc. is there to assist with production support tickets if the vendor you purchased it from can not solve an issue on their own. This is not very useful when you are in development, using Neo4j for R & D, or do not have a mission critical Neo4j deployment.

SER_2648

iGov : Innovative Government Solutions

|  | Government Development Package w/ Neo4j Enterprise | Neo4j Enterprise commercial support subscription | Neo4j Enterprise (default open source license) |
|---|---|---|---|
| Has full Neo4j Enterprise functionality. | YES | YES | YES |
| Can purchase through Neo4j Inc. or its resellers | NO<br>*The Government Packages for Neo4j are only available through iGov Inc.* | YES | NO<br>*Neo4j partners are forbidden on offering services or support for Neo4j open source licenses.* |
| Can use in any environment for any purpose? | YES | YES<br>*Your subscription has limits on number of cores and instances* | YES |
| Comes with consulting services which can be used to build your solution around Neo4j. (Including UI/UX design, ETL implementation, enterprise architecture, and FISMA and 508c services) | YES<br>*This is what seperates out the Government Development Package from the commercial support subscription. Support is swapped out with consulting services you can use to build your solution around Neo4j.* | NO | NO |
| Comes with tools, services and support to address Accessability (508c) and FISMA requirements. | YES | NO | NO |
| Can I use this with any amount of cores or instances without incurring additional costs? | YES | NO<br>*The cost of a commercial support subscription is based on the cores and instances you use.* | YES |
| Can I create custom derivative versions of | YES | YES | YES |

**SER_2649**

| | | | |
|---|---|---|---|
| Neo4j Enterprise? (Ex: My custom Neo4j Enterprise Edition) | | | |
| Does Neo4j Inc. provide official email and phone production support? | **No***<br><br>*Development packages do not need production support, they swap out production support for consulting services you use to build your solution.* | **YES** | **NO** |
| Does **NOT** require you to open source your systems that simply use Neo4j Enterprise as a component in your system. | **YES** for all<br><br>*You do **NOT** have to open source your system that uses Neo4j Enterprise as a server as it's intended to be used. You only need to open source custom Neo4j Enterprise derivatives under the open source license and then only under certain distribution conditions.* | | |

# Why iGov Inc ?

Our team is the same team that created Neo4j Enterprise Government Edition. Further, we are the same team that sold and supported every US Federal Government procurement of Neo4j Enterprise Government Edition up until its retirement in July 2017.

==iGov Inc's new Government Package can be used as a direct replacement for the now retired Neo4j Government Edition. iGov Inc is the only vendor providing this package. Even more, this package includes Neo4j Enterprise under its open source license!==

**How is this possible?** Read below to learn more....

> **Neo4j Government Edition** has been retired by Neo4j Inc..
>
> ==PureThink, the company who created, managed and sold Neo4j Government Edition to all US Federal==

file:///litdata01ps/...urethink/Productions/2019-07-01 IGOV-PureThink/Defendant's use of Neo4j trademark/igov-01-13-2018-html/neo4j.html[8/12/2020 5:15:36 PM]

**SER_2650**

iGov : Innovative Government Solutions

agencies has ceased their partnership with Neo4j Inc.. The principle behind PureThink and the Government Package has created a new corporate entity called **iGov Inc**, which is not a Neo4j Solution Partner. Because we are not a solution partner, we are not under the extremely restrictive terms dealing with services around Neo4j open source licenses which applies to partners. With iGov Inc, we can offer packages that allow US Federal agencies to gain all the benefits they have from our team's experience and past performance we've gained, but now with the ability to apply it to Neo4j Enterprise open source licenses! Before now, the only option for development or non-critical system support was the extremely costly commercial production support packages. Things have changed, and US Federal agencies are going to benefit from huge savings related to Neo4j and Neo4j solutions.

iGov Inc and the Government Package for Neo4j allows agencies to spend their money on developing innovative solutions around Neo4j, not paying for unnecessary production support before they even have a solution built that could be in production.

