No. 24-5538

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

NEO4J, INC., NEO4J SWEDEN AB,

*Plaintiffs-Appellees,*

v.

JOHN MARK SUHY,

*Defendant-Appellant.*

On Appeal from the United States District Court
For the Northern District of California
No. 5:18-cv-07182-EJD
Hon. Edward J. Davila

_____

## APPELLEES' EXCERPTS OF RECORD
## Volume 14 of 18

_____

John V. Picone III (State Bar No. 187226)
jpicone@spencerfane.com
Jeffrey M. Ratinoff (State Bar No. 197241)
jratinoff@spencerfane.com
Jeremy A. Moseley (MT Bar No. 44830177)
jmoseley@spencerfane.com

*Attorneys for Appellees*
Neo4j, Inc. and Neo4j Sweden AB

# EXHIBIT 127

SER_3567

| | |
|---|---|
| **From:** | John Mark Suhy (jmsuhy@egovsol.com) |
| **To:** | Dunn Michael C (Michael.C.Dunn@irs.gov) |
| **CC:** | Manoharan Linkavan [Contractor] (Linkavan.Manoharan@irs.gov), Rosenmerkel Lisa S (Lisa.S.Rosenmerkel@irs.gov), Weng Guoqing [Contractor] (Guoqing.Weng@irs.gov) |
| **BCC:** | |
| **Subject:** | Re: transition risk question from our ckge neo4j 3.3.2 to ONgdb |
| **Attachments:** | |
| **Sent:** | 08/13/2018 12:13:46 PM -0700 (PST) |

That sounds good.

Lisa,

I am confident that upgrading to ONgDB 3.4.x for the launch is the smart move for a number of reasons.

We actually prefer to support you on the newest 3.4.x ONgDB versions.

We have been testing the platform with the newest 3.4.x versions within for quite some time as well - switching between 3.3.x and 3.4.x distributions does not require any changes to the platform.

Also, it is trivial to flip between 3.3 and 3.4 versions in the future as well.

ONgDB open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc, which is a huge benefit based on their past behavior.

The upgrade would be a low risk move in our opinion.

We can talk more if you wish this week anytime.

Thank you,

John Mark

On Mon, Aug 13, 2018 at 12:12 PM Dunn Michael C <Michael.C.Dunn@irs.gov> wrote:

> Thanks John Mark. Making sure Lisa is looped in on this, and ask her if we're ok to go ahead and just use ONgDB from now on in the CKGE environment.  Let's just hold with 3.3.2 until we get clearance from Lisa.
>
> _____
>
> Michael C. Dunn
>
> Data Management Division/Planning and Analysis
>
> Research, Applied Analytics, and Statistics
>
> **From:** John Mark Suhy [mailto:jmsuhy@egovsol.com]

**Sent:** Monday, August 13, 2018 11:58 AM
**To:** Dunn Michael C <Michael.C.Dunn@irs.gov>
**Cc:** Manoharan Linkavan [Contractor] <Linkavan.Manoharan@irs.gov>; Rosenmerkel Lisa S
<Lisa.S.Rosenmerkel@irs.gov>; Weng Guoqing [Contractor] <Guoqing.Weng@irs.gov>
**Subject:** Re: transition risk question from our ckge neo4j 3.3.2 to ONgdb

I think we should use ONgDB 3.4.x for the launch.  It has a lot of performance enhancements over 3.3.x

We have been testing everything with the 3.3.x and 3.4.x versions , so we know the platform works great with both.

On Mon, Aug 13, 2018 at 8:55 AM Dunn Michael C <Michael.C.Dunn@irs.gov> wrote:

> Hi John Mark,
>
> Would it be easier to go ahead and use ONgDB now in CKGE or wait and deploy CKGE with Neo4j 3.3.2 we have, and
> then later transition to ONgDB?
>
> We do not want to move to Neo4j 3.4.x AGPL.
>
> _____
>
> Michael C. Dunn
>
> Data Management Division/Planning and Analysis
>
> Research, Applied Analytics, and Statistics

--

John Mark Suhy
eGovernment Solutions Inc
jmsuhy@egovsol.com
703-862-7780
https://egovsol.com

IGOV0001573217.0002

**SER_3569**

--
John Mark Suhy
eGovernment Solutions Inc
jmsuhy@egovsol.com
703-862-7780
https://egovsol.com

IGOV0001573217.0003

**SER_3570**

# EXHIBIT 128

SER_3571

1  John V. Picone III, Bar No. 187226
   jpicone@hopkinscarley.com
2  Jeffrey M. Ratinoff, Bar No. 197241
   jratinoff@hopkinscarley.com
3  HOPKINS & CARLEY
   A Law Corporation
4  The Letitia Building
   70 South First Street
5  San Jose, CA  95113-2406

6  *mailing address:*
   P.O. Box 1469
7  San Jose, CA 95109-1469
   Telephone:    (408) 286-9800
8  Facsimile:    (408) 998-4790

9  Attorneys for Plaintiffs
   NEO4J, INC. and NEO4J SWEDEN AB

10

11                   UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13  NEO4J, INC., a Delaware corporation, and        CASE NO.  5:19-cv-06226-EJD
    NEO4J SWEDEN AB, a Swedish
14  corporation,                                     **PLAINTIFF NEO4J, INC.'S REQUEST FOR
                                                     ADMISSION, SET ONE, TO DEFENDANT
15                   Plaintiffs,                     GRAPH FOUNDATION, INC.**

16          v.

17  GRAPH FOUNDATION, INC., an Ohio
    corporation, GRAPHGRID, INC., an Ohio
18  corporation, and ATOMRAIN INC., a
    Nevada corporation,
19
                     Defendants.
20

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

1    **PROPOUNDING PARTY:  NEO4J, INC.**

2    **RESPONDING PARTY:    GRAPH FOUNDATION, INC**

3    **DISCOVERY:                    REQUEST FOR ADMISSIONS**

4    **SET NO.:                          ONE**

5            Pursuant to Federal Rule of Civil Procedure 36, Plaintiff Neo4j, Inc. ("Plaintiff") hereby

6    serve their Request for Admissions, Set One, on Graph Foundation Inc. ("GFI" or "Responding

7    Party").  Plaintiff requests that Responding Party respond to the following Request for

8    Admissions, Set One, separately and fully in writing and serve their responses upon Plaintiff

9    within thirty (30) days after service of this Request for Admissions, Set One.  Such matters will

10   be deemed admitted unless a written response is timely served upon Plaintiff.  Further, Plaintiff

11   request that Responding Party answer the following Request for Admissions, Set One, under oath,

12   within the time requested above, based on all information presently available to Responding

13   Party.

14           Notice is hereby given to Responding Party that if they fail to admit the truth of any

15   matter requested, and the truth of that matter is later proven at trial, Plaintiff will move for an

16   order, pursuant to Federal Rule of Civil Procedure 37(c)(2), requiring Responding Party to

17   reimburse Plaintiff for their reasonable expenses in making that proof, including attorneys' fees

18   and all related costs and expenses.

19           The following Request for Admissions, Set One, are continuing in character and YOUR

20   responses are to be supplemented in accordance with Rule 26(e) of the Federal Rules of Civil

21   Procedure.  If after responding to these Request for Admissions, Set One, Responding Party

22   obtains or becomes aware of any further facts or knowledge that would change their responses to

23   these Request for Admissions, Set One, Responding Party is required to supplement their

24   responses as soon as possible.

25   / / /

26   / / /

27   / / /

28   / / /

842\3571081.3
PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

**REQUESTS FOR ADMISSIONS**

**REQUEST FOR ADMISSION NO. 1:**

Admit that Graph Foundation, Inc. (hereafter referred to as "GFI") does not have a license to use U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" (hereafter referred to as the "NEO4J® Mark").

**REQUEST FOR ADMISSION NO. 2:**

Admit that GFI owns the domain www.graphfoundation.org.

**REQUEST FOR ADMISSION NO. 3:**

Admit that GFI controls the website located at www.graphfoundation.org.

**REQUEST FOR ADMISSION NO. 4:**

Admit that GFI has used the phrase "ONgDB – Open Neo4j Enterprise – The Graph Foundation" on its website located at www.graphfoundation.org.

**REQUEST FOR ADMISSION NO. 5:**

Admit that **Exhibit A** attached hereto is a true and correct printout of the webpage located at https://www.graphfoundation.org/projects/ongdb/ as it existed on September 24, 2019.

**REQUEST FOR ADMISSION NO. 6:**

Admit that the webpage located at https://www.graphfoundation.org/projects/ongdb/ was titled "ONgDB – Open Neo4j Enterprise – The Graph Foundation" as of September 24, 2019.

**REQUEST FOR ADMISSION NO. 7:**

Admit that GFI used the NEO4J® Mark in the title of its webpage https://www.graphfoundation.org/projects/ongdb/ as of September 24, 2019.

**REQUEST FOR ADMISSION NO. 8:**

Admit that GFI did not have Neo4j, Inc.'s authorization to use the NEO4J® Mark in the title of its webpage https://www.graphfoundation.org/projects/ongdb/ as of September 24, 2019.

**REQUEST FOR ADMISSION NO. 9:**

Admit that GFI's use of the NEO4J® Mark in the title of its webpage https://www.graphfoundation.org/projects/ongdb/ as of September 24, 2019 was unlicensed.

/ / /

842\3571081.3
- 3 -
PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

**REQUEST FOR ADMISSION NO. 10:**

Admit that GFI's use of the NEO4J® Mark in the title of its webpage https://www.graphfoundation.org/projects/ongdb/ as of September 24, 2019 did not constitute nominative fair use of the NEO4J® Mark.

**REQUEST FOR ADMISSION NO. 11:**

Admit that GFI's use of the NEO4J® Mark in the title of its webpage https://www.graphfoundation.org/projects/ongdb/ as of September 24, 2019 infringed the NEO4J® Mark.

**REQUEST FOR ADMISSION NO. 12:**

Admit that the statement "ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number" made in **Exhibit A** attached hereto is not 100% accurate.

**REQUEST FOR ADMISSION NO. 13:**

Admit that **Exhibit B** is a true and correct printout of Neo4j, Inc.'s Trademark Guidelines available on its website on September 26, 2019.

**REQUEST FOR ADMISSION NO. 14:**

Admit that you were aware of Neo4j, Inc.'s Trademark Guidelines in **Exhibit B** as early as September 26, 2019.

**REQUEST FOR ADMISSION NO. 15:**

Admit that the Neo4j, Inc.'s Trademark Guidelines in **Exhibit B** state they were last updated on April 3, 2019.

**REQUEST FOR ADMISSION NO. 16:**

Admit that you were aware of Neo4j, Inc.'s Trademark Guidelines in **Exhibit B** as early as April 3, 2019.

**REQUEST FOR ADMISSION NO. 17:**

Admit that the Neo4j, Inc.'s Trademark Guidelines in **Exhibit B** were viewable on Neo4j, Inc.'s website on September 24, 2019.

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3571081.3
- 4 -
PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

1   **REQUEST FOR ADMISSION NO. 18:**

2      Admit that you were aware of Neo4j, Inc.'s Trademark Guidelines in **Exhibit B** as early

3   as September 24, 2019.

4   **REQUEST FOR ADMISSION NO. 19:**

5      Admit that Neo4j, Inc.'s Trademark Guidelines in **Exhibit B** were attached as an exhibit

6   to Neo4j, Inc.'s Complaint filed on October 1, 2019.

7   **REQUEST FOR ADMISSION NO. 20:**

8      Admit that you have been aware of Neo4j, Inc.'s Trademark Guidelines in **Exhibit B** as

9   least as early as December 26, 2019 when you filed your answer to Neo4j, Inc.'s Complaint.

10   **REQUEST FOR ADMISSION NO. 21:**

11      Admit that GFI's use of the NEO4J® Mark in the title of its webpage attached hereto as

12   **Exhibit A** violated Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B**.

13   **REQUEST FOR ADMISSION NO. 22:**

14      Admit that **Exhibit C** attached hereto is a true and correct printout of the webpage located

15   at https://www.graphfoundation.org/projects/ongdb/ as it existed on June 10, 2020.

16   **REQUEST FOR ADMISSION NO. 23:**

17      Admit that the webpage located at https://www.graphfoundation.org/projects/ongdb/ was

18   titled "ONgDB – Open Neo4j Enterprise – The Graph Foundation" as of June 10, 2020.

19   **REQUEST FOR ADMISSION NO. 24:**

20      Admit that GFI used the NEO4J® Mark in the title of its webpage

21   https://www.graphfoundation.org/projects/ongdb/ as of June 10, 2020.

22   **REQUEST FOR ADMISSION NO. 25:**

23      Admit that GFI did not have Neo4j, Inc.'s authorization to use the NEO4J® Mark in the

24   title of its webpage https://www.graphfoundation.org/projects/ongdb/ as of June 10, 2020.

25   **REQUEST FOR ADMISSION NO. 26:**

26      Admit that GFI's use of the NEO4J® Mark in the title of its webpage

27   https://www.graphfoundation.org/projects/ongdb/ as of June 10, 2020 was unauthorized.

28   / / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3571081.3

- 5 -

PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

**REQUEST FOR ADMISSION NO. 27:**

Admit that GFI's use of the NEO4J® Mark in the title of its webpage https://www.graphfoundation.org/projects/ongdb/ as of June 10, 2020 did not constitute nominative fair use of the NEO4J® Mark.

**REQUEST FOR ADMISSION NO. 28:**

Admit that GFI's use of the NEO4J® Mark in the title of its webpage https://www.graphfoundation.org/projects/ongdb/ as of June 10, 2020 infringed the NEO4J® Mark.

**REQUEST FOR ADMISSION NO. 29:**

Admit that the Neo4j, Inc.'s Trademark Guidelines in **Exhibit B** have been in effect since Neo4j, Inc. filed this lawsuit against GFI on October 1, 2019 through the date of these requests.

**REQUEST FOR ADMISSION NO. 30:**

Admit that the Neo4j, Inc.'s Trademark Guidelines in **Exhibit B** were viewable on Neo4j, Inc.'s website as of June 10, 2020.

**REQUEST FOR ADMISSION NO. 31:**

Admit that GFI's use of the NEO4J® Mark in the title of its webpage https://www.graphfoundation.org/projects/ongdb/ as of June 10, 2020 violated Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

**REQUEST FOR ADMISSION NO. 32:**

Admit that GFI's use of "neo4j enterprise" in all lower case on its website, www.graphfoundation.org, violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

**REQUEST FOR ADMISSION NO. 33:**

Admit that GFI's use of "neo4j enterprise" without proper trademark notice on its website, www.graphfoundation.org, violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

/ / /

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3571081.3

- 6 -

PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

SER_3577

1    **REQUEST FOR ADMISSION NO. 34:**

2        Admit that GFI's use of "neo4j" in all lower case on its website,

3 www.graphfoundation.org, violates Neo4j, Inc.'s Trademark Guidelines attached hereto as

4 **Exhibit B.**

5    **REQUEST FOR ADMISSION NO. 35:**

6        Admit that GFI's use of "neo4j" without proper trademark notice on its website,

7 www.graphfoundation.org, violates Neo4j, Inc.'s Trademark Guidelines attached hereto as

8 **Exhibit B.**

9    **REQUEST FOR ADMISSION NO. 36:**

10        Admit that GFI's use of "Neo4j Enterprise" on its website, www.graphfoundation.org,

11 violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

12    **REQUEST FOR ADMISSION NO. 37:**

13        Admit that GFI's use of "Neo4j Enterprise" without proper trademark notice on its

14 website, www.graphfoundation.org, violates Neo4j, Inc.'s Trademark Guidelines attached hereto

15 as **Exhibit B.**

16    **REQUEST FOR ADMISSION NO. 38:**

17        Admit that GFI's use of hyperlinks to documents on Neo4j, Inc.'s website violates Neo4j,

18 Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

19    **REQUEST FOR ADMISSION NO. 39:**

20        Admit that GFI's use of hyperlinks to documents on Neo4j Sweden AB's Github source

21 code repository violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

22    **REQUEST FOR ADMISSION NO. 40:**

23        Admit that GFI's use of hyperlinks to documents on Neo4j, Inc.'s website does not

24 constitute nominative fair use of the NEO4J® Mark.

25    **REQUEST FOR ADMISSION NO. 41:**

26        Admit that GFI's use of "neo4j" in hyperlinks to documents on Neo4j, Inc.'s website does

27 not constitute nominative fair use of the NEO4J® Mark.

28    / / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3571081.3        - 7 -
PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

**REQUEST FOR ADMISSION NO. 42:**

Admit that GFI's use of hyperlinks to documents on Neo4j Sweden AB's Github source code repository does not constitute nominative fair use of the NEO4J® Mark.

**REQUEST FOR ADMISSION NO. 43:**

Admit that GFI's use of "neo4j" in hyperlinks to Neo4j Sweden AB's Github source code repository does not constitute nominative fair use of the NEO4J® Mark.

**REQUEST FOR ADMISSION NO. 44:**

Admit that GFI's use of "Neo4j Enterprise" to describe ONgDB violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

**REQUEST FOR ADMISSION NO. 45:**

Admit that GFI's use of "Neo4j Enterprise" to describe ONgDB does not constitute fair use of the NEO4J® Mark.

**REQUEST FOR ADMISSION NO. 46:**

Admit that GFI's interchangeable use of "Neo4j Enterprise" with "ONgDB" on GFI's website without proper trademark notices violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B**.

**REQUEST FOR ADMISSION NO. 47:**

Admit that GFI's interchangeable use of "Neo4j Enterprise" with "ONgDB" on GFI's website does not constitute nominative fair use of the NEO4J® Mark.

**REQUEST FOR ADMISSION NO. 48:**

Admit that GFI's use of "Neo4j Enterprise" on GFI's website without proper trademark notices violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B**.

**REQUEST FOR ADMISSION NO. 49:**

Admit that GFI's use of "Neo4j Enterprise" without proper trademark notices does not constitute nominative fair use of the NEO4J® Mark.

/ / /

/ / /

/ / /

1  **REQUEST FOR ADMISSION NO. 50:**

2  Admit that Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B** prohibit GFI

3  from using the NEO4J® Mark in conjunction with modified open source software based on the

4  Neo4j® graph database platform.

5  **REQUEST FOR ADMISSION NO. 51:**

6  Admit that Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B** prohibit GFI

7  from using the NEO4J® Mark in conjunction with advertising its ONgDB software.

8  **REQUEST FOR ADMISSION NO. 52:**

9  Admit that Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B** prohibit GFI

10  from calling ONgDB software "Neo4j Enterprise."

11  **REQUEST FOR ADMISSION NO. 53:**

12  Admit that Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B** prohibit GFI

13  from describing ONgDB software as "Neo4j Enterprise."

14  **REQUEST FOR ADMISSION NO. 54:**

15  Admit that GFI used the NEO4J® Mark in **Exhibit C**.

16  **REQUEST FOR ADMISSION NO. 55:**

17  Admit that GFI's use of "neo4j" in all lower case in **Exhibit C** violates Neo4j, Inc.'s

18  Trademark Guidelines attached hereto as **Exhibit B.**

19  **REQUEST FOR ADMISSION NO. 56:**

20  Admit that GFI's use of "neo4j" in all lower case in **Exhibit C** does not constitute

21  nominative fair use of the NEO4J® Mark.

22  **REQUEST FOR ADMISSION NO. 57:**

23  Admit that GFI's use of "neo4j" in all lower case in **Exhibit C** infringes the NEO4J®

24  Mark.

25  **REQUEST FOR ADMISSION NO. 58:**

26  Admit that GFI's use of "neo4j enterprise project" in all lower case in **Exhibit C** violates

27  Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

28  **/ / /**

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

SER_3580

1  **REQUEST FOR ADMISSION NO. 59:**

2      Admit that GFI's use of "neo4j enterprise project" in **Exhibit C** does not constitute

3  nominative fair use of the NEO4J® Mark.

4  **REQUEST FOR ADMISSION NO. 60:**

5      Admit that GFI's use of "neo4j enterprise project" in **Exhibit C** infringes the NEO4J®

6  Mark.

7  **REQUEST FOR ADMISSION NO. 61:**

8      Admit that GFI's use of "neo4j enterprise" in all lower case in **Exhibit C** violates Neo4j,

9  Inc.'s Trademark Guidelines attached hereto as **Exhibit B**.

10  **REQUEST FOR ADMISSION NO. 62:**

11      Admit that GFI's use of "neo4j enterprise" in **Exhibit C** does not constitute nominative

12  fair use of the NEO4J® Mark.

13  **REQUEST FOR ADMISSION NO. 63:**

14      Admit that GFI's use of "neo4j enterprise" in **Exhibit C** infringes the NEO4J® Mark.

15  **REQUEST FOR ADMISSION NO. 64:**

16      Admit that **Exhibit D** attached hereto is a true and correct printout of the

17  README.asciidoc posted GFI's ONgDB source code repository located at www.github.com as it

18  existed on January 17, 2019.

19  **REQUEST FOR ADMISSION NO. 65:**

20      Admit that GFI used the NEO4J® Mark in **Exhibit D**.

21  **REQUEST FOR ADMISSION NO. 66:**

22      Admit that as of January 16, 2019, the README.asciidoc posted GFI's ONgDB source

23  code repository located at www.github.com stated that "Neo4j Enterprise consists of modules

24  from Neo4j Community Edition and modules licensed under AGPLv3 with the Commons Clause

25  in this repository, and other closed sourced components not present in this repository."

26  **REQUEST FOR ADMISSION NO. 67:**

27      Admit that as of January 16, 2019, the README.asciidoc posted GFI's ONgDB source

28  code repository located at www.github.com stated that "When packaged as a binary, Enterprise

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3571081.3                                                    - 10 -
PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

1  Edition includes additional closed-source components *not available in this repository* and

2  requires a commercial license from Neo4j Sweden AB or one of its affiliates."

3  **REQUEST FOR ADMISSION NO. 68:**

4      Admit that as of January 16, 2019, the README.asciidoc posted GFI's ONgDB source

5  code repository located at www.github.com stated "Neo4j: Graphs for Everyone."

6  **REQUEST FOR ADMISSION NO. 69:**

7      Admit that GFI did not have Neo4j, Inc.'s authorization to use the NEO4J® Mark in the

8  heading "Neo4j: Graphs for Everyone" in the README.asciidoc posted GFI's ONgDB source

9  code repository located at www.github.com.

10  **REQUEST FOR ADMISSION NO. 70:**

11      Admit that GFI's prior use the NEO4J® Mark in the heading "Neo4j: Graphs for

12  Everyone" in the README.asciidoc posted GFI's ONgDB source code repository located at

13  www.github.com did not constitute nominative fair use of the NEO4J® Mark.

14  **REQUEST FOR ADMISSION NO. 71:**

15      Admit that GFI's prior use the NEO4J® Mark in the heading "Neo4j: Graphs for

16  Everyone" in the README.asciidoc posted GFI's ONgDB source code repository located at

17  www.github.com was unlicensed.

18  **REQUEST FOR ADMISSION NO. 72:**

19      Admit that GFI's prior use the NEO4J® Mark in the heading "Neo4j: Graphs for

20  Everyone" in GFI's source code repository located at www.github.com infringed the NEO4J®

21  Mark.

22  **REQUEST FOR ADMISSION NO. 73:**

23      Admit that **Exhibit E** attached hereto is a true and correct printout of the

24  README.asciidoc posted GFI's ONgDB source code repository located at www.github.com as it

25  existed on September 25, 2019.

26  **REQUEST FOR ADMISSION NO. 74:**

27      Admit that GFI used the NEO4J® Mark in **Exhibit E**.

28  / / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3571081.3                                      - 11 -
PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

SER_3582

**REQUEST FOR ADMISSION NO. 75:**

Admit that as of September 25, 2019, the README.asciidoc posted GFI's ONgDB source code repository located at www.github.com stated "ONgDB – Neo4j Enterprise Fork: Graphs for Everyone."

**REQUEST FOR ADMISSION NO. 76:**

Admit that GFI did not have Neo4j, Inc.'s authorization to use the NEO4J® Mark in the heading "ONgDB – Neo4j Enterprise Fork: Graphs for Everyone" in GFI's source code repository located at www.github.com.

**REQUEST FOR ADMISSION NO. 77:**

Admit that GFI's use the NEO4J® Mark in the heading "ONgDB – Neo4j Enterprise Fork: Graphs for Everyone" in GFI's source code repository located at www.github.com did not constitute nominative fair use of the NEO4J® Mark.

**REQUEST FOR ADMISSION NO. 78:**

Admit that GFI's use the NEO4J® Mark in the heading "ONgDB – Neo4j Enterprise Fork: Graphs for Everyone" in the README.asciidoc posted GFI's ONgDB source code repository located at www.github.com was unlicensed.

**REQUEST FOR ADMISSION NO. 79:**

Admit that GFI's use the NEO4J® Mark in the heading "ONgDB – Neo4j Enterprise Fork: Graphs for Everyone" in the README.asciidoc posted GFI's ONgDB source code repository located at www.github.com infringed the NEO4J® Mark.

**REQUEST FOR ADMISSION NO. 80:**

Admit that prior to releasing ONgDB version 3.6, GFI did not use its own support documentation for ONgDB software.

**REQUEST FOR ADMISSION NO. 81:**

Admit that prior to releasing ONgDB version 3.6, GFI relied upon Neo4j, Inc.'s official documentation.

/ / /

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
842\3571081.3
- 12 -
PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD
SER_3583

**REQUEST FOR ADMISSION NO. 82:**

Admit that prior to releasing ONgDB version 3.6, GFI used hyperlinks on its website, www.graphfoundation.org, which redirected users to Neo4j, Inc.'s official documentation for Neo4j® software.

**REQUEST FOR ADMISSION NO. 83:**

Admit that prior to releasing ONgDB version 3.6, GFI used hyperlinks on its source code repository located at www.github.com, which redirected users to Neo4j, Inc.'s official documentation for Neo4j® software.

**REQUEST FOR ADMISSION NO. 84:**

Admit that as of September 24, 2019, GFI's README.asciidoc posted on GFI's ONgDB source code repository located at www.github.com contained a hyperlink, "Neo4j documentation," which redirected users to https://github.com/neo4j/neo4j-documentation.

**REQUEST FOR ADMISSION NO. 85:**

Admit that **Exhibit F** attached hereto is a true and correct printout of GFI's webpage for ONgDB version 3.4.9 as it existed on September 24, 2019.

**REQUEST FOR ADMISSION NO. 86:**

Admit that GFI used the NEO4J® Mark in the title of GFI's webpage for ONgDB version 3.4.9 attached hereto as **Exhibit F**.

**REQUEST FOR ADMISSION NO. 87:**

Admit that the hyperlink embedded in the phrase "the changelog" in **Exhibit F** redirected users to https://github.com/neo4j/neo4j/wiki/Neo4j-3.4-changelog.

**REQUEST FOR ADMISSION NO. 88:**

Admit that as of September 24, 2019, the phrase "Look for 3.4 Developer manual here" on GFI's webpage for ONgDB version 3.4.9 contained a hyperlink in the word "here" that redirected users to http://neo4j.com/docs/developer-manual/current/.

/ / /

/ / /

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3571081.3
- 13 -
PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

SER_3584

**REQUEST FOR ADMISSION NO. 89:**

Admit that as of September 24, 2019, the phrase "3.4 Operations manual here" on GFI's webpage for ONgDB version 3.4.9 contained a hyperlink in the word "here" that redirected users to http://neo4j.com/docs/operations-manual/current/.

**REQUEST FOR ADMISSION NO. 90:**

Admit that **Exhibit G** attached hereto is a true and correct printout of GFI's webpage for ONgDB version 3.4.11 as it existed on September 24, 2019.

**REQUEST FOR ADMISSION NO. 91:**

Admit that GFI used the NEO4J® Mark in the title of GFI's webpage for ONgDB version 3.4.11 attached hereto as **Exhibit G**.

**REQUEST FOR ADMISSION NO. 92:**

Admit that the hyperlink embedded in the phrase "the changelog" in **Exhibit G** redirected users to https://github.com/neo4j/neo4j/wiki/Neo4j-3.4-changelog.

**REQUEST FOR ADMISSION NO. 93:**

Admit that as of September 24, 2019, the phrase "Look for 3.4 Developer manual here" on GFI's webpage for ONgDB version 3.4.11 contained a hyperlink in the word "here" that redirected users to http://neo4j.com/docs/developer-manual/current/.

**REQUEST FOR ADMISSION NO. 94:**

Admit that as of September 24, 2019, the phrase "3.4 Operations manual here" on GFI's webpage for ONgDB version 3.4.11 contained a hyperlink in the word "here" that redirected users to http://neo4j.com/docs/operations-manual/current/.

**REQUEST FOR ADMISSION NO. 95:**

Admit that **Exhibit H** attached hereto is a true and correct printout of GFI's webpage for ONgDB version 3.4.12 as it existed on September 24, 2019.

**REQUEST FOR ADMISSION NO. 96:**

Admit that GFI used the NEO4J® Mark in the title of GFI's webpage for ONgDB version 3.4.12 attached hereto as **Exhibit H**.

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3571081.3                                                    - 14 -
PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

SER_3585

1  **REQUEST FOR ADMISSION NO. 97:**

2      Admit that the hyperlink embedded in the phrase "the changelog" in **Exhibit H** redirected

3  users to https://github.com/neo4j/neo4j/wiki/Neo4j-3.4-changelog.

4  **REQUEST FOR ADMISSION NO. 98:**

5      Admit that prior to September 25, 2019, GFI stated on its webpage for ONgDB version

6  3.4.12 "Look for 3.4 Developer manual here," which contained a hyperlink in the word "here"

7  that redirected users to http://neo4j.com/docs/developer-manual/current/.

8  **REQUEST FOR ADMISSION NO. 99:**

9      Admit that as of September 24, 2019, the phrase "Look for 3.4 Developer manual here"

10  on GFI's webpage for ONgDB version 3.4.12 contained a hyperlink in the word "here" that

11  redirected users to http://neo4j.com/docs/developer-manual/current/.

12  **REQUEST FOR ADMISSION NO. 100:**

13      Admit that as of September 24, 2019, the phrase "3.4 Operations manual here" on GFI's

14  webpage for ONgDB version 3.4.12 contained a hyperlink in the word "here" that redirected

15  users to http://neo4j.com/docs/operations-manual/current/.

16  **REQUEST FOR ADMISSION NO. 101:**

17      Admit that **Exhibit I** attached hereto is a true and correct printout of GFI's webpage for

18  ONgDB version 3.5.1 as it existed on September 24, 2019.

19  **REQUEST FOR ADMISSION NO. 102:**

20      Admit that GFI used the NEO4J® Mark in the title of GFI's webpage for ONgDB version

21  3.5.1 attached hereto as **Exhibit I**.

22  **REQUEST FOR ADMISSION NO. 103:**

23      Admit that the hyperlink embedded in the phrase "the changelog" in **Exhibit I** redirected

24  users to https://github.com/neo4j/neo4j/wiki/Neo4j-3.5-changelog.

25  **REQUEST FOR ADMISSION NO. 104:**

26      Admit that as of September 24, 2019, the phrase "Look for 3.5 Developer manual here"

27  on GFI's webpage for ONgDB version 3.5.1 contained a hyperlink in the word "here" that

28  redirected users to redirected users to https://neo4j.com/docs/operations-manual/3.5/.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3571081.3          - 15 -

PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

1  **REQUEST FOR ADMISSION NO. 105:**

2      Admit that **Exhibit J** attached hereto is a true and correct printout of GFI's webpage for

3  ONgDB version 3.5.3 as it existed on September 24, 2019.

4  **REQUEST FOR ADMISSION NO. 106:**

5      Admit that GFI used the NEO4J® Mark in the title of GFI's webpage for ONgDB version

6  3.5.3 attached hereto as **Exhibit J**.

7  **REQUEST FOR ADMISSION NO. 107:**

8      Admit that the hyperlink embedded in the phrase "the changelog" in **Exhibit J** redirected

9  users to https://github.com/neo4j/neo4j/wiki/Neo4j-3.5-changelog.

10  **REQUEST FOR ADMISSION NO. 108:**

11      Admit that as of September 24, 2019, the phrase "Look for 3.5 Developer manual here"

12  on GFI's webpage for ONgDB version 3.5.3 contained a hyperlink in the word "here" that

13  redirected users to redirected users to https://neo4j.com/docs/operations-manual/3.5/.

14  **REQUEST FOR ADMISSION NO. 109:**

15      Admit that **Exhibit A** attached hereto is a true and correct printout of GFI's webpage for

16  ONgDB version 3.5.4 as it existed on September 24, 2019.

17  **REQUEST FOR ADMISSION NO. 110:**

18      Admit that the hyperlink embedded in the phrase "the changelog" in **Exhibit A** redirected

19  users to https://github.com/neo4j/neo4j/wiki/Neo4j-3.5-changelog.

20  **REQUEST FOR ADMISSION NO. 111:**

21      Admit that as of September 24, 2019, the phrase "Look for 3.5 Developer manual here"

22  on GFI's webpage for ONgDB version 3.5.4 contained a hyperlink in the word "here" that

23  redirected users to redirected users to https://neo4j.com/docs/operations-manual/3.5/.

24  **REQUEST FOR ADMISSION NO. 112:**

25      Admit that prior to September 25, 2019, you did not obtain Neo4j, Inc.'s authorization to

26  use Neo4j, Inc.'s Developer Manuals for Neo4j® Software with ONgDB Software.

27  / / /

28  / / /

842\3571081.3         - 16 -
PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

1   **REQUEST FOR ADMISSION NO. 113:**

2       Admit that prior to September 25, 2019, you did not obtain Neo4j, Inc.'s authorization to

3   use Neo4j, Inc.'s Operations Manuals for Neo4j® Software with ONgDB Software.

4   **REQUEST FOR ADMISSION NO. 114:**

5       Admit that prior to September 25, 2019, you did not obtain Neo4j, Inc.'s authorization to

6   use Neo4j, Inc.'s change logs for Neo4j® Software.

7   **REQUEST FOR ADMISSION NO. 115:**

8       Admit that **Exhibit L** attached hereto is a true and correct printout of GFI's "ONgDB 3.4

9   Docs" webpage located at https://github.com/graphfoundation/ongdb/wiki/ONgDB-3.4-Docs as it

10  existed on August 12, 2020.

11  **REQUEST FOR ADMISSION NO. 116:**

12      Admit between April 9, 2020 and August 12, 2020 the hyperlink embedded in the phrase

13  "Developer Manual" in **Exhibit L** redirected users to https://neo4j.com/docs/developer-

14  manual/3.4/.

15  **REQUEST FOR ADMISSION NO. 117:**

16      Admit between April 9, 2020 and August 12, 2020 the hyperlink embedded in the phrase

17  "Operations Manual" in **Exhibit L** redirected users to https://neo4j.com/docs/operations-

18  manual/3.4/.

19  **REQUEST FOR ADMISSION NO. 118:**

20      Admit that **Exhibit M** attached hereto is a true and correct printout of GFI's "Docs"

21  webpage located at https://github.com/graphfoundation/ongdb/wiki/Docs as it existed on June 10,

22  2020.

23  **REQUEST FOR ADMISSION NO. 119:**

24      Admit between March 26, 2020 and June 10, 2020 the hyperlink embedded in the phrase

25  "ONgDB 3.5" in **Exhibit M** redirected users to https://neo4j.com/docs/operations-manual/3.5/.

26  **REQUEST FOR ADMISSION NO. 120:**

27      Admit between March 26, 2020 and June 10, 2020 the hyperlink embedded in the phrase

28  "ONgDB 3.4" in **Exhibit M** redirected users to https://neo4j.com/docs/operations-manual/3.4/.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3571081.3                                   - 17 -
PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

**SER_3588**

**REQUEST FOR ADMISSION NO. 121:**

Admit as of August 14, 2020, the hyperlink embedded in the phrase "ONgDB 3.5" on the webpage https://github.com/graphfoundation/ongdb/wiki/Docs redirected users to https://neo4j.com/docs/operations-manual/3.5/.

**REQUEST FOR ADMISSION NO. 122:**

Admit as of August 14, 2020, the hyperlink embedded in the phrase "ONgDB 3.4" on the webpage https://github.com/graphfoundation/ongdb/wiki/Docs redirected users to https://neo4j.com/docs/operations-manual/3.4/.

**REQUEST FOR ADMISSION NO. 123:**

Admit that GFI never authored a developer manual for ONgDB version 3.4.9.

**REQUEST FOR ADMISSION NO. 124:**

Admit that GFI never authored a developer manual for ONgDB version 3.4.11.

**REQUEST FOR ADMISSION NO. 125:**

Admit that GFI never authored a developer manual for ONgDB version 3.4.12.

**REQUEST FOR ADMISSION NO. 126:**

Admit that GFI has never authored a developer manual for any of version of ONgDB prior to its release of ONgDB version 3.6.

**REQUEST FOR ADMISSION NO. 127:**

Admit that prior to September 25, 2019, you did not obtain Neo4j, Inc.'s authorization to use Neo4j, Inc.'s then-current Operations Manual for Neo4j® Software with ONgDB software.

**REQUEST FOR ADMISSION NO. 128:**

Admit that you have never sought Neo4j, Inc.'s authorization to use "The Neo4j Operations Manual v3.4" with ONgDB software.

**REQUEST FOR ADMISSION NO. 129:**

Admit that you have never sought Neo4j, Inc.'s authorization to use "The Neo4j Operations Manual v3.5" with ONgDB software.

/ / /

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3571081.3                                                    - 18 -
PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

SER_3589

**REQUEST FOR ADMISSION NO. 130:**

Admit that GFI never authored an operations manual for ONgDB version 3.4.9.

**REQUEST FOR ADMISSION NO. 131:**

Admit that GFI never authored an operations manual for ONgDB version 3.4.11.

**REQUEST FOR ADMISSION NO. 132:**

Admit that GFI never authored an operations manual for ONgDB version 3.4.12.

**REQUEST FOR ADMISSION NO. 133:**

Admit that GFI never authored an operations manual for ONgDB version 3.5.1.

**REQUEST FOR ADMISSION NO. 134:**

Admit that GFI never authored an operations manual for ONgDB version 3.5.3.

**REQUEST FOR ADMISSION NO. 135:**

Admit that GFI never authored an operations manual for ONgDB version 3.5.4.

**REQUEST FOR ADMISSION NO. 136:**

Admit that GFI has never authored an operations manual for any of version of ONgDB prior to GFI's release of ONgDB version 3.6.

**REQUEST FOR ADMISSION NO. 137:**

Admit that **Exhibit K** attached hereto is a true and correct printout of the webpage located at https://www.graphfoundation.org/neo4j-is-open-core-now-what-ujah7ein5mis/ as it existed on September 24, 2019.

**REQUEST FOR ADMISSION NO. 138:**

Admit that GFI's used the NEO4J® Mark in **Exhibit K.**

**REQUEST FOR ADMISSION NO. 139:**

Admit that GFI's use of "neo4j" in all lower case in **Exhibit K** violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

**REQUEST FOR ADMISSION NO. 140:**

Admit that GFI's use of "neo4j" without a trademark registration symbol in **Exhibit K** violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3571081.3

- 19 -

PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

**REQUEST FOR ADMISSION NO. 141:**

Admit that GFI's use of "Neo4j" without a trademark registration symbol in **Exhibit K** violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B**.

**REQUEST FOR ADMISSION NO. 142:**

Admit that GFI's use of "neo4j" in all lower case in **Exhibit K** does not constitute nominative fair use of the NEO4J® Mark.

**REQUEST FOR ADMISSION NO. 143:**

Admit that GFI's use of "neo4j" in all lower case in **Exhibit K** infringes the NEO4J® Mark.

**REQUEST FOR ADMISSION NO. 144:**

Admit that GFI's use of "open source neo4j graph database" in all lower case in **Exhibit K** violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

**REQUEST FOR ADMISSION NO. 145:**

Admit that GFI's use of "open source neo4j graph database" in all lower case in **Exhibit K** does not constitute nominative fair use of the NEO4J® Mark.

**REQUEST FOR ADMISSION NO. 146:**

Admit that GFI's use of "open source neo4j graph database" in all lower case in **Exhibit K** infringes the NEO4J® Mark.

**REQUEST FOR ADMISSION NO. 147:**

Admit that ONgDB stands for "ONgDB's Neo4j Graph DB."

**REQUEST FOR ADMISSION NO. 148:**

Admit that ONgDB means "ONgDB's Neo4j Graph DB."

**REQUEST FOR ADMISSION NO. 149:**

Admit that **Exhibit N** attached hereto is a true and correct of a March 17, 2019 tweet you publicly posted on Twitter.

**REQUEST FOR ADMISSION NO. 150:**

Admit that GFI used the NEO4J® Mark as a hashtag in **Exhibit N**.

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3571081.3                                         - 20 -
PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

**REQUEST FOR ADMISSION NO. 151:**

Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit N** was not reasonably necessary to identify the ONgDB product.

**REQUEST FOR ADMISSION NO. 152:**

Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit N** was not reasonably necessary to promote the ONgDB product.

**REQUEST FOR ADMISSION NO. 153:**

Admit that GFI used the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit N** to promote ONgDB software.

**REQUEST FOR ADMISSION NO. 154:**

Admit that GFI used of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit N** to identify ONgDB software.

**REQUEST FOR ADMISSION NO. 155:**

Admit that GFI's use of #Neo4j in **Exhibit N** does not amount to nominative fair use of the NEO4J® Mark.

**REQUEST FOR ADMISSION NO. 156:**

Admit that GFI's use of #Neo4j in **Exhibit N** infringes the NEO4J® Mark.

**REQUEST FOR ADMISSION NO. 157:**

Admit that **Exhibit O** attached hereto is a true and correct of a March 21, 2019 tweet you publicly posted on Twitter.

**REQUEST FOR ADMISSION NO. 158:**

Admit that GFI used the NEO4J® Mark as a hashtag in **Exhibit O**.

**REQUEST FOR ADMISSION NO. 159:**

Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit O** was not reasonably necessary to identify the ONgDB product.

**REQUEST FOR ADMISSION NO. 160:**

Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit O** was not reasonably necessary to promote the ONgDB product.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3571081.3

- 21 -

PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

SER_3592

1  **REQUEST FOR ADMISSION NO. 161:**

2      Admit that GFI used the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit O** to promote

3  ONgDB software.

4  **REQUEST FOR ADMISSION NO. 162:**

5      Admit that GFI used of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit O** to

6  identify ONgDB software.

7  **REQUEST FOR ADMISSION NO. 163:**

8      Admit that GFI's use of #Neo4j in **Exhibit O** does not amount to nominative fair use of

9  the NEO4J® Mark.

10  **REQUEST FOR ADMISSION NO. 164:**

11      Admit that GFI's use of #Neo4j in **Exhibit O** infringes the NEO4J® Mark.

12  **REQUEST FOR ADMISSION NO. 165:**

13      Admit that **Exhibit P** attached hereto is a true and correct of a May 10, 2019 tweet you

14  publicly posted on Twitter.

15  **REQUEST FOR ADMISSION NO. 166:**

16      Admit that GFI used the NEO4J® Mark as a hashtag in **Exhibit P**.

17  **REQUEST FOR ADMISSION NO. 167:**

18      Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit P** was not

19  reasonably necessary to identify the ONgDB product.

20  **REQUEST FOR ADMISSION NO. 168:**

21      Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit P** was not

22  reasonably necessary to promote the ONgDB product.

23  **REQUEST FOR ADMISSION NO. 169:**

24      Admit that GFI used the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit P** to promote

25  ONgDB software.

26  **REQUEST FOR ADMISSION NO. 170:**

27      Admit that GFI used of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit P** to

28  identify ONgDB software.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3571081.3

- 22 -

PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

1  **REQUEST FOR ADMISSION NO. 171:**

2      Admit that GFI's use of #Neo4j in **Exhibit P** does not amount to nominative fair use of

3  the NEO4J® Mark.

4  **REQUEST FOR ADMISSION NO. 172:**

5      Admit that GFI's use of #Neo4j in **Exhibit P** infringes the NEO4J® Mark.

6  **REQUEST FOR ADMISSION NO. 173:**

7      Admit that **Exhibit Q** attached hereto is a true and correct of a November 27, 2019 tweet

8  you publicly posted on Twitter.

9  **REQUEST FOR ADMISSION NO. 174:**

10     Admit that GFI used the NEO4J® Mark as a hashtag in **Exhibit Q**.

11  **REQUEST FOR ADMISSION NO. 175:**

12     Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit Q** was not

13  reasonably necessary to identify the ONgDB product.

14  **REQUEST FOR ADMISSION NO. 176:**

15     Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit Q** was not

16  reasonably necessary to promote the ONgDB product.

17  **REQUEST FOR ADMISSION NO. 177:**

18     Admit that GFI used the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit Q** to promote

19  ONgDB software.

20  **REQUEST FOR ADMISSION NO. 178:**

21     Admit that GFI used of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit Q** to

22  identify ONgDB software.

23  **REQUEST FOR ADMISSION NO. 179:**

24     Admit that GFI's use of #Neo4j in **Exhibit Q** does not amount to nominative fair use of

25  the NEO4J® Mark.

26  **REQUEST FOR ADMISSION NO. 180:**

27     Admit that GFI's use of #Neo4j in **Exhibit Q** infringes the NEO4J® Mark.

28  / / /

842\3571081.3                                     - 23 -

1   **REQUEST FOR ADMISSION NO. 181:**

2       Admit that **Exhibit R** attached hereto is a true and correct of a January 18, 2020 tweet you

3   publicly posted on Twitter.

4   **REQUEST FOR ADMISSION NO. 182:**

5       Admit that GFI used the NEO4J® Mark as a hashtag in **Exhibit R**.

6   **REQUEST FOR ADMISSION NO. 183:**

7       Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit R** was not

8   reasonably necessary to identify the ONgDB product.

9   **REQUEST FOR ADMISSION NO. 184:**

10      Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit R** was not

11   reasonably necessary to promote the ONgDB product.

12   **REQUEST FOR ADMISSION NO. 185:**

13      Admit that GFI used the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit R** to promote

14   ONgDB software.

15   **REQUEST FOR ADMISSION NO. 186:**

16      Admit that GFI used of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit R** to

17   identify ONgDB software.

18   **REQUEST FOR ADMISSION NO. 187:**

19      Admit that **Exhibit S** attached hereto is a true and correct of a May 19, 2020 tweet you

20   publicly posted on Twitter.

21   **REQUEST FOR ADMISSION NO. 188:**

22      Admit that GFI used the NEO4J® Mark as a hashtag in **Exhibit S**.

23   **REQUEST FOR ADMISSION NO. 189:**

24      Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit S** was not

25   reasonably necessary to identify the ONgDB product.

26   / / /

27   / / /

28   / / /

842\3571081.3         - 24 -
PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

**SER_3595**

**REQUEST FOR ADMISSION NO. 190:**

Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit S** was not reasonably necessary to promote the ONgDB product.

**REQUEST FOR ADMISSION NO. 191:**

Admit that GFI used the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit S** to promote ONgDB software.

**REQUEST FOR ADMISSION NO. 192:**

Admit that GFI used of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit S** to identify ONgDB software.

**REQUEST FOR ADMISSION NO. 193:**

Admit that GFI's use of #Neo4j in **Exhibit S** does not amount to nominative fair use of the NEO4J® Mark.

**REQUEST FOR ADMISSION NO. 194:**

Admit that GFI's use of #Neo4j in **Exhibit S** infringes the NEO4J® Mark.

**REQUEST FOR ADMISSION NO. 195:**

Admit that **Exhibit T** is a printout of Neo4j, Inc.'s Trademark Guidelines as they existed on August 13, 2020.

**REQUEST FOR ADMISSION NO. 196:**

Admit that Neo4j, Inc.'s Trademark Guidelines in **Exhibit T** have been in effect since April 3, 2019.

**REQUEST FOR ADMISSION NO. 197:**

Admit that you are aware of Neo4j, Inc.'s Trademark Guidelines in **Exhibit T.**

**REQUEST FOR ADMISSION NO. 198:**

Admit that you do not adhere to Neo4j, Inc.'s Trademark Guidelines in **Exhibit T** in marketing ONgDB software.

/ / /

/ / /

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3571081.3

- 25 -

PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

SER_3596

**REQUEST FOR ADMISSION NO. 199:**

Admit that you do not adhere to Neo4j, Inc.'s Trademark Guidelines in **Exhibit T** in advertising ONgDB software.

Dated:  August 14, 2020

HOPKINS & CARLEY
A Law Corporation


By: _/s/ Jeffrey M. Ratinoff_
Jeffrey M. Ratinoff
Attorneys for Plaintiffs
NEO4J, INC. and NEO4J SWEDEN AB

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3571081.3

- 26 -

PLAINTIFF NEO4J INC.'S REQUEST FOR ADMISSION, SET ONE, TO DEFENDANT GRAPH FOUNDATION INC.
CASE NO. 5:19-CV-06226-EJD

SER_3597

# EXHIBIT A

SER_3598

# The Graph Foundation

Open Graph Technology for Public Good

<div style="text-align:right"><strong>Menu</strong></div>

# Open Native Graph DB (ONgDB)

**The free and open source Neo4j Enterprise project**

Open Native Graph DB (ONgDB) is a non-restrictive fork of Neo4j, the world's leading Graph Database. It is a high performance graph store with all the features expected of a mature and robust database, like a friendly query language, ACID transactions and high availability clustering. The programmer works with a flexible network structure of nodes and relationships rather than static tables — yet enjoys all the benefits of enterprise-quality database. For many applications, ONgDB offers orders of magnitude performance benefits compared to relational DBs.

## Licensing

ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number.

## Latest Release

ONgDB **3.5.8** is expected to be out shortly. We skipped a few versions to allow Neo4j to fix some bugs in previous versions.

## ONgDB 3.5.4

**10 May 2019:** Release Notes | Source Code

| Mac/Linux | ongdb-enterprise-3.5.4-unix.tar.gz |
|---|---|
| Windows 64 bit | ongdb-enterprise-3.5.4-windows.zip |
| Windows 32 bit | ongdb-enterprise-3.5.4-windows.zip |
| Docker Image | ONgDB 3.5.4 Docker Hub |

N4J-GFI_000092

SER_3599

```
docker run \
        --publish=7474:7474 --publish=7687:7687 \
        --volume=$HOME/neo4j/data:/data \
        graphfoundation/ongdb:3.5


Go to:  http://localhost:7474
```

## Recent Releases

- ONgDB 3.5.3
- ONgDB 3.5.1
- ONgDB 3.4.12
- ONgDB 3.4.11

**Pages**

**Accessibility**

**Get Involved**

**Graph Community**

**Mission**

**Projects**

- Heimdall
- Open Native Graph DB (ONgDB)
  - ONgDB Releases
    - ONgDB 3.4.11
    - ONgDB 3.4.12
    - ONgDB 3.4.9
    - ONgDB 3.5.1
    - ONgDB 3.5.3
    - ONgDB 3.5.4

N4J-GFI_000093

SER_3600

**Support TGF**
- Donations
- Sponsorship
- Thanks

**The Graph Foundation**
- Public Records
  - Articles of Incorporation
  - Code of Regulations

## Site Search

Search …

Search

## Support GF Today!



Copyright © 2019 Graph Foundation, Inc.

N4J-GFI_000094

SER_3601

# EXHIBIT B

Skip to content

Company ▾    Support    Contact Us    🔍

neo4j

PRODUCTS    SOLUTIONS    CUSTOMERS    PARTNERS    RESOURCES

▾    ▾    ▾    DEVELOPERS    DOWNLOAD NEO4J

# Trademark Guidelines

## Legal Notices

Terms
California Privacy Rights
Privacy Policy
Trademark Policy

This document outlines the policy for allowable uses of trademarks owned by Neo4j, Inc. and its subsidiaries ("Neo4j") by other parties.

Neo4j owns all Neo4j-related trademarks, service marks, and logos on behalf of our communities and the names of all Neo4j® projects are trademarks of Neo4j.

The role of trademarks is to provide assurance about the quality of the products or services with which the trademark is associated. Neo4j has established this Policy to encourage others to make accurate, non-confusing use of the Neo4j trademarks, while also ensuring that those trademarks maintain their distinctiveness and strength as reliable indicators of the source and quality of Neo4j products and services. Although some Neo4j projects may be available under free and open licenses, those licenses cover copyright only and do not include any express or implied right to use our trademarks. Neo4j does not allow third parties to use its trademarks without a written agreement or express permission. Thus, Neo4j projects that are available under open source licenses may be copied, modified, or sold by third parties, but they cannot be branded or marketed with Neo4j trademarks in the absence of a trademark license.

While open-source licenses allow modification of copyrighted software and distribution in original or modified form, such distribution could be misleading if distributed under the same name.  This could cause confusion among consumers of the software as to source. They may mistakenly believe they are receiving software that is produced or supported by Neo4j.  This Policy describes the circumstances under which you may use our trademarks, regardless of the type of license you may have from Neo4j.  In this Policy we are not trying to limit the lawful use of our trademarks, but rather describe for you what we consider the parameters of lawful use to be. Trademark law can be ambiguous, so we hope to provide enough clarity for you to understand whether we will consider your use licensed or non-infringing.

Neo4j® software, which is created and/or distributed by Neo4j, is the software in the exact form that it is distributed by Neo4j without modification of any kind. To the extent any authorized modifications are made to the software, such modified software should no longer bear the Neo4j trademarks. The public has a right to know when it is receiving a genuine Neo4j® product that is quality assured by Neo4j.

SER_3603

The sections that follow describe what trademarks are covered by this Policy, as well as uses of the trademarks that are allowed without additional permission from us. Any use that does not comply with this Policy or for which we have not separately provided written permission is not a use that we have approved, so you must decide for yourself whether the use is nevertheless lawful.

## Our Commitment to Open Source Principles

We want to encourage and facilitate the use of our open source software by the community, but do so in a way that still ensures that the Neo4j trademarks are meaningful as a source and quality indicator for our software and the associated goods and services and continue to embody the high reputation of the software and the community associated with it. This Policy therefore tries to strike the proper balance between: 1) our need to ensure that our trademarks remain reliable indicators of the qualities that they are meant to preserve and 2) our community members' desire to be full participants in Neo4j® projects.

## Trademarks Subject to the Guidelines

### Our Trademarks

This Policy covers the following non-exhaustive list of our trademarks:

1. Our word trademarks and service marks (the "Word Marks"):
   Neo4j®
   Cypher®
   Neo4j® Bloom™
   Neo4j® Desktop™
   Neo Technology®



2. Our logos (the "Logos")



3. The unique visual styling of our website and elements used in or otherwise related to the products and services we offer (the "Trade Dress"). See our Style Guide for further information.

This Policy encompasses all trademarks and service marks, whether Word Marks, Logos or Trade Dress, which are collectively referred to as the "Marks." Some Marks may not be registered, but registration is not necessarily required for ownership of trademarks. This Policy covers our Marks whether they are registered or not.

## Universal Considerations for All Uses

The following guidelines show proper (and improper) use of Marks. Any use of the Marks must be licensed and comply with these guidelines. Whenever you use one of the Marks, you must always do so in a way that does not mislead anyone, either directly or by omission, about exactly what they are getting and from whom. For example, you cannot say you are distributing the Neo4j® software when you're distributing a modified version

SER_3604

of it, because people would be confused when they are not getting the same features and functionality they would get if they downloaded the software directly from us. You also cannot distribute Neo4j® software using the Marks if you do not have a license from us, because that would imply that your distribution comes from or is supported by Neo4j. You cannot use our Marks on your website in a way that suggests that your website is an official website or that we endorse your website, unless permitted in a written agreement with us. You can, though, say you like the Neo4j® software, say that you participate in the Neo4j® community, or refer to Neo4j® products and services.

This fundamental requirement, that it is always clear to people what they are getting and from whom, is reflected throughout this Policy. It should also serve as your guide if you are not sure about how you are using the Marks.

In addition:
You may not use the Marks in association with the use or distribution of software if you are also not in compliance with the copyright license for the software.

You may not use or register, in whole or in part, the Marks as part of your own trademark, service mark, domain name, company name, trade name, product name or service name.

Provided that you have obtained a license from Neo4j, you can use the Word Marks in book and article titles, and the Logo in illustrations within the document, as long as the use does not suggest that we have published, endorse, or agree with your work.

Trademark law does not allow your use of names or trademarks that are too similar to ours. You therefore may not use an obvious variation of any of our Marks or any phonetic equivalent, foreign language equivalent, takeoff, or abbreviation for a similar or compatible product or service. This includes combinations or integrations of all or portions of the Marks in a way that the public may think of the use as a new mark (e.g. SuperNeo4j, or Neo5k).

You agree that you will not acquire any rights in the Marks and that any goodwill generated by your use of the Marks inures solely to our benefit.

## Proper Use of the Marks

These rules hold true for all trademarks, not just ours, so you should follow them for our Marks as well as anyone else's.

<u>Always use the Marks in their Exact Form and Distinguishable from Other Text</u>. Always use the Word Marks in a manner distinguished from surrounding text, with initial capital letters, and in the exact form with the correct spelling (neither abbreviated, hyphenated, or combined with any other word or words).

|             CORRECT             |             INCORRECT             |
|---------------------------------|-----------------------------------|
| Neo4j®                          | NEO4J<br>Neo-4j<br>neo4j<br>n4j<br>Neo |

<u>Use Marks as Proper Adjectives Followed by a Generic Term.</u> Trademarks should be used as adjectives followed by a generic modifier, and not as nouns or verbs. Trademarks are products or services, never actions. Do not use "a" or "the" to refer to an instance of the Marks. For example:

|             CORRECT             |             INCORRECT             |
|---------------------------------|-----------------------------------|

SER_3605

| CORRECT | INCORRECT |
|---|---|
| The Neo4j® graph platform is widely used in many industries. | Neo4j® is widely used. |
| I was able to quickly realize graph epiphanies with Neo4j® Bloom™ visualization software. | We use the Neo4j. |
| I downloaded the Neo4j® database from neo4j.com. | I use Cypher. |
| Cypher® query language | I load data into and out of Neo4j. |

<u>Do Not Use Marks in the Possessive Form.</u> Because trademarks are not nouns, they should not be used in the possessive from. For example:

| CORRECT | INCORRECT |
|---|---|
| The Neo4j® graph database software presents and stores data natively as a graph. | Neo4j's storage presents and stores data natively as a graph. |

<u>Do Not Use Marks in the Plural Form.</u> Because trademarks are not nouns, they should not be used in the plural form. For example:

| CORRECT | INCORRECT |
|---|---|
| The Neo4j® platform allows multiple instances of the Neo4j database software to form a single highly-available cluster. | High-availability clustering allows a cluster of instances to be formed using multiple Neo4js. |

<u>Do Not Use Marks to Suggest Endorsement by Neo4j.</u>

| CORRECT | INCORRECT |
|---|---|
| graph database software | "Open Neo4j" |
| | XYZ ENTERPRISE 3.4.9 (FREE AND OPEN UNRESTRICTED NEO4J ENTERPRISE FORK) |

<u>Use of Logos</u>

You may not change any Logo except to scale it proportionally. This means you may not add decorative elements, change the colors, change the proportions, distort it, add elements, or combine it with other logos. The logo may only be used displaying the exact colors shown in our Style Guide.

<u>Mark Attribution and Notices</u>

The first or most prominent mention of a Mark on a webpage, document, packaging, or documentation should be accompanied by a symbol indicating whether the mark is a registered trademark ("®") or an unregistered trademark ("™"). Also, if you are using our Marks for uses for which we are granting a separate license, please put following notice at the foot of the page where you have used the Mark (or, if in a book, on the credits page), on any packaging or labeling, and on advertising or marketing materials: "Neo4j is a trademark or registered trademark of Neo4j, Inc. or its subsidiaries in the United States and/or other countries."

<u>Possible Infringement</u>

If you are aware of any confusing use or misuse of the Marks in any way, we would appreciate you bringing this to our attention. Please contact us at webinfo@neo4j.com so that we can investigate it further.

SER_3606

Updates

Neo4j reserves the right to modify or update this Policy at any time. You should review this Policy from time to time so that you will be aware of any modifications or updates as they will apply as soon as they as posted on this page.

Further Information

Neo4j has tried to make this Trademark Policy as comprehensive and understandable as possible. If you have any questions about this Policy, would like to speak with us about the use of our Marks in ways not described in the Policy, or see any abuse of our Marks, please contact us.

*Updated April 3, 2019*

- *PRODUCTS*
- *SOLUTIONS*
- *PARTNERS*

- *CUSTOMERS*
- *LEARN*
- *DEVELOPERS*

- *Why Graph Databases?*
- *Graph Databases vs RDBMS*
- *What's New in Neo4j*
- *Graphdatabases.com*

- *Company*
- *News*
- *Awards*
- *Careers*
- *Staff*

    

© 2019 Neo4j, Inc.
*Terms* | *Privacy* | *Sitemap*

*Neo4j®, Neo Technology® and Cypher®*
*are registered trademarks*
*of Neo4j, Inc.*

**Contact Us →**

*US: 1-855-636-4532*
*Sweden +46 171 480 113*
*UK: +44 20 3868 3223*
*France: +33 (0) 8 05 08 03 44*
*Germany: +49 (0)89 26204 6300*

*Contact Sales: 1.855.636.4532* *Email a graph expert*

**SER_3607**

# EXHIBIT C

SER_3608



# The Graph Foundation

Open Graph Technology for Public Good

**Menu**

# ONgDB (Open Native Graph DB)

| 🌐 Downloads | 10K+ | ⬤ Star | 121 | 🐦 Pull | 154K+ |
|---|---|---|---|---|---|

ONgDB is a fork of the neo4j enterprise project that continues development of neo4j enterprise as a fully open source project after Neo4j Inc's Open Core Shift that suspended development of enterprise as an open source project and removed the open source code.

ONgDB is a high performance, native graph store with everything you would expect from an enterprise-ready database, including high availability clustering, ACID transactions, and uses the intuitive, pattern-centric open cypher query language. Developers use graph theory-based structures that we call nodes and relationships instead of rows and columns. For many use cases, ONgDB will provide orders of magnitude performance benefits compared to non-native graph, relational and NoSQL databases.

## Open Source License

ONgDB distributions are licensed under AGPLv3 as a free and open source alternative to currently available proprietary native graph offerings such as Neo4j Enterprise Edition.

## Current Release

### ONgDB 3.6.0.RC1

**2 May 2020:** **Release Notes** | **Source Code** | **Documentation**

| Mac/Linux | ongdb-enterprise-3.6.0.RC1-unix.tar.gz |
|---|---|
| Windows 64 bit | ongdb-enterprise-3.6.0.RC1-windows.zip |
| Windows 32 bit | ongdb-enterprise-3.6.0.RC1-windows.zip |
| Docker Image | ONgDB 3.6.0.RC1 Docker Hub |

SER_3609



```
docker run \
    --publish=7474:7474 --publish=7687:7687 \
    --volume=$HOME/ongdb/data:/data \
    graphfoundation/ongdb:3.6
```

Go to: http://localhost:7474

## Latest Stable Release

## ONgDB 3.5.17

**9 April 2020: Release Notes | Source Code**

| Mac/Linux | ongdb-enterprise-3.5.17-unix.tar.gz |
|---|---|
| Windows 64 bit | ongdb-enterprise-3.5.17-windows.zip |
| Windows 32 bit | ongdb-enterprise-3.5.17-windows.zip |
| Docker Image | ONgDB 3.5.17 Docker Hub<br><br>```docker run \    --publish=7474:7474 --publish=7687:7687 \    --volume=$HOME/ongdb/data:/data \    graphfoundation/ongdb:3.5```<br><br>Go to: http://localhost:7474 |

## Previous Releases

SER_3610

- 3.5.16
- 3.5.15
- 3.5.14
- 3.4.17
- 3.4.15

Not seeing the perfect release? Browse all ONgDB Releases for the full list of supported releases.

# Interested in Contributing to ONgDB Development?

There are many ways to contribute to the exciting development of the worlds most powerful open source graph database. For steps on how to get started and joining the community Slack, head over to Get Involved to learn more.

# Looking for ONgDB Build Results and Distributions?

The Graph Foundation Build Server will build and make distributions available for git branches on active projects. If you would like a distribution built with your modification, follow the steps for committers and submit a Pull Request with your contribution.

# Interested in supporting our mission?

Our mission helps improve our world through the open development of graph technology. Learn more about our mission and how you can support today.

**Pages**

**Accessibility**

**Get Involved**

**Graph Community**

**Mission**

**Projects**

- **Heimdall**
- **ONgDB (Open Native Graph DB)**
  - **ONgDB Releases**

SER_3611

6/10/2020      Case 5:18-cv-07182-EJD Document 984-1 Entered 12/11/20 Page 1056 of 1198

- ONgDB 3.4.11
- ONgDB 3.4.12
- ONgDB 3.4.15
- ONgDB 3.4.17
- ONgDB 3.4.9
- ONgDB 3.5.1
- ONgDB 3.5.11
- ONgDB 3.5.12
- ONgDB 3.5.14
- ONgDB 3.5.15
- ONgDB 3.5.16
- ONgDB 3.5.17
- ONgDB 3.5.3
- ONgDB 3.5.4
- ONgDB 3.6.0.M1
- ONgDB 3.6.0.M2
- ONgDB 3.6.0.RC1

**Support TGF**

- Donations
- Sponsorship
- Thanks

**The Graph Foundation**

- Public Records
  - Articles of Incorporation
  - Code of Regulations

## Site Search

Search …

**Search**

## Support GF Today!

SER_3612

6/10/2020 Case 5:18-cv-07182-EJD-DBDocument 193-1 Filed 12/11/20 Graph Page 1057 of 1198



Copyright © 2020 Graph Foundation, Inc.

SER_3613

# EXHIBIT D

SER_3614

8/13/2020



graphfoundation / **ongdb**

ONgDB (Open Native Graph DB) - Neo4j fork with enterprise code base. ONgDB integrates Neo4j Open Core commits.

🔗 www.graphfoundation.org/projects/ongdb/

⚖ AGPL-3.0 License

⭐ **140** stars      ⑂ **28** forks

| ☆ Star | ⊙ Watch |
|---|---|

‹› Code    ⊘ Issues **2**    ⇄ Pull requests **1**    ⊙ Actions    ▦ Projects    📖 Wiki    ⊙ Security    ⬓ Insights

⑂ d470ffd518 ▾                                                      Go to file

jmsuhy and **bradnussbaum** Updated the copyright headers.   ⋯      on Jan 17, 2019   ⊙ **60,031**

View code

README.asciidoc

# Neo4j: Graphs for Everyone

Neo4j is the world's leading Graph Database. It is a high performance graph store with all the features expected of a mature and robust database, like a friendly query language and ACID transactions. The programmer works with a flexible network structure of nodes and relationships rather than static tables — yet enjoys all the benefits of enterprise-quality database. For many applications, Neo4j offers orders of magnitude performance benefits compared to relational DBs.

Learn more on the Neo4j website.

SER_3615

## Using Neo4j

Neo4j is available both as a standalone server, or an embeddable component. You can download or try online.

## Extending Neo4j

We encourage experimentation with Neo4j. You can build extensions to Neo4j, develop library or drivers atop the product, or make contributions directly to the product core. You'll need to sign a Contributor License Agreement in order for us to accept your patches.

| Note | This GitHub repository contains mixed GPL and AGPL code. Our Community edition (in the community/ directory) is GPLv3. Our Enterprise edition (enterprise/) is differently licensed under the AGPLv3. |
| --- | --- |

## Dependencies

Neo4j is built using Apache Maven version 3.3 and a recent version of supported VM. Bash and Make are also required. Note that maven needs more memory than the standard configuration, this can be achieved with `export MAVEN_OPTS="-Xmx512m"`.

OS X users need to have Homebrew installed.

### With brew on OS X

```
brew install maven
```

Please note that we do not support building Debian packages on OS X.

### With apt-get on Ubuntu

```
apt install maven openjdk-8-jdk
```

SER_3616

On top of that, to build Debian packages and Neo4j Desktop:

```
apt install debhelper devscripts dos2unix dpkg make xmlstarlet
# You will need a license for install4j, which is only needed for Neo4j Desktop
curl -O http://download-keycdn.ej-technologies.com/install4j/install4j_linux_6_1_4.deb
dpkg -i install4j_linux_6_1_4.deb
```

## Building Neo4j

Before you start running the unit and integration tests in the Neo4j Maven project on a Linux-like system, you should ensure your limit on open files is set to a reasonable value. You can test it with `ulimit -n`. We recommend you have a limit of at least 40K.

- A plain `mvn clean install` will only build the individual jar files.

- Test execution is, of course, part of the build.

- In case you just want the jars, without running tests, this is for you: `mvn clean install -DskipTests`.

- To build product packages, do `export PATH="bin:$PATH" && make clean all` in the packaging directory after building artifacts with Maven.

- To build the documentation see the [Neo4j documentation](#).

- If you are running into problems building on Windows you can try building Neo4j in a Ubuntu virtual machine.

- You may need to increase the memory available to Maven: `export MAVEN_OPTS="-Xmx512m"`.

## Running Neo4j

After running a `mvn clean install` cd into `packaging/standalone/target` and extract the version you want, then

SER_3617

```
bin/neo4j start
```

in the extracted folder to start Neo4j on `localhost:7474`. On Windows you want to run

```
bin\neo4j start
```

instead.

Or, if you are not interested in the tarballs and just want to run Neo4j you can instead run a `mvn clean install -DminimalBuild` and then cd into `community/server` and run

```
mvn clean compile exec:java
```

to start Neo4j.

## Licensing

Neo4j Community Edition is an open source product licensed under GPLv3.

Neo4j Enterprise Edition expands the functionality of Community Edition with Enterprise-grade features.

Neo4j Enterprise consists of modules from Neo4j Community Edition and modules licensed under AGPLv3 with the Commons Clause in this repository, and other closed source components not present in this repository.

When packaged as a binary, Enterprise Edition includes additional closed-source components *not available in this repository* and requires a commercial license from Neo4j Sweden AB or one of its affiliates.

**Releases** 293

SER_3618

Case 5:18-cv-07182-EJD Document 98-1 Filed 12/11/20 Page 1003 of 1198

8/13/2020

 3.5.19 `Latest`

yesterday

+ 292 releases

## Contributors  182



+ 171 contributors

## Languages

● Java 81.4%  ● Scala 17.6%  ● PowerShell 0.3%  ● Gherkin 0.3%  ● Shell 0.2%  ● Roff 0.2%

SER_3619

# EXHIBIT E



graphfoundation / ongdb

ONgDB (Open Native Graph DB) - Neo4j fork with enterprise code base. ONgDB keeps in sync with the Neo4j github repo.
https://www.graphfoundation.org/proje…

| 61,025 commits | 26 branches | 278 releases | 177 contributors | AGPL-3.0 |

Branch: 3.5 ▾    New pull request                                                    Find File    Clone or download ▾

bradnussbaum Merge remote-tracking branch 'neo4j/3.5' into 3.5                    Latest commit 4b160f7 9 hours ago

| .github/ISSUE_TEMPLATE | Remove custom template. | 4 months ago |
| .mvn | Add the maven-profiler extension | 3 years ago |
| build-resources | 3.5.12 | 9 hours ago |
| build | Added build and intellij codestyle file for developers of ONgDB who u… | 9 months ago |
| community | Merge remote-tracking branch 'neo4j/3.5' into 3.5 | 9 hours ago |
| enterprise | 3.5.12 | 9 hours ago |
| integrationtests | 3.5.12 | 9 hours ago |
| packaging | Merge remote-tracking branch 'neo4j/3.5' into 3.5 | 9 hours ago |
| stresstests | 3.5.12 | 9 hours ago |
| tools | 3.5.12 | 9 hours ago |
| .gitignore | Shade ASM to avoid conflicts in embedded deployments | 2 years ago |
| .scalafmt.conf | initial scala auto-formatting of util module | 2 years ago |
| CONTRIBUTING.md | Change some more http to https | 3 years ago |
| LICENSE.txt | Updated the LICENSE.txt file to be pure AGPL as to not violate the fs… | 7 months ago |
| README.asciidoc | Updated documentation to reference jdkman usage for building distribu… | last month |
| pom.xml | 3.5.12 | 9 hours ago |

README.asciidoc

# ONgDB - Neo4j Enterprise Fork: Graphs for Everyone

Neo4j is the world's leading Graph Database. It is a high performance graph store with all the features expected of a mature and robust database, like a friendly query language and ACID transactions. The programmer works with a flexible network structure of nodes and relationships rather than static tables — yet enjoys all the benefits of enterprise-quality database. For many applications, Neo4j offers orders of magnitude performance benefits compared to relational DBs.

Learn more on the Neo4j website.

Learn more about ONgDB at Graph Foundation website

## Using ONgDB & Neo4j

Neo4j is available both as a standalone server, or an embeddable component. You can download or try Neo4j online.

## Extending ONgDB & Neo4j

N4J-GFI_000297

SER_3621

... cloud graph tooling. This way all of your ONgDB Documentation stays in sync with the…

We encourage experimentation with ONgDB & Neo4j. You can build extensions to ONgDB & Neo4j, develop library or drivers atop the product, or make contributions directly to the product core. You'll need to sign a Contributor License Agreement in order for us to accept your patches.

| Note | This GitHub repository contains mixed GPL and AGPL code. Our Community edition (in the community/ directory) is GPLv3. The Enterprise edition (enterprise/) is licensed under the AGPLv3. |
| --- | --- |

## Dependencies

Neo4j is built using Apache Maven version 3.3 and a recent version of supported VM. Bash and Make are also required. Note that maven needs more memory than the standard configuration, this can be achieved with `export MAVEN_OPTS="-Xmx512m"`.

OS X users need to have Homebrew installed.

### With brew on OS X

```
brew install maven
```

Please note that we do not support building Debian packages on OS X.

### With apt-get on Ubuntu

### With SDKMan

Building Neo4j/ONgDB can be tricky with other JDKs such as open JDK. Currently Oracle 8 JDK works well, as we test other jdks we will update this documentation.

https://sdkman.io/

sdk use java oracle-8-221

```
apt install maven openjdk-8-jdk
```

On top of that, to build Debian packages and Neo4j Desktop:

```
apt install debhelper devscripts dos2unix dpkg make xmlstarlet
# You will need a license for install4j, which is only needed for Neo4j Desktop
curl -O http://download-keycdn.ej-technologies.com/install4j/install4j_linux_6_1_4.deb
dpkg -i install4j_linux_6_1_4.deb
```

## Building ONgDB

Before you start running the unit and integration tests in the Neo4j Maven project on a Linux-like system, you should ensure your limit on open files is set to a reasonable value. You can test it with `ulimit -n`. We recommend you have a limit of at least 40K.

- A plain `mvn clean install` will only build the individual jar files.
- Test execution is, of course, part of the build.
- In case you just want the jars, without running tests, this is for you: `mvn clean install -DskipTests`.
- To build product packages, do `export PATH="bin:$PATH" && make clean all` in the packaging directory after building artifacts with Maven.
- To build the documentation see the Neo4j documentation.

N4J-GFI_000298

SER_3622

- If you are running into problems building on Windows you can try building Neo4j in a Ubuntu virtual machine.
- You may need to increase the memory available to Maven: `export MAVEN_OPTS="-Xmx512m"` .

## Running ONgDB & Neo4j

After running a `mvn clean install` cd into `packaging/standalone/target` and extract the version you want, then

```
bin/neo4j start
```

in the extracted folder to start Neo4j on `localhost:7474` . On Windows you want to run

```
bin\neo4j start
```

instead.

Or, if you are not interested in the tarballs and just want to run Neo4j you can instead run a `mvn clean install -DminimalBuild` and then cd into `community/server` and run

```
mvn clean compile exec:java
```

to start Neo4j.

## Licensing

ONgDB & Neo4j Community Edition is an open source product licensed under GPLv3.

ONgDB & Neo4j Enterprise Edition expands the functionality of Community Edition with Enterprise-grade features.

ONgDB & Neo4j Enterprise consists of modules from Neo4j Community Edition and modules licensed under AGPLv3 in this repository.

N4J-GFI_000299

SER_3623

# EXHIBIT F

SER_3624

# The Graph Foundation

Open Graph Technology for Public Good

Menu

# ONgDB 3.4.9

## RELEASE DATE: 14 OCTOBER 2018

ONgDB 3.4.9 is a maintenance release with an important security fix and some fixes.

| Mac/Linux | ongdb-enterprise-3.4.9-unix.tar.gz |
| Windows 64 bit | ongdb-enterprise-3.4.9-windows.zip |
| Windows 32 bit | ongdb-enterprise-3.4.9-windows.zip |
| Docker Image | ONgDB 3.4.9 Docker Hub |

For the Docker Image:

```
docker run \
        --publish=7474:7474 --publish=7687:7687 \
        --volume=$HOME/neo4j/data:/data \
        graphfoundation/ongdb-enterprise:3.4.9

Go to:  http://localhost:7474
```

## Security Update

*ONgdB 3.4.x LDAP Security Vulnerability when using StartTLS and System Account*

We have very recently discovered a bug that results in a security vulnerability in ONgDB 3.4 versions that use LDAP authentication with StartTLS and use a System Account for authentication. The issue was reported in GitHub issue 12047.

N4J-GFI_000066

SER_3625

We have fixed this issue in ONgDB 3.4.9, which we advise you to upgrade to as soon as possible.

*Scope*: This affects all ONgDB 3.4.x versions that use LDAP for authentication, and have configured to use StartTLS (dbms.security.ldap.use_starttls=true) and are using System Account (dbms.security.ldap.authorization.use_system_account=true). Note, that both of these settings are false by default, so only those who have explicitly set these are affected. Users of LDAPS are not affected. Earlier versions of ONgDB are also not affected.

*Workaround*: It's possible to work around the issue without upgrading the software. To do this, comment out the "use StartTLS" configuration parameter in the ONgDB.conf file on all ONgDB 3.4.x servers in your cluster and restart each instance for this to take effect. This can be done in a rolling fashion without downtime. Later, once you are able to upgrade to 3.4.9, upgrade to that version (in a rolling fashion if in a clustered environment), uncomment the configuration parameter to enable StartTLS, and restart the database.

## Other Fixes and Improvements

- Incremental online backup now leaves the resulting backed up store in a fully recovered state. This fixes problems with seeding a Causal Cluster with a store from an incremental online backup.
- Cypher fix for `ORDER BY + LIMIT 0` when using slotted runtime
- Browser now correctly handles `:queries` in clustered environments when not all members could be reached

## Detailed Changes and Docs

For the complete list of all changes, please see the changelog. Look for 3.4 Developer manual here, and 3.4 Operations manual here.

## Pages

**Accessibility**

**Get Involved**

**Graph Community**

**Mission**

**Projects**

　○ **Heimdall**

　○ **Open Native Graph DB (ONgDB)**

N4J-GFI_000067

SER_3626

- ONgDB Releases
  - **ONgDB 3.4.11**
  - **ONgDB 3.4.12**
  - **ONgDB 3.4.9**
  - **ONgDB 3.5.1**
  - **ONgDB 3.5.3**
  - **ONgDB 3.5.4**

**Support TGF**
- Donations
- Sponsorship
- Thanks

**The Graph Foundation**
- Public Records
  - Articles of Incorporation
  - Code of Regulations

# Site Search

Search …

**Search**

# Support GF Today!

Copyright © 2019 Graph Foundation, Inc.

N4J-GFI_000068

SER_3627

# EXHIBIT G

SER_3628

# The Graph Foundation

Open Graph Technology for Public Good

Menu

# ONgDB 3.4.11

## RELEASE DATE: 17 DECEMBER 2018

ONgDB 3.4.11 is a maintenance release with many important improvements and fixes.

| Mac/Linux | ongdb-enterprise-3.4.11-unix.tar.gz |
|---|---|
| Windows 64 bit | ongdb-enterprise-3.4.11-windows.zip |
| Windows 32 bit | ongdb-enterprise-3.4.11-windows.zip |
| Docker Image | ONgDB 3.4.11 Docker Hub <br><br> ```docker run \      --publish=7474:7474 --publish=7687:7687 \      --volume=$HOME/neo4j/data:/data \      graphfoundation/ongdb:3.4.11    Go to:  http://localhost:7474``` |

## Highlights

- Fix count query returning no rows on entity inconsistency
- Removes explicit ONgDB-admin import db existence check
- Fix VM pause monitor logging

## Detailed Changes and Docs

N4J-GFI_000069

SER_3629

For the complete list of all changes, please see the changelog. Look for 3.4 Developer manual here, and 3.4 Operations manual here.

## Pages

**Accessibility**

**Get Involved**

**Graph Community**

**Mission**

**Projects**

- **Heimdall**
- **Open Native Graph DB (ONgDB)**
  - **ONgDB Releases**
    - **ONgDB 3.4.11**
    - **ONgDB 3.4.12**
    - **ONgDB 3.4.9**
    - **ONgDB 3.5.1**
    - **ONgDB 3.5.3**
    - **ONgDB 3.5.4**

**Support TGF**

- **Donations**
- **Sponsorship**
- **Thanks**

**The Graph Foundation**

- **Public Records**
  - **Articles of Incorporation**
  - **Code of Regulations**

## Site Search

Search …

N4J-GFI_000070

SER_3630



Copyright © 2019 Graph Foundation, Inc.

N4J-GFI_000071

SER_3631

# EXHIBIT H

SER_3632

# The Graph Foundation

Open Graph Technology for Public Good

Menu

# ONgDB 3.4.12

## RELEASE DATE: 18 JANUARY 2019

ONgDB 3.4.12 is a maintenance release with many important improvements and fixes.

| Mac/Linux | ongdb-enterprise-3.4.12-unix.tar.gz |
|---|---|
| Windows 64 bit | ongdb-enterprise-3.4.12-windows.zip |
| Windows 32 bit | ongdb-enterprise-3.4.12-windows.zip |
| Docker Image | ONgDB 3.4.12 Docker Hub<br><br>```<br>docker run \<br>      --publish=7474:7474 --publish=7687:7687 \<br>      --volume=$HOME/neo4j/data:/data \<br>      graphfoundation/ongdb:3.4.12<br><br>Go to: http://localhost:7474<br>``` |

## Highlights

- When a native memory allocation fails, ONgDB will now include helpful debugging information in all such cases, instead of just some of them.
- Close all index readers opened during lockingNodeUniqueIndexSeek

N4J-GFI_000075

SER_3633

- Fixes a race updating the label index, where e.g. a node CREATE followed by DELETE could be reordered into DELETE followed by CREATE, and vice versa.
- Obsfucate LDAP system password in debug log

## Detailed Changes and Docs

For the complete list of all changes, please see the changelog. Look for 3.4 Developer manual here, and 3.4 Operations manual here.

### Pages

**Accessibility**

**Get Involved**

**Graph Community**

**Mission**

**Projects**

- **Heimdall**
- **Open Native Graph DB (ONgDB)**
  - **ONgDB Releases**
    - **ONgDB 3.4.11**
    - **ONgDB 3.4.12**
    - **ONgDB 3.4.9**
    - **ONgDB 3.5.1**
    - **ONgDB 3.5.3**
    - **ONgDB 3.5.4**

**Support TGF**

- **Donations**
- **Sponsorship**
- **Thanks**

**The Graph Foundation**

- **Public Records**
  - **Articles of Incorporation**
  - **Code of Regulations**

N4J-GFI_000076

SER_3634

9/24/2019          Case 5:18-cv-07182-EJD  Document 98-1  Filed 12/11/20  Page 1079 of 1198



N4J-GFI_000077

SER_3635

# EXHIBIT I

SER_3636

# The Graph Foundation

Open Graph Technology for Public Good

Menu

# ONgDB 3.5.1

## RELEASE DATE: 20 DECEMBER 2018

ONgDB 3.5.1 is a maintenance release with many important improvements and fixes.

| Mac/Linux | ongdb-enterprise-3.5.1-unix.tar.gz |
|---|---|
| Windows 64 bit | ongdb-enterprise-3.5.1-windows.zip |
| Windows 32 bit | ongdb-enterprise-3.5.1-windows.zip |
| Docker Image | ONgDB 3.5.1 Docker Hub<br><br>```<br>docker run \<br>    --publish=7474:7474 --publish=7687:7687 \<br>    --volume=$HOME/neo4j/data:/data \<br>    graphfoundation/ongdb:3.5.1<br><br>Go to:  http://localhost:7474<br>``` |

## Highlights

- Update reported metrics types to correctly represent nature of reported event
- Removes explicit neo4j-admin import db existence check
- Fix public api: revive legacy iterators
- Fix VM pause monitor logging

N4J-GFI_000072

SER_3637

- Fix an error that made the timestamp function case sensitive
- Fix issue with compiled runtime and count(), where transient entity inconsistencies would make some aggregating queries (e.g. MATCH (n:Artist) WHERE n.name = 'Madonna' RETURN count(n)) return fewer rows than expected

## Detailed Changes and Docs

For the complete list of all changes, please see the changelog. Look for 3.5 Operations manual here.

# Pages

**Accessibility**

**Get Involved**

**Graph Community**

**Mission**

**Projects**

- **Heimdall**
- **Open Native Graph DB (ONgDB)**
  - **ONgDB Releases**
    - **ONgDB 3.4.11**
    - **ONgDB 3.4.12**
    - **ONgDB 3.4.9**
    - **ONgDB 3.5.1**
    - **ONgDB 3.5.3**
    - **ONgDB 3.5.4**

**Support TGF**

- **Donations**
- **Sponsorship**
- **Thanks**

**The Graph Foundation**

- **Public Records**
  - **Articles of Incorporation**
  - **Code of Regulations**

N4J-GFI_000073

SER_3638

9/24/2019    Case 5:18-cv-07182-EJD    Document 98-4    Filed 12/13/20    Page 1083 of 1198



N4J-GFI_000074

SER_3639

# EXHIBIT J

SER_3640

# The Graph Foundation

Open Graph Technology for Public Good

Menu

# ONgDB 3.5.3

## RELEASE DATE: 11 FEBRUARY 2019

ONgDB 3.5.3 is a maintenance release with many important improvements and fixes.

| Mac/Linux | ongdb-enterprise-3.5.3-unix.tar.gz |
|---|---|
| Windows 64 bit | ongdb-enterprise-3.5.3-windows.zip |
| Windows 32 bit | ongdb-enterprise-3.5.3-windows.zip |
| Docker Image | ONgDB 3.5.3 Docker Hub<br><br>```<br>docker run \<br>        --publish=7474:7474 --publish=7687:7687 \<br>        --volume=$HOME/neo4j/data:/data \<br>        graphfoundation/ongdb:3.5.3<br><br>Go to:  http://localhost:7474<br>``` |

## Highlights

- Fix bug in slotted NodeRightOuterHashJoin, which would lead to wrong results.
- Adds IndexReader#distinctValues() able to access all distinct values in an index with number of indexed entries for each value. Values are materialized if user requests it and the index supports materialization of actual values.
- Fix issue with PROFILE and EXPLAIN of queries with unusual variable names
- Delete spammy log line reported on LEADER on FOLLOWER failure

N4J-GFI_000086

SER_3641

## Detailed Changes and Docs

For the complete list of all changes, please see the changelog. Look for 3.5 Operations manual here.

## Pages

**Accessibility**

**Get Involved**

**Graph Community**

**Mission**

**Projects**

- **Heimdall**
- **Open Native Graph DB (ONgDB)**
  - **ONgDB Releases**
    - **ONgDB 3.4.11**
    - **ONgDB 3.4.12**
    - **ONgDB 3.4.9**
    - **ONgDB 3.5.1**
    - **ONgDB 3.5.3**
    - **ONgDB 3.5.4**

**Support TGF**

- **Donations**
- **Sponsorship**
- **Thanks**

**The Graph Foundation**

- **Public Records**
  - **Articles of Incorporation**
  - **Code of Regulations**

## Site Search

Search ...

https://www.graphfoundation.org/projects/ongdb/releases/ongdb-3-5-3/     2/3

N4J-GFI_000087

SER_3642



Copyright © 2019 Graph Foundation, Inc.

N4J-GFI_000088

SER_3643

# EXHIBIT K

SER_3644



# The Graph Foundation

Open Graph Technology for Public Good

Menu

## Neo4j is Open Core – Now What?

**31** JAN 2019                                          1 COMMENT

The word responsibility can be thought of in a simple way. If you have an *ability* what is your *response* to that ability? If there's a need and you're able to meet it, what is your response? Will you act and use your ability to improve the situation for the betterment of everyone? If keeping the best open source graph database on the market today fully open source and truly enabling "Graphs for Everyone" is a mission for you and/or your organization then keep reading through to the end. If you care but don't need to know all the details right now then skip down to the TL;DR.

We've been in the graph community for a while now (circa 2011) and we know a bit about the origins of the open source neo4j graph database. We've seen first-hand the powerful transformation that graph brings to organizations and its potential to enhance the way complex data is stored, processed and queried now and in the future. We know that the success of an open source database goes well beyond the commits made to the repository. Engineering is important, yes, and there is plenty of that needed when building a database, but it's not the only contributing factor to enabling a great open source database, especially in the emerging graph database space. There are many key roles including entrepreneurs to build supporting businesses and ecosystem products, early customer adopters, implementations that stress and push the technology to the edge, testing and reporting defects from usage, promotion, discussion and exposure at events, meetups and conferences, community support, training and skill building across the user base, a sharing of vision and community involvement and likely many more that we don't even see.

The open source neo4j graph database (hereafter the lowercase "neo4j") has thrived since 2011 because it has been fully open source. In the very early days it's difficult to get adoption of a new database technology, especially one that is closed source. Many organizations have open source initiatives, especially around databases, to avoid the lock-in and closed ecosystems that occur with relational databases from Oracle, SAP and Microsoft. The open stack initiative was born out the need to scale database technologies to achieve business solutions without facing unknown and often staggering licensing costs. The Open Source Initiative created momentum around the adoption of open source databases and neo4j has benefitted from this by being fully open source.

N4J-GFI_000078

SER_3645

Unfortunately neo4j has always had a split licensing personality. In the early days, Emil (founder and CEO of Neo Technology, Inc.) faced challenges in how to commercialize neo4j and figure out what features were enterprise vs. community. In the end, the line was drawn to designate clustering, backups, restore, monitoring, metrics, security, constraints, scalable database format for big graphs, and enhance cypher as *enterprise* features while the core kernel, cypher and server capabilities would be designated as *community*. With the separate designations for enterprise and community came separate licenses AGPLv3 and GPLv3 respectively. Why Emil chose these licenses stems from the beginning when neo4j was mostly used as an embedded database and the less permissible enterprise AGPLv3 license would have required some projects embedding neo4j enterprise to be open source or get a commercial license (in the early days we worked on some of these embedded cases).

When server mode emerged in 1.8 (2012) and folks stopped embedding neo4j, the AGPLv3 open source license allowed usage of the standalone server without a commercial license. The introduction of server mode was essential and if the license had changed at that time to restrict enterprise features (such as clustering in server mode), it would have greatly impacted the adoption of still very immature database. Instead, what followed was the start of Neo Technology's split licensing personality. On the one hand, if you visited the Github neo4j open source project you would see an AGPLv3 license that allowed enterprise usage and at the major Graph Connect conference Neo Technology would promote these enterprise features and the open source contribution of them. On the other hand, sales and marketing would create confusion among commercial users that neo4j enterprise needed a license to avoid open sourcing their project code (which was only true for embedded use cases of which there are only a handful still to date).

It was only recently that Neo4j, Inc. came into existence. Before that it was Neo Technology, Inc. and the commercial license was so appropriately called the Neo Technology Commercial License (NTCL). This meant community and enterprise could be used as-is without warranty under GPLv3 and AGPLv3 respectively or exclusively enterprise supported under the NTCL. Any neo4j users had the freedom to checkout neo4j community and enterprise source under one GitHub repository, compile and run all the tests, see the open development of the project, report issues and build distributions of both community and enterprise under GPLv3 and AGPLv3 respectively. This was good for community as it showed a vibrant ecosystem where everyone understood that core freedoms were being promoted and Neo Technology was able to commercialize enterprise under NTCL for enterprise customers that needed support.

At some point in neo4j's growth and adoption, around year 2015, neo4j became a clearly viable database – this wasn't the case from 2011-2015 when it suffered heavily from failed deployments as the result of scalability and reliability issues for many now common use cases. With neo4j becoming increasingly popular and more commercial licenses in hand, Neo Technology accelerated commercialization efforts around neo4j enterprise which included an increase in marketing rhetoric that focused on commercial customers needing a license (NTCL) to use enterprise. At the same time, Neo Technology continued to promote the open source nature and contributions of the company. This dual position led to confusion in the community and frustrations among commercial neo4j users but ultimately allowed Neo Technology to grow its commercial customer base while appealing to open source communities giving it all the benefits of riding the open source wave.

N4J-GFI_000079

SER_3646

It was between 2016-2018 that Neo Technology made the big changes. Unknown to the community they acquired trade marks on Neo4j and Cypher (both were commons usage until that point) and Neo Technology, Inc. changed its name to Neo4j, Inc. The build tooling that had allowed neo4j enterprise users to build enterprise distributions was removed from the open source repository. The enterprise license changed from AGPLv3 to AGPLv3 + Commons Clause and was applied to the then mainline 3.4 release and backported to patch releases for 3.2 and 3.3 to attempt a block at subsequent patch releases. And when Neo4j, Inc. realized that the additional Commons Clause didn't prevent usage of enterprise features, it made the ultimate decision to remove all enterprise modules including tools and tests from open source and declare publicly that Neo4j, Inc. is now an Open Core organization leaving neo4j community alone as open source.

So why does it matter so much that the enterprise features were taken closed? Well for any like-minded architects out there with open source initiatives we know that a database we choose needs to be open source so we can see it, build it, know there is a community engaged around it and good commercial support so that our organization has the option to reduce risk and improve business continuity as desired. We also know that any viable database needs to be performant (enhanced cypher runtime), vertical and horizonal scale (clustering, sharding, query parallelization), operational and administration ease (backups, restore, monitoring, metrics, logging), security to lock it down and constraints to ensure integrity. All of these are core features for a modern database to be in a modern data architecture. It was the enterprise features and the fact they were open that enabled neo4j to enter the modern architecture. The reason we say modern architecture is because it's not just an enterprise architecture. Any more these days, any initiative worth undertaking requires a scalable architecture. Any product or platform worth building demands an underlying scalable foundation and very often an open source architecture in addition. The remaining community features do not meet these needs and while enterprise features can still be access through Neo4j, Inc. they are propriety and do not meet open initiative requirements.

Organizations that adopt a proprietary enterprise should be aware of the specialized data format in enterprise today. The database format for building large graphs (bigger than 34 billion nodes/relationships) was designated as an enterprise feature and is required when using enterprise. When users move from community to enterprise there is a data format migration performed that is irreversible. This means that all enterprise users today, after they upgrade to 3.5 will be using a proprietary data format that will forever have them locked-in. Based on Neo4j, Inc.'s trajectory, this may be intentional so they can continue to move closer to their vision of becoming the Oracle of graph databases as they think of it.

We see a bigger vision for graph unfolding where there is going to be a much bigger need for scalability, performance and compute in a distributed manner as graphs begin to play a central role in machine learning, artificial intelligence and the new age definitions of both as they will be continue to be redefined to move beyond the definitions from the 60's. The way we see it, clustering, sharding, parallel cypher and big graph performance will be essential in this coming age and cannot be proprietary, closed source enterprise features. Every organization has a vested interest in this future mission and it's essential that the handling of this critical component is done in the open for everyone.

N4J-GFI_000080

SER_3647

The only way for neo4j enterprise users and those community users needing enterprise features is to make a bold move to The Graph Foundation. We started Graph Foundation, Inc. (referred to as The Graph Foundation) in June 2018 when we noticed Neo4j's position beginning to change and the implications of this for the community and ecosystem. The Graph Foundation is a nonprofit with 501(c)(3) status and its goal is to take over neo4j enterprise development and continue forward under a model that closely resembles that of The Linux Foundation.

We see that one of the most important aspect about neo4j is that it's an open source native graph database. We call it native to separate from other graph layers built on RDBMS and NoSQL databases that use indexes or joins to form relationships while native graphs like neo4j store nodes and relationships as fast mapped pointers at a store level giving peak performance when traversing complex, densely connected data. In 2003, we were obsessed with learning about open source and the world that it had created. As a big users of Linux we learned of the efforts of the Free Software Foundation that gave us not only the freedoms we came to know and love but the tools to build and thrive without limitations. As a throwback to those early days and our beginnings on GNU (remember GNU's Not Unix), we decided on the name ONgDB (oh-n-gee-db) which stands for Open Native Graph DB but also ONgDB's Neo4j Graph DB. We just couldn't resist the double meaning and the shout out to those that have come before us in pioneering the Free Open Source Software movement.

In order to move ONgDB forward in a significant way, we're going to need a lot of help. If keeping the best graph database on the market today open source and truly enabling "Graphs for Everyone" is a mission for you and/or your organization, there are a few things you can do to be an activist in this mission and help the cause.

First, help spread the word and make every individual and organization aware of what's happening. Don't let the conversation end at a press release from Neo4j, Inc. This is bigger than that and Neo4j does not represent the collective voice of the graph community now or those that will need an open community and its solutions in the future. The fate of many is incorrectly in the hands of a few that do not seek interests in the best alignment for the future in store for us all.

Second, if you have the skill, ability or just sheer passion for learning and working with a foundation of inspiring individuals ready to teach and help you grow, this is one of the greatest technology initiative of your time to be part of in ushering in a change for the ages. We are going to take graph to the next level and you will be part of this historical movement.

Third, if you have open initiatives for data architecture at your organization then you need to cut your licenses from Neo4j, Inc. Don't invest monetarily in a proprietary future. If you need commercial support beyond the community, and many organizations will, The Graph Foundation has commercial sponsors working and contributing to the open source initiative and you should contact us for those commercial sponsors that will work with you to give you the support, liability and warranty you need to succeed. Many of the engineers working on ONgDB alongside foundation engineers are coming from commercial sponsors that are donating time and resource to move the mission forward. Sponsors such as GraphGrid,

N4J-GFI_000081

SER_3648

the top contributor to date have the most talented pool of engineers and commercial momentum to give enterprise customers the best choice for commercial support.

Lastly, The Graph Foundation does have operating costs and is being donated to heavily by sponsors like GraphGrid. In order for the foundation to move forward we need to have more capacity within the foundation to continue on development and road mapping. Our desire is to have many commercial entities influencing the future decisions of The Graph Foundation. The Graph Foundation is a 501(c)(3) which has nonprofit status from the IRS so any donations are tax deductible by any enterprise that makes a donation. Corporate sponsorship will help ensure The Graph Foundation thrives and has the backing to correctly move the broader graph vision forward in a way that serves those most invested in the future of graph.

We see the future ahead; it's connected and built on graph. We want to connect with you, right now to ensure that this future remains free and open to all. To this end we will not stop to until we have brought to fruition this vision which stands before us all. Will you join this mission?

TL;DR

Neo4j, Inc. made key performance, scalability and security features proprietary as of 3.5

We must protect the freedoms of neo4j enterprise users by keeping enterprise open source to ensure a vibrant future for everyone, not the few

Under current enterprise designations, the biggest gains in big graphs to power AI/ML/DeepGL, distributed/parallel Cypher and large clusters with sharding will be Neo4j Enterprise Edition features and require lock-in to a proprietary database

The Graph Foundation, a nonprofit 501(c)(3), is taking over enterprise open source development and with the help of sponsors and the community will push forward a vision of graph that will be for everyone

The Graph Foundation needs help! Consider sponsoring and getting commercial support from approved commercial sponsors to ensure enterprise development continues forward

 **Brad Nussbaum**

Tags: **FOSS**, **Neo4j**, **ONgDB**

NEXT

**1,000th ONgDB (Open Neo4j Enterprise) 3.5 Download**

N4J-GFI_000082

SER_3649

## 1 Comment

Pingback: 1,000th ONgDB (Open Neo4j Enterprise) 3.5 Download

## Leave a Reply

Your email address will not be published. Required fields are marked *

Comment

Name *

Email *

Website

**Post Comment**

## Pages

N4J-GFI_000083

SER_3650

Accessibility

Get Involved

Graph Community

Mission

Projects

- Heimdall

- Open Native Graph DB (ONgDB)

    - ONgDB Releases

        - ONgDB 3.4.11

        - ONgDB 3.4.12

        - ONgDB 3.4.9

        - ONgDB 3.5.1

        - ONgDB 3.5.3

        - ONgDB 3.5.4

Support TGF

- Donations

- Sponsorship

- Thanks

The Graph Foundation

- Public Records

    - Articles of Incorporation

    - Code of Regulations

# Site Search

Search …

Search

# Support GF Today!

N4J-GFI_000084

SER_3651

Copyright © 2019 Graph Foundation, Inc.

N4J-GFI_000085

SER_3652

# EXHIBIT L

SER_3653

ONgDB 3.4 Docs · graphfoundation/ongdb Wiki · GitHub



Sign up

graphfoundation / ongdb

Watch 17    Star 140    Fork 28

Code

Issues 2

Pull requests 1

Actions

Projects

Wiki

Security

Insights

# ONgDB 3.4 Docs

Brad Nussbaum edited this page Apr 9, 2020 · 3 revisions

Developer Manual

Operations Manual

Pages 15



- Website
- Wiki home
- Docs
- Changelog
- Get Involved

SER_3654

ONgDB 3.4 Docs · graphfoundation/ongdb Wiki · GitHub

Case 5:18-cv-07182-EJD    Document 98-1    Filed 12/11/20    Page 1099 of 1198

Clone this wiki locally

```
https://github.com/graphfoundation/ongdb.wiki.git
```

© 2020 GitHub, Inc.

Terms
Privacy
Security
Status
Help

Contact GitHub
Pricing
API
Training
Blog
About

SER_3655

# EXHIBIT M

SER_3656

Docs · graphfoundation/ongdb Wiki · GitHub



graphfoundation / ongdb

Sign up

Code    Issues ●    Pull requests ●    Projects ●    Actions    Wiki    Security    Pulse

# Docs

Brad Nussbaum edited this page Mar 26, 2020 · 3 revisions

The ONgDB documentation is divided into different documentation for different editions and releases. You'll find relevant links to all of these resources on this index page.

## Under development

- ONgDB 4.0
- ONgDB 3.6

## Latest release

- ONgDB 3.5

## Older releases

- ONgDB 3.4


Pages 15



- Website
- Wiki home
- Docs

SER_3657

Docs · graphfoundation/ongdb Wiki · GitHub

- Changelog
- Get Involved

## Clone this wiki locally

```
https://github.com/graphfoundation/ongdb.wiki.git
```

---

© 2020 GitHub, Inc.

Terms

Privacy

Security

Status

Help

Contact GitHub

Pricing

API

Training

Blog

About

**SER_3658**

# EXHIBIT N

8/13/2020                                    The Graph Foundation on Twitter: "#ONgDB (#FOSS #Neo4j Enterprise) 3.5.3 support release is out: https://t.co/XX7WZFJoV" / Twitter



Don't miss what's happening
People on Twitter are the first to know.                                    Log in    Sign up

https://mobile.twitter.com/GraphFoundation/status/1107363894023151619                                                                1/1

**SER_3660**

# EXHIBIT O

SER_3661



Explore

Settings

Tweet

**The Graph Foundation**
@GraphFoundation

#ONgDB, Open #Neo4j Enterprise, marches on with 1,000th download. Read more:

1,000th ONgDB (Open Native Graph Database) 3.5 Download
We are excited to announce today that we have reached our 1,000th download of ONgDB 3.5, the Open Neo4j Enterprise project!
graphfoundation.org

6:24 AM · Mar 21, 2019 · Hootsuite Inc.

**3** Retweets **2** Likes

Search Twitter

**New to Twitter?**

Sign up now to get your own personalized timeline!

Sign up

**Relevant people**

**The Graph Foundation** Follow
@GraphFoundation
Open Graph Technology for Public Good

**What's happening**

World news · 3 hours ago
**Israel and UAE reach deal to normalize relations**
Trending with: Middle East

**#OnTheRecord**
Watch live at 7PM PT
Promoted by HBO Max

Gaming · Trending
**App Store**
Trending with: Epic Games
73.3K Tweets

UEFA Champions League · LIVE
**RB Leipzig vs Atletico Madrid: Goalless at half-time**
Trending with: Leipzig and #RBLAtleti

NFL · Trending
**Ertz**
1,636 Tweets

Show more

Terms Privacy policy Cookies Ads info More

© 2020 Twitter, Inc.

**Don't miss what's happening**
People on Twitter are the first to know.

Log in Sign up

# EXHIBIT P

SER_3663

8/13/2020    The Graph Foundation on Twitter: "#ONgDB (#FOSS #Neo4j Enterprise) 3.5.4 support release is out: https://t.co/ti3WZFJoV" / Twitter



← **Tweet**

**The Graph Foundation** ⌄
@GraphFoundation

#ONgDB (#FOSS #Neo4j Enterprise) 3.5.4 support release is out:

ONgDB - Open Source Neo4j Enterprise Graph - The Graph Foundation
ONgDB is an open source fork of Neo4j Enterprise that is developed and released under the AGPLv3 License by The Graph Foundation.
🔗 graphfoundation.org

5:25 AM · May 10, 2019 · Twitter Web Client

**3** Retweets  **3** Likes

**Search Twitter**

**New to Twitter?**
Sign up now to get your own personalized timeline!

**Sign up**

**Relevant people**

**The Graph Foundation**    **Follow**
@GraphFoundation
Open Graph Technology for Public Good

**What's happening**

World news · 3 hours ago
**Israel and UAE reach deal to normalize relations**
Trending with: Middle East

**#OnTheRecord** ⚫
Watch live at 7PM PT
📺 Promoted by HBO Max

Gaming · Trending
**App Store**
Trending with: Epic Games
73.3K Tweets

UEFA Champions League · LIVE
**RB Leipzig vs Atletico Madrid: Goalless at half-time**
Trending with: Leipzig and #RBLAtleti

NFL · Trending
**Ertz**
1,636 Tweets

Show more

Terms  Privacy policy  Cookies  Ads info  More ⌄
© 2020 Twitter, Inc.

**Don't miss what's happening**
People on Twitter are the first to know.

**Log in**    **Sign up**

SER_3664

# EXHIBIT Q

SER_3665

Explore

Settings

**Tweet**

**The Graph Foundation**
@GraphFoundation

#ONgDB (#FOSS #Neo4j Enterprise) 3.5.12 support release is out:

ONgDB - Open Source Neo4j Enterprise Graph - The Graph Foundation
ONgDB is an open source fork of Neo4j Enterprise that is developed and released under the AGPLv3 License by The Graph Foundation.
graphfoundation.org

6:58 PM · Nov 27, 2019 · Twitter Web App

**1** Retweet **2** Likes

Search Twitter

**New to Twitter?**

Sign up now to get your own personalized timeline!

Sign up

**Relevant people**

**The Graph Foundation**
@GraphFoundation
Follow
Open Graph Technology for Public Good

**What's happening**

World news · 3 hours ago
**Israel and UAE reach deal to normalize relations**
Trending with: Middle East

**#OnTheRecord**
Watch live at 7PM PT
Promoted by HBO Max

Gaming · Trending
**App Store**
Trending with: Epic Games
73.3K Tweets

UEFA Champions League · LIVE
**RB Leipzig vs Atletico Madrid: Goalless at half-time**
Trending with: Leipzig and #RBLAtleti

NFL · Trending
**Ertz**
1,636 Tweets

Show more

Terms Privacy policy Cookies Ads info More

© 2020 Twitter, Inc.

**Don't miss what's happening**
People on Twitter are the first to know.
Log in Sign up

# EXHIBIT R

SER_3667



Explore

Settings

Tweet

**The Graph Foundation**
@GraphFoundation

#ONgDB (#FOSS #Neo4j Enterprise) 3.5.14 support release is out:

ONgDB - Open Source Neo4j Enterprise Graph - The Graph Foundation
ONgDB is an open source fork of Neo4j Enterprise that is developed and released under the AGPLv3 License by The Graph Foundation.
graphfoundation.org

2:16 PM · Jan 18, 2020 · Twitter Web App

**2** Retweets **2** Likes

Search Twitter

**New to Twitter?**

Sign up now to get your own personalized timeline!

Sign up

**Relevant people**

**The Graph Foundation** Follow
@GraphFoundation
Open Graph Technology for Public Good

**What's happening**

World news · 3 hours ago
**Israel and UAE reach deal to normalize relations**
Trending with: Middle East

**#OnTheRecord**
Watch live at 7PM PT
Promoted by HBO Max

Gaming · Trending
**App Store**
Trending with: Epic Games
72.8K Tweets

MLB · LIVE
**Nationals at Mets**
Trending with: Tomas Nido and David Peterson

NFL · Trending
**Ertz**
1,630 Tweets

Show more

Terms Privacy policy Cookies Ads info More

© 2020 Twitter, Inc.

**Don't miss what's happening**
People on Twitter are the first to know.

Log in Sign up

# EXHIBIT S

SER_3669

Explore

Settings

**Tweet**

**The Graph Foundation**
@GraphFoundation

Latest #ONgDB apoc 3.5.0.8 procedure release is out. github.com/graphfoundatio... #Neo4j

Release 3.5.0.8 · graphfoundation/ongdb-apoc
Full
https://cdn.graphfoundation.org/apoc/dist/org/neo4j/proced...
github.com

11:31 AM · May 19, 2020 · Twitter Web App

Search Twitter

**New to Twitter?**
Sign up now to get your own personalized timeline!
Sign up

**Relevant people**

**The Graph Foundation** @GraphFoundation Follow
Open Graph Technology for Public Good

**What's happening**

World news · 3 hours ago
**Israel and UAE reach deal to normalize relations**
Trending with: Middle East

**#OnTheRecord**
Watch live at 7PM PT
Promoted by HBO Max

Gaming · Trending
**App Store**
Trending with: Epic
72.5K Tweets

UEFA Champions League · LIVE
**RB Leipzig vs Atletico Madrid: Goalless at half-time**
Trending with: Leipzig and #RBLAtleti

NFL · Trending
**Ertz**
1,582 Tweets

Show more

Terms Privacy policy Cookies Ads info More

© 2020 Twitter, Inc.

**Don't miss what's happening**
People on Twitter are the first to know.
Log in Sign up

# EXHIBIT T

SER_3671



# Trademark Guidelines

## Legal Notices

Terms

California Privacy
Rights

Privacy Policy

Trademark Policy

Modern Slavery
Statement

This document outlines the policy for allowable uses of trademarks owned by Neo4j, Inc. and its subsidiaries ("Neo4j") by other parties.

Neo4j owns all Neo4j-related trademarks, service marks, and logos on behalf of our communities and the names of all Neo4j® projects are trademarks of Neo4j.

The role of trademarks is to provide assurance about the quality of the products or services with which the trademark is associated. Neo4j has established this Policy to encourage others to make accurate, non-confusing use of the Neo4j trademarks, while also ensuring that those trademarks maintain their distinctiveness and strength as reliable indicators of the source and quality of Neo4j products and services. Although some Neo4j projects may be available under free and open licenses, those licenses cover copyright only and do not include any express or implied right to use our trademarks. Neo4j does not allow third parties to use its trademarks without a written agreement or express permission. Thus, Neo4j projects that are available under open source licenses may be copied, modified, or sold by third parties, but they cannot be branded or marketed with Neo4j trademarks in the absence of a trademark license.

While open-source licenses allow modification of copyrighted software and distribution in original or modified form, such distribution could be misleading if distributed under the same name.  This could cause confusion among consumers of the software as to source. They may mistakenly believe they are receiving software that is produced or supported by Neo4j.  This Policy describes the circumstances under which you may use our trademarks, regardless of the type of license you may have from Neo4j.  In this Policy we

SER_3672

Trademark Guidelines - Neo4j Graph Database Platform

are not trying to limit the lawful use of our trademarks, but rather describe for you what we consider the parameters of lawful use to be. Trademark law can be ambiguous, so we hope to provide enough clarity for you to understand whether we will consider your use licensed or non-infringing.

Neo4j® software, which is created and/or distributed by Neo4j, is the software in the exact form that it is distributed by Neo4j without modification of any kind. To the extent any authorized modifications are made to the software, such modified software should no longer bear the Neo4j trademarks. The public has a right to know when it is receiving a genuine Neo4j® product that is quality assured by Neo4j.

The sections that follow describe what trademarks are covered by this Policy, as well as uses of the trademarks that are allowed without additional permission from us. Any use that does not comply with this Policy or for which we have not separately provided written permission is not a use that we have approved, so you must decide for yourself whether the use is nevertheless lawful.

## Our Commitment to Open Source Principles

We want to encourage and facilitate the use of our open source software by the community, but do so in a way that still ensures that the Neo4j trademarks are meaningful as a source and quality indicator for our software and the associated goods and services and continue to embody the high reputation of the software and the community associated with it. This Policy therefore tries to strike the proper balance between: 1) our need to ensure that our trademarks remain reliable indicators of the qualities that they are meant to preserve and 2) our community members' desire to be full participants in Neo4j® projects.

## Trademarks Subject to the Guidelines

### Our Trademarks

This Policy covers the following non-exhaustive list of our trademarks:

1. Our word trademarks and service marks (the "Word Marks"):
   Neo4j®
   Cypher®

SER_3673

Neo4j® Bloom™

Neo4j® Desktop™

Neo Technology®

2. Our logos (the "Logos")





3. The unique visual styling of our website and elements used in or otherwise related to the products and services we offer (the "Trade Dress"). See our Style Guide for further information.

This Policy encompasses all trademarks and service marks, whether Word Marks, Logos or Trade Dress, which are collectively referred to as the "Marks." Some Marks may not be registered, but registration is not necessarily required for ownership of trademarks. This Policy covers our Marks whether they are registered or not.

## Universal Considerations for All Uses

The following guidelines show proper (and improper) use of Marks. Any use of the Marks must be licensed and comply with these guidelines. Whenever you use one of the Marks, you must always do so in a way that does not mislead anyone, either directly or by omission, about exactly what they are getting and from whom. For example, you cannot say you are distributing the Neo4j® software when you're distributing a modified version of it, because people would be confused when they are not getting the same features and functionality they would get if they downloaded the software directly from us. You also cannot distribute Neo4j® software using the Marks if you do not have a license from us, because that would imply that your distribution comes from or is supported by Neo4j. You cannot use our Marks on your website in a way that suggests that your website is an official website or that we endorse your

SER_3674

website, unless permitted in a written agreement with us. You can, though, say you like the Neo4j® software, say that you participate in the Neo4j® community, or refer to Neo4j® products and services.

This fundamental requirement, that it is always clear to people what they are getting and from whom, is reflected throughout this Policy. It should also serve as your guide if you are not sure about how you are using the Marks.

In addition:
You may not use the Marks in association with the use or distribution of software if you are also not in compliance with the copyright license for the software.

You may not use or register, in whole or in part, the Marks as part of your own trademark, service mark, domain name, company name, trade name, product name or service name.

Provided that you have obtained a license from Neo4j, you can use the Word Marks in book and article titles, and the Logo in illustrations within the document, as long as the use does not suggest that we have published, endorse, or agree with your work.

Trademark law does not allow your use of names or trademarks that are too similar to ours. You therefore may not use an obvious variation of any of our Marks or any phonetic equivalent, foreign language equivalent, takeoff, or abbreviation for a similar or compatible product or service. This includes combinations or integrations of all or portions of the Marks in a way that the public may think of the use as a new mark (e.g. SuperNeo4j, or Neo5k).

You agree that you will not acquire any rights in the Marks and that any goodwill generated by your use of the Marks inures solely to our benefit.

## Proper Use of the Marks

These rules hold true for all trademarks, not just ours, so you should follow them for our Marks as well as anyone else's.

Always use the Marks in their Exact Form and Distinguishable from Other Text.
Always use the Word Marks in a manner distinguished from surrounding text,

SER_3675

Trademark Guidelines - Neo4j Graph Database Platform

with initial capital letters, and in the exact form with the correct spelling (neither abbreviated, hyphenated, or combined with any other word or words).

| CORRECT | INCORRECT |
|---------|-----------|
| Neo4j® | NEO4J<br>Neo-4j<br>neo4j<br>n4j<br>Neo |

<u>Use Marks as Proper Adjectives Followed by a Generic Term.</u> Trademarks should be used as adjectives followed by a generic modifier, and not as nouns or verbs. Trademarks are products or services, never actions. Do not use "a" or "the" to refer to an instance of the Marks. For example:

| CORRECT | INCORRECT |
|---------|-----------|
| The Neo4j® graph platform is widely used in many industries. | |
| I was able to quickly realize graph epiphanies with Neo4j® Bloom™ visualization software. | Neo4j® is widely used.<br><br>We use the Neo4j.<br><br>I use Cypher. |
| I downloaded the Neo4j® database from neo4j.com. | I load data into and out of Neo4j. |
| Cypher® query language | |

<u>Do Not Use Marks in the Possessive Form.</u> Because trademarks are not nouns, they should not be used in the possessive from. For example:

| CORRECT | INCORRECT |
|---------|-----------|

SER_3676

Trademark Guidelines - Neo4j Graph Database Platform

| | |
|---|---|
| The Neo4j® graph database software presents and stores data natively as a graph. | Neo4j's storage presents and stores data natively as a graph. |

<u>Do Not Use Marks in the Plural Form.</u> Because trademarks are not nouns, they should not be used in the plural form. For example:

| CORRECT | INCORRECT |
|---|---|
| The Neo4j® platform allows multiple instances of the Neo4j database software to form a single highly-available cluster. | High-availability clustering allows a cluster of instances to be formed using multiple Neo4js. |

<u>Do Not Use Marks to Suggest Endorsement by Neo4j.</u>

| CORRECT | INCORRECT |
|---|---|
| | "Open Neo4j" |
| graph database software | XYZ ENTERPRISE 3.4.9 (FREE AND OPEN UNRESTRICTED NEO4J ENTERPRISE FORK) |

<u>Use of Logos</u>

You may not change any Logo except to scale it proportionally. This means you may not add decorative elements, change the colors, change the proportions, distort it, add elements, or combine it with other logos. The logo may only be used displaying the exact colors shown in our Style Guide.

https://neo4j.com/trademark-policy/[8/13/2020 10:15:06 AM]

SER_3677

Trademark Guidelines - Neo4j Graph Database Platform

Mark Attribution and Notices

The first or most prominent mention of a Mark on a webpage, document, packaging, or documentation should be accompanied by a symbol indicating whether the mark is a registered trademark ("®") or an unregistered trademark ("™"). Also, if you are using our Marks for uses for which we are granting a separate license, please put following notice at the foot of the page where you have used the Mark (or, if in a book, on the credits page), on any packaging or labeling, and on advertising or marketing materials: "Neo4j is a trademark or registered trademark of Neo4j, Inc. or its subsidiaries in the United States and/or other countries."

Possible Infringement

If you are aware of any confusing use or misuse of the Marks in any way, we would appreciate you bringing this to our attention. Please contact us at webinfo@neo4j.com so that we can investigate it further.

Updates

Neo4j reserves the right to modify or update this Policy at any time. You should review this Policy from time to time so that you will be aware of any modifications or updates as they will apply as soon as they as posted on this page.

Further Information

Neo4j has tried to make this Trademark Policy as comprehensive and understandable as possible. If you have any questions about this Policy, would like to speak with us about the use of our Marks in ways not described in the Policy, or see any abuse of our Marks, please contact us.

*Updated April 3, 2019*

SER_3678

Trademark Guidelines - Neo4j Graph Database Platform

PRODUCTS          CUSTOMERS          Why Graph          Company
                                     Databases?
                                                        News
USE CASES         LEARN              Graph Databases
                                     vs RDBMS           Awards

PARTNERS          DEVELOPERS         What's New in      Careers
                                     Neo4j
                                                        Staff
                                     Graphdatabases.com

                  CONTACT US →

                  US: 1-855-636-4532

©2020 Neo4j, Inc.   Sweden +46 171 480 113

Terms | Privacy | Sitemap   UK: +44 20 3868 3223

                  France: +33 (0) 8 05 08 03 44
Neo4j®, Neo Technology®, Cypher®,
Neo4j® Bloom™ and Neo4j® Aura™ are
registered trademarks
of Neo4j, Inc. All other marks are owned
by their respective companies.

Contact Sales: 1.855.636.4532          Email a graph expert

SER_3679

Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 1124 of 1198

# EXHIBIT 129

SER_3680

JOHN D. PERNICK, SBN 155468
jpernick@be-law.com
BERGESON, LLP
111 N. Market Street, Suite 600
San Jose, CA 95113
Telephone: (408) 291-6200
Facsimile: (408) 297-6000

Attorneys for Defendant
GRAPH FOUNDATION, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| NEO4J, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>GRAPH FOUNDATION, INC., an Ohio corporation,<br><br>Defendant. | Case No. 5:19-cv-06226-EJD<br><br>**GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST SET OF REQUESTS FOR ADMISSION**<br><br>Judge:   Hon. Edward J. Davila<br>Crtrm.:   4, 5th Fl.<br><br>Complaint Filed: October 1, 2019 |

PROPOUNDING PARTY:       Plaintiff NEO4J, INC.

RESPONDING PARTY:       Defendant GRAPH FOUNDATION, INC.

SET NO.:       One (1)

---

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Defendant GRAPH FOUNDATION, INC. ("GFI") hereby supplements its response to Plaintiff NEO4J, INC.'s ("Neo4J" or "Plaintiff") First Set of Requests for Admission as follows:

**PRELIMINARY STATEMENT**

The following responses are made solely for the purpose of, and in relation to, this action. Each response is provided subject to all appropriate objections (including, without limitation, objections concerning competency, relevancy, materiality, propriety, and admissibility) that would require the exclusion of any statement contained herein if the statement were made by a witness present and testifying in court.  All such objections and grounds therefore are reserved and may be interposed at the time of trial.

The following responses are based on the facts and information presently known and available to GFI.  Discovery, investigation, research, and analysis are still ongoing in this case and may disclose the existence of additional facts, add meaning to known facts, establish entirely new factual conclusions or legal contentions, or possibly lead to additions, variations, or changes to these responses.  Without being obligated to do so, GFI reserves the right to change or supplement these responses as additional facts are discovered, revealed, recalled, or otherwise ascertained, and as further analysis and research disclose additional facts, contentions or legal theories which may apply.

**GENERAL OBJECTIONS**

1.      GFI objects to the Requests in their entirety, and to each individual interrogatory therein, to the extent that they purport to require GFI to provide information concerning persons or entities other than GFI, on the grounds that the Requests, to that extent, are overbroad and seek information that is neither relevant to the subject matter of this Action nor reasonably calculated to lead to the discovery of admissible evidence, or if relevant, so remote therefrom as to make their disclosure of little or no practical benefit to Neo4j, while placing an unwarranted and extreme burden and expense on GFI in ascertaining, gathering and providing such information.

2.      GFI objects to the Requests in their entirety and to each individual interrogatory therein, to the extent that they seek information that is not relevant and does not appear reasonably

1

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1  calculated to lead to the discovery of admissible evidence.

2      3.     GFI objects to the Requests in their entirety and to each individual interrogatory

3  therein, to the extent that they purport to require GFI to provide information that is not within its

4  possession, custody, or control.

5      4.     GFI objects to the Requests in their entirety, and to each individual interrogatory

6  therein, to the extent they purport to require GFI to provide information that has already been

7  provided by parties in this Action, or that could be provided by parties to this Action, or non-

8  parties.

9      5.     GFI objects to the Requests in their entirety, and to each individual interrogatory

10 therein, to the extent they seek information prepared in anticipation of, or in connection with this

11 Action, or information protected from disclosure by the attorney-client privilege, the attorney

12 work-product doctrine, or any other applicable privilege against disclosure.

13     6.     GFI objects to "Instructions" contained in the Requests, to the extent that they are

14 inconsistent with and/or seek to impose obligations beyond those imposed by the Federal Rules of

15 Civil Procedure and the Local Civil Rules.

16                **RESPONSES TO REQUESTS FOR ADMISSION**

17 **REQUEST FOR ADMISSION NO. 1:**

18     Admit that Graph Foundation, Inc. (hereafter referred to as "GFI") does not have a license

19 to use U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" (hereafter referred

20 to as the "NEO4J® Mark").

21 **RESPONSE:**

22     Admit.

23 **REQUEST FOR ADMISSION NO. 2:**

24     Admit that GFI owns the domain www.graphfoundation.org.

25 **RESPONSE:**

26     Admit.

27 **REQUEST FOR ADMISSION NO. 3:**

28     Admit that GFI controls the website located at www.graphfoundation.org.

SER_3683

1   **RESPONSE:**

2       Admit.

3   **REQUEST FOR ADMISSION NO. 4:**

4       Admit that GFI has used the phrase "ONgDB – Open Neo4j Enterprise – The Graph

5   Foundation" on its website located at www.graphfoundation.org.

6   **RESPONSE:**

7       Defendant admits that this phrase was used prior to GFI being made aware of the Neo4j

8   trademark.

9   **REQUEST FOR ADMISSION NO. 5:**

10      Admit that **Exhibit A** attached hereto is a true and correct printout of the webpage located

11  at https://www.graphfoundation.org/projects/ongdb/ as it existed on September 24, 2019.

12  **RESPONSE:**

13      Admit.

14  **REQUEST FOR ADMISSION NO. 6:**

15      Admit that the webpage located at https://www.graphfoundation.org/projects/ongdb/ was

16  titled "ONgDB – Open Neo4j Enterprise – The Graph Foundation" as of September 24, 2019.

17  **RESPONSE:**

18      Defendant objects to this Request on the ground that its use of the term "titled" renders it

19  vague, ambiguous, and unintelligible. Without waving this objection, Defendant admits that the

20  quoted language was present on the identified web page on that date which was used prior to GFI

21  being made aware of the Neo4j trademark.

22  **REQUEST FOR ADMISSION NO. 7:**

23      Admit that GFI used the NEO4J® Mark in the title of its webpage

24  https://www.graphfoundation.org/projects/ongdb/ as of September 24, 2019.

25  **RESPONSE:**

26      Defendant objects to this Request on the ground that its use of the term "used the

27  NEO4J(r) Mark in the title renders it vague, ambiguous and unintelligible.  Without waving this

28  objection, Defendant admits that the word "Neo4j" was present on the identified web page on that

3

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1    date which was used prior to GFI being made aware of the Neo4j trademark.

2    **RESPONSE:**

3        Defendant objects to this Request on the ground that its use of the term "used the

4    NEO4J(r) Mark in the title renders it vague, ambiguous and unintelligible.  Without waving this

5    objection, Defendant admits it used the word "Neo4j" on the identified web page on that date

6    which was used prior to GFI being made aware of the Neo4j trademark.

7    **REQUEST FOR ADMISSION NO. 8:**

8        Admit that GFI did not have Neo4j, Inc.'s authorization to use the NEO4J® Mark in the

9    title of its webpage https://www.graphfoundation.org/projects/ongdb/ as of September 24, 2019.

10    **RESPONSE:**

11        Defendant objects to this Request on the ground that its use of the term "used the

12    NEO4J(r) Mark in the title renders it vague, ambiguous and unintelligible.  Without waving this

13    objection, Defendant admits that it did not obtain authorization from Neo4j, Inc. to use the word

14    "Neo4j" on the identified web page on that date.

15    **REQUEST FOR ADMISSION NO. 9:**

16        Admit that GFI's use of the NEO4J® Mark in the title of its webpage

17    https://www.graphfoundation.org/projects/ongdb/ as of September 24, 2019 was unlicensed.

18    **RESPONSE:**

19        Defendant objects to this Request on the ground that its use of the term "used the

20    NEO4J(r) Mark in the title renders it vague, ambiguous and unintelligible.  Without waving this

21    objection, Defendant admits that it did not enter into an agreement with Neo4j, Inc. to use the

22    word "Neo4j" on the identified web page on that date.

23    **SUPPLEMENTAL RESPONSE:**

24        Defendant objects to this Request on the ground that its use of the term "used the

25    NEO4J(r) Mark" in the title renders it vague, ambiguous, and unintelligible.  Without waving this

26    objection, Defendant admits that it was not granted a license by Neo4j, Inc. to use the word

27    "Neo4j" on the identified web page on that date.

28

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1   **REQUEST FOR ADMISSION NO. 10:**

2       Admit that GFI's use of the NEO4J® Mark in the title of its webpage

3   https://www.graphfoundation.org/projects/ongdb/ as of September 24, 2019 did not constitute

4   nominative fair use of the NEO4J® Mark.

5   **RESPONSE:**

6       Defendant objects to this Request on the ground that its use of the term "used the

7   NEO4J(r) Mark in the title renders it vague, ambiguous and unintelligible.  Without waving this

8   objection, Defendant responds:  Denied.

9   **REQUEST FOR ADMISSION NO. 11:**

10      Admit that GFI's use of the NEO4J® Mark in the title of its webpage

11  https://www.graphfoundation.org/projects/ongdb/ as of September 24, 2019 infringed the

12  NEO4J® Mark.

13  **RESPONSE:**

14      Defendant objects to this Request on the ground that its use of the term "used the

15  NEO4J(r) Mark in the title renders it vague, ambiguous and unintelligible.  Without waving this

16  objection, Defendant responds:  Denied.

17  **REQUEST FOR ADMISSION NO. 12:**

18      Admit that the statement "ONgDB distributions are licensed under AGPLv3 as a free and

19  open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same

20  version number" made in **Exhibit A** attached hereto is not 100% accurate.

21  **RESPONSE:**

22      Defendant objects to this request on the grounds that its use of the term 100% accurate is

23  vague, ambiguous, and unintelligible in connection with the quoted language and on that basis

24  denies the request.

25  **SUPPLEMENTAL RESPONSE:**

26      Defendant objects to this request on the grounds that its use of the term 100% accurate is

27  vague, ambiguous, and unintelligible in connection with the quoted language.  Defendant further

28  objects to the request on the ground that it is vague as to time.  Without waiving these objections,

5

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1 | and subject to it, Defendant responds:  Denied.

2 | **REQUEST FOR ADMISSION NO. 13:**

3 |     Admit that **Exhibit B** is a true and correct printout of Neo4j, Inc.'s Trademark Guidelines

4 | available on its website on September 26, 2019.

5 | **RESPONSE:**

6 |     Defendant is without sufficient information to admit or deny this request and, on that basis,

7 | denies the request.

8 | **SUPPLEMENTAL RESPONSE:**

9 |     Defendant admits that it became aware when it was served with the Complaint in this

10 | action that Neo4J, Inc. claimed that it had Trademark Guidelines in the form attached to the

11 | Complaint and that Neo4J, Inc. had posted purported Trademark Guidelines on its website.

12 | Defendant is without sufficient information to admit or deny the remainder of the request and, on

13 | that basis, denies the request.

14 | **REQUEST FOR ADMISSION NO. 14:**

15 |     Admit that you were aware of Neo4j, Inc.'s Trademark Guidelines in **Exhibit B** as early as

16 | September 26, 2019.

17 | **RESPONSE:**

18 |     Denied.

19 | **REQUEST FOR ADMISSION NO. 15:**

20 |     Admit that the Neo4j, Inc.'s Trademark Guidelines in **Exhibit B** state they were last

21 | updated on April 3, 2019.

22 | **RESPONSE:**

23 |     Defendant admits that the document attached as Exhibit B contains a statement to that

24 | effect.  Defendant is without sufficient information to admit or deny the remainder of this request

25 | and, on that basis, denies the request.

26 | **REQUEST FOR ADMISSION NO. 16:**

27 |     Admit that you were aware of Neo4j, Inc.'s Trademark Guidelines in **Exhibit B** as early as

28 | April 3, 2019.

6

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1  **RESPONSE:**

2    Denied.

3  **REQUEST FOR ADMISSION NO. 17:**

4    Admit that the Neo4j, Inc.'s Trademark Guidelines in **Exhibit B** were viewable on Neo4j,

5  Inc.'s website on September 24, 2019.

6  **RESPONSE:**

7    Defendant is without sufficient information to admit or deny this request and, on that basis,

8  denies the request.

9  **REQUEST FOR ADMISSION NO. 18:**

10    Admit that you were aware of Neo4j, Inc.'s Trademark Guidelines in **Exhibit B** as early as

11  September 24, 2019.

12  **RESPONSE:**

13    Denied.

14  **REQUEST FOR ADMISSION NO. 19:**

15    Admit that Neo4j, Inc.'s Trademark Guidelines in **Exhibit B** were attached as an exhibit to

16  Neo4j, Inc.'s Complaint filed on October 1, 2019.

17  **RESPONSE:**

18    Defendant admits that a document appearing to be the same as Exhibit B was attached to

19  the Complaint.  Defendant is without sufficient information to admit or deny the remainder of this

20  request and, on that basis, denies the request.

21  **REQUEST FOR ADMISSION NO. 20:**

22    Admit that you have been aware of Neo4j, Inc.'s Trademark Guidelines in **Exhibit B** as

23  least as early as December 26, 2019 when you filed your answer to Neo4j, Inc.'s Complaint.

24  **RESPONSE:**

25    Defendant objects to this request on the ground that its use of the term "been aware" is

26  vague, ambiguous, and unintelligible.  Defendant admits that a document appearing to be the same

27  as Exhibit B was attached to the Complaint.  Defendant is without sufficient information to admit

28  or deny the remainder of this request and, on that basis, denies the request.

7

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

**SUPPLEMENTAL RESPONSE:**

Defendant admits that it became aware when it was served with the Complaint in this action that Neo4J, Inc. claimed that it had Trademark Guidelines in the form attached to the Complaint and that Neo4J, Inc. had posted purported Trademark Guidelines on its website. Defendant is without sufficient information to admit or deny the remainder of the request and, on that basis, denies the request.

**REQUEST FOR ADMISSION NO. 21:**

Admit that GFI's use of the NEO4J® Mark in the title of its webpage attached hereto as **Exhibit A** violated Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B**.

**RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document and, on that basis, denies the request.

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document.  Without waiving these objections, and subject to them, Defendant admits that it used the word "Neo4j" on the identified website.  The remainder of the request seeks a legal conclusion or interpretation of Exhibit B and, on that basis, Defendant denies the remainder of the request.

**REQUEST FOR ADMISSION NO. 22:**

Admit that **Exhibit C** attached hereto is a true and correct printout of the webpage located at https://www.graphfoundation.org/projects/ongdb/ as it existed on June 10, 2020.

**RESPONSE:**

Admit.

8

SER_3689

**REQUEST FOR ADMISSION NO. 23:**

Admit that the webpage located at https://www.graphfoundation.org/projects/ongdb/ was titled "ONgDB – Open Neo4j Enterprise – The Graph Foundation" as of June 10, 2020.

**RESPONSE:**

Defendant objects to this request on the ground that its use of the term "titled" is vague, ambiguous, and unintelligible. Without waiving this objection and subject to it, Defendant admits that the words identified appeared on the webpage at that time.

**REQUEST FOR ADMISSION NO. 24:**

Admit that GFI used the NEO4J® Mark in the title of its webpage https://www.graphfoundation.org/projects/ongdb/ as of June 10, 2020.

**RESPONSE:**

Defendant objects to this request on the ground that its use of the term "title" is vague, ambiguous, and unintelligible. Without waiving this objection, and subject to it, Defendant admits that "Neo4j" appeared on the webpage at that time.

**RESPONSE:**

Defendant objects to this request on the ground that its use of the term "title" is vague, ambiguous, and unintelligible. Without waiving this objection, and subject to it, Defendant admits that it used the word "Neo4j" on the webpage at that time.

**REQUEST FOR ADMISSION NO. 25:**

Admit that GFI did not have Neo4j, Inc.'s authorization to use the NEO4J® Mark in the title of its webpage https://www.graphfoundation.org/projects/ongdb/ as of June 10, 2020.

**RESPONSE:**

Defendant objects to this Request on the ground that its use of the term "used the NEO4J(r) Mark in the title renders it vague, ambiguous and unintelligible. Without waving this objection, Defendant admits that it did not enter into an agreement with Neo4j, Inc. to use the word "Neo4j" on the identified web page on that date.

9

SER_3690

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this Request on the ground that its use of the term "used the NEO4J(r) Mark in the title renders it vague, ambiguous and unintelligible.  Without waving this objection, Defendant admits that it did not receive authorization from Neo4j, Inc. to use the word "Neo4j" on the identified web page on that date.

**REQUEST FOR ADMISSION NO. 26:**

Admit that GFI's use of the NEO4J® Mark in the title of its webpage https://www.graphfoundation.org/projects/ongdb/ as of June 10, 2020 was unauthorized.

**RESPONSE:**

Defendant objects to this Request on the ground that its use of the term "used the NEO4J(r) Mark in the title renders it vague, ambiguous and unintelligible.  Without waving this objection, Defendant admits that it did not enter into an agreement with Neo4j, Inc. to use the word "Neo4j" on the identified web page on that date.

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this Request on the ground that its use of the term "used the NEO4J(r) Mark in the title renders it vague, ambiguous and unintelligible.  Without waving this objection, Defendant admits that it did not receive authorization from Neo4j, Inc. to use the word "Neo4j" on the identified web page on that date.

**REQUEST FOR ADMISSION NO. 27:**

Admit that GFI's use of the NEO4J® Mark in the title of its webpage https://www.graphfoundation.org/projects/ongdb/ as of June 10, 2020 did not constitute nominative fair use of the NEO4J® Mark.

**RESPONSE:**

Defendant objects to this Request on the ground that its use of the term "used the NEO4J(r) Mark in the title renders it vague, ambiguous and unintelligible.  Without waving this objection, Defendant responds:  Denied.

10

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1  **REQUEST FOR ADMISSION NO. 28:**

2      Admit that GFI's use of the NEO4J® Mark in the title of its webpage

3  https://www.graphfoundation.org/projects/ongdb/ as of June 10, 2020 infringed the NEO4J®

4  Mark.

5  **RESPONSE:**

6      Defendant objects to this Request on the ground that its use of the term "used the

7  NEO4J(r) Mark in the title renders it vague, ambiguous and unintelligible. Without waving this

8  objection, Defendant responds: Denied.

9  **REQUEST FOR ADMISSION NO. 29:**

10      Admit that the Neo4j, Inc.'s Trademark Guidelines in **Exhibit B** have been in effect since

11  Neo4j, Inc. filed this lawsuit against GFI on October 1, 2019 through the date of these requests.

12  **RESPONSE:**

13      Defendant objects to this request on the ground that its use of the term "in effect" is vague,

14  ambiguous, and unintelligible. Without waiving this objection and subject to it, Defendant

15  responds that it is without sufficient information to admit or deny this request and, on that basis,

16  denies the request.

17  **SUPPLEMENTAL RESPONSE:**

18      Defendant admits that it became aware when it was served with the Complaint in this

19  action that Neo4J, Inc. claimed that it had Trademark Guidelines in the form attached to the

20  Complaint and that Neo4j, Inc. had posted purported Trademark Guidelines on its website.

21  Defendant is without sufficient information to admit or deny the remainder of the request and, on

22  that basis, denies the request.

23  **REQUEST FOR ADMISSION NO. 30:**

24      Admit that the Neo4j, Inc.'s Trademark Guidelines in **Exhibit B** were viewable on Neo4j,

25  Inc.'s website as of June 10, 2020.

26  **RESPONSE:**

27      Defendant is without sufficient information to admit or deny this request and, on that basis,

28  denies the request.

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

**REQUEST FOR ADMISSION NO. 31:**

Admit that GFI's use of the NEO4J® Mark in the title of its webpage https://www.graphfoundation.org/projects/ongdb/ as of June 10, 2020 violated Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B**.

**RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document and, on that basis, denies the request.

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document. Without waiving these objections, and subject to them, Defendant admits that it used the word "Neo4j" on the identified website. The remainder of the request seeks a legal conclusion or interpretation of Exhibit B and, on that basis, Defendant denies the remainder of the request.

**REQUEST FOR ADMISSION NO. 32:**

Admit that GFI's use of "neo4j enterprise" in all lower case on its website, www.graphfoundation.org, violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B**.

**RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document and on that basis denies the request.

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

**SER_3693**

1 **SUPPLEMENTAL RESPONSE:**

2       Defendant objects to this request on the ground that it seeks information that is irrelevant

3 and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

4 objects to this request on the ground that it requires the interpretation of a document and seeks a

5 legal conclusion or interpretation of that document.  Without waiving these objections, and subject

6 to them, Defendant admits that it used the phrase "neo4j enterprise" on the identified website.  The

7 remainder of the request seeks a legal conclusion or interpretation of Exhibit B and, on that basis,

8 Defendant denies the remainder of the request.

9 **REQUEST FOR ADMISSION NO. 33:**

10       Admit that GFI's use of "neo4j enterprise" without proper trademark notice on its website,

11 www.graphfoundation.org, violates Neo4j, Inc.'s Trademark Guidelines attached hereto as

12 **Exhibit B.**

13 **RESPONSE:**

14       Defendant objects to this request on the ground that it seeks information that is irrelevant

15 and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

16 objects to this request on the ground that it requires the interpretation of a document and seeks a

17 legal conclusion or interpretation of that document and on that basis denies the request.

18 **SUPPLEMENTAL RESPONSE:**

19       Defendant objects to this request on the ground that it seeks information that is irrelevant

20 and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

21 objects to this request on the ground that it requires the interpretation of a document and seeks a

22 legal conclusion or interpretation of that document.  Without waiving these objections, and subject

23 to them, Defendant admits that it used the phrase "neo4j enterprise" on the identified website.  The

24 remainder of the request seeks a legal conclusion or interpretation of Exhibit B and, on that basis,

25 Defendant denies the remainder of the request.

26 **REQUEST FOR ADMISSION NO. 34:**

27       Admit that GFI's use of "neo4j" in all lower case on its website,

28 www.graphfoundation.org, violates Neo4j, Inc.'s Trademark Guidelines attached hereto as

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

**Exhibit B.**

**RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document and on that basis denies the request.

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document. Without waiving these objections, and subject to them, Defendant admits that it used the word "neo4j" on the identified website. The remainder of the request seeks a legal conclusion or interpretation of Exhibit B and, on that basis, Defendant denies the remainder of the request.

**REQUEST FOR ADMISSION NO. 35:**

Admit that GFI's use of "neo4j" without proper trademark notice on its website, www.graphfoundation.org, violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

**RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document and on that basis denies the request.

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document. Without waiving these objections, and subject

14

to them, Defendant admits that it used the word "neo4j" on the identified website.  The remainder

of the request seeks a legal conclusion or interpretation of Exhibit B and, on that basis, Defendant

denies the remainder of the request.

**REQUEST FOR ADMISSION NO. 36:**

Admit that GFI's use of "Neo4j Enterprise" on its website, www.graphfoundation.org,

violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

**RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant

and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

objects to this request on the ground that it requires the interpretation of a document and seeks a

legal conclusion or interpretation of that document and on that basis denies the request.

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant

and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

objects to this request on the ground that it requires the interpretation of a document and seeks a

legal conclusion or interpretation of that document.  Without waiving these objections, and subject

to them, Defendant admits that it used the phrase "Neo4j Enterprise" on the identified website.

The remainder of the request seeks a legal conclusion or interpretation of Exhibit B and, on that

basis, Defendant denies the remainder of the request.

**REQUEST FOR ADMISSION NO. 37:**

Admit that GFI's use of "Neo4j Enterprise" without proper trademark notice on its

website, www.graphfoundation.org, violates Neo4j, Inc.'s Trademark Guidelines attached hereto

as **Exhibit B.**

**RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant

and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

objects to this request on the ground that it requires the interpretation of a document and seeks a

legal conclusion or interpretation of that document and on that basis denies the request.

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document.  Without waiving these objections, and subject to them, Defendant admits that it used the phrase "Neo4j Enterprise" on the identified website. The remainder of the request seeks a legal conclusion or interpretation of Exhibit B and, on that basis, Defendant denies the remainder of the request.

**REQUEST FOR ADMISSION NO. 38:**

Admit that GFI's use of hyperlinks to documents on Neo4j, Inc.'s website violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

**RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document and on that basis denies the request.

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document.  Without waiving these objections, and subject to them, Defendant admits that has used hyperlinks to Neo4j, Inc.'s website on its GitHub repository.  The remainder of the request seeks a legal conclusion or interpretation of Exhibit B and, on that basis, Defendant denies the remainder of the request.

**REQUEST FOR ADMISSION NO. 39:**

Admit that GFI's use of hyperlinks to documents on Neo4j Sweden AB's Github source code repository violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

16

SER_3697

**RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document and on that basis denies the request.

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document.  Without waiving these objections, and subject to them, Defendant admits that it used hyperlinks to Neo4j Sweden AB's Github repository on Defendant's Github repository.  The remainder of the request seeks a legal conclusion or interpretation of Exhibit B and, on that basis, Defendant denies the remainder of the request.

**REQUEST FOR ADMISSION NO. 40:**

Admit that GFI's use of hyperlinks to documents on Neo4j, Inc.'s website does not constitute nominative fair use of the NEO4J® Mark.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 41:**

Admit that GFI's use of "neo4j" in hyperlinks to documents on Neo4j, Inc.'s website does not constitute nominative fair use of the NEO4J® Mark.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 42:**

Admit that GFI's use of hyperlinks to documents on Neo4j Sweden AB's Github source code repository does not constitute nominative fair use of the NEO4J® Mark.

**RESPONSE:**

Denied.

17

SER_3698

**REQUEST FOR ADMISSION NO. 43:**

Admit that GFI's use of "neo4j" in hyperlinks to Neo4j Sweden AB's Github source code repository does not constitute nominative fair use of the NEO4J® Mark.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 44:**

Admit that GFI's use of "Neo4j Enterprise" to describe ONgDB violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

**RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document and on that basis denies the request.

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document. Without waiving these objections, and subject to them, Defendant admits that it used the phrase "Neo4j Enterprise" in connection with its description of ONgDB as a fork of Neo4j Enterprise. The remainder of the request seeks a legal conclusion or interpretation of Exhibit B and, on that basis, Defendant denies the remainder of the request.

**REQUEST FOR ADMISSION NO. 45:**

Admit that GFI's use of "Neo4j Enterprise" to describe ONgDB does not constitute fair use of the NEO4J® Mark.

**RESPONSE:**

Denied.

18

1  **REQUEST FOR ADMISSION NO. 46:**

2       Admit that GFI's interchangeable use of "Neo4j Enterprise" with "ONgDB" on GFI's

3  website without proper trademark notices violates Neo4j, Inc.'s Trademark Guidelines attached

4  hereto as **Exhibit B**.

5  **RESPONSE:**

6       Defendant objects to this request on the ground that it seeks information that is irrelevant

7  and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

8  objects to this request on the ground that it requires the interpretation of a document and seeks a

9  legal conclusion or interpretation of that document and on that basis denies the request.

10 **REQUEST FOR ADMISSION NO. 47:**

11      Admit that GFI's interchangeable use of "Neo4j Enterprise" with "ONgDB" on GFI's

12 website does not constitute nominative fair use of the NEO4J® Mark.

13 **RESPONSE:**

14      Denied.

15 **REQUEST FOR ADMISSION NO. 48:**

16      Admit that GFI's use of "Neo4j Enterprise" on GFI's website without proper trademark

17 notices violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B**.

18 **RESPONSE:**

19      Defendant objects to this request on the ground that it seeks information that is irrelevant

20 and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

21 objects to this request on the ground that it requires the interpretation of a document and seeks a

22 legal conclusion or interpretation of that document and on that basis denies the request.

23 **SUPPLEMENTAL RESPONSE:**

24      Defendant objects to this request on the ground that it seeks information that is irrelevant

25 and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

26 objects to this request on the ground that it requires the interpretation of a document and seeks a

27 legal conclusion or interpretation of that document.  Without waiving these objections, and subject

28 to them, Defendant admits that it used the phrase "Neo4j Enterprise" in connection with its

19

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1  description of ONgDB as a fork of Neo4j Enterprise.  The remainder of the request seeks a legal

2  conclusion or interpretation of Exhibit B and, on that basis, Defendant denies the remainder of the

3  request.

4  **REQUEST FOR ADMISSION NO. 49:**

5      Admit that GFI's use of "Neo4j Enterprise" without proper trademark notices does not

6  constitute nominative fair use of the NEO4J® Mark.

7  **RESPONSE:**

8      Denied.

9  **REQUEST FOR ADMISSION NO. 50:**

10     Admit that Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B** prohibit GFI

11  from using the NEO4J® Mark in conjunction with modified open source software based on the

12  Neo4j® graph database platform.

13  **RESPONSE:**

14     Defendant objects to this request on the ground that it seeks information that is irrelevant

15  and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

16  objects to this request on the ground that it requires the interpretation of a document and seeks a

17  legal conclusion or interpretation of that document and on that basis denies the request.

18  **REQUEST FOR ADMISSION NO. 51:**

19     Admit that Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B** prohibit GFI

20  from using the NEO4J® Mark in conjunction with advertising its ONgDB software.

21  **RESPONSE:**

22     Defendant objects to this request on the ground that it seeks information that is irrelevant

23  and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

24  objects to this request on the ground that it requires the interpretation of a document and seeks a

25  legal conclusion or interpretation of that document and on that basis denies the request.

26  **SUPPLEMENTAL RESPONSE:**

27     Defendant objects to this request on the ground that it seeks information that is irrelevant

28  and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

20

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1  objects to this request on the ground that it requires the interpretation of a document and seeks a

2  legal conclusion or interpretation of that document.  Without waiving these objections, and subject

3  to them, Defendant admits that it used the word "Neo4j" in connection with its description of

4  ONgDB as a fork of Neo4j Enterprise.  The remainder of the request seeks a legal conclusion or

5  interpretation of Exhibit B and, on that basis, Defendant denies the remainder of the request.

6  **REQUEST FOR ADMISSION NO. 52:**

7      Admit that Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B** prohibit GFI

8  from calling ONgDB software "Neo4j Enterprise."

9  **RESPONSE:**

10      Defendant objects to this request on the ground that it seeks information that is irrelevant

11  and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

12  objects to this request on the ground that it requires the interpretation of a document and seeks a

13  legal conclusion or interpretation of that document and on that basis denies the request.

14  **SUPPLEMENTAL RESPONSE:**

15      Defendant objects to this request on the ground that it seeks information that is irrelevant

16  and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

17  objects to this request on the ground that it requires the interpretation of a document and seeks a

18  legal conclusion or interpretation of that document.  Without waiving these objections, and subject

19  to them, Defendant admits that it used the phrase "Neo4j Enterprise" in connection with its

20  description of ONgDB as a fork of Neo4j Enterprise.  The remainder of the request seeks a legal

21  conclusion or interpretation of Exhibit B and, on that basis, Defendant denies the remainder of the

22  request.

23  **REQUEST FOR ADMISSION NO. 53:**

24      Admit that Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B** prohibit GFI

25  from describing ONgDB software as "Neo4j Enterprise."

26  **RESPONSE:**

27      Defendant objects to this request on the ground that it seeks information that is irrelevant

28  and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

21

**SER_3702**

1   objects to this request on the ground that it requires the interpretation of a document and seeks a

2   legal conclusion or interpretation of that document and on that basis denies the request.

3   **SUPPLEMENTAL RESPONSE:**

4        Defendant objects to this request on the ground that it seeks information that is irrelevant

5   and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

6   objects to this request on the ground that it requires the interpretation of a document and seeks a

7   legal conclusion or interpretation of that document.  Without waiving these objections, and subject

8   to them, Defendant admits that it used the phrase "Neo4j Enterprise" in connection with its

9   description of ONgDB as a fork of Neo4j Enterprise.  The remainder of the request seeks a legal

10  conclusion or interpretation of Exhibit B and, on that basis, Defendant denies the remainder of the

11  request.

12  **REQUEST FOR ADMISSION NO. 54:**

13       Admit that GFI used the NEO4J® Mark in **Exhibit C**.

14  **RESPONSE:**

15       Defendant admits that Exhibit C is a true copy of the

16  https://www.graphfoundation.org/projects/ongdb/ webpage.  Defendant admits that "Neo4j"

17  appears on the webpage.  Defendant objects to the request on the ground that its use of the term

18  "used" renders it vague, ambiguous, and unintelligible and, on that basis, Defendant denies the

19  remainder of the request.

20  **RESPONSE:**

21       Defendant objects to this request on the ground that its use of the term "used the NEO4J(r)

22  Mark" is vague, ambiguous, and unintelligible.  Defendant admits that Exhibit C is a true copy of

23  the https://www.graphfoundation.org/projects/ongdb/ webpage.  Defendant admits that it used the

24  word "Neo4j" on the webpage.

25  **REQUEST FOR ADMISSION NO. 55:**

26       Admit that GFI's use of "neo4j" in all lower case in **Exhibit C** violates Neo4j, Inc.'s

27  Trademark Guidelines attached hereto as **Exhibit B.**

28

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

**SER_3703**

**RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document and on that basis denies the request.

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document. Without waiving these objections, and subject to them, Defendant admits that Exhibit C is a true copy of the https://www.graphfoundation.org/projects/ongdb/ webpage. Defendant admits that it used the word "neo4j" on the identified webpage. The remainder of the request seeks a legal conclusion or interpretation of Exhibit B and, on that basis, Defendant denies the remainder of the request.

**REQUEST FOR ADMISSION NO. 56:**

Admit that GFI's use of "neo4j" in all lower case in **Exhibit C** does not constitute nominative fair use of the NEO4J® Mark.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 57:**

Admit that GFI's use of "neo4j" in all lower case in **Exhibit C** infringes the NEO4J® Mark.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 58:**

Admit that GFI's use of "neo4j enterprise project" in all lower case in **Exhibit C** violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

23

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

**RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document and on that basis denies the request.

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document.  Without waiving these objections, and subject to them, Defendant admits that Exhibit C is a true copy of the https://www.graphfoundation.org/projects/ongdb/ webpage.  Defendant admits that it used the phrase "neo4j enterprise project" on the identified webpage.  The remainder of the request seeks a legal conclusion or interpretation of Exhibit B and, on that basis, Defendant denies the remainder of the request.

**REQUEST FOR ADMISSION NO. 59:**

Admit that GFI's use of "neo4j enterprise project" in **Exhibit C** does not constitute nominative fair use of the NEO4J® Mark.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 60:**

Admit that GFI's use of "neo4j enterprise project" in **Exhibit C** infringes the NEO4J® Mark.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 61:**

Admit that GFI's use of "neo4j enterprise" in all lower case in **Exhibit C** violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

24

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1   **RESPONSE:**

2       Defendant objects to this request on the ground that it seeks information that is irrelevant

3   and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

4   objects to this request on the ground that it requires the interpretation of a document and seeks a

5   legal conclusion or interpretation of that document and on that basis denies the request.

6   **SUPPLEMENTAL RESPONSE:**

7       Defendant objects to this request on the ground that it seeks information that is irrelevant

8   and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

9   objects to this request on the ground that it requires the interpretation of a document and seeks a

10  legal conclusion or interpretation of that document.  Without waiving these objections, and subject

11  to them, Defendant admits that Exhibit C is a true copy of the

12  https://www.graphfoundation.org/projects/ongdb/ webpage.  Defendant admits that it used the

13  phrase "neo4j enterprise project" on the identified webpage.  The remainder of the request seeks a

14  legal conclusion or interpretation of Exhibit B and, on that basis, Defendant denies the remainder

15  of the request.

16  **REQUEST FOR ADMISSION NO. 62:**

17      Admit that GFI's use of "neo4j enterprise" in **Exhibit C** does not constitute nominative

18  fair use of the NEO4J® Mark.

19  **RESPONSE:**

20      Denied.

21  **REQUEST FOR ADMISSION NO. 63:**

22      Admit that GFI's use of "neo4j enterprise" in **Exhibit C** infringes the NEO4J® Mark.

23  **RESPONSE:**

24      Denied.

25  **REQUEST FOR ADMISSION NO. 64:**

26      Admit that **Exhibit D** attached hereto is a true and correct printout of the

27  README.asciidoc posted GFI's ONgDB source code repository located at www.github.com as it

28  existed on January 17, 2019.

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1  **RESPONSE:**

2      Defendant admits that Exhibit D is a printout of the README.asciidoc from Defendant's

3  repository on GitHub. Defendant denies that Exhibit D is a true and correct printout taken on

4  January 17, 2019 as the details do not match the state of the README.asciidoc file as of commit

5  f0a7db48c8fcac6defa956fb022758ef3d8a8220 dated January 16, 2019 which was merged on

6  January 17, 2019. A true and accurate version of the README.asciidoc has been provided that

7  was taken as of commit f0a7db48c8fcac6defa956fb022758ef3d8a8220.

8  **REQUEST FOR ADMISSION NO. 65:**

9      Admit that GFI used the NEO4J® Mark in **Exhibit D**.

10  **RESPONSE:**

11      Defendant admits that Exhibit D is a true copy of a webpage from Defendant's repository

12  on GitHub.  Defendant admits that "Neo4j" appears on the webpage.  Defendant objects to the

13  request on the ground that its use of the term "used" renders it vague, ambiguous, and

14  unintelligible and, on that basis, Defendant denies the remainder of the request.

15  **SUPPLEMENTAL RESPONSE:**

16      Defendant objects to this request on the ground that its use of the phrase "used the

17  NEO4J(r) Mark" is vague, ambiguous, and unintelligible.  Without waiving this objection and

18  subject to it, Defendant admits that Exhibit D is a true copy of a webpage from Defendant's

19  repository on GitHub.  Defendant admits it used the word "Neo4j" on the webpage.

20  **REQUEST FOR ADMISSION NO. 66:**

21      Admit that as of January 16, 2019, the README.asciidoc posted GFI's ONgDB source

22  code repository located at www.github.com stated that "Neo4j Enterprise consists of modules

23  from Neo4j Community Edition and modules licensed under AGPLv3 with the Commons Clause

24  in this repository, and other closed sourced components not present in this repository.

25  **RESPONSE:**

26      Defendant objects to this request on the ground that it seeks information that is irrelevant

27  and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant denies

28  the request as the stated text in the request does not match the state of the README.asciidoc file

26

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1  as of commit f0a7db48c8fcac6defa956fb022758ef3d8a8220 dated January 16, 2019 that was

2  merged on January 17, 2019 which states "ONgDB & Neo4j Enterprise consists of modules from

3  Neo4j Community Edition and modules licensed under AGPLv3 in this repository."

4  **REQUEST FOR ADMISSION NO. 67:**

5      Admit that as of January 16, 2019, the README.asciidoc posted GFI's ONgDB source

6  code repository located at www.github.com stated that "When packaged as a binary, Enterprise

7  Edition includes additional closed-source components *not available in this repository* and requires

8  a commercial license from Neo4j Sweden AB or one of its affiliates."

9  **RESPONSE:**

10     Defendant denies the request as the stated text does not exist in entirety in the

11 README.asciidoc file as of commit f0a7db48c8fcac6defa956fb022758ef3d8a8220 dated January

12 16, 2019 which was merged on January 17, 2019.

13 **REQUEST FOR ADMISSION NO. 68:**

14     Admit that as of January 16, 2019, the README.asciidoc posted GFI's ONgDB source

15 code repository located at www.github.com stated "Neo4j: Graphs for Everyone."

16 **RESPONSE:**

17     Defendant denies the request as the stated text does not match the contents of the

18 README.asciidoc file as of commit f0a7db48c8fcac6defa956fb022758ef3d8a8220 dated January

19 16, 2019 which was merged on January 17, 2019 which states "ONgDB - Neo4j Enterprise Fork:

20 Graphs for Everyone."

21 **REQUEST FOR ADMISSION NO. 69:**

22     Admit that GFI did not have Neo4j, Inc.'s authorization to use the NEO4J® Mark in the

23 heading "Neo4j: Graphs for Everyone" in the README.asciidoc posted GFI's ONgDB source

24 code repository located at www.github.com.

25 **RESPONSE:**

26     Defendant objects to this Request on the ground that its use of the term "use the NEO4J(r)

27 Mark" renders it vague, ambiguous, and unintelligible.  Without waving this objection, Defendant

28 admits that it did not enter into an agreement with Neo4j, Inc. to use the word "Neo4j" on the

27

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1   identified web page on that date.

2   **SUPPLEMENTAL RESPONSE:**

3       Defendant objects to this Request on the ground that its use of the term "used the

4   NEO4J(r) Mark in the title renders it vague, ambiguous and unintelligible.  Without waving this

5   objection, Defendant admits that it did not receive authorization from Neo4j, Inc. to use the word

6   "Neo4j" on the identified web page on that date.

7   **REQUEST FOR ADMISSION NO. 70:**

8       Admit that GFI's prior use the NEO4J® Mark in the heading "Neo4j: Graphs for

9   Everyone" in the README.asciidoc posted GFI's ONgDB source code repository located at

10  www.github.com did not constitute nominative fair use of the NEO4J® Mark.

11  **RESPONSE:**

12      Denied.

13  **REQUEST FOR ADMISSION NO. 71:**

14      Admit that GFI's prior use the NEO4J® Mark in the heading "Neo4j: Graphs for

15  Everyone" in the README.asciidoc posted GFI's ONgDB source code repository located at

16  www.github.com was unlicensed.

17  **RESPONSE:**

18      Defendant objects to this Request on the ground that its use of the term "use the NEO4J(r)

19  Mark" renders it vague, ambiguous, and unintelligible.  Without waving this objection, Defendant

20  admits that it did not enter into an agreement with Neo4j, Inc. to use the word "Neo4j" on the

21  identified web page on that date.

22  **SUPPLEMENTAL RESPONSE:**

23      Defendant objects to this Request on the ground that its use of the term "used the

24  NEO4J(r) Mark" in the title renders it vague, ambiguous, and unintelligible.  Without waving this

25  objection, Defendant admits that it was not granted a license by Neo4j, Inc. to use the word

26  "Neo4j" on the identified web page on that date.

27

28

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

**REQUEST FOR ADMISSION NO. 72:**

Admit that GFI's prior use the NEO4J® Mark in the heading "Neo4j: Graphs for Everyone" in GFI's source code repository located at www.github.com infringed the NEO4J® Mark.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 73:**

Admit that **Exhibit E** attached hereto is a true and correct printout of the README.asciidoc posted GFI's ONgDB source code repository located at www.github.com as it existed on September 25, 2019.

**RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 74:**

Admit that GFI used the NEO4J® Mark in **Exhibit E**.

**RESPONSE:**

Defendant objects to this Request on the ground that its use of the term "use the NEO4J(r) Mark" renders it vague, ambiguous, and unintelligible.  Without waving this objection, Defendant admits that the word "Neo4j" was on the referenced web page on that date.

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this Request on the ground that its use of the term "use the NEO4J(r) Mark" renders it vague, ambiguous, and unintelligible.  Without waving this objection, Defendant admits that it used the word "Neo4j" on the referenced web page on that date.

**REQUEST FOR ADMISSION NO. 75:**

Admit that as of September 25, 2019, the README.asciidoc posted GFI's ONgDB source code repository located at www.github.com stated "ONgDB – Neo4j Enterprise Fork: Graphs for Everyone."

**RESPONSE:**

Admit.

29

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1  **REQUEST FOR ADMISSION NO. 76**:

2      Admit that GFI did not have Neo4j, Inc.'s authorization to use the NEO4J® Mark in the

3  heading "ONgDB – Neo4j Enterprise Fork: Graphs for Everyone" in GFI's source code repository

4  located at www.github.com.

5  **RESPONSE**:

6      Defendant objects to this Request on the ground that its use of the term "use the NEO4J(r)

7  Mark" renders it vague, ambiguous, and unintelligible.  Without waving this objection, Defendant

8  admits that it did not enter into an agreement with Neo4j, Inc. to use the word "Neo4j" on the

9  identified web page on that date.

10  **SUPPLEMENTAL RESPONSE**:

11      Defendant objects to this Request on the ground that its use of the term "used the

12  NEO4J(r) Mark in the title renders it vague, ambiguous and unintelligible.  Without waving this

13  objection, Defendant admits that it did not receive authorization from Neo4j, Inc. to use the word

14  "Neo4j" on the identified web page on that date.

15  **REQUEST FOR ADMISSION NO. 77**:

16      Admit that GFI's use the NEO4J® Mark in the heading "ONgDB – Neo4j Enterprise Fork:

17  Graphs for Everyone" in GFI's source code repository located at www.github.com did not

18  constitute nominative fair use of the NEO4J® Mark.

19  **RESPONSE**:

20      Denied.

21  **REQUEST FOR ADMISSION NO. 78**:

22      Admit that GFI's use the NEO4J® Mark in the heading "ONgDB – Neo4j Enterprise Fork:

23  Graphs for Everyone" in the README.asciidoc posted GFI's ONgDB source code repository

24  located at www.github.com was unlicensed.

25  **RESPONSE**:

26      Defendant objects to this Request on the ground that its use of the term "use the NEO4J(r)

27  Mark" renders it vague, ambiguous, and unintelligible.  Without waving this objection, Defendant

28  admits that it did not enter into an agreement with Neo4j, Inc. to use the word "Neo4j" on the

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

SER_3711

1  identified web page on that date.

2  **SUPPLEMENTAL RESPONSE:**

3        Defendant objects to this Request on the ground that its use of the term "used the

4  NEO4J(r) Mark" in the title renders it vague, ambiguous, and unintelligible.  Without waving this

5  objection, Defendant admits that it was not granted a license by Neo4j, Inc. to use the word

6  "Neo4j" on the identified web page on that date.

7  **REQUEST FOR ADMISSION NO. 79:**

8        Admit that GFI's use the NEO4J® Mark in the heading "ONgDB – Neo4j Enterprise Fork:

9  Graphs for Everyone" in the README.asciidoc posted GFI's ONgDB source code repository

10  located at www.github.com infringed the NEO4J® Mark.

11  **RESPONSE:**

12        Denied.

13  **REQUEST FOR ADMISSION NO. 80:**

14        Admit that prior to releasing ONgDB version 3.6, GFI did not use its own support

15  documentation for ONgDB software.

16  **RESPONSE:**

17        Defendant objects to this request on the ground that its use of the terms "did not use" and

18  "support documentation" render it vague, ambiguous, and unintelligible.  Without waiving this

19  objection, and subject to it, Defendant responds:  Denied

20  **REQUEST FOR ADMISSION NO. 81:**

21        Admit that prior to releasing ONgDB version 3.6, GFI relied upon Neo4j, Inc.'s official

22  documentation.

23  **RESPONSE:**

24        Defendant objects to this request on the ground that its use of the term "relied upon"

25  renders it vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it,

26  Defendant admits that it included hyperlinks to certain Neo4j manuals on certain of the webpages

27  in its GitHub repositories and on certain webpages on the www.graphfoundation.org website.

28

---

31

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1   **REQUEST FOR ADMISSION NO. 82:**

2       Admit that prior to releasing ONgDB version 3.6, GFI used hyperlinks on its website,

3   www.graphfoundation.org, which redirected users to Neo4j, Inc.'s official documentation for

4   Neo4j® software.

5   **RESPONSE:**

6       Admit.

7   **REQUEST FOR ADMISSION NO. 83:**

8       Admit that prior to releasing ONgDB version 3.6, GFI used hyperlinks on its source code

9   repository located at www.github.com, which redirected users to Neo4j, Inc.'s official

10  documentation for Neo4j® software.

11  **RESPONSE:**

12      Admit.

13  **REQUEST FOR ADMISSION NO. 84:**

14      Admit that as of September 24, 2019, GFI's README.asciidoc posted on GFI's ONgDB

15  source code repository located at www.github.com contained a hyperlink, "Neo4j documentation,"

16  which redirected users to https://github.com/neo4j/neo4j-documentation.

17  **RESPONSE:**

18      Admit

19  **REQUEST FOR ADMISSION NO. 85:**

20      Admit that **Exhibit F** attached hereto is a true and correct printout of GFI's webpage for

21  ONgDB version 3.4.9 as it existed on September 24, 2019.

22  **RESPONSE:**

23      Admit.

24  **REQUEST FOR ADMISSION NO. 86:**

25      Admit that GFI used the NEO4J® Mark in the title of GFI's webpage for ONgDB version

26  3.4.9 attached hereto as **Exhibit F**.

27  **RESPONSE:**

28      Defendant objects to this request on the ground that its use of the terms "used" and "title"

32

1    render it vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it,

2    Defendant admits that the word "Neo4j" appears on the referenced webpage.

3    **SUPPLEMENTAL RESPONSE:**

4         Defendant objects to this request on the ground that its use of the terms "used the NEO4J

5    Mark" and "title" render it vague, ambiguous, and unintelligible.  Without waiving this objection,

6    and subject to it, Defendant admits that it used the word "Neo4j" on the referenced webpage.

7    **REQUEST FOR ADMISSION NO. 87:**

8         Admit that the hyperlink embedded in the phrase "the changelog" in **Exhibit F** redirected

9    users to https://github.com/neo4j/neo4j/wiki/Neo4j-3.4-changelog.

10   **RESPONSE:**

11        Admit.

12   **REQUEST FOR ADMISSION NO. 88:**

13        Admit that as of September 24, 2019, the phrase "Look for 3.4 Developer manual here" on

14   GFI's webpage for ONgDB version 3.4.9 contained a hyperlink in the word "here" that redirected

15   users to http://neo4j.com/docs/developer-manual/current/.

16   **RESPONSE:**

17        Admit.

18   **REQUEST FOR ADMISSION NO. 89:**

19        Admit that as of September 24, 2019, the phrase "3.4 Operations manual here" on GFI's

20   webpage for ONgDB version 3.4.9 contained a hyperlink in the word "here" that redirected users

21   to http://neo4j.com/docs/operations-manual/current/.

22   **RESPONSE:**

23        Admit.

24   **REQUEST FOR ADMISSION NO. 90:**

25        Admit that **Exhibit G** attached hereto is a true and correct printout of GFI's webpage for

26   ONgDB version 3.4.11 as it existed on September 24, 2019.

27   **RESPONSE:**

28        Admit.

33

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1  **REQUEST FOR ADMISSION NO. 91:**

2      Admit that GFI used the NEO4J® Mark in the title of GFI's webpage for ONgDB version

3  3.4.11 attached hereto as **Exhibit G**.

4  **RESPONSE:**

5      Defendant objects to this request on the ground that its use of the terms "used" and "title"

6  render it vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it,

7  Defendant admits that the word "Neo4j" appears on the referenced webpage.

8  **SUPPLEMENTAL RESPONSE:**

9      Defendant objects to this request on the ground that its use of the terms "used the NEO4J

10 Mark" and "title" render it vague, ambiguous, and unintelligible.  Without waiving this objection,

11 and subject to it, Defendant admits that it used the word "Neo4j" on the referenced webpage.

12 **REQUEST FOR ADMISSION NO. 92:**

13     Admit that the hyperlink embedded in the phrase "the changelog" in **Exhibit G** redirected

14 users to https://github.com/neo4j/neo4j/wiki/Neo4j-3.4-changelog.

15 **RESPONSE:**

16     Admit.

17 **REQUEST FOR ADMISSION NO. 93:**

18     Admit that as of September 24, 2019, the phrase "Look for 3.4 Developer manual here" on

19 GFI's webpage for ONgDB version 3.4.11 contained a hyperlink in the word "here" that

20 redirected users to http://neo4j.com/docs/developer-manual/current/.

21 **RESPONSE:**

22     Admit.

23 **REQUEST FOR ADMISSION NO. 94:**

24     Admit that as of September 24, 2019, the phrase "3.4 Operations manual here" on GFI's

25 webpage for ONgDB version 3.4.11 contained a hyperlink in the word "here" that redirected users

26 to http://neo4j.com/docs/operations-manual/current/.

27 **RESPONSE:**

28     Admit.

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

**SER_3715**

**REQUEST FOR ADMISSION NO. 95:**

Admit that **Exhibit H** attached hereto is a true and correct printout of GFI's webpage for ONgDB version 3.4.12 as it existed on September 24, 2019.

**RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 96:**

Admit that GFI used the NEO4J® Mark in the title of GFI's webpage for ONgDB version 3.4.12 attached hereto as **Exhibit H**.

**RESPONSE:**

Defendant objects to this request on the ground that its use of the terms "used" and "title" render it vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it, Defendant admits that the word "Neo4j" appears on the referenced webpage.

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this request on the ground that its use of the terms "used the NEO4J(r) Mark" and "title" render it vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it, Defendant admits that it used the word "Neo4j" on the referenced webpage.

**REQUEST FOR ADMISSION NO. 97:**

Admit that the hyperlink embedded in the phrase "the changelog" in **Exhibit H** redirected users to https://github.com/neo4j/neo4j/wiki/Neo4j-3.4-changelog.

**RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 98:**

Admit that prior to September 25, 2019, GFI stated on its webpage for ONgDB version 3.4.12 "Look for 3.4 Developer manual here," which contained a hyperlink in the word "here" that redirected users to http://neo4j.com/docs/developer-manual/current/.

**RESPONSE:**

Admit.

35

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

SER_3716

**REQUEST FOR ADMISSION NO. 99**:

Admit that as of September 24, 2019, the phrase "Look for 3.4 Developer manual here" on GFI's webpage for ONgDB version 3.4.12 contained a hyperlink in the word "here" that redirected users to http://neo4j.com/docs/developer-manual/current/.

**RESPONSE**:

Admit.

**REQUEST FOR ADMISSION NO. 100**:

Admit that as of September 24, 2019, the phrase "3.4 Operations manual here" on GFI's webpage for ONgDB version 3.4.12 contained a hyperlink in the word "here" that redirected users to http://neo4j.com/docs/operations-manual/current/.

**RESPONSE**:

Admit.

**REQUEST FOR ADMISSION NO. 101**:

Admit that **Exhibit I** attached hereto is a true and correct printout of GFI's webpage for ONgDB version 3.5.1 as it existed on September 24, 2019.

**RESPONSE**:

Admit.

**REQUEST FOR ADMISSION NO. 102**:

Admit that GFI used the NEO4J® Mark in the title of GFI's webpage for ONgDB version 3.5.1 attached hereto as **Exhibit I**.

**RESPONSE**:

Defendant objects to this request on the ground that its use of the terms "used" and "title" render it vague, ambiguous, and unintelligible. Without waiving this objection, and subject to it, Defendant admits that the word "Neo4j" appears on the referenced webpage.

**SUPPLEMENTAL RESPONSE**:

Defendant objects to this request on the ground that its use of the terms "used the NEO4J(r) Mark" and "title" render it vague, ambiguous, and unintelligible. Without waiving this objection, and subject to it, Defendant admits that it used the word "Neo4j" on the referenced

36

1  webpage.

2  **REQUEST FOR ADMISSION NO. 103:**

3    Admit that the hyperlink embedded in the phrase "the changelog" in **Exhibit I** redirected

4  users to https://github.com/neo4j/neo4j/wiki/Neo4j-3.5-changelog.

5  **RESPONSE:**

6    Admit.

7  **REQUEST FOR ADMISSION NO. 104:**

8    Admit that as of September 24, 2019, the phrase "Look for 3.5 Developer manual here" on

9  GFI's webpage for ONgDB version 3.5.1 contained a hyperlink in the word "here" that redirected

10  users to redirected users to https://neo4j.com/docs/operations-manual/3.5/.

11  **RESPONSE:**

12    Admit.

13  **REQUEST FOR ADMISSION NO. 105:**

14    Admit that **Exhibit J** attached hereto is a true and correct printout of GFI's webpage for

15  ONgDB version 3.5.3 as it existed on September 24, 2019.

16  **RESPONSE:**

17    Admit.

18  **REQUEST FOR ADMISSION NO. 106:**

19    Admit that GFI used the NEO4J® Mark in the title of GFI's webpage for ONgDB version

20  3.5.3 attached hereto as **Exhibit J**.

21  **RESPONSE:**

22    Defendant objects to this request on the ground that its use of the terms "used" and "title"

23  render it vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it,

24  Defendant admits that the word "Neo4j" appears on the referenced webpage.

25  **SUPPLEMENTAL RESPONSE:**

26    Defendant objects to this request on the ground that its use of the terms "used the

27  NEO4J(r) Mark" and "title" render it vague, ambiguous, and unintelligible.  Without waiving this

28  objection, and subject to it, Defendant admits that it used the word "Neo4j" on the referenced

37

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1  webpage.

2  **REQUEST FOR ADMISSION NO. 107:**

3    Admit that the hyperlink embedded in the phrase "the changelog" in **Exhibit J** redirected

4  users to https://github.com/neo4j/neo4j/wiki/Neo4j-3.5-changelog.

5  **RESPONSE:**

6    Admit.

7  **REQUEST FOR ADMISSION NO. 108:**

8    Admit that as of September 24, 2019, the phrase "Look for 3.5 Developer manual here" on

9  GFI's webpage for ONgDB version 3.5.3 contained a hyperlink in the word "here" that redirected

10  users to redirected users to https://neo4j.com/docs/operations-manual/3.5/.

11  **RESPONSE:**

12    Admit.

13  **REQUEST FOR ADMISSION NO. 109:**

14    Admit that **Exhibit A** attached hereto is a true and correct printout of GFI's webpage for

15  ONgDB version 3.5.4 as it existed on September 24, 2019.

16  **RESPONSE:**

17    Admit.

18  **REQUEST FOR ADMISSION NO. 110:**

19    Admit that the hyperlink embedded in the phrase "the changelog" in **Exhibit A** redirected

20  users to https://github.com/neo4j/neo4j/wiki/Neo4j-3.5-changelog.

21  **RESPONSE:**

22    Admit.

23  **REQUEST FOR ADMISSION NO. 111:**

24    Admit that as of September 24, 2019, the phrase "Look for 3.5 Developer manual here" on

25  GFI's webpage for ONgDB version 3.5.4 contained a hyperlink in the word "here" that redirected

26  users to redirected users to https://neo4j.com/docs/operations-manual/3.5/.

27  **RESPONSE:**

28    Admit.

38

1  **REQUEST FOR ADMISSION NO. 112:**

2      Admit that prior to September 25, 2019, you did not obtain Neo4j, Inc.'s authorization to

3  use Neo4j, Inc.'s Developer Manuals for Neo4j® Software with ONgDB Software.

4  **RESPONSE:**

5      Defendant objects to this request on the ground that its use of the terms "authorization" and

6  "use" is vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it,

7  Defendant responds:  Denied because the Developer Manual is licensed under the Creative

8  Commons License.

9  **REQUEST FOR ADMISSION NO. 113:**

10     Admit that prior to September 25, 2019, you did not obtain Neo4j, Inc.'s authorization to

11 use Neo4j, Inc.'s Operations Manuals for Neo4j® Software with ONgDB Software.

12 **RESPONSE:**

13     Defendant objects to this request on the ground that its use of the terms "authorization" and

14 "use" is vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it,

15 Defendant responds:  Denied because the Operations Manual is licensed under the Creative

16 Commons License.

17 **REQUEST FOR ADMISSION NO. 114:**

18     Admit that prior to September 25, 2019, you did not obtain Neo4j, Inc.'s authorization to

19 use Neo4j, Inc.'s change logs for Neo4j® Software.

20 **RESPONSE:**

21     Defendant objects to this request on the ground that its use of the terms "authorization" and

22 "use" is vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it,

23 Defendant responds:  Denied as the change logs are public without license or attribution on a

24 Github Wiki.

25 **REQUEST FOR ADMISSION NO. 115:**

26     Admit that **Exhibit L** attached hereto is a true and correct printout of GFI's "ONgDB 3.4

27 Docs" webpage located at https://github.com/graphfoundation/ongdb/wiki/ONgDB-3.4-Docs as it

28 existed on August 12, 2020.

<center>39</center>

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1 **RESPONSE:**

2    Admit.

3 **REQUEST FOR ADMISSION NO. 116:**

4    Admit between April 9, 2020 and August 12, 2020 the hyperlink embedded in the phrase

5 "Developer Manual" in **Exhibit L** redirected users to https://neo4j.com/docs/developer-

6 manual/3.4/.

7 **RESPONSE:**

8    Admit.

9 **REQUEST FOR ADMISSION NO. 117:**

10    Admit between April 9, 2020 and August 12, 2020 the hyperlink embedded in the phrase

11 "Operations Manual" in **Exhibit L** redirected users to https://neo4j.com/docs/operations-

12 manual/3.4/.

13 **RESPONSE:**

14    Admit.

15 **REQUEST FOR ADMISSION NO. 118:**

16    Admit that **Exhibit M** attached hereto is a true and correct printout of GFI's "Docs"

17 webpage located at https://github.com/graphfoundation/ongdb/wiki/Docs as it existed on June 10,

18 2020.

19 **RESPONSE:**

20    Admit.

21 **REQUEST FOR ADMISSION NO. 119:**

22    Admit between March 26, 2020 and June 10, 2020 the hyperlink embedded in the phrase

23 "ONgDB 3.5" in **Exhibit M** redirected users to https://neo4j.com/docs/operations-manual/3.5/.

24 **RESPONSE:**

25    Admit.

26 **REQUEST FOR ADMISSION NO. 120:**

27    Admit between March 26, 2020 and June 10, 2020 the hyperlink embedded in the phrase

28 "ONgDB 3.4" in **Exhibit M** redirected users to https://neo4j.com/docs/operations-manual/3.4/.

40

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

**SER_3721**

1    **RESPONSE:**

2        Admit.

3    **REQUEST FOR ADMISSION NO. 121:**

4        Admit as of August 14, 2020, the hyperlink embedded in the phrase "ONgDB 3.5" on the

5    webpage https://github.com/graphfoundation/ongdb/wiki/Docs redirected users to

6    https://neo4j.com/docs/operations-manual/3.5/.

7    **RESPONSE:**

8        Admit.

9    **REQUEST FOR ADMISSION NO. 122:**

10       Admit as of August 14, 2020, the hyperlink embedded in the phrase "ONgDB 3.4" on the

11   webpage https://github.com/graphfoundation/ongdb/wiki/Docs redirected users to

12   https://neo4j.com/docs/operations-manual/3.4/.

13   **RESPONSE:**

14       Admit.

15   **REQUEST FOR ADMISSION NO. 123:**

16       Admit that GFI never authored a developer manual for ONgDB version 3.4.9.

17   **RESPONSE:**

18       Defendant objects to this request on the ground that its use of the term "developer manual"

19   renders it vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it,

20   Defendant responds:  Admit.

21   **REQUEST FOR ADMISSION NO. 124:**

22       Admit that GFI never authored a developer manual for ONgDB version 3.4.11.

23   **RESPONSE:**

24       Defendant objects to this request on the ground that its use of the term "developer manual"

25   renders it vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it,

26   Defendant responds:  Admit.

27   **REQUEST FOR ADMISSION NO. 125:**

28       Admit that GFI never authored a developer manual for ONgDB version 3.4.12.

41

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

**SER_3722**

1  **RESPONSE:**

2     Defendant objects to this request on the ground that its use of the term "developer manual"

3  renders it vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it,

4  Defendant responds:  Admit.

5  **REQUEST FOR ADMISSION NO. 126:**

6     Admit that GFI has never authored a developer manual for any of version of ONgDB prior

7  to its release of ONgDB version 3.6.

8  **RESPONSE:**

9     Defendant objects to this request on the ground that its use of the term "developer manual"

10  renders it vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it,

11  Defendant responds:  Admit.

12  **REQUEST FOR ADMISSION NO. 127:**

13     Admit that prior to September 25, 2019, you did not obtain Neo4j, Inc.'s authorization to

14  use Neo4j, Inc.'s then-current Operations Manual for Neo4j® Software with ONgDB software.

15  **RESPONSE:**

16     Defendant objects to this request on the ground that its use of the terms "authorization" and

17  "use" is vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it,

18  Defendant responds:  Denied because the Operations Manual is licensed under the Creative

19  Commons License.

20  **REQUEST FOR ADMISSION NO. 128:**

21     Admit that you have never sought Neo4j, Inc.'s authorization to use "The Neo4j

22  Operations Manual v3.4" with ONgDB software.

23  **RESPONSE:**

24     Defendant objects to this request on the ground that its use of the terms "sought"

25  "authorization" and "use" is vague, ambiguous, and unintelligible.  Without waiving this

26  objection, and subject to it, Defendant admits that it has not contacted Neo4j, Inc. regarding the

27  use of the referenced manual but denies that such specific authorization is necessary under the

28  Creative Commons License.

42

SER_3723

**REQUEST FOR ADMISSION NO. 129:**

Admit that you have never sought Neo4j, Inc.'s authorization to use "The Neo4j Operations Manual v3.5" with ONgDB software.

**RESPONSE:**

Defendant objects to this request on the ground that its use of the terms "sought" "authorization" and "use" is vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it, Defendant admits that it has not contacted Neo4j, Inc. regarding the use of the referenced manual but denies that such specific authorization is necessary under the Creative Commons License.

**REQUEST FOR ADMISSION NO. 130:**

Admit that GFI never authored an operations manual for ONgDB version 3.4.9.

**RESPONSE:**

Defendant objects to this request on the ground that its use of the term "operations manual" renders it vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it, Defendant responds:  Admit.

**REQUEST FOR ADMISSION NO. 131:**

Admit that GFI never authored an operations manual for ONgDB version 3.4.11.

**RESPONSE:**

Defendant objects to this request on the ground that its use of the term "developer manual" renders it vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it, Defendant responds:  Admit.

**REQUEST FOR ADMISSION NO. 132:**

Admit that GFI never authored an operations manual for ONgDB version 3.4.12.

**RESPONSE:**

Defendant objects to this request on the ground that its use of the term "developer manual" renders it vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it, Defendant responds:  Admit.

43

**REQUEST FOR ADMISSION NO. 133:**

Admit that GFI never authored an operations manual for ONgDB version 3.5.1.

**RESPONSE:**

Defendant objects to this request on the ground that its use of the term "developer manual" renders it vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it, Defendant responds:  Admit.

**REQUEST FOR ADMISSION NO. 134:**

Admit that GFI never authored an operations manual for ONgDB version 3.5.3.

**RESPONSE:**

Defendant objects to this request on the ground that its use of the term "developer manual" renders it vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it, Defendant responds:  Admit.

**REQUEST FOR ADMISSION NO. 135:**

Admit that GFI never authored an operations manual for ONgDB version 3.5.4.

**RESPONSE:**

Defendant objects to this request on the ground that its use of the term "developer manual" renders it vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it, Defendant responds:  Admit.

**REQUEST FOR ADMISSION NO. 136:**

Admit that GFI has never authored an operations manual for any of version of ONgDB prior to GFI's release of ONgDB version 3.6.

**RESPONSE:**

Defendant objects to this request on the ground that its use of the term "developer manual" renders it vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it, Defendant responds:  Admit.

**REQUEST FOR ADMISSION NO. 137:**

Admit that **Exhibit K** attached hereto is a true and correct printout of the webpage located at https://www.graphfoundation.org/neo4j-is-open-core-now-what-ujah7ein5mis/ as it existed on

44

SER_3725

1   September 24, 2019.

2   **RESPONSE:**

3       Admit.

4   **REQUEST FOR ADMISSION NO. 138:**

5       Admit that GFI's used the NEO4J® Mark in **Exhibit K.**

6   **RESPONSE:**

7       Defendant objects to this request on the grounds that its use of the terms "used" and

8   "Neo4J Mark" render it vague, ambiguous, and unintelligible.  Without waiving this objection,

9   and subject to it, Defendant admits that the word "Neo4j" appears on the referenced webpage.

10  **SUPPLEMENTAL RESPONSE:**

11      Defendant objects to this request on the grounds that its use of the terms "used the

12  NEO4J(r) Mark" and "Neo4J Mark" render it vague, ambiguous, and unintelligible.  Without

13  waiving this objection, and subject to it, Defendant admits that it used the word "Neo4j" on the

14  referenced webpage.

15  **REQUEST FOR ADMISSION NO. 139:**

16      Admit that GFI's use of "neo4j" in all lower case in **Exhibit K** violates Neo4j, Inc.'s

17  Trademark Guidelines attached hereto as **Exhibit B.**

18  **RESPONSE:**

19      Defendant objects to this request on the ground that it seeks information that is irrelevant

20  and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

21  objects to this request on the ground that it requires the interpretation of a document and seeks a

22  legal conclusion or interpretation of that document and on that basis, Defendant denies the request.

23  **REQUEST FOR ADMISSION NO. 140:**

24      Admit that GFI's use of "neo4j" without a trademark registration symbol in **Exhibit K**

25  violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

26  **RESPONSE:**

27      Defendant objects to this request on the ground that it seeks information that is irrelevant

28  and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

45

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1  objects to this request on the ground that it requires the interpretation of a document and seeks a

2  legal conclusion or interpretation of that document and on that basis, Defendant denies the request.

3  **REQUEST FOR ADMISSION NO. 141:**

4      Admit that GFI's use of "Neo4j" without a trademark registration symbol in **Exhibit K**

5  violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B**.

6  **RESPONSE:**

7      Defendant objects to this request on the ground that it seeks information that is irrelevant

8  and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

9  objects to this request on the ground that it requires the interpretation of a document and seeks a

10  legal conclusion or interpretation of that document and on that basis, Defendant denies the request.

11  **REQUEST FOR ADMISSION NO. 142:**

12      Admit that GFI's use of "neo4j" in all lower case in **Exhibit K** does not constitute

13  nominative fair use of the NEO4J® Mark.

14  **RESPONSE:**

15      Denied.

16  **REQUEST FOR ADMISSION NO. 143:**

17      Admit that GFI's use of "neo4j" in all lower case in **Exhibit K** infringes the NEO4J®

18  Mark.

19  **RESPONSE:**

20      Denied.

21  **REQUEST FOR ADMISSION NO. 144:**

22      Admit that GFI's use of "open source neo4j graph database" in all lower case in **Exhibit K**

23  violates Neo4j, Inc.'s Trademark Guidelines attached hereto as **Exhibit B.**

24  **RESPONSE:**

25      Defendant objects to this request on the ground that it seeks information that is irrelevant

26  and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

27  objects to this request on the ground that it requires the interpretation of a document and seeks a

28  legal conclusion or interpretation of that document and on that basis, Defendant denies the request.

46

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1   **REQUEST FOR ADMISSION NO. 145:**

2       Admit that GFI's use of "open source neo4j graph database" in all lower case in **Exhibit K**

3   does not constitute nominative fair use of the NEO4J® Mark.

4   **RESPONSE:**

5       Denied.

6   **REQUEST FOR ADMISSION NO. 146:**

7       Admit that GFI's use of "open source neo4j graph database" in all lower case in **Exhibit K**

8   infringes the NEO4J® Mark.

9   **RESPONSE:**

10       Denied.

11   **REQUEST FOR ADMISSION NO. 147:**

12       Admit that ONgDB stands for "ONgDB's Neo4j Graph DB."

13   **RESPONSE:**

14       Denied.

15   **REQUEST FOR ADMISSION NO. 148:**

16       Admit that ONgDB means "ONgDB's Neo4j Graph DB."

17   **RESPONSE:**

18       Denied.

19   **REQUEST FOR ADMISSION NO. 149:**

20       Admit that **Exhibit N** attached hereto is a true and correct of a March 17, 2019 tweet you

21   publicly posted on Twitter.

22   **RESPONSE:**

23       Admit.

24   **REQUEST FOR ADMISSION NO. 150:**

25       Admit that GFI used the NEO4J® Mark as a hashtag in **Exhibit N**.

26   **RESPONSE:**

27       Defendant objects to this request on the ground that its use of the terms "used" and "Neo4j

28   Mark" render it vague, ambiguous, and unintelligible.  Without waiving this objection and subject

<div align="center">47</div>

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1   to it, Defendant admits that "#Neo4j" appears on Exhibit N.

2   **SUPPLEMENTAL RESPONSE:**

3          Defendant objects to this request on the ground that its use of the terms "used the Neo4j(r)

4   Mark" render it vague, ambiguous, and unintelligible.  Without waiving this objection and subject

5   to it, Defendant admits that it used "#Neo4j" in Exhibit N.

6   **REQUEST FOR ADMISSION NO. 151:**

7          Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit N** was not

8   reasonably necessary to identify the ONgDB product.

9   **RESPONSE:**

10         Denied.

11  **REQUEST FOR ADMISSION NO. 152:**

12         Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit N** was not

13  reasonably necessary to promote the ONgDB product.

14  **RESPONSE:**

15         Defendant objects to this request on the ground that its use of the term "reasonably

16  necessary to promote" renders it vague, ambiguous, and unintelligible.  Defendant further objects

17  to this request on the ground that it seeks information that is irrelevant and not reasonably

18  calculated to lead to the discovery of admissible evidence.

19  **REQUEST FOR ADMISSION NO. 153:**

20         Admit that GFI used the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit N** to promote

21  ONgDB software.

22  **RESPONSE:**

23         Defendant objects to this request on the ground that its use of the term "promote" is vague

24  and ambiguous.  Without waiving this objection, and subject to it, Defendant responds:  Defendant

25  admits that the hashtag "#Neo4j" appears on Exhibit N and that Exhibit N was an announcement

26  of the ONgDB 3.5.3 support release and that the hashtag "#Neo4j" was used in connection with

27  the announcement's identification of ONgDB as an open source fork of Neo4j Enterprise.

28

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this request on the ground that its use of the term "promote" is vague and ambiguous.  Without waiving this objection, and subject to it, Defendant responds:  Defendant admits that it used "#Neo4j" in Exhibit N and that Exhibit N was an announcement of the ONgDB 3.5.3 support release and that the hashtag "#Neo4j" was used in connection with the announcement's identification of ONgDB as an open source fork of Neo4j Enterprise.

**REQUEST FOR ADMISSION NO. 154:**

Admit that GFI used of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit N** to identify ONgDB software.

**RESPONSE:**

Defendant admits that it used the hashtag #Neo4j" in connection with identifying ONgDB as an open source fork of Neo4j Enterprise.

**REQUEST FOR ADMISSION NO. 155:**

Admit that GFI's use of #Neo4j in **Exhibit N** does not amount to nominative fair use of the NEO4J® Mark.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 156:**

Admit that GFI's use of #Neo4j in **Exhibit N** infringes the NEO4J® Mark.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 157:**

Admit that **Exhibit O** attached hereto is a true and correct of a March 21, 2019 tweet you publicly posted on Twitter.

**RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 158:**

Admit that GFI used the NEO4J® Mark as a hashtag in **Exhibit O**.

49

SER_3730

**RESPONSE:**

Defendant objects to this request on the ground that its use of the terms "used" and "Neo4j Mark" render it vague, ambiguous, and unintelligible.  Without waiving this objection and subject to it, Defendant admits that "#Neo4j" appears on Exhibit O.

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this request on the ground that its use of the term "used the Neo4j Mark" render it vague, ambiguous, and unintelligible.  Without waiving this objection and subject to it, Defendant admits that it used "#Neo4j" in Exhibit O.

**REQUEST FOR ADMISSION NO. 159:**

Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit O** was not reasonably necessary to identify the ONgDB product.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 160:**

Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit O** was not reasonably necessary to promote the ONgDB product.

**RESPONSE:**

Defendant objects to this request on the ground that its use of the term "reasonably necessary to promote" renders it vague, ambiguous, and unintelligible.  Defendant further objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR ADMISSION NO. 161:**

Admit that GFI used the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit O** to promote ONgDB software.

**RESPONSE:**

Defendant objects to this request on the ground that its use of the term "promote" is vague and ambiguous.  Without waiving this objection, and subject to it, Defendant responds:  Defendant admits that the hashtag "#Neo4j" appears on Exhibit O and that Exhibit O was an announcement

50

1  of the 1,000[th] download of ONgDB and that the hashtag "#Neo4j" was used in connection with the

2  announcement's identification of ONgDB as an open source fork of Neo4j Enterprise.

3  **SUPPLEMENTAL RESPONSE:**

4  Defendant objects to this request on the ground that its use of the term "promote" is vague

5  and ambiguous.  Without waiving this objection, and subject to it, Defendant responds:  Defendant

6  admits that it used "#Neo4j" in Exhibit O and that Exhibit O was an announcement of the 1,000[th]

7  download of ONgDB and that the hashtag "#Neo4j" was used in connection with the

8  announcement's identification of ONgDB as an open source fork of Neo4j Enterprise.

9  **REQUEST FOR ADMISSION NO. 162:**

10  Admit that GFI used of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit O** to

11  identify ONgDB software.

12  **RESPONSE:**

13  Defendant admits that it used the hashtag #Neo4j" in connection with identifying ONgDB

14  as an open source fork of Neo4j Enterprise.

15  **REQUEST FOR ADMISSION NO. 163:**

16  Admit that GFI's use of #Neo4j in **Exhibit O** does not amount to nominative fair use of

17  the NEO4J® Mark.

18  **RESPONSE:**

19  Denied.

20  **REQUEST FOR ADMISSION NO. 164:**

21  Admit that GFI's use of #Neo4j in **Exhibit O** infringes the NEO4J® Mark.

22  **RESPONSE:**

23  Denied.

24  **REQUEST FOR ADMISSION NO. 165:**

25  Admit that **Exhibit P** attached hereto is a true and correct of a May 10, 2019 tweet you

26  publicly posted on Twitter.

27  **RESPONSE:**

28  Admit.

51

1  **REQUEST FOR ADMISSION NO. 166:**

2    Admit that GFI used the NEO4J® Mark as a hashtag in **Exhibit P**.

3  **RESPONSE:**

4    Defendant objects to this request on the ground that its use of the terms "used" and "Neo4j

5  Mark" render it vague, ambiguous, and unintelligible.  Without waiving this objection and subject

6  to it, Defendant admits that "#Neo4j" appears on Exhibit P.

7  **SUPPLEMENTAL RESPONSE:**

8    Defendant objects to this request on the ground that its use of the term "used the Neo4j(r)

9  Mark" render it vague, ambiguous, and unintelligible.  Without waiving this objection and subject

10  to it, Defendant admits it used "#Neo4j" in Exhibit P.

11  **REQUEST FOR ADMISSION NO. 167:**

12    Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit P** was not

13  reasonably necessary to identify the ONgDB product.

14  **RESPONSE:**

15    Denied.

16  **REQUEST FOR ADMISSION NO. 168:**

17    Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit P** was not

18  reasonably necessary to promote the ONgDB product.

19  **RESPONSE:**

20    Defendant objects to this request on the ground that its use of the term "reasonably

21  necessary to promote" renders it vague, ambiguous, and unintelligible.  Defendant further objects

22  to this request on the ground that it seeks information that is irrelevant and not reasonably

23  calculated to lead to the discovery of admissible evidence.

24  **REQUEST FOR ADMISSION NO. 169:**

25    Admit that GFI used the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit P** to promote

26  ONgDB software.

27

28

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1 **RESPONSE:**

2     Defendant objects to this request on the ground that its use of the term "promote" is vague

3 and ambiguous.  Without waiving this objection, and subject to it, Defendant responds:  Defendant

4 admits that the hashtag "#Neo4j" appears on Exhibit P and that Exhibit P was an announcement of

5 the ONgDB 3.5.4 support release and that the hashtag "#Neo4j" was used in connection with the

6 announcement's identification of ONgDB as an open source fork of Neo4j Enterprise.

7 **SUPPLEMENTAL RESPONSE:**

8     Defendant objects to this request on the ground that its use of the term "promote" is vague

9 and ambiguous.  Without waiving this objection, and subject to it, Defendant responds:  Defendant

10 admits that it used "#Neo4j" in Exhibit P and that Exhibit P was an announcement of the ONgDB

11 3.5.4 support release and that the hashtag "#Neo4j" was used in connection with the

12 announcement's identification of ONgDB as an open source fork of Neo4j Enterprise.

13 **REQUEST FOR ADMISSION NO. 170:**

14     Admit that GFI used of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit P** to

15 identify ONgDB software.

16 **RESPONSE:**

17     Defendant admits that it used the hashtag #Neo4j" in connection with identifying ONgDB

18 as an open source fork of Neo4j Enterprise.

19 **REQUEST FOR ADMISSION NO. 171:**

20     Admit that GFI's use of #Neo4j in **Exhibit P** does not amount to nominative fair use of the

21 NEO4J® Mark.

22 **RESPONSE:**

23     Denied.

24 **REQUEST FOR ADMISSION NO. 172:**

25     Admit that GFI's use of #Neo4j in **Exhibit P** infringes the NEO4J® Mark.

26 **RESPONSE:**

27     Denied.

28

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1    **REQUEST FOR ADMISSION NO. 173:**

2       Admit that **Exhibit Q** attached hereto is a true and correct of a November 27, 2019 tweet

3    you publicly posted on Twitter.

4    **RESPONSE:**

5       Admit.

6    **REQUEST FOR ADMISSION NO. 174:**

7       Admit that GFI used the NEO4J® Mark as a hashtag in **Exhibit Q**.

8    **RESPONSE:**

9       Defendant objects to this request on the ground that its use of the terms "used" and "Neo4j

10    Mark" render it vague, ambiguous, and unintelligible.  Without waiving this objection and subject

11    to it, Defendant admits that "#Neo4j" appears on Exhibit Q.

12    **SUPPLEMENTAL RESPONSE:**

13       Defendant objects to this request on the ground that its use of the term "used the Neo4j(r)

14    Mark" render it vague, ambiguous, and unintelligible.  Without waiving this objection and subject

15    to it, Defendant admits that it used "#Neo4j" in Exhibit Q.

16    **REQUEST FOR ADMISSION NO. 175:**

17       Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit Q** was not

18    reasonably necessary to identify the ONgDB product.

19    **RESPONSE:**

20       Denied.

21    **REQUEST FOR ADMISSION NO. 176:**

22       Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit Q** was not

23    reasonably necessary to promote the ONgDB product.

24    **RESPONSE:**

25       Defendant objects to this request on the ground that its use of the term "reasonably

26    necessary to promote" renders it vague, ambiguous, and unintelligible.  Defendant further objects

27    to this request on the ground that it seeks information that is irrelevant and not reasonably

28    calculated to lead to the discovery of admissible evidence.

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1  **REQUEST FOR ADMISSION NO. 177:**

2      Admit that GFI used the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit Q** to promote

3  ONgDB software.

4  **RESPONSE:**

5      Defendant objects to this request on the ground that its use of the term "promote" is vague

6  and ambiguous.  Without waiving this objection, and subject to it, Defendant responds:  Defendant

7  admits that the hashtag "#Neo4j" appears on Exhibit Q and that Exhibit Q was an announcement

8  of the ONgDB 3.5.12 support release and that the hashtag "#Neo4j" was used in connection with

9  the announcement's identification of ONgDB as an open source fork of Neo4j Enterprise.

10  **SUPPLEMENTAL RESPONSE:**

11      Defendant objects to this request on the ground that its use of the term "promote" is vague

12  and ambiguous.  Without waiving this objection, and subject to it, Defendant responds:  Defendant

13  admits that it used "#Neo4j" in Exhibit Q and that Exhibit Q was an announcement of the ONgDB

14  3.5.12 support release and that the hashtag "#Neo4j" was used in connection with the

15  announcement's identification of ONgDB as an open source fork of Neo4j Enterprise.

16  **REQUEST FOR ADMISSION NO. 178:**

17      Admit that GFI used of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit Q** to

18  identify ONgDB software.

19  **RESPONSE:**

20      Defendant admits that it used the hashtag #Neo4j" in connection with identifying ONgDB

21  as an open source fork of Neo4j Enterprise.

22  **REQUEST FOR ADMISSION NO. 179:**

23      Admit that GFI's use of #Neo4j in **Exhibit Q** does not amount to nominative fair use of

24  the NEO4J® Mark.

25  **RESPONSE:**

26      Denied.

27  **REQUEST FOR ADMISSION NO. 180:**

28      Admit that GFI's use of #Neo4j in **Exhibit Q** infringes the NEO4J® Mark.

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1   **RESPONSE:**

2      Denied.

3   **REQUEST FOR ADMISSION NO. 181:**

4      Admit that **Exhibit R** attached hereto is a true and correct of a January 18, 2020 tweet you

5   publicly posted on Twitter.

6   **RESPONSE:**

7      Admit.

8   **REQUEST FOR ADMISSION NO. 182:**

9      Admit that GFI used the NEO4J® Mark as a hashtag in **Exhibit R**.

10   **RESPONSE:**

11      Defendant objects to this request on the ground that its use of the terms "used" and "Neo4j

12   Mark" render it vague, ambiguous, and unintelligible.  Without waiving this objection and subject

13   to it, Defendant admits that "#Neo4j" appears on Exhibit R.

14   **SUPPLEMENTAL RESPONSE:**

15      Defendant objects to this request on the ground that its use of the term "used the Neo4j(r)

16   Mark" render it vague, ambiguous, and unintelligible.  Without waiving this objection and subject

17   to it, Defendant admits that it used "#Neo4j" in Exhibit R.

18   **REQUEST FOR ADMISSION NO. 183:**

19      Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit R** was not

20   reasonably necessary to identify the ONgDB product.

21   **RESPONSE:**

22      Denied.

23   **REQUEST FOR ADMISSION NO. 184:**

24      Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit R** was not

25   reasonably necessary to promote the ONgDB product.

26   **RESPONSE:**

27      Defendant objects to this request on the ground that its use of the term "reasonably

28   necessary to promote" renders it vague, ambiguous, and unintelligible.  Defendant further objects

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1  to this request on the ground that it seeks information that is irrelevant and not reasonably

2  calculated to lead to the discovery of admissible evidence.

3  **REQUEST FOR ADMISSION NO. 185**:

4      Admit that GFI used the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit R** to promote

5  ONgDB software.

6  **RESPONSE**:

7      Defendant objects to this request on the ground that its use of the term "promote" is vague

8  and ambiguous.  Without waiving this objection, and subject to it, Defendant responds:  Defendant

9  admits that the hashtag "#Neo4j" appears on Exhibit R and that Exhibit R was an announcement

10  of the ONgDB 3.5.14 support release and that the hashtag "#Neo4j" was used in connection with

11  the announcement's identification of ONgDB as an open source fork of Neo4j Enterprise.

12  **SUPPLEMENTAL RESPONSE**:

13      Defendant objects to this request on the ground that its use of the term "promote" is vague

14  and ambiguous.  Without waiving this objection, and subject to it, Defendant responds:  Defendant

15  admits that it used "#Neo4j" in Exhibit R and that Exhibit R was an announcement of the ONgDB

16  3.5.14 support release and that the hashtag "#Neo4j" was used in connection with the

17  announcement's identification of ONgDB as an open source fork of Neo4j Enterprise.

18  **REQUEST FOR ADMISSION NO. 186**:

19      Admit that GFI used of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit R** to

20  identify ONgDB software.

21  **RESPONSE**:

22      Defendant admits that it used the hashtag #Neo4j" in connection with identifying ONgDB

23  as an open source fork of Neo4j Enterprise.

24  **REQUEST FOR ADMISSION NO. 187**:

25      Admit that **Exhibit S** attached hereto is a true and correct of a May 19, 2020 tweet you

26  publicly posted on Twitter.

27  **RESPONSE**:

28      Admit.

57

**REQUEST FOR ADMISSION NO. 188:**

Admit that GFI used the NEO4J® Mark as a hashtag in **Exhibit S**.

**RESPONSE:**

Defendant objects to this request on the ground that its use of the terms "used" and "Neo4j Mark" render it vague, ambiguous, and unintelligible.  Without waiving this objection and subject to it, Defendant admits that "#Neo4j" appears on Exhibit S.

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this request on the ground that its use of the term "used the Neo4j(r) Mark" renders it vague, ambiguous, and unintelligible.  Without waiving this objection and subject to it, Defendant admits that it used "#Neo4j" in Exhibit S.

**REQUEST FOR ADMISSION NO. 189:**

Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit S** was not reasonably necessary to identify the ONgDB product.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 190:**

Admit that GFI's use of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit S** was not reasonably necessary to promote the ONgDB product.

**RESPONSE:**

Defendant objects to this request on the ground that its use of the term "reasonably necessary to promote" renders it vague, ambiguous, and unintelligible.  Defendant further objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR ADMISSION NO. 191:**

Admit that GFI used the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit S** to promote ONgDB software.

**RESPONSE:**

Defendant objects to this request on the ground that its use of the term "promote" is vague

58

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

and ambiguous.  Without waiving this objection, and subject to it, Defendant responds:  Defendant admits that the hashtag "#Neo4j" appears on Exhibit R and that Exhibit R was an announcement of the ONgDB 3.5.0.8 procedure release and that the hashtag "#Neo4j" was used in connection with the announcement's identification of ONgDB as an open source fork of Neo4j Enterprise.

**SUPPLEMENTAL RESPONSE:**

Defendant objects to this request on the ground that its use of the term "promote" is vague and ambiguous.  Without waiving this objection, and subject to it, Defendant responds:  Defendant admits that it used "#Neo4j" appears on Exhibit R and that Exhibit R was an announcement of the ONgDB 3.5.0.8 procedure release and that the hashtag "#Neo4j" was used in connection with the announcement's identification of ONgDB as an open source fork of Neo4j Enterprise.

**REQUEST FOR ADMISSION NO. 192:**

Admit that GFI used of the NEO4J® Mark as the hashtag "#Neo4j" in **Exhibit S** to identify ONgDB software.

**RESPONSE:**

Defendant admits that it used the hashtag #Neo4j" in connection with identifying ONgDB as an open source fork of Neo4j Enterprise.

**REQUEST FOR ADMISSION NO. 193:**

Admit that GFI's use of #Neo4j in **Exhibit S** does not amount to nominative fair use of the NEO4J® Mark.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 194:**

Admit that GFI's use of #Neo4j in **Exhibit S** infringes the NEO4J® Mark.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 195:**

Admit that **Exhibit T** is a printout of Neo4j, Inc.'s Trademark Guidelines as they existed on August 13, 2020.

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

1 **RESPONSE:**

2  Defendant is without sufficient information to admit or deny this request and, on that basis,

3 denies the request.

4 **REQUEST FOR ADMISSION NO. 196:**

5  Admit that Neo4j, Inc.'s Trademark Guidelines in **Exhibit T** have been in effect since

6 April 3, 2019.

7 **RESPONSE:**

8  Defendant is without sufficient information to admit or deny this request and, on that basis,

9 denies the request.

10 **REQUEST FOR ADMISSION NO. 197:**

11  Admit that you are aware of Neo4j, Inc.'s Trademark Guidelines in **Exhibit T.**

12 **RESPONSE:**

13  Defendant objects to this request on the ground that its use of the term "are aware" is

14 vague, ambiguous, and unintelligible.  Without waiving this objection, and subject to it, Defendant

15 admits that, in connection with responding to these requests it has reviewed Exhibit T.

16 **REQUEST FOR ADMISSION NO. 198:**

17  Admit that you do not adhere to Neo4j, Inc.'s Trademark Guidelines in **Exhibit T** in

18 marketing ONgDB software.

19 **RESPONSE:**

20  Defendant objects to this request on the ground that it seeks information that is irrelevant

21 and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further

22 objects to this request on the ground that it requires the interpretation of a document and seeks a

23 legal conclusion or interpretation of that document and on that basis denies the request.

24 **REQUEST FOR ADMISSION NO. 199:**

25  Admit that you do not adhere to Neo4j, Inc.'s Trademark Guidelines in **Exhibit T** in

26 advertising ONgDB software.

27

28

60

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

SER_3741

**RESPONSE:**

      Defendant objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this request on the ground that it requires the interpretation of a document and seeks a legal conclusion or interpretation of that document and on that basis denies the request.

Dated:  October 27, 2020                BERGESON, LLP

By: _____
                          John D. Pernick
Attorneys for Defendant
GRAPH FOUNDATION, INC.

61

1
**VERIFICATION**

2      I, Brad Nussbaum, declare under penalty of perjury under the laws of the United States that

3 I am the CEO at Graph Foundation, Inc. ("GFI"), that I have read the foregoing GRAPH

4 FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J,

5 INC.'S FIRST SET OF REQUESTS FOR ADMISSION, that the statements of facts contained

6 therein, are within my personal knowledge or based upon information provided by other persons at

7 GFI or business records of GFI, that the foregoing Responses are true and correct, and that I am

8 authorized to sign this verification on behalf of GFI.

9      Executed on October 26, 2020, at Wooster, Ohio.

10

11      _____

12                Brad Nussbaum

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

62

SER_3743

Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 1188 of 1198

# EXHIBIT D

## TO

## GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST SET OF REQUESTS FOR ADMISSION

SER_3744

graphfoundation / ongdb

Code | Issues 3 | Pull requests 1 | Actions | Projects | Wiki | Security | Insights

## Updated readme to reflect ONgDB

3.6 3.6.0 ... 3.5.1

Browse files

jmsuhy authored and bradnussbaum committed on Jan 17, 2019

1 parent d470ffd commit f0a7db48c8fcac6defa956fb022758ef3d8a8220

Showing 1 changed file with 13 additions and 13 deletions.

Unified Split

26 README.asciidoc

```
... ... @@ -1,18 +1,20 @@
1      - = Neo4j: Graphs for Everyone =
    1  + = ONgDB - Neo4j Enterprise Fork: Graphs for Everyone =
2   2
3   3    https://neo4j.com[Neo4j] is the world's leading Graph Database. It is a high performance graph store with all the features expected of a mature and robust database, like a friendly query language and ACID transactions. The programmer works with a flexible network structure of nodes and relationships rather than static tables -- yet enjoys all the benefits of enterprise-quality database. For many applications, Neo4j offers orders of magnitude performance benefits compared to relational DBs.
4   4
5   5    Learn more on the https://neo4j.com[Neo4j website].
6   6
7      - == Using Neo4j ==
    7  + Learn more about ONgDB at https://graphfoundation.org[Graph Foundation website]
8   8
9      - Neo4j is available both as a standalone server, or an embeddable component. You can https://neo4j.com/download/[download] or http://console.neo4j.org[try online].
    9  + == Using ONgDB & Neo4j ==
10  10
11     - == Extending Neo4j ==
    11 + Neo4j is available both as a standalone server, or an embeddable component. You can https://graphfoundation.org/projects/ongdb/[download] or http://console.neo4j.org[try Neo4j online].
12  12
13     - We encourage experimentation with Neo4j. You can build extensions to Neo4j, develop library or drivers atop the product, or make contributions directly to the product core. You'll need to sign a Contributor License Agreement in order for us to accept your patches.
    13 + == Extending ONgDB & Neo4j ==
14  14
```



https://github.com/graphfoundation/ongdb/commit/f0a7db48c8fcac6defa956fb022758ef3d8a8220

```
15              - NOTE: This GitHub repository contains mixed GPL and AGPL code. Our Community edition (in the link:community/[community/] directory) is GPLv3. Our Enterprise edition
                 (link:enterprise/[enterprise/]) is differently licensed under the AGPLv3.
        15      + We encourage experimentation with ONgDB & Neo4j. You can build extensions to ONgDB & Neo4j, develop library or drivers atop the product, or make contributions
                 directly to the product core. You'll need to sign a Contributor License Agreement in order for us to accept your patches.
        16      +
        17      + NOTE: This GitHub repository contains mixed GPL and AGPL code. Our Community edition (in the link:community/[community/] directory) is GPLv3. The Enterprise edition
                 (link:enterprise/[enterprise/]) is licensed under the AGPLv3.
  16    18
  17    19        == Dependencies ==
  18    20
  37    39        curl -O http://download-keycdn.ej-technologies.com/install4j/install4j_linux_6_1_4.deb
  38    40        dpkg -i install4j_linux_6_1_4.deb
  39    41
  40              - == Building Neo4j ==
        42      + == Building ONgDB ==
  41    43
  42    44        Before you start running the unit and integration tests in the Neo4j Maven project on a Linux-like system, you should ensure your limit on open files is set to a
                 reasonable value. You can test it with `ulimit -n`. We recommend you have a limit of at least 40K.
  43    45
  49    51        * If you are running into problems building on Windows you can try building Neo4j in a Ubuntu virtual machine.
  50    52        * You may need to increase the memory available to Maven: `export MAVEN_OPTS="-Xmx512m"`.
  51    53
  52              - == Running Neo4j ==
        54      + == Running ONgDB & Neo4j ==
  53    55
  54    56        After running a `mvn clean install` cd into `packaging/standalone/target` and extract the version you want, then
  55    57
  69    71
  70    72        == Licensing ==
  71    73
  72              - Neo4j Community Edition is an open source product licensed under GPLv3.
  73              -
  74              - Neo4j Enterprise Edition expands the functionality of Community Edition with Enterprise-grade features.
        74      + ONgDB & Neo4j Community Edition is an open source product licensed under GPLv3.
  75    75
  76              - Neo4j Enterprise consists of modules from Neo4j Community Edition and modules licensed under AGPLv3 with the Commons Clause in this repository, and other closed
                 source components not present in this repository.
        76      + ONgDB & Neo4j Enterprise Edition expands the functionality of Community Edition with Enterprise-grade features.
  77    77
  78              - When packaged as a binary, Enterprise Edition includes additional closed-source components _not available in this repository_ and requires a commercial license from
```

https://github.com/graphfoundation/ongdb/commit/f0a7db48c8fcac6defa956fb022758ef3d8a8220

|  |  | Neo4j Sweden AB or one of its affiliates. |
|---|---|---|
|  | 78 | + ONgDB & Neo4j Enterprise consists of modules from Neo4j Community Edition and modules licensed under AGPLv3 in this repository. |

**0 comments on commit** `f0a7db4`

Please sign in to comment.

10/27/2020, 11:25 AM

**SER_3747**

1

## PROOF OF SERVICE

2
**STATE OF CALIFORNIA, COUNTY OF SANTA CLARA**

3
      At the time of service, I was over 18 years of age and not a party to this action.  I am

4
employed in the County of Santa Clara, State of California.  My business address is 111 N. Market Street, Suite 600, San Jose, CA 95113.

5
      On October 27, 2020, I served true copies of the following document(s) described as

6
**GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST SET OF REQUESTS FOR ADMISSION** on the interested parties in

7
this action as follows:

8
**Attorneys for Plaintiff**
**NEO4J, INC.**

9

10
John V. Picone III, Esq.
jpicone@hopkinscarley.com

11
Jeffrey M. Ratinoff, Esq.
jratinoff@hopkinscarley.com

12
Hopkins & Carley
The Letitia Building

13
70 South First Street
San Jose, CA 95113-2406

14
Tel:    (408) 286-9800

15
Fax:    (408) 998-4790

16

17
      **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address emtofelogo@be-law.com to the persons at the e-mail

18
addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

19
      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this

20
Court at whose direction the service was made.

21
      Executed on October 27, 2020, at San Jose, California.

22

23

24
                Emma Tofelogo-Fernandez

25

26

27

28

<center>63</center>

GRAPH FOUNDATION, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO NEO4J, INC.'S FIRST
SET OF REQUESTS FOR ADMISSION, Case No. 5:19-cv-06226-EJD

Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 1193 of 1198

# EXHIBIT 130

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

SER_3749

# EXHIBIT 131

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 1195 of 1198

# EXHIBIT 132

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

SER_3751

Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 1196 of 1198

# EXHIBIT 133

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Case 5:18-cv-07182-EJD   Document 98-1   Filed 12/11/20   Page 1197 of 1198

# EXHIBIT 134

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

SER_3753

# EXHIBIT 135

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
2    Jeffrey M. Ratinoff, Bar No. 197241
jratinoff@hopkinscarley.com
3    HOPKINS & CARLEY
A Law Corporation
4    The Letitia Building
70 South First Street
5    San Jose, CA  95113-2406

6    *mailing address:*
P.O. Box 1469
7    San Jose, CA 95109-1469
Telephone:    (408) 286-9800
8    Facsimile:    (408) 998-4790

9    Attorneys for Plaintiffs and Counter-Defendants
NEO4J, INC. and NEO4J SWEDEN AB

10

            UNITED STATES DISTRICT COURT

11

            NORTHERN DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13   NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation, | CASE NO. 5:18-cv-07182-EJD |
| 14            Plaintiffs, | **PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 15       v. | |
| 16   PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual, | Date:       March 25, 2021<br>Time:       9:00 a.m.<br>Dept.:     Courtroom 4, 5th Floor<br>Judge:    Hon. Edward J. Davila |
| 17 | |
| 18           Defendants. | |
| 19 | |
| 20   AND RELATED COUNTERCLAIM. | |
| 21   NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation, | CASE NO. 5:19-CV-06226-EJD |
| 22 | |
| 23            Plaintiffs, | |
| 24       v. | |
| 25   GRAPH FOUNDATION, INC., an Ohio corporation, GRAPHGRID, INC., an Ohio corporation, and ATOMRAIN INC., a Nevada corporation, | **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |
| 26 | |
| 27           Defendants. | |
| 28 | |

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3639184.9

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**NOTICE OF MOTION AND MOTION**

TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 25, 2021, at 9:00 a.m., before the Honorable Edward J. Davila, in Courtroom 4, 5th Floor, 280 South First Street, San Jose, CA 95113, Plaintiffs and Counter-Defendants Neo4j, Inc., and Neo4j Sweden AB ("Plaintiffs") will and hereby do move the Court for an order granting partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on Neo4j USA's Lanham Act and related California Unfair Competition Law ("UCL") claims against Defendants PureThink LLC, iGov Inc. and John Mark Suhy in CASE NO. 5:18-cv-07182-EJD (the "PT Action") and Defendant Graph Foundation Inc. in CASE NO. 5:19-CV-06226-EJD (the "GFI Action") for: (1) trademark infringement, 15 U.S.C. § 1114; (2) false designation of origin and false advertising, 15 U.S.C. § 1125(a); (3) federal unfair competition, 15 U.S.C. § 1125(a); and (4) state unfair competition in violation of Cal. Bus. Prof. Code §§ 17200 et seq. *See* PT Dkt. No. 68 at ¶ 3 and No. 90; GFI Dkt. No. 45 at ¶ 3 and No. 65. Plaintiffs further move for summary judgment on Defendants' nominative fair use defenses to Neo4j USA's Lanham Act and UCL claims. *See* PT Dkt. No. 91 at 21:4-9 and GFI Dkt. No. 91 at 12:19-23.

The Court previously dismissed and struck the PT Defendants' trademark cancellation and abandonment counterclaims and defenses, respectively, with prejudice. *See* PT Dkt. Nos. 70, 85. The Court also struck GFI's cancellation defense with prejudice, and GFI agreed to be bound by the Court's ruling dismissing/striking Defendants' trademark abandonment counterclaim and defense when it stipulated to the filing of Plaintiff's First Amended Complaint in the GFI Action. *See* GFI Dkt. Nos. 63, 64 at 3:3-27. The PT Defendants then impermissibly re-pled their cancellation and abandonment defenses in their Answer to Neo4j's Third Amended Complaint. PT Dkt. No. 91. Plaintiffs filed a motion to strike those affirmative defenses on the grounds that they violated the Court's orders and the local rules, as well as still fail as a matter of law, which is fully briefed and currently set to be heard on February 11, 2021. *See* Dkt. No. 93. As such, Plaintiffs will not address those defenses in this motion in the interest of judicial economy and to avoid duplication.

This motion ("Motion") is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the Separate Statement of Undisputed Facts attached hereto as

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                       - 1 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_3756

1  **Exhibit A**, the Declarations of Jeffrey M. Ratinoff, Philip Rathle and John Broad, all pleadings,

2  records and papers on file in the two related actions, and upon such further oral and documentary

3  evidence as may be presented at the hearing on this Motion.

4  <u>**REQUESTED RELIEF**</u>

5  Plaintiffs respectfully request that the Court grant partial summary judgment in favor of

6  Neo4j USA on its Lanham Act and UCL claims asserted against Defendants, and in favor of Plaintiffs

7  on Defendants' nominative fair use and "right to fork" affirmative defenses. The undisputed material

8  facts establish that Defendants have infringed Neo4j USA's federally registered "Neo4j" trademark

9  (Neo4j® Mark) and have not engaged in fair use in promoting their ONgDB software. The

10  undisputed material facts further establish that Defendants have engaged in false advertising in

11  promoting their ONgDB software as free and open source drop-in replacement for Plaintiffs'

12  commercially licensed Neo4j® Enterprise Edition graph database software.

13  Plaintiffs are seeking partial summary judgment on these claims as Neo4j USA intends to

14  separately seek to prove-up its actual damages suffered once it obtains discovery from GraphGrid

15  and AtomRain about their support of customers using ONgDB, and also seek a finding of willful

16  infringement, the trebling of those damages and recovery of its attorneys' fees pursuant to 15 U.S.C.

17  § 1117. Neo4j USA further intends to seek an accounting of Defendants' profits and seek trebling

18  of those damages and its attorneys' fees, which normally occurs after a finding of liability for

19  trademark infringement. *See* 15 U.S.C. § 1117(a)

20  Finally, Plaintiffs respectfully request that the Court enter the proposed injunction

21  concurrently filed herewith. Neo4j USA has already suffered a reputational loss to its Neo4j® brand

22  and associated goodwill as result of Defendants' unauthorized "relicensing" of Neoj4® EE under the

23  AGPL and falsely calling ONgDB a free and unrestricted drop-in replacement for official Neo4j®

24  EE. It is also clear that Defendants will continue to do so unless enjoined by the Court.

25  <u>**STATEMENT OF ISSUES TO BE DECIDED**</u>

26  1.  Whether the undisputed material facts establish that Defendants infringed the

27  Neo4j® Mark in violation of 15 U.S.C. §§ 1114, 1125(a) and Cal. Bus. Prof. Code §§ 17200 et seq.

28  2.  Whether the undisputed material facts establish that Defendants cannot succeed on

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                                 - 2 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_3757

1    their nominative fair use defenses.

2         3.      Whether the undisputed material facts establish that Defendants engaged in false

3    designation of origin and false advertising in violation of 15 U.S.C. § 1125(a) and Cal. Bus. Prof.

4    Code §§ 17200 et seq.

5         4.      Whether the Court should enjoin Defendants from further infringement of the

6    Neo4j® Mark and engaging in further false advertising and false designation of origin in relation

7    to the Neo4j® Mark and their promotion of graph database software, including ONgDB software.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

842\3639184.9                                - 3 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ........................................................................................... 1

II.  STATEMENT OF FACTS .............................................................................. 2

    A.   The Neo4j® Brand and Mark ............................................................... 2

    B.   The Evolution of Plaintiffs' Licensing Model for the Neo4j® Platform ............... 3

    C.   PureThink Enters Into the Partner Agreement with Neo4j USA ........................... 5

    D.   Suhy and PureThink Form iGov to Evade the Partner Agreement ....................... 6

    E.   iGov and Suhy Infringe the Neo4j® Mark after iGov's Formation .................... 7

    F.   Defendants Form GFI and Improperly Remove the Commercial Restrictions in the Neo4j Sweden Software License in Order to Launch ONgDB as a "Free and Open Source" Neo4j® EE ................................. 8

    G.   Defendants Promote ONgDB over Neo4j® EE Based on the False Premise that No Paid Commercial License from Plaintiffs is Necessary to Use ONgDB .................................................................................. 11

    H.   GFI Falsely Promotes ONgDB 3.5 as a "Drop In" Replacement for Neo4j® EE .......................................................................................... 12

    I.   iGov Uses the Neo4j® Mark to Promote ONgDB on its Websites and Falsely Claims that ONgDB is a "Drop In" Replacement for Neo4j® EE ........... 14

    J.   Defendants Impermissibly Rely Upon Official Neo4j® Support Documentation ...................................................................................... 15

    K.   Defendants Improperly Use the Neo4j® Mark to Promote ONgDB on Twitter ..................................................................................................... 16

    L.   Defendants' Misuse of the Neo4j® Mark and False Statements about ONgDB Have Diverted Customers to Defendants and Caused Actual Confusion ............................................................................................... 17

III. THE CLAIMS AND DEFENSES SUBJECT TO PLAINTIFFS' MOTION .................. 19

IV.  APPLICABLE MOTION FOR SUMMARY JUDGMENT STANDARDS ................... 19

V.   THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF NEO4J USA ON ITS TRADEMARK INFRINGEMENT CLAIMS AND AGAINST DEFENDANTS ON THEIR NOMINATIVE FAIR USE DEFENSE ........... 20

    A.   Legal Standards for Trademark Infringement and Nominative Fair Use ............. 20

    B.   The PT Defendants' Non-ONgDB Related Infringement of the Neo4j® Mark ......................................................................................................... 21

    C.   Defendants Did Not Fairly Use the Neo4j® Mark in Promoting ONgDB .......... 25

VI.  NEO4J USA IS ENTITLED TO SUMMARY JUDGMENT ON ITS FALSE ADVERTISING AND FALSE DESIGNATION OF ORIGIN CLAIMS ....................... 28

    A.   Applicable Legal Standards for False Advertising Claims Under the Lanham Act and California's UCL ...................................................... 28

- i -

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

B.     Defendants' Engaged in False Advertising in the Promotion of ONgDB ............ 29

4

C.     Defendants Engaged in the False Designation of Origin in Promoting ONgDB ........................................................................................................ 33

5

VII.     PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF ......................................... 34

6

VIII.     CONCLUSION ............................................................................................................ 35

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SER_3760**

1

## TABLE OF AUTHORITIES

2

Page

3

**Cases**

4
5
*2Die4Kourt v. Hillair Capital Mgmt., LLC*,
    2016 WL 4487895 (C.D. Cal. Aug. 23, 2016),
    *aff'd*, 692 F. App'x 366 (9th Cir. 2017) .................................................................. 21

6
7
*Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*,
    944 F.2d 1446 (9th Cir. 1991) ............................................................................... 20

8
9
*Addisu v. Fred Meyer, Inc.*,
    198 F.3d 1130 (9th Cir. 2000) ............................................................................... 19

10
*Adobe Sys. Inc. v. A & S Elecs., Inc.*,
    153 F.Supp.3d 1136 (N.D. Cal. 2015) ................................................................... 23

11
12
*AECOM Energy & Constr., Inc. v. Ripley*,
    348 F.Supp.3d 1038 (C.D. Cal. 2018) .............................................................. 33, 34

13
14
*Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*,
    2019 WL 1586776 (N.D. Cal. Apr. 12, 2019) ...................................................... 25, 27, 28

15
*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir.1979) ............................................................... 21, 28, 33

16
17
*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ......................................................................................... 19, 20

18
19
*Apple Inc. v. Psystar Corp.*,
    658 F.3d 1150 (9th Cir. 2011) ............................................................................... 31

20
*Automotriz Del Golfo De California S.A. de C.V. v. Resnick*,
    47 Cal.2d 792 (1957) ............................................................................................. 23

21
22
*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ...................................................................... 20, 24, 25

23
24
*Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.*,
    88 F.Supp.2d 914 (C.D. Ill. 2000) ......................................................................... 22

25
*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................... 19

26
27
*Century 21 Real Estate Corp. v. Sandlin*,
    846 F.2d 1175 (9th Cir. 1988) ............................................................................... 20

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

- iii -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_3761

**TABLE OF AUTHORITIES**
(continued)

Page

*Century 21 Real Estate LLC v. Ed/Var Inc.*,
 2014 WL 3378278 (N.D. Cal. July 10, 2014)..................................................... 34

*Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*,
 2020 WL 5199434 (N.D. Cal. Aug. 17, 2020)...................................... 33, 34, 35

*Cleary v. News Corp.*,
 30 F.3d 1255 (9th Cir. 1994)............................................................................. 29

*Coastal Abstract Serv. Inc. v. First Am. Title Ins. Co.*,
 173 F.3d 725 (9th Cir. 1999)............................................................................. 29

*Creative Labs, Inc. v. Cyrix Corp.*,
 1997 WL 337553 (N.D. Cal. 1997).................................................................... 31

*Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.*,
 2014 WL 4679001 (C.D. Cal. Sept. 18, 2014).................................................. 35

*Diller v. Barry Driller, Inc.*,
 2012 WL 4044732 (C.D. Cal. Sept. 10, 2012).................................................. 35

*Downing v. Abercrombie & Fitch*,
 265 F.3d 994 (9th Cir. 2001)............................................................................. 27

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*,
 142 F.3d 1127 (9th Cir. 1998)........................................................................... 33

*EFCO Corp. v. Symons Corp.*,
 219 F.3d 734 (8th Cir. 2000)............................................................................. 31

*Experience Hendrix, L.L.C. v. Hendrixlicensing.com, Ltd.*,
 2010 WL 2104239 (W.D. Wash. May 19, 2010)...................................... 24, 25, 26

*Hal Roach Studios, Inc. v. Feiner & Co., Inc.*,
 896 F.2d 1542 (9th Cir. 1990)........................................................................... 20

*Healthport Corp. v. Tanita Corp. of Am.*,
 563 F.Supp.2d 1169 (D. Or. 2008), *aff'd*, 324 F.App'x 921 (Fed. Cir. 2009)......................... 29

*Herb Reed Enters., LLC v. Florida Entertainment Management*,
 736 F.3d 1239 (9th Cir. 2013)........................................................................... 34

*Hinojos v. Kohl's Corp.*,
 718 F.3d 1098 (9th Cir. 2013)........................................................................... 32

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

- iv -

**SER_3762**

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3  *Hollywood Athletic Club v. GHAC–CityWalk,*
4      938 F.Supp. 612 (C.D.Cal.1996) ................................................................ 21

5  *Horphag Research Ltd. v. Garcia,*
       475 F.3d 1029 (9th Cir. 2007).................................................. 24, 25, 26
6
   *Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.,*
7      559 F.3d 985 (9th Cir. 2009)..................................................................... 35

8  *Jacobsen v. Katzer,*
       535 F.3d 1373 (Fed. Cir. 2008).................................................................. 31
9
10 *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.,*
       762 F.3d 867 (9th Cir. 2014)...................................................................... 34
11
   *Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
12     134 S.Ct. 1377 (2014) ............................................................................... 32

13 *Lujan v. National Wildlife Fed'n,*
       497 U.S. 871 (1990) ................................................................................... 19
14
15 *Luxul Tech. Inc. v. Nectarlux, LLC,*
       78 F.Supp.3d 1156 (N.D. Cal. 2015) ......................................................... 28
16
   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
17     475 U.S. 574 (1986) ................................................................................... 20

18 *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,*
       638 F.3d 1137 (9th Cir. 2011).................................................................... 20
19
20 *New Kids on the Block v. News Am. Publ'g, Inc.,*
       971 F.2d 302 (9th Cir. 1992).............................................................. 21, 25
21
   *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC,*
22     165 F. Supp. 3d 937 (S.D. Cal. 2016) ........................................................ 33

23 *Online Glob., Inc. v. Google LLC,*
       387 F.Supp.3d 980 (N.D. Cal. 2019) .................................................. 19, 20
24
25 *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.,*
       354 F.3d 1020 (9th Cir. 2004).......................................................... 24, 26
26
   *Pom Wonderful LLC v. Hubbard,*
27     775 F.3d 1118 (9th Cir. 2014).......................................................... 20, 21

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

- v -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_3763

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3 *Public Impact, LLC v. Boston Consulting Group, Inc.*,

4    169 F. Supp. 3d 278 (D. Mass 2016) ................................................................ 28

5 *SEC v. Rose Fund, LLC*,
   2013 WL 1345 (N.D. Cal. Apr. 2, 2013) ......................................................... 24

6

7 *Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997)........................................................ 28, 29, 31, 32

8 *Stark v. Diageo Chateau & Estate Wines Co.*,
   907 F.Supp.2d 1042 (N.D. Cal. 2012) ............................................................. 35

9

10 *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*,
   425 F.3d 708 (9th Cir. 2005).............................................................................. 21

11 *SuccessFactors, Inc. v. Softscape, Inc.*,

12    544 F.Supp.2d 975 (N.D. Cal. 2008) ............................................................... 29

13 *Sun Microsystems v. Microsoft Corp.*,
   999 F.Supp. 1301 (N.D.Cal.1998) ..................................................... 22, 31, 34

14

15 *Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
   610 F.3d 1171 (9th Cir. 2010).......................................................... 21, 24, 28

16

17 *TrafficSchool.com, Inc. v. Edriver, Inc.*,
   653 F.3d 820 (9th Cir. 2011).............................................................................. 32

18 *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*,
   108 F.Supp.3d 816 (N.D. Cal. 2015) ............................................................... 23

19

20 *Wetzel's Pretzels, LLC v. Johnson*,
   797 F.Supp.2d 1020 (C.D. Cal. 2011) ............................................................. 23

21 **Statutes**

22 15 U.S.C.
23    § 1114............................................................................................... 1, 19, 20
   § 1115(a) ............................................................................................. 20
24    § 1116(a) ............................................................................................. 34
   § 1125(a) ......................................................................................... 1, 19
25    § 1125(a)(1)......................................................................................... 20
   § 1125(a)(1)(A) .............................................................................. 28, 33
26    § 1125(a)(1)(B) .............................................................................. 28, 33

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

- vi -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_3764

**TABLE OF AUTHORITIES**
(continued)

Page

Cal. Bus. Prof. Code
  § 17200.................................................................................................................... 20
  §§ 17200 et seq. ...................................................................................................... 19

**Other Authorities**

Fed. R. Civ. P.
  56(a) ........................................................................................................................ 19
  56(c) ................................................................................................................... 19, 20

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

- vii -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_3765

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs Neo4j Inc. ("Neo4j USA") seeks summary judgment on its claims for trademark infringement, false advertising, false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and California's Unfair Competition Law ("UCL") asserted against Defendants PureThink LLC, iGov Inc. and John Mark Suhy (collectively "PT Defendants") and Graph Foundation, Inc. ("GFI").   The undisputed facts establish that the PT Defendants and GFI (collectively "Defendants") have unfairly abused Neo4j Sweden AB (Neo4j Sweden) and Neo4j USA's prior licensing model for its Neo4j® Enterprise Edition graph database software ("Neo4j® EE") and unlawfully used the registered Neo4j Mark to falsely promote Defendants' pirated-hybrid software (first called "Neo4j Enterprise" and later renamed "ONgDB") as being a free and open source drop-in replacement for Plaintiffs' commercially licensed Neo4j® EE.

The undisputed facts establish that Defendants extensively used the NEO4J® Mark on their respective websites and Twitter accounts, in domain names and email addresses, and other forms of advertising and solicitations to promote ONgDB.  They also have plagiarized Plaintiffs' GitHub repository landing page, impermissibly linked to Neo4j USA's website and support documentation in their effort to mislead customers into believing that ONgDB is identical to Neo4j® EE in every way except it is free.  No reasonable finder of fact would consider this nominative or fair use because Defendants did not minimally use the Neo4j® trademark to differentiate ONgDB as a ***divergent*** fork of Neo4j® EE.  Rather, they intentionally misappropriated the goodwill associated with Neo4j® Mark to promote ONgDB and capitalized on consumer confusion resulting from that use.

Defendants have also engaged in a false advertising campaign in promoting ONgDB.  This includes matching the version numbers of ONgDB to official Neo4j® EE releases of the same number, while falsely claiming that ONgDB is a free and open source drop-in replacement for commercially licensed Neo4j® EE. These statements are demonstrably false because Defendants admittedly copied Neo4j Sweden's source code from a pre-release version of Neo4j® EE that was subject to a restricted commercial license and replaced it with the AGPL in contravention of Neo4j Sweden's exclusive right as a copyright holder to license Neo4j® EE as it sees fit.

842\3639184.9                                              - 1 -

1   Defendants' claims that ONgDB was a drop-in replacement for Neo4j® EE were also false

2   and misleading because that software that is not subject to the same stringent quality control and

3   assurances provided via official Neo4j® EE commercial releases.  Rather, ONgDB is compiled from

4   a patchwork of source code that is held together by "glue source code" authored by Defendants.

5   ONgDB also does not include every feature that is included in commercial releases of Neo4j® EE.

6   As a result, Defendants are misleading consumers into believing that when they download ONgDB,

7   they are receiving an exact copy of Plaintiffs' current commercial-only releases of Neo4j® EE, which

8   in actuality is an inferior product that is not a true "drop-in" replacement.

9   The undisputed evidence shows that Defendants' misappropriation of the goodwill

10   associated with the Neo4j® Mark and their false advertising of ONgDB as a free and open source

11   drop-in replacement for commercially licensed Neo4j® EE not only are likely to cause confusion,

12   but have caused actual confusion.  Plaintiffs have lost customers as a direct result, choosing ONgDB

13   over Neo4j® EE based on price alone.  Defendants profit from this costs savings because they pitch

14   their paid support services that would otherwise violate the commercial restrictions they removed

15   from the license governing Neo4j® EE that they replaced with the AGPL.  Despite this lawsuit,

16   Defendants remain undeterred in misleading consumers.  They also continue to cause grave harm to

17   the Neo4j® brand and Plaintiffs' ability to compete in the marketplace.  Thus, not only should the

18   Court grant summary judgment in Plaintiffs' favor, but also issue an injunction against Defendants.

19   **II.   STATEMENT OF FACTS**

20   **A.   The Neo4j® Brand and Mark**

21   Neo4j USA is the company behind the number one graph platform for connected data,

22   marketed and sold under the Neo4j® trademark.  Neo4j Sweden is the owner of all copyrights related

23   to the Neo4j® graph database platform, including the source code and has licensed said copyrights

24   to Neo4j USA.  Declaration of Philip Rathle ("Rathle Decl."), ¶¶ 3-4.  After its incorporation, Neo4j

25   USA became the parent company to Neo4j Sweden, and obtained the rights to the Neo4j® Mark in

26   the United States from Neo4j Sweden.  *See* Declaration of Jeffrey M. Ratinoff ("Ratinoff Decl."),

27   Exh. 1; Declaration of John Broad ("Broad Decl."), ¶¶ 2-3; *see also* PT Dkt. No. 72 at 24:19-20.

28   Plaintiffs' business was formed after its founders encountered performance problems with

842\3639184.9                                      - 2 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

relational database management systems (RDMS). Plaintiffs then developed a graph database management system developed under the Neo4j® brand and quickly became the industry leader in graph database solutions and software. *See* Broad Decl., ¶¶ 2, 4-18, Exhs. 1-11. The Neo4j® graph database platform ("Neo4j® Platform") helps organizations make sense of their data by revealing how people, processes and digital systems are interrelated. *Id.*, ¶ 2. This connections-first approach powers intelligent applications tackling challenges such as artificial intelligence, fraud detection, real-time recommendations and master data. *Id.*

Since the creation of the Neo4j® graph database platform, Neo4j USA has made considerable efforts and investment in the Neo4j® brand. Broad Decl., ¶ 17. As a results, the Neo4j® brand and Neo4j® Platform have become widely known and closely identified with Neo4j USA and represents its substantial and valuable goodwill. *Id.*, ¶¶ 4-16, 18. In particular, it boast the world's largest dedicated investment in native graph technology. *Id.* Neo4j USA has more than 300 commercial customers, including global enterprises like Comcast, Cisco, and UBS use the Neo4j® Platform to create a competitive advantage from connections in their data. *Id.* Neo4j USA also does substantial business with state and federal government agencies. *Id.*

In conjunction with their business, Neo4j USA filed for and obtained several federally registered trademarks. Specifically, Neo4j USA is the owner of U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j® Mark"). Ratinoff Decl., Exh. 1. The first use of the Neo4j® Mark was claimed in June 2006 and first use in commerce in May 2007 based on the use of that mark by Neo4j USA's predecessor-in-interest and related company, Neo4j Sweden, whose use properly inured to the benefit of Neo4j USA. *See id.*

**B.     The Evolution of Plaintiffs' Licensing Model for the Neo4j® Platform**

Prior to November 2018, Plaintiffs offered a free open source version of the Neo4j® Platform, Neo4j® Community Edition ("Neo4j® CE"), under the GNU General Public License version 3 ("GPL") license. Rathle Decl., ¶¶ 4-5. Neo4j® CE is limited in its feature set and offers no technical or administrative support. *Id.*, ¶¶ 5-6 Users requiring additional features for more advanced commercial operation, together with support, licensed use of the Neo4j® Platform through

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                   - 3 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_3768

1   Neo4j® Enterprise Edition ("Neo4j® EE") under commercial terms.  *Id*., ¶¶ 7-8.  Neo4j® EE is a

2   full superset of Community Edition, containing significant additional functionality intended for

3   commercial use.  *Id.*

4         Plaintiffs originally offered Neo4j® EE under both a paid-for commercial license and the

5   free GNU Affero General Public License, version 3 ("AGPL"), which was originally made available

6   by the Free Software Foundation ("FSF").  Rathle Decl., ¶¶ 8-10, Exh. 1.  A commercial license to

7   Neo4j® EE entitled the purchaser to use it in a proprietary, commercial setting with industry standard

8   terms, receive support or professional services from Neo4j USA, the right to receive software

9   updates, including feature updates, bug fixes and technical assistance.  *Id*.  It also supported the

10  continued development and improvement of Neo4j® CE and Neo4j® EE.  *Id.*

11        In May 2018, Plaintiffs released Neo4j® EE v3.4, which they continued to offer under a

12  proprietary commercial license.  Rathle Decl., ¶ 11, Exh. 2.  However, they replaced the AGPLv3

13  with a stricter license, which included the terms from the AGPLv3 and additional restrictions

14  provided by the Commons Clause ("Neo4j Sweden Software License").  *Id.,* ¶ 11, Exh. 3.  This new

15  license, while still allowing code to be publicly viewable and used within a certain licensed scope,

16  prohibits commercial resale and certain commercial support services.  *Id.,* ¶ 12.  Plaintiffs added the

17  Commons Clause to prevent third parties from monetizing the Neo4j® Platform and "free riding,"

18  while not contributing back to the open source community. *Id.*

19        In November 2018, Plaintiffs officially released Neo4j® EE v.3.5 solely under a commercial

20  license, while they continued to offer Neo4j® CE under an open source license, which is also referred

21  to as Neo4j® Open Core.  Rathle Decl., ¶ 13 Exh. 4.  This meant that Plaintiffs were no longer

22  publishing source code for Neo4j® EE on GitHub under any open source license. *Id*.  This was done

23  to simplify its licensing model, as well as prevent bad actors from misrepresenting the Neo4j Sweden

24  Software License and profiting by providing commercial support services in closed, proprietary

25  projects. *Id*.  Prior to its official release, Plaintiffs published several beta versions of Neo4j® EE v3.5

26  via their GitHub repository subject to the Neo4j Sweden Software License.  *Id.,* ¶ 14. They did so in

27  order to obtain user input and to identify potential bugs that could be fixed prior to its official release.

28  *Id*.  Neo4j® v3.5.0-RC1 was the last pre-release version available to Defendants via GitHub.  *Id*.

842\3639184.9                                - 4 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1  Thereafter, only Neo4j® CE was publicly available under the GPL via Github.  *Id*.

2      Both Neo4j® EE and Neo4j® CE have been subject to trademark policies and guidelines

3  published on Plaintiffs' website.  Rathle Decl., ¶ 15. The first iteration of these policies and guidelines

4  relevant to this motion was updated by Plaintiffs on October 13, 2015, and the second iteration

5  replaced that version on April 3, 2019 and continues to remain in effect.  *Id.*, ¶¶ 16-18, Exhs. 5-7.

6  These policies along with the terms of the GPL, AGPL and Neo4j Sweden Software License made

7  clear, *inter alia*, that to the extent any authorized modifications are made to Neo4j® software, such

8  modified software should indicate so and no longer bear the Neo4j® Mark. *Id.,* ¶ 15.  This was to

9  ensure that consumers knew when they were receiving genuine Neo4j® software that was quality

10  assured by Plaintiffs rather than third-party modified open source versions thereof.  *Id.*

11      **C.      PureThink Enters Into the Partner Agreement with Neo4j USA**

12      PureThink is a software and information technology consulting company founded by Suhy,

13  which purports to specialize in supporting agencies within the U.S. Government.  *See* Ratinoff Decl.,

14  Exh. 2.  On September 30, 2014, PureThink and Neo4j USA entered into the Neo4j Solution Partner

15  Agreement ("Partner Agreement").  Ratinoff Decl., ¶ 6, Exh. 4.   Under this agreement, PureThink

16  had a non-exclusive, non-transferable limited license to, *inter alia*, use the Neo4j® Mark solely to

17  market and resell commercial licenses to Neo4j® EE and related support services in exchange for

18  shared revenue for the licenses that it resold.  *Id.*, Exh. 4 at § 4.1; Exh. 3 at 60:10-61:17, 67:25-69:11.

19  PureThink agreed to the terms of this license and to use the Neo4j® Mark in accordance with Neo4j

20  USA's "then-current trademark usage guidelines."[1]  *Id.*  The Partner Agreement was subject to a 1-

21  year term, and would automatically renew at additional 1-year periods subject to the notice and

22  termination provision therein, thereby incorporating whatever was the operative trademark guidelines

23  at that time.  *Id.*, Exh. 4 at §7.1; Exh. 3 at 67:18-24.

24      All rights and licenses to the Neo4j® Platform and the Neo4j® mark would terminate upon

25  the expiration or termination, and upon such an event, PureThink agreed to "cease using any

26  trademarks, service marks and other designations of Plaintiffs."   Ratinoff Decl., Exh. 4 at §7.3.

27
28

---

[1] As a result of the renewal provision, PureThink became bound by the October 13, 2015 version of Neo4j USA's trademark guidelines as of September 30, 2016.  *See* Rathle Decl., ¶ 16, Exh. 5.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                - 5 -

SER_3770

1    PureThink further agreed that for a period of 36 months after termination of the Partner Agreement,

2    it would not "develop, market, distribute or offer any services related to any [Neo4j® CE] Products,

3    derivative works of such products, or any [Purethink] software code made to work with [Neo4j® CE]

4    Products (including, without limitation, hosting services, training, technical support, configuration

5    and customization services, etc.)."[2]  *Id.*, Exh. 4 at § 4.3.2; Exh. 3 at 70:5-19.

6          **D.    Suhy and PureThink Form iGov to Evade the Partner Agreement**

7          In the hope of increasing sales, Suhy came up with the idea of rebranding Neo4j® EE as

8    Neo4j® Government Edition ("Gov't Edition").  *See* Ratinoff Decl., Exhs. 5-6. Suhy knew that if

9    PureThink could create ████████████████████████████████████████████████████

10   █████████████████████████████████████████████████████████████████████████

11   ███████████████████    *See id.*   Nonetheless, PureThink had limited success in convincing

12   government agencies to pay for licenses to Gov't Edition and support services from PureThink.

13         By September 2016, the only promising lead PureThink had was the IRS. Ratinoff Decl.,

14   Exh. 7. However, ███████████████████████████████████████████████████████████

15   ████████████████████████████████████    *Id.*  To make that deal happen, Suhy

16   falsely told the IRS they could use Neo4j® EE under the AGPL for free and pay PureThink for its

17   consulting services.  *Id.*, Exh. 8.  In early 2017, Suhy revealed to Neo4j USA that PureThink had

18   compiled its own modified version of the Neo4j® EE software under the AGPL, which the IRS had

19   already installed.  *Id.*

20         On May 30, 2017, Neo4j USA sent PureThink notice that Suhy's actions constituted a

21   material breach of the Partner Agreement.  Ratinoff Decl., Exh. 9.  PureThink made no effort to cure

22   its breaches, and instead formed iGov on or about June 23, 2017 to evade the restrictions in Section

23   4.3.1 of the Partner Agreement.  Ratinoff Decl., Exh. 10 and Exh. 11 ("I would think your legal team

24   understands that since everything is open source and that someone can start a new company to get

25   around this would make this simple negotiating point that does no harm dropping.").   The PT

26   Defendants also admitted as much in their pleadings.  *See* PT Dkt. No. 72 at 8:22-25, 9:15-23.

27

28   ──────────────
     [2] The parties agreed to resolve the enforceability of this provision in Phase 2.  *See* PT Dkt. No. 68.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                            - 6 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**E.      iGov and Suhy Infringe the Neo4j® Mark after iGov's Formation**

On July 11, 2017, Neo4j terminated the Partner Agreement.  In providing notice, Neo4j USA demanded PureThink "cease using [Neo4j's] trademarks, service marks, and other designations…and remove from PureThink's website(s) marketing materials, [Neo4j's] trademarks and tradenames, including, without limitation, Neo4j" as required by Agreement.  Ratinoff Decl., Exh. 12.  Shortly thereafter, Suhy and iGov targeted same federal agencies that PureThink previously solicited, and pushed them to adopt the "Government Package for Neo4j" from the same "principle" behind PureThink and Gov't Edition.  *See id*., Exhs. 14-15.

For example, Suhy emailed the National Geospatial-Intelligence Agency ("NGA") admitting that there was no difference between PureThink and iGov: "Until we broke away from Neo4j Inc last month, we sold every Neo4j subscription to the US federal government under our other company PureThink. I am the core developer who created the Neo4j Government Edition which was retired by Neo last month." Ratinoff Decl., Exh. 19.  Suhy also referenced iGov's newly created website at https://igovsol.com/neo4j.html, and attached a printout of that webpage which contained multiple unauthorized uses of the Neo4j® Mark, including references to "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise." *Compare id*., Exh. 17 *and* Exh. 19.

Around this same time, both PureThink and iGov put this identical content on their websites:

> The principle [sic] behind PureThink and the Government Package has created a new corporate entity called iGov Inc, which is not a Neo4j Solution Partner. ***Because iGov Inc is not a solution partner, it can offer packages at great cost savings to US Government Agencies as it has no restrictions on working with Neo4j Enterprise open source licenses***!
>
> * * *
>
> iGov Inc's new ***Government Package for Neo4j*** can be added to any Neo4j instance making it a "Government Edition".  By default, ***all Government Packages for Neo4j now comes with Neo4j Enterprise*** included under it's [sic] open source license!

Ratinoff Decl., Exhs. 14-15. Purethink even redirected potential customers wanting to "Learn More" about iGov and the "Government Package for Neo4j" to iGov's website. *Id.,* Exh. 14.

The PT Defendants also used iGov's website to misleadingly market "Neo4j Enterprise" (cobbled together from various sources by Suhy) as genuine Neo4j® EE v3.3: "iGov Inc is now the only US Federal contractor providing Neo4j Enterprise binaries packaged with it's free Open Source

1   license!"  *See* Ratinoff Decl., 18; *see also* Exh. 17 ("iGov Inc's Government Development Package

2   with Neo4j Enterprise… Comes with same physical Neo4j Enterprise software").  Aside from iGov's

3   "Neo4j Enterprise" being virtually identical in name to Plaintiffs' official "Neo4j® Enterprise

4   Edition," the version distributed by iGov was not of the same quality as the official one compiled by

5   Neo4j Sweden, and did not include several closed-sourced features. *See* Rathle Decl., ¶¶ 10, 19-26.

6   When Suhy cobbled together "Neo4j Enterprise", he was actually creating software and introducing

7   modifications that result in a version of Neo4j® EE that is not of the same quality as if were compiled

8   by Neo4j Sweden. *Id.* Suhy admitted this in a blog he wrote circumventing Neo4j Sweden's

9   commercial licensing restrictions in place at that time.  Ratinoff Decl., Exh. 20.

10          Other unauthorized uses of the Neo4j® Mark on iGov's website included: (1) using

11   "https://igovsol.com/**neo4j**.html" as a URL to promote "Government Development Packages for

12   **Neo4j**"; (2) prominently displaying a "Request Procurement Document Package" link with

13   "**mailto:neo4j@igovsol.com**" embedded which creates an email addressed thereto upon activation;

14   (3) encouraging consumers to obtain more information by sending an email to

15   "**neo4j@igovsol.com**;" and (4) gratuitously using "Government Packages for Neo4j" and "Neo4j

16   Enterprise" to describe iGov's patchwork versions of Neo4J® EE. *Id.*, Exhs. 15-18.

17          **F.     Defendants Form GFI and Improperly Remove the Commercial Restrictions
18                   in the Neo4j Sweden Software License in Order to Launch ONgDB as a "Free
                     and Open Source" Neo4j® EE**

19          Neo4j Sweden released NEO4J® EE v3.4 under the Neo4j Sweden Software License in May

20   2018. Rathle Decl., ¶ 11.  After that release, the PT Defendants copied the source code, removed the

21   commercial restrictions imposed by the Neo4j Sweden Software License, and began promoting it

22   "free and open source" Neo4j® EE and offering commercial support services.  *See* Ratinoff Decl.,

23   Exh. 3 at 171:23-172:23, 199:22-200:20; Exh. 21.  Suhy then told Plaintiffs that he was forming a

24   non-profit "for a community fork of Neo4j to get things started, and to ensure it's [sic] long term

25   success…" and that "if we do launch this community fork and re-brand, it won't be something [he]

26   can stop once the legal entity is place and launched…." *Id.*, Exh. 27.  This was not an empty threat

27   because he was working with Brad and Ben Nussbaum, the owners of AtomRain Inc. and GraphGrid

28   Inc., to form GFI and fork Neo4j® EE. *See id.*, Exhs. 22-23; *see also* Exh. 28 ("We're consolidating

1   support of the open source neo4j graph database distributions under a non-profit organization: Graph

2   Foundation"); Exh. 29 ("Our team: iGov Inc, GraphGrid [], and AtomRain []. We work together as

3   one company. We all are the founders of the Graph Foundation.").

4         On June 22, 2018, the Nussbaums incorporated GFI and Defendants immediately began to

5   promote what they called ONgDB. Ratinoff Decl., Exh. 30. Rather than develop ONgDB as an

6   independent fork based off an earlier open source version of Neo4j® EE, Defendants again stripped

7   the commercial restrictions out of the Neo4j Sweden Software License from Neo4j® EE version 3.4

8   and began promoting ONgDB as open source Neo4j® EE 3.4 under the AGPL. *See id.*, Exhs. 24-

9   26, 28; *see also* Exh. 3 at 28:25-29:11; Exh. 31 at 87:24-90:9. They did so under the false premise

10  that Sections 7 and 10 of the Neo4j Sweden Software License permitted a licensee to remove "further

11  restrictions," i.e. the Commons Clause, imposed by Neo4j Sweden as the copyright holder and

12  original licensor. *See id.*, Exh. 3 at 171:23-172:23. This contradicted what that license actually states

13  – that only a downstream licensee may remove unauthorized restrictions when placed by an upstream

14  licensee who redistributes the copyrightable program, not those placed by the copyright owner

15  offering the terms to the licensees. *See* Rathle Decl., Exh. 3 at §§ 7, 10.

16        Defendants knew that they could not replace the Neo4j Sweden Software License with the

17  APGL without Neo4j Sweden's prior authorization. The FSF even told Suhy on August 21, 2018

18  that "[t]he copyright holder on a work is the one with the power to enforce the terms of the license"

19  and "[i]f a work was previously available under a free license, and later that license is changed, users

20  can always use that earlier version under the terms of the free license." *See* Ratinoff Decl., Exh. 34.

21  GFI admitted as much on GitHub: "***The Graph Foundation can only change the license of source***

22  ***code where it holds the copyright***." Ratinoff Decl.*, Exh. 35, Exh. 31 at 183:14-184:24; *see also* Exh.

23  36 ("We cannot change the AGPL license on any code where we don't hold a [sic] copy-right").

24        GFI also traded off the goodwill associated with Neo4j® Mark by copying the landing page

25  on Plaintiffs' GitHub repository without any overt reference to ONgDB. Dkt. No. 89, ¶ 18, Exh. 18;

26  Ratinoff Decl., Exh. 31 at 81:14-20. It was not until January 17, 2019 that GFI modified its landing

27  page by changing the title to "ONgDB - Neo4j Enterprise Fork: Graphs for Everyone" and adding

28  references "ONgDB & Neo4j," but the content still remained almost identical to Plaintiffs' GitHub

1    landing page and contained wide-spread misuse of the Neo4j® Mark.  *See* Dkt. No. 89, ¶¶ 19-21,

2    Exhs. 19-21. Notably, GFI removed Plaintiffs' licensing notices, including the need for a commercial

3    license, and replaced them with the misrepresentation that "ONgDB & ***Neo4j Enterprise*** consist of

4    modules from Neo4j Community Edition and modules licensed under AGPLv3 in this repository."

5    *Id.*, Exhs. 19-21 (emphasis added).

6            On January 31, 2019, GFI posted a blog entry on its website making its intent clear:

7                    We started Graph Foundation, Inc. … in June 2018 when we noticed Neo4j's
                     position beginning to change and the implications of this for the community and
8                    ecosystem. The Graph Foundation is a nonprofit with 501(c)(3) status ***and its goal
                     is to take over neo4j enterprise development*** ...

9    *See* Ratinoff Decl., Exh. 37.  GFI further stated that it "decided on the name ONgDB (oh-n-gee-db)

10   which stands for Open Native Graph DB but also ONgDB's Neo4j Graph DB," which it now claims

11   was merely a joke made in bad taste.  *See id.*; *see also* Exh. 31 at 178:13-179:21.

12           This blog coincided with GFI's release of ONgGB v3.5.1, which contained at least 182

13   source code files that had only been previously released under the Neo4j Sweden Software License

14   in the last beta version of Neo4j® EE 3.5 made available by Plaintiffs via GitHub.  *See* Ratinoff

15   Decl., Exh. 38 at 6:22-7:1, 8:4-16:24; *see also* Rathle Decl., ¶ 29.   In order for Defendants to continue

16   to call ONgDB "free and open source" Neo4j® EE, they again replaced the more restrictive Neo4j

17   Sweden Software License with a generic copy of the AGPL in 28 separate LICENSE.txt files.

18   Ratinoff Decl., Exhs. 39-40; Dkt. No. 91 at 19:9-25; Exh. 31 at 159:3-10; Rathle Decl., ¶ 30.  Not

19   only did this remove the Commons Clause to allow iGov, AtomRain and GraphGrid to commercially

20   use and support ONgDB, but also stripped out valid legal notices identifying Neo4j Sweden as the

21   copyright holder and licensor.[3]  *See* Ratinoff Decl., Exh. 39.

22           GFI did not make any other meaningful changes to its GitHub landing page for ONgDB until

23

24   ───────────────
     [3] The Nussbaums also own GraphGrid and AtomRain, which share the same office and computers
25   with GFI, and provide commercial training and consulting and support for users of ONgDB.
     Ratinoff Decl., Exhs. 52-53; Exh. 31 at 22:24-23:3, 31:5-32:19, 35:3-13, 57:18-58:21, 65:20-
26   70:16, 194:14-17.  Like iGov, GraphGrid and AtomRain benefit from customers being able to use
     ONgDB for "free" and diverting available project funds to pay them for such services.  *See, e.g.,*
27   *id., see also* Exh. 28 ("If you are looking for a full shield of liability, we recommend using one of
     our supporters such as GraphGrid") and Exhs. 76, 134-135.
28

842\3639184.9                                           - 10 -

1   April 14, 2020 when it started to remove the Neo4j® Mark and Plaintiffs' URLs from that page.

2   *Compare* GFI Dkt. No. 89, Exh. 22 *and* Exhs. 23-28.   However, GFI's landing page was still

3   confusingly titled "ONgDB - Neo4j Enterprise Fork: Graphs for Everyone," still started off stating

4   "Neo4j is the world's leading Graph Database," encouraged consumers to "Learn more on the Neo4j

5   website," and continued to misuse the Neo4j® Mark throughout.  *Id.*, Exhs. 29-31. It was not until

6   April 21, 2020 that GFI removed most references to the Neo4j® Mark and hyperlinks to Plaintiffs'

7   website, but it still persisted on using Plaintiffs' catch phrase "Graphs for Everyone" and mislabeling

8   the Neo4j® Platform as the "neo4j project."  *Id.,* Exhs. 32-33. GFI also continued to misleadingly

9   claim that "ONgDB Enterprise Edition consists of modules from ONgDB Community Edition and

10  modules licensed under AGPLv3 in this repository." *Id.*, Exh. 32; *see also* Ratinoff Decl., Exh. 41.

11          **G.      Defendants Promote ONgDB over Neo4j® EE Based on the False Premise**
12                   **that No Paid Commercial License from Plaintiffs is Necessary to Use ONgDB**

13          In addition to their respective websites, Defendants spread misinformation based on their

14  unauthorized alteration of the Neo4j Sweden Software License directly to potential customers and

15  encouraged them to adopt ONgDB.  *See, e.g.,* Ratinoff Decl., Exhs. 42-47.   A common theme in

16  these communications telling potential customers that ONgDB v3.5.x was "100% free and open"

17  with no limitations or restrictions imposed by commercial licensed Neo4j® EE v3.5.x.  *See id.,* Exhs.

18  42-47; *see also* Exh. 126.  Another common theme was telling potential customers the FSF had

19  determined that Commons Clause was invalid.  *See id.,* Exh. 48 ("The [FSF], which owns rights to

20  AGPLv3 license and its use, reviewed the Commons Clause that had been added and determined that

21  it was not valid."); *see also id.*, Exh. 28.  This was false because the FSF did not provide them with

22  a legal opinion and GFI knew it had no right to change the license.  *See* Exhs. 34-36; Exh. 31 at

23  183:14-184:24, 207:10-210:8.

24          Defendants also told potential customers that legal counsel for the IRS had concluded that it

25  was proper for them to have removed the Commons Clause and that ONgDB could be used without

26  obtaining a paid commercial license from Plaintiffs.  *See, e.g.,* Ratinoff Decl., Exhs. 49-50.   When

27  pressed by one customer, GFI was forced to admit that it had never received any such legal opinion

28  from the IRS.  *Id.*, Exh. 51.  In fact, they have no first-hand knowledge of ***any*** meaningful legal

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                              - 11 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_3776

1   analysis performed by the IRS about the validity of the Commons Clause.  *Id.*, Exh. 31 at 218:21-

2   220:24, 226:19-228:24, 266:18-269:22; Exh. 3 at 157:14-162:8.

3        Suhy also reached out on behalf of iGov to many of the same government agencies that he

4   had previously done so under the Partner Agreement.  *See, e.g.,* Ratinoff Decl., Exh. 25 (Excella),

5   Exhs. 29, 54 (USAF), Exh. 45 (Sandia), Exh. 46 (Army); *see also* Dkt. No. 72 at ¶¶ 23-24.  He even

6   encouraged the USAF to modify its open solicitation, which included the Neo4j® Platform as one of

7   the products listed, from "neo4j" to "neo4j/ONgDB" because Suhy pitched them as the same product

8   rather than two separate products.  *Id.,* Exh. 54.  Suhy went further by signing off on a response to a

9   RFQ where he certified iGov was "██████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████████████████████████████"

11  what was listed as "████████████████████████████████████████████████████████████████

12  ██████████"  *Id.*, Exh. 55; Exh. 31 at 235:21-237:14, 240:22-243:22.  This was false as Suhy knew that

13  Neo4j Sweden owned the copyright to source code for Neo4j® EE and never gave permission to

14  remove Commons Clause and offer it as ONgDB under the AGPL.  *Id.,* Exh. 56 and Exh. 3 at 183:12-

15  183:1, 187:12-188:5, 189:1-191:3.

16      **H.     GFI Falsely Promotes ONgDB 3.5 as a "Drop In" Replacement for Neo4j® EE**

17        GFI also used its website to deceptively market ONgDB as the equivalent of commercially

18  licensed NEO4J® EE.  Between May and September 2019, GFI promoted ONgDB as the "free and

19  open source Neo4j Enterprise project," and "a non-restrictive fork of Neo4j, the world's leading

20  Graph Database" via its webpage.  *See* Ratinoff Decl., Exh. 57.   GFI's website and GitHub landing

21  page also used virtually ***identical*** language from Neo4j's GitHub repository to describe ONgDB.

22  *Compare* Exhs. 57-58 *and* 59 (green highlight).  Even after Plaintiffs filed suit over a year ago, GFI

23  continues to advertise ONgDB as being "licensed under AGPLv3 as a free and open source

24  alternative to currently available proprietary native graph offerings such as Neo4j Enterprise

25  Edition."  *Id.,* Exh. 60.  As discussed above, such claims are misleading because GFI impermissibly

26  replaced the Neo4j Sweden Software License with the generic AGPL.

27        GFI further claimed on its website for most of 2019 that "ONgDB distributions are licensed

28  under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                  - 12 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_3777

1    distributions with the same version number."  *See* Ratinoff Decl., Exh. 57.  GFI's claim was

2    misleading it admitted that ONgDB v3.5.4 is not 100% identical to official Neo4j® EE v3.5.4.  *Id.,*

3    Exh. 31 at 158:18-163:5, 163:13-165:6; Exh. 3 at 124:2-126:23.  Rather, ONgDB is a patchwork of

4    code from the last public beta, Neo4j® EE v3.5.0-RC1, and Neo4j® Community Edition held

5    together by "glue code" authored by Suhy, Brad Nussbaum and other GFI contributors.  *See id.*  GFI

6    is entirely dependent on what patches are made available in Neo4j® CE and sought to redirect users

7    of official Neo4j® EE to GFI and identify bugs in the closed enterprise directory for Neo4j® EE.

8    *See* Ratinoff Decl., Exh. 61, Exh. 31 at 161:23-163:12, 169:13-172:12.

9         By splicing together source code for ONgDB in that manner, GFI is creating software that is

10   not of the same quality as if it were compiled by Plaintiffs.  Rathle Decl. ¶¶ 31-33.  This is because

11   GFI does not have access to the same rigorous testing and build infrastructure for official Neo4j®

12   software, which goes beyond what is built into Neo4j® CE.  *See id.*; *see also* Ratinoff Decl., Exh. 3

13   at 216:2-218:6; Exh. 31 at 168:14-169:6.  Further, since GFI introduced modifications to ONgDB in

14   an attempt to keep pace with the closed Neo4j® EE releases, the potential for stability and

15   compatibility issues with ONgDB increases.  *See* Rathle Decl., ¶ 34; *see also* Ratinoff Decl., Exh. 31

16   at 161:23-163:12.  Indeed, Defendants had no way of knowing what Plaintiffs had modified or fixed

17   in the source code for enterprise-only features after Plaintiffs closed off public access to that code in

18   November 2018.  Ratinoff Decl., Exh. 31 at 158:18-160:5; Exh. 3 at 223:1-224:9; Exh. 40.

19        Finally, Defendants knew that ONgDB does not include every closed enterprise feature in

20   the equivalent version of Neo4j® EE.  Ratinoff Decl., Exh. 38 at 2:12-17, 4:15-22, 5:4-6:21; Exh. 3

21   at 127:19-128:17.  As a result, they deceived consumers into thinking they were downloading an

22   exact copy of the same version of commercial-only releases of Neo4j® EE, which in actuality they

23   were receiving an improperly licensed and inferior ONgDB product from a qualitative and feature

24   standpoint.  ***GFI even admitted that after ONgDB v3.5.4, it could not "reliably guarantee that it***

25   ***was a drop-in replacement" for Neo4j® EE and was unwilling to do the necessary testing to make***

26   ***such integration and compatibility guarantees because it became "too hard to demonstrate."*** *Id.*,

27   Exh. 31 at 186:24-188:17, 188:23-189:23.  GFI thus stopped calling ONgDB a drop-in replacement

28   and removed those claims from its website in October 2019 shortly after Plaintiffs filed suit.  *See id.*

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                            - 13 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**I.      iGov Uses the Neo4j® Mark to Promote ONgDB on its Websites and Falsely Claims that ONgDB is a "Drop In" Replacement for Neo4j® EE**

After GFI released ONgDB in July 2018, iGov continued to misuse the Neo4j® Mark on its website.  It continued to use "https://igovsol.com/**neo4j**.html" as a URL address to promote ***ONgDB*** until it deactivated that page sometime after July 27, 2020.  Ratinoff Decl., Exhs. 62-65; Exh. 13 at RFA No. 5.  While iGov replaced this url with "https://igovsol.com/**graph**.html, the contents of the page remained the same.  *Compare id.,* Exh. 65 *and* Exh. 66.  iGov also used the neo4j@igovsol.com email address on its "neo4j.html" page (*id.*, Exhs. 63-64 [purple highlight]) and "downloads.html" page (*id.*, Exhs. 67-69 [purple highlight]) as means for consumers to inquire about ***ONgDB*** until sometime in July 2020.  *See id.*, Exh. 13 at RFA Nos. 7-11.  Likewise, GFI misled customers on its "downloads" page by using a "Download Neo4j Enterprise" hyperlink that redirects consumers to download links for ***ONgDB*** until July 27, 2020.  *See id.*, Exh. 67 (red highlight); Exh. 13 at RFA Nos. 10, 14.  However, iGov never stopped offering "commercial equivalent support packages for Neo4j Enterprise open source licensed distributions," and interchangeability referring to "ONgDB Enterprise" and "Neo4j Enterprise" on these pages.  *See id.,* Exhs. 62-70 (yellow highlight).

In addition, iGov continues misrepresent that "ONgDB Enterprise," "Neo4j Enterprise" and "Neo4j Enterprise Edition" are open source and can be used for free under the AGPL.  *See* Ratinoff Decl., Exhs. 62-74. iGov also continues to misrepresent that "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions." *Id.,* Exh. 71-74 (green highlight). Similarly, GFI instructed potential users of Neo4j® EE on its "neo4j" page to "simply download ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the same version number" and still does so on the successor "graph" page.  *Id.,* Exhs. 63-66 (green highlight).  Between July 5, 2019 and July 27, 2020, GFI described "ONgDB Enterprise 3.5.5" as a "Drop in replacement for Neo4j Core and Enterprise 3.5.5" on its "downloads" page. *Id.,* Exhs. 67-69 (green highlight).   iGov ***still*** makes drop-in replacement claims for ONgDB v3.5.11 even though GFI ***confirmed*** that versions released after ONgDB v3.5.4 were no longer drop-in replacements for equivalent versions of Neo4j® EE.  *Id.,* Exh. 74; Exh. 31 at 186:24-188:17, 188:23-189:23.

In addition, the PT Defendants operated www.graphstack.io to further promote the false

1   equivalency between ONgDB and Neo4j® EE.  They admitted that "iGov Inc is the company behind

2   GraphStack" and that "iGov Inc offers production support packages for Neo4j / ONgDB Enterprise

3   open source distributions for US government agencies."  Ratinoff Decl., Exh. 75.  This website also

4   contained statements that ONgDB "is a non-restrictive fork of Neo4j" and "a drop in replacement for

5   any Neo4j Enterprise (or community) distribution of the same version number." *See id.*  The PT

6   Defendants have made similar misrepresentations directly to potential customers, such as "[ONgDB]

7   is 100% open source and a drop in replacement for the same Neo4j version." *See id.*, Exh. 43; *see*

8   *also* Exhs. 44-46, 76-77, 126.

9        **J.        Defendants Impermissibly Rely Upon Official Neo4j® Support Documentation**

10          GFI's efforts to steal the goodwill associated with the Neo4j® Mark is further evidenced by

11   the fact that it did not create its own support documentation for ONgDB.  *See* Ratinoff Decl., Exhs.

12   128-129 [RFA Nos. 81-84]. Instead, it has relied upon Neo4j USA's official documentation and used

13   hyperlinks on its website to redirect users to Plaintiffs' operation and developer manuals located on

14   Plaintiffs' website.  Dkt. No. 89, ¶¶ 3-8, 13-16; Ratinoff Decl., Exhs. 78-83.  For example, GFI's

15   webpage for ONgDB v3.5.3 stated, "Look for 3.5 Operations manual here" with an embedded

16   hyperlink to https://neo4j.com/docs/operations-manual/3.5/.  Dkt. No. 89, ¶ 7; Ratinoff Decl., Exhs.

17   82-83. Similarly, GFI's website consistently directed users to ***Plaintiffs'*** change logs for each new

18   release of ONgDB until GFI finally started its own change log with ONgDB v3.5.16.  Dkt. No. 89,

19   ¶¶ 3-8; Ratinoff Decl., Exh. 84; Exhs. 128-129 [RFA Nos. 87, 92, 97, 103, 107, 110].

20          GFI employed similar misdirection on its GitHub repository.  At least up until April 14, 2020,

21   GFI's GitHub landing page prominently stated "To build the documentation see the Neo4j

22   documentation" with an embedded hyperlink "https://github.com/neo4j/neo4j-documentation/." Dkt.

23   No. 89, Exhs. 18-19, 23.  GFI's general document repository on GitHub also uses hyperlinks that

24   lead consumers to believe they are being directed to documentation provided by GFI.  *See* Dkt. No.

25   89, ¶¶ 9-16.  However, these hyperlinks redirect them to Neo4j USA's official documentation on

26   Neo4j USA's corporate website.  For example, the word "ONgDB 3.5" under the heading "LTS

27   release" contains an embedded hyperlink, https://neo4j.com/docs/operations-manual/3.5/, that

28   redirects users to Neo4j USA's copyrighted "The Neo4j Operations Manual v3.5" located on Neo4j

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                                        - 15 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1  USA's website. *Id.,* ¶¶ 9-10; Ratinoff Decl., Exhs. 82-83; Exh. 31 at 276:19-279:15, 284:2-285:18.

2        As indicated at the top of each of the forgoing manuals, they are copyrighted by Neo4j USA

3  and subject to the License: Creative Commons 4.0, which contains a hyperlink to the Attribution-

4  NonCommercial-ShareAlike 4.0 International Public License. *See* Ratinoff Decl., Exh. 85.

5  Notably, this license expressly prohibits the use of Neo4j USA's documents for commercial purposes,

6  which is exactly what Defendants were doing by using Plaintiffs' documentation to promote ONgDB

7  as "drop in replacement" for commercially licensed Neo4j EE® and Defendants' related support and

8  consulting services. *Id.*

9        iGov also does not use its own release notes and announcements in promoting ONgDB.

10  Instead, it uses hyperlinks on its website to redirect consumers to Neo4j USA's official release notes

11  (https://neo4j.com/release-notes/neo4j-3-5-5/) and "What's New" page (https://neo4j.com/whats-

12  new-in-neo4j/) until they apparently removed those references sometime in July 2020. *See* Ratinoff,

13  Exhs. 67-69 (blue highlight). The GraphStack website similarly used hyperlinks to redirect

14  consumers to Neo4j USA's official release notes (https://neo4j.com/release-notes/neo4j-3-5-5/) and

15  "What's New" page (https://neo4j.com/whats-new-in-neo4j/) in conjunction with encouraging

16  consumers to download ONgDB as an alleged "[d]rop in replacement for Neo4j Core and Enterprise

17  3.5.3." Ratinoff Decl., Exh. 75; Exh. 13 [RFA Nos. 42-43].

18      **K.**    **Defendants Improperly Use the Neo4j® Mark to Promote ONgDB on Twitter**

19        On or about November 17, 2018, GFI claimed on Twitter that ONgDB v3.5 would "be a

20  divergent but open source #AGPL release" of open source Neo4j® EE v3.5. Ratinoff Decl., Exh.

21  87. As detailed above, however, GFI did not develop ONgDB as legitimate, bona fide open source

22  fork. Consequently, Defendants mislead consumers via Twitter that ONgDB was licensed under

23  AGPLv3 as a free and open source equivalent of commercial-only licensed Neo4j® EE containing

24  the same closed source code as equivalent versions thereof. *See, e.g., id.*, Exhs. 93, 97-104.

25        Defendants also impermissibly used the NEO4J® Mark as a hashtag "**#Neo4j**" to promote

26  ONgDB. Ratinoff Decl., Exh. 31 at 233:17-237:21. GFI made a conscious decision to announce its

27  new releases of ONgDB via Twitter using the format, "**#ONgDB** (**#FOSS#Neo4j** Enterprise) 3.5.x

28  support release is out," with no attempt to differentiate ONgDB and Neo4j® EE as separate,

842\3639184.9        - 16 -

1   competing products.[4]  *Id.*, Exhs. 89, 92, 94-95; Exh. 31 at 233:17-236:15, 240:12-241:25.  GFI issued

2   a similar tweets that used "**#Neo4j** Enterprise" and "**#ONgDB**" without ***any*** differentiation.  *Id.*,

3   Exhs. 91, 93, 96.  As noted above, GFI used "**#Neo4j** Enterprise 3.5" to solicit end-users of ***Neo4j®***

4   ***EE v3.5*** to report bugs so that Defendants could identify bugs without actually doing the work and

5   better mimic Plaintiff's potential fixes in ONgDB.  *Id.*, Exh. 61.  To make matters worse, the PT

6   Defendants retweeted GFI's tweets increasing the number of potential customers that would receive

7   those tweets or come across them in searches.  *See id.*, Exhs. 105-111.

8            **L.        Defendants' Misuse of the Neo4j® Mark and False Statements about ONgDB**
              **Have Diverted Customers to Defendants and Caused Actual Confusion**
9

10          Defendants' strategy to siphon off the goodwill associated with the Neo4j® Mark quickly

11   paid dividends.  By March 21, 2019 – only two months after the release of ONgDB v3.5.1 – GFI

12   boasted on its website and via Twitter that "we have reached our 1,000th download of ONgDB 3.5,

13   the Open Neo4j Enterprise project!" and was "a sign that we are succeeding in our mission."  *See*

14   Ratinoff Decl., Exh. 112; *see also* Exh. 91.  By June 2020, GFI tallied over 10,000 downloads of

15   ONgDB and as of December 2020 had over 14,000 downloads.  *See id.,* Exhs. 113-114.

16          Defendants' misinformation campaign also resulted in actual consumer confusion.  For

17   example, users encountered compatibility issues with ***ONgDB*** and sought assistance from ***Plaintiffs***:

18              Do the terms of use for "neo4j Desktop" apply to the ONGDB server which I
                downloaded under AGPLv3 license? I read the Desktop terms carefully and they
19              refer everywhere to "neo4j Desktop software". Has anybody encountered this
                issue? I am feeling really stupid for not thinking this through before downloading
20              the Desktop Software, especially as database authentication keeps failing. Before
                I spend any more time troubleshooting, could someone indicate any features of
21              Desktop that are really worth it (other than UI)? I am planning production, so the
                license is important to me.
22

23          *See* Ratinoff Decl., Exh. 115.  When Defendants learned of this confusion, they had audacity

24   to joke about it rather than take remedial measures to ensure future consumer confusion over

25   licensing and compatibility would not occur. *Id.,* Exh. 116.  GFI confirmed as much, testifying that

26   the Neo4j® desktop tool was not compatible with or supported by ONgDB.  *Id.,* Exh 31 at 230:12-

27   233:10.   iGov found this "interesting" because it showed that ONgDB was obtaining broader

28   _____
     [4] "FOSS" stands for free open source software. Ratinoff Decl., Exh. 31 at 233:17-234:3.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                    - 17 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1  consumer appeal in the marketplace than originally anticipated. *Id.,* Exh. 3 at 207:12-209:3.

2        Consumers also have expressed uncertainty over Defendants' unauthorized modification to

3  the Neo4j Sweden Software License and justification for doing so. *See* Ratinoff Decl., Exh. 49

4  ("there does not seem to be a resolution there certainly not from the Neo4j perspective, which defends

5  their use of both AGPL and the Commons Clause) (hyperlink leads to Exh. 117); Exh. 118 ("When

6  you say "ONgDB – this is a fully AGPL fork of the open source Neo4j Github repository" [] Is that

7  AGPLv3 [] from the FSF?  Is that the same AGPLv3 license referenced below regarding Neo4j

8  Enterprise from the Neo4j Github repository [] albeit with the 'additional sections' you mentioned?");

9  *see also* Exh. 119.  Defendants exacerbate these issues and cause further consumer confusion by

10  falsely equating ONgDB with commercially licensed Neo4j® EE. *See, e.g., id.,* Exhs. 40, 55, 131,

11  133-134.  In the case of NextCentury and the Maryland Procurment Office (MPO), they ultimately

12  adopted ONgDB over Neo4j® EE after Defendants convinced them that it was not necessary to

13  obtain a commericial license from Plaintiffs. *Id.*, Exhs. 48-49, 120.  Likewise, Defendants'

14  interchangeable use of "Neo4j Enterprise" and "ONgDB" in marketing ONgDB misleads consumers

15  into mistakenly believing that ONgDB and Neo4j® EE were one and the same. *See, e.g.,* Exhs. 35,

16  40, 42-43, 46, 53, 55, 76, 100, 134.

17        Finally, consumers who have downloaded ONgDB rather than official Neo4j® EE have

18  experienced issues with ONgDB. *See, e.g.,* Exh. 121 ("Unable to connect to Neo4j/ONgDB Browser

19  when port forwarding"); Exh. 122 ("ONgDB neoj not starting up"); Exh. 123 ("I also tried ONgdb

20  (neo4j) with different gremlin server versions"); Exh. 124 ("I'm having some difficulty loading a

21  Cypher file into Neo4J… note that I am using an recent ONGDB build, rather than straight Neo4J; I

22  do not believe this will make any substantial difference."); *see also* Exh. 133.  Rather than seek

23  assistance from GFI and ONgDB users, however, these consumers seek assistance from Plaintiffs on

24  GitHub and Neo4j® Platform users on Stack Overflow. *See id.*  In one instance, Suhy even sent a

25  user to Neo4j USA's operations manual for assistance since GFI never developed its own support

26  documentation. *See, e.g.,* Exh. 125.  Despite this lawsuit, Defendants remain undeterred in trading

27  off the Neo4j® Mark and falsely advertising ONgDB as free and open Neo4J® EE.

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9

- 18 -

## III.   THE CLAIMS AND DEFENSES SUBJECT TO PLAINTIFFS' MOTION

Plaintiffs move for partial summary judgment on Neo4j USA's Lanham Act and related UCL claims against Defendants for: (1) trademark infringement, 15 U.S.C. § 1114; (2) false designation of origin and false advertising, 15 U.S.C. § 1125(a); (3) federal unfair competition, 15 U.S.C. § 1125(a); and (4) state unfair competition in violation of Cal. Bus. Prof. Code §§ 17200 et seq.  PT Dkt. No. 82, 90 at ¶¶ 99-133; GFI Dkt. Nos. 63, 65 at ¶¶ 78-111.  Plaintiffs also move for summary judgment on Defendants' nominative fair use defenses.  PT Dkt. Nos. 82, 91; GFI Dkt. Nos. 63, 91.

## IV.   APPLICABLE MOTION FOR SUMMARY JUDGMENT STANDARDS

A motion for summary judgment or partial summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Addisu v. Fred Meyer, Inc*., 198 F.3d 1130, 1134 (9th Cir. 2000). A fact is material when it affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party bears the ultimate burden of proof at trial, it must prove each essential element of the claims upon which it seeks judgment based on undisputed facts that are sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.  *Online Glob., Inc. v. Google LLC*, 387 F.Supp.3d 980, 984–85 (N.D. Cal. 2019).  Where the non-moving party bears the burden of proof, "the burden on the moving party may be discharged by … pointing out … that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the non-moving party's claim or defense. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).

If the moving party meets this initial burden, the burden then shifts to the non-moving party to designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324.  The non-moving party does not meet this burden by showing

1    "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*

2    *Corp.*, 475 U.S. 574, 586 (1986).  Rather, it must come forward with admissible evidence to satisfy

3    the burden. Fed. R. Civ. P. 56(c); *see Hal Roach Studios, Inc. v. Feiner & Co., Inc.*, 896 F.2d 1542,

4    1550 (9th Cir. 1990).  "If the nonmoving party's 'evidence is merely colorable or is not significantly

5    probative," then summary judgment may be granted."  *Online Glob., Inc.*, 387 F.Supp.3d at 985

6    (citation omitted); *see also Anderson*, 477 U.S. at 248-49.

7    **V.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF NEO4J**
       **USA ON ITS TRADEMARK INFRINGEMENT CLAIMS AND AGAINST**
8      **DEFENDANTS ON THEIR NOMINATIVE FAIR USE DEFENSE**

9          **A.    Legal Standards for Trademark Infringement and Nominative Fair Use**

10          Neo4j USA moves for partial summary judgment on its causes of action for trademark

11   infringement and unfair competition in violation of 15 U.S.C. §§ 1114, 1125(a)(1).  PT Dkt. No. 90

12   at ¶¶ 99-111, 120-126; GFI Dkt. No. 65 at ¶¶ 78-90, 99-105.  To prevail on its claim under 15 U.S.C.

13   § 1114, Neo4j USA must prove (1) an ownership interest in a protectable mark; and (2) that

14   Defendants' use of the mark is likely to cause consumer confusion.  *Network Automation, Inc. v.*

15   *Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011).  These elements also apply to

16   Neo4j USA's cause of action for unfair competition under 15 U.S.C. § 1125(a)(1). *See Brookfield*

17   *Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.8 (9th Cir. 1999).  Likewise, an

18   "an action for unfair competition under [Section 17200] is 'substantially congruent' to a trademark

19   infringement claim under the Lanham Act." *Acad. of Motion Picture Arts & Scis. v. Creative House*

20   *Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (citation omitted).  This is because the

21   "ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks."

22   *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).

23          Registration of a mark is prima facie evidence of the validity of the mark, the registrant's

24   ownership of the mark, and the registrant's exclusive right to use the mark in connection with the

25   goods specified in the registration. *See* 15 U.S.C. § 1115(a).  "When proof of registration is

26   uncontested, the ownership interest element of a trademark infringement claim is met." *Pom*

27   *Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014).  Neo4j USA bases its trademark

28   claims on Registration No. 4,784,280 for the word mark "NEO4J."  Ratinoff Decl., Exh. 1.

1    Importantly, Neo4j USA's exclusive right to use the Neo4j® Mark covers all design variations of the

2    word because it was registered as a standard character mark. *See Pom Wonderful*, 775 F.3d at 1124.

3    Since the Court struck Defendants' trademark validity defenses with prejudice, there is no basis for

4    them to challenge the Neo4j® Mark. As a result, Neo4j USA meets the first element.

5         Normally, Neo4j USA would need to establish the second element of consumer confusion

6    by engaging in the 8-factor analysis under *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th

7    Cir.1979). A defendant may avail himself of the nominative fair use defense if "the use of the

8    trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one

9    product for a different one." *New Kids on the Block v. News Am. Publ'g, Inc.,* 971 F.2d 302, 308–09

10   (9th Cir. 1992). Thus, the *Toyota* test replaces the *Sleekcraft* test as the proper measure of consumer

11   confusion. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175 (9th Cir. 2010). In order

12   to rely upon nominative fair use, (1) defendant's product must be one not readily identifiable without

13   use of plaintiffs' trademark; (2) only so much of that mark may be used as is reasonably necessary to

14   identify defendant's product; and (3) defendant must do nothing that would, in conjunction with the

15   mark, suggest sponsorship or endorsement by the trademark holder. *Id.* at 1175–76. A defendant

16   seeking to assert nominative fair use as a defense "need only show that it used the mark to refer to

17   the trademarked good." *Id.* at 1182-83. The burden then reverts to plaintiff to show consumers are

18   likely to believe that use of a mark is sponsored or endorsed by a trademark holder. *Id.*

19        **B.    The PT Defendants' Non-ONgDB Related Infringement of the Neo4j® Mark**

20        The PT Defendants cannot assert a nominative fair use of the Neo4j® Mark on their websites

21   due to PureThink's status as a former licensee. In a dispute between a licensee and former licensor

22   there is no need to compare the marks or products. *See Hollywood Athletic Club v. GHAC–CityWalk*,

23   938 F.Supp. 612, 614–15 (C.D.Cal.1996). In this situation, courts recognize that an ex-licensee's

24   continued use of a trademark alone establishes a likelihood of consumer confusion. *See, e.g. State of*

25   *Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005) ("courts

26   have held that an ex-licensee's continued use of a trademark is enough to establish likelihood of

27   confusion"); *2Die4Kourt v. Hillair Capital Mgmt., LLC*, 2016 WL 4487895, at *6 (C.D. Cal. Aug.

28   23, 2016), *aff'd*, 692 F. App'x 366 (9th Cir. 2017) ("once a license agreement is terminated, the former

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                          - 21 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1   licensee cannot continue using the mark"); *Sun Microsystems v. Microsoft Corp*., 999 F.Supp. 1301,

2   1311 (N.D.Cal.1998) ("[w]here a licensee persists in the unauthorized use of a licensor's trademark,

3   courts have found that the continued use alone establishes a likelihood of consumer confusion");

4   *Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.*, 88 F.Supp.2d 914 at 922 (C.D. Ill. 2000)

5   (likelihood of confusion exists as a matter of law if a licensee continues to use marks owned by the

6   licensor after termination of the license).

7         Here, it undisputed that PureThink had a license to use the Neo4j® Mark to market and resell

8   licenses and support services for Neo4j® EE, and agreed to cease using the mark in that manner upon

9   termination.  Ratinoff Decl., Exh. 4 at §§ 4.1, 7.3.  It is also undisputed PureThink continued to use

10  the Neo4j® Mark after Neo4j USA terminated the Partner Agreement as detailed above. *See supra*

11  Section II.E.  It wrongly used the Neo4j® Mark on its website to funnel customers to iGov to obtain

12  "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise."

13  *See* Ratinoff Decl., Exh. 14.  It also promoted "Neo4j Enterprise" as genuine Neo4j® EE despite

14  being compiled by Suhy and not being of the same quality if it were compiled and tested by Plaintiffs.

15  *See id.*, Exh. 16; Rathle Decl., 19-26, 31-34.

16        iGov used the Neo4j® Mark in the same manner on its website and made similar misleading

17  statements. *See, e.g.,* Ratinoff Decl., Exhs. 15-18, 21, 62-64, 67-69.  iGov went further by using the

18  Neo4j® Mark as a URL address, in the email address "**neo4j@igovsol.com**" for users to request

19  more information about Neo4j® Software *from iGov* and repeatedly using "Government Packages

20  for Neo4j" and "Neo4j Enterprise" to describe Suhy and iGov's patchwork binaries of Neo4J® EE.

21  *See id.* (purple highlight). The PT Defendants also repeatedly touted their prior relationship with

22  Neo4j USA and claimed to be "the developer of the retired Neo4j Government Edition." *See id.*

23        The PT Defendants knew these uses were unauthorized since the same trademark guidelines

24  they had agreed to be bound by prohibited the use of the Neo4j® Mark with anything other than "the

25  software in the exact binary form that it is distributed by [Neo4j], without modification of any kind."

26  *See* Ratinoff Decl., Exh. 4 at § 4.1; Rathle Decl., ¶¶ 15-16, Exh. 5.  Likewise, these guidelines

27  prohibited the use of the Neo4j® Mark "in a web page title, titletag, metatag, or other manner with

28  the intent or the likely effect of influencing search engine rankings or results listings." *Id.*  Thus, there

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9

- 22 -

1    is no question that any reasonable trier of fact would find the aforementioned uses of the Neo4j®

2    Mark by an ex-licensee would create consumer confusion over the PT Defendants being endorsed by

3    or affiliated with Plaintiffs, and that their recompiled "Neo4j Enterprise" was identical to official

4    Neo4j® EE or otherwise endorsed by Plaintiffs.  *See Wetzel's Pretzels, LLC v. Johnson*, 797

5    F.Supp.2d 1020, 1028 (C.D. Cal. 2011) ("[c]ontinued use by former ... licensee of the mark

6    constitutes a fraud on the public, since they are led to think that the continuing user is still connected

7    with the trademark owner"); *see also Adobe Sys. Inc. v. A & S Elecs., Inc.*, 153 F.Supp.3d 1136, 1143

8    (N.D. Cal. 2015) (not fair use because defendant's use of Adobe's marks was not intended to describe

9    Adobe's product, but rather to make it appear that the software was sanctioned by Adobe for sale and

10   distribution).  Thus, the PT Defendants indisputably have infringed the Neo4j® Mark.

11         Suhy and iGov cannot escape liability for infringement as an ex-licensee simply because they

12   were never a Neo4j Solution Partner.  Under Section 10 of the Partner Agreement, PureThink agreed

13   that all contractual restrictions would apply to any successor-in-interest, assign, and acquirer of

14   substantially all of its assets.  Ratinoff Decl., Exh. 4.  Suhy told Neo4j and then bragged on the PT

15   Defendants' websites that they formed iGov to circumvent the restrictions imposed by the Partner

16   Agreement.  *See, e.g., id.,* Exhs. 11, 14-15; *see also* Exh. 3 at 46:12-16.  Suhy is sole owner and

17   employee of both entities, used the same website template, and initially used the same offices and

18   support telephone number for both entities. *See id.* Exh. 3 at 21:23-22:22, 23:16-18, 37:3-38:16, 39:6-

19   40:23, 47:20-49:8, 52:9-11.  Suhy also used both his iGov and PureThink email accounts to solicit

20   customers that he had previously contacted under the Partner Agreement.  *See, e.g., id.,* Exhs. 19, 25,

21   29, 45-46, 54; and Dkt. No. 72 at ¶¶ 23-24.  iGov even took over PureThink's business relationship

22   with the IRS without skipping a beat.  *See id.* Exh. 3 at 53:4-54:25; Exh. 127.  Thus, it is indisputable

23   that PT Defendants acted as unified infringers of the Neo4j® Mark.

24         Controlling California law does not permit an individual or entity to circumvent its legal

25   obligations by fraudulently forming a purportedly separate, entity.  *Automotriz Del Golfo De*

26   *California S.A. de C.V. v. Resnick*, 47 Cal.2d 792, 796 (1957); *Ultratech, Inc. v. Ensure NanoTech*

27   *(Beijing), Inc.*, 108 F.Supp.3d 816, 826-27 (N.D. Cal. 2015) (enforcing confidentiality protections

28   personally against corporate president who started competing business; noting, "it would be plainly

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                                - 23 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_3788

1  inequitable" for corporate president to escape personal liability for breach of a contract).  Rather,

2  California law treats such related entities as alter egos, each bound by the same obligations and each

3  responsible for the others unlawful conduct.  *See SEC v. Rose Fund, LLC*, 2013 WL 1345, at *2 (N.D.

4  Cal. Apr. 2, 2013) (finding alter ego liability when defendant was the sole officer, agent, and

5  signatory for two companies).  Consequently, iGov is equally bound by the Partner Agreement, and

6  equally liable as an ex-licensee for infringing the Neo4j® Mark.

7         Even if Suhy and iGov did not operate as PureThink's alter egos, they still cannot claim

8  nominative fair use of the Neo4j® Mark.  The PT Defendants cannot establish the first *Toyota* prong

9  because they did not use the Neo4j® Mark to describe Plaintiffs' products.  "To qualify for a fair use

10  defense, the use must not 'create an improper association between a mark and a new product' but

11  must, instead, 'merely identify the trademark holder's products.'" *Horphag Research Ltd. v. Garcia*,

12  475 F.3d 1029, 1037–38 (9th Cir. 2007) (internal citation omitted); *accord Playboy Enterprises, Inc.*

13  *v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1030 (9th Cir. 2004). Rather than calling their

14  patchwork version of "Neo4j Enterprise" something else as required by the guidelines, they made the

15  calculated decision to "appropriate the cachet of" the Neo4® Mark to pass off their inferior "Neo4j

16  Enterprise" packages and related support services.  *See Horphag*, 475 F.3d at 1038.

17         The evidence is also indisputable that PT Defendants prominently used the Neo4j® Mark on

18  iGov's website far beyond what was reasonably necessary.  Indeed, their use of the Neo4j® Mark in

19  iGov's email address and URL address does nothing to comparatively advertise their lesser copies of

20  Neo4j® EE.  *See Experience Hendrix, L.L.C. v. Hendrixlicensing.com, Ltd.*, 2010 WL 2104239, at

21  *6 (W.D. Wash. May 19, 2010) (use of plaintiff's HENDRIX mark in defendants' URL addresses

22  and business names does not describe Plaintiffs' product but rather Defendants' own product-the

23  marketing and licensing of Jimi Hendrix related goods).  It was also unnecessary as iGov's website

24  contains  two  far  less  prominently  featured  email  addresses,  "info@igovsol.com"  and

25  "support@igovsol.com," at the bottom of various iGov webpages.  *See, e.g.,* Ratinoff Decl., Exhs.

26  15, 63-64.  Likewise, the only reason for the PT Defendants to use the Neo4j® Mark in one of iGov's

27  URLs is to make it more likely that the web page will be "hit" in a search for "Neo4j" and the higher

28  on the list of "hits" the web page will appear.  *See Brookfield*, 174 F.3d at 1045.  This is not fair use.

842\3639184.9                                            - 24 -

1   *See id.* at 1066; *see also Experience Hendrix*, 2010 WL 2104239, at *6.

2          Finally, the PT Defendants calling their patched together binaries "Neo4j Enterprise" and

3   bundling of support services as the "Government Package for Neo4j" strongly suggests sponsorship

4   and endorsement by Neo4j USA.  To be sure, they repeatedly assure potential customers both on

5   iGov's website and direct solicitation via email that their version of  "Neo4j Enterprise" was the

6   "same official Neo4j Github Repositories as Neo4j Inc uses for their paid commercial licensed

7   builds" except distributed under an open source license.  *See, e.g.*, Ratinoff Decl., Exhs. 15, 18-19,

8   21.  This would lead any trier of fact to find that a reasonable consumer would assume it is getting

9   official Neo4j® EE for free, when in fact, it is receiving an unlicensed, lesser quality build of that

10  software.  Thus, the Court should grant partial summary judgment in favor of Neo4j USA on its

11  trademark infringement claims based on Defendants' non-ONgDB related use of the Neo4j® Mark.

12  **C.      Defendants Did Not Fairly Use the Neo4j® Mark in Promoting ONgDB**

13          Defendants' extensive use of the Neo4j® Mark in conjunction with marketing ONgDB

14  v3.5.x does not amount to nominative fair use and instead amounts to a concerted effort to

15  "appropriate the cachet of one product for a different one."  *New Kids on the Block*, 971 F.2d at 308-

16  309; *Horphag*, 475 F.3d at 1038.  As an initial matter, ONgDB can be readily identified as "Open

17  Native Graph Database" without use of Neo4j® Mark. *See* Ratinoff Decl., Exh. 31 at 27:17-29:9,

18  178:13-179:25, Exhs. 86, 88.  Nonetheless, Defendants will argue that describing ONgDB as a fork

19  of Neo4j® EE is necessary to explain the origin of ONgDB.  This argument is untenable because

20  they ***extensively*** used the Neo4j® Mark (albeit without proper trademark usage and notices) on their

21  websites, in direct solicitations to customers and on GFI's Github repository far beyond what was

22  reasonably necessary to describe ONgDB as a divergent fork of Neo4j® EE, and most often to

23  impermissibly promote ONgDB.  *See Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, 2019

24  WL 1586776, at *5 (N.D. Cal. Apr. 12, 2019) ("[i]n nominative fair use, the defendant uses the

25  trademarked term not to describe its product but to describe the plaintiff's [product]").

26          As detailed above in Section II.F., GFI initially copied the landing page on Plaintiffs' GitHub

27  repository without any overt reference to ONgDB.  At the time that Plaintiffs filed suit, GFI's ONgDB

28  repository still strongly resembled the landing page for Plaintiffs repository for Neo4j® Software,

842\3639184.9                               - 25 -

1    and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used

2    "Neo4j" *instead* of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59.  This does not amount

3    to fair use because GFI is using the Neo4j® Mark to refer to and promote ONgDB and not carefully

4    identify Plaintiffs' product.  *See Horphag*, 475 F.3d at 1037-38.

5        The continued use of the Neo4j® Mark on iGov's website as (1) an URL address for a page

6    promoting *ONgDB*; (2) an email address for customers to obtain more information about *ONgDB*;

7    and (3) a hyperlink to redirect consumers to download *ONgDB* also does not qualify as nominative

8    fair use.  *See, e.g.*, Ratinoff Decl., Exhs. 62-65, 67-69; Exh. 13 [RFA Nos. 10-11, 14].  This is because

9    they are using the Neo4j® Mark to promote ONgDB and create an improper association with

10   Plaintiffs and that mark.  *See Horphag,* 475 F.3d at 1037–38; *Playboy*, 354 F.3d at 1030; *Experience*

11   *Hendrix*, 2010 WL 2104239, at *6.   This is also far more than what is necessary to simply identify

12   ONgDB as a fork of Neo4j® EE.  *See id.*

13       Likewise, Defendants' (1) conspicuous use of "neo4j," "neo4j enterprise" and "Neo4j

14   Enterprise" without proper trademark notices; (2) use of embedded "Neo4j" links to Neo4j USA's

15   website and GitHub repository; (3) hyperlinking to Plaintiffs' build instructions, support

16   documentation and change logs containing the Neo4j® Mark rather than creating and hosting their

17   own with the ONgDB name; and (4) interchangeable use of "Neo4j Enterprise" and "ONgDB" to

18   promote ONgDB on their websites goes well beyond what is reasonably necessary to identify GFI's

19   ONgDB products as a fork of Neoj4® EE.  *See supra* Sections II.I. and II.J.; *see also* Ratinoff Decl.,

20   Exhs. 37, 57-58, 62-70, 75; Dkt. No. 89, ¶¶ 3-16.  Any reasonable trier of fact would find Defendants'

21   extensive use of the Neo4j® Mark to be the misappropriation of the associated goodwill and imply

22   endorsement by Neo4j USA and confusion over the source of ONgDB.  *See Horphag,* 475 F.3d at

23   1037–38; *Playboy*, 354 F.3d at 1030; *Experience Hendrix*, 2010 WL 2104239, at *6.

24       Perhaps the most *unfair* use of the Neo4j® Mark has been via GFI's Twitter account.  *See*

25   *supra* Section II.K.  It is undisputed that GFI used a hastag, **#Neo4j** that consists of nothing more

26   than the Neo4j® Mark with a "#" before the Mark.  *See, e.g.*, Ratinoff Decl., Exhs. 1, 89-96.  GFI

27   prominently used the Neo4j® Mark as a hashtag to announce its new releases of ONgDB without

28   differentiating ONgDB and Neo4j® EE as separate, competing products: "**#ONgDB (#FOSS#Neo4j**

1   Enterprise) 3.5.x support release is out." *See, e.g., id.*, Exhs. 89, 92, 94-95; Exh. 31 at 233:17-236:15,

2   240:12-241:25, 246:5-249:2.   GFI issued a similar tweet that stated "**#ONgDB**, Open **#Neo4j**

3   Enterprise," and in at least one instance tweeted as if ONgDB and Neo4j® EE were the same thing:

4   "Our **#ONgDB**/**#Neo4j** Enterprise CI server is up and running builds…." *Id.,* Exhs. 91, 93.   In

5   another instance, GFI did not even refer to "Neo4j Enterprise" and simply used **#Neo4j** to promote

6   ONgDB without reference to Neo4j® EE: "Latest **#ONgDB** apoc 3.5.0.8 procedure release is out.

7   https://github.com/graphfoundatio... **#Neo4j."** *Id.*, Exh. 96.

8           None of these tweets qualify as nominative fair use. *See Align Tech.,* 2019 WL 1586776, at

9   *5 (defendants' use of plaintiffs' mark as hashtags does not qualify as nominative because defendant

10  used the marks to refer to its own product); *see also Downing v. Abercrombie & Fitch*, 265 F.3d 994,

11  1009 (9th Cir. 2001) (defendant was not entitled to the nominative fair use defense when it used a

12  photograph of the plaintiffs in its catalog for the purpose of selling its own goods rather than in order

13  to refer to the plaintiffs for any purpose).   To be sure, GFI ***admitted*** that it intentionally used the

14  Neo4j® Mark as a hashtag "to inform users about ONgDB" and to make it more likely that potential

15  customers would come across ONgDB in conducting searches in relation to Neo4j® EE.   Ratinoff

16  Decl., Exh. 31 at 174:14-176:19, 236:4-11, 237:9-239:7, 242:14-243:21.   It is this exact function of

17  hashtags that does not amount to fair use. *See Align Tech.*, 2019 WL 1586776, at *7 (recognizing

18  that defendants' use of plaintiff's mark as hashtags was not fair use because it would result in

19  defendants' ads to come up in response to consumer's searches using plaintiffs' mark).

20          GFI's use of the Neo4j® Mark as a hashtag fails the second prong of nominative fair use test

21  because it constitutes use of that mark, more than that which is reasonably necessary to identify GFI's

22  product. *See Align Tech.*, 2019 WL 1586776, at *6 (holding that use of plaintiff's mark in hashtags

23  was not reasonably necessary to identify defendant's product).  To be sure, GFI admitted that it could

24  have referred to "Neo4j Enterprise" without using the Neo4j® Mark as a hashtag to identify the

25  product. *See* Ratinoff Decl., Exh. 31 at 236:4-15.  It also conceded that it could have used a format

26  where it described ONgDB as being a fork of Neo4j® EE rather than simply inserting "#**Neo4j**

27  Enterprise" with "**#ONgDB**." *See id*., Exh. 31 at 243:23-245:12; Exh. 93.

28          Finally, it cannot be said that GFI did nothing that would suggest sponsorship or endorsement

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                                      - 27 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_3792

by Neo4j USA. Rather, GFI's use of the Neo4j® Mark as hashtag "will inspire a mistaken belief on the part of the consumers that the speaker is **sponsored or endorsed** by the trademark holder." *Toyota*, 610 F.3d at 1176 (emphasis added); *see also Public Impact, LLC v. Boston Consulting Group, Inc.*, 169 F. Supp. 3d 278, 295 (D. Mass 2016) (use of competitor's mark in social media hashtag "likely" to confuse "even a sophisticated consumer"). As confirmed by GFI, the intended audience for the Neoj4® Mark as a hashtag is users of Neo4j® EE, and as result, there is a strong implied association between Plaintiffs and ONgDB. *See Align Tech.*, 2019 WL 1586776, at \*7. Accordingly, Defendants have not engaged in the fair use of the Neo4j® Mark on Twitter and have infringed on the Neo4j® Mark by using it as a hashtag.[5]

## VI.   NEO4J USA IS ENTITLED TO SUMMARY JUDGMENT ON ITS FALSE ADVERTISING AND FALSE DESIGNATION OF ORIGIN CLAIMS

### A.   Applicable Legal Standards for False Advertising Claims Under the Lanham Act and California's UCL

A false advertising claim under Section 1125(a)(1)(B) of the Lanham Act requires proof that (1) Defendants made a false statement of fact about a product in a commercial advertisement, (2) the statement actually deceives or has the tendency to deceive a substantial segment of its audience, (3) the deception is material, (4) Defendants caused the false statement to enter interstate commerce, and (5) Neo4j USA has been or is likely to be injured as a result of the false statement. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Similarly, a claim for false designation of origin under Section 1125(a)(1)(A) requires proof that Defendants: (1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question. *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F.Supp.3d 1156, 1170 (N.D. Cal. 2015).

Proof establishing these Lanham Act claims will also establish Neo4j USA's UCL claim.

---

[5] While *Toyota* makes clear that the fair use test replaces the *Sleekcraft* for determining trademark infringement, some courts have used the latter to assist in determining consumer confusion after finding that a defendant cannot rely upon nominative fair use. *See, e.g., Align Tech.*, 2019 WL 1586776, at \*7. As detailed *infra* in Section IV.C., these factors favor a finding that consumers are likely to be confused by Defendants' use of the Neo4j® Mark.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                         - 28 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1    *See Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994) (UCL claims are "substantially

2    congruent to claims made under the Lanham Act").  As discussed below, Neo4j USA is entitled to

3    partial summary judgment on its false advertising claims and an injunction to restrain Defendants

4    from further misconduct.  Neo4j USA intends to separately seek to prove-up its actual damages

5    suffered once it obtains discovery from GraphGrid and AtomRain about their support of customers

6    using ONgDB, and also seek trebling of those damages and its attorneys' fees.

7           **B.     Defendants' Engaged in False Advertising in the Promotion of ONgDB**

8           Defendants' representations concerning ONgDB constitute commercial advertising or

9    promotion for Lanham Act purposes if they are (1) commercial speech; (2) made in commercial

10   competition with the plaintiff; (3) for the purpose of influencing consumers to buy their goods or

11   services and (4) sufficiently disseminated to the relevant purchasing public. *Coastal Abstract Serv.*

12   *Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).  More informal types of promotion,

13   such as statements made via websites, emails and social media qualify a commercial advertisement.

14   *See Healthport Corp. v. Tanita Corp. of Am.*, 563 F.Supp.2d 1169, 1178 (D. Or. 2008), *aff'd*, 324

15   F.App'x 921 (Fed. Cir. 2009) (holding that statements made on website were advertisements placed

16   into interstate commerce); *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F.Supp.2d 975, 982 (N.D. Cal.

17   2008) (likelihood of success on interstate commerce element met where defendant had disseminated

18   the misleading statement via email and on its website).  To demonstrate falsity of such a

19   representation, Plaintiffs "may show that the statement was literally false, either on its face or by

20   necessary implication, or that the statement was literally true but likely to mislead or confuse

21   consumers." *Southland Sod*, 108 F.3d at 1139.

22          Defendants have made the following misrepresentations in the advertisement and promotion

23   of ONgDB in interstate commerce via their websites and Twitter: (1) "ONgDB distributions are

24   licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial

25   licensed distributions with the same version number" [Ratinoff Decl., Exh. 57]; (2) "ONgDB and

26   Neo4j Enterprise consists of modules from Neo4j Community Edition and modules licensed under

27   the AGPLv3" [*id.*, Exh. 58]; (3) "ONgDB distributions are licensed under AGPLv3 as a free and

28   open source alternative to currently available proprietary native graph offerings such as Neo4j

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                    - 29 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_3794

1    Enterprise Edition" [*id.,* Exhs. 60, 113-114]; (4) "download ONgDB Enterprise as a drop in

2    replacement for an existing commercial licensed distribution of the same version number." [*id.,* Exhs.

3    62-66]; (5) "ONgDB Enterprise is a drop in replacement for Neo4j Enterprise commercial packages

4    downloaded from Neo4j.com" [*id.,* Exhs. 62-66, 71]; (6) "ONgDB Enterprise 3.5.5…. Drop in

5    replacement for Neo4j Core and Enterprise 3.5.5. AGPLv3 Open Source License, no limitations on

6    causal cluster instances, cores, or production usage" [*id.,* Exhs. 67-69; *see also* Exh. 75]; (7) "ONgDB

7    is a drop in replacement for the Neo4j Community and Enterprise branded distributions" [*id.,* Exh.

8    72-74 (green highlight)]; (8) "[ONgDB] is an open source fork of #Neo4j" [*id.,* Exh. 93]; (9) "You

9    can use the ONgDB fork of Neo4j which adds enterprise code back into Neo4j core. It is 100% free

10   and open." [*id.,* Exh. 98; *see also* Exhs. 99-104, 108]. The PT Defendants also misrepresented on

11   iGov's website that "[Neo4j Enterprise] is 100% free and open source" and "Neo4j Enterprise is

12   released only under the standard AGPLv3 open source license that is managed by the free software

13   foundation." *See id.,* Exhs. 67-70; *see also* Exh. 21.

14          It is undisputed that these statements about ONgDB were made in commercial competition

15   with Plaintiffs. Defendants actively encourage actual and potential users of commercially licensed

16   Neo4j® EE to adopt ONgDB for free and pay iGov and GraphGrid for support services instead of

17   Plaintiffs based on such statements. *See* Ratinoff Decl., Exhs. 23, 28-29, 42-55, 76-77, 126, 134-

18   135. These statements are also false on their face or by necessary implication for two reasons.

19          First, ONgDB is neither free, nor open source Neo4j® EE. The Neo4j Sweden Software

20   License did not permit Defendants to remove the commercial restrictions imposed by the Commons

21   Clause and replace that license with a "pure" AGPL. This is confirmed by the plain language of the

22   license. Section 10 states: "You may not impose any further restrictions on the exercise of rights

23   granted or affirmed under this License." Rathle Decl., Exh. 3. Section 7 states: "[i]f the Program as

24   you received it, or any part of it, contains a notice stating that it is governed by this License along

25   with a term that is a further restriction, you may remove that term." *Id.* Importantly, the AGPLv3

26   defines "you" as the licensee, not the licensor. *Id.,* Exh. 3 at § 0 ("Each licensee is addressed as

27   'you'"). Thus, read correctly, Sections 7 and 10 did not prohibit Neo4j Sweden as the copyright

28   holder and *licensor* from adding the Commons Clause. *See* GFI Dkt. No. 88 at 5:23-8:9.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                    - 30 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

SER_3795

1    Any other reading would nullify the entire purpose of a license agreement by negating Neo4j

2  Sweden's exclusive right to license Neo4j® EE under the terms of its choosing.  *See Apple Inc. v.*

3  *Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011) ("copyright owners may … use their limited

4  monopoly to leverage the right to use their work on the acceptance of specific conditions"); *Jacobsen*

5  *v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008) ("[c]opyright holders who engage in open source

6  licensing have the right to control the modification and distribution of copyrighted material").  To be

7  sure, GFI admitted on GitHub that only the copyright holder may change its license.  *See* Ratinoff

8  Decl.*,* Exh. 35, Exh. 31 at 183:14-184:24; *see also* Exh. 36.  The FSF told Suhy the same and he

9  never obtained a legal opinion before removal. *Id.*, Exh. 34.

10    Second, ONgDB is not a true drop-in replacement for equivalent versions of Neo4j® EE.

11  This is because ONgDB contained source code files that were wrongly licensed under the AGPL in

12  violation of Neo4j Sweden's copyright.  *See Sun Microsystems*, 999 F.Supp. at 1301 (preliminarily

13  enjoining Microsoft from advertising its product as "JAVA Compatible" where Microsoft, in

14  violation of its license agreement with Sun, advertised its product as compatible, even though it failed

15  to meet agreed-upon compatibility standards).  In addition, as detailed in Section II.H., actual and

16  potential users of ONgDB v3.5.x were not getting software that was of the same quality as Neo4j®

17  EE or included all of the same features as Neo4j® EE.  *See* Rathle Decl., ¶¶ 14, 19-22, 29-34. GFI

18  even admitted that it could not describe ONgDB as drop-in replacement after version 3.5.4.  Ratinoff

19  Decl., Exh. 31 at 186:24-188:17, 188:23-189:23.  Yet, the PT Defendants continue to make such false

20  statements for later versions of ONgDB.  This amounts to false advertising.  *See, e.g., EFCO Corp.*

21  *v. Symons Corp.*, 219 F.3d 734 (8th Cir. 2000) (defendant was proven to have falsely claimed that its

22  product was compatible and interchangeable with plaintiff's product); *Creative Labs, Inc. v. Cyrix*

23  *Corp.*, 1997 WL 337553 (N.D. Cal. 1997) (finding that if 2 to 8 percent of products that function

24  properly with plaintiff's product do not function with defendant's claimed "compatible" product, then

25  defendant's claim of compatibility is false).

26    There is also no dispute that these statements have the tendency to deceive potential users of

27  the parties' competing software products and the deception is material because they were

28  intentionally made by Defendants.  *Southland Sod*, 108 F.3d at 1146 ("'[p]ublication of deliberately

1  false comparative claims gives rise to a presumption of actual deception and reliance'") (internal

2  (citation omitted).  Likewise, actual deception and reliance are presumed in "false *comparative*

3  advertising cases, where it is reasonable to presume that every dollar defendant makes has come

4  directly out of plaintiff's pocket." *TrafficSchool.com, Inc. v. Edriver, Inc*., 653 F.3d 820, 831 (9th

5  Cir. 2011) (emphasis in original).

6        Here, Defendants made these misrepresentations to convince customers to adopt ONgDB

7  *over* Neo4j® EE. Since Defendants misrepresented ONgDB as a *free* version of Neo4j EE licensed

8  under the APGL, there is no doubt that this was material to potential customers.  *See Hinojos v. Kohl's*

9  *Corp*., 718 F.3d 1098, 1106-1107 (9th Cir. 2013) (recognizing under the UCL that price is material

10  to purchasing decisions).  To be sure, customers chose ONgDB over Neo4j® EE for this reason.  *See,*

11  *e.g.,* Ratinoff Decl., Exhs. 47-49, 120 (Next Century); Exh. 53 (Tufin); Exh. 3 at 54:17-55:1, 224:13-

12  23, 227:3-8, Exh. 38 at 23:14-24:4, Exh. 127 (IRS); Exh. 3 at 142:15-144:20 (DHS) *see also* Exh. 31

13  at 197:21-24; Exhs. 100, 114 (14,000 downloads), 134-135.  Defendants' deception is also material

14  to customers' purchasing decisions because chosing ONgDB over Neo4j® EE unknowingly exposes

15  them copyright infringement liability.

16        Finally, it is indisputable that Plaintiffs have been injured as a result of the above false

17  advertisements, and are entitled to injunctive relief.  This is because commercial injury is generally

18  presumed "when defendant and plaintiff are direct competitors and defendant's misrepresentation

19  has a tendency to mislead consumers." *TrafficSchool.com*, 653 F.3d at 826; *see also Lexmark Int'l,*

20  *Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1393 (2014) ("diversion of sales to a direct

21  competitor may be the paradigmatic direct injury from false advertising"); *Southland Sod,* 108 F.3d

22  at 1145–46 ("even if Plaintiffs had failed to raise a triable issue as to causation and injury, their

23  Lanham Act claim would still be viable to the extent it sought an injunction").  Nonetheless, there is

24  undisputed evidence that Defendants' false statements diverted sales from Neo4j USA.  *See, e.g.*,

25  Ratinoff Decl., Exhs. 47-50, 53, 120, 127; Exh. 3 at 53:4-54:25, 224:13-23; Broad Decl., ¶¶ 20-24.

26  Indeed, Neo4j USA lost multi-year deal with Next Century/MPO adopting ONgDB, amounting to

27  over $2.2 million in lost revenue.  Broad Decl., ¶¶ 22-24, Exhs. 12-13.

28        None of the customers that adopted ONgDB over Neoj4® EE could have legally done so but

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO
842\3639184.9                                                                  - 32 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1    for Defendants' removal of the commercial restrictions imposed by the Neo4j Sweden Software

2    License.  The Court should thus grant partial summary judgment in favor of Neo4j USA on its

3    Lanham Act false advertising claim and mirror California UCL claim.

4        **C.**    **Defendants Engaged in the False Designation of Origin in Promoting ONgDB**

5          The evidence establishing Defendants' statements amounting to false advertising in violation

6    of Section 1125(a)(1)(B) supports the Court granting summary judgment in favor Neo4j USA on its

7    false designation of origin claim under Section 1125(a)(1)(A).  Again, it is indisputable that

8    Defendants' representations concerning ONgDB being free and open source Neo4j® EE under the

9    AGPL were made in commerce and were false and misleading thereby establishing the first two

10   elements.  As for the third, "[t]he test for likelihood of confusion is whether a 'reasonably prudent

11   consumer' in the marketplace is likely to be confused as to the origin of the good or service."

12   *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

13         In order to make this determination, courts will use the *Sleekcraft* factors to assist in the

14   analysis: (1) strength of the mark; (2) relatedness of the goods; (3) similarity of sight, sound and

15   meaning, (4) evidence of actual confusion; (5) marketing channels; (6) type of goods and purchaser

16   care, (7) intent, and (8) likelihood of expansion.  *See Obesity Research Inst., LLC v. Fiber Research

17   Int'l, LLC*, 165 F. Supp. 3d 937, 949-50 (S.D. Cal. 2016).  However, [w]here the use of a name or

18   mark is identical to that of the plaintiff on the very same goods and services for which the plaintiff

19   uses the name or mark, that alone can be 'case-dispositive' before a full balancing of the *Sleekcraft*

20   factors."  *AECOM Energy & Constr., Inc. v. Ripley*, 348 F.Supp.3d 1038, 1052 (C.D. Cal. 2018).

21         Here, it is undisputed that the Neo4j® Mark is inherently distinctive and Plaintiffs have used

22   it in commerce since 2007, and as a result has gained strong brand recognition via various awards

23   and recognition in the graph database software market (factor 1).  *See* Broad Decl., ¶¶ 2-19, Exhs. 1-

24   11.  There is also no dispute concerning the relatedness of the goods and the similarity of sight, sound

25   and meaning because Defendants promote ONgDB ***as being Neo4j® EE*** except that they are free

26   and licensed without restrictions under the AGPL (factors 2-3).  *See Cisco Sys., Inc. v. Shenzhen

27   Usource Tech. Co.*, 2020 WL 5199434, at *8 (N.D. Cal. Aug. 17, 2020).  And, Defendants' use of

28   the Neo4j® Mark to promote Plaintiffs' software with an improperly modified copyright license

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9
- 33 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1    shows that they intend to copy them and confuse the public (factor 7).  *See id.*  The undisputed

2    evidence also shows that Defendants have targeted the same customer base via the internet, and in

3    particular the government sector where the PT Defendants bid against Plaintiffs (factors 5 & 8).  *See,*

4    *e.g.,* Ratinoff Decl., Exhs. 14-15, 18, 25, 29, 37, 45-55, 57, 60-61, 65-66, 76-77, 120, 127, 130-132.

5         Finally, as detailed above in Section II.L., there is evidence of actual consumer confusion

6    over ONgGB properly licensed under the AGPL and a true drop-in replacement for official Neo4j®

7    EE without the restrictions imposed by the Neo4j Sweden Software License (factor 4).   Accordingly,

8    the Court should also grant summary judgment in favor of Neo4j USA on its false designation of

9    origin claim and enjoin Defendants from engaging in further misconduct.

10   **VII.    PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF**

11        The Lanham Act vests the Court with the "power to grant injunctions according to principles

12   of equity and upon such terms as the court may deem reasonable, to prevent the violation of any

13   right" of the trademark owner.  15 U.S.C. § 1116(a); *see Century 21 Real Estate LLC v. Ed/Var Inc.*,

14   2014 WL 3378278, at *6 (N.D. Cal. July 10, 2014) (issuing a permanent injunction after granting

15   summary judgment on plaintiff's Lanham Act claims); *AECOM*, 348 F. Supp. 3d at 1061-62 (same).

16   To obtain an injunction, a plaintiff must show: "(1) that it has suffered an irreparable injury; (2) that

17   remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

18   (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity

19   is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *La*

20   *Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014).

21        If the Court does not enjoin Defendants, Neo4j USA will suffer irreparable injury from the

22   ongoing damage to its goodwill as a result of their deceptive tactics in marketing ONgDB.  S*ee Herb*

23   *Reed Enters., LLC v. Florida Entertainment Management*, 736 F.3d 1239, 1250 (9th Cir. 2013)

24   ("Evidence of loss of control over business reputation and damage to goodwill could constitute

25   irreparable harm"); *Sun Microsystems*, 999 F. Supp. at 1311 ("a plaintiff demonstrates a likelihood

26   of confusion, it is generally presumed that the plaintiff will suffer irreparable injury if injunctive

27   relief is not granted").  As detailed above, there is compelling evidence that Neo4j USA has suffered

28   a loss to control over the Neo4j® brand and associated goodwill as result of Defendants' unauthorized

842\3639184.9                                    - 34 -

1  "relicensing" of Neoj4® EE under the AGPL and falsely calling ONgDB a free and unrestricted drop-

2  in replacement for official Neo4j® EE.  It is also clear that Defendants will continue to do so unless

3  enjoined by the Court.  Further, the balance of hardships favors Neo4j USA. *See Diller v. Barry*

4  *Driller, Inc.*, 2012 WL 4044732, at *10 (C.D. Cal. Sept. 10, 2012) ("no hardship to cease intentionally

5  infringing someone else's trademark rights"); *Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.*,

6  2014 WL 4679001, at *13 (C.D. Cal. Sept. 18, 2014) ("There is no hardship to a defendant when a

7  permanent injunction would merely require the defendant to comply with law.").

8       Finally, the public interest is served by enjoining Defendant from using the Neo4j® Mark

9  and making false statements about ONgDB being free and open source software under the AGPL.

10  *See Stark v. Diageo Chateau & Estate Wines Co.*, 907 F.Supp.2d 1042, 1067 (N.D. Cal. 2012)

11  ("Preventing consumer confusion serves the public interest"); *accord Cisco Sys.*, 2020 WL 5199434,

12  at *9.  Likewise, the public interest favors an injunction because there has been actual confusion. *See*

13  *Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009)

14  ("[t]he public has an interest in avoiding confusion between two companies' products").  It would be

15  further served by preventing Defendants from inducing unsuspecting customers to use improperly

16  licensed software in violation of Neo4j Sweden's copyright.

17  **VIII.  CONCLUSION**

18       For the reasons set forth herein, Plaintiffs respectfully request that the Court (1) grant partial

19  summary judgment in favor of Neo4j USA on its Lanham Act and UCL claims and against

20  Defendants on their nominative fair use defense; (2) enter a permanent injunction as set forth in the

21  proposed order filed herewith; (3) allow for follow-up party and third party discovery related to

22  Neo4j's damages; and (4) schedule further proceedings for Plaintiffs to prove up their damages and/or

23  the disgorgement of Defendants' ill-gotten gains from their infringement.

24  Dated:  December 11, 2020                    HOPKINS & CARLEY
                                                A Law Corporation
25

26                                             By:  */s/ Jeffrey M. Ratinoff*

27                                                Jeffrey M. Ratinoff
                                                Attorneys for Plaintiffs
28                                                NEO4J, INC. and NEO4J SWEDEN AB

# EXHIBIT A

SER_3801

## NEO4J INC.'S CONSOLIDATED SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Claim 1: Trademark Infringement Against the PT Defendants and Their Nominative Fair Use Defense** | | |
| 1. Plaintiff Neo4j Inc. ("Neo4j USA") owns a protectable trademark | <u>Fact 1</u>: Neo4j USA is the owner of U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j® Mark"). Declaration of Jeffrey M. Ratinoff, ("Ratinoff Decl."), Exh. 1. | |
| 2. The PT Defendants impermissibly used the Neo4j® Mark after Neo4j USA terminated the Partner Agreement | <u>Fact 2</u>: On September 30, 2014, Purethink and Neo4j USA entered into the Neo4j Solution Partner Agreement ("Partner Agreement"). Ratinoff Decl., Exh. 4. | |
| | <u>Fact 3</u>: Under the Partner Agreement, PureThink was granted a non-exclusive, non-transferable limited license to, *inter alia*, use the Neo4j® Mark solely to market and resell commercial licenses to Neo4j® Enterprise Edition ("Neo4j® EE") and related support services in exchange for shared revenue for the licenses that it resold. *Id.*, Exh. 4 at § 4.1; Exh. 3 at 60:10-61:17, 67:25-69:11. | |
| | <u>Fact 4</u>: PureThink further agreed to the terms of the limited license under the Partner Agreement to use the Neo4j® Mark in accordance with Neo4j USA's "then-current trademark usage guidelines." *Id.*, Exh. 4 at § 4.1. | |
| | <u>Fact 5</u>: The Partner Agreement was subject to a 1-year term, and would automatically renew at additional 1-year periods subject to the notice and termination provision therein, thereby incorporating whatever was the operative trademark guidelines at that time. Ratinoff Decl., Exh. 4 at §7.1; Exh. 3 at 67:18-24. As a result of the renewal provision, PureThink became bound by the October 13, 2015 version of Neo4j USA's trademark guidelines as of September 30, 2016. *See* Rathle Decl., ¶ 16, Exh. 5. | |

1

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 6: All rights and licenses to Neo4j® Software and the Neo4j® Mark would terminate upon the expiration or termination, and upon such an event, PureThink agreed to "cease using any trademarks, service marks and other designations of Plaintiffs."  Ratinoff Decl., Exh. 4 at §7.3. | |
| | Fact 7: On July 11, 2017, Neo4j terminated the Partner Agreement thereby requiring PureThink to "cease using [Neo4j's] trademarks, service marks, and other designations…and remove from PureThink's website(s) marketing materials, [Neo4j's] trademarks and tradenames, including, without limitation, Neo4j" as required by Agreement. Ratinoff Decl., Exh. 12. | |
| | Fact 8: PureThink continued to use the Neo4j® Mark without Neo4j USA's authorization to send customers to iGov to obtain "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise."  See Ratinoff Decl., Exh. 14.  It also promoted "Neo4j Enterprise" as genuine Neo4j® EE despite being compiled by Suhy. See id., Exh. 16. | |
| | Fact 9: Under the Partner Agreement, PureThink agreed that all contractual restrictions would apply to any successor-in-interest, assign, and acquirer of substantially all of its assets.  Ratinoff Decl., Exh. 4 at § 10. | |
| | Fact 10: Suhy and PureThink formed iGov on or about June 23, 2017 to circumvent the restrictions in Section 4.3.1 of the Partner Agreement. Ratinoff Decl., Exhs. 10-11, 14-15, 17-19; PT Dkt. No. 22, ¶¶ 18-19; see also Exh. 3 at 46:12-16, PT Dkt. No. 72 at 8:22-25, 9:15-23. | |
| | Fact 11: Suhy is sole owner and employee of PureThink and iGov, used the same website template, and initially used the same offices and support telephone number for both entities. Ratinoff, Decl, Exh. 3 at 21:23-22:22, 23:16-18, 37:3-38:16, 39:6-40:23, 47:20-49:8, 52:9-11. | |
| | Fact 12: Suhy used both his iGov and PureThink email accounts to solicit customers that he had previously contacted under the Partner Agreement.  Ratinoff, Decl., Exhs. 19, 25, 29, 45-46, 54. | |
| | Fact 13: iGov took over PureThink's business relationship with the IRS. Ratinoff, Decl, Exh. 3 at 53:4-54:25; Exh. 127. | |

2

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
|  | <u>Fact 14</u>: The PureThink Defendants ("PT Defendants") claimed to be "the developer of the retired Neo4j Government Edition" in close connection with touting their prior relationship with Neo4j USA. Ratinoff Decl., Exhs. 15-19, 21, 62-64. |  |
|  | <u>Fact 15:</u> iGov used the Neo4j® Mark on its website without authorization to promote "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise," and related support services. *See* Ratinoff Decl., Exhs. 15-18, 21, 62-64. |  |
|  | <u>Fact 16:</u> iGov's other unauthorized uses of the Neo4j® Mark on its website included: (1) using "https://igovsol.com/**neo4j**.html" as a URL to promote "Government Development Packages for **Neo4j**"; (2) prominently displaying a "Request Procurement Document Package" link with "**mailto:neo4j@igovsol.com**" embedded that creates an email addressed thereto upon activation; (3) encouraging consumers to obtain more information by sending an email to "**neo4j@igovsol.com**;" (4) using "Government Packages for Neo4j" and "Neo4j Enterprise" to describe iGov's patchwork binaries of Neo4J® EE; and (5) touting PT Defendants' prior relationship with Neo4j USA and to be "the developer of the retired Neo4j Government Edition." Ratinoff Decl., Exhs. 15-18, 21, 62-64, 67-69. |  |
|  | <u>Fact 17:</u> iGov continues to offer "Neo4j enterprise open source licensed distributions" and interchangeability referring to "ONgDB Enterprise" and "Neo4j Enterprise" on its website. Ratinoff Decl., Exhs. 62-70 (highlighted in yellow). |  |
| 3. The PT Defendants used the Neo4j® Mark without Neo4j USA's authorization to promote ONgDB | <u>Fact 18:</u> After Graph Foundation ("GFI") released ONgDB in July 2018, iGov continued to use "https://igovsol.com/neo4j.html" as a URL address to promote ONgDB until it deactivated that page sometime after July 27, 2020. Ratinoff Decl., Exhs. 62-65; Exh. 13 at RFA No. 5. While iGov replaced this url with "https://igovsol.com/graph.html, the contents of the page remained the same. *Compare id.*, Exh. 65 *and* Exh. 66. |  |
|  | <u>Fact 19:</u> iGov used the neo4j@igovsol.com email address on its "neo4j.html" page (*id.*, Exhs. 62-65) and "downloads.html" page (*id.*, Exhs. 67-69) as means for consumers to inquire about ONgDB until sometime in July 2020. Ratinoff Decl., Exh. 13 at RFA Nos. 7-11. |  |

3

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | <u>Fact 20</u>: GFI used a "Download Neo4j Enterprise" hyperlink on its "downloads" page to redirect consumers to download links for ONgDB until July 27, 2020.  Ratinoff Decl., Exhs. 66-68 (highlighted in red), Exh. 13 at RFA Nos. 10, 14. | |
| | <u>Fact 21</u>: iGov continues to promote "ONgDB Enterprise," "Neo4j Enterprise" and "Neo4j Enterprise Edition" versions 3.5.x as open source Neo4j® EE that can be used for free under the AGPL.  Ratinoff Decl., Exhs. 62-74. | |
| | <u>Fact 22</u>: iGov operated www.graphstack.io to further promote ONgDB using the Neo4j® Mark, and that "iGov Inc offers production support packages for Neo4j / ONgDB Enterprise open source distributions for US government agencies."  Ratinoff Decl., Exh. 75. | |
| | <u>Fact 23</u>: The GraphStack website used hyperlinks to redirect consumers to Neo4j USA's official release notes and "What's New" page in conjunction with encouraging consumers to download ONgDB as an alleged "[d]rop in replacement for Neo4j Core and Enterprise 3.5.3." Ratinoff Decl., Exh. 75; Exh. 13 [RFA Nos. 42-43]. | |
| 4. The PT Defendants knew their uses of the Neo4j® Mark were unauthorized and violated Neo4j USA's Trademark Guidelines | <u>Fact 24</u>:  The trademark guidelines the PT Defendants had agreed to be bound by in the Partner Agreement prohibited the use of the Neo4j® Mark: (1) with anything other than "the software in the exact binary form that it is distributed by [Neo4j], without modification of any kind;" and (2) "in a web page title, titletag, metatag, or other manner with the intent or the likely effect of influencing search engine rankings or results listings." Ratinoff Decl., Exh. 4 at § 4.1; Rathle Decl., ¶¶ 15-16, Exh. 5; *see also* Exh. 4 at §7.1; Exh. 3 at 67:18-24 | |
| | | |
| 5. The PT Defendants did not use the Neo4j® Mark to describe Plaintiffs' products | <u>Fact 25</u>: The PT Defendants used the Neo4j® Mark to promote their "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise" rather than comparatively describe Plaintiffs' Neo4j® EE.  Ratinoff Decl., Exhs. 14-18, 21, 62-65. | |
| | <u>Fact 26</u>: The PT Defendants often used the Neo4® Mark to promote ONgDB instead of to comparatively describe Plaintiffs' Neo4j® EE. Ratinoff Decl., Exhs. 62-74; Exh. 13 [RFA Nos. 4-11, 14]. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
|  | **Fact 27:** The PT Defendants used the Neo4j® Mark on iGov's website as (1) an URL address for a page promoting their "Neo4j Enterprise" packages and ONgDB; (2) an email address for customers to obtain more information about their "Neo4j Enterprise" packages while referring to ONgDB; and (3) a hyperlink to redirect consumers to download ONgDB. Ratinoff Decl., Exhs. 14-18, 62-65, 67-69; Exh. 13 [RFA Nos. 4-11, 14, 33-34]. |  |
| 6. Defendant's product was readily identifiable without use of plaintiffs' trademark | **Fact 28:** Rather than naming their version of Neo4j® EE something else without using the Neo4j® Mark, the PT Defendants used the mark to name and promote their "Neo4j Enterprise" packages and while referring to ONgDB, as well as using the Neo4j® Mark to offer related support services for ONgDB. Ratinoff Decl., Exhs. 14-18, 62-65, 67-69; Exh. 13 [RFA Nos. 4-11, 14, 33-34]. |  |
|  | **Fact 29:** Rather than independently promoting ONgDB as a graph database software without use of Neo4j® Mark, the PT Defendants used the mark to promote ONgDB and related support services for ONgDB. Ratinoff Decl., Exhs. 62-65, 67-74; Exh. 13 [RFA Nos. 4-11, 14]. |  |
| 7. The PT Defendants prominently used the Neo4j® Mark beyond what was reasonably necessary | **Fact 30:** The PT Defendants extensively used the Neo4j® Mark (without proper trademark usage and notices) on their website, and in direct solicitations beyond describing "Neo4j Enterprise" packages and ONgDB as a forks of Neo4j® EE. Ratinoff Decl., Exhs. 14-18, 24-26, 42-47, 62-65, 67-74; Exh. 13 [RFA Nos. 4-11, 14, 33-34]. |  |
| 8. The PT Defendant's use of the Neo4j® Mark suggested sponsorship or endorsement by Neo4j USA | **Fact 31:** The PT Defendants claimed that (a) "By default, all Government Packages for Neo4j now comes with Neo4j Enterprise included under it's open source license!" [Ratinoff Decl., Exhs 14-15]; (b) "The packages on this page are compiled by iGov Inc using the official Neo4j source code repositories located at https://github.com/neo4j" [*id.*, Exh. 16]; (c) "US Federal Government Packages for Neo4j Solutions" [*id.*, Exh. 17]; (d) "Government Development Packages for Neo4j" [*id.*, (5) "iGov Inc is now the only US Federal contractor providing Neo4j Enterprise binaries packaged with it's [sic] free Open Source license!" [*id.*, Exh. 18]; (e) "Get the open source licensed Neo4j Enterprise distributions we package for our government customers" [*id.*, Exh. 21]; (f) "We compile and packaged the open source licenced [sic] distributions from the same official Neo4j |  |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Github Repositories as Neo4j Inc uses for their paid commercial licensed builds" [*id.*]; (g) "I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. If you don't know about Neo4j - here is their website: http://neo4j.com" [*id.*, Exh. 26]. *See also id.*, Exhs. 19-20, 62-66. | |
| | Fact 32:  The PT Defendants also claimed on iGov's website that (a) "We only focus on only supporting 100% free and open source ONgDB Enterprise & Neo4j Enterprise open source licensed distributions." [Ratinoff Decl., Exh. 66]; (b) "ONgDB Enterprise is a drop In replacement for Neo4j Enterprise commercial packages downloaded from Neo4j.com" [*id.*]; (c) "The distributions we package for the federal government and community as a whole are drop in replacements for Neo4j Enterprise commercial packages you download from neo4j.com" [*id.*]; and (d) "ONgDB (AKA ONgDB Enterprise) 3.5.11 is Neo4j 3.5.11 Core + the enterprise features Neo4j Inc removed from the code base as of v3.5.  All ONgDB and Neo4j Enterprise AGPL distributions can be used in production, in closed source projects, and with no limitations on # of cores or causal cluster instances." [*id.*, Exh. 74]. *See also, id.* at Exhs. 62-65, 71-73. | |
| | Fact 33:  The PT Defendants solicited customers about ONgDB stating that (a) "I can explain why the foundation was created and how we package Neo4j Enterprise (We call ONgDB) distributions that are being adopted at IRS…" [Ratinoff Decl., Exh. 24]; (b) "the Graph Foundation was setup to ensure Neo4j/ONgDB remains free and open.  It is Neo4j Core + Enterprise feature set added back in, so it is drop in replacement for a Neo instance of the same version. (Ex: 3.5.5)" [*id.*, Exh. 44]; (c) "ONgDB (Open Native Graph Database): Neo4j Enterprise OSS distribution downloads 3.5.8 will be up next week" and "ONgDB 3.5.8 is a drop-in replacement for Neo4j Enterprise 3.5.8" [*id.*, Exh. 46]; (d) "We compile Neo4j branded distributions for agencies who added Neo4j branded distributions instead of ONgDB branded distributions to their white lists. We have all versions of the Neo4j branded distributions up to 3.5 available" [*id.*,]; and (e) "Neo4j Enterprise open source distribution licenses and basic support. Aka: ONGDB" [*id.*, Exhs. 55, 131]. *See also, id.* Exhs. 43, 47, 54. | |
| | Fact 34:  In its promotion of ONgDB software, iGov used hyperlinks on its website to redirect consumers to Neo4j USA's official release notes (https://neo4j.com/release-notes/neo4j-3-5-5/) and "What's New" page (https://neo4j.com/whats-new-in-neo4j/) until it removed | |

6

**SER_3807**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | those references sometime in July 2020. *See* Ratinoff, Exhs. 67-69 (highlighted in blue). | |
| 8. The PT Defendant's use of the Neo4j® Mark caused actual consumer confusion | Fact 35: The PT Defendant's use of the Neo4j® Mark to promote ONgDB resulted in customers choosing ONgDB and encountering compatibility issues. Ratinoff Decl., Exh. 115-116; Exh 31 at 230:12-233:10; Exh. 3 at 207:12-209:3. | |
| | Fact 36: Defendants' interchangeable use of "Neo4j Enterprise" and "ONgDB" in marketing ONgDB misleads consumers into mistakenly believing that ONgDB and Neo4j® EE were one and the same. *See, e.g.,* Exhs. 35, 40, 42-44, 46, 53, 55, 76, 100, 130-131, 134-135. | |
| | Fact 37: The PT Defendant's use of the Neo4j® Mark to promote ONgDB as free open source and falsely it with commercially licensed Neo4j® EE created actual customer confusion. Ratinoff Decl., Exh. 48-49, 117-120, 130-131, 134-135. | |
| | Fact 38: Consumers who have downloaded ONgDB rather than official Neo4j® EE have experienced technical issues with ONgDB. Ratinoff Decl., Exh. 121-124, 133. In one instance, Suhy sent a user to Neo4j USA's operations manual for assistance. *Id.,* Exh. 125. | |
| **Claim 2: Trademark Infringement Against Graph Foundation Inc.** | | |
| 1. Plaintiff Neo4j Inc. ("Neo4j USA") owns a protectable trademark | Fact 39: Neo4j USA is the owner of U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j® Mark"). Declaration of Jeffrey M. Ratinoff, ("Ratinoff Decl."), Exh. 1. | |
| 3. GFI used the Neo4j® Mark without Neo4j USA's authorization to promote ONgDB | Fact 40: Defendants copied the code, removed the commercial restrictions imposed by the Neo4j Sweden Software License from Neo4j® EE version 3.4 and began promoting ONgDB as the open source Neo4j® EE under the AGPL. Ratinoff Decl., Exh. 24-26, 28-29, 37, 62, 86; *see also* Exh. 3 at 28:25-29:11, 171:23-172:23, 199:22-200:20; Exh. 31 at 87:24-90:9. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 41:** GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB.  GFI Dkt. No. 89, ¶ 18, Exh. 18; Ratinoff Decl., Exh. 31 at 81:14-20. | |
| | **Fact 42:** On January 17, 2019, GFI modified its landing page by changing the title to "ONgDB - Neo4j Enterprise Fork: Graphs for Everyone," adding references "ONgDB & Neo4j" and that "ONgDB & *Neo4j Enterprise* consist of modules from Neo4j Community Edition and modules licensed under AGPLv3 in this repository," but the content still remained almost identical to Plaintiffs' GitHub landing page and contained wide-spread misuse of the Neo4j® Mark.  Dkt. No. 89, ¶¶ 19-21, Exhs. 19-21 (emphasis added). | |
| | **Fact 43:**  On April 14, 2020, GFI started to remove the Neo4j® Mark and Neo4j USA's URLs from that page.  *Compare* GFI Dkt. No. 89, Exh. 22 *and* Exhs. 23-28.  However, GFI's landing page was still titled "ONgDB - Neo4j Enterprise Fork: Graphs for Everyone," still started off stating "Neo4j is the world's leading Graph Database," encouraged consumers to "Learn more on the Neo4j website," and continued to use the Neo4j® Mark throughout.  *Id.*, ¶¶ 29-31Exhs. 29-31. | |
| | **Fact 44:**   On April 21, 2020, GFI removed instances of the Neo4j® Mark and hyperlinks to Neo4j USA's website, but still used Plaintiffs' catch phrase "Graphs for Everyone" and mislabeling the Neo4j® Platform as the "neo4j project."  GFI Dkt. No. 89, Exhs. 32-33. | |
| | **Fact 45:** Rather than create its support documentation for ONgDB, GFI relied upon Neo4j USA's official documentation and used hyperlinks on its website to redirect users to Plaintiffs' official documentation, including Neo4j USA's copyrighted operation and developer manuals, located on its website.  Dkt. No. 89, ¶¶ 3-8, 13-16, Exhs. 3-8, 13-16; Ratinoff Decl., Exhs. 78-83, Exh. 129 [RFA Nos. 81-84, 88-89, 93-94, 98-100, 104, 108, 111, 123-126, 130-136]. | |
| | **Fact 46:** GFI's website directed users to *Plaintiffs'* change logs for each new release of ONgDB until GFI finally started its own change log with ONgDB v3.5.16.  Dkt. No. 89, ¶¶ 3-8, Exhs. 3-8; Ratinoff Decl., Exh. 84; Exh. 129 [RFA Nos. 87, 92, 97, 103, 107, 110]. | |
| | **Fact 47:** Up until April 14, 2020, GFI's GitHub landing page stated "To build the documentation see the Neo4j documentation" with an | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | embedded hyperlink: https://github.com/neo4j/neo4j-documentation/. Dkt. No. 89, Exhs. 18-19, 23. | |
| | Fact 48: GFI's document repository on GitHub also uses hyperlinks that send consumers to Neo4j USA's official documentation on Neo4j USA's corporate website. Dkt. No. 89, ¶¶ 9-16; Ratinoff Decl., Exhs. 82-83; Exh. 31 at 276:19-279:12, 284:2-285:18; Exhs. 128-129 [RFA Nos. 81-84, 115-126]. | |
| | Fact 49: The Neo4j USA developer and operation manuals are copyrighted by Neo4j USA and subject to the License: Creative Commons 4.0, which contains a hyperlink to the Attribution-NonCommercial-ShareAlike 4.0 International Public License, which expressly prohibits the use of Plaintiffs' documents for commercial purposes. Ratinoff Decl., Exh. 85, Exh. 31 at 286:1-288:13. | |
| | Fact 50: GFI used the Neo4j® Mark in the title tags of webpages on its website featuring ONgDB. Ratinoff Decl., Exhs. 128-129 [RFA Nos. 85-86, 90-91, 95-96, 101-102, 105-106]. | |
| | Fact 51: GFI did not seek or obtain Neo4j USA's authorization to use the Neo4j® Mark on GFI's website and GitHub repository in the foregoing manner. Ratinoff Decl., Exh. 31 at 181:6-182:3, Exh. 129 [RFA Nos. 5-9, 22-26, 69, 71, 73-76, 78]. | |
| | Fact 52: GFI used the Neo4j® Mark as a hashtag (#Neo4j) in tweets published from GFI's Twitter Account to promote ONgDB. Ratinoff Decl., Exhs. 89-92, 95-96, Exhs. 128-129 [RFA Nos. 149-150, 157-158, 165-166, 173-174, 181-182, 187-188]. | |
| 4. GFI's ONgDB product was readily identifiable without the Neo4j® Mark | Fact 53: ONgDB can be readily identified as such or as "Open Native Graph Database" without use of the Neo4j® Mark. Ratinoff Decl., Exh. 31 at 27:17-29:9, 172:23-173:16, 175:5-20, 176:7-19, 178:13-179:25. | |
| | Fact 54: GFI issued tweets promoting ONgDB without using the Neo4j® mark or the mark as hashtag. Ratinoff Decl., Exhs. 86, 88. | |
| 4. GFI did not use the Neo4j® Mark to describe Plaintiffs' Neo4j® products | Fact 55: GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB and gratuitously used the Neo4j® Mark to describe and promote its own software. *See supra* Facts 41-44. | |

9

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 56: At the time that Plaintiffs filed suit, GFI's ONgDB repository still strongly resembled the landing page for Plaintiffs repository for the Neo4j® Platform, and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used "Neo4j" *instead* of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59. | |
| | Fact 57: Rather than independently promoting ONgDB as a graph database software without use of Neo4j® Mark, GFI used the mark to promote ONgDB on its website and GitHub repository. *See supra* Facts 41-52. | |
| | Fact 58: GFI used a hashtag, **#Neo4j** that consists of nothing more than the Neo4j® Mark with a "#" before the mark to promote ONgDB on social media. Ratinoff Decl., Exhs. 1, 89-96 and Exh. 31 at 233:17-237:21. | |
| | Fact 59: GFI chose the following format that relied on using the Neo4j® Mark as a hashtag to announce its new releases of ONgDB: "**#ONgDB (#FOSS#Neo4j** Enterprise) 3.5.x support release is out," with no attempt to differentiate ONgDB and Neo4j® EE as separate, competing products.[1] Ratinoff Decl., Exhs. 89, 92, 94-95; Exh. 31 at 233:17-236:15, 240:12-241:25, 246:5-249:2. | |
| | Fact 60: GFI issued a tweet that stated "**#ONgDB**, Open **#Neo4j** Enterprise," and in another instance "Our **#ONgDB/#Neo4j** Enterprise CI server is up and running builds…." Ratinoff Decl., Exhs. 91, 93. | |
| | Fact 61: GFI used "**#Neo4j** Enterprise 3.5" to solicit end-users of official Neo4j® EE v3.5 to report bugs to GFI so that it could identify bugs in the closed enterprise directory for Neo4j® EE and attempt to mimic such fixes in ONgDB. Ratinoff Decl., Exh. 61, Exh. 31 at 161:23-163:12, 169:13-172:13 | |
| | Fact 62: GFI used **#Neo4j** to promote ONgDB without reference to Neo4j® EE: "Latest **#ONgDB** apoc 3.5.0.8 procedure release is out. https://github.com/graphfoundatio... **#Neo4j**." Ratinoff Decl., Exh. 96. | |
| | Fact 63: GFI admitted intentionally used the Neo4j® Mark as a hashtag "to inform users about ONgDB" and to make it more likely that potential customers would come across ONgDB in conducting searches | |

[1] "FOSS" stands for free open source software. Ratinoff Decl., Exh. 31 at 233:17-234:3.

10

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | in relation to Neo4j® EE.  Ratinoff Decl., Exh. 31 at 174:14-176:19, 236:4-11, 237:9-239:7, 242:14- 243:21. | |
| 7. GFI prominently used the Neo4j® Mark beyond what was reasonably necessary | Fact 64: GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB and despite making modifications continued to use the Neo4j® Mark on its GitHub repository beyond merely describing ONgDB as a fork of Neo4j® EE. *See supra* Facts 41-55; *see also* Dkt. No. 89 at ¶¶ 17-33, Exhs. 17-33. | |
| | Fact 65: At the time that Plaintiffs filed suit, GFI's ONgDB repository still strongly resembled the landing page for Plaintiffs repository for Neo4j® Software, and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used "Neo4j" instead of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59. | |
| | Fact 66: GFI's (1) use of "neo4j," "neo4j enterprise" and "Neo4j Enterprise" without proper trademark notices; (2) use of embedded "Neo4j" links to Neo4j USA's website and GitHub repository; (3) hyperlinking to Plaintiffs' build instructions, support documentation and change logs all containing the Neo4j® Mark rather than creating and hosting their own with the ONgDB name; and (4) interchangeable use of "Neo4j Enterprise" with "ONgDB" to promote ONgDB on its website and GitHub goes beyond what is reasonably necessary to identify ONgDB as a fork of Neoj4® EE.  *See supra* Facts 41-51, 56-58; *see also* Ratinoff Decl., Exhs. 37, 57-58; Dkt. No. 89, ¶¶ 3-16. | |
| | Fact 67:  GFI used the Neo4j® Mark as a hashtag, **#Neo4j**, to promote ONgDB rather than to merely describe ONgDB as a fork of Neo4j® EE.  *See supra* Facts 59-64. | |
| | Fact 68:  GFI admitted that it could have referred to "Neo4j Enterprise" without using the Neo4j® Mark as a hashtag to identify the product. Ratinoff Decl., Exh. 31 at 236:4-15. | |
| | Fact 69:  GFI It also conceded that it could have used a format where it described ONgDB as being a fork of Neo4j® EE rather than simply inserting "#Neo4j Enterprise" with "#ONgDB."  See id., Exh. 31 at 243:23-245:12; Exh. 93. | |
| 8. GFI's use of the Neo4j® Mark suggested | Fact 70: GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB and despite making modifications continued to use the Neo4j® Mark on its GitHub | |

842\3658210.3

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| sponsorship or endorsement by Neo4j USA | repository beyond merely describing ONgDB as a fork of Neo4j® EE. *See supra* Facts 41-55; *see also* Dkt. No. 89 at ¶¶ 17-33, Exhs. 17-33. | |
| | **Fact 71:** At the time that Plaintiffs filed suit, GFI's ONgDB repository still strongly resembled the landing page for Plaintiffs repository for Neo4j® Software, and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used "Neo4j" instead of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59. | |
| | **Fact 72:** GFI (1) used "neo4j," "neo4j enterprise" and "Neo4j Enterprise" without proper trademark notices; (2) used embedded "Neo4j" links to Neo4j USA's website and GitHub repository; (3) stated on its GitHub repository for ONgDB for customers to "Learn more on the Neo4j website," and continued to use the Neo4j® Mark throughout that repository; (4) hyperlinked to Plaintiffs' build instructions, support documentation and change logs on GFI's website and GitHub repository all containing the Neo4j® Mark; (5) interchangeably used "Neo4j Enterprise" with "ONgDB" to promote ONgDB on its website and Github repository; and (6) used the Neo4j® as a hashtag on Twitter to promote ONgDB. *See supra* Facts 42-43, 56-70. | |
| | **Fact 73:** GFI's intended audience in using the Neoj4® Mark as a hashtag were users of Neo4j® EE. Ratinoff Decl., Exh. 31 at 174:14-176:19, 236:4-11, 237:9-239:7, 242:14- 243:21. | |
| 9. GFI's use of the Neo4j® Mark caused actual consumer confusion | **Fact 74:** GFI's use of the Neo4j® Mark to promote ONgDB resulted in customers choosing ONgDB and encountering compatibility issues. Ratinoff Decl., Exh. 115-116; Exh 31 at 230:12-233:10; Exh. 3 at 207:12-209:3. | |
| | **Fact 75:** GFI lead consumers to believe that ONgDB and Neo4j® EE were one and the same. *See, e.g.,* Exhs. 35, 40, 42-44, 46-47, 53, 55-58, 76, 100, 130-131, 134-135. | |
| | **Fact 76:** GFI's use of the Neo4j® Mark to promote ONgDB as free open source and falsely comparing it with commercially licensed Neo4j® EE created actual customer confusion, and diverted sales from Neo4j USA, including the IRS and Next Century/MPO. Ratinoff Decl., Exh. 48-50, 117-120, 127, 131, 134-135; Broad Decl., ¶¶ 20-24, Exhs. 12-13. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Claim 3: False Advertising Against GFI and the PT Defendants** | | |
| 1. Defendants made a false statement of fact about a product in a commercial advertisement, which is (a) commercial speech; (b) made in commercial competition with Neo4j USA; (c) for the purpose of influencing consumers to buy their goods or services; and (d) sufficiently disseminated to the relevant purchasing public | Fact 77: Defendants made the following false statements interstate commerce via their websites and Twitter: (1) "ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number" [Ratinoff Decl., Exh. 57]; (2) "ONgDB and Neo4j Enterprise consists of modules from Neo4j Community Edition and modules licensed under the AGPLv3" [id., Exh. 58]; (3) "ONgDB distributions are licensed under AGPLv3 as a free and open source alternative to currently available proprietary native graph offerings such as Neo4j Enterprise Edition" [id., Exhs. 60, 113-114]; (4) "download ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the same version number." [id., Exhs. 62-66]; (5) "ONgDB Enterprise is a drop in replacement for Neo4j Enterprise commercial packages downloaded from Neo4j.com" [id., Exhs. 62-66, 71]; (6) "ONgDB Enterprise 3.5.5…. Drop in replacement for Neo4j Core and Enterprise 3.5.5. AGPLv3 Open Source License, no limitations on causal cluster instances, cores, or production usage" [id., Exhs. 67-69, 75]; (7) "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions" [id., Exh. 72-74]; (8) "[ONgDB] is an open source fork of #Neo4j" [id., Exh. 93]; and (9) "You can use the ONgDB fork of Neo4j which adds enterprise code back into Neo4j core. It is 100% free and open." [id., Exh. 98-104, 108]. | |
| | Fact 78: The PT Defendants also stated on iGov's website that "[Neo4j Enterprise] is 100% free and open source" and "Neo4j Enterprise is released only under the standard AGPLv3 open source license that is managed by the free software foundation."  Ratinoff Decl., Exhs. 67-70; see also Exh. 21. | |
| | Fact 79: Defendants actively encourage actual and potential users of commercially licensed Neo4j® EE to adopt ONgDB and obtain support services from iGov and GraphGrid instead of Plaintiffs. Ratinoff Decl., Exhs. 23, 28-29, 40, 42-54, 76-77, 126, 134-135. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 80:  Neo4j Sweden is the owner of all copyrights in Neo4j® CE and Neo4j® EE, including the source code and has licensed said copyrights to Neo4j USA.  Rathle Decl., ¶¶ 3-4. | |
| | Fact 81: Plaintiffs released Neo4j® EE v3.4 under a license that which included the terms from the AGPLv3 and additional restrictions provided by the Commons Clause ("Neo4j Sweden Software License"). Rathle Decl., ¶¶ 11-12, Exhs. 2-3. | |
| | Fact 82: The Neo4j Sweden Software License, while still allowing code to be publicly viewable and used within a certain licensed scope, prohibits commercial resale and certain commercial support services. Rathle Decl., ¶¶ 11-12, Exhs. 2-3. | |
| | Fact 83: After Plaintiffs released Neo4j® EE v3.4, the PT Defendants downloaded Neo4j's source code from Neo4j's GitHub repository, removed the commercial restrictions imposed by the Neo4j Sweden Software License, and began promoting it "free and open source" Neo4j Enterprise and offering commercial support services.  Ratinoff Decl., Exh. 3 at 171:23-172:23, 199:22-200:20; Exh. 21. | |
| | Fact 84: Rather than develop ONgDB as an independent fork based off an earlier open source version of Neo4j® EE, Defendants stripped the commercial restrictions out of the Neo4j Sweden Software License from Neo4j® EE version 3.4 and began promoting ONgDB as the open source equivalent of Neo4j® EE 3.4 under the AGPL.  Ratinoff Decl., Exh. 24-26, 28; *see also* Exh. 31 at 87:24-90:9. | |
| | Fact 85: Plaintiffs officially released Neo4j® EE v.3.5 solely under a commercial license in November 2018, and were no longer publishing source code for Neo4j® EE on GitHub under any open source license. Rathle Decl., ¶ 13, Exh. 4. | |
| | Fact 86: Prior to its official release, Plaintiffs published several beta versions of Neo4j® EE v3.5 via their GitHub repository subject to the Neo4j Sweden Software License, with Neo4j® v3.5.0-RC1 being the last pre-release version available to Defendants via GitHub.  Rathle Decl., ¶ 14; *see also* Ratinoff Decl., Exh. 31 at 158:18-159:20. | |
| | Fact 87: GFI's release of ONgGB v3.5.1, which contained at least 182 source code files that had only been previously released under the Neo4j Sweden Software License in the last beta version of Neo4j® EE 3.5 | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | made available by Plaintiffs via GitHub.  Ratinoff Decl., Exh. 38 at 6:22-7:1, 8:4-16:24; *see also* Rathle Decl., ¶ 29. | |
| | **Fact 88:** In order for Defendants to call ONgDB "free and open source" Neo4j® EE, they again replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL and stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor in 28 LICENSE.txt files.  Ratinoff Decl., Exhs. 39-40; Dkt. No. 91 at 19:9-25; Exh. 31 at 159:3-10; Rathle Decl., ¶ 30. | |
| | **Fact 89:** The Neo4j Sweden Software License did not permit a licensees such as Defendants to remove "further restrictions," i.e. the Commons Clause, imposed by Neo4j Sweden as the copyright holder and original licensor.  Rathle Decl., Exh. 3 at §§ 7, 10; GFI Dkt. No. 88 at 5:23-8:9. | |
| | **Fact 90:** Defendants knew that they could not unilaterally replace the Neo4j Sweden Software License with the APGL without authorization. Ratinoff Decl., Exhs. 34-36, Exh. 31 at 183:14-184:24, 207:10-210:8. | |
| | **Fact 91:** Defendants' statements that ONgDB v3.5.x was "100% free and open" with no limitations or restrictions imposed by commercial licensed Neo4j® EE v3.5.x and the like were false because they knew that Neo4j Sweden owned the copyright for Neo4j® EE and never gave permission to remove Commons Clause and offer it as ONgDB under the AGPL.   Ratinoff Decl., Exh. 55-56; Exh. 3 at 183:12-183:1, 187:12-188:5, 189:1-191:3, 235:21-237:14, 240:22-243:22. | |
| | **Fact 92:** The Nussbaums also own GraphGrid and AtomRain, which share the same office and computers with GFI, and provide commercial training and consulting and support for users of ONgDB, and benefit from customers being able to use ONgDB for "free" and diverting available project funds to pay them for such services.  Ratinoff Decl., Exhs. 52-53; Exh. 31 at 22:24-23:3, 31:5-32:19, 35:3-13, 57:18-58:21, 65:20-70:16, 194:14-17; *see also* Exh. 28 ("If you are looking for a full shield of liability, we recommend using one of our supporters such as GraphGrid") and Exhs. 76, 134-135. | |
| | **Fact 93:** Defendants removed the Commons Clause without Neo4j Sweden's authorization as the copyright holder in an attempt to allow iGov, AtomRain and GraphGrid to commercially use and support ONgDB.  Ratinoff Decl., Exh. 23-26, 28-29, 39, 76-77, 126, 134-135; Exh. 3 at 28:25-29:11; Rathle Decl., ¶¶ 29-30. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | **Fact 94:** ONgDB v3.5.1 and later versions are not 100% identical to equivalent version numbers of Neo4j® EE. Ratinoff Decl., Exh. 31 at 158:18-163:5, 163:13-165:6; Exh. 3 at 124:2-126:2. Rather, ONgDB is a patchwork of code from the last public beta, Neo4j® EE 3.5.0-RC1, and Neo4j® Community Edition held together by "glue code" authored by Suhy, Brad Nussbaum and other GFI contributors. *See id.* | |
| | **Fact 95:** By splicing together source code for ONgDB in that manner, GFI is creating software that is not of the same quality as if it were compiled by Plaintiffs because GFI does not have access to the same rigorous build infrastructure for official Neo4j® Software, which goes beyond what is built into Neo4j® CC and carries out tens of thousands of functional, performance, load, stress, and other tests to ensure quality. Rathle Decl. ¶¶ 31-34; Ratinoff Decl., Exh. 31 at 168:14-169:6. | |
| | **Fact 96:** GFI is dependent on what patches are made available in Neo4j® CE and sought to redirect users of official Neo4j® EE to GFI and identify bugs in the closed enterprise directory for Neo4j® EE. Ratinoff Decl., Exh. 61, Exh. 31 at 161:23-163:12, 169:13-172:12. | |
| | **Fact 97:** Since GFI introduced modifications and patches to ONgDB 3.5.x in an attempt to keep pace with the closed Neo4j® EE releases, the potential for stability and compatibility issues with ONgDB increases. Rathle Decl., ¶ 34; Ratinoff Decl., Exh. 31 at 161:23-163:12. | |
| | **Fact 98:** Defendants had no way of knowing this after Plaintiffs closed off public access to the source code for enterprise-only features in November 2018 and had no visibility into Neo4j Sweden's proprietary testing and patches. Ratinoff Decl., Exh. 31 at 158:18-160:5; Exh. 3 at 223:1-224:9; Exh. 40; Rathle Decl., ¶¶ 31-34. | |
| | **Fact 99:** Defendants knew that ONgDB 3.5.x does not include every closed enterprise feature in equivalent Neo4j® EE 3.5.x. Ratinoff Decl., Exh. 38 at 2:12-17, 4:15-22, 5:4-6:21; Exh. 3 at 127:19-128:17. | |
| | **Fact 100:** GFI admitted that ONgDB v3.5.4 is not 100% identical to official Neo4j® EE v3.5.4. Ratinoff Decl., Exh. 31 at 158:18-163:5, 163:13-165:6; Exh. 3 at 124:2-126:23. | |
| | **Fact 101:** GFI admitted that after ONgDB v3.5.4, it could not "reliably guarantee that it was a drop-in replacement" for the same version | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | number of Neo4j® EE and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate." Ratinoff Decl., Exh. 31 at 186:24-188:17, 188:23-189:23. | |
| | <u>Fact 102</u>: As a result, Defendants were leading consumers to believe they were downloading an exact copy of the same version of commercial-only releases of NEO4J® EE, which in actuality they were receiving an inferior ONgDB product that was not a true "drop in" replacement. *See supra* Facts 80-101. | |
| | <u>Fact 103:</u> Neo4j® EE has been subject to trademark policies and guidelines published on Plaintiffs' website, which along with the terms of the GPL, AGPL and Neo4j Sweden Software License, made clear that to the extent any authorized modifications are made to Neo4j® Software, such modified software should indicate so and no longer bear the Neo4j® Mark. Rathle Decl., ¶¶ 15-18. Exhs. 5-7. | |
| 2. Defendants' statements actually deceive or has the tendency to deceive a substantial segment of its audience | <u>Fact 104:</u> Defendants intentionally made the false statements publicly on their website and on Twitter that ONgDB is a "free and open" drop-in replacement/equivalent under the AGPL to convince customers to adopt ONgDB over Neo4j® EE, and pay iGov, Graph Grid and/or AtomRain for related consulting and support services. *See supra* Facts 78-80, 83-84, 86-93. | |
| | <u>Fact 105:</u> Consumers chose ONgDB over Neo4j® EE based on Defendants' misrepresentations about ONgDB being "free and open" drop-in replacement/equivalent under the AGPL, including NextCentury and the MPO, Tufin, the IRS, Department of Homeland Security (DHS) and others. Ratinoff Decl., Exhs. 35, 40, 48-51, 53, 100, 120, 127, 133-135; Exh. 3 at 54:17-55:1, 142:15-144:20, 227:3-8, Exh. 31 at 191:15-24, 194:23-25, 195:13-18, 196:22-197:24; Broad Decl., ¶¶ 20-24; Exhs. 12-13. | |
| 3. Defendants' deception is material | <u>Fact 106:</u> Defendants' false statements that ONgDB is a drop-in replacement/equivalent to paid-for, commercial licensed Neo4® EE was material to potential consumers' purchasing decision because Defendants were offering it for free under the AGPL, and unbeknownst to consumers, in violation of the Neo4j Sweden Software License and Neo4j Sweden's copyright. *See supra* Facts 78-93. | |
| | <u>Fact 107:</u> Defendants intentionally made the false statements publicly on their website and on Twitter that ONgDB is a "free and open" drop- | |

17

SER_3818

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | in replacement/equivalent under the AGPL to convince customers to adopt ONgDB over Neo4j® EE.  *See supra* Facts 78-93. | |
| 4. Defendants caused the false statement to enter interstate commerce | Fact 108:  Defendants' false statements entered interstate commerce through the internet via their websites and Twitter, as well as emails sent to consumers.  Ratinoff Decl., Exhs. 18, 21, 25, 29, 42-46, 49-51, 54-55, 57-58, 60, 62-66, 67-70, 72-74, 93, 99-104, 108, 113-114. | |
| 5. Neo4j USA has been or is likely to be injured as a result of the false statement | Fact 109: Defendants' false statements diverted sales from Neo4j USA.  Ratinoff Decl., Exhs. 35, 40, 47-51, 53, 100, 120, 127, 133-135; Exh. 3 at 54:17-55:1, 142:15-144:20, 227:3-8, Exh. 31 at 191:15-24, 194:23-25, 195:13-18, 196:22-197:24; Broad Decl., ¶¶ 20-24; Exhs. 12-13. | |
| | Fact 110: Neo4j USA lost multi-year deal with the IRS.  Broad Decl., ¶¶ 20-21. | |
| | Fact 111: Neo4j USA lost multi-year deal with Next Century/MPO adopting ONgDB, amounting to over over $2.2 million in lost revenue.  Broad Decl., ¶¶ 22-24, Exhs. 12-13. | |
| **Claim 4: False Designation of Origin  Against GFI and the PT Defendants** | | |
| 1. used in commerce any word, false designation of origin, false or misleading description, or representation of fact | Fact 112:  Defendants' false and misleading statements that ONgDB is a "free and open" drop-in replacement under the AGPL for equivalent versions of paid-for commercially licensed Neo4® EE were made in commerce through the internet via their websites and Twitter, as well as emails sent to consumers. Ratinoff Decl., Exhs. 18, 21, 25, 29, 42-46, 49-51, 54-55, 57-58, 60, 62-66, 67-70, 72-74, 93, 99-104, 108, 113-114; *see also* Facts 78-80. | |
| | Fact 113:  Defendants' statements that ONgDB is a "free and open" drop-in replacement under the AGPL for equivalent versions of paid-for commercially licensed Neo4® EE were false and misleading because Defendants did not have the right to replace the Neo4j Sweden Software License with the AGPL.  *See* Facts 78-93. | |
| | Fact 114:  Defendants' statements ONgDB is a "free and open" drop-in replacement under the AGPL for equivalent versions of paid-for commercially licensed Neo4® EE were false and misleading because | |

18

SER_3819

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | ONgDB was not of the same quality as if it were compiled by Plaintiffs. Rathle Decl. ¶¶ 19-22, 29-34; Ratinoff Decl., Exh. 3 at 216:2-218:6; Exh. 31 at 161:23-163:12, 168:14-169:6. | |
| | **Fact 115:** Since GFI introduced modifications to ONgDB in an attempt to keep pace with the closed Neo4j® EE releases, the potential for stability and compatibility issues with ONgDB increases. *See* Rathle Decl., ¶¶ 29-24; *see also* Ratinoff Decl., Exh. 31 at 158:18-160:5, 161:23-163:12; Exh. 3 at 223:1-224:9; Exh. 40. | |
| | **Fact 116:** ONgDB does not include every closed enterprise feature in the equivalent version of Neo4j® EE. Ratinoff Decl., Exh. 38 at 2:12-17, 4:15-22, 5:4-6:21; Exh. 3 at 127:19-128:17. | |
| | **Fact 117:** GFI admitted that after ONgDB v3.5.4, it could not "reliably guarantee that it was a drop-in replacement" for the same version number of Neo4j® EE and was unwilling to do the testing to make such integration and compatibility guarantees. Ratinoff Decl., Exh. 31 at 186:24-188:17, 188:23-189:23. | |
| 2. which is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question. | | |
| (a) strength of the mark | The Neo4j® Mark is inherently distinctive and Plaintiffs have used it in commerce since 2007, and as a result has gained strong brand recognition via various awards and recognition in the graph database software market. Broad Decl., ¶¶ 2-19, Exhs. 1-11. | |
| (b) relatedness of the goods and similarity of sight, sound and meaning | Defendants promote ONgDB as Neo4j® EE except that they are free and licensed without restrictions under the AGPL. Ratinoff Decl., Exhs. 18, 21, 25, 29, 42-46, 49-51, 54-55, 57-58, 60, 62-66, 67-70, 72-74, 93, 99-104, 108, 113-114. | |
| (c) evidence of actual confusion; | **Fact 118:** Defendants' interchangeable use of "Neo4j Enterprise" and "ONgDB" misleads consumers into mistakenly believing that ONgDB | |

19

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | and Neo4j® EE were one and the same.  Ratinoff Decl., Exhs. 35, 40, 42-44, 46-47, 53, 55-58, 76, 100, 130-131, 134-135. | |
| | <u>Fact 119:</u> Defendants' misrepresentations about ONgDB being "free and open" drop-in replacement/equivalent under the AGPL caused actual confusion over Defendants' unauthorized modification to the Neo4j Sweden Software License and justification for doing so.  *See* Ratinoff Decl., Exhs. 40, 49, 55, 118-119, 131, 133-134. | |
| | <u>Fact 120:</u> GFI's use of the Neo4j® Mark to promote ONgDB resulted in customers choosing ONgDB over Neo4j® EE and encountering compatibility issues.  Ratinoff Decl., Exh. 115-116; Exh 31 at 230:12-233:10; Exh. 3 at 207:12-209:3. | |
| | <u>Fact 121:</u> Consumers chose ONgDB over Neo4j® EE based on Defendants' misrepresentations about ONgDB being "free and open" drop-in replacement/equivalent under the AGPL, including NextCentury and the MPO, Tufin, the IRS, Department of Homeland Security (DHS) and others.  Ratinoff Decl., Exhs. 35, 40, 47-51, 53, 100, 120, 127, 133-135; Exh. 3 at 54:17-55:1, 142:15-144:20, 224:13-23, 227:3-8, Exh. 31 at 191:15-24, 194:23-25, 195:13-18, 196:22-197:24; Exh. 38 at 23:14-24:4; Broad Decl., ¶¶ 20-24, Exhs. 12-13. | |
| (d) marketing channels and likelihood of expansion | <u>Fact 122:</u> Defendants continue to target the same potential users of graph database platforms and software and use the same channels via the internet.  *See, e.g.,* Ratinoff Decl., Exhs. 14-15, 18, 25, 29, 37, 45-55, 57, 60-61, 65-66, 76-77, 118-119, 120, 127, 130-132, 134-135. | |
| | <u>Fact 123:</u> Neo4j USA and the PT Defendants competed for the same contracts in the government sector.  Ratinoff Decl., Exhs. 42-51, 54-55, 100, 120, 127, 130-135; Broad Decl., ¶¶ 20-24, Exhs. 12-13. | |
| (e) intent | <u>Fact 124:</u> Defendants' use of the Neo4j® Mark to promote Plaintiffs' software with an improperly modified copyright license shows that they intend to copy them and confuse the public.  *See supra* Facts 78-102. | |

1    John V. Picone III, Bar No. 187226
     jpicone@hopkinscarley.com
2    Jeffrey M. Ratinoff, Bar No. 197241
     jratinoff@hopkinscarley.com
3    HOPKINS & CARLEY
     A Law Corporation
4    The Letitia Building
     70 South First Street
5    San Jose, CA  95113-2406
     *mailing address:*
6    P.O. Box 1469
     San Jose, CA 95109-1469
7    Telephone:    (408) 286-9800
     Facsimile:    (408) 998-4790
8

9    Attorneys for Plaintiffs and Counter-Defendants
     NEO4J, INC. and NEO4J SWEDEN AB

10                UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12    NEO4J, INC., a Delaware corporation, and
NEO4J SWEDEN, AB, a Swedish
13    corporation,

14              Plaintiffs,

15        v.

16    PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
17    corporation, and JOHN MARK SUHY, an
individual,
18

19              Defendants.

20    AND RELATED COUNTERCLAIMS.

21    NEO4J, INC., a Delaware corporation, and
NEO4J SWEDEN AB, a Swedish
22    corporation,

23              Plaintiffs,

24        v.

25    GRAPH FOUNDATION, INC., an Ohio
corporation, GRAPHGRID, INC., an Ohio
26    corporation, and ATOMRAIN INC., a
Nevada corporation,
27

28              Defendants.

CASE NO.  5:18-cv-07182-EJD

**STIPULATION AND [PROPOSED] ORDER FOR SECOND MODIFICATION OF THE PHASE 1 CASE SCHEDULE**

CASE NO.  5:19-cv-06226-EJD

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

## STIPULATION

Plaintiff and Counter-Defendants Neo4j, Inc. and Neo4j Sweden AB (collectively "Plaintiffs"), Defendants and Counterclaimants PureThink LLC and iGov, Inc. and Defendant John Mark Suhy (collectively the "PureThink Defendants") in the action entitled *Neo4j, Inc. et al v. PureThink LLC et al*. Case No. 5:18-cv-07182-EJD ("PureThink Action") and Defendants Graph Foundation, Inc. ("GFI"), GraphGrid, Inc. and AtomRain Inc. in the related action entitled *Neo4j, Inc. v. Graph Foundation, Inc.*, Case No. 3:19-cv-06226-EJD ("GFI Action"), by and through the parties' respective attorneys, hereby submit this stipulation regarding the case schedule as follows:

1. On April 10, 2020, the Court granted the parties' stipulation concerning the claims, counterclaims and affirmative defenses ("Phase 1 Issues") that would be subject to the first motions for summary judgment/adjudication filed by each party. *See* PureThink Action, Dkt. No. 68; GFI Action, Dkt. No. 45.   This stipulation also set forth the case schedule for Phase 1.

2. On July 16, 2020, the Court granted the parties' stipulation further clarifying the scope of the Phase 1 Issues and adjusting the Phase 1 schedule to allow the Court sufficient time to rule on Neo4j USA's motion to dismiss challenging the viability of PureThink Defendants' trademark abandonment counterclaim and affirmative defense. *See* PureThink Action, Dkt. No. 82; GFI Action, Dkt. No. 63.

3. On July 16, 2020, the Court also granted Plaintiffs leave to file their First Amended Complaint ("FAC") in the GFI Action. *See* GFI Action, Dkt. No. 64.

4. On August 21, 2020, the Defendants in the GFI Action filed motions to dismiss certain claims asserted against them in the FAC. *See* GFI Action, Dkt. Nos. 74-75.  These motions are currently set to be heard by this Court on October 29, 2020, which is three days after the deadline for Plaintiffs to file their consolidated motion for summary judgment on the Phase 1 Issues. *See* PureThink Action, Dkt. No. 82; *see also* GFI Action, Dkt. No. 63.

/ / /

/ / /

/ / /

842\3603012.2

STIPULATION AND [PROPOSED] ORDER FOR SECOND MODIFICATION OF THE PHASE 1 CASE SCHEDULE
CASE NOS. 5:18-CV-07182-EJD; AND 5:19-CV-06226-EJD

1       5.     GFI's motion, in part, seeks to dismiss Plaintiffs' claims based on GFI's alleged

2  violations of the Digital Millennium Copyright Act and the breach of a license agreement. *See*

3  *id.*, Dkt. No. 75. The parties acknowledge that the Court's ruling on GFI's motions may

4  potentially affect the scope of the Phase 1 Issues. Defendants GraphGrid, Inc. and AtomRain Inc.

5  were added to the GFI Action in the First Amended Complaint, and in the pending motions to

6  dismiss, they have moved to dismiss all claims against each of them, thus the pending motion

7  may result in their dismissal from the case. To the extent GraphGrid, Inc. and/or AtomRain Inc.

8  remain in the case after the adjudication of the motion to dismiss, no scheduling order has yet

9  been entered regarding these Defendants, and they are not subject to the scheduling order

10  addressed below.

11       6.     The parties agree that because the Court's ruling on GFI's pending motion to

12  dismiss may affect the scope of the Phase 1 Issues, the briefing schedule and hearing for Phase 1

13  should be modestly extended to allow the Court time to rule on GFI's motion and for the parties

14  to settle the pleadings, if necessary, thereafter. The parties further agree that such an extension is

15  in the interest of judicial economy because it may potentially streamline the Phase 1 Issues

16  subject to the Phase 1 summary judgement proceedings.

17       7.     The parties agree that because several outstanding Phase 1 fact discovery issues

18  remain unresolved, the time for the parties to seek any necessary relief via discovery motions

19  should be extended. Likewise, the parties agree to allow Plaintiffs to schedule the previously

20  noticed Rule 30(b)(6) depositions of GFI and iGov Inc. after the September 14, 2020 fact

21  discovery cutoff, and that the depositions shall be scheduled and completed by October 23, 2020.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3603012.2                - 3 -
STIPULATION AND [PROPOSED] ORDER FOR SECOND MODIFICATION OF THE PHASE 1 CASE SCHEDULE
CASE NOS. 5:18-CV-07182-EJD; AND 5:19-CV-06226-EJD

8.    In light of the foregoing, the Parties respectfully request that the Court modify the current case schedule in both the PureThink Action and GFI Action as follows:

| Event | Current Deadline | Proposed Deadline |
|---|---|---|
| Last Day to File Fact Discovery Motions for Phase 1 Issues[1] | September 21, 2020 | October 30, 2020 |
| Last Day for Neo4j USA to file its combined motion for summary judgment, partial summary judgment and/or summary adjudication on Phase 1 Issues in the PureThink and GFI Actions | October 26, 2020 | December 11, 2020 |
| Last Day for Defendants to file their combined opening motion for summary judgment, partial summary judgment and/or summary adjudication and opposition for Phase 1 Issues in the PureThink and GFI Actions | November 23, 2010 | January 15, 2021 |
| Last Day for Neo4j USA to file its combined opposition/reply in the PureThink and GFI Actions | December 23, 2020 | February 15, 2021 |
| Last Day for Defendants to file their combined reply brief in the PureThink and GFI Actions | January 15, 2020 | March 8, 2021 |
| Hearing on motions for summary judgment, partial summary judgment and/or summary adjudication and a further Case Management Conference to set the schedule for Phase 2 in the PureThink and the GFI Actions | January 28, 2021 | March 25, 2021, or the earliest available date thereafter |

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] The parties agree and understand that a failure to move to compel on any discovery propounded prior to this time does not prejudice their right to seek relief relating to such discovery during Phase 2 of the proceedings.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3603012.2                                          - 4 -
STIPULATION AND [PROPOSED] ORDER FOR SECOND MODIFICATION OF THE PHASE 1 CASE SCHEDULE
CASE NOS. 5:18-CV-07182-EJD; AND 5:19-CV-06226-EJD

1  Dated:  September 9, 2020                    HOPKINS & CARLEY
                                               A Law Corporation
2

3                                              By: /s/ Jeffrey M. Ratinoff
                                                   Jeffrey M. Ratinoff
4                                                  Attorneys for Plaintiffs NEO4J, INC. and
                                                   NEO4J SWEDEN AB
5  Dated:  September 9, 2020

6                                                   /s/ Adron W. Beene
                                                   Adron W. Beene
7                                                  Attorneys for Defendants PURETHINK
                                                   LLC, IGOV INC., and JOHN MARK
8                                                  SUHY

9  Dated:  September 9, 2020                    BERGESON, LLP

10

11                                             By: /s/ John D. Pernick
                                                   John D. Pernick
                                                   Attorneys for Defendant
12                                                 GRAPH FOUNDATION, INC.

13  Dated:  September 9, 2020                   SKAGGS FAUCETTE LLP

14

15                                             By: /s/ Jeffrey E. Faucette
                                                   Jeffrey E. Faucette
                                                   Attorneys for Defendants GRAPHGRID,
16                                                 INC. and  ATOMRAIN INC.

17          **IT IS SO ORDERED.**

18

19     Dated:_____

20                                             EDWARD J. DAVILA
                                               United States District Court Judge
21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3603012.2                          - 5 -
STIPULATION AND [PROPOSED] ORDER FOR SECOND MODIFICATION OF THE PHASE 1 CASE SCHEDULE
CASE NOS. 5:18-CV-07182-EJD; AND 5:19-CV-06226-EJD

**SER_3826**

1

**ATTESTATION OF E-FILED SIGNATURE**

2    Pursuant to Local Rule 5-1(i)(3), I hereby certify that I have obtained the concurrence in

3    the filing of this document from all signatories for whom a signature is indicated by a

4    "conformed" signature (/s/) within this electronically filed document and I have on file records to

5    support this concurrence for subsequent production to the Court if so ordered or for inspection

6    upon request.

7    Dated:  September 9, 2020                    HOPKINS & CARLEY
                                                  A Law Corporation
8

9                                                 By: /s/ Jeffrey M. Ratinoff
                                                      John V. Picone III
10                                                    Jeffrey M. Ratinoff
                                                      Attorneys for Plaintiffs and
11                                                    Counter-Defendants
                                                      NEO4J, INC. and NEO4J SWEDEN AB
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

842\3603012.2

STIPULATION AND [PROPOSED] ORDER FOR SECOND MODIFICATION OF THE PHASE 1 CASE SCHEDULE
CASE NOS. 5:18-CV-07182-EJD; AND 5:19-CV-06226-EJD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEO4J, INC., et al., | Case No. 5:18-cv-07182-EJD |
| Plaintiffs, | **ORDER GRANTING MOTION TO DISMISS AND STRIKE** |
| v. | Re: Dkt. No. 73 |
| PURETHINK, LLC, et al., | |
| Defendants. | |

Before the Court is Plaintiff and Counter-Defendant Neo4j, Inc.'s ("Plaintiff" or "Neo4j USA") Motion to Dismiss for Failure to State a Claim and Motion to Strike (the "Motion"). Dkt. No. 73. Plaintiff moves to dismiss the Tenth Cause of Action for Declaratory Relief for Abandonment of Trademark asserted in the Second Amended Counterclaim (Dkt. No. 72) filed by Defendants and Counterclaimants John Mark Suhy ("Suhy"), PureThink LLC ("PureThink"), and iGov Inc. ("iGov") (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff further moves to strike the substantively identical Ninth Affirmative Defense asserted in Defendants' First Amended Answer to the Second Amended Complaint (Dkt. No. 71) pursuant to Federal Rule of Civil Procedure 12(f).

The Court took the matter under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons below, Plaintiff's motion is **GRANTED**.

## I. Background

### A. Factual Background

Neo4j USA is a Delaware corporation with its principal place of business in San Mateo, California, specializing in graph database management systems. Dkt. No. 50, Second Amended

United States District Court
Northern District of California

1   Complaint ("SAC"), ¶ 2.  Neo4j USA owns the trademark for the word mark "Neo4j," under the

2   U.S. Trademark Registration No. 4,784,280.  *Id.* at ¶ 21.  Neo4j USA first used this trademark in

3   June 2006 and has continually used it since it was published by the U.S. Patent and Trademark

4   Office in May 2015 and issued on August 4, 2015.  *Id.* at ¶ 22.

5        Neo4j Sweden AB ("Neo4j Sweden"), a wholly owned subsidiary of Neo4j USA and a

6   plaintiff in this action, owns certain copyrights related to the Neo4j software, including the source

7   code, and has licensed these copyrights to Neo4j USA.  *Id.* at ¶ 4.  Neo4j Sweden distributes a

8   version of Neo4j software known as "Neo4j Community Edition" on an open source basis under

9   the GNU General Public License (Dkt. No. 65, Ex. B) ("GPL") and a variant called the GNU

10  Affero General Public License (Dkt. No. 55, Ex. A) ("AGPL").  Second Amended Counterclaim,

11  Dkt. No. 72 ("Am. Counterclaim"), ¶ 7.  This open source software is available on Github.com,

12  the preeminent open source software repository.  *Id.* at ¶ 8.  Under the GPL and AGPL, anyone

13  can download the Neo4j Community Edition source code and use, modify, support, combine and

14  convey the software for free; however, licensees who copy, distribute, or modify the software are

15  required to provide notice of any modifications they make to the software.  *Id.* at ¶ 9.

16       While Neo4j Sweden licensed the Neo4j Community Edition software under the GPL and

17  AGPL, Neo4j USA licensed a commercial version, known as the "Enterprise Edition" which came

18  with additional features and commercial support.  *Id.* at ¶ 11; SAC ¶ 24.  On or around September

19  30, 2014, Neo4j USA entered into a Partner Agreement with Defendant PureThink, by which

20  PureThink agreed to sell and support the commercial version of the software in exchange for a

21  percentage of the fees.  *Id.* at ¶ 29; Am. Counterclaim, Ex. B ("Partner Agreement").  PureThink is

22  a Delaware limited liability company focused on software development.  SAC ¶ 6.  Plaintiffs

23  allege that iGov is the successor-in-interest and alter ego of PureThink.  *Id.* at ¶¶ 6-14.  Plaintiffs

24  further allege that Defendant Suhy is the sole member and manager of PureThink and the sole

25  shareholder of iGov.  *Id.* at ¶ 8.

26       The partnership between Neo4j USA and PureThink deteriorated, for reasons not relevant

27  to the analysis herein, and on May 30, 2017, Neo4j USA provided PureThink with formal

28  Case No.: 5:18-cv-07182-EJD
    ORDER GRANTING MOTION TO DISMISS AND STRIKE
    2

*United States District Court*
*Northern District of California*

1    notification of material breach.  SAC ¶ 33.  Shortly thereafter, on July 11, 2017, Neo4j USA

2    provided PureThink with written notice that the Partner Agreement was terminated due to

3    PureThink's failure to cure the material breaches set forth in the May 30, 2017 letter.  *Id.* at ¶ 35.

**B.  Procedural History**

4

5    On November 28, 2018, Plaintiff filed this action against Defendants, asserting (1)

6    Trademark Infringement; (2) False Designation of Origin; (3) False Advertising; (4) Federal and

7    State Unfair Competition; (5) Breach of Contract; and (6) Invasion of Privacy.  On January 9,

8    2019, Defendants PureThink and iGov filed a counterclaim against Plaintiff, alleging (1)

9    Interference With Prospective Economic Advantage; (2) Interference with Contract; (3) Breach of

10   Contract; (4) Declaratory Relief (Void Restrictions); (5) Declaratory Relief (Restrictions Violate

11   AGPL License); and (6) Declaratory Relief (Abandonment of Trademark).

12   On October 22, 2019, Plaintiff sought and obtained leave to file its First Amended

13   Complaint (*see* Dkt. Nos. 35-37), which set forth additional allegations to support its claims under

14   the Lanham Act and the UCL, and included a new claim alleging that Defendant Suhy violated the

15   Digital Millennium Copyright Act ("DMCA").  The First Amended Complaint also added Neo4j

16   Sweden AB ("Neo4j Sweden") as a plaintiff, which joined in the new DMCA claim.

17   Suhy filed a counterclaim wherein he asserted, among other claims, a claim for declaratory

18   relief regarding Plaintiffs' abandonment of the trademark.  Dkt. No. 48.  Plaintiffs then filed their

19   Second Amended Complaint in response to a motion to dismiss filed by PureThink and iGov.  *See*

20   Dkt. Nos. 49-50.  PureThink and iGov filed a First Amended Counterclaim, which contained a

21   claim identical to that asserted by Suhy regarding the abandonment of the trademark.  Dkt. No. 55.

22   Similarly, the Answer filed by all Defendants also asserted a substantively identical affirmative

23   defense.  Dkt. No. 54.  These abandonment claims and defenses asserted that Plaintiffs'

24   distribution of the software on an open-source basis pursuant to the GPL and AGPL amounted to a

25   naked license, and that the trademark could, therefore, be deemed abandoned.

26   Plaintiffs made a motion for judgment on the pleadings as to certain counterclaims and

27   affirmative defenses, including the abandonment claims.  Dkt. No. 60.  On May 21, 2020, this

28

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION TO DISMISS AND STRIKE
3

United States District Court
Northern District of California

1   Court granted Plaintiffs' motion for judgment on the pleadings as to the abandonment claims.

2   Dkt. No. 70, Order Granting Motion For Judgment On The Pleadings ("Order").  This Court held,

3   in relevant part, that "the fact that Plaintiff distributed Neo4j software on an open source basis

4   pursuant to the GPL and AGPL is not, without more, sufficient to establish a naked license or

5   demonstrate abandonment."  *Id.*  The Court granted Defendants leave to amend in order to "allege

6   that Plaintiff failed to exercise actual control over licensees' use of the trademark."  *Id.*

7        Following the Court's Order, Defendants filed an Amended Answer to the Second

8   Amended Complaint ("Am. Answer") and a Second Amended Counterclaim, adding allegations

9   related to the abandonment claim and defense.  Dkt. Nos. 71, 72.  The amended abandonment

10  counterclaim and the amended affirmative defense are substantively identical.  *Compare* Am.

11  Counterclaim, ¶¶ 86-97, *with* Am. Answer, pp. 19-23.  Defendants again rely on a "naked

12  license" theory of abandonment, arguing that "the trademark should be abandoned because

13  Neo4j Sweden and Neo4j USA did not have contractual, actual or adequate controls of the quality

14  of third party modifications of the open source versions of Neo4J licensed under the GPL and

15  APGL licenses."  Am. Counterclaim ¶ 85.

16       Plaintiffs filed the present motion to dismiss the abandonment counterclaim and strike the

17  corresponding affirmative defense, arguing that the new allegations fail to sufficiently state a

18  claim or defense of abandonment by naked licensing.

19       **II.   Legal Standard**

20            **A.  Motion to dismiss**

21       Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to

22  state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, a

23  complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is

24  plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing Federal Rule of

25  Civil Procedure 8(a)(2)).  A claim has facial plausibility when the plaintiff pleads factual content

26  that allows the court to draw the reasonable inference that the defendant is liable for the

27  misconduct alleged.  *Id.*  Dismissal can be based on "the lack of a cognizable legal theory or the

28  Case No.: 5:18-cv-07182-EJD
    ORDER GRANTING MOTION TO DISMISS AND STRIKE
                                    4

*United States District Court*
*Northern District of California*

1    absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police*

2    *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  In considering a motion pursuant to Rule 12(b)(6), the

3    court must accept as true all "well-pleaded factual allegations."  *Iqbal*, 556 U.S. at 679.  However,

4    the requirement that the court "accept as true" all allegations in the complaint is "inapplicable to

5    legal conclusions."  *Id.*

6    **B.  Motion to Strike**

7    Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an

8    insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R.

9    Civ. P. 12(f).  "The function of a Rule 12(f) motion to strike is to avoid the expenditure of time

10   and money that will arise from litigating spurious issues by dispensing with those issues prior to

11   trial."  *Solis v. Zenith Capital, LLC*, No. 08-cv-4854-PJH, 2009 WL 1324051, at *3 (N.D. Cal.

12   May 8, 2009) (citing *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)).

13   "[C]ourts in this district continue to require affirmative defenses to meet the

14   *Twombly/Iqbal* standard."  *Goobich v. Excelligence Learning Corp.*, No. 5:19-CV-06771-EJD,

15   2020 WL 1503685, at *2 (N.D. Cal. Mar. 30, 2020) (collecting cases).  Thus, "[w]hile a defense

16   need not include extensive factual allegations in order to give fair notice, bare statements reciting

17   mere legal conclusions may not be sufficient."  *Perez v. Gordon & Wong Law Group, P.C.*, No.

18   11-CV-03323-LHK, 2012 WL 1029425, at *8 (N.D. Cal. Mar. 26, 2012) (internal quotation and

19   citation omitted).  In order to satisfy the pleading requirements of Rule 8, "a defendant's pleading

20   of affirmative defenses must put a plaintiff on notice of the underlying factual bases of the

21   defense."  *Id.* (citing *Dion v. Fulton Friedman & Gullace LLP*, No. 11-2727 SC, 2012 WL

22   160221, at *2 (N.D. Cal. Jan. 17, 2012)).

23   "With a motion to strike, just as with a motion to dismiss, the court should view the

24   pleading in the light most favorable to the nonmoving party."  *Platte Anchor Bolt v. IHI, Inc.*, 352

25   F.Supp.2d 1048, 1057 (N.D. Cal. 2004).

26

27

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOTION TO DISMISS AND STRIKE

### III.    Discussion

#### A.  Judicial Notice

On both a motion to dismiss and a motion to strike, a court may consider the pleadings as well as documents that are attached to the pleadings, incorporated by reference when their authenticity is not contested, or are otherwise properly the subject to judicial notice. *See Ramachandran v. City of Los Altos*, 359 F.Supp.3d 801, 810 (N.D. Cal. 2019).  The Court previously took judicial notice of the GPL and the AGPL, which are either attached to or incorporated by reference into the pleadings. *See* Order, Dkt. No. 70.

Plaintiffs now requests that the Court take judicial notice of (1) Neo4j's Trademark Policy dated October 13, 2015, from the WayBack Machine (Dkt. No. 73-2, Chien Decl., Ex. 1); (2) Neo4j's Trademark Guidelines, dated April 3, 2019 (Dkt. No. 73-3, Chien Decl., Ex. 2); (3) Defendant PureThink LLC's webpage from Wayback Machine (Dkt. No 79-2, Chien Reply Decl., Ex. A); and (4) a Dun & Bradstreet Comprehensive Report for Neo4j, Inc. (Dkt. No. 79-3, Chien Reply Decl., Ex. B). *See* Dkt. Nos. 74, 80, Requests for Judicial Notice.

Neo4j's Trademark Policy and Guidelines are incorporated into the Second Amended Complaint (SAC ¶ 29), however, it is not clear what iteration of the policy is incorporated. Plaintiffs do not explain the difference, if any, between the policy in 2015 (Dkt. No. 73-2) and the policy in 2019 (73-3), nor is it clear how any such differences are relevant to the allegations.   The Court finds it unnecessary to take judicial notice of multiple iterations of the policy and guidelines, where the relevant portions are excerpted in the Second Amended Complaint.  The remaining documents are not relevant to the Court's analysis.  Therefore, the Court declines to take judicial notice of the documents Plaintiffs put forth.

#### B.  Abandonment

Under the Lanham Act, a mark can only be deemed "abandoned" when either of the following occurs: "(1) [w]hen its use has been discontinued with intent not to resume such use," or "(2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with

United States District Court
Northern District of California

1   which it is used or otherwise to lose its significance as a mark." 15 U.S.C. § 1127.  Defendants

2   argue that the "Neo4j" mark has been abandoned under the second prong because Plaintiffs

3   engaged in naked licensing by failing to control the quality of products using the trademark.

4          It is well established that "[u]ncontrolled or 'naked' licensing may result in the trademark

5   ceasing to function as a symbol of quality and controlled source." *Barcamerica Int'l USA Trust v.*

6   *Tyfield Importers, Inc.*, 289 F.3d 589, 595-96 (9th Cir. 2002) (citing *Moore Bus. Forms, Inc. v.*

7   *Ryu*, 960 F.2d 486, 489 (5th Cir. 1992)).  "Consequently, where the licensor fails to exercise

8   adequate quality control over the licensee, a court may find that the trademark owner has

9   abandoned the trademark, in which case the owner would be estopped from asserting rights to the

10  trademark." *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 516 (9th Cir. 2010)

11  (quoting *Barcamerica*, 289 F.3d at 596).  "[T]he naked licensing claim is fundamentally a claim

12  that the trademark is no longer valid and enforceable because of the licensor's neglect in policing

13  its use." *Monster, Inc. v. Dolby Labs. Licensing Corp.*, 920 F.Supp.2d 1066, 1076 (N.D. Cal.

14  2013).  Because the theory is essentially that a party forfeited trademark rights, "the Ninth Circuit

15  has described the standard required of the trademark challenger as 'stringent.'" *Id.* (quoting

16  *FreecycleSunnyvale*, 626 F.3d at 514) (citing *Barcamerica*, 289 F.3d at 596).

### i.  Control of Third-Party Use

18         In support of their naked license theory, Defendants allege that Plaintiffs "did not have

19  contractual, actual or adequate controls of the quality of third party modifications of the open

20  source versions of Neo4J licensed under the GPL and APGL licenses."  Am. Counterclaim ¶ 85.

21  More specifically, Defendants assert that "Neo4J Sweden allowed the unfettered and uncontrolled

22  use of the Neo4J trademarks to successfully launch the Neo4J software and gain a user and

23  development base" and argue that the trademark was, therefore, already abandoned by the time

24  Neo4j USA obtained the rights. *Id.* ¶ 86.  The only fact alleged to support the assertion that Neo4j

25  allowed "unfettered and uncontrolled use of the Neo4J trademarks" is that Neo4j Sweden openly

26  distributed its software pursuant to the GPL and AGPL.

27         The GPL and AGPL are copyright licenses, not trademark licenses.  Third party developers

28  Case No.: 5:18-cv-07182-EJD
    ORDER GRANTING MOTION TO DISMISS AND STRIKE

*United States District Court*
*Northern District of California*

who modify the open source versions of the software pursuant to the GPL or AGPL do not have any right to use the Neo4j trademark absent a separate trademark license agreement. *See* SAC ¶ 28 (quoting Neo4j's website, alleging "[a]lthough some Neo4j projects may be available under free and open licenses, those licenses cover copyright only and do not include any express or implied right to use our trademarks."); Am. Counterclaim, Ex. B, GPL § 7(e) (authorizing users to supplement to terms of the GPL with terms "declining to grant rights under trademark law for . . . trademarks" indicating that the GPL does not otherwise cover trademark rights).

Other than the Partner Agreement with Defendant PureThink, neither party alleges that Neo4j entered into any express trademark licenses. *See* Partner Agreement § 4.1 (granting limited license to "use the Neo Technology trademarks solely to market and promote the Products in accordance with the terms of this Agreement"). Rather, Defendants assert that in the absence of an express trademark license, "Neo4J Sweden freely allowed licensees to use the Neo4J trademark" and that "many of these third party modified versions of Neo4J freely use Neo4J trademarks." Am. Counterclaim ¶ 92-93. The term "licensees" in this instance refers to *copyright* licensees, under the GPL or AGPL, not *trademark* licensees. In other words, Defendants' allegation is that Plaintiffs failed to prosecute third-party copyright licensees' unauthorized use of the trademark.

This set of allegations does not fit comfortably within the doctrine of naked licensing. A "naked license" occurs when a trademark owner grants a trademark license then fails to monitor the quality of goods that the licensee produces under that trademark to such an extent that the trademark can be deemed abandoned. *See FreecycleSunnyvale*, 626 F.3d at 516; *Barcamerica Int'l USA Tr.*, 289 F.3d at 596. Naked licensing does not occur where there is no trademark license at issue. *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1047 (4th Cir. 1984) ("Th[e] rule of uncontrolled licensing of a trademark is inapplicable to the instant case as no evidence of licensing has been presented.").

In *Barcamerica*, it was undisputed that plaintiff, a vintner, had licensed its trademark to another winemaker. The Ninth Circuit held that the plaintiff failed to retain or otherwise exercise

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION TO DISMISS AND STRIKE
8

1    adequate quality control over the wine produced under that trademark and had therefore engaged

2    in naked licensing and abandoned the trademark.  *Barcamerica Int'l USA Tr.*, 289 F.3d at 596.

3         *Freecyle* involved a dispute between a nationwide nonprofit organization, which owned

4    certain trademarks related to the term "freecycle," and a local member-group of that organization,

5    which used those trademarks.  The *Freecyle* court first considered whether the parties had a

6    trademark licensing agreement.  Concluding that there was no express agreement, the court

7    assumed without deciding that there was an "implied" agreement, albeit one that did not address

8    quality control.  *FreecycleSunnyvale*, 626 F.3d at 516 ("Even assuming that [the parties'

9    correspondence] constitutes an implied licensing agreement, it contained no express contractual

10   right to inspect or supervise" the licensee's activities).  The court next considered whether in the

11   absence of express quality control provisions, the trademark owner "maintained actual control

12   over its member groups' services and use of the trademarks when [Plaintiff] *was granted use of*

13   *the trademarks*."  *Ibid.* (emphasis added).  Thus, the court assumed, and the parties did not

14   dispute, that the plaintiff in that case had been granted the right to use the trademarks under the

15   parties implied licensing agreement.

16        Both *Barcamerica* and *Freecycle*, therefore, concerned trademark licenses and the level of

17   quality control, or lack thereof, exercised under those licenses.  There is no allegation of a

18   trademark license between Plaintiffs and third-party modifiers in this case.  Defendants have not

19   identified any case, and the Court is not aware of any, in which a trademark owner was found to

20   have engaged in naked licensing where no trademark license existed.  Indeed, requiring a

21   trademark owner to police the quality of goods produced by a third party who has no right to use

22   the trademark would undermine the well-settled rule that a trademark owner's failure to sue

23   potential infringers does not constitute abandonment.  *San Diego Comic Convention v. Dan Farr*

24   *Prods.*, No. 14-CV-1865 AJB (JMA), 2017 WL 4227000, at *12 (S.D. Cal. Sept. 22, 2017)

25   ("despite Defendants' attempt to argue abandonment through third party use or failure to police,

26   these arguments are unquestionably meritless as Defendants have not proven that Plaintiff's mark

27   is generic") *aff'd*, 807 F. App'x 674 (9th Cir. 2020); *Century 21 Real Estate Corp. v. Sandlin*, 846

28

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOTION TO DISMISS AND STRIKE

9

United States District Court
Northern District of California

F.2d 1175, 1181 (9th Cir.1988) (stating that "discovery that revealed other potential infringers would be irrelevant under the law of this circuit"); *U.S. Jaycees v. San Francisco Junior Chamber of Commerce*, 354 F.Supp. 61, 73-74 (N.D. Cal. 1972), *aff'd* 513 F.2d 1226 (9th Cir. 1975) (noting that "numerous cases" have held that "the existence of infringers other than the defendant was irrelevant to a determination of whether the defendant should be enjoined from continuing in its infringement of plaintiffs' trademarks and in its unfair competition").

This Court previously allowed Defendants to amend their counterclaims and defenses in order to add allegations that apart from Plaintiffs' open-source distribution of the software pursuant to the GPL and AGPL, Plaintiffs otherwise failed to actually control their trademark licensees. In the amended pleadings, Defendants failed to allege that Plaintiffs licensed the Neo4j mark at all, let alone that they failed to exercise control under any such license. Rather, taking Defendants' allegations as true and construing them in a light most favorable to Defendants, the newly added allegations amount to an argument that Plaintiffs abandoned the trademark by permitting third parties to use it freely. They do not allege that Plaintiffs' actions have caused the mark to become generic or that the mark has otherwise lost its significance, as required to show abandonment under 15 U.S.C. § 1127. These allegations are insufficient to state a claim to abandonment.

### ii. Control of Defendants Suhy and PureThink

Defendants' amended pleadings also add allegations related to the lack of quality control that Plaintiffs exercised over Defendant Suhy's modified version of the software. Am. Counterclaim ¶ 96. Specifically, Defendants allege that Suhy modified the software and used the Neo4j trademark to distribute the modified software to customers, "[y]et Neo4J USA did no quality assurance or verification of the source code or applications distributed." *Ibid.* Unlike the third-party modifiers discussed above, Suhy—or Suhy's company, PureThink—had an express agreement to license the Neo4j mark. *See* Partner Agreement § 4.1.

Although it is possible that Plaintiffs failed to exercise quality control over the license in the Partner Agreement, Defendants' allegations are insufficient to show abandonment for a couple

1   of reasons.  First, Plaintiffs argue that the doctrine of estoppel prevents Defendants from

2   challenging the validity of the trademark based on Plaintiffs' alleged failure to police Defendants'

3   own licensed use of that trademark.  Motion, pp. 16-18, (citing *Monster, Inc.*, 920 F.Supp.2d at

4   1076-77 (licensee estoppel prevents licensee's attempt to challenge the trademark based on failure

5   to police its own licensed use)).  Defendants argue that estoppel does not apply because Suhy

6   modified the open-source version of the software, which was licensed by Neo4j Sweden under the

7   AGPL.  But it is not Suhy's modification of the underlying software that gives rise to Plaintiffs'

8   trademark-related claims, it is his use of the Neo4j trademark.  As discussed above, the AGPL

9   does not address trademark rights.  Moreover, Defendants cannot rely on the trademark license to

10   argue that the lack of quality control resulted in a naked license and simultaneously argue that

11   estoppel does not apply because the trademark license was not irrelevant to Suhy's use.

12       The Court agrees with Plaintiffs that Defendants are estopped from asserting an

13   abandonment claim based on Plaintiffs' alleged failure to control Defendants' own conduct.  A

14   "licensee may not challenge the licensor's mark based upon facts which arose during the term of

15   the license."  *STX, Inc. v. Bauer USA, Inc.*, 1997 WL 337578, 43 U.S.P.Q.2d 1492 (N.D. Cal. June

16   5, 1997).  PureThink entered into an agreement to license the trademark in 2014 (*see* Partner

17   Agreement), and allegedly used the trademark thereafter.  Defendants cannot now argue that

18   Plaintiffs failure to control Defendants' use amounts to a naked license.  *Monster, Inc.*, 920

19   F.Supp.2d at 1076-1077; *see also TAP Mfg., LLC v. Signs*, 2015 WL 12752874, at *3 (C.D. Cal.

20   July 23, 2015) ("a licensee may not assert that the licensor's mark is invalid because the licensor

21   granted a naked license to the licensee").

22       **IV.    Conclusion**

23       For the reasons stated above, Defendants fail to state a claim or affirmative defense for

24   abandonment of trademark and the Court **GRANTS** Neo4j USA's Motion.

25       Defendants having already amended their pleadings on this issue, the Court finds that

26   further leave to amend would be futile.  *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1033 (N.D.

27   Cal. 2012) (the Court should not grant leave to amend "where doing so would be an exercise in

28   Case No.: 5:18-cv-07182-EJD

United States District Court
Northern District of California

1   futility.").

2       The Tenth Cause of Action in the Second Amended Counterclaim is **DISMISSED** and the

3   Ninth Affirmative Defense in the Amended Answer to the Second Amended Complaint is

4   **STRICKEN** with prejudice.

5       **IT IS SO ORDERED.**

6   Dated:  August 20, 2020

7   _____

8   EDWARD J. DAVILA
    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Case No.: 5:18-cv-07182-EJD
    ORDER GRANTING MOTION TO DISMISS AND STRIKE
    12

United States District Court
Northern District of California

1   John V. Picone III, Bar No. 187226
    jpicone@hopkinscarley.com
2   Jeffrey M. Ratinoff, Bar No. 197241
    jratinoff@hopkinscarley.com
3   Cary Chien, Bar No. 274078
    cchien@hopkinscarley.com
4   HOPKINS & CARLEY
    A Law Corporation
5   The Letitia Building
    70 South First Street
6   San Jose, CA  95113-2406
    *mailing address:*
7   P.O. Box 1469
    San Jose, CA 95109-1469
8   Telephone:     (408) 286-9800
    Facsimile:     (408) 998-4790
9
    Attorneys for Plaintiffs and Counter-Defendants
10  NEO4J, INC. and NEO4J SWEDEN AB

11                        UNITED STATES DISTRICT COURT

12                        NORTHERN DISTRICT OF CALIFORNIA

13  NEO4J., INC., a Delaware corporation,          CASE NO.  5:18-cv-07182-EJD
    NEO4J SWEDEN, AB,
14                                                 **STIPULATION AND [PROPOSED]**
                   Plaintiffs,                     **ORDER FOR FURTHER MODIFICATION**
15                                                 **OF CASE MANAGEMENT SCHEDULE**
           v.
16
    PURETHINK LLC, a Delaware limited
17  liability company, IGOV INC., a Virginia
    corporation, and JOHN MARK SUHY, an
18  individual,
19                Defendants.
20
    AND RELATED COUNTERCLAIMS.
21
    NEO4J., INC., a Delaware corporation,          CASE NO.  5:19-cv-06226-EJD
22
                   Plaintiff,
23
           v.
24
    GRAPH FOUNDATION, INC., an Ohio
25  corporation,
26                Defendant.
27
28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3569393.2
STIPULATION AND [PROPOSED] ORDER FOR FURTHER MODIFICATION OF CASE MANAGEMENT SCHEDULE
CASE NOS. 5:18-CV-07182-EJD; AND 5:19-CV-06226-EJD

**STIPULATION**

Plaintiff and Counter-Defendants Neo4j, Inc. and Neo4j Sweden AB (collectively "Plaintiffs") and Defendants and Counterclaimants PureThink LLC and iGov, Inc. and Defendant John Mark Suhy (collectively the "PureThink Defendants") in the action entitled *Neo4j, Inc. et al v. PureThink LLC et al.* Case No. 5:18-cv-07182-EJD ("PureThink Action") and Neo4j, Inc. and Defendant Graph Foundation, Inc. ("GFI") in the related action entitled *Neo4j, Inc. v. Graph Foundation, Inc.*, Case No. 3:19-cv-06226-EJD ("GFI Action"), by and through the parties' respective attorneys, hereby submit this stipulation regarding the case schedule as follows:

1.    On April 10, 2020, the Court granted the parties' stipulation concerning the claims, counterclaims and affirmative defenses ("Phase 1 Issues") that would be subject to the first motions for summary judgment/adjudication filed by each party. *See* CASE NO. 5:18-cv-07182-EJD, Dkt. No. 58; CASE NO. 5:19-cv-06226-EJD, Dkt. No. 45.

2.    Despite their prior meet and confer efforts, however, the parties were in disagreement as to where the unclean hands affirmative defenses asserted by the PureThink Defendants and GFI in their respective operative answers, which are based on similar factual allegations, directly pertain to Lanham Act and UCL claims asserted by Neo4j USA against them.

3.    After further meet and confer, the parties have reached an agreement that the unclean hands defenses asserted by PureThink Defendants and GFI in their respective operative answers will not be addressed by the parties in the Phase 1 motions for summary judgment and/or adjudication.  Instead, the unclean hands defenses asserted by PureThink Defendants and GFI will be addressed by the parties in Phase 2.  The parties reserve all rights in litigating their respective positions concerning the scope and merits of Defendants' unclean hands defenses to the claims asserted by Plaintiffs.

4.    The parties further agree that because Neo4j USA's pending motion to dismiss challenging the viability of PureThink Defendants' trademark abandonment counterclaim and affirmative defense based on the theory of naked licensing is not being heard until August 8, 2020, the case management schedule for Phase 1 should be modestly extended to allow the Court time to rule that motion and for the parties to settle the pleadings, if necessary, thereafter.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3569393.2

5.     In light of the foregoing, the Parties respectfully request that the Court enter the following case schedule in both the PureThink Action and GFI Action:

| Event | Current Deadline | Proposed Deadline |
|---|---|---|
| Fact Discovery Cutoff for Phase 1 Issues | August 14, 2020 | September 14, 2020 |
| Last Day to File Fact Discovery Motions for Phase 1 Issues | August 21, 2020 | September 21, 2020 |
| Last Day for Neo4j USA to file its combined motion for summary judgment, partial summary judgment and/or summary adjudication for Phase 1 Issues in the PureThink and GFI Actions | September 25, 2020 | October 26, 2020 |
| Last Day for Defendants to file their combined opening motion for summary judgment, partial summary judgment and/or summary adjudication and opposition for Phase 1 Issues in the PureThink and GFI Actions | October 23, 2010 | November 23, 2010 |
| Last Day for Neo4j USA to file its combined opposition/reply in the PureThink and GFI Actions | November 16, 2020 | December 23, 2020 |
| Last Day for Defendants to file their combined reply brief in the PureThink and GFI Actions | December 2, 2020 | January 15, 2020 |
| Hearing on motions for summary judgment, partial summary judgment and/or summary adjudication and a further Case Management Conference to set the schedule for Phase 2 in the PureThink and the GFI Actions | December 17, 2020, or the earliest available date thereafter | January 28, 2021, or the earliest available date thereafter |

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦PALO ALTO

842\3569393.2

- 3 -

STIPULATION AND [PROPOSED] ORDER FOR FURTHER MODIFICATION OF CASE MANAGEMENT SCHEDULE
CASE NOS. 5:18-CV-07182-EJD; AND 5:19-CV-06226-EJD

SER_3842

1    Dated:  July 15, 2020                    HOPKINS & CARLEY
                                              A Law Corporation
2

3                                             By: */s/ Jeffrey M. Ratinoff*
                                                  Jeffrey M. Ratinoff
4                                                 Attorneys for Plaintiffs and
                                                  Counter-Defendants
5                                                 NEO4J, INC. and NEO4J SWEDEN AB

6    Dated:  July 15, 2020

7                                                  */s/ Adron W. Beene*
                                                  Adron W. Beene
8                                                 Attorneys for Defendants PURETHINK
                                                  LLC, IGOV INC., and JOHN MARK
9                                                 SUHY

     Dated:  July 15, 2020                    BERGESON, LLP
10

11                                            By: */s/ John D. Pernick*
                                                  John D. Pernick
12                                                Attorneys for Defendant
                                                  GRAPH FOUNDATION, INC.
13
            **IT IS SO ORDERED.**
14

15

16          Dated:_____
                                                  EDWARD J. DAVILA
17                                                United States District Court Judge

18

19

20

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3569393.2                                    - 4 -

**SER_3843**

1

**ATTESTATION OF E-FILED SIGNATURE**

2          Pursuant to Local Rule 5-1(i)(3), I hereby certify that I have obtained the concurrence in

3     the filing of this document from all signatories for whom a signature is indicated by a

4     "conformed" signature (/s/) within this electronically filed document and I have on file records to

5     support this concurrence for subsequent production to the Court if so ordered or for inspection

6     upon request.

7     Dated:  July 15, 2020                                HOPKINS & CARLEY
                                                           A Law Corporation
8

9                                                          By: /s/ Jeffrey M. Ratinoff
                                                              John V. Picone III
10                                                            Jeffrey M. Ratinoff
                                                              Cary Chien
11                                                            Attorneys for Plaintiffs and
                                                              Counter-Defendants
12                                                            NEO4J, INC. and NEO4J SWEDEN AB

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

842\3569393.2

STIPULATION AND [PROPOSED] ORDER FOR FURTHER MODIFICATION OF CASE MANAGEMENT SCHEDULE
CASE NOS. 5:18-CV-07182-EJD; AND 5:19-CV-06226-EJD

1  John V. Picone III, Bar No. 187226
   jpicone@hopkinscarley.com
2  Jeffrey M. Ratinoff, Bar No. 197241
   jratinoff@hopkinscarley.com
3  Cary Chien, Bar No. 274078
   cchien@hopkinscarley.com
4  HOPKINS & CARLEY
   A Law Corporation
5  The Letitia Building
   70 South First Street
6  San Jose, CA  95113-2406

7  *mailing address:*
   P.O. Box 1469
8  San Jose, CA 95109-1469
   Telephone:     (408) 286-9800
9  Facsimile:      (408) 998-4790

10  Attorneys for Plaintiffs and Counter-Defendants
    NEO4J, INC. and NEO4J SWEDEN AB

11

12                    UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 14  NEO4J, INC., a Delaware corporation, NEO4J SWEDEN AB, a Swedish corporation, | CASE NO.  5:18-cv-07182-EJD |
| 15 | **PLAINTIFF NEO4J, INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGEMENT ON THE PLEADINGS** |
| 16            Plaintiffs, | |
| 17      v. | **[Fed. R. Civ. P. 12(c)]** |
| 18  PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual, | Date:         May 7, 2020 <br> Time:         9:00 a.m. <br> Dept.:        Courtroom 4, 5th Floor <br> Judge:       Hon. Edward J. Davila |
| 19 | |
| 20 | |
| 21            Defendants. | |
| 22  AND RELATED COUNTERCLAIMS. | **JURY TRIAL DEMANDED** |

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3473665.3                                - 1 -

PLAINTIFF NEO4J, INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGEMENT ON THE PLEADINGS; CASE NO. 5:18-CV-07182-EJD

## I.      INTRODUCTION

Defendants and Counterclaimants John Mark Suhy, PureThink LLC and iGov Inc. (collectively "Defendants") concede that their counterclaims and affirmative defense seeking the cancellation of the NEO4J® mark pursuant to 15 U.S.C. §1119 fails to establish a legally plausible claim.  *See* Dkt. No. 63 at 2:26-28.  As such, the Court should enter an order dismissing those counterclaims and defense with prejudice.

With respect to their equally unmeritorious trademark abandonment counterclaims and affirmative defenses, Defendants argue that their non-specific allegations of "confusion" and an alleged failure to "exercise adequate quality controls" over certain NEO4J® native graph database software amounts to naked licensing.  However, the sparse allegations across three defensive pleadings do not come close to meeting the plausibility standard articulated by the Supreme Court in *Twombly* and *Iqbal.*

In particular, Defendants fail to reconcile that their abandonment theory based on unspecified "confusion" over the use the NEO4J® mark as both a company and product name is not legally sufficient to establish abandonment.  Their argument that confusion results from the shared use the NEO4J® mark by Neo4j USA and Neo4j Sweden AB ("Neo4j Sweden") in their company names, along with software owned by Neo4j Sweden is equally untenable.  Defendants ignore that the Lanham Act expressly contemplates "related companies" using the NEOJ4® mark without affecting the mark's validity, and in particular, the Ninth Circuit has found that a subsidiary's authorized use of a mark owned by its parent corporation does not amount to abandonment.   It is also presumed that the parent who owns the mark exercises sufficient control over the nature and quality of goods sold under the mark by the subsidiary unless there is evidence to the contrary.  Since Defendants do not allege any material facts establishing Neo4j USA's lack of control over Neo4j Sweden and that ***the public*** has been deceived by the parent-subsidiary relationship between Neo4j USA and Neo4j Sweden and their joint use of the NEO4J® mark, Defendants' abandonment defense fails as a matter of law.

Likewise, Defendants' insistence that they can maintain a legally viable naked licensing theory based on NEO4J® native graph database software being licensed on an open source basis

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3473665.3

- 1 -

PLAINTIFF NEO4J, INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGEMENT ON THE PLEADINGS; CASE NO. 5:18-CV-07182-EJD

SER_3846

1   via the GNU General Public License ("GPL") and the GNU Affero General Public License

2   ("AGPL") is unavailing.  Because these licenses require licensees who wish to copy, distribute, or

3   modify the software to provide notice of any modifications they make to the software to

4   differentiate it from unaltered versions offered by Neo4j USA and Neo4j Sweden, the licenses

5   establish Neo4j USA's efforts to control the use of the NEO4J® mark.  The use of the GPL and

6   AGPL and their underlying terms also directly contradict Defendants' allegations that there is no

7   agreement in place that allows Neo4j USA to control the quality of NEO4J® native graph

8   database software.  Since Defendants cannot identify any material facts that purport to establish

9   abandonment beyond this discredited open source licensing theory, Defendants clearly cannot

10   maintain a plausible abandonment counterclaim or defense based on the naked licensing doctrine.

11   Lastly, the deficiencies in Defendants' abandonment counterclaims and affirmative

12   defense are legal in nature or are otherwise undermined by the open source licenses they rely

13   upon.  As a result, they cannot be cured via amendments.  Defendants appear to recognize the

14   futility of seeking leave to amend as they did not bother to request it in their opposition.

15   Defendants also do not identify any additional facts that would establish a viable theory of

16   trademark abandonment via naked licensing or otherwise.  Accordingly, the Court should grant

17   Neo4j USA's motion for judgment on the pleadings and dismiss Defendants' two counterclaims

18   and affirmative defenses that allege that Neo4j USA abandoned the NEO4J® mark.

19   **II.      LEGAL ARGUMENT**

20           **A.      Defendants Admit They Never Had a Plausible Legal and Evidentiary Basis
21                   to Assert Counterclaims and Affirmative Defense Seeking Cancellation of the
                    NEO4J® Mark Based on Any Alleged Fraud on the USPTO.**

22   Defendants concede that John Mark Suhy's first counterclaim (Dkt. No. 48 at ¶¶ 4-7),

23   PureThink and iGov's eleventh counterclaim (Dkt. No. 55 at ¶¶ 88-92) and Defendants' seventh

24   affirmative defense (Dkt. No. 54 at 18:20-19:3) fail to establish a legally plausible claim the

25   cancellation of the NEO4J® mark pursuant to 15 U.S.C. §1119.  *See* Dkt. No. 63 at 2:26-28.

26   However, they attempt to justify asserting what were clearly frivolous counterclaims by engaging

27   in further conjecture that Neo4j USA might have been seeking to create an earlier use date "to

28   ward off prior users."  Dkt. No. 63 at 3:14-21.  Neo4j USA takes exception to this suggestion –

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3473665.3                                  - 2 -

PLAINTIFF NEO4J, INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGEMENT ON THE PLEADINGS; CASE NO. 5:18-CV-07182-EJD

SER_3847

1    especially since Defendants admit they had no legal or factual basis to accuse Neo4j USA of

2    fraud on the USPTO in the first place.  Accordingly, the Court should ignore Defendants'

3    additional tripe and dismiss their fraud-based counterclaims and defense with prejudice.

4    **B.    Defendants' Naked Licensing Counterclaims and Affirmative Defense Fail to Allege Sufficient Facts Establishing a Legally Viable Theory of Trademark**

5    **Abandonment**

6    Defendants engage in a rambling attempt to explain how Suhy's second counterclaim

7    (Dkt. No. 48 at ¶¶ 9-10), PureThink and iGov's tenth counterclaim (Dkt. No. 55 at ¶¶ 85-86) and

8    Defendants' ninth affirmative defense (Dkt. No. 54 at 19:12-25) allege a plausible theory of

9    trademark abandonment.  As discussed below, their effort simply highlights the legal and factual

10   deficiencies of their abandonment counterclaim/defense.

11   **1.    Defendants' Allegations that the Use of the NEO4J® Mark as Both Company and Product Names Does Not Amount to a Legally Viable**

12   **Theory of Trademark Abandonment**

13   Defendants argue that Neo4j USA misconstrues their "confusion" allegations supporting

14   their abandonment counterclaim/defense as applying to only them rather than the general public.

15   Dkt. No. 63 at 4:18-21 5:3.  Defendants then argue that this "confusion is caused by two

16   companies using the same name on two software products licensed in entirely different manners."

17   *Id.* at 4:21-23. These are ***arguments***, not ***facts*** alleged in support of their abandonment

18   counterclaims and defense.  *See, e.g.,* Dkt. No. 55 at 24:10-12 ("[Defendants] claim there is

19   confusion whether Neo4j is a company name trademark or product name trademark"); *see also*

20   Dkt. No. 48 at 3:10-12; Dkt. No. 54 at 19:13-21.  Thus, they are irrelevant for purposes of

21   considering whether Defendants have alleged sufficient facts establishing abandonment of a

22   trademark as defined by 15 U.S.C § 1127.  *See Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194,

23   1197 n. 1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court ***may***

24   ***not*** look beyond the complaint to a plaintiff's moving papers, such as a memorandum in

25   opposition to a defendant's motion to dismiss.") (emphasis in original).

26   Next, relying on the second definition of abandonment under 15 U.S.C § 1127,

27   Defendants conclude that because Neo4j Sweden uses the NEO4J® mark "in its name and calls

28   / / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

SER_3848

1   its free open source product," it causes unspecified confusion amounting to abandonment.[1] Dkt.

2   No. 63 at 4:4-5.  Rather than cite to any factual allegations in the pleadings and applicable legal

3   authority to support this novel theory, Defendants insist that Neo4j USA "is free to present

4   evidence to dispute the fact that mixing its trademark up between two companies with different

5   licensing practice and different software quality controls should lead to abandonment."  *Id.* at

6   5:20-21.  Again, Defendants are impermissibly asking the Court to consider attorney argument

7   rather than what is actually alleged in the challenged pleadings in ruling on this motion. *See*

8   *Schneider,* 151 F.3d at 1197 n. 1.  Indeed, there are **no facts** alleged therein concerning Neo4j

9   USA and Neo4j Sweden engaging in different licensing practices or software quality controls.

10          Even if any of the foregoing were actually set forth in the challenged pleadings and taken

11   as true, they are still do not establish abandonment under the Lanham Act.  As detailed in Neo4j

12   USA's moving papers, the use of the NEO4J® mark as both a product name and a trade name

13   constitutes a legitimate and protected use of that mark.[2]  *See* Dkt. No. 60 at 13:3-12.    Likewise,

14   the Lanham Act expressly recognizes that a registered mark "may be used legitimately by related

15   companies, such use shall inure to the benefit of the registrant … and such use shall not affect the

16   validity of such mark or of its registration…." 15 U.S.C. § 1055; *see also* 15 U.S.C. § 1127 ("The

17   term 'related company' means any person whose use of a mark is controlled by the owner of the

18   mark with respect to the nature and quality of the goods or services on or in connection with

19   which the mark is used.").

20          Notably, Defendants do not allege in their pleadings that Neo4j Sweden's use of the

21   NEO4J® mark in its company name and software is unlicensed or is otherwise not authorized by

22   Neo4j USA.  Likewise, they do not set forth any **facts** establishing that there has been any

23

24   [1] Defendants do not address, and thus concede the correctness of Neo4j USA's argument that

25   their two theories of abandonment fail to meet the first definition of abandonment under 15
     U.S.C. § 1127, which requires discontinuation of use with an intent not to resume such use.

26   *Compare* Dkt. No. 60 at 12:15-25, 13:21-5 *and* Dkt. No. 63 at 4:23-5:3.

27   [2] Defendants do not address the legal authority cited in Neo4j USA's moving papers that the use
     of the NEO4J® mark as both a company name and a product name is permissible, and does not

28   establish any alleged abandonment of that mark.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3473665.3                                    - 4 -

PLAINTIFF NEO4J, INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGEMENT ON THE PLEADINGS; CASE NO. 5:18-CV-07182-EJD

SER_3849

1     *consumer confusion* resulting from the NEO4J® mark being used by Neo4j USA and Neo4j

2     Sweden or in conjunction with different versions of their software products.  This is because it is

3     generally known that Neo4j Sweden is a subsidiary of Neo4j USA.  *See* Declaration of Jeffrey M.

4     Ratinoff in support of Neo4j, Inc.'s Reply Brief ("Ratinoff Reply Decl."), Exh. A; Request for

5     Judicial Notice in support of Neo4j, Inc.'s Reply Brief ("Reply RJN"), ¶ 1; *see also* Dkt. No. 50

6     at 2:15-16 ("Neo4j Sweden …. is a wholly owned subsidiary of Neo4j USA.").

7        Defendants are careful to avoid this inconvenient fact because the inherent ability of a

8     parent corporation to control the affairs of a subsidiary corporation is generally "sufficient to

9     presume that the parent is adequately exercising control over the nature and quality of goods and

10    services sold by the subsidiary under a mark owned by the parent…." *Noble House Home*

11    *Furnishings, LLC v. Floorco Enterprises, LLC*, 118 U.S.P.Q.2d 1413, 1421, 2016 WL 3357265

12    (T.T.A.B. 2016); *see also K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 299, 108 S. Ct. 1811, 100

13    L. Ed. 2d 313 (1988) (observing that "the parent corporation—not the subsidiary whose every

14    decision it controls—better fits the bill as the true owner of any [trademark] property that the

15    subsidiary nominally possesses.").  Indeed, a subsidiary's authorized use of a trademark owned

16    by its parent corporation does not normally amount to abandonment.  *See Hokto Kinoko Co. v.*

17    *Concord Farms, Inc.*, 738 F.3d 1085, 1098 (9th Cir. 2013) (finding that license of a mark from a

18    Japanese parent to its wholly owned United States subsidiary was not a naked license even though

19    the license contained no formal quality control provisions); *see also Sterling Drug Inc. v. Lincoln*

20    *Laboratories, Inc.*, 322 F.2d 968 (7th Cir. 1963) (where products were manufactured by

21    trademark owner and sold and distributed by its wholly owned marketing subsidiary under the

22    latter's name, enforcement of trademark was not precluded on ground of lack of product quality

23    control by trademark owner over its licensee); *Letica Corp. v. Sweetheart Cup Co.*, 805 F.Supp.

24    482, 487 (E.D. Mich. 1992) (recognizing that under 15 U.S.C. § 1055, "if two companies are

25    related, use by one company of the other's trade dress rights does not constitute abandonment").

26        In sum, Defendants' allegations that "there is confusion whether Neo4j is a company

27    name trademark or product name trademark," and more specifically, that Neo4j Sweden uses

28    "Neo4j as part of the company and call the open source software product Neo4j too" are

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE · PALO ALTO

842\3473665.3

- 5 -

PLAINTIFF NEO4J, INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGEMENT ON THE PLEADINGS; CASE NO. 5:18-CV-07182-EJD

SER_3850

1    insufficient to establish a legally sufficient abandonment counterclaim/defense (via naked

2    licensing or otherwise) under the Lanham Act.  *See* Dkt. No. 55 at 24:10-18, Dkt. No. 54 at

3    19:13-21, Dkt. No. 48 at 3:10-18.  Accordingly, Defendants' abandonment counterclaims and

4    defense based on their confusion theory fails as a matter of law.

5          **2.      Defendants Cannot Establish Naked Licensing Based on Certain
                     NEO4J® Native Graph Database Software Being Licensed Under the
6                    GPL and AGPLv3**

7          Defendants cite to their allegation, "[a]s the [NEO4J® mark] is used and licensed as open

8    source software there is no ability to maintain quality control over the software product called

9    Neo4j as any licensees may modify combine the software with other code and distributed or

10   convey Neo4j without required quality control by Neo4j USA," as the sole basis to justify their

11   naked licensing theory of abandonment.  *See* Dkt. No. 63 at 6:14-18.  Defendants do not contest

12   Neo4j USA's assertion in its moving papers that the GPL and AGPL are licenses governing the

13   open source distribution of certain NEO4J® native graph database software and form the basis

14   for their naked licensing counterclaim/defense.  *See* Dkt. No. 60 at 13:21-14:13.  Instead,

15   Defendants argue that the GPL and AGPL establish that Neo4j USA does not control the

16   NEO4J® mark under those agreements because Neo4j Sweden is the actual licensor of that

17   software.  Dkt. No. 63 at 6:19-7:3.  They further argue that the GPL and AGPL amount to a naked

18   license because they have no trademark quality control provisions and "anyone can use, modify,

19   support, combine and convey the Neo4j software."  *Id.* at 7:14-17.

20         Defendants' position is meritless since they ignore the parent-subsidiary relationship of

21   Neo4j USA and Neo4j Sweden.  Their failure to conduct a meaningful analysis of the GPL and

22   AGPL is also telling because a review of their terms make clear that Defendant's claim that

23   Neo4j USA (and Neo4j Sweden as its subsidiary) lack control over the quality over the software

24   is untenable.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a court

25   need not accept as true allegations contradicted by judicially noticeable facts, or by exhibits

26   attached to or incorporated in the pleading when ruling on a motion to dismiss).

27         Under the Section 5(a) of the referenced GPL, a licensee may "convey a work based on

28   the Program, or the modifications to produce it from the Program, in the form of source code

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

1    under the terms of section 4, provided that… [t]he work must carry prominent notices stating that

2    [the licensee] modified it, and giving a relevant date." Reply RJN, ¶ 2; Ratinoff Reply Decl.,

3    Exh. B.[3]   Section 5(a) of the referenced AGPL similarly provides that a licensee "may convey a

4    work based on the Program, or the modifications to produce it from the Program, in the form of

5    source code under the terms of section 4, provided that… [t]he work must carry prominent

6    notices stating that the licensee modified it, and giving a relevant date." Dkt. No. 55, Exhibit A.

7           The foregoing provisions refute Defendants' claim that "there is no ability to maintain

8    quality control over the software product called Neo4j as any licensees may modify combine the

9    software with other code and distributed or convey Neo4j without required quality control by

10   [Neo4j USA]." *See* Dkt. No. 55 at 24:18-23.  These provisions expressly require licensees to

11   identify any and all modifications they make to the software to ensure that such modifications

12   (and any related quality issues associated therewith) are ***not attributed*** to any goodwill associated

13   with the NEO4J® mark.[4]  This is more than legally sufficient to ensure that the public will not be

14   deceived as to the source of modified versions based on the underlying code of NEO4J® native

15   graph database software released under the GPL and AGPL, and thus negate Defendants naked

16   licensing counterclaim/defense as a matter of law – especially since there are ***no other facts***

17   ***alleged in their pleadings*** establishing a lack of quality control.  *See Barcamerica*, 289 F.3d at

18   596 (recognizing that "[t]he lack of an express contract right to inspect and supervise a licensee's

---

19   [3] Neo4j USA respectfully requests that the Court consider the entire contents of the GPL under
20   the doctrine of incorporation by reference, or in the alternative take judicial notice thereof. *See*
     *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 US 308, 322, 127 S.Ct. 2499 (2007); *accord*
21   *Ramachandran v. City of Los Altos*, 359 F.Supp.3d 801, 810 (N.D. Cal. 2019).  Defendants also
     do not contest the authenticity of the GPL, which is publicly available via the Free Software
22   Foundation's website, and concede in their opposition that it one of the underlying open source
     licenses supporting their naked licensing counterclaims/defense.  Thus, the Court may also
23   consider it in determining the legal viability of their naked licensing counterclaim/defense.

24   [4] For this same reason, Defendants' reliance on *FreecycleSunnyvale v. Freecycle Network*, 626
25   F.3d 509, 516 (9th Cir. 2010) for the proposition that the "absence of an agreement with
     provisions restricting or monitoring the quality of goods or services produced under a trademark
26   supports a finding of naked licensing" is misplaced.  In *FreecycleSunnyvale*, the trademark owner
     allowed anyone to use their registered mark, as long as it was not used for commercial purposes
27   and kept all online content that they associated with the mark "Free, legal, and appropriate for all
     ages." *Id*. at 513. In sharp contrast, the provisions of the AGPL and GPL operate to outwardly
28   distinguish unaltered Neo4j® open source software from licensee-modified versions thereof.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3473665.3                                    - 7 -

PLAINTIFF NEO4J, INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGEMENT ON THE PLEADINGS; CASE NO. 5:18-CV-07182-EJD

**SER_3852**

1   operations is not conclusive evidence of lack of control"); *Hokto Kinoko Co.,* 738 F.3d at 1098

2   ("[e]ven absent formal quality control provisions, a trademark owner does not abandon its

3   trademark where 'the particular circumstances of the licensing arrangement suggests that the

4   public will not be deceived'") (internal quotes and citation omitted).

5          Moreover, no formal quality control requirements are necessary where the agreement

6   between a licensor and licensee is not considered an actual trademark license.  *See Exxon Corp. v.*

7   *Oxxford Clothes, Inc.*, 109 F.3d 1070 (5th Cir. 1997) (recognizing that courts will not find

8   existence of trademark license when authorization of trademark use is structured in such way as

9   to avoid misleading or confusing consumer as to origin and/or nature of respective parties'

10  goods).  Arguably, the GPL and AGPL are not trademark licenses requiring express quality

11  control provisions because they mandate that licensees provide "prominent notice" for any

12  modifications they make to code from the underlying NEO4J® software released under the GPL

13  or AGPL to ensure there is no confusion as to origin of such modified software that may still

14  nominally bare the NEO4J® mark.

15         Defendants further argue that Neo4j USA "rel[ies] on the terms of the AGPL license

16  which plainly contradicts Neo4j USA's claim they are the AGPL licensor" and that "Neo4j USA

17  claims it licenses the software under the AGPL when it does not illustrates the confusion over the

18  mark Neo4j USA."  Dkt. No. 63 at 7:6-11.  Not only is this unsupported by Defendants'

19  challenged pleadings, but at no point has Neo4j USA claimed to be the owner of the copyright to

20  the underlying software or the licensor thereof under the AGPL or GPL.  Indeed, Neo4j USA

21  expressly alleges in its operative complaint that "Neo4j Sweden is the owner of all copyrights

22  related to the Neo4j® graph platform, including the source code, and has licensed said copyrights

23  to Neo4j USA in connection with the making, use, creation of derivative works, sale, offer to sell,

24  importation, performance, display, reproduction and distribution of the copyrighted material, and

25  the sublicensing of such rights."  Dkt. No. 50 at 2:17-20.  It is thus disingenuous for Defendants

26  argue the contrary.  More importantly, as discussed above, it is entirely permissible for a related

27  company such as Neo4j Sweden to use the NEO4J® mark in this manner.  The Court should

28  therefore disregard Defendants' argument to the contrary.  *See Schneider*, 151 F.3d at 1197 n. 1.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3473665.3   - 8 -

PLAINTIFF NEO4J, INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGEMENT ON THE PLEADINGS; CASE NO. 5:18-CV-07182-EJD

SER_3853

1    Finally, Defendants' argument that *Planetary Motion* is inapplicable because it was a "use

2   in commerce" case and did not address the GPL in the context of naked licensing is equally

3   without merit. *See* Dkt. No. 63 at 7:23-8:13. This is a distinction without a difference. The

4   distribution of NEO4J® software under the GPL and the AGPL – whether in the context of

5   acquiring ownership rights via use in commerce or the intent to control the mark in the context of

6   open source licensing – does not "in any way compel a finding" that a trademark owner abandons

7   its trademark rights. *See Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1198 & fn.

8   16 (11th Cir. 2001) (recognizing that the GPL allows users to copy, distribute and/or modify the

9   software under certain restrictions, e.g., users modifying licensed files must carry prominent

10  notices stating that the user changed the files and the date of any change). Defendants' bare

11  allegation that Neo4j USA has no right to maintain control over how licensees redistribute

12  modified versions of software based on underlying code for NEO4J® software released under the

13  AGPL and GPL simply do not amount to a plausible naked licensing counterclaim/defense.

14  Accordingly, Defendants' open source naked licensing theory fails as a matter of law.

15      **C.    The Court Should Deny Defendants Leave to Amend**

16      It is well established that the Court should deny leave to amend "where doing so would be

17  an exercise in futility." *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1033 (N.D. Cal. 2012);

18  *accord Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (reaffirming that

19  a court need not grant leave to amend if granting leave would be futile). The Court should also

20  deny leave to amend "if it determines that allegation of other facts consistent with the challenged

21  pleading could not possibly cure the deficiency." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998,

22  1003 (9th Cir. 2010). Likewise, the Court should deny leave to amend where the sole issue

23  presented is a matter of substantive law. *See Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir.

24  1988). The Court's "discretion to deny leave to amend is particularly broad where plaintiff has

25  previously amended the complaint." *World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676,

26  690 (9th Cir. 2010).

27      As detailed above, the defects in Defendants' abandonment counterclaims and affirmative

28  defense are legal in nature and cannot be cured by amendment. Their "confusion" theory of

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3473665.3                                    - 9 -

PLAINTIFF NEO4J, INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGEMENT ON THE PLEADINGS; CASE NO. 5:18-CV-07182-EJD

SER_3854

1   abandonment does not meet either statutory definition of abandonment under 15 U.S.C. § 1127,

2   and does not otherwise allege facts that legally amount to the naked licensing of the NEO4J®

3   mark.  Similarly, Defendants' naked licensing theory based on the open source licensing of

4   NEO4J® native graph database software is directly contradicted by the license upon which they

5   are based.  Defendants do not request leave to amend in their opposition and do not offer any

6   additional facts outside what is alleged that would save their abandonment counterclaims and

7   affirmative defense from dismissal. *See Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir.

8   1997) (recognizing that a party may plead itself out of court where that party alleges facts

9   establishing that it cannot prevail on its claim).  Thus, Defendants effectively concede that

10  granting leave to amend would be futile, especially since they have had over a year to develop

11  their abandonment theories and recently amended their pleadings without offering any new or

12  additional facts to support either theory.  Accordingly the Court should dismiss their

13  abandonment counterclaims and affirmative defenses with prejudice.

14  **III.     CONCLUSION**

15          For the foregoing reasons and those set forth in Neo4j USA's moving papers, the Court

16  should grant Neo4j USA's motion for a judgment on the pleadings in its entirety and dismiss (a)

17  the Second Cause of Action for Declaratory Relief for Abandonment of Trademark asserted in

18  John Mark Suhy's Counterclaim; (b) the Tenth Cause of Action for Declaratory Relief for

19  Abandonment of Trademark asserted in the First Amended Counterclaim filed by PureThink and

20  iGov; and (c) the Ninth Affirmative Defense for Naked License Abandonment of Trademark

21  asserted in the Answer to the Second Amended Complaint filed by Defendants with prejudice.

22   Dated: March 3, 2020                         HOPKINS & CARLEY
                                                  A Law Corporation
23

24                                               By: */s/ Jeffrey M. Ratinoff*
                                                     John V. Picone III
25                                                   Jeffrey M. Ratinoff
                                                     Cary Chien
26                                                   Attorneys for Plaintiff
                                                     NEO4J, INC., NEO4J SWEDEN AB
27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3473665.3                                    - 10 -

PLAINTIFF NEO4J, INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGEMENT ON THE PLEADINGS; CASE NO. 5:18-CV-07182-EJD

1  Adron W. Beene SB# 129040
   Adron G. Beene SB# 298088
2  Attorney at Law
   1754 Technology Drive, Suite 228
3  San Jose, CA 95110
   Tel: (408) 392-9233
4  Fax: (866) 329-0453
   adron@adronlaw.com
5

6  Attorneys for defendants:
   PURETHINK LLC, a Delaware limited
7  liability company, IGOV INC., a Virginia
   corporation, and JOHN MARK SUHY
8

9              UNITED STATES DISTRICT COURT
10          NORTHERN DISTRICT OF CALIFORNIA

11  NEO4J, INC., a Delaware corporation, and      CASE NO. 5:18-cv-7182 EJD
    NEO4J SWEDEN AB, a Swedish
12  corporation,
    Plaintiffs,                                   **DEFENDANTS AND**
13                                                 **COUNTERCLAIMANTS'**
    v.                                             **MEMORANDUM OF POINTS**
14                                                 **AND AUTHORITIES IN**
    PURETHINK LLC, a Delaware limited              **SUPPORT OF OPPOSITION TO**
15  liability company, IGOV INC., a Virginia       **'S MOTION FOR JUDGMENT**
    corporation, and JOHN MARK SUHY, an            **ON THE PLEADINGS**
16  individual,
    Defendants.
17                                                 Date: May 7, 2020
18  AND RELATED COUNTERCLAIMS                      Time: 9:00 a.m.
                                                   Dept. Courtroom 4, 5th floor
19                                                 Judge: Hon. Edward J. Davila
20

21

22  **I.      Introduction**

23        Defendants and Counterclaimants PURETHINK LLC, John Mark Suhy
24  and IGOV INC., ("Defendants") oppose Plaintiff and Counter defendant
25  Neo4J, Inc.'s ("Neo4j USA") motion for judgment on the pleadings pursuant

    Defendants' Opposition to Plaintiff's Rule 12(c) Motion                          1
    CASE NO. 5:18-cv-7182 EJD

1  to Federal Rule of Civil Procedure 12(c). Neo4j USA's motion seeks dismissal

2  of the Seventh and Ninth affirmative defenses in Defendants' Answer to

3  Second Amended Complaint (Dkt. No.55), John Mark Suhy's First and

4  Second Causes of Action in his Counterclaim (Dkt No.48), and the Tenth and

5  Eleventh Causes of Action in Purethink LLC and iGov Inc. Counterclaim.

6  (Dkt. No. 55.).

7      These two affirmative defenses and four causes of action boil down to two

8  discreet claims: 1) Neo4j USA committed fraud when applying for its Neo4J

9  trademark so the registration should be canceled and 2) Neo4j USA has

10  created confusion with its mark and failed to exercise adequate quality

11  controls over the Neo4J software product such that its trademark should be

12  abandoned.

13      On a procedural note, the reason the claims are dispersed over several

14  pleadings is when Purethink LLC and iGov Inc. filed their 12 (b)(6) motion,

15  John Mark Suhy had to file his answer and counterclaim. Neo4j USA and

16  Neo4j Sweden AB ("Neo4j Sweden") then filed a Second Amended Complaint

17  altering paragraph 112 in the First Amended Complaint removing and

18  waiving a breach of contract claim based on an unlawful restriction. All

19  defendants then answered the Second Amended Complaint and Purethink

20  LLC and iGov Inc. filed their First Amended Counterclaim. As a result,

21  defendants have one answer but two counterclaims.

22  //

23  //

24  //

25  //

Defendants' Opposition to Plaintiff's Rule 12(c) Motion
CASE NO. 5:18-cv-7182 EJD

2

**II.      Standard on a Rule 12(c) Motion**

In deciding a Rule 12(c) motion, the court applies the same standards applicable to a Rule 12(b)(6) motion. *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.* (9th Cir. 2011) 637 F3d 1047, 1054, fn. 4

**III.   Discussion**

**1.      Fraud on the PTO**

Neo4j USA's position that any prior use of the mark negates a fraud on the PTO claim even when the stated prior use was false has merit.  *Angel Flight of Georgia, Inc. v. Angel Flight America, Inc.* (11th Cir. 2008) 522 F.3d 1200. This is supported by the *Pony Exp. Courier Corp. of America v. Pony Exp. Delivery Service* (9th Cir. 1989) 872 F.2d 317, 319

The underpinning of this point is not supported by the genesis of the rule from 60 years ago:

"[A] misstatement of a date of first use in a registration cannot, in and of itself, afford a basis for cancelation *Philco Corp. v. Clary Corp.* (T.T.A.B. Nov. 20, 1959) 123 U.S.P.Q.420. The rule then is not that a party can lie about its date of first use to show a falsely extended date and avoid cancellation by showing any prior use. The rule is the false date fraud "in an of itself" does not support cancellation. Neo4j USA may have wanted to create an earlier date to ward off prior users or contestants. However, defendants do not presently have clear and convincing evidence of that point.

While it is doubtful a party may rely on there own website under the process of judicial notice to show prior use to support the motion, pursuant to Federal Rules of Civil Procedure Rule 1, Defendants concede the motion on this point.

Defendants' Opposition to Plaintiff's Rule 12(c) Motion
CASE NO. 5:18-cv-7182 EJD

3

**2.     Defendants have stated abandonment defenses and causes of action.**

Defendants raise claims and a defense that the Neo4J trademark should be abandoned. As Neo4J USA allows use of its mark confusingly and without quality control, the mark should be abandoned.

Neo4j USA asserts trademark infringement claims in this case based on the registered trademark "Neo4J". (Dkt. No. 50 at pgs. 21:24-24:3.) However, Defendants' use of the Neo4J trademark is a proper nominative fair use to 1) identify an open source software product they support called Neo4J, 2) use the mark for comparative advertising as permitted if not cherished by law (See 16 C.F.R. §14.15(b)) and 3) to advise others PureThink was no longer a partner with Neo4j USA. *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015). Neo4j USA does not challenge the nominative fair use defense in this motion.  Instead they challenge the trademark confusion and Naked License claims and defenses.

Neo4j USA argues that the facts alleged in the claims and defenses are not sufficient to establish abandonment of the Neo4j trademark under 15 U.S.C. §1127.  Neo4j USA trys to recast the defense as if the confusing mixed use has only confused defendants-"**them** (and not the general public)" (Dkt No. 60 pg.12:17). [emphasis in the original] The allegation is "there is confusion". (Dkt No. 55 pg.25:11) The confusion is caused by two companies using the same name on two software products licensed in entirely different manners. Under 15 U.S.C.A §1127, a trademark is "abandoned" "When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or

Defendants' Opposition to Plaintiff's Rule 12(c) Motion                                                    4
CASE NO. 5:18-cv-7182 EJD

1   services on or in connection with which it is used or otherwise to lose

2   significance as a mark."  The claims and defenses allege two aspects of Neo4j

3   USA's conduct that have resulted in abandonment of the Neo4j mark.

4       First, there is the fact that Neo4j Sweden uses Neo4j in its name and

5   calls its free open source product Neo4j as well.  This use started before Neo4j

6   USA existed. Neo4j USA argues that the confusion caused by the actions of

7   Neo4j Sweden is not sufficient to establish abandonment and, instead,

8   somehow, show the mark's strength and significance.  Those are arguments

9   over the interpretation of facts that are not appropriate for the motion.

10  Instead, under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007),

11  Defendants need only allege facts that could plausibly support the

12  abandonment of a mark.  Here, the allegation is that Neo4j Sweden is using

13  "Neo4j" as a product name for its open source software. (Dkt No. 55

14  pg.25:¶85) This use detracts from a trademark for Neo4j USA's commercial

15  software product with the same Neo4j product name.

16      Neo4j USA ignores the allegations entirely, instead focusing on an

17  argument that the multiple uses of Neo4j on different software license

18  structures somehow strengthen its mark.  Neo4j USA is free to present

19  evidence to dispute the fact that mixing its trademark up between two

20  companies with different licensing practice and different software quality

21  controls should lead to abandonment. But the factual dispute does not

22  support a Rule 12(c) motion.

23      The second reason for abandonment is under the Naked License

24  doctrine. The well established Naked License doctrine is based on the duty of

25  a trademark owner to control the quality of their trademarks. If the owner

1  does not control quality of products using the trademark, they have a Naked

2  License and the trademark is abandoned and the owner may not assert

3  trademarks rights. The leading case on this point is *FreecycleSunnyvale v.*

4  *Freecycle Network* (9th Cir. 2010) 626 F.3d 509, 515.

5      In *Freecycle*, the question on summary judgment was if the trademark

6  owner allowed use of the trademark with so few restrictions as to compel a

7  finding they engaged in naked licensing and abandoned the trademarks.

8  *Freecycle* at, 516. In *Freecycle*, the Court affirmed a summary judgment

9  ruling the trademark owner did not have adequate quality controls rendering

10  the trademark abandoned.

11      As this is a pleading motion, the issue is whether Defendants have

12  adequately stated a Naked License affirmative defense or claim under

13  *Freecycle*.

14      Defendants allege "As the Neo4j trademark is used and licensed as open

15  source software there is no ability to maintain quality control over the

16  software product called Neo4j as any licensees may modify combine the

17  software with other code and distributed or convey Neo4j without required

18  quality control by Neo4j USA." (Dkt No. 55 pg.25:¶85).

19      Neo4j USA incorrectly claims that its use of both the GPL and AGPL

20  shows its intent to control trademark rights (Dkt. No. 60 pg. 15:19-20). Yet

21  there are no allegations that Neo4j USA uses the GPL and AGPL.

22      In fact, the pleadings allege Neo4J Sweden is the owner of the Neo4j

23  software and is the licensor under the AGPL. Dkt. No. 55, pg. 3 ¶7. See Neo4j

24  Sweden's AGPLv.3 license attached as Exhibit A to Dkt. No. 55 ( The

25  software ("Software") is developed and owned by Neo4j Sweden AB). This

Defendants' Opposition to Plaintiff's Rule 12(c) Motion
CASE NO. 5:18-cv-7182 EJD

6

1   point is also confirmed in the Seventh Cause of Action of Neo4j Sweden's

2   pleading for removing **Neo4j Sweden's** copyright management information

3   on **Neo4J Sweden's Neo4j** software. (Dkt. No. 50, pg. 31¶131).

4       Defendants do not know if there is a dispute between Neo4j USA and

5   Neo4j Sweden on the ownership of Neo4j or licensing of the software, but

6   Defendants rely on the terms of the AGPL license which plainly contradicts

7   Neo4j USA's claim they are the AGPL licensor. There assertion, contradicted

8   by the pleadings and evidence does not support a judgment on the pleadings

9   motion.

10      That Neo4j USA claims it licenses the software under the AGPL when

11  it does not illustrates the confusion over the mark Neo4j USA creates. Neo4j

12  USA has allowed third parties to use its trademark without any quality

13  control over the software.

14      While anyone can use, modify, support, combine and convey the Neo4j

15  software (Dkt. No. 55 pg.3, ¶9), there is no trade mark quality control

16  provision in the AGPL. (Dkt. No. 55 Exhibit A).  The Neo4j AGPL license is

17  therefore a Naked License.

18      Concisely, the naked license is alleged since Neo4j USA does not control

19  quality of the Neo4j open source software because it has no license with the

20  open source software users. And Neo4j Sweden cannot control quality of the

21  Neo4j software because there are no quality control terms in its APGL

22  license.

23       Neo4j USA relies on *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261

24  F.3d 1188 (11 Cir.2001) asserting that a GPL/AGPL license established

25  adequate trademark quality controls. But *Planetary* is not a Naked License

Defendants' Opposition to Plaintiff's Rule 12(c) Motion                      7
CASE NO. 5:18-cv-7182 EJD

1  claim case. The issue in *Planetary* was whether a GPL license established

2  "use in commerce" required for a trademark. The defense claimed the

3  trademark owners' licensing the software under GPL abandons the

4  trademark. The Court disagreed that licensing software under a GPL cedes

5  all rights to the public domain. In footnote 16, the Court stated:

> Because a GNU General Public License requires licensees who
> wish to copy, distribute, or modify the software to include a
> copyright notice, the license itself is evidence of Darrah's efforts to
> control the use of the "CoolMail" mark in connection with the
> Software.

10  This footnote addresses control of ownership of a trademark to support a

11  "use in commerce" position. Requiring a **copyright** attribution under the

12  GPL/AGPL for a "use in commerce claim" has nothing to do with requiring

13  quality control under a Naked License analysis.

14  Because Neo4j USA has no license or quality control terms for the open

15  source Neo4j software, Neo4j USA failed its duty to maintain quality control

16  of the trademark. "The absence of an agreement with provisions restricting or

17  monitoring the quality of goods or services produced under a trademark

18  supports a finding of naked license." *FreecycleSunnyvale v. Freecycle*

19  *Network*, 626 F.2d 509, 516 (9th Cir. 2010).

20  Under the legal standards in *Freecycle*, defendants have properly stated

21  a Naked License claim and defense.

22  //

23  //

24  //

25  //

Defendants' Opposition to Plaintiff's Rule 12(c) Motion
CASE NO. 5:18-cv-7182 EJD

8

1

## IV.    Conclusion

2      Defendants concede the motion on the dismissal of the claims and

3  defenses based cancellation of the trademark by fraud. Because adequate

4  facts are alleged the motion on the Abandonment of Trademark claims and

5  defenses should be denied.

6

7      Dated: Febuary 25, 2020

8

9                              By:  /s/ Adron G. Beene
                               Adron W. Beene SB# 129040

10                             Adron G. Beene SB# 298088
                               Attorney At Law

11                             1754 Technology Drive, Suite 228
                               San Jose, CA 95110

12                             Tel: (408) 392-9233
                               Fax: (866) 329-0453

13                             adron@adronlaw.com

14                             Attorney for Defendants
                               PURETHINK LLC, a Delaware limited

15                             liability company, IGOV INC., a Virginia
                               corporation, and JOHN MARK SUHY

16

17

18

19

20

21

22

23

24

25

Defendants' Opposition to Plaintiff's Rule 12(c) Motion              9
CASE NO. 5:18-cv-7182 EJD