No. 24-5538
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

NEO4J, INC., NEO4J SWEDEN AB,

*Plaintiffs-Appellees*,

v.

JOHN MARK SUHY,

*Defendant-Appellant.*

On Appeal from the United States District Court
For the Northern District of California
No. 5:18-cv-07182-EJD
Hon. Edward J. Davila
_____

**APPELLEES' EXCERPTS OF RECORD**
**Volume 15 of 18**
_____

John V. Picone III (State Bar No. 187226)
jpicone@spencerfane.com
Jeffrey M. Ratinoff (State Bar No. 197241)
jratinoff@spencerfane.com
Jeremy A. Moseley (MT Bar No. 44830177)
jmoseley@spencerfane.com

*Attorneys for Appellees*
Neo4j, Inc. and Neo4j Sweden AB

1  John V. Picone III, Bar No. 187226
   jpicone@hopkinscarley.com
2  Jeffrey M. Ratinoff, Bar No. 197241
   jratinoff@hopkinscarley.com
3  Cary Chien, Bar No. 274078
   cchien@hopkinscarley.com
4  HOPKINS & CARLEY
   A Law Corporation
5  The Letitia Building
   70 South First Street
6  San Jose, CA  95113-2406

7  *mailing address:*
   P.O. Box 1469
8  San Jose, CA 95109-1469
   Telephone:    (408) 286-9800
9  Facsimile:    (408) 998-4790

10 Attorneys for Plaintiffs and Counter-Defendants
   NEO4J, INC. and NEO4J SWEDEN AB

11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14 NEO4J, INC., a Delaware corporation,        CASE NO.  5:18-cv-07182-EJD
   NEO4J SWEDEN AB, a Swedish
15 corporation,                                **PLAINTIFF NEO4J, INC.'S NOTICE OF
                                               MOTION AND MOTION FOR
16              Plaintiffs,                     JUDGEMENT ON THE PLEADINGS;
                                               MEMORANDUM OF POINTS AND
17        v.                                    AUTHORITIES IN SUPPORT THEREOF**

18 PURETHINK LLC, a Delaware limited           **[Fed. R. Civ. P. 12(c)]**
   liability company, IGOV INC., a Virginia
19 corporation, and JOHN MARK SUHY, an         Date:      May 7, 2020
   individual,                                 Time:      9:00 a.m.
20                                             Dept.:     Courtroom 4, 5th Floor
              Defendants.                       Judge:     Hon. Edward J. Davila
21
                                               **JURY TRIAL DEMANDED**
22 AND RELATED COUNTERCLAIMS.

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3428525.6
PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_3866

1    **TO ALL PARTIES AND COUNSEL OF RECORD:**

2    **PLEASE TAKE NOTICE** that on May 7, 2020, at 9:00 a.m., Courtroom 4, 5th Floor, at

3    the United States District Court located at 280 South First Street, San Jose, CA 95113 before the

4    Honorable Edward J. Davila, Plaintiff and Counter-Defendant Neo4j, Inc. ("Plaintiff" or "Neo4j

5    USA") will, and hereby does, move for a judgment on the pleadings pursuant to Federal Rule of

6    Civil Procedure 12(c) ("Rule 12(c)") on the First Cause of Action for Cancellation of Trademark

7    15 U.S.C. §1119 and Second Cause of Action for Declaratory Relief for Abandonment of

8    Trademark asserted in Defendant John Mark Suhy's Counterclaim (Dkt. No. 48), as well as the

9    Tenth Cause of Action for Declaratory Relief for Abandonment of Trademark and Eleventh

10   Cause of Action Cancellation of Trademark 15 U.S.C. §1119 asserted in the First Amended

11   Counterclaim filed by Defendants PureThink LLC and iGov Inc. (Dkt. No. 55).

12       Neo4j USA further will, and hereby does, move for a judgment on the pleadings as to

13   pursuant to Rule 12(c) on the substantively identical Seventh Affirmative Defense for

14   Cancellation of Trademark Procured by Fraud and Ninth Affirmative Defense for Naked License

15   Abandonment of Trademark asserted in the Answer to the Second Amended Complaint (Dkt. No.

16   54) by Defendants John Mark Suhy, PureThink LLC, and iGov Inc. (collectively "Defendants").

17       This Motion is made on the grounds that Defendants cannot prevail on their counterclaims

18   and affirmative defenses seeking the cancellation of Neo4j USA's Registered Trademark for

19   NEO4J® (Reg. No. 4,784,280) (the "NEO4J® mark") as a matter of law because the alleged

20   statements made in the application for registration do not legally amount to a material

21   misrepresentation USPTO that would allow for the cancellation.  This Motion is also made on the

22   grounds that Defendants cannot succeed on their counterclaims and affirmative defenses seeking

23   a declaration that the NEO4J® mark be abandoned under the doctrine of Naked License as a

24   matter of law on any grounds alleged therein.

25       This motion is based on this Notice of Motion and Motion, the attached Memorandum of

26   Points and Authorities, the accompanying Declaration of Jeffery M. Ratinoff and Request for

27   Judicial Notice, all records and pleadings on file in this action, and all other matters that the Court

28   may properly consider.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3428525.6                                        - 1 -
PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_3867

**REQUESTED RELIEF**

Neo4j USA respectfully requests that the Court dismiss, with prejudice, Defendants' claims and defenses that seek a declaration that Neo4j USA allegedly abandoned its NEO4j® mark based on the theory of naked licensing, and enter a judgment on the pleadings in favor of Neo4j USA on those claims and defenses.

Neo4j USA further respectfully requests that the Court dismiss, with prejudice, Defendants' claims and defenses that seek to cancel the NEO4j® mark based on fraud in the procurement thereof and enter a judgment on the pleadings in favor of Neo4j USA on those claims and defenses.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆PALO ALTO

842\3428525.6                                                    - 2 -
PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_3868

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.      STATEMENT OF ISSUES TO BE DECIDED ........................................................... 1

II.     INTRODUCTION ....................................................................................................... 1

III.    FACTUAL AND PROCEDURAL BACKGROUND................................................... 2

        A.      Neo4j USA and the NEO4J® mark ................................................................ 2

        B.      Neo4j USA Filed Suit Against Defendants for Violations of the Lanham
                Act................................................................................................................... 3

        C.      The Parties' First Round of Amended Pleadings............................................ 4

        D.      The Parties' Second Round of Amended Pleadings ........................................ 5

IV.     APPLICABLE LEGAL STANDARDS ON A RULE 12(C) MOTION ........................... 6

V.      LEGAL ARGUMENT ............................................................................................... 8

        A.      Defendants' Counterclaims and Affirmative Defense Seeking Cancellation
                of the NEO4J® Mark are Inadequately Pled ............................................... 8

        B.      Defendants' Counterclaims and Affirmative Defense Seeking Cancellation
                of the NEO4J® Mark Fail as a Matter of Law................................................ 10

        C.      Defendants' Counterclaim and Affirmative Defense for Abandonment of
                Trademark Fails as a Matter of Law .............................................................. 11

                1.      Defendants' "Confusion" Does Not Legally Constitute
                        Abandonment ...................................................................................... 12

                2.      Defendants' "Open Source Licensing" Theory Does Not Establish
                        Abandonment via Naked Licensing as a Matter of Law......................... 13

        D.      The Court Should Deny Defendants Leave to Amend........................................ 15

VI.     CONCLUSION ........................................................................................................ 17

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3428525.6

- i -

PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_3869

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Accuride Int'l, Inc. v. Accuride Corp.*,
  871 F.2d 1531 (9th Cir. 1989)......................................................................... 13

*AirWair Int'l Ltd.*,
  84 F.Supp.3d 943 (N.D. Cal. 2015) ............................................................ 8, 9

*Albrecht v. Lund*,
  845 F.2d 193 (9th Cir. 1988)......................................................................... 16

*Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*,
  522 F.3d 1200 (11th Cir. 2008)..................................................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ............................... 7

*Aureflam Corp. v. Pho Hoa Phat I, Inc.*,
  375 F.Supp.2d 950 (N.D. Cal. 2005) .......................................................... 8, 9

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*,
  289 F.3d 589 (9th Cir. 2002)......................................................................... 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S.Ct. 1955 (2007) ............................................................. 7

*In re Bose Corp.*,
  580 F.3d 1240 (Fed. Cir. 2009) ................................................................ 9, 10

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011)................................................................. 7, 8, 16

*Chavez v. United States*,
  683 F.3d 1102 (9th Cir. 2012)..................................................................... 6, 7

*ChriMar Sys., Inc v. Cisco Sys., Inc*,
  72 F.Supp.3d 1012 (N.D. Cal. 2014) ............................................................. 8

*Colt Industries Operating Corp. v. Olivetti Controllo Numerico S.P.A*,
  221 U.S.P.Q. 73, 1983 WL 51834 (T.T.A.B. 1983) .................................... 11

*eCash Techs., Inc. v. Guagliardo*,
  127 F.Supp.2d 1069 (C.D. Cal. 2000) ........................................................... 8

*Epstein v. Wash. Energy Co.*,
  83 F.3d 1136 (9th Cir. 1996)........................................................................... 7

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3428525.6

- ii -

**SER_3870**

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    *Fleming v. Pickard,*

4        581 F.3d 922 (9th Cir. 2009)............................................................. 6, 8

5    *Harris v. Cnty. of Orange,*
         682 F.3d 1126 (9th Cir. 2012)................................................................ 15

6
     *Hokto Kinoko Co. v. Concord Farms, Inc.,*
7        738 F.3d 1085 (9th Cir. 2013)............................................................. 8, 9

8    *Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.,*
         No. C 12-05523 WHA, 2013 WL 4519805 (N.D. Cal. Aug. 23, 2013) ................................... 7

9
     *Missouri ex rel. Koster v. Harris,*
10       847 F.3d 646 (9th Cir. 2017)................................................................ 16

11   *Low v. LinkedIn Corp.,*
12       900 F.Supp.2d 1010 (N.D. Cal. 2012) ................................................... 16

13   *Minor v. FedEx Office & Print Servs., Inc.,*
         78 F.Supp.3d 1021 (N.D. Cal. 2015) ..................................................... 17

14
     *Moran v. Peralta Community College Dist.,*
15       825 F.Supp. 891 (N.D. Cal. 1993) ........................................................ 6

16   *Perez v. Wells Fargo & Co.,*
17       75 F.Supp.3d 1184 (N.D. Cal. 2014) ..................................................... 6

18   *Planetary Motion, Inc. v. Techsplosion, Inc.,*
         261 F.3d 1188 (11th Cir. 2001)........................................................ 14, 15

19
     *Pony Exp. Courier Corp. of Am. v. Pony Exp. Delivery Serv.,*
20       872 F.2d 317 (9th Cir. 1989)........................................................ 10, 11

21   *Ramachandran v. City of Los Altos,*
22       359 F.Supp.3d 801 (N.D. Cal. 2019) ..................................................... 8

23   *Ross v. U.S. Bank Nat. Ass'n,*
         542 F.Supp.2d 1014 (N.D. Cal. 2008) ..................................................... 6

24
     *Sprewell v. Golden State Warriors,*
25       266 F.3d 979 (9th Cir. 2001)............................................................. 8

26   *Spy Optic, Inc. v. Alibaba.Com, Inc.,*
         163 F.Supp.3d 755 (C.D. Cal. 2015)...................................................... 8

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3428525.6

- iii -

PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

## TABLE OF AUTHORITIES
### (continued)

Page

*Standard Oil Co. of N. M. v. Standard Oil Co. of Cal.*,
    56 F.2d 973 (10th Cir. 1932)....................................................................... 13

*Strigliabotti v. Franklin Res., Inc.*,
    398 F.Supp.2d 1094 (N.D. Cal. 2005) ........................................................ 6

*Teeter-Totter, LLC v. Palm Bay Int'l, Inc.*,
    344 F.Supp.3d 1100 (N.D. Cal. 2018) ...................................................... 11

*Telesaurus VPC, LLC v. Power*,
    623 F.3d 998 (9th Cir. 2010)..................................................................... 16

*Weisbuch v. Cty. of L.A.*,
    119 F.3d 778 (9th Cir. 1997)..................................................................... 17

*Yetter v. Ford Motor Co.*,
    No. 19-CV-00877-LHK, 2019 WL 7020348 (N.D. Cal. Dec. 20, 2019) ................ 7

**Statutes**

15 U.S.C. § 1114 ............................................................................................... 3

15 U.S.C. § 1119 ................................................................................... 1, 2, 8, 17

15 U.S.C. § 1125(a) .......................................................................................... 3

15 U.S.C. § 1127 .................................................................................... *passim*

15 U.S.C. § 1055 ............................................................................................. 10

Cal. Bus. Prof. Code §§ 17200 *et seq.* ............................................................ 3

Cal. Penal Code § 632 ...................................................................................... 3

Cal. Penal Code § 637.2 ................................................................................... 3

Digital Millennium Copyright Act (DMCA) § 103, 17 U.S.C. § 1201 ............... 4

Lanham Act, 15 U.S.C. §§ 1051 *et seq.* ............................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 9 .............................................................................................. 10

Fed. R. Civ. P. 9(b) .................................................................................. 1, 7, 8

Fed. R. Civ. P. 12(b)(6) ........................................................................... 6, 7, 8

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3428525.6

- iv -

**SER_3872**

**TABLE OF AUTHORITIES**
(continued)

Page

Fed. R. Civ. P. 12(c)..................................................................................................... 6, 7

McCarthy on Trademarks and Unfair Competition (2d ed.1984) § 31:21.................................... 10

Trademark Manual of Examining Procedure § 903.05.................................................. 10

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3428525.6                                        - v -
PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Defendants' counterclaims and defenses seeking cancellation of the NEO4j® mark based on fraud in the procurement thereof is adequately plead to satisfy Federal Rule of Civil Procedure 9(b)'s heighted requirements for pleading the circumstances of the alleged fraud.

2.      Whether Defendants' counterclaims and defenses seeking cancellation of the NEO4j® mark are otherwise legally viable defenses based on fraud in the procurement thereof since it is indisputable that Neo4j was using the mark prior to the date it filed an application to register that mark.

3.      Whether Defendants' theory of naked licensing amounts legally viable counterclaim or defense for abandonment of trademark under the Lanham Act.

4.      Whether Defendants' theory of Neo4j USA's use of the NEO4J® mark as a trade name and trademark amounts legally viable counterclaim or defense for abandonment of trademark under the Lanham Act.

5.      Whether the Court should grant Defendant leave to amend any of the foregoing counterclaims or defenses.

**II.    INTRODUCTION**

Plaintiff and Counter-Defendant Neo4j, Inc. ("Neo4j USA") filed this action over a year ago against Defendants PureThink LLC, iGov Inc. and John Mark Suhy (collectively "Defendants") to halt their on-going willful infringement of Neo4j USA's federally registered NEO4J® mark.   In response, Defendants assert counterclaims and an affirmative defense seeking to cancel the NEO4J® mark pursuant to 15 U.S.C. § 1119 due to Neo4j USA allegedly claiming a date of first use prior to its incorporation.[1]  However, Defendants cannot seek cancelation on that basis as a matter of law.  The Ninth Circuit has made clear that a trademark applicant's claimed

---

[1] Neo4j USA denies that the use dates stated in the application for the NEO4J® Mark are inaccurate.  Defendants ignore that this application indicated that these dates were based on use by Neo4j's predecessor-in-interest whose use inured to the benefit of Neo4j USA.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE •PALO ALTO

842\3428525.6                                           - 1 -
PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_3874

1   date of first use *cannot constitute a material misrepresentation so long as the first use in fact*

2   *preceded the application date*.  Defendants' original and amended pleadings have never alleged

3   that Neo4j USA failed to use the NEO4J® mark when it filed the application.  Nor could they

4   because judicially noticeable facts make clear that Neo4j USA was using the NEO4J® mark at

5   least three years prior to such filing.   As a result, Defendants have not – and cannot – state a

6   claim for cancelation of the NEO4J® mark upon which relief can be granted.

7   Defendants alternatively seek a declaration via their counterclaims and an identical

8   affirmative defense that Neo4j USA abandoned the NEO4J® mark by (1) creating "confusion" by

9   using it as both a company and a trademark for software products; and (2) distributing NEO4j®-

10   branded software via an open source license, both of which allegedly amount to naked licensing.

11   Neither of these grounds meet the Lanham Act's specific definitions of abandonment under 15

12   U.S.C. § 1127, which requires either non-use or a course of conduct by the mark holder that

13   causes the mark to become generic or otherwise lose significance as a mark.   In fact, these

14   abandonment theories run contrary to established case law, which holds that it is permissible to

15   use a mark as both a trade name and trademark and the use of open source license shows an *intent*

16   *to control* trademark rights rather than an intent relinquishing them.  Consequently, Defendants'

17   abandonment counterclaims and affirmative defense fail as a matter of law.

18   Defendants' counterclaims claims and defenses that seek to cancel the NEO4j® pursuant

19   to 15 U.S.C. §1119 and a declaration of abandonment pursuant to 15 U.S.C. § 1127 have gone

20   through several amendments.  Yet, none of these amendments changed their foundational theories

21   which render them fatally defective.  Accordingly, the Court should enter a judgment on the

22   pleadings in favor of Neo4j USA on those claims and defenses and dismiss them with prejudice.

23   **III.   FACTUAL AND PROCEDURAL BACKGROUND**

24   **A.   Neo4j USA and the NEO4J® mark**

25   On or about July 7, 2011, Neo4j USA was incorporated as "Neo Technology, Inc." in

26   Delaware.  Dkt. No. 55 at ¶¶ 5, 91; *see also* Declaration of Jeffrey M. Ratinoff in Support of

27   Neo4j Inc.'s Motion for Judgment on the Pleadings ("Ratinoff Decl."), Exh. 1; Request for

28   Judicial Notice in Support of Neo4j Inc.'s Motion for Judgment on the Pleadings ("RJN"), ¶ 1.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆PALO ALTO

842\3428525.6                                        - 2 -
PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_3875

1    On May 17, 2017, Neo Technology, Inc. officially changed its name to "Neo4j Inc."  Dkt. No. 55

2    at ¶ 88; *see also* Ratinoff Decl., Exh. 2; RJN, ¶ 2.

3        On April 30, 2014, Neo4j USA filed an application to register "Neo4j" as a trademark in

4    covering goods and services in IC 009, IC 035, IC 041 and IC 045.  Ratinoff Decl., Exh. 3; RJN,

5    ¶ 3.  Neo4j USA claimed first use of the NEO4J® mark in June 2006 and first use in commerce in

6    May 2007.  *Id.*

7        **B.    Neo4j USA Filed Suit Against Defendants for Violations of the Lanham Act**

8        On November 28, 2018, Neo4j USA filed suit against PureThink and its successor-in-

9    interest iGov, along with their founder John Mark Suhy for (1) trademark infringement 15 U.S.C.

10   § 1114; (2) false designation of origin and false advertising in violation of 15 U.S.C. § 1125(a);

11   (3) federal unfair competition in violation of 15 U.S.C. § 1125(a); (4) state unfair competition in

12   violation of Cal. Bus. Prof. Code §§ 17200 et seq.; (5) breach of the Partner Agreement; and (6)

13   invasion of privacy in violation of Cal. Penal Code §§ 632, 637.2.  *See* Dkt. No. 1.  Neo4j USA's

14   Lanham Acts claims were based, *inter alia*, on Defendants' unauthorized use of the NEO4J®

15   mark in conjunction with the sale and advertising of Defendants' graph database solutions and

16   software and related support services.  Their alleged violations also include falsely suggesting

17   Neo4j USA's authorization and/or sponsorship of Defendants' products and services and

18   misleading consumers regarding their prior contributions to NEO4J®-branded products.

19       On February 9, 2019, PureThink and iGov filed their original counterclaim, which sought

20   declaratory relief that Neo4j USA had allegedly abandoned the NEO4J® mark under the doctrine

21   of naked licensing:

22           There is a present controversy where NEO4J, Inc. claims it has the right to
             use and enforce the Neo4j trademark. PureThink and iGOV claim there is
23           confusion whether Neo4j is a company name trademark or product name
             trademark. This confusion is exacerbated by Neo4j Sweden AB' open source
24           license for a product called Neo4j. Neo4j Sweden AB's license states: "The
             software ("Software") is developed and owned by Neo4j Sweden AB
25           (referred to in this notice as "Neo4j").… Neo4j Sweden AB asserts they own
             the software-and not plaintiff- and they use Neo4j name as part of the
26           company name and call the open source software product Neo4j too. As the
             Neo4j trademark is used and licensed as open source software there is no
27           ability to maintain quality control over the software product called Neo4j as

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • PALO ALTO

842\3428525.6                              - 3 -
PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_3876

> any licensees may modify combine the software with other code and distributed or convey Neo4j without required quality control by NEO4J, Inc.
>
> * * *
>
> PureThink and iGOV request declaratory relief that the Neo4j registered trademark be abandoned under the doctrine of Naked License.

Dkt. No. 22 at ¶¶ 56-57.  The next day, all three defendants filed their answer, which asserted an affirmative defense for "Naked License Abandonment of Trademark" based on the same facts and theories as the aforementioned counterclaim.  *See* Dkt. No. 23 at 13:16-14:3.

### C.     The Parties' First Round of Amended Pleadings

After the parties engaged in discovery, Neo4j USA filed its First Amended Complaint ("FAC") on October 23, 2019.  *See* Dkt. Nos. 35, 37.  The FAC provided, *inter alia*, additional and more recent examples of Defendants' continuing violations of the Lanham Act.  *Compare* Dkt. No. 1 at ¶¶ 33-43 *and* Dkt. No. 37 at ¶¶ 39-67.  The FAC also added Neo4j Sweden AB as a plaintiff, which in turn asserted claims against Suhy for violations of the DMCA.  In response, PureThink and iGov filed a motion to dismiss a cause of action for breach of contract on grounds unrelated to the Lanham Act claims.  *See* Dkt. No. 49.

On November 13, 2019, Suhy filed his answer to the FAC and his counterclaim wherein he asserted the same "Naked License Abandonment of Trademark" affirmative defense (*compare* Dkt. No. 47 at 19:7-20 *and* Dkt. No. 23 at 13:16-14:3) and sought declaratory relief for "Abandonment of Trademark" (*compare* Dkt. No. 48 at ¶¶ 8-10 *and* Dkt. No. 22 at ¶¶ 56-57) as previously asserted by PureThink and iGov.  Suhy also asserted a new counterclaim, solely based on the following allegations:

> The Registered Trademark for NEO4J, Reg. No. 4,784,280, was procured by fraud as the representation to the PTO was that Neo Technology (a Delaware corporation) (changed to Neo4J, Inc.) first used the trademark in 6-4-2006 and in commerce in 5-28-2007.
>
> These statements are knowlingly [sic] false and material to the decision to grant the registration application as Neo Technology did not exist on those dates as the company was formed 7-7-2011 in Delaware under File Number 5007564.
>
> Because the registration was procured by fraud, the registration to the NEO4J trademark should be cancelled pursuant to 15 U.S.C. §1119.

842\3428525.6                                      - 4 -
PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1   Dkt. No. 48 at ¶¶ 4-7.  Suhy also asserted an identical affirmative defense in his answer based on

2   the same conclusory allegations.  *See* Dkt. No. 47 at 18:15-24.

