**No. 24-5538-CV**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

NEO4J, INC., ET AL.,

*Plaintiffs-Appellees*,

v.

SUHY, ET AL.,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Northern District of California
Case No. 5:18-cv-07182-EJD
Hon. Edward J. Davila

---

## BRIEF OF THE FREE SOFTWARE FOUNDATION, INC.
## AS *AMICUS CURIAE*

---

Sa'id Vakili (CA Bar No. 176322)
David N. Schultz (CA Bar No. 123094)
**VAKILI & LEUS, LLP**
3701 Wilshire Boulevard, Suite 1135
Los Angeles, California  90010-2822
Telephone:  213-380-6010
Facsimile:  213-380-6051
Email:      vakili@vakili.com
Email:      schu1984@yahoo.com

*Attorneys for Amicus Curiae*
*The Free Software Foundation, Inc.*

# DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the Free

Software Foundation, Inc., by and through its undersigned counsel, hereby certifies

that it is a nonprofit corporation with no parent corporation and no stockholders.

Date:  February 28, 2025                    Respectfully submitted,


s/ *David N. Schultz*
Sa'id Vakili (CA Bar No. 176322)
David N. Schultz (CA Bar No. 123094)
**VAKILI & LEUS, LLP**
3701 Wilshire Boulevard, Suite 1135
Los Angeles, California  90010-2822
Telephone:  213-380-6010
Facsimile:  213-380-6051
Email:        *vakili@vakili.com*
Email:        *schu1984@yahoo.com*

*Attorneys for Amicus Curiae*
*The Free Software Foundation, Inc.*

## **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

STATEMENT OF INTEREST ............................................................... 1

INTRODUCTION ............................................................................. 4

ARGUMENT ................................................................................. 10

  I. Appellees' Opposition Contains Mistaken Assertions Regarding The Foundation Which Should Be Corrected In the Appellate Record ..................................................................................10

  II. Conclusion ........................................................................22

## STATEMENT OF INTEREST[1]

The Free Software Foundation, Inc. (the "FSF" or the "Foundation") is a nonprofit charitable corporation based in Boston, Massachusetts, whose mission focuses on free software and computer user freedom. The Foundation believes that people should be free to run, copy, modify, and share all the software they use, in the same way as they are free to share and improve all the recipes they make. The Foundation wants people to have control over their technology much like they have control over the food they make and eat. The FSF asserts that software freedom is both an essential human right and an indispensable aspect of free expression in a technological society. (*See, e.g., https://www.fsf.org/; https://www.fsf.org/about/; https://www.gnu.org/philosophy/free-sw.html*.)

The Foundation has been working to achieve its goal of computer user freedom since 1985. (*See, e.g., https://static.fsf.org/nosvn/fsf-incorporate.pdf*.) The FSF sponsors and supports the GNU Project, an ongoing project launched in 1983 by the FSF's founder, Richard Stallman, to provide a completely free (as in freedom) and fully functional computer operating system. (*See, e.g., https://www.fsf.org/history/; https://www.gnu.org/*.) The Foundation holds the copyright on a large proportion of the GNU operating system, which is used widely

---

[1] No counsel for a party authored this brief, in whole or in part, and no person other than the Foundation and its members contributed any money that was intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E).

today in its GNU/Linux variant in computers ranging from PCs to supercomputer clusters.  (*See https://www.fsf.org/about/.*)

The FSF uses a general method of copyright licensing, dubbed "copyleft", to ensure software freedom.  (*See, e.g., https://www.gnu.org/licenses/copyleft.html; https://www.gnu.org/philosophy/free-sw.html#copyleft.*)  The terms of a free software license permit all users to use, copy, modify and redistribute such software, so long as they give others the same freedoms to use, copy, modify and redistribute them in turn.  The FSF created its own family of free licenses to support this concept—the GNU Licenses.  The Foundation encourages others to develop and distribute software that is licensed under such terms and allows others to use its licenses to that end.  (*See, e.g., https://www.gnu.org/licenses/gpl-howto.html.*)

