No. 24-5538
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

NEO4J, INC., et al.,
*Plaintiff and Appellee,*
v.
Suhy, et al.,
*Defendant-Appellant.*

---

Appeal From a Judgment of the United States District Court
For the Northern District of California
Hon. Edward J. Davila
United States District Judge
N. D. Cal. No. 5:18-cv-07182 EJD

---

APPELLANT'S REPLY BRIEF

---

## Table of Contents

**I.   Introduction** ...................................................................... **4**

**II.  Response to Appellees' Statement of the Case** ................. **8**

   **A.  Relevant Undisputed Facts** ...................................... **8**

   1. Neo4j USA and Neo4j Sweden ...................................... 8

   2. The NEO4J Mark and Evolution of Neo4j®-Branded Software and Appellants' Pirated Versions Thereof ................................ 8

   3. Suhy, PureThink, and iGov ........................................... 9

   4. Suhy Improperly Removes the Commercial Restrictions in the Neo4j Sweden Software License ...................................... 11

   5. Suhy's Lanham Act and DMCA Violations Cause Appellees to Lose Licensing Revenue ............................................. 11

**III. Rebuttal of Appellees' Arguments** ............................... **12**

   **A.  Rebuttal: The District Court Did Not Abuse Its Discretion in Dismissing Suhy's Fraud Counterclaim and Defense With Prejudice** ............................................................... **12**

   **B.  Rebuttal: The District Court Properly Granted Summary Judgment on Appellees' DMCA Claim** ........................ **16**

   **C.  Rebuttal: Suhy Improperly Seeks to Relitigate Issues Resolved in Neo4j I** ................................................... **20**

   **D.  Rebuttal: The District Court Did Not Err in Granting Summary Judgment on Neo4j USA's Lanham Act Claims** ...... **21**

   **E.  Rebuttal: The District Court Correctly Found that Suhy Engaged in False Advertising** ..................................... **26**

   **F.  Rebuttal: The District Court's Damages Award was Neither Clearly Erroneous nor an Abuse of Discretion** ........................ **31**

   **G.  Rebuttal: Suhy Fails to Establish Error in the Evidentiary Rulings Below** ......................................................... **35**

   **H.  Rebuttal: The District Court Did Not Err in Granting Summary Judgment on PureThink's Breach of Contract Counterclaim** ........................................................... **39**

**IV.  Conclusion** ..................................................................... **45**

## Table of Authorities

**CASES**

Ctr. for Biological Diversity v. Salazar, 706 F.3d 1085(9th Cir. 2013) ..19

*Drennan v. Star Paving Co.*, 51 Cal. 2d 409, 414 (1958) ........................42

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ...............................................14

*Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 998–99 (C.D. Cal. 2002) ....13

*Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir.
    2004) ........................................................................................................37

*Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) .......20

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118,
    132–34 (2014) .........................................................................................31

McCaskey v. California State Auto. Ass'n, 189 Cal. App. 4th 947, 957
    (2010) ......................................................................................................43

*McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) ..........................12

Nationstar Mortg. LLC v. Ahmad, 112 U.S.P.Q.2d 1361 (T.T.A.B. 2014)
    ...................................................................................................................13

*New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th
    Cir. 1992) ................................................................................................23

*Pony Express Courier Corp. v. Pony Express Delivery Serv.*, 872 F.2d
    317, 319 (9th Cir. 1989) ........................................................................12

S. Or. Barter Fair v. Jackson Cnty., 372 F.3d 1128, 1136 (9th Cir. 2004)
    ...................................................................................................................19

*Skydive Arizona*, 673 F.3d at 1112 ..........................................................32

*Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1112 (9th Cir.
    2012)........................................................................................................31

Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139–40 (9th
    Cir. 1997), 1202 (9th Cir. 2012) ..........................................................29

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir.
    1997)........................................................................................................25

United States v. Payne, 944 F.2d 1458, 1472 (9th Cir. 1991) ...............36

Banner Entm't, Inc. v. Sup. Ct., 62 Cal. App. 4th 348, 358 (1998) ........42

Bustamante v. Intuit, Inc., 141 Cal. App. 4th 199, 208 (2006), 1134–35
    (2003) ......................................................................................................42

Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 716 (9th
    Cir. 1990) ................................................................................................43

**STATUTES**

17 U.S.C. § 1202(b) ................................................................36

18 U.S.C. § 1001 ....................................................................43

FAR § 6.302-1.........................................................................41

## I.   Introduction

This case is built on a distorted narrative. In its Answer Brief, Neo4j presents a carefully curated version of events, portraying me as a rogue support partner who "pirated" their software and misled government customers. But the record, and the licensing regime Neo4j itself chose to operate under, shows otherwise.

Neo4j released its software under the Free Software Foundation's AGPLv3 license, encouraged widespread adoption, and grew rapidly as a result. Years later, it attempted to retroactively restrict those rights by appending the Commons Clause, a non-permissive term, to the AGPL. When I refused to go along with that reversal and instead redistributed the exact same source code under the unmodified AGPL, Neo4j branded me a pirate and filed suit.

I did not "pirate" anything. I forked the code using GitHub's own tools, exactly as the AGPL license permits. I made no changes to the source code, no modifications to attribution, and no claims of ownership. My only change was restoring the FSF's AGPL LICENSE.txt file to a verbatim version, as the license itself directs. Neo4j's claims to the contrary, repeated throughout its brief, are not just misleading, they

6

risk distorting how the Court views software licensing and free software principles.  3-ER-478, 8-SER-1900, 14-ER-2946-2948. (FSF Cease and Desist to Neo4j)

Two of the most respected institutions in open source, the Free Software Foundation and Software Freedom Conservancy,  submitted amicus briefs to warn the Court of the implications of Neo4j's tactics. If these rulings are affirmed, the integrity of open-source licensing may be compromised for years to come.

