No. 24-5538
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

NEO4J, INC., et al.,
*Plaintiff and Appellee,*
v.
Suhy, et al.,
*Defendant-Appellant.*

Appeal From a Judgment of the United States District Court
For the Northern District of California
Hon. Edward J. Davila
United States District Judge
N. D. Cal. No. 5:18-cv-07182 EJD

I. Introduction

Neo4j's opposition to a stay pending appeal is built on a foundation of misdirection and factual distortion. Rather than address the controlling legal standards, Neo4j deflects, substituting unproven accusations of "fraud" for evidence, constructing a false narrative of millions in hidden assets, and mischaracterizing the record to obscure its own campaign of creditor misconduct. After a year of post-judgment discovery, Neo4j's arguments still rest on conjecture, not proof.

This motion is timely and proper, grounded in new facts and new law that arose months after this Court's prior order. These changed circumstances - Neo4j's overbroad garnishment of federally protected retirement accounts and a new, binding Ninth Circuit decision that directly undermines the summary judgment against me, are precisely the developments that warrant reconsideration.

Neo4j's response demonstrates a reckless disregard for the factual record. It justifies targeting exempt funds by relying on a state-court motion riddled with factual errors, and then conveniently omits the very exhibits that expose those errors. It sidesteps new, binding precedent by advancing a flawed waiver argument.  And it dismisses the irreparable harm to my career with a cursory footnote. This pattern of distortion is a litigation strategy designed to prejudice the Court, and it should inform the analysis of their entire opposition. This reply will deconstruct those arguments and demonstrate that the equities, and the law, compel a stay of all enforcement pending appeal, without bond.

## II. This Motion is Timely Under Ninth Circuit Rule 27-10

Neo4j's argument that this motion is untimely fundamentally misapprehends the threshold inquiry under Ninth Circuit Rule 27-10. For the purposes of timeliness, the sole question is whether the circumstances grounding this motion are new. Neo4j does not, and cannot, dispute that its garnishment summons was issued on May 2, 2025, or that this Court's binding decision in *Yuga Labs, Inc. v. Ripps* was issued on July 23, 2025, both events occurring months after the January 23, 2025 order.

By failing to offer any argument that these events do not constitute "changed circumstances" under the rule, Neo4j effectively concedes that the motion is procedurally proper. Its arguments regarding alleged fraud and waiver are misplaced; they relate not to timeliness, but to the substantive merits of the stay itself. The Court should therefore find the motion timely and proceed to consider the substance of these new circumstances, where Neo4j's arguments also fail.

III. Neo4j's Narrative of Debtor Fraud Collapses Under the Weight of Its Own Omissions

Neo4j's entire opposition is anchored to a narrative of a bad-faith debtor engaged in "fraudulent transfers." This narrative is not only unproven, but it is actively contradicted by Neo4j's own evidence and demonstrates a pattern of misrepresentation designed to prejudice the Court.

A. Neo4j's "Fraud" Allegations Are Based on Factual Misrepresentations.

The centerpiece of Neo4j's opposition is its pending state-court motion to set aside a supposedly fraudulent conveyance. In that motion, Neo4j makes a sworn, unequivocal statement of fact: "In the two months immediately preceding the Transfers above, 100% of all deposits to the Checking Account came from Mr. Suhy's wages" (Dkt. 74.2, Ex. 5 at ¶ 5).

This is demonstrably false, and the proof comes from Neo4j's own evidence, evidence they conveniently omitted when filing their state-court motion as an exhibit with this Court. That motion's Exhibit D includes a bank statement showing a deposit on August 28, 2024,

described as "Deposit-ACH Paid From Fairfax County P Monthly", the monthly salary of my wife, a part time public school teacher (See Exhibit B and Exhibit C). This deposit of marital funds occurred less than one month before the transfers Neo4j attacks. This is not a minor discrepancy; it is a foundational falsehood that invalidates the premise of their motion in the state court, and their decision to hide the contradictory evidence from this Court undermines their credibility. Furthermore, Neo4j's attempt to portray the transfer of funds as a fraudulent scheme ignores the clear context of the accounts. The bank statements from Exhibit D of Neo4j's state-court fraud motion, evidence they conveniently omitted from their filing with this Court, document a typical joint marital account used for shared household commitments, including recurring payments for the mortgage ("Flagstar Loan Pymt"), insurance ("GEICO," "Trustage"), and utilities ("Dominion Energy") (See Exhibit B). The transfers from this account were not hidden; they were a transparent reallocation of marital funds for family estate planning and investment purposes from a bank account to a brokerage account. This was not a transfer to a third party to hide assets. Indeed, Neo4j's own state-court motion (Dkt. 74.2, Ex. 5) confirms they knew

funds were moved from a joint marital bank account to a joint marital investment (brokerage) account titled "Tenants by the Entirety," not the retirement accounts they falsely referenced in their opposition to this Court.