The new **Government Package for Neo4j** can be added to any Neo4j instance making it a "Government Edition".

By default, **all Government Packages for Neo4j now comes with Neo4j Enterprise** included under its open source license!

Once ready for production, agencies can choose to have either iGov Inc, a Neo4j Solution partner of their choice, or their own team handle production support. This allows agencies to decide what best fits their production and system needs.

iGov Inc and its partners offered production support packages that cover complex big data architectures that usually make up a Neo4j solution not just Neo4j itself. Ex: ElasticSearch, Apache Kafka, and more.

Please contact us for past performance references, and current Federal agency customer references to find out more about our team and offerings.

Procurement offices can reach out to us for necessary paperwork, documentation, and more needed to make smart procurement decisions. It's simple, if your agency is in development, then procuring a Neo4j Enterprise commercial package is not likely in the best interest of your agency.

Please contact neo4j@igovsol.com for more information.

iGov Inc is the only US Federal vendor whose team has proven past performance supporting and developing innovative solutions around Neo4j and the ability to work with Neo4j Enterprise open source licenses!

iGov : Innovative Government Solutions

## About iGov

iGov Inc. is a software development company located in Reston, Va.

We focus on building innovative solutions for US Government agencies using open-source technologies.

CONTACT US

**(703) 862-7780**

info@igovsol.com

1902 Campus Commons Drive Suite 101 Reston, VA 20191



© 2019 iGov Inc. All Rights Reserved.

SER_2652

# EXHIBIT 18

iGov : Innovative Government Solutions



**iGov Inc is now the only US Federal contractor providing Neo4j Enterprise binaries packaged with it's free *Open Source* license!**

As of November 2017, Neo4j Inc removed the free open source Neo4j Enterprise downloads from it's distribution site making iGov Inc the only place where you can down load it.

Learn More

## Introducing Gov Development Packages for **Neo4j**

US Federal agencies developing Neo4j solutions now have a cost effective development package for Neo4j. Spend your budget building a solution instead of unnecessary production support! If you are looking at making a Neo4j Enterprise procurement, then you should be aware of this new Package as in a majority of the cases, it offers a better value than Neo4j Inc.'s commercial subscriptions.

US Federal Agencies and Government Package for Neo4j Procurements

Learn More

SER_2654

iGov : Innovative Government Solutions

Please contact us for more information. The new iGov Inc
packages offer a better value to US Federal government agencies
in a majority of the cases.

## About iGov

iGov Inc. is a software development company located in Reston, Va.

We focus on building innovative solutions for US Government agencies using open-source technologies.

CONTACT US
### (703) 862-7780

info@igovsol.com

1902 Campus Commons Drive Suite 101 Reston, VA 20191



© 2019 iGov Inc. All Rights Reserved.

**EXHIBIT 19**

SER_2656

00036000



**From:** **John Mark Suhy** jmsuhy@igovsol.com 📎
**Subject:** Neo4j Procurement Follow up and guidance on your EULA
**Date:** September 8, 2017 at 1:53 PM
**To:** Carol.E.Sinnard@nga.ic.gov
**Cc:** carol.e.sinnard@nga.mil

Hello Carol,

We spoke on the phone.  I just wanted to reach out to you and send you some information you can forward to the end-users at your agency for next year.    Unfortunately you may have
procured a package that isn't in your best interest, but you will be more informed next year.

I setup a page to help explain all your options   https://igovsol.com/neo4j.html

I also attached the PDF version of the page.

I want to give you some guidance on your EULA before you sign anything.

You will be asked to sign a 3-way form binding you to the commercial EULA.   You want them to remove the term in the EULA that forbids you from using open source licenses next to commercial licenses.

If you do not ask them to remove that term - your agency could be on the hook for a lot of money if you have other teams using Neo4j under it's free open source license as you would have to convert them to commercial.

Until we broke away from Neo4j Inc last month, we sold every Neo4j subscription to the US federal government under our other company PureThink.  I am the core developer who created the Neo4j Government Edition which was retired by Neo last month.

I hope I can help next year.