3       **D.      The Parties' Second Round of Amended Pleadings**

4           In lieu of filing an opposition to the motion to dismiss, Plaintiffs filed their Second

5   Amended Complaint ("SAC") clarifying the allegations that PureThink and iGov had taken issue

6   with on November 25, 2019.  *See* Dkt. No. 50.  On December 9, 2019 – just over a year after

7   Neo4j USA filed this action – PureThink and iGov then filed their First Amended Counterclaim,

8   which sought declaratory relief for trademark abandonment based on the same facts purporting to

9   establish naked licensing as in their prior pleadings:

10              There is a present controversy where NEO4J USA claims it has the right to
                use and enforce the Neo4j trademark. PureThink, iGov and John Mark Suhy
11              claim there is confusion whether Neo4j is a company name trademark or
                product name trademark. This confusion is exacerbated by NEO4J
12              SWEDEN' open source license for a product called Neo4j. NEO4J
                SWEDEN's license states: "The software ("Software") is developed and
13              owned by NEO4J SWEDEN (referred to in this notice as "Neo4j").… NEO4J
                SWEDEN asserts they own the software-and not NEO4J Inc.- and they use
14              Neo4j name as part of the company name and call the open source software
                product Neo4j too. As the Neo4j trademark is used and licensed as open
15              source software there is no ability to maintain quality control over the
                software product called Neo4j as any licensees may modify combine the
16              software with other code and distributed or convey Neo4j without required
                quality control by NEO4J USA.
17

18                                                 * * *

19              PureThink, iGov and John Mark Suhy request declaratory relief that the Neo4j
                registered trademark be abandoned under the doctrine of Naked License.
20

21   Dkt. No. 55 at ¶¶ 85-86.

22          They also asserted a counterclaim for cancellation of the NEO4J® mark substantially

23   based on the same facts as the one asserted by Suhy:

24              The Registered Trademark for NEO4J, Reg. No. 4,784,280, was procured
                by fraud as the representation to the PTO was that NeoTechnology (a
25              Delaware corporation) (changed to Neo4J, Inc.) first used the trademark in
                6-4-2006 and in commerce in 5-28-2007.
26
                These statements are knowingly [sic] false and material to the decision to
27              grant the registration application. Neo Technology, the predecessor to
                NEO4J USA did not exist on 6-4-2006 or 5-28-2007.
28

842\3428525.6                                    - 5 -
PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1
2
> Neo Technology, the predecessor to NEO4J US was first formed 7-7-2011 in Delaware under File Number 5007564.

3
4
> Because the registration was procured by fraud, PureThink, iGov and John Mark Suhy demand the registration to the NEO4J trademark be cancelled pursuant to 15 U.S.C. §1119.

5   Dkt. No. 55 at ¶¶ 88-92.

6   On December 9, 2019, all three Defendants filed an answer to the SAC, which reasserted

7   the two foregoing counterclaims as affirmative defenses.  Dkt. No. 54 at 18:20-19:3, 19:12-25.

8   The pleadings in this case are now effectively closed, and as discussed below, Defendants'

9   abandonment and cancellation counterclaims and defenses fail as a matter of law and that no

10  further amendments can save them from this Court from entering a judgment on the pleadings and

11  dismissing them with prejudice.

12  **IV.     APPLICABLE LEGAL STANDARDS ON A RULE 12(C) MOTION**

13  Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") provides that "[a]fter the pleadings

14  are closed—but early enough not to delay trial—a party may move for judgment on the

15  pleadings." Fed. R. Civ. P. 12(c).  Similar to Rule 12(b)(6) motion, a Rule 12(c) motion

16  challenges the legal sufficiency of the opposing party's pleadings.  *See Chavez v. United States*,

17  683 F.3d 1102, 1108 (9th Cir. 2012); *see also Perez v. Wells Fargo & Co.*, 75 F.Supp.3d 1184,

18  1187 (N.D. Cal. 2014).  "Under either provision, a court must determine whether the facts alleged

19  in the complaint, taken as true, entitle the plaintiff to a legal remedy, and dismiss the claim or

20  enter judgment on the pleadings if the complaint fails to state a legally sufficient claim."  *Ross v.*

21  *U.S. Bank Nat. Ass'n*, 542 F.Supp.2d 1014, 1023 (N.D. Cal. 2008); *see also Fleming v. Pickard*,

22  581 F.3d 922, 925 (9th Cir. 2009) (recognizing "[j]udgment on the pleadings is properly granted

23  when there is no issue of material fact in dispute, and the moving party is entitled to judgment as

24  a matter of law").

25  It is common for courts to grant Rule 12(c) motions where a moving party seeks judgment

26  on the pleadings with respect to individual causes of action.  *See Strigliabotti v. Franklin Res.,*

27  *Inc.,* 398 F.Supp.2d 1094, 1097 (N.D. Cal. 2005); *see also Moran v. Peralta Community College*

28  *Dist.*, 825 F.Supp. 891, 893 (N.D. Cal. 1993) (recognizing that "[c]ourts have discretion to grant

842\3428525.6                                                    - 6 -

1    leave to amend in conjunction with 12(c) motions, and may dismiss causes of action rather than

2    grant judgment"). Likewise, courts may grant Rule 12(c) motions aimed at answers and dismiss

3    individual affirmative defenses. *Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*,

4    No. C 12-05523 WHA, 2013 WL 4519805, at *1 (N.D. Cal. Aug. 23, 2013) (granting trademark

5    holder's motion for judgment on the pleadings with respect to three of defendant's affirmative

6    defenses).

7             In deciding a Rule 12(c) motion, courts use the same standards articulated in *Twombly* and

8    *Iqbal* as those applied to a Rule 12(b)(6) motion. *Chavez*, 683 F.3d at 1108-1109. Thus, the

9    Court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to

10   'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129

11   S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127

12   S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

13   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

14   alleged." *Iqbal*, 556 U.S. at 678.

15            However, "the tenet that a court must accept as true all of the allegations contained in the

16   complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678–79. Indeed, "a plaintiff's

17   obligations to provide the grounds of his entitlement to relief requires more than labels and

18   conclusions, and a formulaic recitation of the elements of a cause of action will not do."

19   *Twombly*, 550 U.S. at 555 (citations and quotations omitted); *accord Iqbal*, 555 U.S. at 677–80;

20   *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("conclusory allegations of law

21   and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a

22   claim"). A court thus discounts conclusory statements, which are not entitled to the presumption

23   of truth, before determining whether a claim is plausible. *Iqbal*, 556 U.S. at 678.

24            A party may also challenge claims and defenses sounding in fraud pursuant to a Rule

25   12(c) motion on the grounds they fail to meet the heightened pleading requirements of Federal

26   Rules of Civil Procedure Rule 9(b). *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637

27   F.3d 1047, 1054 (9th Cir. 2011); *Yetter v. Ford Motor Co.*, No. 19-CV-00877-LHK, 2019 WL

28   7020348, at *5 (N.D. Cal. Dec. 20, 2019). Thus, a plaintiff "must state with particularity the

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3428525.6
- 7 -
PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

SER_3880

1   circumstances constituting fraud" to survive a motion for judgment on the pleadings.  Fed. R. Civ.

2   P. 9(b); *see Cafasso,* 637 F.3d at 1054-1055.

3         In deciding whether to grant a motion for judgment on the pleadings, the Court accepts all

4   material facts alleged as true and construes them in the light most favorable to the non-moving

5   party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  As with a Rule 12(b)(6) motion,

6   the Court may also consider documents that are attached to the complaint, incorporated by

7   reference when their authenticity is not contested, or are otherwise properly the subject to judicial

8   notice.  *See Ramachandran v. City of Los Altos*, 359 F.Supp.3d 801, 810 (N.D. Cal. 2019); *see*

9   *also Spy Optic, Inc. v. Alibaba.Com, Inc*., 163 F.Supp.3d 755, 764 (C.D. Cal. 2015).  However,

10  the Court need not accept as true allegations contradicted by judicially noticeable facts, or by

11  exhibits attached to or incorporated in the pleading.  *Sprewell v. Golden State Warriors*, 266 F.3d

12  979, 988 (9th Cir. 2001); *accord ChriMar Sys., Inc v. Cisco Sys., Inc*, 72 F.Supp.3d 1012, 1016

13  (N.D. Cal. 2014) (citing same in context of a Rule 12(c) motion).

14  **V.    LEGAL ARGUMENT**

15      **A.    Defendants' Counterclaims and Affirmative Defense Seeking Cancellation of**
                **the NEO4J® Mark are Inadequately Pled**

16

17        Suhy's first counterclaim (Dkt. No. 48 at ¶¶ 4-7), PureThink and iGov's eleventh

18  counterclaim (Dkt. No. 55 at ¶¶ 88-92) and Defendants' seventh affirmative defense (Dkt. No. 54

19  at 18:20-19:3) collectively seek the cancellation of Neo4j USA's federally registered trademark,

20  NEO4J® pursuant to 15 U.S.C. §1119.  "Fraud in procurement of a trademark registration may be

21  raised as a ground for cancellation in civil litigation, in which case it may function as a 'defense'

22  to a claim of trademark infringement." *eCash Techs., Inc. v. Guagliardo*, 127 F.Supp.2d 1069,

23  1079 (C.D. Cal. 2000); *accord AirWair Int'l Ltd*., 84 F.Supp.3d 943, 951–52 (N.D. Cal. 2015)

24  (quoting same.  In asserting their defense of fraud in the procurement, however, Defendants bear

25  the "heavy burden of demonstrating that a trademark should be cancelled." *Hokto Kinoko Co. v.*

26  *Concord Farms, Inc.,* 738 F.3d 1085, 1097 (9th Cir. 2013).  Thus, Defendants **must** meet the

27  heightened pleading requirements imposed by Federal Rule of Civil Procedure 9(b).  *Aureflam*

28  *Corp. v. Pho Hoa Phat I, Inc.*, 375 F.Supp.2d 950, 953 (N.D. Cal. 2005) (Rule 9(b)'s heightened

842\3428525.6                               - 8 -

PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1   pleading requirement applies to claims of fraud in the procurement of trademarks).

2   To allege a claim of cancellation based on fraud in the procurement, Defendants must

3   allege with particularity: "(1) a false representation regarding a material fact; (2) the registrant's

4   knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance

5   upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5)

6   damages proximately caused by that reliance." *Hokto Kinoko*, 738 F.3d at 1097 (*citing Robi v.*

7   *Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990)); *accord AirWair Int'l Ltd.*, 84 F.Supp.3d

8   at 952 (quoting same).   A false representation in the original trademark application may be

9   grounds for cancellation only if all five of the above requirements are met. *Id.*

10   These counterclaims and defenses are solely premised on the following allegations:

11   The [NEO4J®] mark was procured by fraud as the representation to the
      PTO was that Neo Technology (a Delaware corporation) (changed to
12   Neo4J, Inc.) first used the trademark in 6-4-2006 and in commerce in 5-28-
      2007.
13
      These statements are knowingly [sic] false and material to the decision to
14   grant the registration application.

15   Neo Technology, the predecessor to NEO4J USA did not exist on 6-4-2006
      or 5-28-2007.
16
      Neo Technology, the predecessor to NEO4J US was first formed 7-7-2011
17   in Delaware under File Number 5007564.

18   Because the registration was procured by fraud, PureThink, iGov and John
      Mark Suhy demand the registration to the NEO4J trademark be cancelled
19   pursuant to 15 U.S.C. §1119.

20   Dkt. No. 55 at ¶¶ 88-92; *see also* Dkt. No. 48 at ¶¶ 4-7; Dkt. No. 54 at 18:20-19:3.

21   The conclusory allegations fall well short of providing Neo4j USA with fair notice of an

22   alleged *material* misrepresentation and facts establishing Neo4j's knowledge and intent, reliance

23   and any alleged damage to GFI. *See Aureflam*, 375 F.Supp.2d at 953 (recognizing that to

24   "demonstrate fraud, a pleading must identify the 'time, place and nature of the alleged fraudulent

25   activities'"); *see also In re Bose Corp.*, 580 F.3d 1240, 1243-45 (Fed. Cir. 2009) (holding that

26   party seeking to cancel a trademark registration based on fraud must allege that defendant

27   "knowingly [made] false, material representations of fact in connection with his application").

28   Simply alleging an inconsistency between the date of Neo4j USA's incorporation and the date of

842\3428525.6                                  - 9 -

1    first use stated by an unidentified person in the application for the NEO4J® mark does **not**

2    establish any knowing and intentional act to deceive.  *See id.* ("there is a material legal distinction

3    between a 'false' representation and a 'fraudulent' one, the latter involving an intent to deceive,

4    whereas the former may be occasioned by a misunderstanding, an inadvertence, a mere negligent

5    omission, or the like").  There are also no allegation that Defendants have suffered any damages

6    as a result from the purported misrepresentation.  As such, Defendants fail to assert a legally

7    viable cancellation claim or defense based on any alleged fraud in the procurement of the

8    NEO4J® mark.[2]

9        **B.    Defendants' Counterclaims and Affirmative Defense Seeking Cancellation of
            the NEO4J® Mark Fail as a Matter of Law**

10

11        Aside from their failure to meet Rule 9's particularity requirements, Defendants'

12    cancellation counterclaims and affirmative defense fail to state a ***legally viable*** claim for

13    trademark cancellation because the alleged misstatement of the date of first use in commerce of

14    the NEO4J® mark is not material to the registration.  The Ninth Circuit has held that in order "to

15    prove fraud that would result in the cancellation of [a federally registered] mark, there would

16    have to be a material misrepresentation in the affidavit on the basis of which the mark was

17    registered."  *Pony Exp. Courier Corp. of Am. v. Pony Exp. Delivery Serv.*, 872 F.2d 317, 319 (9th

18    Cir. 1989).  In this regard, a trademark applicant's claimed date of first use cannot constitute a

19    material misrepresentation ***so long as the first use in fact preceded the application date***.  *Id.*;

20    *accord McCarthy on Trademarks and Unfair Competition* (2d ed.1984) § 31:21 (citing same);

21    _____

22    [2] Although it is not necessary to reach the conclusion that Defendants' cancellation claims and
       defense fails as a matter of law, it is worth noting that the claimed dates of first use for the

23    NEO4J® Mark are accurate because they were based on use by Neo4j's predecessor-in-interest
       whose use properly inured to the benefit of Neo4j USA.  *See* 15 U.S. Code § 1127 ("The term

24    'related company' means any person whose use of a mark is controlled by the owner of the mark
       with respect to the nature and quality of the goods or services or in connection with which the

25    mark is used."); 15 U.S.C. § 1055 ("Where a [] mark sought to be registered is [] used
       legitimately by related companies, such use shall inure to the benefit of the registrant or applicant

26    for registration, and such use shall not affect the validity of such mark or of its registration….");
       *see also* Trademark Manual of Examining Procedure § 903.05 ("If the first use anywhere or the

27    first use in commerce was by a predecessor in title to the applicant, or by a related company of

28    the applicant [] and the use inures to the benefit of the applicant….").

842\3428525.6                                                     - 10 -
PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1   *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1210 (11th Cir. 2008)

2   ("misstatement of the date of first use in the application is not fatal to the securing of a valid

3   registration as long as there has been valid use of the mark prior to the filing date").

4        Here, Defendants do not allege Neo4j USA failed to use the NEO4J® mark in commerce

5   ***prior to the filing date of the application for that mark***.  Nor can they do so.  It is an

6   indisputable, judicially noticeable fact that Neo4j USA was using the NEO4J® mark in interstate

7   commerce before it filed the application for that mark.  For example, Neo4j USA was actively

8   offering licenses to NEO4J®-branded software via its website shortly after incorporating in July

9   2011.  *See* Ratinoff Decl., Exhs. 4-5; RJN, ¶ 4.  Neo4j USA was also doing so immediately before

10   it filed the application for the NEO4J® mark in April 2014.  *See* Ratinoff Decl., Exhs. 6-7; RJN,

11   ¶ 4.

12        Any alleged misstatement of the date of first use by Neo4j USA is therefore immaterial

13   and cannot be a basis for canceling the NEO4J® mark.  *See Pony Exp.*, 872 F.2d at 319 (9th Cir.

14   1989); *accord Teeter-Totter, LLC v. Palm Bay Int'l, Inc.*, 344 F.Supp.3d 1100, 1109 (N.D. Cal.

15   2018) (citing same) (dismissing trademark cancellation counterclaim because "allegations that

16   [the trademark applicant] made false statements about [its] date of first use in commerce are not

17   sufficient to state a claim ... for fraud to cancel [Plaintiff's trademark] registration")*; see also Colt*

18   *Industries Operating Corp. v. Olivetti Controllo Numerico S.P.A,* 221 U.S.P.Q. 73, 1983 WL

19   51834, at *3 (T.T.A.B. 1983) ("The only fraud that could be perpetrated on the Office with

20   respect to false dates of first use in an application would be where no use was made as of the

21   filing date of the application.").  Accordingly, Suhy's first counterclaim, PureThink and iGov's

22   eleventh counterclaim, and Defendants' seventh affirmative defense that collectively seek the

23   cancellation of Neo4j USA's federally registered NEO4J® mark fail to state a claim or defense

24   upon which relief may be granted.

25      **C.**    **Defendants' Counterclaim and Affirmative Defense for Abandonment of**

26            **Trademark Fails as a Matter of Law**

27        Suhy's second counterclaim (Dkt. No. 48 at ¶¶ 9-10), PureThink and iGov's tenth

28   counterclaim (Dkt. No. 55 at ¶¶ 85-86) and Defendants' ninth affirmative defense (Dkt. No. 54 at

842\3428525.6            - 11 -

PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

19:12-25) collectively seek a declaration that Neo4j abandoned the NEO4J® mark pursuant to the doctrine of "naked licensing."   Under the Lanham Act, a mark can only be deemed "abandoned" when either of the following occurs: "(1) When its use has been discontinued with intent not to resume such use," or "(2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark." 15 U.S.C. § 1127.  Naked licensing falls under the second definition of abandonment because it is an "uncontrolled" license where the licensor "fails to exercise adequate quality control over the licensee." *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 595-96 (9th Cir. 2002).  The proponent of a naked license theory "faces a stringent standard" of proof. *Id.* at 596.

Defendants' naked licensing counterclaims and defense appear to be based on two separate theories of alleged abandonment of the NEO4J® mark.  As discussed below, neither theory is legally viable as a counterclaim or defense under the 15 U.S.C. § 1127.

### 1.    Defendants' "Confusion" Does Not Legally Constitute Abandonment

Defendants' first abandonment theory is based on the conclusory allegation that the use of the NEO4J name in multiple contexts, namely as a "product name trademark" and "company name trademark" has confused ***them*** (and not the general public), which is allegedly "exacerbated" by Neo4j Sweden being the owner of the copyright for the NEO4J®-branded software.  *See* Dkt. No. 48 at 3:10-12; Dkt. No. 55 at 24:10-18; *see also* Dkt. No. 54 at 19:13-21. This alleged "confusion" is not a legally cognizable basis under the Lanham Act to establish Neo4j USA's abandonment of the NEO4J® mark.  The allegation shows ***use*** of the mark, and therefore does not fit the first definition of abandonment under 15 U.S.C. § 1127, which requires discontinuation of use with an intent not to resume such use.  Since Defendants do not alleged any discontinuation by Neo4j USA, their "confusion" theory is not a viable means to seek a declaratory judgment that the NEO4J® mark has been abandoned by Neo4j USA.

The "confusion" allegation also does not fit the second definition of abandonment under 15 U.S.C. § 1127 because it has nothing to do with naked licensing, or even licensing in a general sense.  There are no allegations that the use of the NEO4J® mark as both a company name and a

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3428525.6

- 12 -

PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1    product name has caused the mark to become generic or otherwise lose its trade significance – the

2    key requirement under the second prong of the statutory abandonment defense.

3          To the contrary, Neo4j USA's use of NEO4J® mark as a product name and its trade name

4    demonstrates its strength and significance because the mark is functioning as its intended purpose

5    as an indicator of origin.  Such co-usage is a legitimate and protected use of a mark.  *Accuride*

6    *Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1535 (9th Cir. 1989) (holding that "the same broad

7    standards of protection apply to trademarks and trade names"); *Standard Oil Co. of N. M. v.*

8    *Standard Oil Co. of Cal.*, 56 F.2d 973, 979 (10th Cir. 1932) (recognizing that a "corporate name

9    or trade name identifies a corporation; it also identifies its business and the goods or services

10   which it sells or renders").  Indeed, "courts are rarely called upon to distinguish between trade

11   names, trademarks and service marks" because "[t]rade names often function as trademarks or

12   service marks as well."  *Accuride*, 871 F.2d at 1534.

13         In sum, Defendants' "confusion" allegations do not amount to abandonment under 15

14   U.S.C. § 1127.  There is no plausible interpretation thereof that would suggest that the NEO4J®

15   mark has been abandoned and ceased to function as an indicator of origin.  Instead, these

16   allegations establish multiple uses of the NEO4J® mark and its strength, not the mark's

17   diminution, let alone loss of the significance as a mark.  As such, Defendants' abandonment

18   counterclaims and defense based on their confusion allegations fail as a matter of law.

19              **2.       Defendants' "Open Source Licensing" Theory Does Not Establish
                          Abandonment via Naked Licensing as a Matter of Law**
20

21         The crux of Defendants' second abandonment theory is that the distribution of NEO4J®-

22   branded software subject to the GPL and AGPL amounts to an abandoning that mark:

23         As the Neo4j trademark is used and licensed as open source software there is no ability to
           maintain quality control over the software product called Neo4j as any licensees may
24         modify combine the software with other code and distributed or convey Neo4j without
           required quality control by Neo4J USA.
25
           As the Neo4j software is licensed as open source software, there is no ability to
26         maintain quality control of how licensees modify, use or distributed or
           conveyed. As a result, Neo4J USA has abandoned the Neo4j trademark under
27         the doctrine of Naked License.

28   Dkt. No. 55 at 24:18-23; *see also* Dkt. No. 48 at 3:18-22; Dkt. No. 54 at 19:21-25.  The open

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3428525.6                                           - 13 -
PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1   source licenses reference by Defendants are the GNU General Public License ("GPL") and a

2   variant for server deployment called the GNU Affero General Public License ("AGPL").  *See*

3   Dkt. No. 55 at ¶ 7 and Exhibit A.

4          However, the fact that some NEO4J®-branded software was distributed via the GPL or

5   the AGPL does not establish abandonment of the NEO4J® mark under 15 U.S.C. § 1127.

6   Defendants' open source theory does not meet the first definition under this section because there

7   are no facts alleged establishing that Neo4j USA discontinued the use of the NEO4J® mark at

8   any time.  It also fails to meet the second statutory definition because there are no factual

9   allegations in either their counterclaims or answer that the open source licensing of software

10  under the NEO4J® mark has actually resulted in any loss of significance of the NEO4J® mark or

11  as an indicator of origin.  To the contrary, Defendants are alleging Neo4j USA's use of the mark

12  in conjunction with the NEO4J® mark in at least one of the registered classes of goods.  Dkt. No.

13  48:18-19 ("As the Neo4j trademark is used and licensed as open source software…").

14         More importantly, Defendants erroneously presume that software distributed via open-

15  source software licenses *ipso facto* means the licensor has abandoned its trademarks.  This is not

16  the law.  Rather, courts recognize that the open source licensing software through at least one of

17  the open source licenses identified by Defendants constitutes an ***intent to control*** trademark

18  rights, not the relinquishment of rights.  *See, e.g., Planetary Motion, Inc. v. Techsplosion, Inc.*,

19  261 F.3d 1188, 1198 (11th Cir. 2001).

20         *Planetary Motion* is particular instructive.  In that case, Byron Darrah developed

21  "Coolmail," which was a software that provides email users with notice of new email.  *Planetary*

22  *Motion*, 261 F.3d at 1191.  He distributed the software online under the same GPL open source

23  license at issue here.  *Id.*  Several years later, defendant began offering an email service under the

24  mark "CoolMail."  *Id.*  In 1999, Darrah sold the rights in the software to Planetary Motion, who

25  had in 1998 registered the mark "Coolmail" for its own email service.  *Id.* at 1192. Plaintiff then

26  sued defendant for infringement of the Coolmail mark, as well as for infringement of the

27  trademark rights it had been assigned by Darrah.  *Id.*  The district court granted summary

28  judgment and permanent injunctive relief to plaintiff.  *Id.*

842\3428525.6                                        - 14 -

PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1    On appeal, defendant argued it could not have infringed the Coolmail mark because

2    Darrah had initially distributed it via the GPL, which divested him of any ownership rights in the

3    mark.  *See Planetary Motion*, 261 F.3d at 1198.  The Eleventh Circuit disagreed, holding "[t]hat

4    the Software had been distributed pursuant to a GNU General Public License does not defeat

5    trademark ownership, nor does this in any way compel a finding that Darrah abandoned his rights

6    in trademark." *Id*.  Rather, defendant "misconstrue[d] the function of a GNU General Public

7    License" and that "[s]oftware distributed pursuant to such a license is not necessarily ceded to the

8    public domain." *Id*.  The fact that Darrah licensed the software under the GPL was instead

9    ***evidence of a desire to retain ownership rights***.  *Id*. at 1198, fn 16.