The GNU Licenses can be used by any author.  For almost forty years, these licenses have successfully encouraged sharing and modification, rather than forbidding users from modifying and redistributing the software covered by the licenses, thus allowing authors and software developers to convey their works in a way that permits other users to share and improve these works without fear.  (*See, e.g., https://www.fsf.org/history/#gpl; https://www.gnu.org/licenses/quick-guide-gplv3.html; https://en.wikipedia.org/wiki/GNU_General_Public_License.*)

One of the Foundation's most widely used "free software" licenses is the GNU General Public License (the "GNU GPL")—a license that covers major components

2

of the GNU operating system and tens of thousands of other computer programs and is used on tens of millions of computers around the world. (*See, e.g., https://www.gnu.org/licenses/gpl-3.0.html.*) The GNU Affero General Public License, Version 3 (the "AGPL") is a variant of Version 3 of the GNU GPL. (*See https://www.gnu.org/licenses/agpl-3.0.html.*) The AGPL uses the exact same language as Version 3 of the GNU GPL, but with an added clause that includes additional obligations of the licensee if software is run on a server. (*See, e.g., https://www.gnu.org/licenses/why-affero-gpl.html.*) The text of the AGPL may be found at *https://www.gnu.org/licenses/agpl-3.0.html*. The FSF holds the copyright for the AGPL, which is widely used for network applications and services, including major social media networks.

The AGPL is the license at issue in this case. Appellees themselves state that they offered their software known as the "Neo4j® Enterprise Edition" as free software under the AGPL, which was originally drafted and released for public use by the FSF, and that the FSF holds the copyright to the AGPL.[2]

The AGPL is a popular license that has been adopted and implemented by hundreds of thousands of people throughout the world. In fact, the AGPL is the fourth most used license on the popular software development platform Github.

---

[2] *See* "Appellees' Opposition to Motion for Leave to File *Amicus Curiae* Brief by Software Freedom Conservancy, Inc. in Support of Defendants-Appellants," (the "Opposition") (Docket Entry No. 39.1), at 3, 3 n.1, 17.

3

(*See, e.g.,* *https://github.com/github/innovationgraph/blob/main/data/licenses.csv*.) Moreover, one of the Foundation's primary objectives is to ensure that software freedom is protected as intended when people use the Foundation's software licenses, such as the AGPL, to distribute and license software. (*See, e.g.,* *https://www.gnu.org/licenses/gpl-faq.html*.) Therefore, the FSF's interest in this case is to ensure that the provisions of the AGPL, the FSF's intent in drafting these provisions, and the FSF's positions regarding the application of these provisions are properly understood and reflected. In particular, the Foundation submits this brief in an attempt to correct various misstatements and incorrect assertions in the appellate record regarding the FSF, the AGPL, and the FSF's intent in drafting the AGPL.

## INTRODUCTION

The FSF is a nonprofit corporation whose mission focuses on software freedom. The Foundation created its own family of free licenses, known as the GNU Licenses, to support the concept of software freedom. (*See, e.g.,* *https://www.fsf.org/*; *https://www.fsf.org/about/*.) One of these licenses—the AGPL—is at issue in this appeal. The FSF drafted the AGPL and holds the copyright on this license. (*See, e.g.,* *https://gplv3.fsf.org/original-process-definition/.)*[3]

---

[3] The text of the AGPL, including the Foundation's copyright notice, may be found at *https://www.gnu.org/licenses/agpl-3.0.html*.

A primary objective of the Foundation is to ensure that software freedom is protected as intended when people use the Foundation's software licenses to distribute and license software. As part of its attempt to carry out this objective, the FSF responds to license violation reports, educates people on the intended use and philosophy of its licenses, answers questions, and monitors litigation throughout the United States and the world that involves the application and interpretation of the FSF's licenses. (*See, e.g., https://www.gnu.org/licenses/gpl-faq.html.en; https://www.gnu.org/licenses/gpl-violation.html; https://www.fsf.org/licensing/; https://www.gnu.org/philosophy/philosophy.html.*) The Foundation has limited resources, however, and cannot possibly intervene in all such litigation.