As a pro se litigant, I've done my best to respond to the legal and factual errors in Neo4j's case. Their arguments rely not on settled law, but on mischaracterizations, omissions, and emotional framing, and the district court accepted many of those arguments without full consideration of disputed facts or relevant community practice. This Court should take a more complete view.

## II.   Response to Appellees' Statement of the Case

## A. Relevant Undisputed Facts

## 1. Neo4j USA and Neo4j Sweden

Neo4j claims or implies that Neo4j USA holds exclusive rights to the Neo4j software and associated intellectual property. This is misleading. The record shows that Neo4j Sweden retains ownership of both the software and the trademarks and granted Neo4j USA only a non-exclusive license. The distinction is significant, as it affects standing and damages analysis throughout this case.

## 2. The NEO4J Mark and Evolution of Neo4j®-Branded Software and Appellants' Pirated Versions Thereof

Neo4j describes ONgDB as a "pirated version" of its Neo4j Enterprise Edition, a term that falsely suggests criminal theft or unauthorized duplication. In reality, ONgDB was a standard fork of the AGPL-licensed Neo4j EE code, created using GitHub's own forking tools, a normal, expected practice in open source development. No source code or attribution was removed. The only change was restoring the LICENSE.txt file to a verbatim copy of the FSF's AGPLv3 license, per the FSF's own instructions. 3-ER-478, 3-ER-489, 12-SER-3250

Neo4j also refers to its license as the "Neo4j Sweden Software License" (NSSL), as if it were a bespoke proprietary license. In fact, the NSSL was nothing more than the FSF's AGPLv3 license with the Commons Clause appended at the bottom, often without any distinct labeling. As the FSF and SFC explained in their amicus briefs, this violated the AGPL's structure and likely confused users. 3-ER-478, 3-ER-597

Neo4j's assertion that I removed a "notice" provision from the license is also incorrect. The relevant attribution information remained intact in a separate NOTICE.txt file, which was never modified. 3-ER-502,

Finally, Neo4j's claim that I "donated" ONgDB to the Graph Foundation is inaccurate. I contributed to the project like any other developer, via public pull requests that the Foundation could accept or reject. I have no control over ONgDB's direction or governance. 3-ER-478, 12-SER-3250

3. Suhy, PureThink, and iGov

Neo4j's account of my interactions with the IRS omits critical facts. In March 2017, the IRS approached PureThink, not the other way around, to ask whether it could use Neo4j EE under the open source AGPLv3

license. The IRS had concluded it saw no added value in paying for a commercial license. Neo4j pressured me to say that AGPL use was not allowed in a closed environment, but I refused to make false statements. 9-SER-2218, 7-SER-1588, 7-SER-1595-1596

Neo4j also fails to mention that both parties had previously agreed the IRS contract could serve as a low-cost "foot in the door" strategy,  and that under Neo4j EE's own terms, use without a commercial license would default to AGPLv3. This wasn't a breach,  it was anticipated and permitted. 7-SER-1817-1818

Neo4j further misrepresents my relationship with Next Century. They reference October 2018 communications but omit that I merely introduced Next Century to the Graph Foundation (GFI), which then handled the ongoing dialogue. GFI ultimately settled with Neo4j. 14-SER-3645-3649, 4-ER-887, 4-ER-891, 4-ER-895, 4-ER-897

### 4. Suhy Improperly Removes the Commercial Restrictions in the Neo4j Sweden Software License

Neo4j suggests I "removed commercial restrictions" from the NSSL, but that framing misleads. The so-called "NSSL" was just AGPLv3 with a non-permissive Commons Clause added. I simply restored the FSF's AGPLv3 LICENSE.txt file to its original, unmodified state, consistent with AGPL §7, which expressly allows users to remove "further restrictions." The FSF later confirmed this interpretation in its amicus brief.

Neo4j's claim that I altered or redistributed "non-conforming" versions is also false. I compiled the exact source code provided under AGPL terms, no code modifications, no feature changes. The binaries were functionally identical to Neo4j's own. 3-ER-478

### 5. Suhy's Lanham Act and DMCA Violations Cause Appellees to Lose Licensing Revenue

Neo4j claims that my actions caused them to lose licensing revenue, but the sole government agency on which their damages theory relies, the MPO, chose ONgDB because it was free, not because of any alleged

11

misrepresentation. ONgDB was in fact free and open, the source code had no license locks, runtime restrictions, or closed components. The description "100% free and open" was accurate and not a representation that the software was FSF-compliant open source, only that it had no commercial limitations or hidden functionality.

Neo4j's underlying claims here, false designation, DMCA violation, and trademark confusion, were decided on summary judgment despite active disputes about intent, materiality, and causation. Their presentation of these issues as "undisputed" misleads the Court and overstates what the district court actually found.

III.   Rebuttal of Appellees' Arguments

A. The District Court Erred in Dismissing the Fraud Counterclaim and Defense With Prejudice

Neo4j argues that dismissal of Suhy's fraud-based counterclaim (alleging false statements in the trademark application for "NEO4J") was proper because the district court "accepted all allegations as true" and still found the claim legally deficient. But this argument rests on a misreading of the law, an incomplete analysis of the pleading, and a

factual gloss that creates risks of procedural preclusion if left unrebutted.