## B. Neo4j Relies on Baseless Accusations of Hidden Wealth to Mislead the Court.

To justify its aggressive tactics, Neo4j has constructed a fiction of vast, hidden wealth. These claims are not just unsubstantiated; they are contradicted by the very financial records Neo4j has spent over a year compelling me to produce. See Exhibit A

First, Neo4j continues to allege the existence of a phantom $1.3 million sale of intellectual property, a claim they base on questionable deposition testimony from a third party. They conveniently ignore that I denied any such sale under oath (Dkt. 28.2, Ex.7). More importantly, after more than a year of post-judgment discovery, including complete access to every bank account and tax return for myself and wife (joint tax returns) and my companies (See Exhibit A), Neo4j has failed to produce a single piece of documentary evidence to support this inflammatory claim. If a $1.3 million sale occurred, where is the

evidence? There is no contract, no wire transfer, no deposit, and no line item on any tax return reflecting such a transaction. The continued assertion of this claim, in the face of my sworn denial and the overwhelming lack of documentary evidence that they themselves possess, is not a good-faith argument. It is a calculated attempt to mislead this Court by creating the illusion of hidden wealth where none exists.

Second, Neo4j claims that over $1.5 million in iGov revenue is "unaccounted for," falsely suggesting the company was "shut down" in 2022. This is another blatant falsehood. iGov continued to operate past 2022, a fact readily verifiable in the same tax returns Neo4j possesses. Neo4j also mischaracterizes this revenue as being for "support for ONgDB"; in fact, it was revenue for software development services, earned by a functioning company over a period of five years. This income was received by a registered corporate entity, used to pay for legitimate operating expenses, and was fully reported on corporate tax returns filed with the IRS, tax returns that have been provided to Neo4j (See Exhibit A). A tax return, by its very definition, is an accounting of revenue. To suggest that over a million dollars in reported income is

"unaccounted for" is a reckless accusation. If it were true, the entity of interest would not be Neo4j, but the Internal Revenue Service.

Third, Neo4j's claim that I "evaded wage garnishment orders by switching the direct deposit of [his] paychecks" is legally and practically nonsensical. A wage garnishment is an order served on an *employer*, which is then legally required to withhold funds *before* net pay is issued. The location of a direct deposit has no bearing on this process. This flawed accusation demonstrates a fundamental misrepresentation of basic legal procedure and reveals that Neo4j is twisting routine financial decisions to fit a false narrative of evasion.

C. Neo4j's Enforcement Tactics Are an Affront to Due Process.

To justify its overbroad garnishment of my retirement funds, Neo4j makes a recklessly false statement to this Court. In its opposition, Neo4j claims: "What Suhy fails to disclose… is that the only reason those accounts are in play is because he fraudulently transferred over $140,000 from non-exempt accounts to his **retirement accounts**…". This is a fabrication, and the proof comes from Neo4j's own state-court motion. That motion, which Neo4j itself filed, explicitly states the funds were transferred from a joint checking account to an joint "**investment

**account**" titled as "**tenants by the entireties**" (Dkt. 74.2, Ex. 5 at ¶¶ 2, 4). Neo4j knew the destination account was not a retirement account, yet it used this false premise to create a pretext for targeting my actual, federally and state protected IRAs. This is not a good-faith dispute; it is a bad-faith attempt to mislead the Court.

This conduct demonstrates a fundamental disregard for due process. Neo4j asks this Court to sanction its decision to put the enforcement cart before the adjudicative horse. In their own filings, they admit that the central question of whether any "fraudulent conveyance" occurred is the subject of a motion currently pending before the Fairfax County Circuit Court.

Yet, they have already served a sweeping garnishment summons commanding Charles Schwab & Co. to withhold funds from "all brokerage accounts", an action taken *after* I voluntarily produced statements clearly identifying a "Roth Contributory IRA" and a "SEP-IRA" as federally protected retirement accounts. This is a bad-faith attempt to execute on assets to which they have no present legal right, an action transparently designed to intimidate and harass while the actual legal question remains unresolved in the proper forum. This

conduct is not a justification for their actions; it is further evidence of the creditor misconduct that necessitates a stay.

## IV. New Precedent in *Yuga Labs* Is Directly Relevant Because the Trademark Appeal Was Not Waived

Neo4j's argument that Yuga Labs is irrelevant rests on the flawed and artificially narrow premise that Appellant "did not assign any alleged error to the district court finding that Suhy infringed Appellees' trademarks". This mischaracterizes both the record and the law.

A judgment of trademark liability under the Lanham Act cannot stand if the plaintiff does not own a valid mark or if its claims are defeated by other foundational challenges. In my Opening Brief, I directly appealed the ultimate judgment of trademark liability by challenging its essential predicates, including "trademark ownership" and "false advertising" (Opening Brief, Dkt. 17.1, at 9).

Moreover, the briefs directly contested the factual basis for any finding of customer confusion. The Opening Brief argued that terms like "drop-in replacement" were technically accurate and that Neo4j had failed to

prove that any alleged misstatement actually caused the MPO's decision, which was driven by cost, not confusion. The Reply Brief reinforced that the use of "Neo4j" was nominative fair use to describe compatibility and that the description of ONgDB as "free and open" was accurate. These are precisely the types of fact-intensive disputes over materiality, causation, and the likelihood of confusion that Yuga Labs confirms are often inappropriate for summary judgment.