Have a great weekend,

Respectfully,

John Mark Suhy
iGov Inc
jmsuhy@igovsol.com
703-862-7780
https://igovsol.com



neo4j-gov-dev-
overview-v1.pdf

00036000

00036001

**iGov**

Contact:   John Mark Suhy   📞 (703) 862-7780   jmsuhy@iGovSol.com   https://igovsol.com

Case 5:18-cv-02353-EJD   Document 85-2   Filed 03/13/25   Page 156 of 1140

# Government Development Packages for **Neo4j**

iGov Inc's development packages for Neo4j are a better value than Neo4j Enterprise commercial support subscriptions for US federal agencies currently developing Neo4j solutions. Spend your budget building a solution instead of unnecessary production support for something not yet built!
Its that simple!

## Know your options

It is important to know your options before you make any procurement decisions around Neo4j. The information below provides you with a complete breakdown of the 3 main Neo4j offerings available including the free open source option. Most people are not aware that Neo4j Enterprise Edition is open source like its sibling, Neo4j Community edition.

The information below should provide you with a clear understanding of your options, so you can choose what's best for your agency.

| COMMERCIAL PACKAGE $29K - $MILLIONS+ | GOVERNMENT DEVELOPMENT PACKAGES $25K+ | OPEN SOURCE FREE |
|---|---|---|
| Commercial packages are those sold by Neo4j solutions partners. You are paying for production support. The commercial license is actually more restrictive than the open source license! | 100% of the cost goes into services aimed at building a solution around Neo4j, not unnecessary production support for something not yet built!. | There is no reason you should be using Neo4j Community Edition. |
| Neo4j Enterprise Software | Neo4j Enterprise Software | Neo4j Enterprise Software (Same physical software as commercial package) |
| Available through Neo4j Inc. and all Neo4j Solution Partners | Only available through iGov Inc | No limitations on usage, can be used in production with as many instances and cores as you want. |
| Yearly Subscription. You are paying for production support backed by Neo4j Inc.. If you don't renew your subscription you simply fall back to the Neo4j Enterprise open source license. | No annual subscription, you are free to do whatever you want in the future. | Standard GNU AGPL v3.0 Open source License. |
| Production Email and Phone Support from vendor which is backed by Neo4j Inc. | Production Email and Phone Support from iGov Inc, but not backed by Neo4j Inc. | |
| Commercial License (Most government agencies do not need.) | Defaults Neo4j Enterprise Open Source License. | |
| Cost is based on number of instances and cores. (See below) | No limitations on usage, instances or cores - cost goes 100% to solutions development | |
| | FISMA and 508 Toolkit and Services | |
| | Suite of Tools, Frameworks, and Starter Projects we use for scalable big data Neo4j projects. | |

SER_2658

00036002

# Development Package Overview

The Government Development Packages are aimed at agencies who need help building a robust and scalable solution around Neo4j. Unlike the commercial production support subscriptions, 100% of the cost goes into consulting services that help you build out your solution.

All iGov Inc packages also include a suite of tools and services which are combined to address critical FISMA and accessibility requirements relating to Neo4j.

 **Customer Support**

iGov Inc provides umbrella support across all the components of your Neo4j solution, including Neo4j itself. For example, a solution using Neo4j Enterprise, Apache Kafka, Elastic Search, and custom micro-service architecture components are all covered under the umbrella support provided with these packages. The Neo4j commercial support subscriptions only cover Neo4j Enterprise.

 **UI/UX Development**

The development packages include UI and UX design services to assist developing everything from your dashboards and visualization. We ensure all development meets 508(c) requirements. We cover all modern web design frameworks including ReactJS and AngularJS. Furthermore, we provide a toolbox of open source visualization libraries and webapp starter projects to get your project up and running quickly.

You can also add on UI packages such as Linkurious OGMA and Graphlytic Visualization tools and APIs.

 **Starter Projects and Toolsets**

We provide a suite of starter projects (maven and gradle), templates, and tools to get your Neo4j projects off the ground quickly. Our Starters include Docker images, Microservice architecture components (api gateways, service registries, etc), UI and visualization components and more.