10    Here, Defendants' open source theory is predicated on the same failed arguments made in

11    *Planetary Motion*.  As in that case, the fact that Neo4j USA's software was licensed under the

12    GPL and the AGPL ***establishes*** Neo4j USA's efforts to control the quality of the NEO4J® mark

13    rather than evidences abandonment.  This is because both the AGPL and GPL were drafted and

14    published by the same organization—Free Software Foundation—and the AGPL is merely a

15    modified variant of the GPL with all of the protections of the GPL plus an added requirement of

16    for open-source software running on servers.  *See* Dkt. No. 55 at ¶ 7.  Both the GPL and AGPL

17    require licensees who wish to copy, distribute, or modify the software to include a copyright

18    notice properly identifying the actual copyright owner.  *Planetary Motion*, 261 F.3d at 1191, fn

19    16; Dkt. No. 55, Exhibit A at §§ 4-5.  Neo4j USA's use of both the GPL and AGPL thus shows

20    an ***intent to control*** trademark rights, not the relinquishment of rights.  Similarly, the licensing of

21    NEO4J® branded software under either the AGPL and GPL does not mean that Neo4j USA

22    ceded any ownership rights in that mark under the *Planetary Motion* analysis.  Accordingly,

23    Defendants cannot maintain a legally viable abandonment counterclaim or defense based on their

24    open source theory.

25    **D.    The Court Should Deny Defendants Leave to Amend**

26    If the Court determines that judgment on the pleadings is warranted, it must then decide

27    whether to grant leave to amend.  *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir.

28    2012).  The general rule of liberality in granting leave to amend is subject to limitations, which

842\3428525.6                                   - 15 -

PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1    including "undue prejudice to the opposing party, bad faith by the movant, futility, and undue

2    delay."   *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir.

3    2011).   The Court's "discretion to deny leave to amend is particularly broad where plaintiff has

4    previously amended the complaint." *Id*.  (quotation marks omitted).

5          The Court also should not grant leave to amend "where doing so would be an exercise in

6    futility." *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1033 (N.D. Cal. 2012).  The Court "may

7    deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the

8    challenged pleading could not possibly cure the deficiency." *Telesaurus VPC, LLC v. Power*, 623

9    F.3d 998, 1003 (9th Cir. 2010); *accord Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th

10   Cir. 2017) (holding that an "amendment is futile when 'no set of facts can be proved under the

11   amendment to the pleadings that would constitute a valid and sufficient claim or defense'")

12   (citation omitted).  Likewise, the Court should deny leave to amend where the facts are not in

13   dispute, and the sole issue is whether there is liability as a matter of substantive law. *See Albrecht*

14   *v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

15         Defendants have already amended both their counterclaims and answer at least once over

16   the past year – and did so well after discovery commenced.  As discussed above, Defendants'

17   cancellation counterclaims and defense based on Neo4j USA allegedly misrepresenting its use

18   date is not legally viable because it is undisputable that Neo4j USA was using the NEO4J® mark

19   at the time it filed the underlying application.  Thus, granting Defendants leave to amend would

20   be futile since the allegedly false statement made to the USPTO ***cannot*** amount to a material

21   misrepresentation.  *See Albrecht*, 845 F.2d at 195-196 (amendment to fraud complaint properly

22   denied where alleged misstatements "could not be misrepresentations" as a matter of law).

23         Similarly, Defendants' abandonment counterclaims and affirmative defense have

24   remained unchanged through several iterations of their pleadings.  As detailed above, neither

25   theory underpinning them legally meets the definitions of abandonment under 15 U.S.C. § 1127.

26   Neo4j USA further submits that no additional facts would resuscitate Defendants' abandonment

27   counterclaims and affirmative defense because the facts alleged by Defendants establish Neo4j

28   USA's continuing use of the NEO4J® mark and its intent to control its rights therein. *See*

842\3428525.6                                    - 16 -

1  *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (recognizing that a party may

2  plead itself out of court where that party alleges facts establishing that it cannot prevail on its

3  claim); *accord Minor v. FedEx Office & Print Servs., Inc.*, 78 F.Supp.3d 1021, 1026 (N.D. Cal.

4  2015) (citing same).  Accordingly, the Court should not grant Defendants leave to amend their

5  abandonment counterclaims and affirmative defense.

6  **VI.     CONCLUSION**

7          For the foregoing reasons, the Court should grant Neo4j USA's motion for a judgment on

8  the pleadings in its entirety and dismiss (a) the First Cause of Action for Cancellation of

9  Trademark 15 U.S.C. §1119 and Second Cause of Action for Declaratory Relief for

10  Abandonment of Trademark asserted in John Mark Suhy's Counterclaim; (b) the Tenth Cause of

11  Action for Declaratory Relief for Abandonment of Trademark and Eleventh Cause of Action

12  Cancellation of Trademark 15 U.S.C. §1119 asserted in the First Amended Counterclaim filed by

13  PureThink and iGov; and (c) the Seventh Affirmative Defense for Cancellation of Trademark

14  Procured by Fraud and Ninth Affirmative Defense for Naked License Abandonment of

15  Trademark asserted in the Answer to the Second Amended Complaint filed by Defendants with

16  prejudice.

17

18  Dated: February 11, 2020                      HOPKINS & CARLEY
                                                   A Law Corporation
19

20                                                By: */s/ Jeffrey M. Ratinoff*
                                                       John V. Picone
21                                                     Jeffrey M. Ratinoff
                                                       Cary Chien
22                                                     Attorneys for Plaintiff
                                                       NEO4J, INC., NEO4J SWEDEN AB
23

24

25

26

27

28

842\3428525.6                                                       - 17 -

PLAINTIFF NEO4J, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT ON THE PLEADINGS; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1
2
3
4
5

Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney at Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

6
7
8

Attorneys for Defendants and Counter Claimants:
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

9
10

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11<br>12<br><br>13<br>14<br>15<br>16<br>17<br>18<br><br>19<br>20<br>21<br>22<br>23<br>24<br>25 | NEO4J, INC., a Delaware corporation,<br>NEO4J SWEDEN AB<br><br>Plaintiffs,<br>v.<br>PURETHINK LLC, a Delaware<br>limited<br>liability company, IGOV INC., a<br>Virginia corporation, and JOHN<br>MARK SUHY, an individual,<br>Defendants.<br>_____<br><br>PURETHINK LLC, a Delaware<br>limited<br>liability company, IGOV, INC. a<br>Virginia corporation, JOHN MARK<br>SUHY<br>Counter Claimants<br><br>v.<br><br>NEO4J, INC. a Delaware corporation,<br>NEO4J SWEDEN AB | CASE NO. 5:18-cv-7182 EJD<br><br><br>**DEFENDANT PURETHINK<br>LLC AND IGOV, INC'S FIRST<br>AMENDED COUNTERCLAIM<br>AGAINST NEO4J, INC. AND<br>NEO4J SWEDEN AB FOR**<br>**1) Interference With<br>Prospective Economic<br>Advantage**<br>**2) Interference with Contract**<br>**3) Breach of Contract**<br>**4) Breach of Exclusive<br>Contract to Government**<br>**5) Declaratory Relief (Void<br>Restrictions)**<br>**6) Declaratory Relief<br>(Restrictions Violate AGPL<br>License)**<br>**7) Declaratory Relief<br>(Creative Commons Clause<br>in AGPL is invalid)**<br>**8) Declaratory Relief** |

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

1

Counter Defendants.

**(Creative Commons Clause in AGPL does not apply to professional services)**
9) **Declaratory Relief (Users may use and fork content NEO4J SWEDEN put on a public GitHub respository)**
10) **Declaratory Relief (Abandonment of Trademark)**
11) **Cancellation of Trademark procured by Fraud**
12) **Unfair Business Practices (California Business and Professions Code § 17200 et. Seq.)**

**DEMAND FOR JURY TRIAL**

Counter Claimants PURETHINK LLC, a Delaware limited liability company ("PureThink"), IGOV, INC. a Virginia corporation ("iGov") and John Mark Suhy allege against NEO4J, Inc. ("NEO4J USA") and NEO4J SWEDEN AB ("NEO4J SWEDEN") as follows:

## I.    Jurisdiction

1. This is a compulsory counterclaim under Federal Rule of Civil Procedure §13(a). This Court has supplemental jurisdiction under 28 USC § 1367(a).

## II.    Parties

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

2

2. Counter Claimant PureThink LLC, is a Delaware limited liability company.

3. Counter Claimant IGOV, INC. is a Virginia corporation.

4. Counter Claimant John Mark Suhy is an individual.

5. Counter Defendant NEO4J, Inc. is a Delaware corporation.

6. Counter Defendant NEO4J SWEDEN is a Swedish corporation.

## III.   Introduction

7. NEO4J SWEDEN licenses software called Neo4j as open source software under a GNU General Public License model. The GNU General Public License "GPL" license and a variant for server deployment called the GNU Affero General Public License "AGPL" license have several versions and distinctions. Neo4j is licensed as a Community edition under the GPLv.3 and an Enterprise edition under the AGPLv.3 ("License") A true and correct copy of the Neo4j AGPL License is attached as Exhibit A.

8. The Neo4j open source software is available at Github.com which is the preeminent open source software repository:

https://github.com/neo4j/neo4j/tree/3.5

9. PureThink and iGov have downloaded Neo4j source code from GitHub under the APGL license. Anyone may download the Neo4j source code and use, modify, support, combine and convey the software. However, using GPL or AGPL may require distribution of modifications to the source code under "copyleft" license requirements of GPL and AGPL licenses.

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

3

SER_3893

10.       Using an open source distribution and development model, NEO4J SWEDEN distributes Neo4j software to users and developers. The GPL and AGPL licenses provide for free use of the software and free use of distributed modifications and extended versions of the program as well.

11.       After starting the Neo4j software with open source free licensing and benefitting from free third party development, there was a change to a dual-license model. Neo4j SWEDEN continues to license the open source software while NEO4J USA licenses an object code version of the open source software with support under a "commercial" license. PureThink is unable to determine if NEO4J USA claims the commercial version is proprietary or limited in some manner. Neo4j has over 183 contributors and it is unclear if all contributors assigned their copyright and moral rights to changes in Neo4j to NEO4J USA. As NEO4J USA used the open source version to develop and convey "commercial" versions of Neo4j, the "commercial" software is subject to the terms of the AGPL. Those terms include:

Section 2 of the AGPL license provides, in part:

> All rights granted under this License are granted for the term of copyright on the Program, and are irrevocable provided the stated conditions are met. This License explicitly affirms your unlimited permission to run the unmodified Program. …

> You may make, run and propagate covered works that you do not convey, without conditions so long as your license otherwise remains in force."

Section 4 of the AGPL license provides, in part:

SER_3894

> "You may charge any price or no price for each copy that you convey, and you may offer support or warranty protection for a fee."

Section 7 of the AGPL license provides, in part:

> All other non-permissive additional terms are considered "further restrictions" within the meaning of section 10. If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term. If a license document contains a further restriction but permits relicensing or conveying under this License, you may add to a covered work material governed by the terms of that license document, provided that the further restriction does not survive such relicensing or conveying.

Section 10 (Automatic licensing of Downstream Recipients)

of the AGPL provides, in part:

> "Each time you convey a covered work, the recipient automatically receives a license from the original licensors, to run, modify and propagate that work, subject to this license… ."

> "You may not impose any further restrictions on the exercise of the rights granted or affirmed under this License."

12. NEO4J USA also set up a sales channel to use partners, such as PureThink, to sell and support the "commercial" version of Neo4j. As part of that model, the partner would receive 25% of the fee and provide support for customer.

13. The Partner Agreement seeks to restrict partners from working with the open source version of Neo4j software during the Partner Agreement and for 3 years after termination. But these restrictions are invalid under California Business and Professions Code §16600. PureThink and IGOV filed a motion under FRCP 12 (b)(6) and 12 (f) against the attempt by NEO4J USA to enforce a restrictive covenant preventing defendants from performing any services on the open source versions of Neo4J software for a period of three years post termination

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

5

1  of the Partner Agreement. Conceding the invalidity of the restriction,

2  raised by the motions, Plaintiffs then filed a Second Amended

3  Complaint altering paragraph 112 in the First Amended Complaint

4  removing and waiving a breach of contract claim based on the unlawful

5  restriction. The restriction also violate the no further restrictions

6  clause (Section 10) of the AGPL. The AGPL license limits the rights of a

7  party to restrict rights to use the AGPL. PureThink is informed and

8  believes that NEO4J USA uses these restrictions to prevent partners

9  from working with any customers on open source versions of Neo4j

10  which also prevents such parties from working for or with PureThink

11  and iGov.

12  14.    During 2014, the MPO (Maryland Procurement Office) was in

13  discussions with NEO4J USA about Neo4j. The MPO referred NEO4J

14  USA to PureThink as PureThink was a registered vendor in the Arcnet

15  Vendor System and with Neo4j listed as one it its capabilities.

16  15.    PureThink and NEO4J USA signed a NEO4J Solution Partner

17  Agreement with Neo Technology, Inc, effective 9-30-2014. ("Partner

18  Agreement") A true and correct copy of the Partner Agreement is

19  attached as Exhibit B.

20  16.    John Suhy, of PureThink, had discussions with Lars Nordwall,

21  COO of NEO4J USA concerning the challenges of obtaining business

22  with the US government. Mr. Suhy and Mr. Nordwall discussed the

23  need to modify the software offering to satisfy security and other

24  requirements the government had. Mr. Nordwall represented to Mr.

25  Suhy that Mr. Suhy could improve the open source Neo4j software

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                                                  6

offering for the government  and that PureThink would have exclusive rights to the Neo4J support and deals with the Government. Furthermore, a separate agreement came into place for the new Neo4j version for the government which was supposed to protect the investment PureThink was making and was going to make.  A true and correct copy of the exclusive agreement for Government sales is attached as Exhibit C.

17.     PureThink, worked for months on the new Neo4j Government Package software, determining the requirements, designing and developing enhancements and additional features around Neo4j including support and professional services to addressed critical government security and procurement requirements. PureThink spent an equivalent to $650,000 to design, develop, and build the new Neo4j Government Package software based on Mr. Nordwall's representations that PureThink would have continuing exclusivity with the government sales and support contracts. PureThink's government packaging of Neo4j was called Neo4j Government Edition and a.k.a. Neo4j Enterprise Government Edition. ("Neo4j Government Edition"). The Neo4j Government Edition was a complete package that included additional services, support and software modules enhancing Neo4j to address critical government requirements.

18.     PureThink did deals with MPO, Sandia National Laboratories, and the FBI with NEO4J USA's approval and closed a deal with the IRS which NEO4J USA initially approved but later changed its position and ultimately did not approve.

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                                      7

19.     There were no significant functional differences between the open source version of Neo4j and what NEO4J USA called a commercial version of Neo4j.  Further, under the rules of GPL and AGPL open source software, there could not be proprietary modification as modifications to and conveyance of open source software under an AGPL license must continue to be licensed on an open source AGPL license. It appears NEO4J USA's solution to this problem was and is to misrepresent the truth or actively conceal the issue.

20.     PureThink and IRS entered into a contract which for the first time, was done completely outside the Partner Agreement, and under the Government Edition agreement. The contract included consulting services to build out a solution IRS requested around the Neo4j Government Edition.  NEO4J USA told PureThink to make whatever decisions were needed regarding the much smaller license portion of the contract. During the performance of the contract, when the IRS asked PureThink the difference between Neo4j open source and NEO4J USA's commercial version, NEO4J USA told PureThink to tell the IRS the open source version had to be an open use.  When PureThink would not make this statement to IRS, NEO4J  USA then proceeded to reach out directly to IRS personel directly with this false message.  This scare tactic is utterly false and a user of AGPL software does not have to license its use to everyone. The other improper control is NEO4J USA's unlawful restrictions in its Solution Partner Agreement which claims the partner may not suport the open source software during the Partner Agreement or for three years after termination. With these

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                                        8

1   invalid restrictions NEO4J USA unlawfully restricts third parties from

2   supporting the free open source version so NEO4J USA can license and

3   support the same software under an expensive commercial license

4   without fear of fair competition. NEO4J SWEDEN attempted to

5   improperly restrict this open source software by adding a restriction to

6   the AGPL software license documents referred to as "Commons Clause"

7   license condition which sought to broadly restrict the rights of anyone

8   from selling or otherwise profiting from the sales of support services

9   upon such software.   Such attempt of adding this type of restriction

10   was in violation of the AGPL license.

11   21.      When PureThink resisted misrepresenting the differences

12   between the open source software and NEO4J USA's commercial

13   version, NEO4J USA retaliated, terminating the Government Edition,

14   the Government Edition Agreement, the Partner Agreement with the

15   stated intent of shutting down PureThink. NEO4J USA told users and

16   potential users PureThink could not support the open source version of

17   Neo4j. See Exhibit D where Neo4j Inc. specifically told the IRS

18   PureThink could not provided professional services to the IRS for a

19   period of three years as a result of the termination of the Partner

20   Agreement. Because of NEO4J USA's improper retaliation and

21   interference with PureThink's business, tarnishing PureThink's

22   business,  iGov was set up to start fresh in providing solutions around

23   Neo4j for parties who use the open source software version of Neo4J.

24   iGov is informed and believes that NEO4J USA also advised iGov

25   potential customers that iGov could not work with them either.

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                              9

# IV.    Counterclaims

## First Cause of Action

### Interference With Prospective Economic Advantage

### (Against NEO4J, Inc.)

22.     PureThink and iGov reincorporate the allegations in paragraph 1-21 as alleged above.

23.     PureThink had an economic relationship with the possibility of future economic relationships with the United States government agencies MPO, FBI, Sandia National Laboratories, IRS, and others ("Agencies"). PureThink had already secured prior business with the MPO, FBI and Sandia National Laboratories, and the US Treasury. PureThink had been awarded a new contract with the IRS.

24.     PureThink was working on potential business opportunities with US Treasury, Linkurious, Excella, Information Analysis Incorporated, Deloitte, GraphAware, Calibre, Lockheed Martin, Modus21 LLC, Mitre, United States Postal Service (USPS), National Institutes of Health (NIH),  U.S. Census Bureau, Army, DHS, and others.

25.     iGov was working on potential business opportunities with the possibility of future economic relationships with Accenture, Northrop Grumman Corporation, Anacapa Micro Products, NASA, NGA, Airforce, and others.

26.     PureThink and iGov are informed and believe NEO4J USA was aware of each of the economic relationships and prospective future relationships PureThink and iGov had with these Agencies and companies.

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

SER_3900

27.     PureThink and iGov are informed and believes an on said basis alleges that NEO4J USA intentionally interfered with PureThink and iGov's  relationships by telling the Agencies and companies, PureThink was terminated as a solution partner and could not support open source versions of Neo4j for a period of 36 months following termination. Upon information and belief, NEO4J USA also informed other 3rd parties that  iGov was under the same 36 month restriction.

28.     This interference was intended to and did disrupt the economic relationship between PureThink,  iGov and the Agencies and companies.

29.     NEO4J USA's interference was an independent wrongful act as it violated California Business and Professions Code §16600: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

30.     PureThink and iGov had the legal right to enter into agreements with the Agencies and third parties using Neo4j open source software under the terms of the APGL software license and could not be prevented from lawfully doing so.

31.     PureThink and iGov's relationship with the Agencies and companies was actually and totally disrupted by NEO4J USA's wrongful interference.

32.     PureThink and iGov have suffered economic harm proximately caused by NEO4J USA's wrongful interference including lost sales, lost

SER_3901

profits, and future business with. PureThink has also lost its
investment in developing the Government Edition.

33.     PureThink and iGov have suffered damages in an amount
believed to exceed $1,354,856.55.

34.     NEO4J USA's conduct was oppressive, malicious, and fraudulent
justifying an award of punitive damages under California Civil Code
§3294. PureThink and iGov are informed and believe that NEO4J
USA's conduct was authorized, ratified or made by an officer, director
or managing agent of NEO4J.

## Second Cause of Action

## Interference With Contract

## (Against NEO4J, Inc.)

35.     PureThink and iGov reincorporate the allegations in paragraph
1-34 as alleged above.

36.     PureThink and iGov have an irrevocable right to use, modify,
support and convey Neo4j software under an APGL license through
NEO4J SWEDEN.

37.     PureThink and iGov are informed and believe NEO4J USA was
aware of the License between PureThink, iGov and NEO4J SWEDEN.

38.     PureThink is informed and believes and on said basis alleges that
NEO4J USA intentionally interfered with the License by improperly
telling the government agencies and companies, PureThink and iGov
could not support open source versions of Neo4j based on void terms of
the Partner Agreement.  NEO4J USA action was the purpose of
shutting down PureThink and causing PureThink economic harm. The

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

12

open source version was freely available under the License and the License provides PureThink and iGov may provide support for Neo4j and such right may not be restricted.

39. PureThink and iGov have the legal right to enter into agreements with the agencies and third parties using Neo4j open source software under the terms of the APGL software license and could not be prevented from lawfully doing so.

40. PureThink's and iGov's relationships with the Agencies and companies was actually and totally disrupted by NEO4J USA's interference with the License.

41. PureThink and iGov have both suffered economic harm proximately caused by NEO4J USA's wrongful interference including lost sales, lost profits, and future business. PureThink has also lost its investment in developing the Government Edition.

42. PureThink and iGov has suffered damages in an amount believed to exceed $5,000,000.

43. NEO4J's conduct was oppressive, malicious, and fraudulent justifying an award of punitive damages under California Civil Code §3294. PureThink and iGov are informed and believes that NEO4J USA's conduct was authorized, ratified or made by an officer, director or managing agent of NEO4J USA

**Third Cause of Action**

**Breach of Contract**

**(Against NEO4J, Inc.)**

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

13

44.      PureThink reincorporates the allegations in paragraph 1-43 as alleged above.

45.      PureThink and NEO4J USA entered into the Partner Agreement effective 9-30-2014.

46.      PureThink performed all its obligations under the Partner Agreement, except those which are unlawful, were prevented, waived or excused.

47.      NEO4J USA breached the Partner Agreement by failing to pay PureThink $26,020 which is 25% of a $104,028 deal with DHS USCIS.

48.      As a result of NEO4J USA's breach, PureThink has been damaged in the sum of $26,020 plus interest at the legal rate.

**Fourth Cause of Action**

**Breach of Exclusive Contract to Government**

**(Against NEO4J, Inc.)**

49.      PureThink reincorporates the allegations in paragraph 1-48 as alleged above.

50.      Under the terms of the exlusive government agreement dated April 11, 2015, Neo4J, Inc., through its COO Lars Nordwall, agreed PureThink is the only Neo4J Government Edition reseller for the US Federal Bovernment, Department of Defense and Intelligence Agrencies. This exclusive agreement is Exhibit C. This agreement was a separate and distinct agreement from the Partner Agreement. There are no terms in the Partner Agreement where PureThink would develop software or functionality for the US government as PureThink did to create the Government Edition. NEO4J USA is estopped from

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

14

1    denying the April 11, 2015 agreement as PureThink was induced by the

2    agreement to develop the Government Edition for the exclusive sale by

3    PureThink.

4    51.    PureThink has performed all its obligations under the April 11,

5    2015 exclusive government agreement except those which are unlawful,

6    were prevented, waived or excused.

7    52.    PureThink is informed and believes that NEO4J USA took

8    features developed by PureThink incorporated it into NEO4J.

9    PureThink is informed and believes that NEO4J USA sold Neo4J

10   software and services directly to the US government, Department of

11   Defense and intelligence Agencies in breach of its April 11, 2015

12   agreement with PureThink.

13   53.    As a result of its breach, PureThink has suffered damages in

14   excess of $1,354,856.55.

15                            **Fifth Cause of Action**

16                            **Declaratory Relief**

17                            **(Void Restrictions)**

18                            **(Against NEO4J, Inc.)**

19   54.    PureThink and iGov reincorporates the allegations in paragraph

20   1-53 as alleged above.

21   55.    There is a present controversy where NEO4J USA claims 4.3.2 of

22   the Partner Agreement may be enforced against PureThink and iGov.

23   That clause states:

24        4.3.2 During the term of this Agreement and up until thirty six
          (36) months after the termination or expiration of this
25        Agreement, Partner may not develop, market, distribute or offer
          any services related to any Neo Technology Community Edition

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                    15

SER_3905

Products, derivative works of such products, or any Partner software code made to work with Neo Technology Community Edition Products(including, without limitation, hosting services, training, technical support, configuration and customization services, etc.)