As a result of its monitoring of this action in the District Court, the FSF became aware that Plaintiffs-Appellees Neo4j, Inc. ("Neo4j USA") and Neo4j Sweden AB ("Neo4j Sweden") (collectively, "Neo4j" or "Appellees") were using the AGPL in a confusing and unauthorized manner. As the Foundation learned, Appellees were offering versions of their graph database platform software known as the "Neo4j® Enterprise Edition" under a license referred to by Appellees as the "Neo4j Sweden Software License" (the "NSSL"). (*See, e.g.,* Opposition at 3 (defining the NSSL).)

5

On the one hand, the NSSL adopted and incorporated the text of the AGPL wholesale. (*See* NSSL, found at 3ER489[4] (Docket Entry No. 18.4) (stating that Neo4j's software "is subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3 …"). The text adopted and incorporated by the NSSL included: (1) language in the Preamble of the AGPL stating that the FSF's "General Public Licenses are intended to guarantee your freedom to share and change all versions of a program to make sure it remains free software for all its users" (Preamble, ¶ 2, found at 3ER478 (the AGPL), 3ER489 (the NSSL); (2) language in Section 4 providing that licensees "may charge any price or no price for each copy that you convey" (AGPL, § 4, ¶ 2, found at 3ER481; NSSL § 4, ¶ 2, found at 3ER492); and (3) language in Section 7 stating that "[i]f the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term." (AGPL, § 7, found at 3ER484; NSSL § 7, found at 3ER496; *see also* [*https://www.gnu.org/licenses/gpl-faq.html#ModifyGPL*](https://www.gnu.org/licenses/gpl-faq.html#ModifyGPL).)

In addition, the NSSL included the instructions found in the AGPL, headed "How To Apply These Terms To Your New Programs", which suggested that

---

[4] "ER" stands for the Excerpts of Record filed by Defendant-Appellant John Mark Suhy ("Mr. Suhy") in connection with this appeal. The number before "ER" identifies the volume number and the number(s) after "ER" identifies the page number(s) in that volume.

developers and distributors of a new software program that incorporated the AGPL should attach a notice to the program that included the following language:

> This program is free software: you can redistribute it and/or modify it under the terms of the GNU Affero General Public License as published by the Free Software Foundation, either version 3 of the License, or (at your option) any later version.

(*See* NSSL, "How To Apply These Terms To Your New Program," found at 3ER501; AGPL, "How To Apply These Terms To Your New Program," found at 3ER488 (same); *see also* *https://www.gnu.org/licenses/agpl-3.0.html*.)

On the other hand, the NSSL also included an additional provision known as the "Commons Clause," which sought to restrict the rights of licensees of the "Neo4j® Enterprise Edition" software.  (*See* NSSL, 3ER489) (stating that Neo4j's software "is subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3, **with the Commons Clause** as follows:"; 3ER502 (the "Commons Clause" License Condition).  The Commons Clause states, among other things, that "the grant of rights under the License will not include, and the License does not grant to you, the right to Sell the Software."  (*See* 3ER502 (the "Commons Clause" License Condition).

The FSF understood that the above provisions of the NSSL were contradictory and would cause confusion among consumers.  While the AGPL is a free software license which allows licensees to run, copy, modify, share, and sell the software, the Commons Clause is a commercial restriction which prohibits the sale of the software

7

and thus is incompatible with the AGPL. (*See, e.g.,* *https://www.fsf.org/blogs/licensing/protecting-free-software-against-confusing-additional-restrictions*; *https://www.gnu.org/licenses/license-list.html#comclause*; *https://www.gnu.org/licenses/gpl-faq.html#NoMilitary.*)