1. The District Court Never Ruled on the Validity of the Trademark Registration, Only Standing

Neo4j repeatedly cites the district court's acceptance of the existence of its federal trademark registration as if that resolves the issue of validity. But the lower court never adjudicated whether the registration was fraudulently obtained, it merely found that the existence of a registration gave Neo4j standing to assert trademark claims. The court's summary judgment and injunction rulings referenced the registration for enforcement purposes, but did not preclude a future validity challenge. Appellant's ongoing cancellation action before the TTAB further reinforces that this is an unresolved issue.

If Neo4j argues that appellant's dismissed fraud counterclaim now bars you from pursuing cancellation, that would improperly extend the preclusive effect of a non-merits ruling. The Ninth Circuit has been clear that "dismissal for pleading insufficiency is not a judgment on the merits for purposes of claim preclusion unless the plaintiff is given

leave to amend and fails to do so." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).

2. Neo4j's Procedural Arguments Must Be Narrowly Read to Avoid Undue Preclusion

Neo4j claims that appellant's fraud theory is legally barred under *Pony Express Courier Corp. v. Pony Express Delivery Serv.*, 872 F.2d 317, 319 (9th Cir. 1989), because "misstatements about the date of first use are not sufficient to cancel a trademark." But this overstates the rule. Courts have distinguished between minor inaccuracies and deliberate misrepresentations used to mislead the USPTO about seniority, continuity, or bona fide commercial use.

Appellant's fraud theory alleged that Neo4j falsely claimed first use of the "NEO4J" mark in commerce in 2006–2007, years before the company legally existed, and that it did so to secure priority against competing users. That is materially different from a scrivener's error. The TTAB and federal courts have allowed cancellation where the misstatement goes to a material condition of registrability, not merely a

mistaken date. See *Nationstar Mortg. LLC v. Ahmad*, 112 U.S.P.Q.2d 1361 (T.T.A.B. 2014).

This is particularly important because the validity of the trademark goes not only to damages but to whether Neo4j had standing at all to bring several claims. The Ninth Circuit has held that fraudulent procurement of a trademark can be a defense to infringement claims. See *Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 998–99 (C.D. Cal. 2002).

3. The Dismissal Should Not Be Interpreted as Preclusive

Even if the district court dismissed appellant's fraud counterclaim with prejudice at the pleading stage, that ruling does not (and should not) bar TTAB proceedings or future cancellation. Courts regularly decline to give claim preclusion effect to early dismissals, especially where:

- The claim was dismissed for technical pleading reasons,
- No discovery had occurred,
- And the claim involved facts not fully adjudicated.

Moreover, the district court made no factual findings regarding the accuracy or intent behind Neo4j's trademark application statements. It

granted judgment on the pleadings, meaning no evidence was admitted or weighed. The TTAB or a future court can still determine whether the registration was improperly obtained.

## 4. At Minimum, the Court Should Have Permitted Leave to Amend

Even if the original pleading had technical flaws, you should have been granted leave to amend. Federal Rule of Civil Procedure 15(a) provides that leave to amend should be "freely given when justice so requires." The Ninth Circuit repeatedly emphasizes this liberal standard. See *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, appellant's opposition cited additional facts, including Neo4j's formation timeline, inconsistencies in its first-use claims, and government filings that contradicted its registration assertions52.16. If those facts had been incorporated into an amended pleading, the fraud theory could have survived.

## B. The District Court Erred in Granting Summary Judgment on Neo4j's DMCA Claim

Neo4j contends that the district court properly dismissed my fraud-based counterclaim and unclean hands defense because they were either "meritless" or not timely supported. But the record demonstrates

that these arguments were both procedurally and substantively premature for dismissal, and their exclusion improperly stripped me of defenses directly tied to the heart of Neo4j's damages claim.

1. The District Court Erred in Dismissing the Fraud Counterclaim at the Pleading Stage

My fraud claims alleged that Neo4j USA misrepresented its licensing and trademark authority when dealing with both the public and potential partners like PureThink and the IRS. Specifically, Neo4j USA leveraged its relationship with Neo4j Sweden to promote an open source distribution model that induced reliance, then retroactively imposed the Commons Clause to undermine that reliance and eliminate competing support channels.

These allegations were pled with specific facts about how Neo4j's conduct misled federal agencies, conflicted with the AGPL and GitHub license terms, and damaged downstream providers like iGov. I also explained how Neo4j's switch to the Commons Clause model, after inviting broad third-party adoption, amounted to a bait-and-switch tactic that manipulated the procurement environment. These are the

kinds of allegations courts routinely permit to go forward. At minimum, I was entitled to amend to clarify these points, but the district court dismissed them with prejudice without giving that opportunity.

2. The Unclean Hands Defense Was Improperly Stricken and Remains Relevant

Neo4j argues that any alleged misconduct on its part occurred "too early" to support an unclean hands defense. But my argument was not limited to pre-2018 conduct. Neo4j's interference with the IRS contract, its unilateral declaration that the Commons Clause could override AGPLv3, and its claims that public domain licensees needed commercial licenses to operate, all occurred during the same time period as the allegations underlying its Lanham Act and DMCA claims. These acts are part of the same transaction or occurrence and bear directly on the equities of enforcing those claims.

The SFC and FSF briefs reinforce that Neo4j's licensing tactics deviated from accepted norms in the free software community. Their retroactive restrictions sought to suppress open-source competition after years of encouraging reliance, and they did so while demanding exclusive

control over federal procurement channels. Whether framed as fraud, unclean hands, or estoppel, I had a right to present this narrative as a defense.

The district court's conclusion that there was "no immediate and necessary relationship" between Neo4j's alleged misconduct and its Lanham Act claims ignored the intertwined nature of the parties' licensing and procurement histories.