Because the ultimate question of liability, including the predicate issues of ownership, falsity, and customer confusion, was properly preserved and is before this Court on appeal, the Ninth Circuit's subsequent ruling in Yuga Labs is directly relevant and constitutes a material change in the legal landscape of this case.

V. The Equitable Factors for a Stay Weigh Decisively in My Favor

A. I Face Irreparable Harm.

Neo4j relegates the irreparable, career-ending harm to my government security clearance to a single, dismissive footnote, arguing any such difficulties are self-inflicted. This cursory response is not a substantive rebuttal; it is an admission that they have no answer to the profound

and disproportionate harm their actions threaten. The loss of a security clearance, and with it a career and the ability to provide for one's family, is a quintessential form of irreparable harm that cannot be remedied by a later monetary judgment.

B. A Stay Will Not Substantially Injure Neo4j.

Neo4j has recovered only $1,481.33 despite nearly a year of repeated garnishment efforts. At this pace, even continued wage garnishments would require decades to satisfy the judgment. A stay would not materially impair Neo4j's ability to collect should it prevail on appeal. Instead, it would protect me from irreparable harm by preventing further intrusion into exempt retirement accounts, safeguarding my financial stability, and preserving my ability to maintain employment and security clearance.

C. The Public Interest Favors a Stay.

Neo4j's assertion that there is "no relevant public interest" is incorrect. The significant public interest in this case is demonstrated by the fact that two of the world's most respected open-source software foundations, the Free Software Foundation (FSF) and the Software Freedom Conservancy (SFC), submitted amicus briefs to this Court

(Dkt. Nos. 34.1, 55.1). Their participation underscores that this is not merely a private commercial dispute, but one that, in the words of the SFC, "touches the very heart of the global movement for software freedom".

The FSF, the author and steward of the AGPL license at issue, felt compelled to file its brief to "correct certain misstatements and incorrect assertions in the appellate record" regarding its license. The SFC warned that the lower court's opinion "threatens to undermine the purpose and utility of this and other GPLs for millions of authors and software users worldwide". The public interest lies in ensuring that foundational open-source licenses like the AGPL,which the FSF describes as a tool to protect an "essential human right", are interpreted consistently and that individual developers are not stifled by harassing litigation designed to chill lawful competition. As the founder of DozerDB, a growing open-source project that directly competes with Neo4j, my time and resources are being diverted from public-facing innovation to defending against these disproportionate enforcement actions.

## VI. The *Dillon* Factors Compel a Stay Without Bond

Neo4j's mechanical application of the *Dillon* factors is flawed because it treats this as a standard collection matter and ignores the dispositive context of its own abusive collection tactics.[1]

1. **Complexity of Collection (Factor 1):** The complexity here is entirely self-inflicted. Neo4j's decision to pursue legally exempt assets and litigate unsubstantiated claims of fraud is the sole reason collection has been anything but straightforward. Their campaign of eleven separate garnishment actions has yielded a recovery of only $1,481.33, demonstrating that their efforts are more harassing than productive.

2. **Confidence in Availability of Funds (Factor 3):** The Court can have no confidence in the availability of funds when the judgment creditor has demonstrated a willingness to disregard statutory protections in its pursuit of those funds. Neo4j's overreach confirms that any assets are at risk of improper seizure, strengthening the need for a stay.

3. **Precarious Financial Situation (Factor 5):** This factor weighs decisively in favor of a stay. A supersedeas bond requires full

collateral, which I do not possess in non-exempt assets. Requiring a bond that cannot be obtained would force me into immediate bankruptcy, harming all creditors, including Neo4j, by converting them into unsecured claimants with little prospect of recovery. This is precisely the outcome this factor is designed to prevent.

A stay, conversely, preserves the possibility of future payment should I prevail on appeal and rebuild financially. The choice is not between securing the judgment and leaving it unsecured; it is between preserving the possibility of future collection versus guaranteeing zero collection by forcing a pointless bankruptcy.

## VII.  Conclusion

Neo4j's opposition ignores the new evidence and new law that justify this motion. It misstates the record by claiming I never appealed trademark liability, and it attempts to distract the Court with a "fraud" narrative that is contradicted by its own exhibits and built on baseless accusations. This consistent pattern of misrepresentation should cause the Court to view all of Neo4j's unsubstantiated claims with extreme skepticism. Having failed to offer any substantive response to the critical issues of exempt accounts, minimal recovery, bankruptcy risk,

and irreparable harm, Neo4j has not met its burden. The Court should see through these tactics and grant a stay of all enforcement pending appeal without bond.

Respectfully submitted,

/s/ John Mark Suhy Jr.
Pro Se Defendant-Appellant
8814 Danewood Dr.
Alexandria, VA 22308
Email: jmsuhy@gmail.com
Phone: 703-862-7780
Date: September 19, 2025

CERTIFICATE OF SERVICE

I, John Mark Suhy Jr, hereby certify that on this September 19, 2025, I electronically filed the foregoing and related declaration and exhibits with the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ John Mark Suhy Jr
John Mark Suhy Jr
8814 Danewood Dr
Alexandria, VA 22308
jmsuhy@gmail.com
703-862-7780