 **Enterprise Architecture Development**

Neo4j is usually just one of many components in a common graph solution. Other components include ElasticSearch, Apache Kafka, and other technologies.

Our team brings a wide range of enterprise architecture development expertise to the table. From monolithic to micro-service architectures, our team will help design a solution that best fit's your agency's needs.

 **GraphGrid Data Platform**

GraphGrid Data Platform (GDP) is an enterprise-grade graph data management platform that enables a centralized architecture for running batch, interactive and real-time analytics and data processing applications simultaneously across your connected graph data. Development packages include the tools, and platform components needed to get a robust and scalable ETL pipeline in place.

 **Newest Libraries and Repositories**

The Government Packages for Neo4j include many of the leading technologies which are all covered under the umbrella package support. In many cases, this allows for agencies to start working with new technologies that would have usage restrictions if not part of a vendor supported package such as this. All libraries and repositories are kept on Amazon GovCloud and can be easily accessed once an agency whitelists the servers. Development packages include access to the newest libraries and repositories for the tools we package and support.

 **GovCloud Development and Continuous Integration Environment**

We understand that many agencies have not adopted the newest technologies and best practices which can make modern web application development almost impossible. Our development packages include use of GovCloud resources including EC2, S3, Container Services, and more.

    

00036002

**SER_2659**

00036003

## Pricing Comparison

Below is a price comparison for a 3x8 core yearly production support subscription. The commercial package is not perpetual, and the commercial EULA limits your use of Neo4j open source licenses in many ways once accepted. Notice that it also has unnecessary production elements which you are paying for as part of the subscription.

### Neo4j Enterprise Commercial Subscription (Annual Subscription)

Neo4j Enterprise Bundle – Standard cluster for enterprise applications that are used by more than one department (or by a larger department), or by customer-facing applications.

Neo4j Enterprise Bundle basic configuration includes:

- a. 3 Production Instances (up to 8 Cores per Instance).
- b. 3 Test Instances (no Core limit).
- c. Premium Support: 24 x 7 / 1-hour response time for Severity 1 issues, **email and phone.**
- d. Unlimited number of licensed developers.

| Name & Description | Annual Subscription Price |
|---|---|
| Neo4j Enterprise Bundle Base (3 Instances X 8 Cores Each) | $189,188 / yr |
| Additional Production Capacity (per Core) | + $6,609 / yr |
| Disaster Recovery (per Core) | + $3,305 / yr |
| Additional Test Instances (per Instance) | + $4,957 / yr |
| Additional Instance (up to 8 Cores) | + $52,874  / yr |
| 8-Core pack | + $52,874 / yr |
| 12-Core pack | + $79,310 / yr |
| 16-Core pack | + $105,747 / yr |
| 24-Core pack | + $158,621 / yr |
| 32-Core pack | + $211,494 / yr |

### iGov Inc's Government Development Package with Neo4j Enterprise

Comes with same physical Neo4j Enterprise software. Under open source license there are no limitations on how you use it. You have no limits on environments, number of instances, cores, etc!

Government Bundle for Neo4j Enterprise basic configuration includes:

- a. Unlimited production instances. It is open source!
- b. Unlimited of course
- c. Premium support and development services by iGov Inc. Unlike the Neo4j commercial package, we support your entire architecture not just Neo4j. (Neo4j, ElasticSearch, UI, Micro Services, etc..)
- d. Unlimited number of licensed developers.

## $25,000+

## 100% goes into development.

The minimum development package costs $25,000. For comparison - you can choose the $189,000 Development package option - where $189,000 goes into consulting services at GSA approved rates.