56.     PureThink asserts  clause 4.3.2 of the Partner Agreement is void under California Business and Professions Code §16600. iGov claims the Partner Agreement does not apply to iGov, but if it does, clause 4.3.2 of the Partner Agreement is void under California Business and Professions Code §16600.

57.     PureThink and iGov requests a declaration that § 4.3.2 of the Partner Agreement is void under California Business and Professions Code §16600.

### Sixth Cause of Action

### Declaratory Relief

### (Restrictions Violate AGPL License)

### (Against NEO4J, Inc.)

58.     PureThink and iGov reincorporate the allegations in paragraph 1-57 as alleged above.

59.     There is a present controversy where NEO4J USA claims 4.3.1 and 4.3.2 of the Partner Agreement may be enforced while PureThink and iGov assert the restriction in those section violate the GNU AFFERO GENERAL PUBLIC LICENSED VERSION 3 or the GPL for Neo4j because the NEO4J's commercial software is based on the open source version of Neo4J from NEO4J SWEDEN. NEO4J USA is subject to the license limitation on restricting use of the open source version of Neo4j. The Section 2 (Basic Permissions) of the APGL provides, in part:

SER_3906

"All rights granted under this License are granted for the term of copyright on the Program, and are irrevocable provided the stated conditions are met. This License explicitly affirms your unlimited permission to run the unmodified Program." …

"You may make, run and propagate covered works that you do not convey, without conditions so long as your license otherwise remains in force"...

Section 4 of the AGPL license provides, in part:

"You may charge any price or no price for each copy that you convey, and you may offer support or warranty protection for a fee."

Section 10 (Automatic licensing of Downstream Recipients) of the AGPL provides, in part:

"You may not impose any further restrictions on the exercise of the rights granted or affirmed under this License."

60.     PureThink and iGov have the rights granted under the License and may use Neo4j, provide support for Neo4j, charge for support and NEO4J USA may not restrict the use of Neo4j and prevent PureThink, iGov or any third party from exercising the rights granted under the AGPL. Under the AGPL, NEO4J USA may not prohibit anyone from using, modifying or supporting Neo4j.

61.     PureThink and iGov request a declaration that §§ 4.3.1 and 4.3.2 of the Partner Agreement are void under the AGPL as the restriction violate the terms of the AGPL.

<div align="center">

**Seventh Cause of Action**

**Declaratory Relief**

**(Commons Clause in AGPL is void)**

**(Against NEO4J SWEDEN AB)**

</div>

SER_3907

62.      PureThink and iGov reincorporate the allegations in paragraph

1-61 as alleged above.

63.      There is a present controversy where NEO4J, SWEDEN added a

restrictive clause to the AGPL on at least version 3.4 of the open source

version of Neo4J known as a Commons Clause License Condition which

provides:

> "Commons Clause" License Condition
> The Software is provided to you by the Licensor under the
> License, as defined below, subject to the following condition.
> Without limiting other conditions in the License, the grant of
> rights under the License will not include, and the License does
> not grant to you, the right to Sell the Software. For purposes of
> the foregoing, "Sell" means practicing any or all of the rights
> granted to you under the License to provide to third parties, for
> a fee or other consideration, a product or service that consists,
> entirely or substantially, of the Software or the functionality of
> the Software. Any license notice or attribution required by the
> License must also include this Commons Cause License
> Condition notice.

Last page of Exhibit A.

64.      These restriction are to 1) prevent users of the open source

software from selling modified versions of the software for

consideration-thus giving NEO4J USA the right to sell similar software

for a fee, and 2) suggests that no third party may provide services for

the open source version of Neo4J preventing PureThink and IGov from

providing professional services to support the open source version of

Neo4J.

65.      These Commons Clause restrictions are not allowed under an

AGPL license because The Free Software Foundation, Inc., the

copyright holder of the AGPL, states that changes to the license

agreement are not allowed:

GNU AFFERO GENERAL PUBLIC LICENSE

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

18

Version 3, 19 November 2007
Copyright (C) 2007 Free Software Foundation USA
<http://fsf.org/>
Everyone is permitted to copy and distribute verbatim copies
of this license document, but changing it is not allowed.

Exhibit A, page 1.

66.     Adding the Commons Clause is a violation of the terms of the AGPL exceeding the copyright grant and is void.

67.     Moreover, under the AGPL, the Commons Clause is a restriction that is not allowed under the AGPL and may be removed:

> If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term.

Exhibit A, §7.

68.     As the Commons Clause cannot apply to the AGPL and may be removed by any user, the clause should be voided.

69.     PureThink and iGov request a declaration that the Commons Clause NEO4J, SWEDEN added to the AGPL is void.

### Eight Cause of Action

### Declaratory Relief

### (The Commons Clause in AGPL does not apply to Professional Services for the open source versions of Neo4J)

### (Against NEO4J SWEDEN AB)

70.     PureThink and iGov reincorporate the allegations in paragraph 1-69 as alleged above.

71.     There is a present controversy where NEO4J, SWEDEN added a restrictive clause to the AGPL on at least version 3.4 of the open source version of Neo4j known as a Commons Clause License Condition which provides:

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

19

"Commons Clause" License Condition The Software is provided to you by the Licensor under the License, as defined below, subject to the following condition. Without limiting other conditions in the License, the grant of rights under the License will not include, and the License does not grant to you, the right to Sell the Software. For purposes of the foregoing, "Sell" means practicing any or all of the rights granted to you under the License to provide to third parties, for a fee or other consideration, a product or service that consists, entirely or substantially, of the Software or the functionality of the Software. Any license notice or attribution required by the License must also include this Commons Cause License Condition notice.

Last page of Exhibit A.

72.     There is a present controversy whether the Commons Clause, even if valid, prevents professional service providers from supporting open source Neo4J users from using independent third party from supporting upen source Neo4J users.   The reason for this controversy is the definition of Sell in the Commons Clause provides:

For purposes of the foregoing, "Sell" means practicing any or all of the rights granted to you under the License to provide to third parties, for a fee or other consideration, a product or service that consists, entirely or substantially, of the Software or the functionality of the Software.

Exhibit A, last page.

73.     PureThink and IGOV should not be prevented from providing professional support services to open source Neo4J users under the Commons Clause as such services do not consist of entirely or substantially the software or the functionality of the software.

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

20

74.     PureThink and IGOV's position is supported by NEO4J, Inc's own attorney, Heather Meeker, who led the drafting of the Commons Clause. She stated "[t]he Commons Clause does not restrict performing services—it can't be.":

**heathermeeker** commented on Aug 23, 2018

Bear with a legal technicality, but the Commons Clause is not a restriction on performing services -- it can't be. The license grant for the software is in the underlying license, and the Commons Clause claws back one kind of commercial use right. So, picture the original grant as a Venn diagram circle, and the excluded right to Sell as a little circle inside that. Providing services was not in the big circle in the first place, so the small circle can't change it.

But perhaps you are thinking, can I use the software in order to provide my services? That's a reasonable question. In other words, is the right to use the software in support of professional services -- like development, maintenance, or analysis, clawed back by the exclusion? No, because that use is not a service that derives its value from the functionality of the software. Your professional services derive their value from your expertise, not what the software does. The exclusion has to cover services, though, or it would have a big loophole. Offering the software via SaaS as a substitute for distributing it, and selling that access, is the main kind of service that is meant to be limited. Your consulting is not an economic substitute for the software. SaaS is.

Of course, I'm not your lawyer, so technically I can't give you advice. The clause means what it means, and although I led the drafting of the clause, that doesn't mean I have authority to interpret documents. That's not how the law works -- in the end, only a court has that power, no matter who wrote the document. But I hope to be helpful and dispel any confusion.

75.     The AGPL license **expressly** allows users to have third parties make modifications for users on the licensed open source software. Such use is not considered a conveyance implicating the copyleft requirements of the AGPL. Exhibit A, pg. 3, §2. The Commons Clause, if interpreted to prevent such right, violates the APGL as a further restriction and is void.

76.     The Commons Clause is unclear whether third parties such as PureThink and IGOV may provide professional services for open source

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

21

1    users of Neo4J. PureThink and IGOV's position is that the Commons

2    Clause does not prevent independent service providers from supporting

3    open source code users. The conclusion services provided are not

4    prevent from providing users services under the Commons Clause is

5    fully supported by NEO4J USA's attorney and the drafter of the

6    Commons Clause. The Commons Clause should be judicially

7    interpreted so there is no controversy that prevents open source Neo4J

8    users from using independent service providers such as PureThink and

9    iGov to provide support and development services for open source

10    Neo4J users.

11    77.      PureThink and iGov request a declaration that the Commons

12    Clause does not prevent PureThink and IGOV from providing

13    professional services to users of the open source versions of Neo4J

14    where the AGPL has a Commons Clause.

**Ninth Cause of Action**

**Declaratory Relief**

**(Users may use and fork content NEO4J SWEDEN put on a public**

**GitHub respository)**

**(Against NEO4J SWEDEN AB)**

20    78.      PureThink and iGov reincorporate the allegations in paragraph

21    1-77 as alleged above.

22    79.      There is a present controversy where NEO4J, SWEDEN contends

23    users of its github public repository, such as PureThink and IGOV may

24    not use or fork its content NEO4J SWEDEN put on the GitHub

25    repository. NEO4J, SWEDEN has content including the open source

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                    22

1   versions of Neo4J software, documentation and extensive information

2   about Neo4J software on NEO4J SWEDEN'S public GitHub

3   respository.

4   80.   Under the GitHub terms of services for public repositories,

5   NEO4J SWEDEN agreed: By setting your repositories to be viewed

6   publicly, you agree to allow others to view and "fork" your repositories

7   (this means that others may make their own copies of Content from

8   your repositories in repositories they control).

9   81.   Under the GitHub terms of services for public repositories,

10   NEO4J SWEDEN granted each user the right to "User of GitHub a

11   nonexclusive, worldwide license to use, display, and perform Your

12   Content through the GitHub Service and to reproduce Your Content

13   solely on GitHub as permitted through GitHub's functionality (for

14   example, through forking)." By its express grant, NEO4J may not bar

15   users from using the content NEO4J SWEDEN put on the public

16   GitHub repository.

17   82.   Under the GitHub Terms of Service, "Content" means:

18   "Content" refers to content featured or displayed through the
    Website, including without limitation code, text, data, articles,
19   images, photographs, graphics, software, applications,
    packages, designs, features, and other materials that are
20   available on the Website or otherwise available through the
    Service. "Content" also includes Services. "User-Generated
21   Content" is Content, written or otherwise, created or uploaded
    by our Users. "Your Content" is Content that you create or own.
22

23   83.   PureThink and iGov request a declaration that they may use use

24   NEO4J SWEDEN's public repository on GitHub and may fork, use,

25

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

23

1  display and perform all Content NEO4J SWEDEN has on its public

2  GitHub Repository.

### Tenth Cause of Action

### Declaratory Relief

### (Abandonment of Trademark)

### (Against NEO4J USA)

84.     PureThink iGov and John Mark Suhy reincorporate the

allegations in paragraph 1-83 as alleged above.

85.     There is a present controversy where NEO4J USA claims it has

the right to use and enforce the Neo4j trademark. PureThink, iGov and

John Mark Suhy claim there is confusion whether Neo4j is a company

name trademark or product name trademark. This confusion is

exacerbated by NEO4J SWEDEN' open source license for a product

called Neo4j. NEO4J SWEDEN's license states: "The software

("Software") is developed and owned by NEO4J SWEDEN (referred to

in this notice as "Neo4j")... .  NEO4J SWEDEN asserts they own the

software-and not NEO4J Inc.-  and they use Neo4j name as part of the

company name and call the open source software product Neo4j too. As

the Neo4j trademark is used and licensed as open source software there

is no ability to maintain quality control over the software product called

Neo4j as any licensees may modify combine the software with other

code and distributed or convey Neo4j without required quality control

by NEO4J USA.

SER_3914

86.     PureThink, iGov and John Mark Suhy request declaratory relief that the Neo4j registered trademark be abandoned under the doctrine of Naked License.

## Eleventh Cause of Action

## Cancellation of Trademark 15 U.S.C. §1119

## (Against Neo4J, Inc.)

87.     PureThink, iGov and John Mark Suhy reincorporate the allegations in paragraph 1-86 as alleged above.

88.     The Registered Trademark for NEO4J, Reg. No. 4,784,280, was procured by fraud as the representation to the PTO was that Neo Technology (a Delaware corporation) (changed to Neo4J, Inc.) first used the trademark in 6-4-2006 and in commerce in 5-28-2007.

89.     These statements are knowlingly false and material to the decision to grant the registration application.

90.     Neo Technology, the predecessor to NEO4J USA did not exist on 6-4-2006 or 5-28-2007.

91.     Neo Technology, the predecessor to NEO4J US was first formed 7-7-2011 in Delaware under File Number 5007564.

92.     Because the registration was procured by fraud, PureThink, iGov and John Mark Suhy demand the registration to the NEO4J trademark be cancelled pursuant to 15 U.S.C. §1119.

## Twelfth Cause of Action

## Unfair Business Practices

## (Against NEO4J SWEDEN and NEO4J USA)

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

25

93.     PureThink and iGov reincorporate the allegations in paragraph 1-92 as alleged above.

94.     NEO4J SWEDEN licensed Neo4j software in 2007 as open source software through a GitHub repository in the United States.

95.     PureThink and IGov are informed and believe that NEO4J SWEDEN licensed on an open source basis to accelerate users and free contributors-new authors- for Neo4J software.

96.     NEO4J SWEDEN generated users and people who contributed to the development of the Neo4J open source software. Since May 20, 2007 there have been 183 contributors to Neo4J.

97.     PureThink and IGov are informed and believe that not all contributors have assigned copyright ownership and moral rights to the portions of Neo4J they authored.

98.     NEO4J SWEDEN has allowed NEO4J USA to use the open source version of Neo4J, modify it and license it on a commercial basis without consent of all the contributors. PureThink and IGov are informed and believe that NEO4J SWEDEN has allowed NEO4J USA to license the object code to the modified version of Neo4J without compliance with the terms of the AGPL.

99.     NEO4J USA advertises it can sell the object code of the modified AGPL version of Neo4J and charge a license fee. This advertisement is false and NEO4J USA is in violation of the AGPL and the rights of contributors.

100.    In an effort to restrict end users of the AGPL version of Neo4J, NEO4J SWEDEN has included the Commons Clause in violation of the

SER_3916

terms of the AGPL. The restriction was added to prevent users from selling modified versions of Neo4J or allow independent service providers to provide services to open source users in an attempt to allow NEO4J USA to have exclusive control of the sale and service of Neo4J.

101.    NEO4J SWEDEN advertises an Enterprise Edition which includes closed source components which are not available on GitHub and requires a commercial license.

102.    PureThink and IGov are informed and believe NEO4J USA licenses Neo4J on a commercial basis charging a license fee for users of software which is primarily based on the open source version of Neo4J.

103.    While NEO4J SWEDEN attempted to limit users with the void Commons Clause amendment, NEO4J USA created a Partner Agreement to sign up companies such as PureThink to resell and support the commercial version of Neo4J.

104.    Because NEO4J SWEDEN added the Commons Clause to the AGPL, there was concern that third parties could not provide services to open source code users until the validity and scope of the Commons Clause was resolved.

105.    NEO4J USA inserted a clause in the Partner Agreement that partners could not provide services for open source versions of Neo4J during the agreement and for three years after termination. This business practice effectively barred third parties from supporting open source software which harmed and continues to harm PureThink and iGov, users and other companies.

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                                27

SER_3917

106.    NEO4J USA has advertised that if you incorporate Neo4J in a closed, proprietary project, then you require a commercial license. NEO4J USA stated as a user, you can either buy commercial software, or contribute to open-source software. NEO4J USA omitted to state that an internal user, who does not distribute the open source software modifications is not required to provide the modifications to third parties. This is was a scare tactic to generate commercial licenses.

107.    There is perception that any modifications to open source software under a GPL or AGPL license requires the modified software to be open-made available to the open software community. By omitting the fact that internal users are not subject to the copyleft requirments of the GPL and AGPL licenses, NEO4J SWEDEN and NEO4J USA customers were likely deceived in buying a commercial version and paying a license fee and support for Neo4J instead of using the open source version for free and other lower cost service providers.

108.    Under the terms of the AGPL license, a user who does not distribute or convey modifications of the open source version of Neo4J software to the public has not duty to provide the modified source code to third parties.

109.    In 2016, Neo4J agreed that most users would choose the open source version of Neo4J because it was free. The US government has embraced open source software to save licensing costs. The key reason is the US government does not distribute modified open source so the viral copyleft terms in GPL and AGPL licenses is not an issue for the Government users. The copy left issue with GPL and AGPL licenses are

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                                              28

SER_3918

not an issue for users that do not distribute or convey modified versions of open source software. This is confirmed by GNU.org, the group which manages the GPL and AGPL licenses:

> If I only make copies of a GPL-covered program and run them, without distributing or conveying them to others, what does the license require of me?([#NoDistributionRequirements](#NoDistributionRequirements))

> Nothing. The GPL does not place any conditions on this activity.

The same rules apply to modified versions of the open source code:

> Does the GPL require that source code of modified versions be posted to the public? ([#GPLRequireSourcePostedPublic](#GPLRequireSourcePostedPublic))

> The GPL does not require you to release your modified version, or any part of it. **You are free to make modifications and use them privately, without ever releasing them. This applies to organizations (including companies), too; an organization can make a modified version and use it internally without ever releasing it outside the organization.**

> But *if* you release the modified version to the public in some way, the GPL requires you to make the modified source code available to the program's users, under the GPL.

> Thus, the GPL gives permission to release the modified program in certain ways, and not in other ways; but the decision of whether to release it is up to you.

[Emphasis added]

110.     PureThink and IGov are informed and believe that NEO4J USA and NEO4J SWEDEN has falsely advertised to customers, that use of the open source version of Neo4J requires that the use be "Open".

111.     When PureThink was working a deal with the IRS for development on the open source government edition developed by PureThink, NEO4J USA demanded that the IRS be charged a license fee on a per server bases for the software.

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

29

112.     The IRS asked PureThink the difference between free Neo4j open source and Neo4J's commercial version. As there was no significant difference, PureThink asked for Neo4J's guidance.  Neo4J USA told PureThink to tell the IRS the open source version had to be an open use and that the IRS could not use the open source version of Neo4J. NEO4J told PureThink it should not be advising the IRS they can use the APGL version.

113.     PureThink would not make this false representation and material omission of the APGL license to the IRS. NEO4J takes the position that there position is based on the company's intent but that intent is not what the APGL says. They claim that NEO4J USA's intent described under a document explaining a Fair Trade Software License controls but that is not the APGL under which the open source software is licensed. NEO4J USA and NEO4J SWEDEN falsely advertise that their intent controls over the APGL. However the open source software has been licensed for years under the AGPL and users are not bound by a separate document which is inconsistent with the terms of the AGPL. And, under the terms of the APGL, the restrictions may not be changed and no further restrictions, such as those NEO4J USA and NEO4J SWEDEN intend to impose, are allowed.

114.     PureThink is informed and believes that NEO4J USA directly contacted the IRS and told them using the open source version of Neo4J had to be open which is false advertising.

115.     PureThink and IGov are informed and believe that NEO4J USA and NEO4J SWEDEN have false advertised to other users and

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                        30

potential users that using the open source version of Neo4J had to be open otherwise, they had to buy the commercial version of the software.

116.    PureThink and IGov are informed and believe that NEO4J USA and NEO4J SWEDEN have false advertised that only authorized service providers may support the open version of Neo4J and have told potential customers that PureThink may not support the open version of Neo4J because of the term in section 4.3.2 of the Partner Agreement that unlawfully bars PureThink from supporting the open source version of Neo4J.

117.    PureThink and IGov are informed and believe that NEO4J USA's commercial version of Neo4J software is based on the open source version of Neo4J licensed under the GPL and the AGPL.  NEO4J USA has modified the open source version and distributes or conveys the commercial version in object code for a fee while not providing users the source code at no charge in violation of the GPL and AGPL.

118.    NEO4J SWEDEN and NEO4J USA have engaged in unfair competition as defined in Busines and Professions Code §17200.

119.    PureThink and IGov have suffered actual damages from NEO4J USA and NEO4J SWEDEN in lost sales of services to potential users and unless enjoined, will continue to suffer loses.

120.    It is likely without an injunction the conduct will continue as NEO4J USA has expressly stated it intends to shutdown PureThink, and by implication, IGov.

121.    PureThink and IGov request the following injunction as a result of NEO4J USA and NEO4J SWEDEN unfair business practices:

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD                                                                                  31

    a.  That NEO4J USA and NEO4J SWEDEN advise all commercial Neo4J license customers and potential customers and post on each repository where the open source software version of Neo4J is offered:

        i.  The Commons Clause added to the AGPL license is void and not a term of the license;

        ii.  That a user of an open source version of Neo4J is not required to make derivatives or modifications to the source code available when the user is only internally using the software;

        iii.  That any third party may provide support and development services for users of the open source version of Neo4J; and

        iv.  That PureThink and IGov are not barred from providing support and development services for users of the open source version of Neo4J.

122.     PureThink and IGov. request the following restition remedy as a result of NEO4J USA and NEO4J SWEDEN unfair business practices: That NEO4J USA and NEO4J SWEDEN refund all license and support fees paid by commercial Neo4J license customers.

## V.    Prayer for Relief

Wherefore PureThink and iGov request judgment against NEO4J USA and NEO4J SWEDEN as follows:

1. For general, special and punitive damages according to proof.

2. For declaratory relief that:

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

32

a. § 4.3.2 of the Partner Agreement is void under California Business and Professions Code §16600.

b. §§ 4.3.1 and 4.3.2 of the Partner Agreement are void under the AGPL License.

c. The Commons Clause NEO4J, SWEDEN added to the AGPL is void.

d. The Commons Clause does not prevent third parties, such as PureThink and IGOV from providing professional services to users of the open source versions of Neo4J where the AGPL has a Commons Clause.

e. PureThink and iGov and any user of NEO4J SWEDEN's public repository on GitHub may fork, use, display and perform all Content NEO4J SWEDEN has on its public GitHub Repository.

f. The Neo4j registered trademark be abandoned under the doctrine of Naked License.

3. That the registration to the NEO4J trademark be cancelled pursuant to 15 U.S.C. §1119.

4. For an preliminary and permanent injunction as a result of NEO4J USA and NEO4J SWEDEN's unfair business practices:

   a. That NEO4J USA and NEO4J SWEDEN advise all commercial Neo4J license customers and potential customers and post on each repository where the open source software version of Neo4J is offered:

      i. The Commons Clause added to the AGPL license is void and not a term of the license;

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

33

SER_3923

ii. That a user of an open source version of Neo4J is not required to make derivatives or modifications to the source code available when the user is only internally using the software;

iii. That any third party may provide support and development services for users of the open source version of Neo4J; and

iv. That PureThink and IGov are not barred from providing support and development services for users of the open source version of Neo4J.

5. For an order of restitution that NEO4J USA and NEO4J SWEDEN refund all license and support fees paid by commercial Neo4J license customers.

6. That Counter Claimants recover costs and attorneys fees as permitted by law, including under trademark law and copyright law and, because of the significant benefit to the public, Code of Civil Procedure §1021.5;

7. And for such other relief and remedies as the Court deems just.

Dated: December 9, 2019

_____/s/ Adron W. Beene_____
Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney At Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Attorney for Counter Claimants
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation and John Mark Suhy.

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

34

**DEMAND FOR JURY TRIAL**

Counter Claimant PURETHINK LLC and IGOV, Inc. and John Mark Suhy demand a trial by jury.

_____/s/ Adron W. Beene____
Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney At Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Attorneys for Counter Claimants
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation.

**FILER'S ATTESTATION**

I, Adron G. Beene, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with N.D. Cal. Civil Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

Dated: December 9, 2019

_____/s/ Adron G. Beene_____
Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney At Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Attorney for Defendants
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

PURETHINK, IGOV and JOHN MARK SUHY'S FIRST AMENDED COUNTERCLAIM
CASE NO. 5:18-cv-7182 EJD

35

**EXHIBIT A**



neo4j / **neo4j**

Dismiss

**Join GitHub today**

GitHub is home to over 28 million developers working together to host and review code, manage projects, and build software together.