Accordingly, the FSF sent a cease-and-desist letter to Neo4j on November 13, 2023. (*See* cease-and-desist letter, found at 14ER2946-2948 (Docket Entry No. 18.15).) The letter noted that the README and LICENSE files distributed by Neo4j in connection with releases 3.4.0-3.5.3 of the Neo4j® Enterprise Edition software stated that some of the modules of this software were licensed under the AGPL, together with the Commons Clause. (*Id. citing* *https://github.com/neo4j/neo4j/tree/3.4#readme* and related tagged releases.) The letter explained, among other things, that: (1) the AGPL, including as reproduced by Neo4j, permitted all licensees to remove any additional terms that are "further restrictions" under the AGPL; (2) the Commons Clause was a "further restriction" under the terms of the AGPL; and (3) all licensees under the AGPL thus were permitted to remove the Commons Clause. (*Id.,* 14ER2946-2947.) The letter encouraged Neo4j to clarify the situation by simply stating that the software releases at issue were licensed under the AGPL without any further restriction and removing all references to the Commons Clause. (*Id.,* 14ER2947.)

8

In response, Neo4j eventually removed the infringing files from its versions and stopped offering its software as free software under the AGPL. (*See, e.g.,* https://github.com/neo4j/neo4j/blob/3.4.4/enterprise/neo4j-enterprise/LICENSE.txt (showing that links to the files identified in the cease-and-desist letter now result in "file not found").) In sending the cease-and-desist letter, the Foundation had focused on the AGPL and getting Neo4j to remove the confusing and infringing files from its software, without getting involved in the complexities of the case. Therefore, once Neo4j took action to remove the confusing and infringing files, the FSF did not see enough reason to further intervene in this case and took no additional action while the case was pending in the District Court.

Recently, however, Appellees filed a pleading with this Court entitled "Appellees' Opposition to Motion for Leave to File *Amicus Curiae* Brief by Software Freedom Conservancy, Inc. in Support of Defendants-Appellants" (Docket Entry No. 39.1) (the "Opposition"). The Opposition contains various misstatements and incorrect assertions regarding the Foundation, the AGPL, and the Foundation's intent in drafting the AGPL, particularly in Section III.A.4 of the Opposition, entitled "The SFC Improperly Speculates on the Intent of the FSF." (*See* Opposition at 17-19.).

Accordingly, the FSF submits this brief not to support any party to this appeal, but to address and correct these misstatements and incorrect assertions. The FSF

9

urges this Court to ignore Appellees' misstatements and baseless contentions and instead interpret the provisions of the AGPL at issue in this appeal in light of the FSF's intent in drafting the AGPL—to ensure that the AGPL remains free software for all its users.

## ARGUMENT

### I.  Appellees' Opposition Contains Mistaken Assertions Regarding The Foundation Which Should Be Corrected In The Appellate Record

In a desperate attempt to prevent this Court from considering the *amicus curiae* brief submitted by the Software Freedom Conservancy, Inc. (the "SFC"),[5] Appellees have filed an Opposition that mischaracterizes the positions of the Foundation, the provisions of the AGPL, and the Foundation's intent in drafting the AGPL.  The Foundation thus is compelled to submit this brief, so it may address and correct the different misstatements and incorrect assertions in the Opposition.  Each such misstatement is discussed in turn below:

1)  Appellees first complain that the SFC Brief improperly speculates as to what the FSF's intent was in drafting the AGPL.  (Opposition at 17.)  In particular,

---

[5] In its proposed brief, the SFC describes itself as "a nonprofit organization" whose "mission is to ensure the right to repair, improve, and reinstall software," and which "promotes and defends these rights" by "fostering free and open source software ('FOSS') projects, driving initiatives that actively make technology more inclusive, and advancing policy strategies that defend FOSS, including the use of 'copyleft' public licenses" such as the AGPL.  (*See* Brief of Software Freedom Conservancy, Inc. as *Amicus Curiae* in Support of Defendants-Appellants (Docket Entry No. 34.1) (the "SFC Brief") at 1.