8-SER-1988

3. These Defenses Go to the Core of Damages and Causation

While Neo4j tries to isolate my defenses as technicalities, they are central to the damages inquiry. The claim that ONgDB "diverted" government business only makes sense if Neo4j was entitled to that business in the first place. But if Neo4j was misleading government buyers, distorting its license rights, or pressuring partners into unjustified exclusivity, then any market loss it suffered is partly self-inflicted.

More importantly, if I reasonably relied on FSF license terms and guidance in distributing ONgDB, which I did, then both the DMCA

claim and the underlying predicate for Lanham Act "willfulness" are undermined. These issues deserved a hearing, not dismissal on the pleadings.

### C. Neo4j's Reliance on Neo4j I Is Misplaced and Does Not Preclude the Present Appeal

Neo4j argues that prior rulings in Neo4j I, particularly the affirmance of the preliminary injunction, preclude me from challenging the district court's findings on liability and license interpretation. This argument misstates the law and misapplies the facts.

1. Preliminary Injunction Rulings Are Not "Law of the Case" on Final Merits

Neo4j relies on the Ninth Circuit's unpublished affirmance of the preliminary injunction in *Neo4j, Inc. v. PureThink, LLC*, 2022 WL 781037 (9th Cir. Mar. 14, 2022), to claim that I am barred from re-litigating the meaning of the AGPLv3, the legality of removing the Commons Clause, or the lawfulness of describing ONgDB as "open source." But that decision affirmed only a temporary injunction based on a limited record and the "likelihood of success" standard. It did not resolve any factual or legal issues on a final basis.

The Ninth Circuit has made clear that decisions on preliminary injunctions do not constitute the law of the case or resolve the merits. Ctr. for Biological Diversity v. Salazar, 706 F.3d 1085 (9th Cir. 2013); accord S. Or. Barter Fair v. Jackson Cnty., 372 F.3d 1128, 1136 (9th Cir. 2004). Law of the case does not apply to non-final rulings, especially where, as here, material facts remained in dispute and were later developed through discovery, depositions, and expert analysis.

The district court later converted those interim findings into final judgments largely by referencing its own prior orders without holding trial on key factual issues. But issue preclusion requires that a matter was "actually litigated and necessarily decided" in a prior proceeding. See *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000). No full litigation occurred prior to the First and Second Summary Judgment Orders.

## 2. Neo4j I Involved Different Claims and a Different Record

Even if law of the case applied generally, it would not apply here because the issues in Neo4j I differ from those presented now. Neo4j I involved a narrower set of claims (e.g., Phase One trademark issues), an

21

incomplete factual record, and no expert testimony or trial-level findings on the interpretation of AGPL Section 7. The court's injunction order excluded key context, including the FSF's interpretation of its own license and the expert opinion of Bradley Kuhn, both of which undermine the premise that I acted with bad faith or that my license removal was "false" or "misleading."

The record now includes not only third-party evidence showing good-faith reliance on AGPL Section 7, but also the full text of the license and a broad evidentiary history showing that I maintained attribution, redistributed unmodified source code, and preserved CMI in compliance with the FSF's instructions.

3. The FSF and SFC Amicus Briefs Undermine Any Preclusive Effect

Amicus briefs from the Free Software Foundation (FSF) and Software Freedom Conservancy (SFC) make clear that the Commons Clause imposed a "further restriction" under AGPL Section 7 and could be removed. They also clarify that my conduct was in line with the license's design and the FSF's enforcement philosophy. This was not

presented in Neo4j I, and it cuts against any argument that the issue of license interpretation was "settled" or beyond dispute.

4. The District Court Itself Acknowledged That Final Claims Were Reserved

Finally, the court acknowledged in earlier rulings that additional claims and defenses were reserved for later stages of the litigation, including unclean hands and damages challenges. As such, Neo4j cannot selectively invoke preliminary rulings as preclusive when the court itself treated those rulings as provisional.  10-SER-2382

## D. The District Court Erred in Granting Summary Judgment on Neo4j USA's Lanham Act Claims

Neo4j asserts that I violated the Lanham Act by using the term "Neo4j" on websites and in product names like "Government Package for Neo4j," and by promoting ONgDB as a "drop-in replacement" for Neo4j EE. But these claims fail because (1) the use of the mark was nominative and descriptive, (2) there is no evidence of actual confusion, and (3) the "drop-in replacement" label was neither false nor misleading as a matter of law.

1. Use of "Neo4j" Was Descriptive and Permitted Under Nominative
Fair Use

Neo4j identifies as infringement my use of phrases such as "Neo4j
Enterprise" and "Government Package for Neo4j." But these uses
merely described the compatibility or lineage of ONgDB relative to
Neo4j EE, and courts have long recognized that nominative fair use of a
trademark to identify a compatible product is not infringement. See
*New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th
Cir. 1992). The use of the Neo4j name was necessary to identify the
origin of the codebase, which Neo4j itself made publicly available under
the AGPL, and did not imply sponsorship or endorsement.

No reasonable consumer would think that a product called "ONgDB"
hosted by the Graph Foundation or iGov was an official Neo4j product,
particularly when it was distributed under the AGPL and advertised as
an alternative. ONgDB distributions never removed existing Neo4j
attribution from the code or documentation, they simply restored the
FSF's original license text in place of the Commons Clause.  12-SER-
3251

## 2. No Evidence of Actual Confusion or Secondary Meaning

Neo4j offers no consumer survey or firsthand evidence of confusion.
Instead, it relies on its own speculation and internal emails about the
MPO procurement. But the MPO is not an average consumer, it is a
sophisticated federal agency advised by engineers from Next Century
and iGov. These professionals evaluated ONgDB and Neo4j EE side by
side based on functionality and cost. Neo4j points to no instance where
a decision-maker at MPO believed ONgDB was the same as or endorsed
by Neo4j USA.