Of course - you can choose how much you want to spend. We simply offer packages that parallel commercial subscription rates to help make procurement easier.

| LCAT | Rate |
|---|---|
| Project Manager | $104.89 |
| UI/Web Designer 1 | $83.35 |
| Principle Enterprise Application Modeler/Developer | $127.50 |
| Senior Enterprise Application Modeler/Developer | $116.52 |
| Enterprise Application Modeler/Developer | $87.39 |
| Sr. Graph Database Management Spec. | $100.47 |
| Mid-Test Engineer | $71.40 |
| Jr. Test Engineer | $52.02 |
| Training Specialist | $66.30 |

00036003

00036004

## Development vs Commercial Support Package Comparison

> So what exactly do you get with a commercial subscription? You get the peace of mind knowing Neo4j Inc. is there to assist with production support tickets if the vendor you purchased it from can not solve an issue on their own. This is not very useful when you are in development, using Neo4j for R & D, or do not have a mission critical Neo4j deployment.

| | Government Development Package w/ Neo4j Enterprise | Neo4j Enterprise commercial support subscription | Neo4j Enterprise (default open source license) |
|---|---|---|---|
| Has full Neo4j Enterprise functionality. | YES | YES | YES |
| Can purchase through Neo4j Inc. or its resellers | NO *The Government Packages for Neo4j are only available through iGov Inc.* | YES | NO *Neo4j partners are forbidden on offering services or support for Neo4j open source licenses.* |
| Can use in any environment for any purpose? | YES | YES *\*Your subscription has limits on number of cores and instances* | YES |
| Comes with consulting services which can be used to build your solution around Neo4j. (Including UI/UX design, ETL implementation, enterprise architecture, and FISMA and 508c services) | YES *This is what seperates out the Government Development Package from the commercial support subscription. Support is swapped out with consulting services you can use to build your solution around Neo4j.* | NO | NO |
| Comes with tools, services and support to address Accessability (508c) and FISMA requirements. | YES | NO | NO |
| Can I use this with any amount of cores or instances without incurring additional costs? | YES | NO *\*The cost of a commercial support subscription is based on the cores and instances you use.* | YES |
| Can I create custom derivative versions of Neo4j Enterprise? (Ex: My custom Neo4j Enterprise Edition) | YES | YES | YES |
| Does Neo4j Inc. provide official email and phone production support? | No* *Development packages do not need production support, they swap out production support for consulting services you use to build your solution.* | YES | NO |
| Does NOT require you to open source your systems that simply use Neo4j Enterprise as a component in your system. | | YES for all *You do NOT have to open source your system that uses Neo4j Enterprise as a server as it's intended to be used. You only need to open source custom Neo4j Enterprise derivatives under the open source license and then only under certain distribution conditions.* | |

00036005

## Why iGov Inc ?

Our team is the same team that created Neo4j Enterprise Government Edition. Further, we are the same team that sold and supported every US Federal Government procurement of Neo4j Enterprise Government Edition up until its retirement in July 2017.

iGov Inc's new Government Package can be used as a direct replacement for the now retired Neo4j Government Edition. iGov Inc is the only vendor providing this package. Even more, this package includes Neo4j Enterprise under its open source license!

**How is this possible?** Read below to learn more....

**Neo4j Government Edition** has been retired by Neo4j Inc..

PureThink, the company who created, managed and sold Neo4j Government Edition to all US Federal agencies has ceased their partnership with Neo4j Inc.. The principle behind PureThink and the Government Package has created a new corporate entity called **iGov Inc**, which is not a Neo4j Solution Partner. Because we are not a solution partner, we are not under the extremely restrictive terms dealing with services around Neo4j open source licenses which applies to partners. With iGov Inc, we can offer packages that allow US Federal agencies to gain all the benefits they have from our team's experience and past performance we've gained, but now with the ability to apply it to Neo4j Enterprise open source licenses! Before now, the only option for development or non-critical system support was the extremely costly commercial production support packages. Things have changed, and US Federal agencies are going to benefit from huge savings related to Neo4j and Neo4j solutions.

iGov Inc and the Government Package for Neo4j allows agencies to spend their money on developing innovative solutions around Neo4j, not paying for unnecessary production support before they even have a solution built that could be in production.

The new **Government Package for Neo4j** can be added to any Neo4j instance making it a "Government Edition".