Sign up

Branch: 3.4 ▾ **neo4j** / enterprise / neo4j-enterprise / **LICENSE.txt** Find file Copy path

**digitalstain** Updates enterprise LICENSE.txt and NOTICE.txt 6558e5e on May 13

3 contributors

694 lines (568 sloc) 35.1 KB

```
NOTICE
This package contains software licensed under different
licenses, please refer to the NOTICE.txt file for further
information and LICENSES.txt for full license texts.

Neo4j Enterprise object code can be licensed independently from
the source under separate commercial terms. Email inquiries can be
directed to: licensing@neo4j.com. More information is also
available at:https://neo4j.com/licensing/

The software ("Software") is developed and owned by Neo4j Sweden AB
(referred to in this notice as "Neo4j") and is subject to the terms
of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3, with the Commons Clause as follows:

                    GNU AFFERO GENERAL PUBLIC LICENSE
                       Version 3, 19 November 2007

 Copyright (C) 2007 Free Software Foundation, Inc. <http://fsf.org/>
 Everyone is permitted to copy and distribute verbatim copies
 of this license document, but changing it is not allowed.

                            Preamble

  The GNU Affero General Public License is a free, copyleft license
for software and other kinds of works, specifically designed to ensure
cooperation with the community in the case of network server software.

  The licenses for most software and other practical works are
designed to take away your freedom to share and change the works.  By
contrast, our General Public Licenses are intended to guarantee your
freedom to share and change all versions of a program--to make sure it
remains free software for all its users.

  When we speak of free software, we are referring to freedom, not
price.  Our General Public Licenses are designed to make sure that you
have the freedom to distribute copies of free software (and charge for
them if you wish), that you receive source code or can get it if you
want it, that you can change the software or use pieces of it in new
free programs, and that you know you can do these things.

  Developers that use our General Public Licenses protect your rights
with two steps: (1) assert copyright on the software, and (2) offer
you this License which gives you legal permission to copy, distribute
```

```
 46   and/or modify the software.
 47
 48     A secondary benefit of defending all users' freedom is that
 49   improvements made in alternate versions of the program, if they
 50   receive widespread use, become available for other developers to
 51   incorporate.  Many developers of free software are heartened and
 52   encouraged by the resulting cooperation.  However, in the case of
 53   software used on network servers, this result may fail to come about.
 54   The GNU General Public License permits making a modified version and
 55   letting the public access it on a server without ever releasing its
 56   source code to the public.
 57
 58     The GNU Affero General Public License is designed specifically to
 59   ensure that, in such cases, the modified source code becomes available
 60   to the community.  It requires the operator of a network server to
 61   provide the source code of the modified version running there to the
 62   users of that server.  Therefore, public use of a modified version, on
 63   a publicly accessible server, gives the public access to the source
 64   code of the modified version.
 65
 66     An older license, called the Affero General Public License and
 67   published by Affero, was designed to accomplish similar goals.  This is
 68   a different license, not a version of the Affero GPL, but Affero has
 69   released a new version of the Affero GPL which permits relicensing under
 70   this license.
 71
 72     The precise terms and conditions for copying, distribution and
 73   modification follow.
 74
 75                       TERMS AND CONDITIONS
 76
 77     0. Definitions.
 78
 79     "This License" refers to version 3 of the GNU Affero General Public
 80   License.
 81
 82     "Copyright" also means copyright-like laws that apply to other kinds
 83   of works, such as semiconductor masks.
 84
 85     "The Program" refers to any copyrightable work licensed under this
 86   License.  Each licensee is addressed as "you".  "Licensees" and
 87   "recipients" may be individuals or organizations.
 88
 89     To "modify" a work means to copy from or adapt all or part of the work
 90   in a fashion requiring copyright permission, other than the making of an
 91   exact copy.  The resulting work is called a "modified version" of the
 92   earlier work or a work "based on" the earlier work.
 93
 94     A "covered work" means either the unmodified Program or a work based
 95   on the Program.
 96
 97     To "propagate" a work means to do anything with it that, without
 98   permission, would make you directly or secondarily liable for
 99   infringement under applicable copyright law, except executing it on a
100   computer or modifying a private copy.  Propagation includes copying,
101   distribution (with or without modification), making available to the
102   public, and in some countries other activities as well.
103
104     To "convey" a work means any kind of propagation that enables other
105   parties to make or receive copies.  Mere interaction with a user through
106   a computer network, with no transfer of a copy, is not conveying.
107
108     An interactive user interface displays "Appropriate Legal Notices"
109   to the extent that it includes a convenient and prominently visible
110   feature that (1) displays an appropriate copyright notice, and (2)
111   tells the user that there is no warranty for the work (except to the
```

**EXHIBIT A**

SER_3928

12/7/2018                                    neo4j/LICENSE.txt at 3.4 · neo4j/neo4j · GitHub

```
112    extent that warranties are provided), that licensees may convey the
113    work under this License, and how to view a copy of this License.  If
114    the interface presents a list of user commands or options, such as a
115    menu, a prominent item in the list meets this criterion.
116
117      1. Source Code.
118
119      The "source code" for a work means the preferred form of the work
120    for making modifications to it.  "Object code" means any non-source
121    form of a work.
122
123      A "Standard Interface" means an interface that either is an official
124    standard defined by a recognized standards body, or, in the case of
125    interfaces specified for a particular programming language, one that
126    is widely used among developers working in that language.
127
128      The "System Libraries" of an executable work include anything, other
129    than the work as a whole, that (a) is included in the normal form of
130    packaging a Major Component, but which is not part of that Major
131    Component, and (b) serves only to enable use of the work with that
132    Major Component, or to implement a Standard Interface for which an
133    implementation is available to the public in source code form.  A
134    "Major Component", in this context, means a major essential component
135    (kernel, window system, and so on) of the specific operating system
136    (if any) on which the executable work runs, or a compiler used to
137    produce the work, or an object code interpreter used to run it.
138
139      The "Corresponding Source" for a work in object code form means all
140    the source code needed to generate, install, and (for an executable
141    work) run the object code and to modify the work, including scripts to
142    control those activities.  However, it does not include the work's
143    System Libraries, or general-purpose tools or generally available free
144    programs which are used unmodified in performing those activities but
145    which are not part of the work.  For example, Corresponding Source
146    includes interface definition files associated with source files for
147    the work, and the source code for shared libraries and dynamically
148    linked subprograms that the work is specifically designed to require,
149    such as by intimate data communication or control flow between those
150    subprograms and other parts of the work.
151
152      The Corresponding Source need not include anything that users
153    can regenerate automatically from other parts of the Corresponding
154    Source.
155
156      The Corresponding Source for a work in source code form is that
157    same work.
158
159      2. Basic Permissions.
160
161      All rights granted under this License are granted for the term of
162    copyright on the Program, and are irrevocable provided the stated
163    conditions are met.  This License explicitly affirms your unlimited
164    permission to run the unmodified Program.  The output from running a
165    covered work is covered by this License only if the output, given its
166    content, constitutes a covered work.  This License acknowledges your
167    rights of fair use or other equivalent, as provided by copyright law.
168
169      You may make, run and propagate covered works that you do not
170    convey, without conditions so long as your license otherwise remains
171    in force.  You may convey covered works to others for the sole purpose
172    of having them make modifications exclusively for you, or provide you
173    with facilities for running those works, provided that you comply with
174    the terms of this License in conveying all material for which you do
175    not control copyright.  Those thus making or running the covered works
176    for you must do so exclusively on your behalf, under your direction
177    and control, on terms that prohibit them from making any copies of
```

**EXHIBIT A**

SER_3929

12/7/2018                                    neo4j/LICENSE.txt at 3.4 · neo4j/neo4j · GitHub

```
178    your copyrighted material outside their relationship with you.
179
180      Conveying under any other circumstances is permitted solely under
181    the conditions stated below.  Sublicensing is not allowed; section 10
182    makes it unnecessary.
183
184      3. Protecting Users' Legal Rights From Anti-Circumvention Law.
185
186      No covered work shall be deemed part of an effective technological
187    measure under any applicable law fulfilling obligations under article
188    11 of the WIPO copyright treaty adopted on 20 December 1996, or
189    similar laws prohibiting or restricting circumvention of such
190    measures.
191
192      When you convey a covered work, you waive any legal power to forbid
193    circumvention of technological measures to the extent such circumvention
194    is effected by exercising rights under this License with respect to
195    the covered work, and you disclaim any intention to limit operation or
196    modification of the work as a means of enforcing, against the work's
197    users, your or third parties' legal rights to forbid circumvention of
198    technological measures.
199
200      4. Conveying Verbatim Copies.
201
202      You may convey verbatim copies of the Program's source code as you
203    receive it, in any medium, provided that you conspicuously and
204    appropriately publish on each copy an appropriate copyright notice;
205    keep intact all notices stating that this License and any
206    non-permissive terms added in accord with section 7 apply to the code;
207    keep intact all notices of the absence of any warranty; and give all
208    recipients a copy of this License along with the Program.
209
210      You may charge any price or no price for each copy that you convey,
211    and you may offer support or warranty protection for a fee.
212
213      5. Conveying Modified Source Versions.
214
215      You may convey a work based on the Program, or the modifications to
216    produce it from the Program, in the form of source code under the
217    terms of section 4, provided that you also meet all of these conditions:
218
219        a) The work must carry prominent notices stating that you modified
220        it, and giving a relevant date.
221
222        b) The work must carry prominent notices stating that it is
223        released under this License and any conditions added under section
224        7.  This requirement modifies the requirement in section 4 to
225        "keep intact all notices".
226
227        c) You must license the entire work, as a whole, under this
228        License to anyone who comes into possession of a copy.  This
229        License will therefore apply, along with any applicable section 7
230        additional terms, to the whole of the work, and all its parts,
231        regardless of how they are packaged.  This License gives no
232        permission to license the work in any other way, but it does not
233        invalidate such permission if you have separately received it.
234
235        d) If the work has interactive user interfaces, each must display
236        Appropriate Legal Notices; however, if the Program has interactive
237        interfaces that do not display Appropriate Legal Notices, your
238        work need not make them do so.
239
240      A compilation of a covered work with other separate and independent
241    works, which are not by their nature extensions of the covered work,
242    and which are not combined with it such as to form a larger program,
243    in or on a volume of a storage or distribution medium, is called an
```

**EXHIBIT A**

SER_3930

12/7/2018                                   neo4j/LICENSE.txt at 3.4 · neo4j/neo4j · GitHub

```
244   "aggregate" if the compilation and its resulting copyright are not
245   used to limit the access or legal rights of the compilation's users
246   beyond what the individual works permit.  Inclusion of a covered work
247   in an aggregate does not cause this License to apply to the other
248   parts of the aggregate.
249
250     6. Conveying Non-Source Forms.
251
252     You may convey a covered work in object code form under the terms
253   of sections 4 and 5, provided that you also convey the
254   machine-readable Corresponding Source under the terms of this License,
255   in one of these ways:
256
257       a) Convey the object code in, or embodied in, a physical product
258       (including a physical distribution medium), accompanied by the
259       Corresponding Source fixed on a durable physical medium
260       customarily used for software interchange.
261
262       b) Convey the object code in, or embodied in, a physical product
263       (including a physical distribution medium), accompanied by a
264       written offer, valid for at least three years and valid for as
265       long as you offer spare parts or customer support for that product
266       model, to give anyone who possesses the object code either (1) a
267       copy of the Corresponding Source for all the software in the
268       product that is covered by this License, on a durable physical
269       medium customarily used for software interchange, for a price no
270       more than your reasonable cost of physically performing this
271       conveying of source, or (2) access to copy the
272       Corresponding Source from a network server at no charge.
273
274       c) Convey individual copies of the object code with a copy of the
275       written offer to provide the Corresponding Source.  This
276       alternative is allowed only occasionally and noncommercially, and
277       only if you received the object code with such an offer, in accord
278       with subsection 6b.
279
280       d) Convey the object code by offering access from a designated
281       place (gratis or for a charge), and offer equivalent access to the
282       Corresponding Source in the same way through the same place at no
283       further charge.  You need not require recipients to copy the
284       Corresponding Source along with the object code.  If the place to
285       copy the object code is a network server, the Corresponding Source
286       may be on a different server (operated by you or a third party)
287       that supports equivalent copying facilities, provided you maintain
288       clear directions next to the object code saying where to find the
289       Corresponding Source.  Regardless of what server hosts the
290       Corresponding Source, you remain obligated to ensure that it is
291       available for as long as needed to satisfy these requirements.
292
293       e) Convey the object code using peer-to-peer transmission, provided
294       you inform other peers where the object code and Corresponding
295       Source of the work are being offered to the general public at no
296       charge under subsection 6d.
297
298     A separable portion of the object code, whose source code is excluded
299   from the Corresponding Source as a System Library, need not be
300   included in conveying the object code work.
301
302     A "User Product" is either (1) a "consumer product", which means any
303   tangible personal property which is normally used for personal, family,
304   or household purposes, or (2) anything designed or sold for incorporation
305   into a dwelling.  In determining whether a product is a consumer product,
306   doubtful cases shall be resolved in favor of coverage.  For a particular
307   product received by a particular user, "normally used" refers to a
308   typical or common use of that class of product, regardless of the status
309   of the particular user or of the way in which the particular user
```

**EXHIBIT A**

SER_3931

12/7/2018                                      neo4j/LICENSE.txt at 3.4 · neo4j/neo4j · GitHub

310    actually uses, or expects or is expected to use, the product.  A product
311    is a consumer product regardless of whether the product has substantial
312    commercial, industrial or non-consumer uses, unless such uses represent
313    the only significant mode of use of the product.
314
315       "Installation Information" for a User Product means any methods,
316    procedures, authorization keys, or other information required to install
317    and execute modified versions of a covered work in that User Product from
318    a modified version of its Corresponding Source.  The information must
319    suffice to ensure that the continued functioning of the modified object
320    code is in no case prevented or interfered with solely because
321    modification has been made.
322
323       If you convey an object code work under this section in, or with, or
324    specifically for use in, a User Product, and the conveying occurs as
325    part of a transaction in which the right of possession and use of the
326    User Product is transferred to the recipient in perpetuity or for a
327    fixed term (regardless of how the transaction is characterized), the
328    Corresponding Source conveyed under this section must be accompanied
329    by the Installation Information.  But this requirement does not apply
330    if neither you nor any third party retains the ability to install
331    modified object code on the User Product (for example, the work has
332    been installed in ROM).
333
334       The requirement to provide Installation Information does not include a
335    requirement to continue to provide support service, warranty, or updates
336    for a work that has been modified or installed by the recipient, or for
337    the User Product in which it has been modified or installed.  Access to a
338    network may be denied when the modification itself materially and
339    adversely affects the operation of the network or violates the rules and
340    protocols for communication across the network.
341
342       Corresponding Source conveyed, and Installation Information provided,
343    in accord with this section must be in a format that is publicly
344    documented (and with an implementation available to the public in
345    source code form), and must require no special password or key for
346    unpacking, reading or copying.
347
348       7. Additional Terms.
349
350       "Additional permissions" are terms that supplement the terms of this
351    License by making exceptions from one or more of its conditions.
352    Additional permissions that are applicable to the entire Program shall
353    be treated as though they were included in this License, to the extent
354    that they are valid under applicable law.  If additional permissions
355    apply only to part of the Program, that part may be used separately
356    under those permissions, but the entire Program remains governed by
357    this License without regard to the additional permissions.
358
359       When you convey a copy of a covered work, you may at your option
360    remove any additional permissions from that copy, or from any part of
361    it.  (Additional permissions may be written to require their own
362    removal in certain cases when you modify the work.)  You may place
363    additional permissions on material, added by you to a covered work,
364    for which you have or can give appropriate copyright permission.
365
366       Notwithstanding any other provision of this License, for material you
367    add to a covered work, you may (if authorized by the copyright holders of
368    that material) supplement the terms of this License with terms:
369
370       a) Disclaiming warranty or limiting liability differently from the
371       terms of sections 15 and 16 of this License; or
372
373       b) Requiring preservation of specified reasonable legal notices or
374       author attributions in that material or in the Appropriate Legal
375       Notices displayed by works containing it; or

**EXHIBIT A**

**SER_3932**

12/7/2018                                     neo4j/LICENSE.txt at 3.4 · neo4j/neo4j · GitHub

```
376
377       c) Prohibiting misrepresentation of the origin of that material, or
378       requiring that modified versions of such material be marked in
379       reasonable ways as different from the original version; or
380
381       d) Limiting the use for publicity purposes of names of licensors or
382       authors of the material; or
383
384       e) Declining to grant rights under trademark law for use of some
385       trade names, trademarks, or service marks; or
386
387       f) Requiring indemnification of licensors and authors of that
388       material by anyone who conveys the material (or modified versions of
389       it) with contractual assumptions of liability to the recipient, for
390       any liability that these contractual assumptions directly impose on
391       those licensors and authors.
392
393     All other non-permissive additional terms are considered "further
394   restrictions" within the meaning of section 10.  If the Program as you
395   received it, or any part of it, contains a notice stating that it is
396   governed by this License along with a term that is a further restriction,
397   you may remove that term.  If a license document contains a further
398   restriction but permits relicensing or conveying under this License, you
399   may add to a covered work material governed by the terms of that license
400   document, provided that the further restriction does not survive such
401   relicensing or conveying.
402
403     If you add terms to a covered work in accord with this section, you
404   must place, in the relevant source files, a statement of the
405   additional terms that apply to those files, or a notice indicating
406   where to find the applicable terms.
407
408     Additional terms, permissive or non-permissive, may be stated in the
409   form of a separately written license, or stated as exceptions;
410   the above requirements apply either way.
411
412     8. Termination.
413
414     You may not propagate or modify a covered work except as expressly
415   provided under this License.  Any attempt otherwise to propagate or
416   modify it is void, and will automatically terminate your rights under
417   this License (including any patent licenses granted under the third
418   paragraph of section 11).
419
420     However, if you cease all violation of this License, then your
421   license from a particular copyright holder is reinstated (a)
422   provisionally, unless and until the copyright holder explicitly and
423   finally terminates your license, and (b) permanently, if the copyright
424   holder fails to notify you of the violation by some reasonable means
425   prior to 60 days after the cessation.
426
427     Moreover, your license from a particular copyright holder is
428   reinstated permanently if the copyright holder notifies you of the
429   violation by some reasonable means, this is the first time you have
430   received notice of violation of this License (for any work) from that
431   copyright holder, and you cure the violation prior to 30 days after
432   your receipt of the notice.
433
434     Termination of your rights under this section does not terminate the
435   licenses of parties who have received copies or rights from you under
436   this License.  If your rights have been terminated and not permanently
437   reinstated, you do not qualify to receive new licenses for the same
438   material under section 10.
439
440     9. Acceptance Not Required for Having Copies.
441
```

**EXHIBIT A**

SER_3933

442    You are not required to accept this License in order to receive or
443  run a copy of the Program.  Ancillary propagation of a covered work
444  occurring solely as a consequence of using peer-to-peer transmission
445  to receive a copy likewise does not require acceptance.  However,
446  nothing other than this License grants you permission to propagate or
447  modify any covered work.  These actions infringe copyright if you do
448  not accept this License.  Therefore, by modifying or propagating a
449  covered work, you indicate your acceptance of this License to do so.
450
451    10. Automatic Licensing of Downstream Recipients.
452
453    Each time you convey a covered work, the recipient automatically
454  receives a license from the original licensors, to run, modify and
455  propagate that work, subject to this License.  You are not responsible
456  for enforcing compliance by third parties with this License.
457
458    An "entity transaction" is a transaction transferring control of an
459  organization, or substantially all assets of one, or subdividing an
460  organization, or merging organizations.  If propagation of a covered
461  work results from an entity transaction, each party to that
462  transaction who receives a copy of the work also receives whatever
463  licenses to the work the party's predecessor in interest had or could
464  give under the previous paragraph, plus a right to possession of the
465  Corresponding Source of the work from the predecessor in interest, if
466  the predecessor has it or can get it with reasonable efforts.
467
468    You may not impose any further restrictions on the exercise of the
469  rights granted or affirmed under this License.  For example, you may
470  not impose a license fee, royalty, or other charge for exercise of
471  rights granted under this License, and you may not initiate litigation
472  (including a cross-claim or counterclaim in a lawsuit) alleging that
473  any patent claim is infringed by making, using, selling, offering for
474  sale, or importing the Program or any portion of it.
475
476    11. Patents.
477
478    A "contributor" is a copyright holder who authorizes use under this
479  License of the Program or a work on which the Program is based.  The
480  work thus licensed is called the contributor's "contributor version".
481
482    A contributor's "essential patent claims" are all patent claims
483  owned or controlled by the contributor, whether already acquired or
484  hereafter acquired, that would be infringed by some manner, permitted
485  by this License, of making, using, or selling its contributor version,
486  but do not include claims that would be infringed only as a
487  consequence of further modification of the contributor version.  For
488  purposes of this definition, "control" includes the right to grant
489  patent sublicenses in a manner consistent with the requirements of
490  this License.
491
492    Each contributor grants you a non-exclusive, worldwide, royalty-free
493  patent license under the contributor's essential patent claims, to
494  make, use, sell, offer for sale, import and otherwise run, modify and
495  propagate the contents of its contributor version.
496
497    In the following three paragraphs, a "patent license" is any express
498  agreement or commitment, however denominated, not to enforce a patent
499  (such as an express permission to practice a patent or covenant not to
500  sue for patent infringement).  To "grant" such a patent license to a
501  party means to make such an agreement or commitment not to enforce a
502  patent against the party.
503
504    If you convey a covered work, knowingly relying on a patent license,
505  and the Corresponding Source of the work is not available for anyone
506  to copy, free of charge and under the terms of this License, through a
507  publicly available network server or other readily accessible means,

EXHIBIT A

SER_3934

508  then you must either (1) cause the Corresponding Source to be so
509  available, or (2) arrange to deprive yourself of the benefit of the
510  patent license for this particular work, or (3) arrange, in a manner
511  consistent with the requirements of this License, to extend the patent
512  license to downstream recipients.  "Knowingly relying" means you have
513  actual knowledge that, but for the patent license, your conveying the
514  covered work in a country, or your recipient's use of the covered work
515  in a country, would infringe one or more identifiable patents in that
516  country that you have reason to believe are valid.
517
518     If, pursuant to or in connection with a single transaction or
519  arrangement, you convey, or propagate by procuring conveyance of, a
520  covered work, and grant a patent license to some of the parties
521  receiving the covered work authorizing them to use, propagate, modify
522  or convey a specific copy of the covered work, then the patent license
523  you grant is automatically extended to all recipients of the covered
524  work and works based on it.
525
526     A patent license is "discriminatory" if it does not include within
527  the scope of its coverage, prohibits the exercise of, or is
528  conditioned on the non-exercise of one or more of the rights that are
529  specifically granted under this License.  You may not convey a covered
530  work if you are a party to an arrangement with a third party that is
531  in the business of distributing software, under which you make payment
532  to the third party based on the extent of your activity of conveying
533  the work, and under which the third party grants, to any of the
534  parties who would receive the covered work from you, a discriminatory
535  patent license (a) in connection with copies of the covered work
536  conveyed by you (or copies made from those copies), or (b) primarily
537  for and in connection with specific products or compilations that
538  contain the covered work, unless you entered into that arrangement,
539  or that patent license was granted, prior to 28 March 2007.
540
541     Nothing in this License shall be construed as excluding or limiting
542  any implied license or other defenses to infringement that may
543  otherwise be available to you under applicable patent law.
544
545     12. No Surrender of Others' Freedom.
546
547     If conditions are imposed on you (whether by court order, agreement or
548  otherwise) that contradict the conditions of this License, they do not
549  excuse you from the conditions of this License.  If you cannot convey a
550  covered work so as to satisfy simultaneously your obligations under this
551  License and any other pertinent obligations, then as a consequence you may
552  not convey it at all.  For example, if you agree to terms that obligate you
553  to collect a royalty for further conveying from those to whom you convey
554  the Program, the only way you could satisfy both those terms and this
555  License would be to refrain entirely from conveying the Program.
556
557     13. Remote Network Interaction; Use with the GNU General Public License.
558
559     Notwithstanding any other provision of this License, if you modify the
560  Program, your modified version must prominently offer all users
561  interacting with it remotely through a computer network (if your version
562  supports such interaction) an opportunity to receive the Corresponding
563  Source of your version by providing access to the Corresponding Source
564  from a network server at no charge, through some standard or customary
565  means of facilitating copying of software.  This Corresponding Source
566  shall include the Corresponding Source for any work covered by version 3
567  of the GNU General Public License that is incorporated pursuant to the
568  following paragraph.
569
570     Notwithstanding any other provision of this License, you have permission
571  to link or combine any covered work with a work licensed under version 3
572  of the GNU General Public License into a single combined work, and to
573  convey the resulting work.  The terms of this License will continue to