10

Appellees cite to a section of the SFC Brief headed as follows: "The AGPLv3's purpose is to create and preserve software freedom."  (*Id., citing* SFC Brief at 11-14*.)*

Appellees' complaint is misguided and mistaken.  The Preamble to the AGPL specifically sets forth the intent of the AGPL, as well as all versions of the GNU GPL drafted by the FSF:

> The licenses for most software and other practical works are designed to take away your freedom to share and change the works.  By contrast, ***our General Public Licenses are intended to guarantee your freedom to share and change all versions of a program—to make sure it remains free software for all its users.***

(Preamble to the AGPL, ¶ 2, found at 3ER478 (emphasis added); *see also* Preamble to the NSSL, ¶ 2, found at 3ER489 (same).)  This language conclusively demonstrates that the SFC's claim that the purpose of the AGPL is to "create and preserve software freedom" is not improper speculation.  Rather, the SFC's claim regarding the intent of the AGPL is taken directly from the clear and unambiguous language of the Preamble.  For this reason, Appellees' complaint lacks all merit.

2)    Appellees next imply that any discussion of the FSF's intent in drafting the AGPL "amounts to speculation and hearsay because neither the SFC nor FSF are the licensor or a party to the actual license at issue."  (Opposition at 18.)  Appellees completely ignore the fact that the FSF is both the drafter and the licensor of the AGPL, which Appellees themselves concede forms the basis for the NSSL—Neo4j's

11

license for its Neo4j® Enterprise Edition software. (*See* Opposition at 18.) Appellees argue elsewhere in their Opposition that "[i]n the context of software licenses, courts give effect to the intent of the copyright holder and licensor of the software …" (Opposition at 2.) Accordingly, Appellees concede that this Court should give effect to the intent of the Foundation, as the copyright holder and licensor of the AGPL, because Neo4j adopted the AGPL wholesale in its NSSL.

The Foundation's intent in drafting provisions of the AGPL may be gleaned from various written materials, including a document published in the course of the FSF's process of drafting the language used in both the GPL and the AGPL, entitled "GNU General Public License Discussion Draft 2 of Version 3" ("Discussion Draft 2"), (Discussion Draft 2 may be found at *https://gplv3.fsf.org/gpl3-dd1to2-markup-rationale.pdf/download*.) Discussion Draft 2 is dated July 27, 2006, approximately 15 months before the release of Version 3 of the AGPL on November 19, 2007. (*See* Discussion Draft 2 at p. 1; AGPL, p. 1, found at 3ER478 (Docket Entry No. 18.4).) As noted above, the AGPL is a variant of Version 3 of the GNU GPL, using its exact language, but with an added clause that includes additional obligations of the licensee if software is run on a server. (*See, e.g., https://www.gnu.org/licenses/why-affero-gpl.html*.)

Discussion Draft 2 specifically addresses the Foundation's revision of the GPL and the AGPL so as to provide a mechanism for licensees to remove additional

12

license restrictions added by the program author and/or licensor that were not specifically permitted by the language of Section 7. Discussion Draft 2 thus states, in pertinent part, as follows:

> Here we are particularly concerned about the practice of program authors who purport to license their works under the GPL with an additional requirement that contradicts the terms of the GPL, such as a prohibition on commercial use. Such terms can make the program non-free, and thus contradict the basic purpose of the GNU GPL; but even when the conditions are not fundamentally unethical, adding them in this way invariably makes the rights and obligations of licensees uncertain.

(Draft Discussion 2 at 20 n.73.) The above language discusses the very issue raised by the Foundation in its cease-and-desist letter to Neo4j: that Neo4j's addition of the Commons Clause to the NSSL contradicts the language of Section 7 of the AGPL, as incorporated in the NSSL, that allows licensees to remove a license term that is a further restriction under Section 7. (*See* cease-and-desist letter, found at 14ER2946-2948.)

In short, courts should consider the FSF's intent in drafting the AGPL, as set forth in documents such as Draft Discussion 2, when interpreting and applying provisions of the AGPL, such as Section 7, in a particular case. Appellees' notion that any discussion of the FSF's intent is mere speculation and hearsay is simply incorrect.