Moreover, the undisputed facts show that the MPO chose ONgDB after
extensive technical review and did so to avoid the cost of a commercial
license. That is a policy and procurement decision, not trademark
confusion.

## 3. "Drop-In Replacement" Was Not False or Misleading

Neo4j's central advertising claim is that I falsely described ONgDB as a
"drop-in replacement" for Neo4j EE. But this term refers to technical
compatibility, not commercial licensing,  and is a common software
development concept indicating that one piece of code can function in

the same context as another without modification. I explained this clearly in the record. See e.g., 7-ER-1568 (describing compatibility across versions using the same database format)

Neo4j relies on post hoc testimony from GFI about versions after 3.5.4, but this ignores the uncontested fact that MPO deployed ONgDB 3.5.4, the last version GFI confirmed as compatible. There is no evidence that ONgDB's functionality at the time of selection materially differed from Neo4j EE. Whether later versions diverged is irrelevant to the agency's decision and the damages award.  7-ER-1675

Moreover, courts have rejected false advertising claims based on subjective technical descriptions like "drop-in replacement," which reasonable users understand as statements of opinion or compatibility, not exact equivalence. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997).

4. Neo4j's Own Licensing Practices Invited Compatibility

The premise of the Lanham Act claim is undermined by Neo4j's own conduct: they licensed the core Neo4j EE codebase under the AGPL and distributed it on GitHub. Under AGPL, any licensee could create a

modified version so long as the license terms were followed and attribution was preserved. That's exactly what ONgDB did. Neo4j's attempt to claim confusion while distributing the same code under a free license is not a trademark issue, it is a licensing dispute.

5. Summary Judgment Was Improper

Material factual disputes remain regarding the meaning and impact of "drop-in replacement," the existence of consumer confusion, and the context in which the MPO selected ONgDB. These issues are not suitable for resolution on summary judgment. At a minimum, a jury should have been allowed to assess the alleged confusion and whether the statements were materially misleading.

E. The District Court Erred in Granting Summary Judgment on the False Advertising Claim

1. Neo4j Mischaracterizes a Legal Disagreement as a "Stipulation"

Neo4j repeatedly claims that I "stipulated" to violating its so-called "Neo4j Sweden Software License" by removing the Commons Clause, and uses this alleged stipulation to short-circuit any challenge to the

falsity or materiality of statements like "free and open source." But this is not a factual stipulation, it is a contested legal interpretation.

The only modification I made was restoring the FSF's original AGPLv3 LICENSE.txt file to a verbatim copy, precisely as the FSF's preamble instructs. I did not alter any source code files or NOTICE.txt files that contained copyright management information (CMI). Neo4j's own exhibits show the source-level attribution remained intact. See 1-SER_0007-0008, 1-SER_0054

Neo4j conflates my restoration of the AGPL license with a DMCA violation and falsely implies that I admitted liability. There is no record citation where I concede wrongdoing. The cited stipulations, including ¶60 (2-SER-0193), reflect disputed legal characterizations rather than uncontested facts. In fact, ¶60 appears to have been mistakenly included and is inconsistent with the surrounding stipulations and the overall record. For example, ¶33 expressly notes that I sought guidance from the Free Software Foundation (FSF) prior to replacing the license, and ¶34 confirms I did not obtain legal counsel, further showing that my understanding was based on belief, not intent to infringe. Moreover,

stipulations ¶59 and ¶64 merely acknowledge that Neo4j did not grant permission and that I disputed their legal position, which is entirely consistent with my defense. To the extent ¶60 purports to assert knowledge of infringement, it contradicts both my consistent testimony and the record and should not be read as a factual admission of liability. 2-SER-0188-0199.

The district court improperly adopted Neo4j's framing as if it were undisputed, despite my repeated objections and substantial third-party support. The FSF and Software Freedom Conservancy, authors and stewards of the AGPL, confirm that the Commons Clause is a non-permissive "further restriction" under AGPL §7, which licensees are authorized to remove. Thus, the so-called "Neo4j Sweden Software License" was not a distinct license at all. It was the AGPLv3 with a clause that AGPL explicitly allows licensees to discard.

Courts cannot transform a disputed legal question into an uncontested fact merely by adopting one side's argument. But that is what happened here,  and what Neo4j continues to push in its Answer Brief.

2. The Statements Were Not Literally False, and at Minimum Were
Subject to Dispute

Neo4j insists that calling ONgDB "free and open source" and a "drop-in
replacement" was literally false. But whether ONgDB was "free" or
"open source" depends on the legal status of the Commons Clause under
AGPL, and whether its removal rendered ONgDB compliant. That is a
disputed legal issue, not a factual admission.

AGPL §7 says that any additional term that imposes "further
restrictions" may be removed by the licensee. The FSF commentary and
SFC amicus brief explain this was intended to prevent precisely the
kind of clause Neo4j tried to impose. The FSF even instructs licensees
to remove such terms where found. This is not legal heresy; it is
precisely how the AGPL was designed to function.

The "drop-in replacement" label is a technical term of art, not a legal
guarantee. The ONgDB codebase was sourced from the same repository,
the versioning aligned, and no core functionality was removed. In
software development, "drop-in replacement" means API and behavior
compatibility, not vendor approval. Whether such a term is misleading

depends on context and audience, precisely the kind of fact-driven analysis unsuitable for summary judgment. See Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139–40 (9th Cir. 1997), 1202 (9th Cir. 2012) (reversing summary judgment on statements with disputed technical meaning).