By default, **all Government Packages for Neo4j now comes with Neo4j Enterprise** included under its open source license!

Once ready for production, agencies can choose to have either iGov Inc, a Neo4j Solution partner of their choice, or their own team handle production support. This allows agencies to decide what best fits their production and system needs.

iGov Inc and its partners offered production support packages that cover complex big data architectures that usually make up a Neo4j solution not just Neo4j itself. Ex: ElasticSearch, Apache Kafka, and more.

Please contact us for past performance references, and current Federal agency customer references to find out more about our team and offerings.

Procurement offices can reach out to us for necessary paperwork, documentation, and more needed to make smart procurement decisions. It's simple, if your agency is in development, then procuring a Neo4j Enterprise commercial package is not likely in the best interest of your agency.

Please contact **neo4j@igovsol.com** for more information.

iGov Inc is the only US Federal vendor whose team has proven past performance supporting and developing innovative solutions around Neo4j and the ability to work with Neo4j Enterprise open source licenses!

00036005

00036006

# iGov

John Mark Suhy

CTO

iGov is a Virginia software development company located in Reston, Va. iGov Inc is located in the Dulles High Tech corridor and Washington, DC Metro area.

What sets iGov Inc apart, is the past performance and experience our team brings to the table as well as the ability to develop solutions and support Neo4j Enterprise open source licenses. You will find this is a rare combination especially considering the fact that we can now support Neo4j Enterprise open source licenses.

Contact us for more information.

**Address:** 1902 Campus Commons Drive Suite 101 Reston, VA 20191

**Phone:** (703) 862-7780

**Email:** jmsuhy@igovsol.com

00036006

SER_2663

00036007

## About iGov

iGov Inc. is a software development company located in Reston, Va.

We focus on building innovative solutions for US Government agencies using open-source technologies.

**CONTACT US**
**(703) 862-7780**

✉ info@igovsol.com

📍 1902 Campus Commons Drive Suite 101
Reston, VA 20191

**iGov**   © 2017 iGov Inc. All Rights Reserved.

00036007

# EXHIBIT 20

⌂ (https://blog.igovsol.com)🔊    November 14, 2017 (/)    10 min read

# Neo4j 3.3.0 is out, but where are the open source enterprise binaries?

Neo4j Enterprise is still open source under it's AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html). However you may have noticed that you can no longer build the enterprise package binary from the source code or download the enterprise package binary with it's free AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html) from dist.neo4j.org. Furthermore, if you use docker, you must now accept a 'commercial agreement' before proceeding (https://github.com/neo4j/docker-neo4j-publish/commit/aa31654ee8544cd544b369d2646cf372086f7b70). In other words, official Neo4j docker images are no longer packaged with the free AGPLv3 (https://www.gnu.org/licenses/agpl-3.0.en.html) licensed binaries.

Neo4j Enterprise 'binaries' are simply the compiled and packaged Neo4j distributions you download and run on your computer, server, container, etc.

For the 3.3.0 release the enterprise binary package file names would be neo4j-enterprise-3.3.0-unix.tar.gz (https://dist.igovsol.com/neo4j-enterprise-3.3.0-unix.tar.gz) for the linux package and neo4j-enterprise-3.3.0-windows.zip (https://dist.igovsol.com/neo4j-enterprise-3.3.0-windows.zip) for the windows package. (The links above point to the binaries iGov Inc compiled and packaged using the source code found at the Neo4j Github repository. By default it is packaged with the AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html).)

Why has Neo4j Inc made it harder to access the open source enterprise binaries?

If they are going to take the trouble to make Neo4j Enterprise more inaccessible to the public, why not just take Neo4j closed source before releasing 3.3.0?

Only Neo4j Inc can answer these questions, and I feel they owe an explanation to the open source community which has made Neo4j what it is today.

With ambitions of an IPO, it would be an extremely risky maneuver to attempt taking Neo4j closed source. It could backfire and be disastrous if the community revolted and creates a more successful Neo4j fork. Even the perceived threat of this sort of behavior could trigger a revolt and fork.