**EXHIBIT A**

SER_3935

```
574   apply to the part which is the covered work, but the work with which it is
575   combined will remain governed by version 3 of the GNU General Public
576   License.
577
578     14. Revised Versions of this License.
579
580     The Free Software Foundation may publish revised and/or new versions of
581   the GNU Affero General Public License from time to time.  Such new
582   versions will be similar in spirit to the present version, but may differ
583   in detail to address new problems or concerns.
584
585     Each version is given a distinguishing version number.  If the
586   Program specifies that a certain numbered version of the GNU Affero
587   General Public License "or any later version" applies to it, you have
588   the option of following the terms and conditions either of that
589   numbered version or of any later version published by the Free
590   Software Foundation.  If the Program does not specify a version number
591   of the GNU Affero General Public License, you may choose any version
592   ever published by the Free Software Foundation.
593
594     If the Program specifies that a proxy can decide which future
595   versions of the GNU Affero General Public License can be used, that
596   proxy's public statement of acceptance of a version permanently
597   authorizes you to choose that version for the Program.
598
599     Later license versions may give you additional or different
600   permissions.  However, no additional obligations are imposed on any
601   author or copyright holder as a result of your choosing to follow a
602   later version.
603
604     15. Disclaimer of Warranty.
605
606     THERE IS NO WARRANTY FOR THE PROGRAM, TO THE EXTENT PERMITTED BY
607   APPLICABLE LAW.  EXCEPT WHEN OTHERWISE STATED IN WRITING THE COPYRIGHT
608   HOLDERS AND/OR OTHER PARTIES PROVIDE THE PROGRAM "AS IS" WITHOUT WARRANTY
609   OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO,
610   THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR
611   PURPOSE.  THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE PROGRAM
612   IS WITH YOU.  SHOULD THE PROGRAM PROVE DEFECTIVE, YOU ASSUME THE COST OF
613   ALL NECESSARY SERVICING, REPAIR OR CORRECTION.
614
615     16. Limitation of Liability.
616
617     IN NO EVENT UNLESS REQUIRED BY APPLICABLE LAW OR AGREED TO IN WRITING
618   WILL ANY COPYRIGHT HOLDER, OR ANY OTHER PARTY WHO MODIFIES AND/OR CONVEYS
619   THE PROGRAM AS PERMITTED ABOVE, BE LIABLE TO YOU FOR DAMAGES, INCLUDING ANY
620   GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE
621   USE OR INABILITY TO USE THE PROGRAM (INCLUDING BUT NOT LIMITED TO LOSS OF
622   DATA OR DATA BEING RENDERED INACCURATE OR LOSSES SUSTAINED BY YOU OR THIRD
623   PARTIES OR A FAILURE OF THE PROGRAM TO OPERATE WITH ANY OTHER PROGRAMS),
624   EVEN IF SUCH HOLDER OR OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF
625   SUCH DAMAGES.
626
627     17. Interpretation of Sections 15 and 16.
628
629     If the disclaimer of warranty and limitation of liability provided
630   above cannot be given local legal effect according to their terms,
631   reviewing courts shall apply local law that most closely approximates
632   an absolute waiver of all civil liability in connection with the
633   Program, unless a warranty or assumption of liability accompanies a
634   copy of the Program in return for a fee.
635
636                      END OF TERMS AND CONDITIONS
637
638              How to Apply These Terms to Your New Programs
639
```

**EXHIBIT A**

SER_3936

neo4j/LICENSE.txt at 3.4 · neo4j/neo4j · GitHub

```
640      If you develop a new program, and you want it to be of the greatest
641  possible use to the public, the best way to achieve this is to make it
642  free software which everyone can redistribute and change under these terms.
643
644      To do so, attach the following notices to the program.  It is safest
645  to attach them to the start of each source file to most effectively
646  state the exclusion of warranty; and each file should have at least
647  the "copyright" line and a pointer to where the full notice is found.
648
649      <one line to give the program's name and a brief idea of what it does.>
650      Copyright (C) <year>  <name of author>
651
652      This program is free software: you can redistribute it and/or modify
653      it under the terms of the GNU Affero General Public License as
654      published by the Free Software Foundation, either version 3 of the
655      License, or (at your option) any later version.
656
657      This program is distributed in the hope that it will be useful,
658      but WITHOUT ANY WARRANTY; without even the implied warranty of
659      MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE.  See the
660      GNU Affero General Public License for more details.
661
662      You should have received a copy of the GNU Affero General Public License
663      along with this program.  If not, see <http://www.gnu.org/licenses/>.
664
665  Also add information on how to contact you by electronic and paper mail.
666
667    If your software can interact with users remotely through a computer
668  network, you should also make sure that it provides a way for users to
669  get its source.  For example, if your program is a web application, its
670  interface could display a "Source" link that leads users to an archive
671  of the code.  There are many ways you could offer source, and different
672  solutions will be better for different programs; see section 13 for the
673  specific requirements.
674
675    You should also get your employer (if you work as a programmer) or school,
676  if any, to sign a "copyright disclaimer" for the program, if necessary.
677  For more information on this, and how to apply and follow the GNU AGPL, see
678  <http://www.gnu.org/licenses/>.
679
680
681  "Commons Clause" License Condition
682
683  The Software is provided to you by the Licensor under the License, as
684  defined below, subject to the following condition. Without limiting
685  other conditions in the License, the grant of rights under the License
686  will not include, and the License does not grant to you, the right to
687  Sell the Software.  For purposes of the foregoing, "Sell" means
688  practicing any or all of the rights granted to you under the License
689  to provide to third parties, for a fee or other consideration,
690  a product or service that consists, entirely or substantially,
691  of the Software or the functionality of the Software. Any license
692  notice or attribution required by the License must also include
693  this Commons Cause License Condition notice.
```

**EXHIBIT A**

SER_3937

Case 5:18-cv-07182-EJD   Document 55   Filed 12/09/19   Page 48 of 60

**EXHIBIT B**

SER_3938

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0

**neo**technology *graphs are everywhere*

## NEO4J SOLUTION PARTNER AGREEMENT

| Partner: | PureThink LLC | Neo Representative: | Erik Nolten;<br>erik.nolten@neotechnology.com<br>Phone: +31 652 721 808 |
|---|---|---|---|
| Address: | 4202 Adrienne Dr | Address: | Neo Technology, Inc.<br>111 East 5th Avenue<br>San Mateo, CA 94401 |
| Contact Name: | John Mark Suhy Jr | Phone: | 1-855-636-4532 |
| Contact Phone: | 703-348-3968 x 101 | Web: | www.neotechnology.com |
| Contact Email: | jmsuhy@purethink.com | E-mail: | accounting@neotechnology.com |
| | | | |
| Support contact 1 | | Support contact 2 | |
| Name: | John Mark Suhy | Name: | Nikhil Budhiraja |
| Email: | jmsuhy@purethink.com | Email: | nikhil@purethink.com |
| Mobile: | 703-348-3968 x 101 | Mobile: | 703-348-3968 x 109 |
| | | | |
| Payment Information | Wire payment information:<br>Silicon Valley Bank<br>3003 Tasman Drive<br>Santa Clara,<br>CA 95054, USA | Routing and Transit #: 121140399<br>SWIFT code: SVBKUS6S<br>Credit Account #: 330072 6656 | |

| Neo4j Solution Partner Program Fee: | | | |
|---|---|---|---|
| Agreement Period | 1 Year | Annual fees: | USD 1,995.00 |
| <mark>Special condition: Fee is payable with the first Product order/referral.</mark> | | | |

**Territory.**  Subject to the terms and conditions of this Agreement, Partner may sell the Products in the following "Territory" (check all that apply). Applicable territories: ___X__ North America; _____ Central and South America; _____Europe; _____Middle Eastern; _____Africa; _____Japan; _____ India; ____ Australia and New Zealand; _____Asia Pacific excluding Australia, New Zealand, Japan and India; _____ (Other).

By signing below, "Partner" shall be entitled to the benefits set forth on Exhibit A and Partner acknowledges and agrees to the terms and conditions of the Partner Terms attached hereto as Exhibit B effective as of ____09-30-2014_____ ("Effective Date"), by and between Neo Technology, Inc. ("Neo Technology"), a corporation having its principal place of business at 111 East Fifth Ave., First Floor, San Mateo, CA 94401 ("Neo Technology") and the "Partner" below.

| Partner: | | Neo Technology, Inc. | |
|---|---|---|---|
| Name: | PureThink LLC | Name: | LARS NORDWALL |
| Title: | CTO / Director | Title: | COO |
| Date: | 09-30-2014 | Date: | 10/6/2014 |
| Signature: | *[signature]* | Signature: | *DocuSigned by:* LARS NORDWALL<br>—5E9692354E8643E... |

NEO TECHNOLOGY INC. CONFIDENTIAL

**EXHIBIT B**

SER_3939

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0

**neotechnology** graphs are everywhere

# NEO4J SOLUTION PARTNER AGREEMENT

**Exhibit A**
Benefits

In consideration for Partner's pre-payment of applicable fees and ongoing compliance with all of the other terms and conditions of this Agreement, and any Exhibits hereto, Neo Technology agrees to offer Partner the non-exclusive benefits described below.

| NEO4J SOLUTION PARTNER BENEFIT & QUALIFICATION TABLE | |
|---|---|
| Revenue sharing on sold subscriptions based on price list | 25% or as otherwise mutually agreed in an order form |
| Referral fee on sold new subscription | optional |
| Internal use of Neo4j for training and demo purposes | ✓ |
| Press release support for customer case studies | ✓ |
| Invitation to Neo events (fees may apply) | ✓ |
| Neo4j Partner Logo Usage | ✓ |
| Invitation to Product Roadmap Discussions | ✓ |
| Strategic Account Support | ✓ |
| Listing on Partner Page | ✓ |
| Access to training and certification program subject to execution of Authorized Training Partner Addendum | |
| Partner Portal Access | ✓ |
| Access to Neo4j Support | ✓ |
| Training discount | 20% |
| **Qualification and Partner Guidelines** | |
| Proven ability to commit and deliver on consulting engagements with high success rate | ✓ |
| Complete and submit Neo Partner Agreement | ✓ |
| 2 or more Certified Neo Consultants | ✓ |
| Joint Business & Marketing Plan for Territory | ✓ |
| Generate Case study(s) for joint customer | ✓ |
| Two Annual new customer acquisition target | ✓ |
| Organize Neo4j events | ✓ |

**EXHIBIT B**

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0

 neotechnology graphs are everywhere

# NEO4J SOLUTION PARTNER AGREEMENT

### Exhibit B
### Partner Terms

**1.**     **PARTNER PROGRAM AND ORDERS.** In exchange for the payment of applicable fees, Partner will be entitled to the benefits of the Partner Program for described on Exhibit A. Partner may submit orders for Products to Neo Technology from time to time. All orders must be consistent with the terms of this Agreement and are subject to Neo Technology's acceptance or rejection. If accepted, Partner shall execute the Neo Technology Order Form and shall: (i) shall cause the applicable End User to execute Neo Technology's Acknowledgement Form as Neo Technology provides to Partner from time to time or (ii) Partner hereby agrees to be responsible and jointly and severally liable for all of the End User/Licensee obligations found at http://www.neotechnology.com/terms/enduser-partner-us/ with respect to (a) the State of Maryland as the End User/Licensee under such terms and (b) with respect to any other governmental entity that Neo Technology approves of in a mutually agreed upon Neo Technology Order Form. All licenses to use the Products will be between Neo Technology and the applicable End User. Partner will inform Neo Technology of the status of each Product order renewal in writing at least thirty (30) days before the expiration date of each End User's subscription license period. In the event Partner fails to notify Neo Technology within the thirty (30) day period described above, Neo Technology may, in its sole discretion, renew the Product subscription directly with the End User.

**2.**     **PAYMENTS AND FEES.**

**2.1**     **Partner Program Fees.** During the term of this Agreement, Partner will pay to Neo Technology the annual Partner Program fees as specified on the front page of this Agreement. The first year's annual Program fees are due on the Effective Date of this Agreement. Thereafter, the annual Program fees for renewal years will be invoiced at the then current annual Partner Program fees and such renewal Partner Program fees will be invoiced annually in advance on each anniversary of the Effective Date of this Agreement.

**2.2**     **Product Orders and Fees.** Fees for orders for subscriptions to the Products, including for renewals subject to Section 1, will be at the discounted prices set forth in Exhibit A and will be invoiced in advance after Neo Technology's Acknowledgement Form is executed by Partner and the End User or as otherwise set forth in Section 1. Partner shall not enable any End User to download, install or use the Products unless and until the End User has duly executed Neo Technology's Acknowledgement Form or as otherwise set forth in Section 1. Neo Technology shall have the right to modify the discounted prices set forth in Exhibit A at any time. Neo Technology will provide the renewal amount to Partner for each End User through email within a reasonable period of time after Partner informs Neo Technology of the status of each Product order renewal as set forth in Section 1 above.

**2.3**     **Taxes/Duties.** All fees and charges payable by Partner under this Agreement are exclusive of any (a) duties or (b) present or future sales, use, value added, excise, or other governmental or similar taxes applicable to this Agreement. Neo Technology will separately itemize any applicable taxes and duties of which it is aware on each invoice, unless Partner furnishes Neo Technology with a properly executed tax exemption certificate certifying that it does not owe such taxes and duties. Partner will be responsible for paying any applicable taxes and duties currently or hereafter assessed by a government agency, other than taxes based on Neo Technology's net income. If all or any part of any payment owed to Neo Technology under this Agreement is withheld, based upon a claim that such withholding is required pursuant to the tax laws of any country or its political subdivisions and/or any tax treaty between the U.S. and any such country, such payment shall be increased by the amount necessary to result in a net payment to Neo Technology of the amounts otherwise payable under this Agreement.

**2.4**     **Payment.** Unless otherwise indicated in addendums to this Agreement, payments of all invoices: (a) will be paid within thirty (30) days of the date of the invoice; and (b) will be made in EUROS or U.S. dollars as set forth on the front page of this Agreement or as Neo Technology otherwise specifies without right of set off or chargeback. All fees are non-refundable. All amounts not paid when due are subject to a late fee of the lesser of one percent (1%) per month or the maximum amount allowable by law.

**2.5**     **Notification of Changes.** Neo Technology will provide Partner with sixty (60) days written notice of any changes in the Partner program benefits set forth on Exhibit A.

**2.6**     **Audit Rights.** Partner will, during this Agreement and for a period of one (1) year after termination, maintain records relating to its performance under this Agreement. Partner agrees that Neo Technology, upon at least ten (10) days prior written notice during business hours may, at its own cost and expense directly or through an agent inspect such accounts, records and other information as may be required to verify Partner's compliance with this Agreement. The cost of the audit will be borne by Neo Technology unless the audit reveals an underpayment by Partner to Neo Technology, in which case Partner will immediately pay the amount of the underpayment and will pay for the cost of the audit.

**3.**     **CONFIDENTIALITY.** Each party acknowledges that it acquires only the right to use the other party's Confidential Information under the terms and conditions of this Agreement and does not acquire any rights of ownership or title in the other party's Confidential Information. Each party will hold in confidence any Confidential Information received by it from the other and will protect the confidentiality of such with the same degree of care that it exercises with respect to its own information of like import, but in no event less than reasonable care, for a period of five (5) years from receipt. Each party will only disclose Confidential Information to its employees, agents, representatives and authorized contractors (collectively "Representatives") having a need to know for the purposes of this Agreement. Each party will notify and inform such Representatives of each party's limitations, duties, and obligations regarding use, access to, and nondisclosure of Confidential Information and will obtain or have obtained its Representatives' agreements to comply with such limitations, duties, and obligations with regard to such Confidential Information no less restrictive than those contained herein. Each party is liable for all acts and omissions of the Representatives related to the other party's Confidential Information. Each party agrees to give notice to the other party immediately after learning of or having reason to suspect a breach of any of the proprietary restrictions set forth in this Section. In the event that a party is required to disclose Confidential Information pursuant to any applicable statute, regulation or order of a court of competent jurisdiction, that party will use commercially reasonable efforts to notify the other party of the required disclosure.

**4.**     **LICENSES AND OWNERSHIP.**

**4.1**     **Licenses.** Neo Technology hereby grants to Partner a non-exclusive, non-transferable limited license during the term of this Agreement to: (i) use the Products solely to demonstrate the Products to potential customers in connection with its performance under this Agreement; (ii) provided that Partner has executed an Authorized Training Partner Addendum, use the Products to provide training and Level 1 and Level 2 Support to End Users that have licensed the Products from Neo Technology, with such Support as described on Exhibit C; (iii) use the Neo Technology trademarks solely to market and promote the Products in accordance with the terms of this Agreement; and (iv) market and resell licenses to the Products (in object code only) to End Users, for use by End Users for their internal business purposes and subject to the End Users' agreement to Neo Technology's Acknowledgement Form and license agreement or as otherwise set forth in Section 1. Partner will use Neo Technology trademarks only in accordance with Neo Technology's then-current trademark usage guidelines. Any use by Partner of Neo Technology trademarks will inure to the benefit of Neo Technology. Neo Technology will provide Partner with Level 3 Support as described on Exhibit C.

**4.2**     **Pre-Existing Technology.** Each party acknowledges and agrees that, as between the parties, each party is and will remain the sole and exclusive owner of all right, title, and interest in and to its pre-existing technology, and all associated Intellectual Property Rights, and that this Agreement does not affect such ownership. Each party acknowledges that it acquires no rights under this Agreement to the other party's pre-existing technology other than the limited rights specifically granted in this Agreement. Neo Technology will own all right, title, and interest in and to all Products and derivative works of the Products and all associated Intellectual Property Rights. If Partner acquires any rights, including any Intellectual Property Rights, in the Products or derivative works thereof, Partner hereby assigns and agrees to assign to Neo Technology all such rights.

**4.3**     **Modifications to Pre-Existing Technology.** Each party acknowledges and agrees that, as between the parties, each party is and will remain the sole and exclusive owner of all right, title, and interest in and to any modifications and/or derivative works to its pre-existing technology regardless of who created such modifications and/or derivative works, and all associated Intellectual Property Rights. Each party acknowledges that it acquires no rights under this Agreement to the modifications and/or derivative works of the other party's pre-existing technology other than the limited rights specifically granted in this Agreement.

**4.3**     **Restrictions.**

**4.3.1** During the term of this Agreement, Partner may not use or run on any of Partner's hardware, or have deployed for internal use, any Neo Technology Community Edition Products for commercial or production use. In no event shall Partner reverse engineer, distribute or otherwise use the Products for its own internal use. There are no implied rights. Partner will not fork or bifurcate the source code for any Neo Technology Community Edition Products into a separately maintained source code repository so that development done on the original code requires manual work to be transferred to the forked software or so that the forked software starts to have features not present in the original software.

**4.3.2** During the term of this Agreement and up until thirty six (36) months after the termination or expiration of this Agreement, Partner may not develop, market, distribute or offer any services related to any Neo Technology Community Edition Products, derivative works of such products, or any Partner software code made to work with Neo Technology Community Edition Products (including, without limitation, hosting services, training, technical support, configuration and customization services, etc.).

**4.3.3** During the term of this Agreement, Partner will not accept work, enter into a contract or accept an obligation inconsistent or incompatible with Partner's obligations, or the scope of services to be rendered for Neo Technology, under this Agreement. Partner warrants that, to the best of Partner's knowledge, there is no other existing contract or duty on Partner's part that conflicts with or is inconsistent with this Agreement. Partner agrees to indemnify and hold harmless Neo Technology from any and all losses and liabilities incurred or suffered by Neo Technology by reason of the alleged breach by Partner of any services agreement between Partner and any third party.

**4.3.4** Partner shall conduct and perform its obligations under this Agreement in a manner that reflects favorably on Neo Technology at all times. Partner shall not make any representations or warranties regarding Neo Technology or the Products. Partner agrees to indemnify, defend and hold harmless Neo Technology from any and all claims arising from any representations or warranties made by Partner regarding Neo Technology and/or Product(s) and/or Neo Technology Services. Partner may not approach any End Users who purchased Products directly from Neo Technology for the purpose of renewing or upgrading the End User's subscription to the Products through Partner.

**5.**     **DISCLAIMER.** NEO TECHNOLOGY MAKES NO WARRANTIES REGARDING THE PRODUCTS OR ANY INFORMATION PROVIDED BY NEO TECHNOLOGY HEREUNDER, EITHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT OR FITNESS FOR A PARTICULAR PURPOSE.

**6.**     **LIMITATION OF LIABILITY.** NEO TECHNOLOGY WILL NOT BE LIABLE FOR ANY INDIRECT, PUNITIVE, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGE IN CONNECTION WITH OR ARISING OUT OF OR RELATED TO THIS AGREEMENT (INCLUDING LOSS OF BUSINESS, REVENUE, PROFITS, USE, DATA, OR OTHER ECONOMIC ADVANTAGE), HOWEVER IT ARISES, WHETHER FOR BREACH OR IN TORT (INCLUDING NEGLIGENCE), EVEN IF NEO TECHNOLOGY HAS BEEN PREVIOUSLY ADVISED OF THE

NEO TECHNOLOGY INC. CONFIDENTIAL

# EXHIBIT B

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0

 graphs are everywhere

# NEO4J SOLUTION PARTNER AGREEMENT

POSSIBILITY OF SUCH DAMAGE. NEO TECHNOLOGY'S AGGREGATE CUMULATIVE LIABILITY FOR CLAIMS RELATING TO THIS AGREEMENT, WHETHER FOR BREACH OR IN TORT, WILL BE LIMITED TO THE AMOUNT PAID BY PARTNER TO NEO TECHNOLOGY UNDER THIS AGREEMENT IN THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE ACT OR OMISSION FIRST GIVING RISE TO THE CLAIM.   LIABILITY FOR DAMAGES WILL BE LIMITED AND EXCLUDED, EVEN IF ANY EXCLUSIVE REMEDY PROVIDED FOR IN THIS AGREEMENT FAILS OF ITS ESSENTIAL PURPOSE.

**7.**       **TERM AND TERMINATION.**

**7.1**       **Term.** This Agreement will commence on the Effective Date, and remain in effect for a period of one (1) year.  Thereafter, this Agreement will automatically renew at additional one (1) year periods unless either party provides at least sixty (60) days prior written notice to the other party of its intent not to renew.

**7.2**       **Termination.** This Agreement may be terminated by a party for cause immediately if (a) the other ceases to do business, or otherwise terminates its business operations; or (b) the other materially breaches any material provision of this Agreement and fails to cure such breach within thirty (30) days of written notice describing the breach. In addition, Neo Technology may terminate this Agreement at any time by providing Partner with ninety (90) days prior written notice.  This Agreement may be terminated as set forth on Exhibit C.

**7.3**       **Effect of Termination.** Upon termination of this Agreement by either party (a) all rights and licenses of Partner hereunder will terminate  and Partner shall cease all communications with End Users regarding the Products; and (b) each party will immediately return to the other party all Confidential Information in its possession, custody or control in whichever form held (including all copies or embodiments of the Confidential Information) and will cease using any trademarks, service marks and other designations of the other party; and (c) Partner shall pay to Neo Technology all outstanding fees. To remove all doubt, except as set forth in this Agreement, it is hereby clarified that Partner will not be entitled to any additional remuneration, or reimbursement of any expenses based on the expiration or termination of this Agreement.  An addendum to this Agreement may specify additional effects of termination of this Agreement.  After any termination of this Agreement, Neo Technology shall not be restricted in any manner from licensing or contracting with End Users.