3)     In addition, Appellees incorrectly assert that "the FSF's position before [Defendant-Appellant John Mark] Suhy removed the Commons Clause was

13

consistent with the trial court's finding that Neo4j Sweden, as the copyright holder, could license Neo4j® EE as it saw fit by using the AGPL and adding the Commons Clause." (Opposition at 18.) Therefore, according to Appellees, "[t]he SFC's speculation on the FSF's intent is also contrary to the undisputed record evidence." (*Id.*)

Appellees base their mistaken and misleading contention regarding the FSF's position on two statements in an email from Donald R. Robertson, III ("Mr. Robertson") of the Foundation to Mr. Suhy, dated August 21, 2023, which Appellees quote in the Opposition: (1) Robertson's statement that "[t]he copyright holder on a work is the one with the power to enforce the terms of the license;" and (2) Robertson's statement that "[i]f a work was previously available under a free license, and later that license is changed, users can always use that earlier version under the terms of the free license." (Opposition at 18, *quoting* portions of Mr. Robertson's email, found at 3ER430-431 (Docket Entry No. 18.4).)

Appellees' contention is incorrect, for at least four separate and independent reasons. <u>First</u>, the selective quotations from Mr. Robertson's email upon which Appellees attempt to rely have nothing whatsoever to do with the application and interpretation of the AGPL and, in particular, the provision in Section 7 of the AGPL that permits licensees to remove additional terms added by the licensor that constitute "further restrictions." Rather, the first quotation is merely a general

14

statement about how copyright law empowers the copyright holder to enforce the terms of its license.

Furthermore, the second quotation addresses a situation known as "forking", where a copyright holder releases Version No. 1 of a program under a free license and a subsequent Version No. 2 of the program under a license that is not free. Mr. Robertson's quoted statement simply advances the unremarkable proposition that a licensee may copy Version No. 1 and release an adaptation of Version 1 under a free license because such conduct is permitted under Version No. 1's free license. (*See* 3ER430.) Neither quotation, however, supports Appellees' mistaken conclusion that the Foundation somehow agrees with the District Court that Neo4j could license its Neo4j® Enterprise Edition software by using the AGPL as written and adding the restrictions of the Commons Clause. Although the FSF believes that copyright holders generally may license software as they see fit, they may not create an unauthorized derivative work that uses the AGPL as written and then impose restrictions on that license that are contrary to the language of the AGPL and the concept of free software. As the Foundation stated in its cease-and-desist letter to Neo4j:

> While we are pleased when people use the GNU AGPLv3 to distribute and license software, we want to ensure that software freedom is protected as intended. The FSF allows everyone to use its licenses to grant and protect the fundamental freedoms to use programs for any purpose, study and change them, and sell or give away copies of programs or their modified versions. However, the FSF does *not* allow

15

> the making or distributing of altered versions of the licenses, including the GNU AGPLv3, resulting in unauthorized derivative works. Nor do we allow others to use our registered or common law trademarks without authorization.

(14ER2946 (emphasis in original).)

<u>Second</u>, a review of Mr. Robertson's entire email further demonstrates that Appellees' assertion lacks merit.  The first quoted statement upon which Appellees misleadingly rely is only the first sentence of Mr. Robertson's entire response to a question from Mr. Suhy.  That response states, in its entirety, as follows:

> The copyright holder on a work is the one with the power to enforce the terms of the license.  So when the copyright holder fails to uphold the terms of the license, there unfortunately isn't anyone to turn to in order to force their hand in a legal sense.  But the community can work to persuade them to do the right thing. And if the copyright holder won't do the right thing, then the community should simply avoid their work.

(3ER430.)  As the above passage makes clear, Mr. Robertson's first quoted statement addressed the enforcement of a software license by a copyright holder, and not the terms under which the copyright holder may license its software.

Moreover, Mr. Robertson immediately followed the second statement relied upon by Appellees by quoting the following portion of Section 7 of the AGPL:

> All other non-permissive additional terms are considered "further restrictions" within the meaning of section 10.  If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term.

16

(*See* 3ER430.)[6] He then ended his email to Mr. Suhy by stating that "[u]nfortunately, I cannot give you legal advice as to how that would work for your particular situation, but I hope that this information proves useful to you." (*Id.*) Accordingly, Mr. Robertson's second statement quoted by Appellees likewise fails to support Appellees' misguided assertion regarding the Foundation's position. Rather, a review of Mr. Robertson's entire email clearly shows that FSF's position is that the Commons Clause is a "further restriction" that may be removed under the terms of Section 7 of the AGPL.