### 3. Summary Judgment Was Improper Given Disputed Facts

Summary judgment is inappropriate where material facts remain in dispute. The parties hotly contested the meaning and impact of the statements "free and open source" and "drop-in replacement," the legality of removing the Commons Clause, and whether such statements actually misled consumers. Even the question of whether ONgDB was sufficiently distinct from Neo4j EE to create confusion or misrepresentation is fact-bound.

Neo4j relied heavily on the court's prior findings and injunction orders, many of which were issued without trial, based on incomplete evidence. The district court later treated those interim rulings as binding factual determinations, rather than weighing fresh evidence. This procedural shortcut infected the summary judgment ruling.

The legal theory underlying the district court's false advertising holding was that any representation contradicting Neo4j's view of the license must be "false", even if that license was publicly released under AGPLv3, and even if multiple experts (including the FSF and SFC) found that Neo4j's interpretation was wrong. But parties are allowed to disagree about the meaning of licenses, especially ones drafted by third parties like the FSF, and courts must resolve those disputes by considering evidence, not declaring one side right as a matter of law.

## F. The District Court's Damages Award Was Clearly Erroneous and Should Be Reversed or Vacated

Neo4j's damages theory lacks the evidentiary foundation required under the Lanham Act. To affirm a $597,000 award, the record must show (1) that Suhy's statements were materially misleading, (2) that they proximately caused diverted sales or reputational harm, and (3) that the amount awarded bears a reasonable relationship to actual harm. See *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132–34 (2014); *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1112 (9th Cir. 2012).

## 1. The Record Does Not Establish Proximate Causation

Neo4j's claim rests on the assertion that a single government agency (the MPO) chose ONgDB over Neo4j® EE because of Suhy's statements. Yet there is no admissible evidence that Suhy's conduct caused the procurement outcome. Instead, the record shows that MPO evaluated ONgDB based on open source availability and cost-effectiveness and did so independent of Suhy's representations. Neo4j's own witnesses admitted they had no insight into MPO's internal decision-making process. No witness from MPO testified.

6-SER-1274–1277, 6-SER-1280, 6-SER-1284-1286

Moreover, Neo4j's claim that damages were "undisputed" relies on improper inferences from one-sided declarations and after-the-fact characterizations. 1-SER-0021. Their calculation is based entirely on a hypothetical scenario in which MPO would have purchased a five-year enterprise license at a list price rate, despite no evidence that such a purchase was ever budgeted, negotiated, or even seriously considered.

This Court has consistently held that damages under the Lanham Act cannot be speculative and must be tied to actual market impact. *Skydive Arizona*, 673 F.3d at 1112. Neo4j failed to show that any

specific sale was lost due to Suhy's statements, or that his conduct caused actual harm justifying a nearly $600,000 award.

## 2. Neo4j's "Alternative" Damages Theories Cannot Save the Award

Neo4j argues that, even if Suhy's false advertising didn't cause damages, the award is still supported by DMCA and trademark violations. But this is a legal shell game. All three claims rely on the same alleged harm, the MPO choosing ONgDB, and the same disputed facts. If causation fails for one, it fails for all.

Neo4j mischaracterizes the record by claiming Suhy did not contest damages tied to trademark and DMCA claims. In fact, Suhy repeatedly challenged proximate cause across all theories, including in the Opening Brief at 19–33. The FSF and SFC amicus briefs further show that any alleged "removal" of copyright management information (CMI) was not unlawful, and that Suhy had a good-faith basis for believing his conduct was authorized under AGPL §7.

## 3. The District Court Improperly Resolved Disputed Facts at Summary Judgment

The damages award rests on disputed factual questions that should never have been resolved on summary judgment. For example, whether the MPO would have paid for a license but for Suhy's statements is a classic issue of causation that turns on credibility, market evidence, and the agency's own rationale, none of which were subjected to cross-examination.

Neo4j attempts to sidestep this by citing a supposed stipulation. But the record shows no such stipulation to liability or to the truth of Neo4j's damages model. The parties merely stipulated to the admissibility of deposition exhibits, not to their content or the inferences to be drawn from them. 13-ER-2688–2691; 14-ER-2882-2884.

Neo4j also references sealed documents it claims support damages 18-SER-4525–4527 (Lines 337-343),  18-SER-4536-4537 (175:18–176:15), 18-SER-4527 (TX 15 [AEO-sealed]); answer brief page 9 and 61, which Suhy, acting pro se, was denied access to. The use of evidence shielded from the opposing party, without an Attorneys' Eyes Only safeguard, raises due process concerns and further underscores why the damages award cannot stand.

4. The Commons Clause Issue Undermines Neo4j's DMCA Claim

The FSF and SFC briefs make clear that the so-called "Neo4j Sweden Software License" was in fact the standard AGPLv3 license with an appended Commons Clause,  a clause explicitly identified by FSF as a "further restriction" under AGPL §7. That section allows licensees to remove such restrictions. Neo4j falsely implies that Suhy removed its CMI, when in reality, he redistributed the identical source code under a standard AGPLv3 license as permitted by its own terms.

This Court should not allow Neo4j to misrepresent a free software license to convert a licensing disagreement into a basis for statutory damages under the DMCA.