As a reference, look no further than MySQL and MariaDB (https://mariadb.org/about/) , the more popular fork of MySQL, and you can see what could happen (https://www.zdnet.com/article/open-source-mariadb-a-mysql-fork-challenges-oracle/).

It looks like Neo4j Inc does not want to tempt fate with a closed source move just yet. Instead another path was taken which makes it very hard to get ahold of the enterprise packaged binaries with the free AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html). As a passionate advocate of both open source software and Neo4j, this does not sit well with me.

==Federal agencies have already invested in the adoption and use of Neo4j Enterprise and many are using it's free AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html). Luckily, iGov Inc builds the Neo4j binaries from the source code and makes it available via a distribution site we setup (https://igovsol.com/downloads.html).==

Back to the core of this post. So what has Neo4j Inc done to limit your access to Neo4j Enterprise binaries packaged with the free open source AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html)?

N4J_018852

SER_2666

**Action 1**: The enterprise packaging build instructions were removed from the code base (https://github.com/neo4j/neo4j/commit/affe1a0b4ab47c9d4673bfa507868ccd03c48ddd). Until the 3.3.0 release, anyone could have checked out the Neo4j source code from github (https://github.com/neo4j/neo4j), and run a few simple commands to build the Neo4j Enterprise binaries complete with the AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html). That's not the case anymore. If you run the build commands on the 3.3.0 branch you will notice that only the Neo4j Community Edition binary is present after the build process completes. Who really uses Neo4j Community Edition once they realized Neo4j Enterprise edition is also free?

The packaging system simply provides the instructions on how to 'build' the Neo4j Enterprise distribution binary, much like the instructions you get with furniture purchased at IKEA. All the artifacts that are used to build the Neo4j Enterprise binary are all open source, but the instructions explaining how to put together these artifacts have disappeared.



**Action 2**: Neo4j Inc slipped a commercial license into the official binaries found on their distribution site that is used for docker images. Until now, if you wanted to download the Neo4j Enterprise binary from Neo4j Inc directly, you could have done so using the distribution site which is publically available. It just isn't advertised for obvious reasons.

Those who were using the official docker images or downloading the enterprise binary directly from dist.neo4j.org were in for a surprise when they were forced to accept commercial terms in order to access the distributions.

Want to see for yourself - download the Neo4j Enterprise binary (http://dist.neo4j.org/neo4j-enterprise-3.3.0-unix.tar.gz) which Neo4j Inc packages and take a look at the LICENSE.txt file.

Instead of the standard AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html) which used to be there, the LICENSE.txt file now says:

```
Network Engine for Objects in Lund AB. 2017.
All Rights Reserved. Use of this Software without
a proper commercial license with Neo4j, Inc. or its affiliates
is prohibited.
```

As copyright holders, Neo4j Inc has the right to add any license they want for the binary distributions they build, package, and make available for download themselves. If anyone else packages the enterprise binary distribution like we do, you must simply make sure the LICENSE.txt file is the AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html). That is exactly what we do.

**Action 3**: Neo4j Inc kept causal cluster communication encryption (Intra-cluster encryption) off by default. They then created a 'proprietary module' that turns it on.

Of course you can get intra-cluster encryption turned back on by purchasing a costly commercial package.

This move was referenced in the 3.3.0 release changelog (https://neo4j.com/release-notes/neo4j-3-3-0/). They justified this change with the following blurb:

N4J_018853

SER_2667

```
Neo4j Enterprise Edition binaries now include new proprietary
add-ons. Intra-cluster encryption is the first of these.
Consequently Neo4j Enterprise Edition can no longer be
distributed under a dual license but the source is still
available under AGPLv3.
```

Of course Neo4j Enterprise can still be distributed under the AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html). Simply provide a binary download without the 'proprietary add-ons' that turn on intra-cluster encryption. The Neo4j Enterprise binaries we make available to the public are proof that this can be done.