**7.4**       **Survival.** In addition to any provisions set forth on an addendum to this Agreement that expressly survive termination or expiration of this Agreement, any definitions any payment obligations that accrued prior to the effective termination or expiration date and Sections 2.6, 3, 4.2, 4.3.2 (as set forth therein), 4.3.4, 5, 6, 7, 8, 10 and 11 will survive the expiration or termination of this Agreement.
**8.**       **INDEMNITY.**  Partner will indemnify, defend and hold harmless Neo Technology from and against any and all third party claims, suits, actions, demands and proceedings against Neo Technology and all losses, costs and liabilities related thereto arising out of or related to any negligence by Partner or any other act or omission of Partner, including without limitation any breach of this Agreement by Partner.
**9.**       **MARKETING**
**9.1  Marketing.**  Provided that Partner complies with all of the obligations herein, Neo Technology will include the Partner company logo and profile on the Neo Technology website.  Partner will include the Neo Technology company logo on Partner website in accordance with the Neo Technology trademark usage guidelines.  Each party may issue a press release announcing that Partner is a Partner as the other party approves in writing.  Each party will provide a quote from an executive to support the other party's press release.  All marketing activities are subject to approval by both Partner and Neo Technology.
**9.2       Surveys.**  Neo Technology may issue surveys to Partner once per quarter in an effort to improve customer satisfaction.  Partner will provide responses within ten (10) business days of receipt of each survey.

**10.**       **GENERAL TERMS.**

**10.1       Force Majeure.** A party is not liable under this Agreement for non-performance caused by events or conditions beyond that party's control if the party makes reasonable efforts to perform.

**10.2       Relationship of Parties.** This Agreement is not intended to create a relationship such as a partnership, franchise, joint venture, agency, or employment relationship.  Neither party may act in a manner which expresses or implies a relationship other than that of independent contractor, nor bind the other party.

**10.3       Notices.** All written notices required by this Agreement must be delivered to the addresses specified above, either in person or by a means evidenced by a delivery receipt.  All notices will be effective upon receipt.

**10.4       Assignment.** Neither party may assign or otherwise transfer any of its rights or obligations under this Agreement, without the prior written consent of the other party; provided, however, either party may assign this Agreement without the other party's consent to a parent or subsidiary of such party or in the case of a merger or sale of all or substantially all of its assets or stock.

**10.5       Waiver or Delay.** Any express waiver or failure to exercise promptly any right under this Agreement will not create a continuing waiver or any expectation of non-enforcement.

**10.6       Provisions Found Invalid.** If any term or provision of this Agreement is found to be invalid under any applicable statute or rule of law then, that provision notwithstanding, this Agreement will remain in full force and effect and such provision will be deemed omitted; provided, however, in lieu of such omitted provision there will be added to this Agreement a valid provision which is as nearly identical to the omitted provision as possible.

**10.7       Construction.** This Agreement has been negotiated by the parties, each of which has been represented by counsel.  This Agreement will be fairly interpreted in accordance with its terms, without any strict construction in favor of or against either party.

**10.8       Governing Law.**  Any action related to this Agreement will be governed by the laws of California without regard for its choice of law provisions.  The United Nations Convention on Contracts for the International Sale of Goods will not apply.

**10.9       Venue.** Except as set forth below, the courts seated in San Mateo, California, will have sole and exclusive jurisdiction for all purposes in connection with any action or proceeding that arises from, or relates to, this Agreement, and each party hereby irrevocably waives any objection to such exclusive jurisdiction. Notwithstanding anything in this Agreement to the contrary, Neo Technology may seek injunctive or other equitable relief in any court of competent jurisdiction to protect any actual or threatened misappropriation or infringement of its intellectual property rights or those of its licensors, and Partner hereby submits to the exclusive jurisdiction of such courts and waives any objection thereto on the basis of improper venue, inconvenience of the forum or any other grounds.

**10.10       Export.** Partner will not export the Products in violation of the export laws of the United States or of any other country.

**10.11       Non-solicitation.** During the term of this Agreement and for a period of one (1) year thereafter Partner will not directly or indirectly, either alone or in association with others, (a) solicit, or permit any of its affiliates to solicit, any employee of Neo Technology or its affiliates to leave the employ of Neo Technology or any of its affiliates, or (b) solicit for employment, hire, or engage as an independent contractor, or permit any of its affiliates to solicit for employment, hire, or engage as an independent contractor, any person who was employed by Neo Technology or its affiliates; provided, that this clause (b) will not apply to any individual whose employment with Neo Technology or any of its affiliates has been terminated for a period of six (6) months or longer and provided further that this Section 10.11 will not prohibit general advertisement of employment opportunities not specifically targeting any employee(s) of Neo Technology or its affiliates.

**10.13       Other.** This Agreement and attached Exhibit(s) is the entire agreement between the parties.  This Agreement supersedes and cancels any prior documents or agreements, whether written or oral, regarding the subject matter addressed in this Agreement and attached Exhibit(s).  If any terms on Partner's orders conflict with the terms of this Agreement, the conflicting terms of this Agreement shall control. Any preprinted terms on Partner's purchase order or similar ordering or other document are hereby rejected.

**11.**       **DEFINITIONS.**

"Confidential Information" means information which has value because it is not generally known and which the disclosing party uses reasonable means to protect and includes without limitation any information designated as confidential or proprietary by either party to this Agreement upon disclosure.  Confidential Information may include proprietary information of third parties who have granted licenses to or have contractual relationships with the disclosing party.  Confidential Information excludes information that receiving party can clearly establish by written evidence: (a) was in the possession of, or was known by, receiving party prior to its receipt from disclosing party; (b) is or becomes generally known to the public without violation of this Agreement; (c) is obtained by receiving party from a third party not under any obligation of confidentiality; or (d) is independently developed by receiving party without use of Confidential Information. Furthermore, disclosure of Confidential Information will not be prohibited if disclosure is required by law, regulation or order of a court of competent jurisdiction.

"End User" means an end customer that may use the Products for their own internal use and not for resale or distribution.

"Intellectual Property Rights" means all intellectual property rights worldwide arising under statutory or common law or by contract and whether or not perfected, now existing or hereafter filed, issued, or acquired, including all: (a) patent rights; (b) rights associated with works of authorship including copyrights and mask work rights; (c) rights relating to the protection of trade secrets and confidential information; (d) trademarks, service marks, trade dress and trade names; and (e) any right analogous to those set forth in this Agreement and any other proprietary rights relating to intangible property.

"Neo Technology Community Edition Product" means an open source version of a Neo Technology software product.

"Products" means the Neo4J commercial software provided by Neo Technology and licensed to the End User.

"Support" refers generally to the provision of support as described in Exhibit C of this Agreement.

NEO TECHNOLOGY INC. CONFIDENTIAL

# EXHIBIT B

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0

 graphs are everywhere

# NEO4J SOLUTION PARTNER AGREEMENT

## Exhibit C
### Support

**1. Introduction**. This Support Summary is an attachment to the Partner Agreement between Neo Technology and the applicable Partner and is automatically deemed part of, and governed by, the Partner Agreement. Unless otherwise defined in this Support Summary, any capitalized term used in this Support Summary will have the meaning given it in the Partner Agreement.

**2. Partner's Support Obligations**. Partner will provide First and Second Line Support to End User(s) for the Products. This First  and Second Line Support shall be provided in accordance with Neo Technology's standard Support Terms, available at http://neotechnology.com/support-terms, and be provided in the time zone and local language of End User(s) unless agreed otherwise with End User(s) and Neo Technology. Additionally, Partner commits to agreeing with End User(s) on the manner in which Partner will provide First and Second Line Support, including the minimum response time(s). Partner will provide for any First and Second Line Support request by End User(s), and will provide Neo Technology with a summary of each such agreement.

**3. Deficiencies**.  In the event an End User is dissatisfied with Partner's Support, or Neo Technology otherwise reasonably believes that Partner is not providing such Support in accordance with accepted industry standards, then Neo Technology will notify Partner in writing and both parties will work together in good faith to resolve the deficiencies. If within thirty (30) days, Neo Technology does not believe, in its sole discretion, that such deficiencies have been resolved, Neo Technology may require that Partner cease the provision of Support and allow Neo Technology, or a nominated representative of Neo Technology, to provide such Support directly to the applicable End User(s). In such event, Partner agrees to provide reasonable cooperation in the transition of Support to Neo Technology, or the nominated representative of Neo Technology, and, if Partner was paid in advance for future Support, Partner will pay Neo Technology agreed-to amounts for the period of Support to be provided by Neo Technology or its nominated representative.

**4. Partner Certification**.  Partner must meet any certification requirements specified by Neo Technology from time to time in writing, including, without limitation, the requirement to have on Partner's staff at least two (2) Neo Technology certified engineers within six (6) months of the Effective Date. Neo Technology will offer, and Partner may order, training programs in accordance with Neo Technology's then-current program rates or as agreed by the parties in writing. In addition, Partner will comply with any additional certification and training requirements established by Neo Technology from time to time, within ninety (90) days notice from Neo Technology. Support certification is based on a combination of performance-based tests and attended training days that measure competency on Products.

**5. Neo Technology's Support Obligations**.  For the purposes of Support, Neo Technology will consider Partner as a customer and provide Partner with Second Line Support in accordance with Neo Technology's standard Support Terms, available at http://neotechnology.com/support-terms. Partner will meet all obligations of a customer described in the Support Terms. Partner agrees to contact Neo Technology for Second Line Support only when, after reasonable commercial efforts, Partner has identified an issue related specifically to Product and is unable to determine a resolution.  If any terms of the Support Terms at http://neotechnology.com/support-terms conflict with any terms of this Exhibit C, the conflicting terms of this Exhibit C shall control.

**6. Cooperation**.  Partner will cooperate with and provide assistance to Neo Technology as Neo Technology may reasonably request in connection with Neo Technology's Support obligations, including, without limitation, the following:

6.1. *Test Code*.  Partner will use its best efforts to provide Neo Technology functioning test code that reproduces and isolates the issue in Product. Such test code must be reproducible using systems and tooling available to Neo Technology. In addition, Partner will remove extraneous comments and code from the test code provided and to the extent possible, such code will be fully self-contained, automated and will demonstrate the precise issue reported rather than other possible problems. If Partner cannot provide test code that reproduces the issue, Partner acknowledges that Neo Technology may be unable to provide a resolution to the issue. In such cases, Neo Technology will work with Partner to assist in the development of a test case.

6.2. *Access*.  Partner will use its best efforts to provide Neo Technology with access (via remote telecommunications and, if applicable, on-site access at the End User's or Partners premises) to the extent necessary to allow Neo Technology to provide Support. If Partner cannot provide remote access, Neo Technology may be unable to provide a resolution to the issue.

6.3. *Assistance*.  Partner will provide Neo Technology with a continually-available engineer who will promptly assist Neo Technology with data gathering, testing, and applying all fixes to the applicable environment for Severity Level 1 and Severity Level 2 issues.

**7. Data**.  In connection with any activities provided hereunder, Partner will only share or otherwise disclose data to Neo Technology for which Partner has obtained the rights, and express consent of the data subject, to disclose to Neo Technology.

**8. Reporting**.  Partner will provide Neo Technology with a monthly report detailing the status of all Severity Level 1 and Severity Level 2 Support cases, as defined in the Support Terms, provided to each End User, including all information reasonably requested by Neo Technology.  Such reports will be provided on the first Friday of every month and cover the previous month's activities. Partner acknowledges that Neo Technology may change the reporting obligations described in this Section, and Partner will comply with any new reporting obligations within thirty (30) days of Neo Technology's request.  The Support report will provide the following:

- Case number (provided by Partner to End User)
- Partner ID (provided by Neo Technology)
- End user name and contact details
- Status (e.g. new, open, hold, solved, closed)
- Severity Level, based on the categories defined in Neo Technology's standard Support Terms.
- Initial response time; opened and closed date
- Responsible support representative
- Product
- Issue description and type, and root cause description

**9. Exclusions**.  Neo Technology will not be obliged to provide Support to Partner for any issue arising out of any of the following events:

- A failure of hardware, equipment or programs not provided by Neo Technology
- Support for any versions of the Product that are not obtained by Partner via the Neo Technology Customer Support Portal
- Use in a Production Environment of versions of the Product not marked as 'Generally Available'
- Support for any version of the Product in production more than two years from the date of its general availability
- Any cause or causes beyond the reasonable control of Neo Technology (e.g. floods, fires, loss of electricity or other utilities)
- Partner's or End User's failure to comply with operating instructions contained in the Product documentation
- Any modification, enhancement or customization of the Product by anyone other than Neo Technology
- APIs, interfaces, web services or data formats other than those included with the Product

**10. Other Terms**.  Neo Technology may modify its processes and requirements from time to time upon reasonable written notice to Partner; provided that any such changes will apply only prospectively.

**11. Termination.**  Neo Technology reserves the right, at any time, to withdraw the availability of Support for a Product with twelve (12) months prior written notice.

NEO TECHNOLOGY INC. CONFIDENTIAL

## EXHIBIT B

**EXHIBIT C**

DocuSign Envelope ID: F6D9F641-CA88-486B-A516-365FE7206262



San Mateo, 11. April 2015

To whom it may concern,

PureThink LLC a Delaware Company, is the only Neo4j Government Edition reseller that is certified to resell and support to the US Federal Government, Department of Defense (DOD), and Intelligence Agencies.

This agreement can be provided to Government Agencies to support any **Federal Acquisition Regulation (FAR)** regulations.

Signed: _LARS NORDWALL_
5E9692354E8643E...

Signed: _____

| | |
|---|---|
| Neo Technology, Inc.<br>Lars Nordwall<br>COO<br>Neo Technology, Inc.<br>lars.nordwall@neotechnology.com<br>1-855-636-4532 | PureThink LLC<br>John Mark Suhy<br>CTO PureThink LLC<br>jmsuhy@purethink.com<br>703-862-7780 |

Neo Technology, Inc.   111 East Fifth Avenue   San Mateo, CA  1-855-636-4532

**EXHIBIT C**

DocuSign Envelope ID: 9C05B5E7-6D91-4C15-A1C5-81FB1B29C22F



San Mateo, 23. June 2016

To whom it may concern,

PureThink LLC a Delaware Company, is the only Neo4j Government Edition reseller that is certified to resell and support to the US Federal Government, Department of Defense (DOD), and Intelligence Agencies.

This agreement can be provided to Government Agencies to support any Federal Acquisition Regulation (FAR) regulations.

Signed: LARS NORDWALL
DocuSigned by:
5E9692354E8643E...

Signed:

**Neo Technology, Inc.**
Lars Nordwall
COO
Neo Technology, Inc.
lars.nordwall@neotechnology.com
1-855-636-4532

**PureThink LLC**
John Mark Suhy
CTO
PureThink LLC
jmsuhy@purethink.com
703-862-7780

**EXHIBIT C**

Case 5:18-cv-07182-EJD   Document 55   Filed 12/09/19   Page 57 of 60

**EXHIBIT D**

SER_3947

12/11/2018                              purethink Mail - FW: Termination of Neo4j Solution Partner PureThink LLC



John Mark Suhy <jmsuhy@purethink.com>

## FW: Termination of Neo4j Solution Partner PureThink LLC

**Dunn Michael C** <Michael.C.Dunn@irs.gov>                                    Wed, Jul 12, 2017 at 6:13 AM
To: "Suhy John M Jr [Contractor]" <John.M.SuhyJr@irs.gov>, "jmsuhy@purethink.com" <jmsuhy@purethink.com>
Cc: Hess Chris <Christopher.E.Hess@irs.gov>, Goss Renee Y <Renee.Y.Goss@irs.gov>, Rosenmerkel Lisa S
<Lisa.S.Rosenmerkel@irs.gov>, Butler Jeff <Jeff.Butler@irs.gov>

Hello John Mark,

We received this notification from Jason (Neo4j), and so it's been passed onto Procurement too: Vivian and
Genevieve.  One question I have for this existing contract is if services are stopped due to what Neo4j
states below regarding Purethink's inability to provide open-source version support in the below?  Now this
is me asking from an initial statement, and so there's probably also a need to either work through Renee
to the Procurement folks and/or talk with them too, since I figured they're going to reach out after receiving this
email from Jason.

"Regarding the consulting services, please be advised that PureThink is not authorized to provide consulting services
and support on open source versions of Neo4j products… prohibit them from providing any consulting services on
these products during the term of their agreement and for a period of thirty six (36) months following termination.  Neo
will work with IRS to ensure that it receives the correct product and services from an authorized Neo4j partner."

**Michael C. Dunn**

Data Management Division/Business Systems Planning

Research, Applied Analytics, & Statistics

(o) 202.803.9009

**From:** Dunn Michael C
**Sent:** July-12-17 6:03 AM
**To:** 'Jason Zagalsky' <jason@neo4j.com>
**Cc:** vvivian.d.daniels@irs.gov; John Broad <john.broad@neo4j.com>; Goss Renee Y
<Renee.Y.Goss@irs.gov>
**Subject:** RE: Termination of Neo4j Solution Partner PureThink LLC

Hello, Thank Jason. I'm looping in Renee Goss, our COR on the Purethink contract.

**EXHIBIT D**

**SER_3948**

12/11/2018                              purethink Mail - FW: Termination of Neo4j Solution Partner PureThink LLC

**Michael C. Dunn**

Data Management Division/Business Systems Planning

Research, Applied Analytics, & Statistics

(o) 202.803.9009

**From:** Jason Zagalsky [mailto:jason@neo4j.com]
**Sent:** July-11-17 7:49 PM
**To:** Dunn Michael C <Michael.C.Dunn@irs.gov>
**Cc:** vvivian.d.daniels@irs.gov; John Broad <john.broad@neo4j.com>
**Subject:** Termination of Neo4j Solution Partner PureThink LLC

July 11, 2017

Internal Revenue Service

Attn: Michael Dunn

Cc: Vivian Daniels

Department of Treasury

To: Michael Dunn

Re:     Termination of Neo4j Solution Partner PureThink LLC ("PureThink")

I write to inform you that Neo4j, Inc., formerly Neo Technology, Inc. ("Neo"), recently terminated its partnership agreement with PureThink. I understand that IRS has a relationship with PureThink relating to Neo's products. Because this change in PureThink's status may affect the services and support IRS receives, Neo wanted to notify IRS of this development and to offer Neo's assistance in transitioning IRS to an authorized Neo4j partner to ensure IRS continues to receive the support it requires in a manner that respects Neo's intellectual property rights and contractual relationships.

Neo understands that IRS entered into an agreement with PureThink in September 2016 to purchase a commercial license to Neo4j Government Edition and for consulting services and support. We understand that the term of that agreement expires on September 22, 2017. We further understand that IRS paid PureThink $229,000 for a Neo4j subscription and the consulting services.

Regarding IRS's purchase of a Neo4j subscription, Neo still has not received a purchase order from PureThink. As a result of PureThink's termination, please be advised that PureThink is no longer authorized to purchase a Neo4j subscription on behalf of IRS. Neo will work with IRS to purchase a subscription through an authorized Neo4j partner.

Regarding the consulting services, please be advised that PureThink is not authorized to provide consulting services and support on open source versions of Neo4j products. This prohibition applies not only to the APGL-licensed Enterprise Edition but also to the GPL-licensed Community Edition. While IRS has stated its intention to proceed with the AGPL-licensed Enterprise Edition, please understand that Neo's agreements with its partners, including PureThink, prohibit them from providing any consulting services on these products during the term of their agreement and for a period of thirty six (36) months following termination. Neo will work with IRS to ensure that it receives the correct product and services from an authorized Neo4j partner.

We appreciate that this news may come as a surprise to IRS, and Neo wanted to make sure that IRS was promptly notified of this action so that it can make the appropriate decisions. Neo is available to answer any questions you may have and to assist in transitioning your subscription and support to an authorized Neo4j partner. We appreciate your continued interest in Neo4j and look forward to continuing to work with you.

Please do not hesitate to reach out to me with any questions regarding this notification.

**EXHIBIT D**

**SER_3949**

Case 5:18-cv-07182-EJD   Document 55   Filed 12/09/19   Page 60 of 60

12/11/2018                         purethink Mail - FW: Termination of Neo4j Solution Partner PureThink LLC

Sincerely,

**Jason Zagalsky**

Federal Technical Account Manager  |  Neo4j

410-280-9697  |  jason@neo4j.com



**EXHIBIT D**

**SER_3950**

Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney at Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Attorneys for Defendants:
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,<br><br>Plaintiffs<br><br>v.<br><br>PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual,<br>Defendants. | CASE NO. 5:18-cv-7182 EJD<br><br>**DEFENDANTS PURETHINK, LLC, IGOV INC AND JOHN MARK SUHY'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Defendants PURETHINK, LLC, iGOV and JOHN MARK SUHY

("Defendants") answers NEO4J, INC. ("Neo4J USA") and NEO4J SWEDEN

AB's ("Neo4J Sweden") Second Amended Complaint as follows:

1.  Defendants admits the statement outlines the claims but otherwise deny the claims and allegations in paragraph 1.

2.  Defendants admits the first and second sentence in paragraph 2. Defendants deny that plaintiff is the graph company behind an open source software product called Neo4J as the software is owned by and licensed by Neo4J Sweden AB according to the license for Neo4J-enterprise available at GitHub. Defendants lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis deny the remaining allegations.

3.  Defendants deny the allegation in paragraph 3. Defendants believes that many users are using the open source version called Neo4J and not what plaintiff calls Neo4J®. This confusion arises because plaintiff Neo4J, USA claims they own Neo4J software yet the open source license is by Neo4J Sweden. Likewise, there appear over 183 contributors to the open source version of the Neo4J software and Defendants do not know if each contributor has assigned contributions or moral rights in works to either plaintiff. Defendants lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis deny the remaining allegations.

4.  Defendants lacks knowledge or information sufficient to form a belief about the truth of the allegations and on that basis deny the allegations.

5.  Defendants admits the allegations in paragraph 5 except they deny PureThink is a shell entity maintained by the other Defendants and is

Defendants' Answer to Second Amended Complaint
CASE NO. 5:18-cv-7182 EJD

2

SER_3952

1    not currently conducting or engaged in any meaningful business

2    activities.

3  6.  Defendants admits the allegations in paragraph 6 except they deny

4    iGov is the assignee and successor-in-interest to PureThink or

5    otherwise acquired substantially all of PureThink's assets sometime in

6    mid-2017 and deny that Neo4J is a large scale graph solution as it is

7    limited in scalability.

8  7.  Defendants admits that iGov does business as GraphStack, but deny

9    the remaining allegations in paragraph 7.

10  8.  Defendants deny the allegations in paragraph 8 except for the fact

11    Suhy is an individual and the last sentence.

12  9.  Defendants deny the allegations in paragraph 9.

13  10.    Defendants deny the allegations in paragraph 10.

14  11.    Defendants deny the allegations in paragraph 11 are an example

15    to support the allegations and deny Defendants share the same

16    customer support number but admit the facts alleged.

17  12.    Defendants deny the allegations in paragraph 12 are an example

18    to support the allegations but admit the facts alleged except

19    Defendants lacks information or belief about what virtually identical

20    means.

21  13.    Defendants deny the allegations in paragraph 13 as the verb

22    ported is unclear and vague.

23  14.    Defendants deny the allegations in paragraph 14.

24  15.    Defendants admits the allegations in paragraph 15.

25  16.    Defendants deny the allegations in paragraph 16.

Defendants' Answer to Second Amended Complaint
CASE NO. 5:18-cv-7182 EJD

17.     Defendants deny the allegations in paragraph 17.

18.     Defendants admits the allegations in paragraph 18.

19.     Defendants admits the allegations in paragraph 19.

20.     Defendants deny the allegations in paragraph 20.

21.     Defendants lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 21 and on that basis deny the allegations.

22.     Defendants lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 22 and on that basis deny the allegations.

23.     Defendants lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 23 and on that basis deny the allegations.

24.     Defendants lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 24 and on that basis deny the allegations.  Defendants is informed and believes that both plaintiffs did not license the open source version of Neo4J software as the open source licenses state the software is owned and license by Neo4J  Sweden.