Third, other emails exchanged between Mr. Robertson and Mr. Suhy, which Appellees ignore, further support the conclusion that Appellees' assertion is incorrect. For example, Mr. Suhy sent an email to the FSF, dated May 19, 2018, noting that Neo4j "recently added restrictive licensing conditions to their AGPL license" and quoted the "Commons Clause" license condition which Mr. Suhy said "was added to their AGPL license file." (*See* 3ER423.) In response, Mr. Robertson sent an email to Mr. Suhy, dated May 22, 2018, in which he pointed out that the "AGPL prevent[s] the addition of further restrictions" and then quoted the same portion of Section 7 of the AGPL that Mr. Robertson later quoted in his August 21,

---

[6] Section 7 of the AGPL, which was incorporated into the NSSL, identifies six categories of terms that are not considered "further restrictions" under the AGPL, none of which includes the Commons Clause. (*See* AGPL, § 7, found at 3ER483-484; NSSL, § 7, found at 3ER496.)

17

2018, email to Mr. Suhy.  (*See* 3ER423, *quoting* AGPL, § 7, found at 3ER484; 3ER430 *quoting* AGPL, § 7, found at 3ER484.)  This email further establishes that the Foundation did not agree with the District Court that Neo4j could license its software using the AGPL and still add to the AGPL license the restrictions found in the Commons Clause.

Fourth, Appellees' mistaken assertion completely ignores the fact that, on November 13, 2023, the FSF sent its cease-and-desist letter to Neo4j.  (*See* cease-and-desist letter, found at 14ER2946-2948 (Docket Entry No. 18.15).)  As explained above, that letter specifically informed Neo4j that it could not state that its software was available under the AGPL and simultaneously add the license restrictions found in the Commons Clause.  As the Foundation's letter explained, the AGPL, by its terms, "permits all licensees to remove any additional terms that are 'further restrictions' under the" AGPL and "[i]t is well known that the 'Commons Clause' is a 'further restriction' under the terms of the [AGPL] and therefore all licenses under the [AGPL] are permitted to remove it."  (14ER2947.)  The Foundation further elaborates on this point on its website as follows:

18

Unfortunately, some authors engage in confusing practices by drafting licenses using existing terms and conditions of GNU free software licenses, without the intention of granting all four freedoms to users. For example, we have long seen attempts to add restrictions to the license text itself, placed in the LICENSE file, or included elsewhere in the program's release. An example is the so-called "Commons Clause," which, when applied to a free software license, affirms that the program is covered by the license. But, at the same time, is contradicting in its meaning by asserting that selling copies of the program or implementing a commercial service with the program is prohibited.

(*See* *https://www.fsf.org/blogs/licensing/protecting-free-software-against-confusing-additional-restrictions,* published on November 14, 2023.)   As Bruce Perens, a computer programmer and an advocate in the free software movement (*see* *https://en.wikipedia.org/wiki/Bruce_Perens*) has explained, a problem with the Commons Clause

> is that ***the Commons Clause is added to licenses that don't actually allow terms to be added, like the AGPL 3 on Neo4J.*** AGPL and GPL have two paragraphs that both disallow the addition of terms. So, when a licensor adds the Commons Clause, they create a license with self-contradictory legal language.

(*See* "What comes after open source? Bruce Perens is working on it," found at *https://www.theregister.com/2023/12/27/bruce_perens_post_open/.*)     (emphasis added).)

The Foundation's position, as set forth in its cease-and-desist letter, clearly demonstrates that the Foundation did not agree that Neo4j could license its software "by using the AGPL and adding the Commons Clause." (Opposition at 18.) Indeed, the FSF's cease-and-desist letter specifically stated that this licensing practice by

19

Neo4j was a use of the FSF's rights related to the AGPL "in a confusing and unauthorized manner." (14ER2046.) For this reason, as well as the other reasons discussed above, Appellees' assertion that the FSF's position "was consistent with the trial court's finding that Neo4j Sweden, as the copyright holder, could license Neo4j® EE as it saw fit by using the AGPL and adding the Commons Clause" (Opposition at 18) is simply wrong.