G. The District Court Erred in Excluding Critical Rebuttal Evidence on Scienter and Licensing Practice

Neo4j defends the exclusion of the FSF's cease-and-desist letter (Trial Exhibit 1108) and the expert testimony of Bradley Kuhn by invoking hearsay, timeliness, waiver, and law-of-the-case. But these rationales fall apart when examined under the actual question at trial: whether Mr. Suhy acted with the scienter required by 17 U.S.C. § 1202(b) of the DMCA. The excluded evidence went to that issue and its exclusion

36

materially impaired Suhy's ability to rebut the DMCA claim, which in turn supported the $597,000 damages award.

## 1. The FSF Letter Was Directly Relevant to DMCA Scienter

DMCA liability under § 1202(b) requires that a defendant knowingly or intentionally removed copyright management information (CMI) with the purpose of facilitating infringement. The FSF letter was not offered to relitigate the meaning of the AGPL license, but rather to demonstrate Suhy's contemporaneous, good-faith belief that he was authorized to remove the Commons Clause.

Neo4j argues the letter was hearsay, but this misstates the law. Statements introduced to show their effect on the listener's state of mind are not hearsay. See United States v. Payne, 944 F.2d 1458, 1472 (9th Cir. 1991). The FSF letter confirmed that AGPL Section 7 permits removal of "further restrictions," and this interpretation, coming from the license's original author, supported Suhy's own view at the time he redistributed ONgDB. Whether or not the FSF letter was sent in 2023, its contents echoed the FSF's longstanding position, as confirmed in its amicus brief, a position Suhy reasonably relied upon in 2018 and 2019

Excluding this evidence deprived the factfinder of direct proof rebutting the mental state element of the DMCA claim, an error compounded by the fact that the district court admitted Neo4j's own testimony on licensing interpretation while precluding third-party support for Suhy's good-faith view.

## 2. Kuhn's Testimony Was Admissible as Industry Custom Evidence

The district court excluded the testimony of Bradley Kuhn, a long-time FSF officer and recognized expert in FOSS licensing practices, based on the view that he sought to offer impermissible legal conclusions. But Kuhn was not offered to interpret the law. He was offered to explain industry understanding of AGPL Section 7 and the meaning of "further restriction," as well as typical conduct by open source licensees when confronted with proprietary overlays like the Commons Clause.

Federal Rule of Evidence 702 permits expert testimony on customs and practices that help the factfinder understand disputed conduct. See *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). Kuhn's report explained how FOSS developers interpret license overlays and why removal of non-permissive terms is routine and

expected in the AGPL ecosystem. His testimony would have helped the jury evaluate whether Suhy's actions were consistent with accepted practice and therefore done without wrongful intent.

Neo4j's criticism that Kuhn was "advocating" rather than analyzing misreads the standard. Industry experts may present robust opinions so long as they are grounded in experience and relevant methodology. Excluding his testimony, especially while allowing Neo4j to present its corporate counsel and engineers as quasi-experts, created a one-sided evidentiary record.

3. There Was No Waiver of These Challenges

Neo4j suggests that Suhy waived objections to these exclusions by withdrawing a motion to supplement the record with the FSF letter. That is incorrect. The letter's exclusion was raised in the Opening Brief (at 51–52) and is properly renewed here in reply. The strategic decision not to re-argue record supplementation on appeal does not waive a preserved evidentiary challenge, especially where, as here, the evidence goes directly to a distinct element (scienter) of a separate claim (DMCA) that was not resolved at summary judgment.

## 4. Law of the Case Does Not Apply

Neo4j also invokes law of the case based on prior appellate rulings. But the Ninth Circuit's affirmance of the district court's license interpretation during preliminary injunction proceedings and summary judgment did not address the DMCA scienter issue. Mental state is a factual question assessed at trial and was never decided in Neo4j I. The current challenge does not seek to relitigate the AGPL's meaning, but to present rebuttal evidence on the distinct issue of intent under § 1202(b).

## 5. These Errors Warrant Reversal or Remand

The DMCA finding was one of three independent bases supporting the $597,000 damages award. See Findings of Fact and Conclusions of Law, ECF No. 248. Because the FSF letter and Kuhn's testimony went to the core of the DMCA claim, and because their exclusion left Suhy without the ability to counter Neo4j's intent narrative,  the evidentiary rulings were not harmless. They materially affected the liability finding and, by extension, the damages outcome.

This Court should reverse the DMCA finding or remand for a new trial on that claim, with instructions to admit the excluded evidence under standard rules for state-of-mind and industry-practice rebuttal.

## H. The District Court Erred in Granting Summary Judgment on PureThink's Breach of Contract Counterclaim

Appellees argue that PureThink's notice of appeal was late, but appellate jurisdiction is secure.  Suhy filed a timely notice of appeal on September 11, 2024 within 30 days of judgment.  Under FRAP 4(a)(3), that notice is sufficient to permit any other party to appeal within the same docket, so PureThink did not need to file its own.  Before the briefing schedule began, PureThink executed a written assignment transferring all of its interests in this litigation to Suhy (Dkt. 7-1). FRAP 43(b) allows an action to continue in the name of the transferee without a new notice of appeal. Neo4j denies the existence of any binding exclusivity agreement with PureThink and argues that summary judgment was proper based on lack of mutual assent. But this narrative ignores both the legal context in which the agreement was created and the actions Neo4j took to benefit from it. The record shows that Neo4j and PureThink jointly developed the exclusivity agreement

to comply with Federal Acquisition Regulation (FAR) requirements, specifically 48 C.F.R. § 6.302-1 § 6.302-1, which allows for sole-source federal procurement only where a product is available from "only one responsible source." This wasn't a theoretical or marketing-based understanding of exclusivity. It was a legal and operational necessity. Neo4j cannot now deny the agreement's enforceability after invoking it to secure favorable government contracting treatment.