I believe that security critical components of Neo4j should remain open source, security by obscurity has proven not to be a good strategy in the past. Currently, the security components of Neo4j Enterprise are still open source. In the case of intra-cluster encryption (causal clustering) - it is just not initialized.

Right now the only difference between the paid Neo4j Enterprise (commercial) binary and Neo4j Enterprise (open source) binary (we compile from source) is that intra-cluster encryption is still off by default in the AGPLv3 version.

We turn it back on for our federal customers via a new component in our FISMA framework, which will be available on github for everyone to use soon.

How many of you are actually using causal clustering in production? Well - if you upgrade to 3.3.0 and don't turn it back on yourself , you may be a little less secure assuming you aren't using encrypted tunnels / vpn, etc between your cluster nodes.

Look for yourself:

3.2 release code (https://github.com/neo4j/neo4j/blob/3.2/enterprise/causal-clustering/src/main/java/org/neo4j/causalclustering/discovery/HazelcastClientConnector.java) : The sslPolicy initialized in the code.

```
HazelcastClientConnector( Config config, LogProvider logProvider, SslPolicy sslPolicy,
        HostnameResolver hostnameResolver )
    {
        this.config = config;
        this.logProvider = logProvider;
        this.sslPolicy = sslPolicy;
        this.hostnameResolver = hostnameResolver;
    }
```

3.3 release code (https://github.com/neo4j/neo4j/blob/3.3/enterprise/causal-clustering/src/main/java/org/neo4j/causalclustering/discovery/HazelcastClientConnector.java) : The sslPolicy initialization has disappeared.

```
    HazelcastClientConnector( Config config, LogProvider logProvider, HostnameResolver
hostnameResolver )
        {
            this.config = config;
            this.logProvider = logProvider;
            this.hostnameResolver = hostnameResolver;
        }
```

These three actions effectively made it impossible to get Neo4j Enterprise binaries with the open source AGPLv3 license (https://www.gnu.org/licenses/agpl-3.0.en.html) from Neo4j Inc starting with the 3.3.0 release.

N4J_018854

SER_2668

As a consulting company offering software development and support for Neo4j Enterprise open source licenses to the US federal government, we have been building the binaries ourselves for some time.

As part of the Neo4j open source community, we've decided to absorb the hosting costs and make these distributions available to the general public, not just US federal agencies. We've setup a distribution site that can be used to download Neo4j Enterprise directly, or use use with docker compose.

We will have docker images up as well complete with the AGPLv3 (https://www.gnu.org/licenses/agpl-3.0.en.html) licensed packages.

We will also have the FISMA framework modules on GitHub soon, one of which turns back on intra-cluster encryption.

You can download the Neo4j Enterprise binaries with the open source license from our website at https://igovsol.com/downloads.html (https://igovsol.com/downloads.html).

We compile and package these using the source code from the official Neo4j GitHub repositories.

Federal agencies should email us at support@igovsol.com (mailto:support@igovsol.com) to get their AWS GovCloud download links which should be whitelisted for most agencies.

If you would were not aware that Neo4j Enterprise is open source just like it's sibling 'Neo4j Community Edition', you can learn more here (https://igovsol.com/downloads.html#neo4j-os-faqs).

If you are not happy with Neo4j Inc's behavior, then please reach out to Neo4j Inc and voice your concerns.

Feel free to contact me directly via email at jmsuhy@igovsol.com (mailto:jmsuhy@igovsol.com) if you have questions, comments, or just want to talk about Neo4j in general. We are always available.

 ()

💬 Comment on Twitter (https://twitter.com/share?text=Neo4j%203.3.0%20is%20out%2C%20but%20where%20are%20the%20open%20source%20

🔊 (https://blog.igovsol.com/rss)

(https://blog.igc

**John Mark**

**(https://blog.igovsol.com/author/jmsuhy/)**

Alexandria, VA

igovsol.com (https://igovsol.com)

Senior software developer and enterprise architect with a focus on introducing innovative open source technologies into the US federal government.

N4J_018855

SER_2669