25.     Defendants lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 25 and on that basis deny the allegations. Defendants is informed and believes that both plaintiffs did not license the open source version of Neo4J software as the open source licenses state the software is owned and license by

Defendants' Answer to Second Amended Complaint
CASE NO. 5:18-cv-7182 EJD                                                        4

Neo4J Sweden. Further, Neo4J Sweden did not license a commercial product based on the open source software.

26.     Defendants deny the allegations in paragraph 26.

27.     Defendants deny the allegations in paragraph 27.

28.     Defendants deny the allegations in paragraph 28.

29.     Defendants deny they agreed to provide first and second line support to end-users of NEO4J® EE software. Defendants admits the remaining allegations paragraph 29.

30.     Defendants admits the first sentence in paragraph 30 and deny the remainder.

31.     Defendants lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 31 and on that basis deny the allegations.

32.     Defendants deny the allegations in paragraph 32.

33.     Defendants admits the first sentence in paragraph 33 and deny the remainder.

34.     Defendants admits the allegations paragraph 34.

35.     Defendants admits the allegations paragraph 35.

36.     Defendants admits the allegations paragraph 36.

37.     Defendants admits the allegations in paragraph 37.

38.     Defendants admits the allegations in paragraph 38.

39.     Defendants deny the allegations in paragraph 39.

40.     Defendants deny the allegations in paragraph 40.

41.     Defendants deny the allegations in paragraph 41.

Defendants' Answer to Second Amended Complaint
CASE NO. 5:18-cv-7182 EJD

5

1    42.     Defendants deny the allegations in paragraph 42.

2    43.     Defendants deny the allegations in paragraph 43.

3    44.     Defendants deny the allegations in paragraph 44.

4    45.     Defendants deny the allegations in paragraph 45.

5    46.     Defendants deny the allegations in paragraph 46.

6    47.     Defendants deny the allegations in paragraph 47.

7    48.     Defendants deny the allegations in paragraph 48.

8    49.     Defendants deny the allegations in paragraph 49.

9    50.     Defendants deny the allegations in paragraph 50.

10   51.     Defendants deny the allegations in paragraph 51.

11   52.     Defendants deny the allegations in paragraph 52.

12   53.     Defendants deny the allegations in paragraph 53.

13   54.     Defendants deny the allegations in paragraph 54.

14   55.     Defendants deny the allegations in paragraph 55.

15   56.     Defendants deny the allegations in paragraph 56.

16   57.     Defendants deny the allegations in paragraph 57.

17   58.     Defendants deny the allegations in paragraph 58.

18   59.     Defendants deny the allegations in paragraph 59.

19   60.     Defendants deny the allegations in paragraph 60.

20   61.     Defendants deny the allegations in paragraph 61.

21   62.     Defendants admits to posting messages on Twitter. Defendants

22   deny that he spread misinformation, unfairly competed, and the

23   remaining allegations in paragraph 62.

24   63.     Defendants deny the allegations in paragraph 63.

25   64.     Defendants deny the allegations in paragraph 64.

Defendants' Answer to Second Amended Complaint
CASE NO. 5:18-cv-7182 EJD

6

65.     Defendants deny the allegations in paragraph 65.

66.     Defendants deny the allegations in paragraph 66.

67.     Defendants deny the allegations in paragraph 67.

68.     Defendants lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 68 and on that basis deny the allegations. Neo4J Sweden's copyright management information violates the APGL copyright.

69.     Defendants admits the allegations in paragraph 69 and such removal was to prevent further violation of the AGPL license and removal of infringing material is expressly allowed under the AGPL.

70.     Defendants admits the allegations in paragraph 70.

71.     Defendants deny the allegations in paragraph 71 to the extent Suhy stated in an email he had recorded him, otherwise denied. The statement was to avoid the changes of instructions on the employees part. Suhy felt if the employee thought his calls were being recorded, he would temper his fluxuations and false changes in instructions.

72.     Defendants admits the allegations in paragraph 72 to the extent Suhy stated in an email he had recorded him, otherwise denied. The statement was to avoid the changes of instructions on the employees part. Suhy felt if the employee thought his calls were being recorded, he would temper his fluxuations and false changes in instructions.

73.     Defendants admits the allegations in paragraph 73 to the extent Suhy told him he had recorded phone calls, otherwise denied. The statement was to avoid the changes of instructions on the employees

Defendants' Answer to Second Amended Complaint
CASE NO. 5:18-cv-7182 EJD

7

1    part. Suhy felt if the employee thought his calls were being recorded, he

2    would temper his fluxuations and false changes in instructions.

3    74.    Defendants incorporate its responses to paragraphs 1-73.

4    75.    Defendants deny the allegations in paragraph 75. Neo4J USA did

5    not exist in 2007. It was formed in 2011. The software has been

6    licensed on an open source basis by Neo4J Sweden and called Neo4J by

7    Neo4J Sweden. The ownership of the Neo4J software is claimed by

8    Neo4J Sweden. Likewise, the software development was provided by

9    over 100 contributors, Github shows that there are 1,515 forks to the

10   software with 22 branches and Defendants do not know if the

11   contributors have assigned the rights to the Neo4J open source

12   software copyright to either plaintiff.

13   76.    Defendants deny the allegations in paragraph 76. Neo4J USA did

14   not exist in 2007. It was formed in 2011. The software has been

15   licensed on an open source basis by Neo4J Sweden and called Neo4J by

16   Neo4J Sweden. The ownership of the Neo4J software is claimed by

17   Neo4J Sweden. Likewise, the software development was provided by

18   over 100 contributors, Github shows that there are 1,515 forks to the

19   software with 22 branches and Defendants do not know if the

20   contributors have assigned the rights to the Neo4J open source

21   software copyright to either plaintiff.

22   77.    Defendants deny the allegations in paragraph 77. The software

23   has been licensed on an open source basis by Neo4J Sweden and called

24   Neo4J by Neo4J Sweden. The ownership of the Neo4J software is

25   claimed by Neo4J Sweden AB. Likewise, software development was

provided by over 100 contributors, Github shows that there are 1,515 forks to the software with 22 branches and Defendants do not know if the contributors have assigned the rights to the Neo4J open source software copyright to plaintiff.

78.     Defendants deny the allegations in paragraph 78. The software has been licensed on an open source basis by Neo4J Sweden AB and called Neo4J by Neo4J Sweden AB and ownership of the software is claimed by Neo4J Sweden AB. Likewise, software development was provided by over 100 contributors, Github shows that there are 1,515 forks to the software with 22 branches and Defendants do not know if the contributors have assigned the rights to the Neo4J open source software copyright to plaintiff. Defendants deny that goodwill in the name Neo4J is exclusively held by Neo4J USA.

79.     Defendants deny the allegations in paragraph 79.

80.     Defendants deny the allegations in paragraph 80.

81.     Defendants deny the allegations in paragraph 81.

82.     Defendants deny the allegations in paragraph 82.

83.     Defendants deny the allegations in paragraph 83.

84.     Defendants deny the allegations in paragraph 84.

85.     Defendants deny the allegations in paragraph 85.

86.     Defendants deny the allegations in paragraph 86.

87.     Defendants incorporate its responses to paragraphs 1-86.

88.     Defendants deny the allegations in paragraph 88.

89.     Defendants deny the allegations in paragraph 89.

90.     Defendants deny the allegations in paragraph 90.

Defendants' Answer to Second Amended Complaint
CASE NO. 5:18-cv-7182 EJD

SER_3959

1   91.     Defendants deny the allegations in paragraph 91.

2   92.     Defendants deny the allegations in paragraph 92.

3   93.     Defendants deny the allegations in paragraph 93.

4   94.     Defendants deny the allegations in paragraph 94.

5   95.     Defendants incorporate its responses to paragraphs 1-94.

6   96.     Defendants deny the allegations in paragraph 96.

7   97.     Defendants deny the allegations in paragraph 97.

8   98.     Defendants deny the allegations in paragraph 98.

9   99.     Defendants deny the allegations in paragraph 99.

10   100.    Defendants deny the allegations in paragraph 100.

11   101.    Defendants deny the allegations in paragraph 101.

12   102.    Defendants incorporate its responses to paragraphs 1-101.

13   103.    Defendants deny the allegations in paragraph 103.

14   104.    Defendants deny the allegations in paragraph 104.

15   105.    Defendants deny the allegations in paragraph 105.

16   106.    Defendants deny the allegations in paragraph 106.

17   107.    Defendants deny the allegations in paragraph 107.

18   108.    Defendants incorporate its responses to paragraphs 1-107.

19   109.    Defendants admits PureThink signed the Partner Agreement but

20   Defendants otherwise deny the allegations in paragraph 83, because

21   plaintiff has failed to perform, clauses 4.3.1, and 4.3.2 are not

22   enforceable as written or applied and the limitations in the Partner

23   Agreement violate the open source Neo4J enterprise license.

24   110.    Defendants admits the allegations in paragraph 110.

25

Defendants' Answer to Second Amended Complaint
CASE NO. 5:18-cv-7182 EJD                                          10

1    111.    Defendants admits the terms of the 7.3 of the Partner Agreement

2    claims to prevent PureThink from dealing in Products which is defined

3    as Neo4J commercial software provided by Neo Technology and

4    licensed to the End User but otherwise deny the allegations in

5    paragraph 111.

6    112.    Defendants deny the allegations in paragraph 112.

7    113.    Defendants deny the allegations in paragraph 113.

8    114.    Defendants deny the allegations in paragraph 114.

9    115.    Defendants deny the allegations in paragraph 115.

10   116.    Defendants deny the allegations in paragraph 116.

11   117.    Defendants deny the allegations in paragraph 117.

12   118.    Defendants deny the allegations in paragraph 118.

13   119.    Defendants deny the allegations in paragraph 119.

14   120.    Defendants deny the allegations in paragraph 120.

15   121.    Defendants incorporate its responses to paragraphs 1-120.

16   122.    Defendants deny the allegations in paragraph 122.

17   123.    Defendants deny the allegations in paragraph 123.

18   124.    Defendants deny the allegations in paragraph 124.

19   125.    Defendants admits the first and second sentence in paragraph

20   125 and deny the remaining allegations in paragraph 125.

21   126.    Defendants deny the allegations in paragraph 126.

22   127.    Defendants deny the allegations in paragraph 127.

23   128.    Defendants admits Neo4J USA seeks statutory damages but

24   deny they are entitled to any damages as alleged in paragraph 128.

25   129.    Defendants deny the allegations in paragraph 129.

SER_3961

1   130.     Defendants incorporate its responses to paragraphs 1-129.

2   131.     Defendants lack sufficient information and belief to answer

3   parararaph 131 and on said basis deny. Neo4J  Sweden states it owns

4   the open source version of Neo4J  but the software was also created by

5   over 183 contributors who are also copyright and moral rights holders.

6   132.     Defendants deny the allegations in paragraph 132.

7   133.     Defendants deny the allegations in paragraph 133.

8   134.     Defendants deny the allegations in paragraph 134.

9   135.     Defendants deny the allegations in paragraph 135.

10   136.     Defendants deny the allegations in paragraph 136.

11   137.     Except as otherwise admitted, Defendants deny the allegations in

12   the FAC.

### Affirmative Defenses

13

14   1.     **Void Restriction**

15   Section 4.3.2 of the Partner Agreement, provides:

16

17   During the term of this Agreement and up until thirty six (36)
months after the termination or expiration of this Agreement,
18   Partner may not develop, market, distribute or offer any services
related to any Neo Technology Community Edition Products,
19   derivative works of such products, or any Partner software code
made to work with Neo Technology Community Edition
20   Products(including, without limitation, hosting services, training,
21   technical support, configuration and customization services, etc.)

22

23   Neo4J USA seeks to prevent Defendants from licensing and supporting

24   open source software during and for 36 months after termination of the

25   Partner Agreement. The Partner Agreement is. by its terms, governed

Defendants' Answer to Second Amended Complaint
CASE NO. 5:18-cv-7182 EJD                                                    12

by California law. The restriction under Section 4.3.2 cannot be enforced against Defendants as the restriction is void under California Business and Professions Code §16600: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

## 2. License To Use Neo4J Open Source Software

Section 4.3.1 of the Partner Agreement provides:

**4.3.1** During the term of this Agreement, Partner may not use or run on any of Partner's hardware, or have deployed for internal use, any Neo Technology Community Edition Products for commercial or production use. In no event shall Partner reverse engineer, distribute or otherwise use the Products for its own internal use. There are no implied rights. Partner will not fork or bifurcate the source code for any Neo Technology Community Edition Products into a separately maintained source code repository so that development done on the original code requires manual work to be transferred to the forked software or so that the forked software starts to have features not present in the original software.

The restrictions in Paragrgraphs 4.3.1 and 4.3.2 violate the GNU AFFERO GENERAL PUBLIC LICENSED VERSION 3 for Neo4J enterprise software:

Section 2 (Basic Permissions) of the AGPL license provides, in part:

"All rights granted under this License are granted for the term of copyright on the Program, and are irrevocable provided the stated conditions are met. This License explicitly affirms your unlimited permission to run the unmodified Program. …

You may make, run and propagate covered works that you do not convey, without conditions so long as your license otherwise remains in force. You may convey covered works to others for the sole purpose of having them make modifications exclusively for you, or provide you with facilities for running those works, provided that you comply with the terms of this License in conveying all material for which you do not control copyright."

Defendants' Answer to Second Amended Complaint
CASE NO. 5:18-cv-7182 EJD

13

SER_3963

1   Section 4 of the AGPL license provides, in part:

2   "You may charge any price or no price for each copy that you
3   convey, and you may offer support or warranty protection for a
    fee."

4   Section 10 (Automatic licensing of Downstream Recipients)

5   of the AGPL provides, in part:

6   "You may not impose any further restrictions on the exercise of the
    rights granted or affirmed under this License."
7

8   Defendants are licensed to use the open source software version of

9   Neo4J by Neo4J Sweden AB without restriction under the AGPL

10  license agreement. Neo4J USA may not impose restrictions on use of

11  Neo4J and cannot prevent or bar Defendants from using the open

12  source Neo4J. By imposing restrictions in violation of the License,

13  plaintiff has breached the open source license and has no rights to use

14  or license Neo4J.

15

16      3. **Right to fork and use Neo4J open source under GitHub Terms**

17         **of Service**

18      By using a public repository at GitHub, the open source versions of

19      Neo4J are subject to the GitHub Terms of Service which allow any

20      user to use and fork the software and other content on the NEO4J

21      SWEDEN public GitHub repository:

22

23  D. 5. If you set your pages and repositories to be viewed publicly,
    you grant each User of GitHub a nonexclusive, worldwide license
    to use, display, and perform Your Content through the GitHub
24  Service and to reproduce Your Content solely on GitHub as
    permitted through GitHub's functionality (for example, through
25  forking). You may grant further rights if you adopt a license. If
    you are uploading Content you did not create or own, you are

Defendants' Answer to Second Amended Complaint
CASE NO. 5:18-cv-7182 EJD                                        14

1    responsible for ensuring that the Content you upload is licensed
     under terms that grant these permissions to other GitHub Users.

2    https://help.github.com/en/articles/github-terms-of-service

3

4    **4. Unclean Hands**

5    Neo4J USA should not be permitted to enforce the Partner Agreement

6    and trademarksbecause of plaintiffs unclean hands in the use of the

7    Partner Agreement and unlawful licensing practices. Neo4J USA told

8    PureThink they could modify the scope of a license agreement to meet

9    the needs of the government users such as the IRS. Neo4J USA's

10   license model is priced for core processor charges. However, there is no

11   per core charge on the open source version. Neo4J USA at first agreed

12   PureThink could drop the core use pricing for the IRS, then later

13   plaintiff refused to allow the price change. Neo4J USA also forbade its

14   partners, such as PureThink, to discuss the available open source

15   versions. When the IRS, faced with core pricing limitations, asked

16   PureThink about the differences between the commercial software and

17   the open source version of Neo4J, plaintiff told PureThink to lie

18   stating the open source version could only be used on an open project

19   to try to induce the IRS to purchase a commercial version of Neo4J.

20   When Neo4J USA  threatened to terminate PureThink, they agreed

21   PureThink could remedy the breach if the IRS signed up for a

22   commercial license through plaintiff. When the IRS wanted to use the

23   Neo4J open source software with support from PureThink, plaintiff

24   interfered falsely stating PureThink could not use or support Neo4J

25   open source software. Neo4J USA is attempting to improperly use a

Defendants' Answer to Second Amended Complaint
CASE NO. 5:18-cv-7182 EJD                                          15

1    dual licensing practice having a commercial version controlled by

2    plaintiff and an open source software licensed under a General Public

3    License. Because the open source software is under a GPL or AGPL

4    license, and has over 183 contributors, plaintiff may not be able to

5    actually convert the GPL or AGPL license to proprietary software.

6    Under a GPL or AGPL type license, contributors' efforts to modify the

7    software cannot be taken away and turned into privately controlled

8    software. NEO4J SEDWEN added an invalid Commons Clause to the

9    AGPL to improperly restrict use and support of the open source

10   software. Defendants are informed and believe that plaintiff only

11   provides an object code version of the Neo4J software under a

12   commercial license while the GPL and AGPL type license requires

13   access to the source code as well.  Defendants are informed and believe

14   that because plaintiff cannot lawfully operate a dual license model

15   since the open source is based on GPL or AGPL, plaintiff resorts to

16   sharp and false advertising practices with customers (lying about the

17   difference between the commercial versions and the open source

18   version) attempting to restrict partners, such as PureThink, from

19   supporting the open source Neo4J version with unlawful restrictions

20   and interfering in attempts to use open source Neo4J software during

21   the partner term and for three years after termination. The rights of

22   open source users to use the software without making it open, as

23   Neo4J  USA claims, is shown by the FAQs at the GNU site:

24       If I only make copies of a GPL-covered program and run them, without
         distributing or conveying them to others, what does the license require
25       of me?(#NoDistributionRequirements)

Defendants' Answer to Second Amended Complaint
CASE NO. 5:18-cv-7182 EJD                                                    16

> Nothing. The GPL does not place any conditions on this activity.

The same rules apply to modified versions of the open source code:

> Does the GPL require that source code of modified versions be posted to the public? (#GPLRequireSourcePostedPublic)
>
> The GPL does not require you to release your modified version, or any part of it. **You are free to make modifications and use them privately, without ever releasing them. This applies to organizations (including companies), too; an organization can make a modified version and use it internally without ever releasing it outside the organization.**
>
> But *if* you release the modified version to the public in some way, the GPL requires you to make the modified source code available to the program's users, under the GPL.
>
> Thus, the GPL gives permission to release the modified program in certain ways, and not in other ways; but the decision of whether to release it is up to you.
>
> [Emphasis added]

As plaintiffs have sought to threaten open source users improperly, prevent third parties from providing services to open source code users, they come to this court with unclean hands, they should be barred from any recovery.

5. **The addition of the commons clause is unlawful under the AGPL**

The open source license used by Neo4J Sweden AB, the AGPL, is a license copyrighted by the Free Software Foundation. The beginning of the AGPL license provides a copyright notice:

> Copyright (C) 2007 Free Software Foundation, Inc. <http://fsf.org/>
> Everyone is permitted to copy and distribute verbatim copies
> of this license document, but changing it is not allowed. [Emphasis added]

By its terms, the license may not be changed.

Defendants' Answer to Second Amended Complaint
CASE NO. 5:18-cv-7182 EJD

17

**SER_3967**

1    Neo4J Sweden AB's attempt to change the AGPL license violates its

2    terms. The licensee is protected from this violation under the terms of

3    the license: "If the Program as you received it, or any part of it,

4    contains a notice stating that it is governed by this License along with

5    a term that is a further restriction, **you may remove that term**."

6    [Emphasis added].  §7 AGPL.

7      Defendants had the express right to remove any improper terms and

8      such removal prevented further infringement of the APGL license's

9      terms.

10

11   6. **NEO4J USA violated the AGPL**

12     Neo4J  has attempted to take the open source software under the

13     AGPL and commercialize it in violation of the AGPL while preventing

14     former partner from supporting the open source software. But the

15     APGL provides "You may not impose any further restrictions on the

16     exercise of the rights granted or affirmed under this License. For

17     example, you may not impose a license fee, royalty, or other charge for

18     exercise of rights granted under this License." §10 of the AGPL.

19

20   7. **Cancellation of Trademark Procured by Fraud**

21     The Registered Trademark for NEO4J, Reg. No. 4,784,280, was

22     procured by fraud as the representation was that Neo Technology (a

23     Delaware corporation) (changed to Neo4J, Inc.) first used the

24     trademark in 6-4-2006 and in commerce in 5-28-2007. These

25     statements are false as Neo Technology did not exist on those dates

Defendants' Answer to Second Amended Complaint
CASE NO. 5:18-cv-7182 EJD                                                    18

represented as the company was formed 7-7-2011 in Delaware under File Number 5007564. Because the registration was procured by fraud, the registration should be cancelled pursuant to 15 U.S.C. §1119.

8. **Fair Use of Trademarks**

Defendants use of the trademarks was and is a nominative fair use to 1) identify a software product they support called Neo4J that is freely available as open source software, 2) comparative advertising (See 16 C.F.R. §14.15(b)) and 3) to advise others PureThink was no longer a partner with Neo4J USA.

9. **Naked License Abandonment of Trademark**

Neo4J USA claims they own the Neo4J trademark but there is confusion whether that is a company name trademark or product name trademark. This confusion is exacerbated by Neo4J Sweden's open source license for the Neo4J software. Neo4J Sweden's license states: "The software ("Software") is developed and owned by Neo4J Sweden AB (referred to in this notice as "Neo4J")… . Neo4J Sweden asserts they own the software-and not Neo4J USA- and yet both companies use Neo4J name as part of the company name and call the open source software product Neo4J too. As the Neo4J software is licensed as open source software, there is no ability to maintain quality control of how licensees modify, use or distributed or conveyed. As a result, Neo4J USA has abandoned the Neo4J trademark under the doctrine of Naked License.

Defendants' Answer to Second Amended Complaint
CASE NO. 5:18-cv-7182 EJD

19

10.      **Waiver**

Neo4J USA waived PureThink's conduct in modifying the open source version of Neo4J to create the government edition as they agreed PureThink could use and modify the software as required to satisfy the United States Government buyers.

11.      **Setoff**

Neo4J USAs' alleged claims to damages are barred, in whole or in part, by the right of one or more Defendants to a setoff against any such damages.

### Prayer for Relief

Wherefore Defendants request:

1. The complaint be dismissed with prejudice;

2. That the trademark based claims be found exceptional as the trademark was obtain through fraud, the alleged infringments are obviously nominative fair use and comparative advertising, allowing Defendants to recover attorneys fees under 15 U.S.C. §1117 (a);

3. That Defendants recover costs and attorneys fees as permitted by law;

4. And for such other relief as the Court deems just.

Dated: December 9, 2019

                           /s/ Adron G. Beene
                    Adron W. Beene SB# 129040
                    Adron G. Beene SB# 298088
                    Attorney At Law
                    1754 Technology Drive, Suite 228
                    San Jose, CA 95110
                    Tel: (408) 392-9233
                    Fax: (866) 329-0453
                    adron@adronlaw.com

Defendants' Answer to Second Amended Complaint
CASE NO. 5:18-cv-7182 EJD                                          20

1   Attorney for Defendants
    PURETHINK LLC, a Delaware limited
    liability company, IGOV INC., a Virginia
2   corporation, and JOHN MARK SUHY

3   **DEMAND FOR JURY TRIAL**

4

5   Defendants PureThink LLC, iGOV Inc. and John Mark Suhy hereby

6   demand a trial by jury.

7

8   Dated: December 9, 2019

9
                    ____/s/ Adron G. Beene_____
10                  Adron W. Beene SB# 129040
                    Adron G. Beene SB# 298088
11                  Attorney At Law
                    1754 Technology Drive, Suite 228
12                  San Jose, CA 95110
                    Tel: (408) 392-9233
13                  Fax: (866) 329-0453
                    adron@adronlaw.com
14
                    Attorney for Defendants
15                  PURETHINK LLC, a Delaware limited
                    liability company, IGOV INC., a Virginia
16                  corporation, and JOHN MARK SUHY

17

18

19

20

21

22

23

24

25

Defendants' Answer to Second Amended Complaint
CASE NO. 5:18-cv-7182 EJD                                    21