4)     Finally, and perhaps most shockingly, Appellees assert that it can "be inferred that the FSF did not share the SFC's concern" regarding the District Court's interpretation of the NSSL because, among other things, the FSF did not intervene in this case at any time when it was before the District Court and the FSF did not file an *amicus* brief when the District Court's interpretation of the provisions of the NSSL, including Section 7, previously was before this Court. (*See* Opposition at 18-19.)

First, this Court cannot and should not infer anything whatsoever from the Foundation's lack of intervention in this case or its decision not to file an *amicus* brief. There are a myriad of reasons explaining why the FSF has not previously sought to intervene or to file an *amicus* brief which have nothing whatsoever to do with the legal issues raised by this case. The FSF should not be forced to reveal information protected by the attorney-client privilege in order to justify its conduct and rebut Appellees' misguided assertions. As noted above, however, the

20

Foundation has limited resources and cannot simply seek to intervene or file an *amicus* brief in every case raising issues regarding the interpretation and application of the provisions of its various licenses, including the AGPL.

Second, Appellees' assertion again completely ignores the cease-and-desist letter sent by the FSF to Neo4j on November 13, 2023, and discussed above. (*See* cease-and-desist letter, found at 14ER2946-2948 (Docket Entry No. 18.15).) Appellees fail to disclose to this Court that the FSF's letter advances an interpretation of Section 7 of the AGPL and the NSSL that is at odds with the District Court's ruling. (*Id.*) As explained above, however, the Foundation chose not to take any further action in this matter until now because Neo4j responded to the Foundation's cease-and-desist letter by eventually removing from its software the infringing files complained about by the FSF and ceasing to offer its software as free software under the AGPL, thus implicitly conceding that the FSF's position regarding the Commons Clause was correct.

In sum, the FSF's decision not to intervene in this case or file an *amicus* brief cannot be used by Appellees or this Court to infer that the FSF had no issue with the District Court's interpretation of the AGPL and the NSSL. Accordingly, this Court should reject Appellees' baseless and unsupportable inference.

21

## II.    Conclusion

For all the foregoing reasons, the Free Software Foundation respectfully requests that this Court ignore the misstatements and incorrect assertions regarding the FSF and the AGPL advanced by Appellees in the Opposition and instead interpret and apply the provisions of the AGPL at issue in this appeal in accordance with the FSF's intent in drafting the GNU Licenses, including the FSF's intent in drafting the provisions of the AGPL.

Date:  February 28, 2025                    Respectfully submitted,


                                            s/ *David N. Schultz*
                                            Sa'id Vakili (CA Bar No. 176322)
                                            David N. Schultz (CA Bar No. 123094)
                                            **VAKILI & LEUS, LLP**
                                            3701 Wilshire Boulevard, Suite 1135
                                            Los Angeles, California  90010-2822
                                            Telephone:  213-380-6010
                                            Facsimile:  213-380-6051
                                            Email:      vakili@vakili.com
                                            Email:      schu1984@yahoo.com

                                            *Attorneys for Amicus Curiae*
                                            *The Free Software Foundation, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number** 24-5538-CV

I am the attorney or self-represented party.

**This brief contains 5,018 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**: s/ *David N. Schultz*            **Date: February 28, 2025**
*(use "s/[typed name]" to sign electronically-filed documents*

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using ACMS on February 28, 2025.

All participants in the case are registered ACMS users and will be served by ACMS.

Dated:  February 28, 2025

Los Angeles, CA

s/ *Sa'id Vakili*

Sa'id Vakili (CA Bar No. 176322)
**VAKILI & LEUS, LLP**
3701 Wilshire Boulevard, Suite 1135
Los Angeles, California  90010-2822
Telephone:     213-380-6010
Facsimile:     213-380-6051
Email: *vakili@vakili.com*

*Attorneys for Amicus Curiae*
*The Free Software Foundation, Inc.*