1. FAR-Based Exclusivity Shows Mutual Assent and Legal Purpose

The exclusivity agreement was tailored to create the legal foundation necessary for PureThink to secure sole-source procurement awards for Neo4j Enterprise licenses. Internal communications acknowledged this: "The purpose of this Exclusivity Agreement is to ensure that US Federal, DOD and State governments can quickly procure Neo4j Enterprise licenses via Sole-Source using the justification defined by [FAR] 6.302-1" 6-SER-1312

Under California law, mutual assent is assessed objectively, based on the parties' outward manifestations and the reasonable meaning of their words and actions, not their unexpressed or subjective intent. See

Bustamante v. Intuit, Inc., 141 Cal. App. 4th 199, 208 (2006), 1134–35 (2003); Banner Entm't, Inc. v. Sup. Ct., 62 Cal. App. 4th 348, 358 (1998).

Even if the exclusivity agreement was not signed in the format Neo4j now prefers, the parties' shared legal objective, to support FAR-based procurement, is powerful evidence of intent and assent.

2. Neo4j's Use of the Agreement in Government Procurements Binds Them

Neo4j allowed the exclusivity documentation to be used in procurement justifications submitted to federal agencies. These documents represented PureThink as the exclusive reseller of Neo4j's Government Edition and were submitted to justify avoidance of competitive bidding under FAR. 6-SER-1312 , 10-ER-2351, 8-SER-2051-2052.

In the context of contracting, including with the government, a party may not induce agreement through affirmative representations and later disclaim them to avoid liability. See Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 716 (9th Cir. 1990)

If Neo4j's exclusivity claims were false or non-binding, they knowingly participated in a misrepresentation to a federal agency, potentially violating 18 U.S.C. § 1001. While this appeal does not assert fraud claims, the inconsistency between Neo4j's procurement representations and its litigation position is legally and equitably significant.

3. Neo4j's Conduct Created Reasonable and Detrimental Reliance

PureThink relied on the exclusivity agreement to its detriment, structuring operations, pursuing government contracts, and investing in sales infrastructure tailored to Neo4j's product. Under *Drennan v. Star Paving Co.*, 51 Cal. 2d 409, 414 (1958), even in the absence of a formally signed document, where one party "reasonably relies" on an agreement to its detriment, the court may enforce it under promissory estoppel.

Neo4j not only failed to object to the use of the exclusivity language, it actively benefitted from the resulting sole-source awards. That conduct bars them from denying the legal effect of the agreement. See also McCaskey v. California State Auto. Ass'n, 189 Cal. App. 4th 947, 957 (2010).

4. Summary Judgment Was Improper Given These Material Disputes

Whether a contract was formed, whether it was relied upon, and whether Neo4j is equitably estopped from denying it are all questions of fact that preclude summary judgment. The district court erred by accepting Neo4j's "no contract" narrative without weighing the factual record of procurement usage, mutual benefit, and consistent conduct over time.

Even if Neo4j argues that they retained a "right to cancel," that clause only appeared in drafts that were never finalized. The actual exclusivity language used in federal procurements made no such qualification,  and Neo4j endorsed its use. To now disavow it is both legally unsupported and deeply unfair.

## IV.  Conclusion

This case presents more than just a business dispute. It is about whether companies can use the language of "open source" to gain market share,  only to later weaponize proprietary restrictions against those who relied on their promises. Neo4j's attempt to rebrand AGPL-licensed software as proprietary, to rewrite history by calling a fork

"piracy," and to exclude evidence that undermines their narrative is deeply concerning, not just for this case, but for the broader open-source ecosystem.

The district court's rulings granted summary judgment on disputed factual issues, including intent, causation, and licensing interpretation. It excluded core rebuttal evidence, including testimony and statements from the FSF, the very author of the license at issue. It accepted Neo4j's misleading terminology,  including the fictitious "Neo4j Sweden Software License" ,  and treated it as if it were distinct from the FSF's AGPLv3.

I am a pro se litigant standing against a billion-dollar company with every incentive to destroy lawful open-source alternatives to its product. But I am not alone in my interpretation of these licenses. The FSF and SFC stand with me, and so does the community that relies on the promise of free software.

This Court should reverse or remand the rulings below, not only to correct the legal errors, but to preserve the rights of every developer, contributor, and user who still believes that open source means what it

says.

Respectfully submitted,

/s/ John Mark Suhy Jr.
Pro Se Defendant-Appellant
8814 Danewood Dr.
Alexandria, VA 22308
Email: jmsuhy@gmail.com
Phone: 703-862-7780
Date: April 16, 2025

## Certificate of Compliance

This reply brief contains 6,982 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f). It therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) (6,500 words) as enlarged by Ninth Circuit Rule 32-1 (7,000 words for a reply brief). The brief was prepared in a proportionally spaced typeface, Century Schoolbook 14-point, and thus complies with Fed. R. App. P. 32(a)(5)(6).

Dated: April 16, 2025

Respectfully submitted,

/s/ John Mark Suhy Jr
John Mark Suhy Jr
8814 Danewood Dr
Alexandria, VA 22308
jmsuhy@gmail.com
703-862-7780

## CERTIFICATE OF SERVICE

I, John Mark Suhy Jr, hereby certify that on this April 16, 2025, I electronically filed the foregoing brief with the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ John Mark Suhy Jr
John Mark Suhy Jr
8814 Danewood Dr
Alexandria, VA 22308
jmsuhy@gmail.com
703-862-7780